1  Evan Nadel (SBN 213230)
   enadel@mintz.com
2  Kathryn L. Ignash (SBN 299694)
   klignash@mintz.com
3  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
   2029 Century Park East, Suite 3100
4  Los Angeles, CA 90067
   Telephone: (310) 586-3200
5  Facsimile: (310) 586-3202

6  Peter A. Chavkin (*pro hac vice* pending)
   pchavkin@mintz.com
7  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
   666 Third Avenue
8  New York, NY 10017
   Telephone:  (212) 935 3000
9
   Attorneys for Specially Appearing Defendant,
10 COREY URMAN

11            UNITED STATES DISTRICT COURT

12           CENTRAL DISTRICT OF CALIFORNIA

13 SERENA FLEITES AND JANE DOE NOS. 1        CASE NO. 2:21-cv-4920-CJC
14 through 33,

15            Plaintiffs,                    **MEMORANDUM OF POINTS
                                             AND AUTHORITIES IN
16      vs.                                  SUPPORT OF SPECIALLY-
                                             APPEARING DEFENDANT
17 MINDGEEK S.A.R.L. a foreign entity; MG    COREY URMAN'S MOTION
   FREESITES, LTD., a foreign entity; MINDGEEK TO DISMISS COMPLAINT
18 USA INCORPORATED, a Delaware corporation;
   MG PREMIUM LTD, a foreign entity; RK      Judge:  Hon. Cormac Carney
19 HOLDINGS USA INC., a Florida corporation,
   MG GLOBAL ENTERTAINMENT INC., a           Hearing Date:  January 24, 2022
20 Delaware corporation, TRAFFICJUNKY INC., a Hearing Time:  1:30 p.m.
   foreign entity; BERND BERGMAIR, a foreign Courtroom:  9B
21 individual; FERAS ANTOON, a foreign        Judge:  Hon. Cormac Carney
   individual; DAVID TASSILLO, a foreign
22 individual; COREY URMAN, a foreign         Complaint filed:  June 17, 2021
   individual; VISA INC., a Delaware corporation; Trial set:  not set
23 COLBECK CAPITAL DOES 1-10; and
   BERGMAIR DOES 1-10,
24
25            Defendants.
26
27
28                                    1
─────────────────────────────────────────────────────
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-
APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................. 12

FACTUAL BACKGROUND ............................................................. 12

ARGUMENT ................................................................................... 13

    I.    Plaintiff's Alleged Grounds for Personal Jurisdiction ....................... 13

        A.    The Court Lacks Specific Jurisdiction Over Urman ............... 15

            1.    First Prong: Urman Did Not Purposefully Direct
                Conduct at California ..................................................... 16

            2.    Second Prong: Plaintiffs' Claims Do Not Arise
                Out of Urman's Non-Existent Forum-Related
                Activities ...................................................................... 21

            3.    Third Prong: Exercising Jurisdiction Over Urman
                Would Offend Traditional Notions of Fair Play
                and Substantial Justice .................................................. 21

        B.    Rule 4(k) Does Not Create Personal Jurisdiction Over
            Urman ................................................................................... 24

    II.    Urman is Immune Under CDA Section 230 ...................................... 25

    III.    Plaintiffs Fail to State a RICO Claim Against Urman ....................... 27

        A.    The RICO Claims All Suffer from Several Fatal Defects ........ 28

            1.    Failure to Allege an Enterprise that is Separate
                from the Alleged Racketeering Activity ........................ 28

            2.    The Complaint Fails to Allege that Urman Was
                Involved in the Predicate Acts ...................................... 29

            3.    The Complaint Fails to Allege that the Conduct
                Attributed to Urman Caused Injury to Plaintiffs'
                Property or Business ..................................................... 31

            4.    The Predicate Act of Fraud is Not Pled With
                Specificity .................................................................... 32

        B.    Additional Defects Unique to Each of the RICO Claims ........ 32

             1.    Section 1962(a) ............................................................ 32

             2.    Section 1962(c) ............................................................ 35

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-
APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

    3.  Section 1962(d) ............................................................36

IV. Plaintiffs Have Not Pled Facts to Support Their Remaining
  Claims..........................................................................................37

  A. Plaintiffs Fail to State a Claim Under the TVPRA..................37

    1. The Complaint Does Not Allege that Urman
      Engaged in Sex Trafficking............................................37

    2. Urman Did Not Benefit from Participation in a Sex
      Trafficking Venture ......................................................38

    3. The Complaint Does Not Sufficiently Allege a
      Conspiracy Claim Under Section 1594(c)  ....................40

  B. Plaintiffs Fail to State a Claim Under 18 U.S.C. Sections
    2252, 2252A, and 2255............................................................40

  C. Plaintiffs Fail to State a Claim for Invasion of Privacy
    Violations..................................................................................41

  D. Plaintiffs Fail to State a Claim for Common Law and
    Statutory Misappropriation Violations .....................................41

  E. Plaintiffs Fail to State a Claim Under California Civil
    Code Section 1708.85 ...............................................................42

  F. Plaintiffs Fail to State a Claim for Negligence........................42

  G. Plaintiffs Fail to State a Claim for Unjust Enrichment............43

  H. Plaintiffs Fail to State a Claim Under Business and
    Professions Code Sections 17200 and 17500 ...........................43

  I. Plaintiffs Fail to State a Claim for Civil Conspiracy...............44

CONCLUSION.........................................................................................45

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-
APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

*AMA Multimedia, LLC v. Wanat*,
 970 F.3d 1201 (9th Cir. 2020) ..................................................................*passim*

*Asahi Metal Industry Co. v. Superior Court*,
 480 U.S. 102 (1987)..................................................................................23

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)..................................................................20, 28, 42

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
 874 F.3d 1064 (9th Cir. 2017) ...........................................................14

*Beatport LLC v. SoundCloud Ltd*,
 2020 WL 3977602 (C.D. Cal. July 13, 2020) ..............................13, 39

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)..................................................................................28

*Brady v. Dairy Fresh Prods. Co.*,
 974 F.2d 1149 (9th Cir. 1992) ...........................................................35

*Building Indus. Fund v. Local Union No. 3, Intern. Broth. Of Elec.*
 *Workers, AFL-CIO*,
 992 F. Supp. 162 (E.D.N.Y. 1996) ....................................................35

*Calder v. Jones*,
 465 U.S. 783 (1984)..................................................................................17

*City and Cty. of San Francisco v. Philip Morris, Inc.*,
 957 F. Supp. 1130 (N.D. Cal. 1997)..................................................31

*Clark v. Nat'l Equities Holdings, Inc.*,
 561 F. Supp. 2d 632 (E.D. Tex. 2006) ............................................29

*Cohen v. Chau*,
 2019 WL 6655392 (C.D. Cal. July 23, 2019) ..................................44

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

*Core-Vent Corp. v. Nobel Indus. AB,*
    11 F.3d 1482 (9th Cir. 1993) ........................................................21, 23

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014)................................................................14, 15

*Davis v. Metro Prods., Inc.,*
    885 F.2d 515 (9th Cir. 1989) ...............................................................19

*Diaz v. Gates,*
    420 F.3d 897 (9th Cir. 2005) (en banc) ..............................................31

*Doan v. Singh,*
    617 F. App'x 684 (9th Cir. 2015) ........................................................29

*Doe v. MindGeek USA Inc.,*
    No. 8:21-CV-00338-CJC, Dkt. No. 66 (C.D. Cal. Sept. 3, 2021)....................26

*Doe v. MySpace, Inc.,*
    474 F. Supp. 2d 843 (W.D. Tex. 2007) ................................................43

*Doe v. Reddit, Inc.,*
    2021 WL 4348731 (C.D. Cal. July 12, 2021) ........................................ 26, 27

*Doe v. Unocal Corp.,*
    27 F. Supp. 2d 1174 (C.D. Cal. 1998); 248 F.3d 915 (9th Cir. 2001) ..............15

*Eclectic Props. E., LLC v. The Marcus & Millichap Co.,*
    2012 WL 713289 (N.D. Cal. Mar. 5, 2012) ................................................29, 36

*Fayer v. Vaughn,*
    649 F.3d 1061 (9th Cir. 2011) (per curiam) ........................................28

*Fumoto Giken Co. Ltd. v. Mistuoka,*
    2015 WL 12766167 (C.D. Cal. Apr. 16, 2015)................................................24

*Geiss v. Weinstein Co. Holdings LLC,*
    383 F. Supp. 3d 156 (S.D.N.Y. 2019) ................................................39

*Glencore Grain Rotterdam B.V. v. Shivnath Harnarain Co.,*
    284 F.3d 1114 (9th Cir. 2002) ...............................................................23

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-
APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
   972 F.3d 1101 (9th Cir. 2020) ............................................................... 19

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd*
   328 F.3d 1122 (9th Cir. 2003) ..........................................................13, 14

*Holmes v. Sec. Inv'r Protection Corp.*,
   503 U.S. 258 (1992)............................................................................. 32

*Holt v. Facebook, Inc.*,
   240 F. Supp. 3d 1021 (N.D. Cal. 2017)............................................... 44

*Igbonwa v. Facebook, Inc.*,
   2018 WL 4907632 (N.D. Cal. Oct. 9, 2018) ....................................... 26

*In re Boon Global Ltd.*,
   923 F.3d 643 (9th Cir. 2019) ............................................................... 19

