# EXHIBIT D

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

M.L. ,

                              Plaintiff,

          v.

craigslist Inc. et al.,

                              Defendants.

Case No. 3:19-cv-06153-BHS-TLF

REPORT AND
RECOMMENDATION

Noted for October 8, 2021

This matter comes before the Court on defendant craigslist, Inc.'s ("craigslist") motion to dismiss. Dkt. 200. The parties have briefed the issues before the Court and the Court has heard oral argument from the parties. Dkt. 205 (Plaintiff's Response), Dkt. 206 (craigslist's Reply), Dkt. 207 (Notice of Hearing), Dkt. 210 (Minute Order for Hearing).

Craigslist's motion argues that the Court should dismiss plaintiff's negligence claim, strict liability claim, Criminal Profiteering Act claims and Sexual Exploitation of Children Act claims.

For the reasons set forth below, the Court should GRANT IN PART and DENY IN PART craigslist's motion and should:

> ï   Dismiss plaintiff's negligence claim (Count One) with prejudice as barred
>     by the Communications Decency Act (47 U.S.C. § 230)

ï   Dismiss plaintiff's strict liability claim (Count Two) with prejudice as barred by the Communications Decency Act (47 U.S.C. § 230)

ï   Dismiss plaintiff's Criminal Profiteering Act claim (Count Four) to the extent the claim relies on the following predicate offenses:

    o   Trafficking (RCW 9A.40.100) for failure to state a claim;

    o   Promoting Commercial Sexual Abuse of a Minor (RCW 9.68A.101) as barred by the Communications Decency Act (47 U.S.C. § 230);

    o   Leading Organized Crime (RCW 9A.82.060) (Count Four and Count Five) as barred by the Communications Decency Act (47 U.S.C. § 230);

    o   Use of Proceeds of Criminal Profiteering (RCW 9A.82.080) for failure to state a claim;

    o   Sexual Exploitation of a Minor (RCW 9.68A.040) for failure to state a claim;

    o   Dealing in Depictions of Minors Engaged in Sexually Explicit Conduct (RCW 9.68A.050) as barred by the Communications Decency Act (47 U.S.C. § 230); and

    o   Sending, Bringing into State Depictions of Minor Engaged in Sexually Explicit Conduct (RCW 9.68A.060) as barred by the Communications Decency Act (47 U.S.C. § 230).

ï   Not Dismiss plaintiff's Criminal Profiteering Act claim (Count Four) to the extent the claim relies on the following predicate offenses:

o    Promoting Prostitution in the First Degree (RCW 9A.88.070), limited

to conduct occurring before May 8, 2007; and

o    Promoting Prostitution in the Second Degree (RCW 9A.88.080).

<u>FACTUAL BACKGROUND</u>

Plaintiff alleges that over a period of 15 years, commencing when plaintiff was 12

years old, plaintiff was trafficked and subjected to abuse, rape, abductions and assaults.

Dkt. 187 ¶ 5. Plaintiff alleges that during this period, adult traffickers used the craigslist

website to advertise plaintiff at different locations. *Id.* at ¶ 6.

craigslist previously filed a motion to dismiss plaintiff's first amended complaint.

Dkt. 37. The motion argued that plaintiff's complaint should be dismissed because (1)

plaintiff's state law claims are barred by the statute of limitations, (2) plaintiff's state law

claims are barred by 47 U.S.C. § 230, the Communications Decency Act, and (3) the

amended complaint fails to sufficiently plead facts to state the claims alleged against

craigslist. Dkt. 37. Plaintiff filed a response opposing the motion (Dkt. 48) and craigslist

filed a reply in support of their motion (Dkt. 54).

The undersigned issued a Report and Recommendation recommending that the

Court GRANT IN PART and DENY IN PART craigslist's motion to dismiss. Dkt. 62. The

Court recommended the Court deny craigslist's motion on statute of limitations grounds.

Dkt. 62 at 17-19. The Court also recommended that the Court find that the CDA barred

some but not all of plaintiff's state law claims. *Id.* at 19-27. Specifically, the Report and

Recommendation recommended the Court not dismiss plaintiff's outrage claim (count

2), criminal profiteering claims (counts 3, 8), civil conspiracy claim (count 7) and 18

U.S.C. § 1595 claims (count 9). Dkt. 62 at 27-39. Next, the Court recommended the

1   Court dismiss plaintiff's negligence claim (count 1) and unjust enrichment claim (count

2   6) without prejudice. *Id*. Finally, the Court recommended the Court dismiss plaintiff's

3   Sexual Exploitation of Children Act claim with prejudice as an independent tort claim

4   (count 4) and plaintiff's ratification/vicarious liability claim (count 5) with prejudice. *Id*.

5   After considering the party's objections, the Court adopted the Report and

6   Recommendation. Dkt. 153.

7       Plaintiff subsequently filed a second amended complaint alleging the following

8   claims: 1) Negligence, 2) Strict Liability, 3) Outrage, 4) Criminal Profiteering Act, 5)

9   Leading Organized Crime (RCW 9A.82.060), 6) Sexual Exploitation of Children, 7) Civil

10  Conspiracy, and 8) Trafficking Victims Protection Reauthorization Act ("TVPRA") (18

11  U.S.C. § 1595). Dkt. 187.

12                              DISCUSSION

13  A. <u>Motion to Dismiss Standard</u>

14      When reviewing a motion under Rule 12(b)(6), the Court must accept as true "all

15  well-pleaded allegations of fact in the complaint and construe them in the light most

16  favorable to the non-moving party." *Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 530

17  (9th Cir. 2019) (internal quotations omitted). The court is not required to accept legal

18  conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

19      To survive a 12(b)(6) motion, a complaint must contain sufficient factual matter to

20  "state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (quoting

21  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A claim is plausible on its face if

22  the pleaded facts allow the court to draw the reasonable inference that the defendant is

23  liable for the misconduct alleged. *Ashcroft,* 556 U.S. at 678. When evaluating an Fed. R.

24

25

1  Civ. P. 12(b)(6) motion, the court may only consider the complaint, materials

2  incorporated into the complaint by reference, and matters of which the court may take

3  judicial notice. *Cedar Point Nursery*, 923 F.3d at 530; *Khoja v. Orexigen Therapeutics,*

4  *Inc.,* 899 F.3d 988, 998-99, 1002-03 (9th Cir. 2018). The Court does not resolve factual

5  disputes at the pleading stage. *Khoja*, at 1003.

