BENJAMIN M. SADUN (287533)
benjamin.sadun@dechert.com
DECHERT LLP
US Bank Tower, 633 West 5th Street,
Suite 4900
Los Angeles, CA 90071-2013
Phone: (213) 808-5721; Fax: (213) 808-5760

KATHLEEN N. MASSEY (*admitted pro hac vice*)
kathleen.massey@dechert.com
MARK S. CHEFFO (*pro hac vice forthcoming*)
mark.cheffo@dechert.com
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500; Fax: (212) 698 3599

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| SERENA FLEITES and JANE DOE NOS. 1 through 33,<br><br>Plaintiffs,<br><br>v.<br><br>MINDGEEK S.A.R.L.; MG FREESITES, LTD; MINDGEEK USA INCORPORATED; MG PREMIUM LTD.; RK HOLDINGS USA INC.; MG GLOBAL ENTERTAINMENT INC.; TRAFFICJUNKY INC.; BERND BERGMAIR; FERAS ANTOON; DAVID TASSILLO; COREY URMAN; VISA INC.; COLBECK CAPITAL DOES 1-10; BERGMAIR DOES 1-10<br>          Defendants. | CASE NO.  2:21-CV-04920-CJC-ADS<br><br>Judicial Officer:    Cormac J. Carney<br>Courtroom: 9B<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MINDGEEK'S MOTION TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM**<br><br>Hearing:     January 24, 2022<br>Time:     1:30 p.m.<br>Courtroom: 9B |

CASE NO. 2:21-cv-04920

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................... 1

BACKGROUND ....................................................................................... 4

LEGAL STANDARD ............................................................................... 5

ARGUMENT ............................................................................................ 7

I.  The Court Should Dismiss the Improperly Named MindGeek Entities. ......... 7

II.  The Court Lacks Personal Jurisdiction over the Foreign MindGeek Entities. .................................................................................................... 8

    A.  The Court Lacks Personal Jurisdiction over MindGeek S.à.r.l. ........... 9

    B.  The Court Lacks Personal Jurisdiction over MG Premium Ltd. ......... 10

    C.  The Court Lacks Personal Jurisdiction over Freesites with Respect to the Non-California Plaintiffs' Claims. ............................... 10

    D.  The Presence of MindGeek USA Incorporated and MG Global Entertainment Inc. Is Irrelevant. ...................................................... 13

III.  The Ex-U.S. Plaintiffs' Claims Should Be Dismissed to the Extent Their Claims Are Impermissibly Extraterritorial. ................................... 15

IV.  Section 230 Bars All of Plaintiffs' State and Federal Claims against Websites Based on Content Created by Third Parties. ........................... 17

V.  The FOSTA Exemption Does Not Apply Because Plaintiffs Fail to Allege Defendants Violated the TVPRA under Any Standard. ................ 22

    A.  FOSTA Applies Only If Defendants' Conduct Amounts to a Violation of 18 U.S.C. § 1591. ............................................................ 23

    B.  Plaintiffs Do Not Plausibly Allege Defendants Violated Section 1591, as Required by FOSTA. ....................................................... 25

        1.  Several Plaintiffs Fail to Allege Commercial Sex Trafficking. .................................................................................. 26

        2.  Plaintiffs Do Not Allege Defendants Directly Trafficked Them. ...................................................................... 28

        3.  Plaintiffs Do Not Allege Defendants Participated in Ventures That Trafficked Them. .................................................. 29

        4.  Plaintiffs Fail to Allege Defendants Actually Knew of or Recklessly Disregarded Their Alleged Trafficking. ................................................................................ 31

    C.  Plaintiffs Also Fail to Plead a Section 1595 Claim. ........................... 32

VI.  Plaintiffs' RICO Claims Should be Dismissed. ...................................... 34

    A.  Plaintiffs Have Not Adequately Alleged a RICO Enterprise. ............. 34

        1.  Plaintiffs Do Not Adequately Allege Purported Enterprise Members Shared a "Common Purpose." ....................... 35

        2.  Plaintiffs Have Not Plausibly Pled a Distinct RICO ................ 38

# TABLE OF CONTENTS
(continued)

**Page**

B.    Plaintiffs Have Not Alleged a Violation of § 1962(a). ....................... 40

C.    Plaintiffs Have Not Alleged the Required Injury to Business or Property. ........................................................................................... 40

    1.    Extraterritorial Injuries. .................................................... 41

    2.    Other Alleged Injuries. ..................................................... 41

D.    Plaintiffs Fail to Allege Predicate Acts Connected to Their Injuries ............................................................................................. 44

E.    Plaintiffs Fail to Allege a RICO Conspiracy. ................................... 48

VII.   Plaintiffs' California Civil Conspiracy Claims Should be Dismissed. .......... 49

VIII.  Defendants Reserve Their Rights as to Plaintiffs' Remaining Claims. ......... 49

CONCLUSION ............................................................................................. 50

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.B. v. Wyndham Hotels & Resorts, Inc.*,
  2021 WL 1235241 (D. Or. Mar. 31, 2021) ......................................... 30

*Ainsworth v. Owenby*,
  326 F. Supp. 3d 1111 (D. Or. 2018)................................................ 43

*Allergan, Inc. v. Merz Pharms., LLC*,
  2011 WL 13323227 (C.D. Cal. Aug. 1, 2011) .................................... 10

*AMA Multimedia, LLC v. Wanat*,
  970 F.3d 1201 (9th Cir. 2020) ................................................. 6, 10

*Amy v. Curtis*,
  2020 WL 5365979 (N.D. Cal. Sept. 8, 2020)...................................... 42

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................... 6, 28

*Ashworth v. Team Indus. Servs., Inc.*,
  2016 WL 9412450 (C.D. Cal., Sept. 2, 2016)..................................... 50

*In re Auto. Antitrust Cases I & II*,
  135 Cal. App. 4th 100 (2005) .................................................. 14

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
  2020 WL 4368214 (N.D. Cal. July 30, 2020) ..................................... 31

*Banks v. ACS Educ.*,
  638 F. App'x 587 (9th Cir. 2016)............................................... 48

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ................................................. 18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 ............................................................ 8, 27, 47

*Berg v. First State Ins. Co.*,
  915 F.2d 460 (9th Cir. 1990).................................................. 41

*Blanton v. Hous. Auth.*,
    794 P.2d 412 (Okla. 1990) ................................................................................ 43

*Bristol-Myers Squibb Co. v. Super. Ct.*,
    137 S. Ct. 1773 (2017) ........................................................................... *passim*

*Broidy Cap. Mgmt., LLC v. Qatar*,
    2018 WL 9943551 (C.D. Cal. Aug. 22, 2018) ........................................... 13, 14

*C & M Cafe v. Kinetic Farm, Inc.*,
    2016 WL 6822071 (N.D. Cal. Nov. 18, 2016) .......................................... 38, 42

*Canyon Cnty. v. Syngeta Seeds, Inc.*,
    519 F.3d 969 (9th Cir. 2008) ................................................................... 40, 44

*Caraccioli v. Facebook, Inc.*,
    167 F. Supp. 3d 1056 (N.D. Cal. 2016) ........................................................... 50

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) ....................................................................... 20

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001) ...................................................................................... 39

*Chagby v. Target Corp.*,
    2008 WL 5686105 (C.D. Cal. Oct. 27, 2008) ................................................. 35

*Chi Pham v. Cap. Holdings, Inc.*,
    2011 WL 3490297 (S.D. Cal. Aug. 9, 2011) .................................................. 46

*City of Almaty v. Khrapunov*,
    956 F.3d 1129 (9th Cir. 2020) ....................................................................... 16

*Collins v. City of Pine Lawn*,
    2016 WL 3220074 (E.D. Mo. June 10, 2016) ................................................. 43

*Corradino v. Liquidnet Holdings Inc.*,
    2021 WL 2853362 (S.D.N.Y. July 8, 2021) .................................................... 27

*Crayton v. Hedgpeth*,
    2011 WL 1988450 (E.D. Cal. May 20, 2011) ................................................. 44

*Delphix Corp. v. Embarcadero Techs., Inc.*,
    749 F. App'x 502 (9th Cir. 2018) .................................................................... 6

*Diaz v. Gates*,
  420 F.3d 897 (9th Cir. 2005) ...................................................................... 43, 44

*Doan v. Singh*,
  617 F. App'x 684 (9th Cir. 2015) ........................................................ 34, 35, 36

*Doe v. Bates*,
  2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) ...................................................... 22

*Doe v. Kik Interactive*,
  482 F. Supp. 3d 1242 (S.D. Fla. 2020) ................................................... *passim*

*Doe v. MindGeek USA Inc.*,
  2021 WL 4167054 (C.D. Cal. Sept. 3, 2021) .......................................... *passim*

*Doe v. Reddit, Inc.*,
  No. 21-cv-00768 (C.D. Cal. Oct. 7, 2021) ............................................. *passim*

*Doe v. Twitter, Inc.*,
  2021 WL 3675207 (N.D. Cal. Aug. 19, 2021) ........................................ *passim*

*Dyroff v. Ultimate Software Grp., Inc.*,
  934 F.3d 1093 (9th Cir. 2019) ...................................................................... 22

*Ellis v. J.P. Morgan Chase & Co.*,
  2015 WL 78190 (N.D. Cal. Jan. 6, 2015) ................................................... 36, 48

*Empire Merchants, LLC v. Reliable Churchill LLP*,
  902 F.3d 132 (2d Cir. 2018) ...................................................................... 46

*Evans v. Alliance Funding*,
  2010 WL 11482495 (C.D. Cal. Dec. 13, 2010) ...................................................... 4

*Fair Housing Council v. Roommates.com*,
  521 F.3d 1157 (9th Cir. 2008) ......................................................... 20, 22, 25

*Fidrych v. Marriott Int'l, Inc.*,
  952 F.3d 124 (4th Cir. 2020) ...................................................................... 10

*Gardner v. Starkist Co.*,
  418 F. Supp. 3d 443 (N.D. Cal. 2019) ................................................................ 35

*Geiss v. Weinstein Co. Holdings LLC*,
  383 F. Supp. 3d 156 (S.D.N.Y. 2019) ..................................................... 27, 33

**MOTION TO DISMISS**

*Global Master Int'l Grp., Inc. v. Esmond Nat., Inc.*,
   2021 WL 1324433 (C.D. Cal. Mar. 9, 2021) ..................................................... 16

*Goddard v. Google, Inc.*,
   640 F. Supp. 2d 1193 (N.D. Cal. 2009).......................................................... 22

*Gonzalez v. Google LLC*,
   2 F.4th 871 (9th Cir. 2021) ............................................... 19, 20, 21, 22

*H.H. v. G6 Hospitality, LLC.*
   2019 WL 6682152 (S.D. Ohio Dec. 6, 2019).................................................. 27

*Hall v. Fiat Chrysler Am. US LLC*,
   2021 WL 3560231 (C.D. Cal. July 20, 2021) ......................................34, 35, 38

*Handsome Music, LLC v. Etoro USA LLC*,
   2020 WL 8455111 (C.D. Cal. Dec. 17, 2020)................................................. 10

*Henriks v. Moritz*,
   304 F. App'x 491 (9th Cir. 2008)................................................................ 48

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
   485 F.3d 450 (9th Cir. 2007) ..................................................................... 12

*Hourani v. Mirtchev*,
   796 F.3d 1 (D.C. Cir. 2015)....................................................................... 46

*Houston v. Cnty. of San Diego*,
   2008 WL 11508539 (S.D. Cal. Feb. 20, 2008) .................................................. 7

*Howard v. Am. Online, Inc.*,
   208 F.3d 741 (9th Cir. 2000) ..................................................................... 48

*Hungerstation LLC v. Fast Choice LLC*,
   857 F. App'x 349 (9th Cir. 2021) ................................................................ 13

*Hunter v. Tarantino*,
   2010 WL 11579019 (C.D. Cal. July 15, 2010) ................................................ 47

*I.N.S. v. Cardozo-Fonseca*,
   480 U.S. 421 (1987) ................................................................................ 24

*I.T.C. Int'l, LLC v. America Voyage Corp.*,
   2008 WL 11342745 (C.D. Cal. Sept. 26, 2008)............................................... 48

*Iconlab, Inc. v. Bausch Health Cos.*,
    828 F. App'x 363 (9th Cir. 2020)................................................................14, 15

*J.B. v. G6 Hosp., LLC*,
    2020 WL 4901196 (N.D. Cal. Aug. 20, 2020)................................21, 23, 30, 33

*J.B. v. G6 Hosp., LLC*,
    2021 WL 4079207 (N.D. Cal. Sept. 8, 2021)......................................*passim*

*In re Jamster Mktg. Litig.*,
    2009 WL 1456632 (S.D. Cal. May 22, 2009) ......................................34

*Johnson v. UBS AG*,
    2021 WL 2935953, at *2 (9th Cir. July 13, 2021) ............................12

*JST Dist., LLC v. CNV.com, Inc.*,
    2018 WL 6113092 (C.D. Cal. Mar. 7, 2018) ....................................45

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    497 F. Supp. 3d 552 (N.D. Cal. 2020)...................................36, 38, 39

*Kelly v. L.L. Cool J.*,
    145 F.R.D. 32 (S.D.N.Y.1992)............................................................47

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) .........................................................19

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014)........................................................22

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*,
    2013 WL 6816174 (W.D. Ark. Dec. 24, 2013)................................27

*Life Bliss Found. v. Sun TV Network Ltd.*,
    2014 WL 12589657 (C.D. Cal. Sept. 17, 2014)................................6

*Loving v. Princess Cruise Lines, Ltd.*,
    2009 WL 7236419 (C.D. Cal. Mar. 5, 2009) ..................................17

*M.L. v. Craigslist Inc.*,
    2020 WL 6434845 (W.D. Wash. Apr. 17, 2020)..............................21

*M.L. v. Craigslist Inc.*,
    2020 WL 5494903 (W.D. Wash. Sept. 11, 2020) ......................21, 23

*M.L. v. Craigslist Inc.*,
   No. 19-cv-06153 (W.D. Wash. Sept. 16, 2021), ECF No. 225 .................. 17, 21

*In re Managed Care Litig.*,
   2009 WL 812257 (S.D. Fla. Mar. 26, 2009) ...................................... 45

*Martinez v. United States*,
   812 F. Supp. 2d 1052 (C.D. Cal. 2010) ........................................ 49

*State ex rel. Metz v. CCC Info. Servs., Inc.*,
   149 Cal. App. 4th 402 (Cal. Ct. App. 2007) .................................... 49

*Microsoft Corp. v. AT&T Corp.*,
   550 U.S. 437 (2007) ........................................................ 2, 15

*Monterey Plaza Hotel Ltd. P'ship v. Local 483*,
   215 F.3d 923 (9th Cir. 2000) ................................................ 45

*Morrison v. Nat'l Austl. Bank Ltd.*,
   561 U.S. 247 (2010) ........................................................ 15

*Murphy v. Am. Gen. Life Ins. Co.*,
   74 F. Supp. 3d 1267 (C.D. Cal. 2015) ........................................ 49

*NetApp, Inc. v. Nimble Storage, Inc.*,
   41 F. Supp. 3d 816 (N.D. Cal. 2014) ......................................... 49

*Noble v. Weinstein*,
   335 F. Supp. 3d 504 (S.D.N.Y. 2018) ........................................ 33

*North Atl. Imports, LLC v. NexGrill Indus., Inc.*,
   2020 WL 1042209 (C.D. Cal. Jan. 23, 2020) ................................... 8

*Ponomarenko v. Shapiro*,
   287 F. Supp. 3d 816 (N.D. Cal. 2018) ........................................ 49

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) .............................................. 14, 15

