BENJAMIN SADUN (287533)
benjamin.sadun@dechert.com
DECHERT LLP
US Bank Tower, 633 West 5th Street,
Suite 4900
Los Angeles, CA 90071-2013
Phone: (213) 808-5721; Fax: (213) 808-5760

KATHLEEN N. MASSEY (*admitted pro hac vice*)
kathleen.massey@dechert.com
MARK S. CHEFFO (*pro hac vice forthcoming*)
mark.cheffo@dechert.com
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500; Fax: (212) 698 3599

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENA FLEITES and JANE DOE NOS. 1 through 33,<br><br>            Plaintiffs,<br><br>      v.<br><br>MINDGEEK S.A.R.L.; MG FREESITES, LTD; MINDGEEK USA INCORPORATED; MG PREMIUM LTD.; RK HOLDINGS USA INC.; MG GLOBAL ENTERTAINMENT INC.; TRAFFICJUNKY INC.; BERND BERGMAIR; FERAS ANTOON; DAVID TASSILLO; COREY URMAN; VISA INC.; COLBECK CAPITAL DOES 1-10; BERGMAIR DOES 1-10,<br><br>            Defendants. | CASE NO. 2:21-CV-4920<br><br>Judicial Officer:  Cormac J. Carney<br>Courtroom:      9B<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY MINDGEEK TO SEVER AND DISMISS JANE DOE NOS. 1 THROUGH 33**<br><br>Hearing:    January 24, 2022<br>Time:      1:30 p.m.<br>Courtroom:  9B |

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................ 1

II.   LEGAL STANDARD ............................................................................ 3

III.  ARGUMENT ...................................................................................... 4

    A.   Plaintiffs Do Not Meet Rule 20(a)'s Requirements for
    Permissive Joinder. .................................................................. 4

        1.   Plaintiffs' claims do not arise out of the same transaction
        or occurrence ............................................................... 4

        2.   There are no material questions of fact or law common to
        all of the Plaintiffs to support joinder. ......................... 8

    B.   The Complaint as Currently Configured Will Inextricably Lead
    to Inconvenience, Delay, and Added Expense. ................................. 13

IV.   CONCLUSION ................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado v. City of Los Angeles*,
    720 F. App'x 889 (9th Cir. 2018) ................................................................. 8

*Ashworth v. Team Indus. Servs., Inc.*,
    2016 WL 9412450 (C.D. Cal., Sept. 2, 2016) .............................................. 9

*Bess v. Cate*,
    2008 WL 4754860 (E.D. Cal. Oct. 27, 2008) .............................................. 8

*Blackman v. Teespring, Inc.*,
    2019 WL 7832600 (N.D. Cal. July 12, 2019) ............................... 2, 7, 8, 13

*Burgess v. Busby*,
    544 S.E.2d 4 (N.C. Ct. App. 2001) ............................................................ 10

*Cain v. Hearst Corp.*,
    878 S.W.2d 577 (Tex. 1994) ...................................................................... 10

*Clift v. Narragansett Tele. L.P.*,
    688 A.2d 805 (R.I. 1996) ........................................................................... 10

*Coleman v. Quaker Oats Co.*,
    232 F.3d 1271 (9th Cir. 2000) ................................................... 2, 4, 13, 14

*Corley v. Google, Inc.*,
    316 F.R.D. 277 (N.D. Cal. 2016) ................................................... 3, 4, 15

*Coughlin v. Rogers*,
    130 F.3d 1348 (9th Cir. 1997) ............................................................ *passim*

*Denver Publ'g Co. v. Bueno*,
    54 P.3d 893 (Colo. 2002) ........................................................................... 10

*Effler v. Pyles*,
    380 S.E.2d 149 (N.C. Ct. App. 1989) ........................................................ 11

*Gonzalez v. City of Maywood*,
    2008 WL 11336944 (C.D. Cal. Jan. 29, 2008) ................................... 3, 8, 15

ii                                    CASE NO. 2:21-cv-4920

**MOTION TO SEVER**

*Harvell v. Goodyear Tire & Rubber Co.*,
  164 P.3d 1028 (Ok. 2006) ................................................................. 11

*Howell v. N.Y. Post Co.*,
  612 N.E.2d 699 (N.Y.), *aff'd in part*, 619 N.E.2d 650 (N.Y. 1993) ................. 10

*In re Bridgestone/Firestone, Inc.*,
  288 F.3d 1012 (7th Cir. 2002) ........................................................ 9, 10

*Jews for Jesus, Inc. v. Rapp*,
  997 So. 2d 1098 (Fla. 2008) ............................................................ 10

*Lee v. City of Beaumont*,
  12 F.3d 933 (9th Cir. 1993), *overruled on other grounds by Calif.
  Dep't of Water Resources v. Powerex Corp.*, 533 F.3d 1087 (9th
  Cir. 2008) ................................................................................. 3

