1    Evan S. Nadel (SBN 213230)
     enadel@mintz.com
2    Kathryn L. Ignash (SBN 299694)
     klignash@mintz.com
3    MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
     2029 Century Park East, Suite 3100
4    Los Angeles, CA 90067
     Telephone:  (310) 586-3200
5    Facsimile:   (310) 586-3202

6    Peter A. Chavkin (*Pro Hac Vice*)
     pchavkin@mintz.com
7    MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
     Chrysler Center 666 Third Avenue
8    New York, NY 10017
     Telephone:  (212) 935-3000
9    Facsimile:   (212) 983-3115

10   Attorneys for Specially-Appearing Defendant,
     COREY URMAN

11                    UNITED STATES DISTRICT COURT

12                   CENTRAL DISTRICT OF CALIFORNIA

13

14

15   SERENA FLEITES AND JANE DOE        CASE NO. 2:21-cv-4920 CJC
     NOS. 1 through 33,
16                                      **REPLY IN SUPPORT OF
                    Plaintiffs,          SPECIALLY-APPEARING
17                                        DEFENDANT COREY
            vs.                           URMAN'S MOTION TO
18                                        DISMISS COMPLAINT [Dkt.
                                          69]**
19   MINDGEEK S.A.R.L. a foreign entity, et
     al.,                               Hearing Date: February 14, 2022
20                                      Hearing Time:  1:30 p.m.
                    Defendants.         Courtroom:  9B
21                                      Judge:  Hon. Cormac Carney
22
23                                      Complaint Filed  June 17, 2021

24

25

26

27

28

# <u>**TABLE OF CONTENTS**</u>

**Page**

INTRODUCTION ................................................................................. 8

I. THE COMPLAINT FAILS TO ESTABLISH PERSONAL JURISDICTION OVER URMAN .............................. 10

    A. Plaintiffs Fail To Establish Personal Jurisdiction Over Urman Through An Alter Ego Theory ........................ 10

        1. Element One: Ownership and Unity of Interest .......................................................... 12

            a. No allegation of ownership ............................. 12

            b. No unity of interest ............................................. 13

        2. Element Two: Injustice/unfairness .............................. 18

    B. Plaintiffs Fail To Offer Sufficient Contacts By Urman To Qualify Under Rule 4(k) ........................ 21

    C. Plaintiffs Do Not Meet The RICO Jurisdictional Requirement ............................................................ 22

II. PLAINTIFFS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY ............................................ 23

III. THE SUBSTANTIVE COUNTS FATALLY FAIL TO ALLEGE HOW URMAN IS CONNECTED TO THE PURPORTED UNLAWFUL ACTIVITY ......................................... 26

    A. The Inadequacy Of The TVPRA Counts .............................. 27

    B. The Inadequacy Of The Child Sexual Exploitation Counts ............................................................ 29

    C. The Inadequacy Of The RICO Counts ................................. 29

IV. SECTION 230 IMMUNITY APPLIES TO URMAN INDIVIDUALLY ............................................................ 31

V. THE STATE AND COMMON LAW CLAIMS CANNOT SURVIVE ............................................................ 32

CONCLUSION ............................................................................. 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*,
  368 F.3d 1174 (9th Cir. 2004) ............................................................. 32

*ADO Fin., AG v. McDonnell Douglas Corp.*,
  931 F. Supp. 711 (C.D. Cal. 1996) .................................................... 16

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
  2015 WL 12777092 (C.D. Cal. Oct. 23, 2015) .................................. 11

*AMA Multimedia, LLC v. Wanat*,
  970 F.3d 1201 (9th Cir. 2020) ...................................................... 21, 22

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,
  551 F.2d 784 (9th Cir. 1977) ............................................................. 19

*Associated Vendors, Inc. v. Oakland Meat Co., Inc.*,
  210 Cal. App. 2d 825 (1962) ............................................................. 13

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
  2020 WL 4368214 (N.D. Cal. July 30, 2020) .................................... 28

*Barantsevich v. VTB Bank*,
  954 F. Supp. 2d 972 (C.D. Cal. 2013) ............................................... 19

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) ........................................................... 23

*Brophy v. Almanzar*,
  359 F. Supp. 3d 917 (C.D. Cal. 2018) ............................................... 25

*Butcher's Union Local No. 498, United Food & Commercial Workers v.
  SDC Inv., Inc.*,
  788 F.2d 535 (9th Cir. 1986) ............................................................. 24

*Calvert v. Huckins*,
  875 F. Supp. 674 (E.D. Cal. 1995) ........................................ 12, 15, 18

*Certified Bldg. Prods., Inc. v. N.L.R.B.*,
  528 F.2d 968 (9th Cir. 1976) ............................................................. 16

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014)..........................................................................20

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
    557 F.2d 1280 (9th Cir. 1977) ............................................................19

*Davis v. Metro Prods., Inc.*,
    885 F.2d 515 (9th Cir. 1989) ..............................................................22

*De Fontbrune v. Wofsy*,
    838 F.3d 992 (9th Cir. 2016) ..............................................................20

*Doan v. Singh*,
    617 F. App'x 684 (9th Cir. 2015) .......................................................30

*Doe v. Mindgeek USA Inc.*,
    2021 WL 4167054 (C.D. Cal. Sept. 3, 2021) .....................................31

*Doe v. Mindgeek USA Inc.*,
    2021 WL 5990195 (C.D. Cal. Dec. 2, 2021) ......................................31

*Doe v. Twitter*,
    2021 WL 3675207 (N.D. Cal. Aug. 19, 2021) ...................................32

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) ..............................................................16

*Doe v. WebGroup Czech Republic*,
    Case No. 2:21-cv-02428-VAP-SKx (C.D. Cal. Jan. 5, 2022)......................9, 31

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ............................................................31

*Fed. Reserve Bank of San Francisco v. HK Sys.*,
    1997 WL 227955 (N.D. Cal. Apr. 24, 1997).....................................17

*Firstmark Capital Corp. v. Hempel Fin. Corp.*,
    859 F.2d 92 (9th Cir. 1988) ................................................................12

*Flynt Distrib. Co., Inc. v. Harvey*,
    734 F.2d 1389 (9th Cir. 1984) ............................................................17

*Gilmour v. Gates, McDonald & Co.*,
    382 F.3d 1312 (11th Cir. 2004) ..........................................................14

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ................................................................25

*Hasso v. Hapke*,
   227 Cal. App. 4th 107 (2014) ...............................................................12

*In re Daou Sys. Inc.*,
   411 F.3d 1006 (9th Cir. 2005) ...............................................................15

*Incipio, LLC v. Argento Sc By Sicura Inc.*,
   2018 WL 4945002 (C.D. Cal. July 18, 2018) ......................................12

*Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.*,
   880 F. Supp. 743 (C.D. Cal. 1995) .......................................................21

*J.B. v. G6 Hosp., LLC*,
   2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) .....................................28

*Kao v. Holiday*,
   58 Cal. App. 5th 199 (2020) .................................................................19

*Klayman v. Zuckerberg*,
   753 F.3d 1354 (D.C. Cir. 2014) ...........................................................31

*Mesler v. Bragg Mgmt. Co.*,
   39 Cal. 3d 290 (1985) ....................................................................17, 18

