1  BENJAMIN M. SADUN (287533)
2  benjamin.sadun@dechert.com
   DECHERT LLP
3  US Bank Tower, 633 West 5th Street,
4  Suite 4900
   Los Angeles, CA 90071-2013
5  Phone: (213) 808-5721; Fax: (213) 808-5760

6
   KATHLEEN N. MASSEY (*admitted pro hac vice*)
7  kathleen.massey@dechert.com
8  MARK S. CHEFFO (*pro hac vice forthcoming*)
   mark.cheffo@dechert.com
9  Three Bryant Park
10 1095 Avenue of the Americas
   New York, NY 10036
11 Phone: (212) 698-3500; Fax: (212) 698 3599

12
   *Attorneys for Defendants*
13
                UNITED STATES DISTRICT COURT
14              CENTRAL DISTRICT OF CALIFORNIA
15                    SOUTHERN DIVISION

16 SERENA FLEITES and JANE DOE      CASE NO.  2:21-CV-04920-CJC-ADS
   NOS. 1 through 33,
17                                  Judicial Officer:    Cormac J. Carney
            Plaintiffs,             Courtroom: 9B
18
       v.
19                                  **REPLY IN SUPPORT OF**
   MINDGEEK S.A.R.L.; MG            **MINDGEEK'S MOTION TO**
20 FREESITES, LTD; MINDGEEK USA     **DISMISS THE COMPLAINT FOR**
   INCORPORATED; MG PREMIUM         **LACK OF PERSONAL**
21 LTD.; RK HOLDINGS USA INC.; MG   **JURISDICTION AND FAILURE TO**
   GLOBAL ENTERTAINMENT INC.;       **STATE A CLAIM AND MOTION**
22                                  **TO SEVER AND DISMISS JANE**
   TRAFFICJUNKY INC.; BERND         **DOE NOS. 1 THROUGH 33**
23 BERGMAIR; FERAS ANTOON;
   DAVID TASSILLO; COREY            Hearing:    February 14, 2022
24 URMAN; VISA INC.; COLBECK        Time:       1:30 p.m.
25 CAPITAL DOES 1-10; BERGMAIR      Courtroom:  9B
   DOES 1-10
26          Defendants.
27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

ARGUMENT .............................................................................................................. 3

I.   The Court Lacks Personal Jurisdiction Over the Foreign MindGeek Entities ............................................................................................................ 3

    A.   MG Global Entertainment and MindGeek USA Do Not Confer General Jurisdiction over the Foreign MindGeek Entities. .................. 4

    B.   Rule 4(k)(2) and RICO Do Not Confer Personal Jurisdiction. .............. 9

    C.   Plaintiffs' Remaining Fallback Arguments Are All Meritless. .......... 10

    D.   Jurisdictional Discovery is Unwarranted Because Plaintiffs Have Not Established a Colorable Basis for Personal Jurisdiction .............. 13

II.   The Court Should Grant Severance Because Plaintiffs Do Not Meet Rule 20(a)'s Requirements and Joinder in This Action Does Not Comport with Fundamental Fairness and Due Process .................................. 15

    A.   Plaintiffs Have Not Established that Their Claims Satisfy Either Requirement of Rule 20(a) ................................................................ 15

    B.   Plaintiffs Ignore Significant Issues Posed by Joinder that Run Afoul of the Principles of Fundamental Fairness. .............................. 22

III.   Plaintiffs' RICO Claims Should Be Dismissed. ......................................... 25

    A.   Plaintiffs Have Not Alleged a Common Purpose. .............................. 25

    B.   Plaintiffs Have Not Alleged an Associated-in-Fact Enterprise. .......... 27

    C.   Plaintiffs Have Not Alleged RICO Injuries to Business or Property. ............................................................................................ 28

        1.   Fourteen Plaintiffs Allege Extraterritorial Injuries. .................. 28

        2.   Plaintiffs Do Not Allege Injuries to Business or Property. ....... 29

    D.   Plaintiffs Do Not Adequately Allege Predicate Acts Connected to Their RICO Claims. ...................................................................... 32

IV.   Plaintiffs Fail to State a *Prima Facie* TVPRA Claim. ................................ 35

    A.   Most Plaintiffs Do Not Allege Facts that Support Trafficking ........... 36

    B.   Plaintiffs Have Not Alleged a Direct Liability Claim Against MindGeek .......................................................................................... 37

# TABLE OF CONTENTS
(continued)

**Page**

       1.    MindGeek Did Not Advertise Plaintiffs for Commercial Sex. ...................................................................37

       2.    Plaintiffs Do Not Allege MindGeek Recruited, Enticed, Harbored, or Maintained Them for Commercial Sex...............40

   C.    Plaintiffs Do Not Allege a Secondary Liability Claim against MindGeek...........................................................41

       1.    Plaintiffs Do Not Allege MindGeek Participated in Trafficking Ventures Involving Them.......................41

       2.    MindGeek Did Not Have Constructive Knowledge of Plaintiffs' Alleged Trafficking. ............................43

       3.    Plaintiffs Cannot Circumvent the Knowledge Requirement by Alleging Unrelated Acts. .....................45

   D.    The Ex-U.S. Plaintiffs May Not Bring TVPRA Claims Against MindGeek.......................................................47

V.    Plaintiffs Are Required to Plead Plausible Claims Against Each Defendant to Obtain Discovery........................................48

CONCLUSION...........................................................50

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Page(s)**

4

**Cases**

5

*A. Kush & Assocs. (Canada) Ltd. v. Weingeroff Enters., Inc.*,
6      1988 WL 64082 (N.D. Ill. June 8, 1988) ............................................................ 24

7
*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
8      368 F.3d 1174 (9th Cir. 2004) ................................................................... 11, 12

9  *Akishev v. Kapustin*,
      2016 WL 7165714 (D.N.J. Dec. 8, 2016) ........................................................ 29
10

11 *Almont Ambulatory Surgery Center, LLC v. UnitedHealth Group, Inc.*,
      99 F. Supp. 3d 1110 (C.D. Cal. 2015) ........................................................ 18, 20
12

13 *AMA Multimedia, LLC v. Wanat*,
      970 F.3d 1201 (9th Cir. 2020) ..................................................................... 1, 5
14

15 *Anderson v. Peregrine Pharmaceuticals, Inc.*,
      2013 WL 12122423 (C.D. Cal. Aug. 23, 2013) ................................................ 46
16

17 *Ardolf v. Weber*,
      332 F.R.D. 467 (S.D.N.Y. 2019) ........................................................ 18, 20, 21
18

19 *Ashcroft v. Iqbal*,
      556 U.S. 662 (2009) ...................................................................................... 49
20

21 *Barantsevich v. VTB Bank*,
      954 F. Supp. 2d 972 (C.D. Cal. 2013) ............................................................ 14
22

23 *Barnhart v. Sigmon Coal Co.*,
      534 U.S. 438 (2002) ...................................................................................... 36
24

25 *Bernstein v. Misk*,
      948 F. Supp. 228 (E.D.N.Y. 1997) ................................................................. 34
26

27 *Blackman v. Teespring, Inc.*,
      2019 WL 7832600 (N.D. Cal. July 12, 2019) ........................................... 18, 20

28

# TABLE OF AUTHORITIES
(continued)

**Page**

*Blanton v. Housing Auth.*,
794 P.2d 412 (Okla. 1990) .................................................................. 30

*Blue Diamond Growers v. Texas Best Smokehouse, Inc.*,
2008 WL 5386762 (E.D. Cal. Dec. 22, 2008)...................................... 13

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ............................................................ 14

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017)..............................................................*passim*

*Brighton Collectibles, Inc. v. RK Texas Leather Manufacturing*,
2013 WL 2631333 (S.D. Cal. June 11, 2013) ..................................... 24

*Brophy v. Almanzar*,
359 F. Supp. 3d 917 (C.D. Cal. 2018)................................................. 14

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) ............................................................ 49

*Calm Ventures LLC v. Newsom*,
2021 WL 5049105 (C.D. Cal. Feb. 18, 2021) ..................................... 16

*Calvert v. Huckins*,
875 F. Supp. 674 (E.D. Cal. 1995) ....................................................... 5

*Carlson v. United Natural Foods, Inc.*,
2021 WL 3616786 (W.D. Wash. Aug. 14, 2021) ......................... 11, 12

*Chagby v. Target Corp.*,
2008 WL 5686105 (C.D. Cal. Oct. 27, 2008) ..................................... 25

*Children's Health Defense v. Facebook Inc.*,
2021 WL 2662064 (N.D. Cal. June 29, 2021) ..................................... 33

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
295 F. Supp. 3d 927 (N.D. Cal. 2018)................................................. 50

# TABLE OF AUTHORITIES
(continued)

**Page**

*Clark v. Stipe Law Firm, L.L.P.*,
  320 F. Supp. 2d 1207 (W.D. Okla. 2004) .......................................................... 30

*Coleman v. Quaker Oats Co.*,
  232 F.3d 1271 (9th Cir. 2000) ................................................................. 23, 24, 25

*Cooper v. San Bernardino Sheriff Dep't*,
  2017 WL 10511568 (C.D. Cal. Mar. 10, 2017) ................................................ 46

*Corcoran v. CVS Health Corp.*,
  169 F. Supp. 3d 970 (N.D. Cal. 2016) ................................................................ 5, 6, 7

*Corley v. Google, Inc.*,
  316 F.R.D. 277 (N.D. Cal. 2016) ....................................................................... 16

*Coughlin v. Rogers*,
  130 F.3d 1348 (9th Cir. 1997) ...................................................................... 20, 22

*Demaria v. Nissan N. Am., Inc.*,
  2016 WL 374145 (N.D. Ill. Feb. 1, 2016) ........................................................ 12

*Diaz v. Gates*,
  420 F.3d 897 (9th Cir. 2005) .................................................................. 29, 30, 32

*Doan v. Singh*,
  617 F. App'x 684 (9th Cir. 2015) ...................................................................... 25, 26

*Doe v. Mindgeek USA, Inc.*,
  2021 WL 4167054 (C.D. Cal. Sept. 3, 2021) ............................................*passim*

*Doe v. MindGeek USA Inc.*,
  No. 8:21-cv-00338 (C.D. Cal., Dec. 2, 2021) .................................................. 44

*Doe v. Red Roof Inns, Inc.*,
  21 F.4th 714 (11th Cir. 2021) .................................................................. 41, 42, 45

*Doe v. Twitter, Inc.*,
  2021 WL 3675207 (N.D. Cal. Aug. 19, 2021) .......................................... 38, 45

# TABLE OF AUTHORITIES
(continued)

**Page**

*Doe v. WebGroup Czech Republic*,
  No. 21-cv-2428 (C.D. Cal. Jan 13, 2022)........................................................4, 5

*Goodyear Dunlop Tires Operations v. Brown*,
  564 U.S. 915 (2011) ......................................................................................7

*Fraihat v. U.S. Immigration & Customs Enforcement*,
  2020 WL 2759848 (C.D. Cal. Apr. 15, 2020). ...................................18, 19, 20

*Fraley v. Facebook, Inc.*,
  830 F. Supp. 2d 785 (N.D. Cal. 2011)...............................................................31

*Ghotra v. Bandila Shipping, Inc.*,
  113 F.3d 1050 (9th Cir. 1997).................................................................23, 24

*Global Master Int'l Grp., Inc. v. Esmond Natural, Inc.*,
  2021 WL 1324433 (C.D. Cal. Mar. 9, 2021) ...................................................29

*Grijalva v. Kevin Mason, P.A.*,
  2020 WL 13027072 (C.D. Cal. Dec. 30, 2019) .........................................22, 23

*Helm v. Alderwoods Grp., Inc.*,
  696 F. Supp. 2d 1057 (N.D. Cal. 2009).............................................................12

*Hibbs v. Winn*,
  542 U.S. 88 (2004) .........................................................................................36

*Humphrey v. GlaxoSmithKline PLC*,
  905 F.3d 694 (3d Cir. 2018) ..........................................................................29

*Hungerstation LLC v. Fast Choice LLC*,
  857 F. App'x 349 (9th Cir. 2021).....................................................................10

*Iconlab, Inc. v. Bausch Health Cos.*,
  828 F. App'x 363 (9th Cir. 2020)................................................................5, 8

*Johnson v. Mitchell*,
  2012 WL 1657643 (E.D. Cal. May 10, 2012)...................................................14

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Just Film, Inc. v. Buono,*
  847 F.3d 1108 (9th Cir. 2017) ................................................................. 30

*JW Gaming Development, LLC v. James,*
  2018 WL 4853222 (N.D. Cal. Oct. 5, 2018) .......................................... 34

*Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.,*
  391 F. Supp. 3d 959 (N.D. Cal. 2019) .................................................... 35

*Khokhar v. Yousuf,*
  2018 WL 1697059 (N.D. Cal. Mar. 30, 2018) ......................................... 1

*MadKudu Inc. v. U.S. Citizenship & Immigration Services,*
  2020 WL 5628968 (N.D. Cal. Sept. 14, 2020) ............................ 18, 19, 20

*Man-D-Tec, Inc. v. Nylube Prods. Co.,*
  2012 WL 1831521 (D. Ariz. May 18, 2012) ......................................... 9, 10

*In re Managed Care Litig.,*
  2009 WL 812257 (S.D. Fla. Mar. 26. 2009) ........................................... 33

*Martinez v. Manheim Cent. California,*
  2011 WL 1466684 (E.D. Cal. Apr. 18, 2011) ...................................... 13, 14

*Mattel, Inc. v. MGA Ent., Inc.,*
  782 F. Supp. 2d 911 (C.D. Cal. 2011) ............................................29, 30, 31

*Menzel v. Scholastic, Inc.,*
  2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) ......................................... 50

*MH Pillars Ltd. v. Realini,*
  2018 WL 1184847 (N.D. Cal. Mar. 7, 2018) ........................................... 27

*Mir v. Greines, Martin, Stein & Richland,*
  2015 WL 4139435 (C.D. Cal. Jan 13, 2015) ........................................... 10

*Mireskandari v. Daily Mail & Gen. Trust PLC,*
  2013 WL 12114760 (C.D. Cal. Jul. 13, 2013) ........................................... 5

-vii-
**REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO SEVER**

## TABLE OF AUTHORITIES
(continued)

**Page**

*Mujica v. AirScan Inc.*,
    771 F.3d 580 (9th Cir. 2014) ....................................................................49

*Mussnich v. Teixeira*,
    2021 WL 1570832 (C.D. Cal. Feb. 23, 2021) ......................................28, 29

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*,
    650 F.3d 1046 (6th Cir. 2011) ..................................................................49

*Oscar v. Univ. Students Co-op. Ass'n*,
    965 F.2d 783 (9th Cir. 1992) ..............................................................31, 32

*Paramount Pictures Corp. v. Omniverse One World Television, Inc.*,
    2019 WL 12381115 (C.D. Cal. Aug. 21, 2019) .........................................18

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ..................................................................13

*Perez v. DirecTV Grp. Holdings, LLC*,
    2019 WL 6362471 (C.D. Cal. July 23, 2019) ............................................33

*Persian Gulf Inc. v. BP W. Coast Prods. LLC*,
    225 F. Supp. 3d 1178 (S.D. Cal. 2016) ....................................................49

*Pilgrim v. General Motors Co.*,
    408 F. Supp. 3d 1160 (C.D. Cal. 2019) ......................................................3

*Prime Healthcare Centinela, LLC v. Kimberly-Clark Corp.*,
    2016 WL 7177532 (C.D. Cal. May 26, 2016) ............................................11

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ...........................................................*passim*

*Ratha v. Phatthana Seafood Co.*,
    2017 WL 8292391 (C.D. Cal. Dec. 21, 2017) ...........................................48

*Reitman v. Champion Petfoods USA, Inc.*,
    2018 WL 4945645 (C.D. Cal. Oct. 10, 2018) ..............................................3

**REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO SEVER**

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Renati v. Wal-Mart Stores, Inc.*,
    2019 WL 5536206 (N.D. Cal. Oct. 25, 2019) ....................................... 16, 17, 23

