1  DAN MARMALEFSKY (CA SBN 95477)
   DMarmalefsky@mofo.com
2  MORRISON & FOERSTER LLP
   707 Wilshire Boulevard
3  Los Angeles, CA  90017-3543
   Telephone: 213.892.5200
4  Facsimile: 213.892.5454

5  RONALD G. WHITE (admitted *pro hac vice*)
   RWhite@mofo.com
6  MORRISON & FOERSTER LLP
   250 West 55th Street
7  New York, NY  10019-9601
   Telephone: 212.468.8000
8  Facsimile: 212.468.7900

9
   Attorneys for Defendant
10 BERND BERGMAIR
   *(Additional Counsel listed on next page)*
11

12                  UNITED STATES DISTRICT COURT

13                  CENTRAL DISTRICT OF CALIFORNIA

14                        SOUTHERN DIVISION

15

16 SERENA FLEITES,                          Case No. 2:21-cv-4920-CJC-ADS

17                 Plaintiff,               **DEFENDANT BERND
                                            BERGMAIR'S NOTICE OF
18        v.                                MOTION AND MOTION TO
                                            DISMISS PLAINTIFF'S
19 MINDGEEK S.A.R.L. a foreign entity; MG   AMENDED COMPLAINT
   FREESITES, LTD., a foreign entity;       FOR LACK OF PERSONAL
20 MINDGEEK USA INCORPORATED, a             JURISDICTION [FRCP
   Delaware corporation; MG PREMIUM         12(B)(2)] AND FOR
21 LTD, a foreign entity; MG GLOBAL         FAILURE TO STATE A
   ENTERTAINMENT INC., a Delaware           CLAIM [FRCP 12(B)(6)];
22 corporation; 9219-1568 Quebec, Inc. (d/b/a  MEMORANDUM OF
   MindGeek), a foreign entity; BERND       POINTS AND
23 BERGMAIR, a foreign individual; FERAS    AUTHORITIES
   ANTOON, a foreign individual; DAVID
24 TASSILLO, a foreign individual; COREY    Date: August 8, 2022
   URMAN, a foreign individual; VISA INC.,  Time: 1:30 p.m.
25 a Delaware corporation; COLBECK          Courtroom: 9 B
   CAPITAL DOES 1-5; and BERGMAIR           Judge: Hon. Cormac J. Carney
26 DOES 1-5,

27                 Defendants.

28

────────────────────────────────────────────

ANDRE FONTANA (CA SBN 324801)
AFontana@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on August 8, 2022 at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Cormac J. Carney, in Courtroom 9B of the Ronald Reagan Federal Building and United States Courthouse, located at 411 West Fourth, Santa Ana, California 92701-4516, Defendant Bernd Bergmair will and does hereby move to dismiss the Amended Complaint filed by Serena Fleites in its entirety.

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(2), on the grounds that the Court lacks personal jurisdiction over Defendant Bergmair, and Rules 12(b)(6) and 9(b), on the grounds that the Amended Complaint fails to state a claim against him upon which relief may be granted.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities in support thereof; the Motions and Memoranda of Points and Authorities in support thereof of the other Defendants in this action; the pleadings and other records in the Court's file; and such other written and oral argument as may be presented to the Court.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 17, 2022.

Dated: May 23, 2022

RONALD G. WHITE
DAN MARMALEFSKY
ANDRE FONTANA
MORRISON & FOERSTER LLP

By: _____*/s/ Ronald G. White*_____
　　　　Ronald G. White

Attorneys for Defendant
BERND BERGMAIR

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

RELEVANT BACKGROUND ............................................................................. 2

ARGUMENT ........................................................................................................ 5

I.    Plaintiff Has Not Established Personal Jurisdiction Over Bergmair ............. 5

      A.    Bergmair Is Not Subject to General Jurisdiction ................................ 7

      B.    Bergmair Is Not Subject to Specific Jurisdiction ................................ 7

            1.    The Amended Complaint Does Not Establish Any Purposeful Direction of Bergmair's Activities Toward California ........................................................................ 8

                a.    The Amended Complaint Does Not Allege Any Intentional Act by Bergmair ........................................ 8

                      (i)    The Amended Complaint Does Not Plead Facts Establishing that Bergmair was the Guiding Spirit or a Direct Participant in the Alleged Tortious Conduct ..................................... 9

                      (ii)    The Amended Complaint Does Not Plead Facts Establishing that Any of the MindGeek Entities are Alter Egos of Bergmair ..................... 15

                b.    The Amended Complaint Does Not Allege Any Act by Bergmair Expressly Aimed at This Forum ............... 20

                c.    Bergmair Did Not Cause Harm that He Knew Would Be Suffered in This Forum ................................. 22

            2.    Bergmair Did Not Engage in Forum-Related Activities, Much Less Any Related to Plaintiff's Claims ......................... 22

            3.    The Exercise of Jurisdiction over Bergmair Would Not Be Reasonable ........................................................................ 24

                 a.    Bergmair Did Not Purposefully Inject Himself into California's Affairs .......................................... 24

                 b.    Bergmair Would Be Substantially Burdened by Litigating in This Forum .......................................... 25

                 c.    Litigating in California Would Create a Conflict of Sovereignty .......................................................... 26

                 d.    California Does Not Have a Substantial Interest in Adjudicating This Case ................................................ 27

                 e.    California Is Not the Most Efficient Forum ................... 27

                 f.    This Forum Would be More Convenient for Plaintiff .............................................................. 28

                 g.    An Appropriate Alternative Forum Exists ..................... 28

1

2

# TABLE OF CONTENTS
### (continued)

| | | Page |
|---|---|---:|
| | h.   Balancing of the Reasonableness Factors | 29 |
| C. | Fed. R. Civ. P. 4(k)(2) Does Not Provide a Basis for Jurisdiction Over Bergmair | 30 |
| II. | Plaintiff Has Failed to State a Claim Against Bergmair | 30 |
| A. | The Amended Complaint Fails to State a Claim on Any Count | 30 |
| | 1.   The Amended Complaint's Vague, Generalized Allegations and Shotgun Pleading Fail to State a Claim | 30 |
| | 2.   Section 230 Bars All of Plaintiff's Claims Against Bergmair | 35 |
| B. | The Amended Complaint Fails to Properly Allege a Valid Claim on Specific Counts | 36 |
| | 1.   The Trafficking Claims (Counts I, II, and IV) Fail to State a Claim | 37 |
| | 2.   The Child Pornography Claims (Counts V and VI) Fail to State a Claim | 38 |
| | 3.   The RICO Claims (Counts VII and VIII) Fail to State a Claim | 38 |
| | 4.   The California State Law Claims (Counts IX, X, XI, XII, XIII, XIV, XV, XVI and XVII) Fail to State a Claim | 39 |
| CONCLUSION | | 40 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A'lor Int'l, Ltd. v. Tappers Fine Jewelry, Inc.*,
  2012 WL 12921013 (C.D. Cal. Aug. 6, 2012) ....................................................21

*Advantage Lift Sys., Inc. v. O.M.E.R., S.p.A.*,
  1997 WL 398033 (S.D. Cal. March 19, 1997) ...................................................27

*AMA Multimedia LLC v. Wanat*,
  970 F.3d 1201 (9th Cir. 2020) .............................................................*passim*

*Amoco Egypt Oil Co. v. Leonis Navigation Co.*,
  1 F.3d 848 (9th Cir. 1993) ..................................................................26

*Apple Hill Growers v. El Dorado Orchards*,
  2019 WL 5827365 (N.D. Cal. Nov. 7, 2019) .....................................................34

*Asahi Metal Indus. Co. v. Superior Ct.*,
  480 U.S. 102 (1987) .........................................................................25

*Ascentive LLC v. Opinion Corp.*,
  842 F. Supp. 2d 450 (E.D.N.Y. 2011) ..........................................................36

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .....................................................................31, 34

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
  874 F.3d 1064 (9th Cir. 2017) ...........................................................21, 30

*Balistreri v. Pacifica Police Dep't.*,
  901 F.2d 696 (9th Cir. 1988) ..................................................................30

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
  223 F.3d 1082 (9th Cir. 2000) ............................................................7, 20

*Beatport LLC v. SoundCloud Ltd.*,
  2020 WL 3977602 (C.D. Cal. July 13, 2020) ....................................................35

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................31

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

NY-2369739

*In re Boon Global Ltd.*,
  923 F.3d 643 (9th Cir. 2019) .................................................................. *passim*

*Bravado Int'l Grp. v. Straughn*,
  2010 WL 11515508 (C.D. Cal. Jan. 25, 2010) ...................................... 21

*Broidy Capital Management, LLC v. Qatar*,
  2018 WL 9943551 (C.D. Cal. Aug. 22, 2018) .................................. 14, 15

*Brown v. General Steel Domestic Sales, LLC*,
  2008 WL 2128057 (C.D. Cal. May 19, 2008) ........................................ 13

*Burger King v. Rudzewicz*,
  471 U.S. 462 (1985) ........................................................................... 8, 21

*C&M Cafe v. Kinetic Farm, Inc.*,
  2016 WL 6822071 (N.D. Cal. Nov. 18, 2016) ....................................... 39

*Calder v. Jones*,
  465 U.S. 783 (1984) ............................................................................ *passim*

*Callaway Golf Corp. v. Royal Canadian Golf Ass'n*,
  125 F. Supp. 2d 1194 (C.D. Cal. 2000) ........................................... 25, 26

*Calvert v. Huckins*,
  875 F. Supp. 674 (E.D. Cal. 1995) ................................................... 15, 19

*Capri Trading Corp. v. Bank Bumiputra Malaysia Berhad*,
  812 F. Supp. 1041 (N.D. Cal. 1993) ..................................................... 28

*Cisco Systems, Inc. v. Link US, LLC*,
  2019 WL 6682838 (N.D. Cal. Dec. 6, 2019) ........................................ 11

*Coastal Abstract Serv., Inc. v. First American Title Ins. Co.*,
  173 F.3d 725 (9th Cir. 1999) ................................................................ 32

*Cockburn v. SWS Indus., Inc.*,
  2011 WL 2295145 (W.D. Wash. June 8, 2011) ..................................... 21

*Comprehensive Toxicology Billing LLC v. Aliya Medcare Fin. LLC*,
  2016 WL 3475329 (C.D. Cal. Feb 23, 2016) ........................................ 16

*Cook v. Champion Shipping AS*,
  732 F. Supp. 2d 1029 (E.D. Cal. 2010) ................................................ 28

v

*Core-Vent Corp. v. Nobel Industries AB*,
  11 F.3d 1482 (9th Cir. 1993) ........................................................................ *passim*

*Cybersell, Inc. v. Cybersell, Inc.*,
  130 F.3d 414 (9th Cir. 1997) ................................................................................ 20

*Daoud v. Societe Generale De Banque Au Liban, S.A.L.*,
  2021 WL 3579359 (C.D. Ca. July 6, 2021) (Carney, J.) ..................................... 21

*Davis v. Metro Productions, Inc.*,
  885 F.2d 515 (9th Cir. 1989) .................................................................. 9, 13, 32

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
  2015 WL 12731929 (C.D. Cal. May 8, 2015) ...................................................... 33

*Doe v. Am. Red Cross*,
  112 F.3d 1048 (9th Cir. 1997) .............................................................................. 22

*Doe v. Unocal*,
  248 F.3d 915 (9th Cir. 2001) ........................................................................ 17, 18

*Dole Food Co., Inc. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002) ............................................................... 24, 27, 28

*Dynascan Tech., Inc. v. Plasmedia Productions, Inc.*,
  2010 WL 11520614 (C.D. Cal. Jan. 21, 2010) (Carney, J.) ............................. 9, 16

*Ewing v. Encor Solar, LLC*,
  2019 WL 277386 (S.D. Cal. Jan. 22, 2019) ........................................................ 16

*Facebook, Inc. v. Power Ventures, Inc.*,
  844 F.3d 1058 (9th Cir. 2016) .............................................................................. 32

