WIECHERT, MUNK & GOLDSTEIN, PC
David Wiechert, CA Bar No. 94607
27136 Paseo Espada, Ste. B1123
San Juan Capistrano, CA 92675
Phone: (949) 361-2822
Fascimile: (949) 361-5722
Email: dwiechert@aol.com

MORVILLO ABRAMOWITZ GRAND IASON &
ANELLO PC
Jonathan S. Sack (*admitted pro hac vice*)
Karen R. King (*admitted pro hac vice*)
Ryan McMenamin (*admitted pro hac vice*)
565 Fifth Avenue
New York, New York 10017
Phone: (212) 856-9600
Facsimile: (212) 856-9494
Email: jsack@maglaw.com
Email: kking@maglaw.com
Email: rmcmenamin@maglaw.com

*Attorneys for Specially Appearing Defendant David Tassillo*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SERENA FLEITES,

Plaintiff,

v.

MINDGEEK S.A.R.L. a foreign entity; MG FREESITES, LTD., a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; MG PREMIUM LTD, a foreign entity; MG GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 QUEBEC, INC. (D/B/A) MINDGEEK, foreign entity; BERND BERGAMAIR, a foreign individual; FERAS ANTOON, a foreign individual; DAVID TASSILLO, a foreign individual; COREY URMAN, a foreign individual; VISA INC., a Delaware corporation; COLBECK CAPITAL DOES 1-5; and BERGMAIR DOES 1-5

Defendants.

Case No. 2:21-cv-4920-CJC

**SPECIALLY APPEARING DEFENDANT DAVID TASSILLO'S NOTICE OF MOTION AND MOTION TO DISMISS THE AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**Date: August 8, 2022**
**Time: 1:30 p.m.**
**Courtroom: 9 B**
**Judge: Hon. Cormac J. Carney**

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that, on August 8, 2022 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 9B in the U.S. District Court for the Central District of California, located at the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, California 92701-4516 before the Honorable Cormac J. Carney, Specially Appearing Defendant David Tassillo will move, and hereby moves, for an Order dismissing Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6) and 9(b).

Mr. Tassillo neither consents nor submits to the jurisdiction of this Court and appears for the limited purpose of contesting jurisdiction.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 17, 2022.

If the Court finds jurisdiction over Mr. Tassillo, he respectfully moves for dismissal on the ground that Plaintiff has failed to state a claim against him upon which relief can be granted. This motion is based on this Notice of Motion, the accompanying Memorandum of Law, and all other matters properly before this Court.

DATED: May 23, 2022

Respectfully Submitted,

WIECHERT, MUNK & GOLDSTEIN, PC

By: /s/ David W. Wiechert
David W. Wiechert (SBN 94607)

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO PC
Jonathan S. Sack (*admitted pro hac vice*)
Karen R. King (*admitted pro hac vice*)
Ryan McMenamin (*admitted pro hac vice*)
*Attorneys for Specially Appearing Defendant David Tassillo*

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

BACKGROUND ..... 2

- Procedural History ..... 2
- MindGeek ..... 3
- The Amended Complaint ..... 4
- David Tassillo ..... 5

LEGAL STANDARD ..... 6

ARGUMENT ..... 7

I. THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER DAVID TASSILLO ..... 7

- A. Mr. Tassillo is Not Subject to General or Specific Jurisdiction in California ..... 9
- B. Nationwide Personal Jurisdiction Does Not Apply, and in Any Event, is Not Satisfied ..... 11
- C. Under the Fiduciary Shield Doctrine, the MindGeek Entities' Contacts with California May Not Be Imputed to Mr. Tassillo ..... 13
  - 1. Mr. Tassillo is not alleged to be an alter ego of any MindGeek entity ..... 14
  - 2. Mr. Tassillo is not alleged to be the "guiding spirit" of the complained-of activity ..... 18

II. PLAINTIFF'S CLAIMS AGAINST MR. TASSILLO DO NOT SATISFY BASIC PLEADING REQUIREMENTS ..... 19

III. SECTION 230 IMMUNITY EXTENDS TO MR. TASSILLO ..... 25

CONCLUSION ..... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*M.L. v. Craigslist Inc.*, 2022 WL 1210830 (W.D. Wash. Apr. 25, 2022) ....... 25

*Allegro Consultants, Inc. v. Wellington Techs., Inc.*, 2014 WL 4352344 (N.D. Cal. Sept. 2, 2014) ....... 15

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 2015 WL 12777092 ....... 16

*AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020) ....... 8, 12

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503 (1994) ....... 24

*Ascentive, LLC v. Opinion Corp.*, 842 F.Supp.2d 450 (E.D.N.Y. 2011) ....... 26

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....... 7

*AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586 (9th Cir. 1996) ....... 2

*Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972 (9th Cir. 2021) ....... 10

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009) ....... 25

*Beatport LLC v. SoundCloud Ltd*, 2020 WL 3977602 (C.D. Cal. July 13, 2020) ....... 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....... 19

*Blizzard Ent., Inc. v. Joyfun Inc Co., Ltd.*, 2020 WL 1972284 (C.D. Cal. Feb. 7, 2020) ....... 11, 12

*Broidy Cap. Mgmt., LLC v. Qatar*, 2018 WL 9943551 (C.D. Cal. Aug. 22, 2018) ....... 8

*Caraccioli v. Facebook, Inc.*, 700 F. App'x 588 (9th Cir. 2017) ....... 23

*Children's Health Defense v. Facebook Inc.*, 546 F.Supp.3d 909 (N.D. Cal. 2021) ....... 20

*Chirila v. Conforte*,
47 F. App'x 838 (9th Cir. 2002) .... 10

*Cisco Systems, Inc. v. Link US LLC*,
2019 WL 6682838 (N.D. Cal. Dec. 6, 2019) .... 18

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066 (9th Cir. 2011) .... 9

*Core-Vent Corp. v. Nobel Indus. AB*,
11 F.3d 1482 (9th Cir. 1993) .... 9

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .... 9

*Davis v. Metro Prods., Inc.*,
885 F.2d 515 (9th Cir. 1989) .... 13, 14

*Doan v. Singh*,
617 F. App'x 684 (9th Cir. 2015) .... 22

*Doe #1 v. MG Freesites, LTD,*
2022 WL 407147 (N.D. Ala. Feb. 9, 2022) .... 25

*Doe v. Mindgeek USA Inc.*,
558 F. Supp. 3d 828 (C.D. Cal. 2021) .... 25

*Doe v. MySpace*,
474 F. Supp. 2d 843 (W.D. Tex. 2007) .... 24

*Doe v. Reddit, Inc.*,
2021 WL 5860904 (C.D. Cal. Oct. 7, 2021) .... 25

*Doe v. Unocal Corp.*,
27 F. Supp. 2d 1174 (C.D. Cal. 1998) .... 11

*Doe v. WebGroup Czech Republic,* as,
2022 WL 982248 (C.D. Cal. Jan. 13, 2022) .... 20

*Dynascan Technology, Inc. v. Plasmedia Productions, Inc.*,
2010 WL 11520614 (C.D. Cal. Jan. 21, 2010) .... 14

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*,
122 F.3d 1211 (9th Cir. 1997) .... 25

*Flynt Distrib. Co., Inc. v. Harvey*,
734 F.2d 1389 (9th Cir. 1984) .... 14

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021) .... 10

*Frances T. v. Vill. Green Owners Assn.*,
42 Cal. 3d 490 (1986) .... 23

*Fumoto Giken Co. v. Mistuoka*,
2015 WL 12766167 (C.D. Cal. Apr. 16, 2015) .... 12

*J.B. v. G6 Hospitality*, LLC,
2021 WL 4079207 (N.D. Cal. Sept. 8, 2021); ....................25

