BENJAMIN M. SADUN (287533)
benjamin.sadun@dechert.com
DECHERT LLP
US Bank Tower, 633 West 5th Street,
Suite 4900
Los Angeles, CA 90071-2013
Phone: (213) 808-5721; Fax: (213) 808-5760

KATHLEEN N. MASSEY (*admitted pro hac vice*)
kathleen.massey@dechert.com
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500; Fax: (212) 698 3599

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| SERENA FLEITES, | CASE NO.  2:21-CV-04920-CJC-ADS |
| Plaintiff, | Judicial Officer:    Cormac J. Carney |
| v. | Courtroom: 9B |
| MINDGEEK S.A.R.L.; MG FREESITES, LTD; MINDGEEK USA INCORPORATED; MG PREMIUM LTD.; MG GLOBAL ENTERTAINMENT INC.; 9219-5618 QUEBEC INC.; BERND BERGMAIR; FERAS ANTOON; DAVID TASSILLO; COREY URMAN; VISA INC.; COLBECK CAPITAL DOES 1-5; BERGMAIR DOES 1-5 | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MINDGEEK'S MOTION TO DISMISS AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM** |
| | Hearing:      August 8, 2022 |
| | Time:          1:30 p.m. |
| Defendants. | Courtroom:  9B |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 3

LEGAL STANDARD ......................................................................................... 4

ARGUMENT ...................................................................................................... 5

I.     Plaintiff Engages in Improper Group Pleading. ...................................... 5

II.    Section 230 Bars All of Plaintiff's State and Federal Claims. ............... 6

      A.   MindGeek Provides an Interactive Computer Service. ................. 7

      B.   Plaintiff Seeks to Treat MindGeek as a Publisher or Speaker. ..... 7

      C.   MindGeek Did Not Create Any of the Offending Content ............ 8

III.   MindGeek Did Not Violate the TVPRA. .............................................. 10

      A.   The Facts Alleged Establish that Plaintiff's Direct Trafficking Claims Fail as a Matter of Law. ............................................... 11

      B.   Plaintiff's Production of a Private Video for Her High School Boyfriend Was Not a Commercial Sex Act. ................................ 12

      C.   Plaintiff Does Not Allege Plausible Facts Showing that MindGeek Participated in a Sex Trafficking Venture. ................ 14

      D.   Plaintiff Fails to Allege MindGeek Knew or Should Have Known of Her Alleged Trafficking When It Occurred. ............... 17

      E.   Plaintiff Fails to State a *Prima Facie* TVPRA Conspiracy Claim ...... 19

IV.   Plaintiff's RICO Claims Should be Dismissed. .................................... 20

      A.   Plaintiff's RICO Claims Are Time-Barred. .................................. 20

      B.   Plaintiff Has Not Alleged Injury to Business or Property. ........... 23

      C.   Plaintiff Has Not Adequately Alleged a RICO Enterprise. .......... 27

          1.   Plaintiff Does Not Adequately Allege That Purported Enterprise Members Associated Together for the Alleged "Common Purpose," Were an "Organization, Formal or Informal," or Functioned as a Continuing Unit. ................... 28

          2.   Plaintiff Has Not Plausibly Pleaded a Distinct RICO Enterprise. ............................................................................. 33

      D.   Plaintiff Fails to Allege Predicate Acts Connected to Her Injuries .............................................................................. 35

      E.   Plaintiff Fails to Allege a RICO Conspiracy. .............................. 38

V.    Plaintiff's Remaining Claims Fail for Additional Reasons ................... 39

VI.   The Court Lacks Personal Jurisdiction Over MindGeek S.à.r.l. and MG Premium Ltd. ..................................................................................... 45

      A.   The Court Lacks Personal Jurisdiction over MindGeek S.à.r.l. ......... 46

      B.   The Court Lacks Personal Jurisdiction over MG Premium Ltd. ......... 46

## TABLE OF CONTENTS
(continued)

**Page**

C.    Plaintiff Cannot Impute Other Entities' Contacts to Establish
Jurisdiction Over MindGeek S.à.r.l. and MG Premium Ltd.................47

CONCLUSION.....................................................................................50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
    483 U.S. 143 (1987) ............................................................................. 20

*Ahern v. Dillenback*,
    1 Cal. App. 4th 36 (1991) .................................................................... 44

*Ainsworth v. Owenby*,
    326 F. Supp. 3d 1111 (D. Or. 2018) .................................................... 24

*Allergan, Inc. v. Merz Pharms., LLC*,
    2011 WL 13323227 (C.D. Cal. Aug. 1, 2011) .................................... 46

*AMA Multimedia, LLC v. Wanat*,
    970 F.3d 1201 (9th Cir. 2020) ............................................................... 5

*Amy v. Curtis*,
    2020 WL 5365979 (N.D. Cal. Sept. 8, 2020) ...................................... 24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................ 4, 5

*In re Auto. Antitrust Cases I & II*,
    135 Cal. App. 4th 100 (2005) .............................................................. 48

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
    2020 WL 4368214 (N.D. Cal. July 30, 2020) ..................................... 19

*Baker v. Bratton*,
    2008 WL 11409990 (C.D. Cal. Jan. 9, 2008).................................... 26

*Banks v. ACS Educ.*,
    638 F. App'x 587 (9th Cir. 2016) ....................................................... 38

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009) ............................................................... 8

*Bell Atl. Corp. v. Twombly, Inc.*,
    550 U.S. 544 (2007) ............................................................................. 6

*Benefield v. Bryco Funding, Inc.*,
   2014 WL 2604363 (N.D. Cal. June 10, 2014) ................................................... 43

*Berg v. First State Ins. Co.*,
   915 F.2d 460 (9th Cir. 1990) ............................................................... 24, 25

*Bernstein v. Misk*,
   948 F. Supp. 228 (E.D.N.Y. 1997) .................................................... 37

*Booth v. United States*,
   914 F.3d 1199 (9th Cir. 2019) ........................................................ 21

*Bristol-Myers Squibb Co. v. Super. Ct.*,
   137 S. Ct. 1773 (2017)................................................................... 45, 46

*Broidy Cap. Mgmt., LLC v. Qatar*,
   2018 WL 9943551 (C.D. Cal. Aug. 22, 2018) ........................... 47, 48

*Burnell v. Marin Humane Soc.*,
   2015 WL 6746818 (N.D. Cal. Nov. 5, 2015) .................................. 42

*C & M Cafe v. Kinetic Farm, Inc.*,
   2016 WL 6822071 (N.D. Cal. 2016) ........................................... 25, 33

*Calder v. Jones*,
   465 U.S. 783 (1984) ................................................................ 48

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
   519 F.3d 969 (9th Cir. 2008) ...................................................... 23, 35

*Caraccioli v. Facebook, Inc.*,
   167 F. Supp. 3d 1056 (N.D. Cal. 2016) .................................... 41

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) .......................................... 8, 15, 44

*Cedric Kushner Promotions, Ltd. v. King*,
   533 U.S. 158 (2001) ................................................................. 33

*Chagby v. Target Corp.*,
   2008 WL 5686105 (C.D. Cal. Oct. 27, 2008) ........................... 28

*Chi Pham v. Cap. Holdings, Inc.*,
   2011 WL 3490297 (S.D. Cal. Aug. 9, 2011)............................. 37

*City of Almaty v. Khrapunov*,
    956 F.3d 1129 (9th Cir. 2020) ........................................................... 37

*Corradino v. Liquidnet Holdings Inc.*,
    2021 WL 2853362 (S.D.N.Y. July 8, 2021) ...................................... 13

*Crayton v. Hedgpeth*,
    2011 WL 1988450 (E.D. Cal. May 20, 2011) ................................... 27

*Cross v. Facebook, Inc.*,
    14 Cal. App. 5th 190 (Ct. App. 2017) ............................................... 42

*Curry v. Baca*,
    497 F. Supp. 2d 1128 (C.D. Cal. 2007) ............................................. 26

*Delphix Corp. v. Embarcadero Techs., Inc.*,
    749 F. App'x 502 (9th Cir. 2018) ........................................................ 5

*Diaz v. Gates*,
    420 F.3d 897 (9th Cir. 2005) ............................................................. 26

*Doan v. Singh*,
    617 F. App'x 684 (9th Cir. 2015) ................................................. 27, 32

*Doe #1 v. MG Freesites, LTD*,
    2022 WL 407147 (N.D. Ala. Feb. 9, 2022).................................... 7, 8

*Doe v. Kik Interactive*,
    482 F. Supp. 3d 1242 (S.D. Fla. 2020)........................................ 15, 19

*Doe v. MindGeek USA, Inc.*,
    558 F. Supp. 3d 828 (C.D. Cal. 2021)..................................... *passim*

*Doe v. MindGeek USA, Inc.*,
    2021 WL 5990195 (C.D. Cal. Dec. 2, 2021).......................... *passim*

*Doe v. MySpace*,
    474 F. Supp. 2d 843 (W.D. Tex. 2007) .............................................. 44

*Doe v. Red Roof Inns, Inc.*,
    21 F.4th 714 (11th Cir. 2021) .............................................. 14, 15, 17

*Doe v. Reddit, Inc.*,
    2021 WL 5860904 (C.D. Cal. Oct. 7, 2021) ......................... 15, 44, 45

iv

*Doe v. Roe*,
    958 F.2d 763 (7th Cir. 1992) ........................................................................ 24, 25

*Doe v. Twitter, Inc.*,
    555 F. Supp. 3d 889 (N.D. Cal. 2021) ............................................... *passim*

*Doe v. WebGroup Czech Republic, A.S.*,
    2022 WL 982248 (C.D. Cal. Jan. 13, 2022) ........................................................ 6

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ................................................................ 1, 8, 10

*Ellis v. J.P. Morgan Chase & Co.*,
    2015 WL 78190 (N.D. Cal. Jan. 6, 2015) ................................................... 28, 38

*Empire Merchants, LLC v. Reliable Churchill LLP*,
    902 F.3d 132 (2d Cir. 2018) ........................................................................... 37

*Evans v. Alliance Funding*,
    2010 WL 11482495 (C.D. Cal. Dec. 13, 2010) .................................................. 3

*Fair Housing Council v. Roommates.com*,
    521 F.3d 1157 (9th Cir. 2008) ...................................................................... 8, 9

*Four Navy Seals v. Associated Press*,
    413 F. Supp. 2d 1136 (S.D. Cal. 2005) .......................................................... 40

*G.G. v. Salesforce.com, Inc.*,
    2022 WL 1541408 (N.D. Ill. May 16, 2022) ................................................... 12

*Gardner v. Starkist Co.*,
    418 F. Supp. 3d 443 (N.D. Cal. 2019) ........................................................... 28

*Geiss v. Weinstein Co. Holdings LLC*,
    383 F. Supp. 3d 156 (S.D.N.Y. 2019) ............................................................ 13

*Ginsberg v. Google Inc.*,
    2022 WL 504166 (N.D. Cal. Feb. 18, 2022) ..................................................... 8

*Gonzalez v. Google LLC*,
    2 F.4th 871 (9th Cir. 2021) ........................................................... *passim*

*Grimmett v. Brown*,
    75 F.3d 506 (9th Cir. 1996) .............................................................. 20, 21, 22

*H.H. v. G6 Hospitality, LLC.*
    2019 WL 6682152 (S.D. Ohio Dec. 6, 2019).................................................... 13

*Hall v. Fiat Chrysler Am. US LLC*,
    550 F. Supp. 3d 847 (C.D. Cal. 2021)..................................................20, 28, 30

*Henriks v. Moritz*,
    304 F. App'x 491 (9th Cir. 2008) ........................................................ 39

*Holt v. Facebook, Inc.*,
    240 F. Supp. 3d 1021 (N.D. Cal. 2017)............................................... 45

*Hourani v. Mirtchev*,
    796 F.3d 1 (D.C. Cir. 2015) ................................................................ 37

*Howard v. Am. Online*, *Inc.*,
    208 F.3d 741 (9th Cir. 2000) ....................................................... 38, 39

*Hunter v. Tarantino*,
    2010 WL 11579019 (C.D. Cal. July 15, 2010) ................................. 38

*I.T.C. Int'l, LLC v. Am. Voyage Corp.*,
    2008 WL 11342745 (C.D. Cal. Sept. 26, 2008)................................. 38

*Iconlab, Inc. v. Bausch Health Cos.*,
    828 F. App'x 363 (9th Cir. 2020)................................................. 48, 49

*J. B. v. G6 Hosp., LLC*,
    2020 WL 4901196 (N.D. Cal. Aug. 20, 2020)......................... 14, 15, 16

*J. B. v. G6 Hosp., LLC*,
    2021 WL 4079207 (N.D. Cal. Sept. 8, 2021)..................................... 11

*In re Jamster Mktg. Litig.*,
    2009 WL 1456632 (S.D. Cal. May 22, 2009) ............................... 27, 32

*JST Dist., LLC v. CNV.com, Inc.*,
    2018 WL 6113092 (C.D. Cal. Mar. 7, 2018) ..................................... 36

*In re JUUL Labs, Inc. Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    497 F. Supp. 3d 552 (N.D. Cal. 2020)......................................... 30, 34

*Keel v. Schwarzenegger*,
    2009 WL 1444644 (C.D. Cal. May 19, 2009)................................... 26

**MOTION TO DISMISS**

*Kelly v. L.L. Cool J.*,
    145 F.R.D. 32 (S.D.N.Y. 1992)......................................................................37

*Kelly v. United States*,
    140 S. Ct. 1565 (2020)................................................................................35

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ...............................................................1, 10

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*,
    2013 WL 6816174 (W.D. Ark. Dec. 24, 2013)......................................13

*Kurtz v. Goodyear Tire & Rubber Co.*,
    859 F. App'x 22 (9th Cir. 2021)...............................................................22

*Kwikset Corp. v. Superior Court*,
    246 P.3d 877 (Cal. 2011).........................................................................44

*Lee v. Penthouse Int'l, Ltd.*,
    1997 WL 33384309 (C.D. Cal. Mar. 19, 1997) ...................................41

*Life Bliss Found. v. Sun TV Network Ltd.*,
    2014 WL 12589657 (C.D. Cal. Sept. 17, 2014).......................................5

*Loc. TV, LLC v. Super. Ct.*,
    3 Cal App. 5th 1 (Ct. App. 2016) ...........................................................41

*M.L. v. Craigslist, Inc.*,
    2022 WL 1210830 (W.D. Wash. Apr. 25, 2002) ....................................9

*In re Managed Care Litig.*,
    2009 WL 812257 (S.D. Fla. Mar. 26. 2009) ........................................36

*Marshall v. United States*,
    2016 WL 11756786 (C.D. Cal. Jan. 4, 2016)........................................40

*Martinez v. United States*,
    812 F. Supp. 2d 1052 (C.D. Cal. 2010)..................................................40

*State ex rel. Metz v. CCC Info. Servs., Inc.*,
    149 Cal. App. 4th 402 (Cal. Ct. App. 2007)..........................................40

*Mireskandari v. Daily Mail & Gen. Trust PLC*,
    2013 WL 12114760 (C.D. Cal. Jul. 13, 2013) ......................................48

*Monterey Plaza Hotel Ltd. P'ship v. Local 483*,
    215 F.3d 923 (9th Cir. 2000) ............................................................... 35

*Moreno v. Hansford Sentinel, Inc.*,
    172 Cal. App. 4th 1125 (Ct. App. 2009) ............................................. 43

*Murphy v. Am. Gen. Life Ins. Co.*,
    74 F. Supp. 3d 1267 (C.D. Cal. 2015) ................................................. 40

*NetApp, Inc. v. Nimble Storage, Inc.*,
    41 F. Supp. 3d 816 (N.D. Cal. 2014) ................................................... 40

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018) ................................................. 17

*North Atl. Imports, LLC v. NexGrill Indus., Inc.*,
    2020 WL 1042209 (C.D. Cal. Jan. 23, 2020) ........................................ 6

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) ............................................................... 27

*Oscar v. Univ. Students Co-op Ass'n*,
    965 F.2d 783 (9th Cir. 1992) ............................................................... 24

