1  Evan Nadel (SBN 213230)
   enadel@mintz.com
2  Kathryn L. Ignash (SBN 299694)
   klignash@mintz.com
3  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
   2029 Century Park East, Suite 3100
4  Los Angeles, CA 90067
   Telephone: (310) 586-3200
5  Facsimile: (310) 586-3202

6  Peter A. Chavkin (admitted *pro hac vice*)
   pchavkin@mintz.com
7  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
   666 Third Avenue
8  New York, NY 10017
   Telephone:  (212) 935 3000
9  Facsimile:  (212) 983 3115

10 Attorneys for Specially Appearing Defendant,
   COREY URMAN

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13 SERENA FLEITES,                          Case No. 2:21-cv-4920-CJC-ADS

14            Plaintiff,

15      v.                                  **MEMORANDUM OF POINTS
                                            AND AUTHORITIES IN
16 MINDGEEK S.A.R.L. a foreign entity; MG   SUPPORT OF SPECIALLY-
   FREESITES, LTD., a foreign entity; MINDGEEK  APPEARING DEFENDANT
17 USA INCORPORATED, a Delaware corporation;  COREY URMAN'S MOTION
   MG PREMIUM LTD, a foreign entity; MG      TO DISMISS THE AMENDED
18 GLOBAL ENTERTAINMENT INC., a Delaware    COMPLAINT**
   corporation; 9219-1568 Quebec, Inc. (d/b/a
19 MindGeek), a foreign entity; BERND       Hearing Date:  August 8, 2022
   BERGMAIR, a foreign individual; FERAS    Hearing Time:  1:30 p.m.
20 ANTOON, a foreign individual; DAVID      Courtroom:  9B
   TASSILLO, a foreign individual; COREY    Judge:  Hon. Cormac J. Carney
21 URMAN, a foreign individual; VISA INC., a
   Delaware corporation; COLBECK CAPITAL
22 DOES 1-5; and BERGMAIR DOES 1-5,

23            Defendants.

24

25

26

27

28
─────────────────────────────────────────────────────────
**DEFENDANT COREY URMAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................1

FACTUAL ALLEGATIONS ...............................................................................2

ARGUMENT .........................................................................................................5

I.    THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER MR. URMAN..................................................................................5

   A.   The Court Lacks General Jurisdiction Over Mr. Urman...........................5

   B.   The Court Lacks Specific Jurisdiction Over Mr. Urman .........................6

     1.   Element One: The Amended Complaint Does Not Allege Mr. Urman Purposefully Directed His Activities Toward California............6

       a.   Failure to allege intentional acts............................................6

       b.   Conduct not aimed at California ............................................7

       c.   Injury in California not foreseeable .......................................9

     2.   Element Two: The Amended Complaint Fails to Establish that Plaintiff's Claims Arise Out Of or Result from Mr. Urman's Forum-Related Activities.........................................................................9

     3.   Element Three: Exercising Jurisdiction Over Mr. Urman Would Not Comport With Fair Play and Substantial Justice ...........................10

       a.   No purposeful interjection by Mr. Urman into California's affairs..................................................................................11

       b.   The burden on Mr. Urman to defend in California is enormous ........11

       c.   The sovereignty of Canada would be adversely impacted.................12

       d.   California's interest in adjudicating this dispute is satisfied without Mr. Urman..............................................................12

       e.   California is not the most efficient forum for this dispute.................13

       f.   Litigating in a California court is not essential to Plaintiff's convenient and effective relief ............................................13

       g.   An alternative forum exists ..................................................14

i

C.    Plaintiff's Apparent Efforts To Remedy These Jurisdictional Deficiencies By Attributing To Mr. Urman The Actions Of Others Is A Futile End Run ................................................................15

   1.    None of the MindGeek Entities' Conduct Can Be Imputed to Mr. Urman Under an Alter Ego Construct. ...................................15

     a.    Element 1: Plaintiff Fails to Allege Unity of Ownership and Interest ..........................................................................16

     b.    Element 2: Plaintiff Has Not Alleged that Mr. Urman Acted In Bad Faith or that Injustice Would Result From a Denial of an Alter Ego Relationship ..............................................19

   2.    Plaintiff cannot impute to Mr. Urman the activities of the MindGeek entities under a guiding spirit construct. ............................21

   3.    Plaintiff cannot impute to Mr. Urman the activities of the MindGeek entities (or any other defendant) by lumping them together in an undifferentiated mass. ........................................22

   4.    Plaintiff Cannot Impute to Mr. Urman the Activities of Others under Agency Principles. .....................................................24

D.    Plaintiff Cannot Overcome Her Jurisdictional Deficiencies By Invoking Rule 4(k) or Inapplicable Statutes ............................................25

   1.    Rule 4(k) ........................................................................25

   2.    18 U.S.C. § 1965 ...........................................................27

   3.    18 U.S.C. § 2255 ...........................................................28

E.    Plaintiff Cannot Excuse Her Jurisdictional Failures By Seeking Jurisdictional Discovery ..............................................................28

II.    SECTION 230 EXEMPTS MR. URMAN FROM THIS LAWSUIT ........30

III.    ALL OF PLAINTIFF'S CLAIMS AGAINST MR. URMAN ARE SUBSTANTIVELY DEFICIENT ..............................................................31

  A.    The TVPRA Claims (Counts I, II, IV) ......................................31

  B.    Distributing CSAM  (Counts V, VI) .........................................34

  C.    RICO (Counts VII, VIII) ..........................................................34

ii

1.    Common purpose:..........................................................................35

2.    Enterprise:.................................................................................35

3.    Pattern of racketeering:.............................................................36

   a.    False messaging, lies to the public and smear campaigns ..................37

   b.    Harassment ................................................................38

4.    Conducted the enterprise:............................................................39

D.    State Law Claims (Counts IX – XVII)....................................................40

CONCLUSION ........................................................................................41

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Advantage Lift Systems, Inc. v. O.M.E.R., S.p.A.*,
   1997 WL 398033 (S.D. Cal. Mar. 19, 1997) .......................................................13

*Allegro Consultants, Inc. v. Wellington Techs., Inc.*,
   2014 WL 4352344 (N.D. Cal. Sept. 2, 2014) ....................................................17

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
   2015 WL 12777092 (C.D. Cal. Oct. 23, 2015) .................................................23

*AMA Multimedia, LLC v. Wanat*,
   970 F.3d 1201 (9th Cir. 2020) ...............................................................6, 9, 27

*Apple Hill Growers v. El Dorado Orchards*,
   2019 WL 5827365 (E.D. Cal. Nov. 7, 2019).................................................39, 40

*Asahi Metal Indus. Co. v. Superior Ct.*,
   480 U.S. 102 (1987)................................................................................11

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
   874 F.3d 1064 (9th Cir. 2017) .........................................................8, 25, 26

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
   2020 WL 4368214 (N.D. Cal. July 30, 2020) ...................................................33

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
   223 F.3d 1082 (9th Cir. 2000) ........................................................................7

*Beatport LLC v. SoundCloud Ltd.*,
   2020 WL 3977602 (C.D. Cal. July 13, 2020).......................................23, 32, 33

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) ................................................................28, 29

*Brophy v. Almanzar*,
   359 F. Supp. 3d 917 (C.D. Cal. 2018) .............................................................29

iv

*Brown v. General Steel Domestic Sales, LLC*,
    2008 WL 2128057 (C.D. Cal. May 19, 2008)......................................................21

*Bryant v. Adventist Health System/West*,
    289 F.3d 1162 (9th Cir. 2002) ...........................................................................40

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
    788 F.2d 535 (9th Cir. 1986) ..............................................................................28

*Calder v. Jones*,
    465 U.S. 783 (1984)...............................................................................................8

*Calvert v. Huckins*,
    875 F. Supp. 674 (E.D. Cal. 1995) ......................................................16, 18, 19

*Canyon Cnty v. Syngeta Seeds, Inc.*,
    519 F.3d 969 (9th Cir. 2008) ..............................................................................37

*Chirila v. Conforte*,
    47 Fed. Appx 838 (9th Cir. 2002).........................................................................7

*Cisco Systems, Inc. v. Link US LLC*,
    2019 WL 6682838 (N.D. Cal. Dec. 6, 2019)..................................................7, 22

*Clark v. Nat'l Equities Holdings, Inc.*,
    561 F. Supp. 2d 632 (E.D. Tex. 2006)................................................................36

*Core-Vent Corp. v. Nobel Indus. AB*,
    11 F.3d 1482 (9th Cir. 1993) .......................................................................*passim*

*Cybersell, Inc. v. Cybersell, Inc.*,
    130 F.3d 414 (9th Cir. 1997) ..............................................................................27

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)..............................................................................................24

*Daoud v. Societe Generale De Banque Au Liban, S.A.L.*,
    2021 WL 3579359 (C.D. Cal. July 6, 2021)..........................................................8

*Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*,
    557 F.2d 1280 (9th Cir. 1977) ............................................................................19

v

*Davis v. Metro Prods., Inc.*,
    885 F.2d 515 (9th Cir. 1989) ...............................................................15

*De Fontbrune v. Wofsy*,
    838 F.3d 992 (9th Cir. 2016), (Nov. 14, 2016).....................................14

*Doan v. Singh*,
    617 Fed Appx 684 (9th Cir. 2015)........................................................35

*Doe v. Am. Red Cross*,
    112 F.3d 1048 (9th Cir. 1997) ..............................................................10

*Doe v. Geller*,
    533 F. Supp. 2d 996 (N.D. Cal. 2008)..................................................10

*Doe v. Kik Interactive, Inc.*,
    482 F. Supp. 3d 1242 (S.D. Fla. Aug. 31, 2020).................................33

*Doe v. MindGeek USA Inc.*,
    No. 8:21-cv-00338-CJC-ADS (C.D. Cal. Sept. 3, 2021) ....................31

*Doe v. MySpace, Inc.*,
    474 F. Supp. 2d 843 (W.D. Tex. 2007) ................................................41

*Doe v. Reddit, Inc.*,
    No. 8:21-cv-00768-JVS-KES (C.D. Cal. Oct. 7, 2021) ......................33

*Doe v. Unocal Corp.*,
    27 F. Supp. 2d 1174 (C.D. Cal. 1998) .................................................27

*Doe v. WebGroup Czech Republic*,
    No. 2:21-cv-02428-VAP-SK (C.D. Cal. Jan. 5, 2022).........................23

*Dole Food Co., Inc. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002) ..............................................................14

*Eclectic Props. E., LLC v. The Marcus & Millichap Co.*,
    2012 WL 713289 (N.D. Cal. Mar. 5, 2012) .........................................36

*Ewing v. Encor Solar, LLC*,
    2019 WL 277386 (S.D. Cal. Jan. 22, 2019) .........................................18

vi

**DEFENDANT COREY URMAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

*Firstmark Cap. Corp. v. Hempel Fin. Corp.*,
   859 F.2d 92 (9th Cir. 1988) ...............................................................17

*Franco Am. Corp. v. Kim Seng Co.*,
   2011 WL 13220312 (C.D. Cal. June 24, 2011)....................................40

*Fumoto Giken Co. Ltd. v. Mistuoka*,
   2015 WL 12766167 (C.D. Cal. Apr. 16, 2015)....................................25

*Geiss v. Weinstein Co. Holdings LLC*,
   383 F. Supp. 3d 156 (S.D.N.Y. 2019) ..........................................33, 34

*Getz v. Boeing Co.*,
   654 F.3d 852 (9th Cir. 2011) ..............................................................29

