DAN MARMALEFSKY
Bar No. 95477
DMarmalefsky@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California  90017-3543
Telephone:  213.892.5200
Facsimile:   213.892.5454

RONALD G. WHITE (admitted *pro hac vice*)
RWhite@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019-9601
Telephone: 212.468.8000
Facsimile: 212.468.7900

Attorneys for Defendant
BERND BERGMAIR

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SERENA FLEITES, | Case No. 2:21-cv-4920-CJC-ADS |
| Plaintiff, | **DEFENDANT BERND BERGMAIR'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |
| v. | |
| MINDGEEK S.A.R.L. a foreign entity; MG FREESITES, LTD., a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; MG PREMIUM LTD, a foreign entity; MG GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 Quebec, Inc. (d/b/a MindGeek), a foreign entity; BERND BERGMAIR, a foreign individual; FERAS ANTOON, a foreign individual; DAVID TASSILLO, a foreign individual; COREY URMAN, a foreign individual; VISA INC., a Delaware corporation; COLBECK CAPITAL DOES 1-5; and BERGMAIR DOES 1-5, | Date: August 8, 2022 Time: 1:30 p.m. Courtroom: 9 B Judge: Hon. Cormac J. Carney |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................ 1

ARGUMENT .................................................................................................. 3

I.    PLAINTIFF HAS NOT ESTABLISHED PERSONAL JURISDICTION OVER BERGMAIR. ................................................. 3

    A.    Plaintiff Failed to Establish that Bergmair Had the Requisite Contacts with California ............................................ 4

    B.    Plaintiff Failed to Establish that MG US and MG Global are Alter Egos of Bergmair ............................................ 5

        1.    The Amended Complaint's Allegations Fail to Establish the "Injustice" Element of the Alter Ego Test ............................................................................... 6

        2.    Plaintiff Failed to Allege Specific Facts Establishing that MG US and MG Global are Alter Egos of Bergmair ...................................................... 7

        3.    The Amended Complaint Does Not Include Bergmair in the Group that Controlled MindGeek's Daily Operations ........................................................ 11

        4.    The Amended Complaint's Allegations Involving Bergmair Are Inconsistent with Any Alter Ego Relationship ....................................................... 13

        5.    Plaintiff's Bare Allegations Are Insufficient to Overcome MindGeek's Affidavit .............................. 13

    C.    Plaintiff Has Not Made the Requisite Showing to Justify Jurisdictional Discovery ......................................... 15

II.    PLAINTIFF FAILED TO STATE A CLAIM AGAINST BERGMAIR ......................................................................... 18

CONCLUSION ............................................................................................. 21

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*A.B. v. Hilton Worldwide Holdings, Inc.*,
  484 F. Supp. 3d 921 (D. Or. 2020) ...................................................................... 15

6

7

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
  368 F.3d 1174 (9th Cir. 2004) ............................................................................ 15

8

9

*ADO Fin., AG v. McDonnell Douglas Corp.*,
  931 F. Supp. 711 (C.D. Cal. 1996) ...................................................................... 9

10

*Amba Mktg. Sys., Inc. v. Jobar, Inc.*,
  551 F.2d 784 (9th Cir. 1977) .............................................................................. 14

11

12

*Barantsevich v. VTB Bank*,
  954 F. Supp. 2d 972 (C.D. Cal. 2013) ................................................................ 17

13

14

*In re Boon Glob.*,
  923 F.3d 643 (9th Cir. 2019) .............................................................................. 12

15

16

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) ............................................................................ 17

17

18

*Brophy v. Almanzar*,
  359 F. Supp. 3d 917 (C.D. Cal. 2018) ................................................................ 18

19

20

*Calvert v. Huckins*,
  875 F. Supp. 674 (E.D. Cal. 1995) ................................................................... 6, 7

21

22

*Cd Listening Bar, Inc. v. Caiman Holdings, Inc.*,
  2008 WL 11336948 (C.D. Cal. June 11, 2008) .................................................. 11

23

24

*Chan v. Soc'y Expeditions, Inc.*,
  39 F.3d 1398 (9th Cir. 1994) .............................................................................. 18

25

*Comprehensive Toxicology Billing LLC v. Aliya Medcare Fin. LLC*,
  2016 WL 3475329 (C.D. Cal. Feb 23, 2016) ....................................................... 6

26

27

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014) ........................................................................................... 5

28

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
    557 F.2d 1280 (9th Cir. 1977) ............................................................................ 14

*Doe v. MindGeek*,
    558 F. Supp. 3d 828 (C.D. Cal. 2021) ................................................................ 21

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) ....................................................................... 13, 21

*Doe v. WebGroup Czech Republic*,
    2022 WL 982248 (C.D. Cal. Jan. 13, 2022) ...................................................... 19

*Dynascan Tech., Inc. v. Plasmedia Prods., Inc.*,
    2010 WL 11520614 (C.D. Cal. Jan. 21, 2010) ............................................. 6, 14

*Gavriliuc v. Teksystems, Inc.*,
    2021 WL 3568252 (C.D. Cal. Apr. 14, 2021) .................................................... 19

*Getz v. Boeing*,
    654 F.3d 852 (9th Cir. 2011) .............................................................................. 17

*Iconlab, Inc. v. Bausch Health Cos., Inc.*,
    828 F. App'x 363 (9th Cir. 2020) ................................................................... 6, 9

*Langley v. Guiding Hands Sch., Inc.*,
    2021 WL 978950 (E.D. Cal. Mar. 16, 2021) ................................................... 5, 6

*Laub v. United States Dep't of the Interior*,
    342 F.3d 1080 (9th Cir. 2003) ........................................................................... 18

*Martinez v. Manheim Cent. Cal.*,
    2011 WL 1466684 (E.D. Cal. Apr. 18, 2011) ................................................... 17

*MH Pillars, Ltd. v. Realini*,
    2017 WL 916414 (N.D. Cal. Mar. 8, 2017) ...................................................... 11

*Mieuli v. DeBartolo*,
    2001 WL 777447 (N.D. Cal. Jan. 16, 2001) ....................................................... 9

*Mireskandari v. Daily Mail and General Trust PLC*,
    2013 WL 12114760 (C.D. Cal. July 13, 2013) ............................................. 6, 13

*Mocha Mill, Inc. v. Port of Mokha, Inc.*,
    2019 WL 1048252 (N.D. Cal. Mar. 5, 2019) .................................................... 15

*Mujica v. AirScan, Inc.*,
    771 F.3d 580 (9th Cir. 2014) .......................................................................... 20

*NuCal Foods, Inc. v. Quality Egg, LLC*,
    887 F. Supp. 2d 977 (E.D. Cal. 2012) .................................... 6, 10, 11, 14

*Orchid Biosciences, Inc. v. St. Louis Univ.*,
    198 F.R.D. 670 (S.D. Cal. 2001) .................................................................. 18

*Panterra Networks, Inc. v. Convergence Works, LLC*,
    2009 WL 4049956 (N.D. Cal. Nov. 20, 2009) ....................................... 15

