1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Evan S. Nadel (SBN 213230)
enadel@mintz.com
Adam B. Korn (SBN 331133)
abkorn@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
2049 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202

Peter A. Chavkin (*Pro Hac Vice*)
pchavkin@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
Chrysler Center 666 Third Avenue
New York, NY 10017
Telephone:  (212) 935-3000
Facsimile:  (212) 983-3115

Attorneys for Specially-Appearing Defendant,
COREY URMAN

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENA FLEITES,<br><br>        Plaintiff,<br><br>   vs.<br><br>MINDGEEK S.A.R.L. a foreign entity; MG FREESITES, LTD., a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; MG PREMIUM LTD, a foreign entity; MG GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 QUEBEC, INC. (d/b/a MindGeek), a foreign entity; BERND BERGMAIR, a foreign individual; FERAS ANTOON, a foreign individual; DAVID TASSILLO, a foreign individual; COREY URMAN, a foreign individual; VISA INC., a Delaware corporation; COLBECK CAPITAL DOES 1-5; and BERGMAIR DOES 1-5,<br><br>        Defendants. | CASE NO.  2:21-cv-4920-CJC-ADS<br><br>**REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Hearing Date:  August 8, 2022<br>Hearing Time:  1:30 p.m.<br>Courtroom:  9B<br>Judge:  Hon. Cormac J. Carney |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................ 1

ARGUMENT .................................................................... 1

I.    THE AMENDED COMPLAINT FAILS TO
ESTABLISH PERSONAL JURISDICTION OVER MR.
URMAN. ................................................................ 1

    A.    Plaintiff Fails To Establish Personal Jurisdiction
Over Mr. Urman Through An Alter Ego Theory .................... 2

        1.    Failure to satisfy the ownership and unity of
interest requirement ........................................ 4

            a.    Plaintiff fails to allege Mr. Urman's
ownership interest in his purported
alter ego ................................................ 4

            b.    Plaintiff has not alleged a unity of
interest between Mr. Urman and the
alleged alter ego ................................... 6

        2.    Plaintiff also has not satisfied the additional
alter ego requirement of showing that Mr.
Urman acted in bad faith .................................. 9

        3.    The burden to establish jurisdiction is on
Plaintiff .................................................. 10

    B.    Plaintiff Fails To Allege Sufficient Contacts by
Mr. Urman to Qualify Under Rule 4(k) ........................ 12

    C.    Plaintiff Cannot Apply 18 U.S.C. § 2255 to Mr.
Urman ........................................................ 13

    D.    Plaintiff Cannot Establish Jurisdiction Through 18
U.S.C. § 1965 ................................................ 14

    E.    Jurisdictional Discovery Is Not Warranted or
Appropriate. ................................................ 15

II.    The Deficiencies in Plaintiff's Section 230 Argument and
Her Substantive Counts ........................................ 19

    A.    Section 230 Immunity Shields Mr. Urman ................... 20

    B.    The TVPRA Counts Must Be Dismissed Against
Mr. Urman .................................................. 21

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S
MOTION TO DISMISS THE AMENDED COMPLAINT

C.   The Child Exploitation Counts Must Be Dismissed Against Mr. Urman ................................................................ 22

D.   The RICO Counts Must Be Dismissed Against Mr. Urman .................................................................................. 23

E.   The State Law Claims Must Be Dismissed Against Mr. Urman ................................................................ 24

CONCLUSION ................................................................................ 25

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS THE AMENDED COMPLAINT

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Action Embroidery Corp. v. Alt. Embroidery, Inc.*,
5    368 F.3d 1174 (9th Cir. 2004) ..................................................................14, 24

6

*ADO Finance, AG v. McDonnell Douglas Corp.*,
7    931 F. Supp. 711 (C.D. Cal. 1996) ...................................................................8

8 *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
9    2015 WL 12777092 (C.D. Cal. Oct. 23, 2015) .................................................4

10 *AMA Multimedia, LLC v. Wanat*,
    970 F.3d 1201 (9th Cir. 2020) .....................................................................11, 12
11

12 *Asahi Metal Industry Co., Ltd. v. Superior Court*,
    480 U.S. 102 (1987)...........................................................................................2
13

14 *Barantsevich v. VTB Bank*,
    954 F. Supp. 2d 972 (C.D. Cal. 2013) ............................................................11

15 *Brophy v. Almanzar*,
16    359 F. Supp. 3d 917 (C.D. Cal. 2018) ............................................................16

17 *Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
18    788 F.2d 535 (9th Cir. 1986) ..........................................................................16

19 *Cai v. Fishi Cafe, Inc.*,
20    2007 WL 2781242 (N.D. Cal. Sept. 20, 2007)..................................................5

21 *Calvert v. Huckins*,
22    875 F. Supp. 674 (E.D. Cal. 1995) .............................................................7, 8, 9

23 *Cd Listening Bar, Inc. v. Caiman Holdings, Inc.*,
    2008 WL 11336948 (C.D. Cal. June 11, 2008)................................................6
24

25 *Chan v. Society Expeditions, Inc.*
    39 F.3d 1398 (9th Cir. 1994) ..........................................................................17
26

27 *Corcoran v. CVS Health Corp.*,
    169 F. Supp. 3d 970 (N.D. Cal. 2016).........................................................8, 9

28

iii

*Cybersell, Inc. v. Cyversell, Inc.*,
   130 F.3d 414 (9th Cir. 1997) .............................................................. 12

*Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*,
   557 F.2d 1280 (9th Cir. 1977) ............................................................ 11

*Doe v. Mindgeek USA Inc.*,
   558 F. Supp. 3d 828 (C.D. Cal. 2021) ................................................ 20

*Doe v. Twitter, Inc.*,
   555 F. Supp. 3d 889 (N.D. Cal. 2021) ................................................ 22

*Doe v. WebGroup Czech Republic, a.s.*,
   2022 WL 982248 (C.D. Cal. Jan. 13, 2022) ........................... 14, 20, 23

*Don't Look Media LLC v. Fly Victory Limited*,
   999 F.3d 1284 (11th Cir. 2021) .......................................................... 15

*Ewing v. Encor Solar, LLC*,
   2019 WL 277386 (S.D. Cal. Jan. 22, 2019) ......................................... 4

*Firstmark Cap. Corp. v. Hempel Fin. Corp.*,
   859 F.2d 92 (9th Cir. 1988) ................................................................. 5

*Getz v. Boeing*,
   654 F.3d 852 (9th Cir. 2011) .............................................................. 16

*Gofron v. Picsel Techs., Inc.*,
   804 F. Supp. 2d 1030 (N.D. Cal. 2011) ............................................. 11

*Iconlab, Inc. v. Bausch Health Cos.*,
   828 F. App'x 363 (9th Cir. 2020) ......................................................... 9

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods.
   Liab. Litig.*,
   295 F. Supp. 3d 927 (N.D. Cal. Mar. 15, 2018) ................................... 5

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab.
   Litig.*,
   2017 WL 4890594 (N.D. Cal. Oct. 30, 2017) ............................... 5, 23

*Incipio, LLC v. Argento Sc By Sicura Inc.*,
   2018 WL 4945002 (C.D. Cal. July 18, 2018) ....................................... 2

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S
MOTION TO DISMISS THE AMENDED COMPLAINT

*ISI Int'l v. Borden Ladner Gervais LLP,*
    256 F.3d 548 (7th Cir. 2001) .................................................................. 12

*Kammona v. Onteco Corp.,*
    587 F. App'x 575 (11th Cir. 2014) ....................................................... 14

*Katzir's Floor & Home Design, Inc. v. M-MLS.com,*
    394 F.3d 1143 (9th Cir. 2004) .............................................................. 10

*Lang v. Morris,*
    823 F. Supp. 2d 966 (N.D. Cal. 2011) .................................................. 16

*Laub v. U.S. Dep't of Interior,*
    342 F.3d 1080 (9th Cir. 2003) .............................................................. 17

*MH Pillars, Ltd. v. Realini,*
    2017 WL 916414 (N.D. Cal. Mar. 8, 2017) ........................................... 6

*Mieuli v. DeBartolo,*
    2001 WL 777447 (N.D. Cal. Jan. 16, 2001) .......................................... 8

*Mocha Mill, Inc. v. Port of Mokha, Inc.,*
    2019 WL 1048252 (N.D. Cal. Mar. 5, 2019) ....................................... 16

*Neilson v. Union Bank of Cal., N.A.,*
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ................................................. 9

*Orchid Biosciences, Inc. v. St. Louis Univ.,*
    198 F.R.D. 670 (S.D. Cal. 2001) .......................................................... 17

*Pado, Inc. v. SG Trademark Holding Co. LLC,*
    2020 WL 1445720 (C.D. Cal. Mar. 24, 2020) ....................................... 4

*Park Miller, LLC v. Durham Group, Ltd.,*
    2019 WL 6841216 (N.D. Cal. Dec. 16, 2019) ....................................... 8

*Payrovi v. LG Chem Am., Inc.,*
    491 F. Supp. 3d 597 (N.D. Cal. 2020) ................................................. 17

*Reynolds v. Binance Holdings Ltd.,*
    481 F. Supp. 3d 997 (N.D. Cal. 2020) ................................................. 18

*Ross v. Altria Grp., Inc.,*
    2004 WL 2055712 (N.D. Cal. Sept. 7, 2004) ........................................ 2

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S
MOTION TO DISMISS THE AMENDED COMPLAINT

*Sihler v. Fulfillment Lab, Inc.*,
   2020 WL 7226436 (S.D. Cal. Dec. 8, 2020) ........................................................8

*State Comp. Ins. Fund v. Khan*,
   2013 WL 12132027 (C.D. Cal. July 30, 2013) ....................................................5

*Stewart v. Screen Gems*,
   81 F. Supp. 3d 938 (E.D. Cal. 2015) ..................................................................18

*Uhlig v. Fairn & Swanson Holdings, Inc.*,
   2020 WL 6872881 (S.D. Cal. Nov. 23, 2020)......................................................7

*United States v. Toyota Motor Corp.*,
   561 F. Supp. 354 (C.D. Cal. 1983) ......................................................................8

*Waldrup v. Countrywide Fin. Corp.*,
   2015 WL 93363 (C.D. Cal. Jan. 5, 2015)........................................................5, 21

*Willick v. Napoli Bern Ripka & Associates, LLP*,
   2019 WL 3064120 (C.D. Cal. Mar. 13, 2019) ....................................................7

*Yost v. Nationstar Mortgage LLC*,
   2013 WL 4828590 (E.D. Cal. Sept. 9, 2013) ....................................................19

*Zosma Ventures, Inc. v. Givi*,
   2014 WL 12579805 (C.D. Cal. Oct. 28, 2014) ..................................................11

**California Cases**

*Hasso v. Hapke*,
   227 Cal. App. 4th 107 (2014) ..............................................................................2

*Kao v. Holiday*,
   58 Cal. App. 5th 199 (2022) ..............................................................................20

**Federal Statutes**

Racketeer Influenced and Corrupt Organizations Act ("RICO")
   18 U.S.C. §§ 1965 -1968 ......................................................................14, 23, 25

18 U.S.C. § 2255............................................................................................13, 14, 22

**Federal Rules of Civil Procedure**

FED. R. CIV. PROC. 4(d)(3) ..................................................................................15

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S
MOTION TO DISMISS THE AMENDED COMPLAINT

1

FED. R. CIV. PROC. 4(k) ................................................................................. 12

2

FED. R. CIV. PROC. 8 and 9 ........................................................................... 20

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S
MOTION TO DISMISS THE AMENDED COMPLAINT

# INTRODUCTION

Plaintiff's opposition (ECF No. 151 ("Opposition")) utterly ignores the many arguments in Corey Urman's opening brief in support of his motion to dismiss (ECF No. 141-1 ("Opening Brief")), demonstrating why she has not established personal jurisdiction over him or his connection to the substantive counts in her Amended Complaint (ECF No. 124-3). Instead, she parrots the inadequate allegations of her Amended Complaint, unable to identify the detailed allegations required by the case law. Despite being notified of these fatal deficiencies, through briefing on her original complaint and the opening briefs filed here, Plaintiff persists in this conduct. There is only one reasonable conclusion: she cannot do any better.

# ARGUMENT

## I. THE AMENDED COMPLAINT FAILS TO ESTABLISH PERSONAL JURISDICTION OVER MR. URMAN

In her Opposition, Plaintiff concedes that Mr. Urman's personal actions did not create a basis for asserting general or specific jurisdiction over him. Instead, Plaintiff makes what is the following unprecedented argument: (i) certain MindGeek entities over which the Court has jurisdiction (ii) are alter egos of other MindGeek related entities and (iii) this mass of MindGeek-related entities are alter egos of Mr. Urman himself (along with all the other individual defendants). She does so by declaring that all of these entities and people are sufficiently connected to satisfy the alter ego test without offering facts to show why that is so.

Plaintiff cites no case in which such a lengthy chain of alter ego imputation, even with supporting facts, has been accepted by any court. And here, Plaintiff does not cite a single act by Mr. Urman by which he made *any* entity his alter ego.

To the contrary, Plaintiff seeks refuge in conclusory group pleading, essentially arguing that if Plaintiff says it is so, it must be so. That format has been rejected uniformly by the courts. Then, in a last ditch effort to salvage her woefully deficient

1  complaint, and in a tacit concession of its deficiency, Plaintiff argues her entitlement
2  to jurisdictional discovery.

3       Plaintiff's Opposition tries to minimize her failures by trying to brush aside the
4  importance of personal jurisdiction.  She labels Mr. Urman's jurisdictional argument a
5  mere "procedural" issue, when jurisdiction is a fundamental prerequisite to any lawsuit
6  and when "the plaintiff bears the burden of establishing that jurisdiction exists."  *Ross*
7  *v. Altria Grp., Inc.*, 2004 WL 2055712, at *2 (N.D. Cal. Sept. 7, 2004) (citation
8  omitted).  She relegates this threshold issue to the end of her Opposition, as if she hopes
9  that her earlier description of a Mafia style operation dedicated to purveying illegal
10 pornography will persuade the Court to ignore her many jurisdictional deficiencies.
11 But her sensational allegations cannot obscure the fact that not once in an amended
12 complaint of 534 paragraphs has Plaintiff alleged a single fact that shows that this Court
13 has personal jurisdiction over Mr. Urman, a Canadian citizen who works in Canada, as
14 the Amended Complaint concedes.  None.

15       **A.    Plaintiff Fails To Establish Personal Jurisdiction Over Mr. Urman**
16 **Through An Alter Ego Theory**

17       Plaintiff correctly states the elements necessary to establish alter ego
18 jurisdiction, but she fails to address how her allegations about Mr. Urman meet those
19 elements, an especially high burden.  *See Incipio, LLC v. Argento Sc By Sicura Inc.*,
20 2018 WL 4945002, at *2 (C.D. Cal. July 18, 2018) ("[A] party accusing another of an
21 alter ego relationship carries a high burden both at the pleading stage and on the
22 merits."); *Hasso v. Hapke*, 227 Cal. App. 4th 107, 155 (2014) ("Alter ego is an extreme
23 remedy, sparingly used.") (citation omitted).  This burden is especially high when
24 personal jurisdiction over a foreign defendant is at issue.  *See Asahi Metal Industry*

25
26
27
28

*Co., Ltd. v. Superior Court,* 480 U.S. 102, 115 (1987) (extending personal jurisdiction internationally requires "great care and reserve") (citation omitted).[1]

Plaintiff's principal argument is that the jurisdictional contacts of certain MindGeek entities that have conceded jurisdiction should be imputed to other MindGeek entities and that all of those entities, as an undifferentiated group, are the alter ego of Mr. Urman.

According to Plaintiff, all of the MindGeek entities are part of a single "sham" corporate structure and Mr. Urman, along with the other individual defendants, helps run the structure by "directing, managing and carrying out the operations" of the alleged enterprise "including controlling and dictating the illegal conduct at issue in this case." (Opp. at 74-76 ("the Individual Defendants who exercise directive authority over the operations of *all* the entities").)

This long chain of alter ego imputation is unprecedented (and Plaintiff cites no case to support it). It also is factually deficient, providing no detail about how any of the MindGeek entities are alter egos of each other, much less how any entity is Mr. Urman's alter ego.

Although Plaintiff cites her Amended Complaint for the details of Mr. Urman's supposed direction and management (*e.g.*, Opp. at 3), that is nothing more than an illusion. The Amended Complaint never describes the actions by the entities that make them all alter egos of each other or the actions of Mr. Urman that makes any of those entities his alter ego. Instead, all of Plaintiff's allegations remain conclusory, as pointed out in Mr. Urman's Opening Brief. This is all the more remarkable when, as

---

[1]     As noted, Plaintiff has effectively conceded that she stakes her jurisdictional arguments entirely on the alter ego theory and, as now discussed, the Amended Complaint does not offer a single allegation to support jurisdiction over Mr. Urman on that theory. To the extent Plaintiff alludes to any other theory of jurisdiction, those theories have been dispatched in Mr. Urman's Opening Brief.

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S
MOTION TO DISMISS THE AMENDED COMPLAINT

1  Plaintiff knows, the MindGeek entities have offered a sworn declaration establishing
2  that the MindGeek entities respect corporate formalities  and possess separate funds.

3      Plaintiff must establish a unity of interest and ownership between the MindGeek
4  entities with which Mr. Urman is allegedly affiliated and then establish that Mr. Urman
5  used that affiliated entity as his alter ego.  Allegations that Mr. Urman was part of a
6  group of entities and individuals with undifferentiated roles falls far short.  Plaintiff has
7  cited no case that supports her assertion that mass, conclusory assertions can adequately
8  allege that a defendant dissolved corporate boundaries.  Nor could she when the case
9  law is to the contrary.  *See, e.g.*, *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth
10 Grp., Inc.*, 2015 WL 12777092, at *10 (C.D. Cal. Oct. 23, 2015) (rejecting alter ego
11 theory because generalized allegations based on group membership are "insufficient to
12 plausibly show [the individual defendant's] unity and control over the alleged network,
13 and the mere inclusion of [the individual] with the [alleged network] does not overcome
14 the deficiency"); *Ewing v. Encor Solar, LLC*, 2019 WL 277386, at *5 (S.D. Cal. Jan.
15 22, 2019) ("perfunctory and conclusory statements not supported by facts" are rejected
16 by courts and do not establish alter ego status); *Pado, Inc. v. SG Trademark Holding
17 Co. LLC*, 2020 WL 1445720, at *4 (C.D. Cal. Mar. 24, 2020) (reasoning that
18 "conclusory jurisdictional allegations" that failed to "specifically identify any events
19 or transactions that took place in California" were insufficient to establish jurisdiction).

**1.    Failure to satisfy the ownership and unity of interest requirement**

   *a.    Plaintiff fails to allege Mr. Urman's ownership interest in his purported alter ego*

Plaintiff ignores the alter ego test's requirement of ownership discussed in Mr. Urman's Opening Brief.  Instead, all Plaintiff posits is that Mr. Urman, like the other individual defendants, "direct[ed], manag[ed] and carr[ied] out the operations of the

Company." (Opp. at 74-75.)[2] This alone is fatal to Plaintiff's claim. "Ownership of an interest in the corporation is an essential part of the element of unity of ownership and interest. If an individual's ownership is not established, the corporation's obligations cannot be imposed on him or her." *Firstmark Cap. Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988). Even if conclusory allegations that Mr. Urman was part of the "Bro-Club" and that that club *operated* the relevant entities were permitted (they are not), they would still not establish ownership. Operational control and ownership are entirely separate. *See Cai v. Fishi Cafe, Inc.*, 2007 WL 2781242, at *4 (N.D. Cal. Sept. 20, 2007) ("No matter how much control there is, if there is no ownership of the company, under California law, there is no alter ego liability.") This defect is independently fatal.

---

[2]     Plaintiff's effort to justify this kind of group pleading as a response to what she claims is a deliberately opaque corporate structure is legally unsupportable. *See* Mr. Urman's Opening Brief at 22-24, the cases she cites – *Waldrup, Chrysler, Volkswagen, and Khan* – do not support her point. (Opp. at 31 n. 8; 51). In *Waldrup*, the Court denied the motion dismiss because the complaint identified the *specific* agents with whom the plaintiff dealt and included details concerning their authority to speak on behalf of the corporate defendants. *See Waldrup*, 2015 WL 93363, at *8 (C.D. Cal. Jan. 5, 2015). Here, Plaintiff has failed to include the specific allegations found in *Waldrup* nor did Plaintiff include plausible facts concerning Mr. Urman. Similar to *Waldrup, Chrysler-Dodge* involved unique factual circumstances and allegations *concerning corporate* rather than individual defendants. *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 977 (N.D. Cal. Mar. 15, 2018). Further, the Court in *Volkswagen* allowed group pleading *for two defendant entities* because those entities did not divide themselves along formal corporate lines – a situation far removed from what Plaintiff has done here, lumping four different individuals and numerous entities. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL 4890594, at *10 (N.D. Cal. Oct. 30, 2017). Finally, in *Khan* the Court allowed some "group pleading" only because that plaintiff included "enough factual detail to clarify the role and specific claims asserted against each defendant" and "multiple spreadsheets containing identifying information regarding the allegedly fraudulent bills submitted to [plaintiff]," all of which was "more than sufficient to show each defendant what specific fraudulent activity it is alleged to have engaged in." *State Comp. Ins. Fund v. Khan*, 2013 WL 12132027, at *4 (C.D. Cal. July 30, 2013).

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S
MOTION TO DISMISS THE AMENDED COMPLAINT

1

2

       b.  *Plaintiff has not alleged a unity of interest between Mr. Urman and the alleged alter ego*

3

   Even if Plaintiff could establish that Mr. Urman's alleged alter ego entity is sufficiently connected to entities over which the Court has jurisdiction, and that Mr. Urman owned his supposed alter ego entity, Plaintiff would still need to show a unity of interest between that entity and Mr. Urman.  Plaintiff correctly states that courts consider "several factors including the comingling of funds and other assets of the entities, identical equitable ownership of the entities, use of the same offices and employees, use of one entity as a mere shell or conduit for the affairs of the other, and identical directors and officers," (Opp. at 73-74), but Plaintiff has not alleged that Mr. Urman did anything to inadequately capitalize or subsequently drain any MindGeek entity over which Plaintiff claims jurisdiction has been conceded (or, for that matter, any other MindGeek entity).  Even without the Andreou Declaration, Plaintiff's efforts on this prong would fall far short; and with the Declaration, Plaintiff has no argument at all.  (ECF 139-3.)

   Despite recognizing these legal requirements, Plaintiff fails to offer a single action by Mr. Urman that satisfies even one of these requirements.  Instead, all Plaintiff can say is that the "MindGeek entities" – not even Mr. Urman specifically – "created an international network of ever-changing sham shell companies" and that individual defendants "direct[ed], manag[ed] and carr[ied] out the operations of the Company." (Opp. at 74-75) (internal citations and quotations omitted).

   This general allegation against an undifferentiated group of individuals does not come close to providing the specifics required by the case law.  *See, e.g.*, *MH Pillars, Ltd. v. Realini,* 2017 WL 916414, at *14 (N.D. Cal. Mar. 8, 2017) (dismissing on jurisdiction even where plaintiff alleged that entities served as single enterprise but failed to allege what individual defendant did to ignore corporate lines); *Cd Listening Bar, Inc. v. Caiman Holdings, Inc.,* 2008 WL 11336948, at *4-5 (C.D. Cal. June 11,

6

1    2008) (dismissing on jurisdiction, despite plaintiff alleging that corporate structure was

2    designed to frustrate lawsuit, where plaintiff failed to provide specifics).

3         Not only does the law plainly prohibit this kind of lumping together (Op. Br. at

4    22-23 (citing cases)), but even Plaintiff's impermissible group pleading allegations fail

5    to provide the specifics of operational control required to show a unity of interest. *See*

6    *Willick v. Napoli Bern Ripka & Associates, LLP*, 2019 WL 3064120, at *2, *5-6 (C.D.

7    Cal. Mar. 13, 2019) (mere allegation that individual defendants exercised complete

8    control and dominance over the business assets of the alleged alter ego entities was

9    found insufficient despite extensive allegations that the alleged alter ego entities have

10   "always been inadequately capitalized[,]" that the individuals used entity assets "for

11   their personal use and caused assets . . . to be transferred to them . . . without adequate

12   consideration"); *Uhlig v. Fairn & Swanson Holdings, Inc.*, 2020 WL 6872881, at *3

13   (S.D. Cal. Nov. 23, 2020) (allegations that individual defendants controlled company

14   and were its sole members, officers, and owners "alone [did] not establish the requisite

15   level of control for alter ego jurisdiction").

16        Plaintiff's assertion that the individual defendants exercised "directive authority

17   over the operations of *all* the entities" (Opp. at 76 (emphasis in original)) is a good

18   example of this fatal deficiency. Plaintiff offers no allegations specifying *how Mr.*

19   *Urman* exercised directive authority over the operation of all MindGeek entities. And

20   the cases Plaintiff cites only accentuate the deficiency of her pleading. For example,

21   in *Calvert v. Huckins*, 875 F. Supp. 674, 679 (E.D. Cal. 1995), the court held that a

22

23

24

25

26

27

28

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S
MOTION TO DISMISS THE AMENDED COMPLAINT

1  plaintiff must allege how the individual defendant controls a company's operations on
2  a "day-to-day basis" and held that oversight alone is not enough.[3]

3     Finally, Plaintiff incorrectly argues that two pivotal cases – *Symettrica* and
4  *Corcoran* – should be discounted because, according to Plaintiff, the plaintiffs there
5  supposedly asserted only that the defendants had a "mere affiliation" with the purported
6  alter ego.  Plaintiff misconstrues both cases.

7     In *Symettrica*, the court refused to find personal jurisdiction precisely because
8  the complaint contained "only conclusory statements which allege that there is a unity
9  of interest."  2019 WL 8806093, at *4 (C.D. Cal. Sept. 20, 2019).  The court explained
10  that the "only support for these conclusions are allegations—made upon information
11  and belief—that Symettrica is undercapitalized, fails to undertake corporate
12  formalities, and that the director defendants co-mingled Symettrica's funds with their
13  own."  *Id.*  In other words, in that case, the plaintiff offered far more than "mere
14  affiliation."  (Opp. at 75 n. 39.)  The plaintiff alleged undercapitalization and
15  commingling of funds (more than Ms. Fleites alleges here), and even those greater
16  allegations were still found to be badly deficient because of their conclusory and
17  general nature.

18
19

20  [3]     Plaintiff's other citations fare no better.  *Sihler v. Fulfillment Lab, Inc.*, 2020 WL
21  7226436, at *6 (S.D. Cal. Dec. 8, 2020), *Mieuli v. DeBartolo*, 2001 WL 777447, at * 9
    (N.D. Cal. Jan. 16, 2001), and *ADO Finance, AG v. McDonnell Douglas Corp.*, 931 F.
22  Supp. 711, 713, 717-18 (C.D. Cal. 1996), all alleged specific activity by the specific
23  entities that were claimed to be alter egos, unlike the Amended Complaint here, whose
    alter ego allegations relate to a mass of undifferentiated MindGeek entities.  Courts
24  routinely reject alter ego claims where allegations do not focus on the specific parties
    claimed to be alter egos.  *See Park Miller, LLC v. Durham Group, Ltd.*, 2019 WL
25  6841216, at *10 (N.D. Cal. Dec. 16, 2019) (holding that the intermingling of assets
26  between two corporations did not support an alter ego theory involving the owner of
    the two corporations).  In *United States v. Toyota Motor Corp.*, 561 F. Supp. 354, 359
27  (C.D. Cal. 1983), the court did not even undertake an alter ego analysis because
    jurisdiction was established through statute.
28

8

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S
MOTION TO DISMISS THE AMENDED COMPLAINT

The same holds true of *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970 (N.D. Cal. 2016).  There, too, the court refused to credit alter ego allegations even where the plaintiffs pointed to shared officers and executives and management and administrative services to support the overall operations and segments of CVS Health. *Id.* at 983.  In rejecting the plaintiffs' alter ego argument, the court explained that "it is considered a normal attribute of ownership that officers and directors of the parent serve as officers and directors of the subsidiary."[4]

### 2. Plaintiff also has not satisfied the additional alter ego requirement of showing that Mr. Urman acted in bad faith

Plaintiff does not even bother to address the bad faith/injustice prong of the alter ego test.  That prong, no less than the ownership/unity of interest prong, is a required part of the alter ego analysis.  *See Iconlab, Inc. v. Bausch Health Cos.*, 828 F. App'x 363, 364 (9th Cir. 2020) (to establish alter ego liability, plaintiff must establish that "the 'failure to disregard' the separate entities 'would result in fraud or injustice'") (citation omitted); *Calvert*, 875 F. Supp. at 679 ("Even if plaintiffs had made a sufficient prima facie showing of control, defendants' motion [to dismiss] would still be granted since plaintiffs have produced no evidence whatsoever going to the second requirement for piercing the corporate veil – that failure to do so would 'sanction a fraud or promote injustice.'") (citation omitted).

To establish an alter ego relationship, Plaintiff must show that it would be unjust to allow Mr. Urman's bad faith conduct or abuse of the corporate privilege to preclude the possibility of recovery.  In other words, Plaintiff must allege both bad faith *and* that injustice would flow should the distinction between corporation and individual not be dissolved.  An allegation of the particular defendant's bad faith is required.  *See Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1117 (C.D. Cal. 2003) (courts

---

[4]    Under *Corcoran*, Plaintiff's argument (Opp. at 76, n. 40) that "intertwined board members and directors" supports her alter ego theory is therefore meritless.  169 F. Supp. 3d at 983.  Plaintiff cites no case law to support her point.

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS THE AMENDED COMPLAINT

require "evidence of bad faith conduct on the part of defendants before concluding that an inequitable result justifies an alter ego finding."). In addition, Plaintiff must allege something more than the normal injustice that would arise should she not be able to recover. *See Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) ("The injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, it is the injustice that results only when corporate separateness is illusory.").

The Amended Complaint alleges neither bad faith nor injustice, an independently fatal defect in Plaintiff's alter ego theory. Once again, Plaintiff does not address any of the deficiencies pointed out at pages 19-21 of Mr. Urman's Opening Brief. In fact, Plaintiff identifies no action by Mr. Urman with respect to the entities in question, driven by bad faith or not.

As to injustice, to the extent that Plaintiff contends that the inclusion of Mr. Urman is necessary to ensure she can collect some deserved judgment, the Amended Complaint contains no allegations that she would be unable to recover any potential judgment unless Mr. Urman remains in the case. The MindGeek entities, according to the Andreou Declaration, are funded. Nor has Plaintiff explained why she cannot pursue Mr. Urman in the pending Canadian class action asserting comparable claims. (Op. Br. at 20.)

### 3.    The burden to establish jurisdiction is on Plaintiff

Plaintiff also argues that it is the defendant who must refute jurisdiction. (Opp. at 75.) In effect, she asks the Court to overlook the deficiencies in her Amended Complaint because Mr. Urman and the other individual defendants have not affirmatively supported their positions with factual affirmations.

That, of course, stands the burden of proof on its head and, tellingly, Plaintiff cites no case law requiring defendants to submit a declaration to refute deficient allegations. The defendants bear no burden to submit anything where a complaint, on

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S
MOTION TO DISMISS THE AMENDED COMPLAINT

1  its face, does not satisfy the plaintiff's burden.  *See AMA Multimedia, LLC v. Wanat*,

2  970 F.3d 1201, 1207 (9th Cir. 2020).

3      Moreover, while no declaration is required, the fact is that the MindGeek entities

4  have supplied a declaration (the Andreou Declaration) that roundly rejects Plaintiff's

5  alter ego contentions anyway.  Plaintiff asks this Court to disregard that Declaration as

6  "self-serving" and therefore insufficient, yet Plaintiff offers no facts to show why that

7  Declaration is wrong.

8      Plaintiff's alter ego theory rests on MG US and MG Global not observing

9  corporate separateness, but the Andreou Declaration attests that MG US and MG

10 Global are "adequately capitalized," have their own bank accounts, and observe "all

11 necessary corporate formalities."  (Andreou Declaration ¶¶ 22, 30.)  *See Data Disc.,*

12 *Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) (holding that courts

13 "may not assume the truth of allegations in a pleading which are contradicted by

14 affidavit"); *Gofron v. Picsel Techs., Inc.*, 804 F. Supp. 2d 1030, 1037 (N.D. Cal. 2011)

15 (concluding plaintiffs could not rest on allegations to establish jurisdiction where

16 defendant nonresident company had submitted an affidavit contradicting their

17 allegations: "a plaintiff's allegations are not taken as true where they are contradicted

18 by affidavit"); *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 997 (C.D. Cal. 2013)

19 ("[P]laintiff has failed to adduce any evidence that it would be appropriate to disregard

20 the corporate structure . . . [where defendant's] proffers concerning the legal

21 separateness of the entities [are] uncontroverted."); *Zosma Ventures, Inc. v. Givi*, 2014

22 WL 12579805, at *4 (C.D. Cal. Oct. 28, 2014)  ("if the defendant directly contradicts

23 the allegations in the complaint, the 'plaintiff may not rest on the pleadings, but must

24 present evidence which, if true, would support the exercise of personal jurisdiction.'")

25 (citation omitted).

26

27

28

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S
MOTION TO DISMISS THE AMENDED COMPLAINT

In short, Plaintiff has failed to meet the requirements for using an alter ego theory to establish personal jurisdiction over Mr. Urman.[5]

### B. Plaintiff Fails To Allege Sufficient Contacts by Mr. Urman to Qualify Under Rule 4(k)

Plaintiff alternatively argues that Mr. Urman's minimum contacts with the United States confer jurisdiction via Rule 4(k). Rule 4(k) only applies when a defendant has "ample contacts with the nation as a whole, but whose contacts are so scattered among states that none of them would have jurisdiction." *ISI Int'l v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001) (citation omitted). As noted in Mr. Urman's Opening Brief, Plaintiff does not describe what his minimum contacts are. (Opp. at 78.) Indeed, Plaintiff has not pled *any* contact by Mr. Urman in California or in the United States.

Plaintiff's argument that MindGeek's websites offer content to a U.S. audience or that it seeks to advertise to that audience is meritless for two reasons. First, the fact that a website can be accessed by individuals in the United States does not confer jurisdiction. *See Cybersell, Inc. v. Cyversell, Inc.*, 130 F.3d 414, 419-20 (9th Cir. 1997) (website that is available nationally without targeting any particular forum does not support personal jurisdiction, even where forum resident reaches out to website).

Second, even if website offerings in the U.S. could confer jurisdiction over someone, Plaintiff has not pled how Mr. Urman is connected to the website offerings or advertisements in question. Plaintiff does not allege that Mr. Urman owned or operated any of these websites. *See AMA Multimedia, LLC*, 970 F.3d at 1212 n. 9 (refusing to exercise personal jurisdiction even where the foreign defendant registered

---

[5]    Plaintiff references "agency" in a heading but does not discuss this theory any further. Regardless, Mr. Urman's Opening Brief explains why agency principles cannot apply as a basis for personal jurisdiction (including *Daimler's* holding precluding its use), and Plaintiff has not contested any of those arguments. (Op. Br. at 24.)

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S
MOTION TO DISMISS THE AMENDED COMPLAINT

1  two domain names in Arizona and entered into an agreement with a U.S. company
2  because "nothing more than [plaintiff's] contested bare allegations support any
3  personal involvement by [defendant] in uploading, encouraging the uploading, or
4  intentionally failing to remove the infringing content").

5      Once again, Plaintiff relies on conclusory group pleading: "defendants own and
6  operate hundreds of pornographic websites that are accessible throughout the United
7  States and California." (Opp. at 78.) But Plaintiff cannot fill this gap as she tries to do
8  by lumping Mr. Urman together with all other defendants and alleging that "they
9  designed and operate[d] a complex corporate structure through which defendants
10 targeted United States and California consumers" and "directly conduct[ed] operations
11 and advertisements in California." (Opp. at 78.) This type of allegation fails for two
12 reasons: first, it is far too conclusory to provide the necessary U.S. contacts for even
13 the undifferentiated mass Plaintiff describes; and second, it is a prohibited group
14 pleading, as Mr. Urman has repeatedly pointed out in arguments that Plaintiff has
15 ignored. *See* Op. Br. at 22-24.

16     **C.    Plaintiff Cannot Apply 18 U.S.C. § 2255 to Mr. Urman**

17     Plaintiff mentions but does not seriously argue that Section 2255 supports
18 jurisdiction over Mr. Urman, presumably because she cannot do so. (Opp. at 78-79.)
19 Plaintiff's Section 2255 argument focuses entirely on the corporate MindGeek entities,
20 not the individual defendants. *Id.* In any event, Section 2255 could not apply to Mr.
21 Urman because he does not reside in any U.S. state, and nor could he be found in any
22 U.S. state, as Section 2255 requires. As Plaintiff has pled, he resides in Canada. (Op.
23 Br. at 28.)

24     Moreover, for Section 2255 to apply, Plaintiff must establish minimum contacts
25 by Mr. Urman in the United States. "When a statute authorizes nationwide service of
26 process, national contacts analysis is appropriate. In such cases, 'due process demands
27 [a showing of minimum contacts with the United States] with respect to foreign

28

---

13

defendants before a court can assert personal jurisdiction." *Action Embroidery Corp. v. Alt. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citations omitted). Here, Plaintiff has not alleged any contacts by Mr. Urman with the United States.

In fact, Mr. Urman's situation, based on the Amended Complaint, is distinctly different from those cases where Section 2255 jurisdiction has been found. In *Action Embroidery*, on which Plaintiff relies, the defendant was a Virginia professional corporation operating in the United States. *Id.* In *Kammona v. Onteco Corp.*, 587 F. App'x 575, 579-80 (11th Cir. 2014) – another case cited by Plaintiff – the defendant was a stock transfer corporation with a Utah address and served as the transfer agent for a Nevada corporation doing business in Florida, so the defendant's "basic operations" showed that it had at least "minimum contacts" with the United States. *See Doe v. WebGroup Czech Republic, a.s.*, 2022 WL 982248, at *7 (C.D. Cal. Jan. 13, 2022), amended on reconsideration in part *sub nom. Doe v. WebGroup Czech Republic*, 2022 WL 982245 (C.D. Cal. Feb. 25, 2022) ("Because Plaintiff is unable to establish that the Foreign Defendants purposely directed their activities to the United States, the Court lacks personal jurisdiction over them").[6]

### D.    Plaintiff Cannot Establish Jurisdiction Through 18 U.S.C. § 1965

Although RICO provides a jurisdictional basis for RICO claims where service is made in a U.S. judicial district, no such service occurred here. Plaintiff claims that individual defendants' reliance on their completed waivers of service is an attempt at "gamesmanship" to "evade liability." (Opp. at 79 n. 41.) But in making that argument, Plaintiff ignores the unambiguous language in these publicly filed documents.

Mr. Urman, like the other foreign-based defendants, waived service of process because the Federal Rules encourage this and because, under the Rules, only one thing

---

[6]    Plaintiff's contention that *WebGroup* did not consider Section 2255 (Opp. at 79 n.42) is simply wrong. *See Doe v. WebGroup Czech Republic, a.s.*, 2022 WL 982248, at *6-7. Moreover, the court condemned the commingling of defendants where those allegedly responsible were not identified. *Id.* at *10.

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS THE AMENDED COMPLAINT

is waived: a defect in service. All personal jurisdiction defenses are and were expressly preserved. Urman Waiver of Service of Summons, ECF No. 33 ("I . . . will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons."). Mr. Urman even executed the waiver from his Canadian address, reflected in a stipulation *Plaintiff's counsel endorsed.* ECF No. 31 ("pursuant to <u>Federal Rule of Civil Procedure 4(d)(3)</u>, following such waiver, the deadline for Individual Defendants to answer or otherwise respond would be October 21, 2021, since they are foreign citizens residing outside the United States and the waiver request was sent to them outside any judicial district of the United States" and "by waiving service and by entering into this stipulation, MindGeek Defendants and Individual Defendants expressly reserve all defenses or objections to the lawsuit (including lack of personal jurisdiction), except as to service or the absence of service.") (emphasis in original). That Mr. Urman has United States counsel is irrelevant. *See Don't Look Media LLC v. Fly Victory Limited,* 999 F.3d 1284, 1294 (11th Cir. 2021) (agreement not to contest service "did not waive the right to challenge personal jurisdiction"; they are "distinct requirements").

**E.    Jurisdictional Discovery Is Not Warranted or Appropriate.**

In Plaintiff's last-ditch effort to salvage jurisdiction, she argues that she is entitled to discovery. Tellingly, she does not even describe with any specificity how discovery would help her. She even argues that it is the defendants' burden to show why discovery would *not* yield facts demonstrating jurisdiction. (Opp. at 77.) That burden-shifting is simply wrong.

Mr. Urman described at length why Plaintiff's request is unjustified (Op. Br. at 28-30), yet once again, Plaintiff ignores those arguments. She chooses, instead, to argue that discovery is appropriate because it would yield "facts bearing on the question of jurisdiction," without ever explaining why that expectation is plausible. (Opp. at

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S
MOTION TO DISMISS THE AMENDED COMPLAINT

80-81.)  As with her other arguments, this is unacceptably conclusory and falls far short of the bar established by courts before jurisdictional discovery is granted.  *See Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (affirming denial of jurisdictional discovery where plaintiffs made only "conclusory" allegations and did not provide any detail regarding how discovery would enable them to demonstrate jurisdiction).

This Court's decision in *Brophy v. Almanzar*, 359 F. Supp. 3d 917, 925 (C.D. Cal. 2018) leaves no doubt on this score.  There, this Court allowed jurisdictional discovery only after plaintiff offered specific conduct by defendants in California that failed to establish jurisdiction but gave every indication that discovery would prove fruitful: allegations that defendants promoted an important recording in California, sent copies of the recording to California companies, and attended events in California. Here, no comparable allegations exist.

Specifically, with Plaintiff now relying on the alter ego theory of jurisdiction, the case law requires some allegations reflecting how Mr. Urman, for example, depleted assets or ignored corporate boundaries.  Yet the Amended Complaint alleges nothing on these scores.

Put simply, Plaintiff has offered no allegation connecting Mr. Urman to California or the United States.  *See Getz v. Boeing*, 654 F.3d 852, 860 (9th Cir. 2011) (finding "speculative allegations of attenuated jurisdictional contacts" are insufficient; "specific facts, transactions, or conduct that would give rise to personal jurisdiction" must be articulated); *Mocha Mill, Inc. v. Port of Mokha, Inc.*, 2019 WL 1048252, at *7 (N.D. Cal. Mar. 5, 2019) (quoting *Getz*); *Lang v. Morris*, 823 F. Supp. 2d 966, 979

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S MOTION TO DISMISS THE AMENDED COMPLAINT

1  (N.D. Cal. 2011) (denying jurisdictional discovery where plaintiffs failed to "provide[]

2  any detail to the Court as to what discovery would establish").[7]

3         None of the cases cited by Plaintiff in support of jurisdictional discovery support

4  her argument.[8]  For example, in *Chan v. Society Expeditions, Inc.*, the court allowed

5  jurisdictional discovery to determine whether a German company used the defendant

6  as its United States agent because the plaintiff submitted disclosure documents that

7  provided some evidence that an agent relationship may exist.  39 F.3d 1398, 1406 n.

8  10 (9th Cir. 1994).  And in *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670,

9  674-75 (S.D. Cal. 2001), the court allowed jurisdictional discovery to proceed after the

10 defendant *conceded* that there was a genuine factual dispute over his contacts.  In

11 contrast, in a more apposite case, the court refused to grant jurisdictional discovery

12 where the plaintiff's allegations were "nothing more than mere speculation."  *Payrovi*

13 *v. LG Chem Am., Inc.*, 491 F. Supp. 3d 597, 608-09 (N.D. Cal. 2020).[9]

14

15

16   [7]    Even the one specific action attributed to Mr. Urman – the alleged disinformation
17 campaign to silence critics – is nowhere linked to the United States.  Even if it could
   be, it would not support jurisdiction because (as explained at greater length in his
18 Opening Brief, at 36-39), it does not relate to the harms for which Plaintiff is suing to
   recover damages.  Plaintiff is suing for damages she allegedly suffered from the posting
19 of her videos.  She nowhere claims damages from any alleged harassment or silencing.

20   [8]    *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) addressed
21 subject matter jurisdiction, not personal jurisdiction, and in any event, the plaintiff there
   offered public documents providing the requisite specificity.

22   [9]    The fact that the defendants in *Orchid* and *Payrovi* submitted declarations
23 disputing plaintiffs' jurisdictional allegations does not diminish how both decisions
   underscore that a plaintiff must offer the court a substantial reason to conclude that
24 jurisdictional discovery will uncover material information.  Declarations were
   necessary in both cases because those plaintiffs, unlike Ms. Fleites, offered at least
25 some meaningful jurisdictional contacts which, if left unrebutted, provided the court
   with reason to believe that discovery would be fruitful.  *Orchid Biosciences, Inc.*, 198
26 F.R.D. at 674-75; *Payrovi*, 491 F. Supp. 3d at 608-09.  Here, Plaintiff's only allegations
27 of jurisdictional contacts relate to the MindGeek entities and, in any event, those
   entities have submitted an unrebutted declaration refuting those allegations.

28

Here, by contrast, Plaintiff's alter ego argument offers no indication that discovery might help. She rests her argument on the relationship among MindGeek entities that have allegedly conceded jurisdiction and other MindGeek entities, and between those entities (as an undifferentiated mass) and Mr. Urman. Yet Plaintiff does not allege that Mr. Urman treated any MindGeek entity in a way that ignored its corporate form, including how he treated its assets. Plaintiff does not even allege (must less with the required specificity) how granting alter ego status would address the kind of injustice required by the law. *See Stewart v. Screen Gems,* 81 F. Supp. 3d 938, 959 (E.D. Cal. 2015) ("In determining whether a complaint has adequately pleaded alter ego liability, courts start from the premise that "[a]lter ego is a limited doctrine, invoked only where recognition of the corporate form would work an injustice.") (citations omitted). And Plaintiff's failures are all the more serious where, as here, MindGeek has submitted an *unrebutted* declaration that establishes the respect accorded by all of those entities to corporate formalities and funding. *See Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1005–06, 1010 (N.D. Cal. 2020) (where plaintiff's alter ego allegations rested, in part, on claim about defendant's relationship with affiliated company, and defendant submitted affidavit regarding independence of claimed alter ego, jurisdictional discovery was denied since plaintiff "offer[ed] no more than a hunch that discovery would yield jurisdictionally relevant facts").

Finally, it is inconsistent for Plaintiff to argue for jurisdictional discovery where she claims to have had access to countless "inside" sources: former employees and whistleblowers who have provided her with information about Defendants (dozens of allegations in the Amended Complaint rely on sources available to Plaintiff). Her Opposition also highlights numerous instances in which she claims to have gained "insights" from insiders: a social media manager (Opp. at 10), multiple insiders (*id.* at 12, 14, 18, 25), a purported eyewitness (*id.* at 14), programmers (*id.* at 20), and a former

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S
MOTION TO DISMISS THE AMENDED COMPLAINT

1  employee (*id.* at 22).[10]  She even cites an insider who purportedly could describe how

2  the Bro-Club operated yet she does not offer a single fact about Mr. Urman's activity

3  as part of that "club."

4      This is the second time Plaintiff has been told of these deficiencies and she has

5  failed to address them.  Accordingly, the Court should reject Plaintiff's request for

6  jurisdictional discovery.

7  **II.    The Deficiencies in Plaintiff's Section 230 Argument and Her Substantive
        Counts**

8

9      The same fatal defects infect Plaintiff's non-jurisdictional arguments.  In each

10  instance, she fails to identify a single act by Mr. Urman that divests him of Section 230

11  immunity or establishes the elements of the substantive violations in which he is

12  named.  Typical of her pattern of conclusory and group pleading is Plaintiff's assertion,

13  right off the bat, that the MindGeek defendants analyzed all content to maximize traffic,

14  providing "defendants with a comprehensive understanding of the content on their

15  platforms . . . . includ[ing] illegal content."  (Opp. at 2.)  She makes no effort to

16  differentiate among the "MindGeek defendants" or to attribute to Mr. Urman any

17  aspect of the analysis that supposedly provided him with an understanding of the

18  "illegal content" on the website.  None.

19      In the end, much like her jurisdictional efforts, Plaintiff's efforts to deny Mr.

20  Urman Section 230 immunity and to connect him to substantive law violations flounder

21  on their lack of specificity.  *See, e.g.*, *Yost v. Nationstar Mortgage LLC,* 2013 WL

22

23  [10]    To be clear: we have no reason to believe that any of these sources is credible or
that whatever they have purportedly related to Plaintiff has been accurately portrayed.
24  That is beside the point.  The point is that on this motion to dismiss, we must take as
true the allegations in her complaint.  Those allegations are inconsistent with her
25  argument that she needs discovery because of an allegedly opaque and labyrinthine
corporate structure.  According to her own complaint, she has innumerable windows
26  into the operations of that structure, yet even with those purported inside sources of
information has been unable to allege any fact suggesting a basis for this Court to
27  exercise jurisdiction over Mr. Urman.

28

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S
MOTION TO DISMISS THE AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4828590, at *3 (E.D. Cal. Sept. 9, 2013) (Federal Rules of Civil Procedure 8 and 9 require Plaintiff to describe "Defendants' particular roles in the alleged causes of actions").  Her efforts to use the alter ego construct here is equally unjustified.[11]

### A.    Section 230 Immunity Shields Mr. Urman

Plaintiff asserts that in *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 840-42 (C.D. Cal. 2021) this Court denied Section 230 immunity to all of the "MindGeek Defendants."  (Opp. at 67-68.)  That is false.  Mr. Urman was not a party to that case (nor were the other individual defendants), and it involved different plaintiffs and videos.  No individual defendant has raised his entitlement to immunity before this matter.  The same holds true of Plaintiff's reliance on the Alabama Court's decision: there too, no individual defendant was a party.

The arguments described in Mr. Urman's Opening Brief (at 30-31) again are not meaningfully addressed by Plaintiff.  Moreover, the many activities ascribed to the MindGeek entities in *Doe* in an effort to characterize those entities as creators of the illegal content are not linked to Mr. Urman by Plaintiff in any way.  For example, allegedly working with alleged traffickers, recommending tagging to inspire greater appeal, re-uploading to commercial sites – Plaintiff links *none* of these alleged acts to Mr. Urman.

Plaintiff's Opposition falls back on its fact section but, as described above, the allegations referenced in that section say nothing about Mr. Urman's involvement in the activities in question.  Instead, those allegations only describe him and other individuals, in the most conclusory and general way, as having directed the operations of the website.  For example, Plaintiff asserts that MindGeek and "its owners, agents . . .  solicited, reviewed, accepted, uploaded, optimized, tagged, categorized and

---

[11]    Plaintiff cites one case to support her alter ego argument here, *Kao v. Holiday,* 58 Cal. App. 5th 199. 202 (2020), but in *Kqo,* unlike here, the court found the defendants commingled funds and improperly used corporate assets, only underscoring the Amended Complaint's deficiencies by comparison.

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S
MOTION TO DISMISS THE AMENDED COMPLAINT

1  disseminated CSAM of plaintiff . . . ." (Opp. at 5, 6.) Critically, these allegations do

2  not specify *Mr. Urman's involvement*.

3     **B.      The TVPRA Counts Must Be Dismissed Against Mr. Urman**

4     Plaintiff claims that Mr. Urman's argument that her pleading is deficient under

5  the TVPRA is based on her boyfriend being responsible for uploading her video. That

6  is not true. (Opp. at 27.) Mr. Urman's argument is based on Plaintiff's utter failure to

7  connect him to the uploading of her video, the failure to remove the video fast enough,

8  or the alleged re-uploading. There is no allegation in the Amended Complaint that

9  describes Mr. Urman's involvement in, connection to, or even awareness of these

10 events when they purportedly occurred.

11    Once again, conclusory assertions that Mr. Urman, as part of an undifferentiated

12 mass, is responsible fall woefully short.[12] Plaintiff appears to offer a series of

13 alternative arguments to apply the TVPRA to Mr. Urman. None is remotely sufficient.

14    First, she argues that the MindGeek Defendants engaged in widespread

15 trafficking, so it is reasonable to infer that those practices were applied to her. (Opp.

16 at 74, 81.) But even if allegations of widespread trafficking were enough (and they are

17 not), the Amended Complaint does not plead that Mr. Urman was involved in such

18 trafficking, so the predicate for Plaintiff's inferential chain does not exist.

19    Second, she contends that she can assert an individual's liability for trafficking

20 where he is aware it is occurring and does not stop it. (Opp. at 26-27.) This is not only

21 untethered to case law, but also fails with respect to Mr. Urman because the Amended

22 Complaint does not plead that he was aware of her trafficking *or* that he did nothing to

23 stop it. In addition, a specific defendant's knowledge cannot be inferred from the

24 length of time an illegal activity is occurring. (Opp. at 37.) The law does not support

---

26 [12] Plaintiff's reliance on *Waldrup v. Countrywide Fin. Corp.*, 2015 WL 93363, at
27 *8 (C.D. Cal. Jan. 5, 2015) to endorse conclusory assertions is unsupportable: there, plaintiff identified specific agents with whom it dealt and included details concerning their authority to speak on behalf of the corporate defendants.

28

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S
MOTION TO DISMISS THE AMENDED COMPLAINT

1    Plaintiff's argument here. Much as in *Doe v. Red Roof Inns, Inc.*, *Doe v. Reddit*, and

2    *J.B. v. G6 Hosp.* (cited in Opp. at 33), MindGeek principally engaged in lawful hosting

3    of adult and consensual pornography and, at most, in this case, MindGeek allowed

4    itself to be used for the hosting of illegal content (e.g., CSAM) created by Plaintiff and

5    uploaded by unidentified individuals that MindGeek monetized just as a hotel does

6    with fees paid by customers engaged in illegal activity.

7         In short, Plaintiff offers no allegation that Mr. Urman participated in a sex

8    trafficking venture (including any venture involving Plaintiff), that he knew or should

9    have known about her alleged trafficking, or that he personally benefited from that

10   alleged trafficking.

11        **C.    The Child Exploitation Counts Must Be Dismissed Against Mr. Urman**

12

13        The same pattern of deficient pleading infects Plaintiff's CSAM counts.[13]

14        Plaintiff contends that "the MindGeek Defendants do not contest that they

15   violated these federal laws [child exploitation] when they uploaded plaintiff's initial

16   video" or "repeatedly accepted and exploited videos of her" and that even if they did

17   not know of Plaintiff's underage involvement at the uploading stage, their failure to

18   "delete[] a single video . . . even after being informed they were illegal" is sufficient.

19   (Opp. at 3, 4.)   Plaintiff does not cite to a single allegation describing Mr. Urman's

20   knowledge of her videos at the uploading stage or of her complaints to MindGeek.

21

22

23

────────────────────

24   [13]    Plaintiff also argues that Section 230 does not shield a defendant from liability

25   under 18 U.S.C. §§ 2252 and 2252A if the content at issue contains CSAM. (Opp. at
     70-71 (claiming it is "untenable" that Congress would have intended to shield CSAM).)

26   The basis for this argument is simply that Plaintiff *believes* that that statute should
     circumscribe the reach of Section 230, citing the decision in the case it brought against

27   MindGeek in Alabama. (Opp. at 65-66.) Notably, a California court in *Doe v. Twitter,
     Inc.*, 555 F. Supp. 3d 889, 927-29 (N.D. Cal. 2021) rejected this argument.

28

                                          22
────────────────────
REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S
MOTION TO DISMISS THE AMENDED COMPLAINT

1 Once again, lumping Mr. Urman in with the MindGeek entities is legally

2 unsupportable.[14]

3 Plaintiff also argues, inconsistently, that Mr. Urman must have known what was

4 posted because there was a monitoring group at MindGeek that purportedly reviewed

5 all videos. Plaintiff's claims that the monitoring group must have known of the illegal

6 content clashes with her equally forceful assertions that the monitoring function was a

7 sham and that the kind of thorough review she asserts could not have occurred. (Opp.

8 at 10.) In any event, there is no allegation that Mr. Urman was part of that monitoring

9 group or aware of what it knew, or that he personally received or distributed any of the

10 videos depicting her.[15]

11 **D.    The RICO Counts Must Be Dismissed Against Mr. Urman**

12 The RICO counts suffer from a number of deficiencies that were explained in

13 Mr. Urman's Opening Brief, most of which Plaintiff ignores in her Opposition.

14 Instead, Plaintiff advances several arguments that are wrong.

15 First, Plaintiff seeks to minimize the "control" element by arguing that it suffices

16 for a defendant to play some part in the affairs of an enterprise. (Opp. at 51 n. 20.)

17 There is no legal basis for that notion. Plaintiff must show that the defendant was more

18 than a participant in the enterprise. *See, e.g.*, *Volkswagen*, 2017 WL 4890594, at *16

19 _____

20 [14]    Plaintiff incorrectly asserts that *Doe v. MindGeek* holds that a complaint need

21 not plead with specificity how each defendant knew of CSAM. (Opp. at 46, n. 18.)
There, the court held the allegations that defendant entities were told of the prevalence

22 of CSAM on their websites by various groups and individuals was enough to plausibly
allege that those defendant entities (all companies, and no individuals) knowingly

23 received and distributed CSAM. Even if a defendant's general knowledge of CSAM
on a website were enough to satisfy the requirement that actual knowledge of Plaintiff's

24 CSAM be pleaded (which MindGeek contests), *Doe* does not hold that allegations that
an entity is aware of a widespread practice supports an inference that a person who may

25 have some affiliation with that entity has the same knowledge.

26 [15]    Plaintiff also makes the arguably inconsistent statement that she has pled

27 knowledge sufficiently yet also states that "evidence of defendants' state of mind is
uniquely within defendants' possession." (Opp at 46.)

28

23

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S
MOTION TO DISMISS THE AMENDED COMPLAINT

1  (N.D. Cal. Oct. 30, 2017) ("'[S]imply performing services for the enterprise,' or failing
2  to stop illegal activity, is not sufficient.") (citation omitted).

3       Second, Plaintiff's Opposition confirms that she has applied wire fraud laws
4  (recognized as a basis for a racketeering act) to the alleged efforts to silence victims
5  and advocates.  (Opp. at 38.)  As noted in Mr. Urman's Opening Brief, however, the
6  alleged efforts to silence victims and advocates were not frauds on this Plaintiff.  (Op.
7  Br. at 37.)  As that Opening Brief discussed at length, fraud requires deceit and an effort
8  to procure money or property.  (Op. Br. at 38.)  Ms. Fleites was not deceived by any
9  such effort, nor was her property or money sought by efforts to silence her or others.
10  Indeed, she does not appear to be seeking recovery for any purported harm suffered
11  from this alleged conduct.  In fact, the Amended Complaint demonstrates that the
12  alleged disinformation campaign was temporally unconnected to her alleged harms.  It
13  describes Mr. Urman's purported active concealment of MindGeek's true operation
14  through lies to the Canadian House of Commons and how the "astroturf" campaign
15  was used to silence critics, citing examples *years after* her videos were posted, when
16  she was working to expose what she claims MindGeek had done.  (Opp. at 18.)

17      **E.**    **The State Law Claims Must Be Dismissed Against Mr. Urman**

18       As explained in Mr. Urman's Opening Brief, if Plaintiff's federal claims are
19  dismissed, then none of her state law claims can survive.  *See, e.g.*, *Action Embroidery*,
20  368 F.3d at 1180 (claims over which there is no "independent" basis for jurisdiction
21  must arise "out of a common nucleus of operative facts with a claim" over which there
22  is personal jurisdiction).  Even if the state law claims could survive, Plaintiff does not
23  plead that any of her claims rest on conduct by Mr. Urman, and her effort to use an
24  alter ego theory fares no better in the context of her state law claims.  (Opp. at 65.)
25  Moreover, her civil conspiracy claim is not recognized as a separate and distinct cause
26  of action.  (Op. Br. at 40-41; Opp. at 59.)

27
28

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S
MOTION TO DISMISS THE AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CONCLUSION**

For all of the above reasons, Mr. Urman should be dismissed from this action. Insofar as this is Plaintiff's best effort after multiple reminders of her pleading deficiencies, we respectfully request a dismissal with prejudice.[16]

Dated:  July 25, 2022                MINTZ LEVIN COHN FERRIS GLOVSKY
                                     AND POPEO PC


                                     By  */s/Evan Nadel*_____
                                          Peter A. Chavkin
                                          Evan Nadel
                                          Adam B. Korn

                                          Attorneys for Specially-Appearing
                                          Defendant COREY URMAN

---

[16]      In addition to the arguments in this Reply, Mr. Urman joins in all of the arguments offered by the MindGeek corporate entities and those of the individual defendants Bernd Bergmair, Feras Antoon, and David Tassillo including the arguments by the MindGeek entities addressing the application of 230 to the alleged conduct and the failure to satisfy the requirements of the TVPRA, CSAM, RICO and state law claims.  Where Mr. Urman has not addressed a point made in his Opening Brief, he relies on his Opening Brief as a complete response.

25

REPLY IN SUPPORT OF SPECIALLY-APPEARING DEFENDANT COREY URMAN'S
MOTION TO DISMISS THE AMENDED COMPLAINT