BENJAMIN M. SADUN (287533)
benjamin.sadun@dechert.com
DECHERT LLP
US Bank Tower, 633 West 5th Street,
Suite 4900
Los Angeles, CA 90071-2013
Phone: (213) 808-5721; Fax: (213) 808-5760

KATHLEEN N. MASSEY (*admitted pro hac vice*)
kathleen.massey@dechert.com
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500; Fax: (212) 698 3599

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| SERENA FLEITES,<br><br>        Plaintiff,<br><br>    v.<br><br>MINDGEEK S.A.R.L.; MG FREESITES, LTD; MINDGEEK USA INCORPORATED; MG PREMIUM LTD.; MG GLOBAL ENTERTAINMENT INC.; 9219-5618 QUEBEC INC.; BERND BERGMAIR; FERAS ANTOON; DAVID TASSILLO; COREY URMAN; VISA INC.; COLBECK CAPITAL DOES 1-5; BERGMAIR DOES 1-5<br><br>        Defendants. | CASE NO.  2:21-CV-04920-CJC-ADS<br><br>Judicial Officer:    Cormac J. Carney<br><br>**REPLY IN SUPPORT OF MINDGEEK'S MOTION TO DISMISS AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM**<br><br>Hearing:    August 8, 2022<br>Time:        1:30 p.m.<br>Courtroom:  9B |

1

# TABLE OF CONTENTS

2
**Page**

3    ARGUMENT ...................................................................................................... 1

4    I.    Plaintiff Fails to State a *Prima Facie* TVPRA Claim ............................ 1

5    A.    Plaintiff Has Not Plausibly Pleaded a Direct Liability
6    Claim ...................................................................................... 1

7    B.    Plaintiff Has Not Plausibly Pleaded that MindGeek
Participated in Any Trafficking Venture Involving
8    Plaintiff. ................................................................................ 4

9    C.    Plaintiff Has Not Plausibly Pleaded That MindGeek Had
the Requisite Knowledge. ..................................................... 7

10    D.    Plaintiff's First Video Did Not Involve Commercial Sex
11    Trafficking. ......................................................................... 10

12    II.    Plaintiff's RICO Claims Should Be Dismissed. ................................. 12

13    A.    Plaintiff's RICO Claims Are Time-Barred ............................ 12

14    B.    Plaintiff Has Not Alleged a Common Purpose ...................... 16

15    C.    Plaintiff Has Not Alleged an Associated-in-Fact Enterprise
That Is Distinct from the RICO Persons ................................ 21

16    D.    Plaintiff Has Not Alleged RICO Injuries to Business or
17    Property .................................................................................. 23

18    E.    Plaintiff Does Not Allege Predicate Acts Connected to Her
Injuries. ................................................................................. 26

19    III.    Section 230 Requires Dismissal of All of Plaintiff's Claims. ............ 26

20    A.    MindGeek Did Not Contribute to the Creation of
21    Plaintiff's Videos. ................................................................. 26

22    B.    Section 230 Applies to Claims under 18 U.S.C. §§ 2252
and 2252A ............................................................................. 28

23    IV.    Plaintiff's Remaining Claims Fail for Additional Reasons. ............... 29

24    V.    The Court Lacks Personal Jurisdiction over Two MindGeek
25    Entities .................................................................................................. 33

CONCLUSION ................................................................................................. 35

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*A.B. v. Wyndham Hotels & Resorts, Inc.*,
   532 F. Supp. 3d 1018 (D. Or. 2021) ................................................................. 10

6

7
*Aisenson v. Am. Broad. Co.*,
   220 Cal. App. 3d 146 (1990) ............................................................................. 30

8
*AMA Multimedia, LLC v. Wanat*,
   970 F.3d 1201 (9th Cir. 2020) .......................................................................... 33

9

10
*Anderson v. Peregrine Pharmaceuticals, Inc.*,
   2013 WL 12122423 (C.D. Cal. Aug. 23, 2013) ........................................... 9, 10

11

12
*B.M. v. Wyndham Hotels & Resorts, Inc.*,
   2020 WL 4368214 (N.D. Cal. July 30, 2020) ..................................................... 2

13

14
*Barnett v. Cnty. of L.A.*,
   2021 WL 826413 (C.D. Cal. Mar. 4, 2021) ...................................................... 10

15

16
*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 27

17

18
*Berg v. First State Ins. Co.*,
   915 F.2d 460 (9th Cir. 1999) ............................................................................ 26

19

20
*Blue Diamond Growers v. Tex. Best Smokehouse, Inc.*,
   2008 WL 5386762 (E.D. Cal. Dec. 22, 2008) .................................................. 35

21

22
*Canosa v. Ziff*,
   2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ..................................................... 11

23

24
*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) .......................................................................... 27

25

26
*Chi Pham v. Capital Holdings, Inc.*,
   2011 WL 3490297 (S.D. Cal. Aug. 9, 2011) .................................................... 22

27
*Cooper v. San Bernardino Sheriff Dep't*,
   2017 WL 10511568 (C.D. Cal. Mar. 10, 2017) .................................................. 9

28

REPLY IN SUPPORT OF MOTION TO DISMISS

*Cross v. Facebook, Inc.*,
    14 Cal. App. 5th 190 (2017) ............................................................... 32

*Cruz v. FX DirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013) ............................................................... 23

*In re Diamond Foods, Inc., Sec. Litig.*,
    2012 WL 6000923 (N.D. Cal. Nov. 30, 2012) .................................... 14

*Diaz v. Gates*,
    420 F.3d 897 (9th Cir. 2005) ............................................... 23, 25, 26

*Diez v. Google, Inc.*,
    831 F. App'x 723 (5th Cir. 2020) ....................................................... 28

*Doan v. Singh*,
    617 F. App'x 684 (9th Cir. 2015) ................................................. 16, 17

*Doe #1 v. MG Freesites, LTD.*,
    2022 WL 407147 (N.D. Ala. Feb. 9, 2022).................................*passim*

*Doe v. Bates*,
    2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) .................................... 28

*Doe v. MindGeek USA, Inc.*,
    558 F. Supp. 3d 828 (C.D. Cal. 2021).........................................*passim*

*Doe v. MindGeek USA, Inc.*,
    2021 WL 5990195 (C.D. Cal. Dec. 2, 2021)................................. 4, 8, 9

*Doe v. Red Roof Inns, Inc.*,
    21 F.4th 714 (11th Cir. 2021) .......................................................5, 6, 7

*Doe v. Reddit, Inc.*,
    2021 WL 5860904 (C.D. Cal. Oct. 7, 2021) .............................5, 6, 7, 28

*Doe v. Roe*,
    958 F.2d 763 (7th Cir. 1992) ......................................................24, 25

*Doe v. Twitter, Inc.*,
    555 F. Supp. 3d 889 (N.D. Cal. 2021)..........................................*passim*

*Downing v. Abercrombie & Fitch*,
    265 F.3d 994 (9th Cir. 2001) ............................................................. 32

*Dyroff v. Ultimate Software Grp., Inc.*,
 934 F.3d 1093 (9th Cir. 2019) ............................................................... 27

*Ellis v. J.P. Morgan Chase & Co.*,
 2015 WL 78190 (N.D. Cal. Jan. 6, 2015) ............................................. 17

*Fair Hous. Council v. Roommates.com, LLC*,
 521 F.3d 1157 (9th Cir. 2008) ............................................................... 27

*Four Navy Seals v. Associated Press*,
 413 F. Supp. 2d 1136 (S.D. Cal. 2005) ................................................ 30

*Fraley v. Facebook, Inc.*,
 830 F. Supp. 2d 785 (N.D. Cal. 2011) .................................................. 32

*Fraser v. Team Health Holdings, Inc.*,
 2022 WL 971579 (N.D. Cal. Mar. 31, 2022) ........................................ 20

*Ginsberg v. Google Inc.*,
 2022 WL 504166 (N.D. Cal. Feb. 18, 2022) ......................................... 28

*Gomez v. Guthy-Renker, LLC*,
 2015 WL 4270042 (C.D. Cal. July 13, 2015) ....................................... 19

*Gonzalez v. Google LLC*,
 2 F.4th 871 (9th Cir. 2021) ............................................................. 28, 29

*Griffet v. Ryan*,
 2021 WL 5084188 (D. Ariz. Nov. 1, 2021) ......................................... 15

*Grimmett v. Brown*,
 75 F.3d 506 (9th Cir. 1996) .................................................................. 15

*Hinton v. Pac. Enters.*,
 5 F.3d 391 (9th Cir. 1993) .................................................................... 12

*Horton ex rel. Horton v. City of Santa Maria*,
 915 F.3d 592 (9th Cir. 2019) ................................................................ 10

*Huynh v. Chase Manhattan Bank*,
 465 F.3d 992 (9th Cir. 2006) ................................................................ 13

*Iconlab, Inc. v. Bausch Health Cos.*,
 828 F. App'x 363 (9th Cir. 2020) ......................................................... 34

*J. B. v. G6 Hosp., LLC*,
    2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ........................................ 4, 5, 6, 7

*Jacob v. Aurora Loan Servs.*,
    2010 WL 2673128 (N.D. Cal. July 2, 2010) ...................................................... 13

*Jubelirer v. MasterCard International Inc.*,
    68 F. Supp. 2d 1049 (W.D. Wis. 1999) ............................................................ 20

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) .......................................................................... 24

*In re JUUL Labs, Inc., Mkting., Sales Pracs., & Prods. Liab. Litig.*,
    497 F. Supp. 3d 552 (N.D. Cal. 2020) ................................................ 17, 21, 23

*Kamal v. Cnty. of L.A.*,
    2019 WL 2502433 (C.D. Cal. May 2, 2019) ...................................................... 25

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) .......................................................................... 28

*Lee v. Penthouse Int'l, Ltd.*,
    1997 WL 33384309 (C.D. Cal. Mar. 19, 1997) .......................................... 30, 31

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
    431 F.3d 353 (9th Cir. 2005) ............................................................................ 22

*Martin v. Ayers*,
    41 F. App'x 972 (9th Cir. 2002) ...................................................................... 14

*Martinez v. Manheim Cent. California*,
    2011 WL 1466684 (E.D. Cal. Apr. 18, 2011) .................................................. 35

*Mathias v. HomeStreet Bank, Inc.*,
    2021 WL 4484549 (D. Haw. Sept. 29, 2021) .................................................. 15

*Mattel, Inc. v. MGA Ent., Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2011) .............................................................. 23

*MH Pillars Ltd. v. Realini*,
    2018 WL 1184847 (N.D. Cal. Mar. 7, 2018) .................................................. 22

*Michaels v. Internet Entertainment Group, Inc.*,
    5 F. Supp. 2d 823 (C.D. Cal. 1998) .................................................................. 30

*M.L. v. craigslist, Inc.*,
    2022 WL 1210830 (W.D. Wash. Apr. 25, 2022) ................................................ 27

*Mohsen v. Morgan Stanley & Co.*,
    710 F. App'x 330 (9th Cir. 2018) ................................................................ 16

*Moreno v. Hanford Sentinel, Inc.*,
    172 Cal. App. 4th 1125 (2009) .................................................................. 31

*Murphy v. Am. Gen. Life Ins. Co.*,
    74 F. Supp. 3d 1267 (C.D. Cal. 2015) .......................................................... 33

*Natural-Immunogeics Corp. v. Newport Trial Grp.*,
    2020 WL 5239856 (C.D. Cal. 2020) ............................................................ 16

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018) .......................................................... 12

*Nowak v. Xapo, Inc.*,
    2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ................................................ 10

*Ogden v. Wells Fargo Bank, N.A.*,
    2015 WL 13413390 (C.D. Cal. Feb. 20, 2015) ................................................ 25

*P.S. v. Scripps Media, Inc.*,
    2017 WL 1534624 (Cal. Ct. App. Apr. 28, 2017) ............................................ 30

*Pac. Recovery Sols. v. United Behavioral Health*,
    481 F. Supp. 3d 1011 (N.D. Cal. 2020) ........................................................ 19

*Pac. Surf Designs, Inc. v. Whitewater W. Indus., Ltd.*,
    2021WL 5326529 (S.D. Cal. Nov. 16, 2021) .................................................. 25

*Pamer v. Lucine*,
    310 F. App'x 155 (9th Cir. 2009) ................................................................ 14

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) .................................................................... 35

*Placides v. Rumsfeld*,
    79 F. App'x 319 (9th Cir. 2003) .................................................................. 14

*Radovich v. Placer Cnty. Sherriff's Office*,
    2019 WL 3425998 (E.D. Cal. July 30, 2019) .......................................... 12, 13, 14

CASE NO. 2:21-cv-04920

**REPLY IN SUPPORT OF MOTION TO DISMISS**

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ............................................................... 34

*Rivers v. United States*,
    2019 WL 1959583 (S.D. Cal. May 2, 2019) ........................................ 8

*Roca Labs, Inc. v. Consumer Opinion Corp.*,
    140 F. Supp. 3d 1311 (M.D. Fla. 2015) ............................................... 28

*S.E.C. v. City of Victorville*,
    2013 WL 12133651 (C.D. Cal. Nov. 14, 2013) ............................... 9, 10

*Sever v. Alaska Pulp Corp.*,
    978 F.2d 1529 (9th Cir. 1992) ............................................................... 22

*Shimmick Constr. Co./Obayashi Corp. v. Officine Meccaniche Galletti-*
    *O.M.G. S.R.L.*,
    2014 WL 5847440 (S.D. Cal. Nov. 12, 2014) ..................................... 34

*Stitt v. Citibank, N.A.*,
    942 F. Supp. 2d 944 (N.D. Cal. 2013) ................................................. 17

*Stofle v. Clay*,
    2011 WL 1302194 (N.D. Cal. Mar. 31, 2011) ................................... 15

*Thomas v. Baca*,
    308 F. App'x 87, 88 (9th Cir. 2009) ..................................................... 25

*Times-Mirror Co. v. Superior Court*,
    198 Cal. App. 3d 1420 (1988) ............................................................... 31

*United States v. Alcius*,
    952 F. 3d 83 (2d Cir. 2020) ................................................................... 8

*United States v. Bazar*,
    747 F. App'x 454 (9th Cir. 2018) ......................................................... 11

*United States v. Clark*,
    435 F.3d 1100 (9th Cir. 2006) ............................................................... 11

*United States v. Estrada-Tepal*,
    57 F. Supp. 3d 164 (E.D.N.Y. 2014) ................................................... 3

*United States v. Flanders*,
    752 F.3d 1317 (11th Cir. 2014) ........................................................... 12

*United States v. Jungers,*
   702 F.3d 1066 (8th Cir. 2013) .......................................................................... 3, 7

*United States v. Marcus,*
   487 F. Supp. 2d 289 (E.D.N.Y. 2007) ................................................................ 11

*United States v. Mongol Nation,*
   693 F. App'x 637 (9th Cir. 2017) ................................................................ 21, 22

*United States v. Robinson,*
   702 F.3d 22 (2d Cir. 2012) .................................................................................. 8

*United States v. Todd,*
   627 F.3d 329 (9th Cir. 2010) ............................................................................. 12

*United States v. X-Citement Video, Inc.,*
   513 U.S. 64 (1994) ............................................................................................. 29

*United States v. Zitlalpopoca-Hernandez,*
   495 F. App'x 833 (9th Cir. 2012) ........................................................................ 3

*Williams v. Yamaha Motor Corp., U.S.A.,*
   106 F. Supp. 3d 1101 (C.D. Cal. 2015) ............................................................ 10

*Yagman v. Kelly,*
   2018 WL 2138461 (C.D. Cal. Mar. 20, 2018) ............................................ 22, 23

*Yow Ming Yeh v. Martel,*
   751 F.3d 1075 (9th Cir. 2014) ........................................................................... 13

**Statutes and Rules**

18 U.S.C. § 1591 ................................................................................................*passim*

18 U.S.C. § 1595 .............................................................................................. 7, 8

18 U.S.C. § 1962 ................................................................................................ 22

18 U.S.C. § 2252 .................................................................................... 26, 28, 29

18 U.S.C. § 2252A ....................................................................................... 28, 29

18 U.S.C. § 2255 ................................................................................................ 34

47 U.S.C. § 230 ............................................................................... 26, 27, 28, 29

CASE NO. 2:21-cv-04920

**REPLY IN SUPPORT OF MOTION TO DISMISS**

Cal. Civ. Code § 1708.85..................................................................................31

Cal. Civ. Code § 3344.....................................................................................25

Fed. R. Civ. P. 4.....................................................................................34, 35

Fed. R. Civ P. 8.................................................................................................17

Fed. R. Civ. P. 9.........................................................................................16, 17

Pub. L. 114-22, 129 Stat 227 § 118 (2015) ..................................................1

**Other Authorities**

161 CONG. REC. S1596-02 (statement of Seator Feinstein) .........................2

161 CONG. REC. S1403-02 (statement of Senator Blunt) .............................2

RESTATEMENT (SECOND) OF TORTS § 652B cmt. a.....................................30

U.S. Const., Amendment I.............................................................................32

Plaintiff doubles down on the over-the-top rhetoric of the FAC, devoting large swathes of the Opposition to attacking MindGeek's purported business practices generally rather than focusing on the allegations or lack thereof about the videos at issue in this case. When Plaintiff's allegations are dispassionately measured against the governing law, the FAC falls well short of stating a claim against MindGeek.

## ARGUMENT

### I.    Plaintiff Fails to State a *Prima Facie* TVPRA Claim.

#### A.    Plaintiff Has Not Plausibly Pleaded a Direct Liability Claim.

Plaintiff's Opposition confirms that she has pleaded no facts to support her claim for direct sex trafficking under Section 1591(a)(1). Tellingly, Plaintiff abandoned her position that MindGeek "recruit[ed], entic[ed], harbor[ed], and/or maintain[ed]" her. *Compare* Opp. at 39-40 *with* FAC ¶ 361. Now she contends solely that MindGeek "advertised" her by "posting, reuploading, monetizing, and transferring content of her." Opp. at 40.

Putting aside the fact that the FAC does not allege MindGeek reuploaded any of Plaintiff's videos, her argument is no more than a play on words. The TVPRA prohibits advertising "a person" for commercial sex, most typically prostitution. 18 U.S.C. § 1591(a). It does not apply to hosting *videos* on a website or placing advertisements for other products or services next to such videos. For this reason, the *Twitter* court dismissed direct trafficking claims similar to Plaintiff's. As *Twitter* observed: "Section 1591(a)(1) contains a series of verbs, all of which relate to a 'person'" not to videos. *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 915 (N.D. Cal. 2021). Therefore, the court held that where the "alleged conduct relates not to a person but to the [v]ideos" of the plaintiffs, the complaint "do[es] not state a claim for direct sex trafficking under Section 1591(a)(1)." *Id.*

*Twitter*'s holding on this point is consistent with the legislative history of the 2015 bill that added the language regarding advertising to the TVPRA. Pub. L. 114-22, 129 Stat 227 § 118 (2015). The amendment was intended to criminalize

1    "advertisement[s] … for commercial sex with a minor."  161 CONG. REC. S1596-02,

2    S1621 (statement of Sen. Feinstein).  The situation that Congress was rightly

3    concerned with was where "[w]omen and children … are advertised online where

4    buyers purchase them with ease."  *Id.* at S1403-02, S1410 (statement of Sen. Blunt).

5         This provision is facially inapposite here.  Plaintiff does not contend that

6    MindGeek did anything to advertise (*i.e.*, offer) *Plaintiff* for sex acts.  Rather, as in

7    *Twitter*, the FAC alleges at most, that MindGeek publicized her *videos* or used those

8    videos to advertise unrelated products.  *See* Opp. at 40.  Notably, *Twitter* did not

9    hold—as Plaintiff claims—that "[a] website 'advertises' a person in violation of 18

10   U.S.C. § 1591(a)(1) by posting a video of a minor engaged in a commercial sex act."

11   *Id.*  Rather, *Twitter* observed in dicta that "as a matter of grammar" posting a video

12   can, under certain circumstances, be a form of advertising when the video is itself an

13   advertisement for future commercial sex.  555 F. Supp. 3d at 915.  But this does not

14   mean that every video of a person on an adult website is an advertisement for that

15   person's sexual services.

16        Plaintiff argues that MindGeek "advertised" Plaintiff by selling ad space

17   alongside her videos.  But even she acknowledges that the ads had nothing to do with

18   her.  Rather, they were for products, services, and premium memberships.  Opp. at 2.

19   Plaintiff's speculative argument that MindGeek may have "used [P]laintiff in

20   advertisements for MindGeek's services," Opp. at 40 n.14, is both unsupported and

21   misses the mark for the same reason:  even accepting, *arguendo*, this possibility—not

22   alleged in the FAC—that would still only be an advertisement for "MindGeek's

23   services," not an advertisement of Plaintiff for commercial sex.[1]

24   _____

25   [1] Plaintiff argues that a purported "widespread practice of advertising from

26   nonconsensual content" supports an inference that MindGeek advertised her for

27   commercial sex.  Opp. at 40 n.14.  But the FAC does not allege MindGeek advertised

     *anyone* for commercial sex but, rather, advertised content.  Moreover, alleging a so-

28   called practice is not a substitute for pleading facts concerning Plaintiff.  *See B.M. v.*

     *Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, *5-6 (N.D. Cal. July 30, 2020).

As in *Twitter*, "Plaintiff[] ha[s] pointed to no authority that supports [her] interpretation of Section 1591(a)(1)." 555 F. Supp. 3d at 915. Instead, she cites two cases that unremarkably state that the TVPRA is "broad." Opp. at 40 (citing *United States v. Estrada-Tepal*, 57 F. Supp. 3d 164 (E.D.N.Y. 2014), and *United States v. Jungers*, 702 F.3d 1066 (8th Cir. 2013)). Neither case says anything at all about advertising or supports a conclusion that the TVPRA extends to merely hosting videos of alleged trafficking. *Jungers* held only that the TVPRA applies to both those who sell commercial sex acts and their customers who solicit minors for sex. 702 F.3d at 1069-70. *Estrada-Tepal* involved a constitutional challenge by defendants who had transported women to the United States where they used threats and physical violence to force the women to work as prostitutes. 57 F. Supp. 3d at 166. The court noted that the terms "harbor, transport, and maintain" could include "seemingly harmless conduct" like "sheltering, feeding and clothing" underaged prostitutes. *Id.* at 168-69. Neither case is analogous to the facts alleged here against MindGeek.

In addition to the fact that Plaintiff has not plausibly alleged MindGeek "advertised" her for sexual services, she also fails to plead how MindGeek did so with the requisite actual knowledge that she would be caused to engage in future commercial sex acts. Plaintiff concedes that advertising claims under Section 1591 require "actual knowledge." Opp. at 39 & n.13. Plaintiff also does not dispute that under Section 1591 such knowledge must be prospective, *i.e.*, related to future commercial sex acts. *Id.* at 38 n.12; *see also, e.g.*, *United States v. Zitlalpopoca-Hernandez*, 495 F. App'x 833, 835 (9th Cir. 2012).[2] The FAC does not plausibly plead that MindGeek had actual knowledge of the alleged trafficking at any time, let

_____

[2] Plaintiff's attempt to distinguish *Zitlalpopoca-Hernandez* is off the mark. Opp. at 29. The issue in that case was that even though the defendant had used force to recruit his victims, those acts of force were outside the indictment period. 495 F. App'x at 835. The court rejected the government's argument that knowledge of acts of force occurring prior to the start of the indictment period could satisfy the TVPRA's requirement that defendant have knowledge that acts of force or coercion would be used "***in the future***." *Id.* (emphasis in original).

**REPLY IN SUPPORT OF MOTION TO DISMISS**

alone *prospective* knowledge that Plaintiff would "be caused to engage in a commercial sex act" *in the future*.[3]  Plaintiff cannot avoid this requirement by pointing to this Court's holding in *Doe II* that a different plaintiff adequately pleaded that MindGeek had actual knowledge of her alleged trafficking where the perpetrator had "posted hundreds of videos and images depicting other victims," *Doe v. MindGeek USA, Inc.*, 2021 WL 5990195, at *9 (C.D. Cal. Dec. 2, 2021) ("*Doe II*"), because Plaintiff makes no similar allegation, and knowledge must be shown with respect to the specific trafficking at issue.  *Doe v. MindGeek USA, Inc.*, 558 F. Supp. 3d 828, 839 (C.D. Cal. 2021) ("*Doe I*" and together with *Doe II*, "*Doe*"), *reconsideration denied*, *Doe II*, 2021 WL 5990195.  Thus, even accepting the allegations as true, Plaintiff does not allege that the videos were advertisements for future sex acts.

### B.    Plaintiff Has Not Plausibly Pleaded that MindGeek Participated in Any Trafficking Venture Involving Plaintiff.

With respect to derivative TVPRA liability, Plaintiff claims that she has adequately pleaded a "tacit agreement" between MindGeek and her purported traffickers by alleging "generally … defendants' awareness of the prevalence of sex trafficking and their failure to take adequate steps to prevent its occurrence."  Opp. at 30.  But allegations of a general awareness of CSAM or unrelated "widespread practices" unconnected to the specific trafficker who victimized the plaintiff are insufficient to state a claim.  Plaintiff must show a "continuous business relationship" between MindGeek and "the sex traffickers who victimized her."  *J. B. v. G6 Hosp., LLC* (*J.B. I*), 2020 WL 4901196, at *9, 10 (N.D. Cal. Aug. 20, 2020); *accord Doe I*, 558 F. Supp. 3d at 837-38; *see also* Mot. at 14-15.

The FAC does not plead any facts showing a continuous business relationship between MindGeek and either of Plaintiff's purported traffickers.  The FAC does not

---

[3] As discussed below, *infra* at Part I.C, the FAC also does not plausibly allege that MindGeek had even constructive knowledge that the second set of videos depicted someone who was underage or that any of the videos was the result of trafficking.

allege that either of her boyfriends even had a Pornhub account, let alone an ongoing relationship with MindGeek.  FAC ¶¶ 258, 268.  Plaintiff's assertion that "like plaintiff in *MG Freesites*, Ms. Fleites alleges an explicit contractual relationship between the MindGeek Defendants and her traffickers in the form of profit sharing from advertising revenues," Opp. at 33, is categorically false.  The FAC nowhere alleges any contract between Plaintiff's ex-boyfriends and MindGeek or that MindGeek ever shared any revenue with either of them.  It certainly does not allege that either participated in the "ModelHub" and "Content Partner" programs at issue in *Doe #1 v. MG Freesites, LTD*., 2022 WL 407147, at *18 (N.D. Ala. Feb. 9, 2022).

Because she cannot point to any continuous relationship between MindGeek and her alleged traffickers, Plaintiff instead argues that MindGeek had extensive interaction with her *videos*.  Thus, she claims that MindGeek "participated" in the sex trafficking ventures by reviewing her videos and allowing them to remain on Pornhub where they were disseminated and "increase[d] traffic and profits" in the same manner as all content on Pornhub.  Opp. at 32.  But passively allowing traffickers to use a service generally available to the public does not constitute active participation in a "common undertaking of trafficking," even where the ICS allegedly knows about and benefits from the trafficking.  *See Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 727 (11th Cir. 2021); *see also* Mot. at 14-15.[4]

Plaintiff does not (and cannot) meaningfully distinguish *Red Roof Inns, J.B. I* or *Doe v. Reddit, Inc.*, 2021 WL 5860904, at *6 (C.D. Cal. Oct. 7, 2021), which all held that that a plaintiff must plead facts to establish that defendants actively took part in a common trafficking venture.  *See* Mot. at 14-15.  Plaintiff incorrectly asserts that *Red Roof Inns* involved "mere observation" of sex trafficking at a hotel.  This is incorrect.  The *Red Roof Inns* plaintiffs alleged that the defendants made a deliberate

---

[4] Claims that MindGeek stonewalled Plaintiff's efforts to remove videos and reuploaded them also do not satisfy the requirements for participation.  Even if they did, these claims, like many in the Opposition, are not supported by the FAC.

choice to allow traffickers to continue to rent rooms at their hotels and profited from those rentals despite observing the trafficking in person and receiving customer complaints about it. 21 F.4th at 719-21. Nevertheless, the Eleventh Circuit held that the TVPRA claim failed because there were no plausible allegations that the defendant "took part in the common undertaking of sex trafficking." *Id.* at 727. Plaintiff likewise mischaracterizes *J.B. I*, claiming that its holding applies only to "scrupulous websites." Opp. at 33. In fact, the plaintiff in *J.B. I* alleged that "Defendant Craigslist knew that its erotic services section was well known … as a place [for] … unpunished, anonymous, sexual abuse of children," knew that "the posts of Plaintiff involved child sex trafficking" but "did nothing to verify the actual age of the person being advertised," and actively "provided cover for advertisements of minors." 2020 WL 4901196, at *2. There is no daylight between Plaintiff's allegations and those in *J.B. I*. And Plaintiff says nothing at all about the similar holding in *Reddit*. The bottom line is that the TVPRA does not treat a website as having "participated in the venture" with every user who posts illegal content to its website. *Reddit*, 2021 WL 5860904, at *8.

Plaintiff's reliance on *Doe* and *Twitter* is equally misplaced because she ignores the significant differences between her FAC and the allegations in those cases. Mot. at 16-17. *Twitter* did not hold, as Plaintiff claims, that the participation element can be satisfied by general "awareness of the prevalence of sex trafficking" and "failure to take adequate steps to prevent its occurrence." Opp. at 30. Rather, *Twitter* held that in such a context, allegations that the ICS had actual knowledge of a particular user's history of uploading illegal content and made a deliberate decision to allow him to keep posting known CSAM could support an inference of a tacit agreement. 555 F. Supp. 3d at 922-23. This Court adopted the same approach in *Doe I*. 558 F. Supp. 3d at 838 (relying on the perpetrator's history of posting hundreds of illegal videos); *see also* Mot. at 16-17. Here, by contrast, Plaintiff does not allege that MindGeek had any established course of dealing with her purported traffickers or prior notice that

they were uploading illegal content.  And, whereas Twitter had actual notice that the videos of the plaintiffs were CSAM and affirmatively refused to take them down despite the plaintiffs' request, *Twitter*, 555 F. Supp. 3d at 923, the FAC alleges that each time Plaintiff flagged one of her videos, MindGeek deleted it.  FAC ¶¶ 262-63.

In short, Plaintiff's entire theory of participation is that MindGeek encouraged or tolerated a general CSAM problem on Pornhub and failed to detect and remove her videos quickly enough.  This falls far short of the allegations in *Twitter*, *Doe*, and *MG Freesites*; and, as in *Red Roof Inns*, *J.B. I*, and *Reddit*, is insufficient to plead a continuous business relationship between MindGeek and the alleged traffickers.

### C.    Plaintiff Has Not Plausibly Pleaded That MindGeek Had the Requisite Knowledge.

At a minimum, Section 1595 requires Plaintiff to plead facts establishing that MindGeek had "constructive knowledge of the trafficking at issue."  *Doe I*, 558 F. Supp. 3d at 835 (internal quotation mark omitted).  Plaintiff's argument that MindGeek "acted knowingly," Opp. at 39, is a red herring: the issue under the TVPRA is not whether MindGeek knew it was hosting videos but whether it participated in a venture it knew was engaged in commercial sex trafficking.  Moreover, even actual knowledge that an image is CSAM does not, without more, confer knowledge of *trafficking*, let alone a specific trafficking venture.  Mot. at 18-19; *see also Jungers*, 702 F.3d at 1072 ("§ 1591 does not criminalize engaging in a commercial sex act with a minor.").  Plaintiff ignores this point and instead focuses exclusively on whether MindGeek should have known the videos were CSAM.  Opp. at 36-38.  But she does not (and cannot) explain how "Defendants knew or should have known that [she] was the victim of sex trafficking at the hands of [the] user who posted the content."  *Doe I*, 558 F. Supp. 3d at 839 (quoting *Twitter*, 2021 WL 3675207, at *25) (cleaned up).[5]

---

[5] Contrary to Plaintiff's claim, Opp. at 36, MindGeek has not said that the TVPRA requires force, fraud, or coercion in the case of a minor.  But it does require an act of recruitment, solicitation, etc. and that the sex act be commercial.  18 U.S.C. § 1591(a).

Even apart from that issue, Plaintiff does not identify anything about her second set of videos supporting a plausible inference that MindGeek should have known they contained CSAM.  Plaintiff's allegation that Pornhub moderators review all videos posted to the site, Opp. at 4-6, 27, 32, 35, is irrelevant without any explanation of what about those videos should have put a reviewer on notice that they were illegal.  Instead, Plaintiff conflates her allegations about the first video and the second set of videos.  *E.g.*, Opp. at 3, 5, 32, 45.  But a careful reading of the FAC and Opposition reveals that the two are not comparable.  For example, Plaintiff misleadingly says she reported "the CSAM" to MindGeek, Opp. at 37, but the FAC only alleges that she reported the first video, FAC ¶¶ 261, and the Opposition likewise concedes she only reported "the video" (singular).  Opp. at 37.  In addition, the FAC alleges that Plaintiff was 13 years old in the first video and that it had titles, tags, and comments indicating it was CSAM.  By contrast, Plaintiff was several years older in the subsequent videos and the FAC says nothing about their titles, tags, or comments.  *See* FAC ¶¶ 267-69.

Plaintiff also attempts to rely on a "presumption" under 18 U.S.C. § 1591(c) that a defendant who had a reasonable opportunity to observe a victim is deemed to know whether the victim is underage.  Opp. at 37.  This argument is misplaced.  First, by its terms, the presumption applies only to a criminal "prosecution under subsection (a)(1)," not civil actions.  Second, even if the presumption applied in civil cases, it would apply only to direct violations under subsection (a)(1), not beneficiary violations under subsection (a)(2) or Section 1595.  Third, subsection 1591(c) has generally been applied only in the context of in-person meetings.  *See Rivers v. United States*, 2019 WL 1959583, at *3 (S.D. Cal. May 2, 2019) (collecting cases).  Both cases Plaintiff cites, Opp. at 37, involved criminal prosecutions and repeated in-person meetings rather than viewing videos.  *United States v. Alcius*, 952 F. 3d 83, 87 (2d Cir. 2020); *United States v. Robinson*, 702 F.3d 22, 31 (2d Cir. 2012).

Plaintiff also urges the Court to import its holding from *Doe II* that an entirely different plaintiff adequately alleged MindGeek should have known *her* videos were

1    CSAM.  Opp. at 35 (citing *Doe II*, 2021 WL 5990195, at *9).  As with *Doe*'s finding

2    of participation, however, Plaintiff ignores that this holding was based on

3    "alleg[ations] that Defendants were familiar with [the perpetrator], who posted

4    hundreds of videos and images depicting other victims," 2021 WL 5990195, at *9,

5    whereas the FAC contains no similar allegations.  *See supra* Part I.B.

6        Plaintiff further claims that awareness of unrelated incidents provides

7    "circumstances" from which the Court should infer MindGeek knew her videos were

8    CSAM.  Opp. at 38-39.  But the cases she cites in support belie that argument.  For

9    example, in *Anderson v. Peregrine Pharmaceuticals, Inc.*, the court held that the

10   defendant's knowledge that certain statements were false could only be inferred if the

11   plaintiff made "sufficiently precise" allegations "demonstrating that the defendants

12   actually saw the reports [to the contrary] and knew of their contents."  2013 WL

13   12122423, at *7 (C.D. Cal. Aug. 23, 2013) (granting motion to dismiss), *aff'd*, 654 F.

14   App'x 281 (9th Cir. 2016).  Thus, while circumstances may provide relevant context,

15   Plaintiff must still plead facts showing MindGeek had the specific knowledge at issue

16   and cannot rely on "circumstances" alone.  *Cooper* and *City of Victorville* are off point

17   for the same reason: both involved allegations from which *specific* knowledge could

18   be inferred.  *Cooper v. San Bernardino Sheriff Dep't*, 2017 WL 10511568, at *3 (C.D.

19   Cal. Mar. 10, 2017) (sheriff should have known of risks to plaintiff personally); *S.E.C.*

20   *v. City of Victorville*, 2013 WL 12133651, at *11 (C.D. Cal. Nov. 14, 2013)

21   (defendant reviewed the statements at issue and knew they were false).  As in

22   *Anderson*, Plaintiff cannot cure her failure to plead knowledge with respect to her

23   specific videos by pointing to knowledge of surrounding circumstances or

24   MindGeek's alleged general practices.

25       Nor does *Anderson* support Plaintiff's attempt to shift the burden to MindGeek

26   to prove there is "no verification system that would have identified illegal and non-

27   consensual content."  Opp. at 39.  *Anderson* held precisely the opposite:  that neither

28   "failure to verify" nor a financial incentive to mislead constitutes sufficient allegations

**REPLY IN SUPPORT OF MOTION TO DISMISS**

to support a finding of scienter.  2013 WL 12122423, at *8, 10.

Finally, Plaintiff claims that "actual or constructive knowledge … are factual questions … that should be left to a jury."  Opp. at 35 (citing *Horton ex rel. Horton v. City of Santa Maria*, 915 F.3d 592, 608 (9th Cir. 2019), and *Barnett v. Cnty. of L.A.*, 2021 WL 826413, at *8 (C.D. Cal. Mar. 4, 2021)).  But this does not excuse Plaintiff from pleading basic facts supporting the knowledge element.  Courts consistently dismiss complaints where plaintiffs "do not plausibly allege that Defendants knew or should have known about [their] sex trafficking." *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021); *see also Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *2, 5 (N.D. Cal. Nov. 20, 2020) (granting motion to dismiss where the plaintiff could not articulate how pleaded facts showed requisite knowledge); *Williams v. Yamaha Motor Corp., U.S.A.*, 106 F. Supp. 3d 1101, 1112 (C.D. Cal. 2015) (Plaintiff must "allege specific facts demonstrating [the] Defendant['s] … knowledge" at the pleading stage), *aff'd*, 851 F.3d 1015 (9th Cir. 2017).  Neither *Horton* nor *Barnett* held otherwise.  In both cases, which involved suicide attempts by pretrial detainees, the plaintiffs made specific allegations that put the defendants on notice of the suicide risk. *Horton*, 915 F.3d at 607-08 (awareness of prior violent episodes, bizarre statements, history of self-harm, suicide threats, and mental health needs); *Barnett*, 2021 WL 826413, at *5, 8, 11 ("completed medical history, a job denial implicating [an] attempt, and a required screening that would have revealed his condition").  These cases stand for the unremarkable proposition that once there are sufficient, specific allegations to support an inference of knowledge, the accuracy of that inference is a fact question.  They do not apply where, as here, Plaintiff pleads no such facts whatsoever to support a key element of her claims.

### D.    Plaintiff's First Video Did Not Involve Commercial Sex Trafficking.

Plaintiff concedes that "no money or benefit was exchanged" for the first video she made for her high school boyfriend.  And she does not claim that either she or her boyfriend had any commercial intent when it was created.  Instead, she relies on

1    *Twitter* (as cited in *Doe I*) for the notion that posting a video to a for-profit website

2    can "render the acts commercial retroactively." Opp. at 28-29. But that part of *Twitter*

3    was based on the defendant's "conce[ssion] at oral argument that the tweeting and

4    retweeting of child pornography is a 'commercial sex act' under the TVPRA." 555

5    F. Supp. 3d at 925. Defendants here make no similar concession. To the contrary,

6    that interpretation is foreclosed by the Ninth Circuit's definitions in *United States v.*

7    *Clark*, 435 F.3d 1100, 1115 (9th Cir. 2006), and *United States v. Bazar*, 747 F. App'x

8    454, 456 (9th Cir. 2018). *See* Mot. at 14-15. Moreover, even if uploading content to

9    the internet could be construed as a commercial sex act, that sex act would be, as

10   Plaintiff puts it, one "between the uploader and the viewers," Opp. at 30 n.7, and not

11   one Plaintiff was engaged in, as required by the TVPRA. *See* 18 U.S.C. § 1591(a).[6]

12          Plaintiff's remaining cases are inapposite. Plaintiff cites *United States v.*

13   *Marcus* for the proposition that "the monetization of all pornography online—

14   including legal, consensual pornography—qualifies as a commercial sex act." Opp.

15   at 29 & n.5 (citing 487 F. Supp. 2d 289, 307 (E.D.N.Y. 2007) (subsequent history

16   omitted)). But what *Marcus* actually held was that coercive sex acts can be

17   commercial where the perpetrator has contemporaneous intent to sell videos of them

18   for profit—not that selling pornography is itself a sex act. The discussion in *Canosa*

19   *v. Ziff* of after-the-fact conduct has nothing to do with retroactively making a sex act

20   commercial; rather it relates to the participation element and holds that "cover ups"

21   that enable "***future assaults***" can be a form of participation in those future acts. 2019

22   WL 498865, at *24 (S.D.N.Y. Jan. 28, 2019) (emphasis added). Neither case supports

23   the notion that a sex act that is not commercial can be made into one retroactively by

24   subsequent events. Rather, both cases are consistent with the principle—adopted by

25   the Ninth Circuit—that the question of whether an act constitutes sex trafficking

---

[6] Contrary to Plaintiff's assertion, Opp. at 28 n.4, MindGeek did not concede in its prior motion to dismiss that Plaintiff alleged a commercial sex act relative to the first video she made. MindGeek did not list Plaintiff among those who had failed to allege such an act because she had arguably pleaded one as to the second set of videos.

1    depends on the perpetrator's state of mind "at the initial recruitment or enticement

2    stage." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 518 (S.D.N.Y. 2018); *accord, e.g.*,

3    *United States v. Todd*, 627 F.3d 329, 333-38 (9th Cir. 2010).[7]

4        Finally, and in line with the same principles, this Court in *Doe I* found that

5    allegations that "some of the videos were made without [the plaintiff's] knowledge"

6    and that the perpetrator had posted "hundreds" of similar videos before made it

7    plausible that he "had the intent at the time the videos were made to post child

8    pornography to Defendants' platforms." 558 F. Supp. 3d at 840. The facts here are

9    very different. The video was made by Plaintiff herself without any intent that it be

10   posted to the internet, and Plaintiff has not pleaded that her boyfriend or whoever

11   uploaded the video had any similar history of posting CSAM to the internet.

12   **II.    Plaintiff's RICO Claims Should Be Dismissed.**

13       **A.    Plaintiff's RICO Claims Are Time-Barred.**

14       Plaintiff does not dispute that she was aware of her injury in 2014. And she

15   concedes that there is no minority tolling for her RICO claims. She erroneously

16   asserts, however, that her RICO claims are equitably tolled. Although a plaintiff need

17   not expressly assert equitable tolling in her complaint, a plaintiff bears "the burden of

18   alleging facts which would give rise to tolling." *Hinton v. Pac. Enters.*, 5 F.3d 391,

19   395 (9th Cir. 1993). Plaintiff has not met her burden since she pleaded no facts that

20   could support equitable tolling—particularly given that Plaintiff waited

21   approximately seven years before filing her original Complaint in this case and was

22   thus approximately three years past the four-year RICO statute of limitations.

23       "[E]quitable tolling is available only in 'extreme cases' and 'has been applied

24   sparingly.'" *Radovich v. Placer Cnty. Sheriff's Office*, 2019 WL 3425998, at *2

25   _____

26   [7] Similarly, in *United States v. Flanders*, 752 F.3d 1317 (11th Cir. 2014) (cited by

27   Opp. at 37 n.11), the sex acts were commercial when they took place because the
     perpetrator used economic incentives to lure his victims to photo shoots, the videos
     were created with contemporaneous intent to sell them, and the defendant had been

28   paid for the photo shoots. *Id.* at 1330 n.2, 1331.

1  (E.D. Cal. July 30, 2019) (citing *Scholar v. Pac. Bell*, 963 F.2d 264, 267 (9th Cir.

2  1992)).  "Equitable tolling 'focuses on excusable delay by the Plaintiff.'"  *Jacob v.*

3  *Aurora Loan Servs.*, 2010 WL 2673128, at *3 (N.D. Cal. July 2, 2010) (quoting *Santa*

4  *Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000)).  Plaintiff "bears the burden

5  of establishing that she pursued her rights diligently and that some extraordinary

6  circumstance stood in her way."  *Id.* (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418

7  (2005)).  Moreover, where, as here, a plaintiff alleges mental impairment as the basis

8  for equitable tolling, that mental impairment must be the "but for" cause of her delay

9  in filing.  *See, e.g.*, *Yow Ming Yeh v. Martel*, 751 F.3d 1075, 1078 (9th Cir. 2014).

10  Contrary to Plaintiff's contentions, California courts can and do grant motions to

11  dismiss where, as here, a plaintiff has failed to allege facts that would support both

12  extraordinary circumstances rendering it impossible to file on time and diligence by

13  the plaintiff.  *See*, *e.g.*, *Radovich,* 2019 WL 3425998, at *3; *Huynh v. Chase*

14  *Manhattan Bank*, 465 F.3d 992, 1004 (9th Cir. 2006) (cited by Plaintiff).

15      Plaintiff argues that she is entitled to equitable tolling because of severe

16  depression (which she now characterizes in her brief as "disabling"), attempts at

17  suicide, a hospitalization, and so forth.  Opp. at 48.  The FAC, however, is bereft of

18  allegations that would establish that she was actually unable to pursue her claims and

19  for what time periods.  The FAC does not allege facts that would show that Plaintiff

20  was more than intermittently unable to pursue her claims, if at all.  Indeed, Plaintiff

21  does not allege or argue, even in a conclusory fashion, that her emotional and mental

22  problems rendered it impossible for her to file her RICO claims on time.

23      Moreover, to establish a long enough period of equitable tolling to render her

24  RICO claims timely, Plaintiff would have to allege facts sufficient to toll the statute

25  of limitations for approximately three years.  She has not done so.  In fact, Plaintiff's

26  allegations demonstrate her "capacity to advocate for [her] interests." *Radovich*, 2019

27  WL 3425998, at *2.  By her own account, Plaintiff at thirteen was able to contact

28  MindGeek to inform it that she was a minor, and demand that the video be removed.

13                                    CASE NO. 2:21-cv-04920

FAC at ¶ 261.  She was able to "recommence the process to have the video removed" "each time [she] learned [it] had been reuploaded."  *Id.* at ¶ 263.  At some unspecified point in time, she was also able to obtain legal help and investigative services in pursuing the removal of her videos from websites.  *Id.* at ¶ 271.  Moreover, at some time prior to December 4, 2020, she was able to speak with the *New York Times* regarding her experiences and pose for photographs.[8]  These circumstances "militate against" any claim by Plaintiff that she "was so mentally incapacitated that she could not 'rationally or factually… understand the need to timely file.'"  *Radovich*, 2019 WL 3425998, at *2; *see also Pamer v. Lucine*, 310 F. App'x 155, 156 (9th Cir. 2009) (affirming district court's decision that "equitable tolling was unwarranted because [the plaintiff] was able to engage in various activities during the time he contended he was physically and mentally unable to file suit"); *Placides v. Rumsfeld*, 79 F. App'x 319, 320 (9th Cir. 2003) (plaintiff's "ability to consult with attorneys and perform volunteer work during the alleged period of [mental] incapacity undermined her claim of incapacity").

As the Ninth Circuit reiterated in *Pamer*, equitable tolling for mental and emotional distress is warranted only "'when extraordinary circumstances beyond the plaintiff's control made it *impossible* to file a claim on time'" and the plaintiff was "'completely' disabled during the relevant limitations period."  310 F. App'x at 156 (quoting *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999)) (emphasis added). Under this standard, the Ninth Circuit and its district courts have repeatedly rejected equitable tolling based on allegations of emotional distress similar to those made by Plaintiff.  *See*, *e.g.*, *Martin v. Ayers*, 41 F. App'x 972, 973 (9th Cir. 2002) (rejecting

---

[8] The FAC contains four references to "The Children of Pornhub," an opinion piece by Nicholas Kristoff from the *New York Times* on December 4, 2020 (FAC ¶¶ 56, 297-98, 343, 383(b)).  This Court may take judicial notice of the fact that Plaintiff was interviewed for that article and posed for photos.  *See*, *e.g*., *In re Diamond Foods, Inc., Sec. Litig.*, 2012 WL 6000923, at *17 (N.D. Cal. Nov. 30, 2012) (taking judicial notice of news articles referenced in complaint, but not for truth of contents).

1    claim for equitable tolling based on "depression and suicidal thoughts"; "depression,

2    even severe depression" was "not an extraordinary circumstance that warrants

3    equitable tolling"); *Stofle v. Clay*, 2011 WL 1302194, at *5 (N.D. Cal. Mar. 31, 2011)

4    (granting motion to dismiss; rejecting petitioner's "conclusory assertion that his

5    mental illness constitute[d] an 'extraordinary circumstance' meriting equitable

6    tolling"); *Griffet v. Ryan*, 2021 WL 5084188, at *2 (D. Ariz. Nov. 1, 2021) (rejecting

7    plaintiff's conclusory "self-serving statements that his age or post-traumatic stress

8    disorder inhibited him from diligently filing his claim"); *see also id.* (equitable tolling

9    not warranted simply because a plaintiff lacks a lawyer or legal sophistication);

10   *Mathias v. HomeStreet Bank, Inc.*, 2021 WL 4484549, at *3 (D. Haw. Sept. 29, 2021)

11   (granting motion to dismiss; holding claims time-barred because plaintiff's "alleged

12   mental impairment did not cover the entire period"; plaintiff had "not pled facts

13   sufficient to support equitable tolling"; and plaintiff's own statements "reveal[ed] that

14   his alleged mental impairment did not cover the entire period that must be tolled").

15        Plaintiff also fails to satisfy the requirements of the "separate accrual rule."

16   Opp. at 49.  As held in *Grimmett v. Brown*, 75 F.3d 506, 514 (9th Cir. 1996), the rule

17   applies only if there are new and independent acts and new and independent injuries

18   within the limitations period.  Notably, Plaintiff does not allege or argue that *either*

19   the first CSAM video of Plaintiff or the second set of such videos referenced in the

20   FAC was first uploaded within the four-year period before Plaintiff's filing of her

21   original complaint in this case.  Rather, Plaintiff relies solely upon allegations that

22   they were repeatedly "reuploaded" and "remained" on the websites "until at least

23   2020." Opp. at 49.  Those allegations do not suffice to restart the statute of limitations.

24   Even if the alleged reuploadings could be considered new and independent acts

25   (which they cannot), no new and independent injuries are alleged.  As pleaded by

26   Plaintiff, her emotional distress was caused by the uploading of the first video.  In

27   contrast to her detailed allegations of her distress after the first video, she alleges no

28   new, additional emotional distress that she attributes to the alleged uploading of her

second set of videos.  Likewise, any purported damage to her "image" occurred in 2014, and she does not allege new and independent damage from the second set of videos.  Further, any claimed incurment of investigative and legal expenses does not restart or extend the statute of limitations.  *See Natural-Immunogeics Corp. v. Newport Trial Grp.*, 2020 WL 5239856, at \*7 (C.D. Cal. 2020) ("litigation expenses … do not extend the [RICO] statute of limitations") (citation omitted).

Plaintiff's contention that Defendants' "own practices were designed to perpetuate their elaborate shell game, mask [their] illicit activities, and evade victims, like plaintiff, by … delaying in responding to plaintiff's takedown requests, actively transferring CSAM to other MindGeek affiliated sites, and re-uploading plaintiff's CSAM videos after they were initially removed," Opp. at 48, does not toll the statute of limitations.  That contention does not alter the fact that Plaintiff knew of her injury in 2014, was aware of subsequent "reuploadings" of her video from the beginning, and continued to request that the videos be taken down.  Plaintiff does not and cannot allege that MindGeek did anything to conceal her injury from her.

In short, Plaintiff's allegations show she knew of her injury in 2014 and provide no basis for equitable tolling or application of the separate accrual rule.  Dismissal of her RICO claims is warranted because she has "failed to allege facts sufficient to show that [her] RICO claims were timely." *Mohsen v. Morgan Stanley & Co.*, 710 F. App'x 330, 330 (9th Cir. 2018).

## B.    Plaintiff Has Not Alleged a Common Purpose.

To allege an associated-in-fact enterprise, Plaintiff is required to provide factual allegations showing that *all* of the purported members of the enterprise "associated together for a common purpose."  *See* Mot. at 28. That showing requires allegations as to "what exactly each individual did, when they did it, [and] how they functioned together as a continuing unit." *Doan v. Singh*, 617 F. App'x 684, 686 (9th Cir. 2015).  Contrary to Plaintiff's contention, Opp. at 50, that requirement, which Plaintiff fails to meet, is based not on "Rule 9(b)'s heightened pleading standards,"

1   but on Rule 8.[9]

2       Plaintiff's Opposition claims she has "identifie[d] the Enterprise's 'common
3   purpose'" of "maximiz[ing] [the members'] own profits through the monetization of
4   CSAM and other illegal content" and has "identifie[d] each member's role in
5   furthering that common purpose." Opp. at 50. In fact, to satisfy the common purpose
6   requirement, Plaintiff has to allege more than that each member's activities somehow
7   further the alleged common purpose. She must allege that each member "associated
8   together" in the alleged enterprise "*for* that alleged common purpose." *Stitt v.*
9   *Citibank, N.A.*, 942 F. Supp. 2d 944, 958 (N.D. Cal. 2013) (emphasis in original).
10  Plaintiff's allegations do not show that purported enterprise members were even
11  aware of the existence of the purported larger enterprise, much less that they
12  associated themselves with it for the alleged common purpose of "monetizing
13  CSAM"—as opposed to merely acting as employees or executives of MindGeek, or
14  service providers, or as otherwise engaging in their own routine business activities or
15  pursuing their own business interests. *See* Mot. at 31-33. Such allegations of a
16  common purpose have been repeatedly rejected by the courts of this Circuit (and
17  others) as insufficient. Where a purported member of a supposed enterprise is
18  pursuing its own economic interest and business affairs, not those of the supposed
19  enterprise, they are not members of the enterprise, even if they "perform[] services
20  for the enterprise," "fail[] to stop illegal activity," and/or "coordinate" with other
21  alleged members of the enterprise. *In re JUUL Labs, Inc., Mkting., Sales Pracs., &*

22  _____

23  [9] In *Doan*, the above quoted statement is followed directly by a footnote that indicates
    that the plaintiff's allegations of common purpose *also* failed under Rule 9(b). *See*
24  *Doan*, 617 F. App'x at 686 n.3.; *see also Ellis v. J.P. Morgan Chase & Co.*, 2015 WL
    78190, at *5 (N.D. Cal. Jan. 6, 2015) (dismissing RICO claims for failure to satisfy
25  Rule 8 pleading standard; plaintiffs "offered no factual allegations to render plausible
    their claim that the enterprise members actually knew of the alleged fraudulent
26  common purpose, or that they 'formed' the enterprise to participate in [alleged
    fraudulent scheme]"; noting that complaint was "notably lacking in the way of
27  substantive allegations concerning the third-party enterprise members" who "had
    service contracts" with main defendant), *aff'd*, 752 F. App'x 380 (9th Cir. 2018).

28

*Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 599 (N.D. Cal. 2020).  Indeed, "[e]ven if the conduct was fraudulent, that does not transform it into distinct 'enterprise' conduct actionable under RICO."  *Id.*; *see also* Mot. at 28-32.

**Mr. Bergmair and the Unidentified Investors**.  Plaintiff's allegations regarding Mr. Bergmair show him engaging in the ordinary business activities of a major investor in a corporation.  Plaintiff's principal allegations are that Mr. Bergmair was involved in the "strategic operations of MindGeek, closely managing financial operations, business plans and even the technology that was critical" to MindGeek's business.  Opp. at 20.  Those allegations do not connect Mr. Bergmair to Plaintiff's alleged larger enterprise or its alleged common purpose.  Likewise, Plaintiff's allegation that Mr. Bergmair was in "regular direct communication" with the Bro-Club (*i.e.*, MindGeek officers and executives), receiving regular briefings and approving initiatives, does not support Plaintiff's conclusory inference that "Bergmair was thus fully aware of, endorsed, and directed MindGeek's unrestricted use of all content, including CSAM and trafficked content."  *Id.*

Plaintiff's allegations regarding the unidentified investors are minimal and conclusory and do not begin to support an allegation that they associated together with the purported, ill-defined larger enterprise.

**The "Sham Shell Companies"**.  Plaintiffs also provide *no* details as to what any particular "sham shell company" actually did or how the purported entities associated themselves with the larger enterprise for the claimed purpose of "maximiz[ing] their own profits through the monetization of CSAM and other illegal content."  Opp. at 50.  To the contrary, Plaintiffs assert that MindGeek "used" or "utilized" the sham shell companies as "*vehicles*" for tax evasion, money laundering, and "scams."  Opp. at 22-24 (emphasis added).  That allegation is incompatible with association in an enterprise and has nothing to do with the common purpose alleged by Plaintiff.

**Visa, Inc.**  As shown in MindGeek's opening brief, Plaintiff's factual

**REPLY IN SUPPORT OF MOTION TO DISMISS**

allegations regarding Visa boil down to no more than that Visa provided credit card processing services to Visa cardholders for purchases from MindGeek.  Mot. at 29. In an attempt to transform ordinary business transactions into participation in a RICO associated-in-fact enterprise, Plaintiff relies on conclusory inferences and characterizations that are not entitled to be taken as true for purposes of this motion. *See* Mot. at 4-5.  Plaintiff's allegations that Visa profited from credit card processing transactions do not plausibly connect Visa to the alleged enterprise or to the alleged common purpose of monetizing CSAM.  *See Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *6-8 (C.D. Cal. July 13, 2015).

In *Gomez*, the court rejected the plaintiff's attempt to engineer a RICO claim by alleging that a service provider to a defendant business was part of an associated-in-fact enterprise along with the defendant.  As the court explained, accepting a theory that the provision of services creates a separate associated-in-fact enterprise between the provider and a business improperly expands RICO liability beyond the intent of the statute, because a "modern" business entity "cannot function in the commercial world without receiving at least some services from another entity, be it payment processing, advertising," or other.  *Id.* at *5, 8-9.  Plaintiff purports to distinguish *Gomez* as applying only where the "provider of services was *unaware* of [the] other defendant's fraud."  Opp. at 53.  However, *Gomez* lists that as only one of the "wide variety" of rationales given by courts for rejecting such association-in-fact enterprises between service providers and businesses.  *See* 2015 WL 4270042, at *9-10.  The *Gomez* court itself followed the "consensus among courts," holding that that "a routine contract between a service provider and its client" does not support allegations of an associated-in-fact enterprise.  *Id.* at *11.[10]

---

[10]  *See also Pac. Recovery Sols. v. United Behavioral Health*, 481 F. Supp. 3d 1011, 1026-27 (N.D. Cal. 2020) ("RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client"; "[c]ourts routinely hold that the 'common purpose' requirement is not met where, as here, the

1    In addition, contrary to Plaintiff's contention, *Jubelirer v. MasterCard*
2  *International Inc.*, 68 F. Supp. 2d 1049 (W.D. Wis. 1999), is relevant here. *Jubelirer*
3  rejected a purported associated-in-fact enterprise between an online casino and a
4  credit card company (MasterCard) that processed customer payments to the casino
5  and a bank that offered MasterCard credit cards to its banking customers. *Id.* at 1051.
6  *Jubelirer* held that the bank's and credit card company's provision of such services
7  was "not the equivalent of participation" in an enterprise, even though "the services
8  performed facilitate[d] the enterprise's activities" and even though "the service
9  provider kn[ew] of the enterprise's illicit nature or perform[ed] improper acts itself."
10 *Id.* at 1053.  Plaintiff incorrectly attempts to differentiate *Jubelirer* as applying only
11 where the "'[p]laintiff has alleged facts which make it apparent that the *only*
12 relationship between the on-line casino and the defendants is a routine contractual
13 relationship for the provision of consumer financing.'"  Opp. at 53 (quoting *Jubelirer*;
14 emphasis Plaintiff's).  But all that Plaintiff has properly alleged as to Visa factually is
15 that it provided routine payment transaction services.  Plaintiff has improperly and
16 conclusorily attempted to characterize those services as participation in alleged
17 trafficking and other torts.  That is precisely the kind of strategy that *Jubelirer* rejects.
18 *Jubelirer*, 68 F. Supp. 2d at 1053.

19    In short, Plaintiff's allegations of an associated-in-fact enterprise including not
20 only MindGeek, its employees, executives, and undifferentiated "sham shell
21 companies," but also Mr. Bergmair, unidentified "shadowy international financiers,"
22 and Visa, must be dismissed for failure to properly allege that the purported members
23 associated together in an enterprise for a common purpose.

24 _____

25 allegations in the complaint are consistent only with the execution of a routine
26 contract or commercial dealing"); *Fraser v. Team Health Holdings, Inc.*, 2022 WL
27 971579, at *12 (N.D. Cal. Mar. 31, 2022) ("Although plaintiffs attempt to transform
   Defendants' business relationships into a RICO enterprise by alleging that they shared
28 the common purpose to fraudulently overcharge patients, there are insufficient facts
   pled to plausibly support this contention.").

### C.   Plaintiff Has Not Alleged an Associated-in-Fact Enterprise That Is Distinct from the RICO Persons.

Plaintiff's failure to provide factual allegations supporting the inclusion of any third parties in the purported association-in-fact enterprise is a further independent reason that their RICO claims should be dismissed as a matter of law.  As shown above and in MindGeek's opening brief, Plaintiff has not plausibly alleged that Visa (or any other, unidentified credit card company) is a member of the enterprise.  In addition, even assuming *arguendo* that Mr. Bergmair, and the unidentified investors and unidentified shell companies are third parties, Plaintiff's allegations do not establish that they shared the alleged common purpose or had any part in the purported enterprise's affairs.  Because Plaintiff has not plausibly connected Visa and such other alleged members to the enterprise, those entities and persons should be disregarded for purposes of determining whether Plaintiff's alleged enterprise satisfies the distinctness requirement.  *See JUUL Labs*, 497 F. Supp. 3d at 601.  Because the remaining alleged enterprise members consist only of MindGeek, its affiliated companies, and officers and employees, Plaintiff has not pleaded an associated-in-fact enterprise that is distinct from the alleged RICO persons.  *See id.*

Plaintiff erroneously asserts that in *United States v. Mongol Nation*, 693 F. App'x 637, 638 (9th Cir. 2017), the Ninth Circuit "expressly rejected" the argument that "there is no *distinction* between the officers, agents and employees who operate [a] corporation and the corporation itself."  Opp. at 55 (emphasis added).  To the contrary, *Mongol Nation* expressly recognized that distinctiveness is not satisfied where a corporate entity is the RICO person and the corporate entity together with its employees and affiliates are the RICO enterprise.  *See* 693 F. App'x at 638 (where "the [entity] was the 'person' and the [entity] together with all its employees and agents, were the 'enterprise,'" there was no distinct enterprise).

In *Mongol Nation*, distinctiveness was satisfied because Mongol Nation, the alleged RICO person, was "a *subset* of the alleged enterprise, which consist[ed] of

1  legally distinct and separate persons in addition to the Defendant." 693 F. App'x at

2  638 (emphasis added).[11]  In other words, Mongol Nation, the RICO person, was a

3  smaller subset of a larger association, which was the RICO enterprise.  Here, by

4  contrast, Plaintiff has not alleged a larger enterprise of which the Defendant RICO

5  persons are a "subset."  Rather, disregarding individuals and entities, such as Visa,

6  whose association and shared common purpose with the alleged enterprise are

7  conclusory and not supported by factual allegations, all that remains is an enterprise

8  that is identical to the RICO persons.  *See Chi Pham v. Capital Holdings, Inc.*, 2011

9  WL 3490297, at *5 (S.D. Cal. Aug. 9, 2011) (distinctiveness not satisfied; "[t]he

10 'complete identity' between the defendants here and the alleged RICO enterprise is

11 fatal to Plaintiffs' § 1962(c) claim"; "Plaintiffs have alleged 'only an enterprise that

12 is the defendants by a different name'").

13      Plaintiff also erroneously relies on *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529

14 (9th Cir. 1992), and *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d

15 353 (9th Cir. 2005).  Opp. at 53.  *Sever* makes clear that "[u]nder RICO, an

16 'enterprise' is a 'being different from, not the same as or part of, the person whose

17 behavior the act was designed to prohibit.'" *Id.* at 1533 (citation omitted).  Similarly,

18 *Living Designs* found distinctiveness where the RICO person was a corporation

19 (Dupont) and the associated-in-fact enterprise included Dupont *and* third parties

20 (Dupont's lawyers and expert witnesses).  The court stressed, however, that "if the

21 'enterprise' consisted only of DuPont and its employees, the pleading would fail for

22 lack of distinctiveness." *Id.*; *see also Yagman v. Kelly*, 2018 WL 2138461, at *14-15

23 (C.D. Cal. Mar. 20, 2018) (holding that distinctiveness was not satisfied where the

24

---

25 [11] Plaintiff also cites *MH Pillars Ltd. v. Realini*, 2018 WL 1184847 (N.D. Cal. Mar.
26 7, 2018).  Opp. at 52.  Although it is not entirely clear what enterprise or enterprises
   are alleged in *MH Pillars*, the court held that distinctiveness was satisfied because the
27 RICO persons (certain "core members") were a subset of a "larger Enterprise." *See*
28 2018 WL 1184847, at *5.  That is not the situation here, where, the RICO persons are
   not a subset of the RICO enterprise, but identical to it.

members of the alleged association-in-fact enterprise and the defendants were the same; stating: "[t]he members of the alleged RICO 'enterprise'—all Defendants—are a parent corporation, its corporate subsidiaries, and officers and employees of the corporations."); *JUUL Labs*, 497 F. Supp. 3d at 601 ("To constitute an AIF enterprise, the presence of some third-party, separate and apart from the company and its officers and employees, is necessary.").[12]

Here, disregarding persons and entities whose membership in the purported enterprise is not properly pleaded, all the components of the alleged associated-in-fact enterprise are the same as the RICO "persons." *Both* consist of MindGeek, affiliated corporations and subsidiaries, and MindGeek employees and officers. Thus, distinctiveness is not satisfied.

### D.    Plaintiff Has Not Alleged RICO Injuries to Business or Property.

None of the injuries that Plaintiff now claims in her Opposition meet the requirements that Plaintiff plead both "the existence of a specific business or property interest" and "'some tangible financial loss' that corresponds with the loss of that business or property interest." *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 1019 (C.D. Cal. 2011) (quoting *Diaz v. Gates*, 420 F.3d 897, 898 (9th Cir. 2005)).

**Lost Employment.**  The Ninth Circuit has recognized a property interest in employment for RICO purposes only where the circumstances alleged "amount to intentional interference with contract and interference with prospective business relations." *Diaz*, 420 F.3d at 900.  Plaintiff has not alleged any such circumstances. Her allegations that her emotional distress and/or injury to her reputation made her

---

[12] *Yagman* explains that permitting RICO claims where both the defendants and the enterprise members are a corporation, its subsidiaries, and employees and officers "would ensnare almost every corporation facing a run-of-the-mill fraud claim in RICO litigation and is, unsurprisingly, not the law." 2018 WL 2138461, at *14 (citing cases); *see also, e.g.*, *Cruz v. FX DirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013) ("The requirement of distinctness cannot be evaded by alleging that a corporation has violated the [RICO] statute by conducting an enterprise that consists of itself plus all or some of its officers or employees.").

1    unemployable or made it difficult for her to seek employment do not implicate a

2    property interest under California law.  And even if a property interest could exist in

3    vague, unspecified possibilities of employment, Plaintiff fails to allege facts

4    supporting a concrete financial loss connected to that property interest.  Thus, her

5    purported loss of employment or employment opportunity cannot support a RICO

6    injury to business or property.[13]

7        **Harm to Image.**  In its opening brief, MindGeek showed that Plaintiff's

8    purported property/financial interest in her CSAM images is not a property interest

9    that is protected by RICO or cognizable and enforceable under RICO.  *See* Mot. at

10   24-25.  In response, Plaintiff asserts that her "claimed injury is not premised on a

11   property right in the CSAM, but in the economic value of her image and likeness,"

12   Opp. at 56, by which she apparently means the value of her image and likeness

13   generally.  But even assuming Plaintiff has a property interest in her image and

14   likeness generally, Plaintiff has not alleged any facts establishing that her "image and

15   likeness" has or ever had any commercial value apart from her CSAM images.

16       Moreover, despite disavowing "a property right in the CSAM," Plaintiff

17   attempts to measure the injury to the value of her "image and likeness" based on the

18   "profits the Enterprise collected from the monetization of plaintiff's CSAM."  Opp.

19   at 56.  Thus, despite her disavowal, Plaintiff is in fact seeking to vindicate a property

20   right in illegal CSAM, which (like the sexual services at issue in *Doe v. Roe*, 958 F.2d

21   763, 768 (7th Cir. 1992)) is not a property interest that legally "can be bought, sold

22   and exchanged" or possessed or that RICO would protect even if it constituted

23   property under California law.  *See Roe*, 958 F.2d at 768.  As the Seventh Circuit held

---

[13]  Plaintiff incorrectly claims that *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1119 (9th
Cir. 2017), holds that "time away from work is a RICO injury." Opp. at 54.  In *Just
Film*, the plaintiff business owner spent time away from work investigating a
fraudulent bill for lease of business equipment and paid an employee to check records.
847 F.3d at 1119.  *Just Film* involves injury to business and does not hold that an
employee's time away from work constitutes an injury to property.  In any case,
Plaintiff does not allege she had work and spent time away from it.

in *Roe*, even though for RICO purposes "whether a particular interest amounts to property is quintessentially a question of state law," the courts "are not required to adopt a state interpretation of 'business or property' if it would contravene Congress' intent in enacting RICO." *Id.* As with the property interest asserted by the plaintiff in *Roe*, it is "impossible to believe" that Congress intended to "recogniz[e] a civil action to acquire a monetary recovery for the value of one's [CSAM]." *Id.*

Nor, contrary to Plaintiff's assertion, is such a recovery "expressly" authorized under Cal. Civ. Code § 3344(a). Opp. at 55. Putting aside that Plaintiff has failed to allege a claim under Section 3344, nothing in that statute purports to recognize a right to recover such profits. Moreover, Plaintiff fails to offer any authority for her contention that RICO incorporates the damages provisions of Section 3344, such that Plaintiff is excused from the bedrock RICO requirement that she plead not only a property interest but also facts supporting a tangible, concrete financial loss to that property interest. *See, e.g.*, *Diaz*, 420 F.3d at 898 ("RICO does not provide a cause of action for all types of injury to property interests, but only for injuries resulting in 'concrete financial loss.'") (citation omitted). Plaintiff provides no factual allegations that show that she has sustained a concrete financial loss connected to her asserted property interest in her "likeness or image." She does not allege that she had any possibility of monetizing her likeness or image, that she attempted to do so or had a "present desire or intent" to do so. *See* Mot. at 24.

**Legal and Investigative Expenses**. In *Thomas v. Baca*, the court observed that the Ninth Circuit "has not recognized the incurment of legal fees as an injury cognizable under RICO" and "decline[d] to do so [t]here." 308 F. App'x 87, 88 (9th Cir. 2009). California district courts have generally followed *Thomas* on this issue. *See, e.g.*, *Pac. Surf Designs, Inc. v. Whitewater W. Indus., Ltd.*, 2021 WL 5326529, at *2 (S.D. Cal. Nov. 16, 2021); *Kamal v. Cnty. of L.A.*, 2019 WL 2502433, at *8 (C.D. Cal. May 2, 2019), *rpt. and rec. adopted,* 2019 WL 2501478 (C.D. Cal. June 17, 2019); *Ogden v. Wells Fargo Bank, N.A.*, 2015 WL 13413390, at *2 (C.D. Cal. Feb.

20, 2015), *aff'd,* 674 F. App'x 650 (9th Cir. 2017).  Plaintiff cites three cases that have held that the incurment of legal fees can, in some instances, constitute a RICO injury.  Opp. at 54.  All three cases, however, involved a plaintiff that was or owned a business and had incurred legal or investigative expenses related to the business.   Here, Plaintiff does not claim an injury to business.  Her legal and investigative expenses are simply personal "pecuniary losses" consequent to her emotional distress and other personal injuries.  *See Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1999); *see also Diaz*, 420 F.3d at 900.

In sum, Plaintiff alleges personal injuries only and has failed to allege a concrete financial loss corresponding to a cognizable property interest.  Accordingly, her RICO claims fail as a matter of law.

**E.    Plaintiff Does Not Allege Predicate Acts Connected to Her Injuries.**

Contrary to Plaintiff's contentions, she has not sufficiently alleged predicate acts connected to her supposed injuries.  Plaintiff does not allege a direct or indirect violation of the TVPRA with any connection to her alleged injuries.  *See supra* Part I; Mot. at 10-20.  Plaintiff also has not properly alleged violations of 18 U.S.C. § 2252. *See infra* Part IV.  In addition, Plaintiff fails to show that the alleged mail and wire fraud, money laundering, and criminal copyright infringement had any connection to her purported injuries.  *See* Mot. at 35-38.

**III.   Section 230 Requires Dismissal of All of Plaintiff's Claims.**

**A.    MindGeek Did Not Contribute to the Creation of Plaintiff's Videos.**

Plaintiff's brief says almost nothing about how MindGeek "materially contributed" to the creation of the videos of ***her***.  Instead, she focuses on how Pornhub allegedly encourages other, unrelated content, Opp. at 67, and asks the Court to assume that MindGeek's purported "'widespread practices' applied to videos depicting her." Opp. at 68 (quoting *Doe I*, 558 F. Supp. 3d at 842 n.6).  But allegations about how MindGeek allegedly encourages ***other*** content on Pornhub do not establish that MindGeek "create[d] or develop[ed] the specific content at issue"—*i.e.*, the

1  videos of Plaintiff—as the Ninth Circuit requires.  *Dyroff v. Ultimate Software Grp.,*

2  *Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019); *accord Carafano v. Metrosplash.com, Inc.*,

3  339 F.3d 1119, 1125 (9th Cir. 2003).  Even assuming, *arguendo*, that MindGeek's

4  purported encouragement of CSAM constitutes material contribution to some illegal

5  content on Pornhub, "[a]n internet service provider can have § 230 immunity for some

6  claims or activities and not others."  *M.L. v. craigslist, Inc.* (*M.L. IV*), 2022 WL

7  1210830, at *13 n.13 (W.D. Wash. Apr. 25, 2022); *see also Fair Hous. Council v.*

8  *Roommates.com, LLC*, 521 F.3d 1157, 1172-75 (9th Cir. 2008).  Allegations about

9  MindGeek's general practices or what purportedly happened to someone else are not

10 enough to support an inference that such practices impacted Plaintiff.  Facts that create

11 a mere "suspicion [of] a legally cognizable right of action" are not enough; Plaintiff

12 must plead facts that "raise a right to relief above the speculative level."  *Bell Atl.*

13 *Corp. v. Twombly*, 550 U.S. 544, 555, 561 (2007).

14    Plaintiff attempts to rely on this Court's opinion in *Doe* but ignores the

15 differences between the allegations in that case and this one, most importantly (1) that

16 the videos at issue here were created by Plaintiff herself at the request of her

17 boyfriends and (2) that neither her boyfriends nor the uploaders had an ongoing

18 history of uploading "hundreds" of illegal videos to Pornhub.  Mot. at 8-10.  *MG*

19 *Freesites* is even less apt because the perpetrators who created the videos there—

20 unlike here—were enrolled in Pornhub's "ModelHub" and "Content Partner"

21 programs, and the court specifically discussed Pornhub's alleged role in controlling

22 and directing content by such persons.  2022 WL 407147, at *5, 16-17.

23    Plaintiff argues that MindGeek contributed to the creation of her videos by

24 "actively continu[ing] to disseminate" them.   She claims this dissemination

25 constitutes creation by MindGeek because the videos were allegedly not immediately

26 removed, they were made easier to find, and users could download them and upload

27 them to other sites.  Opp. at 69.  She also asserts that MindGeek "reuploaded Ms.

28 Fleites's videos after they had been removed as CSAM," Opp. at 39, but, as noted

1   above, that is false and not alleged in the FAC.  Even if these allegations are credited,

2   "proliferation and dissemination of content" to another website or in another format,

3   "does not equal creation or development of content."  *Kimzey v. Yelp! Inc.*, 836 F.3d

4   1263, 1270-71 (9th Cir. 2016); *accord, e.g.*, *Ginsberg v. Google Inc.*, 2022 WL

5   504166, at *5 (N.D. Cal. Feb. 18, 2022) (analysis "focuses solely on who created

6   the content at issue"); *Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d

7   1311, 1320 (M.D. Fla. 2015) ("[R]eposting allegedly [illegal content] … does not

8   preclude Section 230 immunity.").  Plaintiff's argument that MindGeek generated

9   "thumbnails" from user-generated videos fails for the same reason.  Opp. at 29, 43.

10      **B.**   **Section 230 Applies to Claims under 18 U.S.C. §§ 2252 and 2252A.**

11      Plaintiff paradoxically argues that her possession and distribution claims are

12   not based on MindGeek's "role as a publisher" but rather on its "knowing publication

13   of videos containing child pornography."  Opp. at 70.  A claim based on knowing

14   publication is the same as a claim based on acting as a publisher.  Claims for "knowing

15   publication" of third-party content are precisely what Section 230 bars.[14]

16      Plaintiff also argues that possession and distribution of CSAM is *per se* not

17   covered by Section 230 immunity because CSAM is "illegal contraband."  Opp. at

18   69-71.  The *Twitter* court rejected the exact "contraband" argument Plaintiff makes

19   here.  555 F. Supp. 3d at 928.  And virtually every court to consider whether Section

20   230 applies to claims concerning CSAM has found it does.  *See Diez v. Google, Inc.*,

21   831 F. App'x 723, 724 (5th Cir. 2020); *Reddit*, 2021 WL 5860904, at *6 (applying

22   *Gonzalez*); *Twitter*, 555 F. Supp. 3d at 928 (same and collecting cases); *Doe v. Bates*,

23   2006 WL 3813758, at *4 (E.D. Tex. Dec. 27, 2006).  Even the sole court to hold

24   otherwise—the Northern District of Alabama in *MG Freesites*—noted *Twitter*'s

25   holding that Plaintiff's contraband argument was foreclosed by Ninth Circuit

---

[14] Plaintiff also argues that MindGeek is liable for possession and distribution because it supposedly reuploaded Plaintiff's videos and maintains all videos on servers.  But the FAC does not allege MindGeek reuploaded Plaintiff's videos and any retention of videos on MindGeek's servers relates to its role as publisher.

**REPLY IN SUPPORT OF MOTION TO DISMISS**

precedent.  2022 WL 407147, at *24 n.7.  Indeed, as the Ninth Circuit has explained, it is black letter law that Section 230(e)(1)'s exception for criminal acts "extends only to criminal prosecutions, and not to civil actions based on criminal statutes." *Gonzalez v. Google LLC*, 2 F.4th 871, 890 (9th Cir. 2021) (collecting cases); *accord Twitter*, 555 F. Supp. 3d at 928.

Finally, Section 230 immunity does not turn on whether the content has "value" or is legal.  Section 230 applies to "any" content provided by a third party; it is not limited to lawful or protected "speech."  47 U.S.C. § 230(c)(1).  Indeed, if Section 230 applied only to lawful speech it would not "immunize" anything.

## IV.    Plaintiff's Remaining Claims Fail for Additional Reasons.

**18 U.S.C. §§ 2252 & 2252A.**  Plaintiff does not dispute that these claims fail unless she can show that MindGeek had actual knowledge that the videos she created for sale contained CSAM.  Opp. at 45-47.  Instead, she argues that the Court should infer knowledge based on the allegations that Freesites reviewed all videos and Plaintiff requested a takedown of a different video years prior.  Opp. at 46.  Plaintiff is wrong; she must allege that there was something about *each* of her videos that supports a reasonable inference MindGeek knew it contained CSAM.  *See, e.g.*, *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994).  Plaintiff focuses on the first video she made for her then-boyfriend—but MindGeek is not challenging, for the purpose of this motion only, whether Plaintiff has plausibly alleged that MindGeek can be charged with knowledge that the first video contained CSAM. Regarding the second set of videos she created for sale when she was several years older, the FAC contains no allegations to support the inference that MindGeek had actual knowledge of her minority.  Unlike the first video, Plaintiff has not alleged that the titles of these videos indicated that they contained CSAM; that viewing the videos would have made it obvious that she was underage; or that she ever requested that any of the second set of videos be removed from Pornhub.  There are no plausible allegations that MindGeek knew that the subsequent videos she created contained

CSAM at all, let alone that MindGeek deliberately kept them on its website. Accordingly, Counts V and VI must be dismissed to the extent they are based on the second set of videos.[15]

**Intrusion Claim.** Plaintiff tacitly concedes that she has not plausibly alleged facts establishing an intrusion into a "private place, conversation or matter" by MindGeek. *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1147 (S.D. Cal. 2005) ("[T]here is no reasonable expectation of privacy in transmissions over the internet"). Instead, she relies on *Michaels v. Internet Entertainment Group, Inc.*, 5 F. Supp. 2d 823 (C.D. Cal. 1998), for the proposition that merely sharing videos voluntarily provided by a third party can constitute an intrusion. Opp. at 62. But while the court in *Michaels* found an intrusion, it did not explain how sharing a video that had been shared with a third party could amount to an intrusion by a different party (who also received it lawfully) seeking to disseminate it. In fact, the weight of authority holds that an intrusion "consists solely of an intentional interference with [plaintiff's] interest in solitude or seclusion," not "publicity given to the person whose interest is invaded or to his affairs." RESTATEMENT (SECOND) OF TORTS § 652B cmt. a.; *accord P.S. v. Scripps Media, Inc.*, 2017 WL 1534624, at *8 (Cal. Ct. App. Apr. 28, 2017); *Lee v. Penthouse Int'l, Ltd.*, 1997 WL 33384309, at *7 (C.D. Cal. Mar. 19, 1997) ("Plaintiffs suggest, without support, that the act of publication was the intrusion into their solitude. This definition is without support."); *see also Aisenson v. Am. Broad. Co.*, 220 Cal. App. 3d 146, 162 (1990). A contrary interpretation of intrusion would render the tort of disclosure-of-private-facts superfluous. Plaintiff also argues that *Lee* is inapposite because it involved a sex tape of celebrities whose sex life was of legitimate public concern, Opp. at 62, but MindGeek does not say there is public concern. It argues only that MindGeek did not intrude, let alone intentionally

---

[15] Plaintiff asserts that knowledge can be inferred from MindGeek's modification of Plaintiff's videos. However, the FAC contains no allegations that MindGeek modified Plaintiff's videos. Even if it did, modification of a video does not support a reasonable inference the modifier knew it contained CSAM.

**REPLY IN SUPPORT OF MOTION TO DISMISS**

intrude, upon her seclusion by disseminating videos uploaded by third parties.[16]

**Public-Disclosure and § 1708.85.** In support of her public-disclosure claim, Plaintiff argues that even though she or her boyfriend shared the second set of videos publicly on other websites before they appeared on Pornhub, the videos were still private because "[t]here is no legitimate public interest in watching [CSAM]." Opp. at 64. Plaintiff cites no authority for the proposition that information is not public merely because there is no legitimate public interest in watching it. California law is clear that once information becomes disseminated on the internet, subsequent re-publishers cannot be liable for disclosure of private facts. *See Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125, 1130 (2009); *see also Lee*, 1997 WL 33384309, at *6. There are no allegations that MindGeek "engag[ed] in improper and unforeseen conduct" to "gain[] unauthorized and unwanted access to" the second set of videos. Opp. at 64. Rather, Plaintiff alleges that she and her ex-boyfriend created those videos for the express purpose of commercializing them on the internet.

Similarly, Plaintiff's claim under § 1708.85 fails because the statute does not allow recovery for sharing videos that were "previously distributed by another person." Cal. Civ. Code § 1708.85(c)(6). Plaintiff's reliance on this Court's prior decision is misplaced. Most notably, the Court in *Doe* did not find the plaintiff made affirmative allegations that the videos in question had been shared to ***other websites*** with Plaintiff's knowledge before they ever appeared on Pornhub. Because Plaintiff admits that the videos were shared by her with her ex-boyfriends who then disseminated them (with the second set of videos offered for sale on various websites and apps before they were posted to Pornhub), this claim also must be dismissed.

**Misappropriation.** Plaintiff does not claim that she appeared in any ads for

---

[16] Moreover, contrary to Plaintiff's assertion, *Times-Mirror Co. v. Superior Court,* 198 Cal. App. 3d 1420 (1988), did not hold that whether a plaintiff is a crime victim is relevant to an intrusion claim; the plaintiff in that case was not even a crime victim. In any event, the *Lee* court cited *Times Mirror Co.* in evaluating the *Lee's* public-disclosure claim, not their intrusion claim. *Lee*, 1997 WL 33384309, at *7.

MindGeek.  Nor does she argue that her image was used to suggest that she endorsed products advertised on Pornhub or that MindGeek capitalized on her specific identity. Instead, Plaintiff argues that MindGeek used her image as "window-dressing to advance [its] goal of attracting customers to its other services and advertised products," which constituted a "use" of her identity.  Opp. at 64-65.  She is incorrect.

To be sure, non-celebrities can bring misappropriation claims; but merely hosting an image of Plaintiff adjacent to ads with no connection to her is not an actionable "use" of her identity under California law.  *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 210 (2017).  Plaintiff's reliance on *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001), is misplaced.  In *Downing*, Abercrombie purchased a 30-year-old photograph depicting plaintiffs, who were famous surfers, and listing their names.  *Id.* at 1000.  Abercrombie copied the design of the t-shirts being worn by the plaintiffs, created replicas for sale, and reprinted the photograph near an advertisement for the replica t-shirts in its catalog.  *Id.*  Plaintiffs alleged misappropriation of their likenesses, based on the use of their images without permission to imply endorsement of Abercrombie's t-shirts.  *Id.* at 1001-02.  The facts in *Downing* are thus nothing like this case, where there is no plausible allegation that MindGeek used Plaintiff's likeness to endorse any product.  Moreover, *Downing* turned on whether Abercrombie's use of the photograph was protected by the First Amendment, *Downing*, 265 F.3d at 1002; the court did not discuss whether including the photos actually constituted an actionable "use" under state law.

Plaintiff's reliance on *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011), is even further afield.  In *Fraley*, Facebook made it look like the plaintiffs endorsed products in ads targeting the plaintiffs' friends.  This was significant because the plaintiffs' *faux* endorsements were independently valuable in that context.  *Id.* at 808-09.  By contrast, Plaintiff does not allege that MindGeek used her specific identity for commercial advantage.  As in *Cross*, her videos merely appeared adjacent to unrelated ads, as did millions of other videos.  14 Cal. App. 5th at 209-10.

1    **Civil Conspiracy.**   Plaintiff's argument that MindGeek's challenges "to
2    plaintiff's civil conspiracy claims are predicated entirely on its challenges to the
3    underlying claims," Opp. at 59, is incorrect.  While failure of the underlying claims
4    is an independently sufficient reason to dismiss the civil conspiracy claim, it should
5    also be dismissed because "[t]here are no allegations concerning when or where such
6    a conspiracy was conceived," or facts from which an agreement can be inferred, and
7    Plaintiff has not specified the role each Defendant played in the purported conspiracy.
8    *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1288 (C.D. Cal. 2015).

9    **UCL.**   Plaintiff relegates the defense of her UCL claim to a footnote and fails
10   to address that the FAC lacks any allegation that Plaintiff lost any specific money or
11   property caused by an allegedly unfair business practice or a false
12   advertisement.  Mot. at 44-45.  Instead, she merely falsely claims that MindGeek has
13   conceded that the FAC has alleged economic harm, Opp. at 61 n.32, but MindGeek's
14   brief is clear that Plaintiff fails to identify economic injury with the required
15   specificity.  Mot. at 45.

16   **Negligence.**   Plaintiff fails to refute MindGeek's argument that her negligence
17   claim fails as a matter of law, Mot. at 44, conceding that it should be dismissed.

18   **V.    The Court Lacks Personal Jurisdiction over Two MindGeek Entities.**

19   Plaintiff does not claim that she has pleaded particular facts showing that the
20   Court has jurisdiction over MindGeek S.à.r.l or MG Premium Ltd.  Instead, she
21   simply reiterates the FAC's conclusory allegations that the "Court has personal
22   jurisdiction over each of the MindGeek Entities … based on the jurisdictional contacts
23   of their agents/alter-egos." Opp. at 72.  This argument ignores that MindGeek has
24   proffered unrebutted evidence that each MindGeek entity adheres to all relevant
25   corporate formalities and that none of them are mere alter-egos of each other.  Decl.
26   of A. A. Andreou ("Andreou Decl.") ¶¶ 9, 15, 19, 22, 26, 30, 34.  That evidence flips
27   the burden to Plaintiff to establish jurisdiction through competent record evidence,
28   which she has failed to do.  *AMA Multimedia, LLC v. Wanat,* 970 F.3d 1201, 1207

1    (9th Cir. 2020), *cert denied*, 142 S. Ct. 76 (2021).

2          Plaintiff has not established, as she concedes she must to establish alter-ego

3    jurisdiction: "(1) 'such unity of interest and ownership' between parent and subsidiary

4    'that the separate personalities of the two entities no longer exist' ***and*** (2) the 'failure

5    to disregard' the separate entities 'would result in fraud or injustice.'" *Iconlab, Inc.*

6    *v. Bausch Health Cos.*, 828 F. App'x 363, 364 (9th Cir. 2020) (quoting *Ranza v. Nike,*

7    *Inc.,* 793 F.3d 1059, 1073 (9th Cir. 2015)) (emphasis added); Opp. at 73.  Crucially,

8    nowhere in the FAC or her Opposition does Plaintiff even attempt to explain how

9    respecting the corporate separateness of the MindGeek entities would "result in fraud

10   or injustice." *Iconlab, Inc.*, 828 F. App'x at 364.  Nor could she.  This is not a situation

11   where the only proper defendant is absent.  Plaintiff has sued the operator of

12   Pornhub—Freesites—and an entity that provides services for it.  "There are no facts

13   before the Court that suggest Plaintiff cannot be made whole through a lawsuit against

14   [them]."  *Shimmick Constr. Co./Obayashi Corp. v. Officine Meccaniche Galletti-*

15   *O.M.G. S.R.L.*, 2014 WL 5847440, at *7 (S.D. Cal. Nov. 12, 2014).  This alone

16   precludes the exercise of alter-ego jurisdiction.

17         For the reasons set forth in MindGeek's opening brief, Plaintiff also falls far

18   short of satisfying the first element of the alter-ego test.  *See* Mot. at 47-49.  Plaintiff's

19   argument that distinct corporations should be ignored because MG Global did contract

20   work for Freesites (neither of whom are contesting jurisdiction) is meritless.  Opp. at

21   75.  There is nothing unusual or improper about one corporate subsidiary providing

22   services for another under the same corporate umbrella.  In fact, this was the issue in

23   *Ranza* where the Ninth Circuit declined to vitiate the corporate separateness of Nike

24   and a foreign subsidiary.  *Ranza*, 793 F.3d at 1074.

25         Plaintiff's argument that Rule 4(k)(2), 18 U.S.C. § 2255, and RICO confer

26   personal jurisdiction over MindGeek S.à.r.l and MG Premium Ltd. is also defective

27   for similar reasons.  Plaintiff cannot establish jurisdiction under any of those

28   provisions because they only apply if "exercising jurisdiction is consistent with the

1  United States Constitution and laws." Fed. R. Civ. P. 4(k)(2)(B). Here, Plaintiff has

2  not set forth any allegations that would permit the exercise of jurisdiction over either

3  entity anywhere in the United States.

4    Finally, Plaintiff has not demonstrated that she is entitled to jurisdictional

5  discovery. A plaintiff seeking discovery is required "to establish a 'colorable basis'

6  for personal jurisdiction before discovery is ordered." *Martinez v. Manheim Cent.*

7  *California*, 2011 WL 1466684, at *4 (E.D. Cal. Apr. 18, 2011) (collecting cases).

8  Where, as here, "a plaintiff's claim of personal jurisdiction appears to be both

9  attenuated and based on bare allegations in the face of specific denials made by the

10  defendants, the Court need not permit even limited discovery." *Pebble Beach Co. v.*

11  *Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006); *see also Blue Diamond Growers v. Tex.*

12  *Best Smokehouse, Inc.*, 2008 WL 5386762, at *2 (E.D. Cal. Dec. 22, 2008) ("Since

13  Plaintiff does not indicate why such discovery would be fruitful, the request is

14  denied."). That is precisely the situation here. Plaintiff has failed to allege a colorable

15  basis for jurisdiction and has failed to respond substantively to the sworn statement in

16  the record supporting MindGeek's positions on jurisdiction. That sworn statement

17  demonstrates that MindGeek S.à.r.l. and MG Premium are improper parties because

18  each entity's individual operations are sufficiently independent and are not connected

19  to the Plaintiff. Plaintiff's request for jurisdictional discovery should be denied.

20                              **CONCLUSION**

21    For all of the foregoing reasons, the Court should grant MindGeek's motion

22  and dismiss the FAC with prejudice.

23

24

25

26

27

28

1

DATED: July 25, 2022                    Respectfully submitted,

2

3                                                  /s/    *Benjamin M. Sadun*

4                                       BENJAMIN M. SADUN (287533)
                                        benjamin.sadun@dechert.com
5                                       DECHERT LLP
                                        US Bank Tower, 633 West 5th Street,
6                                       Suite 4900
                                        Los Angeles, CA 90071-2013
7                                       Phone: (213) 808-5721; Fax: (213) 808-5760
8

9                                       KATHLEEN N. MASSEY (*admitted pro hac
                                        vice*)
10                                      kathleen.massey@dechert.com
                                        DECHERT LLP
11                                      Three Bryant Park
                                        1095 Avenue of the Americas
12                                      New York, NY 10036
                                        Phone: (212) 698-3500; Fax: (212) 698 3599
13                                      *Attorneys for Defendants*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REPLY IN SUPPORT OF MOTION TO DISMISS**