Michael J. Bowe
(admitted pro hac vice)
mbowe@brownrudnick.com
Lauren Tabaksblat
(admitted pro hac vice)
ltabaksblat@brownrudnick.com
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

David M. Stein (#198256)
dstein@brownrudnick.com
BROWN RUDNICK LLP
2211 Michelson Drive, 7th Floor
Irvine, California 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| SERENA FLEITES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MINDGEEK S.A.R.L.; MG FREESITES, LTD; MINDGEEK USA INCORPORATED; MG PREMIUM LTD.; MG GLOBAL ENTERTAINMENT INC.; 9219-1568 QUEBEC, INC.; BERND BERGMAIR; FERAS ANTOON; DAVID TASSILLO; COREY URMAN; VISA INC.; COLBECK CAPITAL DOES 1-5; BERGMAIR DOES 1-5<br><br>　　　　Defendants. | CASE NO. 2:21-CV-04920-CJC-ADS<br><br>Judicial Officer: Cormac J. Carney<br>Courtroom: 9B<br><br>**DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE AUTUMN D. SPAETH**<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ISSUANCE OF REQUESTS FOR INTERNATIONAL JUDICIAL ASSISTANCE**<br><br>Date: November 9, 2022<br>Time: 10:00 a.m.<br>Courtroom: 6B |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 2

I. THE REQUESTS ARE RELEVANT TO THE COURT'S JURISDICTIONAL ANALYSIS AND PROPORTIONAL. .......................... 2

II. INTERESTS OF JUDICIAL EFFICIENCY FAVOR ISSUING THE REQUESTS AT THIS JUNCTURE. ............................................................... 9

CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases** .................................................................................................. **Page(s)**

*Baker v. Wehinger*,
   No. 18-cv-05800-SJO (Ex), 2019 WL 6720990 (C.D. Cal. Mar. 20, 2019) ........................................................................................................... 2

*Evanston Ins. Co. v. OEA, Inc.*,
   No. 02-cv-1505, 2006 WL 1652315 (E.D. Cal. June 13, 2006) ......................... 4

*Genus Lifesciences Inc. V. Lannett Co., Inc.*,
   2019 WL 7313047 (N.D. Cal. Dec. 30, 2019) .................................................... 7

*Google Inc. v. Rockstar Consortium U.S. LP*,
   No. 13-cv-5933 CW, 2014 WL 9735114 (N.D. Cal. Oct. 3, 2014) .................... 4

*Lovati v. Petroleos De Venezuela, S.A.*,
   No. 19-cv4799, 2022 WL 1416646 (S.D. NY May 5, 2022) .............................. 4

*Nye v. Ingersoll-Rand Co.*,
   No. 08-cv-3481-(DRD)(MAS), 2009 WL 10741606 (D. NJ Dec. 11, 2009) ............................................................................................................... 10

*Pesch v. Independent Brewers United Corporation*,
   No. 13-cv-05317 (DMR), 2014 WL 5106985 (N.D. Ca. Oct. 10, 2014) ................................................................................................................. 7

*Polaris Innovations Limited v. Kingston Technology Company, Inc.*,
   No. 16-cv-00300 CJC, 2017 WL 327615 (C.D. Cal. Feb. 14, 2017) ................. 3

*Shell Oil Co. v. Franco*,
   No. 03-cv-8846-NM(PJWx), 2005 WL 6184247 (C.D. Cal. Nov. 10, 2005) ............................................................................................................... 10

*Shoen v. Shoen*,
   5 F.3d 1289 (9th Cir. 1993) ...................................................................... 2, 4, 10

*Soto v. Castlerock Farming & Transp., Inc.*,
   282 F.R.D. 492 (E.D. Cal. 2012) ..................................................................... 5, 7

*Trump v. Vance*,
   977 F.3d 198 (2nd Cir. 2020) .............................................................................. 9

*Zissa v. Cnty. of Los Angeles*,
   No. 18-cv-10174-CJC, 2019 WL 13074698 (C.D. Cal. Nov. 7,
   2019) ................................................................................................................ 2

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ........................................................................................ 2

1    Plaintiff respectfully submits this reply memorandum in further support of her
2  motion for issuance of letters of request for international judicial assistance to obtain
3  discovery from non-party foreign entities Grant Thornton LLP Canada, Grant
4  Thornton Ireland, Grant Thornton (Cyprus) Ltd., and Grant Thornton Luxembourg
5  (the "Requests").

## INTRODUCTION

7    By order dated July 29, 2022, this Court held that "financially benefiting from
8  the sexual exploitation of minors is the core of this case" and granted Plaintiff
9  jurisdictional discovery concerning which individuals and entities own, control, and
10 "had substantial involvement in the practices and policies of . . . MindGeek's major
11 lines of business that harmed Plaintiff." (Dkt. 167 at n. 2, 7.)  Factors that the Court
12 held were relevant to the jurisdictional analysis include "where the money flows in
13 the MindGeek web, which may relate to ownership of the porn sites that generate
14 revenue," and evidence of "operating Pornhub and other MindGeek sites in a
15 manner that maximizes the profitability of child porn." (*Id.* at n. 2.)  The Court also
16 properly recognized that the jurisdictional contacts of the nonobjecting MindGeek
17 entities may be imputed to MindGeek S.A.R.L, MG Premium Ltd., and the
18 Individual Defendants under alter-ego theories of liability and thus directed the
19 parties to take discovery concerning whether the MindGeek entities were adequately
20 capitalized, maintain separate financials, functions, and management, were
21 remunerated for services provided by one MindGeek entity to another, diverted
22 money to related entities or the Individual Defendants, or otherwise engaged in
23 fraudulent transactions to "bleed" money from the companies.  (*Id.* at n. 4, 6.)
24    Despite these rulings, the MindGeek Defendants argue that the Requests
25 directed at the firm that was responsible for creating and dissolving the hundreds of
26 MindGeek entities, preparing profit and loss statements, balance sheets, and tax
27 returns for defendants and their related entities and auditing those entities'
28 operations is irrelevant, unduly burdensome, and untimely under the current case

management order. According to defendants, Plaintiff is only entitled to a discrete set of documents for a discrete set of entities and is only entitled to seek those documents from defendants. This is not the law.

As this Court properly recognized, the Amended Complaint alleges that defendants intentionally created an international, byzantine structure to conceal its ownership and evade liability for its criminal activities. (Dkt. 167 at 6-7.) The Court should reject defendants' thinly veiled efforts to stonewall the disclosure of this information concerning their corporate structure, operations, and capitalizations by cherry-picking and controlling the evidence that Plaintiff is entitled to receive. As set forth in Plaintiff's opening brief and below, the Requests track the precise categories of information that this Court held was relevant to its jurisdictional analysis. Accordingly, for the reasons set forth in Plaintiff's opening memorandum of law and those set forth below, Plaintiff's motion should be granted.

## ARGUMENT

### I. THE REQUESTS ARE RELEVANT TO THE COURT'S JURISDICTIONAL ANALYSIS AND PROPORTIONAL.

"[P]re-trial discovery is ordinarily 'accorded a broad and liberal treatment.'" *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). A party may obtain discovery regarding any nonprivileged matter that is relevant to her claim or defense. Fed. R. Civ. P. 26(b)(1). "Relevance 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Zissa v. Cnty. of Los Angeles*, No. 18-cv-10174-CJC (JDEx), 2019 WL 13074698, at *1 (C.D. Cal. Nov. 7, 2019) (citations omitted). Moreover, courts in this district have recognized that "in cases '[w]here the jurisdictional facts are intertwined with the merits,' jurisdictional and merits discovery seek the same documents and may overlap." *Baker v. Wehinger*, No. 18-cv-05800-SJO (Ex), 2019 WL 6720990, at *8 (C.D. Cal. Mar. 20, 2019) (citing *Data Disc, Inc. v. Sys. Tech.*

*Assocs., Inc.*, 557 F.2d 1280, 1285, n.2 (9th Cir. 1977); *Holbrook v. Ownbrix International Corp.*, et al., No 2:19-cv-02879-JPM-cgc, 2021 WL 783550, at *1 (W.D. TN Mar. 1, 2021) ("Given the substantial overlap between the merits of Plaintiff's claims and the disputed issues of personal jurisdiction, information relevant to both must be produced). "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Polaris Innovations Limited v. Kingston Technology Company, Inc.*, No. 16-cv-00300 CJC (RAOx), 2017 WL 327615, at *2 (C.D. Cal. Feb. 14, 2017) (citing *DIRECTTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (additional citations omitted).

Defendants' primary challenge is that the Requests "go well beyond the scope of what is necessary to determine" jurisdiction. (Def. Opp. Br. 6.) However, as set forth in Plaintiff's opening brief, the Requests seek information concerning the amount and source of defendants' annual revenues, profits and losses, ownership structure, tax payments, the business purposes for the various MindGeek entities and related entities, and the relationships and flow of funds between those entities and the individuals operating them,[1] all of which this Court has held are directly relevant to the jurisdictional analysis. *See, e.g.* Dkt. 178-1, Proposed Letter Rogatory to Grant Thornton LLP. Moreover, the remainder of the Requests – including requests concerning the allegations in the Amended Complaint and Grant Thornton's decision to terminate its relationship with MindGeek because of MindGeek's participation in a sex trafficking venture – seek information concerning corporate control, knowledge of illegal content, jurisdictionally relevant travel and communications, and the disposition of the agreements concerning MindGeek's use

---

[1] Defendants argue that the definition of MindGeek Entities is vastly overbroad and encompasses expansive financial and organizational information that have nothing to do with any claim or defense in this action. As set forth herein, MindGeek intentionally created a series of shell and related entities that served as alter egos of each other. Information concerning the identity of those entities, their relationship to each other, their purpose, capitalization, and ownership structure are uniquely within defendants' possession and plainly relevant under the Court's July 29 Order.

of Grant Thornton's properties, just to name a few. This information is relevant to jurisdiction and Plaintiff's alter ego assertions and as such, discovery of the material should be permitted. *See Shoen*, 5 F.3d at 1292 ("[W]ide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth.")

Despite the nexus between the information sought in the Requests and the categories the Court identified as relevant to its jurisdictional analysis, defendants argue that the Requests for audit and tax documents are too "expansive" and seek "an x-ray view of every penny that has ever passed through the hands of" defendants and anyone with a connection to them. (Dkt. 192 at 10.) Defendants also challenge the Requests on the grounds that the information sought is cumulative of information requested from defendants, more easily obtained through party discovery, or too burdensome for a third party. Each of these arguments fail.

It is axiomatic that discovery is broad and third party discovery may encompass any information that is likely to lead to the discovery of other matter that could bear on the issue in this case. *See, e.g., Google Inc. v. Rockstar Consortium U.S. LP*, No. 13-cv-5933 CW, 2014 WL 9735114, at *2 (N.D. Cal. Oct. 3, 2014) (issuing letter rogatory to obtain evidence from Canada)); *see also Lovati v. Petroleos De Venezuela, S.A.*, No. 19-cv4799, 2022 WL 1416646, at *1 (S.D. NY May 5, 2022) (additional citation omitted) (granting motion to issue Letter of Request to Luxembourg); *see id.* ("Courts routinely issue such letters where the movant makes a reasonable showing that the evidence sought may be material or may lead to the discovery of material evidence.") (citing *Netherby Ltd. v. Jones Apparel Group, Inc.*, No. 04-cv-7028 (GEL), 2005 WL 1214345, at *1 (S.D.N.Y. May 18, 2005)). The burden is on the party opposing the issuance of letters rogatory to demonstrate good cause for why the discovery should not be allowed. *See Evanston Ins. Co. v. OEA, Inc.*, No. 02-cv-1505, 2006 WL 1652315, at *2 (E.D. Cal. June 13, 2006) ("Being aware of no Ninth Circuit precedent on the question,

1 | this court will apply the rule that letters of rogatory shall issue unless good cause is
2 | shown otherwise."). Though some courts have expressed a general "preference for
3 | parties to obtain discovery from one another before burdening non-parties with
4 | discovery requests," *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492,
5 | 505 (E.D. Cal. 2012), courts "weigh the burden to the subpoenaed party against the
6 | value of the information to the serving party." *Id.* at 504 (citing *Moon v. SCP Pool*
7 | *Corp.*, 232 F.R.D. 633, 637 C.D. Cal. 2005) (additional citations omitted)). Here,
8 | this analysis strongly weighs in favor of the issuance of Plaintiff's Request.

9 |  First, as set forth in the Amended Complaint, defendants have gone to great
10 | lengths to create an international, byzantine structure that conceals the information
11 | relevant to the Court's jurisdictional analysis and their discovery responses
12 | demonstrate their continued effort to frustrate Plaintiff's ability to obtain this plainly
13 | relevant evidence. (Dkt. 124-3, Amended Complaint, ¶¶ 78, 129, 358, 378, 456.)
14 | Thus, the only way to ensure that Plaintiff obtains complete and accurate
15 | information is through third party discovery. Indeed, while defendants seek to
16 | further delay the issuance of these letters under the guise that they have already, or
17 | will produce "substantial financial information" to answer the requests (Dkt. 192 at
18 | 15), the reality is that they have stonewalled Plaintiff's efforts to obtain this basic
19 | information through overbroad and improper objections which are irreconcilable
20 | with this Court's prior orders. By way of example, in response to Plaintiff's request
21 | to the MindGeek Entities to produce all "documents reflecting annual revenues,
22 | profits and losses, and expenses for each MindGeek Related Entity or Tubesite or
23 | the entity that owns or controls that platform or website" defendants objected to the
24 | request on the grounds that the request was not limited to entities who were "parties
25 | to this lawsuit" and limited their response to "documents from which information
26 | can be determined regarding the financial performance of Pornhub and MG
27 | Freesites Ltd and how MG Freesites Ltd's profits are distributed." (*See* Tabaksblat
28 | Decl. Exhibit 1, Defendants' Response to Request for Production No. 8.) The

MindGeek Entities' responses to Plaintiff's Request for Production No. 11 for financial ledgers, records reflecting capitalization, revenues, profits, tax payments, payroll, and expense records, as well as their responses to Plaintiff's Request for Production No. 12 for all quarterly and annual tax filings, audits, financials, and statutory reporting were also circumscribed to only specified entities. (*See* Tabaksblat Decl., Exhibit 1.) Likewise, in response to Plaintiff's interrogatory requesting the MindGeek Entity Defendants to "[d]escribe in detail the annual revenue and profits associated with each MindGeek Tubesite and individual or entity that directly or indirectly owned that website and how such revenue and profits were used, distributed, and taxed," defendants objected on the grounds that the interrogatory was "overly broad and unduly burdensome to the extent it is not limited to Pornhub" and further relayed that it would only "produce documents from which information regarding the financial performance of Pornhub and MG Freesites Ltd can be determined and how MG Freesites Ltd's profits are distributed." (*See* Tabaksblat Decl., Exhibit 2, Responses of MindGeek Entity Defendants to Plaintiff's First Set of Interrogatories.) The Court's July 29, 2022 Order did not limit the scope of jurisdictional discovery to certain defendants or entities, but rather directed Plaintiff to take discovery to ascertain the ownership, relationship, and control over the various entities in the MindGeek structure, the "flow of money" and which entities were capitalized in the event a judgment is entered. (Dkt. 167 at 6-7.) Defendants, likewise, refused to provide any information in response to Plaintiff's request for the MindGeek Entities' monthly, quarterly, and annual bank and investment statements, which would evidence intercompany transactions, transfers to the Individual Defendants or fraudulent transactions to "bleed" the company of revenue so as to avoid tax obligations -- all of which the July 29, 2022 order recognized are relevant to the jurisdiction and alter ego

analyses.[2] (Dkt. 167 at 4; *see also* Dkt. 178-1, Letter Rogatory, Schedule A, ¶ 8; Tabaksblat Decl., Exhibit 1, Def. Response to Plaintiff's Request for Production No. 13.)

Defendants' reliance on *Pesch v. Independent Brewers United Corporation*, No. 13-cv-05317 (DMR), 2014 WL 5106985 (N.D. Ca. Oct. 10, 2014), is misplaced. Unlike Plaintiff's requests to Grant Thornton for records pertaining to services provided to numerous MindGeek Entities, defendant in *Pesch* requested that the court issue a letter rogatory to obtain the deposition testimony of plaintiff's current, foreign employer, who had no relation to the claims at issue. *Id.* at *3. Not surprisingly, the court in *Pesch* denied the request. *Id.* Here, however, there is no question that Grant Thornton provided auditing services to MindGeek for a period of at least eight years[3] and those records are pertinent to the evaluation of jurisdiction under the factors outlined by this Court.

For these same reasons, this Court should not allow defendants to continue to "hide the ball" by cherry-picking the categories of information and entities from whom Plaintiff may obtain jurisdictional discovery to the exclusion of all other information. (Dkt. 192 at 9-11) (detailing the limited categories of discovery defendants claim are relevant to jurisdictional analysis) The Amended Complaint

---

[2] Defendants' refusals to provide the requested information belies defendants' reliance on *Soto* and *Genus Life Sciences Inc.* for the proposition that Plaintiff's should not burden a nonparty with information they can seek from defendants. *See* Def. Opp. Br. 6-7; *Soto*, 282 F.R.D. at 505 (failure to attempt to obtain documents from defendant before seeking them from non-party places an undue burden on a non-party); *Genus Lifesciences Inc. V. Lannett Co., Inc.*, 2019 WL 7313047, at *4 (N.D. Cal. Dec. 30, 2019) (citing *Soto*, 282 F.R.D. at 505.).

[3] *See, e.g.*, Gordon Deegan, *Grant Thornton has resigned as auditors to firms owned by operator of Pornhub*, THEJOURNAL.IE (Feb. 10, 2021), https://www.thejournal.ie/grant-thornton-pornhub-5350441-Feb2021/; and Adrienne Gonzalez, *Grant Thornton Cuts Ties With Pornhub After Everyone Realizes Pornhub is Full of Abuse and Illegal Porn*, GOINGCONCERN (Dec. 24, 2020), https://www.goingconcern.com/grant-thornton-fires-pornhub-as-audit-client/.

detailed defendants' creation and dissolution of sham entities, related company transactions, transfer of monies to executives, and other efforts to evade the tracing of money and liability for defendants' criminal activities.  The July 29, 2022 order properly held that defendants failed to meet their burden to rebut these allegations. (Dkt. 167 at 6.)  Accordingly, this Court should not now sanction defendants' efforts to continue to hide this information by accepting their argument that the limited categories of documents for the limited entities that they have selectively chosen is the universe of relevant information and anything else is vastly overbroad and burdensome.

       Perhaps the best evidence of defendants' efforts to avoid disclosure of the relationships between the various entities is their challenge to the issuance of the Requests to Grant Thornton Dublin on the putative basis that no defendant is based in Ireland.  However, as set forth in Plaintiff's opening brief and the Amended Complaint, prior to terminating their services, Grant Thornton Dublin, operated as the headquarters of Grant Thornton Ireland,[4] and provided auditing services to, at a minimum, MG Billing Ltd, a Dublin-based company that collects subscriptions from MindGeek premium users, and three other MindGeek companies.  In 2020, after public disclosure that certain MindGeek entities were monetizing child pornography and human trafficking, Grant Thornton Ireland purported to terminate its relationship with MindGeek.  Plaintiff has repeatedly alleged that her CSAM videos were uploaded not just to Pornhub, as defendants' refrain goes, but also to other tubesites by MindGeek, who then reviewed, accepted, optimized, categorized, tagged, and matched with advertising from which MindGeek earned revenues, all without her consent. (Dkt. 124-3, ¶¶ 262-264.)  Accordingly, Plaintiff's request for accounting records concerning the MindGeek entity responsible for collecting

---

[4] *See* GRANT THORNTON DUBLIN, https://www.grantthornton.ie/locations/dublin/ (last visited Oct. 24, 2022).

1  revenue from premium users who profited from Plaintiff's CSAM is particularly
2  relevant to Plaintiff's case, and, as it pertains to jurisdiction, will shed light on
3  "[w]here the money flows" and the "the [true] ownership of the porn sites that
4  generate[d]" revenue from Plaintiff's CSAM.  (Dkt. 167 n.2.)

5      Finally, contrary to MindGeek's claims, the probative value of discovery
6  from Grant Thornton is not outweighed by the burden of seeking discovery from a
7  third party.  This is particularly true here, where the various Grant Thornton entities
8  from whom Plaintiff seeks discovery likely maintain electronic and hard copy files
9  by client and can easily aggregate the information responsive to Plaintiff's request.
10 Moreover, international accounting firms, like Grant Thornton, are undoubtedly
11 represented by sophisticated counsel which are well versed on responding to
12 subpoenas for third party information as "such subpoenas are routine." *Trump v.*
13 *Vance*, 977 F.3d 198 (2nd Cir. 2020) (explaining that the fact that a subpoena was
14 issued to a third-party accounting custodian does not support a bad faith claim
15 because "[s]uch subpoenas are routine.").

## II.   INTERESTS OF JUDICIAL EFFICIENCY FAVOR ISSUING THE REQUESTS AT THIS JUNCTURE.

18    Defendants' challenges to the Requests as untimely under the Court's current
19 case management order are likewise without merit.  As set forth *supra*, the Requests
20 seek information relevant to the Court's jurisdiction and alter ego analyses.
21 However, even if certain Requests also seek discovery concerning the merits of
22 Plaintiff's claims, the Court should not bifurcate the Requests to Grant Thornton.

23      As an initial matter, although defendants submit that discovery in this case is
24 limited by the Court's initial jurisdictional discovery order (Dkt. 192 at 3-4), as set
25 forth in Plaintiff's Motion to Compel Defendant Visa, Inc.'s Response to Plaintiff's
26 First Request for Production of Documents, (Dkt. 180), Plaintiff submits that the
27 Court's subsequent August 11, 2022 order directed Plaintiff to complete all
28

1  discovery as to all parties by April 6, 2023 so that trial could proceed on August 15,
2  2023. (Dkt. 173; *see also* Dkt. 180.

3       More importantly, the interests of efficiency mitigate against bifurcating
4  discovery to third parties. Piecemeal discovery to Grant Thornton would result in a
5  waste of the parties' and the Court's time and resources, and would unnecessarily
6  delay and frustrate the discovery process. *See Shell Oil Co. v. Franco*, No. 03-cv-
7  8846-NM(PJWx), 2005 WL 6184247, at n.13 (C.D. Cal. Nov. 10, 2005) (explaining
8  that the letters rogatory process can take many months and attempting to do so
9  toward the end of discovery "would have been pointless"); *see also Nye v. Ingersoll-*
10 *Rand Co.*, No. 08-cv-3481-(DRD)(MAS), 2009 WL 10741606, at *5 (D. NJ Dec.
11 11, 2009) (granting an apex deposition and finding that it would be "inefficient,
12 costly and burdensome" to conduct "piecemeal-type depositions" personnel who
13 lack complete information when the same information can be obtained from one
14 individual). Delay or piecemeal discovery is especially unnecessary here, where the
15 Court's interests in protecting parties from potentially unnecessary discovery
16 because of a potential to be dismissed from the suit does not exist. As discussed in
17 its July 29, 2022, order Plaintiff "has stated a conspiracy claim against Visa
18 pursuant to section 1594(c) on a theory that Visa conspired with MindGeek to
19 violate section 1591(a)(2)" and she has "comfortably stated a claim under section
20 1591(a)(2) against MindGeek." (Dkt. 166 at 17-18.) Discovery concerning
21 MindGeek is inevitable. And to the extent the Court holds that certain entities or
22 individuals are not subject to the Court's jurisdiction, those parties would still be
23 subject to third party discovery. As such, this Court should not delay the production
24 of material that is "relevant to the subject matter involved in the pending action" and
25 is "reasonably calculated to lead to the discovery of admissible evidence." *Shoen*, 5
26 F.3d at 1292.

27                         **CONCLUSION**
28      The material Plaintiff seeks is directly relevant to the Court's jurisdictional

analysis of her claims against the MindGeek Entity and Individual Defendants. As an accounting and audit firm that indisputably was engaged in a business relationship with defendants, there is no doubt that the financial records in Grant Thornton's possession will shed light on the Court's questions as to who owns Pornhub and defendants' related tubesites, where their money flows, and the ability of the entities to pay potential judgments levied against them. Plaintiff's requests are narrowly tailored, contain particular details to enable a streamlined search for responsive material, and are proportional to the needs of this monumental case. Accordingly, for the foregoing reasons, and those set forth in Plaintiff's opening brief, Plaintiff respectfully requests that the court grant Plaintiff's motion and issue the letters of request in the annexed forms.

DATED: October 26, 2022

Respectfully submitted,

BROWN RUDNICK LLP

By:_____
MICHAEL J. BOWE (*pro hac vice*)
mbowe@brownrudnick.com
7 Times Square
New York, NY 10036
Phone: (212) 209-4800
Fax: (212) 209-4801

Attorneys for Plaintiffs