UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)


SERENA FLEITES, ET AL.,          ) CASE NO: 2:21-cv-04920-CJC-ADSx
                                 )
              Plaintiffs,        )          CIVIL
                                 )
     vs.                         )      Santa Ana, California
                                 )
MIND GEEK S.A.R.L., ET AL.,      )  Wednesday, November 16, 2022
                                 )
              Defendants.        )   (10:45 a.m. to 11:18 a.m.)


HEARING RE:

PLAINTIFFS' MOTION FOR ISSUANCE OF REQUESTS FOR INTERNATIONAL
JUDICIAL ASSISTANCE [DKT.NO.178]


BEFORE THE HONORABLE AUTUMN D. SPAETH,
UNITED STATES MAGISTRATE JUDGE


<u>APPEARANCES</u>:                 SEE PAGE 2


Court Reporter:              Recorded; CourtSmart


Courtroom Deputy:           Kristee Hopkins


Transcribed by:             Exceptional Reporting Services, Inc.
                            P.O. Box 8365
                            Corpus Christi, TX 78468
                            361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**APPEARANCES**:


For Plaintiffs:            JOHN G. DOYLE, ESQ.
                           Brown Rudnick
                           601 Thirteenth St. NW
                           Suite 600
                           Washington, DC 20005

                           MICHAEL J. BOWE, ESQ.
                           Brown Rudnick
                           7 Times Square
                           New York, NY 10036

                           DAVID M. STEIN, ESQ.
                           Brown Rudnick
                           2211 Michelson Drive
                           7th Floor
                           Irvine, CA 92612

For Defendants:            CHRISTOPHER R. BOISVERT, ESQ.
                           Dechert
                           Cira Centre
                           2929 Arch Street
                           Philadelphia, PA 19104

1        **Santa Ana, CA; Wednesday, November 16, 2022; 10:45 a.m.**

2                              --oOo--

3        **(In Progress)**

4            **THE COURT:**  State your appearances starting with

5    Plaintiff.

6            **MR. STEIN:**  Good morning, Your Honor, David Stein for

7    the Plaintiff.

8            **THE COURT:**  Good morning.

9            **MR. BOWE:**  Good morning, Your Honor, Michael Bowe for

10   the Plaintiff from Brown Rudnick.

11           **THE COURT:**  All right, good morning.

12           **MR. DOYLE:**  Good morning, Your Honor, John Doyle for

13   Plaintiff.

14           **THE COURT:**  Good morning.  One second, please.  All

15   right.

16           **MR. BOISVERT:**  Good morning, Your Honor, Christopher

17   Boisvert here on behalf of the MindGeek entity Defendants.

18           **THE COURT:**  All right, good morning.

19           **MR. BOISVERT:**  Would you like me to list those, Your

20   Honor?

21           **THE COURT:**  I don't need you to.

22           **MR. BOISVERT:**  Okay, thank you.

23           **THE COURT:**  Okay.  All right, moving party, it's your

24   floor.

25           **MR. DOYLE:**  Good morning, Your Honor.  Obviously,

4

1   we're here today to talk about the issuance of the Letters

2   Rogatory that Plaintiff requests to be issued to the four

3   international entities in this matter concerning Grant

4   Thornton, the agency that was responsible for auditing the

5   various MindGeek entities and their different financial

6   transactions throughout at least -- at the minimum over a

7   period of at least eight years.

8          One of the things I want to bring up first, Your

9   Honor, is that the jurisdictional discovery that's been ordered

10  in this particular case, it doesn't just concern the MindGeek

11  entities.  It also concerns the individual Defendants.  Now,

12  obviously some of the individual Defendants worked at various

13  times as part of those MindGeek entities but they are separate.

14         Much has been brought up in these particular filings

15  about just the MindGeek entities but it is very important to

16  realize that the information that we're requesting in these

17  Letters Rogatory is information not just about the MindGeek

18  entities but also about any representation, audits, financial-

19  type information concerning the individual Defendants.

20         And obviously Your Honor knows that part of the

21  challenge here with the jurisdictional discovery is, and as the

22  Court has ordered, where does the money flow, who controls

23  Pornhub and the various MindGeek websites where Ms. Fleites'

24  material may have been on, may have been sold on, where those

25  profits went to?

```
 1              And the only way for the Court and for Plaintiff to
 2   be able to establish that jurisdiction is to evaluate the
 3   contacts, the activities, the control of the various entities
 4   over those websites of the various individuals over the
 5   entities and any potential policies that were put into place
 6   concerning the handling of that material.
 7              Now, we've issued a number of production and
 8   interrogatory requests to the -- all of the MindGeek entities
 9   and to the individual Defendants.  As of today, we have no
10   productions or substantive responses that would be relevant
11   here from the individual Defendants and we have approximately
12   3,000 pages of documents from the MindGeek entities consisting
13   of about 293 actual documents.
14              But they don't consist of the material that we're
15   asking for, not all of it.
16              THE COURT:  Could you -- and maybe you're going to
17   but could you give me a -- sort of a brief status on that
18   discovery, when it was served, when responses were due, where
19   you are on any sort of meet-and-confers?
20              MR. DOYLE:  So, Your Honor, initially when we served
21   -- obviously, the Letters Rogatory was filed on October the
22   4th.  We filed initial discovery responses -- and I can take a
23   look here actually.  I believe in the September timeframe is
24   when we -- the responses were due from the MindGeek entities on
25   approximately September 22nd, I believe is when we -- and we
```

1    had -- the parties have been -- have worked together on that

2    for an extension.

3            They served initial responses to the production

4    requests on September the 22nd.  They served redacted responses

5    to the interrogatory requests because the protective order had

6    not been in place yet.  Once the protective order went into

7    place in, I think, October -- around October the 14th is when

8    we received -- we began to receive unredacted interrogatory

9    responses.

10           So the individual Defendants, their productions have

11   been due.  I'm certain Your Honor next is going to ask where

12   are the motions to compel and they are in progress.  One of the

13   things that we just recently learned and that we've been

14   discussing is one of the reasons that they're -- at least from

15   the MindGeek entities and I can't -- I won't speak for them,

16   obviously.

17           Their counsel will but there's some concern about the

18   productions violating international law or unable to produce

19   communications from individuals who work for the MindGeek

20   entities because it may be they're trying to work through the

21   international privacy laws and what not.

22           So that's been one of the issues that's come up in

23   trying to get the necessary information which is one of the

24   reasons why we are requesting that this Court issue the Letters

25   Rogatory and then it request for international judicial

1    assistance so we can get all of the material which should be in

2    one place which is with the Grant Thornton entities.

3            And there's no doubt that Grant Thornton did this

4    work.  Defendants will likely point out that they produced some

5    material from Grant Thornton to us which they have.  There's

6    approximately about -- I'd say about 30 -- 32 documents from

7    Grant Thornton but they're only specific entities and all they

8    are are the consolidated statements and audit report.

9            So we have some from MindGeek Freesites.  We have

10   some from MindGeek Premium Limited and we have some from

11   MindGeek S.A.R.L. and 9219 Quebec.  They are limited to the

12   timeframes from about 2014 to 2018 but that's it.

13           Of all the requests for productions and of all the

14   requests over to Defendants, we have no communications, zero.

15   So we can't -- we don't have anything to go on right now about,

16   well, how did they get to these numbers?  How did these things

17   come about?  How did they -- so we have none of that which is

18   why, again, we're requesting that Grant Thornton -- that these

19   letters issue so we can get the information from Grant Thornton

20   who may also have additional information.

21           So, again, it's important I bring up the

22   communications because we're not just asking for numbers.

23   Numbers will likely not mean a whole lot to this Court unless

24   we understand how the numbers came about, how the control went

25   back and forth.  MindGeek's not the only ones that are going to

8

1   have communications with Grant Thornton.  There's going to be

2   other entities.

3          And so that's why we need it.  It's not duplicative.

4   The argument that this is duplicative or unduly burdensome, it

5   just doesn't hold water, Your Honor.  It's not uncommon for us

6   to be able to issue -- for Courts to issue Letters Rogatory to

7   international accounting firms.  And if Your Honor wants, I

8   have additional cites but we have -- it's not uncommon and it

9   happens all the time.

10          And, Your Honor, I don't think that the Defendants

11   have been able to carry a burden to show that they shouldn't

12   issue at this particular point in time.  So unless Your Honor

13   has any specific questions regarding that, we respectfully

14   request that Your Honor issue those Letters Rogatory so the

15   Defendants can move on with the jurisdictional discovery that

16   this Court's ordered.

17          And I just want to bring up a final point on that if

18   Your Honor will entertain it which is we understand that

19   Defendants are going to have the ability to object to discovery

20   and have the ability to challenge things that they believe

21   might be unduly burdensome or beyond the scope.  We understand

22   that.

23          The timeline that's currently set up -- December

24   30th, if I'm not mistaken, is the close of jurisdictional

25   discovery.  We only have, as I said, 3,000 documents that

9

```
 1   consist of no communications, no substantive information from
 2   the individual Defendants.
 3           We're actively trying to work that and Your Honor is
 4   soon going to have a number of motions to compel before her but
 5   we may need another -- either another procedure or another way
 6   to be able to move through this discovery rapidly if we want to
 7   try and bring this to trial in an expedited manner.
 8           THE COURT:  All right.  Can you tell me -- walk me
 9   through and help me understand the relevance of the -- is it --
10   can we all agree -- is it Letters Rawgatory (pronounced
11   phonetically) or Letters Rowgatory (pronounced phonetically).
12   You're saying Rowgatory (pronounced phonetically) and, frankly,
13   I would love to have a courtroom full of lawyers tell me what
14   your answer is.  Rowgatory (pronounced phonetically)?
15   Rawgatory (pronounced phonetically)?
16           MR. DOYLE:  Letters Rowgatory (pronounced
17   phonetically), Your Honor.
18           THE COURT:  Rowgatory (pronounced phonetically)?  All
19   right.
20           So for the Ireland Grant Thornton entity?
21           MR. DOYLE:  Yes, ma'am.  So as --
22           MR. SPEAKER:  They don't say Rowgatory (pronounced
23   phonetically) there.
24           THE COURT:  You don't say Rowgatory (pronounced
25   phonetically)?
```

1          **MR. SPEAKER:**  No, Ireland.

2          **THE COURT:**  Oh, yeah.

3          **MR. DOYLE:**  So, Your Honor, obviously one of the

4    major issues in this particular case and as alleged in

5    Ms. Fleites' amended complaint is the international

6    organization that is MindGeek -- speaking in generalities,

7    taking it beyond the definitions put forth in all of the

8    different orders and everything, MindGeek is large.

9          And as we allege, it's set up that way on purpose for

10   a variety of different reasons.  Now, they'll say that it's for

11   legitimate corporate reasons and for tax purposes and because

12   the entities are in these foreign countries and everything

13   else.  But we think that there's another purpose, as we've

14   alleged.

15          And part of that purpose is to hide the people that

16   control the entities.  It's also to hide where that money goes

17   and how they operate.  As we allege, Ms. Fleites -- her

18   material was uploaded onto a number of websites, not just

19   Pornhub.

20          So that's one of the themes that you'll see is that

21   in all of the objections to the things, you'll see that

22   responses are limited to, well, it's only -- you're only saying

23   it's on Pornhub.  It's only on Pornhub and so because you

24   haven't shown us other material, we don't have to give you

25   discovery on Premium or we don't have to give you discovery

11

1   from RedTube (phonetic) or all the majority of other websites.

2       That's relevant to your question, Your Honor, because

3   what we allege is that they not only -- was Serena's videos

4   uploaded, re-uploaded, optimized and then sold but we also

5   allege that they used her videos to funnel traffic to the

6   various different entities, to their premium sites, their pay

7   sites.

8       Well, when Grant Thornton announces that it's

9   terminating its relationship with the MindGeek entities, we

10  learn of this billing company, MindGeek Billing, and by their

11  own words, that company collects money from pay sites.  And

12  this Court has said, where the money flows is relevant to its

13  jurisdictional analysis.  And it is.

14      And what the relationships between those individuals

15  and the entities with those billing and where that money goes

16  to, that's relevant to the Court's jurisdictional analysis of

17  their contacts and activities directed both at the United

18  States and the form.  And it's relevant to evaluating, in the

19  end, damages and how much money was generated because of that.

20      Now, I know that right now we're limited to

21  jurisdictional discovery, Your Honor, but as I'm sure Your

22  Honor knows, this process is lengthy.  And it wouldn't make any

23  sense when we talk unduly burdensome -- well, if we're issuing

24  multiple Letters Rogatory over to agencies, that is unduly

25  burdensome and there's -- we've seen cases out there where

1  Courts have denied requests to issue Letters Rogatory when it's

2  done at the last minute, when it's done the month out, when

3  it's done a few days out, even several months out.

4        We're not doing that.  It's all on the table.  We're

5  asking for the information from those various entities because

6  -- for a number of reasons.

7        **THE COURT:**  All right, thank you.

8        Now, help me understand the timeframe that they're

9  asking for, 2013 to the present, those nine years.  Explain to

10 me why that entire timeframe is relevant.

11       **MR. DOYLE:**  Yes, ma'am.  So Ms. Fleites' video, when

12 she -- when this video was created was around her seventh-grade

13 year into her eighth-grade year.  It is not entirely clear when

14 that video may have entered onto Pornhub and the MindGeek

15 websites.  We know that it was in the -- that she was -- became

16 aware of it in the 2014 timeframe.

17       **THE COURT:**  When was it -- what year is -- was her

18 seventh to eighth grade timeframe?

19       **MR. DOYLE:**  I want to say, Your Honor, that it was

20 the 2013 summer into 2014.

21       **THE COURT:**  Okay.

22       **MR. DOYLE:**  But I don't want to misspeak, Your Honor.

23 I can verify that for you, I think, pretty rapidly.

24       **THE COURT:**  Okay.  Why don't you do that when --

25 during his oral argument?

1          **MR. DOYLE:**  Yes, ma'am.

2          **THE COURT:**  If you have to correct it, let me know.

3          **MR. DOYLE:**  Yes.

4          **THE COURT:**  Okay.  All right.  I don't have any

5    further questions for you at this time.

6          **MR. DOYLE:**  Thank you, Your Honor.

7          **MR. BOISVERT:**  Good morning, Your Honor, Chris

8    Boisvert here on behalf of the MindGeek Defendants.

9          **THE COURT:**  Good morning.

10         **MR. BOISVERT:**  Good morning.  Your Honor, Plaintiff

11   through this motion is seeking the Court's permission to

12   initiate discovery disputes in four separate countries with

13   four separate entities who are, at best, tangentially related

14   to this case.

15         She's seeking nearly identical information from that

16   which she's seeking from my clients.  And in many instances,

17   she's already received the documents that she is seeking --

18   would be seeking through these Letters Rogatory.

19         Rather than resolving the areas of dispute between

20   the parties as to the proper contours of discovery at this

21   time, Plaintiff is trying to make an end-run around the

22   authority of this Court and the procedures that are in place

23   here and try to seek them through alternative means overseas

24   with entities that are not directly related to this case and do

25   not have an understanding of this case and possibly not even

14

1   U.S. law.

2          The primary reason that Plaintiff's motion should be

3   denied is because the Letters Rogatory are seeking information

4   that can be more easily obtained from parties in this case.

5   And, in fact, they have -- as Mr. Doyle said, they have sought

6   that information from us and we have produced quite a bit of it

7   at this point.

8          I don't agree with Mr. Doyle's characterization that

9   it's only been a handful of things.  I'm going to list off what

10  we have produced and I think you'll find that it's rather

11  extensive at this point.  We are in the process of continuing

12  to produce additional documents.

13         As set forth in in our briefing, Plaintiffs have an

14  obligation to seek information from a party before burdening

15  third parties.  That obligation is heightened when you're

16  talking about foreign parties that are overseas and who are

17  operating under a different body of law.

18         Even if the information being sought is relevant,

19  they should still seek the information from a party before

20  going and trying to burden a foreign party or even a third

21  party -- even a domestic third party.  I think that the *GS Life*

22  *Science* case is directly on point there, Your Honor.

23         Plaintiffs' assertion that they need to go seek these

24  documents overseas is unfounded.  The documents, by and large,

25  should be in the MindGeek entity's possession or they should be

15

1    able to obtain them and, in fact, they have -- they are seeking

2    them directly from them.

3           To date, MindGeek has made two substantive document

4    productions to Plaintiffs.  On October 21st, 2022, MindGeek

5    entities produced corporate organizational charts for the

6    entire MindGeek group dating back to 2014, audited financial

7    statements dating back to 2014 for all four of the foreign

8    Defendants in this case.  And those are the very same audited

9    financial statements that were put together by Grant Thornton.

10          In addition to that, we've provided group financial

11   reporting packages dating back to 2014.  That is not just

12   limited to the MindGeek entities who are Defendants in this

13   case but rather contains all of the companies within the

14   MindGeek group.

15          It includes balance sheets, monthly and annual

16   statements of earnings and losses, cash flow information and

17   other related financial data.  We've also produced intellectual

18   property agreements between the relevant entities showing how

19   certain pieces of intellectual property were licensed and the

20   cost therewith -- the cost of doing that.

21          And we've also produced the lease documents from

22   MindGeek USA's office space in California.  On November 10th,

23   which was after Plaintiffs -- admittedly after Plaintiffs filed

24   their reply on this motion, we produced board meeting minutes,

25   managers' meeting minutes, annual general meeting minutes,

1   board resolutions, ownership in stock-transfer documents and

2   shareholder agreements.

3        We are still in the process of compiling and

4   producing tax returns for each of the MindGeek entities or

5   their foreign equivalent.  And Plaintiffs have also noticed two

6   depositions in this case, a 30(b)(6) deposition on MindGeek's

7   corporate structure and related financial issues as well as a

8   deposition of Andreas Andreou who is Director of Corporate

9   Finance.

10       The MindGeek Defendants have not objected to those

11  depositions.  We, in fact, offered dates in October and we

12  agreed to produce Mr. Andreou who is a citizen of Cypress in

13  New York City for the convenience of the parties.  We offered

14  dates in October.  We have not heard back on that to date.

15       Despite these productions at this point in time,

16  Plaintiffs have not asked Defense counsel any questions about

17  the documents that have been produced to date.  There has not

18  been a substantive meet-and-confer on the specific document

19  requests or the interrogatories to discuss what might be

20  deficient, what they might need.

21       I understand Mr. Doyle today indicated that there may

22  be motions to compel coming but to date, the Rule 37-1

23  conference has not happened on any of those issues.  We have

24  not discussed them and to the extent that there are questions,

25  we are certainly, like, willing to answer them, meet, agree,

1    discuss and see if we can reach a resolution.

2            If we cannot do so, there's a process in place in

3    this court to adjudicate these issues and that is where they

4    should be litigated, not in Luxembourg, Cyprus, Ireland and

5    Canada.

6            So this Court absolutely has discretion to not

7    request for Letters Rogatory that are seeking information that

8    is either not relevant, not proportional to the needs of the

9    case and in this instance, limited to the needs of

10   jurisdictional discovery or that can be obtained through less

11   burdensome means.

12           Our brief cites a number of cases that hold that

13   standard, happy to discuss them if you want.  But the bottom

14   line here is that Plaintiffs are seeking time-consuming,

15   burdensome and expensive discovery of foreign entities that

16   would be much more efficient to adjudicate those same issues

17   before this Court.

18           As I think it's now been clarified -- I think it's

19   now been clarified, discovery here is limited specifically to

20   issues of personal jurisdiction and Judge Klein listed five

21   things specifically in his order on which discovery is

22   appropriate, whether MindGeek S.A.R.L. and MG Premium Limited

23   have sufficient relevant jurisdictional contacts to support

24   personal jurisdiction, whether the MindGeek entities are alter

25   egos of each other, whether the MindGeek entities are alter

1  egos of the individual Defendants, who owns and controls

2  Pornhub and where Pornhub's revenue flows to.  And that's it.

3          It's not an entitlement to seek out every last

4  financial document that one MindGeek entity may have in its --

5  any one MindGeek entity may have in its possession.  We need to

6  provide documents proportional to the needs of the case that

7  enable the Plaintiff to answer those questions.  We believe we

8  have largely done so and we are continuing to do so and once

9  our document productions are complete that that will be

10  satisfied.

11          And to the extent they are not, we should adjudicate

12  that issue in this court, not before any sort of foreign

13  tribunal.

14          THE COURT:  Counsel, can you answer for me -- is your

15  -- are you clients -- do they have possession, custody or

16  control over these Grant Thornton documents -- let's call them

17  documents for the sake of a better term -- that are sought in

18  the Letters Rogatory?

19          MR. BOISVERT:  Yes, I think we do, Your Honor.

20          THE COURT:  All of them?

21          MR. BOISVERT:  Almost all of them.  With respect to

22  -- there are 13 document requests in the Letters Rogatory.

23  Nine of them overlap almost entirely with requests that have

24  already been served on our clients.  We believe that we have

25  documents in our possession that are at least relevant and

1    proportional to the needs of the case to satisfy those

2    requests.

3              There are two additional requests that were made, I

4    believe, for contracts between Grant Thornton and MindGeek as

5    well as real estate information which Plaintiffs have simply

6    not requested from the MindGeek Defendants at this time.

7              The only unique documents that are being sought are

8    documentation related to Grant Thornton's --

9              **THE COURT:**  I guess, let me step you back.

10             **MR. BOISVERT:**  Sure.

11             **THE COURT:**  You said you think you have -- that your

12   clients have possession, custody and control over almost all of

13   the documents sought by these Letters Rogatory.  Can you

14   clarify for me specifically which categories or documents that

15   you believe your clients do not have possession, custody or

16   control over?

17             **MR. BOISVERT:**  That's exactly where I was headed,

18   Your Honor.  One of the Letters Rogatory requests is seeking

19   documents and information from Grant Thornton about their

20   decision to end their relationship with MindGeek.  It very well

21   may be that they have internal documents that our clients would

22   not have access to but I do not -- we do not believe that those

23   documents are relevant to any issue in this case, let alone to

24   questions of personal jurisdiction.

25             I believe they also have a request that seeks

1  information related to this case but axiomatically that

2  couldn't have any relevance to personal jurisdiction because

3  personal jurisdiction is defined at the time the case is filed.

4  So when you take those out, the remaining documents that are

5  being sought, to the extent that they exist, should be in

6  MindGeek's possession, custody and control.

7          **THE COURT:**  All right.  Okay, go ahead if you have

8  anything further.

9          **MR. BOISVERT:**  The only other thing I'll add, Your

10 Honor, is that the document requests that are being sought are

11 extraordinarily broad by their own terms.  MindGeek Defendants

12 or MindGeek entity is defined as any corporation, limited

13 partnership, limited liability company, partnership or other

14 legal entity in which MindGeek S.A.R.L. has any direct,

15 indirect or beneficial ownership interest or relationship

16 including all parents, subsidiaries and related entities.  That

17 includes each of those entities' current or former partners,

18 directors, shareholders, employees, employers, officers,

19 agents, principals, officials, representatives --

20          **THE COURT:**  Some lawyers drafted them.  Okay.

21          **MR. BOISVERT:**  -- associates, consultants, attorneys,

22 advisors, accountants, aliases and all persons and entities

23 acting or purporting to act on the entity's behalf.

24          That is extraordinarily broad and to try to satisfy

25 that would be almost impossible and is well beyond, like, the

21

1  needs of what we need to do here.  It is an example of

2  Plaintiffs seeking to make this case more complicated than it

3  needs to be, not focus on what we need to do and not focusing

4  on actually adjudicating the disputes between these parties in

5  this court as quickly as possible so that we can get this

6  resolved, get these jurisdictional issues resolved and move on

7  to motion practice on their amended complaint.

8         Unless Your Honor has any other questions --

9         **THE COURT:**  I don't have any further questions for

10  you.  Thank you.

11         **MR. BOISVERT:**  Thank you very much.

12         **THE COURT:**  Mr. Doyle.

13         **MR. DOYLE:**  Just briefly, Your Honor.  So, Your

14  Honor, I guess first and foremost, what I heard, aside from the

15  documents that they're not sure of what they don't have control

16  over, is that they have what we're asking for.  They have

17  communications.  They have materials.  They have a variety of

18  different documents pertaining to these requests.

19         So Plaintiffs' response to that is, please turn them

20  over.  That's what we're asking for.  If you have the documents

21  and you want to turn them over, this is alter ego discovery

22  amongst other jurisdictional discovery.  Alter ego discovery is

23  extraordinary and especially when we're considering an

24  international conglomeration of companies that, as we allege,

25  has operated this structure for this very reason, to circumvent

1    and to block and prevent.

2            Up to just a few years ago, they didn't even know who

3    Mr. Bernd Bergmair was.  No one did.  And that's -- there's a

4    reason for that and that's the way they're set up.  But now

5    it's coming to light and this Court has said that we may be

6    able to impute the jurisdictional contacts of the non-objecting

7    entities, not just to the MindGeek entities that are objecting,

8    S.A.R.L. and Premium, but to the individual Defendants.

9            And there's more.  Like, there are more companies,

10   obviously, that are involved in this and that is part of this

11   discovery, as we just talked about.  That's why we're asking

12   for.  We need to see the flow of where this money goes and

13   who's communicating with them.

14           Who is directing them and telling them, hey, here's

15   the reason we did this; hey, by the way, this is the money I

16   got from MindGeek Premium based on the sale of Plaintiff Serena

17   Fleites' videos or the money generated from the ads associated

18   with her videos which also, Your Honor -- again, just to point

19   out the length that this discovery is going to go down here is

20   that they've refused to produce any communications about Serena

21   Fleites.

22           Now, we're working with them on potentially how to

23   get around some of that and how to move that along but that's

24   just one of the examples of where we're going with the

25   discovery right now.  And, of course, they're entitled to

1    object.

2           But, Your Honor, it's also important, I think -- we

3    don't just have to take their word for what they have.  It's

4    not just that the MindGeek entities get to tell Plaintiff what

5    material is or is not relevant which is what just occurred here

6    again which is, well, we looked at this.  This is the request.

7    So we gave you 38 documents from Grant Thornton related only to

8    these four sets of entities and we provided some grand scheme

9    documents but we didn't provide you any communications because

10   we don't think that that's relevant or that you need that for

11   jurisdictional discovery.

12          There's recent cases, as recent as 2020, that talk

13   about that we're able to test.  We're allowed to look at

14   whether or not there's perfect replacements for -- it doesn't

15   have to be.  We can look at and test the evidence that's put

16   forth from the Defendants.

17          One of those particular cases, Your Honor, if I may,

18   is the *Fisher & Paykel Healthcare* case from August 2020 out of

19   the Central District of California, cites 2020 Westlaw 5900155.

20   The Court talks about the ability to be able to go and to test

21   the material.  We should be permitted to test the claims and to

22   look at whether or not somebody has sharper memories or clearer

23   information.

24          What other place is going to have all the

25   communications and all the information that is relevant to this

24

```
 1   Court's jurisdictional analysis other than the Grant Thornton

 2   entities that put all this information together allegedly in

 3   their audit reports?

 4            And, Your Honor, to further point out of the

 5   difficulty in this and that even in the limited productions

 6   that were put forth from Defendants.  And I'm -- I'll be

 7   cautious here because I know some of the information is part of

 8   a protective order designated as confidential.

 9            So I won't identify or what agency or what it was but

10   I can say the requirements -- this does not comply with the

11   requirements of a certain section of the law in disclosing the

12   name of the ultimate controlling party of the company.  That's

13   a line from one of the produced documents that we're still

14   going through.

15            This is extremely complicated and designed so.  And

16   this Court has ordered that they submit to discovery so that

17   that way, we can decipher this.  And that's why we're asking

18   for the issuance of the Letters Rogatory.  Thank you.

19            THE COURT:  All right, thank you.

20            MR. DOYLE:  May I briefly respond, Your Honor?

21            THE COURT:  Yes.

22            MR. DOYLE:  Your Honor, I don't agree with

23   Mr. Doyle's characterization of many things.  This won't be

24   surprising to you but I won't get into a back-and-forth on that

25   right now.  What I will add is that just because MindGeek has
```

1    something in its possession does not mean that it's relevant to

2    the case or the issue of jurisdictional discovery does not mean

3    that is proportional to the needs of making a determination as

4    to jurisdictional discovery.

5            And it doesn't mean that it's not otherwise not

6    discoverable for some other reason.  It could be privileged.

7    It could be subject to a work product doctrine.  It could be

8    subject to any other reason -- manner or reason why it's not

9    properly discoverable.

10           Our point is that to the extent that those issues

11   need to be contested, there's a process in place in this court

12   to do it and we should have those disputes between the parties

13   and not involve four separate foreign jurisdictions in that

14   dispute.

15           Plaintiffs can't create an issue and a need for

16   additional documents based upon speculation.  If there's

17   evidence and there's things pointing to why they need

18   additional documents, we should discuss them.  We can contest

19   them but they're not permitted to speculate.  Allowing

20   discovery based upon speculative fishing expeditions is the

21   very definition of unduly burdensome.  Thank you.

22           **THE COURT:**  Thank you.

23           All right.  I'll be taking the matter under

24   submission.

25       **(Loud noise is heard in courtroom)**

1          **THE COURT:**  We have a ghost who does this in my

2   courtroom.  We don't really know why.  So --

3          **MR. SPEAKER:**  We're staying too late, Judge.

4          **THE COURT:**  Yeah, right.  All right.  So I'll be

5   taking this matter under submission and issuing a written

6   decision as quickly as possible.  All right.  Thank you,

7   gentlemen.

8          **MR. DOYLE:**  Thank you, Your Honor.

9          **MR. BOISVERT:**  Thank you, Your Honor.

10          **MR. SPEAKER:**  Thank you, Judge.

11       **(This proceeding adjourned at 11:18 a.m.)**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    **November 25, 2022**

             Signed                                              Dated


_TONI HUDSON, TRANSCRIBER_