# EXHIBIT E

# Dechert
LLP

Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036-6797
+1 212 698 3500  Main
+1 212 698 3599  Fax
www.dechert.com

**KATHLEEN MASSEY**

Kathleen.Massey@dechert.com
+1 212 698 3686  Direct
+1 212 698 3599  Fax

November 1, 2022

**VIA EMAIL**

Michael J. Bowe, Esq.
Brown Rudnick LLP
7 Times Square
New York, NY 10036

Re:  *Fleites v. MindGeek S.a.r.l., et al.* – Plaintiff's Responses to MindGeek Entities' Requests for Production of Documents

Dear Michael:

I write regarding Plaintiff's Responses and Objections to Defendant MindGeek Entities' First Request for Production of Documents to Plaintiff Related to Personal Jurisdiction that were served on October 19, 2022. While Defendants MindGeek S.à.r.l., MG Freesites Ltd, MG Premium Ltd, MindGeek USA Inc., MG Global Entertainment Inc., and 9219-5618 Quebec Inc. (collectively the "MindGeek Entities") appreciate that Plaintiff plans to produce some documents responsive to the requests, Plaintiff's responses indicate that her production will be incomplete. Accordingly, the MindGeek Entities send this letter identifying the deficiencies in Plaintiff's Responses and request a meet and confer on these issues consistent with Local Rule 37-1 to attempt to resolve them.

A number of Plaintiff's general objections are baseless or otherwise improper. As an initial matter, Plaintiff's assertion that the term "MindGeek Entity" is vague and ambiguous or "not defined in the requests" is simply wrong. The introductory paragraph of Defendants' Requests defines the MindGeek Entities as "Defendants MindGeek S.à.r.l., MG Freesites Ltd, MG Premium Ltd, MindGeek USA Inc., MG Global Entertainment Inc., and 9219-5618 Quebec Inc.," the entities serving the requests.

To the extent Plaintiff is withholding documents subject to a purported "investigative and consulting expert privilege," such withholding is improper. Rule 26(b)(4)(D) by its terms applies only to "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D). It does not provide for any "investigative" privilege or extend to underlying documents relied on or ancillary to an expert's opinions. *See, e.g., General Elec. Co. v. Wilkins*, 2012 WL 3205430 *8 (E.D. Cal. Aug. 2, 2012). Accordingly, to the extent any responsive materials are being withheld pursuant to this privilege, the MindGeek



Entities request a privilege log detailing the nature of the documents and why they should not be produced.

It is unclear what Plaintiff is getting at in her objections to the requests "to the extent they seek documents and information … equally available to Defendants from sources other than Plaintiff." As discussed, to the extent the MindGeek Entities have certain material about Content allegedly uploaded to Pornhub depicting Plaintiff, they require additional information from Plaintiff to identify such material. Please explain what documents you believe are responsive but Plaintiff does not plan to produce on the basis of this objection.

Plaintiff's objections to the extent requests call for "disclosure of confidential, proprietary or private information," or would violate a "right to privacy" provide no basis to withhold discoverable information. The scope of discovery is information "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Spe v. Fitness Int'l*, 2020 WL 11884709, at \*1 (C.D. Cal. Dec. 16, 2020) (Spaeth, M.J.). Plaintiff has put a number of sensitive issues before the Court, including her mental health and reputation, and the MindGeek Entities have a right to fully explore those issues. *See, e.g., Garcia v. Capistrano Unified School Dist.*, 2019 WL 6332242, \*3 (C.D. Cal. June 18, 2019) (Spaeth, J.) (requiring production of medical records where Plaintiff's "mental and emotional health" were placed at issue); *Inland Empire Waterkeeper v. Columbia Steel, Inc.*, 2019 WL 6332242, \*3 (C.D. Cal. June 18, 2019) (Spaeth, J.) (requiring disclosure of financial information relevant to claim over Plaintiff's privacy objection); *Bechtold v. Billings Police Dept.*, 2010 WL 11534461 \*1 (D. Mont. Jan. 26, 2010) (requiring production of mental health records where plaintiff claimed mental and emotional harm). Similarly, if there is material that identifies Content depicting Plaintiff that she alleges was published on the internet, that material cannot be withheld on the bases of these objections. If there are responsive documents that are sensitive and properly confidential, the Parties' Stipulated Protective Order allows them to be marked confidential, but Plaintiff's claim to "privacy" does not provide a basis for her to withhold responsive documents.

Plaintiff's limitation of her production to "responsive, non-privileged documents … in Plaintiff's direct possession, custody or control" is improper. Rule 34(a) entitles a party to discovery of material in "the responding party's possession, custody, or control …," not just in her "direct" possession custody or control. If someone acting on Plaintiff's behalf has responsive documents, they need to be produced regardless of whether they are in Plaintiff's direct possession or in the possession of her agent. Please explain what documents you believe are responsive but Plaintiff does not plan to produce on the basis of this objection.

Plaintiff's objection to the MindGeek Entities' definition of "Content" as "ambiguous, overbroad, and unduly burdensome" and "calling for the production of information or material not relevant to any claim or defense" is similarly meritless. First, there is nothing ambiguous about the term which



is clearly defined as "any video … photograph, gif, or other image depicting Plaintiff in a sexually explicit manner…that was uploaded to any website or was/is otherwise available to the public." Plaintiff's Complaint describes two videos of her that were purportedly uploaded to Pornhub, but those videos do not appear to have been the only sexually explicit videos of Plaintiff that were uploaded to the internet by Plaintiff or a third party. Defendants are entitled to understand the full extent of Plaintiff's sexually explicit online activities as they are related to Plaintiff's assertions that Defendants harmed her in California and her allegations that she suffered damages based on Defendants' forum related conduct.

Similarly, there is nothing "ambiguous, overbroad, [or] unduly burdensome" about the MindGeek Entities' definition of "online handle." The term is defined straightforwardly as "any username, alias, moniker, or title used to designate or indicate Plaintiff's posts, comments, or other activities on any website or associated with an online account created or controlled by Plaintiff." If Plaintiff had any online accounts that, for example, she used to make posts online or upload videos or images, she would have had an "online handle" connected to the uploaded material. Since Plaintiff alleges material posted on sites independent of any MindGeek site was subsequently uploaded to Pornhub, information regarding such material is relevant and proportionate to purported contacts between the MindGeek Entity Defendants and Plaintiff.

Plaintiff's Responses also impermissibly narrow the term "trafficker." While the term includes the two men referenced in Paragraphs 258 and 267, it also would include those who assisted them in creating or uploading any Content. Plaintiff's First Amended Complaint asserts that anyone involved in the creation or upload of videos of Plaintiff is a "sex trafficker" under federal law. Accordingly, by Plaintiff's own definition, anyone associated with these activities is potentially a relevant witness. The circumstances under which the videos came to be created are essential facts that go to both personal jurisdiction and the merits of Plaintiff's claims.

In addition to the foregoing, Plaintiff has objected to nearly every request on the grounds that they are purportedly "overly broad, ambiguous, and unduly burdensome." Please explain why each request for which Plaintiff has made this objection is purportedly overbroad and unduly burdensome and what, if any, documents are being withheld on the basis of these objections.

With respect to Plaintiff's Objections to specific requests:

**Request No. 1 –** Request No. 1 seeks communications between Plaintiff and the MindGeek Entities that refer or relate to Content Plaintiff claims was posted to a website operated by a MindGeek Entity. Plaintiff's Response indicates that she will be producing documents but only those "concerning content posted on a MindGeek platform without Plaintiff's consent." This limitation is improper. To the extent Plaintiff has documents relating to communications with any MindGeek Entity related to Content posted with consent, those must be produced as well since they are



relevant to, among other things, the MindGeek Entities' purported jurisdictional contacts. Please also confirm that Plaintiff will be including communications between any MindGeek Entity and any third party who contacted a MindGeek Entity on Plaintiff's behalf.

**Request No. 2** – Request No. 2 asks for documents sufficient to identify any titles, tags, categories, flags and/or comments associated with the Content Plaintiff alleges was posted to a MindGeek website along with any URLs where Content could be accessed. Plaintiff objects to this request on the grounds that "it seeks production of documents and information in the possession of Defendants or third parties or equally accessible to Defendants." As the MindGeek Entities have previously conveyed, despite considerable effort they have not been able to locate all of the Content Plaintiff alleges was posted to websites operated by the MindGeek Entities, including the video referred to in paragraphs 258-263 of the Amended Complaint. To the extent Plaintiff has this information, it is important it be produced so the MindGeek Entities can identify the Content Plaintiff claims was uploaded. As discussed above, Plaintiff must also produce information regarding Content posted with her consent and cannot limit her production to Content posted without her consent.

**Request No. 3** – This request seeks documents that refer or relate to Plaintiff's or any other person's participation in the creation, sale, and/or uploading of Content. Plaintiff's Response indicates that she will be producing documents but only those "that concern non-consensual content and/or the non-consensual upload of content containing Plaintiff's images or likeness," and only those concerning "content [that] serves as a basis for any of Plaintiff's claims in this matter." As discussed above, limitation of production to documents concerning non-consensual content is improper. To the extent Plaintiff or a third-party has posted Content to MindGeek's websites with consent, those must be produced. So too must documents concerning Content that Plaintiff has chosen not to base her claims upon. These documents are relevant to, among other things, the MindGeek Entities' purported jurisdictional contacts and the harm Plaintiff claims she suffered as a result of Defendant's forum-related actions. Plaintiff further objects to this request to the extent "the information requested is in the possession of Defendants or equally accessible to Defendants." As the MindGeek Entities have previously conveyed, despite considerable effort they have not been able to locate all of the Content Plaintiff alleges was posted to websites operated by the MindGeek Entities, including the video referred to in paragraphs 258-263 of the Amended Complaint. To the extent Plaintiff has this information, it is important that it be produced so the MindGeek Entities can identify the Content Plaintiff claims was uploaded. As discussed above, Plaintiff must also produce information regarding Content posted with her consent and cannot limit her production to Content posted without her consent.

**Request No. 4** – Request No. 4 seeks documents concerning Plaintiff's discovery that Content had been uploaded to a website operated by a MindGeek Entity. Plaintiff has impermissibly narrowed her Response to this request to include only communications between Plaintiff and Defendants concerning Content posted to a MindGeek owned "tube site" without Plaintiff's consent, removal



requests, and reports made to law enforcement. This is insufficient. The MindGeek Entities are entitled to all information in Plaintiff's possession concerning how she discovered content depicting her that was uploaded to a website operated by MindGeek. That information is directly relevant to understanding how the Content was created which the MindGeek Entities need to know to determine, among other things, who Plaintiff is alleging that the MindGeek Entities were in a venture with for jurisdictional purposes. It is also unclear why Plaintiff is limiting this request only to Content posted to a "MindGeek owned tube site" as opposed to all MindGeek websites. Plaintiff is arguing elsewhere that Content depicting her was uploaded to paysites as well as tube sites other than Pornhub. If there was any Content uploaded to sites other than Pornhub, discovery as to that material is appropriate. Please explain the purpose of this distinction.

**Request No. 5** – This request seeks all communications between Plaintiff and those she claims are "Traffickers." Plaintiff has impermissibly narrowed her Response to this request to include only communications between Plaintiff and the "high school boyfriend" referred to in paragraph 258 and "the older male" referred to in paragraphs 267 and 269 of the First Amended Complaint as opposed to everyone she claims was a Trafficker. This is insufficient. The MindGeek Entities are entitled to all communications in Plaintiff's possession between her and anyone she alleges was involved in her trafficking. That information is directly relevant to understanding how the Content was created which the MindGeek Entities need to know to determine, among other things, who Plaintiff is alleging that the MindGeek Entities were in a venture with for jurisdictional purposes. Plaintiff's attempt to limit production to documents concerning non-consensual content that serves as the basis for her claims is also improper for the reasons discussed above.

**Request No. 6** – Request No. 6 asks for documents that relate to Plaintiff's content removal or cease and desist requests made to MindGeek Entities. Plaintiff has impermissibly narrowed her Response to this request to include only content removal requests, cease-and-desist requests, and any responses thereto made by Plaintiff. But to the extent Plaintiff has removal requests, cease-and-desist requests, and any responses thereto made or received by third-parties on her behalf, those communications must be produced as well.

**Request No. 7** – This request seeks documents that refer to, relate to, or constitute comments by Plaintiff on Content uploaded to any MindGeek website. Plaintiff's Response indicates that she will be producing documents but only those "concerning any non-consensual content containing Plaintiff's images or likeness." This limitation is improper and the response given is otherwise non-responsive to the request which seeks comments made by Plaintiff on Content uploaded to webpages operated by a MindGeek Entity. Any comments made by Plaintiff on Content are potentially relevant to demonstrate jurisdictional contacts as well as the MindGeek Entities' understanding of Plaintiff's age and consent. To the extent Plaintiff objects on the basis of a "right to privacy" that objection is improper not only for the reasons discussed above but for the additional reason that this request seeks comments that were made on a public website. Plaintiff further



November 1, 2022
Page 6

objects to this request to the extent "the information requested in the possession of Defendants or equally accessible to Defendants." As the MindGeek Entities have previously conveyed, despite considerable effort they have not been able to locate all of the Content Plaintiff alleges was posted to websites operated by the MindGeek Entities, including the video referred to in paragraphs 258-263 of the Amended Complaint. To the extent Plaintiff has this information, it is important it be produced so the MindGeek Entities can identify the Content Plaintiff claims was uploaded. As discussed above, Plaintiff must also produce information regarding Content posted with her consent and cannot limit her production to Content posted without her consent.

**Request No. 10 –** Plaintiff's Response objects "to the extent it seeks information protected by attorney-client privilege, work product doctrine, common interest privilege, and/or any other applicable privilege" but is unclear how any privilege could apply to documents responsive to this request. Documents or evidence showing that videos were reuploaded by a MindGeek Entity would not be subject to any applicable privilege. Please clarify this response and inform the MindGeek Entities whether any documents are being withheld due to any purported privilege. Plaintiff further objects to this request to the extent "the information requested is in the possession of Defendants or equally accessible to Defendants." As the MindGeek Entities have previously conveyed, despite considerable effort they have not been able to locate all of the Content Plaintiff alleges was posted to websites operated by the MindGeek Entities, including the video referred to in paragraphs 258-263 of the Amended Complaint. To the extent Plaintiff has this information, it is important it be produced so the MindGeek Entities can identify the Content Plaintiff claims was uploaded. As discussed above, Plaintiff must also produce information regarding Content posted with her consent and cannot limit her production to Content posted without her consent.

**Request No. 11 –** Plaintiff's Response objects "to the extent [the Request] seeks information protected by attorney-client privilege, work product doctrine, common interest privilege, and/or any other applicable privilege," but is unclear how any privilege could apply to documents responsive to this request. Documents or evidence showing that the MindGeek Entities' business operations are purportedly "a sham" would not be subject to any applicable privilege. Please clarify this response and inform the MindGeek Entities whether any documents are being withheld due to any purported privilege. Plaintiff also objects to this Request "to the extent the information requested is in the possession of Defendants or equally accessible to Defendants." Insofar as Plaintiff is withholding documents on this basis, the MindGeek Entities request that Plaintiff identify specifically what they are.

**Request No. 12 –** To the extent this request is unclear, Plaintiff should produce all documents that describe or provide support for Plaintiff's allegations in Paragraphs 26-28 and 31-32 of the First Amended Complaint that the MindGeek Entities operate as a singular business entity. To the extent Plaintiff objects to this Request as seeking "information protected by attorney-client privilege, work product doctrine, common interest privilege, and/or any other applicable privilege" it is unclear

Dechert
LLP

November 1, 2022
Page 7

how any privilege could apply. Documents or evidence showing that the MindGeek Entities operate as a single business entity would not be subject to any applicable privilege. Please clarify this response and inform the MindGeek Entities whether any documents are being withheld due to any purported privilege. Plaintiff also objects to this Request "to the extent it seeks documents and information in the possession of Defendants or equally accessible to Defendants." Insofar as Plaintiff is withholding material on this basis, the MindGeek Entities request that Plaintiff identify specifically what they are.

Please advise when you are available to meet and confer to discuss these outstanding issues with your Responses.

Sincerely,

*Kathleen N. Massey*

Kathleen N. Massey