Michael J. Bowe
(admitted pro hac vice)
mbowe@brownrudnick.com
Lauren Tabaksblat
(admitted pro hac vice)
ltabaksblat@brownrudnick.com
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
Telephone:   (212) 209-4800
Facsimile:   (212) 209-4801

*Attorneys for Plaintiff*

Kathleen N. Massey
(admitted pro hac vice)
Kathleen.Massey@dechert.com
Dechert LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3500
Fax: (212) 698-3599

*Attorney for Defendants MindGeek Entities*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| SERENA FLEITES,<br><br>Plaintiff,<br><br>v.<br><br>MINDGEEK S.A.R.L.; MG FREESITES, LTD; MINDGEEK USA INCORPORATED; MG PREMIUM LTD.; MG GLOBAL ENTERTAINMENT INC.; 9219-1568 QUEBEC, INC.; BERND BERGMAIR; FERAS ANTOON; DAVID TASSILLO; COREY URMAN; VISA INC.; COLBECK CAPITAL DOES 1-5; BERGMAIR DOES 1-5<br><br>Defendants. | CASE NO. 2:21-CV-04920-CJC-ADS<br><br>Judicial Officer:   Autumn Spaeth<br>Courtroom: 6B<br><br>**DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE AUTUMN D. SPAETH**<br><br>**NOTICE OF MOTION AND PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**<br><br>Date: December 21, 2022<br>Time:   10:00 a.m.<br>Courtroom:   6B<br><br>Jurisdictional Discovery Cutoff: December 30, 2022 |

NOTICE OF MOTION AND PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES

1

# **TABLE OF CONTENTS**

2

**Page**

3   JOINT STIPULATION ........................................................................... 3

4   I.   THE PARTIES' PRELIMINARY STATEMENTS ...................................... 3

5        A.   Plaintiff's Preliminary Statement ............................................ 3

6        B.   Defendant's Preliminary Statement ......................................... 6

7   II.  JOINT SPECIFICATION OF ISSUES IN DISPUTE ................................ 11

8        A.   Requests for Production in Dispute. ..................................... 11

9        B.   Interrogatories in Dispute ..................................................... 14

10  III. Plaintiff's Position ................................................................... 19

11       A.   Plaintiff's Motion To Compel ............................................. 19

12            1.   Communications Concerning Plaintiff. ..................... 22

13            2.   The Locations of Defendants' Servers. ..................... 24

14            3.   Communications Related To Key Alter Ego Factors ............... 25

15            4.   Limitation Of Discovery To The Objecting Defendants. .......... 27

16            5.   Discovery Concerning "Pervasive Control" ............................. 29

17            6.   Defendants have failed to produce documents they admit
                      are responsive and have committed to produce. ........................ 30

18

19       B.   Plaintiff is Entitled To Fees For This Motion. .................................. 31

     IV.  MindGeek Entity Defendants' Position ......................................... 31

20
         A.   Plaintiff's Motion to Compel Should Be Denied in Full .................... 31

21
              1.   Communications Concerning Plaintiff. ..................................... 32

22
              2.   The Location of Defendants' Servers ........................................ 33

23
              3.   Communications Related to Alter Ego ..................................... 34

24
              4.   Limitation of Discovery to the Objecting Defendants. ............. 35

25
              5.   Discovery Concerning "Pervasive Control" .............................. 37

26
              6.   Defendants' Document Production ........................................... 38

27
         B.   Plaintiff is Not Entitled to Fees ................................................. 38

28

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

V.    CONCLUSION ....................................................................................... 39

    A.    Plaintiff's Conclusion ............................................................. 39

    B.    Defendant's Conclusion ......................................................... 39

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 21, 2022, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Autumn D. Spaeth, located at the Ronald Reagan Federal Building and United States Courthouse, Courtroom 6B, 411 West Fourth Street, Santa Ana, CA 92701, Plaintiff Serena Fleites, by and through her counsel of record, will move the Court for an order compelling Defendants MindGeek S.A.R.L., MG Freesites LTD, MindGeek USA Inc., MG Global Entertainment Inc., MG Premium Ltd., and 9219-1568 Quebec, Inc. (hereinafter "MindGeek Entity Defendants" or "Defendants") to respond to discovery and produce documents pursuant to Rule 34 of the Federal Rules of Civil Procedure.

This motion is brought pursuant to Federal Rules of Civil Procedure 26, 34, and 37; U.S. District Court for the Central District of California Civil Local Rule 37-2, and United States Magistrate Judge Autumn D. Spaeth's July 2018 Standing Orders on Discovery Disputes.

In accordance with L.R. 7-3 and 37-1, counsel for Plaintiff and Defendants conferred telephonically on September 27, 2022 and October 31, 2022.

This motion is based upon this Notice, the Parties' Joint Stipulation regarding this discovery dispute, the pleadings and papers on file in this action, and on such other evidence as may be submitted to the Court. A proposed order accompanies this application.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1   DATED: November 30, 2022

2

3   BY: */s/ Lauren Tabaksblat*          BY:  */s/ Kathleen N. Massey*

4   MICHAEL J. BOWE (*pro hac vice*)      KATHLEEN N. MASSEY (*pro hac vice*)

5   mbowe@brownrudnick.com               Kathleen.Massey@dechert.com
    LAUREN TABAKSBLAT                    Dechert LLP
6   ltabaksblat@brownrudnick.com         Three Bryant Park

7   BROWN RUDNICK LLP                    1095 Avenue of the Americas
    7 Times Square                       New York, NY 10036
8   New York, NY 10036                   Tel: (212) 698-3500
    Phone: (212) 209-4800                Fax: (212) 698-3599
9   Fax: (212) 209-4801

10

11  David M. Stein (#198256)             *Attorney  for  Defendants  MindGeek
                                          Entities.*
12  dstein@brownrudnick.com

13  BROWN RUDNICK LLP

14  2211 Michelson Drive, 7th Floor
    Irvine, California  92612
15  Telephone:   (949) 752-7100
    Facsimile:   (949) 252-1514
16

17  *Attorneys for Plaintiff.*

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 21-CV-04920-CJC-ADS
**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1

## <u>JOINT STIPULATION</u>

2        Pursuant to Federal Rule of Civil Procedure ("Rule") 37, U.S. District Court

3   for the Central District of California Civil Local Rule ("L.R.") 37-2, and United

4   States Magistrate Judge Autumn D. Spaeth's July 2018 Standing Orders on

5   Discovery Disputes, Plaintiff and the MindGeek Entity Defendants respectfully

6   submit this Joint Stipulation regarding Plaintiff Serena Fleites' Motion to Compel

7   the MindGeek Entity Defendants' to respond to Plaintiff's First Set of Requests for

8   Production of Documents and First Set of Interrogatories.  In accordance with L.R.

9   7-3 and 37-1, counsel for Plaintiff and the MindGeek Entity Defendants conferred

10  telephonically on September 27, 2022 and October 31, 2022 prior to the filing of

11  this motion.

12  **I.    THE PARTIES' PRELIMINARY STATEMENTS**

13        **A.    <u>Plaintiff's Preliminary Statement</u>**

14        By order dated July 29, 2022, the Court directed the parties to take

15  jurisdictional discovery, including "where the money flows in the MindGeek web,"

16  which entities or individuals exercise operational control over the MindGeek entities

17  that monetized Plaintiffs' child sexual abuse material ("CSAM"), and whether these

18  individuals and entities are alter egos of each other.  Dkt. 167.  Consistent with the

19  July 29, 2022 order, Plaintiffs served discovery requests that tracked the precise

20  categories of information this Court held to be relevant to its jurisdictional analysis

21  on the MindGeek Entity Defendants, the individual defendants, and defendants'

22  auditors, third party-Grant Thornton.  By order dated November 17, 2022, this Court

23  affirmed the relevance of the categories of information Plaintiff seeks and issued

24  letters rogatory to various Grant Thornton entities seeking the precise categories of

25  information Plaintiff requested from the MindGeek Entities.  *See* Dkt. 211 at 5-6

26  ("The Court agrees with Plaintiff that the information is relevant to the Court's

27  jurisdictional analysis and ensures Plaintiff 'obtains complete and accurate

28  information.'").

3

Despite these two holdings, to date, Defendants have impeded Plaintiff's efforts to take basic jurisdictional discovery at every turn, refusing to produce relevant documents and material and delaying the production of those limited documents they did agree to produce.  Indeed, in response to Plaintiff's 48-document requests, Defendants have produced a mere 293 documents and have refused to respond to virtually every one of Plaintiff's interrogatories.

First, Defendants have refused to produce communications *concerning* Plaintiff, unilaterally limiting Plaintiff's request to communications *with* Plaintiff. Of course, documents and communications concerning Plaintiff will reveal which entities and individuals were communicating about Plaintiff, which entities were directing actions to be taken with respect to Plaintiff's videos, and which entities had roles in optimizing and monetizing Plaintiff's CSAM.  Nothing could be more relevant to the Court's jurisdictional analysis than materials evidencing the roles that the various MindGeek Entities and their officers, directors, and employees played in the solicitation, optimization, dissemination, and capitalization of Plaintiff's CSAM.

Second, Defendants contend that jurisdictional discovery should be restricted to the two MindGeek entity defendants that contest jurisdiction, MindGeek S.a.r.l. and MindGeek Premium Ltd.  But this Court held that the Amended Complaint plead sufficient alter ego allegations and directed the parties to take discovery concerning the relationships among the hundreds of MindGeek entities.  The Ninth Circuit and courts in this District have uniformly held that such alter ego discovery is broad and have rejected similar efforts by other defendants to limit that discovery to cherry-picked parties.

Third, Defendants argue that discovery concerning jurisdictional contacts should be limited to Pornhub because Plaintiff has not demonstrated that her CSAM was uploaded or monetized on any other tubesite.  This argument is likewise flawed. The July 29, 2022 order sustained Plaintiff's allegations that her CSAM was uploaded and monetized on other MindGeek tubesites and the Court directed

4

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

discovery concerning these entities' jurisdictional contacts and the contacts of the entities that exercise operational control over these tubesites, which the Court has properly recognized may be imputed for jurisdiction.

Finally, Defendants lodge a series of similarly improper objections to Plaintiff's requests for information concerning the transfer of assets or liabilities from or between MindGeek Entities, contracts and agreements for services, policies and procedures governing operations, and Defendants' travel and business-related activities.  Not only do these requests seek information squarely relevant to the Court's jurisdictional analysis, they track the precise categories of information the July 29, 2022 order directed the parties to explore during discovery and which this Court held to be relevant in the November 17, 2022 order.

Critically, in opposing Plaintiff's request for the issuance of letters rogatory to Grant Thornton, counsel for the MindGeek entities informed this Court that documents Plaintiff seeks is in their possession. Dkt. 211 at 4.  Defendants should not be permitted to ignore this Court's orders and delay a resolution on the merits of Plaintiffs' claims.[1]  Accordingly, for all these reasons, and those set forth below, Plaintiff moves to compel the MindGeek Entity Defendants to produce documents in response to Plaintiff's Request for Production Nos. 1, 6, 13, 26, and 27, and to supplement its responses to Plaintiff's Interrogatories Nos. 4, 9, 10, and 14.[2]

---

[1]    In response to Plaintiff's discovery requests, the individual defendants claim that the documents Plaintiffs requested are within the possession, custody, and control of the MindGeek entities. *See, e.g.*, Tabaksblat Decl., Exhibit 8, Defendant Bergmair's Objections and Responses to Plaintiff's First Request for Production of Documents (repeatedly declining to produce documents on the grounds that they can either be obtained from MindGeek or are "duplicative of information already sought by Plaintiff from MindGeek."). While Plaintiffs are entitled to take discovery from all relevant parties, at a minimum, the MindGeek entity defendants should be compelled to produce the documents they concede they have.

[2]    Plaintiff reserves her right to seek further relief concerning the remaining RFPs or ROGs which have not been fully responded to by Defendants.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

### B. <u>Defendant's Preliminary Statement</u>

The Court issued two Orders on July 29, 2022.  The first granted Plaintiff's request to conduct limited jurisdictional discovery.  *Fleites v. MindGeek S.A.R.L.*, 2022 WL 4455558 (C.D. Cal. Jul. 29, 2022).  The second Order denied Plaintiff's request to open full discovery because "the scope of this case—both in terms of parties and claims—has yet to be determined."  (Dkt. #168, at 1).  The Court was clear that "[j]urisdictional discovery is meant to provide Plaintiff the information she needs to make a clear statement regarding the role and conduct of each MindGeek Defendant *separately*."  *Id.* at 2.  The Court further "urged" Plaintiff not to use jurisdictional discovery "to further complicate this case."  *Id.*  But that is what Plaintiff has done by propounding discovery that goes well beyond the issues identified by the Court as pertinent to jurisdiction.  Those issues are: (1) whether MindGeek S.a.r.l. and MG Premium Ltd have sufficient relevant jurisdictional contacts to support personal jurisdiction, *Fleites*, 2022 WL 4455558, at *1-2; (2) whether the MindGeek Entity Defendants are alter-egos of each other, *id.* at *2–3; (3) whether the MindGeek Entity Defendants are alter-egos of the Individual Defendants, *id.* at *3; (4) who owns or controls Pornhub, *id.* at *2; and (5) where Pornhub's revenue flows. *Id.* at *2 n.2. These are issues on which the MindGeek Entity Defendants have provided or are in the process of providing discovery.

Despite Plaintiff's unfounded protests, the MindGeek Entity Defendants have been actively engaging in jurisdictional discovery.  While Plaintiff argues that the number of documents produced by the MindGeek Entity Defendants indicates that their productions are somehow deficient, her argument fails to take into account the substantial amount of responsive and relevant information contained in those documents and in the MindGeek Entity Defendants' interrogatory responses.  These Defendants have produced for the time period of June 2014 to June 2021 (i) corporate organizational charts showing the corporate relationships between and among not only the MindGeek Entity Defendants but also all of the other MindGeek

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1   entities; (ii) audited financial statements for MindGeek S.a.r.l., MG Premium Ltd,
2   MG Freesites Ltd, MG CY Holdings Ltd, and 9219-1568 Quebec Inc. (the only
3   entities in the relevant corporate chains who have audited financials); (iii) complete
4   financial reporting packages for *all* MindGeek entities and business units; (iv) the
5   licensing agreements that show who owns and profits from the intellectual property
6   associated with Pornhub; (v) the MindGeek shareholder agreements; (vi) documents
7   identifying the ownership and transfer of MindGeek entity shares for the MindGeek
8   Entity Defendants as well as other MindGeek entities above those Defendants in the
9   corporate chain; (vii) board minutes and resolutions (or their foreign equivalents),
10  including those showing distributions between and among the entities, for
11  MindGeek S.a.r.l, MG Premium Ltd, MG Freesites Ltd, 9219-1568 Quebec Inc.,
12  MG Global Entertainment Inc.; and MindGeek USA Incorporated; (viii) documents
13  related to office space in the United States leased by MG Global Entertainment Inc.;
14  (ix) documents of incorporation or association, including articles of
15  incorporation/association, by-laws, and corporate registration documents for MG
16  Premium Ltd, MG Freesites Ltd, MindGeek S.a.r.l., 9219-1568 Quebec Inc., MG
17  Global Entertainment Inc., and MindGeek USA Incorporated; (x) service
18  agreements between 9219-1568 Quebec Inc., on the one hand, and MG Premium
19  Ltd, MG Freesites Ltd, and MG Cyprus Ltd; (xi) employment agreements and
20  dividend and compensation information for the relevant Individual Defendants; (xii)
21  communications that relate to content depicting Plaintiff; and (xiii) any information
22  the MindGeek Entity Defendants have been able to locate regarding content
23  depicting Plaintiff based on the limited information Plaintiff has provided in her
24  First Amended Complaint ("FAC") or that is otherwise publicly available.  *See*
25  Yeary Decl. at ¶¶ 8, 10, 13.  In addition, the MindGeek Entity Defendants are in the
26  process of producing tax returns for 9219-1568 Quebec Inc,  9279-2738 Quebec Inc,
27  MG Freesites Ltd, MG Premium Ltd,  MG CY Holdings Ltd, MG Technologies Ltd,
28  / / /

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

MG Freesites S.a.r.l., MG Premium S.a.r.l., MindGeek S.a.r.l., Licensing IP International S.à.r.l., MindGeek RK S.a.r.l.

Moreover, the MindGeek Entity Defendants provided substantive and detailed responses to Interrogatory Nos. 1, 4, 5, 8, 10, 13, and 17. These responses included (i) a detailed description of the corporate ownership structure between and among MindGeek S.a.r.l. and MG Premium Ltd, and the other MindGeek Entity Defendants, as well as the non-defendant entities above those Defendants in the corporate ownership chains; (ii) US lease agreements; (iii) details regarding the employment of any individuals in the United States; (iv) US business travel by MG Premium and MindGeek S.a.r.l. officers and directors; (v) the officers and directors/managers of all of the MindGeek entities identified as being in the relevant corporate ownership chains; (vi) the names of the MindGeek entities that employed individuals responsible for moderating, monitoring, review, and formatting of content both currently and at the time Plaintiff alleges content depicting her when she was underaged was on a MindGeek website; (vii) the location of servers that host content for Pornhub and other "tubesites;" and (viii) the entities that own and license Pornhub's intellectual property. Further, in response to Interrogatory Nos. 1, 2, 3, 4, 6, 7, 8, and 11, these Defendants agreed to produce and either have produced or are in the process of producing documents that will provide additional responsive information. In fact, the MindGeek Entity Defendants only fully objected to five interrogatories on the grounds that they are beyond the scope of the jurisdictional discovery authorized by the Court. In contrast, Plaintiff responded to only one interrogatory.

Plaintiff's motion should accordingly be denied for a number of reasons. First, the MindGeek Entity Defendants have not refused to produce communications concerning Plaintiff. Even though such communications do not necessarily fall within the scope of jurisdictional discovery, these Defendants are willing to produce material concerning the alleged content at issue if Plaintiff would cooperate in the

discovery process.  As the MindGeek Entity Defendants have explained repeatedly to Plaintiff, using the information she provided in the FAC and other publicly available information, they have searched for any information regarding the videos Plaintiff alleges were uploaded depicting her when she was underage and have been unable to find anything—including any evidence of the video itself. *See* Yeary Decl. at ¶ 11.  Thus, the primary focus of the MindGeek Entity Defendants' discovery requests to Plaintiff, which she has refused to answer, is to obtain additional information regarding the content at issue to help these Defendants identify both the content and any documents related to that content.   The MindGeek Entity Defendants' search did find some documents and information concerning content uploaded to Pornhub after Plaintiff was an adult and communications regarding the attempts to locate the content at issue in this litigation.  And the MindGeek Entity Defendants have produced those materials. *See* Yeary Decl. at ¶ 13.

Second, even a cursory review of the MindGeek Entity Defendants' discovery responses shows that they have not limited their responses or their productions to MindGeek S.a.r.l and MG Premium Ltd.  The MindGeek Entity Defendants lodged an objection to the scope of Plaintiff's requests on the grounds that they were not appropriately tailored to addressing the Court's exercise of personal jurisdiction over MG Premium Ltd and MindGeek S.a.r.l or the viability of Plaintiff's alter ego argument, in part because almost every request sought information or documents related to *every* MindGeek entity.  But not *every* MindGeek entity is a Defendant in this case; in the ownership chain above any MindGeek Entity Defendant; or even involved in MindGeek's adult website business.  The MindGeek Entity Defendants provided a fulsome response to Interrogatory Number 1 identifying all the entities potentially relevant to Plaintiff's alter ego argument and have agreed to produce many categories of documents related to those entities, going beyond the two named MindGeek Entity Defendants challenging personal jurisdiction. *See* Yeary Decl. at ¶ 8, 10, & 13.  Contrary to Plaintiff's argument, the Court did not "direct[] the

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

parties to take discovery concerning the relationships among the hundreds of MindGeek entities."

Third, Plaintiff mischaracterizes the Court's ruling about the scope of what is permitted here as jurisdictional discovery. Nowhere does the Court's July 29, 2022 Order "sustain" Plaintiff's allegations regarding where her content appeared. In fact, the Order says Plaintiff's allegations are "not clear" as to whether content depicting Plaintiff appeared on any premium site operated by MG Premium Ltd.[3] As noted above, the MindGeek Entity Defendants have not been able to identify any underage content depicting Plaintiff on any of the MindGeek websites, let alone Pornhub. If Plaintiff would cooperate with the discovery process, the MindGeek Entity Defendants would be more than willing to try to identify *any* website on which the alleged underage content appeared and engage in discovery about that website accordingly. More important, MindGeek's tubesites are operated by MG Freesites Ltd—therefore, by providing information related to MG Freesites Ltd, as the MindGeek Entity Defendants have, they are providing discovery as to tubesites generally not just Pornhub.

Finally, while the MindGeek Entity Defendants asserted appropriate objections to the breadth and scope of Plaintiff's requests, over those objections they have produced numerous documents and detailed responses to Plaintiff's interrogatories relevant to the Court's jurisdictional analysis. On the specific issues as to which Plaintiff claims the MindGeek Entity Defendants have objected improperly, they have actually produced numerous documents, including documents

---

[3] MindGeek S.à.r.l. is a holding company, without any employees or operations of its own. *See* Decl. of Andreas Alkiviades Andreou in Sup. of the MindGeek Def's.' Mot. to Dismiss at ¶ 14 [Dkt. 139-3]. MG Premium Ltd is responsible for operating websites referred to as "paysites," which offer certain subscription-based content, as opposed to "tubesites" that hosted user generated content. *Id.* at ¶ 24. In addition to the tubesite Pornhub.com, MindGeek also owns and operates Tube8.com, Redtube.com, and YouPorn.com (collectively referred to herein as "tubesites").

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

demonstrating the transfer of ownership and shares, board minutes and resolutions, audited financial statements, and complete financial reporting packages all of which go to MindGeek's assets and liabilities. *See* Yeary Decl. at ¶¶ 8, 10, & 13. They also have produced service agreements and responded to Plaintiff's request to identify business travel, which is only relevant as to the entities challenging jurisdiction. *See* Yeary Decl. at ¶ 13 and MindGeek Entity Defendants' Response to Interrogatory No. 4. Plaintiff's contention that these Defendants have refused to provide this information is unfounded.

Therefore, as explained in further detail below, Plaintiff's motion to compel further responses to Request for Production Nos. 1, 6, 13, 26, and 27, and to Interrogatory Nos. 4, 9, 10, and 14 should be denied.

## II.    JOINT SPECIFICATION OF ISSUES IN DISPUTE

### A.    Requests for Production in Dispute.

Request for Production No. 1: "All documents and communications concerning Serena Fleites."

Response to Request for production No. 1: "Defendants object to this Request on the grounds it is not proportional to the needs of addressing the Court's exercise of personal jurisdiction over MG Premium Ltd and MindGeek S.à.r.l. and the viability of Plaintiff's alter ego arguments. Defendants object to this Request to the extent it assumes that "communications" are "jurisdictional contacts" or are relevant to the question of whether the Court has personal jurisdiction over MG Premium Ltd and MindGeek S.à.r.l. Subject to and without waiving any and all objections, neither MG Premium Ltd or MindGeek S.à.r.l. have any documents constituting communications with Plaintiff Serena Fleites."

Request for Production No. 6: "All documents identifying all MindGeek or outside person or vendors with any current or past responsibility for

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

moderating, monitoring, formatting, optimizing, filtering, reviewing, screening, or removing content on any MindGeek platform or website, the entities they were retained and employed by, and the entities that they were compensated by, whether salary, bonus or otherwise."

Response to Request for Production No. 6: "Defendants object to this Request on the grounds it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over MG Premium Ltd and MindGeek S.à.r.l. or the Court's assessment of the viability of Plaintiff's alter ego arguments. Nor is it limited to the entities who are parties to this lawsuit. The names of the individual employees who performed the functions and the vendors retained to support the functions described in this Request are unrelated to the issue of personal jurisdiction. Defendants also object on the grounds that term "outside personnel" is vague and ambiguous. Defendants further object to the extent this Request is not limited to Pornhub, the only tubesite on which Plaintiff alleges content depicting her was uploaded. Nor is it appropriately limited to functions at issue in this litigation. Defendants further object to this Request as overly broad and unduly burdensome to the extent it asks Defendants to produce documents identifying the employees of all MindGeek entities for a seven-year period."

Request for Production No. 13: "For each MindGeek Entity, affiliate, subsidiary, or Related Entity, all monthly, quarterly, and annual bank and investment statements."

Response to Request for Production No. 13: "Defendants object to this Request on the grounds it is overly broad, unduly burdensome, not reasonably

CASE NO. 21-CV-04920-CJC-ADS
**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over MG Premium Ltd and MindGeek S.à.r.l. or to the Court's assessment of the viability of Plaintiff's alter ego arguments. Nor is it limited to the entities who are parties to this lawsuit."

Request for Production No. 26: "All documents depicting, describing, or explaining MindGeek's IT infrastructure and networks, data storage, server and data centers and providers of the same, internal and external communications systems including ICQ, and ISP and Cloud storage services and providers, including the locations and identities of any outside vendors associated with the same."

Response to Request for Production No. 26: "Defendants object to this Request on the grounds it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over MG Premium Ltd and MindGeek S.à.r.l. or to the Court's assessment of the viability of Plaintiff's alter ego arguments. Nor is it limited to the entities who are parties to this lawsuit. Defendants object to the request for documents describing every aspect of Defendants information technology systems as overly broad and unduly burdensome because Defendants' "IT infrastructure" is either not related to Plaintiff's claims or so attenuated from Plaintiff's claims as to render discovery about them disproportionate to the needs of the case."

Request for Production No. 27: "All contact lists maintained by Feras Antoon, David Tassillo, Corey Urman, and Bernd Bergmair as well as documents

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

sufficient to show all cell and other phone numbers and messaging services used by each individual."

Response to Request for Production No. 27: "Defendants object to this Request on the grounds it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over MG Premium Ltd and MindGeek S.à.r.l. or to the Court's assessment of the viability of Plaintiff's alter ego arguments. Defendants further object that this Request seeks information more appropriately sought from other parties."

**B.    Interrogatories in Dispute.**

Interrogatory No. 4:   "Describe in detail all direct or indirect jurisdictional contacts You or Your agents, or any of the MindGeek related entities and their owners, executives, and employees have or had during the Relevant Time Period including but not limited to, offices, residences, and real estate located in California or any jurisdiction in the United States; personnel or vendors employed, retained, or paid located in California or any jurisdiction in the United States; trips to California or any jurisdiction in the United States; revenues, profits, expenses, taxes earned or paid in or from California or any jurisdiction in the United States; and communications or business relationships with, to, or in California or any jurisdiction in the United States."

Response to Interrogatory No. 4: "Defendants object to this Interrogatory on the grounds it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise

of personal jurisdiction over MG Premium Ltd and MindGeek S.à.r.l. or to the Court's assessment of the viability of Plaintiff's alter ego arguments. Nor is it limited to the entities or individuals who are parties to this lawsuit. Defendants also object on the grounds that the phrase "direct or indirect jurisdictional contacts" is vague and ambiguous and calls for legal conclusions. The term "executives" and the phrase "communications or business relationships with, to, or in California or any jurisdiction in the United States" are also vague and ambiguous. Defendants object to this Interrogatory to the extent it assumes that any of the contacts identified in the Interrogatory are "jurisdictional contacts" or that all of the actions or "contacts" of any of MG Premium Ltd's owners, executives, or employees or MindGeek S.à.r.l.'s owners or executives are relevant to the question of whether the Court has personal jurisdiction over MG Premium Ltd and MindGeek S.à.r.l. Defendants specifically object to the request for information regarding undefined vendors, unspecified communications, and unspecified business relationships that have no connection to the allegations in this case. Defendants further object that "contacts" generally in or with the United States are not relevant to whether the Court has personal jurisdiction over Plaintiff's claims against MG Premium Ltd and MindGeek S.à.r.l. Subject to and without waiving any objections, Defendants MindGeek USA Incorporated and MG Global Entertainment Inc., f/k/a/ Playboy Plus Entertainment Inc. are organized under the laws of Delaware and have their principal executive offices at 21800 Oxnard Street, Suite 150, Woodland Hills, CA 91367. Defendant MG Global Entertainment Inc. has a lease agreement with Douglas Emmett 2000, LLC for that office space. No Defendant or other entity affiliated with MindGeek S.à.r.l. or MG Premium Ltd owns or leases any real estate in California or anywhere else in the United States. █████████



No officers or directors of MG Premium Ltd or MindGeek S.à.r.l. (they have no employees) have traveled to the United States, including California, for the purpose of conducting business related to the allegations made in this case.   After entry of an appropriate confidentiality order and ESI protocol, Defendants will produce the U.S. and California tax returns for those Defendants that were required to file them.

/ / /

Interrogatory No. 9: "Identify by name and address all entities or individuals paid or provided any consideration identified in response to Interrogatory 8."

Response to Interrogatory No. 9: "As this Interrogatory refers back to Interrogatory No. 8, Defendants incorporate herein by reference their objections to Interrogatory No. 8.  As interpreted by Defendants, however, Plaintiff is requesting Defendants identify virtually every individual who works for "MindGeek" in almost every facet of its businesses.  This request is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over MG Premium Ltd and MindGeek S.à.r.l. or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Nor is it limited to the entities or individuals who are parties to this lawsuit."

Interrogatory No. 10: "Identify the location of all MindGeek servers and technology centers used to store and transmit content or operate or support any MindGeek websites."

Response to Interrogatory No. 10: "Defendants object to this Interrogatory on the grounds it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over MG Premium Ltd and MindGeek S.à.r.l. or to the Court's assessment of the viability of Plaintiff's alter ego arguments. Nor is it limited to the entities or individuals who are parties to this lawsuit. Defendants object to the request for information regarding technology centers as being vague and ambiguous.  Defendants further object to the request for information regarding servers used to transmit content or operate or support

CASE NO. 21-CV-04920-CJC-ADS
**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

any MindGeek websites as overly broad because those servers are either not related to Plaintiff's claims or so attenuated from Plaintiff's claims as to render discovery about them disproportionate to the needs of the case. Further, Plaintiff has not defined "MindGeek" and therefore, Defendants limit their response to servers where content and related metadata for Pornhub are located. Subject to and without waiving any and all objections, no content that appears on any of the tubesites operated by Defendants is stored on any server located in California or anywhere in the United States. ████████

████████████████████████████████████████

████████

Interrogatory No. 14: "State whether child pornography and CSAM is currently on MindGeek's servers."

Response to Interrogatory No. 14: "Defendants object to this Interrogatory on the grounds it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over MG Premium Ltd and MindGeek S.à.r.l. or to the Court's assessment of the viability of Plaintiff's alter ego arguments. Nor is it limited to the entities or individuals who are parties to this lawsuit. Defendants further object that this Interrogatory is ambiguous to the extent Plaintiff has not defined "MindGeek."  Subject to and without waiving any and all objections, since no content that appears on Pornhub is stored anywhere in the United States, the current contents of those servers is unrelated to any question of whether personal jurisdiction over MG Premium Ltd and MindGeek S.à.r.l. for this case or to the viability of Plaintiff's alter ego arguments."

/ / /

III.   **PLAINTIFF'S POSITION**

    A.   **Plaintiff's Motion To Compel**

Pursuant to the Court's July 29, 2022 order, Plaintiff served the MindGeek Entity Defendants with her First Set of Interrogatories ("ROGs") on August 17, 2022 and her First Requests for Production of Documents ("RFPs") on August 23, 2022. *See* Tabaksblat Decl., Exhibit 1, Plaintiff's First Set of Interrogatories to MindGeek S.A.R.L.; Exhibit 2, Plaintiff's First Request for Production of Documents to MindGeek S.A.R.L. On September 22, 2022, Defendants served objections and responses to Plaintiff's RFPs and ROGs, *see* Tabaksblat Decl., Exhibit 3, Responses of MindGeek Entity Defendants to Plaintiff's First Set of Interrogatories; Exhibit 4, Responses of MindGeek Entity Defendants to Plaintiff's First Request for Production of Documents,[4] which largely failed to respond in any substantive manner to the vast majority of Plaintiff's requests.

Among other things, Defendants refused to respond to Plaintiff's requests for "documents and communications 'concerning' Plaintiff," limiting their response to whether "MG Premium Ltd and MindGeek S.a.r.l. have any documents constituting communications with Plaintiff," *see* Exhibit 4, pp.8-9 (Defendants' Response to RFP No. 1), even though certain MindGeek entities previously conceded jurisdiction as to a California-based plaintiff, *see* Dkt. 72-2, at 10-11, and thus MG Premium Ltd's and MindGeek S.A.R.L's communications about a California plaintiff, their monetization of her CSAM, and her efforts to have that content removed would be

---

[4]    Defendants' initial September 22, 2022, response to Plaintiff's first set of interrogatories was redacted because a protective order had not yet been entered in the case. *See* Exhibit 3. The MindGeek Entity Defendants provided an unredacted interrogatory response designated in its entirety as "Confidential-Subject to Protective Order" on October 17, 2022. Plaintiff has filed the relevant portions of Defendants' response in an unredacted form under seal, pursuant to the Stipulated Protective Order, Dkt. 187. Defendants' responses to Plaintiff's production requests contained no such designation and is filed in its original form.

    CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

relevant to the exercise of jurisdiction over those entities. The majority of Defendants' other responses are similarly improperly limited to the two MindGeek entities disputing jurisdiction even though the Court's July 29 order held that Plaintiff had alleged sufficient allegations that all the MindGeek entities are alter egos of each other and directed the parties to take discovery concerning those relationships. In other instances, Defendants limit their responses to Pornhub, including as to the jurisdictionally relevant question of where its servers are located, on the putative basis that Plaintiff has not established that her CSAM was monetized on other sites, even though the Court has likewise sustained Plaintiff's allegations that were images and videos were uploaded and commercialized on other sites, including by Defendants. The remainder of Defendants' objections likewise preclude Plaintiff from obtaining the categories of information the Court directed was relevant to its jurisdictional analysis. *See infra.*[5]

As detailed below, rather than conducting reasonable, good faith searches of their documents and communications, Defendants have shifted the burden to Plaintiff to identify specific, particularized information to facilitate responses to Plaintiff's requests. *See, e.g.,* Exhibit 6, at 2 ("in order to conduct an appropriate search, the MindGeek Entities require additional information from Plaintiff"). This is not how discovery works. *See In re Allergan, Inc. Sec. Litig.*, No. 14CV02004DOCKES, 2016 WL 5929250, at *2 (C.D. Cal. Oct. 5, 2016) ("the party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.") (internal citations omitted).

---

[5] On September 27, 2022, Plaintiff sent Defendants a detailed letter outlining her objections to Defendants' responses. *See* Tabaksblat Decl., Exhibit 5, Defendants responded by letter dated October 12, 2022, doubling down on their original objections. *See* Tabaksblat Decl. Exhibit 6. The parties met and conferred on October 31, 2022 but were unable to resolve these disputes without judicial intervention.

CASE NO. 21-CV-04920-CJC-ADS
**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    On October 4, 2022, Plaintiff filed a motion for issuance of letters rogatory
2    seeking precisely the same category of documents Plaintiff had requested from the
3    MindGeek Entity Defendants weeks earlier. Dkt. 178.  Defendants opposed, arguing
4    that the documents Plaintiff sought were either irrelevant or not proportional to the
5    needs of the case. Dkt. 192.  This court held oral argument on Plaintiff's motion on
6    November 16, 2022.  At that hearing Defendants argued that the court should deny
7    the letters rogatory because all of the documents Plaintiff sought were more easily
8    obtained from Defendants directly.  Nevertheless, Defendants argued the documents
9    Plaintiff sought were either irrelevant to Plaintiff's claims or overly burdensome.
10   The Court disagreed.   By order dated November 17, 2022, the Court granted
11   Plaintiff's request for letters rogatory and explicitly acknowledged the relevance of
12   the documents Plaintiff now seeks. Dkt. 211 at 4-6.  The Court also acknowledged
13   Plaintiff's right to obtain this discovery from both Defendants directly and any
14   relevant third parties. *Id.* at 4.

15   The Court directed Defendants to respond to jurisdictional discovery and
16   outlined the categories of relevant information.  Defendants' failure to do so is a
17   violation of the Court's July 29, 2022 and November 17, 2022 orders and this Court
18   should now compel them to timely respond in full.  *See Atayde v. Napa State Hosp.*,
19   No. 1:16-cv-00398-DAD-SAB, 2020 WL 2770061, at *1 (E.D. Cal. May 28, 2020)
20   (compelling Defendants to comply with discovery orders and produce documents
21   and granting attorneys' fees).  Their failure to comply with jurisdictional discovery
22   should be considered constructive waiver of their objection to personal jurisdiction.
23   *See e.g. Insurance Corp. of Ireland, Ltd., v. Compagnie des Buxites de Guinee*, 456
24   U.S. 694, 695 (1982); *Siano Mobile Silicon, Inc. v. Mavcom, Inc.*, No. C-10-04783
25   LHK PSG, 2011 WL 1483706, at *5 (N.D. Cal. Apr. 19, 2011) (granting motion to
26   compel Defendants responses to jurisdictional alter ego discovery by a certain date
27   or risk a finding that failure to comply with discovery orders related to attempts to
28   / / /

21

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1   establish the facts relevant to the exercise of personal jurisdiction risks the sanction

2   that certain facts will be established).

3                   **1.    Communications Concerning Plaintiff.**

4          Most egregious of the Defendants' objections is the limitation of Plaintiff's

5   RFP No.1 which requests "all documents and communications concerning Serena

6   Fleites" to only communications of MindGeek S.A.R.L. and MindGeek Premium

7   Ltd. *with* Serena Fleites.  Based on this limitation, Defendants represented no such

8   communications exist and produced nothing. Defendants' position is improper for a

9   multitude of reasons.

10         First, it ignores the plain language of the Plaintiff's RFP which calls for all

11  documents and communications *concerning* Plaintiff.  Indeed, certain defendants

12  conceded on the motions to dismiss that jurisdiction is properly exercised in

13  California as to a California-based plaintiff.  Dkt. 72-2, at 10-11.  Nevertheless,

14  MindGeek S.A.R.L. and MindGeek Premium challenged jurisdiction on the putative

15  basis that they had no role in moderating, editing, optimizing, reuploading,

16  advertising or otherwise monetizing Plaintiff's CSAM or stonewalling Plaintiff's

17  efforts to have it taken down.  Of course, if those entities had any such role,

18  jurisdiction would be undisputed as it was for Pornhub.  Thus, communications

19  concerning Plaintiff by MindGeek S.A.R.L, MG Premium Ltd. are plainly relevant

20  to the Court's jurisdictional analysis.

21         Second, Defendants' objections ignore the purpose of this discovery which is

22  to probe both the independent and imputed jurisdictional contacts of MindGeek

23  S.A.R.L and MindGeek Premium Ltd. by and through the non-objecting entities.

24  Therefore, not only are MindGeek S.A.R.L.'s and MG Premium's communications

25  concerning Plaintiff relevant, but the communications of any entity alleged to be an

26  alter ego of these entities are also plainly relevant and discoverable.

27         Third, in light of the MindGeek Entity Defendants' representations that

28  "MindGeek S.A.R.L has been and is nothing more than a holding company, without

                                         22

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

any employees or operations of its own[]" (Andreou Decl., Dkt. 139-3, at ¶¶ 14, 17), Defendants cannot credibly argue that Plaintiff's request is unduly burdensome or disproportionate to the information sought.  If these particular entities and their related directors and officers truly have no role in controlling, directing, or enabling the alleged trafficking venture and proliferation of CSAM, including that concerning Plaintiff on the various tubesites, as Defendants claim, the search for potentially responsive material concerning Plaintiff would not be burdensome, and rather than object to this Request and improperly limit it, Defendants should simply state no responsive documents exist.  Defendants cannot simply fall back on their previous, conclusory statements this Court rejected regarding MindGeek S.A.R.L and MindGeek Premium Ltd.'s operating structure to avoid the very discovery this Court ordered.  *See, e.g.*, Dkt. 167, at 6 (granting jurisdictional discovery after Plaintiff's allegations concerning pervasive control exercised over the MindGeek Entity Defendants "dr[ew] silence from the MindGeek Individual Defendants."); *see also id.* at n. 5 ("The Court is not convinced by the MindGeek Entity Defendants' conclusory, vague denial of ownership of any servers in the United States, as they fail to identify where the servers are otherwise located.").

Documents and communications concerning Plaintiff will reveal which entities and individuals were communicating about Plaintiff, which entities were directing actions to be taken with respect to Plaintiff's videos, and which entities had roles in optimizing and monetizing Plaintiff's CSAM.  Nothing could be more relevant to the present case and the determination of the Court's jurisdiction over the objecting entities than the materials, documents, and communications pertaining directly to Plaintiff and the roles that the various MindGeek Entities and their officers, directors, and employees may have played in the solicitation, optimization, dissemination, and capitalization of Plaintiff's CSAM.  Nevertheless, Defendants have not produced a single communication between Pornhub and Plaintiff, or between the MindGeek Entity Defendants and any other person or entity concerning

Plaintiff. Accordingly, Defendants should be ordered to search for and produce responsive material. *Zissa v. Cnty. of Los Angeles*, No. 18-cv-10174-CJC (JDEx), 2019 WL 13074698, at *1 (C.D. Cal. Nov 7, 2019) ("Relevance 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'").[6]

## 2.    The Locations of Defendants' Servers.

Defendants likewise refused to produce documents in response to RFP No. 26 which requests documents related to the MindGeek infrastructure, including the MindGeek's server and data centers, and refused to identify the location of any servers in response to ROG No. 10 other than those specific to Pornhub. Defendants' sole response was: "no content that appears on any of the tubesites operated by Defendants is stored on any sever located in California or anywhere in the United States."

As an initial matter, this Court previously rejected Defendants' previous "conclusory, vague denial of ownership of any servers in the United States," and directed the parties to take discovery concerning the location of Defendants' servers. *See* Dkt. 167, n. 5.

---

[6]    Defendants improperly conditioned their response upon Plaintiff providing the email addresses, aliases, or other usernames used by Plaintiff or anyone acting on her behalf to communicate with any of the MindGeek Entities before they would search for information responsive to the request. Although they claim an inability to search for responsive discovery without further information, Defendants fail to explain why they can't search plaintiff's name through their various databases. Moreover, Defendants' claimed helplessness is belied by the indisputable fact that, at a minimum, the officers, directors, agents, and employees of the various MindGeek Entities undoubtedly communicated concerning Plaintiff after she filed this suit and those non-privileged communications must be produced as they are relevant to understanding who controls the various MindGeek websites, where Plaintiff's CSAM material may have been stored, transmitted, optimized, and disseminated, those responsible for said storage, transmission, optimization, and dissemination, all of which is relevant to evaluating the MindGeek Entity and Individual's jurisdictional contacts and forum related activities.

1   Moreover, Defendants' repeated claim that information concerning servers
2   not related to Pornhub are "overly broad because those servers are either not related
3   to Plaintiff's claims or so attenuated from Plaintiff's claims as to render discovery
4   about them disproportionate to the needs of the case", Def. Resp. to ROG No. 10, is
5   disingenuous here, where they have not produced any communication between
6   themselves and Plaintiff, and claim that they "have been unable to find a video with
7   the alleged title . . . or any takedown requests for such a video." Exhibit 6, at 2-3.  If
8   Defendants are unable to determine where and when Plaintiff's videos were
9   disseminated, they are certainly not in a position to determine whether or not a
10  particular server or entity played a role in optimizing and distributing Plaintiff's
11  CSAM.  Moreover, Plaintiff has alleged that the MindGeek Entities and Individual
12  Defendants engaged in a joint venture wherein they used the MindGeek Corporate
13  Entities as a singular vehicle to execute their illegal schemes.   Though the
14  Defendants portray a façade of corporate separateness, the Court has sustained
15  Plaintiff's allegations that Defendants operated as one in an effort to prevent liability
16  and conceal their underlying behavior and directed the parties to take discovery
17  concerning the inner workings of and relationships between the MindGeek entities.
18  In so holding, this Court acknowledged that "Plaintiff may also be able to impute
19  the contacts of the non-objecting MindGeek Entity Defendants to MindGeek
20  S.A.R.L. and MG Premium through the alter ego doctrine." Dkt. 167 at 4.  As such,
21  Defendants' attempts to limit Plaintiff's inquiries to only Pornhub's contacts with
22  California and the United States is unwarranted and the requested information goes
23  to the heart of the MindGeek Entity and Individual Defendants forum related
24  activities and contacts.

25          **3.**    <u>**Communications Related To Key Alter Ego Factors**</u>

26          To probe her alter ego theory of imputed jurisdiction, Plaintiff is entitled to
27  discovery of all documents and communications that evidence a unity of interest and
28  ownership among the MindGeek entities, Dkt. 167, at 4, including whether any of

25                                    CASE NO. 21-CV-04920-CJC-ADS

those entities control the others "to such a degree as to render the latter a mere instrumentality of the former[,]" or maintains "pervasive control" such as by "dictat[ing] every facet of [the affiliate's] business – from broad policy decisions to routine matters of day-to day operation." *Chubchai v. AbbVie, Inc.*, No. 4:21-CV-4099-YGR, 2022 WL 1236877, at *4 (N.D. Cal. Apr. 21, 2022); *In re Boon Glob. Ltd.*, 923 F.3d 643, 653 (9th Cir. 2019).    Courts within this Circuit consider the following factors in finding a unity of interest or ownership for the purposes of alter ego liability: (1) the commingling of funds and other assets of the entities, (2) the holding out by one entity that it is liable for the debts of the other, (3) identical equitable ownership of the entities, (4) use of the same offices and employees, (5) use of one as a mere shell or conduit for the affairs of the other, (6) inadequate capitalization, (7) disregard of corporate formalities, (8) lack of segregation of corporate records, and (9) identical directors and officers. *See Chubchai*, 2022 WL 1236877, at *4.

Courts in this Circuit routinely hold that the categories of evidence Plaintiff seeks here are relevant to the alter ego analysis.  This includes, but is not limited to, evidence of any MindGeek Entity's contacts with the forum; any transfer of assets or liabilities from any MindGeek Entity to any other; any revenues or expenditures related to any contracts, agreements; or relationships which contact the forum for any MindGeek Entity; any services provided indirectly or directly to any MindGeek Entity in the forum; any books and records of any MindGeek Entity Defendant; any meeting minutes for any MindGeek Entity; any materials demonstrating that the MindGeek Entities were held out as being a part of each other or substantially the same as each other, any information identifying the locations of facilities necessary to conduct any MindGeek Entity business–such as servers, lists and information related to employees of each MindGeek Entity, and information sufficient to show capitalization of any MindGeek Entity. *See e.g. Siano Mobile Silicon, Inc. v. Mavcom, Inc.*, No. C-10-04783 LHK PSG, Dkt. 85-2, 85-3, 85-4, 85-5 (N.D. Cal.

1   Mar. 23, 2011); *Siano Mobile Silicon, Inc. v. Mavcom, Inc.*, No. C-10-04783 LHK

2   PSG, 2011 WL 1483706, at *1 (N.D. Cal. Apr. 19, 2011) (disregarding attempts to

3   limit requesting party's alter ego jurisdictional discovery requests by the responding

4   party and granting motions to compel emails, communications and business records

5   showing travel by executives to the United States; identities of executives and other

6   organizational information of non-defendants; and information pertaining to the

7   transfer of assets and liabilities); *Vizio, Inc. v. LeEco V. Ltd.*, No. 8:17-cv-01175-

8   DOC-JDE, Dkt. 115-2 at Exhibit A, B (C.D. Cal. Oct. 11, 2018); *Vizio, Inc. v.*

9   *LeEco V. Ltd.*, No. 8:17-cv-01175-DOC-JDE, 2018 WL 10742584, at *10 (C.D.

10  Cal. Nov. 2, 2018) (granting motions to compel alter ego production requests

11  concerning organization financial transactions and asset transfers, operating

12  agreements and bylaws; agendas, minutes, and resolutions for meetings of Boards of

13  Directors and Managers; operating agreements among shareholders; lists, policies

14  relating to, and accountings of company employees, managers, consultants, agents,

15  and contractors; and, amongst others, documents pertaining to money transfers

16  between corporate organizations).

17   ### 4.    <u>**Limitation Of Discovery To The Objecting Defendants.**</u>

18          For these same reasons, Defendants' objection to providing jurisdictional

19  discovery for entities other than the two Defendants that contest jurisdiction –

20  MindGeek S.A.R.L. and MG Premium -- is improper and in contravention of the

21  July 29, 2022 order.

22          As an initial matter, Defendants' position flouts the Court's order which made

23  clear that discovery into the contacts of all MindGeek Entity Defendants and

24  individual defendants is relevant to the alter ego theory of jurisdiction. Dkt. 167 at 4.

25  Moreover, this Court specifically authorized Plaintiff to take discovery concerning

26  the direct and indirect ownership interests of MindGeek S.A.R.L., the MindGeek

27  parent company, over those entities that have submitted to the jurisdiction of this

28  Court. Dkt. 167.    In so holding, the Court acknowledged the importance of

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO**
**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1   determining control over the various offending websites containing Plaintiff's
2   CSAM and those entities and individuals exercising control over the overall policies
3   governing those websites.  Dkt. 167 at 3.  The Court further held "where the money
4   flows in the MindGeek web, which may relate to ownership of the porn sites that
5   generate revenue, matters to the Court's jurisdictional analysis." *See* Dkt. 167 at n.2.
6   Yet, the Defendants have declined to produce documents responsive to almost any
7   RFP and ROG which seeks information concerning the financial transactions and
8   investment activities of Defendants, the policies and procedures governing the daily
9   operations of the various MindGeek Entities, including those pertaining to the
10   uploading and monitoring of content and CSAM on Defendants' websites; the
11   identities of those responsible for monitoring, moderating, and formatting content,
12   as well as the compensation and origin of that compensation pertaining to those
13   responsible individuals; and the activities of Defendants' employees, agents, and
14   executives within or directed at the United States, such as the disputed RFP 13 and
15   disputed ROGs 4 and 9.[7]

16       The July 29, 2022 order is consistent with the Ninth Circuit's recognition that
17   alter ego jurisdictional discovery should be broad in scope.  *See, e.g., Siano Mobile*
18   *Silicon, Inc. v. Mavcom, Inc.*, No. C-10-04783 LHK PSG, 2011 WL 1483706, at *3
19   (N.D. Cal. Apr. 19, 2011), citing *Harris Rutsky & Co. v. Bell & Clements Ltd*., 328
20   F.3d 1122, 1134-35 (9th Cir. 2003)(recognizing that "the Ninth Circuit adopted a
21   broad view of the appropriate scope of jurisdictional discovery" and directing

22   _____

23   [7]     As explained *infra*, even where the Defendants had committed to produce
24   certain documents or information that would illuminate these direct and indirect
     ownership interests – such as ROGs 4, 6, and 7 – the Defendants have failed to
25   produce them.  *See* Tabaksblat Decl., Exhibit 7 at p. 10-11, 15; *see infra*.  To date,
     the MindGeek Entity Defendants have collectively produced a mere 293 documents
26   in response to Plaintiff's RFPs and ROGs, and are generally limited to one-page
     corporate organizational charts, year-end financial statements, executive
27   employment agreements, intellectual property licensing agreements, and lease
28   agreements for non-Defendant entities. *See* Tabaksblat Decl. at ¶ 9.

CASE NO. 21-CV-04920-CJC-ADS
**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

broader discovery concerning alter ego and agency relationships).  Where, as here, defendants have attempted to avoid jurisdictional discovery into its relationships with related entities, Courts in this Circuit have rejected those tactics.  *See id.* (rejecting defendant's attempt to narrow the definition of which companies are subject to the alter ego jurisdictional requests for production).

### 5.   Discovery Concerning "Pervasive Control"

Plaintiff's Request for Production No. 6 seeks documents identifying all MindGeek or outside personnel who were responsible for moderating and screening the MindGeek platform and which MindGeek entities compensated and employed those moderators.   This information is critical to the Court's assessment of jurisdictional over the objecting MindGeek entities because it concerns which entities and individuals exercise operational control over Pornhub and the other MindGeek tubesites that monetized and commercialized  Plaintiff's CSAM.  *See* Dkt. 167 at 6.

Defendants claim they have sufficiently responded to RFP No. 6 through reference to their response to Plaintiff's Interrogatory No. 8. *See* Exhibit 6 at 2-3 ("In response to Interrogatory No. 8, the MindGeek Entities already have identified the entities that employ the individuals who perform those functions. Those individuals are compensated by the entities who employ them.")   Plaintiff's Interrogatory No. 8, however, sought the identities of those who paid or provided any consideration to MindGeek personnel, agents, or contractors who were engaged in the moderation of content.  Contrary to Defendants' assertion, their Response No. 8 provides only a general assertion that the unidentified individuals are paid by their employers, and does not provide any information pertaining to the individuals who carried out the day-to-day moderation, monitoring, reviewing, formatting, or analysis and optimization of content, let alone any information pertaining to the control exercised over those individuals – matters which are pertinent to the Court's analysis of Plaintiff's allegations that the individual Defendants' and others

29

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

exercised pervasive control over the MindGeek Entity Defendants overall. *See* Tabaksblat Decl., Exhibit 7 at 15-16.  Moreover, Defendants completely reject the request to identify the individuals paid for, amongst other things, conducting the moderation and monitoring of content identified in Plaintiff's ROG No. 8.  *Id.* at 16-17 (Defendants' Response to ROG No. 9).  Rather than end the jurisdictional inquiry, Defendants' response to Interrogatory No. 8 makes clear exactly how critical the Defendant's fulsome production of documents in response to RFP No. 6 is to the Plaintiff's jurisdictional analysis, because as Defendants concede under oath, MindGeek Premium Ltd. – one of the entities objecting to this Court's personal jurisdiction – is one of the entities that employed and compensated the individuals who moderated, monitored, reviewed, and formatted content on Pornhub from 2014 to 2018. *See* Exhibit 7 (Unredacted version filed under seal).  Although Defendants committed to produce the relevant service agreements between MG Premium Ltd and  MG Freesites Ltd., to date those documents have not been produced. *See* Tabaksblat Decl. at ¶ 9.  Moreover, Defendants have not produced nor committed to produce any documents, agreements, or information related to the specifics of the MindGeek Premium Ltd.'s engagement of these individuals.  By Defendants' own admission, this information is critical to the Plaintiff's jurisdictional inquiry of MindGeek Premium Ltd., and by imputation MindGeek S.A.R.L.

**6.    Defendants have failed to produce documents they admit are responsive and have committed to produce.**

To compound Defendants' discovery violations, Defendants have failed to produce numerous categories of documents it has already agreed to produce.  This includes, but is not limited to, documents Defendants committed to produce in response to Interrogatory No. 6, including "financial records and tax returns from which information regarding capitalization, annual revenues, profits, tax payments, and distributions can be determined." *See* Exhibit 3, at 14.  Similarly, in responding

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

to Plaintiff's Interrogatory No. 7, Defendants committed to produce "corporate books and records" which demonstrate their maintenance of "the records required by the laws of their individual states or countries of organization." They also agreed, but failed to produce service agreements between certain MindGeek entities in response to Interrogatory No. 8. *See supra*. Despite the Protective Order being entered on October 14, 2022, to date Plaintiffs have not received these documents. *See* Tabaksblat Decl. at ¶ 9.

### B.    Plaintiff is Entitled To Fees For This Motion.

Jurisdictional discovery in this case ends on December 30, 2022, which as of the filing of this motion is less than 1 month away.   Dkt. 167.   Defendants' unilateral limitation of the scope of Plaintiff's requests, refusal to and failure to timely produce responsive documents, and refusal to amend its positions through the meet and confer process has hamstrung Plaintiff's efforts to conduct jurisdictional discovery.   Therefore, in addition to an Order compelling Defendants' responses to the Plaintiff's requests and interrogatories, Plaintiff is entitled to fees for her costs of bringing this Motion. *See* Rule 37(a)(4)(A); *Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 194 (C.D. Cal. 2006) (awarding reasonable expenses and attorneys' fees to party who brought successful motion to compel responses to discovery requests).[8]

## IV.    MINDGEEK ENTITY DEFENDANTS' POSITION

### A.    Plaintiff's Motion to Compel Should Be Denied in Full

"In a motion for an order compelling production, the party seeking discovery carries the burden of showing that the requested information is relevant and why any objections lack merit." *Fitness Int'l, LLC v. DDRM Hill Top Plaza L.P.*, 2021 WL

---

[8]    In addition to this Motion, Plaintiff was compelled to pursue motion practice to obtain discovery from Defendants' auditors Grant Thornton seeking the same categories of information that Plaintiff sought from Defendants, but Defendants have to date failed to produce.  Dkt. 211 (Order granting Plaintiff's motion for the issuance of letters rogatory).

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

4497889, at *1 (C.D. Cal. July 30, 2021) (Spaeth, M.J.).    Information is discoverable only if it is a "nonprivileged matter that is relevant to [a] party's claim or defense and proportional to the needs of the case."   FED. R. CIV. P. 26(b). Additionally, information is not discoverable if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."   FED. R. CIV. P. 26(b)(2)(C)(i).   Discovery is not proportional where "the expected benefits [are outweighed by the expected] burdens posed by particular discovery requests."   *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 237 (S.D. Cal. 2015).

As set forth in more detail below, Plaintiff's Motion to Compel should be denied in its entirety because it seeks production of documents that are irrelevant to jurisdictional discovery, unduly burdensome, or unreasonably cumulative or duplicative.    Plaintiff is also seeking documents that the MindGeek Entity Defendants have been unable to locate after a reasonable search of their systems and that Plaintiff has baselessly refused to help the MindGeek Entity Defendants locate. As set forth in the MindGeek Entity Defendants' contemporaneously filed Motion to Compel, Plaintiff has more information about these materials in question and should cooperate with Defendants to facilitate locating them so they can be produced.  The Court should not grant a motion to compel insofar as it concerns documents the MindGeek Entity Defendants are willing to produce when Plaintiff is withholding information necessary to locate the materials.   To the contrary, if Plaintiff had cooperated in the discovery process to help resolve these issues, Plaintiff likely would already have many of the documents she has requested.

### 1.    Communications Concerning Plaintiff.

Plaintiff's motion requests that the MindGeek Entity Defendants be ordered to search for and produce documents responsive to RFP No. 1, including documents or communications concerning "actions to be taken with respect to Plaintiff's videos" or "which entities had roles in optimizing and monetizing" Plaintiff's

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

videos.    The MindGeek Entity Defendants have, as Rule 26 and 34 require, "conduct[ed] a reasonable search for responsive, nonprivileged documents in [their] possession, custody, or control," *Glenn v. Hyundai Motor America*, 2018 WL 11351292, *1 (C.D. Cal. June 6, 2018), and have advised Plaintiff that they have been unable to locate the content Plaintiff alleges was available on Pornhub in the 2014 to 2018 time period or any communications or documents related to that content.  The MindGeek Entity Defendants cannot produce, despite their best efforts to locate, what they do not have.  *See* Yeary Decl. at ¶ 11.  These Defendants used the information Plaintiff provided in the FAC as well as other publicly available information to conduct their search, but those searches have yielded nothing. Plaintiff's FAC alleges she has additional information which she has not produced that may assist the MindGeek Entity Defendants in finding additional responsive information, if any.  For example, Plaintiff alleges that individuals sent her the Pornhub links to the content.  FAC at ¶ 262.  Defendants' Interrogatory Nos. 2-8 specifically ask Plaintiff to identify these links and provide related information, but she has refused.    The MindGeek Entity Defendants have advised Plaintiff on numerous occasions that they remain willing to search for and produce documents responsive to Request No. 1, but as of right now have exhausted their search capabilities and cannot do more without additional information from Plaintiff.

During their search, the MindGeek Entity Defendants did locate information related to content depicting Ms. Fleites that was uploaded when she was an adult and communications related to attempts to locate her allegedly underage content. Defendants have recently produced those materials.  *See* Yeary Decl. at ¶ 13.

## 2.    <u>The Location of Defendants' Servers</u>

Plaintiff's RFP No. 26 and Interrogatory No. 10 both go well beyond the scope of jurisdictional discovery authorized by the Court.  The MindGeek Entity Defendants do not dispute that the Court's July 29, 2022 Order provides that an appropriate area of inquiry is where the servers that host content that has appeared

on MindGeek's tubesites is located.  The MindGeek Entity Defendants initially limited their responses to identifying the location of the servers for Pornhub, since that is the only tubesite Plaintiff has identified as having hosted content depicting her and the Court indicated that it was incumbent upon Plaintiff to clarify whether her content appeared on any other site, which she has not done.  However, in an effort to resolve or limit the parties' discovery disputes, these Defendants have agreed to update their response to Interrogatory No. 10 to identify the location of servers that host content for other tubesites as well.  *See* Yeary Decl. at ¶ 12.

The remaining aspects of RFP No. 26 and Interrogatory No. 10 that essentially seek every detail about the entire IT infrastructure of every MindGeek entity are vastly over broad and unjustified by the current allegations.  Nowhere in the July 29th Order did the Court "sustain[] Plaintiff's allegations that Defendants operated as one."  Rather, the Court admonished Plaintiff that her assertions are "group-pleading and conclusory allegations." *Fleites*, 2022 WL 4455558, at *4. Further, details on IT infrastructure do not advance the goal of jurisdictional discovery to identify information related to the roles and conduct of the particular MindGeek Entity Defendants.  This is precisely the type of discovery that only serves to complicate rather than simplify the question of whether this Court can exercise personal jurisdiction over MindGeek S.a.r.l. and MG Premium Ltd.

### 3.    <u>Communications Related to Alter Ego</u>

The MindGeek Entity Defendants do not dispute the factors courts in the Ninth Circuit assess in determining whether to pierce the corporate veil.  However, Defendants do dispute that they have failed to produce documents and information on those factors.  As discussed above, the MindGeek Entity Defendants have produced detailed financial records for *all* MindGeek entities, including audited financials for each entity for which audited financial statements are prepared.  They identified the officers and directors (or their foreign equivalents) for all of the MindGeek Entity Defendants, as well as the entities that are within their corporate

ownership chains.  *See* Response to Interrogatory No. 5.  They identified in detail the number of U.S. employees working for any MindGeek Entity Defendant and described the capacity in which they worked.  *See* Response to Interrogatory No. 4. They have produced documents showing the corporate filings for each MindGeek Entity Defendant, including documents such as Articles of Association, by-laws, board minutes, and board resolutions—documents prepared in accordance with the requirements of each Defendant's home state or country.  *See* Yeary Decl. at ¶¶ 8, 10, & 13.  The MindGeek Entity Defendants also recently produced relevant service agreements and are in the process of producing corporate income tax filings. For each category of requested discovery, the MindGeek Entity Defendants have searched for and are producing documents and information for a seven-year period from June 2014 to June 2021. In other words, despite Plaintiff's protests, the MindGeek Entity Defendants have been fully participating in discovery related to Plaintiff's alter ego arguments.

### 4.  <u>Limitation of Discovery to the Objecting Defendants.</u>

Plaintiff's argument that the MindGeek Entity Defendants have limited their discovery responses to material concerning the two entities challenging personal jurisdiction is baseless and fails to account for the amount and types of information provided about other entities in the relevant corporate ownership chains.  In response to Interrogatory No. 1, the MindGeek Entity Defendants detailed the ownership of not only the Defendants challenging jurisdiction, but also of every other MindGeek Entity Defendant and each entity above them in the corporate ownership chains.  If Plaintiff was not satisfied with that verified interrogatory response, the MindGeek Entity Defendants also provided detailed corporate organizational charts for years well beyond when Plaintiff alleges her content appeared on MindGeek's websites and did not redact information related to non-defendant entities.  The MindGeek Entity Defendants produced audited financial statements for both Defendants challenging jurisdiction and the other entities above

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

them in the corporate ownership chains for which such financial statements are prepared. These Defendants produced financial reporting packages that provide detailed financial information for the entire MindGeek Group (not just the MindGeek Entity Defendants challenging jurisdiction, the other MindGeek Entity Defendants, or the entities in the relevant ownership chains that include one of those Defendants), as well as MindGeek business units, such as the tubesites business. These Defendants have produced the agreements that detail who owns and who licenses the intellectual property for Pornhub—answering the question who owns and who profits from the operation of Pornhub. Defendants have produced board minutes and board resolutions that show distributions, dividends, profits and losses, assets and liabilities. In other words, the MindGeek Entity Defendants have produced documents that are more than sufficient to allow Plaintiff to understand "where the money flows" and whether the MindGeek Entity Defendants are adequately capitalized. Further, Plaintiff's Motion for Letters Rogatory seeking the same information from MindGeek's auditors was recently granted and will serve as yet another source of the same information for Plaintiff to "test" the information provided by the MindGeek Entity Defendants. [Dkt. 211 at 4].

In response to Interrogatory No. 8, the MindGeek Entity Defendants identified which MindGeek entities employed the individuals who performed moderation, monitoring, review, and formatting of content at the time Plaintiff alleges her content was uploaded to a MindGeek website. If not clear from their response, the individuals who had responsibility for the policies and procedures relating to these activities were employed by the same entities. Further, the MindGeek Entity Defendants have agreed to amend their answer to reflect that those same entities employed the individuals responsible for these activities on the tubesites, not just Pornhub. *See* Yeary Decl. at ¶ 12. The actual names of those employees and how much they were paid have no bearing on the question of the Court's exercise of personal jurisdiction over MindGeek S.a.r.l or MG Premium

1  Ltd.  Moreover, Defendants' response to Interrogatory No. 4 is fulsome and

2  provides detailed information about MindGeek's corporate and employee contacts

3  in the United States.  In no way have the MindGeek Entity Defendants tried to avoid

4  discovery concerning their relationships with related entities in the United States.

5              **5.    <u>Discovery Concerning "Pervasive Control"</u>**

6          As explained in section 4 above, the MindGeek Entity Defendants have

7  provided information relevant to the jurisdictional questions concerning employees

8  responsible for moderating and screening content uploaded to the MindGeek

9  platform at issue.  The MindGeek Entity Defendants have identified which entities

10  employed the individuals who performed the functions in question and will

11  supplement their response to confirm that the individuals who supervised those

12  employees and the individuals who had responsibility for the policies and

13  procedures related to those functions were all employed by the same entities.  The

14  names and compensation of the individual employees is not relevant to the question

15  of jurisdiction over the MindGeek Entity Defendants.  Indeed, because the

16  MindGeek Entity Defendants have been unable to determine whether any content

17  described by Plaintiff in the FAC was on any MindGeek website, these Defendants

18  cannot identify which, if any, employees had any contact with such content.  But

19  this type of discovery, which involves what certain individual employees may have

20  done or not done, goes to the merits of Plaintiff's underlying claims, not to questions

21  of personal jurisdiction.

22          Plaintiff seems to be requesting the actual employment agreements and terms

23  for the individuals who handled moderation, monitoring, review, and formatting of

24  content at the time Plaintiff alleges her content was on a MindGeek website.  This

25  once again overly complicates jurisdictional discovery.  Plaintiffs have sworn

26  discovery responses by the MindGeek Entity Defendants identifying which entities

27  employed and paid the individuals who had this responsibility.  Those responses

28  provide more than enough information for Plaintiff to address the questions raised

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1  by the Court regarding the roles and conduct of the individual MindGeek Entity

2  Defendants—not the individual employees.

3  ## 6.  **Defendants' Document Production**

4  Plaintiff is wrong regarding the scope of the MindGeek Entity Defendants'

5  document production.  As noted throughout this stipulation, these Defendants have

6  produced audited financial statements, financial reporting packages, board minutes,

7  board resolutions, licensing agreements, shareholder agreements, share transfer

8  documents, service agreements, and corporate filings in accordance with each

9  company's state or country of organization.  Defendants are in the process of

10  producing the requested tax filings.  Defendants have fully engaged in the

11  jurisdictional discovery process and any suggestion to the contrary is baseless.

12  ## B.  **Plaintiff is Not Entitled to Fees**

13  Plaintiff has not demonstrated any entitlement to fees under Rule 37(a)(5)(A)

14  (incorrectly identified as Rule 37(a)(4)(A) by Plaintiff) because her motion should

15  be denied in its entirety.  Fed. R. Civ. P. 37(a)(5)(A)-(B).  Even were the Court to

16  grant Plaintiff's motion in part, an award of fees would still be inappropriate.  First,

17  as the foregoing demonstrates, Plaintiff has not "attempt[ed] in good faith to obtain

18  the disclosure or discovery without court action."   Fed. R. Civ. P. 37(a)(5)(A)(i).

19  The MindGeek Entity Defendants have made clear that they require additional

20  information from Plaintiff in order to provide much of the discovery sought, but

21  Plaintiff has repeatedly refused to provide that information.  This refusal alone

22  precludes Plaintiff from recovering any fees related to those requests.  Fed. R. Civ.

23  P. 37(a)(5)(A) (forbidding an award of fees where movant has not tried to resolve

24  discovery dispute in good faith before seeking judicial intervention).

25  Moreover, fees are not appropriate where "the opposing party's

26  nondisclosure, response, or objection was substantially justified."  Fed. R. Civ. P.

27  37(a)(5)(A)(ii).  "Moving to compel or resisting discovery is 'substantially justified'

28

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1   if 'reasonable people could differ as to whether the party requested [to respond]

2   must comply.'"   *mSIGNIA, Inc. v. InAuth, Inc.*, 2018 WL 5936360, *2 (C.D. Cal.

3   Oct. 18, 2018) (quoting *Reygo Pacific Corp. v. Johnston Pump Co.*, 680 F.2d 647,

4   649 (9th Cir. 1982)); Fed. R. Civ. P. 37(a)(4) Advisory Committee Note to 1970

5   Amendment ("On many occasions … the dispute over discovery between the parties

6   is genuine, though ultimately resolved one way or the other by the court. in such

7   cases, the losing party is substantially justified in carrying the matter to court.").

8   This is not a situation where the MindGeek Entity Defendants have refused to

9   respond to discovery. To the contrary, as set forth above they have provided

10  responses and hundreds of documents they believe contain the necessary

11  information that is relevant and proportional to the needs of jurisdictional discovery

12  and actively sought to work with Plaintiff to locate additional documents.  Plaintiff

13  has sought discovery well beyond what the Court has permitted as jurisdictional

14  discovery.  Plaintiff may be frustrated that the MindGeek Entity Defendants have

15  resisted her attempt, yet again, to overcomplicate the case, and she may disagree

16  with some of the MindGeek Entity Defendants' objections, but none were taken in

17  bad faith.  Thus, even should the Court grant Plaintiff's motion in part, an award of

18  fees is not justified.

19  **V.    CONCLUSION**

20          **A.    Plaintiff's Conclusion**

21          For the foregoing reasons, Plaintiff respectfully requests that the Court grant

22  this Motion in full, and order the MindGeek Entity Defendants to produce

23  documents in response to Plaintiff's Requests for Production Nos.1, 6, 13, 26, and

24  27, and to supplement its responses to Plaintiff's Interrogatories Nos. 4, 9, 10, and

25  14.

26          **B.    Defendant's Conclusion**

27          Unlike Plaintiff, the MindGeek Entity Defendants have produced, and are

28  continuing to produce, hundreds of documents responsive to the requests at issue.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1   To the extent Plaintiff is dissatisfied with the responses and documents she has

2   received to date, that is a function of her requests seeking information that goes well

3   beyond the needs of jurisdictional discovery or her own unwillingness to cooperate

4   in discovery.  Accordingly, Plaintiff's motion to compel should be denied.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1  DATED: November 30, 2022        Respectfully Submitted

2                                   BROWN RUDNICK LLP

3

4                                   By: _/s/ Lauren Tabaksblat_____
                                     MICHAEL J. BOWE (*pro hac vice*)
5                                   mbowe@brownrudnick.com
                                     LAUREN TABAKSBLAT
6                                   (*pro hac vice*)
                                     ltabaksblat@brownrudnick.com
7                                   7 Times Square
                                     New York, NY 10036
8                                   Phone: (212) 209-4800
                                     Fax: (212) 209-4801
9

10

11                                   David M. Stein (#198256)
                                     dstein@brownrudnick.com
12                                   2211 Michelson Drive, 7th Floor
                                     Irvine, California  92612
13                                   Telephone: (949) 752-7100
                                     Facsimile:  (949) 252-1514
14

15

16                                   Attorneys for Plaintiffs

17

18  DATED: November 30, 2022        DECHERT LLP

19                                   By: _/s/ Kathleen N. Massey_____
20                                   KATHLEEN N. MASSEY
                                     (*pro hac vice*)
21                                   Kathleen.Massey@dechert.com
                                     Dechert LLP
22                                   Three Bryant Park
                                     1095 Avenue of the Americas
23                                   New York, NY 10036
                                     Tel: (212) 698-3500
24                                   Fax: (212) 698-3599
25

26                                   Attorney for Defendants MindGeek
                                     Entities.
27

28

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT MINDGEEK ENTITIES' RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**