Michael J. Bowe
(admitted *pro hac vice*)
mbowe@brownrudnick.com
Lauren Tabaksblat
(admitted *pro hac vice*)
ltabaksblat@brownrudnick.com
**BROWN RUDNICK LLP**
7 Times Square
New York, NY 10036
Telephone:   (212) 209-4800
Facsimile:    (212) 209-4801

Attorneys for Plaintiff

Ronald G. White
(admitted *pro hac vice*)
rwhite@wmhlaw.com
Walden Macht & Haran LLP
250 Vesey Street
New York, NY  10281
Tel: (212) 335-2387
Fax: (212) 335-2040

Attorneys for Defendant Bernd
Bergmair

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| SERENA FLEITES,<br><br>            Plaintiff,<br><br>      v.<br><br>MINDGEEK S.A.R.L.; MG FREESITES, LTD; MINDGEEK USA INCORPORATED; MG PREMIUM LTD.; MG GLOBAL ENTERTAINMENT INC.; 9219-1568 QUEBEC, INC.; BERND BERGMAIR; FERAS ANTOON; DAVID TASSILLO; COREY URMAN; VISA INC.; COLBECK CAPITAL DOES 1-5; BERGMAIR DOES 1-5<br><br>            Defendants. | CASE NO. 2:21-CV-04920-CJC-ADS<br><br>**DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE AUTUMN D. SPAETH**<br><br>**NOTICE OF MOTION AND PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**<br><br>Date: March 8, 2023<br>Time: 10:00 a.m.<br>Courtroom: 6B<br><br>Jurisdictional Discovery Cutoff: May 1, 2023 |

CASE NO. 21-CV-04920-CJC-ADS

**NOTICE OF MOTION AND PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

# **TABLE OF CONTENTS**

**Page**

JOINT STIPULATION ...................................................................................... 3

I.    THE PARTIES' PRELIMINARY STATEMENTS ................................... 3

    A.    Plaintiff's Preliminary Statement ............................................... 3

    B.    Defendant's Preliminary Statement ............................................ 4

II.   JOINT SPECIFICATION OF ISSUES IN DISPUTE ............................... 7

    A.    Requests for Production in Dispute ............................................. 7

    B.    Interrogatories in Dispute........................................................... 40

III.  PLAINTIFF'S POSITIOn ...................................................................... 43

    A.    Plaintiff's Motion To Compel .................................................... 43

        1.    Bergmair Cannot Avoid Discovery Just Because the
             MindGeek Entity Defendants May Provide Discovery............. 44

        2.    Bergmair Refuses to Produce Documents and
             Communications Concerning Plaintiff.......................................45

        3.    Bergmair Disregards this Court's Rulings Concerning the
             Permissible Scope of Jurisdictional Discovery ........................ 45

        4.    Bergmair Refuses to Produce Documents and Sufficient
             Information Relative to His Jurisdictional Contacts ................. 49

        5.    Bergmair Has Refused to Conduct a Search for
             Responsive Documents............................................................. 51

IV.   BERGMAIR'S POSITION .................................................................... 52

    A.    Plaintiff's Motion to Compel Should Be Denied in Full.................... 52

        1.    Plaintiff's Motion Should be Denied for Failure to
             Meaningfully Meet and Confer .................................................. 52

            a.    Plaintiff Has Failed to Meaningfully Meet and
                Confer ............................................................................. 52

            b.    Plaintiff's Motion Should be Denied Due to Her
                Failure to Meet and Confer ............................................. 58

        2.    Plaintiff Improperly Seeks MindGeek Corporate Records
             from Mr. Bergmair........................................................................ 61

        3.    Mr. Bergmair Has No Documents or Communications
             Concerning Plaintiff.................................................................. 64

4.    Plaintiff's Requests Regarding CSAM Policies and Alter Ego Go Far Beyond Jurisdictional Discovery ........................... 65

a.    CSAM Policies (RFP Nos. 5, 10, 30, 33-42, 46, 49, 52) ...................................................................... 65

b.    Alter Ego (RFP Nos. 2-3, 6-9, 13-29; ROG Nos. 2-3) .................................................................................. 66

5.    Plaintiff's Requests for Documents and Information Regarding Mr. Bergmair's Personal Travel and Contacts Exceed this Court's Rulings Concerning the Permissible Scope of Jurisdictional Discovery ............................................ 72

a.    Plaintiff Seeks Irrelevant Information Related to Personal Contacts with the Jurisdiction .......................... 72

b.    Plaintiff Seeks Contact Lists Beyond the Scope of Authorized Jurisdictional Discovery (RFP No. 32 and ROG No. 6) ...................................................... 74

c.    Plaintiff Seeks Communications with Other Defendants Related to this Action (RFP No. 4) ............. 74

6.    Mr. Bergmair Has Conducted a Reasonably Diligent Search for Documents .............................................. 75

V.    CONCLUSION ........................................................... 76

A.    Plaintiff's Conclusion ................................................... 76

B.    Defendant's Conclusion ................................................. 76

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 8, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Autumn D. Spaeth, located at the Ronald Reagan Federal Building and United States Courthouse, Courtroom 6B, 411 West Fourth Street, Santa Ana, CA 92701, Plaintiff Serena Fleites ("Plaintiff") will move the Court for an Order compelling defendant Bernd Bergmair to respond to discovery and produce documents pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure.

Plaintiff brings this motion pursuant to Rules 26, 33, 34, and 37 of the Federal Rules of Civil Procedure; Local Rule 37-2, and this Court's July 2018 Standing Orders on Discovery Disputes.

In accordance with L.R. 7-3 and 37-1, counsel for Plaintiff and Defendant Bernd Bergmair conferred by telephone on December 15, 2022 and January 6, 2023.

Plaintiff bases this motion on this Notice, the Parties' Joint Stipulation regarding this discovery dispute, the pleadings and papers on file in this action, and on such other evidence as may be submitted to the Court. Plaintiff submits a proposed order with this application.

Dated: February 8, 2023

---

1

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1

2   By: */s/Michael J. Bowe*　　　　　　　　By: *_/s/Ronald G. White_*

3   MICHAEL J. BOWE (*pro hac vice*)　　　RONALD G. WHITE (*pro hac vice*)
    mbowe@brownrudnick.com　　　　　　　rwhite@wmhlaw.com

4   Lauren Tabaksblat(*pro hac vice*)　　　　Walden, Macht & Haran LLP
    ltabaksblat@brownrudnick.com　　　　　250 Vesey Street

5   **BROWN RUDNICK LLP**　　　　　　　New York, NY 10281
    7 Times Square　　　　　　　　　　　Tel: (212) 335-2387

6   New York, NY 10036　　　　　　　　　Fax: (212) 335-2040
    Phone: (212) 209-4800

7   Fax: (212) 209-4801　　　　　　　　　Attorneys for Bernd Bergmair

8
    David M. Stein (#198256)

9   dstein@brownrudnick.com **BROWN
    RUDNICK LLP**

10  2211 Michelson Drive, 7th Floor Irvine,
    California  92612

11  Phone: 949.752.7100
    Fax: 949.252.1514

12

13  Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1                           **JOINT STIPULATION**

2 **I.**     **THE PARTIES' PRELIMINARY STATEMENTS**

3       **A.**     **Plaintiff's Preliminary Statement**

4       This Court ordered the MindGeek Defendants, including the Individual

5 Defendants, to submit to jurisdictional discovery, (Dkt. 167, at 1), specifically

6 identifying the following areas of relevant inquiry: "where the money flows in the

7 Mindgeek web," which entities or individuals exercise operational control over the

8 MindGeek entities that monetized Plaintiff's child sexual abuse material ("CSAM"),

9 and whether these individuals and entities are alter egos of each other. (Dkt. 167, at

10 3 n.2, 4-7). Consistent with this Order, Plaintiff served discovery requests tracking

11 the precise categories of information this Court held to be relevant to its jurisdictional

12 analysis on the MindGeek Entity Defendants, the Individual Defendants, and

13 defendants' auditors, third party Grant Thornton. This Court thereafter affirmed the

14 relevance of the categories of information Plaintiff seeks and issued letters rogatory

15 to various Grant Thornton entities seeking the same categories of information that

16 Plaintiff seeks from defendant Bergmair. *See* Dkt. 211 at 5-6 ("The Court agrees with

17 Plaintiff that the information is relevant to the Court's jurisdictional analysis and

18 ensures Plaintiff 'obtains complete and accurate information.'").

19       Despite two court orders, Bergmair has stonewalled Plaintiff's efforts to take

20 basic jurisdictional discovery, refusing to produce any documents or even to conduct

21 a search for responsive documents. Bergmair has taken the position that he is not

22 required to participate in discovery – even to search for documents – because the

23 Mindgeek Entity Defendants might produce discovery. But this Court has already

24 rejected the argument that an entity or individual need not participate in discovery

25 because the information they possess would be duplicative of documents produced by

26 any other party, Dkt. 211 at 4, and this holding applies with greater force where the

27 party resisting discovery is a defendant in this action. ████████████████

28 ████████████████████████████████████████████████

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1　███████████████████████████████████████████████

2　████████████, which include several MindGeek entities that do not contest personal

3　jurisdiction in this case. *See* Doyle Decl., Exhibit 4, Resp. to ROG No. 1; *see also*

4　Dkt. 139-1 ("MindGeek does not challenge the court's jurisdiction over . . . 9219

5　which acts as a service provider to Freesites."). Accordingly, he likely possesses

6　certain information that may not also be in the possession of other defendants in this

7　action. Nevertheless, he has not produced a single document to date.

8　　　Bergmair was obligated both to conduct a reasonable search for responsive

9　documents and to state in his responses whether he is withholding any responsive

10　materials on the basis of any of his stated objections. The Court has already confirmed

11　that the individual defendants are part of jurisdictional discovery. *See* Dkt. 167 at 7

12　(rejecting Individual Defendants' argument that jurisdictional discovery was

13　unwarranted and ordering Individual Defendants to submit to discovery, in part, based

14　on finding that Plaintiff "has alleged facts bearing on the MindGeek Individual

15　Defendants' direction of specific policies pursuant to which Plaintiff was harmed").

16　This Court should order Bergmair to produce documents in response to Plaintiff's

17　RFPs 1-30, 32-42, 46, 49, and 52 and to supplement his responses to Plaintiff's ROGs

18　2, 3, 4, and 6.[1]

19　　**B.**　**Defendant's Preliminary Statement**

20　　　Defendant Bernd Bergmair is a resident of Hong Kong with virtually no

21　connection to California or the United States. During the relevant time period, he was

22　a corporate shareholder in the MindGeek entities, which were headquartered and

23　operated outside the United States, but never held any management or other position.

24　He had no contact with Plaintiff Serena Fleites and has no documents in his possession

25　regarding her for the relevant time period. Indeed, he first heard of her after she

26

27　[1] Plaintiff reserves her right to further move to this Court for any of the remaining

28　RFPs or ROGs which have not been fully responded to by Defendant Bergmair.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    threatened litigation against MindGeek.

2    　　The Court's July 29, 2022 Order permitted jurisdictional discovery of Mr.

3    Bergmair, Feras Antoon, David Tassillo, and Corey Urman (the "Individual

4    Defendants") with respect to two theories.  White Decl., Exhibit A (7/29/22 Order

5    Granting Jurisdictional Discovery).  First, the Court noted that, although the Amended

6    Complaint offered only "scattershot" and "conclusory" allegations, which gave the

7    Court "some concern that Plaintiff is merely guessing at who bears responsibility" for

8    MindGeek's CSAM policies (*id.* at 5-6), Plaintiff could take jurisdictional discovery

9    regarding the Individual Defendants' roles in "direct[ing] or implement[ing]"

10   "specific MindGeek polices or practices" that "applied to Plaintiff and her videos."

11   *Id.* at 5.   Second, the Court noted that, although Plaintiff's allegations were

12   "conclusory, vague, and indeed, quite difficult to follow at times," she could take

13   jurisdictional discovery to determine if she had "a workable alter ego theory" to

14   impute to the Individual Defendants the contacts of the MindGeek corporate entities

15   who concede jurisdiction.  *Id.* at 6.  More recently, the Court recognized that where

16   jurisdictional discovery has been authorized, "jurisdictional discovery requests must

17   still be tailored to seek discovery that relates to an opposing party's jurisdictional

18   contacts."  White Decl., Exhibit B [Dkt. No. 260] (Feb. 3, 2023, Order on Plaintiff's

19   Motion to Compel).

20   　　Despite the limited scope of jurisdictional discovery, Plaintiff served 60

21   overbroad discovery requests on Mr. Bergmair and the other defendants, admittedly

22   seeking merits discovery as well as the jurisdictional discovery the Court had

23   authorized.  Even after her attempt to exceed the scope of the permitted jurisdictional

24   discovery was rejected by the Court, she refused to narrow even a single one of her

25   document requests or interrogatories.  She now seeks to compel Mr. Bergmair to

26   respond to 48 of her 60 patently overbroad requests.  Her motion should be denied for

27   several reasons.

28   　　*First*, Plaintiff has not meaningfully engaged in the meet-and-confer process as

5

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

required by L.R. 37-1.  Despite serving requests admittedly seeking merits discovery which are so broad as to encompass virtually every piece of paper and electronic record in Mr. Bergmair's possession related to MindGeek for an eight-year period, she has refused the Individual Defendants' repeated requests to narrow her requests in any way.  Similarly, Plaintiff has ignored multiple requests by the Individual Defendants in the month preceding this stipulation to meet to attempt to narrow the issues to be presented to the Court.  Indeed, Plaintiff conceded the need to meet and confer in a January 18 email (White Decl. Ex. C, January 18, 2023, email from D. Stein. ("yes – we should confer further to try to reach agreements.  Back in touch shortly."), yet then failed to do so, and did not even bother to respond to the Individual Defendants' requests for a meet and confer.  Instead, on February 1, 2023, Plaintiff emailed her portion of this joint stipulation seeking to compel each Individual Defendant to respond to nearly all her overbroad discovery requests as written, without any narrowing whatsoever.  This alone is a basis to deny her motion.

*Second*, virtually all the records Plaintiff seeks are prototypical corporate records created and maintained by MindGeek, such as financial statements, tax returns, board minutes and document preservation policies, or emails with individuals on the MindGeek email system.  Despite this, Plaintiff seeks to compel Mr. Bergmair, an individual shareholder, to produce these records rather than MindGeek.  However, Fed. R. Civ. P. 26(b)(2)(C)(i) specifically requires a court to limit discovery where it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Here, it would plainly be "more convenient" and "less burdensome" to obtain the documents from MindGeek.

*Third*, Plaintiff's requests far exceed the scope of the jurisdictional discovery permitted by the Court.  Mr. Bergmair has already agreed to produce documents related to the two subjects on which jurisdictional discovery was authorized.  First, he has agreed to produce any documents in his possession reflecting formulation of

6

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

MindGeek's CSAM policies.  Plaintiff's overbroad, merits-focused requests which go beyond that are improper.  Second, with respect to alter ego, Mr. Bergmair has agreed to produce the corporate resolutions authorizing the distribution of dividends to the entities through which he holds his interest in MindGeek.  This discovery is in addition to his interrogatory responses providing information regarding his interest in MindGeek, as well as 7,000 pages of detailed financial and corporate information already produced by MindGeek which explain the structure and flow of money at the company.  Moreover, MindGeek has also offered to make a supplemental production of specific categories of corporate and financial documents requested by Plaintiff that relate to the alter ego issue.  This discovery provides sufficient information on the subjects relevant to the alter ego theory Plaintiff was permitted to explore.  The further discovery Plaintiff seeks from Mr. Bergmair is a fishing expedition far beyond the scope of jurisdictional discovery and is not "proportional" under Fed. R. Civ. P. 26.

## II.    JOINT SPECIFICATION OF ISSUES IN DISPUTE

### A.    Requests for Production in Dispute

Request for Production No. 1: "All documents and communications concerning Serena Fleites."

Response to Request for production No. 1: "Defendant objects to this Request on the grounds that it is not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability of Plaintiff's alter ego arguments. Defendant further objects to this Request to the extent it seeks documents unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery permitted by the Court's July 29 Order. Defendant objects to this Request to the extent it assumes that "communications" are "jurisdictional contacts" or are relevant to the question of whether the Court has personal jurisdiction over Mr. Bergmair. Defendant further objects to this Request to the extent it seeks information protected by the attorney-client

privilege or work product doctrine. Defendant further objects to this Request on the grounds that it is duplicative of information already sought by Plaintiff from MindGeek.

Subject to and without waiving all objections, Defendant states that he has no communications with Serena Fleites, but acknowledges his obligation to timely update this response as warranted."

Request for Production No. 2: "All documents and communications concerning or relating to Your affiliation with, employment by, or ownership of MindGeek, any MindGeek Related Entity, or any MindGeek Tubesites."

Response to Request for Production No. 2: "Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability of Plaintiff's alter ego arguments. Nor is it limited to the entities which are parties to this lawsuit. Defendant further objects to this Request to the extent it seeks documents unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery permitted by the Court's July 29 Order. Defendant further objects that the undefined term "affiliation" is vague and ambiguous. Defendant further objects to this Request to the extent it seeks information protected by the attorney-client privilege or work product doctrine. Defendant further objects to this Request on the grounds that it is duplicative of information already sought by Plaintiff from MindGeek.

Subject to and without waiving all objections, Defendant refers Plaintiff to and incorporates herein his response to Interrogatory No. 1 and agrees to meet and confer should there be remaining questions on this topic."

Request for Production No. 3: "All documents and communications concerning or reflecting any income, revenue, or other monies You have

8

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    received from MindGeek, any MindGeek Related Entity, or any MindGeek

2    Tubesites."

3    Response to Request for Production No. 3: "Defendant objects to this

4    Request on the grounds that it is overly broad, unduly burdensome, not

5    reasonably calculated to lead to the discovery of admissible evidence, and not

6    proportional to the needs of the case, particularly to the needs of addressing the

7    Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability

8    of Plaintiff's alter ego arguments. Nor is it limited to the entities which are

9    parties to this lawsuit. Defendant further objects to this Request to the extent it

10   seeks documents unrelated to personal jurisdiction or outside the scope of the

11   jurisdictional discovery permitted by the Court's July 29 Order. Defendant

12   further objects to this Request to the extent it seeks information protected by

13   the attorney-client privilege or work product doctrine. Defendant further

14   objects to this Request on the grounds that it is duplicative of information

15   already sought by Plaintiff from MindGeek."

16   Request for Production No. 4: "All documents and communications

17   between and among You and any of the Defendants related to this Action."

18   Response to Request for Production No. 4: "Defendant objects to this

19   Request on the grounds that it is overly broad, unduly burdensome, not

20   reasonably calculated to lead to the discovery of admissible evidence, and not

21   proportional to the needs of the case, particularly to the needs of addressing the

22   Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability

23   of Plaintiff's alter ego arguments. Defendant further objects to this Request to

24   the extent it seeks documents unrelated to personal jurisdiction or outside the

25   scope of the jurisdictional discovery permitted by the Court's July 29 Order.

26   Defendant further objects to this Request to the extent it seeks information

27   protected by the attorney-client privilege or work product doctrine. Defendant

28   further objects to this Request to the extent it seeks documents that can be

9

1   obtained from a more convenient and less expensive source, namely,
2   MindGeek."

3   Request for Production No. 5: "All documents and communications
4   between and among You and any of the Defendants related to the presence of
5   any CSAM on any MindGeek site, any MindGeek Related Entity site, or any
6   MindGeek Tubesites."

7   Response to Request for Production No. 5: "Defendant objects to this
8   Request on the grounds that it is overly broad, unduly burdensome, not
9   reasonably calculated to lead to the discovery of admissible evidence, and not
10   proportional to the needs of the case, particularly to the needs of addressing the
11   Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability
12   of Plaintiff's alter ego arguments. Nor is it limited to the entities which are
13   parties to this lawsuit. Defendant further objects to this Request to the extent it
14   seeks documents unrelated to personal jurisdiction or outside the scope of the
15   jurisdictional discovery permitted by the Court's July 29 Order. Defendant
16   further objects to this Request to the extent it seeks information protected by
17   the attorney-client privilege or work product doctrine. Defendant further
18   objects to this Request on the grounds that it is duplicative of information
19   already sought by Plaintiff from MindGeek."

20   Request for Production No. 6: "All documents describing, depicting,
21   explaining, or relating to the past or present corporate and ownership
22   organization and structure of MindGeek, the identity of all affiliated or related
23   party entities, corporations, limited partnerships, limited liability companies,
24   partnerships, or other entities; the nature of the direct, indirect or beneficial
25   ownership or other interests held by any such person, entity, or organization;
26   and the owners, members, directors, managers, lenders, secured parties, general
27   or limited partners, executives, and outside law firms and accountants of such
28   entities."

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1        <u>Response to Request for Production No. 6</u>: "Defendant objects to this

2    Request on the grounds that it is overly broad, unduly burdensome, not

3    reasonably calculated to lead to the discovery of admissible evidence, and not

4    proportional to the needs of the case, particularly to the needs of addressing the

5    Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability

6    of Plaintiff's alter ego arguments. Nor is it limited to the entities which are

7    parties to this lawsuit. Defendant further objects to this Request to the extent it

8    seeks documents unrelated to personal jurisdiction or outside the scope of the

9    jurisdictional discovery permitted by the Court's July 29 Order. Defendant

10   further objects to this Request to the extent it seeks information protected by

11   the attorney-client privilege or work product doctrine. Defendant further

12   objects to this Request on the grounds that it is duplicative of information

13   already sought by Plaintiff from MindGeek. Defendant further refers Plaintiff

14   to MindGeek's Response to Interrogatory No. 1 and the documents to be

15   produced by MindGeek in response to Request No. 5."

16       <u>Request for Production No. 7</u>: "All documents related to any past or

17   present, direct, indirect, or beneficial ownership, lending, or secured or other

18   economic interest in, or business relationship with, MindGeek or any

19   MindGeek Related Entity by You or any of the other Individual Defendants,

20   Colbeck Capital, JP Morgan Chase, Fortress Investment Group, Cornell, Bjorn

21   Daniel Sudan, or Shaileshkumar P. Jain (a/k/a "Sam" Jain) or individuals or

22   entities introduced or represented by such persons or entities."

23       <u>Response to Request for Production No. 7</u>: "Defendant objects to this

24   Request on the grounds that it is overly broad, unduly burdensome, not

25   reasonably calculated to lead to the discovery of admissible evidence, and not

26   proportional to the needs of the case, particularly to the needs of addressing the

27   Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability

28   of Plaintiff's alter ego arguments. Nor is it limited to the entities which are

11

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

parties to this lawsuit. Defendant further objects to this Request to the extent it seeks documents unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery permitted by the Court's July 29 Order. Defendant further objects to this Request to the extent it seeks information protected by the attorney-client privilege or work product doctrine. Defendant further objects to this Request on the grounds that it is duplicative of information already sought by Plaintiff from MindGeek. Defendant further refers Plaintiff to MindGeek's Response to Interrogatory No. 1 and the documents to be produced by MindGeek in response to Request Nos. 3 and 5.

Subject to and without waiving all objections, Defendant refers Plaintiff to and incorporates herein his response to Interrogatory No. 1 and agrees to meet and confer should there be remaining questions on this topic."

Request for Production No. 8: "All documents related to any past or present, direct, indirect or beneficial ownership, licensing, or secured or other economic interest of, or in, any intellectual property owned or licensed, directly or indirectly by You related to MindGeek, any MindGeek Related Entity, or any MindGeek Tubesites."

Response to Request for Production No. 8: "Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability of Plaintiff's alter ego arguments. Nor is it limited to the entities which are parties to this lawsuit, or to any intellectual property related to the claims in this action. Defendant further objects to this Request to the extent it seeks documents unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery permitted by the Court's July 29 Order. Defendant further objects to this Request to the extent it seeks information protected by

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    the attorney-client privilege or work product doctrine. Defendant further

2    objects to this Request on the grounds that it is duplicative of information

3    already sought by Plaintiff from MindGeek."

4    Request for Production No. 9: "All documents describing, depicting,

5    explaining, or relating to MindGeek's past or present internal organizational

6    structure, offices, departments, executives, and personnel."

7    Response to Request for Production No. 9: "Defendant objects to this

8    Request on the grounds that it is overly broad, unduly burdensome, not

9    reasonably calculated to lead to the discovery of admissible evidence, and not

10    proportional to the needs of the case, particularly to the needs of addressing the

11    Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability

12    of Plaintiff's alter ego arguments. Nor is it limited to the entities which are

13    parties to this lawsuit. Defendant further objects to this Request to the extent it

14    seeks documents unrelated to personal jurisdiction or outside the scope of the

15    jurisdictional discovery permitted by the Court's July 29 Order. Defendant

16    further objects that the phrase "internal organizational structure" is vague and

17    ambiguous. Defendant further objects that this Request is overly broad and

18    unduly burdensome to the extent that it seeks "all documents ... relating to

19    MindGeek's past or present ... executives and personnel." Defendant further

20    objects that this Request is overly broad and unduly burdensome to the extent

21    that it asks him to produce documents identifying the employees of all

22    MindGeek entities for a seven-year period. Defendant further objects to this

23    Request on the grounds that it is duplicative of information already sought by

24    Plaintiff from MindGeek. Defendant further refers Plaintiff to MindGeek's

25    Response to Interrogatory No. 1 and the documents to be produced by

26    MindGeek in response to Request No. 5."

27    Request for Production No. 10: "All documents identifying all

28    MindGeek or outside personnel or vendors with any current or past

13

1  responsibility for moderating, monitoring, formatting, optimizing, filtering,

2  reviewing, screening, or removing content on any MindGeek platform or

3  website, the entities they were retained and employed by, and the entities that

4  they were compensated by, whether salary, bonus or otherwise."

5      Response to Request for Production No. 10: "Defendant objects to this

6  Request on the grounds that it is overly broad, unduly burdensome, not

7  reasonably calculated to lead to the discovery of admissible evidence, and not

8  proportional to the needs of the case, particularly to the needs of addressing the

9  Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability

10  of Plaintiff's alter ego arguments. Nor is it limited to the entities which are

11  parties to this lawsuit. Defendant further objects to this Request to the extent it

12  seeks documents unrelated to personal jurisdiction or outside the scope of the

13  jurisdictional discovery permitted by the Court's July 29 Order. Defendant

14  further objects that the names of the individual employees who performed the

15  functions described in this Request and any vendors retained to support such

16  functions are unrelated to the issue of personal jurisdiction. Defendant further

17  objects that the term "outside personnel" is vague and ambiguous. Defendant

18  further objects to the extent that this Request is not limited to Pornhub, the only

19  tubesite on which Plaintiff alleges content depicting her was uploaded, and is

20  not limited to the functions at issue in this action. Defendant further objects to

21  this Request as overly broad and unduly burdensome to the extent that it asks

22  him to produce documents identifying the employees of all MindGeek entities

23  for a seven-year period. Defendant further objects to this Request on the

24  grounds that it is duplicative of information already sought by Plaintiff from

25  MindGeek."

26      Request for Production No. 11: "All documents and communications

27  relating to Your or MindGeek's past or present jurisdictional contacts with the

28  United States or California, including but not limited to, offices, residences,

and real estate located in California or any jurisdiction in the United States."

Response to Request for Production No. 11: "Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability of Plaintiff's alter ego arguments. Nor is it limited to the entities which are parties to this lawsuit. Defendant further objects that the term "jurisdictional contacts" is vague and ambiguous and calls for legal conclusions. Defendant further objects to this Request to the extent it assumes that any of the contacts identified in this Request are "jurisdictional contacts" or that the actions or contacts of MindGeek are relevant to the issue of whether the Court has personal jurisdiction over Mr. Bergmair. Defendant further objects that "contacts" generally, without limitation, with the United States are not relevant to whether personal jurisdiction exists in California. Defendant further objects to this Request to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving all objections, Defendant refers Plaintiff to and incorporates herein his response to Interrogatory No. 4 and agrees to meet and confer should there be remaining questions on this topic."

Request for Production No. 12: "All documents and communications relating to Your or MindGeek's personnel or vendors employed, retained, paid, located in, or otherwise providing services in California or any jurisdiction in the United States; political activities in California or any jurisdiction in the United States, including through direct or indirect participation in, or financial support for, lobbying, trade, or industry, or activist organizations; trips to California or any jurisdiction in the United States; servers; revenues, profits, expenses, taxes earned or paid in or from California or any jurisdiction in the

1    United States; and communications or business relationships with, to, from, or

2    in California or any jurisdiction in the United States."

3        Response to Request for Production No. 12: "Defendant objects to this

4    Request on the grounds that it is overly broad, unduly burdensome, not

5    reasonably calculated to lead to the discovery of admissible evidence, and not

6    proportional to the needs of the case, particularly to the needs of addressing the

7    Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability

8    of Plaintiff's alter ego arguments. Nor is it limited to the entities which are

9    parties to this lawsuit or limited to Pornhub, which is the only tubesite on which

10   Plaintiff alleges content depicting her was uploaded, and MG Freesites Ltd.,

11   the entity which operates Pornhub. Defendant further objects to this Request to

12   the extent it seeks documents unrelated to personal jurisdiction or outside the

13   scope of the jurisdictional discovery permitted by the Court's July 29 Order.

14   Defendant further objects that the terms "political activities" and "lobbying,

15   trade, or industry, or activist organizations" are vague and ambiguous.

16   Defendant further objects to this Request to the extent it assumes that any of

17   the contacts identified in this Request are relevant to the issue of whether the

18   Court has personal jurisdiction over Mr. Bergmair, or that the actions or

19   contacts of MindGeek are relevant to the issue of whether the Court has

20   personal jurisdiction over Mr. Bergmair. Defendant further objects to this

21   Request to the extent it seeks information protected by the attorney-client

22   privilege or work product doctrine.

23        Subject to and without waiving all objections, Defendant refers Plaintiff

24   to and incorporates herein his response to Interrogatory No. 4 and agrees to

25   meet and confer should there be remaining questions on this topic."

26        Request for Production No. 13: "All documents reflecting annual

27   revenues, profits and losses, and expenses for each MindGeek Related Entity

28   or MindGeek Tubesite or the entity that owns or controls that platform or

16

CASE NO. 21-CV-04920-CJC-ADS

PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES

1    website."

2      Response to Request for Production No. 13: "Defendant objects to this
3    Request on the grounds that it is overly broad, unduly burdensome, not
4    reasonably calculated to lead to the discovery of admissible evidence, and not
5    proportional to the needs of the case, particularly to the needs of addressing the
6    Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability
7    of Plaintiff's alter ego arguments. Nor is it limited to the entities which are
8    parties to this lawsuit or limited to Pornhub, which is the only tubesite on which
9    Plaintiff alleges content depicting her was uploaded, and MG Freesites Ltd.,
10    the entity which operates Pornhub. Defendant further objects to this Request to
11    the extent it seeks documents unrelated to personal jurisdiction or outside the
12    scope of the jurisdictional discovery permitted by the Court's July 29 Order.
13    Defendant further objects to this Request on the grounds that it is duplicative
14    of information already sought by Plaintiff from MindGeek."

15      Request for Production No. 14: "All documents concerning, reflecting,
16    describing, or relating to, or comprising of presentations to or from, proposed
17    transactions from, or data and information provided or made available to, any
18    actual or potential investors, lenders, secured parties, licensees, purchasers, or
19    others concerning MindGeek or any MindGeek Related Entity."

20      Response to Request for Production No. 14: "Defendant objects to this
21    Request on the grounds that it is overly broad, unduly burdensome, not
22    reasonably calculated to lead to the discovery of admissible evidence, and not
23    proportional to the needs of the case, particularly to the needs of addressing the
24    Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability
25    of Plaintiff's alter ego arguments. Nor is it limited to the entities which are
26    parties to this lawsuit or limited to Pornhub, which is the only tubesite on which
27    Plaintiff alleges content depicting her was uploaded, and MG Freesites Ltd.,
28    the entity which operates Pornhub. Defendant further objects to this Request to

17

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

the extent it seeks documents unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery permitted by the Court's July 29 Order. Defendant further objects that this request is overly broad and unduly burdensome to the extent it seeks all documents reflecting "information provided or made available to … others." Defendant further objects to this Request on the grounds that it is duplicative of information already sought by Plaintiff from MindGeek. Defendant further refers Plaintiff to MindGeek's Response to Interrogatory No. 3 and the documents to be produced by MindGeek in response to Requests Nos. 8 and 9.

Subject to and without waiving all objections, Defendant refers Plaintiff to and incorporates herein his response to Interrogatory No. 3 and agrees to meet and confer should there be remaining questions on this topic."

Request for Production No. 15: "All transaction documents, term sheets, and communications concerning any actual or proposed transactions involving the ownership of, loans to, secured interest in, or intellectual property or other rights related to MindGeek."

Response to Request for Production No. 15: "Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability of Plaintiff's alter ego arguments. Nor is it limited to the entities which are parties to this lawsuit. Defendant further objects to this Request to the extent it seeks documents unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery permitted by the Court's July 29 Order. Defendant further objects that the term "other rights" is vague and ambiguous. Defendant further objects to this Request to the extent it seeks information protected by the attorney-client privilege or work product doctrine. Defendant further

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

objects to this Request on the grounds that it is duplicative of information already sought by Plaintiff from MindGeek. Defendant further refers Plaintiff to MindGeek's Responses to Interrogatory Nos. 1 and 2 and the documents to be produced by MindGeek in response to Request Nos. 4 and 10.

Subject to and without waiving all objections, Defendant refers Plaintiff to and incorporates herein his response to Interrogatory No. 2 and agrees to meet and confer should there be remaining questions on this topic."

Request for Production No. 16: "For each MindGeek entity, affiliate, subsidiary, or related entity, all financial, ledgers; shareholder, investor, director, member, manager, or partner lists; board presentation materials, board minutes, and calendars of board meetings or conferences; records reflecting capitalization, revenues, profits, tax payments, distributions or dividends, and distribution or dividend recipients for such entities; articles of incorporation or formation, by-laws, shareholder and lender agreements; profit and loss, balance sheet, tax, payroll, and expense records; and records reflecting the sources of all payments made to or on behalf of the entity, affiliate, subsidiary, or related entity."

Response to Request for Production No. 16: "Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability of Plaintiff's alter ego arguments. Nor is it limited to the entities which are parties to this lawsuit. Defendant further objects to this Request to the extent it seeks documents unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery permitted by the Court's July 29 Order. Defendant further objects that this request is overly broad and unduly burdensome to the extent it seeks all "records reflecting the sources of all payments made to or on

19

behalf of" all MindGeek entities for a seven-year period. Defendant further objects that the phrase "records reflecting the sources of all payments made to or on behalf of the entity, affiliate, subsidiary, or related entity" is vague and ambiguous. Defendant further objects to the production of financial ledgers, lists of investors or managers, lender agreements, payroll and expense records, and sources of payments as unrelated to any claim in this action, or to personal jurisdiction over Mr. Bergmair. Defendant further objects to this Request on the grounds that it is duplicative of information already sought by Plaintiff from MindGeek. Defendant further refers Plaintiff to MindGeek's Response to Interrogatory No. 1 and the documents to be produced by MindGeek in response to Request No. 11."

Request for Production No. 17: "For each MindGeek Entity, affiliate, subsidiary, or Related Entity, all quarterly and annual tax filings, audits, financials, and statutory reporting, including work papers and reports of its outside accountants."

Response to Request for Production No. 17: "Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability of Plaintiff's alter ego arguments. Nor is it limited to the entities which are parties to this lawsuit. Defendant further objects to this Request to the extent it seeks documents unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery permitted by the Court's July 29 Order. Defendant further objects to the term "work papers" as vague and ambiguous. Defendant further objects to the production of quarterly tax filings, audits, statutory reporting and any work product or reports prepared by outside accountants. Defendant further objects to this Request on the grounds that it is duplicative

1    of information already sought by Plaintiff from MindGeek."

2        Request for Production No. 18: "Your monthly, quarterly, and annual

3    bank and investment statements."

4        Response to Request for Production No. 18: "Defendant objects to this

5    Request on the grounds that it is overly broad, unduly burdensome, not

6    reasonably calculated to lead to the discovery of admissible evidence, and not

7    proportional to the needs of the case, particularly to the needs of addressing the

8    Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability

9    of Plaintiff's alter ego arguments. Defendant further objects to this Request to

10    the extent it seeks documents unrelated to personal jurisdiction or outside the

11    scope of the jurisdictional discovery permitted by the Court's July 29 Order.

12    Defendant further objects to the term "investment statements" as vague and

13    ambiguous."

14        Request for Production No. 19: "All documents and communications

15    related to any corporate reorganization by MindGeek and the purposes behind

16    that reorganization."

17        Response to Request for Production No. 19: "Defendant objects to this

18    Request on the grounds that it is overly broad, unduly burdensome, not

19    reasonably calculated to lead to the discovery of admissible evidence, and not

20    proportional to the needs of the case, particularly to the needs of addressing the

21    Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability

22    of Plaintiff's alter ego arguments. Nor is it limited to the entities which are

23    parties to this lawsuit. Defendant further objects to this Request to the extent it

24    seeks documents unrelated to personal jurisdiction or outside the scope of the

25    jurisdictional discovery permitted by the Court's July 29 Order. Defendant

26    further objects that the term "corporate reorganization" is vague and

27    ambiguous. Defendant further objects to this Request to the extent it seeks

28    information protected by the attorney-client privilege or work product doctrine.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1   Defendant further objects to this Request on the grounds that it is duplicative

2   of information already sought by Plaintiff from MindGeek. Defendant further

3   refers Plaintiff to the documents to be produced by MindGeek in response to

4   Request No. 14."

5       Request for Production No. 20: "All documents or communications

6   identifying the various subsidiaries comprising the business of MindGeek."

7       Response to Request for Production No. 20: "Defendant objects to this

8   Request on the grounds that it is overly broad, unduly burdensome, not

9   reasonably calculated to lead to the discovery of admissible evidence, and not

10  proportional to the needs of the case, particularly to the needs of addressing the

11  Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability

12  of Plaintiff's alter ego arguments. Nor is it limited to the entities which are

13  parties to this lawsuit. Defendant further objects to this Request to the extent it

14  seeks documents unrelated to personal jurisdiction or outside the scope of the

15  jurisdictional discovery permitted by the Court's July 29 Order. Defendant

16  further objects that the term "various subsidiaries" is vague and ambiguous.

17  Defendant further objects to this Request to the extent it seeks information

18  protected by the attorney-client privilege or work product doctrine.  Defendant

19  further objects to this Request on the grounds that it is duplicative of

20  information already sought by Plaintiff from MindGeek. Defendant further

21  refers Plaintiff to MindGeek's Response to Interrogatory No. 1 and the

22  documents to be produced by MindGeek in response to Request Nos. 15 and

23  17."

24      Request for Production No. 21: "All documents identifying the directors,

25  managers, members, executives, and personnel of the various subsidiaries

26  comprising the business of MindGeek."

27      Response to Request for Production No. 21: "Defendant objects to this

28  Request on the grounds that it is overly broad, unduly burdensome, not

22                              CASE NO. 21-CV-04920-CJC-ADS

1  reasonably calculated to lead to the discovery of admissible evidence, and not
2  proportional to the needs of the case, particularly to the needs of addressing the
3  Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability
4  of Plaintiff's alter ego arguments. Nor is it limited to the individuals and entities
5  which are parties to this lawsuit. Defendant further objects to this Request to
6  the extent it seeks documents unrelated to personal jurisdiction or outside the
7  scope of the jurisdictional discovery permitted by the Court's July 29 Order.
8  Defendant further objects that this Request is overly broad and unduly
9  burdensome to the extent that it asks him to produce documents identifying all
10 "personnel" of all MindGeek entities for a seven-year period. Defendant further
11 objects that this Request as duplicative of Request Nos. 6, 9 and 10. Defendant
12 further objects that the term "various subsidiaries" is vague and ambiguous.
13 Defendant further objects to this Request to the extent it seeks information
14 protected by the attorney-client privilege or work product doctrine. Defendant
15 further objects to this Request on the grounds that it is duplicative of
16 information already sought by Plaintiff from MindGeek. Defendant further
17 refers Plaintiff to MindGeek's Response to Interrogatory Nos. 1, 4 and 5."

18      Request for Production No. 22: "All documents identifying the
19 companies organized and existing under the laws of multiple jurisdictions
20 where MindGeek has assets, operates businesses, or provides services and the
21 nature of the assets, businesses, or services."

22      Response to Request for Production No. 22: "Defendant objects to this
23 Request on the grounds that it is overly broad, unduly burdensome, not
24 reasonably calculated to lead to the discovery of admissible evidence, and not
25 proportional to the needs of the case, particularly to the needs of addressing the
26 Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability
27 of Plaintiff's alter ego arguments. Nor is it limited to the entities which are
28 parties to this lawsuit. Defendant further objects to this Request to the extent it

23                                           CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1  seeks documents unrelated to personal jurisdiction or outside the scope of the

2  jurisdictional discovery permitted by the Court's July 29 Order. Defendant

3  further objects that this Request is overly broad and unduly burdensome to the

4  extent that it asks him to produce documents identifying all "assets, businesses

5  or services" of all MindGeek entities for a seven-year period. Defendant further

6  objects to this Request to the extent it seeks information protected by the

7  attorney-client privilege or work product doctrine. Defendant further objects to

8  this Request on the grounds that it is duplicative of information already sought

9  by Plaintiff from MindGeek. Defendant further refers Plaintiff to MindGeek's

10  Response to Interrogatory No. 1 and the documents to be produced by

11  MindGeek in response to Request Nos. 15 and 17."

12      Request No. 23: "All documents identifying the entities providing

13  services to MG Freesites LTD."

14      Response to Request for Production No. 23: "Defendant objects to this

15  Request on the grounds that it is overly broad, unduly burdensome, not

16  reasonably calculated to lead to the discovery of admissible evidence, and not

17  proportional to the needs of the case, particularly to the needs of addressing the

18  Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability

19  of Plaintiff's alter ego arguments. Nor is it limited to the entities which are

20  parties to this lawsuit. Defendant further objects to this Request to the extent it

21  seeks documents unrelated to personal jurisdiction or outside the scope of the

22  jurisdictional discovery permitted by the Court's July 29 Order. Defendant

23  further objects to this Request to the extent it seeks information protected by

24  the attorney-client privilege or work product doctrine. Defendant further

25  objects to this Request on the grounds that it is duplicative of information

26  already sought by Plaintiff from MindGeek. Defendant further refers Plaintiff

27  to the documents to be produced by MindGeek in response to Request No. 18."

28      Request for Production No. 24: "All documents identifying the bank

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

accounts, services, payments, written agreements, third parties providing transfer pricing studies, pricing studies and price ranges, accounting, and tax determinations."

Response to Request for Production No. 24: "Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability of Plaintiff's alter ego arguments. Nor is it limited to the entities which are parties to this lawsuit. Defendant further objects to this Request to the extent it seeks documents unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery permitted by the Court's July 29 Order. Defendant further objects that this Request is vague and ambiguous to the extent that it seeks documents identifying "bank accounts, services, payments" and other items without limitation or description. Defendant further objects to this Request to the extent it seeks information protected by the attorney-client privilege or work product doctrine. Defendant further objects to this Request on the grounds that it is duplicative of information already sought by Plaintiff from MindGeek. Defendant further refers Plaintiff to MindGeek's Response to Interrogatory No. 1 and the documents to be produced by MindGeek in response to Request No. 19."

Request for Production No. 25: "All audited financial statements and all related communications with auditors regarding the same."

Response to Request for Production No. 25: "Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability

of Plaintiff's alter ego arguments. Nor is it limited to the entities which are parties to this lawsuit. Defendant further objects to this Request to the extent it seeks documents unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery permitted by the Court's July 29 Order. Defendant further objects that this Request is vague and ambiguous to the extent that it seeks "audited financial statements and all related communications with auditors" without limitation or description. Defendant further objects to the term "regarding the same" as vague and ambiguous. Defendant further objects to this Request on the grounds that it is duplicative of information already sought by Plaintiff from MindGeek. Defendant further refers Plaintiff to MindGeek's Response to Interrogatory No. 6 and the documents to be produced by MindGeek in response to Request No. 20."

Request for Production No. 26: "All documents identifying the distinct legal entities of MindGeek and any of the MindGeek Related Entities."

Response to Request for Production No. 26: "Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability of Plaintiff's alter ego arguments. Nor is it limited to the entities which are parties to this lawsuit. Defendant further objects to this Request to the extent it seeks documents unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery permitted by the Court's July 29 Order. Defendant further objects to this Request on the grounds that it is duplicative of information already sought by Plaintiff from MindGeek. Defendant further refers Plaintiff to MindGeek's Response to Interrogatory No. 1 and the documents to be produced by MindGeek in response to Request Nos. 15, 17 and 21."

1    Request for Production No. 27: All documents related to the support

2    services MG Global Entertainment.

3    Response to Request for Production No. 27: "Defendant objects to this

4    Request on the grounds that it is overly broad, unduly burdensome, not

5    reasonably calculated to lead to the discovery of admissible evidence, and not

6    proportional to the needs of the case, particularly to the needs of addressing the

7    Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability

8    of Plaintiff's alter ego arguments. Defendant further objects to this Request to

9    the extent it seeks documents unrelated to personal jurisdiction or outside the

10   scope of the jurisdictional discovery permitted by the Court's July 29 Order.

11   Defendant further objects that this Request is vague and ambiguous to the

12   extent that it seeks documents related to "the support services MG Global

13   Entertainment." Defendant further objects to this Request on the grounds that

14   it is duplicative of information already sought by Plaintiff from MindGeek.

15   Defendant further refers Plaintiff to MindGeek's Response to Interrogatory No.

16   1 and the documents to be produced by MindGeek in response to Request No.

17   22."

18   Request for Production No. 28: "All documents related to the services

19   provided by 9219-1568 Quebec Inc."

20   Response to Request for Production No. 28: "Defendant objects to this

21   Request on the grounds that it is overly broad, unduly burdensome, not

22   reasonably calculated to lead to the discovery of admissible evidence, and not

23   proportional to the needs of the case, particularly to the needs of addressing the

24   Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability

25   of Plaintiff's alter ego arguments. Defendant further objects to this Request to

26   the extent it seeks documents unrelated to personal jurisdiction or outside the

27   scope of the jurisdictional discovery permitted by the Court's July 29 Order.

28   Defendant further objects that this Request is vague and ambiguous to the

27                              CASE NO. 21-CV-04920-CJC-ADS

extent that it seeks documents related to "support services provided by 9219-1568 Quebec, Inc." without identifying to whom such services were provided or limiting the request in any way. Defendant further objects to this Request on the grounds that it is duplicative of information already sought by Plaintiff from MindGeek. Defendant further refers Plaintiff to MindGeek's Response to Interrogatory No. 1 and the documents to be produced by MindGeek in response to Request No. 23."

Request for Production No. 29: "All documents relating to MindGeek related payments, investments, or loans to, in, or for any personal affairs, expenses, entities, businesses, real estate, or investments related to You or any of the Individual Defendants, or any of their family members or entities in which either You or a family member holds a direct or indirect interest."

Response to Request for Production No. 29: "Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability of Plaintiff's alter ego arguments. Nor is it limited to the entities that are parties to this lawsuit. Defendant further objects to this Request to the extent it seeks documents unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery permitted by the Court's July 29 Order. Defendant further objects to this Request as duplicative of Request No. 3. Defendant further objects to this Request on the grounds that it is duplicative of information already sought by Plaintiff from MindGeek. Defendant further refers Plaintiff to the documents to be produced by MindGeek in response to Request No. 24."

Request for Production No. 30: "All documents related to the purported resignation of Feras Antoon and David Tassillo as CEO and COO of MindGeek

respectively, including, but not limited to, any documents related to any investigation, allegations, or reports of their using Mindgeek assets and monies for their personal affairs, investments, or businesses."

Response to Request for Production No. 30: "Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability of Plaintiff's alter ego arguments. Nor is it limited to the entities that are parties to this lawsuit. Defendant further objects to this Request to the extent it seeks documents unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery permitted by the Court's July 29 Order. Defendant further objects that this Request seeks documents outside the Relevant Time Period. Defendant further objects to this Request to the extent it seeks information protected by the attorney-client privilege or work product doctrine. Defendant further objects to this Request on the grounds that it is duplicative of information already sought by Plaintiff from MindGeek."

Request for Production No. 32: "All contact lists maintained by You or any of the Individual Defendants as well as documents sufficient to show all cell and other phone numbers and messaging services used by each individual."

Response to Request for Production No. 32: "Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability of Plaintiff's alter ego arguments. Defendant further objects to this Request to the extent it seeks documents unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery permitted by the Court's July 29 Order.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Defendant further objects that this Request seeks documents more appropriately sought from other parties.

Subject to and without waiving the foregoing objections, Defendant refers to and incorporates his response to Interrogatory No. 6 and agrees to meet and confer should there be remaining questions on this topic."

Request for Production No. 33: "All documents or communications identifying, depicting, explaining, or describing any programs or technology MindGeek acquired, employed, used, or considered to moderate, monitor, format, optimize, filter, review, screen, or remove content on its websites, including the dates such technology was acquired, employed, or considered.

Response to Request for Production No. 33: "Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability of Plaintiff's alter ego arguments. Defendant further objects to this Request to the extent it seeks documents unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery permitted by the Court's July 29 Order. The programs and technologies used by MindGeek regarding CSAM, while arguably relevant to the underlying claims in this action, are unrelated to the issue of personal jurisdiction over Mr. Bergmair or the viability of Plaintiff's alter ego arguments. Defendant further objects to this Request to the extent it seeks information protected by the attorney-client privilege or work product doctrine. Defendant further objects to this Request on the grounds that it is duplicative of information already sought by Plaintiff from MindGeek."

Request for Production No. 34: "All documents or communications related to MindGeek's policies, manuals, practices, processes, and rules for moderating, monitoring, formatting, optimizing, filtering, reviewing,

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    screening, or removing content on its platforms and websites, including all

2    prohibited words, phrases, categories, and "genres" and all processes and

3    reports concerning search engine optimization of such content."

4        <u>Response to Request for Production No. 34</u>: "Defendant objects to this

5    Request on the grounds that it is overly broad, unduly burdensome, not

6    reasonably calculated to lead to the discovery of admissible evidence, and not

7    proportional to the needs of the case, particularly to the needs of addressing the

8    Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability

9    of Plaintiff's alter ego arguments. Defendant further objects to this Request to

10   the extent it seeks documents unrelated to personal jurisdiction or outside the

11   scope of the jurisdictional discovery permitted by the Court's July 29 Order.

12   Defendant further objects that this Request is not limited to Pornhub, which is

13   the only tubesite on which Plaintiff alleges content depicting her was uploaded.

14   The policies, practices and procedures used by MindGeek regarding CSAM,

15   while arguably relevant to the underlying claims in this action, are unrelated to

16   the issue of personal jurisdiction over Mr. Bergmair or the viability of

17   Plaintiff's alter ego arguments. Defendant further objects to this Request to the

18   extent it seeks information protected by the attorney-client privilege or work

19   product doctrine. Defendant further objects to this Request on the grounds that

20   it is duplicative of information already sought by Plaintiff from MindGeek."

21       <u>Request for Production No. 35</u>: "All documents and communications

22   describing MindGeek's policies and procedures for preserving hard copy and

23   electronic documents and content."

24       <u>Response to Request for Production No. 35</u>: "Defendant objects to this

25   Request on the grounds that it is overly broad, unduly burdensome, not

26   reasonably calculated to lead to the discovery of admissible evidence, and not

27   proportional to the needs of the case, particularly to the needs of addressing the

28   Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability

of Plaintiff's alter ego arguments. Defendant further objects to this Request to the extent it seeks documents unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery permitted by the Court's July 29 Order. Defendant further objects that this request seeks information protected by the attorney-client privilege or work product doctrine. Defendant further objects to this Request to the extent it seeks information protected by the attorney-client privilege or work product doctrine. Defendant further objects to this Request on the grounds that it is duplicative of information already sought by Plaintiff from MindGeek."

Request for Production No. 36: "All documents and communications reflecting rosters, schedules, training materials, performance reviews and metrics for personnel or outside contractors or vendors involved in moderating, formatting, optimization, filtering, screening, or removing content from MindGeek's platforms and websites."

Response to Request for Production No. 36: "Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability of Plaintiff's alter ego arguments. Defendant further objects to this Request to the extent it seeks documents unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery permitted by the Court's July 29 Order. Defendant further objects that this Request is not limited to Pornhub, which is the only tubesite on which Plaintiff alleges content depicting her was uploaded. Defendant further objects to this Request as overly broad, unduly burdensome and not proportional to the needs of the case to the extent it seeks documents regarding "personnel or outside contractors or vendors" who did not perform any work related to content depicting Plaintiff. Defendant further objects that

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

the term "metrics" is vague and ambiguous. The training materials used regarding moderation and review of content on Pornhub, while arguably relevant to the underlying claims in this action, are unrelated to the issue of personal jurisdiction over Mr. Bergmair or the viability of Plaintiff's alter ego arguments. Defendant further objects to this Request on the grounds that it is duplicative of information already sought by Plaintiff from MindGeek."

Request for Production No. 37: "All documents and communications identifying all content categories, "genres," or similar descriptors MindGeek has included, recommended, or offered to users of its platforms and websites."

Response to Request for Production No. 37: "Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability of Plaintiff's alter ego arguments. Defendant further objects to this Request to the extent it seeks documents unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery permitted by the Court's July 29 Order. Defendant further objects that this Request is not limited to Pornhub, which is the only tubesite on which Plaintiff alleges content depicting her was uploaded. Defendant further objects to the terms "'genres' or similar descriptors" as vague and ambiguous. The categories of content available on Pornhub are unrelated to the issue of personal jurisdiction over Mr. Bergmair or the viability of Plaintiff's alter ego arguments. Defendant further objects to this Request on the grounds that it is duplicative of information already sought by Plaintiff from MindGeek."

Request for Production No. 38: "All documents consisting of, or reflecting, reports, communications, data, or actions related to content reviewed or screened by any technology, programs, or internal or external personnel

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    concerning actual or suspected CSAM, nonconsensual, prohibited, or illegal

2    content."

3        Response to Request for Production No. 38: "Defendant objects to this

4    Request on the grounds that it is overly broad, unduly burdensome, not

5    reasonably calculated to lead to the discovery of admissible evidence, and not

6    proportional to the needs of the case, particularly to the needs of addressing the

7    Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability

8    of Plaintiff's alter ego arguments. Defendant further objects to this Request to

9    the extent it seeks documents unrelated to personal jurisdiction or outside the

10   scope of the jurisdictional discovery permitted by the Court's July 29 Order.

11   Defendant further objects that this Request is not limited to Pornhub, which is

12   the only tubesite on which Plaintiff alleges content depicting her was uploaded.

13   Defendant further objects to this Request to the extent it is not limited to

14   documents related to suspected CSAM. Defendant further objects to the terms

15   "actions" and "outside personnel" as vague and ambiguous. Defendant further

16   objects to this Request to the extent it seeks documents concerning any content

17   other than that depicting Plaintiff. Documents related to the review and

18   moderation of content depicting Plaintiff, while arguably relevant to the

19   underlying claims in this action, are unrelated to the issue of personal

20   jurisdiction over Mr. Bergmair or the viability of Plaintiff's alter ego

21   arguments. Defendant further objects to this Request to the extent it seeks

22   information protected by the attorney-client privilege or work product doctrine.

23   Defendant further objects to this Request on the grounds that it is duplicative

24   of information already sought by Plaintiff from MindGeek."

25       Request for Production No. 39: "All documents concerning complaints,

26   reports, communications, and requests concerning CSAM, non-consensual,

27   prohibited, or illegal content on any MindGeek platform or website, including

28   all documents and communications with or concerning any associated

34    CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    investigation, actions, and internal and external communications concerning

2    the same."

3        <u>Response to Request for Production No. 39</u>: "Defendant objects to this

4    Request on the grounds that it is overly broad, unduly burdensome, not

5    reasonably calculated to lead to the discovery of admissible evidence, and not

6    proportional to the needs of the case, particularly to the needs of addressing the

7    Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability

8    of Plaintiff's alter ego arguments. Defendant further objects to this Request to

9    the extent it seeks documents unrelated to personal jurisdiction or outside the

10   scope of the jurisdictional discovery permitted by the Court's July 29 Order.

11   Defendant further objects that this Request is not limited to Pornhub, which is

12   the only tubesite on which Plaintiff alleges content depicting her was uploaded.

13   Defendant further objects to the terms "actions" as vague and ambiguous.

14   Defendant further objects to this Request to the extent it seeks documents

15   concerning any content other than that depicting Plaintiff. Documents related

16   to reports and investigations of content depicting Plaintiff, while arguably

17   relevant to the underlying claims in this action, are unrelated to the issue of

18   personal jurisdiction over Mr. Bergmair or the viability of Plaintiff's alter ego

19   arguments. Defendant further objects to this Request to the extent it seeks

20   information protected by the attorney-client privilege or work product doctrine.

21   Defendant further objects to this Request on the grounds that it is duplicative

22   of information already sought by Plaintiff from MindGeek."

23       <u>Request for Production No. 40</u>: "All documents and communications

24   reflecting processes, standards, and technologies that MindGeek employed to

25   prevent the presence of child pornography, CSAM, non-consensual, prohibited,

26   or illegal content on its platforms or websites; the dates on which such

27   processes, standards, and technologies were employed; and the people most

28   knowledgeable about each."

35

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    Response to Request for Production No. 40: "Defendant objects to this

2    Request on the grounds that it is overly broad, unduly burdensome, not

3    reasonably calculated to lead to the discovery of admissible evidence, and not

4    proportional to the needs of the case, particularly to the needs of addressing the

5    Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability

6    of Plaintiff's alter ego arguments. Defendant further objects to this Request to

7    the extent it seeks documents unrelated to personal jurisdiction or outside the

8    scope of the jurisdictional discovery permitted by the Court's July 29 Order.

9    Defendant further objects that this Request is not limited to Pornhub, which is

10   the only tubesite on which Plaintiff alleges content depicting her was uploaded.

11   Defendant further objects to this Request to the extent it seeks documents

12   concerning any content other than that depicting Plaintiff. Defendant further

13   objects to the extent the Request is not limited to suspected CSAM. Documents

14   related to processes, procedures and standards related to suspected CSAM on

15   Pornhub, and to content depicting Plaintiff, while arguably relevant to the

16   underlying claims in this action, are unrelated to the issue of personal

17   jurisdiction over Mr. Bergmair or the viability of Plaintiff's alter ego

18   arguments. Defendant further objects to this Request to the extent it seeks

19   information protected by the attorney-client privilege or work product doctrine.

20   Defendant further objects to this Request on the grounds that it is duplicative

21   of information already sought by Plaintiff from MindGeek."

22   Request for Production No. 41: "All documents and communications

23   reflecting policies, practices, rules, guidelines, programs, or plans concerning

24   the moderation, monitoring, review, formatting, analysis or search and social

25   media use and optimization of content on MindGeek platforms and websites,

26   including, but not limited to, with respect to content uploaded with associated

27   languages other than English."

28   Response to Request for Production No. 41: "Defendant objects to this

36    CASE NO. 21-CV-04920-CJC-ADS

1    Request on the grounds that it is overly broad, unduly burdensome, not

2    reasonably calculated to lead to the discovery of admissible evidence, and not

3    proportional to the needs of the case, particularly to the needs of addressing the

4    Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability

5    of Plaintiff's alter ego arguments. Defendant further objects to this Request to

6    the extent it seeks documents unrelated to personal jurisdiction or outside the

7    scope of the jurisdictional discovery permitted by the Court's July 29 Order.

8    Defendant further objects that this Request is not limited to Pornhub, which is

9    the only tubesite on which Plaintiff alleges content depicting her was uploaded.

10    Defendant further objects to this Request to the extent it seeks documents

11    concerning any content other than that depicting Plaintiff. Defendant further

12    objects to the extent the Request seeks documents related to "content uploaded

13    with associated languages other than English" since Plaintiff does not allege

14    that her content was uploaded with any associated language other than English.

15    Defendant further objects to this Request to the extent it seeks information

16    protected by the attorney-client privilege or work product doctrine. Defendant

17    further objects to this Request on the grounds that it is duplicative of

18    information already sought by Plaintiff from MindGeek."

19        Request for Production No. 42: "All documents and communications

20    concerning MindGeek's policies, practices, and compliance related to 18

21    U.S.C. § 2257."

22        Response to Request for Production No. 42: "Defendant objects to this

23    Request on the grounds that it is overly broad, unduly burdensome, not

24    reasonably calculated to lead to the discovery of admissible evidence, and not

25    proportional to the needs of the case, particularly to the needs of addressing the

26    Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability

27    of Plaintiff's alter ego arguments. Defendant further objects to this Request to

28    the extent it seeks documents unrelated to personal jurisdiction or outside the

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

scope of the jurisdictional discovery permitted by the Court's July 29 Order. Defendant further objects that this Request is not limited to Pornhub, which is the only tubesite on which Plaintiff alleges content depicting her was uploaded. Defendant further objects to this Request to the extent it seeks documents concerning any content other than that depicting Plaintiff. Documents related to the policies and procedures for studios to verify the ages of performers are not relevant to the underlying claims in this action, or to the issue of personal jurisdiction over Mr. Bergmair or to the viability of Plaintiff's alter ego arguments. Defendant further objects to this Request to the extent it seeks information protected by the attorney-client privilege or work product doctrine. Defendant further objects to this Request on the grounds that it is duplicative of information already sought by Plaintiff from MindGeek."

Request for Production No. 46: "Any internal or external expert or consultant reports provided to MindGeek concerning its technology, processes, policies, and practices concerning CSAM, nonconsensual, prohibited, or illegal content."

Response to Request for Production No. 46: "Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability of Plaintiff's alter ego arguments. Defendant further objects to this Request to the extent it seeks documents unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery permitted by the Court's July 29 Order. Defendant further objects to this Request to the extent it is not limited to documents related to suspected CSAM. Defendant further objects to this Request to the extent it seeks information protected by the attorney-client privilege or work product doctrine. Defendant further objects to this Request

on the grounds that it is duplicative of information already sought by Plaintiff from MindGeek."

Request for Production No. 49: "All documents or communications concerning any internal or external review of MindGeek content for CSAM, non-consensual, prohibited, or illegal content, including, but not limited to, the review undertaken beginning in or about the end of 2020 and the beginning of 2021 and the review that led to the report to NCMEC that was described in the June 20, 2022 New Yorker magazine."

Response to Request for Production No. 49: "Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability of Plaintiff's alter ego arguments. Defendant further objects to this Request to the extent it seeks documents unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery permitted by the Court's July 29 Order. Defendant further objects that this Request is not limited to Pornhub, the only tubesite on which Plaintiff alleges content depicting her was uploaded, and to suspected CSAM. Defendant further objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it seeks documents concerning content other than that depicting Plaintiff. Defendant further objects to this Request to the extent it seeks information protected by the attorney-client privilege or work product doctrine. Defendant further objects to this Request on the grounds that it is duplicative of information already sought by Plaintiff from MindGeek."

Request for Production No. 52: "All documents concerning communications with the media, news organizations, journalists, legislators, law enforcement, regulators, quasi-governmental agencies, media relations

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

companies, the Free Speech Coalition, 5wPR, or on social media platforms either directly, through aliases, or through agents, surrogates, or other social media participants concerning CSAM, non-consensual, prohibited, or illegal content on MindGeek's platforms or websites or internal or external news, media or other reports, allegations, or complaints regarding the same."

Response to Request for Production No. 52: "Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Bergmair, or to the viability of Plaintiff's alter ego arguments. Nor is it limited to the entities that are parties to this action. Defendant further objects to this Request to the extent it seeks documents unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery permitted by the Court's July 29 Order. Defendant further objects that this Request is not limited to Pornhub, the only tubesite on which Plaintiff alleges content depicting her was uploaded. Defendant further objects that this Request is not limited to documents related to suspected CSAM. Defendant further objects to this Request on the grounds that it is duplicative of information already sought by Plaintiff from MindGeek."

**B.**  **Interrogatories in Dispute**

Interrogatory No. 2: "Describe in detail each transaction during the Relevant Time Period in which ownership, shares, indebtedness, secured interests, options, derivatives, or other capital related transactions occurred involving a MindGeek Related Entity, and identify the direct and indirect participants in those transactions."

Response to Interrogatory No. 2: "Bergmair objects to this Interrogatory as vague, overly broad, unduly burdensome and not proportional to the needs of the case. Bergmair also objects to this Interrogatory as seeking information

beyond the scope of jurisdictional discovery authorized by the Court and not reasonably calculated to lead to the discovery of relevant evidence on the issue of personal jurisdiction. Bergmair also objects to this Interrogatory because it is unclear what question it poses. The Interrogatory is confusingly and incoherently worded since, on its face, it seeks a description of "transaction[s] … in which ownership, shares, indebtedness, [etc.] occurred." Similarly, the Interrogatory's vague and ambiguous reference to "indirect participants" in such imprecisely-defined transactions compounds the ambiguity of the Interrogatory.

Subject to and without waiving the above General and Specific Objections, Bergmair responds that, ███████████████████████ ████████████████████████████████████████████ ████████████████████████████."

Interrogatory No. 3: "Identify the date, participants, and content for every presentation or communication of financial or other economic performance to investors, lenders, or others with direct or indirect financial interests in any MindGeek Related Entity."

Response to Interrogatory No. 3: "Bergmair objects to this Interrogatory as overly broad, unduly burdensome and not proportional to the needs of the case since it calls for virtually all communications, including routine emails, which contain financial information related to the hundreds of entities defined to be MindGeek Related Entities for a 7-year period. Bergmair also objects to this Interrogatory as seeking information beyond the scope of jurisdictional discovery authorized by the Court and not reasonably calculated to lead to the discovery of relevant evidence on the issue of personal jurisdiction. Bergmair also objects to this Interrogatory's use of the term "indirect financial interests" as vague and ambiguous.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Subject to and without waiving the above General and Specific Objections, Bergmair responds that ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████.”

Interrogatory No. 4: "Describe in detail all direct or indirect jurisdictional contacts within the relevant jurisdictions, *i.e.* the United States and California, that You or Your agents, or any of the MindGeek Related Entities and their owners, executives, and employees, have or had during the Relevant Time Period, including but not limited to, offices, residences, and real estate located in the relevant jurisdictions; personnel or vendors employed, retained, or paid located in the relevant jurisdictions; trips to the relevant jurisdictions; and revenues, profits, expenses, taxes earned or paid in or from the relevant jurisdictions; and communications or business relationships with, to, or in either of the relevant jurisdictions."

Response to Interrogatory No. 4: "Bergmair objects to this Interrogatory as vague, overly broad, unduly burdensome and not proportional to the needs of the case. Bergmair interprets the Interrogatory's request regarding "jurisdictional contacts" to be only those related to MindGeek business. To the extent this Interrogatory seeks information beyond this, Bergmair objects to this Interrogatory as seeking information beyond the scope of jurisdictional discovery authorized by the Court and not reasonably calculated to lead to the discovery of relevant evidence on the issue of personal jurisdiction.

Subject to and without waiving the above General and Specific Objections, Bergmair responds ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1     ████████████████████████████████████████.”

2     <u>Interrogatory No. 6</u>: "Identify all social media accounts, email accounts,

3 cell numbers, text, or other communications services or applications used by

4 the Individual Defendants directly or through any MindGeek Related Entity

5 during the Relevant Time Period."

6     <u>Response to Interrogatory No. 6</u>: "Bergmair objects to this Interrogatory

7 as vague, overly broad, unduly burdensome and not proportional to the needs

8 of the case. Bergmair also objects to this Interrogatory as seeking information

9 beyond the scope of jurisdictional discovery authorized by the Court and not

10 reasonably calculated to lead to the discovery of relevant evidence on the issue

11 of personal jurisdiction.

12     Subject to and without waiving the above General and Specific

13 Objections, Bergmair responds that, ██████████████████████████

14 ████████████████████████████████████████████

15 ████████████████████████████████████

16 ████████████████████████████████████████████

17 ████████████████████████████████████

18 ████████████████.”

19 **III.**   **<u>PLAINTIFF'S POSITION</u>**

20     **A.**   **<u>Plaintiff's Motion To Compel</u>**

21     Pursuant to the Court's July 29, 2022 Order, Plaintiff served Bergmair with her

22 First Set of Interrogatories on August 17, 2022 and her First Requests for Production

23 of Documents on September 20, 2022. *See* Doyle Decl., Exhibits 1 and 2. On October

24 17, 2022 and October 20, 2022, Bergmair served objections and responses to

25 Plaintiff's ROGs and RFPs, respectively, *see* Doyle Decl., Exhibits 4 and 5. Bergmair

26 failed to respond substantively.[2]

27 ────────────────────

28 [2] Bergmair initially responded to Plaintiff's ROGs on September 22, 2022, but that response was heavily redacted because a protective order had not yet been entered in

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Throughout the entire time period in which Plaintiff's CSAM was uploaded, optimized, disseminated, and capitalized on by the defendants, ████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████, including several MindGeek entities that do not contest personal jurisdiction in this case.  Doyle Decl., Exhibit 4, Resp. to ROG No. 1.  Despite this, Bergmair has refused to conduct reasonable searches for, or to produce, relevant communications, information, and documents pertaining to his role within the MindGeek enterprise of which he was majority owner and that are relevant to evaluating jurisdiction.  *See* Doyle Decl. at 3, ¶ 10.

## 1. <u>Bergmair Cannot Avoid Discovery Just Because the MindGeek Entity Defendants May Provide Discovery</u>

Bergmair objects to almost every Request on the grounds that the information sought is "duplicative of information already sought by Plaintiff from the MindGeek Corporate Defendants" or more easily obtained from another party.  *See* Doyle Decl. Exh. 5, Def. Bergmair's Responses to RFP Nos. 1-17, 19-31, 33-54.  But this Court previously held that parties are not relieved of producing responsive documents because other defendants may produce them.  Dkt. 211, at 3-4 (rejecting the argument that a non-party was relieved of its duty to produce documents that MindGeek might possess but has not produced); *see also Anson v. Weinstein*, No. CV 17-8360-GW (KSX), 2019 WL 6655259, at *4 (C.D. Cal. Aug. 26, 2019) (a party "is not absolved of [his or her] own obligation to produce the responsive materials regardless of whether other parties may also produce similar or even identical documents.")  The

_____

the case.  *See* Exhibit 3.  Plaintiff therefore did not receive Bergmair's actual responses to Plaintiff's ROGs until Bergmair provided an unredacted interrogatory response on October 17, 2022, with responses designated as "Confidential" pursuant to the protective order.  Plaintiff has filed Bergmair's response in an unredacted form under seal, pursuant to the Stipulated Protective Order, Dkt. 187.  Bergmair's response to Plaintiff's production requests contained no such designation and is filed in its original form.

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    Court should similarly reject Bergmair's objection.

2    **2.    Bergmair Refuses to Produce Documents and**
3    **Communications Concerning Plaintiff**

4    RFP No. 1 seeks production of all documents and communications concerning
5    Plaintiff that are in Bergmair's possession, custody, or control.  Bergmair sidesteps
6    this request by recharacterizing it as seeking only his communications *with* Plaintiff
7    (and none apparently exist), claiming that his communications *concerning* Plaintiff
8    are not relevant to this Court's jurisdictional analysis.

9    Documents and communications concerning Plaintiff, who is based in
10    California, will reveal the extent to which Bergmair communicated about Plaintiff,
11    directed actions to be taken with respect to Plaintiff's videos, and played a role in
12    optimizing and monetizing Plaintiff's CSAM.  The role that Bergmair played in the
13    solicitation, optimization, dissemination, and capitalization of Plaintiff's CSAM is
14    highly relevant to this Court's jurisdictional analysis.  *See Allstar Mktg. Grp., LLC v.*
15    *Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1120 (C.D. Cal. 2009) ("Courts have
16    . . . found a corporate officer's contacts on behalf of a corporation sufficient to subject
17    the officer to personal jurisdiction where the officer is a primary participant in the
18    alleged wrongdoing or had control of, and direct participation in the alleged
19    activities.") (citing cases).  Thus, Bergmair's communications about this California-
20    based Plaintiff, the monetization of Plaintiff's CSAM, and her efforts to have that
21    content removed is relevant to the exercise of jurisdiction over Bergmair.  Bergmair
22    should be ordered to produce all communications and documents concerning Plaintiff.
23    / / /

24    **3.    Bergmair Disregards this Court's Rulings Concerning the**
25    **Permissible Scope of Jurisdictional Discovery**

26    Bergmair recites the same boilerplate objections to several of Plaintiff's
27    discovery requests.  One of those objections is that the requests seek "information
28    unrelated to personal jurisdiction or outside the scope of the jurisdictional discovery

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO**
**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1  permitted by the Court's July 29 Order."  But Bergmair is simply ignoring this Court's
2  clear direction concerning the permissible scope of jurisdictional discovery.

3       This Court concluded that "Plaintiff has alleged facts bearing on the MindGeek
4  Individual Defendants direction of specific policies pursuant to which Plaintiff was
5  harmed." (Dkt. 167, at 7; *see also id.* at 5 ("[T]here are various allegations throughout
6  the FAC that identify specific MindGeek policies or practices—which were applied
7  to Plaintiff and her videos—that the MindGeek Individual Defendants allegedly
8  directed or implemented.").)   The Court further explained that "[i]t is entirely
9  plausible that at least one of the MindGeek Individual Defendants—high up as they
10  were in the MindGeek hierarchy—had substantial involvement in the practices and
11  policies of one of MindGeek's major lines of business that harmed Plaintiff." (*Id.* at
12  7.)  For example, the Court declared that "operating Pornhub and other MindGeek
13  sites in a manner that maximizes the profitability of child porn" would qualify as
14  "[j]urisdictionally relevant conduct."  (Dkt. 167, at 3 n.2; *see also id.* at 5 n.5
15  (recognizing that it would be jurisdictionally relevant if "one or all of the MindGeek
16  Individual Defendants promulgated a policy of reuploading child porn like Plaintiff's
17  videos, to MindGeek's websites after taking them down")).

18       Plaintiff therefore propounded several requests seeking documents that would
19  reveal Bergmair's role in setting policies concerning the uploading and monetization
20  of CSAM on Pornhub and other MindGeek sites.  Plaintiff's RFP Nos. 5, 38-42, 46,
21  49, and 52 seek documents and communications between Defendant Bergmair,
22  others, and any Defendant "related to the presence of any CSAM" on MindGeek sites,
23  the reporting of CSAM, and MindGeek's policies when CSAM is identified.  Request
24  Nos. 10 and 33-42 concern MindGeek's practices, policies, procedures, and
25  technologies used for monitoring, moderating, and removing material from its
26  websites.  Finally, Request No. 30 seeks documents and communications concerning
27  the putative resignation of the CEO and COO of entities Bergmair owns and controls,
28  co-defendants Feras Antoon and David Tassillo, both of whom spent more than a

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1   decade in leadership positions with MindGeek, resigned amid public scrutiny

2   concerning allegations that the MindGeek Entities, and their officers, directors, and

3   employees, intentionally commercialized and monetized illegal CSAM and

4   stonewalled efforts to have the content removed, including in the case of Plaintiff.

5        These Requests collectively seek, among other things, information related to

6   Bergmair's personal involvement in the adoption of policies and procedures

7   concerning the handling of CSAM, and Bergmair's role in controlling and directing

8   the various MindGeek entities' operations, particularly as it concerns search engine

9   optimization (SEO) and CSAM, all of which the Court has held is relevant to its

10  jurisdictional analysis.  (Dkt. 167, at 7).  Documents responsive to the requests would

11  also reveal Bergmair's knowledge and awareness of the prevalence and intentional

12  proliferation of CSAM on MindGeek's tubesites, as well as the role that Bergmair

13  played in the implementation of the policies that allowed for the proliferation of

14  CSAM on MindGeek's tubesites, all of which are relevant jurisdictional

15  considerations.  Bergmair has refused to produce any documents in response to these

16  requests.

17       Along similar lines, the Court was clear that "[w]here the money flows in the

18  MindGeek web, which may relate to ownership of the porn sites that generate revenue,

19  matters to the Court's jurisdictional analysis."[3]  (Dkt. 167, at 3 n.2).  The Court also

20  recognized that Plaintiff alleged that "the MindGeek Entity Defendants are each

21  controlled by the MindGeek Individual Defendants, that the MindGeek Individual

22

_____

23  [3] The Court, in recognition of Plaintiff's allegations that her videos were pushed to
    MindGeek's other tubesites consistent with MindGeek's pervasive practice,
24  recognized that "[j]urisdictionally relevant conduct" was not limited to Pornhub but
    included operation of MindGeek's other sites as well in a manner that maximized the
25  profitability of child porn.  (Dkt. 167, at 3 n.2; *see also id.* at 5 n.5).  Therefore,
    Bergmair's repeated effort to limit the scope of his responses to Pornhub should be
26  rejected.  (Dkt. 211, at 5 (agreeing with Plaintiff that requests regarding "the [true]
    ownership of **porn sites** that generated revenue from Plaintiff's child sexual abuse
27  material" is relevant to the Court's jurisdictional analysis) (emphasis added)).
28

47                          CASE NO. 21-CV-04920-CJC-ADS
**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Defendants appoint sham directors to the entities which they control in order to impede investigations, and that the MindGeek Entity Defendants divert money, possibility to the MindGeek Individual Defendants" (*id.* at 6) and that "[t]his alleged flow of money is . . . jurisdictionally relevant" (*id.* at 6 n.6).

In accordance with this guidance, Plaintiff propounded specific requests concerning the relationship and purpose of the various MindGeek entities, and their corporate structure and ownership, as well as Bergmair's ownership interests in those entities and his receipt of funds from those entities. *See, e.g.*, RFP Request No. 8 (seeking documents related to Defendant Bergmair's beneficial ownership of or economic interest in any MindGeek Related Entity or MindGeek intellectual property); RFP Request No. 15 (seeking documents related to any transactions involving the ownership loans to, secured interest in, or intellectual property or other rights related to MindGeek); RFP Request No. 29 (seeking documents concerning payments, investments, or loans to or from any MindGeek Entity or the Individual Defendants); ROG No. 2 (seeking information on ownership, shares, and capital transactions); RFP Request No. 2 (seeking documents and communications concerning Bergmair's affiliation with any MindGeek Related Entity); RFP Request No. 3 (seeking documents and communications concerning income, revenue, or other monies that Bergmair received from any MindGeek Related Entity) *see also* RFP Request No. 7 (seeking documents concerning business relationships with various entities, such as Colbeck Capital, JP Morgan Chase, Fortress Investment Group); RFP Request No. 13 (seeking documents concerning MindGeek entity and tubesite profits); RFP Request No. 14 and ROG No. 3 (seeking documents concerning or provided to investors in any MindGeek Related Entity); RFP Request No. 16 (seeking, among other things, financials, ledgers, and shareholder lists); RFP Request No. 17 (seeking among other things, tax filings, audits, financials, and accounting reports); RFP Request No. 18 (seeking "Your monthly, quarterly, and annual bank and investment statements"); RFP Request No. 19 (seeking documents related to any

corporate reorganization by MindGeek); Request No. 20 (seeking documents identifying MindGeek subsidiaries); RFP No. 21 (seeking documents identifying directors, managers, members, executives, and personnel of MindGeek subsidiaries); RFP Request No. 24 (seeking information on, among other things, MindGeek bank accounts); RFP Request No. 25 (seeking audited financial statements and communications with auditors); RFP Request Nos. 6, 9, 22-23, 26-28 (seeking documents relating to the organization and corporate structure of MindGeek). This Court previously found these categories of documents relevant, so Bergmair should be ordered to produce them promptly. (Dkt. 211, at 5).

Bergmair also attempts to limit his responses to just the MindGeek Entity Defendants, rather than the MindGeek Entities as Plaintiff defined them in the requests. The Court already rejected this limitation. (Dkt. 211, at 6).

### 4. Bergmair Refuses to Produce Documents and Sufficient Information Relative to His Jurisdictional Contacts

Bergmair also objects to several Requests that seek information concerning his connections and activities with California and other jurisdictions in the United States. *See* RFP No. 11 and ROG No. 4 (seeking documents and communications related to Bergmair's "jurisdictional contacts with the United States or California"); RFP No. 12 (seeking documents and communications related to, among other things "political activities in California or any jurisdiction in the United States," "trips to California or any jurisdiction in the United States, profits, expenses, and taxes paid in or earned from California or any other United States jurisdiction, and communications or business relationships with, to, from, or in California or any other United States jurisdiction). Each of these requests seeks information that is relevant to the Court's jurisdictional analysis. Nevertheless, Bergmair has refused to search for a single document in response to these requests.

Similarly, Bergmair's response to Interrogatory No. 4 is evasive. Bergmair admits to travelling to both California and the United States, but provides zero details

1    concerning the number of times he has visited those jurisdictions or any details

2    concerning those visits.  Bergmair should be ordered to provide more detail as to the

3    unspecified number of trips to the United States that Defendant admits to taking.  For

4    each trip, Bergmair should be ordered to identify: (i) the dates of the trip, (ii) the

5    locations visited, and (iii) the purpose of the visit.  Bergmair also should be ordered

6    to provide a response to the components of the Interrogatory that concern

7    jurisdictional contacts other than trips to the United States; Bergmair's answer is

8    limited to trips and does not address these other jurisdictional contacts at all.

9        Bergmair also refuses to produce communications with other defendants (RFP

10   Request No. 4), even though his relationship with, and control over, entities and

11   individuals domiciled or doing business in the state of California are relevant to both

12   the Court's jurisdictional and alter-ego analyses.  *See also* RFP Request No. 2

13   (seeking documents and communications concerning Defendant's affiliation with any

14   MindGeek Related Entity, including those based in California or other United States

15   jurisdictions); RFP Request No. 3 (seeking documents and communications

16   concerning income, revenue, or other monies that Defendant received from any

17   MindGeek Related Entity, including those based in California or other United States

18   jurisdictions).

19       Similarly, in response to Request No. 32 and Interrogatory No. 6, Bergmair

20   refused to identify or produce contact lists or communication accounts and failed to

21   identify the usernames and/or related contact information associated with his

22   WhatsApp account, though he admits to using that platform.  The identity and

23   locations of the individuals that Bergmair communicated and worked with in

24   furtherance of the MindGeek's illegal trafficking venture and their efforts to conceal

25   and coverup their wrongdoing is highly relevant.  *See* Dkt. 168 at 7 ("It is entirely

26   plausible that at least one of the MindGeek Individual Defendants . . . had substantial

27   involvement in the practices and policies of one of MindGeek's major lines of

28   business that harmed Plaintiff.").

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    **5.    Bergmair Has Refused to Conduct a Search for Responsive**
2         **Documents**

3         It is black-letter law that, "*[u]pon receipt* of a properly served request, a
4    responding party is required to conduct a 'reasonable search' for responsive
5    documents." *Trujillo v. Princess Cruise Lines, Ltd.*, No. CV 20-7451 JWH (PVCx),
6    2021 WL 3604518, at *6 (C.D. Cal. Apr. 23, 2021) (emphasis added); *Polaris
7    Innovations Ltd. v. Kingstown Tech. Co.*, No. CV 16-00300 CJC (RAOx), 2017 WL
8    3275615, at *2 (C.D. Cal. Feb. 14, 2017); *see also A. Farber & Partners, Inc. v.
9    Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) ("[A] party has an obligation to
10   conduct a reasonable inquiry into the factual basis of his responses to discovery, and,
11   based on that inquiry, [a] party responding to a Rule 34 production request ... is under
12   an affirmative duty to seek that information reasonably available to [it] from [its]
13   employees, agents, or others subject to [its] control." (citations and quotations
14   omitted)).

15        Consistent with this fundamental principle, Rule 34 explicitly requires a
16   responding party to "state whether any responsive materials are being withheld on the
17   basis of [an asserted] objection." Fed. R. Civ. P. 34(b)(2)(C). None of Bergmair's
18   responses to Plaintiff's document requests contains the statement required by Rule
19   34(b)(2)(C). During the parties' meet-and-confer teleconference on December 15,
20   2022, Bergmair's counsel confirmed that Bergmair had not conducted a search for
21   documents, instead claiming he was waiting for this Court to provide clarity in
22   connection with Plaintiff's pending motion to compel filed against MindGeek (Dkt.
23   224) before he would begin a search for responsive documents. *See* Doyle Decl.,
24   ¶ 10. Bergmair provides only boilerplate objections.

25        This Court should require him to conduct a search promptly and to submit to
26   Plaintiff "declarations or affidavits detailing the nature of his 'reasonable inquiry' to
27   locate responsive documents, and such declarations must address the inquiry he made
28   on a request-by-request basis." *A. Farber & Partners*, 234 F.R.D. at 190 (ordering

51                        CASE NO. 21-CV-04920-CJC-ADS

1  this procedure in the face of an "astounding" "paucity" of documents produced by

2  defendant, which production still involved 600 documents, far more than the zero

3  documents that Bergmair has produced here).

4  **IV.  BERGMAIR'S POSITION**

5      A.  **Plaintiff's Motion to Compel Should Be Denied in Full**

6          1.  **Plaintiff's Motion Should be Denied for Failure to**

7              **Meaningfully Meet and Confer**

8          This motion comes before the Court due to two factors:  Plaintiff's ill-founded

9  position that she was permitted to seek merits discovery in this phase of the case

10  despite the District Court's explicit ruling to the contrary, and her refusal, even after

11  the Court ruled against her on this point, to narrow her requests to the permitted topic

12  of jurisdictional discovery.  By refusing to narrow even one of her admittedly merits-

13  focused document requests and by ignoring the Individual Defendants' requests to

14  meet to try to resolve the issues before the Court, Plaintiff has failed to meaningfully

15  meet and confer, and her motion should be denied on that basis.

16              a.  **Plaintiff Has Failed to Meaningfully Meet and Confer**

17          The Court's July 29, 2022 Order permitted jurisdictional discovery of Mr.

18  Bergmair and the other Individual Defendants with respect to two theories of specific

19  jurisdiction: the formulation of MindGeek's CSAM policies and alter ego.  White

20  Decl., Exhibit A (7/29/22 Order Granting Jurisdictional Discovery) at 5-6.  The Court

21  authorized only jurisdictional discovery and explicitly directed Plaintiff and her

22  counsel "to not use this opportunity to further complicate this case."  White Decl.,

23  Exhibit E, (7/29/22 Order Denying Issuance of Scheduling Order) at 2.  Despite this,

24  Plaintiff propounded exceedingly broad discovery requests to the Individual

25  Defendants that went well beyond the jurisdictional discovery ordered.  For example,

26  several requests (both alone and in combination) seek essentially every piece of paper

27  and every email and electronic record the Individual Defendants possess related to

28  MindGeek.  *See e.g.*, RFP No. 2 (seeking all documents "concerning … Your

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO**
**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

affiliation … or ownership of MindGeek"); RFP No. 7 (seeking all documents related to any "economic interest in, or business relationship with MindGeek … by You"); RFP No. 9 (seeking all documents "relating to MindGeek's past or present … offices, departments, executives and personnel"); RFP No. 22 (seeking all documents identifying MindGeek subsidiaries "and the nature of [their] assets, businesses and services"); RFP No. 50 (seeking all documents related to the "distribution of content to any MindGeek [site]").  Plaintiff similarly seeks documents from the Individual Defendants reflecting every penny going in or out of MindGeek to or from any party for any purpose for an eight-year period, without limitation. *See* RFP No. 16 (seeking records regarding "all payments made to or on behalf of [any MindGeek] entity, affiliate, subsidiary or related entity.")

The Individual Defendants timely responded to Plaintiff's interrogatories and requests for production of documents on September 22, 2022, and October 20, 2022, respectively. *After over a month of no communication*, Plaintiff sent a L.R. 37-1 letter to Individual Defendants on December 5, 2022, seeking to meet and confer.  In accordance with L.R. 37-1, the Individual Defendants met and conferred with Plaintiff on December 15, 2022.  This meet-and-confer was limited to only the requests for production of documents and did not include any discussion concerning the interrogatories.  At this meeting, the Individual Defendants' counsel pointed out that Plaintiff had served her extremely broad discovery requests at a time when she was admittedly seeking merits discovery and asked if there were any of her requests that she was willing to narrow.  Plaintiff did not agree to do so.  (White Decl. at ¶ 19.)  At this meeting, the Individual Defendants also requested that Plaintiff hold off filing any motion to compel, since her motion to compel the MindGeek corporate defendants, which raised similar issues, was then scheduled to be heard by the Court on December 27, 2022, and the Court's ruling would potentially resolve or narrow the issues between Plaintiff and the Individual Defendants.  The meet-and-confer ended with Plaintiff's promise to consider this and other questions raised by the

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1  Individual Defendants and to get back to Individual Defendants about open issues.[4]
2  (*Id.*)

3      Without any further correspondence or discussion regarding the open issues
4  from the December 15 meet-and-confer, Plaintiff served a motion to compel on all
5  Individual Defendants on Friday, December 23, requiring a response from the defense
6  by Friday, December 30, and setting a hearing date for the motion on February 1,
7  2023.  Plaintiff did so despite having explicitly said to Defendants that she would
8  consider points made during the December 15 meet-and-confer.  (White Decl. at
9  ¶ 20.)  The same day, December 23, the Individual Defendants informed Plaintiff that
10 the dispute was not ripe for presentation to the Court and noted that "there were
11 several issues on which you said you would consider our position and get back to us,
12 but which you have not done." (*Id.*; *see id.*, Ex. J at 2–3.)  Moreover, because Plaintiff
13 served her motion to compel the day before the Christmas holiday weekend (even
14 though her motion did not need to be filed until January 11 per L.R. 37-3), the
15 Individual Defendants sought an extension to respond until at least January 10.
16 Plaintiff did not agree to Individual Defendants' requested extension until December
17 27, 2022, after the Christmas holiday weekend.   (White Decl. at ¶ 21; *see id.*, Ex. J
18 at 1, 3.)

19     On January 4, 2023, counsel for the Individual Defendants contacted Plaintiff's
20 counsel to schedule a second meet-and-confer to attempt to narrow the substantial
21 number of disputes at issue in the motion to compel.  At that meet-and-confer, which
22 took place on January 6, 2023, the Individual Defendants' counsel again asked if
23 Plaintiff would narrow any of her requests because they addressed merits issues or
24 were otherwise overbroad.  Just as in the December 15 meet-and-confer, Plaintiff did
25 not identify a single request that she was willing to narrow.  (White Decl. at ¶ 23.)

26

27 [4] The next day, December 16, 2022, the jurisdictional discovery cutoff was extended
   four months, until May 1, 2023.  White Decl., Exhibit F (12/16/22 Order Extending
28 Jurisdictional Discovery Cutoff).

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Similarly, since virtually all the document requests to the Individual Defendants mirrored those addressed to the MindGeek corporate defendants, the Individual Defendants' counsel specifically asked Plaintiff's counsel if he intended for the Individual Defendants to produce identical copies of the 7,000 pages of corporate documents already produced by MindGeek, if they had them in their possession. Plaintiff's counsel confirmed that he expected the production of such duplicative records. (*See id.*)  In addition, since many of the discovery requests to the Individual Defendants went well beyond any MindGeek-related materials and sought purely personal information, the Individual Defendants sought Plaintiff's agreement that such personal information was not required to be produced.  For example, Plaintiff's Interrogatory No. 4 and RFP Nos. 11 and 12 are not limited to MindGeek-related business contacts the Individual Defendants may have had with this jurisdiction. However, at the meet-and-confer, Plaintiff maintained that the Individual Defendants must provide information regarding purely personal contacts they may have had with the jurisdiction.  Indeed, Plaintiff's counsel specifically insisted that Plaintiff had a right to know if the Individual Defendants had ever taken any purely personal trips to the United States, such as, for example, if they took their families on a personal trip to Disneyland.[5]  (*See id.*)

At the January 6 meet-and-confer, Plaintiff's counsel similarly rejected all but one of Individual Defendants' procedural proposals to alleviate the burden of motion practice.  Specifically:

- To lessen the substantial burden on the Court, the Individual Defendants sought to consolidate the four motions to compel into a single motion. *Plaintiff would not agree.* Nevertheless, the Individual Defendants have

---

[5] In response to defense counsel's question, Plaintiff's counsel initially acknowledged that a hypothetical personal trip to Disneyland was not relevant, but later reversed his position and insisted that it was, refusing to narrow the discovery requests to MindGeek-related business contacts.  *See* White Decl. at ¶ 23.

CASE NO. 21-CV-04920-CJC-ADS
**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

worked hard to include in the individual submissions demanded by Plaintiff identical arguments where appropriate.

- To narrow the issues substantially, the Individual Defendants asked that their responses be made *after* the Court ruled on the then-pending motion to compel discovery from the MindGeek Entity Defendants because certain issues relevant to the Individual Defendants' dispute with Plaintiff would be litigated there. *Plaintiff would not agree.*

- To narrow the issues substantially, the Individual Defendants sought a further meet-and-confer before January 18, which would have had no impact on the February 8 hearing date. *Plaintiff would not agree.*

- To accurately convey to the Court what the Individual Defendants had done, the Individual Defendants advised Plaintiff's counsel that they had all begun a search for documents relevant to jurisdictional discovery–contrary to what Plaintiff's counsel claimed they heard–yet Plaintiff refused to amend its assertions in the motion.

(White Decl. at ¶ 24.)

With respect to the one and only area where Plaintiff noted she would consider narrowing the requests – RFPs 10, 14, 18, 24, 30, 32, and 36 – she asked the Individual Defendants to send a follow-up email, which Individual Defendants did on January 9, 2023.  However, Plaintiff responded to that email on January 10, without providing any additional information or narrowing any requests.  (White Decl. at ¶ 25.)

On January 10, Mr. Bergmair and the other Individual Defendants provided Plaintiff with their portions of the joint stipulation in connection with Plaintiff's proposed motion to compel.  (White Decl., ¶ 26.)

On January 11, the Court held a hearing on Plaintiff's separate motion to compel the MindGeek corporate defendants, at the conclusion of which the Court directed the parties to meet and confer further.  Following this hearing, and in light of the Court's direction to meet and confer on that motion, Plaintiff's counsel advised

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1  that Plaintiff did not intend to file the motions to compel the Individual Defendants

2  that day and suggested that the parties meet and confer to attempt to "narrow or

3  eliminate" any issues in dispute.  (White Decl. at ¶ 27; *see id*., Ex C at 5–6.)

4      On behalf of all the Individual Defendants, counsel responded the next

5  morning, January 12, that they remained "interested in trying to narrow and, if

6  possible, resolve all or at least some of the open issues," and proposed a meet and

7  confer.  (White Decl. at ¶ 28; *see id*., Ex C at 4–5.)

8      The following day, January 13, counsel for one of the Individual Defendants

9  (on behalf of all) had a telephone conference with Plaintiff's counsel in which defense

10  counsel reiterated a desire to continue discussions.  During that call, the Individual

11  Defendants emphasized that the parties could make significant progress if Plaintiff

12  would identify specific categories of documents that were relevant and of greatest

13  significance to her.  (White Decl. at ¶ 29.)  Counsel for Plaintiff said he would take

14  that request back to his colleagues.  (*Id*.)

15      Later the same day, as a follow-up from this meeting, the Individual Defendants

16  proposed a meet-and-confer for the next business day and noted that they would "like

17  to continue discussing potential areas of agreement and ways to narrow and clarify

18  the issues that may need to go to the Magistrate Judge."  Plaintiff did not respond to

19  this email.  (White Decl. at ¶ 30; *id*., Ex. C at 2.)

20      Notwithstanding Plaintiff's lack of a response, the Individual Defendants

21  contacted Plaintiff again on January 18, asking to "continue the meet and confer

22  process."  The email noted that "it would be constructive to identify and itemize the

23  specific materials the plaintiff is seeking," and urged Plaintiff to provide such a list to

24  facilitate the parties' potential discussions.  (White Decl. at ¶ 31.)

25      Later the same day, Plaintiff responded that she would "hold off" filing the

26  motions to compel "today."  (White Decl. at ¶ 32.)  Plaintiff's email agreed that "we

27  should confer further to try to reach agreements," saying that Plaintiff would be "back

28  in touch shortly," but offered no explanation for her ignoring the defense's prior

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1   requests for a meet-and-confer.  Despite mouthing words of cooperation, Plaintiff

2   thereafter ignored the Individual Defendants' January 18 request to confer further.

3   (*Id*.)

4       After their four offers to meet-and-confer between January 11 and 18 were

5   ignored, the Individual Defendants had no contact with the Plaintiff for two more

6   weeks – time which could have been used to attempt to narrow the issues for the Court

7   – until Plaintiff served her portion of the joint stipulation related to the instant motion

8   to compel on February 1.  In an email response the same day, the Individual

9   Defendants again invited Plaintiff to engage in a further meet and confer rather than

10  proceed with motion practice, reiterating their request that, as a starting point for

11  discussions, Plaintiff provide them with a list of narrowed categories of documents

12  she is seeking.  Plaintiff did not even respond to this request, saying only that she

13  would proceed with this motion.  (White Decl. at ¶¶ 33–34.)

14          **b.**   **Plaintiff's Motion Should be Denied Due to Her**

15                    **Failure to Meet and Confer**

16      As the above facts demonstrate, Plaintiff has refused to meaningfully engage

17  in the meet-and-confer process.  From the beginning, her approach has been

18  overbroad and inflexible.  Despite the fact that her requests are so broad as to arguably

19  require production of every piece of paper in the Individual Defendants' possession

20  related to MindGeek – and were admittedly served in furtherance of merits discovery

21  – Plaintiff has refused to narrow even a single one of her document requests to the

22  relevant jurisdictional discovery issues authorized by Judge Carney.  The Individual

23  Defendants have repeatedly asked Plaintiff to provide a list of specific items relevant

24  to jurisdictional discovery that she seeks, but have not even been provided with a

25  response, much less a list.  (White Decl. at ¶¶ 19, 23.)  Plaintiff has adopted extreme

26  and impractical positions, asserting that the Individual Defendants should be required

27  to produce identical copies of the 7,000 pages of corporate records MindGeek has

28  already produced (White Decl. at 23.), and that they are required to produce wholly

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

personal information about their finances and travel that have absolutely nothing to do with MindGeek business, including all personal financial account records for an eight-year period or information about whether they ever took a family trip to Disneyland. (*Id*.). Plaintiff's wholesale refusal to engage in discussions with the Individual Defendants – other than to demand responses to her overbroad, vague and admittedly merits-focused discovery requests as written – is not consistent with the letter or spirit of L.R. 37-1 or Federal Rule 26.

Indeed, even after the Court emphasized the need to meet-and-confer at the January 11, 2023 hearing on the motion to compel the MindGeek corporate defendants, Plaintiff rebuffed multiple offers by the Individual Defendants to try to narrow the issues. Indeed, Plaintiff not only failed to meet with the Individual Defendants but completely ignored their requests. (White Decl. at ¶¶ 27–32.) One would have thought that, after being previously admonished by the Court for failing to adequately meet and confer with other parties, Plaintiff would have at least been willing to meet and confer with the Individual Defendants and provide the requested list of specific items she believed she was entitled to. Indeed, Plaintiff acknowledged on January 18, 2023 that "we should confer further," yet then went silent until serving this motion on the Individual Defendants on February 1. Plaintiff's decision to not even respond to the defense's four separate offers of further discussion reveals that, in contravention of L.R. 37-1, Plaintiff never intended to meaningfully meet and confer with the Individual Defendants.[6]

---

[6] The delay in advancing the discovery process is attributable not only to Plaintiff's inflexible demands, but also to Plaintiff's own choices regarding scheduling. The Individual Defendants timely responded to both the interrogatories and document requests on September 22 and October 20, 2022. Plaintiff then waited a month and a half until early December to raise any issues with the defendants' responses, ultimately serving a notice of motion literally on the eve of the Christmas holiday, necessitating a delay in the briefing of the motion until after the New Year. Then, after insisting that the Individual Defendants provide their portion of the joint stipulation for the motion by January 10 – rather than continue discussions aimed at

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

In addition to her refusal to discuss narrowing even one of her admittedly merits-focused requests and her refusal to meet and confer in the month preceding this motion, the fact that Plaintiff never had any intention of constructively engaging in a meet-and-confer with Individual Defendants' counsel is evidenced by the fact that she advised the court on multiple occasions *before* the meet-and-confers – including once even before she sent her L.R. 37-1 letter – that she was already preparing the instant motions to compel.  Plaintiff sent the Individual Defendants her L.R. 37-1 letter on December 5, 2022 and the parties held their initial meet-and-confer on December 15, 2022.  However, on November 16, 2022, well before either of these, Plaintiff's counsel advised the Court that Plaintiff's motion to compel the Individual Defendants was "in progress."  *See* Transcript of November 16, 2022 Hearing (White Decl., Exhibit I) at 6.  Similarly, Plaintiff confirmed her intentions on December 7, 2022, advising the Court in connection with a different motion to compel that "Plaintiffs will be filing a separate motion to compel the Individual Defendants to comply with discovery obligations."  *See* Plaintiff's Supplemental Memorandum in Support of Motion to Compel Defendant MindGeek Entities' Response to Plaintiff's First Request for Production of Documents and Interrogatories, Dkt. No 233, at n.1 (White Decl., Exhibit M at 2).  These statements to the Court (made before she had exchanged even a single word with the Individual Defendants about their discovery responses) – as well as her extreme and inflexible positions in the parties' subsequent meet-and-confers, followed by her refusal to even respond to the defense's multiple requests to meet in the last month – make plain that Plaintiff never had any intention of engaging in good faith discussions with the Individual Defendants about narrowing her requests to relevant, non-duplicative materials.  *See Goldwater Bank, N.A. v. Elizarov*, 2022 WL 17078950, at *2 (C.D. Cal. Oct. 7, 2022) (movant's drafting of

_____

narrowing the issues, as the defendants suggested – Plaintiff first advised that she would not file the motion, and then waited almost another month before reversing course and proceeding with the instant motion.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

motion to compel "before trying to meet and confer" showed he did not make "good faith effort" to resolve issues as required by L.R. 37-1).

Courts in this district have repeatedly ruled that a movant's failure to meaningfully engage in the meet and confer process is a basis to deny their motion to compel. *Id*. at *2 ("[D]efendant asked this court to rule on a multitude of purported discovery disputes without having made a full and reasonable effort to resolve these disputes….Because the instant motion was brought without defendant first complying with Local Rule 37-1, the court denies it without prejudice."); *Rahmatullah v. Charter Commc'ns, LLC*, 2021 WL 1593242, at *3 (C.D. Cal. Mar. 25, 2021) ("Plaintiff's decision to abandon meet-and-confer negotiations prematurely and burden the court's time and resources with a 223-page joint stipulation is not well taken."); *Mulligan v. Nichols*, 2013 WL 12124004, at *2 (C.D. Cal. July 12, 2013) ("[T]he Court does not countenance shotgun discovery, duplicative discovery, or inadequate meet and confer efforts which result in unnecessary 100-plus page discovery motions"); *ExxonMobil Oil Corp. v. S. California Edison Co.*, 2013 WL 12166215, at *6 (C.D. Cal. Nov. 19, 2013) ("After further meet and confer, the Motion may, if necessary, be renewed as to any remaining disputes in these two areas; however, the parties are cautioned that if the Court deems that the meet and confer process has been inadequate, a further motion will be summarily denied."); *see also Acosta v. Austin Elec. Servs. LLC*, 324 F.R.D 210, 212 (D. Ariz. 2017) (ordering plaintiff's counsel to show cause regarding failure to adequately meet and confer prior to moving to compel).  The Court should deny Plaintiff's motion on this basis alone and order her to meet and confer with the Individual Defendants in the substantive and good faith manner required by L.R. 37-1.

## 2.    <u>Plaintiff Improperly Seeks MindGeek Corporate Records from Mr. Bergmair</u>

Plaintiff insists on proceeding with a motion to compel when her fundamental problem is one of her own making: she seeks MindGeek corporate documents from

Mr. Bergmair – an individual corporate shareholder who lives in Hong Kong and who has never been an officer, director or employee of the company – when she also sought virtually the same corporate documents from the MindGeek Entity Defendants. (*See* RFP Nos. 1-17, 19-31, 33-54). The MindGeek Entity Defendants are the best source of these documents, relating to, among other things, emails regarding Plaintiff; MindGeek's income, revenue, and other financial information; MindGeek's ownership; and the Individual Defendants' involvement in setting MindGeek's policies regarding CSAM. The MindGeek Entities have made a substantial production relating to these issues and we understand that additional document productions will be made in the coming weeks.

Plaintiff seeks a breathtaking array of corporate documents from the Individual Defendants. Virtually every one of her 54 document requests seeks corporate documents created and maintained by MindGeek. Among other topics, Plaintiff's requests seek documents regarding: MindGeek's "corporate and ownership" structure (RFP No. 6); its "organizational structure, offices, departments, executives and personnel" and all of its subsidiaries, directors, managers, members and executives (RFP Nos. 9, 20, 21, 22, 26); all of its financial records, including audited financial statements, ledgers, profit and loss statements, balance sheets, records of revenues and profits, payroll records and expense records (RFP Nos. 12, 16, 17, 25); its quarterly and annual tax filings (RFP No. 17); minutes and presentation materials for its board of directors meetings (RFP No. 16); its "intellectual property" (RFP Nos. 8, 53, 54); its "IT infrastructure," data storage and cloud storage (RFP No. 31); its document preservation policies (RFP No. 35); and its agreements with bank and credit card networks (RFP No. 51). These corporate records are ones created or maintained by MindGeek corporate employees and to the extent the Individual Defendants received copies of any of them, they were likely sent to them via MindGeek's email system. None of the Individual Defendants currently have access to MindGeek's email system or corporate records. Yet Plaintiff inexplicably insists that the

1  Individual Defendants are the right parties for these corporate-focused discovery

2  requests.

3        In both our December 15, 2022 and January 6, 2023 meet-and-confers, the

4  Individual Defendants suggested that it would be more efficient for the parties to

5  identify the responsive documents MindGeek had to which Plaintiff was entitled, and

6  then limit the universe of documents sought from the Individual Defendants to any

7  non-duplicative documents they might possess.  During our January 6, 2023 meet-

8  and-confer, the Individual Defendants specifically asked Plaintiff's counsel if he

9  intended for the Individual Defendants to produce identical copies of the 7,000 pages

10 of corporate documents already produced by MindGeek, if they had them in their

11 possession.  Plaintiff's counsel confirmed that he expected the production of such

12 duplicative records. *See* White Decl. at ¶ 23.

13       In seeking to burden the Individual Defendants with these requests for

14 MindGeek's documents (rather than raising these issues with MindGeek), Plaintiff

15 takes refuge in the proposition that a party may seek duplicative documents from

16 different parties. *See supra* at 45.  While this may be true in the abstract, plaintiff

17 ignores that Fed. R. Civ. P. 26(b)(2)(C)(i) specifically requires a court to limit

18 discovery that is "unreasonably cumulative or duplicative, or can be obtained from

19 some other source that is more convenient, less burdensome, or less expensive."  Here,

20 seeking corporate documents from an individual like Mr. Bergmair – who was merely

21 a shareholder – when the same documents are simultaneously being sought from

22 MindGeek is unreasonably duplicative, burdensome, and misguided.  It is plainly

23 "more convenient" and "less burdensome" to obtain the documents from MindGeek.

24 Indeed, MindGeek already has produced numerous categories of corporate documents

25 that address the financial issues that Plaintiff seeks to understand, and will be making

26 a supplemental production consisting of numerous specific categories of documents

27 identified by Plaintiff.  And Mr. Bergmair is an individual shareholder who has never

28 held any management position with the company and who lives in Hong Kong.  If

Mr. Bergmair is required to produce documents in response to Plaintiff's virtually limitless requests, he would be forced to incur the significant expense of having his counsel continue their review of a substantial volume of duplicative records. Plaintiff should direct her concerns, if any, regarding MindGeek's production of corporate financial information to MindGeek, and the Court should deny her motion to compel the Individual Defendants to produce mostly duplicative materials. *See, e.g.*, *Williams v. City of Hartford*, No. 3:15CV00933(AWT), 2016 WL 1732719, at *11 (D. Conn. May 2, 2016) (denying motion to compel with respect to plaintiff's document request because another defendant was already ordered to produce the sought-after records); *Kleppinger v. Texas Dep't of Transportation*, No. CV L-10-124, 2012 WL 12893652, at *3 (S.D. Tex. Mar. 12, 2012) (denying motion to compel individual defendants (current and former employees of the Texas Department of Transportation) to respond to interrogatories because the interrogatories were "unreasonably duplicative of discovery requests directed to Defendant [Texas Department of Transportation]").

The Court should deny the motion to compel Mr. Bergmair to produce MindGeek corporate records for an additional, independent reason. If any responsive documents are potentially protected by privilege, or contain highly confidential financial information, those privileges against production belong to MindGeek. The Individual Defendants cannot waive MindGeek's privileges, and any objections Plaintiff may have to the company's privilege claims should be raised with company counsel. Similarly, MindGeek's counsel must decide whether to designate any corporate records as confidential or highly confidential under the Court's protective order. White Decl., Exhibit H (Stipulated Protective Order). In accord with Fed. R. Civ. P. 26, Plaintiff should address her requests for corporate documents to the MindGeek corporate defendants, and negotiate (or if necessary, litigate) with them issues of privilege and confidentiality.

### 3. **Mr. Bergmair Has No Documents or Communications Concerning Plaintiff**

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Plaintiff seeks all communications "concerning Serena Fleites." (RFP No. 1). According to the Amended Complaint, Ms. Fleites' content appeared on a MindGeek website at various times between June 2014 and June 2020.[7] Mr. Bergmair first learned of Ms. Fleites after this time period, around the time she sent a letter threatening litigation against MindGeek. He has no documents concerning her from the relevant time period.

4. **Plaintiff's Requests Regarding CSAM Policies and Alter Ego Go Far Beyond Jurisdictional Discovery**

a. **CSAM Policies (RFP Nos. 5, 10, 30, 33-42, 46, 49, 52)**

Plaintiff's broad document requests regarding CSAM policies far exceed the scope of jurisdictional discovery authorized by the Court. Judge Carney authorized Plaintiff to take discovery regarding the Individual Defendants' roles in "direct[ing] or implement[ing]" "specific MindGeek polices or practices" that "applied to Plaintiff and her videos." White Decl., Exhibit A (7/29/22 Order Granting Jurisdictional Discovery) at 5. Although Plaintiff argues in this stipulation that she is entitled to documents regarding the Individual Defendants' roles in "setting policies" and the "adoption of policies" regarding CSAM (*supra* at 48-49), her requests actually reach far beyond this. Plaintiff's requests instead seek a broad range of documents, including practically any document mentioning CSAM policies, even if they have nothing to do with any Individual Defendant's involvement in the formulation of those policies.

Mr. Bergmair was not involved in directing or implementing such policies, but he has agreed to search for and produce any documents reflecting any of the

---

[7] As this Court has previously held in this case, "only contacts occurring prior to the event causing the litigation may be considered." *See* White Decl., Exhibit B (11/17/22 Hearing Minutes) at 3 (citing *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990)).

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    Individual Defendants' roles in directing or implementing the CSAM policies that

2    allegedly harmed Plaintiff, consistent with Judge Carney's order.

3                    **b.**    **Alter Ego (RFP Nos. 2-3, 6-9, 13-29; ROG Nos. 2-3)**

4            Judge Carney noted that Plaintiff "might also have a workable alter ego theory

5    pursuant to which she can impute the jurisdictional contacts of the nonobjecting

6    MindGeek Entity Defendants to the MindGeek Individual Defendants," and ordered

7    jurisdictional discovery on potential alter ego claims, while noting that Plaintiff's

8    allegations on this point are "rather conclusory, vague, and indeed, quite difficult to

9    follow at times."   White Decl., Exhibit A (7/29/22 Order Granting Jurisdictional

10   Discovery) at 6.   To establish an alter ego relationship, a party must demonstrate that

11   "(1) there is such unity of interest and ownership that the separate personalities of the

12   corporation and the individuals no longer exist *and* "(2) failure to disregard the

13   corporation would result in fraud or injustice."   *Symettrica Ent., Ltd. v. UMG*

14   *Recordings, Inc.*, No. LACV1901192CJCKLS, 2019 WL 8806093, at *4 (C.D. Cal.

15   Sept. 20, 2019) (quoting *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1393 (9th

16   Cir. 1984)).   But Plaintiff's purported alter ego discovery goes far beyond these

17   questions.

18           Instead, Plaintiff seeks a license to conduct an examination of essentially every

19   financial document of a multi-national corporation over nearly a decade.   As just one

20   example of her 23 requests directed to the Individual Defendants on this topic,

21   Plaintiff's RFP No. 16 seeks, among other categories, all documents of each and every

22   MindGeek affiliate reflecting capitalization, revenues, profits, tax payments,

23   distributions and dividends; shareholder agreements; lender agreements; profit and

24   loss statements; balance sheets; tax records; payroll records; and expense records.   As

25   if that was not broad enough, Plaintiff also seeks documents from the Individual

26   Defendants reflecting every penny going in or out of MindGeek to or from any other

27   party for any purpose for an eight-year period, without limitation.   *See* RFP No. 16

28

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

(seeking records regarding "all payments made to or on behalf of [any MindGeek] entity, affiliate, subsidiary or related entity").

Plaintiff summarizes her document requests to Bergmair as focused on "the relationship and purpose of the various MindGeek entities, and their corporate structure and ownership, as well as Bergmair's ownership interests in those entities and his receipt of funds from those entities." *See supra* at 48. But the documents previously produced (and to be produced shortly) by MindGeek and Bergmair provide detailed information regarding each of these topics. For example, with respect to the first of these topics, "the relationship and purpose of the various MindGeek entities, and their corporate structure and ownership," Plaintiff has already been provided with documents and interrogatory responses regarding MindGeek's corporate structure and identifying MindGeek subsidiaries. (RFP Nos. 6, 9, 19, 20, 22, 26). MindGeek's interrogatory responses explained the ownership status and structure of each of the MindGeek defendants. *See* White Decl., Exhibit N (MindGeek Entity Defendants' ROG Response No. 1). MindGeek also produced to Plaintiff corporate organizational charts for 2014 through 2021, which show *all* MindGeek entities, not just the defendant entities. *See* White Decl., Exhibit O (Nov. 30, 2022 M. Yeary Decl.), at ¶8(c). In addition, as Plaintiff requested, MindGeek will shortly be producing a complete set of the ownership and financing documents governing the MindGeek entities, both from the 2013 timeframe when Mr. Bergmair first acquired an interest in the company, as well as the 2018 corporate reorganization. Further, with respect to this 2018 reorganization, the company produced documents showing the transfers of assets undertaken in connection with this reorganization, as well as before and after versions of the corporate organizational structure. *Id*. at ¶10(b). MindGeek also produced certificates of incorporation, by-laws, and other corporate filings for numerous MindGeek entities (*id*. at ¶10(k)-(bb)) and additional such documents regarding one particular MindGeek entity that Plaintiff requested will shortly be

produced. MindGeek will also produce a summary document that is used by the company to explain the flow of money within the corporate structure.

Similarly, Plaintiff has also received documents and interrogatory responses identifying MindGeek's directors and managers, as requested in RFP No. 21. MindGeek identified the directors/managers of each corporate defendant and their dates of service in its interrogatory responses (White Decl., Exhibit N (MindGeek Entity Defendants' ROG Response No. 5)) and has produced minutes of the shareholder meetings and Board of Directors/Managers meetings for the corporate defendants, as well as board resolutions, including those reflecting approval of dividend distributions to shareholders. *See* White Decl., Exhibit O (Nov. 30, 2022 M. Yeary Decl.), at ¶¶10(c)-(j), 13(b)-(f), (l)-(p), (u).

Plaintiff also has received financial records, audited financial statements and tax returns of MindGeek, in response to RFP Nos. 13, 16, 17, 25. MindGeek produced audited financial statements for each entity preparing such statements for 2014 through 2019. *Id*. at ¶8(d)-(g). In addition, MindGeek produced (or will produce) detailed financial reporting packages, both quarterly and annual, for *all* MindGeek entities from 2014 through June 2021, which include Consolidated Statements of Earnings by business unit, Stand-Alone Balance Sheets, Consolidated Statements of Cash Flow, and auditor's notes. *Id*. at ¶8(i). Plaintiff has also received multiple sets of tax returns filed by MindGeek entities. *Id*. at ¶¶13(g)-(h).

In response to Plaintiff's requests for documents reflecting services provided by one MindGeek entity to another (RFP Nos. 23, 27-28), Defendants have produced the relevant service agreements governing these arrangements. *Id*. at ¶¶13(v)-(x).[8]

---

[8] In addition, and perhaps most importantly, the documents produced to Plaintiff establish that the MindGeek corporate entities followed appropriate corporate formalities, had separate audited financial statements and tax returns prepared for each entity, and, where one entity performed services for another, entered into appropriate service agreements.

1    Finally, the MindGeek Entity Defendants have arranged for a Fed. R. Civ. P.

2    30(b)(6) corporate representative located in a foreign country to travel to the United

3    States to explain MindGeek's corporate structure, but to date, Plaintiff has yet to

4    schedule his deposition.

5    With respect to the other primary category of documents Plaintiff seeks,

6    "Bergmair's ownership interests" in the MindGeek entities and "his receipt of funds

7    from those entities," defendants have already produced extensive information.  RFP

8    Nos. 2, 3, 7 and 8 seek information about Mr. Bergmair's ownership interest in

9    MindGeek and monies received from the company.  Mr. Bergmair identified in

10    response to interrogatories the exact percentage of his economic interest in

11    MindGeek, including identifying the entities through which he owned his MindGeek

12    interest and of which he was the ultimate beneficial owner.[9]  *See* Doyle Decl., Exhibit

13    4 (Response to ROG No. 1).  MindGeek also produced to Plaintiff the 2013

14    Shareholders' Agreement (and 2018 amendment) governing the relationship between

15    the shareholders of MindGeek, S.A.R.L. and affiliated entities.  *See* White Decl.,

16    Exhibit O (Nov. 30, 2022 M. Yeary Decl.), at ¶10(a).  MindGeek will also produce

17    documents regarding any so-called "related party transactions" between the company

18    and any entities owned by Mr. Bergmair or the other Individual Defendants, as well

19    as transfer pricing studies and other documents related to such transactions.

20    Plaintiff conspicuously leaves all of this out of her portion of this joint

21    stipulation.  She provides no explanation why audited financial statements prepared

22    by a prominent accounting firm, detailed internal financial reporting packages

23    presented to the companies' own boards, and corporate tax returns filed with the

24    relevant taxing jurisdictions fail to provide an adequate picture of MindGeek's

25    finances.    Similarly, Plaintiff does not explain how the internal corporate

26

27    _____

28    [9] Defendants Antoon and Tassillo similarly provided information regarding their ownership interests in MindGeek.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

organizational charts actually relied upon by company personnel for eight years are somehow insufficient to advise her of the company's corporate structure. But to the extent the discovery provided so far is allegedly insufficient, the MindGeek corporate defendants have also agreed to produce the entire set of corporate transactional documents governing the ownership and financing of the company over the entire relevant time period, as well as internal documents explaining the flow of funds within MindGeek's corporate structure.

Moreover, to the extent Plaintiff contends that she needs to explore whether the Individual Defendants diverted money to themselves from MindGeek, she has been provided with the relevant information. Bergmair and MindGeek have produced (or will produce) documents reflecting distributions from the company to the entities he owns, reflecting the dates, amounts, payors and recipients. Similarly, MindGeek will produce documents reflecting any so-called "related party transactions" with entities owned by Mr. Bergmair and the other Individual Defendants. As a result, Plaintiff will have records of the monies flowing from MindGeek to the Individual Defendants to explore her theory. Anything beyond that would amount to a classic "fishing expedition." Plaintiff's request to be free to inspect every invoice of the company for an eight-year period – hoping that she might stumble upon some undisclosed related party transaction – is simply excessive and not proportional to the needs of the case under Rule 26. In the absence of some concrete, articulable reason to believe that specific additional categories of documents will reveal such diversion of funds, the records which have been (or will be) produced showing transactions with the Individual Defendants are sufficient to allow her to explore whether she has "a workable alter ego theory," as authorized by Judge Carney's Order.

As noted above, the documents reflecting MindGeek's corporate ownership, structure and finances, and its distributions to the Individual Defendants, are virtually all corporate documents created and maintained by the company. To the extent Mr. Bergmair is in possession of copies of such records, they were likely emailed to him

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

by a MindGeek employee on the company email system.  In addition, where the documents contain attorney-client privileged information, the privilege belongs to MindGeek and its counsel will have to make the call regarding its assertion.  For all these reasons, Plaintiff should direct its requests regarding corporate ownership and structure and financial details to MindGeek in the first instance.  Of course, to the extent that there are specific, non-duplicative documents not produced by MindGeek that Mr. Bergmair possesses, he has offered to discuss such targeted requests with Plaintiff.  But as described above, Plaintiff has rebuffed defendants' request for her to itemize the documents she seeks from them.  Rather than employ targeted requests and engage in good faith discussions with counsel, Plaintiff has adopted an all-or-nothing approach, refusing to narrow any of her discovery requests and seeking in this motion to enforce compliance with requests so broad as to arguably require production of every document in Mr. Bergmair's possession related to MindGeek (RFP No. 2) and records of every penny flowing in or out of the company for an eight-year period (RFP No. 16).

Plaintiff's request for records regarding the personal finances of each Individual Defendant also far exceed the proper scope of jurisdictional discovery since their personal finances are irrelevant to determination of whether the Court should pierce the corporate veil as to the MindGeek corporate defendants.  So, for example, Plaintiff makes the irrelevant and overbroad request for all "monthly, quarterly and annual bank and investment statements" of Mr. Bergmair (RFP No. 18), with no limitation that they relate to MindGeek or Plaintiff's causes of action.  This request plainly exceeds the scope of jurisdictional discovery.  As described above, Plaintiff has received (or will receive) documents that reflect distributions from MindGeek to the Individual Defendants.  What an Individual Defendant does with the money he receives as a MindGeek shareholder thereafter is simply irrelevant to the alter ego analysis.  Moreover, the request is plainly overbroad on its face in that it calls for production of documents related to accounts that have nothing whatsoever to

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

do with MindGeek.  Indeed, this request is a perfect example of Plaintiff's "fishing expedition" approach to discovery in this action and her disregard of Judge Carney's admonition not to "complicate" the case.  White Decl., Exhibits A and D (7/29/22 Order Granting Jurisdictional Discovery and 11/17/22 Hearing Minutes).

In short, Defendants have already produced documents and information that tell Plaintiff "how the money flows" at MindGeek and allows her to explore her alter ego theory.  Requiring the Individual Defendants to search for additional financial documents – including personal financial materials not relevant to this case, much less within the bounds of jurisdictional discovery – is simply not "proportional to the needs of the case" under Fed. R. Civ. P 26(a).  *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2016 WL 6779901, at *3 (S.D.N.Y. Nov. 16, 2016) ("Rule 26(b)(1)'s proportionality requirement means [the requested documents] 'marginal utility' must also be considered."); *see also Hake v. Citibank, N.A.*, No. 19MC00125JGKKHP, 2020 WL 1467132, at *6 (S.D.N.Y. Mar. 26, 2020) (limiting discovery on proportionality grounds because the "need for the documents sought [was] . . . marginal at best" "[g]iven the marginal relevance of th[e] documents"); *Martinez v. Optimus Properties, LLC*, No. 17-3582, 2018 WL 5906904, at *2–3 (C.D. Cal. May 9, 2018) (observing that the relevance of certain document requests was "somewhat diminished by . . . [their] incremental potential value" and narrowing the requests on proportionality grounds).

**5.** **Plaintiff's Requests for Documents and Information Regarding Mr. Bergmair's Personal Travel and Contacts Exceed this Court's Rulings Concerning the Permissible Scope of Jurisdictional Discovery**

**a.** **Plaintiff Seeks Irrelevant Information Related to Personal Contacts with the Jurisdiction**

Plaintiff's discovery requests (ROG No. 4 and RFP Nos. 11-12) are overbroad to the extent they seek documents regarding Mr. Bergmair's personal contacts with

California and the United States.  To establish specific personal jurisdiction over Mr. Bergmair, Plaintiff must show that he purposefully directed his activities at this jurisdiction **and** that her claims arose from those forum-directed activities.  *See AMA Multimedia LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020).  Plaintiff alleges that she was harmed by MindGeek's conduct; the theory that Judge Carney authorized her to explore in jurisdictional discovery was whether Mr. Bergmair or the other Individual Defendants formulated the MindGeek policies that resulted in her alleged injuries.  White Decl., Exhibit A (7/29/22 Order Granting Jurisdictional Discovery) at 5-7.  Plaintiff's alleged injuries did not arise from Mr. Bergmair's personal contacts with the jurisdiction so any such contacts could not possibly form the basis for personal jurisdiction over him.

Yet both Interrogatory No. 4 and Plaintiff's RFP Nos. 11 and 12 are not limited to MindGeek-related business contacts Mr. Bergmair had with this jurisdiction. Plaintiff insists that Mr. Bergmair must also provide information regarding purely personal contacts he may have had with the jurisdiction.  Indeed, in our January 6, 2023 meet-and-confer, Plaintiff's counsel specifically insisted in response to defense counsel's question that Plaintiff had a right to know if the Individual Defendants had ever taken any purely personal trips to the United States, such as, for example, if they took their families on a personal trip to Disneyland.[10]  *See* White Decl. at ¶ 23.  This position is meritless and such personal contacts are irrelevant to the issue of personal jurisdiction and outside the scope of the jurisdictional discovery permitted by Judge Carney's ruling.

---

[10]  In response to this question, Plaintiff's counsel initially acknowledged that a hypothetical personal trip to Disneyland was not relevant, but later reversed his position and insisted that it was, refusing to narrow the discovery requests to MindGeek-related business contacts.  *See* White Decl. at ¶ 23.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

b.    **Plaintiff Seeks Contact Lists Beyond the Scope of Authorized Jurisdictional Discovery (RFP No. 32 and ROG No. 6)**

Plaintiff seeks each Individual Defendant's list of contacts, without regard to whether they are business or personal, or have anything at all to do with MindGeek, much less to establishing that the Court has personal jurisdiction over Mr. Bergmair. This request is a transparent fishing expedition and needlessly invasive in light of the fact that a person's contacts likely include family members, personal friends, doctors, clergy, and other private and confidential relationships. It is also beyond the scope of the authorized jurisdictional discovery. Indeed, Plaintiffs have conceded that this request relates to the merits of the case, not to jurisdiction. When MindGeek objected to an identical document request for the Individual Defendants' contact lists on the grounds that they were not related to jurisdiction, Plaintiff did not even attempt to justify the request as jurisdictionally relevant. Instead, Plaintiff repeated her erroneous refrain that merits discovery was permissible and argued that the information was relevant to "Plaintiff's *claims* and likely to lead to additional evidence concerning the Individual Defendants' *liability*." *See* White Decl., Exhibit P (9/27/22 Letter from Bowe to Massey) at 4 (emphasis added).

c.    **Plaintiff Seeks Communications with Other Defendants Related to this Action (RFP No. 4)**

In this stipulation, Plaintiff misleadingly claims that she seeks "communications with other defendants" (*supra* at 50)–omitting that her request actually seeks communications among defendants "related to this Action." (RFP No. 4). This request is plainly irrelevant to the question of personal jurisdiction over Mr. Bergmair since it seeks communications well after the date Plaintiff's alleged claims arose. The Amended Complaint alleges that the latest date Plaintiff's content was on a MindGeek website was in June 2020. White Decl., Exhibit Q (Amended Complaint), at ¶ 268. As this Court has previously held, "only contacts occurring

74

1    prior to the event causing the litigation may be considered." White Decl., Exhibit D

2    (11/17/22 Hearing Minutes) at 3 (citing *Farmers Ins. Exch. v. Portage La Prairie*

3    *Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990)). Moreover, as Plaintiff is well aware,

4    the Court struck an identical document request from Plaintiff's proposed letters

5    rogatory to the Grant Thornton entities earlier in this case. White Decl., Exhibit D

6    (11/17/22 Hearing Minutes) at 6. Finally, this request is outside the scope of the two

7    subjects on which the Court authorized jurisdictional discovery: the formulation of

8    CSAM policies and alter ego.

9         **6.    Mr. Bergmair Has Conducted a Reasonably Diligent Search**

10             **for Documents**

11        Plaintiff's claim that Mr. Bergmair has not undertaken a search for responsive

12   documents is simply incorrect. Plaintiff's counsel apparently misunderstood a

13   comment at the parties' December 15, 2022 meet-and-confer. On that call, Mr.

14   Bergmair's counsel noted that Plaintiff's exceedingly broad document requests

15   (admittedly directed at merits discovery as well) made it difficult to conduct an

16   effective search because virtually all documents in his possession could arguably be

17   responsive under Plaintiff's expansive view of discovery. Mr. Bergmair's counsel

18   never stated that he had not conducted a search at all. When Individual Defendants'

19   counsel sought to resolve this misunderstanding – after first becoming aware of it

20   through Plaintiff's draft of this Joint Stipulation – Plaintiff's counsel refused to correct

21   this portion of the Joint Stipulation. *See* White Decl. at ¶¶ 19–20.

22        In fact, Mr. Bergmair and his counsel began the process of collecting

23   potentially relevant documents prior to even receiving Plaintiff's document requests.

24   Counsel engaged an e-discovery vendor to host the documents collected. Thereafter,

25   attorneys from Mr. Bergmair's counsel's firm have spent time reviewing emails and

26   other documents collected from Mr. Bergmair for responsiveness and privilege, both

27   before and after the parties' December 15, 2022 meet-and-confer. That process is

28   continuing. White Decl. at ¶ 35.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

# V.    CONCLUSION

## A.    Plaintiff's Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion in full, and order Defendant Bergmair to produce documents in response to Plaintiff's RFPs 1-30, 32-42, 46, 49, and 52 and to supplement his responses to Plaintiff's ROGs 2, 3, 4, and 6.  As a Defendant in this action, Bergmair has the obligation to carry out a search for, and respond fully to, Plaintiff's relevant discovery requests.  Bergmair has yet to even search for responsive material, let alone carried his burden to show the disputed discovery should not be allowed. Bergmair was the majority owner of the companies at the center of this litigation, and his refusal to produce even the most basic of communications concerning Plaintiff and his roles in directing, guiding, and controlling the companies he owned defies the Court's previous discovery rulings and flies in the face of the Court's specific direction for the Defendant to submit to jurisdictional discovery. Accordingly, this Court should order Defendant Bergmair to respond to the aforementioned discovery requests.

## B.    Defendant's Conclusion

For all the reasons provided above, Plaintiff's motion to compel should be denied in its entirety.

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    Dated: February 8, 2023              Respectfully Submitted

2                                         **BROWN RUDNICK LLP**

3

4                                         By:_____
                                          MICHAEL J. BOWE (*pro hac vice*)
5                                         mbowe@brownrudnick.com
                                          LAUREN TABAKSBLAT
6                                         (*pro hac vice*)
7                                         ltabaksblat@brownrudnick.com
                                          7 Times Square
8                                         New York, NY 10036
9                                         Phone: (212) 209-4800
                                          Fax: (212) 209-4801
10

11                                        David M. Stein (#198256)
12                                        dstein@brownrudnick.com
                                          2211 Michelson Drive, 7th Floor
13                                        Irvine, California  92612
                                          Phone:      949.752.7100
14                                        Fax:  949.252.1514
15
                                          Attorneys for Plaintiffs
16

17

18   Dated: February 8, 2023              WALDEN MACHT & HARAN LLP

19
                                          By: */s/Ronald G. White*
20                                        RONALD G. WHITE
21                                        (admitted *pro hac vice*)
                                          rwhite@wmhlaw.com
22                                        Walden Macht & Haran LLP
                                          250 Vesey Street
23                                        New York, NY  10281
24                                        Tel: (212) 880-9410
                                          Fax: (212) 335-2040
25

26                                        Attorneys for Defendant Bernd
27                                        Bergmair

28
                                 77                          CASE NO. 21-CV-04920-CJC-ADS
**PLAINTIFF'S MOTION TO COMPEL DEFENDANT BERND BERGMAIR'S RESPONSES TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**