1   Michael J. Bowe
    (admitted *pro hac vice*)
2   mbowe@brownrudnick.com
    Lauren Tabaksblat
3   (admitted *pro hac vice*)
    ltabaksblat@brownrudnick.com
4   **BROWN RUDNICK LLP**
    7 Times Square
5   New York, NY 10036
    Telephone:  (212) 209-4800
6   Facsimile:  (212) 209-4801

7   Attorneys for Plaintiff

Adam B. Korn (SBN 331133)
abkorn@mintz.com
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
2049 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone:  (310) 586-3200

Peter A. Chavkin (*Pro Hac Vice*)
pachavkin@mintz.com
Kerime S. Akoglu (*Pro Hac Vice*)
ksakoglu@mintz.com
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
919 Third Avenue, 39th Floor
New York, NY 10022
Telephone:  (212) 935-3000

Peter A. Biagetti (*Pro Hac Vice*)
pabiagetti@mintz.com
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000

Attorneys for Specially-Appearing
Defendant,
COREY URMAN

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

SERENA FLEITES,

        Plaintiff,

        v.

MINDGEEK S.A.R.L.; MG
FREESITES, LTD; MINDGEEK
USA INCORPORATED; MG
PREMIUM LTD.; MG GLOBAL
ENTERTAINMENT INC.; 9219-
1568 QUEBEC, INC.; BERND
BERGMAIR; FERAS ANTOON;
DAVID TASSILLO; COREY
URMAN; VISA INC.; COLBECK
CAPITAL DOES 1-5;
BERGMAIR DOES 1-5

        Defendants.

CASE NO. 2:21-CV-04920-CJC-ADS

**DISCOVERY DOCUMENT:
REFERRED TO MAGISTRATE
JUDGE AUTUMN D. SPAETH**

**NOTICE OF MOTION AND
PLAINTIFF'S MOTION TO COMPEL
DEFENDANT COREY URMAN'S
RESPONSES TO PLAINTIFF'S FIRST
REQUEST FOR PRODUCTION OF
DOCUMENTS AND
INTERROGATORIES**

Date: March 8, 2023
Time: 10:00 a.m.
Courtroom: 6B

Jurisdictional Discovery Cutoff:
May 1, 2023

NOTICE OF MOTION AND PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S
RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND
INTERROGATORIES

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

JOINT STIPULATION ................................................................................... 3

I.  THE PARTIES' PRELIMINARY STATEMENTS ................................. 3

  A.  Plaintiff's Preliminary Statement ................................................. 3

  B.  Defendant's Preliminary Statement .............................................. 4

II. JOINT SPECIFICATION OF ISSUES IN DISPUTE ........................... 7

  A.  Requests for Production in Dispute .............................................. 7

  B.  Interrogatories in Dispute ........................................................... 39

III. PLAINTIFF'S POSITION ...................................................................... 44

  A.  Plaintiff's Motion To Compel .................................................... 44

    1.  Urman Cannot Avoid Discovery Just Because the
       MindGeek Entity Defendants May Provide Discovery ........... 45

    2.  Urman Refuses to Produce Documents and
       Communications Concerning Plaintiff .................................... 46

    3.  Urman Disregards this Court's Rulings Concerning the
       Permissible Scope of Jurisdictional Discovery ...................... 47

    4.  Urman Refuses to Produce Documents and Sufficient
       Information Relative to His Jurisdictional Contacts .............. 50

    5.  Urman's Privacy and Data Protection Objection is Without
       Merit ........................................................................................ 52

    6.  Urman Has Refused to Conduct a Search for Responsive
       Documents ............................................................................... 53

IV. URMAN'S POSITION ............................................................................ 54

  A.  Plaintiff's Motion to Compel Should Be Denied in Full .................... 54

    1.  Plaintiff's Motion Should Be Denied for Failure to
       Meaningfully Meet and Confer ................................................ 54

      a.  Plaintiff Has Failed to Meaningfully Meet and
         Confer ........................................................................... 54

      b.  Plaintiff's Motion Should Be Denied Due to Her
         Failure to Meet and Confer .......................................... 60

    2.  Plaintiff Improperly Seeks MindGeek Corporate Records
       from Mr. Urman (RFP Nos. 1-17, 19-31, 33-54) ................... 63

i                                CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

3.    Documents and Communications Concerning Plaintiff (RFP 1) ............................................................... 66

4.    Plaintiff's Requests Go Far Beyond Jurisdictional Discovery ........................................................................... 66

    a.    CSAM policies (RFP Nos. 5, 10, 30, 33-42, 46, 49, 52) .................................................................. 67

    b.    Where Money Flows (RFP Nos. 2-3, 6-9, 13-29, Rog Nos. 2-3) ........................................................ 67

5.    Plaintiff's Requests for Documents and Information Relative to Mr. Urman's Jurisdictional Contacts Exceed this Court's Rulings Concerning the Permissible Scope of Jurisdictional Discovery .............................................. 74

    a.    Plaintiff Seeks Information Related to Personal Contacts with the Jurisdiction (Rog No. 4, RFP Nos. 11-12) ...................................................................... 74

    b.    Plaintiff Seeks Communications with Other Defendants Related to this Action (RFP No. 4) .............. 76

    c.    Plaintiff Seeks Materials Beyond the Scope of Authorized Jurisdictional Discovery (RFP No. 32 and ROG Nos. 4) ................................................... 76

6.    Mr. Urman Has Conducted A Reasonably Diligent Search for Documents ............................................ 78

V.    CONCLUSION ............................................................. 79

    A.    Plaintiff's Conclusion ............................................... 79

    B.    Defendant's Conclusion ............................................ 79

ii    CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 8, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Autumn D. Spaeth, located at the Ronald Reagan Federal Building and United States Courthouse, Courtroom 6B, 411 West Fourth Street, Santa Ana, CA 92701, Plaintiff Serena Fleites ("Plaintiff") will move the Court for an Order compelling defendant Corey Urman to respond to discovery and produce documents pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure.

Plaintiff brings this motion pursuant to Rules 26, 33, 34, and 37 of the Federal Rules of Civil Procedure; Local Rule 37-2, and this Court's July 2018 Standing Orders on Discovery Disputes.

In accordance with L.R. 7-3 and 37-1, counsel for Plaintiff and Defendant Corey Urman conferred by telephone on December 15, 2022 and January 6, 2023.

Plaintiff bases this motion on this Notice, the Parties' Joint Stipulation regarding this discovery dispute, the pleadings and papers on file in this action, and on such other evidence as may be submitted to the Court.  Plaintiff submits a proposed order with this application.

Dated: February 8, 2023

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1

2   By: _/s/Michael J. Bowe_

3   MICHAEL J. BOWE (*pro hac vice*)
    mbowe@brownrudnick.com

4   Lauren Tabaksblat(*pro hac vice*)
    ltabaksblat@brownrudnick.com

5   **BROWN RUDNICK LLP**
    7 Times Square

6   New York, NY 10036
    Phone: (212) 209-4800

7   Fax: (212) 209-4801

8
    David M. Stein (#198256)

9   dstein@brownrudnick.com
    **BROWN RUDNICK LLP**

10  2211 Michelson Drive, 7th Floor
    Irvine, California  92612

11  Phone: 949.752.7100
    Fax: 949.252.1514

12

13  Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

## JOINT STIPULATION

**I.**     **THE PARTIES' PRELIMINARY STATEMENTS**

    **A.**     **Plaintiff's Preliminary Statement**

This Court ordered the MindGeek Defendants, including the Individual Defendants, to submit to jurisdictional discovery, (Dkt. 167, at 1), specifically identifying the following areas of relevant inquiry: "where the money flows in the Mindgeek web," which entities or individuals exercise operational control over the MindGeek entities that monetized Plaintiff's child sexual abuse material ("CSAM"), and whether these individuals and entities are alter egos of each other. (Dkt. 167, at 3 n.2, 4-7). Consistent with this Order, Plaintiff served discovery requests tracking the precise categories of information this Court held to be relevant to its jurisdictional analysis on the MindGeek Entity Defendants, the Individual Defendants, and defendants' auditors, third party-Grant Thornton. This Court thereafter affirmed the relevance of the categories of information Plaintiff seeks and issued letters rogatory to various Grant Thornton entities seeking the same categories of information that Plaintiff seeks from defendant Urman. *See* Dkt. 211 at 5-6 ("The Court agrees with Plaintiff that the information is relevant to the Court's jurisdictional analysis and ensures Plaintiff 'obtains complete and accurate information.'").

Despite two court orders, Urman has stonewalled Plaintiff's efforts to take basic jurisdictional discovery, refusing to produce any documents or even to conduct a search for responsive documents. Urman has taken the position that he is not required to participate in discovery – even to search for documents – because the Mindgeek Entity Defendants might produce discovery. But this Court has already rejected the argument that an entity or individual need not participate in discovery because the information they possess would be duplicative of documents produced by any other party, (Dkt. 211 at 4), and this holding applies with greater force where the party resisting discovery is a defendant in this action. Moreover, defendant Urman has held key management positions within the MindGeek Enterprise, including vice-

3

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1  president of product management, video-sharing platforms, and ███████████

2  ████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████

4  ███████████████████████████.[1]  *See* Doyle Decl., Exhibit 4, Resp. to ROG No.

5  1.  Accordingly, he likely possesses certain information that may not also be in the

6  possession of other defendants in this action.  Nevertheless, he has not produced a

7  single document to date.

8  Urman was obligated both to conduct a reasonable search for responsive

9  documents and to state in his responses whether he is withholding any responsive

10  materials on the basis of any of his stated objections.  The Court has already confirmed

11  that the individual defendants are part of jurisdictional discovery.  *See* Dkt. 167 at 7

12  (rejecting Individual Defendants' argument that jurisdictional discovery was

13  unwarranted and ordering Individual Defendants to submit to discovery, in part, based

14  on finding that Plaintiff "has alleged facts bearing on the MindGeek Individual

15  Defendants' direction of specific policies pursuant to which Plaintiff was harmed").

16  This Court should Order Urman to produce documents in response to Plaintiff's RFPs

17  1-30, 32-42, 46, 49, and 52 and to supplement his responses to Plaintiff's ROGs 2, 3,

18  4, and 6.[2]

19  **B.    Defendant's Preliminary Statement**

20  Defendant Corey Urman is a citizen of Canada with virtually no connection to

21  California or the United States.  During the relevant time period, he was an employee

22
23  [1] In his testimony at the 19th meeting of the Canadian House of Commons Standing
   Committee on Access to Information, Privacy and Ethics, Urman provided testimony

24  while serving in his capacity as Vice President, Product Management, Video-Sharing
   platforms and readily admitted to using the alias "Corey Price" when communicating

25  with the public.  *See* HOUSE OF COMMONS, CHAMBRE DES COMMUNES CANADA,

26  *ETHI Committee Meeting – Evidence, Friday February 5, 2021,*
   *https://www.ourcommons.ca/DocumentViewer/en/43-2/ETHI/meeting-19/evidence.*

27
   [2] Plaintiff reserves her right to further move this Court for any of the remaining RFPs
28  or ROGs which have not been fully responded to by Defendant Urman.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

of 9219-1568 Quebec, Inc., one of the MindGeek Entity Defendants, which was headquartered in Canada.  He had no contact with Plaintiff Serena Fleites and has no documents in his possession concerning her for the relevant time period.  (Akoglu Decl., ¶22).

The Court's July 29, 2022 Order (Akoglu Decl., Ex. A) permitted jurisdictional discovery of Mr. Urman and the other individual defendants with respect to two theories.  First, the Court noted that, although the Amended Complaint offered only "scattershot" and "conclusory" allegations which gave the Court "some concern that Plaintiff is merely guessing at who bears responsibility" for MindGeek CSAM policies (*id*. at 5-6), Plaintiff could take jurisdictional discovery regarding the Individual Defendants' roles in directing or implementing the MindGeek CSAM polices that allegedly resulted in Plaintiff's causes of action.  *Id*. at 6.  Second, the Court noted that, although Plaintiff's allegations were "conclusory, vague, and indeed, quite difficult to follow at times," she could take jurisdictional discovery to determine if she had "a workable alter ego theory" to impute to the Individual Defendants the contacts of the MindGeek corporate entities who concede jurisdiction. *Id*. at 6.  More recently, the Court recognized that, even authorized, "jurisdictional discovery requests must still be tailored to seek discovery that relates to an opposing party's jurisdictional contacts."  Dkt. No. 260 (Feb. 3, 2023, Order on Plaintiff's Motion to Compel).

Despite the limited scope of jurisdictional discovery, Plaintiff served 60 overbroad discovery requests (54 document requests and 6 interrogatories) on Mr. Urman and the other Individual Defendants, and has admitted that those requests sought merits discovery (in addition to addressing certain jurisdictional issues).  Even after the Court rejected Plaintiff's efforts to seek merits discovery, Plaintiff refused to narrow almost the entirety of her document requests and interrogatories.  She now seeks to compel Mr. Urman to respond to 48 of her 60 patently overbroad requests.  Her motion should be denied for several reasons.

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

*First*, Plaintiff has not meaningfully engaged in the meet-and-confer process as required by L.R. 37-1.  Despite serving requests which are so broad as to encompass virtually every piece of paper and electronic record in Mr. Urman's possession related to MindGeek for an eight-year period, she rebuffed the Individual Defendants' repeated requests to narrow her overbroad requests.  And, to make matters worse, following the January 11, 2023 hearing on Plaintiff's motion to compel the MindGeek Entities, Plaintiff claimed a willingness to meet and confer, promising to be "Back in touch shortly[,]" but then never contacted defense counsel to confer.  (Ex. Q January 18, 2023, email from D. Stein)  Instead, on February 1, 2023, Plaintiff emailed her portion of a joint stipulation on a motion to compel each Individual Defendant to respond to nearly all of her overbroad discovery requests as written, without any narrowing constructions whatsoever.  This alone is a basis to deny her motion.

*Second*, virtually all the records Plaintiff seeks are prototypical corporate records created and maintained by MindGeek, such as corporate financial statements, corporate tax returns, board minutes and corporate document preservation policies, or emails with individuals on the MindGeek email system.  Despite this, Plaintiff seeks to compel Mr. Urman to produce these records rather than MindGeek, which already has produced thousands of pages on this subject and has not been the subject of a motion to compel.  Fed. R. Civ. P. 26(b)(2)(C)(i) specifically requires a court to limit discovery where it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Here, it would plainly be "more convenient" and "less burdensome" to obtain the documents from MindGeek.

*Third*, Plaintiff's requests far exceed the scope of the jurisdictional discovery permitted by the Court.  Mr. Urman has already agreed to produce documents related to the two subjects on which jurisdictional discovery was authorized:  (1) any documents in his possession concerning Serena Fleites or reflecting formulation of MindGeek's CSAM policies; and (2) with respect to alter ego, Mr. Urman has made

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1  clear in his interrogatory responses that the ████████████████████

2  ████████████████████████████████████████████

3  ████████████████████████████████, but to the extent

4  he has records reflecting distributions to the other Individual Defendants, he has

5  agreed to produce them. Moreover, Plaintiff already has received 7,000 pages of

6  detailed financial and corporate information from MindGeek which explain the

7  structure and flow of money at the company.  This discovery provides sufficient

8  information on the subjects relevant to the alter ego theory Plaintiff was permitted to

9  explore.  The further discovery Plaintiff seeks from Mr. Urman is not "proportional"

10  under Fed. R. Civ. P. 26.

11  *Finally*, Plaintiff's arguments are laced with false accusations that Mr. Urman

12  has done no search of his documents.  That is incorrect, as Plaintiff has been told

13  repeatedly and as described below.

14  **II.    JOINT SPECIFICATION OF ISSUES IN DISPUTE**

15  **A.    Requests for Production in Dispute**

16  Request for Production No. 1: "All documents and communications concerning

17  Serena Fleites."

18

19  Response to Request for production No. 1: "In addition to the above

20  Preliminary Statement and General Objections, Mr. Urman objects to this

21  Request on the grounds it is not proportional to the needs of addressing the

22  Court's exercise of personal jurisdiction over Mr. Urman or to the Court's

23  assessment of the viability of Plaintiff's alter ego arguments.  Mr. Urman

24  further objects to this Request to the extent it assumes that "communications"

25  are "jurisdictional contacts" or are relevant to the question of whether the Court

26  has personal jurisdiction over Mr. Urman.  Mr. Urman further objects to the

27  term "concerning Serena Fleites" as vague and overbroad.  Mr. Urman further

28  objects to this Request on the basis that it is duplicative of information already

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1   sought by Plaintiff from MindGeek.  Mr. Urman further objects to this Request

2   to the extent it seeks documents currently in the exclusive control of MindGeek.

3   Subject to and without waiving any and all objections, Mr. Urman states that

4   he has no communications with Serena Fleites, but acknowledges his obligation

5   to timely update this response as warranted."

6

7   Request for Production No. 2: "All documents and communications concerning

8   or relating to Your affiliation with, employment by, or ownership of MindGeek,

9   any MindGeek Related Entity, or any MindGeek Tubesites."

10

11   Response to Request for Production No. 2: "In addition to the above

12   Preliminary Statement and General Objections, Mr. Urman objects to the

13   undefined term "affiliation."  Mr. Urman further objects to this Request on the

14   grounds it is overbroad, unduly burdensome, not reasonably calculated to lead

15   to the discovery of admissible evidence, and not proportional to the needs of

16   the case, particularly to the needs of addressing the Court's exercise of personal

17   jurisdiction over Mr. Urman or to the Court's assessment of the viability of

18   Plaintiff's alter ego arguments.  Mr. Urman further objects to the extent this

19   Request seeks information protected by the attorney-client privilege or work

20   product doctrine. Mr. Urman further objects to this Request on the basis that it

21   is duplicative of information already sought by Plaintiff from MindGeek.  Mr.

22   Urman further objects to this Request to the extent it seeks documents currently

23   in the exclusive control of MindGeek.  Subject to and without waiving any and

24   all objections, Mr. Urman refers to and incorporates his response to

25   Interrogatory No. 1, and agrees to meet and confer should there be remaining

26   questions on this topic."

27

28   Request for Production No. 3: "All documents and communications concerning

8

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

or reflecting any income, revenue, or other monies You have received from MindGeek, any MindGeek Related Entity, or any MindGeek Tubesites."

Response to Request for Production No. 3: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Mr. Urman further objects to the extent this Request seeks information protected by the attorney-client privilege or work product doctrine.  Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 4: "All documents and communications between and among You and any of the Defendants related to this Action."

Response to Request for Production No. 4: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Mr. Urman further objects to the extent this Request seeks information protected by the attorney-client privilege or work product doctrine.  Mr. Urman further objects to this Request

9

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 5: "All documents and communications between and among You and any of the Defendants related to the presence of any CSAM on any MindGeek site, any MindGeek Related Entity site, or any MindGeek Tubesites."

Response to Request for Production No. 5: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Mr. Urman further objects to the extent this Request seeks information protected by the attorney-client privilege or work product doctrine.  Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 6: "All documents describing, depicting, explaining, or relating to the past or present corporate and ownership organization and structure of MindGeek, the identity of all affiliated or related party entities, corporations, limited partnerships, limited liability companies, partnerships, or other entities; the nature of the direct, indirect or beneficial ownership or other interests held by any such person, entity, or organization; and the owners, members, directors, managers, lenders, secured parties, general

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

or limited partners, executives, and outside law firms and accountants of such entities."

Response to Request for Production No. 6: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Nor is the Request limited to the entities who are parties to this lawsuit.  Mr. Urman further objects to the extent this Request seeks information protected by the attorney-client privilege or work product doctrine.  Mr. Urman further objects to producing documents identifying all managers, lenders, secured parties, executives, outside law firms or accountants as unrelated to the issue of personal jurisdiction over Mr. Urman.  Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 7: "All documents related to any past or present, direct, indirect, or beneficial ownership, lending, or secured or other economic interest in, or business relationship with, MindGeek or any MindGeek Related Entity by You or any of the other Individual Defendants, Colbeck Capital, JP Morgan Chase, Fortress Investment Group, Cornell, Bjorn Daniel Sudan, or Shaileshkumar P. Jain (a/k/a "Sam" Jain) or individuals or entities introduced or represented by such persons or entities."

CASE NO. 21-CV-04920-CJC-ADS
**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    Response to Request for Production No. 7: "In addition to the above
2    Preliminary Statement and General Objections, Mr. Urman objects to this
3    Request on the grounds it is overbroad, unduly burdensome, not reasonably
4    calculated to lead to the discovery of admissible evidence, and not proportional
5    to the needs of the case, particularly to the needs of addressing the Court's
6    exercise of personal jurisdiction over Mr. Urman or to the Court's assessment
7    of the viability of Plaintiff's alter ego arguments. Nor is the Request limited to
8    the entities who are parties to this lawsuit.  Mr. Urman further objects on the
9    grounds that the phrase "beneficial ownership or other interests" is vague and
10   ambiguous.  Mr. Urman further objects to this Request on the basis that it is
11   duplicative of information already sought by Plaintiff from MindGeek.  Mr.
12   Urman further objects to this Request to the extent it seeks documents currently
13   in the exclusive control of MindGeek.

14

15   Subject to and without waiving any and all objections, Mr. Urman refers to and
16   incorporates his response to Interrogatory No. 1, and agrees to meet and confer
17   should there be remaining questions on this topic."

18

19   Request for Production No. 8: "All documents related to any past or present,
20   direct, indirect or beneficial ownership, licensing, or secured or other economic
21   interest of, or in, any intellectual property owned or licensed, directly or
22   indirectly by You related to MindGeek, any MindGeek Related Entity, or any
23   MindGeek Tubesites."

24

25   Response to Request for Production No. 8: "In addition to the above
26   Preliminary Statement and General Objections, Mr. Urman objects to this
27   Request on the grounds it is overbroad, unduly burdensome, not reasonably
28   calculated to lead to the discovery of admissible evidence, and not proportional

12                    CASE NO. 21-CV-04920-CJC-ADS
**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1   to the needs of the case, particularly to the needs of addressing the Court's

2   exercise of personal jurisdiction over Mr. Urman or to the Court's assessment

3   of the viability of Plaintiff's alter ego arguments. Nor is it limited to the entities

4   who are parties to this lawsuit or intellectual property related to either Pornhub

5   or the claims at issue in this litigation.  Mr. Urman further objects to this

6   Request on the basis that it is duplicative of information already sought by

7   Plaintiff from MindGeek. Mr. Urman further objects to this Request to the

8   extent it seeks documents currently in the exclusive control of MindGeek."

9

10  Request for Production No. 9: "All documents describing, depicting,

11  explaining, or relating to MindGeek's past or present internal organizational

12  structure, offices, departments, executives, and personnel."

13

14  Response to Request for Production No. 9: "In addition to the above

15  Preliminary Statement and General Objections, Mr. Urman objects to this

16  Request on the grounds it is overbroad, unduly burdensome, not reasonably

17  calculated to lead to the discovery of admissible evidence, and not proportional

18  to the needs of the case, particularly to the needs of addressing the Court's

19  exercise of personal jurisdiction over Mr. Urman or to the Court's assessment

20  of the viability of Plaintiff's alter ego arguments. Nor is the Request limited to

21  the entities who are parties to this lawsuit. Mr. Urman further objects on the

22  grounds that the phrase "internal organizational structure" is vague and

23  ambiguous. Mr. Urman further objects that this Request is overbroad and

24  unduly burdensome to that extent it seeks "all documents... relating to…

25  personnel." Mr. Urman further objects to this Request as overbroad and unduly

26  burdensome to the extent it asks Mr. Urman to produce documents identifying

27  the employees of all MindGeek entities for a seven-year period.  Mr. Urman

28  further objects to this Request on the basis that it is duplicative of information

13   CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

already sought by Plaintiff from MindGeek. Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 10: "All documents identifying all MindGeek or outside personnel or vendors with any current or past responsibility for moderating, monitoring, formatting, optimizing, filtering, reviewing, screening, or removing content on any MindGeek platform or website, the entities they were retained and employed by, and the entities that they were compensated by, whether salary, bonus or otherwise."

Response to Request for Production No. 10: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments. Nor is the Request limited to the entities who are parties to this lawsuit. Mr. Urman further objects on the grounds that terms "outside personnel" and "vendors" is vague and ambiguous. Mr. Urman further objects to the extent this Request is not limited to Pornhub, the only tubesite on which Plaintiff alleges content depicting her was uploaded. Mr. Urman further objects to this Request as overbroad and unduly burdensome to the extent it asks Mr. Urman to produce documents identifying the employees of all MindGeek entities for a seven-year period. Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek. Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

MindGeek."

Request for Production No. 11: "All documents and communications relating to Your or MindGeek's past or present jurisdictional contacts with the United States or California, including but not limited to, offices, residences, and real estate located in California or any jurisdiction in the United States."

Response to Request for Production No. 11: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Mr. Urman further objects on the grounds that phrase "jurisdictional contacts" is vague and ambiguous and calls for legal conclusions.  Mr. Urman further objects to this Request to the extent it assumes that any of the contacts identified in the Request are "jurisdictional contacts" or that the actions or "contacts" of MindGeek are relevant to the question of whether the Court has personal jurisdiction over Mr. Urman.  Mr. Urman further objects that "contacts" generally in or with the United States are not relevant to whether personal jurisdiction exists in California.  Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek.

Subject to and without waiving any and all objections, Mr. Urman refers to and incorporates his response to Interrogatory No. 4, and agrees to meet and confer should there be remaining questions on this topic."

CASE NO. 21-CV-04920-CJC-ADS
**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Request for Production No. 12: "All documents and communications relating to Your or MindGeek's personnel or vendors employed, retained, paid, located in, or otherwise providing services in California or any jurisdiction in the United States; political activities in California or any jurisdiction in the United States, including through direct or indirect participation in, or financial support for, lobbying, trade, or industry, or activist organizations; trips to California or any jurisdiction in the United States; servers; revenues, profits, expenses, taxes earned or paid in or from California or any jurisdiction in the United States; and communications or business relationships with, to, from, or in California or any jurisdiction in the United States."

Response to Request for Production No. 12: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Mr. Urman further objects to the terms "vendors" and "lobbying, trade, or industry, or activist organizations" as vague and ambiguous. Mr. Urman further objects to the Request for information regarding unspecified communications and unspecified business relationships that have no connection the allegations in this case.  Mr. Urman further objects to this Request as duplicative of Request No. 11.  Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek.

Subject to and without waiving any and all objections, Mr. Urman refers to and incorporates his response to Interrogatory No. 4, and agrees to meet and confer

16

should there be remaining questions on this topic."

Request for Production No. 13: "All documents reflecting annual revenues, profits and losses, and expenses for each MindGeek Related Entity or MindGeek Tubesite or the entity that owns or controls that platform or website."

Response to Request for Production No. 13: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Nor is it limited to the entities who are parties to this lawsuit. Mr. Urman further objects to the extent this Request is not limited to Pornhub, the only tubesite on which Plaintiff alleges content depicting her was uploaded, or to MG Freesites Ltd, the entity that operates Pornhub.  Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 14: "All documents concerning, reflecting, describing, or relating to, or comprising of presentations to or from, proposed transactions from, or data and information provided or made available to, any actual or potential investors, lenders, secured parties, licensees, purchasers, or others concerning MindGeek or any MindGeek Related Entity."

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Response to Request for Production No. 14: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Nor is it limited to the entities who are parties to this lawsuit.  Mr. Urman also objects on the grounds that the term "or others" is vague and ambiguous.  As written this Request also is overbroad and unduly burdensome to the extent it seeks all documents reflecting "information provided or made available to . . . others."  Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 15: "All transaction documents, term sheets, and communications concerning any actual or proposed transactions involving the ownership of, loans to, secured interest in, or intellectual property or other rights related to MindGeek."

Response to Request for Production No. 15: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Nor is it limited to the entities

18

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

who are parties to this lawsuit. Mr. Urman also objects on the grounds that the term "other rights" is vague and ambiguous. Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek. Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 16: "For each MindGeek entity, affiliate, subsidiary, or related entity, all financial, ledgers; shareholder, investor, director, member, manager, or partner lists; board presentation materials, board minutes, and calendars of board meetings or conferences; records reflecting capitalization, revenues, profits, tax payments, distributions or dividends, and distribution or dividend recipients for such entities; articles of incorporation or formation, by-laws, shareholder and lender agreements; profit and loss, balance sheet, tax, payroll, and expense records; and records reflecting the sources of all payments made to or on behalf of the entity, affiliate, subsidiary, or related entity."

Response to Request for Production No. 16: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments. Nor is it limited to the individuals or entities who are parties to this lawsuit. Mr. Urman objects to the phrase "records reflecting the sources of all payments made to or on behalf of the entity, affiliate, subsidiary, or related entity" as vague and ambiguous. Mr. Urman objects to the production of financial ledgers, lists of investors or

19

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

managers, lender agreements, payroll and expense records, and sources of payments as unrelated to any claim in this case or to personal jurisdiction.  Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek. Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 17: "For each MindGeek Entity, affiliate, subsidiary, or Related Entity, all quarterly and annual tax filings, audits, financials, and statutory reporting, including work papers and reports of its outside accountants."

Response to Request for Production No. 17: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Nor is it limited to the entities who are parties to this lawsuit.  Mr. Urman objects to the term "work papers" as vague and ambiguous. Mr. Urman objects to the production of quarterly tax filings, audits, statutory reporting and any work product or reports prepared by outside accountants. Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 18: "Your monthly, quarterly, and annual bank and

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

investment statements."

Response to Request for Production No. 18: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments. Mr. Urman objects to the term "investment statement" as vague and ambiguous. Mr. Urman objects to the production of any work product or reports prepared by outside accountants."

Request for Production No. 19: "All documents and communications related to any corporate reorganization by MindGeek and the purposes behind that reorganization."

Response to Request for Production No. 19: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments. Mr. Urman objects to the term "corporate reorganization" as vague and ambiguous.  Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

CASE NO. 21-CV-04920-CJC-ADS
**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    Request for Production No. 20: "All documents or communications identifying

2    the various subsidiaries comprising the business of MindGeek."

3

4    Response to Request for Production No. 20: "In addition to the above

5    Preliminary Statement and General Objections, Mr. Urman objects to this

6    Request on the grounds it is overbroad, unduly burdensome, not reasonably

7    calculated to lead to the discovery of admissible evidence, and not proportional

8    to the needs of the case, particularly to the needs of addressing the Court's

9    exercise of personal jurisdiction over Mr. Urman or to the Court's assessment

10   of the viability of Plaintiff's alter ego arguments. Mr. Urman objects to the term

11   "various subsidiaries" as vague and ambiguous.  Mr. Urman further objects to

12   this Request on the basis that it is duplicative of information already sought by

13   Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the

14   extent it seeks documents currently in the exclusive control of MindGeek."

15

16   Request for Production No. 21: "All documents identifying the directors,

17   managers, members, executives, and personnel of the various subsidiaries

18   comprising the business of MindGeek."

19

20   Response to Request for Production No. 21: "In addition to the above

21   Preliminary Statement and General Objections, Mr. Urman objects to this

22   Request on the grounds it is overbroad, unduly burdensome, not reasonably

23   calculated to lead to the discovery of admissible evidence, and not proportional

24   to the needs of the case, particularly to the needs of addressing the Court's

25   exercise of personal jurisdiction over Mr. Urman or to the Court's assessment

26   of the viability of Plaintiff's alter ego arguments. Nor is it limited to the

27   individuals or entities who are parties to this lawsuit. Mr. Urman further objects

28   to this Request as duplicative of Request No. 6. Mr. Urman further objects to

22                         CASE NO. 21-CV-04920-CJC-ADS

this Request as overbroad and unduly burdensome to the extent it asks Mr. Urman to identify the employees of all MindGeek entities for a seven-year period.  Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 22: "All documents identifying the companies organized and existing under the laws of multiple jurisdictions where MindGeek has assets, operates businesses, or provides services and the nature of the assets, businesses, or services."

Response to Request for Production No. 22: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Nor is it limited to the entities who are parties to this lawsuit. Mr. Urman further objects to this Request on the grounds that it is overbroad and unduly burdensome to the extent it seeks the production of all documents identifying the "assets, businesses, or services" of all MindGeek entities. Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek. Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request No. 23: "All documents identifying the entities providing services to

23

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    MG Freesites LTD."

2

3    <u>Response to Request for Production No. 23</u>:  "In addition to the above
4    Preliminary Statement and General Objections, Mr. Urman objects to this
5    Request on the grounds it is overbroad, unduly burdensome, not reasonably
6    calculated to lead to the discovery of admissible evidence, and not proportional
7    to the needs of the case, particularly to the needs of addressing the Court's
8    exercise of personal jurisdiction over Mr. Urman or to the Court's assessment
9    of the viability of Plaintiff's alter ego arguments.  Mr. Urman further objects to
10    this Request on the basis that it is duplicative of information already sought by
11    Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the
12    extent it seeks documents currently in the exclusive control of MindGeek."

13

14    <u>Request for Production No. 24</u>: "All documents identifying the bank accounts,
15    services, payments, written agreements, third parties providing transfer pricing
16    studies, pricing studies and price ranges, accounting, and tax determinations."

17

18    <u>Response to Request for Production No. 24</u>: "In addition to the above
19    Preliminary Statement and General Objections, Mr. Urman objects to this
20    Request on the grounds it is overbroad, unduly burdensome, not reasonably
21    calculated to lead to the discovery of admissible evidence, and not proportional
22    to the needs of the case, particularly to the needs of addressing the Court's
23    exercise of personal jurisdiction over Mr. Urman or to the Court's assessment
24    of the viability of Plaintiff's alter ego arguments.  Nor is it limited to the entities
25    who are parties to this lawsuit.  Mr. Urman further objects to this Request as
26    vague and ambiguous as requesting "the bank accounts, services, payments,
27    written agreements, third parties providing transfer pricing studies, pricing
28    studies and price ranges, accounting, and tax determinations" of an unidentified

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

person or entity. Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek. Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 25: "All audited financial statements and all related communications with auditors regarding the same."

Response to Request for Production No. 25: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments. Mr. Urman further objects to the term "regarding the same" as vague and ambiguous. Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek. Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 26: "All documents identifying the distinct legal entities of MindGeek and any of the MindGeek Related Entities."

Response to Request for Production No. 26: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

to the needs of the case, particularly to the needs of addressing the Court's
exercise of personal jurisdiction over Mr. Urman or to the Court's assessment
of the viability of Plaintiff's alter ego arguments.  Nor is the Request limited to
the entities who are parties to this lawsuit.  Mr. Urman further objects to this
Request on the basis that it is duplicative of information already sought by
Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the
extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 27: "All documents related to the support services
MG Global Entertainment has provided."

Response to Request for Production No. 27: "In addition to the above
Preliminary Statement and General Objections, Mr. Urman objects to this
Request on the grounds it is overbroad, unduly burdensome, not reasonably
calculated to lead to the discovery of admissible evidence, and not proportional
to the needs of the case, particularly to the needs of addressing the Court's
exercise of personal jurisdiction over Mr. Urman or to the Court's assessment
of the viability of Plaintiff's alter ego arguments.  Nor is it limited to the entities
who are parties to this lawsuit.  Mr. Urman further objects to this Request on
the basis that it is duplicative of information already sought by Plaintiff from
MindGeek.  Mr. Urman further objects to this Request to the extent it seeks
documents currently in the exclusive control of MindGeek."

Request for Production No. 28: "All documents related to the services provided
by 9219-1568 Quebec Inc."

Response to Request for Production No. 28: "In addition to the above
Preliminary Statement and General Objections, Mr. Urman objects to this

Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Nor is it limited to the entities who are parties to this lawsuit.  Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 29: "All documents relating to MindGeek related payments, investments, or loans to, in, or for any personal affairs, expenses, entities, businesses, real estate, or investments related to You or any of the Individual Defendants, or any of their family members or entities in which either You or a family[2] member holds a direct or indirect interest."

Response to Request for Production No. 29: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Nor is it limited to the entities who are parties to this lawsuit.  Mr. Urman further objects to this Request as duplicative of Request Nos. 2 and 3.  Mr. Urman further objects that this Request seeks information more appropriately sought from other parties.  Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek.  Mr. Urman further

objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 30: "All documents related to the purported resignation of Feras Antoon and You as CEO and COO of MindGeek respectively, including, but not limited to, any documents related to any investigation, allegations, or reports of their using Mindgeek assets and monies for their personal affairs, investments, or businesses."

Response to Request for Production No. 30: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Nor is it limited to the entities who are parties to this lawsuit.  Mr. Urman further objects to this Request on the grounds that it seeks material after the end of the Relevant Time Period. Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 32: "All contact lists maintained by You or any of the Individual Defendants as well as documents sufficient to show all cell and other phone numbers and messaging services used by each individual."

Response to Request for Production No. 32: "In addition to the above

CASE NO. 21-CV-04920-CJC-ADS
**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Mr. Urman further objects that this Request seeks information more appropriately sought from other parties.

Subject to and without waiving any and all objections, Mr. Urman refers to and incorporates his response to Interrogatory No. 6, and agrees to meet and confer should there be remaining questions on this topic."

Request for Production No. 33: "All documents or communications identifying, depicting, explaining, or describing any programs or technology MindGeek acquired, employed, used, or considered to moderate, monitor, format, optimize, filter, review, screen, or remove content on its websites, including the dates such technology was acquired, employed, or considered.

Response to Request for Production No. 33: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Mr. Urman further objects to the extent this Request seeks information protected by the attorney-client privilege or work product doctrine.  Mr. Urman further objects to this Request

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

on the basis that it is duplicative of information already sought by Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 34: "All documents or communications related to MindGeek's policies, manuals, practices, processes, and rules for moderating, monitoring, formatting, optimizing, filtering, reviewing, screening, or removing content on its platforms and websites, including all prohibited words, phrases, categories, and "genres" and all processes and reports concerning search engine optimization of such content."

Response to Request for Production No. 34: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Mr. Urman also objects that this Request is not limited to Pornhub, the only tubesite on which Plaintiff alleges content depicting her was uploaded.  Mr. Urman further objects to this Request on the grounds that it is not proportionate to the claims made in this case which are limited to allegations concerning the uploading and moderation of CSAM.  Mr. Urman further objects to the extent this Request seeks information protected by the attorney-client privilege or work product doctrine.  Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    Request for Production No. 35: "All documents and communications

2    describing MindGeek's policies and procedures for preserving hard copy and

3    electronic documents and content."

4

5    Response to Request for Production No. 35: "In addition to the above

6    Preliminary Statement and General Objections, Mr. Urman objects to this

7    Request on the grounds it is overbroad, unduly burdensome, not reasonably

8    calculated to lead to the discovery of admissible evidence, and not proportional

9    to the needs of the case, particularly to the needs of addressing the Court's

10   exercise of personal jurisdiction over Mr. Urman or to the Court's assessment

11   of the viability of Plaintiff's alter ego arguments. Mr. Urman further objects to

12   the extent this Request seeks information protected by the attorney-client

13   privilege or work product doctrine.  Mr. Urman further objects to this Request

14   on the basis that it is duplicative of information already sought by Plaintiff from

15   MindGeek.  Mr. Urman further objects to this Request to the extent it seeks

16   documents currently in the exclusive control of MindGeek."

17

18   Request for Production No. 36: "All documents and communications reflecting

19   rosters, schedules, training materials, performance reviews and metrics for

20   personnel or outside contractors or vendors involved in moderating, formatting,

21   optimization, filtering, screening, or removing content from MindGeek's

22   platforms and websites."

23

24   Response to Request for Production No. 36: "In addition to the above

25   Preliminary Statement and General Objections, Mr. Urman objects to this

26   Request on the grounds it is overbroad, unduly burdensome, not reasonably

27   calculated to lead to the discovery of admissible evidence, and not proportional

28   to the needs of the case, particularly to the needs of addressing the Court's

31                                        CASE NO. 21-CV-04920-CJC-ADS
PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES

exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments. Mr. Urman also objects that this Request is not limited to Pornhub, the only tubesite on which Plaintiff alleges content depicting her was uploaded.  Mr. Urman further objects to this Request as overbroad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "performance reviews and metrics for personnel or outside contractors or vendors" for individuals who did not perform any work related to content depicting Plaintiff.  Mr. Urman also objects to the term "metrics" as vague and ambiguous.  Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 37: "All documents and communications identifying all content categories, "genres," or similar descriptors MindGeek has included, recommended, or offered to users of its platforms and websites."

Response to Request for Production No. 37: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments. Mr. Urman further objects on the grounds that the terms "'genres' or similar descriptors" are vague and ambiguous. Mr. Urman also objects that this Request is not limited to Pornhub, the only tubesite on which Plaintiff alleges content depicting her was uploaded. Mr. Urman further objects to this Request on the basis that it is duplicative of

32

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1   information already sought by Plaintiff from MindGeek.  Mr. Urman further

2   objects to this Request to the extent it seeks documents currently in the

3   exclusive control of MindGeek."

4

5   Request for Production No. 38: "All documents consisting of, or reflecting,

6   reports, communications, data, or actions related to content reviewed or

7   screened by any technology, programs, or internal or external personnel

8   concerning actual or suspected CSAM, nonconsensual, prohibited, or illegal

9   content."

10

11  Response to Request for Production No. 38: "In addition to the above

12  Preliminary Statement and General Objections, Mr. Urman objects to this

13  Request on the grounds it is overbroad, unduly burdensome, not reasonably

14  calculated to lead to the discovery of admissible evidence, and not proportional

15  to the needs of the case, particularly to the needs of addressing the Court's

16  exercise of personal jurisdiction over Mr. Urman or to the Court's assessment

17  of the viability of Plaintiff's alter ego arguments.  Mr. Urman also objects on

18  the grounds that the terms "actions" and "external personnel" are vague and

19  ambiguous. Mr. Urman further objects to this Request as overbroad and unduly

20  burdensome to the extent it seeks documents concerning any content other than

21  content depicting Plaintiff.  Mr. Urman also objects that this Request is not

22  limited to Pornhub, the only tubesite on which Plaintiff alleges content

23  depicting her was uploaded.  Mr. Urman further objects to the extent this

24  Request seeks information protected by the attorney-client privilege or work

25  product doctrine.  Mr. Urman further objects to this Request on the basis that it

26  is duplicative of information already sought by Plaintiff from MindGeek.  Mr.

27  Urman further objects to this Request to the extent it seeks documents currently

28  in the exclusive control of MindGeek."

CASE NO. 21-CV-04920-CJC-ADS
PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES

Request for Production No. 39: "All documents concerning complaints, reports, communications, and requests concerning, non-consensual, prohibited, or illegal content on any MindGeek platform or website,  including all documents and communications with or concerning any associated investigation, actions, and internal and external communications concerning the same."

Response to Request for Production No. 39: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments. Mr. Urman also objects on the grounds that the term "actions" is vague and ambiguous. Mr. Urman further objects to this Request as overbroad and unduly burdensome to the extent it seeks documents concerning any content other than content depicting Plaintiff. Mr. Urman also objects that this Request is not limited to Pornhub, the only tubesite on which Plaintiff alleges content depicting her was uploaded. Mr. Urman further objects to the extent this Request seeks information protected by the attorney-client privilege or work product doctrine.  Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 40: "All documents and communications reflecting processes, standards, and technologies that MindGeek employed to prevent the

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

presence of child pornography, CSAM, non-consensual, prohibited, or illegal content on its platforms or websites; the dates on which such processes, standards, and technologies were employed; and the people most knowledgeable about each."

Response to Request for Production No. 40: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Mr. Urman further objects to this Request as overbroad and unduly burdensome to the extent it seeks documents concerning any content other than content depicting Plaintiff.  Mr. Urman also objects that this Request is not limited to Pornhub, the only tubesite on which Plaintiff alleges content depicting her was uploaded. Mr. Urman further objects to the extent this Request seeks information protected by the attorney-client privilege or work product doctrine.  Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 41: "All documents and communications reflecting policies, practices, rules, guidelines, programs, or plans concerning the moderation, monitoring, review, formatting, analysis or search and social media use and optimization of content on MindGeek platforms and websites, including, but not limited to, with respect to content uploaded with associated languages other than English."

PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES

Response to Request for Production No. 41: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Mr. Urman also objects to the extent this Request seeks documents related to "content uploaded with associated languages other than English," as overbroad because Plaintiff does not allege her content was uploaded with "associated languages."  Mr. Urman further objects to this Request as overbroad and unduly burdensome to the extent it seeks documents concerning any content other than content depicting Plaintiff.  Mr. Urman also objects that this Request is not limited to Pornhub, the only tubesite on which Plaintiff alleges content depicting her was uploaded.  Mr. Urman further objects to the extent this Request seeks information protected by the attorney-client privilege or work product doctrine.  Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 42: "All documents and communications concerning MindGeek's policies, practices, and compliance related to 18 U.S.C. § 2257."

Response to Request for Production No. 42: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Mr. Urman further objects that this Request is not limited to Pornhub, the only tubesite on which Plaintiff alleges content depicting her was uploaded.  Mr. Urman further objects to the extent this Request seeks information protected by the attorney-client privilege or work product doctrine. Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

Request for Production No. 46: "Any internal or external expert or consultant reports provided to MindGeek concerning its technology, processes, policies, and practices concerning CSAM, nonconsensual, prohibited, or illegal content."

Response to Request for Production No. 46: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments.  Mr. Urman further objects that this Request is not limited to Pornhub, the only tubesite on which Plaintiff alleges content depicting her was uploaded.  Mr. Urman further objects to the extent this Request seeks information protected by the attorney-client privilege or work product doctrine. Mr. Urman further objects to this Request on the

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1   basis that it is duplicative of information already sought by Plaintiff from

2   MindGeek.  Mr. Urman further objects to this Request to the extent it seeks

3   documents currently in the exclusive control of MindGeek."

4

5   Request for Production No. 49: "All documents or communications concerning

6   any internal or external review of MindGeek content for CSAM, non-

7   consensual, prohibited, or illegal content, including, but not limited to, the

8   review undertaken beginning in or about the end of 2020 and the beginning of

9   2021 and the review that led to the report to NCMEC that was described in the

10   June 20, 2022 New Yorker magazine."

11

12   Response to Request for Production No. 49: "In addition to the above

13   Preliminary Statement and General Objections, Mr. Urman objects to this

14   Request on the grounds it is overbroad, unduly burdensome, not reasonably

15   calculated to lead to the discovery of admissible evidence, and not proportional

16   to the needs of the case, particularly to the needs of addressing the Court's

17   exercise of personal jurisdiction over Mr. Urman or to the Court's assessment

18   of the viability of Plaintiff's alter ego arguments.  Mr. Urman further objects

19   that this Request is not limited to Pornhub, the only tubesite on which Plaintiff

20   alleges content depicting her was uploaded.  Mr. Urman also objects to this

21   Request as overbroad and unduly burdensome to the extent it seeks documents

22   concerning any content other than content depicting Plaintiff.   Mr. Urman

23   further objects to the extent this Request seeks information protected by the

24   attorney-client privilege or work product doctrine. Mr. Urman further objects

25   to this Request on the basis that it is duplicative of information already sought

26   by Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the

27   extent it seeks documents currently in the exclusive control of MindGeek."

28

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Request for Production No. 52: "All documents concerning communications with the media, news organizations, journalists, legislators, law enforcement, regulators, quasi-governmental agencies, media relations companies, the Free Speech Coalition, 5wPR, or on social media platforms either directly, through aliases, or through agents, surrogates, or other social media participants concerning CSAM, non-consensual, prohibited, or illegal content on MindGeek's platforms or websites or internal or external news, media or other reports, allegations, or complaints regarding the same."

Response to Request for Production No. 52: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to this Request on the grounds it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman or to the Court's assessment of the viability of Plaintiff's alter ego arguments. Nor is it limited to the entities who are parties to this lawsuit.  Mr. Urman also objects that this Request is not limited to Pornhub, the only tubesite on which Plaintiff alleges content depicting her was uploaded.  Mr. Urman further objects to this Request on the basis that it is duplicative of information already sought by Plaintiff from MindGeek.  Mr. Urman further objects to this Request to the extent it seeks documents currently in the exclusive control of MindGeek."

## B.    Interrogatories in Dispute

Interrogatory No. 2: "Describe in detail each transaction during the Relevant Time Period in which ownership, shares, indebtedness, secured interests, options, derivatives, or other capital related transactions occurred involving a MindGeek Related Entity, and identify the direct and indirect participants in

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1  those transactions."

2

3  Response to Interrogatory No. 2: "In addition to the above Preliminary

4  Statement and General Objections, Mr. Urman objects to the undefined terms

5  and phrases "detail," "transaction(s)," "ownership," "equity," "shareholding,"

6  "secured interest," "indebtedness," "option," "derivative," and "trust" on the

7  grounds they are vague, ambiguous, and overbroad. Mr. Urman further objects

8  to this Interrogatory to the extent that it (i) seeks privileged information and

9  communications; (ii) is compound; and (iii) seeks information unrelated to or

10  outside the scope of the "jurisdictional discovery" permitted from Mr. Urman

11  by the Court's Order dated July 29, 2022 (Dkt. 167). Subject to and without

12  waiving the above Specific and General Objections, Mr. Urman responds that

13  he has a recollection that at some time during the Relevant Time Period, one of

14  the MindGeek Defendants completed a refinancing, but Mr. Urman cannot

15  specify which one. Other than this recollection, Mr. Urman further responds

16  that he lacks sufficient knowledge of information responsive to this

17  Interrogatory and does not have possession, custody, or control of documents

18  responsive to this Interrogatory."

19

20  Supplemental Response to Interrogatory No. 2:  Subject to and without waiving

21  the above Specific and General Objections, in addition to the response above,

22  Mr. Urman responds that, other than the compensation and dividends he

23  received from 9219, he did not participate financially in any capital-related

24  transactions involving MindGeek or any of the Individual Defendants.

25

26  Interrogatory No. 3: "Identify the date, participants, and content for every

27  presentation or communication of financial or other economic performance to

28  investors, lenders, or others with direct or indirect financial interests in any

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

MindGeek Related Entity."

Response to Interrogatory No. 3: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to the undefined terms and phrases "content," "presentation," "financial or other economic performance," and "direct or indirect financial interests" on the grounds they are vague, ambiguous, and overbroad. Mr. Urman further objects to this Interrogatory to the extent that it (i) seeks privileged information and communications; (ii) is compound; and (iii) seeks information unrelated to or outside the scope of the "jurisdictional discovery" permitted from Mr. Urman by the Court's Order dated July 29, 2022 (Dkt. 167). Subject to and without waiving the above Specific and General Objections, Mr. Urman responds that he recalls some meetings where there was a discussion and/or review of financial performance during the Relevant Time Period. Other than this recollection, Mr. Urman further responds that he lacks sufficient knowledge of information responsive to this Interrogatory and does not have possession, custody, or control of documents responsive to this Interrogatory.

Interrogatory No. 4: "Describe in detail all direct or indirect jurisdictional contacts within the relevant jurisdictions, *i.e.* the United States and California, that You or Your agents, or any of the MindGeek Related Entities and their owners, executives, and employees, have or had during the Relevant Time Period, including but not limited to, offices, residences, and real estate located in the relevant jurisdictions; personnel or vendors employed, retained, or paid located in the relevant jurisdictions; trips to the relevant jurisdictions; and revenues, profits, expenses, taxes earned or paid in or from the relevant jurisdictions; and communications or business relationships with, to, or in either of the relevant jurisdictions."

41

Response to Interrogatory No. 4: "In addition to the above Preliminary Statement and General Objections, Mr. Urman objects to the undefined terms and phrases "detail," "jurisdictional contacts," "offices," "residences," "real estate," "personnel," "vendors," "revenues," "profits," "expenses," and "taxes" on the grounds they are vague, ambiguous, and overbroad. Mr. Urman further objects to this Interrogatory to the extent that it (i) seeks privileged information and communications; and (ii) is compound. Subject to and without waiving the above Specific and General Objections, Mr. Urman responds that he took approximately between 3 to 12 trips a year to the United States related to MindGeek business during the Relevant Time Period. None of these trips related to Plaintiff or the claims in this action."

Interrogatory No. 6: "Identify all social media accounts, email accounts, cell numbers, text, or other communications services or applications used by the Individual Defendants directly or through any MindGeek Related Entity during the Relevant Time Period."

Response to Interrogatory No. 6: "In addition to the Preliminary Statement and General Objections set forth above, Mr. Urman objects to the undefined phrase "other communications services or applications" on the grounds it is vague, ambiguous, and overbroad. Mr. Urman further objects to this Interrogatory to the extent that it (i) is overly broad and seeks information not relevant to the subject matter of the instant action; (ii) seeks privileged information and communications; (iii) is compound; and (iv) seeks information unrelated to or outside the scope of the "jurisdictional discovery" permitted from Mr. Urman by the Court's Order dated July 29, 2022 (Dkt. 167). Subject to and without waiving these Specific and General Objections, Mr. Urman responds that during the Relevant Time Period, ███████████████████

CASE NO. 21-CV-04920-CJC-ADS

PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES



Supplemental Response to Interrogatory No. 6: "Subject to and without waiving these Specific and General Objections, in addition to the response above, Mr. Urman responds that during the Relevant Time Period, ███ ████████████████████████████████████████████."

Amended Supplemental Response to Interrogatory No. 6: Subject to and without waiving these Specific and General Objections, in addition to the response above, Mr. Urman responds that during the Relevant Time Period:

- ███████████████████████████████████████
- ███████████████████████████████████████
- ███████████████████████████████████████

---

[3] Where Mr. Urman notes that he may have had access to or used an account or communication means, he does not recall using it during the relevant period but cannot rule out that he did not.

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**



### III.   PLAINTIFF'S POSITION

#### A.   Plaintiff's Motion To Compel

Pursuant to the Court's July 29, 2022 Order, Plaintiff served Urman with her First Set of Interrogatories on August 17, 2022 and her First Requests for Production of Documents on September 20, 2022.  *See* Doyle Decl., Exhibits 1 and 2.  On October 17, 2022 and October 20, 2022, Urman served objections and responses to Plaintiff's ROGs and RFPs, respectively, *see* Doyle Decl., Exhibits 4 and 5.  On December 19, 2022, Urman served a supplemental response to Plaintiff's ROG No. 6, providing an additional email address used in connection with conducting business on behalf of MindGeek.  *See* Doyle Decl., Exhibit 7.  Urman failed to respond substantively.[4]

---

[4] Urman initially responded to Plaintiff's ROGs on September 22, 2022, but that response was heavily redacted because a protective order had not yet been entered in the case.  *See* Exhibit 3.  Plaintiff therefore did not receive Urman's actual responses to Plaintiff's ROGs until Urman provided an unredacted interrogatory response on October 17, 2022, with responses designated as "Confidential" pursuant to the protective order.  Plaintiff has filed Urman's response in an unredacted form under

Throughout the entire time period in which Plaintiff's CSAM was uploaded, optimized, disseminated, and capitalized on by the defendants, Urman was serving in various executive roles within the MindGeek enterprise, including service as a Vice President for the entity purportedly responsible for content management services. (*See* Doyle Decl., Exhibit 8). ███████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████. *See* Doyle Decl., Exhibit 4 at 8, Urman Resp. to ROG No. 1; *see also* Dkt. 139-1 ("MindGeek does not challenge the court's jurisdiction over . . . 9219 which acts as a service provider to Freesites."). Despite this, and his own admission that he made numerous trips each year to the United States for MindGeek related business, *see* Doyle Decl., Exhibit 4 at 10, Urman Resp. to ROG No. 4, Urman has refused to conduct reasonable searches for, or to produce, relevant communications, information, and documents pertaining to the various roles he played within the MindGeek enterprise and that are relevant to evaluating jurisdiction. *See* Doyle Decl. at 3, ¶ 10.

### 1. <u>Urman Cannot Avoid Discovery Just Because the MindGeek Entity Defendants May Provide Discovery</u>

Urman objects to almost every Request on the grounds that the information sought is "duplicative of information already sought by Plaintiff from the MindGeek Corporate Defendants" or more easily obtained from another party. *See* Doyle Decl. Exh. 5, Def. Urman's Responses to RFP Nos. 1-3, 5-10, 13-17, 19-54. But this Court previously held that parties are not relieved of producing responsive documents because other defendants may produce them. Dkt. 211, at 3-4 (rejecting the argument that a non-party was relieved of its duty to produce documents that MindGeek might

---

seal, pursuant to the Stipulated Protective Order, Dkt. 187. Urman's response to Plaintiff's production requests contained no such designation and is filed in its original form.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

possess but has not produced); *see also Anson v. Weinstein*, No. CV 17-8360-GW (KSX), 2019 WL 6655259, at \*4 (C.D. Cal. Aug. 26, 2019) (a party "is not absolved of [his or her] own obligation to produce the responsive materials regardless of whether other parties may also produce similar or even identical documents.")  The Court should similarly reject Urman's objection.

> ### 2. <u>Urman Refuses to Produce Documents and Communications Concerning Plaintiff</u>

RFP No. 1 seeks production of all documents and communications concerning Plaintiff that are in Urman's possession, custody, or control.  Urman sidesteps this request by recharacterizing it as seeking only his communications *with* Plaintiff (and none apparently exists), claiming that his communications *concerning* Plaintiff are not relevant to this Court's jurisdictional analysis.

Documents and communications concerning Plaintiff, who is based in California, will reveal the extent to which Urman communicated about Plaintiff, directed actions to be taken with respect to Plaintiff's videos, and played a role in optimizing and monetizing Plaintiff's CSAM.  The role that Urman played in the solicitation, optimization, dissemination, and capitalization of Plaintiff's CSAM is highly relevant to this Court's jurisdictional analysis. *See Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1120 (C.D. Cal. 2009) ("Courts have . . . found a corporate officer's contacts on behalf of a corporation sufficient to subject the officer to personal jurisdiction where the officer is a primary participant in the alleged wrongdoing or had control of, and direct participation in the alleged activities.") (citing cases).  Thus, Urman's communications about this California-based Plaintiff, the monetization of Plaintiff's CSAM, and her efforts to have that content removed is relevant to the exercise of jurisdiction over Urman, particularly here, where Urman served as an executive in the very company purportedly responsible for content management.  Urman should be ordered to produce all communications and documents concerning Plaintiff.

CASE NO. 21-CV-04920-CJC-ADS
**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

### 3.   Urman Disregards this Court's Rulings Concerning the Permissible Scope of Jurisdictional Discovery

Urman recites the same boilerplate objections to several of Plaintiff's discovery requests.  One of those objections is that the requests are "not proportional to the needs of the case, particularly to the needs of addressing the Court's exercise of personal jurisdiction over Mr. Urman."  But Urman is simply ignoring this Court's clear direction concerning the permissible scope of jurisdictional discovery.

This Court concluded that "Plaintiff has alleged facts bearing on the MindGeek Individual Defendants direction of specific policies pursuant to which Plaintiff was harmed." (Dkt. 167, at 7; *see also id.* at 5 ("[T]here are various allegations throughout the FAC that identify specific MindGeek policies or practices—which were applied to Plaintiff and her videos—that the MindGeek Individual Defendants allegedly directed or implemented.").)   The Court further explained that "[i]t is entirely plausible that at least one of the MindGeek Individual Defendants—high up as they were in the MindGeek hierarchy—had substantial involvement in the practices and policies of one of MindGeek's major lines of business that harmed Plaintiff." (*Id.* at 7.)  For example, the Court declared that "operating Pornhub and other MindGeek sites in a manner that maximizes the profitability of child porn" would qualify as "[j]urisdictionally relevant conduct."  (Dkt. 167, at 3 n.2; *see also id.* at 5 n.5 (recognizing that it would be jurisdictionally relevant if "one or all of the MindGeek Individual Defendants promulgated a policy of reuploading child porn like Plaintiff's videos, to MindGeek's websites after taking them down")).

Plaintiff therefore propounded several requests seeking documents that would reveal Urman's role in setting policies concerning the uploading and monetization of CSAM on Pornhub and other MindGeek sites.  Plaintiff's RFP Nos. 5, 38-42, 46, 49, and 52 seek documents and communications between Defendant Urman, others, and any Defendant "related to the presence of any CSAM" on MindGeek sites, the reporting of CSAM, and MindGeek's policies when CSAM is identified.    Request

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Nos. 10, 33-42 concern MindGeek's practices, policies, procedures, and technologies used for monitoring, moderating, and removing material from its websites.  Finally, Request No. 30 seeks documents and communications concerning the putative resignation of Tassillo and his co-defendant, former MindGeek CEO Feras Antoon, both of whom spent more than a decade in leadership positions with MindGeek, resigned amid public scrutiny concerning allegations that the MindGeek Entities, and their officers, directors, and employees, intentionally commercialized and monetized illegal CSAM and stonewalled efforts to have the content removed, including in the case of Plaintiff.

These Requests collectively seek, among other things, information related to Urman's personal involvement in the adoption of policies and procedures concerning the handling of CSAM, and Urman's role in controlling and directing the various MindGeek entities' operations, particularly as it concerns search engine optimization (SEO) and CSAM, all of which the Court has held is relevant to its jurisdictional analysis.  (Dkt. 167, at 7).  Documents responsive to the requests would also reveal Urman's knowledge and awareness of the prevalence and intentional proliferation of CSAM on MindGeek's tubesites, as well as the role that Urman played in the implementation of the policies that allowed for the proliferation of CSAM on MindGeek's tubesites, all of which are relevant jurisdictional considerations.  Urman has refused to produce any documents in response to these requests.

Along similar lines, the Court was clear that "[w]here the money flows in the MindGeek web, which may relate to ownership of the porn sites that generate revenue, matters to the Court's jurisdictional analysis."[5]  (Dkt. 167, at 3 n.2).  The Court also

_____

[5] The Court, in recognition of Plaintiff's allegations that her videos were pushed to MindGeek's other tubesites consistent with MindGeek's pervasive practice, recognized that "[j]urisdictionally relevant conduct" was not limited to Pornhub but included operation of MindGeek's other sites as well in a manner that maximized the profitability of child porn.  (Dkt. 167, at 3 n.2; *see also id.* at 5 n.5).  Therefore, Urman's repeated effort to limit the scope of his responses to Pornhub should be

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

recognized that Plaintiff alleged that "the MindGeek Entity Defendants are each controlled by the MindGeek Individual Defendants, that the MindGeek Individual Defendants appoint sham directors to the entities which they control in order to impede investigations, and that the MindGeek Entity Defendants divert money, possibility to the MindGeek Individual Defendants" (*id.* at 6 and that "[t]his alleged flow of money is . . . jurisdictionally relevant" (*id.* at 6 n.6).

In accordance with this guidance, Plaintiff propounded specific requests concerning the relationship and purpose of the various MindGeek entities, and their corporate structure and ownership, as well as Urman's ownership interests in those entities and his receipt of funds from those entities. *See, e.g.*, RFP Request No. 8 (seeking documents related to Defendant Urman's beneficial ownership of or economic interest in any MindGeek Related Entity or MindGeek intellectual property); RFP Request No. 15 (seeking documents related to any transactions involving the ownership loans to, secured interest in, or intellectual property or other rights related to MindGeek); RFP Request No. 29 (seeking documents concerning payments, investments, or loans to or from any MindGeek Entity or the Individual Defendants); ROG No. 2 (seeking information on ownership, shares, and capital transactions); RFP Request No. 2 (seeking documents and communications concerning Urman's affiliation with any MindGeek Related Entity); RFP Request No. 3 (seeking documents and communications concerning income, revenue, or other monies that Urman received from any MindGeek Related Entity) *see also* RFP Request No. 7 (seeking documents concerning business relationships with various entities, such as Colbeck Capital, JP Morgan Chase, Fortress Investment Group); RFP Request No. 13 (seeking documents concerning MindGeek entity and tubesite profits); RFP Request No. 14 and ROG No. 3 (seeking documents concerning or

---

rejected. (Dkt. 211, at 5 (agreeing with Plaintiff that requests regarding "the [true] ownership of *porn sites* that generated revenue from Plaintiff's child sexual abuse material" is relevant to the Court's jurisdictional analysis) (emphasis added)).

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

provided to investors in any MindGeek Related Entity); RFP Request No. 16 (seeking, among other things, financials, ledgers, and shareholder lists); RFP Request No. 17 (seeking among other things, tax filings, audits, financials, and accounting reports); RFP Request No. 18 (seeking "Your monthly, quarterly, and annual bank and investment statements"); RFP Request No. 19 (seeking documents related to any corporate reorganization by MindGeek); Request No. 20 (seeking documents identifying MindGeek subsidiaries); RFP No. 21 (seeking documents identifying directors, managers, members, executives, and personnel of MindGeek subsidiaries); RFP Request No. 24 (seeking information on, among other things, MindGeek bank accounts); RFP Request No. 25 (seeking audited financial statements and communications with auditors); RFP Request Nos. 6, 9, 22-23, 26-28 (seeking documents relating to the organization and corporate structure of MindGeek). This Court previously found these categories of documents relevant, so Urman should be ordered to produce them promptly. (Dkt. 211, at 5).

Urman also attempts to limit his responses to just the MindGeek Entity Defendants, rather than the MindGeek Entities as Plaintiff defined them in the requests. The Court already rejected this limitation. (Dkt. 211, at 6).

### 4. <u>Urman Refuses to Produce Documents and Sufficient Information Relative to His Jurisdictional Contacts</u>

Urman also objects to several Requests that seek information concerning his connections and activities with California and other jurisdictions in the United States. *See* RFP No. 11 and ROG No. 4 (seeking documents and communications related to Urman's "jurisdictional contacts with the United States or California"); RFP No. 12 (seeking documents and communications related to, among other things "political activities in California or any jurisdiction in the United States," "trips to California or any jurisdiction in the United States, profits, expenses, and taxes paid in or earned from California or any other United States jurisdiction, and communications or

business relationships with, to, from, or in California or any other United States jurisdiction).  Each of these requests seeks information that is relevant to the Court's jurisdictional analysis.   Nevertheless, Urman has refused to search for a single document in response to these requests.

Similarly, Urman's response to Interrogatory No. 4 is also deficient.  Urman disregards nearly the entirety of the question, objecting to common terms such as "residence" and "office" because they are undefined.  In his sole answer to the interrogatory, he admits to taking numerous trips each year to the United States for MindGeek business, but provides no explanation concerning those contacts.  Urman should be ordered to answer the entirety of the request and to provide more detail as to the more than 50 trips he admits to taking to the United States over the last decade.  For each trip, Urman should be ordered to identify: (i) the dates of the trip, (ii) the locations visited, and (iii) the purpose of the visit.  Urman should also be ordered to provide adequate detail as to any properties owned through the various entities as requested in response to Interrogatory No. 4.  For each property that he owns or partially owns, directly or indirectly, Urman should identify: (i) the address of each property, (ii) the date purchased, (iii) the purchase price, (iv) Urman's ownership percentage, and (v) the date sold (if applicable).  Finally, Urman should be ordered to provide his tax returns and the tax returns for the various entities listed in response to Interrogatory No. 4.  *See A. Farber & Partners*, 234 F.R.D. at 191 (ordering defendant to produce tax records).

Urman also refuses to produce communications with other defendants (RFP Request No. 4), even though his relationship with, and control over, entities and individuals domiciled or doing business in the state of California are relevant to both the Court's jurisdictional and alter-ego analyses.  *See also* RFP Request No. 2 (seeking documents and communications concerning Defendant's affiliation with any MindGeek Related Entity, including those based in California or other United States jurisdictions); RFP Request No. 3 (seeking documents and communications

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1  concerning income, revenue, or other monies that Defendant received from any
2  MindGeek Related Entity, including those based in California or other United States
3  jurisdictions).

4       Similarly, in response to Request No. 32 and Interrogatory No. 6, Urman
5  refused to identify or produce contact lists or communication accounts and failed to
6  identify the usernames and/or related contact information associated with his
7  WhatsApp, Telegram, and Signal accounts, though he admits to using these platforms.
8  The identity and locations of the individuals that Urman communicated and worked
9  with in furtherance of the MindGeek's illegal trafficking venture and their efforts to
10 conceal and coverup their wrongdoing is highly relevant. *See* Dkt. 168 at 7 ("It is
11 entirely plausible that at least one of the MindGeek Individual Defendants . . . had
12 substantial involvement in the practices and policies of one of MindGeek's major
13 lines of business that harmed Plaintiff.").

14       **5.      <u>Urman's Privacy and Data Protection Objection is Without</u>
15              <u>Merit</u>**

16       Urman's refusal to disclose information that could violate a law, rule, or
17 regulation, for instance because it could require disclosure of information protected
18 by applicable privacy or data protection laws (RFP General Objection 2 and
19 Interrogatory General Objection 3), is improper. "The mere existence of a blocking
20 statute does not preclude an American court from ordering discovery from a foreign
21 litigant." *Connex R.R. LLC v. AXA Corp. Sols. Assurance*, No.: CV 16–02368–ODW
22 (RAOx), 2017 WL 3433542, at *5 (C.D. Cal. Feb. 22, 2017). "Indeed, the Supreme
23 Court has held that '[i]t is well settled that such statutes do not deprive an American
24 court of the power to order a party subject to its jurisdiction to produce evidence even
25 though the act of production may violate that statute.'" *Id.* (quoting *Société Nationale
26 v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 524, 544 n.29 (1987)).
27 Currently, it is impossible for Plaintiff to assess the propriety of Urman's failure to
28 disclose information without more specific information. Thus, if Urman refuses to

1   provide documents in full, or redacts documents on the purported basis that he must

2   do so in compliance with a law, rule, or regulation, Urman should be ordered to submit

3   a log of the withheld information, so Plaintiff can properly assess Urman's claims.

### 6.   <u>Urman Has Refused to Conduct a Search for Responsive Documents</u>

6       It is black-letter law that, "***[u]pon receipt*** of a properly served request, a

7   responding party is required to conduct a 'reasonable search' for responsive

8   documents." *Trujillo v. Princess Cruise Lines, Ltd.*, No. CV 20-7451 JWH (PVCx),

9   2021 WL 3604518, at *6 (C.D. Cal. Apr. 23, 2021) (emphasis added); *Polaris*

10  *Innovations Ltd. v. Kingstown Tech. Co.*, No. CV 16-00300 CJC (RAOx), 2017 WL

11  3275615, at *2 (C.D. Cal. Feb. 14, 2017); *see also A. Farber & Partners, Inc. v.*

12  *Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) ("[A] party has an obligation to

13  conduct a reasonable inquiry into the factual basis of his responses to discovery, and,

14  based on that inquiry, [a] party responding to a Rule 34 production request ... is under

15  an affirmative duty to seek that information reasonably available to [it] from [its]

16  employees, agents, or others subject to [its] control." (citations and quotations

17  omitted)).

18      Consistent with this fundamental principle, Rule 34 explicitly requires a

19  responding party to "state whether any responsive materials are being withheld on the

20  basis of [an asserted] objection." Fed. R. Civ. P. 34(b)(2)(C). None of Urman's

21  responses to Plaintiff's document requests contains the statement required by Rule

22  34(b)(2)(C). During the parties' meet-and-confer teleconference on December 15,

23  2022, Urman's counsel, collectively with the other Individual Defendants' counsel,

24  confirmed that Urman had not conducted a search for documents, instead claiming he

25  was waiting for this Court to provide clarity in connection with Plaintiff's pending

26  motion to compel filed against MindGeek (Dkt. 224) before he would begin a search

27  for responsive documents. *See* Doyle Decl., ¶ 10. Urman provides only boilerplate

28  objections.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    This Court should require him to conduct a search promptly and to submit to
2  Plaintiff "declarations or affidavits detailing the nature of his 'reasonable inquiry' to
3  locate responsive documents, and such declarations must address the inquiry he made
4  on a request-by-request basis." *A. Farber & Partners*, 234 F.R.D. at 190 (ordering
5  this procedure in the face of an "astounding" "paucity" of documents produced by
6  defendant, which production still involved 600 documents, far more than the zero
7  documents that Urman has produced here).

8  **IV.    URMAN'S POSITION**

9        **A.    Plaintiff's Motion to Compel Should Be Denied in Full**

10              **1.    Plaintiff's Motion Should Be Denied for Failure to**
11                   **Meaningfully Meet and Confer**

12    This Motion comes before the Court due to two factors:  Plaintiff's ill-founded
13  position that she was permitted to seek merits discovery in this phase despite the
14  District Court's explicit ruling to the contrary; and her refusal to meaningfully meet
15  and confer with the Individual Defendants, even after the Court ruled she could not
16  take merits discovery in this phase, made clear that Plaintiff's requests will be
17  narrowed to the permitted topics of jurisdictional discovery, and instructed the parties
18  to meet and confer on discovery within those topics.  Plaintiff's refusals to follow the
19  Local Rules and these Court's directions alone warrant denial of her motion.

20              **a.    Plaintiff Has Failed to Meaningfully Meet and Confer**

21    On July 29, 2022, Judge Carney ordered all parties, including Bernd Bergmair,
22  Feras Antoon, Davis Tassillo, and Corey Urman (collectively, the "Individual
23  Defendants") to proceed to jurisdictional discovery.  Akoglu Decl., Ex. A.  The Court
24  authorized only jurisdictional discovery and explicitly directed Plaintiff and her
25  counsel "to not use this opportunity to further complicate this case."  Akoglu Decl.,
26  Ex. C at 2.  Despite this, Plaintiff propounded exceedingly broad discovery requests
27  to the Individual Defendants that went well beyond the jurisdictional discovery
28  ordered.  For example, several requests (both alone and in combination) seek

54    CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

essentially every piece of paper and every email and electronic record the Individual Defendants possess related to MindGeek.  *See e.g.*, Request for Production of Documents (RFP) No. 2 (seeking all documents "concerning … Your affiliation … or ownership of MindGeek"); RFP No. 7 (seeking all documents related to any "economic interest in, or business relationship with MindGeek … by You"); RFP No. 9 (seeking all documents "relating to MindGeek's past or present … offices, departments, executives and personnel"); RFP No. 22 (seeking all documents identifying MindGeek subsidiaries "and the nature of [their] assets, businesses and services"); RFP No. 50 (seeking all documents related to the "distribution of content to any MindGeek [site]").  Plaintiff similarly seeks documents from Individual Defendants reflecting every penny going in or out of MindGeek to or from any party for any purpose for an eight-year period, without limitation. *See* RFP No. 16 (seeking records regarding "all payments made to or on behalf of [any MindGeek] entity, affiliate, subsidiary or related entity"); Interrogatory No. 2 (seeking a description "in detail" of every transaction "in which ownership, shares, indebtedness, secured interests, options, derivatives, or other capital related transactions occurred" involving MindGeek).

The Individual Defendants timely responded to Plaintiff's interrogatories ("ROG") and RFPs on September 20, 2022, and October 20, 2022, respectively. *After over a month of no communication*, Plaintiff sent a L.R. 37-1 letter on December 5, 2022, to Individual Defendants seeking to immediately meet and confer.  In accordance with L.R. 37-1, the Individual Defendants met and conferred with Plaintiff on December 15, 2022.  This meet-and-confer was limited to the requests for production of documents and did not include the interrogatories.  At this meeting, the Individual Defendants' counsel pointed out that Plaintiff had served her extremely broad discovery requests at a time when she was admittedly seeking merits discovery and asked if there were any of her requests that she was willing to narrow.  Plaintiff said no.  (Akoglu Decl. ¶19.)  At this same meeting, the Individual Defendants also

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

requested that Plaintiff hold off filing any motion to compel, because her motion to compel the MindGeek corporate defendants, which raised similar issues, was then scheduled to be heard by the Court on December 27, 2022, and the Court's ruling would potentially resolve or narrow the issues between Plaintiff and the Individual Defendants.  Plaintiff would not agree to do so.  The meet-and-confer ended with Plaintiff's promise to consider questions raised by the Individual Defendants and to get back to Individual Defendants about open issues.  The next day, on December 16, 2022, the jurisdictional discovery cutoff was extended four months, until May 1, 2023.  Akoglu Decl., Ex. D.

Without any further correspondence or meeting regarding the open issues from the December 15 meet-and-confer, Plaintiff served a motion to compel on all Individual Defendants on Friday, December 23, with a due date of Friday, December 30, and set a hearing date for the motion on February 1, 2023.  Plaintiff did so despite having explicitly said to Defendants that she would consider points made during the December 15 meet-and-confer.[6]

The Individual Defendants informed the Plaintiff that the dispute is not ripe for presentation to the Court.[7]  Because Plaintiff had served her motion to compel the day before the Christmas holiday weekend (even though her motion did not need to be filed until Wednesday, January 11 per L.R. 37-3), Individual Defendants sought an extension to respond until at least January 10.  Plaintiff did not agree to Individual

---

[6] The written record suggests that Plaintiff's counsel began drafting this motion even *before* they met and conferred with Defendant on December 15, 2022.  On November 16, 2022, a month before they met and conferred with Defendant, Plaintiff's counsel stated that Plaintiff's motion to compel was "in progress."  Akoglu Decl., Ex. G at 6.  Plaintiff reiterated its point on December 7, 2022 in a different motion to compel that "Plaintiffs will be filing a separate motion to compel the Individual Defendants to comply with discovery obligations."  Akoglu Decl., Ex. J at 2.

[7] Within the same email the Individual Defendants noted the parties had yet to meet and confer on the interrogatories in violation of LR 37-1, which requires parties to "confer in a good-faith effort to eliminate the necessity for hearing the motion."

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Defendants' requested extension until December 27, 2023, after the Christmas holiday weekend.  Akoglu Decl., Ex. H.

On January 4, counsel for the Individual Defendants reached out to Plaintiff's counsel to schedule a second meet-and-confer to narrow the substantial number of disputes at issue in the present motion to compel.  At that meet-and-confer, which took place on January 6, 2023, the Individual Defendants' counsel again asked if Plaintiff would narrow her requests, because they address merits issues and are otherwise overbroad.  Just as in the December 15 meet-and-confer, Plaintiff did not identify a single request that she was willing to narrow.  Similarly, because almost all the document requests to the Individual Defendants mirrored those addressed to the MindGeek corporate defendants, the Individual Defendants' counsel specifically asked Plaintiff's counsel if he intended for the Individual Defendants to produce identical copies of the 7,000 pages of corporate documents already produced by MindGeek, if they had them in their possession.  Plaintiff's counsel confirmed that he expected the production of such duplicative records.  *See* Akoglu Decl. at ¶19.  In addition, because many of the discovery requests to the Individual Defendants went well beyond any MindGeek related materials and sought purely personal information, the Individual Defendants sought Plaintiff's agreement that she would not require such personal information to be produced.  For example, Plaintiff's Interrogatory No. 4 and RFP Nos. 11 and 12 are not limited to MindGeek-related business contacts the Individual Defendants may have had with this jurisdiction.  However, at the meet-and-confer, Plaintiff maintained that the Individual Defendants must provide information regarding purely personal contacts they may have had with the jurisdiction.  Indeed, Plaintiff's counsel specifically insisted that Plaintiff had a right to know if the Individual Defendants had ever taken any purely personal trips to the United States, such as a personal trip to Disneyland.  *See* Akoglu Decl. at ¶19.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

At the January 6 meet-and-confer, Plaintiff's counsel similarly rejected all but one of Individual Defendants' procedural proposals to alleviate the burden of motion practice.  Specifically:

- To lessen the substantial burden on the Court, the Individual Defendants sought to consolidate the four motions to compel into a single motion. *Plaintiff would not agree.*  Nevertheless, the Individual Defendants have worked hard to include in the individual submissions demanded by Plaintiff identical arguments where appropriate.

- To narrow the issues substantially, the Individual Defendants asked that their responses be made *after* the Court ruled on the then-pending motion to compel discovery from the MindGeek Entity Defendants because certain issues relevant to the Individual Defendants' dispute with Plaintiff would be litigated there.  *Plaintiff would not agree.*

- To narrow the issues substantially, the Individual Defendants sought a further meet-and-confer before January 18, which would have had no impact on the February 8 hearing date.  *Plaintiff would not agree.*

- To accurately convey to the Court what the Individual Defendants had done, the Individual Defendants told Plaintiff's counsel that they had already been searching for documents relevant to jurisdictional discovery, yet *Plaintiff would not amend* its contrary assertions in the motion.

With respect to the one and only area where Plaintiff's counsel noted they would consider narrowing the requests – RFPs 10, 14, 18, 24, 30, 32, and 36 – they asked the Individual Defendants to send a follow-up email, which Individual Defendants did on Monday, January 9.  Akoglu Decl., Ex. I.  However, Plaintiff responded to that email on Tuesday, January 10, without providing any additional information or narrowing any requests.  Akoglu Decl., Ex. I.

On January 10, Mr. Urman and the other Individual Defendants provided Plaintiff with their portions of the joint stipulation in connection with Plaintiff's proposed motion to compel.

On January 11, the Court held a hearing on Plaintiff's separate motion to compel the MindGeek Entity Defendants, at the conclusion of which the Court directed the parties to meet and confer further.  Following this hearing, and in light of the Court's direction to meet and confer on that motion, Plaintiff's counsel advised that Plaintiff did not intend to file the motions to compel the Individual Defendants that day and suggested that the parties meet and confer to see if they could "narrow or eliminate" any issues in dispute.  (Akoglu Decl., Ex. Q.)

On behalf of all the Individual Defendants, counsel responded the next morning, January 12, that they remained "interested in trying to narrow and, if possible, resolve all or at least some of the open issues," and proposed a meet and confer.  *Id.*

The following day, January 13, counsel for one of the Individual Defendants (on behalf of all) had a telephone conference with Plaintiff's counsel in which defense counsel reiterated a desire to continue discussions.  During that call, the Individual Defendants emphasized that the parties could make significant progress if Plaintiff would identify specific categories of documents that were relevant and of greatest significance to her.  *Id.*  Counsel for Plaintiff said he would take that request back to his colleagues.  *Id.*

Later the same day, as a follow-up from this meeting, the Individual Defendants proposed a meet-and-confer for the next business day and noted that they would "like to continue discussing potential areas of agreement and ways to narrow and clarify the issues that may need to go to the Magistrate Judge."  *Id.*  Plaintiff did not respond to this email.

Notwithstanding Plaintiff's lack of a response, the Individual Defendants contacted Plaintiff again on January 18, asking to "continue the meet and confer

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

process." (Akoglu Decl., Ex. Q.)  The email noted that "it would be constructive to identify and itemize the specific materials the plaintiff is seeking," and urged Plaintiff to provide such a list to facilitate the parties' potential discussions. *Id*.

Later the same day, Plaintiff responded that she would "hold off" filing the motions to compel "today." *Id*.  Plaintiff's email agreed that "we should confer further to try to reach agreements," saying Plaintiff would be "back in touch shortly." *Id*.  But Plaintiff was never back in touch with Individual Defendants, and then, inexplicably reversed course sometime in the next two weeks.

Instead of providing a narrowed list or setting a time to meet and confer, the next communication from Plaintiff after her January 18, 2023, email was on February 1, when Plaintiff served her portion of the joint stipulation related to the instant motion to compel.  The next day, the Individual Defendants again invited Plaintiff to engage in a further meet and confer rather than proceed with motion practice, reiterating yet again their request that, as a starting point for discussions, Plaintiff provide them with a list of narrowed categories of documents she is seeking.  (Akoglu Decl. Ex. R.)  Plaintiff refused even to respond to this request, saying only that it would proceed with motion practice. *Id*.  Plaintiff insisted that the Individual Defendants provide their portions of the joint stipulation within six days of receiving Plaintiff's revised portion, in contravention of the seven-day response period required under L.R. 37-2.2. *Id*.  Mr. Urman is submitting this response early in order to avoid burdening the Court with yet another dispute.

### b.   Plaintiff's Motion Should Be Denied Due to Her Failure to Meet and Confer

As the above facts demonstrate, Plaintiff has refused to meaningfully engage in the meet-and-confer process.  From the beginning, her approach has been overbroad and inflexible.  Despite the fact that her requests on their face require production of every piece of paper in the Individual Defendants' possession related to MindGeek – and were admittedly served in furtherance of merits discovery –

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Plaintiff has refused to narrow almost the entirety of her document requests to the relevant jurisdictional discovery issues authorized by Judge Carney.  The Individual Defendants have repeatedly asked Plaintiff to provide a list of specific items relevant to jurisdictional discovery that she seeks from these individuals, but have not even been provided with a response, much less a list.  (Akoglu Decl. at ¶19.)  Plaintiff has adopted extreme and impractical positions, asserting that the Individual Defendants should be required to produce identical copies of the 7,000 pages of corporate records MindGeek has already produced (Akoglu Decl. at ¶19) and that they are required to produce wholly personal information about their finances and travel that have absolutely nothing to do with MindGeek business, including all personal financial account records for an eight-year period or information about whether they ever took a family trip to Disneyland.  (Akoglu Decl. at ¶19).  Plaintiff's wholesale refusal to engage in discussions with the Individual Defendants – other than to demand responses to her overbroad, vague, and admittedly merits-focused discovery requests as written – is not consistent with the letter or spirit of Local Rule 37-1 or Federal Rule 26.

Indeed, even after the Court emphasized the need to meet-and-confer at the January 11, 2023, hearing on the motion to compel the MindGeek Entity Defendants, Plaintiff has rebuffed multiple offers by the Individual Defendants to try to narrow the issues.  One would have thought that, after the Court's previous direction to Plaintiff to further meet and confer with the MindGeek Entity Defendants, Plaintiff would have similarly met and conferred with the Individual Defendants and provided the requested list of specific items she believed she was entitled to.  And indeed, on January 18, 2023, Plaintiff said she would meet and confer further, and indicated a willingness to provide that list.  But Plaintiff's subsequent inexplicable reversal (which Plaintiff has never acknowledged, much less explained) is a plain violation of L.R. 37-1.

Admittedly, this is not really a surprise.  Plaintiff advised the Court on multiple

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

occasions *before* the December 15, 2022, and January 6, 2023, meet-and-confers – including once even *before* she sent her December 5, 2022, Rule 37-1 letter – that she was already preparing to move to compel.  On November 16, 2022, Plaintiff's counsel advised the Court that Plaintiff's motion to compel the Individual Defendants was "in progress."  *See* Transcript of November 16, 2022, Hearing (Akoglu Decl., Exhibit G at 6.).  Similarly, Plaintiff confirmed her intentions on December 7, 2022, advising the Court in connection with a different motion to compel that "Plaintiffs will be filing a separate motion to compel the Individual Defendants to comply with discovery obligations."  *See* Plaintiff's Supplemental Memorandum in Support of Motion to Compel Defendant MindGeek Entities' Response to Plaintiff's First Request for Production of Documents and Interrogatories, Dkt. No 233, at n. 1 (Akoglu Decl., Exhibit J at 2).  These statements to the Court (made before she had exchanged even a single word with the Individual Defendants about their discovery responses)—as well as her extreme and inflexible positions in the parties' subsequent meet-and-confers, followed by her refusal to even respond to Individual Defendants' multiple requests to meet in the last month—make plain that Plaintiff never had any intention of engaging in good faith discussions with the Individual Defendants about narrowing her requests to relevant, non-duplicative materials.  *See Goldwater Bank, N.A. v. Elizarov*, 2022 WL 17078950, at *2 (C.D. Cal. Oct. 7, 2022) (movant's drafting of motion to compel "before trying to meet and confer" showed he did not make "good faith effort" to resolve issues as required by L.R. 37-1).

Courts in this district have repeatedly ruled that a movant's failure to meaningfully engage in the meet and confer process is a basis to deny their motion to compel.  *Id*. at *2 ("[D]efendant asked this court to rule on a multitude of purported discovery disputes without having made a full and reasonable effort to resolve these disputes . . . .  Because the instant motion was brought without defendant first complying with Local Rule 37-1, the court denies it without prejudice."); *Rahmatullah v. Charter Commc'ns, LLC*, 2021 WL 1593242, at *3 (C.D. Cal. Mar.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

25, 2021) ("Plaintiff's decision to abandon meet-and-confer negotiations prematurely and burden the court's time and resources with a 223-page joint stipulation is not well taken."); *Mulligan v. Nichols*, 2013 WL 12124004, at \*2 (C.D. Cal. July 12, 2013) ("[T]he Court does not countenance shotgun discovery, duplicative discovery, or inadequate meet and confer efforts which result in unnecessary 100-plus page discovery motions"); *see also ExxonMobil Oil Corp. v. S. California Edison Co.*, 2013 WL 12166215, at \*6 (C.D. Cal. Nov. 19, 2013) ("After further meet and confer, the Motion may, if necessary, be renewed as to any remaining disputes in these two areas; however, the parties are cautioned that if the Court deems that the meet and confer process has been inadequate, a further motion will be summarily denied."). *See also Acosta v. Austin Elec. Servs. LLC*, 324 F.R.D 210, 212 (D. Ariz. 2017) (ordering plaintiff's counsel to show cause regarding failure to adequately meet and confer prior to moving to compel). The Court can and should deny Plaintiff's motion on this basis alone, and order her to meet and confer with the Individual Defendants in the substantive and good faith manner required by the Local Rules.

## 2.    <u>Plaintiff Improperly Seeks MindGeek Corporate Records from Mr. Urman (RFP Nos. 1-17, 19-31, 33-54)</u>

Plaintiff seeks MindGeek corporate documents from Mr. Urman—an individual who lives in Canada and is no longer associated with MindGeek—when she also sought virtually the same corporate documents from the MindGeek Entity defendants (RFP Nos. 1-17, 19-31, 33-54). The Mind Geek Entity Defendants are the best source of these documents, relating to, among other things, emails regarding Plaintiff; MindGeek's income, revenue, and other financial information; MindGeek's ownership; and the Individual Defendants' involvement in setting MindGeek's policies regarding CSAM. The MindGeek Entities have made a substantial production relating to these issues and we understand that additional document productions will be made in the coming weeks.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Plaintiff seeks a breathtaking array of corporate documents from the Individual Defendants.  Almost every one of her document requests seeks corporate documents that would be created and maintained by MindGeek.  Among other topics, Plaintiff's requests seek documents regarding: MindGeek's "corporate and ownership" structure (RFP No. 6); its "organizational structure, offices, departments, executives and personnel" and all of its subsidiaries, directors, managers, members and executives (RFP Nos. 9, 20, 21, 22, 26); all of its financial records, including audited financial statements, ledgers, profit and loss statements, balance sheets, records of revenues and profits, payroll records and expense records (RFP Nos. 12, 16, 17, 25); its quarterly and annual tax filings (RFP No. 17); minutes and presentation materials for its board of directors meetings (RFP No. 16); its "intellectual property" (RFP Nos. 8, 53, 54); its "IT infrastructure," data storage and cloud storage (RFP No. 31); its document preservation policies (RFP No. 35); and its agreements with bank and credit card networks (RFP No. 51).  These corporate records are overwhelmingly ones created or maintained by MindGeek corporate employees – not Mr. Urman – and to the extent Mr. Urman received copies, they were likely sent to him via MindGeek's email system.  Mr. Urman does not have access to MindGeek's email system or corporate records.  Yet Plaintiff insists that Mr. Urman is the right party for these corporate-focused discovery requests.

In both the December 15, 2022 and January 6, 2023 meet-and-confers, the Individual Defendants suggested that it would be more efficient for the parties to identify the responsive documents MindGeek had to which Plaintiff was entitled, and then limit the universe of documents sought from the Individual Defendants to any non-duplicative documents they might possess.  In the January 6, 2023 meet-and-confer, the Individual Defendants specifically asked Plaintiff's counsel if he insisted that the Individual Defendants produce identical copies of the 7,000 pages of corporate documents already produced by MindGeek, if they had them in their

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

possession.  Plaintiff's counsel confirmed that they expected the production of such duplicative records.  *See* Akoglu Decl., ¶19.

In seeking to burden the Individual Defendants with these requests for MindGeek's documents (rather than raising these issues with MindGeek), Plaintiff takes refuge in the proposition that a party may seek duplicative documents from different parties.  *See* supra at 46.  While this may be true in the abstract, Rule 26(b)(2)(C)(i) specifically requires a court to limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Here, seeking corporate documents from an individual like Mr. Urman when the same documents are simultaneously being sought from MindGeek is unreasonably duplicative, burdensome, and misguided.  It would plainly be "more convenient" and "less burdensome" to obtain the documents from MindGeek.  Indeed, *MindGeek already has produced a good number of corporate documents that definitively describe the financial issues that Plaintiff seeks to understand.*  Yet Plaintiff seeks to compel Mr. Urman to produce these materials rather than the company to which the documents actually belong. Plaintiff should direct her concerns, if any, regarding MindGeek's production of corporate financial information to MindGeek, and her motion to compel the Individual Defendants to produce materials to which they have little or no access should be denied.[8]  *See, e.g., Williams v. City of Hartford*, 2016 WL 1732719, at *11 (D. Conn. May 2, 2016) (denying motion to compel with respect to plaintiff's document request because another defendant was already ordered to produce the sought-after records); *Kleppinger v. Texas Dep't of Transportation*, 2012 WL

---

[8] Plaintiff also argues that the Court has previously "rejected" certain arguments in this case, and refers to the Court's decision addressing Plaintiff's Motion for Issuance of Letter Rogatory to Grant Thornton entities.  Akoglu Decl., Ex. B.  However, not only was Mr. Urman not a party to the Grant Thornton dispute, the circumstances of the Grant Thornton entities are entirely distinguishable from Mr. Urman.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

12893652, at *3 (S.D. Tex. Mar. 12, 2012) (denying motion to compel individual defendants (current and former employees of the Texas Department of Transportation) to respond to interrogatories because the interrogatories were "unreasonably duplicative of discovery requests directed to Defendant [Texas Department of Transportation]").

Another reason for Plaintiff to address her requests for MindGeek corporate records to MindGeek is that many responsive documents are potentially protected by MindGeek's attorney-client privilege.  The Individual Defendants cannot waive MindGeek's privileges, and any objections Plaintiff may have to the MindGeek's privilege claims should be raised with MindGeek's counsel.  Similarly, the corporate records sought quite likely contain confidential business information of MindGeek, which its counsel would have to review in order to determine whether to designate any confidential or highly confidential under the Court's protective order.  Akoglu Decl., Ex. F.  This duplicative process would not be necessary if Plaintiff directed her requests for corporate documents from the corporate defendants, an approach that is much more convenient and much less burdensome, and thus in accord with Fed. R. Civ. P. 26.

### 3. <u>Documents and Communications Concerning Plaintiff (RFP 1)</u>

Plaintiff seeks all communications "concerning Serena Fleites."  RFP No. 1.  According to the Amended Complaint, Ms. Fleites's content appeared on a MindGeek website at various times between June 2014 and June 2020.[9]  Mr. Urman has searched for responsive documents from this period, and has found none.

### 4. <u>Plaintiff's Requests Go Far Beyond Jurisdictional Discovery</u>

---

[9] As this Court has previously held in this case, "only contacts occurring prior to the event causing the litigation may be considered." Akoglu Decl., Ex. B at 3 (citing *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990)).

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

a.   <u>**CSAM policies (RFP Nos. 5, 10, 30, 33-42, 46, 49, 52)**</u>

Plaintiff's document requests regarding CSAM policies exceed the scope of jurisdictional discovery authorized by the Court.  Judge Carney authorized Plaintiff to take discovery regarding the Individual Defendants' role in directing or implementing MindGeek's CSAM policies as a potential basis for specific personal jurisdiction.  Akoglu Decl., Ex. A at 5-7.  Although Plaintiff argues in this stipulation that she is entitled to documents regarding the Individual Defendants' roles in "setting policies" and the "adoption of policies" regarding CSAM (supra at 48), her requests actually reach far beyond this.  Plaintiff's requests instead seek a broad range of documents, including practically any document mentioning CSAM policies, even if they have nothing to do with any Individual Defendant's role in the direction or implementation of those policies.

Mr. Urman has agreed to search for any documents regarding the direction or implementation of CSAM policies, consistent with Judge Carney's order.  Although the Individual Defendants advised Plaintiff of this effort during their January 6 meet-and-confer, Plaintiff would not remove this issue from her motion to compel.[10]  *See* Akoglu Decl., ¶19.

b.   <u>**Where Money Flows (RFP Nos. 2-3, 6-9, 13-29, Rog Nos. 2-3)**</u>

Judge Carney recognized that Plaintiff "might also have a workable alter ego theory pursuant to which she can impute the jurisdictional contacts of the non-objecting MindGeek Entity Defendants to the MindGeek Individual Defendants," and ordered jurisdictional discovery on potential alter ego claims, even though Plaintiff's

---

[10]  As discussed with Plaintiff's counsel, Mr. Urman does not have access to MindGeek's email systems, messaging services, or other MindGeek corporate records.  Further, MindGeek has collected and is searching through all of Mr. Urman's relevant documents in MindGeek's possession from when he was an employee.  Mr. Urman is searching for responsive materials in the documents in his possession.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

allegations on this point are "rather conclusory, vague, and indeed, quite difficult to follow at times."  Akoglu Decl., Ex. A at 6.  The questions on alter ego are whether "(1) there is such unity of interest and ownership that the separate personalities of the corporation and the individuals no longer exist" and "(2) failure to disregard the corporation would result in fraud or injustice."  *Symettrica Ent., Ltd. v. UMG Recordings, Inc.*, 2019 WL 8806093, at *4 (C.D. Cal. Sept. 20, 2019) (quoting *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984)).  But Plaintiff's purported alter ego discovery goes far beyond these questions.

Instead, Plaintiff seeks from the Individual Defendants a full forensic examination of essentially every financial document of a multi-national corporation over nearly a decade.  As just one example of their 23 requests directed at this topic, Plaintiff's RFP No. 16, seeks, among other categories, all documents of each and every MindGeek affiliate reflecting capitalization, revenues, profits, tax payments, distributions, dividends, shareholder agreements, lender agreements, as well as profit and loss statements, balance sheets, tax records, payroll records and expense records.  Even more inexplicably broad are Plaintiff's requests for documents from the Individual Defendants reflecting every penny going in or out of MindGeek to or from any other party for any purpose for an eight-year period, without limitation.  *See* RFP No. 16 (seeking records regarding "all payments made to or on behalf of [any MindGeek] entity, affiliate, subsidiary or related entity").

The Defendants have already produced to Plaintiff documents or information sufficiently establishing "how the money flows" at MindGeek and further discovery on this point would not be proportional to the needs of the case under Rule 26.  A review of Plaintiff's document requests demonstrates that she has already been provided with corporate documents regarding the topics she seeks information about.  For example, RFP Nos. 2, 3, 7 and 8 seek information about Mr. Urman's ownership interest in MindGeek and monies received from the company.  ██████████

██████████

1 ███████████████████████████████████████████████████

2 ███████████████████████████████████████████████████

3 ███████████████████████████████████████████████████

4 ███████████████████████████████████████████████████

5 ███████████████████████████████████████████████████

6 ██████████████████████████████████████

7      Plaintiff also makes numerous requests seeking documents regarding

8 MindGeek's corporate structure and identifying MindGeek subsidiaries.  RFP Nos. 6,

9 9, 19, 20, 22, 26.  MindGeek's interrogatory responses explained the ownership status

10 and structure of each of the MindGeek defendants.  *See* Akoglu Decl., Ex. P at

11 Response No. 1.  MindGeek also produced to Plaintiff corporate organizational charts

12 for 2014 through 2021, which show all MindGeek entities, not just the defendant

13 entities.  *Id*., Ex. L at ¶8(c).  Further, with respect to MindGeek's 2018 corporate

14 reorganization, the company produced documents showing the transfers of assets

15 undertaken in connection with this reorganization, as well as before and after versions

16 of the corporate organizational structure.  *Id*. at ¶10(b).  MindGeek also produced

17 certificates of incorporation, by-laws and other corporate filings for numerous

18 MindGeek entities.  *Id*. at ¶10(k)-(bb).  MindGeek will also produce a summary

19 document that is used by the company to explain the flow of money within the

20 corporate structure.

21      Plaintiff also seeks financial records, audited financial statements and tax

22 returns of MindGeek.  RFP Nos. 13, 16, 17, 25.  MindGeek produced audited financial

23 statements for each entity preparing such statements for 2014 through 2019.  *Id*. at

24 ¶8(d)-(g).  In addition, MindGeek produced (or will produce) detailed financial

25 reporting packages, both quarterly and annual, for *all* MindGeek entities from 2014

26 through June 2021, which include Consolidated Statements of Earnings by business

27 unit, Stand-Alone Balance Sheets, Consolidated Statements of Cash Flow, and

28 auditor's notes.  *Id*. at ¶8(i).  Plaintiff has also been provided with multiple sets of tax

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

returns filed by MindGeek entities.  *Id*. at ¶13(g)-(h).  In addition, at Plaintiff's request, the Court issued letters rogatory to multiple Grant Thornton entities abroad who provided audit and accounting services to MindGeek affiliates.  Akoglu Decl., Ex. B.

Plaintiff also seeks documents identifying MindGeek's directors and managers. RFP No. 21.   MindGeek identified the directors/managers of each corporate defendant, and their dates of service, including in its interrogatory responses (Akoglu Decl., Ex. P at 12-15; *see also* Ex. O) and has produced minutes of the shareholder meetings and Board of Directors/Managers meetings for the corporate defendants, as well board resolutions, including those reflecting approval of dividend distributions to shareholders.  *See* Akoglu Decl., Ex. L at ¶10(c)-(j), 13(b)-(f), (l)-(p), (u).

Plaintiff seeks documents reflecting services provided by one MindGeek entity to another.  RFP Nos. 23, 27-28.  Defendants have produced the relevant service agreements governing these arrangements.  *Id*. at ¶13(v)-(x).  Finally, the MindGeek Entity Defendants have arranged for a Rule 30(b)(6) corporate representative located in a foreign country to travel to the United States to explain MindGeek's corporate structure, but to date, the Plaintiff has yet to schedule his deposition.

In addition, as noted above, MindGeek will be producing a comprehensive set of the operative transaction documents from both the 2013 and 2018 reorganizations governing the ownership and financing of the company.  MindGeek will also produce documents regarding any so-called "related party transactions" between the company and any entities owned by any of the Individual Defendants, as well as transfer pricing studies and other documents related to such transactions.

Plaintiff leaves all of this out of her portion of this joint stipulation.  She provides no explanation why audited financial statements prepared by a prominent accounting firm, detailed internal financial reporting packages presented to the companies' own boards, and corporate tax returns filed with the relevant taxing jurisdictions fail to provide an adequate picture of MindGeek's finances. Plaintiff's

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

position is that this is insufficient, and she is apparently entitled to every potential document that could relate in any way to MindGeek's finances and, even worse, the personal finances of each Individual Defendant.

Similarly, Plaintiff does not explain how the internal corporate organizational charts actually relied upon by company personnel for eight years are somehow insufficient to advise her of the company's corporate structure.  But to the extent the discovery provided so far is allegedly insufficient, defendants have also agreed to produce the entire set of corporate transactional documents governing the ownership and financing of the company, as well as internal documents explaining the flow of funds within MindGeek's corporate structure.  Likewise, Plaintiff fails to explain how the corporate resolutions authorizing distributions to the Individual Defendants who are MindGeek shareholders (produced by MindGeek and to be produced by Mr. Bergmair) – and which specify dates, amounts and recipients of these dividends – are insufficient to show how "the money flows" at MindGeek.

Moreover, to the extent Plaintiff contends that she needs to explore whether the Individual Defendants diverted money to themselves from MindGeek, she has been provided with the relevant information.  First, Mr. Urman did not receive any money from MindGeek other than compensation and dividends, details of which have already been produced in full by MindGeek, and he did not redistribute those monies to MindGeek or any related entity, or to any Individual Defendant.   Second, Mr. Bergmair and MindGeek have produced documents reflecting distributions from the company to the entities he owns, reflecting the dates, amounts, payors and recipients. Third, MindGeek will produce documents reflecting any so-called "related party transactions" with entities owned by the Individual Defendants (although Mr. Urman had no "related party transactions" with MindGeek).  As a result, Plaintiff will have records of the monies flowing from MindGeek to the Individual Defendants to explore her theory.  Anything beyond that would amount to a classic "fishing expedition." Plaintiff's request to inspect every invoice of the company for an eight-year period –

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

hoping that she might stumble upon some undisclosed related party transaction – is simply excessive, not proportional to the needs of the case and a wholly unnecessary intrusion on privacy where there is no conceivable relation to jurisdictional issues.  In the absence of some concrete, articulable reason to believe that specific additional categories of documents will reveal such diversion of funds, the records which have been (or will be) produced showing transactions with the Individual Defendants are sufficient to allow her to explore whether she has "a workable alter ego theory," as authorized by Judge Carney's Order.

As noted above, the documents reflecting MindGeek's corporate ownership, structure and finances, and its distributions to the Individual Defendants, are virtually all corporate documents created and maintained by the company, and Plaintiff should direct her requests regarding corporate ownership and structure and financial details to MindGeek in the first instance.  Of course, to the extent that there are specific, non-duplicative documents not produced by MindGeek that Mr. Urman possesses, he has offered to discuss such targeted requests with Plaintiff.  But as described above, Plaintiff has rebuffed Individual Defendants' request for her to itemize the documents she seeks from them.  Rather than employ targeted requests and engage in discussions with counsel, Plaintiff has adopted an all-or-nothing approach, refusing to narrow her discovery requests and seeking in this motion to enforce compliance with requests so broad as to arguably require production of every document in Mr. Urman's possession related to MindGeek (RFP No. 2 ("All documents and communications concerning or relating to Your affiliation with, employment by, or ownership of MindGeek, any MindGeek Related Entity, or any MindGeek Tubesites")) and records of every penny flowing in or out of the company for an eight-year period (RFP No. 16).

Plaintiff's request for records regarding the personal finances of each Individual Defendant also far exceeds the proper scope of jurisdictional discovery because their personal finances are irrelevant to the alter ego theory.  So, for example, Plaintiff makes the irrelevant and overbroad request for all "monthly, quarterly and

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

annual bank and investment statements" of Mr. Urman (RFP No. 18), with no limitation that they relate to MindGeek or Plaintiff's causes of action.  This request plainly exceeds the scope of jurisdictional discovery.  As described above, Plaintiff has been provided with documents that reflect how the money flows at MindGeek, including the distributions from MindGeek to the Individual Defendants.  In the case of Mr. Urman, MindGeek has already produced documents that reflect the entirety of the distributions provided to Mr. Urman for the relevant time period.  And he did not use these monies to augment MindGeek or any Individual Defendant.  (Supplemental Rog Response #2).)  Therefore, there is no reason to require Mr. Urman to produce documents evidencing the same distributions.  What an Individual Defendant does with the money he receives as a MindGeek shareholder or employee for purposes having nothing to do with related party transactions is simply irrelevant to the alter ego analysis.  Moreover, the request is plainly overbroad on its face in that it calls for production of documents related to accounts that have nothing whatsoever to do with MindGeek.   Indeed, this request is a perfect example of Plaintiff's "fishing expedition" approach to discovery in this action and her disregard of Judge Carney's admonition not to "complicate" the case.  Akoglu Decl., Exhibits A and B.

In short, Defendants have already produced documents and information that tell Plaintiff "how the money flows" at MindGeek[11] and allows her to explore her alter ego theory.  Requiring the Individual Defendants to search for additional financial documents – including personal financial materials not relevant to this case, much less within the bounds of jurisdictional discovery – is simply not "proportional to the needs of the case" under Fed. R. Civ. P 26(a).  *See Alaska Elec. Pension Fund v. Bank*

---

[11] Plaintiff also seeks to compel responses to RFP Nos. 2 and 3.  But as noted above, information regarding Mr. Urman's ownership of MindGeek and the monies he received from the company have been provided to Plaintiff in his interrogatory responses (ROG Nos. 1, 2) and in the interrogatory responses and documents produced by MindGeek related to the corporate and ownership structure of the company.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

*of Am. Corp.*, No. 14-CV-7126 (JMF), 2016 WL 6779901, at *3 (S.D.N.Y. Nov. 16, 2016) ("Rule 26(b)(1)'s proportionality requirement means [the requested documents] 'marginal utility' must also be considered."); *see also Hake v. Citibank, N.A.*, No. 19MC00125JGKKHP, 2020 WL 1467132, at *6 (S.D.N.Y. Mar. 26, 2020) (limiting discovery on proportionality grounds because the "need for the documents sought [was] . . . marginal at best" "[g]iven the marginal relevance of th[e] documents"); *Martinez v. Optimus Properties, LLC*, No. 17-3582, 2018 WL 5906904, at *2–3 (C.D. Cal. May 9, 2018) (observing that the relevance of certain document requests was "somewhat diminished by . . . [their] incremental potential value" and narrowing the requests on proportionality grounds).

**5.** **Plaintiff's Requests for Documents and Information Relative to Mr. Urman's Jurisdictional Contacts Exceed this Court's Rulings Concerning the Permissible Scope of Jurisdictional Discovery**

    **a.** **Plaintiff Seeks Information Related to Personal Contacts with the Jurisdiction (Rog No. 4, RFP Nos. 11-12)**

Plaintiff's discovery requests to the Individual Defendants (ROG No. 4, RFP Nos. 11-12) are overbroad to the extent they seek documents regarding their personal contacts with California and the United States.   To establish specific personal jurisdiction over the Individual Defendants, Plaintiff must show that they purposefully directed their activities at this jurisdiction and that her claims arose from those forum-directed activities.  *See AMA Multimedia LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020).  Plaintiff alleges that she was harmed by MindGeek's conduct and the theory that Judge Carney authorized her to explore in jurisdictional discovery was whether the Individual Defendants directed or implemented MindGeek policies that resulted in her alleged injuries.  *See* Akoglu Decl., Ex. A at 5-7.  Plaintiff's alleged injuries did not arise from the Individual Defendants' *personal* contacts with the

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1   jurisdiction so those contacts could not possibly form the basis for personal
2   jurisdiction over them.

3        Yet Interrogatory No. 4 and RFP Nos. 11 and 12 are not limited to MindGeek-
4   related business contacts the Individual Defendants have had with this jurisdiction.
5   Instead, Plaintiff insists that the Individual Defendants must also provide information
6   regarding purely personal contacts they may have had with the jurisdiction.  Indeed,
7   in the January 6, 2023 meet-and-confer, Plaintiff's counsel specifically insisted in
8   response to defense counsel's question that Plaintiff had a right to know if the
9   Individual Defendants had ever taken any purely personal trips to the United States,
10   such as, for example, if they took their families on a personal trip to Disneyland.[12]
11   *See* Akoglu Decl., ¶19.  This position is meritless and such personal contacts are
12   irrelevant to the issue of personal jurisdiction and outside the scope of the
13   jurisdictional discovery permitted by Judge Carney's ruling.

14        Despite the parties' disagreement over whether personal trips are relevant, at
15   the January 6, 2023 meet-and-confer, Mr. Urman's counsel offered to work with
16   MindGeek and produce to Plaintiff any ascertainable information regarding Mr.
17   Urman's business trips to the United States during the relevant period (beyond what
18   was provided in Interrogatory No. 4), including information about the trip's date,
19   location, and purpose.  *See* Akoglu Decl., ¶19.  In the context of Interrogatory No. 4,
20   at the same meet-and-confer, Mr. Urman's counsel also informed Plaintiff's counsel
21   that Mr. Urman did not own any real estate in the United States; and therefore, did
22   not have any additional information to provide about potential properties that are the
23   subject of that interrogatory.

24

25

---

26   [12] In response to this question, Plaintiff's counsel initially acknowledged that a
27   hypothetical personal trip to Disneyland was not relevant, but later reversed his
28   position and insisted that it was relevant, refusing to narrow the discovery requests to
     MindGeek-related business contacts.  *See* Akoglu Decl., ¶ at 19.

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

**b.** **Plaintiff Seeks Communications with Other Defendants Related to this Action (RFP No. 4)**

In this stipulation, Plaintiff claims that she seeks "communications with other defendants," but omits that her request actually seeks communications among defendants "related to this Action." (RFP No. 4). This request is plainly irrelevant to the question of personal jurisdiction over Mr. Urman since it seeks communications well after the date Plaintiff's alleged claims arose. The Amended Complaint alleges that the latest date Plaintiff's content was on a MindGeek website was in June 2020. *See* Akoglu Decl., Ex. N at ¶268. As this Court has previously held, "only contacts occurring prior to the event causing the litigation may be considered." *See* Akoglu Decl., Ex. B at 3 (citing *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990)). Moreover, as the Individual Defendants advised Plaintiff during the January 6 meet-and-confer, the Court struck an identical document request from Plaintiff's proposed letters rogatory to Grant Thornton entities earlier in this case. Akoglu Decl., Ex. B at 6. Moreover, this request does not relate to either of the two subjects on which the Court authorized jurisdictional discovery: the direction or implementation of CSAM policies or alter ego.

**c.** **Plaintiff Seeks Materials Beyond the Scope of Authorized Jurisdictional Discovery (RFP No. 32 and ROG Nos. 4)**

Plaintiff seeks from each Individual Defendant his list of contacts, without regard to whether they are business or personal, or have anything at all to do with MindGeek. This request is a transparent fishing expedition and needlessly invasive in light of the fact that a person's contacts likely include family members, personal friends, doctors, clergy, and other private and confidential relationships. It is also beyond the scope of the authorized jurisdictional discovery. Indeed, Plaintiffs have conceded that this request relates to the merits of the case, not the jurisdiction issue. When MindGeek objected to an identical document request for the Individual

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Defendants' contact lists on the grounds that they were not related to jurisdiction, Plaintiff did not attempt to justify the request as jurisdictionally relevant. Instead, Plaintiff repeated that merits discovery was permissible and argued that the information was relevant to "Plaintiff's *claims* and likely to lead to additional evidence concerning the individual Defendants' *liability*." *See* Akoglu Decl., Ex. M at 4 (emphasis added). In any event, any contacts with whom Mr. Urman communicated about jurisdictionally relevant issues will be ascertainable from any documents reflecting Mr. Urman's jurisdictionally responsive communications.[13]

Plaintiff's insistence on obtaining Mr. Urman's tax returns is likewise wholly unjustified. Plaintiff provides no argument to the contrary, and her cited authority, *A. Farber & Partners, Inc.*, 234 F.R.D. at 191, demonstrates that courts perform a separate, two-step inquiry before ordering production of tax returns. In *Farber*, the Court ordered production of the returns because of their relevance to the plaintiff's civil RICO claims, not personal jurisdiction. *Id.*

It is well-established that courts "are typically reluctant to compel their disclosure because of both the private nature of the sensitive information contained therein and the public interest in encouraging the filing by taxpayers of complete and accurate returns." *Uto v. Job Site Services Inc.*, 269 F.R.D. 209, 212 (E.D.N.Y. 2010); *Nat. Gas Pipeline Co. of Am. V. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993) ("Income tax returns are highly sensitive documents; courts are reluctant to order their routine disclosure as a part of discovery. Not only are the taxpayer's privacy concerns at stake, but unanticipated disclosure also threatens the effective administration of our federal tax laws given the self-reporting, self-assessing character of the income tax system."). Before courts order production of tax returns, they not only require a showing that the material is relevant, but they must also find

---

[13] Mr. Urman has also provided Plaintiff a supplemental response to Interrogatory No. 6, supplementing the communication services he did or may have used during the relevant time period.

CASE NO. 21-CV-04920-CJC-ADS
**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1   "that there is a compelling need for the returns because the information contained

2   therein is not otherwise readily obtainable." *A. Farber & Partners, Inc.*, 234 F.R.D.

3   at 191 (quoting *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 189 (D. Kan. 1997)).  As the

4   relevant information—where the money flows form the MindGeek Entities—is

5   readily obtainable from the financial records of those companies, Plaintiff's request

6   to compel Mr. Urman's tax returns should be denied.[14]

7              **6.**      **Mr. Urman Has Conducted A Reasonably Diligent Search**

8                        **for Documents**

9        Plaintiff is wrong regarding Mr. Urman's search efforts:  Mr. Urman and his

10  counsel have engaged in considerable review of the documents in Mr. Urman's

11  possession.  *See* Akoglu Decl., ¶22.  As explained to Plaintiff's counsel, three of the

12  Individual Defendants, including Mr. Urman, as former employees, no longer have

13  access to documents residing on media owned by a MindGeek entity.  *See* Akoglu

14  Decl., ¶21.

15       To be clear, none of the Individual Defendants' counsel represented to

16  Plaintiff's counsel that Individual Defendants had not begun their search for

17  responsive documents.  *See* Akoglu Decl., ¶21-22.  Instead, Individual Defendants'

18  counsel informed Plaintiff's counsel that it was hard to do a productive search given

19  the scope of Plaintiff's requests, not that no search had been conducted.  *See* Akoglu

20  Decl., ¶21-22.   When Individual Defendants' counsel sought to resolve this

21  misunderstanding – after first becoming aware of it through Plaintiff's draft of this

22  Joint Stipulation – Plaintiff's counsel would not correct Plaintiff's portion of the Joint

23

24

25

---

26  [14] Plaintiff also demands that Mr. Urman be ordered to produce the tax returns "for the
     various entities listed in response to Interrogatory No. 4."  However, Mr. Urman did
27  not list any entities in response to Interrogatory No. 4.  Plaintiff's request is
     inapplicable and should be denied.
28

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Stipulation on this point, which has been inaccurate since it was first served on the Individual Defendants on December 23, 2022.[15] *See* Akoglu Decl., Ex. I.

## V. CONCLUSION

### A. Plaintiff's Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion in full, and order Defendant Urman to produce documents in response to Plaintiff's RFPs 1-30, 32-42, 46, 49, and 52 and to supplement his responses to Plaintiff's ROGs 2, 3, 4, and 6. As a Defendant in this action, Urman has the obligation to carry out a search for, and respond fully to, Plaintiff's relevant discovery requests. Urman has yet to even search for responsive material, let alone carried his burden to show the disputed discovery should not be allowed. Urman was a senior executive, Vice President, and employee of the companies at the center of this litigation, and his refusal to produce even the most basic of communications concerning Plaintiff and his roles in directing, guiding, and controlling the policies governing, and content found on, MindGeek's tubesites defy the Court's previous discovery rulings and fly in the face of the Court's specific direction for the Defendant to submit to jurisdictional discovery. Accordingly, this Court should order Defendant Urman to respond to the aforementioned discovery requests.

### B. Defendant's Conclusion

For the reasons stated in this Joint Stipulation and supporting exhibits, Mr. Urman respectfully requests that the Court deny Plaintiff's Motion in full.

---

[15] Further, despite Plaintiff's arguments in section III(A)(5), Mr. Urman is not currently withholding any documents on the basis of privacy, as Plaintiff stated during the meet-and-confer conference on December 15, 2022. Akoglu Decl., ¶23.

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    Dated: February 8, 2023              Respectfully Submitted

2                                         **BROWN RUDNICK LLP**

3

4                                         By: *Michael J. Bowe*
                                          MICHAEL J. BOWE (*pro hac vice*)
5                                         mbowe@brownrudnick.com
                                          LAUREN TABAKSBLAT
6                                         (*pro hac vice*)
7                                         ltabaksblat@brownrudnick.com
                                          7 Times Square
8                                         New York, NY 10036
9                                         Phone: (212) 209-4800
                                          Fax: (212) 209-4801
10

11                                        David M. Stein (#198256)
12                                        dstein@brownrudnick.com
                                          2211 Michelson Drive, 7th Floor
13                                        Irvine, California  92612
14                                        Phone: 949.752.7100
                                          Fax: 949.252.1514
15

16                                        Attorneys for Plaintiffs

17

18   Dated: February 8, 2023              MINTZ LEVIN COHN FERRIS GLOVSKY AND
                                          POPEO, P.C.
19
                                          BY: *Peter A. Biagetti*
20                                        Adam B. Korn (SBN 331133)
                                          abkorn@mintz.com
21                                        MINTZ LEVIN COHN FERRIS
                                          GLOVSKY AND POPEO, P.C.
22                                        2049 Century Park East, Suite 300
                                          Los Angeles, CA 90067
23                                        Telephone:  (310) 586-3200

24                                        Peter A. Chavkin (*Pro Hac Vice*)
                                          pachavkin@mintz.com
25                                        Kerime S. Akoglu (*Pro Hac Vice*)
                                          ksakoglu@mintz.com
26                                        MINTZ LEVIN COHN FERRIS
                                          GLOVSKY AND POPEO, P.C.
27                                        919 Third Avenue, 39th Floor
                                          New York, NY 10022
28                                        Telephone:  (212) 935-3000

                                                                  CASE NO. 21-CV-04920-CJC-ADS
**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Peter A. Biagetti (*Pro Hac Vice*)
pabiagetti@mintz.com
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000

Attorneys for Specially-Appearing
Defendant,
COREY URMAN

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT COREY URMAN'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**