# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LACV-21-04920-CJC-(ADSx)  Date: July 29, 2022

Title: <u>SERENA FLEITES V. MINDGEEK S.A.R.L., *ET AL*.</u>

PRESENT:

**HONORABLE CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE**

| Rolls Royce Paschal | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANT:

None Present    None Present

**PROCEEDINGS: (IN CHAMBERS) ORDER DIRECTING THE MINDGEEK DEFENDANTS TO SUBMIT TO JURISDICTIONAL DISCOVERY UNTIL DECEMBER 30, 2022, GRANTING PLAINTIFF LEAVE TO AMEND HER COMPLAINT AFTER JURISDICTIONAL DISCOVERY IS COMPLETE, AND DENYING THE MINDGEEK DEFENDANTS' MOTIONS TO DISMISS WITHOUT PREJUDICE [Dkts. 135-137, 139-140] FOR THEM TO RENEW AFTER PLAINTIFF HAS FILED A SECOND AMENDED COMPLAINT**

In this case, Plaintiff Serena Fleites brings numerous causes of action against Defendants MindGeek S.A.R.L., MG Freesites Ltd., MindGeek USA Inc., MG Premium Ltd., MG Global Entertainment Inc., 9219-1568 Quebec, Inc. (collectively, the "MindGeek Entity Defendants"), Bernd Bergmair, Feras Antoon, Davis Tassillo, Corey Urman (collectively, the "MindGeek Individual Defendants") (the MindGeek Entity Defendants and MindGeek Individual Defendants are referred to collectively as the "MindGeek Defendants"), and Visa, Inc., as well as certain doe defendants, referred to as the "Colbeck Capital Does" and the "Bergmair Does," for the emotional and financial harms she suffered when various sexually explicit videos of her as a minor were posted to MindGeek's pornographic websites, where they remained—either in their original or reuploaded form—for years, allegedly earning MindGeek advertisement revenue while Plaintiff battled the resulting depression, drug addiction, suicidal ideations, suicide attempts, and homelessness. (Dkt. 124-3 [First Amended Complaint, hereinafter "FAC"].) The disturbing allegations against the MindGeek Defendants are further

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LACV-21-04920-CJC-(ADSx)            Date: July 29, 2022
                                                                     Page 2

---

detailed in the Court's companion order granting in part and denying in part Visa's motion to dismiss. (*See* Dkt. 166.)

In response to the FAC, the MindGeek Defendants move to dismiss on various grounds. The MindGeek Entity Defendants filed a joint motion to dismiss, (Dkt. 139), and the MindGeek Individual Defendants filed separate motions to dismiss, (Dkts. 135-137, 140). In the MindGeek Entity Defendants' joint motion, MindGeek S.A.R.L., which is the alleged parent company of the remaining MindGeek Entity Defendants, (FAC ¶¶ 20-24), and MG Premium Ltd., who allegedly owns and operates MindGeek's premium and pay sites, (*id*. ¶ 22), raise challenges to the Court's personal jurisdiction over them, (Dkt. 139 at 45-50.) Each of the MindGeek Individual Defendants also challenge the Court's personal jurisdiction. (Dkts. 135-137, 140.)

Plaintiff argues that the Court should impute to MindGeek S.A.R.L., MG Premium Ltd., and the MindGeek Individual Defendants the jurisdictional contacts of the non-objecting MindGeek Entity Defendants on an alter ego basis. (Dkt. 151 at 72-77.) She also argues that MindGeek S.A.R.L., MG Premium Ltd., and the MindGeek Individual Defendants have sufficient contacts with the United States on their own to support a finding of personal jurisdiction under Federal Rule of Civil Procedure 4(k), which confers jurisdiction over a foreign defendant who lacks sufficient contacts with any one state but maintains sufficient contacts with the United States as a whole. (*Id*. at 77-79.) Plaintiff also makes a request for jurisdictional discovery.[1] Given the jurisdictional issues addressed below, the Court agrees that jurisdictional discovery is appropriate.

### A.     Personal Jurisdiction: MindGeek S.A.R.L. and MG Premium Ltd.

It is important to note at the outset that MG Freesites, Ltd. and 9219-1568 Quebec, Inc. do not object to the Court's personal jurisdiction. Per the declaration of MindGeek S.A.R.L. director Andreas Alkiviades Andreou, MG Freesites Ltd. operates Pornhub and MindGeek's other porn sites, and 9219-1568 Quebec, Inc. provides services to MG Freesites, Ltd. (Dkt 139-3 [Andreou Decl.] ¶¶ 17, 32.) Plaintiff alleges that 9219-1568 Quebec, Inc. performs operational functions for Pornhub and MindGeek's other porn

---

[1] Plaintiff also argues that the RICO statute might provide a sufficient basis for personal jurisdiction, but for the reasons mentioned in the Court's companion order, (*see* Dkt. 166), the Court has serious doubts as to whether Plaintiff has adequately pled RICO injuries or the timeliness of her RICO claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LACV-21-04920-CJC-(ADSx)            Date: July 29, 2022
                                                                                                                                         Page 3

---

sites. (FAC ¶ 33.) These entities' decisions not to object to the Court's personal jurisdiction are unsurprising: Plaintiff alleges that Pornhub is used extraordinarily frequently in this district, as Los Angeles boasts the fourth highest usage of Pornhub (per city) in the world and Pornhub drives 3.17 trillion monthly ad impressions. The Court is left to wonder, however, who *owns* Pornhub and the other MindGeek websites that hosted Plaintiff's videos? Mr. Andreou is clear that MG Freesites *operates* Pornhub and the other porn sites, and he asserts "MindGeek S.A.R.L. has been and is nothing more than a holding company, without any employees or operations of its own." (Andreou Decl. ¶¶ 14, 17.) That neither confirms nor denies MindGeek S.A.R.L.'s possible ownership of Pornhub. Plaintiff, however, cannot firmly commit to an allegation that MindGeek S.A.R.L. owns Pornhub and the other porn sites on which her videos appeared. She alleges that MindGeek S.A.R.L. "directly and indirectly owns and operates over 100 pornographic websites…including Pornhub." (FAC ¶ 19.) The distinction between direct and indirect ownership of the offending websites is crucially important to the Court's jurisdictional analysis, but *neither* party makes a firm statement on that issue.[2] Also, operation of a website is not necessarily the same as control over a website. MG Freesites and 9219-1568 Quebec, Inc.'s operation of Pornhub and other MindGeek websites might not embrace control over the overall policies governing the website. Mr. Andreou does not speak to this distinction, and Plaintiff is again vague on the point of control, stating that MindGeek S.A.R.L. "owns and/or controls the majority of the pornography on the internet."[3] (*Id.* ¶ 19.)

---

[2] Where the money flows in the MindGeek web, which may relate to ownership of the porn sites that generate revenue, matters to the Court's jurisdictional analysis. As the Court sees it, financially benefiting from the sexual exploitation of minors is the core of this case. *See* 18 U.S.C. § 1591(a)(2). Jurisdictionally relevant conduct could include operating Pornhub and other MindGeek sites in a manner that maximizes the profitability of child porn. But it also includes collecting money—possibly from U.S.-based advertisers—flowing from the success of the aforementioned criminal operation.

[3] Plaintiff does not make other allegations specific to MindGeek S.A.R.L. The Court has reviewed the other allegations to which Plaintiff cites in support of her argument that MindGeek S.A.R.L. has maintained sufficient nationwide contacts and notes that these allegations either pertain to other Defendants or simply group-plead the MindGeek Defendants without identifying their specific conduct. But personal jurisdiction is just that: *personal* (unless there are grounds for imputing one defendant's contacts to another). Further, the Court cannot derive from the complaint a clear understanding of MG Premium's specific contacts with this state or with the United States as a whole as those contacts relate to this action. Plaintiff does allege that MG Premium owns and operates certain MindGeek paid sites, (FAC ¶ 22), but it is not clear from the FAC that Plaintiff's videos were placed on any of MindGeek's premium sites (*see* FAC ¶¶ 258-272 [explaining Plaintiff's story without mention of whether her videos were placed on premium sites]).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LACV-21-04920-CJC-(ADSx)            Date: July 29, 2022
                                                                                                Page 4

Plaintiff may also be able to impute the contacts of the non-objecting MindGeek Entity Defendants to MindGeek S.A.R.L. and MG Premium through the alter ego doctrine. "[T]o avail [herself] of the [alter ego] doctrine, [P]laintiff must allege two elements: First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." *Wehlage v. EmpRes Healthcare, Inc.*, 791 F.Supp.2d 774, 782 (N.D. Cal. 2011).

For their part, the MindGeek Entity Defendants, through Mr. Andreou's declaration, aver in rather conclusory and repetitive fashion that they are each adequately capitalized and maintain separate financials, functions, and management, and that to the extent one MindGeek Entity Defendant provides services to another, those services are remunerated. (*See* Andreou Decl.) The Court notes, however, that even Mr. Andreou confirms a substantial overlap in the directors of the MindGeek Entity Defendants.[4] (Andreou Decl. ¶¶ 15, 19, 22, 26, 30, 35.) In that same vein, Plaintiff alleges that the true managerial ties between the MindGeek Entity Defendants runs deeper, asserting that the MindGeek Individual Defendants exercise ultimate control over all of the MindGeek Entity Defendants, (FAC ¶¶ 25-28), an assertion that the MindGeek Defendants do not explicitly rebut. The Court also has some concern with respect to the capitalization or solvency of the MindGeek Entity Defendants. Plaintiff alleges that "MindGeek" has accrued millions of dollars of revenue in the past three to five years while operating at "massive" net losses, owing to various schemes in which some MindGeek Defendants bleed money out of others through fraudulent transactions. (*See, e.g., id.* ¶¶ 131-37.)

And therein lies the possible unfairness in dismissing any of the MindGeek Defendants at this point in the proceedings: the possibility that judgment will be entered against remaining insolvent or undercapitalized entities. If the jury finds that the MindGeek Defendants engaged in schemes which diverted money from revenue generating MindGeek entities in contravention of corporate formalities, the Court is

---

[4] According to Mr. Andreou, MindGeek S.A.R.L.'s directors are himself, Anis Baba, and Claude Favre, MG Freesites's directors are himself, Anis Baba, Constantine Georgoude, and Charme Management Ltd., MG Premium has the same directors has MG Freesites, MG Global Entertainment and MindGeek USA have the same director: Andrew link, and the directors of 9219-1568 Quebec Inc. are himself, Feras Antoon, Constantine Georgoude, Polina Hadjivasilliou, and David Tassillo.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. LACV-21-04920-CJC-(ADSx)            Date: July 29, 2022
                                                                                                     Page 5

concerned with the ability of the non-objecting MindGeek Entity Defendants to satisfy the damages awarded by a jury.

### B.     Personal Jurisdiction: MindGeek Individual Defendants

With respect to the specific conduct of the MindGeek Individual Defendants that might support an exercise of personal jurisdiction, there are various allegations throughout the FAC that identify specific MindGeek policies or practices—which were applied to Plaintiff and her videos—that the MindGeek Individual Defendants allegedly directed or implemented. (*See* FAC ¶¶ 171-72, 194, 199, 203-209, 213.) But those allegations suffer from a group-pleading problem that unfortunately plagues Plaintiff's FAC, as Plaintiff lists *each* MindGeek Individual Defendant as responsible for a policy or practice each time she identifies the pernicious policy or practice. On the one hand, it might be true that the MindGeek Individual Defendants are all guilty of promulgating, knowingly approving, or implementing the criminal policies identified in the FAC, putting them at the center of the conduct that harmed Plaintiff. Conspicuously, the MindGeek Individual Defendants do not submit their own declarations to rebut these allegations. On the other hand, given the scattershot nature of the FAC and these allegations in particular, the Court has some concern that Plaintiff is merely guessing at who bears responsibility for the policies and practices that were applied to her videos.[5]

---

[5] In addition to more clearly identifying the *individual* conduct of the MindGeek Individual Defendants, Plaintiff must plead specific allegations—not generalizations—which distinguish her case from *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210 (9th Cir. 2020), *cert. denied*, 142 S. Ct. 76 (2021). The Court can discern from the FAC a few distinguishing factors that Plaintiff should clarify. First, *AMA* involved a passive website (or at least the court used a framework applicable to passive websites). *See id.* at 1219. Pornhub is not a passive site, as users—ostensibly in the United States—can download and upload videos, a practice that the MindGeek Individual Defendants may have promulgated that directly harmed Plaintiff by allowing her videos to propagate faster than she could request their removal. Also, the percentage of Pornhub users living in the United States may be far higher than the 20% in *AMA*, (*see* FAC ¶ 42), which may serve as a ground for finding that Pornhub has a "forum-specific focus" relating to the United States, *AMA*, F.3d at 1210. It is also possible that one or many of the MindGeek Entity Defendants maintains servers in the U.S., that child porn featuring Plaintiff ended up on these servers, and that one or all of the MindGeek Individual Defendants promulgated a policy of reuploading child porn, like Plaintiff's videos, to MindGeek's websites after taking them down. (*See* FAC ¶ 209.) The Court is not convinced by the MindGeek Entity Defendants' conclusory, vague denial of ownership of any servers in the United States, as they fail to identify where the servers are otherwise located. (*See* Dkt. 139-4.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. LACV-21-04920-CJC-(ADSx) | Date: July 29, 2022 |
| | Page 6 |

---

Plaintiff might also have a workable alter ego theory pursuant to which she can impute the jurisdictional contacts of the non-objecting MindGeek Entity Defendants to the MindGeek Individual Defendants. She alleges that the MindGeek Entity Defendants are each controlled by the MindGeek Individual Defendants, (FAC ¶¶ 25-28), that the MindGeek Individual Defendants appoint sham directors to the entities which they control in order to impede investigations, (*id.* ¶ 135), and that the MindGeek Entity Defendants divert money, possibly to the MindGeek Individual Defendants,[6] (*id.* ¶ 137). On the one hand, these allegations are rather conclusory, vague, and indeed, quite difficult to follow at times, in terms of identifying the specific Defendants responsible for the conduct described. Importantly, however, and as mentioned above, the MindGeek Individual Defendants do not rebut these allegations through any declarations.

### C. Jurisdictional Discovery

Plaintiff requests leave to conduct jurisdictional discovery. (Dkt. 151.) "A court may permit discovery to aid in determining whether it has personal jurisdiction." *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1093 (C.D. Cal. 2010) (*citing Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)). Jurisdictional discovery may be appropriate when "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). Jurisdictional discovery is appropriate in this case. In the sections above, the Court attempted to outline the push and pull of the jurisdictional facts before it. Neither side is clear on who owns and controls Pornhub and MindGeek's other porn sites on which Plaintiff's videos appeared. Both sides allege or rebut certain alter ego factors in a conclusory, generalized manner. Plaintiff offers group-pleading and conclusory assertions relating to the degree of the MindGeek Individual Defendants' responsibility for certain policies which affected her and relating to their pervasive control over the MindGeek Entity Defendants overall, which, in turn, draw silence from the MindGeek Individual Defendants.[7]

---

[6] This alleged flow of money is also jurisdictionally relevant for the reason discussed in footnote 2, *supra*.
[7] The MindGeek Defendants cite several Ninth Circuit cases wherein the court upheld the *denial* of jurisdictional discovery, intimating that the Ninth Circuit has announced a standard for *granting* jurisdictional discovery. When a higher court identifies reasons that support a lower court's exercise of

Case 2:21-cv-04920-CJC-ADS Document 172 Filed 08/02/22 Page 8 of 9 Page ID #:5730

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LACV-21-04920-CJC-(ADSx)            Date: July 29, 2022
           Page 7

       The MindGeek Individual Defendants resort to a refrain that jurisdictional discovery would be a mere fishing expedition. (Dkt. 158 at 15; Dkt. 163 at 15; Dkt. 164 at 13.) But as the Court mentioned above, Plaintiff has alleged facts bearing on the MindGeek Individual Defendants direction of specific policies pursuant to which Plaintiff was harmed, and the MindGeek Individual Defendants do not submit any affidavit to rebut their involvement in those decisions. And this case is a far cry from this Court's decision in *Symettrica Entertainment, Ltd. v. UMG Recordings, Inc.*, 2019 WL 8806093 (C.D. Cal. Sept. 20, 2019), a case cited by the MindGeek Individual Defendants. In that case, UMG countersued Symettrica and two of its directors for copyright infringement. *Id*. at *1. The directors moved to dismiss for lack of personal jurisdiction, invoking the fiduciary shield doctrine. *Id*. at *3. The Court granted the motion after comparing the generalized allegations that the directors "authorized, directed, or participated in the wrongful conduct alleged" with the directors' detailed affidavits disclaiming their direct involvement. *Id*. Again, there are no affidavits to rebut the MindGeek Individual Defendants' alleged direct involvement in promulgating the practices and policies that harmed Plaintiff. But on a more fundamental level, Symettrica faced much different allegations than MindGeek. Symettrica, a documentary filmmaker, was alleged to have committed copyright infringement relating to *one* of its documentaries. It is reasonable to assume that executives and directors at a company are not aware of every act that that company takes. And, like in *Symettrica*, when a company is alleged to have committed a one-off illegal act, it would be improper to grant jurisdictional discovery based only on the vague allegation that the relevant executives or directors guided or directed that act. But Plaintiff alleges that one of MindGeek's main lines of business was criminal in nature. Plaintiff is not seeking to pin one-off illegal activity on a company's executives or directors with nothing more than an assumption that those executives or directors control everything at the company. That would be speculative. Plaintiff is instead seeking to tie to the MindGeek Individual Defendants the policies and practices that governed one of MindGeek's main lines of business. That is not speculative, especially in light of the MindGeek Individual Defendants failure to offer contrary evidence. It is entirely plausible that at least one of the MindGeek Individual Defendants—high up as they were in the MindGeek hierarchy—had substantial involvement in the practices and policies of one of MindGeek's major lines of business that harmed Plaintiff.

---

discretion to deny jurisdictional discovery, those reasons do not become prerequisites for the granting of a request for jurisdictional discovery.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. LACV-21-04920-CJC-(ADSx)            Date: July 29, 2022
Page 8

       The Court **ORDERS** Plaintiff and the MindGeek Defendants to engage in jurisdictional discovery. The Court sets **FRIDAY, DECEMBER 30, 2022** as the close for jurisdictional discovery. The Court **REFERS** this matter to the Magistrate Judge for the jurisdictional discovery period.

       The Court **DENIES WITHOUT PREJUDICE** the MindGeek Defendants' motions to dismiss in light of the near certainty that Plaintiff will file a Second Amended Complaint at the close of jurisdictional discovery, which the Court **GRANTS** her leave to do. The Court's prior orders extending the page limits for the motions to dismiss are not standing orders. Extensions of page limits are allowable when additional elaboration would be helpful to the Court and only to that extent. The MindGeek Entity Defendants did not need ten pages to reprise the arguments that this Court twice rejected in *Doe v. MindGeek*, and the MindGeek Individual Defendants did not need multiple pages to repetitively walk through several district court cases that illustrate the application of the fiduciary shield doctrine, for example. When it comes time to file renewed motions to dismiss, the usual 25-page limit will apply, unless the Court grants permission to surpass that limit.

MINUTES FORM 11
CIVIL-GEN                                                                               Initials of Deputy Clerk RRP