1   Michael J. Bowe
    (admitted *pro hac vice*)
2   mbowe@brownrudnick.com
    Lauren Tabaksblat
3   (admitted *pro hac vice*)
    ltabaksblat@brownrudnick.com
4   **BROWN RUDNICK LLP**
    7 Times Square
5   New York, NY 10036
    Telephone:   (212) 209-4800
6   Facsimile:   (212) 209-4801

7   Attorneys for Plaintiff

Jason Brown
(admitted *pro hac vice*)
jbrown@cohengresser.com
Nathaniel P. T. Read
(admitted *pro hac vice*)
nread@cohengresser.com
**COHEN & GRESSER LLP**
800 Third Avenue
New York, NY 10022
Telephone: (212) 957-7600

Attorneys for Defendant Feras Antoon

8

9                  UNITED STATES DISTRICT COURT
10               CENTRAL DISTRICT OF CALIFORNIA
                      SOUTHERN DIVISION
11

12  SERENA FLEITES,

13          Plaintiff,

14      v.

15  MINDGEEK S.A.R.L.; MG
    FREESITES, LTD; MINDGEEK
16  USA INCORPORATED; MG
    PREMIUM LTD.; MG GLOBAL
17  ENTERTAINMENT INC.; 9219-
    1568 QUEBEC, INC.; BERND
18  BERGMAIR; FERAS ANTOON;
    DAVID TASSILLO; COREY
19  URMAN; VISA INC.; COLBECK
    CAPITAL DOES 1-5;
20  BERGMAIR DOES 1-5

21          Defendants.

CASE NO. 2:21-CV-04920-CJC-ADS

**DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE AUTUMN D. SPAETH**

**NOTICE OF MOTION AND PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Date: March 8, 2023
Time: 10:00 a.m.
Courtroom: 6B

Jurisdictional Discovery Cutoff: May 1, 2023

22

23

24

25

26

27

28

**NOTICE OF MOTION AND PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

# **TABLE OF CONTENTS**

**Page**

JOINT STIPULATION ...................................................................................... 3

I.    THE PARTIES' PRELIMINARY STATEMENTS ..................................... 3

    A.    Plaintiff's Preliminary Statement................................................. 3

    B.    Defendant's Preliminary Statement ............................................. 4

II.   JOINT SPECIFICATION OF ISSUES IN DISPUTE ............................... 8

    A.    Requests for Production in Dispute ............................................. 8

    B.    Interrogatories in Dispute........................................................... 46

III.  PLAINTIFF'S POSITION ...................................................................... 51

    A.    Plaintiff's Motion To Compel.................................................... 51

        1.    Antoon Cannot Avoid Discovery Just Because the
             MindGeek Entity Defendants May Provide Discovery............ 52

        2.    Antoon Refuses to Produce Documents and
             Communications Concerning Plaintiff ...................................... 52

        3.    Antoon Disregards this Court's Rulings Concerning the
             Permissible Scope of Jurisdictional Discovery ....................... 53

        4.    Antoon Refuses to Produce Documents and Sufficient
             Information Relative to His Jurisdictional Contacts ................ 57

        5.    Antoon's Privacy and Data Protection Objection is
             Without Merit .......................................................................... 58

        6.    Antoon Has Refused to Conduct a Search for Responsive
             Documents ............................................................................... 59

IV.   ANTOON'S POSITION ......................................................................... 60

    A.    Plaintiff's Motion to Compel Should Be Denied in Full.................... 60

        1.    Plaintiff's Motion Should be Denied for Failure to
             Meaningfully Meet and Confer ................................................ 60

        2.    Plaintiff Improperly Seeks MindGeek Corporate Records
             from the Individual Defendants................................................ 67

        3.    Documents and Communications Concerning Plaintiff
             (RFP No. 1) ............................................................................. 70

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

4.   Plaintiff's Requests Go Far Beyond Jurisdictional
     Discovery ....................................................................... 71

     a.   CSAM policies (RFP Nos. 5, 10, 30, 33-42, 46, 49,
          52) ........................................................................ 71

     b.   Where Money Flows (RFP Nos. 2-3, 6-9, 13-29) ........... 72

5.   Plaintiff's Requests for Documents and Information
     Relative to Mr. Antoon's Jurisdictional Contacts Exceed
     this Court's Rulings Concerning the Permissible Scope of
     Jurisdictional Discovery ................................................... 77

     a.   Plaintiff Seeks Information Related to Personal
          Contacts with this Jurisdiction .................................. 77

     b.   Plaintiff Seeks Communications with Other
          Defendants Related to this Action (RFP No. 4) ............. 78

     c.   Plaintiff Seeks Contact Lists Beyond the Scope of
          Authorized Jurisdictional Discovery (RFP No. 32
          and ROG No. 6) ...................................................... 79

6.   Mr. Antoon Has Conducted A Reasonably Diligent Search ..... 79

V.   CONCLUSION ........................................................................ 80

A.   Plaintiff's Conclusion ....................................................... 80

B.   Defendant's Conclusion ...................................................... 81

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2  **PLEASE TAKE NOTICE** that on March 8, 2023, at 10:00 a.m., or as soon
3  thereafter as the matter may be heard, in the courtroom of the Honorable Autumn D.
4  Spaeth, located at the Ronald Reagan Federal Building and United States Courthouse,
5  Courtroom 6B, 411 West Fourth Street, Santa Ana, CA 92701, Plaintiff Serena Fleites
6  ("Plaintiff") will move the Court for an Order compelling defendant Feras Antoon to
7  respond to discovery and produce documents pursuant to Rules 33 and 34 of the
8  Federal Rules of Civil Procedure.

9  Plaintiff brings this motion pursuant to Rules 26, 33, 34, and 37 of the Federal
10  Rules of Civil Procedure; Local Rule 37-2, and this Court's July 2018 Standing
11  Orders on Discovery Disputes.

12  In accordance with L.R. 7-3 and 37-1, counsel for Plaintiff and Defendant Feras
13  Antoon conferred by telephone on December 15, 2022 and January 6, 2023.

14  Plaintiff bases this motion on this Notice, the Parties' Joint Stipulation
15  regarding this discovery dispute, the pleadings and papers on file in this action, and
16  on such other evidence as may be submitted to the Court.  Plaintiff submits a proposed
17  order with this application.

18

19

20  Dated: February 8, 2023

21

22

23

24

25

26

27

28

1

2 By: s/ Michael J. Bowe _____

By: s/ Jason Brown _____

3 MICHAEL J. BOWE (*pro hac vice*)
mbowe@brownrudnick.com

JASON BROWN (*pro hac vice*)
jbrown@cohengresser.com

4 Lauren Tabaksblat(*pro hac vice*)
ltabaksblat@brownrudnick.com

Nathaniel P. T. Read (*pro hac vice*)
nread@cohengresser.com

5 **BROWN RUDNICK LLP**
7 Times Square

**COHEN & GRESSER LLP**
800 Third Avenue

6 New York, NY 10036

New York, NY 10022

7 Phone: (212) 209-4800
Fax: (212) 209-4801

Phone: (212) 957-7600

8

**WIECHERT, MUNK & GOLDSTEIN, PC**

9 David M. Stein (#198256)
dstein@brownrudnick.com

David W. Wiechert (SBN 94607)
4000 MacArthur Blvd. Ste 600
East Tower

10 **BROWN RUDNICK LLP**
2211 Michelson Drive, 7th Floor

Newport Beach, CA 92660

11 Phone: (949) 361-2822
Irvine, California  92612

Phone: (949) 361-2822
Facsimile: (949) 361-5722

12 Phone: 949.752.7100
Fax: 949.252.1514

Email: dwiechert@aol.com

13

14 Attorneys for Plaintiff

Attorneys for Defendant Feras Antoon

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

<u>**JOINT STIPULATION**</u>

**I.    THE PARTIES' PRELIMINARY STATEMENTS**

    **A.    <u>Plaintiff's Preliminary Statement</u>**

This Court ordered the MindGeek Defendants, including the Individual Defendants, to submit to jurisdictional discovery, (Dkt. 167, at 1), specifically identifying the following areas of relevant inquiry": "where the money flows in the Mindgeek web," which entities or individuals exercise operational control over the MindGeek entities that monetized Plaintiff's child sexual abuse material ("CSAM"), and whether these individuals and entities are alter egos of each other.  (Dkt. 167, at 3 n.2, 4-7).  Consistent with this Order, Plaintiff served discovery requests tracking the precise categories of information this Court held to be relevant to its jurisdictional analysis on the MindGeek Entity Defendants, the Individual Defendants, and defendants' auditors, third party-Grant Thornton.  This Court thereafter affirmed the relevance of the categories of information Plaintiff seeks and issued letters rogatory to various Grant Thornton entities seeking the same categories of information that Plaintiff seeks from defendant Antoon.  *See* Dkt. 211 at 5-6 ("The Court agrees with Plaintiff that the information is relevant to the Court's jurisdictional analysis and ensures Plaintiff 'obtains complete and accurate information.'").

Despite two court orders, Antoon has stonewalled Plaintiff's efforts to take basic jurisdictional discovery, refusing to produce any documents or even to conduct a search for responsive documents.  Antoon has taken the position that he is not required to participate in discovery – even to search for documents – because the Mindgeek Entity Defendants might produce discovery.  But this Court has already rejected the argument that an entity or individual need not participate in discovery because the information they possess would be duplicative of documents produced by any other party, Dkt. 211 at 4, and this holding applies with greater force where the party resisting discovery is a defendant in this action. ████████████

████████████

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1  ████████████████████████████████████████████████

2  ████████████████████████████████████████████████

3  ████████████████████████████████████████████████

4  ███████████████  *See* Doyle Decl., Exhibit 4, Resp. to ROG No. 1; *see also* Dkt.

5  139-1 ("MindGeek does not challenge the court's jurisdiction over . . . 9219 which

6  acts as a service provider to Freesites.").  Accordingly, he likely possesses certain

7  information that may not also be in the possession of other defendants in this action.

8  Nevertheless, he has not produced a single document to date.

9       Antoon was obligated both to conduct a reasonable search for responsive

10  documents and to state in his responses whether he is withholding any responsive

11  materials on the basis of any of his stated objections.  The Court has already confirmed

12  that the individual defendants are part of jurisdictional discovery.  *See* Dkt. 167 at 7

13  (rejecting Individual Defendants' argument that jurisdictional discovery was

14  unwarranted and ordering Individual Defendants to submit to discovery, in part, based

15  on finding that Plaintiff "has alleged facts bearing on the MindGeek Individual

16  Defendants' direction of specific policies pursuant to which Plaintiff was harmed").

17  This Court should Order Antoon to produce documents in response to Plaintiff's RFPs

18  1-30, 32-42, 46, 49, and 52 and to supplement his responses to Plaintiff's ROGs 2, 3,

19  4, and 6.[1]

20      **B.**  **Defendant's Preliminary Statement**

21       Feras Antoon is a citizen of Canada and the former CEO of MindGeek; he

22  resigned in June 2022, months before Plaintiff issued her discovery requests.  (*See*

23  Brown Decl. ¶ 23.)  As we have informed counsel for Plaintiff, the MindGeek

24  corporate defendants (the "MindGeek Entities") appropriately collected Mr. Antoon's

25  MindGeek business emails and data associated with messaging applications Mr.

26

27  ───────────────────

28  [1] Plaintiff reserves her right to further move to this Court for any of the remaining
RFPs or ROGs which have not been fully responded to by Defendant Antoon.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Antoon used for MindGeek business, including all appropriate mobile data such as text messages and messaging applications. (*See* Brown Decl. ¶¶ 23-24.) The MindGeek Entities are reviewing those materials—and of course their corporate records, other emails, and other sources—for documents responsive to Plaintiff's requests for production (which are substantially identical to the requests made to Mr. Antoon), as limited by the Court's orders granting jurisdictional discovery and the MindGeek Entities' objections to Plaintiff's requests. (*See id.*) Therefore, as Plaintiff is well aware, the only possible unique sources for documents from Mr. Antoon— rather than materials the MindGeek Entities have and are reviewing for production— are his personal email accounts.[2] (*See id.*)

The Court's grant of jurisdictional discovery, by contrast, is expressly directed at the MindGeek Entities' business and documents. Under the Court's order, first, although Plaintiff offered only "scattershot" and "conclusory" allegations that gave the Court "some concern that Plaintiff is merely guessing at who bears responsibility" for the relevant policies, Plaintiff may seek information regarding "specific MindGeek policies or practices—which were [allegedly] applied to Plaintiff and her videos—that the MindGeek Individual Defendants allegedly directed or implemented." (*See* Brown Decl., Ex. A (Dkt. No. 167 at 5-6.) Second, although Plaintiff's alter ego allegations are "conclusory, vague, and indeed, quite difficult to follow at times," she could take discovery to determine if she has a "workable alter ego theory" to impute the California MindGeek Entities' jurisdictional contacts to the Individual Defendants. (*See* Brown Decl., Ex. A (Dkt. No. 167 at 6).) In granting this discovery, the Court explicitly directed Plaintiff and her counsel "to not use this

---

[2] Although Mr. Antoon also has copies of his business-related text messages and other mobile messaging communications, as noted, the MindGeek entities are reviewing those same materials and will make any appropriate production pertinent to the issues of personal jurisdiction from those materials. Accordingly, Mr. Antoon is searching only his personal email accounts and other documents that are in his possession and not in the possession of the MindGeek Entities.

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    opportunity to further complicate this case." (*See* Brown Decl., Ex. C (Dkt. No. 168
2    at 2).)    More recently, the Court recognized that jurisdictional discovery requests
3    "must still be tailored to seek discovery that relates to an opposing party's
4    jurisdictional contacts." (Brown Decl. Ex. K (Dkt. No. 260 at 3).)

5        Plaintiff has not followed the Court's directions, and instead is moving to
6    compel responses to exceedingly broad discovery requests to Mr. Antoon and the
7    other individual defendants (together, the "Individual Defendants") going well
8    beyond the jurisdictional discovery ordered.    For example, several requests (both
9    alone and in combination) seek essentially every piece of paper and every email and
10   electronic record the Individual Defendants possess related to the MindGeek Entities.
11   Plaintiff similarly seeks information from the Individual Defendants regarding every
12   penny going in or out of MindGeek to or from any party for any purpose for an eight-
13   year period, without limitation.    Despite the Court's limited grant of jurisdictional
14   discovery and Mr. Antoon's status as an unlikely source of relevant documents (as
15   opposed to the MindGeek Entities), Plaintiff has not engaged with Mr. Antoon
16   regarding a reasonable search of Mr. Antoon's personal e-mails for non-privileged,
17   responsive documents within the jurisdictional discovery authorized by this Court.
18   Instead, Plaintiff has moved to compel on nearly all of her exceedingly broad
19   discovery requests without narrowing any of them.    Plaintiff has also moved to
20   compel more specific responses to interrogatories, even though she did not raise any
21   specific complaints about Mr. Antoon's responses prior to serving her portion of this
22   joint stipulation.

23       Plaintiff's motion to compel should be rejected for several reasons.

24       *First*, Plaintiff has not fulfilled her obligation to meet and confer as required by
25   L.R. 37-1.    Although Plaintiff admits that her requests were targeted to merits
26   discovery (in addition to jurisdictional issues), she has rebuffed repeated requests to
27   narrow her requests in any way.    And, to make matters worse, following the January
28   11, 2023, hearing on Plaintiff's motion to compel the MindGeek Entities to respond

6                              CASE NO. 21-CV-04920-CJC-ADS

1   to certain discovery requests, Plaintiff expressed a willingness to meet and confer with

2   counsel for Mr. Antoon on the issues raised in this joint stipulation, responding to the

3   Individual Defendants' request for a narrowed list of specific materials she seeks from

4   these Defendants regarding personal jurisdiction with: "yes – we should confer further

5   to try to reach agreements.  Back in touch shortly."  (Brown Decl. Ex. Q.)[3]  But

6   Plaintiff never contacted defense counsel to confer further.  Instead, on February 1,

7   2023, Plaintiff emailed her portion of a joint stipulation on a motion to compel each

8   Individual Defendant to respond to nearly all of her overbroad discovery requests as

9   written, without any narrowing constructions whatsoever.  (Brown Decl. Ex. S).  This

10  alone is a basis to deny her motion.

11      *Second*, Plaintiff impermissibly seeks a wide range of corporate documents

12  from Mr. Antoon, rather than the MindGeek Entities, who are the most convenient,

13  efficient, and logical source for those documents.

14      *Third*, Mr. Antoon has searched for documents concerning Ms. Fleites and does

15  not have any such documents in his personal emails from the relevant time period.

16      *Fourth,* Plaintiff's requests far exceed the scope of the limited jurisdictional

17  discovery permitted by the Court.

18      *Fifth,* Mr. Antoon has conducted and continues to conduct a reasonably diligent

19  search for documents within the proper scope of jurisdictional discovery and is willing

20  to meet and confer further regarding additional materials within that scope that

21  Plaintiff reasonably believes Mr. Antoon may have.

22

23

24

_____

25  [3] Plaintiff originally served this joint stipulation on December 23, 2022.  Plaintiff has
    since updated her portion to remove one issue from the dispute, but has otherwise
26  failed to update it in light of the parties' January 6, 2023, meet and confer, the Court's
    January 11, 2023, hearing on a separate motion to compel, or the Individual
27  Defendants' repeated offers to meet and confer from January 11 through January 18,
28  2023, which Plaintiff initially accepted, but then refused to actually conduct.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1

## II.   <u>JOINT SPECIFICATION OF ISSUES IN DISPUTE</u>

2

### A.   <u>Requests for Production in Dispute</u>

3

<u>Request for Production No. 1</u>: "All documents and communications concerning

4

Serena Fleites."

5

6

<u>Response to Request for production No. 1:</u> "Mr. Antoon objects to this Request

7

on the grounds that it is overbroad, unduly burdensome, and seeks documents

8

beyond Mr. Antoon's possession, custody, or control. Mr. <u>Antoon</u> also objects

9

to this Request to the extent it seeks communications or other documents that

10

are protected by the attorney-client privilege, work product doctrine, or any

11

other applicable privilege or immunity. Moreover, Mr. Antoon objects to the

12

extent this Request seeks information beyond the scope of the jurisdictional

13

discovery authorized by the Court's July 29 Order. Among other things, this

14

Request improperly assumes that "communications concerning Serena Fleites"

15

are relevant to determine whether personal jurisdiction exists over Mr. Antoon.

16

Mr. Antoon also objects to the term "concerning Serena Fleites" as vague and

17

overbroad. Mr. Antoon further objects to this Request to the extent it seeks

18

documents outside the Relevant Time Period. Mr. Antoon also objects to this

19

Request because it seeks information that can be obtained from a more

20

convenient and less expensive source, namely, the MindGeek Corporate

21

Defendants. Indeed, Plaintiff issued the same Request to the MindGeek

22

Corporate Defendants, and it would be unreasonably expensive and

23

disproportionate to the needs of the case to require Mr. Antoon, an individual,

24

to duplicate the search of the MindGeek Corporate Defendants.

25

26

Subject to the foregoing objections, Mr. Antoon states that he has had no

27

communications with Serena Fleites."

28

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

<u>Request for Production No. 2</u>: "All documents and communications concerning or relating to Your affiliation with, employment by, or ownership of MindGeek, any MindGeek Related Entity, or any MindGeek Tubesites."

<u>Response to Request for Production No. 2</u>: "Mr. Antoon objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks information beyond Mr. Antoon's possession, custody, or control. Mr. Antoon also objects to this Request to the extent it seeks communications or other documents that are protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon objects to the extent this Request seeks information beyond the scope of the jurisdictional discovery authorized by the Court's July 29 Order. Mr. Antoon further objects to this Request to the extent it seeks documents outside the Relevant Time Period. And Mr. Antoon objects to the term "affiliation" because it is vague and ambiguous. Mr. Antoon also objects to this Request to the extent it seeks information that can be obtained from a more convenient and less expensive source, namely, the MindGeek Corporate Defendants. Indeed, Mr. Antoon interprets Plaintiff's Request Nos. 3, 24, and 25 to the MindGeek Corporate Defendants to request the same information as this Request, and it would be unreasonably expensive and disproportionate to the needs of the case to require Mr. Antoon, an individual, to duplicate the search of the MindGeek Corporate Defendants.

Subject to the foregoing objections, Mr. Antoon refers Plaintiff to and incorporates herein his response to Interrogatory No. 1 and agrees to meet and confer should there be remaining questions on this topic."

<u>Request for Production No. 3</u>: "All documents and communications concerning

9

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

or reflecting any income, revenue, or other monies You have received from MindGeek, any MindGeek Related Entity, or any MindGeek Tubesites."

<u>Response to Request for Production No. 3:</u> "Mr. Antoon objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks information beyond Mr. Antoon's possession, custody, or control. Moreover, Mr. Antoon objects to the extent this Request seeks information beyond the scope of the jurisdictional discovery authorized by the Court's July 29 Order. Mr. Antoon further objects to this Request to the extent it seeks documents outside the Relevant Time Period. Mr. Antoon also objects to this Request to the extent it seeks information that can be obtained from a more convenient and less expensive source, namely, the MindGeek Corporate Defendants. Indeed, Mr. Antoon interprets Plaintiff's Request Nos. 3, 24, and 25 to the MindGeek Corporate Defendants to request the same information as this Request, and it would be unreasonably expensive and disproportionate to the needs of the case to require Mr. Antoon, an individual, to duplicate the search of the MindGeek Corporate Defendants."

<u>Request for Production No. 4</u>: "All documents and communications between and among You and any of the Defendants related to this Action."

<u>Response to Request for Production No. 4:</u> "Mr. Antoon objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks information beyond Mr. Antoon's possession, custody, or control. And Mr. Antoon objects to this Request because it is duplicative of Request No. 1. Mr. Antoon also objects to this Request to the extent it seeks communications or other documents that are protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon

objects to the extent this Request seeks information beyond the scope of the jurisdictional discovery authorized by the Court's July 29 Order. Mr. Antoon further objects to this Request to the extent it seeks documents outside the Relevant Time Period. Mr. Antoon also objects to this Request because it seeks information that can be obtained from a more convenient and less expensive source, namely, the MindGeek Corporate Defendants. Indeed, Mr. Antoon interprets Plaintiff's Request No. 1 to the MindGeek Corporate Defendants to request the same information as this Request, and it would be unreasonably expensive and disproportionate to the needs of the case to require Mr. Antoon, an individual, to duplicate the search of the MindGeek Corporate Defendants."

Request for Production No. 5: "All documents and communications between and among You and any of the Defendants related to the presence of any CSAM on any MindGeek site, any MindGeek Related Entity site, or any MindGeek Tubesites."

Response to Request for Production No. 5: "Mr. Antoon objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks information beyond Mr. Antoon's possession, custody, or control. Mr. Antoon objects to the terms "MindGeek site" and "MindGeek Related Entity site" as vague and ambiguous. Mr. Antoon therefore interprets both "MindGeek site" and "MindGeek Related Entity site" to mean Pornhub, the only site on which Plaintiff alleges her video appeared and therefore the only site relevant to Plaintiff's claims. Mr. Antoon also objects to this Request to the extent it seeks communications or other documents that are protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon objects to the extent this Request seeks information beyond the scope of the jurisdictional discovery authorized by the Court's July

CASE NO. 21-CV-04920-CJC-ADS

PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES

29 Order. Mr. Antoon further objects to this Request to the extent it seeks documents outside the Relevant Time Period. Mr. Antoon also objects to this Request to the extent it seeks information that can be obtained from a more convenient and less expensive source, namely, the MindGeek Corporate Defendants. Indeed, Mr. Antoon interprets Plaintiff's Request Nos. 28, 29, 33, 34, 35, 36, 40, 41, 43, and 46 to the MindGeek Corporate Defendants to request the same information as this Request, and it would be unreasonably expensive and disproportionate to the needs of the case to require Mr. Antoon, an individual, to duplicate the search of the MindGeek Corporate Defendants."

Request for Production No. 6: "All documents describing, depicting, explaining, or relating to the past or present corporate and ownership organization and structure of MindGeek, the identity of all affiliated or related party entities, corporations, limited partnerships, limited liability companies, partnerships, or other entities; the nature of the direct, indirect or beneficial ownership or other interests held by any such person, entity, or organization; and the owners, members, directors, managers, lenders, secured parties, general or limited partners, executives, and outside law firms and accountants of such entities."

Response to Request for Production No. 6: "Mr. Antoon objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon also objects to this Request to the extent it seeks communications or other documents that are protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon objects to the extent this Request seeks information beyond the scope of the jurisdictional discovery authorized by the Court's July 29 Order. Mr. Antoon further objects

1  to this Request to the extent it seeks documents outside the Relevant Time
2  Period. Mr. Antoon also objects to this Request to the extent it seeks
3  information that can be obtained from a more convenient and less expensive
4  source, namely, the MindGeek Corporate Defendants. Indeed, Mr. Antoon
5  interprets Request No. 2 to the MindGeek Corporate Defendants to seek the
6  same information as this Request, and it would be unreasonably expensive and
7  disproportionate to the needs of the case to require Mr. Antoon, an individual,
8  to duplicate the search of the MindGeek Corporate Defendants."

9

10  Request for Production No. 7: "All documents related to any past or present,
11  direct, indirect, or beneficial ownership, lending, or secured or other economic
12  interest in, or business relationship with, MindGeek or any MindGeek Related
13  Entity by You or any of the other Individual Defendants, Colbeck Capital, JP
14  Morgan Chase, Fortress Investment Group, Cornell, Bjorn Daniel Sudan, or
15  Shaileshkumar P. Jain (a/k/a "Sam" Jain) or individuals or entities introduced
16  or represented by such persons or entities."

17

18  Response to Request for Production No. 7: "Mr. Antoon objects to this Request
19  on the grounds that it is overbroad, unduly burdensome, and seeks documents
20  beyond Mr. Antoon's possession, custody, or control. Mr. Antoon also objects
21  to this Request to the extent it seeks communications or other documents that
22  are protected by the attorney-client privilege, work product doctrine, or any
23  other applicable privilege or immunity. Moreover, Mr. Antoon objects to the
24  extent this Request seeks information beyond the scope of the jurisdictional
25  discovery authorized by the Court's July 29 Order. This Request plainly seeks
26  information about individuals and entities that are not parties to this case and is
27  therefore outside the scope of the Court's July 29 Order. Mr. Antoon further
28  objects to this Request to the extent it seeks documents outside the Relevant

CASE NO. 21-CV-04920-CJC-ADS
**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1   Time Period. Mr. Antoon also objects to this Request to the extent it seeks

2   information that can be obtained from a more convenient and less expensive

3   source, namely, the MindGeek Corporate Defendants. Indeed, Mr. Antoon

4   interprets Request No. 3 to the MindGeek Corporate Defendants to seek the

5   same information as this Request, and it would be unreasonably expensive and

6   disproportionate to the needs of the case to require Mr. Antoon, an individual,

7   to duplicate the search of the MindGeek Corporate Defendants.

8

9   Subject to the foregoing objections, Mr. Antoon refers to and incorporates his

10  response to Interrogatory No. 1 and agrees to meet and confer should there be

11  remaining questions on this topic.."

12

13  Request for Production No. 8: "All documents related to any past or present,

14  direct, indirect or beneficial ownership, licensing, or secured or other economic

15  interest of, or in, any intellectual property owned or licensed, directly or

16  indirectly by You related to MindGeek, any MindGeek Related Entity, or any

17  MindGeek Tubesites."

18

19  Response to Request for Production No. 8: "All documents related to any past

20  or present, direct, indirect or beneficial ownership, licensing, or secured or

21  other economic interest of, or in, any intellectual property owned or licensed,

22  directly or indirectly by You related to MindGeek, any MindGeek Related

23  Entity, or any MindGeek Tubesites. Response to Request No. 8: Mr. Antoon

24  objects to this Request on the grounds that it is overbroad, unduly burdensome,

25  and seeks documents beyond Mr. Antoon's possession, custody, or control. Mr.

26  Antoon also objects to this Request to the extent it seeks communications or

27  other documents that are protected by the attorney-client privilege, work

28  product doctrine, or any other applicable privilege or immunity. Moreover, Mr.

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    Antoon objects to the extent this Request seeks information beyond the scope
2    of the jurisdictional discovery authorized by the Court's July 29 Order. Among
3    other things, this Request seeks information about intellectual property
4    unrelated to Pornhub or the claims at issue in this case. Mr. Antoon further
5    objects to this Request to the extent it seeks documents outside the Relevant
6    Time Period. Mr. Antoon also objects to this Request to the extent it seeks
7    information that can be obtained from a more convenient and less expensive
8    source, namely, the MindGeek Corporate Defendants. Indeed, Mr. Antoon
9    interprets Request No. 4 to the MindGeek Corporate Defendants to seek the
10   same information as this Request, and it would be unreasonably expensive and
11   disproportionate to the needs of the case to require Mr. Antoon, an individual,
12   to duplicate the search of the MindGeek Corporate Defendants."

13

14   Request for Production No. 9: "All documents describing, depicting,
15   explaining, or relating to MindGeek's past or present internal organizational
16   structure, offices, departments, executives, and personnel."

17

18   Response to Request for Production No. 9: "Mr. Antoon objects to this Request
19   on the grounds that it is overbroad, unduly burdensome, and seeks documents
20   beyond Mr. Antoon's possession, custody, or control. Mr. Antoon also objects
21   to this Request to the extent it seeks communications or other documents that
22   are protected by the attorney-client privilege, work product doctrine, or any
23   other applicable privilege or immunity. Moreover, Mr. Antoon objects to the
24   extent this Request seeks information beyond the scope of the jurisdictional
25   discovery authorized by the Court's July 29 Order. Mr. Antoon further objects
26   to this Request to the extent it seeks documents outside the Relevant Time
27   Period. Mr. Antoon also objects to this Request to the extent it seeks
28   information that can be obtained from a more convenient and less expensive

15                                    CASE NO. 21-CV-04920-CJC-ADS
PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES

source, namely, the MindGeek Corporate Defendants. Indeed, Mr. Antoon interprets Request No. 5 to the MindGeek Corporate Defendants to seek the same information as this Request, and it would be unreasonably expensive and disproportionate to the needs of the case to require Mr. Antoon, an individual, to duplicate the search of the MindGeek Corporate Defendants."

Request for Production No. 10: "All documents identifying all MindGeek or outside personnel or vendors with any current or past responsibility for moderating, monitoring, formatting, optimizing, filtering, reviewing, screening, or removing content on any MindGeek platform or website, the entities they were retained and employed by, and the entities that they were compensated by, whether salary, bonus or otherwise."

Response to Request for Production No. 10: "Mr. Antoon objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon also objects to this Request to the extent it seeks communications or other documents that are protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon objects to the extent this Request seeks information beyond  the scope of the jurisdictional discovery authorized by the Court's July 29 Order. Among other things, this Request is not limited to the MindGeek Corporate Defendants. Nor is it limited to Pornhub, the only tubesite on which Plaintiff alleges content depicting her was uploaded. Mr. Antoon also objects to the terms "outside personnel" and "vendors" as vague and ambiguous. Mr. Antoon further objects to this Request to the extent it seeks documents outside the Relevant Time Period. Mr. Antoon also objects to this Request to the extent it seeks information that can be obtained from a more convenient and less expensive

16

PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES

1  source, namely, the MindGeek Corporate Defendants. Indeed, Mr. Antoon

2  interprets Request No. 6 to the MindGeek Corporate Defendants to seek the

3  same information as this Request, and it would be unreasonably expensive and

4  disproportionate to the needs of the case to require Mr. Antoon, an individual,

5  to duplicate the search of the MindGeek Corporate Defendants."

6

7  Request for Production No. 11: "All documents and communications relating

8  to Your or MindGeek's past or present jurisdictional contacts with the United

9  States or California, including but not limited to, offices, residences, and real

10 estate located in California or any jurisdiction in the United States."

11

12 Response to Request for Production No. 11: "Mr. Antoon objects to this

13 Request on the grounds that it is overbroad, unduly burdensome, and seeks

14 documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon

15 also objects to this Request to the extent it seeks communications or other

16 documents that are protected by the attorney-client privilege, work product

17 doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon

18 objects to the extent this Request seeks information beyond the scope of the

19 jurisdictional discovery authorized by the Court's July 29 Order. Among other

20 things, Mr. Antoon objects because this Request assumes officers, residence,

21 and real estate located in California or the United States at large are relevant

22 "jurisdictional contacts" in this action. Mr. Antoon also objects to this Request

23 because it assumes the actions or contacts of the MindGeek Corporate

24 Defendants are relevant to the issue of whether this Court has personal

25 jurisdiction over Mr. Antoon. Mr. Antoon further objects to this Request to the

26 extent it seeks documents outside the Relevant Time Period. Mr. Antoon also

27 objects to this Request to the extent it seeks information that can be obtained

28 from a more convenient and less expensive source, namely, the MindGeek

17

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Corporate Defendants. Indeed, Mr. Antoon interprets Request No. 7 to the MindGeek Corporate Defendants to seek the same information as this Request, and it would be unreasonably expensive and disproportionate to the needs of the case to require Mr. Antoon, an individual, to duplicate the search of the MindGeek Corporate Defendants.

Subject to the foregoing objections, Mr. Antoon refers Plaintiff to and incorporates herein his responses to Interrogatory No. 4 and agrees to meet and confer should there be remaining questions on this topic."

Request for Production No. 12: "All documents and communications relating to Your or MindGeek's personnel or vendors employed, retained, paid, located in, or otherwise providing services in California or any jurisdiction in the United States; political activities in California or any jurisdiction in the United States, including through direct or indirect participation in, or financial support for, lobbying, trade, or industry, or activist organizations; trips to California or any jurisdiction in the United States; servers; revenues, profits, expenses, taxes earned or paid in or from California or any jurisdiction in the United States; and communications or business relationships with, to, from, or in California or any jurisdiction in the United States."

Response to Request for Production No. 12: "Mr. Antoon objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon also objects to this Request to the extent it seeks communications or other documents that are protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon objects to the extent this Request seeks information beyond the scope of the

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1   jurisdictional discovery authorized by the Court's July 29 Order. Mr. Antoon
2   further objects to this Request to the extent it seeks documents outside the
3   Relevant Time Period. Mr. Antoon also objects to this Request to the extent it
4   seeks information that can be obtained from a more convenient and less
5   expensive source, namely, the MindGeek Corporate Defendants. Indeed, Mr.
6   Antoon interprets Request No. 7 to the MindGeek Corporate Defendants to
7   seek the same information as this Request, and it would be unreasonably
8   expensive and disproportionate to the needs of the case to require Mr. Antoon,
9   an individual, to duplicate the search of the MindGeek Corporate Defendants.
10
11   Subject to the foregoing objections, Mr. Antoon refers Plaintiff to and
12   incorporates herein his responses to Interrogatory No. 4 and agrees to meet and
13   confer should there be remaining questions on this topic."
14
15   Request for Production No. 13: "All documents reflecting annual revenues,
16   profits and losses, and expenses for each MindGeek Related Entity or
17   MindGeek Tubesite or the entity that owns or controls that platform or
18   website."
19
20   Response to Request for Production No. 13: "Mr. Antoon objects to this
21   Request on the grounds that it is overbroad, unduly burdensome, and seeks
22   documents beyond Mr. Antoon's possession, custody, or control. Moreover,
23   Mr. Antoon objects to the extent this Request seeks information beyond the
24   scope of the jurisdictional discovery authorized by the Court's July 29 Order.
25   Among other things, this Request is not limited to Pornhub, the only tubesite
26   on which Plaintiff alleges content depicting her was uploaded, or to MG
27   Freesites Ltd., the entity that operates Pornhub. Mr. Antoon further objects  to
28   this Request to the extent it seeks documents outside the Relevant Time Period.

19                        CASE NO. 21-CV-04920-CJC-ADS
PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES

1    Mr. Antoon also objects to this Request to the extent it seeks information that
2    can be obtained from a more convenient and less expensive source, namely, the
3    MindGeek Corporate Defendants. Indeed, Mr. Antoon interprets Request No.
4    8 to the MindGeek Corporate Defendants to seek the same information as this
5    Request, and it would be unreasonably expensive and disproportionate to the
6    needs of the case to require Mr. Antoon, an individual, to duplicate the search
7    of the MindGeek Corporate Defendants."

8

9    <u>Request for Production No. 14</u>: "All documents concerning, reflecting,
10   describing, or relating to, or comprising of presentations to or from, proposed
11   transactions from, or data and information provided or made available to, any
12   actual or potential investors, lenders, secured parties, licensees, purchasers, or
13   others concerning MindGeek or any MindGeek Related Entity."

14

15   <u>Response to Request for Production No. 14</u>: "Mr. Antoon objects to this
16   Request on the grounds that it is overbroad, unduly burdensome, and seeks
17   documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon
18   also objects to this Request to the extent it seeks communications or other
19   documents that are protected by the attorney-client privilege, work product
20   doctrine, or any other applicable privilege or immunity. Mr. Antoon objects to
21   the terms "or others" and "concerning MindGeek" because they are vague and
22   ambiguous. Moreover, Mr. Antoon objects to the extent this Request seeks
23   information beyond the scope of the jurisdictional discovery authorized by the
24   Court's July 29 Order. Mr. Antoon further objects to this Request to the extent
25   it seeks documents outside the Relevant Time Period. Mr. Antoon also objects
26   to this Request to the extent it seeks information that can be obtained from a
27   more convenient and less expensive source, namely, the MindGeek Corporate
28   Defendants. Indeed, Mr. Antoon interprets Request No. 9 to   the MindGeek

20

Corporate Defendants to seek the same information as this Request, and it would be unreasonably expensive and disproportionate to the needs of the case to require Mr. Antoon, an individual, to duplicate the search of the MindGeek Corporate Defendants."

Request for Production No. 15: "All transaction documents, term sheets, and communications concerning any actual or proposed transactions involving the ownership of, loans to, secured interest in, or intellectual property or other rights related to MindGeek."

Response to Request for Production No. 15: "Mr. Antoon objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon also objects to this Request to the extent it seeks communications or other documents that are protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon objects to the extent this Request seeks information beyond the scope of the jurisdictional discovery authorized by the Court's July 29 Order. Among other things, Mr. Antoon objects to this Request to the extent it seeks information with respect to "proposed transactions," which bear no relation to whether personal jurisdiction exists with respect to Mr. Antoon. Mr. Antoon also objects to the term "other rights" because it is vague and ambiguous. Mr. Antoon further objects to this Request to the extent it seeks documents outside the Relevant Time Period. Mr. Antoon also objects to this Request to the extent it seeks information that can be obtained from a more convenient and less expensive source, namely, the MindGeek Corporate Defendants. Indeed, Mr. Antoon interprets Request No. 10 to the MindGeek Corporate Defendants to seek the same information as this Request, and it would be unreasonably

21

1    expensive and disproportionate to the needs of the case to require Mr. Antoon,

2    an individual, to duplicate the search of the MindGeek Corporate Defendants."

3

4    Request for Production No. 16: "For each MindGeek entity, affiliate,

5    subsidiary, or related entity, all financial, ledgers; shareholder, investor,

6    director, member, manager, or partner lists; board presentation materials, board

7    minutes, and calendars of board meetings or conferences; records reflecting

8    capitalization, revenues, profits, tax payments, distributions or dividends, and

9    distribution or dividend recipients for such entities; articles of incorporation or

10   formation, by-laws, shareholder and lender agreements; profit and loss, balance

11   sheet, tax, payroll, and expense records; and records reflecting the sources of

12   all payments made to or on behalf of the entity, affiliate, subsidiary, or related

13   entity."

14

15   Response to Request for Production No. 16: "Mr. Antoon objects to this

16   Request on the grounds that it is overbroad, unduly burdensome, and seeks

17   documents beyond Mr. Antoon's possession, custody, or control. Moreover,

18   Mr. Antoon objects to the extent this Request seeks information beyond the

19   scope of the jurisdictional discovery authorized by the Court's July 29 Order.

20   Mr. Antoon objects to this Request because it seeks financial ledgers, lists of

21   investors or managers, lender agreements, payroll and expense records, and

22   sources of payment that are unrelated to any claim in this case or to determining

23   whether personal jurisdiction exists over Mr. Antoon. Mr. Antoon further

24   objects to this Request to the extent it seeks documents outside the Relevant

25   Time Period. Mr. Antoon also objects to this Request to the extent it seeks

26   information that can be obtained from a more convenient and less expensive

27   source, namely, the MindGeek Corporate Defendants. Indeed, Mr. Antoon

28   interprets Request No. 11 to the MindGeek Corporate Defendants to seek the

22                                    CASE NO. 21-CV-04920-CJC-ADS

1  same information as this Request, and it would be unreasonably expensive and

2  disproportionate to the needs of the case to require Mr. Antoon, an individual,

3  to duplicate the search of the MindGeek Corporate Defendants."

4

5  Request for Production No. 17: "For each MindGeek Entity, affiliate,

6  subsidiary, or Related Entity, all quarterly and annual tax filings, audits,

7  financials, and statutory reporting, including work papers and reports of its

8  outside accountants."

9

10  Response to Request for Production No. 17: "Mr. Antoon objects to this

11  Request on the grounds that it is overbroad, unduly burdensome, and seeks

12  documents beyond Mr. Antoon's possession, custody, or control. Moreover,

13  Mr. Antoon objects to the extent this Request seeks information beyond the

14  scope of the jurisdictional discovery authorized by the Court's July 29 Order.

15  Mr. Antoon objects to this Request because quarterly and annual tax filings,

16  audits, financials, and statutory reporting, including work papers and reports of

17  outside accountants are unrelated to the any claim asserted in this case or to

18  determining whether personal jurisdiction exists over Mr. Antoon. Mr. Antoon

19  further objects to this Request to the extent it seeks documents outside the

20  Relevant Time Period. Mr. Antoon also objects to this Request to the extent it

21  seeks information that can be obtained from a more convenient and less

22  expensive source, namely, the MindGeek Corporate Defendants. Indeed, Mr.

23  Antoon interprets Request No. 12 to the MindGeek Corporate Defendants to

24  seek the same information as this Request, and it would be unreasonably

25  expensive and disproportionate to the needs of the case to require Mr. Antoon,

26  an individual, to duplicate the search of the MindGeek Corporate Defendants."

27

28  Request for Production No. 18: "Your monthly, quarterly, and annual bank and

1    investment statements."

2

3    <u>Response to Request for Production No. 18</u>: "Mr. Antoon objects to this

4    Request on the grounds that it is overbroad, unduly burdensome, and seeks

5    documents beyond Mr. Antoon's possession, custody, or control. Moreover,

6    Mr. Antoon objects to the extent this Request seeks information beyond the

7    scope of the jurisdictional discovery authorized by the Court's July 29 Order.

8    This Requests seeks information about Mr. Antoon's  personal finances that is

9    wholly unrelated to Fleites or Pornhub, the only tubesite on which Plaintiff

10   alleges content depicting her was uploaded. Mr. Antoon further objects to this

11   Request to the extent it seeks documents outside the Relevant Time Period. Mr.

12   Antoon also objects to the term "investment statement" as vague and

13   ambiguous. Mr. Antoon also objects to this Request to the extent it seeks

14   information that can be obtained from a more convenient and less expensive

15   source, namely, the MindGeek Corporate Defendants that were also the subject

16   of the Court's July 29 Order. Indeed, Request No. 24 to the MindGeek

17   Corporate Defendants also seeks information as to payments made to, among

18   others, Mr. Antoon, and it would be unreasonably expensive and

19   disproportionate to the needs of the case to require Mr. Antoon, an individual,

20   to duplicate the search of the MindGeek Corporate Defendants."

21

22   <u>Request for Production No. 19</u>: "All documents and communications related to

23   any corporate reorganization by MindGeek and the purposes behind that

24   reorganization."

25

26   <u>Response to Request for Production No. 19</u>: "Mr. Antoon objects to this

27   Request on the grounds that it is overbroad, unduly burdensome, and seeks

28   documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    also objects to this Request to the extent it seeks communications or other

2    documents that are protected by the attorney-client privilege, work product

3    doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon

4    objects to the extent this Request seeks information beyond the scope of the

5    jurisdictional discovery authorized by the Court's July 29 Order. Mr. Antoon

6    further objects to this Request to the extent it seeks documents outside the

7    Relevant Time Period. Mr. Antoon also objects to this Request to the extent it

8    seeks information that can be obtained from a more convenient and less

9    expensive source, namely, the MindGeek Corporate Defendants. Indeed, Mr.

10   Antoon interprets Request No. 14 to the MindGeek Corporate Defendants to

11   seek the same    information as this Request, and it would be unreasonably

12   expensive and disproportionate to the needs of the case to require Mr. Antoon,

13   an individual, to duplicate the search of the MindGeek Corporate Defendants."

14

15   Request for Production No. 20: "All documents or communications identifying

16   the various subsidiaries comprising the business of MindGeek and the

17   MindGeek Related Entities."

18

19   Response to Request for Production No. 20: "Mr. Antoon objects to this

20   Request on the grounds that it is overbroad, unduly burdensome, and seeks

21   documents beyond Mr. Antoon's possession, custody, or control. Moreover,

22   Mr. Antoon objects to the extent this Request seeks information beyond the

23   scope of the jurisdictional discovery authorized by the Court's July 29 Order.

24   Mr. Antoon further objects to this Request to the extent it seeks documents

25   outside the Relevant Time Period. Mr. Antoon also objects to this Request to

26   the extent it seeks information that can be obtained from a more convenient and

27   less expensive source, namely, the MindGeek Corporate Defendants. Indeed,

28   Mr. Antoon interprets Request No. 15 to the MindGeek Corporate Defendants

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    to seek the same information as this Request, and it would be unreasonably

2    expensive and disproportionate to the needs of the case to require Mr. Antoon,

3    an individual, to duplicate the search of the MindGeek Corporate Defendants."

4

5    Request for Production No. 21: "All documents identifying the directors,

6    managers, members, executives, and personnel of the various subsidiaries

7    comprising the business of MindGeek and any MindGeek Related Entities."

8

9    Response to Request for Production No. 21: "Mr. Antoon objects to this

10    Request on the grounds that it is overbroad, unduly burdensome, and seeks

11    documents beyond Mr. Antoon's possession, custody, or control. Moreover,

12    Mr. Antoon objects to the extent this Request seeks information beyond the

13    scope of the jurisdictional discovery authorized by the  Court's July 29 Order.

14    Among other things, this request is not related to the individuals or entities that

15    are parties to this action. Mr. Antoon further objects to this Request to the extent

16    it seeks documents outside the Relevant Time Period. Mr. Antoon also objects

17    to this Request to the extent it seeks information that can be obtained from a

18    more convenient and less expensive source, namely, the MindGeek Corporate

19    Defendants. Indeed, Mr. Antoon interprets Request No. 16 to the MindGeek

20    Corporate Defendants to seek the same information as this Request, and it

21    would be unreasonably expensive and disproportionate to the needs of the case

22    to require Mr. Antoon, an individual, to duplicate the search of the MindGeek

23    Corporate Defendants."

24

25    Request for Production No. 22: "All documents identifying the companies

26    organized and existing under the laws of multiple jurisdictions where

27    MindGeek has assets, operates businesses, or provides services and the nature

28    of the assets, businesses, or services."

26

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    <u>Response to Request for Production No. 22</u>: "Mr. Antoon objects to this

2    Request on the grounds that it is overbroad, unduly burdensome, and seeks

3    documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon

4    objects to the term "the companies" as used in this Request as vague,

5    ambiguous, and overbroad; this Request seeks information about all companies

6    that exist wherever the MindGeek Corporate Defendants have assets. Mr.

7    Antoon therefore interprets "the companies" to mean the MindGeek Corporate

8    Defendants. But even so limited, this Request is overbroad, seeking documents

9    identifying all "assets, business or services" of the MindGeek Corporate

10   Defendants over the entirety of the Relevant Time Period. Moreover, Mr.

11   Antoon objects to the extent this Request seeks information beyond the scope

12   of the jurisdictional discovery authorized by the Court's July 29 Order. Mr.

13   Antoon further objects to this Request to the extent it seeks documents outside

14   the Relevant Time Period. Mr. Antoon also objects to this Request to the extent

15   it   seeks information that can be obtained from a more convenient and less

16   expensive source, namely, the MindGeek Corporate Defendants. Indeed, Mr.

17   Antoon interprets Request No. 17 to the MindGeek Corporate Defendants to

18   seek the same information as this Request, and it would be unreasonably

19   expensive and disproportionate to the needs of the case to require Mr. Antoon,

20   an individual, to duplicate the search of the MindGeek Corporate Defendants."

21

22   <u>Request for Production No. 23</u>: "All documents identifying the entities

23   providing services to MG Freesites LTD.

24

25   <u>Response to Request for Production No. 23</u>:   "Mr. Antoon objects to this

26   Request on the grounds that it is overbroad, unduly burdensome, and seeks

27   documents beyond Mr. Antoon's possession, custody, or control. Moreover,

28   Mr. Antoon objects to the extent this Request seeks information beyond the

27

1    scope of the jurisdictional discovery authorized by the Court's July 29 Order.

2    Mr. Antoon objects to the term "the entities" as vague, ambiguous, and

3    overbroad; this Request seeks information about all corporate entities that

4    provide services to MG Freesites Ltd, which, among other things, plainly

5    exceeds the discovery authorized by the Court's July 29 Order. Mr. Antoon

6    therefore interprets "the entities" to mean the MindGeek Corporate Defendants.

7    Mr. Antoon further objects to this Request to the extent it seeks documents

8    outside the Relevant Time Period. Mr. Antoon also objects to this Request to

9    the extent it seeks information that can be obtained from a more convenient and

10   less expensive source, namely, the MindGeek Corporate Defendants. Indeed,

11   Mr. Antoon interprets Request No. 18 to the MindGeek Corporate Defendants

12   to seek the same information as this Request, and it would be unreasonably

13   expensive and disproportionate to the needs of the case to require Mr. Antoon,

14   an individual, to duplicate the search of the MindGeek Corporate Defendants."

15

16   Request for Production No. 24: "All documents identifying the bank accounts,

17   services, payments, written agreements, third parties providing transfer pricing

18   studies, pricing studies and price ranges, accounting, and tax determinations."

19

20   Response to Request No. 24: "Mr. Antoon objects to this Request on the

21   grounds that it is overbroad, unduly burdensome, and seeks documents beyond

22   Mr. Antoon's possession, custody, or control. Mr. Antoon objects to this

23   Request as vague and ambiguous because it seeks information about "bank

24   accounts, services, payments, written agreements, third parties providing

25   transfer pricing studies, pricing studies and price ranges, accounting, and tax

26   determinations" of an unidentified person or entity. Mr. Antoon also objects to

27   this Request to the extent it seeks communications or other documents that are

28   protected by the attorney-client privilege, work product doctrine, or any other

28

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1  applicable privilege or immunity. Moreover, Mr. Antoon objects to the extent
2  this Request seeks information beyond the scope of the jurisdictional discovery
3  authorized by the Court's July 29 Order. Mr. Antoon further objects to this
4  Request to the extent it seeks documents outside the Relevant Time Period. Mr.
5  Antoon also objects to this Request to the extent it seeks information that can
6  be obtained from a more convenient and less expensive source, namely, the
7  MindGeek Corporate Defendants. Indeed, Mr. Antoon interprets Request No.
8  19 to the MindGeek Corporate Defendants to seek the same information as this
9  Request, and it would be unreasonably expensive and disproportionate to the
10 needs of the case to require Mr. Antoon, an individual, to duplicate the search
11 of the MindGeek Corporate Defendants."

13 Request for Production No. 25: "All audited financial statements and all related
14 communications with auditors regarding the same."

16 Response to Request for Production No. 25: "Mr. Antoon objects to this
17 Request on the grounds that it is overbroad, unduly burdensome, and seeks
18 documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon
19 objects to this Request as vague and ambiguous because it seeks information
20 about "audited financial statements" of an unidentified person or entity.
21 Moreover, Mr. Antoon objects to the extent this Request seeks information
22 beyond the scope of the jurisdictional discovery authorized by the Court's July
23 29 Order. Mr. Antoon further objects to this Request to the extent it seeks
24 documents outside the Relevant Time Period. Mr. Antoon also objects to this
25 Request to the extent it seeks information that can be obtained from a more
26 convenient and less expensive source, namely, the MindGeek Corporate
27 Defendants that were also the subject of the Court's July 29 Order. Indeed, Mr.
28 Antoon interprets Request No. 20 to the MindGeek Corporate Defendants to

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    seek the same information as this Request, and it would be unreasonably

2    expensive and disproportionate to the needs of the case to require Mr. Antoon,

3    an individual, to duplicate the search of the MindGeek Corporate Defendants."

4

5    Request for Production No. 26: "All documents identifying the distinct legal

6    entities of MindGeek and any of the MindGeek Related Entities."

7

8    Response to Request for Production No. 26: "Mr. Antoon objects to this

9    Request on the grounds that it is overbroad, unduly burdensome, and seeks

10   documents beyond Mr. Antoon's possession, custody, or control. Moreover,

11   Mr. Antoon objects to the extent this Request seeks information beyond the

12   scope of the jurisdictional discovery authorized by the Court's July 29 Order.

13   Mr. Antoon further objects to this Request to the extent it seeks documents

14   outside the Relevant Time Period. Mr. Antoon also objects to this Request to

15   the extent it seeks information that can be obtained from a more convenient and

16   less expensive source, namely, the MindGeek Corporate  Defendants. Indeed,

17   Mr. Antoon interprets Request No. 21 to the MindGeek Corporate Defendants

18   to seek the same information as this Request, and it would be unreasonably

19   expensive and disproportionate to the needs of the case to require Mr. Antoon,

20   an individual, to duplicate the search of the MindGeek Corporate Defendants."

21

22   Request for Production No. 27: "All documents related to the support services

23   MG Global Entertainment has provided."

24

25   Response to Request for Production No. 27: "Mr. Antoon objects to this

26   Request on the grounds that it is overbroad, unduly burdensome, and seeks

27   documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon

28   objects to the term "support services" as vague and ambiguous and therefore

1   interprets "support services" to mean services provided by MG Global
2   Entertainment Inc. to other MindGeek Corporate Defendants. Mr. Antoon also
3   objects to this Request to the extent it seeks communications or other
4   documents that are protected by the attorney-client privilege, work product
5   doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon
6   objects to the extent this Request seeks information beyond the scope of the
7   jurisdictional discovery authorized by the Court's July 29 Order. Mr. Antoon
8   further objects to this Request to the extent it seeks documents outside the
9   Relevant Time Period. Mr. Antoon also objects to this Request to the extent it
10  seeks information that can be obtained from a more convenient and less
11  expensive source, namely, the MindGeek Corporate Defendants that were also
12  the subject of the Court's July 29 Order. Indeed, Mr. Antoon interprets Request
13  No. 22 to the MindGeek Corporate Defendants to seek the same information as
14  this Request, and it would be unreasonably expensive and disproportionate to
15  the needs of the case to require Mr. Antoon, an individual, to duplicate the
16  search of the MindGeek Corporate Defendants."

17

18  Request for Production No. 28: "All documents related to the services provided
19  by 9219-1568 Quebec Inc."

20

21  Response to Request for Production No. 28: "Mr. Antoon objects to this
22  Request on the grounds that it is overbroad, unduly burdensome, and seeks
23  documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon
24  objects to the term "services" as vague and ambiguous and therefore interprets
25  "services" to mean services provided by 9219- 1568 Quebec Inc. to other
26  MindGeek Corporate Defendants. Mr. Antoon also objects to this Request to
27  the extent it seeks communications or other documents that are protected by the
28  attorney-client privilege, work product doctrine, or any other applicable

31                                    CASE NO. 21-CV-04920-CJC-ADS

1    privilege or immunity. Moreover, Mr. Antoon objects to the extent this Request

2    seeks information beyond the scope of the jurisdictional discovery authorized

3    by the Court's July 29 Order. Mr. Antoon further objects to this Request to the

4    extent it seeks documents outside the Relevant Time Period. Mr. Antoon also

5    objects to this Request to the extent it seeks information that can be obtained

6    from a more convenient and less expensive source, namely, the MindGeek

7    Corporate Defendants. Indeed, Mr. Antoon interprets Request No. 23 to the

8    MindGeek Corporate Defendants to seek the same information as this Request,

9    and it would be unreasonably expensive and disproportionate to the needs of

10   the case to require Mr. Antoon, an individual, to duplicate the search of the

11   MindGeek Corporate Defendants."

12

13   Request for Production No. 29: "All documents relating to MindGeek related

14   payments, investments, or loans to, in, or for any personal affairs, expenses,

15   entities, businesses, real estate, or investments related to You or any of the

16   Individual Defendants, or any of their family members or entities in which

17   either You or a family[2] member holds a direct or indirect interest."

18

19   Response to Request for Production No. 29: "Mr. Antoon objects to this

20   Request on the grounds that it is overbroad, unduly burdensome, and seeks

21   documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon

22   also objects to this Request to the extent it seeks communications or other

23   documents that are protected by the attorney-client privilege, work product

24   doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon

25   objects to the extent this Request seeks information beyond the scope of the

26   jurisdictional discovery authorized by the Court's July 29 Order. Among other

27   things, information about Mr. Antoon's family members is wholly unrelated to

28   any claim in this case or to whether personal jurisdiction exists over Mr.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1   Antoon. Mr. Antoon further objects to this Request to the extent it seeks
2   documents outside the Relevant Time Period. Mr. Antoon also objects to this
3   Request to the extent it seeks information that can be obtained from a more
4   convenient and less expensive source, namely, the MindGeek Corporate
5   Defendants. Indeed, Mr. Antoon interprets Request No. 24 to the MindGeek
6   Corporate Defendants to seek the same information as this Request, and it
7   would be unreasonably expensive and disproportionate to the needs of the case
8   to require Mr. Antoon, an individual, to duplicate the search of the MindGeek
9   Corporate Defendants."

10

11   Request for Production No. 30: "All documents related to the purported
12   resignation of You and David Tassillo as CEO and COO of MindGeek
13   respectively, including, but not limited to, any documents related to any
14   investigation, allegations, or reports of their using Mindgeek assets and monies
15   for their personal affairs, investments, or businesses."

16

17   Response to Request for Production No. 30: "Mr. Antoon objects to this
18   Request on the grounds that it is overbroad, unduly burdensome, and seeks
19   documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon
20   also objects to this Request to the extent it seeks communications or other
21   documents that are protected by the attorney-client   privilege, work product
22   doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon
23   objects to the extent this Request seeks information beyond the scope of the
24   jurisdictional discovery authorized by the Court's July 29 Order. Among other
25   things, Mr. Antoon's resignation occurred after Plaintiff initiated this action
26   and is therefore not jurisdictionally relevant. Mr. Antoon further objects to this
27   Request to the extent it seeks documents outside the Relevant Time Period. Mr.
28   Antoon also objects to this Request to the extent it seeks information that can

1    be obtained from a more convenient and less expensive source, namely, the

2    MindGeek Corporate Defendants. Indeed, Mr. Antoon interprets Request No.

3    25 to the MindGeek Corporate Defendants to seek the same information as this

4    Request, and it would be unreasonably expensive and disproportionate to the

5    needs of the case to require Mr. Antoon, an individual, to duplicate the search

6    of the MindGeek Corporate Defendants."

7

8    Request for Production No. 32: "All contact lists maintained by You or any of

9    the Individual Defendants as well as documents sufficient to show all cell and

10   other phone numbers and messaging services used by each individual."

11

12   Response to Request for Production No. 32: "Mr. Antoon objects to this

13   Request on the grounds that it is overbroad, unduly burdensome, and seeks

14   documents beyond Mr. Antoon's possession, custody, or control. Moreover,

15   Mr. Antoon objects to the extent this Request seeks information beyond the

16   scope of the jurisdictional discovery authorized by the Court's July 29 Order.

17   Mr. Antoon further objects to this Request to the extent it seeks documents

18   outside the Relevant Time Period. Mr. Antoon also objects to this Request to

19   the extent it seeks information that can be obtained from a more convenient and

20   less expensive source, namely, the MindGeek Corporate Defendants. Indeed,

21   Mr. Antoon interprets Request No. 27 to the MindGeek Corporate Defendants

22   to seek the same information as this Request, and it would be unreasonably

23   expensive and disproportionate to the needs of the case to require Mr. Antoon,

24   an individual, to duplicate the search of the MindGeek Corporate Defendants.

25   Subject to the foregoing objections, Mr. Antoon refers Plaintiff to and

26   incorporates herein his response to Interrogatory No. 6, and agrees to meet and

27   confer should there be remaining questions on this topic."

28

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    <u>Request for Production No. 33</u>: "All documents or communications identifying,

2    depicting, explaining, or describing any programs or technology MindGeek

3    acquired, employed, used, or considered to moderate, monitor, format,

4    optimize, filter, review, screen, or remove content on its websites, including the

5    dates such technology was acquired, employed, or considered."

6

7    <u>Response to Request for Production No. 33</u>: "Mr. Antoon objects to this

8    Request on the grounds that it is overbroad, unduly burdensome, and seeks

9    documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon

10   also objects to this Request to the extent it seeks communications or other

11   documents that are protected by the attorney-client privilege, work product

12   doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon

13   objects to the extent this Request seeks information beyond the scope of the

14   jurisdictional discovery authorized by the Court's July 29 Order. Mr. Antoon

15   further objects to this Request to the extent it seeks documents outside the

16   Relevant Time Period. Mr. Antoon also objects to this Request to the extent it

17   seeks information that can be obtained from a more convenient and less

18   expensive source, namely, the MindGeek Corporate Defendants. Indeed, Mr.

19   Antoon interprets Request No. 28 to the MindGeek Corporate Defendants to

20   seek the same information as this Request, and it would be unreasonably

21   expensive and disproportionate to the needs of the case to require Mr. Antoon,

22   an individual, to duplicate the search of the MindGeek Corporate Defendants.

23

24   <u>Request for Production No. 34</u>: "All documents or communications related to

25   MindGeek's policies, manuals, practices, processes, and rules for moderating,

26   monitoring, formatting, optimizing, filtering, reviewing, screening, or

27   removing content on its platforms and websites, including all prohibited words,

28   phrases, categories, and "genres" and all processes and reports concerning

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    search engine optimization of such content."

2

3    Response to Request for Production No. 34: "Mr. Antoon objects to this
4    Request on the grounds that it is overbroad, unduly burdensome, and seeks
5    documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon
6    also objects to this Request to the extent it seeks communications or other
7    documents that are protected by the attorney-client privilege, work product
8    doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon
9    objects to the extent this Request seeks information beyond the scope of the
10   jurisdictional discovery authorized by the Court's July 29 Order. Among other
11   things, this Request is not limited to Pornhub, which is the only tubesite on
12   which Plaintiff alleges content depicting her was uploaded. Mr. Antoon further
13   objects to this Request to the extent it seeks documents outside the Relevant
14   Time Period. Mr. Antoon also objects to this Request to the extent it seeks
15   information that can be obtained from a more convenient and less expensive
16   source, namely, the MindGeek Corporate Defendants. Indeed, Mr. Antoon
17   interprets Request No. 29 to the MindGeek Corporate Defendants to seek the
18   same information as this Request, and it would be unreasonably expensive and
19   disproportionate to the needs of the case to require Mr. Antoon, an individual,
20   to duplicate the search of the MindGeek Corporate Defendants."

21

22   Request for Production No. 35: "All documents and communications
23   describing MindGeek's policies and procedures for preserving hard copy and
24   electronic documents and content."

25

26   Response to Request for Production No. 35: "Mr. Antoon objects to this
27   Request on the grounds that it is overbroad, unduly burdensome, and seeks
28   documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon

also objects to this Request to the extent it seeks communications or other documents that are protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon objects to the extent this Request seeks information beyond the scope of the jurisdictional discovery authorized by the Court's July 29 Order.  Mr. Antoon further objects to this Request to the extent it seeks documents outside the Relevant Time Period. Mr. Antoon also objects to this Request to the extent it seeks information that can be obtained from a more convenient and less expensive source, namely, the MindGeek Corporate Defendants. Indeed, Mr. Antoon interprets Request No. 30 to the MindGeek Corporate Defendants to seek the same information as this Request, and it would be unreasonably expensive and disproportionate to the needs of the case to require Mr. Antoon, an individual, to duplicate the search of the MindGeek Corporate Defendants."

Request for Production No. 36: "All documents and communications reflecting rosters, schedules, training materials, performance reviews and metrics for personnel or outside contractors or vendors involved in moderating, formatting, optimization, filtering, screening, or removing content from MindGeek's platforms and websites."

Response to Request for Production No. 36: "Mr. Antoon objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon also objects to this Request to the extent it seeks communications or other documents that are protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon objects to the extent this Request seeks information beyond the scope of the jurisdictional discovery authorized by the Court's July 29 Order. Among other

37

things, this Request is not limited to Pornhub, which is the only tubesite on which Plaintiff alleges content depicting her was uploaded. Mr. Antoon further objects to this Request to the extent it seeks documents outside the Relevant Time Period. Mr. Antoon also objects to this Request to the extent it seeks information that can be obtained from a more convenient and less expensive source, namely, the MindGeek Corporate Defendants that were also the subject of the Court's July 29 Order. Indeed, Mr. Antoon interprets Request No. 31 to the MindGeek Corporate Defendants to seek the same information as this Request, and it would be unreasonably expensive and disproportionate to the needs of the case to require Mr. Antoon, an individual, to duplicate the search of the MindGeek Corporate Defendants."

Request for Production No. 37: "All documents and communications identifying all content categories, "genres," or similar descriptors MindGeek has included, recommended, or offered to users of its platforms and websites."

Response to Request for Production No. 37: "Mr. Antoon objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents beyond Mr. Antoon's possession, custody, or control. Moreover, Mr. Antoon objects to the extent this Request seeks information beyond the scope of the jurisdictional discovery authorized by the Court's July 29 Order. Among other things, this Request is not limited to Pornhub, which is the only tubesite on which Plaintiff alleges content depicting her was uploaded. Mr. Antoon further objects to this Request to the extent it seeks documents outside the Relevant Time Period. Mr. Antoon also objects to this Request to the extent it seeks information that can be obtained from a more convenient and less expensive source, namely, the MindGeek Corporate Defendants. Indeed, Mr. Antoon interprets Request No. 32 to the MindGeek Corporate Defendants to

1  seek the same information as this Request, and it would be unreasonably

2  expensive and disproportionate to the needs of the case to require Mr. Antoon,

3  an individual, to duplicate the search of the MindGeek Corporate Defendants."

4

5  <u>Request for Production No. 38</u>: "All documents consisting of, or reflecting,

6  reports, communications, data, or actions related to content reviewed or

7  screened by any technology, programs, or internal or external personnel

8  concerning actual or suspected CSAM, nonconsensual, prohibited, or illegal

9  content."

10

11  <u>Response to Request for Production No. 38</u>: "Mr. Antoon objects to this

12  Request on the grounds that it is overbroad, unduly burdensome, and seeks

13  documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon

14  also objects to this Request to the extent it seeks communications or other

15  documents that are protected by the attorney-client privilege, work product

16  doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon

17  objects to the extent this Request seeks information beyond the scope of the

18  jurisdictional discovery authorized by the Court's July 29 Order. Among other

19  things, this Request is not limited to Pornhub, which is the only tubesite on

20  which Plaintiff alleges content depicting her was uploaded. Mr. Antoon further

21  objects to this Request to the extent it seeks documents outside the Relevant

22  Time Period. Mr. Antoon also objects to this Request to the extent it seeks

23  information that can be obtained from a more convenient and less expensive

24  source, namely, the MindGeek Corporate Defendants. Indeed, Mr. Antoon

25  interprets Request No. 33 to the MindGeek Corporate Defendants to seek the

26  same information as this Request, and it would be unreasonably expensive and

27  disproportionate to the needs of the case to require Mr. Antoon, an individual,

28  to duplicate the search of the MindGeek Corporate Defendants."

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    <u>Request for Production No. 39</u>: "All documents concerning complaints,

2    reports, communications, and requests concerning, non-consensual, prohibited,

3    or illegal content on any MindGeek platform or website,  including all

4    documents and communications with or concerning any associated

5    investigation, actions, and internal and external communications concerning

6    the same."

7

8    <u>Response to Request for Production No. 39</u>: "Mr. Antoon objects to this

9    Request on the grounds that it is overbroad, unduly burdensome, and seeks

10   documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon

11   also objects to this Request to the extent it seeks communications or other

12   documents that are protected by the attorney-client privilege, work product

13   doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon

14   objects to the extent this Request seeks information beyond the scope of the

15   jurisdictional discovery authorized by the Court's July 29 Order. Among other

16   things, this Request is not limited to Pornhub, which is the only tubesite on

17   which Plaintiff alleges content depicting her was uploaded. Mr. Antoon also

18   objects to the term "actions" as vague and ambiguous. Mr. Antoon further

19   objects to this Request to the extent it seeks documents outside the Relevant

20   Time Period. Mr. Antoon also objects to this Request to the extent it seeks

21   information that can be obtained from a more convenient and less expensive

22   source, namely, the MindGeek Corporate Defendants. Indeed, Mr. Antoon

23   interprets Request No. 34 to the MindGeek Corporate Defendants to seek the

24   same information as this Request, and it would be unreasonably expensive and

25   disproportionate to the needs of the case to require Mr. Antoon, an individual,

26   to duplicate the search of the MindGeek Corporate Defendants."

27

28   <u>Request for Production No. 40</u>: "All documents and communications reflecting

40                          CASE NO. 21-CV-04920-CJC-ADS

1    processes, standards, and technologies that MindGeek employed to prevent the

2    presence of child pornography, CSAM, non-consensual, prohibited, or illegal

3    content on its platforms or websites; the dates on which such processes,

4    standards, and technologies were employed; and the people most

5    knowledgeable about each."

6

7    <u>Response to Request for Production No. 40</u>: "Mr. Antoon objects to this

8    Request on the grounds that it is overbroad, unduly burdensome, and seeks

9    documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon

10    also objects to this Request to the extent it seeks    communications or other

11    documents that are protected by the attorney-client privilege, work product

12    doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon

13    objects to the extent this Request seeks information beyond the scope of the

14    jurisdictional discovery authorized by the Court's July 29 Order. Among other

15    things, this Request is not limited to Pornhub, which is the only tubesite on

16    which Plaintiff alleges content depicting her was uploaded. Mr. Antoon further

17    objects to this Request to the extent it seeks documents outside the Relevant

18    Time Period. Mr. Antoon also objects to this Request to the extent it seeks

19    information that can be obtained from a more convenient and less expensive

20    source, namely, the MindGeek Corporate Defendants that were also the subject

21    of the Court's July 29 Order. Indeed, Mr. Antoon interprets Request No. 35 to

22    the MindGeek Corporate Defendants to seek the same information as this

23    Request, and it would be unreasonably expensive and disproportionate to the

24    needs of the case to require Mr. Antoon, an individual, to duplicate the search

25    of the MindGeek Corporate Defendants."

26

27    <u>Request for Production No. 41</u>: "All documents and communications reflecting

28    policies, practices, rules, guidelines, programs, or plans concerning the

41                      CASE NO. 21-CV-04920-CJC-ADS

1  moderation, monitoring, review, formatting, analysis or search and social

2  media use and optimization of content on MindGeek platforms and websites,

3  including, but not limited to, with respect to content uploaded with associated

4  languages other than English."

5

6  <u>Response to Request for Production No. 41</u>: "Mr. Antoon objects to this

7  Request on the grounds that it is overbroad, unduly burdensome, and seeks

8  documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon

9  also objects to this Request to the extent it seeks communications or other

10 documents that are protected by the attorney-client privilege, work product

11 doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon

12 objects to the extent this Request seeks information beyond   the scope of the

13 jurisdictional discovery authorized by the Court's July 29 Order. Among other

14 things, this Request is not limited to Pornhub, which is the only tubesite on

15 which Plaintiff alleges content depicting her was uploaded. Mr. Antoon further

16 objects to this Request to the extent it seeks documents outside the Relevant

17 Time Period. Mr. Antoon also objects to this Request to the extent it seeks

18 information that can be obtained from a more convenient and less expensive

19 source, namely, the MindGeek Corporate Defendants. Indeed, Mr. Antoon

20 interprets Request No. 36 to the MindGeek Corporate Defendants to seek the

21 same information as this Request, and it would be unreasonably expensive and

22 disproportionate to the needs of the case to require Mr. Antoon, an individual,

23 to duplicate the search of the MindGeek Corporate Defendants."

24

25 <u>Request for Production No. 42</u>: "All documents and communications

26 concerning MindGeek's policies, practices, and compliance related to 18

27 U.S.C. § 2257."

28

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    <u>Response to Request for Production No. 42</u>: "Mr. Antoon objects to this
2    Request on the grounds that it is overbroad, unduly burdensome, and seeks
3    documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon
4    also objects to this Request to the extent it seeks communications or other
5    documents that are protected by the attorney-client privilege, work product
6    doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon
7    objects to the extent this Request seeks information beyond the scope of the
8    jurisdictional discovery authorized by the Court's July 29 Order. Among other
9    things, this Request is not limited to Pornhub, which is the only tubesite on
10   which Plaintiff alleges content depicting her was uploaded. Mr. Antoon further
11   objects to this Request to the extent it seeks documents outside the Relevant
12   Time Period. Mr. Antoon also objects to this Request to the extent it seeks
13   information that can be obtained from a more convenient and less expensive
14   source, namely, the MindGeek Corporate Defendants that were also the subject
15   of   the Court's July 29 Order. Indeed, Mr. Antoon interprets Request No. 37
16   to the MindGeek Corporate Defendants to seek the same information as this
17   Request, and it would be unreasonably expensive and disproportionate to the
18   needs of the case to require Mr. Antoon, an individual, to duplicate the search
19   of the MindGeek Corporate Defendants."

20

21   <u>Request for Production No. 46</u>: "Any internal or external expert or consultant
22   reports provided to MindGeek concerning its technology, processes, policies,
23   and practices concerning CSAM, nonconsensual, prohibited, or illegal
24   content."

25

26   <u>Response to Request for Production No. 46</u>: "Mr. Antoon objects to this
27   Request on the grounds that it is overbroad, unduly burdensome, and seeks
28   documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    also objects to this Request to the extent it seeks communications or other
2    documents that are protected by the attorney-client privilege, work product
3    doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon
4    objects to the extent this Request seeks information beyond the scope of the
5    jurisdictional discovery authorized by the Court's July 29 Order. Mr. Antoon
6    further objects to this Request to the extent it seeks documents outside the
7    Relevant Time Period. Mr. Antoon also objects to this Request to the extent it
8    seeks information that can be obtained from a more convenient and less
9    expensive source, namely, the MindGeek Corporate Defendants. Indeed, Mr.
10   Antoon interprets Request No. 40 to the MindGeek Corporate Defendants to
11   seek the same information as this Request, and it would be unreasonably
12   expensive and disproportionate to the needs of the case to require Mr. Antoon,
13   an individual, to duplicate the search of the MindGeek Corporate Defendants."
14
15   <u>Request for Production No. 49</u>: "All documents or communications concerning
16   any internal or external review of MindGeek content for CSAM, non-
17   consensual, prohibited, or illegal content, including, but not limited to, the
18   review undertaken beginning in or about the end of 2020 and the beginning of
19   2021 and the review that led to the report to NCMEC that was described in the
20   June 20, 2022 New Yorker magazine."
21
22   <u>Response to Request for Production No. 49</u>: "Mr. Antoon objects to this
23   Request on the grounds that it is overbroad, unduly burdensome, and seeks
24   documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon
25   also objects to this Request to the extent it seeks communications or other
26   documents that are protected by the attorney-client privilege, work product
27   doctrine, or any other applicable privilege or immunity.  Moreover, Mr.
28   Antoon objects to the extent this Request seeks information beyond the scope

of the jurisdictional discovery authorized by the Court's July 29 Order. Among other things, this Request is not limited to Pornhub, which is the only tubesite on which Plaintiff alleges content depicting her was uploaded. Mr. Antoon further objects to this Request to the extent it seeks documents outside the Relevant Time Period. Mr. Antoon also objects to this Request to the extent it seeks information that can be obtained from a more convenient and less expensive source, namely, the MindGeek Corporate Defendants. Indeed, Mr. Antoon interprets Request No. 43 to the MindGeek Corporate Defendants to seek the same information as this Request, and it would be unreasonably expensive and disproportionate to the needs of the case to require Mr. Antoon, an individual, to duplicate the search of the MindGeek Corporate Defendants."

Request for Production No. 52: "All documents concerning communications with the media, news organizations, journalists, legislators, law enforcement, regulators, quasi- governmental agencies, media relations companies, the Free Speech Coalition, 5wPR, or on social media platforms either directly, through aliases, or through agents, surrogates, or other social media participants concerning CSAM, nonconsensual, prohibited, or illegal content on MindGeek's platforms or websites or internal or external news, media or other reports, allegations, or complaints regarding the same."

Response to Request for Production No. 52: "Mr. Antoon objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks documents beyond Mr. Antoon's possession, custody, or control. Mr. Antoon also objects to this Request to the extent it seeks communications or other documents that are protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Moreover, Mr. Antoon objects to the extent this Request seeks information beyond the scope of the

jurisdictional discovery authorized by the Court's July 29 Order. Mr. Antoon further objects to this Request to the extent it seeks documents outside the Relevant Time Period. Mr. Antoon also objects to this Request to the extent it seeks information that can be obtained from a more convenient and less expensive source, namely, the MindGeek Corporate Defendants. Indeed, Mr. Antoon interprets Request No. 46 to the MindGeek Corporate Defendants to seek the same information as this Request, and it would be unreasonably expensive and disproportionate to the needs of the case to require Mr. Antoon, an individual, to duplicate the search of the MindGeek Corporate Defendants."

## B. Interrogatories in Dispute

Interrogatory No. 2: "Describe in detail each transaction during the Relevant Time Period in which ownership, shares, indebtedness, secured interests, options, derivatives, or other capital related transactions occurred involving a MindGeek Related Entity, and identify the direct and indirect participants in those transactions."

Response to Interrogatory No. 2: "Mr. Antoon objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information beyond Mr. Antoon's present knowledge, custody, or control. Mr. Antoon also objects to this Interrogatory to the extent it seeks information that can be obtained from a more convenient and less expensive source, namely, the MindGeek Corporate Defendants that were also the subject of the Court's July 29 Order. Moreover, Mr. Antoon objects to the term "other capital related transactions" as vague and ambiguous. ███████████████████

████████████████████████████████████████

███████████████████

Interrogatory No. 3: "Identify the date, participants, and content for every

1    presentation or communication of financial or other economic performance to

2    investors, lenders, or others with direct or indirect financial interests in any

3    MindGeek Related Entity."

4

5    Response to Interrogatory No. 3: "Mr. Antoon objects to this Interrogatory on

6    the grounds that it is overbroad, unduly burdensome, and seeks information

7    beyond Mr. Antoon's present knowledge, custody, or control. Moreover, Mr.

8    Antoon objects to the extent this Interrogatory seeks information beyond the

9    scope of the jurisdictional discovery authorized by the Court's July 29 Order.

10    Mr. Antoon also objects to this Interrogatory to the extent it seeks information

11    that can be obtained from a more convenient and less expensive source, namely,

12    the MindGeek Corporate Defendants that were also the subject of the Court's

13    July 29 Order. Mr. Antoon further objects to this Interrogatory to the extent it

14    seeks information that is not proportional to the needs of the case. Mr. Antoon

15    also objects to the terms "other economic performance" and "indirect financial

16    interests" as vague and ambiguous. Subject to these objections, ████████████

17    ████████████████████████████████████████████████████████

18    ████████████████████████████████████████████████████████

19    ████████████████████████████████████████████████████████

20    ████████████████████████████████████████████████████████

21    ████████████████████████████████████████████████████████

22    ████████████████████████████████████████████████████████

23    ████████████████████████████████████████████████████████

24    ████████████████████████████████████████████████████████

25    ████████████████████████████████████████████████████████

26    ████████████████████████████████████████████████████████

27    ████████████████████████████████████████████████████████

28    ████████████████████████████████████████████████████████

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1
2
3
4
5
6
7



8

9   <u>Interrogatory No. 4</u>: "Describe in detail all direct or indirect jurisdictional

10  contacts within the relevant jurisdictions, *i.e.* the United States and California,

11  that You or Your agents, or any of the MindGeek Related Entities and their

12  owners, executives, and employees, have or had during the Relevant Time

13  Period, including but not limited to, offices, residences, and real estate located

14  in the relevant jurisdictions; personnel or vendors employed, retained, or paid

15  located in the relevant jurisdictions; trips to the relevant jurisdictions; and

16  revenues, profits, expenses, taxes earned or paid in or from the relevant

17  jurisdictions; and communications or business relationships with, to, or in

18  either of the relevant jurisdictions."

19

20  <u>Response to Interrogatory No. 4</u>: "Mr. Antoon objects to this Interrogatory on

21  the grounds that it is overbroad, unduly burdensome, and seeks information

22  beyond Mr. Antoon's present knowledge, custody, or control. Mr. Antoon also

23  objects to this Interrogatory to the extent it seeks information that can be

24  obtained from a more convenient and less expensive source, namely, the

25  MindGeek Corporate Defendants that were also the subject of the Court's July

26  29 Order. Mr. Antoon further objects to this Interrogatory to the extent it calls

27  for opinions and conclusions of law. Moreover, Mr. Antoon objects to this

28  Interrogatory to the extent it seeks information beyond the scope of the

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    jurisdictional discovery authorized by the Court's July 29 Order. █████



25    <u>Interrogatory No. 6</u>: "Identify all social media accounts, email accounts, cell

26    numbers, text, or other communications services or applications used by the

27    Individual Defendants directly or through any MindGeek Related Entity during

28    the Relevant Time Period."

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    <u>Response to Interrogatory No. 6</u>: "Mr. Antoon objects to this Interrogatory on

2    the grounds that it is overbroad, unduly burdensome, and seeks information

3    beyond Mr. Antoon's present knowledge, custody, or control. Mr. Antoon

4    also objects to this Interrogatory to the extent it seeks information that can be

5    obtained from a more convenient and less expensive source, namely, the

6    MindGeek Entities that were also the subject of the Court's July 29 Order.

7    Moreover, Mr. Antoon objects to the extent this Interrogatory seeks

8    information beyond the scope of the jurisdictional discovery granted by the

9    Court's July 29 Order. Subject to these objections, Mr. Antoon ███████

10   ████████████████████████████████████████████████████████

11   █████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████

13   █████████████████████████████████████████████████████████████

14   ████████████████████████████████████████

15   ███████████████████████████████████████████████████

16   █████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████

18   █████████████████████████████████████████████

19   ███████████████████████████████████████████████████████████

20   █████████████████████████████████████████████████████

21   █████████████████████████████████████████████████████

22   ██████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████

24   ███████████

25   **III.    PLAINTIFF'S POSITION**

26       **A.    <u>Plaintiff's Motion To Compel</u>**

27       Pursuant to the Court's July 29, 2022 Order, Plaintiff served Antoon with her

28   First Set of Interrogatories on August 17, 2022 and her First Requests for Production

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    of Documents on September 20, 2022.  *See* Doyle Decl., Exhibits 1 and 2.  On October

2    17, 2022 and October 20, 2022, Antoon served objections and responses to Plaintiff's

3    ROGs and RFPs, respectively, *see* Doyle Decl., Exhibits 4 and 5.  Antoon failed to

4    respond substantively.[4]

5         Throughout the entire time period in which Plaintiff's CSAM was uploaded,

6    optimized, disseminated, and capitalized on by the defendants, Antoon was serving

7    in various management and executive roles within the MindGeek enterprise,

8    including service as a Chief Executive Officer, as director and/or manager of a

9    number of the defendant MindGeek Entities and their supporting subsidiaries, and

10   that he was an officer for the entity purportedly responsible for content management

11   services. (*See* Dkt. 224-8, Exhibit 7, MG Resp. to ROG No. 5; Dkt. 139-3, Andreou

12   Declaration).  He has also conceded in sworn interrogatory responses that he held

13   various ownership interests in various MindGeek entities during the relevant period,

14   including in entities that are named defendants in this action, met with minority

15   shareholders of the MindGeek Corporate Defendants, and that he regularly spoke with

16   Defendant Bernd Bergmair regularly about operations.  *See* Doyle Decl., Exhibit 4 at

17   4, 6, Antoon Resp. to ROG Nos. 1, 3.  Despite this, and his own admission that he

18   was often involved in MindGeek communications, *see id.* at 7, Antoon Resp. to ROG

19   No. 4, Antoon has refused to conduct reasonable searches for, or to produce, relevant

20   communications, information, and documents pertaining to the various roles he

21   played within the MindGeek enterprise and that are relevant to evaluating jurisdiction.

22   _____

23   [4] Antoon initially responded to Plaintiff's ROGs on September 22, 2022, but that
     response was heavily redacted because a protective order had not yet been entered in

24   the case.  *See* Exhibit 3.  Plaintiff therefore did not receive Antoon's actual responses
     to Plaintiff's ROGs until Antoon provided an unredacted interrogatory response on

25   October 17, 2022, with responses designated as "Confidential" pursuant to the
     protective order.  Plaintiff has filed Antoon's response in an unredacted form under

26   seal, pursuant to the Stipulated Protective Order, Dkt. 187.  Antoon's response to

27   Plaintiff's production requests contained no such designation and is filed in its

28   original form.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1   *See* Doyle Decl. at 3, ¶ 10.

2           **1.**    **Antoon Cannot Avoid Discovery Just Because the MindGeek**

3              **Entity Defendants May Provide Discovery**

4         Antoon objects to almost every Request on the grounds that the information

5   sought is "duplicative of information already sought by Plaintiff from the MindGeek

6   Corporate Defendants" or more easily obtained from another party.  *See* Doyle Decl.

7   Exh. 4, Def. Antoon's Responses to RFP Nos. 1-54.  But this Court previously held

8   that parties are not relieved of producing responsive documents because other

9   defendants may produce them.  Dkt. 211, at 3-4 (rejecting the argument that a non-

10  party was relieved of its duty to produce documents that MindGeek might possess but

11  has not produced); *see also Anson v. Weinstein*, No. CV 17-8360-GW (KSX), 2019

12  WL 6655259, at *4 (C.D. Cal. Aug. 26, 2019) (a party "is not absolved of [his or her]

13  own obligation to produce the responsive materials regardless of whether other parties

14  may also produce similar or even identical documents.")  The Court should similarly

15  reject Antoon's objection.

16          **2.**    **Antoon Refuses to Produce Documents and Communications**

17             **Concerning Plaintiff**

18        RFP No. 1 seeks production of all documents and communications concerning

19  Plaintiff that are in Antoon's possession, custody, or control.  Antoon sidesteps this

20  request by recharacterizing it as seeking only his communications *with* Plaintiff (and

21  none apparently exists), claiming that his communications *concerning* Plaintiff are

22  not relevant to this Court's jurisdictional analysis.

23        Documents and communications concerning Plaintiff, who is based in

24  California, will reveal the extent to which Antoon communicated about Plaintiff,

25  directed actions to be taken with respect to Plaintiff's videos, and played a role in

26  optimizing and monetizing Plaintiff's CSAM.  The role that Antoon played in the

27  solicitation, optimization, dissemination, and capitalization of Plaintiff's CSAM is

28  highly relevant to this Court's jurisdictional analysis. *See Allstar Mktg. Grp., LLC v.*

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

*Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1120 (C.D. Cal. 2009) ("Courts have . . . found a corporate officer's contacts on behalf of a corporation sufficient to subject the officer to personal jurisdiction where the officer is a primary participant in the alleged wrongdoing or had control of, and direct participation in the alleged activities.") (citing cases).  Thus, Antoon's communications about this California-based Plaintiff, the monetization of Plaintiff's CSAM, and her efforts to have that content removed is relevant to the exercise of jurisdiction over Antoon.  Antoon should be ordered to produce all communications and documents concerning Plaintiff.

### 3.   Antoon Disregards this Court's Rulings Concerning the Permissible Scope of Jurisdictional Discovery

Antoon recites the same boilerplate objections to several of Plaintiff's discovery requests.  One of those objections is that the requests seek "information beyond the scope of the jurisdictional discovery authorized by the Court's July 29 Order."  But Antoon is simply ignoring this Court's clear direction concerning the permissible scope of jurisdictional discovery.

This Court concluded that "Plaintiff has alleged facts bearing on the MindGeek Individual Defendants direction of specific policies pursuant to which Plaintiff was harmed." (Dkt. 167, at 7; *see also id.* at 5 ("[T]here are various allegations throughout the FAC that identify specific MindGeek policies or practices—which were applied to Plaintiff and her videos—that the MindGeek Individual Defendants allegedly directed or implemented.").)  The Court further explained that "[i]t is entirely plausible that at least one of the MindGeek Individual Defendants—high up as they were in the MindGeek hierarchy—had substantial involvement in the practices and policies of one of MindGeek's major lines of business that harmed Plaintiff." (*Id.* at 7.)  For example, the Court declared that "operating Pornhub and other MindGeek sites in a manner that maximizes the profitability of child porn" would qualify as "[j]urisdictionally relevant conduct." (Dkt. 167, at 3 n.2; *see also id.* at 5 n.5 (recognizing that it would be jurisdictionally relevant if "one or all of the MindGeek

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1  Individual Defendants promulgated a policy of reuploading child porn like Plaintiff's

2  videos, to MindGeek's websites after taking them down")).

3  　　　Plaintiff therefore propounded several requests seeking documents that would

4  reveal Antoon's role in setting policies concerning the uploading and monetization of

5  CSAM on Pornhub and other MindGeek sites.  Plaintiff's RFP Nos. 5, 38-42, 46, 49,

6  and 52 seek documents and communications between Defendant Antoon, others, and

7  any Defendant "related to the presence of any CSAM" on MindGeek sites, the

8  reporting of CSAM, and MindGeek's policies when CSAM is identified.    Request

9  Nos. 10, 33-42 concern MindGeek's practices, policies, procedures, and technologies

10 used for monitoring, moderating, and removing material from its websites.  Finally,

11 Request No. 30 seeks documents and communications concerning the putative

12 resignation of Antoon and his co-defendant, former MindGeek COO David Tassillo,

13 both of whom spent more than a decade in leadership positions with MindGeek,

14 resigned amid public scrutiny concerning allegations that the MindGeek Entities, and

15 their officers, directors, and employees, intentionally commercialized and monetized

16 illegal CSAM and stonewalled efforts to have the content removed, including in the

17 case of Plaintiff.

18 　　　These Requests collectively seek, among other things, information related to

19 Antoon's personal involvement in the adoption of policies and procedures concerning

20 the handling of CSAM, and Antoon's role in controlling and directing the various

21 MindGeek entities' operations, particularly as it concerns search engine optimization

22 (SEO) and CSAM, all of which the Court has held is relevant to its jurisdictional

23 analysis.  (Dkt. 167, at 7).  Documents responsive to the requests would also reveal

24 Antoon's knowledge and awareness of the prevalence and intentional proliferation of

25 CSAM on MindGeek's tubesites, as well as the role that Antoon played in the

26 implementation of the policies that allowed for the proliferation of CSAM on

27 MindGeek's tubesites, all of which are relevant jurisdictional considerations.  Antoon

28 has refused to produce any documents in response to these requests.

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1       Along similar lines, the Court was clear that "[w]here the money flows in the

2  MindGeek web, which may relate to ownership of the porn sites that generate revenue,

3  matters to the Court's jurisdictional analysis."[5]  (Dkt. 167, at 3 n.2).  The Court also

4  recognized that Plaintiff alleged that "the MindGeek Entity Defendants are each

5  controlled by the MindGeek Individual Defendants, that the MindGeek Individual

6  Defendants appoint sham directors to the entities which they control in order to

7  impede investigations, and that the MindGeek Entity Defendants divert money,

8  possibility to the MindGeek Individual Defendants" (*id.* at 6 and that "[t]his alleged

9  flow of money is . . . jurisdictionally relevant" (*id.* at 6 n.6).

10      In accordance with this guidance, Plaintiff propounded specific requests

11  concerning the relationship and purpose of the various MindGeek entities, and their

12  corporate structure and ownership, as well as Antoon's ownership interests in those

13  entities and his receipt of funds from those entities.  *See, e.g.*, RFP Request No. 8

14  (seeking documents related to Defendant Antoon's beneficial ownership of or

15  economic interest in any MindGeek Related Entity or MindGeek intellectual

16  property); RFP Request No. 15 (seeking documents related to any transactions

17  involving the ownership loans to, secured interest in, or intellectual property or other

18  rights related to MindGeek); RFP Request No. 29 (seeking documents concerning

19  payments, investments, or loans to or from any MindGeek Entity or the Individual

20  Defendants); ROG No. 2 (seeking information on ownership, shares, and capital

21  transactions); RFP Request No. 2 (seeking documents and communications

22

---

23  [5] The Court, in recognition of Plaintiff's allegations that her videos were pushed to

24  MindGeek's other tubesites consistent with MindGeek's pervasive practice, recognized that "[j]urisdictionally relevant conduct" was not limited to Pornhub but

25  included operation of MindGeek's other sites as well in a manner that maximized the profitability of child porn.  (Dkt. 167, at 3 n.2; *see also id.* at 5 n.5).  Therefore,

26  Antoon's repeated effort to limit the scope of his responses to Pornhub should be rejected.  (Dkt. 211, at 5 (agreeing with Plaintiff that requests regarding "the [true]

27  ownership of ***porn sites*** that generated revenue from Plaintiff's child sexual abuse

28  material" is relevant to the Court's jurisdictional analysis) (emphasis added)).

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

concerning Antoon's affiliation with any MindGeek Related Entity); RFP Request No. 3 (seeking documents and communications concerning income, revenue, or other monies that Antoon received from any MindGeek Related Entity) *see also* RFP Request No. 7 (seeking documents concerning business relationships with various entities, such as Colbeck Capital, JP Morgan Chase, Fortress Investment Group); RFP Request No. 13 (seeking documents concerning MindGeek entity and tubesite profits); RFP Request No. 14 and ROG No. 3 (seeking documents concerning or provided to investors in any MindGeek Related Entity); RFP Request No. 16 (seeking, among other things, financials, ledgers, and shareholder lists); RFP Request No. 17 (seeking among other things, tax filings, audits, financials, and accounting reports); RFP Request No. 18 (seeking "Your monthly, quarterly, and annual bank and investment statements"); RFP Request No. 19 (seeking documents related to any corporate reorganization by MindGeek); Request No. 20 (seeking documents identifying MindGeek subsidiaries); RFP No. 21 (seeking documents identifying directors, managers, members, executives, and personnel of MindGeek subsidiaries); RFP Request No. 24 (seeking information on, among other things, MindGeek bank accounts); RFP Request No. 25 (seeking audited financial statements and communications with auditors); RFP Request Nos. 6, 9, 22-23, 26-28 (seeking documents relating to the organization and corporate structure of MindGeek). This Court previously found these categories of documents relevant, so Antoon should be ordered to produce them promptly. (Dkt. 211, at 5).

Antoon also attempts to limit his responses to just the MindGeek Entity Defendants, rather than the MindGeek Entities as Plaintiff defined them in the requests. The Court already rejected this limitation. (Dkt. 211, at 6).

### 4. <u>Antoon Refuses to Produce Documents and Sufficient Information Relative to His Jurisdictional Contacts</u>

Antoon also objects to several Requests that seek information concerning his connections and activities with California and other jurisdictions in the United States.

*See* RFP No. 11 and ROG No. 4 (seeking documents and communications related to Antoon's "jurisdictional contacts with the United States or California"); RFP No. 12 (seeking documents and communications related to, among other things "political activities in California or any jurisdiction in the United States," "trips to California or any jurisdiction in the United States, profits, expenses, and taxes paid in or earned from California or any other United States jurisdiction, and communications or business relationships with, to, from, or in California or any other United States jurisdiction). Each of these requests seeks information that is relevant to the Court's jurisdictional analysis. Nevertheless, Antoon has refused to search for a single document in response to these requests.

Similarly, Antoon's response to Interrogatory No. 4 is also deficient. Antoon admits he had taken numerous trips, owns substantial property, and pays taxes both in California and the relevant jurisdictions, but he provides only a barebones explanation of those contacts. Antoon should be ordered to provide more detail as to the more than 50 trips to the United States that Defendant admits to taking. For each trip, Antoon should be ordered to identify: (i) the dates of the trip, (ii) the locations visited, and (iii) the purpose of the visit. Antoon should also be ordered to provide adequate detail as to the properties owned through the various entities listed in response to Interrogatory No. 4. For each property that he owns or partially owns, directly or indirectly, Antoon should identify: (i) the address of each property, (ii) the date purchased, (iii) the purchase price, (iv) Antoon's ownership percentage, and (v) the date sold (if applicable). Finally, Antoon should be ordered to provide his tax returns and the tax returns for the various entities listed in response to Interrogatory No. 4. *See A. Farber & Partners*, 234 F.R.D. at 191 (ordering defendant to produce tax records).

Antoon also refuses to produce communications with other defendants (RFP Request No. 4), even though his relationship with, and control over, entities and individuals domiciled or doing business in the state of California are relevant to both

the Court's jurisdictional and alter-ego analyses.  *See also* RFP Request No. 2 (seeking documents and communications concerning Defendant's affiliation with any MindGeek Related Entity, including those based in California or other United States jurisdictions); RFP Request No. 3 (seeking documents and communications concerning income, revenue, or other monies that Defendant received from any MindGeek Related Entity, including those based in California or other United States jurisdictions).

Similarly, in response to Request No. 32 and Interrogatory No. 6, Antoon refused to identify or produce contact lists or communication accounts and failed to identify the usernames and/or related contact information associated with his WhatsApp, Telegram, Teams, and Skype for Business accounts, though he admits to using these platforms.  The identity and locations of the individuals that Antoon communicated and worked with in furtherance of the MindGeek's illegal trafficking venture and their efforts to conceal and coverup their wrongdoing is highly relevant. *See* Dkt. 168 at 7 ("It is entirely plausible that at least one of the MindGeek Individual Defendants . . . had substantial involvement in the practices and policies of one of MindGeek's major lines of business that harmed Plaintiff.").

### 5.    Antoon's Privacy and Data Protection Objection is Without Merit

Antoon's refusal to disclose information that could violate a law, rule, or regulation, for instance because it could require disclosure of information protected by applicable privacy or data protection laws (RFP General Objection 7 and Interrogatory General Objection 6), is improper.  "The mere existence of a blocking statute does not preclude an American court from ordering discovery from a foreign litigant." *Connex R.R. LLC v. AXA Corp. Sols. Assurance*, No.: CV 16–02368–ODW (RAOx), 2017 WL 3433542, at *5 (C.D. Cal. Feb. 22, 2017).  "Indeed, the Supreme Court has held that '[i]t is well settled that such statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even

1  though the act of production may violate that statute.'" *Id.* (quoting *Société Nationale*
2  *v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 524, 544 n.29 (1987)).
3  Currently, it is impossible for Plaintiff to assess the propriety of Antoon's failure to
4  disclose information without more specific information. Thus, if Antoon refuses to
5  provide documents in full, or redacts documents on the purported basis that he must
6  do so in compliance with a law, rule, or regulation, Antoon should be ordered to
7  submit a log of the withheld information, so Plaintiff can properly assess Antoon's
8  claims.

9        6.      **Antoon Has Refused to Conduct a Search for Responsive**
10               **Documents**

11       It is black-letter law that, "*[u]pon receipt* of a properly served request, a
12  responding party is required to conduct a 'reasonable search' for responsive
13  documents." *Trujillo v. Princess Cruise Lines, Ltd.*, No. CV 20-7451 JWH (PVCx),
14  2021 WL 3604518, at *6 (C.D. Cal. Apr. 23, 2021) (emphasis added); *Polaris*
15  *Innovations Ltd. v. Kingstown Tech. Co.*, No. CV 16-00300 CJC (RAOx), 2017 WL
16  3275615, at *2 (C.D. Cal. Feb. 14, 2017); *see also A. Farber & Partners, Inc. v.*
17  *Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) ("[A] party has an obligation to
18  conduct a reasonable inquiry into the factual basis of his responses to discovery, and,
19  based on that inquiry, [a] party responding to a Rule 34 production request ... is under
20  an affirmative duty to seek that information reasonably available to [it] from [its]
21  employees, agents, or others subject to [its] control." (citations and quotations
22  omitted)).

23       Consistent with this fundamental principle, Rule 34 explicitly requires a
24  responding party to "state whether any responsive materials are being withheld on the
25  basis of [an asserted] objection." Fed. R. Civ. P. 34(b)(2)(C). None of Antoon's
26  responses to Plaintiff's document requests contains the statement required by Rule
27  34(b)(2)(C). During the parties' meet-and-confer teleconference on December 15,
28  2022, Antoon's counsel, collectively with the other Individual Defendants' counsel,

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1  confirmed that Antoon had not conducted a search for documents, instead claiming
2  he was waiting for this Court to provide clarity in connection with Plaintiff's pending
3  motion to compel filed against MindGeek (Dkt. 224) before he would begin a search
4  for responsive documents. *See* Doyle Decl., ¶ 10. Antoon provides only boilerplate
5  objections.

6      This Court should require him to conduct a search promptly and to submit to
7  Plaintiff "declarations or affidavits detailing the nature of his 'reasonable inquiry' to
8  locate responsive documents, and such declarations must address the inquiry he made
9  on a request-by-request basis." *A. Farber & Partners*, 234 F.R.D. at 190 (ordering
10 this procedure in the face of an "astounding" "paucity" of documents produced by
11 defendant, which production still involved 600 documents, far more than the zero
12 documents that Antoon has produced here).

13 **IV.  ANTOON'S POSITION**

14     **A.  Plaintiff's Motion to Compel Should Be Denied in Full**

15         **1.  Plaintiff's Motion Should be Denied for Failure to**
16             **Meaningfully Meet and Confer**

17     This motion comes before the Court principally for two reasons: Plaintiff's ill-
18 founded belief that she was permitted to seek merits discovery despite the District
19 Court's explicit ruling to the contrary, and her refusal to meaningfully meet and confer
20 with the Individual Defendants, even after Judge Carney ruled she could not take
21 merits discovery in this phase and the Court made clear that Plaintiff's requests will
22 be narrowed to the permitted topics of jurisdictional discovery and the parties must
23 meet and confer on discovery within those topics. Plaintiff's refusal to follow the
24 Local Rules and these Court directions means her motion should be denied.

25     On July 29, 2022, Judge Carney authorized jurisdictional discovery and
26 explicitly directed Plaintiff and her counsel "to not use this opportunity to further
27 complicate this case." (Brown Decl., Ex. C (Dkt. No. 168 at 2).) Despite this, Plaintiff
28 propounded exceedingly broad discovery requests to the Individual Defendants that

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

went well beyond the jurisdictional discovery ordered. For example, several requests (both alone and in combination) seek essentially every piece of paper and every email and electronic record the Individual Defendants possess related to MindGeek. *See e.g.*, RFP No. 2 (seeking all documents concerning "Your affiliation with … or ownership of MindGeek"); RFP No. 7 (seeking all documents related to any "economic interest in, or business relationship with MindGeek … by You"); RFP No. 9 (seeking all documents "relating to MindGeek's past or present … offices, departments, executives and personnel"); RFP No. 22 (seeking all documents identifying MindGeek subsidiaries "and the nature of [their] assets, businesses, or services"); RFP No. 50 (seeking all documents related to the "distribution of content to any MindGeek [site]"). Plaintiff similarly seeks documents from the Individual Defendants reflecting every penny going in or out of MindGeek to or from any party for any purpose for an eight-year period, without limitation. *See* RFP No. 16 (seeking records regarding "all payments made to or on behalf of [any MindGeek] entity, affiliate, subsidiary or related entity"); Interrogatory No. 2 (seeking a description "in detail" of every transaction "in which ownership, shares, indebtedness, secured interests, options, derivatives, or other capital related transactions occurred" involving MindGeek).

The Individual Defendants timely responded to Plaintiff's interrogatories and requests for production of documents on September 20, 2022, and October 20, 2022, respectively. (*See* Doyle Decl., Exs. 3, 4, 5.) After over a month of no communication, Plaintiff sent a L.R. 37-1 letter on December 5, 2022, to Individual Defendants seeking to immediately meet and confer. (*See* Doyle Decl., Ex. 6.) In accordance with L.R. 37-1, the Individual Defendants met and conferred with Plaintiff on December 15, 2022. (*See* Brown Decl. ¶21.) This meet and confer was limited to only the requests for production of document and did not include discussing concerning the interrogatories. (*See id.*) At this meeting, the Individual Defendants' counsel pointed out that Plaintiff had served her extremely broad discovery requests

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

at a time when she was admittedly seeking merits discovery and asked if there were any of her requests that she was willing to narrow. Plaintiff said no. (*See id.*) At this meeting, the Individual Defendants also requested that Plaintiff hold off filing any motion to compel, since her motion to compel the MindGeek corporate defendants, which raised similar issues, was then scheduled to be heard by the Court on December 27, 2022, and the Court's ruling would potentially resolve or narrow the issues between Plaintiff and the Individual Defendants. Plaintiff would not agree to do so. (*See id.*) The meet and confer ended with Plaintiff's promise to consider questions raised by the Individual Defendants and to get back to Individual Defendants about open issues. (*See id.*) The next day, on December 16, 2022, the jurisdictional discovery cutoff was extended four months, until May 1, 2023. (*See* Brown Decl., Ex. D (Dkt. No. 241).)

Without any further correspondence or response regarding on the open issues from the December 15 meet and confer, Plaintiff served a motion to compel on all Individual Defendants on Friday, December 23, with a due date of Friday, December 30, and a hearing date of February 1, 2023. (*See* Brown Decl., Ex. H.) Plaintiff did so despite having explicitly saying to the Individual Defendants that she would consider points made during the December 15 meet and confer.

The Individual Defendants informed Plaintiff that the dispute was not ripe for presentation to the Court. (*See id.*) Because Plaintiff had served her motion to compel the day before the Christmas holiday weekend (even though her motion did not need to be filed until Wednesday, January 11 per L.R. 37-3), the Individual Defendants sought an extension to respond until at least January 10. (*See id.*) Plaintiff did not agree to the Individual Defendants' requested extension—which included extending the hearing date to February 8, 2023—until December 27, 2022, after the Christmas holiday weekend. (*See id.*)

On January 4, 2023, counsel for the Individual Defendants emailed Plaintiff's counsel to schedule an additional meet and confer to narrow the substantial number

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

of disputes at issue in the present motion to compel.  That meet and confer took place on January 6, 2023, during which Plaintiff rejected all but one of Individual Defendants' proposals, even though the Individual Defendants explained to Plaintiff that:

- To lessen the substantial burden on the Court, the Individual Defendants sought to consolidate the four motions to compel into a single motion.  Plaintiff would not agree. Nevertheless, the Individual Defendants have worked hard to include in the individual submissions demanded by Plaintiff identical arguments where appropriate (for example, this entire Preliminary Statement).

- To accurately convey to the Court what the Individual Defendants had done, the Individual Defendants told Plaintiff that they had all begun a search for documents relevant to jurisdictional discovery—contrary to what Plaintiff's counsel claimed they heard—yet Plaintiff refused (and still refuses) to amend her assertions in the motion.

- To narrow the issues substantially, the Individual Defendants asked that their responses be made after the Court ruled on the pending motion to compel discovery from the MindGeek Entity Defendants because certain issues relevant to the Individual Defendants' dispute with Plaintiff would be litigated there.

- To narrow the issues substantially, the Individual Defendants sought a further meet and confer before January 18, which would have had no impact on the February 8, 2023, hearing date.  Indeed, with the jurisdictional discovery cutoff now May 1, 2023, meaningful meet and confer remains especially timely.

(*See* Brown Decl. ¶ 21.)

At the January 6, 2023, meet-and-confer, Individual Defendants also asked Plaintiff again to narrow her requests, because they address merits issues and are otherwise overbroad.  Just as in the December 15 meet-and-confer, Plaintiff did not identify a single request that she was willing to narrow, with one exception.  In the

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

one and only area where Plaintiff noted she would consider narrowing the requests—RFP Nos. 10, 14, 18, 24, 30, 32, and 36—counsel asked the Individual Defendants to send a follow-up email, which the Individual Defendants did on Monday, January 9. (*See* Brown Decl., Ex. I.)  Plaintiff responded to that email on Tuesday, January 10, without providing any additional information or narrowing any requests.  (*See id.*)

On January 10, Mr. Antoon and the other Individual Defendants provided Plaintiff with their portions of the joint stipulation on Plaintiff's motion to compel.

On January 11, the Court held a hearing on Plaintiff's separate motion to compel the MindGeek corporate defendants, at the conclusion of which the Court directed the parties to meet and confer further.  Following this hearing, and in light of the Court's direction to meet and confer on that motion, Plaintiff's counsel advised that Plaintiff did not intend to file the motions to compel the Individual Defendants that day and suggested that the parties meet and confer to see if they could "narrow or resolve" any issues in dispute.  (Brown Decl., Ex. Q.)

On behalf of all the Individual Defendants, counsel responded the next morning, January 12, that they remained "interested in trying to narrow and, if possible, resolve all or at least some of the open issues," and proposed a meet and confer.  (Brown Decl., Ex. Q.)

The following day, January 13, counsel for Mr. Tassillo (on behalf of all Individual Defendants) had a telephone conference with Plaintiff's counsel in which defense counsel reiterated a desire to continue discussions.  (Brown Decl. ¶ 22.)  Among other points, we understand that counsel for Mr. Tassillo strongly suggested that counsel for Plaintiff provide a narrowed set of categories of documents he believed that he could obtain only from the Individual Defendants (not the MindGeek Entities) that relate to personal jurisdiction.  (Brown Decl. ¶ 22.)

Later the same day, as a follow-up from this meeting, the Individual Defendants proposed a meet-and-confer for the next business day and noted that they would "like to continue discussing potential areas of agreement and ways to narrow and clarify

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1  the issues that may need to go to the Magistrate Judge." (Brown Decl., Ex. Q.)

2  Plaintiff did not respond to this email. (Brown Decl., Ex. Q.)

3      The Individual Defendants contacted Plaintiff again on January 18, asking if

4  counsel for Plaintiff wished to "continue the meet and confer process." (Brown Decl.,

5  Ex. Q.) The email noted that "it would be constructive to identify and itemize the

6  specific materials the plaintiff is seeking," and urged Plaintiff to provide such a list to

7  facilitate the parties' potential discussions. (*Id.*)

8      Later the same day, Plaintiff responded that she would "hold off" filing the

9  motions to compel "today." (Brown Decl., Ex. Q.) Plaintiff's email agreed that "we

10  should confer further to try to reach agreements," saying Plaintiff would be "[b]ack

11  in touch shortly." (*Id.*) But Plaintiff either was not being truthful in this email or

12  inexplicably reversed course sometime in the next two weeks.

13      Instead of providing a narrowed list or setting a time to meet and confer, the

14  next communication from Plaintiff after her January 18, 2023, email was on February

15  1, when Plaintiff served her portion of the joint stipulation related to the instant motion

16  to compel. (Brown Decl., Ex. S.) The following day, the Individual Defendants again

17  invited Plaintiff to engage in a further meet and confer rather than proceed with

18  motion practice, reiterating yet again their request that, as a starting point for

19  discussions, Plaintiff provide them with a list of narrowed categories of documents

20  she is seeking. (Brown Decl., Ex. R.) Plaintiff refused even to respond to this request

21  to meet and confer and provide any narrowed categories of documents, saying only

22  that she would proceed with motion practice. (*Id.*) Plaintiff insisted that the

23  Individual Defendants provide their portions of the joint stipulation within six days

24  of receiving Plaintiff's revised portion, in contravention of the seven days response

25  period required under L.R. 37-2.2. (*Id.*) Antoon is submitting this response early in

26  order to avoid burdening the Court with yet another dispute, but reserves all rights

27  regarding this additional violation by Plaintiff of the Local Rules.

28      It is plain that Plaintiff has never meaningfully engaged in the meet and confer

65

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    process.  This comes as no surprise: nearly one month before Plaintiff sent a L.R. 37-

2    1 letter to the Individual Defendants—and thus well before any meet-and-confer could

3    take place—Plaintiff stated on the record that her motions to compel against the

4    Individual Defendants were "in progress."[6]  This conduct, and her refusal to narrow

5    even one of her admittedly merits-focused document requests, shows that Plaintiff has

6    failed to meaningfully meet-and-confer, and her motion should be denied on that basis

7    alone.

8         In short, despite the fact that there are still areas the parties can continue to

9    work with each to eliminate the need for hundreds of pages of briefing for this Court

10    (including consolidating the motions to compel against all four Defendants into a

11    single brief), Plaintiff has refused to meaningfully engage in the meet and confer

12    process.  At this point, the motion to compel should be denied on that basis alone.  *See*

13    *Goldwater Bank, N.A. v. Elizarov*, 2022 WL 17078950, at *2-3 (C.D. Cal. Oct. 7,

14    2022) (Defendant "asked this court to rule on a multitude of purported discovery

15    disputes without having made a full and reasonable effort to resolve these disputes . .

16    . . Because the instant motion was brought without defendant first complying with

17    Local Rule 37-1, the court denies it without prejudice."); *Rahmatullah v. Charter*

18    *Commc'ns, LLC*, 2021 WL 1593242, at *3 (C.D. Cal. Mar. 25, 2021) ("Plaintiff's

19    decision to abandon meet-and-confer negotiations prematurely and burden the court's

20    time and resources with a 223-page joint stipulation is not well taken."); *Mulligan v.*

21    *Nichols*, 2013 WL 12124004, at *2 (C.D. Cal. July 12, 2013) ("the Court does not

22

---

23    [6] *See* Brown Decl. Ex. G (Dkt. 178, November 16, 2022 *Hr'g Tr. Re Pl.'s Mot. for*

24    *Issuance of Int'l Judicial Assistance* at 6:10-11 ("So the individual Defendants, their

productions have been due. I'm certain Your Honor next is going to ask where are the

25    motions to compel and they are in progress.").)  On December 5, 2022, Plaintiff sent

26    a Rule 37-1 letter to the Individual Defendants.  Two days later, before a meet and

confer was scheduled, on December 7, 2022, Plaintiff noted in a court filing that

27    "Plaintiffs [sic] *will be filing* a separate motion to compel the Individual Defendants

to comply with discovery obligations."  (Brown Decl., Ex. J (Dkt. 233 at 2 n.1)

28    (emphasis added).)

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

countenance shotgun discovery, duplicative discovery, or inadequate meet and confer efforts which result in unnecessary 100-plus page discovery motions"); *see also ExxonMobil Oil Corp. v. S. California Edison Co.*, 2013 WL 12166215, at *6 n.5 (C.D. Cal. Nov. 19, 2013) ("After further meet and confer, the Motion may, if necessary, be renewed as to any remaining disputes in these two areas; however, the parties are cautioned that if the Court deems that the meet and confer process has been inadequate, a further motion will be summarily denied."); *Acosta v. Austin Elec. Servs. LLC*, 324 F.R.D 210, 212 (D. Ariz. 2017) (ordering plaintiff's counsel to show cause regarding failure to adequately meet and confer prior to moving to compel). The Court can and should deny Plaintiff's motion on this basis alone, and order her to meet and confer with Mr. Antoon and the other Individual Defendants in the substantive and good faith manner required by the Local Rules.

### 2.    Plaintiff Improperly Seeks MindGeek Corporate Records from the Individual Defendants

Plaintiff insists on proceeding with a motion to compel when her fundamental problem is one of her own making: she seeks MindGeek corporate documents from the Individual Defendants when she also seeks virtually the same corporate documents from the MindGeek Entities (RFP Nos. 1-17, 19-31, 33-54).    The MindGeek Entities are the best source for responsive documents relating to, among other things, emails regarding Plaintiff; MindGeek's income, revenue, and other financial information; MindGeek's ownership; and the Individual Defendants' involvement in setting MindGeek's policies regarding CSAM.    The MindGeek Entities have made a substantial production relating to these issues and we understand that additional document productions are forthcoming.

Plaintiff seeks a breathtaking array of corporate documents from the Individual Defendants.    Virtually every one of her 54 document requests seeks corporate documents that would be created and maintained by the MindGeek Entities.    Among other topics, Plaintiff seeks documents regarding: MindGeek's "corporate and

ownership" structure (RFP No. 6); its "organizational structure, offices, departments, executives and personnel" and all of its subsidiaries, directors, managers, members and executives (RFP No. 9; *see also* RFP Nos. 20, 21, 22, 26); all of its financial records, including audited financial statements, ledgers, profit and loss statements, balance sheets, records of revenues and profits, payroll records and expense records (RFP Nos. 12, 16, 17, 25); its quarterly and annual tax filings (RFP No. 17); minutes and presentation materials for its board of directors meetings (RFP No. 16); its "intellectual property" (RFP Nos. 8, 53, 54); its "IT infrastructure," data storage and cloud storage (RFP No. 31); its document preservation policies (RFP No. 35); and its agreements with bank and credit card networks (RFP No. 51). These corporate records are overwhelmingly ones created or maintained by MindGeek corporate employees—not the Individual Defendants—and to the extent the Individual Defendants received copies, they were likely sent to them via MindGeek's email system. None of the Individual Defendants have access to MindGeek's email system or corporate records. Yet Plaintiff inexplicably insists that the Individual Defendants are the right parties for these corporate-focused discovery requests.[7]

In both our December 15, 2022, and January 6, 2023, meet-and-confers and in subsequent e-mail and telephone communications, the Individual Defendants suggested that it would be more efficient for the parties to identify the responsive documents MindGeek had to which Plaintiff was entitled, and then limit the universe of documents sought from the Individual Defendants to any non-duplicative documents they might possess. In our January 6, 2023, meet-and-confer, the

---

[7] In this stipulation, Plaintiff contends that Mr. Antoon "has refused to conduct reasonable searches for . . . documents pertaining to the various he roles he played within the MindGeek enterprise." But Mr. Antoon has agreed to search for documents concerning his involvement (if any) in setting the CSAM policies that allegedly harmed Plaintiff and, to the extent Plaintiff seeks other information as to "the various roles" Mr. Antoon "played within the MindGeek enterprise," that information is outside the jurisdictional discovery ordered.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1   Individual Defendants specifically asked Plaintiff's counsel if he insisted that the
2   Individual Defendants produce identical copies of the 7,000 pages of corporate
3   documents already produced by MindGeek, if they had them in their possession.
4   Plaintiff's counsel confirmed that he expected the production of such duplicative
5   records. (*See* Brown Decl. ¶ 21.)

6       In seeking to burden the Individual Defendants with these requests for
7   MindGeek's documents, Plaintiff takes refuge in the proposition that a party may seek
8   duplicative documents from different parties. While this may be true in the abstract,
9   Plaintiff ignores that Rule 26(b)(2)(C)(i) specifically requires a court to limit
10  discovery that is "unreasonably cumulative or duplicative, or can be obtained from
11  some other source that is more convenient, less burdensome, or less expensive." Here,
12  seeking corporate documents from the Individual Defendants when the same
13  documents are simultaneously being sought from the MindGeek Entities is
14  unreasonably duplicative, burdensome, and misguided. It would plainly be "more
15  convenient" and "less burdensome" to obtain the documents from the MindGeek
16  Entities. Indeed, *MindGeek already has produced a good number of corporate*
17  *documents that address the financial issues that Plaintiff seeks to understand.*

18      The Individual Defendants are no longer employed by MindGeek (or never
19  were), and thus have no access to MindGeek's email system or any other records.
20  Indeed, as Plaintiff is well aware, Mr. Antoon resigned from his positions in
21  MindGeek in June 2022. (*See* Brown Decl. ¶ 23.) He no longer has access to
22  MindGeek business e-mails and the MindGeek Entities have collected and are
23  reviewing appropriate messaging and other mobile data. (*See* Brown Decl. ¶¶ 23-24.)
24  Yet Plaintiff curiously seeks to compel the Individual Defendants to produce these
25  materials rather than the company to which the documents actually belong. Plaintiff
26  should direct her concerns, if any, regarding the MindGeek Entities' production of
27  corporate financial information to those parties, and her motion to compel the
28  Individual Defendants to produce materials to which they have little or no access

1  should be denied.  *See, e.g.*, *Williams v. City of Hartford*, No. 3:15CV00933(AWT),

2  2016 WL 1732719, at *11 (D. Conn. May 2, 2016) (denying motion to compel with

3  respect to plaintiff's document request because another defendant was already ordered

4  to produce the sought-after records); *Kleppinger v. Texas Dep't of Transportation*,

5  No. CV L-10-124, 2012 WL 12893652, at *3 (S.D. Tex. Mar. 12, 2012) (denying

6  motion to compel individual defendants (current and former employees of the Texas

7  Department of Transportation) to respond to interrogatories because the

8  interrogatories were "unreasonably duplicative of discovery requests directed to

9  Defendant [Texas Department of Transportation]").

10      Another reason for Plaintiff to address her requests for MindGeek records to

11  the MindGeek Entities is that many responsive documents are potentially protected

12  by MindGeek's attorney-client privilege.  The Individual Defendants cannot waive

13  MindGeek's privileges, and any objections Plaintiff may have to the company's

14  privilege claims should be raised with company counsel.  Similarly, the corporate

15  records sought quite likely contain confidential business information of the MindGeek

16  Entities, which their counsel would have to review in order to determine whether to

17  designate any information confidential or highly confidential under the Court's

18  protective order (Brown Decl., Ex. F (Dkt. No. 187).)  This duplicative process would

19  not be necessary if Plaintiff simply directed her requests for corporate documents

20  from the corporate defendants, an approach that is much more convenient and much

21  less burdensome, and thus in accord with Rule 26.

22      **3.    <u>Documents and Communications Concerning Plaintiff (RFP</u>**

23      **<u>No. 1)</u>**

24      Plaintiff seeks to compel Mr. Antoon to produce "communications about"

25  Plaintiff.  Mr. Antoon has searched his personal e-mail and other materials within his

26  unique possession and found no documents relating to Fleites in the relevant time

27

28

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1  period.  (*See* Brown Decl. ¶ 24.)[8]  Mr. Antoon respectfully submits that there is no

2  live dispute between the Plaintiff and him on this issue.

3             **4.**      **Plaintiff's Requests Go Far Beyond Jurisdictional Discovery**

4                 **a.**      **CSAM policies (RFP Nos. 5, 10, 30, 33-42, 46, 49, 52)**

5          Plaintiff's document requests regarding CSAM policies that allegedly directly

6  impacted Plaintiff exceed the scope of jurisdictional discovery authorized by the

7  Court.  Judge Carney authorized Plaintiff to take discovery regarding the Individual

8  Defendants' "direct involvement" (if any) "in promulgating" those policies as a

9  potential basis for specific personal jurisdiction.  (Brown Decl., Ex. A (Dkt. No. 167

10  at 5-7).)  Although Plaintiff argues in this stipulation that she is entitled to documents

11  regarding the Individual Defendants' roles in "setting policies" and the "adoption of

12  policies" regarding CSAM, her requests actually reach far beyond this.  Plaintiff's

13  requests seek a broad range of documents, including practically any document

14  mentioning CSAM policies, even if they have nothing to do with any Individual

15  Defendant's role in the creation of those policies.

16          And, contrary to Plaintiff's assertion that Mr. Antoon refuses to search for

17  responsive documents, Mr. Antoon has searched for and continues to search for

18  documents regarding his involvement in directing or implementing MindGeek CSAM

19  policies, consistent with Judge Carney's order.[9]  (*See* Brown Decl. ¶ 24.)  Plaintiff

20  thus offers no dispute regarding Mr. Antoon's efforts to produce documents

21  responsive to these RFPs that is ripe for resolution by the Court.

22  ───────────────

[8] As this Court has previously held, "only contacts occurring prior to the event causing
23  the litigation may be considered," and thus the relevant time period is between June
24  2014 and June 2020.  Dkt. No. 211 at 3 (citing *Farmers Ins. Exch. V. Portage La
    Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990)).

25  [9] As discussed above, Mr. Antoon does not have access to MindGeek's email systems
26  or other MindGeek corporate records.  Further, MindGeek has collected and is
    searching all of the messaging and other apps used by Mr. Antoon during his time at
27  the company.  Accordingly, Mr. Antoon is searching only his personal email accounts
28  and other documents that are in his possession and not in the possession of MindGeek.

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

b.    <u>Where Money Flows (RFP Nos. 2-3, 6-9, 13-29)</u>

Judge Carney recognized that Plaintiff "might also have a workable alter ego theory pursuant to which she can impute the jurisdictional contacts of the non-objecting MindGeek Entity Defendants to the MindGeek Individual Defendants," and ordered jurisdictional discovery on potential alter ego claims, even though Plaintiff's allegations on this point are "rather conclusory, vague, and indeed, quite difficult to follow at times." (Brown Decl. Ex. A (Dkt. No. 167 at 6)). The questions on alter ego are whether "(1) there is such unity of interest and ownership that the separate personalities of the corporation and the individuals no longer exist" *and* "(2) failure to disregard the corporation would result in fraud or injustice." *Symettrica Ent., Ltd. v. UMG Recordings, Inc.*, No. LACV1901192CJCKLS, 2019 WL 8806093, at *4 (C.D. Cal. Sept. 20, 2019) (quoting *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984)); *see also* Brown Decl. Ex. B (Dkt. No. 211 at 3). But Plaintiff's purported alter ego discovery goes far beyond these questions.

Instead, Plaintiff seeks license to conduct from the Individual Defendants a full forensic examination of essentially every financial document of the MindGeek Entities over nearly a decade. For example, Plaintiff's RFP No. 16 seeks, among other things, all documents of each and every MindGeek affiliate reflecting capitalization, revenues, profits, tax payments, distributions, dividends, shareholder agreements, lender agreements, as well as profit and loss statements, balance sheets, tax records, payroll records and expense records. As if that was not broad enough, Plaintiff also seeks documents from the Individual Defendants reflecting every penny going in or out of MindGeek to or from any other party for any purpose for an eight-year period, without limitation. *See* RFP No. 16 (seeking records regarding "all payments made to or on behalf of [any MindGeek] entity, affiliate, subsidiary or related entity").

The MindGeek Entities have already produced to Plaintiff documents sufficient to establish "how the money flows" at MindGeek. We understand that the MindGeek

Entities have agreed to produce substantial additional documents. Discovery from the Individual Defendants on this point would not be proportional to the needs of the case under Rule 26. A review of Plaintiff's document requests demonstrates that she has already been provided with corporate documents regarding the topics she seeks information about. For example, RFP Nos. 2, 3, 7 and 8 seek information about Mr. Antoon's ownership interest in MindGeek and monies received from the company. Mr. Antoon identified in response to interrogatories the exact percentage of his economic interest in MindGeek, including identifying the entities through which he owns his economic interests. (*See* Antoon Interrogatory Response No. 1.) Individual Defendants Mr. Bergmair and Mr. Tassillo similarly have provided information regarding their ownership interests in MindGeek. MindGeek also produced to Plaintiff the 2013 Shareholders' Agreement (and 2018 amendment) governing the relationship between the shareholders of MindGeek s.a.r.l. (*See* Brown Decl., Ex. L (Dkt. No. 224-10) ¶10(a)).)

Plaintiff also makes numerous requests seeking documents regarding MindGeek's corporate structure and identifying MindGeek subsidiaries. (RFP Nos. 6, 9, 19, 20, 22, 26.) MindGeek's interrogatory responses have explained the ownership status and structure of each of the MindGeek defendants. (*See* Brown Decl., Ex. P ("MG ROGs"), Response No. 1.) MindGeek also produced to Plaintiff corporate organizational charts for 2014 through 2021, which show *all* MindGeek entities, not just the corporate defendants in this action. (*See* Brown Decl., Ex. L (Dkt. No. 224-10 ¶8(c)).) Further, with respect to MindGeek's 2018 corporate reorganization, the MindGeek Entities have produced documents showing the transfers of assets undertaken in connection with this reorganization, as well as before and after versions of the corporate organizational structure.[10] (*Id.* ¶10(b).) The

---

[10] We understand that the MindGeek Entities will be producing a comprehensive set of the operative transaction documents from both the 2013 and 2018 reorganizations governing the ownership and financing of the company.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    MindGeek Entities also produced certificates of incorporation, by-laws, and other

2    corporate filings for numerous MindGeek entities.  (*Id.* ¶¶10(k)-(bb).)

3        Plaintiff also seeks financial records, audited financial statements and tax

4    returns of MindGeek.  (RFP Nos. 13, 16, 17, 25.)  The MindGeek Entities produced

5    audited financial statements for each entity preparing such statements for 2014

6    through 2019.  (*See* Brown Decl., Ex. L (Dkt. No. 224-10 ¶8(d)-(g)).)  In addition, the

7    MindGeek Entities produced detailed financial reporting packages for *all* MindGeek

8    entities from 2014 through June 2021, which include Consolidated Statements of

9    Cash Flow and auditor's notes.  (*Id.* ¶8(i).)  Plaintiff has also been provided with

10   multiple sets of tax returns filed by MindGeek entities.  (*Id.* ¶13(g)-(h).)  In addition,

11   at Plaintiff's request, the Court issued letters rogatory to multiple Grant Thornton

12   entities abroad who provide audit and accounting services to MindGeek affiliates.

13   (*See* Dkt. Nos. 219-222.)

14       Plaintiff also seeks documents sufficient to identify MindGeek's directors and

15   managers.  (RFP No. 21.)  But MindGeek has already identified the directors and

16   managers of each corporate defendant and their dates of services in its interrogatory

17   responses.  (*See* Brown Decl., Ex. P (MG ROGS Response No. 5.)  Further, the

18   MindGeek Entities have produced the minutes of the shareholder meetings and Board

19   of Directors/Managers meetings for the corporate defendants, as well as board

20   resolutions, including those reflecting approval of dividend distributions to

21   shareholders.  (*See* Brown Decl., Ex. L (Dkt. No. 224-10 ¶10(c)-(j), 13(b)-(f), (l)-(p),

22   (u).)  Plaintiff also seeks documents from the Individual Defendants reflecting

23   services provided by one MindGeek entity to another (RFP Nos. 23, 27-27), despite

24   having received relevant service agreements governing these arrangements from the

25   MindGeek Entities.  (*Id.* ¶13(v)-(x).)

26       In addition to producing documents and interrogatory responses that provide

27   an explanation of how "the money flows" at MindGeek, the MindGeek Entities have

28   arranged for a Rule 30(b)(6) corporate representative to travel to the United States to

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

explain MindGeek's corporate structure. To date, Plaintiff has yet to schedule that deposition.

Plaintiff conspicuously leaves all of this out of her portion of this joint stipulation. She provides no explanation as to why audited financial statements prepared by a prominent accounting firm, detailed internal financial reporting packages presented to the companies' own boards, and corporate tax returns filed with the relevant taxing jurisdictions fail to provide an adequate picture of MindGeek's finances. Plaintiff's position is that this is insufficient and she is apparently entitled to every potential document that could relate in any way to MindGeek's finances and, even worse, the personal finances of each Individual Defendant. So, for example, Plaintiff makes the irrelevant and overbroad request for all "monthly, quarterly and annual bank and investment statements" of Mr. Antoon (RFP No. 18), with no limitation that any such documents relate to the MindGeek Entities or Plaintiff's causes of action. This request plainly exceeds the scope of jurisdictional discovery. To the extent Plaintiff contends that she needs to explore whether the Individual Defendants have diverted money to themselves from the MindGeek Entities, the MindGeek Entities have provided her with information regarding dividends, wages, and other monies paid out to Mr. Antoon. And it is our understanding that the MindGeek Entities are searching for and planning to produce documents (if any) reflecting so-called "related party transactions" with entities owned by the Individual Defendants. As described above, Plaintiff has been or shortly will be provided with documents that reflect how the money flows at MindGeek; what an Individual Defendant does with the money he receives as a MindGeek shareholder thereafter is simply irrelevant to the alter ego analysis. And, in any event, the request is plainly overbroad in that it calls for production of documents related to accounts that have nothing whatsoever to do with MindGeek. Indeed, this request is a perfect example of Plaintiff's "fishing expedition" approach to discovery in this action and her disregard of Judge Carney's admonition not to "complicate" the case. (*See* Brown

1    Decl., Exs. A & C (Dkt. Nos. 167 & 168).)

2         Finally, but perhaps most importantly, the documents produced to Plaintiff

3    establish that the MindGeek Entities followed appropriate corporate formalities, had

4    separate audited financial statements and tax returns prepared for each entity and,

5    where one entity performed services for another, entered into appropriate and

6    economically fair service agreements.

7         In short, Defendants have already produced documents and information that

8    tell Plaintiff "how the money flows" at MindGeek, and the MindGeek Entities are

9    producing substantial additional materials that relate to these issues more broadly.

10   Requiring the Individual Defendants to search for additional financial documents—

11   including personal financial materials and tax returns not relevant to this case, much

12   less within the bounds of jurisdictional discovery—is simply not "proportional to the

13   needs of the case" under Rule 26(a). *See Alaska Elec. Pension Fund v. Bank of Am.*

14   *Corp.*, No. 14-CV-7126 (JMF), 2016 WL 6779901, at *3 (S.D.N.Y. Nov. 16, 2016)

15   ("Rule 26(b)(1)'s proportionality requirement means [the requested documents]

16   'marginal utility' must also be considered."); *see also Hake v. Citibank, N.A.*, No.

17   19MC00125JGKKHP, 2020 WL 1467132, at *6 (S.D.N.Y. Mar. 26, 2020) (limiting

18   discovery on proportionality grounds because the "need for the documents sought

19   [was] . . . marginal at best" "[g]iven the marginal relevance of th[e] documents");

20   *Martinez v. Optimus Properties, LLC*, No. 17-3582, 2018 WL 5906904, at *2–3 (C.D.

21   Cal. May 9, 2018) (observing that the relevance of certain document requests was

22   "somewhat diminished by . . . [their] incremental potential value" and narrowing the

23   requests on proportionality grounds).

24

25   **5.      Plaintiff's Requests for Documents and Information Relative**

26   **to Mr. Antoon's Jurisdictional Contacts Exceed this Court's**

27   **Rulings Concerning the Permissible Scope of Jurisdictional**

28   **Discovery**

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

a.    **Plaintiff Seeks Information Related to Personal Contacts with this Jurisdiction**

Plaintiff's discovery requests to the Individual Defendants (Interrogatory No. 4, RFP Nos. 11-12) are overbroad to the extent they seek documents regarding their *personal* contacts with California and the United States.  In order to establish specific personal jurisdiction over the Individual Defendants, Plaintiff must show that they purposefully directed their activities at this jurisdiction and that her claims arose from those forum-directed activities.  *See AMA Multimedia LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020).  Plaintiff claims she was harmed by MindGeek's conduct and Judge Carney authorized her to explore whether the Individual Defendants were directly involved in creating or promulgating the purported MindGeek policies that Plaintiff asserts caused her alleged injuries.  (*See* Brown Decl., Ex A (Dkt. No. 167 at 5-7).)  Plaintiff's alleged injuries did not arise from the Individual Defendants' personal contacts with the jurisdiction, so those contacts could not possibly form the basis for personal jurisdiction over them.

Both Interrogatory No. 4 and Plaintiff's RFP Nos. 11 and 12 are not limited to MindGeek-related business contacts the Individual Defendants have had with this jurisdiction.  Plaintiff insists that the Individual Defendants must also provide information regarding purely personal contacts they may have had with the jurisdiction.  Indeed, in our January 6, 2023, meet-and-confer, Plaintiff's counsel specifically insisted in response to defense counsel's question that Plaintiff had a right to know if the Individual Defendants had ever taken any purely personal trips to the United States, such as, for example, if they took their families on a personal trip to Disneyland.  (*See* Brown Decl. ¶ 21.)  This position is meritless and such personal contacts are irrelevant to the issue of personal jurisdiction and outside the scope of the jurisdictional discovery permitted by Judge Carney's ruling.  To the extent Plaintiff contends she needs more information about Mr. Antoon's MindGeek business-related travel to the United States (and California) to determine whether

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

those trips had any relation to the policies plaintiff claims caused her harm, counsel for Mr. Antoon has stated to counsel for Plaintiff their willingness to seek more information as to the trips referenced in Mr. Antoon's response to Interrogatory No. 4. (Brown Decl. ¶ 21.)  But Plaintiff simply is not entitled to discovery as to contacts with the jurisdiction unrelated to her claims.

### b.    Plaintiff Seeks Communications with Other Defendants Related to this Action (RFP No. 4)

In this stipulation, Plaintiff misleadingly claims that she seeks "communications with other defendants," but omits that her request actually seeks communications among defendants "related to this Action." RFP No. 4.  This request is plainly irrelevant to personal jurisdiction as it seeks communications well after the date Plaintiff's alleged claims arose: the Amended Complaint alleges that the latest date Plaintiff's content was on a MindGeek website was in June 2020.  (Brown Decl., Ex. N (Dkt. No. 124-3 ¶268.)  As this Court has previously held, "only contacts occurring prior to the event causing the litigation may be considered."  (Brown Decl., Ex. B (Dkt. No. 211 at 3 (citing *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990)).)  Moreover, as the Individual Defendants advised Plaintiff during the January 6 meet and confer, the Court struck an identical document request from Plaintiff's proposed letters rogatory to Grant Thornton entities earlier in this case.  (Brown Decl., Ex. B (Dkt. No. 211 at 6).)[11]

### c.    Plaintiff Seeks Contact Lists Beyond the Scope of Authorized Jurisdictional Discovery (RFP No. 32 and ROG No. 6)

---

[11] Plaintiff also seeks to compel responses to RFP Nos. 2 and 3.  But as noted above, information regarding Mr. Antoon's ownership interests in the MindGeek Entities and the monies he received from the company have been provided to Plaintiff in his interrogatory responses (Antoon Interrogatory Response Nos. 1, 2) and in the interrogatory responses and documents produced by the MindGeek Entities related to the corporate and ownership structure of the company.

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

Plaintiff seeks from each Individual Defendant his list of contacts, without regard to whether they are business or personal, or have anything at all to do with MindGeek. This request is a transparent fishing expedition and needlessly invasive in light of the fact that a person's contacts likely include family members, personal friends, doctors, clergy, and other private and confidential relationships. It is also beyond the scope of the authorized jurisdictional discovery. Indeed, Plaintiffs have conceded that this request relates to the merits of the case, not the jurisdiction issue. When MindGeek objected to an identical document request for the Individual Defendants' contact lists on the grounds that they were not related to jurisdiction, Plaintiff did not even attempt to justify the request as jurisdictionally relevant. Instead, Plaintiff repeated her erroneous refrain that merits discovery was permissible and argued that the information was relevant to "Plaintiff's *claims* and likely to lead to additional evidence concerning the individual Defendants' *liability*." (*See* Brown Decl., Ex. M (September 27, 2022, Letter from Michael J. Bowe (Plaintiff's counsel) to Kathleen N. Massey (MindGeek's counsel), Dkt. No. 224-6 at 4 (emphasis added).)

### 6.   Mr. Antoon Has Conducted A Reasonably Diligent Search

Plaintiff is wrong regarding the Individual Defendants' search efforts: all have engaged in substantial review of the documents to which they have access. As explained to Plaintiff's counsel, Mr. Antoon, as a former employee, no longer has access to MindGeek emails or other documents maintained by the company but has done a diligent search of his personal email for potentially responsive documents. (*See* Brown Decl. ¶¶ 23-24.)

To be clear, none of the Individual Defendants' counsel represented to Plaintiff's counsel that Individual Defendants had not begun their search for responsive documents. Instead, Individual Defendants' counsel informed Plaintiff's counsel that it was hard to do a *productive* search given the scope of Plaintiff's requests and Plaintiff's refusal to narrow even a single one of them, not that no search had been conducted. (*See* Brown Decl. ¶ 21.) When Individual Defendants' counsel

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1   sought to resolve this misunderstanding—after first becoming aware of it through

2   Plaintiff's December draft of this Joint Stipulation—Plaintiff's counsel refused to

3   correct this portion of the Joint Stipulation.[12]  (*See* Brown Decl. ¶ 21.)

4   **V.    CONCLUSION**

5       **A.    Plaintiff's Conclusion**

6       For the foregoing reasons, Plaintiff respectfully requests that the Court grant

7   this Motion in full, and order Defendant Antoon to produce documents in response to

8   Plaintiff's RFPs 1-30, 32-42, 46, 49, and 52 and to supplement his responses to

9   Plaintiff's ROGs 2, 3, 4, and 6.   As a Defendant in this action, Antoon has the

10  obligation to carry out a search for, and respond fully to, Plaintiff's relevant discovery

11  requests.  Antoon has yet to even search for responsive material, let alone carried his

12  burden to show the disputed discovery should not be allowed.  Antoon was a senior

13  officer and employee of the companies at the center of this litigation, and his refusal

14  to produce even the most basic of communications concerning Plaintiff and his roles

15  in directing, guiding, and controlling the companies for which he worked defy the

16  Court's previous discovery rulings and fly in the face of the Court's specific direction

17  for the Defendant to submit to jurisdictional discovery.   Accordingly, this Court

18  should order Defendant Antoon to respond to the aforementioned discovery requests.

19      **B.    Defendant's Conclusion**

20      Plaintiff brought this motion to compel without meeting her obligations under

21  Local Rule 37 to meet and confer and seek to narrow the issues in dispute between

22  the parties and presented to the Court.  Her motion should be denied for that reason

23  alone.  Substantively, Plaintiff's motion should be denied for improperly seeking

24  corporate emails and records from Mr. Antoon—who has no access to those

25  _____

26  [12] Further, despite Plaintiff's arguments in section III(A)(5), Mr. Antoon is not

27  withholding any documents on the basis of privacy or data protection statutes.
    Counsel for Mr. Antoon expressly advised counsel for Plaintiff of this point in the

28  January 6, 2023, meet and confer.  (*See* Brown Decl. ¶ 21.)

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1    materials—rather than the MindGeek Entities, from whom Plaintiff has sought the

2    exact same documents and which have already made substantial productions within

3    the proper scope of jurisdictional discovery, and because Plaintiff seeks here to obtain

4    discovery well outside what is reasonable and proportional and what the Court has

5    permitted at this phase.

6

7           For all of the reasons discussed herein, Plaintiff's motion to compel should be

8    denied.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 21-CV-04920-CJC-ADS

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1  Dated: February 8, 2023

Respectfully Submitted

**BROWN RUDNICK LLP**

By: <u>s/ Michael J. Bowe</u>
MICHAEL J. BOWE (*pro hac vice*)
mbowe@brownrudnick.com
LAUREN TABAKSBLAT
(*pro hac vice*)
ltabaksblat@brownrudnick.com
7 Times Square
New York, NY 10036
Phone: (212) 209-4800
Fax: (212) 209-4801

David M. Stein (#198256)
dstein@brownrudnick.com
2211 Michelson Drive, 7th Floor
Irvine, California 92612
Phone: 949.752.7100
Fax: 949.252.1514

Attorneys for Plaintiffs

Dated: February 8, 2023

**COHEN & GRESSER LLP**

By: <u>s/ Jason Brown</u>
JASON BROWN (*pro hac vice*)
jbrown@cohengresser.com
Nathaniel P. T. Read (*pro hac vice*)
nread@cohengresser.com
800 Third Avenue
New York, NY 10022
Phone: (212) 957-7609

WIECHERT, MUNK & GOLDSTEIN, PC
David W. Wiechert (SBN 94607)
4000 MacArthur Blvd. Suite 600
East Tower

CASE NO. 21-CV-04920-CJC-ADS
**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Newport Beach, CA 92660 Phone: (949) 361-2822
Facsimile: (949) 361-5722
Email: dwiechert@aol.com

Attorneys for Defendant Feras Antoon

83

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT FERAS ANTOON'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**