# Exhibit 6

**brown**rudnick

MICHAEL J. BOWE
direct dial: 212.209.4905
fax: 212.938.2902
MBowe@brownrudnick.com

December 5, 2022

**VIA E-MAIL**

Jason Brown
Cohen & Gresser LLP
800 Third Avenue
New York, NY 10022
jbrown@cohengresser.com

**RE:   Defendant Feras Antoon's Responses to Plaintiff's First Request for Production and First Set of Interrogatories, *Fleites v. MindGeek S.A.R.L.***

Dear Jason,

      I write in response to Defendant Feras Antoon's October 20, 2022 responses to Plaintiff's First Request for Production of Documents and September 22, 2022 responses to Plaintiff's First Set of Interrogatories, which fail to respond to Plaintiff's Requests.

      On July 29, 2022, the Court ordered Defendant Antoon, along with the MindGeek Defendants and the other Individual Defendants, to engage in jurisdictional discovery and to complete said discovery by December 30, 2022. *See* Dkt. No. 167.  In that decision, the Court held that "where the money flows in the MindGeek web" and which individuals or entities own or exercise control over the MindGeek entities is relevant to its jurisdictional analysis.  Id. at 3 n.2, 7.   Pursuant to that order, Plaintiff served Defendant Antoon with her First Set of Interrogatories on August 22, 2022 and her First Request for Production of Documents on September 20, 2022 (together, the "Requests"). Defendant Antoon responded to those requests on September 22, 2022 and October 20, 2022, respectively (together, the "Responses").  The Responses fail to substantively respond to a single Request, proposing to meet and confer on 5 of Plaintiff's 54 Requests.  *See* Responses to Request Nos. 2, 7, 11-12, 32.  For the reasons set forth herein, the asserted objections ignore the Court's July 29, 2022 order, were previously rejected by this Court's November 17, 2022 order, and are inconsistent with the most basic discovery rules and practices.[1]

      As set forth herein, Defendant Antoon refuses to search for a single responsive document on the putative basis that the discovery sought is duplicative of or more easily

---

[1] After Plaintiff served her discovery demands, by order dated November 17, 2022, the Court clarified its August 11 order.  Accordingly, Plaintiff does not address Defendant Antoon's objections to Plaintiff's requests concerning the merits, but reserves all rights to challenge Defendant Antoon's objections to those requests at the appropriate time.



Jason Brown
December 5, 2022
Page 2

obtained from the MindGeek Entity Defendants.  Not only is this wrong as a matter of law, but despite making three rolling productions to date, including one as recently as last week, the MindGeek Entity Defendants have produced only 353 documents and have failed to produce broad categories of responsive information.  Accordingly, Plaintiff must simultaneously pursue this information from all available sources.

1. **Defendant Objects to Producing Documents On the Putative Basis That the Material is in Another Defendant's Possession**

Defendant objects to almost every Request on the grounds that the information sought is "duplicative of information already sought by Plaintiff from the MindGeek Corporate Defendants" or more easily obtained from another party.  But, the Court has already rejected this position in connection with the MindGeek Entity Defendants' challenge to the issuance of letters rogatory to Grant Thornton on the putative basis that the documents sought from Grant Thornton are in the possession of, or more easily obtained from, the MindGeek Entity Defendants.  Dkt. 211 at 3-4 (rejecting the argument that a non-party was relieved of its duty to produce documents that MindGeek might possess but has not produced).  That holding is consistent with the long line of cases which uniformly recognizes that parties are "not relieved of producing responsive documents in [their] possession, custody and control because [they] assert[] that other defendants have produced the documents." *See, e.g., Anson v. Weinstein*, No. CV 17-8360-GW (KSX), 2019 WL 6655259, at *4 (C.D. Cal. Aug. 26, 2019).  This is true "regardless of whether other parties may also produce similar or even identical documents." *Id.* These holdings are even more applicable here where the party Plaintiff seeks discovery from is a defendant to the case, not a third party.

Moreover, for certain Requests, Defendant is the only party who would have the requested information, despite his objection to the contrary.  For example, RFP No. 7 seeks documents related to Defendant Antoon's business relationships with various U.S.-based entities, such as Colbeck Capital, JP Morgan Chase, and Fortress Investment Group.  Although the MindGeek Entity Defendants may have certain information responsive to this Request, Plaintiff is entitled to determine whether Defendant Antoon has additional communications with these entities through electronic messages and personal email accounts not on the MindGeek server.

Finally, as set forth above, to date, the MindGeek Entity Defendants have failed to produce responsive discovery.  Accordingly, Defendant Antoon cannot rely on the entity defendants' production in lieu of his own.

2. **Defendant Refuses to Produce Documents And Communications Concerning Serena Fleites.**

Defendant Antoon likewise objects to producing "[a]ll documents and communications concerning Serena Fleites."  In response, Defendant Antoon argues that the requested information is irrelevant to the Court's jurisdictional analysis and limits his response to

Case 2:21-cv-04920-WLH-ADS   Document 274-7   Filed 02/09/23   Page 4 of 8   Page ID #:6916



Jason Brown
December 5, 2022
Page 3

communications with Plaintiff, which he states do not exist. Both the objection and the recharacterization of the Request are improper.

Defendant's internal communications about Plaintiff are plainly relevant to this Court's jurisdictional analysis in so far as they evidence Defendant's direct involvement in a scheme that targeted and harmed a California plaintiff. *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1120 (C.D. Cal. 2009) ("Courts have . . . found a corporate officer's contacts on behalf of a corporation sufficient to subject the officer to personal jurisdiction where the officer is a primary participant in the alleged wrongdoing or had control of, and direct participation in the alleged activities.") (citing cases) (quotation marks omitted)). Consistent with this well-settled law, certain MindGeek entities previously conceded jurisdiction as to California-based plaintiffs, *see* Dkt. 72-2 (acknowledging sufficient jurisdictional nexus for in-state plaintiffs while arguing that out-of-state foreign plaintiffs must be dismissed). Thus, Defendant's communications about this California-based Plaintiff, the monetization of Plaintiff's CSAM, and her efforts to have that content removed would be relevant to the exercise of jurisdiction over Defendant Antoon.

Moreover, the July 29 Order recognizes that discovery concerning the individuals responsible for setting policies concerning the moderation, optimization, uploading, and monetization of Plaintiff's CSAM and the MindGeek Defendant's efforts to silence, discredit, and intimidate victims that tried to expose it's human and sex trafficking venture is plainly relevant to the Court's jurisdictional and alter ego analyses. Dkt. 167 at 7 (holding that Plaintiff's allegations "seeking to tie to the MindGeek Individual Defendants the policies and practices that governed one of MindGeek's main lines of business" were "not speculative" and ordering jurisdictional discovery on the issue); *see also* Dkt. 211 at 5 (holding that Plaintiff had established the jurisdictional relevance of requests to third parties that relate to the issue of "who controls, owns, and operates the various MindGeek Entities").

### 3. Defendant Refuses to Produce Documents Concerning His Jurisdictional Contacts

Defendant improperly objects to several Requests that seek information concerning his connections and activities with California and other jurisdictions in the United States. *See* RFP *See* Request No. 11 (seeking documents and communications related to Your "present jurisdictional contacts with the United States or California"); Request No. 12 (seeking documents and communications related to, among other things "political activities in California or any jurisdiction in the United States," "trips to California or any jurisdiction in the United States, profits, expenses, and taxes paid in or earned from California or any other United States jurisdiction, and communications or business relationships with, to, from, or in California or any other United States jurisdiction); RFP Request Nos. 6, 9, 22-23, 26-28 (seeking documents relating to the organization and corporate structure of MindGeek). Each of these requests seeks information that is plainly relevant to the Court's jurisdictional analysis. Nevertheless, Defendant Antoon refuses to search for a single document in response to these Requests.



Similarly, Defendant Antoon refuses to produce communications with other defendants (RFP Request No. 4), even though his relationship with and control over entities and individuals domiciled or doing business in the state of California are relevant to both the Court's jurisdictional and alter ego analyses.  *See also* RFP Request No. 2 (seeking documents and communications concerning Defendant's affiliation with any MindGeek Related Entity, including those based in California or other United States jurisdictions); RFP Request No. 3 (seeking documents and communications concerning income, revenue, or other monies that Defendant received from any MindGeek Related Entity, including those based in California or other United States jurisdictions).

### 4. Defendant Refuses to Produce Documents Concerning "Where the Money Flows in the MindGeek Web" and Plaintiff's Alter Ego Allegations

Defendant Antoon objects to producing documents responsive to Plaintiff's requests concerning the relationship and purpose of the various MindGeek entities, their corporate structure, ownership, and purpose.  *See, e.g.,* RFP Request No. 7 (seeking documents concerning business relationships with various entities, such as Colbeck Capital, JP Morgan Chase, Fortress Investment Group); RFP Request No. 8 (seeking documents related to Defendant Antoon's beneficial ownership of or economic interest in any MindGeek Related Entity or MindGeek intellectual property); RFP Request No. 13 (seeking documents concerning MindGeek entity and tubesite profits); RFP Request No. 14 (seeking documents concerning or provided to investors in any MindGeek Related Entity); RFP Request No. 15 (seeking documents related to any transactions involving the ownership loans to, secured interest in, or intellectual property or other rights related to MindGeek); RFP Request No.16 (seeking, among other things, financials, ledgers, and shareholder lists); RFP Request No. 17 (seeking among other things, tax filings, audits, financials, and accounting reports); RFP Request No. 18 (seeking "Your monthly, quarterly, and annual bank and investment statements"); RFP Request No. 19 (seeking documents related to any corporate reorganization by MindGeek); Request No. 20 (seeking documents identifying MindGeek subsidiaries); RFP No. 21 (seeking documents identifying directors, managers, members, executives, and personnel of MindGeek subsidiaries); RFP Request No. 24 (seeking information on, among other things, MindGeek bank accounts); RFP Request No. 25 (seeking audited financial statements and communications with auditors); and RFP Request No. 29 (seeking documents concerning payments, investments, or loans to or from any MindGeek Entity or the Individual Defendants).

The July 29, 2022 Order held that "[w]here the money flows in the MindGeek web, which may relate to the ownership of the porn sites that generate revenue, ***matters to the Court's jurisdictional analysis***."  Dkt. 167 at 3 n.2 (emphasis added).  The same Order recognized that defendants' alter ego contacts could be imputed for jurisdiction and directed the parties to take discovery to determine whether the MindGeek entities and the individual defendants are alter egos of each other.  *Id.* at 4.  Consistent with these rulings, by order dated November17, 2022, in granting Plaintiff's request for issuance of letters rogatory to Grant Thornton, the Court held that the precise categories of documents Plaintiff seeks from Defendant Antoon here are relevant and discoverable.  Dkt. 211 at 5 ("The Court agrees with



Plaintiff that the information is relevant to the Court's jurisdictional analysis and ensures Plaintiff 'obtains complete and accurate information.'").

### 5. Defendant Improperly Limits His Responses to Material on Pornhub, Rather Than All of MindGeek's Tubesites

Defendant Antoon unilaterally limits Plaintiff's requests to material on Pornhub, to the exclusion of the other MindGeek Tubesites. Again, this Court previously rejected this argument by order dated November 17, 2022. Dkt. 211 at 5 (agreeing with Plaintiff that requests regarding "the [true] ownership of **porn sites** that generated revenue from Plaintiff's child sexual abuse material" is relevant to the Court's jurisdictional analysis) (emphasis added); *compare* Dkt. 192 at 10 (where MindGeek argued that jurisdictional discovery should be largely limited to "ownership and control of **Pornhub**" and "the flow of revenue from **Pornhub**") *with* Dkt. 211 at 6 (granting Plaintiff's Motion for Issuance of Letters Rogatory and expressly approving Plaintiff's requests, which sought all documents "reflecting annual revenues, profits and losses, and expenses for **each MindGeek . . . Tubesite** or the entity that owns or controls that platform or website") (emphases added). The Amended Complaint alleges that Defendants monetized and re-uploaded her CSAM to its other tubesites. *See, e.g.*, Am. Compl. ¶¶ 114, 126, 194, 243, 245-49, 255, 259, 262, 268, 272, 371(f), 532(f). The Court sustained these allegations at this stage in the proceeding and directed the parties to take discovery concerning any relevant jurisdictional and imputed contacts. Dkt. 167 at 7; *see also id.* at 5 n.5 (recognizing that a key goal of jurisdictional discovery here is to test Plaintiff's allegations that the "Individual Defendants promulgated a policy of reuploading child porn, like Plaintiff's videos, to MindGeek's websites after taking them down"). Nothing in the July 29 order limits the holding to Pornhub. Plaintiff is entitled to take discovery concerning all entities that uploaded, optimized, and monetized her CSAM, and the individual that own and exercise operational control over those entities.

### 6. Defendant Antoon Improperly Limits His Response to Defendants.

Plaintiff's Requests define the MindGeek Entities to include "the hundreds of companies that are owned, directly or indirectly, and/or affiliated with MindGeek S.A.R.L., including the hundreds of tubesites owned and operated by MindGeek, and the hundreds of companies that were created and dissolved during the period relevant to the Amended Complaint." This is consistent with the allegations in the Amended Complaint that the MindGeek entities are alter egos of each other and do not serve any legitimate purpose. *See, e.g.*, Am. Compl. ¶¶ 24, 31, 34, 41, 129, 131-57. By order dated July 29, 2022, the Court held that Plaintiff had alleged sufficient alter ego allegations to warrant discovery concerning the relationship between all the MindGeek entities, the flow of money, and capitalization of the various entities. Dkt. 167 at 7 (holding that Plaintiff's allegations "seeking to tie to the MindGeek Individual Defendants the policies and practices that governed one of MindGeek's main lines of business" were "not speculative" and ordering jurisdictional discovery on the issue); *id* at 4 ("Plaintiff may also be able to impute the contacts of the non-objecting MindGeek Entity Defendants to MindGeek S.A.R.L. and MG Premium through the alter ego doctrine."). Again, nothing in the Court's order limited its ruling to just the defendant entities. Moreover, the Court has already rejected



Jason Brown
December 5, 2022
Page 6

the position advanced by Defendant Antoon in connection with Plaintiff's requests for discovery from Grant Thornton.  *Compare* Dkt. 192 at 9-10 (arguing that the definition of "MindGeek Entity" was overly broad and should instead be limited to the named MindGeek defendants) *with* Dkt. 211 at 6 (issuing letters rogatory related to the production of contracts between Grant Thornton and all MindGeek entities, as those documents "can help determine the Court's personal jurisdiction over certain Defendants").

### 7. Defendant Refuses to Produce Discovery Concerning His Role in Setting Policies Concerning the Uploading and Monetization of CSAM.

Request Nos. 5, 38-42, and 46 seek documents and communications between Defendant Antoon and any Defendant "related to the presence of any CSAM" on MindGeek sites, the reporting of CSAM, and MindGeek's policies when CSAM is identified.  Request Nos. 43-45, and 47 seek the investigative report by the law firm Kaplan, Hecker, & Fink detailing its findings of MindGeek's practices, any documents provided to Kaplan Hecker in connection with that investigation and any non-privileged communications regarding same.  Requests 33-42 concern MindGeek's policies, procedures, and technologies used for monitoring, moderating, and removing material from its websites.  Finally, Request No. 30 seeks documents and communications concerning the putative resignation of Defendants Antoon and Tassillo, who spent more than a decade in leadership positions with MindGeek, resigned amid public scrutiny concerning allegations that the MindGeek Entities, their officers, directors, and employees, intentionally commercialized and monetized illegal CSAM and stonewalled efforts to have the content removed, including in the case of Plaintiff.

These Requests collectively seek, among other things, information related to Defendant's personal involvement in the adoption of policies and procedures concerning the handling of CSAM, and Defendant's role in controlling and directing the various MindGeek entities operations, particularly as it concerns SEO and CSAM, which the Court has held is relevant to its jurisdictional analysis.  Dkt. 167 at 7.  Moreover, documents related to the resignations of these individuals, including investigations, allegations, or reports of their conduct and the manner in which they ran the MindGeek business and profited from illegal conduct are directly relevant to the Court's inquiry of who set the policies as it relates to the monetization of CSAM, who enforced those policies, and who was held accountable for that conduct when the wrongdoing was exposed, which this Court has held is relevant to assess the exercise of jurisdiction.  *See id.*

### 8. Defendant Refuses to Disclose Information That Would Violate Any Law, Rule, or Regulation.

Defendant Antoon's refusal to disclose information that may violate a law, rule, or regulation, for instance because it would require disclosure of information protected by applicable privacy or data protection, is improper.  "The mere existence of a blocking statute does not preclude an American court from ordering discovery from a foreign litigant."  *Connex R.R. LLC v. AXA Corp. Sols. Assurance*, 2017 WL 3433542, at *5 (C.D. Cal. Feb. 22, 2017).  "Indeed, the Supreme Court has stated that '[i]t is well settled that such statutes do not deprive



an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute.'" *Id.* (quoting *Société Nationale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 524, 544 n.29 (1987)). Currently, it is impossible for Plaintiff to assess the propriety of Defendant's failure to disclose information without more specific information. Thus, if Defendant refuses to provide documents in full or redacts documents on the purported basis that he must do so in compliance with a law, rule, or regulation, Defendant must submit a log of the withheld information, so that Plaintiff can properly assess Defendant's claims.

### 9. Defendant Refuses to Produce Contact Lists, Media and Communications Accounts

Defendant Antoon refuses to identify or produce contact lists or communication accounts and fails to identify the usernames and/or related contact information associated with his WhatsApp, Telegram, Signal, Teams, and Skype for Business, though he admits to using these platforms. Of course, nothing can be more relevant to the Court's jurisdictional analysis than the identity and locations of the individuals that Defendant Antoon communicated and worked with in furtherance of the MindGeek's illegal trafficking venture and their efforts to conceal and coverup their wrongdoing.

\* \* \*

Plaintiff endeavors to resolve these disputed requests in an expedited manner given the short discovery timeline that the Court has established in this matter and looks forward to your prompt response to her concerns.

Sincerely,

**BROWN RUDNICK LLP**

Michael J. Bowe