# EXHIBIT 19

| | |
|---|---|
| **From:** | Doyle, John G. |
| **To:** | Ronald White; Devon Little; James Meehan (jmeehan@wmhlaw.com); Dan Marmalefsky (dmarmalefsky@mofo.com); dwiechert@aol.com; jbrown@cohengresser.com; Eszter Vincze; Nathaniel P.T. Read; McMenamin, Ryan; Sack, Jonathan S.; King, Karen; Peacocke, Alex; Korn, Adam; Chavkin, Peter; Biagetti, Peter; Akoglu, Kerime |
| **Cc:** | Tabaksblat, Lauren; Stein, David M.; Dunn, Joshua P.; Bowe, Michael J |
| **Subject:** | February 10, 2023 Meet and Confer Topics - Re Plaintiff"s Motion to Compel Bergmair, Antoon, Tassillo, and Urman Discovery Responses |
| **Date:** | Thursday, February 9, 2023 10:58:58 PM |
| **Attachments:** | February 10 2023 Ind. Def. Meet and Confer Topics.pdf |

Counsel,

We look forward to engaging in what we hope to be a productive and meaningful meet and confer process tomorrow, February 10, 2023 at 11:00 a.m. (EST), as agreed upon yesterday during our joint stipulation submission process. During those exchanges, Mr. White, on behalf of himself and all of the individual defendants' counsel, suggested that Plaintiff provide the Individual Defendants with a list of categories or documents Plaintiff seeks in order to have a base for our discussions. Without prejudice to, or waiving our rights to seek enforcement of the requests found in Plaintiff's Requests for Production and Interrogatories (and her pending motions to compel), and for the purposes of facilitating tomorrow's discussion, we provide the attached topic list which should serve as a good jumping off point.

I will send a link with the meeting information shortly. Please let me know if you have any trouble opening the attached document.

Thank you,

John

**brownrudnick**

**John G. Doyle**
Associate

Brown Rudnick LLP
601 Thirteenth Street NW
Washington, D.C. 20005

T: +1 202.536.1706

jdoyle@brownrudnick.com
www.brownrudnick.com

**Topics for February 10, 2023 Meet and Confer**

When will you produce the documents you have promised to produce and those the Judge has ordered produced.

> Mr. Urman's counsel indicated that he was searching for records reflecting distributions to the other Individuals, and that if found he would produce them – is this search complete and when can we expect production or information on the status?

> Mr. Bergmair's counsel agreed to produce the corporate resolutions authorizing dividend distributions to him from MindGeek entities or from the entities through which he holds the interests in MindGeek. When can we expect production?

What efforts were undertaken to preserve, collect, and review documents to date.

> What protocols have you used for electronic information?

> What steps were taken to collect and searched emails and text messages in your client's personal possession. What search protocols did you use? Were any devices storing such messages lost or unavailable. Have you checked your client's cloud or other backups.

> When were these steps initiated?

> What efforts have been made to coordinate with the MindGeek Entities to search for information pertaining to the Individual Defendants' business trips to the United States?

> What efforts have been made to coordinate with the MindGeek Entities to search for and produce communications, including text messages and emails, that are now allegedly in the possession of the MindGeek Entities? Who has been assigned responsibility to produce this material?

> Have the individual defendants excluded searches of material in their possession on the basis that the MindGeek Entities may also be searching similar material or data files?

Are any responsive documents subject to a claim of privilege and, if so, when will you provide a log?

Have you limited your responses by time frame? Are there responsive documents outside that time frame and what have you done to determine that.

What requests do you maintain you have no responsive documents for.

> For those that you do have responsive documents, what are you willing to produce?

What records exist concerning your clients' contacts with the United States, including travel, investment, real estate, calendars, business related communications, including with PR firms,

financial or other advisors, industry organizations, banks or financial institutions, and expenses reports concerning the US.

> What have you collected and reviewed and by what protocols. What will you produce?

What records do your clients maintain concerning their Mindgeek related economic interests and legal rights in the entities identified in the organizational charts that were produced, any related parties, or the Mindgeek business or RT Holdings business otherwise.

> What contracts, or documents describing such contracts, related to the entities identified on the organizational chart, related entities, or the Mindgeek and RT Holdings business otherwise do your clients possess. Are you willing to produce them.
>
> Same question related to the economic and financial interests and value received or contributed from such entities.
>
> Same questions re any salary, distributions, reimbursement or other consideration your clients received, including records of which entities paid such amounts.
>
> Who did your clients communicate with about these issues and are any responsive documents in the possession of agents, advisors, fiduciaries or others under their control, such as accountants, financial planners, trustees, or any type of corporate services organization.
>
> Same question re lenders and potential investors or buyers?
>
> Same question re communications in and between the defendants with each other directly or through their agents. Have you collected responsive documents from such agents and custodians. Will you produce them.
>
> .
>
> What records exist of expenses paid by any entity identified on the organizational charts produced in this action, any related entity, or the Mindgeek or RT Holdings business.

What other entities do your clients hold any financial or economic interest in that is related in any way to any Mindgeek or RT Holdings affiliates or related parties. Where are those entities located. What records do they maintain. Have those records been preserved, collected and searched for responsive documents and by what protocols. Are there any in the possession of any agents identified above.

What have you done to locate, collect, and produce responsive documents concerning the plaintiff, including communications concerning her claims with the media, media relations firms, or other Mindgeek personnel or third-parties.

What have you done to locate, collect, and produce Documents related to your knowledge of or involvement in policies, procedures, or treatment and reporting of CSAM or other non-consensual content, including responding internally or externally via the media, social media or otherwise to such claims, including the claims contained in media reports, this litigation, or in hearings or any other judicial proceeding in which you gave testimony.

What documents evidence your presence and participation in any board or executive management meetings of any entity identified on the organizational charts produced in this action or Mindgeek or RT Holdings related entity.

Can you confirm your clients are not in the possession of copies of reports from Kaplan Hecker (RFP 45) or communications concerning the report or the associated work, including any information provided to or received from that firm.

    If no, were they ever in possession of such materials and if so what happened to them.

What documents exist concerning the resignations of Mr. Antoon and Mr. Tassillo, and their continued roles in the company (directly or indirectly) are directly related and relevant to analyzing their responsibility and roles in controlling the policies and activities that harmed Plaintiff.

    What documents are you willing to produce.

Do your clients possess any documents relevant to the claims set forth in the affidavit of Mr. Andreous.

We also intend to discuss any related Interrogatory Responses to the topics identified above.