Adam B. Korn (SBN 331133)
abkorn@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
2049 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone: (310) 586-3200

Peter A. Chavkin (*Pro Hac Vice*)
pchavkin@mintz.com
Kerime S. Akoglu (*Pro Hac Vice*)
ksakoglu@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
919 Third Avenue
New York, NY 10022
Telephone: (212) 935-3000

Peter A. Biagetti (*Pro Hac Vice*)
pabiagetti@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000

Attorneys for Specially-Appearing Defendant,
COREY URMAN

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENA FLEITES,<br><br>Plaintiff,<br><br>vs.<br><br>MINDGEEK S.A.R.L. a foreign entity; MG FREESITES, LTD., a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; MG PREMIUM LTD, a foreign entity; MG GLOBAL ENTERTAINMENT INC., a Delaware corporation, 9219-1568 QUEBEC, INC., a foreign entity; BERND BERGMAIR, a foreign individual; FERAS ANTOON, a foreign individual; DAVID TASSILLO, a foreign individual; COREY URMAN, a foreign individual; VISA INC., a Delaware corporation; COLBECK CAPITAL DOES 1-10; and BERGMAIR DOES 1-5,<br><br>Defendants. | CASE NO. 2:21-cv-4920-CJC-ADS<br><br>**DISCOVERY MATTER**<br><br>**[Discovery Document: Referred to Magistrate Judge Autumn Spaeth]**<br><br>**SPECIALLY-APPEARING DEFENDANT COREY URMAN'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL RESPONSES TO FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES**<br><br>Date: March 8, 2023<br>Time: 10:00 a.m.<br>Dept.: 6B<br>Judge: Hon. Autumn D. Spaeth |

SPECIALLY-APPEARING DEFENDANT COREY URMAN'S SUPPLEMENTAL
BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

## I. INTRODUCTION

Plaintiff and Specially-Appearing Defendant Corey Urman arrive at today's point in a meaningfully different posture from where the prior hundreds of pages of briefing might otherwise suggest. Because of a lengthy and encouraging meet-and-confer on February 16, Mr. Urman believes that he and Plaintiff can resolve, through continued discussion, most outstanding issues, leaving only a handful of matters for this Court to decide. *See* Akoglu Decl., ¶ 2. Specifically, Mr. Urman:

- has no documents responsive to 14 requests read literally so any dispute as to their proper scope need not be decided;[1]
- has no additional non-duplicative documents responsive to an additional 11 requests when those requests are limited to the scope permitted by the Court; and
- has produced the only responsive document he found relating to the direction and implementation of CSAM policy (thus, addressing the permissible scope of 14 other requests).

This will leave only five issues for the Court to decide.

## II. ARGUMENT

### A. Plaintiff's Motion Regarding 14 RFPs Is Moot Because Mr. Urman Has Already Determined That He Has No Documents Responsive To Those RFPs.

Many of Plaintiff's RFPs seek corporate documents relating to the MindGeek Entity Defendants that one would not expect Mr. Urman to have in his personal possession, and a search of his personal documents confirms that he does not. As his counsel confirmed for Plaintiff, Mr. Urman does not have access to emails he sent or received using only his MindGeek email address, or any other documents that are on MindGeek servers. Therefore, Mr. Urman could only search for documents that are in

---

[1] Following this Court's ruling that, "only contacts occurring prior to the event causing the litigation may be considered," Mr. Urman's review was limited to the timeframe of June 1, 2014 to June 30, 2020 on all of the RFPs. *See* Dkt. 267 (Joint Stip.), at 66.

1
SPECIALLY-APPEARING DEFENDANT COREY URMAN'S SUPPLEMENTAL
BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

his possession, custody, and control. This search confirmed that Mr. Urman does not possess these corporate documents. Akoglu Decl., Ex. A.

While Mr. Urman does *not* concede that any of the following 14 RFPs are appropriately confined to jurisdictional discovery, Mr. Urman has obviated any dispute about them by determining that, based on a reasonable search confined to the relevant time period, he has no documents responsive to the literally read scope of RFP Nos. 1, 8, 13, 14, 15, 17, 19, 23, 24, 25, 27, 29, 30, and 35. Akoglu Decl., Ex. A at 2-4. Thus, Plaintiff's motion to compel these RFPs is moot.

**B.  Plaintiff's Motion Regarding 11 RFPs Is Moot Because Mr. Urman Has Already Determined That He Has No Documents Responsive To The Permissible Scope of Those RFPs.**

Another subset of Plaintiff's requests are so overbroad that they are impossible to respond to, even if they were jurisdictionally relevant. Mr. Urman invited Plaintiff to narrow these requests by providing him with a list of the specific, non-duplicative documents or categories of documents that she seeks, and having not received a response from Plaintiff, Mr. Urman has construed these requests in the ways that properly confine them to relate only to personal jurisdiction.

A good illustration of this category is RFP No. 2, by which Plaintiff seeks "[a]ll documents and communications concerning or relating to [Mr. Urman's] affiliation with, employment by, or ownership of MindGeek, any MindGeek Related Entity, or any MindGeek Tubesites." Read literally, this RFP calls for every document relating to the conduct of MindGeek business – requiring the production of every single document relating to MindGeek that Mr. Urman authored or received. By definition, that wildly exceeds the scope of jurisdictional discovery delineated by the Court. To construe this overbroad request in a way that is consistent with the Court's rulings, Mr. Urman advised Plaintiff that this RFP must be read to request only documents sufficient to reflect Mr. Urman's employment by and ownership interest in any MindGeek entity. Accordingly, Mr. Urman has produced his employment agreements with 9219-1568

Quebec, Inc. ("9219") (the only MindGeek entity that employed Mr. Urman) that are in his possession. Akoglu Decl. ¶ 3.

Similarly, in RFP No. 28, Plaintiff seeks, "[a]ll documents related to the services provided by [9219]." Read literally, this RFP calls for every document Mr. Urman has relating to the business of 9219, which would mean every business related email/text Mr. Urman issued or received insofar as he was employed by 9219. Mr. Urman advised Plaintiff that this RFP must be read to request the service agreement(s) for 9219. Mr. Urman further advised Plaintiff that he does not have the service agreement(s) for 9219 in his possession, and therefore, has no responsive documents for this RFP.

Applying similar narrowing to the following requests (as mentioned, narrowing those requests to jurisdictionally relevant discovery), Mr. Urman informed Plaintiff that he had no other non-duplicative responsive documents for RFP Nos. 2, 3, 7, and no responsive documents for RFP Nos. 6, 9, 16, 20, 21, 22, 26, and 28. Akoglu Decl., Ex. A, at 4-6. Unless Plaintiff can offer a legitimate reason to expand the scope delineated by Mr. Urman, there is nothing further for the Court to decide.

### C. Mr. Urman Produced The Only Responsive Document He Found Relating To The Direction and Implementation of CSAM Policy.

Judge Carney authorized Plaintiff to take discovery regarding the Individual Defendants' roles in directing or implementing MindGeek's CSAM policies. But Plaintiff again has overreached in the following CSAM-related RFPs by requesting documents that go far beyond that Court-ordered limitation. For example, in RFP No. 37, Plaintiff requests, "[a]ll documents and communications identifying all content categories, 'genres,' or similar descriptors MindGeek has included, recommended, or offered to users of its platforms and websites." If RFP Nos. 5, 10, 30, 33-42, 46, 49, and 52 are narrowed to comply with Judge Carney's limitations, Mr. Urman has produced the only responsive document he found relating to the direction and implementation of CSAM policy. Akoglu Decl. ¶ 3. As noted earlier, Mr. Urman does not have access to documents on MindGeek's business server (e.g., his mindgeek.com

emails) and further notes that MindGeek recently has produced to Plaintiff hundreds of documents related to CSAM policy direction and implementation.

### D. Mr. Urman Objects To The Entirety of Five RFPs Because They Seek Documents Beyond The Scope of Jurisdictional Discovery.

If, as hoped from the last meet and confer, Mr. Urman has appropriately addressed all of the above, only five RFPs remain for the Court to evaluate:

1. Plaintiff's request for documents and communications related to "this Action" in RFP No. 4 is beyond the scope of permissible jurisdictional discovery as those documents were created after the date of Plaintiff's alleged claims. *See* Joint Stip., at 76. Indeed, this Court has already struck an identical document request from Plaintiff's proposed letters rogatory to Grant Thornton. *See* Order Granting Plaintiff's Motion for Issuance of Letters Rogatory (deleting "Request 13" from the proposed letters rogatory, which sought "[a]ll documents and communications concerning this Action") (Dkt. 211 at 5-6).

2. Plaintiff's request for all of Mr. Urman's and MindGeek's past and present "jurisdictional contacts" in RFP No. 11 is irrelevant, overbroad, and unduly burdensome and intrusive. *See* Joint Stip., at 74-75. MindGeek has already produced its record of Mr. Urman's business trips to the United States, including (i) the date, (ii) the location, and (iii) the purpose of those trips. Plaintiff has failed to explain either in writing or during meet-and-confer calls why any other information is necessary to determine personal jurisdiction.

3. Plaintiff's request for documents and communications about the personnel or vendors employed by Mr. Urman or MindGeek in the United States in RFP No. 12 is beyond the scope of jurisdictional discovery, overbroad, duplicative, and unduly burdensome. The Court has already ordered MindGeek to produce documents sufficient to identify the entities that employed individuals who were responsible for "moderating, monitoring, formatting, optimizing, filtering, reviewing, screening, or removing content on any MindGeek platform or

4

SPECIALLY-APPEARING DEFENDANT COREY URMAN'S SUPPLEMENTAL
BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

website," and those individuals' locations. Plaintiff has failed to explain why any information beyond what MindGeek will be providing is necessary or separately discoverable.

4. Plaintiff's request for Mr. Urman's "monthly, quarterly, and annual bank and investment statements" in RFP No. 18 is beyond the scope of jurisdictional discovery, intrusive, duplicative, and overbroad, especially because MindGeek has already produced a summary of all the compensation and dividends Mr. Urman received in the relevant time period. *See e.g.*, *Brown v. Dash,* 2021 U.S. Dist. LEXIS 188539, at *8 (C.D. Cal. July 27, 2021) (holding that "plaintiff is not granted broad and unfettered access to banking and financial records of the parties simply by pleading alter ego"); *Perez v. Seafood Peddler of San Rafael, Inc.*, 2013 U.S. Dist. LEXIS 190839, at *17-18 (N.D. Cal. Sep. 10, 2013) (denying request for bank statements for failure to show that the information could not be obtained by less intrusive means).

5. Plaintiff's request for "all contact lists maintained by" Mr. Urman or any of the Individual Defendants is beyond the scope of jurisdictional discovery, intrusive, and overbroad. Plaintiff has not explained how Mr. Urman's contact list relates to personal jurisdiction where those contacts have no discernible connection to alter ego or CSAM policy. To the extent he had contact with someone about CSAM policy, for example, Plaintiff will learn that from the policy documents that have been and are being produced by MindGeek. *See e.g.*, *Bartoli v. Rancho California RV Resort Owners Assn.*, 2020 U.S. Dist LEXIS 22127, at * 9-10 (C.D. Cal. Feb. 7, 2020) (denying request for "all resident files" in order to obtain contact information for potential witnesses as overbroad and unnecessarily invasive of privacy interests of non-parties).

## III. CONCLUSION

Plaintiff's Motion to Compel should be denied in full.

5

SPECIALLY-APPEARING DEFENDANT COREY URMAN'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Respectfully submitted,

Dated: February 22, 2023

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, PC

By *s/ Peter A. Biagetti*
Peter A. Chavkin
Peter A. Biagetti
Kerime S. Akoglu
Adam B. Korn

Attorneys for Specially-Appearing Defendant COREY URMAN

**Local Rule 11-6.1 Certification**

The undersigned, counsel of record for Specially-Appearing Defendant Corey Urman, certifies that this brief contains 1,656 words, which complies with the word limit of L.R. 11-6.1.

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.

By: /s/Peter A. Biagetti
Peter A. Chavkin
Peter A. Biagetti
Kerime S. Akoglu
Adam B. Korn

*Attorneys for Specially-Appearing Defendant Corey Urman*
