# EXHIBIT 10

**Doyle, John G.**

| | |
|---|---|
| **From:** | Doyle, John G. |
| **Sent:** | Saturday, February 11, 2023 6:04 PM |
| **To:** | Yeary, Michelle |
| **Cc:** | Boisvert, Chip; Massey, Kathleen; Tabaksblat, Lauren; Stein, David M.; Dunn, Joshua P.; Bowe, Michael J |
| **Subject:** | Follow Up - RE: Plaintiff's Second Motion to Compel - Fleites v. MindGeek S.A.R.L., et al. No. 21-cv-4920 (C.D. Cal.) |

Michelle,

In addition to the email I just sent you regarding your possession of the individual defendants' data/email/messaging files, I wanted to follow up on the below emails we exchanged on February 6. In addition to answers to Mr. Bowe's questions, in your February 6, email you indicated you were endeavoring to make a production by 2/9 – can you let us know when you think that production will be made?

I'm also following up concerning my email about the redacted material that is prevalent in your productions. For ease of reference, I have included my January 16, 2023 communication to you below. Please let us know when we can expect copies of the unredacted material.

Thank you,

John

**brownrudnick**

**John G. Doyle**
Associate

Brown Rudnick LLP
601 Thirteenth Street NW
Washington, D.C. 20005
T: +1 202.536.1706
M: +1 717.226.0329
jdoyle@brownrudnick.com
www.brownrudnick.com

---

**From:** Doyle, John G.
**Sent:** Monday, January 16, 2023 7:48 PM
**To:** Massey, Kathleen kathleen.massey@dechert.com; Boisvert, Chip Chip.Boisvert@dechert.com; Yeary, Michelle michelle.yeary@dechert.com
**Cc:** Bowe, Michael J MBowe@brownrudnick.com; Stein, David M. DStein@brownrudnick.com; Tabaksblat, Lauren LTabaksblat@brownrudnick.com; Dunn, Joshua P. JDunn@brownrudnick.com
**Subject:** RE: Following Up

Kathleen, Chip, and Michelle,

1

Hello. You have produced a number of documents that contain redactions for which we would like to receive an unredacted copy, including:

1. The tax filings found at MindGeek_Fleites_00006118 thru 6848;
2. Documents containing domain names and related trademark information (*e.g.* MindGeek_Fleites_00000293);
3. Documents containing the names/identities of collateral, participating party, and/or origination agents that are part of agreements, contracts, etc. (e.g. MindGeek_Fleites_00002361; MindGeek_Fleites_00002514; MindGeek_Fleites_00002725);
4. Documents containing production costs (MindGeek_Fleites_00003019 – Q1 2016 Production costs);
5. Materials, the majority of which contain fully redacted pages (*e.g.* MindGeek_Fleites_00003824; MindGeek_Fleites_00004663).

Please let us know if you agree, and, if so, by when you can send them to us. We will be available anytime if any of these warrant a specific discussion.

Thank you,

John

------------------------------------------------------------------------------------------------------------------------------

**From:** Bowe, Michael J <MBowe@brownrudnick.com>
**Sent:** Monday, February 6, 2023 7:20 PM
**To:** Yeary, Michelle <michelle.yeary@dechert.com>
**Cc:** Doyle, John G. <JDoyle@brownrudnick.com>; Boisvert, Chip <Chip.Boisvert@dechert.com>; Massey, Kathleen <kathleen.massey@dechert.com>; Tabaksblat, Lauren <LTabaksblat@brownrudnick.com>; Stein, David M. <DStein@brownrudnick.com>; Dunn, Joshua P. <JDunn@brownrudnick.com>
**Subject:** Re: Plaintiff's Second Motion to Compel - Fleites v. MindGeek S.A.R.L., et al. No. 21-cv-4920 (C.D. Cal.)

Michelle, it not possible to disagree with a question. Please provide answers to my questions.

Also, please don't mischaracterize our plain position. We have no interest in having issues that are resolved before the Court. Our point is that your positions on the meet and confer and in your email amount to a refusal to produce the core of the responsive documents we are seeking. Therefore, irrespective of whether you are willing to again produce a few more documents, a motion is necessary because you refuse to produce most and certainly not "all" of the necessary documents as you incorrectly characterized your position as proposing in your email earlier.

Finally, the fact you refuse to meet and confer tomorrow on our outstanding deficiency letter even though you are available, and refuse to meet and confer for an entire 10 days, further confirms you are only interested in delay and not good faith efforts to resolve matters without court intervention.

Sent from my iPhone

On Feb 6, 2023, at 6:51 PM, Yeary, Michelle <michelle.yeary@dechert.com> wrote:

**CAUTION: External E-mail. Use caution accessing links or attachments.**

Michael – we disagree with your statements below and given your positions we do not believe a meet and confer would be productive. Our offer to meet and confer tomorrow was limited to the issues raised in your motion as our response is <u>due tomorrow</u> and we were hoping to reach agreement on several of the disputed issues. As you want all of these issues before the court, including ones that we believe are resolved, we will use our time tomorrow to prepare our response. We are not prepared to meet and confer on the issues raised in your letter sent on Friday and we will offer you dates and times of availability within the 10-day period per the local rules.

Sent from my iPhone

> On Feb 6, 2023, at 5:52 PM, Bowe, Michael J <MBowe@brownrudnick.com> wrote:

[EXTERNAL EMAIL]

> Michelle, there is nothing we would have welcomed or still would welcome more than a real meet and confer effort. However, when you continue to say things like you have agreed to produce "all" the documents we are moving on when the plain words of your written commitment are quite the opposite, we are unfortunately far from such a process.
>
> As I said earlier, it was clear on our meet and confer call and from your email in response to our motion that the Mindgeek Defendants are only willing to selectively produce certain limited responsive information that they are carefully curating. That is simply a non-starter for us, is not what the Federal Rules require, and ignores the Judge's very clear admonition at the end of the last conference.
>
> I have summarized below illustrative examples of how your proposal falls short of producing "all" of what our requests seek, what we believe the rules require, and what Judge Carney Ordered. Please provide your responses so that we can be sure we do not misunderstand your position. However, as I think you have twice now made your position clear, I am not prepared at this time to agree to adjourn the current schedule under the rules.
>
> Since we need to meet and confer on our deficiency letter from last week anyway, we can meet and confer tomorrow at 2 pm on that and if there is something to discuss on

this motion based on your responses we can do that too in time for tomorrow's filing deadline.

My responses and questions are in bold below.


a. Request: complete set of all agreements in and between the owners, investors, lenders, executives, and MindGeek, deal files related to those transactions and agreements, and the governing articles and by-laws for the relevant MindGeek entities.

1. We will produce the complete set of transactional documents for the 2013 and 2018 corporate reorganizations and refinancings. There are provisions in these documents that require the parties to the agreements to obtain prior written consent before we can disclose the documents. We are reaching out to get that authorization as soon as possible.
2. Defendants have already produced the articles of incorporation and by-laws, or their foreign equivalents, for 9219-1568 Quebec, Inc., MindGeek USA, MindGeek Global Entertainment, MG Freesites Ltd, MG Premium Ltd, and MindGeek S.a.r.l., and we agree to produce them for RT Holdings S.a.r.l. If there are other entities you are requesting, please let us know and we will consider a reasonable request if the entity is reasonably relevant to jurisdictional discovery.

**MJB – First, the request is for all agreements between owners, investors, lenders, executives, and Mindgeek entities and the associated deal files for those agreements. All and any of such documents are necessary to fully understand the legal relationship between the parties identified on the corporate structure charts and shareholder agreement you have produced. You are limiting your response to two specific transactions and what you are calling transaction documents Will you agree to produce all agreements in and between these persons and entities as well as the deal files for the participants in that transaction without qualification?**
**Will you agree to include all such documents for RT Holdings, its parents, and subsidiaries? Will you agree to produce any such agreements between RT Holdings and its subsidiaries on the one hand and any Mindgeek entity on the other?**

**Second, please provide us with the provision language that restricts your ability to produce certain documents. If these were being withheld on this basis, that should have been disclosed long ago. We cannot find any objection or other disclosure on this ground in your discovery responses. At this late stage, since you do not have consent and cannot assure us you will get it, we will need a court order.**

**Third, at a minimum the relevant corporate formation and governance documents in 2. would include those for the corporate tree above each of those entities and each of the Mindgeek defendants to the parent and ultimate beneficial owners. Will you agree to produce these documents?**

**Fourth, since you have not yet disclosed where the revenues earned from the defendant operating companies goes, there may be other entities for which such documents become necessary.**

b. All due diligence files, presentations, or the equivalent prepared in connection with any actual or contemplated financing, investment, purchase, reorganization, or other corporate transaction or audit.

1. We are willing to produce Confidential Information Memoranda, if any, between 2014 and 2020.

**MJB- This offer is not remotely close to producing "all" responsive documents. Nor do you represent that no responsive documents otherwise exist, and any such representation would not be credible. You also exclude responsive information that would exist from the original 2013 transaction or the marketing of the company for sale after 2020. Regardless of whether it was 2013 or 2022, and regardless of whether the nature of the actual or proposed transaction, or whether it occurred or not, the due diligence and marketing documents concerning each would address directly how the company is structured and operated financially and otherwise. Your offer to produce a summary document only is not an offer to produce "all" responsive information or acceptable. Will you agree to produce all responsive documents?**

c. All ownership and corporate organizational charts, and contract abstracts, summaries, and memoranda, explaining or depicting the identities and legal and economic relationships of and between the direct and indirect owners, investors, lenders, and any MindGeek entity, affiliates, and related parties.

1. In addition to producing the reorganization documents noted above, we can confirm that there are no additional organizational charts depicting the relationships between MindGeek entities to produce for 2014-2020.
2. We will also produce a summary document that is used by the company to explain the flow of money within the corporate structure.

**MJB- First, there is no basis for excluding 2013, the year the MBO occurred, or post-2020, since regardless of when a document was created if it is depicting the organization after 2013 it would be relevant and responsive.**

**Second, far from producing "all" responsive documents, you ignore the requests for "contract abstracts, summaries, and memoranda explaining the legal relationship between and among the various identified entities in terms of their legal, financial, and other rights under all their operative agreements, as well as in practice. There is no basis for limiting your production to a single "summary document" that you select to the exclusion of all other summaries and responsive documents.**

d. All management and operational organizational charts, rosters, and memoranda depicting and explaining the management and operational infrastructure of the core business functions for each MindGeek entity such as finance, accounting, IT, website operation and infrastructure (including the servers), moderation, compliance, legal, and media and public relations.

1. We believe this request has already been ruled on by Judge Spaeth and further rosters and infrastructure documents are not required to be produced. We will produce the information about the locations of employees and servers the court ordered the MindGeek entity defendants to produce.

5

**MJB- We disagree. Judge Spaeth only considered the issue of the IT and servers. How the defendant Mindgeek Entities and their relevant alter ego affiliates are operated and managed is central to the question of alter ego. For example, a critical question is whether all of them are run and operated by all the same people. Will you agree to produce these organizational charts concerning the management and operation of the business?**

**MJB- Moreover, we do not agree with your interpretation that Judge Spaeth's order only requires the locations of employees as opposed to the identities of their employers and those paying their salaries. We say more about this issue below.**

e.    Documents reflecting which MindGeek entities employed and paid the management and personnel operating the business and paid the costs associated with the business.

1. We also believe this request has already been largely ruled on by Judge Spaeth. We will produce the information about the locations of entities the court ordered the MindGeek entity defendants to produce.
2. The MindGeek Entity Defendants have already produced the employment agreements for Feras Antoon (CEO), David Tassillo (COO), and Corey Urman (Director of Product Management). We can confirm that they were all employed by the 9219 entity.
3. Operating costs are covered in the financial reporting packages, which as noted below we are willing to provide additional versions of.

**MJB- As you know, we maintain that employees regularly received compensation from multiple Mindgeek entities who were not their formal employer. This would constitute a significant co-mingling of finances and lack of corporate formalities. Judge Spaeth has Ordered that you produce documents showing who employed personnel, which is a fact issue that depends on facts such as with whom each individual had an employment agreement with, who they were paid by, and who was directing them. Absent a commitment to produce documents sufficient to show these things, we will need Court intervention.**

**MJB- Again, providing us quarterly and annual summary documents concerning the payment of costs is not the production of "all" requested or relevant documents and not even the most probative evidence. The actual data and information underlying those reports is responsive and primary evidence. Moreover, the Judge made clear at the end of the last conference that such summary documents were not sufficient to determine the alter ego issue. Will you agree to produce the primary financial accounting information reflecting the flow of money for operating costs?**

Financial Documents:

a.    The information from MindGeek's accounting and financial reporting systems related to all profit and loss and balance sheet categories, including revenues, expenses, assets, liabilities, inter-company transactions, as well as all dividends and distributions.
b.    Financial reports prepared for, and associated information given to, senior management, directors or their equivalent, lenders, or outside consultants, accountants, or other third parties.

1. The annual reporting packages prepared for use with third parties were among the first documents produced to Plaintiff.  We are willing to produce quarterly reporting packages for the relevant years as well.  We will also produce quarterly and annual reporting packages that were prepared for senior executives.  Those packages include information for every active MindGeek entity, for each business unit and the internal packages include information specific to the individual tubesites.
2. We will also produce a document summarizing dividend information

**MJB- Again, we do not agree that you get to curate which responsive information you produce.  While everything you have agreed to produce is responsive and should be produced, it excludes other equally responsive information without reason or explanation.   Will agree to produce all financial reporting packages for any of the listed audiences?**

**MJB- Producing "a document summarizing dividend information" is about as far away from producing "all responsive information" as is possible.  Multiple requests seek the actual data concerning the finances and dividends as kept in the normal course, which is both the primary and most probative evidence on these issues, necessary to test any summary documents you have selectively produced, and separately relevant on the issue of corporate formalities.  Will you agree to produce all financial information concerning the payment**
**of dividends and the other financial information requested in prior requests as kept in the normal course?**

c.        All documents related to the reorganizations, inter-company and related-party transactions, contracts, accounting, and third-party transfer pricing analysis as described in the Andreou Declaration.

1. As noted above, we will produce the deal documents surrounding the 2013 and 2018 reorganizations and refinancing.
2. We will also produce the transfer pricing studies and additional documents related to related-party transactions.

**MJB- We incorporate our responses above concerning limiting the documents to the 2013 and 2018 transactions, and further note that the Andreou Affidavit made broad sweeping claims that went far beyond those two transactions.  All the transactions in the categories he was referring must be identified, their contracts and terms he said existed and were memorialized disclosed, and the associated transfer pricing studies and actual internal financial transfer pricing accounting produced.  All such information is direct evidence of the truth or falsity of the claims he made in support the jurisdictional defense.  Will you agree to produce all such information?**

In addition, we will be producing documents that reflect communications involving the individual defendants and their alleged direction of the policies/procedures regarding the handling of CSAM on MindGeek websites.

**MJB- This is not the subject of this motion but is the subject of our separate deficiency letter.**

From: Yeary, Michelle <michelle.yeary@dechert.com>
Sent: Monday, February 6, 2023 12:57 PM
To: Bowe, Michael J <MBowe@brownrudnick.com>

7

**Cc:** Doyle, John G. <JDoyle@brownrudnick.com>; Boisvert, Chip <Chip.Boisvert@dechert.com>; Massey, Kathleen <kathleen.massey@dechert.com>; Tabaksblat, Lauren <LTabaksblat@brownrudnick.com>; Stein, David M. <DStein@brownrudnick.com>; Dunn, Joshua P. <JDunn@brownrudnick.com>
**Subject:** RE: Plaintiff's Second Motion to Compel - Fleites v. MindGeek S.A.R.L., et al. No. 21-cv-4920 (C.D. Cal.)

> **CAUTION: External E-mail. Use caution accessing links or attachments.**

Michael – we are confused by your response when our email states that we will either be producing the documents you requested, or complying with the court's February 3 order, or the documents you seek do not exist.  But if that is not your reading of our email, there is no reason to meet and confer and we can respond to your motion identifying to the court all the things we are willing to produce.  We thought it made sense to try to reach an agreement before burdening the court on whole categories of documents that are no longer at issue.  That said, we are happy to meet and confer on the issues raised in your motion to compel.  However, given the timing of your availability tomorrow and when our response is due, we would propose to provide our response on Wednesday with the understanding that if you are committed to a hearing on March 1, we will jointly request that despite the filing being 1 day short of the required notice period. Also, we are not speaking for the Individual Defendants who we understand have already communicated to you their unavailability on March 1.  We were simply suggesting that for the convenience of the court and the parties, given many overlapping issues,  it might make sense to move the hearing to a day when all were available.

Please let us know as soon as possible if you want to have the meet and confer with the condition noted above.  We are likewise available after 1 tomorrow.

**Michelle Hart Yeary**
Counsel

**Dechert LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
+1 609 955 3277 Direct
+1 609 471 2434 Mobile
michelle.yeary@dechert.com
dechert.com

Follow Dechert:  Facebook  /  Twitter  /  LinkedIn

**From:** Bowe, Michael J <MBowe@brownrudnick.com>
**Sent:** Monday, February 6, 2023 11:21 AM
**To:** Yeary, Michelle <michelle.yeary@dechert.com>
**Cc:** Doyle, John G. <JDoyle@brownrudnick.com>; Boisvert, Chip <Chip.Boisvert@dechert.com>; Massey, Kathleen <kathleen.massey@dechert.com>; Tabaksblat, Lauren <LTabaksblat@brownrudnick.com>; Stein, David M. <DStein@brownrudnick.com>; Dunn, Joshua P. <JDunn@brownrudnick.com>
**Subject:** Re: Plaintiff's Second Motion to Compel - Fleites v. MindGeek S.A.R.L., et al. No. 21-cv-4920 (C.D. Cal.)

[EXTERNAL EMAIL]

Michelle, as was the case on our meet and confer call, your email is pretty unequivocal in its position that the Mindgeek Entities are not willing to make a production in any of these categories that would be remotely sufficient to avoid motion practice. Accordingly, we do not think it makes sense to delay further.

That said, if you would like to discuss this further, we are prepared to meet and confer tomorrow as you have indicated you are unavailable to meet and confer today. I have a deposition in the morning but we will make ourselves available anytime after 1 into the evening.

Since you are communicating messages for the Individual Defendants, please let them know they are welcome to meet and confer further assuming anything about their position about not producing documents has changed.

Thanks.
Sent from my iPhone

> On Feb 6, 2023, at 10:06 AM, Yeary, Michelle <michelle.yeary@dechert.com> wrote:
>
> CAUTION: External E-mail. Use caution accessing links or attachments.
>
> John – with respect to Plaintiff's Second Motion to Compel, many of the categories of documents are ones that we discussed during our last meet and confer and which MindGeek was taking under consideration. Now that we have reviewed the 8 categories of documents that you ask the court to compel, we believe that for almost all they have either been produced or we are willing to produce them. We are endeavoring to make a production by Thursday 2/9 and would request that you defer your motion by one week to allow us to make the production and for you to review the documents which may either moot the motion in its entirety or substantially narrow the issues for the court to decide. We also believe that Judge Spaeth's ruling on Friday impacts some of your requests. I am setting out below what we are willing to produce for each category in your motion. Based on this we would request that the time to respond to your motion be extended until at least February 14 as we hope that if it still needs to be filed it at least will need to be revised. Further, we understand that lead counsel for several of the individual defendants are not available for a hearing on March 1. Therefore, it appears that extending the response deadline and hearing date for all parties makes sense for numerous reasons. Please let us know as early as possible today whether you consent to the extension.

Alter Ego Documents:

a. Request: complete set of all agreements in and between the owners, investors, lenders, executives, and MindGeek, deal files related to those transactions and agreements, and the governing articles and by-laws for the relevant MindGeek entities.

1. We will produce the complete set of transactional documents for the 2013 and 2018 corporate reorganizations and refinancings. There are provisions in these documents that require the parties to the agreements to obtain prior written consent before we can disclose the documents. We are reaching out to get that authorization as soon as possible.
2. Defendants have already produced the articles of incorporation and by-laws, or their foreign equivalents, for 9219-1568 Quebec, Inc., MindGeek USA, MindGeek Global Entertainment, MG Freesites Ltd, MG Premium Ltd, and MindGeek S.a.r.l., and we agree to produce them for RT Holdings S.a.r.l. If there are other entities you are requesting, please let us know and we will consider a reasonable request if the entity is reasonably relevant to jurisdictional discovery.

b. All due diligence files, presentations, or the equivalent prepared in connection with any actual or contemplated financing, investment, purchase, reorganization, or other corporate transaction or audit.

1. We are willing to produce Confidential Information Memoranda, if any, between 2014 and 2020.

c. All ownership and corporate organizational charts, and contract abstracts, summaries, and memoranda, explaining or depicting the identities and legal and economic relationships of and between the direct and indirect owners, investors, lenders, and any MindGeek entity, affiliates, and related parties.

1. In addition to producing the reorganization documents noted above, we can confirm that there are no additional organizational charts depicting the relationships between MindGeek entities to produce for 2014-2020.
2. We will also produce a summary document that is used by the company to explain the flow of money within the corporate structure.

d. All management and operational organizational charts, rosters, and memoranda depicting and explaining the management and operational infrastructure of the core business functions for each MindGeek entity such as finance, accounting, IT, website operation and infrastructure (including the servers), moderation, compliance, legal, and media and public relations.

1. We believe this request has already been ruled on by Judge Spaeth and further rosters and infrastructure documents are not required to be produced.  We will produce the information about the locations of employees and servers the court ordered the MindGeek entity defendants to produce.

e.     Documents reflecting which MindGeek entities employed and paid the management and personnel operating the business and paid the costs associated with the business.

1. We also believe this request has already been largely ruled on by Judge Spaeth.  We will produce the information about the locations of entities the court ordered the MindGeek entity defendants to produce.
2. The MindGeek Entity Defendants have already produced the employment agreements for Feras Antoon (CEO), David Tassillo (COO), and Corey Urman (Director of Product Management).  We can confirm that they were all employed by the 9219 entity.
3. Operating costs are covered in the financial reporting packages, which as noted below we are willing to provide additional versions of.

Financial Documents:

a.     The information from MindGeek's accounting and financial reporting systems related to all profit and loss and balance sheet categories, including revenues, expenses, assets, liabilities, inter-company transactions, as well as all dividends and distributions.
b.     Financial reports prepared for, and associated information given to, senior management, directors or their equivalent, lenders, or outside consultants, accountants, or other third parties.

1. The annual reporting packages prepared for use with third parties were among the first documents produced to Plaintiff.  We are willing to produce quarterly reporting packages for the relevant years as well.  We will also produce quarterly and annual reporting packages that were prepared for senior executives.  Those packages include information for every active MindGeek entity, for each business unit and the internal packages include information specific to the individual tubesites.
2. We will also produce a document summarizing dividend information

c.     All documents related to the reorganizations, inter-company and related-party transactions, contracts, accounting, and third-party transfer pricing analysis as described in the Andreou Declaration.

1. As noted above, we will produce the deal documents surrounding the 2013 and 2018 reorganizations and refinancing.

11

2. We will also produce the transfer pricing studies and additional documents related to related-party transactions

In addition, we will be producing documents that reflect communications involving the individual defendants and their alleged direction of the policies/procedures regarding the handling of CSAM on MindGeek websites.

Regards,
Michelle

**Michelle Hart Yeary**
Counsel

**Dechert LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
+1 609 955 3277 Direct
+1 609 471 2434 Mobile
michelle.yeary@dechert.com
dechert.com

Follow Dechert: Facebook / Twitter / LinkedIn

---

**From:** Doyle, John G. <JDoyle@brownrudnick.com>
**Sent:** Wednesday, February 1, 2023 12:15 AM
**To:** Boisvert, Chip <Chip.Boisvert@dechert.com>; Massey, Kathleen <kathleen.massey@dechert.com>; Yeary, Michelle <michelle.yeary@dechert.com>
**Cc:** Tabaksblat, Lauren <LTabaksblat@brownrudnick.com>; Bowe, Michael J <MBowe@brownrudnick.com>; Stein, David M. <DStein@brownrudnick.com>; Dunn, Joshua P. <JDunn@brownrudnick.com>
**Subject:** Plaintiff's Second Motion to Compel - Fleites v. MindGeek S.A.R.L., et al. No. 21-cv-4920 (C.D. Cal.)

[EXTERNAL EMAIL]

Counsel,

Attached, please find Plaintiff's portion of the Rule 37-2 Joint Stipulation concerning her Second Motion to Compel Defendant MindGeek Entities' Responses to Plaintiff's First Request for Production of Documents, along with the referenced exhibits. Please provide the information you would like included in the Joint Stipulation no later than February 7, 2023.

Thank you,

John