Michael J. Bowe
(admitted *pro hac vice*)
mbowe@brownrudnick.com
Lauren Tabaksblat
(admitted *pro hac vice*)
ltabaksblat@brownrudnick.com
**BROWN RUDNICK LLP**
7 Times Square
New York, NY 10036
Telephone:  (212) 209-4800
Facsimile:   (212) 209-4801

Attorneys for Plaintiff

DAN MARMALEFSKY (CA SBN 95477)
DMarmalefsky@mofo.com
Morrison & Foerster LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: 213-892-5200
Facsimile: 213-892-5454

RONALD G. WHITE
(admitted *pro hac vice*)
rwhite@wmhlaw.com
Walden Macht & Haran LLP
250 Vesey Street
New York, NY 10281
Tel: (212) 335-2387
Fax: (212) 335-2040
Attorneys for Defendant Bernd Bergmair

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| SERENA FLEITES, <br><br> Plaintiff, <br><br> v. <br><br> MINDGEEK S.A.R.L.; MG FREESITES, LTD; MINDGEEK USA INCORPORATED; MG PREMIUM LTD.; MG GLOBAL ENTERTAINMENT INC.; 9219-1568 QUEBEC, INC.; BERND BERGMAIR; FERAS ANTOON; DAVID TASSILLO; COREY URMAN; VISA INC.; COLBECK CAPITAL DOES 1-5; BERGMAIR DOES 1-5 <br><br> Defendants. | CASE NO. 2:21-CV-04920-CJC-ADS <br><br> **DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE AUTUMN D. SPAETH** <br><br> **JOINT SUPPLEMENT – MOTION TO COMPEL DEFENDANT BERGMAIR'S RESPONSES TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES** <br><br> Jurisdictional Discovery Cutoff: May 1, 2023 |

CASE NO. 21-CV-04920-CJC-ADS

**JOINT SUPPLEMENT PURSUANT TO THE COURT'S MARCH 8, 2023 ORDER**

# TABLE OF CONTENTS

I. PLAINTIFF'S POSITION ............................................................................... 4

II. DEFENDANTS' POSITION .......................................................................... 6

    A. **Requests No. 1: Documents identifying Mr. Bergmair's ownership and economic interests in any MindGeek related entity or business (RFP 7)** ........................................................ 7

    B. **Request No. 2: Documents reflecting all monies invested in, or received from, any MindGeek related entity and the related contract or agreement under which those payments and distributions were made (RFP 3, 7)** ........................................... 12

    C. **Requests No. 3: Documents identifying any entity not consolidated on MindGeek-produced financial statements in which Mr. Bergmair holds an interest that does business with any MindGeek entity or business (RFP 7)** ........................................ 15

III. CONCLUSION ............................................................................................ 15

    A. **Plaintiff's Conclusion** ............................................................................ 15

    B. **Defendant's Conclusion** ........................................................................ 16

# JOINT SUPPLEMENT

## I. PLAINTIFF'S POSITION

Throughout this proceeding, Defendant Bergmair has taken the position that because the MindGeek Entity Defendants ("MGED") were producing documents concerning his ownership and economics in MindGeek, he need not participate in discovery with respect to the same topic. Accordingly, the Plaintiff moved to compel him to produce various categories of responsive documents, and in accordance with the Court's instructions after the last conference sent him a letter again identifying the information Plaintiff was seeking. (Exhibit V) After several meet and confers, the parties resolved some issues but did not resolve their dispute as to documents related to his ownership and economic interest in MindGeek and its business.

With respect to these categories, Defendant Bergmair initially maintained that he possessed not a single document concerning any of these topics other than those possessed and produced by MindGeek and that he should not have to produce those. The representation that neither the majority owner of a privately held multi-billion-dollar business, nor any of his financial advisors or accountants, possessed a single document concerning those ownership interests, the amounts of monies he received from those interests, how those payments were calculated, and what amounts he would be due in the future is facially absurd.

When pressed to defend this representation, counsel for Defendant Bergmair this week admitted that Defendant Bergmair does have both financial and business managers and accountants, but that he had not collected any documents from them to produce in this action. Counsel represented that upon further investigation Defendant Bergmair personally had a single spreadsheet he requested from MindGeek listing all the distributions he had received, and that he would produce that. He also represented that Defendant Bergmair personally possessed a

spreadsheet listing amounts through late 2018 that a company he owned, Bulknet, had received as well as several invoices from Bulknet to MindGeek subsequent to the period covered by the spreadsheet.  He committed to producing those as well but represented that there was no contract or other documentation related to these payments or any other documents related to this entity doing business with MindGeek.

Pressed as to how a person in Defendant Bergmair's position -- whose economic interests in the MindGeek business appear from the documents produced by MindGeek to consist of royalties paid to Defendant Bergmair through his company RT Holdings S.a.r.l. -- not have documents reflecting what those royalty amounts were, how they were calculated, and periodic analysis of whether those royalty calculations by his MindGeek counter-party were correct, counsel represented on two consecutive days that this was credible because the Shareholder Agreement between the owners of MindGeek S.a.r.l. and RT Holdings provided that the amounts distributed to these parties must equal a fixed economic interest agreed upon in written agreement among the parties irrespective of the amount of actual royalties due to Defendant Bergmair's RT Holdings under the existing licensing agreement.

Counsel, however, was unwilling to collect and search for relevant documents from Defendant Bergmair's financial advisors and accountants or other custodians who managed his financial interests.  He was also unwilling to search Defendant Bergmair's electronic communications for reports and other information on his interests.  Finally, the morning this submission was due, counsel walked back the representation he had made as to why it was reasonable to believe Defendant Bergmair possessed no documents concerning the royalties paid to his company RT Holdings because the economics paid out of MindGeek are paid out according to the Shareholder Agreement and not the agreement purporting to give RT Holdings royalty rights in MindGeek's business.  Although counsel then represented that he

1 would have to check with his client again about this representation and the existence
2 of any responsive documents, including whether responsive documents were
3 maintained by his financial and accounting advisors and whether they are reflected
4 on his tax filings, he could not reach his client in time to avoid this filing.

Plaintiff has endeavored in good faith to resolve this dispute without the Court's intervention but now must seek an Order compelling Defendant Bergmair to collect, search, and produce documents in the possession of Defendant Bergmair or that of his financial and business advisers concerning his economic interest in MindGeek, including (a) contracts and agreements governing such interests; (b) records of amounts he, RT Holdings, Bulknet or any other entities in which he holds any economic interest received from Mindgeek; (c) records and documents concerning the amount of royalties or other monies paid to him through RT Holdings or otherwise, including records showing the basis and method for the calculation of such royalty payments; and (d) records identifying any entities in which he holds an interest that do business with MindGeek, amounts paid to those entities, and the basis and method for the calculations of such payments.

The document requests to which this relates include RFP Nos. 2, 3, 7, 8, 18.

## II.    DEFENDANTS' POSITION

Mr. Bergmair submits his portion of this stipulation without having seen Plaintiff's portion.  The Court ordered the parties at the March 8 hearing to submit a "joint stipulation" by March 31 and noted that "I will leave it to you guys to determine timeframe and how much time you give each other."  *See* White Decl., Ex. U (March 8 Hearing Tr.) at 105.  In our March 28 meet and confer, Mr. Bergmair's counsel asked when Plaintiff would provide her portion of the joint submission for his review. Plaintiff's counsel refused to provide it in advance and indicated that doing so was not to Plaintiff's advantage.  On the call, Mr. Bergmair's counsel read aloud to Plaintiff's counsel the above-quoted direction from the Court from the March 8

**JOINT SUPPLEMENT PURSUANT TO THE COURT'S MARCH 8, 2023 ORDER**

hearing transcript but Plaintiff refused to modify her position. As a result of Plaintiff's position, the parties were unable to sharpen the issues presented to the Court in the typical fashion and Mr. Bergmair does not even know if his portion of this "joint" statement fully responds to arguments that Plaintiff refused to share. Indeed, despite requests from Mr. Bergmair's counsel, Plaintiff did not even inform him of the specific document requests she intended to move on until 10:48 p.m. EDT on the date this submission was due. *See* White Decl. at ¶ 6.

At the conclusion of the March 8, 2023 hearing on Plaintiff's Motion to Compel, the Court directed the parties to meet and confer to try to further narrow the disputed issues between them. *See* White Decl., Ex. U (March 8, 2023 Hearing Tr.) at 103-04. On March 13, 2023, in a purported attempt to narrow her discovery requests, which the Court described as "very overbroad" (*id*. at 104), Plaintiff provided Mr. Bergmair with a letter containing eight specific requests for which she sought discovery. *See* White Decl., Ex. V (Plaintiff's March 13 Letter to Bergmair Counsel) at 1-3. She now seeks to enforce three of them. On March 16, 2023, the parties met and conferred by telephone to discuss the requests in the March 13 Letter. White Decl. at ¶ 5. Thereafter, in a March 28, 2023 letter, Mr. Bergmair provided his written position with respect to each of the issues. The parties subsequently met and conferred on March 28, 29, 30 and 31, 2023. *Id*. Mr. Bergmair agreed to provide Plaintiff with documents responsive to Request Nos. 1 through 3 of the March 13 Letter, which she now seeks to enforce. However, Plaintiff will simply not take yes for an answer, and apparently seeks still more documents.

### A. Requests No. 1: Documents identifying Mr. Bergmair's ownership and economic interests in any MindGeek related entity or business (RFP 7).

Plaintiff has refused to narrow this request in a reasonable fashion. Plaintiff already has documents and information identifying Mr. Bergmair's ownership and

economic interests in MindGeek. First, in September 2022, in verified responses to Plaintiff's interrogatories, Mr. Bergmair provided the exact percentage of his economic interest in MindGeek, including identifying the entities through which he owned his MindGeek interest and of which he was the ultimate beneficial owner. *See* February 8. 2023 Doyle Decl., Exhibit 4 (Response to ROG No. 1.) Second, MindGeek has produced numerous agreements, organizational charts and other documents that set forth Mr. Bergmair's ownership and economic interest in the company. *See, e.g.*, February 8, 2023 White Decl., Ex. O (11/30/22 M. Yeary Decl.). Plaintiff thus already knows exactly what Mr. Bergmair's ownership and economic interests in MindGeek are. Indeed, Plaintiff's portion of the joint stipulation she submitted months ago in connection with this motion specifically sets forth Mr. Bergmair's economic interest in the company. *See* Joint Stip. (ECF No. 264) at 3-4, 44. Nonetheless, Plaintiff insists that Mr. Bergmair produce additional documents to establish facts she already knows.

However, in the interests of resolving this issue, Mr. Bergmair will produce documents sufficient to identify his ownership or economic interests in MindGeek. These documents confirm the information Plaintiff has already received. Among the documents that Mr. Bergmair will produce is the Shareholders Agreement (and its amendment) entered into at the time of Mr. Bergmair's initial investment in MindGeek. This agreement is the legal document establishing those interests, and it lays out in three simple charts the shareholding interests and economic interests of Mr. Bergmair's entities and those of the other shareholders. Two charts, as shown below in redacted form, specify the ownership interests of the parties in the two parent entities of MindGeek[1]:

---

[1] If the Court wishes, Mr. Bergmair will submit the unredacted document to the Court under seal.

## SCHEDULE 1

## INITIAL SHAREHOLDINGS

**Parent Shareholdings**

| Shareholder | Number and Class of Parent Shares |
|---|---|
| ▇▇▇ | ▇ Parent Class X Shares |
| ▇▇▇ | ▇ Parent Class X Shares |
| ▇ | ▇ Parent Class Y Share |
| ▇ | ▇ Parent Class X Shares |

**RT Holding Shareholdings**

| Shareholder | Number and Class of RT Shares |
|---|---|
| ▇▇▇ | ▇ RT Class A Shares |
| ▇ | ▇ RT Class B Shares |
| ▇▇▇ | ▇ RT Class C Shares |
| ▇▇▇ | ▇ RT Class B Shares |
| ▇ | ▇ RT Class B Share |

*See* White Decl., Ex. W.

Another chart, also shown in redacted form, reflects the economic interest of the shareholders:

**SCHEDULE 2**

**INITIAL ECONOMIC INTEREST**

| Shareholder | Economic Interest |
|---|---|
| ███████ | ██% |
| ██ | █% |
| ████ | █% |
| ██ | █% |
| █████ | ██% |

*See* White Decl., Ex. W. This agreement governs the distributions to be made to the shareholders, including Mr. Bergmair, and specifies that they are to be made in accordance with the shareholders' specified economic interests.

Mr. Bergmair will also produce the Contribution and Subscription Agreement which reflects the precise assets and funds he invested in MindGeek and the company shares issued to him. Attachments to this agreement include a PowerPoint summary prepared by an accounting firm describing the transaction, including Mr. Bergmair's investment in the company, literally in a step-by-step fashion, as well as a similar summary that identifies, for each step, the underlying corporate document, resolution or agreement documenting that step. Mr. Bergmair will also produce the Investment Incentive Fee Agreement (and its amendment), which provides for the payment of certain fees to his entities in exchange for his investment in MindGeek. In addition, corporate organizational charts, which Mr. Bergmair will produce, show MindGeek's corporate structure over the entire relevant period, and include the precise number of shares and percentage ownership interest of Mr. Bergmair in each entity. Mr. Bergmair will also produce MindGeek's consolidated annual financial statements and the annual and quarterly financial reporting packages that reflect its financial performance during the relevant period.

All of this sufficiently "identifies" Mr. Bergmair's "ownership and economic interests" as requested in Plaintiff's first request. At the most fundamental level, the documents Mr. Bergmair will produce identify how many shares Mr. Bergmair owns in MindGeek, what his share of the profits is, how much he invested in exchange for his shares in the company and the primary internal financial reports he received regarding the business's performance. But Plaintiff insists that this is not enough. Instead, Plaintiff has returned to the maximalist position that the Court rejected at the March 8 hearing that, as a shareholder, virtually every piece of paper in his possession related to MindGeek reflects his ownership and economic interest. Any corporate shareholder in a business of MindGeek's size has many documents related to the company; a request for documents to "identify" a particular fact must have a reasonable limit, and here, the proposed production sufficiently explains Mr. Bergmair's interest in the company. Plaintiff's original document request was ostensibly narrowed from one seeking "all documents" to the one in her March 13 Letter seeking documents "identifying" Mr. Bergmair's interests, but as a practical matter, Plaintiff is taking the position that her "narrowed" request requires all documents identifying his interests, which is functionally the same as the original overbroad request. Plaintiff already has extensive information from MindGeek, which together with Mr. Bergmair's agreed further production plainly "identify" his interests. Given that there cannot be any dispute as to the precise details of his ownership interests – disclosed to Plaintiff more than six months ago – any further document production is simply not proportional under Rule 26.

Despite Plaintiff's broad demands, in our meet and confers, the only additional category of documents she has specifically identified – at the eleventh hour – that she allegedly needs to identify Mr. Bergmair's interests in MindGeek are internal calculations of how royalties are paid between one MindGeek entity and RT Holding, the parent company in which Mr. Bergmair holds most of his interests. Given Plaintiff's last-minute notification, Mr. Bergmair's counsel has had little time to

explore this issue but it appears that these are internal MindGeek computations, presumably carried out by MindGeek's finance department; Mr. Bergmair did not maintain records of such internal MindGeek calculations. Plaintiff's counsel advised Mr. Bergmair's counsel that Plaintiff was simultaneously seeking to compel MindGeek to produce these documents. If so, the Court will determine in connection with that motion Plaintiff's entitlement to such internal MindGeek documents. If she is entitled to them, MindGeek will provide them. Mr. Bergmair did not himself create or maintain such records.

The Court should reject Plaintiff's request for discovery beyond the production by Mr. Bergmair of the documents described above that identify his interests.

**B.    Request No. 2: Documents reflecting all monies invested in, or received from, any MindGeek related entity and the related contract or agreement under which those payments and distributions were made (RFP 3, 7).**

Plaintiff advised Mr. Bergmair less than four hours before the filing deadline for this stipulation that she was only moving to enforce the portion of this request related to monies received by Mr. Bergmair from MindGeek. As with Request No. 1, Plaintiff already has in her possession documents and information identifying monies received from MindGeek by Mr. Bergmair. Nonetheless, Mr. Bergmair will produce documents sufficient to identify the monies he received from MindGeek. This should resolve any dispute regarding this request but Plaintiff apparently still seeks something more.

As described for the Court at the March 8 hearing, such funds were received in three forms. *See* White Decl., Ex. U (March 8 Hearing Tr.) at 48. First, as a shareholder, Mr. Bergmair was paid dividends in accordance with his economic interest specified in the Shareholder Agreement. Mr. Bergmair has previously produced his copies of the RT Holding corporate resolutions reflecting the

1  distribution of those dividends. Those resolutions identify the exact amount and
2  recipient of those dividend distributions. Mr. Bergmair did not separately maintain a
3  record of his receipt of these dividends. In our meet and confers, Plaintiff asked if
4  MindGeek issued Mr. Bergmair a document equivalent to the type of K-1 form issued
5  to partners in a U.S. partnership, in other words, a summary by the payor of the funds
6  paid to a partner or member in a given year. Although MindGeek did not issue such
7  a summary document (apparently because there was no legal requirement to do so),
8  Mr. Bergmair offered to produce two spreadsheets provided to him in 2020 by the
9  MindGeek finance department that are the functional equivalent. These documents
10 reflect all the dividend distributions made to Mr. Bergmair from the time of his
11 investment in the company through 2020, providing the years, the amount of the
12 distributions and the shareholder entities to which the distributions were made.

13      The second form of funds Mr. Bergmair received from MindGeek were in
14 connection with so-called "related party transactions." These transactions, which
15 were fully above board and disclosed to all shareholders, were specifically permitted
16 by the Shareholders Agreement. That agreement provided that Mr. Bergmair's
17 companies could sell bandwidth to MindGeek so long as the transactions were at fair
18 market terms, in MindGeek's "sole discretion." In connection with those transactions,
19 Mr. Bergmair will produce to Plaintiff a spreadsheet maintained during the relevant
20 period that reflects his company's receipt of payments by MindGeek in connection
21 with its purchase of bandwidth, as well as copies of invoices issued by his company
22 to MindGeek. The spreadsheet covers the vast majority of the relevant time period.[2]

23      The final type of funds received by Mr. Bergmair from MindGeek were
24 payment of his travel and other business-related expenses. Mr. Bergmair initiated the
25 process of seeking payment of such expenses by issuing an invoice from one of his
26 companies to MindGeek. In connection with Plaintiff's request, Mr. Bergmair agreed

---

[2] There was no contract between the parties regarding the bandwidth sales.

to produce copies of all the invoices in his possession seeking payment of these expenses. Mr. Bergmair did not maintain any record tracking his receipt of these expense reimbursements.

Thus, Mr. Bergmair agreed to produce documents in his possession that sufficiently identify all the funds he received from MindGeek. Indeed, MindGeek has already produced (or agreed to produce) to Plaintiff reports generated directly from its financial accounting system providing detail with respect to each of these types of distributions. MindGeek has produced two detailed spreadsheets setting forth information regarding every dividend distribution to every shareholder for the relevant period.[3] Similarly, MindGeek has agreed to produce a similar report showing the invoices received from Mr. Bergmair's company for bandwidth and its corresponding payments in satisfaction of those invoices. Finally, MindGeek has produced a report showing both the incoming invoices and its outgoing payments to Mr. Bergmair's companies in satisfaction of those invoices in connection with reimbursement of his business expenses.[4] Although there are minor variations, the documents Mr. Bergmair agreed to produce match the records of the amounts disbursed by MindGeek on all three reports. Although Plaintiff cites no reason to believe that the MindGeek accounting system's reports are inaccurate, her professed need for documents from Mr. Bergmair is to corroborate his receipt of those same funds. In other words, even though MindGeek's accounting system shows, for example, a payment made to one of Mr. Bergmair's companies on a specific date in satisfaction of a specific invoice, Plaintiff seeks documents from Mr. Bergmair reflecting his receipt of those funds. The documents Mr. Bergmair agreed to produce sufficiently confirm the receipt of those funds and sufficiently identify the funds he received from MindGeek. Moreover, demanding documentary proof of the

---

[3] *See* MindGeek_Fleites_00009212, 0066303.

[4] *See* MindGeek_Fleites_00009212.

receipt of these funds is really a meaningless exercise since, as Plaintiff knows, Mr. Bergmair will acknowledge receipt of the different types of funds reflected on the MindGeek accounting reports. The Court should find that Mr. Bergmair's proposed production is sufficient to identify the funds received by him from MindGeek and decline to order any further production.

### C. Requests No. 3: Documents identifying any entity not consolidated on MindGeek-produced financial statements in which Mr. Bergmair holds an interest that does business with any MindGeek entity or business (RFP 7)

The documents to be produced in response to Request #2 above identify all entities owned by Mr. Bergmair that did business with MindGeek. The only such entity, the one involved in the sales of bandwidth, is identified in the spreadsheet and invoices he will produce. Moreover, Mr. Bergmair has told Plaintiff's counsel the name of that entity, so she already has the information she requested. The entities issuing the invoices related to Mr. Bergmair's expenses did not "do business" with MindGeek in the normal sense of the phrase, but in any event, are identified on the invoices to be produced. The Court should find that Mr. Bergmair's proposed production is sufficient to identify all entities in which he holds an interest that do business with MindGeek and decline to order any further production.

## III. CONCLUSION

### A. Plaintiff's Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion, and order Defendant Bergmair to produce the requested documents so that the Court may have the full picture of his ownership, economic interest in, and control over the MindGeek business - the very discovery ordered by this Court.

**B.     Defendant's Conclusion**

For the foregoing reasons, Plaintiff's motion should be denied.

Dated: March 31, 2023                Respectfully Submitted

**BROWN RUDNICK LLP**

By: /s/ *Michael J. Bowe*
MICHAEL J. BOWE (*pro hac vice*)
mbowe@brownrudnick.com
LAUREN TABAKSBLAT
(*pro hac vice*)
ltabaksblat@brownrudnick.com
7 Times Square
New York, NY 10036
Phone: (212) 209-4800
Fax: (212) 209-4801

David M. Stein (#198256)
dstein@brownrudnick.com
2211 Michelson Drive, 7th Floor
Irvine, California  92612
Phone:      949.752.7100
Fax:  949.252.1514

Attorneys for Plaintiffs

Dated: March 31, 2023                Respectfully Submitted,

MORRISON & FOERSTER LLP

By: */s/ Dan Marmalesfsky*
DAN MARMALEFSKY (CA SBN 95477)
DMarmalefsky@mofo.com
Morrison & Foerster LLP
707 Wilshire Boulevard
Los Angeles, California 90017
Tel.: (213) 892-5200
Fax: (213) 892-5454

WALDEN MACHT & HARAN LLP

|    |                                          |
|----|------------------------------------------|
| 1  |                                          |
| 2  | By: */s/Ronald G. White*                 |
| 3  | RONALD G. WHITE<br>(admitted *pro hac vice*) |
| 4  | rwhite@wmhlaw.com                        |
| 5  | Walden Macht & Haran LLP<br>250 Vesey Street |
| 6  | New York, NY 10281<br>Tel: (212) 335-2387 |
| 7  | Fax: (212) 335-2040                      |
| 8  |                                          |
| 9  | Attorneys for Defendant Bernd Bergmair   |