# EXHIBIT U

1                    UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3

4  SERENA FLEITES, et al.,        ) Case No. LA CV 21-04920-CJC-
                                  )                        (ADSx)
5            Plaintiffs,          )
                                  ) Los Angeles, California
6  vs.                            )
                                  ) Wednesday, March 8, 2023
7  MINDGEEK S.A.R.L. et al.,      )
                                  ) (10:11 a.m. to 1:26 p.m.)
8            Defendants.          )
   _____)

9

10

11       TRANSCRIPT OF PLAINTIFF'S MOTIONS TO COMPEL
                [261], [264], [267], [274]
12               SCHEDULING CONFERENCE
           BEFORE THE HONORABLE AUTUMN D. SPAETH
13            UNITED STATES MAGISTRATE JUDGE

14

15 Appearances:                   See next page.

16 Court Reporter:                Recorded; CourtSmart

17 Courtroom Deputy:              Kristee Hopkins

18 Transcribed by:                Jordan Keilty
                                  Echo Reporting, Inc.
19                                9711 Cactus Street, Suite B
                                  Lakeside, California 92040
20                                (858) 453-7590

21

22

23

24
   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

2

```
 1  APPEARANCES:

 2  For the Plaintiffs:          DAVID M. STEIN, ESQ.
                                 Brown, Rudnick, LLP
 3                               2211 Michelson Drive
                                 7th Floor
 4                               Irvine, California 92612
                                 (949) 440-0231
 5
                                 JOHN G. DOYLE, ESQ.
 6                               Brown Rudnick, LLP
                                 601 Thirteenth Street NW
 7                               Suite 600
                                 Washington, D.C. 20005
 8                               (202) 536-1706

 9                               LAUREN TABAKSBLAT, ESQ.
                                 Brown Rudnick, LLP
10                               Seven Times Square
                                 New York, New York 10036
11                               (212) 209-4904

12  For MindGeek S.A.R.L.:       KATHLEEN N. MASSEY, ESQ.
                                 Dechert, LLP
13                               Three Bryant Park
                                 1095 Avenue of the Americas
14                               New York, New York 10036
                                 (212) 698-3686
15
                                 MICHELLE H. YEARY, ESQ.
16                               Dechert, LLP
                                 Cira Centre
17                               2929 Arch Street
                                 Philadelphia, Pennsylvania
18                                 19104
                                 (609) 955-3277
19
    Bernd Bergmair:              DAN E. MARMALEFSKY, ESQ.
20                               Morrison & Foerster, LLP
                                 707 Wilshire Boulevard
21                               Suite 6000
                                 Los Angeles, California 90017
22                               (213) 892-5200

23

24

25
```

*Echo Reporting, Inc.*

3

```
 1  APPEARANCES:  (Cont'd.)

 2  For Bernd Bergmair:            RONALD G. WHITE, ESQ.
                                   Walden Macht & Haran, LLP
 3                                 250 Vesey Street
                                   Suite 27th Floor
 4                                 New York, New York 10281
                                   (212) 335-2387
 5
    For Feras Antoon:             DAVID W. WIECHERT, ESQ.
 6                                 Wiechert, Munk & Goldstein, PC
                                   East Tower
 7                                 4000 MacArthur Boulevard
                                   Suite 600
 8                                 Newport Beach, California
                                    92660
 9                                 (949) 361-2822

10                                 S. JASON BROWN, ESQ.
                                   Cohen & Gresser, LLP
11                                 800 Third Avenue
                                   New York, New York 10022
12                                 (212) 957-7609

13  For David Tassillo:           JONATHAN S. SACK, ESQ.
                                   Morvillo Abramowitz Grand
14                                  Lason & Anello, PC
                                   565 Fifth Avenue
15                                 New York, New York 10017
                                   (212) 880-9410
16
    For Corey Urman:              KERIME S. AKOGLU, ESQ.
17                                 Mintz Levin Cohn Ferris
                                    Glovsky & Popeo, P.C.
18                                 919 Third Avenue, 39th Floor
                                   New York, New York 10022
19                                 (212) 983-3115

20                                 PETER A. BIAGETTI, ESQ.
                                   Mintz Levin Cohn Ferris
21                                  Glovsky & Popeo, PC
                                   One Financial Center
22                                 Boston, Massachusetts 02111
                                   (617) 542-6000
23

24

25
```

12

1         I think a lot of the same arguments apply to Mr.

2 Bergmair and Mr. Urman.  Mr. Bergmair has produced I think

3 about 65 documents total.

4         THE COURT:  That's Mr. Bergmair?

5         MR. STEIN:  That's Mr. Bergmair.  And, again, if

6 my numbers are wrong, I'm -- I'm sure they'll correct me.

7         THE COURT:  I'm sure.

8         MR. STEIN:  And I believe Mr. Urman has produced I

9 think four or five documents.  So, we're not at zero.  But,

10 again, that still seems to us like -- like there must be

11 more.  These are sophisticated individuals.  And the fact

12 that, you know, Mr. Bergmair has some stuff would just tend

13 to support that other people would have some stuff too.

14 And, so, that's -- you know, we're just trying to put the

15 pieces together, and I think that's -- that's where we're

16 landing.  There's got to be employment agreements,

17 distribution agreements, financial summaries of -- of

18 payments in or out, financial advisors, tax consultants,

19 people they were -- they were doing their financial

20 reconciling with.  We don't have any of that.

21         If they -- if they literally do a real search and

22 come up with zero, they can certify to the Court that

23 they've done a real search and come up with zero.  But they

24 haven't done that yet.  And, so, we don't know, and it

25 strikes me as though that can't be the answer.

13

1        And, so, I guess what we're -- what we're trying

2  to do is kind of bring this to a head so we don't have to

3  keep coming back to -- to your Honor and -- and get all of

4  the documents that relate to their financial interests and

5  all of the documents that relate to communications about the

6  policies.

7        The last thing I'll say in general, and then

8  certainly we could go to the request if we need to, but I'm

9  trying to do it kind of as a -- as an overall picture is

10 there's been a lot of meet and confers.  I haven't been on

11 all of these, but there's been a lot of meet and confers

12 where they've been talking about search terms and search

13 parameters and things like that.  And I understand maybe all

14 of the Defendants, certainly a lot of them, have cut off the

15 time frame for where they're searching at 2020, and I

16 believe their basis for doing that is Judge Carney's order

17 that says contacts after the incident can't form the basis

18 of jurisdiction.  And I think that's probably right, but

19 that doesn't mean that documents after that date are

20 automatically not relevant.

21        So, let's say the incident is June of 2020.  I'm

22 just picking the date, but there could be an October of 2020

23 communication that says, Wow, this is really bad.  What

24 policy was in place back then, and why did we let that

25 happen and what are we going to do to fix it.  All of that

14

1 stuff, even if it occurs after the date, would still be

2 relevant to the jurisdictional analysis.  You know, in the

3 extreme example, if somebody sends an email that says -- I'm

4 sure this never exists, but -- but in the hope world as the

5 Plaintiff, you know, if there's the email that says I can't

6 believe you put that policy in place, shame on you, we need

7 to change it, that could be a year after the incident but

8 still be relevant to who was controlling the policies, who

9 was implementing the policies, what the policies were.

10          So, I -- I do think there's some merit to the

11 position that there's a cutoff date for a contact.  You

12 know, if they flew here today for the hearing, the fact that

13 they're here wouldn't mean the Court has jurisdiction over

14 them for the purpose of what happens, the underlying

15 incidents.  But that doesn't mean they can just not search

16 for those documents, and I think what they -- their position

17 has been, if I'm saying it fairly, is that they're going to

18 cut off the search, and our position is that they should

19 search through the present.  They should find everything

20 that's captured by the search terms and the -- and the

21 requests, and it may be that they want to claim privilege

22 and they can, and then they can send us a privilege log.  We

23 don't have one yet.  So, I don't know if they're claiming

24 privilege over anything.  They could certainly claim stuff

25 is not relevant or -- or not subject to discovery for

15

1  whatever reason, but I would think they would then need to

2  supplement their responses to say we've done the search.  We

3  have some stuff, but we're withholding it under objection A,

4  B, and C, and then we could come to your Honor to fight over

5  those objections.  I believe a couple of years ago, Congress

6  changed the rules to say for each request you have to say if

7  you're withholding stuff, because in the old days we would

8  end up in meet and confer hearings and, you know, at the end

9  of the day, you'd come to a motion to compel, and then there

10 were no documents.  And they're like, okay, everybody wasted

11 their time.  If there's no documents, there's no documents.

12 But we don't know.  There's no certification or explanation

13 of whether they're withholding stuff, whether it's

14 privileged, why they're withholding it.  So, I would think

15 what we'd be seeking is an order that they need to go do a

16 comprehensive search through the complete time frame and

17 then provide updated responses with -- if they have

18 anything, if they're withholding it, why they're withholding

19 it and a privilege log if they're asserting privilege.  And,

20 ideally, a production, because I just -- I know it's not a

21 legal test, but it just seems hard to believe that they

22 don't have a single piece of paper that relates to their

23 financial interest in a company of this size or their time

24 as CEO or COO, and Mr. Antoon or Mr. Tassillo's time.  You

25 would think the COO would have some documentation, some

46

1  jurisdictional discovery where he said it appeared that the

2  Plaintiffs were merely guessing at what the Defendants'

3  roles were in setting policies.  And since the filing of the

4  motion, your Honor, we've received the same 278 search terms

5  regarding CSAM that the Plaintiffs have asked us to -- to

6  run.  There -- I'm a little less optimistic than my

7  colleague, Mr. Sack, because they're ridiculously broad.

8  So, we're -- we're supposed to be searching for company

9  policies and the formulation of them, and we're -- included

10 on their list are the terms babysitter and sleeping.  So,

11 I'm -- I'm sure I'm going to be sifting through Mr.

12 Bergmair's emails looking for a babysitter on a Saturday

13 night.

14          THE COURT:  Does he have young children?

15          MR. WHITE:  He does, your Honor

16          THE COURT:  I mean, if he was an 80-year old man

17 with a similarly aged wife, there probably wouldn't be very

18 many babysitter emails.

19          MR. WHITE:  That's true, but all -- it's hard to

20 imagine that that's something that -- that comes up in

21 discussing company policy I guess is my point, your Honor.

22          But, in the interest of transparency, we'll run

23 the search terms, and we'll see what -- what they yield.  On

24 the second topic, which was alter ego, the Plaintiffs

25 already got -- already received substantial information both

*Echo Reporting, Inc.*

47

1  from Mr. Bergmair and from the company.  So, there's no

2  mystery at all.  Plaintiffs professed mystery about a lot of

3  things in the case.  There's no mystery at all about Mr.

4  Bergmair's interests.  Way back in September, in response to

5  interrogatory number one, he verified that he was -- had an

6  ownership interest in MindGeek and identified the specific

7  entities through which he owned that -- that interest.  He

8  subsequently produced corporate resolutions reflecting the

9  -- all the dividend distributions -- I should say all --

10 he's produced all the resolutions he has reflecting dividend

11 distributions to him from the MindGeek entities.

12        So, there's no mystery.  The Plaintiff -- sorry.

13 MindGeek has also produced now 66,000 pages of documents and

14 counting full of corporate and financial records that go to

15 all the key topics that are relevant to the alter ego

16 analysis.  So, they identify all of the MindGeek entities.

17 It shows their corporate structure, their ownership

18 structure, the quarterly and annual financial reports, tax

19 returns, corporate resolutions.  And, your Honor,

20 significantly, the company has produced or agreed to produce

21 and already has or will shortly documents showing the flow

22 of all funds of whatever type from MindGeek to the ultimate

23 shareholders, my client and -- and the other two as well.

24        So, Plaintiff professes that they want to be able

25 to trace the money, to figure out whether these ultimate

48

1  shareholders are diverting corporate money to themselves.

2  So, they're going to get that.  There's -- it takes various

3  forms.  There's dividend distributions, which is what you

4  would expect owners would -- how they would get the profits

5  of the company, as well as so-called related party

6  transactions.  Again, nothing -- everything was above board.

7  Everything is apparent in the documents, whatever, but

8  they're going to get those records.  So --

9          THE COURT:  And who are they getting them from?

10         MR. WHITE:  Well, the corporate resolutions have

11  come from Mr. Bergmair, and my understanding is they have

12  already gotten additional information, at least with respect

13  to Mr. Bergmair, regarding expense reimbursements and -- and

14  documents regarding the so-called related party transactions

15  will be forthcoming.

16         So, your Honor, these are documents that are like

17  prototypical corporate documents, resolutions, financials,

18  legal agreements.  It shouldn't come as a surprise that the

19  company, which has a legal department and a finance

20  department and an IT department, is the -- is the most

21  readily -- is the most convenient source and the most

22  official source of those documents, as opposed to presumably

23  they also have a -- a comprehensive system of maintaining

24  their relevant corporate records as opposed to Mr. Bergmair

25  in China sifting through whatever records he has.

49

1       So, the bottom line, your Honor, is when you look

2   at where we are now, the Plaintiffs have an enormous amount

3   of documents, particularly the alter ego question.  They --

4   who they got them from really doesn't make a difference.

5   They have them now.  They have the answers to their

6   questions.  And it only serves to burden the individual

7   Defendants to make them go and -- and produce duplicative

8   documents.

9       Your Honor, the Plaintiff specifically told us

10  back when MindGeek had only produced 7,000 documents that if

11  you have those 7,000 duplicates, we want you to give them to

12  us.  Now -- now, unless they've changed their position, if

13  it's consistent, they wouldn't -- they'd be expecting us to

14  produce -- each of us to produce an extra 66,000 pages that

15  are complete duplicates.

16      Your Honor, what -- what the Plaintiff ignores

17  here, you can search their -- all their briefs and all the

18  motions on the court calendar today and see no mention of it

19  is they ignore that Rule 26 has a proportionality

20  requirement.  It was amended in 2015 as, of course, your

21  Honor knows, to require that courts take a closer look at

22  the proportionality of requested discovery.  The Advisory

23  Committee notes, your Honor, those amendments specifically

24  say that they were "intended to encourage judges to be more

25  aggressive in identifying and discouraging discovery

102

1          So, as a result of that, I'm ordering the parties

2   to meet and confer.  I expect that Plaintiff will clearly

3   identify -- you know, if you want a printout of the royalty

4   payments and the underlying evidence of those royalty

5   payments and those are reports that can be produced from

6   this accounting system, that that's the kind of thing that

7   you would be very clear that you want and that would be the

8   kind of thing that you would respond to, "Yes, I can do

9   that.  No, I cannot," because I understand that simply

10  saying, Give me access to your accounting system, would be

11  something that as a lawyer I would say heck no to.  Okay.

12          So, that's the kind of meet and confer I'm

13  expecting here, that you can clearly identify for them what

14  these holes are, because I suspect that if you said, I need

15  to understand how this is moving from this entity to this

16  entity and I think that that would be this kind of document,

17  they can respond to that.

18          I think this is the meet and confer that probably

19  should have happened, and maybe to some degree the parties

20  have evolved in their positions.  I don't know.  But this is

21  what needs to happen.  It's -- it's not truly possible for

22  me to rule on this motion in either a grant or a deny in any

23  way that would do justice to either party.

24          And, so, I'm ordering that the parties meet and

25  confer.  Try to identify clearly what you want and need.

103

1 Try to respond clearly about what you can and will be
2 producing.  I will leave it up to you to determine time
3 frame for production.  I just want to know if there remain
4 any requests for production or categories of documents that
5 you are not able to agree to I'm going to request a
6 supplemental briefing explaining if anything remains at
7 issue, what that is, and what is still being sought.  And I
8 hope that by the time that happens, we will truly be at the
9 point where everybody understands what's being asked for and
10 there is just truly a disagreement about whether or not it
11 should be produced.  Okay.
12          I'm going to order that that supplemental brief be
13 filed on March 24th.  That gives you about two weeks to deal
14 with this.  Based on your current discovery cutoff, I think
15 that that makes sense.
16          Now, if some -- if the people who are responsible
17 tell me that you're having a baby or you're going on a
18 vacation and this is not possible, I will revisit that date.
19 Okay.
20          Any questions with regard to the motion to compel
21 the entity Defendant regarding the eight buckets?
22          MS. TABAKSBLAT:  No, your Honor.
23          MS. YEARY:  No, your Honor.
24          THE COURT:  Okay.  Now, with regard to the four
25 motions to compel to the individual Defendants, I'm also

104

1  ordering you guys to meet and confer because what I heard

2  here was that it was the first time that the Defendants have

3  heard the limitations that -- or reasonable limitations that

4  I believe that Mr. Stein stated.  Big picture, I believe

5  that these discovery requests are very overbroad.  I heard

6  the Defendants say that their clients aren't likely to

7  actually have much of the information.  So, the burden

8  objections are not persuasive because if you don't have

9  much, it's not much of a burden to look at, and it's not

10  much of a burden to produce.  And, again, there was no

11  evidence actually supporting the burden objections.

12  Traditionally, I get declarations that say it would take me

13  24 hours to go through the 3,550 documents, and I don't have

14  anything like that here.  All right.

15          But I believe that the Defendants have a right to

16  understand because I think the limitations that Mr. Stein

17  stated in this courtroom generally seemed very reasonable to

18  me.  I understand that this was the first time you heard

19  them.  And, so, you need to have an opportunity to consider

20  them.

21          Now, same thing, I'm going to order that the

22  parties meet and confer, that the Plaintiffs provide what

23  they're actually looking for in -- along the lines of the

24  limitations that Mr. Stein described.  I'm not saying that

25  you have to stick exactly to those, but to the extent that,

1   for example, contact lists to say contacts regarding

2   something very specific, that seems potentially more

3   reasonable to me than all contact lists, like I'm not

4   handing over my cell phone contact lists to you for a

5   specific jurisdiction case.  Okay.

6           Same thing, I'm going to ask that if there remain

7   any categories that remain unresolved, that then I get a

8   supplemental brief, and I want these supplemental briefs to

9   be joint.  That means I want -- you know, just like our

10  joint stipulation, I will leave it up to you guys to

11  determine time frame and how much time you give each other,

12  but I want it filed by the 24th of March, again, hoping that

13  that time frame will allow me to get you a response.  But,

14  again, I -- one thing that I think is missing from the

15  briefing from Plaintiff is explaining to me and to the

16  Defendants how these very broad discovery requests will

17  provide evidence related to jurisdiction.  It can't just be

18  it's jurisdiction.  It can't just be it's context.  I need

19  to know -- we've got, as far as I understand it, five --

20  four individuals and then in the entity situation, one

21  entity that we're trying to establish -- that you're trying

22  to establish jurisdiction over and then how alter ego might

23  work to hold somebody else so it's their contacts, right,

24  and all of the things that the jurisdictional law stands for

25  and how -- so, directly theirs, as well as how somebody

*Echo Reporting, Inc.*

106

1 else's contacts might through an alter ego analysis point to

2 them, but as the motion is currently briefed, neither me or

3 my law clerks can track that.  And I understand why the

4 Defendants argue about it, but I think it's there.  I think

5 there is likely information that the Defendants should be

6 sharing with you, that it's somewhere in there, but I can't

7 figure it out.  Okay.

8          Now, let's talk about -- any questions on that?

9          UNIDENTIFIED SPEAKER:  No, your Honor.

10         THE COURT:  Okay.  Let's talk about that date of

11 March 24th.  I know I'm asking you to do a lot of work in a

12 very short period of time, especially since I'm asking for a

13 joint brief.  Is it possible?

14         UNIDENTIFIED SPEAKER:  Yes, your Honor, from our

15 side, yes.

16         THE COURT:  Counsel?  I've got five counsel here.

17         MS. MASSEY:  It's certainly -- I mean, it's

18 certainly possible from -- from our perspective, but it

19 depends obviously on when we hear from Plaintiffs about the

20 specific categories.

21         THE COURT:  I understand.

22         MS. MASSEY:  The last time we had a bit of a

23 challenge over that, but so long as we --

24         THE COURT:  I understand.

25         MS. MASSEY:  -- can get the categories from

113

1  So, it's -- I'm just all --

2           UNIDENTIFIED SPEAKER:  I'm so sorry.

3           MS. MASSEY:  No worries.  One thing at least, the

4  documents that get produced, MindGeek, you know, is -- is a

5  collection of private entities.  Any documents that Grant

6  Thornton produces to the Plaintiff in these various

7  jurisdictions, can we have an agreement or an order that

8  those documents would be subject to the Court's protective

9  order?

10          THE COURT:  I will allow you to speak with

11 counsel.  I don't think this is the kind of thing that I

12 should be ordering or dealing with --

13          MS. MASSEY:  Okay.

14          THE COURT:  -- extemporaneously.  So, I'll leave

15 it at that.

16          MS. MASSEY:  Okay.

17          THE COURT:  All right.

18          MS. MASSEY:  Thank you.

19          THE COURT:  Thank you, everybody.

20          ALL:  Thank you, your Honor.

21      (Proceedings recessed.)

22

23

24

25

114

1      I certify the foregoing is a correct transcript

2 from the electronic sound recording of the proceedings in

3 the above-entitled matter.

4

5 /s/Jordan Keilty                    3/9/2023
  Transcriber                        Date
6
  FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:
7

8
  /s/L.L. Francisco
9 L.L. Francisco, President
  Echo Reporting, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25