# Exhibit Q

1. Documents showing the payees for licensing and royalty expenses for MindGeek Freesites reported on MindGeek Freesites and ("MFS") and MindGeek S.a.r.l. ("MGS") financial statements and tax filings produced in this case, including such expenses reported in the segmenting analysis section of the MGS financial statements.  For the avoidance of doubt, you ultimately indicated that you will be producing documents associated with the total amount of listed expenses in these line items and not excluding some portion of those expenses on any basis.

    a. You refuse to produce any documents in this category for MG Premium or the Pay Sites segment of the MGS segmenting section of the financial statements.

    b. It is unclear if you are including in this information the flow of funds to the payee as we explained we seek in our March 16, 2023 meet and confer.  In light of the centrality of the unity, integrated, and co-mingling elements of alter ego analysis, and Mr. Andreou's sworn declaration that all entities maintain their own bank accounts and pay their own expenses, and your disclosure yesterday that most or all expense payments are made by the Canadian management company, information showing the flow through any intermediary Mindgeek entities of the monies used to pay these expenses, or the outright payment by other Mindgeek entities such as the management company, is necessary.

2. Documents showing the payees for website service expenses for MindGeek Freesites reported on MindGeek Freesites and ("MFS") and MindGeek S.a.r.l. ("MGS") financial statements and tax filings produced in this case to the extent such payees received $500,000 or more in that year, including such expenses reported in the segmenting analysis section of the MGS financial statements.  For the avoidance of doubt, you indicated that you will be producing documents associated with the total amount of listed expenses in these line items and not excluding some portion of those expenses on any basis.
    a. You refuse to produce any documents in this category for MG Premium or the Pay Sites segment of the MGS segmenting section of the financial statements.

    b. See 1.b. above.

3. Documents showing the payees for "management expenses" for MindGeek Freesites reported on MindGeek Freesites and ("MFS") and MindGeek S.a.r.l. ("MGS") financial statements and tax filings produced in this case, including such expenses reported in the segmenting analysis section of the MGS financial statements.  For the avoidance of doubt, you indicated that you will be producing documents associated with the total amount of listed expenses in these line items and not excluding some portion of those expenses on any basis.

    a. You refuse to produce any document in this category for MG Premium or the Pay Sites segment of the MGS segmenting section of the financial statements.

    b. See 1.b. above

4. Documents showing the payees for "other expenses" for MindGeek Freesites reported on MindGeek Freesites and ("MFS") and MindGeek S.a.r.l. ("MGS") financial statements and tax filings produced in this case to the extent such payees received $500,000 or more in that year, including such expenses reported in the segmenting analysis section of the MGS financial statements. For the avoidance of doubt, you indicated that you will be producing documents associated with the total amount of listed expenses in these line items and not excluding some portion of those expenses on any basis.

    a. You refuse to produce any documents in this category for MG Premium or the Pay Sites segment of the MGS segmenting section of the financial statements.

    b. See 1.b. above.

5. All transfer cost pricing analyses expenses payments covered by 1-4, documents showing the basis and method for calculating how those expenses were calculated, and the contracts pursuant to which those payments and calculations were made.

    a. You indicated that your clients do not have the transfer cost pricing analyses for any years other than 2019, that you are endeavoring to find them, and that you believe Grant Thorton has the missing analyses. You have declined to instruct Grant Thorton to produce these documents or the other documents that are the subject of the Court's letters rogatory, or give them express permission to do so, but indicated if you could not find these analyses you would ask Grant Thorton to give them to you. In our March 16,2023 meet and confer you responded to the question whether you had given instructions to Grant Thorton in Canada or Ireland to not produce information responsive to the Court's letters rogatory, you stated, "to the extent the client has confidential information in those jurisdictions, we certainly want it to be protected from disclosure . . . so in that regard, absolutely." You went on to make clear that you are working closely with Grant Thorton to ensure that no information other than the carefully curated information produced in this action, consisting of summary financial statements and tax filings, are all the financial information plaintiff receives even though the Court has issued an Order over your objection requesting more. On that call we asked you explicitly whether you would unequivocally give Grant Thorton permission to comply with the letters rogatory to which you responded, "[w]ell let me think about that. Like I said, we certainly don't intend to reargue." The new revelation that you have not produced highly relevant foundation documents because your clients claim they do not have them but that Grant Thorton might have them, has raised the prejudice of this obvious obstruction dramatically. We request that you immediately instruct Grant Thorton entities that are the subject of the letters rogatory to produce the documents called for in those letters rogatory.

    b. You refused to provide any information on why your clients do not have this information or whether it was destroyed.

    c. It appears you may be limiting your production on licensing and royalty fees in this category to transfer cost pricing analysis contained in the tax filings of the Canadian management company. Given you only have such records of 2019, and given that the company's own primary calculations and data are the best evidence of the basis for such payments and whether they comply with the licensing agreement and facts, we cannot accept this representation. Please let us know if you will agree to produce your client's actual contemporaneous calculations of these amounts.

    d. In addition, we ask now whether your access to any information previously in your client's possession has changed in light of the recent announcement of a purported purchase of Mindgeek.

    e. You have represented that MG Premium and MGFS are entirely separate and not operated in an integrated manner but the documents produced say explicitly that MGFS is used to drive traffic to MG Premium through advertising on MGFS. Please explain whether there are expenses allocated for such advertising to MG Premium, any transfer pricing analyses for those, or other documents showing how those costs were allocated and how they compare to other arms-length advertising on MGFS.

6. You agreed to produce documents showing how the allocation of all shared expenses in which MGFS participated were calculated.

    a. You refuse to produce such information for MG Premium.

7. You refuse to produce the information concerning the expenses covered by 1-5 that was provided to the accountants preparing the financial statements that are the subjects of 1-5.

8. You refuse to produce documents showing the use of the loan proceeds from the 2013 financing but said you would let us know if you would produce the financial statements for 2013 for the same entities for whom you produced financial statements. In addition, we ask that you supplement your charts indicating the amounts of monies paid to the individual defendants or their entities for 2013.

9. You represented you have or will produce the documents showing all recipients of debt payments and the amounts of those payments from your clients' financial accounting system as kept in the normal course of business.

10. You represented you have or will produce documents constituting reports, summaries, or explanations of your client's corporate and economic structure, finances, and flow of funds provided to third-parties and any directors of the equivalent without restriction.

   a. You have represented in our most recent meet and confers on this topic that the lenders were provided only the financial statements and other related documents produced in this case to date. Please confirm there was no information otherwise being provided to the lenders responsive to these requests.

11. You represented you have or will produce all contracts, payment records, and transfer cost pricing or other documents explaining the basis for, and calculations of, those payments for all related party transactions other than corporate subsidiaries of MGS identified on the organizational charts you produced in this action. For the avoidance of doubt, responsive documents will include documents for RT Holdings and its subsidiaries and Defendant Bergmair's Bulknet company.

   a. In light of the very belated disclosure of Defendant Bermair's related party relationship concerning webservices, we asked you to revisit with your clients the existence of such relationships and the completeness of your production in this regard. We believed you had committed to doing that on our prior meet and confer but understand you to have refused to do so yesterday. We renew the request. We continue to believe the information produced and to be produced is incomplete.

12. You represented that you have produced information showing all monies, economics, or other things of value paid to the individual defendants or entities in which they hold an interest, including through RT Holdings or any business relationships with the entities identified on your organizational charts. The one exception is Bulknet which you will be producing information on payments. Please confirm you will be producing records of the payments to Bulknet, the contract pursuant to which the payments were being made, the basis and calculation of the payments under that contract or otherwise.

   a. The information you have provided does not include the entities from which these funds were paid, and yesterday's discussion about what constitutes a MindGeek entity highlighted the importance of this issue. In light of the centrality of the unity, integrated, and co-mingling elements of alter ego analysis, and Mr. Andreou's sworn declaration that all entities maintain their own bank accounts and pay their own expenses, information showing the flow through any intermediary Mindgeek entities of the monies used to pay these distributions and the source of the actual distribution payment is necessary.

   b. You have represented that the information you produced represents fields maintained on your client's financial accounting system. As you agreed to do for the travel expenses, please tell us what if any other fields are maintained related to this category that have not been provided, if any.

   c. In our March 23, 2023 meet and confer, you indicated you did not know if expense payments got paid "down the road" to some individual defendant. Yesterday, you made a representation that the disclosure you have made and will be supplementing will be

complete without qualification and we expect that you will endeavor to ensure all such payments are included.

13. You represented that the entities identified on the organizational charts produced in this action are the only Mindgeek entities that had any involvement in the Mindgeek Group's (as you define the phrase) business and are the only entities that maintained financial records during the operative period. You further represented that any other entities that appear related to Mindgeek in public records were inactive companies that had been or were in the process of being dissolved during the operative period.

    a. You refuse to produce list of all such affiliates.

14. You represent that all acquisitions by the company have been disclosed in the financial statements and organizational charts produced in this case.

    a. Please confirm this includes any entities in which your clients acquired an economic or ownership interest such as an off-balance sheet entity or a minority ownership stake.

15. You represented that the preferred interests referred to in the financial statements produced in this action refers only to certain class B shares certain individuals, including individual defendants, hold in the Canadian management company 9219-1568. You further represented that any distributions or economics received under these shares by the individual defendants are included in the economic disclosures already produced.

    a. You declined to provide any information on whether there are other class b or other shares at other Mindgeek entities held by the individual defendants; whether they received payments on those shares or whether any such payments are included in your economic disclosure thus far.

    b. You seemed to indicate yesterday you would not be providing a copy of the shares or their terms although in our March 16, 2023 meet and confer you said "we will give you that" when asked. Please confirm these will be produced.

    c. You could not explain how the existence of this class of ownership interest coincided with your representations that MG RK S.a.r.l. owns 100% of the subsidiaries identified on the organizational chart since by definition others own these class b shares. You represented that you would endeavor to find out. This is an important issue to basic corporate formalities. Please let us know your final position.

16. We have asked for what other information is maintained in the information system from which you produced travel expense information for the individual defendants. We have yet to receive that response.

17. We did not get to address several open topics before the call ended:

    a. To the extent not already covered, it is unclear to us what you are proposing to produce concerning the website serve providers you have now identified. It appears you are willing to produce payments but not agreements or information on whether the servers and other network support infrastructure exists.

        i. Please clarify, in particular, whether you have produced all contracts for webservices that exist and whether you are saying that Mindgeek's technology department does not know and have records reflecting how the website networks upon which it operates is structured and run by its vendors, including the locations of the servers and infrastructure?

    b. We did not discuss emails. We note that your letter to us just before our March 16, 2023 meet and confer did not offer any suggested alternative search terms or protocols other than to say ours were too broad. We will provide you with a revised proposal and be available to meet and confer on this tomorrow.

    c. We also did not discuss the other part of the deferred motion re the Kaplan Hecker report, but it is clear we are at an impasse on that and the issue is ripe.

18. As we pointed out yesterday, we do not have financial statements for all the years in the period for RT Holdings or its subsidiaries. Please produce all the same financial records for these entities as you have for other members of the "MindGeek Group."

    a. Also you represented that all of RT Holdings financial records are maintained, managed ,and controlled on the same financial accounting management system as the other MGS parent and subsidiaries. Please correct us if we misunderstand this representation.

19. In our March 16, 2023 meet and confer you indicated you were unaware if the money from MGFS and MG Premium flowed through the Irish subsidiaries in the years they existed and indicted you would find out. Please let us know the answer.

20. You represented yesterday that you do not intend to rely on in any way information not produced in this action in opposition to Plaintiffs alter ego and jurisdictional arguments.

    a. In this regard, we do not believe you have produced documents sufficient to show whether any of the Mindgeek Entity Defendants or any of the entities on the organizational charts produced are actually capitalized with monies in an account in their name at any given time or for any appreciable period of time in the fiscal year, or whether such monies are merely book entries allocating monies held in a centralized by another entity in a centralized account. Please confirm you will not be making an argument that about sufficient capitalization going forward.