1    Michael J. Bowe
     (admitted *pro hac vice*)
2    mbowe@brownrudnick.com
     Lauren Tabaksblat
3    (admitted *pro hac vice*)
     ltabaksblat@brownrudnick.com
4    **BROWN RUDNICK LLP**
     7 Times Square
5    New York, NY 10036
     Telephone:   (212) 209-4800
6    Facsimile:    (212) 209-4801

7    Attorneys for Plaintiff

8    COHEN & GRESSER LLP
     Jason Brown
9    (admitted *pro hac vice*)
     Nathaniel P. T. Read
10   (admitted *pro hac vice*)
     800 Third Avenue
11   New York, New York 10022
     Phone: (212) 957-7600
12   Facsimile: (212) 957-4514
     Email: jbrown@cohengresser.com
13   Email: nread@cohengresser.com

14

15   *Attorneys for Defendant*
     *Feras Antoon*

WIECHERT, MUNK & GOLDSTEIN, PC
David W. Wiechert (SBN 94607)
4000 MacArthur Blvd. Suite 600 East Tower
Newport Beach, CA 92660
Phone: (949) 361-2822
Facsimile: (949) 361-5722
Email: dwiechert@aol.com

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.
Jonathan S. Sack
(admitted *pro hac vice*)
565 Fifth Avenue
New York, NY 10017
Tel: (212) 880-9410
Email: jsack@maglaw.com

*Attorneys for Defendant*
*David Tassillo*

16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

17

18

| | |
|---|---|
| 19   SERENA FLEITES, | CASE NO. 2:21-CV-04920-CJC-ADS |
| 20           Plaintiff, | |
| 21       v. | **DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE AUTUMN D. SPAETH** |
| 22   MINDGEEK S.A.R.L.; MG FREESITES, LTD; MINDGEEK | |
| 23   USA INCORPORATED; MG PREMIUM LTD.; MG GLOBAL | **JOINT SUPPLEMENT – MOTION TO COMPEL DEFENDANTS ANTOON'S AND TASSILLO'S RESPONSES TO** |
| 24   ENTERTAINMENT INC.; 9219-1568 QUEBEC, INC.; BERND | **PLAINTIFF'S FIRST REQUEST FOR PRODUCTION AND** |
| 25   BERGMAIR; FERAS ANTOON; DAVID TASSILLO; COREY | **INTERROGATORIES** |
| 26   URMAN; VISA INC.; COLBECK CAPITAL DOES 1-5; | |
| 27   BERGMAIR DOES 1-5 | Jurisdictional Discovery Cutoff: May 1, 2023 |
| 28         Defendants. | |

**JOINT SUPPLEMENT PURSUANT TO THE COURT'S MARCH 8, 2023 ORDER**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

JOINT SUPPLEMENT ........................................................................................ 1

I.    PLAINTIFF'S POSITION ..................................................................... 1

I.    DEFENDANT'S PRELIMINARY STATEMENT ........................................ 4

II.   ARGUMENT ....................................................................................... 6

    A.    Request 1:  Interests in MindGeek Entities ........................................... 6

    B.    Request 2:  Money Invested in or Received From MindGeek ............. 8

    C.    Request 3: Antoon and Tassillo Related Party Transactions................ 9

CONCLUSION.................................................................................................... 10

    a.    Plaintiff's Conclusion ......................................................................... 10

    b.    Defendant's Conclusion....................................................................... 11

**JOINT SUPPLEMENT PURSUANT TO THE COURT'S MARCH 8, 2023 ORDER**

1            **JOINT SUPPLEMENT**

2            Pursuant to the Court's March 8, 2023 and March 27, 2023 orders (Dkts. 304,

3    317), plaintiff and defendants Feras Antoon ("Antoon") and David Tassillo

4    ("Tassillo") (collectively, the "Parties") met and conferred regarding Plaintiff's

5    Motion To Compel Defendants Antoon's and Tassillo's  Responses To Plaintiff's

6    Discovery Requests. The Parties submit this joint supplement setting forth the

7    remaining disputes that require judicial intervention.[1]

8    **I.      PLAINTIFF'S POSITION**

9            By order dated July 29, 2022, Judge Carney directed defendants Antoon and

10   Tassillo to submit to jurisdictional discovery and identified the following questions

11   relevant to the Court's jurisdictional analysis: (i) "who owns Pornhub and the other

12   MindGeek websites that hosted Plaintiff's videos?"; (ii) "where the money flows in

13   the MindGeek web," (iii) which entities and individuals exercised control over the

14   MindGeek entities that monetized plaintiff's CSAM; and (iv) whether those

15   individuals or entities were alter egos of each other.  *See* Dkt. 167 at 3, n.2, 4-7.

16   Despite the Court's mandate, neither defendant has produced a single document to

17   date.  Although plaintiff has continued to meet and confer with defendants in good

18   faith pursuant to the Court's March 8 order, Antoon and Tassillo maintain that they

19   are absolved from their discovery obligations because the MindGeek entities have

20   produced sufficient information. *See, e.g.,* Doyle Decl., Exhibit 20 (3/21 letter).

21   This Court has already rejected this argument. *See* Dkt. 211 at 3-4 (holding that

22   plaintiff is entitled to pursue discovery from both defendants and Grant Thornton).

23

24   ---

[1]      Pursuant to the Court's order, on March 13, 2023, plaintiff wrote to

25   defendants identifying the outstanding discovery issues. (Doyle Decl., Exhibit 19)
     On March 16, 2023, the parties met and conferred by phone.  Defendants responded

26   to Plaintiff's March 13 letter and the issues addressed during the telephonic meet

27   and confer by letter dated March 21, 2023.  (Doyle Decl., Exhibit 20)  Plaintiff and
     defendants exchanged follow-up emails on March 27 and 29, 2023 respectively.

28   (Doyle Decl., Exhibits 21 and 22)

1    In any event, the majority of information plaintiff seeks has not been produced by

2    the entity defendants and is uniquely in Antoon's and Tassillo's possession.

3          Antoon's and Tassillo's failure to comply with the July 29 order has resulted

4    in substantial delays and additional costs which have severely prejudiced plaintiff.

5    To mitigate any further prejudice, plaintiff now limits her requests to two discrete

6    categories of financial information required to answer the specific questions posed

7    by Judge Carney.[2]

8          First, plaintiff seeks documents reflecting all monies Antoon and Tassillo

9    received from any MindGeek related entity and the related contract or agreement

10   under which those payments, dividends, distributions or other value were made and

11   calculated.  This information is central to the Court's alter ego analysis.  The

12   Amended Complaint alleges that virtually all of the revenues earned through the

13   operation of MindGeek's tubesites are bled out of the organization to a parallel

14   company owned by the individual defendants.  The limited, curated documents

15   produced by the MindGeek entities confirms these allegations.  Although the

16   MindGeek tubesites generated approximately $500 million a year in revenue during

17   the relevant period, that money is virtually all gone before it gets to the parent

18   organization, with a substantial portion of those revenues paid out as dividends or

19   distributions to the individual defendants through a shadow entity, RT Holdings.

20   The MindGeek entities' productions further reveal that defendants Antoon and

21   Tassillo held a preferred share in defendant 9219-1568 Quebec Inc. and it appears

22   that some of the distributions and payments made to Antoon and Tassillo were made

23   pursuant to that preferred share even though 9219 is wholly owned by the parent

24   organization, MindGeek S.A.R.L., and thus the monies should have flowed to the

25   parent before leaving the company and being distributed to the individuals.  This is

26   precisely the type of conduct detailed in the amended complaint and what Judge

27

28   [2]    Plaintiff expressly reserves and does not waive any rights to pursue the other categories of discovery included in her motion during merits discovery.

JOINT SUPPLEMENT PURSUANT TO THE COURT'S MARCH 8, 2023 ORDER

1   Carney ordered Plaintiff to explore during discovery.

2        Antoon and Tassillo do not dispute that they received payments,

3   distributions, dividends and other value from MindGeek during the relevant period.

4   *See* Exhibit 20 (3/21 letter, response 2).  They also do not dispute that they have

5   documents evidencing the monies they received, the agreements those monies were

6   transferred pursuant to, and the formulas used to calculate those payments, (Exhibit

7   20, 3/21 letter, response 1), the latter of which has not been produced by MindGeek.

8   But Antoon and Tassillo nevertheless refuse to produce any of this critical

9   discovery, including that concerning FDCo, an entity through which Antoon and

10  Tassillo hold their interests in MindGeek and through which they receive

11  shareholder distributions (*see* Exhibit 20, responses 1 & 2) offering instead to

12  submit a verification of the payment amounts produced by the MindGeek entities.

13  (Exhibit 20, 3/21 letter, response 2.)  This is not how discovery works. Plaintiffs are

14  entitled to obtain the actual evidence from defendants.

15       Contrary to Antoon's and Tassillo's argument, *id.*, plaintiff is not asking for

16  defendants' bank statements.  The individual defendants are owners of a billion

17  dollar enterprise.  Surely these sophisticated business men, or their financial

18  advisors, maintain files with records of monies or other value they received from

19  MindGeek including tax returns, documents relied on to prepare those tax returns,

20  regulatory documents MindGeek would have been legally required to provide to

21  prepare and provide to defendants, and memoranda and other analyses prepared by

22  the company and defendant's respective tax consultants outlining the  amounts paid,

23  the formulars pursuant to which those payments were made, and the entities making

24  and receiving those payments.  Antoon and Tassillo do not dispute these documents

25  are relevant.  The Court has already rejected any burden associated with the

26  production of this highly relevant financial information, *see* Exhibit 23 (3/8 Tr. at

27  104) ("So, the burden objections are not persuasive because if you don't have much,

28  it's not much of a burden to look at, and it's not much of a burden to produce.")),

**JOINT SUPPLEMENT PURSUANT TO THE COURT'S MARCH 8, 2023 ORDER**

1    and these defendants have not made any effort to make the required showing of

2    burden as outlined by the Court at the March 8 hearing.

3         Second, plaintiff seeks documents reflecting Antoon's and Tassillo's

4    ownership and economic interests in any entity consolidated on MindGeek's

5    organizational chart or in any entity with whom any entity on the MindGeek

6    organizational chart does business or makes payments.  This is another scheme

7    alleged in the amended complaint to divert money from the company to the

8    individual defendants through related party transactions.  Antoon and Tassillo have

9    conceded that they hold ownership interests in two properties that are leased to

10   MindGeek for office space.  Tassillo also disclosed  interests in two Delaware

11   entities, Appscrutiny LLC and Appiation Management LLC, formed in or about

12   June 2017 and March 2018 respectively, and dissolved in mid 2018.  Although

13   Antoon and Tassillo have agreed to produce documents identifying these entities,

14   they have refused to produce documents reflecting their ownership and economic

15   interests in these entities and their financial relationship to the entities on

16   MindGeek's organizational chart, including documents reflecting the payments

17   made to these related parties and the agreements, invoices, or formulas pursuant to

18   which those payments were made or value was provided and the payments,

19   distributions or other value received by Antoon and Tassillo from these putative

20   third parties.

21

22   I.      **DEFENDANT'S PRELIMINARY STATEMENT**

23        Defendants Feras Antoon and David Tassillo submit this supplemental

24   memorandum pursuant to the Court's order at the March 8, 2023, hearing on

25   Plaintiff's motions to compel (Dkt. 270, 274).[3]  Since that hearing, the parties have

26   met and conferred in writing, on one lengthy phone call, and again by Zoom.

27   _____

28   [3] As the Court is aware, Antoon and Tassillo are similarly situated on this motion, and
     thus this submission is made jointly.

**JOINT SUPPLEMENT PURSUANT TO THE COURT'S MARCH 8, 2023 ORDER**

1    On March 13, Plaintiff sent a letter to each of Antoon and Tassillo—both

2    letters contained the same eight discovery requests derived in part from Plaintiff's

3    54 Requests for Production (together, the "March 13 Letters"); on March 16, the

4    parties met and conferred by phone regarding those requests; and on March 21,

5    Antoon and Tassillo sent a follow-up letter on open issues. Plaintiff responded to

6    that letter by email on March 23 to which Antoon and Tassillo responded on the

7    same day. On March 27, Plaintiff sent an email with an additional set of clarifying

8    questions; Antoon and Tassillo responded on March 29. Antoon and Tassillo sent a

9    further request for clarification on March 31, and the parties also met and conferred

10   via Zoom on that date.

11   Of the eight requests in Plaintiff's March 13 Letters, the parties have now

12   reached agreement on all but requests 1-3, which request documents identifying

13   Antoon's and Tassillo's ownership and economic interests in MindGeek-related

14   entities, reflecting money received from those entities, and identifying entities in

15   which Antoon or Tassillo hold an interest that do business with MindGeek-related

16   entities

17   Antoon and Tassillo do not object to requests 1-3, but Plaintiff has already

18   received more than sufficient documents and information concerning the matters in

19   those requests. Antoon and Tassillo have also offered to verify the accuracy of that

20   information under oath. We therefore submit that Plaintiff has received the

21   necessary and proportional discovery responsive to these requests. Plaintiff

22   disagrees and seeks additional materials, but has not identified any basis for

23   questioning the accuracy of the detailed information provided by MindGeek, or

24   otherwise justified the burden on Antoon or Tassillo of searching for additional

25   documents, such as years of bank records, on the mere speculation they might differ

26   from the information already produced to Plaintiff.

27

28

JOINT SUPPLEMENT PURSUANT TO THE COURT'S MARCH 8, 2023 ORDER

1    Plaintiff's motions to compel should be denied.[4]

2    **II.    ARGUMENT**

3    Requests 1-3 in the March 13 Letters seek documents relating to Antoon's

4    and Tassillo's ownership and economic interests, money received, and the identity

5    of companies that do business with MindGeek.

6    **A.  Request 1:  Interests in MindGeek Entities**

7    As we advised Plaintiff, with respect to request 1, the MindGeek corporate

8    defendants (the "MindGeek Entities") have provided substantial discovery that

9    details Antoon and Tassillo's interests in the MindGeek Entities, and Antoon and

10   Tassillo each also further addressed this issue in response to Plaintiff's Interrogatory

11   No. 1.  We provided specific Bates Number citations to the relevant documents,

12   including to the following: (i) the October 18, 2013 Shareholders' Agreement,

13   which specifies the economic interest of each shareholder and governs how

14   distributions to shareholders are made, including to FDCo, the entity through which

15   Antoon and Tassillo hold their interests in MindGeek; (ii) documents relating to the

16   2013 Manwin Holding Sarl reorganization, including organizational documents for

17   FDCo and the entities Antoon and Tassillo established to hold their interests in

18   FDCo; and (iii) the March 22, 2018 Amendment to the Shareholders' Agreement,

19   which, like the 2013 agreement, explains how distributions are made to

20   shareholders, including FDCo.  These documents make clear how Antoon and

21   Tassillo hold their interests in MindGeek through FDCo, and Plaintiff has not

22   informed us of anything that is missing from this substantial discovery that is

23   _____

24   [4] At the March 8, 2023 hearing, the Court ordered the parties to make a joint submission "just like our joint stipulation" by March 24. (March 8, 2023 Tr. at 105:9-10.)  With that goal in mind, we repeatedly asked Plaintiff to follow the LR 37-1 Joint

25   Stipulation practice so that we could clearly address the issues in dispute for the Court.

26   But Plaintiff refused to follow that practice.  This submission is therefore presented without the benefit of seeing Plaintiff's positions on these issues and is based on

27   inferences we have drawn about Plaintiff's arguments from our prior meet-and-confer

28   conferences and correspondence.

**JOINT SUPPLEMENT PURSUANT TO THE COURT'S MARCH 8, 2023 ORDER**

1  needed to understand Antoon's and Tassillo's economic relationship with

2  MindGeek.

3       Instead, Plaintiff insists that Antoon and Tassillo produce all documents

4  relating to their personal economic interests in FDCo and the two entities they

5  established to hold their interest in FDCo.  But these documents concern only the

6  personal financial affairs of Antoon and Tassillo; they do not show Antoon's and

7  Tassillo's economic relationship with MindGeek.  The internal workings of FDCo

8  and its ownership are not relevant to Plaintiff's theories of personal jurisdiction as

9  recognized by the Court.  Plaintiffs also already have substantial discovery on how

10  Antoon and Tassillo hold their interests in FDCo, and cannot identify a single issue

11  with that discovery.  Accordingly, the personal FDCo-related documents sought by

12  Plaintiff go beyond the scope of proper personal jurisdiction discovery.

13       Plaintiff has suggested that these materials are subject to discovery now

14  because FDCo is a "MindGeek related entity."  But that is incorrect.  FDCo is

15  merely the entity through which Antoon and Tassillo hold their interests in

16  MindGeek; it is not a company that does business with MindGeek.  Thus, how

17  Antoon and Tassillo hold their interests in FDCo relates only to their personal

18  financial planning, and is not relevant to personal jurisdiction, even on an alter ego

19  theory.

20       The produced documents, in combination with Antoon's and Tassillo's

21  responses to Plaintiff's Interrogatory No. 1, are more than sufficient to identify their

22  "ownership and economic interests in any MindGeek related entity or business," and

23  thus no further production in response to request 1 in the March 13 Letters is

24  necessary or proportional to the personal jurisdiction issues in the case. The Federal

25  Rules do not permit discovery that is "unreasonably cumulative or duplicative, or

26  can be obtained from some other source that is more convenient, less burdensome,

27  or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i); *see also* Fed. R. Civ. P. 26

28  advisory committee's note to 2015 amendments (explaining amendments, including

JOINT SUPPLEMENT PURSUANT TO THE COURT'S MARCH 8, 2023 ORDER

1    consideration of "proportionality," were "intended to encourage judges to be more

2    aggressive in identifying and discouraging discovery overuse"); *In re Bard IVC*

3    *Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 566 (D. Arizona 2016) (where plaintiffs

4    are engaging in "substantial discovery" with defendants, compelling discovery from

5    defendants' foreign entities and divisions based on "mere possibility" of finding

6    communications with foreign regulators "inconsistent" with defendants'

7    communications with American regulators would not be proportional to the needs of

8    the case under Rule 26).

9              **B. Request 2:  Money Invested in or Received From MindGeek**

10             With respect to request 2 (money that Antoon and Tassillo received from

11    MindGeek), Plaintiff again ignores the documents produced by the MindGeek

12    Entities that are more than sufficient to show all payments Antoon and Tassillo

13    received from MindGeek.  Rather than articulating any rationale for why further

14    discovery on this issue is necessary, Plaintiff instead seeks to require Antoon and

15    Tassillo to sift through years of personal bank records, on the mere suspicion they

16    might differ from the information already in Plaintiff's possession.

17             Antoon and Tassillo have explained that they each received money from the

18    MindGeek related entities either in two forms: (i) salaries, employment-related

19    benefits, and bonuses; and (ii) shareholder distributions and dividends.  The

20    MindGeek Entities have produced records from the company's accounting system

21    reflecting these payments for both Antoon and Tassillo.  The MindGeek Entities

22    have also produced Antoon and Tassillo's Further Amended and Restated

23    Employment Agreements dated October 18, 2013 and March 22, 2018, and their

24    shareholder dividends are governed by the shareholder agreements described above.

25             In addition to these wages, employment-related benefits, and bonuses, from

26    November 19, 2014, to December 29, 2016, Antoon and Tassillo received dividend

27    distributions directly from 9219-1568 Quebec Inc.  The MindGeek Entities have

28    produced records from the company's accounting system showing the date and

**JOINT SUPPLEMENT PURSUANT TO THE COURT'S MARCH 8, 2023 ORDER**

1    amounts of these payments.  Beginning in 2017, shareholder distributions to Antoon

2    and Tassillo were made via payments to FDCo.  The MindGeek Entities have

3    produced records from the company's accounting system detailing: (i) the total

4    payments made by year to each party to the 2013 Shareholders' Agreement; (ii) the

5    types of distributions made pursuant to that agreement; and (iii) the year in which

6    the distributions were paid.  In addition, the MindGeek Entities have produced the

7    corporate resolutions authorizing payment of FDCo's shareholder distributions from

8    2017-2020.  Tassillo has records reflecting distributions made to FDCo for the years

9    2017-2020 and will produce them to Plaintiff on or before April 7, 2023.  Antoon

10    and Tassillo will also produce their Further Amended and Restated Employment

11    Agreements dated March 22, 2018 on or before April 7, 2023.

12       It is not reasonable or proportional to require Antoon or Tassillo to seek to

13    obtain and potentially review many years of bank statements merely to confirm that

14    they received payments that are reflected in existing discovery.  *See Brown v. Dash*,

15    2021 WL 4434978 at *3-4 (C.D. Cal. July 27, 2021) (issuing protective order

16    against request for defendants' bank records since "[p]laintiff is not granted broad

17    and unfettered access to banking and financial records of the parties simply by

18    pleading alter ego").

19       Antoon and Tassillo have offered to provide a verification under oath that the

20    payments reflected on the MindGeek records described above are the only payments

21    each has received as a result of their employment and ownership interests, which

22    Plaintiff has rejected.  Plaintiff fails to recognize that "at some point, discovery

23    yields only diminishing returns and increasing expenses," and is well past that point

24    with respect to this issue.  *Updike v. Clackamas Cnty.*, 2016 WL 111424 at *1 (D.

25    Or. Jan. 11, 2016).

26       **C.  <u>Request 3: Antoon and Tassillo Related Party Transactions</u>**

27       With respect to request 3 (seeking information regarding entities "not

28    consolidated on MindGeek-produced financial statements in which Mr. Tassillo [or]

1   Mr. Antoon holds an interest that does business with any MindGeek entity or

2   business"), we have previously advised Plaintiff that, during the Relevant Period,

3   Antoon and Tassillo had interests in two buildings in Montreal in which a

4   MindGeek entity leased offices.  The MindGeek Entities have produced the leases

5   for the two properties and records of payments made under those leases.  Tassillo

6   will produce the two purchase agreements for these properties on or before April 7,

7   2023.

8       As we also advised Plaintiff, Tassillo held interests in two Delaware entities,

9   Appscrutiny LLC and Appiation Management LLC—formed in or about June 2017

10  and in or about March 2018, respectively.  Tassillo identified his interests in these

11  entities in response to Plaintiff's Interrogatory No. 4, and noted to Plaintiff in that

12  response (and subsequently) that these entities are not relevant to Plaintiff or her

13  claims in this action.  Subject to and without waiving his previously stated

14  objections on relevance and other grounds, Tassillo will produce, on or before April

15  7, 2023: (i) documents identifying Appscrutiny LLC and Appiation Management

16  LLC; (ii) documents concerning the financial activities relating to the companies

17  during their existence (in 2017 and 2018); and (iii) the 2018 certificates showing the

18  dissolution of Appscrutiny LLC and Appiation Management LLC.

19      Thus, Plaintiff has received sufficient information to identify all such entities

20  to date, and will shortly be receiving additional discovery, even concerning entities

21  that are irrelevant to Plaintiff's claims in this action. As with request 1, additional

22  discovery responsive to request 3 is not relevant to alter ego or another theory of

23  personal jurisdiction, nor would it be proportional to the needs of the case.

24                              **CONCLUSION**

25      a.    **Plaintiff's Conclusion**

26      For the foregoing reasons, Plaintiff respectfully requests that the Court grant

27  Plaintiff's motion, and order Defendants Antoon and Tassillo to produce the requested

28  documents.

**JOINT SUPPLEMENT PURSUANT TO THE COURT'S MARCH 8, 2023 ORDER**

b.    **Defendant's Conclusion**

For these reaons, as well as those Antoon's and Tassillo's prior submissions to the Court on this motion, Plaintiff's motion to Compel should be denied in its entirety.

Dated: March 31, 2023                    Respectfully Submitted

**BROWN RUDNICK LLP**


By: /s/ Michael J. Bowe
MICHAEL J. BOWE (*pro hac vice*)
mbowe@brownrudnick.com
LAUREN TABAKSBLAT
(*pro hac vice*)
ltabaksblat@brownrudnick.com
7 Times Square
New York, NY 10036
Phone: (212) 209-4800
Fax: (212) 209-4801

David M. Stein (#198256)
dstein@brownrudnick.com
2211 Michelson Drive, 7th Floor
Irvine, California  92612
Phone: 949.752.7100
Fax: 949.252.1514

Attorneys for Plaintiffs


Dated: March 31, 2023                    Respectfully Submitted:


**COHEN & GRESSER LLP**


By: /S/ Jason Brown
JASON BROWN (*pro hac vice*)
jbrown@cohengresser.com
Nathaniel P. T. Read (*pro hac vice*)
nread@cohengresser.com
800 Third Avenue

11                    CASE NO. 21-CV-04920-CJC-ADS

**JOINT SUPPLEMENT PURSUANT TO THE COURT'S MARCH 8, 2023 ORDER**

New York, NY 10022
Phone: (212) 957-7609

Attorneys for Defendant Feras Antoon

**MORVILLO ABRAMOWITZ GRAND IASON & ANELLO PC**

By:    /S/ Jonathan S. Sack

JONATHAN S. SACK
(admitted *pro hac vice*)
jsack@maglaw.com
Morvillo Abramowitz Grand
565 Fifth Avenue
New York, NY  10017
Tel: (212) 880-9410

Attorneys for Specially Appearing
Defendant David Tassillo

**JOINT SUPPLEMENT PURSUANT TO THE COURT'S MARCH 8, 2023 ORDER**