# Exhibit 20

# MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

jsack@maglaw.com
(212) 880 9410

SENIOR COUNSEL
PAUL R. GRAND

COUNSEL
JASMINE JUTEAU

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT

March 21, 2023

**BY EMAIL**

David M. Stein, Esq.
Brown Rudnick LLP
2211 Michelson Drive 7th Floor
Irvine, CA 92612

John Doyle, Esq.
Brown Rudnick LLP
601 13th St. NW #600
Washington DC 20005

Re:   *Fleites v. MindGeek S.a.r.l. et al.*, March 16, 2023 Meet-and-Confer Follow Up

Dear David and John:

     I write to memorialize the positions of individual defendants Antoon and Tassillo at the telephonic meet-and-confer session on Thursday, March 16, 2023, following the format of Michael Bowe's letters to counsel for Antoon and Tassillo dated March 13, 2023 (the "March 13 Letters"), sent pursuant to the Court's March 8, 2023 order.  As the two letters are substantially the same, Antoon and Tassillo address your requests together.

**Relevant Time Period**

     The March 13 Letters suggest that all searches be conducted "at least through June 2021," rather than through June 30, 2020.  We believe the appropriate period for jurisdictional discovery is June 1, 2014, through June 30, 2020 (the "Relevant Period").  Antoon and Tassillo proposed the following compromise position:  Antoon and Tassillo run search terms for responsive documents through the date of the filing of the complaint in this action, June 17, 2021; and, for documents dated after the Relevant Period, a document would be considered responsive if it related to the implementation and direction of CSAM policy during the Relevant Period.  Plaintiff's counsel stated that they would consider this suggested compromise and confer with colleagues before determining whether this compromise was acceptable.

1

Morvillo Abramowitz Grand Iason & Anello P.C.

The remainder of the discussion addressed the specific requests in the March 13 Letters.

**Specific Requests**

**1. Documents identifying Mr. Tassillo's ownership and economic interests in any MindGeek related entity or business (RFP 7).**

As we advised you, the MindGeek entities have produced documents sufficient to show our clients' interests in the MindGeek entities, and Antoon and Tassillo each also addressed this issue in response to Plaintiff's Interrogatory No. 1. We further believe you are mistaken to consider FDCo Holding, Inc. ("FDCo") a "MindGeek related entity," and that that term should refer only to entities consolidated on MindGeek's audited financial statements. FDCo is a separate entity through which Antoon and Tassillo hold their interest in MindGeek; it is not a MindGeek company. How Antoon and Tassillo hold their interests in FDCo relates only to their personal financial planning, and thus is not relevant to personal jurisdiction, including on an alter ego basis. Notwithstanding this objection, the documents produced by the MindGeek Entities demonstrate how Antoon and Tassillo hold their interests in MindGeek, including showing their ownership of the entities that hold the shares of FDCo.

In particular and without limitation, we direct your attention to the October 18, 2013 Shareholders' Agreement (MindGeek_Fleites_00015893); the Manwin Holding Sarl Reorganization & Related Documents (MindGeek_Fleites_00016538); the organizational documents for 9288-1259 Quebec Inc. and 9288-1275 Quebec, Inc., including share certificates (MindGeek_Fleites_00020032); the organizational documents for FDCo—formerly known as MindGeek Holding Inc. (MindGeek_Fleites_00020191); and the March 22, 2018 Amendment to the Shareholders' Agreement (MindGeek_Fleites_00009217). This production, in combination with and Antoon's and Tassillo's responses to Plaintiff's Interrogatory No. 1, is more than sufficient to identify their "ownership and economic interests in any MindGeek related entity or business," and thus no further production in response to Request No. 1 in the March 13 Letters is necessary or proportional to the personal jurisdiction issues in the case.

**2. Documents reflecting all monies invested in, or received from, any MindGeek related entity and the related contract or agreement under which those payments and distributions were made (RFP 3, 7).**

Regarding money invested in MindGeek, as part of the 2013 reorganization, MindGeek Holding Inc—later renamed FDCo—made a nominal investment in MindGeek Sarl of € 31,009.50 (MindGeek_Fleites_ 00020322-73) by acquiring shares at par value.

With respect to money received from MindGeek, Antoon and Tassillo received money from the MindGeek related entities in two categories: (a) salary, employment-related benefits, and bonuses; and (b) shareholder distributions and dividends. The MindGeek Entities have produced records from the company's internal accounting systems reflecting these payments for

2

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

both Antoon and Tassillo (MindGeek_Fleites_00003002, 3003, 3006, 9212). The MindGeek Entities have also produced Antoon and Tassillo's Further Amended and Restated Employment Agreements dated October 18, 2013 and March 22, 2018 (MindGeek_Fleites_00000042 (Tassillo) and MindGeek_Fleites_00000020 (Antoon)).

In addition to these wages, employment-related benefits, and bonuses, from November 19, 2014, to December 29, 2016, Antoon and Tassillo received dividend distributions directly from 9219-1568 Quebec Inc. The MindGeek Entities have produced records from the company's internal accounting system showing the date and amounts of these payments (MindGeek_Fleites_00003002). Beginning in 2017, shareholder distributions to Antoon and Tassillo were made via payments to FDCo. The MindGeek Entities have produced records from the company's accounting system detailing (a) the total payments made by year to each party to the 2013 Shareholders' Agreement; (b) the types of distributions made pursuant to that agreement; and (c) the year in which the distributions were paid (MindGeek_Fleites_00009212).

Neither Antoon nor Tassillo will search bank statements, which we do not believe is necessary or appropriate in light of the associated burden and the information that has already been produced. Antoon and Tassillo have offered to provide a verification under oath that the payments reflected on the MindGeek records described above are the only payments each has received as a result of their employment and ownership interests. We believe the documents and other information produced provide more than sufficient discovery on this issue.

**3. Documents identifying any entity not consolidated on MindGeek-produced financial statements in which Mr. Tassillo holds an interest that does business with any MindGeek entity or business (RFP 7).**

As we have previously advised you, during the Relevant Period, Antoon and Tassillo had interests in two properties that were leased as office space in Montreal to one of the MindGeek related entities. The MindGeek Entities have produced the leases for the two properties, and records payments made under those leases. (MindGeek_Fleites_00009097-131; MindGeek_Fleites_00009143-47; MindGeek_Fleites_00009133-42; MindGeek_Fleites_00030405; MindGeek_Fleites_00009036-77; MindGeek_Fleites_00030406). Mr. Tassillo will produce the June 13, 2016 purchase agreement for the 7777 Decarie property, and the October 3, 2019 purchase agreement for the 8000 Decarie property.

As also mentioned on our call, Tassillo held interests in two Delaware entities, Appscrutiny LLC and Appiation Management LLC—formed in or about June 2017 and in or about March 2018, respectively. Tassillo identified his interests in these entities in response to Plaintiff's Interrogatory No. 4. Subject to and without waiving his previously stated objections on relevance and other grounds, Tassillo will produce documents identifying Appscrutiny LLC and Appiation Management LLC.

**4. All non-privileged documents and communications concerning Serena Fleites, including any communications concerning her or her claims, made to, from, or among Mr. Tassillo**

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

and any of the Individual Defendants or any MindGeek representatives, executives, or employees (RFP 1, 4, 5).

Neither Antoon nor Tassillo has any documents or communications with Ms. Fleites during the Relevant Period. In addition, without waiving our objections concerning the Relevant Period, we have advised you that neither Antoon nor Tassillo have documents relating to Ms. Fleites through the later period in their personal emails. You asked that we run searches in the Mobile Data (the text messages and other messaging app data that the MindGeek Entities have searched in the past) through the later period, and we took the request under advisement. We will advise you of our position after consultation with counsel for the MindGeek Entities.

**5. All documents and communications concerning Mr. Tassillo's MindGeek-related trips to California and the United States, including documents sufficient to identify the dates, locations, purposes, and substance of those trips where any MindGeek business was conducted or discussed. (RFP 11, ROG 4).**

The MindGeek Entities have produced records from company travel and expenses system showing the dates, locations, and purpose of trips taken by Antoon and Tassillo during the Relevant Period. Plaintiff's requests for all documents and communications concerning our clients' MindGeek-related business trips to California and the United States are overbroad and beyond the scope of jurisdictional discovery. Nonetheless, we will consider any proposed search terms Plaintiff may offer for this request.

**6. All documents and communications concerning Mr. Bergmair's travel for MindGeek-related business, including all documents and communications concerning his trips to 9219-1568 Quebec, Inc. (RFP 6, 14).**

Plaintiff's request for all documents and communications concerning Defendant Bergmair's travel for MindGeek-related business is overbroad, beyond the scope of permissible jurisdictional discovery, not within the scope of Plaintiff's RFPs, and not part of Plaintiff's motion compel that is currently in dispute.

**7. Documents and communications concerning the resignations of Mr. Tassillo and Individual Defendant Feras Antoon (RFP 30).**

Plaintiff's request for documents and communications concerning the resignations of Antoon and Tassillo in June 2022—long after the Relevant Period—is overbroad and beyond the scope of permissible jurisdictional discovery.

**8. All documents and communications made to or from Mr. Tassillo concerning any MindGeek Entity's policies, practices, and/or procedures for CSAM and non-consensual content, (RFP 1, 4, 5, 38-41), including:**

Morvillo Abramowitz Grand Iason & Anello P.C.

>**a. Documents and communications pertaining to the implementation and training of any screening, CSAM, and non-consensual content policies;**
>**b. Training and instruction concerning the use of the Content Management System during the review and screening of uploaded content;**
>**c. Documents and Communications sent to managers and team leads concerning the applicability of policies, practices, and procedures to potential CSAM and non-consensual content;**
>**d. Work schedules and rotation calendars of the screeners and moderators in Cyprus and Montreal; and**
>**e. Policies and directives concerning tagging, descriptions, formatting, optimizing, categorization, reuploading, and optimization of user generated content and uploaded material.**
>**f. During the hearing, you committed to running searches using the terms we provided to you. We therefore ask you to search all possible sources, electronic or paper, including text and other electronic messages, for the following additional search terms:**

In response to Request No. 8 and its various subparts, we note that after our call, we sought confirmation that Plaintiff did not intend these terms to be run in addition to its prior list of approximately 280 CSAM-related search terms included in a letter to counsel for the MindGeek Entities dated February 28, 2023, but that they were to be run instead of that longer list of terms. On March 17, Plaintiff confirmed by email that this was correct, and asked that if Antoon and Tassillo had already run searches related to the longer list of terms, that we produce any responsive material.

As they have previously stated, subject to and without waiving their previously-stated objections, Antoon and Tassillo will run both sets of Plaintiff's CSAM-related search terms (that is, those from the February 28, 2023 letter, and those from the March 13, 2023 letter) over the personal emails from the Relevant Period in their possession, and produce responsive, nonprivileged documents to Plaintiff, if any.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

      Please let us know if we have issues in dispute with respect to Plaintiff's requests in the March 13 Letters, or if an additional meet-and-confer call would be productive. We remain open to discussing these issues in order to reach an agreement and avoid further motion practice.

Very truly yours,

/S/ Jonathan Sack

Jonathan Sack
*Counsel for David Tassillo*

/S/ Jason Brown

Jason Brown
*Counsel for Feras Antoon*

/S/ Nathaniel P.T. Read

Nathaniel P.T. Read
*Counsel for Feras Antoon*