# Exhibit 22

| | |
|---|---|
| **From:** | McMenamin, Ryan |
| **To:** | Doyle, John G.; Bowe, Michael J; Dunn, Joshua P.; Tabaksblat, Lauren |
| **Cc:** | Sack, Jonathan S.; Eszter Vincze; Jason Brown; dwiechert@aol.com; Peacocke, Alex; Nathaniel P.T. Read; Stein, David M. |
| **Subject:** | RE: [External] RE: Fleites v. MindGeek S.a.r.l., et al. (No. 2:21-cv-04920-CJC-ADS) |
| **Date:** | Wednesday, March 29, 2023 9:39:16 PM |
| **Attachments:** | image002.png |

**CAUTION:** External E-mail. Use caution accessing links or attachments.

John,

On behalf of defendants Antoon and Tassillo, I write in response to your March 27 email.

In our March 21 letter, we noted that Mr. Tassillo will produce the June 13, 2016 purchase agreement for the 7777 Decarie property and the October 3, 2019 purchase agreement for the 8000 Decarie property. We expect to make that production on or before April 7, 2023.

Regarding Appscrutiny LLC and Appiation Management LLC, we noted in our March 21 letter (subject to and without waiving our previously stated objections on relevance and other grounds) that Mr. Tassillo would produce documents identifying those entities. That is consistent with Request No. 3 in Plaintiff's March 13 Letters, which seeks "[d]ocuments identifying any entity not consolidated on MindGeek-produced financial statements in which Mr. Tassillo [or Mr. Antoon] holds an interest that does business with any MindGeek entity or business." In any event, we will make a production of documents concerning those entities on or before April 7, 2023. That production will include documents reflecting the dissolutions of these entities and any underlying financial activity.

With respect to Plaintiff's CSAM-related search terms, we note that after our last meet and confer on March 16, Plaintiff confirmed that the intent of Request 8 in the March 13 Letters was to replace the prior list of 280 search terms targets at the direction and implementation of CSAM-policies, and not to provide additional terms. In the spirit of accommodation and in an effort to narrow the issues in dispute for the Court, however, counsel for both Antoon and Tassillo offered to run searches using both sets of terms and produce responsive non-privileged documents, if any. Each set of counsel are reviewing the results of those searches and anticipate producing responsive emails, if any, on or before April 7, 2023.

Please let us know if you wish to follow up on any remaining issues.

Thank you,

Ryan

(On behalf of Jonathan Sack)

**Ryan McMenamin** | Associate
Morvillo Abramowitz Grand Iason & Anello PC
565 Fifth Avenue
New York, New York 10017
Office: 212-880-9537
Cell: 908-230-6200

rmcmenamin@maglaw.com
www.maglaw.com

# Morvillo Abramowitz
## Grand Iason & Anello PC

**From:** Doyle, John G. <JDoyle@brownrudnick.com>
**Sent:** Monday, March 27, 2023 11:19 PM
**To:** Nathaniel P.T. Read <nread@cohengresser.com>; Peacocke, Alex <apeacocke@maglaw.com>; Sack, Jonathan S. <JSack@maglaw.com>; dwiechert@aol.com; Jason Brown <JBrown@CohenGresser.com>; Eszter Vincze <EVincze@CohenGresser.com>; McMenamin, Ryan <RMcMenamin@maglaw.com>
**Cc:** Dunn, Joshua P. <JDunn@brownrudnick.com>; Bowe, Michael J <MBowe@brownrudnick.com>; Stein, David M. <DStein@brownrudnick.com>; Tabaksblat, Lauren <LTabaksblat@brownrudnick.com>
**Subject:** [External] RE: Fleites v. MindGeek S.a.r.l., et al. (No. 2:21-cv-04920-CJC-ADS)

Counsel,

Good evening. In your 3/21 letter and in several of our subsequent exchanges, you committed to searching for and/or producing certain information, including that pertaining to the June 13, 2016 purchase agreement for the 7777 Decarie property, the October 3, 2019 purchase agreement for the 8000 Decarie property, and the documents pertaining to the Appscrutiny and Appiation Management ventures. When do you expect to be complete with each of your searches and when do you plan to begin making these productions?

With respect to your commitments to run both sets of Plaintiff's CSAM-related search terms from Plaintiff's February 28, 2023 and March 13, 2023 letters, and to produce responsive, nonprivileged documents, when do you expect to be complete with these searches and when do you plan to begin making those productions?

For each category of documents and commitments made, we ask that you produce the documents on a rolling basis as soon as they are ready.

Thank you,

John

**brownrudnick**

**John G. Doyle**
Associate

Brown Rudnick LLP
601 Thirteenth Street NW
Washington, D.C. 20005

T: +1 202.536.1706

M: +1 717.226.0329
jdoyle@brownrudnick.com
www.brownrudnick.com

---

**From:** Nathaniel P.T. Read <nread@cohengresser.com>
**Sent:** Thursday, March 23, 2023 5:57 PM
**To:** Doyle, John G. <JDoyle@brownrudnick.com>; Peacocke, Alex <apeacocke@maglaw.com>; Sack, Jonathan S. <JSack@maglaw.com>; dwiechert@aol.com; Jason Brown <JBrown@CohenGresser.com>; Eszter Vincze <EVincze@CohenGresser.com>; McMenamin, Ryan <RMcMenamin@maglaw.com>
**Cc:** Dunn, Joshua P. <JDunn@brownrudnick.com>; Bowe, Michael J <MBowe@brownrudnick.com>; Stein, David M. <DStein@brownrudnick.com>; Tabaksblat, Lauren <LTabaksblat@brownrudnick.com>
**Subject:** RE: Fleites v. MindGeek S.a.r.l., et al. (No. 2:21-cv-04920-CJC-ADS)

> **CAUTION: External E-mail. Use caution accessing links or attachments.**

John – We appreciate receiving Plaintiff's responses. The only additional information we have is to advise you that the MindGeek Entities will perform the following searches on the Mobile Data: (1) searching "Serena" and "Fleites" from June 30, 2020 through June 17, 2021 (as you know, the MindGeek Entities have already run those searches on the Mobile Data for the Relevant Period); and (2) running Plaintiff's search terms from the March 13, 2023, letter for the Relevant Period and also from July 2020 through June 17, 2021. It is clear from your email that this additional information will not change Plaintiff's positions, and thus we are at an impasse on these issues.

Please advise when Plaintiff will provide her portion of the joint submission that must be filed tomorrow, March 24.

Regards,

Nate

---

**From:** Doyle, John G. <JDoyle@brownrudnick.com>
**Sent:** Thursday, March 23, 2023 3:19 PM
**To:** Peacocke, Alex <apeacocke@maglaw.com>; Sack, Jonathan S. <JSack@maglaw.com>; dwiechert@aol.com; Jason Brown <JBrown@CohenGresser.com>; Nathaniel P.T. Read <nread@cohengresser.com>; Eszter Vincze <EVincze@CohenGresser.com>; McMenamin, Ryan <RMcMenamin@maglaw.com>
**Cc:** Dunn, Joshua P. <JDunn@brownrudnick.com>; Bowe, Michael J <MBowe@brownrudnick.com>; Stein, David M. <DStein@brownrudnick.com>; Tabaksblat, Lauren <LTabaksblat@brownrudnick.com>
**Subject:** RE: Fleites v. MindGeek S.a.r.l., et al. (No. 2:21-cv-04920-CJC-ADS)

Counsel,

Please find our response to your March 21, 2023 letter below. We are available to discuss at any time.  Please let us know your final positions as soon as possible.

**Relevant Time Period**
The March 13 Letters suggest that all searches be conducted "at least through June 2021," rather than through June 30, 2020. We believe the appropriate period for jurisdictional discovery is June 1, 2014, through June 30, 2020 (the "Relevant Period"). Antoon and Tassillo proposed the following compromise position: Antoon and Tassillo run search terms for responsive documents through the date of the filing of the complaint in this action, June 17, 2021; and, for documents dated after the Relevant Period, a document would be considered responsive if it related to the implementation and direction of CSAM policy during the Relevant Period. Plaintiff's counsel stated that they would consider this suggested compromise and confer with colleagues before determining whether this compromise was acceptable.  The remainder of the discussion addressed the specific requests in the March 13 Letters. **[Plaintiff: Our request was that Defendants lift the time restriction to the extent it was applied to any of Defendants' searches concerning any of Plaintiff's discovery requests, as we believe the limitation unnecessarily excludes pools of relevant data.  Your response appears to conflate the issue of what you believe is relevant with respect to a CSAM policy search and the overall request to include all pools of potentially relevant material when responding to each of Plaintiff's RFPs.  We believe the following is appropriate:**
   A. **Defendants search for responsive documents through the date of the filing complaint (June 17, 2021) for each of Plaintiff's requests;**
   B. **With respect to Plaintiff's request for documents and communications made to**

    or from Defendants concerning policies, practices, and/or procedures for CSAM and non-consensual content (#8 as identified in Plaintiff's March 13, 2023 letter), Defendants search the expanded timeframe and produce all responsive documents, without the caveat that the only material to be produced from the expanded timeframe (July 1, 2020 – June 17, 2021) is that which is "backwards" looking. Relevant materials to be produced would include not simply those referencing the prior practices, but also discussions about the need to implement policies and practices that MindGeek had previously said were already in place, including those publicly commented on and contained on the organization's various websites or described in the numerous press statements. These include the practices, policies, and procedures included

    in MindGeek's public claims that it maintained a  "robust system for flagging, reviewing, and removing illegal material"  including its "employing an extensive team of human moderators dedicated to manually reviewing all uploads to the site, and using a variety of digital fingerprinting solutions" that included "Microsoft's PhotoDNA, a technology that aids in finding and removing known images of child exploitation, as well as, Vobile, a state-of-the-art fingerprinting software that scans any new upload to the platform." We would also include MindGeek's prior stated policy and practice of "work[ing] with law enforcement efforts and child-protection non-profits" in this category.  In addition, Plaintiff requests that you confirm your willingness to search all possible sources of material, electronic or paper, including text and other electronic messages.  Your letter from March 21, 2023, indicates you will only search personal emails.

C. **Jonathan: Please confirm whether Def. Tassillo is willing to search the "mobile data" that is in his possession.**

**1. Documents identifying Mr. Tassillo's ownership and economic interests in any MindGeek related entity or business (RFP 7).**
As we advised you, the MindGeek entities have produced documents sufficient to show our clients' interests in the MindGeek entities, and Antoon and Tassillo each also addressed this issue in response to Plaintiff's Interrogatory No. 1. We further believe you are mistaken to consider FDCo Holding, Inc. ("FDCo") a "MindGeek related entity," and that that term should refer only to entities consolidated on MindGeek's audited financial statements. FDCo is a separate entity through which Antoon and Tassillo hold their interest in MindGeek; it is not a MindGeek company. How Antoon and Tassillo hold their interests in FDCo relates only to their personal financial planning, and thus is not relevant to personal jurisdiction, including on an alter ego basis. Notwithstanding this objection, the documents produced by the MindGeek Entities demonstrate how Antoon and Tassillo hold their interests in MindGeek, including showing their ownership of the entities that hold the shares of FDCo.  In particular and without limitation, we direct your attention to the October 18, 2013 Shareholders' Agreement (MindGeek_Fleites_00015893); the Manwin Holding Sarl Reorganization & Related Documents (MindGeek_Fleites_00016538); the organizational documents for 9288-1259

Quebec Inc. and 9288-1275 Quebec, Inc., including share certificates (MindGeek_Fleites_00020032); the organizational documents for FDCo—formerly known as MindGeek Holding Inc. (MindGeek_Fleites_00020191); and the March 22, 2018 Amendment to the Shareholders' Agreement (MindGeek_Fleites_00009217). This production, in combination with and Antoon's and Tassillo's responses to Plaintiff's Interrogatory No. 1, is more than sufficient to identify their "ownership and economic interests in any MindGeek related entity or business," and thus no further production in response to Request No. 1 in the March 13 Letters is necessary or proportional to the personal jurisdiction issues in the case. [**Plaintiff – We disagree with Defendants' position that they need only rely on the productions of the MindGeek Entities to fulfill their discovery obligations or that they do not need to produce the documents concerning FDCO Holding Inc. Please confirm whether or not you have conducted any search for the requested material, and if so, provide us with an explanation as to the method used and sources searched for that material. The court has ordered discovery into the alter ego allegations and Defendants' defense that they are separate from the entities in which their interests are held in MindGeek. Will you stipulate that you are the alter egos of these entities for purposes of jurisdiction in this case? If not, you need to produce discovery into the corporate formalities and finances we have requested. In addition, please state whether or not you are in possession of responsive material, but have otherwise withheld it from production based on your objections. Finally, please let us know if this is your final position with respect to your willingness to search for and produce the requested documentation.**]

**2. Documents reflecting all monies invested in, or received from, any MindGeek related entity and the related contract or agreement under which those payments and distributions were made (RFP 3, 7).**
Regarding money invested in MindGeek, as part of the 2013 reorganization, MindGeek Holding Inc —later renamed FDCo—made a nominal investment in MindGeek Sarl of € 31,009.50 (MindGeek_Fleites_ 00020322-73) by acquiring shares at par value.
With respect to money received from MindGeek, Antoon and Tassillo received money from the MindGeek related entities in two categories: (a) salary, employment-related benefits, and bonuses; and (b) shareholder distributions and dividends. The MindGeek Entities have produced records from the company's internal accounting systems reflecting these payments for both Antoon and Tassillo (MindGeek_Fleites_00003002, 3003, 3006, 9212). The MindGeek Entities have also produced Antoon and Tassillo's Further Amended and Restated Employment Agreements dated October 18, 2013 and March 22, 2018 (MindGeek_Fleites_00000042 (Tassillo) and MindGeek_Fleites_00000020 (Antoon)). In addition to these wages, employment-related benefits, and bonuses, from November 19, 2014, to December 29, 2016, Antoon and Tassillo received dividend distributions directly from 9219-1568 Quebec Inc. The MindGeek Entities have produced records from the company's internal accounting system showing the date and amounts of these payments (MindGeek_Fleites_00003002). Beginning in 2017, shareholder distributions to Antoon and Tassillo were made via payments to FDCo. The MindGeek Entities have produced records from the company's accounting system detailing (a) the total payments made by year to each party to the 2013 Shareholders' Agreement; (b) the types of distributions made pursuant to that agreement; and (c) the year in which the distributions were paid (MindGeek_Fleites_00009212). Neither Antoon nor Tassillo will search bank statements, which we do not believe is necessary or appropriate in light

of the associated burden and the information that has already been produced. Antoon and Tassillo have offered to provide a verification under oath that the payments reflected on the MindGeek records described above are the only payments each has received as a result of their employment and ownership interests. We believe the documents and other information produced provide more than sufficient discovery on this issue. [**Plaintiff – We disagree with Defendants' position that they need only rely on the productions of the MindGeek Entities to fulfill their discovery obligations. We do not accept Defendants' offer to provide verifications of these productions as adequate substitutions. We have made clear that we seek summary records Defendants necessarily received and maintained showing monies or other things of value they received from Mindgeek – which would include records of such MindGeek would have been legally required to give to Defendants and which would have been legally required to disclose in some form to the government and the records every person maintains of such things either directly or through financial advisors, etc. We request the financial and accounting documents they maintained in the normal course of business either directly or through their agents reflecting any economic interests in, or money or things of value received from, the MindGeek business, including in any entities in which they or their family members hold interests that do business with MindGeek. You're arguments were expressly rejected by Judge Spaeth when the MindGeek entities raised them in opposition to the letters rogatory. It is not plausible that no such records exist in any form under Defendants' possession or that of third-parties under their control. Please confirm whether or not you will conduct a search for such documents in every source that Defendants Tassillo and Antoon control, including their electronic devices and communications, online storage, and the custody of third-party advisors as you are obligated to do. IF you did so, and found none, please provide us with an explanation as to what was done precisely and whether any such documents were destroyed.]**

**3. Documents identifying any entity not consolidated on MindGeek-produced financial statements in which Mr. Tassillo holds an interest that does business with any MindGeek entity or business (RFP 7).**
As we have previously advised you, during the Relevant Period, Antoon and Tassillo had interests in two properties that were leased as office space in Montreal to one of the MindGeek related entities. The MindGeek Entities have produced the leases for the two properties, and records payments made under those leases. (MindGeek_Fleites_00009097-131; MindGeek_Fleites_00009143-47; MindGeek_Fleites_00009133-42; MindGeek_Fleites_00030405; MindGeek_Fleites_00009036-77; MindGeek_Fleites_00030406). Mr. Tassillo will produce the June 13, 2016 purchase agreement for the 7777 Decarie property, and the October 3, 2019 purchase agreement for the 8000 Decarie property. **[Plaintiff – Agreed.]**
As also mentioned on our call, Tassillo held interests in two Delaware entities, Appscrutiny LLC and Appiation Management LLC—formed in or about June 2017 and in or about March 2018, respectively. Tassillo identified his interests in these entities in response to Plaintiff's Interrogatory No. 4. Subject to and without waiving his previously stated objections on relevance and other

grounds, Tassillo will produce documents identifying Appscrutiny LLC and Appiation Management LLC.  **[Plaintiff – RFP 7 requested documents related to any past or present, direct, or beneficial ownership, lending, or secured or other economic interest in or business relationship with any MindGeek Entity.  Please confirm that Defendants will produce documents sufficient to identify these ownership, lending, and economic/business interests in the referenced LLCs – not simply that they will produce a document identifying the companies.  Again, we request the financial, accounting, and business documents they maintained in the normal course of business either directly or through their agents reflecting any economic interests in, or money or things of value received from, the MindGeek business.  Reliance upon documents produced by the MindGeek Entities is not an acceptable substitute for Defendants' production of the documents and material in their possession or control – this argument was expressly rejected by Judge Spaeth when the MindGeek entities raised them in opposition to the letters rogatory.**

**4. All non-privileged documents and communications concerning Serena Fleites, including any communications concerning her or her claims, made to, from, or among Mr. Tassillo and any of the Individual Defendants or any MindGeek representatives, executives, or employees (RFP 1, 4, 5).**
Neither Antoon nor Tassillo has any documents or communications with Ms. Fleites during the Relevant Period. In addition, without waiving our objections concerning the Relevant Period, we have advised you that neither Antoon nor Tassillo have documents relating to Ms. Fleites through the later period in their personal emails. You asked that we run searches in the Mobile Data (the text messages and other messaging app data that the MindGeek Entities have searched in the past) through the later period, and we took the request under advisement. We will advise you of our position after consultation with counsel for the MindGeek Entities.  **[Plaintiff – This is not responsive.  Plaintiff's request is not singularly for documents or communications *with* Ms. Fleites. Please verify that you have searched for "documents and communications *concerning*" Ms. Fleites.  For each of your searches, please describe the methods used to conduct these searches and state whether any documents responsive to the search were once in Defendants' possession and, if so, whether they were destroyed or disposed of and when.  In addition, please confirm the sources searched.  Plaintiff's request, consistent with the rules of discovery, is that all possible sources, electronic or paper, including text and other electronic messages be searched for this material.  Your response indicates that you have only searched personal emails.  Finally, Plaintiff objects to your continued refusal to search mobile data that is in your possession.  Please notify Plaintiff immediately of whether or not you will search the mobile data.]**

**5. All documents and communications concerning Mr. Tassillo's MindGeek-related trips to California and the United States, including documents sufficient to identify the dates, locations, purposes, and substance of those trips where any MindGeek business was conducted or**

discussed. (RFP 11, ROG 4).

The MindGeek Entities have produced records from company travel and expenses system showing the dates, locations, and purpose of trips taken by Antoon and Tassillo during the Relevant Period. Plaintiff's requests for all documents and communications concerning our clients' MindGeek-related business trips to California and the United States are overbroad and beyond the scope of jurisdictional discovery. Nonetheless, we will consider any proposed search terms Plaintiff may offer for this request. **[Plaintiff – This is not responsive. As discussed during the meet and confer, the documents provided by the MindGeek entities are not sufficient to explain the substance, duration, and nature of Defendants' activities and trips in the United States and California. Your clients have direct knowledge of the means and methods used to carry out those trips. Plaintiff requests that you describe the methods, if any, used to conduct a search for this material, including what sources were searched and the type of searches used. As discussed during the meet and confer, Plaintiff requests that Defendants search their email and messaging applications for information pertaining to the trips using the data provided in the documents produced by the MindGeek Entities. This data is more than sufficient for Defendants to conduct a targeted search using the dates immediately preceding, through, and immediately after the identified trips. Plaintiff will not provide search terms for this request as Defendants directly participated in these trips and know the parameters under which any trip took place and thus are in the best position to direct counsel as to where the material can be found. Please state whether you are willing to conduct these searches.]**

**6. All documents and communications concerning Mr. Bergmair's travel for MindGeek-related business, including all documents and communications concerning his trips to 9219-1568 Quebec, Inc. (RFP 6, 14).**
Plaintiff's request for all documents and communications concerning Defendant Bergmair's travel for MindGeek-related business is overbroad, beyond the scope of permissible jurisdictional discovery, not within the scope of Plaintiff's RFPs, and not part of Plaintiff's motion compel that is currently in dispute. **[Plaintiff – We disagree. Please advise as to whether you have taken any steps to locate responsive material or if you are unwilling to do so.]**

**7. Documents and communications concerning the resignations of Mr. Tassillo and Individual Defendant Feras Antoon (RFP 30).**
Plaintiff's request for documents and communications concerning the resignations of Antoon and Tassillo in June 2022—long after the Relevant Period—is overbroad and beyond the scope of permissible jurisdictional discovery. **[Plaintiff – We disagree and understand Defendants' position is that this issue will need to be addressed by Judge Spaeth.]**

**8. All documents and communications made to or from Mr. Tassillo concerning any MindGeek Entity's policies, practices, and/or procedures for CSAM and non-consensual content, (RFP 1, 4, 5, 38-41), including: a. Documents and communications pertaining to the implementation and training of any screening, CSAM, and non-consensual content policies;**
**b. Training and instruction concerning the use of the Content Management System during the**

review and screening of uploaded content;

c. Documents and Communications sent to managers and team leads concerning the applicability of policies, practices, and procedures to potential CSAM and non-consensual content;

d. Work schedules and rotation calendars of the screeners and moderators in Cyprus and Montreal; and

e. Policies and directives concerning tagging, descriptions, formatting, optimizing, categorization, reuploading, and optimization of user generated content and uploaded material.

f. During the hearing, you committed to running searches using the terms we provided to you. We therefore ask you to search all possible sources, electronic or paper, including text and other electronic messages, for the following additional search terms:

In response to Request No. 8 and its various subparts, we note that after our call, we sought confirmation that Plaintiff did not intend these terms to be run in addition to its prior list of approximately 280 CSAM-related search terms included in a letter to counsel for the MindGeek Entities dated February 28, 2023, but that they were to be run instead of that longer list of terms. On March 17, Plaintiff confirmed by email that this was correct, and asked that if Antoon and Tassillo had already run searches related to the longer list of terms, that we produce any responsive material. As they have previously stated, subject to and without waiving their previously-stated objections, Antoon and Tassillo will run both sets of Plaintiff's CSAM-related search terms (that is, those from the February 28, 2023 letter, and those from the March 13, 2023 letter) over the personal emails from the Relevant Period in their possession, and produce responsive, nonprivileged documents to Plaintiff, if any. **[Please see the response concerning the "Relevant Time Period" above.]**

**brownrudnick**

**John G. Doyle**
Associate

Brown Rudnick LLP
601 Thirteenth Street NW
Washington, D.C. 20005

T: +1 202.536.1706
M: +1 717.226.0329
jdoyle@brownrudnick.com
www.brownrudnick.com

---

**From:** Peacocke, Alex <apeacocke@maglaw.com>
**Sent:** Tuesday, March 21, 2023 8:33 PM
**To:** Dunn, Joshua P. <JDunn@brownrudnick.com>; Bowe, Michael J <MBowe@brownrudnick.com>; Doyle, John G. <JDoyle@brownrudnick.com>; Stein, David M. <DStein@brownrudnick.com>; Tabaksblat, Lauren <LTabaksblat@brownrudnick.com>
**Cc:** Sack, Jonathan S. <JSack@maglaw.com>; dwiechert@aol.com; jbrown@cohengresser.com; nread@cohengresser.com; Eszter Vincze <EVincze@CohenGresser.com>; McMenamin, Ryan

<RMcMenamin@maglaw.com>
**Subject:** Fleites v. MindGeek S.a.r.l., et al. (No. 2:21-cv-04920-CJC-ADS)

**CAUTION: External E-mail. Use caution accessing links or attachments.**

Counsel,

Please see the attached correspondence concerning Antoon's and Tassillo's positions at our meet-and-confer call last Thursday, March 16.

Additionally, in terms of further briefing to the Court, Antoon and Tassillo would suggest that the parties follow the same schedule that we understand is in place for the Urman team: Plaintiff will provide her position to Antoon and Tassillo by end-of-day Wednesday, March 22; and Antoon and Tassillo will provide their position to Plaintiff by noon on Friday, March 24. Please confirm that this arrangement is agreeable to you.

Regards,

Alex

**Alex Peacocke**
Associate
Morvillo Abramowitz Grand Iason & Anello PC
565 Fifth Avenue
New York, NY 10017
212-880-9431 (Office)
646-236-3152 (Mobile)
apeacocke@maglaw.com
www.maglaw.com

## Morvillo Abramowitz
## Grand Iason & Anello PC

NOTICE: This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from their computer.

*******************************************************************************

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or

distribution.

To the extent Brown Rudnick is a "controller" of the "personal data" (as each term is defined in the European General Data Protection Regulation (EU/2016/679) or in the UK's Data Protection Act 2018) you have provided to us in this and other communications between us, please see our privacy statement and summary here which sets out details of the controller, the personal data we have collected, the purposes for which we use it (including any legitimate interests on which we rely), the persons to whom we may transfer the data and when and how we intend to transfer it outside the European Economic Area.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or distribution.

To the extent Brown Rudnick is a "controller" of the "personal data" (as each term is defined in the European General Data Protection Regulation (EU/2016/679) or in the UK's Data Protection Act 2018) you have provided to us in this and other communications between us, please see our privacy statement and summary here which sets out details of the controller, the personal data we have collected, the purposes for which we use it (including any legitimate interests on which we rely), the persons to whom we may transfer the data and when and how we intend to transfer it outside the European Economic Area.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

> **EXTERNAL:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.