# Exhibit 15

1. Plaintiffs seek documents showing the payees for licensing and royalty expenses for MindGeek Freesites reported on MindGeek Freesites and ("MFS") and MindGeek S.a.r.l. ("MGS") financial statements and tax filings produced in this case, including such expenses reported in the segmenting analysis section of the MGS financial statements and the annual reporting packages.

    a. The MGED have agreed to produce "the information in the accounting system that shows how much was paid in royalty/licensing payments by the companies that licensed the Tubesites. Those documents will show from which entity the payments were made and which entity received the payments. To the extent one of those entities also paid royalty payments for intellectual property other than the above identified Tubesites, we are not excluding it from the payment data."

    b. The MGED represent that this will include all such expenses associated with the tubesites regardless of whether they are tubesites operated by MG Freesites.

    c. The MGED objects to Plaintiff's request to produce information for MG Premium on the ground "it would be neither relevant nor proportional given Plaintiff's failure to allege or provide any support for an allegation that content depicting her when she was underage appeared on any paysites operated by MG Premium and further given all of the information the MindGeek Entity Defendants have already produced about the financials for MG Premium and the paysites."

    d. The MGED represent that are records, including the general ledger, that reflect the bank accounts from which Freesites and Premium expenses allocated to them and reflected in the financial statements and reporting packages for them and MindGeek S.a.r.l. were made.

    e. The MGED represent that the majority but not all of the expenses allocated to Freesites and Premium are paid in intra-company transactions and the majority of such expenses paid to outside entities are paid by other MindGeek entities.

    f. ==The MGED will not produce documents identifying any third-parties paid these expenses.==

    g. ==The MGED will not produce documents showing from which bank accounts these expenses were paid.==

    h. ==The MGED will not represent whether the undisclosed fields associated with these expenses identify the bank accounts from which the expenses were paid.==

    i. ==The MGED will not represent whether these expenses were paid from a comingled bank account controlled by a separate entity other than Freesites or Premium.==

    j.    Plaintiff will submit for ruling the refusal to produce responsive documents sufficient to determine whether the licensing and royalty expenses allocated on the financial statements and reporting packages prepared for Freesites and Premium and MindGeek S.a.r.l. to Freesites and Premium were expenses paid to non-consolidated parties or from which bank account(s) they were paid.

2. Plaintiffs seek documents showing the payees for "website service expenses" for MindGeek Freesites reported on MindGeek Freesites and ("MFS") and MindGeek S.a.r.l. ("MGS") financial statements, reporting packages, and tax filings produced in this case to the extent such payees received $500,000 or more in that year, including such expenses reported in the segmenting analysis section of the MGS financial statements. For the avoidance of doubt, you indicated that you will be producing documents associated with the total amount of listed expenses in these line items and not excluding some portion of those expenses on any basis.

    a. The MGED represent that that "MG Freesites Ltd's financial statements identify the portion of website operating expenses that is paid to other MindGeek entities under the Related Party Transactions Note to the audited financial statements and objects to producing more."

    b. The MGED represent that "[f]or other website operating costs, MGED will produce documents that show how the server costs and advertising/traffic buying costs were allocated between the MindGeek entities to the extent such documents exist."

    c. The MGED will not produce information showing what third-parties were paid in excess of $500,000 for any website operating expenses, including the server costs and advertising buying costs, by which MindGeek entity they were paid, from what account they were paid, or how the expenses were calculated.

    d. The MGED will not produce documents identifying any non-consolidated parties paid these expenses.

    e. The MGED will not produce documents showing from which bank accounts these expenses were paid.

    f. The MGED will not represent whether the undisclosed fields associated with these expenses identify the bank accounts from which the expenses were paid.

    g. The MGED will not represent whether these expenses were paid from a comingled bank account controlled by a separate entity other than Freesites or Premium.

    h. Plaintiff will submit for ruling the refusal to produce responsive documents sufficient to determine what non-consolidated parties received over $500,000 in these expenses allocated to Freesites or Premium or from which bank account(s) they were paid.

3.  Plaintiff seeks documents showing the payees for "management expenses" for MindGeek Freesites reported on MindGeek Freesites and ("MFS") and MindGeek S.a.r.l. ("MGS") financial statements and tax filings produced in this case, including such expenses reported in the segmenting analysis section of the MGS financial statements.  For the avoidance of doubt, you indicated that you will be producing documents associated with the total amount of listed expenses in these line items and not excluding some portion of those expenses on any basis.

    a.  The MGED will "produce documentation regarding cost allocations between affiliates. Those documents include the allocation of management fees between MindGeek entities.  Those documents are not limited to the entities that operate the Tubesites, but we have agreed to produce them in full."

    b.  The MGED will not produce information related to management fees paid to third-parties.

    c.  ==The MGED will not produce responsive information for Premium.==

    d.  ==The MGED will not produce documents identifying any third-parties paid these expenses.==

    e.  ==The MGED will not produce documents showing from which bank accounts these expenses were paid.==

    f.  ==The MGED will not represent whether the undisclosed fields associated with these expenses identify the bank accounts from which the expenses were paid.==

    g.  ==The MGED will not represent whether these expenses were paid from a comingled bank account controlled by a separate entity other than Freesites or Premium.==

    h.  Plaintiff will submit for ruling the refusal to produce responsive documents sufficient to determine what non-consolidated parties received over $500,000 in these expenses allocated to Premium and Freesites or from which bank account(s) they were paid.

4.  Plaintiffs seek documents showing the payees for "other expenses" for MindGeek Freesites reported on MindGeek Freesites and ("MFS") and MindGeek S.a.r.l. ("MGS") financial statements and tax filings produced in this case to the extent such payees received $500,000 or more in that year, including such expenses reported in the segmenting analysis section of the MGS financial statements.

    a.  The MGED "have agreed to produce documentation regarding cost allocations between affiliates.  Those documents include the allocation of other operating expenses between MindGeek entities.  Those documents are not limited to the entities that operate the Tubesites, but we have agreed to produce them in full.

    b. ==The MGED will not produce responsive information for Premium.==

    c. ==The MGED will not produce documents identifying any third-parties paid these expenses.==

    d. ==The MGED will not produce documents showing from which bank accounts these expenses were paid.==

    e. ==The MGED will not represent whether the undisclosed fields associated with these expenses identify the bank accounts from which the expenses were paid.==

    f. ==The MGED will not represent whether these expenses were paid from a comingled bank account controlled by a separate entity other than Freesites or Premium.==

    g. <span style="color:red">Plaintiff will submit for ruling the refusal to produce responsive documents sufficient to determine what non-consolidated parties received over $500,000 in these expenses allocated to Premium and Freesites or from which bank account(s) they were paid.</span>

5. All transfer cost pricing analyses expenses payments covered by 1-4, documents showing the basis and method for calculating how those expenses were calculated, and the contracts pursuant to which those payments and calculations were made.

    a. The MGED represent they "have produced all inter-company service agreements involving tubesites. To the extent a transfer pricing study was commissioned for one of those inter-company agreements, we have produced the 2019 version of such transfer pricing study. We are conducting an additional search for versions of those transfer pricing studies from earlier years and will produce what we have. To the extent the MindGeek Entity Defendants are not in possession of the studies for earlier years, which are now 5 or more years old, we have agreed to ask Grant Thornton if they have retained copies from those earlier years and to request that Grant Thornton provide them to the MindGeek Entity Defendants to produce or produce them directly. [And] not every inter-company transaction was the subject of a transfer pricing study. Therefore, we have also agreed to produce documentation maintained in the normal course of business regarding cost allocations between affiliates. Those documents are not limited to the entities that operate the Tubesites, but [] have agreed to produce them in full."

    b. The MGED represent that these documents will include documents reflecting the terms, method, and basis upon which such allocations were made beyond those prepared by Grant Thorton to the extent such documents exist, including with respect to licensing and royalty payments.

    c. MGED represent that the only documents they are aware of and will be producing reflecting the terms, method, and basis for payment of royalty and licensing expenses to RT Ex-US are the licensing agreement to which it is a party and the Shareholder Agreement but to the extent other documents setting forth such information exist they will be produced.

    d. MGED will not produce such information for MG Premium.

    e. <span style="color:red">Plaintiffs will submit for decision d. above.</span>

6. Plaintiffs seek documents showing how the allocation of all shared expenses in which MGFS participated were calculated.

    a. The MGED will produce documents maintained in the normal course of business that show how shared expenses are allocated between the affiliated companies and we are willing to produce them. Those documents contain information about MG Premium Ltd's shared costs and we will not redact that information.

    b. The MGED represent that to the extent documents reflect how the basis and method by which the allocations were made they will be produced.

    c. We have agreement. Plaintiff will not submit this for consideration based on the representation made.

7. Plaintiff seek the information concerning the expenses covered by 1-5 that was provided to the accountants preparing the financial statements that are the subjects of 1-5.

    a. The MGED represent that they will promptly instruct Grant Thorton the MGED are "waiving rights that would otherwise prevent RCGT from producing audited financial statements, tax returns, transfer pricing studies and financial information provided to RCGT for the purpose of its audits, for the relevant entities during the relevant period."

    b. Plaintiffs do not intend to submit this issue for consideration provided it receives written confirmation of this instruction before filing.

8. Plaintiff seeks documents showing the use of the proceeds from the 2013 and 2018 financings, including the payment of any such proceeds to any related party and that you supplement your compensation charts to include amounts paid to the individual defendants in that year.

    a. The MGED will not supplement their charts.

    b. THE MGED represent that this information is set forth in "the previously produced 2014 consolidated audited financial statements for MindGeek, S.a.r.l. which contain

information about the 2013 loan proceeds and their use.  Specifically, we direct you to Notes 4 and 14, [which] resolves this issue."

    c. Plaintiff will ask the Court to compel the MGED to supplement its production of MindGeek S.a.r.l financial statements to include 2013 and supplement its charts from the financial accounting system showing all distributions and compensation the individual defendants for 2013.

9. Plaintiff seeks documents showing all recipients of debt payments and the amounts of those payments from the [MGED] financial accounting system as kept in the normal course of business.
    a. The MGED "will produce information showing debt reduction payments" but not the recipients of those payments.

    b. The MGED represent that the only recipients of amounts reflected in the promised productions are identified in the "financing agreements and other loan documents" produced in this case.

    c. Based on these representations, Plaintiff will not submit this issue for consideration.

10. Plaintiffs seek documents constituting reports, summaries, or explanations of your client's corporate and economic structure, finances, and flow of funds provided to third-parties and any directors of the equivalent without restriction.

    a. The MGED represent that they "have produced or agreed to produce documents provided to or used with lenders, potential third-party investors, and senior executives that relate to the MindGeek Entity Defendants' corporate structure, finances, and flow of funds.  We agreed to confirm that the financial reporting packages already produced are the financial statements used for these purposes."

    b. The MGED further represent that "they have confirmed that the financial reporting packages and financial statements produced are those that were used to present information to lenders and potential investors. In addition, there are documents known as "bridge" documents that sometimes accompany the financial statements.  These documents explain differences between the periodic statements and the audited financial statements.  We will produce those documents as well to the extent they exist."

    c. The MGED further represent that they will produce additional responsive summary document beyond the "bridge" documents to they extent but that no other such documents have been located after a diligent search.

    d. Based on these representations, Plaintiff will not submit this issue for consideration.

11. Plaintiffs seek all contracts, payment records, and transfer cost pricing or other documents explaining the basis for, and calculations of, those payments for all related party transactions other than corporate subsidiaries of MGS identified on the organizational charts you produced in this action. For the avoidance of doubt, responsive documents will include documents for RT Holdings and its subsidiaries and Defendant Bergmair's Bulknet company.

    a. The MGED represent that they have "agreed to produce agreements and payment records for related-party transactions with the Individual Defendants or entities in which the Individual Defendants hold ownership interests."

    b. The MGED further represent "that Transfer Pricing Studies were not commissioned for these transactions. We have confirmed there are no other such transactions."

    c. The MGED further represent that there is no contract governing these transactions and they will produce whatever documents reflect the amounts paid, the services provided, and the basis and method used to calculate the payments to the extent they exist.

    d. Based on these representations Plaintiff does intend to seek the Court's intervention at this time.

12. Plaintiff seeks information showing all monies, economics, or other things of value paid to the individual defendants or entities in which they hold an interest, including through RT Holdings or any business relationships with the entities identified on your organizational charts.

    a. The MGED represent that they have produced documents showing all compensation and distributions to the Individual Defendants or the entities in which they have an economic interest.

    b. The MGED assert that these produced documents show the entities to whom such payments were allocated on the financial accounting system and this is sufficient to determine which entity paid them.

    c. The MGED will not represent whether those payments were made from a comingled bank account controlled by another entity or from a separate bank account held exclusively by the entity to which the payment was allocated in the accounting system.

    d. The MGED represent that they "will produce the payments to Bulknet and if there is a contract or other documentation regarding the scope of services and/or calculations of payments, we will produce those as well."

    e. The MGED represent that the information produced or to be produced for a-b above was from "fields" in the in the financial accounting system."

 f. The MGED represent that they will not disclose what other fields of information exist for such payments.

 g. The MGED represent that the entity to which the Bulknet payments were allocated in the financial accounting system will be included in the documents produced.

 h. The MGED will not produce information showing whether the payments came from a comingled bank account controlled by an entity other than the entity to which the payments were allocated in the financial accounting system.

 i. The MGED represent that the documents responsive to this category that have yet to be produced are limited to Bulknet and that they will produce the document showing the payments made as well as any contract or document reflecting the method and basis for calculating those payments to the extent they exist.

 j. Plaintiff will ask the Court to compel the MGED submit items c, f, and h above for decision.

13. Plaintiff seeks a list of any entities in which any Mindgeek S.a.r.l. or its subsidiaries, or RT Holdings S.a.r.l. and its subsidiaries, owns an interest that is not identified on the organizational charts produced in this action.

 a. The MGED represent that "from the period 2014 to 2020 we have produced the organizational charts that exist and as they were changed over time."

 b. The MGED represent that they "have no other organizational charts for that time period that reflect any additional entities."

 c. The MGED represent that "there may have been from time to time, entities that were in the process of dissolution, and which therefore were not active entities, who do not appear on a particular organizational chart."

 d. The MGED represent that the documents produced in this case identify all entities in which Mindgeek S.arl or its subsidiaries (as identified in the organizational charts produced in this case) holds an ownership interest, as well as, for the avoidance of doubt, any entities in which RT holdings or any of its subsidiaries (as identified in the organizational charts produced in this case) holds an interest.

 e. Based on these representations, Plaintiff will not submit this issue for consideration.

14. Plaintiffs seeks documents identifying all acquisitions by the MindGeek entities identified on the organizational charts and financial statements produced in this case.

    a. The MGED represent that "all acquisitions are disclosed on the corporate organizational charts, the reorganization documents, and/or the audited financial statements which have been produced."

    b. Based on this representation, Plaintiff will not submit this issue for consideration.

15. Plaintiffs seeks documents identifying any ownership interests in any of the entities identified in the organizational charts and financial statements produced in this case.

    a. The MGED represent that "the Individual Defendants only held preferred interests in Class B shares of 9219-1568."
    b. The MGED represent that "the payments made to the Individual Defendants in connection with the Class B shares has been disclosed."

    c. The MGED represent that "the rights, privileges, restrictions and conditions attached to Class B shares used or available for compensating the Individual Defendants who were formerly employed by 9219-1568 are described in the articles of incorporation for 9219-1568, which were previously produced."

    d. The MGED represent that "these shares are non-voting. Therefore, they do not change the percentage of voting stock held by MindGeek RK S.a.r.l."

    e. The MGED will not produce documents identifying any other ownership interests held in any other of the subject entities.

    f. The MGED will not represent that there are no other ownership interest held in any other of the subject entities.

    g. The Plaintiff will ask the Court to compel the MGED to produce documents sufficient to identify any other ownership interests in the entities identified in the consolidated entities identified in the organizational charts produced and the amounts, if any, distributed to those ownership interests.

16. Plaintiffs seek a description of the other information is maintained in the information system from which you produced travel expense information for the individual defendants. We have yet to receive that response.

    a. The MGED content that Plaintiff's March 23rd letter mis-numbers the issues raised in your March 13th letter, you indicated that you 'did not intend to pursue further disclosures at this time.' We consider this issue closed."

    b. Plaintiff agrees this issue is concluded.

17. Plaintiff wants the MGED to produce all contracts for webservices for parties paid more than $500,000 in a year and records reflecting where such vendors are providing services, including the locations of the servers and infrastructure for which services are being provided?

    a. The MGED represent that they have produced the server agreements with Reflected Networks.

    b. The MGED represent that they will produce the agreement with Neustar, which is a provider of domain servers.

    c. The MGED represent that they will produce any agreements with any other company that also provides domain servers.

    d. THE MGED will not produce any additional requested information, including objecting to producing information regarding payments to each and every third-party vendor who provides some website support to any MindGeek entity and information regarding infrastructure as this has already been denied by the court.

    e. See 1-4 above.

18. Plaintiff seeks certain emails and this issue had been resolved.

19. Plaintiff seeks a report issued by Kaplan Hecker that was previously fully briefs
    a. The MGED do not believe this issue is proper for submission in the supplemental submission.

    b. Plaintiff will submit this issue for consideration.

20. Plaintiff seeks a complete set of financial statements for all the years in the period for RT Holdings or its subsidiaries, particularly all the same financial records for these entities as you have for other members of the "MindGeek Group."

    a. The MGED represent that all of RT Holdings financial records are maintained, managed ,and controlled on the same financial accounting management system as the other MGS parent and subsidiaries.

    b. The MGED represent that "[f]or each entity for which we have produced audited financial statements, we have produced those that were prepared during the relevant time period.  RT Holding S.a.r.l. and its subsidiaries are included on the financial reporting packages that have been produced.  If RT Holding has audited financials, we will produce them."

    c. The MGED represent that "[i]f RT Holdings has audited financials, we will produce them"

    d. The MGED represent that they "have confirmed that RT Holding S.a.r.l. does not have audited financial statements," [unaudited financial statements, or annual reporting packages.]

    e. Based on these representation, Plaintiff will not submit this issue for consideration.

21. The Plaintiff sought confirmation that money from MG Freesites and MG Premium did not flow through the Irish subsidiaries in the years they existed.

    a. The MGED represent that "[m]oney from MG Freesites and MG Premium does not flow through the Irish subsidiaries. Although MG Content RT Limited, which operated RedTube between 2014 and 2018, was organized under the laws of Ireland, it did not distribute any money to its Irish parent during the relevant period. In any event, the MindGeek Entity Defendants agree to produce audited financial statements for MG Content RT Limited for those years. To round things out, for the same period, we will also produce audited financial statements for MG Freesites II Ltd, which operated YouPorn between 2014 and 2018."

    b. Based on these representations, Plaintiff will not submit this issue for consideration.

22. Plaintiff seeks production of all information necessary to determine whether the MGED assertion that its entities were properly capitalized and for the MG Entities to either produce such information or abandon that allegation.

    a. The MGED represent that they "most certainly will be making arguments about sufficient or adequate capitalization going forward and believe they have produced material that is more than sufficient to establish that the relevant entities are sufficiently or adequately capitalized."

    b. The MGED will not produce additional information on this topic.

    c. The MGED acknowledge they will not rely on information that has not been produced and that the Plaintiff may argue that they have not produced sufficient evidence to determine this issue.

    d.

    e. Based on these representations, Plaintiff will not submit this issue for decision.