BENJAMIN M. SADUN (287533)
benjamin.sadun@dechert.com
DECHERT LLP
US Bank Tower, 633 West 5th Street,
Suite 4900
Los Angeles, CA 90071-2013
Phone: (213) 808-5721; Fax: (213) 808-5760

KATHLEEN N. MASSEY (*admitted pro hac vice*)
kathleen.massey@dechert.com
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500; Fax: (212) 698 3599

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| SERENA FLEITES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MINDGEEK S.A.R.L.; MG FREESITES, LTD; MINDGEEK USA INCORPORATED; MG PREMIUM LTD.; MG GLOBAL ENTERTAINMENT INC.; 9219-5618 QUEBEC INC.; BERND BERGMAIR; FERAS ANTOON; DAVID TASSILLO; COREY URMAN; VISA INC.; COLBECK CAPITAL DOES 1-5; BERGMAIR DOES 1-5<br><br>　　　　Defendants. | CASE NO. 2:21-CV-04920-CJC-ADS<br><br>Judicial Officer:　Autumn D. Spaeth<br><br>**MINDGEEK S.A.R.L.'S OPPOSED EX PARTE APPLICATION FOR PROTECTIVE ORDER RELATED TO PLAINTIFF'S IMPROPER AND UNTIMELY NOTICE OF RULE 30(b)(6) DEPOSITION AND INCORPORATED POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

CASE NO. 2:21-cv-04920

**MINDGEEK S.A.R.L.'S OPPOSED EX PARTE APPLICATION FOR PROTECTIVE ORDER RELATED TO PLAINTIFF'S IMPROPER AND UNTIMELY NOTICE OF RULE 30(b)(6) DEPOSITION**

# INTRODUCTION

Defendant MindGeek S.a.r.l. ("MindGeek S.a.r.l." or "Defendant") respectfully moves this Court for a protective order related to Plaintiff's untimely and improper Rule 30(b)(6) deposition notice served on May 25, 2023 for a deposition scheduled for June 2, 2023 (the "New Notice"). Plaintiff's New Notice for the first time has identified *sixteen* new topics (with voluminous subparts) on which she is seeking corporate testimony. With only eight days afforded to designate a witness or witnesses and prepare them before the date of the deposition, and with only three weeks remaining to complete jurisdictional discovery, such a request is untimely, particularly given that Plaintiff has had ten months during which she could have timely served a notice on each of these topics.

As an initial matter, Defendant's ex parte application is procedurally appropriate. Absent immediate relief, Defendant will be irreparably prejudiced by being forced to immediately present a 30(b)(6) witness on topics that were noticed for the first time just days ago. The New Notice does not afford Defendant adequate time to designate and prepare a witness or witnesses to testify in response to the notice, creating a situation where Defendant must choose to either direct a witness to answer questions on which he is not (and likely never could be) properly prepared, or alternatively defend against a motion for sanctions brought by Plaintiff. And the need for immediate relief has been caused entirely by Plaintiff's delay in serving her New Notice; there is nothing Defendant could have done to bring this matter before the Court sooner. Accordingly, the requisite circumstances for ex parte relief are present.

Defendant's application should be granted for several reasons. Most significantly, Plaintiff's new 30(b)(6) requests are both untimely and overbroad. Not only was the notice at issue served eight days before the designated deposition date, but it seeks testimony on more than 100 different issues. Such a notice would be improper if timely served; it is all the more inappropriate when sent at the eleventh hour of jurisdictional discovery. And the lateness of the New Notice has made

1

CASE NO. 2:21-cv-04920
**MINDGEEK S.A.R.L.'S OPPOSED EX PARTE APPLICATION FOR PROTECTIVE ORDER RELATED TO PLAINTIFF'S IMPROPER AND UNTIMELY NOTICE OF RULE 30(b)(6) DEPOSITION**

complying with the meet and confer requirements impossible. While Plaintiff will no doubt point to the fact that the Parties held a truncated meet and confer on May 30, 2023 in a last ditch attempt to avoid this application, a negotiation where one party is seeking to hold a gun to the head of the other does not remotely resemble the process demanded by Rule 30(b)(6). The New Notice also seeks testimony on topics that are better directed to individual fact witnesses, that seek duplicative discovery, that are not the proper subject of 30(b)(6) testimony, and that are outside the scope of appropriate jurisdictional discovery.

To be clear, Defendant is not seeking a protective order as to the entirety of Plaintiff's New Notice. Defendant is willing to have its 30(b)(6) witness testify on those issues that were timely noticed in Plaintiff's original August 23, 2022 30(b)(6) notice and those topics from the New Notice that are reasonably related to same. Specifically, Defendant offered to present a witness to address topics 1; 2 (limited to organizational charts); 4; 5 (limited to the factual bases for each claim in the Declaration of Andreas Andreou); 7 (limited to the annual revenues, costs and expenses, profits, and losses for each MindGeek Entity); 8 (limited to related party transactions disclosed in the MindGeek Entities' financial statements); 12 (limited to MindGeek's jurisdictional contacts with the US or California); and the identity and persons likely to have knowledge of the foregoing topics. The remaining topics and subparts noticed by Plaintiff are untimely and improper and the Court should enter a protective order barring testimony related to same.

## BACKGROUND

Plaintiff first served a 30(b)(6) deposition notice on MindGeek S.a.r.l. in this matter on August 23, 2022. *See* Plaintiff's Notice of Rule 30(b)(6) Deposition to Defendant MindGeek S.a.r.l. (Aug. 23, 2022) (Decl. of Michelle Yeary in Support of Application for Protective Order ¶ 2, Ex. A) ("Yeary Decl."). That notice requested

a witness on the following topics:

> 1. The identity of any past or present, direct, indirect, or beneficial owners, shareholders, limited or general partners, lenders, secured parties, or holders of any other economic interest in MindGeek.
>
> 2. The past or present corporate and ownership organization and structure of MindGeek, including the identities of all affiliated or related party entities, corporations, limited partnerships, limited liability companies, partnerships, or other entities; the nature of the direct, indirect or beneficial ownership or other interests held by any such person, entity, or organization; and the owners, members, directors, managers, lenders, secured parties, general or limited partners, executives, and outside law firms and accountants of such entities.
>
> 3. The identity and location of other persons likely to have knowledge of the foregoing topics.
>
> 4. The identity and location of documents and things pertaining to the foregoing topics.

*Id.* at 2. MindGeek S.a.r.l. did not object to that notice, which was limited substantively to questions related to corporate structure and ownership. To the contrary, counsel for Defendant spoke with Plaintiff's counsel by phone on September 9, 2022, and offered to bring the person most knowledgeable on those topics, the Director of Corporate Finance for MG CY Holdings Ltd, Andreas Alkiviades Andreou, from Cyprus to New York for a deposition during the first two weeks of October 2022. Yeary Decl. ¶ 3. Defense counsel followed up by e-mail on September 19, 2022, reiterating Defendant's proposal to hold the deposition during October. E-mail from Christopher Boisvert to Lauren Tabaksblat (Sept. 19, 2022), (Yeary Decl. ¶ 4, Ex. B). Plaintiff declined to schedule a deposition at that time and only recently raised the issue of scheduling it prior to the close of jurisdictional discovery. Yeary Decl. ¶ 5. At no time since first serving her deposition notice on August 23, 2022 has Plaintiff suggested she would be seeking 30(b)(6) testimony on any topic other than

the four listed above. *Id.* ¶ 6.  On the understanding that the deposition would be limited to those four topics, MindGeek S.a.r.l. agreed to produce Mr. Andreou as a 30(b)(6) witness in New York City on June 2, 2023, and he is in New York City now to testify in his personal capacity on June 1 and to testify as a corporate representative on June 2 pursuant to notices sent on August 23, 2022.  *Id.* ¶ 7.

Contrary to this understanding, and with only three weeks remaining in the jurisdictional discovery period, Plaintiff has now served an almost completely new 30(b)(6) notice listing ***nineteen*** topics with dozens of subparts.  Plaintiff's Notice of Rule 30(b)(6) Deposition to Defendant MindGeek S.a.r.l. (May 25, 2023) (Yeary Decl. ¶ 8, Ex. C).   At no time over the last ten months did Plaintiff indicate she would be seeking a 30(b)(6) deposition on newly disclosed Topics 2-3, 5-16, or 18-19, most of which do not relate to corporate structure or ownership and many of which are not appropriately directed to Defendant or are wholly unrelated to jurisdictional discovery.  Yeary Decl. ¶ 9.  Defendant promptly objected the day after receiving the May 25 notice, explaining that Plaintiff's new topics were untimely, that the notice was overbroad, and that Mr. Andreou would limit his testimony to those topics that had been timely disclosed.  *See* MindGeek S.a.r.l.'s Objection to Plaintiff's Improper and Untimely Notice of Rule 30(b)(6) Deposition (May 26, 2023), (Yeary Decl. ¶ 10, Ex. D.)

Plaintiff responded by e-mail on May 28, 2023, asserting that the topics in the New Notice "merely expound on the topics that were previously noticed" and offered to "adjourn the deposition date to the week of 6/5."  E-mail from Lauren Tabaksblat to Michelle Yeary (May 28, 2023) (Yeary Decl. ¶ 11, Ex. E).  Even the most cursory review of Plaintiff's New Notice reveals that the topics do not "merely expound" on those previously served.  For example, topics 2 (except for the reference to organization charts), 3, 7, 8, 9, 10 and 15 all relate to financial issues concerning Defendant and its affiliates.  Topics 6, 11 and 12 seek information primarily in the

possession of the Individual Defendants. Topic 13 requests testimony on "MindGeek's policies, manuals, practices, processes, and rules for moderating, monitoring, formatting, optimizing, filtering, reviewing, screening or removing content on its platform and websites" and related issues. Yeary Decl. ¶ 8, Ex. C at 5. Topic 14 seeks testimony on "[i]nternal or external review of MindGeek's content for CSAM, non-consensual, prohibited or illegal content." *Id.* Topic 16 seeks testimony addressing "[t]he moderation, optimization, dissemination, monetization, and removal of Ms. Fleites content on MindGeek's tubesites and all communications concerning the same" and Topic 19 seeks "[t]he steps taken to remove all unverified content from MindGeek's internet platforms in or about December 2020," both of which relate to content moderation issues. Yeary Decl. ¶ 8, Ex. C at 5-6. Plaintiff's topic 18 seeks testimony about Defendant's document retention policies which are both irrelevant and protected by attorney client privilege. Yeary Decl. ¶ 8, Ex. C at 6. In addition to being overbroad, these topics are not related to the narrow topics related to corporate ownership and organization previously noticed. Accordingly, Defendant responded that Plaintiff's characterization of the notice was inaccurate, that Mr. Andreou had already traveled to the United States for the deposition and had been prepared on the topics timely disclosed, and that his testimony would be limited to those topics. E-mail from Michelle Yeary to Lauren Tabaksblat (May 29, 2023) (Yeary Decl. ¶ 12, Ex. F). Defendant also indicated that they would be willing to "meet and confer [on May 30] for the limited purpose of determining if there are any portions of plaintiff's newly served topics that are reasonably tailored and that sufficiently overlap with the prior notice such that we would consider allowing questioning." *Id.* Plaintiff responded to this e-mail by stating that they would move for sanctions if Mr. Andreou was not prepared on all nineteen topics, including the sixteen first disclosed on May 25, 2023. E-mail from Lauren Tabaksblat to Michelle Yeary (May 29, 2023) (Yeary Decl. ¶ 13, Ex. G). Later on May 30, Defendant again

e-mailed Plaintiff's counsel, stated that Mr. Andreou would be prepared to testify as to topics 1; 2 (limited to organizational charts); 4; 5 (limited to the factual bases for each claim in the Declaration of Andreas Andreou); 7 (limited to the annual revenues, costs and expenses, profits, and losses for each MindGeek Entity); 8 (limited to related party transactions disclosed in the MindGeek Entities' financial statements); 12 (limited to MindGeek's jurisdictional contacts with the US or California); and the identity of persons likely to have knowledge of the foregoing topics in the New Notice. Defendant notified Plaintiff that if she refused to withdraw the remaining topics, Defendant would be forced to seek a protective order. E-mail from Kathleen Massey to Lauren Tabaksblat (May 30, 2023) (Yeary Decl. ¶ 14, Ex. H). Despite Defendant's attempted compromise set forth above, Plaintiff responded that she "will not be withdrawing our notice as to any topics." E-mail from Lauren Tabaksblat to Kathleen Massey (May 30, 2023) (Yeary Decl. ¶ 15, Ex. I).

Given the proximity of June 2, 2023, Plaintiff's abuse of Rule 30(b)(6), and her threat to seek sanctions if Defendant did not seek emergency relief from this Court, Defendant was left with no choice but to file this application.

## LEGAL STANDARDS

Ex parte relief is appropriate when a party shows that "(1) its 'cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures'; and (2) 'the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect.'" *Sleep Number Corp. v. Sizewise Rentals, LLC*, 2019 WL 12536127, *2 (C.D. Cal. Sept. 26, 2019) (quoting *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 491 (C.D. Cal. 1995)).

Pursuant to Federal Rule of Civil Procedure 26, "[a] person from whom discovery is sought may move for a protective order in the court where the action is pending" to protect against "annoyance, embarrassment, oppression, or undue burden

or expense." That court may issue a protective order if the person seeking it demonstrates "good cause." *Id.* Such an order may, among other things, "forbid[] the disclosure or discovery," "forbid[] inquiry into certain matters," or "limit[] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1). Abusive use of Rule 30(b)(6) is good cause for granting a protective order. *See, e.g., Doubt v. NCR Corp.*, 2011 WL 5914284, *2-3 (N.D. Cal. Nov. 28, 2011) (affirming Magistrate Judge's issuance of protective order where 30(b)(6) deposition notice was "radically overbroad and burdensome.").

**ARGUMENT**

**I.   EX PARTE RELIEF IS NECESSARY AND APPROPRIATE**

First, there is a high likelihood that Defendant will be irreparably harmed if Plaintiff is allowed to proceed with the 30(b)(6) deposition on the nineteen topics set forth in the New Notice served on May 25, 2023. "A deposition taken pursuant to Rule 30(b)(6) requires a corporation to designate knowledgeable persons and to prepare them to fully and unevasively answer questions about the designated subject matter." *Matthys v. Barrick Gold of North America, Inc.*, 2021 WL 3604834, *2 (D. Nev. Aug. 13, 2021). To do so, the respondent must know what information is the subject of the testimony, and have time to prepare witnesses informed on those topics. Plaintiff's conduct has created a situation where this is impossible; absent relief from the Court, Defendant will be forced to either direct a witness to answer questions on which he is not (and likely never could be) properly prepared, or alternatively defend against a motion for sanctions brought by Plaintiff. The likelihood of irreparable harm presented by that Hobson's choice is self-evident. Accordingly, Defendant has met its burden to demonstrate irreparable prejudice absent judicial intervention. *Sleep Number Corp.*, 2019 WL 12536127, *2.

Second, Plaintiff is wholly responsible for creating the crisis necessitating this application. As detailed above, Plaintiff served a new 30(b)(6) notice only 8 days

prior to the date agreed to by the Parties for the conduct of a 30(b)(6) deposition on the timely noticed topics and three weeks before the conclusion of jurisdictional discovery. It was not reasonable to expect Defendant to prepare a witness to testify on eight days notice as to sixteen new 30(b)(6) topics mere weeks before the close of jurisdictional discovery. Nevertheless, Defendant agreed that Mr. Andreou would address, at least in part, seven of the nineteen topics in an attempt to resolve this dispute. As set forth above, Plaintiff rejected that proposal and maintained her unreasonable position that a witness must be prepared on all nineteen topics.

Plaintiff's inexplicable delay has made it impossible for Defendant to use the discovery procedure set forth in Local Rule 37-1, and the only way for Defendant to obtain relief was via ex parte application. Accordingly, because there is significant risk of irreparable prejudice and because Defendant is blameless in "creating the crisis" necessitating relief, Defendant has met its preliminary burden to show that relief via ex parte application is appropriate. *Sleep Number Corp.*, 2019 WL 12536127, *2.

## II. PLAINTIFF'S DEPOSITION NOTICE IS UNTIMELY AND OVERBROAD

Plaintiff's new 30(b)(6) deposition notice is both untimely and overbroad. Rule 30(b)(1) requires that "***reasonable*** written notice" of a deposition be provided to every party to the case. Rule 30(b)(6) itself further requires that the notice "describe with reasonable particularity the matters for examination" and that "the serving party and the organization must confer in good faith ***about the matters for examination***." Fed. R. Civ. P. 30(b)(6) (emphasis added); *see also Los Angeles Unified School District v. S&W Atlas Iron & Metal Co., Inc.*, 2022 WL 423412, *1 (C.D. Cal. Jan. 26, 2022). Plaintiff's notice does not comport with these rules.

As a threshold issue, even if Plaintiff had served her new 30(b)(6) notice sooner, the notice is still improper because it is impermissibly broad as a general

matter, and particularly for jurisdictional discovery. *See, e.g.*, *United States v. HVI Cat Canyon, Inc.*, 2016 WL 11683593, *10 (C.D. Cal. Oct. 26, 2016) (granting motion for protection order as to 30(b)(6) deposition notice where "[t]he breadth of the Topics in Plaintiff's 30(b)(6) Notice, considered collectively, would make witness preparation a nearly impossible task."). "[A]ny party suing a corporate entity must implement a discovery strategy that will provide it with the evidence it needs in a manner suited to the scope of the information requested and in a form that the corporation is reasonably able to provide." *Id.* at *8. "A 30(b)(6) deposition is not intended to be the only method to obtain evidence on every aspect of the case, particularly when the case is large and complex, as here." *Id.* "[R]ecognizing that not every disputed fact or issue can or should be the subject of a 30(b)(6) deposition is simply to acknowledge the limits of human memory and of the usefulness of oral testimony." *Id.* Moreover, as set forth in more detail below, while some of the topics listed in the New Notice could potentially be the proper subject of 30(b)(6) testimony had they been timely noticed, many of these topics have already been the subject of voluminous document discovery and would be better directed toward fact witnesses (including the Individual Defendants who are already scheduled to be deposed), rather than a corporate representative.

The topics are also so broad and varied such that one corporate representative of Defendant is unlikely to be able to testify as to each topic, and at this late juncture no potential witnesses have time to become fully versed on all relevant issues. Disclosing sixteen new 30(b)(6) topics (which contain dozens of subtopics) three weeks prior to the end of jurisdictional discovery simply does not afford Defendant with reasonable time to select and effectively prepare one or several 30(b)(6) deponents on such new and overbroad topics in jurisdictional discovery; let alone in the week being demanded by Plaintiff. "The purpose of a Rule 30(b)(6) deposition is to streamline the discovery process." *Valdez v. Leeds*, 2019 WL 316818, *1 (E.D.

Cal. Jan. 24, 2019) (citation omitted); *see also Matthys*, 2021 WL 3604834, *2. "Topics should be drafted in accordance with the widely-recognized understanding that Rule 30(b)(6) is not designed to be a memory contest." *HVI Cat Canyon, Inc.*, 2016 WL 11683593 at *7 (citation omitted). The process is only workable if the responding party has sufficient notice of the topics at issue and time to make certain they can provide a witness to answer all relevant questions. To emphasize and enable those goals, Rule 30(b)(6) was amended in 2020 to require parties to meet and confer on the scope and nature of the testimony requested. This process is necessary so that the responding party can determine the individual (or individuals) best qualified to speak on behalf of the relevant corporate entity. "Candid exchanges about the purposes of the deposition and the organization's information structure may clarify and focus the matters for examination, and enable the organization to designate and to prepare an appropriate witness or witnesses, thereby avoiding later disagreements." 2020 Adv. Comm. Note to Fed. R. Civ. P. 30(b)(6). Although the parties met and conferred at a high level about Plaintiff's New Notice, the breadth of the notice renders any meaningful exchange and proper preparation impossible and is in direct contravention of the federal rule. Moreover, the handful of extra days offered by Plaintiff will make no difference in allowing for adequate preparation, particularly given the likelihood that a different witness or witnesses would need to be prepared on the new topics.

Finally, there is simply no good faith basis for Plaintiff's delay. Each of these topics has been the subject of extensive discovery efforts over the last ten months and Plaintiff could have served a deposition notice addressing these topics months ago. Plaintiff cannot credibly argue that they only recently discovered a (perceived) need for the newly requested corporate testimony. Had Plaintiff served her notice in a timely fashion, the parties could have negotiated on the proper scope in good faith and possibly avoided judicial intervention or at least narrowed the issues for

resolution by the court. At a minimum, this application could have been brought before the Court using the standard Rule 37-1 process.

### III. PLAINTIFF'S TOPICS SEEK INFORMATION BETTER PROVIDED BY FACT WITNESSES, THAT IS DUPLICATIVE OF PREVIOUSLY PRODUCED DISCOVERY, OR INFORMATION THAT IS NOT THE PROPER SUBJECT OF A 30(b)(6) DEPOSITION OF DEFENDANT

Many of the topics listed in the New Notice are not appropriate subjects for a Rule 30(b)(6) deposition because they seek information that could be better provided by fact witnesses, information that is needlessly duplicative of other discovery, or information that Defendant is not capable of providing via a 30(b)(6) deposition. "[N]ot every disputed fact or issue can or should be the subject of a 30(b)(6) deposition." *HVI Cat Canyon, Inc.*, 2016 WL 11683593 at *8. For example, topic 6 requests testimony on "[t]he roles of the Individual Defendants in MindGeek's policies, practices, procedures and business operations." Yeary Decl. ¶ 8, Ex. C at 3. But Plaintiff is deposing each of the Individual Defendants in the coming weeks and those witnesses are much better positioned to answer questions about their role within the company than anyone Defendant could put forward. Duplicative and potentially less informed testimony on the same subject serves no useful purpose and should not be permitted. The same is true of Plaintiff's proposed Topic 12 which requests among other things "MindGeek's and each of the Individual Defendants' past or present jurisdictional contacts with the United States or California." Yeary Decl. ¶ 8, Ex. C at 4-5. Testimony on those subjects insofar as it relates to the Individual Defendants is far more appropriately obtained from them, rather than a company they are no longer associated with.

A number of Plaintiff's requests are also duplicative of other discovery that has already been produced. Topic 9 seeks testimony concerning "Payments made by any MindGeek or any related party to BW Bulknet Ltd., Zoellik Corporation, Somerset

1  Capital Limited, Bright Imperial Limited, NeuStar, Inc., Reflected Networks, Inc., Swiftwill, Inc., Amazon Web Services, Inc., Google Inc., [or] any other entity or person paid for website operating expenses…" Yeary Decl. ¶ 8, Ex. C at 3-4.  But this issue was just addressed in the Court's recent ruling on April 7, 2023, which required the MindGeek Entity Defendants to produce payment information to outside payees for website services but limited the scope to "only those 'Documents sufficient to show'" that information.  *Fleites v. MindGeek S.a.r.l.*, 2023 WL 3526180, *2 (C.D. Cal. Apr. 7, 2023).  Similarly, topics 3, 7, 8, 10 and 15 all relate to financial issues concerning Defendant and its affiliates, which has already been the subject of extensive document discovery and litigation before the Court as to what information must be provided.  *See generally id.*; *Fleites v. MindGeek, S.A.R.L.*, 2023 WL 2629877 (C.D. Cal. Feb. 3, 2023).  The requested testimony would accordingly be either duplicative of discovery already received, or an attempted end run around the Court's rulings on these fully litigated issues.

Moreover, some of the testimony sought is not proper for a 30(b)(6) deposition directed to Defendant.  For example, topic 11 seeks "[a]ll holders of any economic interest in Acaju Investments S.A., Coginvest S.A., Share Investments S.A., Cartwright II SARL, Bright Imperial Limited, and Somerset Capital Limited; the rights and economic interests of holders of such interests in those entities; any contracts, documentation, or other information reflecting the basis for such rights and interests and the valuation of any payments under those rights and interests; the entities obligated to, and which did make, any such payments; the method used to calculate any such payments; the source of funds used to make such payments, including the original, final, and any intermediary bank accounts from which those payments were sourced; and the categories, locations, and custodians of documents and information related to such topics." Yeary Decl. ¶ 8, Ex. C at 4.  This request seeks information about certain shareholders in Defendant and other mostly unrelated

12   CASE NO. 2:21-cv-04920

**MINDGEEK S.A.R.L.'S OPPOSED EX PARTE APPLICATION FOR PROTECTIVE ORDER RELATED TO PLAINTIFF'S IMPROPER AND UNTIMELY NOTICE OF RULE 30(b)(6) DEPOSITION**

companies that were not part of the MindGeek group of companies. Accordingly, Defendant is not able to provide authoritative testimony on most of these topics. Topic 18 also seeks information concerning "document retention policies and practices" and related issues that fall squarely within attorney client privilege and are not, in any event, the appropriate subject of Rule 30(b)(6) testimony.

### IV.   PLAINTIFF'S REQUESTS GO BEYOND THE SCOPE OF PROPER JURISDICTIONAL DISCOVERY

Plaintiff's New Notice also seeks information that is beyond the scope of jurisdictional discovery and in some instances discovery that the Court has already determined to be outside of the scope of jurisdictional discovery. Judge Carney has made clear that "[j]urisdictional discovery is meant to provide Plaintiff the information she needs to make a clear statement regarding the role and conduct of each MindGeek Defendant *separately.*" [Dkt. 168, at 2]. Thus, to exercise personal jurisdiction over MindGeek S.à.r.l. Plaintiff must either show (1) that those entities each have sufficient jurisdictionally relevant contacts such that the Court may exercise specific personal jurisdiction over them, *Fleites v. MindGeek, S.A.R.L.*, 2022 WL 4455558, *1-2, n.3 (C.D. Cal. July 29, 2022), or (2) that Plaintiff may impute the contacts of other MindGeek Entities based on the alter-ego doctrine. *Id.* at *2-3. Information unrelated to those inquiries is not the proper subject of jurisdictional discovery. But Plaintiff's New Notice seeks information that is plainly unrelated to those questions.

As set forth above, topics 13 and 14 seek general information related to the MindGeek Entity Defendants' content moderation policies. While these topics may be appropriate during merits discovery, they have nothing to do with jurisdictional contacts or corporate separateness. Topic 19 similarly seeks testimony regarding the "steps taken to remove all unverified content from MindGeek's internet platforms in or about December 2020," which again has nothing to do with personal jurisdiction.

Yeary Decl. ¶ 8, Ex. C at 6.  And topic 12 *again* seeks testimony and information concerning Defendant's "web or IT services or infrastructure" which the Court has expressly ruled is outside the scope of jurisdictional discovery.  *Fleites*, 2023 WL 2629877 at *4 ("The Court is not convinced that documents related to how Defendants' IT infrastructure operates and functions is appropriately proportional for the Court's jurisdictional analysis.").  Accordingly, even if the New Notice had been timely served, requests seeking information that is not within the relevant scope of jurisdictional discovery would still be inappropriate at this time.

## CONCLUSION

For the foregoing reasons, the Court should enter a protective order and limit the June 2, 2023 deposition to topics related to those previously disclosed by Plaintiff which includes topics 1; 2 (limited to organizational charts); 4; 5 (limited to the factual bases for each claim in the Declaration of Andreas Andreou); 7 (limited to the annual revenues, costs and expenses, profits, and losses for each MindGeek Entity); 8 (limited to related party transactions disclosed in the MindGeek Entities' financial statements); and 12 (limited to MindGeek's jurisdictional contacts with the US or California) in the new notice, as well as the identity of persons likely to have knowledge of those topics.  The Court should also prohibit noticing any further jurisdictional discovery depositions absent leave of Court.

DATED: May 30, 2023

/s/   *Kathleen N. Massey*
KATHLEEN N. MASSEY (*admitted pro hac vice*)
kathleen.massey@dechert.com
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500; Fax: (212) 698 3599
*Attorneys for MindGeek S.a.r.l.*