1   Michael J. Bowe
    (admitted *pro hac vice*)
2   mbowe@brownrudnick.com
    Lauren Tabaksblat
3   (admitted *pro hac vice*)
    ltabaksblat@brownrudnick.com
4   **BROWN RUDNICK LLP**
    7 Times Square
5   New York, NY 10036
    Telephone:   (212) 209-4800
6   Facsimile:    (212) 209-4801

7   *Attorneys for Plaintiff*

8

9                  UNITED STATES DISTRICT COURT
                  CENTRAL DISTRICT OF CALIFORNIA
10                       SOUTHERN DIVISION

11  SERENA FLEITES,                    CASE NO. 2:21-CV-04920-CJC-ADS

12           Plaintiff,                Judicial Officer:   Autumn Spaeth
                                       Courtroom: 6B
13       v.
                                       **DISCOVERY DOCUMENT:**
14  MINDGEEK S.A.R.L.; MG              **REFERRED TO MAGISTRATE**
    FREESITES, LTD; MINDGEEK           **JUDGE AUTUMN D. SPAETH**
15  USA INCORPORATED; MG
    PREMIUM LTD.; MG GLOBAL            **PLAINTIFF'S OPPOSITION TO**
16  ENTERTAINMENT INC.; 9219-          **MINDGEEK S.A.R.L.'S EX PARTE**
    1568 QUEBEC, INC.; BERND           **APPLICATION FOR PROTECTIVE**
17  BERGMAIR; FERAS ANTOON;            **ORDER RELATED TO PLAINTIFF'S**
    DAVID TASSILLO; COREY              **RULE 30(b)(6) DEPOSITION NOTICE**
18  URMAN; VISA INC.; COLBECK
    CAPITAL DOES 1-5;
19  BERGMAIR DOES 1-5                  Jurisdictional Discovery Cutoff:
                                       June 16, 2023
20           Defendants.

21

22

23

24

25

26

27

28

## INTRODUCTION

In seeking to dismiss Plaintiff's complaint for lack of personal jurisdiction, the MindGeek Entity Defendants submitted the declaration of Andreas Alkiviades Andreou (the "Andreou Declaration"), which stated, under oath, that each of the MindGeek entities is adequately capitalized, maintain separate financials, functions, and managements, and that, to the extent one entity provides services to another, those services are renumerated pursuant to third party transfer pricing analyses. (Dkt. 139-3). By Order dated July 29, 2022, Judge Carney concluded that the Andreou Declaration is "rather conclusory and repetitive" and directed MindGeek to submit to jurisdictional discovery to determine whether the MindGeek entities did maintain separate corporate form as MindGeek declared under oath, or whether the entities were alter egos of each other. The Court identified the following questions, among others, as relevant to its determination: (1)"who owns Pornhub"; (2) "where the money flows in the MindGeek web"; (3) which entities or individuals exercise operational control over the MindGeek entities that monetized Plaintiff's child sexual abuse materials ("CSAM"); and  (4) which individuals were responsible for MindGeek's  policies and procedures concerning CSAM and other illegal content. (Dkt. 167 at 3-5).  Plaintiff's 30(b)(6) notice is tailored to answer Judge Carney's questions.

MindGeek concedes that Plaintiff's timely served a 30(b)(6) deposition notice on MindGeek S.A.R.L. in August 2022 for testimony concerning MindGeek's past and present corporate ownership and organizational structure and the identities of past and present owners or holders of any economic interest in the company. (Dkt. 347 at 2-3.)  And they have agreed to designate a corporate representative to testify concerning each of the statements in the Andreou Declaration. (Dkt. 347 at 3.) Nevertheless, MindGeek asserts a blanket objection to the remainder of the topics in Plaintiff's May 23, 2023 amended 30(b)(6) notice (the "Notice") claiming they are overbroad, irrelevant to jurisdictional discovery, and untimely.  Each of these

**PLAINTIFF'S OPPOSITION TO MINDGEEK S.A.R.L.'S EX PARTE APPLICATION FOR PROTECTIVE ORDER RELATED TO PLAINTIFF'S RULE 30(B)(6) DEPOSITION NOTICE**

challenges fails.

First, the topics MindGeek challenges are largely subsumed in the prior, more general topics Plaintiff served in August 2022, which MindGeek has agreed to produce a witness to testify to.  The challenged topics also seek information directly related to the sworn statements in the Andreou Declaration, which MindGeek has agreed to provide testimony on.  Thus, the amended Notice is not overbroad; to the contrary it provides MindGeek with more specificity as to the categories of information Plaintiff intends to examine its corporate designee based on Plaintiff's subsequent review of defendants' document productions, sworn interrogatory responses, and the parties' numerous meet and confers leading up to the noticed deposition date.

Second, the 30(b)(6) topics are directly relevant to the Court's jurisdictional analysis.  Each of the topics is tailored to ascertain the factual bases for the sworn statements in the Andreou Declaration and/or to answer the questions posed by this Court in the July 29, 2022 Order.  Moreover, each of the topics seeks information that has been the subject of numerous prior meet and confers, motions, Court conferences, and Orders.  Not only has this Court repeatedly held these issues are directly relevant to jurisdictional discovery (*see, e.g.,* Dkt. 211, Dkt. 260), counsel for MindGeek invited Plaintiff, in open Court, to depose Mr. Andreou on the statements in his affidavit, and did so again during a subsequent meet and confer.

Finally, defendants' claim that the notice is untimely and there is insufficient time to prepare is equally without merit.  After defendant served its objections to the Amended Notice, Plaintiff initiated a meet and confer to discuss any questions or clarifications about the topics and continues to be willing to do so, but defendant refused to engage in that process and instead asserted that the Amended Notice was too late and the topics too broad to be cured by discussion or time.  Leaving aside that defendants have been on notice of the general topics plaintiff seeks testimony on since August 2022, defendants concede that Mr. Andreou is their head of finance, he

CASE NO. 21-CV-4920-CJC-ADS

**PLAINTIFF'S OPPOSITION TO MINDGEEK S.A.R.L.'S *EX PARTE* APPLICATION FOR PROTECTIVE ORDER RELATED TO PLAINTIFF'S RULE 30(B)(6) DEPOSITION NOTICE**

1  previously submitted a sworn affidavit concerning many of the topics defendants now
2  object to, would be the appropriate witness to testify to these topics and is prepared
3  to talk about several of the finance topics in his personal capacity.  Plaintiff also
4  offered to provide Defendant more time to prepare, or to designate a different witness
5  on certain topics, but Defendant declined these offers, too.

6      Under these circumstances, Defendant cannot demonstrate that Plaintiff's
7  Amended Notice was untimely or is otherwise overbroad, and therefore cannot carry
8  its burden to show that prejudice or harm would result if no protective order were
9  granted.  *See Younger Mfg. Co. v. Kaennon, Inc.,* 247 F.R.D. 586, 588 (C.D. Cal.
10 2007) ("For good cause to exist, the party seeking protection bears the burden of
11 showing specific prejudice or harm will result if no protective order is granted.")
12 (citing *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210
13 (9th Cir. 2002)).

14     Accordingly, the Court should deny MindGeek's motion in its entirety.

15 **I.     THE NOTICED TOPICS ARE PROPER AND RELEVANT**
16 **TO JURISDICTIONAL DISCOVERY.**

17     Defendants' challenge 15 of the 19 topics in the Amended Notice.  Each of
18 these topics is directly relevant to the questions posed by the Court's July 29 Order
19 or the sworn statements made by MindGeek in support of its motion to dismiss for
20 lack of personal jurisdiction:

21

| Topic No. | Topic Description | Nexus |
|---|---|---|
| No. 1 | The identity of any past or present, direct, indirect, or beneficial owners, shareholders, limited or general partners, lenders, secured parties, or holders of any other economic interest in MindGeek. | Unopposed |
| No. 2 | The organizational charts, financial statements and records, financial reporting packages, transfer cost pricing analyses or other affiliate or related party | Andreou Declaration ¶¶ 2, 3, 4, 9 |

3

**PLAINTIFF'S OPPOSITION TO MINDGEEK S.A.R.L.'S *EX PARTE* APPLICATION FOR PROTECTIVE ORDER RELATED TO PLAINTIFF'S RULE 30(B)(6) DEPOSITION NOTICE**

| | | | |
|---|---|---|---|
| | | transaction analyses, tax filings or advice, bank and investor presentations, transaction documents, shareholder agreements, corporate formation, governance, and other records, and Grant Thornton documents produced in this action. | |
| | No. 3 | Payments, compensation, distributions, dividends, services or any other thing of value provided to or received by any direct, indirect or beneficial owners, shareholders, limited partners, or holders of any other economic interest in MindGeek or their family; any contracts, documentation, or other information reflecting the rights and obligations pursuant to which such thing of value was provided and its calculation; the entities obligated to, and which actually provided any such thing of value; the source of any funds used to make or provide such things of value; the original, final, and any intermediary bank accounts from which those payments were sourced; and the categories, locations, and custodians of documents and information related to such topics. | Andreou Declaration ¶¶ 2, 3, 4, 9, 19, 34; Dkt. 167, n.2 |
| | No. 4 | The past or present corporate and ownership organization and structure of MindGeek, including the identities of all affiliated or related party entities, corporations, limited partnerships, limited liability companies, partnerships, or other entities; the nature of the direct, indirect or beneficial ownership or other interests held by any such person, entity, or organization; and the owners, members, directors, managers, lenders, secured parties, general or limited partners, executives, and outside law firms and accountants of such entities. | Unopposed |
| | No. 5 | The factual bases for each claim in the Declaration of Andreas Andreou and the categories, locations, and custodians of documents and information related to such topics. | Andreou Declaration ¶¶ 2, 3, 4, 9; |
| | No. 6 | The roles of the Individual Defendants in MindGeek's policies, practices, procedures and business operations. | Dkt. 167, at 4, 5. |
| | No. 7 | The annual revenues, costs and expenses, profits, and losses for each MindGeek Entity; how such revenues and profits were earned, used, distributed, and taxed; for what any such costs and expenses were incurred; the party to whom such costs and expenses were | Andreou Declaration ¶¶ 2-4, 9, 11, 15, 26, 30, 34; |

| | | | |
|---|---|---|---|
| | | obligated to be paid, the source of any funds used to pay such costs and expenses; the original, final, and any intermediary bank accounts from which such cost or expense payments were sourced; and the categories, locations, and custodians of documents and information related to such topics. | Dkt. 167, n.2 |
| | No. 8 | Intercompany transactions and related party transactions that any MindGeek Entity or its affiliates engaged in; any contracts, documentation, or other information reflecting the rights and obligations pursuant to which such transactions took place; the calculation and its underlying basis for any consideration associated with such transactions; the source of any funds used to provide anything of value in such transactions; the original, final, and any intermediary bank accounts from which any associated payments or credits were sourced; and the categories, locations, and custodians of documents and information related to such topics. | Andreou Declaration ¶¶ 2-4, 9, 11, 15, 26, 30, 34; Dkt. 167, n.2 |
| | No. 9 | Payments made by any MindGeek or any related party to BW Bulknet Ltd., Zoellik Corporation, Somerset Capital Limited, Bright Imperial Limited, NeuStar, Inc., Reflected Networks, Inc., Swiftwill, Inc., Amazon Web Services, Inc., Google Inc., any other entity or person paid for website operating expenses, or any other entity or person in which any individual defendant or their family had an ownership or economic interest; any contracts, transfer pricing analyses or other documentation establishing the basis upon which such payments were calculated; the source of any funds used to provide anything of value in such transactions; the original, final, and any intermediary bank accounts from which any associated payments or credits were sourced; and the categories, locations, and custodians of documents and information related to such topics. | Andreou Declaration ¶¶ 2-4, 9, 10, 11, 12-20; Dkt. 167, n.2 |
| | No. 10 | The amounts paid to MG Ex-US Holding S.a.r.l., IP Licensing S.a.r.l., or any MindgGeek entity or related party in licensing, royalty, or equivalent fees; any contracts, documentation, or other information related to those payment amounts and the basis upon which they were calculated and made; the entity incurring those payment obligations; the contracts under which such obligations arose; the method and underlying | Andreou Declaration ¶¶ 2, 3, 4, 9-11, 15; Dkt. 167, n.2 |

CASE NO. 21-CV-4920-CJC-ADS

**PLAINTIFF'S OPPOSITION TO MINDGEEK S.A.R.L.'S *EX PARTE* APPLICATION FOR PROTECTIVE ORDER RELATED TO PLAINTIFF'S RULE 30(B)(6) DEPOSITION NOTICE**

| | | | |
|---|---|---|---|
| | | basis used to calculate those amounts; the source of funds used to pay those amounts, including the original, final, and any intermediary bank accounts from which those funds were paid; and the categories, locations, and custodians of documents and information related to such topics. | |
| | No. 11 | All holders of any economic interest in Acaju Investments S.A., Coginvest S.A., Share Investments S.A., Cartwright II SARL, Bright Imperial Limited, and Somerset Capital Limited; the rights and economic interests of holders of such interests in those entities; any contracts, documentation, or other information reflecting the basis for such rights and interests and the valuation of any payments under those rights and interests; the entities obligated to, and which did make, any such payments; the method used to calculate any such payments; the source of funds used to make such payments, including the original, final, and any intermediary bank accounts from which those payments were sourced; and the categories, locations, and custodians of documents and information related to such topics. | Andreou Declaration ¶¶ 2, 3, 4, 9-11, 15; Dkt. 167, n.2 |
| | No. 12[1] | MindGeek's and each of the Individual Defendants' past or present jurisdictional contacts with the United States or California. These contacts would include but are not limited to, offices, residences, real estate, internet servers, data centers, or infrastructure located in these jurisdictions; people or entities that provided services or infrastructure, including payment processing, sales or resale, web or IT services or infrastructure, financial, political or media relations, or any agency services in these jurisdictions; revenues derived from, costs incurred from, taxes owed in these jurisdictions; any technology or web infrastructure or services located in these jurisdictions; and the categories, locations, and custodians of documents and information related to such topics, including the policies, practices, and procedures governing the preservation of documents and information | Andreou Declaration ¶¶ 7, 9, 11, 14, 18, 20, 22, 25, 27, 33, Dkt. 167, n.3 |

---

[1] Defendants allege that this Court ruled Topic 12 is outside the scope of jurisdictional discovery, Dkt. 347 at 14. But this is not the Case. The Court ordered defendants to produce documents showing the location of servers and technology centers used to store and transmit documents and only excluded documents that would explain how the IT infrastructure operates and functions.

**PLAINTIFF'S OPPOSITION TO MINDGEEK S.A.R.L.'S *EX PARTE* APPLICATION FOR PROTECTIVE ORDER RELATED TO PLAINTIFF'S RULE 30(B)(6) DEPOSITION NOTICE**

| | | | |
|---|---|---|---|
| No. 13 | MindGeek's policies, manuals, practices, processes, and rules for moderating, monitoring, formatting, optimizing, filtering, reviewing, screening or removing content on its platform and websites; the individuals involved in setting, implementing, and reviewing those policies, manuals, processes, and rules practices; the implementation and compliance with same; the preservation, storage, and storage location of any content removed from MindGeek's platform and websites by MindGeek employees or personnel, and the categories, locations, and custodians of documents and information related to such topics, including the policies, practices, and procedures governing the preservation of documents and information | Dkt. 167, at 5. |
| No. 14 | Internal or external review of MindGeek's content for CSAM, non-consensual, prohibited or illegal content. | Dkt. 167, at 5. |
| No. 15 | The 2013 Management Buyout and related financing, the 2018 financing, and the reported 2023 sale of the MindGeek Defendants' business. | Andreou Declaration ¶¶ 2-4, 6-7. |
| No. 16 | The moderation, optimization, dissemination, monetization, and removal of Ms. Fleites content on MindGeek's tubesites and all communications concerning the same. | Dkt. 167, at 5. |
| No. 17 | The identity and location of persons likely to have knowledge of the foregoing topics. | Unopposed |
| No. 18 | MindGeek's document retention policies and practices; the steps taken to preserve documents and information potentially relevant to this or any other litigation or investigation; the steps taken to locate and produce documents and information in response to Plaintiff's document preservation letter and discovery requests or any other litigation or investigative preservation notice, subpoena, or information request; and documents and information responsive to those requests that once existed but no longer does and, if so, why. | Andreou Declaration ¶¶ 2, 3, 4, 9; |
| No. 19 | The steps taken to remove all unverified content from MindGeek's internet platforms in or about December 2020. | Dkt. 167, at 5. |

CASE NO. 21-CV-4920-CJC-ADS

**PLAINTIFF'S OPPOSITION TO MINDGEEK S.A.R.L.'S *EX PARTE* APPLICATION FOR PROTECTIVE ORDER RELATED TO PLAINTIFF'S RULE 30(B)(6) DEPOSITION NOTICE**

1        MindGeek argues that corporate designee testimony on the challenged topics

2 will be duplicative of testimony from the Individual Defendants concerning their

3 roles in the company and the other discovery produced in this action. (Dkt. 347 at

4 11). But it is black letter law that "Rule 30(b)(6) depositions are fundamentally

5 different from depositions of individuals," and it is not "unreasonably cumulative or

6 duplicative" for Plaintiff to seek "witness testimony that may include testimony

7 explaining answers to interrogatories or the meaning of documents previously

8 produced." *Cedars-Sinai Med. Ctr. v. Quest Diagnostics, Inc.,* No. CV 17-5169 CW

9 (FFMX), 2019 WL 12520126, at *2 (C.D. Cal. Apr. 1, 2019); *Ho v. Marathon Pat.*

10 *Grp., Inc.,* No. 521CV00339PSGSPX, 2021 WL 10862799, at *2 (C.D. Cal. Nov. 9,

11 2021) ("A Rule 30(b)(6) deposition differs from a fact witness deposition in that the

12 designated witness 'testifies as a representative of the entity, his answers bind the

13 entity and he is responsible for providing all the relevant information known or

14 reasonably available to the entity.'" (citing *La. Pac. Corp. v. Money Mkt. 1*

15 *Institutional Inv. Dealer,* 285, F.R.D. 481, 487 (N.D. Cal. 2012)). Defendants do

16 not get to decide what documents and information are sufficient for Plaintiff to

17 establish jurisdiction.

18        MindGeek also argues that the topics concerning the company's practices and

19 operational policies that harmed Plaintiff, including those concerning content

20 review, moderation, optimization, and related actions concerning the removal and

21 reporting of offensive content or CSAM (Topic Nos. 12, 13, 14, and 19) are beyond

22 the scope of jurisdictional discovery. (Dkt. 347 at 13-14). Not so. This Court

23 concluded that "Plaintiff has alleged facts bearing on the MindGeek Individual

24 Defendants direction of specific policies pursuant to which Plaintiff was harmed."

25 (Dkt. 167, at 7; *see also id.* at 5 ("[T]here are various allegations throughout the

26 FAC that identify specific MindGeek policies or practices—which were applied to

27 Plaintiff and her videos—that the MindGeek Individual Defendants allegedly

28 directed or implemented.")). The Court further explained that "[i]t is entirely

CASE NO. 21-CV-4920-CJC-ADS

**PLAINTIFF'S OPPOSITION TO MINDGEEK S.A.R.L.'S *EX PARTE* APPLICATION FOR PROTECTIVE ORDER RELATED TO PLAINTIFF'S RULE 30(B)(6) DEPOSITION NOTICE**

plausible that at least one of the MindGeek Individual Defendants—high up as they were in the MindGeek hierarchy—had substantial involvement in the practices and policies of one of MindGeek's major lines of business that harmed Plaintiff." *(id.* at 7), and conclude that "operating Pornhub and other MindGeek sites in a manner that maximizes the profitability of child porn" would qualify as "[j]urisdictionally relevant conduct." (Dkt. 167, at 3 n.2; *see also id.* at 5 n.5,  Accordingly, Plaintiff properly seeks  corporate designee testimony  related to the adoption of policies and procedures concerning the handling of CSAM, and the Individual Defendants' roles in controlling and directing the various MindGeek entities' operations, particularly as it concerns search engine optimization (SEO) and CSAM, all of which the Court has held is relevant to its jurisdictional analysis.  (Dkt. 167, at 7.)

## II.    PLAINTIFF'S NOTICE IS TIMELY, AND THERE IS NO PREJUDICE TO DEFENDANTS.

Federal Rule of Civil Procedure 30(b)(1) provides that a party desiring to take the deposition of any person "must give reasonable written notice to every other party" stating the time and place of the deposition.  Fed R. Civ. P. 30(b)(1).  "What constitutes reasonable notice depends upon the circumstances of each case."  *HBE Corp. v. Cummins Cal Pac., LLC*, No. SACV1700520JLSJDEX, 2018 WL 6133630, at *1 (C.D. Cal. Jan. 4, 2018).

Despite being on notice of Plaintiff's intent to depose a 30(b)(6) witness from MindGeek S.A.R.L. since August 23, 2022, MindGeek argues that Plaintiff's service of the Amended Notice "only 8 days prior to the date agreed to by the Parties" and only "three weeks before the conclusion of jurisdictional discovery."  (Dkt. 347 at 8) is untimely and prejudicial.   Putting aside Defendant's previous and intimate knowledge of the topics identified in Plaintiff's Amended Notice, eight days is more than reasonable notice for Defendants to prepare for the deposition.  *See Holloway v. 3M Co.,* No. 19-cv-708, 2019 WL 7172600, at *24 (C.D. Cal. Oct. 31, 2019) ("While the seven days' notice for Reyes' deposition is fairly short, particularly because the

**PLAINTIFF'S OPPOSITION TO MINDGEEK S.A.R.L.'S *EX PARTE* APPLICATION FOR PROTECTIVE ORDER RELATED TO PLAINTIFF'S RULE 30(B)(6) DEPOSITION NOTICE**

seven days includes a three-day holiday weekend, courts have found seven days reasonable, and Defendant failed to meet and confer regarding any alternative dates."); *U.S. v. Levin*, No. 08-cr-00326, 2010 WL 2803961, at *3 (C.D. Cal. July 15, 2010) (finding that while "six to ten days' notice may seem like a relatively short period of time, given the facts of this case the Court concludes that the notice provided is reasonable").[2]

Here, MindGeek cannot carry its "burden of showing specific prejudice or harm will result if no protective order is granted," *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002), because it has long been on notice of the subject topics and routinely asserted to both the Court and Plaintiff that they would produce Mr. Andreou to discuss the subject topics.  On November 16, 2022, in opposing Plaintiff's requests for the issuance of Letters Rogatory, the MindGeek Entity Defendants said they did not object to 30(b)(6) testimony concerning MindGeek's "corporate structure and related financial issues as well as a deposition of [Mr. Andreou] who is Director of Corporate Finance."  Doyle Decl., Ex. 1, Excerpt of Nov. 16, 2022 Hearing Transcript.  During the parties' March 16, 2023 discovery meet and confer, which concerned, amongst other things, Plaintiff's requests for information concerning MindGeek's complicated organizational structure and financial accounting and distributions, counsel for the MindGeek Entities specifically represented to Plaintiff that we "asked for a 30(b)(6) and Mr. Andreas has an accounting background.  So you could start by taking his deposition

---

[2] Indeed, other courts within this circuit "construe 'reasonable notice' to be five days, if the deposition notice does not require production of documents at the deposition." *Guzman v. Bridgepoint Educ., Inc.,* No. 11-0069-WQH WVG, 2014 WL 1670094, at *2 (S.D. Cal. Apr. 28, 2014); *see also Pac. Mar. Freight, Inc. v. Foster*, No. 10-cv-578, 2013 WL 6118410, at *2 n.2. (S.D. Cal. Nov. 20, 2013) ("Commonly, courts find that notice of at least five days is sufficient for a party's deposition"); and *Jones v. United States,* 720 F.Supp. 355, 366 (S.D.N.Y.1989) (holding that eight days' notice was reasonable).

**PLAINTIFF'S OPPOSITION TO MINDGEEK S.A.R.L.'S *EX PARTE* APPLICATION FOR PROTECTIVE ORDER RELATED TO PLAINTIFF'S RULE 30(B)(6) DEPOSITION NOTICE**

1  perhaps.  I think he will be more helpful tha[n] I am on the companies [sic] financial

2  statements."   Doyle Decl., Ex. 2, Excerpt of Mar. 16, 2023 Meet and Confer

3  Transcript.

4          Conclusory or generalized assertions of undue burden are not a sufficient basis

5  for issuing a protective order. *United States v. HVI Cat Canyon, Inc.*, No. 11-cv-5097

6  FMO (SSX), 2016 WL 11683593 at *5 (C.D. Cal. Oct. 26, 2016).   The burden

7  expressed here by MindGeek is no more than that recognized by courts as "merely

8  the result of the concomitant obligation from the privilege of being able to use the

9  corporate form in order to conduct business," *Id.* at *6 (quoting *United States v.*

10 *Taylor*, 166 F.R.D. 356, 362 (M.D. N.C. 1996).  Absent evidence of the specific undue

11 burden, no protective order should issue.

12         MindGeek has failed to meet its burden. The very witness that defendant

13 alleges cannot be prepared in time, is the same witness who has issued a detailed

14 declaration in this matter on behalf of the corporate entity in support of that entity's

15 motion for dismissal for lack of personal jurisdiction and concerning many of the

16 topics at issue on this motion. *See* Dkt. 70-2 and Dkt. 139-3.  Moreover, Andreou has

17 plainly acknowledged that he was the "Director of Corporate Finance" from 2013

18 until his departure and "served as a Class A manager (the equivalent of a director) for

19 MindGeek S.a.r.l. since 2016." Dkt. 139-3 at ¶¶ 1-2.  Given Andreou's long-held and

20 deep familiarity with MindGeek financial and organizational structure, and his

21 position as director for MindGeek S.a.r.l., there is no reason he cannot be prepared

22 for the deposition.

23         Defendant relies upon *United States v. HVI Cat Canyon, Inc.*, 11-cv-5097

24 FMO (SSX), 2016 WL 11683593 (C.D. Ca. Oct. 26, 2016) for the proposition that

25 Plaintiff's Amended Notice is so overbroad that it is impossible to prepare for the

26 deposition.  (Dkt. 347 at 10) ("the breadth of the notice renders any meaningful

27 exchange and proper preparation impossible").  But, unlike the situation in *HVI,*

28 where the notice contained over 60 topics concerning highly detailed inquiries into

**PLAINTIFF'S OPPOSITION TO MINDGEEK S.A.R.L.'S *EX PARTE* APPLICATION FOR PROTECTIVE ORDER RELATED TO PLAINTIFF'S RULE 30(B)(6) DEPOSITION NOTICE**

oil spills across 5 years and 12 covered facilities, and additional topics that would require experts and the input of attorneys, the Amended Notice here is limited to the very subjects of which Mr. Andreou has asserted expertise and knowledge or could otherwise very rapidly ascertain and understand the answers to based on his lengthy employment and experience as an officer in the company.  "The reason for adopting Rule 30(b)(6) was not to provide greater notice or protections to corporate deponents, but rather to have the right person present at deposition."  *Loop AI Labs Inc. v. Gatti*, No. 15cv-00798, 2016 WL 913377 at *1 (N.D. Cal. Mar. 10, 2016) (citing *King v. Pratt & Whitney*, 161 F.R.D. 475, 476 (S.D. Fla. 1995).  "A deposition notice is sufficiently particular when it is relevant to the underlying claims, covers a reasonable period of time, and is narrowly tailored."  *Tumbling v. Merced Irrigation District*, No. 08-cv-1801, 2009 WL 5064994 (E.D. Cal. Dec. 16, 2009) (citing *Astellas Pharma, Inc. v. Impax Laboratories, Inc.*, 2009 WL 2392166, *3 (N. D. Cal. 2009)).

Mr. Andreou, has been at the forefront of this litigation and has affirmatively impugned Plaintiff's allegations, referring to them as "baseless," Dkt. 139-3 at ¶ 3, and calling her allegations regarding the financial operations of the MindGeek corporate entities "inaccurate and misleading."  *Id.* at ¶ 9.  In his most recent declaration, Andreou affirmatively told this Court that "each change to the corporate structure was for a legitimate business purpose" and went on to briefly discuss the reasoning for the creation of MindGeek S.a.r.l. (Dkt. 139-3, ¶¶ 4-5).  Presumably, this assertion required familiarity and knowledge of the inner workings and decisions made within the company.  Similarly, Andreou told the Court that the Defendants each "has its own bank accounts," that transfer pricing studies were used to determine price ranges for intercompany services to ensure proper tax accounting, and that the "MindGeek Defendants have not operated and do not operate as a single business entity but instead have existed and operated as distinct legal entities since before at least 2014."  *Id.* at ¶¶ 9-11.

Despite his professed expertise regarding MindGeek's organizational structure

12

**PLAINTIFF'S OPPOSITION TO MINDGEEK S.A.R.L.'S *EX PARTE* APPLICATION FOR PROTECTIVE ORDER RELATED TO PLAINTIFF'S RULE 30(B)(6) DEPOSITION NOTICE**

and finances, Defendant now seeks to limit their witness's testimony and thus preclude the Court from evaluating the very facts it instructed the parties to obtain. *See Rodriguez v. SeaBreeze JetLev LLC*, No. 20-cv-07073, 2022 WL 1117197 (N.D. Cal. Apr. 14, 2022) (granting motion to compel depositions and concluding that Defendants cannot claim that the need to prepare for the 30(b)(6) deposition is a "complete surprise" due to informal notice); *see also HBE Corp. v. Cummins Cal Pac., LLC*, No. SACV1700520JLSJDEX, 2018 WL 6133630 at*2 ("The Court also considers the history of the conduct of discovery in [the] case in assessing reasonableness."); *City of Colton v. Am. Promotional Events Inc.*, No. CV0501479JFWSSX, 2006 WL 8436705 (C.D. Cal. Sept. 21, 2006) (Finding that the corporation was arguably on notice as soon as it was made aware that the Plaintiff intended to take the 30(b)(6) deposition).

Finally, MindGeek's request for a protective order should also be denied because there is no emergency and any crisis is of Defendant's own making. As set forth above, Defendants have had adequate notice. But in any event, Plaintiff offered to postpone the 30(b)(6) deposition by a week in the event that additional time was needed to prepare Mr. Andreou or another 30(b)(6) witness on the noticed topics. But Defendant has refused to provide a witness on the properly noticed topics despite this flexibility from Plaintiff. Plaintiff's reasonable attempts to accommodate Defendant are further evidence that Defendant has "creat[ed] the crisis that requires ex parte relief." *Mission Power Eng'g Co. v. Continental Cas. Co.,* 833 F. Supp. 488, 491 (C.D. Cal. 1995); *see HBE Corp. v. Cummins Cal Pac., LLC*, No. SACV1700520JLSJDEX, 2018 WL 6133630, (C.D. Cal. Jan. 4, 2018) (Denying a protective order where Defendant refused Plaintiff's proposal to delay the 30(b)(6) deposition by ive days to allow more time for preparation), *Rodriguez v. SeaBreeze JetLev LLC*, No. 20-cv-07073, 2022 WL 1117197 (N.D. Cal. Apr. 14, 2022) (Granting a motion to compel where Plaintiff's counsel offered to "accommodate reasonable schedule changes.").

## CONCLUSION

Defendants have not shown good cause to issue a protective order nor that any harm or prejudice would result if the deposition proceeds.  The notice provided reasonable time to prepare, especially given the witness's background with, and sworn testimony about, these issues.  Moreover, the topics are specifically tailored to what the Court said was relevant to the jurisdictional analysis and to what the parties have been addressing in dozens of meet and confers, discovery motions, and Court hearings over many months now.  These are the core issues in this phase of the case, and Defendant has been well aware of that for quite some time.  Accordingly, this Court should deny Defendant's motion.


Dated: May 31, 2023                    Respectfully Submitted

                                       **BROWN RUDNICK LLP**


                                       By:   s/ Michael J. Bowe
                                       MICHAEL J. BOWE (*pro hac vice*)
                                       mbowe@brownrudnick.com
                                       LAUREN TABAKSBLAT
                                       (*pro hac vice*)
                                       ltabaksblat@brownrudnick.com
                                       7 Times Square
                                       New York, NY 10036
                                       Phone: (212) 209-4800
                                       Fax: (212) 209-4801

                                       David M. Stein (#198256)
                                       dstein@brownrudnick.com
                                       2211 Michelson Drive, 7th Floor
                                       Irvine, California  92612
                                       Telephone: (949) 752-7100
                                       Facsimile:  (949) 252-1514

                                       Attorneys for Plaintiffs

**PLAINTIFF'S OPPOSITION TO MINDGEEK S.A.R.L.'S *EX PARTE* APPLICATION FOR PROTECTIVE ORDER RELATED TO PLAINTIFF'S RULE 30(B)(6) DEPOSITION NOTICE**