UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)

SERENA FLEITES, ET AL.,        ) CASE NO: 2:21-cv-04920-CJC-ADSx
                               )
              Plaintiffs,      )              CIVIL
                               )
     vs.                       )         Santa Ana, California
                               )
MINDGEEK S.A.R.L., ET AL.,     )         Thursday, May 18, 2023
                               )      (10:05 a.m. to 10:39 a.m.)
              Defendants.      )      (11:05 a.m. to 11:07 a.m.)


HEARING RE:

INFORMAL DISCOVERY CONFERENCE

BEFORE THE HONORABLE AUTUMN D. SPAETH,
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:                   SEE PAGE 2


Court Reporter:                Recorded; CourtSmart


Courtroom Deputy:              Kristee Hopkins


Transcribed by:                Exceptional Reporting Services, Inc.
                               P.O. Box 8365
                               Corpus Christi, TX 78468
                               361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>APPEARANCES</u>:


For Plaintiffs:              LAUREN TABAKSBLAT, ESQ.
                            Brown Rudnick
                            7 Times Square
                            New York, NY 10036

                            DAVID M. STEIN, ESQ.
                            Brown Rudnick
                            2211 Michelson Drive
                            7th Floor
                            Irvine, CA 92612

                            JOHN G. DOYLE, ESQ.
                            Brown Rudnick
                            601 Thirteenth Street NW
                            Suite 600
                            Washington, DC 20005

For Defendants:              RONALD G. WHITE, ESQ.
                            JEFFREY C. SKINNER, ESQ.
                            Walken Macht & Haran
                            250 Vesey St., 27th Floor
                            New York, NY 10281

                            DAN E. MARMALEFSKY, ESQ.
                            Morrison & Foerster
                            707 Wilshire Boulevard
                            Suite 6000
                            Los Angeles, CA 90017

1      **Santa Ana, California; Thursday, May 18, 2023; 10:05 a.m.**

2                      **(Call to Order)**

3          **THE CLERK:** Calling Case CV 21-4920-CJC-ADSx, *Serena*

4  *Fleites, et al. versus MindGeek S.A.R.L., et al.* And counsel,

5  please state your appearances starting with Plaintiff.

6          **MR. STEIN:** Good morning, Your Honor. David Stein

7  from Brown Rudnick for the Plaintiff.

8          **THE COURT:** Good morning.

9          **MS. TABAKSBLAT:** Good morning, Your Honor. Lauren

10  Tabaksblat from Brown Rudnick on behalf of the Plaintiff.

11          **THE COURT:** Good morning.

12          **MR. DOYLE:** And good morning, Your Honor. John

13  Doyle, Brown Rudnick, on behalf of the Plaintiff.

14          **THE COURT:** All right, good morning.

15          Is there anyone present for the Defendants?

16          **MR. WHITE:** Yes, Your Honor. Ronald White from

17  Walden Macht and Haran for the defendant, Mr. Bergmair.

18          **THE COURT:** All right. Good morning.

19          **MR. WHITE:** Good morning.

20          **MR. MARMALEFSKY:** Dan Marmalefsky from Morrison and

21  Foerster also for Mr. Bergmair.

22          **THE COURT:** Good morning.

23          **MR. SKINNER:** Jeffrey Skinner from Walden Macht and

24  Haran for Mr. Bergmair.

25          **THE COURT:** All right. Good morning. Anyone else?

4

 1      **(No audible response)**

 2           All right.  So we have three counsel for the Moving

 3    Party and three counsel for the Plaintiff.  From what I can

 4    tell, based on my IDC, this is a request for Mr. Bergmair so

 5    let me hear from whichever counsel is going to be handling this

 6    oral argument.

 7           **MR. WHITE:**  Sure, Your Honor.  This is Ronald White.

 8    I'll be speaking for Mr. Bergmair.  So thank you for your time,

 9    Your Honor.

10           The issue before the Court today I'd suggest is a

11    straightforward one.  The relevant facts I think are undisputed

12    and the caselaw is clear.

13           So the caselaw recognizes a presumption that a party

14    such as Mr. Bergmair should be deposed in his place of

15    residence.  And despite the presumption the Plaintiffs have

16    noticed his deposition for Irvine California, even though as

17    she concedes in her complaint, he's a resident of Hong Kong.

18           So to begin with I guess let's talk about things that

19    aren't in dispute.

20           I don't believe there's any real dispute that he's --

21    Mr. Bergmair is a resident of Hong Kong.  I mean it's obvious

22    why Plaintiff conceded that in her complaint.  He has permanent

23    resident status in Hong Kong granted by the Hong Kong

24    government since 2011.  That's where he has his primary

25    residence where he lives with his family.  He has a Hong Kong

1   driver's license.  His daughter -- his school-age daughter

2   attends school fulltime in Hong Kong.

3            As for connections to the U.S., he doesn't live or

4   work here and hasn't even set foot in the U.S. in the last

5   three years.

6            What's also undisputed, Your Honor, is that the

7   permitted scope of the deposition here is narrow, it's just

8   limited to jurisdictional issues.

9            And relevant to that, there's no dispute that

10  Mr. Bergmair was never an officer or director or employment of

11  MindGeek.  He's simply a shareholder.  He's not involved in the

12  day-to-day operations of the company which are handled fulltime

13  by a fulltime CEO and senior management team in Montreal.

14           And documents produced in the case already confirm

15  that for the relevant period here, from 2014 to 2020,

16  Mr. Bergmair had just two brief MindGeek-related meetings in

17  California, neither of which are related to any issue in the

18  case.  So that's it, just two meetings in six years.

19           In terms of the deposition, for him to attend the

20  deposition in California would require him to travel for

21  approximately a week, a better part of a week, roundtrip, for a

22  short deposition on narrow issues.  So for reference, a direct

23  flight from Hong Kong to LA is approximately 13 to 14 hours

24  over two days.  After he cleared Customs and got to Irvine,

25  door to door it's probably about 18 hours if everything goes

1  right.  Then once in California, there's a 15-hour time

2  difference with Hong Kong so he'd have to give himself time to

3  recover from jetlag, prepare for his deposition, attend his

4  deposition, and then turn around and repeat the process to go

5  back home.  So all of which would likely consume the better

6  part of a week.

7      So our position is he shouldn't be compelled to fly

8  from literally the other side of the earth for a deposition

9  that, if it's conducted in a reasonable fashion, should only

10  last a few hours.  And I think that's especially true, I'd

11  suggest, in this day and age where Zoom depositions are

12  commonplace.  So if Plaintiff -- and Plaintiff can avail

13  herself of that option if she doesn't -- if her counsel doesn't

14  want to travel.

15      So just to be more specific, so the analysis starts I

16  think Your Honor with the proposition that in the caselaw,

17  there's a presumption that because a defendant has had no say

18  in the choice of forum, a defendant should be deposed in his

19  place of residence unless the party seeking the deposition can

20  establish exceptional circumstances.  So exceptional

21  circumstances is the test.

22      And we cited in our submission, Your Honor, <u>Alexis</u>

23  <u>versus Rogers</u> for that proposition.  There's also numerous

24  other California cases that recognize that presumption and of

25  course we're happy to provide the Court with the citations if

1    that would be helpful.

2            Also relevant is that *Alexis* and other courts have

3    held that that presumption applies even more strongly where the

4    defendant resides in a foreign country as is the case here.

5            So here, Your Honor, I'd suggest the Plaintiff can

6    establish the required exceptional circumstances.

7            As best I can understand it, the only argument the

8    Plaintiff has to oppose taking his deposition in Hong Kong is

9    that her counsel don't want the inconvenience of traveling to

10   Mr. Bergmair; instead, they want him to bear the inconvenience

11   of travelling to them, but that doesn't amount to exceptional

12   circumstances.

13           So let me just address the three primary facts that

14   the Plaintiff mentions in her portion of the submission to the

15   Court and how they don't amount to exceptional circumstances.

16           First, Your Honor, the Plaintiff suggests that

17   because MindGeek maintains offices in California, that it's an

18   appropriate location for Mr. Bergmair's deposition but that

19   really confuses the company with Mr. Bergmair.  He's not being

20   deposed as a 30(b)(6) witness or as a corporate representative,

21   he's simply a private investor.  He invests in companies and

22   leaves the operations of the company to management experienced

23   in that industry and MindGeek's one of those companies.  So

24   he's just an investor or shareholder in MindGeek.  He's never

25   held any management or other position there.  So the fact that

1    MindGeek has subsidiaries in California doesn't mean that

2    Mr. Bergmair, who's simply a shareholder, has his principal

3    place of business in California.

4             So for example, Your Honor, if I own shares in Apple,

5    that doesn't make my place of business Cupertino, California.

6    And by the way, California is not even MindGeek's principal

7    place of business -- Montreal is -- so the Plaintiff concedes

8    that in her amended complaint.  You know, it does have two

9    small subsidiaries in California but -- and that may be

10   sufficient to confer jurisdiction on those subsidiaries but it

11   doesn't -- it certainly doesn't mean that that's MindGeek's

12   principal place of business and it certainly is not

13   Mr. Bergmair's principal place of business.

14            Second fact that Plaintiff cites, Your Honor, I think

15   can be quickly dispatched.  They cite the fact that he's

16   previously travelled to California for business.  But as I

17   noted, he -- those are basically just two -- a grand total of

18   two times during the relevant six-year period and not at all in

19   the last three years, so that hardly shows a connection to the

20   district that constitutes exceptional circumstances.

21            And then the third -- the third fact that the

22   Plaintiff cites is what they call the "cost and inconvenience"

23   of holding the deposition in Hong Kong.  But again, I think the

24   argument boils down to the claim that well it's Mr. Bergmair

25   who should be inconvenienced instead of Plaintiff's counsel.

1        Caselaw from the Central District makes clear that

2 the convenience of counsel is to be given less weight than that

3 of the witness to be deposed.  And again, we can provide the

4 Court with the relevant citations if you'd like.

5        You know, Plaintiff's counsel here, Brown Rudnick, is

6 a global law firm with hundreds of lawyers.  Their website

7 tells their clients that they have a (quote), "extended global

8 network," (unquote), because they're part of an international

9 network of foreign law firms, including one in Hong Kong.  So

10 surely I think they can manage the logistics of a single,

11 half-day deposition in Hong Kong.

12        But I think Plaintiff, Your Honor, really ignores

13 kind of the elephant in the room which is that technology can

14 alleviate a lot of the costs and inconvenience that they cite.

15 If they don't want to travel to Hong Kong, they can take

16 Mr. Bergmair's deposition by Zoom.  We all have learned since

17 the advent of Covid, Your Honor, three years ago, that Zoom

18 depositions have basically become the new normal.

19        California courts, including Judge Carney to whom

20 this case is assigned, have ruled similarly.  For example, in a

21 2020 case Judge Carney said that post-pandemic attorneys are

22 adapting to new ways to practice law, including preparing for

23 and conducting depositions remotely and noting that remote

24 video conference depositions tend to be effective and

25 efficient.

1          I point out too, Your Honor, that the major court

2    reporter services have document platforms and software that

3    allow the seamless display of documents to witnesses and to all

4    deposition participants so the use of documents in a deposition

5    is no impediment to having an effective remote deposition.

6          And then a couple final points.

7          There are numerous American and other international

8    court reporting services who regularly handle depositions in

9    Hong Kong in connection with U.S. litigation, either in person

10   or remotely.  It's so common that the U.S. consulate in Hong

11   Kong actually publishes on its website a list of court

12   reporters available for that purpose.  And I point that even if

13   Plaintiff wanted to have her counsel question Mr. Bergmair in

14   person, all the other counsel could attend remotely, if they

15   wanted.  And if that's what Plaintiff wanted to do, then her

16   cost and inconvenience -- which under the caselaw is entitled

17   to less weight -- but her cost and inconvenience would be the

18   same as Mr. Bergmair's, either one lawyer flying from the U.S.

19   to Hong Kong or Mr. Bergmair flying in the other direction to

20   the U.S.

21         So Your Honor, I guess I'd say given the distance

22   between the U.S. and Hong Kong -- which is just an inescapable

23   fact -- and the limited scope of this deposition, this would

24   seem to be the perfect example of a situation where a remote

25   deposition would be appropriate if the Plaintiff's counsel

1  don't want to travel and they want to avoid the cost and

2  inconvenience that they cite.

3          So Your Honor, I guess in conclusion I'd say, you

4  know, I don't believe the Plaintiffs have made a showing of the

5  required exceptional circumstances to overcome the presumption

6  that Mr. Bergmair should be deposed where he lives in Hong

7  Kong.

8          **THE COURT:**  All right, thank you.

9          Counsel for the Plaintiff?

10         **MR. STEIN:**  Good morning again, Your Honor.  It's

11  David Stein.  I'll take the lead on arguing for the Plaintiff.

12         Not surprisingly we have a different view of both the

13  facts and the law here and I think it's got a few umbrella

14  issues, one is the location of the depo and two is why we feel

15  that this requires an in-person deposition so let me take both

16  of those.

17         We noticed it for Irvine because we have an office in

18  Irvine and the case is pending in the Central District in the

19  Santa Ana Division but we'd be happy to do Los Angeles if

20  that's easier.  We're happy to do it in New York, we're happy

21  to do it in London or Paris -- if they want to meet somewhere

22  in the middle.  We're quite flexible on location but we have

23  concerns with Hong (inaudible) particular.  Part of it is the

24  cost and the burden.  And Mr. White laid out the burden on

25  Mr. Bergmair traveling here -- and that burden is the same

1   burden on the attorneys going the other direction.  And I think

2   on our end there'd probably be at least two and I think the

3   Plaintiff would like to attend.  She could attend I think if

4   it's in LA or Southern California.  It might get harder if it's

5   at a different location.  And I don't know what the other

6   counsel would do but I would imagine at least several of these

7   lawyers would want to attend if the deposition goes forward in

8   person.  And so the burden is a multiple of the burden that

9   Mr. White laid out if it's in Hong Kong.  And I think we cited

10  the Cheng case (phonetic) from Magistrate Judge Abrams dealing

11  with exactly this issue and noting that as a factor for

12  ordering the deposition in Orange County.

13          The second factor is it's difficult -- I'm sorry.

14  It's a little loud here where I am.

15          It's difficult to address disputes that arise during

16  the deposition if you're in a faraway time zone, for example.

17          And in this case, as the Court knows, discovery has

18  been contentious.  We've had to fight tooth and nail pretty

19  much at every turn for everything, and we have reason to

20  believe that this deposition may not be the smoothest -- is

21  maybe a nice way to put it.  We don't agree with the scope of

22  the deposition as Mr. White's articulated.  The (indisc.)

23  limited to the jurisdictional issues but there's quite a bit to

24  that.  And Judge Carney's order says he wants to see certain

25  things from us in terms of coming back to him to establish

1    jurisdiction.

2            You know, we may have some documents like (indisc.)

3    charts which were shown to the court at previous hearings or

4    complicated financials and spreadsheets that we want to put in

5    front of Mr. Bergmair and walk through them to understand where

6    the money moves.  I believe discovery is revealed but he's made

7    quite a bit of money from this investment, maybe in the nine

8    figures or more and so there's a lot to this and there may be a

9    lot to walk through that's important to do in person and it

10   make take longer.

11           And to the extent disputes arise about the scope of

12   the questioning or whether the issues are appropriate, if we're

13   in California we're able to pause and reach the Court if we

14   need to.  Or even if we're in New York, we'd still have that

15   ability but in Hong Kong on the time difference I think we

16   would lose that and we may end up in a situation where we get a

17   transcript, everybody makes their record and then we have to

18   come to the Court and then there's motion practice and then

19   maybe we have to resume a depo.  It just seems like it becomes

20   more complicated than it needs to.

21           There's a safety issue with Hong Kong in particular.

22   We're not averse to travelling.  As I said, we'll go to lots of

23   places but right now that seems to be kind of a tense part of

24   the world where maybe it's not the safest time or place to go

25   there.  And I think that was also part of Magistrate Judge

14

1    Abram's ruling in the Cheng case was that Hong Kong in

2    particular poses challenges that maybe other locations don't.

3    And if you're talking about a number of lawyers, all U.S. based

4    lawyers traveling over there may not be the safest route and

5    it's a safety risk or concern that could easily be avoided just

6    by doing the deposition somewhere else.

7              And then Mr. Bergmair is no stranger to international

8    travel.  Our investigation shows he has a house in London, he

9    travels often.  I accept Mr. White when he says he hasn't been

10   in the United States in three years but the discovery shows

11   that he has been in California for meetings about MindGeek

12   business.  And this is a wealthy, sophisticated individual

13   investor who should have no trouble getting to the United

14   States or London or Paris or something like that -- we're good

15   with those.  We're just particularly concerned about issues in

16   Hong Kong.

17             I also note that I believe it's illegal for United

18   States depositions to proceed in Hong Kong.  Now, my

19   understanding -- we did check with some Hong Kong counsel -- my

20   understanding is that if it's a voluntary deposition, then it's

21   not illegal so maybe that's not a concern but I'd hate to have

22   U.S. lawyers fly over there and find out somehow people over

23   there deem it illegal and now we've got a serious situation

24   that, again, easily could be avoided by doing the deposition

25   elsewhere.

1          So for all of those reasons, that's why we're seeking

2  not to do it in Hong Kong.  We're open to Hawaii, Los Angeles,

3  San Francisco, Orange County, New York, London, Paris, all

4  good, or another location to be determined.

5          And then to the second point, why do we want this in

6  person?  And I think there's a couple of cases that were cited

7  in the form.

8          One was the Pruco Life Insurance case, 2021 W.L.

9  5043289 where they say a video conference deposition is not

10  sufficient where you have a key witness where credibility of

11  the witness is important, where there's -- in that case they

12  said an exceedingly high level of distrust among counsel.  I

13  don't want quote that here because I think that's strong and I

14  think there are circumstances that are maybe slightly different

15  but it has been a contentious and difficult discovery and a

16  hard fought discovery, and I think those are reasons why when

17  you have credibility of a key witness and tense relations

18  between counsel, then the video depo is not the right platform.

19          There's also the Natural Immuno Genix Corporation

20  (phonetic) case, 2017 W.L. 10562990 at star six.  It's also a

21  Central District case where it says where there's controversial

22  testimony and the tenor of the interactions between the parties

23  may be tense, then video conference is not suitable.

24          And so we think it's going to be document intensive.

25  We think we want to put documents in front of Mr. Bergmair or

1   walk him through that to understand the flow of the money.  We

2   think credibility is an issue and we think there may be

3   pushback on the questions that are asked and the scope of the

4   questioning and whether it's properly within the scope of

5   jurisdictional discovery or not.

6          For all those reasons we think in-person deposition

7   is key and ideally in a location where we could reach out to

8   the Court if there's a dispute that arises maybe to get some

9   relief in real time instead of after a second round, or if for

10  whatever reason California doesn't work, we'll go to lots of

11  places.  We just have particular concerns with Hong Kong.  So

12  I'll stop there unless the Court has any questions.

13         **THE COURT:**  I do have a question.  What is your

14  opinion regarding the argument that the analysis here starts

15  with a rebuttable presumption that the deposition should occur

16  where the defendant resides?  Do you believe that that's where

17  the legal analysis starts and therefore the Court should be

18  looking at exceptional circumstances, or is there some other

19  step in the analysis that precedes that?  What's your position

20  on that issue?

21         **MR. STEIN:**  Yeah, thank you, Your Honor.  David Stein

22  again.

23         I'm not sure I would agree that's where it starts.  I

24  think even if it does, I think a depo in Hong Kong is an

25  exceptional circumstance.

1          But I'm looking at the <u>Hyde and Drath case</u> -- if I'm

2    pronouncing that correctly.  It's the Ninth Circuit case that

3    we've cited in the form at <u>24 F.3d 1162</u>, and it says

4    essentially the court has wide discretion over where to order

5    depositions.  And then we see the various cases that both sides

6    have discussed where there's fact-specific inquiries into a

7    number of factors.

8          And so I don't know that I would agree that it's a

9    rebuttable presumption that requires exceptional circumstances.

10   I think the Court can just kind of look at the totality of the

11   circumstances in front of it and the facts as they stand for

12   the particular depo and has wide discretion to pick a location

13   that makes sense to the Court based on that information.

14         But even if it is exceptional, I think that the cost,

15   the burden, the need, the importance of the depo; and in

16   particular, the safety issues that can pop up around a

17   deposition in Hong Kong are exceptional circumstances and

18   that's why we've seen several judges in this district,

19   particularly faced with this exact issue: should it be in Hong

20   Kong or in Irvine and they order it in Irvine.

21         **THE COURT:**  All right, thank you.  Mr. White?

22         **MR. WHITE:**  Thank you.  Let me just address a couple

23   of the items that Mr. Stein mentioned.

24         So first, let me start with the legal and then I'll

25   turn to the factual.

1           As I said earlier, like we can supply Your Honor with

2   the citations for the cases that say that the starting point

3   for the analysis is a presumption.  That's not to say that

4   they're not factors that the Court weighs in determining

5   whether exceptional circumstances are found but the burden is

6   on the party seeking the deposition to overcome that

7   presumption.

8           A couple of issues.  Like I said --

9           **THE COURT:**  Mr. White, can I ask for that citation?

10  My -- my analysis -- I believe that the analysis begins, the

11  noticing party notices the deposition for the location of its

12  choosing.  And so if you have a case that says we start with

13  the presumption, that would be helpful.

14          **MR. WHITE:**  Well sure.  Well Your Honor I guess I

15  would say of course the process -- the actual practical process

16  starts with the party issuing a deposition notice in the

17  location of their choosing but when the issue comes with

18  respect to whether that's appropriate, if it's challenged by

19  the defendant, there's a presumption -- or the potential

20  deponent, there's a presumption.  So the cases Your Honor --

21          **THE COURT:**  (Inaudible) then we have -- if you are

22  right, you have a -- what you're saying is a rebuttable

23  presumption.  So the moving party gets to notice a deposition

24  where they choose to and then we have this rebuttable

25  presumption for the defendant's deposition to occur where the

1    defendant resides, yada, yada, yada.  But then we butt up

2    against the presumption for the moving party seeking a

3    protective order.

4           So do you have any law or do you have some argument

5    about when we are dealing with (inaudible) presumptions, right?

6    -- that a moving party's burden on a motion for a protective

7    order and a rebuttable presumption that requires an exceptional

8    circumstance, what happens when those two are battling?  Which

9    one comes first, which one has priority?

10           **MR. WHITE:**  Well I guess Your Honor I would -- the

11   way I would understand that I believe it works is, as a movant,

12   right? -- we would have the burden as a defendant.  But once we

13   show that the deposition has been noticed for somewhere other

14   than his residence, then this presumption would apply and the

15   plaintiff would have to show exceptional circumstances.

16           It couldn't be that the -- the burden on the movant

17   trumps the other presumption because then the party who's the

18   deponent would never have the basic -- would never have the

19   ability to enforce what the court recognizes as the presumption

20   because any time they brought a motion for a protective order,

21   it would be -- the burden would be shifted.

22           So I think we satisfy our burden by showing that the

23   Defendant resides where he resides and that he was deposed --

24   sought to be deposed somewhere outside of that.  And then it's

25   the Plaintiff's burden to show exceptional circumstances.

1           But to answer Your Honor's question, the -- in

2    addition to the Alexis case, I guess there's at least two

3    others that involve -- that state the presumption.  One is the

4    S-h-i-n-d-e, Shinde case, 2015 W.L. 12778434, that's Central

5    District of California, 2015; and McClure, M-c-C-l-u-r-e,

6    that's 2019 W.L. 5862290, and that's an Eastern District of

7    California case.  There's others as well but those are just

8    three.

9           So Your Honor if I may, let me just address the

10   factual issues that Mr. Stein raised.

11          I think he's raising up the specter of a lot of

12   problems that don't really exist and they're just trying to

13   sort of capitalize on the specter that something could go wrong

14   when there's no realistic possibility of that.  So let me

15   address them in no particular order.

16          First, he suggests in somewhat ominous but vague

17   fashion that it's somehow not safe to go to Hong Kong.  You

18   know our -- my cocounsel at Morrison and Foerster has a Hong

19   Kong office as does you know 12 or 15 of the biggest American

20   law firms and they're all open for business and taking

21   depositions in cases like this all the time.

22          In addition, Your Honor, there's a whole series of

23   cases, both in the Central District and in other California

24   courts and elsewhere where parties, including recently as last

25   year 2022, have ordered depositions to take place in Hong Kong.

21

1   Depositions are not legal in the -- in Mainland China, in the

2   People's Republic of China, the PRC, but they are in Hong Kong.

3   And so frequently courts order PRC residents to appear in Hong

4   Kong for their deposition; and that, again, happens frequently

5   so I don't -- I think the specter that it's somehow unsafe is

6   not really well founded.

7           The other two with respect to the conduct of the

8   deposition, Mr. Stein suggested that well because they had a

9   lot of documents, you know, that it should therefore be in

10  person and that video was somehow now appropriate in that case.

11  I think we've all learned in the last three years that you can

12  take a perfectly adequate deposition by Zoom, even with a lot

13  of documents.

14          There's -- there's as I mentioned, document platforms

15  and video and software and whatnot that make that sort of

16  seamless.  It's not like the old days where you're just sending

17  documents by FedEx or something like that.

18          And one other issue that Mr. Stein mentioned, Your

19  Honor, was that Mr. Bergmair travels but that's not -- that's

20  just simply not relevant.

21          The -- first of all, the fact that -- well first of

22  all, the caselaw is actually clear that the only travel that's

23  relevant to this issue is travel to the forum where the adverse

24  party seeks to conduct the deposition.  And there's no -- it's

25  not whether someone is a frequent traveler in general -- and

1  here there's no dispute that he's come to California at all.

2  We cited the Image Ware (phonetic) case in our submission for

3  that proposition and there's others from the Central District

4  of California as well.  Judge Carter and several others.  And

5  so Your Honor I guess what is missing here is aside from these

6  raising the specter of these problems, there's really not any

7  reason why they can't do this by video.

8          And then so let me just address I think what is the

9  final point that Mr. Stein made on this issue which is that

10 somehow we need to have it somewhere else so the Court can

11 address problems at the deposition if there are any.  I'd say

12 again, that's just sort of raising the specter of something

13 that's not necessarily likely to happen.  And of course we

14 can't predict the future but I don't know that there's anything

15 in the record that suggests that that's the case.

16         So -- and keep in mind the only issue here is really

17 whether there would be a dispute that's so serious that it

18 necessitates the Court's real-time intervention during the

19 deposition.  And at least in my experience, you know, that sort

20 of situation is extremely rare and it seems to me like nothing

21 in the record indicates the likelihood of that.

22         You know, Mr. Stein referenced the contentious nature

23 of discovery.  Well he's sort of mixing, you know, mixing in

24 the other litigants in a way that's trying to suggest that

25 things are contentious with Mr. Bergmair.  You know,

1    Mr. Bergmair timely responded to the interrogatories and the

2    document requests that were made by the Plaintiff.  He made

3    sixty -- they made 62 discovery requests to us.  We were able

4    to resolve our disputes with respect to all but three which we

5    then submitted to the Court in an orderly fashion.  And even

6    with respect to this issue, we had meet and confers where there

7    were certain arguments that Plaintiffs had made which

8    apparently they're not now advancing so we consider that that

9    process worked to narrow the issues.  So while we of course

10   haven't agreed on all discovery matters, I think we've resolved

11   or submitted them to the Court in an orderly manner so that the

12   chances that the deposition needs to be somewhere other than

13   Mr. Bergmair's residence isn't required.

14          **THE COURT:**  All right, thank you.

15          All right.  Mr. Stein, do you have anything further?

16          **MR. STEIN:**  Just two very quick points.

17          I believe the Shinde or Shinde (pronunciation) case

18   that Mr. White just cited involved a monk and one or two others

19   who had almost no money and there was enormous financial

20   hardship for them to travel.  And here, we have a very wealthy

21   investor, a billionaire or hundred millionaire with plenty of

22   means to travel so I don't think that would apply.

23          And to the Court's question about the bumping up into

24   each other kind of burdens, just one cite I have handy,

25   Phillips ex rel Estate of Byrd and General Motors Corp,

24

1   307 F.3d 1206 1210 Ninth Circuit case that says where a party

2   is seeking a protective order, they have the burden of showing

3   specific prejudice or harm if it's not granted.  And I don't

4   think there's any showing here of a specific prejudice or harm

5   if Mr. Bergmair submits to a deposition in person and at a

6   location other than Hong Kong.  That's all, Your Honor.

7           **THE COURT:**  All right, thank you.

8           And Mr. White, you have anything final?

9           **MR. WHITE:**  No, Your Honor, other than I guess the

10  final point I would say is the cases that we cited and other

11  cases that discuss the presumption are virtually all presented

12  to the court in the context that we have here; namely, on a

13  motion for a protective order by the -- by the deponent, the

14  proposed deponent.  So I think the way I described before the

15  presumption should work is I believe consistent with the

16  caselaw.

17          **THE COURT:**  All right.  Thank you very much.  I am

18  going to -- we're going to take a short break while I consider

19  the issue and I'll come back to you.

20      **(Court in recess from 10:39 a.m. to 11:05 a.m.)**

21          **THE CLERK:**  We're now back on the record.

22          **THE COURT:**  All right, everybody.  Thank you.  This

23  is Judge Spaeth and here is my ruling on this matter.

24          The deposing party notices the location of the

25  deposition.

25

1          We start there.

2          The moving party seeking a protective order to alter

3    the location has the burden to establish that the cost,

4    convenience, litigation, efficiency and safety should result in

5    the deposition occurring in a different location or manner.

6          The asserted presumption that a deposition should

7    occur at the defendant's place of residence, employment or

8    business -- place of business does not apply here because the

9    policy reason for that presumption does not apply.

10          Here, the Plaintiff did not have the choice to file

11   the litigation in Hong Kong but had to file the litigation in

12   the United States.  For that proposition I refer you to

13   SEC versus Aly or Aly (pronunciation) at 320 F.R.D. 116.  It's

14   a Southern District of New York case from 2017.

15          Now, having considered the parties' arguments, I find

16   that the Defendant has not met its burden to establish that

17   he's entitled to a protective order.  Cost, convenience,

18   litigation, efficiency and safety weigh in favor of Plaintiff.

19   Plaintiff has demonstrated that a remote deposition will

20   prejudice her.  As a result, Defendant has not established that

21   he is entitled to an order altering the location or manner of

22   the deposition noticed by Plaintiff and Defendant's Motion for

23   a Protective Order is denied.

24          All right.  Is there anything further?

25          **MR. STEIN:**  Nothing further from the Plaintiff, Your

26

1    Honor.

2           **MR. WHITE:**  Not from the Defendant, Your Honor, thank

3    you.

4           **THE COURT:**  All right.  Thank you everybody,  have a

5    good day.

6        **(Proceeding adjourned at 11:07 a.m.)**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

      I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____            June 9, 2023

          Signed                               Dated

             *TONI HUDSON, TRANSCRIBER*