BENJAMIN M. SADUN (287533)
benjamin.sadun@dechert.com
DECHERT LLP
US Bank Tower, 633 West 5th Street,
Suite 4900
Los Angeles, CA 90071-2013
Phone: (213) 808-5721; Fax: (213) 808-5760

KATHLEEN N. MASSEY (*admitted pro hac vice*)
kathleen.massey@dechert.com
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500; Fax: (212) 698 3599

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| SERENA FLEITES,<br><br>  Plaintiff,<br><br>  v.<br><br>MINDGEEK S.A.R.L.; MG FREESITES, LTD; MINDGEEK USA INCORPORATED; MG PREMIUM LTD.; MG GLOBAL ENTERTAINMENT INC.; 9219-5618 QUEBEC INC.; BERND BERGMAIR; FERAS ANTOON; DAVID TASSILLO; COREY URMAN; VISA INC.; COLBECK CAPITAL DOES 1-5; BERGMAIR DOES 1-5<br><br>  Defendants. | CASE NO. 2:21-CV-04920-CJC-ADS<br><br>Judicial Officer: Autumn D. Spaeth<br><br>**THE MINDGEEK ENTITY DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION TO SHORTEN TIME ON MOTION TO COMPEL DEFENDANTS' BUY-OUT AGREEMENTS**<br><br>Jurisdictional Discovery Cutoff: June 16, 2023 |

CASE NO. 2:21-cv-04920

**MINDGEEK'S OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION TO SHORTEN TIME ON MOTION TO COMPEL DEFENDANTS' BUY-OUT AGREEMENTS**

Defendants MindGeek S.a.r.l., MG Freesites Ltd, Mindgeek USA Inc., MG Premium Ltd, MG Global Entertainment Inc., 9219-1568 Quebec Inc. (the "MindGeek Defendant Entities") respectfully submit this response to Plaintiff's *Ex Parte* Application to Shorten Time on Motion to Compel Defendants' Buy-Out Agreements (the "Opposition").

## INTRODUCTION

Plaintiff's entire *ex parte* application is predicated on what can most charitably be characterized as a misrepresentation but is more colloquially (and accurately) termed a bold-faced lie. The very first sentence of Plaintiff's motion—and, indeed, the entire justification for this emergency *ex parte* application on the eve of a Federal holiday weekend—states that: "Plaintiff just learned, for the first time during the individual defendants' deposition on June 14, 15, and 16, that defendants sold their economic interest in MindGeek. . . ." Nonsense. The purported new information about the sale of MindGeek stock from three of the Individual Defendants to Ethical Capital Partners ("ECP") was announced in a press release on March 16, 2023—more than ***three months*** before this "emergency motion." The news of the acquisition was covered in multiple media outlets, including Forbes.com and The Globe and Mail. *See, e.g.*, Decl. of Michelle Yeary in Support of the MindGeek Entity Defendants' Opposition to Plaintiff's *Ex Parte* Application to Shorten Time on Motion to Compel (the "Yeary Decl."). ¶¶ 2, 3; Exs. A-D. In the unlikely event Plaintiff did not see this news, on May 16, 2023—two months after the announcement—Plaintiff served discovery requests on certain of the MindGeek Individual Defendants Feras Antoon, Bernard Bergmair, and David Tassillo, requesting the agreements that are now the subject of this emergency motion. *See* Yeary Decl. ¶ 4. They timely responded. *Id*.

Plaintiff's demand that the Court attend to her "emergency" request is even more baffling given that there is no ripe dispute between the parties on this issue. At Plaintiff's request, the parties met and conferred on June 23, 2023. After

1   CASE NO. 2:21-cv-04920

representatives for the MindGeek Entity Defendants and Individual Defendants Antoon, Bergmair, and Tassillo repeatedly asked Plaintiff to provide a single rationale as to why deal documents that were entered into years after the events alleged in the Complaint occurred and in no way effected the assets of the MindGeek Entity Defendants could possibly be relevant to jurisdictional discovery, Plaintiff was only able to allude to a theoretical witness bias. But, as the submission of Individual Defendants Antoon, Bergmair, and Tassillo makes plain, and as the MindGeek Entity Defendants will discuss in subsequent substantive briefing on this issue, that rationale is pure pretext. The Individual Defendants who sold their shares are also Defendants in this case; the concept that the deal documents will reveal a secret bias in favor of Defendants is not something that requires the production of additional documents to establish.

Recognizing that the parties were at a likely impasse, the MindGeek Entity Defendants nevertheless suggested that they would be open to an expedited briefing schedule. *See* Yeary Decl. ¶ 6. Instead of replying or conferring as required under Local Rule 37-1, Plaintiff filed this *ex parte* application with the Court on the Friday before a federal holiday weekend, asking the Court to decide on an issue the parties could easily worked out their own if Plaintiff had made any effort at all to discuss it.

Here, any "emergency" is entirely of Plaintiff's own making because she knew about the stock sale in March but took no action until after the close of jurisdictional discovery. There is simply no prejudice to Plaintiff since there is no deadline for her to amend her complaint to fix her jurisdictional allegations. In short, the Court should deny Plaintiff's *ex parte* motion.

## BACKGROUND

On March 16, 2023, ECP announced that it had acquired all of the outstanding shares of MindGeek. *See* Yeary Decl. ¶ 2, Exs. A, B. News of the acquisition was announced in a press release and covered by multiple international media outlets,

including *Forbes.com* and *The Globe and Mail*. Yeary Decl. ¶ 3, Exs. C, D. Two months later, on May 16, 2023, Plaintiff served discovery requests on the MindGeek Individual Defendants Feras Antoon, Bernard Bergmair, and David Tassillo requesting production of the share purchase agreements. On June 15, 2023, those Defendants timely responded and objected to the production. *See id.* at ¶ 4. Those same Defendants were deposed by Plaintiff on June 14, 15, and 16, respectively, where Mr. Antoon and Mr. Tassillo testified about certain details of the transaction. *Id.* at ¶ 5. Undeterred, Plaintiff still insisted on the production of the underlying deal documents under the ruse that these were somehow related to witness bias.

The parties met and conferred by telephone on June 23, 2023, regarding Plaintiff's continued request for the production of the agreements pursuant to which Defendants Antoon, Bergmair and Tassillo's shares were sold. *See id.* at ¶ 6. During that call, Plaintiff's counsel was repeatedly questioned as to why the production of the agreements—which were entered into years after any alleged wrongdoing in this case took place—was necessary. Once again, the only rationale Plaintiff provided was an amorphous statement that the agreements might be relevant to possible witness bias. *Id.* The MindGeek Entity Defendants and Defendants Antoon, Bergmair, and Tassillo stated that because the individual defendants are, in fact, ***defendants being sued by Plaintiff in this very case***, there is no question that their interests are materially aligned and that bias is simply not an issue. Plaintiff then stated that if Defendants did not capitulate and agree to hand over the deal documents, they would seek relief from this Court. *Id.* They also requested that the MindGeek Entity Defendants and Defendants Antoon, Bergmair and Tassillo agree to an *ex parte* application to this Court to seek a shortened briefing schedule. Defendants rejected this suggestion, largely on the ground that this issue manifestly does not meet the criteria for *ex parte* relief. Defendants did, however, suggest that they would be open to a reasonable briefing schedule and requested Plaintiff make a proposal. Plaintiff

never proposed such a schedule, instead filing the current motion without further meeting and conferring. *Id.*

## LEGAL STANDARD

"*Ex parte* motions are rarely justified," as they "detract[] from a fundamental purpose of the adversary system, namely, to give the court the best possible presentation of the merits and demerits of the case on each side." *See Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490-91 (C.D. Cal. 1995) (denying *ex parte* application). They are solely for extraordinary relief and should be used with discretion. *Id.*; *see also* Local Rule 37-3 (to be heard on an *ex parte* basis, the moving party must show "irreparable injury or prejudice not attributable to the lack of diligence of the moving party"). In order to justify *ex parte* relief, the moving party must satisfy two criteria:

"First, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures." *Mission Power*, 883 F. Supp. at 492. "Second, it must be established that the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Id*. Plaintiff fails on both counts here.

## ARGUMENT

### I.   EX PARTE RELIEF IS UNNECESSARY AND INAPPROPRIATE

First, Plaintiff's *ex parte* application is unnecessary and inappropriate—there is no emergency for which such extraordinary relief is warranted. Indeed, the jurisdictional discovery deadline has already passed (Dkt. 344); and Plaintiff has no deadline for filing her third amended complaint. Thus, there is no significant consequence if the issues raised by Plaintiff's motion are briefed outside of the *ex parte* context. And Plaintiff is in no way irreparably prejudiced if the underlying motion is not briefed on an *ex parte* basis.

**MINDGEEK'S OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION TO SHORTEN TIME ON MOTION TO COMPEL DEFENDANTS' BUY-OUT AGREEMENTS**

Second, Plaintiff cannot credibly claim that she "did not cause the need for this relief" (if there is any) or that "for the first time during the individual defendants' depositions" she first learned of the share purchase (Mot. at 1). ECP publicly announced that it had acquired all of the outstanding shares of MindGeek over three months ago, on March 16, 2023; and news of the acquisition was covered in multiple media outlets, including but not limited to Forbes.com and The Globe and Mail. *See, e.g.*, Yeary Decl. ¶¶ 2-3; Exs. A-D. Plaintiff did nothing for two months. On May 16, 2023, Plaintiff served discovery requests on Messrs. Antoon, Bergmair, and Tassillo requesting production of the agreements—which she now claims she "first learned about" on June 14; and timely responses and objections to the requests were made. *See id.* at ¶ 4. The parties even met and conferred by telephone on June 23, 2023, regarding Plaintiff's continued request for the production during which the MindGeek Entity Defendants advised Plaintiff that they were amenable to a reasonable briefing schedule and requested that Plaintiff make a proposal. *See id.* at ¶ 6. Instead of responding or further conferring, Plaintiff waited one week to make her application to the Court seeking an expedited briefing schedule. *Id.* Such gamesmanship is not only inappropriate but also a waste of judicial resources.

Plaintiff's cited cases of egregious behavior on the part of opposing counsel do not suggest a different result. The conduct at issue in those cases is readily distinguishable from Defendants' conduct here. In *Khan v. Allstate Northbrook Indemnity Company*, 2020 WL 8300139 (C.D. Cal. Dec. 1 2020), the Court granted *ex parte* relief when, among other things, third parties "egregious[ly] flaunt[ed] . . . their duties with respect to court-issued subpoenas" and refused to comply with the Federal Rules of Civil Procedure and the Court's Local Rules". *Id.* at *2-3. And the Court in *Flack v. Nutribullet, L.L.C.*, 333 F.R.D. 508 (C.D. Cal. 2019), granted *ex parte* relief, in part, because opposing counsel *did not respond* to an email to attend an examination that required costly travel from New Zealand to Los Angeles. The

court there granted relief in light of the urgency of the dispute, the cost of the plaintiff's travel, the plaintiff's failure to respond, and the plaintiff's delay in agreeing to deposition dates. By contrast, here, the MindGeek Entity Defendants met and conferred with Plaintiff and stated that they would be amenable to a reasonable briefing schedule. Thus, even if there was an "emergency" (there is not), Plaintiff is wholly responsible for creating and necessitating any application. *Mission Power*, 883 F. Supp. at 492. Her disingenuous and misguided motion should be denied.

## II.   DESPITE THE IMPROPRIETY OF PLAINTIFF'S EMERGENCY MOTION, THE MINDGEEK ENTITY DEFENDANTS DO NOT OPPOSE THE ENTRY OF A REASONABLE BRIEFING SCHEDULE

Although Plaintiff has improperly rushed to Court on something that could have been worked out among the parties, the MindGeek Entity Defendants remain willing to enter into a reasonable briefing schedule with Plaintiff. As such, the MindGeek Entity Defendants propose a schedule for Defendants to respond by July 11 and Plaintiff to reply by July 14.

## CONCLUSION

Based on the foregoing, Plaintiff has not met the requisite standard for *ex parte* relief. Accordingly, the Court should deny Plaintiff's *ex parte* request. Notwithstanding the foregoing, the MindGeek Entity Defendants propose the following schedule:

- MindGeek Entity Defendants' Response Due: July 11, 2023; and Plaintiff's Reply Due: July 14, 2023.

DATED: June 30, 2023         /s/   *Kathleen N. Massey*
                              KATHLEEN N. MASSEY (*admitted pro hac vice*)
                              kathleen.massey@dechert.com
                              DECHERT LLP
                              Three Bryant Park

1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500; Fax: (212) 698 3599

*Attorneys for the MindGeek Entity Defendants*