DREW TULUMELLO (#196484)
drew.tulumello@weil.com
MARK A. PERRY (#212532)
mark.perry@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: 202 682 7000
Fax: 202 857 0940

*Attorney for Visa Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| SERENA FLEITES,<br><br>        Plaintiff,<br><br>     v.<br><br>MINDGEEK S.A.R.L.; MG FREESITES, LTD; MINDGEEK USA INCORPORATED; MG PREMIUM LTD.; MG GLOBAL ENTERTAINMENT INC.; 9219-1568 Quebec, Inc. (d/b/a MindGeek); BERND BERGMAIR; FERAS ANTOON; DAVID TASSILLO; COREY URMAN; VISA INC.; COLBECK CAPITAL DOES 1-5; BERGMAIR DOES 1-5,<br><br>        Defendants. | Case No. 2:21-CV-04920-WLH-ADS<br><br>Judicial Officer: Wesley L. Hsu<br>Courtroom: 9B<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VISA INC.'S SECOND MOTION TO DISMISS**<br><br>Date: November 22, 2024<br>Time: 1:30 p.m. |

1

## **<u>TABLE OF CONTENTS</u>**

2
                                                                      **Page**

INTRODUCTION ................................................................................ 1

BACKGROUND ................................................................................ 3

I.      Plaintiff's Allegations Against MindGeek ...................................... 3

II.     Visa's Business .......................................................................... 4

III.    Plaintiff's Allegations Regarding Visa ......................................... 5

IV.    The Prior Order and Procedural Developments ............................. 6

LEGAL STANDARD .......................................................................... 8

ARGUMENT ...................................................................................... 9

I.      The SAC's Claim For Direct TVPRA Liability Is Improper And Invalid.... 10

II.     The SAC Does Not State A Claim For Civil Conspiracy Against Visa ....... 11

        A.     There is no private right of action for civil conspiracy under the TVPRA for pre-2023 conduct ............................................. 11

               1.     The TVPRA did not authorize a civil conspiracy claim at the time of the alleged conduct ....................................... 12

               2.     The 2023 TVPRA amendment does not have retroactive effect ..................................................... 15

        B.     Plaintiff fails to adequately allege the elements of a conspiracy ........ 17

               1.     Plaintiff alleges no facts to show that Visa had knowledge of MindGeek's alleged financial benefit from the unlawful videos of Plaintiff ............................................................ 18

               2.     Plaintiff alleges no facts to show that there was an agreement between Visa and MindGeek to commit an unlawful act ......... 21

               3.     Plaintiff alleges no facts showing that Visa intended to benefit itself from illegal sex trafficking ............................... 24

III.    The SAC Fails To Allege A State Law Claim Under California Business And Professions Code §§ 17200, 17500 .................................... 26

IV.    Plaintiff's Theories Transgress Settled Limitations on Secondary Liability 28

V.    The SAC Should Be Dismissed With Prejudice As To Visa ........................31

CONCLUSION ........................................................................................................31

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.B. v. Hilton Worldwide Holdings Inc.*,
    484 F. Supp. 3d 921 (D. Or. 2020) ............................................................................... 19

*Adobe Sys. v. Blue Source Grp., Inc.*,
    125 F. Supp. 3d 945 (N.D. Cal. 2015) ................................................................. 26, 27

*Ajzenman v. Off. of Comm'r of Baseball*,
    487 F. Supp. 3d 861 (C.D. Cal. 2020) ...................................................................... 18

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ...................................................................................................... 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 8, 20

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009) .................................................................................. 30

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................... 8, 23, 25

*Benavidez v. County of San Diego*,
    993 F.3d 1134 (9th Cir. 2021) ............................................................................... 8, 9

*Benson v. JPMorgan Chase Bank, N.A*,
    No. 09-CV-5272, 2010 WL 1526394 (N.D. Cal. Apr. 15, 2010) .......................... 26

*Bernhardt v. Islamic Republic of Iran*,
    47 F.4th 856 (D.C. Cir. 2022) ................................................................................. 25

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975) .................................................................................................. 14

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) ................................................................................ 30

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994) .................................................................................................. 14

*Clevland v. Ludwig Inst. for Cancer Research, Rsch. Ltd.*,
  No. 21-CV-871, 2022 WL 2835842 (S.D. Cal. July 20, 2022)................................... 12

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
  911 F.2d 242 (9th Cir. 1990) ............................................................................... 31

*Craigslist Inc. v. 3Taps Inc.*,
  942 F. Supp. 2d 962 (N.D. Cal. 2013)............................................................. 18, 25

*Ditullio v. Boehm*,
  662 F.3d 1091 (9th Cir. 2011) .............................................................................. 16

*Doe #1 v. Red Roof Inns, Inc.*,
  21 F.4th 714 (11th Cir. 2021) ......................................................................... 19, 21

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
  671 F. Supp. 3d 387 (S.D.N.Y. 2023) ............................................................. 13, 23

*Eidmann v. Walgreen Co.*,
  522 F. Supp. 3d 634 (N.D. Cal 2021)............................................................. 27, 28

*Emery v. Visa Int'l Serv. Ass'n*,
  95 Cal. App. 4th 952 (2002) ........................................................................... 4, 26

*G.G. v. Salesforce.com, Inc.*,
  76 F.4th 544 (7th Cir. 2023) ................................................................................ 30

*Gauvin v. Trombatore*,
  682 F. Supp. 1067 (N.D. Cal. 1988).................................................................... 27

*Gonzaga Univ. v. Doe*,
  536 U.S. 273 (2002)........................................................................................... 14

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017)................................................................ 28

*Halberstam v. Welch*,
  705 F.2d 472 (D.C. Cir. 1983)............................................................................ 18

*Hamana v. Kholi*,
  No. 10-CV-1630, 2011 WL 5077614 (S.D. Cal. Oct. 25, 2011) .............................. 12

*Ingram v. United States*,
  360 U.S. 672 (1959)..................................................................................... 18, 19

*J.L. v. Best W. Int'l, Inc.*,
    521 F. Supp. 3d 1048 (D. Colo. 2021) ........................................................................ 19

*Kashi v. Gratsos*,
    790 F.2d 1050 (2d Cir. 1986) .................................................................................... 18

*Kemper v. Deutsche Bank AG*,
    911 F.3d 383 (7th Cir. 2018) ............................................................................. 25, 26

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) .................................................................................... 21

*Ketab Corp. v. Mesriani Law Grp.*,
    No. 14-CV-7241, 2015 WL 2085523 (C.D. Cal. May 5, 2015) ................................ 11

*Lacey v. Maricopa County*,
    693 F.3d 896 (9th Cir. 2012) (en banc) .................................................................... 12

*Lamumba Corp. v. City of Oakland*,
    No. 05-CV-2712, 2006 WL 3086726 (N.D. Cal. Oct. 30, 2006) ............................. 11

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994) .............................................................................................. 16, 17

*Leocal v. Ashcroft*,
    543 U.S. 1 (2004) ...................................................................................................... 19

*Nordstrom, Inc. v. Chubb & Son, Inc.*,
    54 F.3d 1424 (9th Cir. 1995) ..................................................................................... 25

*Owino v. CoreCivic, Inc.*,
    No. 17-CV-1112, 2018 WL 2193644 (S.D. Cal. May 14, 2018) ............................... 16

*Perfect 10 Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ........................................................................ 29, 30, 31

*Pinkerton v. United States*,
    328 U.S. 640 (1946) ........................................................................................ 21, 24, 29

*Pinter v. Dahl*,
    486 U.S. 622 (1988) .................................................................................................... 14

*Ratha v. Phatthana Seafood Co. (Ratha I)*,
    35 F.4th 1159 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 491 (2022)
    .................................................................................................... 2, 13, 14, 16

*Ratha v. Rubicon Res., LLC (Ratha II)*,
   No. 23-55299, 2024 WL 3589751 (9th Cir. July 31, 2024) ...................... 2, 15, 16, 17

*Reddy v. Litton Indus., Inc.*,
   912 F.2d 291 (9th Cir. 1990) ................................................................................ 31

*Silvas v. County of Riverside*,
   No. 19-CV-2358, 2020 WL 7086144 (C.D. Cal. Oct. 9, 2020) ................................. 11

*St. Louis v. Perlitz*,
   No. 13-CV-1132, 2016 WL 1408076 (D. Conn. Apr. 8, 2016) ................................. 16

*Stone v. INS*,
   514 U.S. 386 (1995) ............................................................................................. 15

*Toia v. Fasano*,
   334 F.3d 917 (9th Cir. 2003) ................................................................................ 17

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
   768 F.2d 1001 (9th Cir. 1985) .............................................................................. 21

*Twitter, Inc. v. Taamneh*,
   598 U.S. 471 (2023) .................................................................................... *passim*

*UMG Recordings, Inc. v. Shelter Cap. Partners, LLC*,
   718 F.3d 1006 (9th Cir. 2013) .................................................................. 29, 30, 31

*United States v. Bekowies*,
   432 F.2d 8 (9th Cir. 1970) .................................................................................... 20

*United States v. Collazo*,
   984 F.3d 1308 (9th Cir. 2021) .............................................................................. 20

*United States v. Collins*,
   966 F.2d 1214 (7th Cir. 1992) .............................................................................. 25

*United States v. Eaglin*,
   571 F.2d 1069 (9th Cir. 1977) ........................................................................ 19, 20

*United States v. Gee*,
   226 F.3d 885 (7th Cir. 2000) ................................................................................ 24

*United States v. Lennick*,
   18 F.3d 814 (9th Cir. 1994) ............................................................................ 22, 23

*United States v. Loveland,*
    825 F.3d 555 (9th Cir. 2016) ....................................................21, 22, 23, 24

*United States v. Moe,*
    781 F.3d 1120 (9th Cir. 2015) ..................................................................23

*United States v. Ramirez,*
    714 F.3d 1134 (9th Cir. 2013) ......................................................22, 23, 24

*United States v. Reynard,*
    473 F.3d 1008 (9th Cir. 2007) ...................................................................17

*United States v. Scan Health Plan,*
    No. 09-CV-5013, 2017 WL 4564722 (C.D. Cal. Oct. 5, 2017) .................25

*United States v. Wilson,*
    503 U.S. 329 (1992).................................................................................15

*Valiente v. Swift Transp. Co. of Ariz.,*
    54 F.4th 581 (9th Cir. 2022) ...............................................................16, 17

*In re Wellpoint, Inc. Out-of-Network UCR Rates Litig.,*
    903 F. Supp. 2d 880 (C.D. Cal. 2012) .......................................................12

**Rules and Regulations**

Fed. R. Civ. P. 12(f)(1) ...................................................................................11

**Statutes**

18 U.S.C. § 1591...................................................................................*passim*

18 U.S.C. § 1594...................................................................................*passim*

18 U.S.C. § 1595...................................................................................*passim*

22 U.S.C. § 7101 ........................................................................................12

47 U.S.C. § 230 ..........................................................................................30

Abolish Trafficking Reauthorization Act of 2022, Pub. L. No. 117-347,
    136 Stat. 6199 (2023) .................................................................13, 14, 15

Allow States and Victims to Fight Online Sex Trafficking Act of 2017,
    Pub. L. No. 115-164, 132 Stat. 1253 .......................................................30

Cal. Bus. and Prof. Code §§ 17200, 17500 .......................................................... 8, 27, 28

**Other Authorities**

Visa Core Rules and Visa Prod. and Serv. Rules (Apr. 13, 2024), ................................. 5

H.R. Rep. No. 115-572 (2018) ........................................................................................ 19

**INTRODUCTION**

The complaint alleges that Plaintiff was an underage victim of sexual exploitation, including the creation of explicit videos that were uploaded to the free adult video website, Pornhub, and other websites allegedly owned or operated by Defendant MindGeek S.a.r.l. ("MindGeek") and/or its officers and affiliates. These allegations describe a deeply disturbing and traumatic series of events.

Defendant Visa, Inc. ("Visa") unequivocally condemns the creation or dissemination of child sexual abuse material ("CSAM"). The complaint alleges conduct that is repugnant to the values and mission of the company, its employees, and society in general. If Plaintiff's allegations are true—and Visa assumes they are for purposes of this motion—then she may well have meritorious claims against the perpetrators under the Trafficking Victims Protection Reauthorization Act ("TVPRA").

But Visa—a payment card processing company that does not even contract directly with merchants like MindGeek—is not liable for the conduct alleged in the complaint and should not be a defendant in this litigation. Visa is not alleged to have known anything about Plaintiff, her circumstances, or the videos uploaded to Pornhub prior to the filing of this lawsuit, and Visa has at all times prohibited its partner banks from dealing with merchants that use Visa's payment processing services for unlawful purposes. Nevertheless, Plaintiff accuses Visa of "conspiring" with MindGeek to financially benefit from the sexual exploitation of Plaintiff. There are no plausible or legally sufficient allegations to support a conspiracy theory under federal or state law. The claims against Visa should be dismissed in their entirety.

At the outset, Plaintiff's claim for *direct* TVPRA liability against Visa is barred by the order on the motion to dismiss the First Amended Complaint. In that Order, the Court granted Visa's motion to dismiss Plaintiff's claim against Visa for direct participation liability under the TVPRA *with prejudice* and expressly declined to allow Plaintiff to re-plead that claim. For that reason, and because Plaintiff in any event offers no allegations connecting Visa to Plaintiff in any way, the direct TVPRA claim should be

1    dismissed with prejudice.

2        Plaintiff's conspiracy claims fail too.  The TVPRA does not authorize Plaintiff's

3    claim for conspiracy.  Congress added a civil conspiracy provision to the TVPRA in 2023,

4    but all of the conduct alleged in this case predates that amendment, and the 2023

5    amendment has no retroactive effect.  Recent Ninth Circuit precedent is directly on point

6    and controlling.  In that same 2023 amendment, Congress also added civil liability for

7    attempt.  The Ninth Circuit has held in two decisions that (1) there was no "attempt"

8    liability before the 2023 amendment adding it explicitly and (2) the 2023 amendment

9    adding a civil cause of action for attempt does *not* apply retroactively.  *See Ratha v.*

10   *Phatthana Seafood Co. (Ratha I)*, 35 F.4th 1159 (9th Cir. 2022), *cert. denied*, 143 S. Ct.

11   491 (2022); *Ratha v. Rubicon Res., LLC (Ratha II)*, No. 23-55299, 2024 WL 3589751

12   (9th Cir. July 31, 2024).  Those holdings apply here and foreclose Plaintiff's TVPRA

13   conspiracy claim against Visa.

14       In addition, Plaintiff has not plausibly alleged the elements of an unlawful

15   conspiracy between Visa and MindGeek under the TVPRA or under California state law.

16   At most, Visa is alleged to have agreed to provide general payment processing services

17   to third-party "acquirers," who in turn provided standard commercial services to

18   MindGeek, among millions of other merchants.  But Visa is not alleged to have entered

19   into or continued any commercial arrangement with *knowledge* of Plaintiff or her

20   circumstances, with any *common purpose* to facilitate or profit from CSAM in general,

21   or with the *intent* to further MindGeek's alleged misconduct or the illegal conduct of

22   Plaintiff's or any other sex trafficking perpetrators.  Those three requirements—

23   knowledge, agreement, and intent—are the essential elements of an unlawful conspiracy

24   (whether under the TVPRA or California common law), and Plaintiff has not plausibly

25   alleged (and could not prove) any of them as to Visa.

26       That leaves Plaintiff only with a state law claim under California's Unfair

27   Competition Law ("UCL").  But Plaintiff's allegations uniformly concern conduct—

28   deceiving Pornhub users, publishing unlawful content, monetizing that content through

advertising—committed *by MindGeek*, not by Visa. Visa played no role in publishing, promoting, displaying, or disseminating videos of Plaintiff, or otherwise interacting with Plaintiff in any way. Visa does not violate the UCL by providing standard payment processing services to its partner banks.

Plaintiff's allegations should be taken seriously, and bad actors should face the consequences of their unlawful acts. That does not mean, however, that every entity alleged to have been indirectly associated with MindGeek's operations, however remotely, can or should be held liable as co-conspirators in an illegal sex trafficking operation. Plaintiff's legal theory stretches the law far beyond currently recognized boundaries. The Ninth Circuit's controlling cases under the TVPRA and straightforward application of California law compel dismissal of the claims against Visa.

## BACKGROUND

The Second Amended Complaint ("SAC") is the third iteration of Plaintiff's Complaint, following an order granting in part and denying in part various motions to dismiss the First Amended Complaint ("FAC"). The allegations as to Visa are not materially different between the FAC and the SAC.

## I.    Plaintiff's Allegations Against MindGeek

The SAC sets forth Plaintiff's harrowing and disturbing experience as a victim of underage sexual exploitation. Plaintiff alleges that when she was in eighth grade, her high school boyfriend uploaded an explicit video of her to Pornhub—an adult video website with user-generated content owned and operated by MindGeek S.a.r.l., a Canada-based company, and its subsidiary entities, allegedly controlled by the Individual Defendants. *See* SAC ¶¶ 16, 448, 454. Plaintiff alleges that her high school boyfriend had coerced her into making the video months earlier. *See id.* ¶ 448. According to Plaintiff, the video was widely disseminated throughout her school and neighborhood. *Id.* ¶ 450. Plaintiff alleges that she contacted MindGeek to seek the removal of the video and that the video was removed approximately three to four weeks later. *Id.* ¶ 451. Some Pornhub users had already downloaded the video, however, and subsequently reuploaded various

1   versions of the video to Pornhub and other adult video websites.  *Id.* ¶ 452.  Plaintiff
2   repeatedly contacted MindGeek with requests to remove the various reuploads of the
3   video.  *Id.* ¶ 453.  Plaintiff alleges that this experience caused her significant trauma and
4   serious psychological harm.  *Id.* ¶¶ 455–56.  There is no allegation that Visa was aware
5   of the video or of Plaintiff's takedown requests.

6       Several years later, when Plaintiff was still under the age of 18, another man
7   coerced Plaintiff into creating sexually explicit videos of herself, which were then sold
8   through the internet and ultimately uploaded by users to Pornhub.  SAC ¶¶ 457–58.
9   Plaintiff alleges that these videos remained available on Pornhub at least as recently as
10  December 2020 and that she continues to suffer serious emotional, psychological, and
11  financial injury as a result.  *Id.* ¶¶ 460–61.

12      Plaintiff alleges more broadly that MindGeek had the capacity to monitor its
13  websites for underage and non-consensual content, but failed to identify and remove such
14  content.  *See, e.g.*, SAC ¶¶ 80–88, 526.  Plaintiff also alleges that MindGeek has
15  participated in a sexual exploitation venture by allowing underage and non-consensual
16  content to flow through its websites, which allows MindGeek to earn revenue from
17  advertisers and from subscription plans.  *See id.*

18  **II.   Visa's Business**

19      Visa has no direct relationship with MindGeek.   Instead, Visa enters into
20  contractual relationships with banks (the Acquirers), and those banks then enter into
21  separate contracts with merchants like MindGeek to process transactions through Visa's
22  network.  *See* SAC ¶¶ 299, 303, 309; *see also Emery v. Visa Int'l Serv. Ass'n*, 95 Cal.
23  App. 4th 952, 956 (2002) (explaining that Acquirers process transactions when consumers
24  use Visa-branded payment cards to make a purchase from the merchant).  The Visa
25  network electronically links the Acquirers and card-issuing financial institutions (the
26  Issuers) by gathering transaction data that enables the Acquirers and Issuers to settle
27  billions of transactions daily via the Visa network.  *See* SAC ¶¶ 309, 481; *see also Emery*,
28  95 Cal. App. 4th at 956.  In operating this network, Visa enters into agreements with the

Acquirers and Issuers, but *not* the individual businesses and merchants.  *See* SAC ¶¶ 287, 303, 309, 481.

Visa imposes rules governing the types of merchants that the Acquirers may contract with, but contrary to some public perception, it is the Acquirers, not Visa, that initiate and maintain relationships with merchants.  *See* SAC ¶ 309.  The Acquirers monitor merchant activity and are responsible for ensuring that merchants comply with Visa's standards:  Among other things, Visa's standards prohibit the Acquirers from accepting payment from a merchant for any transaction that the Acquirer knows involves illegal activities or products.  *See id.*; *see also, e.g.*, Visa Core Rules and Visa Prod. and Serv. Rules §§ 1.5.1.4, 1.5.2.1, 5.3.4.4 (Apr. 13, 2024), https://usa.visa.com/content/dam/VCOM/download/about-visa/visa-rules-public.pdf.

## III.  Plaintiff's Allegations Regarding Visa

Plaintiff does not allege that Visa created, uploaded, disseminated, or monitored any content on MindGeek's websites.  Nor does Plaintiff allege that Visa was aware, prior to this lawsuit, of any videos depicting Plaintiff, those videos' presence on Pornhub, or Plaintiff's efforts to have those videos removed.

Instead, the SAC alleges that Visa, through its Acquirers and Issuers (not named as Defendants), generally provided merchant banking services to MindGeek.  *See* SAC ¶¶ 293–94.  Specifically, Plaintiff alleges that Visa and its "member banks," which include both Acquirers and Issuers, provided "merchant services to MindGeek [and] were aware of its trafficking venture and knowingly profited from it."  *See id.* ¶¶ 287, 303.

According to the SAC, MindGeek profits from its business in two ways.  First, MindGeek operates premium "paysites" where users can access content only by purchasing the content or by subscribing.  *See id.* ¶¶ 38, 338, 468.  Second, MindGeek operates free "tubesites" that contain content—uploaded by users—that users can access without paying MindGeek.  *See id.*  MindGeek earns advertising revenue through its affiliate, TrafficJunky, for advertisements appearing on those free websites (and on paid websites as well).  *See id.*  The SAC alleges generally that Visa (through its member

banks) processed payments for consumers purchasing subscriptions to MindGeek's premium sites and for unnamed advertisers paying TrafficJunky to place ads on unnamed MindGeek sites. *See id.* ¶ 478. Plaintiff does not identify any specific example where Visa actually processed payment for a transaction related to a video of the Plaintiff, which are alleged to have appeared on MindGeek's free sites. *Id.* ¶¶ 448, 452, 458–59.

The SAC alleges that payment card companies, including Visa, knew or should have known that illegal content generally was available on MindGeek's sites, based either on third-party advocacy and reporting or by conducting ad hoc searches on MindGeek's sites. *See id.* ¶¶ 287–89, 299, 303. Plaintiff also alleges that Visa and its member banks were "well aware that it is was impossible to segregate MindGeek's trafficking venture from its legitimate porn business." *See id.* ¶ 295. The SAC further states that Visa was "intimately familiar with MindGeek's business model and that all its content, including its trafficked content and CSAM/child pornography, was inextricably intertwined in . . . promotion, solicitation, and funneling of website traffic to its paid porn services." *Id.* Plaintiff alleges that Visa had "de facto" control over MindGeek, as evidenced by MindGeek's removal of nearly 10 million videos after Visa suspended payment processing in December 2020. *See id.* ¶¶ 285, 478.

## IV.    The Prior Order and Procedural Developments

Visa previously moved to dismiss the FAC. On July 29, 2022, Judge Carney—then presiding—issued a decision granting in part and denying in part Visa's motion to dismiss the FAC. *See* Order ("MTD Order"), ECF No. 166.

In its opinion, the Court concluded that Visa could not be held directly liable under the TVPRA, 18 U.S.C. § 1591(a)(2), for benefitting from direct participation in a sex-trafficking venture. MTD Order 21. The Court reasoned that Visa "is not alleged to have had any direct interaction with Plaintiff, her direct traffickers, or her videos, and therefore cannot bear beneficiary liability for knowingly *participating* in the sex trafficking venture that harmed Plaintiff." *Id.* The Court continued, observing that directly liability under the TVPRA "is an awkward fit with respect to Visa," because

1    "having not had any interaction with Plaintiff and her videos, how can it be said that Visa

2    knew or should have known that Plaintiff was a victim of sex trafficking?" *Id.*  The Court

3    stated that it would "not permit Plaintiff to amend her section 1591(a)(2) claim against

4    Visa," because "[s]uch amendment would be futile." *Id.* at 33.

5          The Court went on to conclude, however, that the FAC stated a claim against Visa

6    for *conspiring* with MindGeek to financially benefit from unlawful sexual exploitation

7    pursuant to 18 U.S.C. § 1594(c).  MTD Order 22.  The relevant conduct, the Court

8    concluded, was Visa's "process[ing] [of] advertisement payments on MindGeek's sites"

9    where the videos of Plaintiff appeared. *Id.* at 23.  To establish the existence of a supposed

10   conspiracy, the Court relied principally on Plaintiff's allegation that Visa "continue[d] to

11   recognize MindGeek as a merchant despite allegedly knowing that MindGeek monetized

12   a substantial amount of child porn on its websites." *Id.* at 24.  The Court held that it "does

13   not matter that Visa did not know who the eventual victims or primary traffickers would

14   be or whether Visa interacted with or knew of Plaintiff, her videos, or her traffickers,"

15   because the harms to Plaintiff "were natural consequences of Visa's alleged knowing

16   decision to provide the means through which MindGeek could monetize child porn

17   videos." *Id.*  The Court found cases holding otherwise either "distinguishable" or

18   "unpersuasive," and openly questioned whether cases arising in the "common law civil

19   conspiracy context" were "even applicable to the present analysis." *Id.* at 24–25, 24 n.14.

20         The Court further concluded that Visa's alleged participation in a conspiracy could

21   serve as an "unlawful business practice" predicate for Plaintiff's claim under California's

22   Unfair Competition Law ("UCL"), but did not analyze any other basis for UCL liability

23   against Visa.  MTD Order 29.  The Court dismissed Plaintiff's claim against Visa under

24   the False Advertisement Law. *Id.*[1]

25

26   ───────────────

     [1] The Court declined to analyze whether Plaintiff had stated a claim under the Racketeer

27   Influenced and Corrupt Organizations Act because of outstanding issues that would be
     addressed through jurisdictional discovery.  MTD Order 27–28.  Plaintiff has not re-

28   alleged any RICO claims in the SAC.

In a separate order issued the same day, the Court denied without prejudice the motions to dismiss filed by MindGeek and its various affiliates and officers, directing the parties to engage in jurisdictional discovery, with a deadline of December 30, 2022. *See* Order, ECF No. 167. The Court ordered Plaintiff to file a second amended complaint "at the close of jurisdictional discovery." *Id.* at 8. The Court stayed discovery against Visa pending the completion of jurisdictional discovery and the filing of the SAC, reasoning that "the remaining claims against Visa are uncertain" and that allowing discovery from Visa "would be inefficient case management" and "lead to duplication of effort, unnecessary discovery, and undue burden on the Court and the parties." Order Den. P's Req. Scheduling Order & Req. Disc. ("Discovery Order"), ECF No. 168, at 1–2.

Jurisdictional discovery ended on June 23, 2024 and Plaintiff filed the SAC on May 23, 2024. Against the Court's direction, Plaintiff has reasserted a claim against Visa for direct TVPRA liability under 18 U.S.C. § 1591(a)(2) (Count II). Plaintiff also reasserts claims for conspiracy TVPRA liability under 18 U.S.C. § 1594(c) (Count IV), for unfair business practices under California Business and Professions Code §§ 17200 and 17500 (Count XIV), and for common law civil conspiracy (Count XVI).

## LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) should be granted where the complaint fails to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. The complaint must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). "Thus, 'conclusory allegations of law and unwarranted inferences

are insufficient to defeat a motion to dismiss.'" *Benavidez v. County of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021).

## ARGUMENT

No one should have to endure what Plaintiff describes happening to her.  She was the victim of underage sexual exploitation, and those responsible for harming her should be held to answer for it.  But Visa is not a proper defendant in this litigation; it does not endorse or authorize the use of its services for unlawful purposes.  The SAC does not plead any cognizable claim against Visa.

*First*, Plaintiff's claim against Visa for direct participation liability under the TVPRA should be dismissed because the Court previously dismissed this exact claim with prejudice and declined to allow Plaintiff to re-plead the claim.  Plaintiff has not sought relief from that order and therefore cannot proceed on a TVPRA participation claim.  In any event, the SAC contains no new allegations about Visa that would suffice to state a direct claim against Visa.

*Second*, Plaintiff has failed to state a claim for conspiracy liability.  All of the alleged conduct involving Plaintiff took place before January 2023.  But there was no private right of action for conspiracy under the TVPRA before Congress added one in January 2023.  Before January 2023, the statute imposed civil liability on *direct* violators of the TVPRA only.  Plaintiff therefore has no private right of action against Visa for conspiracy, as confirmed in two decisions from the Ninth Circuit.  And in any event, Plaintiff fails to state a cognizable claim for conspiracy under the TVPRA or state law, because a company does not enter into a conspiracy by providing standard goods and services to the market, even if the company knows or believes a downstream purchaser could or will use the goods or services in an unlawful manner.

*Third*, Plaintiff has failed to state a claim under the UCL.  Plaintiff's UCL claim is based upon actions allegedly taken by the MindGeek Defendants, not Visa, and the UCL does not impose liability on third parties that allegedly provide the means or "tools" for *other* businesses that violate the UCL.

*Fourth*, holding Visa liable for MindGeek's alleged misconduct here would transcend established limits on secondary liability. The Supreme Court and the Ninth Circuit have recognized the dangers of extending secondary liability beyond well-defined limits, including in the payment industry. For its part, Congress provided significant immunity in Section 230 for internet companies and websites (like MindGeek) that promote and distribute content created by others. Visa is many steps removed from—and had no role whatsoever—with Plaintiff, her traffickers, and the videos at the heart of this case. Nor does Visa have any contract or direct commercial relationship with MindGeek, which is only one of millions of merchants that access the Visa network. Visa is not alleged to have had had any special relationship with MindGeek or to have provided MindGeek with any unique or non-standard services beyond what it (indirectly) offers to millions of other merchants. Imposing liability on Visa on these facts is fundamentally incompatible with existing secondary liability rules. Accordingly, each of Plaintiff's claims against Visa should be dismissed with prejudice.

## I.    The SAC's Claim For Direct TVPRA Liability Is Improper And Invalid

Under Section 1595(a), a plaintiff may bring a civil claim based on a violation of one of the criminal offenses set forth in the TVPRA. Plaintiff's FAC included a claim based on Visa's alleged violation of Section 1591(a)(2), which applies to a person who knowingly "benefits, financially or by receiving anything of value, from participation in a" sex-trafficking venture. 18 U.S.C. § 1591(a)(2). The Court dismissed that claim against Visa with prejudice because Visa "is not alleged to have had any direct interaction with Plaintiff, her direct traffickers, or her videos," and therefore it could not "be said that Visa knew or should have known that Plaintiff was a victim of sex trafficking." MTD Order 21. In dismissing this claim *with prejudice*, the Court made clear it *was not* permitting "Plaintiff to amend her section 1591(a)(2) claim against Visa," as "[s]uch amendment would be futile because Plaintiff simply has no basis for claiming Visa directly participated in the sex trafficking ventures that harmed her." *Id.* at 33. Nonetheless, Plaintiff has included in the SAC against Visa a claim under 18 U.S.C.

§ 1591(a)(2) (and the corresponding provision for civil liability under Section 1595(a)),

repackaging the same allegations from the FAC. *See* SAC ¶¶ 476–488.

Because the Court already dismissed Plaintiff's claim against Visa under Section

1591(a)(2) with prejudice and denied Plaintiff leave to amend, Plaintiff's Section

1591(a)(2) claim against Visa in the SAC should likewise be dismissed. *See* Fed. R. Civ.

P. 12(f)(1); *see also, e.g.*, *Silvas v. County of Riverside*, No. 19-CV-2358, 2020 WL

7086144, at *2 (C.D. Cal. Oct. 9, 2020) (striking claims previously dismissed with

prejudice); *Ketab Corp. v. Mesriani Law Grp.*, No. 14-CV-7241, 2015 WL 2085523, at

*3 (C.D. Cal. May 5, 2015) (striking, without leave to amend, two claims the court

previously dismissed with prejudice); *Lamumba Corp. v. City of Oakland*, No.

05-CV-2712, 2006 WL 3086726, at *4 (N.D. Cal. Oct. 30, 2006) ("[I]f plaintiffs have

re-asserted claims that were dismissed with prejudice, . . . these defective claims are

specious and will be stricken."). Plaintiff identifies no change in the law or facts that

would justify revisiting the prior dismissal and has not sought leave to re-plead.

Moreover, the new complaint adds no new allegations that Visa "had any interaction with

Plaintiff and her videos" or that "Visa knew or should have known that Plaintiff was a

victim of sex trafficking." MTD Order 21. The SAC is devoid of any allegations

connecting Visa to Plaintiff. This claim accordingly should be dismissed.

## II. The SAC Does Not State A Claim For Civil Conspiracy Against Visa

Plaintiff's only other claim against Visa under the TVPRA is for civil conspiracy

under Section 1594(c) and 1595(a). But that claim—as well as Plaintiff's common-law

civil conspiracy claim—fails for a number of reasons.

### A. There is no private right of action for civil conspiracy under the TVPRA for pre-2023 conduct

Plaintiff's TVPRA conspiracy claim fails first and foremost because the statute

does not provide for a private right of action to sue for conspiracy for conduct predating

January 5, 2023, which is all of the conduct alleged as to Visa here.[2]

---

[2] Visa did not raise this argument in its first motion to dismiss because Plaintiff's claims
at that time were focused principally on direct liability under Section 1591, and the parties

### 1.    The TVPRA did not authorize a civil conspiracy claim at the time of the alleged conduct

The TVPRA was enacted in 2000 to "combat trafficking in persons" by imposing enhanced criminal penalties for offenses related to sexual exploitation. 18 U.S.C. §§ 1589–1594; 22 U.S.C. § 7101(a), (b)(2). Section 1591 sets forth the substantive elements for a criminal trafficking offense, but does not mention conspiracy as a basis for liability. 18 U.S.C. § 1591(a). Criminal liability for conspiracy is instead set forth in Section 1594, which provides that "[w]hoever conspires with another to violate section 1591 shall be fined under this title, imprisoned for any term of years or for life, or both." *Id.* § 1594(c).

*Civil* liability for sex trafficking is set forth in Section 1595(a), which, prior to amendment in 2023, provided:

> An individual who is a victim of a violation of this chapter may bring a civil action against the *perpetrator* (or whoever *knowingly benefits*, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

*Id.* § 1595(a) (2018) (emphasis added). Before 2023, Section 1595(a) did not mention civil liability for alleged conspirators.

---

focused little on conspiracy in their briefing. It was only through the Court's Order that conspiracy became the central theory of liability. In any event, because "an amended complaint super[s]edes the original complaint and renders it without legal effect," *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc), "[c]ourts in this Circuit … have permitted defendants moving to dismiss an amended complaint to make arguments previously made and to raise new arguments that were previously available," *In re Wellpoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 893 (C.D. Cal. 2012); *see also Clevland v. Ludwig Inst. for Cancer Research*, *Rsch. Ltd.*, No. 21-CV-871, 2022 WL 2835842, at *6 n.4 (S.D. Cal. July 20, 2022) ("The court is also not persuaded by Plaintiffs' procedural argument that Defendant is barred from attacking Plaintiffs' . . . claim on any basis that was not already raised in Defendant's First Motion to Dismiss."); *Hamana v. Kholi*, No. 10-CV-1630, 2011 WL 5077614, at *1 (S.D. Cal. Oct. 25, 2011) ("[A] defendant can move to dismiss an amended complaint for failure to state a claim based on arguments not raised in its first motion to dismiss.").

Accordingly, while the statute has long recognized conspiracy as an inchoate *crime* punishable by imprisonment, the statutory provision imposing *civil* liability did not originally provide a private right of action for conspiracy. It was not until January 5, 2023 that Section 1595(a) was amended to include civil liability for attempt and conspiracy. *See generally* Abolish Trafficking Reauthorization Act of 2022, Pub. L. No. 117-347, 136 Stat. 6199 (2023) (expanding civil liability to "whoever knowingly benefits, *or attempts or conspires to benefit*, financially or by receiving anything of value" from an unlawful trafficking venture (emphasis added)). The clear import of the text and history is that there was no private right of action for civil conspiracy under Section 1595(a) before January 2023.

The Ninth Circuit came to this precise conclusion when examining civil liability for *attempt*—another inchoate offense specifically covered by the criminal portion of the statute, but not incorporated into the civil liability provision until it was added alongside the conspiracy civil cause of action in 2023. *See* 18 U.S.C. §§ 1594(a), 1595(a) (2018). In *Ratha I*, the Ninth Circuit considered whether the pre-2023 version of Section 1595(a) imposed civil liability for attempted violations of Section 1591. 35 F.4th at 1176. The Court ruled against the plaintiffs, holding that "[t]he text of § 1595 does not extend liability to those who *attempt* to benefit from a perpetrator's TVPRA violation," and that to rule otherwise would "violat[e] a fundamental principle of statutory interpretation that absent provisions cannot be supplied by the courts." *Id.* (alteration and quotation marks omitted). The Ninth Circuit further observed that "Congress's decision to impose civil liability on those who 'benefit' but not those who 'attempt to benefit' is significant because attempt liability is plainly authorized elsewhere in the TVPRA," pointing to Section 1594(a)'s provision for criminal attempt liability. *Id.* "Had Congress intended to create civil liability under § 1595 for attempts to benefit," the Court continued, "we can reasonably conclude that it would have done so in express terms." *Id.*; *see also Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 410–11 (S.D.N.Y. 2023) (finding the TVPRA does not impose civil aiding-and-abetting liability).

*Ratha I* is consistent with longstanding Supreme Court precedent holding that "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002); *see also Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."). Accordingly, the Supreme Court has repeatedly refused to read additional rights or remedies into statutes beyond those expressly contemplated by Congress. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176–77 (1994) (refusing to infer aiding-and-abetting liability because "Congress knew how to impose aiding and abetting liability when it chose to do so" and was silent in the statute at issue); *Pinter v. Dahl*, 486 U.S. 622, 650 (1988) (refusing to infer liability for mere solicitation of a securities purchase, because "[w]hen Congress wished to create such liability, it had little trouble doing so"); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733 (1975) (refusing to infer a cause of action for non-purchasers or non-sellers of securities, because "[w]hen Congress wished to provide a remedy to those who neither purchase nor sell securities, it had little trouble in doing so expressly").

*Ratha I* and this corresponding line of cases are decisive here. Just as with attempt liability in *Ratha I*, prior to 2023, Section 1595(a) expressly provided for a private right of action against the perpetrator of unlawful sexual exploitation and any knowing beneficiary, but did not provide for a remedy for attempt or conspiracy. *See* 18 U.S.C. § 1595(a) (2018). And just as the Ninth Circuit refused to infer a private right of action for attempt in *Ratha I*, this Court should not infer a private right of action for conspiracy for pre-2023 conduct. To hold otherwise would contravene both *Ratha I* and the binding precedent foreclosing implied private rights of action. And if Congress's pre-2023 intent were not already clear from the face of the statute, any doubt was resolved when Congress *amended* the statute in 2023 to add attempt and conspiracy as permissible predicates for civil liability under Section 1595(a). *See* Abolish Trafficking Reauthorization Act of

2022, Pub. L. No. 117-347, 136 Stat. 6199 (2023).  The fact that Congress believed such an amendment was necessary further confirms that the statute did not provide for civil conspiracy liability before then:  "[W]hen Congress alters the words of a statute, it must intend to change the statute's meaning."  *United States v. Wilson*, 503 U.S. 329, 336 (1992); *see also Stone v. INS*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.").

This limitation on pre-2023 civil liability forecloses Plaintiff's TVPRA conspiracy claim against Visa.  The claim against Visa arises from conduct that predates the January 5, 2023 effective date of the amendment to Section 1595(a) adding conspiracy as a basis for civil liability.  SAC ¶¶ 295–296, 298, 300–309; 503–504.  In particular, Plaintiff's Section 1594(c) claim against Visa is based upon Visa's alleged funding, supporting, and facilitating "MindGeek's commercialization and monetization of CSAM" of Plaintiff and Visa's alleged "conspiracy" to provide "financial support to MindGeek to enable its exploitation of Plaintiff."  SAC ¶¶ 301, 503–504.  But the bases for each of Plaintiff's allegations—as Plaintiff alleges in the SAC—are Visa's purported actions and failures in *2020* and the years prior.  SAC ¶¶ 295–296, 298, 300–309.  Further, Plaintiff acknowledges in the SAC that Visa *suspended* acceptance privileges for MindGeek on December 10, 2020 and, since that date, "continues its ban on MindGeek's websites that host user-generated content," like Plaintiff's videos, images, and likeness referenced in the SAC.  SAC ¶¶ 309–310, 312.  Each of Plaintiff's allegations predate the inclusion of civil conspiracy liability in Section 1595(a) and as such are not a valid basis for Plaintiff's claim against Visa under Section 1595(a).

## 2.      The 2023 TVPRA amendment does not have retroactive effect

Nor does the 2023 amendment adding a cause of action for conspiracy have retroactive effect.  The Ninth Circuit recently addressed this issue in the context of attempt liability under the TVPRA.  In *Ratha II*—the case's second trip to the appellate court— the Court considered the retroactive effect of the 2023 amendment on a claim for attempt liability.  *See* 2024 WL 3589751, at *2.  Applying settled Ninth Circuit precedent, the

Court rejected the plaintiffs' contention that the 2023 amendment merely "clarifies" the TVPRA, and concluded instead that the 2023 amendment "*does not apply to pre-enactment conduct.*" *Id.* at *17 (emphasis added). This decision is consistent with past decisions (including from the Ninth Circuit) recognizing that previous amendments to the TVPRA establishing or increasing the scope of civil liability are substantive in nature and therefore cannot be applied retroactively absent a clear statement from Congress. *See, e.g.*, *Ditullio v. Boehm*, 662 F.3d 1091, 1100 (9th Cir. 2011) (private civil right of action could not be applied retroactively); *Owino v. CoreCivic, Inc.*, No. 17-CV-1112, 2018 WL 2193644, at *12–13 (S.D. Cal. May 14, 2018) ("financial benefit" right of action could not be applied retroactively); *St. Louis v. Perlitz*, No. 13-CV-1132, 2016 WL 1408076, at *3 (D. Conn. Apr. 8, 2016) (same).

Like *Ratha I*, *Ratha II* is persuasive and controlling here. Although the case involved attempt liability rather than conspiracy liability, both of those inchoate offenses were added in the 2023 amendment and there are no pre-2023 cases expressly recognizing private civil liability for either offense. *Ratha II* therefore addressed the same question under the same statutory amendment and reached the conclusion that the 2023 amendment does not have retroactive effect. Moreover, *Ratha II* follows a long line of Supreme Court precedent disfavoring the retroactive application of substantive changes in statutory law absent a clear congressional statement to the contrary. In *Landgraf v. USI Film Prods.*, the Supreme Court outlined a two-step framework to determine whether new statutory provisions may permissibly be given retroactive effect to pre-enactment conduct. 511 U.S. 244 (1994). Observing that "the presumption against retroactive legislation is deeply rooted in our jurisprudence," the Court in *Landgraf* held that a court considering the retroactive effect of a statute should examine (1) whether Congress has "expressly prescribed the statute's proper reach"; and (2) if not, whether application of the legislation would create an impermissible "retroactive effect" by, for example, imposing new obligations or duties on prior actions not previously recognized under the law. *Id.* at 256–57, 265, 280; *see also Valiente v. Swift Transp. Co. of Ariz.*, 54 F.4th 581, 585 (9th Cir.

2022) (applying the *Landgraf* test).

Application of the two steps here confirms *Ratha II*'s holding. First, Congress has not "expressly prescribed the statute's proper reach." *See Landgraf*, 511 U.S. at 280–81. A statute is given retroactive effect at the first *Landgraf* step only if "the express language of the statute" is "capable of only one interpretation." *Toia v. Fasano*, 334 F.3d 917, 919 (9th Cir. 2003). Here, there is not even a hint in Section 1595(a) that the amendment has retroactive effect, as the statute is entirely silent on that point. *See United States v. Reynard*, 473 F.3d 1008, 1015 (9th Cir. 2007) (no retroactive effect at step one notwithstanding contrary legislative history, because "congressional silence on the retroactivity or non-retroactivity of the [statute] is significant in itself" (quotation marks omitted)). Second, applying the 2023 amendment to pre-2023 conduct would give the statute impermissible retroactive effect, because the 2023 amendment creates new civil liability for conspiracy that did not previously exist, and therefore if applied retroactively would impermissibly "increase a party's liability for past conduct." *Landgraf*, 511 U.S. at 280–81. The 2023 amendment cannot be applied retroactively.

\* \* \*

Because the TVPRA imposed no civil liability for conspiracy prior to 2023, all of Visa's alleged conduct took place prior to 2023, and the statute cannot be given retroactive effect to pre-amendment conduct, Plaintiff's conspiracy claim under the TVPRA fails.

## B.     Plaintiff fails to adequately allege the elements of a conspiracy

Even if a TVPRA conspiracy claim against Visa for pre-2023 conduct were available and cognizable against Visa, Plaintiff has not alleged the essential elements of such a claim, nor for a common-law conspiracy under state law. At the time of the MTD Order, there was little guidance on the scope of civil conspiracy liability under the TVPRA. In the absence of such precedent, the Court questioned the applicability of cases arising in the common law civil conspiracy context, as distinguished from claims brought under Sections 1594 or 1595. MTD Order 24 n.14 ("[Cases cited by Visa] come from the common law civil conspiracy context. They do not involve claims under section 1594.

1    The Court queries whether they are even applicable to the present analysis.").

2        Intervening Supreme Court authority has answered that question. The Court has

3 now clarified that where, as here, a federal statute does not define "critical terms" relating

4 to secondary liability, courts should look to their "common law" meanings, because courts

5 "generally presume that such common-law terms bring the old soil with them." *Twitter,*

6 *Inc. v. Taamneh*, 598 U.S. 471, 484 (2023) (alteration and quotation marks omitted). In

7 *Twitter*, the Court was focused on aiding-and-abetting liability, but in doing so relied on

8 the "leading case on civil aiding-and-abetting *and conspiracy* liability," *Halberstam v.*

9 *Welch*, 705 F.2d 472 (D.C. Cir. 1983). *Twitter*, 598 U.S. at 485 (emphasis added). *Twitter*

10 thus makes clear that precedent addressing the common-law meaning of conspiracy

11 should inform this Court's analysis. The MTD Order did not undertake this inquiry.

12        The common law elements of civil conspiracy are (1) "an agreement to do an

13 unlawful act or a lawful act in an unlawful manner"; (2) "an overt act in furtherance of

14 the agreement by someone participating in it"; and (3) "injury caused by the act."

15 *Halberstam*, 705 F.2d at 487; *see also Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir.

16 1986) (listing similar factors). This case turns on the first element, under which a plaintiff

17 must adequately allege "(i) knowledge of wrongful activity, (ii) agreement to join in the

18 wrongful activity, and (iii) intent to aid in the wrongful activity." *Ajzenman v. Off. of*

19 *Comm'r of Baseball*, 487 F. Supp. 3d 861, 867 (C.D. Cal. 2020) (citing *Craigslist Inc. v.*

20 *3Taps Inc.*, 942 F. Supp. 2d 962, 981 (N.D. Cal. 2013)). Plaintiff has failed to adequately

21 allege those elements—knowledge, agreement, intent—here.

22       **1.**    **Plaintiff alleges no facts to show that Visa had knowledge of**
              **MindGeek's alleged financial benefit from the unlawful videos of**

23               **Plaintiff**

24        Plaintiff's theory of conspiracy fails in the first instance because, as the Court held

25 in the MTD Order, Plaintiff has not adequately alleged that Visa had knowledge of

26 MindGeek's efforts to financially benefit from the alleged sexual exploitation of Plaintiff.

27        In the context of criminal conspiracy, the Supreme Court has held that a

28 "[c]onspiracy to commit a particular substantive offense cannot exist without at least the

degree of criminal intent necessary for the substantive offense itself." *Ingram v. United States*, 360 U.S. 672, 677–78 (1959).  This means that "when knowledge of a fact is required to convict for a substantive offense, knowledge is also required to convict for conspiracy to commit the substantive offense." *United States v. Eaglin*, 571 F.2d 1069, 1074 (9th Cir. 1977).  Where, as here, a statute imposes both criminal and civil liability, a court must "interpret the statute consistently, whether [it] encounter[s] its application in a criminal or noncriminal context." *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004).

The Court held in the MTD Order that "the allegations concerning Visa in the FAC do not reflect that Visa had any knowledge—constructive or otherwise—of Plaintiff, her videos or her age in the videos." MTD Order 21–22.  On that basis, the Court held that Visa could not be held liable pursuant to Section 1591(a)(2)'s provision for "benefit[]" liability.  *See id.*; *see also Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021) ("[T]he defendant must have either actual or constructive knowledge that the venture . . . violated the TVPRA as to the plaintiff."); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 939 (D. Or. 2020) ("Plaintiff must allege facts showing how [defendants] received notice that Plaintiff A.B. was trafficked at their respective properties."); *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021) (notice of "the prevalence of sex trafficking generally" at defendant's hotels was insufficient to show that defendant "should have known about what happened to this plaintiff").[3]  Plaintiff offers no new factual allegations in the SAC to alter that conclusion.

Moreover, even if Visa were generally aware that the videos of Plaintiff were available on MindGeek's websites, there are no allegations that Visa knew its payment processing services were used in connection with the videos of Plaintiff.  In fact, there are no allegations that Visa's payment processing services *were* in fact used in connection

---

[3] Legislative history confirms this interpretation:  "general knowledge that sex trafficking occurs on a website will not suffice as the knowledge element must be proven as to a specific victim."  H.R. Rep. No. 115-572, at 5 (2018), *as reprinted in* U.S.C.C.A.N. 73, 76.

with the videos of Plaintiff—other than a conclusory statement that "Visa processed payments that allowed viewers to access or download videos of Plaintiff," SAC ¶ 478, an allegation that does not even make sense given that Plaintiff alleges only that the videos were uploaded to MindGeek's free "tubesites," *see id.* ¶¶ 449, 454, which do not charge for access to content, *see id.* ¶ 38. There are thus no plausible, non-conclusory allegations that Visa knew that any of its services were being used in connection with MindGeek's alleged efforts to *financially benefit* from the videos of Plaintiff, which is the substantive conduct alleged as to MindGeek. *See Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (alteration and quotation marks omitted)).

Nevertheless, the Court previously said that Visa "can bear liability for MindGeek's section 1591(a)(2) violation if such crime was committed in furtherance of and a natural consequence of the conspiracy, regardless of whether Visa knew of or interacted with Plaintiff or her primary traffickers." *See* MTD Order 23. The Court's conclusion as to Visa's knowledge under Section 1591(a)(2) should have been sufficient to reject the conspiracy cause of action, and the Court went astray by relying on allegations about Visa's alleged *general* knowledge regarding unlawful content on MindGeek's websites.

Because—as the Court correctly held—Visa cannot be held liable for a "substantive offense" under Section 1591(a)(2) without knowledge of the acts perpetrated against Plaintiff *specifically*, it also cannot be held liable *as a conspirator* without such knowledge. *Eaglin*, 571 F.2d at 1074. The lack of adequate knowledge for primary liability necessarily defeats secondary liability. *See United States v. Collazo*, 984 F.3d 1308, 1333 (9th Cir. 2021) (the mental state for a conspiracy conviction must be the "same as if the defendant had been charged with the underlying offense"); *United States v. Bekowies*, 432 F.2d 8, 14 (9th Cir. 1970) ("It is hornbook law that when knowledge of a fact is required to convict for a substantive offense, knowledge is also required to convict for conspiracy to commit the substantive offense.").

The Court's contrary holding in the MTD Order was premised on the different rule that "[o]ne conspirator is liable for the acts of its co-conspirator when such acts are in furtherance of the conspiracy." MTD Order 22 (citing *Pinkerton v. United States*, 328 U.S. 640, 647 (1946)). That statement is true once a conspiracy is formed, but it does not answer the question of what particular knowledge is required to establish the *existence of the conspiracy* in the first instance. And here, where the statute requires knowledge of a specific unlawful act with respect to a specific victim, *see Red Roof Inns*, 21 F.4th at 725, Visa cannot enter into a conspiracy without knowledge of that specific unlawful act and specific victim (i.e., the posting and profiting from the videos of Plaintiff). There are no such allegations here.

### 2. Plaintiff alleges no facts to show that there was an agreement between Visa and MindGeek to commit an unlawful act

In the MTD Order, the Court correctly recognized that in order to plead a claim for conspiracy, "Plaintiff must allege facts supporting a conclusion that MindGeek and Visa had a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." MTD Order 23 (quotation marks omitted) (citing *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1020 (9th Cir. 1985)). Visa respectfully submits, however, that the Court erred in treating Visa's agreement to provide general-purpose payment processing services allegedly knowing they could be used in connection with sexual exploitation as tantamount to an *agreement* to perform an unlawful act. With the scope of Plaintiff's conspiracy claim now clear, Visa provides this Court with binding authority that demonstrates the legal insufficiency of Plaintiff's allegations.

A plaintiff alleging an agreement to engage in unlawful activity faces significant challenges. "Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy" are insufficient. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008). Mere association with a tortfeasor also is not sufficient. *See id.* at 1048.

In a series of cases, the Ninth Circuit has analyzed what showing is necessary to

1    infer an agreement to commit an unlawful act for purposes of conspiracy. *See, e.g.*,
2    *United States v. Loveland*, 825 F.3d 555 (9th Cir. 2016); *United States v. Ramirez*, 714
3    F.3d 1134 (9th Cir. 2013); *United States v. Lennick*, 18 F.3d 814 (9th Cir. 1994). What
4    those cases make clear is that in a buyer–seller relationship, "conspiracy requires proof
5    of an agreement to commit a crime other than the crime that consists of the sale itself."
6    *Lennick*, 18 F.3d at 819 (quotation marks omitted). For example, in the context of
7    conspiracy to distribute narcotics, the Court has instructed that the prosecution must
8    "show more than that [the defendant] sold drugs to someone else knowing that the buyer
9    would later sell to others. It had to show that [the defendant] had an agreement with a
10   buyer pursuant to which the buyer would further distribute the drugs." *Ramirez*, 714 F.3d
11   at 1140 (quotation marks omitted); *see also Lennick*, 18 F.3d at 819 ("To show a
12   conspiracy, the government must show not only that [the defendant] gave drugs to other
13   people *knowing* that they would further distribute them, but also that he had an *agreement*
14   with these individuals to so further distribute the drugs." (emphasis added)). Thus,
15   "simple knowledge, approval of, or acquiescence in the object or purpose of a conspiracy,
16   without an intention and agreement to accomplish a *specific illegal objective*, is not
17   sufficient." *Id.* at 818 (emphasis added) (quotation marks omitted).

18        This precedent applies with full force here. Visa does not sell any goods to
19   MindGeek—and does not even contract with MindGeek directly—but it is alleged to have
20   indirectly provided *services* to MindGeek that facilitated unlawful conduct. But the fact
21   that Visa agreed to provide lawful, general-use, payment-processing services is
22   insufficient to establish agreement, because the agreement must consist of something
23   *other than* the underlying sale of services. *See Lennick*, 18 F.3d at 819. There are
24   accordingly no plausible allegations of an agreement between Visa and MindGeek to
25   achieve a "specific *illegal* objective." *Id.* at 818 (emphasis added) (quotation marks
26   omitted).

27        In the MTD Order, the Court focused on Visa's alleged knowledge of MindGeek's
28   unlawful activities. *See* MTD Order 23–25. But knowledge that a seller's goods may or

even will be used unlawfully is not sufficient for conspiracy. *See Ramirez*, 714 F.3d at 1140; *Lennick*, 18 F.3d at 818 ("simple knowledge, approval of, or acquiescence" does not suffice).  Despite Visa's rules and protocols to keep unlawful activity out of its network, every merchant for whom Visa processes payments—bookstores, restaurants, hotels—presents a possibility of misuse of Visa's services (whether by the merchant itself or by its customers).  But that does not mean Visa's knowledge of that potential misuse is tantamount to an *agreement* to engage in or facilitate unlawful conduct.  Visa did not agree with MindGeek that MindGeek would use Visa's payment processing services in connection with unlawful content, and it is *that* agreement—not the mere agreement to provide general payment-processing services—that must be adequately alleged.  *See United States v. Moe*, 781 F.3d 1120, 1124 (9th Cir. 2015).

Since the Court's decision on the prior motion to dismiss, another court has dismissed a TVPRA conspiracy claim in comparable circumstances.  In *Deutsche Bank*, the plaintiffs alleged a TVPRA conspiracy based on the fact that the defendants "agree[d] to provide banking services for [a sex trafficker] and his affiliated entities and that they knew, or recklessly disregarded, would assist his sex-trafficking venture."  671 F. Supp. 3d at 412.  The court held those allegations insufficient, however, because "that agreement is different from an actual agreement to participate in a sex-trafficking venture."  *Id.*  That is also the case here:  An agreement to process payments is not equivalent to an agreement to engage in an unlawful sex trafficking venture.  *See also Twombly*, 550 U.S. at 557 (holding that allegations of knowledge and approval of a co-conspirator's conduct are insufficient to allege an *agreement* absent plausible facts "pointing toward a meeting of the minds").

Also immaterial is the allegation that "Visa's act[s] serve[] to keep open the means through which MindGeek completed its criminal act."  MTD Order 25.  The fact that a buyer relies on a good or service of the seller to conduct an unlawful business does not give rise to an inference of conspiracy, even if the seller *knows* the buyer will act unlawfully.  In *Loveland*, for example, the Ninth Circuit held there was insufficient

evidence of a conspiracy between a buyer and seller of methamphetamine, even though the buyer purchased quantities far in excess of what could be used by a single person and even though the seller "might assume that [the defendant] was reselling the methamphetamine that he bought from them." 825 F.3d at 562. The Court held the same in *Ramirez*, even though the buyer resold the purchased drugs *in plain view of the original seller*. 714 F.3d at 1136, 1140. Such allegations fall short of a meeting of the minds to further an unlawful endeavor.

All of this law makes good sense. The *Pinkerton* rule making one conspirator liable for the other conspirators' acts is justified precisely because the conspirators have agreed—and had a meeting of the minds—to commit and further a criminal endeavor. "The theory of the early common law was there was *mutual agency* of each [conspirator] *to act for the others*." Restatement (Second) of Torts § 876, Westlaw (updated June 2024) (emphases added). The SAC's allegations do not give rise to a plausible inference that Visa *agreed* with sex traffickers or MindGeek to profit from a sex trafficking venture such that these actors had "mutual agency" with Visa and could act for Visa.

To the contrary, Visa makes its services available to millions of merchants around the world, some of which may attempt to misuse Visa's services as part of unlawful activity (such as tax evasion or money laundering). Despite such misuse, and despite Visa's general awareness of the potential for misuse, in no sense can it be said that Visa has "conspired" with each and every one of those merchants to conduct and promote the unlawful business. To hold otherwise would contravene the Ninth Circuit's standards for imposing conspiracy liability.

### 3. Plaintiff alleges no facts showing that Visa intended to benefit itself from illegal sex trafficking

The requirement of intent partially overlaps with the issue of whether there was an agreement at all, but it is a distinct element nonetheless: A plaintiff must show not only that the defendant knew of the conspiracy's purposes and "intentionally joined the charged conspiracy," but also that the defendant "intend[ed] to achieve" the "aims" of the conspiracy. *United States v. Gee*, 226 F.3d 885, 893 (7th Cir. 2000). Moreover, the

general rule is that corporate intent cannot be divined by aggregating the collective knowledge of the corporation: Instead, the plaintiff must "sufficiently plead that at least one of the corporation's officers had the requisite scienter at the time they made the allegedly misleading statements." *United States v. Scan Health Plan*, No. 09-CV-5013, 2017 WL 4564722, at \*5 (C.D. Cal. Oct. 5, 2017) (alteration and quotation marks omitted); *see also Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995) ("[T]here is no case law supporting an independent 'collective scienter' theory.").

Where a plaintiff has "essentially alleged a buyer-seller relationship," "conspiracy law has long recognized that such a relationship does not, without more, establish the parties' intent to aid each other in some other objective, however illicit the goods involved in [the] buyer-seller transaction." *Craigslist*, 942 F. Supp. 2d at 982. That is because a plaintiff pursuing a conspiracy theory must plausibly allege facts "tending to exclude the possibility of independent action." *Twombly*, 550 U.S. at 554. So too here—Visa's provision of general-purpose payment processing services does not evince an *intent* on Visa's part to aid in an unlawful venture.

In the MTD Order, the Court distinguished *Craigslist* on the ground that "Visa is not alleged to have simply created an incentive to commit a crime, it is alleged to have knowingly provided the tool used to complete a crime." MTD Order 25. But "knowingly provid[ing] the tool" for a crime is not sufficient to establish intent either: "A person who is indifferent to the goals of an ongoing conspiracy does not become a party to this conspiracy merely because that person knows that his or her actions might somehow be furthering that conspiracy." *United States v. Collins*, 966 F.2d 1214, 1219–20 (7th Cir. 1992). Even if a defendant knows that its services or products are being used for unlawful purposes, the plaintiff must still offer facts that "reveal a common *intent*." *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 873 (D.C. Cir. 2022) (emphasis added) (alteration and quotation marks omitted). Thus, for example, the fact that a bank processes—and financially benefits from—transactions by foreign entities known to be associated with terrorism does not "give rise to a plausible inference that [the bank] agreed to provide

material support *for terrorism*," particularly where there are no allegations indicating "that [the bank] cared how its . . . customers obtained or spent the funds that it processed for them." *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 395 (7th Cir. 2018); *see also Twitter*, 598 U.S. at 500 ("[T]here are no allegations that defendants treated ISIS any differently from anyone else.   Rather, defendants' relationship with ISIS and its supporters appears to have been the same as their relationship with their billion-plus other users:  arm's length, passive, and largely indifferent.").

Here, there are no allegations suggesting that Visa (nor any particular person at Visa) *intended* for MindGeek to profit from uploading CSAM to its website.  In fact, Visa's intent and desire was that merchants *not* use its payment processing services for *any* unlawful purposes.   Plaintiff's allegations depend on the contention that Visa *specifically intended* that MindGeek use its payment processing services for sexual exploitation purposes, but there are no plausible allegations establishing that improbable proposition.  That is an independent reason to dismiss Plaintiff's conspiracy claims.[4]

## III.    The SAC Fails To Allege A State Law Claim Under California Business And Professions Code §§ 17200, 17500

Plaintiff has not stated a claim against Visa for unfair business practices or false advertising under California Business and Professions Code §§ 17200, 17500 (the UCL), for two reasons.

*First*, Plaintiff fails to allege any actionable conduct *by Visa*.   "A defendant's liability [for unfair business practices] must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate section 17200 or 17500." *Emery*, 95 Cal. App. 4th at 960 (citation omitted).  A complaint that "lumps together . . . multiple defendants in one broad allegation fails to satisfy the notice requirement of Rule 8(a)(2)." *Adobe Sys. v. Blue Source Grp., Inc.*, 125 F. Supp.

---

[4]  *Benson v. JPMorgan Chase Bank, N.A.* supports this conclusion as well.   No. 09-CV-5272, 2010 WL 1526394, at *6 (N.D. Cal. Apr. 15, 2010).  The Court previously found *Benson* unpersuasive.  MTD Order 24 n.14.  Visa respectfully disagrees, but its arguments in this motion do not depend on *Benson*.

3d 945, 964 (N.D. Cal. 2015); *see also Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (complaint failed to state a claim where "all defendants are lumped together in a single, broad allegation").

Here, Plaintiff's allegations under Count XIV purport to apply to "Defendants," but in fact, they each relate only to the alleged acts of the MindGeek Defendants, not Visa. The SAC alleges generally that "*Defendants* have engaged in unlawful, unfair, and fraudulent business acts and practices by participating in a venture … that intentionally … monetized the dissemination of CSAM … and other nonconsensual content *on its site*." SAC ¶ 574 (emphasis added). It also states that "*Defendants* fraudulently deceived *its users* that they were monetizing, distributing, and advertising legitimate, legal content, when in fact *defendants' websites* were riddled with videos of [illegal] content, including videos of Plaintiff" and Defendants' "inadequate" verification systems "enabled users to upload child pornography to *Defendants' websites*." *Id.* ¶ 575 (emphasis added). The SAC further states that "*Defendants* profited by *selling advertising space*" and "by *featuring* Plaintiff's videos, images, and likenesses" to "drive user traffic *to their websites*." *Id.* ¶¶ 576–577 (emphases added).

Visa is not alleged to have done any of those things. Visa does not have any websites at issue in this case, and Visa therefore did not have any website users to "fraudulently deceive[]." It does not have any control over age and consent verification policies on the websites at issue, and it does not distribute or advertise content on those sites. Visa did not feature or use Plaintiff's videos, images, or likeness, and Visa had no knowledge of Plaintiff's content. These allegations are directed at the MindGeek Defendants, not Visa. Indeed, the SAC alleges no concrete actions that Visa took or failed to take that would rise to the level of an "unlawful, unfair or fraudulent *business act or practice*." *See* Cal. Bus. & Prof. Code § 17200 (emphasis added); SAC ¶¶ 574–75. The SAC focuses on Visa's standard payment processing services. *See* SAC ¶¶ 8, 102, 285–312, 574–75.

*Second*, to the extent Plaintiff relies on the alleged conspiracy or any other claim

to establish the predicate for a claim of "unlawful" business practice, that theory fails because Plaintiff has not plausibly alleged any underlying unlawful activity by Visa. *See Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal 2021) (dismissing plaintiff's petition because plaintiff's UCL claim "hinge[d] upon whether a plaintiff can formulate a claim under the predicate law," and if "'plaintiff cannot state a claim under the predicate law … [the UCL] claim also fails") (citing *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017). Plaintiff has not adequately pled any conspiracy claim against Visa, and Plaintiff's claim for direct liability under the TVPRA is foreclosed by law. Plaintiff therefore cannot establish that the only conduct in which Visa was engaged—the ordinary course processing of credit card payments—was itself unlawful. As Plaintiff's predicate claims against Visa fail, Plaintiff's UCL claim should also.[5]

## IV.    Plaintiff's Theories Transgress Settled Limitations on Secondary Liability

The common thread through all of Plaintiff's claims against Visa is that they seek to stretch the boundaries of secondary liability, in particular conspiracy liability, beyond recognized boundaries. In *Twitter,* the Supreme Court recently reaffirmed that secondary liability theories must be cabined to "truly culpable conduct" and should not be extended to "passive nonfeasance." 598 U.S. at 489, 500. While the Court's holding focused on aiding-and-abetting liability, its admonition against expanding common law secondary liability theories has direct application to aiding and abetting's "close cousin conspiracy" too. *Id.* at 489. The Court cautioned that under elastic secondary liability theories, "ordinary merchants could become liable for any misuse of their goods and services, no matter how attenuated their relationship with the wrongdoer." *Id.* And in rejecting aiding-and-abetting liability of social media companies for allegedly facilitating a terrorist attack, the Court emphasized that a contrary ruling "would effectively hold any sort of

---

[5] Because Plaintiff's UCL claim is the sole basis for her common-law civil conspiracy claim against Visa, *see* SAC ¶ 591, Plaintiff's conspiracy claim can be dismissed for all of the same reasons, in addition to the conspiracy-specific defects outlined above, *see infra.*

communication provider liable for any sort of wrongdoing *merely for knowing that the wrongdoers were using its services and failing to stop them*"—a rule that would "run roughshod over the typical limits on tort liability" and "far beyond its essential culpability moorings." *Id.* at 503 (emphasis added). That observation applies with equal force to Visa in this case.

The Ninth Circuit also has expressly recognized the particular danger of expanding secondary liability to payment companies like Visa, advising that such claims must be evaluated "with an awareness that credit cards serve as the primary engine of electronic commerce." *Perfect 10 Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007). The Ninth Circuit rejected "radical new theories of liability" against the payment industry, reasoning that even if payment by credit cards made certain unlawful conduct (there, copyright and trademark infringement) easier and more profitable, and even if the payment companies could exert "financial pressure" on wrongdoers to stop their behavior, the payment card companies were *not themselves culpable* in the underlying wrongdoing to warrant liability. *Id.* at 804–05, 810.

And while it is true, as Judge Carney observed, that the underlying substantive offense here is MindGeek's alleged receipt of financial benefits from an unlawful trafficking venture, MTD Order 22 n.13, Plaintiff's principal theory against Visa is one of *conspiracy*. If a payment company could be charged with conspiring with every merchant for whom it processes payments—and therefore held liable for all acts "committed in furtherance of the conspiracy," *Pinkerton*, 328 U.S. at 646—then there is effectively no limit on the secondary liability that such a company faces. The inevitable outcome of a rule that imposes liability on Visa "merely for knowing that the wrongdoers were using its services and failing to stop them" (*Twitter*, 598 U.S. at 503) is a flood of litigation against Visa—and all other financial technology companies—for continuing to process financial transactions in certain sectors of commercial activity that are lawful and yet will foreseeably and inexorably involve some bad actors. Secondary liability cannot become synonymous with passive nonfeasance, particularly when doing so would deter

investment and expansion of digital commerce. *UMG Recordings, Inc. v. Shelter Cap. Partners, LLC*, 718 F.3d 1006, 1031 n.20 (9th Cir. 2013).

Indeed, an anomaly of this case is that Congress in Section 230 of the Communications Decency Act ("CDA") sought to provide broad immunity to interactive computer services providers from being held liable for content posted by others using their software or services. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099–100 (9th Cir. 2009); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122–23 (9th Cir. 2003). Congress declared its policy

> (1) to promote the continued development of the Internet and other interactive computer services and other interactive media [and] (2) to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation.

47 U.S.C. § 230(b)(1)–(2).[6]

Visa is many steps removed from the unlawful content and the websites and platforms that enjoy broad immunity under Section 230. Visa does not host, promote, or distribute content. It does not even contract directly with the platforms that do those things (and that may use its services). It simply provides general-use payment processing services to a wide range of businesses. To expose Visa to secondary liability—even while some primary violators may enjoy immunity under Section 230—for such conduct would, as the Ninth Circuit has recognized, lead to an "anomalous result." *Perfect 10*, 494 F.3d at 795 n.4; *see also UMG Recordings*, 718 F.3d at 1031 n.20 ("We remain concerned about the possibility of imposing secondary liability on tangentially involved parties, like Visa and the Investor Defendants, while those accused of direct infringement receive safe

---

[6] The Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L. No. 115-164, 132 Stat. 1253, amended the CDA to exclude from Section 230 immunity defendants who are alleged to have violated 18 U.S.C. § 1591. Additionally, the Seventh Circuit has held that at least some conduct that violates the TVPRA does not fall within Section 230 immunity. *See G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 565–68 (7th Cir. 2023).

harbor protection."). Extending liability to cover Plaintiff's claims against Visa would "run roughshod over the typical limits on tort liability" (*Twitter,* 598 U.S. at 503) and disrupt the market for electronic and digital commerce that Congress repeatedly has sought to protect. *See Twitter*, 598 U.S. at 503.

## V.    The SAC Should Be Dismissed With Prejudice As To Visa

Each claim against Visa should be dismissed with prejudice because the pleadings "could not possibly be cured by the allegation of other facts." *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (affirming dismissal of appeal where amendment could not cure defect in pleadings); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (affirming dismissal with prejudice where amendment would be futile). There are dispositive legal impediments to Plaintiff's claims against Visa, which could not be cured with yet another amendment. Accordingly, the SAC should be dismissed with prejudice as to Visa.

### CONCLUSION

Visa condemns the conduct that Plaintiff alleges, but Visa is not the proper defendant to answer for that conduct. Plaintiff asks this Court to extend secondary liability well beyond long-recognized boundaries that prevent general services provider like Visa from being held liable for the wrongful conduct of bad actors who use its services for unlawful ends. There is no precedent in the law holding a payment processor liable under such a theory. This case should not be the first. For these reasons, the Court should dismiss all claims—Counts II, IV, XIV, and XVII—asserted against Visa, with prejudice.

Dated:  August 30, 2024             RESPECTFULLY SUBMITTED,

                                    */s/ Drew Tulumello*
                                    DREW TULUMELLO (#196484)
                                    drew.tulumello@weil.com
                                    MARK A. PERRY (#212532)
                                    mark.perry@weil.com

WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: 202 682 7000
Fax: 202 857 0940
*Attorney for Defendant Visa Inc.*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Visa, certifies that this brief is within the forty (40) page limit set by Court Order, ECF No. 424, Aug. 2, 2024.

Dated:  August 30, 2024              */s/ Drew Tulumello*

                                     DREW TULUMELLO