DAN MARMALEFSKY
(CA SBN 95477)
DMarmalefsky@mofo.com
Morrison & Foerster LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: 213-892-5200
Facsimile: 213-892-5454

RONALD G. WHITE
(admitted pro hac vice)
RWhite@wmhwlaw.com
Walden Macht Haran & Williams LLP
250 Vesey Street
New York, NY 10281
Telephone: 212-335-2387
Facsimile: 212-335-2040

Attorneys for Defendant Bernd Bergmair

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENA FLEITES,<br><br>        Plaintiff,<br><br>vs.<br><br>MINDGEEK S.A.R.L., et al.,<br><br>        Defendants. | Case No.: 2:21-cv-4920-WLH-ADS<br><br>**DEFENDANT BERND BERGMAIR'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION [FRCP 12(B)(2)] AND FOR FAILURE TO STATE A CLAIM [FRCP 12(B)(6)]; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: November 22, 2024<br>Time: 1:30 p.m.<br>Courtroom: 9B<br>Judge: Hon. Wesley L. Hsu<br>Complaint Filed: June 17, 2021<br>Trial Date: None Set |

## <u>NOTICE OF MOTION AND MOTION</u>

### **TO PLAINTIFF AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on November 22, 2024 at 1:30 pm, or as soon thereafter as the matter may be heard, before the Honorable Wesley L. Hsu, in Courtroom 9B of the First Street Courthouse, located at 350 W. 1st Street, Los Angeles, California 90012, Defendant Bernd Bergmair will and does hereby move to dismiss the Second Amended Complaint filed by Serena Fleites in its entirety.

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(2), on the grounds that the Court lacks personal jurisdiction over Defendant Bergmair, and Rules 12(b)(6) and 9(b), on the grounds that the Second Amended Complaint fails to state a claim against him upon which relief may be granted.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities in support thereof; the Motions and Memoranda of Points and Authorities in support thereof of the other Defendants in this action; the pleadings and other records in the Court's file; and such other written and oral argument as may be presented to the Court.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on August 22, 2024.

Dated: August 30, 2024

By: */s/ Ronald G. White*
RONALD G. WHITE
(admitted *pro hac vice*)
rwhite@wmhwlaw.com
Walden Macht Haran & Williams LLP
250 Vesey Street
New York, NY  10281
Tel: (212) 335-2387
Fax: (212) 335-2040

DAN MARMALEFSKY (CA SBN 95477)
DMarmalefsky@mofo.com
Morrison & Foerster LLP

707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: 213-892-5200
Facsimile: 213-892-5454

Attorneys for Defendant Bernd
Bergmair

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Pages**

NOTICE OF MOTION AND MOTION.................................................................i

INTRODUCTION ............................................................................................ 1

FACTUAL BACKGROUND.............................................................................. 3

ARGUMENT.................................................................................................... 9

I.    Plaintiff has not established personal jurisdiction over Bergmair. ................. 9

    A.    The SAC does not establish any purposeful direction of Bergmair's activities toward California.............................................. 11

        1.    The SAC does not allege any intentional act by Bergmair. ..... 11

            a.    The SAC does not plead facts establishing that Bergmair was the guiding spirit or a direct participant in the alleged tortious conduct. ................... 13

            b.    The SAC does not plead facts establishing that MindGeek is an alter ego of Bergmair........................... 17

                i.    The SAC's allegations fail to establish the "injustice" element of the alter ego test. .............. 17

                ii.    The SAC cannot establish the "unity of interest" element of the alter ego test. ............................... 20

                iii.    The SAC's remaining alter ego allegations are insufficient. ......................................................... 25

        2.    The SAC does not allege any act by Bergmair expressly aimed at this forum. ................................................................. 30

        3.    Bergmair did not cause harm that he knew would be suffered in this forum........................................................... 31

    B.    Bergmair did not engage in forum-related activities, much less any related to Plaintiff's claims. .............................................. 31

    C.    The exercise of jurisdiction over Bergmair would not be reasonable............................................................................. 32

II.    Plaintiff has failed to state a claim against Bergmair.................................. 34

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

A.    Section 230 bars all of Plaintiff's claims against Bergmair. .............35

B.    The SAC's generalized allegations fail to state a claim. ....................35

C.    The SAC fails to properly allege a valid claim on specific counts. .......................................................................................38

    1.    The federal trafficking claims (Counts I and IV) fail to state a claim. ................................................................38

    2.    The federal child pornography claims (Counts V and VI) fail to state a claim. ................................................................39

CONCLUSION .......................................................................................40

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Pages**

## Cases

*AMA Multimedia LLC v. Wanat,*
    970 F.3d 1201 (9th Cir. 2020).........................................................10, 11, 30

*Amoco Egypt Oil Co. v. Leonis Navigation Co.,*
    1 F.3d 848 (9th Cir. 1993)..............................................................................33

*Ariix, LLC v. NutriSearch Corp.,*
    2022 WL 837072 (S.D. Cal. Mar. 21, 2022)...............................................31

*Asahi Metal Indus. Co. v. Superior Ct.,*
    480 U.S. 102 (1987) ......................................................................................33

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...............................................................................35, 38

*Balistreri v. Pacifica Police Dep't.,*
    901 F.2d 696 (9th Cir. 1988)........................................................................35

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,*
    223 F.3d 1082 (9th Cir. 2000)................................................................10, 30

*Baton v. Ledger, SAS,*
    2021 WL 5226315 (N.D. Cal. Nov. 9, 2021).............................................31

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ...............................................................................35, 36

*Boobuli's LLC v. State Farm General Ins. Co.,*
    2024 WL 269147 (N.D. Cal. Jan. 24, 2024) ...............................................19

*Brown v. General Steel Domestic Sales, LLC,*
    2008 WL 2128057 (C.D. Cal. May 19, 2008) ...........................................16

*Calder v. Jones,*
    465 U.S. 783 (1984). ...............................................................................1, 10

*Callaway Golf Corp. v. Royal Canadian Golf Ass'n,*
    125 F. Supp. 2d 1194 (C.D. Cal. 2000)......................................................33

*Calvert v. Huckins*,
    875 F. Supp. 674 (E.D. Cal. 1995) ...................................................17, 20, 24

*Chem Lab Products, Inc. v. Stepanek*,
    554 F.2d 371 (9th Cir. 1977) ...........................................................................9

*Cisco Systems, Inc. v. Link US LLC*,
    2019 WL 6682838 (N.D. Cal. Dec. 6, 2019) ...............................................16

*Coastal Abstract Service, Inc. v. First American Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999) .........................................................................36

*Cook v. Champion Shipping AS*,
    732 F. Supp. 2d 1029 (E.D. Cal. 2010) ........................................................34

*Core-Vent Corp. v. Nobel Industries AB*,
    11 F.3d 1482 (9th Cir. 1993) .............................................................31, 33, 34

*Davis v. Metro Prods., Inc.*,
    885 F.2d 515 n.10 (9th Cir. 1989) .................................................................13

*Doe v. American Red Cross*,
    112 F.3d 1048 (9th Cir. 1997) .......................................................................32

*Doe v. Apple, Inc.*,
    2021 WL 5774224 (D.D.C. Nov. 2, 2021) ....................................................38

*Doe v. Red Roof Inns, Inc.*
    21 F.4th 714 (11th Cir. 2021) ........................................................................39

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) .............................................................21, 23, 24,

*Doe v. WebGroup Czech Republic, a.s.*,
    2024 WL 3533426 (C.D. Cal. July 24, 2024) ...............................................38

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003) .......................................................................................17

*Dole Food Co., Inc. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002).................................................................33, 34

*Dynascan Tech., Inc. v. Plasmedia Productions, Inc.*,
    2010 WL 11520614 (C.D. Cal. Jan. 21, 2010) .............................................13

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016)......................................................................36

*Fagbohungbe v. Caltrans*,
    2014 WL 644008 (N.D. Cal. Feb. 19, 2014)..............................................36

*Fagusbe v. Willms*,
    2011 WL 3667440 (C.D. Cal. Aug. 22, 2011) ...........................................16

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021) ...............................................................................10

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
    905 F.3d 597 (9th Cir. 2018)......................................................................34

*Fru-Con Construction Corp. v. Sacramento Municipal Utility District*,
    2007 WL 2384841 (E.D. Cal. Aug. 17, 2007) ......................................19, 24

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ...................................................................................10

*Green v. Hepta Run, Inc.*,
    2020 WL 1638273 (C.D. Cal. April 2, 2020) ............................................15

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003).....................................................................9

*Hoffman v. Michael A. Rolf C.P.A. & Co.*,
    2019 WL 2451007 (N.D. Cal. June 12, 2019) ...........................................12

*Hubbard v. Phil's BBQ of Point Loma, Inc.*,
    609 Fed. App'x. 478 (9th Cir. 2015)...........................................................26

*Iconlab, Inc. v. Bausch Health Cos., Inc.*,
    828 F. App'x 363 (9th Cir. 2020).................................................17, 21, 23

*Igbonwa v. Facebook, Inc.*,
    2018 WL 4907632 (N.D. Cal. Oct. 9, 2018), ............................................35

*In re Boon Global Ltd.*,
    923 F.3d 643 (9th Cir. 2019).......................................................9, 10, 13, 21

*In re JUUL Labs, Inc. Marketing, Sales Practices and Products Liability Litigation*,
    497 F. Supp. 3d 552 (N.D. Cal. 2020) .......................................................37

*In re Western States Wholesale Natural Gas Antitrust Litigation*,
    715 F.3d 716 (9th Cir. 2013)........................................................31

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ..................................................................10

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770  (1984) .................................................................14

*Kramer Motors, Inc. v. British Leyland, Ltd.*,
    628 F.2d 1175 (9th Cir. 1980)..............................................21, 24

*Langley v. Guiding Hands School, Inc.*,
    2021 WL 978950 (E.D. Cal. Mar. 16, 2021) ...............................17

*Loomer v. Zuckerberg*,
    2023 WL 6464133 (N.D. Cal. Sept. 30, 2023) ...........................35

*Lynch v. Matterport, Inc.*,
    2023 WL 1420723 (N.D. Cal. Jan. 31, 2023) ..............................37

*M.O. Dion and Sons, Inc. v. VP Racing Fuels, Inc.*,
    2019 WL 4750116 (C.D. Cal. Sept. 27, 2019).............................16

*Mireskandari v. Daily Mail and General Trust PLC*,
    2013 WL 12114760 (C.D. Cal. July 31, 2013) .......................20, 24

*Moise v. The Boeing Co.*,
    ___ WL ____, 2:24-cv-03942 (C.D. Cal. July 31, 2024), ECF No. 41 ..........9

*NuCal Foods, Inc. v. Quality Egg, LLC*,
    887 F. Supp. 2d 977 (E.D. Cal. 2012)........................................19

*O'Connor v. Uber Technologies, Inc.*,
    2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) ...............................37

*Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*,
    757 F.2d 1058 (9th Cir. 1985)..............................................33, 34

*Panavision International, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998)....................................................34

*Pebble Beach Co. v. Caddy*,
    453 F. 3d 1151 (9th Cir. 2006)...................................................30

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Perez v. United States,*
    2014 WL 4385473 (S.D. Cal. Sept 3, 2014) ........................................... 12, 15

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) ...................................................................... 11

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ............................................................... passim

*Reflex Media, Inc. v. Luxy Ltd.*,
    2021 WL 945248 (C.D. Cal. Feb. 5, 2021) ................................................... 34

*Rocke v. Canadian Auto. Sport Club*,
    660 F.2d 395 (9th Cir. 1981) .................................................................. 33, 34

*S.J. v. Choice Hotels Int'l, Inc.*,
    473 F. Supp. 3d 147 (E.D.N.Y. 2020) ......................................................... 39

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) .................................................................. 10, 11

*Scott v. Breeland*,
    792 F.2d 925 (9th Cir. 1986) ......................................................................... 9

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
    119 F. Supp. 3d 1213 (C.D. Cal. 2015) ....................................................... 36

*ScoreBlue, LLC v. Locum Tele PC*,
    2024 WL 3304515 (C.D. Cal. May 29, 2024) ......................................... 30, 36

*Securities and Exchange Comm'n v. Jammin Java Corp.*
    2016 WL 6595133 (C.D. Cal. July 18, 2016) ......................................... 13, 15

*Shimmick Constr. Co. v. Officine Meccaniche Galetti-O.M.G.S.R.L.*,
    2014 WL 5847440 (S.D. Cal. Nov. 12, 2014) .............................................. 19

*Stewart v. Screen Gems-EMI Music, Inc.*,
    81 F. Supp. 3d 938 (N.D. Cal. 2015) ........................................................... 19

*Sun Group U.S.A. Harmony City, Inc. v. CCRC Corp. Ltd.*,
    2024 WL 2193311 (N.D. Cal. May 14, 2024) .............................................. 24

*Tatung Co., Ltd. v. Shu Tze Hsu*,
    217 F.Supp.3d 1138 (C.D. Cal. 2016) .......................................................... 21

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ...................................................................... 23

*United States v. X-Citement Video, Inc.*,
    513 U.S. 64 (1994) ...................................................................... 39

*Wady v. Provident Life & Accident Ins. Co.*,
    216 F. Supp. 2d 1060 (C.D. Cal. 2002)...................................... 20

*Whitney v. Wurz*,
    2007 WL 1593221 (N.D. Cal. June 1, 2007) ............................. 21

*Wolf Designs, Inc. v. DHR Co.*,
    322 F. Supp. 2d 1065 (C.D. Cal. 2004)...................................... 13

**<u>Statutes</u>**

47 U.S.C. § 230(c) ................................................................................ 35

8 U.S.C. § 2258A(f)(3) ..................................................................... 3, 12

Cal. Civ. Proc. Code § 410.10 ............................................................. 10

Cal. Corp. Code § 300(b)...................................................................... 26

Model Business Corporations Act §7.32.............................................. 26

**<u>Rules</u>**

Fed. R. Civ. P. 4(k)(1)(A)...................................................................... 10

**<u>Other Authorities</u>**

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
    § 1202 (3d ed. 2004)................................................................... 36

Fletcher, *Cyclopedia of Corporations* § 5332 ................................... 26

# INTRODUCTION[1]

Defendant Bernd Bergmair is a resident of China.  He does not live or work in or have any connection to California or the United States.  Bergmair is alleged, at most, to have been an indirect shareholder, with no management position, of a corporation that Plaintiff claims injured her.  Despite its 594 paragraphs, the Second Amended Complaint ("SAC") does not describe a single concrete act by Bergmair in furtherance of any of the tortious conduct Plaintiff alleges, much less any directed at California.  The SAC does not allege that Bergmair had any contact with Plaintiff, or even knew of her existence, much less knew in what state she resided.  Despite these undisputed facts, Plaintiff claims that she can require Bergmair to defend this case in a forum halfway around the world from his home.  Plaintiff undertook a full year of scorched-earth jurisdictional discovery – demanding over 100,000 pages of corporate and personal records and emails, taking Bergmair's deposition and seven others, propounding multiple rounds of interrogatories and requests for admission, serving third-party subpoenas and issuing letters rogatory to multiple foreign countries.  But as the SAC demonstrates, Plaintiff came up empty with respect to Bergmair.   The SAC's main allegation against Bergmair is that he adopted MindGeek's supposed "unrestricted content" business model, but this is plainly deficient for several reasons.  To begin with, the SAC alleges that MindGeek already had such a business model prior to his investment in the company, so its essential allegation with respect to Bergmair is that he did nothing at all.  A corporate shareholder in China doing nothing is not an "intentional act" under *Calder v. Jones*[2] and cannot establish personal jurisdiction in California.  In addition, the alleged conduct – "adopting" a pre-existing business model and policies for MindGeek's websites worldwide – is the exact opposite of the type of conduct "expressly aimed" at California that is required for personal jurisdiction.  Moreover, such conclusory

---

[1] Pursuant to the stipulated Court Order, the page limit for this brief is 40 pages. ECF No. 424.

[2] 465 U.S. 783 (1984).

a

1  allegations cannot satisfy due process requirements for jurisdiction over Bergmair.

2       Unable to establish personal jurisdiction over Bergmair directly, Plaintiff
3  resorts to an alter ego theory. But the SAC does not even attempt to link Bergmair
4  to the specific corporate entities whose contacts she seeks to impute to him, instead
5  glossing over this deficiency by lumping them all together as "MindGeek."  In any
6  event, Plaintiff cannot satisfy either prong of the alter ego test.  First, the SAC's
7  glaring flaw is that it lacks any allegation that MindGeek is insolvent or unable to
8  pay a judgment. ███████████████████████████████████████████
9  ███████████████████████████████████████  This failure
10  alone is fatal to Plaintiff's claim.  There is no injustice to Plaintiff and no basis to
11  pierce the corporate veil to require a shareholder like Bergmair to stay in the case
12  when MindGeek can pay any judgment Plaintiff could obtain.  Second, to satisfy the
13  unity of interest prong of the alter ego test, Plaintiff must show that Bergmair
14  personally dictated every facet of MindGeek's business, right down to its daily
15  operations.  But the SAC concedes that MindGeek's senior management – not
16  Bergmair – handled the company's day-to-day operations. ████████████
17  ████████████████████████████████████████████████
18  ████████████████████████████████████████████████
19  ████████████████████████████████████████████████
20  ████████████████████████████████████████████████
21  ████████████████████████████████████████████████
22  ████████████████████████████████████  Plaintiff cannot
23  establish personal jurisdiction over Bergmair under any theory and the Court should
24  therefore grant this motion to dismiss with prejudice.

25       Plaintiff's claims fail on the merits as well.  First, even if any claim had been
26  adequately pleaded – and not a single one is – all of the claims against Bergmair are
27  barred by Section 230 of the Communications Decency Act.  Moreover, the SAC's
28  allegations that Bergmair adopted MindGeek's "unrestricted content" business

model – by doing nothing to change the business model that pre-dated his investment – do not establish the required elements of any of the SAC's 14 separate claims against him. The SAC's basic allegation with respect to Bergmair is that he failed to cause MindGeek to implement content moderation procedures to review users' postings for underage content. But the SAC seems not to recognize that, under federal law, a website has *no affirmative duty* to screen for underage content. 18 U.S.C. § 2258A(f)(3). And an individual who is merely an investor in a company, one of whose subsidiaries operates a website certainly has no such obligation. The SAC does not address how failing to do something the law does not require in the first place could be the basis of claims like hers. As a result, the Court should dismiss the SAC with prejudice for failure to state a claim against Bergmair.

## **FACTUAL BACKGROUND**

Plaintiff Serena Fleites alleges that when she was a minor, at the urging of two different boyfriends, she voluntarily made sexually explicit videos that third parties later posted on websites operated by one or more of the MindGeek group of entities (collectively, "MindGeek"). SAC ¶¶ 448, 457-58. Setting aside the SAC's dozens of pages of sensational accusations that have nothing whatsoever to do with Plaintiff's claims, the gist of her allegations is that MindGeek did not employ effective content "moderation," *i.e.*, monitoring of content uploaded by third-party users to screen for violations of its published terms of service. SAC ¶¶ 2, 57-58, 67-68, 73. The SAC alleges that Bergmair, who resides in Hong Kong, China, was merely a shareholder in MindGeek and held no management position. SAC ¶ 17.

The Court previously granted Plaintiff the opportunity to take jurisdictional discovery with respect to two issues: whether the Individual Defendants "directed or implemented" specific MindGeek policies or practices "which were applied to Plaintiff and her videos;" and whether Plaintiff had a "workable alter ego theory" under which she could impute the contacts of the MindGeek entity defendants to any of the Individual Defendants for personal jurisdiction purposes. July 29, 2022 Order

(ECF No. 167) at 5-6.  Thereafter, Plaintiff undertook a full year of extensive discovery.  With respect to the first issue, despite her receipt of substantial emails and internal corporate documents regarding MindGeek's content moderation policies, Plaintiff fails to allege even one specific instance of Bergmair setting or deciding the policies that Plaintiff alleges harmed her.  Instead, her SAC simply repeats, in various conclusory formulations, that Bergmair, along with the other shareholders, "adopted" and "maintain[ed]" MindGeek's "business model" (SAC ¶¶ 2, 108, 109, 111, 150, 151, 155) and approved its corporate practices, but without specifying any practices other than MindGeek's alleged "unrestricted content" model (SAC ¶¶ 17, 109, 149-50, 157, 387).  The SAC alleges that MindGeek had in place an "unrestricted content" model prior to his 2013 investment (SAC ¶¶ 109, 150, 151), so the gist of her allegation against Bergmair is that he failed to change that alleged pre-existing business model.

With respect to Plaintiff's alter ego theory, discovery confirmed that Bergmair had little involvement in MindGeek's operations.  Indeed, the SAC acknowledges that MindGeek's CEO and COO "handl[ed] the direct day-to-day implementation" of MindGeek's operations.  SAC ¶ 109.  Even after extensive discovery, the SAC alleges that Bergmair's involvement in company operations consisted of just a handful of actions over a ten-year period (in addition to its boilerplate repetition that he approved unspecified corporate policies):

Bergmair's declaration submitted in support of this motion ("Bergmair Declaration") and the evidence developed in jurisdictional discovery confirmed



and was not involved in running the company.  Bergmair testified

Bergmair explained

Bergmair testified

The evidence regarding the 2013 management buyout ("MBO") through which Bergmair invested in MindGeek confirmed this.  At the time of the MBO,

[3]

[4]

[5] Antoon and Tassillo's continued management of MindGeek was considered so central to the future success of the company that

1

2

3

4

5

6       In addition, from shortly after the 2013 MBO through mid-2021, Antoon and

7  Tassillo

8

9                        Testimony from Antoon and Tassillo

10

11                        In February 2021, Antoon testified before a Canadian

12  parliamentary committee that Bergmair was "a passive investor" in MindGeek who

13  was "not involved in daily activities" of the company.  *See* White Decl. Ex. K at 11.

14  In his deposition, Antoon testified

15

16

17

18

19

20

21

22

23

24

25

26

27  _____
    [6] Antoon testified

28

1

2

3 Consistent with his deposition and parliamentary testimony, when

4 Antoon was asked by Plaintiff

5

6

7

8

9

10 The SAC alleges that MindGeek had a "sham" corporate structure

11

12

13

14

15

16

17

18

19

20

21 Consistent with this, Bergmair

22 testified

23 However,

24 Plaintiff twists this testimony by alleging in the SAC

25 [7] In response to an identical request for admission, Tassillo

26

27

28



Since Bergmair, a Hong Kong resident

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT



The entire premise of the SAC's alter ego allegations is that

Bergmair similarly testified

### ARGUMENT[9]

**I.     Plaintiff has not established personal jurisdiction over Bergmair.**

The SAC fails to establish personal jurisdiction in this district over Bergmair. Plaintiff bears the burden to establish personal jurisdiction over each defendant. *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd*., 328 F.3d 1122, 1128–29 (9th Cir. 2003); *Moise v. The Boeing Co.*, ___ WL ____, 2:24-cv-03942-WLH-AGR (C.D. Cal. July 31, 2024), ECF No. 41 at 3.  To do so, a plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citation omitted). The "mere allegations of a complaint, when contradicted by affidavits, are not enough to confer personal jurisdiction over a non-resident defendant."  *Chem Lab Products, Inc. v. Stepanek*, 554 F.2d 371, 372 (9th Cir. 1977) ("Facts, not mere allegations, must be the touchstone").  Although a plaintiff is required only to establish a prima facie showing of jurisdictional facts, "the standard is not toothless."

[8]

[9] In addition to the arguments set forth here, Bergmair joins in the motions submitted by all other defendants, as applicable.

*In re Boon Global Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019).

Where, as here, there is no applicable federal statute governing personal jurisdiction, the court must apply the law of the forum state. *See* Fed. R. Civ. P. 4(k)(1)(A); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Since California's long-arm statute allows courts to exercise jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution (Cal. Civ. Proc. Code § 410.10), jurisdiction over a nonresident defendant may be exercised only if he has "minimum contacts" with California, such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). No such contacts exist here.

The Ninth Circuit employs a three-part test to determine whether there is specific jurisdiction over a nonresident defendant, allowing it only where (1) the defendant has purposefully directed his activities toward the forum; (2) the claim arises out of or results from the defendant's forum-related activities; *and* (3) the exercise of jurisdiction is reasonable.[10] *AMA Multimedia LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020). Moreover, as the Supreme Court has mandated, "each party's contacts with the forum state must be assessed individually." *In re Boon Global*, 923 F.3d at 651 (quoting *Calder*, 465 U.S. at 790). Plaintiff cannot establish any of the three required elements for specific jurisdiction over Bergmair.

---

[10] There is no serious argument that Bergmair is subject to general jurisdiction in this district. General jurisdiction requires that a party's contacts with the forum are "substantial or continuous and systematic" so as to "approximate physical presence" in the state. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). The SAC confirms that Bergmair resides in China (SAC ¶ 17) and alleges no contacts with California, much less the "continuous and systematic" contacts needed to establish general jurisdiction over him.

**A.      The SAC does not establish any purposeful direction of Bergmair's activities toward California.**

To determine if a defendant purposefully directed his activities at the forum state, the Ninth Circuit applies the three-part *Calder* effects test, which requires that the defendant (1) committed an intentional act (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015).  The SAC fails to establish any of these elements with respect to Bergmair.

**1.      The SAC does not allege any intentional act by Bergmair.**

Under *Calder*, plaintiffs must first identify "an intentional act" taken by the defendant that gives rise to the action.  *Id.* at 1214.  The Ninth Circuit has defined an "intentional act" as "an external manifestation of the actor's intent to perform an actual, physical act in the real world." *Schwarzenegger*, 374 F.3d at 806.  *See AMA Multimedia,* 970 F.3d at 1209.  Here, despite extensive discovery and the fact that Plaintiff is now on her third bite at the apple, the SAC still does not specify a single affirmative physical act taken by Bergmair in connection with the MindGeek conduct it alleges harmed Plaintiff.  Instead, the SAC simply repeats, in various formulations, that Bergmair, along with the other shareholders, adopted "an unrestricted content model" for MindGeek.[11]  SAC ¶¶ 2, 17, 108-09, 111-12, 149-

---

[11] The SAC also contains a host of allegations that Bergmair, along with the other Individual Defendants, took certain actions that have nothing to do with Plaintiff's claims about how MindGeek handled the videos featuring her.  These allegations, which mostly relate to MindGeek's responses to media stories that did not involve Plaintiff and that were published years after her videos first supposedly appeared on MindGeek sites, are irrelevant.  These allegations also constitute impermissible "group pleading" – describing a MindGeek corporate action and then appending a boilerplate allegation that it was directed by all the Individual Defendants, or by defendants Antoon and Tassillo "in consultation" with Bergmair.  SAC ¶¶ 110, 136, 200, 201, 202, 205, 207, 214, 236.  Judge Carney previously highlighted this same fatal flaw in Plaintiff's First Amended Complaint.  ECF No. 168 (July 29, 2022 Order) at 2 (noting Plaintiff's "scattershot, group pleading," which "fail[s] to identify the MindGeek Defendants' *individual* roles in causing her harm") (emphasis

52, 155, 157.  But despite Plaintiff's attempt to dress up her claims with the term "unrestricted content model," the SAC's allegations are that Bergmair *did nothing* to cause MindGeek to screen for underage content on its websites.  Indeed, the gist of the SAC is that MindGeek failed to put in place effective technological and human moderation (*see, e.g.*, SAC ¶¶ 105, 108, 149) and it faults Bergmair for being aware of the general risk of underage content but failing to take any action (*see, e.g.*, SAC ¶¶ 108, 111, 112, 152).  But doing nothing is not an "intentional act" under *Calder*. Failing to take action is not "an actual, physical act in the real world."  This is especially true with respect to Bergmair, since the SAC alleges that MindGeek was *already* doing nothing with respect to content moderation at the time of his 2013 investment.  SAC ¶¶ 109, 150, 151.  Further undercutting Plaintiff's claim, there was *no obligation at all* for MindGeek to screen content posted to its websites for underage content.  *See* 18 U.S.C. § 2258A(f)(3) (website provider has no duty to "affirmatively search, screen, or scan for" underage content).  And certainly an individual who was merely an indirect shareholder of a company whose subsidiary is a website provider has no such duty.  Such omissions or failures to act do not satisfy *Calder's* intentional act requirement.  *See Perez v. United States,* 2014 WL 4385473 at *8, (S.D. Cal. Sept 3, 2014) (government officials' "omissions," including failure to "prevent or correct the use" of the policy that allegedly harmed plaintiff were not intentional acts under *Calder*); *Hoffman v. Michael A. Rolf C.P.A. & Co.*, 2019 WL 2451007 at *3 (N.D. Cal. June 12, 2019) (defendant's failures to act, even if they harmed plaintiff, do not constitute intentional acts under *Calder*).[12]

---

in original).  Judge Carney ruled that jurisdictional discovery was meant to provide Plaintiff with facts "regarding the role and conduct of each MindGeek defendant *separately*," and urged Plaintiff to dismiss a defendant if "discovery does not yield the information she needs to clearly define a defendant's conduct as it relates to her harm."  *Id*. (emphasis in original).  Plaintiff ignored the Court's admonition.

[12] *See also Jenkins v. Miller*, 983 F. Supp. 2d 423, 448-49 (D. Vt. 2013) (a "failure to act" such as failing to notify authorities of potential parental kidnapping "does not

Moreover, even if doing nothing were considered an "intentional act" under *Calder*, the SAC's allegations that Bergmair allowed MindGeek's pre-existing "unrestricted content" model to continue after he invested are insufficient to confer personal jurisdiction over him. Courts in the Ninth Circuit have found personal jurisdiction over an individual based on conduct undertaken in their corporate capacity *only* where: (1) the individual exercised control and directly participated in the conduct forming the basis for the plaintiff's claims; or (2) the corporation is the agent or alter ego of the individual defendant. *See Dynascan Tech., Inc. v. Plasmedia Productions, Inc.*, 2010 WL 11520614, at *2 (C.D. Cal. Jan. 21, 2010); *Securities and Exchange Comm'n v. Jammin Java Corp.*, 2016 WL 6595133, at *9 (C.D. Cal. July 18, 2016); *Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004). Plaintiff cannot satisfy either of these elements.

### a. The SAC does not plead facts establishing that Bergmair was the guiding spirit or a direct participant in the alleged tortious conduct.

To satisfy the first element, a plaintiff must demonstrate that the individual defendant was the "guiding spirit" or "central figure" in the challenged corporate conduct. *In re Boon Global*, 923 F.3d at 651; *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 523 n.10 (9th Cir. 1989) (citation omitted). Here, despite extensive jurisdictional discovery, the SAC fails to allege facts establishing that Bergmair directly participated – much less was the "guiding spirit" or "central figure" – in the conduct underlying Plaintiff's claims.

The Court allowed Plaintiff to take jurisdictional discovery with respect to whether each Individual Defendant "directed or implemented" specific MindGeek policies or practices "which were applied to Plaintiff and her videos." July 29, 2022 Order (ECF No. 167) at 5. Thereafter, Plaintiff undertook a full year of extensive

---

constitute the type of direct, affirmative and overt conduct necessary to supply specific personal jurisdiction" under *Calder*).

discovery.  Specifically, with respect to the MindGeek policies and practices regarding content moderation that allegedly harmed Plaintiff, she sought production of all corporate and personal emails that contained any of thirty-three wildly overbroad search terms, including common terms like "compliance" and "training" without any limitations.  *See* White Decl. Ex. D at 2-3.

In short, the SAC cites no concrete actions by Bergmair directing or implementing MindGeek's content moderation policies because discovery produced no evidence that he had such a role.  Indeed, the SAC includes an extensive section critiquing MindGeek's content moderation process, including the supposed weaknesses of its human and technological moderation functions, its processes for dealing with removal requests and content flagged as inappropriate by users, and a host of other practices Plaintiff faults.  SAC ¶¶ 67-104.  But nowhere in those thirty-eight paragraphs is Bergmair even mentioned, much less shown to have directed or implemented those policies.

Having come up empty in jurisdictional discovery, the SAC instead relies on generic allegations that fail to demonstrate that Bergmair was the "guiding spirit" or "central figure" in the challenged corporate conduct.  To begin with, the SAC's allegations that Bergmair controlled MindGeek as a result of his alleged majority economic interest (SAC ¶¶ 2, 17, 150, 157) are plainly insufficient to establish personal jurisdiction.  If such allegations were sufficient, every majority shareholder of a corporation would be subject to personal jurisdiction in any venue where the company could be sued.[14]  Second, the SAC alleges that he "adopted" and

---

[13]

[14] *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("it does not of course follow from the fact that jurisdiction may be asserted over [the corporation]

"maintain[ed]" MindGeek's "business model" by failing to change MindGeek's pre-existing practices (SAC ¶¶ 2, 108, 109, 111, 150, 151, 155) and uses a thesaurus full of synonyms to allege that he approved corporate practices but without specifying which practices, other than MindGeek's alleged pre-existing "unrestricted content" model.  SAC ¶¶ 17 ("aware of, endorsing, and approving"); 109 (had "final say"); 149 ("controlled, set and implemented"); 150 ("dictated and approved"); 157 ("ultimate decision-maker"); 387 ("made the business' … decisions").  Conclusory allegations that an individual defendant directed or supervised the conduct giving rise to the plaintiff's claim are insufficient to establish personal jurisdiction, particularly here, where the gist of the SAC's allegations is that Bergmair simply did nothing to change MindGeek's pre-existing practices after he invested.[15]  Instead, concrete factual allegations establishing that the individual defendant's direct participation made him the "guiding spirit" in the alleged wrongdoing are required.

For example, in *Green v. Hepta Run, Inc.*, 2020 WL 1638273 (C.D. Cal. April 2, 2020), the plaintiff sued his employer and its CEO/owner asserting wage and hour claims.  The plaintiff alleged that the owner had "approved" and "set in motion" the corporate "business model" leading to the alleged employment law violations in the case.  *Id*. at *2.  The court held that allegations "regarding [the owner's] role in creating [the company] and approving its business model are insufficient to allow

---

that jurisdiction may also be asserted over [its owner]"); *Jammin Java Corp.*, 2016 WL 6595133 at *9 and *11 (court lacked personal jurisdiction over individual defendants since complaint's "conclusory allegation that the owner['s] actions are coexistent with that of the owned . . . entity is insufficient").

[15] For example, in *Perez*, 2014 WL 4385473, the survivors of an individual who had allegedly been the victim of a government use-of-force policy known as the "Rocking Policy" sued the federal government as well as individual supervisory Border Patrol officials.  *Id*. at *1-3.  Plaintiffs alleged that each of the supervisory officials was responsible for "implementing and approving" the Rocking Policy and for "*knowing about the Rocking Policy but failing to put a stop to it*."  *Id*. at *7 (emphasis added).  The court ruled that these allegations were insufficient to establish personal jurisdiction over the supervisors.  *Id*. at *8.

this Court to exercise specific jurisdiction over him" because they fail the requirement that plaintiff plead *facts* establishing that the owner was the "guiding spirit" behind the alleged wage and hour violations. *Id*. at \*3. In *Fagusbe v. Willms*, 2011 WL 3667440 (C.D. Cal. Aug. 22, 2011), the plaintiff sued two corporations and their CEO alleging that the companies had engaged in unfair business practices. The complaint alleged that the court had jurisdiction over the CEO because he made "all final decisions on [the companies'] business practices and policies" and "personally directed" their activities. *Id*. at \*3. The court held that these "conclusory" allegations failed to establish that the CEO was the "guiding spirit" or "central figure" in the challenged corporate conduct. *Id*. at \*3-4. In *Brown v. General Steel Domestic Sales, LLC*, 2008 WL 2128057 (C.D. Cal. May 19, 2008), the plaintiff brought an action against a corporation and its owner asserting various claims arising out of the company's allegedly misleading advertising. The complaint alleged that the individual defendant was a "principal" of the company who "formulates, controls, directs [and] supervises … the practices and policies" of the company but did not allege facts showing that he was "personally responsible for" or had "authorized" the allegedly misleading advertisements. *Id*. at \*9, \*12. The court granted a motion to dismiss, finding that, "[a]t most, these allegations indicate that [the defendant] plays a broad managerial role within the company; they in no way suggest that he was the 'guiding spirit' behind [the company's] advertising." *Id*. at \*11. *See also M.O. Dion and Sons, Inc. v. VP Racing Fuels, Inc.*, 2019 WL 4750116 at \*6-7 (C.D. Cal. Sept. 27, 2019) (where plaintiff alleged that company's majority owner and President provided "strategic[,] financial[,] and operational leadership" for the company, was a "hands-on micromanager" and "all matters of any significance were discussed and reported" to him, such conclusory allegations "failed to demonstrate that [owner] was the 'central figure' in the disputed activities"); *Cisco Systems, Inc. v. Link US LLC*, 2019 WL 6682838 at \*1 and \*4 (N.D. Cal. Dec. 6, 2019) (allegations that corporate president was "intimately

involved in operating" company and "actively involved in [its] day-to-day management and operations" were insufficient; "[i]f general allegations of managerial responsibilities . . . were sufficient to establish specific jurisdiction in this case, specific jurisdiction would extend to a company's officers in virtually every case where it extended to the company itself. That result is inconsistent with Ninth Circuit precedent").

### b.    The SAC does not plead facts establishing that MindGeek is an alter ego of Bergmair.

Plaintiff similarly cannot satisfy the alter ego test to obtain personal jurisdiction over Bergmair based on MindGeek's corporate conduct. The SAC's alter ego allegations are contradicted both by the Bergmair Declaration and the evidence developed in jurisdictional discovery. But even were the Court to accept them as true for purposes of this motion, they are legally insufficient.

To begin with, "a basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). Application of the alter ego doctrine is "recognized as an extreme remedy" and to be employed "only in exceptional circumstances." *Langley v. Guiding Hands School, Inc.*, 2021 WL 978950, at *4 (E.D. Cal. Mar. 16, 2021) (quoting *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995)). To impute a corporation's jurisdictional contacts to an out-of-forum shareholder on an alter ego theory, the plaintiff must establish that (1) there is "such unity of interest" and ownership that the separate personalities of the two parties no longer exist; *and* (2) failure to disregard their separate identities "would result in fraud or injustice." *Iconlab, Inc. v. Bausch Health Cos., Inc.*, 828 F. App'x 363, 364 (9th Cir. 2020) (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015)) (emphasis added).

### i.    The SAC's allegations fail to establish the "injustice" element of the alter ego test.

What is most remarkable about the SAC's alter ego allegations is what they

fail to say. In support of her alter ego claim, one might have expected that Plaintiff would allege that the Individual Defendants took excessive amounts from MindGeek, leaving the company insolvent and frustrating Plaintiff's ability to collect a judgment, resulting in injustice that requires piercing the corporate veil. But the SAC alleges nothing like this at all. ███████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████████████████████ The SAC does *not* allege that MindGeek is undercapitalized; in fact, as the SAC concedes, ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████ The SAC does *not* allege that the Individual Defendants took excessive dividends from MindGeek; ████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████ The SAC does *not* allege that the Individual Defendants otherwise diverted significant funds from MindGeek; ████████████████████████ ███████████████████████████████████████████████ ██████████████████████████████ The SAC catalogues supposed failures to follow corporate form but ignores that the law also requires a showing that she will suffer injustice as a result of such purported failures.

The SAC's most glaring omission is its failure to include any allegations to support the injustice prong of the alter ego test. Plaintiff is unable to extend jurisdiction over Bergmair under an alter ego theory if she can recover any potential judgment against the MindGeek corporate defendants. This is a fatal flaw. For this reason alone – without having to sort through Plaintiff's allegations regarding the

unity of interest element – the Court should grant Bergmair's motion to dismiss. The SAC does not allege that any of the MindGeek corporate defendants, including those over whom jurisdiction is conceded, are insolvent or otherwise unable to satisfy a potential judgment.[16]  Courts have repeatedly rejected similar alter ego claims when the plaintiff failed to establish that the corporate defendant – the supposed alter ego – was insolvent or otherwise unable to satisfy a judgment.  *See e.g., Boobuli's LLC v. State Farm General Ins. Co.*, 2024 WL 269147 at *5 (N.D. Cal. Jan. 24, 2024) (even where unity of interest between parent and subsidiary was shown, plaintiff's failure to show that subsidiary was inadequately capitalized and that injustice would result from proceeding against subsidiary alone required denial of alter ego claim); *Fru-Con Construction Corp. v. Sacramento Municipal Utility District*, 2007 WL 2384841, at *3 (E.D. Cal. Aug. 17, 2007) (where remaining corporate defendant could cover any judgment plaintiff might obtain, "this fact alone is sufficient to negate the imposition of alter ego").  *See also Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 956 (N.D. Cal. 2015) (finding no injustice and dismissing alter ego claim where the remaining defendant corporation had the "financial capacity to fully respond to [plaintiff's] claims"); *Shimmick Constr. Co. v. Officine Meccaniche Galetti-O.M.G.S.R.L.*, 2014 WL 5847440, at *7 (S.D. Cal. Nov. 12, 2014) (dismissing alter ego claim where plaintiff could be "made whole" by remaining corporate defendants); *NuCal Foods, Inc. v. Quality Egg, LLC*, 887 F. Supp. 2d 977, 993-94 (E.D. Cal. 2012) (rejecting alter ego claim where plaintiff failed to show that corporate defendants who conceded jurisdiction were



BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

underfunded or non-operational and would leave plaintiff with an "unenforceable judgment"); *Mireskandari v. Daily Mail and General Trust PLC*, 2013 WL 12114760, at *6 (C.D. Cal. July 31, 2013) (where defendant corporation was "capable of satisfying a judgment," failure to pierce corporate veil to reach parent corporation would not result in injustice); *Wady v. Provident Life & Accident Ins. Co.*, 216 F. Supp. 2d 1060, 1070 (C.D. Cal. 2002) (plaintiff failed to establish injustice will result where remaining corporate defendant "is fully able to respond to any damages award [plaintiff] may recover in this action"); *Calvert*, 875 F. Supp. at 679-80 (where remaining corporate defendant was well-capitalized and dismissal of supposed alter ego owners would have no effect on plaintiff's "likely recovery," injustice prong not satisfied). Given Plaintiff's failure to establish that injustice will result, there is no basis to require Bergmair to remain a defendant in this case.

### ii. The SAC cannot establish the "unity of interest" element of the alter ego test.

Plaintiff also fails to satisfy the unity of interest element. To begin with, the SAC alleges no facts regarding the relationship between Bergmair and any of the individual MindGeek entity defendants whose alleged jurisdictional contacts Plaintiff seeks to impute to him, instead lumping them all together simply as "MindGeek." SAC ¶¶ 313-447. Indeed, after the SAC's introductory paragraphs regarding each of the five MindGeek entities that do not contest jurisdiction, identifying their basic corporate information and business (SAC ¶¶ 12-16), it does not contain a single substantive factual allegation regarding any of them in its remaining 576 paragraphs, much less set forth any conduct Bergmair took specifically with respect to the affairs of these entities. This is plainly insufficient. The alter ego analysis necessarily focuses on the relationship between the *specific* parties who are alleged to be alter egos. *Ranza*, 793 F.3d at 1070–71 (inquiry is whether parties are "'not really separate entities,' such that *one entity's* contacts with the forum state can be fairly attributed to *the other*") (emphasis added). *See also*

*Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F.Supp.3d 1138, 1181 (C.D. Cal. 2016) (alter ego inquiry "is individual as to each owner and corporation"); *Whitney v. Wurz*, 2007 WL 1593221 at *2 (N.D. Cal. June 1, 2007) (same).

But even if Plaintiff could lump all the MindGeek defendants together as one, she still fails to show the required "unity of interest" with Bergmair because the SAC concedes – and the Bergmair Declaration and jurisdictional discovery confirmed – that he did not control MindGeek's day-to-day operations, and its allegations of his involvement in company affairs fall far short of establishing such control. To satisfy this element, Plaintiff must establish that Bergmair so dominates and controls MindGeek that the "separate personalities of the two parties no longer exist." *Iconlab,* 828 F. App'x at 364. The "unity of interest" element "envisions pervasive control" over a company, such as when an owner "dictates every facet of [its] business," including "matters of day-to-day operation." *Ranza*, 793 F.3d at 1073 (citation omitted); *In re Boon Global*, 923 F.3d at 653 (same). The Ninth Circuit has repeatedly identified control of a corporation's daily operations as an indispensable element of an alter ego claim. *See Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (alter ego relationship typified by owner's "control of the [company's] internal affairs or daily operations"); *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980) (alter ego finding requires that owner "controls the internal affairs of [the company] or determines how it operates on a daily basis"). *See also Iconlab*, 828 F. App'x at 364–65 (finding of no alter ego relationship where owner's corporate activities, while extensive, did not amount to "day-to-day involvement in [companies'] governance"); *Ranza*, 793 F.3d at 1074–75 (finding no alter ego relationship where owner was "heavily involved" in company's business but did not direct "routine, day-to-day operations").

Here, the SAC concedes that Bergmair was a shareholder with no management position who lived in China (SAC ¶ 17), ███████████████████████ ███████████████████████████████████████████████████████████

1   ████████████████████████████████████████████ Indeed, the SAC

2 acknowledges the obvious, conceding that Antoon and Tassillo "handl[ed] the direct

3 day-to-day implementation" of MindGeek's operations.[17]  SAC ¶ 109.  Moreover,

4 the handful of instances of Bergmair's involvement in MindGeek's business cited

5 in the SAC do not come close to establishing that he personally controlled its daily

6 operations.  The SAC alleges that Bergmair approved unspecified corporate policies

7 (SAC ¶¶ 17, 108-09, 111, 149-50, 155, 157, 387); ███████████████████████

8 ████████████████████████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████████████

11

12 [17] ████████████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████████████████████

21 [18] ████████████████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████████████████████

24 [19] ████████████████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████████████████████████

1

2

3

The Ninth Circuit has specifically found that actions like this, which are "consistent with a [party's] investor status," do not give rise to alter ego status. *See Doe*, 248 F.3d at 926 (quoting *United States v. Bestfoods*, 524 U.S. 51, 59 (1998)). Indeed, these are prototypical examples of what courts have found to be "macro-management," which, even in conjunction with other corporate involvement, does not give rise to an alter ego relationship.[22] *See Iconlab*, 828 F. App'x at 364–65 (affirming district court's finding of no alter ego relationship where owner "approved [companies'] large purchases," as well as financed their activity, issued collective media releases and submitted consolidated earnings reports, since none of

---

[20]

[21]

[22] Virtually all the actions Bergmair allegedly took with respect to MindGeek's business arose directly from his "investor status" – since it was envisioned that Antoon and Tassillo would manage the company

these activities reflected "day-to-day involvement in [companies'] governance"); *Ranza*, 793 F.3d at 1074-75 (where owner was "heavily involved" in company's operations, including approving "large purchases," controlling budget and setting general policies, but did not direct "routine, day-to-day operations," its role in "macromanagement issues" did not indicate alter ego relationship); *Doe*, 248 F.3d at 927 (owner's "macro-management" of company, including involvement in company's acquisitions and expenditures, "formulation of general business policies and strategies" and provision of financing did not amount to alter ego relationship); *Kramer*, 628 F.2d at 1177 (fact that owner had "general executive responsibility for the operation" of company, including "review[ing] and approv[ing] its major policy decisions," and "work[ing] closely" with company executives on pricing, was insufficient for alter ego status); *Sun Group U.S.A. Harmony City, Inc. v. CCRC Corp. Ltd.*, 2024 WL 2193311, at *11-13 (N.D. Cal. May 14, 2024) (where owner "directed [company's] major or macro decisions" regarding acquisitions and major financial actions, no alter ego relationship was shown; test requires that owner "must control the internal affairs or daily operations of the [company], or 'micro-decisions.'"); *Mireskandari*, 2013 WL 12114760 at *3 and *6 (where owner developed strategy and set company's policies with respect to "accounting, employees, customers, vendors, compensation and data protection," such "general policy-setting" was insufficient since alter ego test requires control over how company is operated on day-to-day basis); *Fru-Con Construction*, 2007 WL 2384841 at *5-6 (macro-management of company by owner, such as approving major contracts and personnel decisions and monitoring company's performance by "keeping abreast" of developments, does not amount to day-to-day control and was insufficient to show alter ego); *Calvert*, 875 F. Supp. at 679 (to establish alter ego, plaintiff must show that owner does more than exercise "broad oversight" of company and set "general policies," but instead show that he "control[s] 'how the company will be operated on a day-to-day basis'") (citation omitted).

In addition to the SAC's allegations being facially insufficient, the evidence developed in jurisdictional discovery, as described in the Factual Background section *supra* at 4-7, confirmed that Bergmair was merely a shareholder in MindGeek and that the company's daily operations were conducted by its senior management team.

if Bergmair himself was the one who "dictate[d] every facet of [its] business," including "matters of day-to-day operation." *Ranza*, 793 F.3d at 1073 (citation omitted). In addition,

*See supra* at 6-7.

### iii. The SAC's remaining alter ego allegations are insufficient.

The SAC also includes a lengthy series of allegations regarding MindGeek's supposed failures to observe corporate form (SAC ¶¶ 313-447), but they offer no support for Plaintiff's claim that MindGeek is Bergmair's alter ego, and are refuted by both the Andreou Declaration and the Bergmair Declaration.

But her claim proceeds from a misunderstanding of

---

[23] The SAC (¶¶ 335-36, 343) mischaracterizes a snippet of Bergmair's deposition testimony – and misleadingly omits a key portion of the testimony it quotes

basic corporate law principles. There is nothing unusual or actionable about shareholders of a closely-held corporation entering into a formal shareholders agreement. In fact, a corporate shareholders agreement to distribute their economic and voting rights in different proportion to shareholding interests is common and perfectly proper under corporate law. *See* Fletcher, *Cyclopedia of Corporations* § 5332 ("shareholders of closely-held corporations may enter into an agreement that governs the authorization or making of distributions *whether or not in proportion to ownership of shares*") (emphasis added). Indeed, the Model Business Corporations Act §7.32 specifically authorizes shareholder agreements, with the Official Comment to that section noting that shareholders of closely-held corporations "*frequently* enter into agreements that govern the operation of the enterprise [including] governance of the entity, *allocation of the economic return from the business*, and other aspects of the relationships among shareholders." (Emphasis added.) Similarly, California's Corporations Code recognizes that shareholders of a closely-held corporation may enter into shareholder agreements relating to "any phase of the affairs of a close corporation, including but not limited to management of its business [or] *division of its profits*." Cal. Corp. Code § 300(b) (emphasis added.) Indeed, the Ninth Circuit has affirmed the enforcement of a close corporation's shareholders' agreement pursuant to § 300(b). *See Hubbard v. Phil's*



1  *BBQ of Point Loma, Inc.*, 609 Fed. App'x. 478, 479 (9th Cir. 2015).[24]

2      Second, the SAC alleges ███████████████████████████

3  ██████████████████████████████████████████ Even if this were

4  true – and that Plaintiff somehow knows better than the prominent international law

5  and accounting firms who advised on the structure that Plaintiff challenges[25] – this

6  contention is irrelevant to the alter ego analysis. ███████████████████

7  ████████████████████████████████████████████████████

8  ████████████████████████████████████ Equating them

9  is comparing apples to oranges.  In addition, Plaintiff overlooks that these allegations

10 *undercut* her alter ego claim.  As discussed above, Plaintiff has failed to show that

11 the failure to follow corporate form resulted in an injustice to her since the SAC does

12 not allege that MindGeek is unable to pay a potential judgment.  *Supra* at 17-20.

13 But even if she could make that showing, ████████████████████

14 ████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████

20 ████████████████████████████████████████████.[26]

---

21 [24] In addition to being based on a fundamental misunderstanding of corporate law,

22 the SAC's allegations are contradicted by the Andreou and Bergmair Declarations,

23 as well as Bergmair's deposition testimony.  Andreou Decl. at ¶¶ 55-59; White Decl.
   Ex. P at ¶ 6; *supra* at 7-9.

24 [25] *See* Andreou Decl. at ¶ 55; White Decl. Ex. P at ¶ 6; *supra* at 7-9.

25 [26]  The SAC's allegations ███████████████████████

26 ████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████

1      Third, the SAC alleges ███████████████████████████████

2      ████████████With  respect  to████████████████████████

3      ██████████████████████████████████████████████████████

4      ██████████████████████████████████████████████████████

5      ██████████████████████████████████████████████████████

6      ██████████████████████████████████████████████████████

7      ██████████████████████████████████████████████████████

8      ██████████████████████████████████████████████████████

9      ██████████████████████████████████████████████████████

10     ██████████████████████████████████████████████████████

11     ██████████████████████████████████████████████████████

12     ██████████████████████████████████████████████████████

13     ██████████████████████████████████████████████████████

14     ██████████████████████████████████████████████████████

15     ██████████████████████████████████████████████████████

16     ██████████████████████████████████████████████████████

17     ████████████████████████████████████████For  example,

18     virtually every home seller directs the buyer, at their closing, to pay a portion of the

19     purchase price to the seller's bank to pay the balance of his mortgage.███████████

20     ██████████████████████████████████████████████████████

21     ██████████████████████████████████████████████████████

22     ██████████████████████████████████████████████████████

23     ██████████████████████████████████████████████████████

24     ██████████████████████████████████████████████████████

25     ██████████████████████████████████████████████████████

26     ████████████████████████As set forth *supra* at 20-25, the corporate actions that

27     ─────────────────────────────

28     ██████████████████████████████████████████████████████

the SAC alleges Bergmair took are either contradicted by the evidence developed in discovery or otherwise insufficient to show that Bergmair exercised the required day-to-day control of the company.  The one additional allegation that Plaintiff raises is that,

But again, this has nothing whatsoever to do with the observance of corporate form *by MindGeek*.

Finally, the SAC alleges

Even on its face, the allegation is insufficient because the SAC fails to show that these transactions were material to MindGeek or negatively impacted MindGeek's financial capacity.

In fact, the evidence developed in jurisdictional discovery showed



**2.    The SAC does not allege any act by Bergmair expressly aimed at this forum.**

Plaintiff also fails to satisfy the second prong of the *Calder* test, which requires that she establish not merely that her alleged injury in California was foreseeable to Bergmair, but that he "expressly aimed" his conduct at California. *Pebble Beach Co. v. Caddy*, 453 F. 3d 1151, 1156–60 (9th Cir. 2006); *Bancroft & Masters*, 223 F.3d at 1087–88; *ScoreBlue, LLC v. Locum Tele PC*, 2024 WL 3304515 at *6 (C.D. Cal. May 29, 2024).  The SAC includes no facts suggesting that the particular actions it alleges by Bergmair were expressly aimed at California. Indeed, the adoption of a global business model and corporate policies applicable worldwide to a company's websites are the polar opposite of the required "express aiming."  As a result, Plaintiff cannot satisfy this element.  *See AMA Multimedia*, 970 F.3d at 1209-11 (where there was no showing that operator of global website specifically targeted the United States, "express aiming" element was not satisfied; fact that 20% of website's visitors were from United States and operator "may have

foreseen that [the website] would attract a substantial number of viewers in the United States" does not establish express aiming); *Ariix, LLC v. NutriSearch Corp.*, 2022 WL 837072 at *3-4 (S.D. Cal. Mar. 21, 2022) (fact that publisher marketed and sold its guides throughout the United States was insufficient to show express aiming where complaint failed to "explain how [publisher's] alleged activity was specifically targeted at California"); *Baton v. Ledger*, *SAS*, 2021 WL 5226315 at *8-9 (N.D. Cal. Nov. 9, 2021) (fact that hardware company sold its products through website available throughout the United States, solicited customers nationwide, and derived revenue from California customers failed to show a "forum-specific focus on California" and thus was insufficient to show express aiming).[28]

### 3. Bergmair did not cause harm that he knew would be suffered in this forum.

Plaintiff similarly fails to satisfy the third prong of the *Calder* test, which requires that the defendant's conduct caused harm "which is suffered – and which the defendant knows is likely to be suffered – in the forum state." *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1486 (9th Cir. 1993). The SAC does not allege that Bergmair knew Plaintiff or that she was a California resident, so he could not have known about the likelihood that she would suffer harm in California.

### B. Bergmair did not engage in forum-related activities, much less any related to Plaintiff's claims.

Plaintiff is also unable to establish the second element of specific jurisdiction, namely, that her claims arise from Bergmair's alleged forum-related activities. To satisfy this element, Plaintiff must show a "direct nexus" between the defendant's forum-related contacts and her cause of action. *In re Western States Wholesale*

---

[28] *See Elliot v. Cessna Aircraft Co.*, 2021 WL 2153820 at *3-4 (C.D. Cal. May 25, 2021) (fact that aircraft parts manufacturer operated interactive nationwide website and had $8 million in sales in California did not show express aiming; "operating a universally accessible website" is insufficient to show express aiming because "specific targeting is what is required").

*Natural Gas Antitrust Litigation*, 715 F.3d 716, 742 (9th Cir. 2013). Contacts that are too "attenuated" from the claims at issue do not satisfy this test. *Doe v. American Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997).

As described above, the SAC does not establish that Bergmair engaged in any conduct in, or aimed at, California, so Plaintiff's claim could not possibly have arisen from forum-related conduct. Nor can Plaintiff establish the required "direct nexus" between Bergmair's alleged conduct and her claims. For example, in *Doe v. American Red Cross*, the survivor of an individual who contracted AIDS from a blood transfusion in Arizona sued the Food and Drug Administration official responsible for the safety of blood products, alleging that he failed to take action to ensure a blood supply free from the AIDS virus. *Id*. at 1050. Plaintiff alleged that the official had failed to put in place certain policies, such as barring high-risk groups from donating blood. *Id*. The Ninth Circuit reversed the district court's finding of personal jurisdiction over the official, ruling that his conduct was "at best, attenuated" from the dissemination of blood products in Arizona and plaintiff's injuries could not be said to arise from his alleged conduct. *Id*. at 1051. Here, just as in *Doe*, the SAC alleges that Bergmair failed to put in place nationwide and worldwide policies that would have prevented Plaintiff's injuries years later in one particular state, but this alleged causation is far too attenuated to establish the required "direct nexus."

**C.    The exercise of jurisdiction over Bergmair would not be reasonable.**

Even if Plaintiff was able to satisfy the first two elements of the specific jurisdiction test, the exercise of jurisdiction over Bergmair would not be reasonable. Courts determine whether exercising such jurisdiction would be reasonable by considering seven factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the

forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1065 (9th Cir. 1985). Because Bergmair is a foreign citizen, Plaintiff "must meet a higher jurisdictional threshold than is required when the defendant is a United States citizen." *Core-Vent*, 11 F.3d at 1490.

With respect to the first element, Bergmair's alleged actions in approving the business model and policies of MindGeek, a foreign company operating websites with a worldwide audience, at most show only a minimal degree of "purposeful interjection" into California and thus weighs against jurisdiction. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114–15 (9th Cir. 2002) ("[t]here may be circumstances under which the level of purposeful injection into the forum supports a finding of purposeful availment yet still weighs against the reasonableness of jurisdiction"). The second factor also weighs against jurisdiction. Even with modern transportation and communication methods, it would be burdensome for Bergmair to litigate in a foreign country located literally on the other side of the world. *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 114 (1987) ("unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness" of jurisdiction). This factor weighs heavily in Bergmair's favor even if the burden "would not be insurmountable [since] it would nonetheless be substantial." *Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F. Supp. 2d 1194, 1205 (C.D. Cal. 2000) (quoting *Rocke v. Canadian Auto. Sport Club*, 660 F.2d 395, 399 (9th Cir. 1981)). With respect to the third factor, where the defendant is a foreign resident, "the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction." *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 852 (9th Cir. 1993). Here, just like the United States, Hong Kong has an interest in resolving disputes involving its

residents, *Paccar*, 757 F.2d at 1065, so this factor weighs against jurisdiction. The fourth factor weighs in favor of jurisdiction because California has an interest in providing a forum for its residents who are tortiously injured. *Dole Food Co.*, 303 F. 3d at 1115–16. The fifth factor looks "primarily at where the witnesses and the evidence are likely to be located." *Core-Vent*, 11 F.3d at 1489. Here, the vast bulk of the witnesses and evidence – MindGeek employees and documents – are located outside the United States, so this factor weighs against jurisdiction. With respect to the sixth factor, "[n]either the Supreme Court nor [the Ninth Circuit] has given much weight to inconvenience to the plaintiff." *Core-Vent*, 11 F.3d at 1490; *Dole Food Co.*, 303 F.3d at 1116. Although accorded little weight, this factor weighs in favor of jurisdiction. With respect to the final factor, Plaintiff bears the burden of proving the unavailability of an alternative forum. *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 609 (9th Cir. 2018). Here, a potential alternative forum exists to litigate claims against Bergmair, namely Hong Kong, where he resides, which has a fair and effective legal system.[29] This factor may weigh against the plaintiff's chosen jurisdiction even where "it may be more costly and inconvenient" for a plaintiff to litigate in the alternative forum. *Panavision International, L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998). As a result, this factor weighs against jurisdiction. In sum, five of the seven factors weigh against jurisdiction. *See Rocke*, 660 F.2d at 400 ("Due process requires that we weigh more heavily the expectations of and burdens upon the defendants than we weigh the hardships upon the plaintiff").

## II. Plaintiff has failed to state a claim against Bergmair.

Even if Plaintiff could establish personal jurisdiction, the Court should still

---

[29] Courts have recognized Hong Kong as an adequate alternative forum, both in the context of determining the "reasonableness" of exercising specific jurisdiction (as here) and in connection with motions for dismissal on *forum non conveniens* grounds. *See Reflex Media, Inc. v. Luxy Ltd.*, 2021 WL 945248 at *5 (C.D. Cal. Feb. 5, 2021); *Cook v. Champion Shipping AS*, 732 F. Supp. 2d 1029, 1033–34 (E.D. Cal. 2010), *aff'd*, 463 F. App'x 626, 627 (9th Cir. 2011).

dismiss the SAC on the merits because its claims are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("Section 230") and its allegations against Bergmair are otherwise insufficient to state any viable claim for relief.

### A.    Section 230 bars all of Plaintiff's claims against Bergmair.

As set forth in the motions to dismiss of the MindGeek Entity Defendants and the other defendants, all of plaintiffs' claims against Bergmair are barred by Section 230.  The SAC's allegations that Bergmair continued MindGeek's business model and approved its policies are too vague and general to state a claim, but accepting them as true, the immunity afforded by Section 230 extends to Bergmair as a "provider . . . of an interactive computer service."  47 U.S.C. § 230(c).  *Loomer v. Zuckerberg*, 2023 WL 6464133 at *12 (N.D. Cal. Sept. 30, 2023) (where Section 230 immunity applies to Facebook and Twitter, it also extends to their founders and CEOs, defendants Mark Zuckerberg and Jack Dorsey); *Igbonwa v. Facebook, Inc.*, 2018 WL 4907632 at *5 (N.D. Cal. Oct. 9, 2018) (where plaintiff sought to hold Mark Zuckerberg liable on the basis of Facebook's actions or inaction, he was entitled to Section 230 protection), *aff'd*, 786 F. App'x. 104 (9th Cir. 2019).  Since Section 230's immunity applies to Bergmair, it bars all of plaintiffs' claims against him.

### B.    The SAC's generalized allegations fail to state a claim.

The Court must dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) if it lacks "sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).  Although a Rule 12(b)(6) motion requires the Court to "accept as true all of the allegations contained in a complaint," that standard "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A court considering a motion to dismiss may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  The court is not

required to accept as true "legal conclusions couched as factual allegations." *ScoreBlue, LLC*, 2024 WL 3304515 at *3. A plaintiff must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1233 (C.D. Cal. 2015) (internal quotation marks and alterations omitted) (quoting *Twombly*, 550 U.S. at 555). Federal Rule of Civil Procedure 8 requires that a plaintiff provide a "statement of circumstances, occurrences, and events in support of the claim presented." *Twombly*, 550 U.S. at 555 n.3 (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1202 (3d ed. 2004)). Indeed, Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. This factual showing must "differentiate between each of the defendants and clearly state the factual basis for each cause of action as to each specific defendant." *Fagbohungbe v. Caltrans*, 2014 WL 644008, at *3 n.4 (N.D. Cal. Feb. 19, 2014).

Here, the SAC's allegations are insufficient to hold Bergmair responsible for the conduct of corporate entities. A corporate shareholder or employee is not liable for the company's torts unless he "authorizes or directs or … participates" in the wrongful conduct. *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016); *Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999). Just as in the personal jurisdiction context, cases finding "personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct, or the 'central figure' in the challenged corporate activity." *Facebook*, 844 F.3d at 1069 (quoting *Davis*, 885 F.2d at 523 n.10).

District courts have repeatedly ruled that generalized allegations of corporate oversight and control, like those against Bergmair here, are not sufficient to meet

the guiding spirit standard and thus fail to state a claim under Rule 12(b)(6).  For example, in *In re JUUL Labs, Inc. Marketing, Sales Practices and Products Liability Litigation*, 497 F. Supp. 3d 552 (N.D. Cal. 2020), plaintiffs sued e-cigarette maker JUUL and several of its board directors alleging that JUUL targeted its advertising towards youths.  The directors allegedly had "control" of the Board and "final say" over the company's marketing materials.  *Id*. at 635.  The court dismissed the claims against the directors, ruling that such allegations "[did] not establish the requisite individual 'direction or control' to pin liability" for JUUL's marketing on them.  *Id*.  The court held that such "generalized allegations are insufficient to connect each [director] to the direction or control of any unfair acts or youth-targeted marketing acts," since there were "no factual allegations of specific conduct" committed by them or at their direction.  *Id*. at 636 (emphasis in original).  The court concluded that "vague allegations about exercising 'final say' over marketing decisions do not suffice without any specificity concerning what those decisions were and how they were connected to" plaintiff's claims.  *Id*. at 654.  Similarly, in *Lynch v. Matterport, Inc.*, 2023 WL 1420723 (N.D. Cal. Jan. 31, 2023), plaintiff sued a company and its individual directors claiming unfair business practices and alleged that the directors "authorized, ratified and directed" company practices that harmed him.  *Id*. at *2.  The Court dismissed the case against the directors, ruling that, without "assertions of personal involvement in the purported wrongdoing" beyond these allegations, plaintiff failed to state a claim.  *Id*. at *3.  Likewise, in *O'Connor v. Uber Technologies, Inc.*, 2013 WL 6354534 (N.D. Cal. Dec. 5, 2013), plaintiff drivers raised various employment law claims against Uber and two top executives, whom plaintiffs alleged were liable based on their corporate positions and the fact that they were "responsible for" the challenged employment policies and pay practices.  *Id*. at *18. The court dismissed the claims against the executives, ruling that the plaintiffs had "failed to allege enough specific allegations showing that [they] personally directed or participated in the tortious conduct."  *Id*. (citation and internal

quotation marks omitted).   The court held that "identifying their roles in the corporation and alleging that they were 'responsible' for pay practices and employment policies does not make it plausible that they were personally liable" for the company's actions.  *Id*.[30]

### C.    The SAC fails to properly allege a valid claim on specific counts.

In addition to the protections of Section 230 and the SAC's overarching lack of specificity regarding Bergmair, each of the individual counts of the SAC is insufficiently pleaded in other respects.   Bergmair joins in the motions and arguments of all the other defendants with respect to the deficiencies in the SAC's individual claims.   In addition to the deficiencies identified there, and those discussed above, Plaintiff's claims against Bergmair are also insufficient for the reasons set forth below.

### 1.    The federal trafficking claims (Counts I and IV) fail to state a claim.

In addition to the deficiencies described in the other defendants' motions, Plaintiff's 18 U.S.C. §1595 claims (SAC Counts I and IV), fail against Bergmair for two additional reasons.  First, the SAC alleges that Bergmair is a resident of China and alleges no conduct by him in the United States.  SAC ¶ 17.  But §1595 does not apply extraterritorially.  18 U.S.C. § 1596(a) provides for extraterritorial jurisdiction over a *criminal offense* in violation of 18 U.S.C. §1591, but not to a civil claim under §1595.  *Doe v. Apple, Inc.*, 2021 WL 5774224 at *14-16 (D.D.C. Nov. 2, 2021).  Even if §1596(a) applied to civil claims like Plaintiff's, it only extends extraterritorial jurisdiction when the defendant is a United States national or lawful permanent resident or is "present" in the United States.  *Doe v. WebGroup Czech Republic, a.s.*, 2024 WL 3533426, at *9-10 (C.D. Cal. July 24, 2024).  As the SAC

---

[30] *See Iqbal*, 556 U.S. at 678–81 (allegations that Attorney General was "architect" of discriminatory government policy and he "knew of [and] condoned" policy were "not entitled to the assumption of truth" since they amount to "nothing more than a 'formulaic recitation of the elements'" of a claim).

1    concedes, Bergmair fits neither exception, so § 1595 does not apply extraterritorially

2    to him.  Second, to violate subsection (a)(1) or (a)(2) of §1591, a defendant must

3    have some knowledge of the plaintiff.  Subsection (a)(1) provides, in relevant part,

4    that a defendant is liable if he "recruits, entices, harbors … *a person*" whom he

5    knows is a minor.  (Emphasis added.)  There is no claim that Bergmair even knew

6    Fleites, so he could not have taken one of the actions specified in subsection (a)(1)

7    with respect to her person.[31]  Under subsection (a)(2), a defendant must have specific

8    knowledge of and participation in a trafficking venture *involving the specific victim*.

9    *See S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020); *Doe*

10   *v. Red Roof Inns, Inc.* 21 F.4th 714, 725 (11th Cir. 2021).  If Bergmair never knew

11   Fleites, he did not have specific knowledge of (or participate in) a trafficking venture

12   involving her.

## 2.    The federal child pornography claims (Counts V and VI) fail to state a claim.

15       In addition to the deficiencies described in the other defendants' motions,

16   Plaintiff's 18 U.S.C. §§ 2252 and 2252A claims (SAC Counts V and VI), fail against

17   Bergmair for an additional reason.  For an individual to violate these statutes, he

18   must know both the explicit nature of the material and that the performers were

19   underage.  *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994).  While

20   the SAC alleges that MindGeek knew that Plaintiff was a minor based on the title of

21   the video and user comments (SAC ¶¶ 515, 526), it contains no such allegation

22   regarding Bergmair's knowledge.  Indeed, there is no allegation that Bergmair knew

23   of Plaintiff's existence or had any contact at all with the specific videos featuring

24   her.  As a result, these counts plainly fail to state a viable claim against Bergmair.

25   _____

26   [31] Count I of the SAC implicitly concedes that Plaintiff cannot satisfy §1591's

27   requirements.  In stating her claim, the SAC alleges that the MindGeek Defendants
     "recruit, entice, harbor … videos and images depicting CSAM on their websites"

28   (SAC ¶ 467), ignoring that the statute requires that one of those actions be taken with
     respect to "a person," not videos.

1

## <u>CONCLUSION</u>

2

For these reasons, the Court should dismiss the SAC with prejudice for both

3

lack of personal jurisdiction and failure to state a claim for relief.

4

Dated: August 30, 2024

5

By: */s/ Ronald G. White*

6

RONALD G. WHITE

7

(admitted *pro hac vice*)
rwhite@wmhwlaw.com

8

Walden Macht Haran & Williams LLP

9

250 Vesey Street
New York, NY  10281

10

Tel: (212) 335-2387

11

Fax: (212) 335-2040

12

DAN MARMALEFSKY (CA SBN

13

95477)
DMarmalefsky@mofo.com

14

Morrison & Foerster LLP

15

707 Wilshire Boulevard
Los Angeles, California 90017-3543

16

Telephone: 213-892-5200
Facsimile: 213-892-5454

17

18

Attorneys for Defendant Bernd

19

Bergmair

20

21

22

23

24

25

26

27

28

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

## CERTIFICATE OF COMPLIANCE

2   The undersigned, counsel of record for Bernd Bergmair, certifies that the

3 Memorandum of Points and Authorities consists of 40 pages, which complies with

4 the 40-page limit set forth in the Court's August 2, 2024 Order Granting Joint

5 Stipulation Re Briefing Schedule Relating to Defendants' Responses to Plaintiff's

6 Second Amended Complaint (ECF No. 424).

7 Dated:  August 30, 2024                          Respectfully submitted,

8

9                                                        /s/ Ronald G. White
                                                            RONALD G. WHITE
10                                                        (admitted *pro hac vice*)
                                                            rwhite@wmhwlaw.com
11                                                       Walden Macht Haran & Williams LLP
12                                                       250 Vesey Street
                                                            New York, NY  10281
13                                                       Tel: (212) 335-2387
                                                            Fax: (212) 335-2040
14

15                                                       DAN MARMALEFSKY (CA SBN 95477)
16                                                       DMarmalefsky@mofo.com
                                                            Morrison & Foerster LLP
17                                                       707 Wilshire Boulevard
18                                                       Los Angeles, California 90017-3543
                                                            Telephone: 213-892-5200
19                                                       Facsimile: 213-892-5454

20

21                                                       Attorneys for Defendant Bernd Bergmair

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

The undersigned, the counsel of record for Bernd Bergmair, certifies that the foregoing instrument was served pursuant to the Federal Rules of Civil Procedure on August 30, 2024 upon all counsel of record via ECF.

Dated:  August 30, 2024                    Respectfully submitted,


                                           */s/ Ronald G. White*
                                           RONALD G. WHITE
                                           (admitted *pro hac vice*)
                                           rwhite@wmhwlaw.com
                                           Walden Macht Haran & Williams LLP
                                           250 Vesey Street
                                           New York, NY  10281
                                           Tel: (212) 335-2387
                                           Fax: (212) 335-2040

                                           DAN MARMALEFSKY (CA SBN 95477)
                                           DMarmalefsky@mofo.com
                                           Morrison & Foerster LLP
                                           707 Wilshire Boulevard
                                           Los Angeles, California 90017-3543
                                           Telephone: 213-892-5200
                                           Facsimile: 213-892-5454

                                           Attorneys for Defendant Bernd Bergmair

BERGMAIR NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT