WIECHERT, MUNK & GOLDSTEIN, PC
David Wiechert, CA Bar No. 94607
4000 MacArthur Boulevard,
Suite 600 East Tower
Newport Beach, CA 92660
Phone: (949) 361-2822
Facsimile: (949) 361-5722
Email: dwiechert@aol.com

MORVILLO ABRAMOWITZ
GRAND IASON & ANELLO PC
Jonathan S. Sack (*pro hac vice*)
Alexander F.R. Peacocke (*pro hac vice* pending)
565 Fifth Avenue
New York, New York 10017
Phone: (212) 856-9600
Facsimile: (212) 856-9494
Email: jsack@maglaw.com
Email: apeacocke@maglaw.com

*Attorneys for Specially Appearing Defendant David Tassillo*

COHEN & GRESSER LLP
Jason Brown (*pro hac vice*)
Matthew V. Povolny (*pro hac vice*)
Joanna Chan
800 Third Avenue
New York, New York 10022
Phone: (212) 957-7600
Facsimile: (212) 957-4514
Email: jbrown@cohengresser.com
Email: mpovolny@cohengresser.com
Email: jchan@cohengresser.com

*Attorneys for Specially Appearing Defendant Feras Antoon*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENA FLEITES,<br><br>Plaintiff,<br><br>v.<br><br>MINDGEEK S.A.R.L. a foreign entity; MG FREESITES, LTD., a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; MG PREMIUM LTD, a foreign entity; MG GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 QUEBEC, INC., a foreign entity; BERND BERGMAIR, a foreign individual; FERAS ANTOON, a foreign individual; DAVID TASSILLO, a foreign individual; VISA INC., a Delaware corporation; REDWOOD MASTER FUND, LTD, a foreign entity; MANUEL 2018, LLC, a Delaware corporation, GINGOGERUM, LLC, a Delaware corporation; WHITE-HATHAWAY OPPORTUNITY FUND, LLC, A Delaware corporation; COLBECK CAPITAL MANAGEMENT, LLC, a Delaware Corporation; CB AGENCY SERVICES, LLC, A Delaware corporation; and CB PARTICIPATIONS SPV, LLC, a Delaware corporation<br><br>Defendants. | Case No. 2:21-cv-4920<br><br>**SPECIALLY APPEARING DEFENDANTS FERAS ANTOON AND DAVID TASSILLO'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:  November 22, 2024**<br>**Time: 1:30 p.m.**<br>**Courtroom:  9B**<br>**Judge: Hon. Wesley Hsu** |

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that, on November 22, 2024 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 9B in the U.S. District Court for the Central District of California, located at the First Street Courthouse, 350 W. 1st Street, Courtroom 9B, 9th Floor, Los Angeles, California 90012, before the Honorable Wesley Hsu,  Specially Appearing Defendants Feras Antoon and David Tassillo will move, and hereby move, for an Order dismissing Plaintiff's Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6) and 9(b).

Neither Antoon nor Tassillo consents nor submits to the jurisdiction of this Court, and they appear in this action for the limited purpose of contesting jurisdiction.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on August 22, 2024.

If the Court finds jurisdiction over Mr. Antoon and Mr. Tassillo, they respectfully move for dismissal on the ground that Plaintiff has failed to state a claim against them upon which relief can be granted.  This motion is based on this Notice of Motion, the accompanying Memorandum of Law, and all other matters properly before this Court.

DATED: August 30, 2024                    Respectfully Submitted,


By:  /s/ Jonathan S. Sack

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO PC
Jonathan S. Sack (*pro hac vice*)
Alexander F.R. Peacocke (*pro hac vice* pending)

*Attorneys for Specially Appearing Defendant David Tassillo*

1

2     COHEN & GRESSER LLP
      Jason Brown (*pro hac vice*)
3     Matthew V. Povolny (*pro hac vice*)
      Joanna Chan
4

5     *Attorneys for Specially Appearing Defendant*
      *Feras Antoon*
6

7     WIECHERT, MUNK & GOLDSTEIN, PC
      David Wiechert (SBN 94607)
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iv

INTRODUCTION ......................................................................................... 1

BACKGROUND ........................................................................................... 3

    Procedural History ................................................................................. 3

    MindGeek ............................................................................................... 6

    The Second Amended Complaint .......................................................... 7

    Feras Antoon and David Tassillo .......................................................... 8

LEGAL STANDARD ................................................................................... 9

ARGUMENT .............................................................................................. 11

I.    THE COURT DOES NOT HAVE PERSONAL
    JURISDICTION OVER FERAS ANTOON OR DAVID
    TASSILLO ....................................................................................... 11

    A.    Jurisdictional Legal Standard ................................................. 12

    B.    Plaintiff Does Not Plead Any Facts Demonstrating
        Antoon or Tassillo Personally Directed Their Conduct at
        California or Availed Themselves of the Benefits of
        Doing Business Here ................................................................ 15

    C.    Plaintiff Fails to Overcome the Fiduciary Shield Doctrine
        Because She Has Not Adequately Pled Personal
        Jurisdiction Under an Alter Ego Theory .................................. 17

        1.    The SAC Does Not Allege "Injustice" Generally
            or "Injustice" Caused by Acts of Antoon or
            Tassillo ......................................................................... 19

        2.    There Is No "Unity of Interest and Ownership"
            Between Antoon or Tassillo and Non-Contesting
            Defendants .................................................................... 22

II.    PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH
    RELIEF MAY BE GRANTED ......................................................... 29

    A.    Plaintiff's TVPRA Claims Fail ............................................... 29

    B.    Plaintiff's 18 U.S.C. § 2252 Claims Fail ............................... 32

    C.    Plaintiff's State Law Claims Fail ............................................ 33

III.    SECTION 230 IMMUNITY EXTENDS TO ANTOON AND
    TASSILLO ....................................................................................... 36

CONCLUSION......................................................................................................40

## **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Abundant Living Fam. Church v. Live Design, Inc.*,
2022 WL 2176583 (C.D. Cal. June 15, 2022) .......................................17

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
2015 WL 12777092 (C.D. Cal. Oct. 23, 2015).....................................27

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (1994) ...........................................................................36

*Ardente, Inc. v. Shanley*,
2010 WL 546485 (N.D. Cal. Feb. 10, 2010) .........................................10

*Art Attacks Ink, LLC v. MGA Ent., Inc.*,
2009 WL 10672486 (S.D. Cal. Aug. 10, 2009) ......................................28

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................10

*AT&T v. Compagnie Bruxelles Lambert*,
94 F.3d 586 (9th Cir. 1996) .....................................................................3

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ...............................................................13

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
11 F.4th 972 (9th Cir. 2021) ..................................................................16

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ...............................................................37

*Beatport LLC v. SoundCloud Ltd*,
2020 WL 3977602 (C.D. Cal. July 13, 2020).......................................16

*Billion Int'l Trading Inc. v. Universal Sportswear Inc.*,
2013 WL 12403059 (C.D. Cal. Dec. 27, 2013)......................................12

FERAS ANTOON AND DAVID TASSILLO'S MOTION TO DISMISS
CASE NO. 2:21-cv-4920

*Boeing Co. v. KB Yuzhnoye,*
2016 WL 2851297 (C.D. Cal. May 13, 2016) ..................................................... 20

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.,*
582 U.S. 255 (2017) ............................................................................................. 14

*Butler v. Adoption Media, LLC,*
486 F. Supp. 2d 1022 (N.D. Ca. 2007) ................................................................ 19

*Calder v. Jones,*
465 U.S. 783 (1984) ............................................................................................. 12

*Calise v. Meta Platforms, Inc.,*
103 F.4th 732 (9th Cir. 2024) .............................................................................. 37

*Caraccioli v. Facebook, Inc.,*
700 F. App'x 588 (9th Cir. 2017) ......................................................................... 34

*Core-Vent Corp. v. Nobel Indus. AB,*
11 F.3d 1482 (9th Cir. 1993) ............................................................................... 15

*Coste v. Fox Beverages USA Inc.,*
2023 WL 8522987 (C.D. Cal. Oct. 10, 2023)...................................................... 23

*Cummings v. Worktap, Inc.,*
2019 WL 4221652 (N.D. Cal. Sept. 4, 2019) ...................................................... 20

*Daimler AG v. Bauman,*
571 U.S. 117 (2014).............................................................................................. 13

*Davis v. Metro Prods., Inc.,*
885 F.2d 515 (9th Cir. 1989) ......................................................................... 17, 18

*Doe v. Grindr Inc.,*
2023 WL 9066310 (C.D. Cal. Dec. 28, 2023)..................................................... 30

*Doe v. MySpace, Inc.,*
474 F. Supp. 2d 843 (W.D. Tex. 2007) ............................................................... 35

*Doe v. Twitter, Inc.,*
555 F. Supp. 3d 889 (N.D. Cal. 2021).................................................................. 30

*Doe v. Twitter, Inc.*,
  2023 WL 8568911 (N.D. Cal. Dec. 11, 2023) .................................................. 31, 37

*Doe v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001) ................................................................................ 23

*Doe v. Webgroup Czech Republic, A.S.*,
  2024 WL 3533426 (C.D. Cal. July 24, 2024) .................................................. 32, 40

*Does 1-6 v. Reddit, Inc.*,
  51 F.4th 1137 (9th Cir. 2022) ........................................................................ 30, 39, 40

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003) .............................................................................................. 17

*Dyroff v. Ultimate Software Grp., Inc.*,
  934 F.3d 1093 (9th Cir. 2019) .............................................................................. 38

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ................................................................................ 32

*Edwards v. Scott David Leonard, Gia's Life Fund, LLC*,
  2023 WL 11664594 (C.D. Cal. Oct. 24, 2023) .................................................... 11

*EEOC v. Arabian American Oil Co.*,
  499 U.S. 244 (1991) .............................................................................................. 32

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*,
  122 F.3d 1211 (9th Cir. 1997) .............................................................................. 36

*Fair Hous. Council of Riverside Cnty., Inc. v. Grp. XIII Prop. LP*,
  2023 WL 4680764 (C.D. Cal. Apr. 27, 2023) ...................................................... 25

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ........................................................................ 37, 38

*Frances T. v. Vill. Green Owners Assn.*,
  42 Cal. 3d 490 (1986) ........................................................................................... 34

*Geiss v. Weinstein Co. Holdings LLC*,
  383 F. Supp. 3d 156 (S.D.N.Y. 2019) .................................................................. 30

*Gerritsen v. Warner Bros. Ent. Inc.*,
  116 F. Supp. 3d 1104 (C.D. Cal. 2015) ................................................................. 19

*Gonzalez v. Google LLC*,
  2 F.4th 871 (9th Cir. 2021) ................................................................................... 38

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) .............................................................................................. 13

*Hambleton Bros. Lumber Co. v. Balkin Enters.*,
  397 F.3d 1217 (9th Cir. 2005) ............................................................................. 20

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003) ............................................................................. 18

*Hasso v. Hapke*,
  227 Cal. App. 4th 107 (2014) .............................................................................. 18

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
  485 F.3d 450 (9th Cir. 2007) ............................................................................... 13

*In re Auto. Antitrust Cases I and II*,
  135 Cal. App. 4th 100 (2005) .............................................................................. 12

*In re Boon Glob. Ltd.*,
  923 F.3d 643 (9th Cir. 2019) ................................................................. 18, 21, 22

*In re L. Scott Apparel, Inc.*,
  615 B.R. 881 (C.D. Cal. 2020) ............................................................................ 23

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
  715 F.3d 716 (9th Cir. 2013) ............................................................................... 14

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
  2009 WL 455658 (D. Nev. Feb. 23, 2009) .......................................................... 21

*Incipio, LLC v. Argento Sc By Sicura Inc.*,
  2018 WL 4945002 (C.D. Cal. July 18, 2018) ...................................................... 18

*Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.*,
  880 F. Supp. 743 (C.D. Cal. 1995) ..................................................................... 18

FERAS ANTOON AND DAVID TASSILLO'S MOTION TO DISMISS
CASE NO. 2:21-cv-4920

*Int'l Shoe Co.* v. *State of Wash., Off. of Unemployment Comp. & Placement*,
326 U.S. 310 (1945) .............................................................................. 17

*JPV I L.P. v. Koetting*,
88 Cal. App. 5th 172 (2023) ................................................................. 22

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .............................................................. 11

*Kwikset Corp. v. Superior Ct.*,
51 Cal. 4th 310 (2011) ......................................................................... 35

*Leitner v. Sadhana Temple of New York, Inc.*,
2014 WL 12588643 (C.D. Cal. Oct. 17, 2014)..................................... 24

*Lennard v. Yeung*,
2012 WL 13006214 (C.D. Cal. Feb. 23, 2012) .................................... 25

*Letizia v. Facebook Inc.*,
267 F. Supp. 3d 1235 (N.D. Cal. 2017) ............................................... 35

*LNS Enterprises LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) ................................................................ 14

*Martinez v. Aero Caribbean*,
764 F.3d 1062 (9th Cir. 2014) .............................................................. 10

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) .............................................................. 13

*Mesler v. Bragg Mgmt. Co.*,
39 Cal. 3d 290 (1985) .......................................................................... 19

*Milliken v. Meyer*,
311 U.S. 457 (1940) ............................................................................. 16

*Morrill v. Scott Fin. Corp.*,
873 F.3d 1136 (9th Cir. 2017) .............................................................. 10

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010) ............................................................................. 32

FERAS ANTOON AND DAVID TASSILLO'S MOTION TO DISMISS
CASE NO. 2:21-cv-4920

*NuCal Foods, Inc. v. Quality Egg LLC*,
   887 F. Supp. 2d 977 (E.D. Cal. 2012) .................................................. 21

*Oakley, Inc. v. Trimera Mil. Tech., Inc.*,
   2016 WL 8794459 (C.D. Cal. Jan. 22, 2016) ...................................... 22

*Paguirigan v. Prompt Nursing Emp. Agency LLC*,
   286 F. Supp. 3d 430 (E.D.N.Y. 2017) ................................................ 31

*Perfect 10, Inc. v. Giganews, Inc.*,
   2015 WL 12710753 (C.D. Cal. June 3, 2015) ..................................... 20

*Pizana v. SanMedica Int'l LLC*,
   345 F.R.D. 469 (E.D. Cal. 2022) ........................................................ 26

*Prompt Staffing, Inc. v. United States*,
   321 F. Supp. 3d 1157 (C.D. Cal. 2018) .............................................. 21

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ..................................... 19, 22, 23, 27

*Riddle v. Leuschner*,
   335 P.2d 107 (Cal. 1959) .................................................................... 22

*RJR Nabisco, Inc. v. Eur. Cmty.*,
   579 U.S. 325 (2016) ............................................................................ 32

*SASA MASLIC, et al. v. ISM VUZEM D.O.O.*,
   2024 WL 3408217 (N.D. Cal. July 11, 2024) .................................... 36

*ScoreBlue, LLC v. Locum Tele PC*,
   2024 WL 3304515 (C.D. Cal. May 29, 2024) .............................. 13, 16

*SEC v. Jammin Java Corp.*,
   2016 WL 6595133 (C.D. Cal. July 18, 2016)................................ 15, 27

*Sher v. Johnson*,
   911 F.2d 1357 (9th Cir. 1990) ............................................................ 12

*Stein v. World–Wide Plumbing Supply Inc.*,
   71 F. Supp. 3d 320 (E.D.N.Y. 2014) ................................................. 31

*Stephen Gould Corp. v. Osceola*,
  2023 WL 8254483 (C.D. Cal. Oct. 13, 2023)........................................23

*Stewart v. Screen Gems-EMI Music, Inc.*,
  81 F. Supp. 3d 938 (N.D. Cal. 2015) ..................................................21

*Tatung Co., Ltd. v. Shu Tze Hsu*,
  217 F. Supp. 3d 1138 (C.D. Cal. 2016) ...............................................22

*TradeWinds Airlines, Inc. v. Soros*,
  2012 WL 983575 (S.D.N.Y. Mar. 22, 2012) ........................................21

*Trans-World Int'l, Inc. v. Smith-Hemion Prods., Inc.*,
  972 F. Supp. 1275 (C.D. Cal. 1997) ....................................................28

*United States Liab. Ins. Co. v. Haidinger–Hayes, Inc.*,
  1 Cal. 3d 586 (1970) .........................................................................33

*United States v. Funds Held in the Name or for the Benefit of Wetterer*,
  210 F.3d 96 (2d Cir. 2000)..................................................................28

*United States v. X-Citement Video, Inc.*,
  513 U.S. 64 (1994).............................................................................32

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ............................................................10

*Wady v. Provident Life and Accident Ins. Co. of Am.*,
  216 F. Supp. 2d 1060 (C.D. Cal. 2002) ...............................................29

*Willick v. Napoli Bern Ripka & Assocs.,* No. 2:15-CV-00652 (AB) (E), *LLP*,
  2019 WL 3064120 (C.D. Cal. Mar. 13, 2019).......................................23

*Wimbledon Fund, SPC v. Graybox, LLC*,
  2016 WL 7444709 (C.D. Cal. Aug. 31, 2016) ......................................10

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006) ............................................................14

*Zhang v. Twitter Inc.*,
  2023 WL 5493823 (N.D. Cal. Aug. 23, 2023) ......................................37

1

## Statutes

2   18 U.S.C. § 1591.................................................................................................*passim*

3   18 U.S.C. § 1594........................................................................................... 9, 31

4   18 U.S.C. § 1595.................................................................................................*passim*

5

6   18 U.S.C. § 1596................................................................................................. 32

7   18 U.S.C. § 2252A..................................................................................... 9, 33, 37

8   18 U.S.C. § 2255........................................................................................... 9, 37

9   47 U.S.C. § 230.................................................................................................*passim*

10

11   California Business and Professions Code § 17200 ........................................... 9, 35

12   California Business and Professions Code § 17500 ........................................... 9, 35

13   California Civil Procedure Code § 410.10 .......................................................... 12

14

15   California Civil Code § 52.5........................................................................... 9, 35, 36

16   California Civil Code § 1708.85....................................................................... 9, 34

17   California Civil Code § 3344............................................................................ 9, 34

18   California Corporations Code § 300.................................................................. 26

19

20   ## Rules

21   Federal Rule of Civil Procedure 4 ...................................................................... 12

22   Federal Rule of Civil Procedure 9 ................................................................... 3, 10

23   Federal Rule of Civil Procedure 12 ................................................................. 3, 10

24   Federal Rule of Civil Procedure 20 ...................................................................... 4

25

26

27

28

**FERAS ANTOON AND DAVID TASSILLO'S MOTION TO DISMISS**
**CASE NO. 2:21-cv-4920**

# **INTRODUCTION**

Plaintiff Serena Fleites has now had three opportunities to plead facts sufficient to make out personal jurisdiction over Feras Antoon and David Tassillo, who both live and work in Canada.  In granting jurisdictional discovery, this Court previously urged Plaintiff to dismiss any defendant from this action if, after jurisdictional discovery, she could not "clearly define a defendant's conduct as it relates to her harm."  ECF No. 168 at 2.  After more than one year taking jurisdictional discovery and taking nearly that long again to prepare a Second Amended Complaint ("SAC"), ECF No. 387-1, Plaintiff has failed completely to do what the Court urged, and the present complaint should be dismissed as to Antoon and Tassillo.[1]

Defendants have produced more than 99,000 pages of documents, answered dozens of interrogatories and requests for admission, and Plaintiff took seven jurisdictional depositions, including day-long depositions of Antoon and Tassillo.  Despite this wealth of information, the SAC does not include *a single factual allegation* that either Antoon or Tassillo purposefully directed their conduct at either California or the United States, and all but concedes that Antoon and Tassillo do not have relevant jurisdictional contacts with the United States.  Plaintiff does not attempt to make a jurisdictional case against Antoon or Tassillo individually, but as this Court has previously noted, she continues to "merely guess[] at who bears responsibility."  ECF No. 167 at 5.

Having effectively abandoned her effort to allege jurisdictional facts against Antoon or Tassillo individually, Plaintiff now attempts to claim they are the alter

---

[1] The arguments in the present motion are essentially the same for individual defendants Antoon and Tassillo, former CEO and COO, respectively, of one of the corporate defendants, 9219-1568 Quebec, Inc.  Accordingly, we make the present motion jointly in the interest of judicial economy and noting Judge Carney's admonition to avoid spending "multiple pages" that "repetitively walk through several district court cases" in support of arguments that are equally applicable to defendants.  ECF No. 167 at 8.

egos of several MindGeek entities.  She alleges that based on their former positions as officers of one of the MindGeek corporate defendants subject to this Court's jurisdiction (the "Non-Contesting Defendants") and as minority shareholders, the jurisdictional contacts of various MindGeek subsidiaries should be imputed to Antoon and Tassillo.  This effort fails because of the completely deficient allegations in the SAC and the absence of support in the jurisdictional discovery record.  The SAC does not allege facts that make a *prima facie* showing of any of the essential elements of an alter ego theory of personal jurisdiction.

Plaintiff fails to establish both prongs of her alter ego theory.  As to the first prong, Plaintiff cannot establish that continued respect of the corporate form would sanction a "fraud or promote injustice."  Plaintiff does not proffer any facts demonstrating misuse of the corporate form, let alone misuse that caused Plaintiff's alleged injury or deprived her of a right.  In almost every instance where a plaintiff attempts to invoke the alter ego doctrine, the plaintiff alleges that entities are undercapitalized and thus judgment-proof.  But Plaintiff does not attempt to make such allegations here; in fact, she alleges that MindGeek is a "dominant, monopolistic" company operating in a nearly $100 billion market.  Her conclusory theory of injustice—that MindGeek entities were structured to "escape liability"— has been rejected by the Ninth Circuit.  This deficiency alone is enough for this Court to reject Plaintiff's assertion of personal jurisdiction.

As to the second prong, Plaintiff fails to allege a "unity of interest and ownership" such that the separateness of the corporation and Antoon or Tassillo has effectively ceased.  Despite the benefits of discovery, Plaintiff once again resorts to impermissible group pleading regarding ultimate control of MindGeek— at times alleging that the majority shareholder, Bernd Bergmair, had ultimate control; at other times alleging that Bergmair, Antoon, and Tassillo had ultimate control; and at still other times alleging MindGeek's lenders had ultimate control.

1   Such contradictory allegations fail to demonstrate that Antoon or Tassillo

2   dominated every facet of MindGeek's business.

3       Turning to the substantive counts of the SAC, Plaintiff has also failed to

4   state a claim against either Antoon or Tassillo.  Like the earlier complaints in this

5   action, the SAC continues to engage in impermissible group pleading, failing to

6   put Antoon or Tassillo on notice of the allegations against them, and fails to state a

7   claim upon which relief can be granted as to any count.  Moreover, every one of

8   the SAC's claims against Antoon or Tassillo arise from content provided by a third

9   party to a website and seeks to hold the website liable as the publisher of that

10  content.  Claims such as these are precisely those that Congress intended to

11  preclude under Section 230 of the Communications Decency Act ("CDA"),

12  47 U.S.C. § 230, and fail for that reason.

13      Having failed to plead sufficient facts to support personal jurisdiction or

14  state a claim, the Court should dismiss Plaintiff's claims against Antoon and

15  Tassillo, without leave to amend.[2]

16  ## BACKGROUND[3]

17  **Procedural History**

18      On June 17, 2021, 34 plaintiffs commenced this lawsuit, asserting 19 causes

19  of action against seven MindGeek-related entities[4] (the "MindGeek Entity

---

20  [2] The Court should also dismiss Plaintiff's claims against Antoon and Tassillo for

21  the reasons set forth in concurrently filed memoranda of points and authorities
    submitted by the MindGeek Entity Defendants and Bernd Bergmair pursuant to

22  Federal Rules of Civil Procedure 12(b)(2), 12(b)(6) and 9(b), with which Antoon
    and Tassillo join.

23
    [3] For purposes of a motion to dismiss, the well-pleaded factual allegations in the

24  SAC are assumed to be true.  *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586,
    588 (9th Cir. 1996).  Antoon and Tassillo's recitation of the "facts" herein is based

25  on the allegations in the SAC, is made solely for the purposes of this motion, and
    does not speak to the accuracy of any allegation.

26  [4] These entities are MindGeek S.a.r.l., a Luxembourg holding company; MG

27  Freesites, Ltd., a Cypriot company; MindGeek USA Incorporated, a Delaware
    corporation; MG Premium Ltd., a Cypriot company; MG Global Entertainment, Inc.,

28

FERAS ANTOON AND DAVID TASSILLO'S MOTION TO DISMISS
CASE NO. 2:21-cv-4920

Defendants")[5], Visa, Inc., former MindGeek majority shareholder Bernd Bergmair, and two former executives of a Canadian MindGeek subsidiary and minority shareholders, Antoon and Tassillo (together with Bergmair, the "Individual Defendants").[6]  Plaintiff's first two complaints read like a T.V. movie script looking for headlines and viewership, loaded with inflammatory language and irrelevant allegations.  ECF No. 1 ¶¶ 3, 93, 136-47.  The SAC removes some, but not all of these references, but still fails to cure the fundamental defects in Plaintiff's claims.

On October 20, 2021, Antoon, Tassillo and the other defendants filed companion motions to dismiss the complaint for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted.  ECF Nos. 62, 67, 68, 69, 70.  Antoon and Tassillo, foreign defendants, argued that the complaint was devoid of allegations that they had the requisite minimum contacts with California or the United States, and that the complaint failed to state a claim against them. *See, e.g.,* ECF No. 67.

On November 1, 2021, the MindGeek Entity Defendants moved to sever and dismiss the plaintiffs on the basis that they had been improperly joined under Federal Rule of Civil Procedure 20(a).  ECF No. 75.  Antoon and Tassillo and the other Individual Defendants joined the motion to sever.  ECF Nos. 76, 81, 82, 86.

On February 10, 2022, the Court granted the MindGeek Entity Defendants' motion to sever and dismiss on the basis that Plaintiffs' claims did not arise out of

---

a Delaware corporation; and 9219-1568 Quebec, Inc., a corporation established under the laws of the Province of Québec.  *See* SAC ¶¶ 11-16.

[5] Plaintiff's SAC defines the MindGeek Entity Defendants as "MindGeek" but also defines the "MindGeek Defendants" to include both the entities and the Individual Defendants.  SAC at p. 1.  For clarity, this brief distinguishes between the "MindGeek Entity Defendants" and the "Individual Defendants."

[6] Plaintiff also previously brought claims against a Canadian MindGeek employee, Corey Urman.  The SAC has no claims against him.

the same series of transactions or occurrences because the

> alleged occurrences of sex trafficking, child pornography, and appropriation and misuse of likeness differ[ed] substantially in where the improper conduct allegedly occurred, how it occurred, and who perpetrated the conduct . . . . [The Plaintiffs] were victimized by different individuals . . . . [The Plaintiffs'] videos that were posted to MindGeek's platforms also were posted at different time periods. . . . [The] interactions with MindGeek [] var[ied] widely.

ECF No. 119 at 9-10.  The Court held that "Plaintiff Serena Fleites will continue as the only named Plaintiff in this action," and the Court dismissed without prejudice the claims of the other 33 plaintiffs.  *Id.* at 19.

On March 21, 2022, Plaintiff moved to amend the complaint to add and remove certain defendants, specifically "to (i) remove Defendant Traffic Junky Inc. as a separate defendant, (ii) remove defendant RK Holdings USA Inc., (iii) add defendant 9219-1568 Quebec, Inc. (d/b/a MindGeek), and (iv) substitute Colbeck Capital Does 1-10 and Bergmair Does 1-10 with Colbeck Capital Does 1-5 and Bergmair Does 1-5 respectively."  ECF No. 124-1 at 1.

On April 14, 2022, the Court granted Plaintiff's motion to amend to add and remove certain defendants and entered a joint stipulation setting forth a May 23, 2022 deadline to respond to the First Amended Complaint.  ECF No. 128.

On May 23, 2022, the Defendants again moved to dismiss Plaintiff's First Amended Complaint.  ECF Nos. 135, 136, 137, 138, 139, 140.  On July 29, 2022, the Court granted in part and denied in part Visa Inc.'s motion to dismiss, ECF No. 166, granted Plaintiff the opportunity to engage in jurisdictional discovery, and denied the other motions to dismiss without prejudice.  ECF No. 167 at 8.

In granting Plaintiff leave to amend a second time, "the Court urg[ed] Plaintiff and her counsel not to use this opportunity to further complicate this case," and to avoid "engag[ing] in scattershot, group pleading, largely failing to identify the MindGeek Defendants' ***individual*** roles in causing her harm."  ECF No. 168 at 2

5

(emphasis added).   The Court authorized jurisdictional discovery "to provide Plaintiff the information she needs to make a clear statement regarding the role and conduct of each MindGeek Defendant *separately*."  ECF No. 168 at 2 (emphasis added).   It further clarified that "*if jurisdictional discovery does not yield the information [Plaintiff] needs to clearly define a defendant's conduct as it relates to her harm, then that defendant should simply be dismissed so this case can proceed without further unnecessary delay*."  ECF No. 168 at 2 (emphasis added).

During jurisdictional discovery, Plaintiff served document requests, interrogatories and requests for admission, and took seven depositions.  Antoon and Tassillo each produced documents, answered interrogatories and requests for admission, and each sat for full-day jurisdictional depositions.[7]  The MindGeek Entity Defendants produced nearly 100,000 pages of documents, including emails, corporate structuring and financial documents, board minutes and resolutions, audit materials, policies and procedures, and more.  Jurisdictional discovery closed on June 16, 2023.  ECF No. 344.  Plaintiff filed her SAC more than 11 months later, on May 23, 2024.  ECF No. 387-1.

**MindGeek**

Plaintiff improperly lumps together six corporate defendants—mostly non-U.S. entities—and treats them as a single business entity called "MindGeek."  SAC at p. 1.  The "MindGeek" at issue in this case is the operator of various pornographic websites, including Pornhub.  SAC ¶ 11.

MindGeek's business model is similar to that of YouTube.  It offers free content, primarily videos uploaded by users and third-party businesses, and uses traffic generated by that content to (a) advertise additional pornographic sites that

---

[7] Plaintiff accuses Antoon and Tassillo of withholding documents in discovery.  SAC ¶ 373.  Like many of the accusations in the SAC, the claim lacks merit and is designed to insinuate impropriety without support.  Tellingly, despite accusing Antoon and Tassillo of withholding documents, Plaintiff does not identify the documents allegedly withheld.

FERAS ANTOON AND DAVID TASSILLO'S MOTION TO DISMISS
CASE NO. 2:21-cv-4920

offer paid content; (b) sell advertising for products; and (c) gather user data for marketing and development.  SAC ¶¶ 13-15, 38.  MindGeek has comprehensive terms of service, to which users are required to agree before using the site.  SAC ¶¶ 46-47.  It also employs moderators to screen the content on its websites, investigate and respond to complaints, and engage with law enforcement. *See, e.g.*, SAC ¶¶ 79, 201.

**The Second Amended Complaint**

According to the SAC, in 2014, Plaintiff was in the eighth grade when she learned that a sexually explicit video of her, which her then-high school boyfriend coerced her to make, was uploaded to Pornhub without her knowledge or consent. SAC ¶ 448.  The video was on the platform for an unspecified number of months before Plaintiff learned of its existence.  Plaintiff's efforts to have the video removed lasted several weeks.  SAC ¶ 450-53.  In the months before the video was removed, it was downloaded and reuploaded by different users and with different titles.  SAC ¶ 452.  At least one year later, when Plaintiff was still a minor, a different boyfriend manipulated her into making sexually explicit videos, which were uploaded to various websites, including Pornhub, without Plaintiff's consent.  SAC ¶¶ 457-58.

Setting aside the irrelevant allegations, the gravamen of the SAC is relatively straightforward.  Plaintiff alleges that MindGeek knew or should have known that the videos taken of her were illegally made and/or posted without her consent and should have taken the videos down more quickly. The remaining hundreds of paragraphs of allegations are distractions rife with innuendo, "shotgun" pleading, and conclusory statements. [8]

_____

[8] Antoon and Tassillo dispute the allegations of misconduct stated in the SAC, but recognize that the Court must, to the extent properly pled, accept them as true for the purposes of this motion.

**Feras Antoon and David Tassillo**

Feras Antoon and David Tassillo, both Canadian residents, are the former Chief Executive Officer and Chief Operating Officer, respectively, of 9219-1568 Quebec, Inc. ("9219 Inc.").[9]  SAC ¶¶ 18, 19.  Antoon and Tassillo both previously worked at a predecessor corporation, Manwin, which became MindGeek in 2013.  SAC ¶ 151.  Antoon and Tassillo became CEO and COO of 9219 Inc., in 2013, and acquired their minority equity interest the same year.  SAC FN 1, ¶¶ 18, 19, 151, 316-17.  9219 Inc., occasionally referred to as "MindGeek Canada," SAC ¶ 16, is a service company that provides managerial, administrative, engineering, sales, and other services to a number of other entities that in turn operate MindGeek's websites, including PornHub.[10]

Plaintiff alleges that both Antoon and Tassillo "exercised control over all [MindGeek] entities and their collective businesses, including being aware of, endorsing, and implementing the illegal activities alleged" in the SAC.  SAC ¶¶ 18, 19.  However, Antoon and Tassillo were minority shareholders in the group that controlled MindGeek.  *See* Tassillo Decl. ¶¶ 19-33.  At all times relevant to this action, the MindGeek Entity Defendants observed appropriate corporate formalities, kept separate bank accounts as to which neither Antoon nor Tassillo access, and were managed by their respective officers and directors.  Tassillo Decl. ¶ 34-38.  Antoon and Tassillo both signed separation agreement with 9219 Inc. in June 2022.  Tassillo Decl. ¶ 18.  In 2023, Antoon, Tassillo and majority shareholder Bernd

---

[9] Plaintiff incorrectly alleges Antoon and Tassillo stated in testimony before the Canadian Parliament that they were ██████████████████████████████████████ SAC ¶ 426.  Antoon made clear in his opening statement that he and Tassillo were CEO and COO "of Enterprise MindGeek Canada," referring to 9219-1568 Quebec, Inc.

https://www.ourcommons.ca/Content/Committee/432/ETHI/Evidence/EV11098412/ETHIEV19-E.PDF.

[10] 9219 Inc. provided services to multiple MindGeek operating companies and billed those companies on a cost-plus basis, subject to regularly conducted transfer-pricing studies.  *See* Andreou Decl. ¶¶ 15-16.

Bergmair sold their interests in MindGeek to an unrelated third party.  SAC at p. 1 n.1 & ¶¶ 18, 19; Tassillo Decl. ¶ 33.

Plaintiff asserts 14 causes of action against Antoon and Tassillo.

Four of Plaintiff's causes of action assert federal claims:  Counts I and IV allege violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1591(A)(1), 1591(A)(2), 1595, (Count I), SAC ¶¶ 463-75; 18 U.S.C. §§ 1594(c), 1595 (Count IV), SAC ¶¶ 499-507.  Counts V and VI allege violations of the federal child pornography possession and transportation statutes, 18 U.S.C. §§ 2252, 2255 (Count V), SAC ¶¶ 508-16; 18 U.S.C. §§ 2252A, 2255 (Count VI), SAC ¶¶ 517-28.

Plaintiff also asserts 10 California law claims against Antoon and Tassillo.  Count VII asserts a common law tort claim for public disclosure of private facts.  SAC ¶¶ 529-36.  Count VIII asserts a common law tort claim for intrusion into private affairs.  SAC ¶¶ 537-41.  Count IX asserts a common law tort claim for placing plaintiff in false light.  SAC ¶¶ 542-48.  Count X asserts a common law tort claim for misappropriation of name and likeness.  SAC ¶¶ 549-54.  Count XI asserts a statutory claim for misappropriation of name and likeness in violation of California Civil Code § 3344.  SAC ¶¶ 555-60.  Count XII asserts a statutory claim for distribution of private sexually explicit materials in violation of California Civil Code § 1708.85.  SAC ¶¶ 561-67.  Count XIII asserts a common law tort claim for negligence.  SAC ¶¶ 568-72.  Count XIV asserts statutory claim for violation of California Business and Professions Code §§ 17200, 17500.  SAC ¶¶ 573-83.  Count XV asserts a statutory claim for violation of California's Trafficking Victims Protection Act, California Civil Code § 52.5.  SAC ¶¶ 584-89.  Count XVI asserts a common law claim for civil conspiracy.  SAC ¶¶ 590-94.

## **LEGAL STANDARD**

As a threshold matter, Plaintiff bears the burden of making a *prima facie* showing of personal jurisdiction.  *Martinez v. Aero Caribbean*, 764 F.3d 1062,

9

1066 (9th Cir. 2014).  Under Rule 12(b)(2), when Plaintiff cannot make such a showing, the complaint must be dismissed.  *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141–42 (9th Cir. 2017).

   In addition, a complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Only specific factual allegations are accepted as true, not legal assertions, "[t]hreadbare recitals of the elements," or "conclusory statements." *Id.*

   Under Federal Rule of Civil Procedure 9(b), a party alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  Rule 9(b) applies not only to explicit claims of fraud, but also the parts of a complaint that are "said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003).  When alter ego allegations sound in fraud, they too must be pled with particularity under Rule 9(b). *Wimbledon Fund, SPC v. Graybox, LLC*, No. 15-CV-6633 (CAS) (AJWX), 2016 WL 7444709, at *5 (C.D. Cal. Aug. 31, 2016).[11]  Rule 9(b) "requires that a plaintiff plead 'the who, what, when, where, and how' of the alleged fraudulent activity." *Edwards v. Scott David Leonard, Gia's Life Fund, LLC*, No. 2:23-CV-04437 (WLH) (RAOX), 2023 WL 11664594, at *2 (C.D. Cal. Oct. 24, 2023)   (Hsu, J.) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)).

---

[11] Some district courts within the Ninth Circuit have concluded that when alter ego allegations do not *per se* allege fraud, those allegations are not subject to Rule 9(b). *See Ardente, Inc. v. Shanley*, No 3:07-CV-04479 (MHP), 2010 WL 546485, at *4 (N.D. Cal. Feb. 10, 2010) (declining to apply Rule 9(b) to alter ego claims).  Those cases are inapposite for two reasons.  *First*, a substantial number of Plaintiff's alter ego allegations allege fraud or a "sham," and thus must be pleaded with particularity in any event because they are either grounded in fraud or sound in fraud. *See, e.g.*, SAC ¶¶ 20, 21, 23, 149, 313, 316, 357-58, 464, 477, 490, 541, 548, 585, 574-82, 589.  *Second*, even if Rule 9(b) is inapplicable to Plaintiff's alter ego allegations, her allegations are still so vague, conclusory, and compound that they fail under Rule 8(a).

FERAS ANTOON AND DAVID TASSILLO'S MOTION TO DISMISS
CASE NO. 2:21-cv-4920

# ARGUMENT

The SAC should be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  Despite ample jurisdictional discovery and a third opportunity to plead legally sufficient claims, the SAC suffers from the same fatal defect as the original two complaints—the complete absence of specific factual allegations sufficient to make a *prima facie* showing of personal jurisdiction or to attribute unlawful conduct by Antoon or Tassillo that harmed Plaintiff. Plaintiff still does not plead facts sufficient to establish personal jurisdiction over Antoon or Tassillo in California or the United States, and Plaintiff has also failed to—and cannot—demonstrate that Antoon or Tassillo are the alter egos of any of the Non-Contesting Defendants.  Nor does Plaintiff meet basic notice pleading requirements, much less the heightened pleading standard applicable to claims that sound in fraud.

The SAC also fails under Rule 12(b)(6), as she does not state a claim upon which relief can be granted, and further because her claims are precluded by Section 230 of the CDA.  Congress intended to bar claims arising from precisely what happened here:  a third party's posting of content on a website.  None of the relevant exceptions to Section 230 are applicable.  For these reasons, and for the reasons discussed in detail below, the claims against Antoon and Tassillo should be dismissed in their entirety, without leave to amend.

## I.     THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER FERAS ANTOON OR DAVID TASSILLO

Plaintiff has failed in her third attempt to make a *prima facie* showing of personal jurisdiction over either Antoon or Tassillo.  As this Court has recognized: "personal jurisdiction is just that: ***personal***."  ECF No. 167 at 3 n.3 (emphasis in original).  This means that "a plaintiff must establish personal jurisdiction over each defendant individually," including in cases where "defendants are jointly liable."

11

FERAS ANTOON AND DAVID TASSILLO'S MOTION TO DISMISS
CASE NO. 2:21-cv-4920

1  *Billion Int'l Trading Inc. v. Universal Sportswear Inc.*, No. 2:12-CV-06705 (BRO)

2  (EX), 2013 WL 12403059, at *5 (C.D. Cal. Dec. 27, 2013) (citing *Sher v. Johnson*,

3  911 F.2d 1357, 1365 (9th Cir. 1990)); *see also Calder v. Jones*, 465 U.S. 783, 790

4  (1984) ("Each defendant's contacts with the forum State must be assessed

5  individually").

6      The SAC does not allege that Canadian citizens Antoon or Tassillo took any

7  action in, or directed any action toward, California or the United States, nor that

8  either of them took any action that related in any way to Plaintiff.  Thus, like her

9  prior two complaints, the SAC fails to plead sufficient factual allegations to support

10  an exercise of personal jurisdiction against Antoon and Tassillo individually.  *See,*

11  *e.g., In re Auto. Antitrust Cases I and II*, 135 Cal. App. 4th 100, 113 (2005)

12  ("Allegations of conspiracy do not establish as a matter of law that if one conspirator

13  comes within the personal jurisdiction of our courts, then California may exercise

14  jurisdiction over other nonresident defendants who are alleged to be part of that same

15  conspiracy. Personal jurisdiction must be based on forum-related acts that were

16  personally committed by each non-resident defendant.")

17

18      **A.    Jurisdictional Legal Standard**

19      A court's exercise of personal jurisdiction over a nonresident defendant must

20  have both a statutory and constitutional basis.  *Sher*, 911 F.2d at 1360–61; Fed. R.

21  Civ. P. 4(k).  Here, Plaintiff claims that each defendant, including Antoon and

22  Tassillo, is subject to the jurisdiction of the California courts pursuant to its long-

23  arm statute, Cal. Civ. Proc. Code § 410.10, and in the alternative, that they are

24  subject to jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2).  SAC ¶¶

25  29-37.  California's long arm statute permits the exercise of jurisdiction "on any

26  basis not inconsistent with the Constitution of this state or of the United States," Cal.

27  Civ. Proc. Code § 410.10, and thus "the jurisdictional analyses under [California]

28

state law and federal due process are the same." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

Rule 4(k)(2) provides a basis for jurisdiction when a defendant is not subject to the jurisdiction in any single state, but is subject to the jurisdiction of the United States as a whole. It permits a federal court to exercise personal jurisdiction over a defendant if that defendant is "not subject to jurisdiction in any state's courts of general jurisdiction" and that the exercise of jurisdiction would otherwise be consistent with the U.S. Constitution and laws. "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [the defendant] and the forum state, we consider contacts with the nation as a whole." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1072 (9th Cir. 2017) (quoting *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007)).

Plaintiff cannot establish that Antoon or Tassillo is subject to specific or general jurisdiction, either in California or the United States as a whole. To be subject to general jurisdiction, a defendant's affiliations with the forum state must be "so 'continuous and systematic' as to render [him] essentially at home in the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For individuals, the "paradigm forum" for personal jurisdiction is the individual's domicile. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017).

Plaintiff acknowledges that Antoon and Tassillo are residents of Canada and does not allege they have such systematic and continuous affiliations with the U.S. or California to render them essentially at home in either place. SAC ¶¶ 18, 19. Neither Antoon nor Tassillo can thus be subject to general jurisdiction in this Court. *See ScoreBlue, LLC v. Locum Tele PC,* No. 2:23-CV-00345 (WLH) (AS), 2024 WL 3304515, at *3 (C.D. Cal. May 29, 2024) (declining to exercise jurisdiction against

13

individual defendants, all of whom are domiciled outside California, as "Plaintiff argues that general personal jurisdiction exists over all the Defendants in California but does not present evidence to dispute Defendants' general personal jurisdictional arguments.")

Plaintiff also cannot establish specific jurisdiction over Antoon or Tassillo. Courts within the Ninth Circuit use a three-part test to establish specific personal jurisdiction over nonresident defendants:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022) (quoting *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741–42 (9th Cir. 2013)).

Plaintiff bears the burden of establishing the first two parts of the test, and if that burden is carried, the defendant must demonstrate a compelling case as to why the exercise of jurisdiction would not be reasonable. *Id.* When claims are asserted against a foreign defendant, a plaintiff "must meet a higher jurisdictional threshold than is required when the defendant is a United States citizen." *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993), *holding modified on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006).

**B.    Plaintiff Does Not Plead Any Facts Demonstrating Antoon or Tassillo Personally Directed Their Conduct at California or Availed Themselves of The Benefits of Doing Business Here**

As to the first prong of the test for specific jurisdiction, the SAC is devoid of factual allegations claiming that Antoon or Tassillo—as opposed to a MindGeek Entity or another defendant—directed their conduct at California or the United States.    The SAC devotes 10 paragraphs specifically to jurisdiction and venue allegations, but none of those paragraphs mention either Antoon or Tassillo by name. SAC ¶¶ 28-37.    Confusingly, many of these purported "jurisdictional" allegations refer only to "defendants" generally, without mentioning whether they are discussing the Individual Defendants, the MindGeek Entity defendants, the lender defendants, or Visa.    *See* SAC ¶¶ 29, 30, 31.

The allegations regarding "defendants" generally are so vague and conclusory (*e.g.*, that unspecified defendants "directed their activities at United States citizens and California residents," SAC ¶ 30), they cannot support any assertion of personal jurisdiction even if they did clearly identify which defendant they are discussing. "[A]llegations [which are] conclusory at best, are plainly insufficient to invoke personal jurisdiction."    *SEC v. Jammin Java Corp.*, No. 2:15-CV-08921 (SVW) (MRW), 2016 WL 6595133, at *11 (C.D. Cal. July 18, 2016).    It is also a "basic pleading defect for a complaint to 'lump' parties together and to fail to distinguish between named defendants." *Beatport LLC v. SoundCloud Ltd,* No. 2:19-CV-00847 (MRW), 2020 WL 3977602, at *5 (C.D. Cal. July 13, 2020).    These allegations do not support an exercise of personal jurisdiction against either Antoon or Tassillo.

Critically, the remainder of the SAC has *no other factual jurisdictional allegations* against Antoon or Tassillo.    The SAC does not allege that Antoon or Tassillo took any action directed at the United States or California, that they purposefully availed themselves of the privilege of doing business there, or even interacted with Plaintiff at all.    Without at least some such allegations, this Court may not exercise personal jurisdiction over Antoon and Tassillo in their individual

15

capacity.  *See ScoreBlue,* 2024 WL 3304515, at \*6 ("The proper analysis in tort cases looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.  The plaintiff cannot be the only link between the defendant and the forum.") (internal quotation marks and citations omitted).

As to the second prong of the specific jurisdiction test, Plaintiff has failed to plead facts that demonstrate that her claims "arise out of or relate to" any forum-related activities by Antoon or Tassillo.  *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 983 (9th Cir. 2021) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592, U.S. 351, 362 (2021)).  Plaintiff devotes substantial portions of the SAC to discussing matters that could not possibly arise from or relate to her claims.  This includes unrelated allegations that MindGeek paid for nonconsensual content that did not depict Plaintiff, SAC ¶¶ 136-47, and allegations concerning whether statements made by nonparties to either the press or on social media were accurate, SAC ¶¶ 198-244.  These allegations cannot be considered as supporting personal jurisdiction here, as they are entirely divorced from Plaintiff's claims.

Finally, although the Plaintiff has not met her pleading burden, it is clear that an assertion of jurisdiction over either Antoon or Tassillo would offend traditional notions of fair play and substantial justice.  It would be unreasonable to hale them into court in California without any well-founded allegation that either Antoon or Tassillo had contacts with the forum.  *Int'l Shoe Co.* v. *State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citing *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

### C.     Plaintiff Fails to Overcome the Fiduciary Shield Doctrine Because She Has Not Adequately Pled Personal Jurisdiction Under an Alter Ego Theory

Under the fiduciary shield doctrine, the Non-Contesting Defendants' contacts with California or the United States may not be imputed to Antoon or Tassillo.

FERAS ANTOON AND DAVID TASSILLO'S MOTION TO DISMISS
CASE NO. 2:21-cv-4920

*Abundant Living Fam. Church v. Live Design, Inc.*, No. 5:22-CV-00140 (RSWL) (MRW), 2022 WL 2176583, at \*2 (C.D. Cal. June 15, 2022).  Attempting to plead around this doctrine, Plaintiff alleges that the Non-Contesting Defendants' jurisdictional contacts should be imputed to Antoon and Tassillo under an alter ego theory of personal jurisdiction.  *See* SAC ¶¶ 18-19.  Plaintiff conclusorily alleges that the "entire structure" of the MindGeek business—which consists of "hundreds of subsidiaries, affiliates, and related parties located in dozens of jurisdictions throughout the world," including the Non-Contesting Defendants—is "a sham and the alter ego" of Antoon, Tassillo, and Bergmair (i.e., the Individual Defendants) and was created "for illegal purposes and to insulate the Individual Defendants from liability."  SAC ¶¶ 18-23.  Even with the benefit of jurisdictional discovery, the facts alleged in the SAC do not support Plaintiff's theory.

"A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities."  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003).  The corporate form "serves as a shield for the individuals involved for purposes of liability *as well as jurisdiction*."  *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) (emphasis added).  Under the "fiduciary shield" doctrine, a person's mere association with a corporation "is not sufficient in itself to permit [a] forum to assert jurisdiction over the person," even if the forum has personal jurisdiction over the corporation.  *Id.*  To ignore the corporate form, Plaintiff must "carr[y] a high burden" of establishing an exception to the fiduciary shield doctrine.  *Incipio, LLC v. Argento Sc By Sicura Inc.*, No. 8:17-CV-01974 (AG) (KES), 2018 WL 4945002, at \*2 (C.D. Cal. July 18, 2018) (citing *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003)).

Both prior to and following discovery, Plaintiff has alleged that Antoon and Tassillo were the "alter egos" of the Non-Contesting Defendants.  *See* ECF No. 151,

at 72-77; SAC ¶ 21.[12]  To obtain the "extreme remedy" of veil piercing on an alter ego theory and imputing the jurisdictional contacts of a corporation to its shareholders, *Hasso v. Hapke*, 227 Cal. App. 4th 107, 155 (2014), *as modified on denial of reh'g* (July 15, 2014), Plaintiff must make a *prima facie* showing that (1) there is "a unity of interest and ownership" between the corporation and the shareholder such that "the individuality, or separateness, of the said person and corporation has ceased," and that (2) continued respect of the corporate form "would sanction a fraud or promote injustice."  *In re Boon Glob. Ltd.*, 923 F.3d 643, 653 (9th Cir. 2019) (citation omitted).  An alter ego theory of personal jurisdiction is permitted "only in exceptional circumstances."  *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995) (citation omitted).

No such circumstances exist here.  As to the "injustice" prong, Plaintiff fails to allege a cognizable "fraud" or "injustice" as against her caused by the corporate form.  Even after discovery, Plaintiff does not allege that the MindGeek entities were undercapitalized such that she could not recover from the Non-Contesting Defendants or any other MindGeek Defendant.  Instead, she alleges a conclusory and circular theory of alter ego liability that the Ninth Circuit has rejected: that the entities are structured to "escape liability."  *See, e.g.*, *In re Boon Global Ltd.,* 923 F.3d at 654.

As to the "unity of interest and ownership" prong, Plaintiff once again resorts to impermissible group pleading regarding ultimate control of MindGeek—at times alleging that all Individual Defendants had control, *see, e.g.*, SAC ¶¶ 6, 14-16, 21, 149, 349, at other times alleging Bergmair had ultimate control as the majority shareholder, *see, e.g.*, SAC ¶¶ 109, 150, 157, 356, and at still other times alleging

---

[12] The First Amended Complaint did not allege, nor did Plaintiff argue, that Antoon or Tassillo were the "guiding spirit" behind the allegations giving rise to the complaint.  *See Davis*, 885 F.2d at 524 n.10; *Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.*, 880 F. Supp. 743, 750 (C.D. Cal. 1995) (emphasis added).  The SAC likewise includes no such allegations.

the Lenders had ultimate control, *see, e.g.*, SAC ¶¶ 251, 259, 270, 272.  Plaintiff's contradictory allegations do not plausibly demonstrate that Antoon or Tassillo "dictat[ed] every facet of the [company]'s business." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (citation omitted).  The fact that Antoon and Tassillo held a minority interest in MindGeek, while providing managerial services to various MindGeek entities, in no way amounts to a "unity of interest and ownership."

### 1.    The SAC Does Not Allege "Injustice" Generally or "Injustice" Caused by Acts of Antoon or Tassillo

The Court should dismiss the SAC as to Antoon and Tassillo solely based on Plaintiff's failure to allege a cognizable fraud or injustice.  Plaintiff's conclusory allegations that the corporate form was designed in 2013 to "avoid" U.S. pornography and tax laws has been rejected by the Ninth Circuit.

To state a claim for alter ego personal jurisdiction plaintiff must also allege that the shareholders used the corporate form "unjustly and in derogation of the plaintiff's interests." *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1135–36 (C.D. Cal. 2015) (quoting *Mesler v. Bragg Mgmt. Co.,* 39 Cal. 3d 290, 300 (1985)); *see also Butler v. Adoption Media, LLC*, 486 F. Supp. 2d 1022, 1071 (N.D. Cal. 2007) (same).  "Even if improper conduct of a shareholder is shown," a plaintiff "must demonstrate a relationship between the misconduct and the plaintiff's injury." *Hambleton Bros. Lumber Co. v. Balkin Enters.,* 397 F.3d 1217, 1228 (9th Cir. 2005) (citation omitted).  In other words, "a 'causal connection' must be shown." *Id.*

Plaintiff does not allege any facts demonstrating misuse of the corporate structure by Antoon, or Tassillo, or anyone else, that caused her injury or deprived her of a right.  "In almost every instance where a plaintiff has attempted to invoke the [alter ego] doctrine [s]he is an unsatisfied creditor." *Perfect 10, Inc. v. Giganews, Inc.*, No. 2:11-CV-07098 (AB) (JPR), 2015 WL 12710753, at *3 (C.D. Cal. June 3, 2015), *aff'd*, 847 F.3d 357 (9th Cir. 2017) (citations omitted).  But even with the benefit of discovery, Plaintiff does not allege that the Non-Contesting Defendants

were undercapitalized such that she cannot seek redress from the extant defendants. *See Boeing Co. v. KB Yuzhnoye*, No. 2:13-CV-00730 (AB) (AJW), 2016 WL 2851297, at *25 (C.D. Cal. May 13, 2016) ("Undercapitalization and insolvency are the most relevant factors in determining whether the corporation was established to defraud its creditors or [some] other improper purpose such as avoiding the risks known to be attendant to a type of business." (citation omitted)); *see, e.g.*, *Cummings v. Worktap, Inc.*, No. 4:17-CV-06246 (SBA), 2019 WL 4221652, at *12 (N.D. Cal. Sept. 4, 2019) (dismissing complaint where "the record does not show or suggest that the Individual Defendants utilized [the company]'s status as a corporation to bilk unsuspecting investors").

If anything, the SAC's allegations support the opposite inference: that the MindGeek entities were (and are) well-capitalized. *See, e.g.*, SAC ¶¶ 1 n.1, 406, 352 (alleging an investor ██████████████████████████████████████ and that the company was sold in 2023 to a third party ████████████████); SAC ¶¶ 495, 270 (alleging that the company had fully secured financing ████████████ ████████); SAC ¶¶ 2, 6, 34 (alleging MindGeek is "the dominant, monopolistic" company in an almost $100 billion market). Such an inference is consistent with financial documents produced during the jurisdictional discovery. *See* Sack Decl. ¶¶ 4-5; Andreou Decl. ¶¶ 26-53 (detailing Non-Contesting Defendants' capitalization).

Rather than allege how the Non-Contesting Defendants' capitalization undermines her interests, Plaintiff instead claims that "injustice" would result if Antoon and Tassillo were dismissed from the case because they would avoid "legal accountability." SAC ¶ 21. Plaintiff specifically alleges, in conclusory fashion, that MindGeek's corporate structure was designed in 2013 █████████████████████████ ████████████. *See, e.g.*, SAC ¶¶ 357, 313.

Plaintiff's claim relies on a theory of alter ego liability that the Ninth Circuit has rejected. "Conclusory allegations that [entities are structured] to escape liability

20

are insufficient" to satisfy the injustice prong. *In re Boon Global Ltd.,* 923 F.3d at 654. "That the entities were set up in order to avoid potential liability is irrelevant to the personal jurisdiction analysis here. Indeed, almost every business enterprise in the United States ultimately forms some sort of corporate entity for the purpose of avoiding personal liability." *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 994 n.9 (E.D. Cal. 2012). Moreover, Plaintiff's legal theory—that the corporate form was used to evade liability for the very causes of action that Plaintiff alleged—is circular and one that courts in this Circuit and other circuits have rejected. *See, e.g.*, *TradeWinds Airlines, Inc. v. Soros*, No. 1:08-CV-05901 (JFK), 2012 WL 983575, at *6 (S.D.N.Y. Mar. 22, 2012) ("This 'injustice' must consist of more than merely the tort or breach of contract that is the basis of the plaintiff's lawsuit."); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, No. 2:03-CV-01431 (PMP) (PAL), 2009 WL 455658, at *25 (D. Nev. Feb. 23, 2009) (stating that the "alleged illegal price manipulation cannot itself constitute the fraud or injustice necessary to pierce the corporate veil."); *Stewart v. Screen Gems-EMI Music, Inc.,* 81 F. Supp. 3d 938, 956–57 (N.D. Cal. 2015) (similar).

The SAC also suggests "tax evasion" as another supposed "injustice" caused by the corporate structure of MindGeek. *See, e.g.,* SAC ¶ 313. But this allegation fares no better: whether the corporate structure was designed to avoid U.S. tax laws has no bearing on Plaintiff's claims. "[T]he alter ego inquiry focuses on whether the corporate form was inequitably used under the particular circumstances of a given case, not simply whether the corporation maintained good standing for all purposes." *JPV I L.P. v. Koetting*, 88 Cal. App. 5th 172, 197 (2023), *review denied* (May 17, 2023). Although tax evasion is sometimes a relevant consideration in alter ego cases, that is only when, unlike here, the United States is the party claiming that the corporate structure worked an injustice. *See, e.g., Prompt Staffing, Inc. v. United States*, 321 F. Supp. 3d 1157, 1177 (C.D. Cal. 2018) (permitting the IRS to pierce the corporate veil because "[t]he purpose of the alter ego doctrine is to provide a

remedy to creditors against individuals who improperly hide behind the corporate veil"). Plaintiff's criticism of MindGeek's tax structure is irrelevant to personal jurisdiction on an alter ego theory.

In all events, the SAC still does not allege "specific manipulative conduct" *by Tassillo or Antoon* that deprived Plaintiff of a remedy against an appropriate defendant. *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1176 (C.D. Cal. 2016). To make a *prima facie* showing of personal jurisdiction on an alter ego theory, Plaintiff must allege what a specific defendant did to cause the relevant injuries. The Plaintiff has utterly failed to do that here. *See, e.g., Oakley, Inc. v. Trimera Mil. Tech., Inc*., No. 8:14-CV-01649 (DOC) (DFM), 2016 WL 8794459, at *8 (C.D. Cal. Jan. 22, 2016) (finding that the individual defendants cannot be held responsible for the undercapitalization of an entity for alter ego purposes because the plaintiff did not allege the individuals were involved in the initial incorporation of the company).

## 2. There Is No "Unity of Interest and Ownership" Between Antoon or Tassillo and Non-Contesting Defendants

The "unity of interest and ownership" prong of the alter ego doctrine requires Plaintiff to show that the relevant individual controls the company "to such a degree as to render the latter the mere instrumentality of the former." *See In re Boon Glob. Ltd.*, 923 F.3d at 653 & n.4 (quoting *Ranza*, 793 F.3d at 1073, and citing *Riddle v. Leuschner*, 335 P.2d 107, 110–12 (Cal. 1959)). To determine whether an individual (rather than a corporate parent) dominates the entity, courts weigh multiple factors. These factors include (i) "whether a single individual or family owned all of the corporate entity;" (ii) "whether the individual and the corporation commingled their assets or failed to segregate their funds;" (iii) "whether the individual utilized the corporation as a shell;" and (iv) "whether the individual treated corporate assets as his own." *Willick v. Napoli Bern Ripka & Assocs.,* No. 2:15-CV-00652 (AB) (E), *LLP*, 2019 WL 3064120, at *4 (C.D. Cal. Mar. 13, 2019). *See also Coste v. Fox Beverages USA Inc*., No. 2:23-CV-02053 (WLH) (RAOX), 2023 WL 8522987, at

*5 (C.D. Cal. Oct. 10, 2023) (finding as conclusory and insufficient alter ego allegations that the corporation was a mere shell and the individual defendant used corporate "assets for personal costs"); *Stephen Gould Corp. v. Osceola*, No. 2:22-CV-08347 (WLH) (AGR), 2023 WL 8254483, at *3 (C.D. Cal. Oct. 13, 2023) (dismissing alter ego allegations where complaint "is completely devoid of any of the above-mentioned factors.").

"Total ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Ranza*, 793 F.3d at 1073. Nor is it sufficient to allege that the corporation is "influenced and governed" by the shareholder. *In re L. Scott Apparel, Inc.*, 615 B.R. 881, 893 (C.D. Cal. 2020). Instead, there must be "such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased." *Id.*

Here, the SAC does not plausibly allege that Antoon and Tassillo (as minority shareholders) dominated or controlled any MindGeek entity, let alone that their control rendered the entity their mere instrumentality. To the contrary, the SAC's own allegations suggest that Antoon and Tassillo did not "dictat[e] every facet of the [company]'s business," *Ranza*, 793 F.3d at 1073 (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)). For example, the SAC states that Antoon and Tassillo

- ███████████████, SAC ¶ 111;

- consulted with and "took direction" from the "majority owner" who was the "ultimate decision maker on all material matters," SAC ¶¶ 109, 157, 200;

- were only "nominal owners" and vulnerable to demands from lenders, who had "effective control over the business" and who had the "right to receive virtually all of its earnings for the foreseeable future," SAC ¶ 259; and

- were vulnerable to demands by ████████████ ███████████████

1   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
    SAC ¶¶ 281, 283.

2

3        The jurisdictional discovery produced to Plaintiff similarly undermines

4   Plaintiff's allegation of dominance and control of the MindGeek entities.  Pursuant

5   to the governing services agreements, 9219 Inc. (and by extension Antoon and

6   Tassillo) provided managerial services to the MindGeek entities, and payments were

7   made consistent with those agreements, including by the Non-Contesting

8   Defendants.  *See* Sack Decl. ¶¶ 6-7, 12 (managerial agreement and fund transfers).

9   Accordingly, Plaintiff's allegations—which plainly contradict any claim that

10  Antoon or Tassillo dominated the Non-Contesting Defendants—should be the start

11  and end of the Court's analysis.  *See, e.g.*, *Leitner v. Sadhana Temple of New York,*

12  *Inc.*, No. 2:13-CV-07902 (MMM) (E), 2014 WL 12588643, at *17 (C.D. Cal. Oct.

13  17, 2014) (holding plaintiff did "not plausibly plead alter ego liability" because the

14  "allegations are contradictory").

15       Even if Plaintiff plausibly alleged control, the SAC still does not allege that

16  Antoon and Tassillo dominated the Non-Contesting Defendants such that their

17  corporate identities and separateness ceased to exist.  Plaintiff's allegations show

18  that the entities observed corporate formalities, as the entities

19



20  • ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

21  ▬▬▬▬▬, SAC ¶¶ 371-72, 386, 399;

22  • ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

23  SAC ¶¶ 407, 428, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

24  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬, SAC ¶¶ 407, 416; and

25  • ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

26  ▬▬▬▬▬ SAC ¶ 378.

27  The voluminous documents produced during jurisdictional discovery, most of which

28  Plaintiff ignores in the SAC, only further demonstrate the observance of corporate

formalities.  *See* Sack Decl. ¶¶ 8-11 (cataloging board minutes and resolutions, financial statements, intercompany agreements, investor presentations, auditor report, and pricing studies detailing information on MindGeek's business and organization); *see also* Antoon Decl. ¶¶ 38-48 (similar); Tassillo Decl. ¶¶ 32-47 (similar).

The SAC focuses primarily on whether certain MindGeek entities acted as alter egos to other MindGeek entities, *see, e.g.*, SAC ¶¶ 313-447, while "fail[ing] to appreciate . . . that pleading alter ego liability requires allegations of fact concerning the relationship between and among *the individuals and entities involved*." *Lennard v. Yeung*, No. 2:10-CV-09322 (MMM) (AGR), 2012 WL 13006214, at *8 (C.D. Cal. Feb. 23, 2012) (emphasis added and omitted).  Coincidentally, Plaintiff fails to allege specific facts regarding the relationship between Antoon and Tassillo, on the one hand, and the Non-Contesting Defendants, on the other, that even remotely supports domination or control, or an elimination of corporate separateness.  *See, e.g., Fair Hous. Council of Riverside Cnty., Inc. v. Grp. XIII Prop. LP*, No. 5:21-CV-00941 (JGB) (KK), 2023 WL 4680764, at *26 (C.D. Cal. Apr. 27, 2023) (dismissing action where the record did not establish that the individual defendants "are one and the same as the corporate entities they control").

The record here demonstrates the opposite: Antoon and Tassillo kept their affairs separate from the Non-Contesting Defendants.  Documents produced in discovery demonstrate that the Non-Contesting Defendants had (i) separate bank accounts from Antoon and Tassillo; (ii) were responsible for their own debts and that neither Antoon nor Tassillo held themselves out as personally liable for their debts; and (iii) operated as separate businesses since 2008.  *See* Antoon Decl. ¶¶ 12-43; Tassillo Decl. ¶¶ 8-37.

Plaintiff attempts to plead around the record by spinning common corporate practices into something nefarious.  For example, Antoon's and Tassillo's use of a third-party accountant for their personal finances simply reflects their positive view

of the accountant's work on corporate finances.    Likewise, a shareholders' agreement that specifies dividend distributions in different proportion than the shareholders' respective share of ownership is a common practice, particularly when certain shareholders perform additional functions at the corporate level.[13] California law expressly permits shareholders agreements of close corporations which relate to "division of its profits." Cal. Corp. Code § 300 (b); *see also* Antoon Decl. ¶¶ 20-36; Tassillo Decl. ¶¶ 20-21, 28.  Nor does Plaintiff allege what role, if any, Antoon and Tassillo had in creating the shareholders' agreement.  *See Pizana v. SanMedica Int'l LLC*, 345 F.R.D. 469, 488 (E.D. Cal. 2022) (dismissing complaint where "plaintiff essentially alleges that everyone did everything in a conclusory manner, without any supporting factual allegations").

It is likewise commonplace for the sole shareholders of a Special Purpose Vehicle ("SPV") that holds shares in a third company to manage the affairs of the third company, instead of acting only through the SPV's directors/officers.  *See* Tassillo Decl. ¶¶ 19-33.  This practice does not make the third company the alter ego of the shareholders.  Plaintiff insinuates that something was amiss, *see* SAC ¶¶ 374-85, but does not allege that such corporate practices are impermissible or even uncommon, or that either Antoon, Tassillo, or any director or officer of any SPV took any action inconsistent with the interests of that entity.  But even if similar practices were uncommon (they are not), allegations of shared ownership and management "are alone insufficient to establish the requisite level of control" under an alter ego theory.  *Ranza*, 793 F.3d at 1073.

In the absence of specific allegations about Antoon's or Tassillo's control and dominance, Plaintiff once again resorts to conclusory allegations and improper

---

[13] The SAC attempts to make this common practice sound nefarious by referring to the shareholders' agreement as an "Owners' Side Letter."  SAC ¶¶ 321.  The Court should reject this characterization.  The shareholders' agreement is not designated as a letter and was not somehow secret:  it was among the formal governing documents specifying how the MindGeek entities were to be managed.

FERAS ANTOON AND DAVID TASSILLO'S MOTION TO DISMISS
CASE NO. 2:21-cv-4920

group pleading regarding control of the defendant entities.  *See, e.g.,* SAC ¶ 315

███████████████████████████████████████████████████████

██████████████████████████████████████).  Courts routinely reject

such group pleading, particularly when personal jurisdiction is at issue.  *See, e.g.,*

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, No. 2:14-CV-

03053 (MWF) (AFM), 2015 WL 12777092, at *10 (C.D. Cal. Oct. 23, 2015)

(rejecting alter ego theory because generalized allegations based on group

membership are "insufficient to plausibly show [the individual defendant's] unity

and control over the alleged network, and the mere inclusion of [her] with the

[alleged network] does not overcome the deficiency");  *Jammin Java Corp.*, 2016

WL 6595133, at *11 (no alter ego jurisdiction where plaintiff "conclusorily lists [an

individual] as one of the participants in the [wrongful] scheme" but "fails to allege

in any more than conclusory language any personal conduct, if any, by these

defendants").

Plaintiff also alleges that Antoon and Tassillo engaged in "substantial self-

dealing" in using company assets for personal purposes without assigning a value—

even an approximate one—to the purported self-dealing.  *See* SAC ¶¶ 428, 429, 431,

434, 437, 429.  Despite receiving thousands of pages of financial information from

the MindGeek Entity Defendants and voluminous discovery materials from Antoon

and Tassillo, including deposition testimony and responses to discovery requests,

the SAC's allegations regarding Antoon's and Tassillo's supposed misuse of

company assets for personal matters still do not plausibly allege anything more than

a *de minimis* use of company resources.  *See, e.g., Art Attacks Ink, LLC v. MGA Ent.,*

*Inc.,* No. 3:04-CV-01035 (JAH) (BLM), 2009 WL 10672486, at *4 (S.D. Cal. Aug.

10, 2009) (denying addition of defendants under alter ego theory and recognizing

personal credit card charges were small "in relation to the total volume of charges"

on the credit card), *aff'd*, 581 F.3d 1138 (9th Cir. 2009).  Plaintiff does not allege,

or even suggest, that such use of company personnel for personal matters affected

the capitalization of the Non-Contesting Defendants or any MindGeek entity. *See United States v. Funds Held in the Name or for the Benefit of Wetterer*, 210 F.3d 96, 107–08 (2d Cir. 2000) (reversing alter ego finding where personal charges "were small relative to the income, expenditures and operations" of the company and "at worst . . . represent a misappropriation of the [company's] funds rather than an identity between its director and the corporation").

At bottom, Plaintiff has not alleged how Antoon and Tassillo could have maintained a "unity of interest and ownership" with certain MindGeek entities when their authority over the MindGeek group was delineated by a shareholders' agreement, employment agreements and service agreements, and limited in other ways by the lenders' credit facilities with onerous reporting requirements and strict financial covenants. *See Trans-World Int'l, Inc. v. Smith-Hemion Prods., Inc.*, 972 F. Supp. 1275, 1291 (C.D. Cal. 1997) ("[I]n every reported case in which a shareholder was held an alter ego of a corporation, that shareholder has been proven to be 'dominant,' in the sense of both owning a majority of stock and controlling the corporation's general finances and day-to-day operations."). Antoon's and Tassillo's compliance with the contracts governing their employment and shareholdings demonstrate precisely the opposite of what Plaintiff claims it does: observance of corporate formalities and respect for the corporate form. Plaintiff provides no basis for finding that either Antoon or Tassillo were alter egos of any Non-Contesting Defendant, which is fatal to her jurisdictional case.

***

In granting jurisdictional discovery, the Court wrote that Plaintiff should voluntarily dismiss Individual Defendants from the action if, after jurisdictional discovery, she cannot "clearly define a defendant's conduct as it relates to her harm." ECF No. 168 at 2. Plaintiff received the discovery she requested. Rather than heed the Court's directive, she continues to plead around the jurisdictional deficiencies in the record through group pleading and vague, scatter-shot allegations that fail to

establish alter ego jurisdiction for Antoon or Tassillo.  Because Plaintiff has not identified "any right that will be defeated" or "any prejudice she will suffer" as a result of Antoon's and Tassillo's dismissal from this action, the Court should do what Plaintiff has refused to do: dismiss Antoon and Tassillo from the case.  *See Wady v. Provident Life and Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1070 (C.D. Cal. 2002).

## II.   PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A.   Plaintiff's TVPRA Claims Fail

Plaintiff's claims under Counts I and IV of the SAC independently fail to state a claim.  Count I alleges sex trafficking in violation of 18 U.S.C. §§ 1591, 1595.  Section 1591 is a criminal prohibition on sex trafficking, while Section 1595 permits civil actions for damages.  Section 1591 contains two trafficking offenses:  Direct liability in Section 1591(a)(1), and beneficiary liability in Section 1591(a)(2).

***Direct Liability.***  "To state a claim for direct perpetrator liability, a plaintiff must allege the defendant knowingly (1) 'recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means ***a person***,' knowing or recklessly disregarding that the person may be a minor and 'will be caused to engage in a commercial sex act.'"  *Doe v. Grindr Inc.*, No. 2:23-CV-02093 (ODW) (PD), 2023 WL 9066310, at *6 (C.D. Cal. Dec. 28, 2023) (emphasis added).  Under the plain language of Section 1591(a)(1), to state a direct liability claim, a plaintiff must allege conduct that relates to a person, and not to videos.  *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 915 (N.D. Cal. 2021) (holding that allegations of conduct relating to videos, and not to a person, fails to state a Section 1591(a)(1) claim), *aff'd in part, rev'd in part and remanded sub nom. Doe #1 v. Twitter, Inc.*, No. 22-15103, 2023 WL 3220912 (9th Cir. May 3, 2023).

Plaintiff's claim fails for the same reason the claims in *Twitter* failed:  she does not allege that any defendant engaged in any action regarding her person.

FERAS ANTOON AND DAVID TASSILLO'S MOTION TO DISMISS
CASE NO. 2:21-cv-4920

Plaintiff does not even allege that she had any interactions with either Antoon or Tassillo. Instead, she alleges that "[t]he MindGeek Defendants recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, or solicit ***videos and images depicting CSAM*** on their websites." SAC ¶ 467 (emphasis added). This is not sufficient to state a direct liability claim under Section 1591(a)(1).

***Beneficiary Liability***. Plaintiff also fails to state a claim for beneficiary liability. Beneficiary liability "punishes anyone who 'knowingly . . . benefits, financially or by receiving anything of value, from participation in a venture which has engaged in [a sex trafficking act], knowing . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act . . . .'" *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) (quoting 18 U.S.C. § 1591(a)(2)). To state a claim, a plaintiff must allege that a defendant "knowingly benefit[s] from knowingly participating in child sex trafficking." *Id.* This "requires actual knowledge and 'a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit.'" *Id.* (quoting *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019)).

Here, Plaintiff does not allege actual knowledge of any sex trafficking venture concerning Plaintiff, or any affirmative conduct furthering the venture concerning Plaintiff. Plaintiff spends much of Count I demonstrating the MindGeek Entity Defendants' alleged constructive knowledge, SAC ¶¶ 468-71, but at no point does Plaintiff allege actual knowledge of a sex trafficking venture concerning her or affirmative conduct furthering that venture. The absence of these allegations is fatal to Plaintiff's beneficiary liability claim. *Doe v. Twitter, Inc.*, No. 3:21-CV-00485 (JCS), 2023 WL 8568911, at *8 (N.D. Cal. Dec. 11, 2023) (dismissing beneficiary liability claim for lack of actual knowledge and participation in sex trafficking venture; allegations of general knowledge of CSAM on Twitter was insufficient).

Count IV also fails. In Count IV, Plaintiff alleges that all defendants conspired to benefit from the monetization of CSAM, in violation of 18 U.S.C. §§

30

1594(c), 1595.  SAC ¶ 500.  Although she does not identify a specific offense that was the object of the conspiracy, she alleges the acts in Counts I-III, which are all alleged to be in violation of Section 1591, were "overt acts in furtherance" of the conspiracy, suggesting that a violation of that section is the object offense.  SAC ¶ 501.  To state a claim under Section 1594(c), Plaintiff must "allege facts that plausibly show that the defendants 'entered into a joint enterprise with consciousness of its general nature and extent.'"  *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430, 440 (E.D.N.Y. 2017) (quoting *Stein v. World-Wide Plumbing Supply Inc.*, 71 F. Supp. 3d 320, 330 (E.D.N.Y. 2014)).  Plaintiff cannot do so because she cannot plead the necessary facts.

The SAC falls short in that it provides no specific facts regarding what role, if any, either Antoon or Tassillo is alleged to have played in any purported agreement to violate the sex trafficking laws.  Accordingly, Plaintiff has not pled that they had actual knowledge of any trafficking, and certainly cannot allege that any defendant entered into an agreement to traffic her person in violation of Section 1591(a)(1).  Without actual knowledge of the trafficking, Plaintiff cannot claim that Antoon or Tassillo were conscious of the general nature and extent of any conspiracy.

Because none of the sex trafficking causes of action contains sufficient "facts to give fair notice" of what Antoon or Tassillo allegedly did wrong, *see Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (citation omitted), Plaintiff's Counts I and IV should be dismissed as to Antoon and Tassillo.

***Extraterritoriality***.  Plaintiff's TVPRA claims also fail because she fails to allege that they apply extraterritorially to Antoon, Tassillo or any other defendant.  "It is a 'longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'"  *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) (quoting *EEOC v. Arabian American Oil Co.,* 499 U.S. 244, 248 (1991)).  To

31

determine when a statute applies extraterritorially, a court first asks "whether the statute gives a clear, affirmative indication that it applies extraterritorially." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 337 (2016). If it does not, the court asks whether the asserted application of the statute is domestic or not. *Id.*

While Section 1595 is silent on its extraterritorial application, Section 1596 states that Section 1591 applies extraterritorially if "(1) an alleged offender is a national of the United States or an alien lawfully admitted for permanent residence," or if "(2) an alleged offender is present in the United States, irrespective of the nationality of the alleged offender." 18 U.S.C. § 1596(a). Plaintiff does not allege that either of these categories applies to Antoon, Tassillo, or even any foreign entity. Her claims against Antoon and Tassillo therefore must be dismissed as impermissible extraterritorial applications of Sections 1591 and 1595. *Doe v. Webgroup Czech Republic, A.S.*, No. 2:21-CV-02428 (SPG) (SK), 2024 WL 3533426, at *10 (C.D. Cal. July 24, 2024) (dismissing domestically trafficked plaintiff's claims against foreign websites as extraterritorial applications of the TVPRA).

## B.    Plaintiff's 18 U.S.C. § 2252 Claims Fail

Counts V and VI assert civil claims under the federal criminal provisions prohibiting the receipt, transport, and possession of child pornography. With respect to these alleged child exploitation materials ("CSEM") offenses, Plaintiff fails to plead, as she must, that Antoon or Tassillo "knowingly" received, transported, or possessed such materials. *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994). Plaintiff has not made any allegation pertaining to Antoon or Tassillo and CSEM, and certainly not that Antoon or Tassillo knew the videos at issue contained CSEM prior to Plaintiff's takedown request. The SAC lacks allegations that Antoon or Tassillo had any involvement with Plaintiff's videos or played a role in causing her injuries. Indeed, the SAC has no allegations that either Antoon or Tassillo were aware that Plaintiff was a minor at the time her videos were made. Nor is it plausible

that as the CEO and COO of a service company for a large website, Antoon and Tassillo, respectively, would have this knowledge or even would know of the existence of one individual's videos on a website containing several million consensual adult videos.  Accordingly, Plaintiff fails to state a claim because the statute requires that she be "aggrieved by reason of" the knowing receipt, transport, or possession of CSEM.  18 U.S.C. § 2252A(f)(1).

### C.    Plaintiff's State Law Claims Fail

**Counts VII, VIII, and IX (Public Disclosure of Private Facts, Intrusion into Private Affairs and Placing Plaintiff in a False Light):** Regarding all the common law and state law torts alleged in the Amended Complaint against Antoon and Tassillo, "[d]irectors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong." *United States Liab. Ins. Co. v. Haidinger–Hayes, Inc.,* 1 Cal. 3d 586, 595 (1970).  The SAC is silent as to Antoon's or Tassillo's alleged participation in any wrongful acts.  Plaintiff makes only group and conclusory allegations about Antoon and Tassillo, including discussing their roles as CEO and COO, and that association cannot form the basis of individual tort liability.  *See Frances T. v. Vill. Green Owners Assn.*, 42 Cal. 3d 490, 503 (1986) ("It is well settled that corporate directors cannot be held vicariously liable for the corporation's torts in which they do not participate.  Their liability, if any, stems from their own tortious conduct, not from their status as directors or officers of the enterprise." (emphasis omitted)).  For this reason alone, the common law and state law torts directed against Antoon and Tassillo fail.

Even if Plaintiff could sufficiently plead her claims, courts routinely hold that the basis for these kinds of privacy torts presupposes the website's "role as a 'republisher' of material posted by a third party," and therefore, they are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230, as discussed below. *See, e.g., Caraccioli v. Facebook, Inc*., 700 F. App'x 588, 590 (9th Cir. 2017)

(holding claims against Facebook for intrusion into private affairs and false light, among others, based on Facebook's refusal to remove private photos and videos of the plaintiff from Facebook, was barred under Section 230).

**Counts XII and XIII (Common Law and California Statutory Commercial Misappropriation):** In Counts XII and XIII, Plaintiff fails to adequately allege the elements of a misappropriation claim under common law or under California Civil Code § 3344 against Antoon or Tassillo. The SAC does not contain any allegation that Antoon or Tassillo appropriated Plaintiff's name or likeness, or that they used her identity, knowingly or otherwise, for a commercial purpose. Accordingly, these claims should be dismissed due to a lack of allegations against Antoon and Tassillo.

**Count XIV (Cal. Civ. Code § 1708.85):** Count XIV is also deficient. The California statute provides a private right of action "against a person who intentionally distributes" private sexually explicit materials "without the other's consent" if "the person knew, or reasonably should have known, that the other person had a reasonable expectation that the material would remain private." Cal. Civ. Code § 1708.85. But the SAC has no allegation that Antoon or Tassillo "intentionally distribute[d]" videos or images depicting Plaintiff, or that they even knew these materials existed. Accordingly, Plaintiff has failed to plead a claim under Section 1708.85 against Antoon or Tassillo.

**Count XIII (Negligence):** Count XIII fails because Plaintiff has not alleged any legal duty owed to her by Antoon or Tassillo, much less any acts that would constitute a breach of that duty. Absent from the SAC is any allegation from which the Court could conclude that a special relationship existed between either Antoon or Tassillo and Plaintiff. Courts consistently decline to find special relationships between websites and those injured by third-party uploads to such websites. *See, e.g.*, *Doe v. MySpace*, *Inc*. 474 F. Supp. 2d 843, 846, 852 (W.D. Tex. 2007), *aff'd*, 528 F.3d 413 (5th Cir. 2008) (dismissing negligence claims because Myspace did

not owe a legal duty to parents of a teenager who was raped to protect their daughter from criminal acts "nor to institute reasonable safety measures on its website"). The point is even more stark with respect to a purported injured third-party user and the CEO or COO of the service company that supports that website. Accordingly, Count XIII should be dismissed due to a lack of allegations against Antoon and Tassillo individually.

**Count XIV** (**Cal. Bus. & Prof. Code §§ 17200 and 17500):** Plaintiff's Unfair Competition Law claim is insufficiently pleaded because Plaintiff has not alleged any specific unlawful acts by Antoon or Tassillo. In addition, because Plaintiff's claim is premised on an alleged misrepresentation, it also fails to meet Rule 9(b)'s requirements because she does not allege with particularity any specific misrepresentation made by Antoon or Tassillo. *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 320 & 322-25 (2011); *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1244 (N.D. Cal. 2017). Given the lack of individual allegations against Antoon or Tassillo, Count XIV should be dismissed as against them.

**Count XV (California's Trafficking Victims Protection Act ("CTVPA") Cal. Civ. Code § 52.5):** Plaintiff's California Trafficking Victims Protection Act Claim fails for the same reason her direct liability TVPRA claim fails: there is no allegation that any defendant took any action against her person. The CTVPA provides a civil cause of action for victims "of human trafficking, as defined in Section 236.1 of the Penal Code." Cal. Civ. Code § 52.5(a). Section 236.1 of the Penal Code in turn, contains three offenses in subsections (a)-(c), each of which require some act against a "person." Additionally, unlike the federal TVPRA, there is no beneficiary liability under the CTVPA. "The text of the state statutory provisions does not provide for liability against a beneficiary of a trafficking scheme, rather than a perpetrator." *SASA MASLIC, et al. v. ISM VUZEM D.O.O.*, No. 5:21-CV-02556 (BLF), 2024 WL 3408217, at *7 (N.D. Cal. July 11, 2024). Plaintiff's

CTVPA claim therefore must be dismissed because she does not allege that any defendant—much less Antoon or Tassillo—took any action against her person.

**Count XVI (Civil Conspiracy):** Plaintiff's civil conspiracy claim fails because, under California law, civil conspiracy is not a separate and distinct tort cause of action. *See, e.g., Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994) (stating that, "Conspiracy is not an independent tort; it cannot create a duty or abrogate an immunity. It allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law principles."); *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997) (stating that "merely alleging underlying tort causes of action is clearly insufficient to support a conspiracy cause of action").

### III. SECTION 230 IMMUNITY EXTENDS TO ANTOON AND TASSILLO

Finally, Plaintiff's claims against Antoon and Tassillo are barred by Section 230 of the CDA. 47 U.S.C. § 230(c)(1). Congress enacted Section 230 to "immunize[] providers of interactive computer services against liability arising from content created by third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc). "Today, the most common interactive computer services are websites." *Id.* at 1162 n.6.[14] The statute states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Under the law of this circuit, when a plaintiff asserts a claim against "(1) a provider or user of an interactive computer service, (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker, (3) of information provided by another information

---

[14] "The term 'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2).

36

content provider," such a claim will fail. *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009), *as amended* (Sept. 28, 2009)).[15]

Plaintiff's claims fail this test. First, there is no dispute that Plaintiff's claims arise from the use of a website, an interactive computer service. SAC ¶ 38. Second, Plaintiff seeks to treat the MindGeek Entity Defendants—and by extension Antoon and Tassillo—as publishers. A claim seeks to treat a website as a publisher if the duty that a defendant allegedly violated would require the defendant to monitor third party content. *Barnes*, 570 F.3d at 1103. If that duty requires monitoring third party content, the claim seeks to treat a defendant as a publisher. *Calise*, 103 F.4th at 742.

Here, Plaintiff's claims seek to hold Defendants liable for publishing sexually explicit videos of her while she was a minor. SAC ¶¶ 448-62. Defendants could avoid liability for these claims only by reviewing the Plaintiff's content, and thus Plaintiff's claims seek to treat defendants as a publisher.

Third, there can be no dispute that the videos of Plaintiff were provided by another information content provider. 47 U.S.C. § 230(f)(3). Plaintiff expressly alleges that either her two ex-boyfriends (or perhaps even Plaintiff herself) created the sexually explicit videos of her. SAC ¶ 448 ("a nude, sexually explicit video her high school boyfriend had coerced her to make months earlier had been uploaded to Pornhub without her knowledge or consent."); SAC ¶ 457 (Plaintiff's second ex-boyfriend manipulated her "into creating sexually explicit videos of herself."). Plaintiff does not allege that any MindGeek Entity uploaded these videos to Pornhub, but rather that unidentified third parties did. SAC ¶¶ 448, 458. Her claims

---

[15] Section 230 also precludes federal causes of action. *See Twitter*, 2023 WL 8568911, at *8 (18 U.S.C. §§ 1591(a), 1595, 2252A, 2255 claims precluded by Section 230); *Zhang v. Twitter Inc.*, No. 3:23-CV-00980 (JSC), 2023 WL 5493823, at *4 (N.D. Cal. Aug. 23, 2023) (18 U.S.C. §§ 2252, 2252A, 2257 claims are "barred by Section 230.").

against Antoon and Tassillo therefore flow from an attempt to hold an interactive computer service liable as a publisher, and are precluded by Section 230.

Plaintiff also cannot demonstrate that any exception to Section 230 applies. Two such exceptions are relevant, even though neither are applicable here. First, even if a website is immune for content provided by third parties, it can still be liable for content that [a website] "creates itself, or is 'responsible, in whole or in part' for creating or developing, the website is also a content provider," and can be held liable notwithstanding Section 230. *Roommates*, 521 F.3d at 1162. Although Plaintiff spends much of her complaint claiming that the MindGeek Entity Defendants solicit and encourage the posting of unlawful material, when a website merely provides "a neutral platform that did not specify or prompt the type of content to be submitted," it cannot be considered the creator or developer of that content. *Gonzalez v. Google LLC*, 2 F.4th 871, 895 (9th Cir. 2021), *vacated and remanded,* 598 U.S. 617 (2023). Similarly, when a website treats legal and illegal content equally and merely "provides neutral tools that a user exploits" it "does not become a developer of content." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1099 (9th Cir. 2019).

This is precisely what the SAC alleges. Plaintiff alleges the MindGeek Entities treat illegal content in the same way that they treat legal content. The core of Plaintiff's allegations against the MindGeek Entities is that they operated an "'unrestricted content' SEO model that knowingly and intentionally solicited, optimized, and commercialized content of any kind," and that they "incorporated all illegal content into its SEO process *just like it did all other legal content*." SAC ¶¶ 57, 113) (emphasis added). Although Plaintiff claims that these practices resulted in illegal, nonconsensual content being uploaded to the MindGeek Entities' websites, she expressly alleges that the MindGeek Entities treated "nonconsensual content just like all other content." SAC ¶ 149. Plaintiff does not allege that any of the features of the MindGeek Entities websites were designed to differentiate illegal

content from legal content, but rather alleges the opposite:  that legal and illegal content was treated in the same way.  These allegations preclude Plaintiff from treating any MindGeek Entity as an independent information content provider.

Plaintiff also does not qualify for the TVPRA exception to Section 230.[16] The TVPRA exception to Section 230 states that Section 230 immunity shall not "be construed to impair or limit– (A) any claim in a civil action brought under section 1595 of Title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title." 47 U.S.C. § 230(e)(5).  The TVPRA exception to Section 230 immunity "requires that a defendant-website's own conduct violate 18 U.S.C. § 1591," not merely that the website benefits from other trafficking that is subject to liability under Section 1595, but not Section 1591. *Does 1-6 v. Reddit*, 51 F.4th at 1145.  Here, for the reasons identified in Section II.A, *supra*, Plaintiff fails to state a claim under Section 1591 and therefore cannot qualify for the TVPRA exception to Section 230.  Plaintiff's claims must therefore be dismissed for this reason.

A recent case in this district has endorsed this understanding of Section 230 immunity.  On July 24, 2024, in a case alleging that sexually explicit videos of a minor were uploaded to a foreign defendant's pornographic websites, Judge Garnett concluded that Section 230 barred the claims. *Webgroup Czech Republic,* 2024 WL 3533426, at *9.  Judge Garnett ultimately granted plaintiff leave to amend because the Ninth Circuit decided *Does 1-6 v. Reddit* after the plaintiff filed the operative complaint.  Here, however, Plaintiff filed the SAC well after *Does 1-6 v. Reddit* was decided, and thus a similar opportunity to amend is not justified.

---

[16] The Court does not need to reach the TVPRA exception to Section 230 unless it concludes that Section 230 applies to Plaintiff's claims, and that the content creator exception does not apply.  If the Court finds that only the TVPRA exception to Section 230 applies, *a fortiori* Plaintiff's remaining, non-Section 1591 claims must be dismissed as barred by Section 230.

## CONCLUSION

For the reasons discussed above, Feras Antoon and David Tassillo respectfully request that the Court dismiss the SAC for lack of personal jurisdiction without leave to amend or, in the alternative, with prejudice for failure to state a claim.

DATED: August 30, 2024        Respectfully Submitted,


                              By:  /s/ Jonathan S. Sack

                              MORVILLO ABRAMOWITZ GRAND
                              IASON & ANELLO PC
                              Jonathan S. Sack (*pro hac vice*)
                              Alexander F.R. Peacocke (*pro hac vice*
                              pending)

                              *Attorneys for Specially Appearing
                              Defendant David Tassillo*


                              COHEN & GRESSER LLP
                              Jason Brown (*pro hac vice*)
                              Matthew V. Povolny (*pro hac vice*)
                              Joanna Chan

                              *Attorneys for Specially Appearing
                              Defendant Feras Antoon*

                              WIECHERT, MUNK & GOLDSTEIN, PC
                              David Wiechert (SBN 94607)

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for defendant David Tassillo, certifies that this brief contains fewer than forty (40) pages, as required by this Court's August 2, 2024, order, ECF No. 424.

DATED: August 30, 2024        By:  /s/ Jonathan S. Sack

# CERTIFICATE OF SERVICE

I, Yesenia Ruano, an employee of Morvillo, Abramowitz, Grand, Iason & Anello, PC, located at 565 Fifth Avenue, New York, NY 10017, declare under penalty and perjury that I am over the age of eighteen (18) and not a party to the above-entitled proceeding.

On August 30, 2024, I served the forgoing documents, described as **SPECIALLY APPEARING DEFENDANTS FERAS ANTOON AND DAVID TASSILLO'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; [PROPOSED] ORDER** on all interested parties as follows:

**BY E-MAIL:**  I caused the document(s) to be transmitted electronically by filing the forgoing with the clerk of the District Court using the CM/ECF system, which electronically notifies counsel for all parties.  Additionally, I filed the unredacted, sealed versions of this motion and it supporting memorandum of points and authorities, and the supporting declarations of Feras Antoon, David Tassillo, and Jonathan S. Sack, Esq., to counsel of record for all parties who have appeared in this action via email.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 30, 2024, at New York, New York.

/s/ *Yesenia Ruano*
Yesenia Ruano

---

CERTIFICATE OF COMPLIANCE
CASE NO. 2:21-cv-4920