David G. Hille (*pro hac vice*)
dhille@whitecase.com
Kevin C. Adam (*pro hac vice*)
kevin.adam@whitecase.com
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY  10020-1095
Telephone:   (212) 819-8357
Facsimile:    (212) 354-8113

Russell J. Gould (SBN 313352)
russell.gould@whitecase.com
WHITE & CASE LLP
555 S. Flower Street, Suite 2700
Los Angeles, CA  90071-2433
Telephone:  (213) 620-7700
Facsimile:   (213) 452-2329

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| SERENA FLEITES,<br><br>Plaintiff,<br><br>v.<br><br>MINDGEEK S.A.R.L., et al.,<br><br>Defendants. | Case No. 2:21-cv-4920-WLH-ADS<br><br>Hon. Wesley L. Hsu<br><br>**DEFENDANTS COLBECK CAPITAL MANAGEMENT, LLC; CB MEDIA VENTURES DD, LLC; CB AGENCY SERVICES, LLC; AND CB PARTICIPATIONS SPV, LLC'S:**<br><br>**(1)  NOTICE OF MOTION AND MOTION TO DISMISS; AND**<br><br>**(2)  MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Concurrently filed with Declaration of David G. Hille and [Proposed] Order*<br><br>Hearing:     November 22, 2024<br>Time:         1:30 p.m.<br>Courtroom: 9B |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on November 22, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Wesley L. Hsu, United States District Court, Courtroom 9B, 350 W. First Street, Los Angeles, California 90012, Defendants Colbeck Capital Management, LLC; CB Media Ventures DD, LLC; CB Agency Services, LLC; and CB Participations SPV, LLC (collectively, "CB Defendants") will and hereby do move for an order, under Rules 8(a), 9(b), 12(b)(1), 12(b)(6), and 15(a)(2) of the Federal Rules of Civil Procedure, to dismiss with prejudice the Second Amended Complaint, ECF No. 387-1 ("SAC"), filed by Plaintiff Serena Fleites.

The CB Defendants make this Motion on the grounds that Plaintiff lacks standing to assert a claim against the CB Defendants under Article III, Section 2, Clause 1 of the U.S. Constitution and that Plaintiff fails to state a claim for relief against the CB Defendants.  The CB Defendants request that the Court dismiss all claims against them in the SAC without leave to amend:  (1) Count III—violation of 18 U.S. Code Sections 1591 and 1595 of the Trafficking Victims Protection Reauthorization Act ("TVPRA"); (2) Count IV—violation of 18 U.S. Code Sections 1594(c) and 1595 of the TVPRA; (3) Count XIV—violation of California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL") under Sections 17200 and 17500 of the California Business and Professions Code; and (4) Count XVI—civil conspiracy.

The CB Defendants base their Motion on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Declaration of David G. Hille, with Exhibits A-C; all pleadings and other papers filed in this action; and all other matters of which the Court may take judicial notice.

Pursuant to Local Civil Rule 7-3, this Motion is made following the conference of counsel, which took place on August 22, 2024.

AMERICAS 127550937

1    Dated:  August 30, 2024                    WHITE & CASE LLP

2

3                                              By: _David G. Hille_____
                                                      David G. Hille
4

5                                              Attorneys for Defendants
                                               COLBECK CAPITAL
6                                              MANAGEMENT, LLC; CB MEDIA
                                               VENTURES DD, LLC; CB AGENCY
7                                              SERVICES, LLC; and CB
                                               PARTICIPATIONS SPV, LLC
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

**Page(s)**

I.  PRELIMINARY STATEMENT ........................................................................ 1

II.  BACKGROUND ........................................................................................... 3

    A.  Plaintiff Alleges Third Parties Posted Sexually Explicit Videos of Plaintiff as a Minor That Appeared on MindGeek Websites in 2014 and in 2020 ....................................................................... 3

    B.  Plaintiff Alleges, Through Group-Pleading, That the CB Defendants—Along With Many Other Third-Party Lenders—Issued Loans to MindGeek in 2011 and 2013 ........................................ 3

    C.  Three Years After Filing the Initial Complaint, Plaintiff Files the SAC and Names the CB Defendants ................................ 5

    D.  Plaintiff's Allegations in the SAC Against the CB Defendants Are Conclusory, Implausible, and Contradicted by Other Allegations and the Loan Agreements ................................... 6

III.  PLAINTIFF LACKS STANDING BECAUSE PLAINTIFF'S ALLEGED INJURIES ARE NOT FAIRLY TRACEABLE TO ANY CB DEFENDANT ..................................................................... 10

IV.  PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE CB DEFENDANTS UNDER RULE 12(B)(6) ......................................... 14

    A.  Plaintiff Fails to Plead a Claim Under the TVPRA Against the CB Defendants .......................................................... 15

        1.  There Is No Beneficiary Claim Because the CB Defendants Did Not Knowingly Participate In, or Benefit from, a Sex-Trafficking Venture—Nor Should They Have Known of Plaintiff's Alleged Trafficking....................... 16

        2.  Plaintiff's Conspiracy Claim Must Be Dismissed Because the Challenged Conduct Predates the Enactment of the ATRA, and Plaintiff Nevertheless Fails to Plausibly Plead Conspiracy ....................................... 20

    B.  Plaintiff Fails to Plead a Claim Under California Law Against the CB Defendants ............................................... 23

        1.  Plaintiff, an Alleged Victim of *Sex-Trafficking*, Does Not Allege Plausible Facts to Assert a *Consumer-Protection* Claim for Unfair Competition or False Advertising ................ 23

- i -

AMERICAS 127550937

2.   The SAC Lacks Any Plausible Allegations to Support a Claim for Civil Conspiracy .................................................. 26

3.   The California Claims Are Also Barred by Statutes of Limitations ................................................................................ 31

C.   All of Plaintiff's Claims Fail Because the CB Defendants—as Participants in Loans to "MindGeek" in 2011 and 2013—Did Not *Cause* Plaintiff's Alleged Injuries ................................... 33

D.   Section 230 Also Bars Plaintiff's Claims Against the CB Defendants .................................................................................. 35

E.   The Court Should Dismiss Plaintiff's Claims Against the CB Defendants with Prejudice ................................................ 36

V.   CONCLUSION ........................................................................................... 38

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AMERICAS 127550937

MEMORANDUM IN SUPPORT OF CB DEFENDANTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*117 Sales Corp. v. Olsen*,
   80 Cal. App. 3d 645 (1978) ................................................................. 29

*A. B. v. Salesforce.com, Inc.*,
   No. 4:20-cv-1254, 2021 WL 3616097 (S.D. Tex. Mar. 22, 2021) .............. 28, 29

*Ajzenman v. Off. of Comm'r of Baseball*,
   487 F. Supp. 3d 861 (C.D. Cal. 2020) ......................................... 28, 33

*Al-Ahmed v. Twitter, Inc.*,
   648 F. Supp. 3d 1140 (N.D. Cal. 2023) ............................................ 31

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal. 4th 503 (1994) ................................................................... 27

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................... 14, 29

*Askins v. U.S. Dep't of Homeland Sec.*,
   899 F.3d 1035 (9th Cir. 2018) ....................................................... 13

*Atkinson v. Meta Platforms, Inc.*,
   No. 20-17489, 2021 WL 5447022 (9th Cir. Nov. 22, 2021) .................... 37

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) ....................................................... 36

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003) ....................................................... 36

*Beatport LLC v. SoundCloud Ltd.*,
   No. 2:19-cv-847-MRW, 2020 WL 3977602 (C.D. Cal. July 13, 2020) ............ 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................... 14

*Benson v. JPMorgan Chase Bank, N.A.*,
   No. 3:09-cv-5272-EMC, 2010 WL 1526394 (N.D. Cal. Apr. 15, 2010) ............ 30

AMERICAS 127550937

*Boschma v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
    No. 2:18-cv-2623-VAP-KK, 2018 WL 2251629 (C.D. Cal. May 16, 2018) ..... 12

*Buick v. World Sav. Bank*,
    637 F. Supp. 2d 765 (E.D. Cal. 2008) ................................................................. 29

*Carroll v. Lee*,
    No. 2:08-cv-975-RSL, 2009 WL 2855727 (W.D. Wash. Aug. 31, 2009) .......... 32

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ....................................................................................... 25

*Chern v. Bank of Am.*,
    15 Cal. 3d 866 (1976) ......................................................................................... 26

*City of Oakland v. Wells Fargo & Co.*,
    14 F.4th 1030 (9th Cir. 2021) ............................................................................ 33

*Daro v. Super. Ct.*,
    151 Cal. App. 4th 1079 (2007) .......................................................................... 25

*Davis v. Powell*,
    901 F. Supp. 2d 1196 (S.D. Cal. 2012) ............................................................. 36

*Doe #1 v. Red Roof Inns, Inc.*,
    21 F.4th 714 (11th Cir. 2021) ............................................................................ 19

*Doe #1 v. Twitter, Inc.*,
    No. 22-15103, 2023 WL 3220912 (9th Cir. May 3, 2023) ................................ 36

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
    671 F. Supp. 3d 387 (S.D.N.Y. 2023) ......................................................... 23, 28

*Doe I v. Apple Inc.*,
    No. 1:19-cv-3737-CJN, 2021 WL 5774224 (D.D.C. Nov. 2, 2021) ................. 12

*Doe v. Wyndham Hotels & Resorts*,
    No. 8:23-cv-1554-JVS-JDE, 2024 WL 2104596 (C.D. Cal. Feb. 28, 2024) ...... 33

*Douglas v. Hirson*,
    63 F.4th 49 (1st Cir. 2023) ........................................................................... 29, 34

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ........................................................................... 35

- iv -

*Emery v. Visa Internat. Serv. Ass'n*,
   95 Cal. App. 4th 952 (2002)................................................................24

*Fitbug Limited v. Fitbit, Inc.*,
   78 F. Supp. 3d 1180 (N.D. Cal. 2015)................................................24

*Foman v. Davis*,
   371 U.S. 178 (1962) ..........................................................................36

*Food & Drug Admin. v. All. For Hippocratic Med.*,
   602 U.S. 367 (2024) ..........................................................................10

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*,
   No. 1:11-cv-00030-AWI-SMS, 2013 WL 398664
   (E.D. Cal. Jan. 31, 2013) ...................................................................37

*Geiss v. Weinstein Co. Holdings LLC*,
   383 F. Supp. 3d 156 (S.D.N.Y 2019) ................................................19

*Gifford v. Hornbrook Fire Prot. Dist.*,
   No. 2:16-cv-596-JAM-DMC, 2021 WL 4168532
   (E.D. Cal. Sept. 14, 2021) .................................................................27

*Gonzalez v. U.S. Immigr. & Customs Enf't*,
   975 F.3d 788 (9th Cir. 2020) .............................................................13

*Harlow v. Children's Hosp.*,
   432 F.3d 50 (1st Cir. 2005) ...............................................................13

*Hodsdon v. Mars, Inc.*,
   162 F. Supp. 3d 1016 (N.D. Cal. 2016)............................................25

*J.B. v. G6 Hosp., LLC*,
   No. 4:19-cv-7848-HSG, 2021 WL 4079207 (N.D. Cal. Sept. 8, 2021)..............15

*J.B. v. G6 Hosp., LLC*,
   No. 4:19-cv-7848-HSG, 2020 WL 4901196
   (N.D. Cal. Aug. 20, 2020) ..........................................................17, 18

*Jackson v. Kaiser Permanente*,
   No. 2:18-cv-8176-DSF-PLA, 2019 WL 10893916
   (C.D. Cal. Jan. 8, 2019) .....................................................................14

- v -

AMERICAS 127550937

*Johnson v. Ocwen Loan Servicing, LLC*,
    No. 5:17-cv-1373-JGB-SP, 2017 WL 10581088
    (C.D. Cal. Dec. 11, 2017) ...................................................................... 26

*Jones v. Hollywood Unlocked*,
    No. 2:21-cv-7929-MEMF-PVC, 2022 WL 18674460
    (C.D. Cal. Nov. 22, 2022) ............................................................... 27, 29

*Justo v. Indymac Bancorp*,
    No. 8:09-cv-1116-JVS-AGR, 2010 WL 623715, at *4-5
    (C.D. Cal. Feb. 19, 2010) ...................................................................... 33

*Kader v. S. California Med. Ctr., Inc.*,
    99 Cal. App. 5th 214 (2024) .................................................................. 31

*Krivo Indus. Supply Co. v. Nat'l Distillers & Chemical Corp.*,
    483 F.2d 1098 (5th Cir. 1973) ............................................................... 34

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) ..................................................................... 24, 33

*Lauter v. Anoufrieva*,
    642 F. Supp. 2d 1060 (C.D. Cal. 2009) ................................................. 31

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ................................................................ 24

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) .............................................................................. 33

*Life Savers Concepts Ass'n of California v. Wynar*,
    387 F. Supp. 3d 989 (N.D. Cal. 2019) .................................................. 38

*Lujan v. Defs. Of Wildlife*,
    504 U.S. 555 (1992) ......................................................................... 10, 11

*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006) .................................................................. 5

*Morris v. Sun Pharma Glob.*,
    No. 2:20-cv-10441-PA-JPR, 2021 WL 3914235 (C.D. Cal. Apr. 22, 2021) ...... 32

*Moss v. United States Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) ................................................................ 14

AMERICAS 127550937

*Murphy v. Am. Gen. Life Ins. Co.*,
    74 F. Supp. 3d 1267 (C.D. Cal. 2015)................................................................28

*Nationwide Biweekly Admin., Inc. v. Super. Ct. of Alameda Cnty.*,
    9 Cal. 5th 279 (2020) .......................................................................................26

*People v. McKale*,
    25 Cal. 3d 626 (1979) .......................................................................................25

*Plutos Sama Holdings, Inc. v. Jagex Ltd.*,
    No. 8:21-cv-133-JVS-JDE, 2022 WL 1536590 (C.D. Cal. Jan. 12, 2022)........35

*Ratha v. Phatthana Seafood Co.*,
    35 F.4th 1159 (9th Cir. 2022) ..............................................................16, 19, 20

*Ratha v. Phatthana Seafood Co.*,
    No. 2:16-cv-4271-JFW-AS, 2017 WL 8293174
    (C.D. Cal. Dec. 21, 2017) ...........................................................................17, 18

*Ratha v. Rubicon Res., LLC*,
    No. 23-55299, 2024 WL 3589751 (9th Cir. July 31, 2024)..............................21

*Resolution Tr. Corp. v. BVS Dev., Inc.*,
    42 F. 3d 1206 (9th Cir. 1994) ...........................................................................28

*River Colony Ests. Gen. P'ship v. Bayview Fin. Trading Grp., Inc.*,
    287 F. Supp. 2d 1213 (S.D. Cal. 2003) .............................................................27

*Rozario v. Richards*,
    No. 2:14-cv-9540-AB-JPR, 2015 WL 13357613 (C.D. Cal. Apr. 22, 2015) .....35

*Shaeffer v. Califia Farms, LLC*,
    44 Cal. App. 5th 1125 (2020)............................................................................24

*S.J. v. Choice Hotels Int'l, Inc.*,
    473 F. Supp. 3d 147 (E.D.N.Y. 2020)...............................................................19

*Sloatman v. Housewright*,
    No. 2:21-cv-8235-DOC-MAA, 2022 WL 4390458 (C.D. Cal. Sept. 6, 2022)...29

*Smith v. Albee*,
    No. 2:15-cv-1598-JAM-KJN, 2019 WL 2952962 (E.D. Cal. July 9, 2019).......37

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .........................................................................................11

- vii -

*State ex rel. Metz v. CCC Info. Servs., Inc.*,
    149 Cal. App. 4th 402 (2007)..................................................................30

*Stein v. World-Wide Plumbing Supply Inc.*,
    71 F. Supp. 3d 320 (E.D.N.Y. 2014)......................................................22

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009).............................................................................24

*United States v. Anthony*,
    942 F.3d 955 (10th Cir. 2019).................................................................22

*United States v. Bazar*,
    747 F. App'x 454 (9th Cir. 2018)............................................................16

*Warth v. Seldin*,
    422 U.S. 490 (1975) ................................................................................11

*Washington Env't Council v. Bellon*,
    732 F.3d 1131 (9th Cir. 2013)...........................................................11, 12

*Williams v. Sisolak*,
    No. 22-16859, 2024 WL 194180 (9th Cir. Jan. 18, 2024) .....................12

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
    62 F.4th 517 (9th Cir. 2023)............................................................11, 13

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010).......................................25, 26, 31

*Z & Z Leasing, Inc. v. Graying Reel, Inc.*,
    873 F. Supp. 51 (E.D. Mich. 1995) .........................................................34

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)...................................................................37

## FEDERAL STATUTES

18 U.S.C. § 1591................................................................................................15

18 U.S.C. § 1595................................................................................................15

42 U.S.C. § 9601(20)..........................................................................................33

47 U.S.C. § 230(c)(1) .........................................................................................34

AMERICAS 127550937

Pub. L. No. 117-347, 136 Stat. 6199 (2023) ........................................ 21

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ....................................................... 25

Cal. Bus. & Prof. Code § 17204 ....................................................... 24

Cal. Bus. & Prof. Code § 17208 ....................................................... 31

Cal. Bus. & Prof. Code § 17535 ....................................................... 24

Cal. Civ. Proc. Code § 474 ............................................................. 32

**FEDERAL RULES**

Fed. R. Civ. P. 8(a) ....................................................................... 29

Fed. R. Civ. P. 9(b) .................................................................. 25, 26

Fed. R. Civ. P. 12(b) ............................................................... passim

Fed. R. Civ. P.  15(a)(2) ............................................................... 36

- ix -

AMERICAS 127550937

## I.    **PRELIMINARY STATEMENT**

The newly named CB Defendants do not belong in this action.  Plaintiff alleges that sexually explicit videos of Plaintiff as a minor were uploaded to Pornhub without Plaintiff's consent in 2014 and 2020.  Plaintiff, however, does not contend that the CB Defendants were involved in any way in this alleged conduct.  Plaintiff instead alleges that the CB Defendants—lenders regulated by the U.S. Securities and Exchange Commission—are liable because they issued loans in 2011 and 2013 to certain MindGeek entities, including the entity that operated Pornhub.

Absent from the SAC is any allegation that the CB Defendants knew of any video of Plaintiff, let alone that they played any role as to any such video.  Plaintiff does not allege that the CB Defendants had contact with, or knowledge of, Plaintiff or the people who allegedly recorded and uploaded the videos.  Nor does Plaintiff allege that the CB Defendants were involved in MindGeek's alleged decisions to review the videos, label the videos, or remove them from Pornhub.  Plaintiff also fails to allege that the CB Defendants received any specific financial benefit from Plaintiff's videos, including from advertising or other revenue.  And Plaintiff does not allege that the CB Defendants agreed with any MindGeek entity, or anyone else, about Plaintiff, videos of Plaintiff, or child sexual abuse material ("CSAM").  In fact, CB Defendants' loan agreements required MindGeek to comply with U.S. law on CSAM and prohibited MindGeek's websites from containing CSAM.

Courts, including the U.S. Court of Appeals for the Ninth Circuit, have rejected sex-trafficking and other claims based on attenuated liability theories like those advanced by Plaintiff against the CB Defendants here.  Indeed, the law does not and should not impose vicarious liability on lenders, like the CB Defendants, for the actions of their borrowers.  Nor does a lender become responsible for a borrower's actions simply by issuing a loan.  Allowing Plaintiff to proceed past the Rule 12 stage with such a theory invites an onslaught of baseless lawsuits against lenders for the acts of borrowers, for any and all types of alleged borrower misconduct.

Moreover, Plaintiff admits that the 2011 and 2013 loans to MindGeek, in which the CB Defendants participated along with many other lenders, concluded in 2018—before alleged CSAM on Pornhub and similar websites gained significant attention in 2019 through 2023. This concession compounds the many deficiencies in the SAC's limited allegations about the CB Defendants. Those implausible allegations—such as the CB Defendants (as loan participants with many other third-party lenders) purportedly owned MindGeek or wanted MindGeek websites to have CSAM—are group-pleaded, conclusory, and contradicted by many other allegations in the SAC.

Plaintiff's claims against the CB Defendants fail for several independent reasons. As an initial matter, Plaintiff lacks standing. The CB Defendants never interacted with Plaintiff or Plaintiff's alleged traffickers who participated in, recorded, or uploaded the videos. Nor did the CB Defendants operate the websites to which the videos were uploaded. The CB Defendants' role as a lender is not fairly traceable to Plaintiff's alleged injuries.

Plaintiff also fails to state a claim under Rule 12(b)(6). The Ninth Circuit—including in an opinion issued last month—has made clear that Plaintiff's theories of beneficiary liability and conspiracy liability under the TVPRA against the CB Defendants fail as a matter of law. Plaintiff also fails to allege plausible facts about the CB Defendants to support Plaintiff's consumer-protection claims under the UCL or the FAL. Plaintiff does not even allege the most basic element of Plaintiff's civil conspiracy claim—an ***agreement*** to commit a tort (by perpetuating CSAM) that harmed Plaintiff. Lack of causation and Section 230 of the Communications Decency Act provide additional grounds to dismiss all claims, and the statutes of limitations also bar Plaintiff's California-law claims.

For these and other reasons explained in this Motion, the Court should dismiss all claims against the CB Defendants with prejudice. The SAC's false allegations against the CB Defendants continue to cause reputational damage. This action has

been pending for more than three years, and the defects rooted in Plaintiff's allegations, claims, and liability theory against the CB Defendants cannot be cured by amendment. With sympathy for the difficult and painful circumstances alleged, there is no basis for the CB Defendants to remain in this action.

## II. BACKGROUND

### A. Plaintiff Alleges Third Parties Posted Sexually Explicit Videos of Plaintiff as a Minor That Appeared on MindGeek Websites in 2014 and in 2020

Plaintiff alleges that third parties with whom Plaintiff was acquainted recorded sexually explicit videos of Plaintiff as a minor, and the videos were uploaded without Plaintiff's consent to websites operated by certain MindGeek Entity Defendants.[1] SAC ¶¶ 448-462. In 2014, a video that Plaintiff made as a 13-year-old with Plaintiff's boyfriend at the time was uploaded to Pornhub. *Id.* ¶ 448. After being taken down, the video was uploaded, and taken down, again. *Id.* ¶¶ 451-53. Years later, some of the videos that Plaintiff made with an older man were uploaded to Pornhub, and those videos were still on Pornhub as recently as June 2020. *Id.* ¶¶ 457-58.

### B. Plaintiff Alleges, Through Group-Pleading, That the CB Defendants—Along With Many Other Third-Party Lenders—Issued Loans to MindGeek in 2011 and 2013

The 594-paragraph SAC mostly consists of allegations related to "MindGeek" generally. Plaintiff alleges facts describing MindGeek's business model; the

---

[1] In this Motion, the CB Defendants refer to (i) defendants MindGeek S.a.r.l., MG Freesites, Ltd., MindGeek USA Incorporated, MG Premium Ltd., MG Global Entertainment, Inc., and 9219-1568 Quebec, Inc. collectively as "MindGeek Entity Defendants" or "MindGeek"; (ii) defendants Bernd Bergmair, Feras Antoon, and David Tassillo as "Individual Defendants"; (iii) the MindGeek Entity Defendants and the Individual Defendants collectively as "MindGeek Defendants"; (iv) defendant Visa, Inc. as "Visa"; and (v) defendants Redwood Capital Management, LLC, Redwood Master Fund, LTD, Redwood Opportunity Master Fund, Ltd., Manuel 018, LLC, Gingogerum, LLC, and White-Hathaway Opportunity Fund, LLC collectively as "Redwood Defendants."

- 3 -

pornography industry as a whole; MindGeek's content moderation processes and policies; the Individual Defendants, who were alleged former owners and officers of MindGeek; and supposed alter-ego allegations related to MindGeek. *See id.* ¶¶ 38-58, 67-104, 148-244, 313-447.

The allegations against the CB Defendants, however, are limited. Plaintiff does not allege that the CB Defendants had any knowledge of or contact with Plaintiff, the persons who recorded the videos of Plaintiff, or the persons who uploaded or downloaded the videos. Rather, Plaintiff alleges that the four CB Defendants provided and arranged for loans to MindGeek in 2011 and 2013. *Id.* ¶¶ 7, 245.

Plaintiff alleges that Colbeck Capital Management is the hedge fund manager for three other hedge funds, Defendants CB Media Ventures, CB Agency Services, and CP Participations LLC, through which Colbeck Capital Management provided loans. *Id.* ¶ 25. Paragraph 25 is the only instance in the SAC in which Plaintiff individually identifies each of the CB Defendants. Following this paragraph, the SAC purports to refer to the CB Defendants in four ways: (i) "Colbeck" (all four CB Defendants); (ii) "Colbeck and Redwood" (all four CB Defendants and all six Redwood Defendants); (iii) the "Colbeck Syndicate" (an undefined syndicate with unidentified members purportedly comprising the ***dozens of lenders*** that also contributed funds); or (iv) as part of the "defendants" (purporting to refer to all 20 Defendants). *See, e.g., id.* ¶¶ 1, 25, 245; *see also generally id.* ¶¶ 246-273, 491-98, 500-07, 573-81, 590-93.

Plaintiff alleges that the "Colbeck Syndicate" led two rounds of loans to MindGeek. *Id.* ¶ 245. The first loan occurred in 2011, and the second loan occurred in 2013. *See id.* Each loan was reflected in a Loan Agreement. *See id.* ¶¶ 246, 274. Those two agreements are attached to the Declaration of David G. Hille as Exhibit A (April 28, 2011 Loan Agreement) and Exhibit B (October 18, 2013 Amended and

1    Restated Loan Agreement) (collectively, "Loan Agreements").[2]

2    Plaintiff admits that, by 2018, all loans involving any CB Defendant had

3    concluded. SAC ¶¶ 245, 275, 276. Plaintiff does not allege that any CB Defendant

4    has provided any loan to—or had any involvement with—MindGeek since 2018. *See*

5    *id.*

6    Plaintiff also alleges that the issue of CSAM on MindGeek's websites emerged

7    significantly after the CB Defendants' exit in 2018. According to Plaintiff, these

8    issues "exploded in 2019-2023." *Id.* ¶ 110. There was a "tsunami of criticism that

9    MindGeek received in 2019-2020." *Id.* ¶ 111. This included a "viral internet

10    campaign in 2019-20" and a "late 2020 bombshell New York Times expose." *Id.* ¶

11    206. In 2019, PayPal terminated its relationship with MindGeek because of the

12    presence of illegal content. *Id.* ¶ 193.

13    **C.**    **Three Years After Filing the Initial Complaint, Plaintiff Files the**

14           **SAC and Names the CB Defendants**

15    On February 19, 2021, a plaintiff represented by another law firm filed a

16    putative class action against several of the MindGeek Entity Defendants. *See Doe v.*

17    *MindGeek USA Inc.*, No. 8:21-cv-338 (C.D. Cal. Feb. 19, 2021) (Hsu, J.), ECF No.

18    1. Plaintiff filed this action on June 17, 2021. ECF No. 1 ("Initial Complaint"). The

19    Initial Complaint included several of the MindGeek Entity Defendants, the Individual

20    Defendants, Visa, and "Colbeck Capital Does 1-10." *See id.* Plaintiff filed the First

21

22    [2]  Plaintiff incorporates the two Loan Agreements by reference in the SAC. *See*

23    *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the

24    document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."). Plaintiff

25    refers to the Loan Agreements throughout the allegations against the CB defendants, Plaintiff's theory of liability depends on the CB Defendants providing loans (through

26    these agreements), and Plaintiff purports to describe terms in the agreements to allege (erroneously) that those terms provided the CB Defendants (or the Colbeck

27    Syndicate) control over MindGeek's business, the ability to foreclose on the business, and the right to receive "virtually all" its earnings. *See, e.g.*, SAC ¶¶ 245-46, 250-

28    51, 259-61, 274, 277, 313, 315, 321, 494.

- 5 -

Amended Complaint on March 21, 2022 ("FAC") and continued to list "Colbeck Capital Does 1–5" without naming or serving any CB Defendants. ECF No. 124-3. On July 29, 2022, Judge Carney issued orders concerning the motions to dismiss filed by the MindGeek Entity Defendants, the Individual Defendants, and Visa. ECF Nos. 166, 167.

After conducting jurisdictional discovery, on May 23, 2024, Plaintiff filed the SAC. In the SAC, Plaintiff asserts 16 claims. *See* SAC ¶¶ 463-594. Only four of those claims are against the CB Defendants: (1) beneficiary liability under Sections 1591 and 1595 of the TVPRA—against the CB Defendants and the Redwood Defendants (Count III); (2) conspiracy liability under Sections 1594(c) and 1595 of the TVPRA—against all 20 Defendants (Count IV); (3) unfair competition (UCL) and false advertising (FAL) under Sections 17200 and 17500 of the California Business and Professions Code—against all 20 Defendants (Count XIV); and (4) civil conspiracy—against all 20 Defendants (Count XVI). *Id.* ¶¶ 489-507, 573-83, 590-94.

**D.     Plaintiff's Allegations in the SAC Against the CB Defendants Are Conclusory, Implausible, and Contradicted by Other Allegations and the Loan Agreements**

*First*, Plaintiff alleges throughout the SAC that the supposed "Colbeck Syndicate" provided loans to "MindGeek," referring to all six MindGeek Entity Defendants. *See, e.g.*, SAC ¶¶ 7, 245. This is inaccurate. ███████████ ████████████████████████████████████████████ ███████████; MG Freesites Ltd.; MG Premium Ltd.; ███████████ ███████████████████████████████; and 9219-1568 Quebec Inc. (collectively, "MindGeek Borrowers"). *See* 2011 Loan Agreement, Ex. A at 148-50; 2013 Loan Agreement, Ex. B at 317-19.[3] Only three of these borrowers are defendants in the SAC: MG Freesites Ltd., MG Premium Ltd., and 9219-1568

---

[3] Most borrowers changed their names following the 2013 Loan Agreement.

1    Quebec Inc. *See* SAC ¶¶ 12, 14, 16.

2    **Second**, Plaintiff alleges vaguely that the Colbeck Syndicate received

3    information before and during the terms of the loans that suggested MindGeek

4    operated an unrestricted content model that "embraced" CSAM. *Id.* ¶¶ 246, 261,

5    263, 265, 270-74. These allegations—besides being wholly unspecific and

6    conclusory—are also inconsistent with the explicit provisions in the Loan

7    Agreements and Plaintiff's other allegations in the SAC. Under the terms of the Loan

8    Agreements, ███████████████████████████████████████████████

9    ██████████████████████████████████████████████████████████

10   ███████████████████████ *See* Loan Agreements §§ 6.01(h), 6.01(mm), 6.01(nn),

11   6.01(ss). In addition, ████████████████████████████████████████

12   ██████████████████████████████████████████████████████████

13   ██████████████████████████████████████████████████████████

14   ██████████████████████████████████████████████████████████

15   ██████████████████████████████████████████████████████████

16   ██████████████████████████████████████████████████████████

17   ████████████████████████ *See id.* §§ 7.01(a), 7.01(c), 7.01(v), 7.01(z).

18   In addition, Plaintiff alleges that the issue of CSAM did not become a widespread

19   issue publicly until 2019, at which point the problem got worse. SAC ¶¶ 110-11,

20   206. Plaintiff's first video was posted on Pornhub in 2014, **after** the Colbeck

21   Syndicate conducted due diligence and completed the Loan Agreements in 2011 and

22   2013. *See id.* ¶ 448.

23   **Third**, Plaintiff alleges, without any basis, that the CB Defendants (and the

24   Redwood Defendants) **wanted** MindGeek's websites to have more CSAM so that

25   MindGeek could pay back the loans. SAC ¶¶ 246, 264, 267-68. This is, again,

26   without any supporting basis. It is also inconsistent with the terms of the Loan

27   Agreements. ██████████████████████████████████████

28   ████████████████████████████████████████████

AMERICAS 127550937

1

2

3

4

5

6

7

8

9  Loan Agreements § 6.01(h).

10

11

12

13

14

15

16

17

18

19

20

21

22  *Id.* § 7.01(z).

23

24  *Id.* §§ 7.01(a), 7.01(c), 7.01(v), 7.01(z).

25  *Id.* §§ 9.01(c),

26  9.01(s).

27  **Fourth**, Plaintiff speculates that the Colbeck Syndicate "effectively owned the

28  company" and ***could*** control its business, foreclose on the business, and receive all



- 8 -

its earnings.  SAC ¶¶ 251, 259, 269, 272.  The purported basis for these conclusions is Plaintiff's speculation on interest rates and unspecified terms in the Loan Agreements.  *See id.* ¶¶ 251, 272.  These allegations, however, contradict Plaintiff's admission that the CB Defendants only ***loaned*** money to the MindGeek Borrowers.  *See id.* ¶¶ 250-51.  Plaintiff does not allege that the CB Defendants, for example, owned shares in; appointed a board member or officer of; managed; or, at a minimum, were otherwise granted any operational control of a MindGeek entity.  To the contrary, Plaintiff alleges that the ownership of MindGeek was centralized and controlled by the ***Individual Defendants***.  *See id.* ¶¶ 149-57, 374-93.

Plaintiff misleadingly alleges in the SAC that Bernd Bergmair testified in his deposition that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  ▮▮▮▮  *Id.* ¶ 272.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Hille Decl., Ex. C (Bergmair Dep.) 218:7-220:1, 222:1-227:12.  This was not a general statement about control over MindGeek.  In any event, Plaintiff admits that the CB Defendants were not lenders in 2020, and thus Bergmair could not have been referring to them.

Despite Plaintiff's strategic use of the term "Colbeck Syndicate," Plaintiff's allegations of ownership are also implausible because the CB Defendants were among an extensive number of third-party lenders that participated in the loans to the MindGeek Borrowers in 2011 and 2013.  *See id.* ¶¶ 245, 250, 260; *see also* 2011 Loan Agreement at 157-63 (▮▮▮▮▮▮▮▮▮); 2013 Loan Agreement at 337-78 (▮▮▮▮▮▮▮).  The fact that many third-party lenders participated in the loans also contradicts and renders implausible Plaintiff's erroneous allegation that the terms of the loans were so beneficial because few in the finance community would loan to the MindGeek Borrowers.  *See* SAC ¶ 269.

Plaintiff similarly contradicts the SAC's allegation that the Colbeck Syndicate

- 9 -

1  received "virtually all" of MindGeek's profits because ████████████

2  ████████████████████████████████████████████████████

3  ████████  *See id.* ¶¶ 246, 363, 364, 368, 370, 373.  The SAC alleges, on the one hand,

4  that the Colbeck Syndicate was taking all of MindGeek's profits; and yet, on the other

5  hand, that the MindGeek Entity Defendants and the Individual Defendants were

6  making so much profit because of illegal content, including CSAM, that they wanted

7  to keep that illegal content and solicit more of it.  *See, e.g.*, *id.* ¶¶ 55, 57, 251, 259.

8  Plaintiff also alleges that all Defendants were already making, and would continue to

9  make, "enormous amounts of money" irrespective of CSAM (*id.* ¶ 9), thus refuting

10 Plaintiff's implausible allegation that Defendants purportedly needed to encourage

11 CSAM on Pornhub to profit.  These contradictions highlight that the allegations

12 against the CB Defendants are not properly pleaded and that there is no plausible

13 claim against them.

14 **III.  PLAINTIFF LACKS STANDING BECAUSE PLAINTIFF'S**

15 **ALLEGED INJURIES ARE NOT FAIRLY TRACEABLE TO ANY CB**

16 **DEFENDANT**

17 Plaintiff does not meet the burden to show that Plaintiff has standing to assert

18 claims against the CB Defendants.  *See* Fed. R. Civ. P. 12(b)(1).[4]  Article III standing

19 "is an essential and unchanging" prerequisite to subject-matter jurisdiction.  *Lujan v.*

20 *Defs. Of Wildlife*, 504 U.S. 555, 560 (1992).  The plaintiff must show that he or she

21 has suffered or likely will suffer an injury in fact, that the injury likely was caused

22 by the defendant, and that the injury likely would be redressed by the requested

23 judicial relief.  *Food & Drug Admin. v. All. For Hippocratic Med.*, 602 U.S. 367, 380

24

_____

25 [4] Plaintiff also fails to meet the burden to show that the CB Defendants are subject
   to personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  Plaintiff admits that the CB

26 Defendants are incorporated in Delaware and headquartered in New York (SAC ¶
   25), and Plaintiff does not allege that any CB Defendant purposefully directed

27 activity toward California.  The CB Defendants, however, do not contest personal
   jurisdiction in this case because Plaintiff's claims clearly fail for several

28 independent reasons and should be dismissed with prejudice.

- 10 -

(2024) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Lujan*, 504 U.S. at 560-561). There must be "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant.'" *Lujan*, 504 U.S. at 560 (citation omitted). The plaintiff has the burden to "clearly . . . allege facts demonstrating" standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted).

To meet this burden, the plaintiff must allege a "line of causation between defendant's action and the plaintiff's harm [that] must be more than attenuated." *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013) (citation omitted). This burden is "substantially more difficult to meet" where—as in this case—the plaintiff alleges that the defendant did not directly cause his or her injuries. *Warth v. Seldin*, 422 U.S. 490, 505 (1975). To show causation for Article III standing, the plaintiff must allege that (i) the injuries are "not the result of the independent action of some third party not before the court" and (ii) there is a "substantial probability'" that the defendant caused the alleged injuries. *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 525 (9th Cir. 2023) (citations omitted). Plaintiff here has done neither.

Rather than meet the burden, Plaintiff does the opposite. Plaintiff's allegations reveal that, contrary to Article III, Plaintiff's alleged injuries have no connection to any alleged action by a CB Defendant. Indeed, Plaintiff's alleged injuries—caused by the uploading of videos to Pornhub and similar websites—depend ***entirely*** on the independent actions of several layers of parties other than the CB Defendants, including persons who participated in the acts depicted in the at-issue videos of Plaintiff, the persons who recorded the videos, and the persons who uploaded the videos to Pornhub and similar websites. *See* SAC ¶¶ 448, 454, 457-59. And even after those persons responsible for the alleged wrongful conduct, based on the SAC, are the MindGeek entity or entities that operate such websites. *See id.* ¶¶ 449-53.

By contrast, the CB Defendants' role is a ***lender***. The CB Defendants are never

- 11 -

alleged to have interacted with Plaintiff or Plaintiff's alleged traffickers in any way. The CB Defendants did not induce Plaintiff to engage in any act; they did not take or upload any videos; they did not maintain the websites onto which the videos were uploaded; they were not responsible for the moderation of those websites; and they did not host, share, or promote the videos. *See, e.g., id.* ¶¶ 312, 448, 452, 457, 458, 462. Where, as here, "the causal chain involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries,. . . the causal chain is too weak to support standing." *Washington Env't Council*, 732 F.3d at 1142 (citation omitted); *see also Williams v. Sisolak*, No. 22-16859, 2024 WL 194180, at *2 (9th Cir. Jan. 18, 2024) ("plaintiffs lack Article III standing . . . because plaintiffs' injuries are the result of allegedly illegal third-party conduct in [the] commercial sex industry"), *cert. denied sub nom. Williams v. Lombardo*, No. 23-1138, 2024 WL 3014535 (U.S. June 17, 2024).[5]

Under Plaintiff's theory, any third-party service provider that Plaintiff alleges was connected to MindGeek's business could be sued for Plaintiff's injuries—for example, MindGeek's cloud service provider, its data center, or even the company that owned the building in which its employees worked. *See, e.g.*, Visa MTD Order 32:9-16 ("Even if Google knows that its search engine is being used to drive traffic to a website allegedly teeming with child porn, and thereby indirectly helps that website financially benefit from its illicit content, it would not have provided a tool

---

[5] *See also, Boschma v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 2:18-cv-2623-VAP-KK, 2018 WL 2251629, at *3 (C.D. Cal. May 16, 2018) (finding that allegations of an unsafe neighborhood were not fairly traceable to defendant government agency because "causal chain" included numerous third parties, including individuals who committed acts of violence); *cf.* Order on Visa's Mot. Dismiss FAC 14:20-23, ECF No. 166 ("Visa MTD Order") (contrasting *Boschma* and other cases with the FAC's allegations that Visa allegedly directly *monetized CSAM*—which are different than the allegations in the SAC that the CB Defendants *provided loans*); *Doe I v. Apple Inc.*, No. 1:19-cv-3737-CJN, 2021 WL 5774224, at *7 (D.D.C. Nov. 2, 2021) (holding that plaintiffs lacked Article III standing to sue electronics manufacturers for labor trafficking violations in cobalt mines on theory that manufacturers purchased and drove demand for cobalt).

- 12 -

1    through which the crime is completed . . . .").  Article III's standing requirements

2    prevent this from happening.

3         Moreover, even accepting the SAC's allegations as true, Plaintiff's injuries

4    would have occurred whether or not the CB Defendants participated in the loans.

5    Plaintiff does not allege that MindGeek would have stopped operating or operated

6    any differently—or that Plaintiff would not have been allegedly harmed—had the CB

7    Defendants not participated as one of many lenders to the MindGeek Borrowers in

8    2011 and 2013.  In addition, Plaintiff concedes that the CB Defendants' loan terms

9    ended in 2018.  SAC ¶¶ 245, 275, 276.  Yet one of the two at-issue videos of Plaintiff

10   was on Pornhub two years later in 2020.  *See id.* ¶¶ 110, 457-460.  There is thus no

11   "substantial probability" that a CB Defendant caused Plaintiff's alleged injuries.

12   *Winsor*, 62 F.4th at 525.

13        Judge Carney's order on Visa's motion to dismiss also supports dismissal of

14   Plaintiff's claims against the CB Defendants.[6]  Unlike the CB Defendants' remote

15   role as lenders and the absence of any allegations connecting the CB Defendants to

16   the Plaintiff or the videos, Judge Carney concluded that Plaintiff had alleged that

17   Visa provided the mechanism for processing transactions on MindGeek's websites,

18   thus purportedly providing the means for MindGeek to profit from CSAM, including

19   the videos of Plaintiff.  Visa MTD Order 10:19-12:3.  Judge Carney also based his

20   ruling on the fact that Visa suspended MindGeek's merchant privileges in December

21   2020, which resulted in MindGeek removing millions of videos, but then reinstated

---

[6]  The doctrine of "law of the case" does not apply to Judge Carney's decision here. "Interlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case." *Harlow v. Children's Hosp.*, 432 F.3d 50, 55 (1st Cir. 2005) (holding district court could reconsider a denial of motion to dismiss).  In addition, "once the plaintiff elects to file an amended complaint, the new complaint is the only operative complaint before the district court" and "[t]he district court is not . . . bound by any law of the case." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018). Moreover, "the doctrine of 'law of the case' does not apply to the fundamental question of subject matter jurisdiction." *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 805 n.10 (9th Cir. 2020) (citation omitted).

- 13 -

1  those privileges despite the issues of CSAM continuing. *Id.* 12:6-9, 15:8-10. No

2  such specific basis for knowledge of CSAM issues, or control and influence in

3  decision-making over MindGeek, exists in the SAC against the CB Defendants,

4  which Plaintiff admits had ***no*** relationship with MindGeek as of and after 2018.

5  Plaintiff lacks standing to assert claims against the CB Defendants.

6  **IV.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE CB**

7  **DEFENDANTS UNDER RULE 12(B)(6)**

8        A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be

9  granted where the complaint fails to allege "sufficient factual matter, accepted as

10  true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

11  U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)).

12  "Factual allegations must be enough to raise a right to relief above the speculative

13  level" and be "more than labels and conclusions." *Twombly*, 550 U.S. at 555.

14        As explained above in Section II.D, there are many deficiencies in the

15  allegations against the CB Defendants. As an initial matter, Plaintiff cannot group-

16  plead allegations. *Beatport LLC v. SoundCloud Ltd.,* No. 2:19-cv-847-MRW, 2020

17  WL 3977602, at *5 (C.D. Cal. July 13, 2020) ("[I]t is a basic pleading defect for a

18  complaint to 'lump' parties together and to fail to distinguish between named

19  defendants."); *see also* Order on MindGeek Defs.' Mots. Dismiss at 5, ECF No. 167

20  (noting that Plaintiff's FAC also suffered from a "group-pleading problem"). Nor

21  can Plaintiff rely on the conclusory, implausible, or contradictory allegations. *See*

22  *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*,

23  556 U.S. at 678) ("[F]or a complaint to survive a motion to dismiss, the non-

24  conclusory 'factual content,' and reasonable inferences from that content, must be

25  plausibly suggestive of a claim entitling the plaintiff to relief."); *Jackson v. Kaiser*

26  *Permanente*, No. 2:18-cv-8176-DSF-PLA, 2019 WL 10893916, at *5 (C.D. Cal. Jan.

27  8, 2019) (dismissing complaint because "Plaintiff cannot plead contradictory facts

28  that render Plaintiff's claims implausible.").

- 14 -

Even if one were to ignore these overarching defects, Plaintiff's claims against the CB Defendants fail as a matter of law under Rule 12(b)(6). The Court should dismiss with prejudice Plaintiff's claims against the CB Defendants for violation of the TVPRA, violation of the UCL and FAL, and civil conspiracy.

### A.    Plaintiff Fails to Plead a Claim Under the TVPRA Against the CB Defendants

Plaintiff asserts claims against the CB Defendants for allegedly "knowingly benefit[ing]" and "conspir[ing] to benefit" from participation with the MindGeek Entity Defendants in a sex-trafficking venture that trafficked Plaintiff. SAC ¶¶ 489-507; *see also* 18 U.S.C. §§ 1591(a)(2) (beneficiary),[7] 1594(c) (conspiracy), 1595(a) (civil remedy). Because Plaintiff's claims rely on the MindGeek Defendants' alleged sex-trafficking venture that trafficked Plaintiff, the claims necessarily fail if the Court finds, in response to the MindGeek Entity Defendants' or other Defendants' motions to dismiss, that there was no such venture. *See J.B. v. G6 Hosp., LLC*, No. 4:19-cv-7848-HSG, 2021 WL 4079207, at *7 (N.D. Cal. Sept. 8, 2021), *aff'd sub nom. J.B. v. Craigslist, Inc.*, No. 22-15290, 2023 WL 3220913 (9th Cir. May 3, 2023) ("The Court . . . finds that the cited language does not suggest that Congress intended to make [defendants] civilly liable [under Section 1595] when their conduct does not violate Section 1591"). The TVPRA claims against the CB Defendants would also fail if the Court finds that Plaintiff has failed to allege that a sex-trafficking venture caused Plaintiff to "engage in a commercial sex act" under Section 1591(a) because,

---

[7] Plaintiff cites Section 1591 generally. *See* SAC ¶¶ 489-98. Section 1591(a)(2) relates to knowingly benefitting from participation in a sex-trafficking venture. Section 1591(a)(1), on the other hand, relates to knowingly recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, or soliciting a person (i.e., a direct trafficker). Plaintiff does not allege that the CB Defendants are direct traffickers. Nor could Plaintiff try. Judge Carney held that even MindGeek was not a direct trafficker. *See* Visa MTD Order 18:21-25. Judge Carney limited Plaintiff's "direct traffickers" to Plaintiff's ex-boyfriend and the unnamed older man who "solicited or enticed Plaintiff to commit a sex act knowing she was underage." *Id.*

- 15 -

1    for example, uploading or hosting content to MindGeek's websites is not a

2    commercial sex act. *See United States v. Bazar*, 747 F. App'x 454, 456 (9th Cir.

3    2018) (defining commercial sex act as "an act performed with another for sexual

4    gratification"). Moreover, if the MindGeek Entity Defendants are shielded from

5    liability under Section 230, Plaintiffs claims against the CB Defendants necessarily

6    fail. CB Defendants incorporate those arguments as made by other Defendants into

7    this Motion. Independent of those reasons, however, both claims against the CB

8    Defendants fail for the following additional reasons.

9           1.     **There Is No Beneficiary Claim Because the CB Defendants**

10                   **Did Not Knowingly Participate In, or Benefit from, a Sex-**

11                   **Trafficking Venture—Nor Should They Have Known of**

12                   **Plaintiff's Alleged Trafficking**

13   For a beneficiary-liability claim under Sections 1595(a) and 1591(a)(2), the

14   plaintiff must show that the defendant "(1) knowingly participated in a sex-

15   trafficking venture, (2) knowingly received a benefit from its participation, and (3)

16   knew or should have known that the plaintiff was a victim of sex trafficking." Visa

17   MTD Order 19:3-5; *see also Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175

18   (9th Cir. 2022) ("*Ratha I*") (listing elements). The SAC meets none of these required

19   elements with respect to the CB Defendants. Plaintiff merely alleges that the CB

20   Defendants "knowingly benefited" from participation in MindGeek's sex-trafficking

21   venture because they provided loans to, and allegedly had insight into and some

22   control over, MindGeek. SAC ¶¶ 251, 272, 490-95.

23   Judge Carney dismissed Plaintiff's beneficiary-liability claim against Visa for

24   the same flaws that exist in Plaintiff's claims against the CB Defendants. Visa MTD

25   Order 21:3-22:2. Like Visa, the CB Defendants are not alleged "to have had any

26   direct interaction with Plaintiff, her direct traffickers, or her videos, and therefore

27   cannot bear beneficiary liability for knowingly participating in the sex trafficking

28   venture that harmed Plaintiff." *Id.* 21:17-25 (holding that Visa, having not had any

1  interaction with Plaintiff or videos of Plaintiff, (1) did not form a continuous
2  relationship with Plaintiff's traffickers, Plaintiff's ex-boyfriend and the unnamed
3  older man; and (2) could not have had actual or constructive knowledge that Plaintiff
4  was a victim of sex-trafficking).  Those deficiencies—along with others—warrant
5  dismissal here.

6         ***No knowing participation in a sex-trafficking venture.***  Beneficiary liability
7  "requires more than receipt of a passive benefit to satisfy the TVPRA's participation
8  in a venture element."  *Ratha v. Phatthana Seafood Co.,* No. 2:16-cv-4271-JFW-AS,
9  2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017), *aff'd*, 26 F.4th 1029 (9th Cir.
10 2022).   The plaintiff must plausibly allege that the defendant "direct[ed] or
11 participat[ed]" in the alleged venture that trafficked ***the plaintiff*** by taking "some
12 action to operate or manage the venture."  *Id.*  There must also be "a showing of a
13 continuous business relationship between the trafficker and [Defendants] such that it
14 would appear that the trafficker and [Defendants] have established a pattern of
15 conduct or could be said to have a tacit agreement."  *J.B. v. G6 Hosp., LLC,* No. 4:19-
16 cv-7848-HSG, 2020 WL 4901196, at *9 (N.D. Cal. Aug. 20, 2020).  Plaintiff does
17 not allege any of these requirements as to the CB Defendants.

18        The alleged traffickers are Plaintiff's ex-boyfriend and the older man who
19 recorded videos of Plaintiff.  *See, e.g.*, Visa MTD Order 18:21-25.  Like Visa, the
20 CB Defendants never had any direct interaction with Plaintiff, Plaintiff's traffickers,
21 or the videos of Plaintiff, and therefore could not have "knowingly participat[ed] in
22 the sex trafficking venture that harmed Plaintiff."  Visa MTD Order 21:3-22:2; *see*
23 *id.* 21:9-15 (explaining that "one of the main focuses" to find liability is "allegations
24 regarding [] the defendants' interact[ions] with their videos specifically").  Plaintiff
25 does not allege that the CB Defendants interacted with Plaintiff's traffickers, made
26 payments to Plaintiff's traffickers, or financially benefitted from the videos of
27 Plaintiff that the traffickers posted.  Thus, the CB Defendants never "form[ed] any
28 sort of continuous relationship with or tacit agreement with Plaintiff's primary

- 17 -

1    traffickers," and therefore did not "knowingly participate" in the sex-trafficking

2    venture that allegedly harmed Plaintiff. *Id.* at 21:20-22. Indeed, the case is even

3    clearer against the CB Defendants than it was against Visa because Judge Carney

4    found that Visa's payment system would have been used in payments relating to the

5    videos of Plaintiff. *Id.* 24:5-7. No such connection is alleged or exists between the

6    CB Defendants and the videos of Plaintiff.

7          Nor can Plaintiff overcome this flaw in the claim by alleging that the CB

8    Defendants "effectively owned" the MindGeek Entity Defendants. *See* SAC ¶ 270.

9    Besides being conclusory, implausible, and contradicted by other allegations (*see*

10   Section II.D above), Plaintiff does not allege that the CB Defendants in fact exercised

11   control or actually operated or managed the MindGeek Entity Defendants in any way,

12   let alone in a way that is connected to a sex-trafficking venture or to Plaintiff. *See,*

13   *e.g.*, SAC ¶ 272 (alleging only that the CB Defendants failed to "direct[]

14   MindGeek").

15         Even if Plaintiff had alleged such control, operation, or management, which

16   Plaintiff has not, Plaintiff's claim would still fail. As the Ninth Circuit held in *Does*

17   *1-6 v. Reddit, Inc.*, Reddit—which, based on the SAC, is analogous to the MindGeek

18   Entity Defendants here—did not knowingly participate in or benefit from an alleged

19   sex-trafficking venture despite allegations that it "highlight[ed] subreddits that

20   feature[d] child pornography to sell advertising . . . allow[ed] users who share[d]

21   child pornography to serve as subreddit moderators, and fail[ed] to remove child

22   pornography even when users report[ed] it." 51 F.4th 1137, 1145 (9th Cir. 2022).

23   The allegations against the CB Defendants—as merely lenders—do not approach the

24   level of participation required by the statute. *See Ratha*, 2017 WL 8293174, at *4

25   (C.D. Cal. Dec. 21, 2017); *G6 Hosp., LLC*, 2020 WL 4901196, at *9. Plaintiff's

26   beneficiary-liability claim ends right here.

27         ***No knowing benefit from participation in a sex-trafficking venture of***

28   ***Plaintiff.*** Plaintiff must also show that the CB Defendants "knowingly" derived a

- 18 -

1   financial benefit from their alleged participation in a sex-trafficking venture
2   involving Plaintiff.  *See Ratha I*, 34 F.4th at 1175.  Plaintiff alleges that **MindGeek**
3   knowingly benefitted from the videos of Plaintiff through the traffic generated by the
4   videos and by "match[ing] the [videos] with advertising."  SAC ¶ 452.  This
5   allegation does not show that the **CB Defendants** knowingly benefitted under the
6   TVPRA, as there is no "causal relationship between [the CB Defendants' alleged]
7   affirmative conduct furthering the sex-trafficking venture and receipt of a benefit."
8   *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y 2019).
9   But even more, the SAC contains no allegation of purported knowledge, or
10  constructive knowledge, of videos of Plaintiff attributed to the CB Defendants.
11  Indeed, Plaintiff could not plausibly allege that the CB Defendants financially
12  benefitted from sex trafficking even if Plaintiff had tried to do so.

13          ***No knowledge of the alleged sex-trafficking of Plaintiff through the posting***
14  ***of Plaintiff's videos.***  The defendant must have "actual or constructive knowledge
15  that the venture . . . violated [Section 1591] as **to the plaintiff**."  *Doe #1 v. Red Roof*
16  *Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021) (emphasis added); *see also* Visa MTD
17  Order 21:23-25.  Plaintiff alleges that the CB Defendants were generally aware of
18  CSAM issues on MindGeek's websites.  *See* SAC ¶¶ 262-67, 271, 495.  Even if this
19  were not a conclusory and group-pleaded allegation, it would not support a claim
20  against the CB Defendants here.  "[K]nowledge or willful blindness of a general sex
21  trafficking problem" in an industry cannot establish liability under the TVPRA.  *S.J.*
22  *v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) ("Knowledge
23  or willful blindness of [] general sex trafficking . . . does not satisfy the *mens rea*
24  requirement[].");  *see also Ratha I*, 35 F.4th at 1179 (notice that "the seafood industry
25  in Thailand was considered a 'hot spot' for human trafficking in all its forms" was
26  insufficient to support "the specific allegations that [the defendant] knew or should
27  have known of the alleged labor abuses at [the factory]").

28          Indeed, like the FAC against Visa, the SAC provides no basis to support that

- 19 -

the CB Defendants should have known about the specific trafficking that led to Plaintiff's alleged injuries given they had no "interaction with Plaintiff and her videos."    Visa MTD Order 21:23-25.    "Unlike the allegations concerning MindGeek," the allegations concerning the CB Defendants fail to show that they "had any knowledge—constructive or otherwise—of Plaintiff, her videos, or her age in the videos." *Id.* at 21:23-25.

### 2. Plaintiff's Conspiracy Claim Must Be Dismissed Because the Challenged Conduct Predates the Enactment of the ATRA, and Plaintiff Nevertheless Fails to Plausibly Plead Conspiracy

Plaintiff's conspiracy claim under Sections 1594(c) and 1595(a) of the TVPRA relies on the bare assertion that all 20 Defendants conspired to financially benefit from CSAM and that the CB Defendants (and the Redwood Defendants) provided loans to further this goal. *See* SAC ¶¶ 500, 503-04.  This claim must be dismissed because Plaintiff's allegations are based on conduct that occurred before the enactment of the Abolish Trafficking Reauthorization Act ("ATRA"), which amended Section 1595(a) in January 2023.  Plaintiff also nevertheless fails to plausibly allege a conspiracy involving the CB Defendants to commit or benefit from sex trafficking.

Section 1595(a) provides a civil remedy for violations of the TVPRA.  Until January 5, 2023, Section 1595(a) stated that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) . . . ." *See Ratha I*, 35 F.4th at 1164-65, 1176 (finding that the plaintiffs failed to show that the defendant knowingly benefitted from participating in a venture that it knew or should have known was violating the TVPRA; holding that liability under Section 1594(a) could not be based on an attempt to violate the TVPRA).  On January 5, 2023, however, Congress enacted the

- 20 -

ATRA, which amended Section 1595(a) to add the phrase "or attempts or conspires to benefit," after "whoever knowingly benefits." Pub. L. No. 117-347, 136 Stat. 6199 (2023).  In other words, Congress expanded the civil cause of action section of the TVPRA to include attempted violations and conspiracies under Section 1594, where the Ninth Circuit had held in *Ratha I* that Section 1595(a) could not extend to such claims.

Just last month, the Ninth Circuit weighed in on the scope and application of the amendments to Section 1595(a).  Following the passage of the ATRA, the plaintiffs in *Ratha I* sought to reopen the final judgment in light of the new language in the ATRA.  On July 31, 2024, the Ninth Circuit rejected the plaintiffs' request, holding that the "attempts or conspires to benefit" language added to Section 1595(a) ***does not apply to pre-enactment conduct***.  *See Ratha v. Rubicon Res., LLC*, No. 23-55299, 2024 WL 3589751 at *17 (9th Cir. July 31, 2024) (*Ratha II*) (citation omitted) ("Because we reject the argument that ATRA merely clarifies what [Section 1595(a)] was originally intended to mean . . . and plaintiffs raise no other basis for ATRA to apply retroactively, we conclude that ATRA does not apply to pre-enactment conduct, including the conduct that is the basis of plaintiffs' claims.").

Following *Ratha II*, the law is clear that there can be no civil liability for either attempted violations or conspiracies under Section 1594 if the alleged conduct occurred prior to the enactment of the ATRA on January 5, 2023.  *Id.*  The Ninth Circuit's holding is fatal to Plaintiff's Section 1594(c) conspiracy claim.  None of the conduct alleged in the SAC took place after January 5, 2023.  *See, e.g.*, SAC at ¶¶ 448-43, 457-58 (alleging that the first video was uploaded in 2014 and other videos were available on Pornhub through 2020).  Moreover, as detailed above, the CB Defendants' Loan Agreements with the MindGeek Borrowers ended in 2018, more than four years before Congress enacted the ATRA.  *Id.* ¶¶ 245, 275, 276.  The Ninth Circuit's decision in *Ratha II* requires dismissal of Plaintiff's conspiracy claim against the CB Defendants.

1    Judge Carney's order on Visa's motion to dismiss also separately supports
2    dismissal of Plaintiff's claim against the CB Defendants.  Plaintiff's TVPRA
3    conspiracy claim against Visa survived dismissal because Plaintiff had alleged that
4    "following highly publicized events in 2019 and 2020," Visa knew that MindGeek
5    was "regularly committing violations of section 1592(a)" and yet "continued to grant
6    MindGeek the means to financially benefit from its participation in sex trafficking
7    ventures:  the Visa payment network."  Visa MTD Order 23:24-24:2. The CB
8    Defendants, however, made their loans in 2011 and 2013.  The loans concluded in
9    2018—before the highly publicized events in 2019 and thereafter.    More
10   fundamentally, Plaintiff does not allege that the CB Defendants monetized CSAM or
11   provided "the means through which MindGeek completed its criminal act." *Id.* at
12   25:14-17.  The CB Defendants are not alleged to have provided a payment network
13   that was used as an integrated part of a sex-trafficking venture.  Indeed, the CB
14   Defendants are not alleged to have done **anything** in furtherance or support of the
15   alleged conspiracy.  Without these allegations, the Court cannot "infer" that the CB
16   Defendants "intended to help MindGeek monetize child porn," as Judge Carney did
17   with Visa, rendering Plaintiff's conspiracy claim against CB Defendants implausible
18   and ripe for dismissal.

19       Moreover, as explained below in Section IV.B.2, Plaintiff fails to plausibly
20   allege any conspiracy involving the CB Defendants.[8]  Among other deficiencies,

---

[8] The basic elements of a TVPRA conspiracy claim and a civil conspiracy claim are similar. *See* Visa MTD Order 23:9-12 (quoting *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1020 (9th Cir. 1985)) (stating requirements to plead conspiracy); *United States v. Anthony*, 942 F.3d 955, 971 (10th Cir. 2019) (citation omitted) (requiring the plaintiff to show "(i) that 'two or more persons agreed to violate' [TVPRA]; (ii) that [the defendant] 'knew at least the essential objectives of the conspiracy;' (iii) that [the defendant] 'knowingly and voluntarily became part of it;' and (iv) that the 'alleged coconspirators were interdependent'"); *Stein v. World-Wide Plumbing Supply Inc.*, 71 F. Supp. 3d 320, 330 (E.D.N.Y. 2014) (The plaintiff must "allege facts that plausibly show [the defendant] 'and other alleged coconspirators entered into a joint enterprise with consciousness of its general nature and extent.'" (quoting *United States v. Svoboda*, 347 F.3d 471, 476-77 (2d Cir. 2003))).

- 22 -

Plaintiff does not allege an agreement involving the CB Defendants to further any alleged sex-trafficking operation or that the CB Defendants acted in furtherance of any such non-existent agreement. Simply agreeing to participate in loans of money to certain MindGeek entities (*see, e.g.*, SAC ¶¶ 250-51) is not enough. *See Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 412 (S.D.N.Y. 2023) ("If the allegations in the complaints are taken as true, the defendants did indeed agree to provide banking services for Epstein and his affiliated entities and that they knew, or recklessly disregarded, would assist his sex-trafficking venture. But that agreement is different from an actual agreement to participate in a sex-trafficking venture."). Thus, even if *Ratha II* did not foreclose Plaintiff from seeking a civil remedy for conspiracy under the TVPRA—which *Ratha II* does foreclose—Plaintiff's conspiracy claim still fails.

## B.    Plaintiff Fails to Plead a Claim Under California Law Against the CB Defendants

The remaining two claims against the CB Defendants, for (i) violation of California's UCL and FAL and for (ii) civil conspiracy under California law, similarly fail under Rule 12(b)(6).

### 1.    Plaintiff, an Alleged Victim of *Sex-Trafficking*, Does Not Allege Plausible Facts to Assert a *Consumer-Protection* Claim for Unfair Competition or False Advertising

Plaintiff purports to assert one claim against all 20 Defendants under California's consumer-protection laws on unfair competition and false advertising. *See* SAC ¶¶ 573-583 (citing Cal. Bus. Prof'l Code §§ 17200 (UCL), 17500 (FAL)). Plaintiff alleges that "Defendants" participated in a sex-trafficking venture, fraudulently deceived "its users," profited by selling advertising, and profited by featuring Plaintiff's videos. *Id.* ¶¶ 574-77. Plaintiff, however, lacks statutory standing and does not allege any facts specific to the CB Defendants to assert a claim.

***First***, none of the purported conduct that Plaintiff alleges to support the claim

- 23 -

under either statute is by a ***CB Defendant***.  The CB Defendants can only be liable "based on [their] ***personal*** participation in the unlawful practices and ***unbridled control*** over the practices that are found to violate section 17200 or 17500." *Emery v. Visa Internat. Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (emphases added) (citation omitted).  Plaintiff does not allege that the CB Defendants fraudulently deceived users, sold advertising, displayed Plaintiff's videos, or profited directly from that alleged advertising or displaying.  *Contra* SAC ¶¶ 574-77 (describing alleged actions by the MindGeek Defendants); *see supra* Section IV.A.1 (showing that the CB Defendants did not ***participate*** in a sex-trafficking venture with direct traffickers).  This alone is fatal to the UCL and FAL claims.

***Second***, even if Plaintiff had attempted to identify conduct by a CB Defendant, Plaintiff would lack standing under the UCL and the FAL.  Standing under both statutes is "substantially narrower" than federal standing under Article III (which is also lacking).  *Fitbug Limited v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1196 (N.D. Cal. 2015).  The plaintiff must have "suffered injury in fact and [] lost money or property as a result" of the unfair competition or false advertising.  Cal. Bus. Prof'l Code §§ 17204, 17535.  The plaintiff must allege facts showing that he or she suffered "economic injury . . . ***caused by***[] the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011) (emphasis added).[9]

As shown above in Section III, Plaintiff fails to show that the CB Defendants

---

[9]   Standing under the fraudulent prong of the UCL and the FAL requires an even stronger causal connection by "demonstrat[ing] actual reliance on the allegedly deceptive or misleading statements" made by the defendant and that the misrepresentations were the "***immediate*** cause of the injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th 298, 306, 326 (2009) (emphasis added); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 504 (2003) (holding that a plaintiff must plausibly allege that "members of the public are likely to be deceived" by the false advertisement or misrepresentation); *see also Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1336 (2020) (noting that the plaintiff's burden under the FAL and the fraudulent prong of the UCL is the same).

1  caused Plaintiff's injuries at all, let alone through unfair business practices or false

2  advertising.  This failure is even more damning under the UCL and FAL's stricter

3  standing requirement.  *See id.*; *see also Daro v. Super. Ct.*, 151 Cal. App. 4th 1079,

4  1099 (2007) (holding the "causal connection is broken when a complaining party

5  would suffer the same harm whether or not a defendant complied with the law").

6       ***Third***, the UCL forbids "any unlawful, unfair or fraudulent business act or

7  practice."  Cal. Bus. Prof'l Code § 17200.  The SAC has no allegation of any such

8  act or practice by a CB Defendant.  As to the fraudulent prong, Plaintiff must plead

9  with particularity under Rule 9(b).  *See Yumul v. Smart Balance, Inc.*, 733 F. Supp.

10 2d 1117, 1122 (C.D. Cal. 2010) (holding UCL claims based in fraud and FAL claims

11 must be pled with particularity under Rule 9(b)).  Plaintiff fails to identify any

12 misrepresentation by a CB Defendant, let alone one by which members of the public

13 are likely to be deceived.  *See* SAC ¶¶ 574-75.  As to the unfair prong, Plaintiff does

14 not allege any conduct by a CB Defendant that is unfair to competitors or consumers,

15 or to anyone else.  *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20

16 Cal. 4th 163, 187 (1999) (under one of two approaches to analyze unfairness, the

17 court examines whether a business practice violates "antitrust law or . . . policy . . .

18 or otherwise significantly threatens or harms competition"); *Hodsdon v. Mars, Inc.*,

19 162 F. Supp. 3d 1016, 1026 (N.D. Cal. 2016) (under the second approach, the court

20 balances the utility of the defendant's conduct against the gravity of the harm to the

21 alleged consumer victim, which tilts in the consumer's favor if the business practice

22 "is immoral, unethical, oppressive, unscrupulous or substantially injurious to

23 consumers"), *aff'd*, 891 F.3d 857 (9th Cir. 2018).  Plaintiff's claims here simply do

24 not deal with issues of competition or with harm that Plaintiff experienced as a

25 consumer due to some "unfair" practice.

26      Plaintiff similarly has no claim under the unlawful prong.  "An 'unlawful

27 business activity' includes 'anything that can properly be called a business practice

28 and that at the same time is forbidden by law.'"  *People v. McKale,* 25 Cal. 3d 626,

632 (1979) (citation omitted).  As explained above in Section III and below in Section IV.C, the CB Defendants are not alleged to have engaged in any unlawful business practices—they simply participated in a loan to the MindGeek Borrowers.  Judge Carney allowed Plaintiff's UCL claim against Visa in the FAC to proceed because he found that Plaintiff had stated a claim for conspiracy liability under the TVPRA.  Visa MTD Order 29:12-21.  For the reasons described above, including the intervening Ninth Circuit decision in *Ratha II*, the conspiracy claim is not a basis to maintain a UCL claim against the CB Defendants.  In addition, Plaintiff fails to plead any similarly specific allegation of knowledge or conduct against the CB Defendants. Like Plaintiff's TVPRA claims, Plaintiff's claim under the unlawful prong of the UCL should be dismissed.  *See Johnson v. Ocwen Loan Servicing, LLC*, No. 5:17-cv-1373-JGB-SP, 2017 WL 10581088, at *7 (C.D. Cal. Dec. 11, 2017) (holding that, because the plaintiff's other claims fail, "so too does her UCL claim under the unlawful prong").

   ***Fourth***, the FAL "prohibit[s] false or misleading advertising . . . which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  *Nationwide Biweekly Admin., Inc. v. Super. Ct. of Alameda Cnty*., 9 Cal. 5th 279, 306 (2020) (quoting Cal. Bus. Prof'l Code § 17500).  The FAL requires a defendant to make a "false or misleading statement."  *Chern v. Bank of Am.*, 15 Cal. 3d 866, 875 (1976).  The SAC has no alleged statement by any CB Defendant, much less an advertisement that is false or misleading and pleaded with particularity under Rule 9(b).  *See Yumul*, 733 F. Supp. 2d at 1122.  In dismissing Plaintiff's FAL claim against Visa, Judge Carney held that Plaintiff had not even "attempt[ed] to spell out her theory of FAL liability."  Visa MTD Order 29:21-25.  The SAC does no better as to the CB Defendants.

   **2.**  **The SAC Lacks Any Plausible Allegations to Support a Claim for Civil Conspiracy**

   Plaintiff also purports to assert a claim for civil conspiracy against all 20

1    Defendants.  SAC ¶¶ 590-94.  Like Plaintiff's conspiracy claim under the TVPRA,

2    Plaintiff's civil conspiracy claim fails.

3        "Conspiracy is not a cause of action, but a legal doctrine that imposes liability

4    on persons who, although not actually committing a tort themselves, share with the

5    immediate tortfeasors a common plan or design in its perpetration." *Jones v.*

6    *Hollywood Unlocked*, No. 2:21-cv-7929-MEMF-PVC, 2022 WL 18674460, at *12

7    (C.D. Cal. Nov. 22, 2022) (quoting *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,*

8    7 Cal. 4th 503, 510-11 (1994)).  "[T]he conspiracy **must** be accompanied 'by the

9    commission of an actual tort.'"  *Id.* (dismissing conspiracy claim because underlying

10   tort was insufficiently pleaded).  Plaintiff only vaguely identifies the torts that all 20

11   Defendants—including the CB Defendants—purportedly committed.  *See* SAC ¶

12   591; *cf.* Visa MTD Order 30:25-27 (finding that Plaintiff's claim against Visa in the

13   FAC did not "make clear what torts Visa allegedly conspired to commit").  Plaintiff

14   alleges that all 20 Defendants conspired to distribute sexually explicit materials,

15   violate the UCL and the FAL, and violate California's trafficking act.  *See* SAC ¶

16   591 (alleging Defendants conspired to commit unlawful acts under California

17   statutes).  These conclusory allegations and generalities are not sufficient to state a

18   claim for civil conspiracy.  *Gifford v. Hornbrook Fire Prot. Dist.*, No. 2:16-cv-596-

19   JAM-DMC, 2021 WL 4168532, at 21 (E.D. Cal. Sept. 14, 2021) ("Plaintiffs must

20   plead conspiracy with specificity.").

21       Furthermore, a civil conspiracy claim "allows tort recovery only against a

22   party who already owes [a] duty [to the plaintiff] and is not immune from liability

23   based on applicable substantive tort law principles."  *Applied Equip. Corp.*, 7 Cal.

24   4th at 514.  Here, the only alleged conduct linking the CB Defendants to the rest of

25   the alleged conspiracy is the two loans in 2011 and 2013.  "A lender does not owe a

26   borrower or third party any duties 'beyond those expressed in the loan agreement,

27   excepting those imposed due to special circumstance or a finding that a joint venture

28   exists.'"  *River Colony Ests. Gen. P'ship v. Bayview Fin. Trading Grp., Inc.*, 287 F.

Supp. 2d 1213, 1224 (S.D. Cal. 2003); *see also Resolution Tr. Corp. v. BVS Dev., Inc.*, 42 F. 3d 1206, 1214 (9th Cir. 1994) (citing *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991)).  As explained in Section IV.C below, participation in loans is insufficient to create in the CB Defendants a duty to Plaintiff.  Therefore, the CB Defendants cannot be liable to Plaintiff for conspiracy to commit those torts.

Separate from the failure to plead an underlying tort, Plaintiff also does not plead a civil conspiracy.  A claim for civil conspiracy requires the plaintiff to show "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Ajzenman v. Off. of Comm'r of Baseball*, 487 F. Supp. 3d 861, 867 (C.D. Cal. 2020) (citation omitted).  None of those elements exists here.

***No formation or operation of conspiracy.***  Plaintiff must show that the CB Defendants had "(i) knowledge of wrongful activity, (ii) agree[d]to join in the wrongful activity, and (iii) inten[ded] to aid in the wrongful activity." *Ajzenman*, 487 F. Supp. 3d at 867 (citation omitted).  Plaintiff's allegations, however, contain a fundamental defect that negates Plaintiff's attempt to assert a civil conspiracy claim: The SAC does not allege that the CB Defendants ***agreed*** with a MindGeek defendant or anyone else to perpetuate CSAM on MindGeek's websites or "deceive the public." *Contra* SAC ¶ 591; *see Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d at 412 (finding an agreement to provide banking services that allegedly assisted the borrower's sex-trafficking venture was insufficient to show an actual agreement to participate in the venture); *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1288 (C.D. Cal. 2015) (dismissing conspiracy claim because there were "no allegations concerning when or where such a conspiracy was conceived . . . [or] who—as [] representative[s] for [the defendants]—conceived of, entered into or carried out the conspiracy"); *A. B. v. Salesforce.com, Inc.*, No. 4:20-cv-1254, 2021 WL 3616097, at *6 (S.D. Tex. Mar. 22, 2021) (holding that the plaintiff must

- 28 -

sufficiently allege an agreement to commit the trafficking violation).  Conclusory allegations, such as Plaintiff's allegation that "Defendants conspired," do not survive dismissal.  SAC ¶ 591; *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [under Rule 8(a)(2)].");  *Sloatman v. Housewright*, No. 2:21-cv-8235-DOC-MAA, 2022 WL 4390458, at *5 (C.D. Cal. Sept. 6, 2022), *report and recommendation adopted*, No. 2:21-cv-8235-DOC-MAA, 2022 WL 4389514 (C.D. Cal. Sept. 22, 2022) (citation omitted) (lumping multiple defendants together "in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)").

Nor has Plaintiff alleged plausible facts to support an inference of conspiracy. Plaintiff contends—through conclusory and implausible allegations—that the CB Defendants profited from CSAM by providing loans to the MindGeek Borrowers. *See* SAC ¶ 246.  But this does not establish that the CB Defendants **agreed to participate** in perpetuating CSAM or any other allegedly wrongful conduct.  *117 Sales Corp. v. Olsen*, 80 Cal. App. 3d 645, 650 (1978) ("bare legal conclusions . . . [i]nferences, generalities, [and] presumptions, are insufficient"); *Buick v. World Sav. Bank*, 637 F. Supp. 2d 765 (E.D. Cal. 2008) (finding a defendant's letter hiring the alleged tortfeasor insufficient to show the defendant conspired with the alleged tortfeasor); *Hollywood Unlocked*, 2022 WL 18674460, at *12-13 (citing *Wasco Prods., Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 991-92 (9th Cir. 2006)) (finding the defendant's alleged conduct insufficient to infer a conspiracy).

Plaintiff also does not allege plausible facts to support that the CB Defendants knew of or intended to aid an alleged conspiracy.  *See, e.g.*, *Salesforce*, 2021 WL 3616097, at *6 (holding that executing an agreement did not establish that the defendant "had sex trafficking as an 'object to be accomplished'").  A civil conspiracy claim requires more than just alleging that a lender financially benefitted from the alleged tortfeasor's wrongful conduct. *See Douglas v. Hirson*, 63 F.4th 49, 56-57 (1st Cir. 2023) (dismissing conspiracy claim against lenders because the

allegations did not show that the lenders had conspired to commit a wrongful act); *Benson v. JPMorgan Chase Bank, N.A.*, No. 3:09-cv-5272-EMC, 2010 WL 1526394, at *6 (N.D. Cal. Apr. 15, 2010) (holding that a bank's financial incentive to accept deposits from Ponzi-scheme promoters did not establish intent to enter a conspiracy agreement); *Craigslist*, 942 F. Supp. 2d at 982 (holding that a defendant's incentive to use information obtained through alleged misconduct, or the existence of a market for such information, does not plausibly suggest intent to assist in the wrongful conduct required to obtain the information) (citing *Benson*, 2010 WL 1526394, at *6). Plaintiff does not allege that the CB Defendants had any involvement with Plaintiff's alleged traffickers (or any alleged traffickers) or videos of Plaintiff (or any CSAM content). The SAC's bare conclusions and presumptions do not show an agreement for a conspiracy claim. *See State ex rel. Metz v. CCC Info. Servs., Inc.*, 149 Cal. App. 4th 402, 419 (2007).

***No wrongful conduct in support of alleged conspiracy.*** For the civil conspiracy claim against all Defendants, the SAC lists 19 purportedly wrongful and overt acts. SAC ¶ 592. But only one of those alleged acts could even remotely be related to the CB Defendants—providing loans to the MindGeek Borrowers and profiting from payments of the debt. *Id.* ¶ 592(r). This conduct is not wrongful. Nor does the conduct indicate that the CB Defendants provided the loans for furthering the alleged conspiracy to perpetuate CSAM on MindGeek's websites or deceive the public or in any way that related to Plaintiff. *Contra id.* ¶ 591.

***No damages arising from alleged wrongful conduct.*** For the same reasons explained in Section III above and Section IV.C below that show that Plaintiff lacks standing and that the CB Defendants did not cause Plaintiff's injuries, Plaintiff similarly does not plausibly allege that Plaintiff's injuries (damages) arose from allegedly wrongful conduct of a CB Defendant. Plaintiff in fact alleges the opposite—CSAM exploded on MindGeek websites, and some videos of Plaintiff were on Pornhub, after the CB Defendants exited any loans to the MindGeek

- 30 -

1  Borrowers. *See id.* ¶¶ 110, 245, 275.  Plaintiff's implausible and conclusory

2  allegations are insufficient to survive dismissal of Plaintiff's civil conspiracy claim

3  under Rule 12(b)(6).

4  **3.    The California Claims Are Also Barred by Statutes of**

5  **Limitations**

6  The statute of limitations for a UCL claim is four years and for a FAL claim is

7  three years.  Cal. Bus. & Prof. Code § 17208 (UCL); *Yumul*, 733 F. Supp. 2d at 1130

8  (applying the three-year statute of limitations in Section 338(a) of the California Code

9  of Civil Procedure to a claim under the FAL).  The statute begins to run "when the

10  last element essential to the cause of action occurs and the plaintiff is entitled to

11  maintain an action." *Kader v. S. California Med. Ctr., Inc.*, 99 Cal. App. 5th 214,

12  223 (2024).  The statute of limitations for a civil conspiracy claim is based on the

13  underlying wrong. *Al-Ahmed v. Twitter, Inc.*, 648 F. Supp. 3d 1140, 1157, n.2 (N.D.

14  Cal. 2023).  The statute "begins to run from the time of the last overt act committed

15  in furtherance of the conspiracy." *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1099

16  (C.D. Cal. 2009) (citing *People v. Zamora*, 18 Cal.3d 538, 548 (1976)).

17  As explained above, for Plaintiff's UCL and FAL claim, Plaintiff alleges that

18  "Defendants" participated in a sex-trafficking venture, fraudulently deceived "its

19  users," profited by selling advertising, and profited by featuring the videos of

20  Plaintiff.  SAC ¶¶ 574-77.  Plaintiff's conspiracy claim vaguely alleges that all 20

21  Defendants conspired to commit unlawful acts under California statutes by

22  distributing sexually explicit materials, violating the UCL and the FAL, and violating

23  California's trafficking act. *See id.* ¶ 591.

24  Plaintiff alleges that the first video of Plaintiff was uploaded, and Plaintiff

25  found out about it, in 2014. *Id.* ¶¶ 448-53.  Plaintiff also alleges that other videos of

26  Plaintiff were still on Pornhub as recently as June 2020 (*id.* ¶¶ 457-58); however,

27  Plaintiff's theory of liability against the CB Defendants for all Plaintiff's claims is

28  based on the CB Defendants providing loans to the MindGeek Borrowers, which

1   Plaintiff admits ceased in 2018 (*id.* ¶¶ 245, 275).  Plaintiff first asserted any claim

2   against the CB Defendants in the SAC, which Plaintiff filed on May 23, 2024.  This

3   was almost 10 years after the first video of Plaintiff was uploaded and at least five

4   years and five months since the CB Defendants exited all loans—the last possible

5   element essential to Plaintiff's causes of action against the CB Defendants (UCL and

6   FAL), and necessarily the time of the last alleged overt act by a CB Defendant

7   (conspiracy).  *See, e.g.*, *Carroll v. Lee*, No. 2:08-cv-975-RSL, 2009 WL 2855727 at

8   *2 (W.D. Wash. Aug. 31, 2009) ("A defendant's withdrawal from the conspiracy

9   starts the running of the statute of limitations as to him.").  The statutes of limitations

10  of three and four years thus bar Plaintiff's claims under California law.

11         Plaintiff cannot save the SAC's California-law claims by alleging that Plaintiff

12  purported to assert claims against "Colbeck Capital Does 1-10" in the Initial

13  Complaint and "Colbeck Capital Does 1-5" in the FAC.  Doe Defendants toll

14  applicable statutes of limitations only if the plaintiff is "'genuinely ignorant' of the

15  defendant's identity or the facts rendering [the] defendant liable when the original

16  complaint was filed." *Morris v. Sun Pharma Glob.*, No. 2:20-cv-10441-PA-JPR,

17  2021 WL 3914235 at *2-3 (C.D. Cal. Apr. 22, 2021); *see also* Cal. Civ. Proc. Code

18  § 474 ("[W]hen [the defendant's] true name is discovered, the pleading or proceeding

19  must be amended accordingly.").  In the Initial Complaint and in the FAC, however,

20  Plaintiff identified "Colbeck Capital Management LLC Doe(s)" as defendants and

21  alleged that Colbeck Capital Management, LLC, along with other unidentified CB

22  entities, loaned to MindGeek.  Initial Compl. ¶ 57, FAC ¶ 30.  Plaintiff thus knew

23  about Colbeck Capital Management, LLC and its alleged role when Plaintiff filed the

24  Initial Complaint.  Plaintiff was not ignorant—Plaintiff simply delayed in deciding

25  to assert claims against the CB Defendants.  Neither the Initial Complaint nor the

26  FAC tolled the statutes of limitations, which bar Plaintiff's claims under California

27  law.

28

AMERICAS 127550937

C.    **All of Plaintiff's Claims Fail Because the CB Defendants—as Participants in Loans to "MindGeek" in 2011 and 2013—Did Not *Cause* Plaintiff's Alleged Injuries**

Plaintiff must show causation for each of Plaintiff's four claims against the CB Defendants. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014) (statutory claims are presumptively limited to a plaintiff whose injuries are "proximately caused by violations of the statute"); *Doe v. Wyndham Hotels & Resorts*, No. 8:23-cv-1554-JVS-JDE, 2024 WL 2104596, at *3 (C.D. Cal. Feb. 28, 2024) (TVPRA claims "must connect the dots between Plaintiff's alleged sex trafficking and the [defendant]"); *Kwikset Corp., 51 Cal. 4th at 326* (UCL and FAL claims); *Ajzenman,* 487 F. Supp. 3d at 867 (civil conspiracy claim). Plaintiff fails to plausibly allege that any CB Defendant caused Plaintiff's injuries.

As explained above in Section III, Plaintiff's injuries are neither fairly traceable to nor caused by the CB Defendants. Those same reasons show that Plaintiff has failed to plead causation for Plaintiff's claims. *See, e.g.*, *Lexmark*, 572 U.S. at 133-34 (noting that the "injury [must] flow[ ] directly from" the conduct of the defendant); *Justo v. Indymac Bancorp*, No. 8:09-cv-1116-JVS-AGR, 2010 WL 623715, at *4-5 (C.D. Cal. Feb. 19, 2010) (A plaintiff fails to satisfy the causation requirement for UCL and FAL claims if he or she "would [have] suffer[ed] the same harm whether or not a defendant complied with the law." (quoting *Daro*, 151 Cal. App. 4th at 1099)). The Ninth Circuit has reiterated that a determination of proximate cause may not be extended "'beyond the first step' of the causal chain." *City of Oakland v. Wells Fargo & Co.*, 14 F.4th 1030, 1035 (9th Cir. 2021) (finding that the plaintiff failed to plead proximate cause because the plaintiff's theory of liability extended beyond the first step of the causal chain and "rest[ed] on . . . separate actions carried out by separate *parties*"); *see also Lexmark,* 572 U.S. at 133 ("proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct"). Judge Carney held that Visa's conduct was a

proximate cause of Plaintiff's alleged injuries because they allegedly "flow from the monetization of her videos and the acts taken to effectuate and maximize that monetization."  Visa MTD Order 26:9-11.  The same cannot be said about the CB Defendants.

Indeed, a lender-borrower relationship—unlike direct participation in allegedly wrongful conduct—is insufficient to render the lender liable for alleged misconduct of the borrower.

> The general rule is that the mere loan of money by one corporation to another does not automatically make the lender liable for the acts and omissions of the borrower.  The logic of this rule is apparent, for otherwise no lender would be willing to extend credit.  The risks and liabilities would simply be too great.

*Krivo Indus. Supply Co. v. Nat'l Distillers & Chemical Corp.*, 483 F.2d 1098, 1104 (5th Cir. 1973).  Courts are reluctant to hold a lender liable for the acts of a borrower that allegedly violated a federal statute.  *See, e.g.*, *Hirson*, 63 F.4th at 56-57 (refusing to impose liability on lenders under RICO); *Z & Z Leasing, Inc. v. Graying Reel, Inc.*, 873 F. Supp. 51, 55 (E.D. Mich. 1995) (refusing to impose liability on bank); *cf.* 42 U.S.C. § 9601(20) (providing that, under federal environmental statute, the term "owner or operator" does not include a person who holds "indicia of ownership primarily to protect his security interest," and that a lender does not "participate in management" simply by "having the capacity to influence, or the unexercised right to control, vessel or facility operations").  Indeed, "[s]ecured lenders frequently have some routine involvement in the financial affairs of their debtors in order to insure that their interests are being adequately protected," but imposing liability on this basis would be punishing the lender for "engaging in its normal course of business."  *Z & Z Leasing*, 873 F. Supp. at 55.

Plaintiff does not overcome this presumption against lender liability by alleging that the Colbeck Syndicate practically or effectively owned MindGeek.  *See*

- 34 -

SAC ¶¶ 251, 259. As explained above in Section II.D, these allegations lack plausibility or support—and in fact Plaintiff contradicts them. But they also cannot allege causation because there must be an alter ego or agency relationship for the actions of one entity (the MindGeek Borrowers) to be imputed to another (the CB Defendants). *See Plutos Sama Holdings, Inc. v. Jagex Ltd.*, No. 8:21-cv-133-JVS-JDE, 2022 WL 1536590, at *7 (C.D. Cal. Jan. 12, 2022) (refusing to impute knowledge and actions of one defendant to another without plausible facts alleging agency relationship); *Rozario v. Richards,* No. 2:14-cv-9540-AB-JPR, 2015 WL 13357613, at *6 (C.D. Cal. Apr. 22, 2015) (same; holding that courts will not assume agency relationships). Plaintiff does not allege, nor could Plaintiff plausibly allege, that any MindGeek entity was the alter ego or the agent of the CB Defendants. Plaintiff's claims fail because the CB Defendants did not cause Plaintiff's alleged injuries.

> **D.** **Section 230 Also Bars Plaintiff's Claims Against the CB Defendants**

Section 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). That immunity applies if (1) the defendant is a "provider . . . of an interactive computer service," and (2) the claim seeks to hold the defendant liable as a "publisher or speaker" of (3) content provided by someone else. *Id.*; *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1096 (9th Cir. 2019).

Plaintiff's claims arise out of content (videos of Plaintiff) provided by a third party (the persons who posted the videos). *See, e.g.*, SAC ¶¶ 448-60. Plaintiff alleges that the MindGeek Entity Defendants are liable for that content (as publishers or speakers). *See, e.g.*, *id.* ¶¶ 449-54, 458, 462, 468-69. Plaintiff's theory against the CB Defendants is ultimately that they are liable for that content as lenders to the MindGeek Borrowers, the entities that operated and provided (or were affiliated with the entities that operated and provided) the websites to which that content was

- 35 -

1    uploaded.  *See, e.g., id.* ¶¶ 449-60, 490-93, 501-502, 574-83, 591-92.

2        The MindGeek Defendants assert that they are entitled to immunity under

3    Section 230 for Plaintiff's claims against them.  *See Doe #1 v. Twitter, Inc.*, No. 22-

4    15103, 2023 WL 3220912 (9th Cir. May 3, 2023).  Congress enacted Section 230 "to

5    promote the free exchange of information and ideas over the Internet."  *Barnes v.*

6    *Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009); *see also Batzel v. Smith*, 333 F.3d

7    1018, 1027 (9th Cir. 2003) ("Congress wanted to encourage the unfettered and

8    unregulated development of free speech on the Internet, and to promote the

9    development of e-commerce.").   To hold a lender liable for claims when the

10   interactive computer service provider to which the loan was made is immune defies

11   the purpose of Section 230.  In addition to being wholly illogical, that result would

12   discourage loans to providers of interactive computer services for fear of being held

13   liable for conduct from which the service provider itself is immune.  If the Court

14   dismisses claims against the MindGeek Entity Defendants under Section 230, the

15   Court should also dismiss the claims against the CB Defendants.

16   **E.    The Court Should Dismiss Plaintiff's Claims Against the CB**

17        **Defendants with Prejudice**

18        Plaintiff cannot remedy the legal deficiencies in the claims against the CB

19   Defendants by amending the complaint a third time.  All four *Foman* factors favor

20   the Court dismissing Plaintiff's claims with prejudice under Rule 15(a)(2).  *Foman*

21   *v. Davis*, 371 U.S. 178, 182 (1962).

22        ***Undue delay.***  "Undue delay is delay that prejudices the nonmoving party."

23   *Davis v. Powell*, 901 F. Supp. 2d 1196, 1212 (S.D. Cal. 2012).  This case has been

24   pending for over three years, and Plaintiff added the CB Defendants only recently.

25   Plaintiff apparently knew about the loans in which the CB Defendants participated

26   because Plaintiff named "Colbeck Capital Doe" defendants in the Initial Complaint,

27   and yet still delayed in bringing claims.  This has hung a reputational cloud over the

28   CB Defendants for more than three years.  Moreover, based on Plaintiff's allegations,

Plaintiff's purported claims first arose in 2014, and the CB Defendants participated in loans in 2011 and 2013 to the MindGeek Borrowers. *See* SAC ¶¶ 245, 448. Plaintiff's delay in filing meritless claims based on alleged conduct from up to 13 years ago has prejudiced the CB Defendants.

*Futility.* As explained in this Motion, Plaintiff bases all claims against the CB Defendants not only on implausible, conclusory, unsupported, and contradicted allegations—but also on unsupportable legal theories, including, as to Plaintiff's TVPRA claims, theories rejected by the Ninth Circuit. Many fatal defects exist in all of Plaintiff's claims, and any amendment to attempt to cure them would be futile. *Atkinson v. Meta Platforms, Inc.*, No. 20-17489, 2021 WL 5447022, at *3 (9th Cir. Nov. 22, 2021) ("Dismissal with prejudice and without leave to amend is appropriate when any amendment would be futile.").

*Repeated failure to cure deficiencies and bad faith.* Despite multiple bites at the apple, rather than rectify the inherent flaws in Plaintiff's previous two complaints, Plaintiff compounded those flaws by making them worse. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (holding that the failure to correct previously noted deficiencies is "a strong indication that the plaintiffs have no additional facts to plead"); *Smith v. Albee*, No. 2:15-cv-1598-JAM-KJN, 2019 WL 2952962, at *3 (E.D. Cal. July 9, 2019) (inferring bad faith because the plaintiff's "proposed amended pleading suffer[ed] many of the same defects" as previous pleading). For example, rather than address the deficiencies in the claims that Plaintiff asserted against Visa in the FAC, or the group-pleading problem in the claims against the MindGeek Defendants, Plaintiff simply added new defendants in the SAC—the four CB Defendants and the six Redwood Defendants—and asserted the claims with the same—and many more—issues.

*Undue prejudice*. As explained above as to undue delay, allowing Plaintiff to continue to assert claims against the CB Defendants through another amendment would be unduly prejudicial. *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip.*,

- 37 -

1    *Inc.*, No. 1:11-cv-00030-AWI-SMS, 2013 WL 398664, at *6 (E.D. Cal. Jan. 31,

2    2013) (finding prejudice because two years elapsed since the plaintiff knew but chose

3    not to allege the facts).  This is especially true given the futility of such claims.  *See,*

4    *e.g.*, *Life Savers Concepts Ass'n of California v. Wynar*, 387 F. Supp. 3d 989, 996

5    (N.D. Cal. 2019) (finding amendment would be unduly prejudicial to the defendant

6    because it would have been futile based on controlling law).

7         The SAC's allegations against the CB Defendants were publicized once the

8    SAC was filed.  A decision denying this Motion, even in part, or allowing Plaintiff

9    to replead allegations against the CB Defendants will likely result in even more

10   negative publicity.  Indeed, there was significant attention related to Judge Carney's

11   ruling on Visa's motion to dismiss.  Plaintiff's law firm also issued a press release

12   titled "Brown Rudnick Secure[d] [a] Landmark Ruling Against Visa in MindGeek

13   Child Porn and Sex Trafficking Case."   Brown Rudnick (Aug. 1, 2022),

14   https://brownrudnick.com/press_release/brown-rudnick-secures-landmark-ruling-

15   against-visa-in-mindgeek-child-porn-and-sex-trafficking-case/.  With sympathy for

16   the difficult and painful alleged circumstances, the Court should dismiss the SAC

17   with prejudice and thus prevent false allegations and flawed legal theories from

18   disparaging the CB Defendants—independent SEC-regulated lenders with no

19   involvement in the alleged wrongful conduct—any more than the SAC already has.

20   **V.    CONCLUSION**

21        For these reasons, the Court should grant the Motion and dismiss the SAC

22   against the CB Defendants with prejudice.

23

24

25

26

27

28

1   Dated:  August 30, 2024

2

3                                        WHITE & CASE LLP

4                                        By: _David G. Hille_
                                             David G. Hille

5

6                                        Attorneys for Defendants
                                         COLBECK CAPITAL
7                                        MANAGEMENT, LLC; CB MEDIA
                                         VENTURES DD, LLC; CB AGENCY
8                                        SERVICES, LLC; and CB
                                         PARTICIPATIONS SPV, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 39 -

1

## **CERTIFICATE OF COMPLIANCE**

2      The undersigned, counsel of record for the CB Defendants, certifies that the

3 Memorandum of Points and Authorities in Support of the Motion to Dismiss

4 consists of 38 pages, which complies with the 40-page limit set forth in the Court's

5 August 2, 2024 Order Granting Joint Stipulation Re Briefing Schedule Relating to

6 Defendants' Responses to Plaintiff's Second Amended Complaint, ECF No. 424.

7

8 Dated:  August 30, 2024                    WHITE & CASE LLP

9                                                                By: _____

10                                                                        David G. Hille

11                                                                Attorneys for Defendants
                                                                COLBECK CAPITAL
12                                                                MANAGEMENT, LLC; CB MEDIA
                                                                VENTURES DD, LLC; CB AGENCY
13                                                                SERVICES, LLC; and CB
                                                                PARTICIPATIONS SPV, LLC
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 40 -