**PAUL HASTINGS LLP**
JAMES M. PEARL (SB# 198481)
jamespearl@paulhastings.com
KIAURA CLARK (SB# 336314)
kiauraclark@paulhastings.com
1999 Avenue of The Stars, 27th Floor
Los Angeles, California 90067
Telephone:  1(310) 620-5700
Facsimile:  1(310) 620-5899

KRISTOPHER M. HANSEN (*pro hac vice*)
krishansen@paulhastings.com
200 Park Avenue
New York, New York 10166
Telephone: 1(212) 318-6000
Facsimile: 1(212) 752-3310

ADAM M. REICH (SB# 274235)
adamreich@paulhastings.com
EMMA LANZON (*pro hac vice*)
emmalanzon@paulhastings.com
71 South Wacker Drive, 45th Floor
Chicago, Illinois 60606
Telephone:  1(312) 499-6000
Facsimile:  1(312) 499-6100

*Attorneys for Defendants,*
*Redwood Capital Management, LLC, Redwood*
*Master Fund, Ltd, Redwood Opportunity*
*Master Fund, Ltd, Manuel 2018, LLC,*
*Ginogerum, LLC, and White-Hathaway*
*Opportunity Fund, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENA FLEITES,<br><br>Plaintiff,<br><br>vs.<br><br>MINDGEEK S.A.R.L. a foreign entity; MG FREESITES, LTD., a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; MG PREMIUM LTD, a foreign entity; MG GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 QUEBEC, INC., a foreign entity; BERND BERGMAIR, a foreign individual; FERAS ANTOON, a foreign individual; DAVID TASSILLO, a foreign individual; VISA INC., a Delaware corporation; REDWOOD CAPITAL MANAGEMENT, LLC, a Delaware corporation; REDWOOD MASTER FUND, LTD, a foreign entity; REDWOOD OPPORTUNITY MASTER FUND, LTD, a foreign entity; MANUEL 2018, LLC, a Delaware corporation; GINGOGERUM, LLC, a Delaware corporation; WHITE-HATHAWAY OPPORTUNITY FUND, LLC, | CASE NO. 2:21-cv-4920<br><br>**REDWOOD DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Date:     November 22, 2024<br>Time:     1:30 p.m.<br>Place:    Courtroom 9B<br>Judge:    Hon. Wesley L. Hsu<br><br>SAC filed: May 23, 2024<br><br>[Notice of Motion, Request for Judicial Notice, and Declaration of James M. Pearl in support hereof, filed concurrently herewith] |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   a Delaware corporation; COLBECK CAPITAL
    MANAGEMENT, LLC, a Delaware
2   corporation; CB MEDIA VENTURES LLC, a
    Delaware corporation; CB AGENCY
3   SERVICES, LLC, a Delaware corporation; and
    CB PARTICIPATIONS SPV, LLC, a
4   Delaware corporation,

5                  Defendants.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

**Pages**

I.   Preliminary Statement ........................................................ 1

II.   Statement of Facts ........................................................... 5

   A.   Documents Incorporated by Reference in the SAC............................. 5

   B.   Relevant Procedural History ................................................. 7

   C.   Redwood ..................................................................... 8

   D.   The SAC's Allegations Regarding Redwood.................................... 9

III.   The SAC Should be Dismissed for Lack of Subject Matter Jurisdiction.......14

   A.   Legal Standard ............................................................. 14

   B.   Rule 12(b)(1) Dismissal is Appropriate Because Plaintiff Lacks Article III Standing ........................................................ 14

IV.   The SAC Should be Dismissed Under Rule 12(b)(6)..............................18

   A.   Legal Standard ............................................................. 18

   B.   Plaintiff has Not Stated a TVPRA Claim Against Redwood .............. 19

   C.   The SAC'S Hybrid UCL/FAL Claim is not Legally Viable .............. 32

   D.   The Civil Conspiracy Claim is Inadequately Pled............................. 36

V.   Conclusion.................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aguilar v. Coast to Coast Comput. Prods., Inc.*
No. 2:23-cv-03996-MCS-E, 2024 WL 635314 (C.D. Cal. Jan. 8, 2024) .......... 18

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*
7 Cal. 4th 503 (Cal. 1994) .................................................................. 38

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ............................................................. 18, 19, 38

*Associated Gen. Contractors of Cal., Inc. v. Carpenters*
459 U.S. 519 (1983) (Clayton Act) ................................................. 21

*B.J. v. G6 Hosp., LLC*
No. 22-CV-03765-MMC, 2023 WL 3569979 (N.D. Cal. May 19, 2023) ... 25, 26

*B.M. v. Wyndham Hotels & Resorts, Inc.*
No. 20-CV-00656-BLF, 2020 WL 4368214 (N.D. Cal. July 30, 2020) 25, 26, 27, 28

*Bank of Am. Corp. v. City of Miami*
581 U.S. 189 (2017) ................................................................. 21, 22

*Bassam v. Bank of Am.*
No. CV 15-00587 MMM, 2015 WL 4127745 (C.D. Cal. July 8, 2015) ............ 38

*Baumer v. Pachl*
8 F.3d 1341 (9th Cir. 1993) ............................................................. 30

*C.f. Woodhull Freedom Found. v. United States*
72 F.4th 1286 (D.C. Cir. 2023) ....................................................... 21

*Carafano v. Metrosplash.com, Inc.*
339 F.3d 1119 (9th Cir. 2003) ......................................................... 20

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*
20 Cal. 4th 163 (1999) .................................................................... 35

*Cetacean Cmty. v. Bush*
386 F.3d 1169 (9th Cir. 2004) ......................................................... 14

REDWOOD DEFENDANTS' MEM. OF P. & A. ISO MOTION TO DISMISS

*Chavez v. Whirlpool Corp.*
    93 Cal. App. 4th 363 (2001) ....................................................................35

*City of Oakland v. Wells Fargo & Co.*
    14 F.4th 1030 (2021) (en banc) ...............................................................22

*Craigslist Inc. v. 3Taps Inc.*
    942 F. Supp. 2d 962 (N.D. Cal. 2013) ...............................................31, 36

*Daniel v. Nat'l Park Serv.*
    891 F.3d 762 (9th Cir. 2018) ...................................................................17

*Davis v. HSBC Bank Nev., N.A.*
    691 F.3d 1152 (9th Cir. 2012) .................................................................19

*Doe #9 v. Wyndham Hotels & Resorts, Inc.*
    No. 4:19-CV-5016, 2021 WL 1186333 (S.D. Tex. Mar. 30, 2021)...................27

*Doe 1 v. Deutsche Bank Aktiengesellschaft*
    671 F. Supp. 3d 387 (S.D.N.Y. 2023) ......................................................31

*Doe v. Mindgeek USA Inc.*
    558 F. Supp. 3d 828 (C.D. Cal. Sept. 3, 2021) ....................................21, 24

*Does 1-6 v. Reddit, Inc.*
    51 F.4th 1137 (9th Cir. 2022)...................................................................21

*E.D.C. Techs., Inc. v. Seidel*
    No. 16-cv-03316-SI, 2016 WL (N.D. Cal. Sept. 1, 2016) ...............................33

*E.S. v. Best W. Int'l, Inc.*
    510 F. Supp. 3d 420 (N.D. Tex. 2021) ....................................................27

*Everest Invs. 8 v. Whitehall Real Est. Ltd. P'shp XI*
    100 Cal. App. 4th 1102 (2002) ................................................................40

*Fleites v. Mindgeek S.A.R.L.*
    617 F. Supp. 3d 1146 (2022) ..........................................................*passim*

*Freeman v. Time, Inc.*
    68 F.3d 285 (9th Cir. 1995) .....................................................................35

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*
    528 U.S. 167 (2000) .............................................................................3, 14

*Gamino v. Thinx Inc.*
    No. EDCV 23-2067 ..............................................................................32

*Gifford v. Hornbrook Fire Prot. Dist.*
    No. 2:16-CV-0596-JAM-DMC, 2021 WL 4168532 (E.D. Cal. Sept. 14, 2021) ..........................................................................................37, 38

*Grant v. Aurora Loan Servs., Inc.*
    736 F. Supp. 2d 1257 (C.D. Cal. 2010) ..............................................5

*Hashimoto v. Clark*
    264 B.R. 585 (D. Ariz. 2001) ............................................................30

*Holmes v. Sec. Inv. Prot. Corp.*
    503 U.S. 258 (1992) (Scalia, J., concurring in the judgment) ......................2, 21

*In re Kelly*
    841 F.2d 908 (9th Cir. 1988) ..............................................................2

*In re Sagent Tech., Inc., Deriv. Litig.*
    278 F. Supp. 2d 1079 (N.D. Cal. 2003) ............................................34

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*
    534 F. Supp. 3d 1067 (N.D. Cal. 2021) ............................................32

*J.B. v. G6 Hosp., LLC*
    No. 19-CV-07848-HSG, 2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ....25, 26

*J.B. v. G6 Hosp., LLC*
    No. 19-cv-07848-HSG, 2021 WL 4079207 (N.D. Cal. Sept. 8, 2021), *aff'd sub nom. J.B. v. Craigslist, Inc.*, No. 22-15290, 2023 WL 3220913 (9th Cir. May 3, 2023) ..............................................................19

*J.C. v. Choice Hotels Int'l, Inc.*
    No. 20-CV-00155-WHO, 2020 WL 6318707 (N.D. Cal. Oct. 28, 2020)...20, 27, 28

*Jones v. L.A. Cent. Plaza LLC*
    74 F.4th 1053 (9th Cir. 2023) ............................................................14

*Kearns v. Ford Motor Co.*
    567 F.3d 1120 (9th Cir. 2009) ............................................................34

*Kidron v. Movie Acquisition Corp.*
    40 Cal. App. 4th 1571 (1995) ............................................................36

REDWOOD DEFENDANTS' MEM. OF P. & A. ISO MOTION TO DISMISS

*Kim v. Sumitomo Bank of Cal.*
  17 Cal. App. 4th 974 (1993) ............................................................................ 30, 39, 40

*Korea Supply Co. v. Lockheed Martin Corp.*
  29 Cal. 4th 1134 (2003) ......................................................................................... 35

*Lacano Invs., LLC v. Balash*
  765 F.3d 1068 (9th Cir. 2014) ................................................................................. 5

*Lingad v. Indymac Fed. Bank*
  682 F. Supp. 2d 1142 (E.D. Cal. 2010) ............................................................... 36

*Maya v. Centex Corp.*
  658 F.3d 1060 (9th Cir. 2011) ............................................................................... 15

*Nationwide Biweekly Admin., Inc. v. Superior Court*
  9 Cal. 5th 279 (2020) ............................................................................................ 34

*Niederreuther v. Schifter*
  No. C96–0126 THE, 1998 WL 409876 (N.D. Cal. July 14, 1998) .................... 30

*Okada v. Bank of Am., N.A.*
  No. SACV 15 00981CJC(Ex), 2015 WL 5556937 (C.D. Cal. Sept. 16,
  2015) ...................................................................................................................... 33

*People v. McKale*
  25 Cal. 3d 626 (1979) ........................................................................................... 35

*Peterson Dev. Co. v. Torrey Pines Bank*
  233 Cal. App. 3d 103 (1991) ................................................................................ 39

*Ratha v. Phatthana Seafood Co.*
  35 F.4th 1159 (9th Cir. 2022), *cert. denied,* 143 S. Ct. 491 (2022) .................. 28

*Ratha v. Phatthana Seafood Co.*
  No. CV 16-4271-JFW (ASX), 2023 WL 2762044 (C.D. Cal. Mar. 3,
  2023), *aff'd sub nom. Ratha.* __ F.4th __, 2024 WL 3589751 .......................... 29

*Ratha v. Rubicon Res., LLC*
  __ F.4th __, 2024 WL 3589751 (9th Cir. July 31, 2024) ........................... *passim*

*River Colony Ests. Gen. P'ship v. Bayview Fin. Trading Grp., Inc.*
  287 F. Supp. 2d 1213 (S.D. Cal. 2003) ............................................................... 39

REDWOOD DEFENDANTS' MEM. OF P. & A. ISO MOTION TO DISMISS

*RTC v. BVS Dev., Inc.*
    42 F.3d 1206 (9th Cir. 1994) ................................................................. 39, 40

*Safe Air for Everyone v. Meyer*
    373 F.3d 1035 (9th Cir. 2004) ...................................................................... 14

*Smith v. State Farm Mut. Auto. Ins. Co.*
    93 Cal. App. 4th 700 (2001) ......................................................................... 35

*Sollberger v. Wachovia Secs., LLC*
    No. SACV 09-0766 ....................................................................................... 33

*Stein v. World-Wide Plumbing Supply Inc.*
    71 F. Supp. 3d 320 (E.D.N.Y. 2014) ............................................................ 30

*Thinking Liberally Media Inc. v. Orange Juice Blog*
    No. SACV 10-00139, 2010 WL 11596144 (C.D. Cal. Nov. 19, 2010) ....... 36, 37

*Vess v. Ciba-Geigy Corp. USA*
    317 F.3d 1097 (9th Cir. 2003) ................................................................. 34, 35

*Vrugtman v. Its Just Lunch Int'l LLC*
    No. EDCV20 2352 JGB, 2023 WL 6369765 (C.D. Cal. Aug. 25, 2023) ......... 32

**STATUTES**

47 U.S.C. § 230 ................................................................................................. 20

18 U.S.C. § 1591 ................................................................................................. 8

18 U.S.C. § 1594 ................................................................................................. 8

18 U.S.C. § 1595 .......................................................................................... *passim*

Cal. Bus. & Prof. Code § 17200 ............................................................... 8, 5, 35

Cal. Bus. & Prof. Code § 17500 ................................................................... 8, 34

REDWOOD DEFENDANTS' MEM. OF P. & A. ISO MOTION TO DISMISS

## I.    **PRELIMINARY STATEMENT**

This case must be dismissed as to the newly-named Redwood Defendants[1] pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rules") because the Second Amended Complaint ("SAC") fails to allege any facts to satisfy Article III standing, as required for Plaintiff Serena Fleites ("Plaintiff") to assert her claims against Redwood, and thus this Court lacks subject matter jurisdiction over these claims.  In addition, or in the alternative, this case should be dismissed pursuant to Rule 12(b)(6) because the SAC fails to plausibly allege statutory standing (*i.e.*, proximate causation) and the requisite elements of any cause of action against Redwood.

Each of the above reasons for dismissal arises from a simple, common, and incontrovertible premise: Redwood had no involvement whatsoever in Plaintiff's alleged trafficking and sexual exploitation.  In fact, Redwood has *no* connection to Plaintiff or to the two men who, despicably, allegedly caused her sexually explicit videos to be uploaded to the internet.  Redwood's *only* alleged connection to this litigation is that it (along with many other lenders) loaned money to MindGeek,[2] which in turn owns websites that, for a time, allegedly hosted sexually explicit videos depicting Plaintiff when she was a minor.  But the SAC conspicuously omits that Redwood is not a current lender to MindGeek, and has not been for several years, and that each at-issue loan agreement to which Redwood was a party with MindGeek (all of which expired years ago) expressly obligated MindGeek *not* to host child sexual abuse material ("CSAM"), *not* to violate any obscenity laws, and *not* to violate

---

[1] Redwood Capital Management, LLC, Redwood Master Fund, Ltd., Redwood Opportunity Master Fund, Ltd., Manuel 2018, LLC, Ginogerum, LLC (erroneously sued as Gingogerum, LLC), and White-Hathaway Opportunity Fund, LLC (collectively, the "Redwood Defendants" or "Redwood").

[2] "MindGeek" collectively refers to defendants MindGeek S.A.R.L., MG Freesites, Ltd., MindGeek USA Incorporated, MG Premium LTD, MG Global Entertainment Inc., 9219-1568 Quebec, Inc., and other affiliated entities.

REDWOOD DEFENDANTS' MEM. OF P. & A. ISO MOTION TO DISMISS

1  any criminal statutes.

2   Moreover, nowhere in any of its 171 pages does the SAC include allegations

3  that Redwood knew about, condoned, or encouraged any action whatsoever

4  regarding Plaintiff.  Instead, all the SAC can (and does) allege is that Redwood

5  functioned as a simple money lender.  It issued loans to MindGeek and collected

6  fixed coupon payments at regular intervals.  And that is not enough to inculpate

7  Redwood for *proximately causing* Plaintiff's injuries.

8   The scope of actors bearing *some* remote connection to the events at issue in

9  this case, which involves websites and an alleged cybercrime, is virtually limitless.

10  But that is precisely the reason why there must be—and are—clear bounds to the

11  courts' reach in imposing liability upon actors with only the most tangential,

12  unknowing, and unintentional connection to the wrongdoing against Plaintiff.

13  Indeed, "[f]or centuries, it has been 'a well established principle of [the common]

14  law . . . that the judicial remedy cannot encompass every conceivable harm that can

15  be traced to alleged wrongdoing.'" *Lexmark Int'l, Inc. v. Static Control Components,*

16  *Inc.*, 572 U.S. 118, 132 (2014).  Instead, courts attribute liability for wrongdoing to

17  "the proximate cause, and not to any remote cause." *Id.*; *see also Holmes v. Sec. Inv.*

18  *Prot. Corp.*, 503 U.S. 258, 287 (1992) (Scalia, J., concurring in the judgment).

19  ("'[F]or want of a nail, a kingdom was lost' is a commentary on fate, not the statement

20  of a major cause of action against a blacksmith").  The proximate cause of Plaintiff's

21  injuries here resulted from her abusers and traffickers, and those who encouraged or

22  enabled them – not a lender who lent money to an internet company (MindGeek) on

23  the explicit condition that the company would *not* host the offending material.

24   With these core principles in mind, all of Plaintiff's causes of action against

25  the Redwood Defendants should be dismissed.

26   ***First***, this Court lacks subject matter jurisdiction over Plaintiff's claims against

27  Redwood and these claims must therefore be dismissed under Rule 12(b)(1). *See In*

28  *re Kelly*, 841 F.2d 908, 917 (9th Cir. 1988) (recognizing that a district court even

"must *sua sponte* dismiss actions whenever it appears that subject matter jurisdiction is lacking").  That is because Plaintiff does not (and cannot) allege that her injuries are "fairly traceable" to Redwood's conduct.  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).  Indeed, the SAC does not (and cannot) allege any actual connection between Redwood, on the one hand, and Plaintiff or any third parties who took her videos and uploaded them to the internet, on the other hand.  Nor does the SAC allege that Redwood played any role in maintaining, programming, operating, moderating, or controlling any websites where violative videos were allegedly uploaded.

All Redwood is alleged to have done is, alongside many other lenders (including some of the world's largest banks and asset managers), issue a loan to MindGeek.  Under basic Constitutional standing principles and controlling California law, an allegation that a lender (here, Redwood) issued a loan to an alleged wrongdoer (here, MindGeek) is insufficient to establish standing to sue the lender.

***Second***, the SAC must *also* be dismissed under Rule 12(b)(6) because it fails to plausibly allege any cause of action asserted against Redwood.  While each of Plaintiff's particular claims fails for its own unique reasons, there is a common flaw underlying each and every claim: the law simply does not (and, frankly, should not) recognize vicarious "lender-liability" for the acts of borrowers.  Put another way, a money-lender – by the simple act of issuing a loan – does not somehow morph into an alter-ego of the borrower, with attendant knowledge of and liability for any actions (however disturbing or unforeseeable) that the borrower may later take.  Such a law would render every bank or lender liable for any actions of its borrowers that it fails to detect and prevent.  And such a theory of vicarious liability has no basis in law.  If adopted, this theory would improvidently expand lender liability by holding lenders liable for all manner of borrower misconduct, even when, as here with respect to Plaintiff, the lender was not involved, in any way, in the conduct at issue.  The law, appropriately, does not impose such expansive liability on lenders, and this basic

- 3 -

principle, that lenders are not liable for the independent misconduct of borrowers, thwarts each of Plaintiff's claims against Redwood on the merits.

The claims against Redwood each also suffer from fatal flaws in pleading.

*TVPRA*:  As an initial matter, Plaintiff lacks standing under the Trafficking Victims Protection Reauthorization Act ("TVPRA") to pursue her beneficiary liability claims against Redwood because she fails to adequately allege that Redwood's alleged conduct proximately caused her injuries.  The SAC further fails to sufficiently plead each of the elements of a beneficiary liability claim against Redwood.  Insofar as MindGeek has shown that it did not violate the TVPRA, Redwood cannot, as a matter of law, be liable as a beneficiary if there was no underlying violation from which to benefit.  Furthermore, as the Court earlier found in dismissing claims against Visa, the SAC also does not establish that Redwood "participated in a venture" that harmed Plaintiff because it does not allege a direct association or continuous business relationship *between Redwood and Plaintiff's trafficker*, nor does the SAC plausibly allege that Redwood "knew or should have known" of *Plaintiff's sex trafficking*.

Finally, under the Ninth Circuit's July 31, 2024 Opinion in *Ratha v. Rubicon Res., LLC*, __ F.4th __, 2024 WL 3589751 (9th Cir. July 31, 2024), Plaintiff also cannot state a claim against Redwood for *conspiracy* to benefit from a TVPRA violation.  Plaintiff's alleged trafficking harm occurred in 2014 (SAC ¶ 448).  The TVPRA was first amended to permit conspiracy claims in 2023.  Under *Ratha,* the TVPRA amendment does not provide for retroactive application and "does not apply to pre-enactment conduct[.]" *Ratha*, __ F.4th __, 2024 WL 3589751, at *17.  Regardless, Plaintiff cannot allege a TVPRA civil conspiracy claim against Redwood because Plaintiff does not allege that Redwood agreed to or intended to violate the TVPRA.  Plaintiff's allegations under Sections 1595 and 1594 therefore fail to state a claim.

*California Unfair Competition/False Advertising*:  Plaintiff's hybrid claim for violation of California's consumer protection statutes, Cal. Bus. & Prof. Code §§ 17200 (the Unfair Competition Law ("UCL")) and 17500 (the False Advertising Law ("FAL")), fails because the Complaint alleges zero facts indicating that Redwood engaged in *any* relevant "competition" or "advertising," let alone any such conduct that rises to the level of a violation of these California consumer protection statutes. To the extent that this hybrid UCL/FAL claim is grounded in fraud, the generic and general allegations of the SAC also fall far short of satisfying the applicable pleading standard of Rule 9(b).

*Civil Conspiracy*: Plaintiff's civil conspiracy claim fails to state a claim because Plaintiff does not plausibly allege that Redwood ever agreed to engage in illegal conduct.  Plaintiff, at most, attempts to allege constructive knowledge of episodic instances of moderation delay or failure.  This does not state a claim for civil conspiracy under California law.

For the foregoing reasons, Redwood should be dismissed from this action with prejudice.

## II.    STATEMENT OF FACTS

### A.    Documents Incorporated by Reference in the SAC

The SAC directly quotes from, references, and/or purports to characterize multiple extrinsic documents without attaching them. *See, e.g.*, SAC ¶¶ 7, 245, 250-51, 260-66, 270, 274-83, 314, 320, 332-43, 353-54, 393, 491, 494-95.  The incorporation by reference doctrine permits the Court, on a Rule 12(b)(6) motion, to consider documents incorporated by reference, but not physically attached to a complaint. *See, e.g.*, *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1264 n.37 (C.D. Cal. 2010).  In addition, courts "may look beyond the complaint and consider extrinsic evidence" when considering Rule 12(b)(1) motions. *See Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014) (citation omitted).  Accordingly, for purposes of this Motion, Redwood attaches herewith and discusses

the following documents extrinsic to, but incorporated by reference in, the SAC:

- ***The financing agreements between Redwood (and other lenders) and MindGeek***, which are no more than standard loan agreements, and as is customary in most financing agreements, imposed a requirement ███ ████████████████ *See* 2013 Financing Agreement (Exhibit B to the Declaration of James Pearl filed herewith ("Pearl Decl.")) █████ 2018 Financing Agreement (Pearl Decl. Ex. C) ███████ Indeed, the financing agreements contain multiple provisions requiring MindGeek's:

  ████████████████████████████████████████

  ████████████

  █ ████████████████████████████████████

  ████████████████████████████████████████

  ████████████████████████████████████████

  ████████████████████████████████████████

  ████████████

  █ ████████████████████████████████████

  ████████████████████████████████████████

  ████████████████████████████████████████

  ████████████████████████████████████████

  ████████████████████

- ***The independent audit report of MindGeek prepared by*** ████████ ███████████████████ which shows ██████████ ████████████████████████████████████ ████████████████████████████. *See* Pearl Decl. Ex. A.

- ***The Reporter's Transcript of the Videotaped Deposition of Bernd Bergmair, taken in this action on June 15, 2023***, which, contrary to Plaintiff's selective

characterizations, does ***not*** support any of Plaintiff's asserted claims against Redwood. *See id*. Ex. E.

### B.    Relevant Procedural History

Plaintiff initiated this action on June 17, 2021, filing a Complaint that spanned 177 pages and 644 separately numbered allegations, and which asserted 13 causes of action against MindGeek S.A.R.L., MG Freesites, Ltd., MindGeek USA Inc., MG Premium Ltd., RK Holdings USA Inc., MG Global Entertainment Inc., and Trafficjunky, Inc., Bernd Bergmair, Feras Antoon, David Tassillo, Corey Urman, Visa Inc., Colbeck Capital Does 1-10, and Bergmair Does 1-10. Dkt. 1. Redwood was not named as a defendant in the initial Complaint. On April 14, 2022, Plaintiff filed an Amended Complaint that did not name Redwood as a defendant. Dkt. 128.

On May 23, 2022, every defendant named in the Amended Complaint filed a motion to dismiss. *See* Dkts. 135 (Bergmair), 136 (Tassillo), 137 (Antoon), 138 (Visa), 139 (MindGeek), and 140 (Urman).

On July 29, 2022, Judge Carney entered two companion orders. First, he entered an order that granted in part Visa's Motion to Dismiss and, *inter alia*, demanded a more definite statement with respect to Plaintiff's civil conspiracy claim. Dkt. 166. Notably, in that Order, Judge Carney found that Plaintiff failed to state a claim against Visa for beneficiary liability under section 1591(a)(2) of the TVPRA:

> Visa, however, is not alleged to have had any direct interaction with Plaintiff, her direct traffickers, or her videos, and therefore cannot bear beneficiary liability for knowingly *participating* in the sex trafficking venture that harmed Plaintiff. Visa—having not touched Plaintiff's videos, unlike MindGeek—did not form any sort of continuous relationship or tacit agreement with Plaintiff's primary traffickers, her ex-boyfriend and the unnamed older man. And section 1591(a)(2) is an awkward fit with respect to Visa in another respect: having not had any interaction with Plaintiff and her videos, how can it be said that Visa knew or should have known that Plaintiff was a victim of sex trafficking? Unlike the allegations concerning MindGeek, the allegations concerning Visa in the FAC do not reflect that Visa had any knowledge—constructive or otherwise—of Plaintiff, her videos, or her age in the videos.

- 7 -

*Id*. at 21-22.  Judge Carney also found that Plaintiff "failed to plead an FAL claim against Visa" and the Court could not "glean a theory of liability for Plaintiff's FAL claim from the FAC." *Id*. at 29.

In the second order issued by Judge Carney on July 29, 2022, he directed MindGeek, Bergmair, Tassillo, Antoon, and Urman (collectively referred to as the "MindGeek Defendants") to submit to jurisdictional discovery.  Dkt. 167.  Per the docket, jurisdictional discovery concluded on June 23, 2023.  *See* Dkt. 355.  Nearly a year later, on May 23, 2024, Plaintiff filed a Motion to Amend the Caption of her pleading and attached an SAC.  Dkts. 384-85.  The SAC also, for the first time, nearly three years after this case began, names Redwood as a Defendant and asserts four claims against it: (i) violation of 18 U.S.C. §§ 1591, 1595 (*i.e.*, beneficiary liability under the TVPRA); (ii) violation of 18 U.S.C. §§ 1594(c), 1595 (*i.e.*, conspiracy liability under the TVPRA); (iii) violation of Cal. Bus. & Prof. Code §§ 17200 and 17500 (*i.e.*, apparently an attempted hybrid claim under California's UCL and FAL); and (iv) civil conspiracy.  *Id*.

## C.   Redwood

The SAC sues six (6) Redwood entities, but none of these entities had any contact with or connection to Plaintiff, and the SAC does not allege (because it cannot) any contact or connection between any Redwood entity and Plaintiff.  Nor does (or can) the SAC contain any allegations of any connection or contact between Redwood and Plaintiff's ex-boyfriend, who allegedly uploaded her sexually explicit videos without her knowledge and consent, or the unidentified older adult, who allegedly caused Plaintiff to upload further sexually explicit videos to Craigslist and the Kik app.  *See* SAC ¶¶ 448, 457-59.

The SAC's allegations against Redwood are based on Redwood's past participation in financing agreements with MindGeek, in 2011, 2013, and 2018.  SAC ¶¶ 7, 245, 250, 260-61.  But Redwood was one of *many* lenders who participated in financing agreements with MindGeek between 2011 and 2021.  Indeed, it has been

publicly reported that MindGeek had more than 125 lenders during this time period (*see* Request for Judicial Notice ("RJN"), filed herewith, at Exs. A, B), and the financing agreements produced to date show lending commitments from  . *See* Pearl Decl., Ex. B (2013 Financing Agreement)  *id.*, Ex. B (2018 Financing Agreement)

 The SAC, however, does not—and cannot—allege that Redwood has any current financing agreements or any current relationship with MindGeek.

### D.  The SAC's Allegations Regarding Redwood

The SAC's four claims against Redwood are premised on allegations that can be broken down into four primary categories: (i) Redwood's loans to MindGeek; (ii) due diligence performed by Redwood before agreeing to loan money; (iii) MindGeek's relationship to Redwood by virtue of the loan agreements; and (iv) Redwood's alleged failure to stop tortious conduct by MindGeek.

### 1.  Key Allegations Regarding Redwood's Loans to MindGeek

At its core, the SAC alleges that because MindGeek permitted an underage video of Plaintiff to be displayed on its websites, Redwood, as a lender, should be held liable for financing an "illicit" business. *See* SAC ¶¶ 246, 448-51. The SAC alleges that Redwood financed a trafficking venture and/or participated in the alleged MindGeek sex trafficking venture by virtue of its participation in loan agreements. *See id.* ¶¶ 26, 491, 495. The SAC, however, does not allege any specific facts showing that Redwood knew about any actions directed at or involving Plaintiff. Nor does the SAC allege that Redwood ever knew about or encouraged child pornography or sex trafficking.

The SAC also alleges that Redwood (and Colbeck) provided and arranged for loans that "the Individual Defendants needed to acquire and build the MindGeek Empire," as MindGeek did not have access to any "alternative [funding sources][,]" (*id.* ¶¶ 7, 495), but fails to allege that any other lenders to MindGeek could not, or

would not, have provided the same financing as Redwood, or that any other lender would not do so either.

The SAC also alleges that Redwood "worked closely with MindGeek and advised and assisted them in implementing the plan to dominate online porn via the unrestricted content model." SAC ¶ 245. Yet, the SAC does not provide any non-conclusory allegations as to any specific aspect of the "plan" Redwood was allegedly involved in advising. There are no allegations that Redwood had any role in moderation, selection of tags for videos or any operational decisions for which Plaintiff seeks to hold MindGeek liable. Nor are there any communications alleged showing that Redwood or any other lender did anything other than perform ordinary lending functions or that they had any operational participation whatsoever, much less control.

### 2.   The Pre-Financing Diligence Allegations

The SAC also contains numerous allegations regarding and references to third party due diligence reports considered by Redwood before it participated in financing to MindGeek (*see id.* ¶¶ 246, 261-67). Yet, the SAC simultaneously omits and fails to accurately describe those referenced reports. The independent audit reports that Redwood received from reputable third parties, including a due diligence report dated ███████████████████████████████████████████████ which is quoted in the SAC at paragraph 263, stated that ██████████████████████████████████████████████████████████████████████. *See* Pearl Decl. A. Indeed, the ████████████████ specifically reports that:

███████████████████████████████████████████████
███████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

REDWOOD DEFENDANTS' MEM. OF P. & A. ISO MOTION TO DISMISS



### 3.   <u>The Effective Control Allegations</u>

The SAC attempts to allege that lenders to MindGeek, including Redwood, had the ability to and did control MindGeek's management and operations as a result of their loans.  *Id*. ¶¶ 270, 272.  But the SAC includes no non-conclusory allegations that support this assertion.  The SAC also contains no non-conclusory allegations that Redwood, or any other lender, had any involvement in the day-to-day operations and/or control of MindGeek, or did anything more than loan money pursuant to standard loan agreements.  And the SAC does not, because it cannot, point to a specific provision in the Financing Agreements that granted Redwood or any other lenders rights to control MindGeek's day-to-day operations.  In ostensible support of these "effective control" allegations, the SAC alleges that individual defendant Bernd Bergmair testified that ██████████████████████████████████████████████ ████████████████.  *Id*. ¶ 272.  However, a review of Mr. Bergmair's deposition

REDWOOD DEFENDANTS' MEM. OF P. & A. ISO MOTION TO DISMISS

transcript (which is incorporated by reference) reveals that Mr. Bergmair's deposition testimony had nothing to do with operational control by Redwood or any other lender during the period of Plaintiff's alleged harm.[3]  There is no testimony in the entire deposition transcript relating to any kind of operational control exercised by Redwood or any involvement by Redwood in management or in the actual operations of the business.  There is also no allegation during this time period or any other that Redwood could or did exercise any control over MindGeek's moderation, editorial decisions or any other aspect of the running of the websites.  Nor is there any allegation that any of Redwood's actions (purportedly reflecting control) had any impact on the actual Plaintiff.[4]

### 4.    The Failure to Act Allegations

The SAC also suggests without any legal or factual basis that lenders have duties extending beyond contracts.  The SAC alleges that Redwood (and Colbeck) should be able to be held liable for not acting to stop MindGeek's allegedly illegal activities.  The SAC alleges, in a conclusory fashion, that MindGeek's lenders knew that MindGeek intentionally operated without meaningful moderation, and that the lenders knew that "more mainstream websites and social media companies . . . deployed substantial investment and effort into moderating CSAM and other illegal content as such content is ubiquitous in an unrestricted online environment."  SAC

---

[3] Mr. Bergmair testified that ██████████████████████████████████████████ ████████████████████████████████████ Pearl Decl. Ex. E at 231:9-232:3.  His additional testimony ██████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████, also does not establish that Redwood had effective control over MindGeek.  *Id*. at 218:6-220:1, 221:1-226:6.

[4] The SAC also alleges in conclusory fashion that the loans had "exorbitant effective interest rates" (SAC ¶ 269) and suggests that these rates proved some form of control (*id*. ¶¶ 269-70).  A loan interest rate merely sets the periodic returns owed to the lender and does not give rise to such lender having control over a borrower.

¶¶ 265, 267-68, 271, 273, 279.  The SAC alleges no specific facts to support any of its conclusory allegations that Redwood actually knew or should have known of alleged illegal conduct by MindGeek and ignored it.[5]

The SAC also alleges that Redwood and other lenders did nothing to address trafficking issues or materially alter practices at MindGeek exposed in high profile media reports, including public hearings by the Canadian parliament (which occurred in 2021 (*see* RJN Ex. C)), and the publication of an article in *The New York Times* on Friday, December 4, 2020 (the "Kristof article").  *Id.* ¶¶ 279, 282, 307.  The SAC then alleges that Redwood tried to exploit the fallout of the Kristof article to secure greater economics and quicker repayment.  In so doing, the SAC refers to and incorporates by reference a ███████████████████████████████████████ ██████████████████████████.  SAC ¶¶ 283, 494.

The SAC, however, conspicuously omits that the ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████  *See* Pearl Decl. Ex. D.

---

[5] These allegations are directly contradicted by documents incorporated by reference elsewhere in the SAC, including the pre-financing, independent audit reports and the standard loan agreements themselves, which contain no terms or language indicating knowledge or acceptance of the display of CSAM or trafficked content, but rather █████████████████████████████████████████████████████████.  *See* Pearl Decl. Exs. A-C.

[6] ████████████████████████████████████████████████████████████████

*See* SAC ¶ 281.

REDWOOD DEFENDANTS' MEM. OF P. & A. ISO MOTION TO DISMISS

## III.   THE SAC SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

### A.   Legal Standard

A Rule 12(b)(1) – lack of subject matter jurisdiction – challenge may be done by raising either a facial attack or a factual attack on the pleading.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*  When a factual attack is made, additionally, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" and "need not presume the truthfulness of the plaintiff's allegations." *Id.*  A plaintiff's lack of Article III standing is properly attacked through a Rule 12(b)(1) motion.  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

### B.   Rule 12(b)(1) Dismissal is Appropriate Because Plaintiff Lacks Article III Standing

Plaintiff's claims against Redwood should be dismissed under Rule 12(b)(1) because the SAC does not establish that Plaintiff has Article III standing.  "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth,* 528 U.S. at 180-81(2000).  "[A]t the pleadings stage, the plaintiff must allege sufficient facts that, taken as true, 'demonstrat[e] each element' of Article III standing." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  Plaintiff here cannot establish the

- 14 -

second element of Article III standing.  Her claims against Redwood must therefore be dismissed.

### 1.  The SAC does not Allege an Injury That is "Fairly Traceable" to Redwood's Alleged Actions

The SAC does not allege facts sufficient to establish the second element of Article III standing.  Plaintiff must allege a "'line of causation' between [Redwood]'s action and [Plaintiff's] alleged harm that is more than 'attenuated.'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (citation omitted).  No such line exists here.  At best, the SAC alleges an extremely attenuated connection between Redwood and Plaintiff's injuries, which "involve[d] numerous third parties," including Plaintiff's ex-boyfriend, MindGeek, people who viewed and downloaded her video, students who bullied and harassed her, family members, a friend, and an older man who allegedly manipulated her, "whose 'independent decisions' collectively ha[d] a 'significant effect' on Plaintiff's injuries," thereby rendering the "causal chain [] too weak to support standing at the pleading stage." *Id.*  (citation omitted).

In *Williams v. Sisolak*, for example, the Ninth Circuit upheld the district court's dismissal of the complaint for insufficient standing.  No. 22-16859, 2024 WL 194180, (9th Cir. Jan. 18, 2024), *cert denied sub nom. Williams v. Lombardo*, No. 23-1138, 2024 WL 3014535 (U.S. June 17, 2024).  The Ninth Circuit explained that the district court "correctly concluded that plaintiffs lack[ed] Article III standing to sue the government defendants because plaintiffs' injuries [we]re the result of allegedly illegal third-party conduct in Nevada's commercial sex industry.   While the government defendants have various roles in regulating that industry, the injuries plaintiffs suffered were allegedly inflicted by the 'independent action[s]' of third parties—namely, the traffickers, escort agencies, strip clubs, and brothels who were also named in their complaint."  The plaintiffs' allegations were thus "insufficient to support traceability under Article III."  *Id.* at *2 (internal citation omitted).

REDWOOD DEFENDANTS' MEM. OF P. & A. ISO MOTION TO DISMISS

1   *Kaing v. Pulte Homes, Inc.*[7] is also instructive.  No. 09-5057 SC, 2010 WL
2   625365 (N.D. Cal. Feb. 18, 2010), *aff'd sub nom. Kaing v. Pultegroup, Inc.*, 464 F.
3   App'x 630 (9th Cir. 2011).  The plaintiff there attempted to hold a lender responsible
4   for the decrease in her home's value on the theory that the lender's practices caused
5   foreclosures.  The court rejected this theory on standing grounds, explaining that it
6   "depends upon a chain of causation that is dependent upon many factors, such as
7   unemployment, health problems, a general weakening economy, or other financial
8   conditions, the decisions of various homeowners to foreclose rather than refinance,
9   as well as other economic factors that can have unpredictable effects on the housing
10  market." *Kaing*, 2010 WL 625365, at *6 (internal quotation marks omitted) (internal
11  footnote omitted) (citation omitted).

12      The SAC does not allege any connection whatsoever between Redwood and
13  the actual Plaintiff, or between Redwood and the individuals who allegedly caused
14  her sexually explicit videos to be uploaded to the internet.  As alleged in the SAC, in
15  2011, 2013, and 2018, Redwood (along with many other lenders) entered into lending
16  agreements with MindGeek.  SAC ¶ 245.  Separately, in or around 2014: (i)
17  Plaintiff's then boyfriend coerced her to record a sexually explicit video, and posted
18  that video to Pornhub (*id*. ¶ 448); (ii) MindGeek personnel then allegedly reviewed
19  the video posted by Plaintiff's boyfriend (*id*. ¶ 449); (iii) Plaintiff then reached out to
20  Pornhub about the video (*id*. ¶ 451); and (iv) MindGeek allegedly delayed responding
21  and taking Plaintiff's video down.  *Id*.  For an unspecified time after the video was

---

23  [7] While Judge Carney found *Kaing* did not move the needle for Visa, he reached that
24  determination because Visa was "sued instead for knowingly providing the means
    through which MindGeek monetizes child porn once such content is already
25  produced and posted." *Fleites v. Mindgeek S.A.R.L.*, 617 F. Supp. 3d 1146, 1158
    (2022).  Without taking a view on whether this is sufficient to state a claim, a
26  completely different set of allegations apply to Redwood.  Redwood was merely one
    of many lenders and did not provide any website service through which MindGeek
27  allegedly monetized CSAM.  Redwood is instead far more akin to the defendant in
28  *Kaing*, whose actions were too far attenuated for there to be Article III standing.

uploaded in 2014, the video was allegedly downloaded by third parties and then repeatedly uploaded to Pornhub and other sites. *Id.* ¶¶ 452-54. Redwood is not alleged to have had any role in those moderation decisions or to have had any knowledge of Plaintiff's video or takedown requests.

The SAC also alleges that after the incident with her ex-boyfriend, and her attempts to have MindGeek remove the sexually explicit video he had uploaded, Plaintiff met an older man who allegedly manipulated her, while she was still a minor, into creating additional sexually explicit videos of herself. *Id.* ¶¶ 457, 459. Those videos were sold on Craigslist and the Kik app (*id.* ¶ 457), after which third parties purchased them and then uploaded them to Pornhub. *Id.* ¶ 458.

The SAC contains no allegations establishing any connection between Redwood and Plaintiff. Nor does it contain any allegations establishing any connection between Redwood and the third parties who took the videos of Plaintiff and uploaded them to MindGeek sites, or, for that matter, any allegations showing those videos would not have been uploaded if Redwood did not exist. Furthermore, while the SAC alleges that Redwood was at one time one of many lenders to MindGeek, it does not allege sufficient facts to show a direct connection between Redwood, on the one hand, and MindGeek's moderation and allegedly deficient monitoring of sites on which her videos were uploaded. *See, e.g., id.* ¶¶ 3-5.

The alleged relationship between Plaintiff's alleged harm and Redwood is far more attenuated here than that alleged in *Sisolak* and *Kaing*, where there were even fewer third parties and intervening acts that contributed to the complained of harm. As the causal chain was too far removed in those cases to demonstrate Article III standing, the same must be true here.

The SAC's conclusory allegations that Redwood had effective control of MindGeek by virtue of its loan fall well short of Plaintiff's burden to establish the requisite causal element for Article III standing. *See Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 765 (9th Cir. 2018) (affirming dismissal on standing grounds where the

complaint made "only conclusory allegations" regarding causation); *see also Aguilar v. Coast to Coast Comput. Prods., Inc.*, No. 2:23-cv-03996-MCS-E, 2024 WL 635314, at *3 (C.D. Cal. Jan. 8, 2024) ("[S]parse and conclusory allegations are insufficient to open the Article III door."). In fact, the SAC suggests that Redwood had no control over—and no role in—MindGeek's posting and moderation activities. *See, e.g.*, SAC ¶ 271 (alleging that Redwood merely "*advised*" MindGeek regarding "████████████████████████████████████████████████") (emphasis added), ¶ 283 (alleging ████████████████████████ ████████)

In addition to failing to demonstrate that lenders had and exercised control over MindGeek, the SAC even fails to establish that MindGeek could not obtain loans from others if Redwood did not exist. To the contrary, the SAC establishes that MindGeek could have obtained such alternative loans, as Plaintiff alleges that the Individual Defendants discussed loans with many "lenders, prospective lenders, and investors," managed relationships with many "lenders," and obtained financing from many entities. *See, e.g.*, SAC ¶¶ 109, 158, 245, 250, 260, 275. The Financial Times reported over 125 lenders were involved in loans to MindGeek, and over 40 different lenders participated in the 2013 Financing Agreement. RJN Exs. A-B.

As the SAC does not "fairly trace" any of Plaintiff's alleged injuries to Redwood, her claims against Redwood should be dismissed for insufficient standing.

## IV.    THE SAC SHOULD BE DISMISSED UNDER RULE 12(b)(6)

### A.    Legal Standard

To survive Rule 12(b)(6) dismissal for failure to state a claim, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). However, courts are not bound to accept the following as true: conclusory statements; "threadbare recitals of the elements of a cause of action;" or "a legal conclusion couched as a factual allegation." *Id.* "[N]or does a complaint suffice if it

tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotation marks omitted). When resolving a motion under Rule 12(b)(6), courts may consider extrinsic "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached" to the pleading, without converting a Rule 12(b)(6) motion into one for summary judgment. *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012).

### B.    Plaintiff has Not Stated a TVPRA Claim Against Redwood

Plaintiff attempts to hold Redwood vicariously liable under the TVPRA for alleged conduct by MindGeek. If the TVPRA claims against MindGeek fail, so do the vicarious claims against Redwood. But even if the claims against MindGeek can go forward, both the beneficiary liability and conspiracy TVPRA claims against Redwood still fail for multiple reasons.

*First*, similar to Article III, Plaintiff also lacks statutory standing to pursue her TVPRA claims against Redwood because she fails to adequately allege that her injuries were proximately caused by Redwood's alleged conduct.

*Second*, the SAC fails to sufficiently plead each of the elements of a beneficiary liability claim.[8] This Court previously held that Plaintiff failed to allege § 1595 beneficiary liability against Visa, and its ruling applies with even greater force to Redwood and should not be disturbed. Specifically, the SAC does not establish

---

[8] Additionally, to the extent the Court finds that (1) Plaintiff failed to establish an underlying violation of the TVPRA or (2) MindGeek did not engage in a violation of the TVPRA, Redwood cannot be liable under a beneficiary theory of liability. *See* 18 U.S.C. § 1595(a) (providing that "[a]n individual *who is a victim of a violation of this chapter* may bring a civil action against . . . whoever knowingly benefits . . . from *participation in a venture which* that person knew or should have known *has engaged in an act in violation of this chapter*") (emphases added). *See also J.B. v. G6 Hosp., LLC,* No. 19-cv-07848-HSG, 2021 WL 4079207, at *7 (N.D. Cal. Sept. 8, 2021), *aff'd sub nom. J.B. v. Craigslist, Inc.*, No. 22-15290, 2023 WL 3220913 (9th Cir. May 3, 2023) ("The Court . . . finds that the cited language does not suggest that Congress intended to make [defendants] civilly liable [under Section 1595] when their conduct does not violate Section 1591").

that Redwood "participated in a venture" that harmed Plaintiff because it does not allege a direct association or continuous business relationship *between Redwood and Plaintiff's trafficker*.  Nor does the SAC plausibly allege that Redwood "knew or should have known" of *Plaintiff's sex trafficking*.

*Third*, Plaintiff's TVPRA conspiracy claim is not legally cognizable because the challenged conduct preceded the TVPRA amendment providing for civil conspiracy liability.  The Ninth Circuit recently confirmed that the amendment providing civil conspiracy is not retroactive.  *Ratha*, __ F.4th at __, 2024 WL 3589751, at *16-17.  Plaintiff also cannot show that Redwood "conspire[d] to benefit" from participation in MindGeek's alleged sex trafficking venture because Plaintiff does not allege that Redwood agreed to or intended to violate the TVPRA.

### 1.    Relevant Aspects of the TVPRA

The Trafficking Victims Protection Reauthorization Act provides a civil right of action based upon violations of the criminal offenses set forth therein, including sex trafficking.  *See* 18 U.S.C. § 1595.  Specifically, victims may assert a civil cause of action against: (1) those who directly trafficked the victim; and (2) those who did not "directly traffic the victim, but benefitted from what the facilitator should have known was a trafficking venture."  *J.C. v. Choice Hotels Int'l, Inc*., No. 20-CV-00155-WHO, 2020 WL 6318707, at *3 (N.D. Cal. Oct. 28, 2020) (citation omitted).  In January 2023, the TVPRA was amended to include liability for anyone who "attempts or conspires to benefit" from a TVPRA violation, but the amendment does not apply retroactively.  *See* Abolish Trafficking Reauthorization Act of 2022, Pub. L. No. 117-347, § 102, 136 Stat., 6199 (2023) (hereinafter, the "ATRA"); *Ratha,* __ F.4th __, 2024 WL 3589751, at *17 ("ATRA does not apply to pre-enactment conduct").

Section 230, 47 U.S.C. § 230, of the Communications Decency Act ("CDA") affords Interactive Computer Service Providers ("ICSPs") broad immunity from liability for content posted to their websites by third parties.  *Carafano v.*

- 20 -

*Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). The statute immunizes ICSPs when plaintiffs seek to treat them as the publisher or speaker of any information provided by another information content provider. 47 U.S.C. § 230(c)(1). The Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA") provides an exception that subjects ICSPs facilitating prostitution to liability for third-party content they publish that violates the TVPRA, denying them the CDA's broad immunity. Under the Ninth Circuit's decision in *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137 (9th Cir. 2022), however, allegations of *association* with sex traffickers do not support a TVPRA claim. *Id.* at 1145. In other words, for the FOSTA exception to the CDA's broad immunity to apply, Plaintiff would have to establish Redwood's knowing "participation" in the form of assistance, support, or facilitation. *C.f. Woodhull Freedom Found. v. United States*, 72 F.4th 1286, 1304 & n.6 (D.C. Cir. 2023) (indicating that despite initial, inconsistent rulings, including *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 836 (C.D. Cal. Sept. 3, 2021), post-*Reddit*, courts are clear that both Section 1591 and "Section 1595 require[] an actual knowledge *mens rea* for participation in a venture").

### 2. Plaintiff Fails to Establish Proximate Cause

The SAC fails to establish proximate cause in asserting TVPRA claims against Redwood. As the U.S. Supreme Court has explained, a federal cause of action is presumptively limited to plaintiffs whose injuries are proximately caused by the defendant's conduct. *Lexmark Int'l,* 572 U.S. at 132. The Supreme Court has applied that principle to read numerous facially-unqualified causes of action to incorporate a proximate-cause requirement. *E.g.*, *id.* (Lanham Act); *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 201 (2017) (Fair Housing Act); *Holmes v. SIPC*, 503 U.S. 258, 265-66 (1992) (RICO); *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 529-30, 535-36 (1983) (Clayton Act). As in these other statutes, nothing in the TVPRA rebuts the presumption that the federal cause of action is limited to those whose injuries are proximately caused by the defendants' conduct. The

Supreme Court has also made clear that proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged," which generally bars damages claims that go beyond the "first step" in the causal chain. *Bank of Am.*, 581 U.S. at 202-03 (quoting *Holmes*, 503 U.S. at 268). The Ninth Circuit recently reaffirmed these principles, holding that the plaintiff did not sufficiently plead proximate cause for its reduced tax revenue claim against Wells Fargo because its theory of harm went beyond the first step of the causal chain. *City of Oakland v. Wells Fargo & Co*., 14 F.4th 1030, 1037 (2021) (en banc). The court described "Oakland's long and winding causal chain" beginning with the allegation that "Wells Fargo initiated predatory loans to minority borrowers. Then, those borrowers were more likely to default on the loans." *Id.* at 1039. But that default required the borrower to "quit making loan payments or violate some other term of the loan," which could be attributable to a number of events or circumstances. *Id.* at 1039-40. Then, there must have been an act of foreclosure. *Id.* at 1040. But the court noted further that "whether to initiate foreclosure, renegotiate the loan, sell the loan, or even let it ride, is a decision that extends beyond Wells Fargo. (And even if Wells Fargo retained the loan, the same foreclosure decisions would inure.)." *Id.*

Ultimately, Oakland's theory of liability rested "not just on separate actions, but separate actions carried out by separate parties, in some cases third, fourth, or fifth parties." *Id.; see also Lexmark Int'l, Inc.,* 572 U.S. at 132-33 (based on a "well established" principle of common law, which favors a proximate causal connection in cases of loss, "the reality [is] that 'the judicial remedy cannot encompass every conceivable harm that can be traced to alleged wrongdoing' . . . Put differently, the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct").

That is precisely the case here. According to the SAC, Redwood participated in financing agreements with MindGeek in 2011, 2013, and 2018. SAC ¶¶ 245, 261. The SAC does not allege, because it cannot, that Redwood entered into any

agreements with Plaintiff, knew Plaintiff or her purported traffickers, or knew of Plaintiff and her alleged injuries when it entered into or negotiated any of its financing agreements.  Redwood's ordinary course lending to borrowers who are not Plaintiff or her trafficker cannot have proximately caused harm to Plaintiff.  Because the SAC does not sufficiently allege that Plaintiff's injury "flow[ed] directly" from Redwood's participation in financing agreements agreements—or even that Plaintiff's injury was foreseeable based on its participation in financing agreements—Plaintiff's dependent TVPRA claims fail for lack of proximate cause. *Lexmark Int'l,* 572 U.S. at 133.

Plaintiff may argue, citing Judge Carney's decision partially declining to dismiss the TVPRA claims against Visa, that the SAC sufficiently alleges proximate cause because it alleges that the loans facilitated MindGeek's operations and thus helped *MindGeek* benefit financially from sex trafficking violations (*see, e.g.*, SAC ¶ 270).  Putting aside whether Judge Carney's decision against Visa stretched vicarious liability well beyond its prior borders under the law, the allegations against Redwood are far more attenuated than the allegations against Visa.

Unlike Visa, Redwood's only relationship with MindGeek was a lender-borrower relationship.  Redwood never had its name appear anywhere on MindGeek's sites, did not enable any payments to MindGeek, on its sites or otherwise, and has no current connection to MindGeek or its sites, having completely divested itself of any connection to MindGeek in 2021.  Moreover, the allegations against Visa that Judge Carney previously found sufficient to confer standing—*i.e.*, "she allege[d] that advertisements were placed alongside her videos and that Visa continues to process advertisement payments for MindGeek's porn sites[,]"—are not made in the SAC against Redwood, nor could they ever be.  *See Fleites,* 617 F. Supp. 3d at 1165.

### 3.    Plaintiff's Beneficiary Liability Claim is Inadequately Pled

Count III of the SAC should be dismissed under Rule 12(b)(6) because Plaintiff fails to plausibly allege the elements of a beneficiary liability claim.  To state

a claim for beneficiary liability under Section 1595, Plaintiff must allege facts showing that Redwood: (1) "knowingly participated in a venture;" (2) "received a benefit from its participation;" and (3) "knew or should have known that [P]laintiff[] w[as] [a] victim[] of sex trafficking." *See Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 837 (C.D. Cal. 2021) (Carney, J.) (quoting *Doe v. Twitter, Inc*., No. 21-cv-00485-JCS, 2021 WL 3675207, at *25 (N.D. Cal. Aug. 19, 2021)). The SAC does not and cannot satisfy this pleading burden.

### a. Redwood did not "Participate in a Venture."

The SAC does not establish that Redwood "participated in a venture" that harmed Plaintiff. This Court has already ruled, in this very case, that *Visa* did not participate in a venture with MindGeek. The same exact reasoning applies to Redwood. This Court should not disturb Judge Carney's decision, which is in accord with relevant Ninth Circuit case law.

Judge Carney dismissed Plaintiff's beneficiary liability claim against Visa for Plaintiff's failure to adequately allege participation in the sex trafficking venture that harmed Plaintiff. In discussing the "participation" element of beneficiary liability, the Court stated that "one of the main focuses [in relevant case law] . . . was the plaintiffs' allegations regarding how the defendants[] interacted with her videos specifically." *Fleites*, 617 F. Supp. 3d at 1161. Judge Carney noted that the allegations in cases that successfully established participation "supported the conclusion that [the defendant] formed a relationship with the direct traffickers who harmed the plaintiffs[.]" *Id.* With that key fact in mind, the Court dismissed Plaintiff's Section 1591(a)(2) claim against Visa because Visa was "not alleged to have had any direct interaction with Plaintiff, her direct traffickers, or her videos, and therefore cannot bear beneficiary liability for knowingly *participating* in the sex trafficking venture that harmed Plaintiff." *Id.* at 1161-62. Count III against Redwood should be dismissed for precisely the same reason. Plaintiff does not allege that Redwood had *any* "direct interaction with Plaintiff, her direct traffickers, or her

- 24 -

videos," and so Redwood cannot be liable for participating in the alleged sex trafficking venture that harmed Plaintiff. *See Fleites,* 617 F. Supp. 3d at 1161-62.

This Court's decision is consistent with relevant case law. The "participation" element of beneficiary liability requires Plaintiff to, at the very least, "connect the dots between Plaintiff's alleged sex trafficking and the[] Defendants" alleged to have participated in a venture. *See B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-CV-00656-BLF, 2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020). When there is no "direct association" between a trafficker and the defendant, a plaintiff must "allege at least a showing of a *continuous business relationship between the trafficker and the [defendant]* such that it would appear that the trafficker and the [defendant] have established a pattern of conduct or could be said to have a tacit agreement." *J.B. v. G6 Hosp., LLC*, No. 19-CV-07848-HSG, 2020 WL 4901196, at *9 (N.D. Cal. Aug. 20, 2020) (emphasis added); *see also B.J. v. G6 Hosp., LLC*, No. 22-CV-03765-MMC, 2023 WL 3569979, at *5 (N.D. Cal. May 19, 2023) (dismissing TVPRA claim for failure to show "any kind of 'tacit agreement'" between defendant and the plaintiff's trafficker in the alleged sex trafficking venture). Yet nothing even close to a continuing business relationship is alleged here, as Redwood did not engage in any type of profit and loss sharing or any other conduct that could evince a "tacit agreement" with MindGeek, let alone Plaintiff's traffickers, as required by law.

*B.M. v. Wyndham Hotels & Resorts, Inc.* is instructive. There, the court held that plaintiff failed to allege "participation in a venture" because she "fail[ed] to connect the dots" between the plaintiff's alleged trafficking and the defendant franchisors. No. 20-CV-00656-BLF, 2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020). The court arrived at this conclusion even accepting as true that defendants' "branded hotels (Super 8 and Clarion Inn) rented rooms to people they knew or should have known were engaged in sex trafficking," hotel employees threatened to eject the plaintiff and her traffickers, but never took further action, and the defendants were "generally aware that acts of sex trafficking take place in their franchisee hotels

around the United States." *Id.*  The court dismissed the complaint because it was simply "devoid of any facts linking *these [franchisor] Defendants (Wyndham and Choice)* to the sex trafficking of *this Plaintiff (B.M.)*[.]" *Id.*

Plaintiff here does not include any allegations in the SAC linking Redwood to her traffickers.  Plaintiff's alleged traffickers include her ex-boyfriend and a different, older adult (SAC ¶¶ 448, 457-59), to whom Redwood does not have, and is not alleged to have, any connection.  The SAC is devoid of any allegations linking *Redwood* to the sex trafficking of *Plaintiff Serena Fleites*, whether through a "direct association," "continuous business relationship," or otherwise.  *See, e.g., J.B*, 2020 WL 4901196, at *9; *B.J.*, 2023 WL 3569979, at *4.  The beneficiary liability claim against Redwood must therefore be dismissed.

### b.    The SAC Fails to Allege that Redwood Knew or Should Have Known of Plaintiff's Sex Trafficking.

The SAC also fails to plausibly allege that Redwood "knew or should have known" of *Plaintiff's sex trafficking*, as required by the TVPRA.  Judge Carney's prior decision that Fleites failed to allege that Visa "knew or should have known" of her sex trafficking was correct and applies equally (if not more clearly) to Redwood.

Judge Carney ruled that Plaintiff's beneficiary liability claim against Visa failed on the additional ground that Plaintiff did not adequately allege the "knowledge" element.  Specifically, he wrote that "section 1591(a)(2) is an awkward fit" for beneficiary liability against a defendant "having not had any interaction with Plaintiff and her videos," because it cannot "be said that [the defendant] knew or should have known that Plaintiff was a victim of sex trafficking[.]"  *Fleites*, 617 F. Supp. 3d at 1162 (dismissing beneficiary liability claim against Visa).  Judge Carney held that, "[u]nlike the allegations concerning MindGeek, the allegations concerning Visa in the FAC do not reflect that Visa had any knowledge – constructive or otherwise – of Plaintiff, her videos, or her age in the videos." *Id.*  As with the allegations against Visa, the SAC's allegations concerning Redwood reflect absolutely no knowledge of

"Plaintiff, her videos, or her age in the videos" on the part of Redwood; hence, they are insufficient to show that Redwood "knew or should have known" of Plaintiff's trafficking, and dismissal is appropriate. *Id.*

Judge Carney's ruling is consistent with relevant case law. To establish beneficiary liability, Plaintiff must allege "facts sufficient to establish that the defendant knew or should have known about *the [sex] trafficking of the plaintiff in particular*[.]" *See Doe #9 v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016, 2021 WL 1186333, at *1 (S.D. Tex. Mar. 30, 2021) (emphasis added). *See also E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 429 (N.D. Tex. 2021) ("Plaintiff has failed to allege a reasonable inference connecting [] Defendants specifically to Plaintiff's trafficking"). "[G]eneral allegations about sex trafficking problems throughout [a particular] industry is not enough to put [defendants] on notice about the sex trafficking" of a specific plaintiff. *See J.C.,* 2020 WL 6318707, at *6; *B.M.*, 2020 WL 4368214, at *6. Thus, to move past the pleading stage, the SAC must "provide[] plausible allegations to show that [Redwood] had actual and/or constructive knowledge about [Plaintiff's] sex trafficking" as opposed to general sex trafficking problems in online pornography. *J.C.*, 2020 WL 6318707, at *6.

In *B.M. v. Wyndham Hotels & Resorts, Inc.*, the court found that plaintiff also failed to allege that the defendant hotel franchisors "knew or should have known" of plaintiff's sex trafficking. 2020 WL 4368214 at *5-6. While plaintiff alleged that the defendant franchisors should have known of her sex trafficking due to red flags including "payments for the rooms in cash," "plaintiff's physical appearance (malnourished, bruised, beaten)," and "the personal relationship between the front desk employees and Plaintiff's traffickers," the court held that such allegations "support[ed] a theory *that the staff at the franchisee hotels where Plaintiff was trafficked* knew or should have known about her trafficking." *Id.* (emphasis added). Plaintiff was required to, but did not, allege facts showing that the *franchisor* defendants knew or should have known of her trafficking. *Id.* at *6.

Similarly here, Plaintiff fails to allege that Redwood knew or should have known of her trafficking specifically. Indeed, the SAC contains absolutely no allegations establishing that Redwood had *any* knowledge of Plaintiff whatsoever. She alleges that Redwood conducted "extensive due diligence" on MindGeek's business before extending debt, and generally "close[ly] monitor[ed] the business," but these allegations come nowhere close to suggesting that Redwood knew or should have known that Plaintiff was being trafficked. *See* SAC ¶ 495. Additionally, the SAC's citations to media reports concerning nonconsensual content on MindGeek's platforms (and alleged "illegality in the industry") are insufficient to put Redwood on notice of Plaintiff's trafficking. *See* SAC ¶¶ 159-96, 265, 495; *see, e.g., J.C.*, 2020 WL 6318707, at *6; *B.M.*, 2020 WL 4368214, at *6. Plaintiff's TVPRA claim against Redwood must be dismissed.

### 4. The TVPRA Conspiracy Claim Against Redwood is Barred by Ninth Circuit Law

At the time of the alleged conduct, the TVPRA did not include a claim for conspiracy liability. Count IV of the SAC must therefore be dismissed because Redwood's alleged TVPRA violations predate the 2023 amendment to the TVPRA allowing for civil conspiracy liability against a beneficiary.

The Ninth Circuit's recent opinion in *Ratha v. Rubicon Res.,* LLC, __ F.4th __, 2024 WL 3589751 (9th Cir. July 31, 2024) is controlling. In *Ratha,* victims of forced labor and other alleged TVPRA violations sued Rubicon—a Delaware company that sought to import shrimp from the Thai company that allegedly committed the underlying TVPRA violations (Phatthana Seafood Co.)—alleging that Rubicon "knowingly benefitted from Phatthana's alleged human trafficking and forced labor abuses, financially and by accessing a steady stream of imported seafood." *See Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022), *cert. denied,* 143 S. Ct. 491 (2022). After the plaintiffs lost on summary judgment on their benefit theory, the TVPRA was amended to provide for civil liability against

"whoever knowingly benefits, *or attempts or conspires to benefit*" from a TVPRA violation. *See* ATRA, Pub. L. No. 117-347, § 102, 136 Stat., 6199 (2023) (emphasis added). Plaintiffs then filed a motion for relief from judgment under Rule 60(b)(6), arguing that the newly passed ATRA "retroactively clarifie[d] that 18 U.S.C. § 1595(a) authorizes suit against those who attempt to benefit from participation in a venture that engages in forced labor and that clarification abrogates the Ninth Circuit's opinion affirming summary judgment" for defendants and therefore "calls into question [the Ninth Circuit's] Judgement." *See Ratha v. Phatthana Seafood Co.,* No. CV 16-4271-JFW (ASX), 2023 WL 2762044, at *3 (C.D. Cal. Mar. 3, 2023), *aff'd sub nom. Ratha*. __ F.4th __, 2024 WL 3589751.

The Ninth Circuit affirmed the district court's denial of the plaintiffs' motion, holding that "*ATRA does not apply to pre-enactment conduct, including the conduct that [was] the basis of plaintiffs' claims*." *Ratha*, __ F.4th __, 2024 WL 3589751, at *17 (emphasis added). Thus, *Ratha* bars Plaintiff's TVPRA conspiracy liability claim against Redwood because it clearly holds that the ATRA cannot apply to alleged conduct that occurred before its enactment. All of the SAC's allegations pertaining to Redwood indisputably occurred prior to January 2023. *See, e.g.,* SAC ¶¶ 245-284 (describing Redwood's alleged conduct from 2011-2021). Because the ATRA cannot apply retroactively to pre-enactment conduct, and the pre-ATRA version of Section 1595 did not authorize civil liability against those who conspired to benefit from another's TVPRA violation, Plaintiff's TVPRA conspiracy claim against Redwood must be dismissed.[9]

---

[9] Judge Carney did not previously address this argument, apparently assuming that Section 1595 could authorize a TVPRA civil conspiracy liability claim against alleged beneficiaries before the ATRA. This assumption no longer holds following the Ninth Circuit's decision in *Ratha. See Ratha*, __ F.4th __, 2024 WL 3589751, at *17.

**5.** **The Allegations of the SAC do not Establish a Conspiracy Claim Against Redwood**.

The Ninth Circuit's recent decision in *Ratha* is dispositive alone, but Plaintiff's TVPRA conspiracy claim would also fail because the SAC does not plead "an agreement to violate a substantive . . . provision" of the TVPRA. *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) ("In a RICO conspiracy, ***as in all conspiracies***, agreement is essential.") (emphasis added); *see also Stein v. World-Wide Plumbing Supply Inc.*, 71 F. Supp. 3d 320, 330 (E.D.N.Y. 2014) ("For there to have been a conspiracy, there must have been an agreement to violate the [TVPRA].").  This requires "alleg[ing] facts that plausibly show [Redwood] 'and other alleged coconspirators [] entered into a joint enterprise with consciousness of its general nature and extent.'"  *Stein*, 71 F. Supp. 3d at 330 (citation omitted).

The SAC is bereft of plausible allegations of any "agreement" by Redwood *to violate the TVPRA's prohibition against sex trafficking*.  While the SAC alleges that Redwood provided financing to MindGeek, that does not satisfy Plaintiff's pleading burden [10]  Even crediting the conclusory allegations that MindGeek needed Redwood's financing to grow and operate an exploitative business (SAC ¶¶ 245-46, 501, 504) and MindGeek's lenders "understood that MindGeek was intentionally operating without any [] meaningful moderation and compliance," which was "essential to MindGeek's ability to . . . pay back" to the loan (*id*. ¶¶ 246, 266-268, 491), none of these allegations satisfy Plaintiff's conspiracy pleading burden.  *See*

---

[10] It is also well-established that a lender does not face liability for obligations "beyond those expressed in the loan agreement," except where a "special relationship"—such as the ability to "control" a borrower through a loan agreement—exists.  *See, e.g., Hashimoto v. Clark,* 264 B.R. 585, 594-95 (D. Ariz. 2001); *Kim v. Sumitomo Bank of Cal.,* 17 Cal. App. 4th 974, 979-80, (1993); *Niederreuther v. Schifter,* No. C96–0126 THE, 1998 WL 409876 (N.D. Cal. July 14, 1998).  As indicated above, *supra* II, the SAC does not allege a single non-conclusory allegation to support any suggestion that Redwood actually controlled MindGeek's operations or governance.

*Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 412 (S.D.N.Y. 2023) ("If the allegations in the complaints are taken as true, the defendants did indeed agree to provide banking services for Epstein and his affiliated entities [] that they knew, or recklessly disregarded, would assist his sex-trafficking venture. But that agreement is different from an actual agreement to participate in a sex-trafficking venture.").

Furthermore, the SAC fails to plead, as it must, that Redwood intended to aid MindGeek in a conspiratorial objective. *Craigslist Inc. v. 3Taps Inc*., 942 F. Supp. 2d 962 (N.D. Cal. 2013) in instructive. In that case, Craigslist asserted that defendants Padmapper and 3Taps conspired to commit torts by "unlawfully scraping ads from Craigslist and displaying the misappropriated ads on Padmapper's site." Plaintiff conclusorily alleged that Padmapper: (i) knew the scraping was unlawful; (ii) knowingly populated its site with misappropriated Craigslist content obtained from 3Taps; and (iii) intended to aid in the commission of the wrongful conduct by displaying the misappropriated data on its website. *Id*. at 981. The court dismissed the conspiracy claim because these allegations did not establish intent by the defendants to aid in the conspiracy. *Id*. at 982.

The allegations of the SAC are similar to the deficient allegations in *Craigslist*, and the result (dismissal) should be the same. Plaintiff's allegation that Redwood had a financial incentive to participate in the loan agreement with MindGeek is of no import, as the financial incentive to accept interest on debt provided to a borrower does *not* establish an intent to aid in sex trafficking. *See Craiglist*, 942 F. Supp. 2d at 982 (holding that Padmapper's alleged incentive to use the misappropriated information "does not plausibly suggest that [it] ever intended to assist 3Taps in the alleged wrongful conduct required to obtain the information in the first place").

While Judge Carney previously found Visa potentially liable for TVPRA conspiracy liability under the theory that its conduct was "intertwined with MindGeek's criminal act" (Dkt. 166 at 25), that holding as to Visa is inapplicable to

Redwood. Redwood's alleged conduct is far more attenuated than Visa's. Judge Carney found that Visa could be potentially liable as a conspirator because Visa allegedly "provide[d] the means through which MindGeek could monetize child porn videos" by processing financial transactions on MindGeek's websites and was alleged to have "provided the tool used to complete [MindGeek's criminal act]." Dkt. 166 at 24-25. The same is not true of Redwood. Although Redwood provided financing to MindGeek, it was one of many lenders that did so as part of syndicated loans. Redwood is not alleged to have been involved in any of MindGeek's daily business, moderation decisions, or any website operations. Simply put, Redwood is not alleged to have provided a "tool used to complete" criminal sex trafficking violations. The TVPRA conspiracy claim against Redwood should be dismissed.

### C.    The SAC'S Hybrid UCL/FAL Claim is not Legally Viable

The hybrid UCL/FAL claim pled in Count XIV of the SAC is not legally cognizable and should be dismissed. *First*, the UCL and FAL are separate statutes and must be assessed independently. *See, e.g.*, *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1100 (N.D. Cal. 2021) (noting that while the "UCL, and FAL proscribe much of the same conduct, the statutes sometimes have distinct requirements"). *Second*, because the SAC does not show that Plaintiff had any connection to Redwood, knew of Redwood, or relied on or was misled in any way by Redwood, she does not have standing to assert her supposed UCL/FAL claim against Redwood. *See Gamino v. Thinx Inc.*, No. EDCV 23-2067 JGB (SHKx) (2024 WL 2429307, at *9 (C.D. Cal. Apr. 18, 2024) ("[T]o have standing under the UCL, FAL, or CLRA, Plaintiff must sufficiently allege . . . that she actually relied on the purported material representation") (citation omitted); *Vrugtman v. Its Just Lunch Int'l LLC*, No. EDCV20 2352 JGB (SPxX), 2023 WL 6369765, at *8 (C.D. Cal. Aug. 25, 2023) ("Plaintiffs' claims under . . . the UCL, the FAL . . . all require a plaintiff to provide a misrepresentation, reliance, and damages as elements of the claims.") (citation omitted).

*Third*, the hybrid UCL/FAL claim is deficiently pled against Redwood because it rests exclusively on allegations of misconduct by the MindGeek Defendants, *which do not apply to Redwood*.  Although the SAC nominally purports to assert this "claim" against "all defendants," it actually does not allege any supportive facts relating to its claim against Redwood.  Rather, the SAC alleges generally that "[w]ebsite users were deceived to think *Defendants* were monetizing, distributing, and advertising legitimate, legal content" (SAC ¶ 575), "*Defendants* profited by selling advertising space to display advertisements alongside Plaintiff's videos, images, and likenesses without her consent" (*id*. ¶ 576), and "*Defendants* knowingly had inadequate age and consent verification systems in place that allowed for uploading of child pornography" (*id*. ¶ 575).  These collective allegations are insufficient.  *See Okada v. Bank of Am., N.A.*, No. SACV 15 00981CJC(Ex), 2015 WL 5556937, at *5 (C.D. Cal. Sept. 16, 2015) (holding that a UCL claim "cannot survive a motion to dismiss" where it "makes no effort to differentiate the Defendants' conduct, instead merely lumping all of the Defendants together and treating them as one for the purposes of the UCL claim"); *Sollberger v. Wachovia Secs., LLC*, No. SACV 09-0766 AG (ANx), 2010 WL 2674456, at *4-5 (C.D. Cal. June 30, 2010) (explaining that a "shotgun pleading" that "uses the omnibus term 'Defendants'" . . . without identifying what the particular defendants specifically did wrong[]" should be dismissed); *E.D.C. Techs., Inc. v. Seidel*, No. 16-cv-03316-SI, 2016 WL, 4549132, at *9 (N.D. Cal. Sept. 1, 2016) ("Courts consistently conclude that 'undifferentiated pleading against multiple defendants is improper.'") (citation omitted).  While the SAC also purports to incorporate by reference preceding allegations in support of its hybrid UCL/FAL claim (*id*. ¶ 573), the SAC does not allege sufficient facts to connect these general allegations to Redwood.  Redwood did not have and the SAC does not allege it had (i) any interaction with MindGeek's website users, (ii) any control over age and consent verification policies on the MindGeek websites, or (iii) any role in distributing or advertising content on those sites.  Accordingly, the hybrid UCL/FAL

claim should be dismissed. *See In re Sagent Tech., Inc., Deriv. Litig.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) (holding that a "complaint fails to state a claim" where "plaintiffs do not indicate which individual defendant or defendants were responsible for which alleged wrongful act").

*Fourth*, the SAC fails to adequately plead a claim against Redwood under the FAL. The FAL prohibits making or disseminating an untrue or misleading statement. Cal. Bus. & Prof. Code § 17500. In order to sufficiently allege an FAL claim, the pleading must allege sufficient facts to establish that "members of the public are likely to be deceived." *Nationwide Biweekly Admin., Inc. v. Superior Court*, 9 Cal. 5th 279, 309 (2020) (citations omitted). Plaintiff also must satisfy Rule 9(b)'s heightened pleading requirement. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). The SAC does not come close to meeting its pleading burden as it does not allege that Redwood made any representations to the public.

*Fifth*, insofar as the hybrid UCL/FAL claim is grounded in allegations of fraud (*see* SAC ¶ 575 ("Defendants fraudulently deceived its users . . ."); *id.* ¶ 574 ("Defendants have engaged in . . . fraudulent business acts and practices . . ."); *id.* ¶ 578 ("This conduct constitutes . . . fraudulent business act and practice")), the SAC fails to satisfy the applicable heighted fraud pleading standard. Allegations of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). Because the SAC only pleads general allegations against "Defendants" in connection with Plaintiff's fraud-based UCL/FAL Claim, the SAC fails to allege how *Redwood* participated in any way in deceiving anyone.

*Finally*, the SAC fails to adequately plead a claim under any of the three prongs of the UCL. The SAC does not adequately plead a claim under the fraudulent business practices prong because it does not satisfy the heightened pleading standard of Rule 9(b). The SAC also does not show that members of the public are likely to be deceived by Redwood's providing financing unconnected to Plaintiff. *See*

*Freeman v. Time, Inc*., 68 F.3d 285, 289-90 (9th Cir. 1995) (holding that a fraudulent practices-based UCL claim may be dismissed where the pleading fails to show that "members of the public are likely to be deceived") (citation omitted); *Vess,* 317 F.3d at 1103-04 (holding that where a "claim is said to be 'grounded in fraud' or to 'sound in fraud' . . . the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)").

The SAC also does not adequately plead a claim under the unfair business practices prong of the UCL.  What constitutes an "unfair business practice" is limited.  "Courts may not simply impose their own notions . . . as to what is fair or unfair." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 719 (2001).  The universal test to determine if conduct violates the "unfair" prong of Section 17200 is "whether public [is] likely to be deceived." *Freeman*, 68 F.3d at 289; *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1151 (2003).  In determining whether a particular business practice is unfair, a court should also "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim" and determine if the practice violates a declared policy of the California legislature. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co*., 20 Cal. 4th 163, 184 (1999).  The SAC fails to show that members of the public are likely to be deceived by Redwood participating in private financing contracts with the MindGeek defendants.  Plaintiff therefore fails to allege a UCL claim under the "unfair" prong.

The SAC similarly fails to adequately plead a UCL claim against Redwood under the unlawful business practices prong.  Under the UCL, an unlawful business practice or act is "anything that can properly be called a business practice and that at the same time is forbidden by law." *People v. McKale*, 25 Cal. 3d 626, 634 (1979).  Courts routinely dismiss UCL claims where the party has failed to establish a predicate violation of the underlying law. *See, e.g., Chavez v. Whirlpool Corp*., 93 Cal. App. 4th 363, 374-75 (2001) (plaintiff's failure to establish each of the elements of a Cartwright Act claim disposed of UCL "unlawful" claim).  As the SAC has failed

- 35 -

to establish a viable claim against Redwood for violation of the FAL or TVPRA, and those are the only statutes that the SAC asserts Redwood violated, the SAC also has not adequately pled a UCL claim against Redwood under the statute's unlawful prong.

### D.    The Civil Conspiracy Claim is Inadequately Pled

The Court should also dismiss Plaintiff's civil conspiracy claim against Redwood (Count XVI) because (i) the SAC does not adequately allege the elements of a civil conspiracy and (ii) the SAC has not adequately pled any underlying tort because Redwood, as a lender, owes no duty to Plaintiff.

*First*, the SAC does not adequately allege the elements of a civil conspiracy claim against Redwood.  A claim for civil conspiracy has three elements: (1) formation and operation of the conspiracy; and (2) damage resulting to the plaintiff; (3) from a wrongful act done in furtherance of a common design.  *Lingad v. Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1150 (E.D. Cal. 2010) (quoting *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1062 (2006)).  To establish the first element, "formation or operation of the conspiracy," *three additional sub-elements* must be shown: "(i) knowledge of wrongful activity, (ii) agreement to join in the wrongful activity, and (iii) intent to aid in the wrongful activity."  *Craigslist,* 942 F. Supp. 2d at 981.

Critically, "actual knowledge of the planned tort, without more, is insufficient to serve as the basis for a conspiracy claim.  Knowledge of the planned tort must be combined with intent to aid in its commission.  'The sine qua non of a conspiratorial agreement is the knowledge on the part of the alleged conspirators of its unlawful objective and their intent to aid in achieving that objective.'  'This rule derives from the principle that a person is generally under no duty to take affirmative action to aid or protect others.'"  *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995) (internal citations omitted).

This principle was applied in *Thinking Liberally Media Inc. v. Orange Juice Blog*, No. SACV 10-00139 DOC (RNBx), 2010 WL 11596144, at *5-6 (C.D. Cal. Nov. 19, 2010).  The plaintiffs brought numerous claims against defendant Pedroza,

as well as the blog he owned, Orange Juice Blog, for trademark infringement, cybersquatting, unfair business practice, conversion, and civil conspiracy. *Id.* at *2. The dispute centered on Pedroza's "childish" battle with the plaintiffs over ownership of a website domain name, which then spiraled into Pedroza buying up *plaintiffs'* domain names, and then redirecting website traffic to Orange Juice Blog. *Id.* The plaintiffs alleged that this evidenced Orange Juice Blog's knowledge of its role in perpetuating the various wrongs. *Id.* But, the court held, "Plaintiffs' speculation that [Defendant] Orange Juice blog *knew* of [Defendant] Pedroza's planned conduct is insufficient to allege a civil conspiracy claim; Plaintiffs must allege, with the support of evidence, that Orange Juice blog *intended* the conduct. Plaintiffs' Complaint falls woefully short in this way, and relies solely on speculation and evidence of Orange Juice's knowledge, but not the intent of Pedroza's actions." *Id.* at *6.

Plaintiff here merely alleges that Redwood *understood* MindGeek was "intentionally embracing child pornography and other nonconsensual content." SAC ¶ 246. While Redwood strenuously disputes that allegation, even taken as true that alleged knowledge is not enough to meet the pleading standard for civil conspiracy. Just as the court rejected a civil conspiracy claim against Orange Juice Blog, even though it was receiving the redirected website traffic, and allegedly had knowledge of Pedroza's planned conduct, Redwood's alleged knowledge of MindGeek's actions and participation in financing of the entity is not enough to suggest actual intent for the wrongful conduct to occur. Indeed, as courts have been clear, there must be *more than mere speculation* (which is all that Plaintiff has offered) that Redwood *intended* for the underlying violations to take place. Here, to the contrary, Redwood's financing agreements specifically required that MindGeek *not* violate the law.

Further, in the case of all elements and sub-elements of civil conspiracy, Plaintiff must plead conspiracy with specificity. "'[B]are legal conclusions, inferences, generalities, presumptions, and conclusions are insufficient.'" *Gifford v. Hornbrook Fire Prot. Dist.*, No. 2:16-CV-0596-JAM-DMC, 2021 WL 4168532, at

- 37 -

*21 (E.D. Cal. Sept. 14, 2021) (citing, *inter alia*, *State of Cal. ex rel Metz v. CCC Info. Servs., Inc.*, 149 Cal. App. 4th 402, 419 (2007)).

Likewise, Plaintiff fails to plausibly allege that Redwood agreed to join or had the intent to aid *any* wrongful activity. *See supra* II.D. The SAC instead indiscriminately asserts the claim against all "Defendants." SAC ¶¶ 591-93. The SAC, for instance, grounds the civil conspiracy claim in other counts not asserted against Redwood and without any specifically alleged ties to Redwood. *Id.* ¶ 591. The SAC states a laundry list of 18 allegedly "wrongful and overt acts." Yet none of those acts are tied to Redwood (*id.* ¶ 592), except for one allegation regarding "financing" which could be (but is not outright) directed at lenders like Redwood. *Id.* ¶ 592(r). It then, in a conclusory fashion, parrots the remaining elements of a civil conspiracy claim. *Id.* ¶¶ 593-94. But a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *See Iqbal*, 556 U.S. at 678; *Gifford*, 2021 WL 4168532, at *21 (holding that civil conspiracy claims must be pled with specificity); *Bassam v. Bank of Am.*, No. CV 15-00587 MMM (FFMx), 2015 WL 4127745, at *7 (C.D. Cal. July 8, 2015) (holding that where defendants are not similarly situated, collective or group pleading violates Rule 8, and dismissing complaint).

*Second*, Plaintiff has not pleaded any underlying tort against Redwood, because Redwood has not breached a duty of care to Plaintiff. As the California Supreme Court explained in *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (Cal. 1994), the "invocation of conspiracy does not alter th[e] fundamental allocation of duty. Conspiracy is not an independent tort; it cannot create a duty or abrogate an immunity. It allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law principles." *Id.* at 514. But Redwood, as a prior lender to MindGeek, did not, and does not, owe any duty to Plaintiff.

California law is clear that "[a] lender does not owe a borrower or third party

- 38 -

any duties 'beyond those expressed in the loan agreement, excepting those imposed due to special circumstance or a finding that a joint venture exists.'" *See River Colony Ests. Gen. P'ship v. Bayview Fin. Trading Grp., Inc.*, 287 F. Supp. 2d 1213, 1224 (S.D. Cal. 2003); *RTC v. BVS Dev., Inc.,* 42 F.3d 1206, 1214 (9th Cir. 1994) ("Only under extraordinary circumstances in which a lender plays an instigating or active role in a development project will a duty to subordinated sellers be imposed."). A special relationship might exist where a bank, through a loan agreement, can control a borrower, *see, e.g., Kim,* 17 Cal. App. 4th at 979–80, or if a bank offers any provision of trust or fiduciary services, or otherwise agrees to serve as a financial advisor, *see, e.g.*, *Peterson Dev. Co. v. Torrey Pines Bank*, 233 Cal. App. 3d 103, 119 (1991). None of those circumstances are present here.

The financing agreements between Redwood and MindGeek, among others, were typical of a standard lender-borrower relationship, and the SAC does not allege (because it cannot) that they created a special circumstance or joint venture, whereby Redwood could owe a duty to Plaintiff. Nor does the SAC allege that Redwood formed a joint venture or special relationship with MindGeek. While the SAC contains conclusory allegations that the financing agreements gave Redwood "the ability to effectively control the company" and that one of MindGeek's owners purportedly felt he " ███████████████████████████████████████ ███████████████████████████████████ " (SAC ¶¶ 270, 272), this is patently insufficient to establish the kind of "special relationship" necessary for Redwood to owe Plaintiff a duty. *See Kim*, 17 Cal. App. 4th at 979–80 (declining to find a "special relationship" between lender and borrower absent allegations that the lender was "*so involved in the borrower's daily operations that the bank has, in effect, dominated the borrower to the extent that the borrower has lost its separate identity*").

Furthermore, while the SAC baselessly asserts that the financing agreements contained "draconian control rights," (SAC ¶¶ 259, 270, 491), the SAC does not

- 39 -

allege sufficient facts to show "how [any specific provisions] of the [financing agreement[s] . . . gave [Redwood] authority over" aspects of MindGeek's daily business operations implicating Plaintiff. *See Kim*, 17 Cal. App. 4th at 980. This is unsurprising, given that the financing agreements did not actually provide Redwood with any "draconian control rights," but affirmatively required that MindGeek ███

████████████████████████████████████████████████████████

███████████████████████████████████████████ *See supra* II. The SAC alleges no contrary allegations of Redwood specifically exercising any such control. There is no allegation that Redwood participated in any day-to-day management of MindGeek's content, its operations, its choice of content, its moderation, or any of the decisions that led to Plaintiff's videos being posted or taken down.

This is because Redwood is "merely a lender whose [former] interest in [MindGeek's] business extend[ed] only as far as its interest in timely repayment and the value of its security." *RTC*, 42 F.3d at 1214. Plaintiff does not and cannot establish that Redwood owed Plaintiff any duty, which it could have violated and caused her injury. Finally, Redwood cannot be held liable for the actions of other defendants that may or may not owe a duty to Plaintiff. *Everest Invs. 8 v. Whitehall Real Est. Ltd. P'shp XI*, 100 Cal. App. 4th 1102, 1107-08 (2002) (holding that a non-fiduciary defendant cannot be held liable for conspiring with a fiduciary defendant to breach the fiduciary's duty to the plaintiff).

## V.    **CONCLUSION**

For the foregoing reasons, Redwood respectfully requests that the Court dismiss this action against Redwood with prejudice.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED:  August 30, 2024

**PAUL HASTINGS LLP**

By: */s/James M. Pearl*
JAMES M. PEARL

*Attorneys for Defendants Redwood Capital Management, LLC, Redwood Master Fund, Ltd, Redwood Opportunity Master Fund, Ltd, Manuel 2018, LLC, Ginogerum, LLC, and White-Hathaway Opportunity Fund, LLC*

- 41 -

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Redwood Capital Management, LLC, Redwood Master Fund, Ltd, Redwood Opportunity Master Fund, Ltd, Manuel 2018, LLC, Ginogerum, LLC, and White-Hathaway Opportunity Fund, LLC, certifies that this brief contains 13,505 words, which complies with the page limit set by court order dated August 2, 2024.


DATED:  August 30, 2024          **PAUL HASTINGS LLP**


By  */s/James M. Pearl*
JAMES M. PEARL

REDWOOD DEFENDANTS' MEM. OF P. & A. ISO MOTION TO DISMISS