Michael J. Bowe
(*pro hac vice*)
mbowe@brownrudnick.com
Lauren Tabaksblat
(*pro hac vice*)
ltabaksblat@brownrudnick.com
**BROWN RUDNICK LLP**
7 Times Square
New York, NY 10036
Telephone:    (212) 209-4800
Facsimile:    (212) 209-4801

David M. Stein (State Bar # 198256)
dstein@olsonstein.com
**OLSON STEIN LLP**
240 Nice Lane # 301
Newport Beach, CA 92663
Phone: 949.887.4600

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENA FLEITES, | CASE NO. 2:21-cv-4920-WLH-ADS |
| Plaintiff, | HON. WESLEY L. HSU |
| v. | **PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** |
| MINDGEEK S.A.R.L. a foreign entity; MG FREESITES, LTD., a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; MG PREMIUM LTD, a foreign entity; MG GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 QUEBEC, INC., a foreign entity; BERND BERGMAIR, a foreign individual; FERAS ANTOON, a foreign individual; DAVID TASSILLO, a foreign individual; VISA INC., a Delaware corporation; REDWOOD CAPITAL MANAGEMENT, LLC, a Delaware corporation; REDWOOD MASTER FUND, LTD, a foreign entity; REDWOOD OPPORTUNITY MASTER FUND, LTD, a foreign entity, MANUEL 2018, LLC, a Delaware corporation; GINGOGERUM, LLC, a Delaware corporation; WHITE-HATHAWY OPPORTUNITY FUND, LLC, a Delaware Corporation; COLBECK CAPITAL MANAGEMENT, LLC, a Delaware corporation; CB MEDIA VENTURES LLC, a Delaware corporation; CB AGENCY SERVICES, LLC, a Delaware | Date:    JANUARY 31, 2025<br>Time:    1:30 PM<br>Courtroom:    9B<br><br>SAC FILED:    MAY 23, 2024 |

corporation; and CB PARTICIPATIONS SPV, LLC, a Delaware corporation.

Defendants.

# **TABLE OF CONTENTS**

**Page**

I.    THE SAC PLEADS BENEFICIARY LIABILITY AS TO EACH DEFENDANT ................................................................................. 5

    A.    The MindGeek Defendants are Beneficiaries of a Trafficking Venture ......................................................................... 11

    B.    Colbeck and Redwood Are Beneficiaries of a Trafficking Venture. ......................................................................... 20

    C.    The SAC Pleads Beneficiary Liability as to Visa ................................. 30

II.   THE SAC PLEADS CLAIMS FOR CONSPIRACY LIABILITY IN VIOLATION OF THE TVPRA ........................................... 36

III.  THE SAC PLEADS CLAIMS FOR VIOLATIONS OF CHILD SEXUAL EXPLOITATION LAWS. ........................................ 46

IV.   PLAINTIFF'S STATE LAW CLAIMS ARE PROPERLY PLED ............ 49

    A.    The SAC Pleads a Claim for Civil Conspiracy. ................................... 49

    B.    The SAC Pleads Violations of California's UCL and FAL. ................. 49

    C.    The SAC Pleads a Violation of the California TVPA ........................... 50

    D.    The SAC Pleads a Violation of California Civil Code 1708.85. .......... 50

    E.    The SAC Pleads Invasion of Privacy and Intrusion. ............................ 51

    F.    The SAC Pleads Both Common Law and Statutory Misappropriation. ..................................................................... 51

    G.    The SAC Pleads Negligence. ................................................................ 52

V.    CDA § 230 DOES NOT IMMUNIZE DEFENDANTS' CONDUCT ......... 53

    A.    MindGeek is a Content Creator ............................................................ 53

    B.    FOSTA Bars MindGeek's Section 230 Defense .................................. 56

    C.    CDA Section 230 Does Not Protect Colbeck, Redwood, or Visa ........ 57

VI.   PLAINTIFF HAS ARTICLE III STANDING ......................................... 57

A.   FOSTA Confers Plaintiff with Standing to Assert Claims Against Colbeck and Redwood................................................................57

B.   Plaintiff's Injuries Are Fairly Traceable to Colbeck and Redwood......58

C.   Plaintiff Need Not Plead Proximate Cause ...........................................61

VII.  THE COURT HAS PERSONAL JURISDICTION OVER EACH DEFENDANT............................................................................ 62

A.   The Alter Ego Relationship Between the MindGeek Defendants Confers Jurisdiction................................................................62

B.   The Individual Defendants Personally Dominated and Controlled the Business as a Single Enterprise with Unity of Interest and Operation ...............................................................................63

C.   Defendants Legal and Factual Challenges are Inapposite and Ineffective ...............................................................................75

VIII.  PLAINTIFF'S CLAIMS ARE WITHIN THE TERRITORIAL REACH OF THE TVPRA............................................................................ 84

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.M v. Omegle.com*,
  2023 WL 1470269 (D. Or. Feb. 2, 2023)..................................................... 35

*ABKCO Music, Inc. v. LaVere*,
  217 F.3d 684 (9th Cir. 2000)...................................................................... 38

*Acevedo v. eXp Realty, LLC*,
  713 F. Supp. 3d 740 (C.D. Cal. 2024) ................................................... 2, 24

*Aetna Casualty, Surety v. Leahey Constr. Co.*,
  219 F.3d 519 (6th Cir. 2000)...................................................................... 45

*Akhtar v. Vitamin Herbal Homeopathic Ctr. Inc.*,
  2021 WL 7186030 (E.D.N.Y. Apr. 30, 2021) ........................................... 38

*Anderson v. TikTok, Inc.*,
  116 F.4th 180 (3rd Cir. 2024) ............................................................. 53, 55

*Associated Gen. Contractors of California, Inc. v. California State
  Council of Carpenters*,
  459 U.S. 519 (1983)................................................................................... 62

*B.J. v. G6 Hosp., LLC*,
  2023 WL 3569979 (N.D. Cal. May 19, 2023).............................................. 6

*B.M. v. Wyndham Hotels & Resorts, Inc*,
  2020 WL 4368214 (N.D. Cal. July 30, 2020)...................................... 2, 3, 4, 6

*Bank of Am. Corp. v. City of Miami*,
  581 U.S. 189 (2017)................................................................................... 61

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ................................................................... 57

*Barnett v. Cnty. of Los Angeles*,
  2021 WL 826413 (C.D. Cal. Mar. 4, 2021) ............................................... 17

*Barrio v. County of San Bernardino*,
  2020 WL 4037169 (C.D. Cal. 2020).......................................................... 49

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................... 1

*Bennett v. Spear*,
    520 U.S. 154 (1997) ........................................................................................ 59

*Bernhardt v. Islamic Republic of Iran*,
    47 F.4th 856 (D.C. Cir. 2022) ........................................................................ 41

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975) ........................................................................................ 39

*Bonacasa v. Standard Chartered PLC*,
    2023 WL 2390718 (S.D.N.Y. Mar. 7, 2023) .................................................. 62

*Brill v. Chevron Corp.*,
    2017 WL 76894 (N.D. Cal. Jan. 9, 2017) ................................................. 60, 61

*Brown v. Corr. Corp. of Am.*,
    603 F.Supp.2d 73, 81 (D.D.C. Mar. 26, 2009) .............................................. 35

*City of Oakland v. Wells Fargo & Co.*,
    14 F.4th 1030 (9th Cir. 2021) ......................................................................... 62

*Colvin v. Roblox Corp.*,
    F.Supp.3d--, 2024 WL 1268420 (N.D. Cal. 2024) ................................... 53, 57

*Craigslist Inc. v. 3Taps Inc.*,
    942 F. Supp. 2d 962 (N.D. Cal. 2013) ............................................................ 43

*Ctr. For Biological Diversity v. U.S. E.P.A.*,
    90 F. Supp. 3d 1177 (W.D. Wash. 2015) ........................................................ 61

*CytoSport, Inc. v. Vital Pharmaceuticals, Inc.*,
    894 F. Supp. 2d 1285 (E.D. Cal. 2012) .......................................................... 49

*Direct Sales Co. v. U.S.*,
    319 U.S. 703 (1943) .......................................................................................... 3

*Doe #1 v. MG Freesites, Ltd.*,
    676 F.Supp.3d 113 (N.D. Ala. 2022) ...................................................... *passim*

*Doe #1 v. Red Roof Inns*, *Inc.*,
    21 F.4th (11th Cir. 2021) ......................................................................... 3, 6, 8

*Doe #9 v. Wyndham, Hotels and Resorts, Inc.*,
   2021 WL 1186333 (S.D. Tex. Mar. 30, 2021)........................................... 6

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
   671 F. Supp. 3d 387 (S.D.N.Y. 2023)........................................... *passim*

*Doe (L.M.) v. 42 Hotel Raleigh, LLC*,
   2024 WL 4204906 (E.D.N.C. Sept. 16, 2024)............................... 7, 30

*Doe (S.C.) v. Sheraton, LLC*,
   2024 WL 1329422 (D.N.M. Mar. 28, 2024)................................... 35

*Doe v. Grindr Inc.*,
   709 F. Supp. 3d 1047 (C.D. Cal. 2023) ...................................... 14

*Doe v. Howard*,
   No. 2012 WL 3834929 (E.D. Va. Sept. 4, 2012)........................... 38

*Doe v. MindGeek*,
   558 F. Supp. 3d 828 (C.D. Cal. 2021) ...................................... *passim*

*Doe v. Mindgeek USA Inc.*,
   574 F.Supp.3d 760 (C.D. Cal. 2021) ................................ 16, 54, 56

*Doe v. Twitter, Inc.*,
   555 F. Supp. 3d 889 (N.D. Cal. 2021) ................................ 2, 4, 56

*Doe v. Twitter, Inc.*,
   2023 WL 8568911 (N.D. Cal. Dec. 11, 2023) ........................... 6

*Doe v. WebGroup Czech Republic, A.S.*,
   2024 WL 3533426 (C.D. Cal. July 24, 2024)............................ 56

*Doe v. Wyndham Hotels & Resorts*,
   2024 WL 2104596 (C.D. Cal. Feb. 28, 2024) ........................... 62

*Does 1-6 v. Reddit, Inc.*,
   51 F.4th 1137 (9th Cir. 2022) ........................................ 6, 13, 14, 56

*E.S. v. Best W. Int'l, Inc.*,
   510 F. Supp. 3d 420 (N.D. Tex. 2021) .................................... 6

*Fair Housing Council v. Roommates.com*,
   521 F.3d 1157 (9th Cir. 2008) (*en banc*) ............................ 54, 55

*Fraley v. Facebook, Inc.*,
   830 F. Supp. 2d 785 (N.D. Cal. 2011) ................................................. 52

*Frances T. v. Vill. Green Owners Assn.*,
   42 Cal. 3d 490, 723 P.2d 573 (1986) ................................................. 53

*G.G. v. Salesforce.com*, *Inc.*,
   76 F.4th 544 (7th Cir. 2023) ......................................................... *passim*

*United States ex rel. Ginger v. Ensign Grp.*,
   2022 WL 4110166 (C.D. Cal. Mar. 10, 2022) ................................... 18

*Gonzalez v. Google LLC*,
   2 F.4th 871 (9th Cir. 2021) ....................................................... 54, 56

*Handy v. LogMeIn, Inc.*,
   2015 WL 1729681 (E.D. Cal. Apr. 15, 2015) ................................... 50

*Heller v. NBCUniversal, Inc.*,
   2016 WL 6573985 (C.D. Cal. Mar. 30, 2016)................................... 18

*Holmes v. Sec. Inv. Prot. Corp.*,
   503 U.S. 258 (1992) ................................................................. 61

*HomeAway.com, Inc. v. City of Santa Monica*,
   918 F.3d 676 (9th Cir. 2019)..................................................... 57

*Horton by Horton v. City of Santa Maria*,
   915 F.3d 592 (9th Cir. 2019)..................................................... 17

*J.B. v. G6 Hosp., LLC*,
   2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ................................. 6

*J.C. v. Choice Hotels Int'l, Inc.*,
   2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) ......................... 3, 6, 23

*Jackson v. Airbnb, Inc.*,
   2022 WL 16753197 (C.D. Cal. Nov. 4, 2022)................................. 14

*Justo v. Indymac Bancorp*,
   2010 WL 623715 (C.D. Cal. Feb. 19, 2010) ................................. 62

*Kaing v. Pulte Homes, Inc.*,
   2010 WL 625365 (N.D. Cal. Feb. 18, 2010) ................................. 61

*Kemper v. Deutsche Bank AG*,
  911 F.3d 383 (7th Cir. 2018)................................................................. 41

*Ketab Corp. v. Mesriani L. Grp.*,
  2015 WL 2085523 (C.D. Cal. May 5, 2015) ....................................... 31

*Kim v. Sumitomo Bank of Cal.*,
  17 Cal. App. 4th 974 (Cal. App. 2 Dist. 1993) ................................... 25

*Kimzey v. Yelp! Inc.*,
  836 F.3d 1263 (9th Cir. 2016) ............................................................ 56

*Krivo Indus. Supply Co. v. Nat'l Distillers & Chemical Corp.*,
  483 F.2d 1098 (5th Cir. 1973) ............................................................ 26

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310, 246 P.3d 877 (2011) ................................................ 62

*L.W. through Doe v. Snap Inc.*,
  675 F. Supp. 3d 1087 (S.D. Cal. 2023)............................................... 13

*La Barbera v. Ole Mexican Foods Inc.*,
  2023 WL 4162348 (C.D. Cal. May 18, 2023) .................................... 30

*LaBarbera v. Ole Mexican Foods, Inc.*, 2023 WL 11823366 (9th Cir.
  Sept. 27, 2023) .................................................................................... 30

*Lagasan v. Al-Ghasel*,
  92 F. Supp. 3d 445 (E.D. Va. 2015) ................................................... 38

*Lamumba Corp. v. City of Oakland*,
  2006 WL 3086726 (N.D. Cal. Oct. 30, 2006) .................................... 31

*Lee v. Penthouse Int'l, Ltd.*,
  1997 WL 33384309 (C.D. Cal. Mar. 19, 1997).................................. 51

*Levitt v. Yelp! Inc.*,
  765 F.3d 1123 (9th Cir. 2014................................................................. 6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)............................................................... 59, 61, 62

*Louers v. Lacy*,
  2012 WL 5426442 (D. Md. Nov. 6, 2012) ......................................... 62

PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS

*M.L. v. craigslist Inc.*, 2020 WL 5494903,
(W.D. Wash. Sept. 11, 2020) ........................................................... 5, 28

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
425 F. Supp. 3d 959 (S.D. Ohio 2019) ........................................ 28, 35

*Marceau v. Int'l Bhd. of Elec. Workers*,
2006 WL 1889600 (D. Ariz. July 7, 2006) ........................................ 63

*Massachusetts v. E.P.A.*,
549 U.S. 497 (2007) ............................................................................ 58

*Mecinas v. Hobbs*,
30 F.4th 890 (9th Cir. 2022) ................................................................ 2

*Mendia v. Garcia*,
768 F.3d 1009 (9th Cir. 2014) ............................................................ 59

*Michaels v. Internet Entertainment Group, Inc.*,
5 F. Supp. 2d 823 (C.D. Cal. 1998) .................................................... 51

*Moreno v. Hanford Sentinel, Inc.*,
172 Cal. App. 4th 1125 (2009) ............................................................ 51

*Nat. Res. Def. Council v. U.S. E.P.A.*,
542 F.3d 1235 (9th Cir. 2008) ............................................................ 58

*National Audubon Society v. Davis*,
307 F.3d 835 (9th Cir. 2002) ............................................................. 59

*Neilson v. Union Bank of California, N.A.*,
290 F.Supp.2d 1101 (C.D. Cal. 2003) ................................................ 62

*Newcal Indus., Inc. v. Ikon Office Sol.*,
513 F.3d 1038 (9th Cir. 2008) ............................................................ 24

*Newcombe v. Adolf Coors Co.*,
157 F.3d 686 (9th Cir. 1998) .............................................................. 52

*Niederreuther v. Schifter*,
1998 WL 409876 (N.D. Cal. July 14, 1998) ...................................... 25

*Ning Xianhua v. Oath Holdings, Inc.*,
2021 WL 1700227 (N.D. Cal. Apr. 29, 2021) ................................... 59

*Noble v. Weinstein*,
   335 F. Supp. 3d 504 (S.D.N.Y. 2018)...................................................................... 2

*Nordstrom, Inc. v. Chubb & Son, Inc.*,
   54 F.3d 1424 (9th Cir. 1995)........................................................................... 41

*Novoa v. The GEO Group, Inc.*,
   2018 WL 3343494 (C.D. Cal. Jun. 21, 2018)........................................... 49

*Paguirigan v. Prompt Nursing Emp. Agency LLC*,
   286 F. Supp. 3d 430 (E.D.N.Y. 2017) ..................................................... 38

*Parsons v. Crown Disposal Co.*,
   15 Cal.4th 456 (Cal. 1997)........................................................................ 53

*Pinkerton v. United States*,
   328 U.S. 640 (1946).................................................................................. 44

*Pinter v. Dahl*,
   486 U.S. 622 (1988).................................................................................. 39

*Rabin v. PricewaterhouseCoopers LLP*,
   2019 WL 9078785 (N.D. Cal. Apr. 5, 2019) ......................................... 30

*Ratha v. Phatthana Seafood Co.*,
   35 F.4th 1159 (9th Cir. 2022) ............................................... 6, 37, 38, 39

*Ratha v. Rubicon Res., LLC*,
   111 F.4th 946 (9th Cir. 2024) ................................................. 36, 37, 38

*Ratha v. Rubicon Res., LLC*,
   No. 23-55299 (9th Cir. Sept. 13, 2024) ................................................. 39

*Resolution Tr. Corp. v. BVS Dev., Inc.*,
   420 F.3d 1206 (9th Cir. 1994) ................................................................. 26

*Ricchio v. McLean*,
   853 F.3d 553 (1st Cir. 2017)..................................................................... 38

*River Colony Ests. v. Bayview Financial Trading Grp., Inc.*,
   287 F.Supp.2d 1213 (S.D. Cal. 2003).................................................... 25

*Robins v. Spokeo, Inc.*,
   867 F. 3d 1108 (9th Cir. 2017) ................................................................ 58

*Roe v. Howard*,
    917 F.3d 229 (4th Cir. 2019)............................................................... 37

*S.J. v. Choice Hotels Int'l, Inc.*,
    473 F. Supp. 3d 147 (E.D.N.Y. 2020) ................................................. 6

*SAG-AFTRA v. LABC Productions, LLC, et al.*,
    2023 WL 11878288 (C.D. Cal. Oct. 20, 2023).................................... 18

*Sanders v. Am. Broad. Companies, Inc.*,
    20 Cal. 4th 907 (Cal. 1999).................................................................. 52

*Schramm v. Montage Health*,
    2019 WL 377772 (N.D. Cal. Jan. 30, 2019) ....................................... 31

*Silvas v. Cnty. of Riverside*,
    2020 WL 7086144 (C.D. Cal. Oct. 9, 2020)........................................ 31

*Social Media Cases*, 2023 WL 6847378,
    (Cal. Super. Ct. Oct. 13, 2023)............................................................ 53

*Solano v. Playgirl, Inc.*,
    292 F.3d 1078 (9th Cir. 2002) ............................................................. 52

*State Comp. Ins. Fund v. Khan*,
    2013 WL 12132027 (C.D. Cal. July 30, 2013)..................................... 1

*SurvJustice Inc. v. DeVos*,
    2019 WL 1434144 (N.D. Cal. Mar. 29, 2019)..................................... 31

*Sywula v. Teleport Mobility, Inc.*,
    652 F. Supp. 3d 1195 (S.D. Cal. 2023)................................................ 61

*T.E. v. Wyndham Hotels & Resorts, Inc.*,
    2024 WL 474400 (S.D. Ohio Feb. 7, 2024)................................. *passim*

*Tanedo v. E Baton Rouge Parish School Board*,
    790 F. Supp. 2d 1134 (C.D. Cal. May 11, 2011)................................. 38

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
    768 F.2d 1001 (9th Cir. 1985) ............................................................. 36

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023).............................................................................. 59

*U.S. v. Lothian,*
   976 F.2d 1257 (9th Cir. 1992) ............................................................ 45

*U.S. v. Matta-Ballesteros,*
   71 F.3d 754 (9th Cir. 1995).................................... 36, 42, 43, 44

*U.S. v. Rearden,*
   349 F.3d 608 (9th Cir. 2003)................................................ 47

*U.S. v. Salman,*
   618 Fed. App'x. 886 (9th Cir. 2015) ................................... 46

*U.S. v. Welton,*
   2009 WL 4507744 (C.D. Cal. Nov. 30, 2009)........................... 47, 48

*United States v. Alcius,*
   952 F. 3d 83 (2d Cir. 2020)............................................. 16

*United States v. Calaway,*
   524 F.2d 609 (9th Cir. 1975).......................................... 36

*United States v. Cruz-Ramirez,*
   2011 WL 5599630 (N.D. Cal. Nov. 17, 2011) .................... 45

*United States v. Lennick,*
   18 F.3d 814 (9th Cir. 1994) ........................................... 40

*United States v. Levin,*
   13 F.4th 96 (1st Cir. 2021) ........................................... 47

*United States v. Loveland,*
   825 F.3d 555 (9th Cir. 2016)........................................ 40

*United States v. Myers,*
   355 F.3d 1040 (7th Cir. 2004) ...................................... 48

*United States v. Ramirez,*
   714 F.3d 1134 (9th Cir. 2013) ...................................... 40

*United States v. Rico,*
   619 F. App'x 595 (9th Cir. 2015) .................................. 16

*United States v. Sparks,*
   659 F. Supp. 3d 1056 (N.D. Cal. 2023) ........................... 16

*Washington Env't Council v. Bellon*,
    732 F.3d 1131 (9th Cir. 2013) ............................................................... 61

*Williams v. Sisolak*,
    2022 WL 2819842 (D. Nev. July 18, 2022) ..................................... 61

*Y.Y.G.M. SA v. Redbubble, Inc.*,
    75 4th 995, 1001 (9th Cir. 2023)........................................................ 47

*Yeager v. Cingular Wireless LLC*,
    673 F.Supp.2d 1089 .................................................................................. 52

*Z&Z Leasing, Inc v. Graying Reel, Inc.*,
    873 F. Supp. 51 (E.D. Mich. 1995)...................................................... 26

**Statutes**

18 U.S.C. § 1591 ..................................................................................... *passim*

18 U.S.C. § 1594 ................................................................................... 36, 38, 48

18 U.S.C. § 1595 ..................................................................................... *passim*

18 U.S.C. § 2252 ................................................................................... 46, 48, 58

18 U.S.C. § 2255 ....................................................................................... 22, 46

47 U.S.C. § 230(c)(1) ................................................................................ 57, 58

California's Unfair Competition Law
    (Cal. Bus. & Prof. Code §§ 17200 and 17500)................................. 48

Fair Housing Act ....................................................................................... 61, 62

Lanham Act .................................................................................................. 61

136 Stat. 6199 (2023) ................................................................................. 38

**Other Authorities**

California Civil Code ................................................................................. 63

California Civil Code § 52.5 ...................................................................... 49

California Civil Code § 334(a)................................................................... 52

California Civil Code § 1708.85 ................................................................ 50

1

California Civil Code § 3344 ..................................................... 52

Federal Rules of Civil Procedure 12 ......................................... 1

Federal Rules of Civil Procedure 54(b) .................................... 30

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS

Serena Fleites ("Plaintiff") submits this memorandum of points and authorities in opposition to defendants' motions to dismiss.[1]

## PRELIMINARY STATEMENT

MindGeek is one of the largest trafficking ventures in the world. For more than a decade, MindGeek, its owners, executives, and partners—Visa, Redwood, and Colbeck—have elected to capitalize on the exploitation and abuse of tens of thousands of human beings so that they can make more than the enormous sums of money they would have otherwise made. Plaintiff, Serena Fleites, became one of defendants' victims when, at age thirteen, her child sexual abuse materials ("CSAM") were uploaded to MindGeek's tubesites and disseminated all over the internet.

In the arms race to be the number one result in the Google search engine for pornography, content is king, and the unrestricted accumulation of content is a driving factor in determining which website leads in Google search results. Thus, MindGeek embraced an unrestricted content model in which they not only allowed users to populate their platform with virtually any type of pornographic content, but also devoted themselves to analyzing all the content and how such content, including child porn, could be used to maximize website traffic and advertising revenue. This detailed, moment-to-moment analysis provided MindGeek with a comprehensive understanding of the content on its platforms, the users who consumed it, and how to

---

[1] Motions were filed by MindGeek S.á.r.l., MG Freesites Ltd., MG Premium Ltd., MindGeek USA Incorporated, MG Global Entertainment Inc., 9219-1568 Quebec Inc. ("MindGeek Defendants") (ECF No. 440 (MG Mot.)), Bernd Bergmair (ECF No. 433), Feras Antoon, and David Tassillo (ECF No. 436) ("Individual Defendants"), Redwood Capital Management, LLC, Redwood Master Fund Ltd., Redwood Opportunity Master Fund, Ltd., Manuel 2018, LLC, Ginogerum, LLC, White-Hathaway Opportunity Fund, LLC (the "Redwood Defendants" or "Redwood") (ECF No. 447 (Redwood Mot.)), Colbeck Capital Management, LLC, CB Media Ventures DD, LLC, CB Agency Services, LLC, CB Participations SPV, LLC (the "Colbeck Defendants" or "Colbeck") (ECF No. 442) (Colbeck Mot.)), and Visa Inc. (ECF No. 432 (Visa Mot.)) (collectively, "defendants").

partner with those users to drive further content and traffic. MindGeek monetized this content and traffic through advertisements and subscriptions that were processed through credit card companies, like defendant Visa, which was aware of the inextricably intertwined use of child pornography and trafficked content in MindGeek's business model, but nevertheless imposed no limitations on transactions they would process.  In doing so, MindGeek and Visa created a bustling marketplace for child pornography.

These criminal activities were directed by MindGeek's owners, defendants Bergmair, Antoon, and Tassillo, and executed through a byzantine international structure of shell companies that were in constant metamorphosis, served no legitimate purpose, and were created and dissolved to mask criminal activity, evade liability, and enrich the defendants.

The acquisition, growth, and operation of this dominant pornography conglomerate required massive financing. Colbeck and Redwood provided and arranged for the hundreds of millions of dollars MindGeek needed to build its empire. Before doing so and during the decade of such financing, they were fully aware that MindGeek would be using the financing to monetize child pornography and other nonconsensual content. They knew this from extensive pre-finance due diligence, ███████████████████████████████████████, and from the steady drumbeat of public reports of child pornography and other nonconsensual content on MindGeek's websites.  Nevertheless, they arranged and provided MindGeek with hundreds of millions of dollars of financing because they too had a singular focus on profits they would earn from the exorbitant interest rates and fees they could demand because others were unwilling to finance this illicit business.

The SAC's description of criminal activities and the allegations of each defendant's role in these activities gives rise to a host of cognizable federal and state claims. Defendants offer no arguments that individually or collectively insulate them from liability for the harm their wrongdoing has caused Plaintiff.

First, each defendant argues that they cannot be liable as beneficiaries of a sex trafficking venture because the SAC fails to allege their specific knowledge of Plaintiff, her videos, her age in her videos, her street-level trafficker, or any of the users that downloaded and republished her child porn images. But specific knowledge of Plaintiff or her trafficker is not required under the plain text of the TVPRA and has been uniformly rejected by courts in this district and throughout the country, including in the recent decisions in *Salesforce,* 76 F.4th 544 (7th Cir. 2023) and *Deutsche Bank*, 671 F.Supp. 3d 387 (S.D.N.Y. 2023). These decisions make clear that to state a claim for beneficiary liability under the TVPRA, a plaintiff need only allege facts sufficient to show that defendant (1) participated in a venture; (2) received a benefit from its participation; and (3) knew or should have known that the venture was engaged in sex trafficking.  Importantly, the venture need not be a sex trafficking venture, and a defendant need not commit an overt act in furtherance of sex trafficking, or intend to violate the statute. Instead, liability may be imposed for participation in any commercial venture, so long as defendant had the requisite knowledge that the venture was engaged in illegal trafficking. Judge Carney previously held that Plaintiff "comfortably stated a claim [for beneficiary liability] against MindGeek." Dkt. 166 at 18.  The SAC likewise pleads Visa's, Redwood's, and Colbeck's liability under section 1591(a)(2) of the TVPRA. At a minimum, these allegations raise inherent questions of fact that require discovery.

Second, Plaintiff also pleads each defendant's agreement and intent to conspire to violate the TVPRA. Judge Carney previously held that "Plaintiff has adequately pled that Visa conspired with MindGeek to violate section 1591(a)(2)" by knowingly providing MindGeek the "tool" to monetize child pornography.  Dkt. 166 at 25.  The SAC alleges that the conspiracy extended to Redwood and Colbeck. Contrary to defendants' assertions, the Ninth Circuit's recent decision in *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159 (9th Cir. 2022), addressing the retroactive application of attempt liability, does not bar Plaintiff's TVRPA conspiracy claim arising from pre-

3

2023 conduct. The textual analysis the Ninth Circuit relied on has no application to civil conspiracy claims under the TVPRA, which have been long-recognized in this state and throughout the country.

Third, defendants' challenges to Plaintiff's claim for violation of federal child exploitation laws fare no better. MindGeek's repeated public claim that its moderators reviewed and approved every video prior to upload, as well as the videos, titles, and comments which clearly conveyed Plaintiff's age establish their requisite knowledge.

Fourth, the SAC also pleads numerous state statutory and common law claims which defendants do not meaningfully challenge.

Fifth, as this Court has previously held based on analogous facts, defendants' practice of curating, modifying, optimizing, transferring, and reuploading illegal content materially contributed to the CSAM on its tubesites, and renders it a content creator not entitled to CDA 230 protection.

Finally, this Court may exercise personal jurisdiction over MindGeek S.á.r.l. and the Individual Defendants because they, and the MindGeek Defendants who have conceded jurisdiction, were a "single enterprise" and alter egos. At a minimum, significant factual questions exist that preclude a determination absent an evidentiary hearing, which should be deferred until trial or summary judgment given how intertwined theses issues are with the merits.

For these reasons and those set forth below, defendants' Motions should be denied.

## LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12 should be denied "where a plaintiff has alleged 'enough facts to state a claim to relief that is plausible on its face.'" *State Comp. Ins. Fund v. Khan*, 2013 WL 12132027, at *2 (C.D. Cal. July 30, 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Id*. A plaintiff's factual

allegations are sufficient to survive a motion to dismiss "even if it strikes a savvy judge the actual proof of those facts is improbable and that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation omitted).

## ARGUMENT

## I.   THE SAC PLEADS BENEFICIARY LIABILITY AS TO EACH DEFENDANT

The Trafficking Victims Protection Act ("TVPRA") "provides trafficking victims with a private right of action to pursue claims against . . . those who knowingly benefit financially from trafficking ('beneficiary liability')." *Doe v. MindGeek*, 558 F. Supp. 3d at 835; 18 U.S.C. § 1595. Congress mandated that the TVPRA be "broad," "expansive," and punish a wide range of conduct. *See Acevedo v. eXp Realty, LLC,* 713 F. Supp. 3d 740, 766 (C.D. Cal. 2024) (observing that the TVPRA is a remedial statute that is intended to be construed broadly and applied to cases that may not be the "archetypal" sex trafficking action); *see also Noble v. Weinstein*, 335 F. Supp. 3d 504, 515–16 (S.D.N.Y. 2018).[2]

Consistent with this mandate, courts in this circuit and throughout the country have uniformly held that beneficiary liability does not depend on an overt act in furtherance of a sex trafficking venture.  *See, e.g.*, *Acevedo*, 713 F.Supp.3d at 775  ("1595's 'venture' is not limited to a 'sex trafficking venture'"); *Doe v. Twitter*, 555 F. Supp. 3d 889, 918 (N.D. Cal. 2021) (beneficiary liability "does not require that a plaintiff demonstrate an overt act that furthered the sex trafficking aspect of the venture") (reversed on other grounds); *B.M. v. Wyndham Hotels & Resorts, Inc,* 2020 WL 4368214, at *4 (N.D. Cal. July 30, 2020) (same); *G.G. v. Salesforce.com*, *Inc.,* 76 F.4th 544, 559 (7th Cir. 2023) ("[I]t is the venture that must violate Section 1591, not the participant"). It doesn't even require an

---

[2] MindGeek's claim that the TVPRA only covers physical violence (MG Mot. at 15-16) was squarely rejected by this Court. *See Acevedo*, 713 F. Supp. 3d at 765-766.

agreement or meeting of minds to further the venture's illegal activities. *See id*. at 563 (criminal mens rea not required for participant liability); *see also Doe 1 v. Deutsche Bank Aktiengesellschaft,* 671 F. Supp. 3d 387 (S.D.N.Y. 2023) (finding plaintiff stated a claim for beneficiary liability even in the absence of an agreement to further sex-trafficking).[3] To state a claim under section 1591(a)(2), a plaintiff need only allege that defendant (1) knowingly participated in a venture; (2) received a benefit from its participation; and (3) knew or should have known that the venture was engaged in sex trafficking. *B.M.*, 2020 WL 4368214, at *4.

"Venture" includes any "commercial ventures" including those engaged in "running and expanding a business." *Salesforce,* 76 F.4th at 554 ("While a "venture" can certainly run the gamut from an isolated act of sex trafficking to an international sex-trafficking enterprise, it can also be a business whose primary focus is not on sex trafficking."); *see also* 18 U.S.C. § 1591(e)(6) (defining venture as "any group of two or more individuals associated in fact"). The venture does not need to be one created for sex trafficking or have trafficking as its primary purpose. *See J.C. v. Choice Hotels Int'l, Inc*., 2020 WL 6318707, at *7 (N.D. Cal. Oct. 28, 2020) (rejecting argument that the venture must be a sex trafficking venture).[4] Participation is inferred where the complaint pleads a "continuous business relationship" or "pattern of conduct." *Doe v. MindGeek*, 558 F. Supp. 3d 828, 834 (C.D. Cal. 2021) (finding nearly identical allegations sufficient to meet the participation element); *see also Salesforce*, 76 F.4th at 560 (allegations of "continuous business relationship . . . gives rise to inference . . . that the civil defendant facilitated the venture's success.").

---

[3] Not only is there no intent requirement in the TVPRA, section 1595's constructive knowledge standard is incongruent with intent as "knowledge is the foundation of intent." *Direct Sales Co. v. U.S*., 319 U.S. 703, 711-12 (1943).

[4] *See also Salesforce*, 76 F.4th at n. 8 (collecting cases and noting that "nearly every court agrees" with this broad definition of venture).

The "benefit received" need not derive directly from illegal activity. *See B.M.*, 2020 WL 4368214, at *4 (such interpretation "improperly reads a requirement for actual knowledge of criminal sex trafficking into the civil statute and reads out the should have known language") (internal quotations omitted); *Salesforce*, 76 F. 4th at 564 ("the benefit need not take the form of 'profits' that are the 'specific result' of a sex-trafficking venture"). Rather, the "knowingly benefit" element of section 1595 merely requires that defendant receive a financial benefit from the relationship. *See B.M.,* 2020 WL 4368214, at *4; *see also Salesforce*, 76 F. 4th at 565 ("section 1595 says nothing about why the sex trafficker provides any benefit to the participant-defendant" and "does not even require that the sex trafficker itself or himself provide any benefit"); *id.* at 565 n.20 (noting that a *quid pro quo* requirement "has been rejected by virtually every other court.").

Citing Judge Carney's July 29, 2022 decision addressing the FAC's beneficiary liability claim against Visa, MindGeek, Redwood, and Colbeck each argue that Plaintiff's beneficiary liability claim should be dismissed as to them because the SAC fails to allege their actual or constructive knowledge of Plaintiff, her videos, her age in the videos, or any interaction with the persons who recorded the videos or downloaded them. *See* MG Mot. at 18; Redwood Mot. at 26-28; Colbeck Mot. at 16-18; Antoon/Tassillo Mot. at 30-31; Bergmair Mot. at 39. But these extra-statutory requirements defendants seek to write into the statute conflict with the plain text of section 1595 which requires only "participation in a <u>venture</u> which that person knew or should have known <u>has engaged in an act in violation of this chapter</u>," 18 U.S.C. § 1595(a) (emphasis added), and has been squarely rejected by two recent courts following Judge Carney's order.

In May 2023, the Southern District of New York denied defendants JP Morgan's and Deutsche Bank's motions to dismiss claims asserted by Jeffrey Epstein victims seeking to hold the banks liable for funding the venture that had been publicly accused by multiple media outlets of sex crimes. *See Deutsche Bank,*

671 F. Supp. 3d 387.  In so ruling, the court rejected the banks' argument that section 1595 required knowledge "that force, fraud, or coercion was used with respect <u>to the plaintiff herself</u>." *Id.* at 406-407 (emphasis in original).  It reasoned that the text of section 1591(a)(2) "directly supports" the conclusion that liability is imposed for knowingly benefiting from a sex trafficking venture, not for knowingly benefiting from the sex trafficking of a particular <u>person</u>."  *Id.* at 407 (emphasis in original).  Thus, it concluded that "[k]nowledge . . . is required with respect to the venture, not with respect to any particular person." *Id.*

The Seventh Circuit reached the same conclusion last year in *Salesforce*. *See Salesforce*, 76 F.4th at 558. In seeking to avoid liability for its long-term contractual agreement to operate, support, and grow the business of the now-defunct online prostitution website, Backpage, Salesforce argued that the TVPRA required actual or constructive knowledge of the "<u>specific victim</u>" of sex trafficking.  *Id.*at 556. The Seventh Circuit disagreed. Following the "majority of courts," the Seventh Circuit held that "[t]o state a claim under Section 1595, a plaintiff needs to allege plausibly that the defendant had constructive knowledge that a venture <u>generally</u> has violated Section 1591. Knowledge of the specific victim, let alone knowledge of her identity, is not required." *Salesforce*, 76 F.4th at 558 (citations omitted; emphasis in original); *see also M.L. v. craigslist Inc*., 2020 WL 5494903, at *5–6 (W.D. Wash. Sept. 11, 2020) (civil defendant need not have constructive knowledge of the victim's specific trafficking).

In reaching this conclusion, the *Salesforce* court considered and distinguished many of the cases defendants now cite on this motion. *See Salesforce,* 76 F. 4th at 556-558.[5] For example, the Seventh Circuit correctly

---

[5] The remaining cases defendants rely on are equally unavailing. *See Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1179 (9th Cir. 2022) ("*Ratha I*") (granting summary judgment after discovery where only evidence of knowledge was general understanding that Thailand was a "hot spot" for trafficking); *Levitt v. Yelp! Inc.*,

1  reasoned that *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147 (E.D.N.Y.

2  2020), relied on by Colbeck and Bergmair (Colbeck Mot. at 19; Bergmair Mot. at

3  39), does not require knowledge of a specific victim. *See Salesforce,* 76 F. 4th at

4  557.  While the *Choice* court correctly held that knowledge or willful blindness of

5  an industry sex trafficking problem does not satisfy the statutory requirement, it

6  did not go so far as to require knowledge of the plaintiff, instead holding that

7  defendant must have knowledge of a specific venture, not a specific victim. *See*

8  *Salesforce*, 76 F. 4th at 557; *see also Choice Hotels*, 473 F. Supp. 3d at 154.[6]

9      Other cases defendants rely on are not persuasive here because they concern

10  trafficking ventures involving few victims, sometimes only the plaintiff herself.[7]

11  "In such cases, knowledge of the specific victim goes hand-in-glove with

12  knowledge of the 'venture.'" *Salesforce*, 76 F.4th at 557. "Because the ventures

13  and the victims were one and the same, these cases do not stand for the proposition

14  that a civil defendant who participated in a venture engaged in trafficking on a

15  substantial scale must have had constructive knowledge of the specific victim." *Id.*

16  _____

17  765 F.3d 1123, 1135–36 (9th Cir. 2014) (addressing knowledge requirement for
    extortion claims which court observed "is an exceedingly narrow concept"); *Doe v.*

18  *Twitter, Inc.*, 2023 WL 8568911 (N.D. Cal. Dec. 11, 2023) (addressing more
    stringent criminal standard for knowledge); *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137,

19  1145 (9th Cir. 2022) (same).  Moreover, *Reddit* does not, as MindGeek claims, hold

20  that a defendant's knowledge must be as to a "particular victim." MG Mot. at 10.

21  [6] Numerous other cases cited by defendants are distinguishable on the same grounds.

22  *Red Roof Inns*, 21 F.4th at 726; *J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *11
    (N.D. Cal. Aug. 20, 2020); *B.M.*, 2020 WL 4368214; and *Doe #9 v. Wyndham*, 2021

23  WL 1186333.  In each case, the court held that the respective hotel's general
    knowledge that sex trafficking occurred in the industry and at their hotel was

24  insufficient to allege knowledge of the specific venture.

25  [7] *See, e.g.*, *B.J. v. G6 Hosp., LLC*, 2023 WL 3569979, at *1 (N.D. Cal. May 19,

26  2023); *J. B. v. G6*, 2020 WL 4901196, at *11; *E.S. v. Best W. Int'l, Inc.*, 510 F.
    Supp. 3d 420, 428 (N.D. Tex. 2021), and *J.C. v. Choice*, 2020 WL 6318707, at *6

27  all involve ventures with single or few plaintiffs and thus knowledge of the venture

28  was synonymous with knowledge of the plaintiff.

Ultimately, the *Salesforce* court cautioned that adopting the specificity requirement urged by defendants here would have the unintended and unconscionable result of allowing beneficiaries to more easily escape liability in the most egregious cases involving a large number of victims —"companies would simply bury their head in the sand with respect to individual claims." *See Salesforce*, 76 F.4th at 557.  Under those circumstances, the larger the sex trafficking venture, the less likely a victim would be able to prove requisite knowledge of their individual harm. *See id.*  This result is entirely inconsistent with the TVPRA's remedial nature and broad mandate and further supports rejection of defendants' extra-textual knowledge requirements. *See id.* (observing that "[n]othing in the statutory text requires such an odd result.").

Finally, the *Salesforce* court rejected defendants' argument that beneficiary liability requires a direct relationship between the beneficiary and plaintiff's street-level trafficker. *See Salesforce*, 76 F.4th at 561-562.  Consistent with the plain language of the TVPRA and the "majority of courts", the Seventh Circuit held that beneficiary liability was adequately pled where the complaint alleged Salesforce's participation in a commercial venture with Backpage to grow and operate the business and its knowledge that Backpage violated the TVPRA. *See id.*; *see also Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 2024 WL 4204906, *4-6 (E.D.N.C. Sept. 16, 2024) (sustaining beneficiary liability claim against franchisor where complaint alleged commercial venture between franchisor and franchisee and that franchisee violated section 1591(a)(2));  *T.E. v. Wyndham Hotels & Resorts, Inc*., 2024 WL 474400, at *3, 6 (S.D. Ohio Feb. 7, 2024) (rejecting defendant's argument that it could not be liable as a beneficiary in the absence of direct interaction with plaintiff's street level trafficker); *Doe #1 v. Red Roof Inns*, *Inc*., 21 F.4th at 714, 725 (11th Cir. 2021) (observing that beneficiary liability may be properly pled where "plaintiff had alleged that [defendants] participated in commercial ventures to operate hotels and those hotel ventures violated section 1591.").

As detailed below, analyzed under this legal framework, the SAC states a claim for beneficiary liability against MindGeek, Redwood, Colbeck, and Visa.

### A.    The MindGeek Defendants are Beneficiaries of a Trafficking Venture

#### 1.    The MindGeek Venture

The SAC alleges that between 2013 and 2023, MindGeek built and operated the largest online pornography conglomerate in the world. ¶¶ 2, 34, 64, 245, 491.[8] During that period, MindGeek was directly controlled by its majority owner, defendant Bernd Bergmair, and minority owners, defendants Feras Antoon and David Tassillo, who served as its CEO and COO, respectively. ¶¶ 2, 17, 18, 19, 149-58, 200-02, 213-14, 313-56, 374-93, 462; *see also infra* § VII. These defendants built the MindGeek empire by knowingly and intentionally adopting an unrestricted content model that solicited and monetized all pornographic content without restriction, including child pornography. ¶¶ 2, 56-58, 71, 106, 123, 148-52, 194, 200.  In doing so, they did not merely provide a platform for others to post child pornography. They embraced the practice and proactively assisted users to maximize the attention their illegal content received.

They did this through constant, real-time analysis and testing of all its content and traffic, including child porn and nonconsensual content, used that analysis to determine how to maximize the attention such content received, and then worked with users to do so. ¶¶ 3-5, 38, 40, 44-47, 113-35, 153.

#### (a)    MindGeek Partners With Its Users to Solicit, Optimize, And Monetize Illegal Content on Its Platform

In furtherance of this objective, MindGeek entered into online agreements with its users whereby the users agreed, among other things, that MindGeek could use the content they uploaded in exchange for services MindGeek would provide. ¶¶ 38-39, 43, 46. Those services include guidelines, policies, and interfaces that not

---

[8] Citations to ¶ are to Plaintiff's Second Amended Complaint.  Dkt. No. 387-1.

only encouraged users to post nonconsensual content, it directed them how to do so to maximize its reach via suggested descriptive titles, tags, categories, and playlists that MindGeek's search engine optimization analysis had determined drew the most attention to that particular type of content. ¶¶ 3-4, 40, 58, 74, 113-18, 449, 458, 468. Thus, for example, Pornhub provided its users with a "How to Succeed" tutorial that, among other things, suggested users tag their videos with categories such as "teen," "school," "babysitter" and "old/young." ¶¶ 40, 114.  It also provided users with VPNs, Tor site access, and direct-messaging to facilitate posting illegal content without detection or attribution. ¶¶ 38-39, 468, 592.

Moreover, MindGeek's human moderators reviewed every image prior to upload. ¶¶ 67-80, 471. Although MindGeek has publicly claimed it does so to moderate legality, the real function of MindGeek's human "moderators" was search engine optimization. Internally, they were called "content formatters," ¶¶ 74, 162, and their role was to add or edit the content, title, tags, categories, and descriptions to conform with MindGeek's algorithmic code words so that those algorithms could effectively categorize them, add them to playlists, and retrieve them in response to searches. ¶¶ 40, 74, 77-78, 115. They would also edit the video thumbnail, the scenes, and lengths, ¶¶ 115-18, and "scrubbed" words in the titles and tags that unequivocally indicated criminality. ¶ 75. While the red flags of criminality were removed, the video would be uploaded with optimized titles, tags, and descriptions that would still permit the internet and MindGeek search engines to suggest the video to users searching for that illegal content.  ¶¶ 75-77.

It was not until the user—with MindGeek's suggestions, instruction or intervention (¶¶ 40, 47, 77, 113-15), had added the descriptive content to the image that the product was added to MindGeek's website. ¶¶ 4, 135, 139. MindGeek then proactively drew attention to the content by combining it in playlists, suggested searches, and category libraries with other like described content offered to users with similar interests.  ¶¶ 4, 40, 58, 74, 113, 134, 449, 458, 468-69, 592.

CASE NO. 21-CV-04920-WLH-ADS

PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS

MindGeek also uploaded the purported user generated content to all other websites it controlled. ¶¶ 4, 43, 60, 97-98, 134, 188, 191, 194-95.

MindGeek offered these valuable services to its users because it too receives great value: traffic and content. MindGeek uses this traffic and content to (a) advertise and drive traffic to its tubesites and "premium" sites; (b) sell advertising for non-pornographic products and services; and (c) harvest data to identify user interests and optimize their website content to attract even more traffic and content.  ¶¶ 44, 119-21, 132-34, 153, 450, 458, 467-68, 522, 576, 588.

To further facilitate the propagation of content, including illegal content, MindGeek provided users with a download button that they knew and intended users would use to make new content and compilations, or replacements for disabled content. ¶¶ 38, 134, 452, 454, 468, 515, 526, 592. And it incentivized them to do so by providing various programs through which users could monetize such content (and share the revenue with MindGeek). ¶¶ 36, 38-39, 129, 166.

Consistent with its business model and objectives, MindGeek had no functioning process for victims to have nonconsensual content removed. ¶¶ 88-89. Instead, they actively worked to retain such content for SEO optimization.  ¶¶ 88, 96, 98.  Thus, victims who tried to get nonconsensual content removed were ignored and stonewalled to preserve the use of the content for as long as possible. ¶¶ 88-94, 100, 156, 451-53. Standard MindGeek practices to thwart takedowns included demanding information victims did not possess in many instances, like the URL, even though they had provided sufficient other information for MindGeek to locate it; or telling victims only the uploader could request a video be taken down, that the videos did not exist or could not be found when they did exist and could be found or had not even been searched for, and that the video had been taken down when it had not been. ¶¶ 88-94, 100, 156, 167, 201-02, 451-53.

When MindGeek was forced to remove illegal content, it would disable the video but keep the webpage with its title, description, tags, and comments so that

the video, though disabled, would still continue to increase SEO.  ¶¶ 90-91, 95, 96, 100, 202. When a user landed on the disabled webpage, MindGeek's algorithms solicited the user with similar videos to the one disabled. *See id.*

(b)    <u>MindGeek Re-Uploaded Illegal Content</u>

Even worse, MindGeek systematically reuploaded all content that it had been forced to disable back to the system and did so in a manner which circumvented MindGeek's purported systems for identifying previously disabled videos and made it appear that it had been reuploaded by independent users. ¶ 97. This is the reason why so many victims, including Plaintiff, reported that even when they successfully had videos disabled, the same videos would be reuploaded again and again.  ¶¶ 100, 160, 188, 201-02, 452-54.  One insider explained that caches of disabled content would be provided to employees on disks, and they would be instructed to reupload those videos from non-MindGeek computers using specific email addresses that would allow the uploads to bypass MindGeek's purported 'fingerprinting' of removed videos. ¶ 97. MindGeek has repeatedly stated publicly that it retains on its servers all videos ever uploaded onto its tubesites. ¶ 98. It does so for its reuploading practice and SEO generally. *See id.*

This Court has (twice) held that these allegations state a claim for beneficiary liability. *See* Dkt. 166 at 18 (the FAC "comfortably stated a claim under section 1591(a)(2) against MindGeek"); *Doe v. MindGeek*, 558 F. Supp. 3d at 837-838 (allegations that MindGeek defendants "enable child sex trafficking on their platforms" "failed to remove the child pornography depicting plaintiff;" "permit[] large amounts of human trafficking and commercial sexual exploitation material on its platform despite having the ability to monitor it"; "enter into agreements with traffickers" and "actively employ tactics to make it difficult for law enforcement to locate traffickers" state a claim for beneficiary liability).  The Northern District of Alabama reached the same conclusion. *See Doe #1 v. MG Freesites, Ltd.*, 676 F.Supp.3d 113, 1164 (N.D. Ala. 2022) (MindGeek

"participated in a venture by possessing, reviewing, disseminating, and refusing to remove child pornographic content, profiting from that content, and sharing those profits with [p]laintiffs' sex traffickers.").[9]

Despite these rulings, MindGeek argues that Plaintiff's beneficiary claim should be dismissed because the SAC fails to allege: (1) MindGeek's participation in a sex trafficking venture; and (2) its knowledge that Plaintiff was a victim of that venture. MG Mot. at 10-14. MindGeek is wrong on both counts.

### 2. MindGeek's Participation in the Venture

Citing *Reddit*, 51 F. 4th 1137, MindGeek argues that participation requires that "the defendant must have actually 'engaged in some aspect of sex trafficking.'" MG Mot. at 10 (emphasis in original). MindGeek misstates the law and Plaintiff's well-pled allegations.

*Reddit* did not depart from the long line of cases which hold that a civil claim for beneficiary liability does not require an overt act in furtherance of a sex trafficking venture. *See supra* § I. Its holding is limited to the scope of FOSTA's exception to CDA 230 immunity in civil child sex trafficking cases. *See Reddit*, 51 F. 4th at 1141. Based on its analysis of FOSTA's statutory text and structure, the Ninth Circuit concluded that FOSTA's immunity only applies where the defendant website "violate[d] the criminal statute." *See id*. at 1145. The *Reddit* court did not address the standards for civil beneficiary liability under section 1595, and the only circuit court to address this standard post-*Reddit* has declined to adopt section 1591's criminal requirements to claims for civil liability. *See Salesforce*, 76 F.4th

---

[9] MindGeek's hosting and monetization of CSAM depicting Plaintiff qualifies as a commercial sex act, which the TVPRA defines broadly, as "*any* sex act, on account of which anything of value is given to or received by *any* person." 18 U.S.C. § 1591(e)(3); *Doe v. MindGeek*, 558 F. Supp. 3d at 840 (MindGeek's receipt of a financial benefit from the uploading of CSAM on its tubesites satisfied the element of a commercial sex act); *see also MG Freesites*, 676 F.Supp.3d at 1166 (posting child pornography to Pornhub is a commercial sex act, even absent a "*quid pro quo* between the sex act and an exchange of something of value.").

at 564 ("[S]ection 1591's definition of 'participation in a venture' . . . is expressly limited to Section 1591. Congress could have transplanted it into Section 1595 when amending the statutes in 2018, but it declined to do so . . . ").[10]

Irrespective of whether the criminal or civil standard applies, MindGeek's attempt to analogize this case to *Reddit* (MG Mot. at 10-14), is misplaced.[11] As this Court aptly observed, the allegations in this case are "fundamentally different" than the allegations in *Reddit*. *See* Ex. 98 (7/19/2024 Tr. at 58:14-18 (distinguishing the user generated content in *Reddit* from MindGeek generated categories with CSAM code words). In contrast to the neutral platform Reddit provided third party subreddits, MindGeek did far more than turn a blind eye to the unlawful content posted on its platform. It proactively partnered with its users to generate substantive messaging to accompany each image and video to enhance its ability to generate traffic and attention through "How To" tutorials (¶¶ 40, 114); employed formatters to review and modify this presentation as they deem appropriate for the same purpose, including the actual titles, tags and categories, as well as the videos themselves (¶¶ 40, 74, 75, 77-78, 115-18); proactively drove traffic to it this optimized content by combining it with similarly described content and suggesting it to others who MindGeek identified as likely to be interested through proposed searches or playlists (¶¶ 4, 40, 58, 74, 113, 134, 449, 458, 468-

---

[10] For these same reasons, MindGeek's reliance on *Reddit* to argue that Plaintiff must demonstrate a *quid pro quo* between defendants' participation and the benefit received (MG Mot. at 11-12) is misplaced in this civil case.

[11] The other cases MindGeek cites are distinguishable for the same reasons. *L.W. through Doe v. Snap Inc.*, 675 F. Supp. 3d 1087, 1097 (S.D. Cal. 2023) (no allegations that Snap encouraged, developed, or contributed to the content); *Jackson v. Airbnb, Inc.*, 2022 WL 16753197 (C.D. Cal. Nov. 4, 2022) (claim seeking to hold Snap liable for sales of guns on its site did not involve the TVPRA or allege any involvement in the sales by Snap); *Doe v. Grindr Inc.*, 709 F. Supp. 3d 1047 (C.D. Cal. 2023) (plaintiff's TVPRA claim was "predicated on Grindr's failure to monitor and regulate user's profiles and content.").

CASE NO. 21-CV-04920-WLH-ADS

69, 592); promoted the proliferation of these illegal images through download buttons which enabled its users to repost removed content and generate new content from it (¶¶ 38, 134); transferred child porn and other illegal content to affiliate sites (¶¶ 4, 43, 60, 97-98, 134, 188, 191, 194-95); and itself re-uploaded content that it was forced to remove under different users and titles (¶¶ 97-98).

The SAC also alleges that MindGeek employed each of these practices to Plaintiff's child porn videos. ¶¶ 449, 458. Further, it alleges that MindGeek earned revenue from ads it placed alongside Plaintiff's images. ¶ 450. Finally, the SAC alleges that MindGeek stonewalled Plaintiff's weeks-long efforts to have her CSAM removed so that they could continue to generate ad revenue and other financial benefits (¶¶ 451-453); republished Plaintiff's videos to its other tubesites (¶¶ 452, 454, 458); reuploaded Plaintiff's videos that it had been forced to remove (*id*.); and continue to maintain copies of plaintiff's CSAM on its servers to this day (¶¶ 60, 65, 97-98, 458).

### 3. MindGeek's Knowledge of Sex Trafficking and Plaintiff's Victimization

The SAC also plainly pleads MindGeek's knowledge. As set forth *supra* § I, to plead beneficiary liability, Plaintiff need only allege MindGeek's knowledge of a particular venture, not a specific victim. The SAC easily meets this standard. It not only alleges MindGeek's actual knowledge of the ubiquitous presence of child porn on its tubesites, it alleges that the solicitation, optimization, and monetization of this illegal content was central to MindGeek's business model and exponential growth and its policies and practices were intentionally designed and implemented to achieve these objectives. *See supra* I.A.1.

MindGeek's knowledge may also be inferred from: (i) the sheer volume of child pornography and illegal content on its tubesites, despite its repeated public claim that a human moderator review every image prior to upload (¶¶ 67-80); (ii) thousands of titles, tags, and categories describing the content as child porn and

nonconsensual (¶¶ 40-41, 58, 74, 82, 86, 114, 124-27, 131); (iii) MindGeek's abject failure to implement the most basic protections against the upload and monetization of illegal content and their failure to use age-verification technology (¶¶ 69, 70-71, 88-100, 292); and (iv) MindGeek's established policy of ignoring red flags for illegal content until an image received more than fifteen such flags. ¶¶ 80, 88, 238. *See Doe v. MindGeek,* 558 F. Supp. 3d at 839; *see also Doe v. Mindgeek USA Inc.,* 574 F.Supp.3d 760, 774 (C.D. Cal. 2021) (finding knowledge element was satisfied where MindGeek publicly claimed that it "review[s] and approve[s] each and every video posted to their platforms . . . specifically evaluating whether the content contains illicit content, such as child pornography," "intentionally allow[s] some videos to be posted anyway," and refuses to implement age verification tools because of the financial harm it would cause).

Even assuming <u>arguendo</u> that Plaintiff will ultimately be required to prove MindGeek's knowledge of her specific trafficking, in this pre-discovery phase, where the SAC pleads a widespread practice of trafficking, it is reasonable to infer that those practices were applied to Plaintiff. *See Doe v. MindGeek*, 558 F. Supp. 3d at 842 n.6 (holding that that pre-discovery it is permissible to infer widespread practices were applied to plaintiff's video).

Moreover, MindGeek's actual and constructive knowledge of Plaintiff's trafficking is presumed from its human moderation of Plaintiff's videos prior to upload (¶¶ 449, 458), and the number of years that her CSAM images were commercialized, monetized, and advertised on MindGeek's tubesites (¶¶ 156, 451-54, 458, 460). *See* 18 U.S.C. § 1591(c) (defendants' knowledge that a victim is a minor is presumed where defendants had a reasonable opportunity to observe); *see also United States v. Rico*, 619 F. App'x 595 (9th Cir. 2015) (1591(c) imposes strict liability as to defendant's awareness of age); *United States v. Sparks*, 659 F. Supp. 3d 1056, 1060 (N.D. Cal. 2023) (defendant has a reasonable opportunity so long as he could "with reasonable effort" observe the victim, "even if he never

CASE NO. 21-CV-04920-WLH-ADS
PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS

takes advantage of that opportunity" and "even if, based on those observations, no reasonable person would be able to tell that the victim was a minor.").

MindGeek also knew or reasonably should have known that Plaintiff was a victim of sex trafficking from the title of her videos "13-Year-Old Brunette Shows Off for the Camera" and "Teen F*cks Guy In Car" and the dozens of comments identifying her as underage including "she looks like she's f*cking 12," "And she is 13?!," and "she dadass looks no older than 16." ¶¶ 448-49, 452, 458. It also had knowledge that it was monetizing and advertising on Plaintiff's CSAM images from Plaintiff's numerous takedown requests. ¶¶ 451-453. As further evidence of MindGeek's knowledge of Plaintiff's trafficking, the SAC alleges that in May 2020, defendant Antoon was sent the URL to Plaintiff's video and informed it contained CSAM. ██████████████████████████████████████████ ████████████████████████████████████████████ ¶ 156. Ultimately, MindGeek decided not to remove the CSAM video. Plaintiff's flagged video remained on MindGeek's sites for another six months until MindGeek removed 10 million unverified videos, including Plaintiff's. ¶¶ 156, 458, 460.

Taken together, at a minimum these allegations raise questions of fact concerning MindGeek's knowledge that cannot be resolved prior to discovery. *See Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 608 (9th Cir. 2019) (factual questions concerning actual or constructive knowledge are not appropriate for resolution on dispositive motions); *see also Barnett v. Cnty. of Los Angeles*, 2021 WL 826413, at *8 (C.D. Cal. Mar. 4, 2021) (same).[12]

_____

[12] MindGeek's recruitment, solicitation, and enticement of Plaintiff and thousands of other minors gives rise to a claim for direct liability under section 1591(a)(1). Congress mandated that the TVPRA and its definition of trafficking "criminalize[] a broad spectrum of conduct." *United States v. Jungers*, 702 F.3d 1066, 1069-70 (8th Cir. 2013); *see also U.S. v. Estrada-Tepal*, 57 F.Supp.4d 164, 169 (E.D.N.Y. 2014) ("Expansiveness was a legislative goal in enacting the statute."). Accordingly, courts

**B.     Colbeck and Redwood Are Beneficiaries of a Trafficking Venture.**

The SAC also alleges claims for beneficiary liability against Colbeck and Redwood arising from the enormous profits they each received for funding the acquisition, expansion, and operation of MindGeek's business.[13] ██████████ ████████████████████████████████████ ██████████████████████████████ ████████████████████████████████████ ████████████████████.

Redwood and Colbeck argue that they cannot be liable under the TVPRA because they did not have any direct interaction with Plaintiff, Plaintiff's traffickers, or the videos of Plaintiff, did not make payments to Plaintiff's trafficker, or financially benefit from the videos that the traffickers posted, and thus, could not have "formed a tacit agreement" or engaged in "a continuous business relationship" with those traffickers. Colbeck Mot. at 29-30; Redwood

---

have ascribed the delineated violations their plain meaning. *See id.* Liability attaches where, as here, defendant has knowledge, or recklessly disregards the fact, that the minor victim will be caused to engage in a commercial sex act. *Id*. at 169-170; *see also A.M. v. Omegle.Com LLC*, 2023 WL 1470269, at *3 (D. Or. Feb. 2, 2023) (website that "solicited" minors by marketing chat functions for individuals as young as 13 was liable for direct trafficking).

[13] Colbeck and Bergmair assert that the SAC suffers from impermissible group pleading. Colbeck Mot. 14; Bergmair Mot. at 11 n.11. But the SAC alleges the role of each defendant which satisfies the specificity requirements at the pleading stage. *See Heller v. NBCUniversal, Inc.*, 2016 WL 6573985, at * 3 (C.D. Cal. Mar. 30, 2016) (complaint plausibly alleged all twelve defendants were responsible for false publications); *SAG-AFTRA v. LABC Productions, LLC, et al.*, 2023 WL 11878288, at *3 (C.D. Cal. Oct. 20, 2023) ("Group pleading is not fatal if the complaint still gives defendants fair notice of the claims against them."). Moreover, where, as here, Bergmair is alleged to be an alter ego of the corporate MindGeek entities, *infra* § VII, there is no prohibition against group pleading, since the claim implies multiple defendants are the same. *United States ex rel. Ginger v. Ensign Grp.*, 2022 WL 4110166, at *3 (C.D. Cal. Mar. 10, 2022).

Mot. at 20, 25-26.  As set forth above, neither knowledge of Plaintiff's street-level traffickers or knowledge of Plaintiff's specific trafficking is required to state a claim for beneficiary liability. *See supra* § I. To the contrary, where, as here, a complaint pleads participation in a commercial venture, beneficiaries of that venture are liable under the TVPRA so long as they had knowledge (actual or constructive) that the venture violated the TVPRA. Nothing more is required.

Here, the SAC alleges that Redwood and Colbeck partnered with MindGeek to build the dominant pornography conglomerate in the world.  It also alleges that before doing so and during the decade each arranged and provided financing, Redwood and Colbeck were fully aware that MindGeek would be using the financing to monetize child pornography and other nonconsensual content.

       1.   <u>Colbeck and Redwood Participated in a Commercial Venture with MindGeek</u>

██████████████████████████████████████████ . ¶¶ 249-50. At the time, standard sources for affordable capital were not available to MindGeek because of the well-known illegality ubiquitous in the online porn industry, and at Manwin in particular. ¶¶ 54, 55, 249. ████████████████████████████████████████ █████████████████████████████████████ . ¶ 250.

The 2011 loan was fully secured by all of Manwin's assets. Despite this, the effective interest rate was in excess of 20%, reflecting the unavailability of any other capital due to the well-known illicit nature of the business. ¶ 251. The high interest rate and exorbitant other debt costs consumed all of the business' earnings for years. As a practical matter, the Colbeck syndicate owned Manwin and during the term of the financing had the ability to control virtually all aspects of the business and receive the vast majority of its earnings. ¶ 251. ████████████ ████████████████████████████████████████

PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS



1  ██████████████████████████. *See* Hille Decl. Ex. A at 12; *see also* ¶

2  272. ████████████████████████████████████

3  ███. Hille Decl. Ex. A at 19-20, 33-34. ████████████████

4  ███████████████████████████████████

5  ████████████████████████████████████

6  ███████████████████████████████████

7  ███████████████████████████████████. Hille

8  Decl. Ex. A ██████████████; *see also* ¶¶ 251, 259, 270-72, 491. ████

9  ██████████████████████████████████

10  █████████████████████████. *See* Hille Decl. Ex. A § ████████.

11  ████

12  █████████████████████████████████████

13  ████████████████████████████████

14  █████████████████████████████████████

15  ████████████████████████████████

16  Hille Decl. Ex. A § ████████████████████; *see also* ¶ 270-71. ███

17  ████████████████████████████████

18  ████████████████████████████████

19  █████████████████████████████

20  ████. Hille Decl. Ex. A § ████████████████; ¶¶ 270-71.

21  ███████████████████████████

22  ████████████████████. ¶¶ 274, 494.

23      Thylmann, together with Antoon and Tassillo, used the 2011 financing to

24  vastly expand the business and establish the Pornhub brand as mainstream. ¶ 252.

25  Two years after purchasing the company, Thylmann was arrested and extradited on

26  tax evasion charges and investigated for violating child pornography laws. ¶ 255.

27  In an effort to whitewash the business, ██████████████████████

28  ████████████████████████████. ¶ 256.



1    Having had ███████████████████████████████████
2    ███████████████████████████████████████████████
3    ██████████████. ¶ 260.  These MindGeek financiers were intimately
4    familiar with the unrestricted content model MindGeek had been using and would
5    continue to use from extensive due diligence and investment analysis the Colbeck
6    syndicate conducted before providing financing to Manwin in 2011 and then again
7    to MindGeek in 2013, and ████████████████████████. ¶¶ 260-63.
8    ████████████████████████████████████████████████
9    ████████████████████████████████████████████████
10   ████████████████████████████████████████████████
11   ████████████████████████████████████████. ¶ 264.
12       Again, their knowing and intentional willingness to finance this illicit
13   business that the rest of the investment community was not willing to invest in,
14   permitted Colbeck and Redwood to secure exorbitant effective interest rates as
15   high as 20% on secured loans ██████████████████. ¶ 251.
16   ████████████████████████████████████████████████
17   ████████████████████████████████████████████████
18   ████████████████████████████████████████████████
19   ████████████████████████████████████████████████
20   ███████████████████ (¶¶ 259, 270), ███████████████ (*supra* §
21   I.B.1), ███████████████████████████████████
22   ████████████████████████, (¶ 259, 270, 272; *see also* Hille Decl.
23   Ex. B ███████████). ████████████████████████████
24   ████████████████████████████. ¶ 272.
25   ███████████████████████████████████████████████
26   ████████████████████████████████████████████████
27   █████████████████████████████████████████
28   ███████████████████████████████. ¶¶ 274-76.



. ¶ 275.

. ¶ 276.

(*see* Pearl Decl. Ex. C §

. ¶¶ 271-72.

. ¶ 271.

. ¶¶ 280-82.



. ¶ 283.

. ¶ 284.

Taken together, these allegations adequately plead Redwood's and Colbeck's assistance, support, and facilitation of the acquisition and expansion of MindGeek's business for nearly a decade. *See Salesforce*, 76 F.4th 559 (rejecting argument that participation requires management or control, and holding it only requires "assisting, supporting, or facilitating a venture that violates 1591"). Redwood and Colbeck's participation in the MindGeek venture is also evidenced by their expansive control over the company's operations. *See T.E. v. Wyndham*, 2024 WL 474400, at *6 (allegations that defendants "maintained expansive control" over hotel operations meet section 1595's definition of participation in a venture); *J.C. v. Choice*, 2020 WL 6318707, at *6-8 (franchisors' participation adequately stated where the complaint alleged they monitored criminal activity, developed policies and procedures to identify and mitigate trafficking, and had corporate-wide reporting requirements regarding illegal activities). At a minimum, the SAC alleges a continuous business relationship which is sufficient to establish participation at the pleading stage. *See, e.g.*, *Acevedo*, 713 F.Supp.3d at 783.

Redwood and Colbeck either ignore these detailed allegations or dispute them. For example, they assert that Bergmair's testimony should be interpreted differently. Redwood Mot. at 39; Colbeck Mot. at 9.

1 [REDACTED]

2 [REDACTED]

3 Ex. 4 at 218:11-22 (emphasis added). Their related claim that they were merely

4 arms-length lenders with no control over the business, its policies, or practices

5 (Redwood Mot. at 16-18, 30-32; Colbeck Mot. at 11-13, 34-35), is likewise belied

6 by the financing agreements they annex to their motions [REDACTED]

7 [REDACTED]. *Supra* § I.B.1; ¶ 272. At best, each of these

8 arguments raise factual disputes concerning Redwood's and Colbeck's roles and

9 rights that cannot be resolved on this motion. *See, e.g.*, *Newcal Indus., Inc. v. Ikon*

10 *Office Sol.*, 513 F.3d 1038, 1051-52, 1057 (9th Cir. 2008) (factual disputes

11 concerning defendants' knowledge required discovery); *T.E. v. Wyndham*, 2024

12 WL 474400, at *6 (parties' factual disputes about defendants' operational role

13 could not be resolved on a motion to dismiss).

14 　　Likewise, the loan agreement's [REDACTED]

15 [REDACTED] (Redwood Mot. at 13; Colbeck Mot. at 7-8), does not shield

16 Redwood and Colbeck from liability here, [REDACTED]

17 [REDACTED]

18 [REDACTED]

19 [REDACTED] *See supra* § I.B.1. [REDACTED]

20 [REDACTED]

21 [REDACTED]. *See e.g.*, *T.E. v. Wyndham*, 2024 WL

22 474400, at *6 (finding plaintiff had adequately pled beneficiary liability as to

23 corporate owner of franchise where the corporate owner had constructive

24 knowledge of trafficking and maintained expansive control over hotel operation

25 standards).[14] [REDACTED]

26 

27 [14] It is clear from the dozens of prior disclosures to Redwood (¶¶ 261-66, 270-73)

28 [REDACTED]

1 ████████████████████████████████████████

2 ████████████████████.

3    Finally, citing *Hashimoto v. Clark*, 264 B.R. 585 (D. Ariz. 2001), *Kim v.*

4 *Sumitomo Bank of Cal.*, 17 Cal. App. 4th 974 (Cal. App. 2 Dist. 1993), *River*

5 *Colony Ests. v. Bayview Financial Trading Grp., Inc.*, 287 F.Supp.2d 1213 (S.D.

6 Cal. 2003) and *Niederreuther v. Schifter,* 1998 WL 409876 (N.D. Cal. July 14,

7 1998), Redwood and Colbeck argue that they cannot, as a matter of law, be held

8 liable for routine banking service. Redwood Mot. at 30; Colbeck Mot. at 27.  The

9 *Deutsche Bank* court squarely rejected this argument.  *See Deutsche Bank*, 671 F.

10 Supp. 3d at 405–06 ("usual [banking] services" gave rise to liability for

11 participation in a venture where the complaint alleged knowledge that the venture

12 violated TVPRA). None of the cases defendants cite analyze liability under the

13 TVPRA; each consider whether a fiduciary duty or special relationship existed and

14 are legally and factually inapposite to the allegations and claims in this action.[15]

15        2.    <u>The SAC Alleges Colbeck's and Redwood's Knowledge that the</u>
<u>Venture Violated the TVPRA</u>

16

17    The SAC also pleads Colbeck's and Redwood's knowledge that MindGeek's

18 business model depended on monetizing user generated child porn and illegal

19 _____

20 ████████████████████████████████████████

21 ████████████████████████████████████████

22 ████████████████████████████ ¶ 283.

23 [15] The additional cases cited by Colbeck are likewise irrelevant. *See Resolution Tr.*

24 *Corp. v. BVS Dev., Inc.*, 420 F.3d 1206, 1213-14 (9th Cir. 1994) (senior loan holder
had no duties to junior lienholders where supervision duties were disclaimed in the

25 loan agreement and precluded by California construction laws); *Krivo Indus. Supply*

26 *Co. v. Nat'l Distillers & Chemical Corp.*, 483 F.2d 1098 (5th Cir. 1973) (addressing
the "instrumentality" doctrine, but   recognizing that where a lender is actively

27 managing the debtor's affairs, liability may attach); *Z&Z Leasing, Inc v. Graying Reel,*
*Inc.*, 873 F. Supp. 51, 54-55 (E.D. Mich. 1995) (analyzing bank liability under a

28 specific environmental statute).

content both before they entered into the 2011 agreement and during the decade in which they continued to finance the business.

As alleged, prior to financing the loan, the Colbeck syndicate and each of its members conducted extensive due diligence and investment analysis of the tubesite businesses generally and the online pornography industry in particular, as well as MindGeek's specific business model and legal risks, its competitors, and its websites. ¶¶ 261-62. They also interviewed the Individual Defendants, MindGeek personnel, and industry and legal experts. ¶ 262. ███████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████ ¶ 263. ████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████. ¶ 261.

Colbeck and Redwood were also aware MindGeek was commercializing child pornography and other nonconsensual content from their direct involvement with the company for the decade they were respectively financing it and the ████████████████████████████████████. *Supra* I.B.1; ¶ 271.

Furthermore, Colbeck and Redwood were aware of MindGeek's systemic use of child porn from the extensive public reporting of illegal content on MindGeek's sites (¶¶ 159-194), the 2016 lawsuit filed by victims of MindGeek's partner channel, GirlsDoPorn ("GDP"), and subsequent conviction of GDP's founders on federal sex trafficking charges (¶ 175), their regular communications with the Individual Defendants (¶¶ 175-76, 273).

1    Redwood's and Colbeck's knowledge is further evidenced from their utter

2   lack of response to this public reporting exposing MindGeek's illegal activities.



¶¶ 278-84.

, numerous media reports detailing the prevalence of sex

20   trafficking on MindGeek's sites dating back to 2014, and the 2016 GDP lawsuit

21   and subsequent conviction of GDP executives on federal sex trafficking charges.

22    These allegations more than satisfy Plaintiff's obligation to establish

23   Redwood's and Colbeck's knowledge at the pleading stage. *See, e.g.*, *Salesforce*,

24   75 F.4th at 555-556 (knowledge established where there was nationwide news

25   coverage of sex trafficking on Backpage and where Salesforce's relationship with

26   Backpage required Salesforce to analyze content). At a minimum, these allegations

27   constitute constructive knowledge sufficient to plead a civil violation of the

28   TVPRA. *See* Redwood Mot. at 34; Colbeck Mot. at 19 (acknowledging

constructive knowledge is sufficient); *see also M.L. v. craigslist Inc.*, 2020 WL 5494903, at *5 (applying a negligence, constructive knowledge standard). This standard is easily met where, as here, plaintiff alleges facts that "should have" reasonably alerted defendants' to the existence of sex trafficking. *See Deutsche Bank*, 671 F.Supp.3d at 407 (JP Morgan's knowledge of Epstein's convictions for sex crimes and numerous account red flags were sufficient to infer actual and constructive knowledge).

### 3. Colbeck and Redwood Knowingly Benefitted from their Participation in the Venture

Finally, the hundreds of millions of dollars that Redwood and Colbeck earned over a decade of financing satisfy the benefit requirement. ¶¶ 494-95. As set forth *supra* § I, there is no requirement that there be a causal nexus between the venture's sex trafficking and the benefit received. In any event, the SAC pleads that during the relevant period, virtually all of the profits MindGeek generated were used to repay Redwood and Colbeck. ¶¶ 246, 251, 259. Given the magnitude of illegal content on MindGeek's tubesites and its business model and practices of monetizing that content (¶¶ 58, 70-80, 151-57, 175-76) it is reasonable to infer that some portion of those profits were generated from the monetization of child porn and other illegal materials. *See* Dkt. 166 at 27 (inferring Visa's network processed advertising transactions for Plaintiff's video where Plaintiff had alleged ads were placed on her videos and Visa processed ad payments for MindGeek's sites).

### C. The SAC Pleads Beneficiary Liability as to Visa

Visa does not address the merits of Plaintiff's § 1591(a)(2) claim. Its sole challenge to the SAC's beneficiary liability claim is that it is procedurally barred by Judge Carney's July 29, 2022 order denying Plaintiff leave to replead the FAC's beneficiary liability claim. Visa Mot. at 6-7, 10-11 (citing Dkt. 166 at 21). In so ruling, Judge Carney reasoned that the FAC's allegations more appropriately stated a claim for conspiracy to violate the TVPRA because the FAC did not allege

Visa's "direct interaction with Plaintiff, her direct traffickers, or her videos." Dkt. 166 at 21.  Intervening decisions mandate a different result here, rendering Plaintiff's amended claim procedurally proper and sufficiently stated.

As set forth above, this past year, addressing similar allegations, both the *Deutsche Bank* and *Salesforce* courts held that "knowledge of the specific victim, let alone knowledge of her identity, is not required." *Salesforce*, 76 F.4th at 558; *Deutsche Bank,* 671 F. Supp. 3d at 407. Moreover, the *Salesforce* court considered and rejected the need to prove direct contact between the beneficiary defendant and plaintiff's direct trafficker.  *See Salesforce*, 76 F.4th at 561-562; *see also Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 2024 WL 4204906, * 4-6; *T.E. v. Wyndham*, 2024 WL 474400, at *3, 6.

Under these circumstances, it is plainly within this Court's discretion to revisit Judge Carney's order. As Colbeck argued in challenging Judge Carney's prior ruling on conspiracy liability, "[i]nterlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case." *La Barbera v. Ole Mexican Foods Inc.*, 2023 WL 4162348, at *6 (C.D. Cal. May 18, 2023) (law of the case "does not preclude a court from reassessing its own legal rulings in the same case"). As Visa acknowledged (Visa Mot. at 11), "[c]ourts retain discretion to depart from the law of the case where, among other things, 'an intervening change in the law has occurred.'" *Rabin v. PricewaterhouseCoopers LLP*, 2019 WL 9078785, at *4 (N.D. Cal. Apr. 5, 2019) (citations omitted).[16]

---

[16] While these out of circuit decisions are not binding, the Seventh Circuit reached its holding based on a survey of cases, including those within this Circuit, and concluded that the "majority of courts" applied the same standards. *See Salesforce,* 76 F.4th at 558 n.13. Moreover, these sister court decisions interpreting the TVPRA in the context of factually analogous claims are instructive in this emerging area of law. *See Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 2024 WL 4204906, at *4 (significant

Moreover, pursuant to FRCP 54(b), this Court may revise any prior order adjudicating fewer than all claims in this case. *See* FRCP 54(b). Consistent with this well-settled rule, courts in the Ninth Circuit have amended orders dismissing claims with prejudice to grant leave to amend. *See SurvJustice Inc. v. DeVos*, 2019 WL 1434144, at *7 (N.D. Cal. Mar. 29, 2019) (amending dismissal with prejudice to permit amendment); *Schramm v. Montage Health*, 2019 WL 377772, at *8 (N.D. Cal. Jan. 30, 2019) (granting leave to amend dismissed claim).[17]

Accordingly, this Court should exercise its discretion to reconsider Judge Carney's ruling.  As established by the intervening decisions, to plead beneficiary liability as to Visa, the SAC need only allege Visa's: (1) participation in a venture with MindGeek; (2) receipt of a benefit; and (3) knowledge that MindGeek violated the TVPRA. Neither knowledge of Plaintiff nor her street-level trafficker is required.  The SAC pleads each of these elements.

### 1.    Visa Participated in a Venture with MindGeek

As Judge Carney previously recognized, Visa "knowingly provided [MindGeek] the tool used to complete a crime." Dkt. 166 at 25.  That tool was "the means to financially benefit from its participation in sex trafficking ventures: the Visa payment network."  *Id.* at 24. Like the FAC, the SAC alleges that for more

---

persuasive value is afforded to sister circuit decisions where the decision comports with statutory text it is interpreting).

[17] None of the cases Visa cites mandate a different result. Visa Mot. at 10-11.  Both *Ketab Corp. v. Mesriani L. Grp.*, 2015 WL 2085523, at *3 (C.D. Cal. May 5, 2015) and *Silvas v. Cnty. of Riverside*, 2020 WL 7086144, at *2 (C.D. Cal. Oct. 9, 2020), involve unopposed motions and do not address whether a change in case law warrants leave to re-plead. Finally, *Lamumba Corp. v. City of Oakland*, 2006 WL 3086726, at *4 (N.D. Cal. Oct. 30, 2006), granted defendants' motion to strike claims that were barred by the doctrines of claim and issue preclusion, neither of which have any application here. Nevertheless, the *Lamumba* court noted, "[e]xceeding the scope of a court's leave to amend is not necessarily sufficient grounds for striking a pleading or portions thereof." *Id.* at 4.

CASE NO. 21-CV-04920-WLH-ADS
PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS

than a decade "and to this day," Visa "explicitly agreed with MindGeek to process the financial transactions from which the defendants profited from a sex trafficking venture." *Id.* at 23-24.

Demonstrating the centrality of Visa's payment processing role, ███████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ ████████. Hille Decl. Ex. A § ███████████; Hille Decl. Ex. B. § ████ ██████; Pearl Decl. Ex. C § ██████████. Visa's decade-long "continuous business" relationship processing subscription and ad payments on MindGeek's tubesites creates an inference of participation. *See supra* § I.

While Visa's participation in a commercial venture with MindGeek is sufficient to state a claim, the SAC also alleges Visa's knowing and intentional participation in a venture to benefit from sex trafficking. For more than a decade, Visa and its merchant banks were aware that MindGeek was commercializing and monetizing child pornography and other nonconsensual content. *See infra* I.C.2. Instead of insisting that MindGeek immediately remove all illegal content and put in place systems to reasonably ensure it was complying with all applicable laws, Visa elected instead to facilitate and profit from the MindGeek trafficking venture. ¶¶ 286-93, 297. As further evidence of its intent to profit, when Visa was explicitly informed about illegal content on MindGeek's tubesites, it directed MindGeek to scrub all explicit references to illegality, but did not take any steps to ensure that the illegal content be removed. ¶ 295. In the case of plaintiff, Visa processed payments for advertisements that were placed alongside her child porn videos. ¶¶ 450, 458; Dkt. 166 at 27 ("Court can infer a strong possibility that Visa's network was involved in at least some advertisement transactions relating to Plaintiff's videos" which is all that is required at the pleading stage).

Visa's participation is further evidenced by its deliberate decision to continue processing payments even after: (i) PayPal publicly terminated its business relationship with MindGeek because it could no longer ignore the overwhelming evidence of MindGeek's trafficking venture (¶¶ 109, 193, 296); (ii) GDP was indicted and subsequently convicted on federal sex trafficking charges (¶¶ 175-76, 297), and (iii) Visa was presented with irrefutable evidence from the media, advocates, and public interest groups exposing MindGeek's illegal activities and Visa's participation therein. ¶¶ 298, 300-01, 304-06.

Moreover, despite publicly claiming to suspend merchant services to MindGeek following the New York Times article (¶ 307), within weeks of purportedly investigating MindGeek's practices, Visa reembraced MindGeek and began processing payments again for MindGeek's paysites. ¶¶ 309-12. It did so despite knowing that these revenue streams are likewise permeated with trafficking like GDP, and that MindGeek used its platforms to attract, advertise, and funnel visitor revenues to these paid sites. ¶¶ 297, 311-12.  Visa continues to process payments for advertising and subscriptions to this day. ¶ 312.

Visa argues it cannot be liable for its role in this commercial and sex trafficking venture because all payment process services were provided by merchant banks. Visa Mot. at 2, 4-5. Judge Carney previously rejected this defense, reasoning that Visa, not its acquirers, has "ultimate control over whether or not MindGeek is recognized as a merchant." Dkt. 166 at 10 n.3. This is corroborated by Visa's December 2020 decision to temporary suspend all merchant services to MindGeek in the wake of the New York Times expose. ¶¶ 308-09; *see also* Dkt. 166 at 12.  At a minimum, as Judge Carney properly concluded, the structure of Visa's network and its corresponding relationship with MindGeek cannot be resolved before discovery. *See* Dkt. 166 at 10 n.3.

Finally, Visa's participation in the venture is further evidenced by its operational control over MindGeek. Again, Judge Carney rejected Visa's argument

that it did not wield control over MindGeek.  As Judge Carney aptly observed, "Visa quite literally did force MindGeek to operate differently." Dkt. 166 at 12. Among other things, Visa's December 2020 decision to temporarily suspend merchant services led MindGeek to remove 10 million of its videos, a staggering 80% of its content.  *See id.*; *see also* ¶¶ 285-86, 295, 312.  Ultimately, Judge Carney concluded that Plaintiff's allegations "support the inference that Visa draws the informal boundaries of what types of content are fair game for profit, or fair game for its payment network."  Dkt. 166 at 13.

2. <u>Visa Had Knowledge that the Venture Violated Section 1591</u>

Judge Carney also properly found that "Plaintiff adequately allege[d] that Visa knew that MindGeek's websites were teeming with monetized child porn from its own due diligence and discussions and negotiations with MindGeek, Paypal's decision to cease doing business with MindGeek, communications from advocates with which Visa interacted, and from the New York Times article." *Id.* at 23.  The SAC similarly alleges Visa's actual and constructive knowledge.  *See, e.g.*, ¶¶ 288-94 (Visa's market intelligence, due diligence, and monitoring of MindGeek's platform); ¶¶ 159-94 (media coverage of MindGeek's illegal activities dating back to 2014); ¶¶ 175-76 (GDP lawsuit and subsequent indictment and convictions on federal sex trafficking charges); ¶¶ 298-99; 301-04 (detailing letters sent to Visa by advocates exposing the illegality of MindGeek's tubesites); ¶¶ 296, 310 (PayPal's public decision to terminate services to MindGeek due to its ubiquitous commercialization of illegal content). Indeed, in the wake of the New York Times article, Visa and MasterCard both purported to launch investigations into the allegations and announced days later they had confirmed the allegations and would take action. ¶¶ 308-11. The speed at which these "investigations" were concluded is definitive proof that the evidence of this illegal conduct was obvious to anyone, like Visa, remotely familiar with this business.

At a minimum, where, as here Visa knew that the commercialization of child pornography and nonconsensual content was not an isolated incident, its failure to implement appropriate policies to remedy and or prevent further trafficking constitutes willful blindness or negligence. *See M.A. v. Wyndham*, 425 F. Supp. 3d at 968 (constructive knowledge alleged where defendant failed to implement policies to combat known problems); *Deutsche Bank*, 671 F.Supp.3d at 405-406 (JP Morgan's failure to file suspicious activity reports and implement oversight, and allowing Epstein to use its accounts sufficient to establish knowledge); *Brown v. Corr. Corp. of Am.*, 603 F.Supp.2d 73, 81 (D.D.C. Mar. 26, 2009) (failure to adopt remediation measures constituted constructive knowledge in 1983 case).

    3.    Visa Knowingly Benefitted from Its Participation in the Venture

Finally, the SAC pleads that Visa knowingly collected millions of dollars in fees from its decade-long provision of payment processing services to MindGeek. ¶¶ 299, 481. These payments satisfy the TVPRA's benefit requirement. *See supra* § I; *see also A.M v. Omegle.com*, 2023 WL 1470269, at *5 (D. Or. Feb. 2, 2023) (defendant "benefited in that venture through receiving advertising revenue"); *Doe (S.C.) v. Sheraton, LLC*, 2024 WL 1329422, at *3 (D.N.M. Mar. 28, 2024) (room rental fees and royalties sufficient to establish knowing benefit).

In any event, while it is true that some of the transaction fees Visa earned were derived from consensual content, because of the staggering amount of CSAM and illegal content monetized on MindGeek's sites, Plaintiff is entitled to an inference that Visa did also earn transaction fees for illegal content. *See* Dkt. 166 at 27.  The SAC alleges that Visa knew this, sanctioned it, and continued to knowingly receive this benefit as of the date of the filing of the SAC. ¶¶ 289-312.

## II.    THE SAC PLEADS CLAIMS FOR CONSPIRACY LIABILITY IN VIOLATION OF THE TVPRA

Section 1594(c) of the TVPRA establishes criminal liability against those who "conspires with another to violate section 1591." 18 U.S.C. § 1594(c).  Since 2008,

section 1595 of the TVPRA provides a claim for civil liability to individuals who are "victim of a violation of <u>this chapter</u> . . . against the perpetrator (or whoever knowingly benefits, financially or be receiving anything of value from participation in a venture…" This "chapter" includes section 1594. "The essential elements of a conspiracy are (1) an agreement to accomplish an illegal objective, (2) the commission of an overt act in furtherance of the conspiracy, and (3) the requisite intent necessary to commit the underlying offense." *U.S. v. Matta-Ballesteros*, 71 F.3d 754, 765 (9th Cir. 1995). The agreement may be inferred where the defendant "entered into a joint enterprise with consciousness of its general nature and extent." Dkt. 166 at 23; *see also Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1020 (9th Cir. 1985) (agreement to conspire may be inferred from "unity of purpose or a common design and understanding, or the meeting of the minds in an unlawful arrangement."). The requisite intent may also be inferred from circumstantial evidence of knowledge and an act in furtherance of the conspiracy. *See United States v. Calaway*, 524 F.2d 609, 614 (9th Cir. 1975).

This Court has already found that "Plaintiff has adequately pled that Visa conspired with MindGeek to violate section 1591(a)(2)." Dkt. 166 at 22. The SAC alleges that this conspiracy extended to Colbeck and Redwood as well.

### 1. Defendants are Liable for Pre-2023 Conduct

Relying on the Ninth Circuit's recent ruling in *Ratha v. Rubicon Res., LLC*, 111 F.4th 946 (9th Cir. 2024) ("*Ratha II*"), Visa, Redwood, and Colbeck each argue that there is no private right of action for civil conspiracy under the TVPRA for pre-2023 conduct.  Visa Mot. at 12-17; Redwood Mot. at 20, 28-29; Colbeck Mot. at 20-21. But *Ratha* addressed attempt liability, not civil conspiracy. *See Ratha II*, 111 F.4th at 955-955.  Its holding that the Abolish Trafficking Reauthorization Act's (ATRA) 2023 "technical and clarifying update" as to attempt liability did not have a retroactive effect is based on a textual analysis of that claim that does not apply to conspiracy liability. Civil liability for conspiracy under the TVPRA has long-been

recognized prior to the 2023 amendment, including by this Court. Accordingly, *Ratha* has no application here.

### (a)    *Ratha* Does Not Apply to Conspiracy Liability

In *Ratha*, the Ninth Circuit rejected plaintiff's argument that ATRA's addition of civil attempt liability was a "clarification" to the existing scope of beneficiary liability, reasoning that reading attempt liability into the pre-2023 statutory text was irreconcilable with section 1595's "knowingly benefit" requirement. *See Ratha II*, 111 F.4th at 954-955. The *Ratha* court further noted that its holding was corroborated by the absence of any "ambiguity," "inconsistent judicial decisions," or a single district court case finding a cause of action for civil attempt liability prior to ATRA and thus the retroactive application of attempt liability would create a new source of civil liability for a new class of defendants. *See id.* at 963-967 (surveying cases). Neither reasoning applies to civil conspiracy liability.

First, the retroactive application of civil conspiracy liability is not inconsistent with the pre-amendment text of section 1595. To the contrary, a conspiracy to violate the TVPRA may result in a knowing benefit. More importantly, prior to ATRA, numerous circuit and district courts have concluded that section 1595's civil liability provision extends to conspiracy claims under section 1594. *See, e.g.*, *Roe v. Howard*, 917 F.3d 229, at 237, 243 (4th Cir. 2019) (affirming jury award under § 1595 for conspiracy to engage in commercial sex trafficking pursuant to §§ 1591 and 1594); *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) (reversing district court's dismissal of plaintiff's conspiracy claim under the TVPRA); *Tanedo v. E Baton Rouge Parish School Board*, 790 F. Supp. 2d 1134 (C.D. Cal. May 11, 2011) (holding that plaintiff alleged a conspiracy claim under section 1594(b)).[18]

---

[18] *See also Akhtar v. Vitamin Herbal Homeopathic Ctr. Inc.*, 2021 WL 7186030 (E.D.N.Y. Apr. 30, 2021) (denying motion for summary judgment as to TVPRA civil conspiracy claim); *Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445, 455 (E.D. Va.

Consistent with this long line of cases, this Court previously held that the FAC stated a claim for civil conspiracy against Visa. Dkt. 166 at 21.

(b)   <u>ALTA's History Confirms Retroactive Intent</u>

Where, as here, a clarifying amendment addresses prior inconsistent rulings, it is presumed retroactive absent other clear indicia of Congress's intent. *See Ratha II*, 111 F.4th at 960 ("[W]e give significant weight to indicia of judicial confusion regarding how a statutory provision should be interpreted because such confusion suggests that Congress's enactment was for the purpose of correcting the ambiguity . . ."); *see also ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 689 (9th Cir. 2000) ("We have long recognized that clarifying legislation is not subject to any presumption against retroactivity. . ..").

Here, Congress enacted the ATRA just nine months after the ruling in *Ratha I*, and only weeks after the Supreme Court denied certiorari.  P.L. 117-347, 136 Stat. 6199 (2023).  This "technical and clarifying update to civil remedy" provision resolved the judicial inconsistency created by the Ninth Circuit's refusal to extend civil liability remedies in section 1595 to section 1594's criminal provisions, *see Ratha I*, 35 F.4th 1159, despite the long line of cases that have previously recognized a civil conspiracy liability clam under the TVPRA.  *See supra.* Congress immediately clarified this inconsistency with a clarifying amendment that makes explicit that civil conspiracy liability was and always has been co-extensive with the criminal remedy. This intent is corroborated by an amicus brief filed by members of Congress last month which reiterated that "the passage of the ATRA [following *Ratha I*] was meant to eliminate the newly found ambiguity identified in *Ratha I* and

2015) ("[P]laintiff sufficiently states a conspiracy claim pursuant to 18 U.S.C. § 1594(b)."); *Doe v. Howard*, No. 2012 WL 3834929, at *1 (E.D. Va. Sept. 4, 2012) (holding defendants faced civil liability for conspiracy in violation of 1594); *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430 (E.D.N.Y. 2017) (holding the plaintiff stated a TVPRA conspiracy claim under §1594(b)).

to clarify the text of the TVPRA to represent the original comprehensive meaning of the statute." *Ratha v. Rubicon Res., LLC*, No. 23-55299 (9th Cir. Sept. 13, 2024) (ECF No. 57 at 11).[19]

2.    The SAC Alleges a Claim for Civil Conspiracy Against Visa

Judge Carney previously determined that the FAC stated a claim against Visa for conspiring with MindGeek to violate section 1591(a). Dkt. 166 at 22.  In so ruling, Judge Carney held that Visa's agreement and intent to conspire may be inferred from "the very fact that Visa continued to provide MindGeek the means to [profit from sex trafficking] and knew MindGeek was indeed doing so." Dkt. 166 at 23-25. [20]  This Court should reach the same conclusion here.

In moving to dismiss Plaintiff's civil conspiracy claim, Visa relies on the same arguments this Court previously considered and rejected. Dkt. 166 at 23-25. First, citing *Deutsche Bank*, 671 F. Supp. 3d at 412, Visa asserts that an agreement to process payments is different from an agreement to participate in a sex trafficking venture. Visa Mot. at 23.[21] Judge Carney previously rejected this same argument, holding that "the predicate criminal agreement or meeting of minds here, however, is not to participate in sex trafficking; it is an agreement to knowingly benefit financially from sex trafficking." Dkt. 166 at 24.

---

[19] Citing *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176–77 (1994); *Pinter v. Dahl*, 486 U.S. 622, 650 (1988); and *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733 (1975), Visa asserts that *Ratha I* is consistent with the Supreme Court's "refus[al] to read additional rights or remedies into statutes." Visa Mot. at 14.  None of those cases involve a clarifying amendment or prior inconsistent opinions, rather each reject attempts to retroactively write in a private right of action where none had previously been provided by statute.

[20] Visa does not dispute that its provision of services to MindGeek over the course of a decade constitutes an overt act in furtherance of the conspiracy. Visa Mot. at 18.

[21] *Deutsche Bank*, 671 F. Supp. 3d at 412, is distinguishable because Epstein's venture was a venture to traffic women and there were no allegations that the bank defendants agreed to further those activities.

Second, Visa argues that the SAC's allegations amount to a commercial relationship, not a conspiracy. Visa Mot. at 23-24. But the allegations here go well beyond discrete transactions between buyers and sellers at issue in the cases Visa cites. Visa's own authorities acknowledge that "prolonged cooperation" supports an inference of agreement to join a conspiracy. *United States v. Loveland*, 825 F.3d 555, 561 (9th Cir. 2016) ("prolonged cooperation" and "quantity and frequency of the sales, supported an inference of a shared stake."); *United States v. Ramirez*, 714 F.3d 1134, 1140 (9th Cir. 2013) ("[W]hat we are looking for is evidence of a prolonged and actively pursued course of sales coupled with the seller's knowledge of and a shared stake in the buyer's illegal venture.").[22]

Third, Visa contends that the SAC fails to plead the requisite knowledge to establish an agreement because it fails to allege Visa was aware of Plaintiff's trafficking or her direct trafficker. Visa Mot. at 19-20.  Again, Judge Carney found this argument unavailing, reasoning that Visa could be liable for conspiracy even if it did not know "who the eventual victims or primary traffickers would be or whether Visa interacted with or knew of Plaintiff, her videos, or her traffickers." Dkt. 166 at 23; *see also id*. at 22 (noting that one conspirator is liable for the acts of its co-conspirators even if the conspirator is unaware of the acts or the actors). This is consistent with the long line of cases which find that under section 1595 (which governs Plaintiff's civil conspiracy claim) neither knowledge of the specific victim or plaintiff's street-level trafficker are required. *See supra* § II.1. As Judge Carney recognized, the Court can reasonably infer that Visa's network was involved in some advertising transactions relating to Plaintiff's video. Dkt. 166 at 27.

---

[22] Visa's reliance on *United States v. Lennick*, 18 F.3d 814 (9th Cir. 1994) is also unavailing.  Visa Mot. at 22. There, the government failed to establish a conspiracy between a dealer and buyer to further distribute drugs where the complaint failed to allege that the buyer distributed the drugs or had any intent to do so. *Id*. at 819.

Finally, Visa challenges Judge Carney's finding that Plaintiff adequately alleged Visa's intent to conspire, asserting it cannot be liable for "knowingly provid[ing] the tool" where it was "indifferent" to the goals of the conspiracy.[23] Visa Mot. at 25. Again, Visa mischaracterizes the alleged conspiracy as incentivizing the production and posting of child porn by money-driven traffickers.  As Judge Carney explained, "Visa is being sued for knowingly providing the tool through which MindGeek monetized child porn, which is itself a crime." Dkt. No. 166 at n.13.[24]

### 3.    Colbeck and Redwood Conspired with MindGeek

The SAC likewise alleges Colbeck's and Redwood's agreement and intent to provide MindGeek the tools to monetize child porn. ███████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████. ¶¶ 245-84.  And they did so with full knowledge that the business included criminal activities.  *See id.*; *see also* ¶¶ 159-84, 189-92. As Judge Carney previously held, these allegations are sufficient to state a claim for conspiracy to violate the TVPRA. Dkt. 166 at 25.

### (a)    Agreement

"An agreement may be inferred from the defendant's acts pursuant to the scheme, or other circumstantial evidence, and a defendant's proximity to the scene

---

[23] Citing cases on fraudulent misrepresentation, Visa asserts Plaintiff must plead an individual officer of Visa had the requisite intent. Visa Mot. at 25, citing *United States v. Scan Health Plan*, 2017 WL 4564722, at *5 (C.D. Cal. Oct. 5, 2017) ("[C]laims based on false statements must plead the unlawful state of mind of the speaker."); *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424 (9th Cir. 1995). Visa cites no case applying this heightened standard to TVPRA cases. In any event, the SAC alleges the requisite intent of Visa's corporate officers. *See* ¶¶ 300-04.

[24] For these reasons, Visa's reliance on *Kemper v. Deutsche Bank AG*, 911 F.3d 383 (7th Cir. 2018) and *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856 (D.C. Cir. 2022) is misplaced. Visa Mot at 25-26. In both cases, the court found that the complaint failed to allege an agreement or shared intent where the banks were alleged to be motivated by evading sanctions, which differed from the intent of the terrorist to commit acts of terror the banks were alleged to have aided.

of illicit activity may support an inference when viewed in context with other evidence." *U.S. v. Matta-Ballesteros*, 71 F.3d at 765. As detailed above, Colbeck and Redwood were fully aware of the illegality of the MindGeek venture. *See supra* I.B.2. Despite this knowledge, they each provided the company with hundreds of millions of dollars to grow and operate the business, ███████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████████████████████████. ¶¶ 245-84. These allegations are sufficient, at this stage, to infer that Colbeck and Redwood agreed to assist MindGeek in monetizing child pornography. *See* Dkt 166 at 25 ("[T]he Court can comfortably infer" intent to help monetize child pornography where Visa "continued to provide MindGeek the means to do so and knew MindGeek was indeed doing so.") ████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████████████. ¶¶ 246, 259, 267-73, 279-84.

       Like Visa, Colbeck and Redwood seek to analogize the allegations in this case to those in *Deutsche Bank*, which the court held were insufficient to support JP Morgan's and Deutsche Bank's agreement to further Jeffrey Epstein's sex trafficking venture. Colbeck Mot. at 22-23; Redwood Mot. at 30-31, citing *Deutsche Bank*, 671 F. Supp. 3d at 412. But this analogy fails here for the same reasons it failed as to Visa. *See supra* § I.C. The SAC does not allege that Redwood and Colbeck conspired to commit sex trafficking; it alleges an agreement to knowingly benefit financially from sex trafficking. ¶¶ 245-84, 494-95. Moreover, *Deutsche Bank* is also distinguishable on the additional grounds that the complaint failed to allege that either bank had any oversight into or control over Epstein's venture, *id.*,

which is contrasted with the draconian covenants and control rights alleged in the SAC and corroborated by defendant Bergmair's testimony.  ¶¶ 251, 259, 269-72.[25]

### (b)    Commission of an Overt Act

The SAC alleges that Colbeck and Redwood arranged and provided hundreds of millions of dollars in financing to MindGeek, ████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████. ¶¶ 245-46, 251, 259-60, 264, 270-72, 276, 283.  Each of these acts constitute the requisite overt act in furtherance of a conspiracy. *See U.S. v. Matta-Ballesteros*, 71 F.3d at 772 ("the act need not itself be criminal, but must corroborate the criminal intent of the conspiracy").

Moreover, where, as here, an agreement to conspire has been inferred, conspirators are "liable for every substantive offense committed in furtherance of the conspiracy." *Id*. Thus, a defendant need not commit an overt act at all. *See Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946) (citations omitted).  Applying this black-letter law, at a minimum, Redwood and Colbeck are liable for each of the overt acts committed by MindGeek and Visa in furtherance of the conspiracy to profit from the commercialization and monetization of sex trafficking. Dkt. 166 at 25 (discussing "MindGeek's alleged criminal act" in monetizing child pornography, and "Visa's act of continuing to recognize MindGeek as a merchant").

### (c)    Intent to Commit the Underlying Offense

Finally, at the pleading stage, Redwood's and Colbeck's motive or intent to financially benefit from sex trafficking may be inferred from the same circumstantial evidence that established their agreement. *See Pinkerton*, 328 U.S. at 647 ("The

---

[25] Redwood's reliance on *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962 (N.D. Cal. 2013) is similarly misplaced.  Judge Carney previously distinguished *Craigslist* on several grounds, including that *Craigslist* does not address claims under the TVPRA. Dkt. 166 at 24-25.

1  criminal intent to do the act is established by the formation of the conspiracy.").

2  Here, the SAC alleges that Colbeck and Redwood joined the conspiracy with the

3  intent to benefit financially from participation in a venture they knew or reasonably

4  should have known was engaged in sex trafficking, as evidenced by their decision to

5  finance the venture with knowledge of its illegal activities, its decision to continue to

6  do so, even after it was publicly reported that child porn and other illegal content

7  was ubiquitous on MindGeek's tubesites, ██████████████████████████

8  ████████████████████████████████████████████████████

9  ████████████████████████. ¶¶ 245-84.

10     Redwood's argument that Plaintiff's TVPRA conspiracy claim fails because

11  lenders cannot face liability for obligations beyond those in the loan agreement

12  (Redwood Mot. at 30 n.10), fails for the same reasons addressed *supra* § I.B.1.

13  Indeed, lenders are not *per se* immune from liability. *See Aetna Casualty, Surety v.*

14  *Leahey Constr. Co.*, 219 F.3d 519, 536 (6th Cir. 2000) ("A bank, however, is not

15  immune from civil aiding and abetting claims").  This is particularly true here,

16  where the SAC alleges Redwood's and Colbeck's significant control over the

17  company, its operations, policies, and procedures.  *See supra* § I.B.1.

18     Finally, Colbeck argues that it could not have known of, agreed to, or intended

19  to, further MindGeek's violation of § 1591(a) because ████████████████

20  ████████████████████████. Colbeck Mot. at 22.  But,

21  the SAC alleges that Colbeck knew of MindGeek's trafficking prior to providing

22  financing and during the financing period from a 2009 criminal investigation (¶

23  247), media reporting beginning in 2014 (¶¶ 159-77) and its own pre-loan diligence

24  (¶¶ 261-67), MindGeek's required 2257 reporting (¶ 281), the most basic search on

25  MindGeek's site which would have revealed tens of thousands of instances of child

26  pornography and other non-consensual content (¶¶ 123-26, 232, 289-91), and its

27  direct interactions with MindGeek's executives Antoon and Tassillo (¶¶ 262, 273).

28

1      Colbeck's related attempt to distance itself from the conspiracy on the

2 grounds that its loans "concluded in 2018," Colbeck Mot. at 2, is equally unavailing.

3 It is well settled that Colbeck may still face liability for the harm caused while it was

4 a member of the conspiracy as well as the harm caused after the maturation of its

5 loan where, as here, Colbeck did not specifically repudiate the conspiracy. *See U.S.*

6 *v. Lothian*, 976 F.2d 1257, 1262 (9th Cir. 1992) ("[O]nce an overt act has taken

7 place . . . the defendant is liable despite his later withdrawal."); *see also United*

8 *States v. Cruz-Ramirez*, 2011 WL 5599630, at *5 (N.D. Cal. Nov. 17,

9 2011) (defendant's participation in a conspiracy is deemed to continue until the

10 defendant affirmatively repudiates the conspiracy."). Colbeck does not contend that

11 it withdrew from the conspiracy, Colbeck Mot. at 22-23, and the SAC pleads ▮▮▮▮

12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ¶¶ 274-75.

13      As Judge Carney properly held as to Visa, "[a]t this early stage of the

14 proceedings, before Plaintiff has had any discovery from which to derive

15 [defendants'] state of minds," the Court can comfortably infer [defendants] intended

16 to help MindGeek monetize child porn from the very fact that [defendants]

17 continued to provide MindGeek the means to do so and knew MindGeek was indeed

18 doing so." Dkt. 166 at 25.

## III.   THE SAC PLEADS CLAIMS FOR VIOLATIONS OF CHILD SEXUAL EXPLOITATION LAWS.

21      The Child Sexual Exploitation laws provide a private right of action to recover

22 damages for the knowing possession, distribution, and receipt of child pornography.

23 18 U.S.C. §§ 2252, 2252A, 2255. Plaintiff, who was a minor in all videos featured on

24 MindGeek's tubesites, including one with a title clearly identifying her as thirteen-

25 years old, alleges violations of these statutes. ¶¶ 448-49, 515, 526.

26      MindGeek does not dispute that the SAC pleads its possession of Plaintiff's

27 child porn images. MG Mot. at 17-19.  But it alleges the SAC fails to plead

28 MindGeek's knowledge that Plaintiff was a minor in the videos. *See id.*  As

1  MindGeek concedes (*id*. at 17), knowledge may be satisfied through willful

2  blindness, which is inferred where a defendant takes deliberate actions to avoid

3  learning certain facts despite a subjective belief that there is a high probability those

4  facts exist. *See U.S. v. Salman*, 618 Fed. App'x. 886, 890 (9th Cir. 2015) (where a

5  reasonable person would make further inquiries, failure to do so is indicia of a

6  deliberate action).  The SAC easily meets these standards.

7       MindGeek has repeatedly claimed that its moderators reviewed and approved

8  every video prior to upload, including Plaintiff's. ¶¶ 67-79, 103, 212, 230, 471.

9  Thus, MindGeek had direct knowledge of Plaintiff's age from the title of her video

10  and her physical appearance, which numerous users commented, "she looks like

11  she's f*cking 12." ¶¶ 448, 452, 458; *U.S. v. Rearden*, 349 F.3d 608, 614 (9th Cir.

12  2003); *U.S. v. Welton*, 2009 WL 4507744, at *10 (C.D. Cal. Nov. 30, 2009) (trier of

13  fact may conclude beyond a reasonable doubt that visual depictions are of actual

14  children where obvious from pictures). MindGeek's knowledge is further evidenced

15  from the numerous emails Plaintiff sent informing it that the videos depicted her as a

16  child and were nonconsensual. ¶¶ 451-453. Nevertheless, MindGeek declined to

17  remove the videos for weeks. ¶¶ 451, 453, 461. When it did, it reuploaded them to

18  its other tubesites, ¶¶ 451-54, and kept a copy of this known CSAM in their libraries

19  and on their servers. ¶ 98. MindGeek, therefore, has illegally possessed Plaintiff's

20  CSAM on its servers for years and continues to do so to this day.[26]

21

22  ───────────────

[26] The Individual Defendants assert that Plaintiff has failed to allege their knowledge
23  or involvement with Plaintiff's videos prior to her takedown requests. Bergmair
     Mot. at 39; Antoon/Tassillo Mot. at 32. The SAC alleges that Antoon was sent a
24  URL to Plaintiff's video and informed it contained CSAM. ¶ 156. With respect to
     the remaining defendants, at this stage, their knowledge may be inferred from the
25  general allegations. *See United States v. Levin*, 13 F.4th 96, 100 (1st Cir. 2021)
     (knowledge of child pornography is often "shown through circumstantial evidence.")
26  Their argument to the contrary relies on a trademark infringement case where the
     court noted that both trademark and copyright infringement are "narrowly

27

28

The SAC also alleges that MindGeek took deliberate actions to avoid identifying and removing known CSAM, including Plaintiff's. For example, MindGeek made the deliberate decision to employ a fraction of the moderators that companies like Facebook and YouTube identified as necessary to appropriately moderate child pornography and other illegal content given the ubiquitousness of such content in an unrestricted online environment. ¶ 73. It also declined to adopt available age verification tools or other technology to confirm the age and consent of those appearing in videos posted to its tubesites. ¶¶ 66, 68-69, 73, 135, 234-36, 241, 291. Even worse, once posted, MindGeek's policy was not to review a video flagged for illegality unless it had been flagged 15 times. ¶ 238. Defendant Antoon was personally involved in setting this policy. *Id*.[27]

This Court has previously found these facts sufficient to establish knowledge under 2252 and 2252(a). *See Doe v. MindGeek*, 558 F. Supp. 3d at 843; s*ee also MG Freesites*, 676 F.Supp.3d at 1168 (human moderation and user comments identifying videos as child pornography "easily pled the knowledge requirement for violations of §§ 2252 and 2252A.").[28]

---

circumscribed," *see Y.Y.G.M. SA v. Redbubble, Inc.*, 75 4th 995, 1001 (9th Cir. 2023), and does not address the requisite knowledge standards under 2252.

[27] *United States v. Myers*, 355 F.3d 1040, at 1042 (7th Cir. 2004) cited by MindGeek (MG Mot. at 18-19) does not immunize MindGeek from liability where, as here, the SAC alleges that MindGeek did explicitly seek out CSAM and non-consensual content. ¶¶ 124-25, 139, 147. Moreover, as *Myers* explicitly states, liability still attaches to those that decide to retain CSAM, thereby knowingly possessing it.

[28] MindGeek claims that is Terms of Service ("ToS"), moderation practices and removal of content flagged for illegality belie a finding that it took deliberate steps to avoid confirming Plaintiff was a minor. MG Mot. at 18. But, the SAC alleges that MindGeek did not enforce its ToS (¶¶ 46-47), its moderation functions were not used to monitor illegality (¶¶ 67-79), and MindGeek stonewalled and delayed takedown requests. (¶¶ 88-100). At best, these practices raise factual questions about whether and what MindGeek knew about Plaintiff's age in the videos.

## IV.   PLAINTIFF'S STATE LAW CLAIMS ARE PROPERLY PLED

### A.   The SAC Pleads a Claim for Civil Conspiracy.

As discussed *supra* § II, the elements of common law civil conspiracy are the same as those of conspiracy to violate the TVPRA. Thus, for the same reasons addressed in connection with Plaintiff's 1594(a) claim, the SAC alleges that Redwood, Visa, and Colbeck conspired to commit wrongful acts in violation of various California state statutes, including distribution of private sexually explicit materials (Cal. Civ. Code. § 1708.85); violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 and 17500); and violation of the California TVPA (Cal. Civ. Code § 52.5).[29]

### B.   The SAC Pleads Violations of California's UCL and FAL.

As this Court previously observed with respect to Visa, "[u]nder the UCL's unlawful prong, violations of other laws are borrowed and made independently actionable under the UCL." Dkt. 166 at 29.  Each defendant's participation in the MindGeek venture in violation of the TVPRA serves as a predicate wrong under the UCL. *See supra* §§ I.A.2, I.B.1, I.C.1.  These violations of the TVPRA and common law state a violation of the UCL. *See Novoa v. The GEO Group, Inc.*, 2018 WL 3343494, at *14 (C.D. Cal. Jun. 21, 2018) (denying motion to dismiss UCL claim

---

[29] Colbeck claims that Plaintiff's civil conspiracy and common law claims are all time barred because its loan ended in 2018. Colbeck Mot. at 31. But, the statute of limitations for Plaintiff's claims against Colbeck relate back to the filing of Plaintiff's initial complaint in June 2021 which named "Colbeck Capital Does 1-10" as defendants. Dkt No. 1 at ¶ 57.  *See Barrio v. County of San Bernardino*, 2020 WL 4037169, at *3 (C.D. Cal. 2020) (where amended pleading is based on the same general facts as the original, the original stated valid causes of action, and jurisdictional discovery was necessary to identify the appropriate defendants, relation back is appropriate). Although Colbeck alleges that Plaintiff cannot extend the statute of limitations when it failed to name Colbeck in the initial filing despite knowledge of its role, it does not address how Plaintiff knew, or could have reasonably determined prior to jurisdictional discovery, which Colbeck funds were the lending entities or the origination agent. Colbeck Mot. at 32.

1  and holding that "unlawful practices" are any practices forbidden by law).[30]

2  **C.  The SAC Pleads a Violation of the California TVPA.**

3  MindGeek's intentional and ubiquitous featuring of child pornography creates

4  a reasonable inference that it intended to distribute child pornography when it

5  reviewed, transformed, and commercialized videos of Plaintiff. *See Doe v.*

6  *Mindgeek*, 558 F. Supp. 3d at 843. Moreover, as discussed *supra* section § I.A.1, the

7  uploading and re-uploading of Plaintiff's videos constitutes a commercial sex act.

8  **D.  The SAC Pleads a Violation of California Civil Code 1708.85.**

9  The SAC alleges, MindGeek widely distributed and advertised Plaintiff's

10  videos with the knowledge that she was a minor, and repeatedly re-uploaded her

11  videos for years despite Plaintiff's many takedown requests. ¶¶ 451-53. These

12  allegations state a claim for relief under section 1708.85 for distribution of sexual

13  images without consent. *See Doe v. Mindgeek*, 558 F. Supp. at 844. MindGeek

14  cannot escape liability on the grounds that the videos were originally taken or

15  provided to them by a third party where these third parties did not previously widely

16  publish them. *See Lee v. Penthouse Int'l, Ltd.*, 1997 WL 33384309, at * 6 (C.D. Cal.

17  Mar. 19, 1997) (prior publication only applies where the images were previously

18  published and circulated).

19

20

---

21  [30] The SAC also pleads a violation of the FAL as to the MindGeek Defendants, Visa,

22  Colbeck and Redwood arising from MindGeek's false claims that it employed
    rigorous human moderation processes, which it knew were ineffective or nonexistent

23  (¶¶ 101-04, 167, 200-02); Antoon's and Tassillo's misrepresentations of these
    processes in sworn testimony before the Canadian House of Commons (¶ 103),

24  MindGeek's misrepresentations it takes affirmative steps to remove illegal content
    and to prevent it from being reuploaded (¶¶ 68, 94, 100, 199-202, 212-14, 230-31),

25  and the hundreds of affirmative omissions which concealed that MindGeek's
    websites contained videos of child porn, and illicit content (¶¶ 101-02, 149, 238-44),

26  which are actionable under the FAL. *See Handy v. LogMeIn, Inc.*, 2015 WL

27  1729681, at *5-6 (E.D. Cal. Apr. 15, 2015) (stating a plaintiff may state a claim
    under the FAL for fraudulent omissions by a defendant).

28

### E.    The SAC Pleads Invasion of Privacy and Intrusion.

MindGeek's optimization, dissemination, and monetization of the CSAM videos depicting Plaintiff also create liability for public disclosure of private facts (count VII), intrusion into private affairs (count VIII), and placing Plaintiff in a false light (count IX). *See, e.g.*, *Michaels v. Internet Entertainment Group, Inc.*, 5 F. Supp. 2d 823, 842 (C.D. Cal. 1998) (holding privately made adult sex tapes "constitute[] a set of private facts whose disclosure would be objectionable to a reasonable person"). MindGeek's intrusion is even more objectionable given that the videos clearly depict the sexual abuse of a minor.

Again, MindGeek seeks to avoid liability on the grounds that the videos were uploaded by third parties. MG Mot. at 19-20; Antoon/Tassillo Mot. at 33-34. But it was not third-party conduct that rendered Plaintiff's videos publicly available—it was the intentional actions of the MindGeek Defendants to approve, upload, disseminate and republish the videos to its other tubesites and deploy MindGeek's algorithm to enhance traffic to Plaintiff's videos. ¶¶ 449-50, 458; *see also* ¶¶ 452, 454 (alleging MindGeek reuploaded Plaintiff's videos after takedown).

Nor can MindGeek avoid liability by asserting that Plaintiff's video was already public. Plaintiff's first video was publicized for the first time when it was uploaded to Pornhub. ¶ 457.[31] Furthermore, this Court has held that previous distribution of CSAM does not create blanket immunity. *Doe v. MindGeek*, 558 F. Supp. 3d at 844. This is especially true here, where the prior disclosure was on a limited basis. *Sanders v. Am. Broad. Companies, Inc.*, 20 Cal. 4th 907, 915 (Cal. 1999). Plaintiff need not have a "complete expectation of privacy" as to the videos for liability to attach. *Id.* at 917-18.

### F.    The SAC Pleads Both Common Law and Statutory

---

[31] As MindGeek concedes (MG Mot. at 19 n.7), the holding in *Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125 (2009), is distinguishable because in that case the alleged private facts had previously been widely available to the public. ¶ 457.

**Misappropriation.**

A common law cause of action for misappropriation requires the defendant's appropriation of the plaintiff's name or likeness to defendant's advantage, and resulting in injury. *Newcombe v. Adolf Coors Co.,* 157 F.3d 686, 692 (9th Cir. 1998). MindGeek misappropriated Plaintiff's likeness in two distinct ways by: (i) profiting from the unauthorized dissemination of Plaintiff's videos to attract users and drive traffic; and (ii) profiting from the unauthorized use by placing advertisements alongside the videos of Plaintiff.

Cal. Civ. Code § 3344 neither replaces nor codifies the common law claim but is cumulative. *Newcombe,* 157 F.3d at 691-92. The statutory cause of action requires a knowing use for the purposes of advertising, and a direct connection between the use and the commercial purpose. *Id.* As set forth herein, the SAC alleges that MindGeek intentionally used known-CSAM images to enable advertisers to build ad campaigns around keywords reflecting illegal activity, such as "13yearold teen." ¶ 121.[32] Plaintiff is entitled to recover profits from this unauthorized use. *See* Cal. Civ. Code § 3344(a); *Solano v. Playgirl, Inc.*, 292 F.3d 1078. 1090 (9th Cir. 2002).

**G.    The SAC Pleads Negligence.**

California law imposes a baseline duty to exercise reasonable care to prevent harm that can be reasonably anticipated. *Colvin v. Roblox Corp.*, --F.Supp.3d--, 2024 WL 1268420, at *4 (N.D. Cal. 2024); *Parsons v. Crown Disposal Co.*, 15 Cal.4th 456, 472 (Cal. 1997) ("each person has a duty to use ordinary care and 'is liable for injuries caused by his failure to exercise reasonable care"). MindGeek breached their

---

[32] *Yeager*'s analysis is not applicable here as the cited-to discussion relates to incidental use of likeness. *Yeager v. Cingular Wireless LLC*, 673 F.Supp.2d 1089, 1100. Plaintiff was depicted in multiple videos over several years and therefore cannot be said to have been "briefly depicted or referred to." *See Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 807 (N.D. Cal. 2011) ("[T]he appropriation of the identity of a relatively unknown person may result in economic injury or may itself create economic value in what was previously valueless.") (citation omitted).

duty of ordinary care by, among other things, modifying, optimizing, and monetizing Plaintiff's videos numerous times, with full knowledge that the videos depicted Plaintiff as a minor. ¶¶ 449-54, 457-58, 460-62. It was eminently foreseeable that an unrestricted content business model would lead to the optimization and monetization of illegal and exploitative pornography. *See Social Media Cases*, 2023 WL 6847378, at *23-24 (Cal. Super. Ct. Oct. 13, 2023) (foreseeability is an objective, not subjective standard).[33]

## V. CDA § 230 DOES NOT IMMUNIZE DEFENDANTS' CONDUCT

Congress enacted CDA 230 to immunize interactive computer services ("ICSs") from liability based on content posted by third parties <u>in certain circumstances</u>." *Anderson v. TikTok, Inc.*, 116 F.4th 180, 182-183 (3rd Cir. 2024) (emphasis added).  But CDA 230 is not an "all purpose get out-of-jail free card for businesses that publish user content on the internet." *MindGeek USA Inc.*, 574 F.Supp.3d at 772.[34] Where, as here, a defendant takes action to encourage unlawful content and employs features to make a material contribution to such content, CDA 230 has no application. *Id.*  It likewise does not bar claims arising from a website's violation of 18 U.S.C. 1591(a).

### A. MindGeek is a Content Creator

A defendant that is "responsible, 'in whole or in part, for the creation or development' of unlawful content on its platforms" is not entitled to CDA 230

---

[33] Antoon and Tassillo argue that all of Plaintiff's California law claims should be dismissed as to them because the SAC fails to plead their involvement in MindGeek's tortious conduct. Antoon/Tassillo Mot. at 33. But information concerning the Individual Defendants' knowledge and involvement as to Plaintiff's videos is uniquely within defendants' possession and cannot properly be resolved before discovery. *See Doe v. MindGeek*, 558 F. Supp. 3d at 843. This is particularly true here, where both defendants are alleged to be alter egos of MindGeek, *infra*, section VII.  In any event, the SAC pleads Antoon's knowledge. ¶ 156.

[34] For the same reasons, CDA 230 does not immunize the Individual Defendants. Visa, Colbeck, and Redwood are not ICSs. *See infra* § V.C.

protection.  *Doe v. MindGeek*, 558 F. Supp. 3d at 841; *Fair Housing Council v. Roommates.com*, 521 F.3d 1157, 1168 (9th Cir. 2008) (*en banc*) (website did not have Section 230 immunity when it required users to disclose information that violated federal laws). The party seeking CDA 230 immunity bears the burden of establishing entitlement. *See Gonzalez v. Google LLC*, 2 F.4th 871, 889 (9th Cir. 2021).  In assessing whether an ICS, such as MindGeek, is a content creator, the court considers whether the allegations "considered together," amount to an encouragement of unlawful content.  *Doe v. MindGeek,* 558 F. Supp. 3d at 771.

This Court previously held that MindGeek's conduct "goes far beyond the neutral tools the Ninth Circuit has protected within the ambit of Section 230 immunity." *Doe v. Mindgeek*, 558 F.Supp.3d at 841.  The Northern District of Alabama reached the same conclusion.  *See MG Freesites*, 676 F.Supp.3d at 1162 (holding plaintiffs had adequately alleged that MindGeek "encourage[s] and materially contribute[s] to the development, optimization, and advertising of CSAM on Pornhub.") The SAC amply pleads MindGeek's contributions to the creation and development of illegal content on its websites, including Plaintiff's videos. By way of example, the SAC alleges that MindGeek (1) directs and assists users to describe their videos through content titles and tags using categories like "teen" to drive traffic to CSAM materials and suggesting preexisting terms based on its SEO analysis (¶¶ 58, 113-14); (2) provides guidance to its global network of sex traffickers on how to upload videos of sex trafficking and evade criminal liability while complying with MindGeek's purposefully loose restrictions, including by maintaining public list of "banned words"—i.e., words to avoid in the title of videos (¶¶ 75, 114);  (3) curates, formats and modifies uploaded content to optimize search engine optimization and visualization and mask blatant descriptions of criminality, including editing scenes, video length, and content to appear as if it was user-made (¶¶ 40, 74, 75, 77, 115, 449); (4) creates thumbnails to attract users to particular videos and content (¶¶ 118, 514, 525); (5) features categories on their websites that

target users interested in child pornography and other sexual abuse, trafficking, and nonconsensual materials (¶¶ 114, 121); (6) directs viewers interested in child pornography and other illegal content to CSAM on its site through playlists, titles, tags, and buttons that direct viewers to various types of content and levels of intensity (¶¶ 40, 58, 113, 116, 124, 307, 469); (7) maintains the webpage and thumbnails for disabled videos so that the MindGeek Defendants can continue to generate traffic and revenue from that illegal content and direct users to similar content (¶¶ 90-96, 195, 202); (8) maintains a search and tagging system that directs users to find and view videos of child and adult sex abuse, sex trafficking, and other nonconsensual content; (9) provides its global network of sex traffickers VPN services to allow them to obscure their locations and identities (¶¶ 38, 468, 592). Through these acts, MindGeek is "responsible at least in part" for each videos which are "a collaborative effort" between Pornhub and the user uploading the video. *Roommates.com*, 521 F.3d at 1167; *see also TikTok,* 116 F.4th 180, 183-84 (TikTok algorithm that recommended dangerous video was deemed first-party speech).[35]

---

[35] In arguing that all Plaintiff's claims are barred by CDA 230, MindGeek relies on the same cases the *Doe* court found inapplicable to analogous facts. *Doe v. MindGeek*, 574 F.Supp.3d at 770-773. None of these cases involve allegations, like those here, that defendants contributed to the illegality of the published content. *See, e.g., Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268-70 (9th Cir. 2016) (addition of one star rating to existing negative reviews "does absolutely nothing to enhance the defamatory sting of the message beyond the words offered by the user."); *Gonzalez v. Google, Inc.*, 2 F.4th 871, 893 (9th Cir. 2021) (ICS's failure to promote ISIS content or design its website to encourage videos that further promoted ISIS precluded finding it was a content creator); *Twitter*, 555 F.Supp.3d at 922-923 (CDA 230 applied where Twitter did not take an active hand in editing or commercializing the illicit content); *Doe v. WebGroup Czech Republic, A.S.*, 2024 WL 3533426, at *8 (C.D. Cal. July 24, 2024) (CDA 230 applied where titles, tags, keywords, and search terms were all user-generated and defendant was not alleged to have used its own employees to add, remove, or revise these inputs).

### B.    FOSTA Bars MindGeek's Section 230 Defense

This Court has already concluded that Plaintiff has adequately pled a beneficiary claim under the TVPRA as to the MindGeek Defendants. Dkt. 166 at 19-20. Where a plaintiff had adequately pled violations of sex trafficking laws under sections 1591 and 1595, FOSTA suspends CDA 230 protections for such violations. *Doe v. Mindgeek*, 558 F.Supp.3d at 835-836.

As set forth *supra* § I.A.2, MindGeek's attempt to analogize this case to *Reddit* (MG Mot. at 11), is misplaced. *See Doe v. Reddit, Inc.*, 2021 WL 5860904, at *4-5 (C.D. Cal. Oct. 7, 2021) (finding allegations that defendants refused to enforce policies, made pseudonyms and private messaging available, relied on untrained moderators who failed to take content down, and "elevated" subreddits depicting CSAM were insufficient to establish a violation of section 1591(a) to invoke the FOSTA). In contrast to the neutral platform Reddit provided, the SAC alleges, and this Court has previously held, that MindGeek knowingly benefited from its knowing participation in a sex trafficking venture in violation of section 1591(a)(2). *Supra* §§ I.A.2, I.A.3.

Further distinguishing MindGeek's conduct from that of Reddit, is that the commercialization of illicit content, including child pornography, was central to MindGeek's business model.  ¶¶ 58, 70-80, 151-57, 175-76.  Thus, MindGeek not only enabled users to post illegal content, it actively facilitated, encouraged it, and provided users "how to" instructions on how to create titles, descriptions and categories that would most effectively draw attention to the content they wanted to upload, including child porn. ¶ 40. All this was done with the intent to drive more traffic to Pornhub, so that MindGeek could increase advertising revenue, and drive more subscribers to MindGeek's premium sites. ¶¶ 44, 119, 121. MindGeek's SEO algorithm became so sophisticated that it could use its data, including that harvested through the use of CSAM, to tell advertisers what content categories would most

likely result in engagement with their ads. ¶ 133. This thoroughly researched and intentional business model satisfies the knowledge requirement of Section 1591.

### C.    CDA Section 230 Does Not Protect Colbeck, Redwood, or Visa

Irrespective of whether Section 230 precludes liability as to MindGeek, it does not protect Colbeck, Redwood, or Visa because Plaintiff's claims do not treat these defendants as "the publisher or speaker" of third-party content.  47 U.S.C. § 230(c)(1); *see also Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-1102 (9th Cir. 2009) (in assessing whether the protections of Section 230 apply, the key question is "whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'"); *Salesforce,* 76 F.4th at 567 (CDA 230 did not immunize Salesforce for provision of software services to Backpage to expand its business); *Colvin v. Roblox Corp.*, - F.Supp.3d --, 2024 WL 1268420, at *5 (CDA 230 did not bar claims for facilitation of transactions between minors and online casinos and failure to warn); *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 684 (9th Cir. 2019) (no CDA 230 immunity for claims arising from booking unlicensed properties).[36]

## VI.    PLAINTIFF HAS ARTICLE III STANDING

### A.    FOSTA Confers Plaintiff with Standing to Assert Claims Against Colbeck and Redwood.

"Congress has the power to . . . articulate chains of causation that will give rise to a case or controversy where none existed before."  *Massachusetts v. E.P.A.*, 549 U.S. 497, 516 (2007); *Robins v. Spokeo, Inc.*, 867 F. 3d 1108, 1113 (9th Cir. 2017).  To do so, Congress must only "identify the injury it seeks to vindicate and

---

[36] CDA 230 likewise does not give the MindGeek a free pass to knowingly distribute CSAM in violation of 18 U.S.C. §§ 2252 and 2252A, as such liability is not contingent on treatment of MindGeek "as the publisher or speaker "of third party content 47 U.S.C. § 230(c)(1); *see also MG Freesites*, 676 F.Supp.3d at 1170 ("[r]eceipt and possession of child pornography, alone, are criminal acts, and are not shielded by [CDA] 230 immunity.")

1  relate the injury to the class of persons entitled to bring suit." *Massachusetts*, 549

2  U.S. at 516; *see Nat. Res. Def. Council v. U.S. E.P.A.*, 542 F.3d 1235, 1248 (9th Cir.

3  2008) (congressional regulations supported the inference that there was a causal

4  connection between the lack of those regulations and adverse environmental effects

5  sufficient to satisfy Article III's traceability requirements). In enacting FOSTA,

6  Congress conferred Article III standing for all claims against those who participate

7  in, or benefit from, a trafficking venture and cause harm to sex trafficking victims.

8  18 U.S.C. §§ 1591(a)(2), 1595. Colbeck and Redwood have benefitted from a

9  venture engaged in sex trafficking and may be held accountable.

10  **B.**   **Plaintiff's Injuries Are Fairly Traceable to Colbeck and Redwood**

11  Even absent FOSTA, Plaintiff has standing because her injuries are "fairly

12  traceable" to Colbeck and Redwood.[37] The requirement of traceability "is relatively

13  modest at [the pleading] stage of the litigation," *Bennett v. Spear*, 520 U.S. 154, 171

14  (1997) and plaintiffs need not demonstrate that the defendants' actions are the

15  proximate cause of plaintiff's injuries. *Lexmark Int'l, Inc. v. Static Control*

16  *Components, Inc.*, 572 U.S. 118, 134 (2014). Indeed, "Article III standing does not

17  require that the [d]efendant's actions be the last step in the chain of causation." *Ning*

18

19  [37] The Individual Defendants do not challenge standing. The MindGeek Entities

20  contest standing only as to the UCL claim, which is addressed *supra* § IV.B. Finally,

Visa perfunctorily argues that Plaintiff's claims against it stretch the limitations of

21  secondary liability. Visa Mot. at 28-29.  Judge Carney previously rejected this

22  argument. Dkt. No. 166 at 15-16.  Unlike the defendants in *Twitter, Inc. v. Taamneh*,

598 U.S. 471 (2023), relied on by Visa, Visa took affirmative steps to recognize

23  MindGeek as a merchant, ¶¶ 287-89, continued to do so despite numerous public

24  and direct disclosures, ¶¶ 298-307, and even resumed processing payment services

after its December 2020 investigation exposed the prevalence of CSAM on

25  MindGeek's sites. ¶¶ 308-12. *Perfect 10*, which Judge Carney already distinguished

26  in his prior order Dkt. 166 at 22, n.13, is also inapposite insofar as it addresses the

unique elements and requirements under copyright law and doesn't involve the

27  TVPRA statutory scheme that explicitly provides for liability for actors like Visa in

28  these specific circumstances.

*Xianhua v. Oath Holdings, Inc.*, 2021 WL 1700227, at *7 (N.D. Cal. Apr. 29, 2021) (citing *Bennett*, 520 U.S. at 168–69). The chain of causation may have "more than one link," provided the causal chain "is not hypothetical or tenuous." *National Audubon Society v. Davis,* 307 F.3d 835, 849 (9th Cir. 2002). Colbeck and Redwood's conduct need not be the sole cause of Plaintiff's injuries, nor the sole motivation for sex traffickers to traffic Plaintiff on MindGeek's websites; instead, it need only be "a substantial factor motivating" or have a determinative or coercive effect on the actions of another, such as MindGeek. *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014) (finding standing where plaintiff alleged government's actions led third partied to act in a way that injured him); *Bennett*, 520 U.S. at 169.

As set forth herein, the SAC alleges that Colbeck and Redwood facilitated and enabled Plaintiff's victimization and the proliferation of child porn and nonconsensual content on MindGeek's sites through the infusion of millions of dollars of capital that was otherwise unavailable to MindGeek through traditional financing sources. ¶ 251. The SAC also alleges that Colbeck and Redwood ███████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

. *Supra* § I.B.1. ███████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

. ¶ 272. Instead, Redwood and Colbeck continued to

finance the business even after public reports of sex trafficking and, in the case of ███████████████████. *Supra* § I.B.1. These acts had a determinative and coercive effect because it allowed MindGeek to continue to perpetuate their wrongdoing and provided means by which defendants could fund their activities.

In *Brill v. Chevron Corp.*, the court found the traceability element satisfied where Chevron's surcharge payments to purchase oil in Iraq provided enabled, or at least increased the ability, of Hussein to make reward payments to terrorists' families, which were used to incentivize further terrorist attacks. *Brill v. Chevron Corp.*, 2017 WL 76894, at *3 (N.D. Cal. Jan. 9, 2017). The fact that other lenders were party to the loan agreements (Redwood Mot. at 8-9; Colbeck Mot. at 9, 13) is irrelevant—it is sufficient that Colbeck and Redwood increased MindGeek's ability to operate its illegal venture. *See Brill*, 2017 WL 76894 at *3; ("[A] causal chain 'does not fail simply because it has several links'"); *Ctr. For Biological Diversity v. U.S. E.P.A.*, 90 F. Supp. 3d 1177, 1189 (W.D. Wash. 2015) (plaintiffs "need not show that [defendant] is the 'sole source' of its members' injuries, and 'need not eliminate any other contributing causes to establish its standing.'"); *Sywula v. Teleport Mobility, Inc.*, 652 F. Supp. 3d 1195, 1230 (S.D. Cal. 2023) (plaintiff "need not eliminate any other contributing causes to establish [his] standing").[38]

This Court previously ruled that Plaintiff's injuries were fairly traceable to the similar conduct of defendant Visa, where "Visa's conduct of recognizing MindGeek as a merchant" was "at least a substantial factor motivating [MindGeek's] actions."

---

[38] The cases Redwood and Colbeck rely on are easily distinguishable. *See Williams v. Sisolak*, 2022 WL 2819842, at *2, 4 (D. Nev. July 18, 2022) (plaintiffs failed to allege any determinative or coercive effect or any ongoing business relationship); *Kaing v. Pulte Homes, Inc.*, 2010 WL 625365, at *6 (N.D. Cal. Feb. 18, 2010) (foreclosures in plaintiff's neighborhood depended on micro and macro economic conditions unique to each independent homeowner that had no relationship with each other); *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1143 (9th Cir. 2013) (expert submissions attested that it was impossible to link the greenhouse gas emissions of certain sources and the localized impacts plaintiffs complained of).

Dkt. 166 at 13, n.7; *see also id*. at 10-12 ("Visa quite literally did force MindGeek to operate differently, and markedly so, at least for a time."). As defendant Bergmair testified, Redwood and Colbeck had the same power. ¶ 272. Thus, this Court should reach the same holding as to each of them.

### C.     Plaintiff Need Not Plead Proximate Cause

Finally, Plaintiff is not required to plead proximate cause with respect to her TVPRA and conspiracy claims. Defendants do not cite a single case that imposes a showing of proximate cause to prove liability under the TVPRA. *See Lexmark*, 572 U.S. 118 (Lanham Act); *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189 (2017) (Fair Housing Act); *Holmes v. Sec. Inv. Prot. Corp*., 503 U.S. 258, 276 (1992) (securities fraud); *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) (federal antitrust law); *City of Oakland v. Wells Fargo & Co*., 14 F.4th 1030 (9th Cir. 2021) (violations of the Fair Housing Act); *Kwikset Corp. v. Superior Ct.,* 51 Cal. 4th 310, 246 P.3d 877 (2011) (fraud); *Justo v. Indymac Bancorp*, 2010 WL 623715, at *1 (C.D. Cal. Feb. 19, 2010) (fraud). And unlike the statutes at issue in the cases cited by defendants, the TVPRA is a remedial statute that calls for liberal construction. *Louers v. Lacy*, 2012 WL 5426442, at *2 (D. Md. Nov. 6, 2012) ("[T]he court will not create an unspecified hurdle when interpreting a remedial statute.").[39] Where, as here, a statute imposes secondary liability, courts have expressly declined to require proof of proximate cause. *See Bonacasa v. Standard Chartered PLC*, 2023 WL 2390718, at *15 (S.D.N.Y. Mar. 7, 2023) (discussing proximate cause in regard to the ATA claims but not to the JASTA claims where the latter imposes secondary liability).

---

[39] The only case defendants cite involving the TVPRA does not concern proximate cause; it considers whether the corporate defendant knew, or should have known, based on reports, of sex trafficking at their franchise hotel. *See Doe v. Wyndham Hotels & Resorts*, 2024 WL 2104596, at *1 (C.D. Cal. Feb. 28, 2024).

1    Nor is proximate cause required for conspiracy claims. *Neilson v. Union Bank*

2  *of California, N.A.*, 290 F.Supp.2d 1101, 1135 (C.D. Cal. 2003) (civil conspiracy

3  claim does not require proof that conspirator did anything that caused or contributed

4  to the harm). Such requirement is irreconcilable with the fundamental precepts of

5  conspiracy law that conspirators are liable for the act of their co-conspirators.

6    But even if it was required, the SAC alleges the requisite link between

7  defendant's conduct and Plaintiff's harm. The proximate cause analysis considers

8  "whether the harm alleged has a sufficiently close connection to the conduct the

9  statute prohibits." *Lexmark*, 572 U.S. at 201. This Court has already determined that

10 Visa's support and facilitation of MindGeek's monetization of sex trafficking was

11 the proximate cause of Plaintiff's injuries.  Dkt. 166 at 10-11. This same reasoning

12 extends to Colbeck and Redwood, each of which are alleged to have funded,

13 supported, and advised MindGeek on its dissemination and monetization of illegal

14 content. *Supra* § I.B.1.  This is particularly true here, where the SAC alleges that

15 both Colbeck and Redwood also had considerable influence and control over

16 MindGeek's business and its efforts to commercialize child pornography. This is the

17 exact conduct that the TVPRA, §§ 2252, 2255, 2255A, and the California Civil

18 Code prohibits. *See Marceau v. Int'l Bhd. of Elec. Workers*, 2006 WL 1889600, at

19 *9 (D. Ariz. July 7, 2006) (defendants' exercise of degree of control over the Union

20 which adversely impacted plaintiff's compensation satisfied proximate cause).

21 **VII.  THE COURT HAS PERSONAL JURISDICTION OVER EACH**
22 **DEFENDANT**

23   **A.**   **The Alter Ego Relationship Between the MindGeek Defendants**
        **Confers Jurisdiction**

24    This Court has personal jurisdiction over MindGeek S.á.r.l. and the Individual

25 Defendants because they and the MindGeek Defendants who have conceded

26 jurisdiction comprised a "single enterprise" that was effectively the alter ego of each

27 other and the Individual Defendants. *Sihler v. Fulfillment Lab, Inc.*, 2020 WL

28

1    7226436, at \*7 (S.D. Cal. Dec. 8, 2020) (imputed alter ego contacts despite

2    defendant's conclusory denials in an affidavit, defendant did not deny the

3    fundamental contention of involvement in the alleged wrongdoing); *ADO Fin., AG*

4    *v. McDonnell Douglas Corp.,* 931 F.Supp.711, 715 (C.D. Cal. 1996) (alter ego theory

5    applied to exert jurisdiction over officers, directors, and managers).

6    **B.**    **The Individual Defendants Personally Dominated and Controlled the Business as a Single Enterprise with Unity of Interest and Operation**

7

8    1.    The MindGeek Corporate Structure Was a Paper Fiction







CASE NO. 21-CV-04920-WLH-ADS

PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS



2.    <u>The Individual Defendants Directly Controlled the Entire Enterprise</u>

PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS



PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS



PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS



PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS



PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS



3.    The Individual Defendants Directly Ran a "Single Enterprise"





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

27    40    Bergmair would also regularly direct MindGeek to pay his RT Holdings

28    dividends to a different entity than the actual Rt Holdings shareholdings, including his personal advisors. *See* Exs. 44-63, 84-88.



CASE NO. 21-CV-04920-WLH-ADS

PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS



C.    <u>**Defendants Legal and Factual Challenges are Inapposite and**</u>

### Ineffective

Judge Carney previously admonished MindGeek and the Individual Defendants for failing to submit non-conclusory affidavits and probative evidence actually rebutting Plaintiff's factual allegations in their prior motions.  He ordered three months of expedited discovery obviously and reasonably assuming the defendants would quickly and eagerly produce the detailed financial and other electronic financial information from their extensive electronic finance reporting systems to definitively corroborate this challenge to Plaintiff's allegations. However, Bergmair accurately describes what followed as a year of "scorched earth" discovery practice, except it was the defendants who tenaciously fought to limit their production as much as possible and avoid producing such definitive evidence.  As a result, defendants again seek dismissal based on conclusory barebone declarations for which they have not produced, in discovery or with these motions, any evidence meaningfully corroborating, let alone conclusively, supporting their factual disputes.  Thus, while Plaintiff's disputed allegations are supported by competent, probative evidence, defendants' challenges are not, or, at best, merely raise fact and credibility disputes on a very incomplete record that must be resolved in Plaintiffs favor at this procedural stage.

Moreover, defendants' myopic factual disputes overwhelmingly ignore the actual alter ego theory and facts alleged.  Plaintiff's theory never depended on the narrow issue of meeting minutes and financial statements and audits. Plaintiff's theory is based on the actual economic substance and *de facto* ownership and control of what was effectively a single enterprise run directly by its individual owners.  On these issues, Plaintiff's allegations are substantively uncontested and supported by ample evidence establishing a quintessential alter ego dynamic:  unity of interest, integration, and direct ownership domination and control irrespective of the corporate form. Defendants' theory appears to be that papered minutes, some financial reporting and

1 | auditing, and the mere existence of separate banks accounts is conclusive to alter ego

2 | consideration.

3 |     But this is not true, and defendants cite no case so holding.  Rather, defendants'

4 | cases hold only that otherwise distinct corporate entities with actual economic

5 | substance and different mind and management actually in place can lose their

6 | corporate separateness by sufficiently failing to observe formalities like maintaining

7 | minutes or separate bank accounts.  These cases do not hold that entities with no

8 | economic substance or any real mind or management distinct from ownership and

9 | which ownership directly dominates and controls irrespective of the corporate form

10 | can nevertheless hide behind the corporate shield if accountants and scriveners

11 | nevertheless create an alternative paper reality.

12 |     But the law is opposite.  It is well settled that "[u]nder the federal law

13 | governing the exercise of *in personam* jurisdiction, if a corporation is the alter ego of

14 | an individual defendant, or one corporation the alter ego of another, the Court may

15 | "pierce the corporate veil" jurisdictionally and attribute "contacts" accordingly."

16 | *ADO Fin., AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 715 (C.D. Cal. 1996)

17 | (citing *Certified Building Products, Inc. v. NLRB,* 528 F.2d 968, 969 (9th Cir.1976).

18 | The Ninth Circuit has instructed, "the corporate form may be ignored in cases in

19 | which the corporation is the agent or alter ego of the individual defendant . . . or

20 | where there is an identity of interests between the corporation and the individuals."

21 | *Davis v. Metro Prods., Inc.,* 885 F.2d 515, 520 (9th Cir. 1989).  In addition, where a

22 | group of corporations comprise a "single enterprise" that likewise satisfy the alter

23 | ego criteria, the entire enterprise is subject to jurisdiction.  *Kayne v. Ho*, 2012 WL

24 | 12878753, at *7-8 (C.D. Cal. Sept. 6, 2012); Wright and Miller §1069.4; *Kayne v.*

25 | *Ho*, 2012 WL 12878753, at *8 (C.D. Cal. Sept. 6, 2012) (*"Thus, the single*

26 | enterprise theory applies when the decisionmaker finds 'that though there are two or

27 | more personalities, there is but one enterprise.

28 |

Applying this principle in *Mossimo Holdings LLC v. Haralambus*, 2015 WL 476298 (C.D. Cal. Feb. 3, 2015) the court held: under the 'single enterprise' version of alter ego liability, it *is* the case that 'there is really only one corporation.'  The leading case on the subject, *Las Palmas Associates,* states that '[i]n effect what happens is that the court, for sufficient reason, has determined that though there are two or more personalities, *there is but one enterprise;* and that this enterprise has been so handled that *it should respond, as a whole, for the debts of certain component elements of it. Las Palmas Associates v. Las Palmas Ctr. Associates*, 235 Cal. App. 3d 1220, 1249-50 [1 Cal. Rptr. 2d 301].

The test is a flexible, fact intensive inquiry into whether there is "unity of interest such that separate corporate personalities no longer exist, or have been merged, so that one corporation is a mere adjunct." *Willig, et al. v. Exiqon, Inc.*, 2012 WL 10375, at *9 (C.D. Cal. Jan. 3, 2012). Moreover, the list of factors the trial court may consider include: the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other. No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied. *Facebook, Inc. v. OnlineNIC Inc.*, 2023 WL 9019050, at *3 (N.D. Cal. Nov. 15, 2023)**.**

In particular, facts indicating a single enterprise exist include, "(1) common employees; (2) common offices; (3) centralized accounting; (4) payment of wages by one corporation to the other's employees; (5) common business name; (6) services rendered by the employees of one corporation on behalf of the other; (7) undocumented transfers of funds between corporations; (8) unclear allocations of profits and losses between corporations; and (9) common ownership." *XPEL Technologies Corp. v. Maryland Performance Works Ltd.*, 2006 WL 1851703 (W.D. Tex. 2006) (finding a sufficient showing of single enterprise jurisdiction).  Also

probative is evidence the defendant "frequently referred to itself and its subsidiaries as single unitary enterprise," were "merely a holding company", and had "control of decision-making, *Acorn v. Household*, 211 F.Supp. 2d 1160 (N.D. Cal 2002).

Thus, where a "shareholder representative" directly dominated and controlled management and operation of a company, the 9th Circuit has held alter ego jurisdiction is appropriate. *ADO Fin., AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 715 (C.D. Cal. 1996); *see also See Metro-Goldwyn-Mayer, Inc. v. Grokster*, 243 F.Supp 2d 1073 (C.D. Cal. 2003) ("Merger Theory of Jurisdiction" justified jurisdiction where extensive overlap of corporate operation and perception."); *In re GGW Brands, LLC*, 504 B.R. 577 (Bankr. C.D. Cal. 2013) (entities operated as a single business enterprise, integrated for the pursuit of a common business purpose, a single individual exercised control and decision making, including hiring, compensation, and firing, negotiating with their vendors, and operating in an integrated fashion.).

Plaintiff has alleged a prima face alter ego case by alleging detailed facts indicating that the three individual owners dominated and directly controlled and operated the entire MindGeek business as a single integrated enterprise irrespective of the actual corporate form.

Defendants' motions and declarations offer no comprehensive evidentiary challenge to these facts showing domination and control by the individual owners over a single integrated enterprise.  Rather, they present only narrow challenges to select non-dispositive facts and do so with the same conclusory, uncorroborated, and contested quibbles Judge Carney previously held insufficient.

The Court should again find defendants showing insufficient because even after jurisdictional discovery, the Court must accept all allegations in the SAC as true unless they are "directly contradicted" by affidavit. *See Zosma Ventures*, 2014 WL 12579805, at *4; *DISH Network LLC v. Vicxon Corp.*, 923 F.Supp.2d 1259, 1264 (S.D. Cal. 2013), and resolve all factual disputes in Plaintiff's favor. *DISH*

*Network*, 923 F.Supp.2d at 1262. Moreover, as Judge Carney correctly held previously, conclusory, and uncorroborated defense affidavits are insufficient to trigger the Plaintiff's evidentiary burden. *United Aeronautical Corp., v. HB Corp.*, 2017 WL 3081682, at *3 (C.D. Cal. Feb. 3, 2017) ("ultimate facts or conclusions" in a jurisdictional declaration "should be disregarded"); *Femtometrix, Inc. v. Huang*, 2023 WL 4317357, at *6 (C.D. Cal. Apr. 20, 2023) (jurisdictional declaration "too conclusory to be cognizable.").

Here, defendants' motions and declarations are once again substantively deficient even if they were otherwise legally sufficient (which they are not):



PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS



PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS



These exceedingly narrow, uncorroborated, equivocal, and conclusory challenges are woefully short of what is required to impose any evidentiary burden on Plaintiff at this stage of the proceeding, particularly because it remains the defendants who possess whatever evidence there is to support their claims. At best, such challenges raise questions of fact that must be resolved in Plaintiff's favor at this stage of the proceeding unless an evidentiary hearing is held and which would be much more efficiently deferred until trial or, at least, summary judgment, after a more complete record is created, particularly because these issues are closely intertwined with the merits.

For this reason, ultimately defendants' real argument is that even if the Plaintiff's allegations of unity, integration, and direct control and dominance by ownership are true, they are insufficient because they created no injustice to Plaintiff. But this argument is wrong legally and factually.

First, defendants confuse the standard for alter ego liability on the substantive claims with its application for jurisdictional purposes. Unlike substantive liability, for jurisdictional purposes the injustice element is irrelevant. *See Activision Publ'g, Inc. v. EngineOwning UG*, 2023 WL 3272399, at *6 (C.D. Cal. Apr. 4, 2023) ("[t]he standard for personal jurisdiction under an alter ego theory is lower than the standard

for liability under an alter ego theory."); *see also Licea v. Curacao Drydock Co., Inc.,* 952 F.3d 207, 213 (5th Cir. 2015) (allegations of fraud are "[n]ot pertinent to *jurisdictional* veil piercing analysis"); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 903 (2d Cir. 1981) (for jurisdiction purposes "it is sufficient to inquire whether the corporation is real or shell entity" "even if the shell may not have been used to perpetrate a fraud"); *Ronaldo Designer Jewelry, Inc. v. Anne Ryan, LLC,* 74 F. Supp. 3d 783, 789 (S.D. Miss. 2015) ("The existence of either a 'shell corporation or fraud is sufficient by itself to justify jurisdiction.'"); *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 174 (Tex. 2007) ("veil-piercing for purposes of liability ('substantive veil-piercing') is distinct from . . . jurisdictional purposes ('jurisdictional veil-piercing')" and fraud "has no place in assessing contacts to determine jurisdiction").



## VIII. <u>PLAINTIFF'S CLAIMS ARE WITHIN THE TERRITORIAL REACH OF THE TVPRA</u>

Plaintiff's trafficking claims, which occurred in and resulted in harm in the U.S., are a permissible domestic application of the TVPRA.  *See RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 337 (2016) (courts look to the statutes' focus and whether conduct relevant to that focus occurred in the United States to determine whether the claim involves a domestic application). The focus and touchstone of the TPVRA is where the trafficking occurred and where the commercial sex act occurred. *Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 2012 WL 5378742, at *6 (C.D. Cal. Aug. 27, 2012) (finding claims were not based on extraterritorial application of TVPRA where plaintiffs were trafficked from the Philippines to perform labor in the United States).

Plaintiff, a U.S. citizen and resident, was trafficked and abused in the U.S., the commercial sex acts occurred in the U.S., the hosting and monetization of her CSAM occurred on servers MindGeek maintains in the U.S., and she suffered harm

in this country. ¶¶ 10, 448-54, 457-461. Moreover, the videos of Ms. Fleites were hosted on servers located in the United States. ¶¶ 12, 33, 60-61.

Finally, even assuming *arguendo*, that the TVPRA applies extraterritorially here, the TVPRA provides that it can be applied when the defendant is "present" in the U.S. 18 U.S.C. § 1596. Several courts of appeals have determined that the extra-territoriality provision extends to civil claims under § 1595. *See Roe v. Howard*, 917 F.3d 229, 241 (4th Cir. 2019); *Adhikari v. Kellogg Brown & Root, Inc*., 845 F.3d 184, 204 (5th Cir. 2017). Where Congress intends to limit "presence" to "physical presence" it does so explicitly. *See, e.g.*, TVPRA, Pub. L. 110-457, 122 Stat. 5044, § 201 (2008) (amending Immigration and Nationality Act to add "including *physical presence*[.]"). As detailed *supra* § VII, Plaintiff has shown MindGeek S.á.r.l's "presence" in the United States through its contacts and, in the alternative, through alter ego liability.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court denies Defendants' motions to dismiss.

DATED:  October 30, 2024          Respectfully submitted,

BROWN RUDNICK LLP


By:  */s/* Michael J. Bowe
         Michael J. Bowe (*pro hac vice*)
         Lauren Tabaksblat (*pro hac vice*)
         Attorneys for Plaintiff
         SERENA FLEITES

1

**CERTIFICATE OF COMPLIANCE**

2      The undersigned counsel of record for Plaintiff Serena Fleites certifies that

3   this brief contains eighty-five (85) or fewer pages, as required by this Court's

4   October 11, 2024, order, ECF No. 473.

5      DATED: October 30, 2024      By: /s/ Michael J. Bowe

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28