DAN MARMALEFSKY
(CA SBN 95477)
DMarmalefsky@mofo.com
Morrison & Foerster LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: 213-892-5200
Facsimile: 213-892-5454

RONALD G. WHITE
(admitted pro hac vice)
RWhite@wmhwlaw.com
Walden Macht Haran & Williams LLP
250 Vesey Street
New York, NY 10281
Telephone: 212-335-2387
Facsimile: 212-335-2040

Attorneys for Defendant Bernd Bergmair

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENA FLEITES,<br><br>    Plaintiff,<br><br>  vs.<br><br>MINDGEEK S.A.R.L., et al.,<br><br>    Defendants. | Case No.: 2:21-cv-4920-WLH-ADS<br><br>**DECLARATION OF RONALD G. WHITE IN SUPPORT OF PLAINTIFF'S APPLICATION FOR LEAVE TO FILE UNDER SEAL MATERIALS RELATED TO OMNIBUS OPPOSITION**<br><br>Date: January 31, 2025<br>Time: 1:30 p.m.<br>Courtroom: 9B<br>Judge: Hon. Wesley L. Hsu<br>Complaint Filed: June 17, 2021<br>Trial Date: None Set |

I, Ronald G. White, declare as follows:

1. I am an attorney licensed to practice law in the State of New York and a partner with the law firm Walden Macht Haran & Williams LLP. I have been granted permission by this court to appear *pro hac vice* as counsel for Defendant Bernd Bergmair in the above-captioned case. I am over the age of 18. I make this declaration in support of Plaintiff's Application for Leave to File Under Seal Materials Related to Omnibus Opposition (ECF No. 479, "Plaintiff's Application"). I have personal knowledge of the facts stated herein, and if called as a witness, I could and would competently testify thereto.

2. Bergmair seeks to seal the information that he previously designated as confidential which was subsequently redacted by Plaintiff in her publicly-filed Plaintiff's Omnibus Opposition to Defendants' Motion to Dismiss ("Plaintiff's Omnibus Opposition") (ECF No. 477) and in the publicly-filed exhibits accompanying the Declaration of Michael J. Bowe in Plaintiff's Opposition to Defendants' Motion to Dismiss ("Bowe Declaration") (ECF No. 476). Bergmair also seeks to seal information designated as confidential by other Defendants, but which similarly contains confidential information regarding Bergmair. The confidential information sought to be sealed relates to: (1) the amount of money Bergmair invested in MindGeek, the amount of money for which he sold his MindGeek shares, and other sensitive information concerning the financing of his investment; (2) the shareholding and economic interests and other rights he received (and exercised) in exchange for his investment; (3) the identity of the corporate entities through which he invested; (4) his receipt of dividends as a result of his investment; (5) MindGeek's commercial transactions with a non-party entity beneficially owned by Bergmair; (6) sensitive information regarding Bergmair's other investments; (7) confidential information regarding MindGeek's content moderation practices; (8) confidential information regarding MindGeek's employment information and records; and (9) confidential MindGeek trade secrets

and financial information. Specifically, Bergmair requests that the following excerpts be sealed:

| **MATERIAL REQUESTED FOR SEALING** | **REASON** |
|---|---|
| • Plaintiff's Omnibus Opposition at:<br>  ○ 2:19<br>  ○ 22:27-28<br>  ○ 25:26-26:2<br>  ○ 68:11-14<br>  ○ 83:13-84:12<br>• Ex.[1] 4 (Excerpts of the June 15, 2023 Deposition of Bernd Bergmair ("Bergmair Deposition")) at:<br>  ○ 218:6-219:25<br>• Ex. 12 (Tassillo_Fleites_00000914)<br>• Ex. 19 (Bergmair's Responses and Objections to Plaintiff's First Set of Interrogatories) at:<br>  ○ 8:13-18 | Amount of money Bergmair invested in MindGeek, amount of money for which he sold his MindGeek shares, and other sensitive information concerning financing of his investment |
| • Plaintiff's Omnibus Opposition at:<br>  ○ 63:9-65:6<br>  ○ 65:15-66:6<br>  ○ 66:9-24<br>  ○ 67:56<br>  ○ 67:11-13<br>  ○ 68:11-15<br>  ○ 68:19-69:7<br>  ○ 69:16-71:13<br>  ○ 72:17-74:12<br>  ○ 81:2-7<br>  ○ 81:18-22<br>  ○ 82:7-10<br>• Ex. 3 (Excerpts of the June 14, 2023 Deposition of Feras Antoon ("Antoon Deposition")) at:<br>  ○ 71:11-73:13<br>  ○ 78:22-79:25 | Bergmair's shareholding and economic interests and other rights he received in exchange for his investment |

---

[1] All references to "Ex." are to the exhibits filed with the Bowe Declaration, which were filed under seal with Plaintiff's Application.

| MATERIAL REQUESTED FOR SEALING | REASON |
|---|---|
| <ul><li>○ 161:9-18</li><li>○ 209:4-210:10</li><li>○ 234:6-235:18</li><li>○ 272:22-23</li><li>○ 274:2-20</li></ul><ul><li>Ex. 4 (Bergmair Deposition) at:<ul><li>○ 218:7</li><li>○ 277:23-298:14</li></ul></li><li>Ex. 5 (Excerpts of the June 16, 2023 Deposition of David Tassillo ("Tassillo Deposition")) at:<ul><li>○ 161:17-171:25</li></ul></li><li>Ex. 9 (Declaration of Joao P. Santos ("Santos Declaration")) at:<ul><li>○ 5:24-7:2</li></ul></li><li>Ex. 19 (Bergmair's Responses and Objections to Plaintiff's First Set of Interrogatories) at:<ul><li>○ 6:11-15</li></ul></li><li>Ex. 19 (Bergmair's Responses and Objections to Plaintiff's Second Set of Interrogatories) at:<ul><li>○ 10:1-5</li><li>○ 10:25-11:12</li><li>○ 12:20-13:27</li></ul></li></ul> | |
| <ul><li>Plaintiff's Omnibus Opposition at:<ul><li>○ 66:15-24</li><li>○ 68:27-69:2</li></ul></li><li>Ex. 3 (Antoon Deposition) at:<ul><li>○ 146:3-20</li><li>○ 275:3-23</li></ul></li><li>Ex. 4 (Bergmair Deposition) at:<ul><li>○ 168:7-169:2</li></ul></li><li>Ex. 6 (Bergmair_Fleites_00002186)</li><li>Ex. 19 (Bergmair's Responses and Objections to Plaintiff's First Set of Interrogatories) at:<ul><li>○ 4:22-27</li></ul></li><li>Ex. 19 (Bergmair's Responses and</li></ul> | The identity of corporate entities through which Bergmair invested |

| MATERIAL REQUESTED FOR SEALING | REASON |
|---|---|
| Objections to Plaintiff's Second Set of Interrogatories) at:<br>    o 10:25-12:18<br>    o 16:25-17:14<br>• Ex. 40 (Bergmair_Fleites_00002292)<br>• Ex. 42 (Bergmair_Fleites_00002294)<br>• Ex. 43 (Bergmair_Fleites_00002295)<br>• Ex. 44 (Bergmair_Fleites_00002296)<br>• Ex. 45 (Bergmair_Fleites_00002297)<br>• Ex. 46 (Bergmair_Fleites_00002298)<br>• Ex. 48 (Bergmair_Fleites_00002300)<br>• Ex. 49 (Bergmair_Fleites_00002301)<br>• Ex. 51 (Bergmair_Fleites_00002303)<br>• Ex. 52 (Bergmair_Fleites_00002304)<br>• Ex. 53 (Bergmair_Fleites_00002305)<br>• Ex. 54 (Bergmair_Fleites_00002306)<br>• Ex. 55 (Bergmair_Fleites_00002307)<br>• Ex. 56 (Bergmair_Fleites_00002308)<br>• Ex. 57 (Bergmair_Fleites_00002309)<br>• Ex. 58 (Bergmair_Fleites_00002311)<br>• Ex. 59 (Bergmair_Fleites_00002312)<br>• Ex. 60 (Bergmair_Fleites_00002313)<br>• Ex. 61 (Bergmair_Fleites_00002314)<br>• Ex. 62 (Bergmair_Fleites_00002315)<br>• Ex. 63 (Bergmair_Fleites_00002316)<br>• Ex. 83 (Bergmair_Fleites_00002328)<br>• Ex. 84 (Bergmair_Fleites_00002329)<br>• Ex. 85 (Bergmair_Fleites_00002330)<br>• Ex. 86 (Bergmair_Fleites_00002331)<br>• Ex. 87 (Bergmair_Fleites_00002332)<br>• Ex. 88 (Bergmair_Fleites_00002333)<br>• Ex. 93 (Bergmair_Fleites_00002456)<br>• Ex. 94 (Bergmair_Fleites_00002458)<br>• Ex. 95 (Bergmair_Fleites_00002459)<br>• Ex. 96 (Bergmair_Fleites_00002460)<br>• Ex. 107 (MindGeek_Fleites_00001814) | |

| MATERIAL REQUESTED FOR SEALING | REASON |
|---|---|
| <ul><li>Plaintiff's Omnibus Opposition at:<ul><li>72:27-15</li><li>74:9-12</li><li>81:26-82:2</li></ul></li><li>Ex. 3 (Antoon Deposition) at:<ul><li>49:2-4</li><li>70:22-71:15</li><li>78:22-79:25</li><li>209:4-210:10</li></ul></li><li>Ex. 4 (Bergmair Deposition) at:<ul><li>277:23-298:14</li></ul></li><li>Ex. 36 (Bergmair_Fleites_00001422) and attachment</li><li>Ex. 40 (Bergmair_Fleites_00002292)</li><li>Ex. 42 (Bergmair_Fleites_00002294)</li><li>Ex. 43 (Bergmair_Fleites_00002295)</li><li>Ex. 44 (Bergmair_Fleites_00002296)</li><li>Ex. 45 (Bergmair_Fleites_00002297)</li><li>Ex. 46 (Bergmair_Fleites_00002298)</li><li>Ex. 48 (Bergmair_Fleites_00002300)</li><li>Ex. 49 (Bergmair_Fleites_00002301)</li><li>Ex. 51 (Bergmair_Fleites_00002303)</li><li>Ex. 52 (Bergmair_Fleites_00002304)</li><li>Ex. 53 (Bergmair_Fleites_00002305)</li><li>Ex. 54 (Bergmair_Fleites_00002306)</li><li>Ex. 55 (Bergmair_Fleites_00002307)</li><li>Ex. 56 (Bergmair_Fleites_00002308)</li><li>Ex. 57 (Bergmair_Fleites_00002309)</li><li>Ex. 58 (Bergmair_Fleites_00002311)</li><li>Ex. 59 (Bergmair_Fleites_00002312)</li><li>Ex. 60 (Bergmair_Fleites_00002313)</li><li>Ex. 61 (Bergmair_Fleites_00002314)</li><li>Ex. 62 (Bergmair_Fleites_00002315)</li><li>Ex. 63 (Bergmair_Fleites_00002316)</li><li>Ex. 83 (Bergmair_Fleites_00002328)</li><li>Ex. 84 (Bergmair_Fleites_00002329)</li><li>Ex. 85 (Bergmair_Fleites_00002330)</li><li>Ex. 86 (Bergmair_Fleites_00002331)</li></ul> | Bergmair's receipt of dividends as a result of his investment |

| MATERIAL REQUESTED FOR SEALING | REASON |
|---|---|
| • Ex. 87 (Bergmair_Fleites_00002332)<br>• Ex. 88 (Bergmair_Fleites_00002333)<br>• Ex. 91 (Bergmair_Fleites_00002449)<br>• Ex. 93 (Bergmair_Fleites_00002456)<br>• Ex. 94 (Bergmair_Fleites_00002458)<br>• Ex. 95 (Bergmair_Fleites_00002459)<br>• Ex. 96 (Bergmair_Fleites_00002460) | |
| • Plaintiff's Omnibus Opposition at:<br>   o 75:6-25<br>• Ex. 19 (Bergmair's Responses and Objections to Plaintiff's Second Set of Interrogatories) at:<br>   o 9:12-10:5 | MindGeek's commercial transactions with a nonparty entity beneficially owned by Bergmair |
| • Ex. 4 (Bergmair Deposition) at:<br>   o 312:13-19 | Sensitive information regarding Bergmair's other investments |
| • Plaintiff's Omnibus Opposition at:<br>   o 82:7-10<br>• Ex. 20 (Bergmair_Fleites_00000001) and attachments<br>• Ex. 21 (Bergmair_Fleites_00000982)<br>• Ex. 37 (Bergmair_Fleites_00001504)<br>• Ex. 77 (Bergmair_Fleites_00002008) | Confidential information regarding MindGeek's content moderation practices |

| MATERIAL REQUESTED FOR SEALING | REASON |
|---|---|
| • Ex. 4 (Bergmair Deposition) at:<br>   ○ 312:21-356:25 | Confidential information regarding MindGeek's employment information and records |
| • Plaintiff's Omnibus Opposition at:<br>   ○ 66:25-67:10<br>• Ex. 19 (Bergmair's Second Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories) at:<br>   ○ 5:12-16<br>• Ex. 22 (Bergmair_Fleites_00000984)<br>• Ex. 23 (Bergmair_Fleites_00001068)<br>• Ex. 24 (Bergmair_Fleites_00001069)<br>• Ex. 25 (Bergmair_Fleites_00001088)<br>• Ex. 26 (Bergmair_Fleites_00001098)<br>• Ex. 27 (Bergmair_Fleites_00001133)<br>• Ex. 28 (Bergmair_Fleites_00001134)<br>• Ex. 29 (Bergmair_Fleites_00001220)<br>• Ex. 30 (Bergmair_Fleites_00001235)<br>• Ex. 31 (Bergmair_Fleites_00001263)<br>• Ex. 32 (Bergmair_Fleites_00001346)<br>• Ex. 33 (Bergmair_Fleites_00001357)<br>• Ex. 34 (Bergmair_Fleites_00001380)<br>• Ex. 35 (Bergmair_Fleites_00001419)<br>• Ex. 36 (Bergmair_Fleites_00001422) and attachment<br>• Ex. 38 (Bergmair_Fleites_00001508)<br>• Ex. 39 (Bergmair_Fleites_00001528)<br>• Ex. 97 (Bergmair_Fleites_00001429) | Confidential MindGeek trade secrets and financial information |

3. The federal common law right to access public records is "not absolute." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). In particular, "the common-law right of inspection has bowed before the power of a court to

insure that its records are not used … as sources of business information that might harm a litigant's competitive standing." *Id.*

4.  "[T]he Ninth Circuit has not stated the standard – good cause or compelling reasons – that applies to the sealing of a pleading. *L.A. Int'l Corp. v. Prestige Brands Holdings, Inc.*, 2018 WL 6985313, at *1 (C.D. Cal. Nov. 6, 2018) (recognizing split of authority among the district courts in the Ninth Circuit).

5.  The "good cause" standard comes from Rule 26(c)(1), which sets forth the requirements for protective orders during discovery. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016). Rule 26(c)(1) provides: "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

6.  "'[C]ompelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (quoting *Nixon*, 435 U.S. at 598).

7.  Bergmair's narrowly tailored sealing request satisfies both standards.

8.  Courts in this circuit have routinely held that confidential business and personal financial information—such as the amount of Bergmair's investment in MindGeek, the shareholding and economic interests he received in return, his receipt of dividends, the amount for which he sold his shares, and other details regarding his investment in a private company—satisfies the compelling reasons standard and warrants sealing. *See Reputation.com, Inc. v. Mullarkey*, 2022 WL 4775881, at *2 (N.D. Cal. Sept. 30, 2022) (Compelling reasons standard satisfied, in part, because the at-issue "documents contain confidential business and financial information relating to the terms of [a corporate] acquisition" which, "[i]f

1  publi[shed], the terms of the agreement could be used against Plaintiff in future
2  negotiations by potential acquirees or other entities competing against Plaintiff for
3  such opportunities"); *Monterey Bay Military Housing LLC v. Ambac Assurance*
4  *Corp.*, 2019 WL 11658748, at 2 (N.D. Cal. July 11, 2019) (finding "compelling
5  reasons" to seal "documents [that] relate to financial transactions that were intended
6  to be, and have been, kept in confidence," as well as "private financial and
7  operational information" regarding business); *Allianz Global Risks US Ins. Co. v.*
8  *United States*, 2021 WL 3171862, at 2 (S.D. Cal. July 27, 2021) (finding
9  "compelling reasons" to seal information from which "the potential economic value
10 of [the designating party's] business ventures can be deduced"); *In re Qualcomm*
11 *Litig.*, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (compelling reasons exist
12 to seal "confidential business information," such as "confidential business
13 agreements executed among the parties," agreement terms, amounts paid under
14 agreements, "financial terms," details of negotiations, and "business strategies");
15 *Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, at *4 (N.D. Cal. June 30, 2015)
16 (party may meet burden under Local Rule 79-5 where party seeks to seal
17 "proprietary and confidential business information," including agreements
18 reflecting "parties' obligations and terms of payment"); *see also Nguyen v. City of*
19 *Garden Grove*, 2023 WL 2558536, at *4 (C.D. Cal. Feb. 2, 2023) (during discovery,
20 permitting redactions of private financial information such as "asset information");
21 *Landmark Screens, LLC v. Morgan Lewis & Bockius*, 2010 WL 3221859 at *5
22 (N.D. Cal. Aug. 13, 2010) (sealing "confidential business information which is not
23 intended for public disclosure").

24    9.    Moreover, disclosure of this information would put Bergmair at a
25 significant disadvantage in future business endeavors. Bergmair is a professional
26 investor who invests in assets and private companies in a range of industries. Any
27 future counterparty negotiating with Bergmair, if they were armed with information
28 regarding how much Bergmair invested in MindGeek, the dividends he received

during his time as a shareholder, and the price at which he sold his interest would have substantial – and unwarranted – insight into Bergmair's personal financial condition and cashflow, which would be of enormous negotiating advantage. Such a counterparty could calculate Bergmair's profit or loss from his purchase and sale of MindGeek shares (and receipt of dividends) and know the amount of funds Bergmair currently has available to deploy. The agreement by which Bergmair sold his shares sets forth a schedule of the payments comprising the total sale price, the disclosure of which would allow a negotiating counterparty to know Bergmair's precise cash flow, including specific dollar amounts and dates. In fact, such information could be used to Bergmair's disadvantage not just by a counterparty with whom he is negotiating, but also another party against whom Bergmair was competing for an investment opportunity. Moreover, this information is fresh and would give other parties insight into Bergmair's current financial condition, since he sold his interest in MindGeek just last year in 2023.

10. Similarly, disclosing Bergmair's economic interest in MindGeek – especially in conjunction with the MindGeek audit reports and financial statements that Plaintiff also seeks to expose – would simply be a backdoor way of revealing his personal financial condition, since a future counterparty or competitor of Bergmair's could simply work backwards from MindGeek's financials to ascertain the value of his investment and the dividends he received. *See Allianz Global Risks*, 2021 WL 3171862 at *1 (sealing information that a competitor could use to "reverse engineer" key financial information of party). In addition, disclosing the economic and other rights Bergmair negotiated for in connection with his MindGeek investment would give a future negotiating counterparty or competitor a roadmap of what Bergmair might seek or be willing to accept in connection with a proposed investment.

11. Finally, disclosing how Bergmair structured his corporate holdings and the identity of the corporate entities through which he held his MindGeek shares

would obviously give a future counterparty or competitor an advantage in negotiations. So would disclosing the identity of Bergmair's other investments, including the nonparty entity of Bergmair's that happened to do business with MindGeek. A future counterparty or competitor would have insight into what Bergmair regards as an advantageous structure for his investments, as well as knowledge of the identity and financial wherewithal of the specific entities through which Bergmair owned his MindGeek shares and other investments, including the nonparty entity that did business with MindGeek. *See Bold Limited v. Rocket Resume, Inc.*, 2024 WL 1329921 at *2 (Mar. 27, 2024) (finding compelling need to seal records reflecting "nonpublic corporate structure"); *Droplets, Inc. v. Yahoo! Inc.*, 2019 WL 9443777 at *2 (N.D. Cal. June 18, 2019) (same).

12. In addition to the commercial disadvantage to Bergmair, disclosure of the sealed material would raise personal security concerns. Public disclosure of his personal financial condition – which is not otherwise in the public record – could make him or his family members (including his minor children) the target of harassment, at a minimum, or even kidnapping. Mr. Bergmair lives in Hong Kong, which has been the locale for numerous high-profile kidnappings of wealthy businessmen and their family members since the 1990s.[2] Recent decades have

---

[2] Austin Ramzy, *Hong Kong Kidnapping Revives Memories of Other High-Profile Crimes*, The New York Times (Apr. 30, 2015 6:48 AM), https://archive.nytimes.com/sinosphere.blogs.nytimes.com/2015/04/30/hong-kong-kidnapping-revives-memories-of-other-high-profile-crimes/?searchResultPosition=3; Reuters, *Hong Kong police hunt kidnap gang that fled with $3.6-million ransom* (Apr. 26, 2016 6:37 AM EDT), https://www.reuters.com/article/world/hong-kong-police-hunt-kidnap-gang-that-fled-with-3-6-million-ransom-idUSKBN0NK12S/; Austin Ramzy, *Walter Kwok, Hong Kong Developer Who Survived Kidnapping, Dies at 68*, The New York Times (Oct. 22, 2018), https://www.nytimes.com/2018/10/22/world/asia/walter-kwok-dead-hong-kong.html?searchResultPosition=1.

similarly seen similar kidnappings of wealthy people or their children for ransom.[3] Moreover, the adult entertainment industry, although entirely legal, is a controversial one which has spawned many vocal and aggressive opponents. In addition to the financial disadvantage to him, disclosure of Bergmair's wealth from this industry could potentially invite harassment – both online and in person – of him and his family members.[4]

13. In addition, the exhibits contain non-public information, proprietary information, and trade secrets of MindGeek—including sensitive employment information as well as information about content-moderation practices that malicious actors could undermine if such information is publicly disclosed—that satisfies the compelling reason standard. *See, e.g.*, *In re Qualcomm Litig.*, 2017 WL 5176922, at *2 (compelling reasons exist to seal "confidential business information," such as "confidential business agreements executed among the parties," "financial terms," and "business strategies").

14. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

---

[3] *See* Ben Wescott, *Chinese appliance billionaire He Xiangjian held hostage in kidnapping attempt*, CNN (June 16, 2020 1:26 AM EDT), https://www.cnn.com/2020/06/16/asia/china-billionaire-hostage-intl-hnk-scli/index.html; Bukola Adebayo, *Family of abducted Tanzanian billionaire offer reward for information*, CNN (Oct. 16, 2018 1:08 AM EDT), https://www.cnn.com/2018/10/15/africa/family-of-kidnapped-africa-billionaire-offer-reward/index.html; Laurie P. Cohen, *Lampert Kidnappers Spun A Tale of Murder for Hire*, The Wall Street Journal (Jan. 21, 2003 12:14 AM EDT), https://www.wsj.com/articles/SB1043077177534126624.

[4] Indeed, in April 2021, the Montreal home of defendant Feras Antoon was burned to the ground by an arsonist following negative publicity regarding MindGeek. Ugo Giguère, *Luxury home in Montreal owned by Pornhub exec burned down in apparent arson*, Montreal Gazette (Apr. 26, 2021), https://montrealgazette.com/news/local-news/luxury-home-in-montreal-owned-by-pornhub-exec-burned-down-in-apparent-arson.

Dated: November 4, 2024					Respectfully submitted,

							*/s/ Ronald G. White*
							Ronald G. White