WIECHERT, MUNK & GOLDSTEIN, PC
David Wiechert, CA Bar No. 94607
4000 MacArthur Boulevard,
Suite 600 East Tower
Newport Beach, CA 92660
Phone: (949) 361-2822
Facsimile: (949) 361-5722
Email: dwiechert@aol.com

MORVILLO ABRAMOWITZ
GRAND IASON & ANELLO PC
Jonathan S. Sack (*pro hac vice*)
565 Fifth Avenue
New York, New York 10017
Phone: (212) 856-9600
Facsimile: (212) 856-9494
Email: jsack@maglaw.com

*Counsel for Specially Appearing
Defendant David Tassillo*

COHEN & GRESSER LLP
Jason Brown (*pro hac vice*)
Matthew V. Povolny (*pro hac vice*)
Joanna Chan
800 Third Avenue
New York, New York 10022
Phone: (212) 957-7600
Facsimile: (212) 957-4514
Email: jbrown@cohengresser.com
Email: mpovolny@cohengresser.com
Email: jchan@cohengresser.com

*Counsel for Specially Appearing
Defendant Feras Antoon*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENA FLEITES,<br><br>Plaintiff,<br><br>v.<br><br>MINDGEEK S.A.R.L. a foreign entity; MG FREESITES, LTD., a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; MG PREMIUM LTD, a foreign entity; MG GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 QUEBEC, INC., a foreign entity; BERND BERGMAIR, a foreign individual; FERAS ANTOON, a foreign individual; DAVID TASSILLO, a foreign individual; VISA INC., a Delaware corporation; REDWOOD MASTER FUND, LTD, a foreign entity; MANUEL 2018, LLC, a Delaware corporation, GINGOGERUM, LLC, a Delaware corporation; WHITE-HATHAWAY OPPORTUNITY FUND, LLC, A Delaware corporation; COLBECK CAPITAL MANAGEMENT, LLC, a Delaware Corporation; CB AGENCY SERVICES, LLC, A Delaware corporation; and CB PARTICIPATIONS SPV, LLC, a Delaware corporation<br><br>Defendants. | Case No. 2:21-cv-4920-WLH-ADS<br><br>**SPECIALLY APPEARING DEFENDANTS FERAS ANTOON AND DAVID TASSILLO'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>**Date: January 31, 2025**<br>**Time: 1:30 p.m.**<br>**Courtroom: 9 B**<br>**Judge: Hon. Wesley Hsu** |

FERAS ANTOON AND DAVID TASSILLO'S REPLY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .......................................................................................ii

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT............................................................................................................. 2

I.    Plaintiff Has Not Met Her Burden of Pleading Personal
      Jurisdiction Over Antoon or Tassillo........................................................ 2

      A.    The Second Amended Complaint Fails to Plead
            that Any of the MindGeek Entities are Antoon's or
            Tasillo's Alter Ego......................................................................... 4

            1.    Plaintiff Fails to Allege Abuse of the
                  Corporate Form Caused Her an Injustice......................... 5

            2.    Plaintiff Fails to Allege Unity of Interest and
                  Ownership ........................................................................ 9

II.   Plaintiff's Second Amended Complaint Fails to Satisfy
      Basic Notice Pleading Requirements as to Antoon and
      Tassillo ...................................................................................................... 13

      A.    The TVPRA Claims Fail ............................................................ 14

      B.    The Remaining Federal Claims Fail............................................ 15

      C.    Plaintiff's State and Common Law Claims Also
            Fail ............................................................................................... 16

III.  Section 230 of the CDA Bars Plaintiff's Claims ................................. 19

CONCLUSION........................................................................................................20

CERTIFICATES OF COMPLIANCE AND SERVICE

FERAS ANTOON AND DAVID TASSILLO'S REPLY

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Activision Publ'g, Inc. v. EngineOwning UG*,
   2023 WL 3272399 (C.D. Cal. Apr. 4, 2023)....................................................5

*ADO Fin., AG v. McDonnell Douglas Corp.*,
   931 F. Supp. 711 (C.D. Cal. 1996).....................................................6, 12

*Art Attacks Ink, LLC v. MGA Ent., Inc.*,
   2009 WL 10672486 (S.D. Cal. Aug. 10, 2009)....................................................11

*Art Attacks Ink, LLC v. MGA Ent., Inc.*,
   581 F.3d 1138 (9th Cir. 2009) ................................................................12

*Boeing Co. v. KB Yuzhnoye*,
   2016 WL 2851297 (C.D. Cal. May 13, 2016).........................................................7

*Calise v. Meta Platforms, Inc.*,
   103 F.4th 732 (9th Cir. 2024) ................................................................19

*Calvert v. Huckins*,
   875 F. Supp. 674 (E.D. Cal. 1995) ........................................................13

*Click v. Dorman Long Technology, Ltd.*, No. C,
   2006 WL 2644889 (N.D. Cal. Sept. 14, 2006)........................................................3

*Doe v. MindGeek*,
   558 F. Supp. 3d 828 (C.D. Cal. Sept. 3, 2021)....................................................17

*Doe v. Twitter, Inc.*,
   2023 WL 8568911 (N.D. Cal. Dec. 11, 2023)....................................................14

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) ................................................................10

*Doe v. Webgroup Czech Republic*, *A.S.*,
   2024 WL 3533426 (C.D. Cal. July 24, 2024)....................................................15

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*,
   122 F3d 1211 (9th Cir. 1997) ................................................................19

*Facebook, Inc. v. OnlineNIC Inc.*,
2023 WL 9019050 (N.D. Cal. Nov. 15, 2023) ........................................6

*Frances T. v. Vill. Green Owners Assn.*,
42 Cal. 3d 490 (1986) ...............................................................................17

*Gerritsen v. Warner Bros. Ent. Inc.*,
116 F. Supp. 3d 1104 (C.D. Cal. 2015) ....................................................6

*In re Boon Glob. Ltd.*,
923 F.3d 643 (9th Cir. 2019) .....................................................................4

*In re GGW Brands, LLC*,
504 B.R. 577 (Bankr. C.D. Cal. 2013) ......................................................6

*In re Telectronics Pacing Sys., Inc.*,
953 F. Supp. 909 (S.D. Ohio 1997) ...........................................................5

*Kayne v. Ho*,
2012 WL 12878753 (C.D. Cal. Sept. 6, 2012) ......................................4, 6

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*,
235 Cal. App. 3d 1220 (1991) ................................................................4, 6

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
243 F. Supp. 2d 1073 (C.D. Cal. 2003) .....................................................5

*Morrison v. Nat't Australia Bank Ltd.*,
561 U.S. 247 (2010).................................................................................15

*Mossimo Holdings LLC v. Haralambus*,
2015 WL 476298 (C.D. Cal. Feb. 3, 2015) ...............................................6

*Oakley, Inc. v. Trimera Mil. Tech., Inc.*,
2016 WL 8794459 (C.D. Cal. Jan. 22, 2016).............................................7

*Pado, Inc. v. SG Trademark Holding Co. LLC*,
2020 WL 1445720 (C.D. Cal. Mar. 24, 2020).............................................2

*Perfect 10, Inc. v. Giganews, Inc.*,
2015 WL 12710753 (C.D. Cal. June 3, 2015)............................................5

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d (9th Cir. 2017) ........................................................................5

*Prompt Staffing, Inc. v. United States*,
   321 F. Supp. 3d 1157 (C.D. Cal. 2018) ................................................6

*Ranza v. Nike*, Inc.,
   793 F.3d 1059 (9th Cir. 2015) ......................................................10, 13

*Rivera v. NIBCO, Inc.*,
   364 F.3d 1057 (9th Cir. 2004) .............................................................17

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ...............................................................12

*Shimmick Const. Co./Obayashi Corp. v. Officine Meccaniche Galletti-O.M.G.
S.R.L.*,
   2014 WL 5847440 (S.D. Cal. Nov. 12, 2014)....................................13

*Sihler v. Fulfillment Lab, Inc.*,
   2020 WL 7226436 (S.D. Cal. Dec. 8, 2020) .......................................12

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .................................................................2

*Tran v. Farmers Grp., Inc.*,
   104 Cal. App. 4th 1202 (2002) ..............................................................4

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*,
   1 Cal. 3d 586 (1970) ............................................................................16

*United States v. Levin*,
   13 F.4th 96 (1st Cir. 2021)..............................................................3, 16

*United States v. X-Citement Video, Inc.*,
   513 U.S. 64 (1994).........................................................................15, 16

*Williams v. Yamaha Motor Co. Ltd.*,
   851 F.3d 1015 (9th Cir. 2017) ...............................................................6

*Willig v. Exiqon, Inc.*,
   2012 WL 10375 (C.D. Cal. Jan. 3, 2012)..............................................6

*Wolf Designs, Inc. v. DHR Co.*,
    322 F. Supp. 2d 1065 (C.D. Cal. 2004) ...................................................................3

**Statutes**

18 U.S.C. § 1591(a)(1) ..........................................................................................14, 15

18 U.S.C. § 1591(a)(2) ................................................................................................14

18 U.S.C. § 1596(a) .....................................................................................................15

18 U.S.C. § 2252.........................................................................................................15

47 U.S.C. § 230(c)(1) ............................................................................................19, 20

Cal. Civ. Code § 52.5(a) ............................................................................................19

Cal. Civ. Code § 1708.85 ..........................................................................................18

Cal. Civ. Code § 3344 ................................................................................................18

**Other Authorities**

Fletcher, Cyclopedia of Corporations § 5332............................................................11

Luxembourg Companies Act, Title 1 (2015) ............................................................11

Model Business Corporations Act § 7.32 ..................................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **PRELIMINARY STATEMENT**

Plaintiff's omnibus opposition brief (ECF No. 477 ("Opposition" or "Opp'n")) does not adequately address, much less counter, the two grounds for dismissal set forth in the joint motion to dismiss of specially-appearing Defendants Feras Antoon and David Tassillo (ECF No. 436 ("Motion" or "Mot.")). *First*, the allegations of the Second Amended Complaint (SAC) (ECF No. 387-1) fail to make the required *prima facie* showing of personal jurisdiction over Antoon or Tassillo, who live and work in Canada and have no contacts with either California or the United States. *Second*, the SAC does not allege that Antoon or Tassillo took any specific action in California or the United States—much less engaged in the requisite tortious or other wrongful conduct—that allegedly harmed Plaintiff.

On the critical threshold issue of personal jurisdiction, Plaintiff's attempt to overcome the fiduciary shield doctrine by alleging an alter ego theory of personal jurisdiction falls short. Plaintiff recognizes that she has not alleged an essential element of an alter ego theory: specifically, that she suffered an injustice caused by the Defendants' alleged abuse of the corporate form. Plaintiff does not argue—and cannot demonstrate—that the MindGeek entities were inadequately capitalized such that Plaintiff could not recover from the Non-Contesting Defendants (or any other MindGeek Defendant) if Antoon and Tassillo are dismissed from the case.[1] Instead, Plaintiff argues chiefly that she need not allege injustice in the context of personal jurisdiction. The cases cited by Plaintiff do not support her argument, however; the cases make clear that a *prima facie* showing of injustice is required. Moreover, the SAC does not include any facts showing that Antoon or Tassillo had the requisite unity of interest and domination over any entity sufficient to disregard the corporate form. Instead, Plaintiff continues to resort to improper group pleading and

---

[1] Capitalized terms not defined herein have the definitions given in Antoon and Tassillo's opening memorandum of law. *See* ECF No. 438-1.

1
2
3

argument, contending in contradictory fashion that the lenders, a majority shareholder, and Antoon and Tassillo all exercised ultimate control of the MindGeek Entities.

4
5
6
7
8

After taking jurisdictional discovery for over one year, and taking nearly that much time to file her 594-paragraph, 171-page Second Amended Complaint, Plaintiff has had every opportunity to allege the facts required to link Antoon and Tassillo to this jurisdiction and assert legally sufficient claims against them. Plaintiff has failed to meet her burden, and the SAC should be dismissed with prejudice.[2]

9

## **ARGUMENT**

10
11

## I.   **Plaintiff Has Not Met Her Burden of Pleading Personal Jurisdiction Over Antoon or Tassillo**

12
13
14
15
16
17
18
19
20
21
22

Despite three opportunities to plead legally sufficient claims against Antoon and Tassillo, Plaintiff still has not cured the fundamental defects in her pleading against them:  the absence of specific factual allegations sufficient to make a *prima facie* showing of personal jurisdiction.  To meet the constitutional requirements of due process, Plaintiff may not rely on her "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007); *see also Pado, Inc. v. SG Trademark Holding Co. LLC*, No. CV-20-01565, 2020 WL 1445720, at *4 (C.D. Cal. Mar. 24, 2020) (reasoning that "conclusory jurisdictional allegations" that failed to "specifically identify *any* events or transactions that took place in California" were insufficient to establish jurisdiction).

23
24
25

The SAC—like the complaints that preceded it—falls far short of the specific factual allegations required to establish jurisdiction over Antoon and Tassillo.  At no point in the SAC does Plaintiff allege any intentional act that Antoon or Tassillo

26
27
28

---

[2] Antoon and Tassillo join and incorporate by reference the arguments for dismissal set forth in concurrently filed reply memoranda of law submitted by the Non-Contesting Defendants and Bernd Bergmair.

FERAS ANTOON AND DAVID TASSILLO'S REPLY

took in, or expressly aimed at, either California or the United States. Effectively conceding Antoon's and Tassillo's lack of relevant individual contacts in any applicable fora, Plaintiff tries to impute alleged actions by the Non-Contesting Defendants to Antoon and Tassillo personally by virtue of their former positions as officers of one of the MindGeek defendants and as minority shareholders.

Under the fiduciary shield doctrine, the Non-Contesting Defendants' contacts with California or the United States may not be imputed to Antoon or Tassillo. *See* Mot. 16-29; *see also Click v. Dorman Long Technology, Ltd.,* No. C 06-1936, 2006 WL 2644889, *4 (N.D. Cal. Sept. 14, 2006) ("[I]n order for fiduciary shield protections to be unavailable to defendants acting on behalf of their employer . . . a defendant's contacts must give rise to some identifiable theory of liability pursuant to which the defendant's contacts on behalf of the corporate employer may justifiably be imputed to the defendant individually."). Instead of presenting facts demonstrating personal wrongdoing, the Opposition repeatedly references Plaintiff's allegation in the SAC that MindGeek personnel sent to Antoon third-party complaints concerning content depicting the Plaintiff. Opp'n 19, 47 n.26, 53 n.33. In the same paragraph of the SAC, Plaintiff readily concedes, however, that Antoon was "unable to verify [Plaintiff's] claims or identify her content." SAC ¶ 156.[3] Plaintiff's failure to meet her burden of pleading personal jurisdiction over Antoon and Tassillo warrants dismissal of the SAC against them.

---

[3] Plaintiff relies on *United States v. Levin*, 13 F.4th 96 (1st Cir. 2021)—a criminal case in which the defendant, who was neither an officer of a company nor acting in any corporate capacity, was convicted of intentionally possessing child pornography—for the proposition that knowledge of other defendants, including Tassillo, "may be inferred from the general allegations." Opp'n 47 n.26. That case is irrelevant to the issue of personal jurisdiction here. Even assuming *arguendo* that Antoon and Tassillo had knowledge of the alleged tortious conduct by the MindGeek defendants—which they did not—such knowledge "is not enough to hold a . . . officer liable for the torts of the corporation absent other unreasonable participation in the unlawful conduct by the individual." *Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004). No such "unreasonable participation" has been alleged here.

FERAS ANTOON AND DAVID TASSILLO'S REPLY

**A.    The Second Amended Complaint Fails to Plead that Any of the MindGeek Entities are Antoon's or Tasillo's Alter Ego**

Unable to support jurisdiction over Antoon and Tassillo based on their own actions, Plaintiff seeks to overcome the fiduciary shield doctrine by arguing that Antoon and Tassillo, as former officers and minority shareholders, are the alter egos of the Non-Contesting Defendants subject to this Court's jurisdiction.  Opp'n 20-25, 62-75; *see also* SAC ¶¶ 18-23.

To plead personal jurisdiction on an alter ego theory, Plaintiff must adequately allege (1) a unity of interest and ownership between the Non-Contesting Defendants and Antoon or Tassillo and (2) an injustice caused by abuse of the corporate form. *In re Boon Glob. Ltd.*, 923 F.3d 643, 653 (9th Cir. 2019).  In the face of this settled law, Plaintiff frames her argument under a so-called "single enterprise" theory and repeatedly suggests that this theory is materially different from the traditional alter-ego theory under California law.  Opp'n 62-79.  Plaintiff is wrong.  The "single enterprise" theory provides only that "sister corporations can have alter ego liability even if one does not own stock in the other."  *Kayne v. Ho*, No. 09-CV-06816, 2012 WL 12878753, at *8 (C.D. Cal. Sept. 6, 2012); *see also Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1249 (1991) (noting that alter-ego liability may be found "between sister companies," not only in a "parent-subsidiary relationship").  The "single enterprise" theory does not relieve Plaintiff of her burden in this case.

Plaintiff must make a *prima facie* showing (1) that "a unity of interest and ownership" existed between the Non-Contesting Defendants and Antoon or Tassillo and (2) of "an inequitable result if the acts in question are treated as those of one corporation alone." *Tran v. Farmers Grp., Inc.*, 104 Cal. App. 4th 1202, 1219 (2002)

FERAS ANTOON AND DAVID TASILLO'S REPLY

(applying "single enterprise" theory).[4]  The Motion makes clear that Plaintiff has not adequately pled these two elements.  Mot. 16-29.

As to injustice, Plaintiff argues a showing is not needed or, alternatively, that alleging tax evasion meets her burden.  She is wrong on both counts.  As to unity and control, Plaintiff argues that the lenders, the majority shareholder, and Antoon and Tassillo all exercised control of the MindGeek entities; that Antoon's and Tassillo's control went beyond their status as minority shareholders; and that both men supposedly used substantial company resources for personal matters.  These arguments are internally inconsistent and conflict with the jurisdictional discovery.

### 1. Plaintiff Fails to Allege Abuse of the Corporate Form Caused Her an Injustice

In their Motion, Antoon and Tassillo demonstrated that the SAC fails to allege a causal connection between use of the corporate form and Plaintiff's alleged injury.  Mot. 19-22.  As Antoon and Tassillo noted, "[i]n almost every instance where a plaintiff has attempted to invoke the [alter ego] doctrine [s]he is an unsatisfied creditor."  *Perfect 10, Inc. v. Giganews, Inc.*, No. 2:11-CV-07098, 2015 WL 12710753, at *3 (C.D. Cal. June 3, 2015), *aff'd*, 847 F.3d 357 (9th Cir. 2017).

In her Opposition, Plaintiff contends that "the injustice element is irrelevant" to an alter-ego theory of personal jurisdiction.  Opp'n 82.  Plaintiff is incorrect.  *Every single case* in this Circuit upon which Plaintiff relies (at Opp'n 77-79, 82-83)—whether analyzing substantive liability or personal jurisdiction under an alter-ego theory—requires plausible allegations that "failure to disregard the corporation would result in fraud or injustice."  *Activision Publ'g, Inc. v. EngineOwning UG,*

---

[4] Although Plaintiff references in passing a so-called "merger theory of jurisdiction," California law does not recognize such a theory, and, in any event, Plaintiff does not argue that such theory applies here.  *See* Opp'n 79 (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1099 (C.D. Cal. 2003) (in turn, quoting *In re Telectronics Pacing Sys., Inc.*, 953 F. Supp. 909, 919 (S.D. Ohio 1997)).

No. CV 22-0051, 2023 WL 3272399, at *6 (C.D. Cal. Apr. 4, 2023) (quoting *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1021 (9th Cir. 2017)).[5] Even the out-of-circuit cases cited by Plaintiff, which *do not apply California law*, generally require some form of injustice, if not fraud itself. *See* Opp'n 82 (collecting cases).

    As a fallback, Plaintiff repeats her core theory of the case, arguing that the alter ego test is met here because the MindGeek corporate form was supposedly used to ▮▮▮▮▮▮▮▮▮▮▮ Opp'n 83; *see also* Opp'n 63 ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮, Opp'n 66 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). That theory—which is irrelevant to Plaintiff's claimed rights and injuries—fails to support personal jurisdiction as a matter of law. *See* Mot. 21-22. Claims of tax evasion are only relevant when the United States, which is entitled to collect federal taxes, is the party claiming that the corporate form produced an injustice. *See, e.g.*, *Prompt Staffing, Inc. v. United States*, 321 F. Supp. 3d 1157, 1178 (C.D. Cal. 2018). Plaintiff cites *no case* in which a court exercised alter-ego jurisdiction when a private plaintiff proceeded on such a "tax evasion" theory. *Cf. Gerritsen v. Warner Bros.*

---

[5] *See also ADO Fin., AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 716 (C.D. Cal. 1996) ("Under California law, to apply the alter ego doctrine, the court must determine … that failure to disregard the corporation would result in fraud or injustice."); *Kayne v. Ho*, No. 09-CV-06816, 2012 WL 12878753, at *8 (C.D. Cal. Sept. 6, 2012) ("Because Plaintiffs allege that the [alter-ego entity] played an active role in the claimed scheme to transfer assets to avoid paying Plaintiffs' judgment, Plaintiffs have alleged an inequitable result . . . ."); *Mossimo Holdings LLC v. Haralambus*, No. 14-CV-05912, 2015 WL 476298, at *3 (C.D. Cal. Feb. 3, 2015) ("the two corporations were merely fraudulent entities"); *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 1250, 1 Cal. Rptr. 2d 301, 318 (Ct. App. 1991) ("there is substantial evidence to support the conclusion that [the two companies] formed a single enterprise for the purpose of committing a continuing fraud against buyers"); *Willig v. Exiqon, Inc.*, No. 11-CV-399, 2012 WL 10375, at *12 (C.D. Cal. Jan. 3, 2012) ("injustice will result because Plaintiffs cannot recover severance pay from now-defunct [alter-ego entity]"); *Facebook, Inc. v. OnlineNIC Inc.*, No. 19-CV-07071, 2023 WL 9019050, at *11 (N.D. Cal. Nov. 15, 2023) ("the Court finds that it would be inequitable to uphold [the alter-ego entity's] separate existence under the circumstances of this case" (internal quotations omitted)); *In re GGW Brands, LLC*, 504 B.R. 577, 623 (Bankr. C.D. Cal. 2013) ("the undisputed facts show there would be an inequitable result").

FERAS ANTOON AND DAVID TASSILLO'S REPLY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Ent. Inc.*, 116 F. Supp. 3d 1104, 1135–36 (C.D. Cal. 2015) (noting that the corporate form must be used "unjustly and in derogation of *the plaintiff's interests*" (emphasis added; internal quotations omitted)).   Nor does Plaintiff plead—or attempt to argue—facts demonstrating that *Antoon or Tassillo* were involved in establishing this purported ██████████████████   *See, e.g.*, *Oakley, Inc. v. Trimera Mil. Tech., Inc.*, No. 14-CV-01649, 2016 WL 8794459, at *8 (C.D. Cal. Jan. 22, 2016) (dismissing complaint against individual defendant where plaintiff did not allege specific involvement by individual defendant in the injustice). ████████████

████████████████████████████████████████

████████   *See, e.g.*, Opp'n 63, 65.   As Plaintiff knows from jurisdictional discovery, the ████████████████████████████████████

████████████████████████████████████████

██████████████████

        Apparently    conceding    Antoon    and    Tassillo's    argument    that undercapitalization and insolvency "are the most relevant factors" in the alter-ego inquiry, Mot. 20 (quoting *Boeing Co. v. KB Yuzhnoye*, No. 13-CV-00730, 2016 WL 2851297, at *25 (C.D. Cal. May 13, 2016)), Plaintiff now insists that she has actually alleged ██████████████   Opp'n 83.   However, Plaintiff cites *nothing* in the SAC (or in the years' worth of financial records that she received in discovery) that supports this belated contention.   On the contrary, Plaintiff's own allegations (and the financial records produced through jurisdictional discovery) demonstrate that the MindGeek entities both were and remain well-capitalized.   *See, e.g.*, SAC ¶¶ 1 n.1, 352, 406 ████████████████████████████

████████████████████████████████████████████);

SAC ¶¶ 270, 495 (██████████████████████████); SAC ¶¶ 2, 6, 37 (MindGeek is "the dominant, monopolistic" company in an almost $100 billion market); *see also* Andreou Decl., ECF No. 448-2 ¶¶ 17, 30, 35, 43, 51

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(detailing the MindGeek entities' maintenance of corporate formalities, including that MindGeek "has been adequately capitalized," as demonstrated by their financial statements).[6]

In the same vein, Plaintiff contends that ████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████    Opp'n 83-84.  But these conclusory arguments are not alleged in the SAC and find no support in jurisdictional discovery. ████████████████████ ██████████████, Opp'n 84, █████████████████████████████████ ████████████████████. *See* Opp'n Ex. 12, ECF No. 480-13.

Finally, Plaintiff argues that the Court should disregard MindGeek's proof of solvency because "defendants objected successfully to any financial discovery beyond 2021" ██████████████████████████  Opp'n 84.  Plaintiff mischaracterizes the jurisdictional discovery record, as she initially pursued discovery beyond 2021.  ECF Nos. 270-3 at 4, 274-3 at 4.  But Plaintiff later changed course stating, "[w]e believe the following is appropriate: [ ] Defendants search for responsive documents through the date of the filing complaint (June 17, 2021) for each of Plaintiff's requests."  ECF No. 330-4 at 4.  Plaintiff filed in this action multiple motions to compel discovery, *none* of which sought the financial discovery which she now seeks to preclude.  In any event, the MindGeek entities remain well-capitalized.  *See* Andreou Decl. ¶¶ 17, 30, 35, 43, 51.

---

[6] The ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████  Opp

FERAS ANTOON AND DAVID TASSILLO'S REPLY

1

2 **2.       Plaintiff Fails to Allege Unity of Interest and Ownership**

3       Even with the benefit of jurisdictional discovery, Plaintiff again resorts to

4 group pleading and argument regarding the ultimate control of MindGeek.  Plaintiff

5 herself alleges that Antoon and Tassillo took direction from the company's lenders

6 and majority shareholder, had their compensation set by others, and could be (and

7 were) fired by others.  *See* Mot. 23-24 (collecting examples).

8       Tellingly,  Plaintiff's  omnibus  opposition  briefing  likewise  conflates

9 individuals and entities in her effort to create relevant jurisdictional contacts where

10 none exist.  She repeatedly argues, for example, that majority shareholder Bergmair

11 exercised extensive control over the company.  *See, e.g.*, Opp'n 65 ██████████████

12 ███████████████████████████ (emphasis added)); Opp'n 70-71 (describing

13 Bergmair's ████████████████████████████).  Plaintiff likewise argues

14 that ████████████████████████████████████████████████████████

15 ██████████████████████████ Opp'n 20; *see also, e.g.*, Opp'n

16 21-25 (detailing  the  lenders' ██████████████████████████████████

17 ████████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████████

19 ██████████████████████).  Plaintiff even suggests that Visa had

20 some degree of control over the MindGeek Entity Defendants.  *See, e.g.*, Opp'n 33

21 ("when Visa was explicitly informed about illegal content on MindGeek's tubesites,

22 it  directed  MindGeek  to  scrub  all  explicit  references  to  illegality"  (citing  SAC

23 ¶ 295)).  Simply put, Plaintiff cannot have it both ways—she cannot broadly allege

24 without  any  support  that  MindGeek  was  somehow  controlled  by  Antoon  and

25 Tassillo, and simultaneously allege that MindGeek was directed at all times by its

26 majority shareholder and lenders (*i.e.*, not Antoon or Tassillo).  Such allegations fail

27 to demonstrate that Antoon or Tassillo "dictat[ed] every facet of the [company]'s

28

9

business." *Ranza v. Nike*, Inc., 793 F.3d 1059, 1073 (9th Cir. 2015) (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)).

Plaintiff nevertheless contends that Antoon's and Tassillo's ███████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ ██████████ Opp'n 68-69; *see also* Opp'n 81 █████████████████████ ████████████████████████████████████████████████████████████████). That misleading contention, unsupported by discovery, ignores the governing services agreements, whereby 9219 Inc., including Antoon and Tassillo, provided managerial services to the MindGeek entities. *See* Sack Decl., ECF No. 436-8, ¶¶ 7-8. The MindGeek entities, including Non-Contesting Defendants, consistently made payments pursuant to those agreements. *See* Sack Decl. ¶ 13.[7] Although Plaintiff claims that it is ███████████████████████████████████ █████████████████████████████████████████████████████████████████ ████████████████ Opp'n 71, that likewise ignores the significant discovery Plaintiff received demonstrating the regular maintenance of corporate formalities. *See, e.g.*, Sack Decl. ¶¶ 4-14.

Plaintiff takes issue with ████████████████████████████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ ████████████████████████████████████ Opp'n 63-64. That claim makes no sense. *See* Mot. 26. Shareholders in closely-held corporations "*frequently* enter into agreements that govern the operation of the enterprise

---

[7] ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

FERAS ANTOON AND DAVID TASSILLO'S REPLY



[including] governance of the entity, *allocation of the economic return from the business*, and other aspects of the relationships among shareholders." Model Business Corporations Act § 7.32 (emphasis added). Such agreements may govern "the authorization or making of distributions *whether or not in proportion to ownership of shares*." Fletcher, Cyclopedia of Corporations § 5332 (emphasis added). Luxembourg law likewise permits companies to be governed by their agreements. *See* Luxembourg Companies Act, Title 1 (2015). The shareholders' agreement was simply an additional corporate formality that governed financial rights among the owners of the company. The same is true regarding the lenders' control of Antoon and Tassillo's compensation, including their receipt of bonuses in lieu of dividend payments from 2013 to 2016. *See* Antoon Decl., ECF No. 436-2, ¶ 33; Tassillo Decl. ECF No. 436-6, ¶ 29; *see also* Opp'n 22 (conceding that the lenders ██████████████████████████████████████████████ ██████████████████████). Plaintiff cites no authority holding that such economic arrangements are impermissible—let alone that such arrangements trigger the alter-ego doctrine.[8]

Plaintiff next claims that ████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████ *See* Opp'n 82. That testimony, like their declarations, only demonstrates that some personnel of 9219 Inc. occasionally performed services in connection with Antoon and Tassillo's properties. *See* Tassillo Decl. ¶ 41. Despite receiving thousands of pages of discovery materials and taking hours of deposition testimony, Plaintiff identifies nothing more than a *de minimus* use of company resources. *See, e.g., Art Attacks*

---

[8] ███████████████████ n's and Tassillo's ██████████████
█████████████ Opp'n 66, she does
███████████████████████████████████ mon. ████

1  *Ink, LLC v. MGA Ent., Inc.*, No. 04-CV-01035, 2009 WL 10672486, at *4 (S.D. Cal.

2  Aug. 10, 2009) (rejecting alter ego theory where personal credit card charges were

3  small "in relation to the total volume of charges" on the credit card), *aff'd*, 581 F.3d

4  1138 (9th Cir. 2009).

5      Cases on which Plaintiff relies most heavily are the mirror opposite of this

6  one. Opp'n 62-63. In *Sihler v. Fulfillment Lab, Inc.*, 2020 WL 7226436, at *6 (S.D.

7  Cal. Dec. 8, 2020), the court declined to impute the company's forum contacts to the

8  individual defendants but concluded that personal jurisdiction arose from the

9  individual defendant's "own individual contacts with California" under a purposeful

10  direction theory—a theory that Plaintiff does not raise here. In *ADO Fin., AG v.*

11  *McDonnell Douglas Corp.*, 931 F. Supp. 711, 717-18 (C.D. Cal. 1996), the court

12  found alter ego jurisdiction where one person "solely owned" and "managed and

13  controlled" the corporate defendant, and had "stripped it of its assets." Here, in

14  contrast, Plaintiff alleges that the lenders, the majority shareholder, and two minority

15  shareholders somehow all exercised ultimate control of the MindGeek entities.

16      In the face of these deficient allegations, Plaintiff attempts to shift her burden

17  onto Antoon and Tassillo, arguing that the defendants seek dismissal supposedly

18  "based on conclusory barebone declarations." Opp'n 76. To the contrary, dismissal

19  is appropriate based on Plaintiff's now third failure "to make a *prima facie* showing

20  of personal jurisdiction over either Antoon or Tassillo." Mot. 11; *see also*

21  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)

22  (plaintiff "bears the burden" of making "a prima facie showing of personal

23  jurisdiction" through pleadings and affidavits (citation and internal quotations

24  omitted)). Documents appended to defendants' declarations simply respond to

25  Plaintiff's attempt to ignore or mischaracterize the jurisdictional discovery she

26  received.

27                                    ***

28

FERAS ANTOON AND DAVID TASSILLO'S REPLY

An alter ego theory of personal jurisdiction is permitted "only in exceptional circumstances" that look nothing like the Plaintiff's allegations in the SAC. *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995) (citation omitted). Plaintiff's failure to establish either prong of the alter-ego theory means that she has failed to meet her burden. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1075 n.9 (9th Cir. 2015) (because plaintiff did not show the nonexistence of separate personalities between individual and corporation, "we need not analyze the 'fraud or injustice' prong"); *Shimmick Const. Co./Obayashi Corp. v. Officine Meccaniche Galletti-O.M.G. S.R.L.*, No. 13-CV-2700, 2014 WL 5847440, at *7 (S.D. Cal. Nov. 12, 2014) (because plaintiff failed "to establish the second prong of the alter-ego analysis, the Court need not address the first prong").

## II. Plaintiff's Second Amended Complaint Fails to Satisfy Basic Notice Pleading Requirements as to Antoon and Tassillo

The SAC lacks any allegations of specific actions taken by Antoon and Tassillo to commit the offenses alleged against them. *See* Mot. 29-36. Plaintiff's Opposition appears to effectively abandon the majority of her claims against Antoon and Tassillo, by means of defining the parties and entities that constitute the "MindGeek Defendants" more narrowly than she does in the SAC.[9] Irrespective of whether this was indeed Plaintiff's intent, with respect to all federal, state, and common law claims brought against Antoon and Tassillo, Plaintiff's Opposition fails to address any of Antoon's or Tassillo's merits-based arguments. Instead, Plaintiff continues to engage in impermissible group pleading and makes conclusory

---

[9] *Compare* SAC, p.1 (defining the "MindGeek Defendants" as MindGeek S.a.r.l., MG Freesites, Ltd. d/b/a Pornhub ("Pornhub"), MindGeek USA Incorporated ("MindGeek USA"), MG Premium Ltd., MG Global Entertainment, Inc., 9219-1568 Quebec, Inc., Bernd Bergmair, Feras Antoon, and David Tassillo), *with* Opp'n 1 n.1 (defining the "MindGeek Defendants" as only MindGeek S.a.r.l., MG Freesites, Ltd. d/b/a Pornhub ("Pornhub"), MindGeek USA Incorporated ("MindGeek USA"), MG Premium Ltd., MG Global Entertainment, Inc., 9219-1568 Quebec, Inc.).

allegations devoid of any specific factual underpinnings. Because Plaintiff fails to state a claim upon which relief may be granted, all claims must necessarily fail under Rule 12(b)(6) and should be dismissed against Antoon and Tassillo.

### A. The TVPRA Claims Fail

<u>Count I</u>: In her Opposition, Plaintiff fails to assert a theory of direct liability under the TVPRA, 18 U.S.C. § 1591(a)(1), with respect to *any* defendant and appears to have backed off any claims that Antoon or Tassillo could be held liable for violations of the TVPRA under a theory of beneficiary liability, 18 U.S.C. § 1591(a)(2). *See, e.g.*, Opp'n 3, 37 ("This Court has already found that 'Plaintiff has adequately pled that Visa conspired with MindGeek to violate section 1591(a)(2).' The SAC alleges that this conspiracy extended to Colbeck and Redwood as well." (citation omitted)). Plaintiff directs her specific arguments only to the corporate MindGeek entity, *see* Opp'n 11-19, Colbeck and Redwood, *id*. at 20-30, and Visa, *id.* at 30-40, and fails to raise or point to any specific allegations whatsoever against Antoon and Tassillo.

Beyond this deficiency, the SAC lacks allegations that Antoon or Tassillo had actual knowledge of a sex trafficking venture concerning Plaintiff or engaged in affirmative conduct furthering such a venture. The absence of these allegations is fatal to Plaintiff's beneficiary liability claim. *See Doe v. Twitter, Inc.*, No. 3:21-CV-00485, 2023 WL 8568911, at *8 (N.D. Cal. Dec. 11, 2023).

<u>Count IV</u>: Because Plaintiff's Section 1594(c) claim is predicated on alleged violations of Section 1591, which Plaintiff fails to adequately plead against either Antoon or Tassillo for the reasons explained, her Section 1954 claim must necessarily fail. In her Opposition, Plaintiff points to no facts alleging that Antoon or Tassillo played any role whatsoever in any purported agreement to violate sex trafficking laws, much less that either defendant had any actual knowledge of

trafficking or entered into an agreement to traffic her person in violation of Section 1591(a)(1).

Extraterritoriality:  Plaintiff's TVPRA claims also fail because she does not allege that they apply extraterritorially to either defendant.  *See* Mot. 31-32.  In her Opposition, Plaintiff again fails to allege either that Antoon or Tassillo is a United States national or lawful alien admitted for permanent residence, or "present" in the United States, which is the only way in which Section 1591 might apply extraterritorially.  *See* 18 U.S.C. § 1596(a).  The absence of such allegations is fatal to Plaintiff's TVPRA claims.  Section 1595, which permits civil action for damages under the TVPRA, is silent as to its extraterritorial application and thus "meant to apply only within the territorial jurisdiction of the United States." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) (citation omitted).  *See also Doe v. Webgroup Czech Republic*, *A.S.*, No. 2:21-CV-02428, 2024 WL 3533426, at *10 (C.D. Cal. July 24, 2024) (dismissing domestically trafficked plaintiff's claims against foreign websites as extraterritorial applications of the TVPRA).

## B.    The Remaining Federal Claims Fail

Counts V and VI: Plaintiff's claims that Antoon and Tassillo violated 18 U.S.C. § 2252, which assert civil claims under the federal criminal provisions prohibiting the receipt, transport, and possession of child pornography ("CSAM"), remain wholly unsupported by any factual allegations.  In her Opposition, Plaintiff does not allege that either Antoon or Tassillo "knowingly" received, transported, or possessed such materials, as Supreme Court precedent requires.  *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 265 (1994) ("Because the term 'knowingly' in §§ 2252(a)(1) and (2) modifies the phrase 'the use of a minor' in subsections

(1)(A) and (2)(A), the Act is properly read to include a scienter requirement for age of minority.")

Plaintiff cites to no cases holding that such knowledge may be inferred from "general allegations," as she purports to be the case. *See* Opp'n 47 n.26. Instead, she cites to an inapposite First Circuit case – where the defendant, who had been found guilty of possessing child pornography, had personally undertaken searches using terms associated with child pornography and had links saved on his computer "with names plainly indicative of child pornography" – for the proposition that knowledge of child pornography can be shown through "circumstantial evidence." *See id.*; *Levin*, 13 F.4th at 100. Nothing in the SAC suggests such "circumstantial evidence" against either Antoon and Tassillo, and an allegation that Antoon was sent a URL to Plaintiff's video and informed it contained CSAM does not come close. *See* Opp'n 47 n.26. On large websites with millions of videos such as the ones MindGeek operates, it is simply not possible that either Antoon or Tassillo would have had the sort of knowledge that the law requires with respect to the content of any one particular video.

## C.    Plaintiff's State and Common Law Claims Also Fail

Plaintiff's state and common law claims necessarily fail because in her Opposition, just as in the SAC, Plaintiff is silent as to Antoon's or Tassillo's alleged participation in any wrongful acts, which is a requirement for directors or officers of a corporation to incur personal liability for torts of the corporation. *See United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595 (1970) ("Directors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong.").

FERAS ANTOON AND DAVID TASSILLO'S REPLY

In addition, Plaintiff engages in impermissible group pleading and fails to plead Antoon's or Tassillo's involvement in any alleged conduct on the part of MindGeek.

Although Plaintiff argues in a footnote that Antoon's and Tassillo's knowledge and involvement in Plaintiff's videos is "uniquely within defendants' possession and cannot properly be resolved before discovery," Opp'n 53 n.33, the well-established law of this Circuit holds otherwise, when Plaintiff has not put forth any relevant facts to even suggest that this is the case. *See, e.g.*, *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in fishing expeditions." (internal quotations and markings omitted) (citation omitted)). It simply is not enough for Plaintiff to call out executives by name and then demand discovery on that basis alone. The sole case to which Plaintiff cites in support of this proposition, *Doe v. MindGeek*, 558 F. Supp. 3d 828, 843 (C.D. Cal. Sept. 3, 2021), is not relevant because it is a case in which no individuals are named as defendants; all claims were against corporate entities only.

Counts VII, VIII and IX: Plaintiff's claims of public disclosure of private facts, intrusion into private affairs, and placing Plaintiff in a false light against Antoon and Tassillo must fail because Plaintiff fails to plead any specific facts to support the elements of any of those counts. Plaintiff's general discussion of their roles as CEO and COO, completely devoid of any allegations of their own tortious conduct, cannot form the basis of individual tort liability. *See Frances T. v. Vill. Green Owners Assn.*, 42 Cal. 3d 490, 503 (1986) ("It is well settled that corporate directors cannot be held vicariously liable for the corporation's torts in which they do not participate. Their liability, if any, stems from their own tortious conduct, not from their status as directors or officers of the enterprise.")

Counts X and XI: Plaintiff's common law tort claim and statutory claim for misappropriation of name and likeness is meritless because she fails to adequately

FERAS ANTOON AND DAVID TASSILLO'S REPLY

allege the elements of a misappropriation claim under common law or under California Civil Code § 3344 against Antoon or Tassillo.

Count XII: Plaintiff inadequately pleads a violation of California Civil Code § 1708.85, which prohibits distribution of private sexually explicit materials, against Antoon or Tassillo because she fails to allege that either "intentionally distribut[e]d" videos or images depicting Plaintiff, as the statute requires, or that either knew that such materials even existed. *See* Cal. Civ. Code § 1708.85.

Count XIII: Plaintiff fails to allege that Antoon or Tassillo personally owed any legal duty to her, much less any acts that would constitute a breach of that duty. Accordingly, her negligence claims against them must fail. Further absent from Plaintiff's SAC are any allegations that a special relationship existed between Plaintiff and either Antoon or Tassillo. Plaintiff's conclusory contention in her Opposition that it was "eminently foreseeable" that MindGeek's business model would lead to a cognizable harm, *see* Opp'n 53, is supported by neither the facts alleged nor the law of this Circuit.

Count XIV: Plaintiff's Unfair Competition Law ("UCL") and False Advertising Law ("FAL") are insufficiently pled because Plaintiff has not alleged any specific unlawful acts by Antoon or Tassillo. In addition, Plaintiff does not allege with particularity any specific misrepresentation made by Antoon or Tassillo, as required by Rule 9(b) because Plaintiff's claim is premised on an alleged misrepresentation. Finally, though Plaintiff states that "[e]ach defendant's participation in the MindGeek venture in violation of the TVPRA serves as a predicate wrong under the UCL," Opp'n 49, as previously detailed, Plaintiff has failed to adequately plead that Antoon or Tassillo specifically violated the TVPRA in the first instance.

Count XV: Plaintiff's claim brought under the California Trafficking Victims Protection Act ("CTVPA"), which provides a civil cause of action for victims "of

18

human trafficking, as defined in Section 236.1 of the Penal Code," must fail because there is no allegation that any defendant took any action against her person.  Cal. Civ. Code § 52.5(a).  The three offenses contained in subsections (a)-(c) of Section 236.1 each require some act against "a person."  Plaintiff's Opposition fails entirely to address this argument, and the SAC is devoid of any alleged facts that could support this claim.

Count XVI:  Mere allegations of underlying tort causes of actions are insufficient to support a conspiracy cause of action.  *See Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.,* 122 F3d 1211, 1228 (9th Cir. 1997); Mot. 36.  Further, Plaintiff is explicit in stating, by omission, that she does not allege civil conspiracy claims against either Antoon or Tassillo.  *See* Opp'n 49 ("[T]he SAC alleges that Redwood, Visa, and Colbeck conspired to commit wrongful acts in violation of various California state statutes…").

## III.    Section 230 of the CDA Bars Plaintiff's Claims

Plaintiff's Opposition fails to meaningfully address any arguments put forth by Antoon and Tassillo in their Motion to Dismiss that Plaintiff's claims against them are barred by Section 230 of the CDA.  The CDA explicitly states that a provider of an interactive computer service (most commonly, websites) cannot be treated as the publisher of information provided by another information content provider.  47 U.S.C. § 230(c)(1).  Moreover, the law in this Circuit is clear that when a plaintiff asserts a claim under Section 230 against a website and treats the website as a publisher of such third-party content, that claim will fail.  *See Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024).  There is no factual dispute that Plaintiff's claims arise from the use of a website, and that videos of Plaintiff were provided by another content provider.

Plaintiff seeks to treat Antoon and Tassillo, among other individual and entity defendants, as publishers because she alleges that those defendants violated a duty

that requires them to monitor third-party content. *See* Mot. 37; s*ee also Barnes v. Yahoo!, Inc.*, 570, F.3d 1096, 1103 (9th Cir. 2009), *as amended* (Sept. 28, 2009). According to Plaintiff, in other words, defendants could have avoided liability for Plaintiff's claims only by reviewing Plaintiff's content, thus making them "publishers" for the purpose of Plaintiff's claims. That is not the law. In her Opposition, Plaintiff sidesteps completely the arguments that Antoon and Tassillo are *not* publishers, and fails to analyze or even make mention of the aforementioned case law.

While Plaintiff argues that MindGeek is a content creator and thus not immune under Section 230, she does nothing to walk back the factual allegations in the SAC to the contrary – namely that the MindGeek entities "incorporated all illegal content into its SEO process just like it did all other legal content." SAC ¶ 113. Plaintiff cites to various means through which defendants' actions allegedly "contribut[ed] to the creation and development of illegal content," *see* Opp'n 54-55, yet Plaintiff's argument is premised on the fact that that those same means were also employed with respect to *legal* content. Plaintiff's allegations are that legal and illegal content were treated the same. *Id.* This is fatal to Plaintiff's argument that Section 230 immunity does not apply.

Furthermore, even if the Court were to hold that MindGeek itself is a content creator, which it is not, both the SAC and Plaintiff's Opposition lack any factual allegations whatsoever that Antoon or Tassillo had any knowledge of or involvement in MindGeek's tortious conduct.

## **CONCLUSION**

The Court should dismiss Antoon and Tassillo from this action, with prejudice.

FERAS ANTOON AND DAVID TASSILLO'S REPLY

1    DATED: December 6, 2024                    Respectfully Submitted,

2                                                By:  /s/ Jonathan S. Sack

3
                                                MORVILLO ABRAMOWITZ GRAND
4                                                IASON & ANELLO PC
                                                Jonathan S. Sack (*pro hac vice*)
5

6                                                *Counsel for Specially Appearing Defendant*
7                                                *David Tassillo*

8
                                                COHEN & GRESSER LLP
9                                                Jason Brown (*pro hac vice*)
                                                Matthew V. Povolny (*pro hac vice*)
10                                               Joanna Chan
11

12                                               *Counsel for Specially Appearing Defendant*
                                                *Feras Antoon*
13

14                                               WIECHERT, MUNK & GOLDSTEIN, PC
                                                David Wiechert (SBN 94607)
15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                21

1

## **CERTIFICATE OF COMPLIANCE**

2

The undersigned counsel of record for specially appearing defendant David

3

Tassillo, certifies that this brief contains no more than twenty (20) pages, as

4

5

required by this Court's October 11, 2024, order, ECF Nos. 473.

6

DATED: December 6, 2024     By:  /s/ Jonathan S. Sack

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I, Igna-Marie Cohen, an employee of Morvillo, Abramowitz, Grand, Iason & Anello, PC, located at 565 Fifth Avenue, New York, NY 10017, declare under penalty and perjury that I am over the age of eighteen (18) and not a party to the above-entitled proceeding.

On December 6, 2024, I served the forgoing documents, described as **SPECIALLY APPEARING DEFENDANTS FERAS ANTOON AND DAVID TASSILLO'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** on all interested parties as follows:

**BY E-MAIL:**  I caused the document(s) to be transmitted electronically by filing the forgoing with the clerk of the District Court using the CM/ECF system, which electronically notifies counsel for all parties.  Additionally, I transmitted the unredacted, sealed versions of this Reply to counsel of record for all parties who have appeared in this action via email.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 6, 2024, at New York, New York.

/s/ *Inga-Marie Cohen*
Igna-Marie Cohen