**PAUL HASTINGS LLP**
JAMES M. PEARL (SB# 198481)
jamespearl@paulhastings.com
KIAURA CLARK (SB# 336314)
kiauraclark@paulhastings.com
1999 Avenue of The Stars, 27th Floor
Los Angeles, California 90067
Telephone: 1(310) 620-5700
Facsimile: 1(310) 620-5899

KRISTOPHER M. HANSEN (*pro hac vice*)
krishansen@paulhastings.com
200 Park Avenue
New York, New York 10166
Telephone: 1(212) 318-6000
Facsimile: 1(212) 752-3310

*Attorneys for Defendants,*
*Redwood Capital Management, LLC, Redwood*
*Master Fund, Ltd, Redwood Opportunity*
*Master Fund, Ltd, Manuel 2018, LLC,*
*Ginogerum, LLC, and White-Hathaway*
*Opportunity Fund, LLC*

*Additional Counsel for Defendants listed on next page.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SERENA FLEITES,

        Plaintiff,

        vs.

MINDGEEK S.A.R.L. a foreign entity; MG
FREESITES, LTD., a foreign entity;
MINDGEEK USA INCORPORATED, a
Delaware corporation; MG PREMIUM LTD, a
foreign entity; MG GLOBAL
ENTERTAINMENT INC., a Delaware
corporation; 9219-1568 QUEBEC, INC., a
foreign entity; BERND BERGMAIR, a foreign
individual; FERAS ANTOON, a foreign
individual; DAVID TASSILLO, a foreign
individual; VISA INC., a Delaware
corporation; REDWOOD CAPITAL
MANAGEMENT, LLC, a Delaware
corporation; REDWOOD MASTER FUND,
LTD, a foreign entity; REDWOOD
OPPORTUNITY MASTER FUND, LTD, a
foreign entity; MANUEL 2018, LLC, a

CASE NO. 2:21-cv-4920

**REDWOOD DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Date:     January 31, 2025
Time:     1:30 p.m.
Place:    Courtroom 9B
Judge:   Hon. Wesley L. Hsu

SAC filed: May 23, 2024

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Delaware corporation; GINGOGERUM, LLC, a Delaware corporation; WHITE-HATHAWAY OPPORTUNITY FUND, LLC, a Delaware corporation; COLBECK CAPITAL MANAGEMENT, LLC, a Delaware corporation; CB MEDIA VENTURES LLC, a Delaware corporation; CB AGENCY SERVICES, LLC, a Delaware corporation; and CB PARTICIPATIONS SPV, LLC, a Delaware corporation,

Defendants.

ADAM M. REICH (SB# 274235)
adamreich@paulhastings.com
EMMA LANZON (*pro hac vice*)
emmalanzon@paulhastings.com
71 South Wacker Drive, 45th Floor
Chicago, Illinois 60606
Telephone: 1(312) 499-6000
Facsimile: 1(312) 499-6100

*Attorneys for Defendants,*
*Redwood Capital Management, LLC,*
*Redwood Master Fund, Ltd,*
*Redwood Opportunity Master Fund, Ltd,*
*Manuel 2018, LLC, Ginogerum, LLC,*
*and White-Hathaway Opportunity Fund, LLC*

# TABLE OF CONTENTS

**Page**

I.    Introduction ....................................................................................... 1

II.   The SAC Should Be Dismissed Because Plaintiff Lacks Article III
      Standing............................................................................................ 2

III.  The SAC Should Be Dismissed Under Rule 12(b)(6) ....................... 5

      A.    Plaintiff has Not Stated a TVPRA Claim Against Redwood ............... 5

      B.    The SAC Fails to State a UCL and FAL Claim Against
            Redwood .............................................................................. 18

      C.    Plaintiff Fails to State a Claim for Civil Conspiracy ........................ 19

IV.   Conclusion...................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acevedo v. eXp Realty, LLC*,
    713 F. Supp. 3d 740 (C.D. Cal. 2024)..................................................... 13

*Associated Gen. Contractors of Cal., Inc. v. Cal. Council of Carpenters*,
    459 U.S. 519 (1983) ............................................................................... 7

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
    2020 WL 4368214 (N.D. Cal. July 30, 2020) ................................. 13, 14

*Bonacasa v. Standard Chartered PLC*
    2023 WL 2390718, at *14 n.23 (S.D.N.Y. Mar. 7, 2023) ...................... 6

*Brill v. Chevron Corp.*,
    2017 WL 76894 (N.D. Cal. Jan. 9, 2017) .............................................. 4

*C.T. v. Red Roof Inns, Inc.*,
    2023 WL 3510879 (M.D. Fla. Mar. 11, 2023).................................... 14

*Craigslist Inc. v. 3Taps Inc.*,
    942 F. Supp. 2d 962 (N.D. Cal. 2013)............................................ 18, 20

*Doe #9 v. Wyndham Hotels & Resorts, Inc.*,
    2021 WL 1186333 (S.D. Tex. Mar. 30, 2021).................................... 14

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
    671 F. Supp. 3d 387 (S.D.N.Y. 2023)..........................................*passim*

*Doe (K.B.) v. G6 Hosp., LLC*,
    2024 WL 4701891 (N.D. Ga. Nov. 5, 2024)...................................... 14

*Doe (L.M.) v. 42 Hotel Raleigh, LLC*,
    2024 WL 4204906 (E.D.N.C. Sept. 16, 2024) ..................................... 5

*Doe (L.M.) v. 42 Hotel Raleigh, LLC*,
    717 F. Supp. 3d 464 (E.D.N.C. 2024) ............................................... 14

*Doe v. Mindgeek USA Inc.*,
    558 F. Supp. 3d 828 (C.D. Cal. 2021)........................... 10, 11, 13, 14

*Does 1-6 v. Reddit, Inc.*,
    51 F.4th 1137 (9th Cir. 2022) ................................................................. 5

*E.S. v. Best W. Int'l, Inc.*,
    510 F. Supp. 3d 420 (N.D. Tex. 2021) ................................................. 14

*Fleites v. MindGeek S.A.R.L.*,
    617 F. Supp. 3d 1146 (C.D. Cal. 2022) ........................................*passim*

*G.G. v. Salesforce.com, Inc.*,
    76 F.4th 544 (7th Cir. 2023) ...................................................... 9, 10, 11

*Holmes v. SIPC*,
    503 U.S. 258 (1992) ................................................................................ 6

*J.C. v. Choice Hotels Int'l, Inc.*,
    2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) ................................. 13, 14

*Lexmark Int'l, Inc. v. State Control Components, Inc.*,
    572 U.S. 118 (2014) ................................................................................ 7

*Louers v. Lacy*,
    2012 WL 5426442 (D. Md. Nov. 6, 2012) ............................................. 6

*Marceau v. Int'l Bhd. of Elec. Workers*,
    2006 WL 1889600 (D. Ariz. July 7, 2006) ............................................ 7

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ............................................................ 2, 3

*Mendia v. Garcia*,
    768 F.3d 1009 (9th Cir. 2014) ............................................................... 4

*Ratha v. Rubicon Res., LLC*,
    111 F.4th 946 (9th Cir. 2024) ................................................... 1, 15, 16

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................................ 2

*T.E. v. Wyndham Hotels & Resorts, Inc.*,
    2024 WL 474400 (S.D. Ohio Feb. 7, 2024) ........................................ 13

*T.S. v. Wyndham Hotels & Resorts, Inc.*,
    2024 WL 3927382 (D. Minn. Aug. 23, 2024) ....................................... 9

- iii -

*Thinking Liberally Media, Inc. v. Orange Juice Blog*,
    2010 WL 11596144 (C.D. Cal. Nov. 19, 2010) ........................................... 19, 20

*United States v. Lennick*,
    18 F.3d 814 (9th Cir. 1994) ............................................................................ 20

**STATUTES**

18 U.S.C. § 1591(a) ............................................................................................. 12

18 U.S.C. § 1595(a) .............................................................................. 10, 15, 16

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 5

1    **I.    INTRODUCTION**

2        Plaintiff's[1] brief treats the law as she wishes it would be, rather than what it is.

3    Her Opposition does nothing to address the fatal deficiencies identified by Redwood

4    and this Court's prior opinion.  Indeed, Plaintiff does not dispute that her beneficiary

5    liability allegations are insufficient under this Court's prior decision, but argues

6    instead that this Court's decision has been "squarely rejected."  *See* Dkt. 480-1

7    ("Opp.") at 7.  That is plainly wrong: the out-of-circuit cases Plaintiff cites are

8    distinguishable and do not undermine this Court's decision or supplant governing

9    Ninth Circuit precedent.  Plaintiff also does not dispute that if ATRA is not

10   retroactive, her conspiracy allegations are insufficient.  Yet her only argument that

11   ATRA is retroactive rests on mischaracterizing the Ninth Circuit's clear holding in

12   *Ratha v. Rubicon Res., LLC*, 111 F.4th 946 (9th Cir. 2024).  Finally, Plaintiff's urging

13   that this Court infer Redwood's agreement and intent to aid in a violation of the

14   TVPRA is based on pure speculation and contrary to established conspiracy case law.

15       The Court should adhere to its prior opinion and controlling Ninth Circuit case

16   law and decline to find beneficiary liability here because: (1) Plaintiff fails to

17   establish *any* relationship (let alone a "continuous business relationship") between

18   Redwood and her trafficker; and (2) Plaintiff alleges no constructive knowledge on

19   the part of Redwood of the *Plaintiff's* sex trafficking.  This Court should also reject

20   Plaintiff's invitation to limit the holding of *Ratha* to attempt liability and dismiss

21   Plaintiff's TVPRA conspiracy claim as barred.  Regardless, this Court should not

22   infer an "agreement" or "intent" to aid in MindGeek's alleged TVPRA violation

23   based upon Redwood's agreement (among many others) *to provide financing* to

24   MindGeek.  Indeed, that is all that Redwood did; Plaintiff's claim that Redwood

25   exercised control over MindGeek is based entirely on typical loan terms addressing

26

27   _____

28   [1] All capitalized terms herein have the same definitions as set forth in the Redwood
     Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss
     Plaintiff's Second Amended Complaint.  (*See* Dkt. 450-6.)

1    borrower ████ that are standard in nearly all loan agreements.  Not only would

2    imposing liability on lenders based on such purported "control" run contrary to

3    established case law, but such an inference would turn decades of lender liability

4    principles on their head.  Finally, because Plaintiff cannot establish beneficiary or

5    conspiracy liability under the TVPRA, her derivative claims under California's

6    consumer protection statutes and common law civil conspiracy should be dismissed.

7    **II.**    **THE SAC SHOULD BE DISMISSED BECAUSE PLAINTIFF LACKS**

8    **ARTICLE III STANDING**

9    To allege the traceability element of Article III standing, Plaintiff must allege

10   a "'line of causation' between [Redwood]'s action and [Plaintiff's] alleged harm that

11   is more than 'attenuated.'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir.

12   2011).  No such "line of causation" exists here because the connection between

13   Redwood's alleged conduct and Plaintiff's injuries involved numerous third parties

14   and the SAC contains no allegations showing that Plaintiff's CSAM would not have

15   been uploaded if Redwood did not exist.  Dkt. 450-6 ("Mot.") at 14-18.  To the

16   contrary, given the ████ of parties that participated in financing for MindGeek

17   (including some of the world's largest asset managers and banks), MindGeek clearly

18   would have obtained financing had Redwood not existed.  *See* Mot. at 8-9.

19   Plaintiff first responds that Congress itself, in enacting FOSTA, conferred

20   Article III standing even if "none existed before."  Opp. at 57-58.  But Plaintiff cites

21   no law to support the assertion that Congress can, let alone did, "confer[] Article III

22   standing for all claims against those who [allegedly] participate in, or benefit from, a

23   trafficking venture and cause harm to sex trafficking victims."  Opp. at 58.  This is

24   unsurprising because "[i]t is settled that Congress cannot erase Article III's standing

25   requirements by statutorily granting the right to sue to a plaintiff who would not

26   otherwise have standing." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

27   Plaintiff next argues that her injuries are "fairly traceable" to Redwood and

28   that Redwood's conduct "need not be the sole cause of Plaintiff's injuries, nor the

sole motivation for sex traffickers to traffic Plaintiff on MindGeek's websites[.]" Opp. at 59. But Plaintiff misses the point. The line of causation is simply too tenuous here, where Plaintiff draws *no connection* between the financing provided by Redwood to MindGeek and the harm Plaintiff suffered at the hands of her traffickers. Nor does Plaintiff adequately connect Redwood's financing of MindGeek, on the one hand, and the upload and dissemination of her CSAM, on the other. She merely alleges a chain of speculation—specifically, that Redwood *could have* "█████████████████████ ███████████████████████████████████████████████████████████████ ███████████████" and that *would have* left MindGeek with "██████████████ ████████████████████████████" *Id.* at 59. This is exactly the type of "hypothetical" and "attenuated" connection that is insufficient for Article III standing. *See Centex Corp.*, 658 F.3d at 1070 ("A causation chain does not fail simply because it has several 'links,' provided those links are 'not hypothetical or tenuous' and remain 'plausib[le].'").

Plaintiff makes much of her unsupported assumption that Redwood had "control" of MindGeek. *See, e.g.,* Opp. at 21 ("the Colbeck syndicate owned Manwin and during the term of the financing *had the ability to control* virtually all aspects of the business and receive the vast majority of its earnings[]") (emphasis added); *id.* at 59 (arguing allegations that Redwood had "██████████████████████████ ███████████████████████████████████" satisfy the traceability requirement) (emphasis added). But she points to no *actual* exercise of control by Redwood over MindGeek. Plaintiff's allegations of control depend instead on loan terms that appear in virtually all lender agreements and allow the lender (here, Redwood acting only with others) ██████████████████████████████████████ ██████████████████████████████████████████████. Following Plaintiff's logic, anyone harmed by any company's violation of the law would have standing to sue any of the company's lenders if the loan agreement has a standard covenant ██ ████████████. Plaintiff, unsurprisingly, points to no case finding that the lenders'

1  right to ███████████ in the event a borrower ███████████ confers the kind of

2  broad Article III standing to sue lenders that is needed here.

3      Plaintiff instead cites to *Brill v. Chevron Corp.*  But *Brill* is easily

4  distinguishable.  In *Brill*, Chevron was alleged to have contributed to financial

5  rewards ultimately provided to terrorists, which were "alleged to have been the single

6  most effective strategy in inciting terrorist acts[]" (the cause of the plaintiffs' harm).

7  *Brill v. Chevron Corp.*, 2017 WL 76894, at *3 (N.D. Cal. Jan. 9, 2017).  The plaintiffs

8  in *Brill* importantly drew "a connection between those rewards [alleged to have been

9  partially funded by Chevron] and the attacks at issue [in the complaint]."  *Id.*  Not so

10  here.  Plaintiff does not allege (nor can she) that Redwood's funding was used to

11  incentivize Plaintiff's trafficking or to monetize child pornography on MindGeek's

12  sites.  The threadbare connection (at best) between Redwood's providing partial

13  funding to MindGeek and Plaintiff's harm due to the dissemination of her CSAM is

14  legions more tenuous than in *Brill*.[2]

15      Finally, Plaintiff argues that this Court's prior Article III holding as to *Visa*

16  applies to the "similar conduct" of Redwood.  Opp. at 60-61.  But if anything, this

17  Court's decision supports Redwood's position.  Emphasizing that "Plaintiff's case

18  focuses on the monetization of child porn after it was made and posted to MindGeek's

19  sites," Judge Carney held that Visa was "unobscured by [] third parties" because it

20  "knowingly provid[ed] the means through which MindGeek monetizes child porn

21  once such content is already produced and posted[]" by "offer[ing] up its payment

22  network" to allow MindGeek's monetization of Plaintiff's videos via

23  "advertisements running alongside it."  *Fleites v. MindGeek S.A.R.L.*, 617 F. Supp.

24  3d 1146, 1155-56, 1158 (C.D. Cal. 2022).  In other words, Article III standing existed,

---

[2] The other cases cited by Plaintiff are likewise distinguishable because the plaintiffs in those cases drew a connection between their harm and the defendants' actions that was not "speculative" or "hypothetical."  *See, e.g.*, *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014) (emphasizing that "[n]one of the links in Mendia's causal chain relies on speculation or guesswork[.]").

REDWOOD DEFENDANTS' REPLY ISO MOTION TO DISMISS

under Judge Carney's view, because Visa provided "the mechanism through which MindGeek earns profit" from child pornography.  *Id.* at 1156.  No similar findings could be made against Redwood, which merely issued a loan to MindGeek and had *no* connection to the "monetization of child porn after it was made and posted to MindGeek's sites[.]"  *See id.* at 1155*; see* Mot. at 16 n.7.

### III.   THE SAC SHOULD BE DISMISSED UNDER RULE 12(b)(6)

#### A.   Plaintiff Has Not Stated a TVPRA Claim Against Redwood.

Plaintiff fails to state a TVPRA claim against Redwood for the reasons stated in Redwood's Motion and set forth below.  Additionally, Section 230 of the CDA provides ICSPs such as MindGeek broad immunity from liability for content posted to their websites by third parties.  *See* Mot. at 20-21.  If this Court finds MindGeek immune from TVPRA liability under Section 230, then Redwood cannot be liable.

Plaintiff argues that Section 230 does not immunize Redwood because her claims "do not treat [Redwood] as 'the publisher or speaker' of third-party content." *See* Opp. at 57.  But "a civil TVPRA venture must include at least one party which criminally violated a statute for which the TVPRA provides civil recourse[.]"  *See, e.g.*, *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 2024 WL 4204906, at *4 (E.D.N.C. Sept. 16, 2024).  And if the Court holds that MindGeek is entitled to CDA immunity that necessarily entails a finding that MindGeek did not criminally violate the TVPRA. *See, e.g.*, *Does 1-6 v. Reddit, Inc*., 51 F.4th 1137, 1137 (9th Cir. 2022) (plaintiffs invoking FOSTA must "plausibly allege that website's own conduct violated federal criminal child sex trafficking statute").   Without MindGeek's alleged criminal conduct then, Plaintiff cannot establish "*MindGeek's* trafficking venture"—the civil TVPRA venture of which Redwood is allegedly a part.  *See* SAC ¶¶ 48-53 (describing "*MindGeek's* trafficking venture") (emphasis added), 246 (alleging Redwood participated in MindGeek's trafficking venture).

#### 1.   <u>Plaintiff Failed to Allege Proximate Cause.</u>

Plaintiff lacks statutory standing to pursue her TVPRA claims against

Redwood because she fails to adequately allege that her injuries were proximately caused by Redwood's alleged conduct.  Mot. at 19, 21-23.  Specifically, the SAC does not allege, because it cannot, that Plaintiff's injury "flow[ed] directly" from any alleged conduct on the part of Redwood.  *See id.* at 23.

Plaintiff does not dispute that she does not—and cannot—allege that Redwood has had any connection with her or her traffickers.  Plaintiff instead responds that she is not required to plead proximate cause with respect to her TVPRA and conspiracy claims and that, regardless, "the SAC alleges the requisite link between defendant's conduct and Plaintiff's harm."  Opp. at 62.  Plaintiff is incorrect on both counts.

Ignoring the Supreme Court and Ninth Circuit precedent cited by Redwood, Plaintiff instead cites two out-of-circuit cases for the proposition that the TVPRA does not require proximate cause because it is a "remedial statute" that imposes "secondary liability."  Those cases do not so hold.  In *Louers v. Lacy*, 2012 WL 5426442, at *2-3 (D. Md. Nov. 6, 2012), for instance, the District of Maryland construed a *state statute*.  *See id.* at *3 (declining to read a proximate cause requirement into state statute and declining to rely on a case "which applies solely to a federal statute, to establish a new interpretation of state law").  And the court in *Bonacasa v. Standard Chartered PLC* held merely that a different statute (JASTA) "disclaimed any proximate cause requirement."  *See id.*, 2023 WL 2390718, at *14 n.23 (S.D.N.Y. Mar. 7, 2023) (emphasizing Congress' explicit "directive that JASTA liability can flow 'indirectly'").  The TVPRA contains no such disclaimer.

Plaintiff also seeks to distinguish the numerous Supreme Court and Ninth Circuit cases reading a proximate-cause, directness requirement into federal statutes as irrelevant because, "unlike the statutes at issue in the cases cited by defendants, the TVPRA is a remedial statute that calls for liberal construction."  Opp. at 61.  Here, again, she misses the mark.  The statutes at issue in those cases too were broad, remedial statutes that are liberally construed.  *See, e.g.*, *Holmes v. SIPC*, 503 U.S. 258, 274 (1992) (interpreting RICO as imposing a proximate-cause, directness

- 6 -

requirement, despite being "liberally construed to effectuate its remedial purposes");

*Associated Gen. Contractors of Cal., Inc. v. Cal. Council of Carpenters*, 459 U.S. 519, 530 (1983) (holding the same with respect to antitrust laws). Yet the Supreme Court still interpreted the statutes to incorporate a proximate cause requirement.

Plaintiff next argues that the SAC "alleges the requisite link between [Redwood's] conduct and Plaintiff's harm" because this Court "has already determined that *Visa's* support and facilitation of MindGeek's monetization of sex trafficking was the proximate cause of Plaintiff's injuries." Opp. at 62 (emphasis added). *First*, the Court did not find Visa's conduct was the "proximate cause of Plaintiff's injuries," only that Visa's argument was "unpersuasive to the Court at this stage of the case." *See Fleites*, 617 F. Supp. 3d at 1164-65. *Second*, the facts specific to Visa are easily distinguishable from the allegations against Redwood. While Visa allegedly processed payments for advertisements placed alongside CSAM videos (including Plaintiff's), *see Fleites*, 617 F. Supp. 3d at 1164-65, Redwood is only alleged to have provided partial financing to borrowers who are not Plaintiff or her trafficker.[3] *See* Mot. at 22-23. Plaintiff's alleged harm—*e.g.*, depression, suicide attempts, and other hardships "precipitated by the viral dissemination of her nude video," SAC ¶¶ 455-57—is simply "too remote" from Redwood's alleged conduct, and she therefore fails to satisfy proximate cause. *See Lexmark Int'l, Inc. v. State Control Components, Inc.*, 572 U.S. 118, 133 (2014).

## 2. Plaintiff Fails to Establish Redwood's Beneficiary Liability.

### a. Redwood did not "Participate in a Venture."

#### i. Judge Carney's Decision is Controlling.

As Redwood showed in its Motion, the SAC does not establish that Redwood "participated in a venture" that harmed Plaintiff. Mot. at 24-26. Judge Carney

---

[3] Plaintiff also argues that Redwood's "considerable influence and control over MindGeek's business" establish proximate cause." Opp. at 62. But, unlike in *Marceau v. Int'l Bhd. of Elec. Workers*, 2006 WL 1889600 (D. Ariz. July 7, 2006), Plaintiff alleges no instance of *actual control* over MindGeek's business.

explicitly held, in dismissing the beneficiary liability claim against Visa, that Fleites did not plausibly allege participation as to Visa because she failed to allege Visa had "any direct interaction with [her], her direct traffickers, or her videos[]" and therefore could not be liable for "knowingly *participating* in the sex trafficking venture that harmed Plaintiff." Mot. at 24 (citing *Fleites*, 617 F. Supp. 3d at 1161-62). This same rationale applies with full force to Redwood. Mot. at 24-25.

Plaintiff does not disagree. She instead responds that Judge Carney's prior "decision addressing the FAC's beneficiary liability claim against Visa[]" was "squarely rejected by two recent courts following Judge Carney's order." Opp. at 7. But the cases Plaintiff cites do not contradict or even mention Judge Carney's prior order in this case. This Court therefore should not deviate from its prior decision.

Plaintiff first cites to the Southern District of New York's decision in *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 406-07 (S.D.N.Y. 2023). In that case, the court—in discussing the standard for "participation" under the *criminal* sex trafficking provision—held that "even if participation requires [active] engagement [that furthered the sex trafficking venture]," the plaintiffs "adequately allege[d] that defendants [JP Morgan and Deutsche Bank] so participated *in Jeffrey Epstein's sex-trafficking venture*" where they alleged, *inter alia*, that: (i) the banks structured cash withdrawals to not appear suspicious so as to avoid alerting authorities; (ii) the banks "delayed filing suspicious activity reports concerning Epstein's activities[]"; and (iii) JP Morgan "actually trafficked women and girls for Jeffrey Epstein through its subsidiary" on the company's private jet. *Id.* at 405-406 (emphasis added). "In short," the court found "plaintiffs allege that both JP Morgan and Deutsche Bank *went well beyond merely providing their usual services to Jeffrey Epstein and his affiliated entities.*" *Id.* at 406 (emphasis added). This is a far cry from what Plaintiff alleges here. The SAC contains no allegation of actual trafficking, structuring, concealment, or any other activity by Redwood other than providing

"usual [lending] services" to MindGeek.[4]  *See* Mot. at 6, 10-11.  This inapposite and out-of-circuit case also in no way "squarely rejected" Judge Carney's holding that participation in the venture that harmed Plaintiff is required for civil beneficiary liability under the TVPRA.  *Deutsche Bank* does not even discuss such a requirement. *See Deutsche Bank*, 671 F. Supp. 3d at 405-406 (discussing "participation" under Section 1591(a)(2)).

Plaintiff next relies on the Seventh Circuit's non-binding decision in *G.G. v. Salesforce.com, Inc*., 76 F.4th 544 (7th Cir. 2023).  While the Seventh Circuit did not read "participation" to require "direct participation in the sex trafficking itself" in *Salesforce*, it held that a plaintiff must allege a "continuous business relationship" between the "participant" and "the *trafficker*" to establish "participation."  *See id.* at 559 (emphasis added).  Plaintiff does not even try to allege Redwood had any contact with *her trafficker*; she simply alleges a business relationship between Redwood *and MindGeek*.  The relationship here is thus one step removed from what the Seventh Circuit addressed in *Salesforce*.

> ### ii.  Plaintiff Does Not Allege Participation in a Venture Because She Does Not Allege a "Direct Association" or "Continuous Business Relationship" Between Redwood and Plaintiff's Traffickers.

Regardless of whether participation in Plaintiff's specific venture is required, the SAC does not establish "participation" because it does not allege a direct association or continuous business relationship *between Redwood and Plaintiff's*

---

[4] Plaintiff states that *Deutsche Bank* "rejected" the argument that "usual [banking] services" cannot give rise to TVPRA liability, *see* Opp. at 27, but it actually found adequate allegations that defendants went "*well beyond* merely providing their usual [banking] services." *Deutsche Bank*, 671 F. Supp. 3d at 406 (emphasis added).  In fact, other courts have held that "an entity that does nothing more than 'engag[e] in an ordinary buyer-seller transaction' with a venture—that is, simply provide to the venture the same products and services that it provides the general public—does *not* 'participate' in that venture.'" *T.S. v. Wyndham Hotels & Resorts, Inc*., 2024 WL 3927382, at *10 (D. Minn. Aug. 23, 2024) (citing *Doe 1 v. Apple Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024) (emphasis added).

*traffickers*. Mot. at 19-20, 24-26. This Court held—and other courts in the Ninth Circuit (and around the country) agree—that at a minimum "participation" requires a plaintiff to allege the defendant's "continuous relationship with or tacit agreement with *Plaintiff's [] traffickers*[.]" *Fleites*, 617 F. Supp. 3d at 1162 (emphasis added). *See also* cases cited at Mot. at 25.

Plaintiff agrees that "[w]hen there is no 'direct association' between a trafficker and the defendant," a plaintiff must "allege at least a showing of a *continuous business relationship*" to sufficiently allege "participation." *See* Mot. at 25; Opp. at 6, 9. But she conspicuously overlooks that *the "continuous business relationship" that must be established is between the defendant and the trafficker—not between two "participant"[5] defendants*. *See* Opp. at 6 (selectively quoting *Doe v. MindGeek* and *Salesforce*, and omitting the portions of each quotation requiring that the relationship be *between the trafficker and the participant Defendant*).[6]

Plaintiff does not cite a *single case* that holds a "continuous business relationship" between two participant defendants establishes "participation" under Section 1595. Plaintiff first cites *MindGeek USA*, 558 F. Supp. 3d at 834 as a purported example where "nearly identical allegations [were found] sufficient to meet the participation element." Opp. at 6. That case is inapposite. In *MindGeek*

---

[5] Section 1595 creates two kinds of liability: perpetrator liability and participant liability. A plaintiff may bring a civil TVPRA action against: (1) the perpetrator of the underlying TVPRA violation (a "perpetrator" defendant"); or (2) "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter" (a "participant" defendant). *See* 18 U.S.C. § 1595(a).

[6] *See Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 837 (C.D. Cal. 2021) ("In the absence of direct association with traffickers, Plaintiff must 'allege at least a showing of a continuous business relationship *between the trafficker and [Defendants]* such that it would appear that *the trafficker and [Defendants]* have established a pattern of conduct or could be said to have a tacit agreement.'"); *see Salesforce.com, Inc.*, 76 F.4th at 559 ("a plaintiff may sufficiently allege such 'culpable assistance' by showing 'a continuous business relationship' *between the participant and the trafficker*.") (emphases added).

*USA*, a CSAM victim sued certain MindGeek defendants under a beneficiary theory of liability after an explicit video was posted to their websites without her knowledge or consent. *See id.* 558 F. Supp. 3d at 838-39. The court found the allegations that the MindGeek defendants "generally enable[d] child sex trafficking on their platforms," reviewed and approved "at least one of the child pornography videos of Plaintiff[,]" "failed to remove child pornography videos depicting the plaintiffs," and "enter[ed] into agreements with traffickers to share proceeds of advertisement revenue earned from child pornography videos posted to their websites[]" rendered it plausible that *the MindGeek defendants* "had 'a continuous business relationship' with *[plaintiff's] traffickers and . . . ex-boyfriend*." *Id.* at 837-38 (emphasis added). In other words, the court found that plaintiff plausibly established a "continuous business relationship" between the defendant *and plaintiff's traffickers.* Similar allegations about defendants' approval of allegedly illegal conduct, sharing of proceeds with traffickers, and failure to remove content are not made and cannot be alleged here against Redwood.

Plaintiff also cites to *Salesforce* to support its argument that Redwood participated in "the MindGeek venture." *See* Opp. at 9. This case too is inapposite. In *Salesforce,* the plaintiffs sought to hold Salesforce liable as a participant under Section 1595 for "knowingly benefit[ing] from its participation in what it knew or should have known was Backpage's sex-trafficking venture." Critically, the plaintiffs in *Salesforce* alleged that Defendant Backpage *was itself a sex trafficker* (or "perpetrator"), rather than a "participant." *See Salesforce*, 76 F.4th at 561. The court therefore concluded that plaintiffs "plausibly alleged a 'continuous business relationship'" between the participant defendant (Salesforce) and the trafficker (Backpage), because Salesforce provided *trafficker* Backpage with "'targeted solutions addressed to the needs of Backpage's business,' repeatedly assessed Backpage's 'operational needs,' and provided 'active, ongoing support' that was 'tailored' to those needs." *See id.* at 559-60. The court held, importantly, that:

"[a]ccording to the allegations in plaintiffs' complaint, *Backpage was also a sex trafficker* [in addition to plaintiff's street-level traffickers]. Contrary to Salesforce's assumptions, therefore, Salesforce was not one step removed from G.G.'s traffickers. It was in a direct, prolonged, and supportive contractual relationship with one of those sex traffickers—Backpage." *Id.* at 561 (emphasis added).

Unlike Salesforce, Redwood *is* at least "one step removed from [Plaintiff's] traffickers." *Id.* Plaintiff explicitly alleges that both Redwood and MindGeek are "participant" defendants. *See, e.g.*, Opp. at 11 ("As detailed below . . . the SAC states a claim for *beneficiary liability* against MindGeek, Redwood, Colbeck, and Visa.") (emphasis added). Plaintiff does not plead—nor can she[7]—that MindGeek is a sex trafficker. Yet Plaintiff devotes her Opposition to arguing that Redwood has a "continuous business relationship" *with MindGeek*. *See* Opp. at 5-9.

In order to establish "participation," the alleged "continuous business relationship" must be between the defendant (here, Redwood) and Plaintiff's *trafficker* (here, Plaintiff's ex-boyfriend and/or the unidentified "older male"). But, as detailed in Redwood's Motion, Plaintiff fails to plead *any* facts in the SAC linking Redwood to *her traffickers* (her ex-boyfriend and the older male). Mot. at 26. Plaintiff does not contend otherwise in her Opposition. Therefore, Plaintiff has not established that Redwood had a "direct association" or "continuous business relationship" with *her traffickers*, as is unambiguously required by case law—

---

[7] Fleites cannot establish that "MindGeek bears direct trafficker liability" because she "does not allege that her videos were posted in the form of an advertisement to users that she might be available for future sex acts." *See Fleites,* 617 F. Supp. 3d at 1159-60 (finding Fleites failed to plead direct trafficker liability). *See also* 18 U.S.C. § 1591(a) (requiring knowledge that "means of force, threats of force, fraud, [or] coercion . . . *will be used to cause the person to engage* in a commercial sex act") (emphasis added). In this case, "the direct traffickers include Plaintiff's ex-boyfriend and the unnamed older man[,]" as "these men both solicited or enticed Plaintiff to commit a sex act knowing she was underage." *See Fleites* at 1160.

including the case law on which Plaintiff herself relies.[8]

### b. The SAC Fails to Allege that Redwood Knew or Should Have Known of Plaintiff's Sex Trafficking.

The SAC also fails to plausibly allege that Redwood "knew or should have known" of *Plaintiff's sex trafficking*, which this Court has already held is a necessary precondition to liability. Mot. at 26-28. *Fleites,* 617 F. Supp. 3d at 1162 (dismissing TVPRA claim against Visa because plaintiff failed to allege "any knowledge – constructive or otherwise – of Plaintiff, her videos, or her age in the videos").

Courts within the Ninth Circuit have consistently required constructive knowledge of the *specific plaintiff's* sex trafficking to satisfy the "knowledge" prong of beneficiary liability. *See* Mot. at 26-28. *See also Mindgeek USA,* 558 F. Supp. 3d at 839 (holding that plaintiff "sufficiently allege[d] the third element of her Section 1595 claim, that Defendants 'knew or should have known that [p]laintiff[ ] w[as] the victim[] of sex trafficking at the hands of user[] who posted the content[.]'"); *J.C.,* 2020 WL 6318707, at *4-7; *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *6 (N.D. Cal. July 30, 2020).

Relying on the same two non-binding cases from the Southern District of New York (*Deutsche Bank*) and the Seventh Circuit (*Salesforce*), Plaintiff contends that knowledge as to a specific plaintiff's trafficking is not required. But the out-of-Circuit cases she relies on provide no basis to deviate from Judge Carney's ruling.

---

[8] None of the other cases Plaintiff cites save her claim, as each likewise underscores that that the "continuous relationship" must be between the civil defendant and the *trafficker*. *See Acevedo v. eXp Realty, LLC,* 713 F. Supp. 3d 740, 783 (C.D. Cal. 2024) ("a plaintiff must allege *the defendant* had a direct association or a business relationship *with their trafficker . . .*"); *J.C. v. Choice Hotels Int'l, Inc.,* 2020 WL 6318707, at *7 (N.D. Cal. Oct. 28, 2020) (finding that plaintiff "connected the dots" between her sex trafficking and the defendants, where she pled that defendants provided lodging to plaintiff's traffickers); *T.E. v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 474400, at *6 (S.D. Ohio Feb. 7, 2024) (holding that participation in a venture under § 1595 requires "at least a showing of a continuous business relationship between *the trafficker and the [defendant] hotels*[.]") (emphasis added).

In fact, *Deutsche Bank* recognized that other courts *have required* plaintiff-specific knowledge, but held that out-of-circuit decisions that require such knowledge "do not control this Court." *See Deutsche Bank*, 671 F. Supp. 3d at 406-07. *See also Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 468 & n.6 (E.D.N.C. 2024) (citing the "circuit split" regarding whether the "knowledge" and "participation" elements of beneficiary liability are "victim-specific"). Plaintiff identifies no reason why this Court should deviate from Judge Carney's prior ruling given that it is supported by other courts within the Ninth Circuit (and elsewhere in the country). *See* Mot. at 26-28.

Plaintiff also argues that "cases defendants rely on are not persuasive here because they concern trafficking ventures involving few victims, sometimes only the plaintiff herself." Opp. at 9. Even if true,[9] the cases cited by Redwood "did not differentiate [their] analysis based on how the venture was defined." *See Doe (K.B.) v. G6 Hosp., LLC,* 2024 WL 4701891, at *2 (N.D. Ga. Nov. 5, 2024). *See also, e.g.*, *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828 (C.D. Cal. 2021); *J.C. v. Choice Hotels Int'l, Inc*. 2020 WL 6318707 (N.D. Cal. Oct. 28, 2020); *B.M.*, 2020 WL 4368214, at *6. Rather, the cases all confirm that a plaintiff seeking to hold a defendant liable as a beneficiary under the TVPRA must show actual or constructive knowledge of *her* trafficking. The court should require the same showing here.[10]

---

[9] Not all of the ventures in the cases cited by Defendants were defined as only "few victims" or the "plaintiff herself." *See, e.g., Doe #9 v. Wyndham Hotels & Resorts, Inc*., 2021 WL 1186333, at *1 (S.D. Tex. Mar. 30, 2021) (alleging "participation in a venture involving the trafficking, harboring, and maintenance of sex trafficking *victims* in exchange for financial benefits") (emphasis added); *E.S. v. Best W. Int'l, Inc*., 510 F. Supp. 3d 420, 424 (N.D. Tex. 2021) ("Plaintiff asserts that her trafficker controlled a ring of women who were prostituted in Defendants' brand hotels.").

[10] Even if this Court considers out-of-circuit precedent (as Plaintiff urges it to do), there is not unanimous support for Plaintiff's position. In fact, courts from other circuits have adopted the same reasoning as Judge Carney. *See, e.g., K.B.*, 2024 WL 4701891, at *2 (requiring plaintiff-specific knowledge); *C.T. v. Red Roof Inns, Inc*., 2023 WL 3510879, at *5 (M.D. Fla. Mar. 11, 2023) (same).

REDWOOD DEFENDANTS' REPLY ISO MOTION TO DISMISS

Plaintiff's failure to establish any actual or constructive knowledge by Redwood of "*Plaintiff, her videos, or her age in the videos*[]" dooms her beneficiary claim. *See Fleites*, 617 F. Supp. 3d at 1162.

### 3. Plaintiff Fails to Allege a Conspiracy Claim Against Redwood Under the TVPRA.

#### a. The TVPRA Conspiracy Claim Against Redwood is Barred by Ninth Circuit Law.

Redwood's Motion established that Plaintiff's TVPRA conspiracy claim is definitively barred by the Ninth Circuit's decision in *Ratha*. Mot. at 28-29. *Ratha* unambiguously holds that ATRA—which amended Section 1595 to provide a cause of action for whoever "*attempts **or** conspires to benefit,* financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of" the TVPRA, *see* 18 U.S.C. 1595(a) (emphasis added)—"*does not apply to pre-enactment conduct[.]*" *Ratha*, 111 F.4th at 969 (emphasis added). Because ATRA does not apply to pre-enactment conduct, *Ratha*, 111 F.4th at 969, Redwood cannot be liable for conspiracy liability based on conduct that allegedly occurred prior to ATRA's enactment. *See* Mot. at 28-29.

Plaintiff puzzlingly argues that *Ratha*'s holding does not apply because "*Ratha* addressed attempt liability, not civil conspiracy." Opp. at 37. While the plaintiffs in *Ratha* asserted attempt as opposed to conspiracy liability, *Ratha*'s holding and analysis preclude chopping up the phrase "attempts or conspires" into separate components for the retroactivity analysis. In *Ratha,* the court first analyzed whether the *statute as a whole* has retroactive effect—which included an analysis of "textual indications" from the amendment *as a whole. See, e.g.*, *Ratha,* 111 F.4th at 963 ("*ATRA* contains no 'express command' to apply *the statute* retroactively to events that occurred before *its enactment*. If it were so applied, *ATRA would 'increase a party's liability for past conduct,'* . . . *because it allows a civil penalty to be assessed on **a new class of defendants**: those who attempt **or conspire to benefit from** a*

*TVPRA violation*") (emphasis added); *see id.* at 967 ("Other than the reference to *the amendment* as a 'clarifying update' in the title, there are no other textual indications from Congress that it extended to restore the language of §1595(a) as enacted in the TVPRA to what *the statute* had always meant") (emphasis added).  After conducting this textual analysis, the court concluded that "*ATRA does not apply to pre-enactment conduct, including* [but not limited to] *the conduct that is the basis of plaintiffs' claims.*"  *Id.* at 969 (emphasis added).  Plaintiff completely ignores the Ninth Circuit's specific holding that "ATRA does not apply to pre-enactment conduct," which is conclusive here.  Nothing in the Ninth Circuit's analysis or holding limited *Ratha's* applicability to attempt liability.

Plaintiff next argues that "*[p]rior to ATRA*, numerous circuit and district courts have concluded that section 1595's civil liability provision extends to conspiracy claims under section 1594." Opp. at 38.  While these cases may have (prior to *Ratha*) supported the proposition that a perpetrator's conspiracy to violate the TVPRA is actionable under Section 1595, not one of the cases cited by Plaintiff suggest that conspiring to benefit from *another's violation of the TVPRA* was civilly actionable under Section 1595(a) before ATRA.  The Ninth Circuit itself addressed many of the exact cases cited by Plaintiff and held that they "do not evidence any judicial difficulty interpreting the TVPRA[]" such that ATRA may have "clarified what the TVPRA had meant all along[.]" *See Ratha* 111 F.4th at 963-65.

Finally, Plaintiff argues that ATRA's "[h]istory [c]onfirms [its] [r]etroactive [i]ntent." *See* Opp. at 39.  But, again, this exact same argument was addressed and rejected by the Ninth Circuit in *Ratha.  See Ratha,* 111 F.4th at 967-69.  *Ratha* is binding on this Court, and Plaintiff's claim for civil conspiracy liability based on Redwood's alleged conduct prior to 2023 must therefore be dismissed.

### b.   The Allegations in the SAC Do Not Establish a Conspiracy Claim Against Redwood.

Independent of *Ratha*, Plaintiff's claim for conspiracy liability against

- 16 -

Redwood fails because Plaintiff does not allege that Redwood agreed to or intended to violate the TVPRA.  Mot. at 20, 30-32.  Plaintiff asserts that an agreement "may be inferred from the defendant's acts pursuant to the scheme, or other circumstantial evidence," and then simply repeats her argument that Redwood's partial provision of financing "to grow and operate [MindGeek's] business" coupled with alleged "aware[ness] of the illegality of the MindGeek venture" is sufficient to "infer" an agreement to "assist MindGeek in monetizing child pornography."  Opp. at 42-43. Plaintiff, however, cites to *no* case law inferring an agreement from acts similar to those alleged to have been taken by Redwood here.[11]

Plaintiff also fails to plausibly plead Redwood's intent to violate the TVPRA. She argues that Redwood's "motive or intent to financially benefit from sex trafficking may be inferred from the same circumstantial evidence that established their agreement."  Opp. at 44.  Once again, however, Plaintiff cites to no case law inferring such an intent based on remotely similar facts.

The only substantive case Plaintiff cites in support of her conspiracy arguments is this Court's earlier decision in *Fleites* as to Visa.  But, again, Judge Carney found a potential conspiracy claim against Visa on distinct allegations which do not apply to Redwood.  Judge Carney stressed that Visa's intent to aid in MindGeek's criminal act could be inferred because Visa's alleged conduct was "intertwined with MindGeek's criminal act"—specifically, MindGeek was "being sued for knowingly monetizing child porn[,]" and "Visa's act of continuing to recognize MindGeek as a merchant [was] *directly linked* to MindGeek's criminal act, as Visa's act *served to keep open the means through which MindGeek completed its [monetization of child*

---

[11] Plaintiff attempts to distinguish her SAC from *Deutsche Bank* on the grounds that "[t]he SAC does not allege that Redwood and Colbeck conspired to commit sex trafficking; it alleges an agreement to knowingly benefit financially from sex trafficking."  Opp. at 43.  But the same logic applies – even if Redwood "did indeed agree to provide [financing]" to MindGeek, that agreement to provide financing is "different from an actual agreement to [benefit from] a sex-trafficking venture." *Deutsche Bank*, 671 F. Supp. 3d at 412.

*porn].*" *Fleites*, 617 F. Supp. 3d at 1164 (emphases added). *See also* Opp. at 2 ("MindGeek *monetized this content and traffic through advertisements and subscriptions that were processed through credit card companies, like defendant Visa*, which was aware of the inextricably intertwined use of child pornography and trafficked content in MindGeek's business model[.]") (emphasis added). This decision does not support an inference that *Redwood* intended to aid in MindGeek's criminal conduct. Redwood is not alleged to have "knowingly provided the tool used to complete [MindGeek's] crime [of 'knowingly monetizing child porn']." *Fleites*, 617 F. Supp. 3d at 1164. Redwood is merely alleged to have provided partial financing to MindGeek—an action untethered to MindGeek's alleged "criminal act." The "bridge between [Redwood's] conduct"—providing partial financing—and an inference that Redwood intended to assist MindGeek in knowingly benefiting from sex trafficking is therefore "too far" and does not support conspiracy liability. *Compare Fleites*, 617 F. Supp. 3d at 1164, *with Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 982 (N.D. Cal. 2013). *See* Mot. at 31-32.

**B.    The SAC Fails to State a UCL and FAL Claim Against Redwood.**

Plaintiff's Opposition fails to save her UCL and FAL claims against Redwood from dismissal. Plaintiff clarifies in her opposition that her FAL claim against Redwood is based on "false claims" or "fraudulent omissions" on the part of *other Defendants*. *See* Opp. at 50 n.30 (citing portions of the SAC describing "false statements" or "misrepresentations" allegedly made by MindGeek and/or the Individual Defendants). Plaintiff does not explicitly address Redwood's argument that her FAL claim "rests exclusively on allegations of misconduct . . . *which do not apply to Redwood*[,]" Mot. at 33-34, but by her own admission, none of the conduct underlying her FAL claim "aris[es] from" any false claim, misrepresentation, or omission on the part of the Redwood. *See id.* Her claim under the FAL must therefore be dismissed. *See* Mot. at 32-34.

As for her UCL claim, Plaintiff clarifies that it is based on the statute's "unlawful" prong. Opp. at 49. But as explained in Section III.A, Plaintiff fails to state a claim against Redwood under the TVPRA. Her "borrowed" claim under the UCL based on that alleged violation must therefore be denied. *See* Mot. at 34-36.

### C. Plaintiff Fails to State a Claim for Civil Conspiracy.

Finally, Plaintiff's civil conspiracy claim must be dismissed. Plaintiff argues that "the elements of common law civil conspiracy are the same as those of conspiracy to violate the TVPRA," and so the SAC adequately alleges Redwood "conspired to commit wrongful acts in violation of various California state statutes[]" for the same reasons addressed in connection with her 1594(a) claim. Opp. at 49.

But, for the reasons set forth in Redwood's Motion and in Section III.A.4 *supra*, Plaintiff does not plead an agreement or intent by Redwood to violate the TVPRA. Plaintiff also ignores Redwood's citation to *Orange Juice Blog*, which unequivocally holds that even "actual knowledge of the planned tort, without more, is insufficient to serve as the basis for a conspiracy claim," as "[k]nowledge of the planned tort must be combined with *intent to aid in its commission*." *Thinking Liberally Media, Inc. v. Orange Juice Blog*, 2010 WL 11596144, at *5 (C.D. Cal. Nov. 19, 2010) (emphasis added). Simply put, a plaintiff cannot rely "solely on speculation and evidence of . . . knowledge" to establish intent. *Id.* at *6.

Plaintiff also fails to establish intent. In her Opposition, Plaintiff argues merely that Redwood's "motive or intent to financially benefit from sex trafficking *may be inferred* from the same *circumstantial evidence that established their agreement*." Opp. at 44 (emphasis added). But she offers *no allegations* supporting Redwood's agreement or intent to aid in a violation of the TVPRA. Plaintiff states that Redwood's "intent" to aid in the wrongful activity is "evidenced by [its] decision to finance the venture with knowledge of its illegal activities, its decision to continue to do so . . . ███████████████████████████████████████████████ ████████████ . . . ████████████████████████████████████████████." Opp.

- 19 -

at 45.  Not only does this ignore the Agent's (as instructed by Redwood and other lenders) ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████, *see* Mot. at 13 and Dkt. 450-4, but "simple knowledge, approval of, or acquiescence in the object or purpose of a conspiracy, *without an intention and agreement to accomplish a specific illegal objective, is not sufficient*."  *United States v. Lennick*, 18 F.3d 814, 818 (9th Cir. 1994) (emphasis added).  Plaintiff's allegations simply do not "plausibly suggest that [Redwood] ever *intended* to assist [MindGeek] in the alleged wrongful conduct" in the first place.  *See Craigslist*, 942 F. Supp. 2d at 982 (emphasis added).  Rather, her allegations, at most, suggest that Redwood provided financing to MindGeek pursuant to routine financing agreements despite "knowledge [] of" MindGeek's illegal activity (allegations which Redwood strenuously disputes).  This is insufficient and Plaintiff's rank "speculation" about Redwood's intent does not forestall dismissal.[12] *See Orange Juice Blog*, 2010 WL 11596144, at *5-6.

Finally, Plaintiff ignores Redwood's argument that a conspiracy claim "allows tort recovery only against a party who already owes [a] duty" to Plaintiff.  Mot. at 38-39.  Because Redwood did not, and does not, owe any duty to Plaintiff under California law, Plaintiff's civil conspiracy claim must be dismissed.  *See id.*

## IV.    CONCLUSION

For the foregoing reasons, Redwood respectfully requests that the Court dismiss this action against Redwood with prejudice.

---

[12] Plaintiff argues that Judge Carney properly held that the Court could "comfortably infer *Visa* intended to help MindGeek monetize child porn *from the very fact that Visa continued to provide MindGeek the means to do so* and knew MindGeek was indeed doing so."  Opp. at 46 (citing *Fleites*, 617 F. Supp. 3d at 1164) (emphasis added).  But, as discussed at length in the Motion and this Reply, Redwood is not similarly situated to Visa.  Critically, Redwood did not "provide[] MindGeek *the means to [monetize child porn*]," which was the basis on which the Court "infer[red] . . . inten[t][]."  *See Fleites*, 617 F. Supp. 3d at 1164 (emphasis added).

DATED:  December 6, 2024          **PAUL HASTINGS LLP**


By: */s/ James M. Pearl*
         JAMES M. PEARL

*Attorneys for Defendants Redwood*
*Capital Management, LLC, Redwood*
*Master Fund, Ltd, Redwood Opportunity*
*Master Fund, Ltd, Manuel 2018, LLC,*
*Ginogerum, LLC, and White-Hathaway*
*Opportunity Fund, LLC*

REDWOOD DEFENDANTS' REPLY ISO MOTION TO DISMISS

1

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Redwood Capital Management, LLC, Redwood Master Fund, Ltd, Redwood Opportunity Master Fund, Ltd, Manuel 2018, LLC, Ginogerum, LLC, and White-Hathaway Opportunity Fund, LLC, certifies that this brief contains 20 pages and 6,993 words, which complies with the 20-page limit set by court order dated August 2, 2024.


DATED:  December 6, 2024          **PAUL HASTINGS LLP**


By  */s/James M. Pearl*
JAMES M. PEARL

REDWOOD DEFENDANTS' REPLY ISO MOTION TO DISMISS