DREW TULUMELLO (#196484)
drew.tulumello@weil.com
MARK A. PERRY (#212532)
mark.perry@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: 202 682 7000
Fax: 202 857 0940

*Attorneys for Visa Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SERENA FLEITES, | Case No. 2:21-CV-04920-WLH-ADS |
| Plaintiff, | Judicial Officer: Wesley L. Hsu<br>Courtroom: 9B |
| v. | |
| MINDGEEK S.A.R.L.; MG FREESITES, LTD; MINDGEEK USA INCORPORATED; MG PREMIUM LTD.; MG GLOBAL ENTERTAINMENT INC.; 9219-1568 Quebec, Inc. (d/b/a MindGeek); BERND BERGMAIR; FERAS ANTOON; DAVID TASSILLO; COREY URMAN; VISA INC.; COLBECK CAPITAL DOES 1-5; BERGMAIR DOES 1-5, | **REPLY IN SUPPORT OF DEFENDANT VISA INC.'S SECOND MOTION TO DISMISS**<br><br>Date: January 31, 2025<br>Time: 1:30 p.m. |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................... 1

ARGUMENT ............................................................................................ 2

I.    The SAC's Claim For Direct TVPRA Liability Is Improper And Invalid ...... 2

    A.    Plaintiff's direct liability claim is barred ................................................. 2

    B.    There has been no change in controlling law to warrant reconsideration of Plaintiff's previously dismissed claim ................... 4

    C.    Plaintiff's cases are inapposite or unpersuasive in any event .............. 4

        1.    There are no adequate allegations of participation .................... 5

        2.    There are no adequate allegations of knowledge ........................ 8

II.   The SAC Does Not State A Claim For Civil Conspiracy Against Visa ....... 12

    A.    There is no private cause of action for pre-2023 TVPRA conspiracy 12

    B.    Plaintiff fails to adequately allege the elements of a conspiracy ........ 16

III.  Plaintiff's Opposition Fails to Address The Flaws in Plaintiff's State Law Claims Against Visa Under California Business And Professions Code §§ 17200, 17500 ........................................................................................ 20

CONCLUSION ........................................................................................ 20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Ajzenman v. Off. of Comm'r of Baseball*,
   487 F. Supp. 3d 861 (C.D. Cal. 2020)..................................................................16

6

7

*Akhtar v. Vitamin Herbal Homeopathic Ctr. Inc.*,
   No. 19-CV-1422, 2021 WL 7186030 (E.D.N.Y. Apr. 30, 2021).......................14

8

9

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
   No. 20-CV-00656, 2020 WL 4368214 (N.D. Cal. July 30, 2020).......................5

10

11

*Backpage.com, LLC v. Dart*,
   807 F.3d 229 (7th Cir. 2015) ..............................................................................7

12

*Bernhardt v. Islamic Republic of Iran*,
   47 F.4th 856 (D.C. Cir. 2022)...........................................................................19

13

14

*Calhoon v. City of S. Lake Tahoe Police Dep't*,
   No. 2:19-CV-02165, 2021 WL 6136180 (E.D. Cal. Dec. 28, 2021) ..................3

15

16

*Craigslist Inc. v. 3Taps Inc.*,
   942 F. Supp. 2d 962 (N.D. Cal. 2013).............................................................19

17

18

*Doe #1 v. Red Roof Inns, Inc.*,
   21 F.4th 714 (11th Cir. 2021) ....................................................................6, 7, 9

19

20

*Doe #9 v. Wyndham Hotels & Resorts, Inc.*,
   No. 4:19-CV-5016, 2021 WL 1186333 (S.D. Tex. Mar. 30, 2021)....................9

21

22

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
   671 F. Supp. 3d 387 (S.D.N.Y. 2023) .......................................................*passim*

23

24

25

*Doe v. Howard*,
   No. 1:11cv1105, 2012 WL 3834930 (Aug. 7, 2012), *report &
   recommendation adopted by* 2012 WL 3834929 (E.D. Va. Sept. 4,
   2012) .................................................................................................................15

26

27

*Does 1–6 v. Reddit*,
   51 F.4th 1137 (9th Cir. 2022) .........................................................................5, 6

28

*Eidmann v. Walgreen Co.*,
    522 F. Supp. 3d 634 (N.D. Cal 2021)...................................................................20

*G.G. v. Salesforce.com, Inc.*,
    76 F.4th 544 (7th Cir. 2023) .......................................................................*passim*

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017)..............................................................20

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983).............................................................................16

*J.C. v. Choice Hotels Int'l, Inc.*,
    No. 20-CV-00155, 2020 WL 6318707 (N.D. Cal. Oct. 28, 2020).......................9

*J.L. v. Best W. Int'l, Inc.*,
    521 F. Supp. 3d 1048 (D. Colo. 2021) .................................................................9

*J.M. v. Choice Hotels Int'l, Inc.*,
    No. 2:22-cv-00672, 2022 WL 10626493 (E.D. Cal. Oct. 18, 2022)...................9

*Kemper v. Deutsche Bank AG*,
    911 F.3d 383 (7th Cir. 2018) ..............................................................................19

*Ketab Corp. v. Mesriani Law Grp.*,
    No. 2:14-CV-07241, 2015 WL 2085523 (C.D. Cal. May 5, 2015) .....................3

*Kona Enters., Inc. v. Estate of Bishop*,
    229 F.3d 877 (9th Cir. 2000) ................................................................................4

*Lagasan v. Al-Ghasel*,
    92 F. Supp. 3d 445 (E.D. Va. 2015) ...................................................................15

*Lamumba Corp. v. City of Oakland*,
    No. C 05-2712, 2006 WL 3086726 (N.D. Cal. Oct. 30, 2006).......................3, 4

*Law v. Siegel*,
    571 U.S. 415 (2014)...............................................................................................6

*Leocal v. Ashcroft*,
    543 U.S. 1 (2004).................................................................................................16

*Lundstrom v. Choice Hotels Int'l, Inc.*,
    No. 21-CV-00619, 2021 WL 5579117 (D. Colo. Nov. 30, 2021) .................9, 10

*Marlyn Nutraceuticals, Inc. v. Mucos Pharm GmbH & Co.,*
571 F.3d 873 (9th Cir. 2009) ...............................................................................4

*Mishkin v. New York,*
383 U.S. 502 (1966)............................................................................................12

*Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.,*
790 F. Supp. 2d 1134 (C.D. Cal. May 11, 2011) .............................................15

*Paguirigan v. Prompt Nursing Emp. Agency LLC,*
286 F. Supp. 3d 430 (E.D.N.Y. 2017)...............................................................15

*Perfect 10 Inc. v. Visa Int'l Serv. Ass'n,*
494 F.3d 788 (9th Cir. 2007) ...............................................................................1

*Ratha v. Phatthana Seafood Co.,*
No. CV 16-4271, 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017), *aff'd,*
26 F.4th 1029 (9th Cir. 2022) ..............................................................................5

*Ratha v. Phatthana Seafood Co.,*
35 F.4th 1159 (9th Cir. 2022) ....................................................................*passim*

*Ratha v. Rubicon Res., LLC,*
111 F.4th 946 (9th Cir. 2024) ............................................................................13

*Ricchio v. McLean,*
853 F.3d 553 (1st Cir. 2017)..............................................................................14

*Roe v. Howard,*
917 F.3d 229 (4th Cir. 2019) .............................................................................14

*S.C. v. Wyndham Hotels & Resorts, Inc.,*
No. 1:23-CV-00871, 2024 WL 2186173 (N.D. Ohio May 15, 2024)...........9, 10

*Schramm v. Montage Health,*
No. 17-CV-02757, 2019 WL 377772, at *8 (N.D. Cal. Jan. 30, 2019) ...............3

*S.J. v. Choice Hotels Int'l, Inc.,*
473 F. Supp. 3d 147 (E.D.N.Y. 2020)..................................................................9

*Silvas v. County of Riverside,*
No. EDCV 19-2358, 2020 WL 7086144 (C.D. Cal. Oct. 9, 2020) ......................3

*Smith v. People of the State of California,*
361 U.S. 147 (1959)............................................................................................11

*SurvJustice Inc. v. DeVos*,
    No. 18-CV-00535, 2019 WL 1434144 *7 (N.D. Cal. Mar. 29, 2019) ................ 3

*T.S. v. Wyndham Hotels & Resorts, Inc.*,
    No. 23-CV-2530, 2024 WL 3927382 (D. Minn. Aug. 23, 2024) ............ 9, 10, 11

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023) ..................................................................................... 1, 16

*United States v. Collins*,
    966 F.2d 1214 (7th Cir. 1992) .......................................................................... 19

*United States v. Gee*,
    226 F.3d 885 (7th Cir. 2000) ............................................................................ 19

*United States v. Lennick*,
    18 F.3d 814 (9th Cir. 1994) .............................................................................. 17

*United States v. Loveland*,
    825 F.3d 555 (9th Cir. 2016) ............................................................................ 17

*United States v. Moe*,
    781 F.3d 1120 (9th Cir. 2015) .......................................................................... 17

*United States v. Ramirez*,
    714 F.3d 1134 (9th Cir. 2013) .......................................................................... 17

**Statutes**

18 U.S.C. § 1594(c) ................................................................................................ 13

18 U.S.C. § 1595(a) ....................................................................................... *passim*

U.S. Const. amend. I ........................................................................................ 11, 12

**Other Authorities**

Federal Rule of Civil Procedure 15(a)(2) ................................................................ 3

## INTRODUCTION

Plaintiff's Opposition confirms that Visa is not a proper defendant in this case. Through 85 pages of briefing, Plaintiff is unable to point to any allegations that, if proven, could result in liability under any of the pleaded causes of action. Her claim boils down to the fact that Visa provided the same payment-processing services to MindGeek—via third-party Acquirers—that it makes available to millions of other merchants. Under that theory, anyone who provides services to MindGeek—its web-hosting services provider, landlord, auditors, and even outside legal counsel—could be implicated in MindGeek's alleged wrongdoing. Nothing in the TVPRA or common law permits such a sweeping expansion of secondary liability to ensnare third-party service providers.

In a case Plaintiff largely glosses over, the Supreme Court recently confirmed that secondary liability theories must be confined to "truly culpable conduct" rather than expanded to "passive nonfeasance." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 489, 500 (2023). That is doubly true for credit card processors, who "serve as the primary engine of electronic commerce" and whose operations touch on virtually every facet of society. *Perfect 10 Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007). The conduct Plaintiff alleges Visa undertook here is substantively no different from what Visa, the Acquirers, and the Issuers offer to all kinds of third-party businesses and individuals every day. Any injury incurred by Plaintiff as a result of the conduct undertaken by those third parties should be redressed by those parties, not by Visa.

Direct participation liability under the TVPRA is narrow, and Judge Carney properly dismissed Plaintiff's claim against Visa in this respect with prejudice. Plaintiff's effort to revive that claim without leave of Court is procedurally improper and also substantively flawed. Even the Seventh Circuit, which has adopted the broadest understanding of the statute, agrees that participation requires active engagement by a party, not the mere passive provision of general services. And while courts have offered slightly differing views on the level of knowledge required for TVPRA liability,

Plaintiff's claim against Visa fails under any reasonable interpretation of the statute. That is because Visa is not alleged to have known anything about Plaintiff, Plaintiff's alleged traffickers, their conduct, or their uploading of videos to MindGeek.

With respect to conspiracy, the TVPRA did not provide a private cause of action for such claims prior to 2023, and all of Plaintiff's arguments otherwise were already rejected by the Ninth Circuit. Moreover, Plaintiff has come nowhere close to alleging the rigorous common-law elements of a conspiracy. In fact, Plaintiff offers almost no discussion of those elements, instead asserting that liability attaches to any defendant who agrees to provide services knowing they may be used in connection with a trafficking venture. That is not what the TVPRA says and it is not what the common law of conspiracy permits.

Plaintiff's claims against Visa should be dismissed with prejudice.

## ARGUMENT

## I.    The SAC's Claim For Direct TVPRA Liability Is Improper And Invalid

The SAC improperly reasserts a claim for direct participation liability against Visa under Sections 1591(a)(2) and 1595(a) of the TVPRA.[1] Judge Carney previously dismissed that claim with prejudice. Dkt. 166 at 21, 33. Plaintiff's effort to revive that claim through the SAC is both procedurally improper and without substantive merit.

### A.    Plaintiff's direct liability claim is barred

Plaintiff's direct liability claim against Visa is based upon the same allegations that Judge Carney ruled were insufficient to give rise to a direct liability claim under the FAC. Opp'n 30–31; SAC ¶¶ 476–88. Yet Plaintiff repleads this claim without seeking leave of the Court or pleading any new allegations in the SAC as to Visa. That is improper.

Although Judge Carney granted Plaintiff leave to amend her complaint, he specifically denied Plaintiff leave to amend her 1591(a) direct liability claim against Visa

---

[1] Terms used but not defined herein shall have the same meaning as in Visa's Motion to Dismiss. *See* Dkt. 432-1.

"because Plaintiff simply has no basis for claiming Visa directly participated in the sex trafficking ventures that harmed her."  Dkt. 166 at 33.  If Plaintiff wanted the Court to revisit that ruling, the proper procedure was to file either a motion for reconsideration or motion for leave to amend, as Plaintiff's own cases demonstrate.  *See* Opp'n 32 (citing *SurvJustice Inc. v. DeVos*, No. 18-CV-00535, 2019 WL 1434144, at *7 (N.D. Cal. Mar. 29, 2019) (granting leave to amend complaint only after considering a motion for reconsideration); *Schramm v. Montage Health*, No. 17-CV-02757, 2019 WL 377772, at *8 (N.D. Cal. Jan. 30, 2019) (granting leave to amend after considering plaintiff's motion for leave to amend)).  That is consistent with Federal Rule of Civil Procedure 15(a)(2), which provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave."  *Id.*

Courts in the Ninth Circuit have stricken similar efforts by parties to replead claims previously dismissed with prejudice.  *See Calhoon v. City of S. Lake Tahoe Police Dep't*, No. 2:19-CV-02165, 2021 WL 6136180, at *3 (E.D. Cal. Dec. 28, 2021) (striking previously dismissed claim against defendant because court dismissed claim without leave to amend); *Silvas v. County of Riverside*, No. EDCV 19-2358, 2020 WL 7086144, at *2 (C.D. Cal. Oct. 9, 2020) (striking sua sponte claims "expressly barred by a previous order"); *Ketab Corp. v. Mesriani Law Grp.*, No. 2:14-CV-07241, 2015 WL 2085523, at *3 (C.D. Cal. May 5, 2015) (striking claims the court previously dismissed with prejudice "that Plaintiff ha[d] speciously alleged" again); *Lamumba Corp. v. City of Oakland*, No. C 05-2712, 2006 WL 3086726, at *4 (N.D. Cal. Oct. 30, 2006) (striking "specious" and "defective" claims that were previously dismissed with prejudice).[2]  Plaintiff has not

_____

[2] Plaintiff asserts in a footnote that *Silvas*, *Ketab*, and *Lamumba* are not applicable because the courts in those cases "did not address whether a change in case law warrants leave to re-plead" and because "doctrines of claim and issue preclusion" may have applied to certain claims in *Lamumba*.  Opp'n 32 n.17.  This argument has no merit.  As the court explained in *Ketab*, "Plaintiff's failure to 'obtain leave to add these causes of action' is a 'violation of Federal Rule of Civil Procedure 15(a)(2)' and an *independent basis for dismissal of the above claims*."  *Ketab*, 2015 WL 2085523, at *3 (internal citations omitted) (emphasis added).

1  simply "[e]xceed[ed] the scope" of the Court's order; she has ignored it.  Opp'n 32 n.17;

2  *Lamumba Corp.*, 2006 WL 3086726, at *4.

3      **B.    There has been no change in controlling law to warrant**
       **reconsideration of Plaintiff's previously dismissed claim**

4      Even had Plaintiff followed the proper procedural route of seeking reconsideration

5  or leave to amend, however, there would be no basis for such relief.  The Ninth Circuit

6  has instructed that "reconsider[ing] and amend[ing] a previous order … is an

7  'extraordinary remedy, to be used sparingly in the interests of finality and conservation

8  of judicial resources.'"  *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th

9  Cir. 2000) (internal citations omitted).  A district court should not reconsider its prior

10  order "absent highly unusual circumstances, unless the district court is presented with

11  newly discovered evidence, committed clear error, or if there is an intervening change in

12  the *controlling law*."  *Marlyn Nutraceuticals, Inc. v. Mucos Pharm GmbH & Co.*, 571

13  F.3d 873, 880 (9th Cir. 2009) (quotation marks omitted) (emphasis added).[3]

14      There are no "highly unusual circumstances" to justify reconsideration.  Judge

15  Carney dismissed Plaintiff's direct liability claim for two reasons (1) failure to allege

16  knowledge of the particular trafficking violation and (2) failure to allege participation.

17  Dkt. 166, at 21–22, 33.  But there has been no intervening Ninth Circuit or Supreme Court

18  authority to undermine either of those conclusions.  Plaintiff points to two out-of-circuit

19  cases—*G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 564 (7th Cir. 2023), and *Doe 1 v.*

20  *Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 406 (S.D.N.Y. 2023)—but

21  neither of those constitutes "controlling law."  *Marlyn Nutraceuticals*.  571 F.3d at 880.

22  Subsequent, out-of-circuit authority does not excuse Plaintiff's failure to adhere to the

23  Court's dismissal with prejudice.

24      **C.    Plaintiff's cases are inapposite or unpersuasive in any event**

25      Even if *Salesforce* and/or *Deutsche Bank* could provide grounds for the Court to

26

27  ───────────────
   [3] As Visa explained and as Plaintiff does not dispute, the law regarding arguments for

28  dismissal made against an amended complaint is different.  *See* Dkt. 432-1, at 11 n.2.

───────────────

revisit Judge Carney's dismissal with prejudice—and they cannot—neither case compels a different outcome.   In fact, they confirm that dismissal was appropriate and that Plaintiff's arguments here seek to expand TVPRA liability beyond its statutory limits.

### 1.    There are no adequate allegations of participation

In the prior Order, Judge Carney held that "Plaintiff simply has no basis for claiming Visa directly participated in the sex trafficking ventures that harmed her."  Dkt. 166, at 33.  That holding comports with well-settled law explaining that in order to incur participation liability under the TVPRA, a defendant must have "took some action to operate or manage the venture, such as directing or participating in [the alleged venture]." *Ratha v. Phatthana Seafood Co.*, No. CV 16-4271, 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017) (quotation marks omitted), *aff'd*, 26 F.4th 1029 (9th Cir. 2022), *amended by* F.4th 1159 (9th Cir. 2022).  Liability "requires more than receipt of a passive benefit." *Id.*  Put otherwise, a plaintiff must allege that the defendant "*directly* participated in [the] venture."   *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-CV-00656, 2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020) (emphasis added).

These cases are consistent with *Does 1–6 v. Reddit*, 51 F.4th 1137 (9th Cir. 2022), which discussed the standard for "participation" in Section 1591(a)(2), the criminal predicate for a civil claim under Section 1595(a).  Applying the statutory definition of "participation," the Ninth Circuit held that "to hold a defendant criminally liable as a beneficiary of sex trafficking, the defendant must have actually engaged in some aspect of the sex trafficking."  *Id.* at 1145 (quotation marks omitted).  It is not enough that a defendant "turned a blind eye to the unlawful content."  *Id.* (quotation marks omitted).

Here, Plaintiff's sole allegation of "participation" by Visa is that Visa and other "major credit card companies and their member banks" provided payment processing services to MindGeek, despite allegedly knowing that MindGeek's websites contain some indeterminate amount of unlawful content.  SAC ¶¶ 285–88.  Plaintiff brings a claim against Visa "simply" because Visa "chose to do business with MindGeek."  *Id.* ¶ 294.

1    As Judge Carney correctly held, precedent—and common sense—rejects any theory of
2    "participation" that relies only on the general operation of a lawful business.

3        Plaintiff cites no basis for deviating from Judge Carney's conclusion on this issue.
4    Plaintiff argues that *Reddit*'s standard for "participation" does not apply here, because
5    that case concerned the criminal standard in Section 1591(a)(2), rather than the civil
6    liability provision in Section 1595(a).  *See* Opp'n 15–16 (citing *Salesforce*, 76 F.4th at
7    564).  But the Ninth Circuit in *Reddit* observed the longstanding rule that "identical words
8    and phrases within the same statute should normally be given the same meaning." *Reddit*,
9    51 F.4th at 1143 (quotation marks omitted).  The Seventh Circuit in *Salesforce* did not
10   even cite *Reddit* on this issue, instead relying on *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th
11   714 (11th Cir. 2021), in which the Eleventh Circuit asserted that "Section 1591 clearly
12   states that its definition of 'participation in a venture' applies only 'in this section.'" *Id.*
13   at 724 (alteration omitted).  The statute says no such thing:  The word "only" appears
14   nowhere in Section 1591 and there is no other indication that Congress intended to deviate
15   from the normal rule that similar terms in a statute are interpreted consistently.  *See Law
16   v. Siegel*, 571 U.S. 415, 422 (2014).  But regardless, even the Eleventh Circuit construed
17   "participation" liability under Section 1595(a) as requiring that "a defendant must take
18   part in a common undertaking involving risk or profit," *Red Roof Inns*, 21 F.4th at 727,
19   which is at least as stringent as the standard articulated in *Reddit*.

20       *Salesforce* and *Deutsche Bank* reinforce, rather than undermine, Judge Carney's
21   conclusion on this issue.  In *Salesforce*, the plaintiff alleged a "direct and long-term
22   contractual relationship" between Salesforce and the alleged "sex-trafficker Backpage."
23   76 F.4th at 562.  As alleged, Salesforce entered into "several lucrative contracts with
24   Backpage" and provided "targeted solutions" to Backpage's website, offering
25   "'operational needs,' and provid[ing] 'active, ongoing support' that was 'tailored' to those
26   needs." *Id.* at 560.  These "targeted" resources and solutions offered by Salesforce were
27   key to the Seventh Circuit's finding that the plaintiff had adequately alleged a
28

participation claim, because the court recognized that the TVPRA's participation prong "requires more than providing off-the-shelf software (*or other common products or services* from furniture to telephones or pizza deliveries)." *Id.* at 562 (emphasis added). Instead, the participation must go beyond that of an "arms-length seller." *Id.*

Just as telling as what the Seventh Circuit held *did* constitute participation are the cases the Seventh Circuit distinguished as *not* rising to the level of participation. Discussing the Eleventh Circuit's decision in *Red Roof Inns*, the Seventh Circuit observed that the "franchisor defendants in that case were one step removed from the sex traffickers," whereas "Salesforce provided Backpage with software *designed specifically for Backpage* and affirmative, 'personalized support.'" *Salesforce*, 76 F.4th at 563–564 (emphasis added). And most crucially, the Seventh Circuit distinguished the allegations before it from a prior case involving the provision of credit-card payment processing services to Backpage—*Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015)—saying that "plaintiffs have described a relationship between Salesforce and Backpage much closer than that between a web-hosting service or a *credit-card payment processor* and a website." *Salesforce*, 76 F.4th at 563 (emphasis added). The credit card companies in that case, the Seventh Circuit observed, "were only 'remote intermediaries,' indifferent to any of Backpage's allegedly illegal activities." *Id.* at 562–63 (quoting *Dart*, 807 F.3d at 233–34, 239).

*Deutsche Bank* is similar. There, the court held that the plaintiff had adequately pleaded participation because "both JP Morgan and Deutsche Bank went *well beyond merely providing their usual services*" to the alleged traffickers. 671 F. Supp. 3d at 406 (emphasis added). Specifically, the plaintiff alleged that the banks (1) "assisted with 'structuring' cash withdrawals so that those withdrawals would not appear suspicious"; (2) "delayed filing suspicious activity reports" and "willfully failed to file" these reports to "conceal" the trafficking activities; and (3) for at least one bank "actually trafficked women and girls" through a subsidiary. *Id.*

1    *Salesforce* and *Deutsche Bank* thus confirm, rather than contradict, Judge Carney's

2    prior order.  Plaintiff's only allegations against Visa are that Visa processed payments for

3    MindGeek.  SAC ¶¶ 285–86, 288–89, 292, 294–95, 297, 308; Opp'n 33–34.  Those are

4    the same services Visa offers to all users of its payment processing systems.  *See* Mot. 4–

5    5.  And Visa is not the only one providing these services:  The SAC repeatedly alleges

6    that "credit card companies and their member banks" generally provided payment

7    processing services to MindGeek, and Visa was just one of many.  SAC ¶¶ 285–86, 288–

8    89, 292, 294–95, 297, 308.  That is the exact kind of conduct—providing "common

9    products or services" or "providing [] usual services"—that both *Salesforce* and *Deutsche*

10   *Bank* held or indicated is insufficient to give rise to direct liability.  *Salesforce*, 76 F.4th

11   at 560; *Deutsche Bank*, 671 F. Supp. 3d at 406.

12        Instead, Plaintiff must allege participation that is "much closer than that between a

13   web-hosting service or a credit-card payment processor and a website."  *Salesforce*, 76

14   F.4th at 563.  But the SAC does not allege any "tailored" or "targeted" payment

15   processing services offered by Visa to MindGeek or that Visa even directly interacted

16   with Plaintiff, MindGeek, or Plaintiff's alleged traffickers.  The SAC's allegations are not

17   sufficient to show Visa's participation.[4]

18                **2.    There are no adequate allegations of knowledge**

19        Judge Carney's second basis for dismissal—that Plaintiff did not and cannot allege

20   Visa's knowledge of the unlawful trafficking conduct Plaintiff seeks to impute to it—also

21   remains valid.

22        Some courts, including the Eleventh Circuit, have held that civil participation

23   liability under the TVPRA requires knowledge of the trafficking of the specific victim.

24

---

25   [4] The SAC does not establish the "benefit" element of liability either, because Plaintiff

26   does not allege that Visa ever processed any payments for advertisements appearing next

     to Plaintiff's videos.  Plaintiff urges that the "Court can infer a strong possibility" of such

27   processing, Opp'n 33, but the well-pleaded allegations of the SAC would not allow the

     finder of fact to reasonably draw such an inference.

28

*See, e.g.*, *Red Roof Inns, Inc.*, 21 F.4th at 725 ("[T]he defendant must have either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited—violated the TVPRA *as to the plaintiff*." (emphasis added)); *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-00672, 2022 WL 10626493, at *5 (E.D. Cal. Oct. 18, 2022) ("J.M.'s allegations regarding defendants' general knowledge of sex trafficking problems in the hotel industry, or even at defendants' franchisee hotels, is insufficient to demonstrate defendants should have known about J.M.'s trafficking."); *Doe #9 v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016, 2021 WL 1186333, at *1 (S.D. Tex. Mar. 30, 2021) ("More specifically, the complaint must contain facts sufficient to establish that the defendant knew or should have known about the trafficking of the plaintiff in particular—not about trafficking occurring on the premises in general."); *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021) ("Plaintiff alleges that Wyndham was on notice about the prevalence of sex trafficking generally at its hotels. But that is not sufficient to show that Wyndham should have known about what happened to this plaintiff."); *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-CV-00155, 2020 WL 6318707, at *6 (N.D. Cal. Oct. 28, 2020) ("[G]eneral allegations about sex trafficking problems throughout the hospitality industry is not enough to put them on notice about the sex trafficking of this plaintiff.").

Other courts hold that the defendant must have at least "constructive knowledge of a non-generalized and non-sporadic—a 'particular'—venture." *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020); *see also T.S. v. Wyndham Hotels & Resorts, Inc.*, No. 23-CV-2530, 2024 WL 3927382, at *8 (D. Minn. Aug. 23, 2024) ("[T]o satisfy § 1595's knowledge element, a plaintiff must plead and ultimately prove that the defendant had actual or constructive knowledge of the *particular* sex-trafficking venture that harmed the plaintiff . . . ."); *S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 1:23-CV-00871, 2024 WL 2186173, at *6 (N.D. Ohio May 15, 2024) ("[T]he knowledge element is specific to the venture that trafficked S.C."); *Lundstrom v. Choice Hotels Int'l,*

*Inc.*, No. 21-CV-00619, 2021 WL 5579117, at *8 (D. Colo. Nov. 30, 2021) ("General knowledge of commercial sex activity occurring at . . . defendant's properties, is insufficient on its own to demonstrate that defendant participated in the trafficking of plaintiff.").    Thus, for example, a hotel franchisor is not liable for indirectly benefitting from trafficking activity occurring at its franchised properties absent "information that expressly reveals the venture's trafficking activities" or "information that should have alerted the defendant to the *particular* venture's trafficking." *S.C.*, 2024 WL 2186173, at *6 (emphasis added); *see also T.S.*, 2024 WL 3927382, at *8 ("[The plaintiff] must have been harmed by *that* sex-trafficking venture—that is, by the particular sex-trafficking venture of which [the defendant] had actual or constructive knowledge . . . .").

Crucially, the Ninth Circuit has held that participation liability under Section 1595(a) requires *at least* knowledge of the particular trafficking venture that injured the plaintiff.  In *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159 (9th Cir. 2022) ("*Ratha I*"), the Ninth Circuit held that a packaging inspection company had insufficient knowledge of trafficking occurring at one of its clients in the Thai shrimp industry, observing that "[s]weeping generalities about the Thai shrimp industry are too attenuated to support an inference that [the defendant] knew or should have known of the *specifically alleged* TVPRA violations at the Songkhla factory between 2010 and 2012."  *Id.* at 1177 (emphasis added).  The Court held as much even though the plaintiff adduced evidence that "abusive labor practices were common in Thailand, particularly in the shrimp industry"  *Id.* Notably, this is essentially the standard adopted by the court in *Deutsche Bank* (relied on by Plaintiff).  671 F. Supp. 3d at 406 (defendant must have known of or recklessly disregarded "the particular sex-trafficking venture that it is alleged to have participated in").

Plaintiff does not contend that the SAC adequately alleges knowledge by Visa under *either* of those standards.  Plaintiff does not allege that Visa had any knowledge of her or her trafficking by MindGeek or any other perpetrators.  Nor is Visa alleged to have

known of the particular trafficking venture that allegedly caused harm to Plaintiff—that is, the individuals or groups responsible for the creation of the unlawful videos. That is because Visa is also not alleged to have any knowledge of Plaintiff's videos on MindGeek's tubesites, let alone that those videos were the product of unlawful trafficking, *or* that those videos were the product of the "particular" trafficking venture that affected Plaintiff. As Judge Carney explained, "Visa … is not alleged to have had any direct interaction with Plaintiff, her direct traffickers, or her videos, and therefore cannot bear beneficiary liability for *knowingly participating* in the sex trafficking venture that harmed Plaintiff." Dkt. 166, at 21. The SAC still contains no such allegations.

As for *Salesforce*—which could be read to endorse a more generalized standard for knowledge, *see* 76 F.4th at 556–57—that case cannot supplant the Ninth Circuit's holding in *Ratha I* about the minimum level of knowledge needed for participation liability. Indeed, one court has noted that the Seventh Circuit's interpretation would suggest that "a defendant (such as a particular hotel) need only have constructive (not actual) knowledge that at some unspecified time in the past (perhaps 30 years ago) the defendant participated in or benefitted from an unspecified act of sex trafficking by an unspecified sex trafficker involving an unspecified victim." *T.S.*, 2024 WL 3927382, at *8. That plainly is not sufficient under *Ratha I* and—contrary to the Seventh Circuit's unsupported claim that it was adopting the "majority" view, *Salesforce*, 76 F.4th at 558—is inconsistent with the great weight of authority, including the cases cited above.

A standard of knowledge as broad as Plaintiff endorses also would raise constitutional issues. As the Seventh Circuit recognized in the context of credit-card processing, the First Amendment prohibits the government from deterring the distribution of lawful expressive material, even if that material may sometimes be bundled or associated with unlawful materials. *Dart*, 807 F.3d at 235–36. For that reason, the Supreme Court has repeatedly held that strict scienter requirements are needed when a statute purports to regulate obscene materials. For example, in *Smith v. People of the*

*State of California*, 361 U.S. 147 (1959), the Supreme Court held unconstitutional an ordinance prohibiting a bookstore from possessing an "obscene or indecent writing," because it included no scienter element and therefore "tends to impose a severe limitation on the public's access to the constitutionally protected matter." *Id.* at 153. The Court explained that "if the bookseller is criminally liable without knowledge of the contents, and the ordinance fulfills its purpose, he will tend to restrict the books he sells to those he has inspected; and thus the State will have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature." *Id.*; *see also, e.g.*, *Mishkin v. New York*, 383 U.S. 502, 511 (1966) (where laws regulate publication of certain kinds of materials, "[t]he Constitution requires proof of scienter to avoid the hazard of self-censorship of constitutionally protected material").

The principle that courts should interpret statutes that effect prior restraints on speech to include a rigorous scienter requirement applies regardless of the identity of the defendant. Accordingly, the fact that Visa is not a distributor of any published material and does not itself directly claim a First Amendment interest in the conduct at issue here does not affect this point. To hold liable as a participant any party collaterally related to MindGeek's operations, which indisputably involve expressive activity, based only on the general knowledge (or belief) that some portion of MindGeek's content is unlawful would chill the dissemination of lawful content in contravention of settled precedent.

\* \* \*

Plaintiff has provided no reason to deviate from Judge Carney's prior dismissal of the direct liability claim with prejudice, and the Court should reject Plaintiff's effort to disregard that ruling.

## II.    The SAC Does Not State A Claim For Civil Conspiracy Against Visa

Plaintiff's efforts to impose secondary liability on Visa via a conspiracy theory likewise fail.

### A.    There is no private cause of action for pre-2023 TVPRA conspiracy

Plaintiff's claim for TVPRA conspiracy fails as a matter of law because the

1    TVPRA did not impose civil liability for conspiracy prior to January 5, 2023, all of the

2    conduct alleged against Visa occurred prior to 2023, and the 2023 amendment adding

3    conspiracy liability cannot be given retroactive effect.  *See* Mot. 11.  Plaintiff's arguments

4    in response are squarely foreclosed by binding Ninth Circuit precedent.

5         It is unclear whether Plaintiff is arguing that Section 1595(a) has always provided

6    a private right of action against defendants who conspired to receive a benefit from an

7    unlawful venture, or whether the addition of conspiracy liability through the Abolish

8    Trafficking Reauthorization Act of 2022 ("ATRA") is the kind of congressional

9    clarification that should be given retroactive effect.  Either argument is barred by binding

10   precedent.

11        If Plaintiff is making the former argument, *Ratha I* squarely forecloses it.  There,

12   the Ninth Circuit rejected the plaintiffs' effort to read civil attempt liability into the statute,

13   observing that "we cannot read the word 'attempt' into the 'knowingly benefits' portion

14   of § 1595 without violating a fundamental principle of statutory interpretation that absent

15   provisions cannot be supplied by the courts," and that "Congress's decision to impose

16   civil liability on those who 'benefit' but not those who 'attempt to benefit' is significant

17   because attempt liability is plainly authorized elsewhere in the TVPRA."  *Ratha I*, 35

18   F.4th at 1176 (some quotation marks omitted).  That reasoning applies with the same force

19   to conspiracy liability—Section 1595(a) did not use the word "conspiracy" or "conspire"

20   prior to ATRA, even though other provisions in the TVPRA do make explicit reference

21   to that concept.  *See, e.g.*, 18 U.S.C. § 1594(c).

22        If Plaintiff is asserting that ATRA should be given retroactive effect with respect

23   to conspiracy, that argument is foreclosed by *Ratha II*.  *Ratha II* addressed whether civil

24   attempt liability under the TVPRA—added to the same section of the TVPRA in the same

25   statutory amendment as conspiracy liability—could apply retroactively to pre-2023

26   conduct.  *Ratha v. Rubicon Res., LLC*, 111 F.4th 946, 956 (9th Cir. 2024).  The Ninth

27   Circuit was unequivocal: "ATRA did not clarify what § 1595(a) in the TVPRA meant all

28

1    along, and therefore does not apply to events that occurred before the enactment of

2    ATRA." *Id.* at 958. Plaintiff's superficial rejoinder that *Ratha II* did not directly concern

3    conspiracy liability overlooks that the analysis there grouped attempt and conspiracy

4    together, just as ATRA itself did. *See id.* at 963.

5          Plaintiff nonetheless urges that retroactive application of the ATRA as to

6    conspiracy liability "is not inconsistent with the pre-amendment text of section 1595,"

7    because "a conspiracy to violate the TVPRA may result in a knowing benefit." Opp'n

8    38. The standard for retroactive application does not depend on whether the new statute

9    is "not inconsistent" with the earlier statutory text; it turns on "whether the prior

10   enactment was ambiguous and generated inconsistent judicial opinions." *Ratha II*, 111

11   F.4th at 963.[5] But in any event, Plaintiff is wrong that there is no inconsistency: As set

12   forth above, *Ratha I* identified the textual obstacles in seeking to infer attempt liability

13   from the pre-2023 TVPRA, and the same problems plague any effort to read conspiracy

14   into the statute. *See Ratha I*, 35 F.4th at 1176. And even if a conspiracy "may result in a

15   knowing benefit," it also might *not* result in any such benefit. The express addition of

16   conspiracy liability in Section 1595 therefore plainly changes the substantive reach of the

17   TVPRA, therefore requiring that the statute be applied prospectively absent clear

18   direction from Congress otherwise. *See Ratha II*, 111 F.4th at 963.

19         Plaintiff additionally argues that courts prior to ATRA had concluded that civil

20   liability under the TVPRA extended to conspiracy. *See* Opp'n 38–39 & n.18. This exact

21   argument with respect to attempt liability was raised and rejected in *Ratha II*—in fact,

22   Plaintiff cites two of the same cases (*Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019);

23   *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017)) the plaintiffs in *Ratha II* cited in support

24   of the same argument. *See* 111 F.4th at 964–65. But the Ninth Circuit explained that

25   neither *Ricchio* nor *Howard* evinced any such disagreement with respect to attempt (and

26   _____

27   [5] For preservation purposes only, Visa disputes that the two-step analysis required by
     *Landgraf* may be augmented based on a court's perception over whether an amendment

28   was merely "clarifying" the original intent of the law.

consequently, with respect to conspiracy either), because neither addressed whether a defendant could be held liable for attempting to *benefit* from an unlawful venture. *See id.* at 964–65; *see also id.* at 963 ("Before *Ratha I*, no circuit court opinion addressed the question whether § 1595(a) permitted a plaintiff to bring a civil action against a person who 'attempts or conspires to benefit' from a TVPRA violation."). All of Plaintiff's other cases fall into the same category. *See Akhtar v. Vitamin Herbal Homeopathic Ctr. Inc.*, No. 19-CV-1422, 2021 WL 7186030, at *11 (E.D.N.Y. Apr. 30, 2021) ("This Court finds the allegations in the record sufficient for a jury to find both Defendants consciously agreed to subject Plaintiff to forced labor in violation of TVPRA."); *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430, 440 (E.D.N.Y. 2017) ("[P]laintiff alleges that defendants agreed to provide or obtain labor by means of serious harm or threats of serious harm, abuse or threatened abuse of law or legal process, and a scheme, pattern or plan …."); *Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445, 455 (E.D. Va. 2015) ("The facts show that defendant Mr. Al-Ghasel conspired with [other defendants] to violate the TVPRA by agreeing to obtain plaintiff's services for the purpose of forced labor, involuntary servitude, and trafficking."); *Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 790 F. Supp. 2d 1134, 1147 (C.D. Cal. May 11, 2011) ("Plaintiffs have alleged sufficient facts showing that Defendants were involved in a forced labor scheme, and Plaintiffs have also alleged sufficient facts showing an attempt and conspiracy to engage in such a scheme.").[6] Not one of these cases engaged in any exercise of statutory interpretation to discern whether civil beneficiary liability under Section 1595(a) can be premised on a theory of conspiracy.

That leaves Plaintiff only with her assertion that ATRA should be deemed a

---

[6] Plaintiff also cites a case involving the entry of default judgment. *See Doe v. Howard*, No. 1:11cv1105, 2012 WL 3834930 (Aug. 7, 2012), *report & recommendation adopted by* 2012 WL 3834929 (E.D. Va. Sept. 4, 2012). An entry of default judgment of course does not suggest any sort of disagreement on judicial interpretation of the statute, but even there, the theory of conspiracy was that the defendants "tricked plaintiff into accompanying them as their domestic servant to Japan." *Id.* at *2.

clarifying amendment intended to respond to *Ratha I*. Opp'n 39–40. That argument is simply an effort to reargue the merits of *Ratha II*, which rejected this very point. 111 F.4th at 967–69. This Court is not free to revisit *Ratha II*'s conclusion on that issue.

Because the TVPRA does not extend civil conspiracy liability for pre-2023 conduct, Plaintiff's TVPRA conspiracy claim against Visa fails.

### B.   Plaintiff fails to adequately allege the elements of a conspiracy

In any event, Plaintiff has failed to allege the elements of a conspiracy claim, both under the TVPRA and the common law (predicated solely on an alleged agreement to violate the UCL). Plaintiff concedes that the common law conspiracy standard is the analysis that the Court should use for both conspiracy claims, yet does not meaningfully address the Supreme Court's recent authority addressing that standard. *See Twitter*, 598 U.S. at 485. Nor does Plaintiff acknowledge the seminal case on common law conspiracy the Supreme Court endorsed in *Twitter*, which established the elements as (1) "an agreement to do an unlawful act or a lawful act in an unlawful manner"; (2) "an overt act in furtherance of the agreement by someone participating in it"; and (3) "injury caused by the act." *Halberstam v. Welch*, 705 F.2d 472, 487 (D.C. Cir. 1983). And Plaintiff does not address the three discrete elements of proving an unlawful agreement: "(i) knowledge of wrongful activity, (ii) agreement to join in the wrongful activity, and (iii) intent to aid in the wrongful activity." *Ajzenman v. Off. of Comm'r of Baseball*, 487 F. Supp. 3d 861, 867 (C.D. Cal. 2020). She has failed to allege any of the three elements.

*First*, there are no adequate allegations of Visa's knowledge. Plaintiff does not dispute that Visa can be held liable for conspiracy only if Plaintiff has adequately alleged the same level of knowledge as that needed for direct, participation liability. *See* Mot. 18–20 (citing, inter alia, *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004); *United States v. Collazo*, 984 F.3d 1308, 1333 (9th Cir. 2021)). And as set forth above, the TVPRA requires at least knowledge of a particular trafficking venture, and arguably also requires knowledge of a particular victim, neither of which Plaintiff has alleged. *See supra* Section

1  I.C.2.    Because Plaintiff has not alleged knowledge under any standard, Plaintiff's
2  conspiracy claims fail.

3       *Second*, there are no adequate allegations of an agreement to commit an unlawful
4  act.  *See* Mot. 21–24.  Plaintiff again does not dispute much of this element.  She does not
5  deny that "simple knowledge, approval of, or acquiescence in the object or purpose of a
6  conspiracy, without an intention and agreement to accomplish a specific illegal objective,
7  is not sufficient" to establish an unlawful agreement.  *United States v. Lennick*, 18 F.3d
8  814, 818 (9th Cir. 1994).  Plaintiff attempts to distinguish the authority cited by Visa by
9  claiming that "prolonged cooperation" is sufficient, Opp'n 41 (quotation marks omitted),
10  but overlooks that the case cited explained that the ultimate question is whether the seller
11  has a "shared stake" in the further sale of the unlawful goods, *United States v. Loveland*,
12  825 F.3d 555, 561–62 (9th Cir. 2016); *see also United States v. Ramirez*, 714 F.3d 1134,
13  1140 (9th Cir. 2013) ("[W]hat we are looking for is evidence of a prolonged and actively
14  pursued course of sales coupled with the seller's knowledge of and a shared stake in the
15  buyer's illegal venture.").  Plaintiff does not allege Visa had any such shared stake here,
16  because there is no dispute that Visa lacked any economic interest in the underlying
17  trafficking venture itself.  Indeed, the case referenced by Plaintiff articulated *ten* factors
18  relevant to the existence of an unlawful agreement, virtually none of which are alleged
19  here.  *See United States v. Moe*, 781 F.3d 1120, 1125–26 (9th Cir. 2015); *see also id.* at
20  1126 n.6 ("Prolonged cooperation is neither the meaning of conspiracy nor an essential
21  element, but it is one type of evidence of an agreement that goes beyond what is implicit
22  in any consensual undertaking, such as a spot sale.").

23       With respect to the TVPRA conspiracy claim, Plaintiff urges that the TVPRA
24  reaches an alleged agreement to provide *services* knowing they *may* be used in the course
25  of *benefitting* from an unlawful trafficking scheme.  Yet, the district court in *Deutsche*
26  *Bank*—which Plaintiff cites in support of other arguments—rejected a conspiracy claim
27  against a bank alleged to have merely provided financial services in support of a

28

trafficking venture. *See* Opp'n 40 & n.21 (citing *Deutsche Bank*, 671 F. Supp. 3d at 412). Plaintiff argues that this case is different because the alleged conspiracy here is one to *benefit* from trafficking, rather than to *participate* in trafficking, and that the relevant conspiracy here "is an agreement to knowingly benefit financially from sex trafficking," *See* Opp'n 40 & n.21. That is not what the statute says: Section 1595(a) provides for liability against "whoever . . . conspires to benefit, financially or by receiving anything of value from *participation in a venture* which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). The unlawful conspiracy therefore is not an agreement to financially benefit from a trafficking venture, but to financially benefit "from participation" in such a venture.

Accordingly, it is not unlawful under the TVPRA for a business to "knowingly provid[e] the tool" through which another may monetize unlawful conduct. Opp'n 42 (quotation marks omitted) (quoting Dkt. 166, at 22 n.13). The TVPRA does not reach any party who incidentally and indirectly benefits (even knowingly) from a trafficking venture. *Cf. Salesforce*, 76 F.4th at 563 (distinguishing "a sale by a 'remote intermediary'" from "the active participation of a contractual partner"). Indeed, Plaintiff overlooks that in *Deutsche Bank*, the plaintiff *did* allege a conspiracy to benefit from participation in a trafficking venture, *see* Complaint ¶¶ 302–19, *Doe #1 v. Deutsche Bank Aktiengesellschaft*, No. 22-CV-10018 (S.D.N.Y. Nov. 24, 2022), ECF No. 1, yet the district court dismissed that claim notwithstanding that the defendants were alleged to have provided services that "they knew, or recklessly disregarded, would assist [a] sex-trafficking venture," *Deutsche Bank*, 671 F. Supp. 3d at 412.

*Third*, there are no adequate allegations that Visa intended to join an unlawful venture to financially benefit from participation in unlawful trafficking or other fraudulent conduct. *See* Mot. 24–26. Plaintiff falls back on her claim that simply "providing the tool" for others to violate the law is sufficient, Opp'n 42 (quotation marks omitted), but that is incorrect. There must be a "common intent" to *actually engage* in an unlawful act,

not merely to offer services that could be used to engage in such acts.  *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 873 (D.C. Cir. 2022).  That is because "conspiracy law has long recognized that [a buyer-seller relationship] does not, without more, establish the parties' intent to aid each other in some other objective however illicit the goods involved in [the] buyer-seller transaction."  *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 982 (N.D. Cal. 2013).

Importantly, even if Plaintiff were correct that the relevant conspiracy under the TVPRA is one to obtain a financial benefit from unlawful adult content, that still would not matter for the intent element, because Plaintiff points to no allegation that any of Visa's corporate officers "intend[ed] to achieve" the "aims" of such a purported conspiracy.  *United States v. Gee*, 226 F.3d 885, 893 (7th Cir. 2000).  Plaintiff does not respond, for example, to precedent holding that "[a] person who is indifferent to the goals of an ongoing conspiracy does not become a party to this conspiracy merely because that persons knows that his or her actions might somehow be furthering that conspiracy."  *United States v. Collins*, 966 F.2d 1214, 1219–20 (7th Cir. 1992).  She asserts that *Kemper v. Deutsche Bank AG*, 911 F.3d 383 (7th Cir. 2018)—in which the court rejected a conspiracy claim against a bank that allegedly facilitated transactions connected to terrorism—is distinguishable because the defendant bank there was "alleged to be motivated by evading sanctions."  Opp'n 42 (citing *Kemper*).  But Plaintiff does not address the portion of the opinion actually cited by Visa, which relied on the fact that "[n]one of the allegations suggest that [the bank] cared how its [foreign] customers obtained or spent the funds that it processed for them," *Kemper*, 911 F.3d at 395.  Indeed, the Seventh Circuit observed that "[b]ecause by definition market transactions—whether in legal or illegal markets—benefit both parties, we do not assume, *ab initio*, that they carry with them the excess baggage of conspiracy."  *Id.* at 395 (alterations and quotation marks omitted).  And Plaintiff overlooks that the district court in *Deutsche Bank* rejected an attempt theory of liability because "the complaints [did] not support the allegation that

either JP Morgan or Deutsche Bank acted with the specific intent of benefiting from a sex-trafficking venture." 671 F. Supp. 3d at 412. The same rationale applies here: An intent to provide general payment-processing services is different from an intent to financially benefit from an unlawful trafficking venture.

### III. Plaintiff's Opposition Fails to Address The Flaws in Plaintiff's State Law Claims Against Visa Under California Business And Professions Code §§ 17200, 17500

Plaintiff offers no response to Visa's motion to dismiss Plaintiff's UCL and FAL claims *against Visa*. *See* Mot. 26–28.[7] Instead, Plaintiff again generalizes all Defendants and attempts to impute the MindGeek Defendants' alleged actions to Visa. *See* Opp'n 49–50. But as outlined in Visa's Motion to Dismiss, that is neither accurate nor permissible. *See* Dkt. 432-1, at 26–27. In any event, Plaintiff has apparently abandoned any claim based on the "unfair" prong of the UCL, instead premising UCL liability entirely on the parties' alleged violation of the TVPRA or California law. *See* Opp'n 49. Because Plaintiff has not alleged any viable statutory or common-law claim against Visa, her UCL claim also fails. *See Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal 2021); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017).

### CONCLUSION

For these reasons and the reasons provided in Visa's Motion to Dismiss, the Court should dismiss all claims—Counts II, IV, XIV, and XVII—asserted against Visa, with prejudice.

Dated: December 6, 2024                RESPECTFULLY SUBMITTED,

                                       */s/ Drew Tulumello*
                                       DREW TULUMELLO (#196484)

---

[7] Plaintiff does not dispute that because her UCL claim against Visa fails for numerous reasons, her common law conspiracy claim against Visa (predicated solely on an agreement to violate the UCL) must fail for the same reasons, in addition to those discussed above with respect to conspiracy. *See infra*; *see also* Dkt. 432-1, at 28 n.5.

drew.tulumello@weil.com
MARK A. PERRY (#212532)
mark.perry@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: 202 682 7000
Fax: 202 857 0940
*Attorney for Defendant Visa Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Visa, certifies that this brief is within the twenty (20) page limit set by Court Order, ECF No. 473, Oct. 11, 2024.

Dated:  December 6, 2024          */s/Drew Tulumello*

                    DREW TULUMELLO