1    DAN MARMALEFSKY                RONALD G. WHITE
     (CA SBN 95477)                 (admitted pro hac vice)
2    DMarmalefsky@mofo.com          RWhite@wmhwlaw.com
3    Morrison & Foerster LLP        Walden Macht Haran & Williams LLP
     707 Wilshire Boulevard         250 Vesey Street
4    Los Angeles, California 90017-3543  New York, NY 10281
     Telephone: 213-892-5200        Telephone: 212-335-2387
5    Facsimile: 213-892-5454        Facsimile: 212-335-2040
6
7    Attorneys for Defendant Bernd Bergmair

8                  UNITED STATES DISTRICT COURT
9                  CENTRAL DISTRICT OF CALIFORNIA

10
11   SERENA FLEITES,                    Case No.: 2:21-cv-4920-WLH-ADS
12                   Plaintiff,         **DEFENDANT BERND
          vs.                           BERGMAIR'S REPLY IN
13   MINDGEEK S.A.R.L., et al.,         SUPPORT  OF
                                        MOTION TO
14                   Defendants.        DISMISS PLAINTIFF'S
15                                      SECOND AMENDED
                                        COMPLAINT
16                                      FOR LACK OF PERSONAL
17                                      JURISDICTION [FRCP
                                        12(B)(2)] AND FOR
18                                      FAILURE TO STATE A
                                        CLAIM [FRCP 12(B)(6)];
19                                      MEMORANDUM OF
20                                      POINTS AND
                                        AUTHORITIES**
21
22                                      Date: January 31, 2025
                                        Time: 1:30 p.m.
23                                      Courtroom: 9B
24                                      Judge: Hon. Wesley L. Hsu
                                        Complaint Filed: June 17, 2021
25                                      Trial Date: None Set
26
27
28

# **TABLE OF CONTENTS**

**Pages**

INTRODUCTION ............................................................................................. 1

ARGUMENT .................................................................................................... 2

I.      Plaintiff has not established personal jurisdiction over Bergmair. ................ 2

    A.      Plaintiff cannot establish the "injustice" element of the alter ego
        test. .................................................................................................... 2

    B.      Plaintiff cannot establish the "unity of interest" element of the
        alter ego test. .................................................................................... 6

        1.      Plaintiff's unity of interest allegations do not establish
            that Bergmair exercised day-to-day control of MindGeek......... 6

        2.      Plaintiff's unity of interest allegations are legally and
            factually unsupported............................................................... 12

II.     Plaintiff has failed to state a claim against Bergmair................................... 16

    A.      Section 230 bars all of Plaintiff's claims against Bergmair. .............. 16

    B.      The federal trafficking claims (Counts I and IV) fail to state a
        claim. ................................................................................................ 17

    C.      The federal child pornography claims (Counts V and VI) fail to
        state a claim..................................................................................... 19

    D.      The California law claims (Counts VII through XVI) fail to state
        a claim. ............................................................................................ 19

CONCLUSION................................................................................................ 20

BERGMAIR REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

## TABLE OF AUTHORITIES

2
**Pages**

3

4
<u>**Cases**</u>

5
*Acevedo v. EXP Realty, LLC*,

6
   713 F. Supp. 3d 740 (C.D. Cal. 2024)............................................................18

7
*Activision Publishing, Inc. v. EngineOwning UG*,

8
   2023 WL 3272399 (C.D. Cal. Apr. 4, 2023)....................................................4

*American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*,
9
   94 F.3d 586 (9th Cir. 1996).........................................................................4, 11

10
*Calvert v. Huckins*,

11
   875 F. Supp. 674 (E.D. Cal. January 13, 1995) ............................................12

12
*Campanelli v. Image First Uniform Rental Service, Inc.*,

13
   2016 WL 4729173 (N.D. Cal. Sept. 12, 2016) ................................................2

14
*Cox v. CoinMarketCap OPCO, LLC,*

15
   112 F.4th 822 (9th Cir. 2024)..........................................................................3

16
*Doe v. Grindr, Inc.*,

17
   2023 WL 9066310 (C.D. Cal. Dec. 28, 2023) ...............................................18

18
*Doe v. Twitter*,

19
   2023 WL 3220912 (9th Cir. 2023)..................................................................17

20
*Doe v. Twitter, Inc.*,

21
   2023 WL 8568911 (N.D. Cal. Sept. 11, 2023) ..............................................18

22
*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001)...........................................................4, 8, 11, 12

23
*Does v. Reddit, Inc.*,

24
   51 F. 4th 1137 (9th Cir. 2022).........................................................................18

25
*Fair Housing Council of San Fernando Valley v. Roomates.com,*

26
   521 F.3d 1157 (9th Cir. 2008)..........................................................................17

27
*Fru-Con Constr. Corp. v. Sacramento Municipal Utility District*,

28
   2007 WL 2384841 (E.D. Cal. Aug. 17, 2007) ..........................................5, 11

*Harris Rutsky & Co. Insurance Services, Inc. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2002)..........................................................................4

*Iconlab, Inc. v. Bausch Health Companies, Inc.*,
    828 F. App'x 363 (9th Cir. 2020)....................................................2, 4, 11, 12

*Iconlab, Inc. v. Valeant Pharma. Intl., Inc.*,
    2017 WL 7240856 (C.D. Cal. Apr. 25, 2017)..........................................2, 12

*Kramer Motors, Inc. v. British Leyland, Ltd.*,
    628 F.2d 1175 (9th Cir. 1980) .......................................................................11

*Krantz v. Bloomberg, L.P.*,
    2022 WL 2102111 (C.D. Cal. Jan. 19, 2022) .................................................2

*Mireskandari v. Daily Mail and General Trust PLC*,
    2013 WL 12114760 (C.D. Cal. July 31, 2013) .............................................11

*Pacific Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*,
    992 F.3d 893 (9th Cir. 2021) ...........................................................................7

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) .........................................................1, 4, 9, 11

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ...........................................................................7

*Sun Group U.S.A. Harmony City, Inc. v. CCRC Corp. Ltd.*,
    2024 WL 2193311 (N.D. Cal. May 14, 2024) ...............................................11

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023) .......................................................................................18

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ...................................................................................8, 11

**Statutes**

18 U.S.C. § 1591(a) ............................................................................17, 18, 19

18 U.S.C. § 1595.............................................................................................18

18 U.S.C. § 2258a(f)(3) ..................................................................................18

47 U.S.C. § 230(c) ....................................................................................16, 17

Cal. Civ. Code § 1708.85................................................................................20

iii

Cal. Civ. Code § 3344.........................................................................................19

Cal. Penal Code § 236.1 ....................................................................................20

# __INTRODUCTION__

Plaintiff's Opposition exposes the fatal flaws in her claims against defendant Bernd Bergmair.  Her response to the arguments in Bergmair's motion to dismiss is to simply ignore them – because she has no answer for them – or instead to exaggerate the evidence she elicited in jurisdictional discovery in a futile attempt to meet the legal requirements of her claims.  Both approaches make plain the insufficiency of her claims.  To begin with, Plaintiff abandons any argument that Bergmair, who lives in China, has any contacts with the United States sufficient to confer personal jurisdiction over him.  Instead, Plaintiff's sole remaining argument for personal jurisdiction over Bergmair relies upon imputing to him the contacts of the MindGeek entities on an alter ego basis.  But as evidence Plaintiff elicited in jurisdictional discovery makes plain, she cannot establish either of the two elements of an alter ego claim.  **First** and most obviously, she cannot establish the injustice element of the alter ego test.  The SAC nowhere alleges that the MindGeek corporate defendants are insolvent or unable to pay a judgment in this single-plaintiff case, and discovery revealed that the ███████████████████████████████ ████████████████████████████████████████  As a result, there is no basis to require Bergmair – a foreign resident who was merely the beneficial owner of one of the shareholders of MindGeek – to remain in the case.  This flaw alone requires dismissal of the case against Bergmair, without the need for the Court to address Plaintiff's allegations regarding the unity of interest element.  **Second**, Plaintiff also cannot satisfy the unity of interest prong of the alter ego test since she cannot show that Bergmair exercised "pervasive control" and "dictate[d] every facet" of MindGeek's business, including "routine matters of day-to-day operation."[1]  The SAC concedes that the company's full-time, highly paid CEO and COO handled its daily operations, and none of the evidence Plaintiff gathered in jurisdictional discovery establishes that Bergmair was in day-to-day control of the

---

[1] *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015).

company's operations.  In fact, the evidence affirmatively shows the opposite: while Bergmair was kept informed of the business's progress, as is common for a substantial shareholder, he did not exercise decision-making authority over MindGeek's daily operations.  Because Plaintiff cannot establish either element of the alter ego test – her only claimed basis for personal jurisdiction over Bergmair – the Court should grant Bergmair's motion to dismiss for lack of personal jurisdiction.

Similarly, Plaintiff's Opposition barely mentions Bergmair in attempting to argue that her claims are adequately pled.  In addition to its numerous other flaws, the SAC does not allege that Bergmair even knew of Plaintiff or her videos, and as a result, fails to state any basis to deny Bergmair Section 230 immunity and is insufficient to state any claims against Bergmair and should be dismissed.

## ARGUMENT[2]

### I.    Plaintiff has not established personal jurisdiction over Bergmair.

#### A.    Plaintiff cannot establish the "injustice" element of the alter ego test.

Plaintiff's Opposition makes clear that she is unable to establish the injustice element of the alter ego test.[3]  The SAC nowhere alleges that the MindGeek corporate defendants are insolvent or unable to pay a judgment in this case.

---

[2] In addition to the arguments set forth here, Bergmair joins in the motions and arguments submitted by all other defendants, as applicable.

[3] Plaintiff stakes her alter ego claim on the theory that the Individual Defendants and MindGeek corporate defendants comprise a "single enterprise" (Plaintiff's Opposition ("Opp.") 62, 76-78) but this is not a basis for establishing personal jurisdiction. *See Krantz v. Bloomberg, L.P.*, 2022 WL 2102111 at *5 (C.D. Cal. Jan. 19, 2022) ("courts within this circuit routinely reject the use of a 'single enterprise' theory as a basis to establish personal jurisdiction"); *Iconlab, Inc. v. Valeant Pharma. Intl., Inc.*, 2017 WL 7240856 at *6 (C.D. Cal. Apr. 25, 2017) (same), *aff'd on other grounds, Iconlab, Inc. v. Bausch Health Companies, Inc.*, 828 F. App'x 363, 364 (9th Cir. 2020); *Campanelli v. Image First Uniform Rental Service, Inc.*, 2016 WL 4729173 at *7 (N.D. Cal. Sept. 12, 2016) (same).

Moreover, the jurisdictional discovery Plaintiff obtained affirmatively shows the opposite: MindGeek can pay a judgment in this case, and indeed, ████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████ Moreover, that substantial valuation reflects ██████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████.[4]  In addition, last year's financial statements for the specific corporate defendants that own and operate Pornhub, MG Freesites Ltd. (Freesites") and 9219-1568 Quebec, Inc. ("9219") – which do not challenge personal jurisdiction – ████████████████████████████████████

████████████████  Recognizing that, in the face of this evidence, she cannot satisfy the injustice element of the alter ego test, Plaintiff retreats to a series of meritless arguments to paper over this fatal flaw.[5]

First, Plaintiff claims – contrary to decades of Ninth Circuit precedent – that the injustice element of the alter ego test does not apply in the jurisdictional context. Opp. 82-83.  This is simply wrong.  In applying the alter ego test in the personal jurisdiction context, the Ninth Circuit has repeatedly (including just months ago) defined the test as requiring *both* unity of interest *and* injustice.  *See, e.g.*, *Cox v. CoinMarketCap OPCO, LLC,* 112 F.4th 822, 835 (9th Cir. 2024) (to establish personal jurisdiction under an alter ego theory, a plaintiff must show both unity of

---

[4] ████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████

[5] The Opposition does not even address the multiple cases holding that failure to establish that a corporate defendant is unable to pay a judgment is grounds for dismissal of its supposed alter ego owner.  Bergmair Br. 19-20.

interest and that "failure to disregard [their separate identities] would result in fraud or injustice") (internal quotation marks and citation omitted); *Iconlab, Inc. v. Bausch Health Companies, Inc.*, 828 F. App'x 363, 364 (9th Cir. 2020) (same); *Ranza*, 793 F.3d at 1073 and 1075 n.9 (same); *Harris Rutsky & Co. Insurance Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134-35 (9th Cir. 2002) (same); *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (same); *American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) (same). Plaintiff's desperate – and demonstrably incorrect – argument that she need not establish injustice indicates her awareness that she cannot satisfy this element.[6]

The cases Plaintiff cites in support of her argument (Opp. 82-83) contradict her claim or are irrelevant. The only California case she cites, *Activision Publishing, Inc. v. EngineOwning UG*, 2023 WL 3272399 (C.D. Cal. Apr. 4, 2023), directly undercuts her argument. On the same page Plaintiff cites, the Court stated the *exact opposite* of the argument she now advances, ruling that to establish personal jurisdiction under an alter ego theory a plaintiff must plead facts supporting "two elements," including that "failure to disregard the corporation would result in fraud or injustice." *Id*. at *6 (internal quotation marks omitted). Plaintiff's remaining cases also do not support her argument and, in any event, have no application here because they are interpreting Texas, New York and Mississippi state law.

Indeed, Plaintiff previously recognized that the injustice prong of the alter ego test applies to jurisdiction. In filings, Plaintiff argued that the terms of the 2023 buy-out agreements entered into by the Individual Defendants were "highly relevant to the Court's jurisdictional and alter ego analyses," since they were "critical" to the issue of "enforcing a judgment against insolvent or undercapitalized entities." Proposed Notice of Motion and Motion to Compel Defendants' Buy-Out

---

[6] The Court in this case also ruled more than once that Plaintiff must demonstrate injustice to employ an alter ego theory to establish personal jurisdiction. *See* July 29, 2022 Order (ECF No. 167) at 4; Feb. 3, 2023 Order (ECF No. 260) at 3.

Agreements (ECF No. 356-2) at 3-4, 6.[7] It was only after the buy-out agreements were produced and Plaintiff realized that they undercut her alter ego claim that she began furiously backpedaling and now argues that they are legally irrelevant.

Plaintiff offers several other equally meritless arguments. First, she asserts that █████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████ This is nothing more than a repetition of her incorrect argument that the alter ego test has no injustice element; she claims that failure to pierce the corporate veil where she has shown unity of interest would be an injustice, collapsing the two alter ego elements into one. *See Fru-Con Constr. Corp. v. Sacramento Municipal Utility District*, 2007 WL 2384841 at *3 (E.D. Cal. Aug. 17, 2007) (rejecting argument that failure to maintain corporate separateness would result in injustice, ruling that "if this were sufficient, … the injustice prong of the test would collapse into the unity prong and become superfluous").

Second, Plaintiff argues that she has alleged █████████████████ ████████████████████████████████████████████████ But the SAC nowhere links this supposed ██████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

---

[7] *See also* Plaintiff's Opposed Ex Parte Application to Shorten Time on Motion to Compel (ECF No. 356) at 1 (same). While the parties were meeting and conferring regarding redactions to protect attorney-client privileged and other confidential information in the buy-out agreements, Plaintiff filed an *ex parte* application to shorten the time for a potential motion to compel. Once the parties reached agreement on the appropriate redactions, Defendants produced the agreements.

1    ███████████████████████████████ Plaintiff's argument that

2    ████████████████████████ also flies in the face of her own allegations that

3    MindGeek is the "dominant" monopoly in an industry that generates $97 billion in

4    revenues per year (SAC ¶¶ 2, 34), its tubesites are "some of the most trafficked on

5    the internet," with as many visitors as Amazon and Netflix (SAC ¶ 34), and it earns

6    "enormous amounts of money" (SAC ¶¶ 9, 34).

7         Third, Plaintiff mischaracterizes the buy-out agreements, ████████████

8    █████████████████████████████████████████████████████████

9    ██████████████████████ Notably, Plaintiff's Opposition cites no evidence

10   supporting this claim.  Discovery Plaintiff herself elicited shows that her claim is

11   simply incorrect. ████████████████████████████████████████

12   █████████████████████████████████████████████████████████

13   █████████████████████████████████████████████████████████

14   █████████████████████████████████████████████████████████

15   █████████████████████████████████████████████████████████

16   █████████████████████████████████████████████████████████

17   ███████████████████████████████████████████[8]

18   **B.    Plaintiff cannot establish the "unity of interest" element of the**

19   **alter ego test.**

20        **1.    Plaintiff's unity of interest allegations do not establish that**

21        **Bergmair exercised day-to-day control of MindGeek.**

22        Plaintiff has no answer for the extensive evidence summarized in Bergmair's

23   motion and his Declaration (¶¶ 7-8) establishing that he did not exercise day-to-day

24   control of MindGeek's operations, which is a prerequisite for a finding of alter ego.

25   _____

26   [8] Plaintiff also makes the desperate argument that ████████████████████████

27   █████████████████████████████████████████████████████████

28   ██████████████████████████ But if Plaintiff thought she was entitled to
     further discovery, she could have filed a motion to compel.

Bergmair Br. 21-25.  Plaintiff does not even try to square her argument with her concession that Antoon and Tassillo "handl[ed] the direct day-to-day implementation" of MindGeek's operations.  SAC ¶ 109.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (plaintiff can "plead himself out of a claim" by alleging facts inconsistent with his claim).  In addition, Plaintiff offers no explanation:

- ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████

- ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████

- how Bergmair could direct daily operations of the company from Hong Kong when ████████████████████████████████████ ███████████████[0] whose business day is nighttime in Hong Kong.  *Id*. at 6, 21-22.

- why Antoon would testify before a Canadian parliamentary committee that Bergmair was "a passive investor" who was "not involved in daily activities" of the company, if that were not true.[11]  *Id*. at 6.

- ██████████████████████████████████████████████████████████████████

---

[9] ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████

[10] ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████

[11] The Ninth Circuit observed in the alter ego context that "investors often do not care about the details of business – they just invest their money with purported experts and expect a good return." *Pacific Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 900 (9th Cir. 2021).

████████████████████████████████████
██████████████████████

● ███████████████████████████████████████
███████████████████

Where Plaintiff's Opposition addresses the evidence regarding the management of MindGeek, she frequently mischaracterizes it, in a futile attempt to satisfy the legal standard requiring day-to-day control. As a substantial shareholder, Bergmair was kept informed regarding the business, as both he and Antoon testified, but Bergmair did not direct its operations or manage the company on a daily basis. Bergmair Br. 5-7. Plaintiff repeatedly tries to blur the distinction between a shareholder being kept informed of the business's progress – which is typical and not indicative of an alter ego relationship – versus exercising decision-making authority and directing its operations on a daily basis. *Unocal Corp.*, 248 F.3d at 926 (majority shareholder monitoring company's performance is "consistent with [its] investor status" and does not indicate an alter ego relationship) (quoting *United States v. Bestfoods*, 524 U.S. 51, 59 (1998)).

For example, Plaintiff claims that Antoon testified that ████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

1 ██████████████████████████████████████████████████

2 ██████████████████████████████████████████████████

3 ████████████████████████████████████████████[12]

4      Plaintiff similarly mischaracterizes Bergmair's (non-existent) involvement in

5 formulating MindGeek's content moderation policies.  Bergmair Decl. ¶¶ 7-8. ████

6 ██████████████████████████████████████████████████

7 ██████████████████████████████████████████████████

8 ██████████████████████████████████████████████████

9 ██████████████████████████████████████████████████

10 ██████████████████████████████████████████████████

11 ██████████████████████████████████████████████████

12 ██████████████████████████████████████████████████

13 ██████████████████████████████████████████████████

14 ██████████████████████████████████████████████████

15 ██████████████████████████████████████████████████

16 ██████████████████████████████████████████████████

17 ██████████████████████████████████████████████████

18 ████████████████████████████████*Ranza*, 793 F.3d at 1073.

19 _____

20 [12] The Opposition repeats other mischaracterizations of the record already debunked

21 in Bergmair's motion, including how often Antoon spoke to Bergmair (Opp. 69) and

   her incorrect claim that Bergmair appointed the directors of all MindGeek entities

22 (Opp. 71).  Bergmair Br. 6, n.6; 22, n.18.

23 [13] Plaintiff cites emails almost exclusively from February through June 2020,

24 implicitly and inaccurately suggesting that the volume of emails received by

   Bergmair during this period was typical of the ten-year period when he was a

25 shareholder. ██████████████████████████████████████

26 ██████████████████████████████████████████████████

27 ██████████████████████████████████████████████████

28 ██████████████████████████████████████████████████

1 ██████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████

3 ██████████████████████████████████████████████████████

4 ██████████████████████████████████████████████████████

5 ██████████████████████████████████████████████████████

6 ██████████████████████████████████████████████████████

7 ██████████████████████████████████████████████████████

8 ██████████████████████████████████████████████████████

9 ██████████████████████████████████████████████████████

10 ██████████████████████████████████████████████████████

11 ██████████████████████████████████████████████████████

12 ██████████████████████████████████████████████████████

13 ██████████████████████████████████████████████████████

14 ███████████████████████████████████████ Thus, the

15 emails Plaintiff cites as proof of Bergmair's supposed involvement in content

16 moderation policies reflect no decision-making by him.  Her inability to cite even

17 one instance of Bergmair setting such policies confirms ██████████████████

18 ██████████████████████████████████████████████████████

19 ██████████████████████████████████████████████████████

20 ██████████████████████████████████████████████████████

21 █████[14]

22       The handful of remaining actions by Bergmair that Plaintiff alleges do

23 _____

24 [14] The other emails involving Bergmair cited by the Opposition also incorrectly

25 equate information being provided to Bergmair with him exercising day-to-day decision-making control. ████████████████████████████████████████████

26 ██████████████████████████████████████████████████████

27 ██████████████████████████████████████████████████████

28 ████████████████████████████████████

not establish that he had the requisite day-to-day control of MindGeek.  Instead, they are "consistent with [his] investor status," and do not give rise to alter ego status. *Unocal Corp.*, 248 F.3d at 926 (quoting *Bestfoods*, 524 U.S. at 59); Bergmair Br. 23-25.  The Opposition does not address this argument, instead simply repeating a list of exaggerated allegations.  Opp. 70.  But the alleged actions by Bergmair –

████████████████████████████████████████████████████ █ ███████████

████████████████████████████████████████[16] and staying ███████████████████

████████████[17] – are prototypical examples of what the Ninth Circuit has found to be

---

[15] *See Iconlab, Inc.*, 828 F. App'x 363, 364–65 (owner "approved [companies'] large purchases"); *Ranza*, 793 F.3d at 1074-75 (owner approved "large purchases" and set general policies); *Unocal*, 248 F.3d at 927 (owner involved in company's "acquisitions, divestments and capital expenditures" and formulated "general business policies and strategies"); *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980) (parent had "general executive responsibility for the operation" of its subsidiary and "reviewed and approved its major policy decisions"); *Sun Group U.S.A. Harmony City, Inc. v. CCRC Corp. Ltd.*, 2024 WL 2193311, at *11-13 (N.D. Cal. May 14, 2024) (owner directed acquisitions and major financial actions); *Fru-Con Constr.*, 2007 WL 2384841 at *5-6 (owner approved major contracts).

[16] *See American Tel. & Tel.*, 94 F.3d at 589, n. 4 (owner's employee on company's board caused termination of senior executives); *Mireskandari v. Daily Mail and General Trust PLC*, 2013 WL 12114760 at *3 and *6 (C.D. Cal. July 31, 2013) (owner set company's policies with respect to compensation); *Fru-Con Constr.*, 2007 WL 2384841 at *5-6 (owner approved personnel decisions).  As noted in Bergmair's motion, ███████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████

[17] *See Ranza,* 793 F.3d at 1074 (parent company operated "information tracking systems" that all its subsidiaries used); *Unocal*, 248 F.3d at 926 (parent company involved in "monitoring of the subsidiary's performance"); *American Tel & Tel. Co.*, 94 F.3d at 589, n. 4 (9th Cir. 1996) (parent company "received reports" concerning subsidiary and monitored details of its business through its representative who attended board meetings); *Fru-Con Constr.*, 2007 WL 2384841 at *5-7 (parent company's employee spent extensive time at worksite of company discussing project, interviewing executives and "keeping abreast" of developments; subsidiary

"macromanagement," which, even along with other corporate involvement, does not give rise to an alter ego relationship. Bergmair Br. 22-24.[18]

Even after extensive discovery, Plaintiff's throw-everything-against-the-wall-and-see-what-sticks approach fails to show that Bergmair exercised day-to-day control of MindGeek. Despite her fusillade of allegations, they simply do not satisfy the legal standard to find an alter ego relationship. *See Unocal*, 248 F.3d at 928 (affirming district court's rejection of alter ego claim where plaintiffs "present[ed] a wealth of evidence" obtained in jurisdictional discovery but failed to satisfy alter ego standard); *Iconlab*, 2017 WL 7240856 at *6 ("even after months of jurisdictional discovery, Plaintiffs have been unable to establish a prima facie case" of alter ego), *aff'd., Iconlab*, 828 F. App'x at 364-65.

> ## 2. Plaintiff's unity of interest allegations are legally and factually unsupported.

In addition to the deficiencies described above, Plaintiff's overall alter ego theory is based on an incorrect legal premise and factual allegations that are contradicted by the evidence developed in jurisdictional discovery. The gist of her alter ego theory is that (1) ██████████████████████████████ ████████████████████████████████████████████████ ██████████████████ and (2) ████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

---

had "duty" to report significant issues to parent); *Calvert v. Huckins*, 875 F. Supp. 674, 679 (E.D. Cal. January 13, 1995) ("broad oversight" typical of majority owner).

[18] Plaintiff's other allegations similarly do not amount to day-to-day control of the company: ████████████████████████████████████████████████ ████████████████████████████████████████

1 ███████████████████████████████████████████████████████

2 ███ The first element of Plaintiff's theory rests on a basic misunderstanding of

3 corporate law.  Shareholder agreements distributing economic or voting rights in

4 different proportion than shareholding interests are common and perfectly proper.[19]

5 Bergmair Br. 26-27.  Moreover, █████████████████████████████████████

6 ████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████

8 ██████████████ █ ██████████████████████ Plaintiff does not even

9 attempt to rebut this argument in her Opposition.

10      The second element of Plaintiff's alter ego theory is directly contradicted by

11 the Andreou Declaration, as well as Bergmair's deposition testimony, which

12 establish ███████████████████████████████[21] ███████

13 ████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████

15 ███████████████████████████████ In her Opposition,

16 Plaintiff doubles down on this unsupported claim.  In the face of Andreou's

17 _____

18 [19] ████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████

21 ████████████████████████████████████████████

22 [20] ████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████

24 ██████████████████████████

25 [21] Other evidence corroborates the Andreou Declaration on this point. ██████

26 ████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████

28 ████████████████████████████████████████



13

1  declaration, Plaintiff does not cite a single piece of evidence to support her claim

2  ███████████████████████████████████████████████████████████████

3  ███████████████████████████████████████████████████████████████

4  ███████████████████████████████████████████████████████████████

5  ███████████████████████████████████████████████████████████████

6  ██████████[22]

7      The evidence is also clear with respect to ██████████████████████

8  ████████  ████████████████████████████████████████████████████████

9  ██████████████████████████████████  ████████████████████████

10  ███████████████████████████████████████████████████████████████

11  ███████████████████████████████████████████████████████████████

12  ███████████████████████████████████████████████████████████████

13  ███████████████████████████████████████████████████████████████

14  ███████████████████████████████████████████████████████████████

15  ███████████████████████████████████████████████████████████████

16  ███████████████████████████████████████████████████████████████

17  ███████████████████████████████████████████████████████████████

18  ███████████████████████████████████████████████████████████████

19  ███████████████████████████████████████████████████████████████

20  ███████████████████████████████████████████████████████████████

21

22

23  _____

24  [22] Again, Plaintiff's theory requires accepting the proposition that ████████

25  ███████████████████████████████████████████████████████████████

26  ███████████████████████████████████████████████████████████████

27  █████████████████

28  [23] ████████████████████████████████████████████████████████████



[25] Thus, despite receipt of thousands of pages of MindGeek financial records, Plaintiff can cite just one document to support the central factual claim of her alter ego theory – and that document literally shows the opposite of what she claims.[26]

Plaintiff tacks onto her alter ego theory an allegation that

_____

[24]

[25]

[26] The Opposition also recycles factual claims that were debunked in Bergmair's motion.

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 ████████████████████████████████████████████████

6 ████████████████████████████████████████████████

7 ████████████████████████████████████████████████

8 ████████████████████████████████████████████████

9 ████████████████████████████████████████████████

10 ████████████████████████████████████████████████

11 ███████████████████████████████████████ But as noted

12 above, such shareholder agreements are common and proper.[28]

13 **II.    Plaintiff has failed to state a claim against Bergmair.**

14      In addition to those set forth in the motions and replies of the other Defendants,

15 Plaintiff's claims are insufficient with respect to Bergmair for additional reasons.

16      **A.    Section 230 bars all of Plaintiff's claims against Bergmair.**

17      Plaintiff asserts without explanation that Section 230 does not apply to

18 Bergmair (Opp. 53, n.34) and ignores the cases cited by Bergmair confirming that,

19 given the SAC's allegations, he is a "provider ... of an interactive computer service."

20 47 U.S.C. § 230(c); Bergmair Br. 35.  Plaintiff argues that certain alleged actions by

21 _____

22 [27] Plaintiff incorrectly claims ██████████████████████████

23 ████████████████████████████████████████████████

24 ████████████████████████████████████████████████

25 ████████████████████████████████████████████████

26 ████████████████████████████████████████

27 [28] ██████████████████████████████████████████████

28 ████████████████████████████████████████████

MindGeek, such as allowing users to create titles and tags for videos, make it a "content creator" and thus ineligible for Section 230 immunity. Opp. 53-55. But the SAC nowhere alleges that Bergmair was involved in the specific practices that Plaintiff says take MindGeek out of Section 230's protections. The only specific allegation the SAC makes regarding Bergmair's involvement in MindGeek is that he did not change its pre-existing "unrestricted content" model (SAC ¶¶ 17, 109, 149-51, 157), which is exactly what the Ninth Circuit has ruled Section 230 immunizes: "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online." *Fair Housing Council of San Fernando Valley v. Roomates.com,* 521 F.3d 1157, 1170-71 (9th Cir. 2008).

**B.      The federal trafficking claims (Counts I and IV) fail to state a claim.**

Plaintiff has no serious argument that her claim for direct trafficking liability under §1591(a)(1) is sufficient. Opp. 19, n.12. Because Bergmair did not know Plaintiff, he could not have taken one of the actions specified in subsection (a)(1) with respect to her person. Bergmair Br. 39. *Doe v. Twitter*, 2023 WL 3220912 at *2 (9th Cir. 2023) (§1591(a)(1) requires that defendant took one of the specified actions with respect to "*a person*") (emphasis added).

The absence of any allegation that Bergmair had dealings with Plaintiff or her traffickers is also fatal to her beneficiary liability claim under §1591(a)(2). Bergmair Br. 39. Earlier in this case, Judge Carney ruled that Plaintiff had not adequately pled a §1591(a)(2) claim against Visa because, without such interaction, it could not have formed an agreement with the primary traffickers or known that plaintiff was a victim of trafficking. July 29, 2022 Order (ECF No. 166) at 21-22. This analysis applies equally to Bergmair, who had no interaction with or knowledge of Plaintiff, her traffickers or her videos.[29] The Ninth Circuit's decision in *Does v.*

---

[29] Even if Section 230 did not apply and the standard for a §1595 civil claim governed, a plaintiff must show a "direct association or a business relationship" with

*Reddit, Inc.*, 51 F. 4th 1137 (9th Cir. 2022) and the cases following it bolster this conclusion. In those cases, courts found factual allegations essentially identical to those against MindGeek here were insufficient to demonstrate a violation of §1591(a)(2). They make clear that, even though MindGeek dealt directly with Plaintiff and handled her videos, the SAC's allegations against it are nonetheless insufficient to establish beneficiary liability under §1591(a)(2). *See, e.g.*, *Reddit*, 51 F. 4th at 1145; *Doe v. Grindr, Inc.*, 2023 WL 9066310 at *7 (C.D. Cal. Dec. 28, 2023); *Doe v. Twitter, Inc.*, 2023 WL 8568911 at *7-8 (N.D. Cal. Sept. 11, 2023). If the conduct in these cases by websites themselves does not amount to trafficking under §1591(a)(2), a corporate shareholder who had no dealings with Plaintiff, her traffickers or her videos cannot be liable under this provision. Indeed, none of the alleged conduct Plaintiff cites as the basis of MindGeek's participation in the venture, such as suggesting titles and tags for content (Opp. 11-14), is alleged to have involved Bergmair. The only allegation against Bergmair is that he failed to change MindGeek's supposed pre-existing "unrestricted content" model – even though federal law explicitly provided that a website had no duty to affirmatively screen for underage content. 18 U.S.C. § 2258a (f)(3). Failing to do something the law does not require in the first place cannot possibly satisfy the elements of §1591. *See also Twitter, Inc. v. Taamneh*, 598 U.S. 471, 489 (2023) (failure to police a website's user-generated content was insufficient for aiding and abetting liability since "our legal system generally does not impose liability for mere omissions, inactions or nonfeasance").

Finally, recognizing that §1595 does not apply extraterritorially, Plaintiff contends that her claim involves a "domestic application" of the statute since the "focus" of §1591 is trafficking. Opp. 84. Even if that were true of §1591(a)(1), plaintiff has no viable claim under that subsection. The plain language of

---

traffickers to establish a defendant's participation in the venture. *Acevedo v. EXP Realty, LLC*, 713 F. Supp. 3d 740, 783-84 (C.D. Cal. 2024). The SAC does not allege that Bergmair knew Plaintiff's alleged traffickers (her boyfriends).

§1591(a)(2) indicates that its "focus" is the receipt of a "benefit" from trafficking.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

### C.      The federal child pornography claims (Counts V and VI) fail to state a claim.

Plaintiff has no real answer to Bergmair's argument that the SAC lacks any allegation that he was aware of her videos and that she was underage (Bergmair Br. 39), instead asserting that knowledge may be inferred from "general allegations." Opp. 47, n.26.   But the SAC does not allege Bergmair had any contact with Plaintiff's videos or suggest any reason why, of the millions of videos posted by users annually on MindGeek websites, Bergmair would have become aware of those featuring Plaintiff.  As a result, there are simply no allegations in the SAC to support an inference that Bergmair knew Plaintiff's age or the content of her videos.

### D.      The California law claims (Counts VII through XVI) fail to state a claim.

Plaintiff's state law claims suffer from the same flaw as her federal claims: since the SAC does not allege that Bergmair had any contact with Plaintiff or her videos, it necessarily fails to allege that he took the specific actions necessary to satisfy the elements of her claims.   Each state common law claim cites the same factual allegation as its basis: MindGeek "maintain[ed], stream[ed], distribut[ed], reupload[ed] and monetiz[ed] videos" of Plaintiff on its websites.  SAC ¶¶ 530, 538, 543, 550, 570.  *See* SAC ¶ 591.  But the SAC does not allege that Bergmair even knew of Plaintiff or her videos, much less that he personally took any of the alleged actions with respect to her videos.  Her state statutory claims suffer from the same flaw.  Count XI asserts a claim under California Civil Code § 3344, which requires that a defendant "knowingly use another's name ... or likeness, in any manner ... without such person's consent ...."  Count XII asserts a claim under California Civil

Code § 1708.85, which provides a right of action against anyone who "intentionally distributes by any means a photograph [or] videotape ... of another, without the other's consent ...." The SAC does not allege that Bergmair knew of Plaintiff or her videos, much less that he used her likeness or took any action regarding her videos. Count XV asserts a claim under California's trafficking statute, which applies to one who "induces or persuades ... a person who is a minor ... to engage in a commercial sex act." Cal. Penal Code § 236.1(c). Just as under the federal trafficking statute, since there is no claim that Bergmair even knew Plaintiff, he could not have taken one of the actions specified in § 236.1 with respect to her "person."

## **CONCLUSION**

For these reasons, the Court should dismiss the SAC with prejudice for both lack of personal jurisdiction and failure to state a claim for relief.

Dated: December 6, 2024

By: */s/ Ronald G. White*

RONALD G. WHITE
(admitted *pro hac vice*)
rwhite@wmhwlaw.com
Walden Macht Haran & Williams LLP
250 Vesey Street
New York, NY  10281
Tel: (212) 335-2387
Fax: (212) 335-2040

DAN MARMALEFSKY (CA SBN 95477)
DMarmalefsky@mofo.com
Morrison & Foerster LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: 213-892-5200
Facsimile: 213-892-5454

Attorneys for Defendant Bernd Bergmair

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Bernd Bergmair, certifies that the Memorandum of Points and Authorities consists of 20 pages, which complies with the 20-page limit set forth in the Court's October 11, 2024 Order Granting Joint Stipulation to Request Extension of Remaining Briefing Schedule for Defendants' Responses to Plaintiff's Second Amended Complaint (ECF No. 473).

Dated: December 6, 2024                Respectfully submitted,


                                        */s/ Ronald G. White*
                                        RONALD G. WHITE
                                        (admitted *pro hac vice*)
                                        rwhite@wmhwlaw.com
                                        Walden Macht Haran & Williams LLP
                                        250 Vesey Street
                                        New York, NY  10281
                                        Tel: (212) 335-2387
                                        Fax: (212) 335-2040

                                        DAN MARMALEFSKY (CA SBN 95477)
                                        DMarmalefsky@mofo.com
                                        Morrison & Foerster LLP
                                        707 Wilshire Boulevard
                                        Los Angeles, California 90017-3543
                                        Telephone: 213-892-5200
                                        Facsimile: 213-892-5454

                                        Attorneys for Defendant Bernd Bergmair

1

## <u>CERTIFICATE OF SERVICE</u>

2      The undersigned, the counsel of record for Bernd Bergmair, certifies that the

3  foregoing instrument was served pursuant to the Federal Rules of Civil Procedure

4  on December 6, 2024 upon all counsel of record via ECF.

5  Dated: December 6, 2024          Respectfully submitted,

6

7                                   */s/ Ronald G. White*

8                                   RONALD G. WHITE
                                    (admitted *pro hac vice*)
9                                   rwhite@wmhwlaw.com
                                    Walden Macht Haran & Williams LLP
10                                  250 Vesey Street
                                    New York, NY  10281
11                                  Tel: (212) 335-2387
                                    Fax: (212) 335-2040
12

13
                                    DAN MARMALEFSKY (CA SBN 95477)
14                                  DMarmalefsky@mofo.com
                                    Morrison & Foerster LLP
15                                  707 Wilshire Boulevard
                                    Los Angeles, California 90017-3543
16                                  Telephone: 213-892-5200
                                    Facsimile: 213-892-5454
17

18                                  Attorneys for Defendant Bernd Bergmair

19

20

21

22

23

24

25

26

27

28