David G. Hille (*pro hac vice*)
dhille@whitecase.com
Kevin C. Adam (*pro hac vice*)
kevin.adam@whitecase.com
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY  10020-1095
Telephone:   (212) 819-8357
Facsimile:    (212) 354-8113

Russell J. Gould (SBN 313352)
russell.gould@whitecase.com
WHITE & CASE LLP
555 S. Flower Street, Suite 2700
Los Angeles, CA  90071-2433
Telephone:   (213) 620-7700
Facsimile:    (213) 452-2329

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SERENA FLEITES,<br><br>                    Plaintiff,<br><br>        v.<br><br>MINDGEEK S.A.R.L., et al.,<br><br>                    Defendants. | Case No. 2:21-cv-4920-WLH-ADS<br><br>Hon. Wesley L. Hsu<br><br>**DEFENDANTS COLBECK CAPITAL MANAGEMENT, LLC; CB MEDIA VENTURES DD, LLC; CB AGENCY SERVICES, LLC; AND CB PARTICIPATIONS SPV, LLC'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Hearing:     January 31, 2025<br>Time:        1:30 p.m.<br>Courtroom: 9B |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 2

    I.     Plaintiff Cannot Escape the Lack of Standing and Causation for Claims Against the CB Defendants ........................................................ 2

    II.    Plaintiff Does Not Overcome the Failure to Plead a Plausible Claim for TVPRA Beneficiary Liability Against the CB Defendants ............................................................................................... 4

    III.   Plaintiff Asks the Court to Save the TVPRA Conspiracy Claim by Declining to Follow the Ninth Circuit ............................................ 12

    IV.   Plaintiff, In Any Event, Does Not Salvage the SAC's Failure to Allege a Conspiracy Involving the CB Defendants ............................. 14

    V.    Plaintiff Fails to Refute That the SAC Pleads No UCL or FAL Claim ............................................................................................... 18

    VI.   Doe Defendants Did Not Toll the Statutes of Limitations ................. 19

    VII.  Section 230 Must Bar All Claims Against the CB Defendants ........... 19

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*117 Sales Corp. v. Olsen*,
  80 Cal. App. 3d 645 (1978)......................................................................4

*A.B. v. Hilton Worldwide Holdings, Inc.*,
  484 F. Supp. 3d 921 (D. Or. 2020).........................................................10

*A.M. v. Omegle.com*,
  No. 3:21-cv-01674-MO, 2023 WL 1470269
  (D. Or. Feb. 2, 2023) .................................................................................9

*Acevedo v. eXp Realty, LLC*,
  713 F. Supp. 3d 740 (C.D. Cal. 2024).......................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................11

*Barrio v. Cnty. of San Bernardino*,
  No. 5:17-cv-2470-JGB-KK, 2020 WL 4037169
  (C.D. Cal. Mar. 26, 2020) .......................................................................19

*B.J. v. G6 Hosp., LLC*,
  No. 22-cv-03765-MMC, 2023 WL 3569979
  (N.D. Cal. May 19, 2023).........................................................................6

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009)................................................................20

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
  No. 20-cv-00656-BLF, 2020 WL 4368214
  (N.D. Cal. July 30, 2020) .........................................................................9

*Brill v. Chevron Corp.*,
  No. 3:15-cv-4916-JD, 2017 WL 76894
  (N.D. Cal. Jan. 9, 2017)............................................................................3

*Colvin v. Roblox Corp.*,
  725 F. Supp. 3d 1018 (N.D. Cal. 2024) ................................................20

- ii -

*Compound Prop. Mgmt., LLC v. Build Realty, Inc.*,
    462 F. Supp. 3d 839 (S.D. Ohio 2020) ................................................................16

*Coubaly v. Cargill, Inc.*,
    610 F. Supp. 3d 173 (D.D.C. 2022) ......................................................................2

*Ctr. For Biological Diversity v. U.S. E.P.A.*,
    90 F. Supp. 3d 1177 (W.D. Wash. 2015) ...............................................................4

*Doe #1 v. Red Roof Inns, Inc.*,
    21 F.4th 714 (11th Cir. 2021) ........................................................................6, 10

*Doe 1 v. Apple Inc.*,
    96 F.4th 403 (D.C. Cir. 2024) ...............................................................................7

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
    671 F. Supp. 3d 387 (S.D.N.Y. 2023) .....................................4, 5, 6, 8, 9, 11, 15

*Doe (L.M.) v. 42 Hotel Raleigh, LLC*,
    717 F. Supp. 3d 464 (E.D.N.C. 2024) ..................................................................10

*Doe (S.C.) v. Sheraton, LLC*,
    No. 23-cv-00451-KG-JMR, 2024 WL 1329422
    (D.N.M. Mar. 28, 2024) .........................................................................................9

*Doe v. Mindgeek USA Inc.*,
    558 F. Supp. 3d 828 (C.D. Cal. 2021) ....................................................................7

*Doe v. Wyndham Hotels & Resorts*,
    No. 8:23-cv-01554-JVS-JDE, 2024 WL 2104596
    (C.D. Cal. Feb. 28, 2024) ......................................................................................6

*Does 1-6 v. Reddit, Inc.*,
    51 F.4th 1137 (9th Cir. 2022) ...............................................................................6

*Foundry IV Inc. v. Hard Carry Gaming Inc.*,
    No. 23-cv-2690-KK-MAR, 2024 WL 211010
    (C.D. Cal. Jan. 3, 2024) .......................................................................................18

*G.G. v. Salesforce.com, Inc.*,
    76 F.4th 544 (7th Cir. 2023) .....................................................4, 5, 6, 7, 9, 10, 20

*G.W. v. Northbrook Indus., Inc.*,
    No. 1:20-cv-05232-JPB, 2024 WL 3166083
    (N.D. Ga. June 14, 2024) ...............................................................................7, 10

- iii -

*Geiss v. Weinstein Co. Holdings LLC,*
   383 F. Supp. 3d 156 (S.D.N.Y. 2019) ................................................................4, 6

*Handy v. LogMeIn, Inc.,*
   No. 1:14-cv-01355-JLT, 2015 WL 1729681
   (E.D. Cal. Apr. 15, 2015) ...........................................................................19

*HomeAway.com, Inc. v. City of Santa Monica,*
   918 F.3d 676 (9th Cir. 2019) ......................................................................20

*J.M. v. Choice Hotels Int'l, Inc.,*
   No. 2:22-cv-00672-KJM-JDP, 2022 WL 10626493
   (E.D. Cal. Oct. 18, 2022) ...........................................................................10

*Johnson v. Ocwen Loan Servicing, LLC,*
   No. 5:17-cv-1373-JGB-SP, 2017 WL 10581088
   (C.D. Cal. Dec. 11, 2017) ...........................................................................18

*K.B. v. G6 Hosp., LLC, et al.,*
   No. 1:23-cv-2597-TWT, 2024 WL 4701891
   (N.D. Ga. Nov. 5, 2024) ............................................................................10

*LiMandri v. Judkins,*
   52 Cal. App. 4th 326 (1997) .......................................................................18

*Lundstrom v. Choice Hotels Int'l Inc.,*
   No. 21-cv-00619-PAB-SKC, 2021 WL 5579117
   (D. Colo. Nov. 30, 2021) ...........................................................................10

*M.L. v. Craigslist Inc.,*
   No. 19-cv-6153-BHS-TLF, 2020 WL 5494903
   (W.D. Wash. Sept. 11, 2020) ......................................................................11

*Morris v. Sun Pharma Glob.,*
   No. 2:20-cv-10441-PA-JPR, 2021 WL 3914235
   (C.D. Cal. Apr. 22, 2021) ...........................................................................19

*Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.,*
   198 F.3d 823 (11th Cir. 1999) .....................................................................17

*Pinkerton v. United States,*
   328 U.S. 640 (1946) ............................................................................16, 17

*Ratha v. Phatthana Seafood Co.,*
   35 F.4th 1159 (9th Cir. 2022) .....................................................................11

CB DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SAC

*Ratha v. Phatthana Seafood Co.*,
   No. 2:16-cv-4271-JFW-AS, 2017 WL 8293174
   (C.D. Cal. Dec. 21, 2017)................................................................................9

*Ratha v. Rubicon Res., LLC*,
   111 F.4th 946 (9th Cir. 2024)..............................................................12, 13, 14

*Ricchio v. McLean*,
   853 F.3d 553 (1st Cir. 2017) ..........................................................................13

*Roe v. Howard*,
   917 F.3d 229 (4th Cir. 2019)...........................................................................14

*S.J. v. Choice Hotels Int'l, Inc.*,
   473 F. Supp. 3d 147 (E.D.N.Y. 2020)..............................................................11

*Stutzman v. Armstrong*,
   No. 2:13-cv-0116-MCE-KJN
   (E.D. Cal. Aug. 2, 2013) .................................................................................8

*Sywula v. Teleport Mobility, Inc.*,
   652 F. Supp. 3d 1195 (S.D. Cal. 2023) .............................................................4

*T.S. v. Wyndham Hotels & Resorts, Inc.*,
   No. 23-cv-2530-PJS-ECW, 2024 WL 3927382
   (D. Minn. Aug. 23, 2024)................................................................................7

*Thinking Liberally Media, Inc. v. Orange Juice Blog*,
   No. 8:10-cv-00139-DOC, 2010 WL 11596144
   (C.D. Cal. Nov. 19, 2010) ..............................................................................15

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
   768 F.2d 1001 (9th Cir. 1985) ........................................................................14

*United States v. Calaway*,
   524 F.2d 609 (9th Cir. 1975)..........................................................................14

*United States v. Matta-Ballesteros*,
   71 F.3d 754 (9th Cir. 1995)............................................................................14

*Unknown Parties v. Google LLC*,
   No. 23-cv-05523-VC, 2024 WL 1892291
   (N.D. Cal. Apr. 29, 2024)................................................................................7

- v -

*Washington Env't Council v. Bellon*,
   732 F.3d 1131 (9th Cir. 2013) ...........................................................................4

*Williams v. Sisolak*,
   No. 22-16859, 2024 WL 194180
   (9th Cir. Jan. 18, 2024) ...................................................................................3

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ....................................................................1, 12

*Young v. City of Menifee*,
   No. 5:17-cv-01630-JGB-SP, 2019 WL 3037926
   (C.D. Cal. Apr. 5, 2019) ................................................................................16

**FEDERAL STATUTES**

18 U.S.C. § 1591(a) ..........................................................................................10

18 U.S.C. § 1594(a) ..........................................................................................13

18 U.S.C. § 1595(a) ..........................................................................................10

**FEDERAL RULES**

Fed. R. Civ. P. 9(b) ...........................................................................................18

## **PRELIMINARY STATEMENT**

Plaintiff's Opposition ignores the deficiencies in the SAC's allegations related to the CB Defendants.[1]  Plaintiff instead repeats the same allegations that the CB Defendants showed in the Motion were implausible, conclusory, and contradicted by both other allegations in the SAC and the Loan Agreements.  Mot. Mem. 6:16-10:13. Plaintiff asks the Court to infer, based on these allegations, that advancing loans ███████████████████████████████████████████████████████ █████████████ equate to knowledge of, intent to further, control over, and agreement to benefit from a child sex-trafficking venture.  Unreasonable inferences like these should not survive dismissal.  *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1144 n.4 (9th Cir. 2012) (courts need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences") (citation omitted).  None of the cases cited in Plaintiff's Opposition supports the existence of a claim against an arm's-length lender like the CB Defendants.

The Opposition does not contradict the additional reasons that show that the SAC's claims against the CB Defendants fail.  ***First***, no claim is fairly traceable to or caused by the CB Defendants, which participated in two loans to the MindGeek Borrowers in 2011 and 2013 that concluded in 2018—before, as Plaintiff alleges, CSAM on Pornhub and similar websites gained significant attention.

***Second***, to support a claim for beneficiary liability under the TVPRA, Plaintiff cites cases involving non-lender defendants with substantially greater and specific knowledge of, contact with, and participation in actual sex-trafficking ventures with actual sex traffickers than the allegations against the CB Defendants here.  Plaintiff also ignores that Judge Carney has already ruled on these issues, finding that, even as against

---

[1]  The CB Defendants' unredacted motion to dismiss, including memorandum of points and authorities, is ECF No. 444-1 ("Motion" or "Mot. Mem."), and Plaintiff's unredacted omnibus opposition to the Motion and motions to dismiss filed by other Defendants is ECF No. 480-01 ("Opposition" or "Opp'n").  Defined terms have the same meaning as stated in the Motion.

Visa—which Judge Carney held, based on specific allegations related to its conduct, knowingly provided the payment-services tool to allow MindGeek to profit from CSAM—Plaintiff failed to state a beneficiary-liability claim.

*Third*, the Opposition does not overcome the binding Ninth Circuit authority in *Ratha II* that forecloses Plaintiff's TVPRA conspiracy claim. That claim and Plaintiff's civil conspiracy claim also fail because Plaintiff does not plead a conspiracy involving the CB Defendants. Plaintiff instead asks the Court to infer based on conclusory allegations that the CB Defendants intended, and agreed with MindGeek, to monetize CSAM, even though the Loan Agreements—the only actual agreement before the Court—negate such inference.

*Fourth*, the Opposition ignores or does not meaningfully address the flaws that doom the California consumer-protection claims (UCL and FAL) against the CB Defendants. *Fifth*, the applicable statutes of limitations, which the Opposition mentions futilely only in a footnote, bar all California claims (conspiracy, UCL, and FAL) against the CB Defendants. *Sixth*, Section 230 provides immunity for all claims.

Plaintiff admits that discovery, not another amendment, would be needed to salvage claims against the CB Defendants. Opp'n 26:25-27:2. The Court should dismiss the claims against the CB Defendants with prejudice.

## ARGUMENT

### I. Plaintiff Cannot Escape the Lack of Standing and Causation for Claims Against the CB Defendants

The Opposition fails to refute that Plaintiff lacks standing under Article III to assert claims against the CB Defendants and that the CB Defendants did not cause Plaintiff's alleged injuries. *See* Mot. Mem. 10:14-14:5, 33:1-35:13.

*First*, Plaintiff seeks to write Article III out of the Constitution by arguing that standing is not required for TVPRA claims. *See* Opp'n 57:18-58:9. Plaintiff is wrong. A party asserting a TVPRA claim must show standing. *See Coubaly v. Cargill, Inc.*, 610 F. Supp. 3d 173, 176-83 (D.D.C. 2022) (rejecting argument that Plaintiff makes

here; dismissing TVPRA claim for lack of standing because theory contained uncertainty in chain of causation related to alleged trafficking conduct).

**Second,** Plaintiff still cannot show that any alleged injury is fairly traceable to the CB Defendants. The Opposition sets up a strawman by stating unremarkably that the defendant's actions need not be the "last step in the chain of causation"; "the chain of causation may have 'more than one link'"; and the defendant's conduct need not be the "sole cause." Opp'n 58:16-17, 59:2-6. But the CB Defendants do not contend that Plaintiff has failed to show standing only because they are not the last step, last link, or sole cause of Plaintiff's alleged injuries. Rather, Plaintiff lacks standing because no act by a CB Defendant was a "substantial factor" or had a "determinative or coercive effect on the actions of another" in causing Plaintiff's alleged injuries. *Williams v. Sisolak*, No. 22-16859, 2024 WL 194180, at *2 (9th Cir. Jan. 18, 2024) (citation omitted).

Plaintiff relies on *Brill v. Chevron Corp.*, No. 3:15-cv-4916-JD, 2017 WL 76894, at *3 (N.D. Cal. Jan. 9, 2017). After acknowledging it was a close call, the court in *Brill* found standing existed because Chevron made illegal payments to Saddam Hussein that "enabled, or at least increased the ability of, Hussein to give out" financial rewards to the families of suicide bombers. *Id.* at *3. This is much different from the SAC's allegations against the CB Defendants. In *Brill*, Chevron's payments were independently illegal; here, the loans participated in by the CB Defendants were not. In *Brill*, the rewards to suicide bombers were "the single most effective strategy in inciting terrorist attacks" (*id.*); here, Plaintiff does not allege that the traffickers were incentivized by anything connected to the CB Defendants. In fact, Plaintiff alleges that the direct trafficker for the first video in 2014 had no financial incentive but simply wanted to "disseminate it thereby to the school community." SAC ¶ 448. There is no connection between loans extended by the CB Defendants and the actions by Plaintiff's alleged direct traffickers.[2] The CB Defendants' remote role as lenders and the absence

---

[2] Other cases that Plaintiff cites simply support that other potential sources of injury do not destroy a chain of causation, *if an adequate causal chain already exists as to the*

of any allegations connecting them to Plaintiff or the videos—neither of which the Opposition meaningfully disputes—confirms that "the causal chain involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries," and "the causal chain is too weak to support standing." *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1142 (9th Cir. 2013) (citation omitted).

*Third*, Plaintiff argues that a party need not plead proximate cause for TVPRA or conspiracy claims and that Plaintiff, in any event, pled proximate cause. Opp'n 61:5-62:20. This is another strawman. To begin with, causation is required for a TVPRA claim and a conspiracy claim. *See Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) ("there must be a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit"); *117 Sales Corp. v. Olsen*, 80 Cal. App. 3d 645, 649-50 (1978) ("the sine qua non for recovery for civil conspiracy is proximately caused damages"). Plaintiff also does not dispute that proximate cause is required for UCL or FAL claims. No matter what causation standard is applied (proximate or otherwise), Plaintiff's alleged injuries lack ***any*** meaningful causal link to the CB Defendants. *See* Mot. Mem. 10:14-14:5, 24:11-25:5, 30:22-31:3, 33:1-35:13.

## II.    Plaintiff Does Not Overcome the Failure to Plead a Plausible Claim for TVPRA Beneficiary Liability Against the CB Defendants

Plaintiff primarily relies on *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023), and *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387 (S.D.N.Y. 2023). Opp'n 3:1-16, 7:25-10:18, 25:9-27:14, 29:22-30:7. But neither case saves Plaintiff's TVPRA claim for beneficiary liability against the CB Defendants.

In *Salesforce*, Backpage.com committed criminal sex-trafficking violations

---

***defendant***. *See Ctr. For Biological Diversity v. U.S. E.P.A.*, 90 F. Supp. 3d 1177, 1194-95 (W.D. Wash. 2015) ("specific facts" established causal connection); *Sywula v. Teleport Mobility, Inc.*, 652 F. Supp. 3d 1195, 1228 (S.D. Cal. 2023) (plaintiff's alleged injuries flowed directly from harms inflicted by defendant). Plaintiff ignores that no chain of causation exists here in the first place.

under Section 1591(a)(1) by advertising the plaintiff and other minors for "sale" on its webpage. *Salesforce*, 76 F.4th at 552. Defendant Salesforce.com had a years-long partnership with Backpage during which it was actively involved in supporting the actual sex-trafficking conduct with the actual sex trafficker, Backpage. *Id.* at 549-50. Salesforce "repeatedly consulted with Backpage 'to assess its operational needs,' designed 'targeted solutions addressed to' those needs, and provided active, 'tailored,' and ongoing support," including customized software, which was used in Backpage's trafficking of minors. *Id.* at 556.

In *Deutsche Bank*, the plaintiff alleged that defendants JP Morgan and Deutsche Bank knew of and actively concealed the actual sex trafficker's (Jeffrey Epstein) sex-trafficking enterprise through structuring payments and withdrawals to evade detection and by failing to file suspicious activity reports. *Deutsche Bank*, 671 F. Supp. 3d at 406-407. A bank officer from JP Morgan was even alleged to have engaged in sexual contact with a minor. *Id.* at 399.

These cases are very different from the SAC's allegations against the CB Defendants. Plaintiff does not allege that the CB Defendants provided tools or means by which sex trafficking could occur. Nor does Plaintiff allege that the CB Defendants concealed any trafficking activity. There are no allegations of any involvement or participation in sex trafficking by the CB Defendants—they participated in loans. In addition, the CB Defendants are not alleged to have had any contact at all with the sex traffickers who exploited Plaintiff. Judge Carney has already held here that MindGeek is not a direct trafficker—the people who took and uploaded the videos of Plaintiff are the traffickers. Visa MTD Order 18:21-25. *Salesforce* and *Deutsche Bank* do not change that Plaintiff's TVPRA claim for beneficiary liability against the CB Defendants fails because they (1) did not knowingly participate in a sex-trafficking venture, (2) did not knowingly benefit from participation in a trafficking venture, and (3) did not know of Plaintiff's alleged sex trafficking or any alleged sex-trafficking venture.

***(1) No knowing participation in trafficking venture.*** Plaintiff argues that

participation in a "venture" need not be a sex-trafficking venture and that loans to the MindGeek Borrowers constitute participation in a venture. Opp'n 5:16-6:23, 21:12-23.

**First**, courts in this district, including Judge Carney here, and other courts have held that beneficiary liability under the TVPRA requires participation in a "sex-trafficking venture."[3] Even if the TVPRA only required participation in a "commercial venture," as Plaintiff contends, Plaintiff's claim would still fail as to the CB Defendants because the SAC does not allege that the CB Defendants participated in a commercial venture. The SAC alleges that the CB Defendants participated in a trafficking venture and that the CB Defendant's profits stemmed from MindGeek's commercialization of CSAM. SAC ¶¶ 246, 491, 494-95; *see Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726-27 (11th Cir. 2021) (refusing to allow plaintiffs to base beneficiary liability claim on participation in "commercial ventures" because complaints alleged participation in "sex trafficking ventures"); *B.J. v. G6 Hosp., LLC*, No. 22-cv-03765-MMC, 2023 WL 3569979, at *5 (N.D. Cal. May 19, 2023) (same).

**Second**, Plaintiff argues that an "overt act" in furtherance of a sex-trafficking venture is not required. Opp'n 5:16-18. But even in *Salesforce*, the court held that "participation" under Section 1595(a) "require[s] more than ... mere passive nonfeasance" and "more than providing off-the-shelf software []or other common products or services"—the defendant must take action related to the trafficking that goes beyond a general business transaction. 76 F.4th at 562-64. Unlike in *Salesforce*, the CB Defendants were "arms-length [lenders] of off-the-shelf [loans]," ████████████

---

[3] *See* Visa MTD Order 19:1-4; *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1143 (9th Cir. 2022) ("'gravamen' of a section 1595 beneficiary claim is the ***defendant's participation in and benefit from the trafficking scheme***"); *Deutsche Bank*, 671 F. Supp. 3d at 405 ("the defendant must have participated in a ***commercial sex trafficking venture***"); *Doe v. Wyndham Hotels & Resorts*, No. 8:23-cv-01554-JVS-JDE, 2024 WL 2104596, at *3 (C.D. Cal. Feb. 28, 2024) ("The second element of a § 1595 claim is whether Defendants knowingly participated in a ***sex trafficking venture***."); *Geiss*, 383 F. Supp. 3d at 169 ("The participation giving rise to the benefit must be participation ***in a sex-trafficking venture***, not participation in other activities engaged in by the sex traffickers that do not further the sex-trafficking aspect of their venture.") (emphases added).

██████████████████████. 76 F.4th at 562. No plausible allegation in the SAC supports that any CB Defendant engaged in "direct, active, and substantial" aid related to sex trafficking. *Id.* at 564; *see* Mot. Mem. 17:6-18:26. "[A]n entity that . . . simply provide[s] to the venture the same products and services that it provides [to other ventures] does not 'participate' in that venture." *T.S. v. Wyndham Hotels & Resorts, Inc.*, No. 23-cv-2530-PJS-ECW, 2024 WL 3927382, at *9 (D. Minn. Aug. 23, 2024). "[S]omething more than engaging in an ordinary buyer-seller transaction is required to establish 'participation.'" *Doe 1 v. Apple Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024). Loans to the MindGeek Borrowers do not equate to the CB Defendants knowingly participating in a venture in violation of the TVPRA. *Contra* Opp'n 21:13-23:7.

Courts have declined to follow the "continuous business relationship" analysis in *Salesforce* cited by Plaintiff as a purported ground to infer participation (Opp'n 6:18-19).[4] In any event, as stated in cases that Plaintiff cites, a "continuous business relationship" requires a relationship with the plaintiff's ***direct trafficker***. *See Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 783-84 (C.D. Cal. 2024) ("a plaintiff must allege the defendant had a direct association or a business relationship with their trafficker").[5] Plaintiff does not dispute that the CB Defendants never interacted with

---

[4] *See Unknown Parties v. Google LLC*, No. 23-cv-05523-VC, 2024 WL 1892291, at *2 (N.D. Cal. Apr. 29, 2024) (distinguishing *Salesforce* and finding standard revenue-sharing agreement between YouTube and its channels did not constitute a "continuous business relationship"); *see also Wyndham Hotels & Resort*, 2024 WL 3927382, at *9-10 (rejecting *Salesforce*'s interpretation of the "continuous business standard," which would impose "strict liability on anyone who is in a 'continuous business relationship'" with businesses with a risk for sex-trafficking).

[5] *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 837 (C.D. Cal. 2021) (same); *Salesforce*, 76 F.4th at 562 (distinguishing Salesforce from TVPRA defendants that are "one step removed from the sex traffickers (i.e., street-level trafficker – > hotel – > hotel franchisor)" to find that Salesforce's "direct and long-term contractual relationship with the sex-trafficker" was the reason for its beneficiary liability); *see also G.W. v. Northbrook Indus., Inc.*, No. 1:20-cv-05232-JPB, 2024 WL 3166083, at *6 (N.D. Ga. June 14, 2024) (rejecting plaintiff's theory that venture need not involve the direct trafficker because then the "participation requirement would automatically be satisfied any time the defendant is a . . . commercial entity, irrespective of whether the entity had any involvement in the plaintiff's trafficking.").

---

Plaintiff's direct traffickers: the persons who recorded and uploaded videos of Plaintiff.

*Third*, contrary to the Opposition, *Deutsche Bank* did not hold that entities can be liable for providing routine banking services. *See* Opp'n 27:3-8. The court held that the plaintiff had adequately alleged that the defendant banks had "participated in Jeffrey Epstein's sex-trafficking venture" by "'structuring' cash withdrawals so that those withdrawals would not appear suspicious," delaying and "willfully failing to file suspicious activity reports," and "conceal[ing] delivery of hundreds of thousands of dollars in cash to Epstein and his associates." *Deutsche Bank*, 671 F. Supp. 3d at 405-406. This "went well beyond merely providing their usual services to [] Epstein and his affiliated entities." *Id.* at 406. Plaintiff's theory also departs from established case law that a lender-borrower relationship is not enough to render the lender liable for alleged misconduct of the borrower. *See* Mot. Mem. 27:25-28:6, 34:5-26 (citing cases).

Plaintiff's comparison of the CB Defendants' role as lenders to that of hotel franchisors that actively monitored trafficking activity at their franchisee hotels is similarly misplaced. *See* Opp'n 25:14-22. Unlike in the cases cited by Plaintiff, here, the loans in 2011 and 2013 were typical lending services, and no plausible allegation supports that the CB Defendants engaged in any conduct beyond their typical role as lenders. The CB Defendants did not maintain the websites onto which the videos of Plaintiff were uploaded; monitor or moderate those websites; process payments for those websites; or provide any tool, software, or other means that furthered or was used to further the alleged sex-trafficking. Plaintiff has not shown knowing participation in a trafficking venture, and Plaintiff's attempt to seek discovery to try to do so confirms that the TVPRA claim against the CB Defendants should be dismissed. *See* Opp'n 26:7-13; *Stutzman v. Armstrong*, No. 2:13-cv-0116-MCE-KJN, at *6 (E.D. Cal. Aug. 2, 2013) (citation omitted) (rejecting attempt to "uncover potential factual allegations that [Plaintiff] cannot presently make").

**(2) *No knowing benefit from participation in trafficking venture.*** Plaintiff argues that the CB Defendants knowingly benefitted from participation in a sex-

trafficking venture because profits MindGeek generated were used to repay the loans made by the CB Defendants. Opp'n 30:10-19. Plaintiff, however, has not alleged a relationship between the CB Defendants' conduct *in furtherance of the sex-trafficking venture* and receipt of a benefit. Mot. Mem. 18:27-19:12. Plaintiff's concept of beneficiary liability would make any recipient of funds from MindGeek for any purpose a knowing beneficiary of sex trafficking activity. That is not and cannot be the law.

Further, *B.M. v. Wyndham Hotels & Resorts, Inc.*, which Plaintiff relies on, held that the "'knowing benefit' element under Section 1595 requires Defendant to knowingly receive a financial benefit . . . from *a relationship with the trafficker*." No. 20-cv-00656-BLF, 2020 WL 4368214, at *4 (N.D. Cal. July 30, 2020) (emphasis added). Plaintiff does not allege that the CB Defendants received a financial benefit from a relationship with Plaintiff's direct traffickers. Unlike the defendants in the cases cited by Plaintiff, whose conduct was directly tied to their benefit from the sex-trafficking venture, there is no nexus between the CB Defendants' alleged benefit (interest and fees from loans to the MindGeek Borrowers) and the actions of Plaintiff's alleged traffickers, with whom the CB Defendants had no involvement.[6] Repayment of loans constitutes at most "receipt of a passive benefit" unconnected to Plaintiff's alleged trafficking or a sex-trafficking venture. *See Ratha v. Phatthana Seafood Co.*, No. 2:16-cv-4271-JFW-AS, 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017) ("receipt of a passive benefit" is insufficient; defendant must have "direct[ed] or participat[ed]" in venture that trafficked plaintiff by taking "action to operate or manage the venture"),

---

[6] *See Deutsche Bank*, 671 F. Supp. 3d at 408 (defendants "received revenue from Jeffrey Epstein and his affiliated entities *in exchange for* their furtherance of Epstein's sex-trafficking venture"); *Salesforce*, 76 F.4th at 567 (Salesforce benefited from contracts for customized software that Backpage used to increase profitability of trafficking); *A.M. v. Omegle.com*, No. 3:21-cv-01674-MO, 2023 WL 1470269, at *4-5 (D. Or. Feb. 2, 2023) (defendant online platform placed advertisements tied to sex-trafficking venture on its website and directly collected advertising proceeds); *Doe (S.C.) v. Sheraton, LLC*, No. 23-cv-00451-KG-JMR, 2024 WL 1329422, at *5 (D.N.M. Mar. 28, 2024) (defendant hotel franchisee set room rental fees and royalties received from sex trafficking).

---

1    *aff'd*, 26 F.4th 1029 (9th Cir. 2022).

2    **(3) No knowledge of alleged trafficking.**  Plaintiff also fails to plausibly allege

3    that the CB Defendants had actual or constructive knowledge of Plaintiff's alleged

4    trafficking or an alleged trafficking venture.   Plaintiff's argument that the CB

5    Defendants need not know of ***Plaintiff or Plaintiff's trafficking*** contravenes the plain

6    text of the TVPRA.  *See* 18 U.S.C. §§ 1591(a), 1595(a).  Indeed, Judge Carney held that

7    Plaintiff must plausibly allege that Defendants "knew or should have known that the

8    plaintiff was a victim of sex trafficking."  Visa MTD Order 19:1-5.   Other courts have

9    held the same.  *See* Mot. Mem. 19:13-17 (citing *Red Roof Inns*).[7]  Plaintiff argues that

10   the cases cited by Defendants concerned trafficking ventures involving few victims.

11   Opp'n 9:9-12.  But these cases did not limit their holdings in that way.  *See, e.g.*, *K.B.*

12   *v. G6 Hosp., LLC, et al.*, No. 1:23-cv-2597-TWT, 2024 WL 4701891, at *2 (N.D. Ga.

13   Nov. 5, 2024) (noting court in *Red Roof Inns* "did not differentiate its analysis based on

14   how the venture was defined").

15       Even if, as Plaintiff contends, knowledge of the individual plaintiff is not

16   required, the SAC does not plausibly allege that the CB Defendants knew or

17   constructively knew of a sex-trafficking venture, which is required.  The allegations in

18   the SAC do not come close to the allegations that the courts in the cases that Plaintiff

19   cites found sufficient to constitute such knowledge.  *See* Opp'n 29:22-30:7.[8]

---

20
21   [7]  *See also J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-00672-KJM-JDP, 2022 WL
     10626493, at *5 (E.D. Cal. Oct. 18, 2022) ("general knowledge of sex trafficking . . . is
22   insufficient to demonstrate defendants should have known about [plaintiff]'s
     trafficking"); *Northbrook Indus.*, 2024 WL 3166083, at *3 (dismissing TVPRA claim
23   for failure to allege knowledge as to plaintiff);  *Lundstrom v. Choice Hotels Int'l Inc.*,
     No. 21-cv-00619-PAB-SKC, 2021 WL 5579117, at *8 (D. Colo. Nov. 30, 2021)
24   (dismissing TVPRA claim for failure to allege defendant "should have known about
     plaintiff's sex trafficking at its hotels"); *A.B. v. Hilton Worldwide Holdings, Inc.*, 484
25   F. Supp. 3d 921, 938-39 (D. Or. 2020) (dismissing TVPRA claim for failure to "allege[]
     facts which sufficiently link notice of Plaintiff['s] sex trafficking" to defendants); *Doe*
26   *(L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 468 (E.D.N.C. 2024) (citing
     "circuit split" on whether "knowledge" and "participation" must be "victim-specific").
27
     [8]  *Salesforce*, 75 F.4th at 555-56, 560 (Salesforce entered into contract with Backpage
28   despite "nationwide news coverage" identifying Backpage as "the leading platform for

---

The fact that due diligence—which occurred before any video of Plaintiff was posted to a MindGeek website—allegedly noted a general risk for "distribution of illegal material" cannot result in an inference of knowledge of a trafficking venture. *Contra* Opp'n 28:8-10; *see also* SAC ¶ 263. Plaintiff acknowledges that general knowledge or willful blindness of the risk that CSAM may be uploaded to an adult-content website does not equate to actual or constructive knowledge of a sex-trafficking venture. *See* Opp'n 9:4-7; *see also S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) (willful blindness is insufficient); *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1179 (9th Cir. 2022) (general knowledge is insufficient).

Plaintiff also argues that the CB Defendants knew that MindGeek monetized CSAM due to their involvement with the company during the time they had loans outstanding to MindGeek. Opp'n 28:18-21. All that Plaintiff cites in support of this conclusory assertion, however, are the Loan Agreements' terms, which included ████████████████████████████████████████████████████████. *See id.* 22:16-22, 23:15-18. There is nothing remarkable—or wrongful—about a ████████████████████████████████████████████████. Virtually all loan documentation contains such provisions. Plaintiff cannot invert these provisions to show that the CB Defendants knew and intended that MindGeek would engage in unlawful activity. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (a complaint is insufficient "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct"). To the contrary, the provisions show that the CB Defendants expected and intended that MindGeek would conduct its business lawfully.

---

the facilitation of sex trafficking," and provided active, ongoing support that was directly tied to Backpage's TVPRA-violating conduct, which included "analyz[ing] content"); *Deutsche Bank,* 671 F. Supp. 3d at 407 (banks' employees witnessed first-hand Epstein's trafficking victims, including plaintiff); *M.L. v. Craigslist Inc.*, No. 19-cv-6153-BHS-TLF, 2020 WL 5494903, at *6 (W.D. Wash. Sept. 11, 2020) (defendant online platform had actual knowledge that its "website was hosting sex trafficking advertisements" but continued to charge fees for those advertisements).

Plaintiff's claim that the CB Defendants knew about the sex-trafficking venture based on widespread reporting is also contradicted by the Loan Agreements (██████ ██████████████████████████████████████████) and by the SAC, which states the issue of CSAM on MindGeek's websites "exploded in 2019-2023." SAC ¶ 110. This was *after* the CB Defendants exited the MindGeek loans in 2018. *Id.* ¶¶ 110-11. Moreover, the 2016 lawsuit against GirlsDoPorn (which Plaintiff does not allege, other than in a conclusion, that the CB Defendants knew about) did not involve CSAM, minors, or claims under the TVPRA. *See* Opp'n 28:22-23.

The unreasonable inferences that Plaintiff asks the Court to make—based on conclusory, contradictory, and implausible allegations—are insufficient to state a claim. *See Wilson*, 668 F.3d at 1144 n.4. Like Visa, which Judge Carney already held is not liable as a beneficiary, the CB Defendants did not "knowingly *participat[e]* in the sex trafficking venture that harmed Plaintiff." Visa MTD Order 21:17-20.

### III.    **Plaintiff Asks the Court to Save the TVPRA Conspiracy Claim by Declining to Follow the Ninth Circuit**

Plaintiff cannot avoid that the Ninth Circuit's recent opinion in *Ratha II* forecloses Plaintiff's conspiracy claim under the TVPRA. Plaintiff concedes that all alleged conduct by the CB Defendants predates 2023. *Compare* Mot. Mem. 21:18-28, *with* Opp'n 37:20-24. That concession should end the matter. Plaintiff, however, argues that (i) the ATRA applies retroactively; and (ii) *Ratha II*'s holding applies only to attempt liability, not conspiracy liability. Opp'n 38:3-40:3.

The Ninth Circuit in *Ratha II* rejected Plaintiff's first argument: "We conclude that ATRA does not apply to pre-enactment conduct." *Ratha v. Rubicon Res., LLC*, 111 F.4th 946, 969 (9th Cir. 2024). That holding is binding on this Court.

Plaintiff's second argument does not hold up either. Plaintiff states that, since 2008, Section 1595 provided for civil liability for every person who knowingly benefits from a violation of "this chapter" of the TVPRA. Opp'n 36:28-37:4. Plaintiff contends that "this chapter" incorporates Section 1594(c), which provides for criminal liability

for a person who **conspires to violate** Section 1591. *Id.* Plaintiff ignores that Section 1594(a) also provides, and has provided, for criminal liability over anyone who **attempts** to violate Section 1591. 18 U.S.C. § 1594(a). Thus, this argument provides no basis to differentiate between attempt and conspiracy.

Nor did the Ninth Circuit's analysis in *Ratha II* distinguish between attempt and conspiracy: "The 2023 amendment allows a plaintiff to bring a civil action against any person who 'knowingly benefits **or attempts or conspires** to benefit' from such a violation of the TVPRA." 111 F.4th at 963. Before the ATRA, Section 1594 expressly contemplated criminal liability for attempts and conspiracies to violate the TVPRA. But the "knowingly benefit" parenthetical in the civil-liability provision of Section 1595 mentioned neither attempt nor conspiracy until both terms were added by the ATRA in 2023. The Ninth Circuit confirmed that the term "attempt" in Section 1594 could not simply be exported into Section 1595 before the ATRA. *Id.* at 966 ("we cannot read the word 'attempt' [in Section 1594(a)] into the 'knowingly benefits' portion of § 1595"). The same is true for "conspiracy" because the statutory language and posture of the two terms is exactly the same. *Ratha II*'s analysis of attempt liability must apply equally to conspiracy liability.

The cases that Plaintiff cites—which predate *Ratha II* and are not from the Ninth Circuit—do not show otherwise. Plaintiff cites *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017), which the Ninth Circuit in *Ratha II* considered when rejecting the argument that Plaintiff seeks to make here: "*Ricchio*'s reference to § 1595(a) does not indicate that the First Circuit interpreted that section to permit a civil action against any person who 'attempts or conspires **to benefit**' from a violation of the TVPRA." *Ratha II*, 111 F.4th at 964 (emphasis added). The First Circuit's discussion of conspiracy liability was limited to a conspiracy to **violate** the TVPRA, not a conspiracy **to benefit from** a violation of the TVPRA. *See id.*[9] Plaintiff alleges only that the CB Defendants

---

[9] Each of the other cases cited by Plaintiff is from a court outside the Ninth Circuit, predates *Ratha II*, and is limited to conspiracies **to violate** the TVPRA under Section

conspired ***to benefit from*** a violation of (not conspired to violate) the TVPRA.  Opp'n 43:24-26.  The Ninth Circuit's holding in *Ratha II* confirms that Section 1595 does not permit this claim for conduct that took place before 2023.

## IV.    Plaintiff, In Any Event, Does Not Salvage the SAC's Failure to Allege a Conspiracy Involving the CB Defendants

Plaintiff states that the elements of a civil conspiracy are the same as those of a conspiracy to violate the TVPRA.  Opp'n 49:3-4.  Plaintiff contends that a conspiracy claim requires "(1) an agreement to accomplish an illegal objective, (2) the commission of an overt act in furtherance of the conspiracy, and (3) the requisite intent necessary to commit the underlying offense."  Opp'n 37:4-8; *see also* Mot. Mem. 28:8-12 (listing conspiracy elements).  In this reply, the CB Defendants address the elements as presented by Plaintiff because the SAC fails to allege plausible facts to support any of those elements and save Plaintiff's TVPRA and civil conspiracy claims from dismissal.

***(1) No agreement to accomplish illegal objective***.  Plaintiff concedes that the SAC does not plead an agreement involving a CB Defendant to accomplish an illegal (or wrongful) objective.  *See* Mot. Mem. 28:18-29:9.  Plaintiff instead asks the Court to ***infer*** that the CB Defendants "agreed to assist MindGeek in monetizing child pornography."  Opp'n 43:9-10.  Plaintiff relies on cases that do not support finding an inference here.  *See* Opp'n 37:8-13, 42:17-43:2.[10]  Plaintiff also misses the point of

1594—not conspiracies to benefit from a violation under Section 1595.  *See* Opp'n 38:18-24, 38:26-28 n.18.  For example, the Ninth Circuit already held that, as to one of these cases, *Roe v. Howard*, 917 F.3d 229, 241 (4th Cir. 2019), the Fourth Circuit's "opinion includes no textual analysis of § 1595(a) whatsoever."  *Ratha II*, 111 F.4th at 965.

[10] *See United States v. Matta-Ballesteros*, 71 F.3d 754, 765 (9th Cir. 1995) (defendant was member of cartel that abducted, tortured, and murdered victim; defendant participated in meetings with other cartel members where kidnapping was planned; and witness testimony tied defendant specifically to the crime); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1020 (9th Cir. 1985) ("defendant 'entered into a joint enterprise with consciousness of its general nature and extent,'" as shown by specific allegations such as instructions by conspirator to another conspirator related to conspiracy); *United States v. Calaway*, 524 F.2d 609, 614 (9th Cir. 1975) (specific, quoted statements supported existence of gambling-operation conspiracy).

*Deutsche Bank*.  *See* Opp'n 43:19-26.  Contrary to the Opposition, which simply identifies the type of conspiracy alleged in the case (to commit sex trafficking rather than to benefit from sex trafficking), *Deutsche Bank*, which Plaintiff cites favorably, shows that a legitimate business transaction, even coupled with knowledge that it may assist a sex-trafficking venture and conduct that covered up the sex trafficking, is not enough to satisfy the requirement of an agreement for a conspiracy claim.  671 F. Supp. 3d at 412; *see also Thinking Liberally Media, Inc. v. Orange Juice Blog*, No. 8:10-cv-00139-DOC, 2010 WL 11596144, at *5 (C.D. Cal. Nov. 19, 2010) ("actual knowledge of the planned tort, without more, is insufficient to serve as the basis for a conspiracy").

Plaintiff concludes, without identifying plausible allegations, that the CB Defendants knew that MindGeek's business "included criminal activities" and was engaged in "illegality."  Opp'n 42:12-13, 43:2-3.  But the only nonconclusory allegation to infer an agreement is that the CB Defendants participated in loans in 2011 and 2013.  *See* Opp'n 43:13-18.  Rather than supporting an inference of conspiracy, however, the Loan Agreements contradict such an inference.  ██████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████.  Loan Agreements §§ 6.01(h), 6.01(mm), 6.01(nn), 6.01(ss), 7.01(a), 7.01(c), 7.01(v), 7.01(z).  Plaintiff's speculation that ████████████████████████████████████████████████████ does not support an inference of an agreement to monetize CSAM.  Plaintiff does not and cannot distinguish this case from those cited by the CB Defendants where courts declined to infer a conspiracy.  Mot. Mem. 29:10-21 (citing cases).

*(2) No overt act in furtherance of conspiracy.*  The only overt acts identified in the Opposition are that the CB Defendants participated in loans in 2011 and 2013 to the MindGeek Borrowers, ██████████████████████████████████████████ ████████████████████████████████████  Opp'n 44:4-11. These conclusory allegations fail to identify even one "overt act in furtherance of a conspiracy" related to CSAM.  That failure should end the inquiry.

More reasons confirm that the SAC fails to allege an overt act by a CB Defendant in furtherance of any conspiracy. Extending credit to a party that allegedly engaged in unlawful conduct does not create a conspiracy between the lender and the borrower in respect of such conduct. *See, e.g.*, *Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 864-65 (S.D. Ohio 2020) (dismissing claims against lenders; finding "allegations that a lending company engaged in due diligence with regard to its lending activities cannot, and should not, be enough to plausibly establish [joinder in a conspiracy] even at the pleading stage"); *Young v. City of Menifee*, No. 5:17-cv-01630-JGB-SP, 2019 WL 3037926, at \*11 (C.D. Cal. Apr. 5, 2019) (granting motion to dismiss because "[m]ere association does not make a conspiracy"). Plaintiff's allegation that the CB Defendants ███████████████████████████████████████████████ ████████████████████████████████████████████. Opp'n 44:5-6. Plaintiff, in fact, concedes that the CB Defendants ████████████████████ ██████████████████████████. *See id.* 22:21-22. As to ████████████ ███████, there is nothing unusual about a lender ██████████████████████ ██████████████████████████. Plaintiff does not even contend that the CB Defendants ████████████████████—in furtherance of a conspiracy to benefit from sex trafficking or for any reason.[11]

Plaintiff, at best, suggests that the CB Defendants made loans ***despite*** possible risks of CSAM's presence on MindGeek's websites. *See, e.g.*, Opp'n 28:8-17. That is not an overt act in furtherance of a conspiracy to benefit from sex trafficking.

---

[11] Plaintiff miscites two cases. *Matta-Ballesteros* does not contain the quote that "the act need not itself be criminal, but must corroborate the criminal intent of the conspiracy." Opp'n 44:9-11 (purportedly quoting 71 F.3d at 772). In any event, the court analyzed circumstances very different from those alleged as to the CB Defendants here, as explained above. *See supra* n.10. And *Pinkerton v. United States* does not hold that "a defendant need not commit an overt act." Opp'n 44:12-15 (citing 328 U.S. 640, 646-47 (1946)). In *Pinkerton*, the Supreme Court analyzed the effect of a criminal conspiracy conviction because the defendants had already been convicted (and thus there was already a finding of conspiracy). 328 U.S. at 642, 646.

*(3) No intent to commit underlying offense.* Plaintiff, lacking allegations to support this element, asks the Court to stack another inference on top of the inference of an agreement: that the CB Defendants intended to financially benefit from sex trafficking. Opp'n 44:22-45:1.[12] The only support that Plaintiff provides the Court to make this inference is the conclusory allegation that the CB Defendants knew of MindGeek's "illegal activities." Opp'n 45:2-7. Even if not conclusory, knowledge generally of "illegal activities" does not mean intent to financially benefit from sex trafficking. And as to public reporting, Plaintiff ignores that the CB Defendants exited the loans to the MindGeek Borrowers in 2018, well before most of the alleged events to which Plaintiff cites. Plaintiff, in any event, does not plausibly allege in the SAC or explain in the Opposition how the CB Defendants would have known of such public reports—or how such knowledge shows that the CB Defendants must have intended to financially benefit from sex trafficking. Plaintiff merely cites vaguely to unrelated criminal investigations of money laundering, due diligence mentioning "risks," general reporting requirements and assumed interaction during the loan period, and isolated news stories that did not see nationwide coverage. *See* Opp'n 45:18-27.[13]

Plaintiff's Opposition repeatedly references Judge Carney's decision on Visa's motion to dismiss to support each element of conspiracy as to the CB Defendants. Opp'n 42:14-15, 43:9-13, 44:18-20, 46:13-18. As shown in the Motion, however, Judge Carney inferred elements of a conspiracy as to Visa because its conduct was enmeshed with the alleged unlawful conduct of MindGeek and because specific allegations showed Visa's knowledge and intent, including stopping—and later continuing—to

---

[12]  Plaintiff again cites *Pinkerton* (Opp'n 44:22-45:1), but, as noted above (*supra* n.11), the Court in *Pinkerton* already assumed a conspiracy existed (328 U.S. at 642).

[13]  Even if there were a conspiracy, which there was not, the CB Defendants withdrew from it by 2018 when they ceased any loans to the MindGeek Borrowers. *See* SAC ¶¶ 245, 275; *contra* Opp'n 46:10-11. A conspirator "withdraws" from an alleged business conspiracy when it has "retired from the business, severed all ties to the business, and deprived the remaining conspirator group of the services which [it] provided to the conspiracy." *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999), *amended in part*, 211 F.3d 1224 (11th Cir. 2000).

provide payment services.  *See* Mot. Mem. 22:1-7; *see also* Visa MTD Order 25:12-17. No similar allegations exist as to the CB Defendants, and no reasonable inference can be made as to their knowledge or intent.  *See* Mot. Mem 13:13-14:5, 22:7-18.

## V.    **Plaintiff Fails to Refute That the SAC Pleads No UCL or FAL Claim**

Plaintiff ignores two defects in the UCL and FAL claims against the CB Defendants:  Plaintiff neither alleges conduct by a CB Defendant nor has statutory standing.  Mot. Mem. 23:18-26:14.  Plaintiff fails to meaningfully refute other defects.

Plaintiff limits the UCL claim to only the unlawful prong.  *See* Opp'n 49:11-50:1.  Plaintiff's only purported support for a claim under the unlawful prong is referring to other claims and arguing that Defendants participated in a commercial venture with MindGeek.  *See* Opp'n 49:13-14.  Because Plaintiff's claims against the CB Defendants fail, as explained in the Motion and above, Plaintiff's UCL claim also fails.[14]

As to the FAL, the Opposition provides only one footnote for all Defendants. Opp'n 50:21-28 n.30.  Rather than try to address the reasons in the Motion that show the claim fails (*see* Mot. Mem. 26:15-25), Plaintiff refers to alleged statements by MindGeek or Messrs. Antoon and Tassillo; or unidentified omissions made to unidentified persons that purportedly concealed that MindGeek's websites had CSAM (Opp'n 50:21-28 n.30).  Statements by others cannot constitute misrepresentations (*see* Mot. Mem. 26:18-22 (citing cases)), and Plaintiff has not alleged—especially not with particularity under Rule 9(b)—any omission by a CB Defendant.  There was no statement to and no interaction with Plaintiff, nor could a CB Defendant have a duty to disclose to Plaintiff.[15]  The Opposition effectively conceded this claim should be dismissed as to the CB Defendants.

---

[14]  *See Johnson v. Ocwen Loan Servicing, LLC*, No. 5:17-cv-1373-JGB-SP, 2017 WL 10581088, at *7 (C.D. Cal. Dec. 11, 2017) (dismissing unlawful-prong UCL claim because other claims alleging violations of law failed); *see also Foundry IV Inc. v. Hard Carry Gaming Inc.*, No. 23-cv-2690-KK-MAR, 2024 WL 211010, at *6 (C.D. Cal. Jan. 3, 2024) (citation omitted) ("a common law violation is, on its own, insufficient to establish a violation of the 'unlawful' prong of the UCL").

[15]  *See LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336-37 (1997) (omission requires

## VI.    Doe Defendants Did Not Toll the Statutes of Limitations

As shown in the Motion, the applicable statutes of limitations bar Plaintiff's claims under California law against the CB Defendants.    Mot. Mem. 31:4-32:27. Plaintiff, in a footnote, argues only that the statutes of limitations relate back to the Initial Complaint because Plaintiff named "Colbeck Capital Does 1-10."  Opp'n 49:20-28 n.29.  This argument is unavailing for several reasons.  ***First***, Plaintiff described the Colbeck Capital Does as "investors in" Colbeck Capital Management, LLC—not as other CB lender entities.  ECF No. 1 ¶ 57.  ***Second***, Plaintiff indeed knew about the CB Defendants and their alleged role—alleging in the Initial Complaint that Colbeck Capital Management, along with other CB entities, made loans to MindGeek.  Mot. Mem. 32:11-27.  Plaintiff thus knew of "the defendant's identity or the facts rendering defendant liable."  *Morris v. Sun Pharma Glob.*, No. 2:20-cv-10441-PA-JPR, 2021 WL 3914235, at *2-3 (C.D. Cal. Apr. 22, 2021); *see also* Mot. Mem. 32:11-27.[16]  And ***third***, "which Colbeck funds were the lending entities or the origination agent" (Opp'n 49:27-28 n.29) is meaningless because, now that Plaintiff apparently has this knowledge, Plaintiff still grouped all the CB Defendants together in the SAC—as either "Colbeck" or the Colbeck Syndicate—failing to differentiate between the entities.

## VII.    Section 230 Must Bar All Claims Against the CB Defendants

Plaintiff argues that Section 230 does not immunize the CB Defendants because Plaintiff's claims do not treat the CB Defendants as "the publisher or speaker" of third-party content.    Opp'n 57:3-16.    The cases that Plaintiff cites do not support this argument because, among other differences, they do not involve a plaintiff that seeks to

---

duty to disclose arising out of "some sort of transaction" between plaintiff and defendant); *Handy v. LogMeIn, Inc.*, No. 1:14-cv-01355-JLT, 2015 WL 1729681, at *5-6 (E.D. Cal. Apr. 15, 2015) (cited favorably by Plaintiff, Opp'n 50:21-28 n.30) (FAL omission must be "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obligated to disclose").

[16]  Plaintiff's citation to *Barrio v. Cnty. of San Bernardino* does not support Plaintiff's arguments because the defendants in that case did not dispute the plaintiff's genuine ignorance of the identities of the newly added defendants.  No. 5:17-cv-2470-JGB-KK, 2020 WL 4037169, at *3 (C.D. Cal. Mar. 26, 2020).

hold a lender (CB Defendants) liable for content (videos of Plaintiff) posted by third parties (direct traffickers) on an interactive-computer-service-provider borrower's (MindGeek) websites.   Opp'n 57:7-16.[17]   Plaintiff's claims necessarily treat the MindGeek Entity Defendants as publishers or speakers of third-party content, and it would be an absurd result for the MindGeek Entity Defendants to be immunized under Section 230 and not lenders even though claims against them are asserted based on the same content.  *See* Mot. Mem. 35:23-25, 36:9-13.

## **CONCLUSION**

For the reasons in the Motion and set forth above, the Court should grant the Motion and dismiss the SAC against the CB Defendants with prejudice.

Dated:  December 6, 2024

WHITE & CASE LLP

By: _David G. Hille_
      David G. Hille

Attorneys for Defendants
COLBECK CAPITAL
MANAGEMENT, LLC; CB MEDIA
VENTURES DD, LLC; CB AGENCY
SERVICES, LLC; and CB
PARTICIPATIONS SPV, LLC

---

[17]  *See Salesforce*, 76 F.4th at 567 (Salesforce's active role helped Backpage "reach more . . . sex traffickers and purchasers of commercial sex"); *Colvin v. Roblox Corp.*, 725 F. Supp. 3d 1018, 1027 (N.D. Cal. 2024) (online gaming platform facilitated illegal gambling transactions between minors and third-party casinos); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009) (Section 230 did not apply to promissory estoppel claim based on defendant's unfulfilled promise to plaintiff); *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 681 (9th Cir. 2019) (defendant argued Section 230 preempted city ordinance on short-term rental hosting platforms).

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for the CB Defendants, certifies that the CB Defendants' Reply in Support of Their Motion to Dismiss the Second Amended Complaint consists of 20 pages, which complies with the 20-page limit set forth in Court's Order Granting Joint Stipulation to Request Extension of Remaining Briefing Schedule for Defendants' Responses to Plaintiff's Second Amended Complaint, ECF No. 473.

Dated:  December 6, 2024                    WHITE & CASE LLP

                                          By: _____
                                               David G. Hille

                                          Attorneys for Defendants
                                          COLBECK CAPITAL
                                          MANAGEMENT, LLC; CB MEDIA
                                          VENTURES DD, LLC; CB AGENCY
                                          SERVICES, LLC; and CB
                                          PARTICIPATIONS SPV, LLC