1  Esteban Morales Fabila (SBN 273948)
2  emorales@mintz.com
   MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
3  2049 Century Park East, Suite 300
   Los Angeles, CA 90067
4  Telephone: (310) 586-3200
   Facsimile: (310) 586-3202

5  Peter A. Biagetti (*Admitted Pro Hac Vice*)
6  pabiagetti@mintz.com
   MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
7  One Financial Center
   Boston, MA 02111
8  Telephone: (617) 542-6000
   Facsimile:  (617) 542-2241

9
   *Attorneys for Defendants MindGeek*
10 *S.à r.l., MG Freesites Ltd, MG Premium*
   *Ltd, MindGeek USA Incorporated, MG*
11 *Global Entertainment Inc., and 9219-1568*
   *Quebec Inc.*
12

13              **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15 | SERENA FLEITES, | Case No. 2:21-cv-04920-WLH-ADS |
16 |           Plaintiff, | **REPLY IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS MINDGEEK S.A R.L., MG FREESITES LTD, MG PREMIUM LTD, MINDGEEK USA INCORPORATED, MG GLOBAL ENTERTAINMENT INC, AND 9219-1568 QUEBEC INC.** |
   | v. | |
17 | MINDGEEK S.À R.L, et al., | |
18 |           Defendants. | |
19 | | **[UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]** |
20 | | |
21 | | |
22 | | Hearing Date:    January 31, 2025 |
23 | | Hearing Time:    1:30 p.m. |
   | | Courtroom:    9B |
24 | | Judge:    Hon. Wesley L. Hsu |
25 | | Complaint Filed:  June 17, 2021 |
   | | Trial Date:    None Set |
26
27
28

# TABLE OF CONTENTS

**Page(s)**

ARGUMENT.................................................................................................................1

I.  PLAINTIFF HAS NOT SUFFICIENTLY PLED BENEFICIARY
    LIABILITY UNDER THE TVPRA .................................................................1

    A.  Plaintiff Fails to Allege that MindGeek Is a Participant in a Trafficking
        Venture. ...................................................................................................1

    B.  Plaintiff Also Fails to Allege that MindGeek Knowingly Benefitted. ...3

II. PLAINTIFF'S REMAINING CLAIMS ARE DEFICIENT AND SHOULD
    BE DISMISSED .............................................................................................4

    A.  Plaintiff Has Not Pled Any Facts to Support MindGeek's Intentional
        Commission of Any Injury-Inflicting Conduct.......................................4

    B.  Plaintiff's Misappropriation Claim Is Insufficiently Pled for Additional
        Reasons....................................................................................................5

    C.  Plaintiff's Unfair Competition Claim Must Be Dismissed Because She
        Has Not Alleged Any Economic Injury. ..................................................6

    D.  Plaintiff Has Not Alleged a Claim for Civil Conspiracy or Negligence.7

III. SECTION 230 REQUIRES DISMISSAL OF ALL OF PLAINTIFF'S
     CLAIMS...........................................................................................................7

    A.  MindGeek Did Not Create or Develop the Unlawful Content. ...............7

    B.  FOSTA's Exception to Section 230 Immunity Does Not Apply..........11

IV. PLAINTIFF HAS NOT MET HER BURDEN OF DEMONSTRATING
    THAT MINDGEEK S.À R.L. IS THE ALTER EGO OF ANY
    DEFENDANT .................................................................................................12

    A.  MindGeek Did Not Create or Develop the Unlawful Content. ............12

    B.  Plaintiff's Allegations, When Boiled Down, Show Nothing More Than
        a Typical Parent-Subsidiary Relationship.............................................13

    C.  Plaintiff's Single-Enterprise Theory Cannot Support Exercising
        Personal Jurisdiction. ..........................................................................17

    D.  Plaintiff Also Failed to Show Any Fraud or Injustice. .........................17

    E.  MindGeek S.À R.L. Is Beyond the Territorial Reach of the TVPRA. .20

CONCLUSION.............................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Activision Publ'g Inc. v. EngineOwning UG*,
  2023 WL 3272399 (C.D. Cal. Apr. 4, 2023).................................................12, 18

*Anderson v. TikTok, Inc.*,
  116 F.4th 180 (3d Cir. 2024)..............................................................................11

*Apple Inc. v. Allan & Assocs. Ltd.*,
  445 F. Supp. 3d 42 (N.D. Cal. 2020)..................................................................17

*Boon Glob. Ltd. v. U.S. Dist. Court*,
  923 F.3d 643 (9th Cir. 2019)..............................................................................17

*Caraccioli v. Facebook, Inc.*,
  167 F. Supp. 3d 1056 (N.D. Cal. 2016)................................................................5

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003)..............................................................................8

*Doe v. Deutsche Bank Aktiengesellschaft*,
  671 F. Supp. 3d 387 (S.D.N.Y. 2023)...............................................................3, 4

*Doe v. MG Freesites, Ltd.*,
  676 F. Supp. 3d 1136 (N.D. Ala. 2022) .......................................................*passim*

*Doe v. Mindgeek USA Inc.*,
  558 F. Supp. 3d 828 (C.D. Cal. 2021)..................................................................8

*Doe v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001)..............................................................................16

*Doe v. WebGroup Czech Republic, a.s.*,
  2024 WL 3533426 (C.D. Cal. July 24, 2024) ...................................................8, 9

*Does v. Reddit, Inc.*,
  51 F.4th 1137 (9th Cir. 2022)......................................................................*passim*

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
  521 F.3d 1157 (9th Cir. 2008)....................................................................8, 9, 10

*Fed. Agency of News LLC v. Facebook, Inc.*,
    432 F. Supp. 3d 1107 (N.D. Cal. 2020) .................................................... 8

*G.G. v. Salesforce.com, Inc.*,
    76 F.4th 544 (7th Cir. 2023) ........................................................ 1, 3, 4

*Goddard v. Google, Inc.*,
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) .................................................. 9

*Gonzalez v. Drew Indus.*,
    2008 WL 11338569 (C.D. Cal. Apr. 1, 2008) ..................................... 17

*Hannibal Pictures v. Sonja Prods.*,
    2007 WL 9658705 (C.D. Cal. Apr. 20, 2007) ..................................... 19

*Herrera v. Cty. of L.A.*,
    482 F. App'x 263 (9th Cir. 2012) ........................................................ 18

*Krantz v. Bloomberg L.P.*,
    2022 WL 2102111 (C.D. Cal. Jan. 19, 2022) ..................................... 17

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
    22 F.4th 852 (9th Cir. 2022) ............................................................... 13

*McGowan v. McLane Co.*,
    2024 U.S. Dist. LEXIS 202474 (C.D. Cal. Nov. 5, 2024) .................. 17

*Motu Novu, LLC v. Percival*,
    2018 WL 3069316 (N.D. Cal. May 7, 2018) ...................................... 13

*Murphy v. Am. Gen. Life Ins. Co.*,
    74 F. Supp. 3d 1267 (C.D. Cal. 2015) .................................................. 7

*Nikogosian v. Cavalry Portfolio Servs., LLC*,
    2012 WL 2568124 (C.D. Cal. July 2, 2012) ........................................ 5

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ............................................................... 19

*Perfect 10, Inc. v. Google, Inc.*,
    2010 WL 9479060 (C.D. Cal. July 30, 2010) ....................................... 6

*Prime Healthcare Servs. v. Emblemhealth, Inc.*,
    2016 WL 11771246 (C.D. Cal. Nov. 28, 2016) ................................. 13

*Sanho Corp. v. Kaijet Tech. Int'l Ltd.*,
    2018 WL 6138136 (N.D. Cal. Nov. 23, 2018) .................................................. 13

*Shimmick Constr. Co./Obayashi Corp. v. Officine Meccaniche*
    *Galletti-O.M.G. S.R.L.*,
    2014 WL 5847440 (S.D. Cal. Nov. 12, 2014) .................................................. 18

*Successor Agency to the Former Emeryville Redevelopment Agency v.*
    *Swagelok Co.*,
    2024 U.S. Dist. LEXIS 153887 (N.D. Cal. Aug. 27, 2024) .............................. 19

*Tamraz v. Bakotic Pathology Assocs.*,
    2022 WL 16985001 (S.D. Cal. Nov. 16, 2022) ................................................ 17

*Tanedo v. E. Baton Rouge Parish Sch. Bd.*,
    2012 WL 5378742 (C.D. Cal. Aug. 27, 2012) .................................................. 20

*United States v. eBay Inc.*,
    2024 U.S. Dist. LEXIS 177713 (E.D.N.Y. Sept. 30, 2024) ................................ 9

*Unlu v. Wells Fargo Bank NA*,
    2011 WL 6141036 (N.D. Cal. Dec. 9, 2011) ..................................................... 6

**State Cases**

*Cross v. Facebook, Inc.*,
    14 Cal. App. 5th 190 (2017) ............................................................................. 6

**Federal Statutes**

18 U.S.C. § 1591(a)(1) .......................................................................................... 1

18 U.S.C. § 1591(a)(2) ..................................................................................... 1, 12

18 U.S.C. § 1595(a) .............................................................................................. 2

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ........................................................................... 6

Cal. Bus. & Prof. Code § 17204 ........................................................................... 6

Cal. Civ. Code § 1708.85 ...................................................................................... 4

**Other Authorities**

Nicholas A. Dorsey et al., Cravath, Swaine & Moore LLP, *Acquisition Finance 2023* ..................................................................................................... 20

REPLY IN SUPPORT OF MOTION TO DISMISS - Case No. 2:21-cv-04920-WLH-ADS

## ARGUMENT

### I. PLAINTIFF HAS NOT SUFFICIENTLY PLED BENEFICIARY LIABILITY UNDER THE TVPRA

Implicitly acknowledging her failure to plead sufficient facts to support a claim for *direct* sex trafficking under Section 1591(a)(1), Plaintiff invests 15 pages of her Opposition in an attempt to shift focus to *beneficiary* liability under Section 1591(a)(2). To establish beneficiary liability under the Trafficking Victims Protection Act ("TVPRA"), however, Plaintiff still must plead that MindGeek "knowingly . . . benefit[ted], financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of [18 U.S.C. § 1591(a)(1)]," i.e., a sex trafficking act. 18 U.S.C. § 1591(a)(2). Because Plaintiff's Second Amended Complaint ("SAC") fails to sufficiently allege MindGeek's knowing participation in a venture engaged in sex trafficking, her fallback beneficiary-liability theory must be dismissed.

#### A. Plaintiff Fails to Allege that MindGeek Is a Participant in a Trafficking Venture.

Plaintiff attempts to overcome her SAC's pleading deficiencies by arguing at length about what constitutes a venture and how one can be inferred to have participated in a venture. *See generally* Opp. at 5-11. But fatally, Plaintiff conflates participation in a venture with "participation in a venture *which . . . has engaged in an act of sex trafficking*"—and only the latter is an indispensable element of beneficiary liability under the TVPRA. 18 U.S.C. § 1591(a)(2); *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 548 (7th Cir. 2023). Plaintiff has simply not established, in the SAC or even through the inflated characterizations of her Opposition, that MindGeek itself has participated in a venture engaged in sex trafficking.

As in her SAC, much of Plaintiff's Opposition pejoratively portrays how MindGeek allegedly operates the breadth of its business. Opp. at 11-15. But what

Plaintiff specifies as to MindGeek's relevant conduct amounts only to *legal* activities. To that point, the Ninth Circuit's *Reddit* opinion, whose significance Plaintiff attempts to evade as ostensibly irrelevant, Opp. at 15, continues to be instructive. Although decided in the context of the FOSTA exception to section 230 immunity, the *Reddit* panel expressly assessed the civil beneficiary-liability portion of the TVPRA, making Plaintiff's wishful contention that *Reddit* "did not address the standards for civil beneficiary liability under section 1595," Opp. at 15, simply incorrect. Indeed, the *Reddit* court cited Section 1595 to emphasize that, "[i]n a sex trafficking beneficiary suit against a defendant-website, the most important component is the defendant-website's own conduct—its 'participation in the venture.' *See* 18 U.S.C. § 1595(a)." *Does v. Reddit, Inc.*, 51 F.4th 1137, 1143 (9th Cir. 2022) (noting that "the 'gravamen' of a section 1595 beneficiary claim is the defendant's participation in and benefit from the trafficking scheme" and that, therefore, the key conduct for establishing liability is that of the defendant-website itself).

As MindGeek established in its Opening Brief (10-12), the relevant facts alleged in Plaintiff's SAC are no more indicative of MindGeek having participated in a venture engaged in trafficking than the facts alleged in *Reddit*, which the Ninth Circuit held insufficient for beneficiary liability. As in *Reddit*, Plaintiff alleges, in sum, that MindGeek's moderation practices allowed CSAM to be uploaded to its sites, and that MindGeek provided best-practice materials which allowed users to attract traffic to their videos, did not remove reported videos quickly enough, and "earned revenue from ads it placed alongside Plaintiff's images." SAC ¶¶ 79, 450, 451, 453, 468, 470, 471; Opp. at 16-17. Though falsely exaggerated, even taken as true, none of these allegations, as was the case in *Reddit*, amounts to MindGeek's participation in trafficking. At best, Plaintiff has alleged trafficking by some of MindGeek's users (including Plaintiff's ex-boyfriends), but the conduct of those

individuals cannot as a matter of law be imputed to MindGeek to transform its lawful business into a venture engaged in trafficking. *Reddit*, 51 F.4th at 1142-45.

### B. Plaintiff Also Fails to Allege that MindGeek Knowingly Benefitted.

Even if this Court were to accept that Plaintiff has sufficiently pled the existence of a venture engaged in trafficking, beneficiary liability under the TVPRA further requires a defendant to have *knowingly* benefitted from participating in the trafficking venture alleged. The Opposition wrongly contends that the SAC has met that element by setting forth MindGeek's "constructive" knowledge. Opp. at 18. In the cases Plaintiff cites, however, courts found constructive knowledge on facts markedly different from what Plaintiff has alleged here. Indeed, one Seventh Circuit case, *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023), on which Plaintiff heavily relies as the "legal framework" through which to assess the knowledge element, Opp. at 8-11, is so different as to be nearly irrelevant. In that case, the court found that plaintiff specifically had alleged beneficiary liability against defendant Salesforce.com where it had formally entered into several contracts with non-party Backpage to facilitate Backpage's "exponential growth" and "scale its platform" – a platform that, as early as five years before it first contracted with Salesforce.com, had been "publicly identified" as "the biggest and most notorious sex trafficking and pimping website" in the country. *Salesforce.com*, 76 F. 4th at 549, 554. Because Salesforce.com's contractual collaboration with Backpage involved "repeatedly consult[ing]" with Backpage on its operational needs, tailoring support to help Backpage "expand its business," and requiring Salesforce.com to regularly "analyze [Backpage's] content," the court held that the plaintiff was entitled to a "reasonable inference" that Salesforce.com knew or should have known that "at least a substantial part of Backpage's business was illegal sextrafficking." *Id*. at 555.

Likewise, in the *Doe v. Deutsche Bank* case, which involved bank funding of the Jeffrey Epstein trafficking venture, the court held that defendants were "aware of

Epstein's convictions for sex crimes" yet ignored multiple red flags associated with his accounts, "which all suggested that Jeffrey Epstein operated a sex-trafficking venture," and that certain agents of the bank had actual "first-hand knowledge that Epstein operated a sex-trafficking venture." *Doe v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 407 (S.D.N.Y. 2023).  Indeed, in Plaintiff's own words, the defendant bank was specifically alleged to have "fund[ed] the venture that had been publicly accused by multiple media outlets of sex crimes."  Opp. at 7.

In sum, each of the ventures in those two cases was publicly and notoriously engaged in sex trafficking activity to a significant degree.  Plaintiff's expansive SAC offers no such factual allegations here.  Instead, Plaintiff claims that MindGeek had constructive knowledge of her trafficking by virtue of the volume of child pornography allegedly on MindGeek's tubesites generally, the "titles, tags, and categories" allegedly describing content as child pornography, and, in Plaintiff's case, "comments" on her videos.  Opp. at 18-19.  But Plaintiff does not—and cannot—allege the kind of overwhelming presence of trafficking as in *Salesforce.com* or *Deutsche Bank*, and thus is asking this Court to attribute constructive knowledge to MindGeek on the basis of a comparatively small amount of allegedly illegal user-generated content allegedly found on MindGeek's otherwise entirely legal operation.  This Court should decline to do so.

## II.   PLAINTIFF'S REMAINING CLAIMS ARE DEFICIENT AND SHOULD BE DISMISSED

### A.   Plaintiff Has Not Pled Any Facts to Support MindGeek's Intentional Commission of Any Injury-Inflicting Conduct.

The Opposition identifies no allegations of fact establishing that MindGeek intentionally committed any conduct giving rise to her claims of public disclosure of private facts, intrusion into private affairs, false light, common law and statutory misappropriation of likeness, and violation at Cal. Civ. Code § 1708.85.  Instead, Plaintiff contends that MindGeek "cannot escape liability on the grounds that the

videos were originally taken or provided to them by a third party" because it "approved, upload[ed], disseminate[d] and republish[ed] the videos . . . ." Opp. at 51-52. Plaintiff's own allegations contradict this contention.

Plaintiff specifically acknowledges that: (1) the videos at issue were posted by her ex-boyfriends and/or other third parties; (2) MindGeek's Terms of Service *prohibit* the posting of minors and required that any users were at least 18 years old; (3) MindGeek employees regularly performed content-moderation functions; and (4) once she reported to MindGeek "that the video was child pornography," MindGeek consistently took it down. *See* SAC ¶¶ 46-47, 67, 451, 453, 569-70. These allegations demonstrate that MindGeek did not intentionally approve, upload, disseminate or republish Plaintiff's videos, and thus foreclose Counts III-VIII. *See Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017) (dismissing false-light and public-disclosure claims because plaintiff had not plausibly alleged the defendant's publication of the content); *see* Opp. Br. at 30; *Nikogosian v. Cavalry Portfolio Servs., LLC*, 2012 WL 2568124, at *3 (C.D. Cal. July 2, 2012) (dismissing false-light claim because plaintiff had not alleged that defendant published or otherwise communicated any statement to a third party).

### B. Plaintiff's Misappropriation Claim Is Insufficiently Pled for Additional Reasons.

Plaintiff does not claim that she appeared in any ads for MindGeek, nor does she argue that her image was used to suggest that she endorsed products advertised on Pornhub or that MindGeek capitalized on her specific identity. Instead, Plaintiff claims that MindGeek misappropriated her likeness by "(i) profiting from the unauthorized dissemination of Plaintiff's videos to attract users and drive traffic; and (ii) profiting from the unauthorized use by placing advertisements alongside the videos of Plaintiff." Opp. at 52. She is wrong as a matter of law.

Plaintiff fails to plead any facts to support that MindGeek used her videos to

"attract users and drive traffic." Opp. at 52; *see Perfect 10, Inc. v. Google, Inc.*, 2010 WL 9479060, at \*13 (C.D. Cal. July 30, 2010), *aff'd*, 653 F.3d 976 (9th Cir. 2011) (dismissing statutory and common law claims brought by company that created and sold pictures of nude models against Google for appropriation of the name and likeness of models featured in photographs uploaded by third-party account holders). Moreover, as a matter of California law, merely hosting an image of Plaintiff adjacent to ads with no connection to her is not an actionable "use" of her identity. *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 210 (2017) (unrelated ads created by third-party users adjacent to the content that allegedly used the Plaintiff's likeness did not support that Facebook used the plaintiff's identity). Counts X and XI therefore must be dismissed.

### C.    Plaintiff's Unfair Competition Claim Must Be Dismissed Because She Has Not Alleged Any Economic Injury.

Plaintiff argues that "[e]ach defendant's participation in the MindGeek venture in violation of the TVPRA serves as a predicate wrong under the UCL," Opp. at 65-66, but fails to address that her SAC offers no allegations that she lost any specific money or property as the result of an allegedly unfair business practice or false advertisement.[1] *See* Op. Br. at 33; Cal. Bus. & Prof. Code § 17204 (a cause of action under the UCL and FAL may be maintained only if the person bringing the action "has suffered injury in fact and has lost money or property as a result of the unfair competition"). Similarly, Plaintiff maintains that she has stated a claim under the FAL for fraudulent omissions, Opp. at 50, n. 30, but never attempts to explain how the SAC meets the heightened pleading standard against which her fraud-based unfair competition claim must be measured. *See* Op. Br. at 33, n. 8. Applying that standard,

---

[1] Plaintiff's unfair-competition claim is predicated on California Business & Professions Code section 17200 (Unfair Competition Law ("UCL")) and 17500 (False Advertising Law ("FAL")). "Alleged violations of the two statutes are generally pled and litigated as a single cause of action, and California courts often do not distinguish between the two." *Unlu v. Wells Fargo Bank NA*, 2011 WL 6141036, at \*6, fn. 3 (N.D. Cal. Dec. 9, 2011).

1    Count XIV must be dismissed.

2          **D.**    **Plaintiff Has Not Alleged a Claim for Civil Conspiracy or Negligence.**

3

4          Plaintiff essentially concedes that she failed to state an actionable claim for

5    civil conspiracy against MindGeek when she argues only that the "SAC alleges that

6    Redwood, Visa, and Colbeck conspired to commit wrongful acts . . . ." Opp. at 49.

7    Count XVI therefore should be dismissed because "[t]here are no allegations

8    concerning when or where such a conspiracy was conceived," or facts from which an

9    agreement can be inferred, nor does the SAC specify the role each Defendant played

10   in the purported conspiracy. *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267,

11   1288 (C.D. Cal. 2015).

12         Similarly, the Opposition cites to no law or allegations of the SAC to refute

13   MindGeek's showing that, on the facts alleged, Plaintiff cannot allege that MindGeek

14   owed her any legal duty. Op. Br. at 32. Count XIII therefore must be dismissed.

15   **III.**    **SECTION 230 REQUIRES DISMISSAL OF ALL OF PLAINTIFF'S CLAIMS**

16         **A.**    **MindGeek Did Not Create or Develop the Unlawful Content.**

17         Plaintiff acknowledges that section 230 bars her claims unless her SAC

18   sufficiently alleges that MindGeek made a "material contribution" to the unlawful

19   content at issue. Opp. at 53. But in arguing that MindGeek is a "content creator,"

20   Plaintiff never takes on the actual applicable legal standard. Instead, Plaintiff

21   continues to distract the Court with incendiary—and false—allegations regarding

22   MindGeek's purportedly overarching business practices. But just as the SAC offered

23   no actionable allegations of fact, the Opposition offers no argument as to how

24   MindGeek "materially contributed" to the creation of the videos of Plaintiff. As the

25   Ninth Circuit has stated, even if a website operator "could be considered an

26   information content provider," section 230 "still bar[s] [a plaintiff's] claim unless

27   [the website operator] created or developed the *particular [content] at issue*."

28

*Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) (emphasis added); *accord Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1118 (N.D. Cal. 2020) (section 230 barred plaintiff's claims that Facebook "created other content," not the content at issue).  Accordingly, allegations that MindGeek may have created or developed content other than the videos of Plaintiff is irrelevant.  But even if the Court were to consider the allegations of the SAC which extend beyond the specific content depicting Plaintiff, the content-neutral tools and processes to which Plaintiff points are not sufficient to deny section 230 immunity here because the SAC fails to show "substantial affirmative conduct on the part of [MindGeek] promoting the use of [its] tools for unlawful purposes."[2] *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174 n.37 (9th Cir. 2008).

   *First*, Plaintiff fails to tie any of her generalized allegations about MindGeek to the creation of *her* videos.  For example, she argues with respect to content creation that MindGeek "provides its global network of sex traffickers VPN services to allow them to obscure their locations and identities."  Opp. at 55.  Even assuming,

_____

[2] Plaintiff's reliance on two earlier cases in which courts allowed claims to proceed against MindGeek is unavailing. *See* Opp. 54 (citing *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828 (C.D. Cal. 2021) ("MindGeek USA"); *Doe v. MG Freesites, Ltd.*, 676 F. Supp. 3d 1136 (N.D. Ala. 2022) ("MG Freesites")).  Although those cases were brought against MindGeek and involved allegations about MindGeek's general business practices, those cases involved different plaintiffs and were decided without the benefit of the Ninth Circuit's most recent opinion on section 230 immunity in *Reddit*.  They were also decided without the benefit of the more recent decision from this jurisdiction that addressed allegations very similar to those asserted by Plaintiff, *Doe v. WebGroup Czech Republic, a.s.*, 2024 WL 3533426, at *6-7 (C.D. Cal. July 24, 2024) (applying section 230 to bar claims based on allegations that the defendants "(1) create guidelines which permit, promote, and encourage sex trafficking . . . ; (2) use VPNs to anonymize web traffic, making it difficult for law enforcement to locate child pornography and child sexual abuse material . . . ; (3) create titles, tags, keywords, search terms, and categories indicative of CSAM to make it easer for users seeking CSAM to find it, and to maximize views and profits; and (4) create thumbnails from all videos, including the CSAM depicting Plaintiff").  Finally, in both cases MindGeek has moved for summary judgment on section 230 grounds, so the courts' ultimate decisions about the merits of any exceptions to that immunity remain outstanding as of the date of this filing.  *See* ECF No. 283, Mindgeek USA; ECF No. 221, MG Freesites.

*arguendo*, the truth of this allegation, this "global network of sex traffickers" is irrelevant to Plaintiff's videos because they were created by her ex-boyfriends, whom she does not allege are part of this global network, or indeed, are even sex traffickers. Plaintiff also fails to show how the alleged use of VPN services "materially contributed" to the unlawful content posted on MindGeek's websites, rather than simply making available a neutral tool accessible to all of the website's users and plainly protected under section 230. *See WebGroup Czech Republic*, 2024 WL 3533426, at *6 (dismissing claims based on CSAM posted on websites operated by defendants on section 230 grounds where plaintiffs alleged in part that the defendants use VPNs to anonymize web traffic).

**Second**, Plaintiff's characterizations of MindGeek's conduct amount to no more than formatting of *existing* user content and using neutral tools to direct user traffic to *user-created* content. Opp. at 54-55. But even if the underlying allegations in the SAC to which Plaintiff cites for these characterizations were true, they do not overcome section 230 immunity. The use of titles, tags, categories, and keywords to facilitate a user's search of content—even if that search is for unlawful or illicit content, *or* the titles, tags, and categories include indicia of CSAM, *or* the website operator knows that third parties use those tools to create illegal content—and the use of thumbnails and other actions to edit for length "do[] not amount to 'development' for purposes of the immunity exception." *Roommates*, 521 F.3d at 1169.[3]

---

[3] *See id.* ("A website operator who edits user-created content—such as by . . . trimming for length—retains his immunity for any illegality in the user-created content, provided that the edits are unrelated to the illegality."); *WebGroup Czech Republic*, 2024 WL 3533426, at *8 (applying section 230 to preclude claims where defendants made available to users "titles, tags, keywords, search terms, and categories" "indicative of CSAM" because such tools are "either a standard publishing function or a neutral tool made available to all third parties seeking to upload material onto Defendants' websites"); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1197-98 (N.D. Cal. 2009) (finding Google's Keyword Tool a neutral tool because "the users ultimately determine what content to post"). Similarly, administrative and technical support provided by MindGeek to users uploading content does not "materially contribut[e] to [the content's] alleged unlawfulness." *United States v. eBay Inc.*, 2024 WL 4350523, at *10 (E.D.N.Y. Sept. 30, 2024) (footnote continued)

***Third***, Plaintiff's contention that MindGeek "maintains the webpage and thumbnails for disabled videos so that the MindGeek Defendants can continue to generate traffic and revenue from that illegal content and direct users to similar content" (Opp. at 55) is not enough to save Plaintiff's claims.  In *Reddit*, the Ninth Circuit assessed a very similar argument:  that Reddit, like MindGeek, "has done little to remove the unlawful content or prevent it from being posted, because it drives user traffic and revenue."  51 F.4th at 1139. There, the Ninth Circuit concluded that such allegations were not enough to undercut section 230 immunity, and the same conclusion should be drawn here.  *Id.* at 1142.

***Finally***, Plaintiff tries to rescue her claims by arguing that MindGeek is "responsible at least in part' for each of the videos which are 'a collaborative effort' between Pornhub and the user uploading the video."  Opp. at 55.  The cases on which Plaintiff relies, however, do not stand for this proposition.  The "collaborative effort" referred to by the court in *Roommates* was premised on the fact that the unlawful content which ran afoul of the Fair Housing Act was provided by users *in response* to defendant Roommate's *mandatory* questions.  *Roommates*, 521 F.3d at 1166.  The court explained that, "[B]y requiring subscribers to provide the information as a condition of accessing its service, and by providing a limited set of pre-populated answers, Roommate becomes much more than a passive transmitter of information provided by others."  *Id.*  Plaintiff can point to no similar conduct by MindGeek requiring users to post illegal content in order to access its websites' services that in any way resembles the "collaborative effort" described in *Roommates*.

Plaintiff's reliance on *Anderson v. TikTok, Inc.*, 116 F.4th 180 (3d Cir. 2024) is similarly misplaced.  In *Anderson*, the Third Circuit concluded that TikTok's For You Page ("FYP") was not subject to section 230 immunity because TikTok's

---

(holding that eBay has Section 230 immunity even where plaintiff alleged that eBay has "pervasive control over every aspect of the transaction on its website," and eBay, among other things, "assists in the drafting of the product listing, actively markets the listings, . . . takes a fee . . . handles disputes" because such conduct was "neutral").

REPLY IN SUPPORT OF MOTION TO DISMISS - Case No. 2:21-cv-04920-WLH-ADS

algorithm affirmatively recommended the content at issue to the victim on her FYP. Importantly, the court emphasized that its conclusion was based on the fact that TikTok's promotion of the content at issue "was not contingent upon any specific user input," and that, had the victim viewed the video "through TikTok's search function rather than through her FYP, then TikTok may be viewed more like a repository of third-party content than an affirmative promoter of such content." *Id.* at 184 n.12. Here, Plaintiff does not make any allegations suggesting that a user's access to the videos depicting Plaintiff were ultimately determined by anything other than that user's own input of what he or she was searching for. Therefore, no similar "collaborative effort" exists here.

### B.    FOSTA's Exception to Section 230 Immunity Does Not Apply.

Plaintiff similarly fails to plead sufficient facts to show that the FOSTA exception to section 230 immunity applies, primarily because she misstates the applicable legal standard set forth in *Reddit*. *See* Opp. at 15, 55. The *Reddit* panel clarified two aspects of the FOSTA exception: (1) that to invoke FOSTA's immunity exception, a plaintiff must "plausibly allege that the *website's own conduct* violated section 1591," the federal criminal child sex trafficking statute; and (2) to establish beneficiary liability under the criminal statute, the "defendant must have actually 'engaged in some aspect of the sex trafficking.'" *Reddit*, 51 F.4th at 1143, 1144 (emphasis added). The Court further emphasized that, to meet the beneficiary-liability standard, "a defendant must knowingly benefit from and knowingly assist, support, or facilitate sex trafficking activities . . . [a]nd knowingly benefitting from participation in such a venture requires actual knowledge and 'a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit.'" *Id.* at 1145.

For the reasons detailed in MindGeek's Opening Brief (10-14) and above, the SAC fails to sufficiently plead a violation of Section 1591(a)(2) to establish

beneficiary liability.  The rhetoric of Plaintiff's Opposition cannot cure that deficiency.  Section 230 therefore applies to bar Plaintiff's claims under the TVPRA.

## IV.  PLAINTIFF HAS NOT MET HER BURDEN OF DEMONSTRATING THAT MINDGEEK S.A R.L. IS THE ALTER EGO OF ANY DEFENDANT

### A.    MindGeek Did Not Create or Develop the Unlawful Content.

To establish personal jurisdiction, Plaintiff was "*required* to come forward with documentary evidence in [her] Opposition to [MindGeek's] factual jurisdictional attack."  *Activision Publ'g Inc. v. EngineOwning UG*, 2023 WL 3272399, at *4 (C.D. Cal. Apr. 4, 2023) (emphasis in original).  Here, Plaintiff's attempts to dodge that burden comport with neither the documented facts nor Ninth Circuit law—including the law on which she relies.

*First*, rather than rebut MindGeek's evidence, Plaintiff simply claims it is too "conclusory."  Opp. at 64, 76.  Mr. Andreou provided factual detail demonstrating that the relevant entities are not alter egos, and specified precisely how each entity is "separate from the others" because (for example) each "has its own bank accounts," "files separate tax returns," and "has been adequately capitalized," as demonstrated by the financial statements for each entity.  ECF No. 448-2 ¶¶ 17, 30, 35, 43, 51. These sworn-to facts are admissible evidence, as Plaintiff's own cases make clear. *See* Opp. at 80.  Mr. Andreou's factual counter therefore shifted the burden to Plaintiff to support her disputed allegations with admissible evidence.  She has failed to meet that burden.

*Second*, Plaintiff claims that MindGeek's declaration should be disregarded because the statements are "uncorroborated."  Opp. at 79-82.  But Ninth Circuit courts have consistently found a plaintiff's burden to support disputed allegations triggered based on declarations alone.  *See, e.g.*, *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858, 862-63 (9th Cir. 2022) (refusing to treat allegations as true because they were controverted by declarations); *Prime Healthcare Servs. v.*

*Emblemhealth, Inc.*, 2016 WL 11771246, at *2 (C.D. Cal. Nov. 28, 2016) (same). In any event, Mr. Andreou's factual averments were supported with nearly 1,000 pages of documentary evidence, as well as specific references to documents produced in discovery.

**Third**, even after a year of jurisdictional discovery in which Defendants produced nearly 100,000 pages of documents, answered multiple rounds of interrogatories, and sat for seven party and third-party depositions, Plaintiff repeatedly faults Defendants for documents that she allegedly does not have. Opp. at 76, 80, 81, 84.[4] Yet Plaintiff does not specify any document request that Defendants allegedly ignored, nor any court order compelling Defendants to produce such documents that supposedly was evaded.[5] Plaintiff's tardy and unsupported complaints cannot stave off dismissal. *See Motu Novu, LLC v. Percival*, 2018 WL 3069316, at *9 (N.D. Cal. May 7, 2018) (granting motion to dismiss and noting that although the plaintiff asserted that the defendant "withheld certain information" in jurisdictional discovery, the plaintiff "did not move to compel further responses" to those discovery requests); *Sanho Corp. v. Kaijet Tech. Int'l Ltd.*, 2018 WL 6138136, at *4 n.2 (N.D. Cal. Nov. 23, 2018) (similar).

### B. Plaintiff's Allegations, When Boiled Down, Show Nothing More Than a Typical Parent-Subsidiary Relationship.

Mr. Andreou's Declaration systematically rebuts each of Plaintiff's allegations

---

[4] ████████████████████████████

Plaintiff's claims of unproduced information are also, in many cases, not true. For example, Plaintiff claims that MindGeek produced no evidence that the entities maintained separate bank accounts, yet MindGeek produced—in accordance with Judge Spaeth's order (ECF No. 335 at 5)—documentation "sufficient to show from what bank accounts the expenses . . . were paid." Biagetti Reply Decl. Exs. 5, 6. Plaintiff instead provides the Court with an earlier copy of these exact documents that does not contain the information that Plaintiff moved to compel—but which MindGeek subsequently provided. *Compare* Biagetti Reply Decl. Exs. 5, 6 *with* ECF Nos. 480-14, 480-15.

1  that the entities are alter egos, revealing, in truth, a typical parent-subsidiary

2  relationship between the MindGeek entities.

3  **Corporate Structure.** The gravamen of Plaintiff's claim is that the corporate

4  structure is a sham and that the entities disregard the corporate form because ▮

5  ████████████████████████████████████████████

6  ████████████████████████████████████████████

7  ████████████████████████████████████████████

8  ████████████████████████████████████████████

9  ████████████████████████████████████████████

10 ████████████████████████████████████████████

11 ████████████████████████████████████████████

12 ████████████████████████████████████████████

13 ████████████████████████████████████████████

14 ████████████████████████████████████████████

15 ████████████████████████████████████████████

16 ████████████████████████████████████████████

17 ████████████████████████████████████████████

18 ██████████████    And legally, they cannot be.  Op. Br. at 35-36.

19 ████████████████████████████████████████████

20 ████████████████████████████████████████████

21 ████████████████████████████████████████████

22 ████████████████████████████████████████████

23 ████████████████████████████████████████████

24 ████████████████████████████████████████████

25 ████████████████████████████████████████████

26 ████████████████████████████████████████████

27 ████████████████████████████████████████████

28



1 ██████████████████████████████████████████████

2 **Inter-corporate Involvement.** ███████████████████

3 ████████████████████████████████████████████, Opp. at

4 69, 80, but Ninth Circuit law is clear that even being "heavily involved" in a

5 subsidiary's business decisions does not amount to the requisite "domination" of a

6 subsidiary, *see* Op. Br. at 32. Contrary to Plaintiff's characterization, "████████

7 ████████████████████████████████████████████████████

8 ████████████" are not "████████████████████████" as a matter of law. Opp. at

9 70; *see Doe v. Unocal Corp.*, 248 F.3d 915, 927 (9th Cir. 2001) (no alter-ego found

10 even with parent's "involvement in its subsidiaries' acquisitions" and "general

11 business policies and strategies [were] applicable to its subsidiaries"). And

12 overlapping employees and directors, as well as one subsidiary providing

13 management services for another, do not evidence an alter-ego relationship either.

14 *See* Op. Br. at 33-34. Indeed, Mr. Andreou describes, in detail, the nature of the

15 arms-length business relationship between the entities, including the terms of written

16 service agreements, the payment of costs for services rendered, monthly invoices, the

17 annual review of the amount of mark ups and other amendments to service

18 agreements, and the engagement of third-party Raymond Chabot Grant Thornton

19 LLP to conduct comprehensive transfer-pricing studies. ECF No. 448-2 ¶¶ 14-16.

20 ██████████████████████████████████████████████

21 ██████████████████████████████████████████████

22 ██████████████████████████████████████████████

23 ██████████████████████████████████████████████

24 ██████████████████████████████████████████████

25 ████████████████████████████████████████████

26 **Servers.** Plaintiff has presented no evidence that MindGeek S.à r.l. had any

27 involvement with the servers that hosted content from MG Freesites and MG

28

Premium (which do not dispute jurisdiction here).    These servers' location ███████ is thus irrelevant to the exercise of personal jurisdiction over MindGeek S.à r.l., a separate legal entity.

### C.    Plaintiff's Single-Enterprise Theory Cannot Support Exercising Personal Jurisdiction.

Plaintiff's reliance on the "single enterprise" theory of veil piercing does not aid her jurisdictional analysis.    Ninth Circuit courts "routinely reject the use of a 'single enterprise' theory as a basis to establish personal jurisdiction." *Krantz v. Bloomberg L.P.*, 2022 WL 2102111, at *5 (C.D. Cal. Jan. 19, 2022).    And in any event, because the single-enterprise test "is the same" as the alter-ego test, Plaintiff cannot meet her burden under either theory.    *E.g.*, *Tamraz v. Bakotic Pathology Assocs.*, 2022 WL 16985001, at *3 (S.D. Cal. Nov. 16, 2022).

### D.    Plaintiff Also Failed to Show Any Fraud or Injustice.

Plaintiff claims that "the injustice element is irrelevant" to a jurisdictional alter-ego analysis.    Opp. at 82-83. Ninth Circuit law is, however, crystal clear that to exercise jurisdiction on an alter-ego basis, this Court must "make a finding that treating [MindGeek S.à r.l.] as [a] separate corporate form[] would 'result in fraud or injustice.'" *Boon Glob. Ltd. v. U.S. Dist. Court*, 923 F.3d 643, 654 (9th Cir. 2019); *see, e.g.*, *McGowan v. McLane Co.*, 2024 WL 4907144, at *3 (C.D. Cal. Nov. 5, 2024) (noting that failing "to address the 'fraud or injustice' prong of the alter-ego test . . . has been found fatal to alter-ego theories"); *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 55 (N.D. Cal. 2020) (finding plaintiff's alter-ego theory insufficient where it did not demonstrate the "second requirement" of showing that "an inequitable, fraudulent, or unjust result will follow"); *Gonzalez v. Drew Indus.*, 2008 WL 11338569, at *2 (C.D. Cal. Apr. 1, 2008) ("the Court nevertheless must grant the motion to dismiss because Plaintiff has failed on the second prong— demonstrating fraud or injustice"). Plaintiff cites no Ninth Circuit or California law to the contrary.    In fact, the only Ninth Circuit case Plaintiff cites for the misguided

proposition that the "injustice element is irrelevant" states that the second element of the jurisdictional alter-ego analysis is finding fraud or injustice. *See* Opp. at 82; *Activision Publ'g*, 2023 WL 3272399, at *6. Here, nothing in the Opposition evinces fraud or injustice will result if the corporate forms are respected.

**First**, Plaintiff does not submit a shred of evidence that she cannot be made whole through Freesites, the operator of the websites at issue in this lawsuit, or 9219, which acts as a service provider to MG Freesites. That fact alone dooms her claims of injustice. *See Shimmick Constr. Co./Obayashi Corp. v. Officine Meccaniche Galletti-O.M.G. S.R.L.*, 2014 WL 5847440, at *7 (S.D. Cal. Nov. 12, 2014) (no fraud or injustice where "no facts . . . suggest Plaintiff[s] cannot be made whole through a lawsuit against" the defendants subject to personal jurisdiction).

Plaintiff instead claims that MindGeek's sworn statement that it is solvent should not be considered because MindGeek objected to financial discovery beyond 2021. Opp. at 81. Again, Plaintiff never moved to compel production of any of these documents. *See supra* at 13. Plaintiff offers nothing other than pure speculation to attempt to rebut Mr. Andreou's sworn declaration. And in fact, Plaintiff's own complaint belies her last-ditch claim that MG Freesites and 9219 are insolvent. *See generally Herrera v. Cty. of L.A.*, 482 F. App'x 263, 265 (9th Cir. 2012) (allegations "repeatedly contradicted by other allegations" in the complaint are "not plausible"). Plaintiff alleges that MindGeek is "the dominant, monopolistic online pornography company in the world," ¶ 2, "dominat[ing]" an industry that "may generate as much as $97 billion per year," ¶ 34. Any claim that such an allegedly "monopolistic" company is insolvent and cannot satisfy Plaintiff's judgment—a figure she has not even remotely quantified—is contradicted by Plaintiff's own theory of her case.

But even if Plaintiff could plausibly plead that Freesites and 9219 would not be able to satisfy her judgment, that would still be legally irrelevant. Mere "'[d]ifficulty in enforcing a judgment or collecting a debt does not satisfy' the

---

18

injustice standard for alter ego liability." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677 (9th Cir. 2017). Instead, a plaintiff must show that the defendants were so undercapitalized that they are "unable to meet debts that may reasonably be expected to arise in the normal course of business.'" *Id.* Plaintiff has presented no evidence that Freesites or 9219 has ever been so undercapitalized that it cannot pay its debts.

**Second**, even accepting Plaintiff's claim that █████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████ For starters, "[e]stablishing a tax efficient structure . . . is a routine business practice and does not [necessarily] establish inequity." *Successor Agency to the Former Emeryville Redevelopment Agency v. Swagelok Co.*, 2024 WL 3952587, at *68 (N.D. Cal. Aug. 27, 2024) (citation omitted). And for another, Plaintiff does not explain how any such fraud, if it exists, works an inequitable result *on her*, █████████████████ would only *benefit* Plaintiff by infusing the MindGeek entities with more cash than they would have had were it not for such alleged tax evasion. Put simply, Plaintiff has suffered no "inequitable result" caused by any alleged ████████. *See Hannibal Pictures v. Sonja Prods.*, 2007 WL 9658705, at *5 n.5 (C.D. Cal. Apr. 20, 2007) (finding no fraud or injustice where the alleged improprieties did not prejudice the plaintiff, but rather "would have been a boon to the [defendant] company").

**Third**, Plaintiff's allegation that ████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████ an "increasingly" common M&A financing arrangement "in which a seller agrees to defer receipt of a portion of the purchase price until one or

more dates in the future." *See e.g.*, Biagetti Reply Decl., Ex. 7 (Nicholas A. Dorsey et al., Cravath, Swaine & Moore LLP, *Acquisition Finance 2023* at 29). ████████

████████████████████████████████████████████████████████████

████████

     E.     **MindGeek S.À R.L. Is Beyond the Territorial Reach of the TVPRA.**

Plaintiff attempts to use the location of her trafficking to bring MindGeek S.à r.l. within the territorial reach of the TVPRA, arguing that the location of the trafficking is the "touchstone" of the TVPRA, and trafficking that occurs in the United States thus compels a domestic application of the statute. But Plaintiff fails entirely to acknowledge the key difference between her case and those she cites: those cases involve arguably extraterritorial conduct, but not an extraterritorial defendant, and certainly not one that—like S.à r.l.—is merely a holding company, without employees or operations, incorporated in a foreign country. Op. Br. at 28. Cases like *Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 2012 WL 5378742, at *6 (C.D. Cal. Aug. 27, 2012), on which Plaintiff relies, do nothing to change that fact, and Plaintiff has otherwise failed wholly to address this aspect of extraterritorial application.

## **CONCLUSION**

For all of the foregoing reasons, the Court should dismiss with prejudice the entirety of Plaintiff's SAC.

Dated:  December 6, 2024          Respectfully submitted,

                                        MINTZ LEVIN COHN FERRIS
                                            GLOVSKY AND POPEO, P.C.

                                        */s/ Peter A. Biagetti*
                                        Esteban Morales
                                        Peter A. Biagetti

                                        Attorneys for Defendants
                                        MindGeek, S.à r.l., MG Freesites Ltd, MG Premium Ltd, MindGeek USA Incorporated, MG Global Entertainment Inc., and 9219-1568 Quebec Inc.

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants MindGeek, S.à r.l. (specially appearing), MG Freesites Ltd, MG Premium Ltd, MindGeek USA Incorporated, MG Global Entertainment Inc., and 9219-1568 Quebec Inc., certifies that this brief contains 20 pages, which complies with the 20-page limit set in the Court's Order Granting the Parties' Joint Stipulation Relating to Defendants' Responses to Plaintiff's Second Amended Complaint dated August 2, 2024 (ECF No. 424).

Dated:  December 6, 2024          Respectfully submitted,

MINTZ LEVIN COHN FERRIS
   GLOVSKY AND POPEO, P.C.

*/s/ Peter A. Biagetti*
Esteban Morales
Peter A. Biagetti

Attorneys for Defendants
MindGeek, S.à r.l., MG Freesites Ltd, MG Premium Ltd, MindGeek USA Incorporated, MG Global Entertainment Inc., and 9219-1568 Quebec Inc.

REPLY IN SUPPORT OF MOTION TO DISMISS - Case No. 2:21-cv-04920-WLH-ADS