| | |
|---|---|
| DAN MARMALEFSKY (CA SBN 95477) DMarmalefsky@mofo.com Morrison & Foerster LLP 707 Wilshire Boulevard Los Angeles, California 90017-3543 Telephone: 213-892-5200 Facsimile: 213-892-5454 | RONALD G. WHITE (admitted pro hac vice) RWhite@wmhwlaw.com Walden Macht Haran & Williams LLP 250 Vesey Street New York, NY 10281 Telephone: 212-335-2387 Facsimile: 212-335-2040 |

Attorneys for Defendant Bernd Bergmair

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENA FLEITES,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>MINDGEEK S.A.R.L., et al.,<br><br>　　　　　　　Defendants. | Case No.: 2:21-cv-4920-WLH-ADS<br><br>**DECLARATION OF RONALD G. WHITE IN SUPPORT OF OTHER DEFENDANTS' APPLICATIONS FOR LEAVE TO FILE UNDER SEAL MATERIAL DESIGNATED AS CONFIDENTIAL PURSUANT TO A PROTECTIVE ORDER**<br><br>Date: January 31, 2025<br>Time: 1:30 p.m.<br>Courtroom: 9B<br>Judge: Hon. Wesley L. Hsu<br>Complaint Filed: June 17, 2021<br>Trial Date: None Set |

DECLARATION OF RONALD G. WHITE

I, Ronald G. White, declare as follows:

1. I am an attorney licensed to practice law in the State of New York and a partner with the law firm Walden Macht Haran & Williams LLP. I have been granted permission by this court to appear *pro hac vice* as counsel for Defendant Bernd Bergmair in the above-captioned case. I am over the age of 18. I make this declaration in support of the applications for leave to file under seal material designated as confidential pursuant to a protective order filed by MindGeek, S.à r.l (specially appearing), MG Freesites Ltd, MG Premium Ltd, MindGeek USA Incorporated, MG Global Entertainment Inc., and 9219-1568 Quebec Inc. (collectively the "MindGeek Defendants") (ECF No. 504, the "MindGeek Defendants Application"); Feras Antoon and David Tassillo (ECF No. 494, the "Antoon and Tassillo Application"); Colbeck Capital Management, LLC; CB Media Ventures DD, LLC; CB Agency Services, LLC; and CB Participations SPV, LLC (collectively, "CB Defendants") (ECF No. 503, the "CB Defendants Application"); and Redwood Capital Management, LLC ("RCM"), Redwood Master Fund, Ltd., Redwood Opportunity Master Fund, Ltd., Manuel 2018, LLC, Ginogerum, LLC (erroneously sued as Gingogerum, LLC), and White-Hathaway Opportunity Fund, LLC (collectively, the "Redwood Defendants" or "Redwood") (ECF No. 493, the "Redwood Defendants Application"). I have personal knowledge of the facts stated herein, and if called as a witness, I could and would competently testify thereto.

2. Bergmair seeks to seal the information that he previously designated as confidential which was subsequently redacted (or highlighted) by (a) the MindGeek Defendants in their reply in support of their motion to dismiss (ECF No. 501, the "MindGeek Defendants' Reply") and certain exhibits in the supporting attorney declaration (ECF No. 501-1, the "Biagetti Declaration"); (b) Antoon and Tassillo in their reply in support of their motion to dismiss (ECF No. 491, "Antoon and Tassillo's Reply"); (c) the CB Defendants in their reply in support of their motion to dismiss (ECF No. 500, the "CB Defendants' Reply"); and (d) the Redwood

Defendants in their reply in support of their motion to dismiss (ECF No. 492, the "Redwood Defendants' Reply"). The confidential information sought to be sealed relates to: (1) the amount of money Bergmair invested in MindGeek, the amount of money for which he sold his MindGeek shares, and other sensitive information concerning the financing of his investment, (2) the shareholding and economic interests and other rights he received (and exercised) in exchange for his investment; (3) the identity of the corporate entities through which he invested; (4) his receipt of dividends as a result of his investment; and (5) MindGeek's commercial transactions with a private, non-party entity beneficially owned by Bergmair. Much of the information Bergmair seeks to seal was filed under seal in Plaintiff's Second Amended Complaint. Specifically, Bergmair requests that the following excerpts be sealed:

| **MATERIAL REQUESTED FOR SEALING** | **REASON** |
|---|---|
| MindGeek Defendants' Reply at:<br>• 19:20-26<br>• 20:2-4<br>Biagetti Declaration at:<br>• Exhibit 3 (Bergmair_Fleites_00002577 – 2645)<br>Antoon and Tassillo's Reply at:<br>• 7:18<br>• 7:23-25<br>• 8:4-10<br>• 8:13<br>• 8:23-27 (n. 6) | Amount of money Bergmair invested in MindGeek, amount of money for which he sold his MindGeek shares, and other sensitive information concerning financing of his investment |

| MATERIAL REQUESTED FOR SEALING | REASON |
|---|---|
| MindGeek Defendants' Reply at:<br>• 14:4-15:4<br>• 15:16-21<br>• 15:25-16:3<br>• 16:6-8<br>• 19:6-8<br>• 19:13<br>• 19:16<br>Antoon and Tassillo's Reply at:<br>• 6:8-9<br>• 7:5<br>• 7:8-13<br>• 9:11-19<br>• 10:3-7<br>• 10:13-15<br>• 10:18-21 | Bergmair's shareholding and economic interests and other rights he received in exchange for his investment |
| MindGeek Defendants' Reply at:<br>• 15:16-17 | The identity of corporate entities through which Bergmair invested |
| MindGeek Defendants' Reply at:<br>• 15:16-21<br>Antoon and Tassillo's Reply at:<br>• 11:13-14 | Bergmair's receipt of dividends as a result of his investment |
| MindGeek Defendants' Reply at:<br>• 13:21-23 (n. 4)<br>Biagetti Declaration at:<br>• Exhibit 6 (MindGeek_Fleites_00098688) at 3, 6 | MindGeek's commercial transactions with a private, non-party entity beneficially owned by Bergmair |

3. The federal common law right to access public records is "not absolute." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). In particular, "the common-law right of inspection has bowed before the power of a court to insure that its records are not used … as sources of business information that might harm a litigant's competitive standing." *Id.*

4. "[T]he Ninth Circuit has not stated the standard – good cause or compelling reasons – that applies to the sealing of a pleading. *L.A. Int'l Corp. v.*

*Prestige Brands Holdings, Inc.*, 2018 WL 6985313, at *1 (C.D. Cal. Nov. 6, 2018) (recognizing split of authority among the district courts in the Ninth Circuit).

5. The "good cause" standard comes from Rule 26(c)(1), which sets forth the requirements for protective orders during discovery. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016). Rule 26(c)(1) provides: "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

6. "'[C]ompelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (quoting *Nixon*, 435 U.S. at 598).

7. Bergmair's narrowly tailored sealing request satisfies both standards.

8. Courts in this circuit have routinely held that confidential business and personal financial information—such as the amount of Bergmair's investment in MindGeek, the shareholding and economic interests he received in return, his receipt of dividends, the amount for which he sold his shares, and other details regarding his investment in a private company—satisfies the compelling reasons standard and warrants sealing. *See Reputation.com, Inc. v. Mullarkey*, 2022 WL 4775881, at *2 (N.D. Cal. Sept. 30, 2022) (compelling reasons standard satisfied, in part, because the at-issue "documents contain confidential business and financial information relating to the terms of [a corporate] acquisition" which, "[i]f publi[shed], the terms of the agreement could be used against Plaintiff in future negotiations by potential acquirees or other entities competing against Plaintiff for such opportunities"); *Monterey Bay Military Housing LLC v. Ambac Assurance Corp.*, 2019 WL 11658748, at 2 (N.D. Cal. July 11, 2019) (finding "compelling

reasons" to seal "documents [that] relate to financial transactions that were intended to be, and have been, kept in confidence," as well as "private financial and operational information" regarding business); *Allianz Global Risks US Ins. Co. v. United States*, 2021 WL 3171862, at 2 (S.D. Cal. July 27, 2021) (finding "compelling reasons" to seal information from which "the potential economic value of [the designating party's] business ventures can be deduced"); *In re Qualcomm Litig.*, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (compelling reasons exist to seal "confidential business information," such as "confidential business agreements executed among the parties," agreement terms, amounts paid under agreements, "financial terms," details of negotiations, and "business strategies"); *Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, at *4 (N.D. Cal. June 30, 2015) (party may meet burden under Local Rule 79-5 where party seeks to seal "proprietary and confidential business information," including agreements reflecting "parties' obligations and terms of payment"); *see also Nguyen v. City of Garden Grove*, 2023 WL 2558536, at *4 (C.D. Cal. Feb. 2, 2023) (during discovery, permitting redactions of private financial information such as "asset information"); *Landmark Screens, LLC v. Morgan Lewis & Bockius*, 2010 WL 3221859 at *5 (N.D. Cal. Aug. 13, 2010) (sealing "confidential business information which is not intended for public disclosure").

      9.    Disclosure of this information would put Bergmair at a significant disadvantage in future business endeavors. Bergmair is a professional investor who invests in assets and private companies in a range of industries. Any future counterparty negotiating with Bergmair, if they were armed with information regarding how much Bergmair invested in MindGeek, the dividends he received during his time as a shareholder, and the price at which he sold his interest would have substantial – and unwarranted – insight into Bergmair's personal financial condition and cashflow, which would be of enormous negotiating advantage. Such a counterparty could calculate Bergmair's profit or loss from his purchase and sale

1  of MindGeek shares (and receipt of dividends) and know the amount of funds
2  Bergmair currently has available to deploy. The agreement by which Bergmair sold
3  his shares sets forth a schedule of the payments comprising the total sale price, the
4  disclosure of which would allow a negotiating counterparty to know Bergmair's
5  precise cash flow, including specific dollar amounts and dates. In fact, such
6  information could be used to Bergmair's disadvantage not just by a counterparty
7  with whom he is negotiating, but also another party against whom Bergmair was
8  competing for an investment opportunity. Moreover, this information is fresh and
9  would give other parties insight into Bergmair's current financial condition, since
10 he sold his interest in MindGeek just last year in 2023.

11      10.    Similarly, disclosing Bergmair's economic interest in MindGeek –
12 especially in conjunction with the MindGeek audit reports and financial statements
13 that are also filed under seal in this case – would simply be a backdoor way of
14 revealing his personal financial condition, since a future counterparty or competitor
15 of Bergmair's could simply work backwards from MindGeek's financials to
16 ascertain the value of his investment and the dividends he received. *See Allianz*
17 *Global Risks*, 2021 WL 3171862 at *1 (sealing information that a competitor could
18 use to "reverse engineer" key financial information of party). In addition, disclosing
19 the economic and other rights Bergmair negotiated for in connection with his
20 MindGeek investment would give a future negotiating counterparty or competitor
21 a roadmap of what Bergmair might seek or be willing to accept in connection with
22 a proposed investment.

23      11.    Finally, disclosing how Bergmair structured his corporate holdings
24 and the identity of the corporate entities through which he held his MindGeek shares
25 would obviously give a future counterparty or competitor an advantage in
26 negotiations. So would disclosing the identity of Bergmair's other investments,
27 including the non-party entity of Bergmair's that happened to do business with
28 MindGeek. A future counterparty or competitor would have insight into what

Bergmair regards as an advantageous structure for his investments, as well as knowledge of the identity and financial wherewithal of the specific entities through which Bergmair owned his MindGeek shares and other investments, including the non-party entity that did business with MindGeek. *See Bold Limited v. Rocket Resume, Inc.*, 2024 WL 1329921 at *2 (Mar. 27, 2024) (finding compelling need to seal records reflecting "nonpublic corporate structure"); *Droplets, Inc. v. Yahoo! Inc.*, 2019 WL 9443777 at *2 (N.D. Cal. June 18, 2019) (same).

12. In addition to the commercial disadvantage to Bergmair, disclosure of the sealed material would raise personal security concerns. Public disclosure of his personal financial condition – which is not otherwise in the public record – could make him or his family members (including his minor children) the target of harassment, at a minimum, or even kidnapping. Mr. Bergmair lives in Hong Kong, which has been the locale for numerous high-profile kidnappings of wealthy businessmen and their family members since the 1990s.[1] Recent decades have similarly seen similar kidnappings of wealthy people or their children for ransom.[2]

---

[1] Austin Ramzy, *Hong Kong Kidnapping Revives Memories of Other High-Profile Crimes*, The New York Times (Apr. 30, 2015 6:48 AM), https://archive.nytimes.com/sinosphere.blogs.nytimes.com/2015/04/30/hong-kong-kidnapping-revives-memories-of-other-high-profile-crimes/?searchResultPosition=3; Reuters, *Hong Kong police hunt kidnap gang that fled with $3.6-million ransom* (Apr. 26, 2016 6:37 AM EDT), https://www.reuters.com/article/world/hong-kong-police-hunt-kidnap-gang-that-fled-with-3-6-million-ransom-idUSKBN0NK12S/; Austin Ramzy, *Walter Kwok, Hong Kong Developer Who Survived Kidnapping, Dies at 68*, The New York Times (Oct. 22, 2018), https://www.nytimes.com/2018/10/22/world/asia/walter-kwok-dead-hong-kong.html?searchResultPosition=1.

[2] *See* Ben Wescott, *Chinese appliance billionaire He Xiangjian held hostage in kidnapping attempt*, CNN (June 16, 2020 1:26 AM EDT), https://www.cnn.com/2020/06/16/asia/china-billionaire-hostage-intl-hnk-scli/index.html; Bukola Adebayo, *Family of abducted Tanzanian billionaire offer reward for information*, CNN (Oct. 16, 2018 1:08 AM EDT), https://www.cnn.com/2018/10/15/africa/family-of-kidnapped-africa-billionaire-offer-reward/index.html; Laurie P. Cohen, *Lampert Kidnappers Spun A Tale of*

Moreover, the adult entertainment industry, although entirely legal, is a controversial one which has spawned many vocal and aggressive opponents. In addition to the financial disadvantage to him, disclosure of Bergmair's wealth from this industry could potentially invite harassment – both online and in person – of him and his family members.[3]

13. In addition, the exhibits contain non-public information, proprietary information, and trade secrets of MindGeek—including sensitive employment information as well as information about content-moderation practices that malicious actors could seek to evade if such information is publicly disclosed—that satisfies the compelling reason standard. *See, e.g.*, *In re Qualcomm Litig.*, 2017 WL 5176922, at *2 (compelling reasons exist to seal "confidential business information," such as "confidential business agreements executed among the parties," "financial terms," and "business strategies").

14. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: December 10, 2024                    Respectfully submitted,

                                            */s/ Ronald G. White*
                                            Ronald G. White

---

*Murder for Hire*, The Wall Street Journal (Jan. 21, 2003 12:14 AM EDT), https://www.wsj.com/articles/SB1043077177534126624.

[3] Indeed, in April 2021, the Montreal home of defendant Feras Antoon was burned to the ground by an arsonist following negative publicity regarding MindGeek. Ugo Giguère, *Luxury home in Montreal owned by Pornhub exec burned down in apparent arson*, Montreal Gazette (Apr. 26, 2021), https://montrealgazette.com/news/local-news/luxury-home-in-montreal-owned-by-pornhub-exec-burned-down-in-apparent-arson.