**PAUL HASTINGS LLP**
JAMES M. PEARL (SB# 198481)
jamespearl@paulhastings.com
KIAURA CLARK (SB# 336314)
kiauraclark@paulhastings.com
1999 Avenue of The Stars, 27th Floor
Los Angeles, California 90067
Telephone: 1(310) 620-5700
Facsimile: 1(310) 620-5899

KRISTOPHER M. HANSEN (*pro hac vice*)
krishansen@paulhastings.com
200 Park Avenue
New York, New York 10166
Telephone: 1(212) 318-6000
Facsimile: 1(212) 752-3310

*Attorneys for Defendants Redwood Capital Management, LLC, Redwood Master Fund, Ltd, Redwood Opportunity Master Fund, Ltd, Manuel 2018, LLC, Ginogerum, LLC, and White-Hathaway Opportunity Fund, LLC*

*Additional Counsel for Defendants listed on next page.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENA FLEITES,<br><br>Plaintiff,<br><br>vs.<br><br>MINDGEEK S.A.R.L. a foreign entity; MG FREESITES, LTD., a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; MG PREMIUM LTD, a foreign entity; MG GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 QUEBEC, INC., a foreign entity; BERND BERGMAIR, a foreign individual; FERAS ANTOON, a foreign individual; DAVID TASSILLO, a foreign individual; VISA INC., a Delaware corporation; REDWOOD CAPITAL MANAGEMENT, LLC, a Delaware corporation; REDWOOD MASTER FUND, LTD, a foreign entity; REDWOOD OPPORTUNITY MASTER FUND, LTD, a foreign entity; MANUEL 2018, LLC, a | CASE NO. 2:21-cv-4920<br><br>**REDWOOD DEFENDANTS' SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTIONS TO DISMISS PLAINTIFFS' COMPLAINTS**<br><br>Date: April 24, 2025<br>Time: 9:00 AM<br>Place: Courtroom 9B<br>Judge: Hon. Wesley L. Hsu<br><br>SAC filed: May 23, 2024 |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Delaware corporation; GINGOGERUM, LLC, a Delaware corporation; WHITE-HATHAWAY OPPORTUNITY FUND, LLC, a Delaware corporation; COLBECK CAPITAL MANAGEMENT, LLC, a Delaware corporation; CB MEDIA VENTURES LLC, a Delaware corporation; CB AGENCY SERVICES, LLC, a Delaware corporation; and CB PARTICIPATIONS SPV, LLC, a Delaware corporation,

    Defendants.

| | |
|---|---|
| 1 | ADAM M. REICH (SB# 274235) |
| | adamreich@paulhastings.com |
| 2 | EMMA LANZON (*pro hac vice*) |
| | emmalanzon@paulhastings.com |
| 3 | 71 South Wacker Drive, 45th Floor |
| | Chicago, Illinois 60606 |
| 4 | Telephone: 1(312) 499-6000 |
| | Facsimile: 1(312) 499-6100 |
| 5 | |
| 6 | *Attorneys for Defendants,* |
| | *Redwood Capital Management, LLC,* |
| | *Redwood Master Fund, Ltd,* |
| 7 | *Redwood Opportunity Master Fund, Ltd,* |
| | *Manuel 2018, LLC, Ginogerum, LLC,* |
| 8 | *and White-Hathaway Opportunity Fund, LLC* |

## **TABLE OF CONTENTS**

                                                                           **Page**

I.     Introduction .................................................................................................... 1
II.    Relevant Facts ............................................................................................... 4
III.   Plaintiffs Fail to State a TVPRA Conspiracy Claim ..................................... 5
      A.    Plaintiffs Fail to Allege Redwood's Knowledge. ................................ 5
      B.    Plaintiffs Fail to Allege Redwood's Agreement. ................................. 6
      C.    The Complaints Do Not Plausibly Allege Redwood's Intent. .............. 8
      D.    Judge Carney's Opinion Does Not Support Liability for
            Redwood. ............................................................................................. 9
      E.    Plaintiffs' Conspiracy Claim Has Far-Reaching Consequences. ....... 10
IV.   Conclusion ................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baumer v. Pachl*,
 8 F.3d 1341 (9th Cir. 1993) ................................................................................ 8

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ...................................................................................... 1, 6

*Benson v. JPMorgan Chase Bank, N.A.*,
 Nos. C–09–5272, C–09–5560 EMC, 2010 WL 1526394 (N.D. Cal. Apr. 15, 2010) .................................................................................................. 8

*Cellette v. Pomerantz*,
 No. 2:20-cv-4013SBMAR, 2023 WL 2616108, *R. & R. adopted*, 2023 WL 2614520 (C.D. Cal. Mar. 22, 2023) ................................................. 9

*Craigslist Inc. v. 3Taps Inc.*,
 942 F. Supp. 2d 962 (N.D. Cal. 2013) ......................................................... 2, 5, 8

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
 671 F. Supp. 3d 387 (S.D.N.Y. 2023) ........................................................... 2, 7

*Fleites v. MindGeek S.A.R.L.*,
 617 F. Supp. 3d 1146 (C.D. Cal. 2022) ..................................................... *passim*

*Hann v. Canyon Mobile Home Park*,
 No. EDCV 16-02338JGB, 2017 WL 10519668 (C.D. Cal. Nov. 9, 2017) ................................................................................................................ 6

*Impac Warehouse Lending Grp. v. Credit Suisse First Boston LLC*,
 270 F. App'x 570 (9th Cir. 2008) ....................................................................... 7

*Jane Doe No. 1 v. Fitzgerald*,
 No. CV 20-10713-MWF, 2022 WL 425016 (C.D. Cal. Jan. 6, 2022) ............... 5

*People v. Beaumont Inv., Ltd.*,
 111 Cal. App. 4th 102 (2003) .............................................................................. 6

*Stein v. World-Wide Plumbing Supply Inc.*,
 71 F. Supp. 3d 320 (E.D.N.Y. 2014) .............................................................. 5, 6

*Thinking Liberally Media, Inc. v. Orange Juice Blog*,
  No. SACV 10-00139 DOC (RNBx), 2010 WL 11596144 (C.D. Cal.
  Nov. 19, 2010) .......................................................................................... 8

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
  768 F.2d 1001 (9th Cir. 1985) ................................................................... 6

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023) ........................................................................... 1, 6, 9

*U.S. v. Dynamic Med. Sys., LLC*,
  No. 1:17-cv-01757 WBS SAB, 2023 WL 6927077 (E.D. Cal. Oct.
  17, 2023) .................................................................................................... 7

*U.S. v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ..................................................................... 1

*Verigy US, Inc. v. Mayder*,
  No. C-07-04330 RMW, 2008 WL 4820755 (N.D. Cal. Nov. 4,
  2008) .......................................................................................................... 8

# I. INTRODUCTION

Plaintiffs' conspiracy theory as to Redwood makes no sense.[1]  Conspiracy requires an "agreement with the primary wrongdoer to commit wrongful acts." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 490 (2023).  To plead such an "agreement," complaints must include "allegations plausibly suggesting (*not merely consistent with*) agreement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  Here, the allegations *undermine* any suggestion that Redwood conspired to violate the TVPRA.  Redwood had every incentive to ensure that MindGeek did *not* violate the law.  Lenders lend money and want to be paid back.  If Redwood (or any of the 100+ other lenders who loaned money to MindGeek) knew MindGeek was engaging in any illegal activity that threatened Redwood's ability to recoup the loaned funds, including MindGeek's running or benefiting from a sex trafficking venture, Redwood would not have participated in the financing.  Redwood had nothing to gain from MindGeek's participation in a sex trafficking venture.  Redwood's return was fixed at the contractual interest.  MindGeek getting more web traffic makes no difference to Redwood.  Redwood also expressly required that MindGeek ███████████████████████████████████████████.  *See* Dkts. 450-2 & 450-3, at Art. VI., § 6.01(h), (ss) & Art. VII, § 7.01(v), (z).[2]  These actions refute Plaintiffs' conspiracy claim, and the Complaints do not allege other facts that plausibly suggest an agreement or intent by Redwood to benefit from a sex trafficking venture.

To state a claim for civil conspiracy to violate the TVPRA, Plaintiffs must plausibly allege each defendant's (i) *knowledge* of the alleged wrongful conduct; (ii)

---

[1] All shorthand terms used herein have the same definitions as set forth in Redwood's Motions to Dismiss.  *See Fleites* Dkt. 450-6; *K.A.* Dkt. 71-1.

[2] The SAC quotes, references, and characterizes extrinsic documents without attaching them, including the Financing Agreements and the independent audit report prepared by ███████.  *See Fleites* Dkt. 450-6 at 5.  The incorporation by reference doctrine permits the Court to consider these documents here.  *See U.S. v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).  Plaintiffs have also never opposed this Court's consideration of such documents.

- 1 -
REDWOOD DEFENDANTS' SUPPLEMENTAL BRIEFING ISO MOTIONS TO DISMISS

1  *agreement* to benefit from such conduct; and (iii) *intent* to benefit from such conduct.
2  *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 981 (N.D. Cal. 2013).  As to
3  Redwood, Plaintiffs do not sufficiently allege any of these elements.  Their TVPRA
4  civil conspiracy claim against Redwood must therefore be dismissed.

5   *First*, the Complaints lack any allegations that Redwood had knowledge that
6  Redwood knew MindGeek was allegedly altering videos and violating the TVPRA.
7  There is no allegation Redwood knew of any Plaintiff or any actual sex trafficker.
8  There is also no explanation as to how Redwood, a money lender with no
9  involvement whatsoever in MindGeek's day-to-day operations, would have learned
10 of the trafficking.  Nor is an inference of knowledge plausible where, prior to lending,
11 Redwood obtained an independent audit reporting that MindGeek maintained
12 ███████ anti-CSAM procedures, including a ████████████████████
13 ████████" and "████████████████████████████████████
14 ████████████"  *See* Dkt. 450-1 at 57-58.

15  *Second*, the Complaints fail to allege Redwood's *agreement* with MindGeek
16 to benefit from sex-trafficking.  Simply alleging that Redwood provided financing to
17 MindGeek is not enough to satisfy this element even if one accepts, without any
18 specific factual allegation, that Redwood was aware that MindGeek intended to host
19 CSAM.  *See Doe 1 v. Deutsche Bank Aktiengesellschaft,* 671 F. Supp. 3d 387, 412
20 (S.D.N.Y. 2023) (even alleging an agreement to "provide banking services" to a
21 *known* sex trafficking venture is insufficient to plead "an actual agreement to
22 participate in a sex-trafficking venture").

23  Plaintiffs make no allegations beyond mere financing.  No theory or suggestion
24 exists as to when or *why* Redwood would have agreed that MindGeek should violate
25 the TVPRA.  And, rebutting any inference of such an agreement, judicially noticeable
26 facts show that before lending to MindGeek, Redwood sought and obtained
27 contractual covenants that MindGeek would "████████████████████████
28

- 2 -
REDWOOD DEFENDANTS' SUPPLEMENTAL BRIEFING ISO MOTIONS TO DISMISS

1 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." *See* Dkts. 450-2 & 450-3.  MindGeek's actual
promise to Redwood that it would *not* host CSAM, is the opposite of the agreement
to violate the statute alleged by Plaintiffs.  On that record, without any contrary
allegations, Plaintiffs fail to plausibly plead an agreement.

*Third,* Plaintiffs cannot allege Redwood's intent to benefit from sex-trafficking.  Plaintiffs do not (and cannot) allege that Redwood stood to gain *anything* from MindGeek's alleged sex trafficking venture. Plaintiffs do not allege any facts whatsoever to suggest that absent sex-trafficking, MindGeek would have defaulted on its debt.  The judicially noticeable facts, again, are wholly inconsistent with an inference of intent.  In particular, immediately after publication of the Kristof article (marking the first time Redwood had notice of possible CSAM on MindGeek sites), Redwood and the other lenders required MindGeek to take ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  Redwood then promptly exited its lending relationship with MindGeek.  Redwood's conduct belies any allegations of intent to benefit from trafficking.

The denial of Visa's motion to dismiss in *Fleites v. MindGeek S.A.R.L.*, 617 F. Supp. 3d 1146 (C.D. Cal. 2022) supports Redwood's argument.  The decision relied on allegations that Visa "provided the tool used to complete a crime," *i.e.*, a payment processing system through which MindGeek and Visa allegedly profited directly from MindGeek hosting CSAM.  *Id*. at 1164.  Judge Carney made clear that his decision does *not* impose conspiracy liability on those whose commercial contracts with MindGeek support the company more generally.  Redwood is exactly the type of entity Judge Carney's decision excludes from conspiracy liability.  Redwood provided no "tool" for profiting from CSAM.  Instead, Redwood, like many others, loaned money to a company it had every reason to believe would fight to keep CSAM off its sites.  Once Redwood learned MindGeek might not be complying with its promises, Redwood (unlike Visa) exited its lending relationship with MindGeek.

## II. RELEVANT FACTS

*Redwood Was One of Many Lenders to MindGeek*: It has been publicly reported that more than *125 lenders* were involved in routine financing agreements with MindGeek between 2011 and 2021. See Dkt. 451 at Exs. A, B. Redwood's financing agreements with MindGeek also show lending commitments from ▓▓▓▓▓▓▓▓▓▓▓▓. See Dkts. 450-2 & 450-3.

*Redwood Conducted Responsible Diligence Before Lending*: Redwood conducted due diligence before lending to MindGeek. See, e.g., K.A., ¶¶ 247-271. Redwood received and relied on independent audit reports commissioned for multiple lenders, which stated that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. See Dkt. 450-1.[3] Redwood and all other lenders also sought and obtained covenants in the financing agreements ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ See Dkt. 450-2, 450-3.[4] The Complaints do not allege (nor could they) that Redwood's diligence showed MindGeek was benefiting from sex trafficking.

*Redwood Acted Swiftly Upon Notice of Potential Wrongdoing*: While Plaintiffs assert that "public reports of CSAM and other non-consensual content on MindGeek's websites" existed before the Kristof article, Plaintiffs do not actually

---

[3] It also states MindGeek has ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[4] The Financing Agreements provide ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

- 4 -
REDWOOD DEFENDANTS' SUPPLEMENTAL BRIEFING ISO MOTIONS TO DISMISS

1  identify any such "reports." *See Fleites* Compl. ¶ 271. The first specific published
2  report of CSAM on MindGeek websites cited in the Complaints – the December 2020
3  New York Times article by Nicholas Kristof – is also the first piece of information
4  to put Redwood on notice of MindGeek's potential violations of its ▮▮▮▮
5  ▮▮▮▮. *See id.* Within just a few days of the article's publication, and with
6  Redwood's support, the ▮▮▮▮ sent a ▮
7  ▮▮▮ The ▮▮▮
8  ▮▮▮ *inter alia*, ▮
9  ▮▮▮
10 ▮▮▮
11 ▮▮. *See* Dkt. 450-4. Redwood exited the loan shortly thereafter.

## III. PLAINTIFFS FAIL TO STATE A TVPRA CONSPIRACY CLAIM

To state a claim for conspiracy to violate the TVPRA, Plaintiffs must allege "(i) the formation and operation of the conspiracy, (ii) wrongful conduct in furtherance of the conspiracy, and (iii) damages arising from the wrongful conduct." *Jane Doe No. 1 v. Fitzgerald*, No. CV 20-10713-MWF (RAOx), 2022 WL 425016, at *9 (C.D. Cal. Jan. 6, 2022). To establish "formation or operation of the conspiracy," Plaintiffs must also prove "(i) knowledge of wrongful activity, (ii) agreement to join in the wrongful activity, and (iii) intent to aid in the wrongful activity." *See Craigslist,* 942 F. Supp. 2d at 981. The Complaints fail to do so.

### A. Plaintiffs Fail to Allege Redwood's Knowledge.

The Complaints fail to allege Redwood had *knowledge* of MindGeek's alleged TVPRA violations. There are no allegations that Redwood knew that MindGeek altered videos or tags or ignored requests to remove videos. This requires dismissal. *See Stein v. World-Wide Plumbing Supply Inc.*, 71 F. Supp. 3d 320, 330 (E.D.N.Y. 2014) (dismissing TVPRA conspiracy claim against beneficiary defendants for insufficiently pleading "knowledge of any alleged schemes to violate [statutory]

prohibitions" as "[w]ithout knowledge, it cannot be said that plaintiff has adequately stated a conspiracy claim . . ."); *People v. Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102, 137 (2003) ("participants . . . must know that their conduct is wrongful").[5]

### B. Plaintiffs Fail to Allege Redwood's Agreement.

An agreement to commit an unlawful act is also essential to a conspiracy to violate the TVPRA. *Stein*, 71 F.Supp.3d at 330; *see also Hann v. Canyon Mobile Home Park*, No. EDCV 16-02338JGB (SPx), 2017 WL 10519668, at *4 (C.D. Cal. Nov. 9, 2017) ("Key to any civil conspiracy claim is an allegation, supported by facts, that multiple parties acted in concert to accomplish an unlawful objective."). Plaintiffs must show that the purportedly conspiring parties "reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1020 (9th Cir. 1985). Plaintiffs have not met their pleading burden.

The Complaints do not plead any facts supporting a plausible inference that Redwood agreed with MindGeek to benefit from sex trafficking. They conclusorily allege that Redwood's partial provision of financing had "exorbitant effective interest rates"[6] *because of* MindGeek's illicit business, and that lender financing helped MindGeek's "growth" and "operations." *See, e.g.*, K.A. ¶¶ 252, 267-68, 347. Contrary to Plaintiffs' assertions, moreover, these allegations are not sufficient to "infer" an agreement to "assist MindGeek in monetizing child pornography." *See, e.g.*, *Fleites* Opp. at 42-43. At best, they are merely "consistent with" an agreement, which is insufficient under *Twombly*, 550 U.S. at 557.

---

[5] The basic elements of TVPRA and civil conspiracy are similar, and the Supreme Court has directed courts to look to the common law where the "critical terms" of secondary liability are not defined in a federal statute, like the TVPRA. *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 484-85 (2023). California conspiracy law is instructive.

[6] Plaintiffs allege that these "exorbitant rates" were "as high as 20%." That is false. *See* Dkt. 450-3, ▮▮▮▮▮▮▮▮▮▮ Nor do Plaintiffs plausibly allege that MindGeek could not pay back such rate without routinely hosting and refusing to take down CSAM.

- 6 -
REDWOOD DEFENDANTS' SUPPLEMENTAL BRIEFING ISO MOTIONS TO DISMISS

Crucially, an agreement to provide financing is **not** equivalent to an agreement to participate in or benefit from sex trafficking. *Deutsche Bank* is instructive. There, the plaintiffs alleged that JP Morgan and Deutsche Bank provided banking services to Jeffrey Epstein's sex trafficking venture; structured cash withdrawals to avoid alerting authorities; and willfully failed to file suspicious activity reports. 671 F. Supp. 3d at 412. These allegations are more detailed than Plaintiffs', yet the court deemed them insufficient. Specifically, the *Deutsche Bank* court ruled that:

> If the allegations in the complaints are taken as true, the defendants did indeed agree to provide banking services for Epstein and his affiliated entities [] that they knew, or recklessly disregarded, would assist his sex-trafficking venture. *But that agreement is different from an actual agreement to participate in a sex-trafficking venture*.

*Id*. (emphasis added). So too here. Plaintiffs plead only that Redwood – and 100+ other lenders – agreed to provide partial *financing* to MindGeek, where diligence showed it had " ▇▇▇▇▇▇ " anti-CSAM compliance. Such a financing agreement is far from an "actual agreement to participate in a sex trafficking venture." *Id.*

Plaintiffs argue that the Complaints "do not allege that Redwood and Colbeck conspired to *commit* sex trafficking; [they] allege[] an agreement to knowingly *benefit* financially from sex trafficking." *See Fleites* Opp. at 43 (emphasis added). That is a distinction without a difference. Even if Redwood "agree[d] to provide [financing]" to MindGeek, that is "different from an actual agreement to [benefit from] a sex-trafficking venture." *Deutsche Bank*, 671 F. Supp. 3d at 412.[7] Furthermore, Redwood's loan agreements ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ –

---

[7] Similarly, in *U.S. v. Dynamic Med. Sys., LLC*, No. 1:17-cv-01757 WBS SAB, 2023 WL 6927077, at *5 (E.D. Cal. Oct. 17, 2023), "[a]llegations about the contracts between Dynamic and the SNFs form[ed] the core of relator's" conspiracy claim, but "nothing about these contracts plausibly demonstrate[d] any 'meeting of the minds in an unlawful arrangement.'" *Id.*; *see also Impac Warehouse Lending Grp. v. Credit Suisse First Boston LLC*, 270 F. App'x 570, 572 (9th Cir. 2008) (dismissal affirmed where complaint *"provide[d] no facts supporting the existence of an agreement"*).

a fact inconsistent with the requisite agreement to form a conspiracy.

## C. The Complaints Do Not Plausibly Allege Redwood's Intent.

Finally, the Complaints fail to allege that Redwood *intended* to benefit from MindGeek's alleged monetization of CSAM in violation of the TVPRA. *See, e.g., Thinking Liberally Media, Inc. v. Orange Juice Blog*, No. SACV 10-00139 DOC (RNBx), 2010 WL 11596144, at *5 (C.D. Cal. Nov. 19, 2010) (holding that "[k]nowledge of the planned tort must be combined with intent to aid in its commission" to state a claim); *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (conspiracy to violate RICO requires a showing that defendant was "aware of the essential nature and scope of the enterprise and intended to participate in it").

Here, Plaintiffs plead only a commercial, lender-borrower relationship between Redwood and MindGeek. *See, e.g.*, *Fleites* Compl. ¶ 491. A commercial financing relationship with an alleged wrongdoer, by itself, does not suffice to plead an "intent to aid another party in a conspiratorial objective," no matter how "illicit" the wrongdoer's alleged conduct. *See Craigslist Inc.*, 942 F. Supp. 2d at 981–82. Nor does Plaintiffs' speculation that Redwood had a financial incentive to participate in loan agreements change anything – an intent to collect lawfully-derived loan repayment is not the same as an intent to benefit from sex-trafficking. *See Benson v. JPMorgan Chase Bank, N.A.*, Nos. C–09–5272, C–09–5560 EMC, 2010 WL 1526394, *6 (N.D. Cal. Apr. 15, 2010) (bank's incentive to profit from deposits made by Ponzi scheme promoters did not establish intent to aid the promoters); *Verigy US, Inc. v. Mayder*, No. C-07-04330 RMW, 2008 WL 4820755, at *7–8 (N.D. Cal. Nov. 4, 2008) (signing an operating agreement and investing in a company "do not show an intent . . . to join an unlawful enterprise," nor does "soliciting investors, helping to obtain a seller's permit, and donating web design services to STS . . . show the existence of an intent to engage or engagement in a civil conspiracy.").

The financing agreements and Redwood's actions in the wake of the Kristof

article further rebut Plaintiffs' theory on intent. *See Cellette v. Pomerantz*, No. 2:20-cv-4013SBMAR, 2023 WL 2616108, at *3 (C.D. Cal. Jan. 27, 2023) (dismissing conspiracy claim where allegations "appear[ed] to cut against . . . an inference that [defendants] were involved in any conspiracy"), *R. & R. adopted*, 2023 WL 2614520 (C.D. Cal. Mar. 22, 2023). Ultimately, Plaintiffs have neither alleged Redwood's agreement or intent to benefit from monetization of CSAM, and dismissal is proper.

### D. Judge Carney's Opinion Does Not Support Liability for Redwood.

Judge Carney's holding that Plaintiff adequately pled a TPVRA conspiracy claim as to Visa supports Redwood's motion to dismiss.[8] It relied on Plaintiffs' (1) specific allegations supporting Visa's knowledge of CSAM on MindGeek sites, including Visa's direct competitor's decision to terminate its relationship with MindGeek and letters from anti-sex trafficking advocates "detailing MindGeek's child trafficking venture"; and (2) claims that Visa's conduct was "intertwined with MindGeek's criminal act" *i.e.*, that Visa "knowingly provided the tool" – a payment processing service – to monetize CSAM. *See Fleites*, 617 F. Supp. 3d at 1162.

The allegations against Redwood are nothing like the allegations against Visa. Unlike Visa, Redwood (prior to the Kristof article) is not alleged to have received notice of CSAM on MindGeek sites (*e.g.*, through a competitor terminating its relationship with MindGeek or through letters from "anti-sex trafficking advocates"). Nor is Redwood alleged to have provided a "tool" through which MindGeek monetized CSAM. Again, Redwood (with many other lenders) partially financed loans to MindGeek and collected repayment in fixed amounts at regular intervals. Redwood's return for loans, conditioned on MindGeek not violating the law, did not fluctuate based on MindGeek's performance, so Redwood stood to gain *nothing* from

---

[8] There are strong arguments that Judge Carney's decision was wrong even as to Visa given the Supreme Court's intervening decision in *Twitter*. If the claims against Visa are dismissed, then the claims against Redwood must be, too. For purposes of this brief, Redwood assumes Judge Carney's decision was correct.

MindGeek's alleged proliferation of CSAM. This differs drastically from the allegations that Visa processed and profited from the *very transactions* "from which the defendants profited from the [sex trafficking] venture." *Id.* at 1163.

Redwood is far more similarly situated to a company that, according to Judge Carney's opinion, would avoid conspiracy liability, like "FedEx, who delivers packages to [MindGeek]" or "Google for allowing Pornhub to appear in its search results." *Id*. at 1168. Even if such companies *knew* that MindGeek hosted some CSAM, they cannot be liable for a TVRPA conspiracy, because they do not "***provide[] a tool through which the crime is completed***"—and thus cannot have *agreed* or *intended* that MindGeek commit wrongful acts. *Id.* (emphasis added). So too here. While Redwood's financing undoubtedly played some role in MindGeek's operations – like FedEx delivering packages or Google linking to MindGeek sites in search results – that is not alleged to have *enabled* the commission of a crime (like processing advertising payments flowing from illicit conduct). Hence, it cannot be the basis to infer that Redwood *agreed* or *intended* that MindGeek violate the law.

### E. Plaintiffs' Conspiracy Claim Has Far-Reaching Consequences.

Finding that Redwood could plausibly be a conspirator with MindGeek from the facts alleged in the Complaints would have far-reaching implications. Plaintiffs' position is, in effect, that allegations that a company knew that MindGeek hosted CSAM and benefited commercially from a relationship with MindGeek are enough for a TVPRA conspiracy claim. That would implicate many other parties who conducted diligence on MindGeek, including MindGeek's other 124 lenders and also its banks, landlord, payroll providers, server hosts, auditors, lawyers, or consultants.

### IV. CONCLUSION

Redwood respectfully requests that this action be dismissed with prejudice.

| | | |
|---|---|---|
| 1 | DATED: March 21, 2025 | **PAUL HASTINGS LLP** |
| 2 | | By: */s/ James M. Pearl* |
| 3 | | JAMES M. PEARL |
| 4 | | |
| 5 | | *Attorneys for Defendants Redwood Capital Management, LLC, Redwood Master Fund, Ltd, Redwood Opportunity Master Fund, Ltd, Manuel 2018, LLC, Ginogerum, LLC, and White-Hathaway Opportunity Fund, LLC* |

- 11 -
REDWOOD DEFENDANTS' SUPPLEMENTAL BRIEFING ISO MOTIONS TO DISMISS

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Redwood Capital Management, LLC, Redwood Master Fund, Ltd, Redwood Opportunity Master Fund, Ltd, Manuel 2018, LLC, Ginogerum, LLC, and White-Hathaway Opportunity Fund, LLC, certifies that this brief contains 10 pages and 3,325 words, which complies with the 10-page limit set by the Court during the March 7, 2025 hearing.

DATED: March 21, 2025               **PAUL HASTINGS LLP**

                                    By */s/James M. Pearl*
                                       JAMES M. PEARL