David G. Hille (*pro hac vice*)
dhille@whitecase.com
Kevin C. Adam (*pro hac vice*)
kevin.adam@whitecase.com
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY  10020-1095
Telephone:   (212) 819-8357
Facsimile:    (212) 354-8113

Russell J. Gould (SBN 313352)
russell.gould@whitecase.com
Julia Kim (SBN 348516)
julia.kim@whitecase.com
WHITE & CASE LLP
555 S. Flower Street, Suite 2700
Los Angeles, CA  90071-2433
Telephone:   (213) 620-7700
Facsimile:    (213) 452-2329

Attorneys for CB Defendants

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| SERENA FLEITES,<br><br>           Plaintiff,<br><br>     v.<br><br>MINDGEEK S.A.R.L., et al.,<br><br>           Defendants. | Case No. 2:21-cv-4920-WLH-ADS<br><br>Hon. Wesley L. Hsu<br><br>**DEFENDANTS COLBECK CAPITAL MANAGEMENT, LLC; CB MEDIA VENTURES DD, LLC; CB AGENCY SERVICES, LLC; AND CB PARTICIPATIONS SPV, LLC'S OMNIBUS SUPPLEMENTAL BRIEF ON PLAINTIFFS' TVPRA CONSPIRACY CLAIMS** |

**TABLE OF CONTENTS**

**Page(s)**

I. PRELIMINARY STATEMENT ................................................................... 1

II. PLAINTIFFS PLEAD NO TVPRA CONSPIRACY INVOLVING
THE CB DEFENDANTS ............................................................................ 3

   A. Plaintiffs Allege No Agreement by a CB Defendant to
      Accomplish an Illegal Objective—Benefit from Sex Trafficking ......... 3

   B. Plaintiffs Allege No Overt Act to Further a TVPRA Conspiracy
      Involving the CB Defendants ................................................................ 8

   C. Plaintiffs Fail to Allege That the CB Defendants Intended to
      Benefit from Sex Trafficking ................................................................. 8

III. CONCLUSION ........................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*A. B. v. Salesforce.com, Inc.*,
  No. 4:20-cv-01254, 2021 WL 3616097
  (S.D. Tex. Mar. 22, 2021) .................................................................................. 9

*Ajzenman v. Off. of Comm'r of Baseball*,
  487 F. Supp. 3d 861 (C.D. Cal. 2020) ............................................................ 3, 9

*Benson v. JPMorgan Chase Bank, N.A.*,
  No. 3:09-cv-5272-EMC, 2010 WL 1526394
  (N.D. Cal. Apr. 15, 2010) .................................................................................. 7

*Compound Prop. Mgmt., LLC v. Build Realty, Inc.*,
  462 F. Supp. 3d 839 (S.D. Ohio 2020) .............................................................. 7

*Craigslist Inc. v. 3Taps Inc.*,
  942 F. Supp. 2d 962 (N.D. Cal. 2013) ............................................................. 10

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
  671 F. Supp. 3d 387 (S.D.N.Y. 2023) ............................................................... 7

*Douglas v. Hirson*,
  63 F.4th 49 (1st Cir. 2023) ................................................................................ 7

*Fleites v. MindGeek S.A.R.L.*,
  617 F. Supp. 3d 1146 (C.D. Cal. 2022) ......................................................... 5, 6

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ........................................................................... 6

*Lin v. JPMorgan Chase Bank, N.A.*,
  No. 2:24-cv-01837-JLS-E, 2024 WL 5182199
  (C.D. Cal. Aug. 15, 2024) ................................................................................. 5

*Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*,
  198 F.3d 823 (11th Cir. 1999),
  *amended in part*, 211 F.3d 1224 (11th Cir. 2000) ........................................... 10

*Pinkerton v. United States*,
  328 U.S. 640 (1946) .......................................................................................... 9

<207>
<208>
<209>
<210>

*Safarian v. Shaham*,
   No. B244709, 2014 WL 5038651
   (Cal. Ct. App. Oct. 9, 2014) ............................................................................. 5

*Thinking Liberally Media, Inc. v. Orange Juice Blog*,
   No. 8:10-cv-00139-DOC, 2010 WL 11596144
   (C.D. Cal. Nov. 19, 2010) ................................................................................ 6

*Twitter, Inc. v. Taamneh*,
   598 U.S. 471 (2023) .......................................................................................... 3

*United States v. Loveland*,
   825 F.3d 555 (9th Cir. 2016) ............................................................................ 9

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) .......................................................................... 5

*Young v. City of Menifee*,
   No. 5:17-cv-01630-JGB-SP, 2019 WL 3037926
   (C.D. Cal. Apr. 5, 2019) ................................................................................... 7

**FEDERAL RULES**

Fed. R. Civ. P. 12 ..................................................................................................... 2

## I. PRELIMINARY STATEMENT

Pursuant to the Court's orders of March 18 and 19, 2025, the CB Defendants submit this supplemental brief on Plaintiffs' TVPRA conspiracy claims.[1] Each Plaintiff's claim against the CB Defendants must be dismissed irrespective of the status of *Ratha II*. Plaintiffs do not plausibly allege that the CB Defendants conspired with the MindGeek Borrowers to benefit from sex trafficking. Plaintiffs rely only on allegations that are conclusory, implausible, and contradicted by other allegations and the Loan Agreements.[2]

Plaintiffs ask this Court to *infer* that the CB Defendants agreed with MindGeek to benefit from sex trafficking. But that inference is contradicted by the plain language of the Loan Agreements, which Plaintiffs rely on, that ███████████ ██████████████████████████████████████████████████████████. The Loan Agreements have ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████. Plaintiffs' suggestion that ██████ ███████████████████████████████ cannot be credited.

Nor would such an agreement to benefit from sex trafficking make plausible sense here, given the financial relationship between the CB Defendants and the

---

[1] The CB Defendants refer to all plaintiffs in each of the fifteen actions collectively as "Plaintiffs." Defined terms have the same meaning as stated in the CB Defendants' motions to dismiss and replies in support of the motions. CB Defs.' Mot. Dismiss, *Fleites*, No. 2:21-cv-4920-WLH-ADS, ECF No. 444-1 ("*Fleites* Mot. Mem."); CB Defs.' Omnibus Mot. Dismiss, *K.A.*, No. 2:24-cv-4786-WLH-ADS, ECF No. 74-1 ("*Omnibus* Mot. Mem."); CB Defs.' Reply Supp. Mot. Dismiss, *Fleites*, ECF No. 505-1 ("*Fleites* Reply"); CB Defs.' Reply Supp. Omnibus Mot. Dismiss, *K.A.*, ECF 121-1 ("*Omnibus* Reply"). Plaintiffs' opposition briefs are ECF No. 480-1 in *Fleites* ("*Fleites* Opp'n") and ECF No. 96-1 in *K.A.* ("*Omnibus* Opp'n").

[2] This is on top of Plaintiffs' failures to plead that their alleged injuries are fairly traceable to or caused by the CB Defendants—bases to dismiss all claims, including conspiracy under the TVPRA. *See, e.g.*, *Fleites* Mot. Mem. 10:14-14:5, 33:1-35:13; *Omnibus* Mot. Mem. 11:23-15:14, 37:16-40:1.

MindGeek Borrowers.  Plaintiffs admit that MindGeek was making significant amounts of money without CSAM on its websites.  *Fleites* Opp'n 1:7-8; *Fleites* SAC ¶ 9; *K.A.* Compl. ¶ 1.  And Plaintiffs concede that the CB Defendants, as lenders—along with dozens of other institutional lenders—received **interest** on the loans to the MindGeek Borrowers, rather than an equity stake in any MindGeek entity.  *Fleites* Opp'n 2:21-24; *Omnibus* Opp'n 2:7-10, 23:5-8, 45:8-10.  Yet Plaintiffs' TVPRA conspiracy claims hinge on the Court concluding that the CB Defendants conspired with MindGeek to benefit from CSAM on MindGeek's websites—jeopardizing the repayment of the CB Defendants' loans for no additional financial benefit and in direct contradiction of the terms of the Loan Agreements.  This is illogical and implausible.

When it comes to knowledge of MindGeek's alleged intent to monetize CSAM, Plaintiffs lump all Defendants together.  But the CB Defendants' loans to the MindGeek Borrowers ended in 2018—well before alleged CSAM on Pornhub and similar websites gained significant attention in the press.  *Fleites* SAC ¶ 110, 111; *K.A.* Compl. ¶ 113, 114; *see also* Mar. 7, 2025 Mot. Dismiss Hr'g Tr. 100:12-101:6 (noting post-2020 events were the focus of Plaintiffs' knowledge arguments).  Indeed, Plaintiffs allege that MindGeek had not reported instances of CSAM to authorities "until late 2020, when its business practices were revealed in the New York Times." *Fleites* SAC ¶ 99.  Plaintiffs cannot plausibly allege that the CB Defendants entered into the Loan Agreements in **2011 and 2013** with any such knowledge.

Plaintiffs cite no case in which a court has held that a lender must face a claim for conspiring with its borrower to benefit from sex trafficking.  Nor do Plaintiffs cite authority to contradict the well-settled rule that lenders are not vicariously liable for the actions of their borrowers, much less actions expressly prohibited by the lenders.  Allowing Plaintiffs to proceed past the Rule 12 stage with their implausible, conclusory, and contradictory conspiracy theory invites an onslaught of baseless lawsuits against not only lenders for the acts of borrowers, but also against anyone that generates any revenue from any relationship with a company like MindGeek.  The

Court should dismiss all claims against the CB Defendants, including Plaintiffs' TVPRA conspiracy claims.

## II. PLAINTIFFS PLEAD NO TVPRA CONSPIRACY INVOLVING THE CB DEFENDANTS

Plaintiffs allege that all Defendants conspired with the MindGeek Entity Defendants to benefit from a sex-trafficking venture that trafficked Plaintiffs. *See Fleites* SAC ¶¶ 499-507 (citing 18 U.S.C. §§ 1594(c) (conspiracy to violate) and 1595(a) (civil remedy; conspiracy to benefit)); *K.A.* Compl. ¶¶ 355-363.[3] Plaintiffs state that the elements of a TVPRA conspiracy claim are the same as those of a civil conspiracy claim: "(1) an agreement to accomplish an illegal objective, (2) the commission of an overt act in furtherance of the conspiracy, and (3) the requisite intent necessary to commit the underlying offense." *Fleites* Opp'n 37:4-8; *Omnibus* Opp'n 50:24-51:3.[4] The CB Defendants address the elements as presented by Plaintiffs because the Complaints fail to allege plausible facts to support any of those elements.

### A. Plaintiffs Allege No Agreement by a CB Defendant to Accomplish an Illegal Objective—Benefit from Sex Trafficking

Plaintiffs acknowledge that they must plead a "meeting of the minds" such that the CB Defendants made an "agreement to accomplish an illegal objective." *Omnibus* Opp'n 27:1-2, 50:25-51:1, 52:9-10. This entails allegations of "(i) knowledge of wrongful activity" and "(ii) agreement to join in the wrongful activity." *Ajzenman v. Off. of Comm'r of Baseball,* 487 F. Supp. 3d 861, 867 (C.D. Cal. 2020) (citing *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 981 (N.D. Cal. 2013)). Plaintiffs plead neither as to the CB Defendants.

***No adequately pled knowledge.*** Plaintiffs have not plausibly alleged that the

---

[3] The Ninth Circuit correctly decided *Ratha II*. The CB Defendants, however, focus on the elements of Plaintiffs' TVPRA conspiracy claims because Plaintiffs fail to adequately plead those elements, regardless of *Ratha II*.

[4] The United States Supreme Court held that courts should look to the common law where the "critical terms" of secondary liability are not defined in a federal statute, as in the TVPRA. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 484-85 (2023).

1  CB Defendants knew that the MindGeek Borrowers were intentionally benefitting
2  from CSAM. Plaintiffs allege vaguely that the "Colbeck Syndicate" received
3  information before and during the terms of the loans that suggested MindGeek
4  operated an unrestricted content model that "embraced" CSAM. *Fleites* SAC ¶¶ 246,
5  261, 263, 265, 270-74. Plaintiffs also allege, without any basis, that the CB
6  Defendants *wanted* MindGeek's websites to have more CSAM so that MindGeek
7  could pay back the loans. *Id.* ¶¶ 246, 264, 267-68. But these allegations—besides
8  being unsupported and conclusory—conflict with the explicit provisions in the Loan
9  Agreements and Plaintiffs' other allegations.

10  Under the terms of the Loan Agreements, [REDACTED]
11  [REDACTED]
12  [REDACTED]
13  [REDACTED]. *See* Loan Agreements §§ 6.01(h), 6.01(mm), 6.01(nn), 6.01(ss) (ECF
14  Nos. 444-3, 444-4). [REDACTED]
15  [REDACTED]
16  [REDACTED]
17  [REDACTED]
18  [REDACTED]. *See id.* §§ 7.01(a), 7.01(c), 7.01(v), 7.01(z).

19  In addition, all loans involving any CB Defendant had concluded by 2018.
20  *Fleites* SAC ¶¶ 245, 275, 276. But Plaintiffs contend that the issue of CSAM on
21  MindGeek's websites emerged significantly after the CB Defendants' exit in 2018.
22  These issues "exploded in 2019-2023." *Id.* ¶ 110. There was a "tsunami of criticism
23  that MindGeek received in 2019-2020." *Id.* ¶ 111. This included a "viral internet
24  campaign in 2019-20" and a "late 2020 bombshell New York Times expose." *Id.* ¶
25  206. In 2019, PayPal terminated its relationship with MindGeek because of the
26  presence of illegal content. *Id.* ¶ 193. Judge Carney's reasoning in response to Visa's
27  motion to dismiss—"following highly publicized events in 2019 and 2020," Visa
28  knew that MindGeek was "regularly committing violations of section 1591(a)(2)" and

yet "continued to grant MindGeek the means to financially benefit from its participation in sex trafficking ventures: the Visa payment network" (*Fleites v. MindGeek S.A.R.L.*, 617 F. Supp. 3d 1146, 1163 (C.D. Cal. 2022))—does not apply to the CB Defendants. Rather than supporting Plaintiffs' conclusory allegation that the CB Defendants knew that MindGeek wanted and intended to perpetuate CSAM for profit, the Loan Agreements and Plaintiffs' own allegations confirm that the Court should ***not*** "accept as true [these] allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1144 n.4 (9th Cir. 2012).

***No agreement.*** Even if Plaintiffs had adequately alleged knowledge, such knowledge still does not establish that the CB Defendants ***agreed*** to perpetuate CSAM to profit from it. Plaintiffs concede that the Complaints do not plead an agreement involving a CB Defendant to accomplish an illegal (or wrongful) objective. Plaintiffs instead ask the Court to ***infer*** that the CB Defendants agreed to assist MindGeek in monetizing CSAM. *Fleites* Opp'n 43:9-10; *Omnibus* Opp'n 27:4-11, 51:25-52:5, 53:3-7.[5] Plaintiffs, however, fail to plead plausible allegations to support that inference.

Plaintiffs merely conclude that MindGeek was engaged in a sex-trafficking venture that distributed CSAM and that the CB Defendants, and the Redwood Defendants and Visa, knew and agreed to provide means that the venture needed to

---

[5] Plaintiffs base their statement that "a conspiracy may ***sometimes*** be inferred" on an unpublished California court of appeal opinion. *Omnibus* Opp'n 51:22-24 (emphasis added) (quoting *Safarian v. Shaham*, No. B244709, 2014 WL 5038651, at *3 (Cal. Ct. App. Oct. 9, 2014)). Courts do not rely on such decisions. *See Lin v. JPMorgan Chase Bank, N.A.*, No. 2:24-cv-01837-JLS-E, 2024 WL 5182199, at *3 n.1 (C.D. Cal. Aug. 15, 2024) (noting that unpublished opinions of California courts of appeal "must not be cited or relied on by a court or a party in any other action" (quoting Cal. R. Ct. 8.1115)). That case, in any event, does not provide any basis to support inferring an agreement by the CB Defendants here. *See Safarian*, 2014 WL 5038651, at *3 (finding plaintiffs had sufficiently alleged individual defendant's knowledge of and voluntary acceptance of benefits of fraudulent activities because, among other reasons, defendant was sole owner and operator of offending entity).

grow. *Omnibus* Opp'n 51:8-18. But Plaintiffs cite only conclusory and implausible allegations that do not support any inference of an agreement. *See Omnibus* Opp'n 52:1-5 (citing only "years-long relationship[] with MindGeek"; alleged general knowledge of "MindGeek's criminal conduct"; and a motivation to profit); *see also id.* at 52:21-27; *Fleites* Opp'n 42:12-13, 43:2-3 (concluding, without identifying plausible allegations, that the CB Defendants knew that MindGeek's business "included criminal activities" and was engaged in "illegality"). Plaintiffs do not allege that the CB Defendants provided "the means through which MindGeek completed its criminal act." *Fleites*, 617 F. Supp. 3d at 1164. The Court thus cannot "infer" that the CB Defendants "intended to help MindGeek monetize child porn," as Judge Carney did for Visa. *Id.*

The only nonconclusory allegation to infer an agreement is that the CB Defendants participated in loans in 2011 and 2013. *See* Opp'n 17:11-18:25, 51:25-52:5. Rather than support an inference of an agreement to profit from or perpetuate CSAM in any way, however, the plain language of the Loan Agreements shows that the agreement was the ***opposite***: the MindGeek Borrowers ███████████████████████████████████████████████████████████████. Loan Agreements §§ 6.01(h), 6.01(mm), 6.01(nn), 6.01(ss), 7.01(a), 7.01(c), 7.01(v), 7.01(z). Plaintiffs' speculation that █████████████████ does not support an inference of an agreement to benefit from CSAM. "Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy" are not enough to find a conspiracy. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008); *Thinking Liberally Media, Inc. v. Orange Juice Blog*, No. 8:10-cv-00139-DOC, 2010 WL 11596144, at *5 (C.D. Cal. Nov. 19, 2010) ("actual knowledge of the planned tort, without more, is insufficient to serve as the basis for a conspiracy").[6]

---

[6] In their Oppositions, Plaintiffs relied on cases that do not support finding an

A conspiracy claim requires more than alleging that a lender financially benefitted from the alleged tortfeasor's wrongful conduct. *See Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 412 (S.D.N.Y. 2023) (cited favorably by Plaintiffs) (legitimate business transaction to provide banking services, even coupled with both knowledge that services may assist the borrower's sex-trafficking venture and conduct that covered up the sex trafficking, is not enough to satisfy the requirement of an ***agreement*** for a TVPRA conspiracy); *Douglas v. Hirson*, 63 F.4th 49, 56-57 (1st Cir. 2023) (dismissing conspiracy claim against lenders because the allegations did not show that the lenders had conspired to commit a wrongful act); *Benson v. JPMorgan Chase Bank, N.A.*, No. 3:09-cv-5272-EMC, 2010 WL 1526394, at *6 (N.D. Cal. Apr. 15, 2010) (holding that a bank's financial incentive to accept deposits from Ponzi-scheme promoters did not establish intent to enter a conspiracy agreement)). Extending credit to a party that allegedly engaged in unlawful conduct does not create a conspiracy between the lender and the borrower in respect of such conduct. *See, e.g.*, *Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 864-65 (S.D. Ohio 2020) (dismissing claims against lenders; finding "allegations that a lending company engaged in due diligence with regard to its lending activities cannot, and should not, be enough to plausibly establish [joinder in a conspiracy] even at the pleading stage"); *Young v. City of Menifee*, No. 5:17-cv-01630-JGB-SP, 2019 WL 3037926, at *11 (C.D. Cal. Apr. 5, 2019) (dismissing conspiracy claim because of insufficient allegations to infer agreement and "[m]ere

---

inference here. *See Fleites* Opp'n 37:8-13, 42:17-43:2; *Omnibus* Opp'n 27:7-11, 42:17-43:2 (citing *United States v. Matta-Ballesteros*, 71 F.3d 754, 765 (9th Cir. 1995) (defendant was member of cartel that abducted, tortured, and murdered victim; defendant participated in meetings with other cartel members where kidnapping was planned; and witness testimony tied defendant specifically to the crime); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1020 (9th Cir. 1985) ("defendant 'entered into a joint enterprise with consciousness of its general nature and extent,'" as shown by specific allegations such as instructions by conspirator to another conspirator related to conspiracy); *United States v. Calaway*, 524 F.2d 609, 614 (9th Cir. 1975) (specific, quoted statements supported existence of gambling-operation conspiracy)).

association does not make a conspiracy"). The CB Defendants participating in loans of money to certain MindGeek entities is not enough to allege an agreement to benefit from sex trafficking under the TVPRA.

### B. Plaintiffs Allege No Overt Act to Further a TVPRA Conspiracy Involving the CB Defendants

Plaintiffs acknowledge that they must allege an overt act in furtherance of the conspiracy. *Fleites* Opp'n 37:4-8; *Omnibus* Opp'n 50:24-51:3. But the only overt acts Plaintiffs identified in the Oppositions relating to the CB Defendants concern their participation in loans in 2011 and 2013 to the MindGeek Borrowers, ███████████████████████████████████████████ *Fleites* Opp'n 44:4-11; *Omnibus* Opp'n 17:11-18:25. These conclusory allegations do not amount to a plausible overt act, by any Defendant or anyone else, in furtherance of a conspiracy involving a CB Defendant to benefit from sex trafficking. Even if the CB Defendants did ██████████████████████████████████████████████████. *Fleites* Opp'n 44:5-6. Plaintiffs, in fact, concede that the CB Defendants ████████████████████████████████████. *See id.* 22:21-22. As to ████████████, there is nothing unusual about a lender █████████████████████████████████. Notably, Plaintiffs do not allege that the CB Defendants ███████████████████—in furtherance of a conspiracy to benefit from sex trafficking or for any reason.

### C. Plaintiffs Fail to Allege That the CB Defendants Intended to Benefit from Sex Trafficking

Plaintiffs, lacking allegations to plead "the requisite intent necessary to commit the underlying offense," ask the Court to stack another inference on top of the inference of an agreement: that the CB Defendants intended to financially benefit

from sex trafficking. *Fleites* Opp'n 44:22-45:1; *Omnibus* Opp'n 27:11-13, 53:3-7.[7] The only support that Plaintiffs provide the Court to make this inference is the conclusory allegation that the CB Defendants knew of MindGeek's "illegal activities." *Fleites* Opp'n 45:2-7. This is insufficient to allege that the CB Defendants intended to "***aid*** in the wrongful activity." *Ajzenman*, 487 F. Supp. 3d at 867 (emphasis added).

Plaintiffs admit that "an act in furtherance of the conspiracy" **by the CB Defendants** is required to create an inference of intent. *Omnibus* Opp'n 27:11-13. As explained above, Plaintiffs identify no such overt act by a CB Defendant. Without an overt act by a CB Defendant, intent to aid unlawful conduct cannot be inferred.

In any event, Plaintiffs also do not allege plausible facts to support, or infer, that the CB Defendants intended to aid an alleged conspiracy to benefit from sex trafficking. Plaintiffs merely argued that the CB Defendants "inten[ded] to profit" generally from interest on loans and that "the court may infer intent from the Defendants' knowledge of the sex-trafficking and their actions taken in furtherance of the conspiracy." *Omnibus* Opp'n 52:21-27, 53:3-7. That is not enough. *See, e.g.*, *A. B. v. Salesforce.com, Inc.*, No. 4:20-cv-01254, 2021 WL 3616097, at *6 (S.D. Tex. Mar. 22, 2021) (holding that executing an agreement with Backpage did not establish that Salesforce "had sex trafficking as an 'object to be accomplished'"); *United States v. Loveland*, 825 F.3d 555, 559-60 & n.18 (9th Cir. 2016) ("simple knowledge, approval of, or acquiescence in the object or purpose of a conspiracy, without an intention and agreement to accomplish a specific illegal objective, is not sufficient" (quoting *United States v. Lennick*, 18 F.3d 814, 818 (9th Cir. 1994))).

---

[7] Plaintiffs cite *Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946). *Fleites* Opp'n 44:22-45:1. But the Court in *Pinkerton* analyzed the effect of a criminal conspiracy once already formed. 328 U.S. at 642, 646-47. *Pinkerton* provides no basis to infer that a CB Defendant intended to aid MindGeek in a conspiracy to benefit from sex trafficking—a necessary prerequisite to finding a conspiracy to begin with.

Plaintiffs also try to support an inference of intent with vague allegations related to isolated news stories that did not see nationwide coverage, unrelated criminal investigations of money laundering, due diligence mentioning "risks," general reporting requirements, and assumed interaction during the loan period. *Fleites* Opp'n 23:3-7, 28:3-29:2, 29:16-21; *Omnibus* Opp'n 21:9-15, 22:25-28, 23:22-24. These allegations are conclusory, implausible, and contradicted, and Plaintiffs have not plausibly alleged that the CB Defendants knew of sex trafficking or committed an overt act in furtherance of any conspiracy to monetize CSAM. *See supra* §§ II.A, B. Knowledge generally of "illegal activities" also does not equate to intent to financially benefit from sex trafficking. *See, e.g.*, *Craigslist*, 942 F. Supp. 2d at 982 (finding defendant's knowledge of other company's wrongful conduct insufficient to plead intent to aid in the commission of that conduct). Again, the CB Defendants exited the loans to the MindGeek Borrowers in 2018, well before the significant alleged events to which Plaintiffs cite.[8]

## III.  CONCLUSION

The Court should grant the Motions and dismiss the TVPRA conspiracy claims, along with all other claims, against the CB Defendants with prejudice.

Dated:  March 21, 2025                         WHITE & CASE LLP

By: *David G. Hille*
    David G. Hille

Attorneys for CB Defendants

---

[8] Even if there were a conspiracy, which there was not, the CB Defendants withdrew from it by 2018 when they ceased loans to the MindGeek Borrowers. A conspirator "withdraws" from a conspiracy when it has "retired from the business, severed all ties to the business, and deprived the remaining conspirator group of the services which [it] provided to the conspiracy." *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999), *amended in part*, 211 F.3d 1224 (11th Cir. 2000).

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the CB Defendants, certifies that the CB Defendants' Supplemental Brief on Plaintiffs' TVPRA Conspiracy Claims consists of ten pages, which complies with the ten-page limit set forth in the Court's Amended Minute Orders of March 18 and 19, 2025.

Dated: March 21, 2025

WHITE & CASE LLP

By: /s/ David G. Hille
  David G. Hille

Attorneys for CB Defendants