DREW TULUMELLO (#196484)
drew.tulumello@weil.com
MARK A. PERRY (#212532)
mark.perry@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: 202 682 7000
Fax: 202 857 0940

*Attorneys for Visa Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| SERENA FLEITES, | Case No. 2:21-CV-04920-WLH-ADS |
| Plaintiff, | Judicial Officer: Wesley L. Hsu<br>Courtroom: 9B |
| v. | |
| MINDGEEK S.A.R.L.; MG FREESITES, LTD; MINDGEEK USA INCORPORATED; MG PREMIUM LTD.; MG GLOBAL ENTERTAINMENT INC.; 9219-1568 Quebec, Inc. (d/b/a MindGeek); BERND BERGMAIR; FERAS ANTOON; DAVID TASSILLO; COREY URMAN; VISA INC.; COLBECK CAPITAL DOES 1-5; BERGMAIR DOES 1-5, | **SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT VISA INC.'S MOTIONS TO DISMISS**<br><br>Date: April 24, 2025<br>Time: 9:00 a.m. |
| Defendants. | |

**TABLE OF CONTENTS**

**Page**

I. The 2023 Amendment Does Not Apply to Pre-Enactment Conduct ..............1

II. The SAC Does Not State a Claim for Civil Conspiracy Against Visa ..........2

    A. There Are No Adequate Allegations of the Requisite Knowledge To Plead A Valid Conspiracy Claim .......................................................3

    B. There Are No Adequate Allegations of Agreement and Intent to Advance the Wrongful Conduct .......................................................5

CONCLUSION................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.B. v. Hilton Worldwide Holdings Inc.*,
 484 F. Supp. 3d 921 (D. Or. 2020) ................................................................. 3

*Ajzenman v. Off. of Comm'r of Baseball*,
 487 F. Supp. 3d 861 (C.D. Cal. 2020) ......................................................... 3, 5

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ....................................................................................... 7

*Bernhardt v. Islamic Republic of Iran*,
 47 F.4th 856 (D.C. Cir. 2022) ........................................................................ 6

*Craigslist Inc. v. 3Taps Inc.*,
 942 F. Supp. 2d 962 (N.D. Cal. 2013) ........................................................... 6

*Doe #1 v. Red Roof Inns, Inc.*,
 21 F.4th 714 (11th Cir. 2021) ........................................................................ 3

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
 671 F. Supp. 3d 387 (S.D.N.Y. 2023) ............................................... 4, 5, 7, 8

*Fleites v. MindGeek S.A.R.L.*,
 617 F. Supp. 3d 1146 (C.D. Cal. 2022) ................................................. *passim*

*Halberstam v. Welch*,
 705 F.2d 472 (D.C. Cir. 1983) ................................................................... 3, 7

*Ingram v. United States*,
 360 U.S. 672 (1959) ....................................................................................... 3

*J.L. v. Best W. Int'l, Inc.*,
 521 F. Supp. 3d 1048 (D. Colo. 2021) ........................................................ 3, 5

*Landgraf v. USI Film Products*,
 511 U.S. 244 (1994) .................................................................................... 1, 2

*Pinkerton v. United States*,
 328 U.S. 640 (1946) ....................................................................................... 5

*Ratha v. Phatthana Seafood Co.*,
   111 F.4th 946 (9th Cir. 2024) .................................................................................. 1, 2

*Ratha v. Phatthana Seafood Co.*,
   35 F.4th 1159 (9th Cir. 2022) ............................................................................. 1, 4, 5

*Ratha v. Rubicon Res., LLC*,
   No. 23-55299, 2025 WL 689487 (9th Cir. Mar. 4, 2025) ............................................ 1

*Twitter, Inc. v. Taamneh*,
   598 U.S. 471 (2023) ........................................................................................... *passim*

*United States v. Collins*,
   966 F.2d 1214 (7th Cir. 1992) ..................................................................................... 7

*United States v. Lennick*,
   18 F.3d 814 (9th Cir. 1994) ......................................................................................... 6

*United States v. Melchor-Lopez*,
   627 F.2d 886 (9th Cir. 1980) ....................................................................................... 6

*United States v. Purin*,
   486 F.2d 1363 (2d Cir. 1973) ...................................................................................... 6

*United States v. Ramirez*,
   714 F.3d 1134 (9th Cir. 2013) ..................................................................................... 6

**Statutes**

18 U.S.C. § 1594(c) ............................................................................................................ 2

**Other Authorities**

U.S. Const. amend. I .......................................................................................................... 9

Defendant Visa Inc. ("Visa") submits this supplemental brief in further support of its Motions to Dismiss in *Fleites* and related cases arising under the Trafficking Victims Protection Reauthorization Act of 2005 ("TVPRA"). Visa explains below that (1) the 2023 TVPRA amendment adding conspiracy as a basis for civil liability does not apply to pre-2023 conduct and (2) Plaintiffs' conspiracy allegations against Visa are insufficient in any event.

## I. The 2023 Amendment Does Not Apply to Pre-Enactment Conduct

The TVPRA was amended in 2023 to add civil liability for conspiracy to violate the substantive provisions of the statute. In 2024, a panel of the Ninth Circuit held that the amendment does not apply to pre-2023 conduct. *See Ratha v. Phatthana Seafood Co.*, 111 F.4th 946 (9th Cir. 2024) ("*Ratha II*"). The Ninth Circuit has voted to rehear *Ratha II* en banc and has therefore vacated the panel decision. *See Ratha v. Rubicon Res., LLC*, 2025 WL 689487 (9th Cir. Mar. 4, 2025). *Ratha II*, however, reached the correct conclusion regarding the retroactive effect of the 2023 amendment.

*First*, the 2023 amendment alters substantive rights and does not contain express language providing for retroactive application. Under *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), a new statute may apply to alter the lawfulness of pre-enactment conduct only if the statute contains a clear statement of retroactive intent. *Id.* at 280. Under that framework, the 2023 amendment cannot have retroactive effect because: (1) retroactive application would alter Visa's rights as articulated in *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159 (9th Cir. 2022) ("*Ratha I*") (finding no attempt liability in the TVPRA civil provisions); (2) Congress did not expressly prescribe retroactivity, and (3) there is no evidence of congressional intent sufficient to override the presumption against retroactive application.

In *Ratha II*, the panel entertained the possibility of retroactive application under an "exception" to the *Landgraf* framework whereby legislation intended to "clarify the intent of an earlier Congress" may apply to pre-enactment conduct notwithstanding the absence of a clear statement by Congress of retroactivity. 111 F.4th at 959. This rule is

inconsistent with *Landgraf* and should not be followed by this Court. Statutory amendments purporting to "clarify" the laws passed by an earlier Congress are not one of the few exceptions identified by the Supreme Court in *Landgraf*. 511 U.S. at 273–75. A "clarification," like any other legislation, applies only prospectively unless Congress indicates otherwise.

*Second*, even if there were an exception for congressional "clarifications," it would not apply here. Judge Graber's dissent in *Ratha II* was premised almost entirely on the assertion that "[w]hen Congress enacted the [2008 amendment adding civil liability], it clearly intended to make the criminal and civil provisions *coextensive*." 111 F.4th at 969 (Graber, J., dissenting) (emphasis added); *see also id.* at 970–72 (similar). But this Court has already held that the civil and criminal provisions are *not* co-extensive and that different standards apply to civil beneficiary liability than to criminal beneficiary liability. Tentative Op. 16–18. If the civil and criminal provisions are *not* "coextensive," then Judge Graber's dissenting view that Congress all along meant to include co-extensive "attempt" and "conspiracy" liability in the civil provisions cannot be correct. Nor does that dissent account for the clear textual difference between the criminal provisions (expressly providing for "conspir[acy]" liability, *see* 18 U.S.C. § 1594(c)) and the civil provision, which did not mention conspiracy until the 2023 amendment.

## II. The SAC Does Not State a Claim for Civil Conspiracy Against Visa

Even if the 2023 amendment could apply to pre-enactment conduct, however, the TVPRA conspiracy claim against Visa should be dismissed because Plaintiffs have not alleged the essential elements of such a claim. Visa addressed these issues in its Reply Brief, Dkt. 498 at 12–20, and relies on that Reply and the additional points below.

As a preliminary matter, statutes that use common law terms like "conspiracy" should be interpreted consistent with those terms' "common law" meanings, because courts "generally presume that such common-law terms bring the old soil with them." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 484 (2023) (alteration and quotation marks omitted). Judge Carney did not have the benefit of *Twitter* and expressly cast doubt on

the utility of the common law to TVPRA conspiracy analysis. *See Fleites v. MindGeek S.A.R.L.*, 617 F. Supp. 3d 1146, 1167 (C.D. Cal. 2022). As set forth in *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)—"[l]ong regarded as a leading case on civil aiding-and-abetting and conspiracy liability," *Twitter*, 598 U.S. at 485—a conspiracy arises only where there is "an agreement to do an unlawful act or a lawful act in an unlawful manner." *Halberstam*, 705 F.2d at 487. Establishing the existence of such an agreement requires Plaintiffs to allege "(i) <u>knowledge</u> of wrongful activity, (ii) <u>agreement</u> to join in the wrongful activity, and (iii) <u>intent to aid</u> in the wrongful activity." *Ajzenman v. Off. of Comm'r of Baseball*, 487 F. Supp. 3d 861, 867 (C.D. Cal. 2020) (emphasis added).

### A. There Are No Adequate Allegations of the Requisite Knowledge to Plead a Valid Conspiracy Claim

Plaintiff does not plead sufficient knowledge by Visa to plead a conspiracy under these standards. The general rule is that "[c]onspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense itself." *Ingram v. United States*, 360 U.S. 672, 677–78 (1959). Plaintiffs did not dispute this general rule, and in fact agreed that conspiracy requires "the requisite intent necessary to commit the underlying offense." Dkt. 480-1, at 37 (citing *United States v. Matta-Ballesteros*, 71 F.3d 754, 765 (9th Cir. 1995)). Thus, in order to establish a claim for conspiracy liability, Plaintiffs must plausibly allege that Visa had at least the same level of knowledge as that required for the "underlying offense" of TVPRA beneficiary liability.

The parties dispute what level of knowledge is required for beneficiary liability: Visa has cited authority holding that a defendant must have actual or constructive knowledge of the "venture" that "violated the TVPRA *as to the plaintiff*." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021); *see also A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 938–39 (D. Or. 2020); *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021), but Plaintiffs dispute that such knowledge is

required.[1] The Court's resolution of that dispute ultimately is immaterial to Visa's liability, though, because the Ninth Circuit has held that, at the very least, the defendant must have "kn[own] or should have known of the *specifically alleged* TVPRA violations" at issue. *Ratha I*, 35 F.4th at 1177 (emphasis added). Other courts have endorsed a similar standard, including some cited by Plaintiffs. *See, e.g.*, *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 406 (S.D.N.Y. 2023) (defendant must have known of or recklessly disregarded "the particular sex-trafficking venture that it is alleged to have participated in").

Under that standard, there are no adequate allegations of knowledge here, because Visa is not alleged to have known of any "particular sex-trafficking venture." Visa is not alleged to have ever had any direct contact with or knowledge of *any* trafficker who uploaded CSAM to MindGeek. Visa's only connection—through intermediary Member Banks—is with MindGeek, which the Court has tentatively ruled is liable, if at all, only as a beneficiary and not as a direct perpetrator of trafficking. Tentative Op. 12–13, 20–23. That is far different from the defendant in *G.G. v. Salesforce.com, Inc.*, whose knowledge could be plausibly inferred from allegations that it "repeatedly consulted with [the alleged trafficker] to assess its operational needs, designed targeted solutions addressed to those needs, and provided active, tailored, and ongoing support as [the trafficker] worked to expand its business and scale its operations." 76 F.4th 544, 556 (7th Cir. 2023) (quotation marks omitted). None of that kind of direct involvement with a trafficker is alleged here as to Visa—nor is it even alleged that Visa provided this level of bespoke, tailored services to MindGeek (a beneficiary, not a trafficker).

At the hearing, the Court raised two questions regarding the standard for knowledge under a conspiracy theory of liability. First, the Court asked whether requiring the same level of knowledge for conspiracy as for direct beneficiary liability would effectively read

---

[1] Judge Carney applied in the order on Visa's first motion to dismiss with respect to beneficiary liability. *See Fleites*, 617 F. Supp. 3d at 1162.

"conspiracy" out of the statute. Hr'g Tr. 94:12–16 (Mar. 7, 2025). It would not. In addition to knowledge, conspiracy liability also requires the plaintiff to plausibly allege agreement and intent, which, once proven, expose the co-conspirator to broad liability for all torts committed in furtherance of the conspiracy. *See Pinkerton v. United States*, 328 U.S. 640, 646–47 (1946). And it is precisely because of this sweeping liability that conspiracy requires at least the same level of knowledge as the underlying offense—otherwise, a party with *less* knowledge and culpability could actually face *greater* overall liability than a direct trafficker under the *Pinkerton* rule.

Second, the Court indicated that publicly available knowledge about alleged CSAM on MindGeek sites is not sufficient to satisfy the knowledge element, but suggested that Visa perhaps could be differently situated because it received specific outreach from non-governmental organizations ("NGOs") in **April 2020** raising concerns about videos on MindGeek's sites. *See* Hr'g Tr. 100:9–101:6; *Fleites* Dkt. 385, Compl. ¶¶ 300–04. Critically, these allegations come *after* the trafficking as to Plaintiffs in these related cases. *See, e.g.*, *Fleites* Dkt. 385, Compl. ¶¶ 448–57 (2014–2015); *K.A.* Dkt. 1, Compl. ¶ 311 (2018–2019); *L.S.* Dkt. 1, Compl. ¶ 311 (2017-2018); *L.T.* Dkt. 1, Compl. ¶ 311 (2016–2018); *J.L.* Dkt. 1, Compl. ¶¶ 309, 317 (2007, 2011). Moreover, the outreach from the NGOs did not change Visa's knowledge as to the actual content on the MindGeek sites—all Visa "knew" was that these NGOs believed there was some CSAM on MindGeek's sites (in addition to lawful content). That is not knowledge of a "particular sex trafficking venture," *Deutsche Bank*, 671 F. Supp. 3d at 406, nor knowledge of any "specifically alleged TVPRA violations," *Ratha I*, 35 F.4th at 1177.

### B. There Are No Adequate Allegations of Agreement and Intent to Advance the Wrongful Conduct

Even if there were adequate allegations of knowledge, however, that would not be sufficient to establish a conspiracy. Plaintiffs also must plead Visa's *agreement* and *intent to join the wrongful activity*. *See Ajzenman*, 487 F. Supp. 3d at 867. Knowledge alone is not enough. That is because "simple knowledge, approval of, or acquiescence in the

object or purpose of a conspiracy, without an intention and agreement to accomplish a specific illegal objective, is not sufficient" to establish an unlawful agreement. *United States v. Lennick*, 18 F.3d 814, 818 (9th Cir. 1994); *see also United States v. Melchor-Lopez*, 627 F.2d 886, 891 (9th Cir. 1980). Indeed, even "willing participation in acts with alleged co-conspirators, knowing in a general way that their intent was to break the law, is insufficient to establish a conspiracy." *United States v. Purin*, 486 F.2d 1363, 1369 (2d Cir. 1973); *see also United States v. Ramirez*, 714 F.3d 1134, 1140 (9th Cir. 2013) (no conspiracy liability for drug seller whose buyer resold the drugs in plain view of the original seller). Accordingly, the allegations must plausibly establish that Visa specifically intended to accomplish the "illegal objective" of MindGeek receiving a financial benefit from its participation in an unlawful trafficking venture. There are no such allegations here.

The only conduct alleged by Plaintiffs or discussed by Judge Carney relevant to Visa's conspiracy liability is that Visa "knowingly provid[ed] the tool" (*i.e.*, payment card services) for MindGeek to financially benefit from a trafficking venture. Opp'n 42 (quotation marks omitted). But "knowingly provid[ing] the tool" for unlawful activity is not enough to plead conspiracy, because there still must be an "agreement to accomplish a specific illegal objective." *Lennick*, 18 F.3d at 818. Courts have therefore recognized that the receipt of payment for ordinary-course services that may be used for unlawful purposes is not sufficient to establish a common unlawful purpose, even if the provider *knows* that those services are or could be used for illicit means. *See, e.g.*, *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 873 (D.C. Cir. 2022) (distinguishing bank's objective to make "substantial profits' by evading sanctions" from the customer's objective to "terrorize the U.S." (quotation marks omitted)); *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 982 (N.D. Cal. 2013) (the fact that the primary offender "would not itself have committed the acts without a market for the resulting information" provided by the defendant did "not plausibly suggest that [the defendant] ever intended to assist [the primary offender] in the alleged wrongful conduct"). Thus, "[a] person who is

indifferent to the goals of an ongoing conspiracy does not become a party to this conspiracy merely because that person knows that his or her actions might somehow be furthering that conspiracy." *United States v. Collins*, 966 F.2d 1214, 1219–20 (7th Cir. 1992).

Under these legal standards, the allegation that Visa allowed MindGeek's merchant bank to process payments on the Visa network does not evince Visa's *intent to advance* a "specific illegal objective." Even after the 2020 interactions with NGOs, there is no plausible inference that Visa *agreed* with MindGeek and *intended* to join in the unlawful conduct. Conspiracy requires more: as the D.C. Circuit in *Halberstam* put it, "[t]here is a qualitative difference between proving an *agreement to participate* in a tortious line of conduct, and proving *knowing action* that substantially aids tortious conduct." 705 F.2d at 478. Allegations of agreement are much more difficult to sustain. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). And nothing in the Complaint alleges anything more than that Visa was "indifferent to the *goals*" of the alleged conspiracy. *Collins*, 966 F.2d at 1219–20 (emphasis added).

*Deutsche Bank* applied these standards under the TVPRA and offers helpful guidance. There, the district court held that the plaintiffs had adequately stated a claim for beneficiary liability against two banks that provided bespoke and tailored assistance to an alleged trafficking venture, including "assist[ing] with 'structuring' cash withdrawals so that those withdrawals would not appear suspicious," "delay[ing] filing suspicious activity reports," "actually traffick[ing] women and girls … through [a] subsidiary," "fail[ing] to implement oversight" mandate under company policy." 671 F. Supp. 3d at 405–06. All of this, the court observed, meant that the banks "went well beyond merely providing their usual services." *Id.* at 406. Yet even under those facts, the court held there was no conspiracy liability, explaining: "If the allegations in the complaints are taken as true, the defendants did indeed agree to provide banking services for Epstein and his affiliated entities and that they knew, or recklessly disregarded, would assist his sex-trafficking venture. But that agreement is different from an actual

agreement to participate in a sex-trafficking venture." *Id.* at 412. Even to the extent the banks were alleged to have actively covered up the trafficking activity, the allegations did not "support the inference that the defendants did so pursuant to an agreement with Epstein and/or others to further his sex-trafficking operation." *Id.*

The import of *Deutsche Bank* is that even an entity that is adequately alleged to *itself* be a direct beneficiary subject to liability under the TVPRA is not liable for conspiracy absent *further* allegations sufficient to establish the existence of an agreement to advance an unlawful purpose. Here, though, Visa is not even adequately alleged to be liable as a direct beneficiary under Section 1595(a). *Fleites v. MindGeek S.A.R.L. et al.*, 617 F. Supp. 3d 1146, 1161–62 (C.D. Cal. 2022); Hr'g Tr. 89:4–7 (Mar. 7, 2025). It offered none of the "personalized support" to a trafficker as alleged in *Salesforce*, 76 F.4th at 549–50, and never went "beyond merely providing their usual services" as alleged in *Deutsche Bank*, 671 F. Supp. 3d at 406. Plaintiffs have identified no case in which the passive receipt of a financial benefit through the provision of ordinary-course services was sufficient to expose a party to either beneficiary liability *or* conspiracy liability under the TVPRA. This case should not be the first.

\* \* \*

The Supreme Court's decision in *Twitter* reinforced two principles that further cement a holding that the SAC does not state a valid TVPRA conspiracy claim against Visa.

*First*, "our legal system generally does not impose liability for mere omissions, inactions, or nonfeasance." *Twitter*, 598 U.S. at 489. Instead, the general rule is that "culpability of some sort is necessary to justify punishment of a secondary actor, lest mostly passive actors like banks become liable for all of their customers' crimes by virtue of carrying out *routine transactions*." *Id.* at 491 (quotation marks omitted) (emphasis added). Put simply, "passive nonfeasance" is not enough to give rise to secondary liability. *Id.* at 500.

*Second*, secondary liability should not be interpreted or imposed in such a way as

to render such liability "boundless." *Twitter*, 598 U.S. at 488. Courts should eschew interpreting statutes in such a way that "ordinary merchants could become liable for any misuse of their goods and services, no matter how attenuated their relationship with the wrongdoer." *Id.* at 489. That is particularly true in the context of the TVPRA, which is concerned with punishing and deterring sex trafficking, and not simply casting the widest possible net for liability or chilling as much First Amendment speech or enterprise as possible.

Applied to the TVPRA and the allegations here, *Twitter* confirms that Visa's passive receipt of benefits does not establish secondary liability as a co-conspirator. Indeed, if providing services to an entity that itself financially benefits from participation in a venture with a trafficker is sufficient to evince an agreement, then conspiracy liability under Section 1965(a)(2) is virtually "boundless." *Cf. Twitter*, 598 U.S. at 488. Power, water, website hosting, internet access, and advertising spots—among many other things—are all "tool[s]" MindGeek needs in order to financially benefit from the alleged trafficking venture. Credit card payment processing is no more essential or unique than any other of these services. And all of these services are provided by third parties who by now have the same knowledge as Visa regarding to MindGeek's operations. If conspiracy is pleaded here, then all of those third-party providers face the prospect of liability, in direct contravention of the Supreme Court's warning against theories of secondary liability that would make a provider "liable for any sort of wrongdoing merely for knowing that the wrongdoers were using its services and failing to stop them." *Twitter*, 598 U.S. at 503. Even *Salesforce*, which adopts the most lenient interpretation of the TVPRA's requirements, took pains to distinguish the conduct of Salesforce from the conduct of credit card companies like Visa that are "remote intermediaries" from sex trafficking ventures that at most act with "passive nonfeasance" under *Twitter*. *Salesforce*, 76 F.4th at 562–64; *Twitter*, 598 U.S. at 500. No claim for conspiracy can be recognized here without fundamentally breaching the limitations on secondary liability set out by the Supreme Court in *Twitter*.

# CONCLUSION

For these reasons and the reasons provided in Visa's Motions to Dismiss, the Court should dismiss all claims—Counts II, IV, XIV, and XVII—asserted against Visa, with prejudice.

Dated: March 21, 2025

RESPECTFULLY SUBMITTED,

*/s/ Drew Tulumello*
DREW TULUMELLO (#196484)
drew.tulumello@weil.com
MARK A. PERRY (#212532)
mark.perry@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: 202 682 7000
Fax: 202 857 0940

*Attorney for Defendant Visa Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Visa, certifies that this brief is within the ten (10) page limit set by Court Order, Dkt. 540, Mar. 7, 2025.

Dated: March 21, 2025              /s/Drew Tulumello
                                   DREW TULUMELLO