DAN MARMALEFSKY
(CA SBN 95477)
DMarmalefsky@mofo.com
Morrison & Foerster LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: 213-892-5200
Facsimile: 213-892-5454

RONALD G. WHITE
(*pro hac vice*)
RWhite@wmhwlaw.com
Walden Macht Haran & Williams LLP
250 Vesey Street
New York, NY 10281
Telephone: 212-335-2387
Facsimile: 212-335-2040

*Attorneys for Defendant Bernd Bergmair*

(Additional Counsel Listed on Signature Page)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENA FLEITES,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>MINDGEEK S.A.R.L., et al.,<br><br>　　　　　　Defendants. | Case No.: 2:21-cv-4920-WLH-ADS<br><br>**INDIVIDUAL DEFENDANTS' SUPPLEMENTAL FILING IN SUPPORT OF THEIR MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION [FRCP 12(B)(2)] AND FOR FAILURE TO STATE A CLAIM [FRCP 12(B)(6)]**<br><br>Date: April 24, 2025<br>Time: 9:00 a.m.<br>Courtroom: 9B<br>Judge: Hon. Wesley L. Hsu<br>Complaint Filed: June 17, 2021<br>Trial Date: None Set |

INDIVIDUAL DEFENDANTS' SUPPLEMENTAL FILING IN SUPPORT OF THEIR MOTIONS TO DISMISS
SECOND AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Pages**

INTRODUCTION ........................................................................................................ 1

I.    Background............................................................................................... 1

II.    Argument .................................................................................................. 4

    A.    The Single Enterprise Theory of Alter Ego Requires a Showing of Injustice ...................................................................................... 4

    B.    The Single Enterprise Theory of Alter Ego Does Not Apply In Any Event to the Individual Defendants............................................... 8

    C.    Plaintiffs are Not Entitled to an Evidentiary Hearing or Additional Jurisdictional Discovery ...................................................... 9

CONCLUSION........................................................................................................... 11

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Advanced Engineering Solutions Co. v. Personal Corner, Inc.*,
  2021 WL 1502705 (C.D. Cal. Feb. 25, 2021) ...................................................... 7

*Caldrone v. Circle K Stores, Inc.*,
  2021 WL 6496746 (C.D. Cal. Aug. 2, 2021) ...................................................... 9

*Cal-Star Production, Inc. v. Fencepost Productions, Inc.*,
  2019 WL 13038581 (C.D. Cal. Apr. 18, 2019) ............................................... 7, 8

*Campanelli v. Image First Uniform Rental Service, Inc.*,
  2016 WL 4729173 (N.D. Cal. Sept. 12, 2016) .................................................... 9

*Doe v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001) ............................................................................ 6, 8

*Gopal v. Kaiser Foundation*,
  248 Cal. App. 4th 425 (Cal. Ct. App. 2016) ....................................................... 7

*Hamilton Beach Brands, Inc. v. Metric and Inch Tools, Inc.*,
  614 F. Supp. 2d 1080 (C.D. Cal. 2009) ............................................................ 6, 7

*Iconlab, Inc. v. Valeant Pharma. Intl., Inc.*,
  2017 WL 7240856 (C.D. Cal. Apr. 25, 2017), *aff'd sub nom. Iconlab,
  Inc. v. Bausch Health Companies, Inc.*, 828 F. App'x 363 (9th Cir.
  2020) .................................................................................................................... 9

*In re GGW Brands, LLC*,
  504 B.R. 577 (Bankr. C.D. Cal. 2013) ................................................................ 5

*In re Telectronics Pacing Systems, Inc.*,
  953 F. Supp. 909 (S.D. Ohio 1997) ..................................................................... 6

*J. H. Rose Logistics LLC v. Bonerts, Inc.*,
  2017 WL 5634098 (C.D. Cal. Nov. 20, 2017) ................................................. 7, 8

*Kayne v. Ho*,
  2012 WL 12878753 (C.D. Cal. Sept. 16, 2012) ......................................... 5, 8, 9

*Krantz v. Bloomberg, L.P.*,
  2022 WL 2102111 (C.D. Cal. Jan. 19, 2022) ...................................................... 9

*Las Palmas Associates v. Las Palmas Center Associates*,
  235 Cal. App. 3d 1220 (Cal. Ct. App. 1991) ................................................... 5, 8

*Limestone Memory Systems LLC v. Micron Technology, Inc.*,
  2019 WL 8690217 (C.D. Cal. Dec. 26, 2019) .................................................... 7

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  243 F.Supp.2d 1073 (C.D. Cal. 2003)..............................................................6

*Mossimo Holdings LLC v. Haralambus*,
  2014 WL 6453832 (C.D. Cal. Nov. 17, 2014)..................................................6

*Mossimo Holdings LLC v. Haralambus*,
  2015 WL 476298 (C.D. Cal. Feb. 3, 2015).............................................5, 6, 8

*Oakley, Inc. v. Trimera Military Technology, Inc.*,
  2016 WL 8794459 (C.D. Cal. Jan. 22, 2016) .........................................6, 7, 9

*Pitt v. Metropolitan Tower Life Ins. Co.*,
  2020 WL 1557429 (N.D. Cal. Apr. 1, 2020) ...................................................9

*Ranza v. Nike*,
  793 F.3d 1059 (9th Cir. 2015)..........................................................................8

*Stevens v. Trona Railway Co.*,
  2009 WL 10669256 (C.D. Cal. Aug. 20, 2009)...............................................7

*Stewart v. Screen Gems-EMI Music, Inc.*,
  81 F. Supp. 3d 938 (N.D. Cal. 2015) ...............................................................9

*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.*,
  217 Cal. App. 4th 1096 (Cal. Ct. App. 2013) .............................................5, 8

*Tran v. Farmers Group, Inc.*,
  104 Cal. App. 4th 1202 (Cal. Ct. App. 2002) ..................................................7

# INTRODUCTION

Defendants Feras Antoon, David Tassillo and Bernd Bergmair (collectively, the "Individual Defendants") jointly submit this supplemental memorandum.[1] Plaintiffs' eleventh-hour pivot to a "single enterprise" theory of alter ego is no basis to change the Court's March 7, 2025 tentative ruling that they have not made "any showing [that] could be sufficient" to satisfy the injustice element of the alter ego test. March 7, 2025 Hearing Transcript ("Hearing Tr.") 7-8. First, Plaintiffs' alter ego claim is not saved by the single enterprise theory because, contrary to their argument at the hearing, it also requires a showing of injustice – which the Plaintiffs cannot meet. Second, the single enterprise theory is inapplicable to the Individual Defendants since it involves imposing liability on sister corporations that have no ownership interest in one another, not (as argued here) on a corporation and its shareholders. Finally, Plaintiffs' last-minute attempt to stave off defeat by seeking an evidentiary hearing or further jurisdictional discovery is meritless. As shown below, the Court's March 7, 2025 tentative ruling correctly held that Plaintiffs failed to demonstrate a basis for personal jurisdiction over the Individual Defendants.

## I.   Background

Throughout jurisdictional discovery, Plaintiffs repeatedly acknowledged their obligation to establish the injustice element of the alter ego test to succeed on their personal jurisdiction claim with respect to the Individual Defendants. *See, e.g.*, ECF No. 261 at 33 (alter ego "has two elements: (1) [unity of interest]; and (2) failure to disregard their separate identities would result in fraud or injustice") (internal punctuation omitted). Indeed, Plaintiffs specifically invoked the injustice element as the basis to seek detailed financial information from both MindGeek and the Individual Defendants. *See, e.g.*, ECF No. 356-2 at 3-4, 6 (seeking documents that

---

[1] The Court permitted each of the Individual Defendants to submit a 10-page brief. Hearing Tr. 104; March 12, 2025 Order (ECF No. 537). In the interests of judicial economy, the three Individual Defendants jointly submit this single brief.

Plaintiffs claimed were "highly relevant to the Court's jurisdictional and alter ego analyses" because they were "critical" to the issue of "enforcing a judgment against insolvent or undercapitalized entities"); ECF No. 356 at 1 (seeking information that Plaintiffs claimed was "highly relevant" to "the ability of the named [MindGeek] entities to satisfy any potential judgment").

However, the evidence elicited by Plaintiffs in jurisdictional discovery makes clear that they cannot establish the injustice element of the alter ego test. Plaintiffs cannot show that the MindGeek corporate defendants are insolvent or unable to pay a judgment in this case.[2] Indeed, the jurisdictional discovery affirmatively shows the opposite: MindGeek can pay a judgment in this case, and indeed, its current owner agreed to pay over ▆▆▆▆▆ to purchase it in 2023, as reflected in the buy-out agreements governing the sale.[3] Moreover, that substantial valuation reflects MindGeek's consistent profitability as shown in audited financial statements produced in discovery, which confirm that its annual revenues have regularly exceeded its expenses by ▆▆▆▆▆.[4]

Desperate to discredit the valuation of the business set by the 2023 sale, Plaintiffs claim without evidentiary support that it was a "pretextual sale" in which "no one paid anything for the business." *Fleites* Opp. 83. But discovery Plaintiffs themselves elicited disproved that assertion. Both Antoon and Tassillo testified that they had received the initial ▆▆▆▆▆ installment payment for their MindGeek

---

[2] *See* Bergmair Motion to Dismiss (ECF No. 433) at 17-20; Bergmair Reply (ECF No. 499) at 2-8; Antoon/Tassillo Motion to Dismiss (ECF No. 436) at 19-22; Antoon/Tassillo Reply (ECF No. 496) at 5-8.
[3] White Decl. (ECF No. 433-2) Ex. E at 16-17 and Ex. F at 16-17.
[4] *See* Andreou Decl. (ECF No. 440-2) ¶ 30 (summarizing audited financial statements produced to Plaintiffs in discovery showing MindGeek, S.a.r.l.'s revenues exceeded expenses by ▆▆▆▆▆ annually between 2014 and 2019); Plaintiffs' Ex. 73 (Statement of Earnings Tab, Line 90) (MindGeek's internal financial reports reflect 2020 net income of ▆▆▆▆▆ for the overall MindGeek group).

shares.[5] And according to the schedule of payments set forth in the agreements, more than ■■■■■■ has been paid in installments to date.[6] Antoon's testimony confirmed that these funds are being paid to the Individual Defendants by the third-party buyer, Ethical Capital Partners, not MindGeek.[7]

Plaintiffs also make the desperate argument that the Court should not consider the buy-out agreements in assessing MindGeek's financial condition because Defendants objected to certain of Fleites's other discovery requests for financial information beyond 2021. *Fleites* Opp. 84. But Plaintiffs' counsel neglected to mention that *they themselves agreed* to limit their document requests to the time period through the filing of the *Fleites* complaint in June 2021.[8] And when Fleites later requested documents outside that time period (related to the 2023 sale), Defendants produced them. The 2023 buy-out agreements are part of the evidentiary record in this case because Plaintiffs' counsel demanded them in discovery, arguing that they were "highly relevant" to "the Court's jurisdictional and alter ego analyses" and to "the ability of the named [MindGeek] entities to satisfy any potential judgment." ECF No. 356-2 at 3-4, 6; ECF No. 356 at 1. If Plaintiffs thought they needed or were entitled to further documents outside the agreed-upon time period, the time to raise that issue with the Defendants or the Court was during the discovery period, not two years later when their alter ego claim has fallen apart. In short, Plaintiffs got exactly what they asked for.

Moreover, Plaintiffs focus on MindGeek, S.a.r.l., but ignore the fact that the specific corporate defendants that own and operate Pornhub – MG Freesites Ltd. and 9219-1568 Quebec, Inc. – do not challenge personal jurisdiction. The 2023 financial

---

[5] White Reply Decl. (ECF No. 499) Ex. Q at 286, 395, 505; Ex. R at 21.
[6] White Decl. Ex. E at 16-17; Ex. F at 16-17.
[7] White Reply Decl. Ex. Q at 506.
[8] White Decl. Ex. D (ECF No. 433-6) (Fleites' letter to Bergmair counsel) at 1; ECF No. 330-4 (Fleites' email to Antoon and Tassillo counsel) at 4; ECF No. 320-19 (Fleites' letter to MindGeek counsel) at 1.

statements for these defendants indicate that they were *each* worth "▮▮▮▮▮▮▮▮▮▮."[9] Andreou Decl. ¶ 20. Thus, as the Court's tentative ruling recognized – referring to "the MindGeek Defendants that are in" (Hearing Tr. 8) – these defendants can satisfy any potential judgment obtained by Plaintiffs.

As the Court found in its March 7, 2025 tentative opinion, this evidence makes plain that Plaintiffs have not made the showing of injustice required under the alter ego test and have therefore failed to establish personal jurisdiction over the Individual Defendants. Hearing Tr. 7-8 (noting that, even though it was a "tentative" opinion, "I am pretty confident of this part"). The Court found that the evidence did not show that the MindGeek Defendants in the case were "judgment proof in any way," and "it's not clear to me that any showing could be sufficient given that [injustice] requirement." *Id*. at 8.

Recognizing that, in the face of the evidence, they cannot satisfy the injustice element of the alter ego test, Plaintiffs pivoted to the argument that they are not required to establish injustice under the alter ego test after all. At the March 7 hearing, Plaintiffs instead claimed that they are pursuing a "single enterprise" theory of alter ego, which they asserted does not require a showing of injustice. *Id*. at 46. The Court granted the Individual Defendants' request to submit this supplemental brief to address Plaintiffs' newly-advanced single enterprise theory. *Id*. at 104.

## II.  Argument

### A.  The Single Enterprise Theory of Alter Ego Requires a Showing of Injustice

First and most fundamentally, Plaintiffs' assertion that the single enterprise theory of alter ego does not require a showing of injustice in the Ninth Circuit is incorrect. At the March 7 hearing, Plaintiffs' counsel argued that the single

---

[9] The audited financial statements of these companies for earlier years, which were produced to Plaintiffs in jurisdictional discovery, also consistently show annual income of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Andreou Decl. ¶¶ 35, 51.

enterprise theory "doesn't require that there be any prejudice or injustice as a result of an abuse of [corporate] form." *Id*. at 46; 59 (under single enterprise theory, showing of insolvency "is not required"). But the very cases Plaintiffs cited in their surprise handout at the March 7 hearing in support of their single enterprise theory – as well as numerous others in this district – contradict their argument and establish that injustice *is* required.

For example, in *Las Palmas Associates v. Las Palmas Center Associates*, 235 Cal. App. 3d 1220 (Cal. Ct. App. 1991) – which Plaintiffs described as the "leading case" on the single enterprise theory (Hearing Tr. 47) – the court described the single enterprise test as having two elements, including a showing of "an inequitable result." *Id*. at 1249. The court then analyzed the factual support for both elements of the test, including the injustice requirement. *Id*. at 1251. Similarly, in *In re GGW Brands, LLC*, 504 B.R. 577 (Bankr. C.D. Cal. 2013), the court specifically ruled that "the party seeking a determination that two or more corporations are a 'single enterprise' must demonstrate that there is (1) [unity of interest]; and (2) an inequitable result if the acts in question are treated as those of the corporation alone." *Id*. at 622 (internal quotation marks omitted). The court applied both elements, including the one requiring an inequitable result. *Id*. at 623. In *Toho-Towa Co.*, *Ltd. v. Morgan Creek Productions, Inc.*, 217 Cal. App. 4th 1096 (Cal. Ct. App. 2013), the court applied the single enterprise theory as including an injustice element, stating that the theory required a showing that failure to disregard the corporations' separate existence would "promote injustice or bring about inequitable results." *Id*. at 1109, n. 5. The court specifically held that "common principles apply regardless of whether the alleged alter ego is based on piercing the corporate veil to attach liability to a shareholder or to hold a corporation liable as part of a single enterprise." *Id*. at 1108. In *Kayne v. Ho*, 2012 WL 12878753 (C.D. Cal. Sept. 16, 2012), plaintiffs asserted a single enterprise theory and the court required a showing of both alter ego elements, including "inequitable result." *Id*. at *7-8. In *Mossimo Holdings*

1  *LLC v. Haralambus*, 2015 WL 476298 (C.D. Cal. Feb. 3, 2015), the court held that
2  the single enterprise theory was a "version of alter ego liability," and analyzed
3  whether plaintiff's amended complaint satisfied "the basic elements of alter ego
4  theory." *Id*. at *3. The court found that the amended complaint satisfied this test
5  "for the reasons given as to the original complaint in [the court's] previous order."
6  *Id*. The court's prior order had applied the traditional two-part alter ego test and
7  specifically described the second prong as requiring "an inequitable result."
8  *Mossimo Holdings LLC v. Haralambus*, 2014 WL 6453832, at *2 (C.D. Cal. Nov.
9  17, 2014).[10] Plaintiffs' handout summarizing these cases inexplicably omitted that
10 their actual rulings are the *exact opposite* of the proposition for which Plaintiffs cited
11 them.

12  Moreover, judges in this district have repeatedly ruled similarly that the single
13 enterprise theory of alter ego requires a showing of injustice – and in some cases,
14 denied the single enterprise claim precisely because of the plaintiff's failure to
15 satisfy the injustice element. For example, in *Oakley, Inc. v. Trimera Military
16 Technology, Inc.*, 2016 WL 8794459 (C.D. Cal. Jan. 22, 2016), the court specifically
17 ruled that "two conditions are generally required for application of the [single
18 enterprise] doctrine to two related corporations: … (2) an inequitable result if the
19 acts in question are treated as those of one corporation alone." *Id*. at *9. The court

---

[10] The only other in-circuit case cited in Plaintiffs' handout was *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073 (C.D. Cal. 2003), in which the Court expressly disclaimed a finding of alter ego, instead relying upon a combination of theories it termed "merger" and "attribution" adopted from a Southern District of Ohio case. *Id*. at 1098, 1099-1100 (citing *In re Telectronics Pacing Systems, Inc.*, 953 F. Supp. 909 (S.D. Ohio 1997)). However, the Ninth Circuit has specifically differentiated its governing law from the analysis set forth in *Telectronics* (which Plaintiffs also cited in their handout). In one of its major alter ego cases, *Doe v. Unocal Corp.*, the Ninth Circuit noted *Telectronics*' attempt to recast alter ego as "merger" and agency as "attribution" but pointedly noted that "the Court follows the alter ego and agency tests *as articulated by the Ninth Circuit*." 248 F.3d 915, 926, n.2 (9th Cir. 2001) (emphasis added).

denied the single enterprise claim, finding that the plaintiff had failed to demonstrate the required "inequitable result" (as well as unity of interest). *Id*. at *10-11. Similarly, in *Hamilton Beach Brands, Inc. v. Metric and Inch Tools, Inc.*, 614 F. Supp. 2d 1080 (C.D. Cal. 2009), the court set forth the same two-part test requiring "an inequitable result" and found that the plaintiff had failed to satisfy this single enterprise test in part because it "submitted absolutely no competent evidence" showing that the defendant's corporate form was used for a "wrongful or inequitable purpose." *Id*. at 1083-84. Likewise, in *Stevens v. Trona Railway Co.*, 2009 WL 10669256 (C.D. Cal. Aug. 20, 2009), the court applied the same two-part test for the single enterprise theory requiring "an inequitable result" but denied the claim because the plaintiff failed to show how he "would face injustice" if corporate distinctions were observed. *Id*. at *9. *See also Cal-Star Production, Inc. v. Fencepost Productions, Inc.*, 2019 WL 13038581 at *2 (C.D. Cal. Apr. 18, 2019) ("to state a claim for alter ego liability based on a single business enterprise theory, a plaintiff must adequately allege … (2) an inequitable result if the acts in question are treated as those of one corporation alone"); *Limestone Memory Systems LLC v. Micron Technology, Inc.*, 2019 WL 8690217 at *17 (C.D. Cal. Dec. 26, 2019) (applying same two-part test, including inequitable result); *J. H. Rose Logistics LLC v. Bonerts, Inc.*, 2017 WL 5634098 at *4 (C.D. Cal. Nov. 20, 2017) (applying same two-part test, including inequitable result); *Advanced Engineering Solutions Co. v. Personal Corner, Inc.*, 2021 WL 1502705 at *4 (C.D. Cal. Feb. 25, 2021) (applying same two-part test, including inequitable result).[11]

---

[11] California state law is similar. *See Gopal v. Kaiser Foundation Health Plan, Inc.*, 248 Cal. App. 4th 425, 432 (Cal. Ct. App. 2016) (citing *Las Palmas*, the Court ruled that "two conditions are generally required for the application of joint enterprise liability: … (2) an inequitable result if the acts in question are treated as those of one corporation;" court found this element was not satisfied since plaintiff was "not without recourse or remedy" because he could still pursue his lawsuit against other substantial defendants); *Tran v. Farmers Group, Inc.*, 104 Cal. App. 4th 1202, 1219 (Cal. Ct. App. 2002) ("two conditions are generally required for the application of

Indeed, the fact that the test for the single enterprise theory is the same as for traditional alter ego is unsurprising since "the single enterprise doctrine is a version of alter ego liability." *Oakley,* 2016 WL 8794459 at *10; *Cal-Star,* 2019 WL 13038581 at *2. In fact, even one of Plaintiffs' own cases, *Mossimo Holdings*, concedes this. 2015 WL 476298 at *3. Accordingly, the Ninth Circuit's well-established two-part alter ego test, including the injustice element, applies to Plaintiffs' single enterprise theory here. *See, e.g.*, *Ranza v. Nike*, 793 F.3d 1059, 1073 (9th Cir. 2015); *Doe v. Unocal Corp.*, 248 F.3d at 926.

### B. The Single Enterprise Theory of Alter Ego Does Not Apply In Any Event to the Individual Defendants

Since Plaintiffs' single enterprise claim must be analyzed using the traditional alter ego test, including the injustice element, the particular alter ego theory they advance here is irrelevant. But even if Plaintiffs' argument that the single enterprise theory does not include an injustice element were correct – which it is not – the theory would nonetheless <u>not</u> apply to the Individual Defendants here because it addresses "sister corporations" operated as a unified entity, *not* shareholders of a corporation. For example, in *Las Palmas*, the court specifically differentiated the single enterprise theory, which permits liability to be found "between sister companies," with the "usual[]" situation where "a disregard of the corporate entity is sought in order to fasten liability upon individual stockholders." 235 Cal. App. at 1249. Another of Plaintiffs' cases makes this same distinction, ruling that "if the defendants act as a single enterprise, sister corporations can have alter ego liability even if one does not own stock in the other." *Kayne*, 2012 WL 12878753 at *8. Similarly, in *Toho-Towa*, also cited by Plaintiffs, the court held that "the single-business-enterprise theory [applies] … when corporations integrate their resources and operations," in contrast to the typical situation in which alter ego liability is

---

the [single enterprise] doctrine to two related corporations: … (2) an inequitable result if the acts in question are treated as those of one corporation alone").

imposed on a corporation's shareholders. 217 Cal. App. 4th at 1107-08 (internal quotation marks omitted). *See also J.H. Rose*, 2017 WL 5634098 at *4 (contrasting traditional alter ego doctrine involving corporate shareholder with single enterprise theory which applies to "corporations [which] integrate their resources and operations" and which does not require ownership in the alleged alter ego corporation); *Oakley,* 2016 WL 8794459 at *9-10 (analyzing separately the alter ego claim against the individual shareholder of a corporation and the single enterprise claim against "sister companies" which were under common ownership but not alleged to have ownership interest in one another).[12]

### C. Plaintiffs are Not Entitled to an Evidentiary Hearing or Additional Jurisdictional Discovery

Recognizing their losing hand, Plaintiffs argued at the March 7 hearing that they should be given an evidentiary hearing or additional jurisdictional discovery. Hearing Tr. 57, 61. There is no basis to grant either request.

---

[12] Even if Plaintiffs could pursue a single enterprise theory against the Individual Defendants, and even if they could do so without having to establish injustice, there is substantial doubt that the single enterprise theory can be used as a basis for establishing personal jurisdiction. *See Krantz v. Bloomberg, L.P.*, 2022 WL 2102111 at *5 (C.D. Cal. Jan. 19, 2022) ("courts within this circuit routinely reject the use of a 'single enterprise' theory as a basis to establish personal jurisdiction"). *See also Iconlab, Inc. v. Valeant Pharma. Intl.*, *Inc.*, 2017 WL 7240856 at *6 (C.D. Cal. Apr. 25, 2017); *aff'd on other grounds, Iconlab, Inc. v. Bausch Health Companies, Inc.*, 828 F. App'x at 364; *Campanelli v. Image First Uniform Rental Service, Inc.*, 2016 WL 4729173 at *7 (N.D. Cal. Sept. 12, 2016); *Pitt v. Metropolitan Tower Life Ins. Co.*, 2020 WL 1557429 at *4 (N.D. Cal. Apr. 1, 2020). Although several courts have applied the single enterprise version of alter ego in the context of personal jurisdiction, they have done so without any analysis of its applicability or recognition of the multiple cases ruling that it cannot be used to establish personal jurisdiction. *See, e.g.*, *Kayne*, 2012 WL 12878753 at *5-9; *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 953-57 (N.D. Cal. 2015). Notably, in both cases, the courts ruled that the single enterprise theory required the plaintiffs to establish the injustice element of their claim. *See Kayne*, 2012 WL 12878753 at *7-9; *Stewart*, 81 F. Supp. 3d at 953-57. *See* Section II(A) above.

1       First, Plaintiffs have not identified any genuine factual dispute regarding the injustice element of the alter ego test that warrants an evidentiary hearing. As discussed above, literally the only alleged fact Plaintiffs cite to challenge the valuation of MindGeek established by its 2023 sale – that "no one paid anything for the business" (*Fleites* Opp. 83) – was disproved by discovery elicited by Plaintiffs themselves. *See supra* at 2-3. Moreover, the Plaintiffs' argument on the injustice element is entirely focused on challenging this 2023 valuation – but they ignore that, even if MindGeek's financial condition were assessed as of the time of the filing of the *Fleites* complaint in June 2021, documents submitted to the Court *by Plaintiffs* reflect that the company had net income of ▆▆▆▆▆▆ in 2020. *See* footnote 4 *supra* (citing Pl. Ex. 73). In addition, the MindGeek audited financial statements for the six years prior to that (2014 to 2019) produced to Plaintiffs in discovery similarly show annual profits of approximately ▆▆▆▆▆▆. *Id*. Put simply, where Plaintiffs' *own exhibits* establish that MindGeek made ▆▆▆▆▆▆ in the year prior to the lawsuit, no hearing is needed for the Court to determine that no injustice will result from failing to pierce the corporate veil.[13] As the Court noted in its tentative opinion at the March 7 hearing, "it's not clear to me that *any showing* could be sufficient given that [injustice] requirement." Hearing Tr. 8 (emphasis added).

        In another desperate gambit, Plaintiffs argued that, to the extent the Court finds their alter ego claims "deficient," Plaintiffs other than Fleites should be permitted to take additional jurisdictional discovery since they "have not had jurisdictional discovery." Hearing Tr. 61. This assertion is also incorrect. Plaintiffs' counsel failed to mention that Defendants consented to amending the protective order in the *Fleites* case specifically to permit the Related Cases Plaintiffs to use the extensive *Fleites* jurisdictional discovery materials in their individual actions. *See Fleites* ECF No. 490. Indeed, the Related Cases Plaintiffs expressly incorporated

---

[13] No hearing is needed with respect to the unity of interest element of alter ego either, but the Court need not even reach that issue since Plaintiffs have failed to establish the injustice element.

10

these materials in their Opposition to the motions to dismiss in those actions and cited them extensively in their brief. *K.A.* ECF No. 96-1 at 3-4, n.2 ("Plaintiffs incorporate by reference the evidence and discovery obtained in the *Fleites* action to respond to Defendants' jurisdictional and alter ego arguments"); 60-62 (discussing "the evidence submitted in *Fleites*" and citing the 109 exhibits submitted in that case); 69-72 (extensively discussing *Fleites* jurisdictional discovery materials). Thus, the Related Cases Plaintiffs have made full use of the 100,000 pages of documents and other materials gathered by their counsel in the year-long jurisdictional discovery conducted in *Fleites*.

There is no basis to give the Related Cases Plaintiffs a do-over on jurisdictional discovery. The sole focus of the jurisdictional discovery process in *Fleites* was the alleged jurisdictional contacts of *the Defendants*. Nothing about the jurisdictional discovery was plaintiff-specific or would change based on the identity of the individual Plaintiff taking the discovery. Moreover, the complaints in the Related Cases make virtually identical allegations – indeed, largely copied verbatim – as those in the *Fleites* complaint. Having already made ample use of the *Fleites* jurisdictional discovery materials, the Related Cases Plaintiffs have no basis to take even more discovery other than that they want a second bite at the apple to try to rescue their failed alter ego claim.[14]

## **CONCLUSION**

For these reasons, the Court should adhere to its tentative ruling that Plaintiffs in *Fleites* and the Related Cases have not satisfied the alter ego test with respect to the Individual Defendants and dismiss the cases against them for lack of personal jurisdiction.

---

[14] Twelve of the fourteen Related Cases Plaintiffs (Plaintiffs K.A., T.C., N.L., J.C., A.K., L.T., N.Y., C.S., S.O., W.P., X.N., and L.S.) have no connection to California at all, and for that separate reason are not entitled to jurisdictional discovery.

| | |
|---|---|
| Dated: March 21, 2025 | By: */s/ Ronald G. White* |
| | RONALD G. WHITE (*pro hac vice*) |
| | rwhite@wmhwlaw.com |
| | Walden Macht Haran & Williams LLP |
| | 250 Vesey Street |
| | New York, NY 10281 |
| | Tel: (212) 335-2387 |
| | Fax: (212) 335-2040 |
| | |
| | DAN MARMALEFSKY (CA SBN 95477) |
| | DMarmalefsky@mofo.com |
| | Morrison & Foerster LLP |
| | 707 Wilshire Boulevard |
| | Los Angeles, California 90017-3543 |
| | Telephone: 213-892-5200 |
| | Facsimile: 213-892-5454 |
| | |
| | Attorneys for Defendant Bernd Bergmair |
| | |
| | JONATHAN S. SACK (*pro hac vice*) |
| | jsack@maglaw.com |
| | Alexander F.R. Peacocke (*pro hac vice*) |
| | apeacocke@maglaw.com |
| | Morvillo Abramowitz Grand Iason & Anello PC |
| | 565 Fifth Avenue |
| | New York, New York 10017 |
| | Phone: (212) 856-9600 |
| | Facsimile: (212) 856-9494 |
| | |
| | Attorneys for Specially Appearing Defendant David Tassillo |

JASON BROWN (*pro hac vice*)
jbrown@cohengresser.com
Matthew V. Povolny (*pro hac vice*)
Joanna Chan (SBN 284898)
jchan@cohengresser.com
Cohen & Gresser LLP
800 Third Avenue
New York, New York 10022
Phone: (212) 957-7600
Facsimile: (212) 957-4514

Attorneys for Specially Appearing Defendant Feras Antoon

DAVID W. WIECHERT (SBN 94607)
Wiechert, Munk & Goldstein, PC
dwiechert@aol.com
4000 MacArthur Boulevard
Suite 600 East Tower
Newport Beach, CA 92660
Phone: (949) 361-2822
Facsimile: (949) 361-5722

Attorneys for Specially Appearing Defendants David Tassillo and Feras Antoon

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Bernd Bergmair, certifies that the Memorandum of Points and Authorities submitted on behalf of the three Individual Defendants consists of 11 pages, which complies with the 10-pages-per-defendant limit set forth in the Court's Order of March 12, 2025 (ECF No. 537).

Dated: March 21, 2025                               Respectfully submitted,


                                                    */s/ Ronald G. White*
                                                    RONALD G. WHITE
                                                    (*pro hac vice*)
                                                    rwhite@wmhwlaw.com
                                                    Walden Macht Haran & Williams LLP
                                                    250 Vesey Street
                                                    New York, NY  10281
                                                    Tel: (212) 335-2387
                                                    Fax: (212) 335-2040

                                                    DAN MARMALEFSKY (CA SBN 95477)
                                                    DMarmalefsky@mofo.com
                                                    Morrison & Foerster LLP
                                                    707 Wilshire Boulevard
                                                    Los Angeles, California 90017-3543
                                                    Telephone: 213-892-5200
                                                    Facsimile: 213-892-5454

                                                    Attorneys for Defendant Bernd Bergmair

# CERTIFICATE OF SERVICE

The undersigned, the counsel of record for Bernd Bergmair, certifies that the foregoing instrument was served pursuant to the Federal Rules of Civil Procedure on March 21, 2025 upon all counsel of record via ECF.

Dated: March 21, 2025

Respectfully submitted,

*/s/ Ronald G. White*
RONALD G. WHITE
(*pro hac vice*)
rwhite@wmhwlaw.com
Walden Macht Haran & Williams LLP
250 Vesey Street
New York, NY  10281
Tel: (212) 335-2387
Fax: (212) 335-2040

DAN MARMALEFSKY (CA SBN 95477)
DMarmalefsky@mofo.com
Morrison & Foerster LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: 213-892-5200
Facsimile: 213-892-5454

Attorneys for Defendant Bernd Bergmair