Peter A. Biagetti (*Admitted Pro Hac Vice*)
pabiagetti@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
Facsimile:  (617) 542-2241

Seth R. Goldman (*Admitted Pro Hac Vice*)
sgoldman@mintz.com
LisaMarie F. Collins (*Admitted Pro Hac Vice*)
lcollins@mintz.com
Kerime S. Akoglu (*Admitted Pro Hac Vice*)
ksakoglu@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
919 Third Avenue
New York, NY 10022
Telephone: (212) 692-6845
Facsimile: (212) 983-3115

Attorneys for Defendants
MindGeek S.à r.l., MG Freesites Ltd, MG Premium Ltd,
MindGeek USA Incorporated, MG Global Entertainment Inc.,
and 9219-1568 Quebec Inc.

*[Additional Defendants' Counsel continued on next page]*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SERENA FLEITES,<br><br>　　　　　Plaintiff,<br>　v.<br><br>MINDGEEK S.À R.L, et al.,<br><br>　　　　　Defendants. | Case No. 2:21-cv-04920-WLH-ADS<br><br>Case Assigned to Hon. Wesley L. Hsu<br>Courtroom 9B<br><br>**DEFENDANTS MINDGEEK S.À R.L., MG FREESITES LTD, MG PREMIUM LTD, MINDGEEK USA INCORPORATED, MG GLOBAL ENTERTAINMENT INC, AND 9219-1568 QUEBEC INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTIONS TO DISMISS AND JOINDER IN THE SUPPLEMENTAL BRIEF OF INDIVIDUAL DEFENDANTS FERAS ANTOON, BERND BERGMAIR, AND DAVID TASSILLO**<br><br>Complaint Filed: June 17, 2021<br>Trial Date:　　Not Set Yet |

Arameh Z. O'Boyle (SBN 239495)
azoboyle@mintz.com
Esteban Morales Fabila (SBN 273948)
emorales@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
2049 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202

## TABLE OF CONTENTS

I.   **MindGeek Is Not A Content Creator** ............................................................1

II.  **Plaintiffs Have Not Sufficiently Alleged that MindGeek Knowingly Benefitted From, or Participated in a Violative Venture** ..........................4

III. **An Alter Ego Theory *Always* Requires a Showing of Fraud or Injustice** ................................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acevedo v. eXp Realty, LLC*,
   713 F. Supp. 3d 740 (C.D. Cal. 2024) ................................................................. 8

*AT&T v. Compagnie Bruxelles Lambert*,
   94 F.3d 586 (9th Cir. 1996) .................................................................................. 8

*B.M. v. Wyndham Hotels And Resorts, Inc.*,
   2020 WL 4368214 (N.D. Cal. Jul. 30, 2020) ................................................. 6, 8

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) ......................................................................... 2, 4

*Doe (S.M.A.) v. Salesforce, Inc.*,
   2024 WL 1337370 (N.D. Tex. March 28, 2024) ............................................ 6, 7

*Doe v. Grindr, Inc.*,
   2025 WL 517817 (9th Cir. Feb. 18, 2025) ......................................................... 5

*Doe v. Grindr Inc.*,
   709 F. Supp. 3d 1047 (C.D. Cal. 2023) .............................................................. 1

*Doe v. Reddit, Inc.*,
   2021 WL 5860904 (C.D. Cal. Oct. 7, 2021) ................................................... 1, 5

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) ............................................................................. 10

*Doe v. WebGroup Czech Republic, a.s.*,
   2024 WL 3533426 (C.D. Cal. July 24, 2024) .................................................... 2

*Doe v. WebGroup Czech Republic, a.s.*,
   Case No. 2:21-CV-02428-SPG-SK,
   Dkt. No. 205 (C.D. Cal. Feb. 21, 2025) ...................................................... *passim*

*Does 1-6 v. Reddit*,
   51 F.4th 1137 (9th Cir. 2022) .......................................................................... 5, 7

*Edmonson v. Raniere*,
   2024 WL 4334374 (E.D.N.Y. Sept. 27, 2024) ................................................... 6

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) ........................................................................... 2, 4

*Fyk v. Facebook, Inc.*,
   808 F. App'x 597 (9th Cir. 2020) ........................................................................... 2

*G.G. v. Salesforce, Inc.*,
   76 F.4th 544 (11th Cir. 2023) ................................................................................ 7

*Gemcap Lending I, LLC v. Crop USA Ins. Agency, Inc.*,
   2014 WL 12589333 (C.D. Cal. Feb. 14, 2014) ..................................................... 9

*In re GGW Brands, LLC*,
   504 B.R. 577 (Bankr. C.D. Cal. 2013) .................................................................. 9

*In re Telectronics Pacing Sys.*,
   953 F. Supp. 909 (S.D. Ohio 1997) ..................................................................... 10

*Kayne v. Ho*,
   2012 WL 12878753 (C.D. Cal. Sept. 6, 2012) ...................................................... 9

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263,1269 (9th Cir. 2016) .................................................................. 1, 2

*Krantz v. Bloomberg, L.P.*,
   2022 WL 2102111 (C.D. Cal. Jan. 19, 2022) ........................................................ 9

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*,
   235 Cal. App. 3d 1220 (Cal. Ct. App. 1991) ......................................................... 9

*Lyngaas v. Curaden Ag*,
   992 F. 3d 412 (6th Cir. 2021) .............................................................................. 10

*McGowan v. McLane*,
   2024 WL 4907144 (C.D. Cal. Nov. 5, 2024) ........................................................ 8

*Metro-Goldwyn-Mayer Studios Inc. et al. v. Grokster, Ltd., et al.*,
   243 F. Supp. 2d 1073 (C.D. Cal. 2003) ............................................................... 10

*Mossimo Holdings LLC v. Haralambus*,
   2015 WL 476298 (C.D. Cal. Feb. 3, 2015) ........................................................... 9

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ............................................................................. 10

*Toho-Towa Co., Ltd. v. Morgan Creek Prods., Inc.*,
    217 Cal. App. 4th 1096 (Cal. Ct. App. 2013) .......................................................... 9

**Statutes**

18 U.S.C.

   § 1591 ............................................................................................................ 5, 6, 7

   § 1595 ...................................................................................................... 4, 5, 6, 7, 8

47 U.S.C.

   § 230 ............................................................................................................ 1, 2, 3, 4

## I. MindGeek Is Not A Content Creator

Plaintiffs have not alleged any facts to support that MindGeek materially contributed to the alleged unlawfulness of the content at issue.[1] The content depicting Plaintiffs was illegal the moment it was created by third parties. Nothing MindGeek is alleged to have done with respect to the specific videos at issue contributed to the unlawfulness of the content.

In an effort to fabricate a "material contribution," Plaintiffs rely on allegations of general *content-neutral* activities and practices. MindGeek's alleged use of thumbnails, categories, tags, and advertisements to display third-party content is <u>not</u> unique to Plaintiffs' videos and does not offer a "special way of handling CSEM that is particularly permissive relative to other kinds of content." *Doe v. Reddit, Inc.*, 2021 WL 5860904, at *5 (C.D. Cal. Oct. 7, 2021). Plaintiffs concede this. *See, e.g.*, *Fleites* Second Amended Complaint ("SAC") ¶ 40 (MindGeek's formatters "review and modify" all content to "maximize attention" based on "MindGeek's SEO analysis").[2] Websites—including those featuring pornography—are entitled to Section 230 immunity where they create "advertisement[s]," "thumbnails, titles, tags, keywords, search terms, and categories indicative of CSAM," because these are "***standard, content-neutral tools***" "necessary to the display of *all* online content." *Doe v. WebGroup Czech Republic, a.s.,* Case No. 2:21-CV-02428-SPG-SK, Dkt. No. 205 at 2, 9 (C.D. Cal. Feb. 21, 2025).[3]

---

[1] The "material contribution" test "draws the line at the crucial distinction" between taking actions that are "necessary to the display of unwelcome and actionable content" and responsibility for "what makes the displayed content illegal or actionable." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263,1269 n.41 (9th Cir. 2016).

[2] *See also Fleites* SAC ¶ 119 (MindGeek "placed advertisements on all pages viewed by users, including those featuring CSAM"); ¶ 4 ("MindGeek shared and suggested with the user specific descriptions it had determined were most effective, including suggested titles, tags, and categories that MindGeek's search engine optimization analysis had determined drew the most attention to that particular type of content"); ¶¶ 106, 113 (MindGeek used its SEO technology to monetize "all content and traffic," both legal and illegal); ¶ 121 (advertisers, not MindGeek, "select[] the keyword" from a glossary around which to "build [ad] campaigns").

[3] *See also Reddit*, 2021 WL 5860904, at *5 (same where website "elevated" and "award[ed]" CSAM, because it "relate[d] to '***neutral tools***'"); *Doe v. Grindr Inc.*, 709 F. Supp. 3d 1047, 1053 (C.D. Cal. 2023) (website's functions, operations, and

- 1 -
SUPPLEMENTAL BRIEF BY MINDGEEK DEFENDANTS

Plaintiffs' conclusory and unsupported allegations of "collaboration" with third-party users would, if true, also be fully protected by Section 230 immunity. Last month, Judge Garnett dismissed—for the second and last time—a case pending in this district against one of the "most popular pornography website[s] in the world[.]" *WebGroup*, Dkt. No. 194 ("*WG* SAC") at ¶ 104, Dkt. No. 205 at 16; *Doe v. WebGroup Czech Republic, a.s.*, 2024 WL 3533426, at *11 (C.D. Cal. July 24, 2024). The *WebGroup* court granted defendants Section 230 immunity despite their alleged "active participa[tion]" in CSAM and sex trafficking (*WG* SAC ¶ 216(r)), alleging, as here:

- "…***Defendants reviewed, monitored, and approved the CSAM*** uploaded for monetization purposes" (*id.* ¶ 216(h));
- "***[Defendant] reviewed, monitored, and approved incoming videos***" (*id.* ¶ 123);
- "***Defendants used words indicative of CSAM to create and develop content*** on their websites" (*id.* ¶ 7); and
- "[Defendant] harnesses the data it compiles and analyzes to write scripts and specify details, including dialogue, positions, sex acts, and camera angles in those video shoots. … [Defendant]'s data analyses are used to ***determine, create, and place content, including CSAM, on its websites***" (*id.* ¶ 155).

Based on these allegations, there is no reasonable basis to infer that the *WebGroup* defendants' "review" of third-party content differed from that of

---

algorithms are ***editorial choices***, made to facilitate the communication of others); *Fyk v. Facebook, Inc.*, 808 F. App'x 597, 598 (9th Cir. 2020) ("republishing or disseminating third party content in 'essentially the same format' does not equal creation or development of content") (quoting *Kimzey*, 836 F.3d at 1270, 1271); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003) (the classification of user characteristics into discrete categories does not transform a website provider into a developer of content); *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1169 (9th Cir. 2008) ("A website operator who edits user-created content—such as by correcting spelling, removing obscenity or trimming for length—retains his immunity for any illegality in the user-created content, provided that the edits are unrelated to the illegality.").

MindGeek. The *WebGroup* defendants were afforded Section 230 immunity notwithstanding allegations that they were "responsible, in whole or in part, for developing and creating guidelines which permit, promote, and encourage sex trafficking and child pornography on its website" and "facilitate[d] and assist[ed] traffickers and child pornography purchasers through its account creation, ***advertising placement***, ***content organization***, ***tagging***, and other ***optimization***, ***content production***, and ***data mining***." *Id.* ¶ 163.

In reaching its decision, the *WebGroup* court rejected the contention that the following allegations constitute material contribution to the alleged illegality of conduct:

- "[Defendant] ***generated, originated, created, or otherwise edited tags, categories and/or keywords*** that are associated with content" (*id.* ¶¶ 129, 216(i));
- "The Defendants…***created,*** organized, facilitated dissemination, and ***developed key words, tags and/or categories*** to optimize and monetize images and videos that depict ***CSAM***" (*id.* ¶ 6);
- "***Tags, categories, and search suggestions that have been reviewed, categorized, created and/or edited*** by [Defendant] help users locate the type of video they are searching for, ***including CSAM***" (*id.* ¶ 130);
- "[Defendant]'s ***creation and continued compilation of 'related search terms' and tags*** directly facilitates pedophiles posting and finding the exact content they want: CSAM … In the context of [Defendant]'s adult website, ***its use of obvious child-focused terms, like 'toddler,'*** both encourages and contributes to illegal conduct" (*id.* ¶ 134)[4]; and
- "[Defendant] ***produces thumbnail images*** and preview videos for uploaded videos … [Defendant] does not permit uploaders to use custom

---
[4] *See also id.* ¶ 135 ("The creation and use of child-focused terms, categories, and tags…").

1  thumbnails –they **must use the thumbnails generated by [Defendant]**"

2  (*id.* ¶ 138).

3  Judge Garnett concluded that the *WebGroup* complaint was "devoid of any allegations demonstrating that Defendants employ their traditional website features in a manner that distinctly targets or proliferates the presence of CSAM, as compared to other users-uploaded content on their website platforms" or that the tools "encourage or elicit users to post CSAM, compared to users who post other content." *WebGroup,* Dkt. No. 205 at 13. Given the substantial similarity between the allegations at issue here and those in *WebGroup*, this Court should reach the same conclusion. "Finding in Plaintiff[s'] favor would also require departure from well-settled Ninth-Circuit precedent," *id.* at 9, because the types of content management tools and formatting functions that form the basis of Plaintiffs' allegations do not abrogate Section 230 immunity.

Lastly, if the abrogation of Section 230 immunity is based on unsupported allegations that a moderator should have known specific content constituted CSAM or MindGeek failed to do enough to prevent CSAM from being uploaded, then it is contrary to the exact purpose of the CDA—to encourage voluntary monitoring without fear of being held liable for every content posted by third parties. *Roommates*, 521 F.3d at 1175; *Carafano*, 339 F.3d at 1122. The inescapable consequence of denying Section 230 immunity to MindGeek would be to disincentivize all moderation efforts.

**II. Plaintiffs Have Not Sufficiently Alleged that MindGeek Knowingly Benefitted From, or Participated in a Violative Venture**

Focusing only on the factual content from which this Court permissibly may infer liability under 18 U.S.C. § 1595(a), Plaintiffs have set out nothing more than MindGeek's content-neutral revenue model and tools provided to all users uploading content to its tubesites. *See supra* at 1. These allegations, insufficient in the first instance to establish MindGeek's direct liability under the TVPRA, likewise fail to

plead MindGeek's "knowing benefit" from, or "participation" in, a venture which it knew, or should have known, committed a § 1591 violation which victimized Plaintiff.

Significantly, Plaintiffs repeatedly allege that the "venture" in question is MindGeek itself, SAC ¶¶ 8, 26, 245, 285-287, 294-300, 464, and specify that MindGeek's constructive knowledge of that venture's violations arises from their claim that MindGeek should have known that "its tubesites were rife with… trafficked and nonconsensual content." SAC ¶ 471. Similarly, the SAC alleges that MindGeek's "knowing benefit" from this venture was confined to advertising revenues generated from ***all*** of the various tubesites' web traffic." *Id.* at ¶¶ 119, 470. Four fatal flaws doom the § 1595(a) civil claims premised on these central allegations.

First, Plaintiffs fail to establish any actionable connection between MindGeek's alleged benefit and a trafficking venture. *See Does 1-6 v. Reddit*, 51 F.4th 1137, 1145 (9th Cir. 2022) (finding no knowing benefit where "plaintiffs have not alleged a connection between the child pornography posted on Reddit and the revenue Reddit generates"). As in *Reddit*, and as this Court found in its Tentative Decision at pp. 14 and 20, the benefit alleged here is content-neutral: ads are placed alongside ***all*** videos uploaded to MindGeek's tubesites, irrespective of whether their content is lawful. Revenues thusly generated from advertising across MindGeek's tubesites, even if partially derived from allegedly unlawful content, cannot constitute a knowing benefit from participation in a violative venture.[5]

Second, Plaintiffs' broad (and baseless) characterization of MindGeek itself as a trafficking "venture" is completely untethered from the underlying § 1591 violation

---

[5] *See Reddit*, 51 F.4th at 1145-46; *Doe v. Grindr, Inc.*, 2025 WL 517817, at *5 (9th Cir. Feb. 18, 2025) ("[T]he FAC does not plausibly allege that Grindr benefitted from the alleged sex trafficking beyond generally receiving advertising revenues."); *WebGroup*, Dkt. No. 205 at 15 ("Plaintiff does not allege that Defendants' revenue amasses from a targeted focus or knowing participation in CSAM development."); *see also Doe v. Reddit*, 2021 WL 5860904, at *5 (C.D. Cal. Oct. 7, 2021) (finding that "Reddit does not have a special way of handling CSEM that is particularly permissive relative to other kinds of content").

- 5 -
SUPPLEMENTAL BRIEF BY MINDGEEK DEFENDANTS

for which Plaintiffs as the "victims" seek redress under § 1595(a)—their own trafficking. *See* SAC ¶ 468 (alleging 21 acts of purported participation, none of which specify a connection to Plaintiff Fleites or her traffickers). Courts consistently have held, however, that "the term 'a venture' has… not been interpreted to mean 'any venture.'" *Doe (S.M.A.) v. Salesforce, Inc.*, 2024 WL 1337370, at *15 (N.D. Tex. March 28, 2024). Instead, an actionable venture must be "***the specific venture*** which violated § 1591 ***as to the plaintiff***."[6] *Id.* (emphasis in original) (collecting cases). Plaintiffs have not alleged that the purely intra-corporate MindGeek "venture" was responsible for their trafficking, and this Court found "no facts in the SAC that suggest" that MindGeek's "venture" had engaged in ***any*** act which directly violated § 1591. Tentative Decision at p. 13. Absent well-pled factual allegations that MindGeek's business was directly involved in Plaintiffs' trafficking, it is of no moment that MindGeek allegedly generated ad revenues from illicit content on its tubesites—even if that content included videos of Plaintiffs.

Third, Plaintiffs have advanced inconsistent arguments to meet § 1595's requirements: they claim they need not establish that MindGeek committed ***any*** overt act of trafficking to attach § 1595 liability, Opp. 3, 5, 15, yet simultaneously insist that MindGeek's general business operations alone constitute a "venture" which somehow ***did*** commit an underlying violation of § 1591 and whose revenues constitute the "knowing benefit" required by § 1595. SAC ¶¶ 450-53, Opp. 17. Implicitly acknowledging this inconsistency, Plaintiffs have moved the goalposts

---

[6] As a consequence, case law interpreting the language of § 1595 has emphasized that its constructive knowledge requirement must also relate to defendants' awareness of a plaintiff's specific trafficking. *See Salesforce*, 2024 WL 1337370, at *14-15 ("[T[he majority view appears to require that defendant[s] have constructive knowledge that the venture committed the specific § 1595 violation sued upon in the § 1595 civil action." (collecting cases)); *see also B.M. v. Wyndham Hotels And Resorts, Inc.*, 2020 WL 4368214, at *5-6 (N.D. Cal. Jul. 30, 2020) (finding allegations of hotel franchisor's general awareness of trafficking on their properties insufficient to establish constructive knowledge of the plaintiff's particular trafficking); *Edmonson v. Raniere*, 2024 WL 4334374, at *26 (E.D.N.Y. Sept. 27, 2024) (finding no constructive knowledge where defendant who branded plaintiffs as part of trafficking venture was not alleged to have reason to know that the brands were related to violations of Section 1591).

when defining the "venture" needed to establish MindGeek's "participation" under § 1595: for that purpose, the "venture" now ostensibly includes a "global network of sex traffickers" who used MindGeek's tubesites to disseminate violative content. *See, e.g.*, SAC ¶¶ 468(d)(l) and (m) (all devoid of any specific reference to Plaintiffs' traffickers). Here again, however, Plaintiffs concede that MindGeek's "participation" is confined to its provision of tools and services available to *all* users and designed only to maximize traffic and interactions with *all* uploaded content. SAC ¶¶ 38, 40, 468-469.

These allegations cannot establish a "continuous business relationship" or "tacit agreement" between MindGeek and any individual trafficker—let alone Plaintiffs' actual traffickers—sufficient to plead MindGeek's actionable "participation" as required by § 1595. The SAC, for example, offers no connection between MindGeek and the *specific venture* responsible for trafficking Plaintiff Fleites, alleging only that each of her traffickers or "those to whom he sold the videos regularly uploaded such videos to MindGeek's tubesites." SAC ¶¶ 448, 459. Without more, these allegations do not demonstrate that MindGeek had a "continuous business relationship" with the venture which violated § 1591 as to Plaintiff. *See Salesforce*, 2024 WL 1337370, at *15.

Fourth, even assuming the SAC identifies a violative "venture," it still fails to offer facts establishing MindGeek's "participation" in such venture because the tools and services provided by MindGeek fall far short of the "***tailored***," "***personalized***," and "***active, ongoing support***" of the direct traffickers deemed sufficient to attach beneficiary liability in other cases. *G.G. v. Salesforce, Inc.*, 76 F.4th 544, 550 (11th Cir. 2023) (emphasis added). Rather, all of the alleged tools and services were offered by MindGeek to ***all users***, and thus, are more akin to the "off-the-shelf software" and tools "only necessary to the display of *all* online content" which specifically have been deemed insufficient. *Salesforce*, 76 F.4th at 550; *WebGroup*, Dkt. No. 205 at 9 (internal quotation marks omitted); *see also Reddit*, 51 F.4th at 1145. Indeed, even

1  the non-website case law cited in the Tentative Decision, p. 8, recognizes that § 1595
2  requires a stronger connection between the beneficiary-defendant's relationship to the
3  venture and the actual trafficking activity committed. *See Acevedo v. eXp Realty,*
4  *LLC*, 713 F. Supp. 3d 740, 784 (C.D. Cal. 2024) (finding participation based on
5  allegations that each defendant was involved in the active recruitment of new agents
6  for the venture, including the trafficked plaintiffs); *B.M. v. Wyndham Hotels and*
7  *Resorts, Inc.*, 2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020) (finding allegations
8  sufficient to establish participation only as to hotel employees who directly worked
9  with traffickers, but finding insufficient connection between franchisor defendants
10 and trafficking alleged). Plaintiffs' broadly generalized allegations fail to plead this
11 requisite connection, and therefore fail to establish MindGeek's "participation" as
12 required by § 1595.

**III. An Alter Ego Theory *Always* Requires a Showing of Fraud or Injustice**

14 In their opening briefs, Defendants set forth the two-prong test that the Ninth
15 Circuit has long applied to analyze personal jurisdiction based on an "alter ego"
16 theory: Plaintiffs must plausibly allege "(1) that there is such unity of interest and
17 ownership that the separate personalities of [the entities] no longer exist, and
18 (2) failure to disregard [their separate identities] would result in fraud or injustice."
19 Dkt. No. 448-1 at 29 (quoting *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586,
20 591 (9th Cir. 1996)); *see also McGowan v. McLane*, 2024 WL 4907144, at *3 (C.D.
21 Cal. Nov. 5, 2024) (finding that failure to satisfy 'fraud or injustice' prong of the alter-
22 ego test was fatal to jurisdictional argument).

23 At the March 7, 2025 hearing, this Court issued its tentative ruling, finding that
24 "in the Ninth Circuit, the plaintiffs have the burden of establishing ***both*** prongs of the
25 test, which is not only unity of interest but ***also*** the fraud or public interest prong, and
26 I don't find that there is a showing on the second prong." March 7, 2025 Hearing
27 Transcript ("Hearing Tr.") 7:22-8:2 (emphasis added). In response to the tentative
28 ruling, Plaintiffs argued that, unlike the "traditional" alter ego jurisdiction test, the

- 8 -
SUPPLEMENTAL BRIEF BY MINDGEEK DEFENDANTS

"merger" or "attribution" or "single enterprise" theory does not require an abuse of the corporate form or any injustice as a result of an abuse of form. Hearing Tr. 46:21-23. Plaintiffs are wrong as a matter of law.

Whether in cases of liability or jurisdiction, for a court to take the "extraordinary" step of "disregard[ing] the corporate form," plaintiffs *must* satisfy the two-prong test to show that one defendant is the alter ego of the other. *See, e.g.*, *Gemcap Lending I, LLC v. Crop USA Ins. Agency, Inc.*, 2014 WL 12589333, at *9 (C.D. Cal. Feb. 14, 2014) (citations omitted). Despite Plaintiffs' assertion that the "merger single enterprise version" "doesn't require that there be any prejudice or injustice," Hearing Tr. 42:6-8, the case law relied upon by Plaintiffs makes plain that ***both*** fraud or injustice ***and*** unity of interest is ***always*** required to make out an alter ego theory. *See, e.g.*, *Mossimo Holdings LLC v. Haralambus*, 2015 WL 476298, at *2 n.1 (C.D. Cal. Feb. 3, 2015) (describing two-prong test for alter ego liability); *In re GGW Brands, LLC*, 504 B.R. 577, 622 (Bankr. C.D. Cal. 2013) (requiring second, "inequitable result," prong); *Kayne v. Ho*, 2012 WL 12878753, at *8 (C.D. Cal. Sept. 6, 2012) (same); *Toho-Towa Co., Ltd. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096, 1108 (Cal. Ct. App. 2013) (noting single enterprise test "include[es] the abuse or injustice requirement"); *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1249 (Cal. Ct. App. 1991) (requiring "inequitable result"). Plaintiffs' assertion to the contrary is disingenuous and misleading.

Plaintiffs' reliance on the "single enterprise" theory as a basis of jurisdiction is also misplaced. Tellingly, the "single enterprise" cases Plaintiffs rely upon do not even mention the word "jurisdiction." Rather, they apply a single enterprise theory to the question of liability.[7] *See generally*, *Mossimo Holdings*, 2015 WL 476298 (applying single enterprise theory of liability to breach of contract claim); *Toho-Towa Co.*, 217 Cal. App. 4th 1096 (same); *Las Palmas Assocs.*, 235 Cal. App. 3d 1220

---

[7] Indeed, courts in the Ninth Circuit "routinely reject" the "single enterprise" theory as a basis for personal jurisdiction. *Krantz v. Bloomberg, L.P.*, 2022 WL 2102111, at *5 (C.D. Cal. Jan. 19, 2022).

- 9 -
SUPPLEMENTAL BRIEF BY MINDGEEK DEFENDANTS

1  (applying single enterprise theory of liability to fraud claim). Plaintiffs' reliance on *Metro-Goldwyn-Mayer* and *Telectronics* to support an alternative "merger" or "attribution" theory is also flawed.[8] *See Metro-Goldwyn-Mayer Studios Inc. et al. v. Grokster, Ltd., et al.*, 243 F. Supp. 2d 1073 (C.D. Cal. 2003); *In re Telectronics Pacing Sys.*, 953 F. Supp. 909 (S.D. Ohio 1997). In those cases, the courts applied the concepts of "attribution," similar to an agency theory, and "merger" to find jurisdiction over out-of-state parent company defendants. Those holdings—from 2003 and 1997, respectively, and outliers even in their own time—have since been decisively overruled and are now inconsistent with Ninth Circuit law. "Before the Supreme Court's [2014] *Daimler* decision, [the Ninth] circuit permitted a plaintiff to pierce the corporate veil for jurisdictional purposes … under one of two separate tests: the 'agency' test and the 'alter ego' test." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015). Since *Daimler*, the Ninth Circuit has made clear that "the agency test is … no longer available … to establish jurisdiction." *Id*. *Daimler* **invalidated** the "agency" test, finding that it "would always yield a pro-jurisdiction answer" and that it "sweeps too broadly to comport with the requirements of due process."[9] *Id.* (citations omitted). "[T]he Court left intact this circuit's alter ego test" requiring plaintiffs to plausibly allege **both** unity of interest and **also** fraud or injustice. *Id.*

The MindGeek Defendants also join in Section II(C) of the Individual Defendants' Supplemental Filing, dated March 21, 2025, with respect to Plaintiffs' requests for additional jurisdictional discovery and an evidentiary hearing.

---

[8] Plaintiffs' merger / attribution theory is nothing more than Ohio's version of California's now-overruled "agency" theory. *See Doe v. Unocal Corp.*, 248 F.3d 915, 926 n.2 (9th Cir. 2001) (noting the discussion in the Ohio *Telectronics* case of "alter ego as merger and agency as attribution").

[9] *Telectronics*, a Southern District of Ohio case that is not binding precedent on this Court, was similarly displaced by *Daimler* and later by the Sixth Circuit. *See Lyngaas v. Curaden Ag*, 992 F. 3d 412 (6th Cir. 2021) (discussing multi-factor jurisdictional alter ego test requiring, *inter alia*, "unjust loss or injury").

- 10 -
SUPPLEMENTAL BRIEF BY MINDGEEK DEFENDANTS

| | |
|---|---|
| Dated: March 21, 2025 | Respectfully submitted, |
| | MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C. |
| | */s/ Peter A. Biagetti* |
| | Peter A. Biagetti |
| | Attorneys for Defendants MindGeek, S.à r.l., MG Freesites Ltd, MG Premium Ltd, MindGeek USA Incorporated, MG Global Entertainment Inc., and 9219-1568 Quebec Inc. |