# EXHIBIT 1

# [PORTIONS OF EXHIBIT FILED UNDER SEAL PURSUANT TO APPLICATION TO SEAL]

1  Esteban Morales (SBN 273948)
2  emorales@mintz.com
   MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
3  2049 Century Park East, Suite 300
   Los Angeles, CA 90067
4  Telephone: (310) 586-3200
   Facsimile: (310) 586-3202
5
6  Peter A. Biagetti (*Pro Hac Vice*)
   pabiagetti@mintz.com
7  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
   One Financial Center
8  Boston, MA 02111
   Telephone: (617) 542-6000
9  Facsimile:  (617) 542-2241

10 *Attorneys for Defendants MindGeek, S.à r.l*
   *(specially appearing), MG Freesites Ltd,*
11 *MG Premium Ltd, MindGeek USA*
   *Incorporated, MG Global Entertainment*
12 *Inc., and 9219-1568 Quebec Inc.*

13             **UNITED STATES DISTRICT COURT**

14             **CENTRAL DISTRICT OF CALIFORNIA**

15 SERENA FLEITES,                    Case No. 2:21-cv-04920-WLH-ADS

16              Plaintiff,            **MEMORANDUM OF POINTS AND**
                                      **AUTHORITIES IN SUPPORT OF**
17        v.                          **MOTION TO DISMISS OF**
                                      **DEFENDANTS MINDGEEK**
18 MINDGEEK S.À R.L., et al.,         **S.A R.L., MG FREESITES LTD,**
                                      **MINDGEEK USA**
19              Defendants.           **INCORPORATED, MG GLOBAL**
                                      **ENTERTAINMENT INC., AND**
20                                    **9219-1568 QUEBEC INC.**

21                                    **[UNREDACTED VERSION OF**
                                      **DOCUMENT PROPOSED TO BE**
22                                    **FILED UNDER SEAL]**

23                                    Hearing Date:    November 22, 2024
                                      Hearing Time:    1:30 p.m.
24                                    Courtroom:       9B
                                      Judge:           Hon. Wesley L. Hsu
25
                                      Complaint Filed: June 17, 2021
26
                                      Trial Date:      None Set
27

28

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE ARGUMENT ................................................................. 1

ARGUMENT ................................................................................................... 2

I.    PLAINTIFF'S CLAIMS ARE BARRED BY SECTION 230 ...................... 2

    A.    MindGeek Is Not A Content Creator ...................................... 3

    B.    On the Facts Alleged, FOSTA's Exception Does Not Apply ............... 8

        1.    Plaintiff Has Not Alleged That MindGeek Violated Section 1591(a)(1) ........................................................... 9

        2.    Plaintiff Has Not Alleged That MindGeek Violated Section 1591(a)(2) ......................................................... 10

II.    EVEN IF NOT BARRED BY § 230, PLAINTIFF'S CLAIMS INDEPENDENTLY FAIL ................................................................... 14

    A.    Plaintiff's Counts I, IV, and XV Fail to State Claims for Violation of Either Federal or State Sex-Trafficking Laws ..................................... 14

        1.    Plaintiff Has Not Sufficiently Alleged a Violation by MindGeek of the Federal Sex-Trafficking Laws (18 U.S.C. §§ 1591, 1594, 1595) ......................................... 15

        2.    Plaintiff's Count XV Equally Fails to State a Claim under Cal. Civ. Code § 52.5 ....................................................... 16

    B.    Plaintiff's Counts V and VI Fail to State a Claim for Receipt, Transport, or Distribution of Child Pornography (18 U.S.C. §§ 2252, 2252A, 2255) ............................................................................. 17

    C.    Plaintiff's Remaining Claims Do Not Meet the Respective Pleading Requirements. ................................................................................. 19

        1.    Because MindGeek Is Not the Publisher of the Videos, Plaintiff's Intentional Tort Claims Fail. ............................... 19

        2.    Plaintiff's Misappropriation of Likeness Claims (Cal. Civ. Code § 3344) Fail for Additional Reasons. ......................... 20

        3.    Plaintiff's Count XIII Fails to State a Claim for Negligence. ................................................................... 21

        4.    Plaintiff's Count XIV Fails to State a Claim for Unfair Competition (Cal. Bus. & Prof. Code §§ 17200 and 17500). ...................................................................... 22

        5.    Plaintiff Cannot State a Claim for Civil Conspiracy ............... 23

i

III.  THE COURT LACKS PERSONAL JURISDICTION OVER MINDGEEK S.À R.L. ...................................................................................................... 23

 A. Plaintiff Must Come Forward with Evidence Sufficient to Establish Her Disputed Jurisdictional Allegations. ............................................... 24

 B. Plaintiff's Jurisdictional Allegations as to MindGeek S.à r.l. Do Not Meet Her Burden. ........................................................................................ 25

  1. The Court Lacks Personal Jurisdiction over MindGeek S.à r.l. ......................................................................................................... 25

  2. MindGeek S.à r.l. Is Also Beyond the Territorial Reach of 18 U.S.C. § 1595 .......................................................................... 27

  3. Plaintiff Cannot Group-Plead Her Way to Jurisdiction ............. 29

 C. Plaintiff Cannot Impute Other Entities' Contacts to Establish Jurisdiction over MindGeek S.à r.l. ....................................................... 29

  1. Plaintiff Cannot Establish Any facts to Overcome the Presumption of Separateness. ..................................................... 31

   i. MindGeek S.à r.l. and the Other MindGeek Entities Are Typical Parent and Subsidiaries. ............................... 32

   ii. MindGeek S.à r.l.'s Relationship with RT Holding S.à r.l. Is Proper and in Any Event Irrelevant. ................ 35

  2. Plaintiff Cannot Establish That Failing to Disregard the Separateness Would Result in Fraud or Injustice. ..................... 38

CONCLUSION ........................................................................................................ 40

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Advanced Eng'g Sols. Co. v. Pers. Corner, LLC*,
    2021 WL 1502705 (C.D. Cal. Feb. 25, 2021) .................................................... 39

*AF Holdings, LLC v. Doe*,
    2012 WL 4747170 (N.D. Cal. Oct. 3, 2012) ..................................................... 21

*AMA Multimedia, LLC v. Wanat*,
    970 F.3d 1201 (9th Cir. 2020) ............................................................ 24, 25, 26

*AT&T v. Compagnie Bruxelles Lambert*,
    94 F.3d 586 (9th Cir. 1996) ............................................................................ 30

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
    2020 WL 4368214 (N.D. Cal. July 30, 2020) ........................................... 10, 14

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009) .......................................................................... 3

*Bauman v. DaimlerChrysler Corp.*,
    644 F.3d 909 (9th Cir. 2011) .......................................................................... 30

*Bristol-Myers Squibb Co. v. Super. Ct. (BMS)*,
    582 U.S. 255 (2017) .................................................................................. 24, 25

*Broidy Cap. Mgmt., LLC v. Qatar*,
    2018 WL 9943551 (C.D. Cal. Aug. 22, 2018) ............................................... 29

*Calder v. Jones*,
    465 U.S. 783 (1984) ....................................................................................... 29

*Callahan v. Ancestry.com Inc.*,
    2021 WL 783524 (N.D. Cal. Mar. 1, 2021) ...................................................... 8

*Caraccioli v. Facebook, Inc.*,
    700 F. App'x 588 (9th Cir. 2017).................................................................... 8

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) ................................................................*passim*

iii

*Chan v. Soc'y Expeditions, Inc.*,
    123 F.3d 1287 (9th Cir. 1997) .......................................................................... 30

*Corcoran v. CVS Health Corp.*,
    169 F. Supp. 3d 970 (N.D. Cal. 2016) .............................................................. 31

*Doe I v. Apple Inc.*,
    2021 WL 5774224 (D.D.C. Nov. 2, 2021) ................................................... 27, 28

*Doe v. Bates*,
    2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) ..................................................... 8

*Doe v. Grindr Inc.*,
    2023 WL 9066310 (C.D. Cal. Dec. 28, 2023) .................................................... 13

*Doe v. MySpace*,
    474 F. Supp. 2d 843 (W.D. Tex. 2007) .............................................................. 21

*Doe v. Reddit*,
    2021 WL 5860904 (C.D. Cal. Oct. 7, 2021) ................................................... 8, 22

*Doe v. Reddit, Inc.*,
    2021 WL 586094 (C.D. Cal. Oct. 7, 2021) ..................................................... 3, 21

*Doe v. Twitter, Inc.*,
    2023 WL 3220912 (9th Cir. May 3, 2023) ................................................... 2, 8, 9

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) ................................................................. 30, 31, 34

*Doe v. WebGroup Czech Republic, A.S.*,
    2024 WL 3533426 (C.D. Cal. July 24, 2024) ..................................................... 6

*Does v. Reddit, Inc.*,
    51 F.4th 1137 (9th Cir. 2022) .................................................................... *passim*

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ...................................................................... 6, 21

*Fair Housing Council of San Fernando Valley v.*
*Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) .................................................................... *passim*

MEMO IN SUPPORT OF MOTION TO DISMISS

*Fed. Agency of News LLC v. Facebook, Inc.*,
    432 F. Supp. 3d 1107 (N.D. Cal. 2020) ....................................................... 4

*Fyk v. Facebook, Inc.*,
    808 F. App'x 597 (9th Cir. 2020) ................................................................ 7

*G.O. Am. Shipping Co., Inc. v. China COSCO Shipping Corp. Ltd.*,
    2017 WL 6026959 (W.D. Wash. Dec. 5, 2017) ......................................... 36

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) ................................................................................... 17

*Goddard v. Google, Inc.*,
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) ....................................................... 6

*Gonzalez v. Google*,
    2 F.4th 871 (9th Cir. 2021) ..................................................................... 3, 5

*Gonzalez v. Google, Inc.*,
    282 F. Supp. 3d 1150 (N.D. Cal. Oct. 23, 2017) ...................................... 4, 6

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003) ........................................................ 31, 32, 33

*Holt v. Facebook, Inc.*,
    240 F. Supp. 3d 1021 (N.D. Cal. 2017) ..................................................... 22

*Iconlab, Inc. v. Bausch Health Cos.*,
    828 F. App'x 363 (9th Cir. 2020) ......................................................... 33, 39

*In re Facebook, Inc.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................................................... 19

*In re Hydroxycut Marketing and Sales Practices Litig.*,
    810 F. Supp. 2d 1100 (S.D. Cal. 2011) ..................................................... 39

*Indus. Bank of Korea v. ASI Corp.*,
    2018 WL 6164315 (C.D. Cal. Apr. 26, 2018) ........................................... 38

*J.B. v. G6 Hosp., LLC*,
    2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ............................................. 8

*J.C. v. Choice Hotels Int'l, Inc.*,
    2020 WL 3035794 (N.D. Cal. June 5, 2020) ............................................. 16

MEMO IN SUPPORT OF MOTION TO DISMISS

*Jackson v. Airbnb, Inc.,*
2022 WL 16753197 (C.D. Cal. Nov. 4, 2022) .................................... 13

*Johnston v. Irontown Hous. Co., Inc.,*
2014 WL 12531189 (S.D. Cal. Dec. 9, 2014) .................................... 31

*Joude v. WordPress Found.,*
2014 WL 3107441 (N.D. Cal. July 3, 2014) ...................................... 8

*Kimzey v. Yelp! Inc.,*
836 F.3d 1263 (9th Cir. 2016) ................................................... 3, 4, 7

*Kite Shipping LLC v. San Juan Nav. Corp.,*
2012 WL 6720624 (S.D. Cal. Dec. 26, 2012) .................................. 30

*Kramer Motors, Inc. v. British Leyland, Ltd.,*
628 F.2d 1175 (9th Cir. 1980) ................................................... 33, 38

*L.W. through Doe v. Snap Inc.,*
675 F. Supp. 3d 1087 (S.D. Cal. 2023) ....................................... 13, 14

*Lee v. Penthouse Int'l, Ltd.,*
1997 WL 33384309 (C.D. Cal. Mar. 19, 1997) ................................ 20

*Levitt v. Yelp! Inc.,*
765 F.3d 1123 (9th Cir. 2014) ..................................................... 10

*Marshall v. United States,*
2016 WL 11756786 (C.D. Cal. Jan. 4, 2016) .................................. 23

*Morrison v. Nat'l Aus. Bank Ltd.,*
561 U.S. 247 (2010) ............................................................. 27, 28

*Murphy v. Am. Gen. Life Ins. Co.,*
74 F. Supp. 3d 1267 (C.D. Cal. 2015) .......................................... 23

*Pacini v. Nationstar Mortg., LLC,*
2013 WL 2924441 (N.D. Cal. June 13, 2013) ................................. 19

*Payoda, Inc. v. Photon Infotech, Inc.,*
2015 WL 4593911 (N.D. Cal. July 30, 2015) .................................. 34

*Pennie v. Twitter, Inc.,*
281 F. Supp. 3d 874 (N.D. Cal. 2017) ........................................... 6

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) ..................................................................39, 40

*Planet Green Cartridges, Inc. v. Amazon.com, Inc.*,
   2023 WL 8943219 (C.D. Cal. Dec. 5, 2023) ..............................................7

*Ponomarenko v. Shapiro*,
   287 F. Supp. 3d 816 (N.D. Cal. 2018) .......................................................23

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) .............................................................*passim*

*Ratha v. Phatthana Seafood Co.*,
   2017 WL 8292922 (C.D. Cal. Dec. 21, 2017) ...........................................28

*Ratha v. Phatthana Seafood Co.*,
   35 F.4th 1159 (9th Cir. 2022) .............................................................27, 28

*RJR Nabisco, Inc. v. Eur. Cmty.*,
   579 U.S. 325 (2016) ..................................................................................27

*Shimmick Constr. Co./Obayashi Corp. v.
Officine Meccaniche Galletti-O.M.G. S.R.L.*,
   2014 WL 5847440 (S.D. Cal. Nov. 12, 2014) ...........................................39

*Smartstop Self Storage Operating P'ship L.P. v. Can-Dev, ULC*,
   2015 WL 13322430 (C.D. Cal. Oct. 26, 2015) ..........................................24

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ....................................................................24

*Tatung Co. v. Shu Tze Hsu*,
   217 F. Supp. 3d 1138 (C.D. Cal. 2016) .....................................................36

*Toomer v. United States*,
   615 F.3d 1233 (9th Cir. 2010) ...................................................................21

*UHS of Del., Inc. v. United Health Servs.*,
   2015 WL 539736 (M.D. Pa. Feb. 10, 2015) ..............................................36

*United States v. Myers*,
   355 F.3d 1040 (7th Cir. 2004) ...................................................................19

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ....................................................................18

*United States v. Ruiz-Castelo*,
   835 F. App'x 187 (9th Cir. 2020) ............................................................17

*United States v. Thompson*,
   141 F. Supp. 3d 188 (E.D.N.Y. 2015) ....................................................15

*United States v. Todd*,
   627 F.3d 329 (9th Cir. 2010) ....................................................................16

*United States v. X-Citement Video, Inc.*,
   513 U.S. 64 (1994) ....................................................................................17

*United States v. Yousef*,
   327 F.3d 56 (2d Cir. 2003) ......................................................................28

*Vacless Sys. v. Vac-Alert Ip Holdings, LLC*,
   2011 WL 13217924 (C.D. Cal. June 24, 2011) ......................................30

*Van Patten v. Vertical Fitness Grp., LLC*,
   847 F.3d 1037 (9th Cir. 2017) ................................................................22

*Whitney v. Wurtz*,
   2007 WL 1593221 (N.D. Cal. June 1, 2007) ........................................35

*Y.Y.G.M. SA v. Redbubble, Inc.*,
   75 F.4th 995 (9th Cir. 2023) ....................................................................18

*Yamashita v. LG Chem, Ltd.*,
   62 F.4th 496 (9th Cir. 2023) ..............................................................25, 26

*Yeager v. Cingular Wireless LLC*,
   673 F. Supp. 2d 1089 (E.D. Cal. 2009) ..................................................20

*Yost v. Nationstar Mortg., LLC*,
   2013 WL 4828590 (E.D. Cal. Sept. 9, 2013) ........................................29

*Youngevity Int'l, Inc. v. Innov8tive Nut., Inc.*,
   2024 WL 838707 (9th Cir. Feb. 28, 2024) ............................................33

MEMO IN SUPPORT OF MOTION TO DISMISS

**State Cases**

*Cross v. Facebook, Inc.*,
   14 Cal. App. 5th 190 (2017) ........................................................................ 20, 21

*Engalla v. Permanente Med. Grp., Inc.*,
   15 Cal. 4th 951 (1997) ..................................................................................... 22

*Loc. TV, LLC v. Super. Ct.*,
   3 Cal App. 5th 1 (2016) ............................................................................. 19, 20

*Moreno v. Hanford Sentinel, Inc.*,
   172 Cal. App. 4th 1125 (2009) ...................................................................... 19

*Smart Trike v. Piermont Prods. LLC*,
   2014 N.Y. Slip Op. 31306(U) (Sup. Ct. N.Y. Cty.) ...................................... 37

*State ex rel. Metz v. CCC Info. Servs., Inc.*,
   149 Cal. App. 4th 402 (2007) ........................................................................ 23

*Taus v. Loftus*,
   40 Cal. 4th 683 (2007) .................................................................................... 19

**Federal Statutes**

47 U.S.C.
   § 230 ..................................................................................... 3, 4, 8, 17

18 U.S.C.
   § 1591 ......................................................................................... *passim*
   §1594 ................................................................................................. 15
   §1595 ......................................................................................... *passim*
   § 1596 ........................................................................................ 27, 28
   § 2252 ................................................................................................ 17
   § 2255 .................................................................................................. 8
   § 2252A ....................................................................................... 17, 19
   § 2258 ................................................................................................ 19

**State Statutes**

Cal. Bus. & Prof. Code
   § 17200 .............................................................................................. 22
   § 17500 .............................................................................................. 22

Cal. Civ. Code

    § 52.5 .................................................................................................... 15, 16

    § 1708.85 ...................................................................................................... 20

    § 3344 .................................................................................................. 8, 19, 20

Cal. Pen. Code

    § 236.1 .................................................................................................... 15, 16

**Rules**

Fed. R. Civ. P.

    9(b) ............................................................................................................... 22

    12(b)(2) ........................................................................................................ 24

    12(b)(6) ........................................................................................................ 13

**Other Authorities**

Restatement (Second) of Torts § 652C ................................................................ 20

## SUMMARY OF THE ARGUMENT

Plaintiff alleges that, when she was 16 years old, an older man whom she was dating "manipulated" her "into creating sexually explicit videos of herself," and that, "to fund their joint heroin habits," he sold those videos "on Craigslist and the Kik app." Second Amended Complaint ("SAC") ¶ 457. The man and "those to whom he sold the videos" then "regularly uploaded" them to Pornhub and other unidentified websites allegedly owned and operated by MindGeek.[1] *Id*. ¶¶ 458-59. And this was not the first time Plaintiff had been so manipulated. Years earlier, her high school boyfriend had "coerced" and "induced" her to make "a nude, sexually explicit video" which he sought "to post . . . to Pornhub and disseminate it thereby to the school community." *Id*. ¶ 448. MindGeek removed the video at Plaintiff's request, but in the three to four weeks between request and removal, "it was downloaded countless times and reuploaded by different users and with different titles." *Id*. ¶¶ 451-52.

Plaintiff then brought this action, alleging that MindGeek "transferred" both videos "to users downloading them, and to its platform," and that MindGeek "did nothing to police and report such content to authorities." *Id*. ¶ 462. Only 14 of the SAC's 594 paragraphs, however, allege conduct directed specifically at Plaintiff, and read closely, those paragraphs admit that MindGeek played no role in the creation, expansion or enhancement of the content filmed, titled, sold, and uploaded by Plaintiff's former boyfriends. *Id*. ¶¶ 448-62. As telling, the SAC's other 580 paragraphs offer only pejorative conclusions about MindGeek's overarching business practices, allegedly as part of what Plaintiff brands the most "dominant, monopolistic online pornography company in the world." *Id*. ¶ 2. MindGeek

---

[1]    Defendants MindGeek S.à r.l, MG Freesites Ltd ("Freesites"), MindGeek USA Incorporated, MG Premium Ltd, MG Global Entertainment Inc., and 9219-5618 Quebec Inc. ("9219") dispute Plaintiff's allegations that they all own or operate websites, or that they collectively have acted as impermissibly alleged in the SAC. Solely for the purpose of economy, however, Defendants will refer to these entities in this Memorandum as "MindGeek."

contests those accusations, but even if assumed to be true, they cannot overcome what the Ninth Circuit recently reaffirmed is "'broad immunity' for claims against interactive computer service providers 'for publishing content provided primarily by third parties,'" *Doe v. Twitter, Inc.*, 2023 WL 3220912, at *1 (9th Cir. May 3, 2023); an immunity which adheres even if that provider operates "a platform where it is easy to share child pornography, highlights [subcategories] that feature child pornography to sell advertising on those pages . . . and fails to remove child pornography even when users report it . . . ," *Does v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022). On that primary and preclusive ground, as well as the several substantive and jurisdictional deficiencies outlined below, all counts of the SAC should be dismissed with prejudice.

<u>**ARGUMENT**</u>

**I.    PLAINTIFF'S CLAIMS ARE BARRED BY SECTION 230**

"Section 230 of the CDA immunizes providers of interactive computer services against liability arising from content created by third parties. . . ." *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008), citing 47 U.S.C. §230(c)). It embodies "a policy choice . . . not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (citation omitted). Given that Congressional intent, the Ninth Circuit has made clear that close cases "must be resolved in favor of immunity . . . ," such that immunity will be lost only when "it is very clear that the website directly participates in developing the alleged illegality." *Roommates*, 521 F.3d at 1174. Conversely, in cases of "development [of content] by inference," the statute "must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Id.* at 1174-75.

It is equally well-settled that the protection conferred by section 230 "precludes liability for '(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat . . . as a publisher or speaker (3) of information provided by another information content provider.'" *Gonzalez v. Google*, 2 F.4th 871, 891 (9th Cir. 2021), *rev'd on other grounds sub nom. Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023). Plaintiff's claims against MindGeek meet each of these elements. As to the first, "the most common interactive computer services are websites." *Roommates*, 521 F.3d at 1162 n.6. As to the second, Plaintiff targets MindGeek's alleged "publication," *i.e.*, "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009). Specifically, "the decision to permit users to upload content to a website is a quintessential function of a publisher under § 230." *Doe v. Reddit, Inc.*, 2021 WL 586094, at *3 (C.D. Cal. Oct. 7, 2021), *aff'd sub nom. Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137 (9th Cir. 2022). And as to the third element, Plaintiff accuses MindGeek of "'activity that can be boiled down to deciding whether to exclude material that third parties seek to post online.'" *Barnes*, 570 F.3d at 1103 (quoting *Roommates*, 521 F.3d at 1170-71).

## A.    MindGeek Is Not A Content Creator

Section 230 immunizes a website from liability only if the content at issue originally was "information provided by another information content provider." 47 U.S.C. § 230(c)(1); *see Reddit*, 51 F.4th at 1141. An "information content provider," however, is narrowly defined as one "responsible, in whole or in part, for the *creation or development* of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3) (emphasis added). Therefore, a website loses section 230 immunity only if it "creat[es] or develop[s]" content "by making a material contribution to [its] creation or development." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269 (9th Cir. 2016). And importantly, a "material contribution" does

not refer to "merely ... augmenting the content generally, but to materially contributing *to its alleged unlawfulness*." *Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150, 1168 (N.D. Cal. Oct. 23, 2017) (citing *Roommates*, 521 F.3d at 1167-68) (emphasis added). Thus, a "website does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online." *Kimzey*, 836 F.3d at 1270 (citation omitted). Instead, the website must be shown to have taken "responsibility for what makes the displayed content [itself] illegal or actionable." *Id.* at 1269 n.4 (internal quotations omitted). If a website, for example, requires users to input unlawful content as a prerequisite to using its services, the website is deemed responsible for developing that content and loses section 230(c)(1) immunity. *Roommates*, 521 F.3d at 1169-70.

But even in these limited circumstances in which a website operator "could be considered an information content provider," section 230 "still bar[s] [a plaintiff's] claims unless [the website operator] created or developed the *particular [content] at issue*." *Carafano*, 339 F.3d at 1125 (emphasis added); *accord Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1118 (N.D. Cal. 2020) (section 230 barred plaintiff's claims that Facebook "created other content," not the content at issue). Here, Plaintiff's sparse—or at times, conspicuously absent—allegations of fact effectively concede that MindGeek was not involved in the creation or development of the two videos in which her boyfriends manipulated, coerced, or induced her participation:

*First*, MindGeek indisputably had no role in filming, producing, developing, or editing any of Plaintiff's videos. If Plaintiff was underage in the videos uploaded to Pornhub, those videos were illegal the moment they were created. Nothing MindGeek did "enhance[d]" their unlawfulness. *Kimzey*, 836 F.3d at 1270. Where content is "created and developed entirely by the malevolent user, without prompting

or help from the website operator," even where the website provided "neutral tools, which the anonymous dastard used to publish" the unlawful content, the website cannot be transformed into a creator or developer. *Roommates*, 521 F.3d at 1171-72 (comparing the conduct in *Carafano* and *Roommates*). Any alleged failure to review the user-created content and ensure it was not illegal is "precisely the kind of activity for which Congress intended to grant absolution with the passage of section 230." *Id.* (discussing *Carafano*).

*Second*, Plaintiff has not alleged that MindGeek encouraged, much less required, her ex-boyfriends or any third party to post any illegal content. Indeed, Plaintiff admits that MindGeek's Terms of Service *prohibit* the posting of children. *See* SAC ¶ 47. That prohibition alone distinguishes this case from *Roommates* and its progeny, where websites "encouraged" or "required" the posting of illegal content. 521 F.3d at 1165; *see Google*, 2 F.4th at 895 (rejecting argument that Google was responsible for developing ISIS-related content when its "policies expressly prohibited the content at issue").

*Third*, MindGeek's abridging of third-party videos into alleged "thumbnails" (*see* SAC ¶ 468) does not make it a content creator. "A website operator who edits user-created content—such as by . . . trimming for length—retains his immunity for any illegality in the user-created content, provided that the edits are unrelated to the illegality." *Roommates*, 521 F.3d at 1169. Creating a thumbnail is "trimming for length," and did not make the images any more unlawful than they allegedly were when posted by the user-creators.

*Fourth*, MindGeek does not create content simply by "maintaining a search and tagging system" and enabling "playlists, titles, tags, [or] buttons" that direct viewers to various types of content. SAC ¶ 468. "[P]roviding *neutral* tools to carry out what may be unlawful or illicit searches does not amount to 'development' for purposes of the immunity exception." *Roommates*, 521 F.3d at 1169. That is so even

when a "a particular tool facilitate[s] the expression of information" and the "service provider *knows* that third parties are using such tools to create illegal content." *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1197-98 (N.D. Cal. 2009) (emphasis in original) (internal quotations omitted).  Indeed, the descriptors that MindGeek offers to content creators are identical to the "titles, tags, keywords, search terms, and categories"—all of which allegedly were "indicative of CSAM"—that the defendants allegedly made available to users in *Doe v. WebGroup Czech Republic, A.S.*, 2024 WL 3533426, at *8 (C.D. Cal. July 24, 2024).  Yet the District Court in *WebGroup* still applied section 230 to preclude claims based on these allegations because such tools are "either a standard publishing function or a neutral tool made available to all third parties seeking to upload material onto Defendants' websites." *Id.*  Plaintiff "cannot plead around section 230 immunity by framing these website features as content." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019).  Thus, in circumstances such as those alleged here, MindGeek's "promoting [of] the use of [neutral] tools for unlawful purposes . . . is fully protected by CDA immunity." *Roommates*, 521 F.3d at 1174 n.37.

*Fifth*, MindGeek does not create content by allegedly displaying videos of Plaintiff "alongside advertisements that MindGeek had placed."  SAC ¶ 450.  A service provider's use of a targeted ad algorithm is protected when there are no facts that would "suggest that [the] ad algorithm is anything but content neutral."  *See Gonzalez*, 282 F. Supp. 3d at 1168-70.  Plaintiff acknowledges that MindGeek displays advertisements based solely on algorithms that analyze data generated solely by users.  SAC ¶¶ 88, 90.  Any claim premised on this user-generated placement of advertising is therefore barred by section 230.  *See Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874, 890 (N.D. Cal. 2017) (section 230 barred claim premised on Twitter's use of targeted ads that were allegedly "based on what is known about the viewer and what the viewer is looking at").

MEMO IN SUPPORT OF MOTION TO DISMISS

*Sixth*, Plaintiff's allegation that MindGeek "reupload[s]" (SAC ¶ 468) some content from Pornhub to its other websites does not make it a content creator. That is because "republishing or disseminating third party content in essentially the same format does not equal creation or development of content." *Fyk v. Facebook, Inc.*, 808 F. App'x 597, 598 (9th Cir. 2020) (internal quotation marks omitted). Such "neutral and generic actions, even if they spread the reach of some of the offending material, do not defeat Section 230 immunity." *Planet Green Cartridges, Inc. v. Amazon.com, Inc.*, 2023 WL 8943219, at *6 (C.D. Cal. Dec. 5, 2023); *cf.* SAC ¶ 468 (alleging MindGeek reuploads "all effective content" to other MindGeek sites).[2]

*Finally*, while the SAC is rife with allegations about MindGeek creating content *other than* the videos depicting Plaintiff, *see, e.g.*, SAC ¶¶ 80-100, 158-85, and about that non-Plaintiff content's alleged relationship with "traffickers," *see, e.g.*, *id.* ¶ 468, none of those allegations are relevant; the only question of legal consequence is whether MindGeek "created or developed *the particular [content] at issue*," *i.e.*, the videos procured, created, and uploaded by Plaintiff's boyfriends and others to whom the videos were sold, *Carafano*, 339 F.3d at 1125 (emphasis added).

In sum, though her complaint has been twice amended, Plaintiff still offers no facts to fill these fatal gaps in her core theory of liability. Though she presumes that MindGeek "went far beyond the neutral provision of a platform to post content," she then points only to alleged "messaging" which MindGeek sought only "to add to *the*

---

[2]    Plaintiff's further contention that MindGeek "falsely portrayed" this content "as posted by a user other than MindGeek" is implausible on its face. *See* SAC ¶ 468. In *Kimzey v. Yelp! Inc.*, the plaintiff claimed that the defendant "adopted" content from another website, "transformed" it "into its own stylized promotions," and reposted it under the aegis of a third party. 836 F.3d at 1268. The Court found it had "no trouble . . . concluding that threadbare allegations of fabrication of statements are implausible on their face and are insufficient to avoid immunity under the CDA." *Id.* "Were it otherwise, CDA immunity could be avoided simply by reciting a common line that user-generated statements are not what they say they are." *Id.* at 1268-69. Plaintiff's allegations of subterfuge are an attempt at the same circumvention expressly rejected in *Kimzey*. *Compare* SAC ¶ 468, *with Kimzey* 836 F.3d at 1263.

*user's* particular type of image content," and even then, MindGeek allegedly did so only to "enhance its viewership"—*not* to enhance the originally uploaded videos' content. SAC ¶ 5. Given this conceded and crucial distinction, MindGeek is not the "creator" of the videos at issue. Plaintiff's claims are therefore barred by section 230(c)(1).[3]

## B.     On the Facts Alleged, FOSTA's Exception Does Not Apply

The Fight Online Sex Trafficking Act ("FOSTA") offers a narrow exception to section 230 immunity by providing, "Nothing in [§ 230] . . . shall be construed to impair or limit . . . any claim in a civil action brought under section 1595 of title 18 . . . *if the conduct underlying the claim constitutes a violation of section 1591 of that title*." 47 U.S.C. § 230(e)(5)(A) (emphasis added). But on the facts alleged, Plaintiff cannot invoke FOSTA's exception to salvage her Count I for alleged violation of the federal criminal sex trafficking statute, 18 U.S.C. §§ 1591, 1595. As the Ninth Circuit recently required, "a website's *own conduct* must violate 18 U.S.C. § 1591 for the immunity exception to apply." *Reddit*, 51 F.4th at 1143 (emphasis added).[4] Two provisions of section 1591 are relevant here, but measured against the *Reddit* panel's "own conduct" standard, Plaintiff fails to allege that MindGeek violated either provision.

---

[3]     *See Carafano*, 339 F.3d at 1125 (section 230 barred invasion-of-privacy claim); *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) (section 230 barred claims for public disclosure of private facts, intrusion upon seclusion, and false light); *Joude v. WordPress Found.*, 2014 WL 3107441, at *6 (N.D. Cal. July 3, 2014) (section 230 barred claim for common-law misappropriation of likeness); *Callahan v. Ancestry.com Inc.*, 2021 WL 783524, at *1 (N.D. Cal. Mar. 1, 2021) (section 230 barred claim under Cal. Civ. Code § 3344 for misappropriation of likeness); *Doe v. Reddit*, 2021 WL 5860904, at *9 (C.D. Cal. Oct. 7, 2021) (section 230 barred claims for violation of Cal. Civ. Code § 1708.85, 18 U.S.C. §§ 1591, 1595, and 18 U.S.C. §§ 2252A, 2255); *Twitter*, 2023 WL 3220912, at *2 (similar); *J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *7 (N.D. Cal. Aug. 20, 2020) (similar); *Doe v. Bates*, 2006 WL 3813758, at *18-20 (E.D. Tex. Dec. 27, 2006) (similar).

[4]     The Ninth Circuit also acknowledged that the limitations of FOSTA allow "only a limited capacity to accomplish its original goal of allowing trafficking victims to hold websites accountable." *Id.* at 1145. "However, this is a flaw, or perhaps a feature, that Congress wrote into the statute, and is not one we can rewrite by judicial fiat." *Id.*

---

8

### 1. Plaintiff Has Not Alleged That MindGeek Violated Section 1591(a)(1)

Section 1591(a)(1) ("direct liability") imposes criminal liability on anyone who "knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . knowing . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a)(1). A "commercial sex act" is "any sex act, on account of which anything of value is given to or received by any person." *Id.* § 1591(e)(3). The SAC offers not a single fact suggesting that MindGeek "recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited" Plaintiff, or in any other way "caused" her "to engage in a commercial sex act." *See id.* § 1591(a)(1). To the contrary, she specifically alleges that her *ex-boyfriends* coerced, induced, or manipulated her to make illegal pornographic videos, that *one of them* posted her video on a MindGeek site (SAC ¶ 448), that another sold her videos on two online platforms *other than* MindGeek's, and that *some unidentified party or parties* then uploaded some of those videos to a MindGeek site (SAC ¶¶ 457-58). But again, those parties' allegedly unlawful conduct cannot be imputed to MindGeek: "[A] website's own conduct must violate 18 U.S.C. § 1591 for the immunity exception to apply" *See Reddit*, 51 F.4th at 1143).

Further, MindGeek's alleged conduct was confined to uploaded *depictions* of Plaintiff; MindGeek took no actions upon *the person* of Plaintiff herself. *See* SAC ¶ 467; *see also* SAC ¶¶ 468-69. Plaintiff's own allegations implicitly concede that she is unable to prove that MindGeek acted upon her person: she alleges only that MindGeek "recruit[ed], entice[d], harbor[ed], transport[ed], provide[d], obtain[ed], advertise[d], maintain[ed], patronize[d], or solicit[ed] *videos and images depicting* CSAM." *Id.* ¶ 467 (emphasis added). Such conduct, even if proven, does not constitute direct sex trafficking. *See, e.g.*, *Twitter*, 2023 WL 3220912, at *2 ("[T]he

district court correctly concluded that Twitter's alleged conduct relates only to CSAM depicting Plaintiffs, not to their persons (as required to implicate a direct violation of the TVPRA)."). Plaintiff has therefore not alleged that MindGeek violated section 1591(a)(1), and this Court should not credit Plaintiff's attempt to rewrite that section to include "recruit[ing]" or "entic[ing]" video content.

### 2. Plaintiff Has Not Alleged That MindGeek Violated Section 1591(a)(2)

Section 1591(a)(2) ("beneficiary liability") imposes criminal liability on anyone who "knowingly . . . benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of [§ 1591(a)(1)]." 18 U.S.C. § 1591(a)(2). "'[P]articipation in a venture' means knowingly assisting, supporting, or facilitating a violation of [section 1591(a)(1)]." *Id.* § 1591(e)(4). Importantly, then, a violation of section 1591(a)(2) requires knowing participation in a trafficking venture involving a *particular victim*. *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020) (complaint dismissed as "devoid of any facts linking these Defendants (Wyndham and Choice) to the sex trafficking of this Plaintiff (B.M.)"); *cf. Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135-36 (9th Cir. 2014) (dismissing claim for failure to "connect[] general allegations to the specific [content] complained of"). Moreover, as to that particular victim, "*the defendant* must have actually '*engaged in some aspect of the sex trafficking.*'" *Reddit*, 51 F.4th at 1145 (emphasis added). "In a sex trafficking beneficiary suit *against a defendant-website*, the most important component is the *defendant-website's* own conduct—its 'participation in the venture.'" *Id.* at 1142. "A complaint against a website that merely alleges trafficking by the website's users—without the participation of the website—would not survive." *Id.*

The facts of *Reddit* are particularly instructive. Plaintiffs were the parents of minors who alleged that Reddit hosted "small, searchable forums" (called "subreddits") that "openly and explicitly marketed themselves as fora for child

MEMO IN SUPPORT OF MOTION TO DISMISS

pornography, with names like /r/BestofYoungNSFW, r/teensdirtie, /r/TeenBeauties, and /r/YoungGirlsGoneWild." *Id.* at 1139. Plaintiffs alleged that, "after discovering explicit images or videos of their children (or themselves) posted to one or more subreddits, they immediately reported the content to the subreddit moderators and to Reddit employees." *Id.* "In response, Reddit sometimes—though not always— removed the content, only for it to be reposted shortly afterward." *Id.* "This cycle repeated again and again across different subreddits." *Id.* "Collectively, the plaintiffs contacted Reddit hundreds of times to report the explicit posts." *Id.* Plaintiffs further alleged that the "presence of child pornography on Reddit is blatant, but Reddit has done little to remove the unlawful content or prevent it from being posted, because it drives user traffic and revenue." *Id.* According to those plaintiffs, "Reddit earns substantial advertising revenue from subreddits that feature child pornography because they generate controversy and attract viewers," and advertisers are "encourage[d]" "to buy ad space" on pages dedicated to child pornography because those pages are some of the most popular. *Id.* at 1139-40. Further still, plaintiffs maintained that "Reddit financially benefits from openly hosting child pornography." *Id.* at 1140. Finally, plaintiffs claimed that Reddit did not adequately train its moderators to screen and remove unlawful content and that "some moderators post child pornography themselves." *Id.* at 1140. Plaintiffs therefore brought claims under 18 U.S.C. §§ 1591(a)(2) and 1595, "claiming that Reddit is liable as a beneficiary of child sex trafficking." *Id.*

The *Reddit* panel confirmed that even these fulsome allegations failed to show that the subject website had violated § 1591(a)(2). At most, the allegations "suggest[ed] only that Reddit 'turned a blind eye' to the unlawful content posted on its platform, not that it actively participated in sex trafficking." *Id.* at 1145. Moreover, "the plaintiffs ha[d] not alleged a connection between the child pornography posted on Reddit and the revenue Reddit generates, other than the fact

that Reddit makes money from advertising on all popular subreddits." *Id.* at 1145-46. On these facts, the Ninth Circuit concluded, it is not enough if a website merely "provides a platform where it is easy to share child pornography" or "fails to remove child pornography even when users report it," because *"[t]he statute does not target those that merely 'turn a blind eye to the source of their [revenue].'" Id.* at 1145 (emphasis added).

Here, the SAC's flawed allegations substantively match those deemed deficient in *Reddit*. As in *Reddit*, Plaintiff alleges that MindGeek "enabl[ed] videos to be uploaded to its tubesites without proper verification and moderation," (SAC ¶ 468), in order to "maximize revenues" (SAC ¶ 79) despite the fact that they "knew or should have known that their tubesites were rife with CSAM, abuse, rape, trafficked and other nonconsensual content" (SAC ¶ 471); *cf. Reddit*, 51 F.4th at 1139 ("The plaintiffs allege that the presence of child pornography on Reddit is blatant, but Reddit has done little to remove the unlawful content or prevent it from being posted, because it drives user traffic and revenue."). As in *Reddit*, Plaintiff alleges that MindGeek "profits from subscriptions and almost three billion ad impressions each day, much of which is attributable to CSAM and other illegal content." SAC ¶ 470; *cf. Reddit*, 51 F.4th at 1139 ("Plaintiffs allege that Reddit earns substantial advertising revenue from subreddits that feature child pornography."). As in *Reddit*, Plaintiff alleges that MindGeek was slow to act in removing explicit videos of her from its sites after they were reported. SAC ¶¶ 451, 453, 515; *cf. Reddit*, 51 F.4th at 1139 (noting that Reddit had the ability to remove "entire" subreddits with offending conduct but "Reddit sometimes—though not always—removed the content" of which the plaintiffs complained). And as in *Reddit*, Plaintiff alleges that MindGeek failed to "adopt verification and modification techniques" which could have prevented the uploading of Plaintiff's videos. SAC ¶ 471(e); *cf. Reddit*, 51 F.4th at 1140 ("Reddit ha[d] not implemented basic security measures, such as age

MEMO IN SUPPORT OF MOTION TO DISMISS

verification or IP-address tracking to ban repeat offenders, and it delayed adoption of automated image-recognition technologies like 'PhotoDNA,' which can detect child pornography and prevent it from being posted.").

MindGeek strongly disputes each of Plaintiff's allegations, but even if indulged at the Rule 12(b)(6) stage, they fail to show that MindGeek "engaged in some aspect of [any] sex trafficking." *Id.* at 1145 (internal quotations omitted).  At most, the allegations suggest that MindGeek did not do enough to "police and report such content to authorities."  SAC ¶¶ 462, 471.  But again, "turn[ing] a blind eye" to content is not "active[] participat[ion] in sex trafficking." *Reddit*, 51 F.4th at 1145; *see also L.W. through Doe v. Snap Inc.*, 675 F. Supp. 3d 1087, 1100 (S.D. Cal. 2023) ("[F]ailing to efficiently monitor or police user-generated content is not punishable under Section 1591."); *Jackson v. Airbnb, Inc.*, 2022 WL 16753197, at *2 (C.D. Cal. Nov. 4, 2022) ("The accusation here is fundamentally that Snap should have monitored and curbed third-party content . . . . *This is exactly the sort of case for which Section 230 provides an impenetrable shield*." (emphasis added)).[5]

Plaintiff's ancillary theories, purporting to substantiate her allegation that MindGeek engaged in sex trafficking by somehow "target[ing]" Plaintiff, fare no better.  SAC ¶ 468.  She claims, for example, that MindGeek engaged in sex trafficking by "monetizing" her content, SAC ¶¶ 468(q)-(s), but just as in *Reddit*, she fails to allege "a connection between the child pornography posted on [MindGeek] and the revenue [MindGeek] generates, other than the fact that [MindGeek] makes money from advertising" generally.  *Reddit*, 51 F.4th at 1145; *see also Doe v. Grindr Inc.*, 2023 WL 9066310, at *7 (C.D. Cal. Dec. 28, 2023) ("[T]hat [Grindr] derived

---

[5] By illustrative contrast, plaintiffs who have alleged beneficiary liability for sex trafficking "have charged defendants with far more active forms of participation"—such as "lur[ing] victims 'through the promise of . . . deals,' provid[ing] [the perpetrator with] 'medications he required to perform sexual acts,' and 'clean[ing] up after his sexual assaults.'" *Reddit*, 51 F.4th at 1145 (quoting *Canosa v. Ziff*, 2019 WL 498865, at *23-24 (S.D.N.Y. Jan. 28, 2019)).  No such allegations are even hinted at here.

revenue 'from all users through the sale of ads' . . . does not establish that Grindr violated § 1591"). She further claims that MindGeek engaged in sex trafficking by providing neutral tools to users and advertisers, such as by offering "thumbnails" of users' uploaded videos, or by adding users' videos to certain playlists. SAC ¶ 468. But these activities, even as alleged, added nothing to the illegal content of the original videos; instead, all of the alleged activities were simply "intertwined with Defendants' publishing activities." *Snap Inc.*, 675 F. Supp. 3d at 1100. As such, they suggest at most that MindGeek "provides a platform where it is easy to share child pornography." *Reddit*, 51 F.4th at 1145. But as demonstrated *supra*, providing such a platform does not make MindGeek a content creator.

Finally, Plaintiff's theories consistently fail to allege any connection between MindGeek's purported conduct and the specific trafficking of Plaintiff. She nowhere alleges that MindGeek "commission[ed], produc[ed], or b[ought]" her videos. *Cf.* SAC ¶ 468(a). And though she broadly accuses MindGeek of providing unspecified "guidance" and "services" to an ostensibly "global network of sex traffickers," SAC ¶ 468(l)-(m), none of her allegations connects MindGeek's conduct to the actual trafficking of the person of Plaintiff—another singly fatal flaw in her claims. *See B.M.*, 2020 WL 4368214, at *5 (dismissing complaint "devoid of facts" linking defendants to the trafficking of the plaintiff).

## II.    EVEN IF NOT BARRED BY § 230, PLAINTIFF'S CLAIMS INDEPENDENTLY FAIL

### A.    Plaintiff's Counts I, IV, and XV Fail to State Claims for Violation of Either Federal or State Sex-Trafficking Laws

Under 18 U.S.C. § 1595(a), "[a]n individual who is a victim of a violation of this chapter [*i.e.*, Chapter 77] may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." Likewise,

Cal. Civ. Code § 52.5 creates a civil cause of action for victims of sex trafficking under Cal. Pen. Code § 236.1.  Plaintiff has failed to state a claim under either provision.  As demonstrated *supra* at Section I.B and further explained below, Plaintiff has failed to allege facts showing that she was a victim of a violation of federal section 1591, the statute upon which her sex-trafficking claims rely, and has likewise failed to allege that MindGeek knowingly benefitted from participating in a venture that it knew or should have known had committed such a violation specifically as to Plaintiff.  Nor has she sufficiently made those allegations in the context of her companion state-law claims.  On these additional grounds, Counts I, IV, and XV of the SAC must be dismissed.

### 1. Plaintiff Has Not Sufficiently Alleged a Violation by MindGeek of the Federal Sex-Trafficking Laws (18 U.S.C. §§ 1591, 1594, 1595)

Section 1591 criminalizes child sex trafficking:  "Whoever knowingly . . . in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . knowing . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."  18 U.S.C. § 1591(a).  The statute's animating purpose arose from Congress's concerns that "[v]ictims are often forced through physical violence to engage in sex acts or perform slavery-like labor," P.L. 106-386, at § 102(b)(6), and that "victims were being lured 'away from family and friends, religious institutions, and other sources of protection and support,'" *United States v. Thompson*, 141 F. Supp. 3d 188, 199 (E.D.N.Y. 2015) (quoting P.L. 106-386, at § 102(b)(5)).

Against this backdrop, section 1591 must be read to "aim at those targets," *not* to apply broadly to "a wide range of social, familial, charitable, and other relationships."  *Id.*  In the words of the Ninth Circuit, "[t]he statute focuses on those . . . who make money out of *selling the sexual services* of human beings . . . [whom]

they *control* and treat as their profit-producing property." *United States v. Todd*, 627 F.3d 329, 330-31 (9th Cir. 2010) (emphasis added). Yet, as demonstrated in Section I.B, *supra*, Plaintiff has wholly failed to plead facts showing that MindGeek committed any such acts in violation of section 1591. Plaintiff has not alleged facts sufficient to establish that she was ever "sold" for "sexual services," much less that she was "forced," "lured," "controlled," or otherwise trafficked by MindGeek, nor has she alleged that MindGeek "cause[d]" her "to engage in a commercial sex act." 18 U.S.C. § 1591(a)(1)-(2). And she has not alleged a single fact to show that MindGeek "knowingly" benefitted from participating in a venture with Plaintiff's ex-boyfriends. *Supra* at Section I.B.2. Instead, Plaintiff's allegations amount to no more than, at best, MindGeek's turning of a blind eye—a quantum of nonfeasance which falls short of pleading a violation by MindGeek of section 1591. *See Reddit*, 51 F.4th at 1145.

## 2. Plaintiff's Count XV Equally Fails to State a Claim under Cal. Civ. Code § 52.5

California law provides that, "[a] person who *causes, induces, or persuades, or attempts to* cause, induce or persuade, a person who is a minor at the time of commission of the offense to engage in a commercial sex act, with the intent to effect or maintain a violation of Section . . . 311.1 . . . is guilty of human trafficking." Cal. Pen. Code § 236.1(c) (emphasis added); Cal Civ Code § 52.5(a) (creating a private cause of action for victims under Cal. Pen. Code § 236.1(c)). Plaintiff has not alleged any facts to establish that *MindGeek* ever "caused," "induced," or "persuaded" her to engage in a commercial sex act, let alone "with the intent" of committing further crimes. *See J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 3035794, at *2 (N.D. Cal. June 5, 2020) (dismissing claim because courts "interpreting [Cal. Civ. Code § 52.5] have required plaintiffs to plausibly allege intent at the pleading stage"). Indeed, Plaintiff specifies that it was her high school boyfriend who "induced" or "coerced her to make" the first video, and that an "older man" whom she was dating "manipulated" her "into creating" the second video. SAC ¶¶ 448, 457. Plaintiff had no contact

MEMO IN SUPPORT OF MOTION TO DISMISS

1    whatsoever with MindGeek until she asked MindGeek to remove the videos, which it

2    did. *Id.* ¶¶ 451, 453. Plaintiff's state trafficking claim therefore fails on this additional

3    ground.

4        **B.    Plaintiff's Counts V and VI Fail to State a Claim for Receipt, Transport, or Distribution of Child Pornography (18 U.S.C. §§ 2252, 2252A, 2255)**

5

6        In addition to being barred by section 230(c)(1), Plaintiff's claim under 18

7    U.S.C. § 2252A must be dismissed for its inherent substantive deficiencies. To

8    establish liability under section 2252A, a plaintiff must prove the defendant

9    "knowingly receive[d] or distribute[d]" child pornography in interstate or foreign

10   commerce "by any means including by computer." 18 U.S.C. § 2252A. This section

11   requires that a defendant have actual knowledge as to "the age of the performers"; mere

12   inadvertence or negligence is insufficient. *United States v. X-Citement Video, Inc.*, 513

13   U.S. 64, 78 (1994); *see United States v. Ruiz-Castelo*, 835 F. App'x 187, 189 (9th Cir.

14   2020) (government was required to prove defendant's "knowledge that the video contained

15   sexually explicit conduct with a minor").

16       Actual knowledge can be established based on willful blindness, but that is a

17   demanding standard. *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769

18   (2011) ("[A] willfully blind defendant is one who takes *deliberate action to avoid*

19   *confirming a high probability of wrongdoing* and who can almost be said to have

20   actually known the critical facts." (emphasis added)). In contrast, "a reckless

21   defendant is one who merely knows of a substantial and unjustified risk of such

22   wrongdoing, and a negligent defendant is one who should have known of a similar

23   risk but, in fact, did not." *Id.* at 770 (internal citation omitted). Mindful of these

24   distinctions, the Ninth Circuit has rejected the argument that "general awareness" of

25   illegal activity on a website establishes the website operator's willful blindness of *specific*

26   illegal activity. For example, in the context of trademark infringement, the Ninth Circuit

27   has emphasized that "willful blindness requires the defendant to be aware of the specific

28

instances of infringement or specific infringers." *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1002 (9th Cir. 2023). "General knowledge of infringement on the defendant's platform . . . is not enough to show willful blindness." *Id.*

Applying that specific-awareness requirement here, Plaintiff must allege facts establishing that MindGeek had actual knowledge of or was willfully blind to—*i.e.*, took deliberate action to avoid confirming—the fact that *Plaintiff* was underage in the videos. But she has failed to plead any facts sufficient to meet those standards. Instead, Plaintiff baldly concludes that "MindGeek personnel . . . were aware . . . that she was underage" because that purportedly was "apparent from the image itself" and from the videos' titles and user comments and tags. SAC ¶¶ 448-49, 458. But she offers no well-pled facts to show either that MindGeek knew there was a "high probability" that the videos depicted a minor, or that MindGeek then took "deliberate action" to avoid "confirming" that the videos depicted a minor. To the contrary, Plaintiff admits that: MindGeek's Terms of Service ("TOS")[6] required that any users were at least 18 years old, SAC ¶¶ 46, 70; MindGeek employees regularly performed content-moderation functions (though Plaintiff impugns their effectiveness), *id.* ¶ 67; and, once she reported to MindGeek "that the video was child pornography," MindGeek consistently took it down, SAC ¶¶ 451, 453.

Finally, Plaintiff cannot establish that MindGeek was willfully blind to the fact that she was underage simply by alleging that MindGeek was generally aware that some *other* content illegally uploaded to its sites was child pornography. *See Redbubble*, 75 F.4th at 1002 ("General knowledge of infringement on the defendant's platform . . . is not enough."). Congress has made clear that website operators like MindGeek have *no duty* to "affirmatively search, screen or scan for" apparent CSAM. 18 U.S.C.

---

[6]     This Court may treat the TOS as incorporated by reference and thus "part of the complaint . . . and may assume that its contents are true" without converting this motion to one for summary judgment, because the SAC "refers extensively to the document." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

§ 2258A(f)(3).    And persons, including MindGeek, "who seek[] out only adult pornography, but without [their] knowledge [are] sent a mix of adult and child pornography" do not violate 18 U.S.C. § 2252A.  *United States v. Myers*, 355 F.3d 1040, 1042 (7th Cir. 2004).  On all of these grounds, Plaintiff's section 2252A claim must be dismissed.

## C.    Plaintiff's Remaining Claims Do Not Meet the Respective Pleading Requirements.

### 1.    Because MindGeek Is Not the Publisher of the Videos, Plaintiff's Intentional Tort Claims Fail.

Plaintiffs' claims for public disclosure of private facts, intrusion into private affairs, false light, common law and statutory misappropriation of likeness, and Cal. Civ. Code § 1708.85 all fail because MindGeek was not the publisher of the videos depicting plaintiff.  SAC at Counts VII-XII.  All of these claims require that the injury-inflicting conduct must be intentionally committed by the defendant.  *In re Facebook, Inc.*, 402 F. Supp. 3d 767, 796 (N.D. Cal. 2019) (for a public-disclosure claim "to give rise to liability, the following must occur: (i) *the defendant* must disclose a private fact about the plaintiff . . . ." (emphasis added));[7] *Taus v. Loftus*, 40 Cal. 4th 683, 724 (2007) (intrusion upon private affairs requires an intentional intrusion *by the defendant*); *Pacini v. Nationstar Mortg., LLC*, 2013 WL 2924441, at *9 (N.D. Cal. June 13, 2013) (to state a false-light claim, the plaintiff must plead that "*the defendant caused* to be generated publicity of the plaintiff that was false or misleading") (emphasis added); *Loc. TV, LLC v. Super. Ct.*, 3 Cal App. 5th 1, 8, 13 (2016) (to state a common law claim for unauthorized use of likeness and under Cal. Civ. Code § 3344, the plaintiff must allege "*the defendant's use* of the plaintiff's

---

[7]    The public disclosure claim also fails because "[a] matter that is already public or that has previously become part of the public domain is not private." *Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125, 1130-31 (2009) (holding the trial court properly sustained a demurrer to an invasion of privacy cause of action where the facts at issue were published on myspace.com).  Accordingly, Plaintiff cannot maintain a claim against MindGeek based on the second video because it was sold on Craigslist and Kik and therefore was *already public* when posted to Pornhub. SAC ¶ 457.

1  identity" (emphasis added)); Cal. Civ. Code § 1708.85(a), (c)(6) (requiring *the*

2  *defendant* "intentionally distribute" materials and prohibiting liability where "[t]he

3  distributed material was previously distributed by another person").

4      Distributing sexually explicit videos obtained from an unrelated third party

5  does not constitute an intrusion. *See Lee v. Penthouse Int'l, Ltd.*, 1997 WL 33384309,

6  *6-7 (C.D. Cal. Mar. 19, 1997) ("Prior publication of the photographs takes them out

7  of the realm of private facts."). Plaintiff alleges her then-boyfriends or unidentified

8  third parties published the videos in the first instance, *not MindGeek*. *See* SAC

9  ¶¶ 448, 457-58. Thus, all of these claims are subject to dismissal because they seek

10 to hold MindGeek liable for third-party content which it did not originally disclose,

11 post, sell, or otherwise publish.

12         **2.    Plaintiff's Misappropriation of Likeness Claims (Cal. Civ.**
13                **Code § 3344) Fail for Additional Reasons.**

14      To allege a viable claim for misappropriation under California Civil Code

15 § 3344, Plaintiff must allege, among other elements, "a knowing use by the defendant

16 as well as a direct connection between the alleged use and the commercial purpose."

17 *Loc. TV*, 3 Cal App. 5th at 13 (internal quotation and citation omitted); Cal Civ. Code

18 § 3344(a); *see* RESTATEMENT (SECOND) OF TORTS § 652C cmt. c, d; *Yeager v. Cingular*

19 *Wireless LLC*, 673 F. Supp. 2d 1089, 1100 (E.D. Cal. 2009). Importantly, a defendant

20 does not actionably "use" a plaintiff's likeness merely by "display[ing] unrelated ads . . .

21 adjacent to the content that allegedly use[s] [the plaintiff's] name and likeness . . .

22 created by third-party users." *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 210 (2017).

23 This is especially true where the value of the use is derived from general characteristics

24 that are not unique to the plaintiff's individual identity. *See Yeager*, 673 F. Supp. 2d at

25 1100.

26      Here, Plaintiff alleges only that her images appeared in videos placed adjacent

27 to ads. SAC ¶ 450. She does not allege that she appeared in the ads or was made to

28 appear to endorse the products advertised. *See Cross*, 14 Cal. App. 5th at 210. Nor

does she allege that MindGeek capitalized on her unique identity or that the ads were tailored in any way to do so.  *See* SAC ¶ 550-51.  Because Plaintiff fails to allege that MindGeek knowingly used her unique identity, as opposed to simply her images, for a commercial purpose, Plaintiff's common law and statutory misappropriation claims, SAC Counts X and XI, must be dismissed.

### 3. Plaintiff's Count XIII Fails to State a Claim for Negligence.

Plaintiff's negligence claim fails because she has not alleged that MindGeek owed her any legal duty.  *See Toomer v. United States*, 615 F.3d 1233, 1237 (9th Cir. 2010) ("Where there is no duty, there can be no negligence").  Where a defendant merely fails to take affirmative action, the defendant is not liable in negligence absent a special relationship with the plaintiff.  *AF Holdings, LLC v. Doe*, 2012 WL 4747170, at *5 (N.D. Cal. Oct. 3, 2012).  Here, Plaintiff admits that no special relationship existed between her and MindGeek, and maintains instead that MindGeek breached its duty to use *ordinary* care and to prevent injury to Plaintiff by failing to take down the videos posted by her ex-boyfriends and other buyers of the videos.  *See* SAC ¶¶ 569-70.  Interactive computer services such as MindGeek, however, do *not* "have a legal duty to inspect every single user-generated message before it is communicated to a single person or displayed to the public." *Reddit*, 2021 WL 586094, at *8; *Dyroff*, 934 F.3d at 1101 ("No website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content."); *see also Doe v. MySpace*, 474 F. Supp. 2d 843, 846, 852 (W.D. Tex. 2007) (dismissing negligence claims because Myspace did not owe a legal duty to parents of a teenager who was raped to protect their daughter from criminal acts "nor to institute reasonable safety measures on its website").  Accordingly, Plaintiff's negligence claim must be dismissed.

4. **Plaintiff's Count XIV Fails to State a Claim for Unfair Competition (Cal. Bus. & Prof. Code §§ 17200 and 17500).**

Plaintiff's Unfair Competition Law ("UCL") claim must be dismissed because she lacks statutory standing.  To state a claim under the UCL, Plaintiff must allege that she has suffered "*economic injury* . . . caused by[] the unfair business practice. . .that is the gravamen of the claim."  *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) (internal citation omitted) (emphasis added). The gravamen of Plaintiff's claim is that MindGeek "fraudulently deceived its users" into believing that it was "monetizing, distributing, and advertising legitimate, legal content . . . ." SAC ¶ 575.  But Plaintiff does not allege that she is a Pornhub user who was thusly "fraudulently deceived."[8]  Moreover, Plaintiff's conclusory allegations that she "lost money" and suffered "financial harm in the form of costs for therapy," "time away from her work," and "hiring a company to assist her with her efforts investigate [sic] the continued dissemination of her videos on Pornhub" are insufficient to show that she suffered any actionable injury *caused* by any unfair business practices alleged in the SAC.  SAC ¶¶ 580-81; *see Reddit*, 2021 WL 5860904, at *9 (dismissing UCL claim where "there is no indication in the [complaint] that Plaintiffs have lost money or property as a result of Reddit's alleged conduct").  Plaintiff's UCL claim therefore must be dismissed for Plaintiff's lack of standing.  *See, e.g.*, *Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021, 1036 (N.D. Cal. 2017) (dismissing UCL claim for lack of standing based on "Plaintiff's conclusory allegations").

---

[8]    Further, because Plaintiff's UCL allegations "sound in fraud," her "pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)."  *Id.*  Plaintiff has not even attempted to meet this heightened pleading standard.  She fails to allege that MindGeek made a misrepresentation to *her*, or that *she* justifiably relied on any representation made by MindGeek regarding its "legitimate, legal content," or facts sufficient to establish MindGeek's scienter and intent to defraud.  *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997).

5. **Plaintiff Cannot State a Claim for Civil Conspiracy.**

To state a claim for civil conspiracy, Plaintiff must particularize sufficient facts to establish "the formation and operation of the conspiracy, the wrongful act or acts done pursuant to it, and the damage resulting from such acts." *State ex rel. Metz v. CCC Info. Servs., Inc.*, 149 Cal. App. 4th 402, 419 (2007) (citations omitted); *accord Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 831 (N.D. Cal. 2018) (civil conspiracy claim subject to heightened pleading requirement). Here, Plaintiff pleads formation of a conspiracy in only the most conclusory terms. SAC ¶ 591. "There are no allegations concerning when or where such a conspiracy was conceived," or facts from which an agreement can be inferred. *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1288 (C.D. Cal. 2015). Nor does Plaintiff specify each Defendant's purported role in the alleged conspiracy. *See* SAC ¶¶ 590-94. And most centrally, because all of Plaintiff's underlying claims fail, her conspiracy claim must fail as well. *See Marshall v. United States*, 2016 WL 11756786, *7 (C.D. Cal. Jan. 4, 2016). Accordingly, her conspiracy claims must be dismissed.

## III. THE COURT LACKS PERSONAL JURISDICTION OVER MINDGEEK S.A R.L.

Despite the benefits of twice amending and obtaining extensive jurisdictional discovery, Plaintiff's SAC still fails to allege a prima facie case of this Court's personal jurisdiction over MindGeek S.à r.l. Even after benefiting from jurisdictional discovery, Plaintiff still cannot demonstrate any California or even U.S.-related activities by MindGeek S.à r.l., let alone that her alleged harms arose out of any activity taken by that entity. Instead, Plaintiff's allegations suffer from the same group-pleading problem that infected the prior iterations of her complaint. Nor has Plaintiff identified any evidence supporting her alter ego theory of jurisdiction. In fact, the evidence developed in jurisdictional discovery makes clear that all of the entities within the MindGeek (now, Aylo) corporate structure operate in accordance with applicable law, just as any multinational group of companies typically does.

And, critically, Plaintiff does not even allege that there would be any fraud or injustice if MindGeek S.à r.l. were dismissed.  For all these reasons, MindGeek S.à r.l. should be dismissed.

### A.    Plaintiff Must Come Forward with Evidence Sufficient to Establish Her Disputed Jurisdictional Allegations.

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction.  *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020).  A plaintiff cannot survive a motion to dismiss under Rule 12(b)(2) with only "'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).  And most importantly, where defendants proffer evidence contradicting the pleadings, as MindGeek does here, the typical presumption flips:  "[D]isputed allegations in the complaint that are not *supported with evidence or affidavits* cannot establish jurisdiction."  *AMA Multimedia*, 970 F.3d at 1207 (emphasis added); *see also Smartstop Self Storage Operating P'ship L.P. v. Can-Dev, ULC*, 2015 WL 13322430, at *2 (C.D. Cal. Oct. 26, 2015) ("[T]he district court 'may not assume the truth of allegations in a pleading which are contradicted by affidavit.'" (citation omitted)).

Personal jurisdiction can be either general or specific.  To be subject to general personal jurisdiction, the defendant's contacts with the forum must be so constant and pervasive as to render it "essentially at home" in the forum.  *Bristol-Myers Squibb Co. v. Super. Ct.* (*BMS*), 582 U.S. 255, 271 (2017).  The "paradigmatic locations" where a corporation is at home is in the state where it is incorporated and where it has its principal place of business. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015).  General personal jurisdiction will be available "anywhere else" only in an "exceptional case." *Id.*  The SAC does not even attempt to meet this "exacting standard."

Absent general personal jurisdiction, a plaintiff must show specific personal jurisdiction over each defendant.  Specific personal jurisdiction empowers the Court to adjudicate only disputes that "arise out of or relate to" the defendant's forum-based contacts.  *BMS*, 582 U.S. at 272.  To avail herself of this "case-linked" jurisdiction, Plaintiff must satisfy the Ninth Circuit's three-part test:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*AMA Multimedia*, 970 F.3d at 1208.  Due process requires *a direct* connection between the harm alleged and Defendants' contacts with the forum state.  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *BMS*, 582 U.S. at 272; *see also Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 506 (9th Cir. 2023) (even if a company has sufficient contacts with the forum state, those contacts must be related to the plaintiff's alleged injury).

### B.  Plaintiff's Jurisdictional Allegations as to MindGeek S.à r.l. Do Not Meet Her Burden.

#### 1.  The Court Lacks Personal Jurisdiction over MindGeek S.à r.l.

Plaintiff's allegations of MindGeek S.à r.l.'s contacts with California or the United States are sparse and conclusory.  None meets her burden of demonstrating this Court's jurisdiction over MindGeek S.à r.l.

First, even accepting Plaintiff's allegations that MindGeek S.à r.l. has "satellite offices in . . . Los Angeles, San Diego, and San Francisco," and (2) entered into a deferred prosecution agreement with the US Attorney for the Eastern District of New York for unlawful monetary transactions unconnected to the Plaintiff, SAC ¶¶ 11, 63, Plaintiff does not, as she must, allege how those United States-based contacts

relate to her claims, *see Yamashita*, 62 F.4th at 506 (affirming dismissal of defendant with forum-based contacts because the contacts were not related to the dispute).

Second, and more substantively, Plaintiff's allegations of MindGeek S.à r.l.'s U.S.-based contacts are simply not true. MindGeek S.à r.l. does not do any business in the United States; it is a foreign holding company without employees or operations anywhere. Declaration of Andreas Alkiviades Andreou ("Andreou Decl.") ¶ 29. Plaintiff has offered no evidence otherwise—because none exists. *See AMA Multimedia*, 970 F.3d at 1207 (plaintiff must support "disputed allegations in the complaint . . . with evidence or affidavits").

Finally, Plaintiff's conclusory allegation that MindGeek S.à r.l. "directly and indirectly owns and operates" Pornhub does not meet her burden of demonstrating personal jurisdiction over MindGeek S.à r.l. either. SAC ¶ 11. Indeed, although the Court previously noted that the First Amended Complaint failed to allege which entity or entities own or control Pornhub, Plaintiff's second amended effort still "cannot firmly commit" to any definitive allegation. ECF No. 167 at 3. Instead, the SAC fatally echoes the same allegations that the Court found insufficient to establish personal jurisdiction over any entities other than MG Freesites or 9219-1568 Quebec: that MindGeek S.à r.l. somehow "directly and indirectly owns and operates over 100 pornographic websites . . . including Pornhub," (*compare* ECF No. 167 at 3; *and* FAC ¶ 19, *with* SAC ¶ 11); and that MindGeek S.à r.l. somehow "owns and/or controls the majority of the pornography on the Internet," (*compare* ECF No. 167 at 3; *and* FAC ¶ 19, *with* SAC ¶ 11). The mere fact, however, that MindGeek S.à r.l. is the indirect parent corporation of the entity that operates Pornhub cannot alone bring MindGeek S.à r.l. within this Court's jurisdiction. *See, e.g.*, *Ranza*, 793 F.3d at 1070 ("The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction.").

## 2. MindGeek S.à r.l. Is Also Beyond the Territorial Reach of 18 U.S.C. § 1595.

Plaintiff's section 1595 claim, *supra* at 15-16, should be dismissed as to MindGeek S.à r.l. because it is beyond the territorial reach of section 1595. "The scope of an extraterritorial statute . . . turns on the limits Congress has (or has not) imposed." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 337-38 (2016). "It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears," applies "only within the territorial jurisdiction of the United States." *Morrison v. Nat'l Aus. Bank Ltd.*, 561 U.S. 247, 255 (2010) (internal quotation marks omitted). Thus, "[w]hen a statute gives no clear indication of an extraterritorial application, it has none," *id.*, and even "when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms," *id.* at 265.

In 2008, Congress amended the Trafficking Victims Prevention and Protection Reauthorization Act (TVPRA) to add a limited grant of extraterritorial jurisdiction for certain criminal statutes, including section 1591. *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1165 (9th Cir. 2022). As that grant provides:

> In addition to any domestic or extra-territorial jurisdiction otherwise provided by law, the courts of the United States have extra-territorial jurisdiction over any offense (or any attempt or conspiracy to commit an offense) under section 1581, 1583, 1584, 1589, 1590, or 1591 if—(1) an alleged offender is a national of the United States or an alien lawfully admitted for permanent residence . . . ; or (2) an alleged offender is present in the United States, irrespective of the nationality of the alleged offender.

18 U.S.C. § 1596(a).[9] Construing the second prerequisite imposed by section 1596, the Ninth Circuit has held that "[t]he plain meaning of the adjective 'present' is 'in a

---

[9] "[W]hile § 1596 explicitly grants extraterritorial application to many criminal statutes, it does not mention their civil analogue, § 1595." *Doe I v. Apple Inc.*, 2021 WL 5774224, at *15 (D.D.C. Nov. 2, 2021). Nevertheless, the Ninth Circuit has "assume[d] without deciding that section 1595 may apply extraterritorially." *Ratha*, 35 F.4th at 1164.

particular place.'"  *Ratha*, 35 F.4th at 1169.  And while the *Ratha* panel did not definitively resolve the meaning of the phrase "present in the United States," *id.*, other courts have read it as requiring that a defendant be "found in" the U.S., *Ratha v. Phatthana Seafood Co.*, 2017 WL 8292922, at *4 (C.D. Cal. Dec. 21, 2017); *see also United States v. Yousef*, 327 F.3d 56, 89 (2d Cir. 2003) (treating "found in the United States" as synonymous with "present in the United States").

Neither requirement for extraterritorial jurisdiction has been established by Plaintiff.  MindGeek S.à r.l. is not a national of the U.S., an alien lawfully admitted for permanent residence, or "present in" the U.S.  18 U.S.C. § 1596(a).  Rather, MindGeek S.à r.l. is a private limited liability company incorporated under the laws of Luxembourg.  SAC ¶ 11.  The documented record establishes that MindGeek S.à.r.l. has been and is nothing more than a holding company, without any employees or operations of its own.  Andreou Decl. ¶ 29.  MindGeek S.à r.l. is therefore beyond the territorial reach of section 1591.

Moreover, even if section 1591 could apply extraterritorially, there is no legal basis for asserting a claim arising out of its civil analogue here.  As noted above, section 1596 "does not mention . . . § 1595."  *Apple*, 2021 WL 5774224, at *15.  "Congress could have easily included § 1595 in § 1596, but it did not."  *Id.*  And "the text and structure of § 1596 suggest that it was focused on criminal, not civil, applications."  *Id.*  "[T]he title of § 1596 is 'Additional jurisdiction in certain trafficking offenses.'"  *Id.*  "It extends 'extra-territorial jurisdiction over any *offense* (or any attempt or conspiracy to commit *an offense*) to the above-mentioned sections of the TVPRA, all criminal provisions."  *Id.* (emphasis in original).  Congress's decision to omit section 1595 from section 1596's list of offenses likely "was an intentional decision not to extend extraterritorially the reach of the statute's civil component."  *Id.* at *16.  In any event, when a statute such as section 1595 "gives no clear indication of an extraterritorial application, it has none."  *Morrison*, 561 U.S. at

255.  Thus, even if MindGeek S.à r.l. could, in theory, be prosecuted for violating section 1591, there is no basis for applying section 1591's civil analogue, section 1595, to MindGeek S.à r.l. extraterritorially.

### 3.     Plaintiff Cannot Group-Plead Her Way to Jurisdiction.

Rather than plead specific facts supporting this Court's exercise of personal jurisdiction over MindGeek S.à r.l., the SAC resorts to the same group-pleading device that infected Plaintiff's last complaint.  *See* ECF No. 167 at 3 n.3.  But, as this Court pointed out, Plaintiff cannot impute the actions of one defendant to another to establish personal jurisdiction.  *Id.*; *see Allen v. Shutterfly, Inc.*, WL 5517170, at *4 (N.D. Cal. Sep. 14, 2020).  Plaintiff instead must establish the Court's personal jurisdiction over each defendant individually.  *Calder v. Jones*, 465 U.S. 783, 790 (1984).  She cannot do so with a "shotgun" pleading that lumps all Defendants together and alleges that they collectively took actions in or aimed at California. *Broidy Cap. Mgmt., LLC v. Qatar*, 2018 WL 9943551, at *5, 7 (C.D. Cal. Aug. 22, 2018); *see Yost v. Nationstar Mortg., LLC*, 2013 WL 4828590, at *3 (E.D. Cal. Sept. 9, 2013) ("Under the pleading standard of either Rule 8 or Rule 9 [to the extent applicable], Plaintiff[] must distinguish Defendants' particular roles in the alleged causes of action.").  Yet that is precisely what the SAC again attempts.  Its lumped allegations continue to fail to establish personal jurisdiction over MindGeek S.à r.l.

### C.     Plaintiff Cannot Impute Other Entities' Contacts to Establish Jurisdiction over MindGeek S.à r.l.

Unable to identify any specific contacts between MindGeek S.à r.l. and the United States (because there are none), Plaintiff instead attempts to impute the jurisdictional contacts of the non-objecting entities to MindGeek S.à r.l. by conclusionally claiming that all the MindGeek entities are "alter egos of one another."  *See* SAC ¶¶ 20, 31, 32.  Stripped of its hyperbole, however, the SAC specifies few alleged facts even relevant to the alter ego analysis.  What the SAC does allege is nothing more than an ordinary parent-subsidiary relationship between MindGeek S.à r.l. and its subsidiaries.

"A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Ranza*, 793 F.3d at 1070 (quoting *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003)).  Accordingly, a parent-subsidiary relationship, standing alone, is not enough to impute one entity's jurisdictional contacts to another.  *See Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001).  Still, a plaintiff may impute a subsidiary's forum-based contacts to its corporate parent—but only in "limited circumstances." *Ranza*, 793 F.3d at 1071.  Such veil-piercing is, however, "'the rare exception' rather than the rule." *Kite Shipping LLC v. San Juan Nav. Corp.*, 2012 WL 6720624, at *3 (S.D. Cal. Dec. 26, 2012) (quoting *Dole Food Co.*, 538 U.S. at 475)  It is a "drastic remedy" that should be applied only "reluctantly and cautiously." *Vacless Sys. v. Vac-Alert Ip Holdings, LLC*, 2011 WL 13217924, at *4 (C.D. Cal. June 24, 2011).  To pierce the corporate veil, a plaintiff must show much more than ordinary control of the subsidiary by the parent. "[D]isregard of corporate separateness requires that the controlling corporate entity exercise *total domination* of the subservient corporation, to the extent that the *subservient corporation manifests no separate corporate interests* of its own." *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997) (internal quotation marks omitted) (emphasis added).

To make a prima facie showing of an alter ego relationship, a plaintiff must plausibly allege "(1) that there is such unity of interest and ownership that the separate personalities of [the entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996), *supplemented*, 95 F.3d 1156 (9th Cir. 1996); *see Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 913-14 n.7 (9th Cir. 2011) (applying prima facie standard for personal-jurisdiction allegations even after jurisdictional discovery), *overruled on other grounds*, 571 U.S. 117

(2014).  To succeed, she must establish both prongs.  *See Unocal Corp.*, 248 F.3d at 928.  Plaintiff cannot satisfy either prong.

### 1.    Plaintiff Cannot Establish Any facts to Overcome the Presumption of Separateness.

The "unity of interest and ownership" prong requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former."  *Ranza*, 793 F.3d at 1073.  "This test envisions *pervasive control* over the subsidiary, such as when a parent corporation dictates *every facet* of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation."  *Id.* (internal quotation marks omitted) (emphasis added).  Ordinary supervision of the subsidiary—such as "monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures"—does not justify the drastic remedy of piercing the corporate veil.  *Unocal Corp.*, 248 F.3d at 926.  Instead, factors supporting an inference of unity of interest include: "[1] commingling funds and other assets; [2] representing that an entity or officer is liable for the debts of the corporation; [3] inadequate capitalization of the corporation; [4] disregard of corporate formalities; and [5] lack of segregation of records."  *Johnston v. Irontown Hous. Co., Inc.*, 2014 WL 12531189, at *6 (S.D. Cal. Dec. 9, 2014).  Multiple supporting factors must be evident to pierce the corporate veil.  *Id.* at *7; *see, e.g.*, *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 983-84 (N.D. Cal. 2016) (presence of even three factors alone insufficient).  And isolated incidents of improper corporate formalities do not alone meet the alter ego test.  *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003).  The SAC's allegations—numerous as they may be—do not meet this demanding standard.

### i. MindGeek S.à r.l. and the Other MindGeek Entities Are Typical Parent and Subsidiaries.

The SAC fails to demonstrate any pervasive control by MindGeek S.à r.l.  To the contrary, the record establishes that MindGeek S.à r.l. and its various subsidiaries are separate corporate entities.  There is no intermingling of assets or disregard for corporate formalities here by any of the six named MindGeek entities.  Each has its own funds and accounts, maintains its own accounting records, and files and pays its own taxes.  Andreou Decl. ¶¶ 19, 30, 35, 39, 43, 48.  Each is adequately capitalized,

█████████████████████████████████████████████████████████████████████

*Id.*  Each has a board of directors or the foreign equivalent, and each observes the appropriate corporate formalities.  *Id.* ¶¶ 31, 36, 39, 44, 48.

Against these documented facts, nothing in the SAC demonstrates anything other than a typical parent-subsidiary relationship between MindGeek S.à r.l. and its subsidiaries.  Specifically, Plaintiff alleges that MindGeek S.à r.l. and its ultimate beneficial owners controlled all of MindGeek S.à r.l.'s subsidiaries.[10]  But "a parent corporation may be directly involved"—even "heavily involved," *Ranza*, 793 F.3d at 1074—"in the activities of its subsidiaries without" making the subsidiary its alter ego, *Harris Rutsky*, 328 F.3d at 1135.  Instead, to establish an alter ego relationship, the parent's control must be "pervasive," extending "from broad policy decision to routine matters of day-to-day operation."  *Ranza*, 793 F.3d at 1073.  Plaintiff makes no such allegation.  She alleges only that MindGeek S.à r.l. and its ultimate beneficial owners were involved in "decisions about acquisitions, executive hiring, firing, and salaries, and business strategies and policies."  SAC ¶ 382; *see id.* ¶ 387 (describing meetings discussing the "business' strategic, operational, and policy decisions").  Those are precisely the kinds of "macromanagement" decisions in which parents are ordinarily involved.  *See Ranza*, 793 F.3d at 1074 (allegations that parent "exercises

---

[10]    There is nothing improper about the Individual Defendants' leadership of the MindGeek entities, as explained in the Individual Defendants' concurrently filed motions to dismiss.

control over [the subsidiary's] overall budget and has approval authority for large purchases; establishes general human resource policies for both entities and is involved in some hiring decisions; operates information tracking systems all of its subsidiaries utilize; ensures the [parent's] brand is marketed consistently throughout the world; and requires some [subsidiary] employees to report to [parent] supervisors on a 'dotted-line' basis" not sufficient); *Iconlab, Inc. v. Bausch Health Cos.*, 828 F. App'x 363, 364-65 (9th Cir. 2020) (allegations that parent "approved [subsidiaries'] large purchases, financed their activity, issued collective media releases, and submitted consolidated earnings reports" reflected only "routine operations between a parent and its subsidiary").

Further, contrary to the SAC's conclusory allegations (¶¶ 394-98, 416-17), all the MindGeek entities operate distinctly. Though several allegedly have some of the same directors and share staff, *see* SAC ¶¶ 421-22, that alone does not render them alter egos of each other.[11] *See Harris Rutsky*, 328 F.3d at 1135; *Ranza*, 793 F.2d at 1074 ("Some employees and management personnel move between the entities, but that does not undermine the entities' formal separation."). And significantly, because they are separate, when the entities provide services to one another, they do so under written service agreements, which are priced based on a cost-plus model, with the mark-up determined by annual transfer pricing studies conducted by MindGeek's auditors. Andreou Decl. ¶¶ 15-16. Providing those services across the enterprise under formal agreements is not evidence of an alter ego relationship. *See Youngevity Int'l*, 2024 WL 838707, at *2 (finding no alter ego relationship where the entities had

---

[11] Although the Court previously pointed to the overlap in directorship between the MindGeek entities as a potential basis to extend alter ego liability, ECF No. 167 at 4, that alone does not justify disregarding corporate separateness, *see Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980) (holding there was no alter ego relationship where some directors for one entity had sat on the board of the other); *Youngevity Int'l, Inc. v. Innov8Tive Nut., Inc.*, 2024 WL 838707, at *2 (9th Cir. Feb. 28, 2024) (no alter ego status even where both entities shared the same sole director).

MEMO IN SUPPORT OF MOTION TO DISMISS

1    "a services agreement whereby [one] provides management, consulting, accounting,

2    and administrative services" to the other).  Moreover, the simple fact that those within

3    MindGeek allegedly viewed the various entities as "departments" (¶¶ 389, 413) of a

4    larger enterprise, or that Messrs. Bergmair, Antoon, and Tassillo were held out as the

5    Chairman, CEO, and COO of "MindGeek" generally (¶ 426), does not "establish the

6    existence of an alter ego relationship" either.  *Unocal Corp.*, 248 F.3d at 928; *Payoda,*

7    *Inc. v. Photon Infotech, Inc.*, 2015 WL 4593911, at \*3 (N.D. Cal. July 30, 2015)

8    ("marketing puffery carries no weight in establishing whether a parent and its

9    subsidiary are in fact alter egos").

10        Nor can Plaintiff's allegations of ███████████████████████████████

11   establish any commingling of funds.  SAC ¶¶ 412-15.  Like many multinational

12   companies, MindGeek uses a centralized treasury system to improve cash

13   management across the enterprise.  Andreou Decl. ¶ 18.  The centralized treasury

14   system allows the entities to move cash as necessary to meet immediate obligations.

15   *Id.*  But when the cash is moved between entities, those transactions are documented

16   in the entities' accounting systems.  *Id.*  And the entities do in fact "control their

17   funds through separate bank accounts."  *See* SAC ¶ 413.  There is *no* central bank

18   account; each entity has its own bank accounts, and when money moves out of those

19   accounts, it is well documented.  Andreou Decl. ¶ 18.

20        Plaintiff's claims of back-door dividend payments concealed as bonuses does

21   not evidence anything improper either.  Plaintiff alleges that because, at some points,

22   Defendants Antoon and Tassillo were paid bonuses ████████████████████

23   ███████████████████████████████████  that MindGeek S.à r.l. and

24   9219 failed to observe corporate formalities.  SAC ¶¶ 368-71, 373.  Yet those bonus

25   payments complied with all written agreements.  In the Shareholders' Agreement,

26   the shareholders agreed Defendants Antoon and Tassillo were entitled ██████

27   ████████████████████████████████████████  Andreou Decl.

28

1    ¶ 53.  The employment agreements, in turn, made them eligible for discretionary

2    bonuses that were ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*

3    Despite the fact that MindGeek S.à r.l. and its subsidiaries ▮▮▮▮▮▮▮▮▮

4    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*

5    But Defendants Antoon and Tassillo were still eligible—both under the

6    Shareholders' Agreement and their employment agreement—to receive bonuses

7    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* Those bonus

8    payments thus closely followed the corporate formalities required by MindGeek

9    S.à r.l. under its Shareholders' Agreement.

10        In sum, nothing in the SAC alleges anything beyond an ordinary parent-

11    subsidiary relationship.  MindGeek S.à r.l. allegedly is involved in its subsidiaries'

12    businesses.  But being involved—even if "heavily involved"—does not rise to the

13    level of the pervasive control necessary to invoke the drastic remedy of piercing the

14    corporate veil. *Ranza*, 793 F.3d at 1074.

15                    **ii.    MindGeek S.à r.l.'s Relationship with RT Holding
                              S.à r.l. Is Proper and in Any Event Irrelevant.**

16        The bulk of the SAC's remaining alter ego allegations focus on an allegedly

17    improper relationship between MindGeek S.à r.l. and RT Holding S.à r.l.  All of

18    those allegations are belied by the evidence, but even if they were true, they are

19    legally irrelevant.

20        Plaintiff essentially posits that if MindGeek S.à r.l. and RT Holding S.à r.l. are

21    alter egos of each other, then so are *all* the MindGeek subsidiaries and affiliates.  But

22    that has no basis in the law.  There is no such thing as presumptive alter ego liability

23    among all entities under a corporate umbrella.  Instead, "the inquiry into alter ego

24    liability is individual." *Whitney v. Wurtz*, 2007 WL 1593221, at *2 (N.D. Cal. June

25    1, 2007).  "[J]ust because the 'alter ego theory makes a parent liable for the actions

26    of a subsidiary which it controls . . . does not mean that where a parent controls

27    several subsidiaries each subsidiary then becomes liable for the actions of all other

28

1  subsidiaries." *Tatung Co. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1181 (C.D. Cal.
2  2016); *see G.O. Am. Shipping Co., Inc. v. China COSCO Shipping Corp. Ltd.*, 2017
3  WL 6026959, at *4–5 (W.D. Wash. Dec. 5, 2017) (plaintiff's allegations of parent's
4  alter ego relationship with non-defendant subsidiary did not justify exercising
5  personal jurisdiction over parent), *amended on reconsideration in part*, 2018 WL
6  9669746 (W.D. Wash. Jan. 16, 2018), and *aff'd*, 764 F. App'x 629 (9th Cir. 2019).
7  Instead, to show an alter ego relationship, Plaintiff must proffer facts supporting an
8  alter ego relationship between *each* entity. *See, e.g.*, *UHS of Del., Inc. v. United
9  Health Servs.*, 2015 WL 539736, at *4 (M.D. Pa. Feb. 10, 2015). Thus, even if
10  Plaintiff can show that MindGeek S.à r.l. and RT Holding S.à r.l. are alter egos of
11  each other, it is legally irrelevant because RT Holding S.à r.l. is *not* a defendant here.

12  Beyond that threshold flaw, there is no basis to pierce the corporate veil
13  between MindGeek S.à r.l. and RT Holding S.à r.l. at all. Plaintiff's allegations,
14  though spanning many pages, at bottom stem from her self-serving view that the
15  corporate structure of MindGeek S.à r.l. and RT Holding S.à r.l. is improper because
16  the economic interests of each shareholder did not match their respective equity
17  interests. Specifically, Plaintiff alleges that although Defendant Bergmair, through
18  his special purpose vehicles (or "SPVs"),
19
20
21
22
23  This mismatch between the companies' equity
24  interests and economic interests, Plaintiff claims, evidences a lack of corporate
25  separateness. *See id.* ¶¶ 313-24, 330-52, 362-66.

26  To the contrary, the record establishes that these economic interests complied
27  with all relevant corporate forms. The MindGeek S.à r.l.-RT Holding S.à r.l.
28

structure is the product of careful and extensive tax planning and advice from tax and legal advisors. Andreou Decl. ¶ 55. The shareholders of both entities entered into a Shareholders' Agreement, which provides that distributions to the shareholders are to be paid in accordance with the shareholders' economic interests in the Group. Andreou Decl. ¶ 57; Andreou Decl., Ex. 7. That structure, which was thoroughly vetted by legal and tax professionals, is permissible under Luxembourg law. Andreou Decl. ¶ 59. Plaintiff makes no allegation otherwise.

Instead, Plaintiff claims that the corporate structure is a "sham" because it was designed to reduce the tax burden on MindGeek S.à r.l. SAC ¶¶ 313, 314, 357-61. That is partially true: the structure was created so that MindGeek S.à r.l. could lawfully qualify for the benefits of the U.S.-Luxembourg tax treaty. Andreou Decl. ¶ 59. But that does not make the structure a "sham." Structuring multinational companies to promote tax efficiency is not a basis for piercing the corporate veil. *See Smart Trike v. Piermont Prods. LLC*, 2014 N.Y. Slip Op. 31306(U), ¶ 2 n.2 (Sup. Ct. N.Y. Cty.) ("Optimizing international corporate structure for tax and regulatory purposes is not a basis to pierce the corporate veil." (applying New York law)). It is, once again, just typical corporate planning, conducted by countless multinational companies every day.[12]

Plaintiff further alleges that MindGeek S.à r.l. and RT Holding S.à r.l. must disregard the corporate form because RT Holding S.à r.l. ███████████████

███████████████████████████████████████████████████████████

SAC ¶¶ 325-28. For starters, however, under the Shareholders' Agreement, Mr. Bergmair ██████████████████████████████████████ so any payments by MindGeek S.à r.l. do not evidence a disregard for the corporate form.

---

[12] On the same grounds established above, Plaintiff's allegations that MindGeek S.à r.l. and RT Holding are operated by the same personnel and have centralized and integrated corporate functions do not support an alter ego determination. *See* SAC ¶¶ 397-98; *supra* at 33.

MEMO IN SUPPORT OF MOTION TO DISMISS



Andreou Decl. ¶ 60.  In any event, Mr. Bergmair's SPVs ▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇  *Id.*

Plaintiff contends that this was impossible (SAC ¶ 325), but her conclusory allegation

is based on layers of incorrect facts.  RT Holding ▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇  *Id.*

     Finally, although ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇ that alone cannot pierce the corporate veil.  For one,

all the guaranties were documented in written agreements.  Andreou Decl. ¶ 25.  ▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇  *Id.*  For

another, these guaranties again show nothing more than an ordinary corporate

relationship—it is routine for entities under the same corporate umbrella to guaranty

loans for each other.  *See, e.g.*, *Kramer Motors*, 628 F.2d at 1177 (no alter ego

relationship even where parent guaranteed the loan of its subsidiary); *Indus. Bank of

Korea v. ASI Corp.*, 2018 WL 6164315 at *10 (C.D. Cal. Apr. 26, 2018) ("corporate

parents may—and routinely do—guaranty debts of their subsidiaries while still

maintaining corporate separateness").    In sum, nothing about the relationship

between RT Holding and MindGeek S.à r.l. overcomes the presumption of

separateness between MindGeek S.à r.l. and any of its subsidiaries.

### 2.    Plaintiff Cannot Establish That Failing to Disregard the Separateness Would Result in Fraud or Injustice.

     Plaintiff's alter ego theory fails for a separate and independently dispositive

reason—she cannot show that "'failure to disregard' the separate entities 'would

result in fraud or injustice.'" *Iconlab, Inc.*, 828 F. App'x at 364 (quoting *Ranza*, 793 F.3d at 1073). "[M]ere '[d]ifficulty in enforcing a judgment or collecting a debt does not satisfy' the injustice standard for alter ego liability." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677 (9th Cir. 2017). "The alter ego doctrine . . . instead affords protection where some conduct *amounting to bad faith* makes it inequitable for the corporate owner to hide behind the corporate form." *Id.* (emphasis in original). "Insolvency or inadequate capitalization may satisfy this standard 'when a corporation is so undercapitalized that it is unable to meet debts that may reasonably be expected to arise in the normal course of business.'" *Id.* But "multimillion dollar judgments" are *not* within a company's "ordinary course of business." *In re Hydroxycut Marketing and Sales Practices Litig.*, 810 F. Supp. 2d 1100, 1123 (S.D. Cal. 2011).

On the documented record, observing the corporate separateness of the MindGeek Defendants would not result in fraud or injustice. Plaintiff conspicuously fails to allege how "fraud or injustice" would occur unless the Court were to ignore the corporate separateness of the MindGeek entities. This is not a situation where the only proper defendant is absent. Plaintiff has sued the operator of the websites at issue in this lawsuit, MG Freesites Ltd, and MindGeek does not challenge the Court's jurisdiction over that entity or over 9219, which acts as a service provider to MG Freesites. And "[t]here are no facts before the Court that suggest Plaintiff cannot be made whole through a lawsuit against [Freesites and 9219]." *Shimmick Constr. Co./Obayashi Corp. v. Officine Meccaniche Galletti-O.M.G. S.R.L.*, 2014 WL 5847440, at *7 (S.D. Cal. Nov. 12, 2014). Plaintiff has made no showing of "bad faith" on the part of any defendant, which is "a critical factor in the analysis." *Advanced Eng'g Sols. Co. v. Pers. Corner, LLC*, 2021 WL 1502705, at *5 (C.D. Cal. Feb. 25, 2021). Nor is there is any evidence that MG Freesites and 9219 are not adequately capitalized. The SAC no longer alleges, as Plaintiff's First Amended

MEMO IN SUPPORT OF MOTION TO DISMISS

1    Complaint baselessly did, that Defendants posted "'massive' net losses, owing to

2    various schemes in which some MindGeek Defendants bleed money out of others

3    through fraudulent transactions." ECF No. 167 at 4; *see* FAC ¶¶ 131-37. Instead,

4    jurisdictional discovery has confirmed what was true all along:  MG Freesites and

5    9219 have enough capital to "meet debts that may reasonably be expected to arise in

6    the normal course of business.'"  *Perfect 10*, 847 F.3d at 677.  Each ███████

7    █████████████████████████  Andreou Decl. ¶¶ 20, 35, 51, and Plaintiff does not

8    even allege that their assets are insufficient to satisfy any potential judgment she may

9    obtain.

10       In sum, because Plaintiff fails to establish that MindGeek S.à r.l. is the alter

11   ego of any other Defendant, and because failure to disregard its separateness would

12   not result in fraud or injustice, personal jurisdiction may not be extended over

13   MindGeek S.à r.l. under an alter ego theory.

14                                   **CONCLUSION**

15       For all of the foregoing reasons, the Court should dismiss with prejudice the

16   entirety of Plaintiff's Second Amended Complaint.

17   Dated: August 30, 2024            Respectfully submitted,

18                                     MINTZ LEVIN COHN FERRIS
19                                     GLOVSKY AND POPEO, P.C.

20                                     /s/ Peter A. Biagetti
21                                     Esteban Morales
                                       Peter A. Biagetti
22

23                                     Attorneys for Defendants
                                       MindGeek, S.à r.l. (specially appearing),
24                                     MG Freesites Ltd, MG Premium Ltd,
25                                     MindGeek USA Incorporated, MG Global
                                       Entertainment Inc., and 9219-1568 Quebec
26                                     Inc.

27

28

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants MindGeek, S.à r.l. (specially appearing), MG Freesites Ltd, MG Premium Ltd, MindGeek USA Incorporated, MG Global Entertainment Inc., and 9219-1568 Quebec Inc., certifies that this brief contains 40 pages, which complies with the 40-page limit set in the Court's Order Granting the Parties' Joint Stipulation Relating to Defendants' Responses to Plaintiff's Second Amended Complaint dated August 2, 2024 (ECF No. 424).

Dated: August 30, 2024

Respectfully submitted,

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.

/s/ Peter A. Biagetti
Esteban Morales
Peter A. Biagetti

Attorneys for Defendants
MindGeek, S.à r.l. (specially appearing), MG Freesites Ltd, MG Premium Ltd, MindGeek USA Incorporated, MG Global Entertainment Inc., and 9219-1568 Quebec Inc.