# EXHIBIT 24

# [PORTIONS OF EXHIBIT FILED UNDER SEAL PURSUANT TO APPLICATION TO SEAL]

**THIS SHARE PURCHASE AGREEMENT** made on the 30th day of January, 2023, as amended on this 15th day of March, 2023.

**BETWEEN:**



(hereinafter called the "**Vendor**")

OF THE FIRST PART

**ECP THREE LIMITED**, a business company existing under the laws of the British Virgin Islands, having its registered office at 2nd Floor, Water's Edge Building, PO Box 2429, Wickhams Cay II, Road Town, Tortola, British Virgin Islands and registered with the BVI registry of corporate affairs under number 2112777

(hereinafter called the "**Purchaser**")

OF THE SECOND PART

**RECITALS:**

**WHEREAS** as of the date hereof, the Vendor owns 590,161 Class X Shares and 1 Class Y Share, each without nominal value, in the capital of MindGeek S.à r.l., a Luxembourg private limited liability company (*société à responsabilité limitée*), having its registered office at 32, boulevard Royal, L-2449 Luxembourg and registered with the Luxembourg trade and companies register under number B181337 (the "**Corporation**"), ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ of the shares of the Corporation outstanding as at the date hereof (such shares being the "**Purchased Shares**");

**AND WHEREAS** the Vendor wishes to sell to the Purchaser, and the Purchaser wishes to acquire from the Vendor, the Purchased Shares;

**AND WHEREAS** as consideration for the acquisition by the Purchaser of the Purchased Shares, the Purchaser shall pay to the Vendor the Purchase Price all in accordance with the terms of this Agreement (collectively, the "**Sale Transaction**");

**AND WHEREAS** after giving effect to the Sale Transaction, the Purchaser will own one hundred percent (100%) of the issued and outstanding Purchased Shares;

**NOW THEREFORE THIS AGREEMENT WITNESSETH** that in consideration of the mutual covenants herein contained, and for other good and valuable consideration, receipt whereof is by them acknowledged, the parties hereto hereby agree as follows:

### ARTICLE 1.00 - INTERPRETATION

1.01   As used in this Agreement or any amendment or supplement hereof, the following words and phrases have the following meanings, respectively:

1.17   The following are the Schedules to this Agreement:

| | |
|---|---|
| Schedule 1.01(a) | -   Monthly Corporation Financial Statements |
| Schedule 1.01(b) | -   Quarterly Corporation Financial Statements |
| Schedule 1.01(c) | -   Visa & Mastercard Events |
| Schedule 4.02 | -   Restrictive Documents |
| Schedule 4.03 | -   Registrations |
| Schedule 4.04 | -   Authorized Capital & Issued Capital |
| Schedule 4.05 | -   Title to the Assets |
| Schedule 4.06 | -   Subsidiaries |
| Schedule 4.07 | -   Authorizations |
| Schedule 4.08 | -   Consents |
| Schedule 4.10 | -   Undisclosed Liabilities |
| Schedule 4.11 | -   Absence of Changes |
| Schedule 4.12 | -   Absence of Unusual Transactions |
| Schedule 4.13 | -   Non-Arm's Length Transactions |
| Schedule 4.15 | -   Tax Matters |
| Schedule 4.16 | -   No Joint Venture Interest, etc. |
| Schedule 4.17 | -   Absence of Guarantees |
| Schedule 4.19 | -   Legal Matters |
| Schedule 4.22 | -   Intellectual Property |
| Schedule 4.24 | -   Violation or Breach of Real Property Leases |
| Schedule 4.26 | -   Material Contracts |
| Schedule 4.28 | -   Employee and Independent Contractor Matters |
| Schedule 4.30 | -   Benefit Plans |
| Schedule 4.36 | -   Indebtedness |
| Schedule 7.15(i) | -   Required Regulatory Approvals |
| Schedule 7.15(i)-2 | -   Required Third Party Consents |
| Schedule 9.01(v)(f) | -   Competition Act Matters |
| Schedule 13.13 | -   Confidentiality Disclosure Parties |

1.18   The following are Exhibits to this Agreement:

| | |
|---|---|
| Exhibit A | -   Issued Share Capital of the Corporation |
| Exhibit B | -   Form of Share Pledge Agreement |
| Exhibit C | -   Form of Non-Competition Agreement |

### ARTICLE 2.00 - PURCHASE AND SALE

2.01   Subject to the terms and conditions hereof, the Vendor hereby agrees to sell, assign and transfer to the Purchaser and the Purchaser hereby agrees to purchase from the Vendor all of the Purchased Shares.

### ARTICLE 3.00 - PURCHASE PRICE

3.01   

3.02   The Cash Purchase Price shall be payable by the Purchaser as follows:

16

(i) by delivery to an account designated by the Vendor of a wire transfer of immediately available funds, in the aggregate amount of ▓▓▓▓▓▓▓ on the Closing Date (the "**Closing Date Cash Payment**"), which payment shall be nonrefundable;

(ii) by delivery to the Vendor, as per Vendor's instructions, of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in the form of a wire transfer of immediately available funds no later than on the first Business Day of each calendar month following the Closing (each such payment, a "**Monthly Cash Payment**"), which payments shall be nonrefundable, provided, that any Monthly Cash Payment shall be applied first to any unpaid default interest, penalties or fees due; and

(iii) by delivery to the Vendor, as per Vendor's instructions, of a cash payment of ▓▓▓▓▓▓▓ (plus any unpaid default interest, penalties and fees due) in the form of a wire transfer of immediately available funds no later than the date that the four year anniversary of the Closing Date (the "**Final Cash Payment**"), which payment shall be nonrefundable.

3.03 If the Purchaser fails to deliver any payment described in Section 3.02 on or prior to the due date set forth above, any outstanding balance(s) shall bear interest at a rate of ten percent (10%) per annum from the date of default until full repayment and shall be calculated and compounded daily.

3.04 On the Closing Date, against delivery by the Vendor of certificates evidencing the Purchased Shares duly endorsed for transfer and accompanied by instruments of transfer in the manner contemplated by or in order to give effect to the transactions contemplated under this Agreement and the Share Pledge Agreement (or in the event of non-certificated shares, in the manner in which the Purchased Shares are duly registered for transfer), and upon satisfaction of all other terms and conditions to be satisfied by the Vendor hereunder, the Purchaser shall make the payment set out in Section 3.02 in accordance with the instructions delivered by the Vendor to the Purchaser prior to the Closing, and the Purchaser and ECP Alpha Holdings Ltd. pledge the Purchased Shares and all shares of the Purchaser (the "**ECP Shares**") to the Vendor in accordance with the terms of the Share Pledge Agreement as security for Purchaser's obligations to the Vendor in respect of the Monthly Cash Payments and the Final Cash Payment as set forth in this Agreement.

## ARTICLE 4.00 – REPRESENTATIONS AND WARRANTIES IN RESPECT OF THE TARGET ENTITIES

The Vendor represents and warrants to the Purchaser that all the statements set out in this Article (except as provided for in the Schedules annexed hereto) are accurate as of the date hereof and acknowledges that the Purchaser is relying on such representations and warranties in entering into this Agreement and the Ancillary Agreements to which it is a party and completing the transactions contemplated herein and therein.

4.01 **No Conflict.** Subject to obtaining the Consents referred to in Schedule 4.08 of this Agreement, the Consents required pursuant to the Shareholders' Agreement, and the Authorizations and/or filings referred to in Schedule 4.07 of this Agreement, the execution and delivery by the Vendor of this Agreement and each Ancillary Agreement to which it is a party and the performance by the Vendor of its obligations hereunder and thereunder and the completion of the transactions contemplated by this Agreement and the Ancillary Agreements do not and will not (or would not with the giving of notice, the lapse of time, or the happening of any other event or condition):

(i) constitute or result in a violation of, default under or breach of, require any consent to be obtained under or give rise to any termination rights by a third party, payment obligation

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                       Bergmair_Fleites_00002710