# EXHIBIT 54

# [PORTIONS OF EXHIBIT FILED UNDER SEAL PURSUANT TO APPLICATION TO SEAL]

CONFIDENTIAL

Page 1

1                UNITED STATES DISTRICT COURT

2                CENTRAL DISTRICT OF CALIFORNIA

3                     SOUTHERN DIVISION

4

5     SERENA FLEITES and JANE DOE   )
      NOS. 1 through 33,            )
6                                   ) Case No.
                    Plaintiffs,     ) 2:21-CV-04920-CJC-ADS
7                                   )
           VS.                      )
8                                   )
      MINDGEEK S.A.R.L.; MG         )
9     FREESITES, LTD.; MINDGEEK     )
      USA INCORPORATED; MG PREMIUM  )
10    LTD.; RK HOLDINGS USA INC.;   )
      MG GLOBAL ENTERTAINMENT,      ) Pages 1-358
11    INC.; TRAFFICJUNKY INC.;      )
      BERND BERGMAIR; FERAS ANTOON; )
12    DAVID TASSILLO; COREY URMAN;  )
      VISA INC.; COLBECK CAPITAL    )
13    DOES 1-10; BERGMAIR DOES      )
      1-10,                         )
14                                  )
                    Defendants.     )
15    _____ )

16

                    C O N F I D E N T I A L

17

18    VIDEOTAPED DEPOSITION OF:

19            BERND BERGMAIR

20            THURSDAY, JUNE 15, 2023

21            9:24 A.M.

22

23

24    Reported by:  LINDA NICKERSON

25                  CSR No. 8746

Page 2

 1          Videotaped deposition of BERND BERGMAIR, the

 2     defendant, taken on behalf of the Plaintiffs, on

 3     THURSDAY, JUNE 15, 2023, 9:24 A.M., at 611 Anton

 4     Boulevard, Fifth Floor, Costa Mesa, California,

 5     before LINDA NICKERSON, CSR No. 8746, pursuant to

 6     NOTICE.

 7

 8     APPEARANCES OF COUNSEL:

 9

10     FOR PLAINTIFFS:

11          BROWN RUDNICK, LLP

12          BY:  MICHAEL J. BOWE, ESQ.

13               REUBEN G. GOTTLIEB, ESQ.

14               LAUREN TABAKSBLAT, ESQ. (Via Zoom)

15               JOHANNA FAY, ESQ. (Via Zoom)

16               ANUM MESIYA, ESQ. (Via Zoom)

17          7 Times Square

18          New York, New York  10036

19          (212) 209-4800

20          mbowe@brownrudnick.com

21          rgottlieb@brownrudnick.com

22          ltabaksblat@brownrudnick.com

23          jfay@brownrudnick.com

24          amesiya@brownrudnick.com

25     ///

CONFIDENTIAL

Page 3

```
 1        APPEARANCES OF COUNSEL (Continued):

 2

 3     FOR PLAINTIFFS:

 4          BROWN RUDNICK, LLP

 5          BY:  DAVID MARC STEIN, ESQ.

 6          2211 Michelson Drive

 7          Seventh Floor

 8          Irvine, California  92612

 9          (949) 752-7100

10          dstein@brownrudnick.com

11

12     FOR MINDGEEK DEFENDANTS:

13          DECHERT, LLP

14          BY:  KATHLEEN NICHOLSON MASSEY, ESQ.

15               ALLISON DEJONG, ESQ. (Via Zoom)

16               HAYDEN COLEMAN, ESQ. (Via Zoom)

17               MICHELLE YEARY, ESQ. (Via Zoom)

18          1095 Avenue of the Americas

19          New York, New York  10036

20          (212) 698-3500

21          kathleen.massey@dechert.com

22          allison.dejong@dechert.com

23          michelle.yeary@dechert.com

24          hayden.coleman@dechert.com

25
```

EXHIBIT C, PAGE 381

CONFIDENTIAL

Page 4

```
 1        APPEARANCES OF COUNSEL (Continued):

 2

 3        FOR DEFENDANT VISA, INC.:

 4             WEIL, GOTSHAL & MANGES, LLP

 5             BY:  SYDNEY HARGROVE, ESQ.

 6             2001 M Street NW

 7             Suite 600

 8             Washington, DC  20036

 9             (202) 682-7094

10             sydney.hargrove@weil.com

11

12        FOR DEFENDANT DAVID TASSILLO:

13             MORVILLO, ABRAMOWITZ, GRAND, IASON & ANELLO, PC

14             BY:  ALEX PEACOCKE, ESQ. (Via Zoom)

15                  RYAN McMENAMIN, ESQ. (Via Zoom)

16             565 Fifth Avenue

17             New York, New York  10017

18             (212) 856-9600

19             apeacocke@maglaw.com

20             rmcmenamin@maglaw.com

21   ///

22   ///

23   ///

24

25        APPEARANCES OF COUNSEL (Continued):
```

CONFIDENTIAL

Page 5

```
 1
 2        FOR DEFENDANT BERND BERGMAIR:
 3             WALDEN, MACHT & HARAN, LLP
 4             BY:  RONALD G. WHITE, ESQ.
 5                  JAMES MEEHAN, ESQ. (Via Zoom)
 6                  JEFFREY C. SKINNER, ESQ. (Via Zoom)
 7             250 Vesey Street
 8             Twenty-Seventh Floor
 9             New York, New York  10281
10             (212) 335-2030
11             rwhite@wmhlaw.com
12             jmeehan@wmhlaw.com
13             jskinner@wmhlaw.com
14
15        FOR DEFENDANT COREY URMAN:
16             MINTZ, LEVIN, COHN, FERRIS,
17             GLOVSKY AND POPEO, PC
18             BY:  PETER CHAVKIN, ESQ. (Via Zoom)
19                  KERIME S. AKOGLU, ESQ. (Via Zoom)
20             919 Third Avenue
21             New York, New York  10022
22             (212) 935-3000
23             pchavkin@mintz.com
24             ksakoglu@mintz.com
25
```

EXHIBIT C, PAGE 383

CONFIDENTIAL

Page 6

1      APPEARANCES OF COUNSEL (Continued):

2

3      FOR DEFENDANT FERAS ANTOON:

4           COHEN & GRESSER, LLP

5           BY:  JASON BROWN, ESQ. (Via Zoom)

6           800 Third Avenue

7           New York, New York  10022

8           (212) 957-7600

9           jbrown@cohengresser.com

10

11     ALSO PRESENT:

12          DAVID WALCK (Videographer)

13          ANTHONY PENHALE (MindGeek Canada)

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT C, PAGE 384

CONFIDENTIAL

Page 218

```
 1        A     That was imposed by the lender.

 2        Q     My question was:  Did you ever talk to

 3   Mr. Antoon about it?

 4        A     I think I was on a call with the lender and

 5   Antoon and Tassillo where this was conveyed, yes.

 6        Q     Okay.  Why were you on that call?

 7        A     Because I was a ███████████ UBO and the

 8   lender had -- those were -- ██████████████████

     ████████████████████████████████ And then the

10   lender -- as a result of the New York Times article

11   and the fallout, the lender I think upped the

12   interest rate, and they moved the salaries which

13   were previously not under this dividend cap.  They

14   moved it under the dividend cap.

15        Q     When you say they moved it, how did they do

16   all that?  Did they just do it themselves?

17              MS. MASSEY:  Object to form.

18              THE WITNESS:  There is -- you could only --

19   you would have needed a -- another lender to stand

20   by readily to refinance all of this in the absence

21   of which you -- they basically tell you what the --

22   what the conditions are.  There's no negotiating.

23   BY MR. BOWE:

24        Q     I'm confused.  There's a lending agreement

25   that sets out the terms of the loan and all that.
```

CONFIDENTIAL

Page 219

1              Do they get to change it at any time they
2         want or are you in default?
3              A          ████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
████████████████████████████████████████████████  And
7         as a result of the December 2020 article, Visa and
8         MasterCard paused the billing.
9              MS. HARGROVE:  Objection.
10             MR. BOWE:  Keep going.  I don't think you
11        get to object to his answer.
12             Go ahead.  Keep going.
13             THE WITNESS:  ████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
█████████████████████████████████████████████████████
17        BY MR. BOWE:
18             Q    So you were -- they claimed you were in
19        default?
20             MS. MASSEY:  Object to form.
21             MR. WHITE:  Objection.
22             THE WITNESS:  I don't remember the
23        technicality, █████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████

CONFIDENTIAL

Page 220

1       ████████████████

2       BY MR. BOWE:

3            Q    Okay.  Well, you owned the  ████████  of this

4       company and you considered whether you were in

5       default or not a technicality?

6                 MS. MASSEY:  Object to form.

7                 MR. WHITE:  Objection.

8                 THE WITNESS:  ████████████████████████

        ████████████████████████████████████████████████

        ████  ████████████████████████████

11      BY MR. BOWE:

12           Q    Okay.  That wasn't my question.  Did they

13      declare you in default?  That was my question.

14                MR. WHITE:  Objection.

15                THE WITNESS:  I don't remember.

16      BY MR. BOWE:

17           Q    Okay.  This is a pretty big deal, wasn't

18      it, and you don't remember?

19                MS. MASSEY:  Object to form.

20                THE WITNESS:  I don't remember.  The whole

21      fiasco that was caused by those allegations, you

22      know, overshadowed any -- any other aspects.

23      BY MR. BOWE:

24           Q    What was the fiasco?

25           A    Well, you know, ████████████████████████

CONFIDENTIAL

Page 221

```
 1        Q    That overshadowed all other issues?
 2        A    Those legal/technical -- if the majority of
 3   the cash that generates -- gets generated by the
 4   company goes to servicing the debt and that drops,
 5   that, yeah, has a meaningful impact to it.
 6        Q    So I still don't have an answer to my
 7   question.
 8             Did the lenders declare you in default; yes
 9   or no?
10             MS. MASSEY:  Object to form.
11             MR. WHITE:  Objection.  He answered.
12             THE WITNESS:  I don't recall.
13   BY MR. BOWE:
14        Q    Now, if you're in default and they didn't
15   allow you to cure, you would have lost the company,
16   right?
17             MS. MASSEY:  Object to form.
18             THE WITNESS:  Say again, please.
19   BY MR. BOWE:
20        Q    If they declared you in default and called
21   the loan, you would have lost the company, right?
22             MS. MASSEY:  Object to form.
23             MR. WHITE:  Objection.
24             THE WITNESS:  Speculation.
25   BY MR. BOWE:
```

EXHIBIT C, PAGE 388

CONFIDENTIAL

Page 222

```
 1        Q    What would you have done if on the day
 2   after the New York Times story, they declared a
 3   fault and called the loan?  Could you have paid the
 4   loan?
 5           MS. MASSEY:  Object to form.
 6           MR. WHITE:  Objection.
 7           THE WITNESS:  I don't know what I would
 8   have done.
 9   BY MR. BOWE:
10        Q    Okay.  ████████████████████
     ████████████████████████████████████
     ██████████████████████████████████████████████
     ████████████████████████
14           So in order to know that, you must have
15   known what your options were?
16           MS. MASSEY:  ████████████████████
     ████████████████████████████████████
18   BY MR. BOWE:
19        Q    Sir?
20        A    Sorry.  Repeat, please.
21        Q    Sure.  At the time of this discussion, did
22   you think you had a choice but to do what they said?
23           MR. WHITE:  Objection.
24           THE WITNESS:  I don't -- I don't remember.
25   BY MR. BOWE:
```

EXHIBIT C, PAGE 389

CONFIDENTIAL

Page 223

1        Q    You don't remember? ▮▮▮▮▮▮▮▮▮▮▮

▮      ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3          MS. MASSEY:  Object to form.

4          MR. WHITE:  Objection.

5  BY MR. BOWE:

6        Q    Yes or no.

7        A    In business, there's always a risk.

8        Q    Sir, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮      ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮      ▮▮▮▮

11        MS. MASSEY:  Object to form.

12        MR. WHITE:  Objection.

13        THE WITNESS:  It's speculation.

14  BY MR. BOWE:

15       Q    You can't answer that -- well, at the time,

16  did you think your entire investment was at risk?

17        MR. WHITE:  Objection.

18        THE WITNESS:  By definition, any investment

19  is always at risk.

20  BY MR. BOWE:

21       Q    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮      ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮      ▮▮▮▮▮▮

24        MS. MASSEY:  Object to form.

25        MR. WHITE:  Objection.

**EXHIBIT C, PAGE 390**

CONFIDENTIAL



Page 224

1          THE WITNESS:  I don't remember.

2     BY MR. BOWE:

3          Q    Do you remember talking to anyone about it?

4          MS. MASSEY:  Object to form.

5          THE WITNESS:  About what?

6     BY MR. BOWE:

7          Q

9          MS. MASSEY:  Object to form.

10          THE WITNESS:

12     BY MR. BOWE:

13          Q    Okay.  What did they say they were going to

14     do if you didn't agree to their terms?

15          MS. MASSEY:  Object to form.

16          MR. WHITE:  Objection.

17          THE WITNESS:  I don't remember such

18     conversation.

19     BY MR. BOWE:

20          Q

EXHIBIT C, PAGE 391

Page 225

1          A          ███

2          Q     Okay.  And -- but you don't remember what

3     they said they were going to do if you didn't agree

4     to that?

5               MS. MASSEY:  Object to form.

6               THE WITNESS:  I don't recall such

7     conversation.

8     BY MR. BOWE:

9          Q     Well, you understand -- you recall part of

10    the conversation, it sounds like, you don't recall

11    the other half; is that right?

12              MR. WHITE:  Objection.

13              MS. MASSEY:  Object to form.

14              THE WITNESS:  I'm not saying such

15    conversation ever happened.

16    BY MR. BOWE:

17         Q     Did you have a conversation -- ██████████

██    ████████████████████████████████

██    ████████████████████████████

20              MS. MASSEY:  Object to form.

21              THE WITNESS:  █████████████████████

██    ████████████████████████████████████

██    ██████████████████████████████████████████

██    ██████████████████████████████████████████

██    ██████████████

CONFIDENTIAL

Page 226

1    BY MR. BOWE:

2         Q    Okay.  What did you understand would happen

3    if you didn't agree?

4              MR. WHITE:  Objection.

5              THE WITNESS:  I didn't -- that was not --

6    not agreeing wasn't an option.

7    BY MR. BOWE:

8         Q    Why not?

9         A    

10        Q

13        A    Sorry?

14        Q

16        A

24        Q    Sure, but why would you need --

25        A    Sorry.  Lender.

EXHIBIT C, PAGE 393

CONFIDENTIAL

Page 227



1

16      Q      You don't remember agreeing to it?

17      A      That's right.

18      Q      But when you said you --

why did you say

20      that?

21              MR. WHITE:  Objection.

22      BY MR. BOWE:

23

25              MS. MASSEY:  Object to form.

CONFIDENTIAL

Page 357

1    STATE OF CALIFORNIA    )

2                          )   ss

3    COUNTY OF ORANGE       )

4            I, LINDA NICKERSON, CSR #8746, in and for

5    the State of California do hereby certify:

6            That, prior to being examined, the witness

7    named in the foregoing deposition was by me duly

8    sworn to testify the truth, the whole truth, and

9    nothing but the truth;

10           That said deposition was taken down by me in

11   shorthand at the time and place therein named, and

12   thereafter reduced to typewritten form at my

13   direction, and the same is a true, correct, and

14   complete transcript of the testimony at said

15   proceedings.

16           Before completion of the deposition, review

17   of transcript [ ] was [X] was not requested.  If

18   requested, any changes made by the deponent (and

19   provided to the reporter) during the period allowed

20   are appended hereto.

21           I further certify that I am not interested

22   in the event of the action.

23   WITNESS MY HAND this 21st day of June, 2023.

24           *Linda Nickerson*

25               LINDA NICKERSON, CSR No. 8746

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.