# EXHIBIT 71

# [PORTIONS OF EXHIBIT FILED UNDER SEAL PURSUANT TO APPLICATION TO SEAL]

Michael J. Bowe
(*pro hac vice*)
mbowe@brownrudnick.com
Lauren Tabaksblat
(*pro hac vice*)
ltabaksblat@brownrudnick.com
**BROWN RUDNICK LLP**
7 Times Square
New York, NY 10036
Phone: 212.209.4800
Fax:    212.209.4801

David M. Stein (State Bar # 198256)
dstein@olsonstein.com
**OLSON STEIN LLP**
240 Nice Lane # 301
Newport Beach, CA 92663
Phone: 949.887.4600

**Attorneys for Plaintiff**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENA FLEITES,<br><br>Plaintiff,<br><br>v.<br><br>MINDGEEK S.A.R.L. a foreign entity; MG FREESITES, LTD., a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; MG PREMIUM LTD, a foreign entity; MG GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 QUEBEC, INC., a foreign entity; BERND BERGMAIR, a foreign individual; FERAS ANTOON, a foreign individual; DAVID TASSILLO, a foreign individual; VISA INC., a Delaware corporation; REDWOOD CAPITAL MANAGEMENT, LLC, a Delaware corporation; REDWOOD MASTER FUND, LTD, a foreign | Case No. 2:21-cv-4920-WLH-ADS<br><br>**DECLARATION OF JOÃO P. SANTOS, CPA IN SUPPORT OF PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Judge: Hon. Wesley L. Hsu<br><br>SAC filed: May 23, 2024 |

DECLARATION OF JOÃO P. SANTOS IN SUPPORT OF PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

| | |
|---|---|
| 1 | entity; REDWOOD OPPORTUNITY MASTER FUND, LTD, a foreign entity; MANUEL 2018, LLC, a Delaware corporation; GINGOGERUM, LLC, a Delaware corporation; WHITE-HATHAWAY OPPORTUNITY FUND, LLC, a Delaware corporation; COLBECK CAPITAL MANAGEMENT, LLC, a Delaware corporation, CB MEDIA VENTURES LLC, a Delaware corporation; CB AGENCY SERVICES, LLC, a Delaware corporation; and CB PARTICIPATIONS SPV, LLC, a Delaware corporation, |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | Defendants. |

DECLARATION OF JOÃO P. SANTOS, CPA IN SUPPORT OF PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

1. I, João P. Santos, declare and state as follows:

2. 1. I am a Certified Public Accountant in the state of New Jersey. I was retained by Plaintiff's counsel as an expert witness in the above-captioned action. I am over the age of 18, and I am competent to testify to the matters set forth below. I submit this declaration in support of Plaintiff's Omnibus Opposition to Defendants' Motions to Dismiss Plaintiff's Second Amended Complaint.

3. 2. I graduated with High Honors from Rutgers University with a Bachelor of Science in Accounting in 2002, and I received a license to practice as a Certified Public Accountant in February 2005. I am a current member of the New Jersey State Society of Certified Public Accountants, the American Institute of Certified Public Accountants, and the Portugal U.S. Chamber of Commerce. I am Tax Partner at Mendonca & Partners CPAs LLC and a member of the executive board, where I am responsible for numerous clients of the firm, specifically international clients (both businesses and individuals) that establish operations in the United States.

4. 3. My experience spans many industries including service organizations, namely law firms, restaurant and hospitality organizations, construction, wholesale, and retail industries. I have significant experience in tax compliance and planning for international organizations, both in-bound and out-bound individuals (expatriates), and closely held businesses.

5. 4. The United States Internal Revenue Code (the "Code") imposes U.S. withholding tax at a 30% or reduced treaty rate on several categories of fixed, determinable, annual or periodical ("FDAP") income derived by a foreign person from U.S. sources and not effectively connected with the conduct of a U.S. trade or business (Code Sections 871(a), 881(a), 1441(a), and 1442(a)). FDAP includes the items of income specifically enumerated in Section 881(a)(1)—interest, dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, and emoluments (Code Section 881(a)(1)). FDAP also includes royalties and similar payments for the

use of intangible property (See, e.g., *Commissioner v. Wodehouse*, 337 U.S. 369 (1949); *Bloch v. United States*, 200 F.2d 63 (2d Cir. 1952); Rev. Rul. 74-555, *modified by* Rev. Rul. 76-283; Treas. Reg. Section 1.881-2(b)). Accordingly, dividend or royalty payments from a U.S. person to a foreign person would be subject to 30% withholding absent a reduced treaty rate.

5. The Convention between the Government of the United States of America and the Government of the Grand Duchy of Luxembourg for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital, signed at Luxembourg on April 3, 1996 (the "U.S.-Lux Tax Treaty") provides for certain reduced tax rates for payments between residents of the U.S. and Luxembourg. Specifically, the U.S.-Lux Tax Treaty reduces dividend withholding rates to 15% and 5% depending on the relationship between the payor and the payee (U.S.-Lux Tax Treaty, Article 10, Para. 2) and to 0% for royalty payments (U.S.-Lux Tax Treaty, Article 13). However, only "residents" of the applicable states are entitled to U.S.-Lux Tax Treaty benefits (U.S.-Lux Tax Treaty, Article 1). Further, the Limitation on Benefits provisions of the U.S.-Lux Tax Treaty (U.S.-Lux Tax Treaty, Article 24) (the "LOB") must also be satisfied to obtain treaty benefits. The LOB can be viewed as the final test to qualify for the sought-after treaty benefits and "is primarily intended to ensure that foreign entities receiving treaty benefits have a sufficient relationship to the contracting state in which they are resident to warrant the United States giving up taxation on the basis of source" (BNA Bloomberg, Portfolio 6855-1st: U.S. Income Tax Treaties — The Limitation of Benefits Article, Section I). LOB articles have been referred to as the "principal" weapon in the Treasury Department's arsenal to shut down "treaty shopping" techniques (id. *citing* Berman & Hynes, *Limitation on Benefits Clauses in U.S. Income Tax Treaties*, 29 Tax Mgmt. Int'l J. 692 (Dec. 8, 2000)).

6. The U.S.-Lux Tax Treaty LOB provision generally requires that an entity

2
DECLARATION OF JOÃO P. SANTOS, CPA IN SUPPORT OF PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

be owned by individual residents of the applicable jurisdiction, have an active trade or business in the applicable jurisdiction, or otherwise be publicly traded in the applicable jurisdiction (U.S.-Lux Tax Treaty, Article 24, Para. 2). However, even if an entity does not satisfy the general rules in the LOB provision it is still possible for the entity to get treaty benefits if it satisfies an alternative test. U.S.-Lux Tax Treaty, Article 24, Paragraph 4 states:

> a company that is a resident of a Contracting State shall also be entitled to all the benefits of this Convention if:
>
> (a) 95 percent of the company's shares is ultimately owned by seven or fewer residents of a state that is a party to NAFTA or that is a member State of the European Union and with which the other State has a comprehensive income tax convention; and
>
> (b) amounts paid or accrued by the company during its taxable year
>
>     (i) to persons that are not residents of a state that is a party to NAFTA, residents of a member State of the European Union, or U.S. citizens, and
>
>     (ii) that are deductible for income tax purposes in the company's state of residence (but not including arm's length payments in the ordinary course of business for services or purchases or rentals of tangible property),
>
> do not exceed 50 percent of the gross income of the company for that year.

7. Accordingly, treaty benefits could apply as long as 5% or less of the company's shares is ultimately owned by an individual outside of NAFTA or the European Union and the limited ownership and 50% gross income rules are not violated.

8. Notwithstanding other provisions of Article 24, Paragraph 6 denies the benefits of the U.S.-Lux Tax Treaty with respect to certain income attributable to a

"disproportionate" class of shares if a majority of the class is held by persons other than qualified residents or of a State that is a party to NAFTA or a member State of the European Union. The 1996 Treasury Technical Explanation of the U.S.-Lux Tax Treaty states:

> In general, the shares subject to this paragraph are shares that entitle the shareholder to a disproportionately higher participation in the earnings that the company generates in the other State through particular assets or activities of the company … Such participation may take any form, including dividends or redemption payments … If a company has such a class of shares and 50 percent or more of its owners are not qualified residents or of a State that is a party to NAFTA or a member State of the European Union, the benefits of the Convention are not available to the "disproportionate part" of the income derived from the source State by the distributing company. The disproportionate part of the income is defined as that part of the total income derived by a shareholder that exceeds the portion of the income that the shareholder would have received absent the special terms that gave the shareholder a disproportionate entitlement to income derived from the source State.

9. Accordingly, special terms that drive economics that differ from the ownership percentage could be subject to disallowance under this section of the LOB provision.

10. In addition to technical treaty issues, the Internal Revenue Service can also challenge a tax position or a treaty position based on certain judicial doctrines. For example, the substance-over-form doctrine is often utilized by the Internal Revenue Service to unwind tax structures that are designed to satisfy technical requirements in form but which lack substance beyond tax planning. The substance-over-form doctrine originated in *Gregory v. Helvering*, 293 U.S. 465 (1935), where the Supreme Court of the United States articulated that: "As a general rule, the incident of taxation depends on the substance rather than form of the transaction." Thus, the Supreme Court established that the substance rather than the form of a transaction ought to govern in determining the tax consequences of the transaction. Many tax practitioners agree that these principles extend to treaty interpretation. "In general,

treaty provisions do not preempt common law substance over form principles, and it seems that the IRS is on firm ground in maintaining that even the *comprehensive* Limitation on Benefit articles were *not* intended to do so." Anderson: Analysis of United States Income Tax Treaties (WG&L); ¶ 11.02 Royalties (citing See, e.g., OECD, "Thin Capitalization" ¶ 56, and "Taxation of Entertainers, Artistes and Sportsmen" ¶ 91, each reprinted in Issues in Int'l Tax'n No. 2 (1987). See generally OECD Commentary on art. 1 (as amended through November 1, 1997)). Further, "[T]he position of the United States in this area has been expressed by the Joint Committee on Taxation, which 'continues to believe that the United States should maintain its policy of limiting treaty-shopping opportunities whenever possible, and in exercising any latitude Treasury has to adjust the operation of [a treaty] it should satisfy itself that its rules adequately deter treaty-shopping abuses.' Even in the absence of a Limitation on Benefits article, the U.S. position is that anti-abuse limitations imposed by the domestic law of a Contracting State, such as business purpose requirements and <u>substance-over-form</u>, step transaction and conduct principles, apply. This position appears to have received sufficient acceptance and imitation as to achieve the status of an international consensus and on that basis, arguably, of international law." Anderson: Analysis of United States Income Tax Treaties (WG&L); ¶ 22.02[2] Limitation on Benefits; Commentary and Discussion of Legal Authorities (citing Staff of Joint Comm. on Taxation, Explanation, U.S.-Sweden treaty; Treas. Technical Explanation, U.S.-Israel treaty, 1993 protocol; and Ward, "Abuse of Tax Treaties," 1995/4 Intertax 176 (1995); see OECD Commentary (as amended through July 22, 2010) on art. 1, ¶¶ 7—7.1, 11).

11. If the Court were to accept all allegations Paragraphs 313-356 of the Second Amended Complaint as true and to draw all inferences in favor of the non-moving party (*i.e.*, the Plaintiff), it would be reasonable to conclude that U.S.-Lux Tax Treaty benefits would not have been available to the parties claiming such benefits and

the overall corporate structure could have been challenged by the Internal Revenue Service using the substance-over-form doctrine. In such circumstances it would be reasonable to conclude that the U.S.-Lux Tax Treaty benefits would have been inapplicable to any actual payments made between United States entities and the applicable Luxembourg entity because ███████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████

12. Further, it would be reasonable to conclude that the Internal Revenue Service could have challenged the structure on substance-over-form principles because that doctrine states, "taxation depends on the substance rather than form" and Bergmair conceded that the form was irrelevant, and the parties had agreed to a different substance which was outlined in the Owners' Side Letter. Specifically, Paragraph 320 of the Second Amended Complaint states:

> Bergmair conceded during cross-examination that there was no *bona fide* business purpose for this structure other than to evade paying U.S. taxes by concealing his ownership; absent his Hong Kong residence he would have ████████████████████████████████
> ████████████████████████████████████████████
> ████████████████████████████████████████████
> ████████████████████████████████████████████
> (SAC, Para. 320).

13. Paragraphs 334 would further support an Internal Revenue Service challenge utilizing the substance-over-form doctrine because Bergmair states that the

purpose of the Owners' Side Letter is to facilitate the deviation from the corporate form.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on October 21, 2024 in Union, New Jersey.

/s/ João P. Santos, CPA

---

7
DECLARATION OF JOÃO P. SANTOS, CPA IN SUPPORT OF PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT