# EXHIBIT 178

# [PORTIONS OF EXHIBIT FILED UNDER SEAL PURSUANT TO APPLICATION TO SEAL]

1  Arameh Z. O'Boyle (SBN 239495)
   azoboyle@mintz.com
2  Esteban Morales Fabila (SBN 273948)
   emorales@mintz.com
3  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
   2049 Century Park East, Suite 300
4  Los Angeles, CA 90067
   Telephone: (310) 586-3200
5  Facsimile: (310) 586-3202

6  *[Additional Defendants' Counsel continued on next page]*

7  *Attorneys for Defendants MindGeek*
   *S.à r.l., MG Freesites Ltd, MG Premium*
8  *Ltd, MindGeek USA Incorporated, MG*
   *Global Entertainment Inc., and 9219-1568*
9  *Quebec Inc.*

10              **UNITED STATES DISTRICT COURT**

11            **CENTRAL DISTRICT OF CALIFORNIA**

12  K.A.                              Case No. 2:24-cv-04786-WLH-ADS

13              Plaintiffs,           **REPLY IN SUPPORT OF MOTION**
         v.                           **TO DISMISS OF DEFENDANTS**
14                                    **MINDGEEK S.A R.L., MG**
    MINDGEEK S.À R.L, et al.,         **FREESITES LTD, MG PREMIUM**
15                                    **LTD, MINDGEEK USA**
              Defendants.            **INCORPORATED, MG GLOBAL**
16                                    **ENTERTAINMENT INC, AND**
                                      **9219-1568 QUEBEC INC.**
17
                                      **[UNREDACTED VERSION OF**
18                                    **DOCUMENT PROPOSED TO BE**
                                      **FILED UNDER SEAL]**
19
                                      Hearing Date:    January 31, 2025
20                                    Hearing Time:    1:30 p.m.
                                      Courtroom:       9B
21                                    Judge:           Hon. Wesley L. Hsu

22                                    Complaint Filed:  June 7, 2024
                                      Trial Date:       None Set
23

24

25

26

27

28

Seth R. Goldman (*Pro Hac Vice App. Forthcoming*)
sgoldman@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
919 Third Avenue
New York, NY 10022
Telephone: (212) 692-6845
Facsimile: (212) 983-3115

Peter A. Biagetti (*Admitted Pro Hac Vice*)
pabiagetti@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
Facsimile:  (617) 542-2241

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page(s)

ARGUMENT ........................................................................................... 1

I.   PLAINTIFFS HAVE NOT SUFFICIENTLY PLED BENEFICIARY
     LIABILITY UNDER THE TVPRA ..................................................... 1

     A.   Plaintiffs Fail to Allege that MindGeek Is a Participant in a Trafficking
          Venture. ................................................................................... 1

     B.   Plaintiffs Also Fail to Allege that MindGeek Knowingly Benefitted. ... 3

II.  PLAINTIFFS' REMAINING CLAIMS ARE DEFICIENT AND SHOULD
     BE DISMISSED ............................................................................... 5

     A.   Plaintiffs' State Claims Are Barred by Applicable Statutes of
          Limitations ............................................................................... 5

     B.   Plaintiffs' Claim for Intentional Infliction of Emotional Distress Is
          Insufficiently Pled. .................................................................... 8

     C.   Plaintiffs Have Not Pled Any Facts to Support MindGeek's Intentional
          Commission of Any Injury-Inflicting Conduct. ............................... 10

     D.   Plaintiffs' Misappropriation Claims Are Insufficiently Pled for
          Additional Reasons. ................................................................... 11

     E.   Plaintiffs' Unfair-Competition Claims Must Be Dismissed Because
          They Have Not Alleged Any Economic Injury. ................................ 13

     F.   Plaintiffs Have Not Alleged a Claim for Civil Conspiracy ................ 13

     G.   Plaintiffs Have Not Stated, and Cannot State a Claim for Negligence. 14

III. SECTION 230 REQUIRES DISMISSAL OF ALL OF PLAINTIFFS'
     CLAIMS ......................................................................................... 16

     A.   MindGeek Did Not Create or Develop the Unlawful Content. ........... 16

     B.   FOSTA's Exception to Section 230 Immunity Does Not Apply ......... 21

IV.  PLAINTIFFS' JURISDICTIONAL ARGUMENTS FAIL TO MEET
     THEIR BURDEN. ............................................................................ 22

     A.   MindGeek S.à r.l. Has No Relevant Contacts with the United States and
          Thus Is Not Subject to Jurisdiction under Rule 4(k)(2) or 18 U.S.C.
          § 2255(c) as to of Any Plaintiffs' Claims. ..................................... 22

B.  Plaintiffs' Alter-Ego Allegations Fail for the Same Reasons as in
Fleites. ................................................................................... 25

C.  MindGeek USA's and MG Global's Prior Headquarters in California
Do Not Allow the Exercise of Personal Jurisdiction Over the State-Law
Claims Here. ......................................................................... 26

1.  There is no general personal jurisdiction .................................. 26

2.  There is no specific personal jurisdiction. .............................. 28

D.  The Non-U.S. Plaintiffs' Claims Have No Relation to the Defendants'
Forum-Based Contacts. ....................................................... 30

E.  Plaintiffs Are Not Entitled to More Jurisdictional Discovery. ............. 33

V.  MindGeek S.À R.L. Is Beyond the Territorial Reach of the TVPRA .......... 34

CONCLUSION ................................................................................. 35

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*42 Ventures v. Rend*,
2020 WL 6257069 (D. Haw. Oct. 23, 2020) .................................................. 24

*AM Tr. v. UBS AG*,
681 F. App'x 587 (9th Cir. 2017) .................................................................. 23

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) ......................................................... 29, 30, 31

*American Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974) ...................................................................................... 7, 8

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
11 F.4th 972 (9th Cir. 2021) ........................................................................... 32

*Baton v. Ledger SAS*,
2021 WL 5226315 (N.D. Cal. Nov. 9, 2021) .......................................... 26, 27

*BNSF Ry. v. Tyrrell*,
581 U.S. 402 (2017) ........................................................................................ 28

*Bristol-Myers Squibb Co. v. Superior Court*,
582 U.S. 255 (2017) ................................................................................. 27, 29

*Burnham v. Superior Ct.*,
495 U.S. 604 (1990) ........................................................................................ 26

*Callahan v. Ancestry.com Inc.*,
2021 WL 783524 (N.D. Cal. Mar. 1, 2021) ................................................... 20

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016) .............................................. 9, 10, 11

*Caraccioli v. Facebook, Inc.*,
700 F. Appx. 588 (9th Cir. 2017) ................................................................... 20

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ........................................................................ 16

*Carroll Shelby Licensing v. Halicki*,
2021 WL 4895736 (C.D. Cal. Apr. 15, 2021) ............................................... 34

*Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*,
878 F. Supp. 2d 1009 (CD. Cal. 2011) ....................................................... 7, 8

*Clark v. Viacom Int'l Inc.*,
   617 F. App'x 495 (6th Cir. 2015) .......................................................... 6

*Cochran v. Air & Liquid Sys. Corp.*,
   2022 WL 7609937 (C.D. Cal. Oct. 13, 2022) ..................................... 28

*Corinna Warm & Studio Warm LLC v. Innermost Ltd.*,
   2022 WL 2062914 (C.D. Cal. Apr. 26, 2022) ....................................... 6

*Diamondback DTNM, LLC v. ShiftPixy, Inc.*,
   2024 WL 5185667 (C.D. Cal. Sep. 27, 2024) .................................... 27

*Doe #1 v. Twitter, Inc.*,
   2023 WL 3220912 (9th Cir. May 3, 2023) ......................................... 20

*Doe v. Aylo Glob. Ent. Inc.*,
   2024 WL 4599539 (C.D. Cal. June 24, 2024) ......................... 5, 6, 7, 23

*Doe v. Bates*,
   2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) .................................... 21

*Doe v. Johnson*,
   2018 WL 3239315 (S.D. Cal. July 3, 2018) ....................................... 10

*Doe v. MG Freesites, Ltd. et al*,
   No. 7:21-cv-00220-LSC (N.D. Ala. Dec. 19, 2024) .......................... 21

*Doe v. MindGeek USA Inc.*,
   574 F. Supp. 3d 760 (C.D. Cal. 2021) .............................................. 4, 7

*Doe v. Reddit, Inc.*,
   2021 WL 5860904 (C.D. Cal. Oct. 7, 2021) ................................ 13, 15

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) ............................................................ 23

*Doe v. WebGroup Czech Republic, a.s.*,
   2024 WL 3533426 (C.D. Cal. July 24, 2024) ............................... 17, 18

*Doe v. WebGroup Czech Republic, a.s.*,
   93 F.4th 442 (9th Cir. 2024) ................................................. 23, 31, 32

*Does v. Reddit, Inc.*,
   51 F.4th 1137 (9th Cir. 2022) ..................................................*passim*

*Dow Chem. Co. v. Calderon*,
   422 F.3d 827 (9th Cir. 2005) ............................................................ 24

*Dyroff v. Ultimate Software Grp., Inc.*,
   934 F.3d 1093 (9th Cir. 2019) .......................................................... 15

*Elizabeth Arden, Inc. v. Merch. of Tennis, Inc.*,
   2011 WL 13217803 (C.D. Cal. Oct. 28, 2011) .................................................. 26

*Engineered Floors, LLC v. Lakeshore Equip. Co.*,
   2023 WL 4203512 (C.D. Cal. May 18, 2023) .................................................... 24

*Fair Housing Council of San Fernando Valley v. Roommates.com,
   LLC*,
   521 F.3d 1157 (9th Cir. 2008) ........................................................... 17, 18

*Fed. Agency of News LLC v. Facebook, Inc.*,
   432 F. Supp. 3d 1107 (N.D. Cal. 2020) ............................................................. 16

*Fleites v. MindGeek S.A.R.L.*,
   2022 WL 18397365 (C.D. Cal. Nov. 17, 2022) ..................................... *passim*

*Fyk v. Facebook, Inc.*,
   808 F. App'x 597 (9th Cir. 2020) ..................................................................... 20

*G.G. v. Salesforce.com, Inc.*,
   76 F.4th 544 (7th Cir. 2023) ................................................................................ 1

*Goddard v. Google, Inc.*,
   640 F. Supp. 2d 1193 (N.D. Cal. 2009) ............................................................ 19

*Hungerstation LLC v. Fast Choice LLC*,
   857 F. App'x 349 (9th Cir. 2021) ..................................................................... 32

*J. McIntyre Mach., Ltd. v. Nicastro*,
   564 U.S. 873 (2011) .................................................................................. 26, 27

*J.B. v. G6 Hospitality, LLC*,
   2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ................................................. 21

*Jackson v. Medical Board of Cal.*,
   2012 WL 13019955 (C.D. Cal. Apr. 19, 2012) .................................................... 7

*Joude v. WordPress Found.*,
   2014 WL 3107441 (N.D. Cal. July 3, 2014) ..................................................... 20

*Knox v. Davis*,
   260 F.3d 1009 (9th Cir. 2001) ............................................................................. 7

*LNS Enters. v. Cont'l Motors, Inc.*,
   22 F.4th 852 (9th Cir. 2022) .............................................................................. 34

*Lu v. Deng*,
   2016 WL 6583599 (C.D. Cal. Nov. 7, 2016) ............................................... 13, 14

*Michaels v. Internet Ent. Grp., Inc.*,
   5 F. Supp. 2d 823(C.D. Cal. 1998) ................................................................... 11

v

*Mullan v. Daniels,*
  2021 WL 1323421 (N.D. Cal. Jan. 29, 2021) ........................................ 6

*Nikogosian v. Cavalry Portfolio Servs., LLC,*
  2012 WL 2568124 (C.D. Cal. July 2, 2012) ......................................... 11

*Pennie v. Twitter, Inc.,*
  281 F. Supp. 3d 874 (N.D. Cal. 2017) ................................................. 20

*Perkins v. Benguet Consol. Mining Co.,*
  342 U.S. 437 (1952) ............................................................................ 27

*Pfister v. Selling Source, LLC,*
  931 F. Supp. 2d 1109 (D. Nev. 2013) ................................................. 24

*Planet Green Cartridges, Inc. v. Amazon.com, Inc.,*
  2023 WL 8943219 (C.D. Cal. Dec. 5, 2023) ....................................... 20

*Ponomarenko v. Shapiro,*
  287 F. Supp. 3d 816 (N.D. Cal. 2018) ................................................ 14

*Quan v. BAM Trading Servs., Inc.,*
  2024 WL 2137631 (N.D. Cal. May 13, 2024) ..................................... 27

*Ranza v. Nike, Inc.,*
  793 F.3d 1059 (9th Cir. 2015) ............................................................ 28

*Reaud v. Facebook Inc.,*
  2024 WL 4126066 (N.D. Cal. Sept. 9, 2024) ...................................... 10

*Roberts v. McAfee, Inc.,*
  660 F.3d 1156 (9th Cir. 2011) .............................................................. 7

*Schwarzenegger v. Fred Martin Motor Co.,*
  374 F.3d 797 (9th Cir. 2004) .............................................................. 27

*Square 1 Bank v. Lo,*
  128 F. Supp. 3d 1257 (N.D. Cal. 2015) ......................................... 29, 30

*Tseng v. PeopleConnect, Inc.,*
  665 F. Supp. 3d 1136 (N.D. Cal. 2023) ................................................ 6

*United States ex rel. Hawkins v. Mantech Int'l Corp.,*
  2024 WL 4332117 (D.D.C. Sep. 27, 2024) ........................................ 35

*United States v. eBay Inc.,*
  2024 WL 4350523 (E.D.N.Y. Sept. 30, 2024) .................................... 19

*Wallach v. Johnson,*
  2019 WL 4977474 (D. Ariz. Oct. 8, 2019) ......................................... 24

REPLY IN SUPPORT OF MOTION TO DISMISS OF MINDGEEK DEFENDANTS
(Case No. 2:24-cv-04786-WLH-ADS)

*Will Co. v. Lee*,
  47 F.4th 917 (9th Cir. 2022) ........................................................23, 32

*Williams v. Countrywide Fin. Corp.*,
  2017 WL 986517 (C.D. Cal. Mar. 13, 2017) .................................... 8

*Yamashita v. LG Chem, Ltd.*,
  62 F.4th 496 (9th Cir. 2023)..............................24, 28, 29, 34

*Yeager v. Bowlin*,
  693 F.3d 1076 (9th Cir. 2012) ........................................................5, 6

**State Cases**

*Christensen v. Superior Court*,
  54 Cal. 3d 868 (1991) ........................................................ 9

*Cross v. Facebook, Inc.*,
  14 Cal. App. 5th 190 (2017) ........................................................ 12

*Delfino v. Agilent Tech., Inc.*,
  145 Cal. App. 4th 790 (2006) ........................................................ 21

*Ibarra v. Carpinello*,
  2011 WL 925719 (Cal. Ct. App. Mar. 18, 2011) .................................. 6

*Kidron v. Movie Acquisition Corp.*,
  40 Cal. App. 4th 1571 (1995) ........................................................ 13

**Federal Statutes**

18 U.S.C. § 1591(a)(1) ........................................................ 1

18 U.S.C. § 1591(a)(2) ........................................................1, 22

18 U.S.C. § 1595(a) ........................................................ 2

18 U.S.C. § 1596(a) ........................................................ 34

18 U.S.C. § 2255(c) ........................................................ 22

18 U.S.C. § 3271(a) ........................................................ 35

**State Statutes**

Cal. Bus. & Prof. Code §§ 17200 & 17500........................................................ 8

Cal. Civ. Code § 1780.85........................................................ 8

Cal. Civ. Code § 3344........................................................ 6

Cal. Civ. Code § 3425.3........................................................ 5

**Rules**

Fed. R. Civ. P 4(k)(2) .............................................................. 22, 23

REPLY IN SUPPORT OF MOTION TO DISMISS OF MINDGEEK DEFENDANTS
(Case No. 2:24-cv-04786-WLH-ADS)

<u>**ARGUMENT**</u>

**I.   PLAINTIFFS HAVE NOT SUFFICIENTLY PLED BENEFICIARY LIABILITY UNDER THE TVPRA**

As set forth in MindGeek's Opening Brief here and in its Reply in support of its motion to dismiss in the *Fleites* action, to establish beneficiary liability under the Trafficking Victims Protection Act ("TVPRA"), Plaintiffs must plead that MindGeek "knowingly . . . benefit[ted], financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of [18 U.S.C. § 1591(a)(1)]," *i.e.*, a sex trafficking act.  18 U.S.C. § 1591(a)(2). As in *Fleites*, Plaintiffs have failed to sufficiently allege MindGeek's knowing participation in a venture engaged in sex trafficking, and thus the beneficiary-liability claims must be dismissed.

**A.   Plaintiffs Fail to Allege that MindGeek Is a Participant in a Trafficking Venture.**

Having been alerted by MindGeek's Reply in the *Fleites* action to a threshold failure in their pleading—that alleging participation in a venture does not adequately plead participation in a venture "*which . . . has engaged in an act of sex trafficking*" as required to establish beneficiary liability under the TVPRA, 18 U.S.C. § 1591(a)(2); *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 548 (7th Cir. 2023)— Plaintiffs' Opposition belatedly offers two sentences claiming that "MindGeek's creation, hosting, and monetization of CSAM depicting Plaintiffs are commercial sex acts under the TVPRA." Opp. 12.  But this is not enough to save their fundamentally deficient theory.  Untethered as they are to *any* specified facts from, or even a citation to, their Complaints, these conclusory sentences cannot magically transform MindGeek's participation in a legal venture into one that has engaged in an act of sex trafficking. This Court therefore should not credit the tactic.

With that gambit exposed, Plaintiffs are left to echo versions of the same arguments advanced in *Fleites*: that how MindGeek operates its business and makes

its money, which Plaintiffs pejoratively characterize at length, Opp. 10-12, 14, is sufficient conduct to make it liable. But behind their repetition of inflammatory language about the allegedly "illicit" nature of MindGeek's business, *see, e.g.*, Opp. 14, the heart of what Plaintiffs describe of MindGeek's own conduct is a *legal* business engaged in *legal* activities. To this end, the Ninth Circuit's *Reddit* case, which Plaintiffs wrongly attempt to discard as somehow irrelevant because it focused on a more limited issue on appeal, Opp. 13, continues to be instructive. While speaking in the context of the FOSTA exception to section 230 immunity, the *Reddit* panel expressly assessed the civil beneficiary-liability portion of the TVPRA, making Plaintiffs' contention that *Reddit* "did not extend [its] standard to the civil analog statute outside the FOSTA exception" simply incorrect. Opp. 13. Indeed, the *Reddit* panel specifically cited Section 1595 to hold that, "[i]n a sex trafficking beneficiary suit against a defendant-website, the most important component is the defendant-website's own conduct—its 'participation in the venture.' *See* 18 U.S.C. § 1595(a)." *Does v. Reddit, Inc.*, 51 F.4th 1137, 1142 (9th Cir. 2022) (noting that "the 'gravamen' of a section 1595 beneficiary claim is the defendant's participation in and benefit from the trafficking scheme," and therefore that, the key conduct for establishing liability is that of the defendant-website itself).

As MindGeek outlined in its opening papers, the facts alleged by Plaintiffs in these cases are no more indicative of MindGeek having participated in a venture engaged in trafficking than the facts alleged in *Reddit*, which the Ninth Circuit held insufficient for beneficiary liability. Mot. 11-13. As in *Reddit*, Plaintiffs allege, in effect:  that MindGeek's moderation practices allowed CSAM to be uploaded to its sites; that MindGeek provided tools that helped users maximize traffic to their videos; that it did not act quickly enough to remove reported videos; and that it "earned revenue from ads it placed alongside Plaintiff's images." Opp. 10-11, 13-14; *see also, e.g.*, K.A. Compl. ¶¶ 39, 59-61, 91, 121. These allegations might be

1    unflattering, but as was the case in *Reddit*, none of this conduct—even if assumed to

2    be true—can establish MindGeek's participation in trafficking.[1]

3         Put simply, and dispositively, Plaintiffs cannot point to *any* allegation of fact

4    in any of the Complaints that evinces MindGeek's participation in the *creation* of the

5    allegedly trafficked content. At best, as shown in the *Fleites* papers and MindGeek's

6    Opening Brief here, Plaintiffs have alleged trafficking by some of MindGeek's users

7    (including Plaintiffs' individual traffickers), but the conduct of those individuals

8    cannot as a matter of law be imputed to MindGeek to automatically transform

9    MindGeek's lawful business into a venture engaged in trafficking. *Reddit*, 51 F.4th

10   at 1142-45.

11        **B.    Plaintiffs Also Fail to Allege that MindGeek Knowingly Benefitted.**

12        As was the case in *Fleites*, even if Plaintiffs had sufficiently pled the existence

13   of a venture engaged in trafficking (and they have not), beneficiary liability under

14   the TVPRA also requires a defendant to have *knowingly* benefitted from participating

15   in the trafficking venture alleged. Plaintiffs have failed to plead that element as to

16   MindGeek.

17        As an initial matter, Plaintiffs again invoke the same two cases cited in the

18   *Fleites* Opposition for the mistaken notion that Defendants need only have

19

20   _____

     [1] Plaintiffs attempt to convert MindGeek's website tools to participation in sex
21   trafficking by arguing that MindGeek's "suggestions, instruction, or intervention" is
     evidence of MindGeek's participation and benefit. Opp. 10-11. Fatal to Plaintiffs'
22   argument is that none of the Complaints' allegations cited in ostensible support of
     this self-serving conclusion specifies any "suggestions, instruction, or intervention"
23   specific to the uploading of illegal content. *See, e.g.*, K.A. ¶¶ 4, 43, 116. Instead, as
     alleged by Plaintiffs, the "How to Succeed" section of Pornhub's website provides
24   only suggestions to users for their selection of tags, writing creative titles, and adding
     a stage name to the title of the video. *Id.* ¶ 116. Plaintiffs then make the leap that the
25   fact that MindGeek included tags like "teen," "school," "babysitter," and
     "old/young" is "demonstrate[ive]" of how MindGeek was "specifically targeting
26   viewers who are interested in child pornography." Not only are those specific
     categories not presumptively and exclusively demonstrative of CSAM, but they
27   mirror similar categories in *Reddit*, which included:   "/r/BestYoungNSFW,"
     "/r/teensdirtie," "/r/TeenBeauties," and "/r/YoungGirlsGoneWild." *Reddit*, 51 F. 4th
28   at 1139.

knowledge that a venture *generally* violated the TVPRA, but need not have *victim-specific* knowledge. Opp. 6-8 (citing *Salesforce.com* and *Doe I v. Deutsche Bank Akteingesellschaft*). But neither of those cases is remotely comparable to the facts alleged here, as MindGeek showed in detail in its *Fleites* papers. *See Fleites* Reply 3-4 (distinguishing applicability of *Salesforce* and *Deutsche Bank* and noting in particular the "overwhelming presence of trafficking" in those cases).

Plaintiffs next string-cite a laundry list of allegations that they represent show MindGeek's "actual knowledge of their participation and benefits from a venture engaged in sex trafficking." Opp. 15 (listing paragraphs). But the allegations themselves fall short of showing "actual knowledge." They say, for instance:  that MindGeek's "business was built" on utilization of CSAM, *id.*, which is not only a misstatement but also not indicative in any way of actual knowledge of MindGeek's participation in a trafficking venture vis-à-vis Plaintiffs; and that the "tags, titles, and comments" on Plaintiffs' videos *should* have indicated that Plaintiffs were minors, and that MindGeek reuploaded disabled videos under different usernames, *id.*, neither of which again has any bearing on whether MindGeek had actual knowledge of a trafficking venture as to Plaintiffs. Even Plaintiffs' contention that MindGeek's human moderators reviewed each video is not, standing alone, dispositive proof of actual knowledge. Though Plaintiffs cite to *Doe v. MindGeek* in purported support, they fail to point out that, in that case, MindGeek was alleged not only to have reviewed each video but *also* to have had specific knowledge of the *Doe* plaintiff's ex-boyfriend, who had posted the relevant videos and was known to have posted videos depicting other victims. *Doe v. MindGeek USA Inc.*, 574 F. Supp. 3d 760, 774 (C.D. Cal. 2021). That is a level of specific knowledge that plainly exceeds Plaintiffs' allegations about MindGeek here.

Read closely, the allegations Plaintiffs compile are subjective and inflated suggestions of, at most, a level of constructive knowledge that, as MindGeek

conclusively established in its Reply in *Fleites*, is not sufficient to show actual knowledge. *Fleites* Reply 3-4. Indeed, Plaintiffs' claims that the furnishing of "tags, titles, and comments" constitutes actual knowledge in this case are identical to those that *Fleites* contended constitute only constructive knowledge, and it is not clear what justifies their apparent elevation here. In any event, Plaintiffs have entirely failed to engage with MindGeek's argument in *Fleites* that the constructive knowledge alleged is insufficient as a matter of law, choosing instead to simply repeat the same futile argument offered in the Opposition in *Fleites*. *Compare* Opp. 15-16 *with Fleites* Opp. 18-19. But as MindGeek has already detailed in its Reply in *Fleites*, that argument fails, even as Plaintiffs have resurrected it here. *See Fleites* Reply 3-4.

## II. PLAINTIFFS' REMAINING CLAIMS ARE DEFICIENT AND SHOULD BE DISMISSED

### A. Plaintiffs' State Claims Are Barred by Applicable Statutes of Limitations

Plaintiffs' contention that their state law claims "did not accrue until MindGeek remove[d] all illicit content of Plaintiffs on its sites", Opp. 43, lacks legal merit. The essence of Plaintiffs' claims of wrongdoing by MindGeek is MindGeek's allegedly unauthorized use of their images. Opp. 42 ("the alleged wrongdoing was the continuous reformatting, re-uploading . . . , dissemination, and monetization of Plaintiffs' CSAM images on MindGeek's sites"). Plaintiffs' non-TVPA state claims premised on this wrongdoing are therefore subject to the single-publication rule. *Doe v. Aylo Glob. Ent. Inc.*, 2024 WL 4599539, at *8 (C.D. Cal. June 24, 2024) (dismissing claims for misappropriation of likeness, violation of right of privacy, false-light invasion of privacy, and intentional infliction of emotional distress as time-barred, because "[c]laims arising from an unauthorized use of a plaintiff's name and image, such as Plaintiff's publicity and privacy claims, are subject to the 'single-publication rule'"); *see also* Cal. Civ. Code § 3425.3; *Yeager v. Bowlin*, 693 F.3d 1076, 1081-82 (9th Cir. 2012) (applying single-publication rule to internet content);

1  *Corinna Warm & Studio Warm LLC v. Innermost Ltd.*, 2022 WL 2062914, at *4
2  (C.D. Cal. Apr. 26, 2022) (applying single-publication rule to Cal. Civ. Code § 3344
3  claim); *Mullan v. Daniels*, 2021 WL 1323421, at *8 (N.D. Cal. Jan. 29, 2021)
4  (dismissing emotional-distress, negligence, and trade-libel claims as time-barred
5  because those claims were based on the same statements as a defamation claim which
6  was subject to the single-publication rule and time-barred); *Tseng v. PeopleConnect,
7  Inc.*, 665 F. Supp. 3d 1136, 1144 (N.D. Cal. 2023) (applying single-publication rule
8  to California UCL claim).
9      Under the single-publication rule, the statute of limitations begins to run when
10 the challenged material is "first made available to the public." *Yeager*, 693 F.3d at
11 1081-82. While the statute of limitations can be reset when a statement is republished,
12 in the context of internet content, such resetting only occurs when "the statement
13 itself is substantively altered or added to, or the website is directed to a new
14 audience." *Yeager*, 693 F.3d at 1082. "[C]ontinuing to host the statement" and/or
15 modifying other parts of the website is not enough to constitute republication." *Id.* at
16 1084; *Aylo Glob. Ent. Inc.*, 2024 WL 4599539, at *9 ("the Subject Videos would not
17 be considered to be republished just by continuing to host the videos"). Reuploading
18 a video in a format that has not been "substantively altered or added to" also does not
19 constitute republication, even when the video is uploaded to a different website that
20 is just as widely-accessible. *See Aylo Glob. Ent. Inc.*, 2024 WL 4599539, at *9
21 (finding that alleged reuploading of original video with a different title did not
22 substantively alter the video or direct the website to a new audience and thus there
23 was no republication of the video); *Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 505
24 (6th Cir. 2015) ("Statements that are posted to a forum that is prominently accessible
25 to the online public have a presumptively global audience, and subsequent alterations
26 of format . . . are not likely to have a measurable effect on the statements' ability to
27 be accessed by a new band of viewers."); *Ibarra v. Carpinello*, 2011 WL 925719, at
28

*9 (Cal. Ct. App. Mar. 18, 2011) ("Defendants' publication on the Internet, no matter how long it remained available thereafter, is deemed a single publication as of the date it was first posted.").

Here, Plaintiffs have failed to identify any legal support for the proposition that MindGeek's alleged continued reformatting, reuploading, monetization, and dissemination of Plaintiffs' videos constitute republication of their original videos on MindGeek's sites.[2] *See Aylo Glob. Ent. Inc.*, 2024 WL 4599539, at *9 (rejecting argument that use of tagging in search algorithm attracted new audiences as opposed to just recommending the videos to users already on the website); *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1168 (9th Cir. 2011) (failure to remove challenged content did not undermine application of single-publication rule). The statute of limitations for their non-TVPA state claims therefore began to accrue at the time Plaintiffs discovered the publication of the illicit videos, which, as explained in MindGeek's Opening Brief at 15-24, was beyond the applicable limitations period for certain of the Plaintiffs' claims.

Similarly, Plaintiffs' contention that their "claims have been tolled since February 19, 2021, due to the filing of the class action complaint in *Doe v. MindGeek USA Inc., et al.*", Opp. 43, misstates applicable law. Because the Related Cases were filed in federal court, as was *Does v. MindGeek USA*, Plaintiffs' state law claims are cross-jurisdictional, and California law does not apply, *see American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), to cross-jurisdictional claims. *See Centaur Classic*

---

[2] Purportedly distinct injuries caused by MindGeek's alleged continued reformatting, reuploading, monetization, and dissemination of Plaintiffs' videos are in fact the "mere continuing impact" from the original posting of the videos and are therefore not subject to the continuing violation doctrine. *See Jackson v. Medical Board of Cal.*, 2012 WL 13019955, at *6 (C.D. Cal. Apr. 19, 2012) (rejecting plaintiff's application of the continuing tort doctrine under single-publication rule, reasoning that the continued public availability of the disputed content was "best characterized as a mere continuing impact from past violations [that] is not actionable' as a new claim"); *see also Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (declining to apply the continuing violation doctrine where the plaintiff "failed to establish that a new violation occurs each time she is denied her visitation or mail privileges" because these denials were "merely the continuing effect of the original suspension").

Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp., 878 F. Supp. 2d 1009, 1017 (CD. Cal. 2011) (holding that "[b]ecause California does not recognize cross-jurisdictional tolling, th[e] Court ha[d] no authority to apply *American Pipe* to toll the state statutes of limitations"); *Williams v. Countrywide Fin. Corp.*, 2017 WL 986517, at *8 (C.D. Cal. Mar. 13, 2017) (adopting reasoning in *Centaur Classic* and dismissing state law claims because "California does not recognize *American Pipe* tolling in cases where a plaintiff pursues claims afforded by the law of one jurisdiction (*i.e.*, California state court), in the courts of another jurisdiction (*i.e.*, federal district court)"). Therefore, Plaintiffs' state law claims were not tolled by the filing of the class action in this jurisdiction.[3]

## B. Plaintiffs' Claim for Intentional Infliction of Emotional Distress Is Insufficiently Pled.

Plaintiffs' claim for intentional infliction of emotional distress ("IIED") fails because it is based on generalized allegations that do not support a reasonable inference that MindGeek acted with the intention of causing the Plaintiffs' emotional distress or that MindGeek's conduct arose to the requisite level of outrageousness.

To support this claim, Plaintiffs argue that, "construed in the light most favorable to Plaintiffs," the complaints allege the MindGeek Defendants: (1) reviewed each of Plaintiffs' underage images or videos; (2) instructed traffickers on

---

[3] Even if the Court were to apply *American Pipe* to toll the statute of limitations of Plaintiffs' state-law claims as of February 19, 2021, certain of these claims would still be untimely based on the face of Plaintiffs' complaints. *See, e.g.*, K.A. (false light and misappropriate of likeness claims barred by applicable statutes of limitations); L.T. (false light claim barred by applicable one-year statute of limitations); N.Y. (misappropriate of likeness claims barred by applicable statutes of limitations); C.S. (same); S.O. (false light claim barred by applicable one-year statute of limitations); W.L. (same); A.K. (public disclosure of private facts, intrusion into private affairs, false light, misappropriation of likeness, Cal. Civ. Code § 1780.85, negligence, Cal. Bus. & Prof. Code §§ 17200 & 17500, intentional infliction of emotional distress, and civil conspiracy claims barred by applicable statutes of limitations); J.L (public disclosure of private facts, intrusion into private affairs, false light, misappropriation of likeness, Cal. Civ. Code § 1780.85, negligence, Cal. Bus. & Prof. Code §§ 17200 & 17500, intentional infliction of emotional distress, and civil conspiracy claims barred by applicable statutes of limitations).

how to optimize the videos; (3) transformed, optimized, and incorporated Plaintiffs'
content into the MindGeek SEO algorithm; (4) stonewalled victims who attempted
to have this illicit content removed; and (5) then affirmatively reuploaded previously
removed content under different names and titles. Opp. 44 (citing to Opp. § I.A).
None of the actual allegations cited, however, is sufficient to show that MindGeek
acted with an intent to inflict *the Plaintiffs'* injuries or that it engaged in conduct with
the realization that injury *to the Plaintiffs* would result. *See Christensen v. Superior
Court*, 54 Cal. 3d 868, 906 (1991) (holding that plaintiffs failed to allege "that the
conduct of any of the defendants *was directed primarily at them*, was calculated to
cause them severe emotional distress, or was done with knowledge of their presence
and of a substantial certainty that they would suffer severe emotional injury"
(emphasis added)). Moreover, Plaintiffs' conclusory allegations that MindGeek
personnel "reviewed" the Plaintiffs' videos "as they repeatedly have claimed to do
for every image uploaded to its tubesites", and "categorized, tagged, optimized" and
"uploaded" the videos to its tubesites, K.A. Compl. ¶ 318, cannot save this claim.
Plaintiffs have not pled facts showing that MindGeek even could have known, let
alone did know, that the videos *of the Plaintiffs* contained underage material and were
created without consent. *See Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056,
1063 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017) (concluding the
plaintiff could not state a claim for IIED because the claim "require[s] intent on the
part of the tortfeasor").

Plaintiffs' allegations also are insufficient to plead that *MindGeek* engaged in
any outrageous conduct. Indeed, Plaintiffs' reliance on their allegation that Plaintiffs
were victimized when they were "coerced and exploited" and the videos were
"uploaded to MindGeek's platform" confirms that the only actionable conduct
alleged was committed by *third parties* and *not* MindGeek. *See* K.A. Compl. ¶ 318.
The remaining conduct that allegedly victimized the Plaintiffs, *i.e.*, "as a matter of

1    course," transferring videos to tubesites and users and failing to police and report

2    such content to the authorities, K.A. Compl. ¶¶ 63, 68, "describes, at best, passive

3    conduct" on the part of MindGeek, which is not actionable. *Reaud v. Facebook Inc.*,

4    2024 WL 4126066, at *3 (N.D. Cal. Sept. 9, 2024); *Caraccioli*, 167 F. Supp. 3d at

5    1064 (dismissing IIED claim where plaintiff failed to show Facebook acted

6    intentionally in declining to remove content).[4] Thus, Plaintiffs' IIED claims must be

7    dismissed.

8         C.    **Plaintiffs Have Not Pled Any Facts to Support MindGeek's Intentional Commission of Any Injury-Inflicting Conduct.**

9    Plaintiffs fail to identify any allegations of fact establishing that MindGeek

10   intentionally committed any conduct giving rise to Plaintiffs' deficient claims of

11   public disclosure of private facts (Count VII), intrusion into private affairs (Count

12   VIII), placing plaintiffs in a false light (Count IX), common law and statutory

13   misappropriation of name and likeness (Counts X and XI), and distribution of private

14   sexually explicit materials in violation of California Civil Code § 1708.85 (Count

15   XII). Plaintiffs contend that MindGeek "approve[d], optimize[d], upload[ed],

16   disseminate[d], [and] republish[ed] the videos to its other tubesites, "and" deploy[ed]

17   MindGeek's algorithm to enhance traffic to Plaintiffs' videos "with knowledge that

18   the Plaintiffs were minors and even, in certain circumstances, after Plaintiffs had

19   requested the videos be removed." Opp. 46-47. Critically, however, Plaintiffs fail to

20   allege *any* specific facts to support an essential element that MindGeek knew that the

22

23   [4] Plaintiffs' reliance on *Doe v. Johnson*, 2018 WL 3239315, at *4 (S.D. Cal. July 3,
     2018) is misplaced. There, the *defendant* committed the outrageous conduct, *i.e.*,
24   placing a camera in the drain of the women's restroom in order to record female
     subordinates, and did not dispute that the IIED claim was sufficiently pled or its
25   merits. In contrast, here, Plaintiffs merely aver in "conclusory terms" that MindGeek
     "knew, or recklessly disregarded, that Plaintiff was harmed by the illegal CSAM
26   featuring her on defendants' websites, but did nothing to help her, and instead
     directed and encouraged the proliferation of CSAM on its websites" without alleging
     "any facts establishing" that MindGeek "acted with an intent to injure [Plaintiffs] or
27   even with a realization that [they] would be injured, as required to sustain an IIED
     claim." *Reaud*, 2024 WL 4126066, at *3.

28

Plaintiffs were minors. Instead, Plaintiffs' allegations concede that: (1) a then-boyfriend or unidentified third party published the videos in the first instance, *not MindGeek*; (2) MindGeek's Terms of Service *prohibit* the posting of minors; (3) MindGeek employees regularly performed content-moderation functions; and (4) once the videos were reported to MindGeek as CSAM, the videos were removed from the MindGeek website. *See, e.g.,* K.A. Compl. ¶¶ 50, 117, 311, 315-316. These allegations demonstrate that MindGeek did not intentionally approve, optimize, upload, disseminate or republish the minor Plaintiffs' videos, and thus foreclose Counts VII, VIII, IX and XII. *See Caraccioli*, 167 F. Supp. 3d at 1064 (dismissing false-light and public-disclosure claims because plaintiff had not plausibly alleged the defendant's publication of the content); *Nikogosian v. Cavalry Portfolio Servs., LLC*, 2012 WL 2568124, at *3 (C.D. Cal. July 2, 2012) (dismissing false-light claim because plaintiff had not alleged that defendant published or otherwise communicated any statement to a third party).[5]

### D.    Plaintiffs' Misappropriation Claims Are Insufficiently Pled for Additional Reasons.

Plaintiffs do not claim they appeared in any ads for MindGeek, nor do they argue that their images were used to suggest that they endorsed products advertised on MindGeek's website or that MindGeek capitalized on their specific identities. Instead, Plaintiffs claim that MindGeek misappropriated their likenesses by (i) "profiting from the unauthorized dissemination of Plaintiffs' images and videos to attract users and drive traffic;" and (ii) "profiting from the unauthorized use by

---

[5] Plaintiffs' reliance on *Michaels v. Internet Ent. Grp., Inc.*, 5 F. Supp. 2d 823, 839-43 (C.D. Cal. 1998) is inapposite. There, the defendant notified the plaintiffs that it had acquired the plaintiffs' sex tape and all rights necessary to publish the tape. One of the plaintiffs notified the defendant that he had not authorized any distribution of the tape and that publication of the tape would violate the plaintiff's common-law and statutory rights to privacy. Here, the complaints acknowledge that third parties uploaded the videos, and specify no allegations showing that MindGeek knew the videos contained underage material and were disseminated without consent.

placing advertisements alongside the videos of Plaintiff." Opp. 48. Both theories are insufficient to state misappropriation claims.

Plaintiffs fail to plead any facts to support MindGeek's user of their videos to "attract users and drive traffic." Opp. 48. Indeed, Plaintiffs fail to identify a single fact in the complaints showing that MindGeek used Plaintiffs' videos to "grow their content library and perfect their SEO analysis," *id.* Instead, Plaintiffs offer only generalized allegations about MindGeek's "unrestricted content" SEO model. *Id.* (citing K.A. Compl. ¶¶ 59-61, 67, 74-77). And again, Plaintiffs concede that third parties published the videos in the first instance. *See supra* Section II(C). *Perfect 10, Inc. v. Google, Inc.* is instructive. 2010 WL 9479060 (C.D. Cal. July 30, 2010), *aff'd*, 653 F.3d 976 (9th Cir. 2011). There, Google owned and operated a service that allowed account holders to create their own blogs hosted on Google's servers, including blogger websites that displayed the plaintiff's name and likeness. *Id.* at *13. The plaintiff argued Google "materially contribut[ed] to violations of Perfect 10's assigned rights of publicity by providing the advertising which satisfies the commercial purpose necessary to establish a violation of Section 3344(a) and the common law." *Id.* The court rejected this argument, explaining that "a plaintiff must show that *the defendant* appropriated the plaintiff's name or likeness for commercial purposes, and there must be a direct connection between the defendant's use of the likeness and that commercial purpose." *Id.* (emphasis in original). Just like Google, MindGeek's alleged "contribution" to third parties' violation of the Plaintiffs' rights "is not the same as actually 'violating'" them. *Id.*

Finally, as a matter of California law, merely hosting an image of the Plaintiffs adjacent to ads with no connection to them is not an actionable "use" of their identities. *See Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 210 (2017) (unrelated ads created by third-party users adjacent to the content that allegedly used plaintiff's

1   likeness did not support that Facebook used plaintiff's identity).  Counts X and XI
2   therefore must be dismissed.

3       **E.     Plaintiffs' Unfair-Competition Claims Must Be Dismissed Because
          They Have Not Alleged Any Economic Injury.**

4       Plaintiffs argue that they were harmed as a result of MindGeek's unfair
5   business practices "when they sustained financial losses by having to pay for therapy,
6   by taking time away from work, and by having to hire investigative firms to have
7   their images taken down." Opp. 54. Plaintiffs ignore, however, their fatal failure to
8   specify any losses of money or property *caused* by MindGeek's unfair competition,
9   *i.e.*, fraudulently deceiving "its users that they were monetizing, distributing, and
10  advertising legitimate, legal content." *See, e.g.,* K.A. Compl. ¶ 432; *Reddit*, 2021 WL
11  5860904, at *9 (dismissing UCL claim where "there is no indication in the
12  [complaint] that Plaintiffs have lost money or property as a result of Reddit's alleged
13  conduct"). On this ground alone, Count XIV must be dismissed.

14      **F.     Plaintiffs Have Not Alleged a Claim for Civil Conspiracy**

15      Plaintiffs contend that "Defendants' civil conspiracy can be easily inferred
16  here based on Colbeck's Redwood's' [sic] and Visa's years-long relationships with
17  MindGeek, their actual knowledge of the extent of MindGeek's criminal conduct,
18  and Defendants' motives to maximize their own profits." Opp. 52 (citations omitted).
19  Not so. To adequately plead a claim for conspiracy, "plaintiffs must allege: (1) the
20  formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the
21  conspiracy, and (3) damages arising from the wrongful conduct." *Lu v. Deng*, 2016
22  WL 6583599, at *5 (C.D. Cal. Nov. 7, 2016). The conspirators must "agree to do
23  some act which is classified as a 'civil wrong' . . . . [and] must have actual knowledge
24  that a tort is planned and concur in the tortious scheme with knowledge of its
25  unlawful purpose." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582
26  (1995).
27
28

Plaintiffs have not alleged facts showing any "meeting of the minds" between the defendants, or even facts regarding actions defendants "took in furtherance of the conspiracy." *See Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 831 (N.D. Cal. 2018). Plaintiffs do not even attempt to identify any such alleged facts and instead merely assert that "MindGeek was engaged in a venture to profit from sex-trafficking and to distribute private, sexually explicit materials, and Visa, Colbeck, and Redwood each knowingly and intentionally agreed to provide MindGeek with the means to effectuate and continue that venture with the resources, assistance, and tools necessary to profit from and grow that venture." Opp. 51. Plaintiffs fail to allege "how the conspiracy formed or operated," and whether the defendants "had knowledge of or intent to aid in wrongful activity." *Id.* Plaintiffs' cursory allegation that "defendants conspired and acted in concert to commit unlawful acts," *see, e.g.*, K.A. Compl. ¶ 453, is not enough to state a claim for civil conspiracy, and thus Count XVI must be dismissed. *See Lu*, 2016 WL 6583599, at *5.

## G. Plaintiffs Have Not Stated, and Cannot State a Claim for Negligence.

Plaintiffs cite to no case law which refutes MindGeek's showing that, on the facts alleged, MindGeek owed Plaintiffs any legal duty. Instead, Plaintiffs continue to baselessly insist that MindGeek breached its duty to use *ordinary* care to prevent injury to Plaintiffs because it was "eminently foreseeable that an unrestricted content business model would lead to the optimization and monetization of illegal and exploitive pornography." Opp. 49. In so doing, Plaintiffs misconstrue the authority which MindGeek has cited and which makes clear that it does not have a legal duty to inspect every single user-generated message before it is displayed to the public. Contrary to Plaintiffs' wishful spin, these cases are not "plainly distinguishable" because they ostensibly involve "purely passive posting of third-party content," whereas MindGeek allegedly "transform[ed], optimiz[ed], commercializ[ed], distribut[ed], and monetize[d] Plaitniffs' CSAM content." Opp. 50.

To the contrary, all of the plaintiffs in the cases MindGeek cites alleged more than "passive conduct" by the defendant. In *Reddit*, the plaintiff alleged that Reddit "knowingly facilitates the posting of CSEM and benefits from the CSEM in the form of increased advertising revenue and subscription fees by premium Reddit users" by, *inter alia*, "highlight[ing] subreddits that feature child pornography to sell advertising on [its] pages." *Doe v. Reddit, Inc.*, 2021 WL 5860904, at *2 (C.D. Cal. Oct. 7, 2021); *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022). The district court nonetheless concluded Reddit did not have "a legal duty to inspect every single user-generated message before it is communicated to a single person or displayed to the public[.]" *Reddit*, 2021 WL 5860904, at *8. And in *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1095 (9th Cir. 2019), the plaintiff alleged that Ultimate Software "steered users to additional groups dedicated to the sale and use of narcotics," and "sent users alerts to posts within groups that were dedicated to the sale and use of narcotics." Still, the court concluded that Ultimate Software did not owe any duty to the plaintiff's son because the relevant "recommendations and notifications" facilitated communication only in a content-neutral fashion. *Id.* at 1097-98.

Here, MindGeek's alleged use of "SEO" (Search Engine Optimization) to "generat[e] traffic and obtain[] content," K.A. Compl. ¶ 48, similarly facilitates communication in a content-neutral fashion because, as with Ultimate Software's alleged "recommendations and notifications," SEO is "used regardless of the groups in which a user participated." *Dyroff*, 934 F.3d at 1101 ("No website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content."). Indeed, Plaintiffs concede as much: "MindGeek's motivation for its unrestricted use of nonconsensual content was its singular priority of using SEO *to be the top search engine website result in any porn related search.*" K.A. Compl. ¶ 59 (emphasis added). Because MindGeek therefore did not owe a duty of care to Plaintiffs, their negligence claims must be dismissed.

# III. SECTION 230 REQUIRES DISMISSAL OF ALL OF PLAINTIFFS' CLAIMS

## A. MindGeek Did Not Create or Develop the Unlawful Content.

Like Fleites before them, Plaintiffs acknowledge that section 230 bars their claims unless their complaints sufficiently allege that MindGeek made a "material contribution" to the unlawful content at issue. Opp. 55. Also like Fleites, in arguing that MindGeek is a "content creator," Plaintiffs fail to confront the actual applicable legal standard and instead attempt to distract the Court with incendiary—and false—allegations regarding MindGeek's purportedly overarching business practices. But just as the Fleites SAC offered no actionable allegations of fact, the Plaintiffs' complaints and Opposition again fail to demonstrate how MindGeek "materially contributed" to the creation of the videos of the Plaintiffs. Therefore, for the reasons explained in MindGeek's Reply in *Fleites* and further below, Plaintiffs' complaints should be dismissed.

Plaintiffs profoundly mischaracterize "[t]he gravamen of MindGeek's [s]ection 230 defense," Opp. 55, just as they misconstrue their underlying allegations as somehow asserting facts showing that MindGeek "create[es] and develop[s] [] child pornography." *See* Opp. 56. The true gravamen of MindGeek's section 230 defense is that, when properly applied to the actual factual allegations as set forth in Plaintiffs' complaints, the governing law—which holds that even if a website operator "could be considered an information content provider," section 230 "still bar[s] [a plaintiff's] claim unless [the website operator] created or developed the *particular [content] at issue*"—dictates dismissal of Plaintiffs' claims as barred by section 230. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) (emphasis added); *accord Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1118 (N.D. Cal. 2020) (section 230 barred plaintiff's claims that Facebook "created other content," including by utilizing "data mining" "to direct users to content in order to generate billions in revenue," as well as the third-party account,

posts, and content at issue). Plaintiffs contend in their Opposition that MindGeek "edits the titles, tags, thumbnails, and scenes" to optimize the search and promotion of uploaded content. These allegations that MindGeek may have created or developed content other than the videos of Plaintiffs—which Plaintiffs do not dispute were all created by third parties—are therefore irrelevant. But even if the Court were to consider Plaintiffs' allegations that extend beyond the specific content depicting Plaintiffs as relevant to the section 230 analysis, the content-neutral tools and processes to which Plaintiffs point—such as titles, tags, thumbnails, and search algorithm—are not sufficient to deny section 230 immunity here because the complaints still fail to show "substantial affirmative conduct on the part of [MindGeek] promoting the use of [its] tools for *unlawful* purposes."[6] *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC,* 521 F.3d 1157, 1174 n.37 (9th Cir. 2008) (emphasis added). Merely asserting in their Opposition that "Plaintiffs have thoroughly pled MindGeek's contributions to the creation and development of illegal content on its websites, including Plaintiffs' videos," without pointing to—or ever pleading—sufficient facts in their complaints to overcome applicable precedent, does not make the assertion one on which this Court may properly rely, for these primary reasons:

*First*, like Fleites, none of the complaints allege that *MindGeek* created Plaintiffs' videos. None of the generalized allegations about MindGeek's overarching business practices remedy this undeniable flaw in Plaintiffs' arguments. For example, they argue with respect to content creation that MindGeek "provides

---

[6] Plaintiff's reliance on earlier cases in which courts allowed claims to proceed against MindGeek is unavailing. *See* Opp. 56. As explained in MindGeek's Reply in *Fleites*, although those cases were brought against MindGeek and involved allegations about MindGeek's general business practices, those cases involved materially different plaintiffs' circumstances, and were decided without the benefit of the Ninth Circuit's most recent opinion on section 230 immunity in *Reddit* and *Doe v. WebGroup Czech Republic, a.s.*, 2024 WL 3533426, at *6-7 (C.D. Cal. July 24, 2024), a decision from this District that addressed allegations very similar to those asserted by Plaintiff,

1   its global network of sex traffickers VPN services to allow them to obscure their

2   locations and identities." Opp. 57. Even assuming, *arguendo*, the truth of this

3   allegation, this "global network of sex traffickers" is irrelevant to Plaintiffs' videos

4   because they were created by third parties whom Plaintiffs do *not* allege are part of

5   this global network. Plaintiffs also fail to show how the alleged use of VPN services

6   "materially contributed" to the unlawful content posted on MindGeek's websites,

7   rather than simply being used to make available a neutral tool accessible to all of the

8   website's users and plainly protected under section 230. *See Doe v. WebGroup Czech

9   Republic, a.s.*, 2024 WL 3533426, at *7 (C.D. Cal. July 24, 2024) (dismissing claims

10  based on CSAM posted on websites operated by defendants on section 230 grounds

11  where plaintiffs alleged in part that the defendants use VPNs to anonymize web

12  traffic).

13          **Second**, like Fleites, Plaintiffs' mischaracterizations of MindGeek's conduct,

14  even if they were accurate, amount to no more than formatting of *existing* third-party-

15  user content and offering neutral tools to direct user traffic to *user-created* content.

16  Opp. 56-57. But even if the underlying allegations in the complaints to which

17  Plaintiffs cite for these mischaracterizations were true, they do not overcome section

18  230 immunity. The use of titles, tags, categories, and keywords to facilitate a user's

19  search of content—even if that search is for unlawful or illicit content, *or* the titles,

20  tags, and categories include indicia of CSAM, *or* the website operator knows that

21  third parties use those tools to create illegal content—and the use of thumbnails and

22  other actions to edit for length "do[] not amount to 'development' for purposes of the

23  immunity exception." *Roommates*, 521 F.3d at 1169.[7]

24  _____

25  [7] *See id.* ("A website operator who edits user-created content—such as by . . .
    trimming for length—retains his immunity for any illegality in the user-created
26  content, provided that the edits are unrelated to the illegality."); *WebGroup Czech*,
    2024 WL 3533426, at *7-8 (applying section 230 to preclude claims where
27  defendants made available to users "titles, tags, keywords, search terms, and
    categories" "indicative of CSAM" because such tools are "either a standard
28  publishing function or a neutral tool made available to all third parties seeking to
    (footnote continued)

REPLY IN SUPPORT OF MOTION TO DISMISS OF MINDGEEK DEFENDANTS
(Case No. 2:24-cv-04786-WLH-ADS)

1    ***Third***, Plaintiffs' contention that MindGeek "maintains the webpage and
2    thumbnails for disabled videos so that the MindGeek Defendants can continue to
3    generate traffic and revenue from that illegal content and direct users to similar
4    content" and "reuploads removed content", Opp. 57, is not enough to save Plaintiffs'
5    claims. In *Reddit*, the Ninth Circuit assessed a very similar argument:  that Reddit,
6    like MindGeek, "has done little to remove the unlawful content or prevent it from
7    being posted, because it drives user traffic and revenue." 51 F.4th at 1139. There, the
8    Ninth Circuit concluded that such allegations were not enough to preclude section
9    230 immunity, and the same conclusion should be drawn here. *Id.* at 1142.

10   ***Fourth***, Plaintiff J.L.'s contention that "MindGeek maintains account
11   representatives for its content partner channels to help create trailers, revise content,
12   and advertise illicit content", Opp. 57, is similarly insufficient to save her claims.
13   That MindGeek may devote an account representative to its content-partner channels
14   does not transform into actionable illegal misconduct the neutral use of titles, tags,
15   categories, keywords, and other tools to facilitate a user's search of content, and
16   Plaintiffs conspicuously fail to cite to *any* case law showing otherwise.

17   Finally, Plaintiffs continue to mislead by claiming that "MindGeek has not set
18   forth any new facts or new cases that would warrant a different result." Opp. 57. It is
19   not MindGeek's burden at this stage to come forth with any facts. It is Plaintiffs'
20   burden to plead sufficient facts to show that MindGeek materially contributed to the
21   videos of the Plaintiffs under applicable law. Plaintiffs have not done so. Plaintiffs

23   upload material onto Defendants' websites"); *Goddard v. Google, Inc.*, 640 F. Supp.
24   2d 1193, 1197-98 (N.D. Cal. 2009) (finding Google's Keyword Tool a neutral tool because "the users ultimately determine what content to post").   Similarly, administrative and technical support provided by MindGeeek to users uploading
25   content does not "materially contribut[e] to [the content's] alleged unlawfulness." *United States v. eBay Inc.*, 2024 WL 4350523, at *10 (E.D.N.Y. Sept. 30, 2024)
26   (applying section 230 immunity even where plaintiff alleged that eBay has "pervasive control over every aspect of the transaction on its website," and eBay,
27   among other things, "assists in the drafting of the product listing, actively markets the listings, . . . takes a fee . . . handles disputes" because such conduct was "neutral").

are correct, however, that the cases to which MindGeek cites in its Opening Brief did not involve allegations sufficient to show "defendants' material contribution to the illegality of the content at issue." Opp. 57. That is the point. Those cases either failed on allegations similar to those asserted by Plaintiffs here, and which similarly failed to meet the applicable legal standard to warrant an exception to section 230, or they were cited to show that all of Plaintiffs' proffered causes of action are barred by section 230 when applicable. *See Fyk v. Facebook, Inc.*, 808 F. App'x 597, 598 (9th Cir. 2020) (barring claims under section 230 where third-party content at issue was not altered by defendant); *Planet Green Cartridges, Inc. v. Amazon.com, Inc.*, 2023 WL 8943219, at *6-7 (C.D. Cal. Dec. 5, 2023) (barring claims under section 230 where defendant's role as "online marketer, driving traffic, and promoting, selling, and distributing products" was content-neutral); *Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874, 890 (N.D. Cal. 2017) (reiterating that "some editing on user-generated content" does not vitiate the applicability of section 230); *Caraccioli v. Facebook, Inc.*, 700 F. Appx. 588, 590 (9th Cir. 2017) (barring claims for public disclosure of private facts, intrusion upon seclusion, and false light under section 230, concluding that the defendant "did not become the 'information content provider' under § 230(c)(1) merely by virtue of reviewing the contents of the suspect account and deciding not to remove it"); *Joude v. WordPress Found.*, 2014 WL 3107441, at *7-8 (N.D. Cal. July 3, 2014) (barring common law misappropriation of likeness claim under section 230 where defendant was alleged to have hosted, maintained, and administered blog content at issue); *Callahan v. Ancestry.com Inc.*, 2021 WL 783524, at *6 (N.D. Cal. Mar. 1, 2021) (barring statutory misappropriation-of-likeness claim under section 230 where defendant posted content at issue in altered format and made content accessible on different platform); *Doe #1 v. Twitter, Inc.*, 2023 WL 3220912, at *2 (9th Cir. May 3, 2023) (barring 18 U.S.C. §§ 1591, 1595, 2252A, and 2255 claims under section 230 where defendant failed to take down

alleged CSAM posts on site); *J.B. v. G6 Hospitality, LLC*, 2020 WL 4901196, at *7 (N.D. Cal. Aug. 20, 2020) (barring similar claims under section 230 where defendant hosted victim's alleged CSAM posts, despite allegations that defendant knew its site was used for such illicit content, should have known that the actual posts were CSAM, and did nothing to verify the actual ages of the individuals being advertised on its site); *Doe v. Bates*, 2006 WL 3813758, at *4 (E.D. Tex. Dec. 27, 2006) (barring similar claims under section 230, finding that the purported profits generated by defendant from advertising on the page with the illicit content was not relevant in determining section 230 applicability, and reiterating that "[w]hile the facts of a child pornography case . . . may be highly offensive, Congress has decided that the parties to be punished and deterred are not the internet service providers but rather are those who created and posted the illegal material"); *Delfino v. Agilent Tech., Inc.*, 145 Cal. App. 4th 790, 807 (2006) (barring claim for intentional infliction of emotional distress under section 230 where defendant's employee was solely responsible for the creation of the illicit content). Plaintiffs have failed to make any meaningful distinction between the allegations of the claims precluded by section 230 in MindGeek's cited cases and the allegations asserted by Plaintiffs here.[8]

## B.   FOSTA's Exception to Section 230 Immunity Does Not Apply.

---

[8] None of MindGeek's arguments or the applicability of the cases cited therein are undermined by the summary-judgment ruling in *Doe v. MG Freesites, Ltd. et al*, No. 7:21-cv-00220-LSC (N.D. Ala. Dec. 19, 2024), which Plaintiffs submitted as supplemental authority after the filing of their Opposition. There, the court concluded that section 230 immunity did not apply because it found that the MindGeek defendants had created CSAM solely by "creating thumbnails" and "creating tags and categories associated with CSAM." *Id.* at 24-25. The Alabama court, however, failed to consider that the content in the thumbnails was *user-generated* and *not* created by MindGeek, and that making available the tags and categories on their own is not illegal. *Id.* at 24-31. Most importantly, the Alabama court was under no obligation to follow Ninth Circuit case law and therefore did not apply any Ninth Circuit precedent in its ruling (indeed, it *explicitly* stated that Ninth Circuit case law is *not* binding on it). *Id.* at 34. While the Alabama court may ignore Ninth Circuit precedent, Plaintiffs cannot—and as explained throughout MindGeek's Motion and Reply here (and in *Fleites*), the conduct alleged by Plaintiffs does not amount to content creation by MindGeek, and therefore, section 230 immunity applies to bar all of their claims.

Plaintiffs similarly fail to plead sufficient facts to show that the FOSTA exception to section 230 immunity applies, for all the reasons explained in MindGeek's Opening Brief at 7-12, its *Fleites* Reply at 11-12, and above. Importantly, Plaintiffs wrongly posit that "MindGeek's [alleged] actions are materially different than those in Reddit [sic]." At bottom, Plaintiffs' allegations, including those regarding the specific videos depicting them, proffer no more than what the plaintiffs in *Reddit* alleged: that "[MindGeek] provides a platform where it is easy to share child pornography, highlights [content] that features child pornography to sell advertising on those pages, allows [its moderators to participate in the sharing and promotion of child pornography], and fails to remove child pornography even when users report." *Reddit*, 51 F.4th at 1145. Just as the Ninth Circuit found there, such allegations do not show that MindGeek "knowingly participated in or benefited from a sex trafficking venture." *Id.* Plaintiffs' complaints therefore fail to sufficiently plead violations of Section 1591(a)(2) to establish beneficiary liability. Accordingly, section 230 applies to bar Plaintiff's claims under the TVPRA.

## IV.  PLAINTIFFS' JURISDICTIONAL ARGUMENTS FAIL TO MEET THEIR BURDEN.

### A.  MindGeek S.à r.l. Has No Relevant Contacts with the United States and Thus Is Not Subject to Jurisdiction under Rule 4(k)(2) or 18 U.S.C. § 2255(c) as to of Any Plaintiffs' Claims.

Seeking to establish personal jurisdiction over MindGeek S.à r.l. in these cases, Plaintiffs, represented by the same counsel as in *Fleites*, have resurrected a theory of personal jurisdiction long disproven: that MindGeek S.à r.l. *operates* Pornhub in the United States and is thus subject to jurisdiction anywhere in the United States under Rule 4(k)(2) and 18 U.S.C. § 2255(c). *See* Opp. 74-76. But those allegations—directly contradicted by MindGeek's evidence—are unsupported by any evidence either here or in *Fleites*. Andreou Decl. ¶ 28, ECF No. 78-2. The undisputed fact is that MindGeek S.à r.l. is merely "a holding company, without any

1   employees or operations of its own." *Id.* ¶ 28. MindGeek S.à r.l. thus does not operate

2   or own any of the websites or servers that "hosted, transferred, offered, distributed,

3   advertised, [or] sold CSAM" at issue. *See* Opp. 80; Andreou Decl. ¶ 32 (clarifying

4   that MG Freesites operates the tubesites at issue). Plaintiffs' cited cases are thus inapt,

5   since each involved allegations that the defendants were actually operating or

6   creating the website at issue, not merely that they were the operator's parent entity.

7   *See Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442, 447 (9th Cir. 2024) (both

8   defendants "operated" the websites at issue); *Will Co. v. Lee*, 47 F.4th 917, 919-22

9   (9th Cir. 2022) (one defendant "created the site and purchased its domain name" and

10  the other operated the website). And the jurisdictional contacts of any of MindGeek

11  S.à r.l.'s operating subsidiaries cannot be imputed to it absent an alter-ego theory

12  (which, as discussed below, Plaintiffs fail to demonstrate). *See Doe v. Unocal Corp.*,

13  248 F.3d 915, 925 (9th Cir. 2001).  Pornhub's activities thus do not demonstrate any

14  contacts between the United States and MindGeek S.à r.l., a separate legal entity. *See*

15  *Aylo Glob. Ent. Inc.*, 2024 WL 4599539, at *10 (concluding MindGeek S.à r.l. is not

16  subject to personal jurisdiction under Rule 4(k)(2) because it is not the entity that

17  operates Pornhub).

18      Plaintiffs' reliance on a Deferred Prosecution Agreement ("DPA") in the

19  Eastern District of New York does not establish the requisite contacts by MindGeek

20  S.à r.l. in the United States to establish jurisdiction. *See* Opp. 73. None of the facts

21  stated in the DPA were established as to MindGeek S.à r.l. specifically. Instead,

22  "MindGeek" and the "Company" are defined as "MindGeek S.à r.l. (*together with* its

23  wholly-owned subsidiaries and affiliated entities . . . )." Dkt. No. 9, Case No. 1:23-

24  cr-00463-BMC-LB, at 48 (emphasis added). It is well-settled that consent to personal

25  jurisdiction in one case does not justify the exercise of personal jurisdiction in a

26  separate case. *See AM Tr. v. UBS AG*, 681 F. App'x 587, 589 (9th Cir. 2017) (the fact

27  that "UBS may have given [consent] to personal jurisdiction in California in other

28

cases" did not "amount to consent to personal jurisdiction in this case"); *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 833 (9th Cir. 2005) (rejecting argument that "by failing to object to lack of personal jurisdiction in that suit, the [] defendants impliedly consented to personal jurisdiction in *this* action"); *Engineered Floors, LLC v. Lakeshore Equip. Co.*, 2023 WL 4203512, at *9(C.D. Cal. May 18, 2023) (collecting cases).

For the same reason, neither the guaranty of U.S.-based loans nor the choice-of-law and forum-selection clauses in the Shareholders' Agreement establish personal jurisdiction in this case. *See* Opp. 73-74. Plaintiffs are not parties to any of those agreements, and those agreements have no bearing on any of Plaintiffs' claims here. Plaintiffs cannot "piggyback" on those agreements to establish personal jurisdiction in this entirely separate case. *Wallach v. Johnson*, 2019 WL 4977474, at *3 (D. Ariz. Oct. 8, 2019); *see, e.g.*, *42 Ventures v. Rend*, 2020 WL 6257069, at * (D. Haw. Oct. 23, 2020) (rejecting assertion of personal jurisdiction based on "Defendants' agreements with third parties about choice of law, jurisdiction, or venue" because they were "unrelated to personal jurisdiction[] in this case, where Plaintiff was not a party to those agreements, nor is the allegedly infringing conduct related to Defendants' performance under those contracts"); *Pfister v. Selling Source, LLC*, 931 F. Supp. 2d 1109, 1116 (D. Nev. 2013) (rejecting exercise of jurisdiction based on arbitration clause designating Nevada as the forum where the plaintiff was not a party to that agreement and did "not contend that it applies to her claim"). Indeed, to support jurisdiction here, any alleged contact must give rise, or be "close[ly] connect[ed]," to Plaintiffs' injury. *See Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 506 (9th Cir. 2023) ("'relate to' 'does not mean anything goes'"). Yet contacts related to other business activities in the forum—like the Shareholders' Agreement or loan agreements with U.S. lenders here—do not justify personal jurisdiction over unrelated claims with unrelated parties. *Id.* at 506 (some contacts

REPLY IN SUPPORT OF MOTION TO DISMISS OF MINDGEEK DEFENDANTS
(Case No. 2:24-cv-04786-WLH-ADS)

1  with the forum state not sufficient where they related to other business activities).

2     **B.    Plaintiffs' Alter-Ego Allegations Fail for the Same Reasons as in Fleites.**

3     Plaintiffs rely again on the allegations, arguments, and evidence in *Fleites* to

4  support their claim that all the Defendants are subject to personal jurisdiction in

5  California because they are the alter-ego of each other. Yet as explained in *Fleites*,

6  Plaintiffs cannot meet their burden of demonstrating that MindGeek operates as

7  anything more than a typical, multi-national corporate enterprise. *See Fleites* Br. 31-

8  40; *Fleites* Reply 13-20.[9] MindGeek S.à r.l.'s corporate structure was carefully vetted

9  by legal and tax professionals, and Plaintiffs have offered nothing to suggest that the

10 structure is not compliant with Luxembourg corporate law. *See Fleites* Reply 14. The

11 tax structure has never been challenged by any government entity, and Plaintiffs'

12 expert's "opinion" is based only on assuming the truth of allegations that MindGeek

13 has specifically refuted—and which Plaintiffs have offered nothing to support. *Id.* at

14 14-15. And Plaintiffs have not shown that the provision of intra-corporate services

15 or involvement of ultimate beneficial owners in high-level, strategic decision-making

16 demonstrates the requisite pervasive control to allow corporate veil-piercing. *Id.* at

17 15-16.

18    What's more, Plaintiffs fail to rebut the fact that there is no fraud or injustice

19 from respecting the corporate form here (though they now admit that they must show

20 such fraud or injustice to prevail on their alter-ego theory, *contra Fleites* Opp. 82-83

21 (claiming that "for jurisdictional purposes the injustice element is irrelevant"); *see*

22 *Fleites* Reply 17-18). Plaintiffs have made no effort to show that they cannot be made

23 whole through Freesites and 9219, both of which do not dispute personal jurisdiction

24 as to the U.S. Plaintiffs' claims. *See Fleites* Reply 18. And Plaintiffs' claim that the

25

26 _____

27 [9] Unlike in *Fleites*, the alter-ego question is not dispositive of the instant jurisdictional analysis, since here all Defendants object to this Court's personal jurisdiction over the claims of the non-U.S. Plaintiffs.

28

corporate structure is designed to "dispute which entities are legally liable for the harm caused" is belied by the plain fact that MindGeek has consistently maintained for years that Freesites is responsible for operating Pornhub (and Plaintiffs' counsel has not found anything to the contrary in over a year of discovery). *See, e.g.*, Decl. of Andreas Alkiviades Andreou ¶ 9, *Fleites* ECF No. 70-2 (declaring in October 2021 that "MG Freesites Ltd is responsible for operating certain websites, referred to as 'tubesites,' including 'PornHub'"). Thus, unlike the cases on which Plaintiffs rely, there simply has been no "confus[ion]" created by MindGeek. *See, e.g.*, *Elizabeth Arden, Inc. v. Merch. of Tennis, Inc.*, 2011 WL 13217803, at *3 (C.D. Cal. Oct. 28, 2011) (Plaintiffs' unrebutted allegations included allegations that the defendants "purposefully blur the corporate distinctions . . . in order to mislead or confuse creditors and customers" and "so they can dispute which entity is legally liable to a particular creditor").

### C. MindGeek USA's and MG Global's Prior Headquarters in California Do Not Allow the Exercise of Personal Jurisdiction Over the State-Law Claims Here.

If the Court dismisses the federal-law claims, then there is no personal jurisdiction over MindGeek USA or MG Global as to any Plaintiff's claims.

### 1. There is no general personal jurisdiction.

Though MindGeek USA and MG Global were domiciled in California before Plaintiffs' complaints were filed, "[c]ourts have uniformly held that *general* jurisdiction is to be determined no earlier than the time of filing of the complaint." *Baton v. Ledger SAS*, 2021 WL 5226315, at *4 (N.D. Cal. Nov. 9, 2021), *overruled on other grounds*, 2022 WL 17352192 (9th Cir. Dec. 1, 2022). General personal jurisdiction arises by virtue of a state's "power to hale before its courts any individual who could be found within its borders" and "properly serv[ed]" while there. *Burnham v. Superior Ct.*, 495 U.S. 604, 611 (1990) (plurality op.); *see J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (plurality op.) (explaining that general

26

jurisdiction is created by "[p]resence within a State at the time suit commences through service of process"). And a corporation's "continuous and systematic general business contacts ... approximate physical presence in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (cleaned up). Thus, the question is whether MindGeek USA and MG Global were 'physically present' in California "at the time suit commences." *Nicastro*, 564 U.S. at 880 (plurality op.).

Consistent with that reasoning, California courts have repeatedly rejected the exercise of general personal jurisdiction based on a defendant's domicile here prior to the filing of the complaint. *See, e.g.*, *Diamondback DTNM, LLC v. ShiftPixy, Inc.*, 2024 WL 5185667, at *7 (C.D. Cal. Sep. 27, 2024) (rejecting exercise of general personal jurisdiction based on defendant's prior residence in California approximately three years before complaint was filed); *Quan v. BAM Trading Servs., Inc.*, 2024 WL 2137631, at *2 (N.D. Cal. May 13, 2024) (no general jurisdiction over defendant that moved its principal place of business from California to Florida six months before the complaint was filed); *Baton*, 2021 WL 5226315, at *4 (no general jurisdiction where defendant moved its offices from California to Canada before the complaint was filed).

Plaintiffs cite no binding precedent supporting their theory of lookback general personal jurisdiction based purely on a prior principal place of business in the forum. Instead, Plaintiffs rely on the proposition that the Supreme Court has looked back to determine whether an entity has such "continuous and systematic" contacts with the forum—which, by definition, must occur for more than a single day—"as to render it essentially at home" there at the time of the suit. *See Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 271 (2017); *see, e.g.*, *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448 (1952) (corporation's president was carrying on, prior to and "at the time he was served with summons," systematic and continuous

REPLY IN SUPPORT OF MOTION TO DISMISS OF MINDGEEK DEFENDANTS
(Case No. 2:24-cv-04786-WLH-ADS)

1    activities in Ohio). "This calculus, however, cannot rely on a defendant's past
2    domicile." *Cochran v. Air & Liquid Sys. Corp.*, 2022 WL 7609937, at *6 (C.D. Cal.
3    Oct. 13, 2022). And Plaintiffs offer no facts even approaching the "exacting
4    standard" for establishing general personal jurisdiction in a location other than the
5    "paradigmatic locations" of the corporation's place of incorporation and principal
6    place of business at the time of the suit—an option that the Supreme Court has
7    cautioned is available only in "exceptional case[s]." *BNSF Ry. v. Tyrrell*, 581 U.S.
8    402, 413 (2017) (no general jurisdiction even where defendant had "2,061 miles of
9    railroad track in Montana," "employ[ed] some 2,100 workers there," and generated
10   10% of its revenue in the state); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir.
11   2015) (no general jurisdiction where 20 to 27 employees worked in the forum state).

12              **2.    There is no specific personal jurisdiction.**

13          Plaintiffs' resorts to the prospect of specific personal jurisdiction fare no better.
14   To meet their burden of demonstrating this Court's specific personal jurisdiction,
15   Plaintiffs must show not only that MindGeek USA and MG Global purposefully
16   availed themselves of the laws of California, but also that those jurisdictional contacts
17   relate to their claims. *See Yamashita*, 62 F.4th at 504, 506. "'[R]elate to' 'does not
18   mean anything goes.'" *Id.* Each Plaintiff instead must show how Defendants'
19   activities give rise to *her* claims or are "close[ly] connect[ed]" to her injury. *Id.*

20          Plaintiffs fail to meet that burden.  Plaintiffs merely allege that MindGeek USA
21   and MG Global each had an office in California, and they rely on MindGeek's
22   statements that MG Global has two employees who work on the Trust and Safety
23   teams of the MindGeek tubesites, but who have no responsibility for moderation of
24   content before it is uploaded to the tubesites. *See* Opp. 77-78; Andreou Decl. ¶ 46.
25   As for maintaining a California office, even if it constituted purposeful availment,
26   Plaintiffs have made no effort to show how that office relates to Plaintiffs' claims.
27   Random jurisdictional contacts amounting to purposeful availment but without any
28

---

REPLY IN SUPPORT OF MOTION TO DISMISS OF MINDGEEK DEFENDANTS
(Case No. 2:24-cv-04786-WLH-ADS)

link to a plaintiff's claims do *not* support the exercise of specific personal jurisdiction. *See, e.g.*, *Bristol-Myers Squibb*, 582 U.S. at 262 ("Nor is it sufficient—or even relevant—that [defendant] conducted research in California on matters unrelated to [the product at issue]. What is needed—and what is missing here—is a connection between the forum and the specific claims at issue."); *Yamashita*, 62 F.4th at 506 (shipment of some batteries into the port of Honolulu constituted purposeful availment, but it could not support the exercise of specific personal jurisdiction over a claim related to different batteries not alleged to be imported into Hawaii).

As for the business of MindGeek USA and MG Global, Plaintiffs have not rebutted the fact that neither operates Pornhub or any other tubesite. MindGeek USA is involved in DVD-based content and e-commerce stores, which Plaintiffs do not even attempt to relate to their claims. *See* Andreou Decl. ¶ 37.[10] MG Global provides support services for the tubesites, but Plaintiffs have failed again to draw any link between those support services, including post-publication moderation services by two employees, and their claims. Plaintiffs effectively admit as much, since they request yet even more discovery to assess the veracity of these specific claims, Opp. 78, notwithstanding the troves of discovery their counsel obtained in *Fleites*. Plaintiffs have failed to meet their burden of demonstrating any connection between MindGeek USA and MG Global's California-based activities and their claims. This Court thus lacks personal jurisdiction over those claims if the federal-law claims are dismissed (as they should be). *See* Op. Br. 37.

*Square 1 Bank*, the only case cited by Plaintiffs in support of their argument, is not on point. *Square 1 Bank v. Lo*, 128 F. Supp. 3d 1257 (N.D. Cal. 2015). There, the court found specific personal jurisdiction over a former California resident who

---

[10] Plaintiffs allege that MindGeek USA "provided support services to Pornhub," but MindGeek specifically denied that allegation, and so Plaintiffs cannot rely on it. *See* Andreou Decl. ¶ 37; *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020) ("[D]isputed allegations in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction.").

REPLY IN SUPPORT OF MOTION TO DISMISS OF MINDGEEK DEFENDANTS
(Case No. 2:24-cv-04786-WLH-ADS)

moved out of state the day after the complaint was filed but before she was served with the summons. *See id.* at 1261-62. The case involved allegations of fraudulent transfer of property in California to defraud the plaintiff bank on a loan it issued to the defendant's company while she was a California resident. *See id.* at 1259-61. The court therefore unsurprisingly found that the defendant had sufficient contacts in California related to the suit, since the property allegedly fraudulently transferred was located in California and was transferred while the defendant was still a California resident. *See id.* at 1262-63.

### D. The Non-U.S. Plaintiffs' Claims Have No Relation to the Defendants' Forum-Based Contacts.

To establish personal jurisdiction in the United States or California over their claims, the Non-U.S. Plaintiffs must allege sufficient facts showing that each Defendant's jurisdictional contacts gave rise to their claims, and that each Defendant committed an intentional act "expressly aimed at the forum state . . . causing harm that [it] knows is likely to be suffered in the forum state." *AMA Multimedia*, 970 F.3d at 1209. The Non-U.S. Plaintiffs cannot satisfy their burden as to any defendant, including those entities that have operated or provided services for Pornhub, Freesites, 9219, and MG Premium.[11] Instead, they ask this Court to exercise personal jurisdiction over claims against Canadian and Cypriot entities, based on actions they allege were taken in Canada and Cyprus, that allegedly injured residents not of California or the United States, but of Colombia, Thailand, and the United Kingdom, based on a globally accessible website. That is not consistent with due process.

First, the Non-U.S. Plaintiffs do not allege any intentional act by any entity involved in operating Pornhub that is expressly aimed at, and knowingly caused harm to, the Non-U.S. Plaintiffs in the United States. Ninth Circuit law is clear that merely

---

[11] As set forth above, MindGeek S.à r.l. has no contacts with the United States and thus there is no jurisdiction as to any Plaintiff's claims, and if the federal-law claims are dismissed (they should be), then there is no jurisdiction over MindGeek USA or MG Global as to any Plaintiff's claims either. *See supra* 22-24, 26.

30

1    operating a globally accessible website that also happens to be accessible in the forum

2    is not enough to meet this burden. *See WebGroup Czech*, 93 F.4th at 452-53; *AMA*

3    *Multimedia*, 970 F.3d at 1209-10. There must be "something more—conduct directly

4    targeting the forum." *AMA Multimedia*, 970 F.3d at 1210.

5         The Non-U.S. Plaintiffs have not alleged that "something more."  Instead, they

6    allege that Pornhub profited from the U.S. market. Opp. 79. But the fact that a website

7    "with national viewership and scope appeals to, and profits from, an audience in a

8    particular [forum]" is not enough, as *AMA Multimedia*, a case to which Plaintiffs fail

9    to respond (*see* Op. Br. 39), makes clear. 970 F.3d at 1211 (although 20% of the

10   defendant's website's traffic came from U.S. users, that did "not establish that Wanat

11   expressly aimed at the U.S. market"). They allege that Pornhub "targeted advertising

12   directed at United States-based citizens and California residents[,] . . . sold customer

13   data it collected on those visiting its sites, and also sold its Pornhub Premium service

14   to United States residents and California[.]" Opp. 79. But they do not allege that these

15   activities are directed specifically at U.S. users, rather than users generally. And geo-

16   located advertisements do not constitute express aiming because, otherwise, website

17   operators "could be said to expressly aim at *any* forum in which a user views the

18   website." *AMA Multimedia*, 970 F.3d at 1211 (emphasis in original). Plaintiffs must

19   instead allege facts showing a "differential aiming at the U.S. market." *WebGroup*

20   *Czech*, 93 F.4th at 456 n.7; *see id.* at 455 (noting that the plaintiff's failure to clarify

21   whether the advertising involved a differential targeting of the U.S. market meant

22   that the advertisements could not support a finding of express aiming).

23        Plaintiffs' cited cases make clear why their allegations fail to aver express

24   aiming here. In *WebGroup Czech*, the Ninth Circuit's finding of express aiming

25   hinged on the fact that the defendant contracted with U.S-based content-delivery

26   network services "for the conceded purpose of . . . . improv[ing] the viewing

27   experience of persons near those CDNs" in the United States.  *Id.* at 453, 455-56.

28

Similarly, the court in *Will Co.* found express aiming because the defendant purchased server-and content-delivery network services in the United States "to have the site load faster for viewers in the United States" and hosted content that was "relevant almost exclusively to viewers in the United States." 47 F.4th at 925. And in *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 982 (9th Cir. 2021), the court held that the defendant had gone beyond merely placing its products into the stream of commerce because it "contract[ed] with a distribution center in the United States" that "could help [it] better serve the American market and grow its American contacts." In each case, specific differential treatment of the U.S. market meant that the injury in the United States was foreseeable. *See, e.g.*, *WebGroup Czech*, 93 F.4th at 457 (concluding that harm to a U.S. resident in the United States "was clearly foreseeable, given . . . [defendants'] targeting of the U.S. market").

Here, Plaintiffs have alleged no similar express aiming, and thus no foreseeable harm caused in the United States to the Non-U.S. Plaintiffs. Although the Non-U.S. Plaintiffs claim that MindGeek "hosted [CSAM] on U.S. servers," MindGeek did not, as it has made clear. Opp. 80. "████████████████████ ██████████████████████████████████████████████ Andreou Decl. ¶ 12. Plaintiffs' supposedly contrary evidence refers not to hosting of material, but to ████████████████████████████████████████ ████████—which is not the same as hosting content. *See* Opp. 40; Hille Decl. Ex. A, § 7.01(w). Plaintiffs do not allege or explain how storing those backup materials on U.S.-based servers differentially "improve[s] the viewing experience" of U.S. residents. *See WebGroup Czech*, 93 F.4th at 453. And in any event, the mere use of U.S.-based servers (as opposed to content-delivery network services) is, by itself, insufficient to find express aiming. *See, e.g.*, *Hungerstation LLC v. Fast Choice LLC*, 857 F. App'x 349, 351 (9th Cir. 2021) ("[N]o authority supports the proposition that the act of using a third-party company's server in the United States to host

REPLY IN SUPPORT OF MOTION TO DISMISS OF MINDGEEK DEFENDANTS
(Case No. 2:24-cv-04786-WLH-ADS)

illegally-obtained information, without more, is sufficient to convey personal jurisdiction.").

Nor have the Non-U.S. Plaintiffs adequately alleged that any U.S.-based activity gave rise to their claims.[12] To start, Plaintiffs' entire alter-ego theory centers on the proposition that the MindGeek enterprise is a "byzantine international structure of shell companies" that serves no legitimate purpose; instead, the entire enterprise is allegedly run by MindGeek Canada, which comprised "virtually all [of] MindGeek's employees and provided all of its senior executive management and core corporate functions." Opp. 1; *Fleites* Opp. 80. Thus, Plaintiffs' own theory is that the activities giving rise to their claim occurred in Canada and Cyprus, not the United States.[13] Moreover, the Non-U.S. Plaintiffs hinge their jurisdictional theory on the fact that MindGeek allegedly "hosted [CSAM] on U.S. servers"—but it did not host images here. Opp. 80. Plaintiffs have not alleged or explained how the backup copies of the images at issue give rise to the "transfer, offering, advertisement, distribution, and monetization" of those images. *See* Opp. 79.

In sum, the Non-U.S. Plaintiffs have alleged no connection between the United States and images or videos depicting Colombian, British, and Thai plaintiffs on a globally accessible and European-hosted website run by a Cypriot company. No personal jurisdiction therefore has been established.

### E.      Plaintiffs Are Not Entitled to More Jurisdictional Discovery.

Finally, Plaintiffs' request for further jurisdictional discovery should be denied. Plaintiffs had access to all the discovery in *Fleites* when opposing MindGeek's motion to dismiss. *See* Opp. 3. They could have relied on that evidence

---

[12] On this point, *WebGroup Czech* is also inapt for the separate reason that it found jurisdiction over claims brought by a U.S. resident for harm experienced in the United States—not residents of foreign countries. *See id.* at 458.

[13] As discussed above, Plaintiffs have not drawn any link between the business conducted by the U.S.-based MindGeek entities and their claims. *See supra* 29.

to support their disputed jurisdictional allegations. Instead, that jurisdictional discovery disproved Plaintiffs' theory. Plaintiffs are not entitled to yet another year of scorched-earth jurisdictional discovery based on "little more than a hunch" after the first round turned up dry. *See Yamashita*, 62 F.4th at 508; *Carroll Shelby Licensing v. Halicki*, 2021 WL 4895736, at *5 (C.D. Cal. Apr. 15, 2021) (jurisdictional discovery not warranted due in part to "earlier litigation enabling extensive discovery"). Plaintiffs' counsel had the opportunity to, and indeed did, seek jurisdictional discovery relevant to entities that did not object to discovery in *Fleites*. *See, e.g.*, *Fleites v. MindGeek S.A.R.L.*, 2022 WL 18397365, at *2-3 (C.D. Cal. Nov. 17, 2022) (granting jurisdictional discovery concerning 9219, which did not object to jurisdiction, because the Court's order "states that Plaintiff may 'impute the contacts of the non-objecting MindGeek Entity Defendants to MindGeek S.A.R.L. and MG Premium through the alter ego doctrine'"). There is thus no reason to reopen jurisdictional discovery into MindGeek USA or MG Global. Nor can Plaintiffs revive jurisdictional discovery based on claims of undisclosed evidence that they never moved to compel. *Fleites* Reply 13. Plaintiffs have offered nothing beyond "bare allegations" to suggest that further jurisdictional discovery would be anything more than a "fishing expedition." *Yamashita*, 62 F.4th at 508; *LNS Enters. v. Cont'l Motors, Inc.*, 22 F.4th 852, 864-65 (9th Cir. 2022) Their request should therefore be denied.

## V.   MINDGEEK S.À R.L. IS BEYOND THE TERRITORIAL REACH OF THE TVPRA

Despite the length of their arguments about the extraterritorial reach of the TVPRA, Opp. 33-39, Plaintiffs fail to meaningfully address MindGeek S.à r.l.'s key point of rebuttal: that MindGeek S.à r.l. is *not* a U.S. national, a lawfully admitted alien, or otherwise "present in" the United States. Mot. 36. These are threshold requirements for extraterritorial application of the TVPRA under 18 U.S.C. 1596(a)—which provides that there is extraterritorial jurisdiction over any alleged

violation only "*if*" the alleged offender is a U.S. national, lawfully admitted alien, or otherwise present in the U.S.—and Plaintiffs cannot surpass this threshold. MindGeek S.à r.l. is a private holding company incorporated under the laws of Luxembourg. It does not have employees or operations in the United States. Mot. 36; *Fleites* Reply 20. As a consequence of these facts, MindGeek S.à r.l. cannot be said to be present in the United States, despite Plaintiffs, self-serving conclusion that they have shown MindGeek S.à r.l.'s presence "in spades." Opp. 36-37.

Plaintiffs' protracted analysis of the legislative history of RICO (which is irrelevant) and the TVPRA cannot save them from this failing. As was the case in the *Fleites* Opposition, Plaintiffs have failed to point to a single case where the TVPRA was applied not just to extraterritorial *conduct* but to an extraterritorial *defendant* who was not a U.S. national, lawful alien, or otherwise present in the United States. Tellingly, *both* of the cases on which Plaintiffs most heavily rely for their extraterritorial-application argument, Opp. 35, involve defendants who were United States government personnel—a fact that the D.C. District Court referred to as of "key importance" in its finding of extraterritorial application, and which is far from the case here. *United States ex rel. Hawkins v. Mantech Int'l Corp.*, 2024 WL 4332117, at *12 (D.D.C. Sep. 27, 2024) ("As in the *Roe* case, where it was of key importance to the ruling that the illegal acts were perpetrated by U.S. embassy personnel, the instant lawsuit also involves what is essentially an extension of the United States government abroad. Indeed, Congress explicitly stated its intention in section 3271 that the TVPRA would cover government contractors operating beyond our shores in 18 U.S.C. § 3271(a)."). This Court should not countenance Plaintiffs' attempt to sweep MindGeek S.à r.l. into the statute's reach.

## **CONCLUSION**

For all of the foregoing reasons, the Court should dismiss with prejudice the entirety of Plaintiffs' complaints.

1

2

3    Dated:  January 8, 2025                    Respectfully submitted,

4                                              MINTZ LEVIN COHN FERRIS
                                                 GLOVSKY AND POPEO, P.C.
5
                                              /s/ Peter A. Biagetti
6                                             Seth R. Goldman
                                              Peter A. Biagetti
7                                             Arameh Z. O'Boyle
                                              Esteban Morales Fabila
8
                                              Attorneys for Defendants
9                                             MindGeek, S.à r.l., MG Freesites Ltd, MG
                                              Premium Ltd, MindGeek USA Incorporated,
10                                            MG Global Entertainment Inc., and 9219-
                                              1568 Quebec Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION TO DISMISS OF MINDGEEK DEFENDANTS
(Case No. 2:24-cv-04786-WLH-ADS)

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants MindGeek, S.à r.l. (specially appearing), MG Freesites Ltd, MG Premium Ltd, MindGeek USA Incorporated, MG Global Entertainment Inc., and 9219-1568 Quebec Inc., certifies that this brief contains 20 pages, which complies with the 35-page limit set in the Court's Order Granting Joint Stipulation to Request Limited Coordination For Purposes of Responding to Complaints in Related Cases dated October 9, 2024 (ECF No. 54).

Dated:  January 8, 2025                Respectfully submitted,

                                       MINTZ LEVIN COHN FERRIS
                                          GLOVSKY AND POPEO, P.C.

                                       /s/ Peter A. Biagetti
                                       Seth R. Goldman
                                       Peter A. Biagetti
                                       Arameh Z. O'Boyle
                                       Esteban Morales Fabila

                                       Attorneys for Defendants
                                       MindGeek, S.à r.l., MG Freesites Ltd, MG
                                       Premium Ltd, MindGeek USA Incorporated,
                                       MG Global Entertainment Inc., and 9219-
                                       1568 Quebec Inc.

**Under Seal Filing**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**Notice of Electronic Filing**

The following transaction was entered by Biagetti, Peter on 1/8/2025 at 2:38 PM PST and filed on 1/8/2025

| | |
|---|---|
| **Case Name:** | K.A. v. MindGeek S.a.r.l. et al |
| **Case Number:** | 2:24-cv-04786-WLH-ADS |
| **Filer:** | MindGeek S.a.r.l. |
| | MG Freesites, Ltd |
| | MindGeek USA Incorporated |
| | MG Premium Ltd |
| | MG Global Entertainment Inc. |
| | 9219-1568 Quebec Inc. |

**Document Number:** 108

**Docket Text:**
**SEALED DECLARATION IN SUPPORT OF APPLICATION to file document *Omnibus Reply in Support of Motion to Dismiss* under seal[107] filed by Defendants MindGeek S.a.r.l., MG Freesites, Ltd, MindGeek USA Incorporated, MG Premium Ltd, MG Global Entertainment Inc., 9219-1568 Quebec Inc.. (Attachments: # (1) Unredacted Document - Reply in Support of Motion to Dismiss)(Biagetti, Peter)**

**2:24-cv-04786-WLH-ADS Notice has been electronically mailed to:**

Adam Michael Reich     adamreich@paulhastings.com, heathercopeland@paulhastings.com

Andrew S. Tulumello     drew.tulumello@weil.com, dc.ecf@weil.com, drew-tulumello-6697@ecf.pacerpro.com, mco.ecf@weil.com

Dan E. Marmalefsky     dmarmalefsky@mofo.com, dan-marmalefsky-8634@ecf.pacerpro.com, mmendoza@mofo.com

David G. Hille     dhille@whitecase.com, mco@whitecase.com

David M. Stein     dstein@olsonstein.com

David W. Wiechert     dwiechert@aol.com, danielle@wmgattorneys.com, jessica@wmgattorneys.com

Diane Cafferata     dianecafferata@quinnemanuel.com, dianehutnyan@quinnemanuel.com

Emma J. Lanzon     emmalanzon@paulhastings.com

Esteban Morales Fabila     emorales@mintz.com, arpearlman@mintz.com, dehashimoto@mintz.com, docketing@mintz.com, eegalliher@mintz.com, GJLeon@mintz.com, ksakoglu@mintz.com, mjclough@mintz.com, nvmina@mintz.com, oaponce@mintz.com

James Michael Pearl     jamespearl@paulhastings.com, bo-pearl-7772@ecf.pacerpro.com, melicakajeh@paulhastings.com

Joanna Ka Wai Chan    jchan@cohengresser.com, AntoonParas@CohenGresser.com, autodocket@cohengresser.com, managingclerksoffice@cohengresser.com

Jonathan S. Sack    jsack@maglaw.com

Kevin C Adam    kevin.adam@whitecase.com, mco@whitecase.com

Kiaura Clark    kiauraclark@paulhastings.com, irmagamino@paulhastings.com, melicakajeh@paulhastings.com

Kristopher M. Hansen    krishansen@paulhastings.com

Lauren Tabaksblat    ltabaksblat@brownrudnick.com, agordan@brownrudnick.com, cloftin@brownrudnick.com, kfisch@brownrudnick.com, kurena@brownrudnick.com, lisaac@brownrudnick.com, litdocketing@brownrudnick.com, mpina@brownrudnick.com, mreyes@brownrudnick.com

Mark A Perry    mark.perry@weil.com, dc.ecf@weil.com, mco.ecf@weil.com

Matthew V. Povolny    mpovolny@cohengresser.com

Michael J. Bowe    mbowe@brownrudnick.com, litdocketing@brownrudnick.com

Peter A. Biagetti    pabiagetti@mintz.com, docketing@mintz.com

Ronald G. White    rwhite@wmhwlaw.com, docketclerk@wmhwlaw.com

Russell J. Gould    russell.gould@whitecase.com, annel.cruz@whitecase.com, mco@whitecase.com

S. Jason Brown    jbrown@cohengresser.com

**2:24-cv-04786-WLH-ADS Notice has been delivered by First Class U. S. Mail or by other means <u>BY THE FILER</u> to :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\01 Biagetti Declaration ISO MindGeek Defendants' Application to File Reply to Motion to Dismiss Under Seal.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=1/8/2025] [FileNumber=39297525-0] [a7f3356c8b72ce25a4b7c5a594f8cb72f3a0a16e12e527c848395a3db686bc344d76 a14520c0bc524971fdede3387e61d0c95701deada4d820d6bd91933d8ba7]]
**Document description:**Unredacted Document - Reply in Support of Motion to Dismiss
**Original filename:**C:\fakepath\02 [UNREDACTED] MindGeek Defendants' Reply ISO Motion to Dismiss.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=1/8/2025] [FileNumber=39297525-1] [244a36db24d3eb141fa31912a2d40383999d6d53072e904ff86e7f3c0303732048e8 90543d2d23daeee665e0fc4c9840ac55892ab89ecbdf83ff998141c61b39]]