| | |
|---|---|
| DAN MARMALEFSKY (CA SBN 95477) DMarmalefsky@mofo.com Morrison & Foerster LLP 707 Wilshire Boulevard Los Angeles, California 90017-3543 Telephone: 213-892-5200 Facsimile: 213-892-5454 | RONALD G. WHITE (admitted pro hac vice) RWhite@wmhwlaw.com Walden Macht Haran & Williams LLP 250 Vesey Street New York, NY 10281 Telephone: 212-335-2387 Facsimile: 212-335-2040 |

Attorneys for Defendant Bernd Bergmair

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENA FLEITES,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>MINDGEEK S.A.R.L., et al.,<br><br>　　　　　Defendants. | Case No.: 2:21-cv-4920-WLH-ADS<br><br>**DECLARATION OF RONALD G. WHITE ON BEHALF OF DEFENDANT BERND BERGMAIR IN SUPPORT OF MINDGEEK DEFENDANTS' OMNIBUS APPLICATION FOR LEAVE TO FILE DOCUMENTS UNDER SEAL**<br><br>Courtroom: 9B<br>Judge: Hon. Wesley L. Hsu<br>Complaint Filed: June 17, 2021<br>Trial Date: None Set |

DECLARATION OF RONALD G. WHITE IN SUPPORT OF MINDGEEK DEFENDANTS' OMNIBUS APPLICATION FOR LEAVE TO FILE DOCUMENTS UNDER SEAL

I, Ronald G. White, declare as follows:

1. I am an attorney licensed to practice law in the State of New York and a partner with the law firm Walden Macht Haran & Williams LLP. I have been granted permission by this court to appear *pro hac vice* as counsel for Defendant Bernd Bergmair in the above-captioned case. I am over the age of 18. I make this declaration in support of the MindGeek Defendants' Omnibus Application for Leave to File Documents Under Seal. I have personal knowledge of the facts stated herein, and if called as a witness, I could and would competently testify thereto.

2. This declaration is made following the Court's Order that the parties resubmit their Applications to Seal by March 28, 2025, ECF No. 540.

3. Bergmair seeks to amend his previous sealing designations, as set forth in (1) Bergmair's prior applications for leave to file under seal in this case and in *K.A. v. MindGeek S.A.R.L. et al.*, No. 2:24-cv-04786-WLH-ADS (C.D. Cal.); (Fleites ECF Nos. 434, 502; K.A. ECF No. 117); (2) my declarations in support of Plaintiffs' applications for leave to file under seal in this case and in *K.A.* (Fleites ECF Nos. 389, 484; K.A. ECF No. 98); and (3) other Defendants' applications for leave to file under seal in this case (Fleites ECF Nos. 457, 509).

4. Exhibit 1 to the MindGeek Defendants' Omnibus Application for Leave to File Documents Under Seal provides Bergmair's proposed designations for sealing. Each of those designations fall into at least one of the following categories of information:

- Personally identifiable information of Bergmair;

- The amount of money Bergmair invested in MindGeek, the amount of money for which he sold his MindGeek shares, and other sensitive information concerning the financing of his investment;

- The shareholding and economic interests and other rights Bergmair received in exchange for his investment in MindGeek;

- The identity of the corporate entities through which Bergmair invested;

- Bergmair's receipt of dividends as a result of his investment in MindGeek;

- MindGeek's commercial transactions with a non-party entity beneficially owned by Bergmair; and

- Sensitive business information of Bergmair unrelated to the litigation.

3. The federal common law right to access public records is "not absolute." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). In particular, "the common-law right of inspection has bowed before the power of a court to insure that its records are not used … as sources of business information that might harm a litigant's competitive standing." *Id.*

4. "[T]he Ninth Circuit has not stated the standard – good cause or compelling reasons – that applies to the sealing of a pleading. *L.A. Int'l Corp. v. Prestige Brands Holdings, Inc.*, 2018 WL 6985313, at *1 (C.D. Cal. Nov. 6, 2018) (recognizing split of authority among the district courts in the Ninth Circuit).

5. The "good cause" standard comes from Rule 26(c)(1), which sets forth the requirements for protective orders during discovery. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016). Rule 26(c)(1) provides: "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

6. "'[C]ompelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (quoting *Nixon*, 435 U.S. at 598).

7. Bergmair's narrowly tailored sealing request satisfies both standards.

8. The vast majority of Bergmair's sealing requests consist of the narrow redaction of numbers or names to avoid revealing, for example, the specific dollar amounts of Bergmair's investment in MindGeek, his receipt of dividends and his sale of his shares in the company; the specific ownership percentage he held in MindGeek in exchange for his investment; or the names of the private entities through which he invested. Such specific information regarding an individual's personal financial condition – particularly when it relates to his investment in a privately-held foreign company – has been recognized as the sort of information protected by privacy interests that justify sealing. Courts in this circuit have routinely held that confidential business and personal financial information satisfies the compelling reasons standard and warrants sealing. *See Reputation.com, Inc. v. Mullarkey*, 2022 WL 4775881, at *2 (N.D. Cal. Sept. 30, 2022) (Compelling reasons standard satisfied, in part, because the at-issue "documents contain confidential business and financial information relating to the terms of [a corporate] acquisition" which, "[i]f publi[shed], the terms of the agreement could be used against Plaintiff in future negotiations by potential acquirees or other entities competing against Plaintiff for such opportunities"); *Monterey Bay Military Housing LLC v. Ambac Assurance Corp.*, 2019 WL 11658748, at 2 (N.D. Cal. July 11, 2019) (finding "compelling reasons" to seal "documents [that] relate to financial transactions that were intended to be, and have been, kept in confidence," as well as "private financial and operational information" regarding business); *Allianz Global Risks US Ins. Co. v. United States*, 2021 WL 3171862, at 2 (S.D. Cal. July 27, 2021) (finding "compelling reasons" to seal information from which "the potential economic value of [the designating party's] business ventures can be deduced"); *In re Qualcomm Litig.*, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (compelling reasons exist to seal "confidential business information," such as "confidential business agreements executed among the parties," agreement terms, amounts paid under agreements, "financial terms," details of negotiations,

|  |  |
|---|---|
| 1 | and "business strategies"); *Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, at *4 |
| 2 | (N.D. Cal. June 30, 2015) (party may meet burden under Local Rule 79-5 where |
| 3 | party seeks to seal "proprietary and confidential business information," including |
| 4 | agreements reflecting "parties' obligations and terms of payment"); *see also* |
| 5 | *Nguyen v. City of Garden Grove*, 2023 WL 2558536, at *4 (C.D. Cal. Feb. 2, 2023) |
| 6 | (during discovery, permitting redactions of private financial information such as |
| 7 | "asset information"); *Landmark Screens, LLC v. Morgan Lewis & Bockius*, 2010 |
| 8 | WL 3221859 at *5 (N.D. Cal. Aug. 13, 2010) (sealing "confidential business |
| 9 | information which is not intended for public disclosure"). |

9.   In addition to violating Bergmair's personal privacy interests, disclosure of this information would put him at a significant disadvantage in future business endeavors. Bergmair is a professional investor who invests in assets and private companies in a range of industries. Any future counterparty negotiating with Bergmair, if they were armed with information regarding how much Bergmair invested in MindGeek, the dividends he received during his time as a shareholder, and the price at which he sold his interest would have substantial – and unwarranted – insight into Bergmair's personal financial condition and cashflow, which would be of enormous negotiating advantage. Such a counterparty could calculate Bergmair's profit or loss from his purchase and sale of MindGeek shares (and receipt of dividends) and know the amount of funds Bergmair currently has available to deploy. The agreement by which Bergmair sold his shares sets forth a schedule of the payments comprising the total sale price, the disclosure of which would allow a negotiating counterparty to know Bergmair's precise cash flow, including specific dollar amounts and dates. In fact, such information could be used to Bergmair's disadvantage not just by a counterparty with whom he is negotiating, but also another party against whom Bergmair was competing for an investment opportunity. Moreover, this information is relatively fresh and would give other

parties insight into Bergmair's current financial condition, since he sold his interest in MindGeek in 2023.

10. Similarly, disclosing Bergmair's economic interest in MindGeek – especially in conjunction with the MindGeek audit reports and financial statements that Plaintiffs also seek to expose – would simply be a backdoor way of revealing his personal financial condition, since a future counterparty or competitor of Bergmair's could simply work backwards from MindGeek's financials to ascertain the value of his investment and the dividends he received. *See Allianz Global Risks*, 2021 WL 3171862 at *1 (sealing information that a competitor could use to "reverse engineer" key financial information of party). In addition, disclosing the economic and other rights Bergmair negotiated for in connection with his MindGeek investment would give a future negotiating counterparty or competitor a roadmap of what Bergmair might seek or be willing to accept in connection with a proposed investment.

11. Finally, disclosing how Bergmair structured his corporate holdings and the identity of the corporate entities through which he held his MindGeek shares would obviously give a future counterparty or competitor an advantage in negotiations. So would disclosing the identity of Bergmair's other investments, including the nonparty entity of Bergmair's that happened to do business with MindGeek. A future counterparty or competitor would have insight into what Bergmair regards as an advantageous structure for his investments, as well as knowledge of the identity and financial wherewithal of the specific entities through which Bergmair owned his MindGeek shares and other investments, including the nonparty entity that did business with MindGeek. *See Bold Limited v. Rocket Resume, Inc.*, 2024 WL 1329921 at *2 (Mar. 27, 2024) (finding compelling need to seal records reflecting "nonpublic corporate structure"); *Droplets, Inc. v. Yahoo! Inc.*, 2019 WL 9443777 at *2 (N.D. Cal. June 18, 2019) (same).

12. Moreover, if the Court adheres to its March 7, 2025 tentative ruling to grant Bergmair's motion to dismiss for lack of personal jurisdiction, all of this information is wholly irrelevant to the Court's decision. In its tentative ruling, the Court found that Plaintiffs had not made "any showing [that] could be sufficient" to satisfy the injustice element of the alter ego test since they had failed to show that the other MindGeek defendants are insolvent or otherwise unable to satisfy a judgement. March 7, 2025 Hearing Transcript 7-8. With the possible exception of the total 2023 sales price of MindGeek[1], none of the information Bergmair seeks to seal relates to this issue. The parties' arguments and the Court's tentative decision on the injustice element focus on *MindGeek's* solvency and financial condition, not on Bergmair's personal financial information. Courts in this circuit have recognized the propriety of sealing sensitive information "not relevant to the claims at issue." *Canchola v. Allstate Ins. Co.*, 2024 WL 5275024, at *3 (C.D. Cal. Oct. 8, 2024) (collecting cases where courts sealed IRS filings and tax returns under compelling reasons standard). Indeed, the public's interest is diminished where the documents are "not relevant to the Court's resolution of the [dispositive] motion[.]" *Music Grp. Macao Com. Offshore Ltd. v. Foote*, 2015 WL 3993147, at *8 (N.D. Cal. June 30, 2015); *CreAgri, Inc. v. Pinnaclife Inc.*, 2014 WL 27028, at *1 (N.D. Cal. Jan. 2, 2014) (endorsing precedent from Federal Circuit holding that "the public's interest is diminished where the documents that are subject to a motion to seal have not been considered by a court or a jury").

13. Moreover, the Supreme Court has cautioned that "American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may

---

[1] Even if the Court relies generally upon the magnitude of the 2023 sale price as relevant to its decision on the motion to dismiss, Bergmair submits that the sealing of the precise dollar figure involved is justified by his personal privacy interest in avoiding exposure of his wealth.

1 place them in a disadvantageous position. Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987). This principle applies here. If the Court adheres to its March 7 tentative ruling, it means that Bergmair's position all along that he had no business being included in these cases was correct: as a foreign citizen residing in China, United States courts do not have personal jurisdiction over him. Having been dragged into this case without a proper legal basis (as the Court found), Bergmair's personal financial information – elicited through intrusive discovery requests – should not be exposed for public consumption, especially where, as here, the information turned out to be ultimately irrelevant to the Court's ruling.

14. Bergmair also seeks to redact his email address which appears across numerous exhibits that were produced during jurisdictional discovery. Courts in this circuit routinely seal email addresses under the higher compelling reasons standard "due to the potential privacy harm to the individual whose contact information may be exposed." *Jones v. PGA Tour, Inc.*, 2023 WL 7434197, at *2 (N.D. Cal. Oct. 5, 2023) (collecting cases); *see also Dunbar v. Am. Broad. Companies, Inc.*, 2024 WL 5424364, at *1 (C.D. Cal. Dec. 30, 2024) (granting sealing application as to "email address since it is personally identifiable information and the proposed redaction is sufficiently narrowly tailored"); *Reed v. Reliant Life Shares, LLC*, 2024 WL 3550388, at *2 (C.D. Cal. Mar. 13, 2024) (granting sealing application as email addresses); *CivitasDX LLC v. Trilogy Fed.*, LLC, 2025 WL 268386, at *1 (S.D. Cal. Jan. 22, 2025) "(Courts frequently seal personal contact information, such as email addresses and phone numbers . . . .").

15. In addition to the commercial disadvantage to Bergmair and the invasion of his personal privacy interests, disclosure of the sealed material would raise personal security concerns. Public disclosure of his personal financial

condition – which is not otherwise in the public record – could make him or his family members (including his minor children) the target of harassment, at a minimum, or even kidnapping. Mr. Bergmair lives in Hong Kong, which has been the locale for numerous high-profile kidnappings of wealthy businessmen and their family members since the 1990s.[2] Recent decades have similarly seen similar kidnappings of wealthy people or their children for ransom.[3] Moreover, the adult entertainment industry, although entirely legal, is a controversial one which has spawned many vocal and aggressive opponents. In addition to the financial disadvantage to him, disclosure of Bergmair's wealth from this industry could potentially invite harassment – both online and in person – of him and his family members.[4]

---

[2] Austin Ramzy, *Hong Kong Kidnapping Revives Memories of Other High-Profile Crimes*, The New York Times (Apr. 30, 2015 6:48 AM), https://archive.nytimes.com/sinosphere.blogs.nytimes.com/2015/04/30/hong-kong-kidnapping-revives-memories-of-other-high-profile-crimes/?searchResultPosition=3; Reuters, *Hong Kong police hunt kidnap gang that fled with $3.6-million ransom* (Apr. 26, 2016 6:37 AM EDT), https://www.reuters.com/article/world/hong-kong-police-hunt-kidnap-gang-that-fled-with-3-6-million-ransom-idUSKBN0NK12S/; Austin Ramzy, *Walter Kwok, Hong Kong Developer Who Survived Kidnapping, Dies at 68*, The New York Times (Oct. 22, 2018), https://www.nytimes.com/2018/10/22/world/asia/walter-kwok-dead-hong-kong.html?searchResultPosition=1.

[3] *See* Ben Wescott, *Chinese appliance billionaire He Xiangjian held hostage in kidnapping attempt*, CNN (June 16, 2020 1:26 AM EDT), https://www.cnn.com/2020/06/16/asia/china-billionaire-hostage-intl-hnk-scli/index.html; Bukola Adebayo, *Family of abducted Tanzanian billionaire offer reward for information*, CNN (Oct. 16, 2018 1:08 AM EDT), https://www.cnn.com/2018/10/15/africa/family-of-kidnapped-africa-billionaire-offer-reward/index.html; Laurie P. Cohen, *Lampert Kidnappers Spun A Tale of Murder for Hire*, The Wall Street Journal (Jan. 21, 2003 12:14 AM EDT), https://www.wsj.com/articles/SB1043077177534126624.

[4] Indeed, in April 2021, the Montreal home of defendant Feras Antoon was burned to the ground by an arsonist following negative publicity regarding MindGeek. Ugo Giguère, *Luxury home in Montreal owned by Pornhub exec burned down in*

16. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: March 28, 2025                Respectfully submitted,

                                                         */s/ Ronald G. White*
                                                         Ronald G. White

---

*apparent arson*, Montreal Gazette (Apr. 26, 2021), https://montrealgazette.com/news/local-news/luxury-home-in-montreal-owned-by-pornhub-exec-burned-down-in-apparent-arson.