DREW TULUMELLO (#196484)
drew.tulumello@weil.com
MARK A. PERRY (#212532)
mark.perry@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: 202 682 7000
Fax: 202 857 0940

*Attorneys for Visa Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| SERENA FLEITES,<br><br>        Plaintiff,<br><br>   v.<br><br>MINDGEEK S.A.R.L.; MG FREESITES, LTD; MINDGEEK USA INCORPORATED; MG PREMIUM LTD.; MG GLOBAL ENTERTAINMENT INC.; 9219-1568 Quebec, Inc. (d/b/a MindGeek); BERND BERGMAIR; FERAS ANTOON; DAVID TASSILLO; COREY URMAN; VISA INC.; COLBECK CAPITAL DOES 1-5; BERGMAIR DOES 1-5,<br><br>        Defendants. | Case No. 2:21-CV-04920-WLH-ADS<br><br>Judicial Officer: Wesley L. Hsu<br>Courtroom: 9B<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VISA INC.'S THIRD MOTION TO DISMISS**<br><br>Date: April 24, 2026<br>Time: 1:30 p.m. |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 3

I.    Plaintiffs' Primary Allegations ................................................................ 3

II.   Order Dismissing Plaintiffs' Claims Against Visa ................................. 5

III.  Plaintiffs' New Complaints .................................................................... 5

LEGAL STANDARD ........................................................................................ 6

ARGUMENT ..................................................................................................... 7

I.    Plaintiffs Lack Article III Standing as to Visa ...................................... 8

II.   Plaintiffs Do Not State a TVPRA Conspiracy Claim Against Visa .................. 10

      A.    There is no conspiracy cause of action under the TVPRA for pre-2023 conduct .................................................................................. 10

      B.    Plaintiffs have not alleged the essential elements of a TVPRA conspiracy ........................................................................................ 11

            1.    Plaintiffs fail to adequately allege knowledge ................................. 11

            2.    Plaintiffs fail to adequately allege an agreement by Visa to commit an unlawful act ......................................................... 13

            3.    Plaintiffs fail to adequately allege intent by Visa .......................... 18

III.  Plaintiffs Fail To Allege Common Law Conspiracy Against Visa .................... 19

IV.   Plaintiffs Fail To Allege A Claim Under the UCL ................................ 21

V.    The Complaints Should Be Dismissed With Prejudice As To Visa ................... 22

CONCLUSION ................................................................................................ 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adobe Sys. Inc. v. Blue Source Grp.*,
   125 F. Supp. 3d 945 (N.D. Cal. 2015)....................................................22

*Ajzenman v. Off. of Comm'r of Baseball*,
   487 F. Supp. 3d 861 (C.D. Cal. 2020) ..................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................6, 7, 14

*Austin v. Univ. of Or.*,
   925 F.3d 1133 (9th Cir. 2019) ..............................................................15

*Benavidez v. County of San Diego*,
   993 F.3d 1134 (9th Cir. 2021) ................................................................7

*Bernhardt v. Islamic Republic of Iran*,
   47 F.4th 856 (D.C. Cir. 2022)...............................................................18

*Blantz v. Cal. Dep't of Corr. & Rehab.*,
   727 F.3d 917 (9th Cir. 2013) ......................................................14, 15, 17

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
   911 F.2d 242 (9th Cir. 1990) ................................................................22

*Coubaly v. Cargill, Inc.*,
   610 F. Supp. 3d 173 (D.D.C. 2022), *aff'd*, 144 F.4th 343 (D.C. Cir.
   2025) .............................................................................................10

*Craigslist Inc. v 3Taps Inc.*,
   942 F. Supp. 2d 962 (N.D. Cal. 2013)..................................................13

*Direct Sales Co. v. United States*,
   319 U.S. 703 (1943)............................................................................13

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
   671 F. Supp. 3d 387 (S.D.N.Y. 2023) ..............................................13, 18

*Doe I v. Apple Inc.*,
   No. 1:19-cv-03737 (CJN), 2021 WL 5774224 (D.D.C. Nov. 2, 2021),
   *aff'd*, 96 F.4th 403 (D.C. Cir. 2024) .......................................................................... 10

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
   895 F.3d 1166 (9th Cir. 2018) ..................................................................................... 9

*Eidmann v. Walgreen Co.*,
   522 F. Supp. 3d 634 (N.D. Cal. 2021) ........................................................................ 21

*Emery v. Visa Int'l Serv. Ass'n*,
   95 Cal. App. 4th 952 (2002) ........................................................................................ 21

*Gauvin v. Trombatore*,
   682 F. Supp. 1067 (N.D. Cal. 1988) ........................................................................... 22

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ................................................................................ 7, 14

*Halberstam v. Welch*,
   705 F.2d 472 (D.C. Cir. 1983) ............................................................................ 11, 13

*Hiramanek v. Loftus*,
   No. 5:13-cv-00228-RMW, 2015 WL 1887090 (N.D. Cal. Apr. 24, 2015) .............. 16

*Ibarra v. Manheim Invs., Inc.*,
   775 F.3d 1193 (9th Cir. 2015) ..................................................................................... 18

*Ingram v. United States*,
   360 U.S. 672 (1959) ...................................................................................................... 11

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
   589 U.S. 178 (2020) ...................................................................................................... 12

*Kemper v. Deutsche Bank AG*,
   911 F.3d 383 (7th Cir. 2018) ....................................................................................... 18

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ..................................................................................... 14

*Kidron v. Movie Acquisition Corp.*,
   40 Cal. App. 4th 1571 (1995) ...................................................................................... 20

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)............................................................................. 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)........................................................................... 17

*Murthy v. Missouri*,
    603 U.S. 43 (2024)..................................................................... 8, 9, 10

*Raiser v. Kleeger*,
    No. CV21-9344-DSF (KK), 2022 WL 2104494 (C.D. Cal. June 9, 2022)......... 16, 17

*Ratha v. Phatthana Seafood Co. (Ratha I)*,
    35 F.4th 1159 (9th Cir. 2022) ........................................................ 10, 12

*Simon v. E. Ky. Welfare Rts. Org.*,
    426 U.S. 26 (1976).............................................................................. 8

*T.S. v. Wyndham Hotels & Resorts, Inc.*,
    No. 23-CV-2530 (PJS/ECW), 2024 WL 3927382 (D. Minn. Aug. 23, 2024) ................................................................................................ 15

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
    768 F.2d 1001 (9th Cir. 1985) .......................................................... 13

*United States v. Collins*,
    966 F.2d 1214 (7th Cir. 1992) ...................................................... 18, 19

*Williams v. Foote*,
    CV 08-2838-CJC (JTL), 2009 WL 1520029 (C.D. Cal. May 28, 2009) .................. 16

**Rules and Regulations**

Fed. R. Civ. P. 12(b)(6) ...................................................................... 6

**Statutes**

18 U.S.C. § 1591(a)(2)........................................................................ 20

18 U.S.C. § 1594(a) ........................................................................... 20

18 U.S.C. § 2252 ............................................................................... 19

18 U.S.C. § 2252a ............................................................................. 19

18 U.S.C. § 2255 ........................................................................................... 19

Cal. Bus. & Prof. Code § 17200 ................................................................... 22

**Other Authorities**

Visa, *Third Party Agent Registration Program Frequently Asked Questions* (May 2016), https://perma.cc/9L5J-4EN8 ................................................... 16

Visa, *Visa Fact Sheet* (2025), https://perma.cc/5P9L-5AM5 ....................... 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

Following this Court's dismissal of all claims against Defendant Visa, Inc. ("Visa"), Plaintiffs in *Fleites v. MindGeek S.a.r.l.*, No. 21-CV-04920-WLH-ADS and the 14 related cases (collectively, "Plaintiffs") each filed amended complaints.[1]  The core of the allegations in each complaint remains the same, namely, that Plaintiffs were underage victims of sexual exploitation, including through the creation of explicit videos that were uploaded to the free adult video website, Pornhub, and other websites allegedly owned or operated by Defendant MG Freesites, Ltd. d/b/a Pornhub ("Pornhub"), MindGeek USA Inc., MG Premium Ltd., MG Global Entertainment, Inc., and 9219-1568 Quebec, Inc. (collectively, "MindGeek").

The Court previously dismissed all claims against Visa—including under the Trafficking Victims Protection Reauthorization Act ("TVPRA")—principally on the ground that Visa acted only as a "remote intermediary" whose conduct evinced neither an

---

[1] This omnibus motion to dismiss covers claims brought by Plaintiffs against Visa in the above-captioned proceeding as well as in the 14 related cases: *K.A. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04786-WLH-ADS (C.D. Cal. Dec. 15, 2025); *L.T. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04791-WLH-ADS (C.D. Cal. Dec. 16, 2025); *N.L. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04788-WLH-ADS (C.D. Cal. Dec. 16, 2025); *N.Y. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04801-WLH-ADS (C.D. Cal. Dec. 15. 2025); *T.C. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04795-WLH-ADS (C.D. Cal. Dec. 16. 2025); *X.N. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04800-WLH-ADS (C.D. Cal. Dec. 15, 2025); *J.C. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04971-WLH-ADS (C.D. Cal. Dec. 16, 2025); *C.S. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04992-WLH-ADS (C.D. Cal. Dec. 16, 2025); *S.O. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04998-WLH-ADS (C.D. Cal. Dec. 16, 2025); *W.L. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04977-WLH-ADS (C.D. Cal. Dec. 16, 2025); *L.S. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-05026-WLH-ADS (C.D. Cal. Dec. 16, 2025); *A.K. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-05190-WLH-ADS (C.D. Cal. Dec. 15, 2025); *W.P. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-05185-WLH-ADS (C.D. Cal. Dec. 16, 2025); and *J.L. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-07046-WLH-ADS (C.D. Cal. Dec. 16, 2025).  Except where indicated, the allegations across all of these complaints are substantively identical.

---

agreement nor an intent to join a conspiracy in furtherance of the wrongful conduct alleged. *See* Order re Visa Inc.'s Mot. to Dismiss SAC ("*Fleites* MTD Order") at 17, 33–39, Dkt. No. 609. Despite having conducted no additional discovery since then—and apparently no additional investigation—Plaintiffs have included new allegations, not raised in the past *three* iterations of this complaint, in an attempt to paint Visa as an active participant in the operation of MindGeek's websites.

Some of these allegations are complete non-sequiturs. For example, Plaintiffs allege that "Visa and MindGeek repeatedly coordinated their public comments," but the only basis for that assertion is that "Visa consistently insisted that it would not tolerate a merchant that had CSAM or other illegal content on their website." TAC ¶ 311. And elsewhere, Plaintiffs assert that Visa offered "bespoke custom privileges" to MindGeek, based only on Visa's statement that it would remain neutral "under the law" as to policy debates regarding merchant activity and the alleged fact that Visa did not wholesale terminate MindGeek's payment privileges. TAC ¶¶ 320–21. Reaffirming a commitment against illegal conduct, maintaining a neutral stance as to merchant activity, and continuing to provide standard payment processing services are the precise *opposite* of actively participating in MindGeek's operations.

Other of these allegations seem to have manifested out of thin air. For the first time in four years, Plaintiffs now assert that "Visa and its network banks sometimes suggested changes to words and descriptions connected to illegal content." TAC ¶ 310. Plaintiffs offer no factual basis for this assertion and no explanation of what information they learned since the prior dismissal order to justify inclusion of this allegation now. In the same paragraph, Plaintiffs claim that "Visa and its member banks also removed restrictions on payments that had clear indicia of trafficking." TAC ¶ 310. Again, though, Plaintiffs identify no factual basis for this assertion. These are conclusory assertions, not allegations of fact.

It is clear that Plaintiffs' Visa-specific additions are not based on the discovery of new facts or more carefully crafted allegations—they are a transparent attempt to write around the Court's prior decision. These new allegations are legally immaterial and wholly insufficient to cure the defects identified by the Court (and in many cases are simply false). As the Court has already recognized, Visa is a third-party, payment-processing network that provides its services to merchants and businesses of all kinds. That Visa made those same services available to MindGeek during the time period in question does not make Visa a co-conspirator under the TVPRA. Plaintiffs' other efforts at divining new theories of conspiracy liability likewise fail. This Court should dismiss Plaintiffs' claims against Visa.

Visa submits that dismissal should be with prejudice. Visa should never have been included in this lawsuit in the first place—it is not a trafficker, it does not condone or endorse trafficking, it has never agreed to further a trafficking venture, and it certainly has no *intent* to support trafficking. While Visa condemns trafficking, CSAM, and any other form of exploitation, it is several times removed from any of the conduct at issue in this litigation. Although Visa has strong policies against illegal activity, it does not become secondarily liable for providing payment solutions to entities that might (or might not) engage unlawfully in violation of those policies. No case has recognized liability in these circumstances. This should not be the first.

## BACKGROUND

This Court is well familiar with the basic allegations in this case. Visa provides only a high-level summary here, focusing primarily on the developments since the prior complaints.

## I. Plaintiffs' Primary Allegations

Plaintiffs are victims of sex trafficking whose videos were ultimately uploaded to Pornhub, one of MindGeek's websites with user-generated content. *See, e.g.*, TAC ¶¶ 326–27. Plaintiff Fleites, for example, alleges that she was coerced into making an

---

explicit video as a teenager, which was made widely available on Pornhub and not removed until after extensive outreach to MindGeek, and only then with limited success. *See* TAC ¶¶ 328–31. Fleites alleges that several years later, while still a minor, she was coerced into making another explicit video, which was again ultimately uploaded to Pornhub. *See id.* ¶¶ 337–39. These experiences caused and continue to cause Fleites significant psychological harm. *See id.* ¶¶ 335–36, 340. More generally, Plaintiffs allege that MindGeek failed to adequately monitor its websites for underage and non-consensual content, in part because such content is profitable for MindGeek and drives traffic. *See, e.g.*, TAC ¶¶ 168, 175; *K.A.* Am. Compl. ¶¶ 168, 175.

Visa is not alleged to be either a trafficker or a participant in a trafficking venture. Instead, Visa operates a global payment processing network through its relationships with banks (Acquirers), who then contract with merchants (like MindGeek) for payment processing. *See id.* TAC ¶ 291; *see, e.g.*, Visa, 2025 Annual Report (Nov. 6, 2025) ("Visa 2025 Annual Report"). Visa imposes rules governing merchants and transactions, but it is ultimately the Acquirers that maintain merchant relationships and monitor transaction activity. *See* Visa 2025 Annual Report at 4–6, 11–12, 16–18, 66, 69.

Until the most recent iteration of the complaint, the only allegations against Visa were that it allowed MindGeek access to its payment processing network, despite allegedly knowing (actually or constructively) that MindGeek's websites contain underage and non-consensual content. TAC ¶¶ 93, 286. Plaintiffs allege that Visa was aware of such content through outreach by various advocates, but that it was not until December 2020—when an article ran in the *New York Times* about Pornhub—that Visa halted payment processing for those MindGeek sites allowing user-generated content. TAC ¶¶ 323–24. Plaintiffs do not allege that Visa created, uploaded, or disseminated any content on MindGeek's websites.

## II.    Order Dismissing Plaintiffs' Claims Against Visa

On September 26, 2025, the Court dismissed all of Plaintiffs' claims against Visa. *See Fleites* MTD Order at 46-47; *see also* Mot. to Dismiss Order, *K.A. v. MindGeek S.A.R.L.*, No. 2:24-CV-04786 (C.D. Cal. Nov. 6, 2025), Dkt. No. 166.  With respect to Plaintiffs' claim that Visa was liable as a beneficiary of participation in a trafficking venture under the TVPRA, the Court held that "the relationship that Plaintiff [Fleites] illustrates of Visa and MindGeek is more akin to a 'remote intermediary' that provided 'off-the-shelf product' to MindGeek." *Fleites* MTD Order at 17 (citation omitted).  With respect to Plaintiffs' claims against Visa for conspiracy under the TVPRA, the Court held that while Plaintiffs had plausibly alleged Visa's *knowledge* of the wrongful activity, they had not plausibly alleged either Visa's *agreement* or *intent* to further the wrongful activity. *See id.* at 29–39.  The Court explained that an agreement for conspiracy purposes "cannot solely be a business relationship or overlapping commercial interests," and that "[i]n the absence of interaction, coordination, or shared purpose, continued service—even in the face of awareness—is not enough to demonstrate a meeting of the minds and plead agreement." *Id.* at 34.  The Court further held that "the fact that a company continues to do business with an entity accused of wrongdoing—without more—is not enough to show that it shares the entity's unlawful objective." *Id.* at 37.  Finally, the Court dismissed Plaintiffs' civil conspiracy claim for lack of a plausibly alleged predicate offense, *see id.* at 45, and dismissed Plaintiffs' claim under California's Unfair Competition Law ("UCL") for failure to allege unlawful conduct, *see id.* at 46.  The Court gave Plaintiffs partial leave to amend.

## III.    Plaintiffs' New Complaints

Plaintiffs filed amended complaints fewer than three months later.  For Fleites, this is the *fourth* iteration of the complaint, the first of which was filed in 2021.  The prior round of complaints was filed after Fleites and her attorneys were permitted to take

extensive jurisdictional discovery from MindGeek and various related Defendants.  To Visa's knowledge, there has been no additional discovery since the prior complaints.

Nevertheless, the most recent complaints contain entirely new allegations, never before asserted or even alluded to, supposedly implicating Visa as a direct participant in a conspiracy with MindGeek to take over the industry for online adult entertainment. Most relevant here, Plaintiffs now allege:

- Visa provided MindGeek special treatment by declining to sanction or terminate MindGeek for conduct that would have resulted in discipline for any other merchant, TAC ¶ 305;

- Visa worked with MindGeek to "develop payment structures" that would avoid public exposure, including through the use of "Third-Party Payment Processors" owned by MindGeek, TAC ¶ 308;

- Visa collaborated with MindGeek on minimizing the visibility of illegal conduct, including by suggesting changes to words connected to illegal content and by removing restrictions on certain payments, TAC ¶ 310; and

- Visa and MindGeek "repeatedly coordinated their public comments" in response to public pressure, TAC ¶ 311.

For each of these new allegations, Plaintiffs either provide no factual basis at all or point only to generic allegations that in no way support the conclusory assertions Plaintiffs go on to make.  Nowhere do Plaintiffs explain what they have learned since September 2025 that justifies the Visa-specific additions, nor do they explain why these statements did not appear in any of the three prior iterations of the complaint.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) should be granted where the complaint fails to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "A claim has facial

1 plausibility when the plaintiff pleads factual content that allows the court to draw the
2 reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

3    A court, however, "is not required to accept as true legal conclusions couched as
4 factual allegations." *Fleites* MTD Order at 14. "'Nor is the court required to accept as
5 true allegations that are merely conclusory, unwarranted deductions of fact, or
6 unreasonable inferences.'" *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.
7 2008) (citation omitted); *see also Benavidez v. County of San Diego*, 993 F.3d 1134, 1145
8 (9th Cir. 2021) ("'[C]onclusory allegations of law and unwarranted inferences are
9 insufficient to defeat a motion to dismiss.'") (citation omitted).

## ARGUMENT

10
11    Plaintiffs cannot avoid the Court's prior decision by making factual contentions
12 without evidentiary support.  All claims against Visa should be dismissed with prejudice.

13    *First*, Plaintiffs' claims against Visa fail for lack of standing.  To have Article III
14 standing, a plaintiff must show that her injury is traceable to each named defendant.  Here,
15 Visa is not alleged to have directly caused any of Plaintiffs' injuries, which arise out of
16 Plaintiffs' sexual assault and the creation and dissemination of Plaintiffs' explicit videos.
17 Instead, Visa's only alleged connection is through the processing of payments for
18 MindGeek, which Plaintiffs have not plausibly tied to any injury.

19    *Second*, Plaintiffs have failed to state a claim for conspiracy liability under the
20 TVPRA.  The law and this Court's prior decision are clear:  A company does not enter
21 into a conspiracy by providing standard goods and services to the market, even if the
22 company knows or believes a downstream purchaser could or will use the goods or
23 services in an unlawful manner.  Plaintiffs' efforts to sidestep that precedent through
24 conclusory pleading fail.

25    *Third*, Plaintiffs have failed to state a claim for conspiracy liability under the
26 common law.  Whether or not Plaintiffs have adequately alleged the predicate torts as to

27
28

MindGeek, Plaintiffs have not adequately alleged agreement, knowledge, or intent as to Visa.

*Fourth*, Plaintiffs have failed to state a claim under the UCL. Plaintiffs' UCL claim is based upon Plaintiffs' flawed TVPRA conspiracy claim and therefore fails for the same reasons. To the extent Plaintiffs seek to offer any other theory of UCL liability, they have not identified any "unfair" or "fraudulent" businesses or practices by Visa.

## I.   Plaintiffs Lack Article III Standing as to Visa

Plaintiffs' claims against Visa should be dismissed for lack of Article III standing. The injuries as alleged by Plaintiffs are not fairly traceable to Visa's payment processing.[2]

Article III imposes an "irreducible constitutional minimum of standing," which consists of three elements: (1) an "injury in fact," (2) a "causal connection between the injury and the conduct complained of," and (3) a likelihood that "the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations and internal quotation marks omitted). "[S]tanding is not dispensed in gross"—"plaintiffs must demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek." *Murthy v. Missouri*, 603 U.S. 43, 44 (2024) (citation and internal quotation marks omitted).

The second element of standing is referred to as "traceability" and "requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976). Consistent with this standard, courts have "been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Murthy*, 603 U.S. at 57 (citation omitted).

---

[2] Judge Carney ruled otherwise in the Order on Visa's first motion to dismiss. *See* Order re Visa Inc.'s Mot. to Dismiss FAC at 9–16, Dkt. No. 166. Visa respectfully submits that determination, which did not have the benefit of *Murthy*, was in error.

The Supreme Court clarified the high standard for standing based on third-party conduct in *Murthy v. Missouri*, 603 U.S. 43, at 56–63 (2024). There, plaintiffs sued various government officials for allegedly coercing social media platforms into censoring the plaintiffs' posts. The Court emphasized that it is a "tall order" to establish standing based upon the conduct of third parties. *Id.* at 58. Analyzing traceability, the Court observed that "[t]he primary weakness in the record of past restrictions [on plaintiff's social media posts] is the lack of specific causation findings with respect to any discrete instance of content moderation." *Id.* at 59. The Court continued by highlighting the social media platforms' "independent incentives to moderate content." *Id.* at 44, 60, 61. While the plaintiffs in *Murthy* were seeking prospective relief, central to the Court's analysis was whether the plaintiffs' past claimed injuries of censorship were traceable to government restrictions. *Id.* at 59–60.

*Murthy* compels dismissal here. Plaintiffs do not allege that Visa created or uploaded videos involving Plaintiffs, that Visa hosted or shared Plaintiffs' content, that Visa processed payments for Plaintiffs' alleged traffickers, or that Visa had any contractual relationship with Plaintiffs' alleged traffickers that created or uploaded Plaintiffs' content. Instead, Plaintiffs' theory of injury depends entirely on the independent actions of entities and individuals—namely, Plaintiffs' alleged traffickers and the MindGeek Defendants—other than Visa. But traceability requires allegations that "also plausibly allege a 'concrete' injury causally connected to the violation." *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1172 (9th Cir. 2018). As to Visa, there is no such proof (or even allegation) here—the harm to Plaintiffs is the creation and dissemination of the exploitative content, not the subsequent processing of payments for advertisements.

It is not enough for Plaintiffs to assert that Visa's payment processing network provided the incentive for MindGeek to engage in the unlawful conduct. Courts have rejected the theory that generally providing a financial incentive for engaging in unlawful

conduct is enough to establish traceability. *See Doe I v. Apple Inc.*, No. 1:19-cv-03737 (CJN), 2021 WL 5774224, at *7 (D.D.C. Nov. 2, 2021) (ruling that a "long 'chain of contingencies . . .'" was "not sufficient to tie [d]efendant's conduct to Plaintiffs' injuries" where plaintiffs argued that defendants as end-purchasers of cobalt drove demand for the metal (citation omitted)), *aff'd*, 96 F.4th 403 (D.C. Cir. 2024); *see also Coubaly v. Cargill, Inc.*, 610 F. Supp. 3d 173, 183 (D.D.C. 2022) (dismissing a forced labor action brought against supplier corporations under Section 1595 for lack of standing because plaintiffs did not plausibly allege their injuries were traceable to the defendants and required the court to "speculate about the role of the intermediaries"), *aff'd*, 144 F.4th 343 (D.C. Cir. 2025). Moreover, MindGeek and Plaintiffs' traffickers have their own "independent incentives," *Murthy*, 603 U.S. at 44, 60, 61, irrespective of whether Visa processes payments for MindGeek or not. As proof positive, MindGeek continues to operate Pornhub to this day even though Visa *no longer processes payments* for that website. TAC ¶ 12. Visa's payment processing is therefore not even a but-for cause of Plaintiffs' injuries, much less traceable to them.

## II.  Plaintiffs Do Not State a TVPRA Conspiracy Claim Against Visa

The Court dismissed Plaintiffs' prior TVPRA conspiracy claims against Visa for failure to allege the essential elements of a conspiracy. Plaintiffs' efforts to rehabilitate their flawed allegations through conclusory assertions of collusion fail.

### A.  There is no conspiracy cause of action under the TVPRA for pre-2023 conduct

In its prior order, the Court correctly held that the Ninth Circuit's decision in *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159 (9th Cir. 2022) ("*Ratha I*"), applies here and that, therefore, before 2023, the TVPRA did not provide a private cause of action for conspiracy. *See Fleites* MTD Order at 21. The Court held, however, that the 2023 amendment to the TVPRA could be applied retroactively to pre-2023 conduct. *See id.* at 21–28. The Ninth Circuit is currently considering that issue en banc in *Ratha v. Rubicon*

*Resources, LLC*, No. 23-55299 (9th Cir.), argued June 24, 2025 ("*Ratha II*"). If the Court affirms the dismissal in that case, that decision will likewise compel dismissal of Plaintiffs' TVPRA conspiracy claims against Visa here.

Regardless of the final disposition of *Ratha II*, Visa respectfully submits that the 2023 amendment cannot be retroactively applied to it because (1) the statute does not clearly apply retroactively, (2) the Supreme Court's test for retroactivity does not provide any exception for "clarifying" amendments, and (3) even if such an exception exists, it does not apply to the TVPRA. Because these arguments have been thoroughly briefed in this Court (Visa Inc.'s Mot. to Dismiss SAC ("*Fleites* MTD SAC") at 15–17, Dkt. No. 432-1) and before the Ninth Circuit, Visa raises them here for preservation purposes only.

### B. Plaintiffs have not alleged the essential elements of a TVPRA conspiracy

In any event, Plaintiffs' civil TVPRA conspiracy claims fail on the merits. As the Court explained in its prior order—and as Plaintiffs have never disputed—the essential elements of a civil conspiracy are "(1) an agreement to do an unlawful act or a lawful act in an unlawful manner; (2) an overt act in furtherance of the agreement by someone participating in it; and (3) injury caused by the act." *Fleites* MTD Order at 28–29 (citing *Halberstam v. Welch*, 705 F.2d 472, 487 (D.C. Cir. 1983)). Relevant here, the agreement element requires "(i) knowledge of the wrongful activity, (ii) agreement to join in the wrongful activity, and (iii) intent to aid in the wrongful activity." *Id.* at 29 (citing *Ajzenman v. Off. of Comm'r of Baseball*, 487 F. Supp. 3d 861, 867 (C.D. Cal. 2020)). As with each prior iteration of the complaint, Plaintiffs fail to allege any of the elements of an agreement.

### 1. Plaintiffs fail to adequately allege knowledge

In its prior order, the Court correctly recognized that conspiracy liability "cannot exist without at least the degree of criminal intent necessary for the substantive offense itself." *Id.* at 30 (quoting *Ingram v. United States*, 360 U.S. 672, 678 (1959)). Visa further

agrees with the Court that this "does not mean the constructive knowledge standard for beneficiary liability under § 1591(a)(2) automatically applies to conspiracy." *Id.* The relevance of the knowledge standard for beneficiary liability is that the knowledge standard for conspiracy must be *at least* as rigorous. And while Visa has maintained that "knowledge of acts perpetrated against the Plaintiff" is necessary, *id.*; *see also Fleites* MTD SAC at 20, this Court can disagree with that conclusion and still rule for Visa. That is because the Ninth Circuit has held that for beneficiary liability, a defendant must "have known of the specifically alleged TVPRA violations." *Ratha I*, 35 F.4th at 1177. And as this Court recognized, knowledge in the conspiracy context is *actual* knowledge, not constructive. *See Fleites* MTD Order at 29. That standard is not met here, and Visa respectfully asks the Court to reconsider its prior conclusion.

The distinction between actual knowledge and constructive knowledge is meaningful. The Supreme Court has emphasized that the qualifier "actual" signals that the party's "knowledge must be more than potential, possible, virtual, conceivable, theoretical, hypothetical, or nominal." *Intel Corp. Inv. Policy Comm. v. Sulyma*, 589 U.S. 178, 185 (2020) (citation and internal quotation marks omitted). And the difference between "constructive" and "actual" knowledge is not "that the latter term usually refers to information that a plaintiff must seek out rather than information that is sent to him"— "if a plaintiff is not aware of a fact, he does not have 'actual knowledge' of that fact however close at hand the fact might be." *Id.* at 186.

Here, the Court relied on allegations that "Visa conducted internal due diligence, received concrete complaints from advocacy groups, was placed on the 'Dirty Dozen' list and was aware that PayPal terminated its relationship with MindGeek over similar concerns." *Fleites* MTD Order at 32. At best, though, those facts suggest *constructive* knowledge—that is, that Visa was in receipt of facts from which it *could have* learned about the alleged unlawful conduct. Absent, though, is any allegation that Visa *actually* learned about the alleged conspiracy through its due diligence. Indeed, the fact that a

public advocacy group has accused a company of wrongdoing does not mean everyone aware of that accusation now has "actual knowledge" of that wrongdoing for purposes of conspiracy liability.  As the Court previously observed, there are no allegations "showing that Visa internally understood" MindGeek to be engaged in an unlawful trafficking conspiracy.  *Id.*  Absent such allegations, Plaintiffs have not alleged actual knowledge.

### 2. Plaintiffs fail to adequately allege an agreement by Visa to commit an unlawful act

The Court was correct, however, in concluding that Plaintiffs failed to allege that Visa agreed to join the wrongful activity.  As the Court observed, "the agreement is the essential feature of conspiracy." *Fleites* MTD Order at 33 (citing *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 412 (S.D.N.Y. 2023)).  But "[t]he agreement required cannot solely be a business relationship or overlapping commercial interests." *Id.* at 34 (citing *Craigslist Inc. v 3Taps Inc.*, 942 F. Supp. 2d 962, 982 (N.D. Cal. 2013); *Direct Sales Co. v. United States*, 319 U.S. 703, 709 (1943)).  Applying that standard, the Court held Plaintiffs had not adequately alleged an agreement because "[i]n the absence of interaction, coordination, or shared purpose, continued service—even in the face of awareness—is not enough to demonstrate a meeting of the minds and plead agreement." *Id.* at 34 (citing *Halberstam*, 705 F.2d at 481; *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1020 (9th Cir. 1985)).  Unlike other cases, Plaintiffs allege "no active engagement—no customization, no implementation support and no joint strategy." *Id.* at 35.

In response, Plaintiffs have unveiled a set of new allegations in a transparent attempt to plead around the Court's ruling.  They have not taken any additional discovery and do not purport to have conducted any new investigation.  And in remarkable contrast to the allegations against MindGeek—which include detailed information about the people involved, the particular policies challenged, and the specific conduct at issue—

Plaintiffs' new allegations against Visa are stated in the vaguest and most conclusory terms.  Plaintiffs offer no explanation of where these new accusations even came from.

Plaintiffs' attempt to impose liability on Visa following dismissal without actually adding any new *factual* substance to the complaint fails.  As noted above, a court at the pleading stage need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead*, 536 F.3d at 1055 (citation and internal quotation marks omitted).  Thus, a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678 (alteration in original) (citation and internal quotation marks omitted).  And in the context of conspiracy specifically, "[a]llegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy" are insufficient.  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008).  These foundational principles of pleading are often rotely invoked in motion papers, but here, they apply with distinct force.

Plaintiffs raise in the TAC five assertions regarding Visa's alleged agreement with MindGeek.  *See* TAC ¶¶ 304–12.  Visa disposes of each below.

*First*, Plaintiffs allege that "Visa intentionally permitted its network banks to onboard MindGeek and its various entities despite its illegal behavior and content."  TAC ¶ 304.  That is simply a dressed-up form of what this Court has already rejected as insufficient:  An allegation that "Visa continued to process payments while being aware . . . of MindGeek's CSAM problem."  *Fleites* MTD Order at 35.  And the contention that Visa allowed these Acquirers to "ignore the applicable compliance and enforcement obligations, especially the standards for regular monitoring of the sites," TAC ¶ 304, is simply a "naked assertion[] devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted); *see also Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 927 (9th Cir. 2013) (complaint insufficient where it lacked "specific factual allegations regarding [the defendant's] involvement in the actions giving

rise to this lawsuit").  Plaintiffs do not say what those "compliance and enforcement obligations" are, what "standards for regular monitoring" they refer to, how Visa implemented those obligations or standards for other merchants, or how Visa's treatment of MindGeek and its related Acquirers differed from any other context.  *Cf. Austin v. Univ. of Or.*, 925 F.3d 1133, 1138 (9th Cir. 2019) (selective enforcement claim insufficiently pled absent "nonconclusory allegations" of different treatment of similarly situated individuals).  Without any context or "further factual enhancement," this conclusory allegation provides no basis to infer the existence of a conspiracy.

*Second*, Plaintiffs claim that "Visa ignored its own internal standards and practices in response to reported violations by MindGeek," because these reports "would have caused Visa to sanction and eventually terminate any other merchant."  TAC ¶ 305.  Once again, this is nothing more than an allegation that Visa allowed MindGeek access to its payment network despite alleged knowledge of wrongdoing, which this Court has already held is insufficient.  Most legitimate businesses have policies against illegal activity, but that does not mean every such business is engaged in a conspiracy when its products or services are used in furtherance of illegal activity.  *See Fleites* MTD Order at 35 (noting "the danger of adopting Plaintiff's approach," including as to the implications for "any vendor with commercial ties to MindGeek"); *cf. also T.S. v. Wyndham Hotels & Resorts, Inc.*, No. 23-CV-2530 (PJS/ECW), 2024 WL 3927382, at *10 (D. Minn. Aug. 23, 2024) (noting that utility companies and gas stations do not participate in a venture with pimps who trafficked victim).  And once again, Plaintiffs' vague contention that Visa "ignored its own internal standards and practices" is devoid of any explanation of what those standards and practices were, how Visa deviated from them, or how these unidentified "other merchant[s]" compare to MindGeek. It is a bare conclusion, not a factual allegation.

*Third*, Plaintiffs assert that Visa "worked with MindGeek to develop payment structures to help them both continue to process illegal payments."  TAC ¶ 308.  It is not

clear what "payment structures" Plaintiffs believe Visa "develop[ed]" in coordination with MindGeek.  Plaintiffs assert that Visa and the Acquirers "*encouraged and permitted* MindGeek*" to process payments through "Third-Party Payment Processors," *id.* (emphasis added), but Plaintiffs do not actually allege Visa *developed* such processors for MindGeek's benefit.  And indeed, Visa has long allowed the use of third-party payment processors for all kinds of merchants.  *See* Visa, *Third Party Agent Registration Program Frequently Asked Questions* (May 2016), https://perma.cc/9L5J-4EN8.  The delegation of monitoring responsibility to third-party payment processors is of no moment—Visa has *always* maintained that it does not monitor the transactions of *any* merchant, whether they use a third-party payment processor or not.  *Fleites* MTD SAC at 5; Visa Inc.'s Mot. to Dismiss FAC ("*Fleites* MTD FAC") at 4, Dkt. No. 55-1.  Plaintiffs have never claimed otherwise.

In any event, this is precisely the kind of conclusory, unadorned allegation that courts reject in the conspiracy context.  In *Williams v. Foote*, for example, the plaintiff alleged conspiracy on the basis that the defendant falsified information and falsely corroborated information used to charge the plaintiff with attempted murder.  CV 08-2838-CJC (JTL), 2009 WL 1520029, at *13 (C.D. Cal. May 28, 2009).  Although those allegations, if true, likely would give rise to a conspiracy claim, the court dismissed the case because the plaintiff "fail[ed] to allege *specific facts* of an agreement or meeting of minds to violate plaintiff's constitutional rights."  *Id.* at *13 (emphasis added); *see also Hiramanek v. Loftus*, No. 5:13-cv-00228-RMW, 2015 WL 1887090, at *2 (N.D. Cal. Apr. 24, 2015) (no sufficient allegations of conspiracy where the plaintiff's "allegation [was] not supported by any specific statements" evincing a conspiracy).  The same rationale applies here, where Plaintiffs speak in only the most general terms without committing themselves to an actual allegation of *fact* (because they have no such facts).  The unsupported speculation that Visa went out of its way to "develop" new payment structures for MindGeek in order to facilitate illegal transactions comprising a miniscule

percentage of Visa's revenue "is simply not plausible." *Raiser v. Kleeger*, No. CV21-9344-DSF (KK), 2022 WL 2104494, at *1 (C.D. Cal. June 9, 2022); *see also Blantz*, 727 F.3d at 927 (allegations must be considered through the lens of "common sense").

*Fourth*, Plaintiffs assert that "Visa and MindGeek also collaborated on minimizing the visibility of illegal conduct," including by "suggest[ing] changes to words and descriptions connected to illegal content" and "remov[ing] restrictions on payments that had clear indicia of trafficking." TAC ¶ 310. This is perhaps the most desperate—and facially implausible—of Plaintiffs' new theories. More than 175 million merchants have access to Visa's payment network. *See* Visa, *Visa Fact Sheet* (2025), https://perma.cc/5P9L-5AM5. Visa has no incentive to single out one merchant out of those hundreds of millions and provide *business* advice about how to avoid the scrutiny of regulators. *Cf. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596–97 (1986) ("[I]f [defendants] had no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy.").[3] And Plaintiffs do not even allege that Visa has regular access to transaction-level data from individual merchants.

*Fifth*, Plaintiffs assert that "Visa and MindGeek repeatedly coordinated their public comments." TAC ¶ 311. Despite the broad sweep of this allegation, Plaintiffs concede that their only basis for this assertion is that "Visa consistently insisted that it would not tolerate a merchant that had CSAM or other illegal content on their website." *Id.* That is not indicia of coordination—it is simply a business asserting that it complies with the law and expects its customers to do the same. Whatever assumptions Plaintiffs seek to draw from those statements "cannot be pulled from thin air but need some reasonable ground underlying them." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015).

---

[3] In fact, Plaintiffs asked several of Defendants during jurisdictional discovery *about this exact theory*—and no deponent corroborated Plaintiffs' account.

1   Plaintiffs offer no such "reasonable ground" here.  There is no plausible allegation of

2   coordination of public statements regarding an intolerance for CSAM that would give rise

3   to a fair inference of an agreement to promote CSAM.

4   ### 3.   Plaintiffs fail to adequately allege intent by Visa

5   Even if Plaintiffs' Visa-specific additions were sufficient to plausibly allege an

6   agreement to commit a wrongful act, there still are no plausible allegations of *intent* by

7   Visa.  As this Court recognized, "[a] person who is indifferent to the goals of an ongoing

8   conspiracy does not become a party to this conspiracy merely because that person knows

9   that his or her actions might somehow be furthering that conspiracy." *Fleites* MTD Order

10  at 36 (alteration in original) (citation and internal quotation marks omitted) (citing

11  *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 873 (D.C. Cir. 2022); *Kemper v.*

12  *Deutsche Bank AG*, 911 F.3d 383, 395 (7th Cir. 2018); *United States v. Collins*, 966 F.2d

13  1214, 1219–20 (7th Cir. 1992)).   Applying that standard, the Court concluded that

14  Plaintiffs had not "ple[d] facts showing that Visa intended to further a trafficking

15  venture." *Id.* at 37.

16  The district court's decision in *Deutsche Bank* is instructive in this respect.  There,

17  the court considered allegations that several banks helped conceal Jeffrey Epstein's sex-

18  trafficking venture by "'structuring' cash withdrawals so that those withdrawals would

19  not appear suspicious," "delay[ing] filing suspicious activity reports," "willfully failing

20  to file suspicious activity reports," and "fail[ing] to implement oversight imposed by its

21  [risk committee]," among other things.  671 F. Supp. 3d at 405–06.  Yet still, the court

22  held that the plaintiffs had failed to plausibly allege conspiracy under the TVPRA.  While

23  "the defendants did indeed agree to provide banking services for Epstein and his affiliated

24  entities and that they knew, or recklessly disregarded, would assist his sex-trafficking

25  venture," such an "agreement is different from an actual agreement to participate in a sex-

26  trafficking venture." *Id.* at 412.

27

28

1    Here, the same rationale applies.  Even if Plaintiffs had some factual basis for
2    alleging that Visa provided bespoke support to MindGeek, tailored such support knowing
3    it would further MindGeek's trafficking venture, and derived a meaningful benefit from
4    that support (they do not), that still would not be enough.  What is missing is an intent to
5    further the *trafficking* venture.  As this Court recognized, "the very allegations that
6    suggest Visa was alerted to the trafficking problem also reflect that it attempted to
7    mitigate it." *Fleites* MTD Order at 37–38.  Regardless whether Visa desired and intended
8    to earn revenue through transactions on MindGeek, there are no allegations plausibly
9    establishing that Visa intended its conduct to facilitate *trafficking*.  And even if Visa were
10   "indifferent" to the lawfulness of MindGeek's business model (it is not), that would not
11   suffice. *Collins*, 966 F.2d at 1219–20.  There simply are no plausible allegations that Visa
12   *wanted* to further MindGeek's alleged trafficking venture.

13   ## III.    Plaintiffs Fail To Allege Common Law Conspiracy Against Visa

14   The Court previously dismissed Plaintiffs' common law conspiracy claims against
15   Visa principally on the ground that they had not adequately pled a predicate tort.  *See*
16   *Fleites* MTD Order at 39–45; *see also id.* at 39 ("Under a conspiracy theory of recovery,
17   liability depends on the actual commission of a tort.").  Plaintiffs have now abandoned
18   every predicate offered in the previous complaints (save for the UCL) and have offered
19   entirely *new* predicate torts—18 U.S.C. §§ 2252, 2255 (Count IV); 18 U.S.C. §§ 2252a,
20   2255 (Count V); public disclosure of private facts (Count VI); intrusion into private affairs
21   (Count VII); placing plaintiff in false light (Count VIII); and violation of the UCL (Count
22   X). *See* TAC ¶ 441.  Each of these predicate torts was alleged against MindGeek in the
23   prior complaints, but other than the UCL, none has ever been asserted as a basis for
24   common law civil conspiracy.  That alone is telling of the merit (or lack thereof) of
25   Plaintiffs' new theories.

26   The elements of civil conspiracy under California law are not meaningfully
27   different from those of common-law conspiracy as incorporated into the TVPRA.  Most

28

relevant here, a plaintiff must establish that the defendants "agreed to a common plan or design to commit a tortious act," had "actual knowledge that a tort is planned and concur[red] in the tortious scheme with knowledge of its unlawful purpose," and "inten[ded] to aid in its commission." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995) (citation and internal quotation marks omitted). "Mere association does not make a conspiracy. There must be evidence of some participation or interest in the commission of the offense." *Id.* at 1582 (citation and internal quotation marks omitted).

As described above in the context of the TVPRA, there are no allegations here that could plausibly establish that Visa (1) had actual knowledge of any unlawful scheme, (2) agreed to participate in the unlawful scheme, and/or (3) intended to further the unlawful scheme. *See supra* Section II(B). That analysis applies with even more force here. Under the TVPRA, it is unlawful for a defendant to conspire to benefit from participation in a *venture* engaged in sex trafficking. *See* 18 U.S.C. §§ 1591(a)(2), 1594(a). But there is no "venture" liability for any of the predicate torts Plaintiffs allege as the basis for common law conspiracy—each of them depends on MindGeek's particular treatment of the videos of Plaintiffs. *See* Order re MindGeek's Mot. to Dismiss at 33–38, Dkt. No. 608. Thus, even if Plaintiffs' allegations were sufficient to plausibly establish that Visa had actual knowledge of MindGeek's alleged trafficking *venture*, agreed to further that *venture*, and intended to further that *venture* (they are not), the allegations plainly do not plausibly establish that Visa had any such knowledge, agreement, or intent with respect to the *particular torts* alleged against MindGeek under Counts IV, V, VI, VII, and VIII.

With respect to the predicate tort of a violation of the UCL, the Court in the prior order correctly recognized the numerous issues with invoking the UCL as the basis for conspiracy liability against Visa in these circumstances. *See Fleites* MTD Order at 44–45. The Court cautioned that if Plaintiffs were to "amend [their] pleading to include a civil conspiracy claim based on MindGeek's violation of the UCL, the Court expects that

Plaintiff[s] will address all the issues identified above." *Id.* at 45. Plaintiffs did not do so: Their civil conspiracy allegations with respect to Visa are word-for-word identical to the prior round of complaints, except for (1) the identification of the predicate torts and (2) a single sentence asserting, in sum, that "Visa provided a de facto exception for MindGeek from [its] merchant obligations and rules." TAC ¶ 441. Plaintiffs' token amendments do nothing to address the issues raised by the Court in its prior order. And in any event, Plaintiffs' allegations of a UCL *conspiracy* involving Visa fail for all of the reasons outlined above—that is, the absence of plausible allegations of knowledge, agreement, and/or intent.

## IV.    Plaintiffs Fail To Allege A Claim Under the UCL

The Court previously dismissed Plaintiffs' claim against Visa under the UCL because Plaintiffs premised their claim solely on the underlying TVPRA conspiracy. *See Fleites* MTD Order at 46. Because Plaintiffs again have not plausibly alleged a TVPRA conspiracy involving Visa, their UCL claim again fails. *See Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (dismissing plaintiff's petition because plaintiff's UCL claim "hinge[d] upon whether a plaintiff can formulate a claim under the predicate law," and if "plaintiff cannot state a claim under the predicate law … [the UCL] claim also fails") (alteration in original) (citation omitted).

To the extent Plaintiffs intend to assert a UCL claim against Visa on any basis *other* than the underlying theory of conspiracy, that effort fails because Plaintiffs have not alleged any actionable conduct by Visa. "A defendant's liability [under the UCL] must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate section 17200. . . ." *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (citation omitted). Just as before, Plaintiffs' allegations under the UCL mention no specific acts by Visa and instead allege generally that "Defendants have engaged in unlawful, unfair, and fraudulent business acts and practices by participating in a venture engaged in trafficking that intentionally produced,

recruited, funded, disseminated, and monetized the dissemination of CSAM materials, sex abuse, trafficking content, and other nonconsensual content on its site." *Compare* TAC ¶ 422. General allegations that "lump[] together . . . multiple defendants in one broad allegation fail[] to satisfy [the] notice requirement of Rule 8(a)(2)." *Adobe Sys. Inc. v. Blue Source Grp.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) (citation omitted); *see also Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (complaint failed to state a claim where "all defendants are lumped together in a single, broad allegation"). And of course, Visa does not operate or control any websites at issue in this case, does not create or disseminate the content or features of any other website, and did not distribute or advertise content on any of MindGeek's websites. These allegations are directed at the MindGeek Defendants, not Visa, and the TAC contains no allegations of concrete actions that Visa took or failed to take that would rise to the level of an "unlawful, unfair or fraudulent *business act or practice*." Cal. Bus. & Prof. Code § 17200 (emphasis added); TAC ¶¶ 422–23.

## V.    The Complaints Should Be Dismissed With Prejudice As To Visa

For Fleites, this is her fourth complaint. All other Plaintiffs are represented by the same counsel as Fleites and have structured their respective complaints identically to that of Fleites. It is now clear that the defects in Plaintiffs' allegations against Visa "could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (affirming dismissal of appeal where amendment could not cure defect in pleadings). Dismissal should be with prejudice.

### CONCLUSION

For these reasons, the Court should dismiss all claims—Counts III, X, and XII—asserted against Visa, with prejudice.

Dated:  January 30, 2026                RESPECTFULLY SUBMITTED,

                                        */s/ Drew Tulumello*
                                        DREW TULUMELLO (#196484)
                                        drew.tulumello@weil.com
                                        MARK A. PERRY (#212532)
                                        mark.perry@weil.com
                                        WEIL, GOTSHAL & MANGES LLP
                                        2001 M Street NW, Suite 600
                                        Washington, DC 20036
                                        Tel: 202 682 7000
                                        Fax: 202 857 0940
                                        *Attorneys for Defendant Visa Inc.*


## CERTIFICATE OF COMPLIANCE

        The undersigned, counsel of record for Visa, certifies that this brief is within the thirty-five (35) page limit stipulated by the parties, ECF No. 632, Jan. 26, 2026.


Dated:  January 30, 2026                */s/ Drew Tulumello*
                                        DREW TULUMELLO