David G. Hille (*pro hac vice*)
dhille@whitecase.com
Kevin C. Adam (*pro hac vice*)
kevin.adam@whitecase.com
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY  10020-1095
Telephone:  (212) 819-8357
Facsimile:   (212) 354-8113

Russell J. Gould (SBN 313352)
russell.gould@whitecase.com
WHITE & CASE LLP
555 S. Flower Street, Suite 2700
Los Angeles, CA  90071-2433
Telephone:  (213) 620-7700
Facsimile:   (213) 452-2329

Attorneys for the CB Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| SERENA FLEITES,<br><br>                    Plaintiff,<br><br>          v.<br><br>MINDGEEK S.A.R.L., et al.,<br><br>                    Defendants. | Case No. 2:21-cv-4920-WLH-ADS<br><br>Hon. Wesley L. Hsu<br><br>**DEFENDANTS COLBECK CAPITAL MANAGEMENT, LLC; CB MEDIA VENTURES DD, LLC; CB AGENCY SERVICES, LLC; AND CB PARTICIPATIONS SPV, LLC'S:**<br><br>**(1)  NOTICE OF MOTION AND OMNIBUS MOTION TO DISMISS; AND**<br><br>**(2)  MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Concurrently filed with Declaration of David G. Hille and [Proposed] Order*<br><br>Hearing:      April 24, 2026<br>Time:          1:30 p.m.<br>Courtroom: 9B |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on April 24, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Wesley L. Hsu, United States District Court, Courtroom 9B, 350 W. First Street, Los Angeles, California 90012, Defendants Colbeck Capital Management, LLC; CB Media Ventures DD, LLC; CB Agency Services, LLC; and CB Participations SPV, LLC (collectively, "CB Defendants") will and hereby do move for an order, under Rules 8(a), 9(b), 12(b)(6), and 15(a)(2) of the Federal Rules of Civil Procedure, to dismiss with prejudice Plaintiffs' Third Amended Complaint (*Fleites*) and Amended Complaints (collectively the "Amended Complaints") against the CB Defendants in the following actions before the Court:

1. *Fleites v. Mindgeek S.A.R.L. et al.*, No. 2:21-cv-4920-WLH-ADS (C.D. Cal., Dec. 15, 2025), Dkt. Nos. 622 (redacted), 623-1 (unredacted under seal);

2. *K.A. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04786-WLH-ADS (C.D. Cal. Dec. 15, 2025), Dkt. Nos. 171 (redacted), 172-1 (unredacted under seal);

3. *N.L. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04788-WLH-ADS (C.D. Cal. Dec. 15, 2025), Dkt. Nos. 110 (redacted), 111-1 (unredacted under seal);

4. *L.T. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04791-WLH-ADS (C.D. Cal. Dec. 15, 2025), Dkt. Nos. 114 (redacted), 115-1 (unredacted under seal);

5. *T.C. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04795-WLH-ADS (C.D. Cal. Dec. 15, 2025), Dkt. Nos. 111 (redacted), 112-1 (unredacted under seal);

6. *X.N. v. MindGeek S.à.r.l., et al.,* No. 2:24-cv-04800-WLH-ADS (C.D. Cal. Dec. 15, 2025), Dkt. Nos. 106 (redacted), 107-1 (unredacted under seal);

7. *N.Y. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04801-WLH-ADS (C.D. Cal. Dec. 15, 2025), Dkt. Nos. 105 (redacted), 106-1 (unredacted under seal);

8. *J.C. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04971-WLH-ADS (C.D. Cal. Dec. 15, 2025), Dkt. Nos. 101 (redacted), 102-1 (unredacted under seal);

9. *W.L. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04977-WLH-ADS (C.D. Cal. Dec. 15, 2025), Dkt. Nos. 101 (redacted), 102-1 (unredacted under seal);

10. *C.S. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04992-WLH-ADS (C.D. Cal. Dec. 15, 2025), Dkt. Nos. 100 (redacted), 101-1 (unredacted under seal);

11. *S.O. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04998-WLH-ADS (C.D. Cal. Dec. 15, 2025), Dkt. Nos. 101 (redacted), 102-1 (unredacted under seal);

12. *L.S. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-05026-WLH-ADS (C.D. Cal. Dec. 15, 2025), Dkt. Nos. 102 (redacted), 103-1 (unredacted under seal);

13. *W.P. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-05185-WLH-ADS (C.D. Cal. Dec. 15, 2025), Dkt. Nos. 101 (redacted), 102-1 (unredacted under seal);

14. *A.K. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-05190-WLH-ADS (C.D. Cal. Dec. 15, 2025), Dkt. Nos. 101 (redacted), 102-1 (unredacted under seal); and

15. *J.L. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-07046-WLH-ADS (C.D. Cal. Dec. 15, 2025), Dkt. Nos. 110 (redacted), 111-1 (unredacted under seal).

The CB Defendants submit this Omnibus Notice of Motion and Motion pursuant to the Parties' Joint Stipulation to Request (A) Extension of Page Limit for Stipulating Defendants' Responses to Plaintiff's Third Amended Complaint in *Fleites* and (B) Limited Coordination for Purposes of Responding to Third Amended Complaint in *Fleites* and Amended Complaints in Additional Actions, as filed in *Fleites,* Dkt. No. 632.

The CB Defendants make this Motion on the grounds that Plaintiffs fail to state a claim for relief against the CB Defendants.  The CB Defendants request that the Court dismiss all claims against them in the Amended Complaints without leave to amend:  (1) Count II—violation of 18 U.S. Code Sections 1591 and 1595 of the Trafficking Victims Protection Reauthorization Act ("TVPRA"); (2) Count III—violation of 18 U.S. Code Sections 1594(c) and 1595 of the TVPRA; (3) Count X—violation of California's Unfair Competition Law ("UCL") under Section 17200 of the California Business and Professions Code; and (4) Count XII—civil conspiracy.

1    The CB Defendants base their Motion on this Notice of Motion and Motion;

2  the attached Memorandum of Points and Authorities; the accompanying Declaration

3  of David G. Hille; all pleadings and other papers filed in this action; and all other

4  matters of which the Court may take judicial notice.

5

6  Dated: January 30, 2026                    WHITE & CASE LLP

7

8                                             By: _____

9                                                  David G. Hille

10                                             Attorneys for Defendants
                                               COLBECK CAPITAL
11                                             MANAGEMENT, LLC; CB MEDIA
                                               VENTURES DD, LLC; CB AGENCY
12                                             SERVICES, LLC; and CB
                                               PARTICIPATIONS SPV, LLC
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt.*,
744 F.3d 595 (9th Cir. 2014) ................................................................... 11

*Ajzenman v. Off. of Comm'r of Baseball*,
487 F. Supp. 3d 861 (C.D. Cal. 2020) ..................................................... 25

*Al-Ahmed v. Twitter, Inc.*,
648 F. Supp. 3d 1140 (N.D. Cal. 2023) ................................................... 28

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................ 10

*Atkinson v. Meta Platforms, Inc.*,
No. 20-17489, 2021 WL 5447022 (9th Cir. Nov. 22, 2021) .................... 31

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................ 10

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ............................................................................ 27

*Carroll v. Lee*,
No. 2:08-cv-975-RSL, 2009 WL 2855727 (W.D. Wash. Aug. 31, 2009) .......... 29

*Compound Prop. Mgmt., LLC v. Build Realty, Inc.*,
462 F. Supp. 3d 839 (S.D. Ohio 2020) .............................................. 21, 23

*Cusano v. Klein*,
264 F.3d 936 (9th Cir. 2001) ................................................................... 29

*Doe #1 v. Red Roof Inns*,
21 F.4th 714 (11th Cir. 2021) .................................................................. 17

*Doe v. Deutsche Bank Aktiengesellschaft*,
671 F. Supp. 3d 387 (S.D.N.Y. 2023) ..................................................... 22

*Gifford v. Hornbrook Fire Prot. Dist.*,
No. 2:16-cv-596-JAM-DMC, 2021 WL 4168532 (E.D. Cal. Sept. 14, 2021) .... 26

*Kader v. S. California Med. Ctr., Inc.*,
    99 Cal. App. 5th 214 (2024)..................................................................28, 29

*Kearns v. Ford Motor*,
    567 F.3d 1120 (9th Cir. 2009).......................................................................12

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008).......................................................................21

*Krivo Indus. Supply v. Nat'l Distillers & Chem.*,
    483 F.2d 1098 (5th Cir. 1973).......................................................................14

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011)..................................................................................27

*Lauter v. Anoufrieva*,
    642 F. Supp. 2d 1060 (C.D. Cal. 2009)........................................................29

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003).......................................................................27

*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006).........................................................................13

*Michael R. v. Jeffrey B.*,
    158 Cal. App. 3d 1059 (1984).......................................................................26

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co., LTD*,
    2007 WL 2288329 (N.D. Cal. Aug. 9, 2007)...............................................25

*Morgan v. AT&T Wireless Servs., Inc.*,
    177 Cal.App.4th 1235 (2009).......................................................................28

*Morris v. Sun Pharma Glob.*,
    No. 2:20-cv-10441-PA-JPR, 2021 WL 3914235 (C.D. Cal. Apr. 22, 2021)......30

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009)...................................................................12, 14

*Myvett v. Litton Loan Servicing, LP*,
    No. 3:08-cv-05797-MMC, 2010 WL 761317 (N.D. Cal. Mar. 3, 2010) ...........30

*Quan v. Smithkline Beecham Corp.*,
    149 F. App'x 668 (9th Cir. 2005) .................................................................29

*River Colony Ests. Gen. P'ship v. Bayview Fin. Trading Grp., Inc.*,
    287 F. Supp. 2d 1213 (S.D. Cal. 2003) ................................................................. 25

*Roberts v. McAfee, Inc.*,
    660 F.3d 1156 (9th Cir. 2011) ............................................................................... 28

*RTC v. BVS Dev., Inc.*,
    42 F.3d 1206 (9th Cir. 1994) ................................................................................. 25

*S.J. v. Choice Hotels Int'l, Inc.*,
    473 F. Supp. 3d 147 (E.D.N.Y. 2020) ................................................................... 17

*Sanchez v. Elevance Health Co.*,
    No. 23-cv-5906-WLH, 2024 U.S. Dist. LEXIS 68387 (C.D. Cal. Apr. 12, 2024)
    (Hsu, J.) ................................................................................................................. 11

*Schneidereit v. Tr. of the Scott & Brian, Inc.*,
    No. 11-cv-6916, 2012 WL 12884908 (C.D. Cal. Apr. 27, 2012) ...................... 11

*United States ex rel. Lee v. Corinthian Colleges*,
    655 F.3d 984 (9th Cir. 2011) ................................................................................. 11

*Warner v. Tinder Inc.*,
    105 F. Supp. 3d 1083 (C.D. Cal. 2015) ................................................................ 13

*Wassmann v. S. Orange Cnty. Cmty. Coll. Dist.*,
    24 Cal. App. 4th 825 (2018) ................................................................................. 29

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) ................................................................ 27

*Z & Z Leasing, Inc. v. Graying Reel, Inc.*,
    873 F. Supp. 51 (E.D. Mich. 1995) ...................................................................... 14

**FEDERAL STATUTES**

18. U.S.C. § 1591 ............................................................................................................ 3

18 U.S.C. § 1595 ..................................................................................................... passim

18 U.S.C. § 2252 ......................................................................................................... 24

18 U.S.C. § 2255 ......................................................................................................... 24

1

# FEDERAL RULES

Fed. R. Civ. P. 8(a) ............................................................................... 2

Fed. R. Civ. P. 9(b) ..................................................................... 2, 12, 27

Fed. R. Civ. P. 12(b)(6) ................................................................... 2, 10

Fed. R. Civ. P. 15(a)(2)......................................................................... 2

# STATE STATUTES

Cal. Bus. & Prof. Code § 17200 ................................................... passim

Cal. Bus. & Prof. Code § 17204 ........................................................ 27

Cal. Bus. & Prof. Code § 17208 ........................................................ 28

Cal Bus. & Prof. Code § 17535 ......................................................... 27

Cal. Civ. Proc. Code § 474 ............................................................... 30

MEMORANDUM IN SUPPORT OF CB DEFENDANTS' MOTION
TO DISMISS THIRD AMENDED COMPLAINT

## I.    **PRELIMINARY STATEMENT**

In these fifteen actions, the Court dismissed the claims against the CB Defendants after carefully examining Plaintiffs' theories and allegations, finding that Plaintiffs' claims rested on conclusory, implausible, and contradictory allegations that were refuted by the loan agreements and due-diligence materials.  Am. Order re Colbeck & Redwood Defs.' Mot. Dismiss 2nd Am. Compl. ("Order") 49:18–22, *Fleites*, Dkt. No. 605.[1]  The Amended Complaints take the same allegations the Court already rejected and try to embellish them in ways that are even more contradictory, conclusory, and implausible.

Plaintiffs' theory and most allegations against the CB Defendants remain unchanged.  Plaintiffs seek to impose liability on the CB Defendants because they participated—with dozens of other institutional lenders—in loans to MindGeek.  The CB Defendants had no equity in MindGeek, and exited all loans in 2018, years before the events Plaintiffs cite as giving rise to widespread public scrutiny.  As the Court held, "Plaintiffs' theory [ ] risks eliminating any limiting principle": "finding conspiracy liability here would effectively expose to suit many other parties including MindGeek's other 124 lenders, its banks, landlord, payroll providers, server hosts, auditors, lawyers, or consultants."  Order 42:1–4.

The Amended Complaints plead no facts that would lead the Court to change its findings.  Instead, Plaintiffs double down on the core allegation—rejected by the Court—that ███████████████████████████████ provided the CB Defendants "control" over MindGeek.  In the hope of resuscitating this claim,

---

[1] In the Order, the Court granted the CB Defendants' Motion to Dismiss the Second Amended Complaint in the *Fleites* action without prejudice.  The remaining actions were coordinated for the limited purposes of the motions to dismiss, and the CB Defendants sought dismissal on grounds largely identical to those in *Fleites*.  *See* Order Granting Joint Stipulation to Req. Limited Coordination for Purposes of Responding to Compls. in Related Cases, *K.A. v. MindGeek S.à r.l.*, No. 2:24-cv-04786 (C.D. Cal. Oct. 9, 2024), Dkt. No. 54.  The Court dismissed the remaining actions without prejudice, incorporating by reference its holding in the Order.  Order re Omnibus Mots. to Dismiss 4:9-13, *K.A.* (Nov. 6, 2025), Dkt. No. 166.  Citations throughout the present Motion to the Court's reasoning and holdings are to the Order in the *Fleites* action, unless stated otherwise.

1    Plaintiffs simply transpose allegations previously attributed to the dismissed
2    Individual Defendants—often word for word—onto the CB Defendants. Plaintiffs
3    alleged previously that the ***Individual Defendants*** owned, dominated, controlled, and
4    directed MindGeek; created and implemented the unrestricted content model that
5    permitted CSAM on MindGeek websites; employed a sham corporate structure to
6    evade laws; and ███████████████████████████████████. In
7    the Amended Complaints, Plaintiffs allege that it was actually the ***CB Defendants***
8    that somehow did all of that—an about face this is not supported by any new facts.

9        Plaintiffs' other amendments follow a similar pattern—implausible
10   conclusions contradicted by Plaintiffs' other allegations, the documents before the
11   Court, and common sense. For example, the idea, unsupported by a single fact, that
12   the CB Defendants conspired with the Redwood Defendants and MindGeek to
13   ████████████████████████████████████████████
14   ███████████████████████████████████████, is
15   so implausible as to be frivolous. Similarly, Plaintiffs' refrain that the CB Defendants
16   "purchased" or "owned" MindGeek cannot transform the crystal-clear loan
17   agreements into some kind of stock purchase agreement. Plaintiffs' new allegations
18   are neither plausible nor credible.

19       Plaintiffs have now had multiple opportunities to plead claims against the CB
20   Defendants. Rather than amend to cure the deficiencies identified by the Court,
21   Plaintiffs use the same theories, repeat the same defective allegations, and compound
22   the defects by adding allegations that are nothing short of fantastical. There are
23   difficult and painful circumstances alleged in each of these cases. But Plaintiffs'
24   false and inflammatory allegations—that fail as a matter of law at the pleading
25   stage—confirm that the CB Defendants do not belong here. The Court should
26   dismiss all claims against the CB Defendants with prejudice.

27

28

## II.    **BACKGROUND**

### A.    **The Court Dismisses All Claims in the Second Amended Complaint Against the CB Defendants**

The Court's amended order granting the CB Defendants' and the Redwood Defendants' motions to dismiss details the Plaintiffs' allegations.  Order 2:7–12:28.[2]  In sum, each Plaintiff alleges that unnamed third parties were responsible for recording or uploading sexually explicit videos of Plaintiffs as minors and uploading those videos without each Plaintiff's consent to various websites owned by the MindGeek Entity Defendants.  *See* Order 2:9–5:2 (citing SAC); *see also* TAC ¶¶ 326–39;[3] K.A. Am. Compl. ¶¶ 326–34; N.L. Am. Compl. ¶¶ 326–37; L.T. Am. Compl. ¶¶ 326–36; T.C. Am. Compl. ¶¶ 326–35; X.N. Am. Compl. ¶¶ 326–35; N.Y. Am. Compl. ¶¶ 326–43; J.C. Am. Compl. ¶¶ 326–35; W.L. Am. Compl. ¶¶ 326–37; C.S. Am. Compl. ¶¶ 345–53; S.O. Am. Compl. ¶¶ 324–33; L.S. Am. Compl. ¶¶ 345–55; W.P. Am. Compl. ¶¶ 326–33; A.K. Am. Compl. ¶¶ 326–36; J.L. Am. Compl. ¶¶ 326–45.

Plaintiffs alleged that the CB Defendants were the lead lenders that assembled a syndicate of dozens of institutional lenders to provide loans to the MindGeek

---

[2]  In this Motion, the CB Defendants refer to the other parties as follows:  (i) defendants MG Freesites, Ltd., MindGeek USA Incorporated, MG Premium Ltd., MG GlobalEntertainment, Inc., and 9219-1568 Quebec, Inc. collectively as "MindGeek Entity Defendants" or "MindGeek"; (ii) former defendants Bernd Bergmair, Feras Antoon, and David Tassillo as "Individual Defendants"; (iii) the MindGeek Entity Defendants and the Individual Defendants collectively as "MindGeek Defendants"; (iv) defendant Visa, Inc. as "Visa"; (v) defendants Redwood Capital Management, LLC, Redwood Master Fund, LTD, Redwood Opportunity Master Fund, Ltd., Manuel 018, LLC, Ginogerum, LLC, and White-Hathaway Opportunity Fund, LLC collectively as "Redwood Defendants"; and (vi) ███████████████████████████████████████████ collectively as "MindGeek Borrowers".

[3]  As the Order relied on the pleadings at issue in the *Fleites* matter, references to the Second Amended Complaint (or "SAC") and Third Amended Complaint (or "TAC") throughout the present Motion are to those filed in the *Fleites* matter unless otherwise noted.  *Fleites*, ECF No. 385 (redacted SAC); 387-1 (unredacted SAC); ECF No. 622 (redacted TAC); ECF No. 623-1 (unredacted under seal TAC).  The allegations against the CB Defendants in the Amended Complaints in the other fourteen actions are substantially the same as in the TAC.

Borrowers in 2011 and 2013, which lender group Plaintiffs referred to as the "Colbeck Syndicate." Order 9:20–24 (citing SAC ¶ 245); *see also* SAC ¶¶ 245–84.

The CB Defendants' motion to dismiss explained that each claim asserted against them failed for several reasons and that Plaintiffs' allegations were also group-pled, conclusory, implausible, and contradicted by other allegations and the Loan Agreements. *See, e.g.*, *Fleites*, Dkt. No. 444-1 (CB Defs.' Mot. Dismiss SAC Mem.). In a forty-nine-page order, the Court granted the CB Defendants' motion to dismiss, with leave to amend. The Court, among other claim-specific findings, held:

- Plaintiffs' allegations as to the CB Defendants were conclusory, contradictory, and implausible (Order 23:25–24:1, 36:3–4, 38:17–19);

- At most, Plaintiffs allege an ordinary commercial lending relationship—the CB Defendants were passive lenders in a large, syndicated lending transaction (*id.* 39:9, 40:10–11, 41:6–9, 41:10–14);

- The CB Defendants' participation in loans to the MindGeek Borrowers concluded in 2018, before the 2019–2020 scrutiny of CSAM on Pornhub (*id.* 40:20–21);

- Plaintiffs had not adequately alleged that the CB Defendants knew MindGeek's business was rampant with CSAM or fostered a sex-trafficking enterprise—the allegations simply amounted to generalized assertions that sophisticated lenders should have known of red flags (*id.* 36:21–26);

- Plaintiffs failed to adequately allege that the CB Defendants took steps affirmatively designed to further trafficking (*id.* 40:11–14);

- The representations in the Loan Agreements that the MindGeek Borrowers complied with U.S. law on CSAM, and covenants that required MindGeek's websites to not post CSAM and to ensure the MindGeek Borrowers maintained sufficient compliance procedures, policies, staff, and screening, along with audit reports that showed MindGeek had best-in-

1   class compliance procedures, are inconsistent with an agreement to traffic

2   in CSAM (*id.* 38:18–23; *see also Fleites*, Dkt. No. 444-3 ("2011 Loan

3   Agreement") & Dkt. No. 444-4 ("2013 Loan Agreement")); and

4   • It is implausible that dozens of sophisticated financial institutions, as

5   lenders with only fixed-interest returns and no equity stake, conspired to

6   encourage CSAM despite being incentivized to avoid legal risk that could

7   imperil their loans (Order 38:28–39:8).

8   **B.**   **Plaintiffs' Amended Complaints Retain the Same Allegations**

9   **Against the CB Defendants and Add a Handful of New**

10   **Contradictory and Conclusory Amendments**

11   Plaintiffs filed the Amended Complaints in each action on December 15, 2025.

12   In each case, the Amended Complaints assert four claims against the CB Defendants

13   that were also asserted in the prior complaints. *See* TAC, Counts II, III, X, XII.[4] The

14   Amended Complaints no longer assert a violation of California's Fair Advertising

15   Law, or a claim for intentional infliction of emotional distress.

16   ***Repeat allegations.***  Plaintiffs' allegations remain largely the same.  Plaintiffs

17   do not allege that the CB Defendants had any knowledge of or contact with them, the

18   persons who recorded any videos, or the persons who uploaded or downloaded

19   videos.  Nor do Plaintiffs allege that the CB Defendants had any involvement with

20   MindGeek's alleged review of videos or decisions to remove them from MindGeek's

21   websites.  Plaintiffs again base the claims on the CB Defendants providing and

22

23

---

24   [4] In connection with Plaintiffs' Omnibus Opposition to the Motions to Dismiss, all Plaintiffs were given access to the materials cited and produced in connection with

25   the *Fleites* motion to dismiss briefing.  *See K.A.*, Dkt. No. 96-1 at 3 (Dec. 12, 2024) (Pls.' Omnibus Opp.); *Fleites*, Dkt. No. 490 at 8:27–9:5 (Dec. 2, 2024) (Amended

26   Stipulated Protective Order) (allowing for application of *Fleites* materials to all actions).  As Plaintiffs incorporated by reference all the "arguments and evidence" in

27   the *Fleites* action and cited Plaintiff's opposition in *Fleites* throughout their omnibus opposition (*K.A.*, Dkt. No. 96-1), the CB Defendants compare the allegations in the

28   SAC from *Fleites* with the *Fleites* TAC, one of the Amended Complaints at issue in this Motion.

1   arranging for rounds of loans to the MindGeek Borrowers in 2011 and 2013.  TAC
2   ¶¶ 227–30, 252.

3        Plaintiffs still speculate that the CB Defendants[5] knew from due diligence and
4   involvement with the company that CSAM was on MindGeek's platform and that
5   MindGeek intentionally lacked meaningful moderation.  Order 10:1–7 (citing SAC
6   ¶¶ 246, 261, 265, 267); TAC ¶¶ 226, 245, 247, 249.  Plaintiffs also conclude that the
7   CB Defendants had access to information about MindGeek operations, including
8   through periodic reports on issues and risks; monitored public reports about CSAM
9   on MindGeek's website; and knew about MindGeek's alleged unrestricted content
10  business model and plan to capitalize and monetize CSAM.  Order 10:7–18 (citing
11  SAC ¶¶ 267–68, 271–73); TAC ¶¶ 230, 233, 245, 254.  The Amended Complaints
12  continue to allege that the CB Defendants participated in high-interest loans to
13  finance MindGeek and chose to profit from MindGeek's monetization of CSAM.
14  Order 10:18–24 (citing SAC ¶¶ 246, 251); TAC ¶¶ 228, 249.  And Plaintiffs continue
15  to allege that the two Loan Agreements—secured by the company's assets and
16  containing "draconian" covenants and rights to review and approve certain changes
17  in the company's management, operations, and economics—resulted in the CB
18  Defendants, along with dozens of other lenders, effectively owning MindGeek,
19  having financial control over the company, and the ability to control all aspects of
20  the business.  Order 10:7–18 (citing SAC ¶¶ 267–68, 271–73) and 11:1–5 (citing
21  SAC ¶¶ 251, 259); TAC ¶¶ 221–22, 228–29, 234, 252.  Plaintiffs still admit that the
22  issue of CSAM on MindGeek's websites emerged significantly after the CB
23  Defendants' exit in 2018, and PayPal terminated its relationship with MindGeek in
24  2019.  *See* SAC ¶¶ 110–11, TAC ¶¶ 169, 182.

25       All of these allegations have already been reviewed by the Court and found
26  inadequate to state a claim against the CB Defendants.

27

---

28  [5] The Amended Complaints still fail to distinguish between the CB Defendants and instead lumps them together as "Colbeck."  TAC ¶ 17.

1    *"New" Allegations.*  Plaintiffs assert in the Amended Complaints that the Loan
2    Agreements were not typical of a lender-borrower relationship.  TAC ¶¶ 222, 236.
3    Plaintiffs also assert a handful of new contradictory and conclusory allegations.

4        Plaintiffs' first set of amendments simply apply to the CB Defendants, often
5    verbatim, allegations previously attributed to the now-dismissed Individual
6    Defendants.

7    •  In the *SAC*, Plaintiffs alleged that the *Individual Defendants* ("the three
8        owners") owned, dominated, controlled, ███████████████████
9        ██████████████████████████████████████████
10       ███████████████.  SAC ¶ 2, 14–17, 21–22, 149, 157.  While the *TAC*
11       continues to allege that the *Individual Defendants* directed "all important
12       undertakings" of MindGeek (TAC ¶ 178), Plaintiffs also inconsistently
13       allege that the *CB Defendants* (and the Redwood Defendants) had "de facto
14       ownership," ████████████████████████████████
15       █████████████████████.  TAC ¶¶ 228–29, 234, 252, 253,
16       255; *see also id.* ¶ 227 (calling "loans" a "sale").

17   •  In the *SAC*, Plaintiffs alleged that the *Individual Defendants*, "[a]s with all
18       important   undertakings,"   █████████████████████████
19       █████████████.  SAC ¶ 205.  In the *TAC*, Plaintiffs allege that the *CB*
20       *Defendants* ████████████████████████████████████
21       ██████.  TAC ¶ 233.

22   •  In the *SAC*, Plaintiffs alleged that the *Individual Defendants* implemented,
23       directed, and agreed to use the unrestricted content model that permitted
24       CSAM on MindGeek websites.  SAC ¶¶ 6, 149–51.  In the *TAC*, Plaintiffs
25       allege that the *CB Defendants* directed, implemented, and were the
26       "architect[s]" of MindGeek's business plan as part of an alleged
27       "investment thesis" that relied on "an unrestricted content model which
28       solicited and utilized all content."  TAC ¶¶ 7, 223–24, 240, 246, 248.

- 7 -

- In the **SAC**, Plaintiffs alleged that the **Individual Defendants** decided to employ a sham corporate structure to evade pornography laws. SAC ¶ 149. In the **TAC**, Plaintiffs allege that the **CB Defendants** were responsible for this alleged corporate structure plan. TAC ¶¶ 235, 248.

- In the **SAC**, Plaintiffs alleged that the **Individual Defendants** "worked aggressively to misrepresent and conceal the truth" about MindGeek allegedly intentionally profiting from CSAM. SAC ¶¶ 149, 198; *see also, e.g.*, *id.* § II.C.1(iii). In the **TAC**, Plaintiffs allege that the **CB Defendants** and Redwood Defendants . TAC ¶¶ 241, 251.

- In the **SAC,** Plaintiffs alleged that the **Individual Defendants**

. SAC ¶¶ 234–37. In the **TAC,** Plaintiffs claim that it was the **CB Defendants** that

TAC ¶ 255.

Nowhere do the Amended Complaints explain how or why the CB Defendants came to occupy all of the roles of the now permanently dismissed Individual Defendants; i.e., the **actual** owners. And none of these allegations include any new **facts** relating to the CB Defendants.

Plaintiffs' next set of amendments similarly cannot be reconciled with other previous or current allegations.

- In the **SAC**, Plaintiffs alleged that the CB Defendants "advised and assisted" MindGeek. SAC ¶ 245. In the **TAC**, Plaintiffs now allege that the CB Defendants "devised, directed, and funded the plan to transform

1    MindGeek" with no new supporting facts.  TAC ¶ 221; *see also id.* ¶¶ 222,

2    227.

3    •  In the *SAC*, Plaintiffs alleged that the CB Defendants had ██████████

4    ████████████████████████████████████████████████████████████

5    ████████████  SAC ¶¶ 274, 494.  In the *TAC*, Plaintiffs allege that ██████

6    ████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████

8    ████████████████████████████.  TAC ¶ 232.

9    •  In the *SAC*, Plaintiffs alleged that Fabian Thylmann owned MindGeek's

10    predecessor entities and retained his financial interests in the business after

11    their initial rebranding and sale.  SAC at 1 n.1; *id.* ¶¶ 115, 252.  Plaintiffs

12    also alleged in the *SAC* that Thylmann sought out the CB Defendants to

13    step in as a lender in 2011.  SAC ¶ 250.  In the *TAC*, however, Plaintiffs

14    allege that ██████████████████████████████████████████████████

15    ████████████████████████████████████████.  TAC ¶ 231; *see*

16    *also id.* ¶¶ 231 and 237 (alleging irrelevantly and erroneously that the CB

17    Defendants ████████████████████████████████████████████████).

18    Besides repeating the same allegations and contradictory pleading, there are

19    few other amendments of substance in the Amended Complaints.

20    •  Plaintiffs conclude that the CB Defendants knew from the outset and

21    throughout the loan periods that MindGeek Borrowers ██████████████

22    ████████████████████████████████████████.  TAC ¶¶ 222, 228,

23    236.  There are no facts alleged to support this allegation.

24    •  The Redwood Defendants attached to their motion to dismiss the prior

25    complaints a 2013 information memorandum prepared and distributed by

26    MindGeek's auditor, Raymond Chabbot Grant Thornton (Grant Thornton).

27    *See Fleites*, Dkt. No. 450-2 ("Grant Thornton Memorandum").  That

28    memorandum stated, among other aspects of due diligence, that MindGeek

had in place "best-in-class" compliance procedures and reviewed all videos for unlawful conduct.  Order 36:18–20; Grant Thornton Mem. at 10.  In the *TAC*, Plaintiffs now allege, again with no supporting facts, that ███ ███████████████████████████████████████████████████████ ██████████████████████████ (TAC ¶¶ 242–44, 247, 251, 263, 265).

As explained below, these amendments do not satisfy Plaintiffs' pleading burden or overcome the Court's Order.

## III.  THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS AGAINST THE CB DEFENDANTS AGAIN—THIS TIME WITH PREJUDICE

Plaintiffs still fail to adequately plead sufficient allegations of fact, which must be non-speculative and more than labels and conclusions, to state a plausible claim against the CB Defendants under Rule 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 555 (2007).  The Court should dismiss the claims with prejudice.

### A.  Plaintiffs' Amendments Do Not Cure the Defects in the Claims Against the CB Defendants

As explained above, the Amended Complaints simply rehash what the Court already found insufficient or add contradictory, conclusory, or irrelevant allegations. The amendments do not rescue the claims against the CB Defendants.

*First*, the Court already considered and found insufficient most of the allegations Plaintiffs rely on.  *See supra* § II.A.; Order 49:18–22.

*Second*, the changes in the Amended Complaints contradict Plaintiffs' previous or current allegations.  *See supra* § II.B.  The Court already held that Plaintiffs cannot rely on inconsistent allegations to support their claims.  In the Order, the Court held that Plaintiffs could not adequately allege that the CB Defendants and Redwood Defendants owned, directed, or controlled MindGeek because that "would

1    contradict Plaintiff's own pleadings elsewhere in her SAC that impute that kind of

2    control to the Individual Defendants."  Order 23:27–24:4 (quoting SAC ¶ 149).

3          Contradictions with previous versions of complaints suffer the same fate.  A

4    plaintiff may not "contradict[] the allegations in [a prior] complaint."  *United States*

5    *ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (citing *Reddy*

6    *v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990) ("the amended complaint may

7    only allege other facts consistent with the challenged pleading" (quotations

8    omitted))); *see also Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt.*,

9    744 F.3d 595, 600 (9th Cir. 2014) ("A party cannot amend pleadings to directly

10   contradict an earlier assertion made in the same proceeding." (quotations omitted)).

11   Courts also consider plaintiffs' previous allegations "in determining the ***plausibility***

12   of their allegations" in an amended pleading.  *Schneidereit v. Tr. of the Scott & Brian,*

13   *Inc.*, No. 11-cv-6916, 2012 WL 12884908, at *1 n.5 (C.D. Cal. Apr. 27, 2012)

14   (emphasis added); *see also Sanchez v. Elevance Health Co.*, No. 23-cv-5906-WLH,

15   2024 U.S. Dist. LEXIS 68387, at *12–13 (C.D. Cal. Apr. 12, 2024) (Hsu, J.)

16   (dismissing claims because allegations in third amended complaint were rendered

17   implausible by contradictory allegations in first amended complaint).  Plaintiffs'

18   amendments that simply swap the CB Defendants for the Individual Defendants or

19   contradict other allegations are improper and implausible.  *See supra* § II.B.

20         ***Third***, the Amended Complaints' limited remaining new amendments—that

21   the CB Defendants ███████████████████████████████████████████

22   ████████████,  or  that  ██████████████████████████████████████

23   ███████████,  which  was  purportedly  fraudulent—are  conclusory  and  lack

24   supporting factual allegations.  *See supra* § II.B.  "[F]or a complaint to survive a

25   motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences

26   from that content, must be plausibly suggestive of a claim entitling the plaintiff to

27   relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft*,

28   556 U.S. at 678).

Plaintiffs' allegations about the Grant Thornton Memorandum fail for additional reasons. Plaintiffs alleged in the prior complaints and allege in the Amended Complaints that the CB Defendants and Redwood Defendants knew from due diligence that MindGeek lacked adequate controls and had CSAM risks. *See, e.g.*, SAC ¶¶ 261–67; Order 10:1–7; TAC ¶¶ 226, 245, 247, 249. Faced with the Grant Thornton Memorandum, which negates this allegation, Plaintiffs now allege ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████. TAC ¶¶ 242, 247. This outlandish allegation is not supported by any alleged facts, and certainly none that meets the particularity required of a fraud allegation under Rule 9(b). *See Kearns v. Ford Motor*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("Any averments [of fraud] which do not meet [the particularity] standard should be 'disregarded' [ ] from the claim for failure to satisfy Rule 9(b)." (quoting *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1105 (9th Cir. 2003))).

███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████ The memorandum says on its face that ████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████ Plaintiffs' theory requires the Court to conclude that Grant Thornton—a highly respected audit and advisory firm ████ ████████████████████████████████████████████████ Moreover, Plaintiffs' fraud theory requires them to plead with particularity how ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████ *Kearns*, 567 F.3d at 1126 (ruling plaintiff "failed to plead his averments of fraud with particularity" because,

among other reasons, plaintiff failed to plead reliance with particularity).  Amended allegations like this make Plaintiffs' claims weaker, not stronger.

*Fourth*, Plaintiffs' renewed attempt to convince the Court that the Loan Agreements resulted in the lenders owning or controlling the MindGeek Borrowers fails.  *Supra* § II.B.  That contention is refuted by the Loan Agreements themselves which provide for no such ownership or control.  *See generally* Loan Agreements;[6] *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1089 (C.D. Cal. 2015) (the court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint" (citations omitted)).  At most, the Loan Agreements contain standard provisions ███████████████████████████ ██████████████████████████.  *See, e.g.*, TAC ¶¶ 213, 217.  The Court has already rejected that this is equivalent to ownership or control.  In the context of Plaintiffs' claim for beneficiary liability under the TVPRA, the Court held that alleging the Loan Agreements' terms were onerous and amounted to effective control does not adequately allege actual exercise of control.  Order 23:16–23; *see also id.* 23:23–27 (finding allegations that CB Defendants and Redwood Defendants worked closely with and advised MindGeek conclusory and insufficient to infer control).

Plaintiffs' allegations about a purported ███████████████ do not change this result.  TAC ¶ 232.  Plaintiffs already urged the Court to consider the effect of this alleged ████████████ in the context of the SAC.  *See* SAC ¶¶ 274, 494; *Fleites*, Dkt. No. 480-1 (Pl.'s Omnibus MTD Opp'n.) at 22:21–22.  In addition to the Court having already considered the ████████████████, Plaintiffs' allegations seek to ██████████████████████████████████████████████

---

[6] Plaintiffs' allegation regarding the CB Defendants' purported "ownership" of MindGeek turns on the rights provided to the CB Defendants under the Loan Agreements, and the Loan Agreements are thus incorporated by reference.  *See* TAC ¶¶ 228–30, 257; *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.").

1 ██████████████████████████████████████████████████

2 ███████████—a claim that contradicts Plaintiffs' prior allegations and which is made

3 without any description of ***how*** █████████████████████████████

4 ██████. *Supra* § II.B (citing SAC ¶¶ 274, 494; TAC ¶ 232). Even within only the

5 Amended Complaints, Plaintiffs allege inconsistently, on the one hand, that the Loan

6 Agreements provide control rights; and, on the other hand, that the ████████

7 █████████ does so. TAC ¶¶ 232, 357, 361. If the Loan Agreements gave the CB

8 Defendants the level of control Plaintiffs allege, there would have been no need for

9 ████████████████████████████████████. Plaintiffs also

10 provide no supporting fact allegation for the speculation surrounding the ████████

11 ██████. *Contra Moss*, 572 F.3d at 969. In short, the allegation that ████████

12 ████████████████ also makes no sense and is implausible.

13      Of course, all of Plaintiffs' allegations must be viewed in light of the

14 presumption that lenders are not liable for alleged misconduct of the borrower. *Krivo*

15 *Indus. Supply v. Nat'l Distillers & Chem.*, 483 F.2d 1098, 1104 (5th Cir. 1973) ("The

16 general rule is that the mere loan of money from one corporation to another does not

17 automatically make the lender liable for the acts and omissions of the borrower. The

18 logic of this rule is apparent, for otherwise no lender would be willing to extend

19 credit."). Indeed, "[s]ecured lenders frequently have some routine involvement in

20 the financial affairs of their debtors in order to insure that their interests are being

21 adequately protected," but imposing liability on this basis would be punishing the

22 lender for "engaging in its normal course of business." *Z & Z Leasing, Inc. v.*

23 *Graying Reel, Inc.*, 873 F. Supp. 51, 55 (E.D. Mich. 1995) (refusing to impose

24 liability on lending bank). Even Plaintiffs recognize this in the Amended Complaints

25 by stating that the CB Defendants, as lenders, on paper, are "insulated from

26 responsibility for the Company's [alleged] illegal business." TAC ¶ 228.

27      Plaintiffs' Amended Complaints ultimately do not adequately allege that the

28 CB Defendants "controlled" the MindGeek Entities. Plaintiffs allege extraordinary

1    and incoherent facts about the effect of the Loan Agreements and other documents

2    that are implausible.  *See* § II.B *supra*.  But even if Plaintiffs were able to coherently

3    allege some form of control of MindGeek by the CB Defendants—which Plaintiffs

4    have not done—that is not the test for liability under the TVPRA or the state law

5    claims that Plaintiffs have asserted.  As described below, Plaintiffs must plausibly

6    allege each element of their claims as to the CB Defendants, which they have not

7    done.  Thus, the Amended Complaints, overall, fail to meet the requisite pleading

8    standard and, as shown in the next section, do not alter the Court's holdings that each

9    claim against the CB Defendants fails.

10    **B.**    **Plaintiffs' TVPRA Claims Against the CB Defendants Remain**

11           **Inadequately Pled**

12        **1.**    **No CB Defendant Participated in a Venture or Knew that the**

13               **Purported Venture Was Engaged in Sex Trafficking for a**

14               **TVPRA Beneficiary Liability Claim**

15        Section 1595(a)(2) of the TVPRA requires the plaintiff to plead the defendant

16    "knowingly benefit[ted] . . . from participation in a venture which that person knew

17    or should have known was engaged in sex trafficking."  *See* Order 20:21–24.  The

18    Court dismissed Plaintiffs' beneficiary-liability claim against the CB Defendants for

19    failing to adequately allege that the CB Defendants either (1) participated in a venture

20    with a sex trafficker or (2) had sufficient knowledge that the purported venture was

21    engaged in sex trafficking.  *Id.* 20:24–21:5.  The Amended Complaints do not remedy

22    these defects, each of which is independently fatal and requires dismissal.  *See* TAC

23    ¶¶ 355–64.[7]

24        ***No participation in a venture with a sex trafficker.***  As stated by the Court,

25    "in the absence of direct association with traffickers, Plaintiff[s] must allege at least

26

27    _____

28    [7] As the Court held in the Order, Plaintiffs cite to Section 1591 generally, which includes direct liability under Section 1591(a)(1), but Plaintiffs have failed to allege that the CB Defendants are direct perpetrators of Plaintiffs' trafficking.  Order 20 n.5.

- 15 -

a showing of a continuous business relationship between the trafficker and Defendants such that it would appear that the trafficker and Defendants have established a pattern of conduct or could be said to have a tacit agreement."  Order 21:8–21 (internal citations and quotations omitted).  In *Fleites*, the Court already held that the only traffickers are Plaintiff's ex-boyfriend and the unidentified older man that uploaded content to Pornhub.  *Id.* at 20:18–27.  The allegations in the remaining cases as to the actual traffickers were the same; *i.e.*, they did not include any of the CB Defendants or MindGeek Entities.  In the Amended Complaints, "Plaintiff[s] [still] ha[ve] failed to allege that the Colbeck and Redwood Defendants had any relationship, let alone a continuous business one, with Plaintiff's traffickers."  Order 21:22–24.  "Colbeck and Redwood Defendants 'therefore cannot bear beneficiary liability for knowingly participating in the sex trafficking venture that harmed Plaintiff.'"  *Id.* 22:1–3 (citing *Fleites*, Dkt. No. 166 ("FAC Visa Order") at 21).

Plaintiffs had tried to avoid this result by arguing that beneficiary liability may exist based on a relationship with another beneficiary.  *Id.* 22:22–28.  As the Court held, however, all three cases Plaintiff cited involved "***franchisee*** hotels and their ***franchisors***, a relationship that is markedly different than a company and its financiers."  *Id.* (emphasis in original).  As the Court made clear, each of those franchisee-franchisor cases contained a plausible allegation of the franchisor "actually exercising control over the policies and operational decisions" of the franchisees.  *Id.* 23:21–23; *see also id.* at 23:10–15 (citing allegations in *Doe #1 v. Red Roof Inns*, 21 F.4th 714, 720–21 (11th Cir. 2021) that the franchisors "controlled the policies" of franchisees, were responsible for the "training of managers and employees" and should have had direct knowledge of the trafficking activity due to "sen[ding] inspectors to examine the hotel" at issue).  Plaintiffs cannot meet this standard by alleging in conclusory fashion that the CB Defendants exercised "systemic control" over the MindGeek Borrowers (*id.* 23:3–4)—an allegation the Court has already rejected and that contradicts both the Loan Agreements and

Plaintiffs' prior allegation that the Individual Defendants had such control. *See supra* §§ II.A–B. It still remains the case that, as reflected in the terms of the 2011 and 2013 Loan Agreements, the CB Defendants only engaged in conduct typical of their role as a lender. The Amended Complaints thus do not plausibly allege any knowing participation in a trafficking venture.

*No knowledge of Plaintiffs' trafficking.* Plaintiffs also have not fixed, and cannot fix, another major defect in the beneficiary-liability claim against the CB Defendants. To establish a beneficiary-liability claim, Plaintiffs must show that the CB Defendants had "actual or constructive knowledge" of the specific trafficking *of each Plaintiff*. *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) ("Knowledge or willful blindness of [ ] general sex trafficking . . . does not satisfy the mens rea requirement[].")。 As the Court found in the Order, "[g]iven the lack of any connection to Plaintiff's video or Plaintiff's trafficker, Plaintiff's claim that the Colbeck and Redwood Defendants had knowledge or constructive knowledge of Plaintiff's trafficking venture also fails." Order 24:26–28 n.6 (citing FAC Visa Order 21–22). The Amended Complaints still do not allege the CB Defendants' knowledge of *any* specific CSAM regarding any Plaintiff (or a conspiracy regarding the same). That is, they do not show that the CB Defendants "had any knowledge—constructive or otherwise—of Plaintiff[s], [their] videos, or [their] age in the videos." FAC Visa Order 21–22. Plaintiffs cannot plausibly allege those facts. For all these reasons, Plaintiffs fail to plead a TVPRA beneficiary-liability claim against the CB Defendants.

### 2. The Amended Complaints Fail to Overcome the Court's Holding that Plaintiffs Failed to Allege the Three Elements of a TVPRA Conspiracy Against the CB Defendants

After finding that the Abolish Trafficking Reauthorization Act of 2022 is a clarifying amendment that applies to conduct before 2023, the Court dismissed

1    Plaintiffs' TVPRA conspiracy claim against the CB Defendants because the
2    allegations failed to plead the elements of conspiracy. *See* Order 34:7–8, 34:9–42:19.

3        "The civil remedy provision of the TVPRA permits suit against any person
4    who 'conspires to benefit' from participation in a sex trafficking venture. 18 U.S.C.
5    § 1595(a)." *Id.* 34:12–14. "[C]onspiracy liability requires: (1) an agreement to do
6    an unlawful act or a lawful act in an unlawful manner; (2) an overt act in furtherance
7    of the agreement by someone participating in it; and (3) injury caused by the act."
8    *Id.* 34:19–23 (citing *Halberstam v. Welch*, 705 F.2d 472, 487 (D.C. Cir. 1983)). The
9    first prong requires Plaintiffs to plead three separate elements: (i) knowledge of the
10   wrongful activity, (ii) agreement to join in the wrongful activity, and (iii) intent to
11   aid in the wrongful activity. *Id.* at 34:23–35:5 (citing *Ajzenman v. Off. of Comm'r of
12   Baseball*, 487 F. Supp. 3d 861, 867 (C.D. Cal. 2020) (citing *Craigslist Inc. v. 3Taps
13   Inc.*, 942 F. Supp. 2d 962, 981 (N.D. Cal. 2013))). As to these three sub-elements,
14   the Court held that "Plaintiff has not plausibly alleged that Colbeck or Redwood
15   possessed the requisite knowledge, entered into an agreement with MindGeek, or
16   acted with intent to further a sex trafficking venture." Order 42:10–12.

17       The Amended Complaints still do not adequately allege any of the elements to
18   show conspiracy liability under the TVPRA.

19       ***No knowledge of the wrongful activity.*** A conspiracy claim under the TVPRA
20   "requires actual knowledge of the venture's unlawful purpose." Order 35:12–13.
21   Constructive knowledge is insufficient. *Id.* 35:9–11; *see id.* 35:14–15 (quoting
22   *Halberstam*, 705 F.2d at 481), 35:15–23 (quoting *Doe v. Deutsche Bank
23   Aktiengesellschaft*, 671 F. Supp. 3d 387, 411 (S.D.N.Y. 2023); *United Steelworkers
24   of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989)). Plaintiffs again
25   have not adequately alleged that the CB Defendants knew that the MindGeek
26   Borrowers intended to financially benefit from CSAM.

27       The Court already found conclusory and insufficient Plaintiffs' allegations that
28   the CB Defendants had knowledge of the MindGeek Borrowers' intent to benefit

- 18 -

1  from CSAM from due diligence, purported intimate involvement with the company

2  and its operations, periodic reports from the company, monitoring websites and news,

3  and public reports.  *See* Order 10:1–14 (citing SAC ¶¶ 246, 261, 265, 267–68, 271–

4  73), 35:24–36:21 (citations omitted).  The Amended Complaints repeat the same

5  allegations.  *See, e.g.*, TAC ¶¶ 226, 230, 233–34, 245–48, 250, 253–55.  Further,

6  Plaintiffs  still  do  not  adequately  plead  that  any  reports  of  illegality  and

7  communications received by the CB Defendants from MindGeek's management

8  showed that MindGeek intentionally profited from CSAM.  TAC ¶ 226    In fact,

9  Plaintiffs do not identify a single specific report or communication that might have

10  conferred knowledge of the alleged conspiracy on CB Defendants.  The Court already

11  found such "generalized assertions that sophisticated lenders 'should have known'"

12  of MindGeek's profiting from CSAM based on such generalized reporting to be

13  insufficient to show "actual knowledge" for purposes of a TVPRA conspiracy.  Order

14  36:21–28.

15         The terms of the Loan Agreements, in any event, ███████████████████

16  ████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████████

18  ███████.  *See, e.g.*, 2011 Loan Agreement §§ 7.01(a)(viii), 7.01(a)(ix), 7.01(a)(xiii),

19  7.01(a)(xvi),  7.01(a)(xxii),  7.01(a)(xix),  7.01(a)(xxii);  2013  Loan  Agreement  §§

20  7.01(a)(viii), 7.01(a)(ix), 7.01(a)(xiii), 7.01(a)(xvi), 7.01(a)(xix), 7.01(a)(xxii).  It is

21  inconceivable that dozens of independent lenders ████████████████████████

22  ████████████████████████████.  And as explained above, the due-

23  diligence materials before the Court actually show the opposite:  MindGeek had in

24  place "best-in-class" compliance procedures and reviewed all videos for unlawful

25  conduct.  *See* Order 36:18–20; Grant Thornton Mem. at 10.  Plaintiffs' remaining

26  allegations  similarly  do  not  plead  knowledge  because  they  are  conclusory,

27  contradictory, and implausible.  *Supra* § II.B.

28

As the Court noted, the CB Defendants' participation in loans to the MindGeek
Borrowers "terminated in 2018, years before the 2019–2020 events, such as PayPal's
withdrawal and the New York Times exposé, that Plaintiff cites as evidence of
widespread notice."   Order 36:4–7; *see* TAC ¶ 221 (admitting CB Defendants'
participation in loans ceased in 2018), ¶¶ 278–79 (citing "growing public awareness"
in 2019–2020).  The Amended Complaints still "do[] not allege facts showing that
Colbeck or Redwood knew MindGeek's business was rampant with CSAM content"
or "indicating that Defendants were presented with reports or information during
their lending relationship demonstrating that MindGeek's venture itself fostered a
sex trafficking enterprise." *Id.* 36:21–25.  Like the earlier complaints, the Amended
Complaints, stripped of their deficient allegations, "amount to generalized assertions
that sophisticated lenders 'should have known' of red flags," which "falls short of
the actual awareness of the unlawful objective required for the knowledge prong of
conspiracy liability." *Id.* 36:25–28.   The Amended Complaints do not fulfill
Plaintiffs' burden to plead that the CB Defendants knew that the MindGeek
Borrowers intended to financially benefit from CSAM.

**No agreement to join the wrongful activity.**  Even if the Amended Complaints
had adequately alleged knowledge, they do not establish that the CB Defendants
*agreed* to perpetuate CSAM on MindGeek's websites to profit from it.  "Plaintiff [ ]
must allege not merely that Colbeck and Redwood loaned money to MindGeek, but
that they agreed to join in MindGeek's trafficking venture."  Order 38:9–10.

The only agreements identified in the Amended Complaints are the Loan
Agreements and ███████████████, both of which were raised when the Court
dismissed the prior complaints.  With respect to Plaintiffs' allegations about the Loan
Agreements' terms, the Court found that they "do not plausibly establish an
agreement to participate in sex trafficking." *Id.* 38:11–18.  To the contrary, the Loan
Agreements' representations and covenants, along with the due-diligence materials,
"are fundamentally inconsistent with an alleged conspiratorial 'meeting of the minds'

to traffic in CSAM." Order 38:22–24; *see also Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 864–65 (S.D. Ohio 2020) (dismissing claims against lenders; finding "allegations that a lending company engaged in due diligence with regard to its lending activities cannot, and should not, be enough to plausibly establish [joinder in a conspiracy] even at the pleading stage"). Plaintiffs' contradictory allegations in the Amended Complaints about the ███████████ fare no better. *See supra* § II.B; *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008) ("Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy" are not enough to find a conspiracy.).

Perhaps to obscure the absence of an agreement, Plaintiffs now make the outrageous claim that the CB Defendants had an "investment thesis" to profit from an open content model that included CSAM. TAC ¶¶ 223–24. Besides Plaintiffs previously attributing this business model to the Individual Defendants, not the CB Defendants (*supra* § II.B), this allegation is not supported by a single fact. It is also completely implausible given that the CB Defendants made a fixed-interest loan and not an equity investment. "Plaintiffs' theory would require the Court to conclude that dozens of sophisticated financial institutions conspired to encourage CSAM despite having every incentive to avoid legal risk that could imperil their loans," which "weighs against any inference of a shared unlawful objective, because the lenders received interest on their loans rather than an equity stake in any MindGeek entity." Order 39:3–8.

As the prior complaints did, "[a]t most, the [Amended Complaints] allege[] an ordinary creditor-debtor relationship." *Id.* 39:9. That is not enough. "The agreement required cannot solely be a business relationship or overlapping commercial interests." *Id.* 37:26–38:3 (citing *Craigslist*, 942 F. Supp. 2d at 982). In addition, even if the CB Defendants did know that MindGeek had CSAM on its sites, "the inference of [conspiracy] cannot be drawn merely from knowledge that the buyer will

1  use the goods illegally." *Id.* 38:1–3 (quoting *Direct Sales v. United States*, 319 U.S.

2  703, 709 (1943)); *see also Deutsche Bank*, 671 F. Supp. 3d at 412 (legitimate business

3  transaction to provide banking services, even coupled with both knowledge that

4  services may assist the borrower's sex-trafficking venture and conduct that covered

5  up the sex trafficking, is not enough to satisfy the requirement of an agreement for a

6  TVPRA conspiracy). The Amended Complaints continue to lack adequately pled

7  "factual allegations of coordination or assent to an unlawful objective." Order 39:11–

8  12. Plaintiffs do not plausibly plead agreement.

9        ***No intent to aid in the wrongful activity.*** "Conspiracy also requires that the

10  defendant intended to further the conspiracy's unlawful objective." Order 39:14–15

11  (citation omitted). Even if the Amended Complaints had adequately alleged

12  knowledge and agreement (they have not), that is not sufficient to infer intent to

13  accomplish the specific unlawful objective of sex trafficking. *See id.* 39:20–40:7

14  (collecting cases). Plaintiffs must plead a "conspiratorial alignment," not merely a

15  "commercial lending relationship." *Id.* at 41:10–11. This must be more than

16  "providing a service that plays some role in unlawful conduct; it requires a conscious

17  decision to join the unlawful purpose." *Id.* 41:1–4; *id.* 41:18–28, n.9 ("continued

18  service in the face of known wrongdoing" is insufficient (citing *Halberstam*, 705

19  F.2d at 481)).

20        As the Court held, Plaintiffs failed to meet this element because Plaintiffs

21  alleged a lender-borrower relationship—the CB Defendants extended loans and

22  collected fixed-interest payments and did not take steps affirmatively designed to

23  further trafficking. *Id.* 40:8–14. The lenders were incentivized for MindGeek to

24  operate legally so it could continue to service the debt. The CB Defendants' loans

25  concluded in 2018 before the scrutiny of CSAM on Pornhub in 2019–2020, and

26  Plaintiffs cite no facts showing the CB Defendants intended to encourage or profit

27  from trafficking rather than lawful content. *Id.* 40:15–23. "As multiple courts have

28

1    held, '[t]he financial incentive to accept interest on debt provided to a borrower does

2    not establish an intent to aid in sex trafficking.'" *Id.* 41:11–13 (citation omitted).

3        This remains true in the Amended Complaints.  Plaintiffs do not allege any

4    new, plausible fact allegation to overcome the Court's holding.  As before, the

5    Amended Complaints "do[] not allege facts plausibly showing that either Colbeck or

6    Redwood consciously decided to further MindGeek's alleged trafficking venture."

7    *Id.* 41:13–15.  Plaintiffs thus still fail to plead intent, knowledge, or agreement.

8        ***No overt act in furtherance of conspiracy or injury caused by such act.***

9    Plaintiffs also fail to adequately allege the other two elements required for a

10    conspiracy claim—an overt act in furtherance of the agreement and injury caused by

11    the act.  The Amended Complaints list multiple wrongful and overt acts allegedly

12    performed by the "Defendants" as part of the alleged conspiracy.  TAC ¶ 367.  But

13    that paragraph simply restates the conclusory and contradictory allegations regarding

14    the lenders' alleged "control" of the MindGeek Borrowers.  *See supra* § II.B.

15    Without these implausible allegations, Plaintiffs can allege only that the CB

16    Defendants engaging in a lawful act—the extension of credit to the MindGeek

17    Borrowers—somehow was done in support of an unlawful sex-trafficking

18    conspiracy.  That is not enough to support a conspiracy claim.  *See, e.g.*, *Compound

19    Prop. Mgmt.*, 462 F. Supp. 3d at 864–65 (finding allegations that lender joined

20    conspiracy implausible).

21        In addition, the Amended Complaints do not plausibly allege that Plaintiffs'

22    injuries (damages) arose from allegedly wrongful conduct of a CB Defendant or a

23    conspiracy involving a CB Defendant.  Many of the Plaintiffs in fact allege the

24    opposite—CSAM exploded on MindGeek websites, and videos of most Plaintiffs

25    were discovered on MindGeek's websites, after the CB Defendants exited any loans

26    to the MindGeek Borrowers.  *See* TAC ¶¶ 221, 271, 272, 332, 338, 340; *see also*

27    K.A. Am. Compl. ¶ 326; N.L. Am. Compl. ¶ 327; L.T. Am. Compl. ¶ 326; X.N. Am.

28    Compl. ¶ 327; N.Y. Am. Compl. ¶ 328; W.L. Am. Compl. ¶ 326; C.S. Am. Compl.

¶¶ 345–46; S.O. Am. Compl. ¶ 325; L.S. Am. Compl. ¶ 347.  Plaintiffs do not adequately plead any of the elements required for a TVPRA conspiracy.

### C. Plaintiffs Still Fail to Plead a Claim Under California Law Against the CB Defendants

The revisions in the Amended Complaints also do not rescue the two state law claims, civil conspiracy and violation of the UCL, asserted against the CB Defendants.

#### 1. The Amended Complaints Lack Any Plausible Allegation to Support a Civil Conspiracy Under California Law

Plaintiffs assert a claim for civil conspiracy against all sixteen Defendants. TAC ¶ 441.  A civil conspiracy claim requires the plaintiff to plead both (1) the commission of an actual tort and (2) that the defendant both had actual knowledge that the tort was planned and concurred in the scheme with knowledge of its unlawful purpose and intent to aid in its commission.  Order 42:21–43:11 (citations omitted).  Plaintiffs sufficiently allege neither as to the CB Defendants.

***First***, Plaintiffs allege that all sixteen Defendants conspired to distribute CSAM under federal statutes, commit California common law privacy torts against Plaintiffs, and violate the UCL.  TAC ¶ 441 (identifying alleged violations of Count IV, 18 U.S.C. §§ 2252, 2255 (asserted against MindGeek); Count V, 18 U.S.C. §§ 2252a, 2255 (asserted against MindGeek); Count VI, Public Disclosure of Private Facts (asserted against MindGeek); Count VII, Intrusion Into Private Affairs (asserted against MindGeek); Count VIII, Placing Plaintiff In False Light (asserted against MindGeek); and Count X, violation of the UCL).  For the reasons described below, Plaintiffs do not adequately state a claim under the UCL.  Thus, as to a ***civil conspiracy to violate the UCL***, the same defects identified by the Court remain. Plaintiffs' theory that the CB Defendants conspired to violate the UCL (with the predicate UCL violation being itself an insufficient TVPRA claim) is "circular," "contradicts Plaintiff[s'] own pleadings," and "lack[s] clarity." Order 47:20–48:10.

1    **Second,** under California law, "[e]ach member of the alleged conspiracy must

2    be legally capable of committing the underlying tort—that is, each member must owe

3    a duty to the plaintiff that is recognized by law and must be potentially subject to

4    liability for breach of that duty—and must intend the success of the purpose of the

5    conspiracy." *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co.,*

6    *LTD*, 2007 WL 2288329, at *4 (N.D. Cal. Aug. 9, 2007) (citing *Applied Equip. Corp.*

7    *v. Litton Saudia Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994)).  Plaintiffs have wholly

8    failed to plead that the CB Defendants owed any duty to Plaintiffs with respect to any

9    of the predicate acts for their civil conspiracy allegations.  Indeed, given the CB

10    Defendants' role in the alleged conspiracy as lenders, they cannot be liable for a civil

11    conspiracy because a lender owes no duty for the torts of its borrowers "beyond those

12    expressed in the loan agreement." *River Colony Ests. Gen. P'ship v. Bayview Fin.*

13    *Trading Grp., Inc.*, 287 F. Supp. 2d 1213, 1224 (S.D. Cal. 2003) (citation omitted);

14    *cf. RTC v. BVS Dev., Inc.,* 42 F.3d 1206, 1214 (9th Cir. 1994) ("Only under

15    extraordinary circumstances in which a lender plays an instigating or active role in a

16    development project will a duty to subordinated sellers be imposed.").  For this

17    reason alone, the Amended Complaints still do not adequately plead a civil

18    conspiracy claim against the CB Defendants.

19    **Third,** Plaintiffs have not adequately alleged a civil conspiracy involving the

20    CB Defendants under California law.  To state a claim for civil conspiracy under

21    California law, the complaint must allege "(1) the formation and operation of the

22    conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages

23    arising from the wrongful conduct." *Ajzenman*, 487 F. Supp. 3d at 867 (quoting

24    *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (1995)).  As the

25    Court found, in pleading these elements Plaintiffs must allege that the CB Defendants

26    had "actual knowledge that a tort is planned and concur in the scheme with

27    knowledge of its unlawful purpose." Order 43:5–6; *Michael R. v. Jeffrey B.*, 158 Cal.

28    App. 3d 1059, 1069 (1984) ("Mere knowledge, acquiescence or approval of an act,

- 25 -

1   without cooperation or agreement to cooperate, is insufficient to establish liability.").

2   Pleading "[b]are legal conclusions, inferences, generalities, presumptions, and

3   conclusions are insufficient" in pleading conspiracy. *Gifford v. Hornbrook Fire Prot.*

4   *Dist.*, No. 2:16-cv-596-JAM-DMC, 2021 WL 4168532, at *21 (E.D. Cal. Sept. 14,

5   2021) (citation omitted).

6          Even were the CB Defendants able to conspire to commit the violations alleged

7   by the Plaintiffs, which they are not, Plaintiffs have not adequately alleged the

8   elements of a civil conspiracy for the same reasons they have failed to adequately

9   plead a conspiracy under the TVPRA.  Namely, they have failed to adequately plead

10  (1) any agreement by the CB Defendants to conspire as to any of the underlying

11  wrongs alleged in their civil conspiracy claim**,** (2) the CB Defendants' intent to aid

12  in the wrongful activity or commitment of any overt act; or (3) or any injury arising

13  by an act taken in support of the purported conspiracy involving a CB Defendant.

14  *See supra* § III.B.  The Court should once again reject Plaintiffs' claim of civil

15  conspiracy.

16              **2.      Plaintiffs Have Not Cured the Deficient UCL Claim**

17         "Plaintiff's allegations under the UCL . . . [still] primarily focus on conduct

18  attributable to MindGeek, not Colbeck or Redwood . . . . [so] the only applicable

19  prong under the UCL that the Court can glean is relevant to Colbeck and Redwood

20  is the unlawful prong."  Order 49: 5–10; *see* TAC ¶ 423 (alleging conduct attributable

21  only to MindGeek with respect to "its users").  The UCL's unlawful prong requires

22  a violation of law.  *See* Order 48:27–49:3.  As explained above, Plaintiffs do not

23  adequately plead that the CB Defendants violated any law, thus dooming the UCL

24  claim against the CB Defendants under the "unlawful" prong.

25         However, even were the Court to consider Plaintiffs' repleaded UCL claim on

26  the "unfair" and "fraudulent" prongs anew, despite Plaintiffs' allegations still

27  primarily focusing on conduct attributable to MindGeek, those claims fail for more

28  reasons.

1    ***First,*** with respect to any claim under the UCL, Plaintiffs have not alleged

2    sufficient facts to establish standing to bring a UCL claim.  To sue under the UCL,

3    Plaintiffs must have "suffered injury in fact and [] lost money or property as a result"

4    of the unfair competition or false advertising. Cal. Bus. Prof'l Code §§ 17204, 17535.

5    The plaintiff must allege facts showing that he or she suffered "economic injury . . .

6    ***caused by***[] the unfair business practice or false advertising that is the gravamen of

7    the claim." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011) (emphasis

8    added).  Plaintiffs allege, for example, financial harm in the form of "costs for

9    therapy," "substantial time away from . . . work," and "substantial expense" to hire a

10   company to assist in her takedown requests to Mindgeek.  *See* TAC ¶ 427.  But the

11   Amended Complaints plead no facts establishing that these financial harms were

12   ***caused*** by the acts of the CB Defendants, and the claim fails on that ground alone.

13   ***Second***, with respect to the "fraudulent" prong, Plaintiffs have not pled any

14   fraud with the particularity required under Rule 9(b).  *See Yumul v. Smart Balance,*

15   *Inc.*, 733 F. Supp. 2d 1117, 1122 (C.D. Cal. 2010) (UCL claims based in fraud must

16   be pled with particularity under Rule 9(b)); *see also supra* § II.B.  Plaintiffs have also

17   not adequately pled "how members of the public [were] likely to be deceived" by the

18   alleged false statements. *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 504

19   (2003).  The Amended Complaints do not satisfy the requirements of a claim under

20   the fraudulent prong.

21   ***Third***, the "unfair" prong similarly does not fit the allegations of the Amended

22   Complaints as Plaintiffs do not, and cannot, plausibly plead facts that show conduct

23   by the CB Defendants that is unfair to ***competitors*** or ***consumers***.  *See Cel-Tech*

24   *Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999) (under

25   competitor focused test, the court examines whether a business practice violates

26   "antitrust law[] or . . . policy . . . or otherwise significantly threatens or harms

27   competition"); *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254

28   (2009) (under consumer focused test, Court is to consider whether the practice is

1   "immoral, unethical, oppressive, unscrupulous or substantially injurious to

2   consumers").  Under any formulation of the requirements of the "unfair" prong,

3   Plaintiffs are certainly not competitors of any defendant, nor have they alleged any

4   harm to competition, let alone any harm that is "injurious to consumers."  Plaintiffs'

5   Amended Complaints thus do not state a claim under the unfair prong.

6       The Amended Complaints thus still do not state a claim under the UCL, and

7   the Court should again dismiss Plaintiffs' claim.

8       **3.    The California Law-Based Claims Are Also Barred by**

9       **Statutes of Limitations**

10      The Court did not need to reach the statutes of limitations in the Order.  *See*

11  *Fleites*, Dkt. No. 444-1 (CB Defs.' SAC Mot. Dismiss Mem.) § IV.B.3, 31:4–32:27.

12  The statutes of limitations, however, provide another independent ground for

13  dismissing Plaintiffs' California law-based claims.

14      The statute of limitations for a UCL claim is four years.  Cal. Bus. & Prof.

15  Code § 17208.  The statute begins to run "when the last element essential to the cause

16  of action occurs and the plaintiff is entitled to maintain an action."  *Kader v. S.*

17  *California Med. Ctr., Inc.*, 99 Cal. App. 5th 214, 223 (2024).  The statute of

18  limitations for a civil conspiracy claim is based on the underlying wrong.  *Al-Ahmed*

19  *v. Twitter, Inc.*, 648 F. Supp. 3d 1140, 1157, n.2 (N.D. Cal. 2023).  In addition to

20  alleging a conspiracy to violate the UCL (with its four-year statute of limitations)

21  Plaintiffs also allege a conspiracy to violate California's torts for Public Disclosure

22  of Private Facts, Intrusion Into Private Affairs, and Placing Plaintiff In False Light.

23  *See* TAC ¶ 441.  Each of these three torts has a statute of limitations of no more than

24  two years.  *See Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1166 (9th Cir. 2011) (one

25  year statute of limitations in California on false light claims); *Quan v. Smithkline*

26  *Beecham Corp.*, 149 F. App'x 668, 670 (9th Cir. 2005) (two year statute of limitations

27  on claim for invasion of privacy by intrusion into private affairs); *Cusano v. Klein*,

28  264 F.3d 936, 950 (9th Cir. 2001) (two year statute of limitations on claim for public

1    disclosure of private facts under California law). The statute "begins to run from the

2    time of the last overt act committed in furtherance of the conspiracy." *Lauter v.*

3    *Anoufrieva*, 642 F. Supp. 2d 1060, 1099 (C.D. Cal. 2009) (citing *People v. Zamora*,

4    18 Cal.3d 538, 548 (1976)).

5         Plaintiffs' theory of liability against the CB Defendants is based on the CB

6    Defendants providing loans to the MindGeek Borrowers, which Plaintiffs admit

7    ceased in 2018. *See, e.g.*, TAC ¶ 221. Plaintiffs first asserted any claim against the

8    CB Defendants in the SAC in *Fleites*, which was filed on May 23, 2024, and

9    subsequently in the fourteen additional cases in June and August 2024. This was

10   almost ten years after, for instance, the first video of Plaintiff in *Fleites* was uploaded

11   and at least five years and five months since the CB Defendants exited its lending

12   relationship with MindGeek—the last possible time any action by the CB Defendants

13   could trigger Plaintiffs' cause of action against the CB Defendants under the UCL

14   and necessarily the latest possible date of the CB Defendants withdrawal from the

15   alleged conspiracy. *See, e.g.*, *Carroll v. Lee*, No. 2:08-cv-975-RSL, 2009 WL

16   2855727, at *2 (W.D. Wash. Aug. 31, 2009) ("A defendant's withdrawal from the

17   conspiracy starts the running of the statute of limitations as to him." (quoting *United*

18   *States v. Clawson*, 104 F.3d 250, 252 (9th Cir. 1996))). The statutes of limitations

19   thus bar Plaintiffs' claims under California law.

20        Besides the CB Defendants ceasing loans to MindGeek in 2018, which alone

21   makes Plaintiffs' claims untimely, the statutes of limitations bar Plaintiffs' claims for

22   additional reasons. Nine Plaintiffs admit they discovered videos of them had been

23   uploaded to MindGeek's websites more than four years before filing their

24   complaints. *See Kader*, 99 Cal. App. 5th at 223; *Wassmann v. S. Orange Cnty. Cmty.*

25   *Coll. Dist.*, 24 Cal. App. 4th 825, 853 (2018); *see also* K.A. Am. Compl. ¶ 330; N.L.

26   Am. Compl. ¶ 327; L.T. Am. Compl. ¶ 326; N.Y. Am. Compl. ¶ 328; W.L. Am.

27   Compl. ¶ 326; C.S. Am. Compl. ¶¶ 345–46; S.O. Am. Compl. ¶ 325; A.K. Am.

28   Compl. ¶¶ 326, 329; J.L. Am. Compl. ¶¶ 326, 332. Thus, those nine Plaintiffs'

California claims are time-barred.  Two other Plaintiffs admit that their discoveries were more than two years before their respective complaints, so any civil conspiracy claims based on the alleged California torts would be time barred.  X.N. Am. Compl. ¶ 327; L.S. Am. Compl. ¶ 347.

Three other Plaintiffs (J.C., T.C., and W.P.) do not allege any dates for the conduct purportedly giving rise to their claims.  *See generally*, J.C. Am. Compl. ¶¶ 326–35; T.C. Am. Compl. ¶¶ 326–36; W.P. Am. Compl. ¶¶ 326–33.  "Plaintiffs cannot avoid the statute of limitations by omitting the date[s] of the alleged violation[s] from their complaint[s]." *Myvett v. Litton Loan Servicing, LP*, No. 3:08-cv-05797-MMC, 2010 WL 761317, at *4 (N.D. Cal. Mar. 3, 2010).  As they have failed to allege such facts, the California law claims in these Complaints are time barred.

Finally, Plaintiff in *Fleites* cannot save the TAC's California law claims by alleging that Plaintiff purported to assert claims against "Colbeck Capital Does 1–10" in the Initial Complaint and "Colbeck Capital Does 1–5" in the First Amended Complaint ("FAC").  Doe Defendants toll applicable statutes of limitations only if the plaintiff is "'genuinely ignorant' of the defendant's identity or the facts rendering [the] defendant liable when the original complaint was filed." *Morris v. Sun Pharma Glob.*, No. 2:20-cv-10441-PA-JPR, 2021 WL 3914235, at *2 (C.D. Cal. Apr. 22, 2021); *see also* Cal. Civ. Proc. Code § 474 ("[W]hen [the defendant's] true name is discovered, the pleading or proceeding must be amended accordingly.").  In the Initial Complaint and the FAC in *Fleites*, however, Plaintiff identified "Colbeck Capital Management LLC Doe(s)" as defendants and alleged that Colbeck Capital Management, LLC, along with other unidentified CB entities, loaned to MindGeek. *Fleites*, Dkt. No. 1 (Initial Compl.) ¶ 57; *Fleites*, Dkt. No. 124-3 (1st Am. Compl. ("FAC")) ¶ 30.  Plaintiff thus knew about Colbeck Capital Management, LLC and its alleged role when Plaintiff filed the Initial Complaint.  Plaintiff was not ignorant— Plaintiff simply delayed in deciding to assert claims against the CB Defendants.

1    Neither the Initial Complaint nor the FAC tolled the statutes of limitations, which bar

2    Plaintiff's claims under California law.

3        **D.**    **The Court Should Dismiss Plaintiffs' Claims Against the CB**

4              **Defendants with Prejudice**

5        Plaintiffs have had multiple opportunities to plead their claims against the CB

6    Defendants.  Rather than fix the deficiencies the Court identified in their claims,

7    Plaintiffs compounded the failure by maintaining the same allegations and theory and

8    adding more conclusory, contradictory, and implausible allegations.  The Court

9    should thus dismiss all claims against the CB Defendants with prejudice.  The

10   Amended Complaints confirm that any further attempt to amend would be futile.  *See*

11   *Atkinson v. Meta Platforms, Inc.*, No. 20-17489, 2021 WL 5447022, at *3 (9th Cir.

12   Nov. 22, 2021) ("Dismissal with prejudice and without leave to amend is appropriate

13   when any amendment would be futile.").

14   **IV.**    **CONCLUSION**

15       The Court should grant the Motion and dismiss the Amended Complaints with

16   prejudice as to the CB Defendants.

17

18   Dated: January 30, 2026              WHITE & CASE LLP

19

20                                        By: _____

21                                            David G. Hille

22                                        Attorneys for Defendants
23                                        COLBECK CAPITAL
                                          MANAGEMENT, LLC; CB MEDIA
24                                        VENTURES DD, LLC; CB AGENCY
                                          SERVICES, LLC; and CB
25                                        PARTICIPATIONS SPV, LLC

26

27

28

- 31 -

1

## **CERTIFICATE OF COMPLIANCE**

2      The undersigned, counsel of record for the CB Defendants, certifies that the

3   Memorandum of Points and Authorities in Support of the Motion to Dismiss contains

4   less than 31 pages of text, in compliance with the Parties' Joint Stipulation to Request

5   (A) Extension of Page Limit for Stipulating Defendants' Responses to Plaintiff's

6   Third Amended Complaint in *Fleites* and (B) Limited Coordination for Purposes of

7   Responding to Third Amended Complaint in *Fleites* and Amended Complaints in

8   Additional Actions, as filed in *Fleites*, Dkt. No. 632.

9

10   Dated: January 30, 2026                    WHITE & CASE LLP

11

12                                       By: _____
                                                    David G. Hille
13

14                                       Attorneys for Defendants
                                         COLBECK CAPITAL
15                                       MANAGEMENT, LLC; CB MEDIA
                                         VENTURES DD, LLC; CB AGENCY
16                                       SERVICES, LLC; and CB
                                         PARTICIPATIONS SPV, LLC
17

18

19

20

21

22

23

24

25

26

27

28