JAMES M. PEARL (Bar No. 198481)
James.Pearl@weil.com
KIAURA CLARK (Bar No. 336314)
Kiaura.Clark@weil.com
WEIL, GOTSHAL & MANGES LLP
1999 Avenue of The Stars, 18th Floor
Los Angeles, California 90067
Telephone: (213) 667-5100
Facsimile: (213) 667-5111

ZACHARY J. TRIPP (*pro hac vice forthcoming*)
Zack.Tripp@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000

*Attorneys for Defendants*
*Redwood Capital Management, LLC, Redwood*
*Master Fund, Ltd., Redwood Opportunity Master*
*Fund, Ltd., Manuel 2018, LLC, Ginogerum, LLC, and*
*White-Hathaway Opportunity Fund, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENA FLEITES,<br><br>        Plaintiff,<br><br>v.<br><br>MINDGEEK S.A.R.L. a foreign entity; MG FREESITES, LTD., a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; MG PREMIUM LTD, a foreign entity; MG GLOBAL ENTERTAINMENT INC., a Delaware corporation; 9219-1568 QUEBEC, INC., a foreign entity; BERND BERGMAIR, a foreign individual; FERAS ANTOON, a foreign individual; DAVID TASSILLO, a foreign individual; VISA INC., a | Case No. 2:21-cv-04920-WLH-ADS<br><br>**REDWOOD DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OMNIBUS MOTION TO DISMISS PLAINTIFF SERENA FLEITES' THIRD AMENDED COMPLAINT AND FIRST AMENDED COMPLAINTS IN RELATED CASES**<br><br>Date:        April 24, 2026<br>Time:        1:30 PM<br>Courtroom:   9B<br>Judge:       Hon. Wesley L. Hsu<br>TAC Filed:   December 15, 2025 |

1  Delaware corporation; REDWOOD
2  CAPITAL MANAGEMENT, LLC, a
   Delaware corporation; REDWOOD
3  MASTER FUND, LTD, a foreign entity;
4  REDWOOD OPPORTUNITY MASTER
   FUND, LTD, a foreign entity; MANUEL
5  2018, LLC, a Delaware corporation;
6  GINGOGERUM , LLC, a Delaware
   corporation; WHITE-HATHAWAY
7  OPPORTUNITY FUND, LLC, a
8  Delaware corporation; COLBECK
   CAPITAL MANAGEMENT, LLC, a
9  Delaware corporation; CB MEDIA
10 VENTURES LLC, a Delaware
   corporation, CB AGENCY SERVICES,
11 LLC, a Delaware corporation; and CB
12 PARTICIPATIONS SPV, LLC, a
   Delaware corporation,
13
14         Defendant(s).
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

Page(s)

I.     INTRODUCTION ................................................................................1

II.    RELEVANT FACTS AND PROCEDURAL HISTORY.....................................5

III.   THE TAC SHOULD BE DISMISSED UNDER RULE 12(B)(6) .......................6

    A.    LEGAL STANDARD ..................................................................7

    B.    THE TAC'S TVPRA BENEFICIARY LIABILITY CLAIM FAILS AS A MATTER OF LAW ..............................................................8

        1.    The TAC Does Not Allege Redwood "Participated in a Venture." ................................................8

        2.    The TAC Does Not Allege Redwood's Knowledge. .......................13

    C.    THE TAC'S TVPRA CONSPIRACY CLAIM FAILS AS A MATTER OF LAW ....................................................................14

        1.    The TAC Fails to Allege Actual Knowledge ...................................15

            a.    The TAC Fails to Allege Agreement .....................................19

        2.    The TAC Fails to Allege Intent .........................................23

    D.    THE TAC'S STATE LAW CLAIMS FAIL AS A MATTER OF LAW...27

        1.    Plaintiff's Civil Conspiracy Claim Fails .........................................27

        2.    Plaintiff's UCL Claim Fails ..............................................29

IV.    REDWOOD PRESERVES ITS REMAINING DISMISSAL ARGUMENTS ....29

V.     LEAVE TO AMEND SHOULD BE DENIED.............................................31

VI.    CONCLUSION ................................................................................31

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
   744 F.3d 595 (9th Cir. 2014) ..................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................2, 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................2, 5, 18, 21

*Benson v. JPMorgan Chase Bank, N.A.*,
   Nos. C–09–5272, C–09–5560 EMC, 2010 WL 1526394 (N.D. Cal. Apr. 15, 2010) .................................................................................................24, 25

*Bonin v. Calderon*,
   59 F.3d 815 (9th Cir. 1995) ...................................................................31

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
   605 U.S. 280 (2025)...............................................................................20

*Craigslist Inc. v. 3Taps Inc.*,
   942 F. Supp. 2d 962 (N.D. Cal. 2013).........................................19, 24, 25

*Davis v. HSBC Bank Nev., N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ..................................................................7

*Direct Sales Co. v. United States*,
   319 U.S. 703 (1943)......................................................................2, 10, 19

*Doe v. Deutsche Bank AG*,
   671 F. Supp. 3d 387 (S.D.N.Y. 2023) ................................................15, 19

*Doe v. Mindgeek USA Inc.*,
   558 F. Supp. 3d 828 (C.D. Cal. 2021) (Carney, J.) ....................................8

*Doe v. Twitter, Inc.*,
   555 F. Supp. 3d 889 (N.D. Cal. 2021)........................................................8

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ..................................................................12

*G.G. v. Salesforce.com, Inc.*,
   76 F.4th 544 (7th Cir. 2023) .......................................................................9

*Grant v. Aurora Loan Servs., Inc.*,
   736 F. Supp. 2d 1257 (C.D. Cal. 2010) ....................................................12

*Hann v. Canyon Mobile Home Park*,
   No. EDCV 16-02338JGB, 2017 WL 10519668 (C.D. Cal. Nov. 9, 2017)...............15

*Jackson v. Kaiser Permanente*,
   No. CV1808176DSFPLA, 2019 WL 10893916 (C.D. Cal. Jan. 8, 2019) .................12

*Kabir v. Flagstar Bank, FSB*,
   No. 8:16-CV-360-JLS-JCGX, 2017 WL 8220425 (C.D. Cal. May 12, 2017) ..........11

*Kidron v. Movie Acquisition Corp.*,
   40 Cal. App. 4th 1571 (1995) ....................................................................28

*Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*,
   817 F. App'x 380 (9th Cir. 2020) ..............................................................31

*River Colony Ests. Gen. P'ship v. Bayview Fin. Trading Grp., Inc.*,
   287 F. Supp. 2d 1213 (S.D. Cal. 2003) ....................................................28

*RTC v. BVS Dev., Inc.*,
   42 F.3d 1206 (9th Cir. 1994) ....................................................................28

*Smith v. Sabre Corp.*,
   No. 17-CV-05149(SVW)(AFM), 2018 WL 11420538 (C.D. Cal. Jan. 23, 2018) ....11

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
   768 F.2d 1001 (9th Cir. 1985) ..................................................................19

*Twitter, Inc. v. Taamneh*,
   598 U.S. 471 (2023).............................................................................20, 24

*United States v. Melchor–Lopez*,
   627 F.2d 886 (9th Cir. 1980) ....................................................................23

*United States v. Menting*,
   166 F.3d 923 (7th Cir. 1999) ...............................................................20, 23

*Verigy US, Inc. v. Mayder*,
   No. C-07-04330 RMW, 2008 WL 4820755 (N.D. Cal. Nov. 4, 2008)....................25

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ...........................................................................7, 18, 23

*Walker v. Countrywide Home Loans, Inc.,*
    98 Cal. App. 4th 1158 (2002) .....................................................................................29

# I. __INTRODUCTION__

The Court should dismiss Plaintiff Serena Fleites' ("Plaintiff") Third Amended Complaint ("TAC") for essentially the same reasons the Court dismissed the Second Amended Complaint ("SAC").[1]   Once again, Plaintiff asks this Court to ignore two fundamental and incontrovertible truths: (1) Redwood had zero incentive, as a lender, for MindGeek to engage in illegal conduct – it was the single biggest risk to MindGeek's ability to repay Redwood's loans; and (2) Redwood, consistent with that objective, repeatedly required and insisted that MindGeek comply with the law—including 18 U.S.C. § 2257—as a condition of lending.   As the Court already held, one cannot plausibly infer that Redwood agreed or intended to participate in a sex-trafficking conspiracy where the incentives (and pleaded contractual terms) all point in the opposite direction.

In its September 17, 2025 Order granting Redwood's motion to dismiss the SAC[2], the Court held that Plaintiff failed to plead:  (i) TVPRA beneficiary liability because the SAC did not plausibly allege Redwood's "participat[ion] in a venture" that trafficked Plaintiff: and (ii) TVPRA civil conspiracy because the SAC did not plausibly allege the essential elements of conspiracy—actual knowledge of an unlawful objective, a meeting of the minds to pursue it, or intent to further it.  Dkt. 605 ("Order") at 20-24, 34-42.[3]

---

[1] The Court should likewise dismiss the First Amended Complaints ("FAC") filed by Plaintiffs K.A., L.T., N.L., N.Y., T.C., X.N., J.C., C.S., S.O., W.L., L.S., A.K., W.P., and J.L. (together, the "Related Cases").  The FACs are near-duplicates of the TAC, just as the complaints in the Related Cases were near-duplicates of Plaintiff Serena Fleites' SAC.  Redwood primarily refers herein to Plaintiff Serena Fleites and her TAC, unless the paragraph citations in the FACs materially differ.

[2] In dismissing the complaints in the Related Cases, the Court incorporated by reference its Order dismissing Plaintiff Serena Fleites' SAC.  *See* Order at 2, *K.A. v. MindGeek S.à.r.l.*, No. 2:24-cv-04786-WLH-ADS (C.D. Cal. Nov. 6, 2025) ("*K.A.*"), Dkt. 166.

[3] The Court also rejected Plaintiff's state law claims.  *Id.* at 42-49.  For the reasons set forth herein, the same result is proper as to the TAC and FACs.

The Court has already decided the dispositive legal questions governing Plaintiff's claims.  The TAC does not fix the fatal flaws this Court already identified or allege materially different facts, so further amendment would be futile, and dismissal of the TAC should be with prejudice.  The TAC largely repackages the same allegations—asserting that Redwood had visibility into and control over MindGeek's operations, should have recognized "red flags," and therefore must have known and embraced trafficking.  Plaintiff attempts to add new facts regarding control that flatly contradict its prior pleading—a problem Plaintiff tries to solve by simply deleting the allegations from the SAC about others' control over MindGeek—but such pleading shenanigans are insufficient to survive a motion to dismiss.  Plaintiff layers on conclusory allegations untethered to particularized facts (*e.g.*, that Redwood "deviated" from standard financing practices, that it "directed" MindGeek's operations and compliance, and that Redwood "misrepresented" MindGeek's business model to other lenders to somehow obtain even more profits off the illegal venture).[4]  *See* TAC ¶¶ 222, 269, 271, 275, 277.  But, under *Twombly* and *Iqbal*, the Court should reject such conclusory allegations.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Moreover, those new allegations, even if credited, still do not plausibly state a claim.  And finally*,* Plaintiff's reliance on allegations of fraudulent conduct to support her claims must, but do not, satisfy the heightened pleading standard of Rule 9(b).  Fed. R. Civ. P. 9(b).

The TAC's beneficiary liability claim fails for the same reason it failed in the SAC: Plaintiff still does not connect the dots between Redwood and the venture that harmed her.  *See, e.g.,* Order at 21-22.  As the Court explained, successful beneficiary liability pleadings typically allege a relationship with the *direct* traffickers who harmed the

---

[4] Following the Order dismissing the SAC, the TAC manufactured new "facts" about Redwood out of whole cloth.  Redwood sent Plaintiff an email prior to filing of this brief asking Plaintiff if they were alleged by mistake and if they would be withdrawn.  Plaintiff has not replied.  Should the case proceed past pleading, these facts will be proven as false and alleged without a good faith basis.  Nevertheless, even these new "facts" do not provide what Plaintiff needs to state a claim for relief.

1   plaintiff. *Id.* Absent such direct association, the plaintiff must at least allege a continuous
2   business relationship between the defendant and the trafficker such that the defendant can
3   plausibly be said to have tacitly agreed to the trafficking venture. *Id.* Plaintiff still does
4   not allege that Redwood interacted with Plaintiff, her traffickers, or her videos—or that
5   Redwood had any relationship with the alleged traffickers at all. *See* TAC ¶¶ 257-285.

6   Plaintiff's attempt to analogize this case to franchisor-franchisee hotel decisions
7   fares no better in the TAC than it did in the SAC. The Court held that those hotel cases
8   are "markedly different" because they involve franchisors exercising pervasive, day-to-
9   day operational control over the premises where trafficking occurred—training staff,
10  setting procedures, supervising operations, and conducting inspections. Order at 22-23.
11  By contrast, allegations that a lender had contractual protections, information rights, or
12  leverage because its debt was secured—even paired with the TAC's new conclusory
13  allegations of control—describe a completely different relationship: that between a
14  borrower and a lender. They lack the franchisor-like operational control on which those
15  cases rest. *Id.* at 23. On Plaintiff's own allegations, Redwood is a lender, not an operator
16  of MindGeek's platforms. *See, e.g.,* TAC ¶ 275. The TAC, fatally, still does not plead
17  facts showing Redwood actually ran or even advised on MindGeek's content-moderation
18  or trafficking-related operations in any way.

19  The TAC's conspiracy claim also fails again because it does not adequately plead
20  any of the elements of conspiracy: actual knowledge, agreement, or intent. *First,* the
21  TAC alleges that Redwood provided financing while "knowing[]" MindGeek posed
22  reputational or legal risks. *See* TAC ¶ 367. But the Court already held that the knowledge
23  standard for TVPRA conspiracy is *higher* than beneficiary liability's "knew or should
24  have known" standard. Conspiracy requires *actual knowledge of the venture's unlawful*
25  *purpose.* Order at 35. The Court further held that the SAC's allegations about purported
26  "red flags," generalized industry problems, and asserted access to information did not
27  plausibly show Redwood's actual awareness of a shared objective to engage in
28  trafficking. Order at 35-36 (allegations "that Colbeck and Redwood knew through

REDWOOD DEFENDANTS' OMNIBUS MOTION TO DISMISS
CASE NO. 2:21-CV-04920-WLH-ADS

1   ongoing access to MindGeek that it lacked meaningful moderation and monetized CSAM
2   . . . falls short of the actual awareness of the unlawful objective required for the
3   knowledge prong of conspiracy liability").

4       *Second*, agreement is "the essential feature of conspiracy," requiring a "meeting of
5   the minds in an unlawful arrangement." *Id.* at 37.  The Court held that allegations of
6   onerous loan terms, monitoring, or influence over corporate strategy—without plausible
7   allegations of coordination or assent to an unlawful objective—describe, at most, an
8   ordinary creditor-debtor relationship. *Id.* at 38-39.  Nothing in this pleading articulates
9   any greater level of agreement than the prior pleading.

10      *Third*, intent requires more than mere "knowledge, approval of, or acquiescence"
11  in wrongdoing; it requires a conscious decision to further the unlawful objective.  *Id.* at
12  39.  The Court found the SAC pleaded no conscious decision by Redwood to further
13  trafficking—only that Redwood "extended loans and then collected fixed-interest
14  repayments." *Id.* at 40.  The TAC once again fails to allege this critical element.  It still
15  offers no plausible allegations that Redwood coordinated with MindGeek about CSAM,
16  structured financing to promote or incentivize unlawful content, or otherwise took
17  specific acts to align itself with a sex-trafficking objective.

18      Nor are Plaintiff's conclusory allegations of conspiracy plausible as a matter of
19  common sense and commercial reality—another pleading deficiency that this Court
20  addressed directly and that the TAC fails to cure.  *See id.* at 42.  Redwood had nothing to
21  gain and everything to lose from trafficking on the platform because Redwood's return
22  was fixed at contractual interest.  Redwood's return was unaffected by MindGeek's
23  traffic volume, and the Court found it implausible that lenders would jeopardize
24  repayment by encouraging unlawful conduct. *Id.* at 38-39 (describing how "Plaintiffs'
25  theory would require the Court to conclude that dozens of sophisticated financial
26  institutions conspired to encourage CSAM despite having every incentive to avoid legal
27  risk that could imperil their loans").  The Court also emphasized that the financing
28  agreements prohibited unlawful conduct, which is fundamentally inconsistent with any

supposed conspiratorial agreement to traffic. *Id*. The TAC may have ramped up its rhetoric, but it does nothing to bridge that logical gap. Nothing in the TAC plausibly converts a standard lending relationship into an agreement and intent to commit trafficking.

Accepting the TAC's (and SAC's) theory would have sweeping consequences. Any commercial counterparty that conducted diligence, imposed and re-emphasized contractual controls, or stayed in a relationship despite alleged "red flags" could be pleaded into a trafficking conspiracy by assertion alone—lenders, banks, landlords, payroll providers, service providers, vendors, auditors, lawyers, and consultants. *Id.* at 42. *Twombly* and the TVPRA do not permit that result. Because the TAC still does not plead the essential elements this Court held dispositive, the TVPRA beneficiary liability and conspiracy claims against Redwood should be dismissed under Rule 12(b)(6), without further leave to amend. The same result should hold for Plaintiff's state law claims.

## II.    RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff initiated this action on June 17, 2021 against MindGeek entities, certain executives, and Visa, among others. Dkt. 1. Redwood was not named. The Court then severed the claims of the Doe plaintiffs and ordered Plaintiff Fleites to proceed as the sole named plaintiff and file a First Amended Complaint ("FAC"). Dkt. 119. Plaintiff filed the FAC almost a year after the action was initiated. Dkt. 124. Redwood again was not named.

Those defendants moved to dismiss the FAC. Dkts. 135-140. Judge Carney granted in part Visa's motion to dismiss, including dismissing Plaintiff's beneficiary-liability theory against Visa for lack of allegations tying Visa to Plaintiff, her traffickers, or her videos, and directed Plaintiff to provide a more definite statement as to civil conspiracy. Dkt. 166. That same day, Judge Carney ordered jurisdictional discovery as to the MindGeek and individual defendants and granted Plaintiff leave to amend after

1    discovery.   Dkt. 167.   Jurisdictional discovery, which included broad document and
2    deposition discovery against MindGeek, concluded on June 23, 2023.   Dkt. 355.

3    Nearly eleven months later, Plaintiff filed her Second Amended Complaint
4    ("SAC"), adding the Colbeck and Redwood defendants for the first time and asserting
5    four claims against Redwood.   Dkts. 384-85.   Shortly thereafter, the same counsel filed
6    the Related Cases against the same Defendants in this same Court.   *See* Dkt. 472-1.   Aside
7    from the specific allegations relating to each Plaintiff's trafficking, the Related Cases
8    were near copycats of each other and substantially similar to the SAC.   Redwood moved
9    to dismiss the SAC (Dkt. 447), and thereafter the complaints in the Related Cases (*K.A.,*
10   Dkt. 68).   Colbeck, Visa, MindGeek and the MindGeek executives also filed motions to
11   dismiss.   Dkts. 442, 432, 440, 433, 436.

12   After full briefing, oral argument, and supplemental briefing as well as a second
13   day of argument, the Court granted Redwood's motion and dismissed all claims in the
14   SAC against Redwood, including Plaintiff's TVPRA beneficiary-liability claim, TVPRA
15   civil conspiracy claim, hybrid UCL/FAL claim, and common-law civil conspiracy claim.
16   Dkt. 605.   The Court also dismissed all of Plaintiff's claims against Colbeck, Visa, and
17   the MindGeek executives (and dismissed some claims against MindGeek).   Dkts. 605,
18   614, 604, 608.   The Court thereafter dismissed all of Plaintiffs' claims in the Related Cases
19   against Redwood, Colbeck, Visa, and the MindGeek executives.   *K.A.*, Dkt. 166.   Several
20   months later, Plaintiff filed the TAC, bringing the same claims against Redwood that the
21   Court dismissed in the Order.   Plaintiffs in the Related Cases filed FACs that were, aside
22   from some trafficking-specific allegations, near-duplicates of the TAC.

23   ## III.    <u>THE TAC SHOULD BE DISMISSED UNDER RULE 12(B)(6)</u>

24   Despite five years of litigation, four iterations of the complaint, nearly a year of
25   discovery, and months to craft new allegations against Redwood following the dismissal
26   of the SAC, the TAC again fails to plead factual allegations against Redwood that
27   plausibly suggest it violated the TVPRA or any state law.   Indeed, the TAC does not even
28   address the glaring logical inconsistencies that the Court flagged when dismissing the

claims against Redwood in the SAC.  The TAC does not explain why any lender with a fixed-interest return unaffected by traffic volume would jeopardize repayment by encouraging MindGeek's unlawful conduct—particularly when Redwood's loan terms expressly prohibited illegal conduct.  Just as this Court dismissed the SAC, it should dismiss the TAC.

### A.    Legal Standard

To survive Rule 12(b)(6) dismissal for failure to state a claim, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*, 556 U.S. at 678 (citation omitted).  Courts are not bound to accept the following as true: conclusory statements; "threadbare recitals of the elements of a cause of action;" or "a legal conclusion couched as a factual allegation."  *Id*.  "[N]or does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.* (internal quotation marks omitted).

In addition, in "cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (citing Fed. R. Civ. P. 9(b)).

In such cases, "the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."  *Id.*  Under Rule 9(b)'s heightened standard, "[a]verments of fraud must be accompanied by "'the who, what, when, where, and how' of the misconduct charged."  *Id.* at 1106 (citation omitted).

When resolving a motion under Rule 12(b)(6), courts may consider extrinsic "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached" to the pleading, without converting a Rule 12(b)(6) motion into one for summary judgment.  *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012).

**B.     The TAC's TVPRA Beneficiary Liability Claim Fails as a Matter of Law**

Plaintiff's beneficiary liability claim under section 1595 of the TVPRA should be dismissed under Rule 12(b)(6), because, like the SAC, the TAC fails to plausibly allege the necessary elements.  Plaintiff must allege facts showing Redwood: (1) "knowingly participated in a venture;" (2) "received a benefit from its participation;" and (3) "knew or should have known that [P]laintiff[] w[as] [a] victim[] of sex trafficking." *See Doe v. Mindgeek USA Inc*., 558 F. Supp. 3d 828, 837 (C.D. Cal. 2021) (Carney, J.) (quoting *Doe v. Twitter, Inc*., 555 F. Supp. 3d 889, 922 (N.D. Cal. 2021)).  Civil liability is imposed where a defendant "knowingly benefits . . . from participation in a venture which that person knew or should have known" engaged in sex trafficking.  Order at 20.  The TAC does not and cannot satisfy this pleading burden.

**1.     *The TAC Does Not Allege Redwood "Participated in a Venture."***

The Court already dismissed Plaintiff's beneficiary liability claim under Section 1595(a) on the threshold issue that Plaintiff failed to plausibly allege that Redwood "participat[ed] in a venture." *Id*. at 20.  While there need not be an "overt act" furthering the trafficking, where a defendant has no direct association with the *traffickers*, Plaintiff must at least allege a continuous business relationship between the defendant and the *trafficker* showing a pattern of conduct or a tacit agreement. *Id*. at 21.

Applying that standard, the Court held that, "[s]imilar to Visa," (whose beneficiary liability claim was dismissed *with prejudice*, Dkt. 614 at 17), Redwood did not have *any relationship*—much less a continuous business relationship—with Plaintiff's *traffickers*. Order at 21.  Unlike MindGeek, Redwood was not alleged to have any "direct interaction with the videos of Plaintiff that her traffickers uploaded." *Id*. at 21-22.  Therefore Redwood could not "bear beneficiary liability for knowingly participating in the sex trafficking venture that harmed Plaintiff." *Id*.

The Court also rejected Plaintiff's attempt to show a continuous business relationship by analogizing to franchisor hotel cases. *Id*. at 22-23.  The Court explained

that these cases involve a relationship "**markedly different** than a company and its financiers," and they turn on specific allegations of "control over the **day-to-day operations**." *Id.* (emphasis added). In the hotel cases, the plaintiffs alleged that the franchisors issued and enforced detailed policies and procedures governing daily operations (*e.g.*, security, payment, training, reservations, rates, hiring, uniforms, complaint handling) and even sent inspectors who would have directly observed trafficking activity. Meanwhile, the SAC alleged that Redwood controlled MindGeek because the lenders effectively "owned" MindGeek as a practical matter, imposed "draconian" loan covenants providing transparency and control rights over "all aspects of MindGeek's managements, operations and economics," and "worked closely" with MindGeek to "implement[] the plan to dominate online porn via unrestricted content" model. Order at 23 (citing SAC ¶¶ 245, 251, 259). These conclusory allegations regarding Redwood's putative high-level control were "not the same as actually exercising control over the policies and operational decisions" in the manner alleged in the franchisor cases. *Id.*

The reasoning of the Court's Order as to beneficiary liability applies with full force to the TAC.

*First,* the TAC still does not allege any connection to Plaintiff's traffickers. Plaintiff attempts to reframe Redwood's lending conduct as a "deviation" from standard practice, and adds conclusory allegations of "control" over MindGeek's operations by virtue of the loan covenants, but the TAC still describes, at most, Redwood's commercial relationship with **MindGeek**. *See, e.g.,* TAC ¶ 8 (in 2018, "Redwood pushed out Colbeck as the lead lender and assumed full control over the business"), ¶ 221, ¶ 269 (Redwood ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄), ¶ 277 (Redwood "assumed unilateral control over all strategic and operational aspects of the business" including "expansion of the company, the policies, procedures, and compliance"). There are no allegations that this control involved any connection to the traffickers. The Court already found that the absence of any alleged relationship with

***Plaintiff's traffickers*** is fatal to the participation element. *See* Order at 22 (distinguishing *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 548, 563 (7th Cir. 2023), because the entity with which "Salesforce had a 'continuous business relationship'—Backpage—itself was liable as a *direct* sex trafficker under 1951(a)(1))" and "Judge Carney rejected Plaintiff's theory that the MindGeek Defendants were direct sex traffickers of Plaintiff").

*Second,* Plaintiff's heightened "control" allegations are also still distinguishable from the franchisor hotel cases. *See* Order at 22-24. Even accepting the TAC's fabricated new rhetoric that Redwood "directed" MindGeek's strategy, "policies, procedures, and compliance," and met regularly with executives, the TAC still does not allege facts showing Redwood *actually exercised* the kind of granular operational control at issue in the franchisor cases. The TAC does not allege that Redwood trained MindGeek employees, created policies, consulted with them on moderation or any specific allegation demonstrating day-to-day involvement in the trafficking enterprise. Nor could they. The Court already held that allegations of "draconian covenants," generalized "control rights," and the conclusory assertion that lenders "worked closely" with MindGeek are "not the same as actually exercising control over the policies and operational decisions as the franchisors did," and thus insufficient to support the required inference. *Id.* at 23.

*Third,* Plaintiff's allegations of control have multiple deficiencies that further undercut the plausibility of Redwood's alleged participation in a venture:

**Removal of contradictory allegations:** This Court correctly concluded the SAC's allegations that Redwood controlled MindGeek "contradict[ed] Plaintiff's own pleadings elsewhere in her SAC that impute that kind of control to the Individual Defendants." Order at 23-24. In response, Plaintiff simply removed those allegations. *See* SAC ¶ 149 ("Individual Defendants were the alter ego of MindGeek, personally controlled, set, and implemented its policies and practices in their capacity as the three owners, and were fully aware of and directed its unrestricted use of CSAM and other nonconsensual content."); *see also id.* ¶¶ 150, 382, 387, 426 (attributing control to Antoon, Tassillo, and Bergmair).

It is settled law, however, that a plaintiff may not cure deficiencies in a pleading merely by alleging completely inconsistent facts in a later pleading. *See, e.g., Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc*., 744 F.3d 595, 600 (9th Cir. 2014); *see also Kabir v. Flagstar Bank, FSB*, No. 8:16-CV-360-JLS-JCGX, 2017 WL 8220425, at *4 (C.D. Cal. May 12, 2017) ("[A]n amended complaint may only allege other facts consistent with the challenged pleading."). After the Court dismissed the claims against the individual defendants with prejudice, the TAC removed allegations of control inconsistent with Redwood's purported control. But, "[t]he allegation does not simply disappear because it does not appear in this version of the case." *Smith v. Sabre Corp*., No. 17-CV-05149(SVW)(AFM), 2018 WL 11420538, at *3 n.1 (C.D. Cal. Jan. 23, 2018). "While a district court must accept a plaintiff's allegations as true in ruling on a motion to dismiss, it need not accept these allegations where they contradict what was alleged in a prior Complaint." *Id.*[5]

**Inconsistent and contradictory allegations:** Even accepting Plaintiff's excisions, the TAC (like the SAC) still contains inconsistent allegations about who controlled MindGeek. Despite attempting to remove many of the allegations about Antoon, Tassillo, and Bergmair's control, some remain. *See* TAC ¶ 16 ("MindGeek's then-CEO, Feras Antoon, and then-COO, David Tassillo, as well as the other employees [] actually direct and manage all of the operations of MindGeek's tubesites and paysites."), ¶ 178 (Antoon, Tassillo, and Bergmair directed "all important undertakings"), ¶ 283 (alleging that Redwood "████████████████████████████████████"). This contradicts any

---

[5] In a similar vein, the TAC *adds* the manufactured allegation that Redwood—like Colbeck—also ████████████████████. *See* TAC ¶ 357(a); *K.A.*, FAC ¶ 349(a). The SAC alleged that only Colbeck ██████████████. *See* SAC ¶ 274. Plaintiff provides no factual support for this new allegation against Redwood, because there is none. The existence of ████████████████, without any detail as to the subject of ████████, was nevertheless inconsequential to the Court's dismissal of claims against Colbeck, and the result should be no different.

attempt to "infer a level of control [by Redwood] akin to" the franchisor-franchisee cases. Order at 23-24.

The TAC's allegations and the documents incorporated by reference thereto are also inconsistent with Redwood's alleged control in other ways. Courts are clear that a plaintiff "cannot plead contradictory facts that render Plaintiff's claims implausible." *See Jackson v. Kaiser Permanente*, No. CV1808176DSFPLA, 2019 WL 10893916, at *5 (C.D. Cal. Jan. 8, 2019) (plaintiff's allegations were implausible because she alleged her leave request was both denied and approved); *see also Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 & n.8 (9th Cir. 2014) (where allegations in the complaint were internally inconsistent, the allegations supported "at best—a 'possible' basis to believe [plaintiffs' theory], not a 'plausible' one").

Plaintiff's case hinges on financing agreements that did not allow the kind of control alleged. In neither the 2013 Financing Agreement nor the 2018 Financing Agreement could any one lender even ███████████████████████████ ███████████████████████████████████████████████████████████ ████████████, respectively.[6] *See* Dkts. 450-2, 450-3.[7] Nor are there powers in either financing

---

[6] The TAC, like the SAC, incorporates several documents by reference, including the financing agreements. *See* Redwood's Mot. to Dismiss SAC, Dkt. 447-1 (redacted), 450-6 (under seal) (describing the SAC's direct quotation, reference, and purported characterization of extrinsic documents without attaching them). The incorporation by reference doctrine permits the Court, on a Rule 12(b)(6) motion, to consider documents incorporated by reference, but not physically attached to a complaint. *See, e.g.*, *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1264 n.37 (C.D. Cal. 2010). Plaintiff has also never opposed this Court's consideration of such documents.

[7] The 2013 and 2018 agreements describe ████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████

REDWOOD DEFENDANTS' OMNIBUS MOTION TO DISMISS
CASE NO. 2:21-CV-04920-WLH-ADS

1   agreement granting the agent or any lender (including Redwood) the ability to control the

2   company's operations.  Finally, Colbeck and Redwood were simply "passive lenders

3   among dozens in large, syndicated transactions."  Order at 41; *see id* at 42 (describing

4   MindGeek's 124 other lenders); Dkt. 450-2 (2013 Financing Agreement) (█████████

5   ████████████████████████████████████████); Dkt. 450-3 (2018 Financing

6   Agreement) (███████████████████████████████████████).  It is

7   implausible to allege that one lender controlled MindGeek under these circumstances.

8        Finally, the TAC contains allegations undercutting *why* Redwood would want such

9   control over MindGeek.  The TAC simultaneously alleges that Redwood wanted to seize

10  control of MindGeek but also ████████████████████████████████

11  ██████████████████████████████████.  *Id.* ¶ 265.  If Redwood was seeking to

12  increase its own investment and control, it would have no rational motivation to ██████

13  ██████████████████████████████████████████████  And,

14  if Redwood already controlled the syndicate, it would have had no reason to enter into a

15  *quid pro quo* arrangement to █████████████████████████████████

16  █████████████████████████.  *Id.* ¶ 268.

17       The TAC's allegations are incoherent and contradictory.  Even crediting the

18  allegations as true under the 12(b)(6) standard, the TAC still fails to plead Redwood's

19  participation in a venture.  The beneficiary liability claim against Redwood thus fails.

20          **2.**    ***The TAC Does Not Allege Redwood's Knowledge.***

21       The TAC also fails to allege the requisite knowledge for a beneficiary liability

22  claim.  Although the Court previously dismissed the claim on the failure of the

23  participation element alone, it expressly noted that—similar to Visa—"the lack of any

24  connection to Plaintiff's video or Plaintiff's trafficker" also defeated Plaintiff's attempt

25  to plead knowledge or constructive knowledge as to Redwood.  Order at 24 n.6.  Nothing

26  in the TAC bridges that gap.

27

28  ████████████████████████████████████████████████████████████



13

1    Just like the SAC, the TAC alleges that Redwood received "reports" regarding

2  nonconsensual content on MindGeek's sites.  Even rephrased, that is still insufficient to

3  show knowledge of Plaintiff's specific videos, her traffickers, or the venture.  *Compare*

4  SAC ¶¶ 270, 271 (alleging that Redwood "regularly" "received detailed reports on . . .

5  legal issues and risks, including when issues concerning child pornography and other

6  nonconsensual content were raised by government bodies and law enforcement, business

7  counterparties, victims, and the press"), *with* TAC ¶ 269 (Redwood received ███████

8  ████████████████████████████████████████████████████████████████████████

9  ███████████████████████████████████").[8]  This was not enough to show

10  knowledge in the SAC; it should not be enough in the TAC.  The loan agreements also

11  contradict this allegation.  The affirmative covenants required ████████████████

12  ███████████████████████████████████████.  Dkts. 450-2, 450-3 at § 7.01(a).[9]

13  And, still, Plaintiff does not allege that Redwood had any knowledge of or factual

14  connection to Plaintiff's video, Plaintiff's traffickers, or the specific trafficking venture.

15  *See also* Section III.C.1, *infra* (discussing the lack of allegations of knowledge via

16  continuous business relationship in the context of civil conspiracy).

17    **C.    The TAC's TVPRA Conspiracy Claim Fails as a Matter of Law**

18    The TAC must plead—not just assume—facts showing Redwood (1) actually knew

19  the unlawful objective, (2) agreed to join it, ***and*** (3) intended to further it. As the Court's

20  order makes clear, the SAC did not, and the TAC still does not.

21

---

22  [8] This allegation regarding the ████████████████████████, while inaccurate, also

23  contradicts the allegation that the lenders ██████████████████████████████████████.

24  *See* TAC ¶¶ 269, 270.  Plaintiff wants it both ways.  The TAC, on the one hand, alleges

    that the loans ██████████████████████████████████████████████████████████████████

25  ██████████████████████████████████████  The TAC, however, does not allege that the

26  ██████████████████████████████████████████.

27  [9] The affirmative covenants in the lending agreements clearly set forth MindGeek's

28  ████████████████████████████████████████████████████  *See* Dkt. 450-3 at §
    7.01(a)(iii), (xi).

1          **1.** *The TAC Fails to Allege Actual Knowledge*

2          The TAC fails to plead facts showing Redwood's "actual knowledge" of a

3  trafficking venture's unlawful purpose.  Order at 35 (explaining that civil conspiracy

4  under the TVPRA demands more than the constructive-knowledge standard that applies

5  to beneficiary liability); *see also Hann v. Canyon Mobile Home Park,* No. EDCV 16-

6  02338JGB (SPx), 2017 WL 10519668, at *3-4 (C.D. Cal. Nov. 9, 2017).

7          Consistent with *Deutsche Bank*, Plaintiff must plead facts showing Redwood

8  entered a joint enterprise with "consciousness of its general nature and extent" and shared

9  the conspiracy's common unlawful objective—not merely that it did business with

10  MindGeek in the face of risk allegations.  *Doe v. Deutsche Bank AG,* 671 F. Supp. 3d 387

11  (S.D.N.Y. 2023).  In *Deutsche Bank*, the court dismissed the TVPRA conspiracy claim,

12  *despite* allegations that JP Morgan and Deutsche Bank provided banking services to

13  Jeffrey Epstein's sex trafficking venture, structured cash withdrawals to avoid alerting

14  authorities, even arranged private air for victims,  and willfully failed to file suspicious

15  activity reports, which suggested that "defendants did indeed agree to provide banking

16  services for Epstein and his affiliated entities and that they knew, or recklessly

17  disregarded, would assist his sex-trafficking venture." *Id.* at 412.  Plaintiff does not even

18  allege facts analogous to those the *Deutsche Bank* court found insufficient.  At the

19  pleading stage, Plaintiff's conclusory characterizations of the requisite knowledge cannot

20  substitute for factual allegations.  Order at 36.

21          The Court already applied that standard to the SAC and found its "knowledge"

22  theory deficient.  *See id.* at 35-36.  The SAC alleged that Redwood, through ongoing

23  access to MindGeek, knew MindGeek lacked meaningful moderation and monetized

24  CSAM, and that it and other lenders proceeded despite "innumerable red flags of

25  illegality," including prior public investigations into money laundering, tax evasion, and

26  child pornography.  *Id.* (citing SAC ¶¶ 89-101, 246, 261, 265, 267, 271–73).  The Court

27  held that those allegations did not plausibly plead actual knowledge.  *Id.*  The SAC did

28  not "allege facts showing that Colbeck or Redwood knew MindGeek's business was

1  rampant with CSAM content." *Id.* at 36. Nor did it "plead facts indicating that [Redwood

2  or Colbeck] were presented with reports or information during their lending relationship

3  demonstrating that MindGeek's venture itself fostered a sex trafficking enterprise." *Id*.

4  In fact, the "loan agreements contained express representations and covenants prohibiting

5  illegal conduct to ensure compliance, including sex trafficking," and Plaintiff "points to

6  no specific facts suggesting Colbeck [or Redwood] knew those representations were false

7  when made." *Id*. The SAC's allegations amounted to generalized assertions that

8  sophisticated lenders "should have known" of red flags, which are insufficient. *Id*.

9        The TAC does not cure the pleading defects the Court found dispositive. *First,* the

10  TAC primarily rephrases the SAC's conclusory allegations of knowledge. The SAC

11  alleged that Redwood "fully understood that MindGeek was intentionally embracing child

12  pornography," had "complete access to information about MindGeek's operations," and

13  were provided "regular[]" "detailed reports on MindGeek's business and financial

14  performance, business plans, and legal issues and risks, including [] issues concerning

15  child pornography and other nonconsensual content." SAC ¶¶ 246, 270, 271, 272.

16  Though rephrased, the TAC also alleges that Redwood was "aware of, [and] knowingly

17  and intentionally developed, invested in, and raised money to advance MindGeek's illegal

18  unrestricted content model" and "██████████████████████████████████████████

19  ████████████████████████." TAC ¶¶ 222, 269. The TAC alleges that, among other things,

20  the ████████████████████████████████████████████████

21  ████████████████████████████████████████" TAC ¶ 269. The TAC, like

22  the SAC, does not allege that any of these reports addressed Plaintiff or sex trafficking.

23  Nor does this vague and conclusory allegation remotely suggest the reporting evidenced

24  rampant CSAM on the platform.

25        Just as the Court did not consider the regular reporting dispositive in the SAC (*see*

---

[10] The 2257 laws require, among other things, producers of sexually explicit visual content
to maintain detailed records verifying the age and identity of all performers to prevent
CSAM.

Order at 10, 36; *c.f.* Pl.'s Omnibus Opp., Dkt. 480-1 at 22), nor should it here. There are no facts to support the allegation that Redwood received ███████████████ ████████████—as set forth above, the ████████████████████ ███████. But, even if the Court accepted the assertion, it does not establish knowledge. Rather, it would further evidence that Redwood indeed required compliance with CSAM laws—the very requirement set forth in the loan agreements. *See* Order at 36. That is consistent with the parties' lending relationship and the Court's explanation that it was logical for Redwood to want MindGeek to comply with the law.

*Second,* the TAC recycles the SAC's allegations that external warning signs and prior investigations should have alerted sophisticated lenders. *Compare* SAC ¶¶ 247 (alleging that MindGeek's criminality was "widely known before, during, and after the terms of each successive financing"), 249 (describing the "well-known illegality ubiquitous in the unregulated online porn industry"), 495 (existence of "extensive public reporting on the ubiquitousness of illegal content on MindGeek's websites dating back to 2011, and governmental investigations") *with* TAC ¶ 239 (explaining that Pornhub was "widely known for monetizing illegal content"), ¶¶ 134-193 (describing decades of public reporting regarding CSAM on tubesites, including Pornhub).

*Third*, the TAC's attempts to combat deficiencies in the SAC are untethered to particularized facts and inconsistent with the reality of rational actors. The TAC attempts to rebut the Order's suggestion that "independent audit reports [Redwood] obtained before lending, which concluded that MindGeek had 'best-in-class' compliance procedures and reviewed 'every single user uploaded video' for unlawful content" were inconsistent with knowledge. Order at 36. The TAC alleges for the first time that



"██████████████████████████████████ ████████████████" and that "████████████ ████████████████████████████. TAC ¶¶ 263-267, 271-272.[11]

---

[11] In Plaintiff's omnibus opposition to the motions to dismiss the SAC, Plaintiff claimed that ██████████████ was "██

17

As a threshold matter, this allegation is flatly false.  Redwood absolutely denies that it participated in ███████████████████████████.[12]

Moreover, because these are allegations that Redwood engaged in fraudulent conduct—fraudulently inducing outside investment—they trigger Rule 9(b)'s heightened pleading standard.  *See Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.").  But they fall far short.  There is no who, what, when or how Redwood executed this fraud.  Despite nearly a year of discovery into MindGeek's operation, the allegation contains no facts to support this new idea that the ████████████████████.  In particular, the TAC does not identify how the assertions in the ████████████ are false, who at Redwood assisted in the preparation of the false assertions, how Redwood knew the assertions were false, or how any such falsity reflects Redwood's actual awareness of a shared trafficking objective (as opposed to generalized legal or compliance risk).

Indeed, these conclusory allegations of Redwood's role would fail even under the *Twombly* plausibility standard.  They would require the Court to accept, without factual support, that Redwood somehow influenced ███████████████████████████████████████████████████████████████████████████████.  Then, the Court would have to believe that every lender relied solely on the █████████████████ and through their own diligence failed to discover the criminality Plaintiff alleges was omnipresent.[13]

---

███████████████████████████████████████████████████████████."  Dkt. 480-1 at 29.  Not only does this contradict the TAC, but, if it was an insinuation about Colbeck or Redwood's involvement, it was not enough to show knowledge then, and should not be now.

[12] █████████████████████████████████████████████████████.  *See* Dkt. 450-1 at 1.

[13] The ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Dkt. 450-1 at 3.

Even taken as true, the allegations fail to establish Redwood's knowledge of CSAM on MindGeek's platform for purposes of conspiracy liability. Simply alleging that Redwood participated in ████████████████████████████████ ████████████████████████ (*see* TAC ¶ 242) does not mean "Redwood knew MindGeek's business was rampant with CSAM content" (Order at 36). At most, it could show an aim to recruit more lenders, raise more capital, manage reputational risk, puffery, or even more disregard (which is insufficient for conspiracy liability) for whether MindGeek was indeed acting pursuant to its purported policies against CSAM in pursuit of this goal. These are all commercial motives—not actual awareness of a shared unlawful objective.

*Finally*, the TAC still does not plead what the Court found lacking: facts showing Redwood knew MindGeek's business was "rampant with CSAM content," or that Redwood was presented—during the lending relationship—with specific reports or information "demonstrating that MindGeek's venture itself fostered a sex-trafficking enterprise." Order at 36. The TAC's allegations do not reflect "actual awareness of the unlawful objective" rather than "generalized" allegations of reputational risk or illegality. *Id.* Accordingly, the TAC again fails to plead actual knowledge as required for TVPRA conspiracy.

### a.    The TAC Fails to Allege Agreement

The TAC does not plausibly allege an agreement to join a trafficking venture. Agreement is the "gist" and "essential feature" of conspiracy. Order at 37 (citing *Deutsche Bank*, 671 F. Supp. 3d at 412). It requires a "meeting of the minds in an unlawful arrangement." *Id.* (citing *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1020 (9th Cir. 1985)). Because direct evidence is rare, a tacit agreement may be inferred from circumstantial evidence—but only where the *facts plausibly show a common intent and shared unlawful objective*. Order at 37.

The required agreement "cannot solely be a business relationship or overlapping commercial interests," and "the inference of [conspiracy] cannot be drawn merely from

1    knowledge" that a counterparty will act unlawfully.  Order at 37-38 (citing *Craigslist Inc.*

2    *v. 3Taps Inc.*, 942 F. Supp. 2d 962, 982 (N.D. Cal. 2013) and *Direct Sales Co. v. United*

3    *States*, 319 U.S. 703, 709 (1943)); *see also Twitter, Inc. v. Taamneh,* 598 U.S. 471, 489,

4    491 (2023) (explaining that the "legal system generally does not impose liability for mere

5    omissions, inactions, or nonfeasance" and "culpability of some sort is necessary to justify

6    punishment of a secondary actor, lest mostly passive actors like banks become liable for

7    all of their customers' crimes by virtue of carrying out routine transactions") (internal

8    quotation marks omitted); *c.f. Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,

9    605 U.S. 280, 292 (2025) ("Absent an 'independent duty to act,' a person's 'failure[s],'

10   'omissions,' or 'inactions'—even if in some sense blameworthy—will rarely support

11   aiding-and-abetting liability").  A prolonged course of dealing may support an inference

12   *only* when coupled with "conscious participation"—including knowledge of and a shared

13   stake in the unlawful venture, standardized transactions, duration, and mutual trust.  Order

14   at 38 (citing *United States v. Menting*, 166 F.3d 923, 928 (7th Cir. 1999)).

15        Applying those standards, the Court held the SAC did not plausibly allege that

16   Redwood "agreed to join in MindGeek's trafficking venture," even though Plaintiff

17   alleged that the loan had onerous terms, that Redwood had extensive control rights, had

18   strategic involvement with MindGeek's business (citing SAC ¶¶ 89-101, 245–46, 251,

19   259, 267–73), and that it understood MindGeek operated without meaningful moderation,

20   which was "essential" to MindGeek's ability to pay back the loans.  *Id.* (citing SAC ¶¶

21   246, 266-268, 491).  Those allegations described, "at most," an ordinary creditor–debtor

22   relationship; "commercial dealings, without more, do not establish conspiracy."  *Id.* at 39.

23   The Court also found it implausible to infer a tacit conspiratorial understanding where the

24   financing agreements expressly prohibited unlawful conduct and lenders relied on

25   diligence and audit materials describing compliance procedures—facts "fundamentally

26   inconsistent" with a conspiratorial meeting of the minds.  *Id.* at 38.

27        The TAC fares no better.  It largely repeats the same narrative of extensive control

28   and influence over MindGeek, despite knowledge of MindGeek's allegedly illegal

20

content practices; the funding and promotion of MindGeek's business model for its own profit; ███████████████████████████████████████████████████████████; and tolerating covenant breaches in order to earn unusually high interest and fees from a business others were unwilling to finance. *Compare, e.g.,* SAC ¶¶ 245, 269, 270, 272, 278, 279, and 491 *with* TAC ¶¶ 8, 222, 257, 264, 265, 266, 268, 269, 272.[14]

The TAC's overheated rhetoric (*e.g.,* repeatedly referring to Redwood's "deviation" from standard lending practices, "exorbitant" or "outsized" profits, and conspiratorial misrepresentations to other lenders) is still devoid of the factual content necessary to plead agreement. Simply alleging that Redwood "agreed" to conspire with MindGeek (TAC ¶ 257) is a quintessential example of a conclusory recitation of the legal element of the claim that is insufficient as a matter of law. *Twombly*, 550 U.S. at 556-57. The TAC still pleads no facts showing coordination or assent to an unlawful objective— no communications reflecting an agreement to promote unlawful content, no directives, no structuring of financing to further trafficking, and no shared stake in trafficking. Redwood was entitled to nothing more than fixed returns typical of a lender.

The TAC largely ignores this key defect that the Court identified in the SAC: it is implausible that a lender earning fixed-interest returns—returns unaffected by MindGeek's traffic volume—would put their ability to recover on the loan at risk by encouraging unlawful conduct. Order at 38. Plaintiff merely adds the conclusory assertion that Redwood duped other lenders into providing *additional* financing, because it "███████████████████████████████████████████████." TAC ¶¶ 273-74. But Plaintiff never explains what those purportedly ██████████████ were, other than routine lender returns. *Compare* TAC ¶ 274 *with* SAC ¶ 275. And even if Redwood was actually █████████████████████████████████, ***it still had no incentive to put its***

---

[14] Among numerous other inconsistencies, it is worth noting that at some points the TAC alleges that through ████████████████████████████████████████████████████████████████████████████████████████ *Compare* TAC ¶¶ 265, 357 (*K.A.*, FAC ¶¶ 265, 349) *with* TAC ¶¶ 272, 273.

1    ***repayment at risk by engaging in illegal conduct.***

2    The Court also emphasized that the loan agreements expressly prohibited unlawful

3    conduct.    Order at 38.    Those contractual protections, the Court explained, are

4    fundamentally inconsistent with a conspiratorial "meeting of the minds" to traffic in

5    CSAM. *Id.* The TAC, again, ignores this point. The TAC merely adds more allegations

6    about how Redwood "did not pull their financing" in order to "preserv[e] this business

7    model [that] was essential to their continuing ability to be repaid." TAC ¶ 279. This is

8    also facially inconsistent with the SAC's allegation that Redwood and the other lenders

9    sent ███████████████████████ as soon as the lenders became aware of such illegal

10    conduct. *Compare* SAC ¶ 494 (describing the ███████████████████████

11    ██████████████). As set forth in Redwood's motion to dismiss the SAC, just

12    five days after publication of the Kristof article, ████████████████████████

13    ████████████████████████████████████████████████████

14    ████████████████████████████████████████████████████

15    ████████████████████████████████████████████████████

16    ████████████████████████████████████████████████████

17    ████████████████████████████████████████████████████

18    ███████████████████████████████████. *See* Dkt. 450-4. As set forth

19    in Section III.B.1, *infra*, imply *removing* allegations that no longer comport with

20    Plaintiff's narrative—including allegations that referred to this ███████████—does

21    not make them disappear. Plaintiffs cannot evade their own prior inconsistent allegations

22    simply by omitting them from the TAC.

23    Finally, the newly crafted allegation that Redwood was involved in the preparation

24    of the ███████████████ fares no better. Without any factual support, Plaintiff alleges

25    that Redwood was ████████████████████████████████████████████

26    ████████████████████████████████████████████████████

27    ████████████████████ TAC ¶¶ 262–65. But these assertions remain conclusory

28    and devoid of the particulars required to plausibly plead conspiracy. The TAC does not



identify which ███████████████████████, what ███████
████████, who ████████████████████████, or when and how
Redwood ████████████████. Nor does the TAC plead the substance,
timing, or participants of the alleged communications, or facts showing that ████████
█████████████████████████████████████. *See Vess*, 317 F.3d
at 1103–04 (allegations of fraud must satisfy Rule 9(b) pleading standard).

Allegations that a defendant approved, edited or disseminated investor materials or participated in fundraising—without well-pleaded, non-conclusory facts showing contemporaneous knowledge of falsity and a conscious commitment to deceive—are insufficient to establish a meeting of the minds or a shared unlawful objective, particularly where the alleged conduct is equally consistent with lawful capital-raising activity. Accepting the TAC's theory would require this Court to create a standard that could create liability for every investment bank or underwriter raising funds, if its clients were later charged with wrongdoing.

At bottom, Plaintiff still alleges no facts showing coordination with MindGeek regarding unlawful content, no communications reflecting agreement to promote CSAM, no directives concerning trafficking, no structuring of financing to promote illegal conduct, and no shared stake in the alleged trafficking. Only fixed lender returns. Without such allegations, Plaintiff still has not plausibly alleged a meeting of the minds to join a trafficking venture.

### 2.   *The TAC Fails to Allege Intent*

The TAC still does not plausibly allege Redwood's intent to further a trafficking objective. Conspiracy requires intent to further the conspiracy's unlawful objective, and this element often overlaps with agreement. Order at 39 (citing *Menting*, 166 F.3d at 927). As the Ninth Circuit explains, "[s]imple knowledge, approval of, or acquiescence" in wrongdoing—without "an intention and agreement to accomplish a specific illegal objective"—is not enough. *Id.* (citing *United States v. Melchor–Lopez*, 627 F.2d 886, 891 (9th Cir. 1980)). Courts therefore decline to infer intent from knowledge alone.

The SAC failed to plausibly allege intent because, at most, Redwood "extended loans and then collected fixed-interest repayments" with MindGeek.  Order at 40.  There was no profit incentive tied to unlawful content and thus Redwood had nothing to gain from MindGeek's participation in a sex trafficking venture—to the contrary, lenders had every incentive for MindGeek to operate legally so it could continue to service its debt. *See* Order at 40; *see also* 2013 Financing Agreement (Dkt. 450-2) § 6.01(h); 2018 Financing Agreement (Dkt. 450-3) § 6.01(h) (███████████████████████████████████████████████████████████████████████████████████████).

The SAC's allegations "describe[d] a commercial lending relationship, not a conspiratorial alignment," and "the financial incentive to accept interest on debt" does not establish intent to aid sex trafficking.  Order at 41 (citing *Craigslist*, 942 F. Supp. 2d at 982); *Benson v. JPMorgan Chase Bank, N.A.*, Nos. C–09–5272, C–09–5560 EMC, 2010 WL 1526394, at *6 (N.D. Cal. Apr. 15, 2010) (bank's incentive to profit from deposits made by Ponzi scheme promoters did not establish intent to aid the promoters).  A commercial financing relationship with an alleged wrongdoer—even where that relationship is alleged to "deviate" from standard lending practices—does not suffice to plead an "intent to aid" another party in "a conspiratorial agreement."  Order at 37-38.

The Court further rejected Plaintiff's effort to rely on Judge Carney's prior ruling as to Visa (Dkt. 166), explaining that conspiracy liability under the civil remedy statute requires more than providing a service that plays some role in wrongdoing; it requires a conscious decision to join the unlawful purpose.  Order at 41.[15]  That reasoning applies *a fortiori* to alleged lenders with fixed-interest returns and contractual prohibitions on unlawful conduct.

The TAC does not cure these deficiencies.  It fails to explain why Redwood, which

---

[15] And, if merely "knowingly" providing a service were enough, agreement and intent would collapse into knowledge—undermining *Halberstam*'s distinction between passive facilitators and those who consciously align.  *See also Twitter*, 598 U.S. at 489.

was a fixed-return lender, would have ***any*** incentive for MindGeek to operate illegally. Instead, the TAC just conclusorily alleges that Redwood "intentionally developed, invested in, and raised money to advance MindGeek's illegal unrestricted content model for their own benefit; lied about it to fraudulently induce others to fund MindGeek's illegal operations and their investment in the same; and deviated from standard lending practices by not only funding each of the necessary loans despite knowing MindGeek was in breach of the loan covenants," (TAC ¶¶ 8, 222)[16] and was "███████████████ ████████" and "███████████████████████████████" in connection with these actions. *Id.* ¶ 257. Not only do these allegations largely mirror those in the SAC (*see, e.g.,* SAC ¶¶ 246, 260, 269, 494), they are also insufficient to cure the defects in the SAC and contain fatal inconsistencies that conflict with Plaintiff's "intent" narrative.

*Craigslist* made clear that financial incentive is insufficient to establish intent to aid in an unlawful objective. 942 F. Supp. 2d at 982. Plaintiffs attempt to infer intent by alleging that Redwood participated in a ████████████████████ ███████████████████████████████████████████ ████████████████████████████. However, an alleged ██████████████ ████████████████████ still does not evidence intent to participate in the unlawful trafficking scheme. *See* TAC ¶ 268; *see also Benson,* 2010

---

[16] The TAC also does not address the fact that, within a few days of the New York Times article by Nicholas Kristof that put Redwood on notice of MindGeek's potential violations of its ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *See* Dkt. 450-4. Redwood exited the loan shortly thereafter. This is directly inconsistent with the TAC's allegation that Redwood funded the loans "despite knowing MindGeek was in breach of the loan covenants" and "permit[ed] the financing to remain in place despite ongoing breaches that would have dictated a default notice and foreclosure in any standard funding situation." TAC ¶ 8.

WL 1526394, at *6; *Verigy US, Inc. v. Mayder*, No. C-07-04330 RMW, 2008 WL 4820755, at *7–8 (N.D. Cal. Nov. 4, 2008) (signing an operating agreement and investing in a company "do not show an intent . . . to join an unlawful enterprise," nor does "soliciting investors, helping to obtain a seller's permit, and donating web design services to STS . . . show the existence of an intent to engage or engagement in a civil conspiracy.").

The TAC's allegations also continue to be rife with inconsistencies and implausible conclusions. For instance, the TAC alleges that Redwood's "outsized profits" were derived from "interest rates" on the loans. *See* TAC ¶¶ 8, 283, 285, 360, 361, 368; *K.A.* FAC ¶¶ 8, 283, 285, 352, 353, 360. Redwood's profit incentive thus *had* to be tied to a continued ability to service the loans. If MindGeek was engaging in illegal conduct, that would threaten Redwood's ability to recoup the loaned funds and thus obtain said "profits." The TAC also fails to explain why Redwood would bother including prohibitions against illegal conduct in its loan terms, if it intended that MindGeek engage in that very conduct. Separately, the TAC alleges that Redwood concealed MindGeek's true business model from other sophisticated lenders, yet also alleges general public knowledge of MindGeek's business model (*e.g.*, TAC ¶¶ 8, 134-177). Finally, if Redwood already controlled the syndicate and had the level of capital power as alleged, then it would have no reason to enter ███████████ that would dilute Redwood's control and reduce its potential absolute profits from interest income. *See* TAC ¶ 268.

Critically, the TAC's theory of conspiracy liability would still erase any limiting principle by sweeping in countless neutral counterparties. The TAC alleges that everyone was aware the platform was rife with CSAM. *See e.g., id.* ¶¶ 134-177. Accordingly, any vendor who engaged with MindGeek with this knowledge could face liability under Plaintiff's rubric. The Order squarely rejects that approach: civil conspiracy liability "cannot be triggered by passive nonfeasance or generalized awareness; it requires affirmative alignment with the venture's unlawful purpose." Order at 42. The TAC still

1  fails to plead facts showing such alignment.

2  **D.    The TAC's State Law Claims Fail as a Matter of Law**

3          **1.    *Plaintiff's Civil Conspiracy Claim Fails***

4          Under California law, civil "[c]onspiracy is not a cause of action, but a legal

5  doctrine that imposes liability on persons who, although not actually committing a tort

6  themselves, share with the immediate tortfeasors a common plan or design in its

7  perpetration."  Order at 42.  Under a conspiracy theory, liability depends on the actual

8  commission of a tort.  *Id*.  Once an underlying tort is established, there must be a showing

9  that the conspiring defendants had actual knowledge that a tort is planned and concur in

10  the scheme with knowledge of its unlawful purpose.  *Id.* at 43.

11          The Court dismissed the civil conspiracy claim in the SAC because none of the

12  underlying tort claims were adequately pleaded against the MindGeek defendants.  *Id.* at

13  42-48 (Plaintiff failed to allege (1) distribution of private sexually explicit materials in

14  violation of Cal. Civ. Code § 1708.85 (Count XII), (2) violation of the UCL and FAL Cal.

15  Bus. & Prof. Code §§ 17200 and 17500 (Count XIV); and (3) violation of California's

16  Trafficking Victims Protection Act under Cal. Civ. Code § 52.5 (Count XV)").  Plaintiff

17  no longer pleads those underlying torts against MindGeek, except for the UCL claim.

18  *Compare* TAC ¶ 441 (*K.A.* FAC ¶ 434).  Now, Plaintiff's predicate torts against

19  MindGeek include count IV, 18 U.S.C. §§ 2252, 2255, count V, 18 U.S.C. §§ 2252a,

20  2255, count VI, Public Disclosure of Private Facts, count VII, Intrusion Into Private

21  Affairs, count VIII, Placing Plaintiff In False Light, and count X, violation of Cal. Bus.

22  & Prof. Code § 17200.  *Id.*

23          The Court already explained the fundamental problem of using the UCL as a

24  predicate tort for civil conspiracy:  the "sweeping definition" of "unlawful" forbidden by

25  the UCL means that "any viable claim against the MindGeek Defendants can become a

26  predicate for an independent violation of the UCL" which creates "a circular theory of

27  liability against all Defendants."  *See* Order at 47.  While MindGeek litigates the claims

28  above, the civil conspiracy claim against Redwood fails for three independent reasons,

1  even if the Court assumes those allegations against MindGeek as true. *See also* Dkt. 450-

2  6 at 36-40 (explaining why the SAC's civil conspiracy claim against Redwood failed).

3      *First*, like the TVPRA conspiracy claim, Plaintiff has failed to allege Redwood's

4  "actual knowledge" of any tort or an "intent to aid in its commission." *See* Section III.C.1,

5  3, *supra; see also* Dkt. 450-6 at 36 (citing *Thinking Liberally Media Inc. v. Orange Juice*

6  *Blog*, No. SACV 10-00139 DOC (RNBx), 2010 WL 11596144, at *5-6 (C.D. Cal. Nov.

7  19, 2010) (rejecting civil conspiracy claim, even though the defendant was receiving the

8  wrongfully redirected website traffic, and allegedly had knowledge of wrongful planned

9  conduct, because there was no evidence of *intent*); *Kidron v. Movie Acquisition Corp.*, 40

10  Cal. App. 4th 1571, 1582 (1995) (explaining that this rule of civil conspiracy is derived

11  from the principle that "a person is generally under no duty to take affirmative action to

12  aid or protect others")).  As set forth in Section III.C.1, 3, *infra*, allegations of both

13  knowledge and intent were woefully missing as to the TVPRA claims.

14      *Second*, the civil conspiracy allegations are indiscriminately asserted against all

15  "Defendants" without specificity as to Redwood.  TAC ¶¶ 440-444 (*K.A.*, FAC ¶¶ 433-

16  437).  Just like the SAC, the TAC states a laundry list of allegedly "wrongful and overt

17  acts." *Id.* ¶ 442 (*K.A.,* FAC ¶ 435).  Yet still, none are tied to Redwood, except for one

18  vague allegation about "financing." *Id.* ¶ 442(r); *K.A.*, FAC ¶ 435(r).

19      *Third*, Plaintiff fails to plead any underlying tort as against *Redwood*.  Critically,

20  Redwood, as a prior lender to MindGeek, did not, and does not, owe any duty to Plaintiff.

21  California law is clear that a "lender does not owe a borrower or third party any duties

22  'beyond those expressed in the loan agreement, excepting those imposed due to special

23  circumstance or a finding that a joint venture exists." *See River Colony Ests. Gen. P'ship*

24  *v. Bayview Fin. Trading Grp., Inc.*, 287 F. Supp. 2d 1213, 1224 (S.D. Cal. 2003); *RTC v.*

25  *BVS Dev., Inc.,* 42 F.3d 1206, 1214 (9th Cir. 1994) ("Only under extraordinary

26  circumstances in which a lender plays an instigating or active role in a development

27  project will a duty to subordinated sellers be imposed.").

28

Just as such extraordinary circumstances were not present in the SAC, nor are they in the TAC. As set forth above, the TAC is largely a recitation of the SAC's allegations, with new conclusory rhetoric about Redwood's level of control, "deviation" from standard loan practices, and involvement in seeking out additional lenders. None of this is sufficient to evidence any "extraordinary" circumstances creating a duty of care on the party of Redwood. There are still no plausible allegations that Redwood participated in any day-to-day management of MindGeek's content, its operations, its choice of content, its moderation, or any of the decisions that led to Plaintiff's videos being posted or taken down. For these reasons, the civil conspiracy claim fails again.

## 2. *Plaintiff's UCL Claim Fails*

The UCL prohibits unlawful, unfair, or fraudulent business acts or practices. Cal. Bus. & Prof. Code § 17200. An "unlawful business activity" includes anything that can properly be called a business practice and that at the same time is forbidden by law. *See* Order at 48 (citing *Walker v. Countrywide Home Loans, Inc*., 98 Cal. App. 4th 1158, 1169 (2002)). "Under the UCL's unlawful prong, violations of other laws are borrowed and made independently actionable under the UCL." *Id.* at 48-49. In the Order, the Court explained that the only applicable prong under the UCL that would be relevant to Redwood was the "unlawful" prong. *Id.* The Court granted Redwood's motion to dismiss the SAC because there was no predicate viable claim against Redwood. For the reasons set forth above, the same is true as to the TAC. Plaintiff's UCL claim therefore fails.[17]

## IV.    <u>REDWOOD PRESERVES ITS REMAINING DISMISSAL ARGUMENTS</u>

Redwood recognizes that the Court has already ruled on certain threshold issues in

---

[17] The FACs' UCL claims are barred by two additional reasons. First, they are barred by the statute of limitations. S*ee* Cal. Bus. & Prof. Code § 17208 (UCL). New Plaintiffs do not plead unlawful conduct by Redwood within four years from the dates on which they filed their complaints in June through August 2024. *See also K.A.,* Dkt. 71-1 at 34 n.15. Second, they are barred because the UCL does not apply extraterritorially. Neither the Non-California nor Non-U.S. Plaintiffs' (A.K., L.T., J.C., K.A., N.L., T.C., W.P., C.S., S.O., X.N., L.S. and N.Y.) injuries, nor Redwood's alleged conduct, occurred in California.

granting Redwood's motion to dismiss the SAC (Dkt. 447) and considering Redwood's supplemental briefing (Dkt. 542). Redwood does not re-brief those issues at length here. But to avoid any argument of waiver—and to preserve Redwood's appellate rights—Redwood expressly reasserts and incorporates by reference its previously briefed arguments regarding: (1) Article III standing/traceability; (2) the non-retroactivity of the ATRA amendment codifying civil liability for "attempts" and "conspir[acies]" (the issue addressed in *Ratha*); and (3) proximate cause.[18]

*First*, Redwood preserves its Rule 12(b)(1) challenge to Article III standing, including Redwood's argument that Plaintiff's injuries are not fairly traceable to Redwood's alleged conduct, as set forth in Redwood's prior motion. Dkt. 447-1 at 14-18. The Court rejected that challenge and held Plaintiff sufficiently alleged traceability for standing purposes at the pleading stage. Order at 14-19. Nevertheless, Redwood still contends that Plaintiff's injuries are not fairly traceable to Redwood's alleged conduct. *Compare* SAC ¶¶ 245-284 *with* TAC ¶¶ 221-269; 283-285.

*Second*, Redwood preserves its position—previously raised in its motion and supplemental briefing—that the ATRA amendment adding civil liability for "attempts" and "conspir[acies]" does not apply retroactively to pre-enactment conduct. Dkt. 447-1 at 20. The Court addressed the vacatur of *Ratha II* and conducted a retroactivity analysis, concluding the ATRA amendment is clarifying and therefore applies retroactively. Order at 26-34. For the reasons set forth in Redwood's motion to dismiss the SAC, Redwood respectfully disagrees. *See* Dkt. 447-1 at 20. The conduct at issue in the TAC still precedes ATRA's amendment and therefore any conspiracy claim should be precluded. *Compare* SAC ¶¶ 168-171 *with* TAC ¶¶ 144-147.

---

[18] Though the Court did not reject Redwood's argument that Plaintiffs W.P., C.S., S.O., X.N., L.S., and N.Y.'s complaints failed because of the lack of extraterritorial reach of the TVPRA or the applicable state laws, it did not address it, either. Redwood nevertheless reasserts those arguments here as to the FACs. *See K.A.*, Dkt. 71-1 at 19-20, 28-29, 35-36.

*Third*, Redwood preserves its argument that Plaintiff must plead (and cannot plausibly plead) proximate causation for § 1595 civil liability on the facts alleged—an issue Redwood raised at length in its prior motion. Dkt. 447-1 at 21–23. While the Court explained that proximate cause is not required to establish Article III traceability, Redwood maintains that proximate causation is required to state a claim under the statute and is not adequately alleged here, for the reasons previously briefed as to the SAC. *Compare* SAC ¶¶ 245, 261, 270 *with* TAC ¶¶ 221, 263, 268, 275.

Redwood raises these arguments solely for preservation and incorporation-by-reference purposes, and focuses this motion on the independent pleading failures that warranted dismissal of the SAC and remain uncured in the TAC.

## V.   **LEAVE TO AMEND SHOULD BE DENIED**

Plaintiff (and Plaintiffs in the Related Cases) had the opportunity to amend her complaint after the Court granted Redwood's motion to dismiss the SAC, but failed to cure the deficiencies identified by the Court. Accordingly, the claims in the TAC should be dismissed with prejudice. *See Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*, 817 F. App'x 380, 385 (9th Cir. 2020) (affirming dismissal where the amended complaint "failed to cure the deficiencies explicitly identified by the district court in its prior order"); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (emphasizing that futility of amendment can, by itself, justify denial of leave to amend).

## VI.   **CONCLUSION**

Redwood respectfully requests that this action, and the Related Cases, be dismissed with prejudice.

Dated: January 30, 2026

|  | WEIL, GOTSHAL & MANGES LLP |
|---|---|
| By: | */s/ James M. Pearl* |
|  | JAMES M. PEARL |
|  | *Attorneys for Defendants* |
|  | *Redwood Capital Management, LLC,* |
|  | *Redwood, Master Fund, Ltd., Redwood* |
|  | *Opportunity Master Fund, Ltd., Manuel* |
|  | *2018, LLC, Ginogerum, LLC, and White-* |
|  | *Hathaway Opportunity Fund, LLC* |

31

1

## **CERTIFICATE OF COMPLIANCE**

2      The undersigned, counsel of record for Redwood Defendants, certifies that this

3   brief contains 10,764 words and 31 pages, which exceeds the word limit of L.R. 11-6.1,

4   but complies with the page limit extension agreed to by the parties in the Joint Stipulation

5   to Request (A) Extension of Page Limit for Stipulating Defendants' Responses to

6   Plaintiff's Third Amended Complaint in *Fleites* and (B) Limited Coordination for

7   Purposes of Responding to Third Amended Complaint in *Fleites* and Amended

8   Complaints in Additional Actions (the "Stipulation") (ECF No. 632).  While the parties

9   stipulated to an extension of thirty-five (35) pages, the Redwood Defendants' brief is only

10  thirty-one (31) pages.

11     As set forth in the Stipulation, the Court has previously granted extensions of the

12  page limits for briefing in connection with Plaintiff's SAC and Complaints in the Related

13  Cases, extending the page limit to forty (40) pages for those motions. *See, e.g.,* Dkts. 405,

14  424, *K.A.,* Dkt. 47.  Good cause exists to extend the page limit, including because the

15  Court previously granted even longer extensions of the page limits for prior briefing,

16  and, in lieu of filing fifteen motions to dismiss in this action and the fourteen Related

17  Cases, the Redwood Defendants stipulated to file one omnibus motion in *Fleites*.

18

19   Dated: January 30, 2026              WEIL, GOTSHAL & MANGES LLP

20                                  By:  */s/ James M. Pearl*
                                         _____
21                                       JAMES M. PEARL
                                         *Attorneys for Defendants*
22                                       *Redwood Capital Management, LLC,*
                                         *Redwood, Master Fund, Ltd., Redwood*
23                                       *Opportunity Master Fund, Ltd., Manuel*
                                         *2018, LLC, Ginogerum, LLC, and White-*
24                                       *Hathaway Opportunity Fund, LLC*

25

26

27

28