# Exhibit A

# COUNT XIII

## (VIOLATION OF 18 U.S.C. §§ 1591, 1595)

## (AGAINST VISA INC.)

445.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

446.   As set forth herein, MindGeek, through its Byzantine network of sham shell entities, owners, alter egos, agents, executives, and investors, is a sex trafficking venture within the meaning of 18 U.S.C. §§ 1591 and 1595.

447.   Defendant Visa participated in the venture with MindGeek through, inter alia, the provision of customized and tailored services arrangements and accommodations included, among other things, the following:

(i)   **Visa agreed to exempt MindGeek from ordinary compliance and enforcement.**   Visa made a de facto exception for MindGeek and allowed it to operate outside its compliance regime, suspended enforcement mechanisms that applied to and would have resulted in termination of other merchants, declined to terminate or suspend MindGeek in response to third-party reports of illegal activity, and instead allowed MindGeek to provide pretextual public reports and self-certifications that were inconsistent with Visa's standards and rules or its practices for other merchants

(ii)   **Visa agreed to permit MindGeek to route payments through MindGeek-controlled third-party processors to conceal illegality**. Visa delegated to those payment processors the putative obligation of monitoring the merchant, *i.e.*, permitting MindGeek to monitor itself which was a deviation from its practice with other high-risk merchants

(iii)   **Visa coordinated with MindGeek to minimize visibility of illegal content on its tubesites so it could continue processing payments.** In response to public reporting or reports from advocates, law

enforcement, regulators and victims, Visa collaborated with MindGeek to scrub the site of illegality and suggested changes to certain words and descriptions connected to illegal content, but not the removal of content or other consequences

(iv)    **Visa agreed to remove restrictions on payments that had clear indicia of trafficking.**   Visa lifted restrictions on high-risk payments with clear indicia of trafficking that would have resulted in suspensions or blocks on other merchant accounts

(v)    **Visa agreed to ban terminology on certain platforms.**   Visa permitted use of banned words on MindGeek's tubesites that it had banned on its premium sites so Visa could continue processing payments for that illegal content without detection; and

(vi)    **Visa coordinated with MindGeek to mitigate public reporting of illegality**.   In response to mounting scrutiny, Visa and MindGeek coordinated to align public messaging, and Visa affirmatively misrepresented MindGeek as compliant and lawful and misled the public about its own enforcement posture.

448.   Visa knowingly used the instrumentalities and channels of foreign commerce to facilitate violations of 18 U.S.C. §§ 1591 and 1595, occurring within the territorial jurisdiction of the United States.

449.   Visa's conduct was in, or affected, interstate and/or foreign commerce.

450.   Visa knowingly benefitted financially from its participation in the MindGeek sex trafficking venture, including, among other things, charging MindGeek fees that were exponentially higher by orders of magnitude than those charged to other merchants.   Collectively, these fees were as much as 1,000% higher than for most merchants and furthered Visa's efforts to become the dominant payment processor for this lucrative emerging online pornography market.

451. Visa knew or recklessly disregarded that the venture was   engaged in acts

that constitute violations of section of 18 U.S.C. § 1591(a)(2) through, among other things:

(a)  Visa's internal due diligence" of MindGeek's business and websites;

(b)  receipt of "concrete complaints from advocacy groups," inclusion on the "'Dirty Dozen' list";

(c)   notice that PayPal terminated its relationship with MindGeek over similar concerns;

(d)  Visa's risk assessments and monitoring the online pornography industry generally and MindGeek specifically;

(e)  Visa's network banks' due diligence;

(f)  Third-party monitoring and reporting concerning MindGeek's violations of Visa's merchant agreements,

(g)  MindGeek's merchant mandatory self-reporting;

(h)  Repeated and escalating public and private warnings from victims, the media, regulators, and law enforcement identifying trafficking on MindGeek's platforms;

(i)  Visa's and its merchant bank's continuous processing of transactions on MindGeek's sites involving known human traffickers, such as MindGeek's partner channel GirlsDoPorn, including after the conviction of GirlsDoPorn's founders on federal sex trafficking charges in 2019;

(j)  Visa's coordination with MindGeek to minimize the visibility of illegal content on MindGeek's sites without removing the content, including by suggesting changes to words and descriptions; and

(k)  Visa's coordination with MindGeek to mitigate the public reporting of illegality and misrepresent that MindGeek's operations were legal and compliant with Visa's standards

452.   As a result of Visa's violations of 18 U.S.C. §§ 1591 and 1595, Plaintiff has suffered substantial damages, including but not limited to, physical,

CASE NO. 2:21-cv-4920

psychological, financial, and reputational harm as well as other damages.

453.   Further, by profiting from these videos and images, Visa has become unjustly enriched at the expense of Plaintiff in an amount to be determined at trial.

454.   Moreover, by reason of Visa's violation of 18 U.S.C. §§ 1591 and 1595, Plaintiff is entitled to recover attorney's fees, costs, and punitive damages.