DREW TULUMELLO (#196484)
drew.tulumello@weil.com
MARK A. PERRY (#212532)
mark.perry@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: 202 682 7000
Fax: 202 857 0940

*Attorneys for Visa Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SERENA FLEITES, | Case No. 2:21-CV-04920-WLH-ADS |
| Plaintiff, | Judicial Officer: Wesley L. Hsu<br>Courtroom: 9B |
| v. | |
| MINDGEEK S.A.R.L.; MG FREESITES, LTD; MINDGEEK USA INCORPORATED; MG PREMIUM LTD.; MG GLOBAL ENTERTAINMENT INC.; 9219-1568 Quebec, Inc. (d/b/a MindGeek); BERND BERGMAIR; FERAS ANTOON; DAVID TASSILLO; COREY URMAN; VISA INC.; COLBECK CAPITAL DOES 1-5; BERGMAIR DOES 1-5, | **REPLY IN SUPPORT OF DEFENDANT VISA INC.'S THIRD MOTION TO DISMISS**<br><br>Date: April 24, 2026<br>Time: 1:30 p.m. |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 3

I.     Plaintiffs Do Not Have Article III Standing ........................................... 3

II.    The TAC Fails to Plausibly Allege That Visa Conspired With the Alleged Trafficking Venture ..................................................................... 5

     A.    The TAC Fails to Adequately Allege That Visa Had Sufficient Knowledge of the Alleged Trafficking Venture ........................... 5

     B.    Plaintiffs' Theory of Exceptional Treatment Fails to Plausibly Establish Either Agreement or Intent ........................... 6

          1.    There Are No Plausible Allegations of Agreement Based on Supposed "Bespoke" Exceptions ........................... 7

          2.    There Are No Plausible Allegations of Intent ................................. 11

     C.    Plaintiffs' New Allegations of Coordination Are Insufficient .................. 13

III.   The TAC Fails to Allege Civil Conspiracy Against Visa .................................. 16

IV.    The TAC Fails to Allege a Viable UCL Claim Against Visa ............................. 17

CONCLUSION .................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................11, 14

*Askins v. U.S. Dep't of Homeland Sec.*,
   899 F.3d 1035 (9th Cir. 2018) ........................................................................6

*B.T. v. G6 Hospitality, LLC*,
   2025 WL 2781131 (S.D. Ohio Sept. 30, 2025) ...............................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................8

*Bernhardt v. Islamic Republic of Iran*,
   47 F.4th 856 (D.C. Cir. 2022)......................................................................12

*Cal. Med. Ass'n v. Aetna Health of Cal. Inc.*,
   14 Cal. 5th 1075 (2023) ................................................................................18

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ..................................................................................17

*Coubaly v. Cargill, Inc.*,
   610 F. Supp. 3d 173 (D.D.C. 2022), *aff'd*, 144 F.4th 343 (D.C. Cir.
   2025) ................................................................................................................3

*Doe 1 v. Deutsche Bank AG*,
   671 F. Supp. 3d 387 (S.D.N.Y. 2023) ..............................................8, 10, 12

*Doe I v. Apple Inc.*,
   2021 WL 5774224 (D.D.C. Nov. 2, 2021), *aff'd*, 96 F.4th 403 (D.C. Cir.
   2024) ................................................................................................................3

*Doe v. Bank of America*,
   2026 WL 380385 (S.D.N.Y. Feb. 11, 2026) .................................................10

*Doe v. Hilton Domestic Operating Co.*,
   810 F. Supp. 3d 194 (D. Mass. 2025)...........................................................10

*Doe v. JRD Partnership*,
2025 WL 2406429 (M.D. Tenn. Aug. 19, 2025)....................................................10

*Eidmann v. Walgreen Co.*,
522 F. Supp. 3d 634 (N.D. Cal. 2021)................................................................17

*F.C. v. Jacobs Sols., Inc.*,
790 F. Supp. 3d 1158 (D. Colo. 2025) ...............................................................8

*G.G. v. Salesforce.com, Inc.*,
76 F.4th 544 (7th Cir. 2023)................................................................................9

*Hiramanek v. Loftus*,
2015 WL 1887090 (N.D. Cal. Apr. 24, 2015)......................................................14

*Ibarra v. Manheim Investments, Inc.*,
775 F.3d 1193 (9th Cir. 2015) ............................................................................16

*Intel Corp. Investment Policy Committee v. Sulyma*,
589 U.S. 178 (2020)...........................................................................................5

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) .............................................................................8

*L.M.H. v. Red Roof Inns*,
2025 WL 961720 (S.D. Ohio Mar. 31, 2025) ......................................................9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)...............................................................................8, 14, 16

*Nat. Res. Def. Council v. Sw. Marine, Inc.*,
236 F.3d 985 (9th Cir. 2000) ..............................................................................4

*Nat'l Audubon Soc'y, Inc. v. Davis*,
307 F.3d 835 (9th Cir. 2002) ..............................................................................4

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) ..............................................................................5

*Perfect 10 Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007) ..............................................................................9

*Raiser v. Kleeger*,
2022 WL 2104494 (C.D. Cal. June 9, 2022).......................................................14

*Ratha v. Phatthana Seafood Co.*,
    35 F.4th 1159 (9th Cir. 2022) ...............................................................................6

*Ratha v. Rubicon Resources, LLC (Ratha II)*,
    168 F.4th 541 (9th Cir. 2026) ............................................................................2, 6

*Score Right Publ'g LLC v. Nat'l Junior Basketball League*,
    2020 WL 2510515 (C.D. Cal. Jan. 7, 2020) .......................................................11

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)................................................................................................4

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) .............................................................................15

*T.S. v. Wyndham Hotels & Resorts, Inc.*,
    2024 WL 3927382 (D. Minn. Aug. 23, 2024).......................................................9

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023)............................................................................................1, 9

*United States v. Bhimani*,
    2021 WL 5179196 (M.D. Pa. Nov. 8, 2021).........................................................9

*United States v. Jewell*,
    532 F.2d 697 (9th Cir. 1976) .................................................................................6

*United States v. Melchor-Lopez*,
    627 F.2d 886 (9th Cir. 1980) ..........................................................................11, 13

*United States v. Menting*,
    166 F.3d 923 (7th Cir. 1999) ...............................................................................11

*Walling v. Beverly Enters.*,
    476 F.2d 393 (9th Cir. 1973) .................................................................................5

*Williams v. Foote*,
    2009 WL 1520029 (C.D. Cal. May 28, 2009)......................................................14

**INTRODUCTION**

Plaintiffs' opposition brief confirms that their conspiracy claims against Visa hinge on the same theory this Court already rejected: That Visa is liable because it "continued a pre-existing business relationship in the face of controversy." Order re Visa Inc.'s Mot. to Dismiss SAC ("*Fleites* MTD Order") at 36, Dkt. No. 614. But "[t]hat is not enough." *Id.*

Recognizing this weakness, Plaintiffs have attempted to reframe the same theory in terms of affirmative conduct, asserting that Visa is liable because it purportedly provided MindGeek a "bespoke" exception from its ordinary rules against unlawful use of its payment network. But that is no different from saying that Visa continued a business relationship despite alleged knowledge of MindGeek's wrongdoing. The purported "accommodations" Plaintiffs identify are in reality just allegations that Visa did not cut MindGeek off after it allegedly received information about suspect content on MindGeek's websites. In other words, Plaintiffs' theory boils back down to the allegation that a merchant with access to Visa's payment network engaged in unlawful conduct. That is "passive nonfeasance," and it is not enough to give rise to a claim of conspiracy. *See Fleites* MTD Order at 35 (citing *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 507 (2023)). The only new allegations of affirmative conduct by Visa conspicuously play little role in Plaintiffs' opposition, undoubtedly because they are not well-pleaded and are insufficient in any event. Plaintiffs are all-in on their "bespoke accommodations" theory, which fails as a matter of law.

Plaintiffs also continue to overlook the separate element of intent, which is essential to their conspiracy claims. Plaintiffs have never articulated any factual basis from which a factfinder could plausibly infer that Visa shared an intent to further MindGeek's allegedly *unlawful* objective. At best, Plaintiffs allege that Visa sought to process large numbers of transactions for MindGeek, but the precedent is well settled that a commercial objective to generally make money is different from the more specific objective of

achieving an illegal end.  It is telling that Plaintiffs simply ignore every single case Visa cited on this point and offer none of their own.  Plaintiffs have therefore implicitly conceded that in order to rule for them, this Court would have to both defy the established body of precedent from other courts *and* break new ground.  The Court should do neither—Plaintiffs have failed to allege shared intent, and their claims can be dismissed on that independent ground.

Plaintiffs place undue emphasis on the Ninth Circuit's recent en banc decision in *Ratha v. Rubicon Resources, LLC (Ratha II)*, 168 F.4th 541 (9th Cir. 2026) ("*Ratha II*").  *See* Opp'n 4, 8–9, 43–46.  That case has little application here.  *Ratha II* affirmed this Court's resolution of the question regarding the retroactive effect of the TVPRA amendments creating civil conspiracy claims; otherwise, *Ratha II* is not relevant to Visa's motion.  There was no conspiracy claim at issue in *Ratha II*, the case was at summary judgment rather than a motion to dismiss, and the Ninth Circuit's one-paragraph discussion of the "participation" element under the TVPRA fully accords with this Court's prior decision.  *Ratha II* does not bear the weight Plaintiffs put on it.

This is now Plaintiffs' fourth attempt to state a claim against Visa.  While Plaintiffs have made some effort—largely through rhetoric and attorney argument—to cure the defects previously identified by the Court, they have failed to do so.  Visa condemns the kind of abhorrent conduct described in the complaints, but Plaintiffs do not plausibly allege that Visa is part of an international conspiracy to facilitate that conduct or profit from it.  Visa is a credit-card processor, and it processes transactions for tens of millions of merchants.  It cannot and should not be held legally accountable for the alleged misconduct of one of those merchants.  The claims against Visa should be dismissed with prejudice.

**ARGUMENT**

## I.    Plaintiffs Do Not Have Article III Standing

Plaintiffs fail to establish Article III standing against Visa because their alleged injuries are not fairly traceable to Visa's conduct.  As the Supreme Court's decision in *Murthy v. Missouri* confirms, it is a "tall order" to establish standing based on "guesswork as to how independent decisionmakers will exercise their judgment."  603 U.S. 43, 57–60 (2024).   The harm Plaintiffs allege is the creation and dissemination of exploitative and harmful content by parties other than Visa.  There is no plausibly alleged chain tracing Plaintiffs' harm to Visa's conduct, and for that reason, Plaintiffs lack standing.

In response, Plaintiffs fall back on their theory that Visa "provided the financial infrastructure to sustain [MindGeek's] operation."  Opp'n 19.  That is simply not true—MindGeek "sustain[s] [its] operation" today without the use of Visa's services on its user-content websites.  *See* TAC ¶ 12.  But even if it were true, providing a financial incentive for unlawful conduct does not establish traceability.  *See Coubaly v. Cargill, Inc.*, 610 F. Supp. 3d 173, 183 (D.D.C. 2022), *aff'd*, 144 F.4th 343 (D.C. Cir. 2025); *Doe I v. Apple Inc.*, 2021 WL 5774224, at *7 (D.D.C. Nov. 2, 2021), *aff'd*, 96 F.4th 403 (D.C. Cir. 2024). Plaintiffs do not respond to any of those authorities, which foreclose their argument that wrongdoing by a merchant who accesses Visa's payment network can be traceable to Visa.

Instead, Plaintiffs argue that *Murthy* did not heighten the traceability standard.  *See* Opp'n 20.  Visa never argued otherwise—it correctly stated that the Supreme Court "clarified the high standard for standing based on third-party conduct," Mot. 9, because that theory requires courts to engage in "guesswork as to how independent decisionmakers will exercise their judgment," *Murthy*, 603 U.S. at 57–58.  Nor did *Murthy* limit its analysis to "temporal defect[s]" in traceability, *see* Opp'n 20—the Court pointed to the platforms' conduct before the alleged interference to show that the platforms had "independent incentives to moderate content," *Murthy*, 603 U.S. at 60.  The

exact same disparity appears here, in the form of MindGeek's continued operation of user-content websites even after Visa withdrew its services from those sites. *See* TAC ¶ 12. Similar facts defeated standing in *Murthy*, and they likewise defeat standing here.[1]

Plaintiffs assert that "Visa's conduct need not be the sole cause of Plaintiffs' injuries," Opp'n 21, which is true as far as it goes, but does not aid Plaintiffs. The problem is not that Visa was only one of multiple causes plausibly traceable to Plaintiffs' injury, *see, e.g. Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 995 (9th Cir. 2000) (injury plausibly traceable where the defendants discharged pollutants into a body of water), but rather that Visa's conduct did not comprise *any* step in the causal chain. Indeed, even in the case Plaintiffs cite, the Ninth Circuit emphasized that while there were many steps in the causal chain, there was no dispute that the underlying harm would not have occurred "*but for*" the challenged conduct. *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002) (emphasis in original). Because Plaintiffs' traffickers would have created and MindGeek would have hosted the unlawful content even without access to Visa's payment network, there is no injury traceable to Visa. MindGeek's continued operation of Pornhub today without Visa's services confirms the implausibility of Plaintiffs' theory.

Plaintiffs lack standing for their claims against Visa, and the TAC and all the parallel complaints may be dismissed on that ground alone.

---

[1] Plaintiffs' reference to the Allow States and Victims to Fight Online Sex Trafficking Act of 2018 ("FOSTA") is misplaced. *See* Opp'n 21 n.11. "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quotation marks omitted)).

## II. The TAC Fails to Plausibly Allege That Visa Conspired With the Alleged Trafficking Venture

Plaintiffs acknowledge they must plausibly allege knowledge, agreement, *and* intent to establish conspiracy. *See* Opp'n 5. They have not adequately alleged any of these elements, let alone all three.

### A. The TAC Fails to Adequately Allege That Visa Had Sufficient Knowledge of the Alleged Trafficking Venture

This Court has correctly recognized that conspiracy requires "actual knowledge of the venture's unlawful purpose." *Fleites* MTD Order at 29. As Visa described in its motion, *see* Mot. 19, Plaintiffs have failed to adequately allege Visa's *actual* knowledge of the alleged trafficking venture. As this Court previously observed, "[t]here are no allegations of internal Visa communications, decision-making or admissions reflecting an understanding of MindGeek's unlawful objectives." *Fleites* MTD Order at 32.

Plaintiffs effectively concede this point, acknowledging that they allege only that Visa "was in receipt of facts" relating to MindGeek's operations. Opp'n 8. That is the precise understanding of "actual knowledge" the Supreme Court rejected in *Intel Corp. Investment Policy Committee v. Sulyma*, 589 U.S. 178, 187 (2020) (actual knowledge is not established simply because a party "receives a disclosure"). And while actual knowledge can be established through "circumstantial evidence," Opp'n 9, that circumstantial evidence cannot consist simply of the "receipt of facts," as that would "turn [the TVPRA standard] into what it is plainly not: a constructive-knowledge requirement," *Intel Corp.*, 589 U.S. at 187.

Plaintiffs respond that they may "allege knowledge generally at the pleading stage," Opp'n 8, and cite two cases concerning the standard for pleading fraud under Rule 9(b), *see Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007); *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973). Rule 9(b) does not apply here, but in any event, the problem is not that Plaintiffs have alleged actual knowledge "generally," but

that they have not pleaded it at all under the standard announced by the Supreme Court. Plaintiffs' invocation of willful blindness is also unavailing. *See* Opp'n 9. Willful blindness requires allegations that a defendant deliberately avoided confirming a high probability of wrongdoing. *See United States v. Jewell*, 532 F.2d 697, 702 (9th Cir. 1976). But Plaintiffs themselves assert that Visa conducted regular diligence and review of its merchants' operations. TAC ¶ 295.

The Ninth Circuit's decision in *Ratha II* does not alter this analysis. *See* Opp'n 8–9. That case arose at summary judgment, not on the pleadings, and it said nothing about the pleading standard for "knowledge" under the TVPRA. *See Ratha II*, 168 F.4th at 559–61. To the extent the case is relevant at all, it confirms that the standard is actual knowledge—the Court emphasized that the defendant was "undisputedly aware of [the plaintiff's] whistleblower report." *Id.* at 561 (quoting *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1177 (9th Cir. 2022)). There are no such well-pleaded allegations here. Nor does Visa ask the Court to "dismiss the allegations [of knowledge] as a trier of fact," Opp'n 9—Visa is simply asking the Court to assess the sufficiency and plausibility of the allegations on their face, just as courts always must do at this stage.[2]

## B.    Plaintiffs' Theory of Exceptional Treatment Fails to Plausibly Establish Either Agreement or Intent

Even setting aside the issue of knowledge, the Court correctly held in its prior order that Plaintiffs failed to adequately allege either agreement or intent, which Plaintiffs agree are essential elements of their claim. *Fleites* MTD Order at 33–39. *Ratha II* says nothing about these elements of conspiracy, and Plaintiffs' fourth effort at pleading these elements again falters.

---

[2] Plaintiffs are incorrect that the Court's prior decision on knowledge is the "law of the case." Opp'n 7. "Once the plaintiff elects to file an amended complaint, the new complaint is the only operative complaint before the district court" and the law of the case does not apply. *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018).

### 1. There Are No Plausible Allegations of Agreement Based on Supposed "Bespoke" Exceptions

Plaintiffs' fundamental theory is that Visa must have had an "agreement" to participate in an unlawful trafficking venture with MindGeek because it supposedly "created a customized MindGeek set of practices and standards that were inconsistent with the parties' contract and the typical treatment of other merchants." Opp'n 9. Plaintiffs identify no other merchants treated differently from MindGeek and do not even identify the "practices and standards" they contend were altered. Nor do they cite a *single case* that has accepted this novel theory of conspiracy liability in any context, much less under the TVPRA. And that is for good reason: It is no different from their previous (rejected) theory that Visa's provision of general-use payment processing services is sufficient to evidence an agreement. Plaintiffs' own description of the allegations confirms the theory is not new. *See id.* at 9, 12–13.

Indeed, all Plaintiffs are really saying is that by *not* cutting MindGeek off from the services it provides to millions of other merchants, Visa was providing a "bespoke" exception for MindGeek. But that is simply another way of saying that Visa allowed MindGeek to use its payment network despite alleged knowledge of MindGeek's wrongdoing. And as the Court previously observed, "continued service—even in the face of awareness" of wrongdoing—is insufficient to establish agreement. *Fleites* MTD Order at 35. Regardless of whether it is framed as nonfeasance or an "exception" to ordinary merchant restrictions, the actual *service* Visa provided to MindGeek was the same *service* that it provided to all other merchants: access to Visa's payment network via a qualified Acquirer bank. The core of Plaintiffs' theory of agreement remains that "Visa continued a pre-existing business relationship in the face of controversy. That is not enough." *Fleites* MTD Order at 36.

Moreover, even if purportedly allowing an "exception" to Visa's ordinary rules were not functionally equivalent to alleging "continued service … in the face of

awareness," Plaintiffs have not plausibly alleged that any such "exception" was the product of an agreement. "[I]f [a defendant's] conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596–97 (1986); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (requiring allegations that "nudge[] their claims across the line from conceivable to plausible"); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008) (holding that "[a]llegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy" are insufficient). It is certainly *at least* as plausible that Visa's purported "exception" for MindGeek was simply the exercise of ordinary business judgment about how different policies apply to different circumstances. *See Doe 1 v. Deutsche Bank AG*, 671 F. Supp. 3d 387, 412 (S.D.N.Y. 2023) (holding that an "agreement" to provide banking services, even with knowledge that they would assist trafficking, "is different from an actual agreement to participate in a sex-trafficking venture"). And given Plaintiffs' inability to identify a single merchant or class of merchants that was treated any differently from MindGeek, that inference is far more plausible than the inference of conspiratorial agreement that Plaintiffs urge.[3]

If Plaintiffs' theory were correct, then virtually all entities doing business with MindGeek would be subject to conspiracy liability under the TVPRA, as virtually all businesses have standards or policies that prohibit unlawful conduct. This theory would implicate a host of third-party providers, including utility companies, internet service providers, cloud storage vendors, cybersecurity firms, accountants, and potentially even lawyers. As courts have observed, "utility companies and gas stations do not participate in a venture with pimps who trafficked victim[s]." *F.C. v. Jacobs Sols., Inc.*, 790 F. Supp.

---

[3] Plaintiffs' effort to distinguish *Kendall* on the facts (*see* Opp'n 14 n.5) both ignores the *legal* proposition for which *Kendall* stands and also overlooks that the only actual services Visa provided here were, in fact, "routine."

3d 1158, 1187–88 (D. Colo. 2025) (citing *T.S. v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 3927382, at *10 (D. Minn. Aug. 23, 2024)). That is doubly true where liability hinges on an allegation of *conspiracy*. And the consequences of liability for a payment network are significant, given that credit card networks "serve as the primary engine of electronic commerce." *Perfect 10 Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007). The Supreme Court in *Twitter* cautioned against a theory of secondary liability under which "ordinary merchants could become liable for any misuse of their goods and services." 598 U.S. at 489. That is precisely what Plaintiffs' position threatens, and they have no answer to that inescapable consequence.

The principal legal basis Plaintiffs offer for their theory is a series of cases arising in the hotel context. *See* Opp'n 13. None of those cases concerned a claim for conspiracy liability under the TVPRA, and nor do any of them address the liability of a "remote intermediary" like a payment network. *See G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 562 (7th Cir. 2023) (stating that "credit card companies were only 'remote intermediaries'"). The passage from *B.T. v. G6 Hospitality, LLC*, 2025 WL 2781131, at *9 (S.D. Ohio Sept. 30, 2025), on which Plaintiffs rely (*see* Opp'n 13) addressed the knowledge element of the TVPRA, not participation. *See G6 Hosp.*, 2025 WL 2781131, at *9. When discussing participation, the court emphasized that the case did not "allege mere observation coupled with a failure to intervene"—which is Plaintiffs' principal theory of liability here. *Id.* The portion of *United States v. Bhimani*, 2021 WL 5179196 (M.D. Pa. Nov. 8, 2021), that Plaintiffs cite (*see* Opp'n 13) concerned a charge for maintaining a drug-involved premise in violation of 21 U.S.C. § 856(a)(2)—not liability under the TVPRA. *See Bhimani*, 2021 WL 5179196, at *10–11. In *L.M.H. v. Red Roof Inns*, 2025 WL 961720 (S.D. Ohio Mar. 31, 2025), the defendant was alleged to have "assist[ed], support[ed], or facilitate[d]" the *actual trafficking* of the plaintiff, rather than (as here) simply providing general-use financial services for another company who allegedly engaged in such conduct. *Id.* at *11. And in each case, the conduct alleged was

specifically tailored to facilitate the *trafficking*, whereas Visa's services are generally available payment network operations that Visa provides to millions of lawful merchants. None of these cases even remotely supports Plaintiffs' theory here.[4]

The only other case Plaintiffs cite (*see* Opp'n 16) in support of their theory is *Doe v. Bank of America*, 2026 WL 380385 (S.D.N.Y. Feb. 11, 2026), but that case does not aid them. The court held that the plaintiff had sufficiently alleged "the provision of *non-routine services* that facilitated Epstein's sex trafficking venture," including allegations that the defendant (1) opened a bank account in the plaintiff's name at the direction of Epstein, (2) gave preferential treatment by providing the plaintiff with "premier services," (3) facilitated the transfer of tens of thousands of dollars in and out of the victim's account despite knowledge that the victim had no ability to earn such money, and (4) intentionally delayed filing suspicious activity reports. 2026 WL 380385, at *8 (emphasis added). By contrast, here, the actual *services* Visa provided to MindGeek—access to its payment network via an Acquirer—are the same services Visa provides to millions of other merchants. Moreover, *Bank of America* did not address conspiracy liability at all, but did cite and endorse its own prior decision in *Doe 1 v. Deutsche Bank AG*, 671 F. Supp. 3d 387 (S.D.N.Y. 2023), which, as discussed below, rejected conspiracy liability on facts far more compelling than those alleged here.

Finally, Plaintiffs refer repeatedly in their opposition to Visa's purported "contract" with MindGeek. *See* Opp'n 9, 11, 13–14, 16. As Visa has explained, there is no such

---

[4] Plaintiffs' other cases are similarly inapposite. For both *Doe v. Hilton Domestic Operating Co.*, 810 F. Supp. 3d 194 (D. Mass. 2025), and *Doe v. JRD Partnership*, 2025 WL 2406429 (M.D. Tenn. Aug. 19, 2025), Plaintiffs errantly cite the courts' discussion of knowledge, overlooking the analysis of participation in which the courts emphasized the direct and ongoing relationship between the defendants and the plaintiffs' actual traffickers. *Hilton Domestic Operating Co.*, 810 F. Supp. 3d at 203 (defendant management and staff provided trafficker with "custom services that facilitated the sex trafficking"); *JRD P'ship*, 2025 WL 2406429, at *6 (emphasizing that the case involved allegations "against the *franchisee* defendants" rather than franchisor hotel companies).

"contract"—Visa's merchant-facing arrangement is with Acquirer banks, not with the underlying merchants.  *See* Mot. 4.  And tellingly, the TAC contains *not a single allegation* of a contract between Visa and MindGeek.  In now asserting otherwise, Plaintiffs misquote their own allegations.  *Compare* Opp'n 11, *with* TAC ¶ 303.  Plaintiffs' effort to smuggle the notion of a direct "contract" between Visa and MindGeek in through their opposition should be rejected.  *See Score Right Publ'g LLC v. Nat'l Junior Basketball League*, 2020 WL 2510515, at *3 (C.D. Cal. Jan. 7, 2020) ("Plaintiff may not amend its pleading via an Opposition brief.").

### 2.    There Are No Plausible Allegations of Intent

Even if the TAC could be read to plausibly allege agreement, however, there are no plausible allegations of intent—a separate, essential element of conspiracy liability.  Plaintiffs urge otherwise by claiming that Visa and MindGeek had a "quid pro quo arrangement" under which Visa received higher fees in exchange for bespoke accommodations in order to "become the primary payment processor in the booming online porn industry."  Opp'n 18–19.  There is no factual basis for this assertion, and it can be rejected on that ground alone.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009).  But even if fully credited, this allegation falls well short.

Intent to earn revenue through payment processing is not the same as intent to further a trafficking venture.  As this Court correctly recognized, "[c]onspiracy . . . requires that the defendant intended to further the conspiracy's *unlawful* objective."  *Fleites* MTD Order at 36 (emphasis added) (citing *United States v. Menting*, 166 F.3d 923, 927 (7th Cir. 1999)).  This Court further explained that "the fact that a company continues to do business with an entity accused of wrongdoing—without more—is not enough to show that it shares the entity's unlawful objective."  *Fleites* MTD Order at 38.  There must instead be an "intention and agreement to accomplish a *specific illegal objective*."  *Id.* at 36 (emphasis added) (quoting *United States v. Melchor-Lopez*, 627 F.2d 886, 891 (9th Cir. 1980).  It therefore is not sufficient for Plaintiffs to allege that Visa

sought to benefit generally from transactions regarding adult content; they must allege that Visa's intent was to further the *unlawful* conduct on MindGeek's platform. And there are no such allegations here.

Numerous cases teach this point. In *Kemper v. Deutsche Bank AG*, for example, the Seventh Circuit upheld dismissal of a conspiracy claim against a bank for processing transactions ultimately used in support of terrorist activity, observing that "[n]one of the allegations suggest that Deutsche Bank cared how its Iranian customers obtained or spent the funds that it processed for them." 911 F.3d 383, 395 (7th Cir. 2018). The D.C. Circuit held similarly in *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 873 (D.C. Cir. 2022), concluding that a bank's desire to "make 'substantial profits'" from its illicit dealings with a terrorist group did not align with the terrorist group's intent. And most directly, in *Deutsche Bank*, the court dismissed conspiracy allegations under the TVPRA against two banks because the plaintiffs failed to allege a shared intent, notwithstanding allegations that the banks "'structur[ed]' cash withdrawals so that those withdrawals would not appear suspicious," "delay[ed] filing suspicious activity reports," and "willfully fail[ed] to file suspicious activity reports," among other things. 671 F. Supp. 3d at 405–06, 412. In terms that mirror almost precisely Plaintiffs' theory here, the court (rejecting a parallel RICO conspiracy claim) observed that "at most, [the plaintiff] alleges that Deutsche Bank acted unlawfully as part of an implicit *quid pro quo*: Deutsche Bank would conceal Epstein's sex-trafficking venture in exchange for Epstein's lucrative fees." *Id.* at 413. Plaintiffs do not address *any* of these cases and cite none of their own.

Accordingly, even if Visa was aware of the presence of (allegedly) unlawful content on MindGeek's website and nonetheless chose to continue to allow MindGeek to use its services, Plaintiffs have not articulated how that gives rise to a plausible inference that Visa intended to further any *unlawful* aspect of MindGeek's business. These allegations establish at most that Visa had a general commercial interest in processing payment transactions—not that Visa shared MindGeek's alleged objective of trafficking

in unlawful content.  There is no plausible explanation for why Visa would want to support any *unlawful* content on MindGeek's website; Visa does not make more money from transactions for unlawful content than it does for lawful content, and Visa of course has no interest in exposing itself to a risk of liability for the sake of one merchant. As the Court has observed, "the very allegations that suggest Visa was alerted to the trafficking problem also reflect that it attempted to mitigate it—albeit unsuccessfully." *Fleites* MTD Order at 38.  For that reason alone, Plaintiffs' conspiracy claim must be dismissed.

### C.   Plaintiffs' New Allegations of Coordination Are Insufficient

In the TAC, Plaintiffs tried to assert new allegations that suggested some level of actual participation by Visa in MindGeek's operations, such as development of new payment solutions, advice regarding search terms and keywords, and coordination of public statements.  *See generally* TAC ¶¶ 303–325.  Visa addressed those allegations in detail in its motion to dismiss.  *See* Mot. 11–19.  In opposition, Plaintiffs have declined to respond to many of Visa's arguments regarding these new assertions and have retreated from some of the allegations entirely, instead focusing on the theory (addressed above) that Visa's supposed "exception" for MindGeek evidences an agreement and intent.  *See* Opp'n 9 (articulating theory as "Visa created a customized MindGeek set of practices and standards that were inconsistent with the parties' contract and the typical treatment of other merchants").  The new allegations, even if considered, are insufficient because they still fail to establish that Visa offered MindGeek unique *services* different from those it offers other merchants and fail to establish that Visa acted with any *intent* to further a "specific illegal objective." *Melchor-Lopez*, 627 F.2d at 891.  But as Plaintiffs' retreat from these allegations confirms, they need not be considered at all, because they are inadequately pleaded.

*First*, Plaintiffs asserted in the TAC that Visa "worked with MindGeek to develop payment structures" to help MindGeek evade scrutiny.  TAC ¶ 308.  In its motion, Visa pointed out that it has long allowed the use of third-party processors, the supposed

"payment structure[]" it helped MindGeek "develop."  *See* Mot. 15–16.  Plaintiffs now admit there is no well-pleaded allegation that "captive payment processors were created just for MindGeek"—thereby conceding that the conclusory allegation in the Complaint has no factual basis—and that the allegation instead is simply that Visa "permitted" MindGeek to use third-party processors despite alleged knowledge of trafficking.  Opp'n 16 n.6.  Again, that is just another way of saying Visa allowed MindGeek to use its generally available payment processing services despite alleged knowledge of wrongdoing, which even if it were true is not sufficient under the law.  *See supra* pp. 6–10.

*Second*, Plaintiffs asserted in the TAC that Visa suggested changes MindGeek should make to its websites regarding certain words or descriptions indicative of unlawful content.  *See* TAC ¶ 310.  Visa argued in its motion that this allegation is without "further factual enhancement" that would render it plausible, *Iqbal*, 556 U.S. at 678, that Visa had "no rational economic motive" to provide this kind of business advice to one of its 175 million merchants in aid of illegal conduct, *see Matsushita*, 475 U.S. at 596–97, and that there are numerous cases in which comparable, conclusory allegations of conspiracy were not credited at the pleading stage, *see Raiser v. Kleeger*, 2022 WL 2104494, at *1 (C.D. Cal. June 9, 2022) (allegations of conspiracy were "simply not plausible"); *Hiramanek v. Loftus*, 2015 WL 1887090, at *2 (N.D. Cal. Apr. 24, 2015) (no conspiracy where allegation was "not supported by any specific statements"); *Williams v. Foote*, 2009 WL 1520029, at *13 (C.D. Cal. May 28, 2009) (failure to "allege specific facts of an agreement" was fatal).  The fact that Plaintiffs did not reveal this allegation until the fourth iteration of their complaint further confirms that it is implausible and factually unsupported.

Plaintiffs do not respond to any of this authority.  Instead, they misconstrue Visa's argument about the lack of a rational economic incentive to provide "business advice" to MindGeek, *see* Opp'n 14, and in doing so effectively concede the point.  By arguing that

providing such advice (whether called "business advice" or something else) is not part of Visa's ordinary services, Plaintiffs confirm that it is not plausible, without further "factual enhancement," that Visa in fact provided such advice.  Recent authority confirms as much:  In *A.A. v. Omnicom Group, Inc.*, the court dismissed TVPRA claims against a corporate parent because many of the complaint's allegations of participation were "made on information and belief without a basis in factual information that makes the inference of culpability plausible."  2026 WL 504904, at *12 (S.D.N.Y. Feb. 24, 2026) (citation modified).  Here, the allegations are even thinner:  There are no facts alleged about the timing of this supposed coordination, the individuals involved, the basis for the allegation, any instance of such coordination, or the actual substance of the advice.  Plaintiffs are correct not to rely on this supposed coordination as an independent theory of conspiracy.

Plaintiffs also cite *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), but that case cuts against them.  Opp'n 17.  There, the Ninth Circuit held that "to be entitled to the presumption of truth," there must be "sufficient allegations of underlying facts" that "plausibly suggest an entitlement to relief," such "that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Id.* at 1216.  The Court held the allegations before it were sufficient, because the complaint included "detailed factual allegations" regarding "numerous incidents" of deliberate indifference and "specific[]" instances of notice to the relevant individual.  *Id.*  Such "detailed factual allegations" are lacking here.

*Third*, Plaintiffs assert that Visa and MindGeek coordinated to align their public messaging.  *See* TAC ¶¶ 311, 314, 316.  Visa previously observed that this allegation was premised on nothing more than the fact that Visa denied any wrongdoing with respect to MindGeek.  *See* Mot. 17.  Plaintiffs reply only by repeating the allegations.  *See* Opp'n 17.  That is no response at all, and it effectively concedes that this allegation is attorney argument, not a well-pleaded fact.  Indeed, a company's denial of wrongdoing is at least

15

equally indicative of independent business conduct as it is of conspiracy. *See Matsushita*, 475 U.S. at 595–97.[5]

\* \* \*

Alleging a conspiracy is no easy task, and for good reason. Conspiracy renders each co-conspirator liable for the acts of the whole enterprise, even if they did not themselves carry out the offending conduct. It is not, as Plaintiffs seem to suggest, a lesser standard of liability than for direct participation. If anything, conspiracy imposes a *higher* bar, because of the dramatic consequences. The elements of knowledge, agreement, and intent are not meant simply to rope in those entities that may have provided the means to undertake unlawful conduct (even knowingly), but rather to capture those who are truly members of the operation, working toward a shared, illegal objective. Visa is not such a member. Plaintiffs have identified no court that has stretched the bounds of conspiracy to capture remote intermediaries like payment processors, and courts in fact have rejected the precise theories of liability Plaintiffs proffer here. There is no basis for the Court to deviate from that precedent. The TVPRA conspiracy claim should again be dismissed.

## III.    The TAC Fails to Allege Civil Conspiracy Against Visa

Plaintiffs do not dispute that if their TVPRA conspiracy claim fails, so too must their common law conspiracy claim. *Compare* Mot. 19–21, *with* Opp'n 51. As Visa explained, though, Plaintiffs' civil conspiracy claim fails for the additional reason that there are no allegations of Visa's knowledge, agreement, or intent to further the predicate torts they identify. *See* Mot. 19–20. Plaintiffs argue in response that conspiracy law renders each participant responsible for all wrongs committed in the course of a

---

[5] Plaintiffs' effort to distinguish *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193 (9th Cir. 2015), on the ground that the case involved removal is unavailing. *See* Opp'n 17 n.9. The relevant point is that an assumption—in any "important area[] of our law"—must have "some reasonable ground underlying [it]." *Ibarra*, 775 F.3d at 1199.

conspiracy. *See* Opp'n 51–52. But that incorrectly assumes the existence of a conspiracy to begin with. What is missing entirely is Visa's *knowledge* of a conspiracy to commit the predicate torts, any *agreement* to commit or help commit the predicate torts, or any *intent* to achieve a specific illegal objective regarding those predicate torts. Whatever might be said about the purported conspiracy to benefit from participation in an illegal TVPRA *venture*, that logic does not extend to the individual torts Plaintiffs identify as the basis for civil conspiracy.[6]

## IV.    The TAC Fails to Allege a Viable UCL Claim Against Visa

Plaintiffs' claim under California's Unfair Competition Law ("UCL") likewise fails. Plaintiffs attempt to argue for liability under each prong of the statute, but are unsuccessful on each. *See* Opp'n 49–50.

*First*, Plaintiffs do not dispute that if their underlying TVPRA claim against Visa fails, then their UCL claim under the "unlawful" prong must fail as well. *See Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021).

*Second*, Plaintiffs' assertion of "unfair" conduct by Visa is a fundamental mismatch with the statute. "[The UCL] governs anti-competitive business practices as well as injuries to consumers, and has as a major purpose the preservation of fair business competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (quotation marks omitted)). Plaintiffs do not identify any injury to consumers or fair competition from Visa's alleged conduct. And it is well settled that courts evaluating claims under the UCL "may not simply impose their own notions of the day as to what is fair or unfair." *Id.* at 182. Plaintiffs' gesture to California's prohibitions against distribution of CSAM or intimate images is misplaced—Visa is not alleged to have

---

[6] Plaintiffs do not dispute that the UCL cannot provide the predicate tort for civil conspiracy. *See* Mot. 20–21.

distributed, created, or hosted any content whatsoever, but even if it had, Plaintiffs still identify no harm to competition or consumers.

*Third*, there are no allegations of fraudulent business practices. Again, the focus of the UCL is on injury to competition or consumers—it does not cover abstract claims of false advertising. Plaintiffs do not even have standing to challenge the statements they identify (for the first time) in their brief as "fraudulent," because standing under the UCL is limited to "to those persons who have suffered injury in fact and lost money or property as a result of the business act or practice at issue." *Cal. Med. Ass'n v. Aetna Health of Cal. Inc.*, 14 Cal. 5th 1075, 1086 (2023) (quotation marks omitted). Plaintiffs offer no explanation of how they (or any other consumer) could have been harmed by the allegedly false statements they contend Visa disseminated. There simply is no fraud in derogation of competition or consumer protection.

## CONCLUSION

The Court should dismiss all claims asserted against Visa (Counts III, X, and XII), with prejudice.

Dated:  April 3, 2026

RESPECTFULLY SUBMITTED,

*/s/ Drew Tulumello*
DREW TULUMELLO (#196484)
drew.tulumello@weil.com
MARK A. PERRY (#212532)
mark.perry@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: 202 682 7000
Fax: 202 857 0940
*Attorneys for Defendant Visa Inc.*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Visa, certifies that this brief is within the twenty (20) page limit stipulated by the parties, ECF No. 653, Feb. 26, 2026.

Dated:  April 3, 2026                    */s/ Drew Tulumello*

                                                    DREW TULUMELLO