David G. Hille (*pro hac vice*)
dhille@whitecase.com
Kevin C. Adam (*pro hac vice*)
kevin.adam@whitecase.com
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY  10020-1095
Telephone:   (212) 819-8357
Facsimile:    (212) 354-8113

Russell J. Gould (SBN 313352)
russell.gould@whitecase.com
WHITE & CASE LLP
555 S. Flower Street, Suite 2700
Los Angeles, CA  90071-2433
Telephone:   (213) 620-7700
Facsimile:    (213) 452-2329

Attorneys for the CB Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SERENA FLEITES,<br><br>             Plaintiff,<br><br>    v.<br><br>MINDGEEK S.A.R.L., et al.,<br><br>             Defendants. | Case No. 2:21-cv-4920-WLH-ADS<br><br>Hon. Wesley L. Hsu<br><br>**DEFENDANTS COLBECK CAPITAL MANAGEMENT, LLC; CB MEDIA VENTURES DD, LLC; CB AGENCY SERVICES, LLC; AND CB PARTICIPATIONS SPV, LLC'S REPLY IN SUPPORT OF OMNIBUS MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Hearing:    April 24, 2026<br>Time:        1:30 p.m.<br>Courtroom: 9B |

# **TABLE OF CONTENTS**

**Page(s)**

I.    PRELIMINARY STATEMENT ..................................................................... 1

II.   THE COURT SHOULD GRANT THE MOTION AND DISMISS THE CLAIMS AGAINST THE CB DEFENDANTS WITH PREJUDICE .............................................................................................. 2

    A.    Plaintiffs' Amendments Fail to Cure Their Claims' Defects ................ 2

    B.    *Ratha II* Does Not Save Plaintiffs' Beneficiary-Liability Claim .......... 6

    C.    As the Court Held, Plaintiffs Do Not Adequately Allege Three Elements of a TVPRA Conspiracy Against the CB Defendants ......... 10

    D.    Plaintiffs Do Not Rescue Their California Civil Conspiracy Claim ...................................................................................................... 17

    E.    Plaintiffs Ignore Their Lack of Statutory Standing and Inadequate Allegations for a California Unfair Competition Law Claim ............................................................................................... 17

    F.    Plaintiffs Fail to Save Their Untimely California Claims ................... 18

III.  CONCLUSION ......................................................................................... 20

- i -

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.A. v. Omnicom Grp., Inc.*,
No. 1:25-cv-03389, 2026 WL 504904 (S.D.N.Y. Feb. 24, 2026).................. 8, 14

*Acevedo v. eXp Realty, LLC*,
713 F. Supp. 3d 740 (C.D. Cal. 2024)................................................................ 8

*Aetna Cas. & Sur. Co. v. Leahey Const. Co.*,
219 F.3d 519 (6th Cir. 2000)................................................................... 11, 17

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
744 F.3d 595 (9th Cir. 2014)............................................................................ 5

*Akhmad v. Bumble Bee Foods, LLC*,
No. 3:25-cv-00583, 2025 WL 3158655 (S.D. Cal. Nov. 12, 2025)..................... 8

*Aryeh v. Canon Bus. Sols., Inc.*,
55 Cal. 4th 1185 (2013).................................................................................. 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................... 3, 12

*Augustus v. Mercedes-Benz Fin. Servs. USA LLC*,
No. 2:25-cv-00533, 2025 WL 2019808 (C.D. Cal. May 12, 2025) (Hsu, J.) ..... 17

*B.J. v. G6 Hosp., LLC*,
No. 3:22-cv-03765, 2023 WL 3569979 (N.D. Cal. May 19, 2023)..................... 9

*Barrio v. Cnty. of San Bernardino*,
No. 5:17-cv-02470, 2020 WL 4037169 (C.D. Cal. Mar. 26, 2020).................... 19

*Becerra v. Dr Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019)........................................................................ 18

*Bowoto v. Chevron Texaco Corp.*,
312 F. Supp. 2d 1229 (N.D. Cal. 2004)........................................................... 11

*Doe # 1 v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021)...................................................................... 7, 9

*Doe v. Bank of Am., N.A.*,
   2026 WL 380385 (S.D.N.Y. Feb. 11, 2026) ........................................................ 8

*Doe v. Deutsche Bank Aktiengesellschaft*,
   671 F. Supp. 3d 387 (S.D.N.Y. 2023) ............................................................... 15

*Doe v. MindGeek USA Inc.*,
   558 F. Supp. 3d 828 (C.D. Cal. 2021) ................................................................. 8

*Doe v. Wyndham Hotels & Resorts, Inc.*,
   No. 1:24-cv-00285, 2024 WL 5371983 (W.D. Tex. Nov. 21, 2024) ................... 9

*Doe v. Wyndham Hotels & Resorts*,
   No. 8:23-cv-01554, 2024 WL 2104596 (C.D. Cal. Feb. 28, 2024) ..................... 8

*Does 1-6 v. Reddit, Inc.*,
   51 F.4th 1137 (9th Cir. 2022) .............................................................................. 8

*Edmondson v. Raniere*,
   751 F. Supp. 3d 136 (E.D.N.Y. 2024) ................................................................. 9

*F.C. v. Jacob Sols. Inc.*,
   790 F. Supp. 3d 1158 (D. Colo. June 26, 2025) ........................................... 14, 15

*Famm Steel, Inc. v. Sovereign Bank*,
   571 F.3d 93 (1st Cir. 2009) ............................................................................... 11

*G.G. v. Salesforce.com, Inc.*,
   76 F.4th 544 (7th Cir. 2023) ............................................................................... 8

*Geiss v. Weinstein Co. Holdings LLC*,
   383 F. Supp. 3d 156 (S.D.N.Y. 2019) ................................................................. 8

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) .......................................................................................... 10

*J.C. v. Choice Hotels Int'l, Inc.*,
   No. 3:20-cv-00155, 2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) ..................... 8

*J.M. v. Choice Hotels Int'l, Inc.*,
   No. 2:22-cv-00672, 2022 WL 10626493 (E.D. Cal. Oct. 18, 2022) .................... 9

*Knox v. Davis*,
   260 F.3d 1009 (9th Cir. 2001) .......................................................................... 19

CB DEFENDANTS' REPLY IN SUPPORT OF OMNIBUS
MOTION TO DISMISS THIRD AMENDED COMPLAINT

*Krivo Indus. Supply Co. v. Nat'l Distillers & Chem. Corp.*,
    483 F.2d 1098 (5th Cir. 1973) .................................................................................. 11

*Lemus v. Rite Aid Corp.*,
    613 F. Supp. 3d 1269 (C.D. Cal. 2022) .................................................................. 12

*Lenz v. Universal Music Corp.*,
    815 F.3d 1145 (9th Cir. 2016) ................................................................................ 10

*Morales v. City & Cnty of San Francisco*,
    603 F. Supp. 3d 841 (N.D. Cal. 2022) ..................................................................... 5

*Morris v. Sun Pharma Glob.*,
    No. 2:20-cv-10441, 2021 WL 3914235 (C.D. Cal. Apr. 22, 2021) ..................... 20

*Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*,
    198 F.3d 823 (11th Cir. 1999) ............................................................................... 16

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ....................................................................................... 5

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
    513 F.3d 1038 (9th Cir. 2008) ............................................................................... 12

*PAE Gov't Servs., Inc. v. MPRI, Inc.*,
    514 F.3d 856 (9th Cir. 2007) ................................................................................... 4

*Pinkerton v. United States*,
    328 U.S. 640 (1946) .............................................................................................. 14

*Ratha v. Rubicon Resources, LLC*,
    168 F.4th 541 (9th Cir. 2026) (*Ratha II*) ..................................................... passim

*Ratha v. Phatthana Seafood Co.*,
    35 F.4th 1159 (9th Cir. 2022) (*Ratha I*) ......................................................... 9, 10

*Reddy v. Litton Indus., Inc.*,
    912 F.2d 291 (9th Cir. 1990) ................................................................................... 4

*RTC v. BVS Dev., Inc.*,
    42 F.3d 1206 (9th Cir. 1994) ................................................................................. 17

*Ryanair DAC v. Booking Holdings Inc.*,
    636 F. Supp. 3d 490 (D. Del. 2022) ...................................................................... 14

- iv -

*S.J. v. Choice Hotels Int'l, Inc.*,
   473 F. Supp. 3d 147 (E.D.N.Y. 2020) ..................................................................... 9

*Sanchez v. Elevance Health*,
   No. 2:23-cv-05906, 2024 U.S. Dist. LEXIS 68387 (C.D. Cal. Apr. 12, 2024)
   (Hsu, J.) ................................................................................................................... 5

*Schneidereit v. Tr. Scott & Brian, Inc.*,
   No. 2:11-cv-06919, 2012 WL 12884908 (C.D. Cal. Apr. 27, 2012) .................... 5

*Shirley v. Univ. Idaho*,
   800 F.3d 1193 (9th Cir. 2015) ............................................................................... 4

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
   782 F. Supp. 2d 1059 (E.D. Cal. 2011) ................................................................. 5

*T.M. v. G6 Hosp. LLC*,
   No. 1:23-cv-02598, 2024 WL 4457563 (N.D. Ga. Sept. 23, 2024) ..................... 12

*United States ex rel. Lee v. Corinthian Colls.*,
   655 F.3d 984 (9th Cir. 2011) ................................................................................. 4

*United States v. Jewell*,
   532 F.2d 697 (9th Cir. 1976) ............................................................................... 10

*United States v. Lothian*,
   976 F.2d 1257 (9th Cir. 1992) ....................................................................... 16, 19

*United States v. Matta-Ballesteros*,
   71 F.3d 754 (9th Cir. 1995) ................................................................................. 16

*United States v. Nicholson*,
   677 F.2d 706 (9th Cir. 1982) ............................................................................... 10

*United States v. Ramos-Atondo*,
   732 F.3d 1113 (9th Cir. 2013) ............................................................................. 10

*United States v. Sarno*,
   73 F.3d 1470 (9th Cir. 1995) ............................................................................... 16

*Viera v. Bank of Am. N.A.*,
   No. 2:15-cv-05590, 2015 WL 12752882 (C.D. Cal. Oct. 28, 2015) ................... 19

*Woodward v. Metro Bank of Dallas*,
   522 F.2d 84 (5th Cir. 1975) ................................................................................. 11

- v -

**FEDERAL RULE**

Fed. R. Civ. P. 9(b) ........................................................................................... 5, 18

## I.  PRELIMINARY STATEMENT

Plaintiffs' Opposition asks the Court to ignore that their claims against the CB Defendants largely rest on allegations the Court has already rejected.[1]  Plaintiffs also cannot refute that almost all "new" allegations simply transpose allegations previously attributed to the dismissed Individual Defendants—often word for word—onto the CB Defendants.  The limited other "new" allegations are so inadequately pled and so conclusory and implausible as to be frivolous.  *See* Mot. Mem. 7:1–10:6.  There is nothing to justify these claims moving forward against interest-receiving lenders whose agreements barred the alleged wrongful conduct on which the claims are based.

Plaintiffs rely heavily on the Ninth Circuit's en banc opinion in *Ratha v. Rubicon Resources*, 168 F.4th 541 (9th Cir. 2026) (*Ratha II*), which involved the plaintiffs' appeal of summary judgment on their TVPRA beneficiary-liability claim (not conspiracy) for alleged human trafficking.  Plaintiffs here argue that the few pages of the opinion unrelated to retroactivity and specific to the evidence in that case (1) clarified the standard of review on a motion to dismiss and (2) conflict with the Court's Order on beneficiary liability.  Not so.  The Ninth Circuit did not displace longstanding pleading standards that this Court accurately applied.  Nor did the opinion's definition of "participation" change what constitutes a sex-trafficking venture with which such participation must occur—there the defendant participated ***with the direct trafficker***.  *Ratha II* similarly does not impact the "knowledge" element—there the defendant had specific knowledge of the plaintiffs' trafficking through much more direct involvement and sources of knowledge than are alleged here.

*Ratha II*, of course, does not affect the other claims Plaintiffs assert against the CB Defendants, which claims were not at issue in *Ratha II* and remain inadequately pled here.  Plaintiffs state that the Court's holdings in previous orders are law of the

---

[1] In this reply to Plaintiffs' opposition brief (Dkt. No. 656-1 ("Opposition")), defined terms have the same meaning as stated in the CB Defendants' memorandum in support of their motion to dismiss (Dkt. No. 637-1 ("Motion" or "Mot. Mem.")).

CB DEFENDANTS' REPLY IN SUPPORT OF OMNIBUS
MOTION TO DISMISS THIRD AMENDED COMPLAINT

case and not to be revisited (Opp'n 7:7–17), yet they ignore the Order, seeking to relitigate it without even acknowledging how the Court has ruled.  Plaintiffs indeed cannot overcome the Court's ruling that they failed to plead three elements of their TVPRA conspiracy claim—knowledge, agreement, and intent to perpetuate and financially benefit from CSAM.

Plaintiffs' civil conspiracy and UCL claims under California law suffer the same fate for these and more reasons.  Plaintiffs also do not meaningfully refute that the claims are untimely because the CB Defendants ceased participating in all loans to MindGeek in 2018—well before the limitations periods lapsed.

Having repeatedly failed to plead their claims, Plaintiffs cannot use manufactured fact issues to argue for discovery to prevent dismissal.  Plaintiffs do not even attempt to suggest how they could cure the inherent defects in their claims against the CB Defendants.  At their core, Plaintiffs seek to impose liability on the CB Defendants because they participated—with dozens of other institutional lenders—in loans to MindGeek Borrowers.  The Court should dismiss the claims with prejudice.

## II.   THE COURT SHOULD GRANT THE MOTION AND DISMISS THE CLAIMS AGAINST THE CB DEFENDANTS WITH PREJUDICE

### A.   Plaintiffs' Amendments Fail to Cure Their Claims' Defects

As shown in the CB Defendants' Motion, the Amended Complaints simply rehash what the Court already found insufficient or add contradictory, conclusory, or irrelevant allegations. Mot. Mem. 5:8–10:8.  Plaintiffs do not remedy these defects.

***First***, Plaintiffs argue that *Ratha II* changed or clarified the standard of review on a motion to dismiss for TVPRA claims.  Opp'n 2:18–28, 5:6–9, 12:19–23, 35:8–11, 44:10–12.  It did not.  To begin with, *Ratha II* involved summary judgment, not a motion to dismiss.  That the district court did not consider material fact disputes, view ***evidence*** in the light most favorable to the plaintiffs, or draw justifiable inferences in their favor is not applicable. *Ratha II*, 168 F.4th at 547.

- 2 -

Neither the Court in its Order nor the CB Defendants "ignore the facts alleged and reject or draw the narrowest possible inferences from those accepted facts." Opp'n 2:20–22. *Ratha II* does not change that the Court "accept[s] all allegations of material fact as true, and draw[s] all reasonable inferences from well-pleaded factual allegations," but need not "accept as true legal conclusions couched as factual allegations." Order 20:7–12 (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (courts need not credit "naked assertions devoid of further factual enhancement" or draw implausible inferences). Under this pleading standard, the Court held that Plaintiffs' allegations in the SAC were conclusory, contradictory, and implausible—and inadequate to state a claim against the CB Defendants. *See id.* 23:25–24:1, 36:3–4, 36:21, 38:17–19. As shown in the Motion, Plaintiffs retained those same allegations and simply added a handful of contradictory and conclusory amendments that do not change the result. Mot. Mem. 5:8–10:8, 10:16–15:9. *Ratha II* neither alters the pleading standard nor permits Plaintiffs to inadequately plead their TVPRA claims.

***Second***, Plaintiffs try to excuse their inconsistent and contradictory pleading in two ways. They first argue that allegations in the Amended Complaints are actually consistent with previous allegations. And second, they claim that they may plead inconsistently in successive pleadings. Neither argument helps Plaintiffs.

For the first argument, Plaintiffs identify only two of the many contradictory allegations detailed in the Motion. *See* Mot. Mem. 7:1–9:17; Opp'n 36:27–38:10. Plaintiffs argue that their current allegation that the CB Defendants effectively owned the MindGeek Borrowers is consistent with their prior allegation that the Individual Defendants owned the MindGeek Entities "on paper." Opp'n 36:27–37:1 (citing no supporting allegation). The Court, however, already held that Plaintiffs cannot adequately allege that the CB Defendants owned, directed, or controlled MindGeek because that "would contradict Plaintiff's own pleadings elsewhere in her SAC that impute that kind of control to the Individual Defendants." Mot. Mem. 10:25–11:2 (quoting Order 23:27–24:4 (quoting SAC ¶ 149)). Plaintiffs indeed alleged extensively

- 3 -

that the Individual Defendants were the actual owners (and controllers) of MindGeek. Mot. Mem. 7:7–8:23.   Plaintiffs also emphasized in their personal-jurisdiction arguments that the Individual Defendants were *the* owners and alter egos of the MindGeek Entities.  Dkt. No. 480-1 (Pls.' P.J. Opp'n) 63:6–75:25.  And the Bergmair testimony Plaintiffs cite consists only of him stating that, ███████████████████ ██████████████████████████████—which did *not* include the CB Defendants because they had ceased all loans years before—████████████████████████████ ██████████, to which the CB Defendants were not participants.  *Compare* Opp'n 37:7–9, *with* Dkt. No. 444-5 (Bergmair Dep. Tr.) 218:7–220:1, 222:1–227:12.

Plaintiffs also argue that they previously alleged that the CB Defendants ████████████████████████████████████.  Opp'n 37:21–25. But none of the cited SAC paragraphs supports that.  SAC ¶ 271 (alleging "the syndicate" received responses; no allegation of approval or direction), ¶¶ 278–80 (referring only to the "Redwood" syndicate and 2019–2020 period; also no allegation of approval or direction).  In the SAC, Plaintiffs indeed directly attributed those responses to the Individual Defendants.  Mot. Mem. 7:17–21 (citing SAC ¶ 205).

Thus, as the CB Defendants showed in their Motion, these two allegations—and the others detailed in the Motion that Plaintiffs do not address—are contradictory.

Recognizing they cannot justify their contradictory pleading, Plaintiffs argue that they can plead contradictions (or inconsistencies) in successive complaints.  *See* Opp'n 38:11–16.  Plaintiffs rely on *PAE Gov't Servs. v. MPRI*, 514 F.3d 856, 860 (9th Cir. 2007), which involved a motion to strike allegations for "sham pleading."[2]  But since *PAE*, the Ninth Circuit has held that a plaintiff may not amend to contradict the allegations in a prior complaint.  Mot. Mem. 11:3–10 (quoting *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011); citing *Reddy v. Litton Indus.*,

---

[2] Plaintiffs also cite *Shirley v. University of Idaho*, 800 F.3d 1193 (9th Cir. 2015), but that case unremarkably held, in a one-page summary opinion, that there was no contradiction between the earlier and later complaints.

912 F.2d 291, 296 (9th Cir. 1990); *Airs Aromatics v. Victoria's Secret Stores*, 744 F.3d 595, 600 (9th Cir. 2014)).  And regardless of whether Plaintiffs are precluded from even pleading those contradictions, at a minimum, Plaintiffs do not dispute that the Court, as it has before in this case and others, may consider contradictions (or inconsistencies) in successive pleadings to determine allegations' implausibility.  Order 23:27–24:4; Mot. Mem. 11:11–17; *Sanchez v. Elevance Health*, 2024 U.S. Dist. LEXIS 68387, at *12–13 (C.D. Cal. Apr. 12, 2024) (Hsu, J.).[3]  The Court can disregard, or at least find implausible, Plaintiffs' contradictory allegations.

*Third*, Plaintiffs do not meaningfully refute the futility of the only other amendments: unsupported conclusions that (1) the Grant Thornton Memorandum, which stated ████████████████████████, was fraudulent and somehow prepared by the CB Defendants and Redwood Defendants, not Grant Thornton, and used to defraud other lenders and (2) the CB Defendants knew from the outset that the MindGeek Borrowers were in breach of the Loan Agreements' representations and covenants.  *See* Mot. Mem. 9:18–10:6.

For the Grant Thornton Memorandum, Plaintiffs argue that they need not plead "knowledge" with particularity under Rule 9(b).  Opp'n 30:16–28, 36:8–21.  Plaintiffs, however, must "state the factual basis for the[ir] belief," which they fail to do. *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  Plaintiffs fail to address their lack of particular allegations for all other aspects of the alleged fraud, including to support that a CB Defendant (or a Redwood Defendant) prepared or participated in preparing the Grant Thornton Memorandum and then used it to defraud ████████ ████████.  Mot. Mem. 11:20–13:2.  Nor is there any explanation for how or why Grant Thornton would allow this.  The allegations are facially implausible.

---

[3] *See also Schneidereit v. Tr. Scott & Brian*, 2012 WL 12884908, at *1 n.5 (C.D. Cal. Apr. 27, 2012); *Morales v. San Francisco*, 603 F. Supp. 3d 841, 848 (N.D. Cal. 2022) (citing *Airs Aromatics*; finding allegations implausible based on prior pleading); *Stanislaus Food Prods. Co. v. USS-POSCO*, 782 F. Supp. 2d 1059, 1075 (E.D. Cal. 2011) (noting the court considers prior allegations for plausibility).

Plaintiffs also fail to refute that no fact allegation supports their conclusion that the CB Defendants knew the MindGeek Borrowers were in breach. Mot. Mem. 9:20–23, 11:20–24.

### B.   *Ratha II* Does Not Save Plaintiffs' Beneficiary-Liability Claim

Plaintiffs argue that *Ratha II* expanded beneficiary liability under the TVPRA and rescues their deficient claim. Opp'n 43:13–47:18, 48:21–26. Plaintiffs, however, misstate the opinion, which is fully consistent with the Court's Order. *Ratha II* does not change that Plaintiffs fail to adequately allege that the CB Defendants (1) participated in a venture with a sex trafficker or (2) had sufficient knowledge that the purported venture was engaged in sex trafficking of Plaintiffs. Mot. Mem. 15:17–21.

*No participation in a venture.* Plaintiffs state that the Ninth Circuit clarified the acts sufficient to constitute "participation" in a venture engaged in sex trafficking. Opp'n 43:15–24. The Ninth Circuit defined the act of participating as "'to take part in or share with others in common or in association,'" and "'one can participate in a venture without operating or managing it.'" *Id.* 43:20–24 (quoting *Ratha II*, 168 F.4th at 560). That is correct, but it is not new. And more importantly, it is not material to the Court's holding or the CB Defendants' argument in their Motion. The beneficiary-liability claim fails because Plaintiffs do not allege that the CB Defendants participated in a venture with a sex trafficker. The CB Defendants had no relationship, much less a continuous business relationship, with Plaintiffs' traffickers—the persons who took and uploaded videos of Plaintiffs. *See* Mot. Mem. 15:24–16:13 (citing Order 21:8–27, 22:1–3 (citing Dkt. No. 166 (FAC Visa Order) at 21)).

Plaintiffs argue that *Ratha II* stands for the principle that there need be no relationship with the direct trafficker for a defendant to be liable for beneficiary liability. Opp'n 44:1–12. The Ninth Circuit did not address this issue, and it is not supported by the opinion. Plaintiffs distort *Ratha II* by arguing that the Ninth Circuit's definition of *participation* somehow changed the interpretation of a *venture* engaged in trafficking.

- 6 -

A review of *Ratha II*'s facts confirms Plaintiffs' error. The plaintiffs in *Ratha* are villagers from Cambodia who alleged that the defendants, including Thailand-based seafood processor Phatthana Seafood Company and U.S.-based seafood distributor Rubicon Resources LLC, violated the TVPRA through forced labor and human trafficking. *Ratha II*, 168 F.4th at 547–48. Phatthana owns the factory at which the plaintiffs contend they were forced to work and is therefore the direct trafficker of plaintiffs. *Id.* at 547. Phatthana's owner founded Rubicon, the appellant, to distribute seafood from that factory. *Id.* Rubicon employees coordinated Phatthana's sales and marketing, visited and conducted audits of Phatthana's factories, and arranged for importing and shipping Phatthana's products. *Id.* (quoting *Ratha I*, 35 F.4th at 1166). In its marketing materials, Rubicon claimed "to control every aspect of production" regarding Phatthana. *Id.* Under these facts, the Ninth Circuit found that requiring Rubicon to have taken "some action to operate or manage the venture" was "too high a bar," and participation should instead be given its plain meaning: "the act of taking part in" the human-trafficking venture. *Id.* at 560.

Far from supporting that "the act of taking part in something" need not be with a sex trafficker, only the opposite implication could be drawn. The Ninth Circuit reversed summary judgment because there was evidence that Rubicon participated with the ***direct trafficker***, its affiliate Phatthana, with which it shared ownership.

Recognizing that their argument stretches *Ratha II* beyond its bounds, Plaintiffs cite other cases to try to make their point. Plaintiffs argue misleadingly that the Ninth Circuit cited *Doe # 1 v. Red Roof Inns*, 21 F.4th 714 (11th Cir. 2021), "favorably," when in fact the Ninth Circuit simply cited the case once in a string cite among other authority to support the dictionary definition of participate. Opp'n 45:7–11; *Ratha II*, 168 F.4th at 560. This Court distinguished *Red Roof* to determine whether participation must be with the trafficker or, as Plaintiffs contended, with another alleged beneficiary. Order 22:22–28, 23:21–23, 23:10–15; Mot. Mem. 16:14–25. It was not, as Plaintiffs contend, in the context of whether "participation" is equivalent to "control." Opp'n 45:11–27.

The Court's ruling that a defendant must participate, or at least have a continuous business relationship, with the actual trafficker is consistent with *Ratha II*, where the defendant had that direct relationship. It is also consistent with Judge Carney's previous order and many other cases.[4]  Like *Ratha II*, the other cases Plaintiffs cite, most of which were covered in previous briefing, do not warrant a contrary conclusion.[5]

Plaintiffs also repeat their argument that the venture need only be a "commercial" venture rather than a sex-trafficking venture. Opp'n 46:2–15. This Court, Judge Carney, and other courts have rejected this argument.[6]  And in *Ratha II*, the Ninth Circuit based its ruling on the fact that "[a] reasonable jury could find that Rubicon participated in a **human trafficking** venture." *Ratha II*, 168 F.4th at 560 (emphasis added). Plaintiffs' argument, which concludes that ordinary creditor functions equate

---

[4] FAC Visa Order 21:17–22:3; *Acevedo v. eXp Realty*, 713 F. Supp. 3d 740, 783 (C.D. Cal. 2024) ("a plaintiff must allege the defendant had a direct association or a business relationship with their trafficker"); *Doe v. MindGeek,* 558 F. Supp. 3d 828, 837 (C.D. Cal. 2021) (plaintiff must "allege at least a showing of a continuous business relationship between the trafficker and Defendants").

[5] *G.G. v. Salesforce.com*, 76 F.4th 544, 561–62 (7th Cir. 2023) ("Salesforce had a direct and long-term contractual relationship with sex-trafficker Backpage"); *J.C. v. Choice Hotels*, 2020 WL 6318707, at *7 (N.D. Cal. Oct. 28, 2020) (defendants "directly 'participated in a venture' by providing lodging to [the plaintiffs' direct traffickers]" where the trafficking took place); *Akhmad v. Bumble Bee Foods*, 2025 WL 3158655, at *8 (S.D. Cal. Nov. 12, 2025) ("continuous business relationship" with trafficker, and oversight and involvement in labor conditions); *Doe v. Bank of Am.*, 2026 WL 380385, at *7 (S.D.N.Y. Feb. 11, 2026) (defendant bank provided "non-routine services" directly to alleged trafficker despite suspicious transactions; dismissing claim against other bank who did not do so); *A.A. v. Omnicom*, 2026 WL 504904, at **1, 11–12 (S.D.N.Y. Feb. 24, 2026) (public-relations and lobbyist defendants were "integral part of the [human trafficking] venture" who were hired to, and did, "whitewash[]" human-trafficking conditions "in support of the World Cup Labor Venture"—arranging journalists' "sham" tours of workers' housing and refuting public articles of trafficking, among other acts).

[6] Order 22:1–3; FAC Visa Order 21:9–22; *Does 1-6 v. Reddit*, 51 F.4th 1137, 1143 (9th Cir. 2022) ("section 1595 beneficiary claim [requires] the defendant's participation in and benefit from the trafficking scheme"); *Doe v. Wyndham Hotels & Resorts*, 2024 WL 2104596, at *3 (C.D. Cal. Feb. 28, 2024) ("Defendants [must have] knowingly participated in a sex trafficking venture."); *Geiss v. Weinstein Co. Holdings*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) ("participation in a sex-trafficking venture").

to "customized" "trafficking-specific" support, would make any entity in business with MindGeek for any purpose a participant in a venture engaged in sex trafficking.[7]

The Court's decision on beneficiary liability is consistent with *Ratha II*.  The CB Defendants did not participate in a sex-trafficking venture.

***No knowledge of sex trafficking.***   Plaintiffs also do not overcome their failure to plead that the CB Defendants had "actual or constructive knowledge" of a venture engaged in sex trafficking.[8]  *Ratha II* did not hold that knowledge need not be of the specific venture that trafficked the plaintiffs.  It was law of the case that Rubicon was "undisputably aware" of the human trafficking (of "most of the 1,000 workers") because of a plaintiff's whistleblower report detailing the working conditions at the factory. *Ratha II*, 168 F.4th at 548; *Ratha I*, 35 F.4th at 1166; *Ratha*, No. 2:16-cv-04271 (C.D. Cal.), Dkt. No. 198.  In addition, Walmart had specifically told Rubicon and rejected a shipment of shrimp because of concerns about the working conditions at the factory.

---

[7] Plaintiffs, notably, do not allege that the CB Defendants participated in a "commercial" venture.  *See* TAC ¶¶ 356–57 (alleging participation in a sex-trafficking venture); *Red Roof*, 21 F.4th at 726–27 (refusing to allow claim based on "commercial ventures" because complaints alleged participation in "sex trafficking ventures"); *B.J. v. G6 Hosp.*, 2023 WL 3569979, at *5 (N.D. Cal. May 19, 2023) (same).

[8] *See* Mot. Mem. 17:6–23; Order 24:26–28 n.6 ("given the lack of any connection to Plaintiff's video or Plaintiff's trafficker, Plaintiff's claim that the Colbeck and Redwood Defendants had knowledge or constructive knowledge of Plaintiff's trafficking venture also fails"); FAC Visa Order 21–22 ("[no] knowledge—constructive or otherwise—of Plaintiff[s], [their] videos, or [their] age in the videos"); *see also S.J. v. Choice Hotels*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) (no "knowledge of a specific sex trafficking venture"); *J.M. v. Choice Hotels*, 2022 WL 10626493, at *5 (E.D. Cal. Oct. 18, 2022) ("general knowledge of sex trafficking . . . is insufficient"); *Red Roof*, 21 F.4th at 725 (requiring "knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited—violated the TVPRA as to the plaintiff").
Plaintiffs' citation to more hotel franchisor cases does not support their position.  Opp'n 47:20–27 (citing *Doe v. Wyndham*, 2024 WL 5371983, at *4 (W.D. Tex. Nov. 21, 2024)), Opp'n 48:12–20 (citing another hotel case, along with other similarly unavailing authority, like *Edmondson v. Raniere*, 751 F. Supp. 3d 136, 181 (E.D.N.Y. 2024), in which the defendant was a member of the "Inner Circle" that managed the sex-trafficking venture's affairs and personally launched legal campaigns against victims).  Besides involving much more specific knowledge allegations, as the Court has held, these types of cases entail "a relationship that is markedly different than a company and its financiers."  Order 22:22–28.

- 9 -

*Ratha II*, 168 F.4th at 548; *Ratha I*, 35 F.4th at 1166. Rubicon managers also circulated articles detailing forced labor at the factories. *Ratha II*, 168 F.4th at 548.

The evidence showing Rubicon's knowledge of a venture that trafficked the plaintiffs was much more specific than allegations here. No such direct and tangible source of knowledge is adequately alleged as to the lender CB Defendants. *See* Opp'n 48:10–11. Plaintiffs refer generally and vaguely to ████████████ ████████████████████████████. Opp'n 48:4–10 (citing TAC ¶¶ 226–33, 264–69, 233–34, 278–81). Besides the Court already considering these allegations (*see* Mot. Mem. 6:3–11), no allegation identifies a specific report, complaint, or other information establishing the CB Defendants' knowledge of a venture engaged in sex trafficking (that trafficked Plaintiffs) to intentionally profit from it.

## C. As the Court Held, Plaintiffs Do Not Adequately Allege Three Elements of a TVPRA Conspiracy Against the CB Defendants

Plaintiffs have failed to adequately plead a TVPRA conspiracy: "Plaintiff has not plausibly alleged that Colbeck or Redwood [1] possessed the requisite knowledge, [2] entered into an agreement with MindGeek, or [3] acted with intent to further a sex trafficking venture." Mot. Mem. 18:13–16 (quoting Order 42:10–12).

***No knowledge of the wrongful activity.*** To start, Plaintiffs cite criminal cases involving neither relevant circumstances nor a TVPRA conspiracy claim to argue that "awareness of criminality includes . . . deliberate indifference." Opp'n 6:4–16; 31:19–25 (arguing "willful blindness").[9] The standard, however, is "actual knowledge," and

---

[9] *See, e.g.*, *United States v. Jewell*, 532 F.2d 697, 702 (9th Cir. 1976) ("facts ma[de] it virtually certain that" defendant knew he was smuggling drugs); *United States v. Ramos-Atondo*, 732 F.3d 1113, 1119 (9th Cir. 2013) (defendants unloaded packages at night from boat during live smuggling run they knew involved drugs); *United States v. Nicholson*, 677 F.2d 706 (9th Cir. 1982) (drug dealer knew of drug dealing enterprise based on his delivery of $20,000 cash in a brown paper bag in the middle of the night to known drug dealer). Plaintiffs, in any event, do not plead willful blindness, which requires a defendant to "subjectively believe that there is a high probability that a fact exists" and "take deliberate actions to avoid learning [ ] that fact." *Lenz v. Universal Music*, 815 F.3d 1145, 1155 (9th Cir. 2016) (quoting *Glob.-Tech Appls. v. SEB S.A.*, 563 U.S. 754, 769 (2011)).

Plaintiffs' Opposition does not identify allegations that show the CB Defendants had "actual knowledge of the [alleged] venture's unlawful purpose" of financially benefitting from sex trafficking. Mot. Mem. 18:19–20:16 (citing Order 35:12–13).[10]

Plaintiffs also simply copy allegations from the Amended Complaints that the CB Defendants showed in the Motion are inadequate. *Compare* Opp'n 22:17–25:7, 29:23–28, 30:4–16, 31:2–10, *with* Mot. Mem. 5:8–13:17, 18:27–20:16. They include allegations the Court already held were insufficient to plead knowledge: ████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████ Mot. Mem. 6:3–26. Plaintiffs also cite more allegations the Court already considered and contradictory allegations previously attributed to the Individual Defendants: allegations of ████████████████████████████ ████████████████████████████████████████████ ████████████████████. *See* Mot. Mem. 7:4–8:19. In response to

---

[10] In response to the presumption that a lender is not liable for its borrower's misconduct, Plaintiffs state, on the one hand, that they seek to hold the CB Defendants liable for their own conduct; yet, on the other hand, cite authority on the "instrumentality" theory, which is akin to alter ego. *See* Opp'n 28:27–29:20; *Bowoto v. Chevron Texaco*, 312 F. Supp. 2d 1229, 1237 (N.D. Cal. 2004) (courts "rarely distinguish" between alter ego and instrumentality). The cited cases actually contradict their claims; instead confirming that creditor oversight, involvement, and leverage are not the same as control or knowledge. In three of the four cases Plaintiffs cite, the courts refused to impose liability on the lender. *Krivo Indus. Supply v. Nat'l Distillers & Chem.*, 483 F.2d 1098, 1114 (5th Cir. 1973) ("the capacity to exert great pressure and influence" is "inherent in any creditor-debtor relationship" and is not control for "instrumentality" purposes, which requires "total domination of the subservient corporation" that lacks "separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation"); *Famm Steel v. Sovereign Bank*, 571 F.3d 93, 104 (1st Cir. 2009) (no lender liability); *Woodward v. Metro Bank Dallas*, 522 F.2d 84, 97 (5th Cir. 1975) (same). In the fourth case, under Ohio law, the defendant bank directly aided and abetted a fraud on the plaintiff insurance company to induce the insurer to issue a bond. *Aetna Cas. & Sur. v. Leahey Const.*, 219 F.3d 519, 536 (6th Cir. 2000). Plaintiffs failed to show alter ego against the Individual Defendants and certainly cannot do so against the CB Defendants. *See* Dkt. No. 604 (Order Indiv. Defs.' Mots. Dismiss) 18:6–14.

CB DEFENDANTS' REPLY IN SUPPORT OF OMNIBUS
MOTION TO DISMISS THIRD AMENDED COMPLAINT

the fact that the CB Defendants' exited from all loans in 2018, Plaintiffs cite the same general allegations of media, internet, and other "public disclosures" from 2014 on (SAC ¶¶ 158–96) that the Court necessarily found insufficient to show "actual awareness of the unlawful objective" of the alleged conspiracy.  Order 36:26–28.[11] Finally, Plaintiffs reference the allegedly fraudulent Grant Thornton Memorandum, which Plaintiffs do not plead plausibly—much less with particularity.  *Supra* § II.A.[12]

Without their conclusory, implausible allegations and unreasonable inferences, Plaintiffs are left with "generalized assertions that sophisticated lenders 'should have known' of red flags," which "falls short of the actual awareness of the unlawful objective required for the knowledge prong of conspiracy liability."  Order 36:25–28. ███████████████████████████████████████████.  Mot. Mem. 19:15–22 (citing Loan Agreements § 7.01(a)); *contra* Opp'n 24:24–25:7.  As the Court held, it is implausible that these dozens of sophisticated lenders in two rounds of loans knew of intentional sex trafficking on MindGeek's platform and simply ignored it.  Mot. Mem. 19:15-22.  Plaintiffs fail to adequately plead that the CB Defendants knew that the MindGeek Borrowers intended to financially benefit from CSAM.

---

[11] Besides identifying no specific reports or what they showed, Plaintiffs argue there was a "lack of response to the decade of public reporting and concrete complaints," but cite no allegations related to the CB Defendants.  Opp'n 22:22–26 (citing TAC ¶¶ 252 (allegations regarding the 2013 Loan Agreement), 269–71 and 278–84 (alleging reports received by the Redwood Defendants)).  Plaintiffs also cite general allegations of articles from local news outlets about specific people (not widespread purposeful perpetuation of CSAM), which "dat[e] back to 2014"—after the last Loan Agreement involving a CB Defendant was entered.  Opp'n 31:6–8.  Plaintiffs also refer to a 2016 lawsuit against GirlsDoPorn that did not involve CSAM, minors, or claims under the TVPRA; and Plaintiffs refer to events in 2020 and 2021—years after the CB Defendants ceased loans. Opp'n 31:8–10 (citing TAC ¶¶ 151–52).

[12] Plaintiffs' authority does not support discovery or artificial fact disputes.  Opp'n 31:11–25; *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1054 (9th Cir. 2008) (Lanham Act claim adequately pled and dispute over knowledge of falsity was a question of fact); *Lemus v. Rite Aid*, 613 F. Supp. 3d 1269, 1281 (C.D. Cal. 2022) (knowledge of falsity for consumer protection claim adequately pled).  Plaintiffs must adequately plead their claims; they cannot relabel missing elements as fact disputes.  *Iqbal*, 556 U.S. at 678–79; *T.M. v. G6 Hosp.*, 2024 WL 4457563, at *8 (N.D. Ga. Sept. 23, 2024) (denying discovery to cure inadequately pled TVPRA claim).

***No agreement to join the wrongful activity.*** The Opposition similarly does not surmount the Court's ruling that Plaintiffs fail to adequately allege that the CB Defendants agreed to perpetuate and profit from CSAM on MindGeek websites. Mot. Mem. 20:17–22:8. Plaintiffs, without analysis, simply copy allegations from the Amended Complaints and conclude the allegations describe an atypical commercial lender-borrower relationship. Opp'n 31:27–33:17. No allegation supports an ***agreement*** between the CB Defendants and the MindGeek Borrowers to sex traffic.

The CB Defendants explained that these allegations are also independently deficient. As the Court held, the Loan Agreements do not establish an agreement to participate in sex trafficking. Mot. Mem. 20:24–21:5 (citing Order 38:11–18, 38:22–24). The Court also already considered the vague allegations of a ████████████, and Plaintiffs fail to refute that their allegations are contradictory and do not support their incoherent conclusion that the agreement conferred control. Mot. Mem. 9:3–8, 13:18–14:12 (citing SAC ¶¶ 274, 494).

Plaintiffs rely on other allegations already considered by the Court or previously attributed to the Individual Defendants and otherwise contradictory of other allegations: ████████████████████████████████████████████████████████████████████. Opp'n 32:11–16, 32:27–33:7, 33:14–18.[13] Plaintiffs also again rely on the Grant Thornton Memorandum. Opp'n 33:8–10, 36:14–18 (citing *United States v. Sarno*, 73 F.3d 1470, 1496 (9th Cir. 1995) (post-trial criminal sufficiency case on conspiracy to make false statements; defendants jointly prepared false documents and committed acts to cover up fraud)); *supra* § II.A.

---

[13] The Opposition also claims that CB Defendants met with the "MindGeek's executive team" but cites only a reference to ██████. Opp'n 33:11–13 (citing TAC ¶ 234).

Absent the inadequate pleading, conclusory allegations, and unreasonable inferences, all that remains are the Loan Agreements. As the Court held, the Loan Agreements contain representations that the ███████████████████ ████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████—the opposite of a "tacit agreement to conspire." Order 38:18–23. Contrary to Plaintiffs' argument, it is not that the Loan Agreements "immunize" the CB Defendants from all liability. Opp'n 35:16–36:1.[14] Rather, the terms of the Loan Agreements "are fundamentally inconsistent with an alleged conspiratorial 'meeting of the minds' to traffic in CSAM." Order 38:11–24.[15]

***No intent to aid in the wrongful activity.*** Plaintiffs tellingly ignore the Court's Order as to the intent element. No allegation Plaintiffs cite, even if adequately pled, supports that the CB Defendants intended to accomplish the specific objective of sex trafficking, did more than provide a service playing some role in alleged unlawful conduct, consciously decided to join the alleged unlawful purpose, or took steps affirmatively designed to further sex trafficking. *Compare* Opp'n 39:8–22, *with* Mot. Mem. 22:9–23:7 (citing Order 39:14–15, 39:20–40:7, 40:8–14, 41:1–4, 41:10–11, 41:18–29 n.9); *see also* Opp'n 39:7–8 (citing *Pinkerton v. United States*, 328 U.S. 640, 647 (1946) (applying vicarious liability only once conspiracy elements established)).

Plaintiffs repeat the same allegations the Court already held were insufficient: knowledge of the unrestricted content model from purported public reporting and due

---

[14] None of the cases Plaintiffs cite addresses how loan provisions prohibiting the alleged conspiracy's purported underlying conduct impact the "agreement" element of a TVPRA conspiracy. *Ryanair DAC v. Booking Holdings*, 636 F. Supp. 3d 490, 510 n.13 (D. Del. 2022) (Computer Fraud and Abuse Act; contracts not part of record; facts showed defendants directed others to engage in conduct violating contract provisions); *Omnicom*, 2026 WL 504904, *12 (analyzing "generic language" in "public filings" for beneficiary-liability participation); *F.C. v. Jacob Sols.*, 790 F. Supp. 3d 1158, 1190 (D. Colo. June 26, 2025) (considering contract terms for beneficiary-liability participation).

[15] Again, Plaintiffs' deficient pleading provides no basis for discovery. *See supra* § II.A; Opp'n 36:1–21 (citing *F.C. v. Jacob Sols.*, 790 F. Supp. at 1194 (unremarkable point that, ***if a claim is adequately pled***, fact disputes to be fleshed out in discovery).

diligence; and loans with ███ interest rates.  Opp'n 39:8–22; Mot. Mem. 6:3–24. Besides again citing their deficient allegation of defrauding other lenders and the Grant Thornton Memorandum (Opp'n 40:8–16), Plaintiffs allege that the MindGeek Borrowers' ability to repay the amounts due on the loans depended on CSAM (Opp'n 40:17–18).  But that contradicts Plaintiffs' admission that MindGeek made and would continue to make "enormous sums of money" without CSAM.  SAC ¶¶ 1, 9, 34.  And as the Court held, the CB Defendants—along with the other financial institutions—had only a financial incentive to accept interest on a debt, with no equity stake, and had "every incentive to avoid legal risk that could imperil their loans."  Order 39:3–8.[16]

Plaintiffs noticeably ignore that the CB Defendants' loans concluded in 2018 before the scrutiny of CSAM on Pornhub in 2019–2020, and Plaintiffs cite no facts showing the CB Defendants intended to encourage or profit from trafficking rather than lawful content.  Mot. Mem. 22:24–27 (citing Order 40:15–23).  Plaintiffs, in fact, confirm the significance of such exit in 2018 by emphasizing the purported importance of the December 2020 New York Times article.  *See* Opp'n 41:2–10.  Plaintiffs still have not pled non-conclusory and non-contradictory allegations that overcome the Court's finding that the Loan Agreements reflect not a "conspiratorial alignment" but a "commercial lending relationship."  Order 41:10–11.

---

[16] Plaintiffs argue immaterially that the banks in *Doe v. Deutsche Bank* processed Jeffrey Epstein's (the direct trafficker) transactions for "legal businesses" and for sex trafficking.  Opp'n 41:10–16.  Materially, the court held that legitimate banking-services transactions, even coupled with knowledge that services assist the borrower's sex-trafficking venture and conduct covering up the trafficking, are not enough to show agreement for a TVPRA conspiracy.  671 F. Supp. 3d 387, 405 (S.D.N.Y. 2023).

Plaintiffs argue incorrectly that a Colorado district court "squarely rejected" this Court's "limiting principal [sic]."  *Compare* Opp'n 41:17–27, *with* Order 42:1–4.  Plaintiffs cite that court's analysis of "participation" for a beneficiary-liability claim, not a conspiracy claim—the court did not assess intent.  *F.C. v. Jacobs Sols.*, 790 F. Supp. 3d at 1193.  In fact, the court held that the limiting-principle concern would be dealt with through "other TVPRA requirements, such as scienter," which "further circumscribe potential liability."  *Id.* at 1190.  Further, the construction-contractor defendants were responsible for monitoring and ensuring the employment conditions of World Cup stadium builder plaintiffs allegedly human trafficked and had received specific reports on human-rights abuses in the projects they were responsible for.  *Id.* at 1190–91, 93.

- 15 -

***No overt act in furtherance of conspiracy or injury caused by such act.*** As additional reasons their conspiracy claim fails, the only ***overt acts*** Plaintiffs identify are (1) loans to the MindGeek Borrowers (Opp'n 42:2–3), which are not an overt act in furtherance of a sex-trafficking conspiracy; and (2) allegations that the CB Defendants designed, directed, and controlled the MindGeek Borrowers (*id.* 42:3–7), which are unsupported and contradictory (*see* Mot. Mem. 7:4–8:19). *See also* Opp'n 42:8–10 (citing *United States v. Matta-Ballesteros*, 71 F.3d 754, 765 (9th Cir. 1995) (referring to "[a]cts" to infer knowledge and participation, not an overt act; cartel-member defendant participated in meetings planning victim's kidnapping by cartel)).

Plaintiffs' only response to their failure to plausibly allege that their ***injuries*** (damages) arose from allegedly wrongful conduct of, or a conspiracy involving, a CB Defendant (Mot. Mem. 23:21–24:2) is that the CB Defendants—although they stopped participating in loans in 2018 (TAC ¶¶ 221, 271, 272)—are forever liable for purported coconspirators' future actions because the CB Defendants were "forced out" and did not voluntarily withdraw from the conspiracy. Opp'n 42:20–43:10.[17] But the CB Defendants necessarily withdrew because they were "disassociat[ed]" from the conspiracy. *United States v. Lothian*, 976 F.2d 1257, 1261 (9th Cir. 1992) (cited in Opp'n 43:2–6); *see also Morton's Mkt. v. Gustafson's Dairy*, 198 F.3d 823, 839 (11th Cir. 1999) (withdrawal occurs if defendant "retired from the business, severed all ties to the business, and deprived the remaining conspirator group of the services which [it] provided to the conspiracy"). Further, Plaintiffs concede that the CB Defendants affirmatively withdrew from any alleged conspiracy by agreeing with the Redwood Defendants to formally terminate their participation in loans. TAC ¶¶ 274–75.

---

[17] *See* Opp'n 42:23–43:4 (misstating that Court "rejected" CB Defendants' argument; citing statement of TVPRA conspire-to-benefit standard (Order 34:12–14)); *cf.* Order 40:20–41:16 (crediting CB Defendants' 2018 exit without reference to withdrawal).

**D.    Plaintiffs Do Not Rescue Their California Civil Conspiracy Claim**

The Opposition does not substantively rebut the reasons Plaintiffs' civil conspiracy claim against the CB Defendants fails.

***First***, to argue that they adequately pled commission of an actual tort, Plaintiffs simply conclude that they have "properly stated a claim for violations of the UCL and other alleged California torts." Opp'n 51:17–20. Besides lacking support, the only claim they identify, their UCL claim, is deficient, as explained below. *See infra* § II.F.

***Second***, Plaintiffs fail to address that the defendant must owe a duty to the plaintiff for which the defendant could be subject to liability for breach of that duty. Mot. Mem. 25:1–18. Plaintiffs instead argue immaterially to the duty question that "lenders are not immune" if they play an "instigating or active role" in a tort. *See* Opp'n 51:21–24 (citing *RTC v. BVS Dev.*, 42 F.3d 1206, 1214 (9th Cir. 1994) (***rejecting*** claim under California law alleging ***lender*** owed a duty to plaintiff); *Aetna*, 219 F.3d 519 at 538–39 (reversing conspiracy verdict because agreement not established despite inference that defendant bank knowingly assisted suspicious fraudulent transaction); *see also supra* § II.C (no lender liability; distinguishing *Aetna*).

***Third***, Plaintiffs ignore the Court's Order and the CB Defendants' Motion (*see* Order 43:4–6; Mot. Mem. 25:19–26:15) and conclude they adequately alleged a conspiracy by referring to their arguments on TVPRA conspiracy (Opp'n 51:25–52:19). Plaintiffs plead neither a TVPRA conspiracy nor a civil conspiracy. *See supra* § II.C.

**E.    Plaintiffs Ignore Their Lack of Statutory Standing and Inadequate Allegations for a California Unfair Competition Law Claim**

Plaintiffs do not dispute that they lack statutory standing—injury in fact and lost money or property as a result—to assert a UCL claim. Mot. Mem. 27:1–12. This concedes the issue and warrants dismissal. *Augustus v. Mercedes-Benz Fin. Servs.*, 2025 WL 2019808, at *3 n.3 (C.D. Cal. May 12, 2025) (Hsu, J.) ("Plaintiff's failure to address Defendants' argument amounts to concession of the issue."). Plaintiffs also fail to show that they adequately plead any prong of a UCL claim.

***Not unlawful.*** For the unlawful prong, Plaintiffs refer to their TVPRA claims. Opp'n 49:7–16. Thus, like their TVPRA claims, Plaintiffs' UCL claim under the unlawful prong against the CB Defendants fails. *See supra* §§ II.B–C.[18]

***Not fraudulent.*** For the fraud prong, Plaintiffs cite a single paragraph in the TAC alleging that the CB Defendants conspired with MindGeek to misrepresent to potential lenders MindGeek's purported business practices. Opp'n 50:12–19 (citing TAC ¶ 241). As explained in the Motion and above, Plaintiffs' allegations (based on the Grant Thornton Memorandum) are far from enough to meet Rule 9(b), which particularity standard applies to averments of fraud and the UCL fraud prong. *See* Mot. Mem. 27:13–20; *supra* § II.A; *Becerra v. Dr Pepper/Seven Up*, 945 F.3d 1225, 1228 (9th Cir. 2019) (affirming dismissal after noting UCL claim was subject Rule 9(b)). Plaintiffs also do not challenge that allegedly defrauding lenders is insufficient to show that members of the ***public*** were deceived. Mot. Mem. 27:16–20.

***Not unfair.*** As to the unfair prong, Plaintiffs make the same error the Court already previously found existed in the SAC: "Plaintiff's allegations under the UCL . . . [still] primarily focus on conduct attributable to MindGeek, not Colbeck or Redwood." Mot. Mem. 26:17–20 (quoting Order 49:5–10); *see* Opp'n 49:17–50:5 (alleging public policy against distribution of CSAM). Plaintiffs also identify no allegations supporting that the ***CB Defendants***' alleged acts were unfair to, and harmed, ***competitors*** or ***consumers***. *See* Mot. Mem. 27:21–28:5. Plaintiffs are alleged trafficking victims, not consumers of a CB Defendant's good or service.

### F.    Plaintiffs Fail to Save Their Untimely California Claims

The Opposition does not alter the fact that the statutes of limitations bar Plaintiffs' California claims because the CB Defendants stopped participating in any loans to MindGeek Borrowers in 2018. Mot. Mem. 28:10–31:2.

---

[18] The California criminal statutes underlying claims against MindGeek Defendants cannot serve as predicate violations because they target CSAM producers, distributors, and possessors—not lenders. *Contra* Opp'n 49 n.17.

CB DEFENDANTS' REPLY IN SUPPORT OF OMNIBUS
MOTION TO DISMISS THIRD AMENDED COMPLAINT

*First*, Plaintiffs repeat their argument that the CB Defendants did not withdraw from the purported conspiracy. Opp'n 53:3–10, 54:18–21. As explained above, Plaintiffs misstate the law and ignore that the CB Defendants sufficiently disassociated from any purported conspiracy. *Supra* § II.C.[19]

*Second*, Plaintiffs allege vaguely that "Defendants" concealed their alleged role. Opp'n 53:11–19, 53:25–54:2, 54:6–7, 54:10–12, 54:20–21. Tolling limitations periods because of fraudulent concealment requires that a plaintiff's complaint show "(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Viera v. Bank of Am.*, 2015 WL 12752882, at \*7 (C.D. Cal. Oct. 28, 2015). Plaintiffs cite no fact to support concealment related to the CB Defendants—because there is no such allegation.

*Third*, Doe Defendants and the relation-back doctrine could not apply to any plaintiffs other than the Plaintiff in *Fleites* because all other Plaintiffs filed their complaints in 2024. *Contra* Opp'n 53:20–54:4. As to *Fleites*, the Opposition argues that Plaintiff did not know "which specific Colbeck or Redwood entities were the operative lending vehicles or origination agents." Opp'n 53:25–54:2.[20] Besides conceding awareness of Colbeck Capital Management LLC's role at the filing of the initial complaint and the FAC, this argument is unavailing for several reasons. Plaintiff described the Colbeck Capital Does as "investors in" Colbeck Capital Management,

---

[19] Nor does the continuous-violation doctrine help Plaintiffs. Opp'n 54:6–10 (citing *Aryeh v. Canon Bus. Sols.*, 55 Cal. 4th 1185, 1198–99 (2013) (affirming trial court decision to reject continuing violation doctrine)). Plaintiffs do not allege that the CB Defendants continued violations; they allege that the purported conspiracy continued violations. Nothing alters that a "defendant cannot be held liable for substantive offenses committed . . . after withdrawing from a conspiracy." *Lothian*, 976 F.2d 1262; *see also Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (distinguishing continuing violation from "continuing impact," which does not toll statutes of limitations).

[20] *Barrio v. Cnty. of San Bernardino* (Opp'n 53:23–54:4), does not support Plaintiff's arguments because the defendants in that case did not dispute the plaintiff's genuine ignorance of the identities of the newly added defendants. 2020 WL 4037169, at \*3 (C.D. Cal. Mar. 26, 2020).

LLC—not as other CB lender entities. Dkt. No. 1 ¶ 57. Plaintiff also knew about the CB Defendants and their alleged role—alleging in the Initial Complaint that Colbeck Capital Management, along with other CB entities, made loans to MindGeek. *Id.* ¶¶ 57, 111; *see also* Dkt. No. 124-3 (FAC) ¶¶ 30, 89, 98. Plaintiff thus knew of "the defendant's identity or the facts rendering defendant liable." *Morris v. Sun Pharma Glob.*, 2021 WL 3914235, at *2–3 (C.D. Cal. Apr. 22, 2021). And which Colbeck funds were the lending entities or the origination agent is meaningless because, now that Plaintiff apparently knows this, Plaintiff still grouped all the CB Defendants together in the SAC and TAC—as either "Colbeck" or the Colbeck Syndicate.

## III. CONCLUSION

Plaintiffs have had multiple opportunities to adequately state their claims but repeated the same allegations and theory and added more conclusory, contradictory, and implausible allegations. Mot. Mem. 31:5–13. Plaintiffs do not dispute that another amendment would be futile. *See id.* The Court should grant the Motion and dismiss the Amended Complaints as to the CB Defendants with prejudice.

Dated: April 3, 2026

WHITE & CASE LLP

By: _David G. Hille_

David G. Hille

Attorneys for Defendants
COLBECK CAPITAL MANAGEMENT, LLC; CB MEDIA VENTURES DD, LLC; CB AGENCY SERVICES, LLC; and CB PARTICIPATIONS SPV, LLC

- 20 -

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the CB Defendants, certifies that the reply brief above has twenty pages, which complies with the parties' stipulation (Dkt. No. 653).

Dated:  April 3, 2026                              WHITE & CASE LLP

                                                   By: _David G. Hille_
                                                         David G. Hille

                                                   Attorneys for Defendants
                                                   COLBECK CAPITAL MANAGEMENT,
                                                   LLC; CB MEDIA VENTURES DD,
                                                   LLC; CB AGENCY SERVICES, LLC;
                                                   and CB PARTICIPATIONS SPV, LLC

- 21 -