JAMES M. PEARL (Bar No. 198481)
James.Pearl@weil.com
KIAURA CLARK (Bar No. 336314)
Kiaura.Clark@weil.com
WEIL, GOTSHAL & MANGES LLP
1999 Avenue of The Stars, 18th Floor
Los Angeles, California 90067
Telephone: (213) 667-5100

ZACHARY J. TRIPP (*pro hac vice admitted*)
Zack.Tripp@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000

*Attorneys for Defendants*
*Redwood Capital Management, LLC, Redwood*
*Master Fund, Ltd., Redwood Opportunity Master*
*Fund, Ltd., Manuel 2018, LLC, Ginogerum, LLC, and*
*White-Hathaway Opportunity Fund, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENA FLEITES,<br><br>      Plaintiff,<br><br>v.<br><br>MINDGEEK S.A.R.L. a foreign entity;<br>MG FREESITES, LTD., a foreign entity;<br>MINDGEEK USA INCORPORATED, a<br>Delaware corporation; MG PREMIUM<br>LTD, a foreign entity; MG GLOBAL<br>ENTERTAINMENT INC., a Delaware<br>corporation; 9219-1568 QUEBEC, INC.,<br>a foreign entity; BERND BERGMAIR, a<br>foreign individual; FERAS ANTOON, a<br>foreign individual; DAVID TASSILLO, a<br>foreign individual; VISA INC., a<br>Delaware corporation; REDWOOD | Case No. 2:21-cv-04920-WLH-ADS<br><br>**REDWOOD DEFENDANTS' REPLY<br>IN SUPPORT OF OMNIBUS<br>MOTION TO DISMISS**<br><br>Date:        April 24, 2026<br>Time:        1:30 PM<br>Courtroom:  9B<br>Judge:       Hon. Wesley L. Hsu |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILE UNDER SEAL**

REDWOOD DEFENDANTS' REPLY ISO OMNIBUS MOTION TO DISMISS | CASE NO. 2:21-cv-04920-WLH-ADS

CAPITAL MANAGEMENT, LLC, a Delaware corporation; REDWOOD MASTER FUND, LTD, a foreign entity; REDWOOD OPPORTUNITY MASTER FUND, LTD, a foreign entity; MANUEL 2018, LLC, a Delaware corporation; GINGOGERUM , LLC, a Delaware corporation; WHITE-HATHAWAY OPPORTUNITY FUND, LLC, a Delaware corporation; COLBECK CAPITAL MANAGEMENT, LLC, a Delaware corporation; CB MEDIA VENTURES LLC, a Delaware corporation, CB AGENCY SERVICES, LLC, a Delaware corporation; and CB PARTICIPATIONS SPV, LLC, a Delaware corporation,

Defendant(s).

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ..............................................................................................1

II.     PLAINTIFFS' INTERPRETATION OF *RATHA II* IS INCORRECT...................2

III.    THE TAC FAILS TO STATE A TVPRA BENEFICIARY CLAIM....................4

    A.      Plaintiffs Cannot Establish Redwood's Participation in a Venture. .............4

    B.      Plaintiffs Do Not Establish Actual or Constructive Knowledge. ................6

IV.     THE TAC FAILS TO PLEAD A TVPRA CONSPIRACY ..................................8

    A.      Plaintiffs Do Not Plausibly Allege Redwood's Actual Knowledge.............8

    B.      Plaintiffs Fail to Plausibly Allege Agreement. ..........................................13

    C.      Plaintiffs Fail to Plausibly Allege Intent.....................................................16

    D.      Plaintiffs Do Not Allege an Overt Act.........................................................18

V.      PLAINTIFFS' UCL CLAIM STILL FAILS .......................................................18

VI.     PLAINTIFFS' CIVIL CONSPIRACY CLAIM STILL FAILS ..........................19

VII.    PLAINTIFFS' STATUTE OF LIMITATIONS THEORIES FAIL ....................20

VIII.   LEAVE TO AMEND SHOULD BE DENIED....................................................20

IX.     CONCLUSION .................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.A. v. Omnicom Grp., Inc.*
2026 WL 504904, at *12 (S.D.N.Y. Feb. 24, 2026) ................................................... 5

*Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*,
219 F.3d 519 (6th Cir. 2000) ............................................................... 12, 15, 19

*Akhmad v. Bumble Bee Foods, LLC*,
2025 WL 3158655 (S.D. Cal. Nov. 12, 2025).............................................................. 6

*Aryeh v. Canon Bus. Sols., Inc.*,
55 Cal. 4th 1185 (2013) ............................................................................. 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................. 2

*BBD Transp. Co. v. S. Pac. Transp. Co.*,
627 F.2d 170 (9th Cir. 1980) ........................................................................ 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................. 16

*Doe 1 v. Deutsche Bank*,
671 F. Supp. 3d 387 (S.D.N.Y. 2023) ............................................................. 15, 17

*Doe (A.L.G.) v. Wyndham Hotels & Resorts, Inc.*,
2024 WL 5371983 (W.D. Tex. Nov. 21, 2024) ......................................................... 7

*Doe v. Bank of Am., N.A.*,
2026 WL 380385 (S.D.N.Y. Feb. 11, 2026) ........................................................... 6

*Edmondson v. Raniere*
751 F. Supp. 3d 136, 181 (E.D.N.Y. 2024)............................................................. 7

*El Ranco, Inc. v. First Nat'l Bank of Nev.*,
406 F.2d 1205 (9th Cir. 1968) ..................................................................... 2, 20

*F.C. v. Jacobs Sols. Inc.*,
790 F. Supp. 3d 1158 (D. Colo. 2025) ................................................................ 14

REDWOOD DEFENDANTS' REPLY ISO OMNIBUS MOTION TO DISMISS | CASE NO. 2:21-cv-04920-WLH-ADS

*Famm Steel, Inc. v. Sovereign Bank*
    571 F.3d 93, 100-01 (1st Cir. 2009) ...............................................................................11

*Glob.-Tech Appls., Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) ..........................................................................................................9

*Kidron v. Movie Acquisition Corp.*,
    40 Cal. App. 4th 1571 (1995) .........................................................................................19

*Knox v. Davis*,
    260 F.3d 1009 (9th Cir. 2001) ........................................................................................20

*Krivo Indus. Supply v. Nat'l Distillers & Chem.*,
    483 F.2d 1098 (5th Cir. 1973) ........................................................................................11

*Pinkerton v. United States*,
    328 U.S. 640 (1946) ........................................................................................................16

*Ratha v. Rubicon Res., LLC*,
    168 F.4th 541 (9th Cir. 2026) ................................................................................ *passim*

*RTC v. BVS Dev., Inc.*,
    42 F.3d 1206 (9th Cir. 1994) ..........................................................................................19

*Ryanair DAC v. Booking Holdings Inc.*,
    636 F. Supp. 3d 490 (D. Del. 2022) ..........................................................................13, 14

*T.E. v. Wyndham Hotels & Resorts, Inc.*,
    2024 WL 474400 (S.D. Ohio Feb. 7, 2024) .....................................................................7

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ....................................................................................................19

*United States v. Cruz-Ramirez*,
    2011 WL 5599630 (N.D. Cal. Nov. 17, 2011) ...............................................................18

*United States v. Jewell*,
    532 F.2d 697 (9th Cir. 1976) ............................................................................................9

*United States v. Lothian*,
    976 F.2d 1257 (9th Cir. 1992) ........................................................................................18

*United States v. Matta-Ballesteros*,
    71 F.3d 754 (9th Cir. 1995) ............................................................................................18

REDWOOD DEFENDANTS' REPLY ISO OMNIBUS MOTION TO DISMISS | CASE NO. 2:21-cv-04920-WLH-ADS

*United States v. Ramos-Atondo*,
   732 F.3d 1113 (9th Cir. 2013) ........................................................................................ 9

*United States v Sarno*,
   73 F.3d 1470 (9th Cir. 1995) ........................................................................................ 14

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...................................................................................... 19

*Woodward v. Metro Bank of Dall.*,
   522 F.2d 84 (5th Cir. 1975) ..................................................................................... 11, 12

**California Statutes**

   Code Civ. Proc.
      § 474 ............................................................................................................................ 20

**Other Authorities**

Federal Rule of Civ. Proc.

   Rule 9(b) .................................................................................................. 12, 13, 15, 19

   Rule 12 ................................................................................................................ 1, 2, 15

REDWOOD DEFENDANTS' REPLY ISO OMNIBUS MOTION TO DISMISS | CASE NO. 2:21-cv-04920-WLH-ADS

## I.    **<u>INTRODUCTION</u>**

Plaintiffs' Opposition confirms that the TAC still does not state a claim against Redwood. This is Plaintiffs' second attempt at turning a fixed-return lender into a trafficking participant and conspirator through labels alone. Their newly manufactured allegations do not fix the fatal flaws that this Court already identified. As to beneficiary liability, Plaintiffs did not plausibly allege that Redwood "participated in a venture." Redwood was merely a lender and had no incentive whatsoever to join a sex trafficking conspiracy (and every incentive not to). Redwood's alleged role as a lender was materially different from the operational involvement in the hotel franchisor cases, and Redwood remained one step removed from the trafficking that harmed them. Order at 21-23. As to conspiracy, Plaintiffs did not plausibly allege actual knowledge of a trafficking objective, a meeting of the minds to pursue it, or an intent to further it. *Id*. at 35-41.

Plaintiffs recycle the same handful of allegations from the SAC without pleading materially new facts. *See* Mot. at 9-10, 14, 16-17, 20-22, 25 (comparing the SAC and TAC's allegations against Redwood). Plaintiffs use these same allegations across multiple elements: Redwood's lender rights, its alleged access to reports, the Investor Memorandum, and Redwood's response to public scandal are invoked again and again as proof of "participation," "knowledge," "agreement," and "intent." But neither rephrasing nor repeating the SAC's allegations makes them any stronger.

Plaintiffs also trumpet *Ratha II*, but that decision does not change the result. It did not relax Rule 12(b)(6), require courts to accept labels as facts, or alter the conspiracy elements that drove dismissal of the SAC. Even under Plaintiffs' reading, the TAC alleges only lending, financial reporting, refinancing, lender communications, and post-crisis credit-risk response—not trafficker-facing conduct, not platform-level operational control, and not a shared trafficking objective. And, the agreements themselves contradict every inference that Redwood sought to join a trafficking conspiracy. Plaintiffs' assertion that Redwood wants the Court to "ignore the facts alleged" (Opp. at 2) is simply wrong. Redwood asks the Court to do what Rule 12 requires: separate factual allegations from

REDWOOD DEFENDANTS' REPLY ISO OMNIBUS MOTION TO DISMISS | CASE NO. 2:21-CV-04920-WLH-ADS

conclusions and ask whether the factual allegations plausibly establish the elements of the claim. They do not.

The Opposition leaves Redwood's strongest points unanswered. It does not reconcile Plaintiffs' "unilateral control" narrative with the syndicated-loan structure reflected in the incorporated agreements (*i.e.*, that Redwood was not a ███████████ █████████████████████████████████████ Mot. at 12-13). It still does not identify which report Redwood supposedly received, what it said, when it was received, who at Redwood saw it, or how it showed a trafficking objective rather than legal or reputational risk. It does not explain how Redwood could simultaneously seek "complete control" and recruit additional lenders whose participation would dilute that control. And it does not confront the ████████████ event and related lender actions, which powerfully undercut the plausibility of Plaintiffs' post-New York Times narrative.

## II.   **<u>PLAINTIFFS' INTERPRETATION OF *RATHA II* IS INCORRECT</u>**

Plaintiffs overread *Ratha II* and then frame their entire case around it. They say *Ratha II*: (i) rejected any "limiting principle" on participation for purposes of TVPRA beneficiary liability; (ii) rendered this Court's Order "inconsistent" with *Ratha II*, and (iii) requires acceptance of Plaintiffs' allegations wholesale. Opp. at 1-4; *Ratha v. Rubicon Res., LLC ("Ratha II")*, 168 F.4th 541, 560 (9th Cir. 2026). None of that is right.

*First*, *Ratha II* did not address—let alone relax—Rule 12. *Ratha II* involved a summary-judgment ruling, where the court was drawing inferences from *actual record evidence*. Here, the Court need not credit "naked assertions devoid of further factual enhancement" or draw inferences that are not plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *cf.* TAC ¶¶ 260, 275, 277, 280 (pleading labels, *e.g.*, Redwood had "unilateral control," was MindGeek's "de facto owner," participated in "day-to-day management," ████████████████████████████████████████████████████████████ ████████████████████████████████"). Redwood also does not ask the Court to "ignore" any well-pleaded factual allegations. Opp. at 2. Redwood merely asks the Court to do what Rule 12 requires: distinguish facts from conclusory assertions and

REDWOOD DEFENDANTS' REPLY ISO OMNIBUS MOTION TO DISMISS | CASE NO. 2:21-CV-04920-WLH-ADS

determine whether the nonconclusory factual allegations plausibly satisfy the elements.

*Second*, *Ratha II* nowhere says that it is rejecting any limiting principle on the meaning of participation. Rather, "participation" holds its ordinary meaning of "taking part," and does not require a defendant to have taken "some action to operate or manage" the venture. *Ratha*, 168 F.4th at 560. It did not eliminate the requirement that participation be tied to the trafficking venture itself, nor did it suggest that any commercial relationship with a beneficiary suffices.

The facts that mattered were distinct from anything alleged as to Redwood. Rubicon's employees coordinated sales and marketing, visited and pre-audited factories, arranged import and shipping, *publicly represented that Rubicon controlled* "*every aspect of production*," and had concrete notice from a whistleblower report and a major customer's refusal to buy from the factory. *Id.* (emphasis added). The owner of the factory even *founded* Rubicon. *Id.* at 547. That looks nothing like Redwood. Among other things, *Ratha II* did not impose liability on a mere lender to Rubicon. There is thus no merit to Plaintiffs' assertion that the allegations "far exceed" those in *Ratha II.* Opp. at 48. The exact opposite is true.

*Third*, Plaintiffs misread this Court's Order as imposing freestanding requirements of direct contact with the trafficker or operation-and-management control, rendering it "inconsistent" with *Ratha II. See id*. at 2. The Order did neither. In evaluating the beneficiary claim, the Court compared this case to the franchisor cases. Order at 22-23. Those cases involved trafficking-adjacent conduct—property-level training, inspections, payment rules, and daily practices, "markedly different than a company and its financiers." *Id*. That reasoning survives *Ratha II.* "Taking part" still requires facts showing how the defendant took part in the venture. The TAC only alleges lending, covenants, reporting rights, refinancing, and post-crisis oversight. It does not allege that Redwood set moderation rules, trained moderators, made content-removal decisions, or otherwise inserted itself into the platform functions Plaintiffs say fostered trafficking.

*Fourth*, *Ratha II* does nothing to alter the Order's conspiracy analysis. The Court

dismissed the conspiracy claim because Plaintiffs failed to plead actual knowledge of the venture's unlawful purpose, agreement to pursue it, and intent to further it. Order at 35-42. *Ratha II* does not collapse constructive knowledge into actual knowledge, transform financing into a meeting of the minds, or convert credit-risk management into intent.

## III. THE TAC FAILS TO STATE A TVPRA BENEFICIARY CLAIM

### A. Plaintiffs Cannot Establish Redwood's Participation in a Venture.

The TAC does not plausibly allege that Redwood participated in a trafficking venture. The TAC still pleads no connection with Plaintiffs' immediate traffickers and merely a lender-borrower relationship with MindGeek: reporting rights, leverage inherent in secured debt, renegotiations, alleged influence, and an asserted ability to accelerate or foreclose. *See* Mot. at 8-13; *see also* Order at 9. Those allegations do not plausibly suggest Redwood took part in the venture's trafficking-related functions.

The Opposition overreads *Ratha II's* "participation" holding in a futile attempt to rescue this claim. Under *Ratha II*, Plaintiffs still must plead that Redwood actually took part in the trafficking venture that harmed them. *See Ratha*, 168 F.4th at 560. Yet, Plaintiffs do not allege that Redwood trained moderators, set moderation policy, directed content-removal operations, or exercised trafficking-relevant operational control over MindGeek's platforms that could bridge that gap. And, the allegations are rife with inconsistencies that undermine the plausibility of any inferences. *See* Mot. at 10-13. Despite the TAC's amped-up rhetoric, its substantive foundation remains the same: Plaintiffs allege a lender's relationship, not participation in a trafficking venture.

Instead, much like the SAC,[1] the Opposition states the conclusion that Redwood "██████████████████████████████████████████████████ ██████████████████████████████████████████████." Opp. at 47 (citing "Section

---

[1] As set forth in Redwood's motion, the TAC's allegations (including with respect to any alleged "control") are not only conclusory, but are not materially new. Mot. at 9-10, 14, 16-17, 20-22, 25 (comparing the TAC's and SAC's allegations as to Redwood). While some have been rephrased from the SAC, Plaintiffs do not and cannot identify what facts are newly alleged and why these claims should now survive dismissal.

I.B"). But control is a conclusion, and the TAC lacks factual allegations to support it.

Plaintiffs also rely on authority this Court already distinguished. *See* Opp. at 45-46; Order at 22. As set forth above, the franchisor authorities are materially different and this Court's analysis is unaffected by *Ratha II*. Plaintiffs lean into *Salesforce*, but merely regurgitate that the "venture" can be *any* commercial venture. *Compare* Opp. at 46 *with* Dkt. 573 at 24. In *Salesforce,* the alleged continuous business relationship was with a *direct trafficker*. *See* Order at 22. Here, Plaintiffs allege only a financing relationship between Redwood and *MindGeek*, not Plaintiffs' traffickers. And, unlike MindGeek, Redwood is not alleged to have had any direct interaction with Plaintiffs' videos. This Court concluded Redwood was "one step removed" from the trafficking that harmed Plaintiffs. *Id*. Neither the TAC nor *Ratha* change that.

Finally, Plaintiffs relabel ordinary creditor functions as "customized" "trafficking-specific" support without allegations of *trafficking-directed conduct*, and their authority is inapposite. Opp. at 45-46. *A.A. v. Omnicom Grp., Inc.* involved a public-relations firm that allegedly collaborated with another defendant to "whitewash" abuses "in support of the [] Venture." *See* Opp. at 47; 2026 WL 504904, at *12 (S.D.N.Y. Feb. 24, 2026). Plaintiffs do not allege Redwood provided PR for MindGeek; the TAC attributes MindGeek's PR response to MindGeek's vice president and 5wPR. TAC ¶¶ 183-191. Allegations that Redwood ██████████████████████ ████████████████████—allegations Redwood strongly denies—ignores that the lenders' response to the fallout included a ██████████████████ ████████████████████ and Redwood's exit from the loan. This describes a post-exposure crisis response rather than involvement in the underlying wrong. *See* Dkt. 450-4. If allegations like these were enough, every lender that urged a borrower to manage PR fallout after a scandal would become a "participant" in the wrongdoing that *preceded the crisis*. That is not a limiting principle; it is the elimination of one.

More broadly, Plaintiffs' reading of "participation" recreates the same limiting-principle problem this Court already recognized in dismissing the SAC's conspiracy

claim. Order at 42. If financing, reporting rights, negotiating covenants, and reacting to public scandal is enough to "take part" in a trafficking venture, then not just Redwood, but MindGeek's 124 other lenders would have "participated" too. *Ratha II* did not require that result, and the TAC still offers no principled way to distinguish Redwood.

Plaintiffs also rely on an unpublished decision where participation rested on oversight and operational control at the place of the trafficking conduct. Opp. at 44; *Akhmad v. Bumble Bee Foods, LLC*, 2025 WL 3158655 (S.D. Cal. Nov. 12, 2025). *Akhmad* involved forced labor on fishing vessels exclusively harvesting fish for sale to defendants, where defendants provided targeted and ongoing support to the operators' business where violations occurred. *Id.* The TAC alleges nothing comparable here.

*Bank of America* is likewise inapposite. The court sustained a beneficiary liability claim against a bank that provided "premier services" and "facilitat[ed] the transfer of tens of thousands of dollars into and out of [the] account" for Epstein, raising suspicion that the transactions were not legitimate, while failing to follow its own ordinary procedures. *Doe v. Bank of Am., N.A.,* 2026 WL 380385, at *8 (S.D.N.Y. Feb. 11, 2026). That is about a bank's *direct, transactional interface with traffickers' funds*—the very conduit for the unlawful activity—coupled with procedure-bending that enabled the transfers. *Id.* The TAC does not allege anything similar. Redwood and dozens of other lenders lent funds under syndicated agreements that required compliance, and the response to the Kristof article by those lenders was to ███████████████ ███████—not to bend procedures to facilitate suspicious activity.

Quite simply, Redwood is a lender, not a participant in the trafficking venture.

**B.     Plaintiffs Do Not Establish Actual or Constructive Knowledge.**

Even under the lower scienter standard for beneficiary liability, Plaintiffs still do not plausibly plead that Redwood knew or should have known the venture was engaged in trafficking. Plaintiffs again rely on generalized "industry" illegality allegations, public reports, "red flags," and vague references to ██████████ That is still insufficient.

Plaintiffs say the TAC allegations "far exceed" those in *Ratha II* that the Ninth

REDWOOD DEFENDANTS' REPLY ISO OMNIBUS MOTION TO DISMISS | CASE NO. 2:21-CV-04920-WLH-ADS

Circuit held were found sufficient. Opp. at 48. But *Ratha II* did not hold that quantity of allegations suffices; it relied on their quality. In particular, it relied on concrete evidence that Rubicon was "undisputedly aware" of a whistleblower report about conditions at a specific factory, Walmart refused to buy shrimp because of forced-labor concerns at that factory, additional articles about those issues were circulated among Rubicon's managers, after which Rubicon resumed efforts to sell the product from the same factory. 168 F.4th at 548. The entity that owned the factory at issue also founded Rubicon so it could sell goods more easily in the United States. *Id.* at 547. Those were transaction-specific and venue-specific notice events, at identified times, that Rubicon chose to ignore while owning the entity and continuing to sell its output.

Redwood is not remotely similar. It is a lender, not an owner or reseller. Plaintiffs do not allege a single instance in which Redwood received specific information about trafficking on MindGeek's platforms.[2] And critically, when the most prominent public report did surface—the Kristof article—the lenders' *documented* response was ███████ ████████████████████████████████████████. Redwood then exited.[3]

Finally, the Order also noted that, similar to Visa, the "lack of any connection to Plaintiff's video or Plaintiff's trafficker" separately defeated the effort to plead knowledge or constructive knowledge against Redwood. Nothing in the TAC bridges that gap. Order at 24 n.6. The beneficiary liability claim thus still fails on knowledge.

---

[2] Reliance on *T.E. v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 474400, at *5 (S.D. Ohio Feb. 7, 2024) is misplaced. Wyndham was the franchisor, not a lender. The "reports" were generated by on-site hotel employees where trafficking occurred and observed hallmarks of trafficking, i.e., a direct pipeline of trafficking-specific information to defendant. It also sent inspectors to properties who should have observed trafficking firsthand. *Doe (A.L.G.) v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 5371983, at *4 n.1 (W.D. Tex. Nov. 21, 2024) is a franchise case inapposite for the reasons this Court has identified. Order at 22.

[3] In *Edmondson v. Raniere*, knowledge was inferred from "false campaigns and denials" and involved a member of the organization that directly perpetrated the trafficking (not a fixed return lender). 751 F. Supp. 3d 136, 181 (E.D.N.Y. 2024); Opp. at 48.

REDWOOD DEFENDANTS' REPLY ISO OMNIBUS MOTION TO DISMISS | CASE NO. 2:21-CV-04920-WLH-ADS

## IV.    THE TAC FAILS TO PLEAD A TVPRA CONSPIRACY

The Court already provided the governing framework for a TVPRA civil conspiracy claim in the Order: (i) actual knowledge of the venture's unlawful objective; (ii) agreement to pursue it; and (iii) intent to further it. Order at 35. The SAC failed on each element because it pleaded, at most, that Redwood had access to information, knew of controversy surrounding MindGeek's platforms, and structured loans to maximize fixed returns. Those allegations did not support a "meeting of the minds" or purposeful participation in trafficking. The TAC does not change that analysis. It repackages the same core theory in more emphatic language.

### A.    Plaintiffs Do Not Plausibly Allege Redwood's Actual Knowledge.

The TAC still does not plausibly allege that Redwood actually knew the venture's unlawful objective was trafficking. That is the controlling question, and this Court has already answered it once: Plaintiffs did not allege facts showing Redwood "knew MindGeek's business was rampant with CSAM content" or that Redwood was "presented with reports or information during [its] lending relationship demonstrating that MindGeek's venture itself fostered a sex trafficking enterprise." Order at 36. Redwood and the other lenders also ███████████ and Redwood exited the loan shortly after learning of the alleged trafficking in 2020. The Opposition does not cure those defects.

***Plaintiffs relabel constructive knowledge as actual awareness.*** They say Redwood's supposed knowledge is "evident" from the "exorbitant" interest rates,[4] "draconian" rights, public reports, and the proposition that ordinary diligence would have revealed MindGeek's true business model. Opp. at 22-23. That is the same "red flags" theory the Court already rejected. *See* Order at 35-36; Mot. at 15-19. A sophisticated lender may have reason to know of controversy, legal risk, or even illegality. That is not

---

[4] High rates cannot supply knowledge. Distressed or stigmatized credits often carry higher pricing. That does not mean the borrower is committing a crime or that the lender has actual knowledge of any illegality. To hold otherwise could convert any distressed-credit lender into a conspirator in anything the borrower was doing.

the same thing as actual awareness that the venture's unlawful objective was trafficking. Order at 35-36. Plaintiffs' new and stronger adjectives do nothing to bridge that gap.

***Criminal deliberate-ignorance cases do not convert generalized suspicion into actual knowledge.*** Even if willful blindness established TVPRA actual knowledge, Plaintiffs have not pleaded its requirements. Opp. at 31; *see Glob.-Tech Appls., Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) (defendant must "subjectively believe that there is a high probability that a fact exists" and "take deliberate actions to avoid learning" of it).

Plaintiffs' cited cases highlight the inapplicability of these factors to Redwood. Both *United States v. Jewell*, 532 F.2d 697 (9th Cir. 1976) and *United States v. Ramos-Atondo*, 732 F.3d 1113 (9th Cir. 2013) are criminal drug smuggling cases involving defendants confronted with *highly suspicious*, transaction-specific circumstances. In *Jewell*, the defendant accepted money to drive across the border after declining a prior offer to smuggle marijuana, admitted there was "probably something wrong," knew of a secret compartment in the car, and deliberately refrained from confirming what was hidden there. 532 F.2d at 698-99 & n.2. In *Ramos-Atondo*, the defendants unloaded packages at night from a boat during a live smuggling run, they were told the job involved marijuana, and they made no effort to ask "why." 732 F.3d at 1119-20.

Those facts bear no resemblance to the TAC's allegations against Redwood. Plaintiffs do not allege that Redwood confronted a specific trafficking fact and then deliberately avoided confirming it. To the contrary, Plaintiffs say Redwood ██████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████. *See, e.g.*, TAC ¶¶ 269, 283. Those are not the actions of a defendant deliberately averting its eyes to avoid confirming something it already believed was probably true.

***Plaintiffs' reporting-covenant theory still does not tell the Court what Redwood actually learned.*** Plaintiffs rely on the ████████████████ to say Redwood necessarily received detailed information about illegal content on MindGeek's sites. Opp. at 25-26. But the alleged categories of information—██████████████████████████

████████████████████████████████████████—do not themselves establish that Redwood received information about the existence or prevalence of CSAM, much less that Redwood thereby understood the venture's unlawful objective to be trafficking.[5] And, access to categories of reports is not the same as pleading what Redwood actually received, what was said and when, who at Redwood saw them, or how they revealed *trafficking* rather than generic compliance or reputational issues. Opp. at 25-26 & n.12. Plaintiffs thus answer the wrong question. The issue is not whether the agreements contemplated categories of reporting. The issue is whether the TAC pleads facts showing what Redwood actually learned from those reports. It does not.

***Plaintiffs' post-Kristof theory still alleges creditor crisis management, not actual awareness of a shared trafficking objective.*** Plaintiffs say Redwood's conduct—leaving management in place, not immediately foreclosing, tightening economics, restricting dividends, and allegedly directing public denials—shows it knowingly embraced trafficking. Opp. at 39-41. But Plaintiffs do not allege Redwood instructed MindGeek to keep specific content online, preserve specific moderation failures, coordinate with traffickers, or take any trafficking-specific operational step.[6] Instead, these facts show a fixed-return lender reacting to risk, not a conspirator embracing trafficking.

In fact, Redwood and the other lenders ████████████ to MindGeek as soon as the lenders became aware of such illegal conduct. They ████████████████ ████████████, and, shortly thereafter, Redwood exited from the loan. *See* Mot. at 22.

---

[5] Plaintiffs dispute what the loan covenants ████████████████████████████ ████████████████████████████████████████████ Opp. at 26 n.12. ████████████ ████████████████████████████████████████████████████ *See* Dkt. 450-3 at ████████████████████████████████████████████████████ . *See* Mot. at 14.

[6] Nor do they explain how Redwood could, on its own, direct MindGeek's conduct when it was not a "████████████████████████████████████████████████ ████████████

REDWOOD DEFENDANTS' REPLY ISO OMNIBUS MOTION TO DISMISS | CASE NO. 2:21-CV-04920-WLH-ADS

The TAC omits the most important part of the record. In briefing on the SAC, Redwood's motion pointed to the ██████████—incorporated by reference—to show that, after the Kristof article, the lenders ████████████████████████████████████ ███████████████ *See* Dkt. 544-1 at 5. Rather than meaningfully confront those facts, the Opposition retells the story as though the lenders simply chose not to act. That is not an accurate account of the record before the Court and undercuts an attempt to infer knowledge of a shared trafficking objective from post-crisis lender conduct.

***Plaintiffs' lender-dominance authorities do not establish actual knowledge***. Plaintiffs argue that Redwood was not a routine lender, and that unusual loan terms, monitoring, and influence can support an inference of knowledge. Opp. at 29. But the cases demonstrate that aggressive creditor oversight and significant leverage are ***not*** the same as actual, operative control. For instance, *Krivo* held that even a major creditor's ability to exert "great pressure and influence" over a debtor is not enough to establish control. *Krivo Indus. Supply v. Nat'l Distillers & Chem.*, 483 F.2d 1098, 1114 (5th Cir. 1973). Liability requires a "strong showing" that the creditor assumed "actual, participatory, total control" over the debtor's affairs. *Id.* at 1105. Close monitoring of purchases, check-signing, and financial controls still did not show that the debtor had become a mere instrumentality of the lender, because the debtor retained its own separate operations and decision-making. *Id.* at 1111-12.

In *Famm Steel, Inc. v. Sovereign Bank*, the borrower alleged that the bank forced it to hire a particular outside consultant, oversaw its accounting, terminated automatic cash sweeps, denied online access, mishandled the account, refused to answer third-party inquiries, failed to respond to restructuring or refinancing proposals, failed to grant forbearance, and later shut down the line of credit. 571 F.3d 93, 100-01 (1st Cir. 2009). This was not control "unusual in the commercial context," and "control does not arise unless the plaintiff can show that the creditor has obtained the power to direct the day-to-day management of the debtor." *Id.* at 103-04 (citation modified).

In *Woodward*, the bank had a direct lending relationship with the alleged fraudster,

11

REDWOOD DEFENDANTS' REPLY ISO OMNIBUS MOTION TO DISMISS | CASE NO. 2:21-CV-04920-WLH-ADS

knew the borrower was in financial trouble, saw repeated NSF activity, required an accommodation maker, held other loans outstanding, and knew the proceeds of the note would be used for the borrower's working capital and to pay pressing checks. *Woodward v. Metro Bank of Dall.*, 522 F.2d 84, 97-98 (5th Cir. 1975). Yet, the bank's conduct was still consistent with "an ordinary commercial loan," not conscious participation in fraud. *Id.* Finally, *Aetna* involved a highly specific, transaction-level fraud: a lender is told the exact purpose of a short-term loan, sees the month-end timing, and can infer that the borrower is creating a temporary and misleading balance-sheet appearance for a third party. *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 535-36 (6th Cir. 2000).

These cases thus hurt Plaintiffs: Even aggressive creditor conduct and significant leverage do not establish that the lender actually understood the borrower's unlawful scheme—much less that the lender actually knew the venture's objective was trafficking.

***The Investor Memorandum allegations still do not plausibly establish actual knowledge.*** Plaintiffs' latest theory is that Redwood was ▮▮▮▮▮▮▮ ▮▮▮▮▮ Investor Memorandum, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮. Opp. at 30-31, 34, 36. These allegations appear for the first time in the TAC, though Plaintiffs took no new discovery in the interim. Their sudden appearance underscores their conclusory character rather than curing any pleading defect the Court already identified. Even accepted as true, those allegations describe an effort to recruit lenders and raise capital through favorable compliance messaging. That is a commercial objective, not actual awareness of a shared trafficking purpose.

The TAC also does not plausibly allege Redwood's supposed role. The Memorandum explicitly states that it was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Mot. at 18 n.12-13. Plaintiffs never explain what authority Redwood—one of many lenders—supposedly had to ▮▮▮ or ▮▮ it.

And, because this theory sounds in fraud, it must satisfy Rule 9(b). It does not. Plaintiffs still do not identify which statements Redwood knew were false, what Redwood ▮▮▮▮▮▮▮▮▮▮▮▮▮, when that occurred, or

REDWOOD DEFENDANTS' REPLY ISO OMNIBUS MOTION TO DISMISS | CASE NO. 2:21-CV-04920-WLH-ADS

how it reflected actual knowledge of a trafficking venture. Plaintiffs' "relaxed" Rule 9(b) cases do not excuse the absence of those basics—especially after multiple amendments and where Plaintiffs purport to have the Memorandum itself.

### B.     Plaintiffs Fail to Plausibly Allege Agreement.

Plaintiffs still do not plead a meeting of the minds to traffic. Their brief largely retells the TAC's story in more emphatic terms. The Court already held that allegations of onerous loan terms, monitoring, and strategic involvement—without plausible allegations of coordination or assent to an unlawful objective—describe an ordinary creditor-debtor relationship. Order at 37-39. The TAC does not supply the missing piece: facts showing Redwood and MindGeek agreed to pursue unlawful trafficking. *Id.*

***The "day-to-day control" allegations still describe, at most, a lender-borrower relationship.*** As with the SAC, Plaintiffs rely on labels of Redwood's "unilateral control," "day-to-day management," and ██████████████ to show agreement. Opp. at 31-35; Mot. at 20-21 (comparing the SAC and TAC's allegations of control). And, Bergmair's testimony that ████████████████████████ Opp. at 38, is a characterization, not a factual account of *any* decisions Redwood made, the instructions it gave, or the trafficking-relevant functions it supposedly controlled. Plaintiffs also fail to address how Redwood could simultaneously seek "complete control" *and* dilute control by ████████ ██████████████. *See* Mot. at 13. Nor do they explain how "unilateral" control is consistent with a credit structure that █████████████████████████████████ ████████████. *Id*. at 12-13. Those tensions underscore implausibility.

***The anti-illegality covenants undermine any inference of agreement***. Plaintiffs say contractual anti-illegality covenants do not "defeat" conspiracy. Opp. at 35 (citing *Ryanair DAC v. Booking Holdings Inc*., 636 F. Supp. 3d 490, 510 & n.13 (D. Del. 2022)). That misses the point. Redwood does not contend that the covenants create a legal safe harbor. The issue is plausibility. Where, as here, the only pleaded relationship is a financing relationship, the agreements require legal compliance, and the return is fixed, Plaintiffs need concrete facts showing some kind of secret, contrary agreement. In

*Ryanair*, there were facts showing that the defendants directed third parties to engage in the very conduct the provisions purported to prohibit. 636 F. Supp. 3d at 510. Plaintiffs identify no such trafficking-specific coordination, no instructions to promote unlawful content, no agreement to disregard the covenants, and no facts showing Redwood intended anything other than repayment. The covenants underscore why a covert trafficking agreement is implausible. That is how the Court treated them in the Order.

***Plaintiffs' "customized support" theory still does not plead a trafficking agreement.*** The Opposition's assertion that Redwood provided "customized services and trafficking specific support" to MindGeek, Opp. at 31, is yet another conclusory assertion that is not supported by actual facts. The TAC still alleges only financial reporting, covenant monitoring, lender oversight, refinancing activity, and post-crisis management. That is not trafficking-specific support; it is generic lender conduct.

Plaintiffs' cited authority underscores this point. In *Jacobs*, the defendants were contractors allegedly hired to oversee specific infrastructure projects, tasked with ensuring labor standards compliance including inspections at sites where forced labor occurred. *F.C. v. Jacobs Sols. Inc.*, 790 F. Supp. 3d 1158, 1189-91 (D. Colo. 2025). The court found it plausible that the defendants had "associated [themselves]" with the venture by performing particular services at the place of exploitation. *Id*. Here, Plaintiffs do not allege Redwood oversaw moderation, managed platform operations, controlled removals, inspected trafficking-relevant conduct, or provided any operational service.

***Just as the Investor Memorandum does not show knowledge, it does not show an agreement to traffic***. As set forth above, the Investor Memorandum shows at most a commercial objective: raising capital through favorable compliance messaging. *Sarno* does not change that. Opp. at 36 (citing *United States v. Sarno*, 73 F.3d 1470, 1496 (9th Cir. 1995)). It was a post-trial criminal sufficiency case about conspiracy to make false statements to a bank. *Id.* The evidence was not mere "involvement" in the audit. Defendants jointly prepared the false financial package and audit, fabricated documents, restructured the transaction to insert an ostensibly independent intermediary, created a

REDWOOD DEFENDANTS' REPLY ISO OMNIBUS MOTION TO DISMISS | CASE NO. 2:21-CV-04920-WLH-ADS

paper trail to support fictitious income, and covered up the absence of stock swaps. *Id.*

The principle this Court drew from *Deutsche Bank* remains critical. An agreement to provide services or financing that may assist a tainted enterprise is not the same as an agreement to join the trafficking venture itself. *See* Order at 37-38; *Doe 1 v. Deutsche Bank,* 671 F. Supp. 3d 387 (S.D.N.Y. 2023). And in *Aetna*, even where the evidence supported the inference that the bank knowingly assisted a highly suspicious, transaction-specific fraud, the court reversed the conspiracy verdict because it did not establish the separate element of agreement. *Aetna*, 219 F.3d at 535-36; Opp. at 27, 49. Plaintiffs' theory describes fundraising and capital-raising activity, not trafficking-specific coordination, directives, or communications showing a meeting of the minds to traffic.

Finally, as set forth above, because the theory sounds in fraud, it fails Rule 9(b). Plaintiffs suggest they need discovery on this point, but cite no authority. Opp. at 36. The whole point of Rule 9(b) is to weed out fraud-related claims before discovery.

***Plaintiffs' shifting story underscores implausibility; it does not cure it.*** Plaintiffs previously pleaded that the Individual Defendants controlled MindGeek. *See* Mot. at 10-11. They now recast Redwood as the true operator (though they continue to allege in other sections of the TAC that *others* directed and managed the enterprise). *Id.* Plaintiffs cannot solve that problem by deleting prior allegations and substituting new labels.

Plaintiffs assert that inconsistent or "clarifying" pleadings are permissible. Opp. at 37-38 (citing cases). But Plaintiffs cite no case saying that contradictions are *irrelevant*, or that contradictions have no bearing on the plausibility of inferences to be drawn from the pleadings. *See* Mot. at 10-11.[7] This Court identified the same problem in dismissing the SAC. The TAC *still* conflicts not only with prior pleadings, but with itself and with incorporated documents. Even if inconsistent pleading may be procedurally permissible, it still cuts against plausibility. Rule 12 does not entitle Plaintiffs to discovery to resolve contradictions of their own making.

---

[7] Plaintiffs never engage with Redwood's cited case law here.

REDWOOD DEFENDANTS' REPLY ISO OMNIBUS MOTION TO DISMISS | CASE NO. 2:21-CV-04920-WLH-ADS

Finally, Plaintiffs repeatedly say Redwood's arguments raise "factual disputes" that must await discovery. Opp. at 31, 35-36. The problem is not that Redwood offers a competing narrative the Court must weigh against Plaintiffs'. It is that the TAC does not plead the nonconclusory facts to make knowledge, agreement, and intent plausible in the first place. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007). Plaintiffs have had years of litigation and amendments to plead facts this Court held were necessary; relabeling missing elements as "fact disputes" is not a pleading substitute.

### C.    Plaintiffs Fail to Plausibly Allege Intent.

Plaintiffs do not plausibly allege that Redwood intended to further trafficking rather than protect repayment. The Order rejected Plaintiffs' intent theory because the pleadings described nothing more than a fixed-return lender that extended credit and expected contractual repayment, with no plausible reason to prefer trafficking over lawful revenue. Order at 39-41. The TAC changes the adjectives, not the inference. It adds phrases like "outsized profits," "de facto ownership," "exorbitant" interest rates, and █████ ███████████████████, but still does not allege that Redwood took trafficking-directed steps or made purposeful decisions to further trafficking. That remains fatal. Conspiracy requires a conscious decision to help achieve the unlawful end, not simply a profitable commercial relationship with a borrower later accused of serious wrongdoing.

*Plaintiffs cannot avoid pleading intent by bootstrapping it to their deficient agreement theory.* Plaintiffs say intent "may be inferred from the same circumstantial evidence that establishes [] agreement," and that "criminal intent to do the act is established by the formation of the conspiracy." Opp. at 39 (*citing Pinkerton v. United States*, 328 U.S. 640, 647 (1946)). While agreement and intent "often overlap" (Order at 39), overlap is not substitution. It presupposes that agreement has been plausibly pleaded. *Pinkerton* is a vicarious-liability rule: once a conspiracy is properly established, a conspirator may be liable for substantive offenses committed in furtherance of it. 328 U.S. at 646-47. It is not a pleading shortcut. Plaintiffs still must plead facts showing that Redwood purposefully chose to further trafficking. They do not.

REDWOOD DEFENDANTS' REPLY ISO OMNIBUS MOTION TO DISMISS | CASE NO. 2:21-CV-04920-WLH-ADS

***Plaintiffs' economic theory still mistakes commercial motive for trafficking purpose.*** Plaintiffs argue that Redwood's "exorbitant" rates, increased investment, and lead-lender role show that Redwood intended to profit from the "illegal business itself." Opp. at 39-41.[8] But those allegations describe ordinary economic incentives in a distressed or controversial credit, not a purposeful decision to further trafficking. This Court rejected the same leap as to the SAC: the "financial incentive to accept interest on debt" does not establish intent to aid sex trafficking and that lenders had "every incentive for MindGeek to operate legally so it could continue to service its debt." Order at 40-41.

The "exorbitant interest" narrative also conflicts with the record. The 2018 Financing Agreement ███████████████████████. Plaintiffs never explain why that number plausibly supports an inference of trafficking purpose. And if rate levels alone proved intent, every lender in the syndicate would be equally implicated. Plaintiffs' related assertion that repayment "depende[d]" on illegal content fares no better. Opp. at 40-41. That is a conclusion, not a pleaded fact. The TAC *concedes* that the business monetized and maximized revenue from "licit content" (e.g., TAC ¶¶ 61, 249), and does not allege what share of MindGeek's revenue supposedly came from illegal content, how debt service depended on *that* content specifically, or what Redwood supposedly knew about that relationship. The theory is also inconsistent with the agreements' anti-illegality covenants and with the later ███████████████████████. If repayment truly depended on ongoing illegality, those lender actions would have been irrational.

Plaintiffs' attempt to distinguish *Deutsche Bank* repackages the same failed motive theory. They say the banks were "indifferent" to Epstein's trafficking while profiting from his legal businesses, whereas Redwood's "motive and intent" was to capture "enormous profits" from MindGeek's "illegal business." Opp. at 41. But Plaintiffs still plead fixed-

---

[8] Plaintiffs boldly claim that Redwood's repayment "depende[d]" on "preserving" MindGeek's illegal business, and Redwood thus had reason to keep that model in place. Opp. at 38-41. But the TAC does not plead facts showing repayment actually depended on trafficking rather than lawful subscriptions, advertising, or other revenue streams.

REDWOOD DEFENDANTS' REPLY ISO OMNIBUS MOTION TO DISMISS | CASE NO. 2:21-CV-04920-WLH-ADS

interest debt service, not an illegal-content-linked stake in the venture.

***Plaintiffs' post-Kristof allegations still do not plausibly show trafficking intent.*** Plaintiffs reuse the same allegations they invoke for knowledge and agreement and ask the Court to draw one further inference: that Redwood's response proves it chose trafficking as an objective. Opp. at 39-41. That does not follow. Even accepting those allegations as true, they describe ██████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████. That is consistent with creditor self-protection and wholly inconsistent with a purposeful decision to advance trafficking.

### D. Plaintiffs Do Not Allege an Overt Act.

Plaintiffs' overt-act section does not cure the missing elements of knowledge, agreement, and intent. The acts Plaintiffs identify as to Redwood are still ordinary lending and investment conduct: financing, monitoring, reporting, renegotiation, communications with lenders, and response to public controversy. Plaintiffs still do not plead an overt act by Redwood that advances a trafficking objective. Reliance on *Matta-Ballesteros* does not help. Opp. at 42; *United States v. Matta-Ballesteros*, 71 F.3d 754, 765 (9th Cir. 1995). It stands only for the unremarkable proposition that facially innocent acts may support complicity in a far more concrete criminal context. Nor do *Lothian* and *Cruz-Ramirez* help. Opp. at 43 (citing *United States v. Lothian*, 976 F.2d 1257, 1262 (9th Cir. 1992) and *United States v. Cruz-Ramirez*, 2011 WL 5599630, at *5 (N.D. Cal. Nov. 17, 2011)). Those cases concern withdrawal after a properly established conspiracy, and do not avoid the need to plead a conspiracy in the first place. The waiver point fails because Redwood argued that the TAC does not identify any Redwood act to further trafficking. Mot. at 21.

### V. PLAINTIFFS' UCL CLAIM STILL FAILS

Plaintiffs' UCL claim remains defective. Plaintiffs rely on group pleading and MindGeek's conduct, not Redwood-specific conduct. Under the "unlawful" prong, the claim rises or falls with Plaintiffs' predicate TVPRA theories (and thus fall, as discussed in Sections III and IV). The Opposition's observation that *Ratha II* confirms retroactivity

does not help because the predicate claims fail on their elements, not on retroactivity. Plaintiffs' suggestion that California criminal statutes can independently serve as predicates (Opp. at 49 n.17) fails because those target producers, distributors, and possessors of CSAM (not lenders). The "unfair" and "fraudulent" prongs fare no better. Plaintiffs do not identify any Redwood-specific conduct that is independently unfair or fraudulent. And to the extent Plaintiffs rely on the Investor Memorandum or alleged public denials, the theory sounds in fraud and fails Rule 9(b) for the reasons discussed. *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) in turn is inapposite. Where a UCL theory is "grounded in fraud," it "must satisfy the heightened pleading requirements of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-05 (9th Cir. 2003).

## VI.    <u>PLAINTIFFS' CIVIL CONSPIRACY CLAIM STILL FAILS</u>

Plaintiffs cannot use inadequate TVPRA and UCL theories to bootstrap a state-law conspiracy claim against Redwood. California conspiracy requires a viable underlying wrong and facts showing the defendant knowingly agreed and intended to facilitate it. Order at 42-43. The TAC identifies three predicate wrongs: distribution of sexually explicit materials, UCL, and CTVPA violations. None works. The TAC does not allege that Redwood distributed, or agreed to distribute, explicit materials. The UCL predicate fails for the reasons discussed. As to the CTVPA, the statute does not impose liability on a beneficiary of a trafficking scheme and this Court held that Plaintiffs had not alleged the sort of perpetrator conduct the statute requires. Order at 46-47. The Opposition does not grapple with that or explain how typical lender conduct satisfies the CTVPA's perpetrator-focused requirements. Without a viable predicate tort, the claim fails.

Plaintiffs' authority does not change the analysis. *RTC v. BVS Dev., Inc.*, 42 F.3d 1206, 1214 (9th Cir. 1994) and *Aetna*, 219 F.3d at 536 address when a lender's extraordinary involvement may create tort duties. Neither dispenses with the requirement to plead a viable predicate or to allege that the lender agreed to the specific wrongful conduct. *Kidron* describes how intent may be inferred: "the nature of the acts done, the relation of the parties, the interest of the alleged conspirators." *Kidron v. Movie*

REDWOOD DEFENDANTS' REPLY ISO OMNIBUS MOTION TO DISMISS | CASE NO. 2:21-CV-04920-WLH-ADS

*Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995). Here, the acts are lending, the relation is lender-borrower, and the interest is contractual repayment. Finally, *El Ranco, Inc. v. First Nat'l Bank of Nev.*, 406 F.2d 1205, 1216 (9th Cir. 1968) and *BBD Transp. Co. v. S. Pac. Transp. Co.*, 627 F.2d 170, 173 (9th Cir. 1980) address the scope of vicarious liability once a conspiracy is *established*. This claim fails once more.

## VII.    <u>PLAINTIFFS' STATUTE OF LIMITATIONS THEORIES FAIL</u>

Plaintiffs' accrual and tolling theories remain untethered to Redwood-specific conduct. They describe MindGeek's public controversy and assume the doctrines extend to claims against Redwood. Plaintiffs invoke "last overt act" accrual and "no withdrawal" concepts, but presuppose a properly pleaded conspiracy and an overt act. Opp. at 52-53. They allege ordinary lender conduct as to Redwood. *See* Section IV. Plaintiffs also invoke fraudulent concealment and delayed discovery. Opp. at 53. That requires particularized allegations of what Redwood concealed, how, when Plaintiffs discovered the basis for their claims, and what diligent investigation prevented earlier discovery. None exist. Plaintiffs invoke relation back under Code Civ. Proc. § 474, but that requires genuine ignorance and diligence, not later refinement of a theory against a known lender group. *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1199 (2013) does not help. It distinguishes continuing wrongful acts from effects. The TAC concerns discrete lending conduct, not recurring trafficking-directed acts by Redwood. *See Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (continuing effects not actionable).

## VIII.    <u>LEAVE TO AMEND SHOULD BE DENIED.</u>

Leave to amend should be denied. This Court issued a detailed dismissal order identifying the defects in Plaintiffs' theories against Redwood. The TAC repackages the same allegations, and they cannot overcome the central weakness in the case: Redwood was a lender, not a participant in any underlying trafficking venture.

## IX.    <u>CONCLUSION</u>

Redwood respectfully requests that this action be dismissed with prejudice.

REDWOOD DEFENDANTS' REPLY ISO OMNIBUS MOTION TO DISMISS | CASE NO. 2:21-CV-04920-WLH-ADS

Dated: April 3, 2026                         WEIL, GOTSHAL & MANGES LLP

                                   By:   */s/ James M. Pearl*
                                         JAMES M. PEARL
                                         *Attorneys for Defendants*
                                         *Redwood Capital Management, LLC,*
                                         *Redwood Master Fund, Ltd., Redwood*
                                         *Opportunity Master Fund, Ltd., Manuel*
                                         *2018, LLC, Ginogerum, LLC, and White-*
                                         *Hathaway Opportunity Fund, LLC*

REDWOOD DEFENDANTS' REPLY ISO OMNIBUS MOTION TO DISMISS | CASE NO. 2:21-CV-04920-WLH-ADS

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants Redwood Capital Management, LLC, Redwood Master Fund, Ltd, Redwood Opportunity Master Fund, Ltd, Manuel 2018, LLC, Ginogerum, LLC, and White-Hathaway Opportunity Fund, LLC, certifies that this brief contains 20 pages, as stipulated by the parties, ECF No. 653.

Dated: April 3, 2026                    WEIL, GOTSHAL & MANGES LLP

                                        By:  */s/ James M. Pearl*
                                             JAMES M. PEARL

REDWOOD DEFENDANTS' REPLY ISO OMNIBUS MOTION TO DISMISS | CASE NO. 2:21-CV-04920-WLH-ADS