DREW TULUMELLO (#196484)
drew.tulumello@weil.com
MARK A. PERRY (#212532)
mark.perry@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: 202 682 7000
Fax: 202 857 0940

*Attorneys for Visa Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SERENA FLEITES,<br><br>                    Plaintiff,<br><br>        v.<br><br>MINDGEEK S.A.R.L.; MG FREESITES, LTD; MINDGEEK USA INCORPORATED; MG PREMIUM LTD.; MG GLOBAL ENTERTAINMENT INC.; 9219-1568 Quebec, Inc. (d/b/a MindGeek); BERND BERGMAIR; FERAS ANTOON; DAVID TASSILLO; COREY URMAN; VISA INC.; COLBECK CAPITAL DOES 1-5; BERGMAIR DOES 1-5,<br><br>                    Defendants. | Case No. 2:21-CV-04920-WLH-ADS<br><br>Judicial Officer: Wesley L. Hsu<br>Courtroom: 9B<br><br>**DEFENDANT VISA INC.'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**<br><br>Date: May 22, 2026<br>Time: 1:30 p.m. |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................................................1

BACKGROUND ................................................................................................3

LEGAL STANDARD.........................................................................................6

ARGUMENT .....................................................................................................7

I.    The Challenged Statements Are Objectively Baseless ...................................8

    A.    There Is No Factual Basis for Plaintiffs' Allegations that Visa Collaborated with MindGeek to Conceal Illegal Content Through "Scrubbing" and Content Manipulation (Statements 1, 2, 3) ...............8

    B.    There Is No Factual Basis for Plaintiffs' Allegations that Visa Afforded MindGeek Special Payment Processing Privileges (Statements 4, 5)....................................................................................10

    C.    There Is No Factual Basis for Plaintiffs' Allegations that Visa Afforded MindGeek Special Treatment and Exemptions (Statements 6, 7, 8, 9, 10)....................................................................12

    D.    There Is No Factual Basis for Plaintiffs' Allegations that Visa Was Motivated to Capture Transactions in the Adult Online Industry (Statements 11, 12, 13, 14, 15) ...........................................................13

II.    Plaintiffs' Counsel Failed to Conduct a Reasonable Inquiry to Support the Challenged Statements in the Operative Complaints...................................14

III.    The Court Should Strike the Challenged Statements ....................................17

CONCLUSION................................................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado v. Liang,*
2025 WL 4036434 (C.D. Cal. Dec. 8, 2025)......................................................14

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..............................................................................................8

*Attia v. Google LLC,*
2018 WL 2971049 (N.D. Cal. June 13, 2018)...................................................15

*Brubaker v. City of Richmond,*
943 F.2d 1363 (4th Cir. 1991) ...........................................................................12

*Christian v. Mattel, Inc.,*
286 F.3d 1118 (9th Cir. 2002) ........................................................................6, 12

*In re Connetics Corp. Sec. Litig.,*
542 F. Supp. 2d 996 (N.D. Cal. 2008)................................................................15

*Cooter & Gell v. Hartmarx Corp.,*
496 U.S. 384 (1990)..............................................................................................7

*Gong v. Sarnoff,*
2023 WL 5372473 (S.D.N.Y. Aug. 22, 2023) ..................................................15

*Ivanova v. Columbia Pictures Indus., Inc.,*
217 F.R.D. 501 (C.D. Cal. 2003)........................................................................15

*Lake v. Gates,*
130 F.4th 1064 (9th Cir. 2025).........................................................................13

*Mars Steel Corp. v. Cont'l Bank N.A.,*
880 F.2d 928 (7th Cir. 1989) ...............................................................................6

*Martinez v. City of West Sacramento,*
2021 WL 2227830 (E.D. Cal. June 2, 2021).......................................................9

*Molski v. Evergreen Dynasty Corp.,*
500 F.3d 1047 (9th Cir. 2007) ...........................................................................14

*Moser v. Bret Harte Union High Sch. Dist.*,
    366 F. Supp. 2d 944 (E.D. Cal. 2005) ............................................................... 7, 9

*Musi Inc. v. Apple Inc.*,
    2026 WL 763310, at *5 (N.D. Cal. Mar. 16, 2026) ....................................... 7, 18

*Narvaes v. EMC Mortg. Corp.*,
    2009 WL 1227849 (D. Haw. May 5, 2009) ........................................................ 12

*Operating Eng'rs Pension Trust v. A-C Co.*,
    859 F.2d 1336 (9th Cir. 1988) ............................................................................. 6

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
    2024 WL 1014159 (E.D.N.Y. Mar. 8, 2024) ........................................................ 7

*Raiser v. Kleeger*,
    2022 WL 2104494 (C.D. Cal. June 9, 2022) ........................................................ 8

*Stone v. Carey*,
    2025 WL 3753134 (C.D. Cal. Dec. 23, 2025) ..................................................... 14

*Townsend v. Holman Consulting Corp.*,
    929 F.2d 1358 (9th Cir. 1990) ................................................................ 5, 7, 9, 12

*Truesdell v. S. Cal. Permanente Med. Grp.*,
    209 F.R.D. 169 (C.D. Cal. 2002) ......................................................................... 6

*United States v. Excellair, Inc.*,
    637 F. Supp. 1377 (D. Colo. 1986) ..................................................................... 15

*Wilens v. NRG Energy, Inc.*,
    2016 WL 11757771 (C.D. Cal. Aug. 16, 2016) ................................................... 12

**Other Authorities**

Fed. R. Civ. P. 11 ..........................................................................................*passim*

Pursuant to Federal Rule of Civil Procedure 11, Defendant Visa Inc. ("Visa") moves for the imposition of sanctions against Plaintiffs' counsel[1] for including factually baseless allegations as to Visa in the Third Amended Complaint ("TAC").

## INTRODUCTION

Plaintiffs brought this suit against Visa on the premise that Visa processed credit card payments for MindGeek while allegedly knowing that MindGeek's websites contained some content that was the product of unlawful trafficking.   This Court dismissed the claims against Visa in September 2025, reasoning that "[i]n the absence of interaction, coordination, or shared purpose, continued service – even in the face of awareness – is not enough to demonstrate a meeting of the minds and plead agreement." Order re Visa Inc.'s Motion to Dismiss, *Fleites v. MindGeek S.A.R.L.* No. 2:21-CV-04920

---

[1] Counsel for *Fleites* also represents plaintiffs in fourteen (14) related cases currently pending before the Court (*Fleites*, collectively with the plaintiffs in the related cases, "Plaintiffs"), and those attorneys are referenced as "Plaintiffs' counsel" in this Motion.  *See generally* ECF No. 54 (permitting Visa to file an omnibus motion to dismiss related cases that incorporates arguments made in *Fleites* motion to dismiss).  This Motion applies to the factually (and legally) baseless allegations brought by Plaintiffs' counsel against Visa in the above-captioned proceeding as well as in the related cases:  *K.A. v. MindGeek, S.à.r.l., et al.*, Case No. 2:24-cv-04786-WLH-ADS (C.D. Cal. June 7, 2024); *L.T. v. MindGeek, S.à.r.l., et al.*, Case No. 2:24-cv-04791-WLH-ADS (C.D. Cal. June 7, 2024); *N.L. v. MindGeek, S.à.r.l., et al.*, Case No. 2:24-cv-04788-WLH-ADS (C.D. Cal. June 7, 2024); *N.Y. v. MindGeek, S.à.r.l., et al.*, Case No. 2:24-cv-04801-WLH-ADS (C.D. Cal. June 7, 2024); *T.C. v. MindGeek, S.à.r.l., et al.*, Case No. 2:24-cv-04795-WLH-ADS (C.D. Cal. June 7, 2024); *X.N. v. MindGeek, S.à.r.l., et al.*, Case No. 2:24-cv-04800-WLH-ADS (C.D. Cal. June 7, 2024); *J.C. v. MindGeek, S.à.r.l., et al.*, Case No. 2:24-cv-04971-WLH-ADS (C.D. Cal. June 12, 2024); *C.S. v. MindGeek, S.à.r.l., et al.*, Case No. 2:24-cv-04992-WLH-ADS (C.D. Cal. June 13, 2024); *S.O. v. MindGeek, S.à.r.l., et al.*, Case No. 2:24-cv-04998-WLH-ADS (C.D. Cal. June 13, 2024); *W.L. v. MindGeek, S.à.r.l., et al.*, Case No. 2:24-cv-04977-WLH-ADS (C.D. Cal. June 13, 2024); *L.S. v. MindGeek, S.à.r.l., et al.*, Case No. 2:24-cv-05026-WLH-ADS (C.D. Cal. June 14, 2024); *A.K. v. MindGeek, S.à.r.l., et al.*, Case No. 2:24-cv-05190-WLH-ADS (C.D. Cal. June 20, 2024); *W.P. v. MindGeek, S.à.r.l., et al.*, Case No. 2:24-cv-05185-WLH-ADS (C.D. Cal. June 20, 2024); and *J.L. v. MindGeek, S.à.r.l., et al.*, Case No. 2:24-cv-7046-WLH-ADS (C.D. Cal. Aug. 20, 2024).

VISA'S MOTION FOR SANCTIONS
PURSUANT TO FED. R. CIV. P. 11

2:21-CV-04920-WLH-ADS

(C.D. Cal. Sept. 26, 2025), ECF No. 609 at 34. The Court granted Plaintiffs leave to amend in part, and Plaintiffs filed amended complaints on December 15, 2025. Visa has moved to dismiss those new complaints as legally insufficient to state a claim against it.

This motion is regrettably necessary, however, because Plaintiffs' counsel across these 15 cases has breached well-established obligations under Rule 11. Rather than conduct additional factual investigation or refine their legal theories, Plaintiffs' counsel has invented new "facts" that purport to implicate Visa not merely as a payment processor, but as an active and colluding participant in MindGeek's day-to-day business operations. Some of these allegations are based on demonstrably unfounded inferences from anodyne facts, such as the assertion that Visa must have afforded MindGeek special treatment simply because Visa did not immediately cut MindGeek out of the Visa payment network. Others are simply fabricated, such as the far-fetched assertion that Visa gave particular search terms to MindGeek to help MindGeek optimize the alleged illegal trafficking activities—a claim actually contradicted by the limited jurisdictional discovery taken in this matter.

Visa does not pursue this motion lightly. The allegations in this case are serious, and disagreements on nuanced points of law or fact are not grounds for a Rule 11 motion. Indeed, Visa has not previously sought sanctions for any of the prior complaints, even though it disagrees with many of the characterizations made therein. And undersigned counsel has never filed a Rule 11 motion (in any case) in nearly three decades of practice. But Plaintiffs' counsel has breached its obligations under Rule 11 by raising factually unsupported allegations in an apparent attempt to keep Visa in this case at any cost. Such tactics unnecessarily drain judicial resources, unfairly prejudice opposing parties, and do nothing to advance the plaintiffs' interests or the interests of justice. This is the precise kind of conduct against which Rule 11 is intended to protect.

Visa does not seek to punish Plaintiffs' counsel for reimbursement of fees or costs, even though that is typically the minimum remedy for a Rule 11 violation. Visa seeks no fees or costs. Instead, Visa asks only that four discrete categories of allegations be

stricken from the complaints. Visa therefore respectfully requests that the Court issue Rule 11 sanctions by striking the factually baseless allegations.

## BACKGROUND

In July 2021—more than four years ago—Fleites commenced this action alleging that Visa violated the Trafficking Victims Protection Reauthorization Act ("TVPRA"), engaged in civil conspiracy, and violated California's Unfair Competition Law ("UCL"), based on Visa's alleged role as a payment network for MindGeek.

After partially dismissing the First Amended Complaint, the Court permitted limited jurisdictional discovery as to certain MindGeek entities and executives (but not as to Visa). *See* Order Den. Pl.'s Req. Scheduling Order & Req. Disc. ("Discovery Order"), ECF No. 168 at 1–2. Fleites filed her Second Amended Complaint ("SAC") on May 23, 2024. Plaintiffs' counsel thereafter filed complaints in the related actions between June and August 2024.

The allegations against Visa in the SAC were identical to the allegations raised against Visa in the complaints for the related actions. *See* SAC ¶¶ 293–94. Specifically, Fleites alleged that Visa and its "member banks" provided "merchant services to MindGeek [and] were aware of its trafficking venture and knowingly profited from it." *See id.* ¶¶ 287, 303. The SAC further alleged that Visa knew or should have known that illegal content generally was available on MindGeek's sites, based either on third-party advocacy and reporting or by conducting ad hoc searches on MindGeek's sites. *See id.* ¶¶ 287–89, 299, 303.

Visa moved to dismiss the SAC as well as the Prior Complaints in an omnibus motion to dismiss. On September 26, 2025, the Court dismissed Fleites's claims against Visa, noting that "the relationship that Plaintiff illustrates of Visa and MindGeek is more akin to a 'remote intermediary' that provided 'off-the-shelf product' to MindGeek," and that "the SAC, while detailed in describing public controversy surrounding MindGeek, does not plead facts showing that Visa intended to further a trafficking venture." *Fleites v. MindGeek S.A.R.L.*, 2025 WL 2902292, at *8, 18 (C.D. Cal. Sept. 26, 2025) ["*SAC*

*Order*"], amended Oct. 17, 2025. The Court further stated that the SAC does "not allege facts showing that Visa affirmatively sought to further [MindGeek's] conduct or shared MindGeek's unlawful goals." *Id.* at 19. The Court incorporated the SAC Order by reference in the orders on the omnibus motion to dismiss filed in the related actions. *See, e.g.*, Order Re Omnibus Motion to Dismiss, *K.A. v. MindGeek, S.à.r.l.* (C.D. Cal Nov. 6, 2025), ECF No. 166.

Following the Court's dismissal of Plaintiffs' claims against Visa and without any additional discovery, Fleites filed the TAC in this action. Plaintiffs' counsel then filed the amended complaints in the related actions (collectively with the TAC, the "Operative Complaints"). The Operative Complaints raise the same claims against Visa for conspiracy under the TVPRA, civil conspiracy, and violation of the UCL. *See generally* TAC ¶¶ 365–74, 421–29, 440–44. The Operative Complaints include multiple new allegations—none of which are based upon new information and which, if true, could have been raised in Plaintiffs' Prior Complaints. The specific allegations Visa challenges (the "Challenged Statements") are set forth below, organized into four categories and numbered for the Court's convenience:

**Allegations that Visa Collaborated with MindGeek to Conceal Illegal Content Through "Scrubbing" and Content Manipulation**

(1) "Visa and its network banks sometimes suggested changes to words and descriptions connected to illegal content" (TAC ¶ 310);

(2) "[Visa] collaborated with MindGeek on ways to scrub its sites of words and descriptions that would make illegal content much easier for activists to find" (*id.* ¶ 313);

(3) "Visa permitted MindGeek to use on its tubesites words that were banned from its premium sites even though for compliance purposes the violation would have been the same" (*id.* ¶ 310);

**Allegations that Visa Afforded MindGeek Special Payment Processing Privileges**

(4) "Visa and its network banks … removed restrictions on payments that had clear indicia of trafficking which would have resulted in a suspension or blocks on other merchant accounts" (*id.* ¶ 310);

(5) Visa "worked with MindGeek to develop payment structures to help them both continue to process illegal payments without public exposure. For example,

Visa and its network banks encouraged and permitted MindGeek to process substantial amounts of its online payments through 'Third-Party Payment Processors' that MindGeek actually owned, and Visa delegated to those payment processors the purported obligations of monitoring the merchant – i.e., permitting MindGeek to monitor itself.  Visa knew that in doing so it would be permitting the merchant to also be responsible for its own monitoring and to process payments in a manner that concealed illegality" (*id.* ¶ 308);

**Allegations that Visa Afforded MindGeek Special Treatment and Exemptions**

(6) "Visa permitted [its] network banks to avoid *bona fide* website monitoring and to instead provide pretextual reports that were not consistent with Visa's standards and rules or its practices for other merchants" (*id.* ¶ 304);

(7) "Visa ignored its own internal standards and practices in response to reported violations by MindGeek" (*id.* ¶ 305);

(8) "Visa, at most, would ask the network banks to secure from MindGeek a 'self-certification' that it was operating legally and which would not address the specific instances and evidence presented by third-parties or otherwise be subjected to good faith scrutiny as would have been the case with other merchants" (*id.* ¶ 307);

(9) "[Visa] permitted MindGeek entities to investigate MindGeek" (*id.* ¶ 313);

(10) "[Visa] accepted purported investigatory findings it knew were false and nonresponsive" (*id.*);

**Allegations that Visa Targeted the Adult Online Entertainment Industry**

(11) "Visa permitted MindGeek to operate outside its enforcement regime because it wanted … to become the primary payment processor in the booming online porn industry and capture that market's substantial and rapidly increasing flow of payment transactions, especially those of its emerging dominant monopolist, MindGeek" (*id.* ¶ 291);

(12) "This [arrangement] was of critical importance to Visa, which ran a nonpremium volume business and had placed grabbing market share in transaction volume as one of its highest priorities, particularly in the emerging online marketplace overall and booming adult online industry in particular" (*id.* ¶ 292);

(13) "Visa permitted MindGeek to operate outside its enforcement regime because it wanted … to prevent emerging payment processing alternatives like crypto, direct transfers, and digital wallets from using MindGeek and this industry to grow more competitive" (*id.* ¶ 291);

(14) "[This arrangement] also facilitated Visa's objective of excluding alternative non-credit card payment methods in the online market such as electronic transfers and crypto" (*id.* ¶ 292);

(15) "Visa permitted MindGeek to operate outside its enforcement regime because it wanted … to receive the higher fees Visa and its network banks could

charge MindGeek on these transactions" (*id.* ¶ 291).[2]

## LEGAL STANDARD

Rule 11 of the Federal Rules of Civil Procedure requires that an attorney certify, after a reasonable inquiry, that a pleading's legal and factual contentions are warranted and not asserted for an improper purpose. *See* Fed. R. Civ. P. 11(b)(1)–(3). Under Ninth Circuit precedent, sanctions may be imposed "on the signer of a paper" if it is filed for an "improper purpose" or "frivolous." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). A "frivolous" filing is one that "is both baseless and made without a reasonable and competent inquiry." *Id.* Accordingly, when a Rule 11 motion is filed on the basis of allegations in a complaint, a court must ask "(1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (quotation marks and citation omitted).

Rule 11 requires that factual contentions have evidentiary support or, if so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Fed. R. Civ. P. 11(b)(3). Allegations that lack evidentiary support and are not identified as contingent on future discovery are therefore objectively baseless within the meaning of Rule 11. No showing of bad faith or subjective intent is required. *See Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 173–74 (C.D. Cal. 2002). Therefore, even a pleading or motion filed "in the best of faith" by a lawyer "convinced of the justice of his client's cause" may give rise to sanctions if counsel

---

[2] On February 5, 2026, Visa emailed counsel for Plaintiffs requesting the factual basis for these categories of allegations in the Third Amended Complaint. On February 20, 2026, Visa conferred with counsel by phone regarding the factual basis for the allegations. On March 20, 2026, Visa served this motion on counsel for Plaintiffs. On April 9, 2026, at the end of the 21-day Rule 11 period, Visa confirmed with Plaintiffs' counsel that they did not intend to amend. Plaintiffs opposed the motion. Plaintiffs also requested a second telephonic conference but were not available until April 16. Visa conferred with Plaintiffs on April 16, and Plaintiffs again opposed the motion.

"neglected to make [a] 'reasonable inquiry' beforehand." *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989).

While sanctions are an "extraordinary remedy," *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988), they serve a critical function: to "reduce frivolous claims, defenses, or motions and to deter costly meritless maneuvers," thereby "avoid[ing] delay and unnecessary expense in litigation," *Christian*, 286 F.3d at 1127 (citation omitted).

**ARGUMENT**

Invoking the jurisdiction of a federal court "is no trifling undertaking." *Christian*, 286 F.3d at 1127. As the Ninth Circuit has explained, counsel's signature on a pleading is "tantamount to a warranty" that the claims asserted are grounded in fact. *Id.* Here, Plaintiffs' counsel has broken that warranty. After this Court dismissed Plaintiffs' prior complaints, counsel filed the Operative Complaints containing allegations that are factually baseless, objectively false, and directly contradicted by indisputable public materials. These are not close calls, subtle misstatements, or good-faith errors of interpretation. Plaintiffs' counsel advanced factual assertions unsupported by any evidence and has declined to withdraw them.

In evaluating a motion for Rule 11 sanctions, courts are required to "marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990). Allegations that are "both baseless and made without a reasonable and competent inquiry" warrant sanctions. *Townsend*, 929 F.2d at 1362. Even sophisticated counsel is subject to sanctions if a complaint "materially misrepresents the facts at the heart of [the] lawsuit." *Musi Inc. v. Apple Inc.*, 2026 WL 763310, at *5 (N.D. Cal. Mar. 16, 2026). As demonstrated below, that is precisely what occurred here.[3]

---

[3] There are other factually baseless allegations in the complaints that Visa does not address here, such as the assertion that Visa and MindGeek must have "repeatedly coordinated their public comments" simply because Visa denied any wrongdoing. TAC ¶ 311. Because, however, these allegations are not germane to the claims actually

## I.    The Challenged Statements Are Objectively Baseless

Allegations that are objectively baseless are, by definition, frivolous under Rule 11. A filing is frivolous if it is "unreasonable when viewed from the perspective of a competent attorney admitted to practice before the district court." *Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 950 (E.D. Cal. 2005). The Challenged Statements detailed above meet that objective standard. They are unsupported by any evidence, contradicted by sworn testimony, and internally inconsistent with Plaintiffs' own pleadings. No reasonable attorney could certify these allegations as fact.

Indeed, it is telling that in Plaintiffs' opposition to Visa's motion to dismiss, counsel appears to have backed away from many of these allegations, focusing much of its discussion on Visa's purported decision to except MindGeek from its ordinary rules (an allegation that is demonstrably insufficient to state a claim) rather than on the new allegations of direct interactions with and involvement in MindGeek's business. *See generally* Pls.' Omnibus Opp'n to Colbeck, Redwood, and Visa's Motions to Dismiss, ECF No. 654. For that reason (among others), the Court may grant Visa's motion to dismiss without resolving this Rule 11 motion. But in any event, counsel's retreat from the new allegations, combined with the law and facts discussed below, demonstrates the absence of any factual basis for them.

### A.    There Is No Factual Basis for Plaintiffs' Allegations that Visa Collaborated with MindGeek to Conceal Illegal Content Through "Scrubbing" and Content Manipulation (Statements 1, 2, 3)

Plaintiffs first contend that Visa collaborated with MindGeek to conceal illegal content by manipulating website language and terminology. Specifically, Plaintiffs allege that Visa "sometimes suggested changes to words and descriptions connected to illegal content" and that it allowed MindGeek to use "banned" words on its tubesites that were disallowed on its premium sites. TAC ¶¶ 310–11. There is no factual basis for these allegations, which are not true.

asserted, in the interest of judicial efficiency, Visa has not addressed them here.

---

At the outset, these allegations are unsupported by any "factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  And they are facially implausible:  Visa provides access to its payment network for more than 175 million merchants. *See* Declaration of Joshua M. Wesneski ("Wesneski Decl.") Ex. A, Visa, *Visa Fact Sheet* (2025).  It has no incentive to provide tailored, *business* advice to a single merchant that comprises a tiny fraction-of-a-fraction of Visa's transaction volume.  Nor does Visa have any interest in cataloguing the search terms used for one MindGeek website and comparing them to the search terms used for other MindGeek websites for the purpose of facilitating the publication of unlawful content—if such review and comparison were even possible for a third party.  This kind of bare accusation of coordinated conduct "is simply not plausible." *Raiser v. Kleeger*, 2022 WL 2104494, at *1 (C.D. Cal. June 9, 2022).  And there is no indication of where these allegations came from.

The limited discovery Plaintiffs have taken, in fact, contradicts these allegations.  During jurisdictional discovery, Plaintiffs' counsel deposed former MindGeek executive Corey Urman and asked Mr. Urman whether "the credit card companies" ever suggested "any additional terms" to MindGeek's banned words list.  Corey Urman Dep. Tr. 136:25–137:23 (June 12, 2023) (attached as Wesneski Decl., Ex. B).  Mr. Urman testified that he was not aware of any such suggestions by credit card companies, including Visa, and that ███████████████████████████████████████████████████████████████ ███████████ *See id.* ("I'm not sure I received any -- credit card companies, so I don't know. … I don't know if they provided any keywords.").  Plaintiffs' counsel posed a similar question to MindGeek's former CEO, Feras Antoon, asking whether ███████████ ███████████████████████████████████████████████████████████████ ███████████ Feras Antoon Dep. Tr. 472:4–23, 500:9–11 (June 14, 2023) (attached as Wesneski Decl., Ex. C). Mr. Antoon likewise testified that he was not aware of any such facts. *Id.* at 472:13–473:18 ("I'm not sure that happens.").

A party may not make allegations based on mere suspicion where the testimonial

record controverts it.  *See Townsend*, 929 F.2d at 1364–65.  In *Martinez v. City of West Sacramento*, for example, the court imposed Rule 11 sanctions where the plaintiffs persisted in alleging prosecutorial misconduct despite the defendants' sworn declarations and case records contradicting each claim, holding that counsel could not disregard contradictory evidence as merely "self-serving."  2021 WL 2227830, at *6–13 (E.D. Cal. June 2, 2021).  Similarly, in *Moser*, the court imposed Rule 11 sanctions where counsel attempted to create the false impression of factual support by "misreading context, omitting critical facts, and sometimes … simply stating the opposite of what was in the record."  366 F. Supp. 2d at 976.  The court stressed that mischaracterizing the record to "conform" it to a party's theory undermines the integrity of the judicial process and exceeds the bounds of permissible advocacy.  *Id.* The allegations here suffer from precisely these defects—having tried and failed to elicit favorable testimony in discovery, counsel may not insist the opposite.

The baseless nature of the allegations is reinforced by the timing of them.  In the briefing before this Court on the prior motions to dismiss, the critical legal issue was always whether Plaintiffs alleged well-pleaded facts that Visa engaged in conduct going beyond "passive nonfeasance."  If Plaintiffs had any evidence that Visa had actively engaged in refining search terms for MindGeek to help financially optimize unlawful content, one would have expected to have seen those allegations on page one of the complaint, or at the very least previewed for the Court at oral argument.  Yet Plaintiffs offered no such allegations until after dismissal of the prior complaints, without performing any new investigation.

## B. There Is No Factual Basis for Plaintiffs' Allegations that Visa Afforded MindGeek Special Payment Processing Privileges (Statements 4, 5)

Next, Plaintiffs assert that Visa removed payment restrictions for certain MindGeek transactions in order to facilitate unlawful payments and even developed new payment models for MindGeek in the form of "third-party payment processors."  Once again, it is not clear on what basis Plaintiffs' counsel make these allegations, and there is none.

Third-party payment processors are not even remotely unique to MindGeek.  Visa has long maintained a robust program for the use of third-party agents (which includes entities that perform third-party payment processing services of the kind described by Plaintiffs).  *See* Wesneski Decl. Ex. D, Visa, *Third Party Agent Registration Program – Frequently Asked Questions* (May 2016); *see also* Wesneski Decl. Ex. E, Visa, *Third Party Agent Registration Program – TPA Types and Functional Descriptions* (Dec. 2021) (describing types of third-party agents).  Plaintiffs' counsel now appears to recognize as much, disclaiming in the opposition to the motion to dismiss any allegation that "captive payment processors were created just for MindGeek."  *See generally* Pls.' Omnibus Opp'n to Colbeck, Redwood, and Visa's Motions to Dismiss, ECF No. 654 at 16 n.6.  Yet Plaintiffs asserted the opposite in the TAC, alleging that Visa "worked with MindGeek to *develop* payment structures."  TAC ¶ 308 (emphasis added).  Counsel's apparent admission that this allegation is untrue is reason enough to impose Rule 11 sanctions.

Moreover, across the Visa network, Acquirers and Members—*not Visa*—are responsible for onboarding, maintaining, and monitoring third-party agent relationships. *See* Ex. D, *Third Party Agent Registration Program – Frequently Asked Questions*; *see also* Wesneski Decl. Ex. F, *Visa Core Rules and Visa Product and Service Rules* (Apr. 18, 2020) at 561–64.[4]  In fact, third-party agents are not even directly connected to the Visa payment network—the Acquirers and Members at all times maintain the direct relationship with the third-party agent.  *See* Ex. D ("A [third-party agent] is … not directly connected to VisaNet ….").  Nor is it true, as Plaintiffs contend, that such third-party agents are subject to a uniquely lax monitoring scheme—Acquirers and Members "are required to perform due diligence reviews" on third-party agents and have the same essential responsibilities as they do for merchants.  *Id.*; *see also* Ex. F, *Visa Core Rules and Visa Product and Service Rules* at 564, § 10.2.2.7.

---

[4] Visa cites here the rules in effect in 2020, as those are the most relevant to Plaintiffs' allegations.  The rules have been amended in various respects since then.

Plaintiffs' assertions about Visa removing restrictions on certain suspicious transactions are also without any factual basis.  Plaintiffs do not identify a single instance of such behavior, do not specify what types of transactions they are referring to, and do not identify any comparable transactions at other merchants that Visa historically has blocked.  Indeed, it is not clear in what context these allegations even arise:  The allegations in the complaints are focused on Visa's alleged payment processing for MindGeek, but these allegations appear to be referring to payment processing for other merchants.  *See* TAC ¶ 310.  In any event, the reality again is that Visa requires Acquirers to police merchants at that level of granularity.  *See generally* Ex. F, *Visa Core Rules and Visa Product and Service Rules* at 577–602.  There is no factual basis for Plaintiffs' accusation that Visa "worked with MindGeek to develop payment structures" to facilitate MindGeek's alleged conduct or afforded MindGeek "special" payment privileges.

### C.   There Is No Factual Basis for Plaintiffs' Allegations that Visa Afforded MindGeek Special Treatment and Exemptions (Statements 6, 7, 8, 9, 10)

Plaintiffs allege that, in various ways, Visa excepted MindGeek from its ordinary standards for merchants, including by purportedly exempting MindGeek from any form of oversight and accepting pretextual explanations for MindGeek's alleged misconduct.  TAC ¶¶ 304–05, 307, 313.  Once again, Plaintiffs offer no factual basis for these allegations.  For example, Plaintiffs do not identify *any* merchant they even claim Visa treated differently from MindGeek.  And Plaintiffs identify no documents, communications, or testimony showing that Visa permitted MindGeek to "investigate itself" or accepted investigatory findings "it knew to be false."  The allegations on these points are factually baseless.

The actual record again belies Plaintiffs' accusations.  When Visa was first alerted in early 2020 of potential unlawful trafficking content on MindGeek, it promptly sent letters to several *Acquirers* (not to MindGeek) demanding those Acquirers (not MindGeek) investigate certain MindGeek merchants and provide written responses to Visa.  Those Acquirers did not respond with mere "self-certification[s]" from MindGeek

as Plaintiffs assert, but with their own findings based on independent investigations. Visa *also* of course required MindGeek to explain and respond to the allegations, but it did not take that response at face value. And in December 2020, when the *New York Times* published an article detailing alleged unlawful content on MindGeek, Visa again reached out to its *Acquirers* (not to MindGeek) to demand an independent investigation. Plaintiffs' account of Visa's treatment of MindGeek is belied by reality.

Jurisdictional discovery likewise undermines Plaintiffs' account. In discovery, Plaintiffs' counsel questioned MindGeek executives about MindGeek's retention of a law firm to review its moderation policies, and counsel specifically asked if that law firm had shared its findings with credit companies. Those executives stated they did not believe such sharing occurred. *See* Antoon Dep. Tr. 500:9–11; *see also* David Tassillo Dep. Tr. 385:14–17 (June 16, 2023) (attached as Wesneski Decl., Ex. G). The record thus again refutes Plaintiffs' assertion that Visa and MindGeek were working hand-in-hand.

**D. There Is No Factual Basis for Plaintiffs' Allegations that Visa Was Motivated to Capture Transactions in the Adult Online Industry (Statements 11, 12, 13, 14, 15)**

Finally, Plaintiffs allege that Visa tolerated MindGeek's allegedly unlawful conduct in order to establish dominance in the area of adult entertainment and to ensure alternative payment methods like crypto did not take hold. TAC ¶¶ 292, 305. These allegations are unsupported by any factual explanation and rest entirely on speculation regarding Visa's size and general role in the payments industry. The mere fact that Visa is a significant player in the payments industry does not establish (nor even suggest) that it was motivated to engage in unlawful conduct in order to advance one discrete (and miniscule) aspect of its overall portfolio.

Plaintiffs' conclusory assertions regarding Visa's purported efforts to exclude alternative payment methods have no factual basis. Plaintiffs identify no actions by Visa directed at MindGeek that restricted the use of electronic transfers, crypto, or digital wallets, and no evidence that Visa conditioned its services on MindGeek's exclusion of such alternatives. And once again, the record contradicts Plaintiffs' account: Visa has

publicly embraced the emergence of alternative payment methods, encouraging "expansion into emerging payments use cases," developing a "full stack stablecoin platform," and "enabling banks to issue and manage their own stablecoins." Visa, *Visa Form 10-K* 14 (Nov. 6, 2025), https://perma.cc/G5NY-DH6T. There was no coordinated effort at Visa to exclude alternative payment methods from processing transactions for the adult entertainment industry and no evidence whatsoever to that effect.

Plaintiffs' allegations about higher fees for adult entertainment transactions are also simply wrong. During the relevant time period, Visa did not collect higher transaction fees for adult entertainment transactions. Transactions that present a higher risk of chargeback or fraud for a card issuer—such as card-not-present transactions for adult entertainment—may sometimes bear a higher *interchange* fee, but such fees are remitted to the bank issuing the credit card, not to Visa. *See In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 2024 WL 1014159, at *4 (E.D.N.Y. Mar. 8, 2024) (explaining credit card transaction structure and interchange fees). Visa therefore had no greater monetary incentive to facilitate unlawful transactions for MindGeek than it did any other merchant.

* * *

The Challenged Statements are not supported by any evidentiary or factual development in the Operative Complaints. It is therefore incumbent on Plaintiffs' counsel to provide an explanation in opposition of how these allegations came to be. Based on the above information and analysis, Visa strongly suspects Plaintiffs will have no satisfactory answer—while counsel plainly conducted *some* investigation before initiating this litigation, there is no evidence to support the specific allegations identified above. Rule 11 does not allow counsel to manufacture new allegations (on a fourth attempt) in order to open the doors of discovery.

## II. Plaintiffs' Counsel Failed to Conduct a Reasonable Inquiry to Support the Challenged Statements in the Operative Complaints

Rule 11 requires that, before filing a pleading, counsel conduct a "reasonable and

competent inquiry" to determine whether the factual allegations asserted can responsibly be certified as true. *Christian*, 286 F.3d at 1127; *see also* Fed. R. Civ. P. 11(b)(3). A reasonable inquiry "means that the pleader must seek sufficient credible information, rather than proceeding on mere suspicions, opinions, or conclusions." *Wilens v. NRG Energy, Inc.*, 2016 WL 11757771, at *1 (C.D. Cal. Aug. 16, 2016). Counsel must undertake a "reasonable investigation of the facts and evidence available in light of the circumstances prior to filing." *Id.* "To be reasonable, the prefiling factual investigation must uncover some information to support the allegations in the complaint … That is, where there is no factual basis for plaintiffs' allegations, the complaint violates Rule 11's factual inquiry requirement." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991). If an attorney does not conduct the requisite "reasonable inquiry," sanctions are justified. *See* Fed. R. Civ. P. 11 ("[T]he court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.").

This obligation becomes more demanding, not less, as litigation progresses. *See Narvaes v. EMC Mortg. Corp.*, 2009 WL 1227849, at *3 (D. Haw. May 5, 2009), *report and recommendation adopted*, 2009 WL 1507295 (D. Haw. May 28, 2009) (noting that Rule 11 "imposes a continuing duty to review, reexamine, and reevaluate a party's position as new facts come to light"). The continuing duty to review is evaluated under the same objective "reasonable inquiry" standard that governs Rule 11 at filing.

Here, Plaintiffs' counsel failed to conduct a reasonable inquiry into the new "factual" allegations included in the Operative Complaints prior to filing. As set forth above, many of Plaintiffs' theories are contradicted (or at least called into serious question) by publicly available sources and by the discovery Plaintiffs took for jurisdictional purposes. As but one example, Plaintiffs directly asked two MindGeek witnesses about the allegation that Visa proposed "changes to words and descriptions connected to illegal content," but neither corroborated Plaintiffs' theory. *See supra* Section IA (discussing Urman and Antoon deposition testimony). There is nothing in the complaint even suggesting that Plaintiffs performed an independent investigation into that

issue, much less that such an investigation turned up facts contradicting that sworn testimony.  Likewise, Plaintiff's allegations about third-party payment processors are foreclosed by public sources, which a reasonable investigation would have uncovered and which Plaintiffs appear to have now conceded. *See Lake v. Gates*, 130 F.4th 1064, 1067–69 (9th Cir. 2025).  If these allegations were the result of a reasonable investigation, as required under Rule 11, Plaintiffs surely would have provided some form of factual substantiation to support their claims.  Yet they did not.

The lack of any reasonable inquiry is showcased by the stark contrast between Plaintiffs' allegations against Visa and those against MindGeek.  The new allegations against Visa identify no document, witness, third-party source, or other basis for their assertion (other than anodyne public statements that do not remotely support the inferences Plaintiffs seek to draw).  *See generally* TAC ¶¶ 286–325.  By contrast, Plaintiffs' allegations against MindGeek reference specific news articles, reports, letters, and/or public statements.  For example, when alleging MindGeek's failure to remove CSAM and a statement by a MindGeek representative about not reporting the content to law enforcement, Plaintiffs quote the alleged statement and include screenshots from the corresponding social media post.  *See* TAC ¶ 85.  When discussing allegations regarding MindGeek optimizing its search engines and platforms to promote CSAM, Plaintiffs reference news articles that substantiate each of the allegations.  *See, e.g.*, TAC ¶¶ 138–39, 143–48.  Likewise, when raising allegations that MindGeek failed to verify the identity of a 15-year-old girl that was featured in a video on MindGeek's website, Plaintiffs include a screenshot from a MindGeek social media post regarding verifying the model and working with law enforcement.  *See* TAC ¶ 180–81.  There is no such evidence of a comparable inquiry for the new allegations Plaintiffs raise against Visa.

Courts in the Ninth Circuit have recognized that "a person with a measured legitimate claim may cross the line into frivolous litigation by asserting facts that are grossly exaggerated or totally false." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1061 (9th Cir. 2007).  In other words, "it is a question of degree where the line falls

between aggressive advocacy of legitimate claims and the frivolous assertion of false allegations." *Id.* This case falls squarely on the frivolous side of that line.

### III. The Court Should Strike the Challenged Statements

The Court has broad discretion to impose appropriate sanctions under Rule 11. Visa does not seek any reimbursement for fees incurred in responding to factually baseless allegations, even though that is a standard remedy. *See* Fed. R. Civ. P. 11(c)(4) (if warranted, court may order "payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation"); *see also Stone v. Carey*, 2025 WL 3753134, at *1 (C.D. Cal. Dec. 23, 2025) (awarding attorneys' fees in part because the plaintiff "made no reasonable effort to ensure that the factual contentions asserted have evidentiary support" (quotation marks omitted)); *Alvarado v. Liang*, 2025 WL 4036434, at *3 (C.D. Cal. Dec. 8, 2025) (awarding fees and costs as "expenses directly caused by [the plaintiff's] persistence in knowingly bringing a frivolous claim"). Visa's principal concern is ensuring that this litigation is not infected by baseless allegations, and it therefore seeks only appropriate sanctions to address that issue.

Accordingly, Visa requests that the Court "strik[e] the offending paper" in relevant part. Fed. R. Civ. P. 11 advisory committee's note. Courts routinely strike allegations that were raised without any factual basis. *See, e.g.*, *Gong v. Sarnoff*, 2023 WL 5372473, at *17 (S.D.N.Y. Aug. 22, 2023) (granting Rule 11 motion and directing the defendants "to identify in their memorandum in support of attorneys' fees and costs the paragraphs that should be stricken from the Complaint"); *Attia v. Google LLC*, 2018 WL 2971049, at *15 (N.D. Cal. June 13, 2018) ("[A]ll of the allegations [made without a reasonable investigation] should be disregarded unless and until Plaintiffs satisfy Rule 11(b)'s requirement that they personally investigate their claims against Defendants."); *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005–06 (N.D. Cal. 2008) (granting "motion to strike each paragraph cited by defendants" as being without factual support); *Ivanova v. Columbia Pictures Indus., Inc.*, 217 F.R.D. 501, 512 (C.D. Cal. 2003) ("[T]his

Court strikes all alleged facts and references in Ivanova's Complaint which are contrary to known facts or otherwise barred by [other judgments].”); *United States v. Excellair, Inc.*, 637 F. Supp. 1377, 1398 (D. Colo. 1986) (“I find an appropriate sanction to be the striking of all references in the pleadings to [the unsubstantiated allegation].”).  Indeed, a federal court in San Jose recently issued this sanction in a case involving factually baseless allegations made by sophisticated counsel.  *See Musi*, 2026 WL 763310, at \*6.

Such a sanction is appropriate here.  The Challenged Statements were levied in a transparent attempt to plead around the Court's prior ruling.  Plaintiffs' counsel should not be permitted to advance the case on such grounds.  Indeed, it would benefit no one—not Visa, not the Court, and not even Plaintiffs themselves—to allow counsel to maintain this action on allegations that cannot be proven in discovery.  Visa maintains that the claims against it can and should be dismissed regardless of the disposition of this motion—as made evident by Plaintiffs' reluctance to rely on these allegations in their opposition brief—but striking the offending allegations will ensure both that this case is decided fairly and that future litigants are appropriately deterred from such tactics.  *See* Fed. R. Civ. P. 11(c)(4) (emphasizing need for deterrent effect of sanction).

**CONCLUSION**

Visa respectfully requests that the Court grant its motion for Rule 11 sanctions against Plaintiffs' counsel and strike the Challenged Statements.

Dated:  April 17, 2026

RESPECTFULLY SUBMITTED,

*/s/ Drew Tulumello*
DREW TULUMELLO (#196484)
drew.tulumello@weil.com
MARK A. PERRY (#212532)
mark.perry@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600

Washington, DC 20036
Tel: 202 682 7000
Fax: 202 857 0940
*Attorneys for Defendant Visa Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Visa, certifies that this brief is within the 7,000 word limit set forth in the Court's Standing Order.

Dated:  April 17, 2026                    */s/ Drew Tulumello*

                                          DREW TULUMELLO