Michael J. Bowe
(admitted pro hac vice)
mbowe@brithem.com
Lauren Tabaksblat
(admitted pro hac vice)
ltabaksblat@brithem.com
BRITHEM LLP
565 Fifth Avenue
New York, NY 10017
Telephone: (646) 653-9378

Nancy M. Olson (SBN 260303)
nolson@olsonstein.com
David M. Stein (SBN 198256)
dstein@olsonstein.com
OLSON STEIN LLP
240 Nice Lane # 301
Newport Beach, CA 92663
Telephone: (949) 887-4600

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | |
|---|---|
| SERENA FLEITES,<br><br>Plaintiff,<br><br>v.<br><br>MINDGEEK S.A.R.L., et al.,<br><br>Defendants. | Case No. 2:21-cv-04920-WLH-ADS<br><br>Hon. Wesley L. Hsu<br><br>**PLAINTIFFS' OPPOSITION TO VISA INC.'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**<br><br>Date:      June 26, 2026<br>Time:      1:30 pm<br>Courtroom:     9B |

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................... 1

ARGUMENT ..................................................................................................2

I.    VISA'S MOTION IS SUBSTANTIVELY FRIVOLOUS ................... 6

    A.    The Challenged Claims Are True and Unrebutted. .................. 6

    B.    Visa's Motion is Substantively Frivolous. ................................ 14

        1.    Argument I.A - Collaboration. ....................................... 15

        2.    Argument I.B – Special Privileges ................................ 16

        3.    Argument I.C. – Special Treatment .............................. 17

        4.    Argument I.D. – Visa Was Motivated By Profit ............ 17

II.    THE COURT SHOULD AWARD PLAINTIFFS ATTORNEY'S FEES .................................................................................................. 19

CONCLUSION ............................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amaro v. Bee Sweet Citrus, Inc.*,
2022 WL 3908309 (E.D. Cal. Aug. 30, 2022) .................................................. 23

*Arcsona Inc. v. Appirio Inc.*,
2022 WL 138681 (N.D. Cal. Jan. 14, 2022) ...................................................... 3

*Benedict v. Hewlett-Packard Co.*,
2014 WL 234207 (N.D. Cal. Jan. 21, 2014) .................................................. 3, 5

*Cal. Architectural Bldg. Prods. V. Franciscan Ceramics*,
818 F.2d 1466 (9th Cir. 1987) ......................................................................... 3

*In re California Bail Bond Antitrust Litig.*,
511 F. Supp. 3d 1031 (N.D. Cal. 2021) ............................................................ 4

*De Freitas v. Thomas*,
2016 WL 8674572 (D. Ariz. May 6, 2016)....................................................... 4

*Goldwater Bank, N.A. v. Elizarov*,
2023 WL 4295255 (C.D. Cal. May 9, 2023)................................................... 21

*arrivia Inc. v. Rowley*,
2024 WL 3010935 (D. Ariz. June 14, 2024).................................................. 22

*Martinez v. City of W. Sacramento*,
2021 WL 2227830 (E.D. Cal. June 2, 2021)..................................................... 5

*Moser v. Bret Harte Union High Sch. Dist.*,
366 F. Supp. 2d 944 (E.D. Cal. 2005).......................................................... 5, 6

*Musi Inc. v. Apple Inc.*,
2026 WL 763310 (N.D. Cal. Mar. 16, 2026) ................................................... 5

*Operating Eng'rs Pension Tr. v. A-C Co.*,
859 F.2d 1336 (9th Cir. 1988) ......................................................................... 2

*Patelco Credit Union v. Sahni*,
262 F.3d 897 (9th Cir. 2001) ......................................................................... 21

PLAINTIFFS' OPP. TO VISA INC.'S MOT. FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

*Scottsdale Ins. Co. v. PTB Sales, Inc.*,
   2018 WL 6167912 (C.D. Cal. July 27, 2018) .................................................. 4

*Sweegen, Inc. v. Manus Bio Inc.*,
   2025 WL 2427988 (C.D. Cal. July 9, 2025) .................................................... 3

*Townsend v. Holman Consulting Corp.*,
   929 F.2d 1358 (9th Cir. 1990) (en banc) ........................................................ 3, 4

*United Nat'l Ins. Co. v. R&D Latex Corp.*,
   242 F.3d 1102 (9th Cir. 2001) ........................................................................ 3

*United States ex rel. Jacobs*,
   2023 WL 6370921(C.D. Cal. Aug. 24, 2023) ................................................. 4

*Whitaker v. Sensu, Inc.*,
   2020 WL 7051341 (C.D. Cal. Oct. 16, 2020) ................................................. 5

*Wilens v. NRG Energy, Inc.*,
   2016 WL 11757771 (C.D. Cal. Aug. 16, 2016) ............................................... 5

**Other Authorities**

*CNBC*, https://www.cnbc.com/2020/11/20/where-visa-sees-crypto-
   going-with-bitcoin-near-all-time-high-
   .html?msockid=21daa22889f86e9b0a08b4a588e66f94 .................................. 18

*CNN Business*, https://edition.cnn.com/2020/12/23/business/visa-
   pornhub-mindgeek-ban/index.html ................................................................. 14

Fed. R. Civ. P. 11 .......................................................................................... *passim*

Fed. R. Civ. P. 12 .......................................................................................... *passim*

Fed. R. Civ. P. 56 .......................................................................................... *passim*

*The Guardian*,
   https://www.theguardian.com/culture/2015/aug/06/pornhub-
   launches-paid-subscription (Aug. 6, 2015) ..................................................... 7

*N.Y. Post*, https://nypost.com/2020/12/10/mastercard-ends-relationship-
   with-pornhub-amid-illegal-content-expose/ .................................................... 13

*NBC*, https://www.nbcnews.com/business/business-news/jp-morgan-
   75-million-settlement-jeffrey-epstein-lawsuit-victims-rcna117378 ................ 15

*New York Times* ................................................................................................. *passim*

*Vice* ..................................................................................................................... *passim*

PLAINTIFFS' OPP. TO VISA INC.'S MOT. FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

Plaintiff Serena Fleites ("Plaintiff"), and plaintiffs in the fourteen Related Actions (collectively, "Plaintiffs"), respectfully submit this memorandum of law in opposition to Visa Inc.'s ("Visa") Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 (the "Motion") (Dkt. 686-1).

**INTRODUCTION**

The Court should deny Visa's Rule 11 Motion and award fees to the Plaintiffs. Visa's Motion is devoid of the "unequivocal evidence" settled Ninth Circuit law holds is mandatory for sanctions to be imposed. Indeed, it is virtually devoid of any evidence at all. Remarkably, it is not even supported by a declaration from a single Visa employee with first-hand knowledge of the events addressed.

Moreover, it does not even specifically address most of the allegations it states are sanctionable. It rewrites some of the allegations it does address. And for the few remaining, it offers (a) inapposite or highly attenuated documentary evidence, (b) ▮ ███████████████████████ testimony, or (c) *ipse dixit* lawyer arguments about inferences and the sufficiency of the pleadings that are nothing more than poorly and improperly disguised Rule 12(b)(6) and 56 arguments. Visa cites no case remotely supporting Rule 11 relief on this showing, and its Motion ignores the wealth of Ninth Circuit precedent instructing that its application is frivolous.

In fact, the Motion checks every Rule 11 and Ninth Circuit box for an abusive application of this powerful tool. It is impermissible to use a Rule 11 motion to argue the sufficiency of a complaint's allegations, bolster such an argument, chill advocacy, impinge on opposing counsel's work product, or for any purpose addressed by another rule. This Motion is designed to do all of these.

Moreover, a Rule 11 motion must be brought "promptly" and should be informally raised before doing so. Visa waited four months to serve its Rule 11 notice, after it had already moved to dismiss (without mentioning Rule 11) and that Motion was fully submitted. The catalyst for this enormously belated effort was crystal clear from its timing: it was served a week after Plaintiffs informed Visa that

they intended to move to vacate the Court's prior dismissal of TVPRA beneficiary liability claims against Visa based on the Ninth Circuit's recent *Ratha II* decision.

Thereafter, Visa attempted to rush to file by pretending that a call it requested in February was a meet and confer on the Motion, even though Visa never explained the purpose for that call despite repeated requests, never mentioned Rule 11 on the call, and had not provided the Rule 11 notice to even confer over before the call.

When Plaintiffs' counsel insisted on conferring as required by the Court's Standing Order and Local Rules, Visa's counsel refused to engage in any meaningful discussion on that call, complained that it was expected to do so, and terminated the call unilaterally. Visa then rushed to immediately file the Motion only hours later despite having promised to consider and get back to Plaintiffs on several issues (including solutions Plaintiffs had proposed) and despite Plaintiffs' counsel having stated that he had more to cover and requested that they reconvene promptly. Thus, when Visa filed this Motion, it did not include a certification that it had met and conferred as this Court's Local Rules and Standing Order require. But it filed the Motion nonetheless. The full transcript of this meet and confer is attached as Ex. 1 to the accompanying Declaration of Michael J. Bowe.

In sum, Visa filed this Motion to sanction opposing counsel for the obvious (and categorically improper) purposes of bolstering its motion to dismiss argument in the wake of the *Ratha II* decision, chilling Plaintiffs' advocacy, and forcing Plaintiffs to reveal privileged work product. It did so in violation of the clear standards in this Circuit and this Court's Standing Order and Local Rules. The Motion should be denied and fees awarded to Plaintiffs.

## ARGUMENT

The Ninth Circuit has repeatedly admonished that Rule 11 sanctions are reserved "for the rare and exceptional case where the action is clearly frivolous." *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988). This is an exceedingly high bar because, among other reasons, courts must not allow the

rule "to conflict with the primary duty of an attorney to represent his or her client zealously." *Id.* Thus, the Ninth Circuit has unequivocally instructed that "Rule 11 must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy" because "[w]ere advocacy to be chilled by the excessive use of sanctions, wrongs would go uncompensated." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1363 (9th Cir. 1990) (en banc).

The "rare and exceptional case" does not include the use of "Rule 11 'to test the sufficiency or efficacy of allegations in the pleadings,' 'to emphasize the merits of a party's position,' or 'to intimidate an adversary into withdrawing contentions that are fairly debatable.'" *Arcsona Inc. v. Appirio Inc.*, 2022 WL 138681, at *2 (N.D. Cal. Jan. 14, 2022) (quoting FED. R. CIV. P. 11(b) and (c) Advisory Committee's Note to 1993 Amendment). Nor "should it be employed as a discovery device" or "to seek disclosure of matters otherwise protected by the attorney-client privilege or the work-product doctrine." FED. R. CIV. P. 11 Advisory Committee's Note to 1993 Amendment.

To the contrary, the "rare and exceptional case" is one where the motion presents "unequivocal evidence that would indicate no 'plausible, good faith argument' that could be made." *Sweegen, Inc. v. Manus Bio Inc.*, 2025 WL 2427988, at *3 (C.D. Cal. July 9, 2025) (quoting *Paciulan v. George*, 38 F. Supp. 2d 1128, 1144 (N.D. Cal. 1999), *aff'd*, 229 F.3d 1226 (9th Cir. 2000)). If there is "some plausible basis, [even] quite a weak one," a claim is not baseless. *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1117 (9th Cir. 2001) (reversing sanctions); *Cal. Architectural Bldg. Prods. v. Franciscan Ceramics,* 818 F.2d 1466, 1472 (9th Cir. 1987) (reversing grant of Rule 11 sanctions despite finding evidence was "weak" and could not support summary judgment).

The burden to produce such unequivocal evidence rests squarely on the moving party. *See Benedict v. Hewlett-Packard Co.*, 2014 WL 234207, at *5 (N.D. Cal. Jan. 21, 2014). At the pleading stage, this burden requires unequivocal proof

that Plaintiffs' allegations are "objectively baseless." *In re California Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1051 (N.D. Cal. 2021).  Actual proof is required: "Defendants may not shift to Plaintiff[s] the burden of proving that sanctions are not justified" through general or unsubstantiated denials.  *De Freitas v. Thomas*, 2016 WL 8674572, at *7 (D. Ariz. May 6, 2016), *R. & R. adopted*, 2016 WL 4698044 (D. Ariz. Sept. 8, 2016) (citing *Tom Growney Equip., Inc. v. Shelley Irr. Dev., Inc.*, 834 F.2d 833, 837 (9th Cir. 1987)).  The Ninth Circuit has admonished that at the pleading stage "leeway must be given to make allegations [ ] that may not be well-grounded" or "allegations related to an opposing party's knowledge, purpose, or intent."  *Townsend*, 929 F.2d at 1364.

Applying these high bars to pleadings, this Court has denied motions indistinguishable from Visa's on the grounds "that they were impermissible attempts to adjudicate the merits of a claim prematurely."  *United States ex rel. Jacobs*, 2023 WL 6370921, at *4 (C.D. Cal. Aug. 24, 2023) (Bernal, J.) (collecting cases).  In so holding, courts in this district and throughout the country have endorsed the Advisory Committee Notes on the 1983 Amendment to Rule 11 which anticipate that "in the case of pleadings[,] the sanctions issue under Rule 11 normally will be determined at the end of the litigation."  *Id.*  In any event, regardless of when filed, a Rule 11 motion "should not be employed to test the legal sufficiency or efficacy of allegations in the pleadings, other motions are available for those purposes."  FED. R. CIV. P. 11 Advisory Committee Notes to the 1983 Amendment; *see also In re California Bail Bond Antitrust Litig.,* 511 F. Supp. 3d at 1054 ("The *Twombly* plausibility standard is not identical to the Rule 11 standard for a baseless claim.  If it were, every Rule 12(b)(6) motion would be accompanied by a motion for sanctions.").

Thus, as this Court explained in *Scottsdale Ins. Co. v. PTB Sales, Inc.*: "Even if the Court considers all of the evidence presented by PTB . . . [it] fails to establish that these statements are factually baseless or were presented for an improper

purpose.  Rather, the disputes PTB raises may be resolved in the ordinary course of litigation."  2018 WL 6167912, at *2 (C.D. Cal. July 27, 2018); *see also Benedict*, 2014 WL 234207, at *8 ("Benedict's denials alone do not provide a basis to sanction HP because when presented with some evidence contrary to their claim, HP, like all litigants, had the right to decide whether to dismiss the action or proceed with discovery.  Courts have rejected arguments analogous to Benedict's argument in comparable cases."); *Whitaker v. Sensu, Inc.*, 2020 WL 7051341, at *6 (C.D. Cal. Oct. 16, 2020) ("Although defendant vigorously disputes that allegation, such is the nature of litigation and this dispute is better resolved on a motion for summary judgment (or at trial).").

Instructive is Judge Carney's decision in *Wilens v. NRG Energy, Inc.*, in which he held that the defendant's different interpretations and inferences and outright contradictory evidence were "more appropriately brought as a motion for summary judgment, following a suitable opportunity for discovery."  2016 WL 11757771, at *2-3 (C.D. Cal. Aug. 16, 2016).

None of Visa's cited cases are remotely analogous.  For example, *Musi* involved an outright misrepresentation that defendant had "admitted" in discovery that "it knowingly relied on false evidence" when there was no such admission at all. 2026 WL 763310, at *4.

*Martinez v. City of W. Sacramento*, 2021 WL 2227830 (E.D. Cal. June 2, 2021) and *Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944 (E.D. Cal. 2005) are miles further from the mark.  In *Martinez*, plaintiff's counsel was sanctioned when the certified docket and transcripts from plaintiffs' criminal proceedings directly and unequivocally contradicted plaintiff's subsequent allegations about those proceedings.  *Martinez*, 2021 WL 2227830, at *14-15.

In *Moser*, following summary judgment, the district court *sua sponte* ordered a hearing and imposed sanctions on defense counsel in a student disability case where counsel admitted that she had, inter alia: (i) "overstated or incorrectly stated

PLAINTIFFS' OPP. TO VISA INC.'S MOT. FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

the evidence at least seven times"; (ii) misrepresented the administrative record seventeen times; (iii) omitted or minimized adverse facts; and (iv) misstated the law. 366 F. Supp. 2d at 973.

None of Visa's cases involve a motion remotely like this motion challenging a complaint. Visa's Motion does not even specifically discuss the bulk of the allegations it says are sanctionable, and for those it does discuss, it merely submits a smattering of remotely apposite, and some completely inapposite, documents, " ██████████ and ██████████ testimony, and lawyer arguments on the meaning of documents.

This showing could not be further from the required Rule 11 mark.

## I.       VISA'S MOTION IS SUBSTANTIVELY FRIVOLOUS.

### A.       The Challenged Claims Are True and Unrebutted.[1]

Visa successfully convinced this Court that its alleged knowledge of MindGeek's illegal activities was insufficient to establish conspiracy, comparing itself to a utility company "indifferent" to MindGeek's activities. Dkt. 614 at 37. This Court agreed, holding a conspiratorial agreement required "interaction, coordination, or shared purpose, continued service," and granted leave to amend the Visa allegations, which Plaintiffs had not previously done because this Court initially sustained those claims. *Id.* at 35, 46-47.

The TAC cures this deficiency by answering the question begged by two alleged facts undisputed at this procedural stage: How could Visa have processed MindGeek's payments for a decade under Visa's self-described "explicit," "unequivocal," and "vigilant" compliance program knowing about MindGeek's

---

[1] One of the unpermitted uses for Rule 11 is to impinge on a party's work product and attorney-client privilege. As Visa has not satisfied its initial evidentiary burden under Rule 11, Plaintiffs are limiting their showing here to non-privileged discovery materials even though they possess additional privileged information and predicates for these allegations based on the substantial investigation to date. *See* Bowe Decl. ¶¶ 2-9.

ubiquitous illegality?  Notably, Visa's Motion nowhere attempts to answer this question, let alone provide evidence of an answer.

The TAC's answer—corroborated by the non-privileged evidence below—is this: Visa agreed to an ███████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████ This was a sham instantaneously revealed as such when Visa promptly abandoned it without mention five years later after a New York Times bombshell exposé questioned Visa's complicity in MindGeek's illegality. ████████████████████████████████████████ ███████████████████████ Bowe Decl., Ex. 4 (MindGeek_Fleites_00095543).[2]  Previously, MindGeek did not sell content. Instead, it earned advertising and licensing revenue from third parties selling content to website visitors.  See "Pornhub launches 'Netflix for porn' subscription service | Pornography," *The Guardian*, https://www.theguardian.com/culture/2015/aug/06/pornhub-launches-paid-subscription (Aug. 6, 2015).

To process MindGeek purchases, ████████████████████ ████████████████████████████████████████████████ █████████████████ Ex. 4 (MindGeek_Fleites_00095522, MindGeek_Fleites_00095543).  Of course, Visa could have simply required MindGeek to make its website compliant.  Indeed, this is exactly what the New York Times forced it to do five years later. ████████████████████████████████████████████████ ██████████████ *See* Ex. 4 (MindGeek_Fleites_00095527-30, 95540, 95543, 95530). █████████████████████████████████████████████████████

---

[2] References to "Ex." are to exhibits to the accompanying declaration of Michael J. Bowe.

PLAINTIFFS' OPP. TO VISA INC.'S MOT. FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11



See Ex. 4 (MindGeek_Fleites_00095527-30, 95540, 95543, 95530); Ex. 5 (MindGeek_Fleites_00095572).

Ex. 4 (MindGeek_Fleites_00095527-30, 95540, 95543).  Obviously, Visa's need to

[3]

MindGeek understood this was a ruse—noting that the solution ignored that —but it nevertheless understood that

Ex. 4 (MindGeek_Fleites_00095546).

Ex. 4 (MindGeek_Fleites_00095520, 95546); Ex. 6 (MindGeek_Fleites_00097793-94).  In short, it was understood there was no in fact or practice, only on paper.  Nevertheless,

Ex. 14 (MindGeek_Fleites_00007556).

The parties' knowledge that this was a ruse is reflected

---

[3] As the high-profile indictment of MindGeek content partner Girls Do Porn in 2019 showed, MindGeek's paid content was not compliant with Visa's rules either because it likewise contained underaged and trafficked content.  Despite this 2019 revelation of this illegal child trafficking among MindGeek's subscription content, Visa continued with the nevertheless.  See https://www.vice.com/en/article/pornhub-finally-removes-girls-do-porn/?utm_source=chatgpt.com



Ex. 4 (MindGeek_Fleites_00095528) (emphasis added). This secrecy was plainly a requirement of the credit card schemes, as MindGeek preferred not to keep it secret:

Ex. 4 (MindGeek_Fleites_00095528) (emphasis added). In the context of a discussion on credit card requirements,

Beyond concealment, the                also required other labor-intensive work arounds. For example,

Ex. 4 (MindGeek_Fleites_00095520-22). Although the

Ex. 4 (MindGeek_Fleites_00095522).

Accordingly, MindGeek engaged

Ex. 4 (MindGeek_Fleites_00095520). MindGeek

Ex. 4 (MindGeek_Fleites_00095522).

Ex. 7 (MindGeek_Fleites_00094742).

PLAINTIFFS' OPP. TO VISA INC.'S MOT. FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11



Ex. 4 (MindGeek_Fleites_00095527-28).

Ex. 5 (MindGeek_Fleites_00095575)

Ex. 9 (MindGeek Fleites 00092548) .

Ex. 17 (MindGeek_Fleites_00008018); Ex. 8 (MindGeek_Fleites_00007416); Ex. 10 (MindGeek_Fleites_00007539).

Of course, this labor and cost-intensive effort upon which a strategic business launch depended was not undertaken "on spec"

Ex. 4 (MindGeek_Fleites_00095543).

Ex. 4 (MindGeek_Fleites_00095526); *see also id.* (MindGeek_Fleites_00095520)

Bowe Decl. ¶ 5.

It would be impossible to successfully implement otherwise.

The difference between *bona fide* compliance and the MindGeek/Visa

[REDACTED]

[REDACTED] Ex. 11 (MindGeek_Fleites_00093545). Indeed, [REDACTED]

[REDACTED] Ex. 8 (MindGeek_Fleites_00007436, 7439); Ex. 4 (MindGeek_Fleites_00095520) [REDACTED].[4]

This artifice was starkly displayed in 2020 and 2021. For example, in early 2020 an advocacy group wrote Visa's CEO about the ubiquitousness of CSAM on MindGeek's website. In response, Visa directed that an [REDACTED] Ex. 15 (Bergmair_Fleites_0000003-8). [REDACTED] Ex. 15 (Bergmair_Fleites_0000004-8); Ex. 16 (MindGeek_Fleites_00079149). [REDACTED]

_____

[4] [REDACTED]



Ex. 16 (MindGeek_Fleites_00079149-86); Ex. 12 (Bergmair_Fleites_00000024)

Ex. 13 (MindGeek_Fleites_00083140).

Ex. 14 (MindGeek_Fleites_00007552); Ex. 13 (MindGeek_Fleites_00083137).

It was apparent to MindGeek from this process that Ex. 13 (MindGeek_Fleites_00083118). and, despite MindGeek's the substantial additional reporting about its continued illegal activities.

Ex. 16 (MindGeek_Fleites_00079149); Ex. 13 (MindGeek_Fleites_00083120).

Ex. 13 (MindGeek_Fleites_00083118).

Ex. 8 (MindGeek_Fleites_0007416, 7434).

Ex. 8 (MindGeek_Fleites_00007433).

PLAINTIFFS' OPP. TO VISA INC.'S MOT. FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

*See* Ex. 8 (MindGeek_Fleites_00007420, 7422, 7423) ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓").

Under no reasonable interpretation was this consistent with Visa's self-proclaimed "explicit," "unequivocal" and "vigilant" compliance regime. This incongruity became obvious in December 2020, when the ▓▓▓▓▓▓▓▓ imploded after the blockbuster New York Times MindGeek exposé. Three days later, Visa announced that it was investigating "MindGeek" and that "[i]f [*Pornhub*] is identified as not complying with applicable laws or the financial institutions' acceptable use policies and underwriting standards, they will no longer be able to accept Visa payments." *See* "Visa and Mastercard to Investigate Pornhub Financial Ties," *The New York Times*, https://www.nytimes.com/2020/12/07/business/visa-mastercard-pornhub.html (emphasis added). Three days after that it announced that it was "suspending Pornhub's acceptance privileges" and "instructing the financial institutions who serve MindGeek to suspend processing of payments through the Visa network." *See* "Mastercard, Visa dump Pornhub following rape video exposé," *N.Y. Post*, https://nypost.com/2020/12/10/mastercard-ends-relationship-with-pornhub-amid-illegal-content-expose/.

Notably, Visa did not publicly assert that it would continue processing MindGeek payments because it was only doing so through a ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Instead, its public statements reflected the reality that MindGeek and Pornhub were the operative actors. Plainly, Visa fully understood its secret ▓▓▓▓▓▓▓▓ was a factually indefensible artifice that could not survive minimal scrutiny.

The implosion of the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. To restore that lifeline, four days later MindGeek removed over ten million videos and fifty million images from Pornhub, virtually all of its free content, announced it would no longer

permit unverified user uploads, and began implementing various steps to ensure CSAM and other illegal content was not present on its website. *See* "Pornhub Just Purged All Unverified Content From the Platform," *Vice*, https://www.vice.com/en/article/pornhub-suspended-all-unverified-videos-content/.

Only thereafter did Visa "reinstate acceptance privileges for MindGeek sites that offer professionally produced adult studio content that is subject to requirements designed to ensure compliance with the law." *See* "Visa continues its ban on Pornhub but will allow payments on some of its parent company's sites," *CNN Business*, https://edition.cnn.com/2020/12/23/business/visa-pornhub-mindgeek-ban/index.html. In sum, Visa finally actually applied the same "unequivocal" compliance standards it imposes on other merchants, could have imposed on MindGeek in 2015, but agreed instead to excuse under the ▮▮▮▮▮▮▮

This evidence and the inferences the TAC draws from them are consistent with ample publicly available information and the work-product investigation conducted by Plaintiffs' counsel. Bowe Decl. ¶¶ 2-9. Individually, and collectively, this body of information provides ample basis for the challenged allegations that MindGeek and Visa agreed to collaborate, to special MindGeek treatment, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Likewise, these facts, along with the undeniable fact that Visa is a commercial actor driven by profit, make it most plausible that Visa took these actions based on its commercial objective of profiting from MindGeek's enormous transaction volumes. Bowe Decl. ¶¶ 5-8.

Visa's Motion addresses none of this and provides no testimony or evidence from Visa providing any alternative explanation.

**B.    Visa's Motion is Substantively Frivolous.**

Nevertheless, Visa seeks sanctions asserting that there is "No Factual Basis for the Plaintiffs' Allegations that . . .(a) Visa Collaborated with MindGeek to

14    Case No. 2:21-cv-04920-WLH-ADS

Conceal Illegal Content Through 'Scrubbing' and Content Manipulation" (Mot. at 8, I.A.); (b) "Visa Afforded MindGeek Special Processing Privileges" (Mot. 11, I.B.); (c) "Visa Afforded MindGeek Special Treatment and Exemptions" (Mot. 12, I.C.); and (d) "Visa Was Motivated to Capture Transactions in the Adult Online Industry" (Mot. 13). Visa, however, makes no effort whatsoever to substantiate these serious Rule 11 accusations leveled at opposing counsel. Indeed, although Visa cites 15 specific conspiracy allegations as warranting sanctions, it actually only discusses a few of those allegations in its motion.

**1.      Argument I.A - Collaboration.**

Visa's exclusive support for this attack is (a) a bald assertion that it is "implausible" that Visa would "coordinate" with MindGeek because Visa makes so much money elsewhere (Mot. 9) and (b) citation to a few lines of testimony from limited jurisdictional discovery in which the answers were ███████ and ██ ████████" (Mot. 9-10.)

As for Visa's implausibility argument, commercial businesses that make lots of money coordinate with customers and others both legally and illegally all the time. The courts are filled with such cases. Such businesses also often claim it is "implausible" they would do so illegally when accused as such. Indeed, MindGeek did so here also, as did Epstein and his coconspirators, including JP Morgan before it entered into over $360 million in settlements with 100 Epstein victims and the Virgin Islands. *See* "JPMorgan settles Jeffrey Epstein sex-trafficking lawsuit for $75 million," *NBC* , https://www.nbcnews.com/business/business-news/jp-morgan-75-million-settlement-jeffrey-epstein-lawsuit-victims-rcna117378. Simply saying a thing is implausible does not make it so. And although Visa could have provided sworn testimony from its personnel or agent banks to support this point, it chose not to. This itself is highly probative. And plainly, testimony of ███████" and ██ ████████ is certainly not proof of implausibility, and, in this context is evidence of the opposite. As the evidence above and common sense makes clear, this

allegation is not just plausible, it is true.

### 2.    Argument I.B – Special Privileges

As for Argument I.B., Visa misrepresents the TAC's allegations to create a sanctionable strawman.  Contrary to Visa's Motion, the TAC nowhere alleges as Visa claims that it "developed new payment models for MindGeek in the form of 'third-party processors.'" (Mot. 11; compare TAC ¶ 308).  What the TAC says is that Visa "worked with MindGeek to develop payment structures to help them both continue to process illegal payments" (TAC ¶ 308).  The evidence presented above shows that providing a bespoke "structure" was precisely what Visa and MindGeek's ███████.

Similarly true are the TAC's allegations that (a) "Visa and its network banks encouraged and permitted MindGeek to process substantial amounts of its online payments through 'Third-Party Payment Processors' that MindGeek actually owned" and (b) that "Visa delegated to those payment processors the purported obligations of monitoring the merchant . . . ." (TAC ¶ 308.)  As the evidence above shows, ████████████████

Finally, Visa claims there is no factual basis for the TAC's allegation that "Visa and its member banks also removed restrictions on payments that had clear indicia of trafficking and which would have resulted in suspension of blocks of other merchant accounts" (Mot. at 4).  Again, this is precisely what the ████ ████ was designed to do.  In addition, Visa's attack here quickly veers into a gripe about the sufficiency of detail in the allegation, which is a Rule 12, not a Rule 11, issue.  Worse, that gripe about insufficient detail ignores the paragraph's next sentence, which provides the *very detail* Visa complains was not provided.  (*See*

PLAINTIFFS' OPP. TO VISA INC.'S MOT. FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

TAC ¶ 310) ("regular payments from a large number of purportedly independent cam models being deposited into single accounts of obvious traffickers."). This particular allegation, which has been in this case from the initial complaint, was provided by an internal MindGeek whistleblower with first-hand knowledge. (Dkt. 1, ¶ 424).

### 3.    Argument I.C. – Special Treatment

As for Argument I.C., no allegation is more obviously true than that "Visa afforded MindGeek Special Treatment and Exemptions." Mot. 12. The juxtaposition of the MindGeek/Visa operating relationship before and after the New York Times reporting alone shows this is true. For this reason, Visa's attack is really a Rules 12 and 56, not Rule 11, attack. First it complains, "Plaintiffs identify no document, communications, or testimony showing that Visa permitted MindGeek to 'investigate itself' or accepted investigatory findings 'it knew to be false,'" declares *ipse dixit* that the allegations "are factually baseless," and then offers an entire paragraph of counterfactual assertions that are unaccompanied by a single document or sworn statement. (Mot. 12-13). Plaintiffs could find no case where a Rule 11 request was ever presented on such a deficient basis.

Visa then argues that "jurisdictional discovery undermines plaintiffs' account." Mot. 13. Of course, evidence that "undermines" an allegation does not render it sanctionable. More importantly, the example Visa gives is not probative or apposite to Visa's point. Specifically, Visa asserts that the allegations of special treatment are "undermined" because ███████████████████████████ ████████████████████████████████████ ████████████████████████ Mot. 13. Contrary to Visa's assertion, this "undermines" nothing.

### 4.    Argument I.D. – Visa Was Motivated By Profit

Finally, Visa makes the preposterous claim there that there is "no factual basis for Plaintiffs' allegations that . . . (a) Visa was motivated to capture transactions" in

the booming online porn industry.  (Mot. 13.)  This attack would only have merit if Visa ceased being a commercial entity whose *raison d'etre* was making a profit by processing transactions.

In the real world, the factual basis for Plaintiffs' allegations concerning motive would be understood by both a Ph. D economist and a bus driver.  Each would say that maximizing profit was one, probably the most obviously, ███████ ███████████████████████████████████████████████████████ ████████████████████████████████" increasing public reports of illegality, indictments, lawsuits, and the New York Times exposé.  Indeed, Visa summarily terminates much smaller merchants for far less all the time.  *See* Bowe Decl. ¶ 8.  The TAC simply alleges the most plausible answer to the question begged by the evidence.

Once again, Visa's argument resorts to Rule 12 and 56 attacks on the sufficiency of the allegations' detail.  The only specific counterfactual assertions Visa offers are as follows.  First, it quotes Visa's 10-k *from 2025* that "Visa has publicly embraced the emergence of alternative payment methods, encouraging 'expansion into emerging payments use cases,' developing a 'full stack stablecoin platform,' and 'enabling banks to issue and manage their own stablecoin.'"  (Mot. 14).  Again, this filing says very little that is relevant or probative and was made more than a decade after the facts alleged in the complaint began.  In contrast, Visa's own public statements and related analysis from the relevant time period unequivocally show that it viewed the emergence of alternative payment systems as a competitive threat.  *See, e.g.,* "With bitcoin near all-time high, this is where Visa's CEO sees crypto going," *CNBC*, https://www.cnbc.com/2020/11/20/where-visa-sees-crypto-going-with-bitcoin-near-all-time-high-.html?msockid=21daa22889f86e9b0a08b4a588e66f94 (financial analyst Lisa Ellis reporting "By their design, systems like bitcoin are intended to make centrally-controlled payments systems like Visa and Mastercard obsolete.").

PLAINTIFFS' OPP. TO VISA INC.'S MOT. FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

Finally, Visa asserts that "Plaintiffs' allegations about higher fees for adult entertainment transactions are also simply wrong," claiming without evidence, that the higher interchange fees that Visa charges online porn companies are "remitted to the bank issuing the card." (Mot. 14.)  This is a gross misrepresentation to the Court of Visa's own business.  Interchange fees are only one piece of the credit card cost structure.  Online pornography companies are also charged significantly more in transaction fees by Visa's network banks which secure the transaction volumes and higher fees for Visa, and Visa charges extra fees for registration and monitoring of such businesses.  Bowe Decl. ¶ 8.  Most important, Visa is a low-margin, non-premium card business that is focused on transaction volume, and online porn platforms have some of the highest volume in the world.  For example, the Financial Times reported that "porn made up 10-15 percent of Visa's online transaction volumes" and was "too big to ignore."  Bowe Decl. ¶ 7.  There is no world in which these self-evident allegations are not reasonable or plausible, or where they are sanctionable.

## II.     THE COURT SHOULD AWARD PLAINTIFFS ATTORNEY'S FEES.

Visa's Motion does not even try to provide the "unequivocal evidence" settled law requires.  It does not discuss specifically most of the claims it states are sanctionable.  It misrepresents some of the allegations it does discuss.  It cites no case remotely supporting the relief it is seeking, and it ignores a mountain of Ninth Circuit precedent clearly instructing this Motion is without merit.

Worse, the Motion itself ticks off the entire list that Rule 11 and the Ninth Circuit identify as abuses of the rule, and Visa filed the motion in violation of this Court's Standing Orders and Local Rules.  Although a Rule 11 motion must be brought "promptly," Visa waited four months after the TAC was filed to even send the required Rule 11 notice.  *See* Ex. 3; *see also* Exs. 1, 2.  When it did so, it had not, as the Rule instructs, first informally communicated about the Rule 11 Motion with Plaintiffs' counsel.  *See* FED. R. CIV. P. 11 advisory committee's note to 1993

PLAINTIFFS' OPP. TO VISA INC.'S MOT. FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

amendment.

To the contrary, in February, Visa's counsel repeatedly refused to state why it had requested a call to discuss the TAC's allegations, leaving Plaintiffs' counsel confused as to what he was being asked to discuss and why.  *See* Ex. 2.  Visa's counsel then later attempted to pretend that the February call was the "thorough" meet and confer this Court requires before this Motion could be filed, and made the same misrepresentation to the Court in this Motion.  *See* Ex. 3.  When Plaintiffs' counsel insisted on the required meet and confer, *see* Ex. 3, Visa's counsel refused to engage in any meaningful discussion on that call, complained that it was expected to do so, and terminated the call prematurely.  *See generally* Ex. 1.  Visa's counsel then immediately rushed to file the Motion only hours later despite having promised to consider and get back to Plaintiffs on several issues, (including solutions Plaintiffs had proposed) and Plaintiffs' counsel having stated that he had more to cover and asking to reconvene at the time Visa unilaterally terminated the call.  *See* Ex. 1 at 57-68.  Finally, when Visa filed this Motion, it did not include the required certification that it had met and conferred, as required by the Court, because it could not so certify.

Worse still, it is crystal clear that Visa did not file this Motion accusing opposing counsel of misconduct because there was a reasonable basis for sanctions. Visa filed the Motion for all the improper reasons Rule 11 and the Ninth Circuit have identified: to further argue the sufficiency of the TAC's allegation in the wake of *Ratha II*, chill advocacy and intimidate opposing counsel, and impinge on opposing counsel's work product.

To wit: After waiting four months from the filing of the TAC, having filed its Motion to Dismiss with no mention of an impending Rule 11 Motion, Visa only served the Rule 11 Motion after a meet and confer during which Plaintiffs informed Visa they intended to move to vacate the prior dismissal of TVPRA beneficiary liability claims against Visa based on the recent Ninth Circuit decision in *Ratha II*.

Visa's timing, failure to even discuss most of the allegedly sanctionable allegations, failure to submit apposite evidence or a declaration from the Visa personnel involved to support the few allegations it does discuss, failure to meet and confer or follow this Court's Standing Orders, and its substitution of arguments plainly suited to a Rule 12(b)(6) or a Rule 56 motion for which evidence is required, all clearly reveal that Visa is using this Rule 11 Motion to supplement and support its pending motion to dismiss in the wake of the recent Ninth Circuit *Ratha II* decision.  This is an egregious violation of Rule 11.

In *Goldwater Bank, N.A. v. Elizarov*, this Court found that a Rule 11 sanctions motion brought to test the efficacy of allegations was frivolous and brought for an improper purpose, warranting sanctions against the movant.  2023 WL 4295255, at *4 (C.D. Cal. May 9, 2023).  Judge Holcomb explained: "According to Ninth Circuit authority on Rule 11 sanctions, [the movant] was clearly wrong in disguising a motion for summary judgment as a Rule 11 Motion.  Even if [the movant], and his counsel [], thought that the Rule 11 Motion was meritorious based upon their superior evidence, no reasonable attorney admitted to practice before this Court would have misconstrued a Rule 11 Motion with either a motion to dismiss or a motion for summary judgment." *Id.* (collecting cases).

Visa's Motion is far worse than the application in *Goldwater*.  Plaintiffs respectfully request an award of fees.  *See arrivia Inc. v. Rowley*, 2024 WL 3010935, at *5 (D. Ariz. June 14, 2024) (awarding fees because "[g]iven the sophistication of Defendants' counsel, Defendants should have realized that the viability of Plaintiffs' claims was fairly debatable and that Rule 11 sanctions were not warranted in this case.  Accordingly, the Court will grant Plaintiffs their reasonable attorneys' fees pursuant to Rule 11(c)(2).") (citations omitted).  "A party defending a Rule 11 motion need not comply with the separate document and safe harbor provisions when counter-requesting sanctions." *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001) (citing FED. R. CIV. P. 11, advisory

21                                    Case No. 2:21-cv-04920-WLH-ADS

committee's note to 1993 amendment); *Amaro v. Bee Sweet Citrus, Inc.*, 2022 WL 3908309, at *6 (E.D. Cal. Aug. 30, 2022) (collecting cases).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny Visa's Motion, grant attorney's fees as deterrence, and provide any additional relief as is warranted.

Dated: May 29, 2026                      Respectfully submitted,

By:  *Michael J. Bowe*
_____

Michael J. Bowe (*pro hac vice*)
Lauren Tabaksblat (*pro hac vice*)
**BRITHEM LLP**

Nancy M. Olson (SBN 260303)
nolson@olsonstein.com
David M. Stein (SBN 198256)
dstein@olsonstein.com
**OLSON STEIN LLP**

*Attorneys for Plaintiffs*

PLAINTIFFS' OPP. TO VISA INC.'S MOT. FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs certifies that this brief contains 7,000 words or less, as required by this Court's order, *Fleites*, 2:21−cv−04920, ECF No. 393.

Dated: May 29, 2026

By: /s/ *Michael J. Bowe*

Michael J. Bowe

PLAINTIFFS' OPP. TO VISA INC.'S MOT. FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11