Michael J. Bowe
mbowe@brithem.com
Lauren Tabaksblat
ltabaksblat@brithem.com
**BRITHEM LLP**
565 Fifth Ave.
New York, NY 10017
Phone: 646.653.9378

Nancy M. Olson (SBN 260303)
nolson@olsonsten.com
David M. Stein (SBN 198256)
dstein@olsonstein.com
**OLSON STEIN LLP**
240 Nice Lane #301
Newport Beach, CA 92663
Phone: 949.887.4600

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| SERENA FLEITES, <br><br> Plaintiff, <br><br> v. <br><br> MINDGEEK S.A.R.L., et al., <br><br> Defendants. | Case No. 2:21-cv-04920-WLH-ADS <br><br> Hon. Wesley L. Hsu <br><br> **DECLARATION OF MICHAEL BOWE IN SUPPORT OF OPPOSITION TO VISA INC.'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11** <br><br> Date:  June 26, 2026 <br> Time:  1:30 pm <br> Courtroom:  9B |

1

M. BOWE DECL. ISO PLAINTIFFS' OPP. TO VISA INC.'S MOT. FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

Case No. 2:21-cv-04920-WLH-ADS

I, Michael Bowe, declare and state as follows:

1.        I am a partner of Brithem LLP and lead counsel for Plaintiff Serena Fleites in the above-referenced matter and plaintiffs in the other fourteen related actions (together, "Plaintiffs").[1]  I submit this declaration in support of the *Plaintiffs' Opposition to Visa Inc.'s Motion for Sanctions Pursuant to Fed. R. Civ. P. 11*.  I am over the age of eighteen years old, I have personal knowledge of the facts stated herein, and if called as a witness, I could and would competently testify thereto.

### A.        Plaintiffs' Investigation

2.        Although the details of the investigation by Plaintiffs' counsel in this case are privileged, the following summary generally describes certain subjects investigated relevant to this Motion and a description of a certain understanding from that investigation.

3.        The investigation Plaintiffs' counsel conducted in this case is substantial.  It began over a year before the first of these cases were commenced and has continued throughout.  Between counsels' prior firm and Brithem LLP, millions of dollars have been spent on this investigation.  Among other things investigated

[1] *Fleites v. MindGeek, S.à.r.l., et al.*, No. 2:21-cv-04920-WLH-ADS (C.D. Cal. June 17, 2021); *K.A. v. MindGeek, S.à.r.l., et al.*, No. 2:24-cv-04786-WLH-ADS (C.D. Cal. June 7, 2024); *N.L. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04788-WLH-ADS (C.D. Cal. June 7, 2024); *L.T. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04791-WLH-ADS (C.D. Cal. June 7, 2024); *T.C. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04795-WLH-ADS (C.D. Cal. June 7, 2024); *N.Y. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04801-WLH-ADS (C.D. Cal. June 7, 2024); *J.C. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04971-WLH-ADS (C.D. Cal. June 12, 2024); *W.L. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04977-WLH-ADS (C.D. Cal. June 13, 2024); *C.S. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04992-WLH-ADS (C.D. Cal. June 13, 2024); *S.O. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-04998-WLH-ADS (C.D. Cal. June 13, 2024); *L.S. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-05026-WLH-ADS (C.D. Cal. June 14, 2024); *W.P. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-05185-WLH-ADS (C.D. Cal. June 20, 2024); *A.K. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-05190-WLH-ADS (C.D. Cal. June 20, 2024); and *J.L. v. MindGeek S.à.r.l., et al.*, No. 2:24-cv-07046-WLH-ADS (C.D. Cal. June 20, 2024).

M. BOWE DECL. ISO PLAINTIFFS' OPP. TO VISA INC.'S MOT. FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

Case No. 2:21-cv-04920-WLH-ADS

was Visa Inc.'s ("Visa") complicity in MindGeek's monetization of CSAM and other illegally trafficked content.  This investigation included, among other things, thorough research into the credit card industry's operations, economic and competitive environment, and practices, particularly with respect to online pornography.  It also included interviews with current and former MindGeek executives and employees, including several very senior executives, moderators involved in the review and manipulation of content, and payment processing compliance professionals responsible for detecting illegal transactions.  We also spoke with former Visa executives involved in its compliance program, including with respect to the online pornography industry.  And we spoke with non-testifying experts.

4.    From that investigation overall, we became aware that Visa and other credit card companies, along with their agent banks, actively monitor online pornography platforms, including MindGeek, and that Visa was aware that these platforms generally, and MindGeek specifically, contained substantial CSAM and other illicit content.  This information is corroborated by a plethora of public reporting, some of which is included in the Plaintiffs' complaints.  We also learned that Visa's compliance program is highly interactive, with Visa regularly in contact with, receiving reports from, and issuing directions to its network banks as well as periodically communicating with significant individual merchants like MindGeek.  However, regular day-to-day contact with merchants is principally conducted by Visa's network banks, who regularly act as intermediaries between the merchant and Visa.

5.    The monitoring we became aware of included the use of " ███ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████

M. BOWE DECL. ISO PLAINTIFFS' OPP. TO VISA INC.'S MOT. FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

Case No. 2:21-cv-04920-WLH-ADS

[REDACTED] We corroborated this information through experts in the industry and deep open-source research. This information was further corroborated by the limited jurisdictional discovery obtained in this action.

6. We also have investigated Visa's business practices and its economic and competitive environment. Much of what this research revealed has been publicly reported. Relevant to this Motion is the fact that the online porn industry was a substantial source of business and revenue for Visa.

7. This information was corroborated by, among others, investigative journalists from the Financial Times who reported, in interviews with former senior Visa compliance executives, that during the period in question, "porn made up 10-15 percent of Visa's online transaction volumes," became "too big to ignore," and Visa "realized it had to work out ways to deal with . . . really bad stuff, like videos of child abuse," "track the internet and the sites selling porn," and "actively review on online compliance." The Financial Times described Visa as one of the "ruler(s) of porn" with "day to day influence" on online porn operations. "Inside Porn's Star Chamber," *Financial Times*, https://www.ft.com/content/ce32d4ae-1055-4eef-ad43-f73d6bf95bb8?syn-25a6b1a6=1.

8. We also learned from our investigation that Visa and other credit card companies were permitting large lucrative online platforms to use their payment systems despite reported or confirmed illegal activities, while summarily terminating or otherwise punishing smaller less lucrative merchants for less significant infractions under the normal compliance standards and process. A recent example was a well-publicized whistleblower report submitted to the Treasury Department alleging Visa was processing payments on OnlyFans despite a "high volume" of CSAM and other trafficked content for which Visa was processing and

M. BOWE DECL. ISO PLAINTIFFS' OPP. TO VISA INC.'S MOT. FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

Case No. 2:21-cv-04920-WLH-ADS

laundering proceeds. *See* "Exclusive: Mastercard, Visa failed to stop payments on OnlyFans for child sex abuse content, says whistleblower," *Reuters*, https://www.reuters.com/world/us/us-whistleblower-says-mastercard-visa-failed-stop-payments-child-sex-abuse-2025-01-24/.

9.     Other information indicated that Visa and the credit card industry had material disparities in enforcement whereby issues related to potential monetary loss received the highest level of enforcement effort while CSAM received the lowest level along with controlled substances, gambling and other illicit conduct from which high volume transaction fees could be earned. *See* Moore & Clyton, *The Impact of Incentives on Notice and Take-down*, Computer Laboratory, University of Cambridge; "Two-Card Monte: Why Mastercard And Visa Rarely Shut Down Scammers Who Are Ripping Off Consumers," *BuzzFeed.News*, https://www.buzzfeednews.com/article/rosalindadams/mastercard-visa-fraud (details Visa and Mastercard tolerance for illegality in the porn and other illicit industries because lucrative opportunities); "Mastercard and Visa linked to illegal gambling sites accused of scamming UK customers," *The Guardian*, https://www.theguardian.com/society/2025/mar/09/mastercard-and-visa-linked-to-gambling-sites-accused-of-scamming-uk-customers (reporting Visa agreed to block payments to unlicensed gambling operators in 2014 but continued processing payments thereafter).

### C.     The Parties Meet and Confer

10.     On February 5, 2026, one week after Visa filed its Motion to Dismiss (Dkt. 634), Visa's counsel requested a call with Plaintiffs' counsel to discuss the TAC's allegations.

11.     On February 20, 2026, Lauren Tabaksblat and I, as Plaintiff's counsel, held a conference with Visa's counsel, Josh Wesneski. During that call, I asked repeatedly what the purpose of the exercise was and to what end other than

"curiosity" was I being asked to disclose work product. Other than stating that Visa did not understand the factual basis for the claims, Visa's counsel offered no other information. When I invited Visa's counsel to provide me with any information that he believed showed we had made an error, none was provided. Visa's counsel never mentioned Rule 11 or suggested it had any intention to file a motion for sanctions. When I declined to proceed with an informal Q&A session with Visa's counsel, we ended the call without further comment.

12. Visa served its Rule 11 Motion a month later and just approximately one week after we had informed Visa that Plaintiffs would be seeking to vacate its prior order dismissing the TVPRA beneficiary liability claim against Visa based on the Ninth Circuit's recent *Ratha II* decision.

13. On Thursday evening, April 9, 2026, for the first time, Visa's counsel emailed Plaintiffs' counsel asking if we needed to confer further on the Motion for Sanctions. In response, we counsel advised we were surprised because Visa had never sought to meet and confer as required under the Local Rules and this Court's Standing Order. *See* Ex. 3, March 20, 2026 to April 13, 2026 Email Communications.

14. On Friday, April 17, 2026, my colleagues and I held a meet and confer with Visa's counsel, Josh Wesneski. *See* Ex. 1, April 17, 2026 Meet and Confer Transcript. Contrary to Visa's discussion of the meet and confer in its Notice of Motion, I recounted that on February 20, 2026, Mr. Wesneski (and other Visa counsel) chose not to share any factual evidence purportedly showing the TAC was baseless despite being invited to do so several times. *See id.* at 7:14-22 ("I invited you several times to share it with me. And you chose not to."); *id.* at 25:22-23 ("Mr. Wesneski: I assume so. I mean, we didn't share any information.").

15.    Mr. Wesneski also admitted that on February 20, 2026 he did not indicate that Visa intended to file a Rule 11 motion or provide any factual information to Plaintiffs' counsel that rebutted Plaintiffs' allegations:

> MR. BOWE:· Well, I asked you -- you recall, I kept saying it just sounded like you wanted to spitball and you were just curious.  Do you remember me saying that several times?
>
> MR. WESNESKI:· Not in those words, but I remember you raising a number of issues and questions.
>
> MR. BOWE:· Do you remember me saying repeatedly I just didn't understand what the function of the call was because I've never been involved in something where lawyers just call each other up and ask them to start explaining their case to them?
>
> MR. WESNESKI: Yep.  I remember that.
>
> MR. BOWE: And at that point, why didn't you tell me then because we think it's objectively baseless and we're thinking of filing a Rule 11 motion?
>
> MR. WESNESKI: We did indicate to you that we were asking because we didn't believe there was a basis for the allegations.  I don't think we were obliged at that time to tell you that there was Rule 11 motion that we could potentially serve in the future.

*Id.* at 24:2-25:7; *see also id.* at 29:7-30:17 ("Mr. Wesneski: Well, I was referring specifically to the February 20th meeting.  Mr. Bowe: Okay.  But you never mentioned Rule 11.  You never mentioned Rule 11 in that meeting.  Mr. Wesneski: I understand.").

16.    Ultimately, Mr. Wesneski declined repeated attempts to engage in a meaningful conference, and complained that he was being asked to engage substantively, at all:  "Mr. Wesneski: **We will take  -- we will consider what you raised here**, including this particular allegation and any of the other ones you've

7

M. BOWE DECL. ISO PLAINTIFFS' OPP. TO VISA INC.'S MOT. FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

Case No. 2:21-cv-04920-WLH-ADS

raised today, and we will take it very seriously and consider them. Mr. Bowe: Okay. Mr. Wesneski: **But I'm not prepared on this call** to say, you know, oh, yes, you're right or no, you're definitely wrong **because I'm listening to you make your points. And I hear them. And we have to consider them**." *Id.* at 57:1-14 (emphasis added).

17.    Mr. Wesneski unilaterally ended the meeting after an hour and refused my request that the parties schedule a further meet-and-confer. See *id.* at 59:22-24 ("Mr. Wesneski: you scheduled this for an hour. This was your schedule. It's not mine."). After Mr. Wesneski informed me that he had another meeting he needed to attend, I stated, "All right. Well, I have more to cover. We can see if we can reconvene." *Id.* at 59:19-21. Nevertheless, Visa filed the present Motion mere hours after. *See id.* at 59-68.

**D**. **Evidentiary Exhibits**

18.    Attached hereto as Exhibit 1 is a true and correct copy of the transcript of the April 17, 2026 conference between Plaintiffs' counsel and Visa Inc.'s counsel, Josh Wesneski.

19.    Attached hereto as Exhibit 2 is a true and correct copy of the February 5, 2026 email from Visa Inc.'s counsel, Josh Wesneski.

20.    Attached hereto as Exhibit 3 is a true and correct copy of the March 20, 2026 to April 13, 2026 email communications between Visa Inc.'s counsel and Plaintiffs' counsel, including Josh Weneski's service of the Motion and communications regarding Local Rule 7-3's requirement of a meet-and-confer on April 9, 2026.

21.    Attached hereto as Exhibit 4 is a true and correct copy of MindGeek internal email communications sent on or around August 19, 2015 (beginning Bates MindGeek_Fleites_00095520).

22.    Attached hereto as Exhibit 5 is a true and correct copy of MindGeek's internal email communications sent on or around February 10, 2025 (beginning Bates MindGeek_Fleites_00095572).

23.    Attached hereto as Exhibit 6 is a true and correct copy of internal MindGeek text messages sent on or around May 27, 2020 (beginning Bates MindGeek_Fleites_00097787).

24.    Attached hereto as Exhibit 7 is a true and correct copy of internal MindGeek email communications sent on or around March 12, 2015 (beginning Bates MindGeek_Fleites_00094742).

25.    Attached hereto as Exhibit 8 is a true and correct copy of internal MindGeek text messages sent on or around May 29, 2020 (beginning Bates MindGeek_Fleites_00007409).

26.    Attached hereto as Exhibit 9 is a true and correct copy of internal MindGeek email communications sent on or around June 16, 2020 (beginning Bates MindGeek_Fleites_00092548).

27.    Attached hereto as Exhibit 10 is a true and correct copy of internal MindGeek email communications sent on or around May 28, 2020 (beginning Bates MindGeek_Fleites_00007537).

28.    Attached hereto as Exhibit 11 is a true and correct copy of internal MindGeek email communications sent on or around August 20, 2015 (beginning Bates MindGeek_Fleites_00093544).

29.    Attached hereto as Exhibit 12 is a true and correct copy of internal MindGeek communications sent on or around February 20, 2020 (beginning Bates Bergmair_Fleites_00000024).

30.    Attached hereto as Exhibit 13 is a true and correct copy of internal MindGeek communications on or around March 4, 2020 (beginning Bates MindGeek_Fleites_00083118).

M. BOWE DECL. ISO PLAINTIFFS' OPP. TO VISA INC.'S MOT. FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

Case No. 2:21-cv-04920-WLH-ADS

31.     Attached hereto as Exhibit 14 is a true and correct copy of internal MindGeek communications on or around June 14, 2020 (beginning Bates MindGeek_Fleites_00007550).

32.     Attached hereto as Exhibit 15 is a true and correct copy of the letter sent by Visa's Risk Management (beginning Bates Bergmair_Fleites_0000003).

33.     Attached hereto as Exhibit 16 is a true and correct copy of internal MindGeek communications on or around February 20, 2020 (beginning Bates MindGeek_Fleites_00079149).

34.     Attached hereto as Exhibit 17 is a true and correct copy of internal MindGeek email communications on or around June 26, 2020 (beginning Bates MindGeek_Fleites_00008017).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on May 29, 2026, in New York, New York.


                                    _/s/  Michael J. Bowe_____
                                    Michael J. Bowe

M. BOWE DECL. ISO PLAINTIFFS' OPP. TO VISA INC.'S MOT. FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

Case No. 2:21-cv-04920-WLH-ADS