UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-04920-WLH-ADS | Date | July 9, 2026 |
|---|---|---|---|
| Title | *Serena Fleites et al v. MindGeek S.A.R.L. et al.* | | |

| Present: The Honorable | WESLEY L. HSU, United States District Judge |
|---|---|

| Claudia Garcia-Marquez | None |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:   (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT VISA'S MOTION TO DISMISS [634]**

The Court is in receipt of Defendant Visa's Motion to Dismiss (the "Motion"). ("Defendant Visa's Motion to Dismiss," Dkt. No 634). The Court heard oral argument on June 18, 2026. For the reasons explained herein, the Court **GRANTS** in part and **DENIES** in part.

**I.     BACKGROUND**

Following this Court's dismissal of all claims against Defendant Visa, Inc. ("Defendant Visa"), Plaintiffs in *Fleites v. MindGeek S.a.r.l.*, No. 21-CV-04920-WLH-ADS and the 14 related cases (collectively, "Plaintiffs") each filed amended complaints.[1]

---

[1] This Motion covers claims brought by Plaintiffs against Visa in the above-captioned proceeding as well as in the 14 related cases: *K.A. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04786-WLH-ADS (C.D. Cal. Dec. 15, 2025); *L.T. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04791-WLH-ADS (C.D. Cal. Dec. 16, 2025); *N.L. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04788-WLH-ADS (C.D. Cal. Dec. 16, 2025); *N.Y. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04801-WLH-ADS (C.D. Cal. Dec. 15. 2025); *T.C. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04795-WLH-ADS (C.D. Cal. Dec. 16. 2025); *X.N. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04800-WLH-ADS (C.D. Cal. Dec. 15, 2025); *J.C. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04971-WLH-ADS (C.D. Cal. Dec. 16, 2025); *C.S. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04992-WLH-ADS (C.D. Cal. Dec. 16, 2025); *S.O. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04998-WLH-ADS (C.D. Cal. Dec. 16, 2025); *W.L. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04977-WLH-ADS (C.D. Cal. Dec. 16, 2025); *L.S. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-05026-WLH-ADS (C.D. Cal. Dec. 16, 2025); *A.K. v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

The core of the allegations in each complaint remains the same, namely, that Plaintiffs were underage victims of sexual exploitation, including through the creation of explicit videos that were uploaded to the free adult video website, Pornhub and other websites allegedly owned or operated by Defendant MG Freesites, Ltd. d/b/a Pornhub ("Pornhub"), MindGeek USA Inc., MG Premium Ltd., MG Global Entertainment, Inc., and 9219-1568 Quebec, Inc. (collectively, "MindGeek").  Plaintiffs are victims of sex trafficking whose videos were ultimately uploaded to Pornhub, one of MindGeek's websites with user-generated content.  (TAC ¶¶ 326–27).  Plaintiff Serena Fleites ("Plaintiff Fleites"), for example, alleges that she was coerced into making an explicit video as a teenager, which was made widely available on Pornhub and not removed until after extensive outreach to MindGeek, and only then with limited success.  (TAC ¶¶ 328-31).  Plaintiff Fleites alleges that years later, while still a minor, she was coerced into making another explicit video, which was again ultimately uploaded to Pornhub. (*Id.* ¶¶ 337-39).  These experiences allegedly caused and continue to cause Plaintiff Fleites significant psychological harm.  (*Id.* ¶¶ 335-36, 340).  Broadly, Plaintiffs allege that MindGeek failed to adequately monitor its websites for underage and non-consensual content, in part because such content is profitable for MindGeek and drives traffic. (TAC ¶¶ 168, 175; *K.A.* Am. Compl. ¶¶ 168, 175).

Defendant Visa is not alleged to be either a trafficker or a participant in a trafficking venture.  Instead, Defendant Visa operates a global payment processing network through its relationships with banks (Acquirers), who then contract with merchants (like MindGeek) for payment processing.  (*Id.* TAC ¶ 291; *see, e.g.*, Visa,

---

*MindGeek, S.à.r.l.*, Case No. 2:24-cv-05190-WLH-ADS (C.D. Cal. Dec. 15, 2025); *W.P. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-05185-WLH-ADS (C.D. Cal. Dec. 16, 2025); and *J.L. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-07046-WLH-ADS (C.D. Cal. Dec. 16, 2025). Except where indicated, the allegations across all of these complaints are substantively identical.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

2025 Annual Report (Nov. 6, 2025) ("Visa 2025 Annual Report").  Defendant Visa imposes rules governing merchants and transactions, but it is ultimately the Acquirers that maintain merchant relationships and monitor transaction activity.  (Visa 2025 Annual Report at 4-6, 11-12, 16-18, 66, 69).  Until the most recent version of the Complaint, the only allegations against Defendant Visa were that it allowed MindGeek access to its payment processing network, despite allegedly knowing (actually or constructively) that MindGeek's websites contain underage and non-consensual content.  (TAC ¶¶ 93, 286).  Plaintiffs allege that Defendant Visa was aware of such content through outreach by various advocates, but that it was not until December 2020, when an article ran in the *New York Times* about Pornhub, that Defendant Visa halted payment processing for those MindGeek sites allowing user-generated content.  (TAC ¶¶ 323-24).  Plaintiffs do not allege that Defendant Visa created, uploaded or disseminated, nor aided and abetted the same, any content on MindGeek's websites.

In the TAC, Plaintiffs now allege, for the first time, that Defendant Visa is a direct participant in a conspiracy with MindGeek to take over the industry for online adult entertainment.  (*See generally* TAC).  Plaintiffs now allege that Defendant Visa provided MindGeek special treatment by declining to sanction or terminate MindGeek for conduct that would have resulted in discipline for any other merchant.  (TAC ¶ 305).  Plaintiffs allege that Defendant Visa worked with MindGeek to "develop payment structures" that would avoid public exposure, including through the use of "Third-Party Payment Processors" owned by MindGeek.  (TAC ¶ 308).  Also, Plaintiffs aver that Defendant Visa collaborated with MindGeek on minimizing the visibility of illegal conduct, including by suggesting changes to words connected to illegal content and by removing restrictions on certain payment.  (TAC ¶ 310).  Finally, Plaintiffs assert that Defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Visa and MindGeek "repeatedly coordinated their public comments" in response to public pressure.  (TAC ¶ 311).

Plaintiffs brought the following causes of action:  (i) Violations of Federal Sex Trafficking Laws (18 U.S.C. §§ 1591, 1594, 1595); (ii) Receipt, Transport, and Distribution of Child Pornography (18 U.S.C. §§ 2252, 2252A, 2255); (iii) Public Disclosure of Private Facts; (iv) Intrusion into Private Affairs; (v) Placing Plaintiffs in "False Light"; (vi) Negligence; (vii) Unfair Competition (California Business & Professions Code § 17200); (viii) California Products Liability Design Defect; (ix) Civil Conspiracy.  (*See generally* TAC).

On September 26, 2025, the Court dismissed all of Plaintiffs' claims against Defendant Visa.  (*Fleites* Order at 46-47; *see also* Mot. to Dismiss Order, *K.A. v. MindGeek S.A.R.L.*, No. 2:24-CV-04786 (C.D. Cal. Nov. 6, 2025), Dkt. No. 166).  In relation to Plaintiffs' claim that Defendant Visa was liable as a beneficiary of participation in a trafficking venture under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), the Court held that "the relationship that Plaintiff [Fleites] illustrates of Visa and MindGeek is more akin to a 'remote intermediary' that provided 'off-the-shelf product' to MindGeek."  (*Fleites* Order at 17) (citation omitted).  With respect to Plaintiffs' claims against Defendant Visa for conspiracy under the TVPRA, the Court held that while Plaintiffs had plausibly alleged Defendant Visa's knowledge of the wrongful activity, Plaintiffs had not plausibly alleged either Defendant Visa's agreement or intent to further the wrongful activity.  (*Id.* at 29-39).  The Court explained that an agreement for conspiracy purposes "cannot solely be a business relationship or overlapping commercial interests," and that "[i]n the absence of interaction, coordination, or shared purpose, continued service—even in the face of awareness—is not enough to demonstrate a meeting of the minds and plead agreement."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

(*Id.* at 34).  The Court further held that "the fact that a company continues to do business with an entity accused of wrongdoing—without more—is not enough to show that it shares the entity's unlawful objective." (*Id.* at 37).  Finally, the Court dismissed Plaintiffs' civil conspiracy claim for lack of a plausibly alleged predicate offense, *(id.* at 45), and dismissed Plaintiffs' claim under California's Unfair Competition Law ("UCL") for failure to allege unlawful conduct (*id.* at 46).  The Court gave Plaintiffs partial leave to amend.

On December 15, 2025, Plaintiffs filed their TAC.  (TAC, Dkt. No. 622).  Defendant Visa filed the instant Motion (*See generally* Mot.).  Plaintiffs filed their Opposition (Opp'n., Dkt. No. 654), to which Defendant Visa filed its Reply (Reply, Dkt. No. 670).

## II.    DISCUSSION

### A. <u>Legal Standard</u>

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

2002). The court, however, is not required to accept as true legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678. A claim is considered to have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

Under Rule 15(a), the court should "freely give leave" for a party to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Granting leave to amend is left to the sound discretion of the court, and the court "must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Accordingly, the policy favoring amendments to pleadings is "to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)).

**B. Analysis**

*1. Standing*

Defendant Visa avers that Plaintiffs' lack Article III standing. (Mot. at 8). Plaintiffs have the burden of establishing that they have Article III standing with respect to Defendant Visa. *WildEarth Guardians v. U.S. Dep't of Agriculture*, 795 F.3d 1148, 1154 (9th Cir. 2015). To establish standing, Plaintiffs must show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Defendant Visa's argument centers on traceability. (*See generally* Mot.). Defendant Visa argues that Plaintiffs' injuries

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

"depend[] entirely on the independent actions of entities and individuals—namely, Plaintiffs' alleged traffickers and the MindGeek Defendants—other than Visa." (*Id*. at 9).  Defendant Visa insists that the involvement of numerous third parties whose independent decisions collectively had a significant effect on Plaintiffs' injuries forecloses a finding that Plaintiffs have standing to sue Defendant Visa.  (*Id*. at 7). Defendant Visa states, "Visa is not alleged to have directly caused any of Plaintiffs' injuries, which arise out of Plaintiffs' sexual assault and the creation and dissemination of Plaintiffs' explicit videos.  Instead, Visa's only alleged connection is through the processing of payments for MindGeek, which Plaintiffs have not plausibly tied to any injury." (*Id*.).

Notably, this Court has already rejected Defendant Visa's standing argument previously made by Defendant Visa.  ("Order Granting in Part and Denying in Part Defendant Visa's Motion to Dismiss," Dkt. No. 166).  The Court found Defendant Visa's standing arguments to be unpersuasive, ruling that Plaintiff Serena Fleites' injuries are fairly traceable to "Visa's conduct of recognizing MindGeek as a merchant," which was "at least a substantial factor motivating [MindGeek's] actions." (*Id*. at 10-13).  In so ruling, the Court reasoned that Defendant Visa's conduct enabled MindGeek to monetize trafficking content and provided the financial infrastructure to sustain its operations.  For these same reasons, the Court **DENIES** Defendant Visa's Motion on these grounds.

*2.  TVPRA Civil Conspiracy Claim*

Defendant Visa moves to dismiss Plaintiffs' TVPRA conspiracy claim, arguing that Defendant Visa's alleged conduct with respect to Plaintiffs predates the 2023 amendment to 18 U.S.C. § 1595(a), and that no private right of action for civil conspiracy existed under the TVPRA prior to that amendment. (Mot. at 10).

a.  Retroactivity of the 2023 TVPRA Amendment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

The Court previously reviewed this same argument brought by Defendant Visa in the order where this Court found that the 2023 amendment to the TVPRA could be applied retroactively to pre-2023 conduct. (*Fleites* Order at 18-28). The Court incorporates by reference the analysis in this previous order.

On February 20, 2026, the Ninth Circuit, sitting *en banc*, confirmed the Court's previous holding that "the ATRA's changes to 18 U.S.C. § 1595(a) apply retroactively." *Ratha v. Rubicon Res*., LLC, 2026 WL 480006, at *12-13 (9th Cir. Feb. 20, 2026) ("*Ratha II*"). The majority concluded that ATRA did not create new liability; it confirmed that Congress had always authorized and intended civil remedies against those who attempt or conspire to benefit from trafficking. *Id*. at *7. The holding is consistent with Congress' clear mandate that TVPRA liability is "broad," "expansive," and intended to punish a wide range of conduct. *See Acevedo v. eXp Realty*, LLC, 713 F. Supp. 3d 740, 766 (C.D. Cal. 2024) (observing that the TVPRA is a remedial statute that is intended to be construed broadly and applies to cases that may not be the "archetypal" sex trafficking action).

b. Sufficiency of the TVPRA Civil Conspiracy Allegations

Defendants also aver that Plaintiffs have failed to allege the essential elements of a TVPRA conspiracy. (Mot. at 11). Given that the Court finds that Defendant Visa may be held liable for civil conspiracy under the TVPRA for pre-2023 conduct, the Court now turns to the parties' substantive conspiracy arguments. The civil remedy provision of the TVPRA permits suit against any person who "conspires to benefit" from participation in a sex trafficking venture. 18 U.S.C. § 1595(a). The statute does not define "conspires," but where Congress uses a legal term with a well-established common law meaning, courts presume that Congress intends to incorporate that meaning. *Twitter, Inc. v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

*Taamneh*, 598 U.S. 471, 484-85 (2023) (quoting *Sekhar v. United States*, 570 U.S. 729, 733 (2013)).[2]

At common law, civil conspiracy liability requires:  (1) an agreement to do an unlawful act or a lawful act in an unlawful manner; (2) an overt act in furtherance of the agreement by someone participating in it; and (3) injury caused by the act.  *Halberstam v. Welch*, 705 F.2d 472, 487 (D.C. Cir. 1983)[3]; *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986); U.S. *v. Matta-Ballesteros*, 71 F.3d 754, 765 (9th Cir. 1995).  Courts have further broken down the agreement element into three sub-elements:  (i) knowledge of the wrongful activity, (ii) agreement to join in the wrongful activity, and (iii) intent to aid in the wrongful activity.  *Ajzenman v. Office of Comm'r of Baseball*, 487 F. Supp. 3d 861, 867 (C.D. Cal. 2020) (citing *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 981 (N.D. Cal. 2013)).  This case turns primarily on the sufficiency of Plaintiffs' allegations as to these three elements.  The Court analyzes each in turn.

As to the first sub-element of knowledge, the knowledge required to establish liability for civil conspiracy under the TVPRA is higher than the constructive knowledge standard applicable to beneficiary liability.  While § 1595 permits a beneficiary claim against a defendant who "knew or should have known" that a venture was engaged in trafficking, conspiracy requires actual knowledge of the venture's unlawful purpose.  As the D.C. Circuit explained in *Halberstam*, "a person must know the object of the conspiracy and intend to participate in it."  705 F.2d at 481.  This framework guided the court's analysis in *Doe v. Deutsche Bank Aktiengesellschaft,* 671 F. Supp. 3d 387

---

[2] Where a statute imposes both civil and criminal liability, courts interpret the relevant terms consistently across both contexts.  *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("[W]e must interpret the statute consistently, whether [we] encounter its application in a criminal or noncriminal context.").

[3] *Twitter* refers to *Halberstam* as "a leading case on civil aiding-and-abetting and conspiracy liability." *Twitter*, 598 U.S. at 444.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

(S.D.N.Y. 2023).  In applying conspiracy principles to a TVPRA claim, the court emphasized that conspiracy requires that each defendant must have "entered into a joint enterprise with consciousness of its general nature and extent."  *Id.* at 411 (quoting *United States v. Alessi,* 638 F.2d 466, 473 (2d Cir. 1980); *United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1541 (9th Cir. 1989) (holding that "each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.").

Defendant Visa argues that it cannot be held liable for conspiracy unless it had knowledge of the specific acts perpetrated against Plaintiff herself.  According to Defendant Visa, beneficiary liability under § 1591(a)(2) requires knowledge of the acts committed against Plaintiff, the same level of knowledge must be required for conspiracy liability.  (Mot. at 12).  Defendant Visa states that it maintains that knowledge of acts perpetrated against the Plaintiffs is necessary.  (*Id.*).  Defendant Visa's position, in effect, would require Plaintiffs to plead and prove that Defendant Visa had actual knowledge of the particular sex trafficking venture that harmed Plaintiffs, not just knowledge of MindGeek's role as a beneficiary or of generalized wrongdoing.

The Supreme Court, however, has clarified that conspiracy "cannot exist without at least the degree of criminal intent necessary for the substantive offense itself."  *Ingram v. United States*, 360 U.S. 672, 678 (1959).  This does not mean the constructive knowledge standard for beneficiary liability under § 1591(a)(2) automatically applies to conspiracy. Rather, what is required here is actual knowledge of the unlawful objective—namely, MindGeek's participation as a beneficiary in a sex trafficking venture.  Essentially, Defendant Visa is attempting to conflate the standards for beneficiary and conspiracy liability, but the law requires that Defendant Visa have actual awareness of the broader venture with MindGeek, not specific knowledge of acts perpetrated against the Plaintiffs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Plaintiffs contend that Defendant Visa acquired actual knowledge of the venture's unlawful objectives through a series of escalating warnings and public disclosures, along with Defendant Visa's own due diligence of MindGeek's business operations. For example, Plaintiff Fleites alleges that Defendant Visa conducted internal due diligence reviews of MindGeek's platforms, which would have revealed an abundance of nonconsensual content and CSAM. (TAC ¶ 297). Plaintiff Fleites alleges, "[B]y no later than 2014, Visa was aware before the public or others of MindGeek's unrestricted content model, untrue claims about its terms of service and compliance, and the widespread presence of CSAM and illegal content on MindGeek's sites." (*Id.*). Plaintiff Fleites also contends that Defendant Visa's competitor, PayPal, terminated its relationship with MindGeek in 2019, citing policies prohibiting transactions involving criminal content. (*Id.* ¶ 169). Defendant Visa received numerous public and private reports from victims, law enforcement, NGO's and advocates and other third parties detailing the trafficking and CSAM issues endemic to MindGeek's platforms. (*Id.* ¶¶ 296). Taken together, these allegations plausibly support an inference, that Defendant Visa became aware that MindGeek's business model relied, at least in part, on the monetization of trafficking-related content. *See generally Deutsche Bank*, 671 F. Supp. 3d at 412 ("If taken as true, plaintiffs' allegations do support the inference that Deutsche Bank and JP Morgan intended to profit from their relationships with Jeffrey Epstein, and that accomplishing that object required JP Morgan and Deutsche Bank to provide banking services that allegedly, they knew, or recklessly disregarded, supported Jeffrey Epstein's sex-trafficking venture."). The Court finds that, at the pleading stage, Plaintiffs have alleged sufficient facts to support Defendant Visa's knowledge.

As to the second sub-element, courts have emphasized that the agreement is the essential feature of conspiracy. *Deutsche Bank*, 671 F. Supp. 3d at 412 (quoting *United*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

*States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1191 (2d Cir. 1989)) ("The gist of conspiracy is, of course, agreement."); *Halberstam*, 705 F.2d at 477 ("The element of agreement is a key distinguishing factor for a civil conspiracy action.").  As the Ninth Circuit has explained, agreement in this context means that the parties reached a "meeting of the minds in an unlawful arrangement." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1020 (9th Cir. 1985).  Because direct evidence of an explicit agreement is rare, conspiracy may be proven through circumstantial evidence.  *See generally Green v. Benden*, 281 F.3d 661, 665-66 (7th Cir. 2002) ("Agreement may be inferred from circumstantial evidence, but only if it is sufficient to permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives.").  *Halberstam* explained that "[p]roof of a tacit, as opposed to explicit, understanding is sufficient to show agreement," and that "absent a confession, an agreement between conspirators must generally be inferred from circumstantial evidence revealing a common intent."  705 F.2d at 480.

A finding of conspiracy may be justified where the defendants "pursued the same object, although by different means, one performing one part and another part." *Id.* at 480 (quoting *Davidson v. Simmons*, 203 Neb. 804, 280 N.W.2d 645, 648–49 (1979)).  Relevant considerations include "the relationships between the actors and between the actions (e.g., the proximity in time and place of the acts, and the duration of the actors' joint activity)." *Id.*  These factors help determine whether the defendants' coordinated conduct reflects a shared unlawful objective.  The agreement required cannot solely be a business relationship or overlapping commercial interests. *Craigslist*, 942 F. Supp. 2d at 982 (holding that a buyer-seller relationship does not, without more, establish a conspiratorial agreement or intent to aid in wrongdoing); *Direct Sales Co. v. United States*, 319 U.S. 703, 709 (1943) (holding that "the inference of [conspiracy] cannot be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

drawn merely from knowledge that the buyer will use the goods illegally.").  A prolonged and actively pursued course of dealing, however, when coupled with the seller's knowledge of and shared stake in the buyer's unlawful venture, the standardization of transactions, the duration of the relationship and mutual trust, may support an inference of conspiratorial agreement.  *United States v. Menting*, 166 F.3d 923, 928 (7th Cir. 1999).  Without allegations showing that level of conscious participation, a civil conspiracy claim cannot proceed.

The Court previously concluded that Plaintiff Fleites failed to allege that Defendant Visa agreed to join the wrongful activity.  (*Fleites* Order at 36).  The Court recognized that "the agreement is the essential feature of conspiracy," (*id*. at 33) but "[t]he agreement required cannot solely be a business relationship or overlapping commercial interests." (*Id.* at 34) (citing *Craigslist Inc.*, 942 F. Supp. at 982; *Direct Sales Co. v. United States*, 319 U.S. 703, 709 (1943)).  Applying that standard, the Court held that Plaintiff Fleites had not adequately alleged an agreement because "[i]n the absence of interaction, coordination, or shared purpose, continued service—even in the face of awareness—is not enough to demonstrate a meeting of the minds and plead agreement." (*Id.* at 34) (citing *Halberstam*, 705 F.2d at 481; *Transgo, Inc*, 768 F.2d at 1020).  Unlike other cases, Plaintiffs had not alleged an active engagement, customization, implementation support or a joint strategy.

In response to the Court's previous ruling, Plaintiffs have set forth new, vague allegations in an attempt to plead around the Court's ruling.  A court at the pleading stage need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead*, 536 F.3d at 1055.  Thus, a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (alteration in original) (citation and internal quotation marks

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

omitted).  In the context of conspiracy specifically, "[a]llegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy" are insufficient.  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008).

Plaintiffs raise in the TAC five assertions regarding Defendant Visa's alleged agreement with MindGeek.  (*see* TAC ¶¶ 304-12).  First, Plaintiffs allege that "Visa intentionally permitted its network banks to onboard MindGeek and its various entities despite its illegal behavior and content."  (TAC ¶ 304).  This is merely a repackaging of what this Court has previously rejected as insufficient.   In the previous order, the Court found insufficient an allegation that "Visa continued to process payments while being aware . . . of MindGeek's CSAM problem."  (*Fleites* Order at 35).  The Court's previous rationale applies to this repackaged allegation.  This allegation reflects, at most, a failure to act, not affirmative participation.  *Twitter*, 598 U.S. at 507 (holding that a defendant's mere passive nonfeasance, even in the face of known wrongdoing by customers, is not enough to impose liability).  Unlike *Salesforce G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023) or *Doe #1 v. Red Roof Inns*, Inc., 21 F.4th 714 (11th Cir. 2021), the TAC alleges no active engagement, no customization, no implementation support and no joint strategy.  It asserts only that Defendant Visa continued a pre-existing business relationship in the face of controversy.  This is not enough.

Second, Plaintiffs claim that "Visa ignored its own internal standards and practices in response to reported violations by MindGeek," because these reports "would have caused Visa to sanction and eventually terminate any other merchant."  (TAC ¶ 305). The Court construes this as an allegation that Defendant Visa provided MindGeek access to its payment network despite alleged knowledge of wrongdoing, which this Court has already held is insufficient.  (*See Fleites* Order at 35) ("Visa also illustrated the danger of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

adopting Plaintiff's approach: if passive nonfeasance and general awareness are enough, then virtually any vendor with commercial ties to MindGeek could face liability— including utility providers."); *T.S.,* 2024 WL 3927382, at \*10 (noting that utility companies and gas stations do not participate in a venture with pimps who trafficked victim).

The third new allegation asserts that Defendant Visa "worked with MindGeek to develop payment structures to help them both continue to process illegal payments." (TAC ¶ 308). It is not evident what "payment structures" Plaintiffs believe Defendant Visa "develop[ed]" in coordination with MindGeek. Plaintiffs assert that Visa and the Acquirers "*encouraged and permitted* MindGeek" to process payments through "Third-Party Payment Processors," (*id.*) (emphasis added), but Plaintiffs do not actually allege Defendant Visa *developed* such processors for MindGeek's benefit. The courts have rejected the kind of conclusory allegations upon which Plaintiffs rely. In *Williams v. Foote*, the plaintiff alleged conspiracy on the basis that the defendant falsified information and falsely corroborated information used to charge the plaintiff with attempted murder. CV 08-2838-CJC (JTL), 2009 WL 1520029, at \*13 (C.D. Cal. May 28, 2009). The court dismissed the case because the plaintiff "fail[ed] to allege *specific facts* of an agreement or meeting of minds to violate plaintiff's constitutional rights." *Id.* at \*13 (emphasis added); *see also Hiramanek v. Loftus*, No. 5:13-cv-00228-RMW, 2015 WL 1887090, at \*2 (N.D. Cal. Apr. 24, 2015) (no sufficient allegations of conspiracy where the plaintiff's "allegation [was] not supported by any specific statements" evincing a conspiracy). The same rationale applies here.

The fourth allegation, however, avers "Visa and MindGeek also collaborated on minimizing the visibility of illegal conduct," including by "suggest[ing] changes to words and descriptions connected to illegal content" and "remov[ing] restrictions on payments

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

that had clear indicia of trafficking." (TAC ¶ 310). Plaintiff Fleites further alleges, "Visa and its member banks also removed restrictions on payments that had clear indicia of trafficking and which would have resulted in a suspension or blocks on other merchant accounts." (*Id*.). For example, Defendant Visa allegedly removed restrictions on "regular payments from large numbers of purportedly independent cam models being deposited into single accounts of obvious traffickers." (*Id*.). Plaintiff Fleites seeks to demonstrate the existence of a conspiracy by relying on this specific allegation that Defendant Visa singled out a particular merchant and provided business advice as to how that merchant might avoid regulatory scrutiny. Although it is true that an actors' conduct, in the context of conspiracy, could be "consistent with other equally plausible explanations," (*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596-97 (1986)), Defendant Visa's alleged conduct does indicate an agreement, between it and MindGeek, to ensure MindGeek "minimizes the visibility of illegal conduct" (*id*. ¶ 310) in furtherance of unlawful acts. Accordingly, the Court finds that this allegation sufficiently demonstrates conspiracy.

During oral argument, Defendants stated that the Court did not appropriately apply the standards under *Iqbal* and *Twombly* as it pertains to the fourth allegation. As this matter is before the Court at the pleading stage, the Court finds that Plaintiffs have sufficiently alleged the existence of an agreement and have provided, through the aforementioned allegations, a factual basis supporting those allegations. The Court, at this stage, is confined to the four corners of the Complaint and it finds that Plaintiffs have met their burden. The Court might have found Defendants' argument more persuasive if this action involved a civil fraud claim, where allegations are subject to heightened pleading requirements and must be stated with more particularity.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Finally, as to the fifth allegation, Plaintiffs assert that "Visa and MindGeek repeatedly coordinated their public comments." (TAC ¶ 311). Plaintiffs concede that their only basis for this assertion is that "Visa consistently insisted that it would not tolerate a merchant that had child pornography or other illegal content on their website." (*Id.*). This is not indicia of coordination, and this allegation does not demonstrate that Defendant Visa agreed to promote child pornography.

Likewise, Plaintiffs have sufficiently alleged Defendant's intent to aid in the wrongful activity. The Court previously did not find intent due to the SAC's allegation of "passive inaction, not purposeful participation." (Fleites Order at 39). Here, however, the Court does not find that Plaintiffs' allegation that Defendant *suggested* changes to words and descriptions connected to illegal content and *removed* restrictions on payments that had clear indicia of trafficking constitutes as passive inaction. Accepting Plaintiffs' allegations as true, as the Court must do at the pleading stage, Defendants had the intent to participate in the alleged wrongful conduct by assisting in the furtherance of MindGeek's activities. *See generally Kidron*, 40 Cal. App. 4th at 1582 (quoting *Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 785 (1979)). ("[I]ntent 'may be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances.'").

As set forth above, the fourth allegation in the TAC sufficiently meets the pleading requirements for this claim. The Court **DENIES** Defendant Visa's Motion on this basis.

### 3. Common Law Conspiracy

Defendant Visa moves to dismiss Plaintiffs' common law conspiracy claim. (Mot. at 39). A civil conspiracy cause of action under California law "must be activated by a commission of an actual tort." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994). A plaintiff must establish that the defendants "agreed to a common

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

plan or design to commit a tortious act," had "actual knowledge that a tort is planned and concur[red] in the tortious scheme with knowledge of its unlawful purpose," and "inten[ded] to aid in its commission." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995) (citation and internal quotation marks omitted). "Mere association does not make a conspiracy. There must be evidence of some participation or interest in the commission of the offense." *Id.* at 1582 (citation and internal quotation marks omitted).

The Court previously dismissed Plaintiffs' common law conspiracy claims against Defendant Visa principally on the ground that they had not adequately pled a predicate tort. (*See Fleites* Order at 39) ("Under a conspiracy theory of recovery, liability depends on the actual commission of a tort."). Plaintiffs have now plead entirely new predicate torts—18 U.S.C. §§ 2252, 2255 (Count IV); 18 U.S.C. §§ 2252a, 2255 (Count V); Public Disclosure of Private Facts (Count VI); Intrusion into Private Affairs (Count VII); Placing Plaintiff in False Light (Count VIII); and Violation of the UCL (Count X).[4] (TAC ¶ 441).

Under the TVPRA, it is unlawful for a defendant to conspire to benefit from participation in a *venture* engaged in sex trafficking. 18 U.S.C. §§ 1591(a)(2), 1594(a). Here, there is no "venture" liability for any of the predicate torts Plaintiffs allege as the basis for common law conspiracy with respect to each of the torts depend on MindGeek's particular treatment of the videos of Plaintiffs. Accordingly, although the Court has found that Plaintiffs have sufficiently established TVPRA conspiracy on behalf of Defendant Visa, the allegations do not plausibly establish that Defendant Visa had any such knowledge, agreement or intent with respect to the *particular torts* alleged against

---

[4] Each of these predicate torts were alleged against MindGeek in the prior complaints, but other than the UCL, none has ever been asserted as a basis for common law civil conspiracy.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

MindGeek under Counts IV, V, VI, VII and VIII.  Thus, the Court **GRANTS** Defendant Visa's Motion on this basis.

       *4.  UCL Claim*

       Defendant Visa also moves to dismiss Plaintiffs' UCL claim.  (Mot. at 21). The UCL forbids "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. Prof. Code § 17200.  A practice is considered "unlawful" if it violates a law other than the UCL.  *Farmers Ins. Exch. v. Super. Ct.*, 2 Cal. 4th 377, 383 (1992).  The UCL "'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under [the UCL]." *Id*.; *see also Clerkin v. MyLife.com, In*c., No. C 11-00527 CW, 2011 WL 3607496, at *6 (N.D. Cal. Aug. 16, 2011) ("Violation of almost any federal, state or local law may serve as the basis for a UCL claim.").  "A defendant's liability [under the UCL] must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate section 17200." *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (citation omitted).  "Based on this sweeping definition, any viable claim against the Defendants can become a predicate for an independent violation of the UCL." (*Fleites* Order at 44).

       The Court previously dismissed Plaintiffs' claim against Defendant Visa under the UCL because Plaintiffs premised their claim solely on the underlying TVPRA conspiracy.  (*Id.* at 46).  Here, the Court finds that Plaintiffs does provide sufficient allegations to support the underlying TVPRA conspiracy claim.  As Plaintiff has provided a new theory that would serve as a predicate violation that would satisfy the unlawful prong under the UCL, the Court **DENIES** Defendant Visa's Motion on this basis.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**III.    CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendant Visa's Motion with respect to its arguments of standing, conspiracy to violate the TVPRA pursuant to 18 U.S.C. §§ 1594(c), 1595 (Count III) and violation of the UCL under the Cal. Bus. & Prof. Code § 17200 (Count X).  The Court **GRANTS** with prejudice the Motion with respect to the violation of civil conspiracy (Count XII).  The Court dismisses these three claims with prejudice as this is Plaintiff Fleites' third iteration of her complaint, and it appears that the relevant defects "could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (affirming dismissal of appeal where amendment could not cure defect in pleadings).

**IT IS SO ORDERED.**