UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENA FLEITES et al, | Case No. 2:21-cv-04920-WLH-ADS |
| Plaintiffs, | **ORDER GRANTING REDWOOD DEFENDANTS' MOTION TO DISMISS [640]** |
| v. | |
| MINDGEEK S.A.R.L. et al, | |
| Defendants. | |

The Court is in receipt of Redwood Defendants' Motion to Dismiss (the "Motion"). (Redwood Defendants' Motion to Dismiss," Dkt. No 640). The Court heard oral argument on June 18, 2026. The tentative order is adopted as the final order. For the reasons explained herein, the Court **GRANTS** the Motion.

## I.    BACKGROUND

Following this Court's dismissal of all claims against Redwood Defendants ("Amended Order re Colbeck and Redwood Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint," Dkt. No. XX) ("Redwood Order"), Plaintiffs

in *Fleites v. MindGeek S.a.r.l.*, No. 21-CV-04920-WLH-ADS and the 14 related cases (collectively, "Plaintiffs") each filed amended complaints.[1]

The core of the allegations in each complaint remains the same, namely, that Plaintiffs were underage victims of sexual exploitation, including through the creation of explicit videos that were uploaded to the free adult video website, Pornhub and other websites allegedly owned or operated by Defendant MG Freesites, Ltd. d/b/a Pornhub ("Pornhub"), MindGeek USA Inc., MG Premium Ltd., MG Global Entertainment, Inc., and 9219-1568 Quebec, Inc. (collectively, "MindGeek"). Plaintiffs are victims of sex trafficking whose videos were ultimately uploaded to Pornhub, one of MindGeek's websites with user-generated content.  Plaintiff Serena Fleites ("Plaintiff Fleites"), for example, alleges that she was coerced into making an explicit video as a teenager, which was made widely available on Pornhub and not removed until after extensive outreach to MindGeek, and only then with limited success.  (TAC ¶¶ 326-31).  Plaintiff Fleites alleges that years later, while still a minor, she was coerced into making another explicit video, which was again ultimately uploaded to Pornhub.  (*Id.* ¶¶ 337-39).  These experiences allegedly caused and continue to cause Plaintiff Fleites significant psychological harm.  (*Id.* ¶¶ 335-36,

---

[1] Although "Plaintiff" in this Order refers to Plaintiff Fleites, this Motion covers claims brought by Plaintiffs against the Redwood Defendants in the above-captioned proceeding as well as in the 14 related cases: *K.A. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04786-WLH-ADS (C.D. Cal. Dec. 15, 2025); *L.T. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04791-WLH-ADS (C.D. Cal. Dec. 16, 2025); *N.L. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04788-WLH-ADS (C.D. Cal. Dec. 16, 2025); *N.Y. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04801-WLH-ADS (C.D. Cal. Dec. 15. 2025); *T.C. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04795-WLH-ADS (C.D. Cal. Dec. 16. 2025); *X.N. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04800-WLH-ADS (C.D. Cal. Dec. 15, 2025); *J.C. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04971-WLH-ADS (C.D. Cal. Dec. 16, 2025); *C.S. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04992-WLH-ADS (C.D. Cal. Dec. 16, 2025); *S.O. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04998-WLH-ADS (C.D. Cal. Dec. 16, 2025); *W.L. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-04977-WLH-ADS (C.D. Cal. Dec. 16, 2025); *L.S. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-05026-WLH-ADS (C.D. Cal. Dec. 16, 2025); *A.K. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-05190-WLH-ADS (C.D. Cal. Dec. 15, 2025); *W.P. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-05185-WLH-ADS (C.D. Cal. Dec. 16, 2025); and *J.L. v. MindGeek, S.à.r.l.*, Case No. 2:24-cv-07046-WLH-ADS (C.D. Cal. Dec. 16, 2025). Except where indicated, the allegations across all of these complaints are substantively identical.

340).  Broadly, Plaintiffs allege that MindGeek failed to adequately monitor its websites for underage and non-consensual content, in part because such content is profitable for MindGeek and drives traffic.  (*See generally* TAC; *See generally K.A. Am. Compl.*).

Redwood Defendants and CB Defendants are hedge funds specializing in financing distressed and "special situations" businesses that have no other sources of capital.  (TAC ¶ 221).  In 2011, CB Defendants were the lead lender that advised and assembled a syndicate of similar hedge funds to finance MindGeek's growth and operations ("Colbeck Syndicate").  (*Id*.).  Redwood Defendants were one of the larger participants in the syndicate.  (*Id*.).  In 2018, Redwood Defendants pushed out CB Defendants and allegedly assumed full control of the business ("Redwood Syndicate").  (*Id*.).

Plaintiffs allege that Redwood Defendants knew from the extensive due diligence they conducted prior to financing MindGeek that child pornography and nonconsensual content were rampant on MindGeek's platform.  (*Id*. ¶¶ 259, 264, 269, 275, 279).  Moreover, because of the alleged financial control both the Colbeck Syndicate and the Redwood Syndicate (collectively, the "Syndicates") had over MindGeek, Redwood Defendants had further transparency into MindGeek's operations. (*Id*. ¶ 268).  They regularly received detailed reports "concerning every aspect of the MindGeek's business, including subscriptions, website traffic, cash performance; Google analytics data for the company's tubesites, financial performance [and] operational performance."  (*Id*. ¶ 269).  Redwood Defendants had "increasingly intimate familiarity with its business."  (*Id*. ¶¶ 271).  Nevertheless, Redwood Defendants allegedly "shared the same conspiratorial objective to financially benefit from the solicitation, dissemination, commercialization, monetization, maintenance, and advertisement of CSAM and other nonconsensual and illegal content."  (*Id*. ¶ 366).  Furthermore, Plaintiff Fleites contends, "Redwood . . . . knowingly benefitted financially from their participation in the MindGeek sex

trafficking venture by exploiting the illegal nature of the business to siphon off hundreds of millions of dollars in windfall profits from exorbitant interest rates and other onerous economic terms on a fully secured loan." (*Id*. ¶ 360).

Plaintiffs also state that Redwood Defendants entered into a separate consulting agreement through which it would exercise its ownership control. (*Id*. ¶ 361). "Redwood . . . knew or recklessly disregarded their participation in a sex trafficking venture that trafficked Plaintiff, among countless other victims, and engaged in acts that constitute violations of section of 18 U.S.C. § 1591(a)(2) through, among other things: (a) their direct and continuous control over every aspect of the business by virtue of the financing they each provided and pursuant to their separate consulting agreements to advise and assist on the Company's expansion, and growth." (*Id*.).

Plaintiffs brought the following causes of action: (i) Violations of Federal Sex Trafficking Laws (18 U.S.C. §§ 1591, 1594, 1595); (ii) Receipt, Transport, and Distribution of Child Pornography (18 U.S.C. §§ 2252, 2252A, 2255); (iii) Public Disclosure of Private Facts; (iv) Intrusion into Private Affairs; (v) Placing Plaintiffs in "False Light"; (vi) Negligence; (vii) Unfair Competition (California Business & Professions Code § 17200); (viii) California Products Liability Design Defect; (ix) Civil Conspiracy. (*See generally* TAC).

On May 23, 2024, Plaintiff Fleites filed her Second Amended Complaint. (SAC, Dkt. No. 385). On August 30, 2024, Redwood Defendants filed a Motion to Dismiss Plaintiff's SAC. (CB Defendants' Mot., Dkt. No. 447). The Court, on September 17, 2025, granted Redwood Defendants' Motion in its entirety. Plaintiff Fleites filed a Third Amended Complaint ("TAC"), which included Redwood Defendants on December 15, 2025. (TAC, Dkt. No. 622). Redwood Defendants filed the instant Motion. (*See generally* Mot.). Plaintiff Fleites filed her Opposition (Opp'n., Dkt. No. 654), to which Redwood Defendants filed their Reply (Reply, Dkt. No. 675).

## II.   DISCUSSION

### A. <u>Legal Standard</u>

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations.  *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002).  The court, however, is not required to accept as true legal conclusions couched as factual allegations.  *See Iqbal*, 556 U.S. at 678.  A claim is considered to have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

Under Rule 15(a), the court should "freely give leave" for a party to amend its pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Granting leave to amend is left to the sound discretion of the court, and the court "must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities."  *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).  Accordingly, the policy favoring amendments to pleadings is "to be applied

5

with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)).

## B. <u>Analysis</u>

### *1. Violation of TVPRA pursuant to 18 U.S.C. §§ 1591, 1595*

Redwood Defendants move to dismiss Plaintiffs' TVPRA claims because they aver that no Redwood Defendant participated in the trafficking venture and because Plaintiffs have failed to properly plead the elements of conspiracy to support the TVPRA conspiracy claims. (Mot. at 8).

### a. Participation in Trafficking Venture

Plaintiffs bring a beneficiary liability claim under Section 1595(a)(2) of the TVPRA against Redwood Defendants. Section 1595(a) permits civil victims to bring a claim under the beneficiary liability theory against anyone who "knowingly benefits . . . from participation in a venture which that person knew or should have known" was engaged in sex trafficking. 18 U.S.C. § 1595(a). The Court previously dismissed Plaintiffs' beneficiary-liability claim against the Redwood Defendants for failing to adequately allege that the Redwood Defendants either (1) participated in a venture with a sex trafficker or (2) had sufficient knowledge that the purported venture was engaged in sex trafficking. (*See generally* Redwood Order). Plaintiff Fleites's TAC does not remedy these defects, each of which is independently fatal and requires dismissal.

An element of a Section 1595 claim is whether Redwood Defendants participated in a sex trafficking venture. Under the TVPRA, a "venture" is "any group of two or more individuals associated in fact." 18 U.S.C. § 1591(e)(6). While Plaintiffs need not establish some "overt act" that furthers the sex trafficking aspect of the venture under a civil beneficiary liability theory, *Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 755 (C.D. Cal. 2024), "in the absence of direct association with traffickers, Plaintiffs must 'allege at least a showing of a continuous business

6

relationship between the trafficker and [Redwood Defendants] such that it would appear that the trafficker and [Redwood Defendants] have established a pattern of conduct or could be said to have a tacit agreement.'" *Doe v. MindGeek USA Inc.*, 558 F. Supp. 3d 828, 837 (C.D. Cal. 2021) (quoting *M.A. v. Wyndham Hotels Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019)).  The Court does not find that here.

Here, the Plaintiffs' traffickers are the individuals that uploaded their videos to Pornhub.  Plaintiffs have failed to allege that the Redwood Defendants had any relationship, let alone a continuous business one, with Plaintiffs' traffickers. *MindGeek*, 558 F. Supp. 3d at 837 ("Plaintiff must 'allege at least a showing of a continuous business relationship between the *trafficker* and [Defendants]") (emphasis added).  Unlike MindGeek Defendants, which had direct interaction with the videos of Plaintiffs that their traffickers uploaded, there is no such connection here with respect to Redwood Defendants and Plaintiffs' traffickers.

To support her claim that Redwood Defendants participated in the trafficking venture, Plaintiff Fleites contends, "Defendants Redwood . . . participated in the MindGeek sex trafficking venture by directing MindGeek's business strategies and operations, exerting direct and complete control over MindGeek's policies, procedures, governance, and corporate structure."  (TAC ¶ 357).  The Court previously held that Plaintiffs cannot rely on inconsistent allegations to support their claims that the Redwood Defendants owned, directed or controlled MindGeek because that "would contradict Plaintiff's own pleadings elsewhere in her SAC that impute that kind of control to the Individual Defendants."  (Redwood Order at 23-24); (*see* SAC ¶ 149) ("Individual Defendants were the alter ego of MindGeek, personally controlled, set, and implemented policies and practices in their capacity as the three owners, and were fully aware of and directed its unrestricted use of CSAM and other nonconsensual content.").  The contradictions between the SAC and TAC are relevant as the courts have held that a plaintiff may not "contradict[] the allegations in [a prior] complaint."  *See United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 995

7

(9th Cir. 2011) (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990) ("the amended complaint may only allege other facts consistent with the challenged pleading."); *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt.*, 744 F.3d 595, 600 (9th Cir. 2014) ("A party cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding.").  Courts also consider plaintiffs' previous allegations "in determining the *plausibility* of their allegations" in an amended pleading.  *Schneidereit v. Tr. of the Scott & Brian, Inc.*, No. 11-cv-6916, 2012 WL 12884908, at *1 (C.D. Cal. Apr. 27, 2012) (emphasis added).

Because the Court finds that Plaintiffs have again failed to plausibly allege the "participation in a venture" element under Section 1595(a), the Court does not address the other elements.  The Court **GRANTS** Redwood Defendants' Motion to dismiss Plaintiff's beneficiary liability TVPRA claim pursuant to Section 1595(a).

### b.  Conspiracy

Redwood Defendants also move to dismiss because Plaintiffs failed to allege the three elements of a TVPRA conspiracy claim.  (Mot. at 17).  The civil remedy provision of the TVPRA permits suit against any person who "conspires to benefit" from participation in a sex trafficking venture.  18 U.S.C. § 1595(a).  The statute does not define "conspires," but where Congress uses a legal term with a well-established common law meaning, courts presume that Congress intends to incorporate that meaning.  *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 484-85 (2023) (quoting *Sekhar v. United States*, 570 U.S. 729, 733 (2013)).[2]

At common law, civil conspiracy liability requires:  (1) an agreement to do an unlawful act or a lawful act in an unlawful manner; (2) an overt act in furtherance of the agreement by someone participating in it; and (3) injury caused by the act.

---

[2] Where a statute imposes both civil and criminal liability, courts interpret the relevant terms consistently across both contexts.  *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("[W]e must interpret the statute consistently, whether [we] encounter its application in a criminal or noncriminal context.").

*Halberstam v. Welch*, 705 F.2d 472, 487 (D.C. Cir. 1983)[3]; *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986); U.S. *v. Matta-Ballesteros*, 71 F.3d 754, 765 (9th Cir. 1995). Courts have further broken down the agreement element into three sub-elements: (i) knowledge of the wrongful activity, (ii) agreement to join in the wrongful activity, and (iii) intent to aid in the wrongful activity. *Ajzenman v. Office of Comm'r of Baseball*, 487 F. Supp. 3d 861, 867 (C.D. Cal. 2020) (citing *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 981 (N.D. Cal. 2013)). This case turns primarily on the sufficiency of Plaintiffs' allegations as to these three elements. The Court analyzes each in turn.

As to the first sub-element of knowledge, the knowledge required to establish liability for civil conspiracy under the TVPRA is higher than the constructive knowledge standard applicable to beneficiary liability. While § 1595 permits a beneficiary claim against a defendant who "knew or should have known" that a venture was engaged in trafficking, conspiracy requires actual knowledge of the venture's unlawful purpose. As the D.C. Circuit explained in *Halberstam*, "a person must know the object of the conspiracy and intend to participate in it." 705 F.2d at 481. This framework guided the court's analysis in *Doe v. Deutsche Bank Aktiengesellschaft,* 671 F. Supp. 3d 387 (S.D.N.Y. 2023). In applying conspiracy principles to a TVPRA claim, the court emphasized that conspiracy requires that each defendant must have "entered into a joint enterprise with consciousness of its general nature and extent." *Id.* at 411 (quoting *United States v. Alessi*, 638 F.2d 466, 473 (2d Cir. 1980); *United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1541 (9th Cir. 1989) (holding that "each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.").

---

[3] *Twitter* refers to *Halberstam* as "a leading case on civil aiding-and-abetting and conspiracy liability." *Twitter*, 598 U.S. at 444.

Plaintiff Fleites alleges that the Redwood Defendants had knowledge of MindGeek's intent to benefit from child sexual abuse material ("CSAM") from due diligence, purported intimate involvement with the company and its operations, periodic reports from the company, monitoring websites and news, and public reports. (Redwood Order at 9-10) (citing SAC ¶¶ 246, 261, 265, 267-68, 271-73) (citations omitted).  Plaintiff Fleites' TAC recites virtually similar allegations.  (*See, e.g.*, TAC ¶¶ 259, 264, 269, 275, 279).  Further, Plaintiff Fleites still did not adequately plead that any reports of illegality and communications received by the Redwood Defendants from MindGeek's management demonstrated that Redwood Defendants intentionally profited from CSAM (*Id.* ¶ 275).  In fact, Plaintiffs do not identify a single specific report or communication that might have conferred knowledge of the alleged conspiracy on Redwood Defendants.  The Court already found such "generalized assertions that sophisticated lenders 'should have known'" of MindGeek's profiting from CSAM based on such generalized reporting to be insufficient to show "actual knowledge" for purposes of a TVPRA conspiracy. (Redwood Order at 36).  This showing falls short of the actual awareness of the unlawful objective required for the knowledge prong of conspiracy liability. *Halberstam*, 705 F.2d at 481.

In any event, the loan agreements' terms provided for all lenders, not only the Redwood Defendants, to receive reported information on MindGeek, including regarding potential CSAM on MindGeek websites.  (*See, e.g.*, "2011 Loan Agreement," Dkt. No. 444-3 at 81-85) ("2011 Loan Agreement").  As explained above, the due-diligence materials before the Court demonstrate the opposite: MindGeek had in place "best-in-class" compliance procedures and reviewed all videos for unlawful conduct.  (Redwood Order at 36).  Plaintiff Fleites' TAC still "does not allege facts showing that . . . Redwood knew MindGeek's business was rampant with CSAM content" or "indicating that Defendants were presented with reports or information during their lending relationship demonstrating that MindGeek's venture

10

itself fostered a sex trafficking enterprise." (Redwood Order at 36). Instead, Plaintiff Fleites' allegations *still* amount to generalized assertions that sophisticated lenders "should have known" of red flags. This showing falls short of the actual awareness of the unlawful objective required for the knowledge prong of conspiracy liability. *Halberstam*, 705 F.2d at 481.

As to the second sub-element, courts have emphasized that the agreement is the essential feature of conspiracy. *Deutsche Bank*, 671 F. Supp. 3d at 412 (quoting *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1191 (2d Cir. 1989)) ("The gist of conspiracy is, of course, agreement."); *Halberstam*, 705 F.2d at 477 ("The element of agreement is a key distinguishing factor for a civil conspiracy action."). As the Ninth Circuit has explained, agreement in this context means that the parties reached a "meeting of the minds in an unlawful arrangement." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1020 (9th Cir. 1985). Because direct evidence of an explicit agreement is rare, conspiracy may be proven through circumstantial evidence. *See generally Green v. Benden*, 281 F.3d 661, 665-66 (7th Cir. 2002) ("Agreement may be inferred from circumstantial evidence, but only if it is sufficient to permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives."). *Halberstam* explained that "[p]roof of a tacit, as opposed to explicit, understanding is sufficient to show agreement," and that "absent a confession, an agreement between conspirators must generally be inferred from circumstantial evidence revealing a common intent." 705 F.2d at 480.

A finding of conspiracy may be justified where the defendants "pursued the same object, although by different means, one performing one part and another part." *Id.* at 480 (quoting *Davidson v. Simmons*, 203 Neb. 804, 280 N.W.2d 645, 648–49 (1979)). Relevant considerations include "the relationships between the actors and between the actions (e.g., the proximity in time and place of the acts, and the duration of the actors' joint activity)." *Id.* These factors help determine whether the

11

defendants' coordinated conduct reflects a shared unlawful objective. The agreement required cannot solely be a business relationship or overlapping commercial interests. *Craigslist*, 942 F. Supp. 2d at 982 (holding that a buyer-seller relationship does not, without more, establish a conspiratorial agreement or intent to aid in wrongdoing); *Direct Sales Co. v. United States*, 319 U.S. 703, 709 (1943) (holding that "the inference of [conspiracy] cannot be drawn merely from knowledge that the buyer will use the goods illegally."). A prolonged and actively pursued course of dealing, however, when coupled with the seller's knowledge of and shared stake in the buyer's unlawful venture, the standardization of transactions, the duration of the relationship and mutual trust, may support an inference of conspiratorial agreement. *United States v. Menting*, 166 F.3d 923, 928 (7th Cir. 1999). Without allegations showing that level of conscious participation, a civil conspiracy claim cannot proceed.

Even if the Complaint TAC had adequately alleged knowledge (it does not), Plaintiff Fleites did not establish that the Redwood Defendants agreed to perpetuate CSAM on MindGeek's websites to profit from it. The Court previously held, "Plaintiff therefore must allege not merely that . . . Redwood loaned money to MindGeek, but that they agreed to join in MindGeek's trafficking venture." (Redwood Order at 38). The agreements identified in the TAC are the loan agreements and a consulting agreement (*see generally* TAC), both of which were alleged in the prior complaints which this Court dismissed. The Court previously found that the loan agreements' terms "do not plausibly establish an agreement to participate in sex trafficking." (Redwood Order at 38). At most, the loan agreements contain standard provisions requiring notice and pre-approval of the lenders before taking certain actions. (*See generally* 2011 Loan Agreement). The loan agreements' representations and covenants, along with the due-diligence materials, "are fundamentally inconsistent with an alleged conspiratorial 'meeting of the minds' to traffic in CSAM." (Redwood Order at 38); *see Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 864-65 (S.D. Ohio 2020) (finding "allegations that a

12

lending company engaged in due diligence with regard to its lending activities cannot, and should not, be enough to plausibly establish [joinder in a conspiracy] even at the pleading stage."). As the courts have acknowledged, agreement requires more than similar commercial interests or the awareness of risk; it requires facts supporting a shared unlawful objective. *Halberstam*, 705 F.2d at 477. Plaintiff Fleites' theory would require the Court to conclude that dozens of sophisticated financial institutions conspired to encourage CSAM despite having incentive to avoid legal risk that could imperil their loans.

Plaintiff Fleites' allegations about a purported "consulting agreement" do not change this result. (TAC ¶ 357, 361). Plaintiff Fleites previously urged the Court to consider the effect of this alleged consulting agreement in the context of the SAC. (SAC ¶¶ 274, 494). Plaintiff Fleites' allegations seek to transform the consulting agreement into a means by which the Redwood Defendants exerted control as to MindGeek, which contradicts the previous iterations of Plaintiff Fleites' Complaints that imputed this control onto other entities. For example, Plaintiff Fleites asserts that "Redwood . . . knew or recklessly disregarded their participation in a sex trafficking venture that trafficked Plaintiff, through, among other things their direct and continuous control over every aspect of the business by virtue of the financing they each provided and pursuant to their separate consulting agreements." (TAC ¶ 361). Not only is this allegation of control contradicted by Plaintiff Fleites' previous complaints, she does not plead specific facts regarding how the purported agreement conferred any ownership or control.

Plaintiff Fleites also now contends that Redwood Defendants had full knowledge of CB Defendants' "investment thesis" related to a business model that developed a monopolistic online pornography conglomerate through unrestricted content, including trafficked content and acquisition of smaller pornography companies which would further increase traffic and profitability. (TAC ¶¶ 259). Again, Plaintiff Fleites has not pled specific facts to support this conclusory

13

allegation.  Notably, Redwood Defendants made a fixed-interest loan and not an equity investment, which "weighs against any inference of a shared unlawful objective, because the lenders received interest on their loans rather than an equity stake in any MindGeek entity." (Redwood Order at 38-39).  Plaintiff Fleites' TAC alleges an ordinary creditor-debtor relationship.  Commercial dealings do not establish conspiracy.  *Craigslist*, 942 F. Supp. 2d at 982.  Without factual allegations of coordination or assent to an unlawful objective, the TAC does not plausibly plead agreement.[4]

As set forth above, the new allegations in the TAC fail to meet the pleading requirements for this claim.  The Court **GRANTS** Redwood Defendants' Motion on these grounds.

### 2. Civil Conspiracy under California Law

Redwood Defendants move to dismiss Plaintiff's common law conspiracy claim.  (Mot. at 27).  A civil conspiracy cause of action under California law "must be activated by a commission of an actual tort." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994).  A plaintiff must establish that the defendants "agreed to a common plan or design to commit a tortious act," had "actual knowledge that a tort is planned and concur[red] in the tortious scheme with knowledge of its unlawful purpose," and "inten[ded] to aid in its commission." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995) (citation and internal quotation marks omitted).  "Mere association does not make a conspiracy.  There must be evidence of some participation or interest in the commission of the offense." *Id.* at 1582 (citation and internal quotation marks omitted).

---

[4] As the Court does not find sufficient grounds for knowledge and agreement on behalf of Redwood Defendants, the Court will not analyze the third sub-element of intent.  Nevertheless, the Court incorporates by reference the Court's previous analysis of intent.  (*See* Redwood Order at 41) ("Colbeck and Redwood, which were passive lenders among dozens in large, syndicated transactions, with no role in operations and no profit incentive tied to unlawful content, cannot be said to have shared MindGeek's unlawful purpose.  Taken together, these allegations describe a commercial lending relationship, not a conspiratorial alignment.").

As the Court previously found, in pleading these elements Plaintiffs must allege that the Redwood Defendants had "actual knowledge that a tort is planned and concur in the scheme with knowledge of its unlawful purpose." (Redwood Order at 43); *see Michael R. v. Jeffrey B.*, 158 Cal. App. 3d 1059, 1069 (1984) ("Mere knowledge, acquiescence or approval of an act, without cooperation or agreement to cooperate, is insufficient to establish liability."). Plaintiff Fleites has now alleged new torts: (1) violations of 18 U.S.C. §§ 2252, 2255 (Count IV); (2) violations of 18 U.S.C. §§ 2252a, 2255 (Count V); (3) Public Disclosure of Private Facts (Count VI); (4) Intrusion Into Private Affairs (Count VII), (5) Placing Plaintiff in False Light (Count VIII); and (6) violation of the UCL (Count X). (*See generally* TAC). Even in light of these new predicate torts, however, the Court still finds, as established above in the context of the TVPRA, that there are no allegations that could plausibly establish that Redwood Defendants (1) had actual knowledge of any unlawful scheme, (2) agreed to participate in the unlawful scheme, and (3) intended to further the unlawful scheme.

Under the TVPRA, it is unlawful for a defendant to conspire to benefit from participation in a *venture* engaged in sex trafficking. 18 U.S.C. §§ 1591(a)(2), 1594(a). Here, there is no "venture" liability for any of the predicate torts Plaintiff alleges as the basis for common law conspiracy as each of the torts depend on MindGeek's particular treatment of the videos of Plaintiffs. The allegations also do not plausibly establish that Redwood Defendants had any such knowledge, agreement or intent with respect to the *particular torts* alleged against MindGeek under Counts IV, V, VI, VII, VIII and X. Thus, the Court **GRANTS** Redwood Defendants' Motion on these grounds.

### 3. UCL Claim

Redwood Defendants also move to dismiss Plaintiff's UCL Claim. (Mot. at 29). Plaintiff Fleites alleges that Redwood Defendants violated the UCL. (TAC ¶ 423). The UCL prohibits unlawful, unfair, or fraudulent business acts or practices.

15

Cal. Bus. & Prof. Code § 17200. An "unlawful business activity" includes anything that can properly be called a business practice and that at the same time is forbidden by law. *Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4th 1158, 1169 (2002). "Under the UCL's unlawful prong, violations of other laws are borrowed and made independently actionable under the UCL." *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1177 (E.D. Cal. 2013) (internal quotations omitted); *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999). As the Court previously acknowledged (Redwood Order at 49), Plaintiff Fleites' allegations under the UCL primarily focus on conduct attributable to MindGeek, not Redwood Defendants. (*See* TAC ¶ 426) ("As a result of Defendants' use of Plaintiff's videos, images, and likeness without Plaintiff's consent, Plaintiff has lost money to which she is rightfully entitled."). Accordingly, the only applicable prong under the UCL that the Court can glean is relevant to Redwood Defendants is the unlawful prong. Given, however, that the Court finds that Plaintiffs have failed to allege a predicate viable claim against Redwood Defendants, the Court finds that Plaintiff's UCL claim as to Redwood Defendants must also fail. Thus, the Court **GRANTS** Redwood Defendants' Motion with respect to Plaintiff's UCL claim.

*///*

*///*

## III.   CONCLUSION

For the foregoing reasons, the Motion is **GRANTED** with prejudice.  The Court grants the Motion with prejudice as this is Plaintiff Fleites' third iteration of her complaint, and it appears that the relevant defects, which this Court specifically identified in the Redwood Order but are not cured by the TAC, "could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (affirming dismissal of appeal where amendment could not cure defect in pleadings).

**IT IS SO ORDERED.**

Dated: July 9, 2026

_____
HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE

17