David G. Hille (*pro hac vice*)
dhille@whitecase.com
Kevin C. Adam (*pro hac vice*)
kevin.adam@whitecase.com
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Telephone: (212) 819-8357
Facsimile: (212) 354-8113

Russell J. Gould (SBN 313352)
russell.gould@whitecase.com
WHITE & CASE LLP
555 S. Flower Street, Suite 2700
Los Angeles, CA 90071-2433
Telephone: (213) 620-7700
Facsimile: (213) 452-2329

Attorneys for the CB Defendants

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| SERENA FLEITES,<br><br>Plaintiff,<br><br>v.<br><br>MINDGEEK S.A.R.L., et al.,<br><br>Defendants. | Case No. 2:21-cv-4920-WLH-ADS<br><br>Hon. Wesley L. Hsu<br><br>**DEFENDANTS COLBECK CAPITAL MANAGEMENT, LLC; CB MEDIA VENTURES DD, LLC; CB AGENCY SERVICES, LLC; AND CB PARTICIPATIONS SPV, LLC'S OPPOSITION TO PLAINTIFFS' OMNIBUS RULE 54(B) MOTION FOR ENTRY OF FINAL JUDGMENT**<br><br>Hearing: September 18, 2026<br>Time: 1:30 p.m.<br>Courtroom: 9B |

# TABLE OF CONTENTS

**Page(s)**


I. PRELIMINARY STATEMENT ..... 1

II. BACKGROUND ..... 2

A. Plaintiffs Assert Claims Based on the Same Underlying Alleged Facts, Trafficking Venture, and Conspiracy; Some Claims and Some Defendants Are Dismissed, While Others Remain ..... 2

B. Plaintiffs Move Under Rule 54(b) to Certify for Appeal Only the Orders Dismissing Claims Against the CB Defendants and the Redwood Defendants ..... 5

III. LEGAL STANDARD ..... 5

IV. THE COURT SHOULD DENY THE MOTION BECAUSE PLAINTIFFS FAIL TO SHOW THAT THERE IS NO JUST REASON FOR DELAY ..... 6

A. Judicial Administrative Interests Do Not Favor Certification ..... 6

1. The Dismissed Claims Against the CB Defendants Are Not Separate, Distinct, and Independent of Plaintiffs' Other Claims Under Rule 54(b) ..... 6

2. Certifying the Order Would Result in the Ninth Circuit Having to Decide the Same Issues More than Once if There Were Subsequent Appeals ..... 11

3. Future Developments in This Case May Also Render an Appeal of the Order Moot ..... 14

B. The Balance of Equities Does Not Favor Certification ..... 15

V. CONCLUSION ..... 18

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abdelhady v. George Washington Univ.*,
No. 1:22-cv-01334 (TNM), 2025 WL 605003 (D.D.C. Feb. 25, 2025), *aff'd*, 2026 WL 2089753 (D.C. Cir. July 21, 2026) ........ 13

*Abdo v. Fitzsimmons*,
No. 17-cv-00851-TSH, 2021 WL 3493169 (N.D. Cal. May 17, 2021) ........ 10, 13, 15

*Admiral Ins. v. Kabul, Inc.*,
No. 2:22-cv-00177-CDS-NJK, 2026 WL 381686 (D. Nev. Jan. 8, 2026) ........ 9

*Ahmadi v. Chertoff,*
No. C 07-03455 WHA, 2008 WL 1886001 (N.D. Cal. Apr. 25, 2008) ........ 12, 15, 16

*Cadillac Fairview/California, Inc. v. United States*,
41 F.3d 562 (9th Cir. 1994) ........ 15

*CoStar Grp., Inc. v. Comm. Real Est. Exch., Inc.*,
150 F.4th 1056 (9th Cir. 2025) ........ 9, 17

*Curtiss-Wright Corp. v. Gen. Elec.*,
446 U.S. 1 (1980) ........ *passim*

*Diode Dynamics L.L.C. v. 5DLight Inc.*,
No. 5:23-cv-02238-WLH-JPR, 2026 WL 638862 (C.D. Cal. Feb. 3, 2026) (Hsu, J.) ........ 5, 6, 11, 14

*Favreau v. City of Escondido*,
No. 10-CV-2348 W(WVG), 2012 WL 2092737 (S.D. Cal. June 11, 2012) ........ 10

*First State Ins. v. Hill Bros. Chem.*,
No. SACV 10-1032 AG (RNBx), 2012 WL 13015028 (C.D. Cal. Feb. 13, 2012) ........ 16

*Frank Briscoe v. Morrison-Knudsen*,
776 F.2d 1414 (9th Cir. 1985) .......... 5

*Gibson Guitar v. Viacom Int'l Inc.*,
No. 12-cv-10870 DDP (AJWx), 2013 WL 12144094
(C.D. Cal. Aug. 6, 2013) .......... 10, 12, 15, 16

*Glob. Acquisitions Network v. Bank of Am.*
No. 12-cv-08758 DDP CWX, 2013 WL 5220489
(C.D. Cal. Sept. 13, 2013) .......... 8, 12

*Gonzalez v. US Human Rts. Network*,
No. 20-cv-00757-PHX-DWL, 2021 WL 1312553
(D. Ariz. Apr. 8, 2021) .......... 15, 16

*Hillbroom v. Israel*,
No. 1:10-cv-00031, 2012 WL 2550480 (D.N. Mar. I. Apr. 5, 2012) .......... 16

*Jewel v. National Security Agency*,
810 F.3d 622 (9th Cir. 2015) .......... 8, 9

*O.L. v. City of El Monte*,
No. 2:20-cv-00797-RGK (JDE), 2020 WL 13588050
(C.D. Cal. Oct. 1, 2020) .......... 12

*Pakootas v. Teck Cominco Metals, Ltd.*,
905 F.3d 565 (9th Cir. 2018) .......... 11

*Ricardez v. Cnty. of Ventura*,
No. CV 20-79-JFW(ASx), 2020 WL 7862129
(C.D. Cal. Aug. 6, 2020) .......... 12, 14

*Skidmore Energy, Inc. v. Mediholding S.A.*,
No. CV 05-4742 FMC (CWx), 2006 WL 8439241
(C.D. Cal. May 3, 2006) .......... 8

*Texaco, Inc. v. Ponsoldt*,
939 F.2d 794 (9th Cir. 1991) .......... 10, 11, 17, 18

*Uthe Tech. v. Aetrium, Inc.*,
808 F.3d 755 (9th Cir. 2015) .......... 16

*Windeler v. Cambria Cmty. Water Dist.*,
No. CV 17-8536 DSF (JEMx), 2018 WL 7507427
(C.D. Cal. May 15, 2018) .......... 5

*Wood v. GCC Bend, LLC*,
422 F.3d 873 (9th Cir. 2005) ........................................................ 5, 7, 9, 11

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ........................................................ 12, 14

Federal Rule of Civil Procedure 54(b) ........................................................ *passim*

## I. PRELIMINARY STATEMENT

Plaintiffs seek immediate appellate review of their claims against Defendants Colbeck Capital Management, LLC; CB Media Ventures DD, LLC; CB Agency Services, LLC; and CB Participations SPV, LLC (collectively, "CB Defendants") that the Court dismissed with prejudice ("Order"). But Plaintiffs asserted those secondary-liability claims as part of a single alleged sex-trafficking venture centered on MindGeek's conduct, a single alleged conspiracy, and a single alleged harm. The same and closely related claims either remain pending against other Defendants or were dismissed but are not the subject of Plaintiffs' Motion. Plaintiffs selectively seek certification of only a subset of the Court's dismissal orders, leaving the pending claims and the other dismissals for later and duplicative appellate review.

Plaintiffs fail to demonstrate that there is no just reason to delay their prospective appeal of the Order. Their Motion is long on summaries of inapposite cases but short on how those cases support certification here. A review of Plaintiffs' claims, the allegations supporting those claims, and the arguments they advanced—a review required under Rule 54(b)—confirms that the judicial administrative interests and the balance of equities weigh decisively in favor of denying certification here.

Certifying the Order would produce precisely the kind of piecemeal appellate review that Rule 54(b) is designed to prevent. It would require the Ninth Circuit to revisit the same issues more than once and to decide issues that may become moot based on future developments in this case.

Plaintiffs will suffer no cognizable prejudice from waiting to appeal the Order while they continue to litigate claims against other Defendants for the same alleged harm for which Plaintiffs assert all Defendants are jointly and severally liable. And any appeal would likely take years—thus resulting in the duplicative trials Plaintiffs purport to seek to prevent. By contrast, certification would prejudice the CB Defendants by forcing them to defend an appeal of claims that future developments in the case are likely to render moot.

Plaintiffs do not, and cannot, carry their burden. The Court should deny the Motion.

## II. BACKGROUND

### A. Plaintiffs Assert Claims Based on the Same Underlying Alleged Facts, Trafficking Venture, and Conspiracy; Some Claims and Some Defendants Are Dismissed, While Others Remain

***SAC and Initial Complaints.*** On May 23, 2024, Plaintiff Fleites filed the Second Amended Complaint, asserting claims against the CB Defendants and the Redwood Defendants for the first time.[1] Plaintiffs in the fourteen Related Actions then filed initial complaints substantially similar to the SAC.

Plaintiffs allege that unnamed third parties recorded and uploaded sexually explicit videos of Plaintiffs as minors to MindGeek websites. *See* CB-Redwood SAC Order 2:9–5:2 (citing SAC). These actions stem from MindGeek's alleged "unrestricted content" business model that Plaintiffs contend solicited, monetized, embraced, and maximized pornographic content of any kind, including child sexual abuse material ("CSAM"). *See* SAC ¶¶ 2–4, 54–147. Plaintiffs allege that all Defendants knew about this business model and intentionally participated and conspired with MindGeek to financially benefit from CSAM—what Plaintiffs refer to as a "sex trafficking venture."

[1] The CB Defendants refer to the other Defendants as follows: (i) Defendants MG Freesites, Ltd., MindGeek USA Incorporated, MG Premium Ltd., MG Global Entertainment, Inc., and 9219-1568 Quebec, Inc. collectively as "MindGeek Defendants" or "MindGeek"; (ii) Defendants Bernd Bergmair, Feras Antoon, and David Tassillo as "Individual Defendants"; (iii) Defendant Visa, Inc. as "Visa"; and (iv) Defendants Redwood Capital Management, LLC, Redwood Master Fund, LTD, Redwood Opportunity Master Fund, Ltd., Manuel 018, LLC, Ginogerum, LLC, and White-Hathaway Opportunity Fund, LLC collectively as "Redwood Defendants."

This Opposition references the Second Amended Complaint ("SAC") and Third Amended Complaint ("TAC") in the *Fleites* matter unless otherwise stated. *See* Dkt. Nos. 387-1 (unredacted SAC), 624-1 (unredacted TAC); *see also* Dkt. Nos. 604 ("Individual Defs. Order"), 605 ("CB-Redwood SAC Order"), 608 ("MindGeek SAC Order"), 614 ("Visa SAC Order"), 732 ("Visa TAC Order"), 733 ("Redwood TAC Order"), 735 ("CB TAC Order" or "Order"). As Plaintiffs note, the allegations in the fourteen Related Actions are substantially the same as those in the *Fleites* action. *See* Dkt. No. 746 ("Motion" or "Mot. Mem.") 4:6–7.

*See id.* ¶¶ 5–8, 148–312. The Individual Defendants allegedly owned, dominated, and controlled MindGeek and thus were its alter egos; the CB Defendants and the Redwood Defendants participated in loans to MindGeek; and Visa processed financial payments on MindGeek websites. *See* Individual Defs. Order 9:11–12:6; CB-Redwood SAC Order 9:20–10:27; Visa SAC Order 9:15–23.

Plaintiffs asserted claims against all Defendants for beneficiary liability under the Trafficking Victims Protection Reauthorization Act ("TVPRA") for allegedly knowingly benefitting from participation in a venture engaged in sex trafficking (Counts I–III); conspiracy to benefit from sex trafficking under the TVPRA (Count IV); violation of California's Unfair Competition Law ("UCL") (Count XIV); and civil conspiracy under California law (Count XVI), among other claims. SAC ¶¶ 463–507, 573–83, 590–94. Plaintiffs sought joint and several liability against all Defendants. *Id.* 171:7–20 (Prayer for Relief).

***SAC and Initial Complaint dismissals.*** The Court dismissed with prejudice all claims against the Individual Defendants for lack of personal jurisdiction and an alter-ego relationship; the TVPRA beneficiary-liability claim against Visa, finding it was a "remote intermediary" with no direct connection to the alleged traffickers; and the TVPRA direct-liability claim against the MindGeek Defendants, finding "no facts suggesting MindGeek acted as a primary violator." Individual Defs. Order 14:2–4, 27:1–24; Visa SAC Order 14:15–17:2; MindGeek SAC Order 20:11–21:13. The Court dismissed without prejudice all claims against the CB Defendants and the Redwood Defendants. *See* CB-Redwood SAC Order. The Court later denied Plaintiffs' motion to reconsider its Visa SAC Order in which Plaintiffs argued that *Ratha v. Rubicon Res., LLC*, 168 F.4th 541 (9th Cir. 2026) (*Ratha III*) clarified the "participation" standard for beneficiary liability. Dkt. No. 734 (order) at 3:17–4:7, 4:19–20.

***TAC and Amended Complaints.*** Plaintiffs filed the TAC and Amended Complaints, asserting substantially the same categories of claims that the Court had

previously dismissed without prejudice in the SAC. Plaintiffs' underlying theory and core allegations remained the same. *See, e.g.*, CB TAC Order 2:1–3:2.

***TAC and Amended Complaints dismissals.*** The Court granted the CB Defendants' and the Redwood Defendants' motions and dismissed all claims against them with prejudice:

- The TVPRA beneficiary-liability claim for failure to show "participation in a venture," including because they lacked any relationship with Plaintiffs' alleged traffickers;
- The TVPRA conspiracy claim for lack of actual knowledge, agreement to perpetuate CSAM to profit from it, or intent to share in any unlawful purpose, alleging simply a passive lending relationship;
- The UCL claim because it was derivative of the other deficient claims; and
- The civil conspiracy claim for lack of knowledge, agreement, or intent as to predicate torts allegedly committed by the MindGeek Defendants.

*See* CB TAC Order 6:13–16:28. The Court also rejected Plaintiffs' recast theory that the CB Defendants, rather than the Individual Defendants, owned, controlled, or directed MindGeek because that "would contradict Plaintiffs' own pleadings elsewhere in her SAC that impute that kind of control to the Individual Defendants." *Id.* 7:21–8:4.

***Remaining claims.*** The following claims remain pending, among others:

- The TVPRA beneficiary-liability claim against the MindGeek Defendants;
- The TVPRA conspiracy claim against the MindGeek Defendants and Visa given that, as to Visa, Plaintiffs had adequately pled more than a passive business relationship;
- The UCL claim against the MindGeek Defendants and Visa; and
- Tort claims against the MindGeek Defendants that served as alleged predicates for Plaintiffs' civil conspiracy claim.

*See generally* Dkt. No. 652 (MindGeek Answer); *see also* Visa TAC Order 8–17, 20; MindGeek SAC Order 63:4–27; TAC ¶¶ 343–54, 365–415, 421–29, 441.

**B. Plaintiffs Move Under Rule 54(b) to Certify for Appeal Only the Orders Dismissing Claims Against the CB Defendants and the Redwood Defendants**

In their Motion, Plaintiffs ask the Court to certify as final judgments under Rule 54(b) the Orders dismissing with prejudice all claims against the CB Defendants and Redwood Defendants in *Fleites* and all the Related Actions. *See* Mot. Mem. Plaintiffs intend to appeal the Orders while litigating claims against the MindGeek Defendants and Visa in this Court. Plaintiffs do not request that the Court certify as final any other orders or claims that have been dismissed against the MindGeek Defendants, the Individual Defendants, or Visa.

## III. LEGAL STANDARD

Under Rule 54(b), "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Courts should not grant requests under Rule 54(b) routinely. *Wood v. GCC Bend, LLC*, 422 F.3d 873, 879 (9th Cir. 2005) (citing *Curtiss-Wright Corp. v. Gen. Elec.*, 446 U.S. 1, 10 (1980)); *see also Windeler v. Cambria Cmty. Water Dist.*, 2018 WL 7507427, at *1 (C.D. Cal. May 15, 2018) ("[i]n the interest of judicial economy Rule 54(b) should be used sparingly") (quoting *Gausvik v. Perez*, 392 F.3d 1006, 1009 n.2 (9th Cir. 2004)). "Judgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties." *Frank Briscoe v. Morrison-Knudsen*, 776 F.2d 1414, 1416 (9th Cir. 1985) (quoting *Morrison-Knudsen v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981)).

"A moving party must establish [1] that the court's determination of the subject claim is a final judgment and [2] that the Court can make 'an express determination that there is no just reason for delay.'" *Diode Dynamics L.L.C. v. 5DLight Inc.*, 2026 WL 638862, at *2 (C.D. Cal. Feb. 3, 2026) (Hsu, J.) (quoting Fed. R. Civ. P. 54(b)). To

determine whether there is no just reason for delay, the district court considers (1) judicial administrative interests and (2) the equities involved. *Curtiss-Wright*, 446 U.S. at 8.

## IV. THE COURT SHOULD DENY THE MOTION BECAUSE PLAINTIFFS FAIL TO SHOW THAT THERE IS NO JUST REASON FOR DELAY

Plaintiffs must prove that there is no just reason for delay, and they fail to carry their burden on either prong. Both the judicial administrative interests and the balance of equities independently weigh against certifying the Order for final judgment.

### A. Judicial Administrative Interests Do Not Favor Certification

Courts consider factors such as "whether the claims under review were separable from the others remaining to be adjudicated"; "whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals"; and whether future developments in the case could render the appeal moot, making certification premature. *Diode Dynamics*, 2026 WL 638862, at *3 (quoting *Curtiss-Wright*, 446 U.S. at 8); *see also* Mot. Mem. 7:3–12 (citing essentially the same factors). These factors are intended to "assure that application of [Rule 54(b)] effectively preserves the historic federal policy against piecemeal appeals." *Diode Dynamics*, 2026 WL 638862, at *3.[2] These factors weigh against Rule 54(b) certification here.

#### 1. The Dismissed Claims Against the CB Defendants Are Not Separate, Distinct, and Independent of Plaintiffs' Other Claims Under Rule 54(b)

***The dismissed claims against the CB Defendants involve factual and legal issues essential to Plaintiffs' other claims.*** "The guiding principle is that '[a] similarity

[2] Plaintiffs note correctly that "[t]he central judicial-administrative concern underlying Rule 54(b) is avoiding piecemeal appeals" (Mot. Mem. 7:15–16), but incorrectly state that "[t]he central question is whether immediate appeal would promote, rather than undermine, the efficient resolution of this litigation" (*id.* 6:26–7:3 (citing *Mackey*, 351 U.S. at 438, which does not support that contention)).

of legal or factual issues will weigh heavily against entry of judgment under [Rule 54(b)].'" *Wood*, 422 F.3d at 882. Plaintiffs concede that the dismissed claims against the CB Defendants share overlapping facts, factual issues, and legal issues with Plaintiffs' claims against other Defendants, but say the overlaps are not "central." *See* Mot. Mem. 7:16–18, 8:1–4, 8:15–18, 9:22–24, 10:7–9. This is both irrelevant and untrue.

Plaintiffs asserted the same four claims that were dismissed against the CB Defendants against all other Defendants. SAC ¶¶ 463–507, 573–83, 590–94; TAC ¶¶ 343–74, 421–29, 440–44. Each claim rests on the same core allegations and theory: videos of Plaintiffs posted by third parties on MindGeek websites, and every Defendant's alleged participation in and agreement to profit from a single alleged sex-trafficking venture. *See* TAC ¶¶ 326–330, 356, 366, 369. The dismissed claims against the CB Defendants share many of the same factual and legal issues "central" to Plaintiffs' other claims, including:

- whether Plaintiffs were trafficked and harmed as they allege;
- whether MindGeek engaged in the acts on which Plaintiffs base their claims against all Defendants, including allegedly operating what Plaintiffs describe as an unrestricted content model that sought to encourage and profit from CSAM, and whether other Defendants can be liable for such acts;
- whether Plaintiffs' alleged harm resulted from that alleged unrestricted content model and those alleged acts;
- whether there was a MindGeek sex-trafficking venture;
- for Plaintiffs' TVPRA beneficiary liability claims, the application of the participation and knowledge elements;
- for Plaintiffs' TVPRA conspiracy claim, whether MindGeek conspired with others to profit from CSAM, including what constitutes sufficient knowledge, agreement, and intent as compared to a passive business relationship;
- for Plaintiffs' UCL claim, whether there was any TVPRA violation; and

- for Plaintiffs' civil conspiracy claim, whether the MindGeek Defendants committed the torts Plaintiffs alleged serve as predicates, and whether there was a conspiracy to engage in those torts.

Plaintiffs' argument that the dismissed claims against the CB Defendants differ because of their "status as lenders and the terms of their loan agreements" ignores these similar factual and legal issues and the thrust of this factor. *See* Mot. Mem. 10:10–14. The CB Defendants' supposed role in an alleged venture and conspiracy cannot logically be "separate, distinct, and independent" from the very venture and conspiracy that form the rest of Plaintiffs' case. *Curtiss-Wright*, 446 U.S. at 6.

Courts find that dismissed claims based on the same allegations and alleged conspiracy as the remaining claims against other defendants are not separable under Rule 54(b). In *Jewel v. National Security Agency*, the Ninth Circuit reversed Rule 54(b) certification because the "facts and legal theories" were not substantially different among dismissed and remaining claims given that they "rel[ied] on inter-connected factual allegations" of the defendants' alleged wrongful "collaborat[ion]" with third parties to violate the plaintiffs' rights. 810 F.3d 622, 629–30 (9th Cir. 2015). In *Skidmore Energy, Inc. v. Mediholding S.A.*, the court denied a Rule 54(b) motion to certify the dismissal of all claims against certain defendants because the plaintiff had alleged that all defendants entered into a conspiracy to defraud it and thus the dismissed claims were "not substantially different" from those against the remaining defendants. 2006 WL 8439241, at *2 (C.D. Cal. May 3, 2006). Similarly, in *Global Acquisitions Network v. Bank of America*, after dismissing all claims against Bank of America, including a conspiracy claim, the court denied the Rule 54(b) motion because "the same seven causes of action were asserted against multiple defendants" and the underlying factual allegations were "intertwined across all claims." 2013 WL 5220489, at *1–2 (C.D. Cal. Sept. 13, 2013). Just as the plaintiffs in these cases could not carve out a claim from an interconnected factual narrative and legal theories arising out of an alleged conspiracy, Plaintiffs here cannot carve out the claims against the CB

Defendants from the alleged trafficking venture and alleged conspiracy that also underlie the surviving claims against the MindGeek Defendants and Visa.

Plaintiffs cite cases where the claims found separable were fundamentally different from one another—different legal theories, different elements, and different facts—asserted by or against different parties. *See* Mot. Mem. 10:10–20; *CoStar Grp., Inc. v. Comm. Real Est. Exch., Inc.*, 150 F.4th 1056, 1065 (9th Cir. 2025) (the defendant's antitrust and related UCL counterclaims were severable from the plaintiffs' copyright and trademark claims); *Admiral Ins. v. Kabul*, *Inc.*, 2026 WL 381686, at *1–3 (D. Nev. Jan. 8, 2026) (the insurer plaintiff's declaratory-judgment claim against the insured defendant for no duty to indemnify was separable from the insured defendant's third-party action against a third-party insurance broker). Here, by contrast, the same Plaintiffs asserted the same claims with the same elements against the CB Defendants and other Defendants, based on the same core theory involving the same alleged trafficking venture and conspiracy.

***Certification would not streamline this case.*** Plaintiffs point out that claims do not have to be completely separate and independent of the remaining claims to warrant Rule 54(b) certification. *See, e.g.*, Mot. Mem. 5:7–10 (quoting *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794 (9th Cir. 1991)); *id.* 9:25–28 (quoting *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565 (9th Cir. 2018) (quoting *Texaco*)). While it is true that complete independence is not required, neither *Texaco* nor *Pakootas* changes that "[a] similarity of legal or factual issues will weigh heavily against entry of judgment under [Rule 54(b)]." *Wood*, 422 F.3d at 882. In addition, where the issues are not "completely distinct," it is still necessary that resolving the appeal under Rule 54(b) would "streamline the ensuing litigation." *Jewel*, 810 F.3d at 628 (citation omitted).

Plaintiffs focus on the wrong type of streamlining under Rule 54(b) by discussing duplicative trials. Mot. Mem. 2:12–14, 8:23–9:8, 10:28–11:1. The risk of duplicative trials "is inherent in our appellate system of justice," since in granting a partial judgment "on some claims or for some parties, every district court risks the potential of a second

trial following direct appeal." *Favreau v. City of Escondido*, 2012 WL 2092737, at *3 (S.D. Cal. June 11, 2012). "Rule 54(b) is more concerned with successive appeals"—"not successive trials." *Id.* (citing *Wood*, 422 F.3d at 880, 882) (rejecting the plaintiffs' argument that Rule 54(b) certification would avoid duplicative trials and streamline the litigation); *see also Abdo v. Fitzsimmons*, 2021 WL 3493169, at *3 (N.D. Cal. May 17, 2021) ("the relevant inquiry here is whether certifying the judgment in [the movant's] favor would be cumbersome for the appellate docket, not for the trial court"). Plaintiffs' focus on trial efficiency thus addresses the wrong question.

Nor would an immediate appeal avoid duplicative trials. The appeal would likely take several years—the *Ratha* appeal, for example, has been pending for over three years since the notice of appeal, and it is still ongoing, currently at the U.S. Supreme Court. *See* Notice of Appeal, *Ratha v. Phatthana Seafood Co., Ltd.*, No. 2:16-cv-04271 (C.D. Cal. Mar. 31, 2023). A trial in this case would likely occur before any appeal of the Order is resolved. Certification would thus not spare Plaintiffs a trial; it would simply layer a multi-year appellate proceeding on top of it. *See Abdo*, 2021 WL 3493169, at *3 (rejecting movant's argument that certification would "streamline the ensuing litigation [because] he has not actually shown why that would be the case"); *Gibson Guitar v. Viacom Int'l Inc.*, 2013 WL 12144094, at *1–2 (C.D. Cal. Aug. 6, 2013) (finding movant's concerns about having to wait until after trial to pursue claims dismissed following motion to dismiss not enough to require certification).

The streamlining benefits in *Texaco* and *Pakootas* were much more apparent. *Texaco* involved certifying for appeal a summary-judgment order in favor of the defendant on all of the plaintiff's claims while the defendant's counterclaims remained pending. 939 F.2d at 797–98. It was not an abuse of discretion because the plaintiff's claims had been dismissed completely and because the discrete legal issues to be appealed—for example, whether the parties' unsigned agreement had to comply with the statute of frauds to be enforceable—were separate from factual questions and thus would streamline the ensuing litigation. *Id.* at 798.

In *Pakootas*, which had been pending for fourteen years, the certified claims based on a federal statute allowing for recovery of environmental cleanup costs and damages had been adjudicated as part of the initial phases of an ongoing trifurcated bench trial, required factual showings not required by the remaining claims, and involved a different type of damages incurred for different reasons than the remaining claims. 905 F.3d at 571–74, 575–76. Certification also allowed the plaintiffs, Native American tribes, to collect on the judgment they obtained while their remaining claims were pending. *Id.* at 575–76. The Ninth Circuit contrasted this with a circumstance in which the claims would not be separable—when the factual showing of one claim is also encompassed in another. *See id.* at 575 (citing *Ariz. State Carpenters Pension Tr. Fund v. Miller*, 938 F.2d 1038, 1040 (9th Cir. 1991)).

Unlike *Texaco* or *Pakootas*, Plaintiffs' claims against the CB Defendants do not involve discrete issues that are separate from shared issues among Plaintiffs' other claims. Nor are any of the streamlining benefits present in either case present here. Plaintiffs' claims against the CB Defendants have "similar[ ] legal or factual issues" as Plaintiffs' other claims, and thus this factor "weigh[s] heavily against entry of judgment under [Rule 54(b)]." *Wood*, 422 F.3d at 882. In addition, the separateness question is also assessed within the context of the "central question": whether the Ninth Circuit would have to decide the same issues more than once if there were subsequent appeals. *See, e.g.*, *Texaco*, 939 F.2d at 797–98 (noting Rule 54(b) is "scrutinized" to "prevent piecemeal appeals in cases which should be reviewed only as single units" (citation omitted)).

**2. Certifying the Order Would Result in the Ninth Circuit Having to Decide the Same Issues More than Once if There Were Subsequent Appeals**

Certification is particularly unwarranted because it would force the Ninth Circuit to decide the same factual or legal issues more than once in subsequent appeals. *See Diode*, 2026 WL 638862, at *3. Plaintiffs argue that, because the Ninth Circuit would

decide only whether claims were adequately pled against the CB Defendants, the Ninth Circuit would not have to decide the same fact disputes remaining in claims to be litigated against the MindGeek Defendants and Visa. Mot. Mem. 9:9–21. This argument is unavailing.

***First***, Plaintiffs' logic would mean that every Rule 12(b)(6) dismissal of a defendant is suitable for Rule 54(b) certification simply because it tests allegations rather than evidence. But courts routinely deny Rule 54(b) certification when claims against certain defendants are dismissed while claims against other defendants remain. *See supra* § IV.A.1 (citing *Skidmore Energy*, 2006 WL 8439241, at *2; *Glob. Acquisitions Network*, 2013 WL 5220489, at *1–2); *O.L. v. City of El Monte*, 2020 WL 13588050, at *4 (C.D. Cal. Oct. 1, 2020) (denying certification of dismissal order because issues and facts overlapped between dismissed and pending claims); *Gibson Guitar*, 2013 WL 12144094, at *1–2 (same); *Ricardez v. Cnty. of Ventura*, 2020 WL 7862129, at *2 (C.D. Cal. Aug. 6, 2020) (denying certification of judgment on the pleadings under similar circumstances).

Plaintiffs cite no contrary authority. *Ahmadi v. Chertoff* simply stands for the proposition that claims dismissed under Rule 12(b)(6) involving entirely different legal issues and factual issues that would not result in duplicative subsequent appeals may be certified for appeal under Rule 54(b). 2008 WL 1886001, at *1 (N.D. Cal. Apr. 25, 2008) (dismissed claims were on behalf of a putative class under the Administrative Procedure Act and the Fifth Amendment's due process clause while the remaining claims were under a separate federal statute to determine individual applications for naturalization). That is not true for the claims against the CB Defendants.

***Second***, Plaintiffs' own Motion confirms that an appeal of the Order now would produce exactly the duplicative review that Rule 54(b) is meant to prevent. Plaintiffs state their prospective appeal would "resolve emerging questions of law, including the applicable standards for TVPRA beneficiary and conspiracy liability and its application" to other parties. Mot. Mem. 2:19–28, 12:10–21. But this Court is going

to continue to apply those standards at summary judgment and trial of the remaining litigation against the MindGeek Defendants and Visa, and it is a near certainty that the losing party will appeal the application of those standards to the Ninth Circuit. It is thus highly likely that the Ninth Circuit will be presented with subsequent appeals involving very similar issues to those that Plaintiffs wish to have heard against the CB Defendants now. That is precisely what the Rule 54(b) analysis tries to avoid. *Curtiss-Wright*, 446 U.S. at 8.

*Abdo* is instructive. The court dismissed all claims against one defendant except for one claim, and then entered judgment for the defendant on that claim, thus adjudicating all issues as to that defendant, while leaving the same claim and other claims pending against other defendants for trial. 2021 WL 3493169, at *1. Like Plaintiffs' argument here on beneficiary liability and conspiracy liability under the TVPRA, the plaintiffs and defendants in *Abdo* "differ[ed] in their understanding of how [the claim's] knowledge requirement should be interpreted," and "this difference on an issue central to the determination of liability could easily require the appellate court to revisit the issue if [the] Rule 54(b) Motion were granted." *Id.* "These circumstances weigh heavily against granting the requested entry of judgment." *Id.*

***Third***, Plaintiffs' selective approach to certification underscores the piecemeal nature of the appeal they seek. The duplicative-appeals inquiry looks not only at claims that remain pending, but also at those already dismissed but not sought to be certified. *See Abdelhady v. George Washington Univ.*, 2025 WL 605003, at *6 (D.D.C. Feb. 25, 2025) ("the dispositive distinction is between . . . those [plaintiff] seeks to certify and those she does not," and the latter includes "counts dismissed with prejudice" and "withdrawn-without-prejudice counts"), *aff'd,* 2026 WL 2089753 (D.C. Cir. July 21, 2026). Plaintiffs' decision not to seek Rule 54(b) certification of the dismissal with prejudice of other claims further highlights the piecemeal nature of the appeal they seek.

Plaintiffs do not ask the Court to certify for appeal its order dismissing their TVPRA beneficiary-liability claim against Visa—even though the Court dismissed the

claim under Rule 12(b)(6) for largely the same reasons as against the CB Defendants. *See* CB TAC Order 6:13–20, 8:16–19, 14:18 n.4; Redwood TAC Order 6:15–21; Visa SAC Order 15:25–16:2, 17:22–25. Plaintiffs' later appeal of that decision as to Visa would involve the same and similar issues as their anticipated appeal of the Order.

Nor have Plaintiffs asked the Court to certify its order dismissing all claims against the Individual Defendants with prejudice. If Plaintiffs were to later successfully appeal the Court's finding of no alter-ego liability and thus no personal jurisdiction, the Court may then decide that Plaintiffs' allegations against the Individual Defendants fail under Rule 12(b)(6). If that occurred, Plaintiffs' appeal of such ruling would involve many of the same allegations of ownership, direction, and control that the Plaintiffs attributed in the SAC to the Individual Defendants, but transposed to the CB Defendants in the TAC. *See* CB TAC Order 7:21–8:15. Although there are differences between the two inquiries, the Ninth Circuit would be evaluating the sufficiency of the same allegations, but for different Defendants, and at different times—in other words, piecemeal appeals.

**3. Future Developments in This Case May Also Render an Appeal of the Order Moot**

Certification is also premature because subsequent developments could moot the prospective appeal. *See Diode*, 2026 WL 638862, at *3. Plaintiffs simply conclude, without explanation, that certification carries no risk of future developments mooting their anticipated appeal of the Order. Mot. Mem. 10:21. That is wrong.

The alleged conduct of MindGeek on which Plaintiffs based their claims against the CB Defendants remains at issue in the pending litigation. *See supra* § II.A. Resolution of those claims in favor of the MindGeek Defendants would necessarily moot those claims as to other Defendants, including the CB Defendants. If, for example, the Court finds that the MindGeek Defendants did not violate the TVPRA, the Defendants alleged to have participated or conspired with the MindGeek Defendants to engage in such alleged violations could not be liable. *See Ricardez*, 2020 WL 7862129,

at *2 (denying Rule 54(b) certification, finding dismissed claims may be moot because they were derivative of the plaintiffs' remaining claims against other defendants); *Gibson Guitar*, 2013 WL 12144094, at *1 (denying certification because any appellate reversal would have practical impact only if the remaining defendant were first found liable on the merits).

Plaintiffs' suggestion that mootness favors certification makes no sense. *See* Mot. Mem. 10:22–26 (quoting *Cadillac Fairview/California, Inc. v. United States*, 41 F.3d 562, 564 n.1 (9th Cir. 1994)); citing *Ahmadi*, 2008 WL 1886001, at *5–6 (not referring to mootness in Rule 54(b) context)). In *Cadillac Fairview*, the Ninth Circuit did not find that mootness favors certification; it held that the district court did not abuse its discretion because the certified claims were "factually and legally distinct" from the remaining claims. 41 F.3d at 564 n.1. Because Plaintiffs' prospective appeal of the Order may be mooted by future developments in the case, this factor—like the other judicial-administrative-interests factors courts consider—weighs against certification. *See* Mot. Mem. 7:3–12 (citing mootness as a factor weighing against certification).

**B. <u>The Balance of Equities Does Not Favor Certification</u>**

To balance "the equities involved" in deciding a Rule 54(b) motion, *Curtiss-Wright*, 446 U.S. at 8, courts consider "'traditional equitable principles such as prejudice and delay,'" *Gonzalez v. US Human Rts. Network*, 2021 WL 1312553, at *2 (D. Ariz. Apr. 8, 2021) (citation omitted). "With respect to the equities, a Rule 54(b) order departing from the principle of judicial economy is available only where either (1) there is a seriously important reason or (2) the relief is necessary to avoid a harsh and unjust result." *Abdo*, 2021 WL 3493169, at *4 (internal quotation marks omitted). Plaintiffs fail to carry their burden to show that Rule 54(b) certification is proper.

***No prejudice to Plaintiffs.*** Plaintiffs argue that they will "endure a long and expensive trial against the remaining defendants before having the opportunity to secure a reversal" of the Order dismissing the CB Defendants. Mot. Mem. 11:16–19 (internal quotation marks and citations omitted). Having to wait until after trial to appeal,

however, is "not a case where equity or efficiency require the certification of an appeal." *Gibson Guitar*, 2013 WL 12144094, at *1–2. Nor is "[t]he cost of litigation [ ] a sufficient reason to justify entry of partial judgment under Rule 54(b)." *First State Ins. v. Hill Bros. Chem.*, 2012 WL 13015028, at *4 (C.D. Cal. Feb. 13, 2012). Indeed, "almost every request under Rule 54(b) would be granted if minimizing short term litigation costs were the controlling consideration." *Id.* (citation omitted).

Plaintiffs, in any event, face no real hardship in waiting. Plaintiffs are opt-outs from the class action against the MindGeek Defendants, having elected to forgo that recent settlement and instead assert claims against, not only the MindGeek Defendants, but also Visa, the CB Defendants, the Redwood Defendants, and the Individual Defendants arising from allegations about the same alleged harm, trafficking, venture, and conspiracy. Without certification of the Order, Plaintiffs still may pursue full recovery for their alleged harm against the MindGeek Defendants (on whose alleged conduct Plaintiffs based their claims against the CB Defendants) and Visa, against whom Plaintiffs asserted the same claims and seek joint and several liability. *See supra* § II.A; *see also Uthe Tech. v. Aetrium, Inc.*, 808 F.3d 755, 760 (9th Cir. 2015) (a plaintiff who has received full satisfaction of claims generally cannot sue for additional damages for the same injury from other tortfeasors); *Gonzalez*, 2021 WL 1312553, at *5 (noting potential financial harm to either party is an equitable consideration that may inform a court's decision under Rule 54(b) (citing *Wood*, 422 F.3d at 878 n.2)). In addition, as explained above, a trial on Plaintiffs' claims against the MindGeek Defendants and Visa is likely to occur before a conclusive ruling on Plaintiffs' prospective appeal of the Order. *See supra* § IV.A.1. *Contra* Mot. Mem. 11:16–12:9.

The cases Plaintiffs cite do not support their position. *See* Mot. Mem. 11:16–12:7. In both *Hillbroom* and *Ahmadi*, the courts' equities determinations flowed from threshold findings that the dismissed and remaining claims were severable. *Hillbroom v. Israel*, 2012 WL 2550480, at *1 (D.N. Mar. I. Apr. 5, 2012) (dismissal for lack of personal jurisdiction will not be decided more than once); *Ahmadi*, 2008 WL 1886001,

at *6 (dismissed claims shared no factual questions with the remaining claim in the action). As shown above, the same is not true here. *See supra* § IV.A.1. *Texaco*'s reference to a "'pragmatic approach focusing on severability and efficient judicial administration'" is simply the general standard courts employ. *Texaco*, 939 F.2d at 798 (citation omitted). And the Advisory Committee's note to the 1961 amendment merely explains why Rule 54(b) is available in multi-party cases, as hardship from delay may exist in either multi-party or multi-claim cases alike. None of these authorities shows that delaying the appeal of the Order here would prejudice Plaintiffs.

Plaintiffs' argument that the litigations are in their "sixth year and remain at the pleading stage" likewise rings hollow. Mot. Mem. 12:2–7 (citing *Pakootas*, 905 F.3d at 576; *Admiral*, 2026 WL 381686, at *1, 3). Fourteen of the fifteen actions have been pending for only two years, and all claims against the CB Defendants have only been pending for two years due to Plaintiffs' decision to add the CB Defendants to this litigation late in the game. Even the two-year duration was largely occupied with Plaintiffs' futile attempts to overcome deficiencies in their claims that had to be dismissed twice. Neither *Pakootas* nor *Admiral* supports treating claims that have been pending for two years, caused by Plaintiffs' own litigation choices, as the kind of hardship Rule 54(b) requires for certification.

***Prejudice to the CB Defendants.*** The CB Defendants would be prejudiced by an immediate appeal. If Plaintiffs appeal now, the CB Defendants will be forced to defend an appeal of dismissed claims that are not separate, distinct, or independent of Plaintiffs' other claims and may be moot. *Supra* §§ IV.A.1, 3. Plaintiffs' citation to *CoStar* (Mot. Mem. 11:12–13) does not change the analysis: its no-prejudice conclusion followed its finding that the claims on appeal were, unlike the claims dismissed against the CB Defendants, sufficiently legally severable. 150 F.4th at 1065.

***Plaintiffs' broader policy argument is erroneous, contradictory, and irrelevant.*** Finally, Plaintiffs' broader-significance argument is neither correct nor relevant to the equities inquiry. That inquiry asks only about prejudice and hardship ***to the litigants***

***before this Court, in this case***—not the value of appellate guidance to courts and litigants in other cases. *See Curtiss-Wright*, 446 U.S. at 5 (equities should advance "the interests of sound judicial administration and ***justice to the litigants***" (emphasis added)); *Texaco*, 939 F.2d at 798 (referring to streamlining the "ensuing litigation"—not another litigation); *contra* Mot. Mem. 12:21–13:2 (citing *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (addressing an interlocutory appeal under 28 U.S.C. § 1292(b), a different mechanism with different requirements); *Texaco*, 939 F.2d at 798). Even if this were a relevant consideration, which it is not, Plaintiffs point only to two cases pending in district courts outside the Ninth Circuit. Mot. Mem. 12:14–16. Plaintiffs fail to explain how an appeal here would help those cases or why an impact on unrelated district court cases in another circuit balances the equities in favor of certification. It does not. The equities do not weigh in favor of entering partial final judgment under Rule 54(b).

## V. CONCLUSION

Plaintiffs fail to meet their burden to show that there is no just reason to delay their appeal of the Order. The Court should deny the Motion.

Dated: August 26, 2026

WHITE & CASE LLP

By: /s/ David G. Hille

David G. Hille

Attorneys for Defendants
COLBECK CAPITAL MANAGEMENT, LLC; CB MEDIA VENTURES DD, LLC; CB AGENCY SERVICES, LLC; and CB PARTICIPATIONS SPV, LLC

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the CB Defendants, certifies that this brief contains 5,992 words, which complies with the word limit of Local Civil Rule 11-6.1.

Dated: August 26, 2026

WHITE & CASE LLP

By: David G. Hille
David G. Hille

Attorneys for Defendants
COLBECK CAPITAL MANAGEMENT, LLC; CB MEDIA VENTURES DD, LLC; CB AGENCY SERVICES, LLC; and CB PARTICIPATIONS SPV, LLC