*In re Rexplore, Inc. Sec. Litig.*,
   685 F. Supp. 1132 (N.D. Cal. 1988)........................................32, 33, 34

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs.,*
   *& Prods. Liab. Litig.*,
   754 F. Supp. 2d 1145 (C.D. Cal. 2010)............................................... 43

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab.*
   *Litig.*,
   2017 WL 4890594 (N.D. Cal. Oct. 30, 2017) ..................................... 36

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   865 F. Supp. 2d 1002 (C.D. Cal. 2011)............................................... 31

*Ins. Co. of N. Am. v. Marina Salina Cruz*,
   649 F.2d 1266 (9th Cir. 1981) ............................................................ 22

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*,
   256 F.3d 548 (7th Cir. 2001), (July 2, 2001)...................................... 24

*Izenberg v. ETS Servs., LLC*,
   589 F. Supp. 2d 1193 (C.D. Cal. 2008)..................................31, 32, 33

*J.B. v. G6 Hospitality, LLC*,
   2021 WL 4079207 (N.D. Cal. Sept. 8, 2021)...................................... 26

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-
APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

*Johnson v. JP Morgan Chase Bank*,
    2008 WL 1925026 (E.D. Cal. Apr. 29, 2008) ....................................................29

*Jones v. Dirty World Entm't Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) ......................................................................26

*Kayne v. Ho*,
    2012 WL 12883918 (C.D. Cal. Sept. 6, 2012) .................................................14

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) .......................................................................25

*La'Tiejira v. Facebook, Inc.*,
    272 F. Supp. 3d 981 (S.D. Tex. 2017)........................................................25, 27

*Letizia v. Facebook Inc.*,
    267 F. Supp. 3d 1235 (N.D. Cal. 2017).............................................................44

*Love v. Associated Newspapers, Ltd.*,
    611 F.3d 601 (9th Cir. 2010) .........................................................................14

*M.L. v. Craigslist, Inc.*,
    No. 3:19-cv-06153-BHS-TLF (W.D. Wash. Sept. 16, 2021) ...........................26

*nexTUNE, Inc. v. McKinney*,
    2013 WL 2338260 (W.D. Wash. May 29, 2013) ...........................................25

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) .........................................................................28

*Pennie v. Twitter, Inc.*,
    281 F. Supp. 3d 874 (N.D. Cal. 2017)............................................................26

*Perfect 10, Inc. v. Google, Inc.*,
    2010 WL 9479060 (C.D. Cal. July 30, 2010) ..................................................41

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) ............................................................15, 16, 18

*Prime Healthcare Centinela, LLC v. Kimberly-Clark Corp.*,
    2016 WL 7177532 (C.D. Cal. May 26, 2016)..................................................14

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-
APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

*Prime Partners IPA of Temecula, Inc. v. Chaudhuri*,
  2012 WL 1669726 (C.D. Cal. May 14, 2012)....................................................29

*Religious Tech. Ctr. v. Wollersheim*,
  971 F. 2d 364 (9th Cir. 1992) ...........................................................36

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993).....................................................................35, 36

*Ruhrgas AG v. Marathon Oil Co.*,
  526 U.S. 574 (1999).....................................................................13

*Sanford v. MemberWorks, Inc.*,
  625 F.3d 550 (9th Cir. 2010) ...........................................................36

*Scott v. Breeland*,
  792 F.2d 925 (9th Cir. 1986) ...........................................................14

*Sec. and Exchange Comm'n v. Ferrante*,
  2019 WL 8230852 (C.D. Cal. Jan. 23, 2019) (Carney, J.)................................32

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
  473 U.S. 479 (1985).....................................................................36

*Sihler v. Fulfillment Lab, Inc.*,
  2020 WL 7226436 (S.D. Cal. Dec. 8, 2020) ............................................17, 19

*Simon v. Value Behavoiral Heath*,
  208 F.3d 1073, 1083 (9th Cir. 2000) ...................................................34

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ..........................................................14, 20

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) .........................................................34

*TEG Staffing, Inc. v. Platt*,
  2008 WL 4571257 (N.D. Cal. Oct. 14, 2008) ............................................32

*U.S. Concord, Inc. v. Harris Graphics Corp.*,
  757 F. Supp. 1053 (N.D. Cal. 1991)....................................................33

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-
APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

*U.S. v. Afyare*,
   632 F. App'x 272 (6th Cir. 2016) .........................................................................39

*U.S. v. Todd*,
   627 F.3d 329 (9th Cir. 2010) ...............................................................................39

*U.S. v. Turkette*,
   452 U.S. 576 (1981)..............................................................................................28

*United States v. United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016) ......................................................................39, 40

*Walden v. Fiore*,
   571 U.S. 277 (2014)........................................................................................17, 18

*Walker v. Gates*,
   2002 WL 1065618 (C.D. Cal. May 28, 2002)....................................................31

*Walter v. Drayson*,
   538 F.3d 1244 (9th Cir. 2008) ............................................................................36

*WarGaming.net Ltd. v. BlitzTeam LLC*,
   2021 WL 3619956 (C.D. Cal. Jan. 20, 2021) .............................................22, 23

**California Cases**

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal. 4th 503 (1994)...........................................................................................44

*Barrett v. Rosenthal*,
   40 Cal. 4th 33 (2006) ..........................................................................................25

9

**Federal Statutes**

18 U.S.C. ("Trafficking Victims Protection Reauthorization Act")("TVPRA")

§ 1591 ...............................................................................................38, 40
§ 1591(a) .................................................................................................37
§ 1591(a)(1) .....................................................................................37, 38
§ 1591(a)(2) ...............................................................................37, 38, 39
§ 1591(e)(4) ............................................................................................38
§ 1594(c) ..........................................................................................37, 40
§ 1595(a) .................................................................................................38
§ 2252 ......................................................................................................40
§ 2252A ...................................................................................................40
§ 2255 ......................................................................................................40

18 U.S.C. § 1961 *et seq.* ("Racketeer Influenced and Corrupt Organziations Act")("RICO")

§ 1962(a) ........................................................................................*passim*
§ 1962(c) ........................................................................................*passim*
§ 1962(d) .................................................................................................36
§ 1965(b) .................................................................................................14

47 U.S.C. ("Communications Decency Act")

§ 230(c) ..........................................................................................*passim*

**California Statutes**

Cal. Bus. & Prof. Code

§§ 17200 and 17500 ("Unfair Competition Law").............................43

Cal. Civ. Code

§ 1708.85 .................................................................................................42
§ 1708.85(a) ............................................................................................42
§ 1708.85(c)(6) ........................................................................................42

Cal. Civ. Proc. Code

§ 410.10 ...................................................................................................14

**Other Authorities**

Fed. R. Civ. Proc. 4(k) ..................................................................................24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

Fed. R. Civ. Proc. 4(k)(2) .................................................................14, 24

Fed. R. Civ. Proc. 9(b) ........................................................27, 30, 32, 44

Fed. R. Civ. Proc. 12(b)(6) ...........................................................25, 27

11

## INTRODUCTION

The complaint acknowledges that Corey Urman is a Canadian citizen employed by only one of the seven MindGeek defendant companies.  Despite its length, the complaint does not allege that Urman did anything in California or even in the United States.  Nor does it allege that Urman, acting from outside the county, directed any activities toward California.  In addition, with both Urman and most of the 34 Plaintiffs residing outside the state, California has little interest in this case proceeding in this forum.  The exercise of jurisdiction over Urman also would be unreasonable.  In short, this Court lacks personal jurisdiction over Urman.

But even if Urman were properly before this Court, the claims against him are all barred by Section 230 of the Communications Decency Act and fail for a variety of other reasons.  Accordingly, Urman's motion to dismiss should be granted.

## FACTUAL BACKGROUND

Corey Urman is one of the many non-U.S. residents in this case:  he is a citizen of Canada.  Compl. ¶ 55.  The complaint does not allege that he owns any real property or assets in California or elsewhere in the U.S.

The complaint further alleges that Urman was a vice president of "MindGeek" without identifying which of the seven MindGeek defendant entities employed him. Compl. ¶ 55; *id*. ¶ 1 (defining "MindGeek").[1]  The complaint does not allege, however, that Urman ever was an officer or director of any of the MindGeek corporate defendants, including MindGeek USA Incorporated.

Apart from vague and conclusory allegations of jurisdictional contacts by all defendants (Compl. ¶ 64), the complaint offers scant factual allegations as to Urman. Plaintiffs essentially allege that Urman (i) falsely stated that Pornhub has a robust

---

[1]     Urman accepts the FAC's fact allegations as true solely for the purpose of this motion without conceding the accuracy of those allegations.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

policy of removing offending material, including having expertly trained human reviewers and scanning content to determine whether it is consensual (*id.* ¶ 255); (ii) falsely stated that "Pornhub has a steadfast commitment to eradicating and fighting any and all illegal content on the internet, including non-consensual content and child sexual abuse material" (*id.* ¶ 451); (iii) directed a critic oriented campaign to "insidiously attack, discredit, and intimidate former employees and partners, whistleblowers, activists, and victims of its criminal schemes" (*id.* ¶ 439); and (iv) directed and controlled sham entities with several other MindGeek executives that perpetrated rackets and scams and "were in turn controlled and directed by MindGeek's financiers . . . ." *Id.* ¶ 537.  These are the only allegations in the complaint naming Urman.

Put simply, none of these allegations describes sufficient activity *by Urman* in California or the United States to support personal jurisdiction over him.  They also fail to justify any exception to the coverage provided by Section 230, and provide inadequate support for the various substantive claims in this complaint.[2]

## **ARGUMENT**

## I.   **Plaintiff's Alleged Grounds for Personal Jurisdiction**

Absent personal jurisdiction, a district court cannot adjudicate a matter.  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).  "Personal jurisdiction over each defendant must be analyzed separately."  *Harris Rutsky & Co. Ins. Servs. v. Bell &*

---

[2]   Aside from these activities which name Urman expressly, the complaint describes alleged conduct by the "MindGeek defendants" (*e.g.,* trafficking, hosting nonconsensual sexually explicit content) without describing any action by Urman that advanced those alleged violations.  That lumping together without any differentiation falls far below the required pleading threshold.  *See Beatport LLC v. SoundCloud Ltd*, 2020 WL 3977602, at *5 (C.D. Cal. July 13, 2020) ("It is a basic pleading defect for a complaint to "lump" parties together and to fail to distinguish between named defendants.").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

*Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003) (citation omitted); *Prime Healthcare Centinela, LLC v. Kimberly-Clark Corp.*, 2016 WL 7177532, at *1 (C.D. Cal. May 26, 2016) ("[P]ersonal jurisdiction must be established *for each defendant* and *by each plaintiff*.") (citation omitted).

When the complaint's jurisdictional allegations are challenged, plaintiffs must make "a prima facie showing of jurisdictional facts." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608-09 (9th Cir. 2010) (citation omitted). This requires "com[ing] forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Scott v. Breeland,* 792 F.2d 925, 927 (9th Cir. 1986) (citation omitted); *see also AMA Multimedia, LLC v. Wanat,* 970 F.3d 1201, 1207 (9th Cir. 2020) ("disputed allegations in the Complaint that are not supported with evidence or affidavits cannot establish jurisdiction") (citation omitted). "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's burden." *Swartz v. KPMG LLP,* 476 F.3d 756, 766 (9th Cir. 2007).

Plaintiffs assert personal jurisdiction over Urman primarily under California's long-arm statute, Cal. Civ. Proc. Code § 410.10. Because that statute is coextensive with the limits of due process, the jurisdictional analysis under state law and federal due process is the same. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017) (citation omitted). This leads to the familiar "minimum contacts" test for personal jurisdiction. Plaintiffs alternatively base personal jurisdiction on Federal Rule of Civil Procedure 4(k)(2), which involves a similar due process analysis. While the complaint also references 18 U.S.C. § 1965(b) as a basis for personal jurisdiction, that statute applies only to defendants in another U.S. judicial district, not to those in other countries. *See Kayne v. Ho*, 2012 WL 12883918, at *5 (C.D. Cal. Sept. 6, 2012) (§ 1965(b) "does not apply" to defendant "not served in any judicial district of the United States" and thus "is inapplicable and cannot provide a basis for exercising personal jurisdiction over

14

him."); *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1184 (C.D. Cal. 1998), *aff'd and adopted*, 248 F.3d 915 (9th Cir. 2001) (RICO's "national contacts" test "does not apply where, as here, the defendant is served outside of the United States."). Here, Urman waived service of process entirely, preserving all jurisdictional defenses available to him had he been served in Canada, where he resided. ECF No. 27 at ¶ 4.

### A.    The Court Lacks Specific Jurisdiction Over Urman

There is no specific jurisdiction over Urman under California's long-arm statute because he lacks "minimum contacts" with California. Courts in this circuit use a three-part test to assess whether a defendant has sufficient contacts for personal jurisdiction in a case that is not based on contract. Each of the following must be satisfied: (1) the nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; (2) the claim must be one which arises out of or related to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). Urman himself did not "purposefully direct" activities toward California: Plaintiffs plead no intentional acts specifically by Urman expressly aimed at California that he knew would cause harm to plaintiffs in California. The complaint fails to establish the second prong because, with no forum-specific contacts by Urman, each of plaintiffs' claims against Urman could not arise out of his contacts in California. Finally, the exercise of personal jurisdiction over Urman would not be reasonable for a variety of reasons.[3]

---

[3]    Because Urman is a resident of Canada (Compl. ¶ 55), and the complaint does not sufficiently allege that he conducted activities regularly in California, there is no basis for exercising general jurisdiction over him in California. *See Daimler,* 571 U.S. at 137 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile. . . .").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

### 1.    First Prong: Urman Did Not Purposefully Direct Conduct at California

To establish the first prong of specific personal jurisdiction, plaintiffs must submit evidence that Urman purposefully directed his conduct at the forum.  This requires evidence that he (1) committed an intentional act, (2) expressly aimed at California, (3) causing harm that he knew was likely to be suffered here.  *AMA Multimedia,* 970 F.3d at 1209 (citation omitted).

Briefly, the complaint recites that Urman: (1) falsely stated that Pornhub has a robust policy of removing offending material (Compl. ¶ 255) and that Pornhub is committed to eradicating all illegal content on its websites (*id.* ¶ 451); and (2) led a critic oriented campaign to "attack, discredit, and intimidate former employees and partners, whistleblowers, activists, and victims of its criminal schemes" (*id.* ¶ 439).  In support, Plaintiffs allege that non-consensual videos were taken of them and uploaded to various MindGeek-affiliated websites.  *See generally id.* ¶¶ 262-405.  But nowhere do they allege that *Urman* filmed, solicited, distributed, displayed, or uploaded these videos, had any knowledge of non-consensual conduct, or was involved in any way in the trafficking of plaintiffs—much less that he aimed any of the alleged conduct at California.  The Urman-related allegations on their face have nothing to do with California.

*First*, the complaint does not allege that Urman's allegedly false statements about Pornhub's policy of removing offending content or illegal and non-consensual content were "expressly aimed at" California.  *See id.* ¶¶ 255, 451.  Making a statement outside of California with no act or intent by the speaker to direct it toward California simply does not count as a jurisdictional contact here.  *See Picot*, 780 F.3d at 1215 (statements by Michigan-based defendant made outside of California that led to disruption of California-based plaintiff's contracts were not "expressly aimed" at forum and, therefore, were insufficient to support specific jurisdiction; plaintiff's

16

resulting injury was "not tethered to California in any meaningful way").  And, as explained below, statements by a company are not attributable to Urman for purposes of personal jurisdiction.  *See Sihler v. Fulfillment Lab, Inc*., 2020 WL 7226436 (S.D. Cal. Dec. 8, 2020), at \*4-5; *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) (for jurisdiction, "[t]he relationship [with the forum] must arise out of contacts that the 'defendant *himself*' creates with the forum state.").

*Second*, the allegations about an alleged critic oriented campaign do no better. The complaint alleges that the critic oriented campaign attacked former employees, partners, whistleblowers, activists, and victims of MindGeek's criminal schemes. However, these allegations are patently insufficient to show that Urman aimed his conduct at California because the complaint alleges that this activity involved only *one* of the 34 plaintiffs, Serena Fleites, and the complaint does not allege that Urman himself did any doxing or gaslighting, much less that he expressly directed others to direct their alleged conduct at California or that he even knew she resided there.  *See* Compl. ¶ 471(Urman and 5wPR "had GS attack" Fleites as a "#grifter").  *Compare Calder v. Jones*, 465 U.S. 783 (1984) (where National Enquirer employees researched and wrote article in question, reviewed, approved and edited it, and deliberately targeted California audience with defamatory comments about a California person and relied on sources in California for information in article).

*Third,* Plaintiffs' allegation that "MindGeek derives substantial profits from U.S.-based operations, including from California-based users" (Compl. ¶ 68) does no better because once again, it does nothing to show purposeful action *by Urman* personally.  *See AMA Multimedia*, 970 F.3d at 1210 ("Although Wanat may have foreseen that ePorner would attract a substantial number of viewers in the United States, this alone does not support a finding of express aiming."). *AMA Multimedia* is especially instructive: despite defendant Wanat allegedly (i) operating a pornography website housed outside the USA that U.S. citizens could and did access, which ran

17

advertisements that were geolocated based on user location; (ii) deriving profits from users in the USA (indeed, 20% of the website's revenue); (iii) deriving content for the website from the USA; and (iv) registering two proxy domain names and purchasing secondary services in the USA, the court still determined that there was insufficient evidence that the defendant targeted the USA.  Here, the complaint does not even recite allegations as specific as those deemed deficient in *AMA Multimedia.*

Similarly, plaintiffs' allegation that *MindGeek* unreasonably delayed removing the videos in question (*see generally* Compl. ¶¶ 262-405) does not convey that *Urman* was personally responsible for failing to take down these videos or that such events occurred in, were targeted at, or were meant to affect California.

Apart from the complaint's failure to allege Urman took action aimed at California, it fails to allege a necessary connected element: that the injury to Plaintiff in California was foreseeable.  *AMA Multimedia*, 970 F.3d at 1209 (defendant's intentional conduct expressly aimed at forum must cause harm "that the defendant knows is likely to be suffered in the forum state") (citation omitted).  This deficiency is not remedied by the fact that Fleites or any other California plaintiff suffered some injury because "mere injury to a forum resident is not a sufficient connection to the forum."  *Walden*, 571 U.S. at 290 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").  Plaintiffs must show that Urman knew where Fleites resided and that he foresaw that any injury would occur where she resided.  *Id*. at 290-91 (defendant's knowledge that plaintiff had "strong" Nevada connections was insufficient to subject defendant to personal jurisdiction in Nevada where his alleged intentional tortious conduct occurred outside Nevada).  Fleites' alleged injuries are personal and would follow her wherever she might choose to live or travel.  *See Picot*, 780 F.3d at 1215.  Thus, where – as here – the complaint does not allege that Urman even knew Fleites lived in California during the relevant time period, much less (as the

18

Supreme Court required in *Walden*) that he aimed his conduct at California, jurisdiction fails.

None of the above deficiencies can be remedied by attempting to impute the company's conduct to Urman. The California-specific contacts (if any) of the MindGeek corporate defendants, including those of Urman's employer, are no substitute for acts by Urman himself, whether as corporate employee or otherwise. This is because "[u]nder the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prods.*, *Inc.,* 885 F.2d 515, 520 (9th Cir. 1989); *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1109 (9th Cir. 2020) ("We do not impute a corporation's forum contacts to each of the corporation's employees."). Instead, "[c]orporate officers can be liable for corporate actions" *only when* "they are the guiding spirit behind the wrongful conduct, or the central figure in the challenged corporate activity." *In re Boon Global Ltd.*, 923 F.3d 643, 651 (9th Cir. 2019) (citation and quotation omitted).

The "guiding spirit" exception does not apply here. Plaintiffs do not allege that Urman was ever a corporate officer of or directly in control of any MindGeek company (a typical threshold for arguing that the exception applies).[4] *See Sihler,* 2020 WL 7226436, at *5. To the contrary, the complaint's allegations about who was in control conspicuously omit Urman.

For example, the complaint refers to MindGeek's "executive bosses" without any mention of Urman. Compl. ¶ 78; *see also id*. ¶ 82 (referring to "testimony by 'bosses' *and* defendants Antoon, Tassillo, and Urman …" indicating that Urman is not

---

[4]     The complaint alleges that Urman was a "Vice President, Product Management, Video Sharing Platform" of one entity (Compl. ¶ 55) but does not plead that this was an officer-level position. Many companies have dozens of VPs and there is no rule that all such VP-level employees are officers.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

one of the "bosses") (emphasis added).  Likewise, despite extensive allegations about the supposed "Bro Club" that purportedly ran the operation —with many individuals identified by name—and the "Bro-Club 'capos'" (*id.* ¶¶ 93-99), plaintiffs never plead that Urman was one of them.  *See also id.* ¶ 100 (referring to "*This core group of 'bosses'* [who] controlled all the elements of MindGeek's business …" yet not mentioning Urman).  (emphasis added).  Urman is also notably absent from the other group to which the complaint assigns control—the owners.  *Id.* ¶ 109 ("While the Bro-Club had daily operational control over MindGeek's business, they were not the exclusive 'bosses.'  Also in control were the actual owners of MindGeek … a group of uber wealthy individuals, families, and groups represented by several former Goldman Sachs financiers.").  The absence of Urman from the control groups identified by the complaint is not remedied by the complaint's conclusory allegations that "[t]he Enterprise was comprised of a network of sham shell entities throughout the world" (*id.* ¶ 537) that Urman partially directed and controlled along with several other MindGeek executives.  This allegation is far too conclusory to confer jurisdiction on Urman under the guiding spirit exception.  *See Swartz*, 476 F.3d at 766 ("[M]ere "bare bones" assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden.");  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (labels and conclusions are not sufficient to state a claim).  In fact, the conclusory allegation about Urman's mid-level control over sham entities is arguably inconsistent with the complaint's more detailed allegations about the individuals who supposedly controlled MindGeek, its "Bro Club" and "executive bosses," in which Urman is nowhere alleged to be a member (*see* Compl. ¶¶ 78, 82; 93-124) and other allegations in the complaint that assert that Urman and others were "controlled by and directed by MindGeek's financiers."  *Id.* ¶ 537.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

In short, the focus of the inquiry into specific jurisdiction must be on the acts that the complaint alleges Urman himself directed and, as discussed, the complaint is deficient on that score.

### 2. Second Prong: Plaintiffs' Claims Do Not Arise Out of Urman's Non-Existent Forum-Related Activities

The second prong of specific personal jurisdiction requires plaintiffs' claims to arise out of or relate to the defendant's forum contacts.

Because plaintiffs fail to demonstrate that Urman conducted any activity in California, the claims, by definition, cannot have arisen from his forum-related activities. *AMA Multimedia*, 970 F.3d at 1208.

### 3. Third Prong: Exercising Jurisdiction Over Urman Would Offend Traditional Notions of Fair Play and Substantial Justice

Even if plaintiffs could establish that Urman purposefully directed out-of-state activities at California *and* that their claims arose out of those forum-related activities, exercising personal jurisdiction over Urman still would offend traditional notions of fair play and substantial justice.  Courts consider seven factors in determining whether exercising jurisdiction over a foreign defendant is reasonable: (1) "the extent of the defendant's purposeful interjection into the forum state's affairs;" (2) "the burden on the defendant of defending in the forum;" (3) "the extent of conflict with the sovereignty of the defendants' state;" (4) "the forum state's interest in adjudicating the dispute;" (5) "the most efficient judicial resolution of the controversy;" (6) "the importance of the forum to the plaintiff's interest in convenient and effective relief;" and (7) "the existence of an alternative forum." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993).  Significantly, courts assign greater weight in this calculus to the burden jurisdiction imposes on a defendant: "[T]he primary concern is the burden on the defendant." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780, (2017) (quoting *World-Wide*

21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)) (internal quotations omitted); s*ee also Rocke v. Canadian Auto. Sport Club*, 660 F.2d 395, 399, 400 (9th Cir. 1981) ("A primary concern under a due process analysis is with the burden placed upon the defendant.… Due process requires that we weigh more heavily the expectations of and burdens upon the defendants than we weigh the hardships upon the plaintiff") (citation omitted).

Taken together, these factors weigh heavily against exercising jurisdiction over Urman.

Factor 1: Even if, somehow, the complaint alleged that Urman's activities connected to or had some effect on California, it does not establish that Urman did anything to purposefully interject himself into California or the United States. *See Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981) ("The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise.").

Factor 2: Litigating in California would significantly burden Urman because he resides in Canada, and because the majority of parties—individuals who might have knowledge concerning the complaint allegations—are located outside of the United States. *WarGaming.net Ltd. v. BlitzTeam LLC*, 2021 WL 3619956, at *5 (C.D. Cal. Jan. 20, 2021) (Carney, J.) ("The Supreme Court has recognized that defending a lawsuit in a foreign country can impose a substantial burden on a nonresident defendant.") (citations omitted).

Factor 3: Asserting jurisdiction over Urman raises conflicts with Canada's sovereignty, his home nation. "The Ninth Circuit has held that when a 'defendant is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction.'" *Id.* at *5 (citing *Amoco Egypt Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 852 (9th Cir. 1993)). This factor weighs heavily in the seven factor analysis where, as here, the defendant's contacts with the

22

forum state or the United States are alleged to be minimal at best.  *See Core-Vent,* 11 F.3d at 1489*; Glencore Grain Rotterdam B.V. v. Shivnath Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002)*.*  The encroachment on foreign sovereignty interests is even greater here where Canada does not have a statute equivalent to RICO.  Case law has recognized this as a particularly important factor of the seven.  *See Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 115 (1987) ("Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.").

Factor 4: California has little interest, if any, in adjudicating this dispute because the vast majority of plaintiffs—29 of 34—claim to have resided outside of California when injured (with 14 residing outside the country), almost all of the defendants reside outside the country, and every alleged act by Urman did not occur in California or affect California in a significant manner.  *See Glencore*, 284 F.3d at 1126 (California's interest in dispute involving foreign parties was "slight"); *WarGaming.net*, 2021 WL 3619956, at *5 (U.S. "has little interest in adjudicating" suit where plaintiff and defendant are not U.S. citizens).

Factor 5: Plaintiffs could litigate their claims over Urman, assuming any are viable, in an alternative forum: Canada.  Because all but one of the individual defendants are residents of Canada and most other defendants reside outside the U.S., "most, if not all, of the evidence and witnesses in this case are located overseas" and resolution in this Court would not be most efficient.  *WarGaming.net*, 2021 WL 3619956, at *5.

Factor 6: Because most of the plaintiffs are not California residents, with many not even U.S. residents, there is little basis to conclude that this forum is important to their convenient and effective relief.

Factor 7: As noted above, Canada is an alternative forum, at least as to Urman and most of the other individual defendants.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

In short, because all of the "reasonableness" factors weigh against personal jurisdiction, the third prong of the analysis indicates that exercising jurisdiction over Urman would not comport with "fair play and substantial justice"

### B. Rule 4(k) Does Not Create Personal Jurisdiction Over Urman

Personal jurisdiction likewise is lacking under Federal Rule of Civil Procedure 4(k).  That rule provides for personal jurisdiction when (1) the claim against the defendant arises under federal law, (2) the defendant is not subject to the personal jurisdiction of any state court, and (3) the exercise of personal jurisdiction comports with due process.  *AMA Multimedia*, 970 F.3d at 1208.  "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [defendant] and the forum state, [courts] consider contacts with the nation as a whole."  *Id.* (citation and quotation omitted).

Rule 4(k) applies when a defendant has "ample contacts with the nation as a whole, but whose contacts are so scattered among states that none of them would have jurisdiction."  *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001), *as amended* (July 2, 2001) (citation omitted).  When assessing nation-wide contacts under Rule 4(k), "[t]hat bar is relatively high."  *Fumoto Giken Co. Ltd. v. Mistuoka*, 2015 WL 12766167, at *4 (C.D. Cal. Apr. 16, 2015).

The allegations against Urman fail to clear the high bar of Rule 4(k).  In addition to alleging no conduct by Urman in California, the complaint alleges no conduct by him in the United States or expressly directed at the United States.  Indeed, plaintiffs' allegations show far less U.S. conduct by Urman than did the allegations of the plaintiff in *AMA Multimedia*, which were held insufficient to establish personal jurisdiction over a Polish citizen who operated a pornography website.  In *AMA Multimedia*, the U.S. was the website's largest market, plus the defendant registered two domain names in Arizona that forwarded users to the website and entered into an agreement with a U.S.-

24

based company for DNS services.  Nevertheless, the court held that "nothing more than [plaintiff's] contested bare allegations support any *personal involvement by Wanat* in uploading, encouraging the uploading, or intentionally failing to remove the infringing content." *AMA Multimedia*, 970 F.3d at 1205, 1212 n.9 (emphasis added).  The critic oriented allegations involving Urman fare no better: none are tied to a particular location (much less the United States), either in how they were executed or their effect.[5]

## II.   Urman is Immune Under CDA Section 230

Even if this Court could properly exercise personal jurisdiction over Urman, all of plaintiffs' claims against him are barred by Section 230 of the Communications Decency Act.[6]  Section 230 shields Interactive Computer Service ("ICS") providers like MindGeek from liability for lawsuits based on decisions to publish or remove third-party content.  47 U.S.C. § 230(c).  Section 230 also applies to individuals who work for the ICS.  *See Klayman v. Zuckerberg*, 753 F.3d 1354, 1357–58 (D.C. Cir. 2014) (Mark Zuckerberg, CEO of Facebook, is entitled to section 230 immunity because "he is a 'provider' of Facebook's interactive computer service."); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 993 (S.D. Tex. 2017) (Facebook executives are "entitled to CDA immunity"); *Barrett v. Rosenthal*, 40 Cal. 4th 33, 59 (2006) (Section 230 "confers immunity on" individuals who operate website). The law confers immunity when (1) the defendant is an ICS provider, (2) the complaint treats the

---

[5]    Moreover, of the 19 counts in the complaint, 18 were pleaded in a way that makes no reference, explicitly or implicitly, to the alleged critic oriented campaign. Only the RICO counts even arguably reference the critic oriented allegations, explicitly referencing "hacking" for example.

[6]    If the Court determines that it lacks jurisdiction, it need not consider whether plaintiffs state a claim.  See, e.g., nexTUNE, Inc. v. McKinney, 2013 WL 2338260, at *2 (W.D. Wash. May 29, 2013) ("The Court will address [the] motion to dismiss for lack of personal jurisdiction first. If [it] lacks jurisdiction, it does not have authority to decide the motion to dismiss under Rule 12(b)(6).").

25

defendant as the publisher or speaker of the content in question, and (3) someone other than the defendant provided or created the content at issue. *Igbonwa v. Facebook, Inc.*, 2018 WL 4907632, at *5 (N.D. Cal. Oct. 9, 2018).  Under Section 230, courts regularly dismiss (with prejudice) complaints like the present one.  *E.g., Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874, 892 (N.D. Cal. 2017).

Although this Court recently found that Section 230 did not bar claims against MindGeek companies in another case (*Doe v. MindGeek USA Inc.*, No. 8:21-CV-00338-CJC (ADSx), Dkt. No. 66 (C.D. Cal. Sept. 3, 2021)), subsequent developments in the law have raised serious questions about that decision's viability.  *See Doe v. Reddit, Inc.*, 2021 WL 4348731, at *4 (C.D. Cal. July 12, 2021) (holding child pornography and sex trafficking claims barred by Section 230, and FOSTA exception inapplicable (citing *Gonzalez*)); *J.B. v. G6 Hospitality, LLC*, 2021 WL 4079207, at *12 (N.D. Cal. Sept. 8, 2021) (holding TVPRA claims against Craigslist barred by Section 230 and FOSTA exception does not apply); *M.L. v. Craigslist, Inc.*, No. 3:19-cv-06153-BHS-TLF (W.D. Wash. Sept. 16, 2021) (magistrate judge's report and recommendation that court dismiss state law claims concerning sex trafficking based on Section 230 (citing *Gonzalez*)).

In assessing the applicability of Section 230 "close cases . . . must be resolved in favor of immunity. . ." to honor Congress's intent to broadly protect online platforms from lawsuits.  *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 408 (6th Cir. 2014) (citation omitted).

As the MindGeek corporate defendants discuss in their motion to dismiss, plaintiffs have not alleged, as they must, that any defendant, including Urman, materially contributed to the "creation or development" of the content depicted by plaintiffs as allegedly unlawful.  Even if the complaint adequately alleged (it does not) that Urman was somehow involved in making content easier to locate, knew of the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

existence of content, shared revenue with alleged traffickers, made law enforcement's job more difficult, or made private messaging systems available, those allegations would not suffice to remove Section 230's protection.  The exception to the exemption (for certain violations of the TVPRA) does not apply here either where there are no allegations that Urman knew of the alleged trafficking or benefitted from it in any way. *Reddit, Inc.*, 2021 WL 4348731, at *4.  As *Reddit* made clear, "maintaining 'affiliations with sex traffickers by enabling the posting of child pornography on its websites' and 'making it easier to connect traffickers with those who want to view child pornography'…is not sufficient to show 'a continuous business relationship between' Reddit and traffickers.  Direct association or a continuous business relationship is required." *Id*.  Nor is continuing to publish third party content after being asked to take it down sufficient.  *See La'Tiejira*, 272 F. Supp. 3d at 994.  Or offering tools that allow users to access content more easily.  *See, e.g., Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1196 (N.D. Cal. 2009) (website does not impermissibly "contribute" to content when it provides neutral tools to create web content, even if the website knows that the third parties are using such tools to create illegal content.").

Indeed, as the MindGeek corporate defendants' brief points out, the allegations about the handling of the images and videos *of plaintiffs* make clear that that content was created by entities or individuals *other than the defendants in this complaint.* Nothing close is alleged here.

## III.   <u>Plaintiffs Fail to State a RICO Claim Against Urman</u>

Plaintiffs allege three civil RICO claims against all defendants, including Urman: violations of 18 U.S.C. sections 1962(a), (c) and (d).  These claims should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) because the RICO allegations as a whole are deficient.  Separately, the predicate fraud claims are not pled with sufficient particularity.

27

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully" and "mere conclusory statements" do not suffice.  *Iqbal*, 556 U.S. at 678; *see also Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations.") (citation omitted).  The RICO claims against Urman are not plausible.

**A.     The RICO Claims All Suffer from Several Fatal Defects**

All of plaintiffs' RICO claims fail because their allegations do not plead certain basic, required elements, including alleging an enterprise separate from the alleged racketeering activity, alleging that Urman was involved in at least two predicate acts, and alleging that any conduct by Urman caused injury to plaintiffs' property or business.

**1.     Failure to Allege an Enterprise that is Separate from the Alleged Racketeering Activity**

An "associated-in-fact" RICO enterprise "is a group of persons associated together for a common purpose of engaging in a course of conduct." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (quoting *U.S. v. Turkette*, 452 U.S. 576, 583 (1981)).  "The enterprise is not the pattern of racketeering activity; *it is an entity separate and apart from the pattern of activity in which it engages*." *Turkette*, 452 U.S. at 583 (emphasis added; internal quotations omitted) (existence of an enterprise is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.").

Plaintiffs allege that MindGeek committed the following predicate RICO acts: (1) sex trafficking; (2) sexual exploitation of children; (3) use of the mails and wires in a scheme to defraud the public; and (4) criminal infringement of copyright.  Compl. ¶ 540.  There is no allegation of a structure or association of entities *apart from the*

28

*activity*. *See Johnson v. JP Morgan Chase Bank*, 2008 WL 1925026, at *4 (E.D. Cal. Apr. 29, 2008) (dismissing section 1962(c) claim where complaint "lacks facts to support an enterprise which exists independently from alleged racketeering activity."); *Clark v. Nat'l Equities Holdings, Inc.*, 561 F. Supp. 2d 632, 639 (E.D. Tex. 2006) (claims that defendants participated in RICO enterprise involving investor "scamming" held insufficient (and dismissed with prejudice under Sections 1962(a) and (c)) because they "failed to establish that this enterprise exists as an entity separate and apart from the pattern of illegal activity.").

All of Plaintiffs' several RICO claims are fatally deficient because of this failure.[7]

### 2. The Complaint Fails to Allege that Urman Was Involved in the Predicate Acts

A RICO complaint must allege that Urman was involved in at least two predicate acts, but plaintiffs do not do so. In this regard, plaintiffs cannot rely on allegations against the *other* defendants (and those allegations are by no means sufficient against those others) to plead that Urman engaged in the RICO predicate acts. *See Eclectic Props. E., LLC v. The Marcus & Millichap Co.*, 2012 WL 713289, at *6 (N.D. Cal. Mar. 5, 2012) (a RICO claim's "requirements *must be established as to each individual defendant*.") (emphasis added; citation omitted); *Prime Partners IPA of Temecula, Inc. v. Chaudhuri*, 2012 WL 1669726, at *11 (C.D. Cal. May 14, 2012) ("Plaintiffs fail to delineate how any of these individual defendants independently participated in the operation or management of the enterprise, much less how they did so through the alleged pattern or patterns of racketeering activity.").

---

[7] Additional defects in the pleading are discussed by the MindGeek corporate defendants, including how the alleged members "associated together for a common purpose" and what each did (*see Doan v. Singh,* 617 F. App'x 684, 686 (9th Cir. 2015)), and the insufficiency of the acts based on the alleged money laundering and copyright violations.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

The complaint does not allege that Urman was responsible for making misrepresentations to those plaintiffs who sought to remove videos from MindGeek's websites.  *See* Compl. ¶ 556.  Indeed, plaintiffs do not allege that Urman had any communications with them regarding their videos or that Urman had any knowledge about plaintiffs' requests and concerns.

The same can be said for the allegations of the critic oriented campaign: they identify specific conduct undertaken by others, not Urman (*see discussion at supra, pages 7-8*), and in any event, those allegations only constitute, at most, one predicate act.  The critic oriented allegations fail to support a claim against Urman under RICO for an entirely separate reason:  at most, they assert violations of the mail and wire fraud laws but fail to fulfill the elements required by those laws.  Specifically, paragraph 539 alleges that the defendants engaged in hacking (subparagraph e) and defamation and hacking (subparagraph i) but the only provisions that this paragraph offers as potential violations of the law to which hacking, for example, could pertain are the mail and wire fraud statutes.  The problem for the plaintiffs is that they have failed to plead a cognizable fraud under those statutes (no loss of property or money flowed from the critic oriented campaign) and, independently fatal, the allegations fail to satisfy the Rule 9(b) threshold for fraud by not adequately pleading two instances of fraud.  Passing reference to hacking as part of the RICO scheme's predicates without more explicit specification of the who, what, where, when does not pass muster.  The complaint's allegations that Urman "directed" others does not plead *his role* with the kind of specificity demanded by the rules.[8]

---

[8]    The allegations about disinformation (paragraphs 255 and 451) are even more deficient as racketeering acts.  Although those allegations are factually wrong, assuming their truth for this motion, they do not describe conduct that can be considered a racketeering act.  At most, those paragraphs describe lies being told to the public, activity that violates no law and certainly does not state a racketeering act under Section 1961.  Plaintiffs may claim that these "lies" were part of the overall effort to

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-
APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

Thus, as to Urman, the complaint fails the requirement to plead "at least two predicate acts *by each defendant*." *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011) (emphasis added).  This failure independently disqualifies all of the RICO claims against Urman.

### 3. The Complaint Fails to Allege that the Conduct Attributed to Urman Caused Injury to Plaintiffs' Property or Business

Plaintiffs also fail to explain how the alleged conduct of Urman caused injury to their *business or property* as required under RICO.  *See City and Cty. of San Francisco v. Philip Morris, Inc.*, 957 F. Supp. 1130, 1138 (N.D. Cal. 1997); *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1201 (C.D. Cal. 2008) (defendant's alleged conduct must be "both the 'but for' and proximate cause of a concrete financial injury" to plaintiffs) (citations omitted).

Plaintiffs allege that they suffered the following damages as a result of defendants' violations: (1) the costs incurred in removing the non-consensual content, including attorney's fees, consulting fees, and copyright fees; (2) termination of employment and other lost income; (3) deprivation of employment opportunities; and (4) loss of their images.  Compl. ¶ 579.  These categories of damages asserted under 1962(a)—which are identical to plaintiffs' alleged damages in support of their section 1962(c) and (d) claims (Compl. ¶¶ 567, 589)—are not recoverable under RICO.  *See Walker v. Gates*, 2002 WL 1065618, *9-10 (C.D. Cal. May 28, 2002) (injury to reputation, loss of employment, and loss of employment opportunity are not recoverable under RICO); *Diaz v. Gates,* 420 F.3d 897, 900 (9th Cir. 2005) (en banc)

---

allow MindGeek to flourish and continue to violate the law as plaintiffs allege MindGeek did.  But that requires proof that MindGeek (and Urman) were in fact engaged in the violative activities themselves, and any subsequent lies about those activities cannot substitute for allegations of conduct that violate the law – none of which ascribe any role to Urman.  *See, e.g.,* Compl. ¶¶ 486, 489, 494, 519-522, 527-532, 592, 642.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

(lost job opportunities only cognizable where defendant allegedly interfered *intentionally* in contract or future business relationships); *Izenberg*, 589 F. Supp. 2d at 1204 (legal fees and prospective injuries are not recoverable under RICO). Alleged harm to the public (*see* Compl. ¶¶ 551-557) is equally inadequate because it does not plead that *plaintiffs*' "business or property was injured *by reason of* the alleged RICO violation." *TEG Staffing, Inc. v. Platt*, 2008 WL 4571257, at *2 (N.D. Cal. Oct. 14, 2008); *see also Holmes v. Sec. Inv'r Protection Corp.*, 503 U.S. 258, 266 (1992).

### 4.    The Predicate Act of Fraud is Not Pled With Specificity

The complaint broadly pleads RICO allegations against *all defendants collectively*, including the "scheme to defraud" allegation in paragraph 540, without detailing Urman's role in the alleged predicate acts. That falls far short of the specificity required by Rule 9(b). *See Izenberg*, 589 F. Supp. 2d at 1204 (Rule 9(b) requires alleging "the time, place, and manner of each act of fraud, the nature of the fraudulent scheme, and the role of each defendant in the scheme.") (citation omitted); *see also Sec. and Exchange Comm'n v. Ferrante*, 2019 WL 8230852, at *4 (C.D. Cal. Jan. 23, 2019) (Carney, J.) (a "shotgun pleading" in which plaintiff "fails to differentiate between the defendants such that it is impossible to determine which defendant is accused of what" is insufficient).

### B.    Additional Defects Unique to Each of the RICO Claims

#### 1.    Section 1962(a)

Beyond the reasons discussed above with respect to all of the RICO claims, the Section 1962(a) claim independently fails for several other reasons.

*First, failure to satisfy section 1962(a)'s investment requirement.*

"RICO Section 1962(a) prohibits the use of income derived from a pattern of racketeering activity in the acquisition, establishment, or operation of any enterprise engaged in interstate racketeering activities." *In re Rexplore, Inc. Sec. Litig.*, 685 F. Supp. 1132, 1141 (N.D. Cal. 1988) (*abrogated on other grounds*). To seek a civil

32

remedy under section 1962(a), plaintiffs must allege that they were injured "by reason of" Urman's *use or investment* of racketeering proceeds. *See U.S. Concord, Inc. v. Harris Graphics Corp.*, 757 F. Supp. 1053, 1059 (N.D. Cal. 1991) ("The plain language of Section 1962(a) indicates that it does not prohibit the actual *receipt* of income derived from racketeering activity, but only the *use* or *investment* of such income."); *see also Rexplore*, 685 F. Supp. at 1141 ("[T]he gravamen of the offense under Section 1962(a) is not the underlying racketeering activity itself, but the subsequent use and investment of proceeds obtained through the racketeering activity.") (citation omitted). The complaint recognizes this special requirement when it asserts that:

> [d]efendants used funds they fraudulently procured through the alleged pattern of predicate acts to: (a) fund the Enterprise through transfers from MindGeek to its network of sex traffickers in Eastern Europe and Asia; (b) fund the dissemination of materially false and fraudulent information used to deceive customers that the content on its websites was legal, consensual, and verified; and (c) fund the expanded attack on Plaintiffs as alleged in this complaint, including but not limited to the use of illicit funds from subscription payments to view child pornography, child sexual abuse material, and other non-consenting content and ad generations related to such material.

Compl. ¶ 575.

There are two fatal defects in these allegations:

- They say nothing about *Urman's connection* to this purported investment. The complaint nowhere alleges that Urman used or invested any proceeds obtained through racketeering activity. Lumping one defendant together with others and making collective allegations against the group is no substitute. *Izenberg*, 589 F. Supp. 2d at 1203-04. For this reason alone, plaintiffs' section 1962(a) claim fails.

33

- They do not establish that any damages were proximately caused by the use or investment of the proceeds.  For example, plaintiffs' alleged costs to remove the non-consensual content, if any, allegedly resulted from defendants' failure to remove the content.[9]  Such costs did not result from defendants, much less Urman individually, *using or investing* any ill-obtained proceeds.  *See Rexplore*, 685 F. Supp. at 1142.

The following comparisons drive home the complaint's failure to meet the investment threshold.

In *Simon v. Value Behavioral Health*, the defendants "fraudulently denied health benefit claims" to patients and then reinvested that income to "develop a group of preferred medical providers who operated to eliminate outside providers."  208 F.3d 1073, 1083 (9th Cir. 2000) (*overruled on other grounds*).  Competitors were driven out of business by the defendant preferred providers.  *Id.*  The competitors were not injured by the fraudulent denial of health benefit claims (*i.e.* the predicate act), but were injured specifically by the *reinvestment of the proceeds* stemming from the denial.  *Id.*

In contrast, in *Sybersound Records*, the plaintiff alleged that the defendants infringed their copyright, which allowed them to undercut plaintiff's prices.  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008).  The Court ruled that the plaintiff failed to allege "any injury separate and distinct from the injuries incurred from the predicate act itself" because it was the initial infringement by defendants, "not the income from the sale of pirated records, [that] allegedly allowed [defendants] to undercut [plaintiff's] prices."  *Id.*  Accordingly, the Court upheld the district's court's dismissal of the section 1962(a) and (c) RICO claims.  *Id.* at 1150.

---

[9]     These costs also were not caused by Urman because there is no allegation that he was responsible or even had knowledge of plaintiffs' requests to remove any non-consensual videos.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-
APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

*Second*, *section 1962(a)'s requirement that defendant participate as a principal.*

Section 1962(a) "limits liability to those defendants who participate in racketeering activity as a *principal* within the meaning of 18 U.S.C. § 2." *Building Indus. Fund v. Local Union No. 3, Intern. Broth. Of Elec. Workers, AFL-CIO*, 992 F. Supp. 162, 177 (E.D.N.Y. 1996) (emphasis added); *see also Brady v. Dairy Fresh Prods. Co.*, 974 F.2d 1149, 1152 (9th Cir. 1992) ("Under the clear language of [section 1962(a)], the person who receives and invests the 'racketeering' income must have *participated as a principal* in the racketeering activities.") (emphasis added); *Salas v. Int'l Union of Operating Engineers*, 2015 WL 728365, at *8 (C.D. Cal. Feb. 18, 2015) ("An exception allowing civil RICO claims to be premised upon the aiding and abetting of underlying predicate acts would swallow *Central Bank of Denver*'s rule foreclosing implicit civil aiding and abetting liability.").

The complaint fails to meet this high bar because it does not allege that Urman acted as a principal in the required two racketeering acts.  At most, the complaint attributes to Urman responsibility for the critic oriented campaign and even there, does not describe Urman as a principal, as the critic oriented conduct is ascribed to a wide array of others that does not include Urman (*e.g.,* a woman named GS in Montreal who is an "operative" using the name "EveDeco," "ghost bloggers," a public relations firm called 5wPR, and "numerous MindGeek Pornhub models, including Maya Morena, Ginger Banks, Gwen Adora, and its Brand Ambassador Asa Akira").  Compl. ¶¶ 439, 453-54, 457-58.

## 2.    Section 1962(c)

Plaintiffs' section 1962(c) claim fails for all the foundational reasons explained above and the following additional reason: it fails to allege that Urman was involved in directing the conduct of the enterprise's affairs.  *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) ("In order to participate, directly or indirectly, in the conduct of such enterprise's affairs, one must have some part in directing those affairs.") (internal

35

quotations omitted); *see also Walter v. Drayson*, 538 F.3d 1244, 1247-48 (9th Cir. 2008) (Section 1962(c) allegations inadequate where "there is no indication that [defendant] … was thereby directing the enterprise.  It is not enough that [defendant] failed to stop illegal activity, for *Reves* requires 'some degree of direction.'") (citation omitted); *Eclectic Props.*, 2012 WL 713289, at *6 (defendant must be able to influence how chain of command operates).

A violation of section 1962(c) "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  Plaintiffs must establish all of these elements *as to each defendant.  In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 4890594, at *10 (N.D. Cal. Oct. 30, 2017) (citation omitted); *Eclectic Props.*, 2012 WL 713289, at *6 (citation omitted).

Instead of asserting that Urman was involved somehow in directing the enterprise, the complaint concedes that the enterprise was controlled by MindGeek's financiers, not Urman.   Compl. ¶ 571. The complaint must show that Urman "conducted or participated in the conduct of" the "*enterprise's* affairs," not just [his] *own* affairs."  *Reves*, 507 U.S. at 185.  It does not.

### 3.    Section 1962(d)

Because plaintiffs fail to allege against Urman the requisite elements of their RICO claims under section 1962(a) and (c), any conspiracy claim against him must fail as well.  *See Religious Tech. Ctr. v. Wollersheim*, 971 F. 2d 364, 367 n.8 (9th Cir. 1992); *see also Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) ("Plaintiffs cannot claim that a conspiracy to violate RICO [under § 1962(d)] existed if they do not adequately plead a substantive violation of RICO" under section 1962(a)-(c)) (citation omitted).

**IV.**  **Plaintiffs Have Not Pled Facts to Support Their Remaining Claims**

    **A.**  **Plaintiffs Fail to State a Claim Under the TVPRA**

Plaintiffs' First and Second claims allege violations of 18 U.S.C. sections 1591(a)(1) and 1591(a)(2) of the Trafficking Victims Protection Reauthorization Act ("TVPRA").  In their Fourth claim, plaintiffs allege a violation of section 1594(c), asserting that defendants "conspired by agreement or understanding, to commit unlawful acts."  Compl. ¶ 509.  None of these claims has merit.

    **1.**  **The Complaint Does Not Allege that Urman Engaged in Sex Trafficking**

Section 1591(a)(1) punishes primary violators who knowingly engage in sex trafficking.  18 U.S.C. § 1591(a).  Aside from insufficient conclusory allegations, nothing in the complaint supports the notion that Urman is a sex trafficker under section 1591(a)(1).

To plead a primary violation, a plaintiff must allege that the defendant "recruit[ed], entice[d], harbor[ed], transport[ed], provide[d], obtain[ed], advertise[d], maintain[ed], patronize[d], or solicit[ed] by any means a person" knowing that he or she "will be . . . cause[d]" to engage in a commercial sex act.  18 U.S.C. § 1591(a)(1).  Plaintiffs allege that:

> *MindGeek* recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and/or solicited Plaintiffs and other minors, and victims of rape, sexual abuse, sexual exploitation and nonconsensual sex that they knew, should have known, or recklessly disregarded had not attained the age of majority at the time of the commercial sex act and/or were caused to engage in commercial sex acts through combination of force, threats of force, fraud, or coercion . . . ."

Compl. ¶ 486 (emphasis added).  Plaintiffs further allege that the MindGeek Defendants "knowingly benefit from a sex trafficking venture by benefitting

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

financially or receiving something of value from participation in a venture . . . ." *Id.* ¶ 493.  These are insufficient in two ways.

*First*, Plaintiffs do not allege that *Urman* personally engaged in sex trafficking of plaintiffs, knowingly assisted those so engaged, or was involved in any way with the alleged "known East Asia traffickers."  For this reason alone, plaintiffs' section 1591(a)(1) claim fails.

Indeed, even as to MindGeek corporate entities, plaintiffs allege only in conclusory fashion that *MindGeek* "recruited, enticed, harbored … and/or solicited Plaintiffs" to engage in commercial sex acts and that MindGeek "partner[ed] with known traffickers, including known East Asia traffickers, and others through its ModelHub program." *Id.* ¶ 486.

*Second*, where Plaintiffs actually allege less conclusory allegations, they assert that MindGeek recruited, commissioned, and solicited (among other things) *content* through human trafficking, produced CSAM and other nonconsensual *content*, pushed and re-uploaded all effective *content* on its tubesites, and modified the effective *content*.  *Id.*  But section 1591(a)(1) requires the recruiting, enticing, etc. of *a person* (*i.e.* plaintiffs), not their videos, photographs, or content in general.  18 U.S.C. § 1591(a)(1).  These allegations, therefore, do not meet the definition of a sex trafficking violation under section 1591(a)(1).

### 2.    Urman Did Not Benefit from Participation in a Sex Trafficking Venture

Section 1591(a)(2) punishes whoever "knowingly … benefits, financially or by receiving anything of value, from participation in a venture" with a primary violator. 18 U.S.C. § 1591(a)(2); *see also* 18 U.S.C. § 1595(a) (same knowledge requirement in TVPRA civil remedy provision).  "Participation in a venture" is expressly defined as "knowingly assisting, supporting, or facilitating [sex trafficking]." *Id.* at § 1591(e)(4). Section 1591 requires that "the defendant know in the sense of being aware of an

38

established modus operandi that will in the future cause a person to engage in prostitution." *U.S. v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010).

Plaintiffs allege that the MindGeek Defendants violated section 1591(a)(2) because "MindGeek benefits from premium subscriptions and advertisement revenues" and the MindGeek Defendants "used a network of sham shell companies to perpetuate a long-running and elaborate pattern of illegal schemes through which the members of the MindGeek venture enriched themselves." Compl. ¶ 495. Plaintiffs also allege that the "MindGeek Defendants knew, recklessly disregarded the fact that, or should have known that they benefited from participation in a sex trafficking venture, including through the posting and dissemination of videos and images on their websites depicting sex trafficking." *Id.* ¶ 496.

Once again, this claim fails with respect to Urman because the complaint does not allege that *Urman* knowingly participated in a sex trafficking venture that had the common purpose of trafficking plaintiffs or that Urman knew or recklessly disregarded (or even should have known of) any benefit from participating in the venture. *See U.S. v. Afyare*, 632 F. App'x 272, 285 (6th Cir. 2016) ("The defendant's mere membership in the venture is insufficient if he is ignorant of the venture's sex trafficking activities (and the means and methods thereof)."); *see also Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169-70 (S.D.N.Y. 2019) (receiving compensation from entity engaged in sex trafficking is not a benefit for purposes of Section 1591(a)(2) because "there must be a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with … constructive knowledge of that causal relationship."). Alleging that *MindGeek* or the collective "MindGeek Defendants" benefitted (even if sufficient for MindGeek, which it is not) is not sufficient to plead a claim against Urman. *See Beatport LLC*, 2020 WL 3977602, at *5 ("It is a "basic pleading defect for a complaint to 'lump' parties together and to fail to distinguish between named defendants.") (citation omitted); *United States v. United*

39

*Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016) (noting "failure to allege particular details" for specific defendants due to complaint's "collective allegations").

### 3. The Complaint Does Not Sufficiently Allege a Conspiracy Claim Under Section 1594(c) [10]

Just as their RICO conspiracy claim cannot stand because of a failure to adequately plead the elements of the underlying substantive claims, plaintiffs' derivative conspiracy claim under section 1594(c) cannot stand because the elements of their substantive claims are inadequately pled.

### B. Plaintiffs Fail to State a Claim Under 18 U.S.C. Sections 2252, 2252A, and 2255

In their Fifth and Sixth claims, plaintiffs allege violations of 18 U.S.C. sections 2252 and 2252A. Section 2252 punishes individuals who knowingly transport, distribute, sell, receive, or possess visual depictions of minors engaging in sexually explicit conduct. 18 U.S.C. § 2252. Section 2252A punishes individuals who knowingly transport, receive, distribute, reproduce, advertise, promote, present, or solicit visual depictions of minors engaging in sexually explicit conduct. *Id.* § 2252A. (The complaint also refers to section 2255, which simply provides a private right of action for violations of sections 2252 and 2252A. 18 U.S.C. § 2255.)

These claims lack merit because plaintiffs fail to allege that Urman was involved in any of the alleged conduct (much less that he *knowingly* was involved). All of the relevant allegations in support of these claims pertain to MindGeek in general, not to Urman. Compl. ¶¶ 517-534. Accordingly, these claims should be dismissed.

---

[10] As to plaintiffs who reside outside the United States, 18 U.S.C. §1596 presents an additional insurmountable obstacle because extra-territorial jurisdiction over Section 1591 offenses does not exist unless: (i) the offender is a national of the U.S. or an alien lawfully admitted for permanent residence; or (ii) the offender is present in the U.S. – neither of which is true of Urman according to the complaint.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

### C.      Plaintiffs Fail to State a Claim for Invasion of Privacy Violations

In their Tenth, Eleventh and Twelfth claims, plaintiffs assert the common law torts of public disclosure of private facts, intrusion into private affairs, and placing plaintiff in false light.

To support these three claims, plaintiffs allege that "[b]y maintaining, streaming, distributing, reuploading, and monetizing videos and images of sexually explicit conduct … of plaintiffs on its websites" "*MindGeek* publicly disclosed private facts about plaintiffs" and "*MindGeek* intentionally intruded upon the solitude or seclusion, private affairs or concerns of plaintiffs."  Compl. ¶¶ 592, 600, 605 (emphasis added).

These three claims should be dismissed because they fail to allege that *Urman* himself took the required action (*e.g.,* publically disclosed private facts about plaintiffs or intentionally intruded upon the solitude or seclusion, private affairs, or concerns of plaintiffs).  Accordingly, these claims fail as well.

### D.      Plaintiffs Fail to State a Claim for Common Law and Statutory Misappropriation Violations

In their Thirteenth and Fourteenth claims, plaintiffs seek relief for common law and California's statutory misappropriation of name and likeness.  Plaintiffs allege that "[b]y maintaining, streaming, distributing, reuploading, and monetizing videos and images of non-consensual sexual acts and child pornography of Plaintiffs on their websites … *MindGeek* appropriated Plaintiffs' identities and pictures."  Compl. ¶ 612 (emphasis added); *see also id*. ¶ 617 (alleging that MindGeek "knowingly" appropriated plaintiffs' identities and pictures).

Again, the complaint does not contain any allegations that Urman personally used plaintiffs' identities or appropriated their likenesses (knowingly or otherwise) for a commercial purpose. *See Perfect 10, Inc. v. Google, Inc.*, 2010 WL 9479060, at *13 (C.D. Cal. July 30, 2010) ("a plaintiff must show that *the defendant* appropriated the

plaintiff's name or likeness for commercial purposes") (emphasis in the original). Thus, these claims also should be dismissed.

**E.   Plaintiffs Fail to State a Claim Under California Civil Code Section 1708.85**

In count Fifteen, Plaintiffs allege that the MindGeek Defendants violated California Civil Code section 1708.85, which creates a private right of action against a person "who intentionally distributes" private sexually explicit materials "without consent" if, among other things "the person knew that the other person had a reasonable expectation that the material would remain private." Cal. Civ. Code § 1708.85(a). The complaint, however, does not allege, as it must, that Urman himself took any of the required actions, including that he "intentionally distribute[d]" the videos and images of plaintiffs. Rather, it alleges that "[b]y maintaining, streaming, distributing, reuploading, and monetizing [the] videos and images … *MindGeek* intentionally distributed" them. Compl. ¶ 622 (emphasis added). And, even as to MindGeek, this allegation is too conclusory to survive. *See Iqbal,* 556 U.S. at 678.

Aside from this fatal pleading defect, this count also fails because it alleges that the "material was previously distributed by another person." Cal. Civ. Code § 1708.85(c)(6) ("There shall be no liability on the part of the person distributing material" when "[t]he distributed material was previously distributed by another person."); Compl. ¶¶ 262-404 (videos and images were distributed *first* by individuals not named in this lawsuit.).

**F.   Plaintiffs Fail to State a Claim for Negligence**

In count Sixteen, plaintiffs allege that "*MindGeek* had a duty to use ordinary care and to prevent injury to Plaintiffs" and that "*MindGeek* breached the duty of care to Plaintiffs" "[b]y maintaining, streaming, distributing, reuploading, and monetizing videos and images of non-consensual sexual acts and child pornography of Plaintiffs on its websites, failing to take down videos and images upon request but merely

42

disabling the link, and by reuploading illegal content . . . ."  Compl. ¶¶ 629-630 (emphasis added).  As with so many of their other claims, plaintiffs do not adequately assert that Urman himself was connected to this conduct.

*First,* plaintiffs do not allege that Urman owed a duty of care to them or that he personally maintained, streamed, distributed, reuploaded, or monetized plaintiffs' videos and images.  Nor do plaintiffs allege that Urman was responsible for failing to take down plaintiffs' videos upon request.

*Second*, and in any event, courts routinely decline to find special relationships between websites and their users, let alone an employee of a website and the website's users.  *E.g.*, *Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 852 (W.D. Tex. 2007) (plaintiffs failed to state a negligence claim because Myspace had no duty to protect plaintiff from a third party's criminal acts "nor to institute reasonable safety measures on its website.").

Thus, plaintiffs' negligence claim should be dismissed.

### G.    Plaintiffs Fail to State a Claim for Unjust Enrichment

In count Seventeen, plaintiffs seek relief for unjust enrichment, arguing that MindGeek benefitted financially and profited from plaintiffs' videos and images. Compl. ¶ 634.  An independent cause of action for unjust enrichment is not cognizable under California law.  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1193-94 (C.D. Cal. 2010).  And even if it were, plaintiffs do not allege that Urman individually benefitted in any way from plaintiffs' videos or images.

### H.    Plaintiffs Fail to State a Claim Under Business and Professions Code Sections 17200 and 17500

In count Eighteen, plaintiffs allege violations of California Business and Professions Code sections 17200 and 17500 (the "Unfair Competition Law" or "UCL").  Plaintiffs, however, lack standing to bring a UCL claim.  For standing,

plaintiffs must (1) allege a loss of money or property (*i.e.* an economic injury), and (2) show that the unfair business practice caused the loss.  *Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021, 1035 (N.D. Cal. 2017).

*First*, plaintiffs fail to allege that *Urman engaged* in an unfair business practice that caused them economic injuries.

*Second*, plaintiffs' UCL claim, which is based on alleged misrepresentations, fails to satisfy Rule 9(b)'s heightened pleading standard because it does not allege with particularity any misrepresentations made by Urman.  *See Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1244 (N.D. Cal. 2017) (Rule 9(b) applies to UCL claim based on false or misleading statements and plaintiffs must state "the who, what, when, where, and how" of the misrepresentation).

Accordingly, plaintiffs' UCL claim is not viable and should be dismissed.

## I.        Plaintiffs Fail to State a Claim for Civil Conspiracy

In their Nineteenth and final count, plaintiffs allege a civil conspiracy claim against all defendants.  They assert that defendants "conspired and acted in concert to commit unlawful acts" with the objective to "maintain, stream, reupload, monetize, and distribute CSAM and other non-consensual content and/or to benefit financially from such distribution."  Compl. ¶ 641.  There is no distinct cause of action for civil conspiracy under California law.  *See, e.g.*, *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-511 (1994) ("Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.") (citation omitted); *Cohen v. Chau*, 2019 WL 6655392, at *5 (C.D. Cal. July 23, 2019) (dismissing conspiracy claim with prejudice; citing *Applied Equipment*). In any event, this claim is not viable because none of the "wrongful and overt acts" set forth in paragraph 624 of the complaint plead that Urman himself was specifically involved.

44

## **CONCLUSION**

Corey Urman, a Canadian citizen, is not subject to personal jurisdiction in this Court and, even if he were, he would be protected from plaintiffs' claims by section 230 immunity.  Apart from these defects, the complaint fails to state any viable cause of action against Urman.  Mr. Urman respectfully requests that this Court grant his motion to dismiss.

Dated:  October 20, 2021

MINTZ  LEVIN  COHN  FERRIS  GLOVSKY AND POPEO PC

By *s/Evan  S. Nadel*
      Evan S. Nadel
      Peter A. Chavkin
      Kathryn L. Ignash

Attorneys for Specially Appearing Defendant COREY URMAN

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS COMPLAINT

116110296v.32