6      B. <u>Consumer Decency Act Standard</u>

7        47 U.S.C. § 230, the Communications Decency Act ("CDA"), provides website

8  operators certain immunities "'in order to promote the continued development of the

9  Internet and other interactive computer services.'" *Lemmon v. Snap, Inc.*, 995 F.3d

10  1085, 1090 (9th Cir. 2021) (quoting *HomeAway.com, Inc., v. City of Santa Monica*, 918

11  F.3d 676, 681 (9th Cir. 2019)). The CDA provides that "website operators are immune

12  from liability for third-party information […] unless the website operator 'is responsible,

13  in whole or in part, for the creation or development of [the] information.'" *Dyroff v.*

14  *Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1096 (9th Cir. 2019) (petition for certiorari

15  denied 140 S. Ct. 2761). To empower computer service providers to self-regulate

16  content without chilling speech, Congress decided not to impose tort liability on

17  companies that serve as intermediaries for another party's potentially injurious

18  message. *Gonzalez v. Google LLC*, 2 F.4th 871, 886 (9th Cir. 2021).

19        Under the CDA, computer service providers are immune from state law claims

20  seeking to hold the computer service provider liable for publishing third party content.

21  *Dyroff,* 934 F.3d at 1097 (citing *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 850 (9th Cir.

22  2016)), *see also, Backpages.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1272-73

23  (W.D. Wash. 2012). A computer service provider enjoys CDA immunity only if the

24

25

REPORT AND RECOMMENDATION - 5

provider is "(1) a provider or user of an interactive computer service (2) whom plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Lemmon*, 995 F.3d at 1091 (quoting *Dyroff*, 934 F.3d at 1097).

### 1. Provider or Use of Interactive Computer Services

The term provider of "interactive computer services" must be interpreted expansively under the CDA. *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016). It is undisputed in this action that craigslist is a provider of interactive computer services. Dkt. 200 at 12; Dkt. 205 at 10-11; *see, Fair Hous. Council v. Roomates.com, LLC*, 521 F.3d 1157, 1162 n.6 (9th Cir. 2008) ("Today, the most common interactive computer services are websites.").

### 2. Publisher or Speaker

For purposes of CDA immunity, the term "publication" generally "involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Lemmon*, 995 F.3d at 1091 (citations omitted). Regardless of the type of claim a plaintiff brings, the relevant inquiry is whether the alleged duty or liability stems from defendant's role or conduct as a publisher or speaker. *Id.*

Actions based on the defendant's hosting of third-party content are "a clear illustration of a cause of action that treats a website proprietor as a publisher." *Internet Brands*, 824 F.3d at 851. CDA immunity applies to claims based on a website hosting illegal content created entirely by a third party, even if the website does not act to remove the offending content, because removing content is the function of a publisher.

1      *Id.* ("to permit liability for such conduct necessarily involves treating the liable party as a

2  publisher of the content it failed to remove.") (internal quotations omitted).

3          Making decisions about whether to exclude third party created content is conduct

4  for which a defendant would be immune under Section 230. *Roomates.com*, 521 F.3d at

5  1170-71 (citing *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003)) ("The

6  claim against the website [in *Carafano*] was, in effect, that it failed to review each user-

7  created profile to ensure that it wasn't defamatory. That is precisely the kind of activity

8  for which Congress intended to grant absolution with the passage of section 230.")

9          Additionally, providing tools to facilitate the communication and content of others,

10  such as recommendations and notifications, is the function of a publisher, not a content

11  creator. *Dyroff*, 934 F.3d at 1098 (stating that these tools and recommendations are "not

12  content in and of themselves.").

13          Alternatively, a website is an information content provider when it creates or

14  develops the specific content at issue, as opposed to passively displaying content

15  created entirely by a third party. *Roomates.com*, 521 F.3d at 1162. Websites are

16  considered content providers for content that the website creates, or content for which it

17  is responsible (in whole or in part) for creating or developing. *Id.*

18          A website creates, develops or is responsible for content when it makes a

19  material contribution to its creation or development. *Gonzalez*, 2 F.4th at 892. The

20  website does not materially contribute to unlawful content by merely augmenting the

21  content generally or taking steps necessary to display the allegedly illegal content. *Id.*

22  Rather, a "material contribution" means that the website materially contributed to the

23  content's alleged unlawfulness. *Id.* A website materially contributes to the unlawfulness

24

25

REPORT AND RECOMMENDATION - 7

1  of content, when the website is responsible for the aspect that makes the displayed

2  content unlawful. *Gonzalez*, 2 F.4th at 892.

3        Similarly, the CDA does not provide immunity for websites that induce third

4  parties to create or post illegal content even if the illegal content is ultimately created by

5  a third party. *Roomates.com*, 521 F.3d at 1165 (holding that requiring website

6  subscribers to answer illegal questions as a condition of using the website, unlawfully

7  caused the offending content.) However, merely providing neutral tools to deliver

8  content in response to user input is not inducing illegal content. *Gonzalez*, 2 F.4th at

9  893 (distinguishing the plaintiff's claims from the claims in *Roomates.com*, because the

10  defendant did not require, encourage or target illegal content, it merely provided neutral

11  tools to post content).

12        The Ninth Circuit has recently affirmed that supplying a platform and

13  communications service falls within the definition of "publisher" of information under

14  Section 230(c)(1). *Gonzalez*, 2 F.4th at 891. In *Gonzalez*, the plaintiff alleged that

15  Google was liable for allowing ISIS to disseminate messages and place content on the

16  YouTube platform. *Id.* at 892. The Court held that these claims sought to treat Google

17  as a publisher of third-party content for purposes of Section 230(c)(1) immunity. *Id.*

18        The plaintiff in *Gonzalez* argued that Google materially contributed to the

19  unlawfulness of ISIS content by pairing it with selected advertisements and other videos

20  to enhance user engagement with the underlying content. *Gonzalez*, 2 F.4th at 893. The

21  Ninth Circuit rejected this argument. *Id.* The Court held Google was a "publisher"

22  because it provided neutral tools and did not induce illegal content by specifically

23  targeting ISIS content or encouraging terrorist videos. *Id.* at 893-95.

24

25

REPORT AND RECOMMENDATION - 8

### 3. Information Provided by Another Information Content Provider

Neither party disagrees that the content in question was created by the purported traffickers.

### C. Plaintiff's Claims

#### 1. Negligence (Count One)

Plaintiff's first count realleges plaintiff's previously dismissed negligence claim. Dkt. 187 at ¶¶ 241-244. Plaintiff's negligence claim alleges that all defendants "had a duty of care to operate their businesses in a manner that did not allow sex trafficking criminals to foreseeably utilize said business to sex traffic the Plaintiff." *Id.* at ¶ 242. Plaintiff alleges that craigslist breached this duty because it knew or should have known that the traffickers were using their business to advertise and facilitate the trafficking of plaintiff and took no steps to protect or warn the plaintiff. *Id.* at ¶ 243.

Plaintiff's negligence claim seeks to hold craigslist liable for failing to monitor third party content on its website and for failing to take steps to prevent or remove third party content. Additionally, plaintiff's failure to warn allegation would require craigslist to monitor and review third party content. The Ninth Circuit has explained that providing a platform for communication services and providing the means for others to publish information fall within the functions of a publisher. *Gonzalez*, 2 F.4th at 891-92. Similarly, reviewing, editing, and deciding whether to publish, exclude or withdraw third-party content are the functions of a publisher. *Id.*

Based on the foregoing, the Communications Decency Act bars plaintiff's negligence claim against craigslist, because it seeks to hold craigslist, an interactive computer service provider, liable as the publisher of third-party content.

Plaintiff argues, for the first time in their response brief, that plaintiff's negligence claim is alleging a products liability claim for alleged manufacturing or design defects in craigslist's website. Dkt. 205 at 15-16. Plaintiff argues that craigslist had a duty to design its website in a manner that did not present an unreasonable risk of injury or harm to the public. *Id*. Plaintiff cites to the case *Lemmon v. Snap, Inc.,* which held that the Communications Decency Act does not bar product liability claims alleging negligent design unrelate to publishing third-party created content. 995 F.3d at 1092.

In *Lemmon*, the plaintiff sued Snap, Inc., for alleged defects in the defendant's product and underlying software. *Id*. at 1092. The Court held that the claim was not barred by the Communications Decency Act because the claim was based on the functionality of the applications, not the content posted in the application. *Id*.

Plaintiff raised this product liability theory of liability for the first time in plaintiff's response brief and does not allege any facts related to this claim in the Second Amended Complaint. Dkt. 187. Accordingly, because plaintiff's complaint does not allege any facts related to a products liability cause of action, the Court should not consider this unpled cause of action when determining plaintiff's negligence claim.

The undersigned recommends that the Court dismiss plaintiff's negligence cause of action with prejudice.

### 2. Strict Liability (Count Two)

Plaintiff's second count raises a cause of action for strict liability. Dkt. 187 at ¶¶ 245-249. This count alleges that craigslist "engaged in and facilitated abnormally dangerous activities by virtue of its sex trafficking advertising of the Plaintiff." *Id*. at ¶

246. Plaintiff alleges that craigslist is strictly liable for plaintiff's harm because it failed to use reasonable care. *Id.* at ¶ 247.

Plaintiff's second amended complaint alleges that craigslist's acceptance of obvious sex trafficking advertisements, creation of "erotic services" and "adult services" subsections and conduct of displaying sex trafficking advertisements constitute abnormally and unduly dangerous activity. Dkt. 187 at ¶¶ 88, 91, 92. The complaint also alleges that craigslist could have eliminated the risk of harm by eliminating the alleged advertisements, but chose not to do so. *Id.* at ¶ 88. Plaintiff argues that her strict liability claim is not barred by the Communications Decency Act because plaintiff seeks to hold craigslist liable as a content creator, not a mere publisher. Dkt. 205 at 10-11. Plaintiff maintains that craigslist acted as a content creator or developer by creating "erotic services" and "adult services" sections on their website which induced and encouraged sex traffickers to post illegal content on the website. Dkt. 205 at 10-11. Plaintiff also contends that craigslist's user interface, categories and filters induced and encouraged trafficking. Dkt. 205 10-11.

However, in *Gonzalez*, the Ninth Circuit rejected a similar argument to the one plaintiff now raises. 2 F.4th at 892-895. In *Gonzalez*, the plaintiff argued that although Google did not initially create the offending content, it materially contributed to the unlawfulness of the content by pairing it with selected advertising and other videos to enhance or promote user engagement with the underlying content. *Id.* at 893. The Ninth Circuit held that a website is not transformed into a content creator or developer by supplying neutral tools that deliver content in response to user input, even if the tools allow for the content to be more effectively disseminated. *Id.* (citing *Roomates.com*, 521

1    F.3d at 1171). The Court also explained that "neutral tools" refer to tools or functions

2    that do not require or encourage posting illegal content, but merely provide a means for

3    users to provide content. *Gonzalez*, 2 F.4th at 893.

4        The Court distinguished the plaintiff's claims from the situation in *Roomates.com*,

5    because the website in *Roomates.com* operated in a way that contributed to the alleged

6    illegality. *Gonzalez*, 2 F.4th at 893. The website in *Roomates.com* required users to

7    disclose their sex, sexual orientation, whether they had children and the traits they

8    preferred in roommates before accessing the website. *Id*. at 893-94. (citing

9    *Roomates.com*, 521 F.3d at 1161, 1164-66). The Court in *Roomates.com* held that the

10   website was designed in a manner to encourage users to post content that violated fair

11   housing laws. *Roomates.com*, 521 F.3d at 1161, 1164-66. Accordingly, the defendant

12   could be held liable as a content developer because it did more than merely employ

13   neutral tools. *Id*. at 1166. The Court in *Gonzalez* concluded that Google did not

14   contribute to the illegal content because it did not specifically target terrorist content or

15   design its website to encourage illegal content, rather it provided a neutral platform that

16   did not specify or prompt the type of content to be submitted. 2 F.4th at 895.

17       Plaintiff's strict liability claims are subject to dismissal pursuant to the Ninth

18   Circuit's decision in *Gonzalez*. Plaintiff's strict liability claim seeks to hold craigslist liable

19   for accepting and displaying illegal third-party content and failing to delete this content

20   despite knowing of its existence. This claim would hold craigslist liable as a publisher of

21   third-party content. Plaintiff's strict liability claim does not allege that craigslist

22   specifically targeted the sex trafficking ads or that it designed its website for this

23   purpose or otherwise materially contributed to the post's unlawfulness. Accordingly,

24

25

plaintiff's strict liability claim fails to allege that craigslist materially contributed to the creation of the illegal content and seeks to hold craigslist liable for publishing third party content.

For the reasons set forth herein, the undersigned recommends that the Court dismiss plaintiff's strict liability claim with prejudice.

### 3. Criminal Profiteering Act (Count Four)

Plaintiff's fourth count alleges a cause of action pursuant to Washington's Criminal Profiteering Act. Dkt. 187 at ¶¶ 254-264. Plaintiff alleged that all defendants violated the Criminal Profiteering Act by enabling, harboring, leading, promoting, assisting, and/or facilitating prostitution, sex trafficking and child sex trafficking. *Id.* at ¶ 255. Specifically, plaintiff contends that defendants violated: RCW 9A.40.100 (Trafficking); RCW 9A.88.070 (Promoting Prostitution in the First Degree); RCW 9A.88.080 (Promoting Prostitution in the Second Degree); RCW 9.68A.101 (Promoting Commercial Sexual Abuse of a Minor); RCW 9A.82.060 (Leading Organized Crime) and RCW 9A.82.080 (Use of Proceeds of Criminal Profiteering – Controlling Enterprise or Realty – Conspiracy or Attempt). *Id.*

craigslist argues that plaintiff's Criminal Profiteering Act claim should be dismissed pursuant to the Communications Decency Act and because plaintiff's complaint fails to allege sufficient facts plausibly showing that craigslist violated the alleged predicate offenses. craigslist's previous motion to dismiss (Dkt. 37) alleged that plaintiff's Criminal Profiteering Act claims should be dismissed because plaintiff failed to allege an enterprise between craigslist and the traffickers. Dkt. 37 at 23-24. However, craigslist did not challenge the underlying predicate offenses alleged. *Id.* Accordingly,

1  the Court has not previously considered whether plaintiff has sufficiently alleged a

2  violation of each predicate offense.

3         Plaintiff alleges craigslist violated several predicate offenses. Each alleged

4  predicate offense will be addressed independently.

5         In order to allege a cause of action for criminal profiteering under RCW 9A.82

6  plaintiff must allege an injury to their "person, business, or property by an act of criminal

7  profiteering that is part of a pattern of criminal profiteering activity or by an offense

8  defined in RCW 9A.40.100 (Trafficking), 9.68A.100 (Commercial Sexual Abuse of a

9  Minor), 9.68A101 (Promoting Commercial Sexual Abuse of a Minor), or 9A.88.070

10  (Promoting Prostitution in the First Degree), or by a violation of RCW 9A.82.060

11  (Leading Organized Crime) or 9A.82.080 (Use of Proceeds of Criminal Profiteering)."

12  RCW 9A.82.100 (parentheticals added).

13         An act of "criminal profiteering" requires the commission of specific enumerated

14  felonies for financial gain. RCW 9A.82.010(4). The enumerated felonies that can

15  support a claim for criminal profiteering include: (s) leading organized crime as defined

16  in RCW 9A.82.060; (y) promoting prostitution, as defined in RCW 9A.88.070 and

17  9A.88.080; (ss) promoting commercial sexual abuse of a minor, as defined in RCW

18  9.68A.101; and (tt) trafficking, as defined in RCW 9A.40.100.

19         A "pattern of criminal profiteering" is defined as three or more acts of criminal

20  profiteering occurring within a five-year period after the commission of the earliest act of

21  criminal profiteering. RCW 9A.82.010(12); *Robertson v. GMAC Mortg. LLC*, 982 F.

22  Supp. 2d 1202, 1209 (W.D. Wash. 2013). To constitute a pattern "the three acts must

23  have the same or similar intent, results, accomplices, principals, victims, or methods of

24

25

1  commission, or be otherwise interrelated by distinguishing characteristics including a

2  nexus to the same enterprise, and must not be isolated events." RCW 9A.82.010(12).

3        An enterprise for the purpose of a criminal profiteering cause of action means

4  "any individual, sole proprietorship, partnership, corporation, business trust, or other

5  profit or nonprofit legal entity, and includes any union association, or group of

6  individuals associated in fact although not a legal entity…" *Trujillo v. Nw. Tr. Servs.,*

7  *Inc.*, 183 Wn.2d 820, 839 (2015). A plaintiff alleges the existence of an enterprise by

8  alleging that there is an ongoing organization, formal or informal, and that various

9  associates function as a continuing unit. *Id.* at 839.

10        For purposes of the underlying predicate offenses alleged, a person knows or

11  acts knowingly when they (i) are "aware of a fact, facts, or circumstances or results

12  described by a statute defining an offense" or (ii) have "information which would lead a

13  reasonable person in the same situation to believe that facts exist which facts are

14  described by a statute defining an offense." RCW 9A.08.010(1). A jury may find actual

15  subjective knowledge when there is sufficient information that would lead a reasonable

16  person to believe that a fact exists. *State v. Keend*, 140 Wash.App., 858, 869 (2007)

17  (citing *State v. Johnson*, 119 Wash.2d 167, 174 (1992)). Knowledge does not mean

18  negligent ignorance, but can be established by a finding that an ordinary person would

19  have had knowledge based on the circumstances presented. *State v. Shipp*, 93

20  Wash.2d 510, 516 (1980).

21                    i.  Trafficking (RCW 9A.40.100)

22  Trafficking is when a person:

23  (i) Recruits, harbors, transports, transfers, provides, obtains, <u>buys,</u>
    <u>purchases</u>, or receives by any means another person knowing <u>or in</u>

24

25

REPORT AND RECOMMENDATION - 15

> <u>reckless disregard of the fact</u>, (A) that force, fraud, or coercion […] will be used to cause the person to engage in:
>
> > (I)   Forced labor;
> > (II)  Involuntary servitude;
> > (III) A sexually explicit act; or
> > (IV) A commercial sex act, or <u>(B) that the person has not attained the age of eighteen years and is caused to engage in a sexually explicit act or a commercial sex act;</u> or
>
> (ii) Benefits financially or by receiving anything of value from participation in a venture that has engage in acts set forth in (a)(i) of this subsection;

RCW 9A.40.100(1)(a), (3)(a) (emphasis added to identify 2013 amendments).

Additionally, trafficking in the first degree requires a finding that the act or venture involves (i) committing or attempting to commit kidnapping; (ii) a finding of sexual motivation under RCW 9.94A.835; (iii) the illegal harvesting or sale of human organs; or (iv) result in a death. RCW 9A.40.100(1)(b). Trafficking in the second degree does not require such additional findings. RCW 9A.40.100(3)(a).

The language of this provision was amended in 2013 with an effective date of August 1, 2013. 2013 Wa. SB 5669. The 2013 amendment added the language "or in reckless disregard of the fact" and "or that the person has not attained the age of eighteen years and is caused to engage in sexually explicit act or a commercial sex act." *Id.* Accordingly, unless the 2013 amendment to this provision applies retroactively, plaintiff cannot rely on the "reckless disregard of the fact" language for her claims occurring before August 1, 2013. Additionally, if the 2013 amendment does not apply retroactively, plaintiff would not be able to rely on language relating to the prostitution of minors because she turned eighteen before the enactment of the 2013 amendment. *See* Dkt. 187 at ¶ 267.

When considering the language of a statute, "the presumption is that the statute will only apply prospectively, unless (1) there is a legislative intent to apply the law retroactively, or (2) the statute is remedial and retroactive application would further its remedial purpose." *Ferndale v. Friberg*, 107 Wn.2d 602, 605 (1987).

A statute or amendment is remedial when it relates to practice, procedure, or remedies but does not affect substantive rights created by the statute. *Ferndale*, 107 Wn.2d at 606. The 2013 amendment to RCW 9A.40.100 changes the substance of the criminal statute and sets forth additional grounds that can establish a violation. This amendment is not a remedial change that can be applied retroactively without express legislative intent.

Further, when considering criminal statutes, like RCW 9A.40.100, there is a presumption that "a statute in effect on the date of a criminal offense is the applicable statute 'absent clear legislative intent to the contrary.'" *State v. Brake*, 15 Wn. App. 2d. 740, 744 (2020) (quoting *In re Pers. Restraint of Flint*, 174 Wn.2d 539, 559 n.9 (2012)).

The language of RCW 9A.40.100 and the language from its legislative enactment, do not indicate an intent to apply the 2013 amendment retroactively. Plaintiff argues that the Washington Legislature intended for the 2013 amendment to apply retroactively. Dkt. 205 at 22. Plaintiff cites to RCW 7.68.020 as an indication of the legislature's intent to apply RCW 9A.40.100 retroactively. Plaintiff also contends that Washington has taken a strong stance against traffickers and has shown sympathy towards trafficking victims which implies an intent to apply RCW 9A.40.100 retroactively.

RCW 7.68.020 provides definitions for terms and phrases for purpose of a program run by the Washington State Department of Labor and Industries to

REPORT AND RECOMMENDATION - 17

compensate the victims of crimes. RCW 7.68.015; RCW 7.68.020. It is unclear how this statute indicates the legislature's intent to apply an independent criminal statute retroactively. Additionally, the 2011 amendment to RCW 7.68.020 applies retroactively because the legislature expressly stated in the enacting language that the amendment should apply retroactively. 2011 Wa. SB 5691. If the legislature intended to add similar language to the 2013 amendment to RCW 9A.40.100 it could have done so, but chose not to do so.

The Court should find that the 2013 amendment to RCW 9A.40.100 does not apply retroactively because there is no clear legislative intent to apply the statute retroactively.

Accordingly, to state a cause of action under RCW 9A.40.100 for her claims before August 1, 2013, plaintiff must allege that craigslist acted knowingly. For her claims after August 1, 2013 plaintiff may allege that craigslist acted either knowingly or with reckless disregard. Additionally, plaintiff cannot rely on the language in the 2013 amendment relating to the prostitution of minors because she was not a minor when the amendment was enacted.

The second amended complaint does not allege that craigslist actually recruited, harbored, transported, transferred, provided, obtained, purchased or received plaintiff through force, fraud or coercion. Plaintiff is alleging that craigslist knowingly benefited, financially, from participating in a trafficking venture as defined by the statute. Plaintiff alleges that craigslist knowingly profited from prostitution generally, and from the prostitution of plaintiff specifically. Dkt. 187 at ¶¶ 3, 9, 43, 45, 46, 49-58, 64-72, 76-81.

Plaintiff alleges that her traffickers used force, fraud or coercion. Dkt. 187 at ¶¶ 5, 6, 16, 42-45, However, plaintiff fails to state any factual allegations indicating that craigslist knew, actually or constructively, that plaintiff was being trafficked by force, fraud, or coercion or that craigslist was knowingly profiting from such trafficking. Accordingly, plaintiff fails to allege a violation of RCW 9A.40.100 against craigslist.

Based on the foregoing discussion, the Court should dismiss, without prejudice, plaintiff's Criminal Profiteering Act claim based on trafficking under RCW 9A.40.100.

ii. <u>Promoting Prostitution in the First Degree (RCW 9A.88.070)</u>

A person is guilty of promoting prostitution in the first degree if they knowingly advance prostitution by: (a) "compelling a person by threat or force to engage in prostitution or profits from prostitution which results from such threat or force" or (b) compelling a person with a mental incapacity or developmental disability that renders the person incapable of consent to engage in prostitution or profits from prostitution that results from such compulsion." RCW 9A.88.070(1). To prove that a person "compelled" another to engage in prostitution, plaintiff must allege some affirmative act or compelling action. *State v. Stone*, 66 Wash. 625, 630 (1912).

A person "advances prostitution" by acting other than as a prostitute or customer, to cause or aid a person to engage in prostitution, procure or solicit customers for prostitution or engages in any other conduct designed to aid or facilitate the enterprise of prostitution. RCW 9A.88.060. The legislative intent of this definition is to punish those who assist others to commit prostitution. *State v. Peters*, 17 Wn. App. 2d 522, 539 (2021).

A person "profits from prostitution" if, acting other than as a prostitute receiving compensation for prostitution services, the person accepts or receives money or anything of value pursuant to an agreement or understanding with any person whereby they participate or is to participate in the proceeds of the prostitution activity. RCW 9A.88.060(2).

RCW 9A.88.070 was amended on May 8, 2007 and on March 29, 2012. The 2007 amendment removed a previous provision stating that a person is guilty of promoting prostitution in the first degree if they knowingly "advance[] or profit[] from prostitution of a person less than eighteen years old." 2007 Wa. SB 5718. The 2012 amendment added the language currently in the statute that a person is liable for "compelling a person with a mental incapacity or developmental disability that renders the person incapable of consent to engage in prostitution or profits from prostitution that results from such compulsion." 2011 Wa. SB 6254.

As has been discussed, when considering amended statutory language of a criminal statute, there is a presumption that "a statute in effect on the date of a criminal offense is the applicable statute 'absent clear legislative intent to the contrary.'" *Brake*, 15 Wn. App. 2d. at 744 (quoting *In re Pers. Restraint of Flint*, 174 Wn.2d at 559 n.9).

There is no clear indication that the legislature intended for either of these amendments to be applied retroactively. Accordingly, plaintiff can state a claim for promoting prostitution in the first degree by alleging that craigslist knowingly advanced or profited from the prostitution of a minor based on conduct occurring before May 8, 2007. However, plaintiff cannot allege liability for compelling a person with mental

1   incapacity or disability into prostitution or profiting from such compulsion for conduct

2   occurring before March 29, 2012.

3          The second amended complaint does not allege that craigslist took any

4   affirmative action to compel plaintiff by force or threat to engage in prostitution. Plaintiff

5   alleges that her traffickers used force or threat to compel plaintiff to engage in

6   prostitution. Dkt. 187 at ¶¶ 5, 6, 16, 42-45. Plaintiff also alleges that craigslist knowingly

7   profited from prostitution generally, and from the prostitution of plaintiff specifically. Dkt.

8   187 at ¶¶ 3, 9, 43, 45, 46, 49-58, 64-72, 76-81. However, plaintiff raises no factual

9   allegations indicating that craigslist knew plaintiff was being compelled to engage in

10  prostitution by force or threat or that craigslist was knowingly profiting from such

11  compulsion.

12         Next, plaintiff does not allege that she suffered from a mental incapacity or

13  developmental disability rendering her incapable of consent after March 29, 2012 – the

14  effective date of the 2012 amendment to RCW 9A.88.070. Plaintiff alleges that plaintiff

15  was trafficked as a minor and that a minor has the requisite mental incapacity rendering

16  her incapable of consent. Dkt. 187 at ¶ 38. However, plaintiff's complaint indicates that

17  plaintiff reached the age of eighteen before March 29, 2012 and does not allege any

18  other mental incapacity or developmental disability. Accordingly, plaintiff cannot rely on

19  this provision to allege that craigslist promoted prostitution in the first degree.

20         However, plaintiff does allege that in 2007 she was a minor. Dkt 187 at 267.

21  Further, plaintiff alleges that she was advertised on the craigslist website starting at the

22  age of 12 in 2003. *Id.* at ¶¶ 42, 267. Plaintiff also alleges that craigslist knowingly

23  profited from prostitution generally, and from the prostitution of plaintiff specifically. *Id.* at

24

25

REPORT AND RECOMMENDATION - 21

¶¶ 3, 9, 43, 45, 46, 49-58, 64-72, 76-81. Accordingly, plaintiff has sufficiently alleged that craigslist promoted prostitution in the first degree by knowingly profiting from the prostitution of a minor before May 8, 2007 – the effective date of the 2007 amendment.

Based on the foregoing discussion, plaintiff has sufficiently alleged that craigslist violated RCW 9A.88.070 based on conduct before May 8, 2007. However, plaintiff has not alleged a cause of action for this claim for conduct after May 8, 2007. Accordingly, the Court should limit plaintiff's claims based on RCW 9A.88.070 against craigslist to claims based on conduct occurring before May 8, 2007.

Plaintiff's claim based on promoting prostitution in the first degree, seeks to hold craigslist liable for knowingly profiting from prostitution. These claims do not seek to hold craigslist liable for the content created by a third party or for acting as the publisher of third-party content. *Gonzalez*, 2 F.4th at 898-99 (holding that plaintiff's revenue sharing claims were not barred by the Communications Decency Act, because they were not related to third party content and could be remedied without changing third party content). Accordingly, plaintiff's claim is not barred by the Communications Decency Act.

### iii.    Promoting Prostitution in the Second Degree (RCW 9A.88.080)

A person is guilty of promoting prostitution in the second degree if they knowingly: "(a) profit[] from prostitution; or (b) advance[] prostitution." RCW 9A.88.080.

Plaintiff's second amended complaint alleges that craigslist advanced prostitution by knowingly creating guidelines and features that traffickers could use to prostitute people without detection by law enforcement. Dkt. 187 at ¶¶ 49-65. This is sufficient to

1  allege that craigslist acted to aid or facilitate the enterprise of prostitution. RCW

2  9A.88.060.

3       Additionally, plaintiff alleges that craigslist had actual knowledge and that there

4  were sufficient facts that an ordinary person would know under the circumstances, that

5  they were profiting from prostitution generally. Dkt. 187 at ¶¶ 3, 9, 43, 45, 46, 49-58, 64-

6  72, 80, 81. Plaintiff also alleges that craigslist had sufficient knowledge that it was

7  profiting from the prostitution of plaintiff specifically. *Id* at ¶¶ 3, 9, 45, 46, 65, 76-80.

8       Plaintiff's claims based on promoting prostitution in the second degree, seek to

9  hold craigslist liable for providing instructions regarding how to avoid detection and for

10  purportedly profiting from prostitution. These claims do not seek to hold craigslist liable

11  for the content created by a third party or for acting as the publisher of third-party

12  content. *Gonzalez*, 2 F.4th at 898-99 (holding that plaintiff's revenue sharing claims

13  were not barred by the Communications Decency Act, because they were not related to

14  third party content and could be remedied without changing third party content).

15  Accordingly, plaintiff's claim is not barred by the Communications Decency Act.

16       Based on the foregoing, the Court should not dismiss this claim.

17            iv.  Promoting Commercial Sexual Abuse of a Minor (RCW 9.68A.101)

18       Plaintiff alleges that craigslist engaged in the commercial sexual abuse of a

19  minor by "providing an online platform [...] which instituted, aided, caused, assisted, and

20  facilitated acts of commercial sexual abuse of a minor" and by "utilizing moderation

21  practices designed to institute, aid, cause, assist, and facilitate acts of commercial

22  sexual abuse of a minor." Dkt. 187 at ¶ 259. Plaintiff is alleging that craigslist promoted

23  commercial sexual abuse of a minor by providing a website that was used to advertise

24

25

1  plaintiff and by instituting moderation practices that knowingly allowed the

2  advertisements. Plaintiff's complaint does not allege that the craigslist website was

3  designed to specifically target sex trafficking content and does not allege that craigslist

4  encouraged or required illegal content to be posted on the website.

5     As has been discussed, providing a platform for communication services,

6  providing means for others to publish information, and monitoring third party content, all

7  fall within the function of a publisher. *Gonzalez*, 2 F.4th at 891-92. Accordingly, plaintiff's

8  claims based on commercial sexual abuse of a minor against craigslist are barred

9  pursuant to the Communications Decency Act. *Gonzalez*, 2 F.4th at 892-895.

10             v.  Leading Organized Crime (RCW 9A.82.060)

11    Plaintiff alleges that craigslist's violation of RCW 9A.82.060 is a predicate offense

12  under plaintiff's Criminal Profiteering Act claim. Dkt. 187 at ¶¶ 255, 260. Additionally,

13  plaintiff's fifth count alleges an independent cause of action under RCW 9A.82.060. Dkt.

14  187 at ¶¶ 265-279. Plaintiff alleges that her Leading Organized Crime claim is based on

15  the five posts advertising plaintiff on the craigslist website. Dkt. 187 at ¶ 266.

16    Plaintiff's complaint alleges that her traffickers would take photographs of plaintiff

17  for advertisements and would create advertisements to post on the craigslist website.

18  Dkt. 187 at ¶¶ 43, 45, 76, Plaintiff also alleges the posts were created by her traffickers.

19  *Id.* at ¶¶ 76, 97. The complaint states that her Leading Organized Crime claim is based

20  on setting up and providing a communication system and allowing the traffickers to post

21  illegal advertisements. *Id.* at ¶¶ 95, 267, 270, 271. Plaintiff alleges that craigslist is liable

22  under this claim because craigslist provided an online platform used for illegal activity

23  and for utilizing moderation practices that facilitated the trafficking. *Id.* at ¶ 273.

24

25

Plaintiff's responsive brief confirms that her Leading Organized Crime claims seeks to impose liability on craigslist for running a business of displaying sex trafficking advertisements. Dkt. 205 at 18. Plaintiff argues that craigslist is liable for maintaining a communication system, maintaining the "erotic services" section and displaying illegal ads. Dkt. 205 at 18. Plaintiff also states that her claims stem from the trafficker created advertisements that craigslist allowed to be posted on the craigslist website. *Id.* at 19.

Based on the allegations in plaintiff's complaint, and recent Ninth Circuit precedent, plaintiff's Leading Organized Crime claim is subject to dismissal under the Communications Decency Act. *See, Gonzalez*, 2 F.4th at 891-95.

In *Gonzalez*, the Ninth Circuit held that a website cannot be held liable for third party content by supplying neutral tools that deliver content in response to user input. 2 F.4th at 893 (citing *Roomates.com*, 521 F.3d at 1171). The Ninth Circuit also held that a website cannot be held liable for supplying a platform or communication service, even if third parties use the service to post illegal content and the website does not take action to remove such content. *Id.* at 892. Accordingly, plaintiff cannot hold craigslist liable for providing a platform that others used for illegal content, for accepting illegal third-party content, for displaying illegal third-party content or for failing to remove illegal third-party content. To allege that a website is responsible for the content, a plaintiff needs to show that the website made a material contribution to the contents' alleged unlawfulness or is responsible for what makes the content itself illegal. *Gonzalez*, F.4th at 893.

Here, plaintiff seeks to hold craigslist liable for Leading Organized Crime based on craigslist allowing illegal advertisements to be posted and knowingly failing to remove these illegal posts. However, plaintiff does not allege that craigslist created the

REPORT AND RECOMMENDATION - 25

content of the posts, directed the traffickers to create the posts, or created its platform with the intent of attracting illegal content. Accordingly, plaintiff's Leading Organized Crime claim is barred by the Communications Decency Act for seeking to hold craigslist liable as the publisher of third-party content.

Based on the foregoing discussion plaintiff's Leading Organized Crime claims under Count Four and as an independent count (Count 5) should be dismissed.

vi.   Use of Proceeds of Criminal Profiteering – Controlling Enterprise or Realty – Conspiracy of Attempt (RCW 9A.82.080)

According to RCW 9A.82.080(1)(a): "It is unlawful for a person who has knowingly received any of the proceeds derived, directly or indirectly, from a pattern of criminal profiteering activity to use or invest, whether directly or indirectly, any part of the proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise." Additionally, it is unlawful to knowingly conspire or attempt to violate this section. RCW 9A.82.080(3)(a).

When interpreting provisions of the Criminal Profiteering Act, Courts may apply federal case law interpreting similar provisions under the Racketeer Influenced and Corrupt Organization Act (RICO) because the Criminal Profiteering Act is based on the federal RICO act. *State v. Linville*, 191 Wn.2d 513, 521 (2018), *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 839 n.13 (2015).

RCW 9A.82.080 is the state equivalent of 18 U.S.C. § 1962 under the RICO Act. Under both statutes, it is unlawful for a person to use or invest income derived, directly or indirectly, from a pattern of criminal activity as defined in the respective statute, to

REPORT AND RECOMMENDATION - 26

acquire interest in or the operation of an enterprise. 18 U.S.C. § 1962, RCW 9A.82.080. Similarly, the language of RCW 9A.82.100 – allowing recovery for injuries caused by criminal profiteering – tracks the language of 18 U.S.C. § 1964 under the RICO act. Both statutes allow people injured by racketeering or criminal profiteering to bring an action in the appropriate court to recover damages caused by the prohibited conduct. RCW 9A.82.100(1)(a); 18 U.S.C. §1964(c).

The Ninth Circuit has held that based on the language of the RICO Act, in order to sustain a cause of action for violation of Section 1962(a) – prohibiting use or investment of illegal proceeds – a plaintiff must allege facts showing that they were injured *by the use or investment* of illegal proceeds. *Sybersounds Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008) (citing *Nugget Hydroelectric, L.P. v. Pacific Gas and Electric Co.*, 981 F.2d 429, 437 (9th Cir. 1992)); *Gomez v. Bank of Am., N.A.*, 642 Fed. Appx. 670, 675 (9th Cir. 2016). Accordingly, a plaintiff must allege an injury from the investment or use of the illegal proceeds independent of the injury sustained from the racketeering activity itself. *Gomez*, 642 Fed. Appx. at 675; *Sybersounds Records*, 517 F.3d at 1149 ("Reinvestment of proceeds from alleged racketeering activity back into the enterprise to continue its racketeering activity is insufficient to show proximate cause.").

Here, the language of the relevant Criminal Profiteering Act claims track the language of the relevant RICO Act language. Accordingly, Ninth Circuit's interpretation of the RICO cause of action is instructive when considering plaintiff's Criminal Profiteering Act claims. Based on the Ninth Circuits interpretation of statutory language in *Nugget Hydroelectric*, *Sybersound Records*, and *Gomez*, in order to allege her Use of

Proceeds from Profiteering claim, plaintiff would need to allege an independent injury suffered from craigslist's use or investment of profiteering proceeds.

Plaintiff alleges that craigslist knowingly profited from prostitution generally, and from the prostitution of plaintiff specifically. Dkt. 187 at ¶¶ 3, 9, 43, 45, 46, 49-58, 64-72, 76-81. Plaintiff also alleges that craigslist used these illegal proceeds to maintain their enterprise and business. Dkt. 187 at ¶¶ 261, 272. However, plaintiff does not allege an independent injury from craigslist's alleged use or investment of the profiteering proceeds. Plaintiff's only allegations of harm stem from the alleged acts of criminal profiteering, not from the use of the illegal proceeds. Accordingly, plaintiff's second amended complaint fails to allege a separate Criminal Profiteering Act claim on this count because she has not alleged an independent harm from the use or investment of profiteering proceeds.

Based on the foregoing discussion, the Court should dismiss plaintiff's Criminal Profiteering Act claim for alleged Use of Profiteering Proceeds under RCW 9A.82.080(1)(a) with prejudice.

### 4. Sexual Exploitation of Children Act (SECA) (Count Six)

Plaintiff's sixth count alleges that all defendants violated the Sexual Exploitation of Children Act. Dkt. 187 at ¶¶ 280-282.

The Court previously dismissed plaintiff's Sexual Exploitation of Children Act claim as an independent privately-enforceable cause of action. Dkt. 62 at 34; Dkt. 153. Instead, the Court interpreted plaintiff's SECA claim as a claim for attorney's fees and costs. Dkt. 62; Dkt. 153. Plaintiff has re-pled her SECA claim. Dkt. 187 at ¶¶ 280-282. Plaintiff clarifies that she is making a request for costs and fees and contends that

alleged SECA violations provide additional bases for her Criminal Profiteering Act claims.[1] Dkt. 205 at 24. craigslist's motion argues that plaintiff has failed to state a cause of action for the alleged violations of RCW 9.68A.040 (Sexual Exploitation of a Minor); RCW 9.68A.050 (Dealing in Depictions of Minors Engaged in Sexually Explicit Conduct); and RCW 9.68A.060 (Sending, Bringing into State Depictions of Minor Engaged in Sexually Explicit Conduct).

Pursuant to RCW 9.68A.040 a person is guilty of sexual exploitation of a minor if the person:

> (a) Compels a minor by threat or force to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance;
>
> (b) Aids, invites, employs, authorizes, or causes a minor to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance; or
>
> (c) Being a parent, legal guardian, or person having custody or control of a minor, permits the minor to engage in sexually explicit conduct, knowing that the conduct will be photographed or part of a live performance.

RCW 9.68A.040. This provision requires that the alleged perpetrator take some affirmative act inducing the minor to engage in the alleged sexually explicit conduct. *State v. Chester*, 82 Wn. App. 422, 428 (1996), *aff'd*, 133 Wn.2d 15 (1997).

The second amended complaint does not allege that craigslist was a legal guardian or at any point had custody or control over plaintiff. Plaintiff alleges that her traffickers used force to traffic plaintiff and created the photographs of plaintiff that were

---

[1] Plaintiff cites the following provisions of the Sexual Exploitation of Children's Act: RCW 9.68A.040; .050; .060; .070; .080; .100; .101; .102; .103. A violation of any of these provisions can constitute an act of Criminal Profiteering. *See*, RCW 9A.82.010(4).

REPORT AND RECOMMENDATION - 29

posted on the craigslist website. Dkt. 187 at ¶¶ 5, 6, 16, 42-45. However, plaintiff does not allege that craigslist took any affirmative action compelling, aiding, inviting, employing, authorizing or causing plaintiff to engage in sexually explicitly conduct that would be photographed. Accordingly, plaintiff's second amended complaint fails to allege a cause of action against craigslist for alleged violations of RCW 9.68A.040.

RCW 9.68A.050 prohibits a person from knowingly developing, publishing, printing, disseminating, exchanging, financing, attempting, or selling a visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct as defined by RCW 9.68A.011. RCW 9.68A.050(1), (2). This provision also prohibits a person from possessing with intent to develop, duplicate, publish, print, disseminate, exchange, or sell any visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct as defined in RCW 9.68A.011. *Id*.

RCW 9.68A.060, prohibits a person from knowingly sending or causing to be sent, or bringing or causing to be brought, into Washington for sale or distribution, a visual or printed matter that depicts a minor engaged in sexually explicit conduct as defined by RCW 9.68A.011. RCW 9.68A.060(1), (2).

The second amended complaint does not allege that craigslist created the illegal photos of plaintiff or created the illegal posts. The second amended complaint also does not allege that craigslist financed the traffickers or took any affirmative action in the process of photographing plaintiff. Instead, plaintiff is alleging that craigslist violated RCW 9.68A.050 and RCW 9.68A.060 by allowing the traffickers to post the illegal photographs; by accepting the illegal photographs; and by not deleting the illegal posts. Dkt. 205 at 24, Dkt. 187 at ¶¶ 3, 46, 50, 52, 58, 64, 67, 69, 72, 75, 79, 84, 95, 281.

As has been discussed, a plaintiff cannot hold a website liable for supplying a platform or communication service, even if third parties use the service to post illegal content and the website does not take action to remove such content. *Gonzalez*, 2 F.4th at 892.Similarly, a plaintiff cannot hold a website liable for hosting illegal content created by a third party, even if the website does not act to remove the content. *Internet Brands*, 824 F.3d at 851. Additionally, a website can only be held liable if the website materially contributed to the contents' alleged unlawfulness or is responsible for what makes the content itself illegal. *Gonzalez*, F.4th at 893.

Accordingly, because plaintiff is not alleging that craigslist contributed to the illegality of the photographs posted on the website and did not induce the illegal content, plaintiff has not alleged that craigslist is the content creator or responsible for the photographs. Instead, plaintiff's allegations regarding RCW 9.68A.050 and RCW 9.68A.060 seek to hold craigslist liable for posting and publishing third party created content. Therefore, these claims are barred by the Communications Decency Act.

Based on the foregoing discussion, the Court should grant craigslist's motion and dismiss plaintiff's SECA claims based on alleged violations of  RCW 9.68A.040, RCW 9.68A.050 and RCW 9.68A.060.

## <u>CONCLUSION</u>

Based on the foregoing discussion, the undersigned recommends that the Court GRANT IN PART and DENY IN PART craigslist's motion to dismiss. Dkt. 200. The undersigned recommends that the Court:

ï   Dismiss plaintiff's negligence claim (Count One) with prejudice as barred by the Communications Decency Act (47 U.S.C. § 230)

  ï   Dismiss plaintiff's strict liability claim (Count Two) with prejudice as barred by the Communications Decency Act (47 U.S.C. § 230)

  ï   Dismiss plaintiff's Criminal Profiteering Act claim (Count Four) to the extent the claim relies on the following predicate offenses:

   o   Trafficking (RCW 9A.40.100) for failure to state a claim without prejudice;

   o   Promoting Commercial Sexual Abuse of a Minor (RCW 9.68A.101) as barred by the Communications Decency Act (47 U.S.C. § 230) with prejudice;

   o   Leading Organized Crime (RCW 9A.82.060) (Count Four and Count Five) as barred by the Communications Decency Act (47 U.S.C. § 230) with prejudice;

   o   Use of Proceeds of Criminal Profiteering (RCW 9A.82.080) for failure to state a claim with prejudice;

   o   Sexual Exploitation of a Minor (RCW 9.68A.040) for failure to state a claim with prejudice;

   o   Dealing in Depictions of Minors Engaged in Sexually Explicit Conduct (RCW 9.68A.050) as barred by the Communications Decency Act (47 U.S.C. § 230) with prejudice; and

   o   Sending, Bringing into State Depictions of Minor Engaged in Sexually Explicit Conduct (RCW 9.68A.060) as barred by the Communications Decency Act (47 U.S.C. § 230) with prejudice.

  ï Not Dismiss plaintiff's Criminal Profiteering Act claim (Count Four) to the extent the claim relies on the following predicate offenses:

    o Promoting Prostitution in the First Degree (RCW 9A.88.070), limited to conduct occurring before May 8, 2007; and

    o Promoting Prostitution in the Second Degree (RCW 9A.88.080).

  ï Allow plaintiff's remaining claims to proceed in this litigation.

  The parties have fourteen (14) days from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b)(2). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). If objections are filed, the parties shall have fourteen (14) days from the service of the objections to file a response. FRCP 72(b)(2). Accommodating this time limitation, this matter shall be set for consideration on October 8, 2021, as noted in the caption.

  Dated this 16th day of September, 2021.


*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 33