*Reitman v. Champion Petfoods USA, Inc.*,
   2018 WL 4945645 (C.D. Cal. Oct. 10, 2018) .................................. 11

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*,
   630 F.3d 866 (9th Cir. 2010) ................................................ 45

*Riggs v. MySpace, Inc.*,
   444 F. Appx. 986 (9th Cir. 2011) .................................................................... 22

*RJR Nabisco, Inc. v. Eur. Cmty.*,
   136 S. Ct. 2090 (2016) ..................................................................................... 16

*Roberts v. Cnty. of Riverside*,
   2020 WL 3965027 (C.D. Cal. June 5, 2020) .................................................. 6, 8

*Ross v. Peters*,
   846 P.2d 1107 (Okla. 1993) ............................................................................ 43

*Sanford v. MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010) ........................................................................... 49

*Sarafian v. Wright Med. Tech., Inc.*,
   2016 WL 1305087 (C.D. Cal. Apr. 1, 2016) ..................................................... 9

*Savoy v. Collectors Universe, Inc.*,
   2020 WL 4938464 (C.D. Cal. July 21, 2020) .................................................. 43

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986) ..................................................................... 6, 45

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th 2004) .................................................................................... 9

*Shaw v. Nissan N. Am., Inc.*,
   220 F. Supp. 3d 1046 (C.D. Cal. 2016) ........................................................... 35

*Smagin v. Compagnie Monegasque de Banque*,
   2021 WL 2124254 (C.D. Cal. May 5, 2021) .................................................... 16

*Smartstop Self Storage Operating P'ship L.P. v. Can-Dev, ULC*,
   2015 WL 13322430 (C.D. Cal. Oct. 26, 2015) .................................................. 6

*Smith v. Puckett*,
   2020 WL 2857373 (W.D. Wash. May 6, 2020) ................................................ 44

*Staff Holdings, Inc. v. Raygoza*,
   2017 WL 7410981 (C.D. Cal. Sept. 27, 2017) ................................................ 34

*Stewart v. Wachowski*,
   2004 WL 2980783 (C.D. Cal. Sept. 28. 2004) ........................................... 46, 47

*Sugarman v. Muddy Waters Cap. LLC*,
    2020 WL 633596 (N.D. Cal. Feb. 3, 2020)...........................................................45

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008)...........................................................................40

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2013 WL 6327490 (N.D. Cal. Dec. 3, 2013) ...................................................50

*Thomas v. Baca*,
    308 F. App'x 87 (9th Cir. 2009)...............................................................42, 43

*Turner v. Cook*,
    362 F.3d 1219 (9th Cir. 2004)...........................................................................48

*Tymoshenko v. Firtash*,
    57 F. Supp. 3d 311 (S.D.N.Y. 2014)................................................................46

*United States v. Afyare*,
    632 F. App'x 272 (6th Cir 2016)......................................................26, 29, 30

*United States v. Bazar*,
    747 F. App'x 454 (9th Cir. 2018).....................................................................28

*United States v. Christy*,
    916 F.3d 814 (10th Cir. 2019)..........................................................................46

*United States v. Clark*,
    435 F.3d 1100 (9th Cir. 2006).........................................................................26

*United States v. Durham*,
    902 F.3d 1180 (10th Cir. 2018).......................................................................27

*United States v. Giraldi*,
    864 F.2d 222 (5th Cir. 1988)...........................................................................45

*United States v. Liu*,
    731 F.3d 982 (9th Cir. 2013)............................................................................47

*United States v. Todd*,
    627 F.3d 329 (9th Cir. 2010)......................................................................28, 31

*United States v. Turkette*,
    452 U.S. 576 (1981) ..........................................................................................34

*United States v. Wearing*,
    865 F.3d 553 (7th Cir. 2017) ............................................................. 31

*United States v. X-Citement Video, Inc.*,
    513 U.S. 64 (1994) ........................................................................... 48

*Universal Surface Tech., Inc. v. Sae-A Trading Am. Corp.*,
    2011 WL 281020 (C.D. Cal. Jan. 26, 2011) ...................................... 47

*Warner v. Tinder Inc.*,
    105 F. Supp. 3d 1083 (C.D. Cal. 2015) ............................................ 17

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
    903 F. Supp. 2d 880 (C.D. Cal. 2012) .............................................. 45

*Werner v. Dowlatsingh*,
    818 F. App'x 671 (9th Cir. 2020) ...................................................... 13

*Yagman v. Kelly*,
    2018 WL 2138461 (C.D. Cal. Mar. 20, 2018) ................................... 39

*Yost v. Nationstar Mortg., LLC*,
    2013 WL 4828590 (E.D. Cal. Sept. 9, 2013) ...................................... 8

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
    2021 WL 930623 (N.D. Cal. Mar. 11, 2021) .................................... 19

**Statutes**

18 U.S.C. § 1341 ...................................................................................... 44

18 U.S.C. § 1343 ...................................................................................... 44

18 U.S.C. § 1591 .............................................................................. *passim*

18 U.S.C. § 1594(c) ............................................................................ 22, 32

18 U.S.C. § 1596 ...................................................................................... 16

18 U.S.C. § 1956 ...................................................................................... 46

18 U.S.C. § 1961 ...................................................................................... 34

18 U.S.C. § 1962 .............................................................................. *passim*

18 U.S.C. § 1964(c) ........................................................................... 16, 42

18 U.S.C. § 2252 ...............................................................................47, 49

18 U.S.C. § 2252A ...................................................................................49

18 U.S.C. § 2319 ......................................................................................47

47 U.S.C. § 230 ..................................................................................*passim*

Pub. L. No. 115-164, § 5, 132 Stat. 1253 (2018) ................................*passim*

Cal. Civ. Code § 1708.85 ........................................................................49

Cal. Civ. Code § 17200, *et seq.* ........................................................17, 49

**Court Rules**

Fed. R. Civ. P. 4(k)(2) ........................................................................12, 13

Fed. R. Civ. P. 8 ...............................................................................2, 6, 8

Fed. R. Civ. P. 9 ....................................................................................6, 8

Fed. R. Civ. P. 12 .................................................................................5, 6

**Draft Bills**

H.R. 1865, 115th Cong. ...........................................................................24

S. 1693, 115th Cong. ...............................................................................24

# INTRODUCTION

The Complaint is brought by thirty-four women (collectively "Plaintiffs") who claim that they have suffered harm because pornographic videos of them were uploaded to websites owned and operated by MindGeek.[1]  The videos were posted to the internet in a variety of different factual circumstances.  For some Plaintiffs, former partners posted the videos to the internet as "revenge pornography."  *E.g.*, Compl. ¶¶ 262, 285, 292.  Some Plaintiffs alleged they were tricked into creating the videos that were later uploaded.  *E.g.*, Compl. ¶¶ 289, 301, 317.  Others were not even aware the videos have been created until long afterwards.  *E.g.*, Compl. ¶¶ 323, 329, 356.  Fourteen Plaintiffs are minors whose claims are legally and factually different from the remaining 20 Plaintiffs who allege they were filmed as adults.  Plaintiffs are from twelve different states and five different countries.  The events underlying their claims took place at different times; some well over a decade ago.  With only a few exceptions, each Plaintiff's experience is unrelated to any other and those disparate experiences do not belong in a single complaint.

What Plaintiffs' allegations ***do*** have in common is that no Plaintiff alleges that MindGeek created any of the videos in question.  Nor do they allege that MindGeek posted them to the internet.  Plaintiffs instead allege that MindGeek provided an attractive platform for members of the public to upload and share their video content and that Plaintiffs' assailants availed themselves of that platform.  But merely providing an online platform capable of being used for unlawful purposes is not illegal or actionable.  The Complaint attempts to obscure this with hundreds of irrelevant and hyperbolic paragraphs about MindGeek's purported business practices.  Stripped of their overheated rhetoric and references to fictional television characters, Plaintiffs'

---

[1] Defendants MindGeek S.à.r.l., MG Freesites Ltd ("Freesites"), MindGeek USA Inc., MG Premium Ltd, RK Holdings USA Inc., MG Global Entertainment Inc., and TrafficJunky Inc. (collectively "MindGeek") dispute Plaintiffs' allegations they all own or operate websites.  Only Freesites operates the websites on which the videos at issue here were posted.

1

allegations fall well short of stating a claim against any of the MindGeek entities.

As an initial matter, Plaintiffs have failed to adequately plead facts plausibly alleging that six of the seven MindGeek entities named may have caused them harm. In fact, two of the entities do not even exist. This does not meet Rule 8's pleading requirements as to these phantom defendants and they should thus be dismissed.

Second, the only Defendant that owns or operates the websites where the offending videos were allegedly posted—Freesites—is a limited liability company incorporated and headquartered in Cyprus; it does not have an office in California. There is thus no general personal jurisdiction over Freesites in California. *See Bristol-Myers Squibb Co. v. Super. Ct.* (*BMS*), 137 S. Ct. 1773, 1776 (2017) (general jurisdiction typically limited to a forum where defendant is incorporated or headquartered). "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* at 1780 (citation omitted). Even assuming solely for the purpose of this motion that there are sufficient allegations of in-state conduct involving Freesites to support specific jurisdiction, that would only be true for the five Plaintiffs who reside in California and allegedly sustained injuries here. *See id.*

Third, thirteen of the Plaintiffs (Does 2, 6, 8-14, 23-25, 28) are foreign nationals who allegedly sustained harm on foreign soil, ostensibly at the hands of foreign perpetrators. These claims should be dismissed because these foreign nationals cannot sue under U.S. law for harm allegedly sustained in their respective home countries. *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454 (2007) ("United States law governs domestically but does not rule the world.").

The Court should also dismiss all of Plaintiffs' claims as barred or preempted by Section 230 of the Communications Decency Act ("Section 230"). While MindGeek acknowledges that this Court has previously declined to dismiss claims against them on Section 230 grounds, the recent and decisive shift in the case law from courts within the Ninth Circuit—including two opinions that revisited earlier

rulings relied upon by the Court—coupled with Ninth Circuit case law strongly suggest that the Court should visit the issue anew.

Nor can Plaintiffs circumvent Section 230 under the narrow exception for federal sex trafficking claims created by the 2018 Allow States to Fight Online Sex Trafficking Act ("FOSTA"). Recent case law concludes that "the most persuasive reading of [FOSTA] is that it provides an exemption from immunity for a section 1595 claim if, but only if, the defendant's conduct amounts to a violation of section 1591," the criminal provision of the anti-trafficking statute they seek to enforce. *J.B. v. G6 Hosp., LLC* (*J.B. II*), 2021 WL 4079207, at *12 (N.D. Cal. Sept. 8, 2021). In light of these recent developments and for the reasons set forth more fully herein, the Court should dismiss Plaintiffs' claims as barred or preempted by Section 230.

Plaintiffs' RICO claims are also barred by Section 230 immunity, but even if they were not, they would still all fail as a matter of law for at least five reasons. First, Plaintiffs have not adequately alleged a RICO enterprise as is required to bring suit under the RICO statute. Second, Plaintiffs have not alleged RICO injuries to business or property, as required for RICO standing. Third, Plaintiffs have not adequately pleaded RICO predicate acts or the required direct causal relationship between the alleged predicate acts and Plaintiffs' purported injuries. Fourth, Plaintiffs have failed to plead investment injury and other elements required by Section 1962(a). And fifth, Plaintiffs fail to plead a RICO conspiracy. Accordingly, Plaintiffs' RICO claims should be dismissed as a matter of law.

Plaintiffs have brought a variety of additional claims, mostly sounding in state law. These claims are all barred by Section 230. *See Doe v. Twitter, Inc.*, 2021 WL 3675207, at *25 (N.D. Cal. Aug. 19, 2021). Moreover, Plaintiffs do not distinguish among the applicable state laws or Plaintiffs' individual circumstances. This not only renders joinder of the 34 separate Plaintiffs improper, but also makes it impossible for the Court to evaluate the individual deficiencies in each Plaintiff's claim on a motion to dismiss. Accordingly, to the extent that the Court permits any of these claims to

advance notwithstanding Section 230, MindGeek expressly reserves the right to challenge the sufficiency of these additional claims on a future appropriate motion.

## BACKGROUND

Pornhub is an adult interactive video site. *See* Compl. ¶ 86. Pornhub's interface is similar to YouTube's; Pornhub's main feature is a library of videos uploaded by third-party users. *Id.* ¶ 83-86. Those who wish to upload videos must register and agree to be bound by the website's Terms of Service, *id.* ¶ 127, which expressly prohibit "post[ing] any Content that depicts any person under 18 years of age … whether real or simulated" or "post[ing] any Content depicting … non-consensual sexual activity."[2] Freesites also retains full-time moderators to screen for CSAM and other inappropriate content. *Id.* ¶¶ 190-91.

Plaintiffs' suits stem from distinct events that relate to the uploading of videos and photographs (collectively referred to as videos), many illegally created, to one or more websites allegedly owned or operated by Freesites in violation of the sites' Terms of Service. Fourteen of the Plaintiffs (Fleites, Does 1-13) allege they were minors at the time the sexually explicit videos of them were created. *Id.* ¶ 522. The remaining 20 Plaintiffs (Does 14-33) were adults. Plaintiffs are from a mix of California (Fleites and Does 1, 4, 15 and 19, collectively the "California Plaintiffs"), eleven other states (Does 3, 5, 7, 16-18, 20-22, 26, and 29-33, collectively the "domestic, non-California Plaintiffs"), and four different foreign countries (Does 2, 6, 8-14, 23-25, 27, and 28 (collectively, the "ex-U.S. Plaintiffs").[3] *Id.* ¶¶ 11-44. None of the ex-U.S. Plaintiffs have adequately pleaded that any of the foreign MindGeek

---

[2] *See* Pornhub.com Terms of Service (Decl. of Benjamin M. Sadun in Support of Mot. To Dismiss the Compl. with Prejudice ("Sadun Decl.") Ex. A); *see also* Compl. ¶ 128 (noting that the terms of service prohibit posting "content depicting racism, hate, incest, and children."). The Complaint references the Terms of Service, Compl. ¶¶ 124, 127-28, and the Court may consider documents referenced in the Complaint on a motion to dismiss. *See, e.g.*, *Evans v. Alliance Funding*, 2010 WL 11482495, at *5 (C.D. Cal. Dec. 13, 2010).

[3] An appendix compiling these facts in chart form is attached. Sadun Decl. Ex. B.

entities' actions within the United States caused them harm or that either MindGeek USA or MG Global Entertainment specifically harmed them. To the contrary, with one possible exception discussed *infra*, these Plaintiffs allege that they suffered harm in a foreign country and were trafficked by foreign individuals, and that their harm was allegedly caused by a foreign non-party. *See, e.g.*, *id.* ¶¶ 13, 25, 276-279, 284.

Three named Defendants are foreign companies. MindGeek S.à.r.l. is a private limited liability company (*société à responsabilité limitée*) incorporated under the laws of Luxembourg, having its registered office in Luxembourg. Compl. ¶ 45; Decl. of A. Andreou in Support of Mot. to Dismiss ("Andreou Decl."), ¶ 4. The entity is a holding company, without any employees or operations. Andreou Decl. ¶ 6. Freesites and MG Premium are limited liability companies organized and operating under the laws of the Republic of Cyprus, with their head offices in Cyprus. Compl. ¶¶ 46; 48; Andreou Decl. ¶¶ 8, 16. Although they both operate websites, only Freesites operates the websites on which the videos at issue were posted. None of these entities have offices in California or anywhere else in the United States. Compl. ¶¶ 45, 46, 48; Andreou Decl. ¶¶ 10, 18.

The Complaint is 177 pages long and contains 644 paragraphs. Despite the fact that the Complaint is brought on behalf of 34 Plaintiffs, only about a fifth of the Complaint has anything to do with any of them, averaging less than five substantive paragraphs for each Plaintiff individually. Compl. ¶¶ 262-405. Instead, the Complaint dedicates dozens of paragraphs to general allegations about MindGeek's purported business practices, without ever tying those purported practices to what happened to Plaintiffs or their alleged injuries. *Id.* ¶¶ 72-261; 433-83. While MindGeek disagrees that these allegations are accurate, they are irrelevant to this motion because they have little or nothing to do with the posting of the videos of these Plaintiffs.

## LEGAL STANDARD

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(2)

and 12(b)(6).  Rule 12(b)(2) limits a court's "exercise [of] personal jurisdiction over a nonresident defendant" to circumstances in which "asserting jurisdiction does not offend the principles of Fifth Amendment due process." *Life Bliss Found. v. Sun TV Network Ltd*., 2014 WL 12589657, at *4 (C.D. Cal. Sept. 17, 2014) (citation omitted). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *Delphix Corp. v. Embarcadero Techs., Inc*., 749 F. App'x 502, 504 (9th Cir. 2018).  This standard "is not toothless" and a plaintiff "cannot simply rest on the bare allegations of its complaint." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020), *cert. denied*, -- S. Ct. --, 2021 WL 4507661 (Oct. 4, 2021).  Where defendants proffer evidence contradicting the pleadings, as MindGeek does here, the typical presumption flips and "disputed allegations in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction." *Id*.; *Smartstop Self Storage Operating P'ship L.P. v. Can-Dev, ULC*, 2015 WL 13322430, at *2 (C.D. Cal. Oct. 26, 2015) (Carney, J.) ("[T]he district court 'may not assume the truth of allegations in a pleading which are contradicted by affidavit.'") (citation omitted).

A complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  Only specific factual allegations are accepted as true, not legal assertions, "[t]hreadbare recitals of the elements," or "conclusory statements." *Id.* And "a lack of differentiation in the allegations against multiple defendants is cause for dismissal pursuant to Rule 8." *Roberts v. Cnty. of Riverside*, 2020 WL 3965027, at *2 (C.D. Cal. June 5, 2020).  In addition, allegations of fraud, including mail and wire fraud, must be plead with particularity under Fed. R. Civ. P. 9(b).  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400-01 (9th Cir. 1986).

**ARGUMENT**

**I.    The Court Should Dismiss the Improperly Named MindGeek Entities.**

Plaintiffs have sued seven MindGeek entities but six of them do not belong in this case.  Two of the named entities, TrafficJunky Inc. and RK Holdings USA Inc., do not exist and should, accordingly, be dismissed.  Andreou Decl.¶¶ 25-26; *see Houston v. Cnty. of San Diego*, 2008 WL 11508539, at *9 (S.D. Cal. Feb. 20, 2008) (dismissing defendant where "undisputed facts establish that this entity does not exist").

Four other entities exist but are not proper parties to this lawsuit.  MindGeek S.à.r.l. is a holding company, without any employees or operations, that directly and indirectly owns certain affiliated entities.  Andreou Decl. ¶ 6.  MG Premium is responsible for operating websites referred to as "paysites," which offer certain subscription-based content.  *Id.* ¶ 17.  MG Premium does not operate Pornhub or Pornhub Premium, the ModelHub program or the Content Partner Program.  *Id.* Neither MindGeek S.à.r.l. nor MG Premium is connected to the alleged wrongdoing in this case.  MindGeek USA and MG Global Entertainment are Delaware corporations with offices in California, but Plaintiffs have not pleaded that either entity played any role in the conduct underlying their claims.  Compl. ¶¶ 47, 50; Andreou Decl. ¶¶ 13-14, 20-22.  Nor could they.  MindGeek USA is a service provider whose operations are dedicated solely to distribution of DVDs, *id.* ¶ 14, and none of the Plaintiffs allege their content was ever distributed via DVD.  MG Global Entertainment is responsible for distributing licensed content to businesses like cable operators, hotels, and cruise ships.  *Id.* ¶ 21.  To the extent MG Global Entertainment employs certain employees who live in the United States and perform work for other entities, none of those employees is alleged to have had anything to do with the Plaintiffs or lives in California.  *Id.* ¶ 22.

Plaintiffs try to connect these entities to this lawsuit by treating all seven as one collective and engaging in impermissible group pleading.  But group pleading that

**MOTION TO DISMISS**

fails to distinguish among defendants does not suffice to show that certain defendants are properly joined. *Roberts*, 2020 WL 3965027, at *2. "Under the pleading standard of either Rule 8 (and Rule 9, to the extent applicable), Plaintiffs must distinguish Defendants' particular roles in the alleged causes of action." *Yost v. Nationstar Mortg., LLC*, 2013 WL 4828590, at *3 (E.D. Cal. Sept. 9, 2013). Therefore, mere "[l]abels, conclusions, and 'a formulaic recitation of the elements of a cause of action will not do.'" *North Atl. Imports, LLC v. NexGrill Indus., Inc.*, 2020 WL 1042209, at *1 (C.D. Cal. Jan. 23, 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555). To establish claims against MindGeek S.à.r.l., MG Premium, MindGeek USA, and MG Global Entertainment, Plaintiffs must plead that those entities have taken actions that render the claims against them plausible. They cannot do so—none of those entities operate the websites Plaintiffs allege caused them harm, and Plaintiffs have not pleaded any action taken by any of these companies relevant to their claims. Because Plaintiffs have failed to plausibly allege that TrafficJunky Inc., RK Holdings USA, MindGeek S.à.r.l., MG Premium, MindGeek USA or MG Global Entertainment are properly named as defendants, they should be dismissed.

## II.    The Court Lacks Personal Jurisdiction over the Foreign MindGeek Entities.

It is Plaintiffs' burden to establish at least one of the "two types of personal jurisdiction: general and specific" for every one of the claims brought by each Plaintiff. *See BMS*, 137 S. Ct. at 1776. General jurisdiction requires that Plaintiffs demonstrate contacts that are so constant and pervasive as to render it essentially "at home" there. *Id.* at 1780. This is generally limited to the state where the defendant is either headquartered or incorporated. *Id.* "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (citation omitted). Therefore, "a defendant's relationship with a ... third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1781. While courts must consider "the interests of the forum

State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice," the "primary concern is the burden on the defendant." *Id.*

Due process requires *a direct* connection between the harm alleged and Defendants' contacts with the forum state. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 1781. The Ninth Circuit analyzes specific jurisdiction under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). It is the plaintiff's burden to satisfy the first two prongs. *Id.* If they do so, the burden shifts to the defendant to "present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (citation omitted).

The non-California Plaintiffs cannot demonstrate that their alleged harms arose out of any foreign MindGeek entities' California-related activities. Accordingly, under *BMS* and for the reasons that follow the Court lacks specific jurisdiction over the non-California Plaintiffs' claims as to the foreign MindGeek entities.

### A.    The Court Lacks Personal Jurisdiction over MindGeek S.à.r.l.

MindGeek S.à.r.l. is a foreign holding company without employees or operations anywhere, Andreou Decl. ¶ 6, let alone in California. Since this holding company is not connected to the alleged wrongdoing in this case, the Court lacks jurisdiction over it. MindGeek S.à.r.l. should accordingly be dismissed as to all Plaintiffs. *See, e.g.*, *Sarafian v. Wright Med. Tech., Inc.*, 2016 WL 1305087, at *4 (C.D. Cal. Apr. 1, 2016) (finding court lacked personal jurisdiction over holding company where "other than being the parent and holding company of [the subsidiary],

it does not appear that [the holding company] has *any* contacts with California") (emphasis in original); *Allergan, Inc. v. Merz Pharms.*, *LLC*, 2011 WL 13323227, at *9 (C.D. Cal. Aug. 1, 2011) (granting dismissal for lack of personal jurisdiction where "Defendant simply operates as a holding company, and the subsidiaries' business operations are independent from and not controlled by Defendant").

### B.    The Court Lacks Personal Jurisdiction over MG Premium Ltd.

The Court also lacks personal jurisdiction over MG Premium.  MG Premium is a Cypriot company with no offices in the United States and does not own or operate the websites at issue in this case.  Andreou Decl. ¶¶ 16-18.  As no Plaintiff has pleaded that MG Premium harmed her, there is no nexus between that entity and Plaintiffs' claims sufficient to support personal jurisdiction.

### C.    The Court Lacks Personal Jurisdiction over Freesites with Respect to the Non-California Plaintiffs' Claims.

Freesites is a limited liability company organized and operating under the laws of the Republic of Cyprus, with its head office in Cyprus; it is not incorporated in California and does not have its principal place of business in the forum.  The fact that it operates websites that are available in California is insufficient to establish general jurisdiction.  *Handsome Music, LLC v. Etoro USA LLC*, 2020 WL 8455111, at *5 (C.D. Cal. Dec. 17, 2020) ("Generally, courts have been reluctant to find general jurisdiction based on a defendant's internet presence, even when the defendant hosts a highly interactive website."); *see also AMA Multimedia*, 970 F.3d at 1207.  The "general availability of the website" in California "does not create the substantial connection to [California] necessary to support the exercise of jurisdiction." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 143 (4th Cir. 2020).

Even assuming for the purposes of this motion only, that the five California Plaintiffs have alleged sufficient in-state conduct by Freesites to support the Court's assertion of specific personal jurisdiction over their claims, the claims of the out-of-state and foreign Plaintiffs would still need to be dismissed because "specific

jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *BMS*, 137 S. Ct. at 1780. The Supreme Court's decision *BMS* is dipositive on this point. There, a mix of California residents and non-residents sued BMS in California alleging that they each sustained personal injuries as a result of taking a medication manufactured and sold by BMS. *Id.* at 1778. Plaintiffs argued that the court had personal jurisdiction over BMS because it was a multinational drug manufacturer that marketed and sold its products throughout the United States, including California. The Supreme Court disagreed, holding that there was no general jurisdiction over BMS in California because the company was incorporated in Delaware and headquartered in New York. It further found that although there were sufficient allegations to support personal jurisdiction for the claims of the California plaintiffs because they resided in California and used the product there, California lacked jurisdiction over the claims of the out-of-state plaintiffs who took the medication and were purportedly injured in their home states. The Court emphasized that for a court "to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum." *Id*. at 1780 (emendations, emphasis, quotations, and citation omitted).

This case is even more straightforward than *BMS*. At set forth in detail below, Plaintiffs here plead generally that they suffered emotional distress, loss of jobs, and job opportunities. *See infra* Part VI.C. These injuries ostensibly occurred in the state or foreign country where the Plaintiff resides, which for all but five is not California. Therefore, these claims must be dismissed for lack of personal jurisdiction. *See also Reitman v. Champion Petfoods USA, Inc*., 2018 WL 4945645, at *5 (C.D. Cal. Oct. 10, 2018) (finding California court lacked personal jurisdiction where "[n]one of the named Plaintiffs from [other states] alleges any facts relating to this District").

There can be no serious dispute that the out-of-state Plaintiffs have not established that their claims arise out of Freesites' contacts with California. Notably, even the California residents must plead facts to show that there is a sufficient nexus

between Freesites' in-state activity and their alleged injury.  In *Johnson v. UBS AG*, plaintiffs brought suit against a foreign bank on behalf of their mother's estate alleging that the bank solicited $3 million from her for investment purposes and did not properly account for the money. 2021 WL 2935953, at *2 (9th Cir. July 13, 2021). Plaintiffs asserted that jurisdiction was proper over the foreign bank because their mother had lived in California and the bank had offices in California.  The Ninth Circuit affirmed the district court's dismissal for lack of personal jurisdiction, explaining that "even when a defendant has reached out beyond its home and exploited a market in the forum, the plaintiff's claims still must arise out of or relate to the defendant's contacts with the forum." *Id.* (citing *Ford Motor Co. v. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021)).

Plaintiffs plead in the alternative that Freesites is subject to suit in this Court under the "national long-arm statute," Fed. R. Civ. P. 4(k)(2).  *See* Compl. ¶ 63.  Rule 4(k)(2) allows the court to consider a defendant's contacts with the United States as a whole but if and only if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction" and "exercising jurisdiction is consistent with the United States Constitution and laws."  Fed. R. Civ. P. 4(k)(2).  It is an option of last resort and does not apply in this case.

Rule 4(k)(2) is inapplicable to the claims of the domestic, non-California Plaintiffs (i.e., Plaintiffs from other states) because each can sue in a United States jurisdiction that can exercise specific jurisdiction over Freesites to adjudicate any viable claims by these Plaintiffs against it—the state where they were allegedly harmed.  The Ninth Circuit has held that "[a] defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007) (collecting cases).  This does not require that Freesites demonstrate that it is subject to general jurisdiction in another State.  Instead, simply "[n]aming *a more appropriate state* would amount to a consent to personal jurisdiction there." *Id.* (emphasis added)

(citation omitted).   The "more appropriate" jurisdiction for the non-Californian Plaintiffs is the state where they allege the harm occurred.   The willingness of Freesites to accept jurisdiction in those courts for litigation of any viable claims these Plaintiffs may have defeats the application of "national" jurisdiction.   *See Werner v. Dowlatsingh*, 818 F. App'x 671, 673 (9th Cir. 2020) ("[Defendant] was subject to personal jurisdiction in Florida when he was served there, and thus this requirement for Rule 4(k)(2) personal jurisdiction was unmet.").

Nor can the ex-U.S. Plaintiffs establish jurisdiction pursuant to Rule 4(k)(2) because, even looking at Freesites' actions relating to the United States as a whole, the ex-U.S. Plaintiffs' claims do not "arise[] out of or relate[] to [Freesites'] forum-related activities."   *Hungerstation LLC v. Fast Choice LLC*, 857 F. App'x 349, 350 (9th Cir. 2021).   The ex-U.S. Plaintiffs are all foreign nationals who allege they were trafficked by other foreigners outside of the United States and suffered harm as a result of Freesites' actions in their home country.   None of their allegations establish any harm arising out of Freesites' activities in the United States and, accordingly, the ex-U.S. Plaintiffs may not avail themselves of Rule 4(k)(2).

### D.   The Presence of MindGeek USA Incorporated and MG Global Entertainment Inc. Is Irrelevant.

Plaintiffs allege that the Court has general personal jurisdiction over MindGeek USA and MG Global Entertainment because both have their principal place of business in California.   *See* Compl. ¶¶ 47, 50.   As an initial matter, as set forth *supra*, neither entity is a proper party to this case.   *See supra* Part I.   In addition, MindGeek USA's and MG Global Entertainment's presence in California is irrelevant because their presence alone would not permit the Court to exercise jurisdiction over any foreign MindGeek entity.   "Plaintiffs cannot establish personal jurisdiction by alleging that 'Defendants' or 'Agent Defendants' took actions in or aimed at California because those sorts of **'shotgun' pleadings do not satisfy Plaintiffs' burden** to demonstrate personal jurisdiction **with respect to each defendant**."   *Broidy*

13

*Cap. Mgmt., LLC v. Qatar*, 2018 WL 9943551, at *7 (C.D. Cal. Aug. 22, 2018) (emphasis added). Rather, "[e]ach defendant's contacts with the forum State must be assessed individually." *Id*. (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)). To meet its burden, "a plaintiff must submit evidence supporting personal jurisdiction over **each** defendant, and cannot simply lump them all together." *Id.* at *5 (citation omitted and emphasis added); *see also BMS*, 137 S. Ct. at 1781 ("When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."); *In re Auto. Antitrust Cases I & II*, 135 Cal. App. 4th 100, 118 (2005) ("Jurisdictional facts shown must pertain to each nonresident defendant individually, even in an alleged conspiracy.").

Plaintiffs fail to meet this standard. Instead, Plaintiffs seek to sidestep their jurisdictional burden by alleging that "the MindGeek Defendants are jointly and severally liable in this action as alter egos" in an attempt to impute the contacts of the California Defendants to other Defendants. Compl. ¶ 60. This position is factually and legally incorrect. "To support personal jurisdiction under an alter ego theory," Plaintiffs must demonstrate "(1) 'such unity of interest and ownership' between parent and subsidiary 'that the separate personalities of the two entities no longer exist' and (2) the 'failure to disregard' the separate entities 'would result in fraud or injustice.'" *Iconlab, Inc. v. Bausch Health Cos.*, 828 F. App'x 363, 364 (9th Cir. 2020) (quoting *Ranza v. Nike, Inc*., 793 F.3d 1059, 1073 (9th Cir. 2015)). Plaintiffs must also show a "level of involvement" sufficient to "negate the entities' separate personalities." *Ranza*, 793 F.3d at 1074. This "test envisions pervasive control over the subsidiary," requiring intimate involvement on everything "from broad policy decision to routine matters of day-to-day operation." *Iconlab*, 828 F. App'x at 365 (quoting *Ranza*, 793 F.3d at 1073). "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control," particularly where corporate formalities necessary to maintain corporate separateness are observed. *Ranza*, 793 F.3d at 1073.

There is no intermingling or disregard for corporate formalities here.  Plaintiffs allege that MindGeek entities are "putative shell entities, agents, and alter egos," Compl. ¶ 66, but do not plead facts showing that to be so.  Each named MindGeek entity (that exists) is distinct and separate as understood within the Ninth Circuit. Each has its own funds and accounts.  Andreou Decl. ¶¶ 7, 11, 15, 19, 23.  Each has a board of directors or the foreign equivalent and observes the appropriate corporate formalities.  *Id.*  Involvement is instead limited to the "routine operations between a parent and its subsidiary." *Iconlab*, 828 F. App'x at 365 n.1 (collecting cases).

Plaintiffs have failed to show that the foreign MindGeek entities "dictate[] every facet of [the subsidiaries'] business." *Ranza*, 793 F.3d at 1074.  Neither MindGeek USA nor MG Global Entertainment is properly considered the alter ego of any other party named in this case, and thus general personal jurisdiction may not be extended over any of the foreign MindGeek entities under an alter ego theory.

## III.  The Ex-U.S. Plaintiffs' Claims Should Be Dismissed to the Extent Their Claims Are Impermissibly Extraterritorial.

Fourteen Plaintiffs (Does 2, 6, 8-14, 23-25, 27-28, collectively the "ex-U.S. Plaintiffs") are foreign nationals who do not allege that they resided in or suffered any harm in the United States.[4]  These claims should be dismissed because these foreign nationals cannot sue under U.S. law for harm allegedly sustained in their respective home countries.  The Supreme Court has repeatedly admonished that "United States law governs domestically but does not rule the world," and accordingly courts must apply a "presumption against extraterritoriality." *Microsoft Corp.*, 550 U.S. at 454 (dismissing RICO claims brought by foreign nationals).  "When a statute gives no clear indication of an extraterritorial application, it has none." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010).

---

[4] Doe 27, a citizen of the UK "[a]t all relevant times," Compl. ¶ 38, alleges that in 2003, she was tricked into travelling to Nevada and was later transported to California where she was compelled to engage in sex acts that were filmed by her alleged trafficker. *Id.* ¶¶ 370-71.

1    First, Plaintiffs' RICO claims (Counts VII-IX) require them to "allege and
2    prove a ***domestic*** injury to business or property and do not allow recovery for foreign
3    injuries." *RJR Nabisco, Inc. v. Eur. Cmty.*, 136 S. Ct. 2090, 2111 (2016) (emphasis
4    added); *see also Smagin v. Compagnie Monegasque de Banque*, 2021 WL 2124254,
5    at *3 (C.D. Cal. May 5, 2021) (RICO extraterritoriality inquiry "focus[es]" on
6    "location" of the injury); *Global Master Int'l Grp., Inc. v. Esmond Nat., Inc.*, 2021
7    WL 1324433, at *3 (C.D. Cal. Mar. 9, 2021) (alleged RICO injury "felt" by plaintiff
8    in China was extraterritorial). The ex-U.S. plaintiffs allege various types of emotional
9    harm and related injuries; but do not allege any injury to business or property in the
10   United States and therefore they cannot maintain such a claim. *Nabisco, Inc.*, 136 S.
11   Ct. at 2108; *see also City of Almaty v. Khrapunov*, 956 F.3d 1129, 1132 (9th Cir.
12   2020) ("Plaintiff's alleged injury is merely a consequential effect of its admittedly
13   foreign injury, and not an independent injury cognizable under § 1964(c).").

14   Second, the TVPRA (Counts I-II) provides for extraterritorial jurisdiction over
15   violations of 18 U.S.C. § 1591 in certain instances not present here. *See* 18 U.S.C.
16   § 1596. Under Section 1596, United States courts have extraterritorial jurisdiction
17   over offenses under Section 1591 if, but only if, the alleged offender is a citizen or
18   permanent resident of the United States or is physically present in the United States.
19   That requirement is not satisfied as to the foreign MindGeek entities. The only
20   MindGeek entities present in the United States are MindGeek USA and MG Global
21   Entertainment; thus, they are the only MindGeek entities against whom the ex-U.S.
22   Plaintiffs could theoretically maintain a TVPRA cause of action under Section 1596.
23   But, as set forth above, Plaintiffs have not adequately pleaded that either MindGeek
24   USA or MG Global Entertainment took any action relevant to Plaintiffs' claims.
25   Accordingly, Plaintiffs have not established that any of the ex-U.S. Plaintiffs can
26   maintain a TVPRA claim against any MindGeek entity.

27   Third, the ex-U.S. Plaintiffs cannot bring claims under California law, as they
28   purport to do. Like the U.S. Supreme Court, the "California[] Supreme Court has

made clear that there is a strong presumption against the extra-territorial application of California law." *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1096 (C.D. Cal. 2015). For example, it is settled that "§ 17200, *et seq.*, does not have extraterritorial application." *Loving v. Princess Cruise Lines, Ltd.*, 2009 WL 7236419, at *8 (C.D. Cal. Mar. 5, 2009). Because none of the ex-US Plaintiffs' California state-law claims have extraterritorial application, they too must be dismissed.

## IV. Section 230 Bars All of Plaintiffs' State and Federal Claims against Websites Based on Content Created by Third Parties.

This Court is very familiar with Section 230 as it recently declined to apply it to claims against certain Defendants and their affiliates at the motion to dismiss stage in a related action. *Doe v. MindGeek USA Inc.* (*Doe*), 2021 WL 4167054, at *9 (C.D. Cal. Sept. 3, 2021). They have subsequently filed a Motion for Reconsideration[5] of that decision, pointing out that reconsideration is appropriate because, *inter alia*, three subsequent decisions from courts within the Ninth Circuit—including two that vacated decisions that undergirded *Doe*—found that Section 230 immunity applied to highly analogous claims. *See* Order, *Doe v. Reddit, Inc.*, No. 21-cv-00768 (C.D. Cal. Oct. 7, 2021) (Selna, J.) ECF No. 58 ("*Reddit* slip op.") (Sadun Decl. Ex. C); Rpt. & Rec., *M.L. v. craigslist Inc.*, No. 3:19-cv-06153 (W.D. Wash. Sept. 16, 2021) ECF No. 225 at 12-13 ("*M.L. III*") (Sadun Decl. Ex. D); *J.B. II*, 2021 WL 4079207, at *12. Apart from *Doe*, Defendants are unaware of *any* Court finding that Section 230 categorically did not apply to an ICS under analogous facts. The *Doe* Motion for Reconsideration is fully briefed and under submission. And many of the same principles outlined in that motion warrant dismissal in this case. In the interest of judicial economy, Defendants incorporate the briefs submitted in *Doe* by reference herein and will focus instead on allegation specific to this case. *Doe v. MindGeek*, No. 21-cv-00338 ECF Nos. 45, 53, 73.

---

[5] *Doe v. MindGeek USA, Inc.*, No. 21-cv-00338 (Sept. 27, 2021) ECF No. 73.

## A.    Plaintiffs Seek to Treat Defendants as the Publishers or Speakers of Third-Party Content.

Although it is difficult to parse through Plaintiffs' overwhelming (and largely irrelevant) rhetoric, the gravamen of all Plaintiffs' claims is that they were harmed because images of them were "uploaded and distributed" on MindGeek's websites. *See, e.g.*, Compl. ¶ 488.  That is, MindGeek wrongfully allowed third-party users to post and view that content and did not adequately filter out such content.  *E.g.*, *id.* ¶¶ 83-86, 128, 262-63.  This satisfies the second element of Section 230 immunity— seeking to treat the defendant as a publisher.  As the Ninth Circuit has explained, "publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content," regardless of how the Plaintiff styles the cause of action.  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-03 (9th Cir. 2009).  Here, no matter how styled, Plaintiffs' claims are all based on allegations about Defendants' decisions "whether to publish or to withdraw from publication third-party content."  *Id.* at 1102.

## B.    The Offending Content Was Created by Third Parties.

Although many of the allegations are deliberately vague, the Plaintiff-specific portion of the Complaint demonstrates that all of the content depicting Plaintiffs was created by persons—often sex offenders—with no connection to MindGeek.  Some, like Does 31-33, were surreptitiously recorded by a spouse or boyfriend.  *E.g.*, Compl. ¶¶ 292, 388.  Some, like Fleites, allege they made the videos themselves either consensually or under coercion from a partner or blackmailer.  *E.g.*, *id.* ¶¶ 262, 273, 276-77, 309, 317.  Others, such as Does 14, 15, and 17, were victims of horrible assaults that their attackers filmed.  *E.g.*, *id.* ¶¶ 323, 329-30, 339-40.  And others, including Does 1, 8, 9, 20, 21, and 26 were victims of sex traffickers and pimps, including Jeffrey Epstein.  *E.g.*, *id.* ¶¶ 270, 301, 306, 351, 353, 367.  In most instances, the perpetrators are known, and in many cases have been arrested, charged, or convicted for their crimes.  *E.g.*, *id.* ¶¶ 304, 309, 322, 324, 360, 364, 372, 391.  But

18

what they all have in common is that no Plaintiff alleges that any Defendant played a role in the recording of any of Plaintiffs' images.

Recognizing this problem, the Complaint devotes pages to irrelevant allegations about *other* videos, claiming, without evidence or attribution, that "vast amounts of the content on these sites although appearing to be uploaded by individuals independent of MindGeek were produced, acquired, and uploaded by MindGeek." Compl. ¶ 132. The Complaint further alleges that actual user-generated content "was edited and published by MindGeek" and that Defendants' formatters "would provide or modify titles, descriptions, and tags, and edit videos in order to maximize SEO, ad impressions, and customer conversions." *Id.* ¶ 134. Plaintiffs claim these actions rendered all videos on Freesites' video-hosting sites a "MindGeek production and product" that "were user generated in a fictional sense only." *Id.* ¶ 138. But Plaintiffs cannot avoid the fact that the images or videos that are the subject of their claims were created by themselves or third parties—not MindGeek.

Plaintiffs' allegations about MindGeek having been too permissive about allowing uploads and having formatted and edited content does not make MindGeek the creator of the content. MindGeek's purported "failure to edit or block user-generated content is the very activity Congress sought to immunize." *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 2021 WL 930623, at *12 (N.D. Cal. Mar. 11, 2021) (citation and quotation marks omitted). The "proliferation and dissemination of content does not equal creation or development of content." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270-71 (9th Cir. 2016). This is especially true where, as here, the offending content violates the ICS's policies.[6] *See Gonzalez v. Google LLC*, 2 F.4th

---

[6] Those who wish to upload content agree to be bound by Pornhub.com's Terms of Service. *See supra* n. 2 and accompanying text. Under those Terms, uploaders "agree not to use the Website[] to," among other things, "post any Content that depicts any person under 18 years of age," "violate any law," "post any Content for which [they] have not maintained written documentation sufficient to confirm that all subjects of

**MOTION TO DISMISS**

871, 893 n.8 (9th Cir. 2021); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1121
(9th Cir. 2003).

As this Court has correctly observed, Section 230 does not apply where the ICS
"contributes materially to the alleged illegality of the conduct." *Doe*, 2021 WL
4167054, at *8 (emphasis omitted) (citing *Fair Housing Council v. Roommates.com*,
521 F.3d 1157, 1168 (9th Cir. 2008)).  But this exception is narrow, and applies only
where the ICS compels (or at least explicitly directs) users to post illegal content;
allegations that the ICS "promoted," "encouraged," or "tacitly assented to [] the
illegality of third parties" are insufficient.  *Roommates*, 521 F.3d at 1174.  Thus, the
*Roommates* court found that the defendant website was not immune from liability for
discriminatory user-generated housing ads where it had ***required*** users to list illegal
preferences as to sexual orientation, family status, race, and other unlawful criteria
before they could post advertisements for housing.  *Id.* at 1166.  But the same website
retained immunity for generically asking users to provide "Additional Comments"
without telling them "what kind of information they should or must include" even
though users also used those features to illegally discriminate.  *Id.* at 1174.

In addition, an ICS retains immunity under Section 230 unless it makes a
"material contribution" to the "***creation or development***" of the content itself.
*Gonzalez*, 2 F.4th at 892 (citation omitted) (emphasis added).  "A 'material
contribution' does not refer to 'merely ... augmenting the content generally, but to
materially contributing ***to its alleged unlawfulness.***'"  *Id.* (emphasis in original)
(quoting *Roommates*, 521 F.3d at 1167-68).  "This test draws the line at the crucial
distinction between, on the one hand, taking actions to display actionable content and,
on the other hand, responsibility for what makes the displayed content [itself] illegal
or actionable.'"  *Id.* (internal quotation marks and citation omitted).

---

[their] posts are, in fact, over 18 years of age," or "post any Content depicting child
pornography, rape, snuff, torture, death, violence, or incest, racial slurs or hate
speech."  Sadun Decl. Ex. A.

Under this framework, allegations that Defendants formatted, organized, or edited the videos in question does not make them content creators. Nor are they content creators based on allegations they allowed users to search using objectionable terms or used algorithms that surfaced (featured or augmented) content based on the frequency of its being the subject of searches. The neutral tools and "formatting" provided by Defendants did not compel the websites' users to post illegal content. Nor do Plaintiffs allege Defendants did anything to the images of them to make the content more unlawful or unlawful in a different way. All the videos at issue are unlawful because they either contain CSAM, were created without consent, or both.

Defendants acknowledge that the Court previously found that a different plaintiff had plausibly alleged that Defendants "materially contributed to the creation of [CSAM] on its platforms" by pleading that various features of Pornhub encouraged users to post CSAM and declined to dismiss the plaintiff's claims on Section 230 grounds. *Doe*, 2021 WL 4167054 at *9. As noted in MindGeek's Motion for Reconsideration in that case, the decision on which the Court principally relied, *M.L. v. Craigslist Inc.* (*M.L. I*), 2020 WL 6434845 (W.D. Wash. Apr. 17), *adopted* (*M.L. II*), 2020 WL 5494903 (W.D. Wash. Sept. 11, 2020), was recently revisited by that court in light of *Gonzalez*. The magistrate judge who issued the *M.L. I* opinion rescinded the prior ruling and issued a new Report and Recommendation, which now concludes that the majority of the claims against craigslist are barred by Section 230 because the plaintiff's allegations that defendant craigslist encouraged and knowingly profited from trafficking content "fail[ed] to allege that craigslist materially contributed to the creation of the illegal content." *See M.L. III* at 12-13. Another court within this district also recently addressed similar claims against an ICS and found that Section 230 barred all of the plaintiffs' claims. *Reddit* slip op. The recent *M.L. III* and *Reddit* decisions are in accord with other rulings within the Ninth Circuit finding that the type of content management tools and formatting functions Plaintiffs contend make Defendants responsible for third-party content do not abrogate Section

**MOTION TO DISMISS**

230 immunity.  *See J.B. v. G6 Hosp., LLC* (*J.B. I*), 2020 WL 4901196 (N.D. Cal. Aug. 20, 2020); *Doe v. Twitter, Inc.*, 2021 WL 3675207, at *25 (N.D. Cal. Aug. 19, 2021) (dismissing non-TVPRA claims with prejudice based upon Section 230 immunity).

Consistent with *Gonzalez*, the *Reddit*, *J.B.* and *M.L.* courts each found that while the ICS provided tools that *could* be used unlawfully, nothing about the websites in question *required* users to act unlawfully in order to use the website.  This is so even where "a particular tool facilitate[s] the expression of" the offending content and the ICS "*knows* that third parties are using such tools" to create or share illegal content.  *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1197-98 (N.D. Cal. 2009) (internal quotation marks and citation omitted) (emphasis in original). Accordingly, each of these courts found that Section 230 immunity applied.  The same result is warranted here because none of Plaintiffs' allegations show that MindGeek materially contributed to any of the contents' illegality.   Indeed, courts have consistently found that the kinds of allegations Plaintiffs make about how MindGeek organizes, displays, screens, or profits from illegal content do not abrogate Section 230 immunity.  *See Gonzalez*, 2 F.4th at 893-94 (algorithmic content suggestion and search technology); *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (content suggestion algorithms and anonymity); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014) (inadequate moderation); *Riggs v. MySpace, Inc.*, 444 F. Appx. 986, 987 (9th Cir. 2011) (same); *Roommates*, 521 F.3d at 1174 n.37 (search technology); *Goddard*, 2008 WL 5245490, at *3 (advertising revenue); *Doe v. Bates*, 2006 WL 3813758, at *4 (E.D. Tex. Dec. 27, 2006) (same).

## V.    The FOSTA Exemption Does Not Apply Because Plaintiffs Fail to Allege Defendants Violated the TVPRA under Any Standard.

Plaintiffs have brought TVPRA claims under 18 U.S.C. §§ 1591, 1594(c), and 1595.  All of these claims, other than those which allege that Defendants themselves violated Section 1591, are barred by Section 230 immunity and Plaintiffs have not pleaded a plausible violation of Section 1591.  But even if Section 230 did not apply

or the Court interpreted FOSTA differently, Plaintiffs' TVPRA claims would still fail as a matter of law under Section 1595.

### A.    FOSTA Applies Only If Defendants' Conduct Amounts to a Violation of 18 U.S.C. § 1591.

In 2018, Congress enacted the Allow States to Fight Online Sex Trafficking Act ("FOSTA"), which created a narrow exemption from Section 230 immunity for claims "brought under section 1595 of title 18, if the conduct underlying the claim constitutes a violation of section 1591." 47 U.S.C. § 230(e)(5)(A).   Defendants recognize that the Court has previously interpreted this provision to mean that plaintiffs need only allege an ICS violated Section 1595. *Doe*, 2021 WL 4167054, at *4.   However, Defendants respectfully submit that the Court should reevaluate this issue in light of recent case law (including authority relied upon by the Court).

At the time of the *Doe* opinion, courts had split on how to interpret FOSTA. Two courts had held that the phrase "the conduct underlying the claim" refers to the defendant's own conduct; *i.e.*, to invoke FOSTA a plaintiff must allege the defendant itself violated Section 1591. *Doe v. Kik Interactive*, 482 F. Supp. 3d 1242, 1251 (S.D. Fla. 2020); *M.L. II*, 2020 WL 5494903, at *4.   Two other courts held that that FOSTA carves out all Section 1595 claims against ICSs if the claim is based on sex trafficking. *Twitter*, 2021 WL 3675207, at *25; *J.B. I*, 2020 WL 4901196, at * 8. In that context, this Court previously agreed with the latter position, explicitly citing *Twitter* and *J.B. I*. *Doe*, 2021 WL 4167054, at *4.

Since *Doe*, however, the case law has decisively shifted and should be reevaluated.   Most significantly, the *J.B.* court reconsidered this very question and concluded—based on a close reading of FOSTA and its legislative history—that "the most persuasive reading of section 230(e)(5)(A) is that it provides an exemption from immunity for a section 1595 claim if, but only if, ***the defendant's conduct*** amounts to a violation of section 1591." *J.B. II*, 2021 WL 4079207, at *12 (emphasis added). Another court in this District agreed with *J.B. II* and dismissed claims very similar to

those in this suit on that basis. *Reddit* slip op at 11. Thus, apart from *Doe*, four courts have now held that the FOSTA exception applies if, but only if, the defendant's conduct amounts to a violation of section 1591 (*Kik Interactive*, *M.L. II*, *J.B. II*, and *Reddit*) and only one (*Twitter*) has concluded that it did not.

The *J.B.* court's revised analysis is well reasoned and reflects the view of the clear majority of courts to address this issue. Requiring Plaintiffs to plead Defendants violated § 1591 (the anti-trafficking statute's criminal provision) in order to sustain a claim under § 1595 (its civil provision) fits within FOSTA's structure and history. First, the phrase "the conduct underlying the claim" most naturally refers to the defendant's own conduct; if it meant to refer to the conduct of third parties, Congress would have said "the claim arises out of" or "the plaintiff is a victim of" a violation of Section 1591, with the latter phrase appearing in Section 1595. *J.B. II*, 2021 WL 4079207, at *6; *see also Kik Interactive,* 482 F. Supp. 3d at 1249.

Second, Congress used almost identical language in subsections (B) and (C) of FOSTA, which clearly refer to the defendant's own conduct. *See J.B. II*, 2021 WL 4079207, at *6. "That Congress included nearly identical language in the same subsection, at the same time, strongly suggests that it intended to give the 'conduct underlying' phrases the same meaning" in all three subsections. *Id.*

Third, FOSTA's legislative history shows that it was not meant to carve out all civil TVPRA claims from Section 230 immunity. Most significantly, draft language that would have extended FOSTA to all TVPRA claims was originally included in, but ultimately deleted from, the final bill. *See* S. 1693, 115th Cong. § 3 (as introduced in the Senate, Aug. 1, 2017); H.R. 1865, 115th Cong. § 3(a)(5)(B) (as introduced in the House, Apr. 3, 2017). "Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded." *I.N.S. v. Cardozo-Fonseca*, 480 U.S. 421, 442-43 (1987) (citation omitted). This deletion, coupled with other statements in the legislative history, shows that Congress "reached a compromise by including a

narrowed federal civil sex trafficking carve-out that requires plaintiffs to show the civil defendant's knowing assistance, support or facilitation." *J.B. II*, 2021 WL 4079207, at \*8, 11.  Judge Selna's recent order in *Reddit* dismissing analogous claims against another website where users have posted CSAM compared the reasoning in *Twitter* and *J.B. II* and found the latter more persuasive, concluding:

> It is more logical to read the statute as requiring the conduct underlying the claim against the defendant to be the same as the claim in the civil action brought under section 1595. The legislative history comports with the Court's reading of the plain text. [Citing *J.B. II*].  Plaintiffs argue for a broad reading of § 230(e)(5) in light of the remedial nature of the law. That is not enough, however, to overcome the plain language of the statute, especially given that section 230 as a whole is designed to provide immunity to interactive computer service providers. [Citing *Roommates*].  In interpreting the statute in that manner, the Court will apply the "knowingly" standard from section 1591 instead of the more lenient mens rea standard under section 1595 of "known or should have known."

*Reddit* slip op. at 11-12 (citations omitted).  Thus, Plaintiffs must show that Defendants violated § 1591 to qualify for the FOSTA exemption.

## B.    Plaintiffs Do Not Plausibly Allege Defendants Violated Section 1591, as Required by FOSTA.

Plaintiffs have not pleaded facts establishing that they were harmed by a violation of Section 1591 by Defendants.  Indeed, most do not plausibly allege they were victims of a violation of Section 1591 by anyone.  Section 1591 punishes (1) primary violators who directly engage in sex trafficking; and (2) secondary participants who "knowingly ... benefit[], financially or by receiving anything of value, from participation in a venture" with a primary violator.  18 U.S.C. § 1591(a). A primary violation consists of (1) "recruit[ing], entic[ing], harbor[ing], transport[ing], provid[ing], obtain[ing], advertis[ing], maintain[ing], patroniz[ing], or solicit[ing] by any means a person," (2) while actually knowing or recklessly disregarding the fact that (3) "force, threats of force, fraud, [or] coercion … will be

used to cause the person to engage in a commercial sex act" or "that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." *Id.*  To make out a secondary liability claim, Plaintiffs must plead all four of the following elements.  First, there must be a "venture" that commits a primary act of commercial sex trafficking. 18 U.S.C. § 1591(a)(1), (e)(3).  Second, Defendants must knowingly participate in that trafficking, *id.* (a)(2), (e)(4), which requires Plaintiffs to allege Defendants committed "some 'overt act' that furthers the sex trafficking aspect of the venture." *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir 2016).  Third, Defendants must knowingly benefit from participation in the sex trafficking venture. 18 U.S.C. § 1591(a)(2).  Finally, Defendants must have actual knowledge or a reckless disregard that each Plaintiff was underage or coerced and will be caused to engage in the specific commercial sex trafficking. 18 U.S.C. § 1591(a)(2); *Kik Interactive*, 482 F. Supp. 3d at 1251.

### 1. Several Plaintiffs Fail to Allege Commercial Sex Trafficking.

FOSTA applies only to claims of commercial sex trafficking.  Not all sex acts involving minors or force are "trafficking," as Congress has defined it.  A person is guilty of commercial sex trafficking only if he "knowingly ... recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits" a person to engage in a "commercial sex act" and the person is either a minor or the act is obtained through force, fraud, or coercion.  18 U.S.C. § 1591(a).  Most Plaintiffs' allegations do not fit this definition, either because they do not allege the sex acts were commercial or because they do not allege they were "trafficked."

Twenty-one Plaintiffs—Does 2-7, 14, 15, 17-22, 25, & 28-33—do not allege that any of the sex acts involving them were **commercial**.  A commercial sex act is one "on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3).  The Ninth Circuit has interpreted this to mean "money is exchanged for sex acts." *United States v. Clark*, 435 F.3d 1100, 1115 (9th Cir. 2006). It is not enough that someone profit indirectly from a sex act; there must be a causal

*quid pro quo* between the sex act and an exchange of value. *Corradino v. Liquidnet Holdings Inc.*, 2021 WL 2853362, at *3 (S.D.N.Y. July 8, 2021); *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013).[7]  The production of pornography—legal or not—for private use is not a commercial sex act.  *See United States v. Durham*, 902 F.3d 1180, 1195 (10th Cir. 2018).  As Does 2-7, 14, 15, 17-22, 25, & 28-33 have not pleaded that anything of value was exchanged for these Plaintiffs' sex acts, those acts are not "commercial."

Plaintiffs also need to plead facts showing they were victims of "trafficking." That term has a specific statutory definition; a sexual assault, without more, is not "trafficking."  Most Plaintiffs—Does 3-7, 14, 15, 17-19, 22, 28, 31-33—have not alleged that anyone unlawfully solicited, recruited, enticed or otherwise trafficked them, as required by Section 1591(a).  For example, Doe 31's video depicted (presumably consensual) sex with her then-husband.  Compl. ¶ 388.  In addition, Plaintiffs who were not minors must allege commercial sex procured through force, fraud, or coercion. 18 U.S.C. § 1591(a).  Many fail to do so.  For example, Doe 22's videos depicted her masturbating and "in a sexual act with a partner," with no allegation of force, fraud or coercion.  Compl. ¶ 356.  Other Plaintiffs (*e.g.*, Fleites and Does 16, 25, 29, 30) make only vague, conclusory, allegations that they were "trafficked," "manipulated," or "coerced."  *E.g.*, *id.* ¶¶ 262, 335, 364, 380, 385.  Such allegations are insufficient as a matter of law.  *See Twombly*, 550 U.S. at 557.

That the videos were eventually monetized on Pornhub does not allow Plaintiffs to sidestep these defects.  Posting and disseminating content is not a "sex act."  The Ninth Circuit has held that the term "sex act" in Section 1591 should be given its ordinary and natural dictionary meaning, something like "an act performed

---

[7] A *quid pro quo* is required to make the sex act commercial. This is distinct from the issue of whether the defendant's benefit must flow directly from participation in the venture addressed by cases like *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169-70 (S.D.N.Y. 2019), and *H.H. v. G6 Hospitality, LLC*.  2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019).

with another for sexual gratification." *United States v. Bazar*, 747 F. App'x 454, 456 (9th Cir. 2018). Posting content to the internet does not meet this definition.[8] Further, Section 1591 requires the defendant to possess the requisite knowledge *at the time of enticement*. *E.g.*, *United States v. Todd*, 627 F.3d 329, 333-38 (9th Cir. 2010). Thus subsequent distribution of videos cannot retroactively render a sex act "commercial" or "trafficking." Because these Plaintiffs were not parties to commercial sex trafficking as defined by statute, they fail to plead a TVPRA claim.

### 2. Plaintiffs Do Not Allege Defendants Directly Trafficked Them.

Count I alleges that Defendants directly "recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and/or solicited Plaintiffs" in violation of 18 U.S.C. § 1591(a)(1). Compl. ¶ 486. Apart from this "threadbare recital[]" of the statute, *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009), no Plaintiff alleges that MindGeek had anything to do with her alleged trafficking. At most, Plaintiffs allege that MindGeek hosted videos of sex acts that had already occurred. No Plaintiff alleges direct contact between herself and MindGeek other than certain Plaintiffs' alleged after-the-fact communications regarding takedown requests. Indeed, many of the alleged incidents took place before MindGeek was under its current ownership. *Compare* Compl. ¶¶ 116-17 *with, e.g.*, *id.* ¶¶ 271-72, 339, 345, 348, 351, 370, 380, 385.[9]

Instead, Plaintiffs allege interactions between MindGeek and *content* depicting Plaintiffs. For example, Plaintiffs allege that MindGeek "trafficked" them by

---

[8] *Twitter*'s holding to the contrary—cited in *Doe*—was based on the defendant's "conce[ssion] at oral argument that the tweeting and retweeting of child pornography is a 'commercial sex act' under the TVPRA." 2021 WL 3675207, at *27. Defendants made and make no similar concession here.

[9] The (completely false) allegations that Defendants "produce[d] CSAM and nonconsensual sexual content through MindGeek owned production companies," Compl. ¶ 486(b), are irrelevant because they do not allege Defendants produced the specific content depicting Plaintiffs. *See infra* Part V.B.3.

**MOTION TO DISMISS**

"recruiting, commissioning, paying for, buying, and aggressively soliciting **content**" produced through third-party trafficking.  Compl. ¶ 486(a) (emphasis added); *see also id.* ¶ 486(f), (g). This ignores the statute.  Even the *Twitter* court, which permitted a TVPRA beneficiary claim, dismissed the claim identical to Plaintiffs' that the ICS had directly trafficked the plaintiffs by soliciting and posting content, observing Section 1591(a)(1) refers to the soliciting of "a person," not a video or an image.  2021 WL 3675207, at *20.  Where, as here, plaintiffs fail to allege they were directly solicited for sex by the ICS, they "do not state a claim for direct sex trafficking under Section 1591(a)(1)." *Id.*

### 3. Plaintiffs Do Not Allege Defendants Participated in Ventures That Trafficked Them.

Under a secondary liability theory, each Plaintiff must allege that Defendants participated in a trafficking venture affecting her.   18 U.S.C. § 1591(a)(2). "[P]articipation in a venture" is defined as "knowingly assisting, supporting, or facilitating" sex trafficking. *Id.* § 1591(e)(4).  The statute does not extend to everyone who benefits from trafficking, but only to persons who benefitted through "some 'overt act' that furthers the sex trafficking aspect of the venture." *Afyare*, 632 F. App'x at 286. *Kik Interactive* applied this standard to TVPRA claims against an ICS, holding that "Congress only intended to create a narrow exception" to Section 230 "where it was plausible for a plaintiff to allege actual knowledge and **overt participation**" in her trafficking.  482 F. Supp. 3d at 1250-51 (emphasis added). Under this standard, a purported after-the-fact association with sex traffickers does not support liability under section 1591.

No Plaintiff has pleaded facts showing Defendants "knowingly assist[ed], support[ed], or facilitate[ed] a [primary] violation" that affected her individually, 18 U.S.C. § 1591(e)(4), or "actually participate[d] and commit[ted] some 'overt act' that furthers the sex trafficking aspect of the venture." *Afyare*, 632 F. App'x at 286.

Instead, Plaintiffs allege only that Defendants allowed content to be posted,

made it easier to find, and failed to remove it. Such "negative acquiescence" does not, as a matter of law, constitute a violation of Section 1591. *Id.* "[T]he [law] does not impose an affirmative duty to police and prevent sex trafficking." *A.B. v. Wyndham Hotels & Resorts, Inc.*, 2021 WL 1235241, at *7 (D. Or. Mar. 31, 2021). Judge Selna in *Reddit* found similar allegations that the ICS had "affiliate[ed] with sex traffickers by enabling the posting of child pornography on its websites" and "making it easier to connect traffickers with those who want to view child pornography," legally insufficient to allege "participation." *Reddit* slip op. at 13. To treat a website as a participant in everything any third-party uses the site for would be contrary to the statute, congressional intent, and common sense. *See Id.*

Plaintiffs' general allegations also do not demonstrate that Defendants "participate[d] in a venture engaged in sex trafficking." Compl. ¶ 494. The only allegations that conceivably have anything to do with Plaintiffs involve allowing advertising on the websites operated by Freesites, *id.* ¶ 494(d), (e), distributing content, *id.* (f), (k), (o), (r), and editing or organizing content, *id.* (g), (h)-(*l*), (p). As discussed above, the mere provision of content-neutral website features cannot be considered "participation" in users' illegal conduct.

Plaintiffs attempt to avoid the fact that they have not pleaded Defendants knowingly participated in sex trafficking ventures involving them by claiming that Defendants participated in other, completely unrelated, trafficking. *E.g.*, Compl. ¶ 494(a)-(c), (m), (n). But the TVPRA requires each Plaintiff to plead Defendants knowingly participated in a "sex trafficking venture involving ***her***." *Kik Interactive*, 482 F. Supp. 3d at 1251; *see also J.B. I*, 2020 WL 4901196, at *9, 10. It is clear that these other incidents had nothing to do with Plaintiffs. For example, Plaintiffs focus on events that supposedly took place in Eastern Europe, Compl. ¶¶ 181-84, but not a single Plaintiff is from Eastern Europe. Simply put, no Plaintiff alleges that Defendants participated in any trafficking involving her.

1    **4.    Plaintiffs Fail to Allege Defendants Actually Knew of or**
2    **Recklessly Disregarded Their Alleged Trafficking.**

3    Under Section 1591, the defendant must actually know of or recklessly

4    disregard the specific "sex trafficking at issue." *See Doe*, 2021 WL 4167054, at *4;

5    *cf. B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *6 (N.D. Cal. July

6    30, 2020).  Importantly, the defendant must have this knowledge at the time of the

7    trafficking.  The statute requires the offender to know the minor or coerced person

8    "***will be***," in the future "caused to engage in a commercial sex act."  18 U.S.C.

9    § 1591(a)(2) (emphasis added); *see also, e.g.*, *United States v. Wearing*, 865 F.3d 553,

10   556 (7th Cir. 2017); *Todd*, 627 F.3d at 333-34.  There are simply no facts in the

11   Complaint to support an inference that MindGeek knew about Plaintiffs' alleged

12   trafficking at the time it occurred.  Many of the videos were not posted to the internet

13   until years after they were allegedly made; indeed, some were made before Pornhub

14   even existed.  *E.g.*, Compl. ¶¶ 271-72, 339, 345, 348, 351, 370.

15   Even Plaintiffs' incorrect theory that Defendants participated in alleged

16   trafficking by allowing third parties to post videos on their platform is unsupported

17   by the allegations because Plaintiffs do not allege, in even a conclusory way, that

18   Defendants knew the videos involving ***them*** were illegal when they were posted.

19   Instead, Plaintiffs allege that MindGeek are generally aware users post illegal content

20   on their websites.  Compl. ¶ 496.  But these allegations do not relate to Plaintiffs'

21   videos specifically, and awareness that "other sex trafficking incidents occurred on

22   [the platform]" is insufficient. *Kik Interactive*, 482 F. Supp. 3d at 1251.

23   Nor do Plaintiffs allege that MindGeek recklessly disregarded any signs those

24   videos depicted trafficking.  Plaintiffs allege that "MindGeek purported to have

25   moderators review every video prior to uploading it to its website," Compl. ¶ 496(a),

26   but do not allege how MindGeek knew or should have known from moderating the

27   content that it contained CSAM or non-consensual sex acts.  Tellingly, Plaintiffs

28   describe in detail how unrelated videos—involving different victims and

31                                          CASE NO. 2:21-cv-04920

perpetrators—bore "compelling indicia … that they were not consensual," had user comments flagging them as illegal, or portrayed victims who visibly appeared underage either from their appearance, dress, or mannerisms.  *Id.* ¶¶ 222-39, 442.  Yet Plaintiffs describe no such indicia in their own videos.[10]  Moreover, the Complaint concedes that some content that appears non-consensual is often in fact consensual, and in a "large percentage" of cases there is "***no way of knowing***" whether the content is non-consensual.  *Id.* ¶ 224 (emphasis added); *see also id.* ¶ 255.

In sum, just as Plaintiffs fail to plead the other elements of Section 1591, they also fail to plead Defendants had any knowledge of their alleged trafficking, let alone before it occurred.[11]  Accordingly, Section 230 bars Plaintiffs' TVPRA claims.

### C.   Plaintiffs Also Fail to Plead a Section 1595 Claim.

As set forth above, the FOSTA exception to Section 230 immunity only applies when a defendant itself has violated 18 U.S.C. § 1591.  However, even if the Court found, as it did in *Doe*, that Plaintiffs need only allege a violation of Section 1595, Plaintiffs have failed to plead even that under any standard.  As *Doe* recognized, the elements of Section 1591 and 1595 largely overlap, the principal difference being that a Section 1595 claim can be based on constructive—rather than actual—knowledge of the specific trafficking at issue.  *See* 2021 WL 4167054, at *4. In addition, some courts have held that "participation in a venture" has different meanings in Sections 1591 and 1595.  *Id.* at *5.  But regardless of which of those standards is used, Plaintiffs have not pleaded that Defendants participated in a venture under either standard.

First, as explained above (Part V.B.4), Plaintiffs do not allege any indicia that would have put Defendants on notice that the videos of them were illegal.

---

[10] Indeed, one of the only videos alleged to have such indicia—the video of an "unconscious" Doe 14—was removed "[w]ithin three days."  Compl. ¶¶ 323, 325.

[11] Plaintiffs' claims under 18 U.S.C. § 1594(c) are entirely derivative of their Section 1591 claims and accordingly fail along with them.  And in any event, as set forth *infra* (Part VII), Plaintiffs have failed to allege the existence of any conspiracy. Accordingly, Plaintiffs' Count IV must also be dismissed.

Second, as courts have repeatedly recognized, Section 1595 requires the same kind of overt participation in trafficking as Section 1591. *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018); *Geiss*, 383 F. Supp. 3d at 169. Sections 1591 and 1595 both use the identical phrase "participation in a venture," and the statutory definition of participation as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)" was added to Section 1591 by FOSTA itself, implying that it was meant to apply to civil TVPRA claims. Pub. L. No. 115-164, § 5, 132 Stat. 1253 (2018). As explained above, (Part V.B.3), Plaintiffs fail to allege Defendants actively participated in sex trafficking involving them.

Even under the alternative standard this Court applied in *Doe*, Plaintiffs "must allege at least a showing of a continuous business relationship between the trafficker and Defendants" sufficient to show they had a "tacit agreement" in support of Plaintiffs' trafficking. 2021 WL 4167054, at *5 (quotation marks and citation omitted); *accord J.B. I*, 2020 WL 4901196, at *9, 10. Plaintiffs do not do so. The only connection they allege between Defendants and Plaintiffs' alleged traffickers is that those traffickers posted illegal content to Pornhub. This is insufficient to state a tacit agreement as a matter of law. *Id.* at *9; *accord Reddit* slip op. at 13.

Plaintiffs' theory of liability is the same as the theory rejected in *J.B.* and *Reddit*: the sole relationship between Defendants and the perpetrators who posted Plaintiffs' videos is that the perpetrators used features of Defendants' content distribution platform available to the public at large. As Plaintiffs admit, on Pornhub "any user could upload content without a formal relationship with MindGeek." Compl. ¶ 86; *see also id.* ¶¶ 494(q) (alleging that "anyone" could upload content); 642(bb) (same). This does not plead the requisite participation because, as in *J.B.*, Defendants "cannot be deemed to have participated in all ventures arising out of each post on [the websites]." *J.B. I*, 2020 WL 4901196, at *10. Thus, Plaintiffs have failed to allege Defendants participated in a venture with their alleged traffickers under any standard. For that reason, and those stated above, Counts I and II should be dismissed.

## VI.    Plaintiffs' RICO Claims Should be Dismissed.

Plaintiffs allege in Counts VII, VIII, and IX that Defendants violated 18 U.S.C. §1962(a), (c), and (d).[12]  These claims fail as a matter of law because Plaintiffs have not adequately alleged (i) a RICO enterprise, (ii) an investment injury and other elements of a claim under section 1962(a), (iii) RICO injuries to business or property, as required for standing, (iv) cognizable predicate acts, or (v) a RICO conspiracy. Accordingly, Plaintiffs' RICO claims should be dismissed as a matter of law.  *See Hall v. Fiat Chrysler Am. US LLC*, 2021 WL 3560231, at *3 (C.D. Cal. July 20, 2021) ("Courts [should] strive to flush out frivolous RICO allegations at an early stage of the litigation.") (internal quotation marks and citation omitted).

### A.    Plaintiffs Have Not Adequately Alleged a RICO Enterprise.

Plaintiffs attempt but fail to plead an association-in-fact enterprise as defined in 18 U.S.C. § 1961(4).  Compl. ¶ 536/6.  As discussed in subpoint 1 *infra*, an associated-in-fact enterprise requires that Plaintiffs allege, *inter alia*, "relationships among those associated with the enterprise," *Staff Holdings, Inc. v. Raygoza*, 2017 WL 7410981, at *3 (C.D. Cal. Sept. 27, 2017) (citation omitted), and that the members "function as a continuing unit" and be "associated together for a common purpose." *United States v. Turkette*, 452 U.S. 576, 583 (1981).  However, Plaintiffs have entirely failed to meet their burden of alleging how each of the purported members of the enterprise "associated together for a common purpose," "what exactly each individual did, when they did it, [and] how they functioned together as a continuing unit." *Doan v. Singh*, 617 F. App'x 684, 686 (9th Cir. 2015); *see also In re Jamster Mktg. Litig.*,

---

[12] Section 1962(a) prohibits a person from using racketeering proceeds in acquisition of an interest in, or the establishment or operation of, an enterprise. 18 U.S.C. § 1962(a). Section 1962(c) prohibits a person from conducting or participating in the conduct of an enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c). Section 1962(d) prohibits a conspiracy to violate subsections (a)-(c). Plaintiffs' RICO conspiracy claim also fails for lack of an enterprise and other elements of their claims under section 1962(a) and (c). *See infra* Part VI.E.

2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) (RICO claim failed for lack of "specific allegations in support of the common purpose").

In addition, Plaintiffs fail to meet their burden of alleging an associated-in-fact enterprise that is "distinct" from the RICO persons and entities named as Defendants. Plaintiffs attempt to overcome this fatal defect by including Visa and other third parties as Defendants and enterprise members, but fail to support their inclusion in the purported enterprise and thus do not satisfy distinctiveness.

### 1.    Plaintiffs Do Not Adequately Allege Purported Enterprise Members Shared a "Common Purpose."

The Complaint alleges a vast, amorphous associated-in-fact enterprise that includes all the Defendants as well as unidentified other persons or entities.  Plaintiffs do not specify how any Defendant acted to further the interests or purposes of the purported enterprise, as opposed to their own activities and interests, or in the case of officers or employees of MindGeek entities, activities and interests of their own or of those entities.   Most of Plaintiffs' enterprise allegations attribute conduct and "purposes" to the "Enterprise" generally, *see, e.g., id.* ¶¶ 543-45, 555, 558, to MindGeek, *id.* ¶¶ 548, 554, 560, 561, to "Enterprise members, including MindGeek," *id.* ¶ 550, or to "Enterprise members," *id.* ¶¶ 553, 555, 559, or some combination thereof.  *Id.* ¶¶ 556, 559.  These allegations do not satisfy *Doan*.

In particular, Plaintiffs have failed to plead the required "common purpose."  A common purpose "is a purpose that ***all*** members of the [associated in fact] enterprise must have."  *Chagby v. Target Corp.*, 2008 WL 5686105, at *3 (C.D. Cal. Oct. 27, 2008) (emphasis added), *aff'd*, 358 F. App'x 805 (9th Cir. 2009). The common purpose must be "independent" from an enterprise member's "ordinary business activities," and the relationship between members must be more than a routine commercial relationship with a supplier or service provider.  *See Hall*, 2021 WL 3560231, at *3; *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019); *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1056-57 (C.D. Cal. 2016).

Plaintiffs' allegations here do not meet these requirements.  Plaintiffs allege that "the purpose of the Enterprise [is] to (a) solicit, entice, and recruit users to upload to MindGeek's tubesites videos and photographs of sexually explicit conduct, including of children and adults engaging in non-consensual sex acts and non-consensual posting of sex acts, (b) knowingly benefit from thousands of such videos and photographs posted to MindGeek's tubesites, (c) knowingly possess and distribute child pornography, and (d) misrepresent and fraudulently deceive its customers that MindGeek sold videos of consensual sex when the Enterprise members knew that videos of rape, child pornography, and sex trafficking were prevalent on its tubesites."  Compl. ¶ 573.  Plaintiffs also identify the "purpose" of the Enterprise as being "to deceive the public, government, and its users that MindGeek was the world's leading technology companies [sic] providing cutting edge SEO and online and marketing data services." *Id.* ¶ 551.[13]  Tellingly, Plaintiffs do not even assert that these purposes are "common" to all purported members of the associated-in-fact enterprise, referring to these purposes as "the purpose of the Enterprise," not as the "common purpose" of the alleged enterprise members, *id.* ¶¶ 551, 573, thus underscoring the lack of specific allegations as to "how" each purported member associated together for the alleged purposes and what each individual member did in service of the enterprise, as required by *Doan.*  617 F. App'x at 686.

The Complaint provides virtually no specific factual allegations showing what role each MindGeek entity played in the purported Enterprise.  Rather, Plaintiffs lump

---

[13] A common purpose need not be a fraudulent or criminal purpose. *See Ellis v. J.P. Morgan Chase & Co.*, 2015 WL 78190, at *4-6 (N.D. Cal. Jan. 6, 2015), *aff'd*, 752 F. App'x 380 (9th Cir. 2018). However, where, as here, Plaintiffs have alleged a common purpose that is fraudulent or criminal, their allegations must support that criminal common purpose. *Id.* at *4.  Moreover, an allegation that a purported enterprise member's ordinary business activities were carried out in a criminal or fraudulent manner does not negate the rule that ordinary business relations do not create an enterprise. *See In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 599-600 (N.D. Cal. 2020) (citing cases).

the MindGeek entities and individuals together, referring collectively to all the different MindGeek entities and the MindGeek Company Defendants as "MindGeek" or "the MindGeek Defendants." *See* Compl. ¶¶ 59-60.

The allegations also fail to specify how each individual Defendant associated together for the alleged common purposes. No allegations support the claim that the purported common purposes were shared by Defendant Bergmair, who is inconsistently described as the majority owner of MindGeek who "exercised direct daily oversight and control over strategic operations of MindGeek," *id.* ¶¶ 52, 121, and as acting "on behalf of the new owners," *i.e.*, the unnamed investor Defendants. *Id.* ¶ 119.[14] Although Plaintiffs' allegations connect Mr. Bergmair to the running of certain aspects of MindGeek's business, they do not link him to the purported Enterprise or provide any specific facts whatsoever indicating that he associated with other alleged enterprise members for the purposes identified in the Complaint.

Likewise, Plaintiff's allegations regarding Defendant Antoon focus on his role as MindGeek's CEO and as "leader" of the "Bro-Club" (a group of MindGeek executives, Compl. ¶ 94), and his and the so-called Bro-Club's "daily operational control" over MindGeek. *See, e.g., id.* ¶¶ 3, 53, 119. The Complaint also alleges that Mr. Antoon and other unidentified "Enterprise members" used "shell" companies to "sign exclusive deals with unknown porn performers and then use [his] control over MindGeek to promote those performers and increase the value of their content." *Id.* ¶ 154. But, despite scattered references to the Enterprise, ***none*** of these allegations or the other allegations regarding the Bro-Club has any specific connection to the purported Enterprise, its alleged purposes, or to Plaintiffs' own claims. *See e.g., id.* ¶¶ 155-160. The allegations regarding David Tassillo and Corey Urman similarly lack a connection to the alleged Enterprise and its affairs.

Plaintiffs' allegations regarding alleged enterprise participant Visa, Inc.

---

[14] In addition, Mr. Antoon is alleged to be "the co-owner of MindGeek," Compl. ¶ 53, and among a "core group" of MindGeek's "top executives." *Id.* ¶ 100.

37

amount to no more than that Visa did business with MindGeek.  Plaintiffs allege that Visa "recognized MindGeek as an authorized merchant," "processed payments" to MindGeek's websites and "provid[ed] merchant services to MindGeek," "facilitated credit card and financial transactions," "receiv[ed] transactions fees paid by MindGeek when users used Visa credit cards" to pay MindGeek.  Compl. ¶¶ 58, 407, 408, 424, 432, 537, 571.  These allegations show only that Visa provided business services to MindGeek—the same services Visa and other companies routinely provide.  As this Court has stated, "[c]ourts have overwhelmingly rejected attempts to characterize routine commercial relationships—in which the parties transact to provide services—as RICO enterprises." *Hall*, 2021 WL 3560231, at *3 (citations omitted).  Nor can Plaintiffs connect Visa to the purported enterprise by alleging that Visa "was uniquely suited to stop this exploitation," but "did not insist that the content itself be removed."  Compl. ¶¶ 9, 406.  Such allegations do not support a common purpose or including Visa as a defendant.  *See In re JUUL*, 497 F. Supp. 3d at 594 (under RICO, "'[s]imply performing services,'" or "failing to stop illegal activity, is not sufficient" (quoting *Walter v. Drayson*, 538 F.3d 1244, 1248 (9th Cir. 2008)).

The Complaint also lists unidentified investors in MindGeek as defendants and enterprise members, claiming that the investors "financed, directed, participated in, and otherwise facilitated the MindGeek enterprises' illegal activities set forth herein." Compl. ¶¶ 56-57.  The Complaint gives no specific facts linking these unidentified investors to the alleged larger Enterprise, but merely alleges conclusorily that these investors were "[a]lso in control" of MindGeek.  *Id.* ¶ 109.

Because Plaintiffs have failed to meet their burden to plead a common purpose, their RICO claims should be dismissed as a matter of law.

## 2.    Plaintiffs Have Not Plausibly Pled a Distinct RICO Enterprise

To establish liability under section 1962(c), an enterprise must be distinct from the RICO person or persons that a plaintiff seeks to hold liable under that subsection. *C & M Cafe v. Kinetic Farm, Inc.*, 2016 WL 6822071, at *3 (N.D. Cal. Nov. 18,

2016).  Thus, a plaintiff "must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)).  This requirement is not satisfied by allegations of an "enterprise that consists of itself plus all or some of its officers or employees" or a "parent corporation and its subsidiaries," particularly where (as here) they are alleged to "act[] within the scope of a single corporate structure."  *Yagman v. Kelly*, 2018 WL 2138461, at *15 (C.D. Cal. Mar. 20, 2018); *see also* Compl. ¶ 59.

Plaintiffs seek to create distinctness by including Defendants Bergmair, Visa and others as purported enterprise members.  However, courts reject attempts to create distinctiveness through unsupported allegations that third parties are part of the enterprise.  Where, as here, a plaintiff has not provided plausible allegations for including in the alleged associated-in-fact enterprise persons or entities that are necessary to satisfy distinctness, the court should disregard those entities or persons in ruling on distinctness.  *See In re JUUL*, 497 F. Supp. 3d at 601-03.  In *JUUL*, the court agreed that "the existence of a properly pleaded enterprise depend[ed] on" two third-parties, Veratad and Altria, which were unrelated to JLI, "being part of it."  *Id.* Because "[t]here [was] too little to plausibly allege that Veratad and Altria specifically joined that distinct Enterprise, as opposed to going into business with JLI to support the general business of JLI for their mutual benefit," the plaintiffs "ha[d] not plausibly alleged the existence of a distinct Enterprise."  *See id.* at 603.

Here, as shown above, Plaintiffs have not alleged facts rendering it plausible that Mr. Bergmair, Visa, unidentified investors, and various other non-MindGeek persons referenced in the Complaint associated together with MindGeek corporate entities, employees, and officers for any alleged common purpose.  Without those non-MindGeek persons and entities, all that remains is an enterprise composed solely of MindGeek entities, their employees and executives.  Such an enterprise does not constitute an associated-in-fact enterprise as a matter of law.

### B.    Plaintiffs Have Not Alleged a Violation of § 1962(a).

Plaintiffs fail to allege conduct and an injury that could support their 1962(a) claim (Count VIII).  First, Plaintiffs do not provide factual allegations showing that Defendants "use[d] or invest[ed]" income "derived from racketeering activity" "directly or indirectly, in the acquisition of any interest in, or the establishment or operation of," the alleged "Enterprise," 18 U.S.C. § 1962(a).  *See* Compl. ¶ 575. Indeed, Plaintiffs have not sufficiently alleged that the Enterprise exists and is an associated-in-fact enterprise.  *See supra* Part VII.A.  Nor do Plaintiffs support their conclusory assertion that racketeering income was used in "MindGeek" itself. Compl. ¶ 575.  Rather, the Complaint suggests that funds were siphoned away from MindGeek.  *See id.* ¶¶ 575-76.

Moreover, Plaintiffs allege no "facts tending to show that … [they were] injured by the use of racketeering income" and that such injury is "separate and distinct from the injuries incurred from the predicate act[s] itself," as required for a § 1962(a) claim.  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008).  Plaintiffs allege identical injuries to those they allege were caused by Defendants' alleged predicate acts—not "separate and distinct" injuries. *See* Compl. ¶¶ 567, 579.  Plaintiffs' allegation of proximate cause—that Defendants used racketeering income to "fund the expanded attack on Plaintiffs as alleged in this complaint," Compl. ¶ 575—is also deficient as a matter of law.  *See Sybersound*, 517 F.3d at 1149 ("[r]einvestment of proceeds from alleged racketeering activity back into the enterprise to continue its racketeering activity is insufficient to show proximate cause").  Thus, Plaintiffs' § 1962(a) claim must be dismissed.

### C.    Plaintiffs Have Not Alleged the Required Injury to Business or Property.

"A civil RICO 'plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.'"  *Canyon Cnty. v. Syngeta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008).

A RICO injury to property requires a "concrete financial loss." *Id.* As shown below, none of the 34 Plaintiffs have adequately alleged a cognizable RICO injury. Fourteen Plaintiffs allege extraterritorial injuries, which are not cognizable under civil RICO. The remaining 20 Plaintiffs have alleged only personal injuries and/or speculative injuries that do not constitute a concrete financial harm.[15]

### 1.  Extraterritorial Injuries.

The Complaint identifies 14 Plaintiffs as citizens of foreign countries "at all relevant times" and makes clear that their injuries occurred and were felt in their countries of residence. Because these Plaintiffs have failed to allege facts supporting an injury in the United States, their claims should be dismissed as a matter of law. *See supra* Part III.

### 2.  Other Alleged Injuries.

The Complaint's RICO counts conclusorily allege that "Plaintiffs' damages include, but are not limited to, costs incurred to remove non-consensual, sexually explicit videos and photographs of themselves from MindGeek's websites, including attorney's fees, consulting fees, and copyright fees: termination of employment and other lost income; deprivation of employment opportunities, and loss of their image." Compl. ¶¶ 567, 579, 589. As shown below, none of these alleged damages constitutes a RICO injury to business or property, especially when considered in light of the Complaint's Plaintiff-specific allegations.

**Emotional Distress**. Emotional distress and consequential damages are personal injuries, not injuries to business or property. *See Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990) (emotional distress and accompanying "pecuniary losses" are not compensable under RICO). Here, the majority of the remaining 20 Plaintiffs allege only emotional harm or emotional harm followed by medical

---

[15] An appendix showing Plaintiffs' alleged injuries is attached. Sadun Decl. Ex. E.

**MOTION TO DISMISS**

treatment or therapy.[16]  These Plaintiffs' RICO claims fail as a matter of law for lack of injury to business or property.

**Harm to Reputation/Misuse of Image.**  "'Damage to reputation is considered personal injury and thus is not an injury to "business or property" within the meaning of 18 U.S.C. § 1964(c).'"  *C & M Cafe*, 2016 WL 6822071, at *8 (citation omitted).  To the extent that Plaintiffs allege injury in the form of harm to reputation (or may assert that a claim for such injury is implicit in their allegations), such injury cannot support their RICO claims.[17]  Likewise, consequential expenses related to reputational damage (*e.g.*, expenses of having videos removed from the internet, legal expenses, copyright fees, etc.) are also personal expenses that are not compensable under RICO. *See Thomas v. Baca*, 308 F. App'x 87, 88 (9th Cir. 2009) (declining to recognize "the incurment of legal fees as an injury cognizable under RICO").

Claims for misuse of a photo or other image are also claims for personal injuries caused by "invasion" of "interests in the dignity and integrity of [the plaintiffs'] reputation, their emotional well-being, and their privacy."  *Amy v. Curtis*, 2020 WL 5365979, at *5 (N.D. Cal. Sept. 8, 2020).  Moreover, Plaintiffs' allegations that their damages include "loss of their image" and that "[t]he Enterprise's misappropriation and misuse of Plaintiffs' images damaged the commercial value of Plaintiffs' image" appear only in summary paragraphs in Plaintiff's RICO counts.  *See* Compl. ¶¶ 567, 579, 589.  Such damages are not supported by the Complaint's allegations describing the individual Plaintiffs.[18]  In the absence of any Plaintiff-specific factual detail, any

---

[16] *See* Compl. ¶ 269 (Fleites); ¶ 275 (Doe 1); ¶ 287 (Doe 3); ¶ 291 (Doe 4); ¶ 294 (Doe 5); ¶ 300 (Doe 7); ¶ 332 (Doe 15); ¶ 338 (Doe 16); ¶ 344 (Doe 17); ¶ 347 (Doe 18); ¶ 350 (Doe 19); ¶ 352 (Doe 20); ¶ 355 (Doe 21); ¶ 357 (Doe 22); ¶ 369 (Doe 26); ¶ 384 (Doe 29); ¶ 387 (Doe 30); ¶ 399 (Doe 32); ¶ 404 (Doe 33).

[17] *See, e.g.*, Compl. ¶ 269 (Fleites); ¶ 332 (Doe 15); ¶¶ 336-37 (Doe 16); ¶ 347 (Doe 18); ¶ 357 (Doe 22); ¶ 394 (Doe 31).

[18] *See, e.g.*, Compl. ¶ 268-69 (Fleites); ¶ 287 (Doe 3); ¶ 290 (Doe 4); ¶ 293 (Doe 5); ¶ 322 (Doe 15); ¶ 336 (Doe 16); ¶ 341 (Doe 17); ¶ 345 (Doe 18); ¶ 357 (Doe 22); ¶ 394 (Doe 31).

**MOTION TO DISMISS**

such purported injuries are impermissibly speculative. *See Thomas*, 308 F. App'x at 88 (for RICO standing, "[t]he injury to business or property must be a 'concrete financial loss, and not mere injury to a valuable intangible property interest.'"); *see also Ainsworth v. Owenby*, 326 F. Supp. 3d 1111, 1124-25 (D. Or. 2018) (plaintiff must allege "specific prior attempts to monetize a property interest" or a plausible "present intent or desire to do so" (citing *Oscar v. Univ. Students Co-op Ass'n*, 965 F.2d 783, 787 (9th Cir. 1992)). Thus, even if Plaintiffs' claimed "loss of their image" and damage to its "commercial value" could be deemed an injury to property, that loss as alleged does not support a RICO claim here.

**Employment Injuries.** Plaintiffs are required to "allege a concrete injury." *Savoy v. Collectors Universe, Inc.*, 2020 WL 4938464, at *4 (C.D. Cal. July 21, 2020). Whether a claimed employment injury constitutes a RICO injury to property varies from state to state and is a matter of the law of the plaintiff's state of residence. *See Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc). *Diaz* holds that California law recognizes a property interest in lost employment and employment opportunities, where the harms alleged "amount to intentional interference with contract and interference with prospective business relations." *Id.* Most states, including Oklahoma, do not. *See*, *e.g., Ross v. Peters*, 846 P.2d 1107, 1118 (Okla. 1993); *Blanton v. Hous. Auth.*, 794 P.2d 412, 417 (Okla. 1990); *Collins v. City of Pine Lawn*, 2016 WL 3220074, at *2-3 (E.D. Mo. June 10, 2016). Thus, the alleged employment injuries and related consequential injuries of Doe 31, *see* Compl. ¶ 392, are personal injuries as a matter of the law of Oklahoma, where she resides, *id.* ¶ 42, and not cognizable RICO injuries.

Other Plaintiffs' allegations regarding difficulties with employment are limited to claims that they quit their jobs, resorted to online work, have been unable to work or seek employment because of their emotional distress, or are anxious about their future careers. *See* Compl. ¶ 284 (Doe 2); ¶ 291 (Doe 4); ¶ 296 (Doe 6); ¶ 347 (Doe 18). Others have quit school or college or transferred to different schools. *See, e.g.,*

**MOTION TO DISMISS**

Compl. ¶¶ 275, 287, 311, 316.  Such allegations are either too vague or simply show further sequelae to Plaintiffs' emotional distress.  They do not show a cognizable employment-related injury even under the parameters set by *Diaz* (*i.e.*, intentional interference), or a "concrete," non-speculative financial injury to a property interest. *See Smith v. Puckett*, 2020 WL 2857373, at *3 (W.D. Wash. May 6, 2020) (rejecting RICO claim for pain and suffering caused by "hostile work environment" and resulting "loss of wages"; *Diaz* "'d[id] not create RICO liability for every loss of wages resulting from a personal injury'"), *rpt. adopted*, 2020 WL 2850567 (W.D. Wash. 2020).

**Plaintiffs' Alleged Copyright Injuries.**  As shown below, Plaintiffs' allegations of predicate acts of criminal copyright infringement are without merit as a matter of law. *See* Part VI.D *infra*.  Even if that were not so, to the extent that any Plaintiffs allege injury in the form of alleged infringement of copyright by the use of their images, their injuries are too speculative to support the "concrete financial injury" required for a RICO claim. *See Crayton v. Hedgpeth*, 2011 WL 1988450, at *14 (E.D. Cal. May 20, 2011) (claim of "los[s of] expected earnings … [from] copyright pending unpublished book" did not meet requirement of "concrete financial loss").

Because Plaintiffs have failed to allege injury to business or property, their RICO claims should be dismissed for lack of RICO standing.

**D.    Plaintiffs Fail to Allege Predicate Acts Connected to Their Injuries.**

Plaintiffs have also failed to allege RICO predicate acts necessary to support a pattern of racketeering and to show that each Plaintiff sustained injuries proximately caused by a predicate act. *See Canyon Cnty.*, 519 F.3d at 972.

**Section 1591**.  As shown above, Plaintiffs have not alleged facts supporting predicate acts under § 1591.

**Mail and Wire Fraud**.  Plaintiffs fail to allege wire or mail fraud.  Sections 1341 and 1343 prohibit the use of the mails and wire to deprive someone of money

or property through deceit. *Monterey Plaza Hotel Ltd. P'ship v. Local 483*, 215 F.3d 923, 926 (9th Cir. 2000). Mail and wire fraud must be pleaded with particularity, identifying specific uses of mail or wires with specific intent to further a fraudulent scheme. *Schreiber Distrib. Co.*, 806 F.2d at 1400-01.

Plaintiffs vaguely allege that MindGeek engaged in a scheme "to deceive the public, government, and [their] users" into believing MindGeek's tubesites are "legitimate." Compl. ¶ 551. Plaintiffs do not allege that the purported "scheme" was a "scheme to defraud" Plaintiffs of money or property or had any connection to their alleged injuries. *Cf. Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010) ("HVB's fraudulent activity towards the United States did not cause Rezner's injury."). Nor do Plaintiffs allege that anyone relied on the allegedly "deceptive" conduct. *See In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 915 (C.D. Cal. 2012).

Additionally, Plaintiffs allege MindGeek used the mails and wires to pay and communicate with sex traffickers, upload CSAM, and "push this content to all of its partner sites," Compl. ¶¶ 552-55, but do not plead these activities with particularity. They do not allege who paid whom or who uploaded which videos when. *See JST Dist., LLC v. CNV.com, Inc.*, 2018 WL 6113092, at *6 (C.D. Cal. Mar. 7, 2018). Nor do they "inform each defendant separately of the allegations surrounding [its] alleged participation in the fraud." *Sugarman v. Muddy Waters Cap. LLC*, 2020 WL 633596, at *4 (N.D. Cal. Feb. 3, 2020) (citation omitted).

Although Plaintiffs also identify a number of private wire communications between MindGeek customer service and individual Plaintiffs relating to takedown requests, Compl. ¶ 556, they do not explain how MindGeek's responses to Plaintiffs' requests furthered the alleged scheme to appear "legitimate." *See In re Managed Care Litig.*, 2009 WL 812257, at *8 (S.D. Fla. Mar. 26, 2009) (a plaintiff must "particularly describe the scheme and how the communications, although facially innocent, furthered that scheme."); *cf. United States v. Giraldi*, 864 F.2d 222, 226 (5th Cir.

1  1988) (wires must be closely related to and actually further the scheme).  Thus,

2  Plaintiffs have not alleged mail or wire fraud at all, let alone with particularity.

3      **Money Laundering**.  Plaintiffs also allege money laundering in violation of

4  18 U.S.C. § 1956, which prohibits knowingly conducting a financial transaction

5  involving "the proceeds of specified unlawful activity" with the intent "to promote

6  the carrying on of specified unlawful activity" or to evade taxes.  Plaintiffs claim that

7  Defendants transferred the proceeds of alleged predicate acts to other corporate

8  entities to avoid taxes and to third parties "to receive, format, and upload sex

9  trafficking content."  Compl. ¶¶ 559-60.  These allegations do not amount to money

10  laundering.

11      Plaintiffs do not allege that MindGeek owes taxes that they did not pay, or

12  identify any transaction made with the intent to evade taxes.  *See United States v.*

13  *Christy*, 916 F.3d 814, 849 (10th Cir. 2019) ("[T]ax evasion must be *a **purpose*** of the

14  financial transaction." (emphasis in original)).  Plaintiffs also have not identified any

15  of the purported third-party transactions, let alone "who conducted the transfer, how

16  the money was moved, or how it was used in connection with" these unidentified

17  third-party activities.  *Tymoshenko v. Firtash*, 57 F. Supp. 3d 311, 323 (S.D.N.Y.

18  2014); *accord Stewart v. Wachowski*, 2004 WL 2980783, at *4 (C.D. Cal. Sept. 28.

19  2004) (money laundering based on fraud must be pleaded with particularity).

20      Moreover, Plaintiffs "nowhere allege[] that they were injured in any way by

21  the alleged acts of money laundering."  *Hourani v. Mirtchev*, 796 F.3d 1, 11 (D.C.

22  Cir. 2015); *see also Empire Merchants, LLC v. Reliable Churchill LLP*, 902 F.3d 132,

23  143-44 (2d Cir. 2018).  Plaintiffs do not allege that the purported payments to

24  unidentified third parties had any connection to *them* or *their* videos, or that *they* were

25  injured by Defendants' purported unpaid taxes.  *See, e.g.*, *Chi Pham v. Cap. Holdings,*

26  *Inc.*, 2011 WL 3490297, at *4 (S.D. Cal. Aug. 9, 2011).

27      **Copyright**.  Plaintiffs fail to allege a predicate act of criminal copyright

28  infringement.  Plaintiffs must allege "1) which specific original works are the subject

of the copyright claim, 2) that [they] own[] copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the defendant infringed the copyright." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y.1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994); *see also Universal Surface Tech., Inc. v. Sae-A Trading Am. Corp.*, 2011 WL 281020, at *6 (C.D. Cal. Jan. 26, 2011). Here, Plaintiffs provide only vague assertions that Defendants uploaded copyrighted materials and infringed copyrights. Compl. ¶¶ 133, 215-16, 539. With one possible exception,[19] Plaintiffs fail to identify any copyrighted work that was infringed by Defendants, a copyright owner whose rights allegedly were infringed, or a copyrightable expression in content copied or uploaded by Defendants and have thus failed to plausibly allege a violation of copyright law. *Twombly*, 550 U.S. at 567.

In addition, courts in this District hold that only counterfeiting and piracy constitute the predicate act of criminal infringement under 18 U.S.C. § 2319, *e.g.*, *Stewart*, 2005 WL 6184235, at *5, not "garden-variety" infringement. *Hunter v. Tarantino*, 2010 WL 11579019, at *9-10 (C.D. Cal. July 15, 2010). Plaintiffs allege piracy of "copyrighted materials" based on the insufficient allegation that "whistleblowers reported [MindGeek] personnel … 'ripping' content from DVDs" and "uploading that content to Pornhub and the other tubesites." Compl. ¶ 133. But Plaintiffs do not allege the DVDs were protected by copyright law, or that Defendants lacked a license or other authorization and had a specific intent to violate a copyright. *See United States v. Liu*, 731 F.3d 982, 989-91 (9th Cir. 2013).

**Section 2252.** 18 U.S.C. § 2252(a)(2) criminalizes the knowing receipt or distribution of CSAM and, accordingly, is only available as a predicate act for the

---

[19] The closest Plaintiffs come to alleging that a Plaintiffs here owned any copyrights that Defendants infringed is pleading that Doe 17 obtained a copyright for one video after it had already been uploaded. Compl. ¶ 342. When she "notified Pornhub and … demanded the video be removed," "Pornhub complied." *Id.* These allegations do not support a claim for willful infringement, let alone piracy.

minor Plaintiffs (Fleites, Does 1-13).  Of those Plaintiffs only four, Does, 2, 6, 10, and 11 make any allegation that MindGeek was aware of the underage videos of them on their websites.  Although the remaining Plaintiffs include conclusory allegations that simply repeat the statutory language requiring a knowing violation, Compl. ¶¶ 527-532, they do not provide nonconclusory factual allegations supporting a claim that Defendants *knowingly* received or distributed any child pornography depicting them as is required by the statute.  *See, e.g.*, *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994) (holding that defendant must actually know performer was underage at the time of receipt or distribution).  Plaintiffs' allegations that "MindGeek knew or should have known," *e.g.*, Compl. ¶¶ 496, 539, 546, are insufficient.

### E.    Plaintiffs Fail to Allege a RICO Conspiracy.

Because Plaintiffs have "failed to state a claim under 18 U.S.C. § 1962(a)-(c), [their] conspiracy claim under § 1962(d) also necessarily fails."  *Banks v. ACS Educ.*, 638 F. App'x 587, 589-90 (9th Cir. 2016); *accord I.T.C. Int'l, LLC v. Am. Voyage Corp.*, 2008 WL 11342745, at *3 (C.D. Cal. Sept. 26, 2008); *Ellis*, 2015 WL 78190, at *6 (dismissing 1962(d) claim for failure to allege "requisite substantive elements" of claim).  The Ninth Circuit has affirmed dismissal of a RICO conspiracy claim where (as here) the plaintiff had not sufficiently alleged a RICO enterprise, *Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); the investment injury required for a § 1962(a) claim, *Henriks v. Moritz*, 304 F. App'x 491, 493 (9th Cir. 2008); and predicate acts and a pattern of racketeering activity, *Turner v. Cook*, 362 F.3d 1219, 1231 n. 17 (9th Cir. 2004).  To support a RICO conspiracy claim, Plaintiffs must also allege that each Defendant entered "an agreement that is a substantive violation of RICO" or "agreed to commit, or participated in, a violation of two predicate offenses" and was "aware of the essential nature and scope of the enterprise and intended to participate in it" *Howard*, 208 F. 3d at 751.

Plaintiffs' failure here to allege intent and agreement and the requisite substantive elements of their claims under § 1962(a) and (c) requires dismissal of their

1  RICO conspiracy claim under § 1962(d).

2  **VII.  Plaintiffs' California Civil Conspiracy Claims Should be Dismissed.**

3       To state a claim for civil conspiracy under California law, Plaintiffs "must

4  allege the formation and operation of the conspiracy, the wrongful act or acts done

5  pursuant to it, and the damage resulting from such acts. . . . [B]are legal conclusions,

6  inferences, generalities, presumptions, and conclusions are insufficient." *State ex rel.*

7  *Metz v. CCC Info. Servs., Inc.*, 149 Cal. App. 4th 402, 419 (Cal. Ct. App. 2007)

8  (citations omitted); *accord Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 831 (N.D.

9  Cal. 2018).   To plead formation, Plaintiffs "must allege with sufficient factual

10  particularity that defendants reached some explicit or tacit understanding or

11  agreement." *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 836 (N.D. Cal.

12  2014) (citation omitted).  Additionally, a conspiracy claim necessarily fails where the

13  plaintiff does not adequately allege an underlying tort.  *See Martinez v. United States*,

14  812 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010); *see also Sanford v. MemberWorks, Inc.*,

15  625 F.3d 550, 559 (9th Cir. 2010).

16       Because Plaintiffs' underlying claims fail, their conspiracy claims fail as well.

17  Moreover, Plaintiffs plead conspiracy only in the most conclusory terms.  "There are

18  no allegations concerning when or where such a conspiracy was conceived," or facts

19  from which an agreement could be inferred.  *Murphy v. Am. Gen. Life Ins. Co.*, 74 F.

20  Supp. 3d 1267, 1288 (C.D. Cal. 2015).  Nor do they identify each Defendant's role in

21  the alleged conspiracy.  Accordingly, their conspiracy claims must be dismissed.

22  **VIII.  Defendants Reserve Their Rights as to Plaintiffs' Remaining Claims.**

23       Plaintiffs bring several additional claims[20] that necessitate individualized

24  inquiry into the circumstances of each Plaintiffs' alleged trafficking.  Plaintiffs'

25  improper joinder has made it impossible to include all applicable arguments in this

26  _____

27  [20] Counts V and VI (18 U.S.C. §§ 2252 and 2252A), Counts X, XI, XII, XIII and XIV
   (privacy-based torts), Count XV (Cal. Civ. Code § 1708.85), Count XVI (negligence),

28  Count XVII (unjust enrichment), and Count XVIII (Cal. Civ. Code § 17200 *et seq.*).

49                                    CASE NO. 2:21-cv-04920

motion. The claims implicate not only federal laws but the laws of numerous other states and countries. Plaintiffs do not address these issues at all, instead foisting it on the Court to sort through all of this. But the Court is under no obligation to evaluate the multiple claims of the 34 misjoined Plaintiffs in order to determine something as basic as what law applies. That analysis itself depends on facts unique to each Plaintiff, such as their states of injury and residence. *See Ashworth v. Team Indus. Servs., Inc.*, 2016 WL 9412450, at *5 (C.D. Cal., Sept. 2, 2016) (Carney, J.) (conducting government interest test). The law varies considerably between the many states and countries where Plaintiffs reside or the alleged conduct occurred, and the law applicable to a particular Plaintiff's claims may vary from claim to claim. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 6327490, at *5 (N.D. Cal. Dec. 3, 2013) ("Where a party raises choice of law issues with regard to more than one cause of action, a separate conflict of laws inquiry must be made with respect to each issue in the case.") (citation and internal quotation marks omitted).

Testing the merits of these claims thus would require analyzing the law of numerous jurisdictions and would involve lengthy individualized assessments of the allegations of each of the 34 Plaintiffs. Accordingly, Defendants incorporate by reference the arguments for dismissing Plaintiffs' claims under California law, to the extent applicable to them, that are set forth in the motion to dismiss filed on behalf of Defendant Tassillo. ECF No. 67. Defendants also reserve the right to challenge these claims at a later date on an appropriate motion.

## CONCLUSION

The Court should grant this motion and dismiss the Complaint with prejudice. Where claims "are barred as a matter of law by [Section 230] … allowing for their amendment would be futile" and dismissal with prejudice is the appropriate remedy. *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1067 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017).

1 | DATED: October 20, 2021        Respectfully submitted,

2

3                                              ____/s/___ _Benjamin M. Sadun_____

4                                              BENJAMIN M. SADUN (287533)
                                               benjamin.sadun@dechert.com
5                                              DECHERT LLP
                                               US Bank Tower, 633 West 5th Street,
6                                              Suite 4900
                                               Los Angeles, CA 90071-2013
7                                              Phone: (213) 808-5721; Fax: (213) 808-5760
8

9                                              KATHLEEN N. MASSEY (*admitted pro hac vice*)
10                                             Kathleen.massey@dechert.com
                                               MARK S. CHEFFO (*pro hac vice*
11                                             *forthcoming*)
                                               mark.cheffo@dechert.com
12                                             DECHERT LLP
                                               Three Bryant Park
13                                             1095 Avenue of the Americas
14                                             New York, NY 10036
                                               Phone: (212) 698-3500; Fax: (212) 698 3599
15                                             *Attorneys for Defendants*
16

17

18

19

20

21

22

23

24

25

26

27

28