*Mandarin Trading Ltd. v. Wildenstein*,
  944 N.E.2d 1104 (N.Y. 2011) ........................................................... 11

*Martinez v. Adams*,
  2010 WL 892186 (E.D. Cal. Mar. 9, 2010) .......................................... 14

*Martinez v. Encore Credit Corp.*,
  2009 WL 3233531 (C.D. Cal. Sept. 30, 2009) ........................................ 8

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ........................................................... 11

*Microsoft Corp. v. AT&T Corp.*,
  550 U.S. 437 (2007) ....................................................................... 11

*Nelson-Devlin v. Eli Lilly & Co.*
  2015 WL 5436700 (E.D. Cal. Sept. 15, 2015) ................................. 3, 8, 13

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda
  Pharms. Co.*,
  943 F.3d 1243 (9th Cir. 2019), *cert. denied*, 141 S. Ct. 86 (2020) ................. 12

*Partipilo v. Hallman*,
  510 N.E.2d 8 (Ill. App. Ct. 1987) .................................................... 11

*Renwick v. News & Observer Publ'g Co.*,
  312 S.E.2d 405 (N.C. 1984) ............................................................ 10

*Rubio v. Monsanto Co.*
   181 F. Supp. 3d 746 (C.D. Cal. 2016) ................................................................ 14

*Ruiz v. Snohomish Cty. Pub. Utility Dist. No. 1*,
   824 F.3d 1161 (9th Cir. 2016) ........................................................................... 3

*Salzman v. Bachrach*,
   996 P.2d 1263 (Colo. 2000) ............................................................................. 11

*Thompson v. Bayer Corp.*,
   2009 WL 362982 (E.D. Ark. Feb. 12, 2009) ................................................... 11

*Thompson v. Jiffy Lube Int'l, Inc.*,
   250 F.R.D. 607 (D. Kan. 2008) ....................................................................... 11

*Todd v. Tempur-Sealy Int'l, Inc.*,
   2017 WL 2840272 (N.D. Cal. June 30, 2017) ................................................ 14

*Visendi v. Bank of Am., N.A.*,
   733 F.3d 863 (9th Cir. 2013) .....................................................................*passim*

**Statutes/Rules**

18 U.S.C. § 1591 ................................................................................................... 12

18 U.S.C. § 1595 ................................................................................................... 12

Fed. R. Civ. P. 20 ...........................................................................................*passim*

Fed. R. Civ. P. 21 ............................................................................................... 2, 3

Fed. R. Civ. P. 23(b) .............................................................................................. 4

Fed. R. Civ. P. 45(c)(1) ........................................................................................ 14

Cal. Civ. Code § 1708.85 ........................................................................................ 9

California Business and Professions Code § 17200 ................................................ 9

California Business and Professions Code § 17500 ................................................ 9

**MOTION TO SEVER**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

As detailed in the MindGeek Entities' Motion to Dismiss the Complaint for Lack of Jurisdiction and Failure to State a Claim [Dkt. 72-2],[1] Plaintiffs in this case are 34 separate individuals from all over the globe whose claims against multiple MindGeek entities have little in common except for the fact that Plaintiffs are suing the same Defendants and are represented by the same lawyers. The underlying conduct involves an array of unrelated third parties who allegedly created sexually explicit videos of the Plaintiffs, some underage and others allegedly coerced, and posted the videos to various internet sites, including some operated by just one of the Defendants, Freesites. The events that give rise to Plaintiffs' claims took place during different time periods and across diverse geographic regions, including numerous different states and foreign countries.

Given these manifest individual disparities, Plaintiffs cannot satisfy the requirements for permissive joinder under Rule 20. Permissive joinder is only permitted if the various Plaintiffs: (1) "'assert[ ] a right to relief arising out of the same transaction and occurrence ***and*** (2) some question of law or fact common to all the plaintiffs will arise in the action.'" *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2013) (emphasis added) (internal quotations and citation omitted). Plaintiffs cannot establish either of these requirements. "By its terms, [the transaction and occurrence prong] requires factual similarity in the allegations supporting Plaintiffs' claims." *Id.* Such factual similarity is absent here. Thirty-four unrelated Plaintiffs allege that they were victimized over decades by numerous different third

---

[1] Defendants MindGeek S.à.r.l., MG Freesites Ltd ("Freesites"), MindGeek USA Inc., MG Premium Ltd, RK Holdings USA Inc., MG Global Entertainment Inc., and TrafficJunky Inc. (collectively "MindGeek" or "MindGeek Entities") dispute Plaintiffs' allegations they all own or operate websites. Only MG Freesites Ltd. operates the websites on which the videos at issue here were posted.

parties under distinct circumstances, in various places around the world.  Moreover, many of the Plaintiffs plead no interaction whatsoever with any of the MindGeek Entities.  And to the extent Plaintiffs do so plead, the nature of the interactions varies significantly from one person to the next.

Rule 20's second prong—a common question of law or fact—is also not met in this case because "each Plaintiff's claim is discrete, and involves different legal issues, standards, and procedures."  *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).  As the Ninth Circuit has admonished, where, as here, "Plaintiffs merely allege that Defendants violated the same laws in comparable ways," *Visendi*, 733 F.3d at 870, but the underlying facts and circumstances are different from one claim to the next, there is no common question to support joinder.

Finally, permissive joinder imposes an additional requirement:  even in cases where Rule 20's requirements are met, the Court must also consider whether allowing permissive joinder comports with the principals of fundamental fairness and due process.  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000).  "Factors relevant to this inquiry may include judicial economy, prejudice, and whether separate claims require different witnesses and documentary proof."  *Blackman v. Teespring, Inc.*, 2019 WL 7832600, at *2 (N.D. Cal. July 12, 2019).  All of these factors strongly militate in favor of severance where, as here, Plaintiffs have presented this Court with a Complaint that "'would compress into one mammoth proceeding a universe of individual claims, each with its particular facts, issues and . . . law, much better handled in separate cases where each can receive individual attention.'"  *Id.* (*quoting Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 297 F.R.D. 64, 67 (S.D.N.Y. 2013)) (alteration in the original).  Where, as here, the claims are misjoined, Rule 21 of the Federal Rules of Civil Procedure permits severance.  The Court should thus sever this action and dismiss the claims of Jane Does Nos. 1 through 33.

## II.    LEGAL STANDARD[2]

Permissive joinder is permitted only if (1) Plaintiffs "'assert[ ] a right to relief arising out of the same transaction and occurrence and (2) some question of law or fact common to all the plaintiffs will arise in the action.'"  *Visendi*, 733 F.3d at 870 (quoting *Coleman*, 232 F.3d at 1296); Fed. R. Civ. P. 20(a)(1)(A)-(B).  Plaintiffs have the burden of demonstrating that joinder is appropriate; if Plaintiffs fail to demonstrate either prong, the Court "may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." *Coughlin*, 130 F.3d at 1350 (citing FED. R. CIV. P. 21).  Courts should evaluate misjoinder early in the litigation so as to avoid prejudice to the defendants as the "action moves through fact and expert discovery, pretrial proceedings, and trial." *Corley v. Google, Inc.*, 316 F.R.D. 277, 282, 290 (N.D. Cal. 2016) ("Following the initial case management conference, the Court ordered the parties to file briefs addressing the propriety of mass joinder."); *accord Gonzalez v. City of Maywood*, 2008 WL 11336944, at *4 (C.D. Cal. Jan. 29, 2008)

---

[2] MindGeek recognizes that between this motion and the pending motion to dismiss on the merits and for lack of personal jurisdiction, the Court is presented with multiple options as to how to address Plaintiffs' misjoined claims.  Though personal jurisdiction is generally a threshold issue, courts in this Circuit have addressed severance without addressing personal jurisdiction.  *See e.g.*, *Nelson-Devlin v. Eli Lilly & Co.*, 2015 WL 5436700, at *2, 3-6 (E.D. Cal. Sept. 15, 2015) (granting severance as to the non-California plaintiffs without reaching challenges to personal jurisdiction).  Likewise, in the Ninth Circuit a court may "assume the existence of personal jurisdiction and adjudicate the merits in favor of the defendant without making a definitive ruling on jurisdiction." *Lee v. City of Beaumont*, 12 F.3d 933, 937 (9th Cir. 1993), *overruled on other grounds by Calif. Dep't of Water Resources v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).  But this rule has subsequently been questioned in dicta.  *See Ruiz v. Snohomish Cty. Pub. Utility Dist. No. 1*, 824 F.3d 1161, 1165 (9th Cir. 2016) (questioning whether a court can assume personal jurisdiction for purposes of dismissing on merits).  Given this uncertainty, MindGeek believes that it is most prudent course is for the Court to address personal jurisdiction as a threshold issue and dismiss the claims of all foreign and domestic non-California Plaintiffs.  *See* [Dkt. 72-2] at 8-15.  As to the California Plaintiffs, their claims should be severed and dismissed for the reasons outlined herein.

**MOTION TO SEVER**

1  (while the "Court can make [a] severance order at any time, … judicial economy is

2  best served by acting sooner, rather than later").  Indeed, the Ninth Circuit requires

3  district courts evaluating misjoinder to consider the risk of jury confusion even if the

4  case is in its early stages and any trial is a long way off.  *Coleman,* 232 F.3d at 1296.

5        Where, as here, Plaintiffs have been misjoined, "the court can generally dismiss

6  all but the first named Plaintiff without prejudice to the institution of new, separate

7  lawsuits by the dropped plaintiffs."  *Coughlin*, 130 F.3d at 1350.

8  **III.    ARGUMENT**

9        **A.    Plaintiffs Do Not Meet Rule 20(a)'s Requirements for Permissive
           Joinder.**

10

11             **1.    Plaintiffs' claims do not arise out of the same transaction or
                     occurrence.**

12       "By its terms, [the same transaction or occurrence requirement] requires *factual*

13  *similarity* in the allegations supporting Plaintiffs' claims."  *Visendi*, 733 F.3d at 870

14  (emphasis added); *see also Coughlin*, 130 F.3d at 1350 ("The first prong, the 'same

15  transaction' requirement, refers to similarity in the factual background of a claim.").

16  "[T]he single transaction or occurrence requirement is not met where plaintiffs would

17  have to prove their claims or defendants would have to litigate their defenses on an

18  individualized basis."  *Corley*, 316 F.R.D. at 284 (holding same transaction or

19  occurrence test was not met because plaintiffs' claims required evaluation on

20  individualized basis).  In this sense, "the single transaction or occurrence analysis

21  under Rule 20(a)" and "the predominance analysis under Rule 23(b)"—i.e., whether

22  any purported common issue predominates over individual issues of fact and law—

23  "may, in some instances, be two sides of the same coin."  *Id.* at 286.

24        There is no qualifying single transaction in this case.  To the contrary,

25  Plaintiffs' claims here are based on numerous different and unrelated occurrences, all

26  with idiosyncratic facts.  The alleged occurrences differ substantially with respect to:

27  (i) Plaintiffs' ages during the alleged trafficking; (ii) Plaintiffs' place of residence;

28

CASE NO. 2:21-cv-4920

**MOTION TO SEVER**

(iii) the location of the alleged recording of their images; (iv) the nature and circumstances of the alleged recordings; (v) the relevant time periods; and (vi) Plaintiffs' unique interactions with MindGeek regarding the removal of the content purportedly depicting each Plaintiff.  For example, Plaintiffs allege:

- Different Ages:  fourteen Plaintiffs were minors when they had their images recorded; and twenty were adults (Compl. ¶¶ 11-44);

- Different Residences:  five Plaintiffs are residents of California; fifteen reside in other states within the U.S.; and fourteen reside in foreign countries.  (*id.*);

- Different Recording Locations:  videos of Plaintiffs were allegedly created in Arizona, California, Maryland, New York, Pennsylvania, Colombia, the United Kingdom and other unidentified states (*id.* ¶¶ 12, 271-73, 289, 301, 306-07, 333-35, 367, 370-71, 375);

- Different Circumstances Underlying the Creation of the Content: Plaintiffs were victimized by numerous different people, such as "a ring of Hollywood men and New York financiers, including Jeffrey Epstein" (*id.* ¶ 270); convicted child sex offenders (*id.* ¶¶ 276, 317); "a female pimp in Colombia" (*id.* ¶ 301; *see also id.* ¶ 306); and a husband (*id.* ¶¶ 323, 388), among others (*id.* ¶ 317); and

- Different Time Periods:  recordings allegedly made as early as 2001 and continued for almost twenty years until 2018 (*id.* ¶¶  271, 345, 358-60, 368).

Even Plaintiffs' alleged interactions with MindGeek, to the extent there were any, demonstrate that the claims do not arise out of a single occurrence or even series of occurrences.  Some Plaintiffs (Jane Does 4, 13, 20, 26, 27, 30) do not allege any interaction at all with any MindGeek entity.  For those who claim to have interacted with MindGeek, those interactions are each unique and factually distinct.  For those

who claim to have interacted with MindGeek, some allege they did so on their own (Fleites, Jane Does 3, 6, 10, 15, 16, 18, 19, 21, 32, 33), while others allege they obtained assistance from third parties with take-down requests (Jane Does 1, 5, 7, 8, 9, 12, 22, 23, 24, 25), though the nature of those efforts is not entirely clear, and others allege they did both (Jane Does 2, 11, 14, 17, 28, 29, 31). *Id.* ¶¶ 263-64, 274, 280-282, 286, 293, 295, 298, 303, 308, 310, 314, 318, 325, 327, 331, 336, 341-43, 346, 349, 354, 356, 359, 362, 365, 376-77, 382-83, 389-390, 398, 402. MindGeek's alleged responses to take-down requests also vary substantially. For example, many Plaintiffs (Fleites, Jane Does 3, 5, 7, 8, 11, 12, 14, 17, 21, 23, 25, 28, 29, 33) acknowledge that content was removed in response to their own or others' requests (*id.* ¶¶ 263-64, 286, 293, 298, 303, 314, 318, 325, 342-43, 354, 359, 365, 376, 383, 402). Some (Fleites, Jane Does 2, 15, 22) allege that MindGeek asked for additional information to enable them to act on the request, without stating whether that information was ever provided (*id.* ¶¶ 264, 281, 331, 356). Still other Plaintiffs (Jane Does 2, 19, 31, 32) are silent on whether and/or how MindGeek responded to any take-down requests (*id.* ¶¶ 282, 349, 390, 398). Under these circumstances, the "[f]actual disparities of the magnitude alleged are too great to support permissive joinder." *Visendi*, 733 F.3d at 870.

The two leading Ninth Circuit cases addressing misjoinder—*Visendi* and *Coughlin*—confirm that severance and dismissal is warranted in this case. In *Coughlin*, 49 plaintiffs sued the Immigration and Naturalization Service (INS) in the same suit alleging that their pending applications were not being processed in a timely manner. 130 F.3d at 1350. The district court granted the INS's severance motion and dismissed all but the first plaintiff, and the Ninth Circuit affirmed, citing the manifest individual issues that would be required to prove each of the individual claims. The court admonished that "the mere allegation of general [conduct by the defendant] is not enough to create a common transaction or occurrence." *Id.*

Similarly, in *Visendi*, numerous plaintiffs sued several financial institutions alleging each utilized uniform deceptive mortgage lending and securitization practices. Plaintiffs argued that the suit should proceed as a consolidated action because "Defendants' misconduct was 'regular and systematic.'" *Visendi*, 733 F.3d at 870. The Ninth Circuit disagreed, holding that there was no qualifying "factual similarity in the allegations supporting Plaintiffs' claims" because each involved distinct loan transactions, secured by "properties across the country." *Id.*

Similarly, in *Blackman v. Teespring, Inc.*—involving highly analogous facts—28 plaintiffs (ten of whom resided in the U.S.; eighteen in other countries) brought suit against the operator of a website, defendant Teespring, Inc., for alleged copyright infringement of individual pieces of artwork that were displayed on the website. 2019 WL 7832600, at *1. Plaintiffs alleged that Teespring designed its website with the deliberate intent to "cultivat[e] and foster[er] . . . a copyright infringement community." *Id.* Specifically, plaintiffs contended that "Teespring had knowledge of the purportedly widespread infringement and did nothing to stop or prevent it from continuing." *Id.* Instead, Teespring "affirmatively participated" in the infringement by disarming certain safeguards against infringement. Plaintiffs thus argued that "they must remain joined and their claims viewed collectively in order to expose the extent of Teespring's allegedly systematic infringement of their artworks." *Id.* The court disagreed, granted defendant's severance motion, and dismissed all but the first plaintiff, explaining:

> While Plaintiffs allege in conclusory fashion that Teespring's misconduct was widespread and systematic, their interactions with Teespring were not uniform because each infringing sale necessarily implicated a unique and unrelated copyright. "Factual disparities of the magnitude alleged are too great to support permissive joinder."

*Id.* at *2 (quoting *Visendi*, 733 F.3d at 870).

This case is no different from *Visendi*, *Coughlin*, *Blackman*, and a long unbroken line of cases ordering severance where, as here, the plaintiffs bringing suit would have to prove their claims or defendants would have to litigate their defenses on an individualized basis.[3]   Accordingly, severance and dismissal of the Doe Plaintiffs is warranted.

### 2. There are no material questions of fact or law common to all of the Plaintiffs to support joinder.

Plaintiffs' inability to plead material questions of fact or law common to all of the Plaintiffs provides a second and independent basis for severance.  "[T]he mere fact that all Plaintiffs' claims arise under the same general law does not necessarily establish a common question of law or fact."  *Coughlin*, 130 F.3d at 1351; *see also Blackman*, 2019 WL 7832600, at *2 ("Plaintiffs merely allege that [Defendants] violated the same laws in comparable ways.  Rule 20(a) requires more.")  Where "each Plaintiff's claim is discrete, and involves different legal issues, standards, and

---

[3] Cases ordering severance and dismissal in the Ninth Circuit under circumstances analogous to this case are legion.  *See Alvarado v. City of Los Angeles*, 720 F. App'x 889, 904 (9th Cir. 2018) (affirming grant of severance motion because plaintiffs "do not allege any greater connection between their claims than that the [Defendant's] employees violated the [statute] in comparable ways, at various different times, and in various different divisions and bureaus"); *Bess v. Cate*, 2008 WL 4754860, at *1 (E.D. Cal. Oct. 27, 2008) (granting motion to sever where "alleged [misconduct] occurred at separate facilities and in separate locations."); *Nelson-Devlin*, 2015 WL 5436700, at *4 (granting severance motion and rejecting conclusory assertion "that Defendants' misconduct was 'regular and systematic'" because plaintiffs' "interactions with Defendants were not uniform" (quoting *Visendi*, 733 F.3d 870)); *Gonzalez*, 2008 WL 11336944, at *4 (even where plaintiffs alleged violation of same law premised on the same policy, each factual claim upon which the alleged violations were premised was inherently different); *Blackman*, 2019 WL 7832600, at *1 (rejecting conclusory allegations of systematic conduct because plaintiffs' interactions with defendant were not uniform); *Martinez v. Encore Credit Corp.*, 2009 WL 3233531, at *1-2 (C.D. Cal. Sept. 30, 2009) (in wrongful lending suit severing claims of nineteen different plaintiffs, explaining that joinder was improper because "[t]he 19 Plaintiffs in this action all have claims arising out of distinct factual scenarios involving mortgages on 15 separate properties (including one in Nevada).").

8

**MOTION TO SEVER**

procedures," "the Court would . . . have to give each claim individualized attention." *Coughlin*, 130 F.3d at 1351. As a result, such claims do not involve common questions of law or fact for purposes of joinder analysis. *Id.*

That is precisely the case here, where 34 separate Plaintiffs purport to bring eighteen different claims under both state and federal law. Plaintiffs' state law claims implicate scores of material state law differences and raise highly individualized facts.[4] Plaintiffs do not even attempt to plead how or why these claims can be manageably addressed in a single action. Instead, Plaintiffs summarily assert that all of the foreign and domestic claims can be adjudicated under California law. This is demonstrably false, and the Court is under no obligation to evaluate the multiple claims of the 34 misjoined Plaintiffs in order to determine something as basic as what law applies to each one. That analysis itself depends on facts unique to each Plaintiff, such as their states of injury and residence, *see Ashworth v. Team Indus. Servs., Inc.*, 2016 WL 9412450, at *5 (C.D. Cal., Sept. 2, 2016) (Carney, J.) (conducting government interest test), and the law applicable to a particular Plaintiff's claims may vary from claim to claim. The law varies considerably between the many states and countries where Plaintiffs reside or the alleged conduct occurred, "and courts must respect these differences rather than apply one state's law to [conduct] in other states with different rules." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002).

For example, Plaintiffs all attempt to bring consumer protection claims under California Business and Professions Code § 17200 and 17500. As Judge Easterbrook explained in *Bridgestone*, "[s]tate consumer-protection laws vary considerably." 288 F.3d at 1018. Yet, in their Complaint, Plaintiffs do not even cite the consumer protection statutes of the various jurisdictions where they reside or were allegedly

---

[4] Counts X, XI, XII, XIII and XIV (privacy-based torts), Count XV (Cal. Civ. Code § 1708.85), Count XVI (negligence), Count XVII (unjust enrichment), and Count XVIII (Cal. Civ. Code § 17200 *et seq.*).

**MOTION TO SEVER**

injured, eschewing the legal and factual differences that would invariably arise had they brought claims under each state's applicable statute. Courts should "not for a second suppose . . . that [Texas] would apply [California] law . . . to [consumer protection] claims [based on videos made] in [Texas], [of] residents of [Texas]." *Id.*

The Complaint also alleged no less than five privacy-based claims. But the state laws governing these privacy claims vary significantly. Colorado, Florida, North Carolina, Rhode Island, Texas, and New York either do not recognize or have restricted privacy torts.[5] In many instances, these states explicitly declined to recognize certain privacy torts after careful policy analyses. Determining the law of the foreign jurisdictions implicated by the Complaint, namely Thailand, Colombia, and the United Kingdom, would require an additional layer of complexity, possibly including multiple experts to determine the law in each of these jurisdictions. Additionally, each claim centers on each Plaintiff's personal privacy rights and will involve distinct factual questions, such as whether each Plaintiff was identifiable in the videos, whether each video had previously been shared publicly prior to appearing

---

[5] *See Denver Publ'g Co. v. Bueno*, 54 P.3d 893, 904 (Colo. 2002) ("[W]e find no benefit to our jurisprudence by adopting the tort of false light invasion of privacy."); *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1115 (Fla. 2008) ("[W]e decline to recognize false light as a viable cause of action in this state."); *Burgess v. Busby*, 544 S.E.2d 4, 11 (N.C. Ct. App. 2001) ("North Carolina does not recognize a cause of action for the invasion of privacy by disclosure of private facts."); *Clift v. Narragansett Tele. L.P.*, 688 A.2d 805, 814 (R.I. 1996) ("An action for invasion of privacy was not maintainable at common law . . . and the only available mechanism by which such an action may be maintained is G.L.1956 § 9–1–28.1."); *Cain v. Hearst Corp.*, 878 S.W.2d 577, 584 (Tex. 1994) ("[W]e expressly decline to recognize the tort of false light."); *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 704 (N.Y.) ("[A] claim grounded in the right to privacy must fall within Civil Rights Law §§ 50 and 51."), *aff'd in part*, 619 N.E.2d 650 (N.Y. 1993); *Renwick v. News & Observer Publ'g Co.*, 312 S.E.2d 405, 410 (N.C. 1984) ("We will not expand the tort of invasion of privacy recognized in this jurisdiction to include 'false light' invasions of privacy.").

**MOTION TO SEVER**

on MindGeek's platforms, and whether and to what degree each Plaintiff sustained emotional, professional, and reputational harm.

Plaintiffs also bring a claim for unjust enrichment. But "[t]he elements necessary to establish a claim for unjust enrichment also vary materially from state to state." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012). "[T]he states' different approaches to, or elements of, unjust enrichment are significant. Some of the most troublesome differences are . . . the disparity in proof required to prove an enrichment was 'unjust or wrongful' and the requirement by some states that there be no adequate remedy at law. However, these are not the only conflicts that exist in this area of the law. There are other differences … including, the direct and indirect benefit elements of unjust enrichment." *Thompson v. Bayer Corp.*, 2009 WL 362982, at *4 (E.D. Ark. Feb. 12, 2009); *accord Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 626 (D. Kan. 2008).[6]

Plaintiffs' federal claims fare no better. For starters, the federal laws governing these claims do not generally apply to the fourteen foreign Plaintiffs because they cannot sue under U.S. law for harm allegedly sustained in their respective home countries. *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454 (2007) ("United States law governs domestically but does not rule the world."). For example, the fourteen ex-U.S. Plaintiffs' RICO claims necessarily fail because they are based on purely

_____

[6] *Compare, e.g.*, *Harvell v. Goodyear Tire & Rubber Co.*, 164 P.3d 1028, 1035 (Ok. 2006) (requiring plaintiff to show no adequate remedy at law), *with Partipilo v. Hallman*, 510 N.E.2d 8, 10-11 (Ill. App. Ct. 1987) (treating plaintiff's unjust enrichment claim as an action at law available even when other legal remedies were pursued). As just another example, state law also varies regarding the standing of non-customers to pursue claims for unjust enrichment. In some states, the plaintiff must have directly conferred a benefit on the defendant, *see, e.g.*, *Effler v. Pyles*, 380 S.E.2d 149, 152 (N.C. Ct. App. 1989), whereas other states do not require a direct connection between the parties. *See, e.g., Salzman v. Bachrach*, 996 P.2d 1263, 1265 (Colo. 2000); *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1111 (N.Y. 2011).

**MOTION TO SEVER**

foreign injuries.  (Defs.' Mot. Dismiss at 41.)  No doubt certain of these foreign Plaintiffs will challenge this straightforward application of Supreme Court precedent, but any such challenge will necessarily raise idiosyncratic facts and independently underscore why their claims are misjoined.

As for the domestic Plaintiffs, their civil RICO claims (Counts VII-XIV) also require the Court to address other highly individualized threshold issues of standing before any claim can move forward.  (*Id.* at 41-48.)  To establish standing, each Plaintiff is required to show that "(1) [her] alleged harm qualifies as injury to [her] business or property; and (2) that [her] harm was "by reason of" the RICO violation.'" *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co.*, 943 F.3d 1243, 1248 (9th Cir. 2019) (citation omitted), *cert. denied*, 141 S. Ct. 86 (2020).  In other words, the Complaint as currently configured by Plaintiffs' lawyers requires the Court to hold a mini-trial on each of the 34 Plaintiff's claim just to determine if she has standing to proceed with her RICO claim.

Plaintiffs' claims for violation of federal sex trafficking laws (18 U.S.C. §§ 1591(a)(1), 1591(a)(2), 1595), similarly highlight why Plaintiffs' claims are misjoined.  Section 1595 is a quasi-criminal statute that allows for the private enforcement of Section 1591, the criminal provision of the anti-trafficking statute. (*See generally* Defs.' Mot. Dismiss at 22-33).  In an action against a provider of interactive computer services such as MindGeek, the statute requires that each Plaintiff bringing suit show that MindGeek knew (or at a minimum should have known) that each Plaintiff was trafficked, that MindGeek knowingly participated in a sex trafficking "venture," and that MindGeek knowingly benefitted "from participation in" *each* commercial sex trafficking venture. *See* 18 U.S.C. § 1591(a); 18 U.S.C. § 1595(a).  Proving the element for each Plaintiff is a highly fact intensive undertaking that cannot be manageably addressed with 34 disparate plaintiffs.

### B.    The Complaint as Currently Configured Will Inextricably Lead to Inconvenience, Delay, and Added Expense.

Because Plaintiffs cannot establish either requirement for permissive joinder under Rule 20, let alone both, the Court need not consider whether joinder of all Plaintiffs comports with the principles of fundamental fairness. *Coleman*, 232 F.3d at 1296. It is readily apparent, however, that Plaintiffs' blunderbuss Complaint flunks this test as well. As the Ninth Circuit explained, "Rule 20 is designed to promote judicial economy, and reduce inconvenience, delay, and added expense." *Coughlin*, 130 F.3d at 1351. Proceeding with the claims of 34 unrelated Plaintiffs in a single action as Plaintiffs propose will have the exact opposite effect for multiple reasons.

*First*, proceeding with the currently configured case will significantly impair judicial economy and cause legal confusion. "When each claim raises potentially different issues and must be viewed in a separate and individual light by a court, 'trial efficiency will not be promoted by allowing all [p]laintiffs to bring a single case.'" *Blackman*, 2019 WL 7832600, at *2 (quoting *Coughlin,* 130 F3d at 1351). As detailed above, the Complaint includes 29 Plaintiffs from other states and countries with no connection to California. This, in turn, would require the Court to analyze and apply the laws of at least twelve different states and multiple foreign countries. In an analogous case, the court in *Nelson-Devlin* rejected permissive joinder of non-California plaintiffs, explaining that "[m]aintaining the various non-California plaintiffs in the same action, which would require the application of sixteen different state laws, would not promote judicial economy. . . ." 2015 WL 5436700, at *4; *see also Coleman*, 232 F.3d at 1296 (finding that "[l]egal confusion was also likely because the plaintiffs had worked […] in six different states, and the jury would have had to evaluate their state law claims in light of the different laws of each state").

*Second*, there are significant pragmatic considerations that would make proceeding in a single action more expensive and less efficient. For example, the vast majority of witnesses that have information pertinent to the Plaintiffs' claims do not

reside in California.  But this Court would not be able to compel any of these percipient witnesses to testify at trial, which would, among other things, deprive jurors of being able to assess the testimony of live witnesses.  *See* Fed. R. Civ. P. 45(c)(1) (trial subpoena generally limited to 100 miles of where the person resides or within the state in which the person resides, is employed or regularly transacts business in person).  In *Rubio v. Monsanto Co.*, the court granted defendant's motion to sever because "keeping the claims joined and in the Central District [of California] would mean that the Court would have no compulsory process power over certain out-of-state fact witnesses, potentially prejudicing one side or the other."  181 F. Supp. 3d 746, 759 (C.D. Cal. 2016).

*Third,* there is no way to litigate this case without trampling on MindGeek's right to due process under the law.  Many of the pre-trial difficulties are discussed above.  Regarding any trial, it is a near certainty that jurors will conflate various factual issues and lend credence from one Plaintiff's claims to another Plaintiff's.  That is, the testimony of a particular Plaintiff may be stronger or more credible than that of others, creating the risk that a Plaintiff who may have a weak case could benefit unfairly through association with one who has a stronger case.  As the Ninth Circuit explained in a case involving fewer plaintiffs, a defendant "would be prejudiced by having all ten plaintiffs testify in [a single] trial" because "even the strongest jury instructions [can] not ... dull[ ] the impact of a parade of witnesses, each recounting his contention that defendant" committed the same wrongful acts.  *Coleman*, 232 F.3d at 1296-97 (citation omitted).[7]

---

[7] *See also Todd v. Tempur-Sealy Int'l, Inc.*, 2017 WL 2840272, at *3–4 (N.D. Cal. June 30, 2017) (granting motion to sever under Rule 20 because by "trying the two claims together, … one plaintiff, despite a weaker case of causation, could benefit merely through association with the stronger plaintiff's case") (internal quotations and citation omitted); *Martinez v. Adams*, 2010 WL 892186, at *18 (E.D. Cal. Mar. 9, 2010) (internal citations omitted) (granting in part Defendants' motion to sever, because "a single trial would present the jury with the 'hopeless task of trying to

**MOTION TO SEVER**

1     Any argument that it is unnecessary to consider jury confusion at this stage of

2  the litigation "fail[s] to comport with Ninth Circuit precedent, which expressly

3  instructs courts to consider the risk of jury confusion in evaluation prejudice to the

4  parties when analyzing misjoinder." *Corley*, 316 F.R.D. at 290 (citing *Coleman* 232

5  F.3d at 1296). Accordingly, "judicial economy is best served by [ordering severance]

6  sooner, rather than later." *Gonzalez*, 2008 WL 11336944, at *4.

7  **IV.   CONCLUSION**

8     The Court should sever this action and dismiss the claims of Jane Does Nos. 1

9  through 33. If they elect to do so, these Doe Plaintiffs can refile their claims

10  individually in an appropriate forum. *Coughlin*, 130 F.3d at 1350.

11  DATED: OCTOBER 22, 2021     RESPECTFULLY SUBMITTED,

12

13                 /s/   *Benjamin Sadun*

14                 BENJAMIN SADUN (287533)

15                 benjamin.sadun@dechert.com
                  DECHERT LLP

16                 US Bank Tower, 633 West 5th Street,

17                 Suite 4900
                  Los Angeles, CA 90071-2013

18                 Phone: (213) 808-5721; Fax: (213) 808-5760

19                 KATHLEEN N. MASSEY (*pro hac vice*)

20                 Kathleen.massey@dechert.com
                  MARK S. CHEFFO (*pro hac vice*

21                 *forthcoming*)

22                 mark.cheffo@dechert.com
                  DECHERT LLP

23                 Three Bryant Park

24                 1095 Avenue of the Americas

25  _____

26  discern who did and said what to whom and for what reason'" and that "a joint trial

27  would prejudice defendants in that each defendant [would] be tainted by the
    presentation of evidence regarding the alleged misdeeds of another, unfairly resulting

28  in guilt by association.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

New York, NY 10036
Phone: (212) 698-3500; Fax: (212) 698 3599
*Attorneys for MindGeek*