*Metabyte, Inc. v. Technicolor S.A.*,
   2021 WL 1721394 (N.D. Cal. Apr. 30, 2021) .....................................20

*MH Pillars v. Realini*,
   2017 WL 916414 (N.D. Cal. Mar. 8, 2017) ......................................9, 27

*Mid–Century Ins. Co. v. Gardner*,
   9 Cal. App. 4th 1205 (1992) .................................................................18

*Mieuli v. DeBartolo*,
   2001 WL 777447 (N.D. Cal. Jan. 16, 2001).........................................17

*Neilson v. Union Bank of California, N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) .......................................9, 18, 19

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) ......................................................................9

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*,
650 F.3d 1046 (6th Cir. 2011) ...................................................................28

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ...................................................................20

*Religious Tech. Ctr. v. Wollersheim*,
971 F.2d 364 (9th Cir. 1992) .....................................................................31

*S.E.C. v. Hickey*,
322 F.3d 1123 (9th Cir. 2003) ...................................................................12

*Sandoval v. Ali*,
34 F. Supp. 3d 1031 (N.D. Cal. 2014)........................................................19

*Sihler v. The Fulfillment Lab, Inc.*,
2020 WL 7226436 (S.D. Cal. Dec. 8, 2020) ........................................16, 27

*Sinatra v. Nat'l Enquirer, Inc.*,
854 F.2d 1191 (9th Cir. 1988) ...................................................................17

*State Comp. Ins. Fund v. Khan*,
2013 WL 12132027 (C.D. Cal. July 30, 2013) .............................................9

*Stewart v. Screen Gems-Emi Music, Inc.*,
81 F. Supp. 3d 938 (N.D. Cal. 2015).........................................................24

*Symettrica Entm't, Ltd. v. UMG Recordings, Inc.*,
2019 WL 8806093 (C.D. Cal. Sept. 20, 2019) ...........................................26

*Transportes Aereos Pegaso, S.A. De C.V. v. Bell Helicopter Textron,
Inc.*,
623 F. Supp. 2d 518 (D. Del. 2009) ...........................................................20

*United States v. Miller*,
953 F.3d 1095 (9th Cir. 2020) ...................................................................31

*Whitaker v. Tesla Motors, Inc.*,
985 F.3d 1173 (9th Cir. 2021) ...................................................................26

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) ...................................................................21

*Willick v. Napoli Bern Ripka & Associates, LLP*,
2019 WL 3064120 (C.D. Cal. Mar. 13, 2019) .......................................15, 18

CASE NO.  2:21-cv-4920-CJC

*Wine Bottle Recycling, LLC v. Niagara Sys. LLC*,
    2013 WL 1120962 (N.D. Cal. Mar. 18, 2013) ....................................................25

**Statutes**

18 U.S.C. §1961 ....................................................................................................30

**Rules**

Fed. R. Civ. P. 4(k) ...............................................................................................21

Fed. R. Civ. P. 8...............................................................................................26, 28

Fed. R. Civ. P. 9(b) .................................................................................................9

Fed. R. Civ. P. 12(b)(6) ........................................................................................28

Fed. R. Civ. P. 44(a)(2).........................................................................................20

Fed. R. Civ. P. 44.1...............................................................................................20

Fed. R. Evid. 201 ..................................................................................................20

**Other Authorities**

Amended Application for Authorization to Institute a Class Action and
    to Obtain the Status of Representative, Jane Doe c. 9219-1568
    Québec Inc. & als., No. 500-06-001115-209 (Can. Que. Sup. Ct. Nov.
    29, 2021) .........................................................................................................20

# INTRODUCTION

Corey Urman is a foreign citizen who resides and works outside the USA. Plaintiffs' opposition to Urman's motion to dismiss is critically flawed: it utterly fails to explain *what Urman did* to confer personal jurisdiction over him.

The complaint fails to link Urman to *any* of the video procurement, uploading, hosting or refusal to take down actions that are at the core of the complaint, much less show how those actions, even if connected to Urman, support general or specific jurisdiction over him.  Plaintiffs' efforts boil down to the following proposition:  certain MindGeek companies have conceded personal jurisdiction for certain plaintiffs and Urman must be subject to personal jurisdiction as well because the complaint alleges that Urman is part of the overall "MindGeek" group of entities which *collectively* has perpetrated the acts plaintiffs complain of – even though the complaint does not specify how Urman is connected to either of the two entities which, plaintiffs claim, conceded jurisdiction (or for that matter, any plaintiff entity) or how those entities are connected to the allegedly unlawful conduct.

Reliance on group pleading to try to impute jurisdiction has been routinely rejected by the courts.  In a powerful and recent illustration from this district, Judge Phillips condemned as inadequate mass jurisdictional allegations in a very similar matter:

> The FAC comingles the Defendants together throughout much of the pleading, without identifying which entities are responsible for the conduct underlying the claims. For example, Plaintiff alleges that: Defendants are a coordinated group of individuals and companies which knowingly benefit from child sex trafficking by, among other things, developing, analyzing, and monetizing uploaded content and/or manipulating search terms and media content on XVideos and/or developing content and systems to drive the continued uploading and consumption of CSAM for profit.  (FAC, at 3).  Defendants use sophisticated technology to track and promote the types of material that drives traffic and profits to its websites.  Defendants' conversely refuse to implement reasonable protections known to mitigate or prevent CSAM [and]

… facilitate the anonymity of those child sex traffickers ….
(citation omitted).
Such allegations fail to specify each Defendant's culpability
adequately.

*Doe v. WebGroup Czech Republic*, Case No. 2:21-cv-02428-VAP-SKx, Order

Granting Motions to Dismiss, at 20-22 (C.D. Cal. Jan. 5, 2022), Dkt. No. 161.[1]

Similarly ineffective are the complaint's *conclusory allegations* that certain

MindGeek entities are Urman's alter ego: "Conclusory allegations of 'alter ego'

status are insufficient to state a claim.  Rather a plaintiff must allege specifically both

of the elements of alter ego liability as well as facts supporting each."  *Neilson v.*

*Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1116-117 (C.D. Cal. 2003)

(rejecting alter ego where complaint stated "because Imperial Management is a mere

instrumentality of Comerica Bank–California, an inequitable result would occur if

Comerica Bank–California is not a defendant in this action" but failed to allege facts

supporting this statement).  *See also MH Pillars v. Realini*, 2017 WL 916414, at *12-

13 (N.D. Cal. Mar. 8, 2017) (rejecting boilerplate pleading of alter ego liability).

Group and conclusory pleading cannot obscure plaintiffs' failure to explain: (i)

---

[1]    Plaintiffs assert that group pleading is permitted where facts are uniquely within the control of defendants, citing *State Comp. v. Khan* in support.  Yet *Khan rejected group pleading* because it did not provide adequate notice to the defendants.  *State Comp. Ins. Fund v. Khan*, 2013 WL 12132027, at *4 (C.D. Cal. July 30, 2013) (Carney, J.) ("State Fund failed to plead the role of each defendant in the scheme because it used 'group pleading,' making it unclear which allegations were directed at which defendants.  State Fund has corrected these problems in the SAC." (internal citation omitted)).  Moreover, the reference in *Khan* to relaxing standards was with respect to the substantive counts (not jurisdiction), *and* the court did not equate relaxing specificity requirements with ignoring them completely, as plaintiffs have done here. *Id.*  As plaintiffs recognize, *Khan* references *Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) – *another decision rejecting as too general a plaintiff's allegations.* Pls.' Omnibus Opp. To Defs.' Motions ("Opp.") at 54, Dkt. No. 94.  As that court noted: "However, this exception does not nullify Rule 9(b); a plaintiff who makes allegations on information and belief must state the factual basis for the belief."  *Neubronner*, 6 F.3d at 672.

how Urman had an ownership stake in either of the two (or for that matter any MindGeek entity); (ii) how Urman had a unity of interest with either of the two MindGeek entities; or (iii) why conferring alter ego status is required to avoid an unjust result that Urman otherwise would achieve in bad faith. Here too, plaintiffs rest on impermissible group pleading and conclusory allegations. Plaintiffs' are not entitled to discovery to remedy this because their allegations about Urman are so lacking and so vague that there is no indication that further factual development will supply the necessary linkage.

Finally, the substantive counts in the complaint independently suffer from fatal defects.

## I.    THE COMPLAINT FAILS TO ESTABLISH PERSONAL JURISDICTION OVER URMAN

The complaint fails to adequately allege that Corey Urman is subject to this Court's jurisdiction under theories of general jurisdiction, specific jurisdiction, or alter ego. As an initial matter, Urman addresses the alter ego theory because the opposition papers prioritize it as plaintiffs' primary argument based on its position in those papers and the amount of space devoted to it.

### A.    Plaintiffs Fail To Establish Personal Jurisdiction Over Urman Through An Alter Ego Theory

In their opposition, plaintiffs principally argue that Urman should be held responsible for the actions of "MindGeek" (a group of "hundreds" of entities) because MindGeek is his alter ego. In their opposition, plaintiffs contend that (a) the MindGeek entities were all alter egos of each other, operated by the individual defendants as a single business entity (Complaint ("Compl.") ¶¶ 59, 60, Dkt. No. 1); (b) the individual defendants maintained such pervasive control that the corporate form should be disregarded as a sham; and (c) the entities and individual defendants together disseminated illegal materials created in, uploaded in, and stored on servers in the United States (*id.* ¶¶ 61, 66, 67). Most emblematic of the way plaintiffs have pled their case against an individual defendant like Urman is the following: "The

CASE NO.  2:21-cv-4920-CJC

Enterprise was comprised of a network of sham shell entities throughout the world …. [t]hese sham entities were directed and controlled by MindGeek executives, including defendants Bernd Bergmair, Feras Antoon, and Corey Urman, who were in turn controlled by and directed by MindGeek's financiers, including defendant Bergmair." *Id*. ¶¶ 537, 571.

In other words, plaintiffs have broadly asserted that the corporate structure is a sham and that Urman, among others, helps to run the sham. The inference plaintiffs want this Court to draw is: because plaintiffs conclusorily *say* the individual defendants ran MindGeek (without alleging facts showing it), those defendants should be held responsible as if they are MindGeek – that anything MindGeek did, for jurisdictional purposes, is attributable to them. But plaintiffs have not alleged how the two Mind Geek entities which, plaintiffs claim, have conceded jurisdiction – MindGeek USA Incorporated and MG Global Entertainment Inc. – were involved in the alleged unlawful activity or how Urman was so connected to *either of them* (or for that matter, any MindGeek entity) to make those entities or any others his alter ego. So, as a threshold matter, plaintiffs' alter ego construct – even if accepted – does not explain how jurisdiction over Urman could be obtained.[2]

Specifically, plaintiffs' alter ego allegations do not establish the required elements of an alter ego theory – ownership and unity of interest, and the injustice of allowing the individual to be otherwise shielded. *See, e.g.*, *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 2015 WL 12777092, at *10 (C.D. Cal. Oct. 23, 2015) (rejecting alter ego theory because generalized allegations based on group membership are "insufficient to plausibly show [the individual defendant's] unity and control over the alleged network, and the mere inclusion of [her] with the

---

[2]    Notably, in addition to the failure to link Urman to the entities, there is an independent reason why these two entities cannot serve as a basis for imputing liability to anyone: as the MindGeek entities explain, the complaint fails to allege how they connect to any of the allegedly improper conduct. MindGeek Mot. to Dismiss at 7-8, Dkt. No. 72-2.

[alleged network] does not overcome the deficiency").

Plaintiffs' alter ego jurisdictional construct is seriously deficient, especially when measured against the heightened standard by which alter ego theories are measured. *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995), *aff'd* 109 F. 3d 636 (9th Cir. 1997) (alter ego doctrine is '"recognized as an extreme remedy"' to be applied '"only in exceptional circumstances"'); *Hasso v. Hapke*, 227 Cal. App. 4th 107, 155 (2014) (alter ego liability '"is an extreme remedy, sparingly used"') (citation omitted)); *Incipio, LLC v. Argento Sc By Sicura Inc.*, 2018 WL 4945002, at *2 (C.D. Cal. July 18, 2018) (alter ego carries "a high burden both at the pleading stage and on the merits.").

### 1.    Element One:  Ownership and Unity of Interest

The first alter ego element requires allegations of ownership and unity of interest. *S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003), *opinion amended on denial of reh'g sub nom. Sec. & Exch. Comm'n v. Hickey*, 335 F.3d 834 (9th Cir. 2003).  Neither is satisfactorily alleged against Urman.

### a.    No allegation of ownership

An individual's ownership in the purported alter ego entity must be alleged, yet not once in this 177-page complaint do plaintiffs allege that Urman owned anything.

As stated in a case plaintiffs cite to support their alter ego argument, "Ownership of an interest in the corporation is an essential part of the element of unity of ownership and interest.  *If an individual's ownership is not established, the corporation's obligations cannot be imposed on him or her.*"  *Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988) (emphasis added).[3]  *See also Hickey*, 322 F.3d at 1130 (noting the "clear rule of law established by California

---

[3]    In fact, the several cases cited by plaintiffs in support of their alter ego argument (addressed in this reply) either did not address challenges like those leveled by Urman and the other individual defendants here, or reached findings on allegations far more robust and specific than plaintiffs have asserted here, underscoring the woeful deficiency of the current complaint.

courts that an individual *must* own at least part of a corporation for an alter ego relationship to exist").  Even if the complaint alleged Urman was part of the Bro-Club and that this club operated the relevant MindGeek entities (which the complaint does not), the complaint does not adequately allege that this "club" owned those entities.  Operational control and ownership are entirely separate; otherwise, every corporate officer would be suable under an alter ego theory, which is plainly not the law.

Because the complaint is utterly devoid of any allegation that Urman owned any MindGeek entity, much less the two which, plaintiffs claim, have conceded jurisdiction, the alter ego argument fails and the additional independent requirements of the alter ego construct need not be evaluated.

### b.  No unity of interest

Unity of interest is a separate required component of alter ego.  This requirement has been satisfied in other matters by allegations specifying how an individual defendant exclusively "dominated, controlled, and influenced" the purported alter ego entity; the entity was a mere shell for the individual defendant's use; the individual used his personal residential address as the entity's business address; or the individual personally directed the activities of the entity.  *Associated Vendors, Inc. v. Oakland Meat Co., Inc.*, 210 Cal. App. 2d 825, 838-40 (1962).  Plaintiffs plead none of these attributes with respect to Urman, including how Urman essentially treated the MindGeek entities as his own.

Plaintiffs appear to recognize that they have failed to articulate any such specifics *for Urman* and instead rely on pleadings that group him with others in a jumbled mass described as an organized crime family (the supposed "Bro-Club") that allegedly operated MindGeek while hiding behind corporate shells.  Compl. ¶¶ 140-161.  In effect, plaintiffs seek to bootstrap one amorphous and undifferentiated section of the complaint onto another equally deficient section, as if quantity can obscure the failure to supply the requisite quality.  *See, e.g.*, Opp. at 49 (asking the Court to consider collectively the "detailed allegations of each individual's role in the

enterprise (Facts §§ B.2-4) and the Complaints' alter ego allegations." Lumping Urman, in an undifferentiated way, with corporate entities and alleged codefendants fails on a number of levels.

*First,* plaintiffs' claim that MindGeek and Urman are synonymous – that MindGeek is a sham through which Urman operates – is *factually* belied by their own pleading. Plaintiffs' theory that MindGeek is Urman's alter ego rests primarily on his supposed membership in the Bro-Club, which the complaint tries to paint as the driving operational force behind the MindGeek entities (whatever that means in a complaint that then inconsistently describes how that club was "controlled by and directed by MindGeek's financiers"). Compl. ¶ 537. But the complaint does *not* list Urman as a Bro-Club member. In other words, putting aside:

(i)     whether the Bro-Club is adequately described as the driving force behind a MindGeek entity over which jurisdiction was potentially conceded (and, as Mr. Antoon makes clear, the complaint does not), and

(ii)     whether, even if the club were adequately described as the driving force, that would be sufficient to establish that a person's alleged membership in the club provides a sufficient basis, without more, to confer alter ego status (it does not, as the law requires far more, as discussed below),

the very premise of plaintiffs' argument is wrong with respect to Urman: *their own complaint does not say that Urman was a member of the Bro-Club.* In the paragraphs expressly devoted to the membership and operation of the Bro-Club, Urman's name appears *nowhere. Id.* ¶¶ 93-108. That is not inadvertent: in those very same paragraphs, plaintiffs name a number of individuals.[4]

The absence of Urman's name is not remedied by the vague allegation that

---

[4]     Plaintiffs' opposition argues that individuals like Urman referred to themselves as members of the Bro-Club, yet plaintiffs do not and cannot cite to any such allegation *in their complaint.* Opp. at 18 (citing Compl. ¶¶ 93-94, which fail to reference Urman at all). *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (a plaintiff cannot amend a complaint through a brief).

according to an unidentified "whistleblower" all "top executives" were members of the Bro-Club.  *Id.* ¶ 94.  The complaint does not name Urman as a top executive but, instead, as a vice president (a title routinely bestowed on subordinates at many institutions and certainly well below "the top").  *Id.* ¶ 55.  In addition, it is not enough to offer a conclusory allegation by an unnamed source whose reliability is not even suggested.  *Cf. In re Daou Sys. Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005) (plaintiff must describe confidential witness with ""sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged"" and provide '"adequate corroborating details'") (citations omitted).[5]

   *Second,* even if the complaint included Urman in the Bro-Club, the complaint offers *no* allegations that Urman himself controlled any activity relating to the allegedly offensive videos.  The complaint at most offers the impermissible general and conclusory allegation that *the Club* operated the companies so Urman must have as well.

   *Third,* even if extensive operational control were attributable to Urman through this complaint (via the Bro-Club or otherwise), that alone would not suffice.  *See Willick v. Napoli Bern Ripka & Associates, LLP*, 2019 WL 3064120, at *2, *5-6 (C.D. Cal. Mar. 13, 2019) (mere allegation that individual defendants exercised complete control and dominance over the business assets of the alleged alter ego entities was found insufficient despite extensive allegations – in contrast to the complaint in the current case – that the alleged alter ego entities have "always been inadequately capitalized[,]" that the individuals used entity assets "for their personal use and caused assets … to be transferred to them … without adequate consideration"); *Calvert*, 875 F. Supp. at 678 (alter ego allegations were deemed insufficient to establish one corporate entity as the alter ego of another, even with

---

[5]   Although this ruling was rendered under the PSLRA, we are not aware of any contrary authority in the Ninth Circuit on this question outside of the PSLRA context.

ownership interests among the entities; interlocking directors and officers; incorporation of one entity's figures into another's financial reports; one entity guaranteed at least one promissory note of the other's; and counsel for one entity provided legal services to the other).  *Compare Certified Bldg. Prods., Inc. v. N.L.R.B.*, 528 F.2d 968, 969 (9th Cir. 1976) (alter ego applied where the individual was "the sole owner and principal actor in the matters giving rise to the complaint").

The very cases relied on by plaintiffs only underscore the fatal defects in plaintiffs' approach:

- *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001):  court *rejected* alter ego status of parent company for subsidiary, holding  the "evidence does not suggest such a unity of interest and ownership between [parent] and its subsidiaries that their separate corporate personalities no longer exist" even though: (a) parent provided financing to its subsidiary; (b) parent and subsidiary had overlapping directors and officers; (c) parent formulated subsidiary's business strategies and practices; and (d) parent was involved in subsidiary's capital expenditures and its acquisitions.

- *Sihler v. The Fulfillment Lab, Inc.*, 2020 WL 7226436, at *6 (S.D. Cal. Dec. 8, 2020):  court found allegations *insufficient* for alter ego, even with evidence that defendant admitted to controlling the alter ego company and creating the software used by the company to effect the activity at issue in the lawsuit.

- *ADO Fin., AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 717-18 (C.D. Cal. 1996):  unity of interest between defendant and proposed alter ego *was* demonstrated where plaintiffs there (unlike here) showed alter ego company had inadequate capitalization; defendant siphoned off alter ego's liquid assets leaving essentially nothing for alter ego; defendant disregarded corporate formalities; defendant appointed the board and unilaterally controlled daily operations, including litigation decisions made without consulting company's director; and alter ego was wholly owned by intermediary corporation that defendant wholly owned.

- *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1393-94 (9th Cir. 1984):  plaintiffs established alter ego where individuals were the *sole shareholders* of the corporations and the *sole partners* of the partnerships; converted the assets of the various corporations and partnerships for their own use and dealt with them as if they were one; and transferred valuable assets from the five signatory corporations to the other nonsignatories, leaving the five signatories undercapitalized.

- *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 294-95 (1985):  court addressed whether a plaintiff can seek to recover its *damages* against the alter ego company (not whether personal jurisdiction was established) – a scenario completely inapposite to the matter before this Court and one where alter ego was assumed.[6]

- *Fed. Reserve Bank of San Francisco v. HK Sys.*, 1997 WL 227955, at *6 (N.D. Cal. Apr. 24, 1997):  alter ego established for liability, not jurisdiction (again, inapposite to the issue here) and, in any event, complaint alleged that subsidiary "'dominated and controlled'" the alter ego parent company "'to such an extent that the individuality and separateness of the subsidiary had ceased,'" "disregarded [alter ego's] corporate form,'" and alter ego "'was so inadequately capitalized that . . . its capitalization was illusory,'" so that allowing the two entities to remain distinct would result in inequity (citation omitted).

- *Mieuli v. DeBartolo*, 2001 WL 777447, at *2, *9 (N.D. Cal. Jan. 16, 2001):  finding alter ego established for liability, not jurisdiction (and rendered pre *Twombly* and *Iqbal*), basing finding in any event on "specific allegations of unity of interest and undercapitalization of corporate entity where individual transferred his "*entire ownership interest*" in San Francisco 49ers to another company he owned –

---

[6]    Jurisdiction, unlike liability, implicates unique issues like foreign sovereignty, heightening the standard a plaintiff must meet.  *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988) ("litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist").

incomparable to anything alleged here.[7]

In short, plaintiffs' alter ego construct falls not only because the complaint fails to allege Urman's ownership of the purported alter ego entities, but also separately because it fails to allege a unity of interest.

### 2.     Element Two:  Injustice/unfairness

To establish alter ego, plaintiffs must *also* sufficiently allege that it would be unjust to allow Urman's bad faith conduct or abuse of the corporate privilege to preclude the possibility of recovery should plaintiffs prevail on their claims.  This is the third, independent burden that the complaint must satisfy and it is very high:  "the corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require."  *Mesler*, 39 Cal.3d at 301.

Merely alleging difficulty in enforcing a judgment or collecting a debt is not enough.  The unfairness must stem from some bad faith action by Urman with respect to the entity designated as his alter ego.  *See Willick*, 2019 WL 3064120, at *4; *Neilson*, 290 F. Supp. 2d at 1116-117; *Mid–Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1213 (1992) ("'The purpose of the doctrine is not to protect every unsatisfied creditor, but rather to afford him protection, where some conduct *amounting to bad faith* makes it inequitable … for the equitable owner of a corporation to hide behind its corporate veil'") (citation omitted); *see Calvert*, 875 F. Supp. at 679 ("Even if plaintiffs had made a sufficient prima facie showing of control, defendants' motion [to dismiss] would still be granted since plaintiffs have produced no evidence whatsoever going to the second requirement for piercing the corporate veil – that failure to do so would 'sanction a fraud or promote injustice'").

Plaintiffs are required, for example, to allege in more than conclusory fashion that Urman deliberately inadequately capitalized an entity or drained the designated

---

[7]     The handful of other cases cited by plaintiffs (Opp. at 42) are inapposite, addressing the relationship of corporate entities within a single corporate family.

alter ego entity of its corporate assets after initial capitalization.  *See Neilson*, 290 F. Supp. 2d at 1116; *see also Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) (plaintiffs did not "adequately" allege an inequitable result by stating "conclusorily that 'an inequity would result if the corporations were not viewed as alter egos of each other and the [defendants]'") (citation omitted).  Plaintiffs have not done so.  *Compare Kao v. Holiday*, 58 Cal. App. 5th 199, 202, 207 (2020) (cited by plaintiffs, even though not a jurisdictional holding, for invoking alter ego liability where those plaintiffs actually alleged the kind of financial entanglements that plaintiffs here do not).

Plaintiffs have not alleged that Urman did anything to inadequately capitalize or subsequently drain the two MindGeek entities over which plaintiffs claim jurisdiction has been conceded (or, for that matter, any MindGeek entity).  Nor could plaintiffs do so in light of the uncontested declaration supplied by Andreas Andreou of MindGeek S.à.r.l., who has sworn that every entity has adequate capital and has followed corporate formalities.  Andreas Andreou Decl. ISO Defs.' Mot. ("Andreou Decl.") ¶¶ 7, 11, 15, 19, 23, Dkt. No. 70-2.  Although plaintiffs object to the Andreou declaration as unsupported, they offer *nothing* to contradict his sworn statement about each entity, including the two which plaintiffs claim have conceded jurisdiction.  *See, e.g.*, *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) (court "may not assume the truth of allegations in a pleading which are contradicted by affidavit"); *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977) (where defendant has "clearly challenged personal jurisdiction over it," plaintiff "could not simply rest on the bare allegations of its complaint, but rather was obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction"); *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 997 (C.D. Cal. 2013) ("[P]laintiff has failed to adduce any evidence that it would be appropriate to disregard the corporate structure … [where defendant's] proffers concerning the legal separateness of the entities [are] uncontroverted.").

Moreover, to the extent that plaintiffs contend that inclusion of Urman is necessary to ensure they can collect any judgment, they are free to pursue him in the pending Canadian class action, which asserts comparable claims (in fact, the complaint in that action attaches the complaint from this case as an exhibit). Notably, three of the defendants named here have been sued in that action, one of the current plaintiffs here is Canadian (Compl. ¶ 25), and the complaint in that action alleges all of the plaintiffs here are potential class members. *See* Amended Application for Authorization to Institute a Class Action and to Obtain the Status of Representative, Jane Doe c. 9219-1568 Québec Inc. & als., No. 500-06-001115-209 (Can. Que. Sup. Ct. Nov. 29, 2021), *available at* https://www.registredesactionscollectives.quebec/en/Fichier/Document?NomFichier=8810.pdf (last visited Jan. 24, 2022).[8]

In short, Plaintiffs have provided no reason to establish personal jurisdiction over Urman on an alter ego theory.[9]

---

[8]     *See* Ex. 1 (filed with this reply brief); Declaration of Patrick Ouellet, ¶ 2, Ex. A. Urman respectfully requests that the Court take judicial notice of this pleading under Federal Rule of Evidence 201 and Federal Rule of Civil Procedure 44(a)(2) and/or 44.1. *See Metabyte, Inc. v. Technicolor S.A.*, 2021 WL 1721394, at *5-7 (N.D. Cal. Apr. 30, 2021) (taking judicial notice of court filings in French action involving the same parties because they were matters of public record and "the existence and authenticity of these filings are not subject to reasonable dispute"); *De Fontbrune v. Wofsy*, 838 F.3d 992, 996-97 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Nov. 14, 2016) (holding courts may consider foreign legal materials at the pleading stage in ruling on a motion to dismiss); *Transportes Aereos Pegaso, S.A. De C.V. v. Bell Helicopter Textron, Inc.*, 623 F. Supp. 2d 518, 534 (D. Del. 2009) ("One common source that judges rely upon in determining foreign law are the affidavits of lawyers who practice law in the country at issue, or who are from the country at issue and are familiar with its laws.").

[9]     Other than a brief mention in their opposition, it is unclear whether plaintiffs continue to argue jurisdiction based on agency. That theory is no longer recognized as a basis for personal jurisdiction in the Ninth Circuit. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015). The Supreme Court invalidated this test in *Daimler AG v. Bauman*, 134 S. Ct. 746, 759 (2014) (focusing on whether the subsidiary performs "important" work the parent would have to do itself if the subsidiary did not exist "stacks the deck, for it will always yield a pro-jurisdiction answer"). Although another

20

### B.    Plaintiffs Fail To Offer Sufficient Contacts By Urman To Qualify Under Rule 4(k)

Plaintiffs offer an alternative basis for jurisdiction, albeit half-heartedly as it occupies a mere two paragraphs in their opposition:  that the contacts of the individual defendants with the United States were sufficient to confer general jurisdiction or, alternatively, were connected to the allegedly offensive conduct to support specific jurisdiction under Federal Rule of Civil Procedure 4(k).  Opp. at 74-75.  To satisfy Rule 4(k), a complaint must plead actions by a defendant in the forum that either support general jurisdiction or directly relate to the offensive conduct alleged against him.  Yet, not once do plaintiffs respond to Urman's argument that the complaint does not allege he was a "guiding spirit" (required to overcome the fiduciary shield doctrine).  *See Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.*, 880 F. Supp. 743, 751 (C.D. Cal. 1995) (failure to allege corporate president personally participated in  development of the particular advertisements doomed guiding spirit argument where none of his visits to California related to the underlying cause of action at issue).

In the end, plaintiffs have not pled *any* contact by Urman with California or the United States and, as discussed earlier, cannot use group pleading or a form of alter ego to create jurisdiction over him based on the activities of any purported alter ego entity.

Finally, plaintiffs' argument that the location of servers in the USA and the directing of tubesites to the USA suffice does not salvage their position.  First, neither would be sufficient for jurisdiction over even the entity that was responsible for the servers or tubesites.  *See, e.g.*, *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th

---

Ninth Circuit decision opened the door a crack to an agency theory for specific jurisdiction, we are unaware of any court resting jurisdiction on that basis and the allegations against Urman would not meet the "substantial control" test anyway. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017).

Cir. 2020), *cert denied*, 2021 142 S. Ct. 76 (2021)).  Plaintiffs do not cite any legal

support for their position or distinguish the cases arrayed against them.  Second,

whatever the impact of servers and tubesites on the question of jurisdiction over the

entity behind them, the complaint does not connect that entity (or either activity) *to

Urman*.[10]  Third,  this purported activity allegedly occurred after the conduct targeted

by the complaint (*e.g.*, procurement and postings of videos) and the complaint never

connects it to the targeted unlawful activity.  Fourth, the complaint does not allege

that this activity was directed by Urman toward California or the USA.

The law is clear: each defendant's susceptibility to jurisdiction must be

evaluated separately.  The mere fact that a corporation is subject to jurisdiction does

not mean that its non-resident officers and directors are subject to jurisdiction as

well.  Each defendant's contacts with the forum state must be examined individually

to determine whether *that defendant* has sufficient minimum contacts to support a

finding of jurisdiction.  *See Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520-23 (9th

Cir. 1989) (complaint alleged that individual defendants purposefully directed their

activities toward the forum, meeting with plaintiff, an Arizona resident whose

business was in Arizona, to discuss the opportunity for his clients to invest and

offering plaintiff a financial incentive to find investors, all of which demonstrated

that they "clearly acted with the intent to induce [plaintiff] to obtain purchasers of the

tapes in Arizona, [which] resulted in six agreements with Arizona residents")

(alteration in original).

### C.    Plaintiffs Do Not Meet The RICO Jurisdictional Requirement

Although RICO provides a jurisdictional basis for RICO claims where service

---

[10]    *Wanat* and a line of similar cases indicate that neither location of servers (there, a contract with a US company that hosted servers) nor tubesite direction is sufficient for jurisdiction, yet plaintiffs say virtually nothing about these dispositive decisions, remitting *Wanat* to a footnote that does not address its findings, despite its prominence in *Urman*'s opening brief.  *Compare* Urman Mot. to Dismiss at 17-18, 24-25, Dkt. No. 69-1, *with* Opp. at 71, n.37.

is made in a judicial district, it is crystal clear that that *did not occur* here. To suggest otherwise, as plaintiffs do in a footnote (Opp. at 75 n.42), requires that they ignore the unambiguous language and spirit of the publicly filed documents *they signed.*

Urman, like the other foreign-based defendants, waived service of process because the Federal Rules encourage this and because, under the Rules (and the explicit language of the waiver itself), only one thing is waived: a defect in service. *All personal jurisdiction defenses are and were expressly preserved.* Urman Waiver of Service of Summons, Dkt. No. 33 ("I … will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.").

Moreover, Urman executed the waiver from his Canadian address. *Id.* This was reinforced by the stipulation that expressly noted that service was occurring outside of any United States judicial district. Stipulation at 2-3, Dkt. No. 31 (stating the Individual Defendants "are foreign citizens residing outside the United States and the waiver request was sent to them outside any judicial district of the United States; … and Individual Defendants expressly reserve all defenses or objections to this lawsuit (including lack of personal jurisdiction), except as to service or the absence of service").

## II.  PLAINTIFFS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY

Plaintiffs' opposition is notable for how quickly and frequently plaintiffs seek to take jurisdictional discovery. Indeed, *it is the very first argument they make in opposition to jurisdiction.* Opp. at 68. However, jurisdictional discovery is not a matter of right – a complaint must provide a sufficient basis for putting a foreign defendant through a procedure that, in effect, encroaches on the sovereignty of his nation and on his life abroad. *See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (denying jurisdictional discovery where the request was based "on little more than a hunch that it might yield jurisdictionally relevant facts" even after taking

as true the facts of plaintiff's complaint and his affidavit in opposition to defendant's motion to dismiss); *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (plaintiffs stated only that they "believe" discovery will enable them to demonstrate personal jurisdiction, but the Court found this speculation insufficient to warrant jurisdictional discovery in light of the complaint's conclusory allegations unsupported by specific facts); *Stewart v. Screen Gems-Emi Music, Inc.*, 81 F. Supp. 3d 938, 959 (N.D. Cal. 2015) (plaintiff must provide ample reason to conclude that discovery would establish both unity of interest *and* injustice elements of alter ego theory).

Here, the complaint does not supply the kind of allegations that would lead a court to conclude that discovery could be useful.  For example, although plaintiffs claim two MindGeek corporate entities have conceded jurisdiction, there are no allegations linking Urman to either one of them.  The complaint contains no allegations that, with respect to either of the two MindGeek entities which, plaintiffs claim, have conceded jurisdiction (or any other MindGeek entity sued in this case), Urman:

- was an officer
- was a director
- was an owner
- lent it any money
- borrowed any money from it
- commingled personal funds with it, or
- treated as his own the entity's assets

For purposes of discovery in aid of an alter ego theory, the complaint makes *no* allegation of ownership, unity of interest or unfairness based on Urman's alleged interests.  For purposes of general or specific jurisdiction, the complaint makes no allegation of any activity by Urman in the USA generally or in connection with the allegedly offensive activity.  In addition, there are no non-conclusory, non-"group" allegations linking Urman to *any* of the allegedly improper actions to procure, post or maintain videos by any MindGeek entity.

This complaint is, therefore, utterly unlike the one in *Brophy*, where this Court granted jurisdictional discovery to flesh out allegations that had the demonstrated potential to serve as a basis for asserting jurisdiction. *Brophy v. Almanzar*, 359 F. Supp. 3d 917, 924-25 (C.D. Cal. 2018). There, as this Court observed, allegations of general and specific jurisdiction existed:

> Plaintiff claims there is specific jurisdiction over Defendants because they actively promoted Gangsta Bitch [the actionable conduct] to California consumers by holding a release party for the mixtape in Los Angeles and promoting the mixtape during a tour in the cities of Oakland and Los Angeles. (Opp. at 16.) Plaintiff also claims that Defendants sent copies of the Gangsta Bitch cover to California companies. (*Id.*) Plaintiff also claims that the Court should exercise general jurisdiction over Defendants based on "the litany of Cardi B's contacts with and regular and routine appearances in California, and [D]efendants' revenue streams flowing from California consumers whom they target directly." (*Id.* at 15-16.) … Plaintiff also claims that "Cardi B continues to tour and to attend award ceremonies, television shows, and other events in this State, including, most recently, Coachella." (*Id.* at 17.)

*Brophy*, 359 F. Supp. 3d at 924-25 (alteration in original). *See also Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (cited in *Brophy*, 359 F. Supp. 3d at 925) (complaint alleged that the purported alter ego owned 100% of the company over which the court had jurisdiction, that the purported alter ego and other company were run by same directors and senior and officers and shared same office space, and alter ego did more than simply hold the investment stake in the other company); *Wine Bottle Recycling, LLC v. Niagara Sys. LLC*, 2013 WL 1120962, at *8-10 (N.D. Cal. Mar. 18, 2013) (also cited in *Brophy*, 359 F. Supp. 3d at 925) (denying jurisdictional discovery into individual defendants who had positions with corporate defendants, even where one of corporate defendants conceded personal jurisdiction, because plaintiff's allegations were insufficient to justify further inquiry into its argument under fiduciary shield and alter ego

doctrines).

This Court's decision in *Symettrica Entm't, Ltd. v. UMG Recordings, Inc.*, 2019 WL 8806093, at *4-5 (C.D. Cal. Sept. 20, 2019) makes these points with equal force, denying jurisdictional discovery into defendant's corporate structure as "nothing more than a fishing expedition[.]"  It did so even where plaintiffs offered allegations on alter ego that plaintiffs here have not: "that Symettrica is undercapitalized, fails to undertake corporate formalities, and that the director defendants co-mingled Symettrica's funds with their own".[11]  *Id*.

Finally, it is no answer to these clear legal principles for plaintiffs to say that the individual defendants know what they did and should not be allowed to benefit from creating sham companies to hide their conduct.  We are unaware of any case that has upheld that argument.  To the contrary, the case law rejects allegations under Rule 8 even where a plaintiff anticipates discovery will fill in the gaps.  *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) ("pleadings must assert well-pleaded factual allegations to advance to discovery").

## III.    THE SUBSTANTIVE COUNTS FATALLY FAIL TO ALLEGE HOW URMAN IS CONNECTED TO THE PURPORTED UNLAWFUL ACTIVITY

The substantive counts are each defective, failing to allege what *Urman did* to participate in trafficking, violate child sexual exploitation laws, or participate in a racketeering enterprise.  Plaintiffs attempt to gloss over this by arguing that this Court already has ruled on the sufficiency of their substantive allegations (*e.g.*, Opp. at 43: "As set forth, *supra*, this Court has already held that the MindGeek Defendants had actual knowledge of the venture's sex trafficking violations.").  In fact, however, that

---

[11]    Although defendants in *Symettrica* submitted declarations, plaintiffs there had offered detailed allegations, unlike here, and in any event, the Andreou declaration is a matter of record here and is unopposed.  Notably, this Court also cautioned that allegations that failure to disregard the corporation would result in fraud or injustice … [requires] 'more than just a creditor attempting to recover on unsatisfied debts; it must show that a defendant's conduct amounted to bad faith.'" 2019 WL 8806093, at *5.

ruling was in a case where *none* of the individual defendants was named.

The complaint does nothing more than attempt to lump Urman together with the MindGeek entities with no effort to allege how he personally furthered any of the alleged unlawful activity. As discussed repeatedly above, that is just as plainly impermissible when it comes to alleging substantive violations: "[I]n a situation . . . with different actors playing different parts, it is not enough to 'lump' together the dissimilar defendants and assert that 'everyone did everything.'" *Sihler*, 2020 WL 7226436, at *10 n.5 (alteration in original) (citations omitted); *see also MH Pillars*, 2017 WL 916414, at *6 (dismissing contract claim based on lumping together: plaintiffs "failed to differentiate among the defendants or to plead facts showing what action any particular defendant took with regard to any particular contract."). Nor, as discussed earlier, can plaintiffs avail themselves of some alter ego argument (that a MindGeek entity's actions are attributable to Urman).

Those are some of the general, fatal defects in the substantive counts. The following points supplement the points made on each count in Urman's opening brief and the many challenges leveled by the other defendants.

### A.    The Inadequacy Of The TVPRA Counts

Plaintiffs appear to argue that each of the individual defendants, *by virtue of that defendant's alleged connection to an unspecified MindGeek entity*, is responsible for participating in trafficking and/or benefiting from it because the existence of offensive videos on the MindGeek websites was allegedly so widespread; the existence of offensive videos was allegedly brought to the attention of MindGeek and either not taken down or, if removed, links were preserved; MindGeek allegedly worked with Asian traffickers to obtain content; moderators allegedly reviewed all videos so they had to know of offensive conduct; MindGeek allegedly helped procure images of child pornography and non-consensual sex acts, and enabled it to be better accessed by site users; and MindGeek's alleged policy not to preclude posting such images was deliberate and financially motivated. Opp. at 33-34. The complaint

offers nothing about Urman's connection to this conduct, much less to the specific plaintiffs in this case.

Whatever legal standard the court chooses to use in evaluating the adequacy of trafficking claims (actual or constructive knowledge), these allegations are palpably deficient *as to Urman* because none of the alleged conduct is attributed – even allegedly – to Urman (*e.g.*, no allegations that Urman visited warehouses, arranged to obtain videos from traffickers, posted those videos, or failed to take them down, etc.).[12]  *See J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *2, *10 (N.D. Cal. Aug. 20, 2020) (dismissing TVPRA claim against defendant who did not participate in alleged trafficking); *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020) (plaintiff's allegations "do not make a plausible claim that Wyndham and Choice directly participated in a venture that *trafficked B.M.* . . . . In other words, the Complaint is devoid of any facts linking *these Defendants (Wyndham and Choice)* to the sex trafficking of *this Plaintiff (B.M.). . . .*") (emphasis in original).

Plaintiffs cannot justify their failure by arguing that the requisite information is within the purview of the defendants.  First, the case law does not support that argument.  *See New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (in Rule 12(b)(6) context, Rule 8 applies "even when the information needed to establish a claim . . . is solely within the purview of the defendant or a third party.").  Indeed, if a defendant cannot complain about the absence of allegations because "he knows what he did," then every complaint would

---

[12]    Reflecting just how poorly conceived is plaintiffs' theory about Urman and the danger of undifferentiated pleading: despite their claim that Urman was part of the Bro-Club, plaintiffs' response to the TVPRA conspiracy count alleges that Antoon, Tassillo and Bergmair were vital parts of a group intimately involved in oversight and execution of the illicit activities, working with various participants.  Besides the fact that this sort of group pleading is improper and should be given no weight, we note that plaintiffs do not even mention Urman.  *See* Opp. at 49.

28

survive a motion to dismiss – a legally unsupported result and one that is especially inappropriate where a defendant like Urman is not even alleged to have been responsible for the corporate structuring that allegedly hid his conduct (there are no allegations that Urman played any role in creating any of the allegedly sham corporations that plaintiffs now claim hide the information they need).  Second, plaintiffs have shown that they have not been disabled from learning (and pleading) the activities of individuals: for example, the complaint alleges that MindGeek's "Social Manager" confirmed that MindGeek did not stop certain offensive activity because it was too costly, and the complaint alleges that Urman was the person behind a disinformation campaign.

### B.      The Inadequacy Of The Child Sexual Exploitation Counts

This Court has not decided that the allegations of hosting child pornography were adequate *as to Urman*.  As with the TVPRA allegations, there is nothing about the alleged conduct of MindGeek that this Court deemed sufficient *as to MindGeek* that is attributed to Urman as well.  The failure to plead how Urman is connected to this conduct dooms these counts as well.

### C.      The Inadequacy Of The RICO Counts

The RICO allegations are based essentially on the same alleged conduct offered for the TVPRA and child pornography counts and are, therefore, fatally defective because they fail to link that conduct to Urman.

In addition, a handful of other fatal defects unique to the RICO counts include the following.

*1.      Common purpose of enterprise:*  plaintiffs allege that the common purpose of the RICO enterprise was to make money but do not allege that Urman shared that purpose by participating in the company's profits or having any other incentive based on money.

*2.      Conducted enterprise affairs:*  while plaintiffs recognize that they must allege each defendant played some part in *directing* the alleged enterprise's affairs,

the complaint does not link the conduct of the alleged enterprise's activity to Urman. In fact, the only conduct attributed to him (a disinformation campaign) shows nothing more than conduct consistent with a role in public relations, not directing an enterprise. *See* Compl. ¶¶ 255, 448-456. [13]

3.    *Enterprise must be distinct from the racketeering activity:* plaintiffs acknowledge this requirement but contend that evidence of both can "coalesce." *See* Opp. at 56 n.19. That may be true, but it does not eliminate the need to show that the enterprise has some ongoing existence apart from the racketeering activity. The complaint makes no effort to allege the association in fact enterprise's separate existence from its alleged racketeering activity. Nor does it make any effort to allege, as it must, "what exactly each individual did, when they did it, [and] how they functioned together as a continuing unit." *Doan v. Singh*, 617 F. App'x 684, 686 (9th Cir. 2015). Plaintiffs once again characteristically bury the absence of detail under a pile that stacks one amorphous assertion upon another. *See, e.g.*, Opp. at 52-53.

4.    *Two racketeering acts that each defendant is linked to:* spearheading a disinformation campaign (the only activity attributed to Urman (Compl. ¶¶ 255, 448-456) is not a racketeering activity recognized by 18 U.S.C. §1961. While plaintiffs try to characterize it as a wire fraud (without providing any analysis), the case law under wire fraud makes clear that public lies are not cognizable unless they go to the essence of the bargain struck by the alleged victim of the fraud. Here, no victim can point to any bargain made with MindGeek or Urman (indeed, it is a central tenet of the alleged victims that they were ignorant of any bargain that their abusers may have

---

[13]    The allegations that Urman conducted a disinformation campaign are equally ineffective in connecting him to any substantive violation. At most, they reflect what might be admissible evidence of violations of the TVPRA or child exploitation laws but they do not state the requisite participation in commercial sex trafficking of minors or others forced to engage in such activity against their wills, or knowingly benefitting from such conduct. To do that, the complaint would have to accuse Urman of participating in those underlying violations, not simply acting to help cover them up.

cut and that their images were used without their consent). *See, e.g.*, *United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020) ("Like the mail fraud statute from which it is derived, the wire fraud statute, in plain and simple language, criminalizes the use of interstate wires to further, not mere deception, but a scheme or artifice to defraud or obtain money or property, i.e., in every day parlance, to cheat someone out of something valuable.  It follows that to be guilty of wire fraud, a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions.").

　　　5.　　*RICO Conspiracy:*  absent allegations sufficient to satisfy all required elements of a substantive RICO claim, a conspiracy charge standing alone cannot survive. *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.8 (9th Cir. 1992).[14]

## IV.    SECTION 230 IMMUNITY APPLIES TO URMAN INDIVIDUALLY

　　　Although this Court has twice ruled against MindGeek's application of Section 230 immunity, the Court did not strip any *individual defendant* of the Section 230 immunity to which he is individually entitled.  *Doe v. Mindgeek USA Inc.*, – F. Supp. 3d –, 2021 WL 4167054, at *9 (C.D. Cal. Sept. 3, 2021), *adhered to on denial of reconsideration*, 2021 WL 5990195 (C.D. Cal. Dec. 2, 2021).  *See Klayman v. Zuckerberg*, 753 F.3d 1354, 1357-58 (D.C. Cir. 2014) (Mark Zuckerberg, CEO of Facebook, is entitled to section 230 immunity because "he is a 'provider' of Facebook's interactive computer service").  And unlike the content contributions the Court found adequate against MindGeek in the *Doe* case, the complaint in this case utterly fails to allege that *Urman's input* "contributes materially" to the allegedly illegal content (for example, through tagging).  *Fair Hous. Council of San Fernando*

---

[14]　　Plaintiffs also do not respond to Urman's arguments addressing their failure, under section 1962(a), to allege the use or investment of racketeering proceeds.

*Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1168 (9th Cir. 2008).[15]

## V.    THE STATE AND COMMON LAW CLAIMS CANNOT SURVIVE

Notwithstanding the arguments made in Urman's opening brief, plaintiffs do not argue that unjust enrichment and conspiracy are causes of action recognized in California.  In addition, pendent jurisdiction cannot serve as a basis where there is no claim against Urman over which the court has independent jurisdiction as to him.  *See Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180–81 (9th Cir. 2004).

## CONCLUSION

For the reasons stated in Urman's opening brief and above, as well as the arguments offered initially and in reply by the MindGeek entities, Antoon, Tassillo and Bergmair (and their motions) in which he joins, defendant Corey Urman respectfully requests that this Court dismiss him from this action because the complaint's allegations fail to establish personal jurisdiction, justify jurisdictional discovery or, alternatively, support the substantive claims against him or strip him of Section 230 immunity.

Dated:  January 24, 2022                  MINTZ LEVIN COHN FERRIS GLOVSKY
                                          AND POPEO PC


                                          By  s/ *Evan S. Nadel*
                                              Evan S. Nadel
                                              Peter A. Chavkin
                                              Kathryn L. Ignash

                                              Attorneys for Specially-Appearing
                                              Defendant
                                              COREY URMAN

---

[15]    In any event, Section 230 should bar all non-TVPRA claims under *Doe v. Twitter*, – F. Supp. 3d –, 2021 WL 3675207, at *28-34 (N.D. Cal. Aug. 19, 2021).

CASE NO.  2:21-cv-4920-CJC

## **CERTIFICATE OF SERVICE**

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and am not a party to the above-entitled action.

On January 24, 2022, I filed a copy of the foregoing document by electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all CM/ECF registered users.

Executed on January 24, 2022, at Los Angeles, California.

*s/Evan S. Nadel*
Evan S. Nadel

CASE NO.  2:21-cv-4920-CJC