*Reynolds v. Binance Holdings Ltd.*,
    481 F. Supp. 3d 997 (N.D. Cal. 2020) ................................................... 14

*Rivers v. United States*,
    2019 WL 1959583 (S.D. Cal. May 2, 2019) ........................................ 45

*Rojas v. Brown*,
    2018 WL 4183269 (E.D. Cal. Aug. 30, 2018) ..................................... 22

*Ross v. Abbott Vascular Inc.*,
    2020 WL 4934487 (N.D. Cal. Apr. 6, 2020) ......................................... 9

*Ross v. Peters*,
    846 P.2d 1107 (Okla. 1993) .............................................................. 30

*S.E.C. v. City of Victorville*,
    2013 WL 12133651 (C.D. Cal. Nov. 14, 2013) ................................... 46

*S.J. v. Choice Hotels Int'l, Inc.*,
    473 F. Supp. 3d 147 (E.D.N.Y. 2020) ................................................ 43

*Samsung Elecs. Am., Inc. v. Chung*,
    2017 WL 635031 (N.D. Tex. Feb. 16, 2017) ....................................... 34

*Sever v. Alaska Pulp Corp.*,
    978 F.2d 1529 (9th Cir. 1992) ........................................................... 28

*Shimmick Constr. Co./Obayashi Corp. v. Officine Meccaniche Galletti-O.M.G. S.R.L.*,
    2014 WL 5847440 (S.D. Cal. Nov. 12, 2014) ....................................... 8

*Sims v. Opportunity Fin., LLC*,
    2021 WL 1391565 (N.D. Cal. Apr. 13, 2021) ..................................... 50

*Smagin v. Compagnie Monegasque de Banque*,
    2021 WL 2124254 (C.D. Cal. May 5, 2021) ....................................... 28

**REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO SEVER**

# TABLE OF AUTHORITIES
(continued)

**Page**

1

2

3
4
*Stage Nine Design, LLC v. Rock-It Cargo USA, LLC,*
    2021 WL 3565310 (E.D. Cal. Aug. 12, 2021) ................................... 12

5
6
*State Compensation Insurance Fund v. Khan,*
    2013 WL 12132027 (C.D. Cal. July 30, 2013) ................................. 26, 27, 49

7
8
*Sugarman v. Muddy Waters Cap. LLC,*
    2020 WL 633596 (N.D. Cal. Feb. 3, 2020) ........................................ 33

9
10
*Supplement Edge, Inc. v. One Brands, LLC,*
    2021 WL 787135 (D. Me. Mar. 1, 2021) ............................................ 7

11
*Symettrica Ent., Ltd. v. UMG Recordings, Inc.,*
    2019 WL 8806093 (C.D. Cal. Sept. 20, 2019) ............................ 6, 7, 8, 9

12
13
*Tanedo v. East Baton Rouge Parish School Board,*
    2012 WL 5378742 (C.D. Cal. Aug. 27, 2012) ............................... 47, 48

14
15
*Ulti-Mate Connectors, Inc. v. American Gen. Life Ins. Co.,*
    2015 WL 12734007 (C.D. Cal. Mar. 27, 2015) ................................ 34

16
17
*United States ex rel., Takemoto v. The Hartford Fin. Servs. Grp., Inc.,*
    157 F. Supp. 3d 273 (W.D.N.Y. 2016) ............................................ 50

18
19
*United States v. Botefuhr,*
    309 F.3d 1263 (10th Cir. 2002) ...................................................... 11

20
21
*United States v. Flanders,*
    752 F.3d 1317 (11th Cir. 2014) ...................................................... 46

22
*United States v. Juskowich,*
    2021 WL 5166564 (W.D. Pa. Nov. 5, 2021) .................................... 46

23
24
*United States v. Mongol Nation,*
    693 F. App'x 637 (9th Cir. 2017) ................................................ 27, 28

25
26
*Visendi v. Bank of America,*
    733 F.3d 863 (9th Cir. 2013) ...................................................... 17, 19

27

28

# TABLE OF AUTHORITIES
(continued)

**Page**

*Wal-Mart Stores, Inc. v. Dukes*,
　564 U. S. 338 (2011) ....................................................................... 19

*Waldrup v. Countrywide Financial Corp.*,
　2015 WL 93363 (C.D. Cal. Jan. 5, 2015)......................................... 49

*Whitaker v. Tesla Motors, Inc.*,
　985 F.3d 1173 (9th Cir. 2021) ......................................................... 49

*Yagman v. Kelly*,
　2018 WL 2138461 (C.D. Cal. Mar. 20, 2018) ........................... 27, 28

**Statutes**

18 U.S.C. § 1341......................................................................................... 33

18 U.S.C. § 1343......................................................................................... 33

18 U.S.C. § 1591...................................................................................*passim*

18 U.S.C. § 1595................................................................................... 43, 45

18 U.S.C. § 1596......................................................................................... 47

18 U.S.C. § 1956......................................................................................... 34

18 U.S.C. § 1957......................................................................................... 34

18 U.S.C. § 1965(c)..................................................................................... 24

18 U.S.C. § 2252......................................................................................... 32

Justice for Victims of Trafficking Act of 2015,
　Pub. L. 114-22, 129 Stat 227 § 118 (2015) ................................ 27, 28

Cal. Civ. Code § 3344.................................................................................. 31

**Court Rules**

Fed R. Civ. P. 4(k)(2) .............................................................................. 9, 10

REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO SEVER

## TABLE OF AUTHORITIES
(continued)

**Page**

Fed R. Civ. P. 8 ................................................................................ 5, 48, 49, 50

Fed R. Civ. P. 9(b) ................................................................................... 49, 50

Fed. R. Civ. P. 12(b)(6) .................................................................................. 2, 49

Fed. R. Civ. P.  20(a) ................................................................................ 15, 22

Fed. R. Civ. P.  23(b)(2) ................................................................................. 19

**Other Authorities**

161 Cong. Rec. S1403-02 ................................................................................. 38

161 Cong. Rec. S1596-02 ................................................................................. 38

H.R. Rep. No. 115-572 (2018) ........................................................................ 38

**REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO SEVER**

**INTRODUCTION**

Plaintiffs' Opposition confirms that their claims should be dismissed for the reasons set out in MindGeek's opening brief.  Rather than engage in the substance of MindGeek's arguments, Plaintiffs instead double down on the over-the-top rhetoric of their Complaint and insist that they should not be required to plead plausible claims against each Defendant until they have had the opportunity to conduct discovery.  But *ad hominem* attacks and assurances that Plaintiffs will meet their pleading burden at some later point are no cure for a defective complaint.

First, the Court lacks personal jurisdiction over the claims of all of the non-California Plaintiffs.  Plaintiffs attempt to dismiss this deficiency as merely "procedural."  However, "personal jurisdiction is not a mere technicality, but a prerequisite to a valid judgment," *Khokhar v. Yousuf*, 2018 WL 1697059, at *5 (N.D. Cal. Mar. 30, 2018), and is essential to protecting "traditional notions of fair play and substantial justice." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020), *cert. denied*, 142 S. Ct. 76 (2021).  The Complaint contains no allegations particular to the only two domestic MindGeek entities (neither of whom is a proper party to this case), and Plaintiffs completely ignore the Supreme Court's controlling precedent in *Bristol-Myers Squibb Co. v. Superior Court (BMS)*.  137 S. Ct. 1773 (2017).  In so doing, Plaintiffs concede there is no jurisdiction over the majority of the MindGeek entities if their contacts with the forum are considered individually (as required under *BMS*) but insist these independent corporate structures—which are supported by the record in this case—should be disregarded based on nothing more than Plaintiffs' *ipse dixit*.  Their allegations, however, fall far short of what is required to overcome the strong presumption of corporate separateness.

Second, the claims of the thirty-four Plaintiffs are improperly joined in this lawsuit because they do not arise from the same transaction or occurrence such that permissive joinder is appropriate.  To the contrary, there are myriad variations among

1    Plaintiffs that render litigating these cases together impracticable.[1]

2        Third, Plaintiffs' Opposition does not meaningfully address the defects in their

3    RICO claims. Plaintiffs do not allege a common purpose, an associated-in-fact

4    enterprise, a RICO injury to business or property, or the necessary predicate acts to

5    properly plead a RICO claim. Each of these deficiencies requires dismissal.

6        Fourth, Plaintiffs have not adequately pleaded a *prima facie* TVPRA claim for

7    each Plaintiff. All of Plaintiffs' direct liability claims must be dismissed because they

8    have not alleged that MindGeek advertised any Plaintiff or that MindGeek recruited,

9    enticed, harbored, or maintained any Plaintiff. And Plaintiffs' beneficiary liability

10   claims fare no better because there are no allegations that MindGeek participated in

11   the specific trafficking of Plaintiffs or even had constructive knowledge of the

12   underlying trafficking.

13       Finally, although the Court must construe Plaintiffs' well-pleaded allegations

14   in the light most favorable to them when deciding MindGeek's motion under Rule

15   12(b)(6), the allegations must be plausible on their face. Plaintiffs' fantastical

16   allegations about a criminal sex trafficking enterprise, shell companies, and a "Bro-

17   Club" are less than plausible. That is especially so when viewed along with other

18   allegations, including that "the MindGeek business model looks like other internet

19   media business models like YouTube" (Compl. ¶ 83) and that "MindGeek expended

20   substantial resources and effort" on "comprehensive terms of service, policies, and

21   customer service functions … (id. ¶ 124). In fact, Plaintiffs acknowledge that in early

22   2020, MindGeek stated it was developing "state-of-the-art, comprehensive

23   safeguards" to combat CSAM and other unlawful content that include digital

24   fingerprinting and automated detection technologies. *Id.* ¶ 451. MindGeek does in

25   fact have such safeguards and more, and devotes extensive additional human and

26

27   [1] With the Court's permission (Dkts. 99-100), MindGeek is submitting one
     consolidated Reply Brief in support of both the Motion to Dismiss (Dkts. 70 and 72)
28   and Motion for Severance (Dkt. 75).

**REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO SEVER**

technological resources to keeping unlawful content off of its websites. Under these circumstances, is it plausible that MindGeek would engage in the sort of conduct alleged in the Complaint? The short answer is no; the Complaint must therefore be dismissed for the reasons discussed below and in MindGeek's moving briefs.

## ARGUMENT

## I.    The Court Lacks Personal Jurisdiction Over the Foreign MindGeek Entities

The seminal Supreme Court opinion on personal jurisdiction is *Bristol-Myers Squibb Co. v. Super. Ct. (BMS)*, 137 S. Ct. 1773 (2017). It requires that **each** of the 34 claimants independently establish that this Court may exercise either general or specific personal jurisdiction over **each** of the Defendants. In nearly all instances, general jurisdiction is limited to the state where the company is headquartered or incorporated. *Id.* at 1776. And "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* at 1780 (citation omitted). It is by now well-established that non-California Plaintiffs who sustained injuries in their home states cannot sue foreign defendants in a California court. *See, e.g.*, *Pilgrim v. General Motors Co.*, 408 F. Supp. 3d 1160, 1167-68 (C.D. Cal. 2019); *Reitman v. Champion Petfoods USA, Inc*., 2018 WL 4945645, at *5 (C.D. Cal. Oct. 10, 2018).

Plaintiffs at all times "bear[] the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc*., 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted). Yet Plaintiffs' Opposition does not even acknowledge, cite, or address *BMS* and its progeny ***at all***. Nor do Plaintiffs dispute that fifteen Plaintiffs reside in other states and fourteen are foreign nationals with no connection to California. MindGeek's Mem. of Law in Support of Mot. to Dismiss ("MG Br.") at 4. These Plaintiffs cannot demonstrate personal jurisdiction to bring their claims against the MindGeek entities in California and should be dismissed from this lawsuit.

Instead of addressing *BMS* and the other controlling authorities, Plaintiffs

proffer a series of theories as to why jurisdiction over the non-California Plaintiffs' claims is appropriate.  None are availing.

### A.    MG Global Entertainment and MindGeek USA Do Not Confer General Jurisdiction over the Foreign MindGeek Entities.

Plaintiffs tacitly concede that they cannot establish the necessary relevant connections between the non-California MindGeek entities and California.  Instead, Plaintiffs argue that this is unimportant because they can establish general jurisdiction over the two domestic MindGeek entities with offices in California—MG Global Entertainment and MindGeek USA—and that is sufficient to establish jurisdiction over the Foreign MindGeek entities under an "agency and alter ego theory."  Opp. at 68-70.  This is most assuredly incorrect.

As a threshold issue, MindGeek USA and MG Global Entertainment do not even belong in this case.  The undisputed record establishes that MG Global Entertainment is responsible for distributing licensed content to businesses like cable operators, hotels, and cruise ships; and MindGeek USA's operations are dedicated solely to distribution of DVDs.  Decl. of Andreas Alkiviades Andreou in Support of the MindGeek Defs.' Mot. to Dismiss ("Andreou Decl.") ¶¶ 14, 21-22.  Earlier this month, another court within this District dismissed claims against a number of foreign and U.S. based entities who purportedly operate a different adult-oriented website, XVideos.  *See* Am. Order, *Doe v. WebGroup Czech Republic*, No. 21-cv-2428 (C.D. Cal. Jan 13, 2022), ECF No. 162.  In *WebGroup*, the plaintiff brought claims against nine Czech entities and two U.S. entities, alleging that they were effectively a single enterprise such that the court need not conduct an independent jurisdictional analysis of the foreign defendants.  *Id.* at 5.  The court rejected this argument and found that it lacked personal jurisdiction over the foreign defendants.  *Id.* at 15-16.  The court further found that the plaintiff did not adequately plead her claims against the two-U.S. based entities because she "failed to relate allegations" about those entities to the case at hand.  *Id.* at 17.  The same is true here.  Plaintiffs do not plead any facts to

support their contention that either of these two companies had anything to do with the Plaintiffs. Accordingly, as was the case in *WebGroup*, MindGeek USA and MG Global Entertainment should be dismissed under Rule 8. MG Br. at 7-8.[2]

Moreover, Plaintiffs have not established and cannot establish any basis for alter ego liability in this case. "There is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary." *Mireskandari v. Daily Mail & Gen. Trust PLC*, 2013 WL 12114760, at \*5 (C.D. Cal. Jul. 13, 2013). "Disregarding the corporate entity is recognized as an extreme remedy." *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995). Therefore, Plaintiffs must present clear evidence establishing both "(1) 'such unity of interest and ownership' between parent and subsidiary 'that the separate personalities of the two entities no longer exist' and (2) the 'failure to disregard' the separate entities 'would result in fraud or injustice.'" *Iconlab, Inc. v. Bausch Health Cos.*, 828 F. App'x 363, 364 (9th Cir. 2020) (quoting *Ranza*, 793 F.3d at 1073).

Plaintiffs have not established either element. The unchallenged record in this case shows that the MindGeek entities are independent companies whose contacts cannot be imputed to each other for the purpose of establishing personal jurisdiction. Specifically, MindGeek has proffered unrebutted evidence that the MindGeek entities are all appropriately capitalized and adhere to all relevant corporate formalities. MG Br. at 6-7, 13-15. This evidentiary showing flips the burden to Plaintiffs to establish jurisdiction through competent record evidence. *AMA Multimedia*, 970 F.3d at 1207. Plaintiffs are thus obliged to come forward with evidence that supports their alter ego theory. They have not done so.

The first prong of the alter ego test requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 983 (N.D. Cal. 2016)

---

[2] Plaintiffs similarly do not connect any activity of MindGeek S.A.R.L. or MG Premium with the facts of any Plaintiff's case.

1   (citation omitted).  This, in turn, requires such "pervasive control" that it can only be

2   met where a parent corporation "dictates every facet of the subsidiary's business—

3   from broad policy decisions to routine matters of day-to-day operation." *Id.*  "Total

4   ownership and shared management personnel are alone insufficient to establish the

5   requisite level of control." *Ranza*, 793 F.3d at 1073 (citing *Harris Rutsky & Co. Ins.*

6   *Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003)).  Nor can the

7   first prong be met by only showing "an active parent corporation involved directly in

8   decision-making about its subsidiaries' holdings" where the corporations "observe all

9   of the corporate formalities necessary to maintain corporate separateness." *Corcoran*,

10  169 F. Supp. 3d at 983 (citation omitted).

11          There is absolutely nothing like that in play here.  In fact, MindGeek S.A.R.L.

12  is a holding company without employees or operations; it does not exercise control

13  over the day-to-day decisions of its subsidiaries.  Moreover, neither MG Premium nor

14  Freesites (which operates Pornhub) has a parent/subsidiary relationship with MG

15  Global Entertainment or MindGeek USA; they are merely affiliated companies and

16  their contacts with the forum cannot be aggregated for jurisdictional purposes.  In

17  *Symettrica Ent., Ltd. v. UMG Recordings, Inc.*, 2019 WL 8806093 (C.D. Cal. Sept.

18  20, 2019) (Carney, J.), plaintiffs sought to impute the general jurisdiction contacts of

19  a corporate California resident to bring claims against co-defendant directors under

20  an alter ego theory.  Like Plaintiffs here, "[t]he only support offered for th[o]se

21  conclusions [we]re allegations—made upon information and belief—that [the entity]

22  [was] undercapitalized, fail[ed] to undertake corporate formalities, and that the

23  director defendants co-mingled [the entity's] funds with their own." *Id*. at *4.  As

24  MindGeek has done here, the defendants submitted declarations that showed the

25  corporation was, in fact, adequately capitalized and operated in accordance with the

26  appropriate corporate procedure. *Id.*  This Court found that the plaintiffs did not meet

27  their burden of establishing an alter ego relationship because they "[did] not offer any

28  response" to the declaration.  The Court further found that there was "no colorable

1    basis for granting jurisdictional discovery," concluding that "further discovery
2    concerning the corporate structure … would amount to nothing more than a fishing
3    expedition."  *Id*. at *5 (citation omitted).

4         Likewise, in *Corcoran* the plaintiffs argued that the California contacts of the
5    CVS Pharmacies should be imputed to its Rhode Island subsidiary CVS Health
6    because the two companies were alter egos of each other.  169 F. Supp. 3d at 983.
7    The court rejected this argument, holding that it did not have personal jurisdiction
8    over CVS Health.  This was true despite the fact that the *Corcoran* plaintiffs supported
9    their alter ego claims with a declaration demonstrating that the CVS entities shared
10   "senior management team" members and executives, "including the head of human
11   resources and chief legal officer," that the parent provided "management and
12   administrative services to support the overall operations" of the subsidiary, that the
13   parent's "website presents itself as one integrated company," and that employees of
14   the subsidiary had interactions with and were identified as having discoverable
15   information related to the program directly at issue in that suit.  *Id*. at 982.

16        Plaintiffs assert that MG Global's provision of services to other MindGeek
17   entities "directly supports" their alter ego theory.  Opp. at 73.  But common and
18   purposeful business decisions, like fulfilling contracts between affiliated entities,
19   Andreou Decl. at ¶ 24, are "nothing more than the kind of [business] activity described
20   as inadequate in, among other cases, *Goodyear* [*Dunlop Tires Operations v. Brown*,
21   564 U.S. 915 (2011)] and *Bristol-Myers Squibb*," and cannot establish personal
22   jurisdiction in California.  *See Supplement Edge, Inc. v. One Brands, LLC*, 2021 WL
23   787135, at *4 (D. Me. Mar. 1, 2021) (denying jurisdictional discovery).  In *Ranza*,
24   the Ninth Circuit refused to treat a foreign subsidiary of Nike as an alter ego of its
25   parent company despite the fact that the foreign subsidiary routinely loaned
26   employees to Nike and acted as its agent in Europe through various business
27   arrangements. 793 F.3d at 1069-70.  There, as here, the plaintiff presented no evidence
28   that the two companies failed to observe their respective corporate formalities,

1  although Nike was heavily involved with the daily business of its subsidiary. *Id.* at

2  1074. Even where involvement is substantial, that "is insufficient to negate the formal

3  separation between … entities such that they are functionally one single enterprise."

4  *Id.* at 1075. The contracts and services provided in *Ranza* were far more extensive

5  than those alleged here and, like in that case, the allegations fall well short of what is

6  necessary to demonstrate an alter ego relationship.[3]

7       Plaintiffs' alter ego theory fails for a separate but independently dispositive

8  reason: Plaintiffs have not demonstrated and cannot demonstrate that "'failure to

9  disregard' the separate entities 'would result in fraud or injustice.'" *Iconlab, Inc.*, 828

10  F. App'x at 364 (quoting *Ranza*, 793 F.3d at 1073). This is not a situation where the

11  only proper defendant is absent. Plaintiffs have sued the operator of the websites at

12  issue in this lawsuit—Freesites. Nowhere have Plaintiffs alleged how "fraud or

13  injustice" would occur unless the Court were to ignore the corporate separateness of

14  the foreign MindGeek entities. To the contrary, "[t]here are no facts before the Court

15  that suggest Plaintiff[s] cannot be made whole through a lawsuit against [Freesites]."

16  *Shimmick Constr. Co./Obayashi Corp. v. Officine Meccaniche Galletti-O.M.G.*

17  *S.R.L.*, 2014 WL 5847440, at \*7 (S.D. Cal. Nov. 12, 2014); *see also Symettrica*, 2019

18

---

19  [3] Plaintiffs contend without citation to any authority that the Court should disregard
20  the fact that each MindGeek entity is a fully functional corporate entity (with the
   obvious exceptions of the two non-existent entities that Plaintiffs refuse to drop from
21  this suit) because MindGeek does not provide a "*bona fide* business purpose" for
   every entity sued. Opp. at 73. This is incorrect. MindGeek has, in fact, provided the
22  Court with a declaration setting forth the relevant facts regarding each defendant
23  corporation, including what the operating companies do. *See, e.g.,* Andreou Decl. at
   ¶ 15, 23-24. For example, the Andreou Declaration sets out that MindGeek USA
24  Inc.'s sole function is to distribute DVD-based content pursuant to the terms of one
   contract," and therefore has nothing to do with the content at issue in this case. *Id.* at
25  ¶ 14. Similarly, MG Premium Ltd is "responsible for operating websites referred to
26  as 'paysites,' which offer certain subscription-based content," but "does not operate
   PornHub or PornHub Premium, the ModelHub program or the Content Partner
27  Program" referred to in the Complaint. *Id.* at ¶ 17.
28

WL 8806093, at *5.  Freesites is not challenging the exercise of specific personal jurisdiction over it in California with respect to the California Plaintiffs' claims.  The domestic non-California Plaintiffs can bring suit against Freesites in their home jurisdictions.  And the ex-U.S. Plaintiffs have no right to bring these claims in the U.S. at all.  Plaintiffs have accordingly not alleged that failure to disregard the separate entities would result in fraud or injustice in this matter and their alter ego theory fails as a matter of law.

### B.    Rule 4(k)(2) and RICO Do Not Confer Personal Jurisdiction.

Plaintiffs argue in the alternative that if "the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)."  Opp. at 74 (citation omitted).  But MindGeek does, in fact, identify where the domestic non-California Plaintiffs can sue, namely in the U.S. jurisdictions where they were allegedly harmed.  MG Br. at 12-13.  Thus, Rule 4(k)(2) is simply inapposite to these Plaintiffs' claims.

Plaintiffs also incorrectly assert that MindGeek does "not address Rule 4(k)(2) jurisdiction over the non-US Plaintiffs."  Opp. at 75 n.41.  In fact, MindGeek did address this issue and demonstrated that the ex-U.S. Plaintiffs cannot establish jurisdiction under Rule 4(k)(2) because the rule only applies if "exercising jurisdiction is consistent with the United States Constitution and laws," and the ex-U.S. Plaintiffs' claims do not arise out of or relate to any of the MindGeek entities' U.S.-related activity.  MG Br. at 12-13.  Plaintiffs make much of the fact that MindGeek allegedly had "servers" in the U.S., but the existence of a foreign company's servers in the U.S., alone, is not enough to support personal jurisdiction here.  *See Ross v. Abbott Vascular Inc.*, 2020 WL 4934487, at *7 (N.D. Cal. Apr. 6, 2020) ("Plaintiffs provide no case law to support their claim that an international company's servers establish minimum contacts with the United States.").  "If the mere location of a server could create personal jurisdiction, any state where a server is located would have personal jurisdiction over any user of that server." *Man-D-Tec, Inc. v. Nylube Prods. Co.*, 2012

**REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO SEVER**

WL 1831521, at *2 (D. Ariz. May 18, 2012).  The Ninth Circuit has "never decided that personal jurisdiction is proper over a private foreign entity solely because that entity engaged in tortious conduct from a location outside of the [U.S.] by remotely accessing servers located in the [U.S.].  Likewise, no authority supports the proposition that the act of using a third-party company's server in the [U.S.] to host illegally-obtained information, without more, is sufficient to convey personal jurisdiction." *Hungerstation LLC v. Fast Choice LLC*, 857 F. App'x 349, 351 (9th Cir. 2021).

Plaintiffs further argue that the fact that they are alleging a RICO conspiracy provides jurisdiction based on "national contacts" even though Plaintiffs admittedly do not have sufficient California contacts.  Opp. at 75.  But the lone case Plaintiffs cite for that proposition, *Mir v. Greines, Martin, Stein & Richland*, 2015 WL 4139435, at *12 (C.D. Cal. Jan 13, 2015), *aff'd*, 676 F. App'x 699 (9th Cir. 2017), holds that a plaintiff seeking to use national contacts must show, *inter alia*, that "there is no other district in which a court will have personal jurisdiction over the alleged co-conspirators."  *Id*.  Insofar as the non-California domestic Plaintiffs can sue in the jurisdictions where they were allegedly harmed, those Plaintiffs cannot establish that the exercise of jurisdiction by this Court is appropriate.  And the ex-U.S. Plaintiffs, who fail to allege injury to business or property in the U.S., cannot even assert a RICO claim.  *See* Part III.C.1, *infra*.

## C.    Plaintiffs' Remaining Fallback Arguments Are All Meritless.

Apparently recognizing that their alter ego and Rule 4(k)(2) arguments are legally untenable, Plaintiffs offer a series of fallback arguments, each of which lacks any merit.  First, Plaintiffs contend that the Court could exercise pendent personal jurisdiction over the non-California Plaintiffs because the Court has jurisdiction over the five California Plaintiffs' claims.  Opp. at 75-76.  But this is the exact argument that *BMS* rejected.  As one court explained:  the doctrine of pendent jurisdiction does not apply "to situations like the one here where Plaintiffs seek to piggyback personal

jurisdiction over one set of plaintiffs' claims (the non–California plaintiffs) onto claims by a different set of plaintiffs (the California plaintiffs), notwithstanding that the former do not arise from or relate to Defendants' contacts in the forum state." *Prime Healthcare Centinela, LLC v. Kimberly-Clark Corp.*, 2016 WL 7177532, at *2 (C.D. Cal. May 26, 2016) (citing *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004)). Therefore, "[w]hile some courts have exercised pendent personal jurisdiction absent an anchoring claim under a federal statute authorizing nationwide service, ... the Ninth Circuit has never endorsed that approach; nor has it endorsed using this doctrine to extend a court's personal jurisdiction to reach claims asserted by a separate plaintiff." *Carlson v. United Natural Foods, Inc.*, 2021 WL 3616786, at *4 (W.D. Wash. Aug. 14, 2021).

The two cases cited by Plaintiffs in ostensible support of their pendant jurisdiction theory predate *BMS* and do not support the proposition that courts may extend personal jurisdiction over a separate party's claims that would otherwise not be subject to the court's jurisdiction. Rather, they stand for the uncontroversial proposition that a federal court may exercise pendent jurisdiction over state law claims if the court has jurisdiction over related federal claims brought by the same party subject to the court's jurisdiction. In *Action Embroidery*, the Court recognized that "[p]endent personal jurisdiction is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction." 368 F.3d at 1180-81. Similarly, in *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002), that court held "[p]endent personal jurisdiction, like its better-known cousin, supplemental subject matter jurisdiction, exists when a court possesses personal jurisdiction over a defendant for one claim, [but] lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact." Pendant jurisdiction is therefore inappropriate here because, "[a]s in *Bristol-Myers*, nothing in the current record

1  suggests that [out-of-state plaintiffs'] claims arose out of any links between
2  Defendants and [California]."  *Carlson*, 2021 WL 3616786, at *3; *see also Demaria*
3  *v. Nissan N. Am., Inc.*, 2016 WL 374145, at *7 (N.D. Ill. Feb. 1, 2016) ("The
4  [complaint] does not allege that anything [the defendant] did in Illinois had anything
5  to do with any of the other plaintiffs' claims, or that any of their claims arose out of
6  activities by [the defendant] tied to Illinois.  Thus, at most ... personal jurisdiction
7  would exist only as to [the Illinois plaintiff].").

8      Plaintiffs' pendent jurisdiction theory fails for a second, and independently
9  dispositive reason:  there is no common nucleus of operative facts among all
10  Plaintiffs.  *See Action Embroidery*, 368 F.3d at 1180.  As enumerated in MindGeek's
11  Motion to Sever and detailed below, each Plaintiff's purported trafficking and RICO
12  claims implicate dozens of unrelated facts and legal issues.  *See* MG Br. at 1-5, 35-
13  38; *infra* Part II, Part III.A-B.

14      Second, Plaintiffs argue without citation to any authority, that the foreign
15  MindGeek defendants have somehow conceded jurisdiction because they did not
16  challenge it in other lawsuits.  This is false.  While courts ***may*** consider prior actions
17  in which the moving party was a ***plaintiff*** in a litigation, as evidence of purposeful
18  availment, *see e.g., Stage Nine Design, LLC v. Rock-It Cargo USA, LLC*, 2021 WL
19  3565310, at *4 (E.D. Cal. Aug. 12, 2021), the converse is not true:  the fact that a
20  party has not previously challenged jurisdiction in a prior lawsuit is meaningless.
21  Given the myriad reasons a party may or may not raise an argument in litigation, a
22  choice not to raise a jurisdictional defense in one suit has no bearing on its ability to
23  raise it in another.  *See Helm v. Alderwoods Grp., Inc.,* 696 F. Supp. 2d 1057, 1068
24  (N.D. Cal. 2009) ("Plaintiffs point out that [defendant] has been named as a defendant
25  in 42 lawsuits in California ... but provide no information about whether courts in
26  those cases determined that the exertion of personal jurisdiction over [defendant] was
27  proper.").

28

### D.    Jurisdictional Discovery is Unwarranted Because Plaintiffs Have Not Established a Colorable Basis for Personal Jurisdiction.

Plaintiffs argue, in the alternative, that "in the event that the Court finds that the complaint fails to establish jurisdiction, plaintiffs are entitled to jurisdictional discovery." Opp. at 70. But jurisdictional discovery is not a consolation prize for a plaintiff that sues in the wrong court. Rather, a plaintiff seeking discovery is required "to establish a 'colorable basis' for personal jurisdiction before discovery is ordered." *Martinez v. Manheim Cent. California*, 2011 WL 1466684, at *4 (E.D. Cal. Apr. 18, 2011) (collecting cases). Where, as here, "a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir. 1995)); *see also Blue Diamond Growers v. Texas Best Smokehouse, Inc.*, 2008 WL 5386762, at *2 (E.D. Cal. Dec. 22, 2008) ("Since Plaintiff does not indicate why such discovery would be fruitful, the request is denied.").

That is precisely the situation here. Plaintiffs have failed to allege a colorable basis for jurisdiction and have failed to respond substantively to the sworn statement in the record supporting MindGeek's positions on jurisdiction. That sworn statement demonstrates that MindGeek S.à.r.l., MG Premium, MindGeek USA and MG Global Entertainment are improper parties because each entity's individual operations are sufficiently independent and are not connected to the Plaintiffs; MindGeek S.à.r.l. and MG Premium have no connection to California; and RK Holdings USA and TrafficJunky Inc. do not even exist. *See* MG Br. at 7-8, 13-15.

To avoid this conclusion, Plaintiffs first argue that jurisdictional discovery is appropriate in light of their all-purpose alter ego theory. Opp. at 77. "While courts have permitted jurisdictional discovery in the alter ego context," those that have done so have "required that plaintiffs offer some details 'supporting [their] assertion[s] that

1    discovery' will establish facts showing defendants are subject to the court's

2    jurisdiction." *Reynolds v. Binance Holdings Ltd*., 481 F. Supp. 3d 997, 1010 (N.D.

3    Cal. 2020) (citations omitted).  For example, in *Brophy v. Almanzar*, 359 F. Supp. 3d

4    917 (C.D. Cal. 2018) (Carney, J.), relied upon by Plaintiffs, this Court permitted

5    limited jurisdictional discovery but only after the plaintiff had pleaded some

6    jurisdictional facts connecting his claim with California, thereby creating a fact

7    question as to whether the Court had personal jurisdiction.  *Id.* at 925.  By contrast,

8    here, Plaintiffs have not provided any support for their alter ego theory whatsoever

9    and cannot go on a fishing expedition without having done so.

10         Plaintiffs next assert that discovery is appropriate because jurisdictional

11    "information concerning the activities and contacts of each entity is uniquely within

12    defendants' possession."  Opp. at 77.  However, the Ninth Circuit is clear that

13    Plaintiffs are not entitled to jurisdictional discovery when the request is "based on

14    little more than a hunch that it might yield jurisdictionally relevant facts."  *Boschetto*

15    *v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008); *Barantsevich v. VTB Bank*, 954 F.

16    Supp. 2d 972, 997 (C.D. Cal. 2013); *Martinez*, 2011 WL 1466684, at *3.  That is

17    particularly so where "it is not clear what discovery plaintiff[s] intend[] to conduct."

18    *Johnson v. Mitchell*, 2012 WL 1657643, at *7 (E.D. Cal. May 10, 2012).[4]

19

20

---

21    [4] While the relevant facts regarding the MindGeek Defendants are answered fully

22    through the Andreou Declaration, *see* Part I.A, *supra*, Plaintiffs have yet to provide

23    identifying information on any of the 33 Does who bring suit here.  Given that the

24    group of claimants includes individuals from over a dozen different states and
countries, with few if any common links between the alleged persons or conduct

25    underlying those claims, additional facts related to each Doe plaintiff would likely be
necessary to determine if their claims have any substantive connection to California.

26    Should the Court decide to delay dismissal of the non-California Plaintiffs' claims

27    pending jurisdictional discovery, which, as discussed below, is unwarranted,
MindGeek requests leave to conduct jurisdictional discovery proportional to any

28    granted to Plaintiffs.

## II.    The Court Should Grant Severance Because Plaintiffs Do Not Meet Rule 20(a)'s Requirements and Joinder in This Action Does Not Comport with Fundamental Fairness and Due Process.

Plaintiffs' Opposition confirms that they have not demonstrated and cannot demonstrate (as is their burden) that their claims arise from the same transaction or occurrence or that there are any bona fide issues of fact or law common to all Plaintiffs.  Indeed, Plaintiffs do not dispute, and entirely ignore, that there are vast material differences among Plaintiffs and their relevant transactions or occurrences that will necessarily be implicated by the adjudication of their claims.  *See* Opp. at 4-6.  Plaintiffs also do not dispute—and do not substantively address—that the 34 Plaintiffs have alleged *eighteen* ostensibly separate claims under state and federal law that are neither uniform nor consistent across all Plaintiffs.  *Id.* at 5, 9-12.  Or that those claims will require the Court to analyze at least twelve states' laws, as well as the laws of three foreign nations.  *Id.*

Instead, Plaintiffs contend that none of those material differences, and the resulting difficulties that they will create, should factor into the misjoinder analysis because the "claims all stem from a systemic pattern of misconduct—the MindGeek Defendants' creation of a massive sex trafficking enterprise to maximize SEO and its profits."  *Id.* at 94, 82.  Plaintiffs' argument fails under Ninth Circuit law (which Plaintiffs largely ignore), because notwithstanding their assertion of a "systemic pattern of misconduct," their claims will require highly individualized attention to determine, among other things, whether the purported "pattern of misconduct" caused Plaintiffs' alleged injuries.  The Court should thus sever these actions and dismiss the claims of Does 1 through 33.

### A.    Plaintiffs Have Not Established that Their Claims Satisfy Either Requirement of Rule 20(a).

Plaintiffs' Opposition is devoid of a response as to why the separate claims of 34 different Plaintiffs can be manageably joined in a single action given the myriad

factual and legal differences among Plaintiffs' claims against MindGeek. Rather, Plaintiffs' sole basis as to why the 34 Plaintiffs' claims arise out of the same transaction or occurrence, and share a common question of law or fact, is that MindGeek is involved in a pattern and practice of sex trafficking that ensnared all Plaintiffs. Specifically, Plaintiffs allege that MindGeek's liability arises from its pattern of allegedly "encouraging and setting a road map for traffickers to upload child pornography and other non-consensual content"; "the systemic reformatting and uploading of unlawful videos to its sites;" "the pattern and practice of transferring illegal content to other MindGeek-owned tubesites, even after such content was purportedly removed; and the coordinated effort to conceal these criminal activities." Opp. at 82.

Plaintiffs' contention, however, is without merit because "allegations of generally applicable practices and policies" are insufficient to demonstrate that Plaintiffs' claims arise out of the same transaction or occurrence where, as here, the Court would need to conduct an individualized analysis to determine whether each Plaintiff was harmed by those practices and policies. *Renati v. Wal-Mart Stores, Inc.*, 2019 WL 5536206, at \*5 (N.D. Cal. Oct. 25, 2019). The "single transaction or occurrence requirement is not met where plaintiffs would have to prove their claims or defendants would have to litigate their defenses on an individualized basis." *Corley v. Google, Inc.*, 316 F.R.D. 277, 284 (N.D. Cal. 2016).[5]

That Plaintiffs' interactions with MindGeek were not uniform (a fact Plaintiffs do not dispute) unequivocally illustrates that they will need highly individualized proof to demonstrate that each of the 34 Plaintiffs was subjected to, and injured as a

---

[5] *See also Calm Ventures LLC v. Newsom*, 2021 WL 5049105, at \*2-3 (C.D. Cal. Feb. 18, 2021) (rejecting argument that plaintiffs' claims arose out of the same transaction or occurrence because all plaintiffs were subject to the same Executive Orders entered and enforced by defendants, and that in light of plaintiffs' various factual differences, to prevail, each plaintiff would "need to undertake a highly individualized analysis" to prove its claims) (internal quotations and citation omitted).

1    result of, MindGeek's purported "systemic pattern of misconduct." Plaintiffs'

2    Opposition also fails to refute (or even address) that regardless of the assertion of a

3    "systemic pattern of misconduct," Plaintiffs' claims will nevertheless require highly

4    individualized analyses regarding, among other things, (i) their state law privacy-

5    based claims that will vary according to their residence (Opp. at 10); (ii) their state

6    law unjust enrichment claims that differ depending on the Plaintiffs' state of residence

7    (*id.* at 11); (iii) their standing to assert civil RICO claims (*id.* at 12); and (iv) their

8    claims for violation of federal sex trafficking laws (*id.*). In response, MindGeek will

9    also need to undertake a highly individualized analysis to defend against each of

10    Plaintiffs' claims. Thus, "[b]ecause each plaintiff's claim requires an individualized

11    inquiry, they do not arise from the same transaction or occurrence, despite the

12    [purported] overlap in their factual allegations." *Renati*, 2019 WL 5536206, at *5.

13    　　　Plaintiffs' primary response to the numerous Ninth Circuit and district court

14    cases cited in MindGeek's brief that consistently reject Plaintiffs' "systematic

15    conduct" argument is to ignore them. For instance, Plaintiffs reduce their entire

16    discussion of the Ninth Circuit's benchmark ruling in *Visendi v. Bank of America,* 733

17    F.3d 863 (9th Cir. 2013), to a single sentence in a footnote, arguing that it is

18    inapplicable because that case implicated "over 100 different loan transactions." Opp.

19    at 82-83 n.47. But the *Visendi* Court's conclusion was based on a *qualitative* analysis

20    of the plaintiffs' claims. In holding that these claims could not be joined in a single

21    action, the court specifically rejected the precise argument that Plaintiffs are

22    advancing here, namely that joinder was proper because "Defendants' misconduct

23    was 'regular and systematic.'" *Visendi*, 733 F.3d at 870. The current claims against

24    MindGeek are at least as complicated as the ones deemed too disparate to be joined

25    in *Visendi*. Here, Plaintiffs allege there were at least dozens of different videos posted

26    by about thirty different non-party traffickers that allegedly victimized each Plaintiff

27    in different ways, at different times, and in different states and countries. "Factual

28    disparities of the magnitude alleged are too great to support permissive joinder." *Id.*

Plaintiffs repeat their reduce-to-a-footnote strategy, suggesting that there is some fatal conflict between *Blackman v. Teespring, Inc.,* 2019 WL 7832600 (N.D. Cal. July 12, 2019) (cited by MindGeek), and *Paramount Pictures Corp. v. Omniverse One World Television, Inc.*, 2019 WL 12381115 (C.D. Cal. Aug. 21, 2019), which they contend "came to the opposite conclusion on very similar facts." Opp. at 82-83, n.47. This representation is demonstrably false. *Paramount Pictures* involved a copyright suit by several movie and television studios alleging that the defendants (through an intermediary) pirated the plaintiffs' premium cable and other products and sold them to consumers through the defendants' software application or streaming cable boxes. 2019 WL 12381115, at *2-3. The court held that severance was unwarranted because the defendants admitted that they obtained the allegedly pirated content from a single source and could not "offer any evidence establishing … that the evidence underlying each Plaintiff['s] copyright claims will *likely* differ materially." *Id.* (emphasis in the original).

*Blackman* was also a copyright case but that is where any perceived similarity to *Paramount Pictures* begins and ends. As is the case here, the plaintiffs in *Blackman* attempted to join suits from foreign and domestic plaintiffs claiming that such joinder was necessary to "expose" the "systematic infringement of their artwork." *Blackman,* 2019 WL 7832600, at *2. The court disagreed, holding that the plaintiffs' allegations of "widespread and systematic" misconduct did not overcome the multiple factual disparities that made joinder improper. *Id.* So, too, here.

The cases that Plaintiffs rely upon—*Fraihat, MadKudu*, *Almont*, and *Ardolf*—further illustrate why severance is mandated in this case. Opp. at 84. In *Fraihat v. U.S. Immigration & Customs Enforcement*, plaintiffs—immigration detainees with serious health conditions and two organizations that provide services to detainees—brought a putative class action against several federal agencies and officials, claiming that these defendants failed to ensure minimum lawful conditions at immigration detention facilities. 2020 WL 2759848, at *12 (C.D. Cal. Apr. 15, 2020). Crucially,

**REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO SEVER**

the plaintiffs sought only declaratory and injunctive relief aimed at implementing a systemwide plan to improve conditions at the detention facilities.  Such a request for uniform injunctive and declaratory relief can provide intraclass cohesion and ameliorate the need to address individual differences since all plaintiffs and absent class members will receive the same uniform relief, i.e., a declaration or injunction. *See Wal-Mart Stores, Inc. v. Dukes,* 564 U. S. 338, 360 (2011) ("Rule 23(b)(2) [which permits a court to certify an injunctive relief class] applies only when a single injunction or declaratory judgment would provide relief to each member of the class.").  Conversely, where, as here, the plaintiffs are seeking individualized remedies like damages, even the *Fraihat* court recognized that severance is required: "Defendants' request to sever claims would hold water if Plaintiffs were seeking highly individualized accommodations for their particular disabilities or conditions." 2020 WL 2759848, at *11; *see also* MindGeek's Mem. of Law in Sup. Of Mot. to Sever ("Sever Br.") at 12-13 & n.3.

*MadKudu Inc. v. U.S. Citizenship & Immigration Services* is even more straightforward.  2020 WL 5628968 (N.D. Cal. Sept. 14, 2020).  There, four companies brought a putative class action seeking injunctive and declaratory relief under Rule 23(b)(2) against the United States Citizenship and Immigration Services ("USCIS"), alleging that the agency improperly denied H-1B visas to employ foreign market research analysts. *Id.* at *1-2.  H-1B visas allow U.S. employers to hire certain qualified foreign individuals who have needed business skills and abilities if they can show (among other things) that they fit within a "specialty occupation." *Id.*  The court concluded that the four plaintiffs' claims could be joined because the merits of their underlying claims for injunctive and declaratory relief could be determined by evaluating whether USCIS was applying an incorrect interpretation of the governing Occupational Outlook Handbook. *Id.* at *4-5.

Notably, Plaintiffs' failure to appreciate the difference between cases assessing joinder in a putative class action limited to injunctive and declaratory relief—like

**REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO SEVER**

1    *Fraihat, MadKudu*—and cases seeking plaintiff-specific relief—like *Visendi*,

2    *Blackman*, and this one—carries over to their misguided attempt to distinguish the

3    Ninth Circuit's seminal decision in *Coughlin v. Rogers*, which affirmed the severance

4    of multiple individual claims brought against the Immigration and Naturalization

5    Service. 130 F.3d 1348, 1350 (9th Cir. 1997) (admonishing that "the mere allegation

6    of general [conduct by the defendant] is not enough to create a common transaction

7    or occurrence"). This case is controlled by *Coughlin* and Plaintiffs' attempt to blunt

8    that fact by referencing inapposite distinctions from *Fraihat* and *MadKudu* only

9    underscores that severance is mandated here.

10        Plaintiffs' reliance on *Almont Ambulatory Surgery Center, LLC v.*

11   *UnitedHealth Group, Inc.* is similarly misplaced. 99 F. Supp. 3d 1110, 1187 (C.D.

12   Cal. 2015). There, certain out-of-network ambulatory surgery centers and physician

13   groups brought claims against ERISA health insurance plans seeking reimbursement

14   for gastric band surgical procedures. The court determined that all of the claims arose

15   out of the same systemic behavior alleged in the complaint because all of the claims

16   would require the court to determine whether defendants' denials of plaintiffs' request

17   for reimbursement violated the full and fair review requirements of ERISA. *Id.* In

18   addition, the claims were governed by the same ERISA plan terms. *Id.*

19        *Ardolf v. Weber* is both distinguishable and instructive. 332 F.R.D. 467

20   (S.D.N.Y. 2019). *Ardolf* involved claims by five male models brought against the

21   famous fashion photographer Bruce Weber who allegedly molested them during

22   photoshoots. *Id.* at 471-72. All of the plaintiffs described having a nearly identical

23   experience: Weber would recruit and entice them by booking them as models for

24   photoshoots, including "test photoshoots." *Id.* Weber would arrange to be alone with

25   the models so he could conduct "breathing exercises," which included sexualized

26   touching. *Id.* at 472. During this process, Weber would remind the models that his

27   photographs and influence could make or break their career. *Id.* The court found that

28   plaintiffs' claims, all asserting violations of the TVPRA, arose out of the same

transaction or occurrence because they were all perpetrated by Weber—the alleged trafficker—and Weber's "nearly-identical" *modus operandi* was the common thread that logically tied all of plaintiffs' claims together. *Id.* at 480.

This case is nothing like *Ardolf*. Although Plaintiffs misappropriate the term *modus operandi* from *Ardolf*, that case illustrates that there is no common thread or nearly identical experience that each of the 34 Plaintiffs experienced. In fact, Plaintiffs' traffickers, all third parties unrelated to MindGeek, are not named as defendants; and Plaintiffs' interactions with MindGeek are neither consistent nor uniform, to the extent there are any.[6] Moreover, despite relying entirely on MindGeek's alleged "*modus operandi*" as the basis for joinder, Plaintiffs' Complaint fails to articulate how that "systemic pattern of misconduct" caused any of the Plaintiffs' alleged damages. In *Ardolf*, each of the five plaintiffs provided specific explanations as to how Weber's nearly uniform conduct caused each of them to sustain their alleged injuries. In sharp contrast, although the Complaint contains approximately sixty-three pages (and one hundred and eighty-nine paragraphs) of allegations regarding MindGeek's purported "systemic pattern of misconduct," it does not allege that any of the Plaintiffs were subjected to that systemic pattern of misconduct or that the purported pattern of misconduct was the cause of their injuries. *Compare* Compl. ¶¶ 72-261 *with id.* ¶¶ 262-404. For instance, none of the Plaintiffs allege that MindGeek transferred their video content to other MindGeek-owned tubesites. Not a single Plaintiff alleges that her content was reformatted by MindGeek in order to facilitate viewing or distribution. The Complaint is also devoid of any allegations that MindGeek participated in a coordinated effort to "conceal these

---

[6] For example, many Plaintiffs (Fleites and Does 3, 5, 7, 8, 11, 12, 14, 17, 21, 23, 25, 28, 29, 33) acknowledge that content was removed in response to their own or others' requests. Compl. ¶¶ 263-64, 286, 293, 298, 303, 314, 318, 325, 342-43, 354, 359, 365, 376, 383, 402. While other Plaintiffs (Does 2, 19, 31, 32) are silent on whether and/or how MindGeek responded to any take-down requests. *Id.* ¶¶ 282, 349, 390, 398.

1    criminal activities."  Opp. at 82.  Thus, Plaintiffs' failure to plead that any of the

2    Plaintiffs were subject to the alleged "systemic pattern of misconduct" plainly refutes

3    their contention that joinder is appropriate.  *See Rojas v. Brown*, 2018 WL 4183269,

4    at *9 (E.D. Cal. Aug. 30, 2018), *report and recommendation adopted in pertinent*

5    *part*, 2019 WL 1220768 (E.D. Cal. Mar. 15, 2019) (rejecting contention that joinder

6    is proper as a result of defendant's custom and practice because the complaint failed

7    to allege facts to establish the purported custom and practice).

8         Finally, but no less fundamentally, Plaintiffs all but ignore Rule 20's second

9    requirement: establishing a common question of law or fact.  As the Ninth Circuit

10   explained in *Coughlin*, where, as here, "each Plaintiff's claim is discrete, and involves

11   different legal issues, standards, and procedures," there is no common question

12   because "the Court would … have to give each claim individualized attention."  130

13   F.3d at 1351.  In *Grijalva v. Kevin Mason, P.A.*, 2020 WL 13027072 (C.D. Cal. Dec.

14   30, 2019), twelve plaintiffs asserted federal and state law claims against defendants

15   relating to the handling of student loan accounts.  In addition to finding that Rule

16   20(a)'s first prong was unmet because, like here, each of the plaintiffs' interactions

17   with the defendant was unique and dissimilar, the court also held that plaintiffs were

18   unable to satisfy Rule 20(a)'s second prong because "[w]hen joined plaintiffs' claims

19   are 'discrete[ ] and involve[ ] different legal issues, standards, and procedures' that

20   would require the Court to 'give each claim individualized attention,' they are

21   inadequate under Rule 20(a)'s second requirement." *Id.* at *2.  So, too, here.

22        **B.    Plaintiffs Ignore Significant Issues Posed by Joinder that Run Afoul**
             **of the Principles of Fundamental Fairness.**
23

24        Plaintiffs also fail to demonstrate (as is also their burden) how joinder of these

25   geographically and factually disparate claims can comport with the principles of

26   fundamental fairness, be meaningfully addressed in a single action, and not unduly

27   prejudice MindGeek.  Opp. at 13.  Plaintiffs now acknowledge that their geographic

28   diversity would require this Court to ascertain and apply the laws of multiple foreign

and domestic jurisdictions but offer no analysis of how this could be manageably accomplished for 34 separate Plaintiffs. Instead, Plaintiffs glibly assert without any authority whatsoever that "[t]o the extent there are some differences in the law applicable to each Plaintiff, the Court and parties can adequately address the issue, as courts frequently apply different states' law, as needed." *Id*. at 84. This statement is both factually and legally false. <u>Factually</u>, Plaintiffs' claims do not simply implicate "***some*** differences in the law"; they would require the Court to analyze and apply the laws of at least twelve different states and multiple foreign countries. <u>Legally</u>, courts consistently sever cases that implicate the laws of multiple jurisdictions. *See Grijalva*, 2019 WL 13027072, at *2-3 (holding that "trial efficiency will not be promoted by allowing all Plaintiffs to bring a single case" because plaintiffs' federal claims and state tort claims that "could result in the application of nine separate states' laws … raise[] potentially different issues and must be viewed in a separate and individual light by the Court"); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (finding that "[l]egal confusion was also likely because the plaintiffs had worked […] in six different states, and the jury would have had to evaluate their state law claims in light of the different laws of each state").

Plaintiffs also claim that discovery will be streamlined in a joint proceeding by avoiding a duplication of testimony in the severed cases. Once again, this is not accurate. In *Renati*, the court rejected this same argument that joinder promotes efficient discovery because "[t]o the extent Plaintiffs' claims rely on common factual allegations, discovery can 'be coordinated to reduce or eliminate unnecessarily repetitive discovery, such as one deposition of a supervisor common to all … Plaintiffs.'" 2019 WL 5536206, at *6.

Plaintiffs cite to *Ghotra v. Bandila Shipping, Inc.* for the proposition that "discovery and trial in thirty-four separate litigations would surely 'result in a waste of judicial resources and duplication of testimony' that the Federal Rules are designed to avoid." Opp. at 86 (citing *Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1057

(9th Cir. 1997)).  *Ghotra*, however, is inapposite because the court did not address whether severance or joinder was appropriate.  Instead, the court, in determining whether plaintiffs had waived their right to a jury trial, stated that the plaintiffs, who could have brought two separate actions, should not be penalized for choosing to combine the two into one single action.  113 F.3d at 1057.

Plaintiffs also argue that there is no issue with compelling witnesses to appear at trial because under the civil RICO statute, 18 U.S.C. § 1965(c), witnesses outside this District can be compelled to attend trial so long as there is "good cause."  Opp. at 84.  Plaintiffs, however, neither explain (because they cannot) nor cite to any authority as to why "good cause" would exist to compel attendance by out-of-district witnesses.  *See A. Kush & Assocs. (Canada) Ltd. v. Weingeroff Enters., Inc.*, 1988 WL 64082, at *5 (N.D. Ill. June 8, 1988) (stating that that it "d[id] not believe Congress intended to require witnesses to travel across the country for every civil RICO proceeding").  And the RICO statute does not provide Plaintiffs with even a fig leaf of cover with respect to the Court's inability to compel the attendance of witnesses located in the foreign nations at issue here.

Likewise, Plaintiffs contend that any potential juror confusion can be mitigated through jury instructions and verdict forms.  But they make no attempt to square that assertion with the Ninth Circuit's decisions in *Coleman* and multiple other cases that reject this exact argument.  Sever Br. at 14 & n.7.  Instead, Plaintiffs rely upon *Brighton Collectibles, Inc. v. RK Texas Leather Manufacturing*, which is plainly inapposite because, unlike here, there was only *one plaintiff* in that matter who would need to have two separate trials against each co-defendant relating to infringements of the same copyrights if the court severed the claims.  2013 WL 2631333, at *6 (S.D. Cal. June 11, 2013).  Thus, the risk of juror confusion and potential prejudice in *Brighton Collectibles, Inc.* was significantly lower than the case here involving 34 Plaintiffs each with a unique set of facts relating to highly sensitive issues.

Plaintiffs' abject failure to establish "that permissive joinder" of these 34 highly

**REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO SEVER**

1  individualized cases "'comport[s] with the principles of fundamental fairness'" and

2  would not "result in prejudice to [MindGeek]" provides an independent (and

3  mandatory) basis for ordering severance.  *Coleman*, 232 F.3d at 1296 (citation

4  omitted).

5  **III.    Plaintiffs' RICO Claims Should Be Dismissed.**

6      **A.    Plaintiffs Have Not Alleged a Common Purpose.**

7        To allege an associated-in-fact enterprise, Plaintiffs are required to provide

8  factual allegations showing that *all* of the purported members of the enterprise

9  "associated together for a common purpose."  *See* MG Br. at 35; *Chagby v. Target*

10  *Corp.*, 2008 WL 5686105, at *3 (C.D. Cal. Oct. 27, 2008), *aff'd*, 358 F. App'x 805

11  (9th Cir. 2009).  That showing requires allegations as to "what exactly each individual

12  did, when they did it, [and] how they functioned together as a continuing unit."  *Doan*

13  *v. Singh*, 617 F. App'x 684, 686 (9th Cir. 2015).  Plaintiffs do not satisfy *Doan*.

14  Although they repeatedly assert that they have provided "specific," "detailed"

15  allegations, *e.g.*, Opp. at 52-53, Plaintiffs merely rehash their vague and repetitive

16  177-page Complaint, with no specific discussion of how these allegations are relevant

17  to establishing that each alleged enterprise member shared the criminal common

18  purposes alleged by Plaintiffs.

19        ***Bergmair and the Unidentified Investors***.  Plaintiffs claim that Section B3 of

20  their brief sets out the specifics of these Defendants' association with the enterprise.

21  All that Plaintiffs actually provide, however, are vague, conclusory assertions.  For

22  example, Plaintiffs allege that the investors were "in control" of MindGeek's business

23  (or, contradictorily, that *Bergmair* "exercise[d] control for [them]").  Opp. at 20, 22.

24  Plaintiffs also recite a litany of assertions, including that Bergmair "was in regular

25  contact with and directing the Bro-Club" (a vaguely defined group of individuals) on

26  "major"—but unspecified—"MindGeek decisions," and that he "was briefed on all

27  activities designed to meet its financial commitments to the owners, and approved

28  those initiatives," and had an "extensive" "technology involvement" that a MindGeek

1  programmer referred to as "uninformed meddling."  *Id.* at 22.  None of these

2  allegations indicates that Bergmair or the investors knew that MindGeek was

3  supposedly part of the larger alleged enterprise, much less that Bergmair and the

4  investors "associated together" with that enterprise for common purposes.

5      ***The "Sham Shell Companies"***.  Plaintiffs also provide *no* details as to what

6  any particular "sham shell company" actually did or how they associated themselves

7  with the larger enterprise for the criminal purposes allegedly identified in the

8  Complaint, as required under *Doan*.  To the contrary, Plaintiffs assert that MindGeek

9  "used" or "utilized" the sham shell companies as "vehicles" for tax evasion, money

10  laundering, and "scams."  Opp. at 22-24.  Such allegations are incompatible with the

11  associated-in-fact enterprise and the criminal common purposes alleged by Plaintiffs.

12     ***Visa, Inc.***  As shown in MindGeek's opening brief, Plaintiffs' allegations

13  regarding Visa boil down to no more than that Visa provided credit card processing

14  services to Visa cardholders for purchases from MindGeek and could have prevented

15  the alleged RICO violations.  MG Br. at 38.  Plaintiffs' conclusory allegations that

16  Visa "knew or should have known" of the alleged violations or that "the most basic

17  inquiry would have revealed" them, Opp. at 48; Compl. ¶ 412, are insufficient as a

18  matter of law to support Visa's participation in the purported enterprise.

19     In short, Plaintiffs have failed to plead facts showing that the purported

20  enterprise members associated themselves together with the alleged enterprise for the

21  alleged common purposes, as required for an associated-in-fact enterprise.  Moreover,

22  Plaintiffs' RICO claims cannot proceed merely because Plaintiffs assert that they

23  "cannot be expected to have personal knowledge of the relevant facts."  Opp. at 54.

24  In *State Compensation Insurance Fund v. Khan*, cited by Plaintiffs (*id.* at 54), this

25  Court held the plaintiffs' allegations were sufficient because they had "included

26  enough factual detail to clarify the role and specific claims asserted against each

27  defendant," as well as copies of "representative mailings," and "multiple spreadsheets

28  containing identifying information regarding the allegedly fraudulent bills submitted

1    [by the defendant medical facilities] to [the] State Fund," thus providing the required

2    "factual basis" for their "belief." 2013 WL 12132027, at *4 (C.D. Cal. July 30, 2013).

3    Plaintiffs here have submitted no comparable support for the sprawling associated-in-

4    fact enterprise they allege.

5           **B.      Plaintiffs Have Not Alleged an Associated-in-Fact Enterprise.**

6           Because Plaintiffs have not plausibly alleged that Visa and other alleged

7    members of the enterprise associated together for the alleged common purposes, those

8    entities and persons should be disregarded for purposes of determining whether

9    Plaintiffs' alleged enterprise satisfies the distinctness requirement. *See* MG Br. at 39.

10   Because the remaining alleged enterprise members consist only of MindGeek and its

11   subsidiaries, officers and employees, Plaintiffs have not pleaded a distinct associated-

12   in-fact enterprise. *See id.*   Accordingly, Plaintiffs' RICO claims fails for this

13   additional, independent reason.

14          Plaintiffs erroneously assert that in *United States v. Mongol Nation*, 693 F.

15   App'x 637 (9th Cir. 2017), the Ninth Circuit "expressly rejected" the argument that

16   "there is no *distinction* between the officers, agents and employees who operate [a]

17   corporation and the corporation itself.'"   Opp. at 55 (emphasis added).   To the

18   contrary, in *Mongol Nation*, the Ninth Circuit expressly recognized that, where (as

19   here) "the [entity] was the 'person' and the [entity] together with all its employees

20   and agents, were the 'enterprise,'" there is no distinct enterprise, 693 F. App'x at 638,

21   a rule that also extends to "parent corporations and subsidiaries." *Yagman v. Kelly*,

22   2018 WL 2138461, at *15 (C.D. Cal. Mar. 20, 2018) (citing cases). In *Mongol Nation*,

23   however, distinctness was satisfied because Mongol Nation, the alleged RICO person,

24   was "a subset of the alleged enterprise, which consist[ed] of legally distinct and

25   separate persons in addition to the Defendant." 693 F. App'x at 638.[7]

26   _____

27   [7]  Although it is not entirely clear what enterprise or enterprises are alleged in *MH*

28   *Pillars Ltd. v. Realini*, cited by Plaintiffs (Opp. at 55), it appears that the court held

---

27

Here, in contrast to *Mongol Nation*, Plaintiffs have not alleged a larger enterprise of which the Defendant RICO persons are a "subset."  Rather, disregarding individuals and entities, such as Visa, whose association and shared common purpose with the alleged enterprise are insufficiently pleaded, all that remains is an enterprise that is identical to the RICO persons.

As the Ninth Circuit stated in *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529 (9th Cir. 1992), which Plaintiffs erroneously rely on, "[u]nder RICO, an 'enterprise' is a 'being different from, not the same as or part of, the person whose behavior the act was designed to prohibit.'"  *Id.* at 1533-34 (citation omitted).  Here, the alleged associated-in-fact enterprise is the same as the RICO "persons."  *Both* consist of MindGeek and affiliated corporations, MindGeek employees, and officers and investors, and thus distinctiveness is not satisfied.  *See Yagman*, 2018 WL 2138461, at *14 (distinctiveness not satisfied where "[t]he members of the alleged RICO 'enterprise'—all Defendants—are a parent corporation, its corporate subsidiaries, and officers and employees of the corporations").

### C.    Plaintiffs Have Not Alleged RICO Injuries to Business or Property.

#### 1.    Fourteen Plaintiffs Allege Extraterritorial Injuries.

As shown in MindGeek's opening brief, Does 2, 6. 8-14, 23-25, and 27-28, who reside abroad, have alleged only extraterritorial injuries that are not cognizable under RICO.  MG Br. at 15-16.  Whether an alleged RICO injury is domestic or extraterritorial "depends on where the plaintiff 'suffered the injury'—not where the injurious conduct took place." *Smagin v. Compagnie Monegasque de Banque*, 2021 WL 2124254, at *3 (C.D. Cal. May 5, 2021) (citation omitted); *see also Mussnich v. Teixeira*, 2021 WL 1570832, at *2 (C.D. Cal. Feb. 23, 2021) (RICO extraterritoriality

---

that distinctiveness was satisfied because the RICO persons (certain "core members") were a subset of a "larger Enterprise." *See MH Pillars*, 2018 WL 1184847, at *5 (N.D. Cal. Mar. 7, 2018).  That is not the situation here because, for the reasons stated herein and in MindGeek's opening brief, Plaintiffs have failed to plead a "larger Enterprise."

**REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO SEVER**

"focus[es] on the domestic or foreign character of the injury—not of the racketeering activity"). Thus, a Plaintiff who resides in and feels her claimed injury in a foreign country has not alleged a domestic U.S. injury. *See Global Master Int'l Grp., Inc. v. Esmond Natural, Inc.*, 2021 WL 1324433, at *3 (C.D. Cal. Mar. 9, 2021) (injury was extraterritorial because alleged deprivation of superior product was "felt" by plaintiff purchaser in China). Likewise, in *Mussnich*, a Brazilian plaintiff who felt his loss of money in Brazil sustained an extraterritorial injury, even though the purported racketeering scheme took place, at least in part, in the U.S. and "several Defendants [were] based in the United States." 2021 WL 1570832, at *2. Moreover, a "'party experiences or sustains injuries to its intangible property at its residence.'" *Id.* (citation omitted). As these cases show, the foreign-resident Plaintiffs' claimed injuries are extraterritorial and do not support a RICO claim.[8]

## 2.    Plaintiffs Do Not Allege Injuries to Business or Property.

Plaintiffs erroneously state that "[t]he Ninth Circuit has held that cognizable RICO injuries encompass any 'concrete' financial harm by reason of a RICO violation." Opp. at 56. To the contrary, Plaintiffs must allege both "the existence of a specific business or property interest" and "'some tangible financial loss' that corresponds with the loss of that business or property interest." *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 1019 (C.D. Cal. 2011) (quoting *Diaz v. Gates*, 420 F.3d 897, 898 (9th Cir. 2005)). Consequential expenses arising from personal injuries, such as Plaintiffs' claimed expenses in having their images removed from Pornhub, are not compensable under RICO. *See, e.g.*, *Diaz*, 420 F.3d at 900. As

---

[8] Plaintiffs improperly cite *Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 710 (3d Cir. 2018), and *Akishev v. Kapustin*, 2016 WL 7165714 (D.N.J. Dec. 8, 2016), for the proposition that a foreign plaintiff may feel its injuries on a U.S. website. Opp. at 59 n.25. In *Humphrey*, the Third Circuit affirmed the dismissal of the plaintiff's RICO claims for lack of a domestic injury, refusing to adopt "an approach that places undue emphasis on the location of the alleged injury-inducing misconduct." *Humphrey*, 905. F. 3d at 710 (discussing *Akishev*).

**REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO SEVER**

shown in MindGeek's opening brief, MG Br. at 40-44, and below, none of the Plaintiffs have alleged a RICO injury to business or property.

**Employment/Employment Prospects**.  None of the Plaintiffs have sustained employment injuries that are cognizable under RICO.  Plaintiffs incorrectly argue that Doe 31 had a property interest in her employment.  Opp. at 57 n.21 (citing *Clark v. Stipe Law Firm, L.L.P.*, 320 F. Supp. 2d 1207, 1214 (W.D. Okla. 2004)).  *Clark* addresses claims of lost business and harm to professional reputation, not lost employment or employment opportunities.  320 F. Supp. 2d at 1213.  *Clark* does not support the proposition that Doe 31 had a "statutorily based [or] a governmentally derived entitlement," or an "employment agreement or any other assurances of continual employment," such as would give rise to a protected property interest under Oklahoma law.  *Ross v. Peters*, 846 P.2d 1107, 1118 (Okla. 1993); *see also Blanton v. Housing Auth.*, 794 P.2d 412, 417 (Okla. 1990) (at will employee "had no property right in continued employment").  Neither Doe 31 nor Doe 32, also from Oklahoma, has a property interest in her employment and/or employment prospects.

Nor do the other Plaintiffs plead a property right in employment prospects under applicable state law or a concrete financial injury.  The remaining U.S. Plaintiffs' places of residence include California, Colorado, Illinois, Missouri, Nevada, North Carolina, Ohio, Rhode Island, Texas, and Utah.  The Ninth Circuit has not interpreted California law to create a property interest for all claims of lost employment or lost employment prospects, and the California Plaintiffs do not allege facts supporting a property interest or a concrete financial loss connected to employment.[9]  Moreover, Plaintiffs provide no legal support whatsoever for the

---

[9]  As the *Mattel* court states, the Ninth Circuit points to "concrete" and "valuable" lost opportunities in *Diaz* and *Guerrero*, not entirely speculative employment opportunities such as those alleged by Plaintiffs.  *See* 782 F. Supp. 2d at 1021. Plaintiffs incorrectly claim that *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1119 (9th Cir. 2017), holds that "time away from work is a RICO injury."  Opp. at 56.  In *Just*

**REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO SEVER**

1    proposition that the remaining Plaintiffs have a property right in employment under

2    the laws of their states or a concrete, non-speculative loss.

3          **Harm to Image/Copyright.**  In arguing that the use of their images constitutes

4    injury to property, Plaintiffs erroneously attempt to incorporate the standards

5    applicable under California statutes such as California's Unfair Competition Law and

6    California Civil Code § 3344.  Opp. at 58-59 & n.24.  Plaintiffs provide no legal basis

7    for invoking these statutes to determine what constitutes a RICO injury to business or

8    property, even for the California Plaintiffs, much less for residents of other states.

9    Rather, Plaintiffs cite *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 806-07 (N.D.

10   Cal. 2011)—which is not a RICO case—for the proposition that they need not show

11   some concrete attempt or intention to monetize their images in order to show a

12   concrete financial loss.  Unlike the California statutory claims in *Fraley*, RICO does

13   not permit a presumed injury.  *See Fraley*, 830 F. Supp. 2d at 806-07.  As the *Mattel*

14   court held in a similar context, trade secret law permitting *per se* injuries "does not

15   establish a *per se* rule that every trade secret plaintiff has suffered concrete financial

16   loss that gives rise to a claim under section 1964(c)."  782 F. Supp. 2d at 1020.[10]

17         Thus, even assuming, *arguendo*, that the applicable state laws establish that the

18   use of Plaintiffs' images gives rise to an injury to property rather than a personal

19   injury, Plaintiffs' allegations do not support a "concrete financial loss."  Plaintiffs

20   must allege that *they* sustained a financial loss, which requires that they themselves

21   had some concrete expectation of a financial gain from their own use of their images.

22   _____

23   *Film*, the plaintiff business owner spent time away from work investigating a
     fraudulent bill for lease of business equipment and paid an employee to check records.

24   847 F.3d at 1119.  *Just Film* involves injury to business and does not hold that an
     employee's time away from work constitutes an injury to property.

25   [10] Likewise, Plaintiffs improperly argue that RICO causation is satisfied because

26   "[t]he harm from the commercial misappropriation of Plaintiffs' images…is directly
     related to the commercial misappropriation itself."  Opp. at 59 n.24.  RICO, however,

27   requires that Plaintiffs show that the harm was caused by a RICO predicate act, not

28   by "commercial misappropriation."

*See Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992) (plaintiff tenant who did "not allege[] that she … ever attempted to sublet [her] apartment[] or even that she ever wished or intended to sublet the apartment" had not alleged concrete, non-speculative financial loss of alleged "rental interest"); *see also Diaz*, 420 F.3d at 898 (discussing *Oscar*).  Here, no Plaintiff has alleged that she wanted or tried to monetize her image, and Plaintiffs' RICO claims fail for lack of a concrete financial loss.

### D.    Plaintiffs Do Not Adequately Allege Predicate Acts Connected to Their RICO Claims.

Contrary to Plaintiffs' contentions, they have not sufficiently alleged predicate acts connected to their purported alleged injuries.  As shown below and in MindGeek's Motion to Dismiss, Plaintiffs do not allege a direct or indirect violation of the TVPRA with any connection to their alleged injuries.  *See* Part IV, *infra*; MG Br. at 17-33.  Plaintiffs have also not properly alleged violations of 18 U.S.C. § 2252. Only fourteen Plaintiffs were minors when their videos were produced, and, as with their TVPRA claims, Plaintiffs fail to allege MindGeek had even constructive knowledge—much less the actual knowledge required by § 2252—that the videos contained CSAM. *See* MG Br. at 47-48.

Plaintiffs devote only half a paragraph of their Opposition to addressing the remaining alleged predicate acts, purportedly including wire and mail fraud, money laundering, and criminal copyright infringement.  Opp. at 60-61.[11]  Regarding their mail and wire fraud allegations, Plaintiffs argue that "the use of the mails and wires need not itself be fraudulent." *Id.* at 61 n.28.  MindGeek never argued otherwise.  But Plaintiffs do not and cannot explain how the purported scheme to "deceive the public,

---

[11] Plaintiffs ask the Court to rely entirely on the TVRPA allegations and not consider the allegations concerning the remaining purported predicate acts at this stage.  Opp. at 60.  But even if Plaintiffs had adequately alleged TVRPA or § 2252 violations (which they have not), the remaining predicate act allegations are so plainly deficient that the Court should dismiss them now.

**REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO SEVER**

government, and its users," Compl. ¶ 551, was intended to defraud anyone out of money or property. *See* MG Br. at 45-46. And in any event, Plaintiffs fail to show how this supposed scheme was furthered by the communications they identify. *See* Compl. at ¶¶ 158-60; *see also* MG Br. at 45-46 (citing *In re Managed Care Litig.*, 2009 WL 812257, at *8 (S.D. Fla. Mar. 26. 2009) (plaintiff must "particularly describe the scheme and how the communications, although facially innocent, furthered that scheme")).

Instead, Plaintiffs seem to have abandoned their allegations regarding that scheme in favor of a generic "scheme to effectuate the Enterprise's criminal activities." Opp. at 60. But this vague, amorphous scheme is not a scheme to *defraud*—i.e., to fraudulently "obtain money or property." *See* 18 U.S.C. §§ 1341, 1343; *see also Children's Health Defense v. Facebook Inc.*, 2021 WL 2662064, at *20 (N.D. Cal. June 29, 2021) ("CHD's allegations of wire fraud—both those actually plead … and those unpled but asserted in CHD's opposition briefs—do not constitute wire fraud because CHD has not alleged any facts showing that defendants engaged in a fraudulent scheme to obtain money or property"). Indeed, Plaintiffs' Opposition does not even use the words "misrepresentation," "deception," "reliance," or anything else that would make the purported scheme a fraudulent one. Accordingly, neither of Plaintiffs' purported schemes involves or constitutes mail or wire fraud.

Additionally, Plaintiffs do not even address their failure to "inform each defendant separately of the allegations surrounding [its] alleged participation in the fraud." *Sugarman v. Muddy Waters Cap. LLC*, 2020 WL 633596, at *4 (N.D. Cal. Feb. 3, 2020) (citation omitted); *see also* MG Br. at 45. For that reason alone, Plaintiffs fail to allege a mail or wire fraud predicate act.[12]

---

[12] The cases cited by Plaintiffs, (Opp. at 61) are inapposite because they involved schemes to defraud people of money or property and involved allegations of specific details of each defendant's role in the purported scheme. *See Perez v. DirecTV Grp. Holdings, LLC*, 2019 WL 6362471, at *4 (C.D. Cal. July 23, 2019) (plaintiffs

Next, Plaintiffs erroneously assert that "the Complaint also alleges numerous predicate acts of money laundering … and criminal copyright infringement."  Opp. at 61.  As purported support for a money laundering predicate, the Opposition rehashes the same nonspecific allegations about "shell companies" that MindGeek has already rebutted.  *Compare* Opp. at 61 n.29, *with* MG Br. at 46.  Plaintiffs have not identified even one allegedly unlawful transaction, as required under the money laundering statute.  18 U.S.C. §§ 1956, 1957.[13]  Nor do Plaintiffs address the fact that this supposed "money laundering" has nothing to do with them or their claims.  Plaintiffs' reliance on *JW Gaming Development, LLC v. James*, 2018 WL 4853222 (N.D. Cal. Oct. 5, 2018), *aff'd*, 778 F. App'x 545 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 1297 (2020), is misplaced.  Opp. at 61 n.29.  In *JW*, the plaintiff identified specific unlawful transactions by the defendant using money that was misappropriated from the plaintiff, including "a $95,000 transfer to a romantic partner, a $400,000 transfer to an organization over which two defendants have ownership interests, and a $1 million transfer to other defendants."  *Id.* at *1.  Here, Plaintiffs' vague allegations about shell companies and taxes do not identify any specific laundering transaction under the

---

"alleged, with sufficient particularity, a plausible, fraudulent scheme," explained how the defendants' use of the mail effectuated that scheme, and identified each defendant's role); *Ulti-Mate Connectors, Inc. v. American Gen. Life Ins. Co.*, 2015 WL 12734007, at *8 (C.D. Cal. Mar. 27, 2015) (plaintiff identified specific "frauds [that] occurred via wire or U.S. mail and connect[ed] each Defendant … to these acts with specific allegations").

[13] Money laundering requires Plaintiffs to identify a specific money-laundering transaction, which they have not done.  *See* MG Br. at 46; *Samsung Elecs. Am., Inc. v. Chung*, 2017 WL 635031, at *9 (N.D. Tex. Feb. 16, 2017); *Bernstein v. Misk*, 948 F. Supp. 228, 236 n.2 (E.D.N.Y. 1997) ("The Complaint does not describe which defendants or transactions violated this statute or what funds were derived from criminal activity. Therefore, the § 1957 predicate cannot stand.").  Moreover, Plaintiffs fail to state a § 1957 predicate act as to the foreign MindGeek entities because, by failing to identify the relevant transactions, Plaintiffs necessarily fail to allege that those entities engaged in any money laundering transaction in the U.S.  18 U.S.C. § 1957(d).

**REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO SEVER**

1  statute, let alone a transaction that relates to Plaintiffs' own alleged injuries.

2       Similarly, in an attempt to rehabilitate their deficient copyright predicate act,

3  Plaintiffs merely cite a string of paragraphs in their Complaint without explanation.

4  Opp. at 61 n.30.  MindGeek has already shown that these paragraphs are insufficient

5  to allege piracy, counterfeiting, or willful infringement, and do not connect any

6  alleged infringement to an economic injury alleged by Plaintiffs.  MG Br. at 46-47.

7  *Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*, 391 F. Supp. 3d 959 (N.D.

8  Cal. 2019) (cited by Opp. at 61 n.30), does not support infringement here.  In *Kevin*

9  *Barry*, the court stated that "knowledge [of a copyright] may be adequately alleged in

10  the interstices of the complaint, where the ***only possible inference*** is that the

11  defendant had knowledge."  391 F. Supp. 3d at 973 (emphasis added) (internal

12  quotation marks omitted).  There, the plaintiff "allege[d] that Mr. Barry confessed to

13  another victim that he knew his copying was wrong," and continued to copy works

14  under a fake name after having been warned to stop.  *Id.*  Thus, "the only possible

15  inference from [these] allegations [was] that Mr. Barry … knew (but did not care) that

16  [his] actions violated copyright law."  *Id.*  Here, by contrast, Plaintiffs have alleged

17  no facts that would permit any inference that MindGeek knew the purported actions

18  violated copyright law.[14]

19  **IV.    Plaintiffs Fail to State a *Prima Facie* TVPRA Claim.**

20       Under any reading of the TVPRA, Plaintiffs must allege—at a minimum—that

21  they were victims of commercial sex trafficking, as defined in Section 1591, and that

22  MindGeek was either (1) the direct perpetrator of that trafficking or (2) knowingly

23  benefitted from participating in the specific venture that trafficked Plaintiffs with

24  actual or constructive knowledge of that trafficking. 18 U.S.C. § 1591(a); *Doe v.*

25

26  _____

[14] To the extent that *Kevin Barry* held that piracy or counterfeiting are not necessary
27  for criminal infringement, it ruled against the weight of authority in this District. *See*
MG Br. at 46.  But even if only willful infringement is required, Plaintiffs' claims still
28  fail for the reasons stated above.

*Mindgeek USA, Inc.*, 2021 WL 4167054, at *5 (C.D. Cal. Sept. 3, 2021) (Carney, J.). The TVPRA claims of Does 2-7, 14, 15, 17-22, 25, & 28-33 must be dismissed for failure to allege they were victims of trafficking within the meaning of the statute. All of Plaintiffs' direct claims must be dismissed because the Complaint fails to allege that MindGeek advertised any Plaintiff for commercial sex or that MindGeek recruited, enticed harbored or maintained any Plaintiff. And Plaintiffs' beneficiary claims must be dismissed because Plaintiffs fail to allege MindGeek participated in the specific trafficking of Plaintiffs or that MindGeek had constructive knowledge of trafficking involving each of the Plaintiffs.[15]

## A.    Most Plaintiffs Do Not Allege Facts that Support Trafficking.

As discussed in MindGeek's moving brief, Does 3-7, 14, 15, 17-19, 22, 28, and 31-33 do not allege how they were victims of anyone's advertising, recruiting, enticing, harboring, maintaining or other action covered by Section 1591(a). MG Br. at 27-28. Plaintiffs do not address this point in their Opposition and should be deemed to have conceded it. Plaintiffs cannot avoid these requirements by merely alleging that the videos were recorded or posted without consent and that MindGeek may have later benefited, Opp. at 38-39, because this argument ignores that each Plaintiff must also be a victim of an act of recruitment, enticement, etc., or a conspiracy to engage in such conduct. To treat all underage sex or sex obtained by deceit as "trafficking" would make most of Section 1591(a)(1) mere surplusage. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004).

---

[15] Proposed *Amicus Curiae* International Center for Law & Economics suggests that a court's determination of TRVPA and RICO liability should take into account an entity's ability to avoid the harms targeted by these statutes for the least cost. But these economic policies have already been balanced by Congress, and the text of RICO and the TVPRA foreclose liability under the present circumstances. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461 (2002) (the balance of policies underlying a statute is determined by "the language of the statute enacted by Congress").

**REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO SEVER**

Does 2-7, 14, 15, 17-22, 25, and 28-33 also do not plead facts that support a finding that the offending conduct involved a commercial sex act. MG Br. at 26-28. Attempting to leverage this Court's decision in *Doe*—which held that an ex-boyfriend's recording and uploading of the offending videos was a commercial act because he had done so on prior occasions—Plaintiffs argue that the uploading of the videos to Pornhub is in and of itself a commercial act. Opp. at 40. But even accepting, *arguendo*, that a sex act filmed with intent to upload it to a free website is "commercial," most of these Plaintiffs fail to allege even that much. In *Doe,* the Court found that allegations the trafficker had "posted hundreds of videos to Defendants' platforms before" created a plausible inference that he "had the intent at the time the videos were made to post child pornography to Defendants' platforms." 2021 WL 4167054, at *7. Yet Does 3-5, 6, 7, 12-15, 21, 22, and 28, 30 allege either that their traffickers posted only a single video or say nothing at all about who created the videos. *E.g.*, Compl. ¶¶ 285, 288-90, 292, 295, 297-98. They plead nothing implying their alleged traffickers had the requisite *mens rea* at the time of the sex act and their claims fail under *Doe*.

## B.    Plaintiffs Have Not Alleged a Direct Liability Claim Against MindGeek.

Plaintiffs argue MindGeek violated Section 1591(a)(1) by advertising, recruiting, enticing, harboring or maintaining Plaintiffs. However, Plaintiffs do not plead facts that establish that MindGeek engaged in any advertising of Plaintiffs (as opposed to hosting content depicting them) or that MindGeek engaged in any recruiting, enticing, etc. of any Plaintiffs, as opposed to unnamed other individuals.

### 1.    MindGeek Did Not Advertise Plaintiffs for Commercial Sex.

Plaintiffs argue MindGeek "advertised" them in violation of 18 U.S.C. § 1591(a)(1) by "posting, reuploading, monetizing, and transferring content of them to its other platforms." Opp. at 43. Even accepting Plaintiffs' factual allegations as true, their theory that every video of a person is an "advertisement" of that person

cannot be squared with the text of the TVPRA and ordinary meaning of the word "advertise." The TVPRA prohibits advertising "a person" for commercial sex. 18 U.S.C. § 1591(a). Congress extended the TVPRA to advertising through the 2015 Justice for Victims of Trafficking Act, Pub. L. 114-22, 129 Stat 227 § 118 (2015), in response to the rise of websites like Backpage.com that hosted "ads for commercial sex acts." 161 Cong. Rec. S1596-02, S1621 (statement of Senator Feinstein). The amendment was designed to extend liability to posting "an advertisement … for commercial sex with a minor." *Id.* at S1622; *accord, e.g.*, 161 Cong. Rec. S1403-02, S1410 (statement of Senator Blunt) (amendment addressed situation where "[w]omen and children … are advertised online where buyers purchase them with ease"). Congress reiterated this understanding when it passed FOSTA to target sites that were involved in "advertising the sale of unlawful sex acts with sex trafficking victims." H.R. Rep. No. 115-572 at 3-5, 8 (2018). Accordingly in *Doe v. Twitter, Inc.*, the court reasoned that the "verbs in [§ 1591] relate to a 'person'" and therefore do not apply where the "alleged conduct relates not to a person but to the Videos." 2021 WL 3675207, at *20 (N.D. Cal. Aug. 19, 2021).

Neither the Complaint nor Opposition brief explains how MindGeek did anything to advertise (i.e., offer) *Plaintiffs* for sex acts to take place in the future. Rather, the Complaint describes, at most, MindGeek's advertisement of *video*s. But advertisement of videos does not constitute an act of sex trafficking under § 1591(a)(1). *Twitter* did not hold—as Plaintiffs claim—that "[a] website 'advertises' a person in violation of 18 U.S.C. § 1591(a)(1) by posting a video of that person." Opp. at 43. Rather, *Twitter* observed in dicta that "as a matter of grammar" posting a video can, under certain circumstances, be a form of advertising. 2021 WL 3675207, at *20. But that does not mean that every video of a person on an adult website is an advertisement for that person's sexual services.

Plaintiffs also argue that MindGeek "advertised" Does 16-18 and 28 because their videos' titles or comments disclosed their names "to generate additional

1  viewership."  Opp. at 44.  But this argument misses the mark for the same reason:

2  even accepting, *arguendo*, Plaintiffs' strained reading that anything intended to

3  "generate viewership" is an act of advertising, this would still only be an

4  advertisement *for Pornhub*, not an advertisement of Plaintiffs for commercial sex.

5  Plaintiffs' footnoted argument that Doe 16 was featured in "an advertisement on

6  Pornhub … for Pornhub's services," *id.* at 44 n.11, fares even worse.  To begin with,

7  the Complaint alleges no such thing.  Rather, the referenced paragraph states that "an

8  image of Jane Doe No. 16 … appear[ed] on Pornhub in an ad for another site."  Compl.

9  ¶ 337.  It does not allege or imply MindGeek created that advertisement.  And in any

10  event, the use of Doe 16 in an advertisement alone "for Pornhub's services," is not an

11  advertisement of Doe 16.[16]

12      In addition, even if Plaintiffs had alleged MindGeek somehow "advertised

13  them" they fail to plead how MindGeek did so knowing they would be caused to

14  engage in commercial sex acts.  Section 1591(a) prohibits "advertis[ing] … a person"

15  for commercial sex that will take place in the future.  MG Br. at 31.  Significantly, an

16  advertising violation requires actual knowledge, as opposed to reckless disregard or

17  constructive knowledge.  18 U.S.C. § 1591(a).  The complaint does not allege, even

18  generally, that MindGeek had actual knowledge of the alleged trafficking at the time

19  it hosted Plaintiffs' videos, let alone prospective knowledge they would "be caused to

20

21

22

23  _____

    [16] Plaintiffs argue that reasonable inferences can be drawn from allegations of a
24  "widespread pattern and practice of advertising from nonconsensual content" that
   MindGeek advertised all of the Plaintiffs.  Opp. at 12.  That argument should be
25  rejected.  As noted, advertising of content does not constitute advertising of Plaintiffs.
   Moreover, even if select Plaintiffs could plausibly plead that MindGeek advertised
26  them knowing they would be caused to engage in future commercial sex acts, which
27  they cannot, that does not mean the remaining Plaintiffs are relieved of their burden
28  to plead that MindGeek advertised ***them*** within the meaning of the statute.

**REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO SEVER**

engage in a commercial sex act" in the future.[17]  Even accepting the allegations as true, Plaintiffs do not allege that the videos were advertisement for future sex acts.

### 2. Plaintiffs Do Not Allege MindGeek Recruited, Enticed, Harbored, or Maintained Them for Commercial Sex.

Plaintiffs argue that MindGeek directly violated § 1591(a)(1) by recruiting, enticing, harboring, and maintaining minors and other victims for the purpose of making pornography.  In support of their position, Plaintiffs rely on allegations that MindGeek partnered with known traffickers to entice unnamed persons (who are not parties in this case) by falsely telling them through agents they would be modeling, acting or auditioning, and then through agents forced them to engage in sex acts and make pornography; harbored them in warehouses, refusing to let them leave, and forcing them to make pornography; recruited content through known traffickers; and produced CSAM and nonconsensual content through MindGeek-owned production companies.  Opp. at 44-45.

Plaintiffs' argument fails because the Complaint does not allege MindGeek recruited, enticed, harbored or maintained *any of the Plaintiffs*.  Only a handful of Plaintiffs plead facts showing they were recruited, enticed, harbored, or maintained at all, and none connect those allegations to MindGeek.  For example, Plaintiffs point generically to the fact that certain Plaintiffs allege they were "enticed to participate in modeling, acting, or other auditions" or were "victims of Asian traffickers," but there is no allegation MindGeek was involved in ***any*** of these activities.  Opp. at 45.  Moreover, insofar as Plaintiffs do allege MindGeek participated in recruitment, enticement, maintenance or harboring of other persons, which is blatantly false, that activity allegedly took place in Eastern Europe.  Compl. ¶¶ 181-83.  However, none

---

[17] Instead, Plaintiffs' Opposition argues that MindGeek should have inferred the alleged trafficking from moderators' review of the videos and from surrounding circumstances. Opp. at 37.  As explained below, Plaintiffs do not even allege facts showing constructive knowledge, let alone the actual knowledge required to support an advertising claim. *See* Part IV.C.2, *infra*.

of the Plaintiffs are from Eastern Europe or allege any connection with those activities. Plaintiffs' new assertion that some of them "were the victims of Asian traffickers … MindGeek partnered with" (Opp. at 45), is not supported by the Complaint. None of the seven Thai Plaintiffs alleges MindGeek played any role whatsoever in the creation of their videos even though six identify their traffickers by name. Compl. ¶¶ 309, 312, 320, 358, 360, 364.[18]

### C.   Plaintiffs Do Not Allege a Secondary Liability Claim against MindGeek.

#### 1.   Plaintiffs Do Not Allege MindGeek Participated in Trafficking Ventures Involving Them.

Plaintiffs cite this Court's opinion in *Doe* for the proposition that participation is adequately pleaded where a plaintiff alleges "a continuous business relationship between the trafficker and [defendants] such that it would appear that the trafficker and [defendants] have established a pattern of conduct or could be said to have a tacit agreement." Opp. at 32 (citing *Doe*, 2021 WL 4167054, at *5). Plaintiffs argue they have met that standard by pleading generally that MindGeek was aware of the prevalence of sex trafficking on its sites and failed to take adequate steps to prevent its occurrence. *Id*. at 32-34. That is not enough. MG Br. at 29-30, 32-33.

A recent Eleventh Circuit opinion demonstrates that allegations of awareness and profiting from trafficking are insufficient without participation in a common undertaking. In *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), the plaintiffs alleged the defendants controlled and managed hotels where the plaintiffs were trafficked. *Id*. at 719-20. Plaintiffs claimed that by doing so, the defendants had participated in "sex trafficking ventures" with the traffickers. *Id*. at 726. The court of appeals rejected this argument because, even though the allegations "may suggest

---

[18] Plaintiffs' failure to allege MindGeek knew or recklessly disregarded at the time of any recruiting enticing, etc. that Plaintiffs would be caused to engage in commercial sex trafficking is discussed below.

1    that the franchisors financially benefitted from renting hotel rooms to the Does' sex

2    traffickers," they did "nothing to show that the [defendants] participated in a common

3    undertaking … that violated the TVPRA—i.e., the alleged sex trafficking ventures."

4    *Id.* at 726-27.  In other words, there were no "plausible allegations that the franchisors

5    took part in the common undertaking of sex trafficking."  *Id.* at 727.  Even if the

6    defendants knew of and profited from the trafficking, "observing something is not the

7    same as participating in it."  *Id.*

8         The same is true here.  Plaintiffs repeatedly allege they were victims of a "sex

9    trafficking venture."  Compl. ¶¶ 1, 407, 485, 493.  But, like the plaintiffs in *Red Roof*

10   *Inns*, they claim only that MindGeek knowingly profited from that trafficking, not

11   from participating in the trafficking.  Thus, even assuming, *arguendo*, that MindGeek

12   benefitted from doing business with Plaintiffs' traffickers—something Plaintiffs have

13   not adequately pleaded (MG Br. at 30, 32-33), Plaintiffs fail to state a TVPRA claim

14   because they do not allege how MindGeek "took part in the common undertaking of

15   sex trafficking" **them**.  *Red Roof Inns*, 21 F.4th at 727.[19]

16        Plaintiffs' Opposition asserts that "at least sixteen [Plaintiffs] were trafficked

17   by producers or middlemen/agents that partnered with MindGeek or profited from its

18   criminal activities."  Opp. at 27.  By making that statement, Plaintiffs tacitly

19   acknowledge that they have not pleaded that MindGeek entered into any partnering

20   or profiting relationship with the traffickers of the other 18 Plaintiffs.  But even as to

21   those 16 Plaintiffs (with one possible exception) the allegations do not support a

22   plausible inference of any relationship between the traffickers and MindGeek.  Only

23   for Doe 16 is there any allegation that might support a plausible inference that her

24   trafficker had a relationship to MindGeek insofar as she alleges videos of her were

25

26   [19]  The issue is not only, as Plaintiffs characterize it, that MindGeek did not have "a

27   sexual encounter with any plaintiff."  Opp. at 39.  To be sure, one can participate in

     sex trafficking without being party to the sex.  Here, however, Plaintiffs fail to allege

28   that MindGeek did *anything* to participate in the undertaking of trafficking them.

1    recorded by a media company and uploaded to Pornhub affiliated channels, though
2    the allegations still fall far short of satisfying the pleading requirements for
3    participation in a sex trafficking venture.

### 2. MindGeek Did Not Have Constructive Knowledge of Plaintiffs' Alleged Trafficking.

6    At a minimum, Section 1595 requires that Plaintiffs plead facts that can
7    establish that MindGeek had "constructive knowledge of the trafficking at issue."
8    2021 WL 4167054, at *4 (internal quotation mark omitted); *accord, e.g.*, *S.J. v.*
9    *Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020). Plaintiffs argue
10    that constructive knowledge of their alleged trafficking should be inferred from
11    allegations that (1) moderators reviewed and approved the videos, (2) the videos
12    "contained titles, tags, [and] comments" indicating illegal content, (3) "plaintiffs'
13    images were on defendants' tubesites for extended periods of time," and (4) certain
14    Plaintiffs "were trafficked by serial traffickers."  Opp. at 33-34.  This argument is
15    without merit.

16    First, most Plaintiffs do not allege what about their videos would support a
17    plausible inference that MindGeek should have known they depicted CSAM or non-
18    consensual content.  Regarding Plaintiffs' claims about CSAM, Does 1-9 and 11-13
19    do not explain at all why a moderator should have known that they were underage
20    when their content was recorded.  Although Doe 10 alleges that she wore a school
21    uniform recognized in Thailand as being of a particular grade, Compl. ¶ 323, that does
22    not explain why a moderator outside of Thailand would know that implication.
23    Indeed, Doe 24 alleges that she also appeared in a Thai school uniform and was ***not*** a
24    minor.  *See id*. ¶¶ 360, 518.  Conspicuously, Plaintiffs allege that some unrelated
25    videos on Pornhub portrayed victims who were visibly underage, *e.g.*, *id.* ¶ 442, but
26    make no similar allegation about their ***own*** videos.  Regarding Plaintiffs' claims about
27    non-consensual material, Does 21-29, 31 and 33 fail to allege why a moderator should
28    have known they had not consented to the uploading of their content.  And despite

Plaintiffs' repeated arguments about comments, titles, and tags, their Opposition identifies only one title (on a video of Plaintiff Fleites) that clearly mentions underage content.   Instead, Plaintiffs latch on to ambiguous terms like "amateur," "teen," "student" or "young," none of which indicates a person is underage.   Opp. at 28. Similarly, no Plaintiff asserting claims based on non-consensual content except Does 14, 17 and 18 identifies a title, tag or comment that would clearly have indicated lack of consent.

Most adult Plaintiffs likewise fail to identify facts showing why MindGeek should have known they were victims of force, fraud, or coercion.   It is not enough to allege that, for example, a video was filmed or posted with a hidden camera, Opp. at 28, because Plaintiffs do not allege this would have been apparent to a moderator.[20]

Plaintiffs also argue that MindGeek should have been aware that 18 Plaintiffs were trafficked by "serial traffickers," Opp. at 34 & n.2, attempting to shoehorn their claims into the criteria the Court found sufficient in *Doe*.  This argument concedes that 16 Plaintiffs were not trafficked by such "serial traffickers," meaning this cannot be a basis for a finding of constructive knowledge as to their alleged trafficking.  And even as to the 18 who allegedly were, Plaintiffs cite to allegations concerning only eight of them.  One of those eight (Doe 27) was allegedly victimized in 2003, but her trafficker was not charged until 2020, negating any basis for inferring MindGeek should have known content uploaded by him was unlawful.   Moreover, while MindGeek disputes that a perpetrator's upload history gives a website constructive knowledge that a specific video contains illegal content, Plaintiffs overlook important distinctions between their allegations and those in *Doe*.  For example, in *Doe*, the plaintiff alleged that defendants had uploaded and featured at least one video from

---

[20] Plaintiffs also do nothing to detract from their own admission that a "large percentage" of apparently non-consensual content is in fact consensual and is often indistinguishable from real illegal content.  Compl. ¶¶ 224-25.  Instead, Plaintiffs merely attempt to recast this admission in their own Complaint as an assertion by MindGeek.  Opp. at 37.

plaintiff's trafficker and that he had posted hundreds of similar videos such that plaintiff had plausibly alleged defendants were familiar with him.  Order Denying Defs' Mot. for Reconsid. at 21, *Doe v. MindGeek USA Inc.*, No. 8:21-cv-00338 (C.D. Cal., Dec. 2, 2021), ECF No. 88.  No Plaintiff here alleges her videos were uploaded by MindGeek.  Only one (Doe 28) alleges a video of her was featured.  And none of the Plaintiffs alleges her trafficker posted hundreds of similar videos.

Minor Plaintiffs' reliance on the supposed "presumption" under 18 U.S.C. § 1591(c) that a defendant who had a reasonable opportunity to observe a victim is deemed to know if the victim is underage, Opp. at 36, is misplaced.  First, by its terms, the rule applies only to a criminal "prosecution under subsection (a)(1)." Second, even if the presumption applied in a civil action under Section 1595, it would apply only to direct violations under subsection (a)(1), not beneficiary violations under subsection (a)(2).  Opp. at 36 n.5.  Third, § 1591(c) has generally been applied only in the context of in-person meetings. *See Rivers v. United States*, 2019 WL 1959583, at *3 (S.D. Cal. May 2, 2019) (collecting cases).  Thus, viewing a video of a person online is not a "reasonable opportunity to observe" them.

### 3. Plaintiffs Cannot Circumvent the Knowledge Requirement by Alleging Unrelated Acts.

Plaintiffs also argue they are not required to allege MindGeek knowingly participated in a sex trafficking venture involving each Plaintiff.  Opp. at 41.  Rather, they attempt to circumvent the knowledge requirement by claiming MindGeek knew of other, unrelated content. *E.g.*, *id.* at 10, 37.  But Plaintiffs must plead facts that establish that MindGeek had "constructive knowledge *of the trafficking at issue*." *Doe*, 2021 WL 4167054, at *4 (emphasis added); *accord, e.g.*, *Red Roof Inns*, 21 F.4th at 725; *Twitter,* 2021 WL 3675207, at *26, 28 (relying on allegations that Twitter was aware of plaintiffs' specific trafficking).  Thus, Plaintiffs' (false) allegations that MindGeek adopted policies that facilitated or failed to deter the posting of unlawful content (Opp. at 37), "met with the producers" of illegal content in Eastern Europe

1    (*id*. at 10), or ignored financial "red flags" on certain ModelHub accounts (*id*. at 11)

2    are irrelevant to Plaintiffs' claims because Plaintiffs do not allege MindGeek met with

3    or ignored such red flags regarding ***their*** traffickers.[21]

4          Plaintiffs' own authorities belie their argument that unrelated incidents provide

5    "circumstances" from which knowledge of specific trafficking can be inferred.  Opp.

6    at 38.  For example, in *Anderson v. Peregrine Pharmaceuticals, Inc.*, 2013 WL

7    12122423 (C.D. Cal. Aug. 23, 2013), *aff'd*, 654 F. App'x 281 (9th Cir. 2016), the

8    court held that the defendant's knowledge that certain statements were false could

9    only be inferred if the plaintiff made "sufficiently precise" allegations "demonstrating

10   that the defendants actually saw the reports [to the contrary] and knew of their

11   contents." *Id.* at *7 (granting motion to dismiss) (citing *DeMarco v. DepoTech Corp.*,

12   32 Fed. App'x 260, 262 (9th Cir. 2002)).  The court further held that neither "failure

13   to verify" nor a financial incentive to mislead constitute sufficient allegations to

14   support a finding of scienter.  *Id.* at *8, 10.  Thus, while circumstances may provide

15   relevant context, the Ninth Circuit has made clear that Plaintiffs must still plead facts

16   showing MindGeek had the specific knowledge at issue.  *Cooper* and *City of Victorile*

17   are off point for the same reason: both involved allegations from which *specific*

18   knowledge could be inferred. *Cooper v. San Bernardino Sheriff Dep't*, 2017 WL

19   10511568, at *3 (C.D. Cal. Mar. 10, 2017) (sheriff should have known of risks to

20   plaintiff personally); *S.E.C. v. City of Victorville*, 2013 WL 12133651, at *11 (C.D.

21   Cal. Nov. 14, 2013) (defendant reviewed the statements at issue and knew they were

22   false).  As in *Anderson*, Plaintiffs cannot salvage their failure to plead knowledge with

23   respect to their specific videos by pointing to knowledge of surrounding

24   circumstances in general.

25

26   [21] *Flanders* and *Juskowich* are inapposite.  In those cases, the perpetrator was the
     defendant and, therefore, obviously aware of his own actions.  *United States v.*
27   *Flanders*, 752 F.3d 1317 (11th Cir. 2014); *United States v. Juskowich*, 2021 WL
     5166564, at *1 (W.D. Pa. Nov. 5, 2021).
28

**REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO SEVER**

### D.   The Ex-U.S. Plaintiffs May Not Bring TVPRA Claims Against MindGeek

Plaintiffs' Opposition does not dispute that U.S. courts only have extraterritorial jurisdiction over offenses under the TVPRA if the alleged offender is a citizen or permanent resident of the U.S. or is physically present in the U.S.  *See* 18 U.S.C. § 1596.  In fact, they do not address this argument at all.  Instead, they argue that all the predicate offenses that occurred in foreign countries should be treated as having occurred in the U.S. because "MindGeek's servers" are located in the U.S. This is not the law.  The ex-U.S. Plaintiffs allege that videos of them were created in foreign countries by foreign individuals. Likewise, those same Plaintiffs allege that the **harm** they purportedly suffered also took place exclusively outside the U.S.  *See, e.g.*, *id*. at ¶ 305.  All Plaintiffs allege is that MindGeek owns certain servers in the U.S. which *may* have once stored a copy of the material at issue—but they have not indicated how or why this singular string between MindGeek and the U.S., even if accurate, was responsible for their trafficking by third parties in foreign countries. The pleadings likewise do not explain how any U.S. law, let alone the TVPRA specifically, may be used to reach claims brought by ex-U.S. Plaintiffs who suffered harm in a foreign country allegedly caused by a foreign company.

The sole case cited by Plaintiffs in support of their position, *Tanedo v. East Baton Rouge Parish School Board*, 2012 WL 5378742 (C.D. Cal. Aug. 27, 2012), is not on point.  *Tanedo* involved a scheme in which Filipino nationals were being extorted in connection with being recruited and brought to work in the U.S.  *Id.* at *1. The plaintiffs alleged that a recruiting company had unlawfully obtained recruitment fees from them as well as a portion of their salary should they remain in the U.S. beyond one year.  *Id.* at *2.  In finding that the plaintiffs' claims were not extraterritorial, the Court noted that "[t]he focus of the TVPA is the trafficking of people into the United States, including for the purpose of compelling forced labor here."  *Id.* at *6.  The claims were properly considered domestic because U.S.-based

1   "Defendants allegedly trafficked Plaintiffs into the United States to work here"; there

2   was no dispute that the plaintiffs were physically brought into the United States where

3   they performed labor that was exploited by the alleged traffickers. *Id.* at *7. That

4   situation is nothing like this case where none of the ex-U.S. Plaintiffs allege the sex

5   trafficking occurred into the U.S. To the contrary, the alleged sex trafficking took

6   place in foreign countries, the videos were presumably originally uploaded in those

7   countries, and, with the exception of the two California MindGeek entities that do not

8   belong in this case, the MindGeek entities are not based in the U.S. *Tanedo* thus

9   provides no support for Plaintiffs' position.

10      Where, as here, the Complaint alleges "offenses wholly occurring in foreign

11  countries, exclusively involving foreign victims, and that were perpetrated by foreign

12  offenders who never set foot in the United States," U.S. law does not provide Plaintiffs

13  with either a forum or a substantive basis for bringing their claims. *Ratha v.*

14  *Phatthana Seafood Co.*, 2017 WL 8292391, *4 (C.D. Cal. Dec. 21, 2017).

15  **V.    Plaintiffs Are Required to Plead Plausible Claims Against Each Defendant
16          to Obtain Discovery.**

17      In addition to their misguided request for jurisdictional discovery, Plaintiffs

18  also repeatedly claim that they should not be required to plead facts supporting

19  essential elements of their claims before receiving discovery. *E.g.*, Opp. at 32, 42

20  n.10, 44 n.12, 51 n.16, 54, 73-74. They assert, for example, that they are not required

21  to plead facts showing that MindGeek's alleged "practices were applied to each

22  plaintiff" or that each Plaintiff was "advertised" in support of their TVPRA claim

23  because, they claim, only Defendants possess that information. *Id.* at 32, 42

24  n.12. They further argue that, before discovery, they are not required to allege any

25  facts showing that MindGeek knew certain Plaintiffs were underage at the time the

26  alleged videos were made. *Id.* at 51 n.16. Plaintiffs are wrong on all fronts.

27      Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-

28  me accusation," and does "not unlock the doors of discovery for a plaintiff armed with

1   nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79

2   (2009).  Thus, the Ninth Circuit has held that "plaintiffs must satisfy the pleading

3   requirements of [the Civil Rules] *before* the discovery stage, not after it."  *Mujica v.*

4   *AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) (emphasis in original).  "Our case law

5   does not permit plaintiffs to rely on anticipated discovery to satisfy Rules 8 and

6   12(b)(6); rather, pleadings must assert well-pleaded factual allegations to advance to

7   discovery."  *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021); *see*

8   *also United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047,

9   1057 (9th Cir. 2011).  "The unambiguous directive in *Iqbal* and *Mujica*" is that

10  "Plaintiffs are not entitled to discovery in order to allege sufficient facts to nudge

11  [their] claim[s] across the line from conceivable to plausible."  *Persian Gulf Inc. v.*

12  *BP W. Coast Prods. LLC*, 225 F. Supp. 3d 1178, 1180 (S.D. Cal. 2016) (quotation

13  mark omitted).  As explained in MindGeek's opening brief and herein, Plaintiffs'

14  allegations do not cross that line, and claiming an entitlement to discovery does not

15  change that.

16      Plaintiffs argue that *Iqbal* and *Mujica* do not apply to them because the facts

17  they have failed to plead are "solely" in Defendants' possession.  *E.g.*, Opp. at 42

18  n.11.  But Rule 8 applies "even when the information needed to establish a claim …

19  is solely within the purview of the defendant or a third party."  *New Albany Tractor,*

20  *Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011).  The cases cited

21  by Plaintiffs do not hold otherwise.  For example, in *Khan*, 2013 WL 12132027, and

22  *Waldrup v. Countrywide Financial Corp.*, 2015 WL 93363 (C.D. Cal. Jan. 5, 2015),

23  the courts held that certain aspects of *Rule 9(b)*'s particularity requirement—not Rule

24  8's basic pleading standards—can be relaxed if the facts that must be pleaded with

25  particularity are in the [d]efendants' exclusive knowledge.  But in such cases, Rule

26

27

28

**REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO SEVER**

8's requirements still apply.[22]  *Sims v. Opportunity Fin., LLC*, 2021 WL 1391565, at *8 (N.D. Cal. Apr. 13, 2021); *see also Menzel v. Scholastic, Inc.*, 2018 WL 1400386, at *3 (N.D. Cal. Mar. 19, 2018).  Here, Plaintiffs do not satisfy Rules 8 or 9(b).  Because "complaints should not be filed in matters where plaintiffs intend to find out in discovery whether or not, and against whom, they have a cause of action," *United States ex rel., Takemoto v. The Hartford Fin. Servs. Grp., Inc.*, 157 F. Supp. 3d 273, 281 (W.D.N.Y. 2016) (quotation marks omitted), *aff'd*, 674 F. App'x 92 (2d Cir. 2017), Plaintiffs' Complaint should be dismissed.

## CONCLUSION

For these reasons and those set out in MindGeek's opening brief, the Court should dismiss this case with prejudice.

---

[22] Plaintiffs' reliance on *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927 (N.D. Cal. 2018), is misplaced.  In that case, the court did not excuse the plaintiffs from meeting their pleading burden under Rule 8.  Although it held that the plaintiffs did not have to identify each corporate defendant's specific role in fraud, it did so only because the plaintiffs alleged specific facts showing that the businesses were structured in such a way that their conduct was in fact concerted.  Here, by contrast, Plaintiffs simply lump Defendants together without justification.  *See* Part I.A, *supra*.

**REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO SEVER**

1   DATED: January 24, 2021           Respectfully submitted,

2

3                                            /s/    *Benjamin M. Sadun*

4                                     BENJAMIN M. SADUN (287533)
                                      benjamin.sadun@dechert.com
5                                     DECHERT LLP
                                      US Bank Tower, 633 West 5th Street,
6                                     Suite 4900
7                                     Los Angeles, CA 90071-2013
                                      Phone: (213) 808-5721; Fax: (213) 808-5760
8

9                                     KATHLEEN N. MASSEY (*admitted pro hac
10                                    vice*)
                                      Kathleen.massey@dechert.com
11                                    MARK S. CHEFFO (*pro hac vice
12                                    forthcoming*)
                                      mark.cheffo@dechert.com
13                                    DECHERT LLP
14                                    Three Bryant Park
                                      1095 Avenue of the Americas
15                                    New York, NY 10036
16                                    Phone: (212) 698-3500; Fax: (212) 698 3599
                                      *Attorneys for Defendants*
17

18

19

20

21

22

23

24

25

26

27

28

                                      51                      CASE NO. 2:21-cv-04920
                     **REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO SEVER**