*Fagbohungbe v. Caltrans*,
  2014 WL 644008 (N.D. Cal. Feb. 19, 2014) ........................................................ 31

*Flint CPS Inks N. America LLC v. Trend Offset Printing Ser., Inc.*,
  2020 WL 7862127 (C.D. Cal. Dec. 14, 2020) ..................................................... 33

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  141 S. Ct. 1017 (2021) ........................................................................................... 7

*Franco American Corp. v. Kim Seng Co.*,
  2011 WL 13220312 (C.D. Cal. June 24, 2011) .................................................... 34

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
  905 F.3d 597 (9th Cir. 2018) ................................................................. 28

*Getz v. Boeing Co.*,
  654 F.3d 852 (9th Cir. 2011) ................................................................. 12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ................................................................................. 7

*Green v. Hepta Run, Inc.*,
  2020 WL 1638273 (C.D. Cal. Apr. 2, 2020) ................................... 13, 15

*Hall v. Fiat Chrysler America US LLC*,
  2021 WL 3560231 (C.D. Cal. July 20, 2021) (Carney, J.) ................. 38

*Harmoni Int'l Spice, Inc. v. Bai*,
  2016 WL 6542731 (C.D. Cal. May 24, 2016) ..................................... 39

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003) ................................................................. 5

*Holland America Line, Inc. v. Wärtsilä N. America, Inc.*,
  485 F.3d 450 (9th Cir. 2007) ........................................................... 20, 30

*Iconlab, Inc. v. Bausch Health Cos.*,
  828 F. App'x 363 (9th Cir. 2020) ........................................... 16, 17, 18

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ................................................................................. 7

*Just Film, Inc. v. Merchant Services, Inc.*,
  2010 WL 4923146 (N.D. Cal. Nov. 29, 2010) ..................................... 12

*In re JUUL Labs, Inc. Marketing, Sales Practices and Products
  Liability Litigation*,
  497 F. Supp. 3d 552 (N.D. Cal. 2020) .......................................... 32, 39

*Keeton v. Hustler Mag., Inc.*,
  465 U.S. 770 (1984) ............................................................................... 11

*Kieu Hoang v. Lang Van, Inc.*,
  2019 WL 6654130 (C.D. Cal. July 1, 2019) ....................................... 33

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) ........................................................................ 36

*Kramer Motors, Inc. v. British Leyland, Ltd.*,
    628 F.2d 1175 (9th Cir. 1980) .................................................................. 17, 19

*Langley v. Guiding Hands School, Inc.*,
    2021 WL 978950 (E.D. Cal. Mar. 16, 2021) ........................................................ 15

*Littleton v. Experian Info. Sol., Inc.*,
    2015 WL 4638308 (N.D. Cal. Aug. 4, 2015) ....................................................... 35

*Marsh v. Zaazoom Solutions, LLC*,
    2012 WL 952226 (N.D. Cal. Mar. 20, 2012) ....................................................... 11

*MH Pillars, Ltd. v. Realini*,
    2017 WL 916414 (N.D. Cal. Mar. 18, 2017) ....................................................... 16

*Microsoft Corp. v. Gulfcoast Software Solutions LLC*,
    2016 WL 4543231 (W.D. Wash. Jan. 4, 2016) ............................................... 14, 15

*O'Connor v. Uber Technologies, Inc.*,
    2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) ....................................................... 33

*Paccar Int'l, Inc. v. Com'l Bank of Kuwait, S.A.K.*,
    757 F.2d 1058 (9th Cir. 1985) .................................................................. *passim*

*In re Packaged Seafood Products Antitrust Litigation*,
    2022 WL 943427 (S.D. Cal. Mar. 28, 2022) ................................................... 11, 12

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998) ........................................................................ 28

*Pebble Beach Co. v. Caddy*,
    453 F. 3d 1151 (9th Cir. 2006) ....................................................................... 20

*Perkumpulan Invest. Crisis Ctr. Dressel—WBG v. Wong*,
    2012 WL 13024801 (W.D. Wash. April 6, 2012) ............................................. 6, 28

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) ..................................................................... 8, 22

*Ranza v. Nike*,
    793 F.3d 1059 (9th Cir. 2015) ............................................................. 16, 17, 18

*Reflex Media, Inc. v. Luxy Ltd.*,
　　2021 WL 945248 (C.D. Cal. Feb. 5, 2021) ........................................................ 28

*Reves v. Ernst & Young*,
　　507 U.S. 170 (1993) ........................................................................................... 39

*Rocke v. Canadian Auto. Sport Club*,
　　660 F.2d 395 (9th Cir. 1981) ...................................................................... 26, 29

*Salesbrain, Inc. v. Angelvision Technologies*,
　　2013 WL 1191236 (N.D. Cal. Mar. 21, 2013) ............................................ 14, 15

*Sanford v. MemberWorks, Inc.*,
　　625 F.3d 550 (9th Cir. 2010) ............................................................................. 39

*Schwarzenegger v. Fred Martin Motor Co.*,
　　374 F.3d 797 (9th Cir. 2004) ........................................................................... 6, 7

*Scott v. Breeland*,
　　792 F.2d 925 (9th Cir. 1986) ............................................................................... 6

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
　　119 F. Supp. 3d 1213 (C.D. Cal. 2015) .............................................................. 31

*Securities and Exchange Comm'n v. Ferrante*,
　　2019 WL 8230852 (C.D. Cal. Jan. 23, 2019) (Carney, J.) .................................. 35

*Securities and Exchange Comm'n v. Jammin Java Corp.*,
　　2016 WL 6595133 (C.D. Cal. July 18, 2016)
　　........................................................................................................... 9, 10, 11, 12

*Shimmick Constr. Co. v. Officine Meccaniche Galletti-O.M.G.S.R.L.*,
　　2014 WL 5847440 (S.D. Cal. Nov. 12, 2014) ..................................................... 19

*Sinatra v. Nat'l Enquirer*,
　　854 F.2d 1191 (9th Cir. 1988) ........................................................................... 26

*Sollberger v. Wachovia Sec., LLC*,
　　2010 WL 2674456 (C.D. Cal. June 30, 2010) ..................................................... 35

*Swartz v. KPMG LLP*,
　　476 F.3d 756 (9th Cir. 2007) ............................................................................... 6

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

NY-2369739

*Symettrica Entertainment, Ltd. v. UMG Recordings, Inc.*,
 2019 WL 8806093 (C.D. Cal. Sept. 20, 2019) (Carney, J.) ........................ *passim*

*The Explorastore, LLC v. Cal. Science Ctr. Found.*,
 2005 WL 1502281 (D. Or. June 23, 2005) ......................................................... 21

*United States v. Bestfoods*,
 524 U.S. 51 (1998) .............................................................................................. 18

*United States v. X-Citement Video, Inc.*,
 513 U.S. 64 (1994) .............................................................................................. 38

*Vess v. Ciba-Geigy Corp., USA*,
 317 F.3d 1097 (9th Cir. 2003) ........................................................................... 35

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
 715 F.3d 716 (9th Cir. 2013) ............................................................................. 22

*Wady v. Provident Life & Accident Ins. Co.*,
 216 F. Supp. 2d 1060 (C.D. Cal. 2002) ............................................................. 19

*Wagh v. Metris Direct, Inc.*,
 348 F.3d 1102 (9th Cir. 2003) ........................................................................... 38

*Walden v. Fiore*,
 571 U.S. 277 (2014) ..................................................................................... 21, 22

*Wargaming.net Ltd. v. Blitzteam LLC*,
 2021 WL 3619956 (C.D. Cal. Jan. 20, 2021) (Carney, J.) .......... 25, 26, 27, 28, 29

*In re Wellpoint, Inc.*,
 865 F. Supp. 2d 1002 (C.D. Cal. 2011) ............................................................. 39

*Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*,
 2008 WL 450095 (M.D. Fla. Feb. 15, 2008) ..................................................... 36

*Wolf Designs, Inc. v. DHR & Co.*,
 322 F. Supp. 2d 1065 (C.D. Cal. 2004) ............................................................... 9

*World-Wide Volkswagen Corp. v. Woodson*,
 444 U.S. 286 (1980) ........................................................................................... 25

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

NY-2369739

**Statutes**

18 U.S.C. §§ 1591.................................................................................37

18 U.S.C. § 1594............................................................................37, 38

18 U.S.C. § 1962...........................................................................38, 39

18 U.S.C. §§ 1965.................................................................................6

18 U.S.C. §§ 2252...............................................................................38

18 U.S.C. § 2255...................................................................................6

47 U.S.C. § 230............................................................................35, 36

Cal. Civ. Proc. Code § 410.10 ............................................................6

Cal. Bus. & Prof. Code §§ 17200 and 17500 ...................................35

**Other Authorities**

Fed. R. Civ. P. 4............................................................................6, 30

Fed. R.Civ. P. 8..........................................................................31, 35

Fed. R. Civ. P. 9.................................................................................35

Fed. R. Civ. P. 12..............................................................................30

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

NY-2369739

### **INTRODUCTION[1]**

Defendant Bernd Bergmair is a resident of China.  He does not live or work in or have any connection to California or the United States.  Despite its extreme length, the Amended Complaint – just like the original Complaint in this case – does not describe a single concrete act by Bergmair in furtherance of the alleged tortious conduct giving rise to the case, much less any directed at California.  Nor does the Amended Complaint specify any business conducted by Bergmair on behalf of the MindGeek companies in California or aimed at California in any way.  The Amended Complaint does not allege that Bergmair had any contact with – or even knew of the existence of – Plaintiff, much less knew in what state she resided.  Nonetheless, Plaintiff asserts that he can be required to defend this case in a forum that is halfway around the world from his home country and with which he has no connection.  The sum total of the Amended Complaint's substantive allegations against Bergmair is that he exercised "oversight and control" of MindGeek and that he "approved" or "directed" certain corporate policies or practices.  Indeed, the only practical difference between the original Complaint and the Amended Complaint with respect to Bergmair is that the Amended Complaint inserts in a dozen places the same conclusory claim that Bergmair was "aware of," "approved" or "directed" various corporate policies or practices, as if repetition of the same mantra of conclusory allegations was an adequate substitute for specific factual allegations.  But such conclusory statements, which the Amended Complaint does not link in any way to the tortious conduct alleged or to California, are insufficient to satisfy the due process requirements for personal jurisdiction over Bergmair in this forum, and require dismissal of the Amended Complaint.

Plaintiff's claims against Bergmair fail on the merits as well.  The Amended

---

[1] Pursuant to the stipulation of the parties and the Court's Order, the page limit for this brief was expanded to 50 pages.  (ECF No. 128.)

1   Complaint includes 534 paragraphs of allegations – virtually all of which are

2   attributed collectively to "MindGeek" or "the MindGeek Defendants" without any

3   differentiation between defendants – with the only link to Bergmair being repeated

4   allegations, without any factual support, that he "approved" or "directed" corporate

5   actions.  Such vague, generalized allegations do not even begin to establish the

6   elements of the sixteen separate claims the Amended Complaint asserts against

7   Bergmair.  Nor is there any basis to impute liability for MindGeek's conduct to

8   Bergmair, who at most is alleged to be a corporate shareholder with no

9   management position.  Finally, even if any claim had been adequately pleaded –

10  and not a single one is – all of the claims against Bergmair are barred by Section

11  230 of the Communications Decency Act.  As a result, the Court should dismiss the

12  Amended Complaint for failure to state a claim against Bergmair.

13  ## RELEVANT BACKGROUND

14          The Amended Complaint was filed by Plaintiff Serena Fleites, who alleges

15  that, while she was still a minor, at the urging of two different boyfriends, she made

16  sexually explicit videos that were later posted by third parties on websites operated

17  by one or more of the MindGeek corporate defendants.  Setting aside the Amended

18  Complaint's dozens of pages of sensational and irrelevant accusations that have

19  nothing whatsoever to do with Plaintiff's claims, the gist of her allegations is that

20  MindGeek did not employ effective monitoring of content uploaded by third-party

21  users in violation of its published terms of service, and did not have an effective

22  process for removing the offending content.  (Amended Complaint, ECF No. 124-3

23  (hereinafter "Amended Compl.") ¶ 9.)

24          The defendants in the case include six MindGeek entities, four of which are

25  alleged to be foreign corporations with their principal places of business outside the

26  United States.  (Amended Compl. ¶¶ 19, 20, 22, 24.)  The two domestic MindGeek

27  entities are described only as generically providing "support" services to

28  MindGeek's websites.  (Amended Compl. ¶¶ 21, 23.)  In addition to Bergmair, the

Amended Complaint also names as defendants three individual officers of MindGeek, each of whom is alleged to be a resident of Canada (Amended Compl. ¶¶ 26, 27, 28); Visa, Inc., which is alleged to have provided credit card processing services to MindGeek (Amended Compl. ¶ 36); and 10 Doe defendants who are alleged to have been investors in MindGeek or a predecessor company (Amended Compl. ¶¶ 29, 30.)

Although the Amended Complaint runs 169 pages and asserts 17 different claims, it contains only limited references to Bergmair.  It identifies him as a resident of Hong Kong, China (Amended Compl. ¶ 25) and alleges that, while he is only a minority shareholder in MindGeek,[2] he nonetheless "represent[s]" and acts "on behalf of" a "group of uber wealthy individuals, families and groups" who are the "actual owners" of MindGeek and who exercise "control of the company."  (*Id*. at ¶¶ 4, 29, 87, 96, 100.)

The Amended Complaint does not allege a single specific action taken by Bergmair related to Plaintiff's alleged claims.  Instead, it offers two types of generalized, conclusory allegations.  First, it alleges generally that Bergmair oversaw and controlled MindGeek.  (Amended Compl. ¶¶ 25 ("wields ultimate control" of company); 29 ("directs" MindGeek's business); 99 (exercised "oversight and control over [its] strategic operations"); 100 ("approved" major company decisions).)  Second, the Amended Complaint alleges that Bergmair approved and directed MindGeek's conduct, primarily by repeating various alleged corporate policies or practices included in the original Complaint, but then, for each one, appending a conclusory allegation that Bergmair was "aware of," "approved" or "directed" these corporate actions.  (Amended Compl. ¶¶ 7 (MindGeek "business

---

[2] The Amended Complaint specifically alleges that testimony in a Canadian parliamentary hearing that Bergmair was the majority shareholder and owned over 50% of MindGeek was "not truthful," and instead alleges that Bergmair merely "represents" investors who hold a majority stake in the company.  (Amended Compl. ¶ 96.)

model" adopted at his "direction"); 25 ("aware of, approv[ed] and direct[ed]" conduct); 100 ("aware of, endorsed and directed" elements of business model); 171 (elements of business model adopted "under [his] direction and control"); 172 (corporate practice undertaken at his "direction"); 173 (corporate action adopted "with [his] approval and direction"); 181 ("aware of and approved" corporate practice); 193 ("implemented" aspect of corporate business model); 194-95 ("element" of business implemented with his "knowledge and approval"); 200 ("approved and directed" corporate action); 209 (corporate practice "known to and approved"); 213 (corporate practice undertaken "pursuant to [his] wishes"); 214 (corporate practice "approved").)  Underscoring the absence of factual support for them, many of these allegations simply lump all the individual defendants together, alleging without differentiation that they all directed or approved the supposed corporate practice.  (Amended Compl. ¶¶ 171, 181, 193, 194-95, 214.)

　　　　Inconsistent with the allegations that Bergmair oversaw and controlled MindGeek and directed its corporate actions, the Amended Complaint also alleges in numerous other places that various other individuals similarly controlled the company's operations.  First, the Amended Complaint alleges that each of the other Individual Defendants – not just Bergmair – "wield[ed] control over the operation of all MindGeek entities." (Amended Compl. ¶¶ 26, 27, 28.)  Second, it alleges that another group of individuals, the Doe defendants – who were the "actual owners" of MindGeek – "owned and ran" it and possessed ultimate "control of the company."  (Amended Compl. ¶¶ 4, 87, 96, 431.)  The Amended Complaint alleges that these owners acted as the "over-bosses" and "ultimate puppet masters" of the company.  (Amended Compl. ¶¶ 4, 431.)  Third, the Amended Complaint asserts that a group of the company's senior executives "had daily operational control" of the company, "actually control[led] and operate[d] all of [its] purported subsidiaries" and "controlled all the elements of MindGeek's business." (Amended Compl. ¶¶ 24, 78, 87, 97.)  Finally, the Amended Complaint describes the

4

Individual Defendants and the Doe defendants as exercising "collective control of the company" and alleges that "all of [them] actually exercise direct control over the entire corporate structure" of MindGeek.  (Amended Compl. ¶¶ 31, 171.)

Nowhere in its 534 paragraphs does the Amended Complaint identify a single concrete act taken by Bergmair, such as an email, letter, telephone call, meeting, transaction, or other affirmative act, in furtherance of the alleged wrongful conduct.  Despite asserting multiple separate claims, each with its own distinct elements, the Complaint does not even attempt to specify any conduct on the part of Bergmair that supposedly satisfies those elements.  There is no allegation that Bergmair ever took any action related to MindGeek's business in California or intentionally directed his conduct at the state in any manner.  Indeed, there is not a single factual allegation that Bergmair himself had any contact at all with California or took any action specifically directed at the state.  There is similarly no allegation that Bergmair was ever aware of Plaintiff, in what state she resides, or that her images were posted on MindGeek sites.

## ARGUMENT[3]

### I.   PLAINTIFF HAS NOT ESTABLISHED PERSONAL JURISDICTION OVER BERGMAIR

The allegations in the Amended Complaint are plainly insufficient to establish personal jurisdiction in this district over Bergmair, a resident of China with no connection to California.

Plaintiff bears the burden to establish that personal jurisdiction over each defendant is proper.  *AMA Multimedia LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020); *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128–29 (9th Cir. 2003).  To carry this burden, a plaintiff must "come

---

[3] In addition to the arguments set forth in this Memorandum, Bergmair joins in the motions and arguments of all the defendant MindGeek corporate entities (hereinafter "MindGeek Defendants"), and those of individual defendants Feras Antoon, David Tassillo and Corey Urman (hereinafter "Individual Defendants").

forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citation omitted). Although a plaintiff is required only to establish a prima facie showing of jurisdictional facts, "the standard is not toothless." *In re Boon Global Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019). "'[B]are bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

Where, as here, there is no applicable federal statute governing personal jurisdiction,[4] the district court must apply the law of the state in which it sits. *See* Fed. R. Civ. P. 4(k)(1)(A); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). California's long-arm statute allows courts to exercise jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution. *See* Cal. Civ. Proc. Code § 410.10. As a result, jurisdiction may be exercised over a nonresident defendant in California *only* if the party has "minimum contacts" with California, such that the exercise of jurisdiction

---

[4] Plaintiff alleges that the Court has personal jurisdiction over the defendants pursuant to 18 U.S.C. §§ 1965 and 2255 because she asserts claims under these statutes. (Amended Compl. ¶ 38.) However, neither statute applies here. First, although § 1965, the civil RICO statute, authorizes service of process in any judicial district of the United States, this provision is inapplicable to Bergmair since he lives outside the United States and was not served in any United States judicial district. Instead, he was sent a request by Plaintiffs to waive service outside the United States and then waived service from outside the United States. (*See* Stipulation to Set Time to Respond to Initial Complaint and Expand Page Limits at 2, (ECF No. 27) (individual defendants, including Bergmair, "are foreign citizens residing outside the United States," and Plaintiffs' "waiver request was sent to them outside any judicial district of the United States").) *See Perkumpulan Invest. Crisis Ctr. Dressel—WBG v. Wong*, 2012 WL 13024801, at *8 (W.D. Wash. April 6, 2012) (alternative service methods under Fed. R. Civ. P. 4 do not constitute service under RICO statute). Similarly, 18 U.S.C. § 2255(c)(2) permits service in any district in which the defendant "is an inhabitant … or may be found." Since there is no district in the United States where Bergmair is an inhabitant or may be found, and he was not served at all, this statute is also inapplicable to him. In any event, even if the nationwide service provisions of these statutes apply to Bergmair, and the relevant analysis is whether he had sufficient contacts with the United States, instead of California, Plaintiff's allegations are still insufficient for jurisdiction, since the Amended Complaint alleges no contacts by Bergmair with either California or the United States as a whole. *See infra* at Section I(C).

"does not offend traditional notions of fair play and substantial justice."
*Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S.
310, 316 (1945).)  No such contacts exist here.

### A.   Bergmair Is Not Subject to General Jurisdiction

General jurisdiction exists only where a party's contacts with the forum state
are "substantial or continuous and systematic" so as to "approximate physical
presence" in the state.  *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d
1082, 1086 (9th Cir. 2000).  "For an individual, the paradigm forum for the exercise
of general jurisdiction is the individual's domicile."  *Goodyear Dunlop Tires
Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *Ford Motor Co. v. Mont.
Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).  Here, the Amended Complaint
sets forth that Bergmair is a resident of China (Amended Compl. ¶ 25) and alleges
no connections to California, much less the type of "continuous and systematic"
contacts necessary to establish general jurisdiction over him.  As a result, Bergmair
is not subject to general jurisdiction in this district.

### B.   Bergmair Is Not Subject to Specific Jurisdiction

The Ninth Circuit employs a three-part test to determine if due process
permits the exercise of specific jurisdiction over a nonresident defendant, allowing
it only where (1) the defendant has purposefully directed his activities toward the
forum;[5] (2) the claim arises out of or results from the defendant's forum-related
activities; *and* (3) the  exercise of jurisdiction is reasonable.  *AMA Multimedia*, 970
F.3d at 1208.  Unless all three requirements are satisfied, jurisdiction in the forum
would deprive the defendant of due process of law.  *Id*.  Moreover, as the Supreme
Court has mandated, "each party's contacts with the forum state must be assessed
individually."  *In re Boon Global*, 923 F.3d at 651 (quoting *Calder v. Jones*, 465

---

[5] Since Plaintiff's claims sound in tort, the "purposeful direction" analysis, rather than the "purposeful availment" analysis, is to be applied.  *AMA Multimedia*, 970 F.3d at 1208.

U.S. 783, 790 (1984)).  Applying this standard, Plaintiff is unable to establish any
of the three required elements for specific jurisdiction over Bergmair.

### 1. The Amended Complaint Does Not Establish Any Purposeful Direction of Bergmair's Activities Toward California

To determine if a defendant purposefully directed his activities at the forum
state, the Ninth Circuit applies the three-part *Calder v. Jones* effects test, which
requires that the defendant (1) committed an intentional act (2) expressly aimed at
the forum state, (3) causing harm that the defendant knew was likely to be suffered
in the forum state. *AMA Multimedia*, 970 F.3d at 1208–09; *Picot v. Weston*, 780
F.3d 1206, 1214 (9th Cir. 2015).  Plaintiff fails to establish any of these elements
with respect to Bergmair.

#### a. The Amended Complaint Does Not Allege Any Intentional Act by Bergmair

Under *Calder*, a plaintiff must first identify "an intentional act" taken by the
defendant that gives rise to the action.  *Picot*, 780 F.3d at 1214.  Here, despite its
length, the Amended Complaint does not specify a single concrete action taken by
Bergmair in furtherance of the alleged schemes.  Instead, it contains 169 pages of
accusations of tortious conduct by MindGeek, along with repeated conclusory
assertions that Bergmair "approved" or "directed" various corporate practices or
"elements" of its "business model."  But personal jurisdiction is proper only where
"the contacts proximately result from actions by the defendant *himself* that create a
'substantial connection' with the forum State."  *Burger King v. Rudzewicz,* 471
U.S. 462, 475 (1985) (emphasis in original) (citation omitted).  Conduct by an out-
of-state individual on behalf of a corporation is sufficient to confer personal
jurisdiction over that individual only where he was the "primary participant" in the
alleged wrongdoing and "acted purposefully" in directing those activities.  *Calder*,
465 U.S. at 790; *Burger King*, 471 U.S. at 480 n.22.

Similarly, the Ninth Circuit has recognized that "a person's mere association

8

NY-2369739

with a corporation that causes injury in the forum state is not sufficient in itself to
permit that forum to assert jurisdiction over the person." *Davis v. Metro
Productions, Inc.*, 885 F.2d 515, 520 (9th Cir. 1989); *Symettrica Entertainment,
Ltd. v. UMG Recordings, Inc.*, 2019 WL 8806093, at *3 (C.D. Cal. Sept. 20, 2019)
(Carney, J.). Courts in the Ninth Circuit have found personal jurisdiction over an
individual based on conduct undertaken in their corporate capacity only where (1)
the individual exercised control and directly participated in the conduct forming the
basis for the plaintiff's claims; or (2) the corporation is the agent or alter ego of the
individual defendant. *See Dynascan Tech., Inc. v. Plasmedia Productions, Inc.*,
2010 WL 11520614, at *2 (C.D. Cal. Jan. 21, 2010) (Carney, J.); *Securities and
Exchange Comm'n v. Jammin Java Corp.*, 2016 WL 6595133, at *9 (C.D. Cal. July
18, 2016); *Wolf Designs, Inc. v. DHR & Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal.
2004). Plaintiff cannot satisfy either element here.

### (i)   The Amended Complaint Does Not Plead Facts Establishing that Bergmair was the Guiding Spirit or a Direct Participant in the Alleged Tortious Conduct

To satisfy the first element, a plaintiff's allegations must demonstrate that the
individual defendant was the "guiding spirit" or "central figure" in the challenged
corporate conduct. *In re Boon Global*, 923 F.3d at 651; *Davis*, 885 F.2d at 523 n.10
(citation omitted); *Symettrica Entertainment*, 2019 WL 8806093, at *3. Here, the
Amended Complaint's generalized allegations are insufficient to establish that
Bergmair directly participated – much less that he was the guiding spirit or central
figure – in the challenged conduct.

To begin with, in addition to being legally insufficient, the allegations that
Bergmair oversaw and controlled MindGeek and its corporate practices are simply
inconsistent with the Amended Complaint's repeated allegations that *other
individuals* – either alone or in various combinations – controlled the company's
operations. For example, the Amended Complaint alleges that the ten Doe

defendants "owned and ran" the company, possessed ultimate "control" of it, and
acted as the "over-bosses" and "ultimate puppet masters" of the company.
(Amended Compl. ¶¶ 4, 87, 96, 431.)  At the same time, it also alleges that each of
the three other Individual Defendants "wield[ed] control over the operation of all
MindGeek entities." (Amended Compl. ¶¶ 26, 27, 28.)  It also asserts that a group
of the company's senior executives (consisting of the other Individual Defendants
and at least three other company executives) "had daily operational control" of the
company, "actually control[led] and operate[d] all of [its] purported subsidiaries"
and "controlled all the elements of MindGeek's business"  (Amended Compl. ¶¶
24, 78, 87, 97.)  In yet another place, the Amended Complaint alleges that the
Individual Defendants and the Doe defendants exercised "collective control" of
MindGeek, asserting that "all of [them] actually exercise direct control over the
entire corporate structure" of MindGeek.  (Amended Compl. ¶ 31, 171.)  In a
transparent effort to rope into this case as many individual corporate officials and
shareholders as possible, the Amended Complaint alleges that at least 16 other
individuals besides Bergmair – both collectively and in various combinations –
exercised "control" of MindGeek.  Such indiscriminate – and inconsistent –
allegations of corporate control need not be credited with respect to Bergmair or
any of the other Individual Defendants.

Even if the allegations involving Bergmair could be credited, courts in the
Ninth Circuit have repeatedly ruled that conclusory allegations that an individual
defendant owned and controlled a corporation engaged in the conduct giving rise to
the litigation are insufficient to meet the guiding spirit/direct participation standard.
For example, in *Securities and Exchange Commission v. Jammin Java Corp.*, 2016
WL 6595133, the Securities and Exchange Commission brought an enforcement
action against three individuals and the offshore shell companies that they "owned"
and "controlled," alleging participation in a pump-and-dump scheme.  *Id.* at *1,
*11.  The court dismissed the complaint, finding that it lacked personal jurisdiction

10

over the individual defendants.  The court ruled that the complaint "fail[ed] to allege in any more than conclusory language any personal conduct, if any, by these defendants in connection with" the scheme, and that the "conclusory allegation that the owner['s] actions are coexistent with that of the owned . . . entity is insufficient."  *Id*. at *9, *11.  *See also Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984) ("It does not of course follow from the fact that jurisdiction may be asserted over [the corporation] that jurisdiction may also be asserted over [its owner].").

Similarly, in *Cisco Systems, Inc. v. Link US, LLC*, 2019 WL 6682838 (N.D. Cal. Dec. 6, 2019), Cisco sued a company and its president for allegedly selling counterfeit Cisco goods.  The only allegations against the executive were that he was "intimately involved in operating" the company and "actively involved in [its] day-to-day management and operations."  *Id*. at *1.  The court found that the allegations were insufficient, ruling that "[i]f general allegations of managerial responsibilities . . . were sufficient to establish specific jurisdiction in this case, specific jurisdiction would extend to a company's officers in virtually every case where it extended to the company itself.  That result is inconsistent with Ninth Circuit precedent."  *Id*. at *4.  In *In re Packaged Seafood Products Antitrust Litigation*, 2022 WL 943427 (S.D. Cal. Mar. 28, 2022), plaintiffs sued a corporate CEO, alleging that he was a "hands on" manager who ran the company as his "miniature fiefdom," and that "nothing happened at [the company without [his] approval."  *Id*. at * 5.  The Court found that it did not have personal jurisdiction over the CEO, ruling that these allegations were insufficient to establish that he was the "primary participant" in the alleged corporate wrongdoing in the forum state.  *Id*.  In *Marsh v. Zaazoom Solutions, LLC*, 2012 WL 952226 (N.D. Cal. Mar. 20, 2012), the individual defendants were the "principals" who ran "the day-to-day operations" of the companies that allegedly defrauded the plaintiff and made "all significant strategic decisions for them."  *Id*. at *3.  The court found no personal

jurisdiction, since the complaint was "devoid of any allegations of a specific act" in furtherance of the scheme by the individual defendants. *Id.* at \*3, \*9. In *Just Film, Inc. v. Merchant Services, Inc.*, 2010 WL 4923146 (N.D. Cal. Nov. 29, 2010), the court found no personal jurisdiction over individual corporate executives whom plaintiff alleged had "directed and controlled" companies involved in the fraud, since the complaint did not provide specific facts to "explain *how* these Defendants controlled or directly participated" in the scheme. *Id.* at \*6 (emphasis added).

The vague allegations of control on the part of Bergmair here – that he purportedly acts on behalf of the majority owners of MindGeek, "wields ultimate control" of the company, exercises "oversight and control over [its] strategic operations," and approves its "major decisions" (Amended Compl. ¶¶ 25, 96, 99, 100) – are exactly the type of allegations that the courts in *Jammin Java*, *Cisco*, *Packaged Seafood Products*, *Marsh*, and *Just Film* found insufficient. Such allegations plainly do not meet the requirement that a plaintiff allege specific actions by the defendant himself showing that he was the "guiding spirit" or "central figure" in the challenged conduct. *See Symettrica Ent.*, 2019 WL 8806093, at \*3; *see also Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011) (plaintiff must allege "specific facts, transactions, or conduct" that give rise to personal jurisdiction in forum).

The remaining allegations against Bergmair here – that he directed or approved certain corporate practices or "elements" of its "business model" – are similarly deficient. This Court and other district courts in the Ninth Circuit have repeatedly ruled that allegations that an individual defendant directed or supervised the conduct giving rise to the plaintiff's claim are insufficient to establish personal jurisdiction. Instead, concrete factual allegations establishing that the individual defendant's direct participation made him the "guiding spirit" in the alleged wrongdoing are required. The requirement to make such a showing before imputing a corporation's conduct to an individual defendant is particularly significant in

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT
NY-2369739

Bergmair's case, since he is alleged at most to be merely a shareholder in the MindGeek companies and entitled to the protection of the corporate form. *See Davis*, 885 F.2d at 520 ("[T]here must be a reason for the court to disregard the corporate form."). For example, in *Symettrica Entertainment*, this Court dismissed the case against two individual corporate directors finding no personal jurisdiction where the plaintiff alleged only that they had "specifically authorized, directed, or participated in the wrongful conduct alleged." 2019 WL 8806093, at *3. The Court ruled that these "conclusory allegations" were insufficient to demonstrate that the director defendants were the "guiding spirit" or "central figures" behind the alleged wrongdoing. *Id*.

Similarly, in *Green v. Hepta Run, Inc.,* 2020 WL 1638273 (C.D. Cal. Apr. 2, 2020), the plaintiff brought an action against his corporate employer and its CEO/owner asserting wage and hour claims. The plaintiff alleged that the owner had "approved" and "set in motion" the corporate "business model" leading to the alleged employment law violations in the case. *Id*. at *2. The court held that the plaintiff's allegations "regarding [the owner's] role in creating [the company] and approving its business model are insufficient to allow this Court to exercise specific jurisdiction over him." *Id*. at *3. The court ruled that such allegations did not satisfy the requirement that plaintiff plead facts establishing that the owner was the "guiding spirit" behind the alleged wage and hour violations. *Id*. In *Brown v. General Steel Domestic Sales, LLC*, 2008 WL 2128057 (C.D. Cal. May 19, 2008), the plaintiff brought an action against a corporation and its owner asserting various claims arising out of the company's allegedly misleading advertising. The complaint alleged that the individual defendant was a "principal" of the company who "formulates, controls, directs, supervises, perpetuates, manages and has knowledge of and acquiesces in the practices and policies" of the company" but did not allege facts showing that he was "personally responsible for" or had "authorized" the allegedly misleading advertisements. *Id*. at *9, *12. The court

13

granted a motion to dismiss, finding that, "[a]t most, these allegations indicate that [the defendant] plays a broad managerial role within the company; they in no way suggest that he was the 'guiding spirit' behind [the company's] advertising." *Id*. at *11. In *Microsoft Corp. v. Gulfcoast Software Solutions LLC*, 2016 WL 4543231 (W.D. Wash. Jan. 4, 2016), Microsoft sued a company and one of its officers for copyright infringement. The complaint alleged that the officer "managed, supervised and controlled every aspect of his company's actions in relation to this case," and that the transactions at issue were "performed under his authority and supervision." *Id*. at *5. The Court found that these allegations were insufficient to establish personal jurisdiction since they showed, at most, that the officer defendant played "a broad managerial role" in the company, but did not establish that he "actively participated" in the alleged infringement or was the "guiding spirit" behind it. *Id*. In *Broidy Capital Management, LLC v. Qatar*, 2018 WL 9943551 (C.D. Cal. Aug. 22, 2018), the plaintiff brought suit against the nation of Qatar, claiming that it hacked plaintiff's computers. Plaintiff also named as defendants a consulting firm and one of its principals, but alleged only that they had "personally supervised" the operation and had "coordinate[d] and implement[ed] the hack." *Id*. at *1–2. The court found that such "conclusory allegations" were insufficient to demonstrate personal jurisdiction over the firm and its principal. *Id*. at *5. In *Salesbrain, Inc. v. Angelvision Technologies*, 2013 WL 1191236 (N.D. Cal. Mar. 21, 2013), the plaintiff alleged that a company and its principal shareholder infringed its copyrights. The plaintiff asserted that the infringement was "performed by, at the direction of, or under the supervision of" the individual shareholder, who had "a 'financial interest'" in the infringing activity. *Id*. at *2. The court ruled that these allegations were simply "too vague and conclusory" to establish that he had the degree of participation and control necessary to confer personal jurisdiction. The court noted that, by contrast, cases in which courts have found that jurisdiction existed over individual corporate employees involved

allegations of "specific acts in furtherance of the specific wrongful conduct at issue." *Id*. at *8–9.

Thus, allegations similar to those against Bergmair here have been found to be insufficient to satisfy the "guiding spirit" requirement.  The allegations of approval or direction of corporate practices by Bergmair are indistinguishable from those found insufficient in *Symettrica Entertainment* (defendant "specifically authorized, directed or participated in the wrongful conduct alleged"), *Green* (defendant "approved" and "set in motion" the corporate "business model" leading to the alleged violations), *Brown* (defendant "formulates, controls, directs, supervises" challenged practices), *Microsoft* (defendant "managed, supervised and controlled every aspect of his company's actions in relation to this case," and wrongdoing was "performed under his authority and supervision"), *Broidy* (defendant "personally supervised," "coordinate[d] and implement[ed]" wrongdoing), and *Salesbrain* (wrongdoing "performed by, at the direction of, or under the supervision of" defendant).

**(ii)     The Amended Complaint Does Not Plead Facts Establishing that Any of the MindGeek Entities are Alter Egos of Bergmair**

Plaintiff similarly cannot satisfy the alter ego test to obtain personal jurisdiction over Bergmair based on MindGeek's corporate conduct.

To begin with, application of the alter ego doctrine is "recognized as an extreme remedy" and will be employed "only in exceptional circumstances." *Langley v. Guiding Hands School, Inc.*, 2021 WL 978950, at *4 (E.D. Cal. Mar. 16, 2021) (quoting *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995)).  To impute a corporation's jurisdictional contacts to an out-of-forum corporate shareholder on an alter ego theory, the plaintiff's allegations must establish that (1) there is "such unity of interest" and ownership that the separate personalities of the two parties no longer exist; *and* (2) failure to disregard their separate identities

"would result in fraud or injustice." *Iconlab, Inc. v. Bausch Health Cos.,* 828 F.
App'x 363, 364 (9th Cir. 2020) (quoting *Ranza v. Nike*, 793 F.3d 1059, 1073 (9th
Cir. 2015).  To make this showing, a plaintiff must allege "specific facts"
supporting both elements.  *Comprehensive Toxicology Billing LLC v. Aliya
Medcare Fin. LLC*, 2016 WL 3475329, at *6 (C.D. Cal. Feb 23, 2016); *Dynascan
Tech., Inc.*, 2010 WL 11520614, at *5.

Here, the Amended Complaint's boilerplate alter ego allegations do not even
come close to the type of specific facts required.  It alleges that all four Individual
Defendants and up to ten unnamed Doe defendants are alter egos of every single
MindGeek entity.  (Amended Compl. ¶ 31.)  In support of this allegation, the
Amended Complaint simply lists the various factors to which courts look in the
alter ego analysis, as if cut-and-pasted from a hornbook, and alleges without detail
that the MindGeek entities engaged in such conduct.  These allegations fail to even
mention Bergmair, much less identify any specific actions he took in relation to any
of the individual MindGeek entities.  (*Id.* at ¶¶ 31-32.)  Courts repeatedly reject as
insufficient such conclusory alter ego allegations.  *See In re Boon Global*, 923 F.3d
at 654; *Symettrica Entertainment,* 2019 WL8806093, at *4.  *See also Ewing v.
Encor Solar, LLC*, 2019 WL 277386, at *5 (S.D. Cal. Jan. 22, 2019) ("perfunctory
and conclusory statements not supported by facts" are insufficient to support alter
ego finding); *MH Pillars, Ltd. v. Realini*, 2017 WL 916414, at *14 (N.D. Cal. Mar.
18, 2017) (complaint deficient where "it contains primarily conclusory allegations
that merely recite the factors considered by courts when evaluating alter ego
claims").

In addition to her failure to offer specific facts, Plaintiff's alter ego claim that
Bergmair dominates and controls MindGeek to the degree that the "separate
personalities of the two parties no longer exist" is affirmatively inconsistent with
basic facts alleged in the Amended Complaint about Bergmair and the company.
The "unity of interest" element of the alter ego test "envisions pervasive control"

16

1  over a company, such as when an owner "dictates every facet of [its] business,"

2  including "matters of day-to-day operation." *Ranza*, 793 F.3d at 1073 (citation

3  omitted); *In re Boon Global*, 923 F.3d at 653 (same). The Ninth Circuit has

4  repeatedly identified control of a corporation's daily operations as the touchstone of

5  the alter ego analysis. *See Doe v. Unocal*, 248 F.3d 915, 926 (9th Cir. 2001) (alter

6  ego relationship typified by owner's "control of the [company's] internal affairs or

7  daily operations"); *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175,

8  1177 (9th Cir. 1980) (alter ego finding requires that owner "controls the internal

9  affairs of [the company] or determines how it operates on a daily basis"). *See also*

10  *Iconlab*, 828 F. App'x at 364–65 (finding of no alter ego relationship where

11  owner's corporate activities, while extensive, did not amount to "day-to-day

12  involvement in [companies'] governance"); *Ranza*, 793 F.3d at 1074-75 (finding no

13  alter ego relationship where owner was "heavily involved" in company's business

14  but did not direct "routine, day-to-day operations"). But here, the Amended

15  Complaint alleges that *other individuals* – besides Bergmair – controlled the

16  company's daily operations. For example, as part of its indiscriminate and

17  contradictory allegations of control, the Amended Complaint asserts that a group of

18  MindGeek's senior executives (and thus not Bergmair) "had daily operational

19  control" of the company, "actually control[led] and operate[d] all of [its] purported

20  subsidiaries" and "controlled all the elements of MindGeek's business" (Amended

21  Compl. ¶¶ 24, 78, 87, 97.) Taking these allegations at face value, they refute any

22  assertion that Bergmair was the alter ego of MindGeek. "Daily operational control"

23  by others of "all the elements of MindGeek's business" is flatly inconsistent with

24  the claim that Bergmair so dominated the company that it was a "mere

25  instrumentality" of his.

26      Also contradicting the claim that Bergmair (or any of the other Individual

27  Defendants) was the alter ego of MindGeek are the Amended Complaint's

28  allegations that yet another group of individuals, the Doe defendants, who were the

"actual owners" and majority shareholders of the company, possessed ultimate "control" of it, and acted as the "over-bosses" and "ultimate puppet masters" of the company.  (Amended Compl. ¶¶ 4, 87, 96, 431.)  The existence of majority shareholders who were MindGeek's "ultimate puppet masters" further refutes the claim that Bergmair was himself the alter ego of the company.

Similarly inconsistent with the idea that Bergmair himself so singularly dominated the company that it was his alter ego is the Amended Complaint's allegations that a group of individuals (made up the Individual Defendants, along with the Doe defendants) exercised "*collective control*" of MindGeek, and that "*all of [them]* actually exercise direct control over the entire corporate structure*" of MindGeek.  (Amended Compl. ¶ 31, 171 (emphasis added).)

Moreover, even crediting the Amended Complaint's conclusory allegations of Bergmair's role, the Ninth Circuit has specifically found that actions "consistent with a [party's] investor status," such as Bergmair's purportedly exercising oversight of MindGeek and approving its major decisions and corporate policies, do *not* give rise to alter ego status.  *See Unocal*, 248 F.3d at 926 (quoting *United States v. Bestfoods*, 524 U.S. 51, 69 (1998)).  Indeed, courts have specifically found that such actions, even in conjunction with other corporate involvement, do not give rise to an alter ego relationship.  *See Iconlab*, 828 F. App'x at 364–65 (affirming district court's finding of no alter ego relationship where owner "approved [companies'] large purchases," as well as financed their activity, issued collective media releases and submitted consolidated earnings reports, since none of these activities reflected "day-to-day involvement in [companies'] governance"); *Ranza*, 793 F.3d at 1074-75 (where owner was "heavily involved" in company's operations, including approving "large purchases," controlling budget and setting general policies, but did not direct "routine, day-to-day operations," its role in "macromanagement issues" did not indicate alter ego relationship); *Unocal*, 248 F.3d at 927 (owner's "macro-management" of company, including involvement in company's

acquisitions and expenditures, "formulation of general business policies and strategies" and provision of financing did not amount to alter ego relationship); *Kramer*, 628 F.2d at 1177 (fact that owner had "general executive responsibility for the operation" of company, including "review[ing] and approv[ing] its major policy decisions," and "work[ing] closely" with company executives on pricing, was insufficient for alter ego status); *Calvert*, 875 F. Supp. at 679 (to establish alter ego status, plaintiff must show that owner does more than "exercise the broad oversight" of company and set "general policies," but instead demonstrate that he "control[s] 'how the company will be operated on a day-to-day basis'" (citation omitted)).

The Amended Complaint's allegations also fail the "injustice" element of the alter ego test.  The Amended Complaint does not allege that five of the six MindGeek corporate defendants (including the two U.S.-based ones) are insolvent or otherwise unable to satisfy a potential judgment against them.  The Amended Complaint alleges in conclusory fashion that "the parent company" (presumably defendant MindGeek, S.a.r.l.) "records massive losses, not profits" (Amended Compl. ¶ 132), but makes no similar allegations with respect to any of the other MindGeek corporate defendants.  At the same time, it estimates that MindGeek as a whole generates in excess of $460 million in annual revenues.  (Amended Compl. ¶ 43.)[7]  Plaintiff is unable to satisfy the "injustice" element of the alter ego test if she can recover a judgment against the remaining defendants.  *See Shimmick Constr. Co. v. Officine Meccaniche Galletti-O.M.G.S.R.L.*, 2014 WL 5847440, at *7 (S.D. Cal. Nov. 12, 2014); *Wady v. Provident Life & Accident Ins. Co.*, 216 F. Supp. 2d 1060, 1070 (C.D. Cal. 2002).

---

[7] In any event, the Andreou Declaration attests that each of the MindGeek Defendants is adequately capitalized, has its own bank accounts and observes all necessary corporate formalities.  (May 23, 2022 Declaration of Andreas Alkiviades Andreou in Support of the MindGeek Defendants' Motion to Dismiss ¶¶ 15, 19, 22, 26, 29-30, 32, 34-35.)

Thus, there is no basis to impute the jurisdictional contacts of any MindGeek entities to Bergmair under an alter ego theory. As a result, Plaintiff has failed to establish any "intentional act" by Bergmair that would satisfy the first of the three required prongs of the *Calder* test.

**b.    The Amended Complaint Does Not Allege Any Act by Bergmair Expressly Aimed at This Forum**

Plaintiff also fails to satisfy the second prong of the *Calder* effects test. To satisfy this element, a plaintiff must establish not merely that their injury in the forum was foreseeable to the defendant, but that the defendant expressly aimed his conduct at the forum. *Pebble Beach Co. v. Caddy*, 453 F. 3d 1151, 1156–60 (9th Cir. 2006); *Bancroft & Masters*, 223 F.3d at 1087–88. But the Amended Complaint does not even attempt to link the vague alleged conduct attributed to Bergmair to California. The Amended Complaint is devoid of any facts suggesting that the particular actions it alleges in conclusory fashion against Bergmair – oversight of MindGeek and approval and direction of its business model and corporate policies – were expressly aimed at California.

Moreover, to satisfy the express aiming requirement, a plaintiff must demonstrate that the defendant "engaged in wrongful conduct *targeted at a plaintiff whom the defendant knows to be a resident of the forum state*." *Bancroft & Masters*, 223 F.3d at 1087 (emphasis added). *See also Holland America Line, Inc. v. Wärtsilä N. America, Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) (*Bancroft* and *Calder* require the defendant "to individually and wrongfully target the plaintiff"). Here, there is no allegation that Bergmair knew of Plaintiff's existence, much less knew whether she was a resident of California. This lack of "individualized targeting" is fatal to the claim of personal jurisdiction. *See Bancroft & Masters*, 223 F.3d at 1088 (the required showing of "individualized targeting" is missing where "there was no showing that the defendants even knew of the existence of the plaintiffs" (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir.

20

1    1997)).[8]

2            Indeed, the Amended Complaint does not allege that the elements of

3    MindGeek's purportedly improper business model were targeted at, or limited to,

4    California.  The general application of such policies to its websites, which have a

5    worldwide audience, affirmatively suggests that the alleged conduct was not

6    "expressly aimed" at California.  Instead, it indicates that any effects felt in

7    California were the product of random geographical dispersion rather than any

8    "individualized targeting" by MindGeek or Bergmair.  *See Axiom Foods, Inc. v.*

9    *Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070–71 (9th Cir. 2017) (where defendant

10   emailed newsletter to over 300 recipients, ten of whom were in California, "[i]t can

11   hardly be said that California was the focal point both of the newsletter and of the

12   harm suffered" (internal punctuation omitted)).  In any event, jurisdiction is proper

13   only where it is "based on [a defendant's] own affiliation with the State, not based

14   on the 'random, fortuitous or attenuated' contacts he makes by interacting with

15   other persons affiliated with the State."  *Walden v. Fiore*, 571 U.S. 277, 286 (2014)

16   (quoting *Burger King*, 471 U.S. at 475).  The jurisdictional analysis "looks to the

17   defendant's contacts with the forum State itself, not the defendant's contacts with

18   persons who reside there."  *Daoud v. Societe Generale De Banque Au Liban,*

19   *S.A.L.*, 2021 WL 3579359, at *3 (C.D. Ca. July 6, 2021) (Carney, J.) (quoting

20   *Walden*, 571 U.S. at 285).  As a result, even the alleged injuries suffered by

21   Plaintiff, a California resident, do not create a sufficient connection between

22   _____

23   [8] *See also A'lor Int'l, Ltd. v. Tappers Fine Jewelry, Inc.*, 2012 WL 12921013, at *6 (C.D. Cal. Aug. 6, 2012) (no express aiming where defendant claimed that it had "never heard of" plaintiff prior to suit and plaintiff offered no factual

24   allegations to contradict this); *Bravado Int'l Grp. v. Straughn*, 2010 WL 11515508, at *6 (C.D. Cal. Jan. 25, 2010) (effects test not satisfied where no allegations that

25   "defendants even knew [plaintiff] existed]"); *Cockburn v. SWS Indus., Inc.*, 2011 WL 2295145, at *4 (W.D. Wash. June 8, 2011) (no showing of express aiming

26   where "none of the . . . defendants knew about plaintiff's existence"); *The Explorastore, LLC v. Cal. Science Ctr. Found.*, 2005 WL 1502281, at *3 (D. Or.

27   June 23, 2005) (effects test not satisfied where plaintiff "presented no evidence that [defendant] knew of its existence before the commencement of this action").

28

California and Bergmair.  The fact that a plaintiff suffered an injury caused by a
defendant's tortious conduct while residing in the forum state is not sufficient.
*Picot*, 780 F.3d at 1214 ("[M]ere injury to a forum resident is not a sufficient
connection to the forum. . . . Rather, an injury is jurisdictionally relevant only
insofar as it shows that the defendant has formed a contact with the forum State.")
(citation and internal quotation marks omitted) (quoting *Walden*, 571 U.S. at 290).

The Amended Complaint fails to establish that Bergmair expressly aimed his
conduct at California, and thus, Plaintiff fails to satisfy the second required prong
of the effects test.

### c.    Bergmair Did Not Cause Harm that He Knew Would Be Suffered in This Forum

Finally, Plaintiff similarly fails to satisfy the third required prong of the
*Calder* effects test: that the defendant caused harm that he knew would be suffered
in the forum state.  *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1486
(9th Cir. 1993) (third prong of *Calder* test requires that defendant's conduct caused
harm "which is suffered – and which the defendant knows is likely to be suffered –
in the forum state").  As described above, the Amended Complaint does not allege
that Bergmair knew Plaintiff, much less that she was a resident of California.  As a
result, he could not have known about the likelihood that she would suffer harm in
California.

### 2.    Bergmair Did Not Engage in Forum-Related Activities, Much Less Any Related to Plaintiff's Claims

Plaintiff is also unable to establish the second element of specific
jurisdiction, namely, that her claims arise from Bergmair's alleged forum-related
activities.  To satisfy this element, Plaintiff must show a "direct nexus" between the
defendant's forum-related contacts and her cause of action.  *In re W. States*
*Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013).  Contacts
that are "too attenuated" from the claims at issue do not satisfy this test.  *Doe v. Am.*

*Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997).

To begin with, as described above, Bergmair is not even alleged to have engaged in any conduct in, or aimed at, California, so Plaintiff's claims could not have arisen from his forum-related conduct.  But even if the Amended Complaint's sparse allegations against Bergmair could be somehow construed as California-related conduct, Plaintiff still fails to establish the required "direct nexus."  The only acts alleged in the Amended Complaint by Bergmair are his purported oversight of MindGeek and approval of its major decisions and corporate policies, but the Amended Complaint does not even attempt to link these actions with the wrongdoing alleged (the failure to detect and remove videos of Plaintiff) or her alleged injuries.

This failure to draw a "direct nexus" between Bergmair's actions and the claims at issue is fatal.  For example, in *AMA Multimedia*, the Ninth Circuit affirmed the district court's finding that it did not have personal jurisdiction over a foreign individual who owned adult websites.  970 F.3d at 1204–05.  The court ruled that plaintiff had failed to show that its claims arose out of defendant's forum-related conduct in part because "nothing more than . . . bare allegations support any personal involvement by [defendant] in uploading, encouraging the uploading, or intentionally failing to remove the infringing content." *Id*. at 1212 n.9.  Here, the nexus between Bergmair's actions and the claims at issue is far weaker than in *AMA Multimedia*.  There were at least "bare allegations" in that case that the website owner was involved in encouraging the uploading of, and the failure to remove, the objectionable content.  No comparable allegations exist here.  Bergmair is alleged only to have approved the corporate policies of a company that engaged in conduct giving rise to Plaintiff's claims.  As a result, Plaintiff has failed to establish the required "direct nexus" between his conduct and her claims.

### 3. The Exercise of Jurisdiction over Bergmair Would Not Be Reasonable

Finally, even if Plaintiff was able to satisfy the first two elements of the specific jurisdiction test, the exercise of jurisdiction over Bergmair would still not be reasonable.  In the Ninth Circuit, courts determine whether such jurisdiction would comport with "fair play and substantial justice," and is therefore reasonable, by considering seven factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  *Paccar Int'l, Inc. v. Com'l Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1065 (9th Cir. 1985).  Because Bergmair is a foreign citizen, Plaintiff "must meet a higher jurisdictional threshold than is required when the defendant is a United States citizen." *Core-Vent Corp.*, 11 F.3d at 1490.

### a. Bergmair Did Not Purposefully Inject Himself into California's Affairs

The first factor considers "the extent of the purposeful interjection into the forum state." *Paccar*, 757 F.2d at 1065.  Courts must be mindful that "[t]here may be circumstances under which the level of purposeful injection into the forum supports a finding of purposeful availment yet still weighs against the reasonableness of jurisdiction." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114–15 (9th Cir. 2002).  "[T]he smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." *Core-Vent*, 11 F.3d at 1488 (citation omitted).  Here, Bergmair's alleged actions in overseeing the strategic operations and approving the corporate decisions and policies of MindGeek, a Luxembourg company operating websites with a worldwide focus, do not demonstrate any purposeful interjection into California at

24

all.  But even if they were somehow deemed sufficient to meet the purposeful direction prong, they show only a minimal degree of "purposeful interjection" into California.  The complaint does not allege that any of his conduct took place in California, or that California was a focus of his actions any more than any other state or country.  *Id.* (finding that where foreign defendants' conduct was sufficient for jurisdiction but still "attenuated" from United States, first reasonableness factor weighed in defendants' favor); *Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F. Supp. 2d 1194, 1205 (C.D. Cal. 2000) (even assuming defendant's contacts were sufficient to meet purposeful availment test, they were "so attenuated" that purposeful interjection factor "weighs heavily in [defendant's] favor").  This factor weighs against jurisdiction.

### b.      Bergmair Would Be Substantially Burdened by Litigating in This Forum

The second factor considers "the burden on the defendant of defending in the forum," *Paccar*, 757 F. 2d at 1065, which is "always a primary concern." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).  The Supreme Court has recognized that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 114 (1987).  *See also Wargaming.net Ltd. v. Blitzteam LLC*, 2021 WL 3619956, at *5 (C.D. Cal. Jan. 20, 2021) (Carney, J.) ("The Supreme Court has recognized that defending a lawsuit in a foreign country can impose a substantial burden on a nonresident defendant.").  Here, Bergmair, who resides in Hong Kong, China, would "bear a heavy burden." *Paccar*, 757 F.2d at 1065.  Even with modern transportation and communication methods, litigating in a foreign country located literally on the other side of the world would present major difficulties.  *Id.*  This factor weighs heavily in Bergmair's favor even if the burden "would not be insurmountable [since] it

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

NY-2369739

would nonetheless be substantial." *Callaway Golf*, 125 F. Supp. 2d at 1205
(quoting *Rocke v. Canadian Auto. Sport Club*, 660 F.2d 395, 399 (9th Cir. 1981)).
As an individual, with no connection to or relationship with the United States, the
burden on Bergmair would be "particularly great." *Core-Vent*, 11 F.3d at 1488.
This factor also weighs against the reasonableness of asserting jurisdiction over
Bergmair.

### c. Litigating in California Would Create a Conflict of Sovereignty

The third factor considers "the extent of conflict with the sovereignty of
defendant's state." *Paccar*, 757 F.2d at 1065. Litigation against a foreign
defendant "creates a higher jurisdictional barrier than litigation against a citizen
from a sister state because important sovereignty concerns exist." *Sinatra v. Nat'l
Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988). Where the defendant is a foreign
resident, "the sovereignty barrier is high and undermines the reasonableness of
personal jurisdiction." *Wargaming.net Ltd.*, 2021 WL 3619956, at *5 (quoting
*Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 852 (9th Cir. 1993)).
In weighing this factor, the Ninth Circuit has "focused on the presence or absence
of connections to the United States in general, not just to the forum state.
Sovereignty concerns weigh more heavily when the defendants have no United
States-based relationships." *Core-Vent*, 11 F.3d at 1489. Here, Bergmair has no
United States relationships, which weighs heavily in his favor. *Id*. (fact that
individual defendants had no United States-based relationships "weigh[s] more
heavily" in their favor). Similarly, Hong Kong has an interest in resolving disputes
involving its residents. *Paccar*, 757 F.2d at 1065 (district court's assertion of
jurisdiction over foreign company "interfered with" sovereignty of defendant's
country and its right to resolve disputes involving its residents). As a result, this
factor weighs heavily against jurisdiction.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

      **d.**      **California Does Not Have a Substantial Interest in Adjudicating This Case**

The fourth factor considers "the forum state's interest in adjudicating the dispute." *Paccar*, 757 F.2d at 1065.  Of course, California has an interest in providing a forum for its residents who are tortiously injured. *Dole Food Co.*, 303 F. 3d at 1115–16.  But that interest can be satisfied without suing Bergmair in this forum.  The Amended Complaint alleges that two of the MindGeek defendants are domestic corporations with their principal place of business in California. (Amended Compl. ¶¶ 21, 23.)  To the extent that Plaintiff's claims proceed against these entities (or any of the other MindGeek corporate defendants), Plaintiff could presumably obtain relief from those defendants, even if Bergmair were dismissed as a defendant.  As a result, California's interest in providing its residents with redress for injuries would be satisfied even if Bergmair were not a defendant in this action. *See Advantage Lift Sys., Inc. v. O.M.E.R., S.p.A.*, 1997 WL 398033, at *8 (S.D. Cal. March 19, 1997).  Thus, this factor also weighs against exercising jurisdiction.

      **e.**      **California Is Not the Most Efficient Forum**

The fifth factor considers which forum is "the most efficient judicial resolution of the controversy." *Paccar*, 757 F.2d at 1065.  In evaluating this factor, the Ninth Circuit has "looked primarily at where the witnesses and the evidence are likely to be located." *Core-Vent*, 11 F.3d at 1489.  Here, the vast bulk of the evidence and witnesses – mostly MindGeek employees and documents – are located outside California and outside the United States.  As a result, there is no reason to think that a court in California is a more efficient forum for resolving the controversy than one in another country. *See Wargaming.net Ltd.*, 2021 WL 3619956, at *5 (finding that factor weighed against Court's jurisdiction where "most, if not all, of the evidence and witnesses in this case are located overseas"). This factor weighs against jurisdiction.

### f.     This Forum Would be More Convenient for Plaintiff

The sixth factor considers "the importance of the forum to plaintiff's interest in convenient and effective relief." *Paccar*, 757 F.2d at 1065.  However, "neither the Supreme Court nor [the Ninth Circuit] has given much weight to inconvenience to the plaintiff." *Core-Vent*, 11 F.3d at 1490; *Dole Food Co.*, 303 F.3d at 1116 ("[I]n this circuit, the plaintiff's convenience is not of paramount importance").  "A mere preference on the part of the plaintiff for its home forum does not affect the balancing." *Core-Vent*, 11 F.3d at 1490.  Although not accorded much weight, this factor weighs in favor of jurisdiction.

### g.     An Appropriate Alternative Forum Exists

The seventh factor considers "the existence of an alternative forum." *Paccar*, 757 F.2d at 1065.  "Plaintiff bears the burden of proving the unavailability of an alternative forum." *Wargaming.net Ltd.*, 2021 WL 3619956, at *5 (original alterations omitted) (quoting *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 609 (9th Cir. 2018)).  Here, a potential alternative forum exists to litigate claims against Bergmair, namely Hong Kong, where he resides, which has a fair and effective legal system.[10]  The Ninth Circuit has found that this factor may weigh against the plaintiff's chosen jurisdiction even where "it may be more costly and inconvenient" for a plaintiff to litigate in the alternative forum. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998).  As a result, this factor weighs against jurisdiction.

---

[10] Courts have recognized Hong Kong as an adequate alternative forum, both in the context of determining the "reasonableness" of exercising specific jurisdiction (as here) and in connection with motions for dismissal on *forum non conveniens* grounds. *See Reflex Media, Inc. v. Luxy Ltd.*, 2021 WL 945248 at *5 (C.D. Cal. Feb. 5, 2021); *Perkumpulan Investor Crisis Center Dressel—WBG v. Wong*, 2012 WL 13024801, at *8 (W.D. Wash. April 6, 2012); *Cook v. Champion Shipping AS*, 732 F. Supp. 2d 1029, 1033–34 (E.D. Cal. 2010), *aff'd*, 463 F. App'x 626, 627 (9th Cir. 2011); *Capri Trading Corp. v. Bank Bumiputra Malaysia Berhad*, 812 F. Supp. 1041, 1043–44 (N.D. Cal. 1993).

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

NY-2369739

### h.        Balancing of the Reasonableness Factors

In sum, six of the seven factors weigh against the assertion of jurisdiction, with the only one weighing in favor of jurisdiction being the one that courts have acknowledged is not accorded much weight.  *See Wargaming.net Ltd.*, 2021 WL 3619956, at *6 (declining to exercise personal jurisdiction over foreign defendant where five of the seven reasonableness factors weighed against exercise of jurisdiction).  *See also Rocke*, 660 F.2d at 400 ("Due process requires that we weigh more heavily the expectations of and burdens upon the defendants than we weigh the hardships upon the plaintiff").  Indeed, the Ninth Circuit last year affirmed the lack of jurisdiction over a defendant similarly situated to Bergmair.  In *AMA Multimedia*, an individual Polish citizen (Wanat) who was the owner of adult websites was sued by a company which alleged that third party users had posted content on the websites that infringed its copyrights.  970 F.3d at 1204–05.  In applying the reasonableness factors, the Ninth Circuit ruled that exercising jurisdiction over Wanat would be unreasonable "given his limited contacts with the forum, the burden on Wanat if he must defend in the forum, potential conflicts with Poland's sovereignty and its potential as an alternative forum."  *Id*. at 1212 n. 9. The court found that these factors outweighed the plaintiff's interest in adjudicating the dispute in the United States, its chosen forum.  *Id*.  The case for jurisdiction over Wanat in *AMA Multimedia* was far stronger than that for suing Bergmair here. In that case, Wanat's degree of alleged interjection into United States affairs (registering internet domain names and obtaining other technical services from United States-based companies), *id.* at 1209, was greater than that of Bergmair, who is alleged only to have had general oversight of MindGeek operations and policies, without any specific connection to California alleged.  As a result, asserting personal jurisdiction over Bergmair here would be unreasonable and would not comport with "fair play and substantial justice."  The Court should dismiss Plaintiff's claims against him for lack of jurisdiction.

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

NY-2369739

C.    **Fed. R. Civ. P. 4(k)(2) Does Not Provide a Basis for Jurisdiction Over Bergmair**

Federal Rule of Civil Procedure 4(k)(2), which in certain circumstances may authorize jurisdiction over a defendant when there is no individual state that has jurisdiction, also provides no basis for jurisdiction over Bergmair.  Under Rule 4(k)(2), a plaintiff must still demonstrate that a defendant has sufficient minimum contacts with the forum to satisfy due process.  *Id.* (authorizing jurisdiction only when it is "consistent with the United States Constitution and laws").  This due process analysis is identical to the traditional personal jurisdiction analysis discussed above except that a defendant's contacts with the United States as a whole, rather than with an individual forum state, are considered.  *See Axiom Foods*, 874 F.3d at 1072 (quoting *Holland America*, 485 F.3d at 462).  However, just as the Amended Complaint fails to allege any contacts by Bergmair with California, it similarly fails to allege any contacts by Bergmair with any other state in the United States.  As a result, the minimum contacts analysis is the same as described above, and there is no basis for specific jurisdiction over Bergmair.

## II.    PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST BERGMAIR

### A.    The Amended Complaint Fails to State a Claim on Any Count

#### 1.    The Amended Complaint's Vague, Generalized Allegations and Shotgun Pleading Fail to State a Claim

Even if Plaintiff could establish personal jurisdiction, the Court should still dismiss the Amended Complaint on the merits because its generalized allegations against Bergmair are insufficient to state any viable claim for relief.

The Court must dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) if it lacks "sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).  Although a Rule 12(b)(6) motion requires the Court to "accept as true all of the allegations

contained in a complaint," that standard "is inapplicable to legal conclusions."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing *Bell Atlantic Corp. v.
Twombly*, 550 U.S. 544, 555 (2007)). A court considering a motion to dismiss "can
choose to begin by identifying pleadings that, because they are no more than
conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.
"[A] plaintiff's obligation to provide the grounds of his entitlement to relief
requires more than labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do." *ScripsAmerica, Inc. v. Ironridge Glob.
LLC*, 119 F. Supp. 3d 1213, 1233 (C.D. Cal. 2015) (internal quotation marks and
alterations omitted) (quoting *Twombly*, 550 U.S. at 555).  Federal Rule of Civil
Procedure 8 requires that a plaintiff provide a "statement of circumstances,
occurrences, and events in support of the claim presented."  *Twombly*, 550 U.S. at
555 n.3 (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and
Procedure* § 1202 (3d ed. 2004)).  Indeed, the Supreme Court has emphasized that
Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to
relief.  Without some factual allegation in the complaint, it is hard to see how a
claimant could satisfy the requirement of providing not only 'fair notice' of the
nature of the claim, but also 'grounds' on which the claim rests."  *Id*.  In making
such a factual showing, a complaint must "differentiate between each of the
defendants and clearly state the factual basis for each cause of action as to each
specific defendant."  *Fagbohungbe v. Caltrans*, 2014 WL 644008, at *3 n.4 (N.D.
Cal. Feb. 19, 2014).

Here, the Amended Complaint plainly fails to provide sufficient facts to state
any claim against Bergmair.  Although it asserts 16 separate claims against
Bergmair, each with separate elements, it literally does not identify a single
concrete act taken by him giving rise to these claims.  Instead, it sets forth 534
paragraphs of allegations of conduct attributed to "MindGeek" or "the MindGeek
Defendants," with the only link to Bergmair being the vague allegations that he

exercised "oversight and control" of the company and approved its "major" decisions (Amended Compl. ¶¶ 99-100), or that he was "aware of," "directed" or "approved" corporate policies or elements of the company's "business model." (Amended Compl. ¶¶ 7, 100, 171, 172, 173, 181, 193, 194-95, 200, 209, 213, 214.) These bare allegations do not come close to satisfying the specific elements of sex trafficking, civil RICO, and the multiple other causes of action asserted by Plaintiff.

Moreover, such conclusory allegations fall far short of justifying Plaintiff's attempt to hold an individual – who is alleged to be at most a mere shareholder of MindGeek – responsible for the conduct of corporate entities.  A corporate shareholder or employee is not liable for torts of the company unless he "authorizes or directs or . . . participates" in the wrongful conduct.  *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016); *Coastal Abstract Serv., Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999).  Just as in the personal jurisdiction context, cases finding "personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct, or the 'central figure' in the challenged corporate activity." *Facebook*, 844 F.3d at 1069 (quoting *Davis*, 885 F.2d at 523 n.10).

Applying this standard, district courts in the Ninth Circuit have repeatedly ruled that generalized allegations that individual officers or shareholders directed, supervised or approved allegedly tortious corporate conduct are not sufficient to meet the guiding spirit standard.  For example, in *In re JUUL Labs, Inc. Marketing, Sales Practices and Products Liability Litigation*, 497 F. Supp. 3d 552 (N.D. Cal. 2020), plaintiffs sued e-cigarette maker JUUL and several of its board directors alleging that JUUL targeted its advertising towards youths.  The directors were alleged to have had "control" of the Board, and "final say" over the company's marketing materials.  *Id.* at 635.  The court dismissed the claims against the directors, ruling that such allegations "[did] not establish the requisite individual

'direction or control' to pin liability" for JUUL's marketing on the individual

directors.  *Id*.  The court held that "[t]hese generalized allegations are insufficient to

connect each [defendant] to the direction or control of any unfair *acts* or youth-

targeted marketing *acts*," since there were "no factual allegations of specific

*conduct*" committed by or at the direction of the directors.  *Id*. at 636 (emphasis in

original).  The court concluded that "vague allegations about exercising 'final say'

over marketing decisions do not suffice without any specificity concerning what

those decisions were and how they were connected to" plaintiff's claims.  *Id*. at

654.  Similarly, in *O'Connor v. Uber Technologies, Inc.*, 2013 WL 6354534 (N.D.

Cal. Dec. 5, 2013), plaintiff drivers raised various employment law claims against

Uber and two of its top executives.  Plaintiffs alleged that the executives were liable

based on their corporate positions and the fact that they were "responsible for" the

challenged employment policies and pay practices.  *Id*. at *18.  The court dismissed

the claims against the executives, ruling that the plaintiffs had "failed to allege

enough specific allegations showing that [they] personally directed or participated

in the tortious conduct."  *Id*. (citation and internal quotation marks omitted).  The

court held that "identifying their roles in the corporation and alleging that they were

'responsible' for pay practices and employment policies does not make it plausible

that they were personally liable" for the company's actions.  *Id*.  *See Flint CPS Inks*

*N. America LLC v. Trend Offset Printing Ser., Inc.*, 2020 WL 7862127, at *5 (C.D.

Cal. Dec. 14, 2020) (allegations that corporate officers "had control over," had

"direct participation in," and "authorized and approved" company's wrongful

conduct failed to state a claim); *Kieu Hoang v. Lang Van, Inc.*, 2019 WL 6654130,

at *4–5 (C.D. Cal. July 1, 2019) (allegations that corporate officers were

"personally involved" in, "materially contributed to" and "directly supervised"

challenged conduct failed to state a claim); *Deckers Outdoor Corp. v. Fortune*

*Dynamic, Inc.*, 2015 WL 12731929, at *9 (C.D. Cal. May 8, 2015) (allegation that

owner of corporation was "active, moving, conscious force behind" wrongful

activity failed to state a claim); *Franco American Corp. v. Kim Seng Co.*, 2011 WL
13220312, at *2–3 (C.D. Cal. June 24, 2011) (complaint failed to state a claim
where it alleged only that owner of corporation was "personally responsible for the
actions" of the company and made "all of the important decisions" related to the
company's dealing with plaintiff); *Apple Hill Growers v. El Dorado Orchards*,
2019 WL 5827365, at *3 (N.D. Cal. Nov. 7, 2019) (allegation that corporate
officers "control[ed] and direct[ed]" the company's wrongful conduct failed to state
a claim). *See also Iqbal*, 556 U.S. at 678–81 (allegations that Attorney General was
"architect" of discriminatory government policy and FBI Director was
"instrumental" in executing it and they "knew of [and] condoned" policy were "not
entitled to the assumption of truth" since they amount to "nothing more than a
'formulaic recitation of the elements'" of a claim).

The Amended Complaint also fails to state a claim against Bergmair because
of its pervasive allegations of conduct attributed to "MindGeek" or the "MindGeek
Defendants" without differentiating between the defendants. (*See, e.g.*, Amended
Compl. ¶¶ 1, 7, 10, 11, 12, 47, 107, 108-10, 112, 114, 121, 124-25, 128, 129, 164,
168-69, 173, 178, 198, 202, 208, 210, 211, 213). In her Amended Complaint,
Plaintiff has vainly tried to fix this deficiency by repeatedly appending to such
group allegations a sentence that alleges that all of the individual defendants
controlled or approved such corporate activity, as if mentioning their individual
names would somehow fix the problem. (Amended Compl. ¶¶ 171 ("under the
direction and control" of all four individual defendants); 181 (all four individual
defendants "were fully aware and approved"); 193 (all four individual defendants
"implemented and aggressively developed"); 194 ("implemented with the
knowledge and approval" of all four individual defendants); 195 ("implemented
with the knowledge and approval" of all four individual defendants); 213 ("at the
direction of" all four individual defendants); 214 (all four individual defendants
"approved and aggressively implemented").) Such "shotgun pleading" is

34

impermissible, since it fails to provide each defendant with fair notice of the claims against him.  *See Securities and Exchange Comm'n v. Ferrante*, 2019 WL 8230852, at \*4 (C.D. Cal. Jan. 23, 2019) (Carney, J.) ("shotgun pleading" subject to dismissal where plaintiff "fails to differentiate between the defendants such that it is impossible to determine which defendant is accused of what"); *Beatport LLC v. SoundCloud Ltd.*, 2020 WL 3977602, at \*5 (C.D. Cal. July 13, 2020) ("[I]t is a basic pleading defect for a complaint to 'lump' parties together and to fail to distinguish between named defendants."); *Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at \*4–5 (C.D. Cal. June 30, 2010) (dismissal appropriate where plaintiff "use[d] the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong"); *Littleton v. Experian Info. Sol., Inc.*, 2015 WL 4638308, at \*2 (N.D. Cal. Aug. 4, 2015) (ruling that "everyone did everything allegation[s]" provide insufficient notice under Rule 8).  Without more specific facts – which are absent here – the "everyone did everything" allegations of conduct by Plaintiff against MindGeek or the MindGeek Defendants are insufficient to state a claim against Bergmair.[11]

## 2. Section 230 Bars All of Plaintiff's Claims Against Bergmair

As set forth in the motions to dismiss of the MindGeek Defendants and the other Individual Defendants, all of Plaintiff's claims against Bergmair are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230.  Bergmair joins

---

[11] The Amended Complaint's vague allegations against Bergmair and its "shotgun" allegations against all defendants fail to satisfy Rule 8's pleading standard, so they also plainly fail to satisfy the heightened pleading requirements of Rule 9(b).  Count XVI (alleging a violation of California Business and Professions Code §§ 17200 and 17500) sounds in fraud, so Rule 9(b) requires that it set forth "the 'who, what, when, where and how'" of the alleged misconduct.  *Ferrante*, 2019 WL 8230852, at \*3 (quoting *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).  The Amended Complaint's vague allegations do not come close to meeting this standard.

1  in the motions and arguments of the MindGeek Defendants and the Individual

2  Defendants for dismissal of all counts based on the applicability of Section 230.

3        The allegations in the Complaint that Bergmair exercised "oversight and

4  control" of MindGeek and approved its major decisions and corporate policies are

5  too vague and general to state a claim, but accepting them as true, the immunity

6  afforded by Section 230 extends to Bergmair as a "provider . . . of an interactive

7  computer service." 47 U.S.C. § 230(c).  *See Klayman v. Zuckerberg*, 753 F.3d

8  1354, 1357–58 (D.C. Cir. 2014) (defendant Mark Zuckerberg qualified for Section

9  230 protection as "provider" of Facebook's ICS, as demonstrated by fact that

10  plaintiff's suit sought "to hold him accountable for his role in making that service

11  available"); *Ascentive LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 474 (E.D.N.Y.

12  2011) (individual defendants who were officers of defendant company and operated

13  website qualified as "providers" of an ICS under Section 230); *Whitney Info.*

14  *Network, Inc. v. Xcentric Ventures, LLC*, 2008 WL 450095, at *8 (M.D. Fla. Feb.

15  15, 2008) (individual who was owner and operator of defendant website was

16  "provider" of an ICS under Section 230 and therefore entitled to immunity).  Since

17  Section 230's immunity applies to Bergmair, it bars all of Plaintiff's claims against

18  him.

19        **B.**    **The Amended Complaint Fails to Properly Allege a Valid**
20                 **Claim on Specific Counts**

      In addition to the Amended Complaint's overarching lack of specificity with

21  respect to Bergmair and the protections of Section 230, each of the individual

22  counts of the Amended Complaint is insufficiently pleaded in other respects.

23  Bergmair joins in the motions and arguments of the MindGeek Defendants and the

24  other Individual Defendants with respect to the deficiencies in the individual claims

25  in the Complaint.  In addition to the pleading deficiencies identified there, and the

26  deficiencies discussed above, Plaintiff's claims against Bergmair are insufficient for

27  the reasons set forth below.

28

### 1.   The Trafficking Claims (Counts I, II, and IV) Fail to State a Claim

The Amended Complaint alleges claims against Bergmair for trafficking under 18 U.S.C. §§ 1591(a)(1) and (a)(2) and for conspiracy to violate those statutes under § 1594(c).  In addition to the deficiencies described in the other defendants' motions and those discussed above, the Amended Complaint contains literally no allegations whatsoever that Bergmair undertook any of the prohibited conduct, nor that he possessed the requisite knowledge.

For example, among other elements, § 1591(a)(1) requires that a defendant take one of the actions enumerated in that sub-section ("recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits") with respect to a person, "knowing" or "reckless[ly] disregard[ing]" that the person is a minor or will be the victim of coercion.  Here, the Amended Complaint alleges only that Bergmair had "oversight" of MindGeek and approved its major decisions and corporate policies.  It does not allege that he ever had contact with Plaintiff, much less that he engaged in any of the specific actions set forth in § 1591(a)(1).  Similarly, there are no allegations that he knew anything at all about Plaintiff.  In fact, the Amended Complaint does not allege any facts to suggest that Bergmair even knew of Plaintiff's existence.

Similarly, among other elements, § 1591(a)(2) requires that a defendant "knowingly" benefit from "participation in a venture" which has engaged in a violation of sub-section (a)(1).  "[P]articipation in a venture" means "knowingly assisting, supporting, or facilitating" a trafficking violation.  § 1591(e)(4).  The Amended Complaint's allegation that Bergmair had "oversight" of MindGeek and approved its corporate policies does not even begin to establish that he "knowingly assist[ed]" a trafficking venture, much less that he "knowingly" benefitted from such participation.  As noted above, there are no allegations that Bergmair ever even knew of Plaintiff or had any contact with her, so he could not have knowingly

1    participated in a trafficking venture involving her.

2           For these reasons, Plaintiff's conspiracy claim under § 1594(c) also fails.  As

3    a result, all three trafficking claims are woefully deficient and the Court should

4    dismiss them.

5               **2.      The Child Pornography Claims (Counts V and VI)
                        Fail to State a Claim**
6

7           The Amended Complaint alleges claims for violation of 18 U.S.C. §§ 2252

8    and 2252A, which prohibit the knowing distribution of child pornography.  In

9    addition to the deficiencies described in the other defendants' motions, and those

10   discussed above, the Amended Complaint fails to properly allege these claims

11   against Bergmair.

12          For an individual to violate these statutes, he must know both the explicit

13   nature of the material and that the performers were under age.  *United States v. X-*

14   *Citement Video, Inc.*, 513 U.S. 64, 78 (1994).  Again, there are no allegations that

15   Bergmair even knew of Plaintiff's existence, much less had knowledge of the

16   specific videos featuring her, or whether she was under age when the videos were

17   made.  As a result, these counts plainly fail to state a viable claim and the Court

18   should dismiss them.

19              **3.      The RICO Claims (Counts VII and VIII) Fail to State
                        a Claim**

20          The Amended Complaint alleges claims for violation of several subsections

21   of 18 U.S.C. § 1962.  Courts "strive to flush out frivolous RICO allegations at an

22   early stage of the litigation."  *See Hall v. Fiat Chrysler America US LLC*, 2021 WL

23   3560231, at *3 (C.D. Cal. July 20, 2021) (Carney, J.) (quoting *Wagh v. Metris*

24   *Direct, Inc.*, 348 F.3d 1102, 1108 (9th Cir. 2003)).  In addition to the deficiencies

25   described in the other defendants' motions, and those discussed above, the

26   Complaint fails to properly allege a RICO claim against Bergmair for two

27   additional reasons.

28          First, where a plaintiff alleges RICO claims against multiple defendants, the

                                            38

"plaintiff must allege at least two predicate acts by *each* defendant." *Harmoni Int'l Spice, Inc. v. Bai*, 2016 WL 6542731, at *25 (C.D. Cal. May 24, 2016) (emphasis in original) (quoting *In re Wellpoint, Inc.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011)).  Here, the conclusory allegations that Bergmair had "oversight" of MindGeek and approved its major decisions and corporate policies do not connect him to any racketeering activity or set forth any specific predicate acts, much less two distinct predicate acts.

Second, these vague allegations are insufficient to establish Bergmair's participation in the conduct of the alleged enterprise's affairs under Section 1962(c).  To properly plead this element, a plaintiff must allege specific facts showing that a defendant played "*some* part in directing the enterprise's affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (emphasis in original).  Conclusory allegations of direction or control are insufficient to satisfy this element.  *See In re JUUL Labs*, 497 F. Supp. 3d at 605–06, 608 (concluding that "[w]ithout identification of specific acts taken by" the officer and director defendants, the "very general" allegation that they had "final say" over allegedly unlawful marketing practices was insufficient to show participation in RICO enterprise); *C&M Cafe v. Kinetic Farm, Inc.*, 2016 WL 6822071, at *5 (N.D. Cal. Nov. 18, 2016) (allegation that defendants were "co-founders, members, and managers" of RICO enterprise was insufficient to establish their participation in enterprise).

Since Plaintiff has failed to adequately plead a substantive RICO violation, her RICO conspiracy claim fails as well.  *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010).  As a result, all the RICO counts are plainly deficient and the Court should dismiss them.

4.   **The California State Law Claims (Counts IX, X, XI, XII, XIII, XIV, XV, XVI and XVII) Fail to State a Claim**

Plaintiff asserts a series of claims alleging privacy violations under California

39

NY-2369739

common law and statutes.  However, the Amended Complaint fails to properly allege each of these claims against Bergmair due to the deficiencies discussed above (*see supra* at Section II(A)(1)) and for the reasons set forth in the other defendants' motions.

## <u>CONCLUSION</u>

For these reasons, the Court should dismiss Plaintiff's Amended Complaint with prejudice for both lack of personal jurisdiction and failure to state a claim for relief.

Dated: May 23, 2022      RONALD G. WHITE
DAN MARMALEFSKY
ANDRE FONTANA
MORRISON & FOERSTER LLP


By: _____ */s/ Ronald G. White*_____
Ronald G. White

Attorneys for Defendant
BERND BERGMAIR