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
284 F.3d 1114 (9th Cir. 2002) ....................12

*Gonzalez v. Google, LLC*,
2 F.4th 871 (9th Cir. 2021) ....................25

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ....................9

*Go-Video, Inc. v. Akai Elec. Co.*,
885 F.2d 1406 (9th Cir. 1989) ....................13

*Hall v. Fiat Chrysler America US LLC*,
2021 WL 3560231 (C.D. Cal. July 20, 2021) ....................22

*Hasso v. Hapke*,
227 Cal. App. 4th 107 (Ct. App. 2014) ....................14

*In re Boon Glob. Ltd.*,
923 F.3d 643 (9th Cir. 2019) ....................7, 8, 18

*In re JUUL Labs, Inc. Marketing, Sales Practices and Products Liability Litigation*,
497 F. Supp. 3d 552 (N.D. Cal. 2020) ....................20

*In re WellPoint, Inc.*,
865 F. Supp. 2d 1002 (C.D. Cal. 2011) ....................22

*Incipio, LLC v. Argento Sc By Sicura Inc.*,
2018 WL 4945002 (C.D. Cal. July 18, 2018) .................... 14, 15

*Ind. Plumbing Supply, Inc. v. Standard of Lynn, Inc.*,
880 F. Supp. 743 (C.D. Cal. 1995) ....................14

*International Mfg. Co. v. Landon, Inc.*,
336 F.2d 723 (9th Cir. 2009) ....................18

*Int'l Shoe Co.* v. *State of Wash., Office of Unemployment Comp. & Placement*,
326 U.S. 310 (1945) ....................10

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*,
256 F.3d 548 (7th Cir. 2001) ....................12

*Klayman v. Zuckerberg*,
753 F.3d 1354 (D.C. Cir. 2014) ....................26

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ....................24

*La'Tiejira v. Facebook, Inc.*,
272 F.Supp.3d 981 (S.D. Tex. 2017) ....................26

*Letizia v. Facebook Inc.*,
267 F. Supp. 3d 1235 (N.D. Cal. 2017) .......... 24

*Martinez v. Aero Caribbean*,
764 F.3d 1062 (9th Cir. 2014) .......... 6

*Mason v. Cty. of Orange*,
251 F.R.D. 562 (C.D. Cal. 2008) .......... 19

*Milliken* v. *Meyer*,
311 U.S. 457 (1940) .......... 10

*Morrill v. Scott Fin. Corp.*,
873 F.3d 1136 (9th Cir. 2017) .......... 6, 7

*Neilson v. Union Bank of California, N.A.*,
290 F. Supp. 2d 1101 (N.D. Cal. 2003) .......... 14

*NuCal Foods, Inc. v. Quality Egg LLC*,
887 F.Supp.2d 977 (E.D. Cal. 2012) .......... 17

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) .......... 11

*People v. Ferrer*,
2016 WL 7237305 (2016) .......... 26

*Perkumpulan Inv'r Crisis Ctr. Dressel-WBG v. Danny M.K. Wong*,
2012 WL 13024801 (W.D. Wash. Apr. 6, 2012) .......... 11

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) .......... 9

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) .......... 16, 17

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 9, 10

*Shimmick Construction Co., Inc. v. Officine Meccaniche*,
2014 WL 5847440 (S.D. Cal. Nov. 12, 2014) .......... 17

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .......... 8

*Symettrica Ent., Ltd. v. UMG Recordings, Inc.*,
2019 WL 8806093 (C.D. Cal. Sept. 20, 2019) .......... 15, 18

*Thomas Land & Dev., LLC v. Vratsinas Constr. Co.*,
2019 WL 3842995 (S.D. Cal. Aug. 14, 2019) .......... 16

*United States Liability Ins. Co. v. Haidinger–Hayes, Inc.*,
463 P.2d 770 (Cal. 1970) .......... 22

*United States v. X-Citement Video, Inc.*,
513 U.S. 64 (1994) .......... 21, 22

*Wagh v. Metris Direct, Inc.*,
348 F.3d 1102 (9th Cir. 2003) ....................22

**Statutes, Rules and other Authorities**

18 U.S.C. § 1591(a)(1) ....................21
18 U.S.C. § 1591(a)(2) ....................21
18 U.S.C. § 1594(c) ....................21
18 U.S.C. § 1595 ....................21
18 U.S.C. § 1965(b) ....................10, 11
18 U.S.C. § 2252A(f)(1) ....................22
18 U.S.C. § 2255(a) ....................13
18 U.S.C. § 2255(c)(2) ....................13
47 U.S.C. § 230 ....................24, 25, 26
47 U.S.C. § 230(c)(1) ....................25, 26
Cal. Bus. & Prof. Code § 17200 ....................24
Cal. Bus. & Prof. Code § 17500 ....................24
Cal. Civ. Code § 1708.85 ....................23. 24
Cal. Civil Code § 3344 ....................23
Fed. R. Civ. P. 4(k)(2) ....................10, 11, 12
Fed. R. Civ. P. 20(a) ....................2
Federal Rule of Civil Procedure 8(a) ....................29, 26
Federal Rule of Civil Procedure 9(b) ....................7, 24
Federal Rule of Civil Procedure 12(b)(2) ....................6, 7
Federal Rule of Civil Procedure 12(b)(6) ....................7, 19

**INTRODUCTION**

Plaintiff's Amended Complaint fails to cure the fundamental defects in the original complaint. The Amended Complaint, like the earlier complaint, relies on conclusory group pleading and lacks any allegations of specific wrongful acts by David Tassillo. The only allegation of a specific action taken by Mr. Tassillo (carried over from the original complaint) relates to testimony he gave to the Canadian House of Commons in 2021—nearly seven years *after* the events at issue in this case and totally irrelevant to Plaintiff's claims.

Mr. Tassillo identified these and related deficiencies in a fully briefed motion to dismiss the original complaint. Plaintiff's sole response is a cosmetic one: Mr. Tassillo is added to a series of rote allegations that a group of defendants, including Mr. Tassillo, "implemented" and "executed" unlawful company policies "at the direction" of an individual representing the company's majority shareholders. Yet these types of vague, undifferentiated allegations are inadequate because they fail to identify any specific wrongful action taken by Mr. Tassillo and rely exclusively on his alleged title and employment—in Canada—to include him as a defendant in this lawsuit.

As with the original complaint, the Amended Complaint has *zero* allegations supporting personal jurisdiction over Mr. Tassillo. It does not allege a single fact about Mr. Tassillo's activities in or directed at California or the United States. Likewise, the Amended Complaint has *zero* allegations about any activity of Mr. Tassillo regarding Plaintiff or the videos at issue. Plaintiff has not met her burden of pleading the grounds for jurisdiction over Mr. Tassillo, and has not satisfied basic notice pleading requirements.

For these reasons, all claims against Mr. Tassillo should be dismissed for lack of personal jurisdiction or, in the alternative, for failure to plead claims upon which relief can be granted.

## BACKGROUND[1]

**Procedural History**

On June 17, 2021, 34 plaintiffs commenced this lawsuit, asserting 19 causes of action against seven MindGeek-related entities, Visa, Inc., and four individuals, including Mr. Tassillo. The claims run the gamut, consisting of (i) federal claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), the RICO statute, and child pornography statutes; (ii) common law claims for public disclosure of private facts, intrusion into private affairs, placing plaintiff in false light, deception, unjust enrichment, negligence, misappropriation, and civil conspiracy; and (iii) California state statutory claims for misappropriation of name and likeness, deceptive business practices, and distribution of sexually explicit content without consent.

On October 20, 2021, Mr. Tassillo and the other defendants filed companion motions to dismiss the complaint for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted. (ECF Nos. 62, 67, 68, 69.) Mr. Tassillo, a foreign defendant, argued that the complaint was devoid of any allegation that he had the requisite minimum contacts with California or the United States, and that the claims asserted against him were legally insufficient. (*See e.g.,* ECF No. 67.)

On November 1, 2021, the MindGeek Defendants moved to sever and dismiss the plaintiffs on the basis that they had been improperly joined under Fed. R. Civ. P. 20(a). (ECF No. 75.) Mr. Tassillo and the other individual defendants joined the motion to sever. (ECF Nos. 76, 81, 82, 86.)

---

1 For purposes of a motion to dismiss, the well-pleaded factual allegations in the Amended Complaint are assumed to be true. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). Mr. Tassillo's recitation of the "facts" herein is based on the allegations in the Amended Complaint, is made solely for the purposes of this motion, and does not speak to the accuracy of any allegation.

On February 10, 2022, the Court granted the MindGeek Defendants' motion to sever and dismiss on the basis that Plaintiffs' claims did not arise out of the same series of transactions or occurrences because the

> alleged occurrences of sex trafficking, child pornography, and appropriation and misuse of likeness differ[ed] substantially in where the improper conduct allegedly occurred, how it occurred, and who perpetrated the conduct . . . . [The Plaintiffs] were victimized by different individuals . . . . [The Plaintiffs'] videos that were posted to MindGeek's platforms also were posted at different time periods. . . . [T]he interactions with MindGeek [] var[ied] widely.

(ECF No. 119 at 9-10.) The Court held that "Plaintiff Serena Fleites will continue as the only named Plaintiff in this action," and the Court dismissed without prejudice the other 33 plaintiffs. (*Id.* at 19.).

On March 21, 2022, Plaintiff moved to amend the complaint to add and remove certain defendants, specifically "to (i) remove Defendant Traffic Junky Inc. as a separate defendant, (ii) remove defendant TrafficJunky Inc. as a separate defendant, (iii) add defendant 9219-1568 Quebec, Inc. (d/b/a) Mindgeek), and (iv) substitute Colbeck Capital Does 1-10 and Bergmair Does 1-10 with Colbeck Capital Does 1-5 and Bergmair Does 1-5 respectively." (ECF No. 124-1.) Plaintiff attached to her motion the Amended Complaint as "Exhibit A." (ECF No. 124-3.)

On April 14, 2022, the Court granted Plaintiff's motion to amend to add and remove certain defendants and entered a joint stipulation setting forth a May 23, 2022 deadline to respond to the Amended Complaint. (ECF No. 128.)

**MindGeek**

Plaintiff improperly lumps together six corporate defendants—mostly non-U.S. entities—and treats them as a single business entity called "MindGeek." (Amended Compl. at p. 4.) The "MindGeek" at issue in this case is the operator of various pornographic websites, including Pornhub. (Amended Compl. ¶ 19.)

MindGeek's business model is similar to that of YouTube. It offers free content, primarily videos uploaded by users and third-party businesses, and uses traffic generated by that content to (a) advertise additional pornographic sites that offer paid content; (b) sell advertising for products; and (c) gather user data for marketing and development. (Amended Compl. ¶¶ 60, 64.) MindGeek maintains "comprehensive terms of service, policies, and customer service functions, and multiple layers of interaction." (Amended Compl. ¶ 103.) It also employs moderators to police the content on its websites, investigate and respond to complaints, and engage with law enforcement. (*See, e.g.*, Amended Compl. ¶¶ 187, 252).

**The Amended Complaint**

According to the Amended Complaint, in 2014, Plaintiff was in the eighth grade when she learned that a sexually explicit video of her, which her then-high school boyfriend coerced her to make, was uploaded to Pornhub without her knowledge or consent. (Amended Compl. ¶ 258.) The video was on the platform for an unspecified number of months before Plaintiff learned of its existence. Plaintiff's efforts to have the video removed lasted several weeks. (*Id.*) In the months before the video was removed, it was downloaded and reuploaded by different users and with different titles. (Amended Compl. ¶ 262.) At least one year later, when Plaintiff was still a minor, a different boyfriend manipulated her into making sexually explicit videos, which were uploaded to various websites, including Pornhub, without Plaintiff's consent. (Amended Compl. ¶ 264.)

The vast majority of the now 169-page Amended Complaint has absolutely nothing to do with Plaintiff, her communications with Pornhub, or the videos at issue. Instead, the Amended Complaint reads like a T.V. movie script looking for headlines and viewership, discussing in dramatic fashion the purported disreputable business practices of MindGeek. Plaintiff makes allegations about the effects of these policies on third-party journalists (*see e.g.,* Amended Compl. ¶ 50);

activists (*see e.g.,* Amended Compl. ¶ 51); adult performers, (*see e.g.,* Amended Compl. ¶ 53); MindGeek employees, (*see e.g.,* Amended Compl. ¶¶ 79-80, 84, 86, 186); advertisers and marketers (*see e.g.,* Amended Compl. ¶ 129); creditors (*see e.g.,* Amended Compl. ¶ 157); government treasuries (*see e.g.,* Amended Compl. ¶ 156); purported victims of various consumer frauds (*see e.g.,* Amended Compl. ¶ 149-56, 178-81); and other purported victims of sex trafficking that have no link to Plaintiff whatsoever (*see e.g.,* Amended Compl. ¶¶ 52, 214, 215, 223-25, 226-28, 230-232, 233, 234, 235, 237, 238-39, 240, 243-44, 245, 246, 247, 248, 252, 253, 255). The Amended Complaint refers to characters on the fictional television series, The Sopranos (*see e.g.*, Amended Compl. ¶¶ 4, 47, 71), and is filled with inflammatory language, conspiracy theories, and sweeping generalities.

Setting aside the mass of sensationalist, irrelevant filler, the gravamen of the Amended Complaint is relatively straightforward. Plaintiff alleges that MindGeek knew or should have known that the videos taken of her were illegally made and/or posted without her consent, and should have taken the videos down more quickly. The remaining hundreds of paragraphs of allegations are distractions rife with innuendo, "shotgun" pleading, and conclusory statements.

**David Tassillo**

David Tassillo, a Canadian resident, is one of the four individual defendants. In the previous complaint, he was alleged to be a "resident of Canada and Chief Operating Officer of MindGeek." In the Amended Complaint, he is now alleged to "hold himself out as Chief Operating Officer of all MindGeek-related entities," and to be employed by defendant 9219-1568 Quebec, Inc. (Amended Compl. ¶ 24.) Plaintiff has also added the general allegation that Mr. Tassillo and two other individual defendants "wield control over the operation of all MindGeek entities[,]" and that these individual defendants "implemented," "executed," "aggressively developed," "approved," or were "fully aware" of certain MindGeek

policies or practices (*see e.g.,* Amended Compl. ¶¶ 171, 172, 181, 193, 195, 200, 209, 213, 214), but does not identify any particular actions taken by Mr. Tassillo.

Mr. Tassillo is included in the definition of "MindGeek Defendants" (Amended Compl. at p. 4), but the only specific allegations about Mr. Tassillo are that he testified in the Canadian House of Commons on February 5, 2021, and that an unidentified "insider" said he "would [] know" "everything."[2] (Amended Compl. ¶¶ 57-59, 192-93, 200.) Plaintiff also now alleges in the Amended Complaint that Mr. Tassillo is a member of the so-called "Bro-Club," together with an unspecified number of other individuals (Amended Compl. ¶ 72); and that Mr. Tassillo is a minority shareholder of "MindGeek" (Amended Compl. ¶ 96).

Again, the Amended Complaint does not allege any specific action taken or caused by Mr. Tassillo as a member of the "Bro-Club." The Amended Complaint similarly lacks specific allegations of any involvement of Mr. Tassillo with the Plaintiff, the videos at issue, the uploading of the videos, or her communications with PornHub.

Nonetheless, Plaintiff asserts sixteen (16) claims against Mr. Tassillo (as part of "MindGeek Defendants" or "All Defendants"), including federal claims under the TVPRA, civil RICO, child pornography, and various California statutory and common law torts.

## **LEGAL STANDARD**

As a threshold matter, Plaintiff bears the burden of establishing a *prima facie* showing of personal jurisdiction. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014). Under Rule 12(b)(2), when Plaintiff cannot make such a

---

[2] As in the previous complaint, Plaintiff alleges that Mr. Tassillo gave false testimony to the House of Commons (Amended Compl. ¶ 428.) This allegation does not support an element of any claim asserted by Plaintiff and thus is totally irrelevant in the present posture of the case. We note further that that testimony was given on February 5, 2021, and the Amended Complaint does not cite a single action of the Parliament or a prosecutor in Canada that would support the allegation of perjury. The House of Commons committee issued a report which made no reference whatsoever to false testimony.

showing, the complaint must be dismissed. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017).

In addition, a complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Only specific factual allegations are accepted as true, not legal assertions, "[t]hreadbare recitals of the elements," or "conclusory statements." *Id.* Under Federal Rule of Civil Procedure 9(b), a party alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

## ARGUMENT[3]

The Amended Complaint should be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The Amended Complaint suffers from the same fatal defect as the original complaint—the complete absence of specific factual allegations of unlawful conduct by Mr. Tassillo. Plaintiff still does not plead facts sufficient to establish personal jurisdiction over Mr. Tassillo in California or the United States, and she does not meet basic notice pleading requirements, much less the heightened pleading standards applicable to the claim that sounds in fraud.

### I. THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER DAVID TASSILLO

Plaintiff fails to make a *prima facie* showing of personal jurisdiction over David Tassillo. It is well-established that Mr. Tassillo's contacts with the forum must be assessed individually, *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir.

[3] In addition to the arguments set forth in this Memorandum, Mr. Tassillo joins and incorporates by reference the arguments made by MindGeek and individual defendants Feras Antoon, Bernard Bergmair, and Corey Urman pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

2019), yet Plaintiff offers only conclusory, group allegations. As the Ninth Circuit has stated, the *prima facie* standard "is not toothless," *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020); "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

It is also a "basic pleading defect for a complaint to 'lump' parties together and to fail to distinguish between named defendants." *Beatport LLC v. SoundCloud Ltd,* 2020 WL 3977602, at *5 (C.D. Cal. July 13, 2020). This rule applies to jurisdictional allegations. *See Broidy Cap. Mgmt., LLC v. Qatar*, 2018 WL 9943551, at *7 (C.D. Cal. Aug. 22, 2018) (holding that "shotgun pleadings" do not satisfy a plaintiff's burden to demonstrate personal jurisdiction with respect to each defendant).

David Tassillo lives and works in Canada. The Amended Complaint has no allegations linking him to California or the United States. The Amended Complaint has no allegations about his job responsibilities beyond his title and the bald assertion that he and others "implemented" or "executed" unlawful policies and practices of MindGeek. The Amended Complaint has no allegations about what Mr. Tassillo did to "implement[]" or "execute[]" any of these practices. Nor does the Amended Complaint have an allegation of Mr. Tassillo's involvement in or specific knowledge about the Plaintiff or the videos that are at issue in this lawsuit. In sum, the Amended Complaint has not alleged a basis on which to find personal jurisdiction over Mr. Tassillo and, accordingly, he should be dismissed from this action.

### A. Mr. Tassillo is Not Subject to General or Specific Jurisdiction in California

Plaintiff's allegations do not support either general or specific jurisdiction over Mr. Tassillo.

For general jurisdiction to be found, a defendant's affiliations with the forum state must be "so 'continuous and systematic' as to render [him] essentially at home in the forum[.]" *Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Mr. Tassillo is a nonresident defendant without substantial or continuous and systematic activities within California. The Amended Complaint provides no basis for asserting general jurisdiction over him.

Specific jurisdiction requires an evaluation of the defendant's alleged activity in California that relate to the causes of action, and must be assessed based on the defendant's individualized contacts with the forum. Such an evaluation involves three inquiries: (1) whether the defendant purposefully directed his activities toward California residents; (2) whether the claims made by a plaintiff grow out of or relate to the defendant's forum-related activities; and (3) whether the exercise of jurisdiction comports with fair play and substantial justice. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). The plaintiff bears the burden of satisfying the first two elements of the test. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). When claims are asserted against a foreign defendant, a plaintiff "must meet a higher jurisdictional threshold than is required when the defendant is a United States citizen." *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993). Only if the plaintiff carries the burden on these two elements does the burden then shift to the defendant to show that the exercise of jurisdiction would not be reasonable. *Picot*, 780 F.3d at 1212.

On the first prong, Plaintiff has not alleged any "purposeful direction" of activities by Mr. Tassillo toward California. Mr. Tassillo is not alleged to have committed any intentional act "expressly aimed" at California, causing harm that he knew was likely to be suffered in California. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806 (9th Cir. 2004) (finding that commission of an "intentional act" requires the defendant to perform the actual, physical act). At most, the Amended Complaint merely alleges Mr. Tassillo was aware of certain company practices that are not specified to have taken place in California or the United States and are far removed from the purported harm done to Plaintiff. In any event, "knowledge and consent—passive states of mind—do not constitute intentional acts directed at the forum state." *Chirila v. Conforte*, 47 F. App'x 838, 842 (9th Cir. 2002).

On the second prong, Plaintiff's claims do not "arise out of or relate to" any forum-related activities by Mr. Tassillo. *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 983 (9th Cir. 2021) (*quoting Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021)). Because the Amended Complaint does not allege Mr. Tassillo took any action in California, it certainly does not allege that Plaintiff's claims arise out of or relate to any such activities.

Finally, although the Plaintiff has not met her pleading burden, it is clear that an assertion of jurisdiction over Mr. Tassillo would offend traditional notions of fair play and substantial justice. It would be unreasonable to hale Mr. Tassillo into court in California without any well-founded allegation that he had contacts with the forum. Plaintiff's theory does violence to the well-established due process requirements underlying specific personal jurisdiction. *Int'l Shoe Co.* v. *State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citing *Milliken* v. *Meyer*, 311 U.S. 457, 463 (1940)).

### B. Nationwide Personal Jurisdiction Does Not Apply, and in Any Event, is Not Satisfied

Plaintiff continues to cite the nationwide service provision of the RICO statute (18 U.S.C. § 1965(b)), Fed. R. Civ. P. 4(k)(2), and 18 U.S.C. § 2255 in the Amended Complaint to suggest that nationwide personal jurisdiction applies. Plaintiff is wrong.

Section 1965(b) does not confer personal jurisdiction over foreign defendants like Mr. Tassillo who were not served in the United States pursuant to the RICO nationwide service provision. Mr. Tassillo waived service in Canada, while retaining "all defenses or objections to the lawsuit or to the jurisdiction or venue of the court". (ECF No. 31 at 2-3.) In *United States. Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1184 (C.D. Cal. 1998), *aff'd and adopted,* 248 F.3d 915 (9th Cir. 2001), the court, faced with this precise issue, held categorically that RICO does not apply when the defendant is served outside the United States. Plaintiff cannot sidestep the statutory language by invoking Mr. Tassillo's waiver of service. *See e.g., Perkumpulan Inv'r Crisis Ctr. Dressel-WBG v. Danny M.K. Wong*, 2012 WL 13024801, at *8 (W.D. Wash. Apr. 6, 2012) (holding that "alternative service" under the Federal Rules does not constitute the requisite "service" under the RICO statute). The same result follows in this case.

With respect to Fed. R. Civ. P. 4(k)(2), jurisdiction is not established for substantially the same reasons that jurisdiction does not exist under the California long arm statute. The Ninth Circuit uses a three-part analysis to assess whether jurisdiction is proper under Fed. R. Civ. P. 4(k)(2). First, the claims against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006). "The third requirement of the Rule 4(k)(2) analysis is the same as the Ninth Circuit's test

for specific jurisdiction, except that instead of looking at the defendant's contact with the forum state, the Court must consider contacts with the nation as a whole." *Blizzard Ent., Inc. v. Joyfun Inc Co., Ltd.,* 2020 WL 1972284, at *5 (C.D. Cal. Feb. 7, 2020). A defendant must have minimum contacts with the United States such that the assertion of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Pebble Beach Co.* at 1155.

Courts have found that Fed. R. Civ. P. 4(k)(2) was designed to cover situations where a defendant has "ample contacts with the nation as a whole, but whose contacts are so scattered among states that none of them would have jurisdiction," *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001), *as amended* (July 2, 2001) (citation omitted). Fed. R. Civ. P. 4(k)(2) authorizes district courts to exercise jurisdiction over a foreign defendant "in a narrow band of cases" where "the United States serves as the relevant forum for a minimum contacts analysis." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002). "That bar is relatively high when assessing a defendant's contacts with the nation as a whole under Rule 4(k)(2)." *Fumoto Giken Co. v. Mistuoka*, 2015 WL 12766167, at *4 (C.D. Cal. Apr. 16, 2015).

The decision in *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020) is instructive. In that case, the Ninth Circuit held that the defendant, an operator of a foreign pornography website and a Polish citizen, had insufficient contacts with the United States even though the plaintiffs alleged he had registered two websites in Arizona that forwarded users to the pornography website, and entered into an agreement with a United States-based company for DNS services (which made it easier for US-based visitors to access the pornography site). *Id.* at 1205; 1212 n.9 (stating that "nothing more than AMA's contested bare allegations support any personal involvement by Wanat in uploading, encouraging the uploading, or intentionally failing to remove the infringing content.").

Here, the Amended Complaint contains no specific allegations about Mr. Tassillo's conduct, let alone allegations about any conduct directed at the United States or contacts with the United States. Accordingly, Plaintiff fails to establish the minimum contacts necessary for nationwide jurisdiction over Mr. Tassillo to comport with due process.

Section 2255 of Title 18 of the United States Code is also inapplicable.[4] A plain reading of the statute demonstrates that it does not authorize service on foreign defendants. *See* 18 U.S.C. § 2255(c)(2) (stating service is authorized "*in any district* in which the defendant— (A) is an inhabitant; or (B) may be found.") (emphasis added). In addition, the court's power to confer personal jurisdiction is still limited by the due process clause and the nationwide contacts analysis. *See Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1416 (9th Cir. 1989) (stating "when a statute authorizes nationwide service of process, national contacts analysis is appropriate"). Here, as described above, the Amended Complaint has no allegations of Mr. Tassillo's contacts with the United States.

### C. Under the Fiduciary Shield Doctrine, the MindGeek Entities' Contacts with California May Not Be Imputed to Mr. Tassillo

Plaintiff alleges that jurisdiction over two of the corporate defendants—MindGeek USA and MG Global Entertainment Inc.—should be imputed to Mr. Tassillo (and other foreign defendants). (Amended Compl. ¶ 40.) This allegation falls well short of what the law requires because, under the "fiduciary shield" doctrine, an individual's association with a corporation that allegedly caused injury

---

[4] 18 U.S.C. § 2255, also called Masha's Law, provides a civil remedy for personal injuries caused by the sexual exploitation of children. The law, in relevant part, states as follows: "Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, . . . [etc.] and who suffers personal injury as a result of such violation . . . may sue in any appropriate United States District Court and shall recover the actual damages such person sustains . . . ." 18 U.S.C. 2255(a). Subsection (c)(2) provides that "[i]n an action brought under subsection (a), process may be served in any district in which the defendant— (A) is an inhabitant; or (B) may be found."

in the forum state is not sufficient, in itself, to permit that forum to assert jurisdiction over the individual. *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989). The doctrine shields Mr. Tassillo who has been named a defendant by virtue of his alleged status as an officer of "MindGeek" rather than any specific alleged wrongful acts.

At the pleading stage, protection of the doctrine may be overcome only if a plaintiff adequately alleges that the individual defendant was (1) the "alter ego" of the entity subject to personal jurisdiction; or (2) the "guiding spirit" behind the wrongful conduct, *Davis*, 885 F.2d at 524 n.10, in that he "*personally directed* the activities toward the forum state giving rise to the complaint." *Ind. Plumbing Supply, Inc. v. Standard of Lynn, Inc.*, 880 F. Supp. 743, 750 (C.D. Cal. 1995) (emphasis added). Neither the alter ego exception nor the guiding spirit exception applies to Mr. Tassillo.

### 1. Mr. Tassillo is not alleged to be an alter ego of any MindGeek entity

To plead an alter ego theory appropriately, Plaintiff must make a *prima facie* showing "(1) that there is such unity of interest and ownership that the separate personalities of the corporation and the individuals no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984) (citation omitted). "Conclusory allegations of 'alter ego' status are insufficient . . . . Plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1116 (N.D. Cal. 2003) (citation omitted); *Dynascan Technology, Inc. v. Plasmedia Productions, Inc.*, 2010 WL 11520614 at *5 (C.D. Cal. Jan. 21, 2010) (Carney, J.) (dismissing alter ego theory where plaintiff failed to include "supporting factual allegations"). Alter ego is considered "an extreme remedy, sparingly used," *Hasso v. Hapke*, 227 Cal. App. 4th 107, 155 (Ct. App. 2014), and

"carries a high burden both at the pleading stage and on the merits." *Incipio, LLC v. Argento Sc By Sicura Inc.*, 2018 WL 4945002, at *2 (C.D. Cal. July 18, 2018).

Here, the Amended Complaint fails to make a *prima facie* showing of alter ego status between Mr. Tassillo and any MindGeek entity subject to the jurisdiction of California or the United States. Plaintiff does little more than recite the well-known elements of an alter ego claim and offer speculation that MindGeek's corporate structure was designed for illicit purposes and for the benefit of the individual defendants. The Amended Complaint lacks *any* specific allegation about Mr. Tassillo that would show a disrespect for corporate forms, diversion of funds, manipulation of entities for his own ends, or any injustice to Plaintiff. *See Allegro Consultants, Inc. v. Wellington Techs., Inc.*, 2014 WL 4352344, at *6 (N.D. Cal. Sept. 2, 2014) (concluding plaintiff failed to make a *prima facie* case of personal jurisdiction over company's co-founder absent evidence of such factors).

Formulaic recitation of the law, without factual support, cannot sustain an alter ego claim. The Court's decision in *Symettrica* underscores this principle. In that case, the plaintiff sought to impute the jurisdictional contacts of a corporate entity to individual defendants on an alter ego theory. But this Court found that "[t]he only support offered for th[o]se conclusions [were] allegations—made upon information and belief—that [the entity] is undercapitalized, fails to undertake corporate formalities, and that the director defendants co-mingled [the entity's] funds with their own." *Symettrica,* 2019 WL 8806093 at *4. The Court concluded it "cannot find that [the individual defendants] were the alter egos of [the entity] based on [] unsubstantiated legal conclusions alone." *Id.*

Contrary to Plaintiff's generalized formulaic allegations, the specific facts presented by the corporate defendants undercut Plaintiff's contentions about the lack of corporate separateness. The Declaration submitted by the MindGeek Entities demonstrates that each MindGeek corporate defendant is adequately

capitalized and abides by requisite corporate formalities. (*See* Decl. of A. Andreou in Support of MindGeek Entities Mot. to Dismiss, ¶¶ 11-35.)

In this case the basis for dismissal is even stronger because Plaintiff's alter ego allegations do not even mention Mr. Tassillo. The Amended Complaint offers only sweeping assertions that the members of the so called "Bro-Club" are alter egos of each other and all of the corporate entities. (Amended Compl. ¶¶ 31, 32, 78).[5] An alter ego claim may not rely on generalized allegations of group membership. *See e.g., Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 2015 WL 12777092, at *10 (C.D. Cal. Oct. 23, 2015 (rejecting alter ego theory because generalized allegations based on group membership are "insufficient to plausibly show [the individual defendant's] unity and control over the alleged network, and the mere inclusion of [her] with the [alleged network] does not overcome the deficiency").

Stripped of its improper group pleading, the Amended Complaint's allegations about Mr. Tassillo living in Canada and serving as COO of "MindGeek" (FAC ¶ 54), or that he "wield[ed] control" over "all MindGeek entities" (FAC ¶ 24), are plainly insufficient to plead the "unity of interest" necessary for alter ego status. *Ranza*, 793 F.3d at 1070-73; *Thomas Land & Dev., LLC v. Vratsinas Constr. Co.*, 2019 WL 3842995, at *6 (S.D. Cal. Aug. 14, 2019) (rejecting as insufficient conclusory allegations that defendants "dominated, influenced, and controlled each other and the officers of one another, as well as the business, property, and affairs of each other"). In any event, the FAC alleges that Mr. Tassillo is a minority owner; by definition, he does not control the

[5] Plaintiff also makes contradictory allegations about who controlled "MindGeek". For example, at one point, Plaintiff alleges that 10 Doe defendants "owned and ran" the company, and possessed ultimate "control" of it. (Amended Compl. ¶¶ 87, 96, 431.). At another point, the Amended Complaint alleges that the Bro-Club "answered" to the majority shareholder. (Amended Compl. ¶ 97.) These allegations underscore the conclusory and speculative nature of Plaintiff's pleading.

company, and therefore the company is not an alter ego of Mr. Tassillo. (*See* Amended Compl. ¶ 96.)

Accordingly, the Court need not reach the "fraud or injustice" prong of the alter ego test. *Ranza,* F.3d at 1075 n.9. To the extent the Court considers the issue, Plaintiff's allegations of injustice are also deficient because she fails to allege that Mr. Tassillo acted in bad faith or caused the two California MindGeek entities—or any other entity—to become undercapitalized. *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F.Supp.2d 977, 992 (E.D. Cal. 2012) ("To prove injustice, the plaintiff must be more than just a creditor attempting to recover on unsatisfied debts; it must show that a defendant's conduct amounted to *bad faith.*") (emphasis added).

Plaintiff has not made *any* showing that an inequitable, fraudulent, or unjust result will follow if Mr. Tassillo cannot be sued in California. Corporate defendants in California have appeared in this case, and Plaintiff has not alleged any specific facts showing that they are undercapitalized or have been deprived of assets or are otherwise shams, much less that Mr. Tassillo took any action that left the companies in such a condition. *See Shimmick Construction Co., Inc. v. Officine Meccaniche*, 2014 WL 5847440 at *7 (S.D. Cal. Nov. 12, 2014) (where plaintiff alleged that one alter ego corporation was insolvent, the fact that he could "seek redress" from remaining defendants meant he was unable to satisfy "injustice" prong of alter ego test). Plaintiff has not alleged any conduct of Mr. Tassillo that would deprive her of a remedy against an appropriate defendant. In fact, Plaintiff's claims are within the scope of a putative class action pending in Canada against certain MindGeek entities and three individual defendants (including Mr. Tassillo). *Jane Doe c. 9219-1568 Québec Inc. & als.,* No. 500-06-001115-209 (Can. Que. Sup. Ct. Nov. 29, 2021).

### 2. Mr. Tassillo is not alleged to be the "guiding spirit" of the complained-of activity

Plaintiff also fails to allege that Mr. Tassillo was the "guiding spirit" of the challenged conduct. The "guiding spirit" exception to the fiduciary shield doctrine requires Plaintiff to allege *specific* actions *the defendant* took to direct his activities to the forum and cause injury as a result of those actions. *In re Boon*, 923 F.3d 643 at 651; *see also International Mfg. Co. v. Landon, Inc.*, 336 F.2d 723, 728 (9th Cir. 2009) (corporate officer must be the "active directing hand" behind the conduct).

Here, the Amended Complaint makes no allegations connecting Mr. Tassillo to Plaintiff or the videos at issue, or that he was the "guiding spirit" of any activity by any MindGeek entity with respect to those videos. Plaintiff merely alleges in the most sweeping, conclusory fashion that Mr. Tassillo and other individual defendants are involved in the "operational implementation" of policies that "embrace [] illegal content." (*See e.g.,* Amended Compl. ¶ 172, 194.) Conclusory "managerial" allegations of this type are insufficient to confer jurisdiction over foreign corporate officers.

In *Cisco Systems, Inc. v. Link US LLC*, 2019 WL 6682838 (N.D. Cal. Dec. 6, 2019), for instance, Cisco sued a company and its president for allegedly selling counterfeit Cisco goods. The only allegations against the executive were that he was "intimately involved in operating" the company and "actively involved in [its] day-to-day management and operations." *Id*. at *1. The court found that the allegations were deficient, ruling that "[i]f general allegations of managerial responsibilities . . . were sufficient to establish specific jurisdiction in this case, specific jurisdiction would extend to a company's officers in virtually every case where it extended to the company itself. That result is inconsistent with Ninth Circuit precedent." *Id*. at *4. *See also Symettrica* 2019 WL 8806093, at *3-4. (holding that the "fiduciary shield doctrine cover[ed]" the individual defendant because plaintiffs relied only on "conclusory" allegations that he "authorized, directed, or participated in the wrongful conduct alleged.").

The Amended Complaint is insufficient for the same reason: it fails to allege that Mr. Tassillo was the "active directing hand" behind the corporate conduct at issue.

## II. PLAINTIFF'S CLAIMS AGAINST MR. TASSILLO DO NOT SATISFY BASIC PLEADING REQUIREMENTS

Because the Court lacks personal jurisdiction over Mr. Tassillo, the Court need not reach the separate question of whether the Amended Complaint states a claim against him. If the Court proceeds beyond the issue of jurisdiction, the Amended Complaint should be dismissed as to Mr. Tassillo under Fed. R. Civ. P. 12(b)(6) because of the complete absence of any allegation of a specific action taken by Mr. Tassillo relating to Plaintiff or the videos in question. Despite being named as a defendant in all but one of Plaintiff's 16 claims (based on his inclusion in the definition of "MindGeek Defendants"), Mr. Tassillo is only referenced by name in Count VII, and even there, only to repeat the same group allegations made earlier in the Amended Complaint. (*See* Amended Compl. ¶¶ 423, 428, 477.)

Dismissal is warranted when, as here, the pleading is not "sufficiently focused to allow the defendants to properly understand its claims and the Court to do justice." *Mason v. Cty. of Orange,* 251 F.R.D. 562, 563 (C.D. Cal. 2008); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007); Federal Rule of Civil Procedure 8(a). Instead of remedying the deficiencies of the previous complaint, the Amended Complaint simply rehashes the same allegations of corporate misconduct—now with repeated boilerplate language to the effect that Mr. Tassillo, together with two other individual defendants, "implemented" such activities at the direction of another individual defendant.

Several recent decisions leave no doubt as to the Amended Complaint's shortcomings. In *Doe v. WebGroup Czech Republic*, plaintiffs asserted claims against U.S. and foreign entities and individuals who purportedly operated a popular adult entertainment website. After dismissing foreign defendants on

personal jurisdiction grounds, the court in *WebGroup Czech Republic* also dismissed the claims against the U.S. defendants because the complaint "fails to sufficiently attribute allegations to [the defendants]," "comingles the Defendants together throughout much of the pleading, without identifying which entities are responsible for the conduct underlying the claims," "fail[s] to specify each Defendant's culpability adequately" and "does not adequately identify the allegations against them." *Doe v. WebGroup Czech Republic,* as, 2022 WL 982248, at *7-8 (C.D. Cal. Jan. 13, 2022), amended on reconsideration in part sub nom. *Doe v. WebGroup Czech Republic,* 2022 WL 982245 (C.D. Cal. Feb. 25, 2022). The same is true in this case.

In *Children's Health Defense v. Facebook Inc.*, 546 F.Supp.3d 909, 914 (N.D. Cal. 2021), plaintiffs sued an online platform and its CEO in his individual capacity based on purportedly false information displayed on the platform about vaccinations, on the theory that the CEO had "participated in, and personally directed" the challenged policies, and "likely would have known about, and approved" them in light of his position at the company and his "hands-on" approach as CEO. The court dismissed plaintiffs' complaint because the pleading's generalized allegations amounted to "bald and conclusory allegations" about the officer's actions that were "unsupported by facts [and] are not entitled to the assumption of truth." *Id.* at 925-6 (internal quotation and citation omitted). *See also In re JUUL Labs, Inc. Marketing, Sales Practices and Products Liability Litigation*, 497 F. Supp. 3d 552 (N.D. Cal. 2020) (dismissing plaintiffs' suit against individual directors alleging vague allegations of "control" and "final say" over the challenged policies because "generalized allegations are insufficient to connect each [defendant] to the direction or control of any unfair *acts* or youth-targeted marketing *acts*," since there were "no factual allegations of specific *conduct*" committed by or at the direction of the directors) *Id.* at 636 (emphasis in original)).

Plaintiff's Amended Complaint suffers from the same fatal lack of specificity. For ease of reference, identified below are the counts asserted against Mr. Tassillo and why they are insufficiently pleaded.[6]

**Counts I, II, and IV (TVPRA):** In her First and Second Claims for Relief against "MindGeek Defendants," Plaintiff fails to make any specific allegations about conduct by Mr. Tassillo (or any other defendant), and no allegation that Mr. Tassillo performed any acts that affected Plaintiff, much less that he "knowingly" committed the perpetrator-like conduct set forth in Section 1591(a)(1) of the TVPRA. 18 U.S.C. § 1591(a)(1). Similarly, to the extent Plaintiff asserts her claim against Mr. Tassillo under Section 1595 on a "beneficiary" theory under 1591(a)(2), that claim also fails because the Amended Complaint has no allegation that Mr. Tassillo participated in a venture with sex traffickers let alone that he knew or should have known of Plaintiff's alleged sex trafficking or benefited from it. 18 U.S.C. § 1591(a)(2). Finally, regarding the TVPRA's conspiracy provision, the Amended Complaint has no allegation that Mr. Tassillo entered into an agreement with others to commit unlawful acts, and none of the alleged overt acts reference Mr. Tassillo, directly or by implication. 18 U.S.C. § 1594(c). Accordingly, Plaintiff's claims under 18 U.S.C. §§ 1591(a), 1594(c), and 1595 must be dismissed.

**Counts V and VI (Child Pornography Offenses)**: In Plaintiff's Fifth and Sixth Claims for Relief, she asserts civil actions under the federal criminal provisions prohibiting the receipt, transport, and possession of child pornography. Regarding these alleged child exploitation materials ("CSEM") offenses. Plaintiff fails to plead, as she must, that Mr. Tassillo "knowingly" received, transported, or possessed such materials. *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78

---

[6] Mr. Tassillo also incorporates by reference and joins in the arguments made by MindGeek in its motion to dismiss with respect to the pleading deficiencies in Counts I - II and Count IV - Counts XVII of the Amended Complaint. (*See generally* MindGeek Mot. to Dismiss Br., Sections IV-V).

(1994). Plaintiff has not made any allegation pertaining to Mr. Tassillo and CSEM, and certainly not that Mr. Tassillo knew the videos at issue contained CSEM prior to Plaintiff's takedown request. Accordingly, Plaintiff fails to state a claim because the statute requires that she be "aggrieved by reason of" the knowing receipt, transport, or possession of CSEM. 18 U.S.C. § 2252A(f)(1).

**Counts VII, VIII, (Civil RICO):** Plaintiff's civil RICO claims also must fail. As an initial matter, courts "strive to flush out frivolous RICO allegations at an early stage of the litigation." *See Hall v. Fiat Chrysler America US LLC*, 2021 WL 3560231, at *3 (C.D. Cal. July 20, 2021) (Carney, J.) (quoting *Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1108 (9th Cir. 2003)). Plaintiff is required to plead, among other things, "at least two predicate acts *by each defendant*." *In re WellPoint, Inc.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011) (emphasis added). Plaintiff has failed to sufficiently plead any predicate act by Mr. Tassillo and certainly not the two required by law. This failure is fatal to her civil RICO claims against him. *See Doan v. Singh*, 617 F. App'x 684, 686 (9th Cir. 2015) (rejecting RICO claim because it was not clear from plaintiffs' allegations "what exactly each individual did, when they did it, or how they functioned together as a continuing unit.").

**Counts IX, X, and XI (Public Disclosure of Private Facts, Intrusion into Private Affairs and Placing Plaintiff in a False Light):** Regarding all the common law and state law torts alleged in the Amended Complaint against Mr. Tassillo, "[d]irectors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong." *United States Liability Ins. Co. v. Haidinger–Hayes, Inc.,* 463 P.2d 770, 775 (Cal. 1970). The Amended Complaint is silent as to Mr. Tassillo's alleged participation in any wrongful acts. Plaintiff makes only group and conclusory allegations about Mr. Tassillo, including about his role as COO, and that association cannot form the basis of individual tort liability. *See Frances T. v.*

*Vill. Green Owners Assn.*, 42 Cal. 3d 490, 503 (1986) ("It is well settled that corporate directors cannot be held vicariously liable for the corporation's torts in which they do not participate. Their liability, if any, stems from their own tortious conduct, not from their status as directors or officers of the enterprise."). For this reason alone, the common law and state law torts directed against Mr. Tassillo fail.

Even if Plaintiff could sufficiently plead her claims, courts routinely hold that the basis for these kinds of privacy torts presupposes the website's "role as a 'republisher' of material posted by a third party," and therefore, they are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230, as discussed below. *See e.g., Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) (holding claims against Facebook for intrusion into private affairs and false light, among others, based on Facebook's refusal to remove private photos and videos of the plaintiff from Facebook, was barred under Section 230).

**Counts XII and XIII (Common Law and California Statutory Commercial Misappropriation):** In Plaintiff's Twelfth and Thirteenth Claims for Relief, Plaintiff fails to adequately allege the elements of a misappropriation claim under common law or under Cal. Civil Code § 3344 against Mr. Tassillo. The Amended Complaint does not contain any allegation that Mr. Tassillo appropriated Plaintiff's name or likeness, or that he used her identity, knowingly or otherwise, for a commercial purpose. Accordingly, these claims should be dismissed.

**Count XIV (Cal. Civ. Code § 1708.85):** Plaintiff's Fourteenth Claim for Relief is also deficient. The California statute provides a private right of action "against a person who intentionally distributes" private sexually explicit materials "without the other's consent" if "the person knew, or reasonably should have known, that the other person had a reasonable expectation that the material would remain private." Cal. Civ. Code § 1708.85. But the Amended Complaint has no allegation that Mr. Tassillo "intentionally distributed" videos or images depicting

Plaintiff, or that he even knew these materials existed. Accordingly, Plaintiff has failed to plead a claim under Section 1708.85 against Mr. Tassillo.

**Count XV (Negligence):** Plaintiff's Fifteenth Claim for Relief fails because Plaintiff has not alleged any legal duty owed to her by Mr. Tassillo, much less any acts that would constitute a breach of that duty. Absent from the Amended Complaint is any allegation from which the Court could conclude that a special relationship existed between Mr. Tassillo and Plaintiff. Courts consistently decline to find special relationships between websites and those injured by third-party uploads to such websites. *See, e.g.*, *Doe v. MySpace*, 474 F. Supp. 2d 843, 846, 852 (W.D. Tex. 2007) (dismissing negligence claims because Myspace did not owe a legal duty to parents of a teenager who was raped to protect their daughter from criminal acts "nor to institute reasonable safety measures on its website"). The point is even more stark with respect to a purported injured third-party user and a COO of the company that owns the website.

**Count XVI (Cal. Bus. & Prof. Code §§ 17200 and 17500):** Plaintiff's Unfair Competition Law claim is insufficiently pleaded because Plaintiff has not alleged any specific unlawful acts by Mr. Tassillo. In addition, because Plaintiff's claim is premised on an alleged misrepresentation, it also fails to meet Rule 9(b)'s requirements because she does not allege with particularity any specific misrepresentation made by Mr. Tassillo. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320, 322-25 (2011); *Letizia v. Facebook Inc*., 267 F. Supp. 3d 1235, 1244 (N.D. Cal. 2017).

**Count XVII (Civil Conspiracy):** Plaintiff's Seventeenth Claim for Relief fails because, under California law, civil conspiracy is not a separate and distinct tort cause of action. *See, e.g., Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 514 (1994) (stating that, "Conspiracy is not an independent tort; it cannot create a duty or abrogate an immunity. It allows tort recovery only against a party who already owes the duty and is not immune from liability based

on applicable substantive tort law principles."); *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997) (stating that "merely alleging underlying tort causes of action is clearly insufficient to support a conspiracy cause of action").

## III. SECTION 230 IMMUNITY EXTENDS TO MR. TASSILLO[7]

Plaintiff's claims here are barred by Section 230 of the Communications Decency Act because she seeks to treat the MindGeek Defendants as publishers or speakers of information provided by other content providers. In enacting Section 230, Congress made a deliberate policy decision that providers of Interactive Computer Services ("ICSs") like Pornhub may not be held liable for content created by their users. *Gonzalez v. Google, LLC*, 2 F.4th 871, 887 (9th Cir. 2021). Congress designed Section 230 "to promote the free exchange of information and ideas over the Internet and to encourage voluntary monitoring for offensive or obscene material." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099–1100 (9th Cir. 2009) (internal quotation omitted).

In keeping with these principles, courts have extended Section 230 immunity to officers of ICSs asserting the protection whose only connection to the lawsuit is their association to the organization. For instance, in a lawsuit against Facebook and its CEO, the D.C. Circuit held that "Mark Zuckerberg, too, qualifies for protection because he is a 'provider' of Facebook's interactive computer service, 47 U.S.C. § 230(c)(1), and Klayman's complaint seeks to hold him

[7] We recognize this Court's ruling in *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828 (C.D. Cal. 2021), *reconsid. denied*, 2021 WL 5990195 (C.D. Cal. Dec. 2, 2021), as well as the decision in *Doe #1 v. MG Freesites, LTD*, 2022 WL 407147 (N.D. Ala. Feb. 9, 2022). We note, however, that other courts have reached a different result. *See e.g., J.B. v. G6 Hospitality*, LLC, 2021 WL 4079207 (N.D. Cal. Sept. 8, 2021); *Doe v. Reddit, Inc.*, 2021 WL 5860904 (C.D. Cal. Oct. 7, 2021); *M.L. v. Craigslist Inc.*, No. 3:19-cv-06153, Dkt. 225, (W.D. Wash. Sept. 16, 2021) *report and recommendation adopted*, 2022 WL 1210830 (W.D. Wash. Apr. 25, 2022). In our view, Section 230 immunity applies here for the reasons stated in the MindGeek Entities' Motion to Dismiss Brief, Sections II-III, and in Section III herein.

accountable for his role in making that service available, Compl. ¶ 12." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357–58 (D.C. Cir. 2014). *See also La'Tiejira v. Facebook, Inc.,* 272 F.Supp.3d 981 (S.D. Tex. 2017) (stating that "Facebook Defendants [which includes Zuckerberg] are entitled to CDA immunity because (1) *they* are providers of an "interactive computer service") (emphasis added); *People v. Ferrer*, 2016 WL 7237305 (2016) (holding that Backpage.com and its officers could not be prosecuted under state criminal laws for Section 230-immunized conduct); *Ascentive, LLC v. Opinion Corp.*, 842 F.Supp.2d 450, 474 (E.D.N.Y. 2011) (extending Section 230 immunity to three officers of a consumer review website, who, along with the entity, were sued under the Lanham Act and civil RICO). Here these principles apply *a fortiori* because Plaintiff has failed to allege anything about Mr. Tassillo other than his role as COO.

Accordingly, even if Plaintiff met the basic pleading standard in Rule 8(a)—which she does not—the claims against Mr. Tassillo are barred by Section 230.

**CONCLUSION**

For the reasons stated above, David Tassillo respectfully requests that the Court dismiss this action for lack of personal jurisdiction or, in the alternative, for failure to state a claim.

DATED: May 23, 2022

Respectfully Submitted,

WIECHERT, MUNK & GOLDSTEIN, PC

By: /s/ David W. Wiechert
David W. Wiechert (SBN 94607)

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO PC
Jonathan S. Sack (*admitted pro hac vice*)
Karen R. King (*admitted pro hac vice*)
Ryan McMenamin (*admitted pro hac vice*)
*Attorneys for Specially Appearing Defendant David Tassillo*

# CERTIFICATE OF SERVICE

I, Danielle Dragotta, an employee of Wiechert, Munk & Goldstein, PC, located at 27136 Paseo Espada, Suite B1123, San Juan Capistrano, California 92675, declare under penalty and perjury that I am over the age of eighteen (18) and not a party to the above-entitled proceeding.

On May 23, 2022, I served the forgoing documents, described as **SPECIALLY APPEARING DEFENDANT DAVID TASSILLO'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; [PROPOSED] ORDER** on all interested parties as follows:

[ ] **BY MAIL:** I caused such envelope(s) to be deposited in the mail at San Juan Capistrano, California with postage thereon fully prepaid to the office of the addressee(s) as indicated on the attached service list. I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

[X] **BY E-MAIL:** I caused the document(s) to be transmitted electronically by filing the forgoing with the clerk of the District Court using the CM/ECF system, which electronically notifies counsel for all parties.

[ ] **BY PERSONAL DELIVERY:** I personally delivered the document(s) listed above to the person(s) as indicated on the attached service list.

[X] **FEDERAL:** I declare that I am employed in the office of a member of the Bar of this court at whose direction the service was made.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 23, 2022, at San Juan Capistrano, California.

/s/*Danielle Dragotta*
Danielle Dragotta