*In re Outlaw Lab., LLP*,
    463 F.Supp.3d 1068 (S.D. Cal. 2020) .................................................. 45

*Ponomarenko v. Shapiro*,
    287 F. Supp. 3d 816 (N.D. Cal. 2018) ................................................. 40

*Prince v. Out Publ'g, Inc.*,
    2002 WL 7999 (Cal. Ct. App. Jan. 3, 2002) ........................................ 42

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ........................................................ 48, 49

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*,
    630 F.3d 866 (9th Cir. 2010) ............................................................... 35

*Roberts v. Cnty. of Riverside*,
    2020 WL 3965027 (C.D. Cal. June 5, 2020) ...................................... 5, 6

*Rotella v. Wood*,
    528 U.S. 549 (2000) .................................................................. 20, 21, 22

*S.J. v. Choice Hotels International, Inc.*,
    473 F. Supp. 3d 147 (E.D.N.Y. 2020) ...................................................... 19

*Samsung Elecs. Am., Inc. v. Chung*,
    2017 WL 635031 (N.D. Tex. Feb. 16, 2017) ............................................ 37

*Sarafian v. Wright Med. Tech., Inc.*,
    2016 WL 1305087 (C.D. Cal. Apr. 1, 2016) ........................................... 46

*Savoy v. Collectors Universe, Inc.*,
    2020 WL 4938464 (C.D. Cal. July 21, 2020) ......................................... 26

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ........................................................... 5, 35

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) .......................................................... 45, 46

*Sensoria, LLC v. Kaweske*,
    548 F. Supp. 3d 1011 (D. Colo. 2021) ................................................... 24

*Shaw v. Nissan N. Am., Inc.*,
    220 F. Supp. 3d 1046 (C.D. Cal. 2016) ................................................. 28

*Sherman v. Trinity Teen Solutions, Inc.*,
    2021 WL 7286595 (D. Wy. Nov. 30, 2021) ........................................... 21

*Shimmick Constr. Co./Obayashi Corp. v. Officine Meccaniche Galletti-O.M.G. S.R.L.*,
    2014 WL 5847440 (S.D. Cal. Nov. 12, 2014) ......................................... 50

*Smartstop Self Storage Operating P'ship L.P. v. Can-Dev, ULC*,
    2015 WL 13322430 (C.D. Cal. Oct. 26, 2015) .......................................... 5

*Smithson v. Puckett*,
    2020 WL 2857373 (W.D. Wash. May 6, 2020) ....................................... 26

*Smithson v. Puckett*,
    2020 WL 2850567 (W.D. Wash. June 2, 2020) ....................................... 26

*Stewart v. Wachowski*,
    2004 WL 2980783 (C.D. Cal. Sept. 28. 2004) ........................................ 37

*Stewart v. Wachowski*,
    2005 WL 6184235 (C.D. Cal. June 14, 2005) ........................................ 38

*Stitt v. Citibank, N.A.,*
    942 F. Supp. 2d 944 (N.D. Cal. 2013)....................................................27, 28, 29

*Sugarman v. Muddy Waters Cap. LLC,*
    2020 WL 633596 (N.D. Cal. Feb. 3, 2020).......................................................36

*Taus v. Loftus,*
    151 P.3d 1185 (Cal. 2007)...................................................................................41

*Thomas v. Baca,*
    308 F. App'x 87 (9th Cir. 2009)............................................................24, 25, 26

*Turner v. Cook,*
    362 F.3d 1219 (9th Cir. 2004) ............................................................................39

*Tymoshenko v. Firtash,*
    57 F. Supp. 3d 311 (S.D.N.Y. 2014) .................................................................37

*United States v. Bazar,*
    747 F. App'x 454 (9th Cir. 2018)................................................................13, 14

*United States v. Clark,*
    435 F.3d 1100 (9th Cir. 2006) ............................................................................12

*United States v. Dobbs,*
    629 F.3d 1199 (10th Cir. 2011) ..........................................................................39

*United States v. Giraldi,*
    864 F.2d 222 (5th Cir. 1988) ..............................................................................36

*United States v. Liu,*
    731 F.3d 982 (9th Cir. 2013) ..............................................................................38

*United States v Mongol Nation,*
    693 F. App'x 637 (9th Cir. 2017).................................................................33, 34

*United States v. Myers,*
    355 F.3d 1040 (7th Cir. 2004) ............................................................................39

*United States v. Turkette,*
    452 U.S. 576 (1981) ............................................................................................27

*United States v. X-Citement Video, Inc.,*
    513 U.S. 64 (1994) ..............................................................................................39

*United States v. Zitlalpopoca-Hernandez*,
   495 F. App'x 833 (9th Cir. 2012) ........................................................... 13, 17, 18

*Universal Surface Tech., Inc. v. Sae-A Trading Am. Corp.*,
   2011 WL 281020 (C.D. Cal. Jan. 26, 2011) ...................................................... 37

*Van Patten v. Vertical Fitness Group, LLC*,
   847 F.3d 1037 (9th Cir. 2017) ............................................................................ 44

*Walter v. Drayson*,
   538 F.3d 1244 (9th Cir. 2008) ............................................................................ 30

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   903 F. Supp. 2d 880 (C.D. Cal. 2012) ........................................................... 35, 36

*Yagman v. Kelly*,
   2018 WL 2138461 (C.D. Cal. Mar. 20, 2018) ................................................... 33

*Yeager v. Cingular Wireless LLC*,
   673 F. Supp. 2d 1089 (E.D. Cal. 2009) ............................................................. 42

*Yost v. Nationstar Mortg., LLC*,
   2013 WL 4828590 (E.D. Cal. Sept. 9, 2013) ...................................................... 6

**Statutes**

15 U.S.C. §15b ........................................................................................................... 21

18 U.S.C. § 1341 ....................................................................................................... 35

18 U.S.C. § 1343 ....................................................................................................... 35

18 U.S.C. § 1591 ................................................................................................. *passim*

18 U.S.C. § 1594 ................................................................................................. 11, 19

18 U.S.C. § 1595 ................................................................................................. *passim*

18 U.S.C. § 1957 ................................................................................................. 36, 37

18 U.S.C. § 1962 ................................................................................................. *passim*

18 U.S.C. § 1964 ....................................................................................................... 25

18 U.S.C. § 2252 ................................................................................................. 38, 39

18 U.S.C. § 2252A ................................................................................... 39

18 U.S.C. § 2255 ..................................................................................... 39

18 U.S.C. § 2319 ............................................................................... 37, 38

47 U.S.C. § 230 ................................................................................. *passim*

Cal. Bus. & Prof. Code § 17204 ............................................................ 44

Cal. Bus. & Prof. Code § 17535 ............................................................ 44

CAL. CIV. CODE § 1708.85 ..................................................................... 43

CAL. CIV. CODE § 3344 ........................................................................... 41

**Other Authorities**

Fed. R. Civ. P. 8 ............................................................................... 2, 5, 6

Fed. R. Civ. P. 9 ............................................................................... *passim*

Fed. R. Civ. P. 12 ................................................................................ 4, 5

RESTATEMENT (SECOND) OF TORTS § 652B ........................................... 41

RESTATEMENT (SECOND) OF TORTS § 652C ...................................... 41, 42

**MOTION TO DISMISS**

# INTRODUCTION

Plaintiff Serena Fleites ("Plaintiff") alleges that she sustained harm because sexually explicit videos that she made when she was underage were uploaded to websites owned and operated by MindGeek.[1]  First Amended Complaint ("FAC") ¶¶ 258, 267-69.  She contends that she made the first video at the request of her then-boyfriend when she was 13 years old and that this video was later posted to Pornhub.com ("Pornhub")—a website operated by Freesites.  *Id.* ¶ 258.   She also alleges that years later, when she was 16, at the request of another boyfriend, she made additional sexually explicit videos of herself and sold them on websites that had nothing to do with MindGeek to make money.  *Id.* ¶ 267.  Some of these videos were eventually uploaded to Pornhub, ostensibly by people who bought them on other websites.  *Id.* ¶¶ 268.  Although the FAC goes to great lengths to obscure this fact, it is clear that MindGeek did not create any of the videos at issue or have a role in posting them.  Instead, Plaintiff's case is predicated on allegations that MindGeek provided an attractive platform for members of the public to upload and share their video content and that unidentified individuals availed themselves of that platform. But merely providing an online platform capable of being used for unlawful purposes is not illegal or actionable.[2]

The FAC attempts to obscure this patent defect with hundreds of irrelevant and hyperbolic paragraphs about MindGeek's purported business practices.  Stripped of their overheated rhetoric and references to fictional television characters, Plaintiff's allegations fall short of stating a claim against any of the MindGeek entities.

---

[1] Defendants MindGeek S.à.r.l., MG Freesites Ltd ("Freesites"), MindGeek USA Inc., MG Premium Ltd, MG Global Entertainment Inc., and 9219-5618 Quebec Inc. ("9219," and with the others collectively "MindGeek") dispute Plaintiff's allegations that they all own or operate websites.

[2] *See, e.g.*, *Gonzalez v. Google LLC*, 2 F.4th 871, 892-93 (9th Cir. 2021); *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019) *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269 (9th Cir. 2016).

As an initial matter, the FAC fails to distinguish between the Defendants or specify what actions each allegedly took. Accordingly, Plaintiff does not meet even the most basic pleading requirements of Rule 8.

The Court should also dismiss all of Plaintiff's claims as barred or preempted by Section 230 of the Communications Decency Act ("Section 230"). While MindGeek acknowledge that this Court previously declined to dismiss claims against the defendants on Section 230 grounds in *Doe v. MindGeek USA, Inc.*, 558 F. Supp. 3d 828, 835 (C.D. Cal. 2021) ("*Doe I*"), *reconsideration denied*, 2021 WL 5990195 (C.D. Cal. Dec. 2, 2021) ("*Doe II*," and together with *Doe I*, "*Doe*"), the facts of this case are distinguishable from *Doe* and more in line with other cases within the Ninth Circuit and elsewhere that have granted dismissal under analogous circumstances.

Plaintiff's claims also fail on the merits. Plaintiff's primary argument is that MindGeek should be held liable under 18 U.S.C. §§ 1591 & 1595 of the Trafficking Victims Protection Reauthorization Act ("TVPRA"). But the FAC does not allege any activity that supports the assertion that MindGeek had a direct role in Plaintiff's alleged commercial sex trafficking. Plaintiff's secondary trafficking claim is also flawed. Among other deficiencies, Plaintiff does not plead that when she made the first video of herself at her then-boyfriend's request, either of them had any commercial intent, as required to support a TVPRA claim. Plaintiff also does not plead facts showing that MindGeek participated in any sex trafficking venture involving that video or the others Plaintiff made for purposes of selling them. And the FAC does not allege that MindGeek knew (or should have known) of her specific trafficking, all of which the TVPRA requires. Plaintiff's TVPRA conspiracy count also fails to state a claim because, among other defects, it is entirely derivative of her other trafficking claims and thus fails for the same reasons.

Plaintiff's RICO claims are also barred by Section 230 immunity, but even if they were not, they would still all fail as a matter of law for at least five reasons. First, they are time barred. Second, Plaintiff has not alleged RICO injuries to business or

**MOTION TO DISMISS**

property, as required for RICO standing.  Third, Plaintiff has not adequately alleged a RICO enterprise as is required to bring suit under the RICO statute.  Fourth, Plaintiff has not adequately pleaded RICO predicate acts or the required direct causal relationship between the alleged predicate acts and Plaintiff's purported injuries.  And fifth, Plaintiff fails to plead a RICO conspiracy.  Accordingly, Plaintiff's RICO claims should be dismissed as a matter of law.

Plaintiff has brought a number of additional claims, mostly sounding in state law theories.  These claims are all barred by Section 230.  *See Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 928-32 (N.D. Cal. 2021).  As set forth *infra* Part V, most fail to state claims for additional reasons as well.  And she also has failed to establish personal jurisdiction over MindGeek S.à.r.l. (a foreign holding company) and MG Premium (a foreign company with no connection to any of the events that Plaintiff complains about).

## BACKGROUND

Pornhub is an adult interactive video site.  *See* FAC ¶ 64.  Its interface is similar to YouTube's; their main feature is a library of videos uploaded by third-party users.  *Id.* ¶¶ 60-64.  Those who wish to upload videos must register and agree to be bound by Pornhub's Terms of Service, *id.* ¶ 106, which expressly prohibit "post[ing] any Content that depicts any person under 18 years of age … whether real or simulated" or "post[ing] any Content depicting … non-consensual sexual activity."[3]  Freesites also retains full-time moderators to screen for CSAM and other inappropriate content.  FAC ¶¶ 186-87.

---

[3] *See* Pornhub.com Terms of Service (Decl. of Benjamin M. Sadun in Support of Mot. to Dismiss the Compl. with Prejudice ("Sadun Decl.") Ex. A); *see also* FAC ¶ 107 (noting that the terms of service prohibit posting "content depicting racism, hate, incest, and children").  The FAC references the Terms of Service, FAC ¶¶ 103, 106-07, and the Court may consider documents referenced in the complaint on a motion to dismiss.  *See, e.g.*, *Evans v. Alliance Funding*, 2010 WL 11482495, at *5 (C.D. Cal. Dec. 13, 2010).

Plaintiff alleges that when she was 13 years old she made a sexually explicit video for her high school–aged boyfriend. *Id.* ¶ 258. She further alleges that her boyfriend "intended to post [the video] to Pornhub and disseminate it thereby to the school community," though she does not specify that he actually uploaded the video himself. *Id.* Plaintiff eventually learned that the video had been posted to Pornhub and contacted Freesites, requesting that it remove the video, which it did. *Id.* Plaintiff further alleges that the video was subsequently reuploaded by other users but concedes that Freesites removed the video each time it was detected. *Id.* ¶¶ 262-63. Years later, when she was 16 years old, Plaintiff made additional videos and sold them on craigslist and the Kik app to make money. *Id.* ¶ 267. Plaintiff does not allege the videos were made with the intention that they be uploaded to any website operated by MindGeek. *See id.* ¶ 268. Nor does she plead that MindGeek played a role in the creation of any of the videos. Some of them were ultimately posted to Pornhub, but the FAC does not say who posted them or why.

The FAC is 169 pages long and contains 534 paragraphs, but only 15 paragraphs discuss Plaintiff herself. FAC ¶¶ 258-272. Instead, the FAC dedicates dozens of paragraphs to inflammatory allegations about MindGeek's purported business practices, without ever tying those purported practices to what happened to Plaintiff or her alleged injuries. *Id.* ¶¶ 47-257; 273-356. While MindGeek strongly disputes that these allegations are accurate, they are irrelevant to this motion because they have nothing to do with the posting of the videos of Plaintiff.

## LEGAL STANDARD

MindGeek moves to dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). A complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Only specific factual allegations are accepted as true, not legal assertions, "[t]hreadbare recitals of the elements," or "conclusory

statements." *Id.*  And "a lack of differentiation in the allegations against multiple defendants is cause for dismissal pursuant to Rule 8." *Roberts v. Cnty. of Riverside*, 2020 WL 3965027, at *3 (C.D. Cal. June 5, 2020).  In addition, allegations of fraud, including mail and wire fraud, must be pleaded with particularity under Rule 9(b).  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400-01 (9th Cir. 1986).

Rule 12(b)(2) limits a court's "exercise [of] personal jurisdiction over a nonresident defendant" to circumstances in which "asserting jurisdiction does not offend the principles of Fifth Amendment due process." *Life Bliss Found. v. Sun TV Network Ltd.*, 2014 WL 12589657, at *4 (C.D. Cal. Sept. 17, 2014) (citation omitted). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *Delphix Corp. v. Embarcadero Techs., Inc.*, 749 F. App'x 502, 504 (9th Cir. 2018).  This standard "is not toothless" and a plaintiff "cannot simply rest on the bare allegations of its complaint." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020), *cert. denied*, 142 S. Ct. 76 (2021).  Where defendants proffer evidence contradicting the pleadings, as MindGeek does here, the typical presumption flips and "disputed allegations in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction." *Id.*; *see also Smartstop Self Storage Operating P'ship L.P. v. Can-Dev, ULC*, 2015 WL 13322430, at *2 (C.D. Cal. Oct. 26, 2015) (Carney, J.) ("[T]he district court 'may not assume the truth of allegations in a pleading which are contradicted by affidavit.'") (citation omitted).

## ARGUMENT

### I.    Plaintiff Engages in Improper Group Pleading.

Plaintiff has sued six separate MindGeek entities, but the FAC does not distinguish between them or explain how Plaintiff believes each entity harmed her. Instead, she glosses over this issue by claiming, without any facts, that "the MindGeek organization operates as a single business entity" and that MindGeek's "entire

structure is a sham and the alter ego of the individual defendants." FAC ¶¶ 31-32. Plaintiff is wrong, as discussed below. *See infra* Part VI.C.  But regardless, group pleading that fails to distinguish among the defendants does not suffice to show that certain defendants are properly joined. *Roberts*, 2020 WL 3965027, at *2.  "Under the pleading standard of either Rule 8 or Rule 9 [to the extent applicable], Plaintiff[] must distinguish Defendants' particular roles in the alleged causes of action." *Yost v. Nationstar Mortg., LLC*, 2013 WL 4828590, at *3 (E.D. Cal. Sept. 9, 2013). Therefore, mere "[l]abels, conclusions, and 'a formulaic recitation of the elements of a cause of action will not do.'" *North Atl. Imports, LLC v. NexGrill Indus., Inc.*, 2020 WL 1042209, at *1 (C.D. Cal. Jan. 23, 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Earlier this year in *Doe v. WebGroup Czech Republic, A.s.*, the court dismissed claims against two domestic affiliates of a foreign adult website company because the "entities [were] only mentioned in passing a handful of times throughout the sixty-page Complaint" and in ways that did not "relate[] to any of the claims in the lawsuit." 2022 WL 982248, *7 (C.D. Cal. Jan. 13, 2022).  To establish claims against each Defendant, Plaintiff must plead that those entities have taken actions that render the claims against them plausible.  She has not done so, and Plaintiff has not pleaded any action taken by any of these companies relevant to her claims.  Because the FAC fails to set forth what actions were allegedly taken by which Defendant, the case does not even comply with Rule 8.  *Id.* at *7; *Roberts*, 2020 WL 3965027, at *2.

## II.    Section 230 Bars All of Plaintiff's State and Federal Claims.

This Court is familiar with Section 230, which bars claims against "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat … as a publisher or speaker (3) of information provided by another information content provider." *Gonzalez*, 2 F.4th at 891.  MindGeek recognizes that the Court recently declined to apply Section 230 in *Doe*, another case involving content on Pornhub.  In particular, *Doe* found the allegations there satisfied the narrow "material

contribution" exception to Section 230 by pleading that certain site features encouraged the perpetrator to post CSAM and facilitated his doing so. *Doe II*, 2021 WL 5990195, at *6. A court in the Northern District of Alabama, relying heavily on *Doe*, also took the same approach in another case involving videos posted by users enrolled in Pornhub's ModelHub and Content Partner programs. *Doe #1 v. MG Freesites, LTD*, 2022 WL 407147 (N.D. Ala. Feb. 9, 2022).

MindGeek respectfully disagrees with those decisions because the alleged site features are content-neutral and do not direct users to upload illegal content. But even under the Court's approach in *Doe*, Plaintiff's claims here still fail to plead around Section 230 because her allegations do not show this purported general encouragement played any role in the creation of the videos depicting her. Indeed, the FAC specifically pleads that Plaintiff created all but one of the videos for sale and distribution on two platforms unaffiliated with MindGeek. FAC ¶ 267. And the sole video allegedly posted directly to Pornhub was made by Plaintiff at the request of a "high school boyfriend," not MindGeek. *Id.* ¶ 258.

## A.    MindGeek Provides an Interactive Computer Service.

An "interactive computer service" is "any information service, system, or access software provider that provides or enables … access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). This definition includes video sharing websites like Pornhub. *E.g.*, *Gonzalez*, 2 F.4th at 891 (YouTube); *Doe I*, 558 F. Supp. at 835. Plaintiff does not allege otherwise.

## B.    Plaintiff Seeks to Treat MindGeek as a Publisher or Speaker.

Parsing through Plaintiff's largely irrelevant rhetoric, the gravamen of all her claims is that she was harmed by the "dissemination and proliferation" of her videos on the internet. FAC ¶ 271. She claims MindGeek is liable because it allowed third-party users to post and view that content and did not adequately filter it out. *E.g.*, *id.* ¶¶ 60-64, 107, 259. This satisfies the second element of Section 230 immunity— seeking to treat the defendant as a publisher. As the Ninth Circuit has explained,

**MOTION TO DISMISS**

1    "publication involves reviewing, editing, and deciding whether to publish or to
2    withdraw from publication third-party content," regardless of how the Plaintiff styles
3    the cause of action. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-03 (9th Cir. 2009).
4    Here, no matter how styled, Plaintiff's claims are all based on allegations about
5    MindGeek's decisions "whether to publish or to withdraw from publication third-
6    party content." *Id.* at 1102. Neither *Doe* nor *MG Freesites* held to the contrary.

7               **C.     MindGeek Did Not Create Any of the Offending Content.**

8         The Plaintiff-specific portion of the FAC demonstrates that persons with no
9    relationship to MindGeek created and uploaded all of the content depicting Plaintiff.
10   The first video was made by Plaintiff at the request of her "high school boyfriend."
11   FAC ¶ 258. The FAC does not allege who uploaded the video initially, *id.*, or who
12   later reuploaded it after downloading it from the internet. Plaintiff also made
13   "sexually explicit videos of herself" to be sold on "Craigslist and the Kik app" to
14   make money. *Id.* ¶ 267. The FAC does not specify who uploaded these videos to
15   Pornhub. *See id.* ¶¶ 267-69.

16        As this Court previously observed, Section 230 does not apply where the ICS
17   "contributes materially to the alleged illegality of the conduct." *Doe I*, 558 F. Supp.
18   3d at 841 (emphasis omitted) (citing *Fair Housing Council v. Roommates.com*, 521
19   F.3d 1157, 1168 (9th Cir. 2008)). But this exception is narrow. First, the ICS must
20   make a "material contribution" to the "***creation or development***" of the content itself.
21   *Gonzalez*, 2 F.4th at 892 (citation omitted) (emphasis added). This analysis "focuses
22   solely on who created the content at issue." *Ginsberg v. Google Inc.*, 2022 WL
23   504166, at *5 (N.D. Cal. Feb. 18, 2022). Second, the material contribution must be
24   to "the specific content at issue." *Dyroff*, 934 F.3d at 1097; *see also Carafano v.*
25   *Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) (similar).

26        This means that Plaintiff cannot circumvent Section 230 by merely alleging
27   that MindGeek contributes to some of the illegal content on Pornhub; she must show
28   that MindGeek was directly involved in the creation of ***her*** videos. The facts alleged

in the FAC establish that the opposite is true.  "An internet service provider can have § 230 immunity for some claims or activities and not others."  *M.L. v. Craigslist, Inc.*, 2022 WL 1210830, at *13 n.13 (W.D. Wash. Apr. 25, 2002); *see also Roommates*, 521 F.3d at 1172-75 (finding no immunity for content defendant required users to provide but upholding immunity for content in "blank text box").  This case, on the allegations, is factually very different from *Doe*.  There, the videos at issue were created by the plaintiff's ex-boyfriend, who had allegedly uploaded hundreds of pornographic videos to MindGeek's platforms in the past.  *Doe I*, 558 F. Supp. 3d at 833-34.  On those facts, the Court found, construing all allegations in the light most favorable to the plaintiff, that it was sufficiently plausible to infer that the alleged general encouragement of CSAM on Pornhub influenced the ex-boyfriend as well.  *Id.* at 842 n.6.  MindGeek disputes that such an inference is plausible, but even that much is not alleged here.

In this case, Plaintiff made the videos of herself.  FAC ¶¶ 258, 267.  As to the first video, while she now claims that her boyfriend allegedly "intended to post it to Pornhub," *id.*  ¶ 258, the video's *creator* (Plaintiff) had no such intent.  *Id.* (alleging the video was "uploaded to Pornhub without her knowledge or consent").  Indeed, there is no indication that Plaintiff had any connection to MindGeek at all.  At most, the FAC alleges that if anyone else "materially contributed" to Plaintiff's creation of the video, it was her boyfriend when he asked her to make it for him, not MindGeek. Moreover, unlike in *Doe*, the FAC says that the boyfriend's motive in posting the video to Pornhub was to "disseminate it thereby to the school community."  *Id.*  Thus, it is clear from the face of the FAC that his actions were driven by personal motives, not MindGeek's supposed "call … for child pornography."  *Doe I*, 558 F. Supp. 3d at 842.

The allegations regarding the subsequent videos are even weaker because they were specifically made by Plaintiff in order to sell them on craigslist and Kik, two platforms completely unrelated to MindGeek.  FAC ¶ 267.  Here, too, her then-

boyfriend—not MindGeek—requested that Plaintiff make the videos in order to sell them.  The FAC is deliberately vague as to who actually uploaded these videos to Pornhub or how much time elapsed and how many people they passed through between their creation and their posting, *id.* ¶ 269, but the FAC comes nowhere close to alleging that the videos were created *in response to* any action by MindGeek.  To the contrary, Plaintiff affirmatively pleads they were made for the purpose of selling them on websites other than Pornhub.  *Id.* ¶ 267.

Unable to allege any facts suggesting that MindGeek contributed materially to the creation of the challenged videos, the FAC instead alleges that "MindGeek personnel … tagged, categorized, optimized the video [sic], and incorporated it into its algorithmic playlists and suggestions; uploaded the video to its other tubesites; and associated the video with advertisements." *Id.* ¶ 268.  According to Plaintiff, this rendered all videos on Freesites' video-hosting sites "user generated in a fictional sense only." *Id.* ¶ 128.  That is not the law.  The Ninth Circuit has consistently held that an ICS retains full Section 230 immunity even where it amplifies, edits, recommends, or profits from content that is ultimately determined to be illegal.  *E.g.*, *Gonzalez*, 2 F.4th at 892-93; *Dyroff*, 934 F.3d at 1098; *Kimzey*, 836 F.3d at 1269.  Allegations like Plaintiff's that MindGeek tagged and distributed her content, like her other allegations, do not satisfy the "material contribution" test even under *Doe*.

In sum, MindGeek did not materially contribute to the creation of any of the videos at issue in this case.  Plaintiff made them herself, initially at the request of her then-boyfriend and later at the request of a subsequent boyfriend.  Under these circumstances, MindGeek is not the "creator" of the videos at issue; Section 230 applies to bar this lawsuit.

## III.   MindGeek Did Not Violate the TVPRA.

Plaintiff alleges that MindGeek engaged in sex trafficking and conspiracy as prohibited by 18 U.S.C. §§ 1591 and 1594(c), and that she also has a civil claim under § 1595.  The TVPRA applies to (1) primary violators who directly engage in

commercial sex trafficking; and (2) secondary participants who "knowingly ... benefit[], financially or by receiving anything of value, from participation in a venture" with a primary violator.  18 U.S.C. § 1591(a).  As relevant here, commercial sex trafficking consists of (1) "recruit[ing], entic[ing], harbor[ing], transport[ing], provid[ing], obtain[ing], advertis[ing], maintain[ing], patroniz[ing], or solicit[ing] by any means a person," (2) while actually knowing or recklessly disregarding the fact that (3) "the person has not attained the age of 18 years and will be caused to engage in a commercial sex act."  *Id.*  18 U.S.C. § 1595 provides a civil remedy for victims of such trafficking against perpetrators (i.e., direct traffickers) or those who "knowingly benefit[]" from participating in a venture that they "knew or should have known" would traffic the Plaintiff for commercial sex (i.e., indirect or secondary participants).  Plaintiff claims that MindGeek is liable as both a direct trafficker and a secondary participant.  FAC ¶¶ 357-76.  But she fails to state a claim under either provision (or under § 1594).  Thus, for the same reason, her claims do not fall within the exception to Section 230 created by 47 U.S.C. § 230(e)(5)(A) ("FOSTA").[4]

## A.    The Facts Alleged Establish that Plaintiff's Direct Trafficking Claims Fail as a Matter of Law.

To support her claim of direct trafficking, Plaintiff must plead facts that, if proven, establish that MindGeek directly solicited her for commercial sex.  18 U.S.C. § 1591(a).  Although Plaintiff parrots the language of the statute, her actual allegations negate any finding of direct trafficking.  At most, the FAC alleges that MindGeek hosted and disseminated videos of sex acts that had already occurred and that had been solicited by other people.  FAC ¶ 258-59; 267-68.  In fact, Plaintiff admittedly

---

[4] Most courts have held that FOSTA "withdraws [Section 230] immunity only for claims asserting that the defendant's own conduct amounts to a violation of [S]ection 1591," the TVPRA's criminal provision.  *E.g., J. B. v. G6 Hosp., LLC* (*J.B. II*), 2021 WL 4079207, at *4 (N.D. Cal. Sept. 8, 2021).  But even under this Court's broader reading of FOSTA in *Doe I*, Plaintiff must plead facts showing that she is a victim of commercial sex trafficking, as defined by 18 U.S.C. § 1591, and satisfy the elements of 18 U.S.C. § 1595(a) with respect to MindGeek.  558 F. Supp. 3d at 836.

had no contact with MindGeek outside of her takedown requests as to the first video. FAC ¶ 261.[5]

Likewise, Plaintiff's allegation that MindGeek trafficked her by "recruiting, commissioning, paying for, buying, and aggressively soliciting content," FAC ¶ 361(a), does not constitute direct trafficking.  Section 1591(a)(1) prohibits the soliciting of "a person," not a video or an image. *Twitter*, 555 F. Supp. 3d at 915; *see also G.G. v. Salesforce.com, Inc.*, 2022 WL 1541408, at *10 (N.D. Ill. May 16, 2022) (plaintiff cannot state a direct liability claim against an ICS where the complaint alleges it was a third party who solicited her).  Thus, the *Twitter* court, which permitted a TVPRA secondary participant claim to advance, dismissed the direct liability claim identical to Plaintiff's that the ICS had itself trafficked the plaintiffs by soliciting and posting content.  Here, because Plaintiff has not alleged and cannot allege facts showing that MindGeek solicited her for sex, she has "not state[d] a claim for direct sex trafficking under Section 1591(a)(1)." *Twitter*, 555 F. Supp. 3d at 915.

## B. Plaintiff's Production of a Private Video for Her High School Boyfriend Was Not a Commercial Sex Act.

The TVPRA applies only to claims of commercial sex trafficking.  Not all sex acts involving minors are commercial trafficking, as Congress has defined it.[6]  A commercial sex act is one "on account of which anything of value is given to or received by any person."  18 U.S.C. § 1591(e)(3).  The Ninth Circuit has interpreted this to mean "money is exchanged for sex acts." *United States v. Clark*, 435 F.3d 1100, 1115 (9th Cir. 2006)  It is not enough that someone profit indirectly from a sex

---

[5] The (completely false) allegations that MindGeek "produce[d] CSAM and nonconsensual sexual content through MindGeek owned production companies," FAC ¶ 361(b), are irrelevant because they do not plead MindGeek produced the specific content depicting Plaintiff.

[6] For purposes of this motion, MindGeek is not arguing that the set of videos Plaintiff allegedly created for profit when she was sixteen years old, FAC ¶ 267, were not commercial in nature.

act; there must be a causal *quid pro quo* between the sex act and an exchange of value. *Corradino v. Liquidnet Holdings Inc.*, 2021 WL 2853362, at *3 (S.D.N.Y. July 8, 2021); *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013).[7]   Plaintiff's high school boyfriend allegedly "coerced" her to make a nude video and, unbeknownst to her, intended to share it with classmates via Pornhub.  FAC ¶ 258.  The FAC does not allege that he gave or offered her anything of value in exchange or that he intended to profit from the video.[8]

That the video later appeared on Pornhub does not change this analysis.  Even if MindGeek indirectly profited somehow from the video (which Plaintiff does not sufficiently allege), that cannot retroactively render the act depicted commercial because neither participant is alleged to have had such intent at the time the video was made.  *See, e.g.*, *United States v. Zitlalpopoca-Hernandez*, 495 F. App'x 833, 835 (9th Cir. 2012).  Nor can the act of uploading or hosting the content to Pornhub be considered a commercial sex act.  The Ninth Circuit has held that the term "sex act" in Section 1591 should be given its ordinary dictionary meaning of "an act performed with another for sexual gratification."  *United States v. Bazar*, 747 F. App'x 454, 456 (9th Cir. 2018).  Although *Doe I* cited *Twitter* for the proposition that the "posting of child pornography" to a website is "a commercial sex act," 558 F. Supp. 3d at 840 (citing *Twitter*, 555 F. Supp. 3d at 923 n.6), this approach is inconsistent with the plain

---

[7] A *quid pro quo* is required to make the sex act commercial.  This is distinct from the issue of whether the defendant's benefit must flow directly from participation in the venture addressed by cases like *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169-70 (S.D.N.Y. 2019), and *H.H. v. G6 Hospitality, LLC*.  2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019).

[8] Plaintiff's initial Complaint did not allege that the boyfriend uploaded the video to Pornhub or had intent to do so.  ECF No. 1 ¶ 262.  After Defendants pointed out that the TVPRA requires prospective intent, the FAC now adds a conclusory allegation as to intent but still does not say it was the boyfriend who uploaded the video, strongly suggesting it was done by someone further removed from Plaintiff.

meaning of the term "sex act" and the Ninth Circuit's definition in *Bazar*.  747 F. App'x at 456.

### C.    Plaintiff Does Not Allege Plausible Facts Showing that MindGeek Participated in a Sex Trafficking Venture.

The TVPRA does not extend to everyone who benefits financially from sex trafficking.  Rather, Plaintiff must at a minimum plead a "continuous business relationship" between "the sex traffickers who victimized Plaintiff" and MindGeek sufficient to constitute a "tacit agreement" to engage in sex trafficking.  *J. B. v. G6 Hosp., LLC* (*J.B. I*), 2020 WL 4901196, at *9, 10 (N.D. Cal. Aug. 20, 2020); *Doe I*, 558 F. Supp. 3d at 837.  The FAC does not do so.  The only connection between MindGeek and Plaintiff's alleged traffickers is that she made videos at their request that were eventually posted by unidentified persons to Pornhub.  This is insufficient to plead a tacit agreement.  *See J.B. I*, 2020 WL 4901196, at *9.

The Eleventh Circuit's recent opinion in *Doe v. Red Roof Inns, Inc.*, is instructive.  21 F.4th 714 (11th Cir. 2021).  There, the plaintiffs alleged that the defendants operated hotels where the plaintiffs were trafficked for prostitution; knowingly allowed the trafficking to take place; and benefitted from it by renting rooms to the traffickers.  *Id.* at 719-20.  The plaintiffs claimed that by doing so, the defendants had participated in "sex trafficking ventures" with the traffickers.  *Id.* at 726.  The Eleventh Circuit rejected this argument because, even though the allegations "may suggest that the franchisors financially benefitted from renting hotel rooms to the … sex traffickers," they did "nothing to show that the [defendants] participated in a common undertaking … that violated the TVPRA—*i.e.*, the alleged sex trafficking ventures."  *Id.* at 726-27.  In other words, there were no "plausible allegations that the[y] … took part in the common undertaking of sex trafficking."  *Id.* at 727.  Even if the defendants knew of and profited from the trafficking, "observing something is not the same as participating in it."  *Id.*

This distinction is especially important in the context of a publicly accessible

website, which can be accessed by millions of users.  As two courts in this District have held, an ICS "cannot be deemed to have participated in all ventures arising out of each post on its site." *J.B. I*, 2020 WL 4901196, at *10; *Doe v. Reddit, Inc.*, 2021 WL 5860904, *8 (C.D. Cal. Oct. 7, 2021).  "To conclude otherwise would mean that all web-based communications platforms have a legal duty to inspect every single user-generated message before it is communicated to a single person or displayed to the public, lest such platforms be deemed to have participated in the venture"—an absurd result unsupported by the text of the TVPRA.  *Reddit*, 2021 WL 5860904, at *8 (quoting *J.B. I*).  Indeed, this is the exact concern that led Congress to enact Section 230.  *Carafano*, 339 F.3d at 1124.

Plaintiff's theory of liability is the same as the that rejected in *J.B.*, *Reddit*, and *Red Roof Inns*.  She alleges that MindGeek allowed her videos to be posted, "categorized, tagged, [and] optimized for user preferences," and disseminated them through tubesites, "algorithmic playlists[,] and suggested videos," "consistent with its overall business model and practices…."  FAC ¶ 259; *see also* ¶ 268 (similar).  As in *Reddit*, however, allegations that an ICS "enable[ed] the posting of child pornography on its websites" and "ma[de] it easier to connect traffickers with those who want to view child pornography" are legally insufficient to constitute participation in the sex trafficking itself.  2021 WL 5860904, at *8.  And while Plaintiff repeatedly asserts that "MindGeek … is a sex trafficking venture," FAC ¶ 378; *see also id.* ¶¶ 2, 50, 84, 373, 379, 382, 386, like the plaintiffs in *Red Roof Inns* she alleges no specific acts MindGeek did to "t[ake] part in the common undertaking of sex trafficking" her.  *Red Roof Inns*, 21 F.4th at 727.[9]

_____

[9] Plaintiff attempts to avoid the fact that MindGeek did not participate in any ventures with the men who allegedly trafficked her by (falsely) claiming that MindGeek participated in other, completely unrelated, trafficking.  *E.g.*, FAC. ¶ 371(a)-(c), (m), (n).  But the TVPRA requires Plaintiff to plead MindGeek knowingly participated in a "sex trafficking venture involving *her*."  *Doe v. Kik Interactive*, 482 F. Supp. 3d

1    Plaintiff will no doubt cite to *Twitter* and *Doe*, which found that ICSs had
2 participated in ventures with users who posted CSAM. But those cases are factually
3 distinguishable. In *Twitter*, the court found it especially significant that the
4 perpetrator had a history of posting illegal content and had been repeatedly flagged
5 by users as posting "OBVIOUS CHILD PORN." 555 F. Supp. 3d at 922-23. Yet
6 Twitter refused to take action to ban him. *Id.* Most important, the court found that
7 there were sufficient allegations that *Twitter* had left the content up despite knowing
8 it was CSAM. This was shown by allegations that even after the plaintiffs repeatedly
9 complained to Twitter and sent copies of their driver's licenses proving they were
10 underage, Twitter responded that the videos did not "violat[e] our policies, so no
11 action will be taken at this time." *Id.* at 923. On these facts, the court concluded that
12 "these allegations are sufficient to allege an ongoing pattern of conduct amounting to
13 a tacit agreement with the perpetrators … to allow them to post videos and
14 photographs [Twitter] knew or should have known were related to sex trafficking
15 without blocking their accounts or the Videos." *Id.* Similarly, in *Doe*, the plaintiff
16 "allege[d] that her ex-boyfriend has posted more than 500 images and videos
17 victimizing young women to Defendants' platforms and other websites with
18 Defendants' approval." 558 F. Supp. 3d at 838.

19    The allegations here are not like those in *Twitter* or *Doe*. There is no alleged
20 relationship between Plaintiff's high school boyfriend and MindGeek. *See* FAC
21 ¶ 258. Although the FAC alleges that Plaintiff made repeated take-down requests as
22 to the first video, the requests allegedly related to uploads by "different users," not by
23 the same user uploading the video repeatedly. FAC ¶ 262. And unlike in *Twitter,* the

24 _____

25 1242, 1251 (S.D. Fla. 2020) (emphasis added); *accord J.B. I*, 2020 WL 4901196, at
*9, 10. These other incidents had nothing to do with Plaintiff. For example, the FAC
26 focuses on events that supposedly took place in Asia and Eastern Europe, FAC ¶¶ 77,
27 177-80, 371(c), but Plaintiff is from California. *Id.* ¶ 18. Thus, these alleged acts
involving completely different traffickers and victims cannot salvage Plaintiff's
28 defective claims.

video was taken down after Plaintiff requested removal.  FAC ¶ 261.  Similarly, Plaintiff does not allege anything about the relationship between MindGeek and the persons who purchased videos from Plaintiff and her second boyfriend and presumably uploaded them to Pornhub.  Although the FAC alleges—with no specifics—that Plaintiff's second boyfriend "regularly" posted videos to "MindGeek's tubesites," FAC ¶ 269, she does not allege that he was the one who posted any of the videos of her to Pornhub. *See id.* ¶ 268.  Rather, Plaintiff alleges that after the videos she created for sale were sold on craigslist and Kik, some unidentified person or persons—who may have been many steps removed from Plaintiff or her boyfriend—eventually uploaded them to Pornhub.  *Id.*  And with respect to those videos, Plaintiff does not allege that she or anyone else requested that they be removed, flagged them in any way as problematic, or raised concerns about the account(s) that uploaded them. *Id.* ¶¶ 261, 263.  Thus, Plaintiff has failed to allege MindGeek participated in a venture with her alleged traffickers under any standard.

### D.     Plaintiff Fails to Allege MindGeek Knew or Should Have Known of Her Alleged Trafficking When It Occurred.

To state a TVPRA claim, Plaintiff must allege that MindGeek "knew or should have known" of the alleged trafficking.  18 U.S.C. § 1595(a).  MindGeek must know about the specific "trafficking at issue," i.e., the trafficking involving Plaintiff.  *Doe I*, 558 F. Supp. 3d at 839; *Red Roof Inns*, 21 F.4th at 725 (requiring knowledge the venture "violated the TVPRA as to the plaintiff").

Importantly, the statute requires the offender to know prospectively that the minor "***will be***," "caused to engage in a commercial sex act."  18 U.S.C. § 1591(a)(2) (emphasis added); *accord Zitlalpopoca-Hernandez*, 495 F. App'x at 835; *Noble v. Weinstein*, 335 F. Supp. 3d 504, 518 (S.D.N.Y. 2018) (key inquiry is state of mind "at the initial recruitment or enticement stage").  In *Zitlalpopoca-Hernandez*, for example, the Ninth Circuit reversed the TVPRA conviction of a Mexican national who had violently coerced victims into prostitution in Mexico and later brought them

to the United States to work as prostitutes.  495 F. App'x at 835-36.  The court held that without evidence the defendant used coercive tactics after bringing the victims to the United States, there was no TVPRA violation because the defendant must "be[] aware of an established modus operandi that will in the future cause a person to engage in prostitution."   *Id.* at 835.  Awareness of only "acts of force, fraud, or coercion that took place before" the relevant period are insufficient.  *Id.*  Plaintiff's claims are flawed in the same way because she does not allege that MindGeek had any awareness of the alleged trafficking before or as it was occurring.

As discussed above, Plaintiff does not plead facts establishing that the first video she created depicted a commercial sex act.  By definition, therefore, Plaintiff cannot plead Defendants knew or should have known at the time of a commercial sex act that Plaintiff was being trafficked.

With regard to that video and those Plaintiff subsequently created for sale, there are simply no facts in the FAC to support an inference that MindGeek could have known, let alone actually knew, about Plaintiff's alleged trafficking before it occurred.  For example, Plaintiff does not allege that MindGeek had any contact with her boyfriends prior to the uploads.  As discussed above, although Plaintiff alleges that her second boyfriend "regularly uploaded such videos to MindGeek's tubesites," Plaintiff does not provide any information about what those videos were, when he posted them, or how MindGeek knew or should have known from such vague activity that her second boyfriend was engaged in sex trafficking her.  *See* FAC ¶ 269.  This critical distinction renders this case different from *Doe*, where the Court found that the plaintiff adequately alleged the defendants' "knowledge of the trafficking at issue" because they "were familiar with her ex-boyfriend, who posted hundreds of videos and images depicting other victims."  *Doe II*, 2021 WL 5990195, at *9.  Here, Plaintiff alleges no such familiarity with the alleged traffickers' ongoing activities.

Instead, the only knowledge Plaintiff alleges is that Defendants knew or should have known that her videos depicted CSAM because Defendants reviewed, tagged

and optimized Plaintiff's videos and that Defendants knew or should have known by doing so that the videos depicted CSAM.  FAC ¶¶ 259, 268.  However, at least as to the set of videos Plaintiff created for sale when she was 16, there are no well-pled facts in the FAC about those videos, titles, tags, or other characteristics to support an inference that MindGeek knew or should have known they depicted someone underage.  *See id.* ¶ 268.  And, in any event, this argument is a red herring because the TVPRA requires knowledge of *trafficking*, not merely of CSAM, which is covered by numerous other federal statutes.

Nor can Plaintiff circumvent this element by pleading that MindGeek was aware of other alleged sex traffickers who have used Pornhub, *id.* ¶¶ 193, 213-14, 220-25, 230, or that MindGeek is generally aware that users sometimes post illegal content to its websites.  *Id.* ¶ 373.  These allegations are insufficient because they do not relate to the "specific sex trafficking" that involved Plaintiff.  *Doe I*, 558 F. Supp. 3d at 836.  Awareness that "other sex trafficking incidents occurred on [the platform]" is insufficient.  *Kik Interactive*, 482 F. Supp. 3d at 1251.  For example, multiple courts have held that an "awareness of sex trafficking [at the hotel] in general" is insufficient because "knowledge or willful blindness of a general sex trafficking problem … does not satisfy the *mens rea* requirements of the TVPRA."  *S.J. v. Choice Hotels International, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020).  Thus, TVPRA claims like Plaintiff's that fail to "allege facts showing these Defendants knew or should have known of *her* trafficking" specifically must be dismissed.  *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *6 (N.D. Cal. July 30, 2020) (emphasis added).

In sum, just as Plaintiff fails to plead the other elements of a *prima facie* TVPRA claim, she fails to plead MindGeek had any knowledge of her alleged trafficking, let alone at the time it occurred as required by the TVPRA.

### E.    Plaintiff Fails to State a *Prima Facie* TVPRA Conspiracy Claim

Plaintiff's Count IV also asserts a claim under 18 U.S.C. § 1594(c), which addresses conspiracies to violate Section 1591.  As an initial matter, this claim is not

1  covered by the FOSTA exception to Section 230 because, at most, FOSTA only

2  carves out claims based on violations of 1591, not other provisions of the TVPRA.

3  *Doe II*, 2021 WL 5990195, at *8 (quoting *Twitter*, 555 F. Supp. 3d at 921).  But

4  regardless, as Plaintiff has failed to adequately plead a Section 1591 claim, *supra*

5  Parts III.B-D, or the existence of any conspiracy, *infra* Parts IV.E & V, this claim

6  must also be dismissed.

7  **IV.    Plaintiff's RICO Claims Should be Dismissed.**

8       Plaintiff alleges in Counts VII and VIII that Defendants violated 18 U.S.C.

9  §1962(c), and (d).[10]   In her new solo complaint, Plaintiff attempts to repair the

10  deficiencies highlighted in MindGeek's prior motion to dismiss by adding reams of

11  conclusory allegations that have nothing to do with her own claims and do not help

12  her RICO claims.  But "[c]ourts [should] strive to flush out frivolous RICO allegations

13  at an early stage of the litigation."  *Hall v. Fiat Chrysler Am. US LLC*, 550 F. Supp.

14  3d 847, 852 (C.D. Cal. 2021) (internal quotation marks and citation omitted).  This is

15  such a case.  Plaintiff's own allegations establish that her claims are time-barred.  In

16  addition, Plaintiff has not adequately alleged (i) a RICO injury to business or property,

17  (ii) a RICO associated-in-fact enterprise, (iii) cognizable predicate acts, or (iv) a

18  RICO conspiracy.

19       **A.    Plaintiff's RICO Claims Are Time-Barred.**

20       Plaintiff's RICO claims are time-barred under RICO's four-year statute of

21  limitations.  *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143,

22  156 (1987).  The limitations period began to run in 2014 "when the plaintiff kn[ew]

23  or should [have] know[n] that she has been injured."  *Grimmett v. Brown*, 75 F.3d

24  506, 512 (9th Cir. 1996).  This is true regardless of whether or not a plaintiff is aware

25  of the pattern of racketeering.  *Rotella v. Wood*, 528 U.S. 549, 555 (2000).  Plaintiff's

26  ────────────────

27  [10]  Section 1962(c) prohibits a person from conducting or participating in the conduct

28  of an enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c). Section 1962(d) prohibits a conspiracy to violate subsections (a)-(c).

RICO claims are not tolled by the fact that she was a minor at the time her videos were made and disseminated.  *See Booth v. United States*, 914 F.3d 1199, 1205 (9th Cir. 2019); *Sherman v. Trinity Teen Solutions, Inc.*, 2021 WL 7286595 (D. Wy. Nov. 30, 2021).[11]

Plaintiff's allegations demonstrate that her claims accrued substantially more than four years before she filed her first Complaint in this case in 2021.  In the FAC, Plaintiff alleges that, "[i]n 2014, eighth grader Serena Fleites learned that a nude, sexually explicit video her high school boyfriend had coerced her to make months earlier had been uploaded to Pornhub without her knowledge or consent."  FAC ¶ 258. The uploaded video "immediately went viral on Pornhub" and "[b]y the time Serena discovered the video"—i.e., in 2014—the video "had more than 400,000 views and had been widely disseminated throughout her school and neighborhood."  *Id.* at ¶ 260. Plaintiff "reached out to Pornhub directly, impersonating her mother," informing Pornhub that the video was child pornography and demanding the video be removed: "'this is child pornography, my daughter is a minor and only 13 years old.'"  *Id.* at ¶ 261.  "In response to the viral dissemination of the video, Serena was bullied and harassed….  The ongoing harassment sent Serena into a downward spiral." *Id.* ¶ 265. Thus, by Plaintiff's own allegations, her alleged injuries—the dissemination of her image on the internet and her emotional distress, etc.—were sustained at this time and known to Plaintiff.  Accordingly, under *Grimmett*, Plaintiff's RICO claim accrued in

---

[11]   In *Booth*, the Ninth Circuit held that federal courts allow "minority tolling for federal statutes of limitations only if the statute setting out the limitations period so specifies."  914 F.3d at 1205 (citing cases).  RICO's four-year statute of limitations is borrowed from the Clayton Act, which was "the model for civil RICO."  *Rotella*, 528 U.S. at 554.  The Clayton Act's four-year statute of limitations does not include a provision for minority tolling.  *See* 15 U.S.C. §15b.  Accordingly, because "[n]either RICO nor the Clayton Act include an express statutory provision tolling the limitations period for infancy," a RICO plaintiff is not entitled to tolling for minority, but is subject to the four-year statute.  *Sherman*, 2021 WL 7286595, at *8 (applying the principle enunciated in *Booth* to RICO).

2014 and is time-barred.  *See Kurtz v. Goodyear Tire & Rubber Co.*, 859 F. App'x 22, 24 (9th Cir. 2021) ("*Grimmett* made clear that the limitations period begins to run when a plaintiff knows or should know of the injury which is the basis" of her claim).

Moreover, Plaintiff's further allegations regarding a second set of videos do not extend the statute of limitations, affect the time-barring of her claim, or give rise to a second separate RICO claim.  Where, as here, a plaintiff's initial RICO injury is time-barred, further alleged subsequent RICO injuries can support the accrual of a new RICO claim only if they are caused by "new and independent act[s]" and show a "new and accumulating injury" to the plaintiff.  *Grimmett*, 75 F.3d at 513; *Kurtz*, 859 F. App'x at 24 (the RICO statute of limitations "does not 'run anew upon each predicate act forming part of the same pattern'" (quoting *Rotella*, 528 U.S. at 554)).  Here, Plaintiff's own allegations portray her participation in a second sexually explicit video as part of the events of 2014—the "downward spiral precipitated by the viral dissemination of her [first] nude video."  FAC ¶ 267.  In that "downward spiral," she was "introduced to heroin by an older male who she subsequently began to date, became addicted, and struggled with addiction for the next three years."  *Id.* "To fund their joint heroin habits, the older man manipulated Serena, who was still a minor at the time, into creating sexually explicit videos of herself, which were then sold on Craigslist and the Kik app."  *Id.*  Plaintiff alleges that "the long-term effects of Pornhub's wrongdoing continue to this day."  *Id.* at ¶ 270.  Plaintiff's allegations do not distinguish the emotional distress she alleges from the dissemination of the first video from further emotional distress, if any, from the dissemination of the second set of videos.  Nor does she allege "new and independent" separate injuries to her image or its commercial value.  *See id.* at ¶¶ 474, 465.  In short, even assuming *arguendo* that the alleged events regarding the second set of videos occurred within the four-year limitations period,[12] they do not extend the statute of limitations for Plaintiff's

---

[12] The FAC does not allege when the second set of videos was made and uploaded to

claimed injury from the first video.  And any claims based on the second videos are themselves time-barred because they do not set forth new and independent injuries.

**B.    Plaintiff Has Not Alleged Injury to Business or Property.**

"A civil RICO 'plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.'"  *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008) (citation omitted).  A RICO injury to property requires a "concrete financial loss."  *Id.*  Plaintiff's RICO claims fail as a matter of law because she has not alleged a cognizable RICO injury to business or property.

Plaintiff alleges that her "damages include, but are not limited, to costs incurred to remove nonconsensual, sexually explicit videos and photographs from MindGeek's websites, including attorney's fees, consulting fees, and other lost income; deprivation of employment opportunities; and loss of her image."  FAC ¶ 464.[13]  As shown below, none of these alleged damages constitutes a RICO injury to business or property.

**Harm to Plaintiff's Image/Commercial Value of Plaintiff's Image.**  Plaintiff's factual allegations, as relevant to herself and her own claims, focus overwhelmingly on her alleged emotional distress caused by the dissemination of her videos on the internet.  *See* FAC ¶ 270 ("Serena remains estranged from certain family members," has at times been "homeless and lived in her car," and "continues to suffer

---

Pornhub.  From the FAC's allegations, however, it appears that those events may have taken place outside the four-year limitations period as well.  Nevertheless, any factual issues as to the precise timing of the second set of videos are immaterial; they do not give rise to a second RICO claim because they are not separate and independent.

[13] *See also* FAC ¶ 474 (alleging damages in the form of "costs incurred to remove nonconsensual, sexually explicit videos and photographs from MindGeek's websites, including interference with her employment; loss of her image; and costs associated with retaining an investigatory firm to investigate whether any of her videos were still accessible on Pornhub or other pornographic sites and to facilitate takedown requests;" and damage to "the commercial value of [her] image").

1    from depression and anxiety"); *see also id.* at ¶ 265, 267.  Even if Plaintiff attempts

2    to connect them to the use of her image, such injuries are personal injuries, not injuries

3    to business or property.  *See Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir.

4    1990) (emotional distress and accompanying "pecuniary losses" are not compensable

5    under RICO); *Amy v. Curtis*, 2020 WL 5365979, at *5 (N.D. Cal. Sept. 8, 2020)

6    (injuries to a person's dignity, integrity emotional well-being, etc., resulting from

7    misuse of a person's photo or other image are personal injuries).

8         Even assuming *arguendo* that Plaintiff has a cognizable property interest in her

9    image and its "commercial value," Plaintiff has failed to support an injury to such a

10   property interest.  Plaintiff's allegations of such an injury are bereft of factual detail

11   and purely conclusory. *See* FAC ¶¶ 474, 567, 579, 589.  The absence of any Plaintiff-

12   specific factual detail renders such purported injuries impermissibly speculative.  *See*

13   *Thomas v. Baca*, 308 F. App'x 87, 88 (9th Cir. 2009) (for RICO standing, "[t]he injury

14   to business or property must be a 'concrete financial loss, and not mere injury to a

15   valuable intangible property interest.'" (citation omitted)); *see also Ainsworth v.*

16   *Owenby*, 326 F. Supp. 3d 1111, 1124-25 (D. Or. 2018) (plaintiff must allege "specific

17   prior attempts to monetize a property interest" or a plausible "present intent or desire

18   to do so" (citing *Oscar v. Univ. Students Co-op Ass'n*, 965 F.2d 783, 787 (9th Cir.

19   1992)).  Thus, even if Plaintiff's claimed "loss of her image" and damage to its

20   "commercial value" could be deemed an injury to property, that loss as alleged is not

21   a concrete financial loss and does not support a RICO claim.

22        Plaintiff's claim for injury to the commercial value of her image also fails for

23   the more fundamental reason that the images her claim is based on—and her financial

24   interest in them—are not property that the law recognizes.  Accordingly, as a matter

25   of law, they are not property that is protected or compensable under RICO. *See Doe*

26   *v. Roe*, 958 F.2d 763, 768 (7th Cir. 1992) (rejecting RICO plaintiff's claimed property

27   right in her "sexual labor"); *Sensoria, LLC v. Kaweske*, 548 F. Supp. 3d 1011, 1030

28   (D. Colo. 2021) ("RICO provides no redress for injury to a property interest that is

24                                              CASE NO. 2:21-cv-04920

**MOTION TO DISMISS**

1   contrary to public policy or the law." (citing *Doe v. Roe*).

2        Here, the only images Plaintiff claims an interest in are CSAM images.  *See*

3   FAC ¶ 258 (alleging that Plaintiff's boyfriend posted pictures of Plaintiff at age 13 to

4   Pornhub); *see also id.* at ¶¶ 267-68 (a boyfriend whom Plaintiff met while staying at

5   a friend's house "manipulated Serena, who was still a minor at the time, into creating

6   sexually explicit videos of herself, which were then sold on Craigslist and the Kik

7   App" and "once sold, some of the videos were uploaded to Pornhub without her

8   knowledge or consent").  These "CSAM videos," *id.* ¶270, are illegal to possess or

9   sell under federal and California law.  As with the sexual labor in which the plaintiff

10   in *Doe v. Roe* asserted a property interest, it is "impossible to believe" that "Congress

11   intended to thwart [the] criminal activity [targeted by RICO] by recognizing a civil

12   action to acquire a monetary recovery for the value of one's [CSAM]."  958 F.2d at

13   768.  Like the Seventh Circuit, this Court should refuse to "step off this precipice."

14   *Id.*

15        **Emotional Distress**.  Emotional distress and consequential damages are

16   personal injuries, not injuries to business or property.  *See Berg*, 915 F.2d at 464

17   (emotional distress and accompanying "pecuniary losses" are not compensable under

18   RICO).

19        **Harm to Reputation.**  "'Damage to reputation is generally considered personal

20   injury and thus is not an injury to "business or property" within the meaning of 18

21   U.S.C. § 1964(c).'"  *C & M Cafe v. Kinetic Farm, Inc.*, 2016 WL 6822071, at *8

22   (N.D. Cal. 2016) (citation omitted).  Thus, to the extent that Plaintiff alleges injury in

23   the form of harm to reputation, such injury cannot support her RICO claims.

24   Likewise, consequential expenses related to reputational damage (*e.g.*, expenses of

25   having videos removed from the internet, legal expenses, copyright fees, etc.) are also

26   personal expenses that are not compensable under RICO.  *See Thomas*, 308 F. App'x

27   at 88 (declining to recognize "the incurment of legal fees as an injury cognizable

28   under RICO").

**Employment Injuries.**  Plaintiff alleges that "[t]he dissemination and proliferation of [her] CSAM has interfered with her employment."  FAC ¶ 271; *see also id.* at ¶¶ 464, 474 (alleging "deprivation of employment" and "interference with employment").

California law recognizes a property interest in lost employment and employment opportunities only where the harms alleged "amount to intentional interference with contract and interference with prospective business relations." *See Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc).  Plaintiff has entirely failed to allege the required intentional interference with employment or the loss of a "concrete" employment opportunity.  *Savoy v. Collectors Universe, Inc.*, 2020 WL 4938464, at *4 (C.D. Cal. July 21, 2020) (requiring allegations of "a concrete injury").  The FAC provides no supporting factual allegations as to what employment Plaintiff sought or when, whether and when she was turned down in seeking employment or lost any employment, or any other concrete detail.  Her bare allegation of interference with her employment is not sufficient to support an injury to a property interest in employment.  *See Thomas*, 308 F. App'x at 88; *Keel v. Schwarzenegger*, 2009 WL 1444644, at *6 (C.D. Cal. May 19, 2009); *Baker v. Bratton*, 2008 WL 11409990, at *1 (C.D. Cal. Jan. 9, 2008); *Curry v. Baca*, 497 F. Supp. 2d 1128, 1135 (C.D. Cal. 2007).  Plaintiff's cursory allegation of interference with her employment shows, at most, further sequelae to Plaintiff's emotional distress—i.e., a consequential injury resulting from a personal injury.  *See Smithson v. Puckett*, 2020 WL 2857373, at *3 (W.D. Wash. May 6, 2020) (rejecting RICO claim for pain and suffering caused by "hostile work environment" and resulting "loss of wages"; stating:  *Diaz* "'d[id] not create RICO liability for every loss of wages resulting from a personal injury'"), *rpt. & rec. adopted*, 2020 WL 2850567 (W.D. Wash. June 2, 2020).

**Copyright Injuries.**  Although the FAC includes a plethora of allegations regarding purported acts of criminal copyright infringement, Plaintiff does not allege that she had obtained any copyrights.  In any event, any alleged injury in the form of

26

1    alleged infringement of copyright by the use of her images would be too speculative

2    to support the "concrete financial" injury required for a RICO claim.  *See Crayton v.*

3    *Hedgpeth*, 2011 WL 1988450, at *14 (E.D. Cal. May 20, 2011) (claim of "los[s of]

4    expected earnings … [from] copyright pending unpublished book" did not meet

5    requirement of "concrete financial loss").

6          **C.      Plaintiff Has Not Adequately Alleged a RICO Enterprise.**

7          In order to state a claim under section 1962(c), Plaintiff must allege an

8    "enterprise" within the meaning of section 1961(4).  Here, Plaintiff alleges a vast,

9    amorphous association-in-fact enterprise that includes MindGeek and its subsidiaries

10   and affiliates, including its supposed "network of sham shell entities," various

11   MindGeek officers, employees and investors, defendant Visa and a "network" of other

12   unidentified "corrupt credit card companies."  FAC ¶ 423.

13         Plaintiff's allegations do not support a RICO associated-in-fact enterprise.

14   Such an enterprise requires "three elements:" (1) "a common purpose of engaging in

15   a course of conduct"; (2) "an 'ongoing organization, formal or informal,'" and (3)

16   "evidence that the various associates function as a continuing unit," *Stitt v. Citibank,*

17   *N.A.*, 942 F. Supp. 2d 944, 955 (N.D. Cal. 2013) (citing *Odom v. Microsoft Corp.*,

18   486 F.3d 541, 552 (9th Cir. 2007)); *see also United States v. Turkette*, 452 U.S. 576,

19   583 (1981).  To adequately allege an associated-in-fact enterprise, Plaintiff is required

20   to allege how each of the purported members of the enterprise "associated together

21   for a common purpose," "what exactly each individual did, when they did it, [and]

22   how they functioned together as a continuing unit." *Doan v. Singh*, 617 F. App'x 684,

23   686 (9th Cir. 2015); *see also In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *6

24   (S.D. Cal. May 22, 2009) (RICO claim failed for lack of "specific allegations in

25   support of the common purpose").  As shown below, Plaintiff has failed to satisfy that

26   burden.  *See* Part IV.C.1 *infra*.

27         In addition, as shown below, Plaintiff has failed to meet her burden of plausibly

28   alleging an associated-in-fact enterprise that (1) consists of more than a corporation,

27

subsidiaries, and employees, executives and owners and (2) is "distinct" from the RICO persons and entities named as Defendants. Plaintiff attempts to overcome this fatal defect by alleging that Visa and other third parties were enterprise members. Because Plaintiff has failed to provide plausible support for their inclusion in the purported enterprise, her RICO claims fail as a matter of law. *See* Part IV.C.2 *infra*.

### 1. Plaintiff Does Not Adequately Allege That Purported Enterprise Members Associated Together for the Alleged "Common Purpose," Were an "Organization, Formal or Informal," or Functioned as a Continuing Unit.

A common purpose "is a purpose that ***all*** members of the [associated in fact] enterprise must have." *Chagby v. Target Corp.*, 2008 WL 5686105, at \*3 (C.D. Cal. Oct. 27, 2008) (emphasis added), *aff'd*, 358 F. App'x 805 (9th Cir. 2009). Moreover, the alleged associates must have "*associated together* with Defendants *for* that alleged common purpose." *Stitt*, 942 F. Supp. 2d at 958 (emphasis in original). Further, the common purpose must be "independent" from an enterprise member's "ordinary business activity," and the relationship between members must be more than a routine commercial relationship with a supplier or service provider. *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1056-57 (C.D. Cal. 2016); *see also Hall*, 550 F. Supp. 3d at 852; *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019). A common purpose need not be a fraudulent or criminal purpose. *See Ellis v. J.P. Morgan Chase & Co.*, 2015 WL 78190, at \*4-6 (N.D. Cal. Jan. 6, 2015), *aff'd*, 752 F. App'x 380 (9th Cir. 2018). However, where, as here, Plaintiff has alleged a common purpose that is fraudulent or criminal, her allegations must support that criminal common purpose. *Id.* at \*4.

In the FAC, Plaintiff alleges that the common purpose of the purported enterprise members "was to maximize profits for Enterprise members by maximizing the use of trafficked and nonconsensual content, including CSAM, and to do so while deceiving the public into believing that the content was lawful and consensual." FAC ¶ 424. Plaintiff does not allege facts that plausibly support the allegation that

1    supposed members of the enterprise associated together for this common purpose.

2         First, for many of the alleged enterprise members, no facts at all are alleged as

3    to this common purpose.  The FAC gives no specific factual details whatsoever as to

4    MindGeek's "subsidiaries," "affiliates," and "sham shell entities," all of which are

5    conclusorily labelled enterprise members.  FAC ¶ 423.  Plaintiff's vague allegations

6    as to these entities do not support that these entities acted with the alleged common

7    purpose.  *See*, *e.g.*, *Stitt*, 942 F. Supp. 2d at 957 (dismissing RICO claims where

8    "Plaintiffs repeatedly state[d] that subsidiaries, affiliated companies, and

9    intercompany divisions [were] members of the enterprise" but "fail[ed] to specifically

10   identify these members or to provide any factual allegations to detail their

11   involvement or make their involvement in the enterprise plausible").  Moreover,

12   Plaintiff alleges that the "vast majority" of the sham shell entities "existed solely as

13   *vehicles* through which to execute the Enterprise's rackets and scams."  FAC ¶ 423

14   (emphasis added).  These entities' alleged role as "vehicles" is incompatible with the

15   notion that these entities shared in, and associated with the enterprise for, the alleged

16   common purpose of "maximiz[ing] profits for Enterprise members by maximizing the

17   use of trafficked and nonconsensual content, including CSAM" and "deceiving the

18   public into believing that the content was lawful and consensual."  FAC ¶ 424.

19        Plaintiff's allegations are also inadequate to show that purported members of

20   the enterprise she specifically identifies associated together for the alleged common

21   purpose:

22        **Visa, Inc.**  As in her original complaint, Plaintiff has failed to plead that Visa

23   is a member of the alleged enterprise.  First, Plaintiff alleges that Visa "furthered the

24   common purpose of the Enterprise" by processing transactions from "accounts from

25   known trafficking regions and where payments from large numbers of purportedly

26   independent cam models were being deposited into a single account, in spite of its

27   knowledge about the nature of the content on MindGeek's tubesites."  FAC ¶ 432.

28   Plaintiff has failed to allege any facts that support an inference that these "cam

1   models" in these vaguely referenced transactions were minors or nonconsenting and

2   thus has not connected Visa or these transactions to the alleged "common purpose."

3          Plaintiff's allegations suggest only that Visa was engaged in conducting its own

4   affairs and processing credit transactions in the course of its business, not that it was

5   engaging in the affairs of the purported enterprise.  Plaintiff does not provide factual

6   allegations showing that Visa actually knew anything about such alleged transactions,

7   much less that Visa associated itself with the alleged enterprise or knew of its

8   existence or shared the goal of maximizing profits for the members of the enterprise.

9   The conclusory assertion that Visa handled payment processing transactions "*in spite*

10  *of its knowledge about the nature of the content on MindGeek's tubesites*," *id.*

11  (emphasis added), is insufficient to show that Visa became part of the enterprise for

12  the alleged common purpose of maximizing profits for enterprise members and doing

13  so by "maximizing the use of trafficked and nonconsensual content, including

14  CSAM." FAC ¶ 424.   As this Court has stated, "[c]ourts have overwhelmingly

15  rejected attempts to characterize routine commercial relationships—in which the

16  parties transact to provide services—as RICO enterprises." *See Hall*, 550 F. Supp. 3d

17  at 852.  Moreover, this principle applies even where, as here, a defendant knows of

18  and "is uniquely suited to stop" the alleged illegal conduct. FAC ¶ 14. Visa's alleged

19  "knowledge" of the "content" of MindGeek's "tubesites" and MindGeek's alleged

20  business practices does not support an inference that Visa even knew of the existence

21  of the alleged larger enterprise, much less joined it.  And even assuming *arguendo*

22  that, as Plaintiff alleges, Visa knew of illegal activity and failed to stop it, that would

23  not transform Visa into a member of the purported enterprise alleged by Plaintiff.  *Cf.*

24  *In re JUUL Labs, Inc. Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552,

25  594 (N.D. Cal. 2020) ("'simply performing services,'" or "failing to stop illegal

26  activity, is not sufficient" (quoting *Walter v. Drayson*, 538 F.3d 1244, 1248 (9th Cir.

27  2008)).

28          Plaintiff also attempts to rope Visa into the supposed enterprise with the

30

allegation that Visa "furthered the common purpose of the Enterprise by making at least two misrepresentations to the public." FAC ¶ 433. Nothing in Plaintiff's allegations supports her conclusory assertion that Visa's alleged public statements were made in order to "further" the purposes of the supposed enterprise. Rather, Plaintiff's own allegations establish that the alleged statements were made when Visa was "confronted" with questions and allegations regarding Visa's provision of credit card processing services to MindGeek and that Visa's alleged "public statements" addressed and defended its own business practices and reputation.[14] There can be no plausible inference from those statements that Visa had associated together with the purported enterprise for the alleged common purpose.

**Other Payment Processors.** Plaintiff has also now added to the purported enterprise a whole category of other, unidentified "corrupt payment processors of the MindGeek Enterprise." FAC ¶ 434. Plaintiff does not specify who these payment processors were or what they did. Plaintiff's allegation does not support their alleged membership in the purported enterprise or that they associated with the enterprise for the alleged common purpose.

**MindGeek Employees.** Plaintiff has also failed to provide allegations showing that individual MindGeek employees and executives associated with the purported larger enterprise as opposed to simply acting as employees or executives of MindGeek or its affiliated corporations. Indeed, although Plaintiff contends that the common purpose of the "enterprise" is "to maximize profits for Enterprise members," FAC ¶ 424, in fact Plaintiff makes plain that the purpose is to "maximize MindGeek's SEO [search engine optimization] and profits." FAC ¶ 426. That is, there is no larger associated-in-fact enterprise. *See infra* at Part IV.C.2. And to the extent Plaintiff

---

[14] Plaintiff alleges Visa "made a public statement misrepresenting that it categorically prohibited transactions involving child pornography and human trafficking, that it only permitted transactions for the purchase and sale of lawful products and services, and that it works with its coalition partners to identify potentially illegal merchants or illegal activities and bar them from the Visa Network." FAC ¶ 433.

31

1    makes the contradictory claim that MindGeek executives (the "Bro Club") are

2    "'bleeding' value out of the organization" (i.e., out of supposed enterprise member

3    MindGeek), FAC ¶ 426, it is plain that the supposed common purpose is not common.

4        Notably, Plaintiff does not distinguish among the employee defendants/alleged

5    enterprise members and specify their individual actions, but rather lumps them

6    together. *See*, *e.g.*, FAC ¶ 428. Such allegations are inadequate to show how each of

7    the purported members of the enterprise "associated together for a common purpose,"

8    "what exactly each individual did, when they did it, [and] how they functioned

9    together as a continuing unit." *Doan*, 617 F. App'x at 686; *see also In re Jamster*,

10   2009 WL 1456632, at *6 (RICO claim failed for lack of "specific allegations in

11   support of the common purpose"). Moreover, the very few specific allegations the

12   FAC includes describe actions taken by these defendants in their capacity as

13   employees. Plaintiff does not allege facts plausibly showing that the conduct

14   attributed to these employees and executives is part of, or in service to, the purported

15   larger enterprise and its common purpose—again revealing that there is no actual

16   larger associated-in-fact enterprise and that Plaintiff has simply tried to invent one.

17       **Defendant Bergmair.** The FAC identifies Mr. Bergmair as representing and

18   acting on behalf of the majority investors in MindGeek. FAC ¶¶ 4, 29, 96. Plaintiff's

19   allegation that Mr. Bergmair is part of the alleged associated-in-fact enterprise is

20   predicated on the conclusory allegation that he "had full awareness, after conducting

21   extensive due diligence, of the fraudulent international corporate structure through

22   which MindGeek conducted its illicit business." *Id.* ¶ 430. Such allegations do not

23   connect Mr. Bergmair to the alleged larger associated-in-fact enterprise, much less

24   give rise to an inference that he associated himself with other enterprise members for

25   the alleged common purpose. Plaintiff's allegations show only an investor taking

26   some part in a business in which he has invested. Mr. Bergmair's purported

27   knowledge of MindGeek's alleged "fraudulent international corporate structure" and

28   MindGeek's business is not a sufficient basis to conclude that he was a member of a

**MOTION TO DISMISS**

purported larger association.

**Unidentified Investors.**   The FAC also lists unidentified investors as defendants and members of the purported associated-in-fact enterprise. FAC ¶ 431. According to Plaintiff, these investors "furthered the Enterprise's common purpose by providing the critical financing used to facilitate the MindGeek Enterprise's illicit activities." *Id.*   Plaintiff alleges that these "shadowy international financiers" are the "ultimate puppet masters of the Enterprise" and "were fully aware of the legally dubious nature of the business they owned and ran and of the fraudulent international corporate structure through which MindGeek conducted its illicit business."  *Id.* These vague and conclusory allegations do not link these unidentified investors to the alleged larger associated-in-fact Enterprise or even show that they were aware that it (supposedly) existed.  In short, Plaintiff has not sufficiently pleaded an enterprise, which is a required element of her claims under sections 1962(c) and (d).

### 2.   Plaintiff Has Not Plausibly Pleaded a Distinct RICO Enterprise.

To establish liability under section 1962(c), an enterprise must be distinct from the RICO person or persons that a plaintiff seeks to hold liable under that subsection. *C & M Cafe*, 2016 WL 6822071, at *3.  Thus, a plaintiff "must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).  This requirement is not satisfied by allegations that the RICO "person" is a corporation and the RICO enterprise "consists of [that same corporation] plus all or some of its officers or employees" or a "parent corporation and its subsidiaries," particularly where (as here) they are alleged to "act[] within the scope of a single corporate structure."  *Yagman v. Kelly*, 2018 WL 2138461, at *14, 15 (C.D. Cal. Mar. 20, 2018).  This principle was recognized by the Ninth Circuit's decision in *United States v Mongol Nation*, 693 F. App'x 637 (9th Cir. 2017), which specifically recognized that where "the [entity] was the 'person' and the [entity] together with all its employees and agents, were the

1    'enterprise,'" there is no distinct enterprise.  *Id*. at 638.  The court distinguished that

2    situation from the situation where the RICO person is "a subset of the alleged

3    enterprise, which consist[ed] of legally distinct and separate persons in addition to the

4    Defendant."  *Id.*

5        Here, Plaintiff has sought to create distinctness by alleging that third parties

6    such as Visa, other "corrupt payment processors," investors, and others were

7    enterprise members.  FAC ¶¶ 431-34.  But, as shown above, Plaintiff's allegations are

8    not sufficient to place Visa in the enterprise—or for that matter any other persons or

9    entities separate from MindGeek.  Courts reject attempts to create distinctiveness

10   through unsupported allegations that third parties are part of an enterprise consisting

11   of related corporations and their employees.  Where, as here, a plaintiff has not

12   provided plausible factual allegations that would support including in the alleged

13   associated-in-fact enterprise persons or entities that are necessary to satisfy

14   distinctness, the Court should disregard those entities or persons in ruling on whether

15   an associated-in-fact enterprise has been properly pleaded.  For instance, in *JUUL*,

16   the court agreed that "the existence of a properly pleaded enterprise depend[ed] on"

17   two third parties, Veratad and Altria, which were unrelated to the principal defendant

18   JLI, "being part of it."  497 F. Supp. 3d at 601-03.  Because "[t]here [was] too little

19   to plausibly allege that Veratad and Altria specifically joined that distinct Enterprise,

20   as opposed to going into business with JLI to support the general business of JLI for

21   their mutual benefit," the plaintiffs "ha[d] not plausibly alleged the existence of a

22   distinct Enterprise."  *Id.* at 603.

23       Here, as shown above, Plaintiff has not alleged facts rendering it plausible that

24   Visa, Mr. Bergmair, unidentified investors, and various other non-MindGeek persons

25   referenced in the FAC associated together with MindGeek and its affiliates,

26   employees, and officers for any alleged common purpose.  Without those separate

27   non-MindGeek persons and entities, all that remains is an enterprise composed solely

28   of MindGeek entities, their employees, and executives.  Such an enterprise does not

constitute an associated-in-fact enterprise as a matter of law.

**D.     Plaintiff Fails to Allege Predicate Acts Connected to Her Injuries**.

Plaintiff has also failed to allege RICO predicate acts necessary to support a pattern of racketeering and to show that her alleged injuries were proximately caused by a predicate act. *See Canyon Cnty.*, 519 F.3d at 972.

**Section 1591**.  As shown above, Plaintiff has not alleged facts supporting predicate acts under § 1591. *See supra* Part III.

**Mail and Wire Fraud**.  Plaintiff fails to allege wire or mail fraud.  18 U.S.C. §§ 1341 and 1343 prohibit the use of the mails and wire in furtherance of a fraudulent scheme.  Mail and wire fraud must be pleaded with particularity under Rule 9(b), *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1400-01 (9th Cir. 1986), identifying specific uses of mail or wires with specific intent to deprive someone of money or property through deceit. *Monterey Plaza Hotel Ltd. P'ship v. Local 483*, 215 F.3d 923, 926 (9th Cir. 2000).  Plaintiff must also plead that reliance on these statements proximately caused her injuries. *See In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 915 (C.D. Cal. 2012).

Plaintiff vaguely alleges that MindGeek engaged in a scheme "to deceive the public, government, and its users" into believing MindGeek's tubesites are "legitimate internet media websites."  FAC ¶ 446.  But Plaintiff does not allege that the purported "scheme" was a "scheme[] to defraud" anyone of "money or property," as required under the statute. *See Kelly v. United States*, 140 S. Ct. 1565, 1571-72 (2020) (under the federal wire fraud statute making it "a crime to effect (with the use of the wires) 'any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,'" the "'money-or-property requirement of the latter phrase' also limits the former [phrase]") (quoting 18 U.S.C. § 1343).  Nor does Plaintiff allege, as she must, that this purported fraudulent scheme had any connection to her injuries. *Cf. Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010) ("HVB's

35                                          CASE NO. 2:21-cv-04920

1  fraudulent activity towards the United States did not cause Rezner's injury.").  And

2  Plaintiff does not allege that anyone relied on the allegedly "deceptive" conduct.  *In

3  re WellPoint*, 903 F. Supp. 2d at 915.

4       Additionally, Plaintiff alleges MindGeek used the mails and wires to pay and

5  communicate with sex traffickers, upload CSAM, and "push this content to all of its

6  partner sites," FAC ¶¶ 447-50, but does not plead these activities with Rule 9

7  particularity.  She does not identify any alleged communications with sex traffickers,

8  let alone any payments related to the videos of her.  *See JST Dist., LLC v. CNV.com,*

9  *Inc.*, 2018 WL 6113092, at *6 (C.D. Cal. Mar. 7, 2018).  Nor does she "inform each

10  defendant separately of the allegations surrounding [its] alleged participation in the

11  fraud."  *Sugarman v. Muddy Waters Cap. LLC*, 2020 WL 633596, at *4 (N.D. Cal.

12  Feb. 3, 2020) (citation omitted).

13       Although Plaintiff also identifies wire communications with MindGeek

14  customer service relating to takedown requests, FAC ¶ 451, none of those

15  communications had anything to do with Plaintiff or her videos.  Rather, they involved

16  unrelated parties whom this Court correctly severed from this case.  Moreover,

17  Plaintiff does not explain how MindGeek's responses to these requests furthered the

18  alleged scheme to appear "legitimate."  *See In re Managed Care Litig.*, 2009 WL

19  812257, at *8 (S.D. Fla. Mar. 26. 2009) ("[A plaintiff must] particularly describe the

20  scheme and how the communications, although facially innocent, furthered that

21  scheme."); *cf. United States v. Giraldi*, 864 F.2d 222, 226 (5th Cir. 1988) (wires must

22  be closely related to and actually further the scheme).  Thus, Plaintiff has not alleged

23  mail or wire fraud at all, let alone with the requisite particularity.

24       **18 U.S.C. § 1957**.  Plaintiff also alleges violations of 18 U.S.C. § 1957, which

25  prohibits "knowingly engag[ing] or attempt[ing] to engage in a monetary transaction

26  in criminally derived property of a value greater than $10,000 and … derived from

27  specified unlawful activity."  Plaintiff claims that Defendants transferred the proceeds

28  of alleged predicate acts to other corporate entities "to evade taxes and execute scams"

1  and to third parties "to receive, format, and upload sex trafficking content."  FAC

2  ¶¶ 456-57.  These allegations do not amount to "money laundering."

3      Plaintiff has not identified any of these purported transactions, let alone "who

4  conducted the transfer, how the money was moved, or how it was used in connection

5  with" these unidentified transactions.  *Tymoshenko v. Firtash*, 57 F. Supp. 3d 311,

6  323 (S.D.N.Y. 2014); *accord Samsung Elecs. Am., Inc. v. Chung*, 2017 WL 635031,

7  at *9 (N.D. Tex. Feb. 16, 2017); *Stewart v. Wachowski*, 2004 WL 2980783, at *4

8  (C.D. Cal. Sept. 28. 2004) (money laundering based on fraud must be pleaded with

9  particularity); *Bernstein v. Misk*, 948 F. Supp. 228, 236 n.2 (E.D.N.Y. 1997).[15]

10 Moreover, Plaintiff "nowhere alleges that [she was] injured in any way by the alleged

11 acts of money laundering." *Hourani v. Mirtchev*, 796 F.3d 1, 11 (D.C. Cir. 2015); *see

12 also City of Almaty v. Khrapunov*, 956 F.3d 1129, 1133-34 (9th Cir. 2020); *Empire

13 Merchants, LLC v. Reliable Churchill LLP*, 902 F.3d 132, 143-44 (2d Cir. 2018).

14 Indeed, Plaintiff does not allege that the (unidentified) transactions had any

15 connection to her or her videos.  *See, e.g.*, *Chi Pham v. Cap. Holdings, Inc.*, 2011 WL

16 3490297, at *4 (S.D. Cal. Aug. 9, 2011).

17     **Criminal Infringement of Copyright**.  Plaintiff also fails to allege a predicate

18 act of criminal copyright infringement (18 U.S.C. § 2319).  Plaintiff must allege "1)

19 which specific original works are the subject of the copyright claim, 2) that [she] owns

20 the copyrights in those works, 3) that the copyrights have been registered in

21 accordance with the statute, and 4) by what acts during what time the defendant

22 infringed the copyright." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992),

23 *aff'd*, 23 F.3d 398 (2d Cir. 1994); *see also Universal Surface Tech., Inc. v. Sae-A

24 Trading Am. Corp.*, 2011 WL 281020, at *6 (C.D. Cal. Jan. 26, 2011).  Moreover,

25

26 ───────────────

[15] Additionally, Plaintiff fails properly to plead a § 1957 predicate act as to the foreign

27 MindGeek Entities because, by failing to identify the relevant transactions, Plaintiff

28 necessarily fails to allege that those entities engaged in any money laundering transaction in the United States.  18 U.S.C. § 1957(d).

some courts in this District have held that only counterfeiting and piracy—not "garden-variety" infringement—constitute a violation of 18 U.S.C. § 2319.  *E.g.*, *Hunter v. Tarantino*, 2010 WL 11579019, at *9-10 (C.D. Cal. July 15, 2010); *accord Stewart v. Wachowski*, 2005 WL 6184235, at *4 (C.D. Cal. June 14, 2005).

Here, Plaintiff fails to identify any copyrighted work that was infringed by Defendants or any copyright owner whose rights allegedly were infringed.  Indeed, Plaintiff does not allege that she had a copyright on the videos about which she complains (or any other copyright).  Rather, Plaintiff provides only vague assertions that Defendants uploaded copyrighted materials and infringed copyrights.  FAC ¶¶ 114, 125, 211, 426, 451. And while Plaintiff alleges that "whistleblowers reported [MindGeek] personnel … 'ripping' content from DVDs" and "uploading that content to Pornhub and the other tubesites," *id.* ¶ 114, she pleads no facts suggesting these uploads were unauthorized.  Plaintiff does not allege that the DVDs were protected by copyright law or that Defendants lacked a license or other authorization, let alone had a specific intent to violate a copyright.  *See United States v. Liu*, 731 F.3d 982, 989-91 (9th Cir. 2013).  Nor does Plaintiff allege that these DVDs have anything to do with her or her purported injuries.

**Section 2252.**   As explained below, Plaintiff also has not alleged a violation of 18 U.S.C. § 2252(a)(2) with regard to the videos she created for sale.  *See* Part V, *infra*.

**E.      Plaintiff Fails to Allege a RICO Conspiracy.**

Because Plaintiff has "failed to state a claim under 18 U.S.C. § 1962(a)-(c), [her] conspiracy claim under § 1962(d) also necessarily fails." *Banks v. ACS Educ.*, 638 F. App'x 587, 589-90 (9th Cir. 2016); *accord I.T.C. Int'l, LLC v. Am. Voyage Corp.*, 2008 WL 11342745, at *3 (C.D. Cal. Sept. 26, 2008); *Ellis*, 2015 WL 78190, at *6 (dismissing 1962(d) claim for failure to allege "requisite substantive elements" of claim).  The Ninth Circuit has affirmed dismissal of a RICO conspiracy claim where (as here) the plaintiff had not sufficiently alleged a RICO enterprise, *Howard*

1   *v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); the required RICO injury,

2   *Henriks v. Moritz*, 304 F. App'x 491, 493 (9th Cir. 2008); and predicate acts and a

3   pattern of racketeering activity, *Turner v. Cook*, 362 F.3d 1219, 1231 n.17 (9th Cir.

4   2004).  To support a RICO conspiracy claim, Plaintiff must also allege that each

5   Defendant entered "an agreement that is a substantive violation of RICO" or "agreed

6   to commit, or participated in, a violation of two predicate offenses" and was "aware

7   of the essential nature and scope of the enterprise and intended to participate in it"

8   *Howard*, 208 F. 3d at 751. Plaintiff's failure here to allege intent and agreement and

9   the requisite substantive elements of their claims under § 1962(c) requires dismissal

10   of their RICO conspiracy claim under § 1962(d).

## V.    Plaintiff's Remaining Claims Fail for Additional Reasons

12   **Possession or Distribution of CSAM.**  The Court should dismiss Plaintiff's

13   claims under 18 U.S.C. §§ 2252, 2252A, and 2255 insofar as they concern the videos

14   Plaintiff created for sale, because Plaintiff has not pleaded as to them that MindGeek

15   "knowingly receive[d] or distribute[d] any child pornography."   18 U.S.C.

16   § 2252A(a)(2)(A).  The "mere receipt of child pornography" is not prohibited, but

17   rather "the *knowing* receipt of this illegal content" is.  *United States v. Dobbs*, 629

18   F.3d 1199, 1204 (10th Cir. 2011).  The defendant must actually know that the

19   performer is underage at the time of receipt or distribution.  *See United States v. X-*

20   *Citement Video, Inc.*, 513 U.S. 64, 78 (1994).  Although Plaintiff alleges MindGeek

21   was aware that the videos she created for sale depicted a minor from MindGeek's

22   review of the videos, their titles, and their tags, FAC ¶ 268, the FAC contains no well-

23   pled facts concerning the videos, titles or tags that would have made MindGeek aware

24   the videos contained child pornography.  Persons, like MindGeek, "who seek[] out

25   only adult pornography, but without [their] knowledge [are] sent a mix of adult and

26   child pornography" do not violate 18 U.S.C. § 2252A.  *United States v. Myers*, 355

27   F.3d 1040, 1042 (7th Cir. 2004).  Because Plaintiff has not alleged that MindGeek

28   knew the videos she created for sale contained CSAM prior to Plaintiff's takedown

request, FAC ¶ 261, Counts V and VI must be dismissed to the extent they rely on those videos.

**California Civil Conspiracy.** To state a claim for civil conspiracy under California law, Plaintiff "must allege the formation and operation of the conspiracy, the wrongful act or acts done pursuant to it, and the damage resulting from such acts. … [B]are legal conclusions, inferences, generalities, presumptions, and conclusions are insufficient." *State ex rel. Metz v. CCC Info. Servs., Inc.*, 149 Cal. App. 4th 402, 419 (Cal. Ct. App. 2007) (citations omitted); *accord Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 831 (N.D. Cal. 2018) (civil conspiracy claim subject to heightened pleading requirement). To plead formation, Plaintiff "must allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement." *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 836 (N.D. Cal. 2014) (citation omitted). Additionally, a conspiracy claim necessarily fails where the plaintiff does not adequately allege a viable and intentional underlying tort. *See Marshall v. United States,* 2016 WL 11756786, *7 (C.D. Cal. Jan. 4, 2016); *see also Martinez v. United States*, 812 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010).

Because Plaintiff's underlying claims fail, her conspiracy claims fail as well. Moreover, Plaintiff pleads conspiracy only in the most conclusory terms. *See, e.g.,* FAC ¶ 531. "There are no allegations concerning when or where such a conspiracy was conceived," or facts from which an agreement can be inferred. *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1288 (C.D. Cal. 2015). Nor does Plaintiff identify each Defendant's purported role in the alleged conspiracy. *See* FAC ¶¶ 531-33. Accordingly, her conspiracy claims must be dismissed.

**Intrusion upon Seclusion.** To state a claim for intrusion upon seclusion, Plaintiff must allege: "(1) intentional intrusion into a private place, conversation or matter . . . (2) in a manner highly offensive to a reasonable person." *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1147 (S.D. Cal. 2005). She has not done so. This claim "consists solely of an intentional interference with [plaintiff's] interest

in solitude or seclusion," not "publicity given to the person whose interest is invaded or to his affairs." RESTATEMENT (SECOND) OF TORTS § 652B cmt. a. There is no intrusion where a defendant asks a third party "questions …—even questions probing into highly personal matters relating to plaintiff—and [the third party] voluntarily had provided such information." *Taus v. Loftus*, 151 P.3d 1185, 1221 (Cal. 2007). Nor does republishing sexually explicit images obtained from an unrelated third party constitute an intrusion by the publisher. *Lee v. Penthouse Int'l, Ltd.*, 1997 WL 33384309, at *7 (C.D. Cal. Mar. 19, 1997).

Plaintiff alleges that after she created sexually explicit videos of herself, and after she shared them with or sold them to others, unidentified persons uploaded those videos to Pornhub. Under these circumstances, an intrusion claim will not lie. *See Lee*, 1997 WL 33384309, at *7. Accordingly, Plaintiff has not alleged any intrusion **by MindGeek**, let alone an intentional one. *See Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1063 (N.D. Cal. 2016).

**Common Law and Statutory Misappropriation.** To state a common law misappropriation claim, Plaintiff must allege: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Loc. TV, LLC v. Super. Ct.*, 3 Cal App. 5th 1, 7-8 (Ct. App. 2016). To allege misappropriation under California Civil Code § 3344, Plaintiff must also allege, among other elements, "'a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose.'" *Id.* at 13 (quoting *Orthopedic Sys., Inc. v. Schlein*, 202 Cal. App. 4th 529, 544 (Cal. Ct. App. 2011)); CAL. CIV. CODE § 3344(a).

Plaintiff has not alleged that MindGeek "used" her likeness—much less a "direct connection" between such use and a benefit received by MindGeek. The gist of the tort is the use of "the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." RESTATEMENT (SECOND)

OF TORTS § 652C cmt. c.  "Generally, a plaintiff's name is not appropriated by mere mention of it … [or] when a plaintiff's likeness is … published for purposes other than taking advantage of his reputation, prestige, or other value associated with him." *Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089, 1100 (E.D. Cal. 2009) (quotation marks and citation omitted).  "No one has the right to object merely because his name or his appearance is brought before the public."  RESTATEMENT (SECOND) OF TORTS § 652C cmt. d.  Thus, a defendant does not use a plaintiff's likeness by merely "display[ing] unrelated ads ... adjacent to the content that allegedly used [the plaintiff's] name and likeness ... created by third-party users."  *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 210 (Ct. App. 2017).  This is especially true where the value of the use is derived from general characteristics that are not unique to the plaintiff's individual identity.  *See Yeager*, 673 F. Supp. 2d at 1100.

Plaintiff alleges only that her images appeared in videos placed adjacent to ads—she does not allege that she appeared in the ads or was made to appear to endorse the products advertised.  *See Cross*, 14 Cal. App. 5th at 210.  Nor does she allege that MindGeek capitalized on her unique identity or that the ads were tailored in any way to do so.  Because Plaintiff fails to allege that MindGeek knowingly used her identity, as opposed to her images, for a commercial purpose, the Court should dismiss Plaintiff's common law and statutory misappropriation claims.

**False Light.**  Plaintiff alleges that "at least some users of [Pornhub] … may have … believe[d] that Plaintiff voluntarily appeared in the videos" posted by third parties, willingly engaged in pornography, and made money from posting videos.  FAC ¶ 491.  But in California, a false-light claim must meet the same requirements of a libel claim, including identifying published material that is false or misleading.  *Burnell v. Marin Humane Soc.*, 2015 WL 6746818, at *17 (N.D. Cal. Nov. 5, 2015).  Since Plaintiff alleges that she voluntarily created pornographic videos of herself and made some of them for purposes of sale, Plaintiff cannot be heard to claim the videos give any false or misleading impression about her.  *See Prince v. Out Publ'g, Inc.*,

2002 WL 7999, at *6-7 (Cal. Ct. App. Jan. 3, 2002) (holding that plaintiff failed to show that photograph could reasonably convey misleading statement about plaintiff); *see also Benefield v. Bryco Funding, Inc.*, 2014 WL 2604363, at *6 (N.D. Cal. June 10, 2014) (dismissing false light claim where the plaintiff did not identify any statements that were false). Accordingly, her false light claim must be dismissed.

**Disclosure of Private Facts.** To state a public-disclosure-of-private-facts claim, Plaintiff must allege: "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." *Moreno v. Hansford Sentinel, Inc.*, 172 Cal. App. 4th 1125, 1129-30 (Ct. App. 2009). Here, Plaintiff alleges that she made videos for sale on craigslist and Kik, and that after they were sold, unidentified persons posted them on Pornhub. Accordingly, she cannot maintain a claim against MindGeek based on those videos because they were already public when posted to Pornhub. *Id.* at 1130.

**California Civil Code § 1708.85.** Section 1708.85 creates a cause of action "against a person who intentionally distributes" private sexually explicit materials of another "without the other's consent," if "the person knew, or reasonably should have known, that the other person had a reasonable expectation that the material would remain private." CAL. CIV. CODE § 1708.85(a). The statute explicitly prohibits liability, however, where, as here, "[t]he distributed material was previously distributed by another person." *Id.* § 1708.85(c)(6). Plaintiff alleges that she gave the initial video she made to her high school aged boyfriend; he shared it with others; and someone posted it to Pornhub. FAC ¶¶ 258-59. Moreover, she also alleges that before her subsequent videos appeared on Pornhub, they were "sold on Craigslist and the Kik app." *Id.* ¶ 267. If Plaintiff has a claim against anyone under § 1708.85, it is against the individual who first distributed the video she gave to her ex-boyfriend— precisely the person this "revenge porn" statute was designed to target—or the people who distributed her videos after they were sold, not MindGeek. Accordingly, this claim must be dismissed.

**Negligence.**   Plaintiff's negligence claim should also be dismissed.   "The elements of a cause of action for negligence are commonly stated as (1) a legal duty to use due care; (2) a breach of that duty; (3) a reasonably close causal connection between that breach and the resulting injury; and (4) actual loss or damage."   *Ahern v. Dillenback*, 1 Cal. App. 4th 36, 42 (1991).   Plaintiff claims that "MindGeek had a duty to use ordinary care and to prevent injury to Plaintiff" but does not identify the source of that purported duty.   FAC ¶ 516.   To the contrary, ICSs do ***not*** "have a legal duty to inspect every single user-generated message before it is communicated to a single person or displayed to the public."   *Reddit*, 2021 WL 5860904, at *8; *see also Doe v. MySpace,* 474 F. Supp. 2d 843, 846, 852 (W.D. Tex. 2007) (holding that defendant had no legal duty "to institute reasonable safety measures on its website").   Indeed, this touches on the exact concern that led Congress to pass Section 230.   *See, e.g.*, *Carafano*, 339 F.3d at 1125.   The harm alleged by Plaintiff derives from MindGeek's alleged failure to prevent a third party from posting illegal content to its website, but MindGeek did not owe Plaintiff any legal duty of care to prevent third parties from acting unlawfully.   Accordingly, Plaintiff's negligence claim must be dismissed.

**California UCL and False Advertising.**   Plaintiff's California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL") claim should be dismissed because Plaintiff lacks standing to bring either.   Both the UCL and FAL provide private plaintiffs with a narrow action that "shall be prosecuted exclusively ... by a person who has suffered injury in fact ***and*** has lost money or property as a result of the unfair competition."   Cal. Bus. & Prof. Code § 17204 (emphasis added); Cal. Bus. & Prof. Code § 17535.   In other words, Plaintiff must allege that she has suffered "***economic injury***" "caused by[] the unfair business practice or false advertising that is the gravamen of the claim."   *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) (quoting *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 895 (Cal. 2011)).   Although Plaintiff makes the conclusory allegation

1   that she "lost money to which she is rightly entitled" and claims she has suffered
2   "financial" "costs for therapy" "time away from her work" and "hiring a company to
3   assist her with her efforts investigate [sic] the continued dissemination of her videos
4   on Pornhub," FAC ¶¶ 526-27, that allegation is insufficient because it fails to identify
5   any specific "lost money or property" *caused* by an unfair business practice or
6   reliance on a false advertisement. *Reddit*, 2021 WL 5860904 at \*9; *In re Outlaw Lab.*,
7   *LLP*, 463 F.Supp.3d 1068, 1086 (S.D. Cal. 2020) ("[T]o allege a claim under the FAL,
8   a plaintiff must show that the misrepresentation was an immediate cause of the injury-
9   producing conduct." (citation omitted)).  Where, as here, Plaintiff's allegations are
10  not enough to plausibly allege that she suffered the economic injury required for
11  standing, the claims should be dismissed.  *See, e.g., Holt v. Facebook, Inc.*, 240 F.
12  Supp. 3d 1021, 1036 (N.D. Cal. 2017).

## VI.   The Court Lacks Personal Jurisdiction Over MindGeek S.à.r.l. and MG Premium Ltd.

14          It is Plaintiff's burden to establish at least one of the "two types of personal
15  jurisdiction: general and specific" for every one of her claims.  *See Bristol-Myers*
16  *Squibb Co. v. Super. Ct.* (*BMS*), 137 S. Ct. 1773, 1776 (2017).  General jurisdiction
17  requires that Plaintiff demonstrate contacts for each Defendant that are so constant
18  and pervasive as to render it essentially "at home" in the forum.  *Id.* at 1780.  This is
19  generally limited to the state where the defendant is either headquartered or
20  incorporated.  *Id.* "[S]pecific jurisdiction is confined to adjudication of issues deriving
21  from, or connected with, the very controversy that establishes jurisdiction."  *Id.*
22  (citation omitted).  The "primary concern" in evaluating specific jurisdiction is "the
23  burden on the defendant."  *Id.*  Due process requires *a direct* connection between the
24  harm alleged and Defendants' contacts with the forum state.  "When there is no such
25  connection, specific jurisdiction is lacking regardless of the extent of a defendant's
26  unconnected activities in the State."  *Id.* at 1781; *see also Schwarzenegger v. Fred*
27  *Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) ("the claim must be one which
28

arises out of or relates to the defendant's forum-related activities" and "the exercise of jurisdiction must comport with fair play and substantial justice").

Plaintiff cannot demonstrate that her alleged harms arose out of any activity taken by MindGeek S.à.r.l. or MG Premium Ltd, let alone any California or even U.S.-related activities.  Accordingly, under *BMS* and for the reasons that follow, the Court lacks personal jurisdiction over MindGeek S.à.r.l. and MG Premium Ltd.

### A.   The Court Lacks Personal Jurisdiction over MindGeek S.à.r.l.

MindGeek S.à.r.l. is a foreign holding company without employees or operations anywhere, Declaration of Andreas Alkiviades Andreou ("Andreou Decl.") ¶ 14, let alone in California or the United States.  Since this holding company is not connected to the alleged wrongdoing in this case, the Court lacks jurisdiction over it.  MindGeek S.à.r.l. should accordingly be dismissed.  *See, e.g.*, *Sarafian v. Wright Med. Tech., Inc.*, 2016 WL 1305087, at *4 (C.D. Cal. Apr. 1, 2016) (finding court lacked personal jurisdiction over holding company where "other than being the parent and holding company of [the subsidiary], it does not appear that [the holding company] has *any* contacts with California") (emphasis in original); *Allergan, Inc. v. Merz Pharms., LLC*, 2011 WL 13323227, at *9 (C.D. Cal. Aug. 1, 2011) (granting dismissal for lack of personal jurisdiction where "Defendant simply operates as a holding company, and the subsidiaries' business operations are independent from and not controlled by Defendant").

### B.   The Court Lacks Personal Jurisdiction over MG Premium Ltd.

The Court also lacks personal jurisdiction over MG Premium—a Cypriot company with no offices in California or anywhere else in the United States.  Andreou Decl. ¶ 23, 25.  It does not own or operate the websites at issue in this case.  *Id.* ¶ 24.  Nor does it operate servers within the United States to store user generated content such as the videos at issue in this case.  Declaration of Jean Rochette ¶ 4.  There is simply no nexus between MG Premium and Plaintiff's claims sufficient to support personal jurisdiction.  *Schwarzenegger*, 374 F.3d at 802.

**MOTION TO DISMISS**

### C.   Plaintiff Cannot Impute Other Entities' Contacts to Establish Jurisdiction Over MindGeek S.à.r.l. and MG Premium Ltd.

Plaintiff alleges that the Court has general jurisdiction over all of the MindGeek entities because MindGeek USA and MG Global Entertainment both have their headquarters in California. *See* FAC ¶¶ 38, 40. As a threshold issue, neither entity played any role in the conduct underlying her claims. *id.* ¶¶ 21, 23; Andreou Decl. ¶¶ 21, 28. MindGeek USA distributes DVDs, and Plaintiff does not allege her content appeared on DVDs. *Id.* ¶ 21. MG Global Entertainment distributes licensed content to businesses like cable operators, hotels, and cruise ships. *Id.* ¶ 28. To the extent MG Global Entertainment employs certain employees who live in the United States and perform work for other entities, none of those employees is alleged to have had anything to do with Plaintiff. *Id.* ¶ 29.[16]

More fundamentally, Plaintiff attempts to impute the contacts of MindGeek USA and MG Global Entertainment to establish general jurisdiction over MindGeek S.à.r.l. and MG Premium, but the presence of these entities in California is insufficient to permit the Court to exercise jurisdiction over any other Defendant not otherwise subject to the Court's jurisdiction. "Plaintiff[] cannot establish personal jurisdiction by alleging that 'Defendants' or 'Agent Defendants' took actions in or aimed at California because those sorts of 'shotgun' pleadings do not satisfy Plaintiff['s] burden to demonstrate personal jurisdiction with respect to each defendant." *Broidy*

---

[16] To the extent Plaintiff argues that the provision of services by MG Global Entertainment is grounds for disregarding its corporate separateness, that argument fails. When one MindGeek entity provides services to another, the entity receiving services pays the entity providing the services pursuant to the terms of a written agreement. Andreou Decl. ¶ 9. The charges for such services have generally been on a "cost plus" or "mark up percentage" basis, meaning that the service provider is reimbursed for the cost of providing the service and paid an additional amount representing a percentage of the cost on top. *Id.* MindGeek has engaged third parties to conduct transfer pricing studies to determine price ranges for the services at issue in the relevant market and ensure that intercompany charges are accounted properly for tax purposes. *Id.*

*Cap. Mgmt., LLC v. Qatar*, 2018 WL 9943551, at *7 (C.D. Cal. Aug. 22, 2018) (emphasis added). Rather, "[e]ach defendant's contacts with the forum State must be assessed individually." *Id*. (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)). To meet its burden, "a plaintiff must submit evidence supporting personal jurisdiction over **each** defendant, and cannot simply lump them all together." *Id.* at *5 (citation omitted and emphasis added); *In re Auto. Antitrust Cases I & II,* 135 Cal. App. 4th 100, 118 (2005) ("Jurisdictional facts shown must pertain to each nonresident defendant individually, even in an alleged conspiracy.").

Plaintiff does not plead jurisdictional facts as to each MindGeek entity and instead baselessly claims that they are mere alter-egos of each other. "There is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary." *Mireskandari v. Daily Mail & Gen. Trust PLC*, 2013 WL 12114760, at *5 (C.D. Cal. Jul. 13, 2013). "To support personal jurisdiction under an alter ego theory," Plaintiff must demonstrate "(1) 'such unity of interest and ownership' between parent and subsidiary 'that the separate personalities of the two entities no longer exist' and (2) the 'failure to disregard' the separate entities 'would result in fraud or injustice.'" *Iconlab, Inc. v. Bausch Health Cos.*, 828 F. App'x 363, 364 (9th Cir. 2020) (quoting *Ranza v. Nike, Inc*., 793 F.3d 1059, 1073 (9th Cir. 2015)). "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control," particularly where corporate formalities necessary to maintain corporate separateness are observed. *Ranza*, 793. F.3d at 1073.

Plaintiff fails to plead any facts to support her alter-ego theory and the record—which is properly considered on a jurisdictional challenge—establishes that MindGeek S.à.r.l. and MG Premium are separate corporate entities. There is no intermingling of assets or disregard for corporate formalities here by any of the six named MindGeek entities. Each has its own funds and accounts. Andreou Decl. ¶¶ 9, 15, 19, 22, 26, 30, 34. Each has a board of directors or the foreign equivalent, and

1  each observes the appropriate corporate formalities.  *Id.*  Insofar as MindGeek S.à.r.l.

2  is concerned, its involvement is limited to the "routine operations between a parent

3  and its subsidiary."  *Iconlab*, 828 F. App'x at 365 n.1.

4      In support of her alter ego theory, Plaintiff alleges there is something sinister

5  about how the MindGeek entities are organized and function.  However, they function

6  just like any other global business.  For example, MindGeek S.à.r.l. was created before

7  the period relevant to Plaintiff's claims to acquire the business of Manwin Holding

8  S.à r.l.  Andreou Decl. ¶ 5.  Since that time, MindGeek S.à r.l. has remained a holding

9  company for various subsidiaries comprising the business of MindGeek.  *Id.*  It does

10  not exercise and has never exercised control over the day-to-day operations of any

11  other MindGeek corporate entity.  *Id.* ¶ 14.[17]

12      MG Premium does not operate Pornhub or any other tubesite of the sort alleged

13  to have hosted content depicting Plaintiff.  *Id.* ¶ 24.  Rather, this entity is responsible

14  for operating websites referred to as "paysites," which offer certain subscription-

15  based content.  *Id.*  MG Premium has not created, solicited, posted, managed, or had

16  any other involvement with the website content at issue in the instant case.  *Id.*  Like

17  MindGeek S.à r.l., MG Premium operates independently and has a specific and

18  distinct business purpose.

19      Plaintiff's alter ego theory fails for a separate and independently dispositive

20  reason: Plaintiff cannot show that "'failure to disregard' the separate entities 'would

21  result in fraud or injustice.'"  *Iconlab, Inc.*, 828 F. App'x at 364 (quoting *Ranza*, 793

22  F.3d at 1073).  This is not a situation where the only proper defendant is absent.

23

24  [17] Plaintiff's allegations that MindGeek's corporate operations are illegal because
25  over time certain entities' names have changed and some entities have opened and
   closed is baseless and no reason to disregard corporate separateness.  Name changes
26  were made for legitimate reasons including to reflect the change in branding from
27  Manwin to MindGeek after the acquisition referred to above.  Changes to MindGeek's
   corporate structure were made for legitimate business purposes as well.  Andreou
28  Decl. ¶¶ 4-8.

Plaintiff has sued the operator of the websites at issue in this lawsuit—Freesites; and MindGeek does not challenge the Court's jurisdiction over that entity or over 9219, which acts as a service provider to Freesites. Nowhere has Plaintiff alleged how "fraud or injustice" would occur unless the Court were to ignore the corporate separateness of the MindGeek entities. To the contrary, "[t]here are no facts before the Court that suggest Plaintiff cannot be made whole through a lawsuit against [Freesites and 9219]," and they are not challenging the exercise of specific personal jurisdiction in this case. *Shimmick Constr. Co./Obayashi Corp. v. Officine Meccaniche Galletti-O.M.G. S.R.L.*, 2014 WL 5847440, at *7 (S.D. Cal. Nov. 12, 2014).

In sum, because neither MindGeek USA nor MG Global Entertainment is properly considered the alter ego of any other Defendant, and because failure to disregard their separateness would not result in fraud or injustice, personal jurisdiction may not be extended over either MindGeek S.à r.l. or MG Premium under an alter ego theory.

## CONCLUSION

For all of the foregoing reasons, the Court should grant this motion and dismiss the FAC with prejudice.

DATED: May 23, 2022             Respectfully submitted,


                                    /s/    *Benjamin M. Sadun*
                                BENJAMIN M. SADUN (287533)
                                benjamin.sadun@dechert.com
                                DECHERT LLP
                                US Bank Tower, 633 West 5th Street,
                                Suite 4900
                                Los Angeles, CA 90071-2013
                                Phone: (213) 808-5721; Fax: (213) 808-5760

                                KATHLEEN N. MASSEY (*admitted pro hac
                                vice*)
                                kathleen.massey@dechert.com
                                DECHERT LLP
                                Three Bryant Park
                                1095 Avenue of the Americas
                                New York, NY 10036
                                Phone: (212) 698-3500; Fax: (212) 698 3599
                                *Attorneys for Defendants*

**MOTION TO DISMISS**                              CASE NO. 2:21-cv-04920