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
   284 F.3d 1114 (9th Cir. 2002) ............................................................25

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
   972 F.3d 1101 (9th Cir. 2020) .......................................................15, 26

*Gofron v. Picsel Techs., Inc.*,
   804 F. Supp. 2d 1030 (N.D. Cal. 2011)...............................................19

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ..............................................................5

*Holmes v. Sec. Inv. Prot. Corp.*,
   503 U.S. 258 (1992).............................................................................39

*In re: Gen. Motors LLC Ignition Switch Litig.*,
   2016 WL 3920353 (S.D.N.Y. July 15, 2016)......................................35

*In re Juul Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   497 F. Supp. 3d 552 (N.D. Cal. 2020)............................................35, 39

*In re Rexplore, Inc. Sec. Litig.*,
   685 F. Supp. 1132 (N.D. Cal. 1988)....................................................41

*In re WellPoint*,
   903 F. Supp. 2d 880 (C.D. Cal. 2012)..................................................38

**DEFENDANT COREY URMAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

*In re Wellpoint Out-of-Network "UCR" Rates Litig.*,
  865 F. Supp. 2d 1002 (C.D. Cal. 2011) ................................................................39

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
  715 F.3d 716 (9th Cir. 2013) ...............................................................................10

*Incipio, LLC v. Argento Sc By Sicura Inc.*,
  2018 WL 4945002 (C.D. Cal. July 18, 2018)......................................................16

*Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.*,
  880 F. Supp. 743 (C.D. Cal. 1995) .......................................................................21

*Ins. Co. of N. Am. v. Marina Salina Cruz*,
  649 F.2d 1266 (9th Cir. 1981) ........................................................................11, 12

*ISI Int'l v. Borden Ladner Gervais LLP*,
  256 F.3d 548 (7th Cir. 2001), (July 2, 2001).......................................................25

*Johnson v. JP Morgan Chase Bank*,
  2008 WL 1925026 (E.D. Cal. Apr. 29, 2008) .....................................................36

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*,
  394 F.3d 1143 (9th Cir. 2004) .............................................................................21

*Klayman v. Zuckerberg*,
  753 F.3d 1354 (D.C. Cir. 2014) .....................................................................30, 31

*La'Tiejira v. Facebook, Inc.*,
  272 F. Supp. 3d 981 (S.D. Tex. 2017)..................................................................31

*Letizia v. Facebook Inc.*,
  267 F. Supp. 3d 1235 (N.D. Cal. 2017)................................................................41

*Littleton v. Experian Info. Sols., Inc.*,
  2015 WL 4638308 (N.D. Cal. Aug. 4, 2015) ......................................................23

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*,
  431 F.3d 353 (9th Cir. 2005) ...............................................................................35

*Martinez v. Manheim Cent. Cal.*,
  2011 WL 1466684 (E.D. Cal. Apr. 18, 2011) .....................................................29

viii

*Metabyte, Inc. v. Technicolor S.A.*,
  2021 WL 1721394 (N.D. Cal. Apr. 30, 2021) .....................................................14

*MH Pillars Ltd. v. Realini*,
  2017 WL 916414 (N.D. Cal. Mar. 8, 2017) .......................................................18

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*,
  650 F. 3d 1046 (6th Cir. 2011) ...........................................................................29

*NuCal Foods, Inc. v. Quality Egg LLC*,
  887 F. Supp. 2d 977 (E.D. Cal. 2012) ...............................................................20

*O'Connor v. Uber Technologies, Inc.*,
  2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) ................................................39, 40

*Pebble Beach Co. v. Caddy*,
  453 F.3d 1151 (9th Cir. 2006) ............................................................................26

*Perkumpulan Inv. Crisis Ctr. Dressel-WBG v. Wong*,
  2012 WL 13024801 (W.D. Wash. Apr. 6, 2012) .........................................27, 28

*Pesquera v. Perez*,
  2021 WL 254193 (N.D. Cal. Jan. 26, 2021) .......................................................12

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2015) .....................................................................6, 8, 9

*Prime Partners IPA of Temecula, Inc. v. Chaudhuri*,
  2012 WL 1669726 (C.D. Cal. May 14, 2012) ....................................................36

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) ............................................................................16

*Reynolds v. Binance Holdings Ltd.*,
  481 F. Supp. 3d 997 (N.D. Cal. 2020) ...............................................................16

*Rocke v. Canadian Auto. Sport Club*,
  660 F.2d 395 (9th Cir. 1981) ..............................................................................10

*Ruhrgas AG v. Marathon Oil Co.*,
  526 U.S. 574 (1999) ..............................................................................................5

**DEFENDANT COREY URMAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ..............................................................7

*Scott v. Breeland*,
    792 F.2d 925 (9th Cir. 1986) ..............................................................5

*Shimmick Constr. Co., Inc. v. Officine Meccaniche*,
    2014 WL 5847440 (S.D. Cal. Nov. 12, 2014)....................................20

*Shin v. Time Squared Glob., LLC*,
    2015 WL 13284952 (C.D. Cal. Aug. 26, 2015) .................................22

*Sihler v. Fulfillment Lab, Inc.*
    2020 WL 7226436 (S.D. Cal. Dec. 8, 2020) ......................................18

*State Comp. Ins. Fund v. Khan*,
    2013 WL12132027 (C.D. Cal. July 30, 2013)....................................23

*Stewart v. Screen Gems-Emi Music, Inc.*,
    81 F. Supp. 3d 938 (N.D. Cal. 2015)..................................................29

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ..............................................................5

*Symettrica Ent., Ltd. v. UMG Recordings, Inc.*,
    2019 WL 8806093 (C.D. Cal. Sept. 20, 2019) ...........................*passim*

*TEG Staffing, Inc. v. Platt*,
    2008 WL 4571257 (N.D. Cal. Oct. 14, 2008) ....................................38

*U.S. v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016) ...........................................................33

*U.S. v. Afyare*,
    632 Fed. Appx 272 (6th Cir. 2016)........................................32, 33, 34

*Wargaming.net Ltd. v. BlitzTeam LLC*,
    2021 WL 3619956 (C.D. Cal. Jan. 20, 2021)..............................*passim*

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) ..............................................................5

x

*Wood v. N. Am. Van Lines, Inc.*,
　2021 WL 3124155 (C.D. Cal. July 22, 2021)......................................................24

**California Cases**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
　7 Cal. 4th 503 (1994) ...........................................................................................41

*Barrett v. Rosenthal*,
　40 Cal. 4th 33 (2006) ...........................................................................................31

*Frances T. v. Vill. Green Owners Assn.*,
　42 Cal. 3d 490 (1986) ...........................................................................................40

*Hasso v. Hapke*,
　227 Cal. App. 4th 107 (2014) ...............................................................................16

*U.S. Liability Ins. Co. v. Haidinger-Hayes, Inc.*,
　1 Cal. 3d 586 (1970) ............................................................................................40

**Other State Cases**

*Smartmatic USA Corp. v. Fox Corp.*,
　2022 WL 685407 (N.Y. Sup. Ct. Mar. 8, 2022)..................................................29

**Federal Statutes**

18 U.S.C.
　§ 1343......................................................................................................................37
　§ 1591................................................................................................................32, 34
　§ 1962.............................................................................................................*passim*
　§ 1965......................................................................................................................27
　§ 2252......................................................................................................................34
　§ 2252A...................................................................................................................34
　§ 2255................................................................................................................28, 34

47 U.S.C.
　§ 230.................................................................................................................30, 31

xi

**California Statues**

Cal. Bus. & Prof. Code
    §§ 17200 and 17500 .............................................................................41

**Other Authorities**

Fed. R. Civ. P. 4(k) .........................................................................25, 26

Fed. R. Civ. P. 8.....................................................................23, 28, 41

Fed. R. Civ. P. 9(b) ...............................................................................41

Fed. R. Civ. P. 12(b)(6)........................................................................29

Fed. R. Civ. P. 44(a)(2) ........................................................................14

Fed. R. Evid. 201 ..................................................................................14

# INTRODUCTION[1]

This is a case about the exploitation of Serena Fleites, a woman whose underage videos were posted online. But the poignancy of her story does not explain why she has sued Corey Urman. Like her original complaint, the Amended Complaint (ECF No. 124-3 ("Amended Complaint" or "AC")) does nothing to connect Mr. Urman to this jurisdiction (or even the United States), and equally fails to link him to any of the conduct surrounding the videos in question.

Corey Urman is a Canadian citizen who allegedly worked for one of the defendant entities in Canada. There is no allegation that he ever interacted in any way with Plaintiff—no meetings, no calls, no emails, no texts. Nor is there any allegation that Mr. Urman had any involvement with the videos of Plaintiff that her ex-boyfriends allegedly uploaded to a website to which Plaintiff must connect Mr. Urman. These same deficiencies fatally infected the original complaint where Ms. Fleites was one of 34 plaintiffs.

Plaintiff's counsel recently claimed to have remedied "the argued deficiencies" in that now-dismissed complaint. But the Amended Complaint has done nothing more than repeat more often the conclusory allegation of control, operation and direction that was already present in her initial complaint. Repeating something does not make it any more correct—or any less conclusory.

In addition to that pleading defect, the Amended Complaint also continues to "lump together" Mr. Urman with other defendants and make undifferentiated group allegations. The upshot is an Amended Complaint that still fails to contain even a colorable basis for the assertion of personal jurisdiction over Mr. Urman and fails to

---

[1]    Pursuant to the stipulation of the parties and the Court's Order, the page limit for this brief was expanded to 50 pages. (ECF No. 128.)

**DEFENDANT COREY URMAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

assert any plausible claim for relief against him.  It should be dismissed with prejudice as to Mr. Urman.

### **FACTUAL ALLEGATIONS**[2]

Plaintiff, Serena Fleites, is a woman whose underage, sexually explicit videos were uploaded to various pornography websites, including MindGeek sites, without her permission.  (AC ¶¶ 258-69.)  According to her Amended Complaint, when Ms. Fleites learned of the first video's existence on a MindGeek site, she complained to MindGeek, and MindGeek removed her video.  (AC ¶ 261.)  After MindGeek removed the video, it was "reuploaded countless additional times to other pornography sites and widely disseminated through email and other forms of electronic communication."  (AC ¶ 264.)

This action began as a suit alleging "rape and sexual exploitation" of the Plaintiff and 33 unnamed women in violation of various federal and state laws.  The Court granted a motion to sever the additional plaintiffs and dismissed the complaint.  (ECF No. 119.)  On March 21, 2022, Plaintiff filed her Amended Complaint.  (ECF No. 124-3.)  Just as with the original complaint, the gist of Plaintiff's allegations in the Amended Complaint is that MindGeek failed to effectively monitor its sites and preclude or remove illegal content.

The Amended Complaint remains substantively the same as the original.  Although reduced to one plaintiff, the Amended Complaint repeats allegations of years-long conduct and injuries to multiple individuals spanning multiple countries, and seeks to lay bare the multiple alleged illegalities perpetrated by entities grouped under the name "MindGeek."  Most of the alleged events and acts have nothing to do with Plaintiff.

---

[2]    Urman accepts the Amended Complaint's factual allegations as true solely for purposes of the motion to dismiss, and does not concede the accuracy of any of those allegations.

DEFENDANT COREY URMAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

For Mr. Urman's purposes, the Amended Complaint remains deficient. It does not allege any conduct that brings him within the jurisdiction of this Court. Despite Plaintiff knowing from the briefing on the initial complaint how defective its jurisdictional and substantive allegations were, the Amended Complaint adds nothing more. Instead, it repeats the same plainly deficient mantra in the original complaint: that Mr. Urman "approved," "implemented," or "directed" offensive activity – the very formulation that was the subject of multiple motions to dismiss. *Compare* Compl. (ECF No. 1) ¶¶ 439, 453, 471, 537, 571 *with* AC ¶¶ 173, 181, 193-95, 200, 209, 214.

Beyond repeating this conclusory allegation, the Amended Complaint does not even offer a consistent narrative of control by Mr. Urman. At the same time that Plaintiff attempts to assign responsibility over MindGeek's operations to Mr. Urman, she also alleges that others – including, the other individual defendants (AC ¶¶ 25-27), the Doe defendants (AC ¶¶ 29-30), and "bosses" (AC ¶ 47) – controlled and directed MindGeek's activities.

Briefly, with respect to jurisdiction, the Amended Complaint alleges that Mr. Urman is a resident of Canada, works for a Canadian company with a principal place of business in Canada, and was responsible for "public and media relations for all MindGeek entities." (AC ¶ 28.) It does not say what Mr. Urman, as a Canadian citizen and employee, did to supposedly bring himself within this Court's jurisdiction.

With respect to Plaintiff's substantive claims of trafficking, conveying child pornography and racketeering, the Amended Complaint fails to allege anything Mr. Urman did to perpetrate those purported illegalities. The Amended Complaint devotes 14 paragraphs from its 534 paragraphs to describe how Ms. Fleites's underage, sexually explicit videos were posted on websites operated by MindGeek.

3

(AC ¶¶ 258-72.)  None of those allegations include any reference to Mr. Urman. There is no allegation that Mr. Urman had anything to do with the creation of the videos, the initial or subsequent postings of the videos, the handling of Ms. Fleites's alleged complaints to MindGeek, or even that he knew Ms. Fleites at the time her videos were uploaded.  Lacking any concrete acts by Mr. Urman relating to these videos, the Amended Complaint simply lumps Mr. Urman together with all of the other individual defendants and alleges that they collectively "directed and executed" MindGeek's "embrace of illegal content" and "implemented and aggressively developed" policies and practices that allowed illegal content to be uploaded on MindGeek websites. (*See e.g.*, AC ¶¶ 172-73, 200.)[3]  Moreover, in lieu of allegations about Mr. Urman, the Amended Complaint offers sensational allegations about, for example, tax evasion and money laundering, without ever explaining how any of those allegations relates to Mr. Urman or even Ms. Fleites.

Distilled to its essence, the Amended Complaint levels claims against Mr. Urman for injuries allegedly suffered by Ms. Fleites when her videos were uploaded, not taken down swiftly enough, and reuploaded, but never once does the Amended Complaint allege how Mr. Urman had anything to do with those videos, that he even knew of them or Ms. Fleites during those periods, or that he took any action at any time that was aimed at the United States, much less California.

---

[3]    The only specific connection the Amended Complaint alleges between Mr. Urman and Ms. Fleites occurs in 2020, years after her videos were uploaded to one of MindGeek's sites.  (AC ¶¶ 258, 344.)  Mr. Urman allegedly "led" a "disinformation campaign" to deceive the public about MindGeek's good faith efforts to prevent illicit activity and he directed individuals to harass and embarrass Ms. Fleites in the wake of a news article featuring her as a victim of Pornhub.  (AC ¶¶ 326, 344.)  None of these allegations from 2020 relate to the injuries that underlie Ms. Fleites's legal claims – the uploading and sharing of her videos in the preceding six years.

**DEFENDANT COREY URMAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

# ARGUMENT[4]

## I. THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER MR. URMAN

A plaintiff must establish personal jurisdiction over each defendant she sues. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999); *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003). To make a prima facie showing of jurisdictional facts, the plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citation omitted). "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (citation omitted).

Plaintiff fails to allege facts establishing personal jurisdiction over Mr. Urman.

### A. The Court Lacks General Jurisdiction Over Mr. Urman

To establish general jurisdiction, the defendant must have a regular presence in California, which can be achieved either by the defendant residing in or regularly doing business in the state. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (finding general jurisdiction where defendant's contacts "are so 'continuous and systematic' as to render [it] essentially at home" in the forum State") (alteration in original; quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Amended Complaint contains no allegation that Mr. Urman had "continuous and systematic" contacts with California; in fact, it alleges no contacts by him. Instead, the Amended Complaint makes clear that Mr.

---

[4]    In addition to the arguments in this Memorandum, Mr. Urman joins in the motions and arguments of all of the defendant MindGeek corporate entities and those of the individual defendants Bernd Bergmair, Feras Antoon, and David Tassillo.

5

Urman is a resident of Canada and works for a company with a principal place of business in Canada. (AC ¶ 28.)  Accordingly, the Amended Complaint fails to allege any basis for general jurisdiction over Mr. Urman.

**B.    The Court Lacks Specific Jurisdiction Over Mr. Urman**

Specific jurisdiction requires allegations that (1) the defendant purposefully directed his activities toward the forum; (2) the plaintiff's claim arises out of or results from defendant's forum-related activities; and (3) the exercise of jurisdiction is fair and just.  *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015).  Failure to satisfy any one of these elements is fatal.  The Amended Complaint falls flat on each element.

**1.    Element One: The Amended Complaint Does Not Allege Mr. Urman Purposefully Directed His Activities Toward California**

To establish that Mr. Urman purposefully directed his activities toward the forum, Plaintiff must allege that he (1) committed an intentional act, (2) expressly aimed at California, (3) causing harm that he knew was likely to be suffered in California.  *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1209 (9th Cir. 2020).  Plaintiff fails to satisfy any of these requirements.

*a.    Failure to allege intentional acts.*

With the exception of an alleged disinformation campaign that does not provide the basis for Plaintiff's claims, the Amended Complaint does not attribute to Mr. Urman any "intentional acts."  At most, the Amended Complaint states that Mr. Urman knew of or consented to various wrongful conduct.  But "knowledge and consent—passive states of mind—do not constitute intentional acts directed at the forum state."  *Chirila v. Conforte*, 47 Fed. Appx 838, 842 (9th Cir. 2002).  A defendant must "perform an actual, physical act" to constitute a finding of an "intentional act."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806

6

1  (9th Cir. 2004) (finding that commission of an "intentional act" requires the

2  defendant to perform an actual, physical act, rather than "an intent to accomplish a

3  result or consequence of that act"). Plaintiff cannot fill this hole with allegations

4  that Mr. Urman played some amorphous managerial role.[5] *See Cisco Systems Inc.*

5  *v. Link US, LLC*, 2019 WL 6682838, at *1, 4 (N.D. Cal. Dec. 6, 2019) (no specific

6  jurisdiction where executive was "intimately involved in operating" the company

7  and was "actively involved in [its] day-to-day management and operations").

8                          b.      *Conduct not aimed at California.*

9          To establish that a defendant expressly aimed his conduct at the forum, a

10  plaintiff must demonstrate that the defendant "engaged in wrongful conduct *targeted*

11  *at a plaintiff whom the defendant knows to be a resident of the forum state*." *Bancroft*

12  *& Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (emphasis

13  added). Here, the Amended Complaint contains no factual allegations of conduct

14  by Mr. Urman in or aimed at California, or even any allegation that Mr. Urman knew

15  that Ms. Fleites was a California resident.

16          Plaintiff's allegations that Mr. Urman intentionally conducted or participated

17  in a "disinformation campaign" many years *after* her videos were posted do not

18  remedy this defect. As noted earlier, she does not claim that this conduct forms the

19  basis of any cause of action, nor could she because this alleged activity did not

20  contribute to the harm she claimed to have suffered from the posted videos but was,

21  instead, allegedly done to protect MindGeek in response to public criticism. (AC ¶

22  251 (alleging MindGeek "disinformation machine disseminated" "false denials"

23  from Mr. Urman "[i]n response" to reporting in The Sunday Times); ¶ 323 (alleging

24

25  _____

   [5]      The Amended Complaint does not even allege that Mr. Urman was an officer.
26  It states that he was a "Vice President, Product Management, Video Sharing
   Platform" of one entity (AC ¶ 28). Many companies have dozens of VPs and there
27  is no rule that all such VP-level employees are officers.

                                              7

28  ──────────────────────────────────────────────────────────
   **DEFENDANT COREY URMAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
   **MOTION TO DISMISS AMENDED COMPLAINT**

that Mr. Urman, under an alias, made misrepresentations about Pornhub, in response to an op-ed in the Washington Times); ¶¶ 344-46 (alleging Mr. Urman had "GS attack plaintiff Serena Fleites" after she "was featured in the New York Times story" to "gaslight readers that MindGeek tolerated no nonconsensual content and aggressively worked to exclude it from its platform").)

Moreover, even if this alleged conduct formed the basis for Plaintiff's claims (it plainly does not), it would still fail to support specific jurisdiction because there is no allegation that this conduct was *aimed* at California. The jurisdictional analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Daoud v. Societe Generale De Banque Au Liban, S.A.L.*, 2021 WL 3579359, at *3 (C.D. Cal. July 6, 2021) (Carney, J.) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). Making a statement outside of California, no matter how offensive, cannot count as a jurisdictional contact absent a description of how that act was aimed at this jurisdiction. *Compare Picot*, 780 F.3d at 1214-15 (statements by Michigan-based defendant made outside of California that led to disruption of California-based plaintiff's contracts were not "expressly aimed" at forum and so insufficient to support specific jurisdiction) *with Calder v. Jones*, 465 U.S. 783, 789-90 (1984) (finding jurisdiction where National Enquirer employees deliberately targeted California audience with defamatory comments about a California person and relied on sources in California for information in article). *See also Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070-71 (9th Cir. 2017) (where defendant emailed newsletter to over 300 recipients, ten of whom were physically located in California, "[i]t can hardly be said that California [was] the focal point both of the [newsletter] and of the harm suffered") (citations omitted).

**DEFENDANT COREY URMAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

c.    *Injury in California not foreseeable.*

Beyond the Amended Complaint's failure to allege intentional acts aimed at California, it separately fails to allege that Mr. Urman caused harm to Plaintiff that he knew would be suffered in California. *See AMA Multimedia*, 970 F.3d at 1209 (complaint must allege that defendant "caus[ed] harm that the defendant knows  is likely to be suffered in the forum state") (citation omitted).  Plaintiff fails to allege that Mr. Urman knew where Plaintiff resided or, even if he knew, that he foresaw that any injury would occur there.  *See Walden*, 571 U.S. 289-91 (defendant's knowledge that plaintiff had "strong" Nevada connections was insufficient to subject defendant to personal jurisdiction in Nevada where his alleged intentional tortious conduct occurred outside Nevada).  Ms. Fleites's alleged injuries are personal and would follow her wherever she might choose to live or travel.  *See Picot*, 780 F.3d at 1215.

**2.    Element Two: The Amended Complaint Fails to Establish that Plaintiff's Claims Arise Out Of or Result from Mr. Urman's Forum-Related Activities**

The Amended Complaint does not offer any basis to conclude that Plaintiff's claims arise or result from Mr. Urman's California-related conduct.  It cites no specific California-related activity by Mr. Urman at all so, by definition, it alleges no forum-related activity by Mr. Urman from which Plaintiff's claims arose.  *See AMA Multimedia*, 970 F.3d at 1209-12.

The only specific acts alleged in the Amended Complaint about Mr. Urman are his purported media attacks on Ms. Fleites in 2020 and his efforts to paint an allegedly false picture of MindGeek.  (AC ¶¶ 344, 246.)  But those allegations indicate only an alleged strategy to help MindGeek respond to public criticism and are completely divorced from any claim Plaintiff has made against Mr. Urman. Therefore, the alleged "disinformation campaign" cannot serve as the basis for any

9

claim of jurisdiction.  *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) (plaintiff must show a "direct nexus" between defendant's forum-related contact and her cause of action); *Doe v. Am. Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997) (holding that contacts that are "too attenuated" from the claims at issue do not satisfy the second element of specific jurisdiction).

### 3.    Element Three: Exercising Jurisdiction Over Mr. Urman Would Not Comport With Fair Play and Substantial Justice

Even if the Amended Complaint offered a basis for finding that Plaintiff had satisfied the first two prongs of specific jurisdiction, Plaintiff's effort to obtain specific jurisdiction would falter because of the obvious unfairness and injustice of hauling Mr. Urman into California from Canada where he lives and works.  *Doe v. Geller*, 533 F. Supp. 2d 996, 1009 (N.D. Cal. 2008) (granting motion to dismiss and noting the district court "is not an international court of internet law")  Although the burden on this last element shifts to Mr. Urman, courts recognize that a plaintiff "must meet a higher jurisdictional threshold than is required when the defendant is a United States citizen." *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993).  Moreover, due process requires that the court "weigh more heavily the expectations of and burdens upon the defendants than [it weighs] the hardships upon the plaintiff." *Rocke v. Canadian Auto. Sport Club*, 660 F.2d 395, 400 (9th Cir. 1981).

Courts consider seven factors in determining whether exercising jurisdiction over a foreign defendant is reasonable: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum

**DEFENDANT COREY URMAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Core-Vent Corp.*, 11 F.3d at 1487-88 (citation omitted). Here, the calculus heavily favors Mr. Urman, primarily because the events in question are, by Plaintiff's own allegations, centered in Canada (*e.g.*, AC ¶¶ 28, 58, 428) and because Canada offers Plaintiff redress.

> a.    *No purposeful interjection by Mr. Urman into California's affairs.*

The Amended Complaint does not allege that Mr. Urman targeted his conduct at California.    Even with respect to the alleged "disinformation campaign" (allegations that, again, are not the basis for any claim for redress), the Amended Complaint does not allege that Mr. Urman *purposefully directed* that conduct at California. *See Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981) ("The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise.").

> b.    *The burden on Mr. Urman to defend in California is enormous.*

Litigating in California would significantly burden Mr. Urman because he resides and works in, and is a citizen of, another country. *See Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.")*; Wargaming.net Ltd. v. BlitzTeam LLC*, 2021 WL 3619956, at *5 (C.D. Cal. Jan. 20, 2021) (Carney, J.) ("The Supreme Court has recognized that defending a lawsuit in a foreign country can impose a substantial burden on a nonresident defendant.") (citations omitted); *Ins. Co. of N. Am.*, 649

**DEFENDANT COREY URMAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

F.2d 1266 at 1272 ("The burdens on a defendant are of particular significance if, as here, the defendant has done little to reach out to the forum state.").

     *c.*  *The sovereignty of Canada would be adversely impacted.*

  Asserting jurisdiction over Mr. Urman raises conflicts with Canada's sovereignty, and "[t]he Ninth Circuit has held that when a 'defendant is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction.'" *Wargaming.net Ltd.*, 2021 WL 3619956, at \*5 (citing *Amoco Egypt Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 852 (9th Cir. 1993)). Canada has an interest in resolving disputes involving its own residents. *Paccar Int'l v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1065 (9th Cir. 1985); *Ins. Co. of N. Am.*, 649 F.2d 1266 at 1272 ("[F]oreign nations present a higher sovereignty barrier than that between two states within our union. This is only a recognition of what is obvious."); *Pesquera v. Perez*, 2021 WL 254193, at \*13 (N.D. Cal. Jan. 26, 2021) ("Sovereignty is especially important where a court's decision may conflict with the decision of a foreign court.") (citation omitted). The sovereignty concern weighs even more heavily here because Mr. Urman has no United States-based relationships. *See Core-Vent*, 11 F.3d at 1489 ("Sovereignty concerns weigh more heavily when the defendants have no United States-based relationships.").

     *d.*  *California's interest in adjudicating this dispute is satisfied without Mr. Urman.*

  Exercising jurisdiction over Mr. Urman is not necessary to satisfy California's interest in adjudicating this dispute. Plaintiff has no claims that are solely against Mr. Urman; instead every claim directed at Mr. Urman includes the MindGeek entities, two of which are not challenging jurisdiction. If any of Plaintiff's claims survive, she may obtain relief from those defendants, even if Mr. Urman is dismissed

as a defendant on jurisdictional grounds. Because California's interest in providing its residents an effective means of redress would be served even if Mr. Urman is dismissed as a defendant, exercising jurisdiction over Mr. Urman would not further that interest. *See Advantage Lift Systems, Inc. v. O.M.E.R., S.p.A.*, 1997 WL 398033, at \*8 (S.D. Cal. Mar. 19, 1997) (holding that because California's interest in adjudicating the dispute was satisfied by plaintiff's ability to obtain judgments against two corporate defendants who consented to personal jurisdiction, it would be unreasonable to exercise jurisdiction over individual foreign defendant).

> e.    *California is not the most efficient forum for this dispute.*

In considering the most efficient forum for this dispute, the Ninth Circuit "look[s] primarily at where the witnesses and the evidence are likely to be located." *Core-Vent*, 11 F.3d at 1489. Here, Canada is by far more a more efficient place to litigate this matter. First, all but one of the individual defendants are residents of Canada (the other being outside the United States as well), and almost all corporate defendants are located outside the United States. Second, Plaintiff's claims center on the loading of videos, their monetization, and the handling of her complaints, all of which are, by the Amended Complaint's own description, centered outside of the United States. (*See e.g.*, AC ¶¶ 114, 124; Andreas Andreou Decl. ISO MindGeek Defs.' Mot. to Dismiss Am. Compl. ("Andreou Decl."), ¶ 8, 17, 18, 33.) *See Wargaming.net*, 2021 WL 3619956, at \*5 (finding that the court is not the most efficient forum where "most, if not all, of the evidence and witnesses in this case are located overseas").

> f.    *Litigating in a California court is not essential to Plaintiff's convenient and effective relief.*

While the Plaintiff is a resident of California, "[a] mere preference on the part of the plaintiff for [her] home forum does not affect the balancing." *Core-Vent*, 11

13

F.3d at 1490. Moreover, almost all of the defendants, witnesses, and evidence are located outside California (indeed, outside the United States). In any event, even if this factor were to tip in Plaintiff's favor, its weight is marginal at best. *See Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1116 (9th Cir. 2002) ("the plaintiff's convenience is not of paramount importance."); *Core-Vent*, 11 F.3d at 1490. ("[N]either the Supreme Court nor [the Ninth Circuit] has given much weight to inconvenience to the plaintiff.").

### g.    An alternative forum exists.

The existence of an alternative forum is a powerful factor in the fairness/justice analysis. Here, an alternative forum unquestionably exists: Canada, where a class action asserting comparable claims is pending. In fact, that class action, which is open to this Plaintiff, attaches her initial complaint as an exhibit. *See* Amended Application for Authorization to Institute a Class Action and to Obtain the Status of Representative, *Jane Doe c. 9219-1568 Québec Inc. & als.*, No. 500-06-001115-209 (Can. Que. Sup. Ct. Nov. 29, 2021), *available at* https://www.registredesactionscollectives.quebec/en/fichier/document?nomfichier =8810.pdf (last visited May 23, 2022).[6] *See Wargaming.net Ltd.*, 2021 WL 3619956, at \*5 ("Plaintiff bears the burden of proving the unavailability of an alternative forum.") (original alterations omitted, citation omitted).

\*      \*      \*

---

[6] *See* Ex. 1 (filed with this memorandum). Mr. Urman respectfully requests that the Court take judicial notice of this pleading under Federal Rule of Evidence 201 and Federal Rule of Civil Procedure 44(a)(2) and/or 44.1. *See Metabyte, Inc. v. Technicolor S.A.*, 2021 WL 1721394, at \*5-7 (N.D. Cal. Apr. 30, 2021) (taking judicial notice of court filings in French action involving the same parties because they were matters of public record and "the existence and authenticity of these filings are not subject to reasonable dispute"); *De Fontbrune v. Wofsy*, 838 F.3d 992, 996-97 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Nov. 14, 2016) (holding courts may consider foreign legal materials at the pleading stage in ruling on a motion to dismiss).

In short, the weight of these seven factors overwhelmingly cuts against the exercise of jurisdiction over Mr. Urman. *See AMA Multimedia LLC*, 2017 WL 5668025, at *9 (D. Ariz. Sept. 29, 2017) (finding that the exercise of jurisdiction would not be reasonable even when the forum had an interest in adjudicating plaintiff's claims), *aff'd* 970 F.3d 1201 (9th Cir. 2020). *See also Wargaming.net Ltd.*, 2021 WL 3619956, at *6 (declining to exercise personal jurisdiction over foreign defendant where five of the seven reasonableness factors weighed against the exercise of jurisdiction).

## C. Plaintiff's Apparent Efforts To Remedy These Jurisdictional Deficiencies By Attributing To Mr. Urman The Actions Of Others Is A Futile End Run.

Plaintiff cannot overcome the deficiencies in her jurisdictional allegations against Mr. Urman by imputing any of MindGeek's conduct to him.

### 1. None of the MindGeek Entities' Conduct Can Be Imputed to Mr. Urman Under an Alter Ego Construct.

Plaintiff's effort to assign MindGeek's alleged conduct to Mr. Urman is ineffective. Even if Plaintiff had pled MindGeek's conduct adequately (she has not), imputing that conduct to Mr. Urman is legally unsupportable. "Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989); *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1109 (9th Cir. 2020) ("We do not impute a corporation's forum contacts to each of the corporation's employees.").

Plaintiff cannot overcome this legal principle by arguing that because certain MindGeek entities have conceded jurisdiction in California, and those entities are alter egos of other MindGeek entities, all of the MindGeek entities – whether ones

15

that have conceded jurisdiction or those over which Plaintiff seeks to establish jurisdiction by an alter ego analysis – are also alter egos of Mr. Urman. There are several reasons why an alter ego construct does not work with respect to Mr. Urman. In considering whether a plaintiff can make this argument, courts impose an especially high burden. *Incipio, LLC v. Argento Sc By Sicura Inc.*, 2018 WL 4945002, at *2 (C.D. Cal. July 18, 2018) ("[A] party accusing another of an alter ego relationship carries a high burden both at the pleading stage and on the merits."); *Hasso v. Hapke*, 227 Cal. App. 4th 107, 155 (2014) ("Alter ego is an extreme remedy, sparingly used.") (citation omitted). Specifically, Plaintiff must adequately allege factual bases for the court to determine "(1) that there is such unity of interest and ownership that the separate personalities of the corporation and the individuals no longer exist and (2) that failure to disregard the corporation would result in fraud or injustice." *Symettrica Ent., Ltd. v. UMG Recordings, Inc.*, 2019 WL 8806093, at *4 (C.D. Cal. Sept. 20, 2019) (citation omitted). Plaintiff cannot do so here.

> a. *Element 1: Plaintiff Fails to Allege Unity of Ownership and Interest.*

To establish the requisite "unity of interest and ownership," Plaintiff must allege that Mr. Urman owned the alleged alter ego and that he exercised "pervasive control . . . such as when a parent corporation 'dictates every facet of the subsidiary's business,'" including "matters of day-to-day operation" (*Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (citation omitted)) or disregarded any semblance of corporate formalities. *Reynolds v. Binance Holdings, Ltd.*, 481 F. Supp. 3d 997, 1006 (N.D. Cal. 2020) (refusing to find a foreign corporation was the alter ego of its U.S. subsidiary when plaintiff failed to show that the subsidiary "disregarded its corporate formalities" with the foreign corporation). *See Calvert v. Huckins*, 875 F. Supp. 674, 679 (E.D. Cal. 1995) (to establish alter ego status, plaintiff must show

16

1   that owner does more than "exercise the broad oversight" of company and set

2   "general policies," but instead demonstrate that he "control[s] 'how the company

3   will be operated on a day-to-day basis'") (citation omitted).

4       *First,* Plaintiff does not allege that Mr. Urman owned a controlling interest in

5   *any* of the MindGeek entities, much less the entity over which Plaintiff claims this

6   Court has jurisdiction.  While the Amended Complaint alleges that Mr. Urman is

7   part of the "Bro-Club," it does not allege that this "club" owned any of the entities

8   Plaintiff asserts were alter egos of its members.  And even if it did, that would not

9   satisfy the ownership element, for ownership is evaluated on an individual defendant

10  by individual defendant basis.  "Ownership of an interest in the corporation is an

11  essential part of the element of unity of ownership and interest.  *If an individual's*

12  *ownership is not established, the corporation's obligations cannot be imposed on*

13  *him or her*."  *Firstmark Cap. Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir.

14  1988) (emphasis added).

15      That alone is fatal.

16      *Second,* even if the Amended Complaint stated that Mr. Urman owned the

17  alleged alter ego entity, Plaintiff does not allege that Mr. Urman exercised the

18  requisite control or disregarded corporate formalities.  Plaintiff has failed to allege

19  that Mr. Urman *himself* used corporate assets as his own, commingled assets, treated

20  any corporation as a shell, or held himself out as a guarantor of a company's debts.

21  *See Allegro Consultants, Inc. v. Wellington Techs., Inc.*, 2014 WL 4352344, at *6

22  (N.D. Cal. Sept. 2, 2014) (plaintiff failed to make prima facie case of personal

23  jurisdiction over company's co-founder where complaint did not allege that

24  defendant comingled funds, treated corporate assets as his own, disregarded legal

25  formalities, failed to maintain arm's length relationships among related entities, or

26  diverted or manipulated corporate assets).

27

28
**DEFENDANT COREY URMAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

Indeed, Plaintiff does nothing more than recite, in formulaic fashion, that the MindGeek "business" or "organization" (as opposed to Mr. Urman) acted to disregard corporate formalities, commingled funds, issued shares to himself, failed to keep corporate records, used the same locations and employees as the companies in question, inadequately capitalized them, siphoned off capital and diverted capital. (AC ¶¶ 31-32.) Moreover, these conclusory allegations do not suffice to support an alter ego finding for anyone in this case under any circumstances.[7] *See, e.g. Symettrica*, 2019 WL 8806093, at *4 (holding complaint deficient because it contained "only conclusory statements which allege that there is a unity of interest between [company] and the director defendants" and, as support for these conclusions, offered only that the company "is undercapitalized, fails to undertake corporate formalities, and that the director defendants co-mingled [company's] funds with their own); *Ewing v. Encor Solar, LLC*, 2019 WL 277386, at *5 (S.D. Cal. Jan. 22, 2019) ("perfunctory and conclusory statements not supported by facts" are insufficient to support alter ego finding); *MH Pillars Ltd. v. Realini*, 2017 WL 916414, at *14 (N.D. Cal. Mar. 8, 2017) (complaint deficient where "it contains primarily conclusory allegations that merely recite the factors considered by courts when evaluating alter ego claims"); *Sihler v. Fulfillment Lab, Inc.*, 2020 WL 7226436, at *6 (S.D. Cal. Dec. 8, 2020) (rejecting alter ego assertion where plaintiffs' "sole conclusory allegation" that defendants are "alter egos" was not factually supported); *Calvert*, 875 F. Supp. at 678 (allegations were insufficient to establish one corporate entity as the alter ego of another, even with ownership interests among the entities; interlocking directors and officers; incorporation of one entity's figures into another's financial reports; one entity guaranteed at least one

---

[7]    As discussed in the Andreou Declaration, these allegations also are not true.

18

promissory note of the other's; and counsel for one entity provided legal services to the other).

These formulaic allegations regarding ignoring corporate formalities are especially deficient where, as Plaintiff knows from the briefing on her initial complaint, a person connected to the MindGeek entities has offered an affidavit rejecting any such insinuation. (ECF No. 70-2.) Plaintiff utterly ignores the fact that MindGeek already has offered proof that each MindGeek entity is adequately capitalized and obeys corporate formalities. (*Id.*) And MindGeek has done so again in even greater detail in its current briefing. (MindGeek Defs.' Mot. to Dismiss Am. Compl., at 52-54.) *See Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) (holding that courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit"); *Gofron v. Picsel Techs., Inc.*, 804 F. Supp. 2d 1030, 1037 (N.D. Cal. 2011) (concluding plaintiffs could not rest on allegations to establish jurisdiction where defendant nonresident company had submitted an affidavit contradicting their allegations).

In short, Plaintiff cannot use the alter ego doctrine to make up for Plaintiff's failure to offer a basis to assert personal jurisdiction over Mr. Urman.

> b.  *Element 2: Plaintiff Has Not Alleged that Mr. Urman Acted In Bad Faith or that Injustice Would Result From a Denial of an Alter Ego Relationship.*

Even if Plaintiff could demonstrate that her allegations were sufficiently specific to demonstrate an alter ego relationship between Mr. Urman and a MindGeek entity over which the Court has jurisdiction, she has not satisfied the second independent alter ego element: bad faith and injustice. Plaintiff must show that Mr. Urman acted in bad faith in disregarding corporate formalities *and* that it would be unjust not to recognize the companies in question as his alter egos. *See Calvert*, 875 F. Supp. at 679 ("Even if plaintiffs had made a sufficient prima facie

19

showing of control, defendants' motion [to dismiss] would still be granted since plaintiffs have produced no evidence whatsoever going to the second requirement for piercing the corporate veil--that failure to do so would 'sanction a fraud or promote injustice'") (citation omitted).

*First,* the Amended Complaint fails this injustice requirement because it does not allege that *Mr. Urman was responsible* for making illusory any corporate distinctions *and* that he did so in bad faith. *See NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 992 (E.D. Cal. 2012) ("To prove injustice, the plaintiff must be more than just a creditor attempting to recover on unsatisfied debts; it must show that a defendant's conduct amounted to bad faith."); *Symettrica*, 2019 WL 8806093 at *5 (holding that the alter ego theory failed on the second prong because plaintiff offered no factual information to support its claims of bad faith).

*Second,* the Amended Complaint does not allege why it would be unjust to Plaintiff if an alter ego construct were not imposed. Indeed, that would be impossible where, as here, an already filed affidavit from a corporate representative states that each of the defendant entities in the initial complaint is adequately capitalized so recovery could be obtained. In fact, the Amended Complaint alleges that MindGeek generates "an enormous amount of revenue—over $460 million in 2018." (AC ¶ 43.) Thus, Plaintiff cannot satisfy the "injustice" element if she can recover a judgment against other defendants.

In addition, an existing complaint in Canada affords Ms. Fleites the opportunity to participate in a lawsuit against these same individuals and entities. *See* Ex. 1; *Shimmick Constr. Co., Inc. v. Officine Meccaniche*, 2014 WL 5847440 at *7 (S.D. Cal. Nov. 12, 2014) (where plaintiff alleged that one alter ego corporation was insolvent, the fact that he could "seek redress" from remaining defendants meant he was unable to satisfy "injustice" prong of alter ego test).

20

Absent such allegations of injustice, the Amended Complaint fails to establish that "fraud and injustice" would result if the corporate forms are respected. *See Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) ("The injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, it is the injustice that results only when corporate separateness is illusory.").

### 2. Plaintiff cannot impute to Mr. Urman the activities of the MindGeek entities under a guiding spirit construct.

Absent allegations that Mr. Urman perpetrated the specific activity Plaintiff complains of, there is no basis for attributing corporate actions to him under the guiding spirit doctrine either. Allegations that Mr. Urman "directed" and "implemented" MindGeek's alleged "embrace of illegal content" (AC ¶¶ 171-72) are insufficient to remedy this deficiency. *See Symettrica*, 2019 WL 8806093, at *3 (finding that defendants were not "the guiding spirit" or the "central figures" behind the alleged wrongful conduct where the complaint offered "only conclusory allegations" that defendant "specifically authorized, directed, or participated in the wrongful conduct"). Illustrating how demanding the "guiding spirit" pleading rules are is a decision by this District holding that it was insufficient to allege that a defendant controlled advertising at the company and even authorized the offending ad in question. *Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.*, 880 F. Supp. 743, 751 (C.D. Cal. 1995). Instead, as the court held, plaintiff had to allege that the defendant participated *in the development of the specific ad*. *Id*. *See also Brown v. General Steel Domestic Sales, LLC*, 2008 WL 2128057, at *12 (C.D. Cal. May 19, 2008) (allegations that individual defendant was the "principal" of the company who "formulates, controls, directs, supervises, perpetuates, manages and has knowledge of and acquiesces in the practices and policies" of the company" were

21

not enough to establish he was the "guiding spirit" behind company's allegedly misleading advertising because it did not allege facts showing that he was "personally responsible for" or had "authorized" the advertisements).

These requirements make perfect sense: "[i]f general allegations of managerial responsibilities . . . were sufficient to establish specific jurisdiction in this case, specific jurisdiction would extend to a company's officers in virtually every case where it extended to the company itself.  That result is inconsistent with Ninth Circuit precedent." *Cisco Systems*, 2019 WL 6682838, at *4.  The fiduciary shield doctrine requires far more.

The Amended Complaint does not cite a single email, phone call, text, document, or conversation to support the notion that Mr. Urman was the guiding spirit behind the loading (down or up) of Plaintiff's videos, their alleged monetization or the handling of her complaints.  Accordingly, Ms. Fleites's allegations do not provide a basis for utilizing the guiding spirit doctrine.

### 3. Plaintiff cannot impute to Mr. Urman the activities of the MindGeek entities (or any other defendant) by lumping them together in an undifferentiated mass.

The Amended Complaint alternatively tries to rope Mr. Urman into this lawsuit by lumping him together with other defendants in an undifferentiated mass.  In effect, Plaintiff tries to paper over her inability to attribute sufficient conduct to Mr. Urman by including his name in paragraphs of activity she assigns to others.  This misguided effort fails to meet the most basic pleading standard because it does not allow Mr. Urman to know which of his actions caused Plaintiff to accuse him.  *See Shin v. Time Squared Glob., LLC*, 2015 WL 13284952, at *2 (C.D. Cal. Aug. 26, 2015) (under *Iqbal* and *Twombly*, "[p]laintiffs must give the defendants a clear statement about what the defendants allegedly did wrong").

Lumping a defendant together with others – group pleading – violates the most basic tenets of Rule 8. *See e.g.*, *Beatport LLC v. SoundCloud Ltd.*, 2020 WL 3977602, at *5 (C.D. Cal. July 13, 2020) ("[I]t is a basic pleading defect for a complaint to 'lump' parties together and to fail to distinguish between named defendants."); *Littleton v. Experian Info. Sols., Inc.*, 2015 WL 4638308, at *2 (N.D. Cal. Aug. 4, 2015) (ruling that "everyone did everything allegation[s]" provide insufficient notice under Rule 8); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 2015 WL 12777092, at *10 (C.D. Cal. Oct. 23, 2015) (rejecting alter ego allegations based on group membership as "insufficient to plausibly show [the individual defendant's] unity and control over the alleged network, and the mere inclusion of [her] with the [alleged network] does not overcome the deficiency"); *Doe v. WebGroup Czech Republic*, No. 2:21-cv-02428-VAP-SK, ECF. No. 161, Order Granting Motions to Dismiss at *20-22 (C.D. Cal. Jan. 5, 2022) (dismissing claims against defendants because the complaint "fails to sufficiently attribute allegations to [the defendants]," "comingles the Defendants together throughout much of the pleading, without identifying which entities are responsible for the conduct underlying the claims," "fail[s] to specify each Defendant's culpability adequately," and "does not adequately identify the allegations against them."); *State Comp. Ins. Fund v. Khan*, 2013 WL12132027, at *4 (C.D. Cal. July 30, 2013) (noting complaint's failure to plead the role of each defendant in the scheme because it used "group pleading," which "ma[de] it unclear which allegations were directed at which defendants").

Not only does group pleading fail to give adequate notice, but it also reflects the sloppiness that pervades the Amended Complaint. Throwing Mr. Urman into an undifferentiated mix inevitably leads to internal contradictions. The Amended Complaint repeatedly ascribes to him group activities that are not even consistent

23

with each other. For example, despite generally claiming that Mr. Urman "does wield control over the operation of all MindGeek entities" (AC ¶ 28), the Amended Complaint alleges that a "core group of 'bosses' controlled all the elements of MG's business" (AC ¶ 78), but never defines that "core group" to include Mr. Urman. Plaintiff also goes on to allege an undifferentiated group called the Bro-Club exercised control, yet it was under the control of others in that same group (*e.g.,* AC ¶ 4 (wealthy owners were "over bosses"); ¶ 100 (Mr. Bergmair consulted for "approvals" on major decisions)).

In short, the Amended Complaint uses impermissible group pleading to impute to Mr. Urman the alleged activities of others.[8]

### 4. Plaintiff Cannot Impute to Mr. Urman the Activities of Others under Agency Principles.

Plaintiff also appears to assert personal jurisdiction over Mr. Urman by alleging that certain MindGeek entities were his agents. (AC ¶ 35.) Agency is no longer a recognized basis for personal jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 134-35 (2014). In any event, other than conclusory allegations that all of the MindGeek defendants are agents of each other, the Amended Complaint makes no factual assertion that any MindGeek entity was acting *for Mr. Urman* or under his control (as discussed earlier). *See e.g.*, *Wood v. N. Am. Van Lines, Inc.*, 2021 WL 3124155, at *5 (C.D. Cal. July 22, 2021) (finding no specific jurisdiction over non-resident where there was no showing that the non-resident exercised substantial control over the in-forum activities relevant to plaintiff's claims).

---

[8]    The conduct of others that Plaintiff seeks to impute to Mr. Urman through group pleading is independently insufficient. As a result, there is nothing legally sufficient to impute even if group pleading were permitted. As the MindGeek corporate defendants and the other individual defendants have explained, all of the alleged conduct attributed to them also fails to satisfy the necessary pleading standards.

24

### D. Plaintiff Cannot Overcome Her Jurisdictional Deficiencies By Invoking Rule 4(k) or Inapplicable Statutes.

Plaintiff asserts that this Court can assert long-arm jurisdiction over Mr. Urman using Fed R. Civ. P. 4(k), 18 U.S.C. § 1965, and 18 U.S.C. § 2255. None is applicable.

### 1. Rule 4(k)

Rule 4(k) applies when a defendant has "ample contacts with the nation as a whole, but whose contacts are so scattered among states that none of them would have jurisdiction." *ISI Int'l v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001) (citation omitted). When assessing nationwide contacts under Rule 4(k), "[t]hat bar is relatively high." *Fumoto Giken Co. Ltd. v. Mistuoka*, 2015 WL 12766167, at *4 (C.D. Cal. Apr. 16, 2015). *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002) ("Thus, the rule provides for what amounts to a federal longarm statute in a narrow band of cases in which the United States serves as the relevant forum for a minimum contacts analysis.").

The absence of any allegations that Mr. Urman had contacts with the United States renders Rule 4(k) inapplicable. In addition to alleging no conduct by Mr. Urman in California, the Amended Complaint alleges no conduct by him in the United States or expressly directed at the United States – a fundamental requirement of Rule 4(k). This defect is not remedied by alleging that Mr. Urman initiated or coordinated a "disinformation campaign" (discussed earlier to show why it could not constitute contacts with California). That conduct does not underlie Plaintiff's claims and, even if it did, would fall woefully short. *See Axiom Foods, Inc.*, 874 F.3d at 1072 (denying jurisdiction pursuant to Rule 4(k) where defendant's only contact with the United States was sending a newsletter to companies in the United

States, and holding that such contacts "can only be described as scant, fleeting, and attenuated") (citation and internal quotation marks omitted).

Nor can Plaintiff establish contact with the United States by alleging that Mr. Urman worked for a website that was accessed in the United States. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159-60 (9th Cir. 2006) (holding that defendant's U.S. domain name and its services to Americans not enough to establish jurisdiction under Rule 4(k)(2) because these arguments "go to effects rather than express aiming"). This fails for several reasons.

*First*, as the declaration submitted by the MindGeek establishes, there are no servers in the United States that host the kind of content at issue in the Amended Complaint. (Sean Rochette Decl. ISO MindGeek Defs.' Mot. to Dismiss Am. Compl., ¶ 4.)

*Second,* the Amended Complaint does not link Mr. Urman to the website that purportedly offered content in the United States. The Amended Complaint links Mr. Urman to 9219-1568 Quebec, Inc. without alleging that that entity owned the website in question.

*Third,* even if the Amended Complaint linked Mr. Urman to the entity that ran the website on which Plaintiff's videos were displayed, and the website was disseminated by U.S.-based servers (neither of which is true), employment by a company with a website accessible in the United States is not enough on its own to confer jurisdiction. Plaintiff must allege that Mr. Urman was the force behind that dissemination. *See Glob. Commodities Trading Grp., Inc.*, 972 F.3d at 1109-10.

*Fourth,* even if Plaintiff alleged that Mr. Urman disseminated the offending content on websites operated through servers located in the United States, that too would fall short. *See AMA Multimedia*, 970 F.3d at 1205, 1212 n. 9 (refusing to exercise personal jurisdiction even where the foreign defendant registered two

**DEFENDANT COREY URMAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

domain names in Arizona and entered into an agreement with a U.S. company because "nothing more than [plaintiff's] contested bare allegations support any personal involvement by [defendant] in uploading, encouraging the uploading, or intentionally failing to remove the infringing content"); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419-20 (9th Cir. 1997) (website that is available nationally without targeting any particular forum does not support personal jurisdiction, even where forum resident reaches out to website).

## 2.    18 U.S.C. § 1965

Section 1965 does not apply because it requires a defendant to be served in the United States, and that did not occur here. *See Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1184 (C.D. Cal. 1998), *aff'd*, 248 F. 3d 915 (9th Cir. 2001) ("RICO does not apply where, as here, the defendant is served outside of the United States."). In waiving service, Mr. Urman preserved his jurisdictional arguments, "retain[ing] all defenses or objections to the lawsuit or *to the jurisdiction* or venue of the court except for objections based on a defect in the summons or in the service of the summons." (ECF No. 33 (Urman Waiver of Service of Summons) (emphasis added).) And Plaintiff is keenly aware of this, having stipulated that Mr. Urman was signing the waiver from outside the United States. (ECF No. 31 (Stipulation) at 2-3 (stating that the Individual Defendants "are foreign citizens residing outside the United States and the waiver request was sent to them outside any judicial district of the United States; . . . and Individual Defendants expressly reserve all defenses or objections to this lawsuit *(including lack of personal jurisdiction)*, except as to service or the absence of service.") (emphasis added).) *See e.g., Perkumpulan Inv. Crisis Ctr. Dressel-WBG v. Wong*, 2012 WL 13024801, at *8 (W.D. Wash. Apr. 6, 2012) (holding that "alternative service" under the Federal Rules does not constitute the requisite "service" under the RICO statute).

27

### 3.    18 U.S.C. § 2255

Section 2255 is equally inapplicable.   This provision broadens a state's jurisdiction to other states where the defendant resides or is found.  18 U.S.C. § 2255(c)(2) (service is authorized "in any district in which the defendant—(A) is an inhabitant; or (B) may be found.").  Mr. Urman resides and is found in Canada—not in another U.S. state—as the Amended Complaint, waiver and stipulations make abundantly clear.  (AC ¶ 28; ECF Nos. 31, 33.)

### E.    Plaintiff Cannot Excuse Her Jurisdictional Failures By Seeking Jurisdictional Discovery

In her recent motion to secure a discovery schedule, Plaintiff indicated that she will seek jurisdictional discovery. (ECF No. 129 at 4 n.2.)  But Plaintiff cannot avoid her failure to adequately allege personal jurisdiction over Mr. Urman by insinuating that she cannot do any better because MindGeek is cloaked in "secrecy." *See, e.g.,* AC ¶ 5 ("MindGeek "insist[s] on extreme secrecy").  Rule 8 requires a plaintiff to plead adequate facts, not to sue in the hope of using discovery to learn enough to support her claims.

Binding authority establishes that jurisdictional discovery is not proper without some basis in the complaint to infer that it could yield additional pertinent jurisdictional facts.  *See Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (affirming denial of jurisdictional discovery because plaintiffs stated only that they "believe[d]" discovery would enable them to demonstrate personal jurisdiction and did not provide any specific facts); *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (affirming denial of jurisdictional discovery where the request was based "on little more than a hunch that it might yield jurisdictionally relevant facts" even after taking as true the plaintiff's complaint and his affidavit in opposition to defendant's motion to dismiss); *Getz v.*

28

*Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011) (affirming denial of jurisdictional discovery where plaintiffs made only "speculative allegations of attenuated jurisdictional contacts" and failed to identify any "specific facts, transactions, or conduct" that would give rise to personal jurisdiction); *Stewart v. Screen Gems-Emi Music, Inc.*, 81 F. Supp. 3d 938, 959 (N.D. Cal. 2015) (holding that plaintiff must provide ample reason to conclude that discovery would establish both unity of interest and injustice elements of alter ego theory).

These rules apply even when a plaintiff claims that she needs information uniquely known to the defendant she is trying to sue. *See New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (in Rule 12(b)(6) context, Rule 8 applies "even when the information needed to establish a claim . . . is solely within the purview of the defendant or a third party."); *Martinez v. Manheim Cent. Cal.*, 2011 WL 1466684, at *4 (E.D. Cal. Apr. 18, 2011) (noting that to obtain jurisdictional discovery, a plaintiff is required "to establish a 'colorable basis' for personal jurisdiction before discovery is ordered.") (citation omitted).

This Court's decision in *Brophy v. Almanzar*, 359 F. Supp. 3d 917 (C.D. Cal. 2018) provides a good illustration. There, plaintiff gained jurisdictional discovery only after offering specific conduct by defendants in California that fell short of establishing jurisdiction but gave every indication that discovery would prove fruitful: alleging that defendants promoted an important recording in California, sent copies of the recording to California companies, and attended events in California. *Id.* at 924-25. *See also Smartmatic USA Corp. v. Fox Corp.*, 2022 WL 685407, at *28 (N.Y. Sup. Ct. Mar. 8, 2022) ("This Court has the discretion to grant jurisdictional discovery, but only where a plaintiff makes a 'sufficient start' demonstrating that there is some basis for long-arm jurisdiction over the defendant [in New York]," such as allegations that the non-domiciliary defendants used their

29

New York bank accounts to further their misdeeds, contracted to provide goods for New York clients, and traveled to New York for business") (citations omitted).

Plaintiff's alleged need for discovery to establish jurisdiction is also belied by the allegations set forth in her Amended Complaint. Over *65 paragraphs* of her complaint are expressly based on alleged "reports" from "insider[s]," "whistleblower[s]," and "former employee[s]." *See e.g.*, AC ¶ 53 (quoting an "insider" to describe conduct by MindGeek's "executive 'bosses'"); ¶ 73 (quoting an "insider" about the operations of the "Bro-Club"); ¶ 79 (quoting a "former employee" about how the "Bro-Club" "groomed" employees to support illegal activities); ¶ 81 (quoting "one whistleblower" about the operation of the "Bro-Club"); ¶ 85 (quoting a "whistleblower" about secrecy within the "Bro-Club"). While none of these alleged insider insights is credible, the larger point is that Plaintiff herself claims to know plenty of information about these entities from within.

In short, Plaintiff's invocation of secrecy as an excuse for jurisdictional discovery is insufficient and her request for discovery is "nothing more than a fishing expedition." *See Symettrica*, 2019 WL 8806093, at *5.

## II.   SECTION 230 EXEMPTS MR. URMAN FROM THIS LAWSUIT

Even if there were personal jurisdiction over Mr. Urman, all of Plaintiff's claims against him are barred by Section 230 of the Communications Decency Act ("Section 230").   Section 230 exempts Interactive Computer Service ("ICS") providers from liability for the postings of other individuals loaded to the ICS site. 47 U.S.C. § 230(c).  That protection independently applies to individuals, like Mr. Urman, who work for an ICS. *See Klayman v. Zuckerberg*, 753 F.3d 1354, 1357-58 (D.C. Cir. 2014) (holding that the CEO of Facebook is entitled to Section 230 immunity because "he is a 'provider' of Facebook's interactive computer service.");

DEFENDANT COREY URMAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

*La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 993 (S.D. Tex. 2017) (holding that Facebook executives are "entitled to CDA immunity"); *Barrett v. Rosenthal*, 40 Cal. 4th 33, 59 (2006) (Section 230 "confers immunity on" individuals who operate website).

No Section 230 exception, including FOSTA, applies to Mr. Urman. That exception would require that Plaintiff sufficiently allege that Mr. Urman added to whatever illegality attached to those videos. *See Doe v. MindGeek USA Inc.*, No. 8:21-cv-00338-CJC-ADS, ECF No. 66 (C.D. Cal. Sept. 3, 2021). Ms. Fleites nowhere alleges that Mr. Urman had anything to do with the creation of her videos or their subsequent display and handling. The Amended Complaint does not connect Mr. Urman to the individuals who manipulated Plaintiff, the unidentified individuals who uploaded her videos, or to the alleged tagging and promotion of the videos. Accordingly, there is no basis to suggest that Mr. Urman did anything to contribute materially to the creation or display of the videos or render more unlawful the content created by others.[9]

## III.  ALL OF PLAINTIFF'S CLAIMS AGAINST MR. URMAN ARE SUBSTANTIVELY DEFICIENT

Even if Plaintiff could establish personal jurisdiction *and* overcome Mr. Urman's Section 230 immunity, Plaintiff's claims against him still should be dismissed because they are inadequately pled.

### A.    The TVPRA Claims (Counts I, II, IV)

Plaintiff's Trafficking Victims Protection Reauthorization Act ("TVPRA") claims, 18 U.S.C. §§ 1591(a)(1), 1591(a)(2), 1594(c), and 1595, are deficient.

---

[9]  Apart from Mr. Urman's unique arguments for Section 230 immunity, MindGeek separately and effectively argues for Section 230 immunity on the basis of several critical factors. (MindGeek Defs.' Mot. to Dismiss Am. Compl., at 6-10.)

31

1    The TVPRA punishes those who traffic underage individuals or benefit from

2    that trafficking.  18 U.S.C. § 1591(a).  Whether a defendant is sued for engaging in

3    the trafficking or benefiting from it, a plaintiff must allege that the defendant

4    "recruit[ed], entice[d], harbor[ed], transport[ed], provide[d], obtain[ed],

5    advertise[d], maintain[ed], patronize[d], or solicit[ed] by any means a person"

6    knowing that he or she "will be caused to engage in a commercial sex act."  18

7    U.S.C. § 1591(a).

8        In the 14 paragraphs describing the history of Plaintiff's videos, Mr. Urman's

9    name is not mentioned once, nor is he even alluded to.  Not once does Plaintiff allege

10   that Mr. Urman directed, implemented or controlled anything relating to the creation,

11   posting, handling, reuploading or monetizing of *her* videos.

12       In other words, Plaintiff never alleges that *Mr. Urman* did anything that would

13   demonstrate he engaged in any one of these illegal activities.  *See U.S. v. Afyare*,

14   632 Fed. Appx 272, 285-86 (6th Cir. 2016) (requiring an "overt act" by defendant

15   that furthers the sex trafficking aspect of the venture for liability under Section

16   1591(a)(2)).  The Amended Complaint alleges that Plaintiff  was victimized by two

17   boyfriends when she was underage but is silent about any purported connection

18   between Mr. Urman and those people—or that Mr. Urman ever knew of them.  (AC

19   ¶¶ 258-69.)

20       Instead, Plaintiff impermissibly lumps Mr. Urman in with "MindGeek" in a

21   conclusory and undifferentiated way, asserting that Mr. Urman, among others,

22   helped control, direct, and implement MindGeek's activities in general.    As

23   discussed earlier, alleging that *MindGeek* or the collective "MindGeek Defendants"

24   benefitted is not sufficient to plead a claim against Mr. Urman.  *See Beatport LLC*,

25   2020 WL 3977602, at *5; *U.S. v. United Healthcare Ins. Co*., 848 F.3d 1161, 1184

26

27                                          32

28   **DEFENDANT COREY URMAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
     **MOTION TO DISMISS AMENDED COMPLAINT**

1    (9th Cir. 2016) (noting "failure to allege particular details" for specific defendants

2    due to complaint's "collective allegations").

3        Indeed, while knowledge alone would not be sufficient, the Amended

4    Complaint does not even allege that Mr. Urman was aware that Plaintiff's videos

5    were being uploaded, downloaded, or treated in the manner Plaintiff claims. That

6    plainly falls below the required pleading threshold for alleging involvement in

7    Plaintiff's trafficking. *See Afyare*, 632 F. App'x at 285 ("The defendant's mere

8    membership in the venture is insufficient if he is ignorant of the venture's sex

9    trafficking activities (and the means and methods thereof)."); *Doe v. Kik Interactive,*

10   *Inc.*, 482 F. Supp. 3d 1242, 1251 (S.D. Fla. Aug. 31, 2020) (dismissing TVPRA

11   claim where plaintiff did not allege facts "that would plausibly establish that

12   Defendants knowingly participated in the sex trafficking venture involving

13   [plaintiff]" and instead alleged "that Defendants knew that other sex trafficking

14   incidents occurred on Kik"); *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL

15   4368214, at *5 (N.D. Cal. July 30, 2020) (holding that plaintiffs failed to make a

16   plausible claim that defendants directly participated in the trafficking of plaintiff

17   because the complaint was "devoid of any facts linking *these Defendants* . . . to the

18   sex trafficking of *this Plaintiff*") (emphasis in original); *Doe v. Reddit, Inc.*, No.

19   8:21-cv-00768-JVS-KES, ECF No. 58, at 13 (C.D. Cal. Oct. 7, 2021) (holding that

20   allegations of "affiliations with sex traffickers by enabling the posting of child

21   pornography on its websites" and "making it easier to connect traffickers with those

22   who want to view child pornography" are legally insufficient to allege

23   "participation").

24       The same defects undercut the viability of any claim against Mr. Urman based

25   on his purportedly benefitting from Plaintiff's trafficking. *See Geiss v. Weinstein*

26   *Co. Holdings LLC*, 383 F. Supp. 3d 156, 169-70 (S.D.N.Y. 2019) (receiving

27

33

28   **DEFENDANT COREY URMAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
     **MOTION TO DISMISS AMENDED COMPLAINT**

1  compensation from entity engaged in sex trafficking is not a benefit for purposes of

2  Section 1591(a)(2) because "there must be a causal relationship between affirmative

3  conduct furthering the sex-trafficking venture and receipt of a benefit, with . . .

4  constructive knowledge of that causal relationship."). The Amended Complaint fails

5  to allege how Mr. Urman individually benefitted from the alleged trafficking. The

6  mere fact that Mr. Urman worked for a company that collects advertising revenue is

7  not enough to prove that he received the kind of benefit the TVPRA requires to hold

8  him personally responsible.[10]  *See Afyare*, 632 F. App'x at 285 (requiring overt

9  conduct).

**B.    Distributing CSAM  (Counts V, VI)**

11  Plaintiff alleges violations of 18 U.S.C. §§ 2252, 2252A, 2255. Sections 2252

12  and 2252A punish individuals who knowingly transport, distribute, sell, receive,

13  possess, reproduce, advertise, promote, present, or solicit visual depictions of minors

14  engaging in sexually explicit conduct. 18 U.S.C. §§ 2252, 2252A. Section 2255

15  provides a private right of action for violations of sections 2252 and 2252A. 18

16  U.S.C. § 2255.

17  These claims lack merit because Plaintiff fails to allege that Mr. Urman

18  transported, received, distributed, reproduced, advertised, promoted, presented, or

19  solicited any video of underage sex, much less Plaintiff's video, or that he did so

20  knowingly.

**C.    RICO (Counts VII, VIII)**

22  There are multiple, fatal deficiencies in Plaintiff's RICO claims.[11]

---

24  [10]    As the MindGeek entities point out, the Amended Complaint does not sufficiently allege that they participated in a manner that meets the requirements of the TVPRA. (MindGeek Defs.' Mot. to Dismiss Am. Compl., at 14-18.)
26  [11]    As part of the overall MindGeek arguments in which Mr. Urman joins, MindGeek has pointed out additional defects in Plaintiff's RICO claims. (MindGeek Defs.' Mot. to Dismiss Am. Compl. , at 20-40.)

34

### 1.    Common purpose:

To satisfy this element, a plaintiff must allege how each member of the enterprise worked together, delineating their roles and interactions. Other than conclusory allegations placing Mr. Urman in the "Bro-Club" (and even these defective allegations do no more than list Mr. Urman without describing his role), the Amended Complaint is silent on his role in the purported enterprise and how he interacted with other members of the enterprise. That flaw is fatal. *Doan v. Singh*, 617 Fed. Appx 684, 686 (9th Cir. 2015) (rejecting RICO claim because it was not clear from allegations "what exactly each individual did, when they did it, or how they functioned together as a continuing unit.").

### 2.    Enterprise:

An "associated-in-fact" enterprise cannot be an entity comprised solely of a company and its investors, officers and employees. *See, e.g.*, *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) ("To be sure, if the 'enterprise' consisted only of DuPont and its employees, the pleading would fail for lack of distinctiveness."); *In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *12 (S.D.N.Y. July 15, 2016) ("A corporation carrying out its own activities (even fraudulent ones) only through its agents and employees does not constitute an enterprise."); *In re Juul Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 601 (N.D. Cal. 2020) ("To constitute an [associated-in-fact] enterprise, the presence of some third-party, separate and apart from the company and its officers and employees, is necessary."). Once Visa is eliminated as a co-defendant (as it will be), all that remains are the MindGeek entities and individuals allegedly connected to MindGeek.

Moreover, the Amended Complaint lacks any allegation of a structure of the alleged enterprise apart from the alleged racketeering activity. *See Johnson v. JP*

35

*Morgan Chase Bank*, 2008 WL 1925026, at *4 (E.D. Cal. Apr. 29, 2008) (dismissing section 1962(c) claim where complaint "lacks facts to support an enterprise which exists independently from alleged racketeering activity"); *see also Clark v. Nat'l Equities Holdings, Inc.*, 561 F. Supp. 2d 632, 639 (E.D. Tex. 2006) (claims that defendants participated in RICO enterprise involving investor "scamming" held insufficient because they "failed to establish that this enterprise exists as an entity separate and apart from the pattern of illegal activity").

### 3.    Pattern of racketeering:

A complaint must allege that each defendant engaged in at least two racketeering acts. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 2012 WL 713289, at *6 (N.D. Cal. Mar. 5, 2012) (RICO claim's "requirements *must be established as to each individual defendant*.") (emphasis added; citation omitted); *Prime Partners IPA of Temecula, Inc. v. Chaudhuri*, 2012 WL 1669726, at *11 (C.D. Cal. May 14, 2012) ("Plaintiffs fail to delineate how any of these individual defendants independently participated in the operation or management of the enterprise, much less how they did so through the alleged pattern or patterns of racketeering activity.").

The Amended Complaint purports to plead a number of recognized racketeering acts (for example, violations of TVPRA or Section 2255) but, as discussed above under each of those counts, the Amended  Complaint fails to reference the requisite specific activity by Mr. Urman to allow those statutes to serve as a basis for Mr. Urman's two acts.  This leaves Plaintiff with only one alleged activity by Mr. Urman to satisfy his pattern requirement: wire fraud.  But while wire fraud (18 U.S.C. §1343) is a recognized racketeering act, the one specific activity ascribed to Mr. Urman as a wire fraud (the alleged "disinformation campaign" described in AC ¶¶ 311-12, 323, 325-26, 328-30, 332-33, 336-37, 344, 346, 349-51)

36

cannot be the basis for a wire fraud claim and, therefore, for the required racketeering act.

Read charitably, the Amended Complaint asserts that Mr. Urman conducted a "disinformation campaign" by allegedly lying to the Canadian House of Commons and the public about MindGeek's efforts to run a lawful operation, and by harassing Plaintiff after she was featured in a *New York Times* article in December 2020.[12] *See, e.g.,* AC ¶¶ 447, 453-54. But even if these alleged activities could help explain how MindGeek weathered criticism and survived, they fail to supply a basis for satisfying the pattern requirement.

   a.   *False messaging, lies to the public and smear campaigns.*

False messaging and smear campaigns against critics and lies to the public are not activities that affected Plaintiff. In fact, every message listed by Plaintiff as an alleged wire fraud was sent to someone *other than* Ms. Fleites. (AC ¶ 451.) This Court recognized this deficiency in its severance order, noting that not every allegation about a "sprawling criminal enterprise" is a pattern or practice that caused a plaintiff's "specific injuries." (ECF No. 119, at 13.)

In addition, even if Plaintiff could satisfy her pattern requirement by a fraud against someone other than herself, a general fraud on the public falls far short. Nowhere is any person identified as a victim of those allegedly fraudulent statements.

Further, even if the Amended Complaint adequately identified victims of the alleged fraud, Plaintiff has simultaneously undercut her theory of fraud by asserting in her Amended Complaint that no member of the public should have been deceived.

---

[12] The Amended Complaint also asserts that Mr. Urman directed his campaign at other critics but the pattern requirement cannot be fulfilled by activities directed at parties who are not plaintiffs. *See Canyon Cnty v. Syngeta Seeds, Inc.,* 519 F.3d 969, 975 (9th Cir. 2008). In any event, the activities directed at those other parties fare no better than the ones allegedly directed at Ms. Fleites.

37

As she states multiple times, MindGeek's illicit content would have been obvious to everyone. (AC ¶ 56 (pointing to "numerous news reports" reflecting the "widespread and easily found" CSAM on MindGeek); ¶¶ 244-47 (pointing to the highly publicized arrest of child pornography purveyors and sextortion rings); ¶¶ 278, 279, 280 (alleging that anyone could see that MindGeek hosted tens of thousands of videos depicting non-consensual sex and child pornography); ¶ 283 (alleging that "all of this would have informed even the densest inquisitor that MindGeek was intentionally engaged in commercializing nonconsensual trafficked content"); ¶ 297 (asserting "the ease with which anyone . . . would have become aware of MindGeek's trafficking venture" by Times Columnist Kristof's report).) Indeed, Plaintiff does not even allege that anyone relied on the allegedly "deceptive" conduct. *See In re WellPoint*, 903 F. Supp. 2d 880, 915 (C.D. Cal. 2012).

Finally, even if deceit was adequately alleged and even if the impact on Plaintiff was adequately identified, a lie to the public without more does not qualify as a wire fraud. Wire fraud requires a loss of money or property, and at no time does the Amended Complaint allege that such a loss occurred as a result of the alleged deceit. *See TEG Staffing, Inc. v. Platt*, 2008 WL 4571257, at *2 (N.D. Cal. Oct. 14, 2008) (holding that plaintiffs "must demonstrate that their business or property interest was injured *by reason of* the alleged RICO violation" and "demonstrate that there exists 'a direct relation between the injury asserted and the injurious conduct alleged'") (emphasis in original, citations omitted); *see also Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 266 (1992).

### b. Harassment.

The alleged activity that harassed Plaintiff is not the basis for a racketeering act because it does not fit the elements of wire fraud (deceit aimed at obtaining

money or property) and the Amended Complaint does not assert a claim under any harassment law (and even if it did, harassment is not a listed racketeering act).

### 4.    Conducted the enterprise:

Other than conclusory allegations that Mr. Urman controlled and directed the enterprise (AC ¶ 462 (defendants "conducted" the enterprise by engaging in the "conduct described"), Plaintiff offers no instance where Mr. Urman did so. Although the Amended Complaint asserts that his "disinformation campaign" helped the enterprise stay afloat, that conduct says nothing about whether (or how) Mr. Urman conducted the enterprise because that element requires allegations of specific instances of decision making or control. *See In re Wellpoint Out-of-Network "UCR" Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011).

Conclusory allegations that a defendant directed or controlled the enterprise are patently insufficient. *See In re JUUL Labs*, 497 F. Supp. 3d at 605-608 (dismissing claims against directors who were alleged to have "control" of the board and "final say" over the company's marketing materials, because the allegations failed to identify any specific conduct); *O'Connor v. Uber Technologies, Inc.*, 2013 WL 6354534, at *18 (N.D. Cal. Dec. 5, 2013) (dismissing claims against executives where plaintiffs alleged that the executives were "responsible for" the challenged policies because plaintiffs "failed to allege enough specific allegations showing that [individual defendants] personally directed or participated in the tortious conduct"); *Apple Hill Growers v. El Dorado Orchards*, 2019 WL 5827365, at *3 (E.D. Cal. Nov. 7, 2019) (allegation that corporate officers "control[led] and direct[ed]" the company's wrongful conduct failed to state a claim).[13]

---

[13]    The RICO conspiracy claim fails because it requires an agreement to commit an adequately pled objective and, as the above discussion describes, Plaintiff has failed to do so.

39

### D.    State Law Claims (Counts IX – XVII)

Plaintiff's state law claims appear to be based on pendent jurisdiction and require a surviving federal claim.  *See e.g.*, *Bryant v. Adventist Health System/West*, 289 F.3d 1162, 1169 (9th Cir. 2002) (dismissing state-law claims where all federal claims were dismissed).  No federal claim survives.

In addition, all of the state law claims must be dismissed for failing to link any of the underlying conduct to Mr. Urman.  The fact that a defendant holds a position in a company that allegedly committed a tort is not enough.  *See U.S. Liability Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595 (1970) ("Directors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done[.]");  *Frances T. v. Vill. Green Owners Assn.*, 42 Cal. 3d 490, 503 (1986) ("It is well settled that corporate directors cannot be held *vicariously* liable for the corporation's torts in which they do not participate.  Their liability, if any, stems from their own tortious conduct, not from their status as directors or officers of the enterprise.") (emphasis in original); *O'Connor*, 2013 WL 6354534, at *18; *Franco Am. Corp. v. Kim Seng Co.*, 2011 WL 13220312, at *2-3 (C.D. Cal. June 24, 2011) (complaint failed to state a claim where it alleged only that owner of corporation was "personally responsible for the actions" of the company and made "all of the important decisions" related to the company's dealing with plaintiff).  As shown above, the Amended Complaint fails to specify a connection between Mr. Urman (who is not even alleged to be an officer or director of any MindGeek defendant) and the conduct for which Plaintiff seeks to recover.

With respect to the state law fraud and Sections 17200 and 17500 claims, Rule 9(b) imposes an even stricter standard than Rule 8.  *See Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1244 (N.D. Cal. 2017) (Rule 9(b) applies to UCL claim based

on false or misleading statements; plaintiffs must state "the who, what, when, where, and how" of the misrepresentation) (citation omitted).  These claims cannot satisfy Rule 8, much less Rule 9(b).

With respect to the negligence claim, the Amended Complaint fails to allege that Mr. Urman owed Ms. Fleites any duty that was breached.  *See In re Rexplore, Inc. Sec. Litig.*, 685 F. Supp. 1132, 1148 (N.D. Cal. 1988) ("To state a claim based on negligence, a plaintiff must first demonstrate that a defendant owes him a duty of care.  Even though a defendant may have acted negligently, if he owes no duty to plaintiff, he may not be liable.") (citations omitted); *Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 852 (W.D. Tex. 2007) (plaintiffs failed to state a negligence claim because Myspace had no duty to protect plaintiff from a third party's criminal acts "nor to institute reasonable safety measures on its website").

Finally, Plaintiff's claim of civil conspiracy fails because California does not recognize it as a separate and distinct cause of action.  *See e.g.*, *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994) (civil conspiracy is not an independent cause of action).

## CONCLUSION

Corey Urman, a Canadian citizen, is not subject to personal jurisdiction in this Court and, even if he were, Plaintiff's claims are barred by Section 230 and separately because they fail to allege the elements required by law.  Mr. Urman respectfully requests that this Court grant his motion to dismiss and do so with prejudice now that Plaintiff has shown that she can do no better despite ample warnings of these deficiencies and ample opportunity to cure them.

1    Dated:  May 23, 2022                    MINTZ LEVIN COHN FERRIS GLOVSKY
2                                            AND POPEO PC

3                                            By *s/Evan S. Nadel*
4                                               Evan S. Nadel
                                                Peter A. Chavkin
5                                               Kathryn L. Ignash

6                                            Attorneys for Specially Appearing Defendant
7                                            COREY URMAN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                           42
28    **DEFENDANT COREY URMAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
      MOTION TO DISMISS AMENDED COMPLAINT**