*Park Miller, LLC v. Durham Grp., Ltd.*,
    2019 WL 6841216 (N.D. Cal. Dec. 16, 2019) ......................... 9, 10, 11

*Payrovi v. LG Chem Am., Inc.*,
    491 F. Supp. 3d 597 (N.D. Cal. 2020) ..................................................... 18

*Pebble Beach v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ...................................................................... 16

*Polsky v. Ramnani*,
    2018 WL 6133406 (C.D. Cal. Mar. 26, 2018) ..................................... 20

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) .................................................... 2, 9, 12

*Reynolds v. Binance Holdings Ltd.*,
    481 F. Supp. 3d 997 (N.D. Cal. 2020) .......................................... 10, 17

*Roman Catholic Archbishop of S.F. v. Super. Ct.*,
    15 Cal. App. 3d 405 (1971) .......................................................................... 11

*Shimmick Constr. Co. v. Officine Meccaniche Galletti-O.M.G.S.R.L.*,
    2014 WL 5847440 (S.D. Cal. Nov. 12, 2014) ..................................... 6, 7

*Sihler v. Fulfillment Lab, Inc.*,
    2020 WL 7226436 (S.D. Cal. Dec. 8, 2020) ........................................... 9

*State Comp. Ins. Fund v. Khan*,
    2013 WL 12132027 (C.D. Cal. July 30, 2013) ................................... 20

*Symettrica Ent. Ltd. v. UMG Recordings, Inc.*,
    2019 WL 8806093 (C.D. Cal. Sept. 20, 2019) ............................. 14, 15

BERGMAIR'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

*Terracom v. Valley Nat'l Bank,*
    49 F.3d 555 (9th Cir. 1995) ....................................................................... 15, 16

*Torres v. Ford Motor Co.,*
    2018 WL 4182487 (C.D. Cal. Aug. 30, 2018) ..................................................... 16

*TV Ears, Inc. v. SYK Grp., LLC,*
    2016 WL 6248539 (S.D. Cal. Oct. 26, 2016) ......................................................... 6

*Uhlig v. Fairn & Swanson Holdings, Inc.,*
    2020 WL 6872881 (S.D. Cal. Nov. 23, 2020) ....................................................... 6

*Wady v. Provident Life & Accident Ins. Co.,*
    216 F. Supp. 2d 1060 (C.D. Cal. 2002) ................................................................ 6

*Wild v. Preventive Pest Control, LLC,*
    2019 WL 2871155 (C.D. Cal. May 29, 2019) ..................................................... 16

*Williams v. Yamaha Motor Co., Ltd.,*
    851 F. 3d 1015 (9th Cir. 2017) ............................................................................ 5

*Yost v. Nationstar Mortg., LLC,*
    2013 WL 4828590 (E.D. Cal. September 9, 2013) ............................................. 20

**Statutes**

18 U.S.C. § 1965 .......................................................................................................... 5

47 U.S.C. § 230 ......................................................................................................... 21

**Other Authorities**

Fed. R. Civ. P. 4(k)(2) ................................................................................................ 5

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 21

BERGMAIR'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

**INTRODUCTION**

Plaintiff's Amended Complaint and Opposition[1] make clear that she does not have even one single fact linking Bernd Bergmair to her claims.  Bergmair is alleged, at most, to be a shareholder, with no management position, of a corporation that Plaintiff claims injured her.  To attempt to rope him into this case, Plaintiff generically alleges that Bergmair oversaw MindGeek's strategy and approved major decisions and corporate policies.  But the Amended Complaint does not allege a single concrete act by him in furtherance of the allegedly tortious conduct giving rise to the case – not a single email, letter, telephone call, meeting, transaction or other affirmative act.  Since the Amended Complaint contains literally no allegations of specific conduct by Bergmair, it also fails to establish that Bergmair, a resident of China with no connection to the United States, engaged in any conduct aimed at California.

What is most remarkable about Plaintiff's Opposition is its almost-complete failure to even address – much less rebut – the arguments raised in Bergmair's motion to dismiss.[2]  As detailed in Bergmair's Opening Brief, established precedent makes clear that the Amended Complaint's handful of conclusory paragraphs alleging that he exercised general corporate oversight are insufficient to confer personal jurisdiction over him, or to state a claim.  Yet Plaintiff, in her Opposition, does not even discuss, much less attempt to distinguish, dozens of cases cited by Bergmair or otherwise defend the sufficiency of her claims against Bergmair.

Instead, Plaintiff's entire case – both on jurisdiction and on the merits – hangs on her claim that Bergmair is the alter ego of two particular MindGeek corporate entities, MG US and MG Global.  But the Court need not even consider Plaintiff's multiple pleading deficiencies because of one glaring shortcoming in the

---

[1] Plaintiff's Omnibus Opposition to Defendants' Motions to Dismiss First Amended Complaint (hereinafter "Opposition" or "Opp."), ECF No. 151.
[2] Bergmair Motion to Dismiss (hereinafter "Opening Brief" or "Bergmair Br."), ECF No. 135.

BERGMAIR'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

1  Amended Complaint:  nowhere does it allege that Plaintiff would be unable to
2  recover any potential judgment against the MindGeek entities over which the Court
3  concededly has jurisdiction.  As a result, she cannot show that she would suffer
4  "injustice" if the court did not permit her to proceed on an alter ego basis against
5  Bergmair, and her alter ego claim fails.  Confirming that Plaintiff is simply unable
6  to satisfy this prong of the alter ego test, her Opposition simply ignores this flaw.
7  Since Plaintiff's arguments rest entirely on her alter ego theory, the Court should
8  dismiss the case on this basis alone.

9      As Bergmair's motion explained, Plaintiff's alter ego claim is also fatally
10  flawed in multiple other respects, any one of which warrants dismissal.  First, the
11  Amended Complaint does not contain a single specific allegation about Bergmair's
12  relationship with either company, and its allegations that *other* MindGeek affiliates
13  engaged in "sham" transactions cannot provide the basis for a finding of an alter
14  ego relationship between Bergmair and MG US or MG Global.  As the case law
15  cited by Bergmair establishes, a claim that one defendant is the alter ego of another
16  necessarily focuses on the relationship between those two specific parties and must
17  be supported by specific facts regarding the connection between those two parties.
18  Once again, Plaintiff's Opposition does not even attempt to deal with this flaw in
19  her claim, or the governing law.

20      Second, Plaintiff's alter ego claim is simply inconsistent with the Amended
21  Complaint's few allegations regarding Bergmair, and contrary to settled authority.
22  As noted in his Opening Brief, the only allegations of any conduct by Bergmair
23  assert only that he took actions consistent with his investor status at MindGeek –
24  the type of actions the Ninth Circuit has repeatedly found insufficient to show alter
25  ego status.  In addition, Ninth Circuit law requires that, to be the alter ego of a
26  corporation, an individual must "dictate every facet of its business," including
27  "matters of day-to-day operation."[3]  But here, the Amended Complaint expressly
28

---

[3] *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (citation omitted).

alleges that individuals at MindGeek *other* than Bergmair "controlled all the elements" of its business and possessed "daily operational control" of the company.[4]  Plaintiff again has no answer for these arguments and does not even address these contradictions alleged in her own complaint.

As her final Hail Mary pass, Plaintiff seeks permission to take jurisdictional discovery to shore up her deficient alter ego claim.  Plaintiff's strategy is painfully transparent: she included Bergmair – a China resident with no connection to California – in the Amended Complaint based on the thinnest of allegations, hoping to use its broad-brush alter ego allegations as an excuse to bootstrap her way into obtaining jurisdictional discovery.   Plaintiff's Alice-in-Wonderland argument is that she can drag a foreign citizen into a U.S. court by including a few paragraphs of vague allegations in a complaint, and then use that to seek discovery aimed at retroactively finding some tenable basis to have included him in the complaint in the first place.  Were the Amended Complaint's brief, vague allegations against Bergmair and its conclusory alter ego allegations found sufficient to permit jurisdictional discovery, then virtually any foreign citizen who is a shareholder of a company with a U.S. subsidiary would be subject to discovery at the whim of American plaintiffs' lawyers.

The Court should reject Plaintiff's throw-everything-against-the-wall-and-see-what-sticks approach and dismiss the Amended Complaint against Bergmair with prejudice.

## ARGUMENT[5]

## I.    PLAINTIFF HAS NOT ESTABLISHED PERSONAL JURISDICTION OVER BERGMAIR.

Plaintiff's Opposition makes clear that she is unable to allege any basis for

---

[4] Amended Compl. ¶¶ 78, 87, 97.
[5] In addition to the arguments set forth in this Memorandum, Bergmair joins in the motions and arguments of all the defendant MindGeek corporate entities (hereinafter "MindGeek Defendants"), and those of individual defendants Feras Antoon, David Tassillo and Corey Urman (hereinafter "Individual Defendants").

personal jurisdiction over Bergmair.  Despite the fact that Bergmair highlighted the absence of jurisdictional facts when he moved to dismiss the original complaint, Plaintiff made no effort to cure that glaring deficiency.  The Opposition does not even attempt to argue that the allegations in the Amended Complaint regarding Bergmair are sufficient to establish personal jurisdiction over him in California.  Indeed, it is entirely silent on this point, implicitly conceding that the Amended Complaint's handful of references to Bergmair fail to allege the specific facts required to establish personal jurisdiction.  Instead, the Opposition falls back on the claim that two U.S.-based MindGeek entities are alter egos of Bergmair and thus any California contacts of those two entities may be imputed to him.  Specifically, the Opposition claims that the conduct of defendants MindGeek USA Inc. ("MG US") and MindGeek Global Entertainment Inc. ("MG Global") – companies whose conduct the Complaint does not link in any way to Bergmair – should nonetheless be imputed to him on an alter ego theory.  (Opp. at 4-5.)  Plaintiff's alter ego argument is as meritless as her original theory.

### A. Plaintiff Failed to Establish that Bergmair Had the Requisite Contacts with California

As shown in Bergmair's Opening Brief, the Amended Complaint's allegations do not even come close to demonstrating that Bergmair has sufficient contacts with California to confer personal jurisdiction over him.  (Bergmair Br. at 5-30.)  The sum total of the allegations involving Bergmair are repeated, conclusory allegations that he exercised "oversight and control" over MindGeek's strategic operations, and approved major MindGeek decisions and corporate policies.  These allegations fail to establish the requisite contacts necessary to permit the exercise of personal jurisdiction over a foreign resident like Bergmair.  First, the Amended Complaint is devoid of any allegation that Bergmair purposefully directed his activities toward California.  The Amended Complaint's allegations of his "oversight" of MindGeek and "approval" of its major decisions and policies are

1    insufficient to attribute MindGeek's conduct to him under the "guiding spirit"

2    standard established by the Ninth Circuit.  Indeed, numerous courts have found that

3    allegations far more specific than those mentioning Bergmair here were insufficient

4    to establish personal jurisdiction.  (Bergmair Br. at 9-15.)  In addition, the

5    Complaint contains no facts suggesting that Bergmair's alleged actions were

6    expressly aimed at California (*id*. at 20-22), or that Plaintiff's claims arose from his

7    (non-existent) forum-related contacts.  (Id. at 22-23.)[6]  Plaintiff has literally no

8    response to these arguments.

9

10        **B.    Plaintiff Failed to Establish that MG US and MG Global are Alter Egos of Bergmair**

11

12        Plaintiff similarly fails even to address the deficiencies in her alter ego claim

13   that Bergmair's motion to dismiss highlighted.[7]

14        As described in Bergmair's Opening Brief, the alter ego doctrine is

15   "recognized as an extreme remedy" and will be employed "only in exceptional

16   circumstances."  (Bergmair Br. at 15-16.)  *See Langley v. Guiding Hands Sch., Inc.*,

17   2021 WL 978950, at *4 (E.D. Cal. Mar. 16, 2021) (quoting *Calvert v. Huckins*, 875

18   F. Supp. 674, 678 (E.D. Cal. 1995)).  Reflecting courts' reluctance to resort to the

19   _____

20   [6] Plaintiff argues that the relevant test is Bergmair's contacts with the United States, not California, under the civil RICO statute, 18 U.S.C. § 1965, and Fed. R. Civ. P. 4(k)(2).  (Opp. at 79, n.41.)  However, the RICO statute does not apply here because Bergmair was not served in any judicial district of the United States. (Bergmair Br. at 6, n.4.)  In any event, this is a distinction without a difference since the Complaint alleges no contacts by Bergmair with either California or the United States as a whole.

23   [7] Plaintiff imprecisely suggests that all the MindGeek defendants are "agents/alter egos" of MG US and MG Global, but her Opposition only addresses the alter ego claim and makes no attempt to support an agency claim.  (Opp. at 72.)  It is not clear that "agency" is even a basis to obtain personal jurisdiction over a defendant in light of the Supreme Court's decision in *Daimler AG v. Bauman*, 134 S. Ct. 746, 759 (2014).  *See Williams v. Yamaha Motor Co., Ltd.*, 851 F. 3d 1015, 1024–25 (9th Cir. 2017) (expressing doubt about the continued existence of the agency test but noting that, if it retained any viability, the principal must be shown, at a minimum, to exercise "substantial[] control" over its agent).  Just as Plaintiff is unable to demonstrate Bergmair's "pervasive control" of MG US and MG Global for purposes of the alter ego test, she is unable to show his "substantial[] control" of these entities.

5

1   alter ego theory, plaintiffs who invoke it in an effort to establish personal

2   jurisdiction over a corporate shareholder must satisfy "a slightly higher burden" and

3   overcome the presumption of corporate separateness with "clear evidence."

4   *Langley*, 2021 WL 978950, at *4; *Uhlig v. Fairn & Swanson Holdings, Inc.*, 2020

5   WL 6872881, at *3 (S.D. Cal. Nov. 23, 2020); *TV Ears, Inc. v. SYK Grp., LLC*,

6   2016 WL 6248539, at *5 (S.D. Cal. Oct. 26, 2016); *Calvert*, 875 F. Supp. at 678.

7   To make this showing, a plaintiff must allege "specific facts" establishing both

8   elements of the alter ego test.  *Comprehensive Toxicology Billing LLC v. Aliya*

9   *Medcare Fin. LLC*, 2016 WL 3475329, at *6 (C.D. Cal. Feb 23, 2016); *Dynascan*

10  *Tech., Inc. v. Plasmedia Prods., Inc.*, 2010 WL 11520614, at *5 (C.D. Cal. Jan. 21,

11  2010) (Carney, J.).

12

13  ### 1.    The Amended Complaint's Allegations Fail to Establish the "Injustice" Element of the Alter Ego Test

14

15       Plaintiff's Opposition totally ignores the fact that the Amended Complaint

16  lacks any allegations to support the "injustice" prong of the alter ego test.  For this

17  reason alone, the Court should grant Bergmair's motion to dismiss.  To establish

18  this required element, Plaintiff must show specific facts demonstrating that the

19  failure to disregard the separate entities' existence "would result in fraud or

20  injustice."  *See Iconlab, Inc. v. Bausch Health Cos., Inc.*, 828 F. App'x 363, 364

21  (9th Cir. 2020) (quoting *Ranza*, 793 F.3d at 1073).  But Plaintiff is unable to satisfy

22  this "injustice" element if she can recover any potential judgment against the

23  remaining defendants in the case.  *See Shimmick Constr. Co. v. Officine*

24  *Meccaniche Galletti-O.M.G.S.R.L.*, 2014 WL 5847440, at *7 (S.D. Cal. Nov. 12,

25  2014); *NuCal Foods, Inc. v. Quality Egg, LLC*, 887 F. Supp. 2d 977, 993-94 (E.D.

26  Cal. 2012); *Wady v. Provident Life & Accident Ins. Co.*, 216 F. Supp. 2d 1060,

27  1070 (C.D. Cal. 2002); *Mireskandari v. Daily Mail and General Trust PLC*, 2013

28  WL 12114760, at *6 (C.D. Cal. July 13, 2013) ; *Calvert*, 875 F. Supp. at 679-80.

Here, as Bergmair's Opening Brief noted, the Amended Complaint does not allege that the MindGeek corporate defendants over whom jurisdiction is conceded are insolvent or otherwise unable to satisfy a potential judgment against them.[8] (Bergmair Br. at 19.)  Indeed, MindGeek does not challenge the Court's jurisdiction over MG US, MG Global, defendant MG Freesites, Ltd. (the operator of the websites at issue in this case), or defendant 9219-5618 Quebec, Inc. (which provides services to MG Freesites).  *See* Memorandum of Points and Authorities in Support of MindGeek's Motion to Dismiss Amended Complaint at 46-50, ECF No. 139-1.  Even though this glaring omission was pointed out in defendants' motion briefs, Plaintiff's Opposition offers no argument for her pleading failure, as if ignoring it would make it go away.  Since Plaintiff has not established that she cannot be "made whole" through a lawsuit against the defendants before the Court, without Bergmair's participation in the case, she fails to satisfy the "injustice" element of the alter ego test.  *Shimmick Constr. Co.*, 2014 WL 5847440, at *7.

### 2.    Plaintiff Failed to Allege Specific Facts Establishing that MG US and MG Global are Alter Egos of Bergmair

Although Plaintiff rests her entire argument for jurisdiction on the claim that MG US and MG Global are alter egos of Bergmair, the Amended Complaint is devoid of any "specific facts" that demonstrate any relationship at all between Bergmair and these entities.  Her Opposition does not even attempt to address this deficiency.  The Amended Complaint alleges virtually no facts about MG US and MG Global other than basic corporate identifying information: their states of incorporation, they maintain offices in California, and they are subsidiaries of

---

[8] Moreover, the declaration submitted by a corporate director attests that each of these MindGeek Defendants is "adequately capitalized, possessing its own bank accounts and serving as a party to and responsible for fulfilling its own contracts." *See* May 23, 2022 Declaration of Andreas Alkiviades Andreou in Support of the MindGeek Defendants' Motion to Dismiss (hereinafter "Andreou Declaration"), at ¶¶ 19, 22, 30, 34, ECF No. 139-3.

BERGMAIR'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

1  defendant MindGeek, S.a.r.l.  (Amended Compl. ¶¶ 21, 23.)[9]  While the Amended

2  Complaint generically alleges that MG US and MG Global provided "support" to

3  other MindGeek corporate entities (*id.* at ¶¶ 21, 23, 33), it conspicuously fails to

4  allege any facts suggesting that they did so without respecting corporate

5  separateness.[10]  Other than generally identifying Bergmair as one of the owners of

6  "MindGeek" (Amended Compl. ¶¶ 25, 96), which is defined as all the defendant

7  MindGeek corporate entities, the Amended Complaint sets forth no facts about MG

8  US and MG Global's connection, if any, to Bergmair.  Indeed, MG US and MG

9  Global are referenced in a grand total of just six of the Amended Complaint's 534

10  paragraphs, none of which also mentions Bergmair.  (Amended Compl. ¶¶ 21, 23,

11  33, 40, 41, 310.)

12       Instead, Plaintiff's Opposition argues that the Amended Complaint's

13  allegations (¶¶ 131-57) that a series of unnamed MindGeek entities – *i.e.*, entities

14  other than the MindGeek corporate defendants in this lawsuit – were "sham shell

15  companies" are sufficient to establish the elements of the alter ego test.  (Opp. at

16  74-75.)[11]  But these allegations plainly fail to establish an alter ego relationship

17  between MG US, MG Global and Bergmair.  Allegations about *other* corporate

18  entities – entities that are *not* the ones whose conduct Plaintiff seeks to impute to

19  Bergmair – cannot provide the basis for a finding of an alter ego relationship.  The

20  _____

21  [9] The only other substantive reference in the Amended Complaint to either
   corporation is an irrelevant allegation about lobbying efforts by MG US at an
22  unspecified time in the past (Amended Compl. ¶ 310), which has absolutely nothing
   to do with Plaintiff's claimed injuries.
23  [10] Contradicting these generalized allegations, MindGeek has submitted a
   declaration attesting that any such services were provided pursuant to written
24  agreements charging appropriate fees and properly respecting the corporate
   separateness of the respective entities involved.  (Andreou Declaration at ¶¶ 9, 29.)
25  [11] Plaintiff's argument with respect to these entities is itself inconsistent with her
   claim that MG US or MG Global are alter egos of Bergmair since her Opposition
26  asserts that the entities are collectively "managed, directed, and controlled by,
   among others," all the Individual Defendants, the Doe defendants, defendant Visa,
27  Inc., and an unspecified "network of corrupt credit card companies."  (Opp. at 16-
   17.)  The fact that so many other individuals and entities supposedly manage and
28  control these entities contradicts the claim that Bergmair singularly controlled
   these, or any other MindGeek entities, to the degree that they were mere
   instrumentalities of his.

BERGMAIR'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

alter ego analysis necessarily focuses on the relationship between the specific

parties who are alleged to be alter egos, since the test is whether there is "such unity

of interest" and ownership that the separate personalities of the two parties no

longer exist. *Iconlab*, 828 F. App'x at 364; *Ranza*, 793 F.3d at 1070–71 ("The alter

ego test is designed to determine whether the [parties] are 'not really separate

entities,' such that *one* entity's contacts with the forum state can be fairly attributed

to *the other*." (emphasis added) (citation omitted)).

Not surprisingly, Plaintiff does not cite a single case where allegations about

the lack of corporate separateness of companies *other* than the specific parties

alleged to be alter egos were held sufficient to demonstrate alter ego status.  Indeed,

in her Opposition, Plaintiff cites just three cases supposedly supporting the

sufficiency of her alter ego allegations.  (Opp. at 73.)  However, in all three cases,

the allegations with respect to alter ego status related to the specific entities that

were claimed to be alter egos, unlike the Amended Complaint here, whose alter ego

allegations relate to unnamed, unspecified companies other than those at issue.  *See*

*Sihler v. Fulfillment Lab, Inc.*, 2020 WL 7226436, at *6 (S.D. Cal. Dec. 8, 2020);

*Mieuli v. DeBartolo*, 2001 WL 777447, at * 9 (N.D. Cal. Jan. 16, 2001); *ADO Fin.,*

*AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 713, 717–18 (C.D. Cal.

1996).[12]

In contrast, courts have rejected alter ego claims where, as here, the

allegations in the complaint relate to other companies in a single corporate family,

or do not focus on the specific parties claimed to be alter egos.  For example, in

*Park Miller, LLC v. Durham Group, Ltd.*, 2019 WL 6841216 (N.D. Cal. Dec. 16,

2019), plaintiff sought to establish personal jurisdiction over an individual,

McGrain, by alleging that he was the alter ego of two corporations he owned named

DGL and DCC.  However, plaintiff's allegations related only to the relationship

---

[12] In *Sihler*, the primary case Plaintiff cites, the court actually *rejected* the plaintiffs'
allegations of alter ego status as "conclusory" and insufficient, offering no support
to Plaintiff's position here.  2020 WL 7226436, at *6.

BERGMAIR'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

1    between the two corporations, not any relationship either had with McGrain.  The

2    court ruled that plaintiff's allegations of "intermingling of assets between DGL and

3    DCC might support an alter ego theory between DGL and DCC but does not

4    provide allegations of an alter ego theory involving McGrain." *Id*. at *10.  As a

5    result, the court found that plaintiff had failed to establish that McGrain was the

6    alter ego of his companies and their jurisdictional contacts could not be imputed to

7    him. *Id*.

8         Similarly, in *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997 (N.D.

9    Cal. 2020), plaintiff sued Binance, a foreign corporation, and alleged that the court

10   had personal jurisdiction over it because Binance was the alter ego of its U.S.

11   subsidiary, BAM.  To support its alter ego claim, plaintiff alleged that BAM shared

12   a business address with *another* company, Koi Trading, in which Binance had a

13   major investment.  The court held that BAM's relationship with another company

14   did not support an alter ego finding because it did not relate to the relationship

15   between the specific entities alleged to be alter egos, Binance and BAM.  The court

16   rejected the claim that "Binance's ownership interest in Koi Trading, and BAM's

17   shared address with Koi Trading, creates any unity of interest between BAM and

18   *Binance* under the alter-ego theory." *Id*. at 1006, n.3 (emphasis in original).

19        In *NuCal Foods,* plaintiff alleged that an individual defendant, DeCoster, and

20   corporations he owned operated as "a single consolidated enterprise" that were

21   structured to "escape liability."  887 F. Supp. 2d at 991, 993–94.  Since the Court

22   had personal jurisdiction over one of DeCoster's companies, Quality Egg, plaintiff

23   argued that its contacts should be imputed to DeCoster and his other companies on

24   an alter ego theory.  The court rejected this claim, finding that, despite its wide-

25   ranging allegations about DeCoster's affiliated corporations, plaintiff had failed to

26   make specific allegations about Quality Egg, the particular entity claimed to be an

27   alter ego.  Specifically, the Court found that plaintiffs had failed to allege that

28   Quality Egg was "currently underfunded or non-operational," a necessary element

to establish the "injustice" prong.  Since plaintiffs "ha[d] proffered no evidence to contradict" the affidavit submitted by Quality Egg's representative that it was operational and had its own bank accounts, plaintiff's failure to provide particularized allegations about the specific entity claimed to be an alter ego was fatal.  *Id.* at 993–94.[13]

As this case law demonstrates, the Amended Complaint's allegations about other unnamed entities supposedly affiliated with MindGeek do not support Plaintiff's alter ego theory, much less provide the "specific facts" needed to show "clear evidence" substantiating a direct relationship between Bergmair and MG US and MG Global, the two companies she claims are his alter egos.  Moreover, even if Plaintiff's allegations about other corporations could be somehow stretched to imply that MG US and MG Global were alter egos of *one another*, they would still be insufficient to establish that those entities are alter egos of *Bergmair*.  *See Park Miller*, 2019 WL 6841216, at *10; *Roman Catholic Archbishop of S.F. v. Super. Ct.*, 15 Cal. App. 3d 405, 412 (1971).

### 3.    The Amended Complaint Does Not Include Bergmair in the Group that Controlled MindGeek's Daily Operations.

As noted in Bergmair's motion to dismiss, Plaintiff's alter ego claim also fails because it is affirmatively inconsistent with basic facts alleged in the Amended Complaint about Bergmair and MindGeek.  (Bergmair Br. at 16-18.)  Yet Plaintiff's Opposition simply ignores this disqualifying fact.  The "unity of interest" element of the alter ego test "envisions pervasive control" over a company, such as when an

---

[13] *See also MH Pillars, Ltd. v. Realini*, 2017 WL 916414, at *14 (N.D. Cal. Mar. 8, 2017) (granting motion to dismiss where plaintiffs argued that defendant corporations were alter egos of their individual owner since they operated as "a single enterprise" and had engaged in "fraudulent transfers," because complaint did not "allege facts showing what each individual defendant did that would justify piercing the corporate veil"); *Cd Listening Bar, Inc. v. Caiman Holdings, Inc.*, 2008 WL 11336948, at *4-5 (C.D. Cal. June 11, 2008) (where plaintiff alleged that affiliated companies operated as a "single unit" and used "multiple entities in an attempt to frustrate suit in any given jurisdiction," court rejected an alter ego claim because plaintiff did not provide specific facts regarding the relationship between the companies alleged to be alter egos).

owner "dictates every facet of [its] business," including "matters of day-to-day
operation." *Ranza*, 793 F.3d at 1073 (citation omitted); *In re Boon Glob.*, 923 F.3d
643, 653 (9th Cir. 2019) (same).  The Ninth Circuit has repeatedly identified
control of a corporation's daily operations as the touchstone of the alter ego
analysis. (Bergmair Br. at 17 (citing cases).)  But here, the Amended Complaint
alleges that *other individuals* – not Bergmair – controlled the company's daily
operations.  These indiscriminate and contradictory allegations of control refute
Plaintiff's claim that Bergmair so singularly controlled MindGeek that it was a
"mere instrumentality" of his.  First, the Amended Complaint does not include
Bergmair in the alleged group that that "had daily operational control" of the
company, "actually control[led] and operate[d] all of [its] purported subsidiaries"
and "controlled all the elements of MindGeek's business" (Amended Compl. ¶¶
24, 78, 87, 97.)  "Daily operational control" by others of "all the elements of
MindGeek's business" is flatly inconsistent with the claim that Bergmair so
dominated the company that it was his alter ego.[14]

Second, the Amended Complaint also alleges that another, different group of
individuals, the Doe defendants, were the "actual owners" and majority
shareholders of MindGeek, possessed ultimate "control" of it, and acted as the
"over-bosses" and "ultimate puppet masters" of the company.  (Amended Compl.
¶¶ 4, 87, 96, 431.)  The allegation that MindGeek's majority shareholders acted as
the company's "ultimate puppet masters" refutes the claim that Bergmair was
himself the alter ego of the company.  Indeed, Plaintiff's Opposition argues that the
MindGeek entities were "operated on behalf of and at the behest of" these Doe
defendants.  (Opp. at 81, n.43.)

---

[14] Such alleged day-to-day control does not even indicate an alter ego relationship
between MindGeek and those alleged to be in control.  Instead, such alleged control
merely suggests the typical division of responsibility expected in a corporation:
investors collectively exercise big picture oversight of the company's business,
while senior management directs its day-to-day operations.

BERGMAIR'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

Third, the Amended Complaint alleges that a group of individuals (made up of the Individual Defendants, along with the Doe defendants) exercised "*collective control*" of MindGeek, and that "*all of [them]* actually exercise direct control over the entire corporate organization" of MindGeek.  (Amended Compl. ¶¶ 31, 171 (emphasis added).)  Plaintiff's own allegations of "collective" control of MindGeek by 14 different individuals disproves the claim that it was Bergmair's alter ego.

### 4.     The Amended Complaint's Allegations Involving Bergmair Are Inconsistent with Any Alter Ego Relationship

Similarly, Plaintiff's Opposition ignores the established Ninth Circuit law cited in Bergmair's motion holding that actions "consistent with a [party's] investor status," such as Bergmair's purportedly exercising oversight of MindGeek and approving its major decisions and corporate policies, do *not* give rise to alter ego status.  *See Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (quoting *United States v. Bestfoods*, 524 U.S. 51, 69 (1998)).  As discussed in Bergmair's motion, the Ninth Circuit and other courts have specifically found that such actions, even in conjunction with other extensive corporate involvement, do not give rise to an alter ego relationship. (Bergmair Br. at 18-19 (citing cases).)[15]  Once again, Plaintiff's Opposition does not even address – much less distinguish – these controlling Ninth Circuit precedents, implicitly conceding that she has no answer to Bergmair's argument.

### 5.     Plaintiff's Bare Allegations Are Insufficient to Overcome MindGeek's Affidavit

Finally, in addition to their facial insufficiency, Plaintiff's allegations are simply not sufficient to overcome the sworn affidavit submitted by the MindGeek corporate defendants establishing the corporate separateness of MG US and MG

---

[15] *See also Mireskandari*, 2013 WL 12114760, at *6  (no alter ego relationship where owner set company policies on "accounting, employees, customers, vendors, compensation and data protection," but was not involved in its "day-to-day operations").

BERGMAIR'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

Global.[16]  *See* Andreou Declaration.  When a defendant submits an affidavit controverting the allegations in the complaint, a plaintiff "[cannot] simply rest on the bare allegations of its complaint, but rather [is] obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction."  *Amba Mktg. Sys., Inc. v. Jobar, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).  When "there is a conflict between the complaint and an affidavit, plaintiff cannot rely solely on the complaint to establish jurisdictional facts."  *NuCal Foods*, 887 F. Supp. 2d at 988 (quoting *N. Am. Lubricants Co. v. Terry*, 2012 WL 1108918, at *4 (E.D. Cal. Apr. 2, 2012)). *See Symettrica Ent. Ltd. v. UMG Recordings, Inc.*, 2019 WL 8806093, at *4 (C.D. Cal. Sept. 20, 2019) (Carney, J.) (where defendants' affidavits stated that company followed corporate formalities and plaintiff offered no facts other than complaint's allegations, court rejected alter ego theory).[17]  Here, in arguing that MG US and MG Global are alter egos, Plaintiff is necessarily claiming that they do not observe corporate separateness.  But a MindGeek corporate director has submitted an affidavit attesting that MG US and MG Global are "adequately capitalized," have their own bank accounts, and observe "all necessary corporate formalities." (Andreou Declaration ¶¶ 22, 30.)  Since Plaintiff cannot simply "rest on the bare allegations" of her complaint and has not come forward with any other evidence, her alter ego claim fails.[18]

---

[16] Plaintiff faults Bergmair and the other Individual Defendants for not submitting a declaration regarding jurisdiction.  (Opp. at 80.)  But Plaintiff ignores the fact that the Amended Complaint does not allege a single action that Bergmair supposedly took with respect to the two entities Plaintiff claims are his alter egos, so there are no specific jurisdictional allegations for him to rebut.  Instead, Plaintiff's allegations focus on the MindGeek corporate entities, and these are contradicted by the Andreou Declaration, which establishes the entities' separateness.

[17] *See also Dynascan Tech.*, 2010 WL 11520614, at *3 (where defendant submitted affidavit, plaintiff's alter ego argument failed because complaint's allegations "may not presumptively be accepted as true" and plaintiff presented no other evidence supporting alter ego theory).

[18] Plaintiff incorrectly asserts that the Court can exercise personal jurisdiction over the Individual Defendants "under theories of pendent jurisdiction."  (Opp. at 79). But this doctrine only permits a court to hear a claim against a defendant for which

14

## C.     Plaintiff Has Not Made the Requisite Showing to Justify Jurisdictional Discovery

Anticipating the failure of her alter ego argument, Plaintiff seeks permission to conduct unspecified jurisdictional discovery from unidentified defendants to try to remedy her pleading deficiencies.  (Opp. at 77, 80-81.)  She does not specify the discovery she seeks from Bergmair or how such discovery could support her claims.  Because the Amended Complaint fails to make even the most basic showing of personal jurisdiction over Bergmair, any jurisdictional discovery would amount to an unwarranted fishing expedition.

To obtain jurisdictional discovery, a plaintiff must first make a showing that there is a "colorable basis" for personal jurisdiction over the defendant in question by coming forward with "some evidence" supporting jurisdiction.  *See Symettrica Ent.*, 2019 WL 8806093, at *5 (citing *Lang v. Morris*, 823 F. Supp. 2d 966, 979 (N.D. Cal. 2011)).[19]  Moreover, jurisdictional discovery is not warranted unless a plaintiff can demonstrate how the discovery he seeks would demonstrate jurisdiction over the defendant.  *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995); *Symettrica Ent.*, 2019 WL 8806093, at *5.[20]

---

there is no personal jurisdiction when it arises from a common nucleus of facts as another claim against that defendant *for which the court already has personal jurisdiction*.  *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180–81 (9th Cir. 2004) ("When a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the same suit.").  This doctrine does not operate to allow a court to assert personal jurisdiction over a defendant simply because it has jurisdiction over his co-defendants.  Here, pendent personal jurisdiction is irrelevant because Plaintiff has not shown that the Court has jurisdiction over Bergmair with respect to *any* of her claims against him.

[19] *See also Mocha Mill, Inc. v. Port of Mokha, Inc.*, 2019 WL 1048252, at *7 (N.D. Cal. Mar. 5, 2019) (to obtain jurisdictional discovery, plaintiff must first "provide the Court with 'specific facts, transactions, or conduct that would give rise to personal jurisdiction'") (quoting *Getz v. Boeing*, 654 F.3d 852, 860 (9th Cir. 2011)); *Panterra Networks, Inc. v. Convergence Works, LLC*, 2009 WL 4049956, at *4 (N.D. Cal. Nov. 20, 2009) (to justify being allowed to conduct jurisdictional discovery, plaintiff must first produce "some evidence" establishing personal jurisdiction).

[20] *See also A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 934 (D. Or. 2020) (denying jurisdictional discovery where plaintiff failed to explain "how

1    Here, Plaintiff has not supported her claim of personal jurisdiction over

2    Bergmair with evidence, and has failed to establish a "colorable basis" for such

3    jurisdiction.  Plaintiff's sole remaining theory of jurisdiction over Bergmair is that

4    he is the alter ego of MG US and MG Global.  (Opp. at 72.)  However, as described

5    above, the Amended Complaint's allegations do not even come close to

6    establishing an alter ego relationship between Bergmair and those entities.  *See*

7    *supra* at 5-14.  In addition, Plaintiff's claim for jurisdictional discovery is deficient

8    because it fails to identify the discovery it seeks and how such discovery might

9    demonstrate that Bergmair is subject to personal jurisdiction.  (Opp. at 76–77.)

10   Indeed, because the Amended Complaint itself confirms that Bergmair is not in

11   "daily operational control" of the company, and at most is alleged only to perform

12   functions consistent with his investor status, there is no discovery that would

13   overcome these disqualifying facts and make out a viable claim that Bergmair is the

14   alter ego of MG US, MG Global or any other MindGeek entity.  *Pebble Beach v.*

15   *Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (where plaintiff's theory of jurisdiction

16   over defendant was legally insufficient, denial of jurisdictional discovery was

17   proper); *Terracom*, 49 F.3d at 562 (affirming denial of jurisdictional discovery

18   where plaintiff "failed to demonstrate how further discovery would allow it to

19   contradict [defendant's] affidavits").[21]

20   In short, Plaintiff's request here is precisely the situation described by the

21   Ninth Circuit in *Pebble Beach* and *Terracom*, in which it held that, where a

22   plaintiff's claim of personal jurisdiction "appears to be both attenuated and based

23   on bare allegations in the face of specific denials made by the defendants, the Court

24   need not permit even limited discovery."  *Pebble Beach*, 453 F.3d at 1160 (quoting

25

26   _____

27   jurisdictional discovery might demonstrate that [defendants] are subject to personal jurisdiction").
     [21] *See also Wild v. Preventive Pest Control, LLC*, 2019 WL 2871155, at *6 (C.D.

28   Cal. May 29, 2019) (Carney, J.); *Torres v. Ford Motor Co.*, 2018 WL 4182487, at *2 (C.D. Cal. Aug. 30, 2018) (Carney, J.).

*Terracom*, 49 F.3d at 562).[22] Plaintiff's alter ego allegation is undeniably "attenuated," since the only allegations even arguably supporting it are those regarding the supposed lack of corporate separateness of other, unnamed affiliates of MindGeek and not the specific pairs of alter egos it asserts (Bergmair and MG US and Bergmair and MG Global).  Similarly, the Amended Complaint's "bare allegations" of lack of corporate separateness on the part of MG US and MG Global are contradicted by the Andreou Declaration.

District courts have frequently denied jurisdictional discovery where, as here, plaintiffs have failed to make a sufficient evidentiary showing supporting their alter ego claims.  *See, e.g.*, *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 997–98 (C.D. Cal. 2013) (where plaintiff offered no evidence that defendant controlled day-to-day operations of corporation, and defendant proffered declaration attesting to its corporate separateness, jurisdictional discovery would amount to "nothing more than a fishing expedition"); *Reynolds*, 481 F. Supp. 3d at 1005–06, 1010 (where plaintiff's alter ego allegations rested, in part, on claim about defendant's relationship with affiliated company other than supposed alter ego, and defendant submitted affidavit regarding independence of claimed alter ego, jurisdictional discovery was denied since plaintiff "offer[ed] no more than a hunch that discovery would yield jurisdictionally relevant facts"); *Martinez v. Manheim Cent. Cal.*, 2011 WL 1466684, at *3, *5–6 (E.D. Cal. Apr. 18, 2011)  (finding that plaintiffs' allegations that defendants shared headquarters and board director were insufficient to justify discovery regarding claimed alter ego relationship, and rejecting plaintiffs' argument that they were entitled to such discovery because information about the relationship of the corporate entities was "peculiarly" in defendants'

---

[22] *See also Getz*, 654 F.3d at 860 (affirming district court's denial of jurisdictional discovery where plaintiffs made only "speculative allegations of attenuated jurisdictional contacts" and failed to identify any "specific facts, transactions, or conduct" that would give rise to personal jurisdiction); *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (affirming denial of jurisdictional discovery where plaintiff's request was "based on little more than a hunch that it might yield jurisdictionally relevant facts").

1   possession).

2   By contrast, the cases cited by Plaintiff (Opp. at 77, 80-81) do not support

3   her position since, in each of them – unlike here – there was at least some evidence

4   suggesting jurisdiction and justifying discovery. *See Laub v. United States Dep't of*

5   *the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (plaintiff offered public documents

6   supporting "an arguable claim" of subject matter jurisdiction); *Chan v. Soc'y*

7   *Expeditions, Inc.*, 39 F.3d 1398, 1406 (9th Cir. 1994) (plaintiffs submitted

8   documents filed by defendant in bankruptcy court indicating possible agency

9   relationship with Washington state company); *Payrovi v. LG Chem Am., Inc.*, 491

10   F. Supp. 3d 597, 609 (N.D. Cal. 2020) (plaintiff able to articulate a "specific

11   suspicion" that defendant had partnered with an identified California company to

12   market its products); *Brophy v. Almanzar*, 359 F. Supp. 3d 917, 924 (C.D. Cal.

13   2018) (Carney, J.) (plaintiff able to point to numerous California contacts of

14   defendant entertainer in promoting her album as basis for jurisdiction); *Orchid*

15   *Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 672, n.1, 674 (S.D. Cal. 2001)

16   (affidavit of defendant's own employee listed 78 contacts it had with California in

17   the last two years).

18

19   As result, the Court should reject Plaintiff's request to obtain jurisdictional

20   discovery from Bergmair.

21   **II.   PLAINTIFF FAILED TO STATE A CLAIM AGAINST BERGMAIR**

22

23   Just as with her jurisdictional allegations, Plaintiff relies entirely on an alter

24   ego theory in an attempt to paper over the substantive deficiency of her allegations,

25   but her alter ego claim is insufficient in this context as well.

26   In his Opening Brief, Bergmair demonstrated that general allegations of

27   corporate control, like those made against him here, are insufficient to state a claim.

28   (Bergmair Br. at 30-40.)  Although the Amended Complaint asserts 18 separate

claims against Bergmair, each with separate elements, it literally does not identify a single concrete act taken by him giving rise to any of these claims.  Its bare allegations do not come close to satisfying the specific elements of sex trafficking, civil RICO, or any of the multiple other causes of action asserted by Plaintiff.  Such conclusory allegations fall far short of justifying Plaintiff's attempt to hold an individual – who is alleged to be at most a mere shareholder of MindGeek – responsible for the conduct of corporate entities.

With no even-halfway-plausible counter-argument, Plaintiff virtually concedes that she has failed to state a claim against Bergmair, meaning that, even if she could demonstrate jurisdiction over him, her case against him must still be dismissed.  Plaintiff primarily focuses her alter ego argument on the issue of personal jurisdiction, but makes several scattered references to the alter ego theory in her Opposition in a half-hearted attempt to throw in some argument why her claims against Bergmair are adequately pled.  (Opp. at 45, 52, 65.)  But her alter ego claim fares no better in this context and cannot serve as the basis for liability.

Plaintiff next attempts to justify her deficient allegations – which repeatedly lump all defendants together by attributing conduct generically to "MindGeek" or "the MindGeek Defendants" – by arguing that she is permitted to engage in "group pleading" and sort out the specifics later through discovery.  (Opp. at 31, n.8, 51.)  This argument is meritless.  Indeed, in a recent similar case involving claims against an adult entertainment website, the Court granted a motion to dismiss due to such impermissible group pleading.  *See Doe v. WebGroup Czech Republic*, 2022 WL 982248, at **2, 10 (C.D. Cal. Jan. 13, 2022) (even though moving defendants were related corporate entities alleged to "work together" with the other defendants as "a coordinated group," plaintiff was not excused from requirement that she "state with particularity which allegations are attributable to which defendants").[23]  *See*

---

[23] *See also Gavriliuc v. Teksystems, Inc.*, 2021 WL 3568252, at **2-3 (C.D. Cal. Apr. 14, 2021) (even though Plaintiff alleged that related corporate defendants were all agents of each other, this did not "absolve Plaintiff of the basic federal pleading

1   *also Mujica v. AirScan, Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) ("plaintiffs must

2   satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it")

3   (emphasis in original) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).

4           Moreover, Plaintiff offers no support for her argument.  In three of the four

5   cases she cites, the group pleading related to multiple corporate entities in a single

6   corporate family.[24]  Nothing in those cases suggests that an individual defendant

7   like Bergmair can properly be lumped in with ten other corporate and individual

8   defendants and be required to guess which of the Amended Complaint's hundreds

9   of general references to MindGeek concern him.  In the one case cited by Plaintiff

10  involving individual defendants (Opp. at 51), this Court did not offer the blanket

11  approval of group pleading that Plaintiff here suggests.  Instead, the Court initially

12  dismissed the complaint due to impermissibly vague group pleading, and only

13  found the amended complaint sufficient where it attached a chart listing the details

14  of thousands of allegedly false claims and tying each one to a specific defendant.

15  *See State Comp. Ins. Fund v. Khan*, 2013 WL 12132027, at *4 (C.D. Cal. July 30,

16  2013) (Carney, J.).

17          Plaintiff's broad-brush approach carries over to her Opposition as well.  In

18  attempting to obscure her failure to allege any specifics regarding Bergmair

19  individually, she repeatedly makes assertions regarding "the MindGeek

20  Defendants" (defined to include Bergmair)[25] which are simply inaccurate.  For

21  _____

22  requirements" and complaint's failure to distinguish between defendants required
    dismissal); *Polsky v. Ramnani*, 2018 WL 6133406, at **4-5 (C.D. Cal. Mar. 26,
    2018) (granting dismissal where complaint mostly failed to distinguish between

23  defendants who were individual corporate officers and directors with different
    responsibilities and duties); *Yost v. Nationstar Mortg., LLC*, 2013 WL 4828590, at

24  *3 (E.D. Cal. September 9, 2013) ("under the pleading standard of either Rule 8 or
    Rule 9, Plaintiffs must distinguish Defendants' particular roles in the alleged causes

25  of action … [and] provide facts showing how each and every Defendant is
    involved").

26  [24] Opp. at 31, n.8 (citing *Waldrup v. Countrywide Fin. Corp.*, 2015 WL 93363, at
    *8 (C.D. Cal. Jan. 5, 2015); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales*

27  *Practices & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 976–77 (N.D. Cal. 2018); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*, 2017

28  WL 4890594, at *11 (N.D. Cal. Oct. 30, 2017)).
    [25] Opp. at 1, n.1.

BERGMAIR'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

example, Plaintiff repeatedly asserts that this Court's ruling in *Doe v. MindGeek*, 558 F. Supp. 3d 828 (C.D. Cal. 2021), establishes that the Amended Complaint adequately pleads the elements of her trafficking and child pornography claims against "the MindGeek Defendants," when Bergmair was not a party to that case, and it involved a different plaintiff, different videos and different facts.  (Opp. at 26-27, 31, 35, 38, 39.)  Similarly, Plaintiff argues that the Court's ruling in *Doe* somehow established that "the MindGeek Defendants" were "content creators" under Section 230[26] (Opp. at 66-67) even though Bergmair's conduct was not before the Court in that case, and the Amended Complaint here does not allege that Bergmair had anything whatsoever to do with Plaintiff or her videos, or ever even heard of her.  In the same vein, Plaintiff frequently claims that her allegations of corporate conduct by MindGeek are somehow sufficient to state a claim against Bergmair and the other Individual Defendants.  (Opp. at 34, 38, 45.)  But this broad-brush approach only underscores that Plaintiff is simply unable to point to any individual actions by Bergmair giving rise to her claims.

As a result, even if the Court had jurisdiction over Bergmair, the Amended Complaint's claims against him must still be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state any claim for relief.

## CONCLUSION

For these reasons, the Court should dismiss Plaintiff's Amended Complaint with prejudice both for lack of personal jurisdiction and for failure to state a claim for relief.

---

[26] 47 U.S.C. § 230.

BERGMAIR'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

1  | Dated:      July 25, 2022                    RONALD G. WHITE
2  |                                              DAN MARMALEFSKY
   |                                              MORRISON & FOERSTER LLP
3  |
4  |                                              By:   /s/ Ronald G. White
   |                                                    Ronald G. White
5  |
6  |                                              Attorneys for Defendant
   |                                              BERND BERGMAIR
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BERGMAIR'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT